PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Maxim B. Litvak (Texas Bar No. 24002482)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachary Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel and Proposed Counsel for the Debtor and Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

## MOTION OF THE DEBTOR FOR APPROVAL OF SETTLEMENT WITH THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING GOVERNANCE OF THE DEBTOR AND PROCEDURES FOR OPERATIONS IN THE ORDINARY COURSE

The above-captioned debtor and debtor in possession (the "Debtor") files this

motion (the "Motion") for the entry of an order (the "Order") approving the terms of a settlement

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

between the Debtor and the Committee (as defined below) regarding governance of the Debtor and procedures for operations in the ordinary course of business, as embodied in the term sheet attached hereto as **Exhibit A** (the "Term Sheet").  In support of this Motion, the Debtor respectfully represents as follows:

### Preliminary Statement

1.      Following weeks of negotiations, the Debtor and the Committee have reached a proposed settlement, which contemplates the creation of a new independent board of directors (the "Independent Directors") at Strand Advisors, Inc. ("Strand"), the Debtor's general partner and ultimate party in control, and the implementation of certain protocols governing the operation of the Debtor's business in the ordinary course.  The Independent Directors will consist of the following three highly qualified and independent individuals:  James Seery, John Dubel, and a third director to be selected by or otherwise acceptable to the Committee.[2]  Two of the Independent Directors were chosen by the Committee and the third Independent Director will be selected by or otherwise acceptable to the Committee.  Background information for each of the Independent Directors is attached hereto as **Exhibit B**.

2.      Pursuant to the Term Sheet, and effective upon entry of the Order, James Dondero will no longer be a director, officer, managing member, or employee of the Debtor or Strand and will have no authority, directly or indirectly, to act on the Debtor's behalf.  Going forward, the Independent Directors, through Strand, will have sole and exclusive management and control of the Debtor.  The Independent Directors will have the discretion to appoint an interim

---

[2] The Committee's agreement to the Term Sheet in its entirety is contingent upon the selection of a third Independent Director acceptable to the Committee.  In the event the Committee and the Debtor cannot reach an agreement on an acceptable Independent Director to fill the third seat of the Board of Directors, the Term Sheet shall be null and void.

Chief Executive Officer (the "CEO") who will manage the Debtor's day-to-day business operations. Subject to Court approval, the Debtor still intends to retain Development Specialists, Inc. ("DSI") to provide a Chief Restructuring Officer (the "CRO") that will serve at the direction of the Independent Directors (or CEO, if appointed).

3.     It bears emphasis that the Independent Directors will not be mere figureheads. The Debtor and the Committee envision that the Independent Directors will be actively involved and intimately familiar with all material aspects of the Debtor's business and restructuring efforts. Moreover, with guidance of the CRO and CEO (if appointed), the Independent Directors will endeavor to prevent any negative influence Mr. Dondero or any of his affiliates or agents may have on the Debtor and its employees. Further, as part of the Term Sheet, the Committee will be granted standing to pursue estate claims against Mr. Dondero and other former insiders of the Debtor who were not employed by the Debtor as of the execution of the Term Sheet. The Committee will also retain the right to move for a chapter 11 trustee.

4.     In sum, the Term Sheet resolves months of litigation between the Debtor and the Committee over the Debtor's governance structure and operating protocols, allowing all parties to refocus on a path forward for this chapter 11 case. With the Independent Directors in place, the Debtor can move forward expeditiously, efficiently, and effectively with the substantive aspects of this case and consider any available restructuring options that will maximize value for all constituents. The Debtor therefore urges the Court to approve the Term Sheet and allow the key economic interest holders to proceed with a productive restructuring effort.

**Jurisdiction and Venue**

5.      The United States Bankruptcy Court for the District of Northern District of Texas, Dallas Division (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

8.      On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Court").

9.      To assist and coordinate the restructuring process, the Debtor retained DSI and Bradley D. Sharp to serve as the CRO on October 7, 2019.  On October 29, 2019, the Debtor filed the *Motion of the Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and Restructuring Related Services, Nunc Pro Tunc as of the Petition Date* [Docket No. 74] (the "CRO Motion") seeking to formally retain the CRO.  The CRO Motion remains pending, and the Debtor is filing a supplement to the CRO Motion concurrently herewith.

10.      On October 29, 2019, the Official Committee of Unsecured Creditors (the "Committee") was appointed by the U.S. Trustee in the Delaware Court.  On November 12, 2019, the Committee filed an omnibus objection to the CRO Motion, cash management motion, and

4

motion for approval of ordinary course protocols [Docket No. 130] (the "Committee Objection"), raising various concerns regarding the Debtor's governance and business practices.

11. On December 4, 2019, the Delaware Court entered an order transferring venue of the Debtor's bankruptcy case to this Court [Docket No. 186].[3] The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.

12. On December 23, 2019, the U.S. Trustee filed a motion in this Court to appoint a chapter 11 trustee for the Debtor [Docket No. 271] (the "Trustee Motion"). Although the Debtor will be filing a separate response to the Trustee Motion, it suffices to say that the Trustee Motion (filed without even considering the proposed Term Sheet) completely lacks merit given the governance changes and other resolutions encompassed in the Term Sheet agreed to by the Committee, as the representative of the primary economic stakeholders here.

**Terms of the Proposed Settlement**

13. Pursuant to the Term Sheet, the Debtor and the Committee have agreed to: (a) implement certain changes to the Debtor's governance, including the appointment of the Independent Directors; (b) provide the Committee with additional transparency into the operation of the Debtor's business; (c) retain the CRO on updated terms; and (d) implement certain protocols governing the ordinary course business operations of the Debtor. The terms of this agreement are contained in the Term Sheet.[4] A summary of the Term Sheet is as follows:

---

[3] All docket numbers refer to the docket maintained by this Court.

[4] In the event of any inconsistency between the summary of the Term Sheet contained herein and the Term Sheet, the Term Sheet will govern.

**Independent Directors**   The Debtor's general partner, Strand will appoint the following three (3) Independent Directors: James Seery, John Dubel, and a third director to be selected by or otherwise acceptable to the Committee. The Independent Directors will be granted exclusive control over the Debtor and its operations. Among other things, the Independent Directors shall conduct a review of all current employees as soon as practicable following the Independent Directors' appointment, determine whether and which employees should be subject to a key employee retention plan and/or key employee incentive plan and, if applicable, propose plan(s) covering such employees. The appointment and powers of the Independent Directors and the corporate governance structure shall be pursuant to the documents attached to the Term Sheet (the "<u>Governing Documents</u>"), which documents shall be satisfactory to the Committee. Once appointed, the Independent Directors (i) cannot be removed without the Committee's written consent or Order of the Court, and (ii) may be removed and replaced at the Committee's direction upon approval of the Court (subject in all respects to the right of any party in interest, including the Debtor and the Independent Directors, to object to such removal and replacement).

The Independent Directors shall be compensated in a manner to be determined, with an understanding that the source of funding, whether directly or via reimbursement, will be the Debtor.

As soon as practicable after their appointments, the Independent Directors shall, in consultation with the Committee, determine whether a CEO should be appointed for the Debtor. If the Independent Directors determine that appointment of a CEO is appropriate, the Independent Directors shall appoint a CEO acceptable to the Committee as soon as practicable, which may be one of the Independent Directors. Once appointed, the CEO cannot be removed without the Committee's written consent or Order of the Court.

The Committee shall have regular, direct access to the Independent Directors, <u>provided</u>, <u>however</u> that (1) if the communications include FTI Consulting Inc. ("<u>FTI</u>"), Development Specialists Inc. ("<u>DSI</u>") shall also

6

|  | participate in such communications; and (2) if the communications include counsel, then either Debtor's counsel or, if retained, counsel to the Independent Directors shall also participate in such communications. |
|---|---|
| **Role of Mr. James Dondero** | Upon approval of the Term Sheet by the Bankruptcy Court, Mr. Dondero will (1) resign from his position as a Board of Director of Strand Advisors, Inc., (2) resign as an officer of Strand Advisors, Inc., and (3) resign as an employee of the Debtor. |
| **CRO** | Bradley Sharp and DSI shall, subject to approval of the Court, be retained as the CRO to the Debtor and report to and be directed by the Independent Directors and, if and once appointed, the CEO. Mr. Sharp's and DSI's retention is subject to this Court's approval. The Debtor has filed the CRO Motion, as supplemented as of the date hereof, which requests authority to retain Mr. Sharp and DSI.[5]<br><br>DSI and all other Debtor professionals shall serve at the direction of the CEO, if any, and the Independent Directors. |
| **Estate Claims** | The Committee is granted standing to pursue any and all estate claims and causes of action against Mr. Dondero, Mr. Mark Okada, other insiders of the Debtor, and each of the Related Entities, including any promissory notes held by any of the foregoing (collectively, the "Estate Claims"); provided, however, that the term Estate Claims will not include any estate claim or cause of action against any then-current employee of the Debtor. |
| **Document Management, Preservation, and Production** | The Debtor shall be subject to and comply with the document management, preservation, and production requirements attached to the Term Sheet, which requirements cannot be modified without the consent of the Committee or Court order (the "Document Production Protocol").<br><br>Solely with respect to the investigation and pursuit of Estate Claims, the document production protocol will acknowledge that the Committee will have access to the privileged documents and communications that are |

---

[5] For the avoidance of doubt, the Debtor is not seeking retention of the CRO pursuant to this Motion. The Debtor is seeking such relief pursuant to the CRO Motion (as supplemented).

within the Debtor's possession, custody, or control ("Shared Privilege").

With respect to determining if any particular document is subject to the Shared Privilege, the following process shall be followed: (i) the Committee will request documents from the Debtor, (ii) the Debtor shall log all documents requested but withheld on the basis of privilege, (iii) the Debtor shall not withhold documents it understands to be subject to the Shared Privilege; (iv) the Committee will identify each additional document on the log that the Committee believes is subject to the Shared Privilege, and (v) a special master or other third party neutral agreed to by the Committee and the Debtor shall make a determination if such documents are subject to the Shared Privilege. The Committee further agrees that the production of any particular document by the Debtor under this process will not be used as a basis for a claim of subject matter waiver.

**Reporting Requirements**

The Debtor shall be subject to and comply with the reporting requirements attached to the Term Sheet, which reporting requirements cannot be modified without the consent of the Committee or Court order (the "Reporting Requirements").

**Plan Exclusivity**

The Independent Directors may elect to waive the Debtor's exclusive right to file a plan under section 1121 of the Bankruptcy Code.

**Operating Protocols**

The Debtor shall comply with the operating protocols attached to the Term Sheet, regarding the Debtor's operation in the ordinary course of business, which protocols cannot be modified without the consent of the Committee or Court order (the "Operating Protocols" and, together with the Reporting Requirements, the "Protocols").

14. By this Motion, the Debtor is seeking the Court's approval of the Term Sheet, the terms contained therein, and the exhibits attached thereto. For the avoidance of doubt, approval of the Term Sheet includes the approval of the following:

8

- **Independent Directors**:  The appointment of James Seery, John Dubel, and a third director to be selected by or otherwise acceptable to the Committee as the Independent Directors of Strand, the Debtor's general partner, with power to oversee the operations of the Debtor as set forth in the Term Sheet.  Mr. Seery and Mr. Dubel were selected by the Committee, and the Debtor agreed to their appointment as Independent Directors.  The Debtor is also seeking approval of the Governing Documents appointing the Independent Directors, to the extent required, and the authority to compensate the Independent Directors either directly from the assets of the Debtor or via the reimbursement of Strand of any compensation paid to the Independent Directors.

- **Document Management and Preservation**:  The implementation of the Document Production Protocol, which will govern how the Debtor retains and produces documents and information to the Committee during the pendency of its bankruptcy case.  The Debtor is also agreeing to the allow the Committee to access certain documents that are otherwise subject to the Shared Privilege to assist the Debtor in investigating the Estate Claims.

- **Estate Claims**.  The Debtor has agreed to grant the Committee standing to pursue any Estate Claims.  Estate Claims do not include claims or causes of action against any current employees of the Debtor; however, if any employee ceases to be employed by the Debtor, the Committee will have standing to pursue claims against such former employee.

- **Reporting Requirements and Operating Protocols**:  The Debtor has agreed to provide certain reporting to the Committee and to operate under certain protocols, which set forth the parameters of how the Debtor can conduct its business without the requirement of Court approval.  The Protocols provide, in certain circumstances, how the CRO and the Independent Directors will oversee the Debtor's operations.  The purpose of the Protocols is to allow the Debtor to function in the ordinary course of its business while providing transparency to the Committee.

15.     The Debtor believes that appointing the Independent Directors and otherwise effectuating the terms of the Term Sheet is in the best interests of the Debtor, its estate, and its creditors.  The Term Sheet will allow the Debtor to proceed with a productive reorganization effort that will maximize value for all constituents.  Accordingly, the Debtor seeks approval of the Term Sheet.

## **Relief Requested**

16.     By this Motion, the Debtor seeks entry of an order pursuant to sections 105(a), 363(b)(1), and 363(c)(1) of the Bankruptcy Code and Bankruptcy Rule 9019: (a) approving the Debtor's settlement with the Committee as set forth in the Term Sheet and outlined herein; (b)

authorizing the Debtor to take any action as may be reasonably required to effectuate the terms of the Term Sheet, including entering into the Governing Documents and compensating – either directly or through reimbursement – the Independent Directors; (c) granting the Committee standing to pursue the Estate Claims; and (d) granting related relief.

### Authority for the Relief Requested

A. **Section 363(c)(1) of the Bankruptcy Code Authorizes the Debtor to Enter Into Certain Aspects of the Term Sheet in the Ordinary Course**

17.     Because the Debtor is not settling any claims or causes of action through the Term Sheet or otherwise expending estate resources, the Debtor believes that it has the authority to effectuate the majority of the transactions and compromises set forth in the Term Sheet without Court approval under section 363(c)(1) of the Bankruptcy Code. Specifically, section 363(c)(1) provides:

> [i]f the business of the debtor is authorized to be operated under section. . . 1108. . . of this title. . . the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). As such, a debtor may engage in postpetition actions if the debtor is authorized to operate its business under section 1108 and such transactions are "in the ordinary course of business."

18.     An activity is "ordinary course" if it satisfies both the "horizontal test" and the "vertical test." *See, e.g., Denton Cty. Elec. Coop. v. Eldorado Ranch, Ltd.* (*In re Denton Cty. Elec. Coop.*), 281 B.R. 876, 882 n.12 (Bankr. N.D. Tex. 2002); *see also In re Roth American, Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). The vertical test looks to "whether the transaction subjects a

10

hypothetical creditor to a different economic risk than existed when the creditor originally extended credit." *In re Patriot Place, Ltd.*, 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013). The horizontal test considers "whether the transaction was of the sort commonly undertaken by companies in the industry." *Id.* Here, both the vertical test and horizontal test are satisfied.

19.     Under the Term Sheet, the Debtor is seeking authority to (a) appoint the Independent Directors at Strand (a non-debtor entity), (b) have Mr. Dondero removed from his role at the Debtor and Strand; (c) agree to seek the retention of the CRO under a revised engagement letter that provides that the CRO will report to the Independent Directors; (d) grant the Committee standing to pursue the Estate Claims; (e) enter into and implement the Document Production Protocols; (f) grant the Independent Directors the exclusive right to determine whether to waive exclusivity; and (g) enter into and implement the Protocols. Only the compensation of the Independent Directors, the entrance into the Protocols (which provide the Committee with certain right to object to the Debtor engaging in a "Transaction" (as defined in the Protocols) and allow the Debtor to seek a hearing before this Court on an expedited basis), and the grant of standing to the Committee to pursue Estate Claims could be construed as outside of the ordinary course of business. The balance of the terms of the Term Sheet either involve non-debtors[6] or will be the subject of separate motions seeking Court approval at the appropriate time.

**B.      The Court Should Approve the Term Sheet Under
           Rule 9019 of the Bankruptcy Code**

20.     Although the Debtor believes that it has authority to implement the majority of the Term Sheet in the ordinary course of its business under section 363(c), the Debtor is seeking

---

[6] With respect to the Independent Directors, they are being appointed to a new independent board of Strand, the Debtor's general partner, and Strand is not a debtor in this case or subject to this Court's jurisdiction.

this Court's approval of the Term Sheet under section 105 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules out of an abundance of caution. Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc); *see also Southmark Corp. v. Grosz* (*In re Southmark Corp.*), 49 F.3d 1111, 1116 (5th Cir. 1995) (stating that section 105(a) of the Bankruptcy Code "authorizes bankruptcy courts to fashion such orders as are necessary to further the substantive provisions of the Code").

21.     Bankruptcy Rule 9019 governs the procedural prerequisites to approval of a settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

22.     Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980). Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve

a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, "approval of a compromise is within the sound discretion of the bankruptcy court." *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Jackson Brewing*, 624 F.2d at 602–03.

23.     In making this determination, the United States Court of Appeals for the Fifth Circuit applies a three-party test, "with a focus on comparing 'the terms of the compromise with the rewards of litigation.'" *Official Committee of Unsecured Creditors v. Cajun Elec. Power Coop. by & through Mabey (In re Cajun Elec. Power Coop.)*, 119 F. 3d 349, 356 (5th Cir. 1997) (citing *Jackson Brewing*, 624 F.2d at 602). The Fifth Circuit has instructed courts to consider the following factors: "(1) The probability of success in the litigation, with due consideration for the uncertainty of law and fact, (2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) All other factors bearing on the wisdom of the compromise." *Id.*

24.     Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.; Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; Foster Mortg. Corp., 68 F.3d at 918 (citations omitted).

25.     Here, the Debtor submits that effectuating the transactions set forth in the Term Sheet satisfies the Fifth Circuit's three-part test.  The settlement embodied in the Term Sheet was driven in large part by the Debtor's creditors and has the support of the Committee, which consists of the Debtor's principal creditors.  The Term Sheet was negotiated at arm's length, and there was no fraud or collusion in its negotiation.  The settlement is also fair and reasonable and in the best interests of the Debtor's estate and also resolves the open disputes regarding the CRO Motion, the *Motion of Debtor for Interim and Final Orders Authorizing (A) Continuance of Existing Cash Management System, (B) Continued Use of the Prime Account, (C) Limited Waiver*, as supplemented [Docket Nos. 51 & 259], and *Precautionary Motion of the Debtor for Order Approving Protocols for the Debtor to Implement Certain Transactions in the Ordinary Course of Business* [Docket No. 76].

26.     The Debtor and members of the Committee have been entangled in highly contentious litigation that has spanned many years and multiple venues.  As evidenced by the brief history of the Debtor's bankruptcy case,[7] that contention and mistrust has carried over into this proceeding and could derail any chance that the Debtor has to successfully reorganize and structure a plan to pay its creditors.  The governance and operational changes set forth in the Term Sheet, will provide greater transparency to the Committee and start the process of rebuilding the trust necessary to negotiate a successful resolution of this case.  Without the Term Sheet, the Debtor

---

[7] *See, e.g., Declaration of Frank Waterhouse in Support of First Day Motions* [Docket No. 11], *Motion of the Official Committee of Unsecured Creditors for an Order Transferring Venue of this Case to the  United States Bankruptcy Court for the Northern District of Texas* [Docket No. 85], *Omnibus Objection of the Official Committee of Unsecured Creditors to the Debtor's (I) Motion for Final Order Authorizing Continuance of the Existing Cash Management System, (II) Motion to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officers, and (III) Precautionary Motion for Approval of Protocol for "Ordinary Course" Transactions* [Docket No. 130], and *United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee* [Docket No. 271].

14

anticipates that the Committee would move to appoint a chapter 11 trustee and the U.S. Trustee has already done so (without even seeing the Term Sheet). The Debtor will contest such motions because the appointment of a chapter 11 trustee could gravely harm the Debtor's business. The implementation of the Term Sheet will head off any potential issues that could arise, eliminate costly, time consuming and uncertain litigation, and give the Debtor sufficient breathing room to work towards rebuilding trust with its creditor body and allow the Debtor to exit bankruptcy and preserve the value of its business. The Debtor's bankruptcy case has been pending for over two and a half months, and it is time for the parties to put the acrimony that marked the initial stages of this case behind them and to move forward in a productive manner – precisely what the Term Sheet seeks to accomplish.

**C.  Consummating the Settlement Agreement
is a Sound Exercise of the Debtors' Business Judgment.**

27.  Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g., ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (*quoting In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); 441 B.R. 813, 830 (Bankr. S.D. Tex.

2010); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005).

28.     The transactions contemplated by the Term Sheet are within the sound business judgment of the Debtor.  The Term Sheet resolves potentially costly and protracted litigation with the Committee over the Debtor's corporate governance and will give the Debtor the breathing room necessary to negotiate and effectuate the terms of a plan acceptable to the Debtor's creditors.  Further, providing standing to the Committee to investigate Estate Claims and the payment of the Independent Directors from the assets of the estate are each necessary components of the Term Sheet.  The Committee would not have agreed to the Term Sheet without the grant of standing to investigate Estate Claims.  Moreover, Strand, a non-debtor, is unable to cover the costs of the Independent Directors.  As such, there is a good business reason for the Debtor's payment of the Independent Directors' compensation: the Term Sheet and the appointment of the Independent Directors would not have been agreed to or possible without that condition.[8]  The foregoing is sufficient grounds to approve the Term Sheet and authorize the Debtor to effectuate the terms of the Term Sheet under Section 363(b)(1).

### **No Prior Request**

29.     No previous request for the relief sought herein has been made to this, or any other, Court.

---

[8] Further, although the Debtor seeks to reimburse Strand for the cost of the Independent Directors, the Debtor is otherwise obligated to reimburse Strand for any costs or expenses incurred by Strand in its management of the Debtor. *See* Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., § 3.10(b).

**Notice**

30.     Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the Office of the United States Attorney for the Northern District of Texas; (c) the Debtor's principal secured parties; (d) counsel to the Committee; and (e) parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter an Order, substantially in the form attached hereto as **Exhibit C**, (a) approving the Debtor's settlement with the Committee as set forth in the Term Sheet and outlined herein; (b) authorizing the Debtor to take any action as may be reasonably required to effectuate the terms of the Term Sheet, including entering into the Governing Documents and compensating – either directly or through reimbursement – the Independent Directors; and (c) granting related relief.

Dated:  December 27, 2019

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717)
(*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084)
(*admitted pro hac vice*)
Maxim B. Litvak (Texas Bar No. 24002482)
Gregory V. Demo (NY Bar No. 5371992)
(*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
             ikharasch@pcszjlaw.com
             mlitvak@pszjlaw.com
             gdemo@pszjlaw.com

-and-

*/s/ Melissa S. Hayward*
HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachary Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel and Proposed Counsel for the Debtor and
Debtor in Possession*