PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Maxim B. Litvak (Texas Bar No. 24002482)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

## DEBTOR'S REPLY IN SUPPORT OF MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO CAUSE DISTRIBUTIONS TO CERTAIN "RELATED ENTITIES"

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

The above-captioned debtor and debtor-in-possession (the "Debtor") files this reply (the "Reply") in support of the *Motion of the Debtor for Entry of an Order Authorizing but Not Directing the Debtor to Cause Distributions to Certain "Related Entities"* [Docket No. 474] (the "Motion").[2]

In further support of the Motion, the Debtor respectfully states as follows:

**Preliminary Statement**

1.      In the Motion, the Debtor disclosed that certain "Related Entities" (the "Related Entity Investors") had invested in three funds – Dynamic, AROF, and RCP (collectively, the "Funds") – and that the Debtor was seeking authority from this Court to distribute funds owned by the Funds – not the Debtor – to the Related Entity Investors that they are contractually entitled to receive under the Funds' governing documents.  The Committee objected to the relief sought in the Motion,[3] and Acis Capital Management, L.P., and Acis Capital Management GP, LLC (collectively, "Acis," and together with the Committee, the "Objecting Parties") filed a joinder to the Committee Objection.[4]  In their objections, the Objecting Parties – citing only to Section 105(a) of the Bankruptcy Code as authority – requested that this Court order the Debtor to "withhold and segregate" the proceeds due to the Related Entity Investors.  (Committee Objection, § 20.)  That relief amounts to a request for a preliminary injunction and a prejudgment attachment without filing any underlying action or otherwise complying with the procedural and substantive requirements to obtain a prejudgment attachment under applicable law.  As set forth below, the

---

[2] All capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

[3] *Objection of the Official Committee of Unsecured Creditors to the Motion of the Debtor for Entry of an Order Authorizing, but Not Directing, the Debtor to Cause Distributions to Certain "Related Entities."* [Docket No. 487] (the "Committee Objection").

[4] *Joinder of Acis Capital Management, L.P., and Acis Capital Management GP, LLC to the Committee's Objection to the Motion of Acis Capital Management, L.P., and Acis Capital Management GP, LLC to the Committee's Objection to the Motion of the Debtor for Entry of an Order Authorizing, but Not Directing, the Debtor to Cause Distributions to Certain "Related Entities," and Comment to the Same* [Docket No. 489] (the "Joinder").

existence of potential claims against the Related Parties are not, in and of themselves, sufficient to justify such extraordinary relief.

2. As the Debtor disclosed in the Motion it, or in the case of AROF, one of its subsidiaries manage the Funds and that the Debtor's Independent Board (after consultation with outside counsel) believes that, as a registered investment adviser, the Debtor has certain duties to the funds that it manages, including the Funds. Those duties exist regardless of whether the investors in those funds are Related Entities or otherwise and are based on contract and on the laws of the United States, Delaware, and the Cayman Islands. Importantly, applicable law prohibits the Debtor from asserting its own interest ahead of those of investors. In the Motion, the Debtor further disclosed that it did not have the contractual or legal authority to withhold or cause the Funds to withhold distributions from the Related Entity Investors or to treat the Related Entity Investors differently than non-Related Entity Investors.

3. Because of those duties – duties which both the Debtor and the Independent Board take seriously – the Debtor sought the relief requested in the Motion. Although the Committee and Acis objected to that relief, notably, neither the Committee nor Acis have alleged that any of the Debtor, the Funds, or any other entity can without violating their contractual and fiduciary obligations elect *not* to distribute to the Related Entity Investors their allocable portion of the distributions being made to the investors in the Funds. Nor has any party alleged that any of the Funds' assets are property of the Debtor's estate or that any of the Funds have claims against their Related Entity Investors. Instead, the Objecting Parties have asked this Court to use its equitable powers under Section 105(a) of the Bankruptcy Code to cause the Debtor to withhold distributions to the Related Entity Investors because of certain alleged bad acts and potential claims that may exist against those Related Entities.

4.      The Independent Board respects the Committee's intention to investigate claims against the Related Entity Investors and insiders as contemplated by the Term Sheet, approved by this Court on January 9, 2020, which led to the installation of the Independent Board. The Independent Board intends to cooperate with the Committee in its efforts.  At the same time, the Independent Board was installed to revamp the Debtor's prior culture, including to ensure obligations to the investors in the funds managed by the Debtor are being appropriately honored. The Independent Board believes this is essential to rebuilding the Debtor's reputation in the marketplace and the investor community, and to prospectively protect the Debtor from liability. However, neither Section 105(a) nor any other provision of the Bankruptcy Code allows this Court to grant the relief that the Objecting Parties are actually requesting – an injunction and prejudgment attachment against third parties not currently before the Court.

### Reply

5.      The Debtor, or with respect to AROF, its subsidiary, is the investment adviser to each of the Funds.  As the investment adviser, the Debtor has contractual discretion over the selection and disposition of the Funds' investments, but does not serve in a governance role. Rather, the governing body of each Fund is either a board of directors or a general partner.  And the terms of each of the Funds is governed by its applicable governing documents, which each investor was furnished and relied upon when subscribing for an interest in the Fund.  The Dynamic Fund Documents govern Dynamic; the AROF Fund Documents govern AROF; and the RCP Fund Documents govern RCP (the Dynamic Fund Documents, the AROF Fund Documents, and the RCP Fund Documents, collectively, the "Fund Documents").  Each of the Fund Documents is in turn governed, as applicable, by U.S. and Delaware or Cayman law.

4

6. As discussed at length in the Motion, each of the Funds is its own separate legal entity which owns its own assets, and none of the Fund Documents allow the Debtor to treat the Related Entity Investors – regardless of who such investors happen to be or by whom they are owned – differently than non-Related Entity Investors. (Motion, ¶¶ 42-47.) Importantly, neither the Committee nor Acis has stated or alleged that: (a) any of the Funds is a debtor in the Bankruptcy Case or subject to this Court's jurisdiction; (b) the assets held by the Funds are property of the Debtor's estate; (c) the Debtor does *not* have contractual and fiduciary obligations to the Funds; or (d) any provision in any of the Fund Documents allows the Debtor to treat the Related Entity Investors in the Funds differently than the non-Related Entity Investors in the manner being requested.

7. Instead, the Objecting Parties rely on alleged bad acts by the Debtor and certain of the Debtor's employees and principals[5] and the Committee's potential, but inchoate, causes of action against such parties to seek what amounts to an injunction from this Court under Section 105(a) and a prejudgment attachment against the proceeds that the Related Entity Investors in the Funds are contractually entitled to receive – not from the Debtor – but from the Funds. However, those alleged bad acts – regardless of whether they occurred pre- or postpetition – and

---

[5] The Debtor does not believe that the provenance of the $123.25 million in proceeds from the MGM Sale or Mr. Dondero's role in the MGM Sale is relevant to the Motion. What the Debtor does believe is relevant is that (a) RCP is currently in liquidation and is required to liquidate its assets in an orderly manner and (b) RCP's investors, such as the California Public Employees' Retirement System ("CalPERS"), have requested that the Debtor disburse the proceeds of the MGM Sale as quickly as possible in the manner required by the RCP Fund Documents. *See, e.g., Response by CalPERS to Motion by the Debtor for Entry of an Order Authorizing, but Not Directing, the Debtor to Cause Distributions to Certain "Related Entities"* [Docket No. 486].

Whether or not Mr. Mr. Dondero had the authority to bind RCP to sell the MGM common stock is not relevant to the Motion. When the Independent Board and the Debtor's professionals found out that Mr. Dondero had agreed to the MGM Sale, they reviewed the MGM Sale and independently determined that it was in the best interests of the Debtor's estate to close that sale. The Independent Board disclosed their reasoning to the Committee, and the Committee did not object to the MGM Sale. (Committee Objection, § 14.) Consequently, the MGM Sale closed on February 24, 2020. To the extent the Committee seeks to investigate further the circumstances surrounding the MGM Sale, the Independent Board will ensure that the Debtor cooperates with such investigation. However, that issue is not relevant to the relief the Debtor is seeking here.

potential causes of action are *not* the subject of the Motion. And if either the Committee or Acis believe that such claims exist, the Committee, at least, has been granted standing to pursue those claims (and Acis has shown itself more than capable of standing up for its rights). Further, the Committee's and Acis's request is procedurally and substantively improper. To obtain a pre-judgment writ or attachment, they are required to commence an action and seek such remedy in accordance with due process and to prove the substantive elements that support such relief. The Objecting Parties have done neither.

8. First, assuming, *arguendo*, that Texas state law applies to the Related Entity Investors (although the law of other States and the Cayman Islands may also apply), the burden associated with seeking a prejudgment attachment is a significant one, and it is placed on the moving party – in this case the Objecting Parties. *See S.R.S. World Wheels v. Enlow*, 946 S.W.2d 574, 575 (Tex. Civ. App. - Ft. Worth 1997) ("[a]ttachment is a harsh, oppressive remedy; therefore, attachment is not available unless statutory safeguards are strictly observed."). To get a prejudgment attachment, the Objecting Parties would first be required to commence an action articulating the nature and extent of the claims supporting such attachment. Next, the Committee would be required to file and serve a request for a prejudgment attachment with appropriate notice to the defendant. Finally, to obtain that relief under Texas law, the Committee would have to prove the following elements: (a) defendant is justly indebted to the plaintiff; (b) attachment is not sought for purposes of harassment or injury; (c) plaintiff will probably lose his debt if there is no attachment; and (d) specific grounds for the attachment exist.[6] Tex. Civ. Prac. & Rem. Code.

---

[6] Specific grounds for attachment under Texas law exist if: (a) the defendant is not a resident of this state or is a foreign corporation or is acting as such; (b) the defendant is about to move from this state permanently and has refused to pay or secure the debt due the plaintiff; (c) the defendant is in hiding so that ordinary process of law cannot be served on him; (d) the defendant has hidden or is about to hide his property for the purpose of defrauding his creditors; (e) the defendant is about to remove his property from this state without leaving an amount sufficient to pay his debts; (f) the defendant is about to remove all or part of his property from the county in which the suit is brought with the intent to defraud his creditors; (g) the defendant has disposed of or is about to dispose of all or part of his property

§ 61.001. Neither Objecting Party has pled any of the foregoing statutory elements let alone carried its burden.

9. Second, Section 105(a) of the Bankruptcy Code – which is the only provision cited by the Objecting Parties to justify their position – does not allow this Court to grant the Objecting Parties' request. As a general matter, Section 105(a) does not create a "roving commission" for a court "to do equity." *See, e.g., United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir. 1986); *see also New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2nd Cir. 2003). Rather, relief under Section 105(a) must be tethered to some provision of the Bankruptcy Code. *See, e.g., Law v. Siegel*, 571 U.S. 415, 421 (2014) ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.") (citing cases); *New England Dairies*, 351 F.3d at 91-92 ("[S]ection 105(a) [confers] the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code. . . This language 'suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective.'") (citations omitted) (emphasis in original). Here, the Committee has not cited to any provision under the Bankruptcy Code justifying its request besides the general powers available under Section 105(a).

10. Instead, the Committee has requested that this Court cause the "[temporary] withholding" of distributions to Related Entity Investors in Dynamic, AROF, and RCP. (Committee Objection, ¶¶ 16-20.) As such, the Committee and Acis, through the Joinder, are asking this Court for an injunction only under Section 105(a) ordering "the Debtor to withhold and

---

with the intent to defraud his creditors; (h) the defendant is about to convert all or part of his property into money for the purpose of placing it beyond the reach of his creditors; or (i) the defendant owes the plaintiff for property obtained by the defendant under false pretenses. *See* Tex. Civ. Prac. & Rem. Code. § 61.002. There is no factual record before the Court to support any of these required findings.

segregate the Proposed Insider Distributions." (*Id.*, ¶ 20.)  However, because the Related Entity Investors in the Funds have a contractual right to their distributions from the Funds – not from the Debtor – any order from this Court enjoining the "Proposed Insider Distributions" would also, by necessity, be an order from this Court enjoining such Related Entity Investors from asserting their contractual rights against the Funds and enjoining the Funds from making distributions to the Related Entity Investors.[7]  Such injunction would therefore be an order enjoining third party action and require the Committee to satisfy the standards for a preliminary injunction.  *Feld v. Zale Corp. (in Re Zale Corp.)*, 62 F.3d 746, 765 (5th Cir. 1995) (citing *In re Eagle-Picher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992) ("When issuing a preliminary injunction pursuant to its powers set forth in section 105(a), a bankruptcy court must consider the traditional factors governing preliminary injunctions issued pursuant to Federal Rule of Civil Procedure 65.").

11.     Here, however, the Objecting Parties have not followed the procedural or substantive requirements to obtain a pre-judgment remedy: a proper complaint providing the Related Parties with the opportunity to respond as well as a separate application for prejudgment attachment is required.  Only then would the Court be in a position to evaluate whether the Committee can establish: (a) substantial likelihood of success on the merits; (b) substantial threat of irreparable injury; (c) the threatened injury outweighs the harm of the injunction; and (d) the injunction will not disserve the public interest.  *Id.*  The Committee has not carried its burden. Section 105(a) does not allow the Objecting Parties to bootstrap their objections into a prejudgment

---

[7] CLOH is invested in the AROF Cayman feeder fund.  The AROF Cayman feeder fund is managed by an independent board of Cayman-based directors.  The Debtor, as a matter of Cayman law, has no ability to compel those independent directors to "withhold and segregate the Proposed Insider Distributions," and while the Cayman directors may have some ability to treat certain investors differently than others, the Debtor has no right to direct the Cayman directors. Consequently, any order from this Court seeking to require the Debtor to withhold distributions made to CLOH by the AROF Cayman feeder fund will be an order with which the Debtor simply cannot comply.  As such, any order enjoining payments on account of CLOH's interest in the AROF Cayman feeder fund will need to be an order compelling the Cayman directors to take or not to take action; however, for such an order to be binding in the Cayman Islands, it must first be recognized by a Cayman court of competent jurisdiction.

attachment against assets that are not property of the Debtor's estate and that contractually are owed to parties not currently before this Court, i.e., Mr. Okada, CLOH, and HCM Services. If the Objecting Parties desire such relief, they should bring a procedurally appropriate motion instead of seeking an ex parte injunction and prejudgment attachment.[8]

12.    In sum, it is uncontroverted that (a) the Funds are not debtors in this Bankruptcy Case; (b) the Funds' assets are not property of the Debtor; (c) the Fund Documents do not allow the Debtor to cause the Funds to *not* make certain distributions that they would otherwise be required to make to their Related Entity Investors; and (d) there are no provisions in the Fund Documents – or applicable law – that would allow the Debtor to do what the Objecting Parties are demanding. It is also uncontroverted that the Independent Board determined that (i), after seeking advice from U.S. and Cayman-based fund and regulatory counsel, as the parties in control of a registered investment advisor, they have obligations to the Debtor's managed funds and, by extension, the investors in such funds and (ii) those obligations required the Independent Board to file and prosecute the Motion.

*[Remainder of Page Intentionally Blank]*

---

[8] The Committee cannot argue it was unaware of the procedural deficiencies in the Committee Objection as one of the cases cited by the Committee – *In re DeLorean Motors Co.* – lays out the appropriate way to use Section 105(a). 755 F.2d 1223 (6th Cir. 1985). In *DeLorean*, the unsecured creditors committee (and later the trustee) believed certain assets were property of the debtor's estate. To secure those assets, the committee filed an adversary proceeding seeking a declaration that the assets were estate property and could not be removed from the estate. In reviewing the case, the Sixth Circuit first noted that committee was not seeking an attachment. "The preliminary injunction in the present case is similarly not for the purpose of securing satisfaction of the judgment ultimately to be entered in the action. The trustee does not seek to attach. . . assets in order to satisfy a possible damage award. The relief sought is merely a declaration that the assets are a part of the bankruptcy estate."). *DeLorean*, 755 F.3d at 1227. Because the moving party was not seeking attachment, but rather a preliminary injunction, the Sixth Circuit found that Rule 64 of the Federal Rules of Civil Procedure did not apply but that to get an injunction that the moving party had to satisfy Rule 65 and its traditional four part test. *Id.*

Consequently, *DeLorean* highlights the appropriate way to use Section 105(a). Section 105(a) is to be paired with another section of the Bankruptcy Code (in *DeLorean*, Section 541), and if an injunction and attachment is sought, (a) an adversary proceeding should be filed, (b) the appropriate parties noticed, and (c) the requirements of Rules 64 and 65 of the Federal Rules of Civil Procedure satisfied. The Committee, however, has failed to abide by any of the procedural or statutory requirements laid out in *DeLorean*.

9

WHEREFORE, for the reasons set forth above and in the Motion, the Committee Objection and the Acis Objection should be overruled in all respects and the relief requested in the Motion should be granted.

Dated:  March 4, 2020

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717)
(*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084)
(*admitted pro hac vice*)
Maxim B. Litvak (Texas Bar No. 24002482)
Gregory V. Demo (NY Bar No. 5371992)
(*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           ikharasch@pcszjlaw.com
           mlitvak@pszjlaw.com
           gdemo@pszjlaw.com

-and-

*/s/  Melissa S. Hayward.*
HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and*
*Debtor-in-Possession*