E. P. Keiffer
Rochelle McCullough, LLP
325 North St. Paul Street, Suite 4500
Dallas, Texas 75201
Telephone: (214) 580-2525
Email:  pkeiffer@romclaw.com

COUNSEL FOR RESPONDENTS

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054-SGJ-11** |
| | § | |
| | § | |
| **Debtor.** | § | |

**ATLAS IDF, GP; ATLAS IDF, LP; BEACON MOUNTAIN, LLC; HUNTER MOUNTAIN INVESTMENT TRUST; RAND ADVISORS, LLC; RAND PE FUND I, LP; RAND PE FUND MANAGEMENT, LLC; AND JOHN HONIS' REPLY TO: A) UNSECURED CREDITORS' COMMITTEE'S EMERGENCY MOTION TO COMPEL PRODUCTION BY DEBTOR AND B) DEBTOR'S MOTION FOR ENTRY OF A PROTECTIVE ORDER...,**

TO THE HONORBLE STACY C. JERNIGAN, U.S. BANKRUTPCY JUDGE

Atlas IDF, GP, LLC; Atlas IDF, LP; Beacon Mountain, LLC; Hunter Mountain Investment Trust; Rand Advisors, LLC; Rand PE Fund I, LP; Rand PE Fund Management, LLC; and  John Honis (collectively sometimes "**Respondents[1]**") file this their *Reply to a) Unsecured Creditors' Committee's Emergency Motion to Compel Production by Debtor (Dkt. No. 808)* ("**Motion to Compel**") *and  b) Debtor's Motion For Entry of (I) a  Protective Order, or, in the Alternative, (II) an Order Directing the Debtor to Comply with Certain Discovery Demands Tendered by the*

---

[1] The definition of Respondents also includes each of their parents, subsidiaries, or affiliates, as referenced in the 4th RFP defined hereinafter)

**Reply to: a) Unsecured Creditors' Committee's Emergency
Motion to Compel Production by Debtor and b) Debtor's
Motion for Entry of a Protective Order...**                                        **Page 1 of 8**

*Official Committee of Unsecured Creditors, Pursuant to Federal Rules of Bankruptcy Procedure*

*7026 and 7034 (Dkt. No. 810)* ("**Motion for Protective Order**") and would respectfully show the

Court as follows:

### Background

1.      Respondents are generally parties who are defined in multiple filings in this case as

likely targets or points of inquiry with regard to Estate Claims.[2]  The Final Term Sheet gives the

Committee standing to bring same.  In many respects, the Committee steps into the Debtor's shoes

with regard to access to documents and communications that are within the Debtor's possession,

custody or control – Shared Privilege it is called.  The Committee and the Debtor have been

working through a Document Production Protocol in the months since the Final Term Sheet was

approved.  Now there is a dispute between the Committee and the Debtor which is centered upon

protocols and procedures as to ESI as to nine (9) specific custodians and the pressure generated

because certain Estate Claims must be brought in just a bit more than two (2) months' time from

now.

2.      The Respondents generally are not specifically mentioned in the motion papers that

define the dispute before the Court.  Neither the Debtor nor the Committee, other than a footnote

describing Related Entities, which includes many if not all of the Respondents, makes any real

mention of the Respondents directly.  None of the shared services agreements referenced mention

any of the Respondents by name.   None of the custodians defined are Respondents.

---

[2] Capitalized terms not defined herein are as defined in the Notice of Final Term Sheet (Dkt. No. 354), the motions to which this Reply relates (Dkt. Nos. 808 and 810) and in the various requests for production of documents which the Committee has sent to the Debtor during this case, pursuant to, it is surmised, the Agreed Protective Order ("**APO**") (Dkt. No. 382).

**Reply to: a) Unsecured Creditors' Committee's Emergency**
**Motion to Compel Production by Debtor and b) Debtor's**
**Motion for Entry of a Protective Order...**                              **Page 2 of 8**

3.      The Respondents are, however, mentioned in detail in the Committee's 4th Request for Production of Documents[3] (the "**4th RFP**") and it is noted therein that those requests should be included in the production subject to the Committee's Motion to Compel.  There are roughly twenty-two (22) requests, that concern one or more of the Respondents.  When coupled with the definitions of Communications, as well as the requirement to produce not only documents in the Debtor's physical possession, but documents within the Debtor's custody and control, as well as the Committee noting that it will have access to privileged documents and communications within the Debtor's possession, custody or control, the Respondents have significant concerns about the 4th RFP.

4.      Those concerns are generally centered upon the series of shared services and administration agreements between the Debtor and Rand, Atlas IDF, Rand PE Fund and Rand Insurance Fund (as those terms are defined in the Second Amended and Restated Back Office Shared Services and Administration Agreement (cumulatively the "**Respondents' Shared Services Agreement**" the named Respondents and their Affiliates as defined in Respondents Shared Services Agreement) contractually and in practice, have all of their data housed with the Debtor (likely within Debtor's custody or control as commonly understood).  Emails, books and records, information and data pertaining to the business of the Respondent funds, with prior, present and future potential investors of the Funds and communications that the Debtor receives or which are exchanged between Parties, are to remain confidential.

---

[3] Though the Final Term Sheet's provisions, in a sense makes what is the Debtor's, also the Committee's on account of the Committee being a qua-trustee relative to Estate Claims, the necessary search for data as to what Estate Claims exist, against whom and why, has used requests for production normally utilized amongst party litigants under FRBP 7034 as the vehicle to direct the Debtor as to what the Committee wants to see in fulfilling its mission regarding the Estate Claims.  Are these requests by another entity to the Debtor or something different?  It is surely not facially legal process against the Respondents directly.

**Reply to: a) Unsecured Creditors' Committee's Emergency
Motion to Compel Production by Debtor and b) Debtor's
Motion for Entry of a Protective Order...**                              **Page 3 of 8**

5.      The Respondents' Shared Service Agreement of course contains an out for the Debtor (denoted as the Fund Administrator therein).  Information and data collected and housed with the Debtor can be disclosed when required to do so by law, courts, governmental agencies. regulatory authorities, or self-regulatory authorities or pursuant to the applicable laws or regulations.  Section 2.01(e) of Respondents' Shared Service Agreement.  The Debtor is required, and has to date, complied with the requirement that it notify the relevant Respondents at least five (5) days prior to any disclosures excused by Section 2.01(e).  Prior to the current circumstance, none of the data requested by the Committee to the Debtor that brought Section 2.01(e) into play was problematic to the Respondents and such information was supplied without objection from the Respondents as not being confidential.

6.      But though the stated dispute before the Court does not appear to bring up this issue, the 4th RFP, as noted brings this up through the roughly twenty-two RFP's directed at relations and dealings with the Respondents.  It is the circumstances of the Respondents' Shared Services Agreement and the ostensible possession, custody and control of Respondents' data by the Debtor that is troublesome and generates the Respondents' reply[4].

### Respondents' Duties to Their Investors and Their Attorney Client Privileges

7.      The SEC has sued investment advisers, such as some of Respondents, for failing to properly safeguard their client information.  The SEC has cited the broad reach of Section 206

---

[4] Respondents are aware of the APO's general provision that 'Party' or 'Parties' means any person or entity that (1) produces, (2) designates,(3) receives, formally or informally, or (4) reviews any Discovery Materials designated as Confidential or Highly Confidential Information.  But in no instance have the Respondents been asked to so act.  Rather, the Debtor is being asked to act.  It is unclear whether the Debtor, in notifying the Respondents that information the Debtor has in its possession, custody or control, on account of the Respondents' Shared Services Agreement, gives the Respondent coverage under the APO for complying with these functional discovery requests.  Respondents are not being asked how they would prefer subsequent documents that the Debtor must provide, be classified under the APO either.

**Reply to: a) Unsecured Creditors' Committee's Emergency
Motion to Compel Production by Debtor and b) Debtor's
Motion for Entry of a Protective Order...**                                  **Page 4 of 8**

under the Investment Advisers Act of 1940, which mandates that investment advisers owe a fiduciary duty to clients and must safeguard their accounts and any related information. Moreover, Rule 30(a) of Regulation S-P (17 C.F.R. § 248.30(a)) (the "**Safeguards Rule**"), which the SEC adopted in 2000, requires that every investment adviser registered with the SEC adopt policies and procedures reasonably designed to: (1) insure the security and confidentiality of customer records and information; (2) protect against any anticipated threats or hazards to the security or integrity of customer records and information; and (3) protect against unauthorized access to or use of customer records or information that could result in substantial harm or inconvenience to any customer. The SEC also adopted amendments to the Safeguards Rule, effective January 2005, to require that the policies and procedures adopted thereunder be in writing.

8.      The Respondents also have contractual obligations with certain of its investors regarding privacy and confidentiality that the Respondents must attend to faithfully. In some cases, the Respondents too, have outs and exceptions when there are requests for data which are generated in the context of legal proceedings and applicable regulatory or administrative proceedings (see Subscription Agreement §§ 7(dd)).

9.      Then there are the concerns about the Respondents' attorney client privileges being breached; whether those privileges are in the context of a joint privilege with the Debtor or whether the communications are solely between the Respondents and their respective counsels.  While the ESI dispute as to the nine (9) custodians referenced in the papers that bring this matter to the Court's attention does not appear to address the Respondents – the 4th RFP surely does (even though they are not directed at the Respondents, the Debtor saw fit to notify the Respondents that Section 2.01(e) was now in play as to the Debtor and its obligations to Respondents under the Respondents' Shared Services Agreement).

**Reply to: a) Unsecured Creditors' Committee's Emergency**
**Motion to Compel Production by Debtor and b) Debtor's**
**Motion for Entry of a Protective Order...**                                    **Page 5 of 8**

### The Respondents' Conundrum

10.     But, the Respondents are not being directly asked to act.  There is no RFP sent to the Respondents, no 2004 examination aimed at the Respondents, no subpoena, and no litigation that would bring in Rule 7034 or Rule 7037 into play by which the Respondents could seek to get a protective order, likely akin to the APO.  As noted, it is unclear whether Respondents can claim coverage under the APO.

11.     This uncertain circumstance and data and information sharing methodology between the Debtor and the qua-trustee status of the Committee as to Estate Claims leaves the Respondents in a risky place relative to its duties noted above to its investors.  Respondents' data is subject to review and production to the Committee, but it ostensibly only has the 5 day window to complain to the Debtor about it after the Debtor notifies Respondent of those requests.  Moreover, the Respondents have no means by which they can designate whether any information to be produced or shared with the Committee is Confidential Information or Highly Confidential Information, and since it is not actually producing the documents, either formally or informally.

### A Likely Solution

12.     Mindful of the clock that is ticking on the Committee's determination to pursue Estate Claims, the only solution, regardless of how the ESI issue or the requests in the 4th RFP are addressed between the Debtor and the Committee, is to: a) have the Respondents expressly made parties to the APO and on account of such inclusion in the APO expressly being subject to legal process akin to legal processes of discovery had the Respondents been parties to litigation, so that Respondents can rely upon its recognized confidentiality outs; b) have all of the documents produced by the Debtor on account of the Respondents' Shared Services Agreement deemed to be Highly Confidential (instead of a document by document review and designation of Confidential

**Reply to: a) Unsecured Creditors' Committee's Emergency**
**Motion to Compel Production by Debtor and b) Debtor's**
**Motion for Entry of a Protective Order...**                                                         **Page 6 of 8**

or Highly Confidential or none of the above that could grind the process to a halt); c) as to any responses to the 4th RFP or any subsequent requests that could affect the Respondents' attorney client privileges, go through a more vigorous review to protect that even more sensitive set of data; and d) have a log or record kept of items produced in this context so that the Respondents can ascertain what of its documents have been produced by the Debtor to the Committee through this mechanism set up through the Final Term Sheet.

WHEREFORE PREMISES CONSIDERED the Respondents request the Court grant the Respondents the status and the protections noted in paragraph 12 above in the context of discovery proceeding under the regime of the Advanced Term Sheet and the Committee's status as a qua-trustee as to Estate Claims, if the Debtor and the Committee and the Respondents cannot provide the appropriate protections amongst themselves, albeit with the Court's imprimatur on an agreed order resolving these issues.

Dated July 15, 2020

Respectfully submitted by:

/s/ *E. P. Keiffer*

E. P. Keiffer (TX Bar No. 11181700)
ROCHELLE MCCULLOUGH LLP
325 North St. Paul Street, Suite 4500
Dallas, Texas 75201
Telephone: (214) 580-2525
Facsimile: (214) 953-0185
Email: pkeiffer@romclaw.com

**ATTORNEYS FOR RESPONDENTS**

**Reply to: a) Unsecured Creditors' Committee's Emergency
Motion to Compel Production by Debtor and b) Debtor's
Motion for Entry of a Protective Order...**                    **Page 7 of 8**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Reply to a) Unsecured Creditors' Committee's Emergency Motion to Compel Production by Debtor (Dkt. No. 808) and b) Debtor's Motion For Entry of (I) a Protective Order, or, in the Alternative, (II) an Order Directing the Debtor to Comply with Certain Discovery Demands Tendered by the Official Committee of Unsecured Creditors, Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7034) [Dkt. No. 810]* was served via electronic means pursuant to the Court's ECF noticing system on the 15th day of July, 2020.

/s/ E. P. Keiffer
E. P. Keiffer

**Reply to: a) Unsecured Creditors' Committee's Emergency
Motion to Compel Production by Debtor and b) Debtor's
Motion for Entry of a Protective Order...** **Page 8 of 8**