FROST BROWN TODD LLC
Mark A. Platt, Esq.
Texas Bar No. 00791453
2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201
Tel: 214-545-3474
Fax: 214-545-3473
Email: mplatt@fbtlaw.com

JENNER AND BLOCK, LLP
Terri L. Mascherin
353 North Clark Street
Chicago, IL 60654-3456
(312) 222-9350
Email: TMascherin@jenner.com

Marc B. Hankin
919 3rd Avenue
New York, NY 10022
(212) 891-1647
Email: MHankin@jenner.com

*Counsel for the Redeemer Committee of the Highland Crusader Fund
and the Crusader Funds[1]*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

## REDEEMER COMMITTEE OF THE HIGHLAND CRUSADER FUNDS AND THE CRUSADER FUNDS' OBJECTION TO THE PROOF OF CLAIM OF UBS AG, LONDON BRANCH AND UBS SECURITIES, LLC AND JOINDER IN THE DEBTOR'S OBJECTION

---

[1] For purposes of this Objection and Joinder, Frost Brown Todd LLC is counsel only to the Redeemer Committee and Jenner & Block, LLP is counsel to the Redeemer Committee, and for the limited purpose of this Objection, the Crusader Funds.

1

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 5

II.    JURISDICTION .................................................................................................. 8

III.   BACKGROUND ................................................................................................. 8

     A.     Fund Counterparties Fail to Meet Margin Calls in 2008. ....................... 8

     B.     Highland Affiliates Engage in Fall 2008 Transfers ................................. 9

     C.     The Fall 2008 Transfers are Unwound on March 20, 2009. .................... 9

     D.     UBS Sues Over the Restructured Warehouse Transaction and Its Claim
           Against Highland Is Dismissed............................................................. 10

     E.     New York Appellate Division Dismisses Claims Against Highland as
           Barred by Res Judicata.......................................................................... 11

     F.     In 2013, Highland Moves for Summary Judgment................................ 12

     G.     The New York Court Holds the Phase I Trial, and Finds the Fund
           Counterparties Liable............................................................................. 14

     H.     In 2015, UBS Released Claims Against Highland Arising From the March
           2009 Transfers to the Credit Strategies Fund and the Crusader Fund. ................. 15

IV.   ARGUMENT..................................................................................................... 16

     A.     Standard ................................................................................................. 17

     B.     Several New York Court Rulings Bar UBS from Seeking Damages From
           the Debtor Arising From Conduct Occurring Before February 24, 2009............. 17

     C.     The Settlement Agreements Between UBS and the Crusader and Credit
           Strategies Funds Released UBS's Claims for Most of the Damages from
           the March 2009 Transfers. .................................................................... 21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Armstrong*,
  347 B.R. 581 (Bankr. N.D. Tex. 2006) ................................................................13

*In re Bellucci*,
  119 B.R. 763 (Bankr. E.D. Cal. 1990) ................................................................15

*Matter of Brady, Texas, Mun. Gas Corp.*,
  936 F.2d 212 (5th Cir. 1991) ............................................................................14

*In re City Equities Anaheim, Ltd.*,
  22 F.3d 954 (9th Cir. 1994) ..............................................................................17

*In re De La Fuente*,
  409 B.R. 842 (Bankr. S.D. Tex. 2009) ...............................................................18

*In re Highland Capital Mgmt., L.P.*,
  19-34054-sgj11 (N.D. Tex.) ....................................................3, 9, 14, 15, 17, 20, 21

*In re Mortg. Analysis Portfolio Strategies, Inc.*,
  221 B.R. 386 (Bankr. W.D. Tex. 1998) ...............................................................17

*In re Ocasio*,
  10 F. App'x 531 (9th Cir.2001) .........................................................................15

*Shriners Hosp. for Children v. McCarthy Bros. Co.*,
  80 F. Supp. 2d 707 (S.D. Tex. 2000) ..................................................................21

*UBS Sec. LLC v. Highland Capital Mgmt., L.P.*,
  893 N.Y.S.2d 869 (N.Y. App. Div. 2010) ...........................................................5, 7

*UBS Sec. LLC v. Highland Capital Mgmt., L.P., et al*,
  86 A.D.3d 469 (N.Y. App. Div. 2011) ........................................................8, 14, 16

*UBS Sec. LLC v. Highland Capital Mgmt., L.P.*,
  93 A.D.3d 489 (N.Y. App. Div. 2012) .................................................................14

*UBS Sec. LLC v. Highland Capital Mgmt., L.P., et al*,
  L.P., 159 A.D.3d 512 (N.Y. App. Div. 2018) ...............................................9, 10, 14

*UBS Sec. LLC v Highland Capital Mgmt., L.P.*,
  No. 650752/2010 (N.Y. Sup. Ct.) .............................................................8, 11, 14, 17

*UBS Sec. LLC v. Highland Crusader Holding Co.,*
No. 652646/2011 (N.Y. Sup. Ct.) .......................................................................6, 8

*UBS Sec. LLC, et al v. Highland Capital Mgmt., L.P., et al,*
No. 650097/2009 (N.Y. Sup. Ct.) .................................................................5, 10, 11

**Statutes**

11 U.S.C. § 502(a) ..........................................................................................13

11 U.S.C. § 502(b)-(d) ......................................................................................4

11 U.S.C. § 558 ...............................................................................................4

28 U.S.C. §§ 157 and 1334 ...............................................................................4

28 U.S.C. §§ 157(b)(2)(A), (B) and (L)................................................................4

28 U.S.C. §§ 1408 and 1409 .............................................................................4

§§ 502(b)-(d) and 558 of Title 11 of the United States Code ...........................................1

**Other Authorities**

Fed. R. Bankr. P.3001(f) ..................................................................................13

Rule 3007 of the Federal Rules of Bankruptcy Procedure .......................................1, 4

Pursuant to sections 502(b)-(d) and 558 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) the Redeemer Committee of the Highland Crusader Funds (the "Redeemer Committee") and (ii) Highland Crusader Offshore Partners, L.P., Highland Crusader Fund, L.P., Highland Crusader Fund, Ltd. and Highland Crusader Fund II, Ltd. (collectively, the "Crusader Funds")[2] object to Proof of Claim Nos. 190 and 191, submitted by UBS AG, London Branch and UBS Securities, LLC (together, "UBS" and such claims, the "UBS Claim"), and join in the objection to the UBS Claim submitted by Highland Capital Management, L. P. ("Highland" or the "Debtor")[3]

## I.    INTRODUCTION

UBS asserts that the Debtor is liable for breaches of contract by certain of its indirect subsidiaries, and for alleged fraudulent transfers involving other subsidiaries and funds that the Debtor currently or previously managed.  UBS, the Debtor, and several of the Debtor's affiliates have been engaged in litigation that, prior to the commencement of the Debtor's chapter 11 case, had been ongoing since 2009 in the New York State courts (collectively, the "New York Courts"). The Redeemer Committee and the Crusader Funds have a unique perspective on the merits of the UBS Claim because two of the Crusader Fund entities were defendants in that action. The Redeemer Committee is a committee of investors, elected pursuant to the Scheme and Plan of Liquidation of the Crusader Funds approved by the Bermuda Court, to oversee Highland's management of the Crusader Funds through what was intended to be the complete liquidation of

---

[2] Highland Crusader Holding Corporation ("Crusader Holding"), a signatory to the UBS settlement agreement described in Section IV(C), is a wholly owned subsidiary of the Crusader master fund—Highland Crusader Offshore Partners, L.P.

[3] *See* Debtor's Obj. to Proofs of Claim 190 and 191 of UBS Sec. LLC And UBS AG, London Branch, *In re Highland Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Aug. 7, 2020) (Doc. No. 928).

the fund. The Redeemer Committee played a central role in the negotiation of the settlement of UBS' claims against the Crusader Funds, pursuant to which UBS released the Debtor from much of the relief that UBS now seeks in its claim.

UBS asserts that the UBS Claim arises from three principal events: (1) in the fall of 2008, certain Highland affiliates failed to honor certain contractual margin calls in connection with a proposed securitization financing; (2) in the fall of 2008, certain Highland affiliates engaged in a series of asset transfers with Highland-managed funds; and (3) on March 20, 2009, Highland affiliates unwound those transactions with the Highland-managed funds. UBS claims the Debtor owes UBS at least $1,039,957,799—the amount of a judgment that UBS obtained in February 2020 arising from the non-Debtor affiliates' breaches of contract by failing to honor the margin calls in 2008.

The majority of the UBS Claim is barred by res judicata. The New York Courts have held that res judicata bars UBS from asserting claims against Highland that are based on conduct that occurred before February 24, 2009, the date on which UBS filed its initial complaint in New York. As discussed below, that ruling was the result of UBS filing a complaint that only asserted a claim against Highland for indemnification, a claim that was later dismissed. Notwithstanding this absolute bar, UBS asserts that the Debtor should be held liable for pre-February 24, 2009 conduct, including that of certain of its affiliates, which ultimately resulted in the New York trial court entering a $1,039,957,799 judgment against those entities. It is telling that UBS recently acknowledged that it has never even alleged in the New York action that Highland was the alter ego of the judgment debtors. *See* UBS Reply ISO its Mot. to Lift Automatic Stay at 6, *In re Highland Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Jun. 11, 2020) (Doc. No. 733B); Hr'g Trans. at 30-31, *In re Highland Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Jun. 15, 2020)

(Doc. No. 746A). Any such alter ego claim would be a new path to establish liability that is barred by res judicata. To the extent that the UBS Claim is based on the Debtor's pre-February 24, 2009 conduct, res judicata requires disallowance of that claim.

After giving effect to res judicata, the surviving part of the UBS Claim is based on certain asset transfers made by an affiliate of the Debtor, Highland Financial Partners LP ("HFP"), in March 2009. UBS asserts that those transfers were fraudulent conveyances, and that Highland breached the implied duty of good faith and fair dealing by participating in those transfers. UBS named several Highland-managed funds that received assets in March 2009 as defendants in the New York action, including two Crusader Fund entities—Highland Crusader Offshore Partners, L.P. ("Crusader Offshore Fund") and Highland Crusader Holding Corporation ("Crusader Holding")—as well as Highland Credit Strategies Master Fund, L.P. (the "Credit Strategies Fund"). These funds later entered into settlement agreements with UBS, and Highland was a signatory to each agreement. The settlement agreements provide, in relevant part, that UBS released Highland from any ███████████████████████████████████████████████ ██ each fund as alleged by UBS. The UBS releases of Highland foreclosed the possibility that Highland could later be found liable to UBS in connection with the transfers to those funds. This protection was of central importance to the funds ███████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████

The chapter 11 process does not provide an alleged creditor the opportunity to relitigate matters that are the subject of final, non-appealable decisions of a state court, or prevent enforcement of valid and binding settlement agreements. As demonstrated below, UBS ignores or misconstrues the New York Courts' decisions and the settlement agreements to attempt to avoid

the necessary conclusion that the UBS Claim must be disallowed as a matter of law other than to the extent it seeks damages arising from the March 2009 transfer of assets to entities other than Crusader and Credit Strategies. Based on UBS's expert valuations, in no instance would UBS's claim against the Debtor exceed ███████ before prejudgment interest.

## II.    JURISDICTION

The Court has jurisdiction over this matter under the Bankruptcy Code and pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B) and (L). Venue is proper in this District under 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. § 502(b)-(d) and Fed. R. Bankr. P. 3007.

## III.    BACKGROUND

### A.    Fund Counterparties Fail to Meet Margin Calls in 2008.

In April 2007, UBS entered into agreements (collectively, the "CLO Warehouse Agreements") with Highland and two affiliates of Highland—Highland CDO Opportunity Master Fund, L.P. ("CDO") and Highland Special Opportunities Holding Company ("SOHC") (together, the "Fund Counterparties")—to establish a warehouse facility to finance the acquisition of syndicated leveraged loans and credit default swaps. (Ex. 1, 4/12/07 Original Synthetic Warehouse Agreement; Ex. 2, 4/20/07 Original Engagement Ltr.; Ex. 3, 5/22/07 Original Cash Warehouse Agreement.) Those assets, in turn, were to serve as the basis for a securitization pursuant to which notes would be sold to investors.

Due to market conditions, the securitized offering did not occur by the contractual deadline, and the CLO Warehouse Agreements terminated. In March 2008, UBS, Highland, and the Fund Counterparties entered into restructured warehouse agreements (collectively, the "Restructured CLO Warehouse Agreements"). (*See* Ex. 4, UBS Securities LLC Proof of Claim ¶7, *In re Highland*

*Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Jun. 26, 2020) (Claim No. 190).) The Restructured CLO Warehouse Agreements gave UBS the right to make margin calls on the Fund Counterparties in the event of a decline in the market value of the loans and swaps.[4]

As the market deteriorated in the fall of 2008, UBS made three margin calls on the Fund Counterparties. The Fund Counterparties satisfied the first two margin calls in September and October 2008, using funds provided by SOHC's parent corporation, HFP. (Ex. 5, Decision and Order at 4, *UBS Sec. LLC, et al v. Highland Capital Mgmt., L.P., et al*, No. 650097-2009 (N.Y. Sup. Ct. 2019). The Fund Counterparties failed to satisfy a third margin call in November 2008, and UBS issued a notice of termination of the Restructured CLO Warehouse Agreements in December. *Id.*[5]

### B. Highland Affiliates Engage in Fall 2008 Transfers

Meanwhile, during the fall of 2008, certain funds then managed by Highland—including the Crusader Offshore Fund—transferred certain assets to HFP in ████████████████ (the "<u>Fall 2008 Transfers</u>"). ████████████████████████████████



████ HFP was not a party to the Restructured CLO Warehouse Agreements.

### C. The Fall 2008 Transfers are Unwound on March 20, 2009.

The parties to the Fall 2008 Transfers unwound those transactions on March 20, 2009 ("<u>March 2009 Transfers</u>"). ████████████████████████████████████████

---

[4] Furthermore, those agreements explicitly placed the risk of loss on the Fund Counterparties, and not Highland, as the New York Appellate Division held. *UBS Sec. LLC v. Highland Capital Mgmt., L.P., et al.*, 893 N.Y.S.2d 869 (N.Y. App. Div. 2010) ("the agreements between the parties contain no promise on the part of Highland to undertake liability with respect to the investment losses suffered by plaintiffs, or to ensure or guarantee the performance of [Fund Counterparties]' obligations to bear the risk of investment losses.").

[5] UBS's Proof of Claim employs sleight of hand by defining the term "Highland" to include the Fund Counterparties. (*See* Ex. 4, UBS Securities LLC Proof of Claim ¶¶2, 11, *In re Highland Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Jun. 26, 2020) (Claim No. 190).) Accordingly, while the UBS Claim states that "Highland posted the required collateral" and refers to "Highland's default on UBS's third margin call," it was the Fund Counterparties that posted collateral and failed to meet the final margin call. *See id.* at ¶¶11-12.

As a result, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ HFP returned the assets to the transferors, including the

Crusader Fund and the Credit Strategies Fund. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ According to UBS's expert in the New York action, HFP transferred

assets with a market value of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



### D. UBS Sues Over the Restructured Warehouse Transaction and Its Claim Against Highland Is Dismissed.

UBS filed its first complaint on February 24, 2009, against the Fund Counterparties and

Highland. (Ex. 10, Compl., *UBS Sec. LLC v Highland Capital Mgmt., L.P., et al*, No. 650097/09

(N.Y. Sup. Ct. Feb. 24, 2009).) UBS's original complaint contained only one claim against

Highland—a contractual claim for indemnification. *Id.* ¶¶50-56. Highland moved to dismiss that

claim, arguing that the indemnification provision did not apply to the particular losses claimed by

UBS. *UBS Sec. LLC v. Highland Capital Mgmt., L.P., et al*, 893 N.Y.S.2d 869 (N.Y. App. Div.

2010). The indemnification claim was dismissed by the New York appellate court. *UBS Sec. LLC

v. Highland Capital Mgmt., L.P.*, *et al*, 893 N.Y.S.2d 869 (N.Y. App. Div. 2010) ("the agreements

---

[6] Highland Crusader Holding Corporation is a wholly-owned subsidiary of the Crusader Fund. (Ex. 8, Compl., *UBS Sec. LLC v. Highland Crusader Holding Co.*, No. 652646/2011 ¶23 (N.Y. Sup. Ct. Sept. 26, 2011); Ex. 9, 6/17/15 UBS and Crusader Fund Settlement Agreement, at 1.)

between the parties contain no promise on the part of Highland to undertake liability with respect to the investment losses suffered by plaintiffs, or to ensure or guarantee the performance of [Fund Counterparties]' obligations to bear the risk of investment losses.").

### E. New York Appellate Division Dismisses Claims Against Highland as Barred by Res Judicata.

On February 16, 2010, UBS sought amend its original complaint to assert new claims against Highland and others[7] for claims arising from the Restructured Warehouse transaction, the Fall 2008 Transfers and the March 2009 Transfers, alleging that the March 2009 Transfers were fraudulent conveyances that benefitted Highland, and that, by causing the unwinding, Highland breached the implied covenant of good faith and fair dealing in the Restructured Warehouse Agreement. (Ex. 12, 2/16/10 UBS Ltr. to Court, *UBS Sec. LLC v Highland Capital Mgmt., L.P.*, No. 650097/2009 (N.Y. Sup. Ct.).) The New York Supreme Court denied the portion of UBS's motion that sought leave to add new claims against Highland, agreeing with Highland's position that a party cannot amend a pleading that has already been dismissed. (Ex. 11, Ruling at 5, *UBS Sec. LLC v Highland Capital Mgmt., L.P.*, No. 650097/2009 (N.Y. Sup. Ct. Jun. 17, 2010).)

Thereafter, UBS commenced a new action against Highland, in which it asserted the causes of action it had unsuccessfully sought to add to the original complaint. (Ex. 13, Compl., *UBS Sec. LLC v Highland Capital Mgmt., L.P.*, No. 650752/2010 (N.Y. Sup. Ct. Jun. 28, 2010).).[8]

---

[7] UBS sought to add Highland Financial Partners, LP, Highland Credit Strategies Fund, Highland Crusader Offshore Partners, LP, Highland Credit Opportunities CDO, LP, and Strand Advisors, Inc. (*See* Ex. 11, Ruling at 2, *UBS Sec. LLC v Highland Capital Mgmt.*, L.P., No. 650097/09 (N.Y. Sup. Ct. Jun. 17, 2010).)

[8] The trial court consolidated the second action against Highland with the original action that had pending claims against CDO, SOHC, HFP, Credit Strategies Fund, Crusader Offshore Fund, Highland Credit Opportunities CDO, L.P., and Strand Advisors, Inc. (Ex. 14, Consolidation Order, *UBS Sec. LLC v Highland Capital Mgmt., L.P.*, No. 650097/2009 (N.Y. Sup. Ct. Nov. 4, 2010.) UBS also later filed a separate lawsuit against Crusader's wholly owned subsidiary, Crusader Holding. (Ex. 8, Compl., *UBS Sec. LLC v Highland Crusader Holding Co.*, No. 652646/2011 (N.Y. Sup. Ct. Sept. 26, 2011).)

Highland moved to dismiss the new action, and the trial court granted the motion in part and denied it in part. *UBS Sec. LLC v Highland Capital Mgmt. L.P., et al*, No. 650097/09, 2010 WL 6268233 (N.Y. Sup. Ct. Aug. 05, 2010).   The parties appealed. *UBS Sec. LLC v. Highland Capital Mgmt., L.P., et al*, 86 A.D.3d 469 (N.Y. App. Div. 2011). The appellate court dismissed the fraudulent inducement claim against Highland, and held that to the extent UBS's new claims for breach of the covenant of good faith and fair dealing and fraudulent conveyance arise from conduct alleged to have occurred before the commencement of the original action, *i.e.*, February 24, 2009, the claims must be dismissed. *Id.* The appellate court reasoned:

> Here, to the extent the claims against Highland in the new complaint implicate events alleged to have taken place before the filing of the original complaint, res judicata applies. That is because UBS's claims against Highland in the original action and in this action all arise out of the restructured warehousing transaction.

*Id*. Because this ruling precluded UBS from pursuing claims against Highland arising from conduct occurring before February 24, 2009, the appellate court barred UBS from asserting any claims based on (1) the Fund Counterparties' failure to meet the margin calls in late 2008—the claim on which the trial court ultimately found the Fund Counterparties liable in the amount of $1,039,957,799, and (2) the Fall 2008 Transfers. As a result of this ruling, the only surviving claims against the Debtor arise from the March 2009 Transfers.

### F.     In 2013, Highland Moves for Summary Judgment

In October 2013, Highland, HFP, and other defendants moved for summary judgment on UBS's remaining claims.  The trial court recognized that "the Appellate Division decisions preclude any fraudulent conveyance claims arising before February 24, 2009. They therefore preclude UBS from recovering for any alleged fraudulent transfers made before that date." (Ex. 15, Ruling at 25, *UBS Sec. LLC v Highland Capital Mgmt., L.P.*, *et al*, No. 650097/2009 (N.Y.

Sup. Ct. Mar. 24, 2017).) The court stated that UBS could still introduce evidence of pre-February 24, 2009 conduct to support claims that only arose after February 24, 2009:

> However, proof of pre-February 24, 2009 transfer, and of other conduct involving the operation of the Highland entities, is not prohibited to the extent necessary to prove UBS's claims for post-February 24, 2009 fraudulent conveyances, which are maintainable under the Appellate Division decisions under an alter ego theory.[9]

*Id.* The court also dismissed UBS's claim against Highland for breach of good faith and fair dealing because the contract at issue, the Restructured CLO Warehouse Agreement, was terminated before February 24, 2009. *Id.* at 34-35.

The parties appealed. Initially, the Appellate Division reinstated the claim for breach of good faith and fair dealing and dismissed the entirety of the fraudulent conveyance claim against Highland, including for the March 2009 Transfers, but the court later vacated that opinion. (Ex. 17, Order at 3-4, *UBS Sec. LLC v. Highland Capital Mgmt., L.P., et al*, No. 650097/2009 (N.Y. App. Div. 2017)); *UBS Sec. LLC v. Highland Capital Mgmt.*, *L.P., et al*, 159 A.D.3d 512, 514 (N.Y. App. Div. 2018). In its subsequent decision, the Appellate Division held that the fraudulent conveyance and breach of good faith and fair dealing claims could survive, but only to the extent they arose from conduct occurring after February 24, 2009:

> There is no dispute that plaintiffs are precluded from pursuing fraudulent conveyance and breach of implied covenant claims that arose prior to February 24, 2009. However, neither our prior decisions nor the doctrine of res judicata bars plaintiffs from introducing evidence of pre-February 24, 2009 conduct to the extent necessary to prove, with respect to post-February 24, 2009 conduct, their alter ego, fraudulent conveyance and breach of implied covenant claims. The court correctly rejected defendants' arguments in support of dismissal of the remaining claims at issue.

---

[9] The alter ego claim referenced in the court's decision was a claim against HFP, not against Highland. (*See* Ex.16, 2d Am. Compl., *UBS Sec. LLC v Highland Capital Mgmt., L.P., et al*, No. 650097/09 at ¶194 (N.Y. Sup. Ct. May 11 2011); Hr'g Trans. at 30-31, *In re Highland Capital Mgmt L.P., et al*, 19-34054-sgj11 (N.D. Tex. Jun. 15, 2020) (Doc. No. 746A).) UBS did not allege an alter ego claim against Highland.

*UBS Sec. LLC v. Highland Capital Mgmt., L.P., et al*, 159 A.D.3d 512, 514 (N.Y. App. Div. 2018).

>   **G.    The New York Court Holds the Phase I Trial, and Finds the Fund
>   Counterparties Liable.**

Although the New York courts barred UBS from pursuing claims against Highland arising

before February 24, 2009, UBS's originally-pleaded breach of contract claims against the Fund

Counterparties for failing to meet the margin calls in the fall of 2008 survived. (Ex. 10, Compl.

¶¶38-49, *UBS Sec. LLC v Highland Capital Mgmt., L.P., et al*, No. 650097/2009 (N.Y. Sup. Ct.

Feb. 24, 2009).) The court bifurcated the case for trial, ruling that Phase I of the trial would be a

bench trial on the breach of contract claims against the Fund Counterparties, and the remaining

claims, including all of the claims involving post-February 24, 2009 conduct, would be tried in

Phase II. (Ex. 18, 5/1/2018 Hearing Tr. at 35:15-22, *UBS Securities LLC, et al v. Highland Capital

Mgmt. L.P., et al*, No. 650097-2009 (N.Y. Sup. Ct. May 1, 2018).)

The New York Court held the Phase I bench trial in July 2018, and on November 14, 2019

the court issued a decision finding the Fund Counterparties liable for breaching the Restructured

CLO Warehouse Agreements and awarding damages of $519,374,149, which ultimately resulted

in entry of a judgment for $1,039,957,799, with prejudgment interest. (Ex. 5, Decision and Order

at 39 *UBS Sec. LLC, et al v. Highland Capital Mgmt. L.P., et al*, No. 650097/2009 (N.Y. Sup. Ct.

Nov. 14, 2019).; Ex. 19, Judgment at 2, *UBS Sec. LLC v Highland Capital Mgmt., L.P., et al*, No.

650097/2010 (N.Y. Sup. Ct. Feb. 10, 2020).)  The court made no findings with respect to Highland

or the remaining defendants,[10] and those claims were scheduled to be heard during Phase II of the

---

[10] According to UBS, the remaining defendants and claims other than Highland are: (1) Highland CDO Master Fund, L.P., with claims for fraudulent inducement and fraudulent conveyance; (2) Highland Special Opportunities Holding Company, with claims for fraudulent inducement and fraudulent conveyance; (3) Highland Financial Partners, L.P., with claims for alter ego and fraudulent conveyance; (4) Strand Advisors, Inc., for general partner liability; and (5) Highland Credit Opportunities CDO, L.P., with a claim for fraudulent conveyance. (Ex. 20, Pl's Mot. to Bifurcate at 2-3, 15-16, *UBS Sec. LLC, et al v. Highland Capital Mgmt. L.P., et al*, No. 650097-2009 (N.Y. Sup. Ct. Apr. 18, 2018).)

proceedings. On October 16, 2019, the Debtor filed for chapter 11 protection, staying the proceedings against it.

Only two counts remain against the Debtor: (1) fraudulent conveyance, actual and constructive, premised on the March 2009 Transfers, in which HFP transferred assets to Highland and to the Highland-managed fund co-defendants; and (2) breach of the implied covenant of good faith and fair dealing attendant to the contracts underlying the Restructured CLO Warehouse Agreements, based on the March 2009 Transfers.

### H. In 2015, UBS Released Claims Against Highland Arising From the March 2009 Transfers to the Credit Strategies Fund and the Crusader Fund.

In 2015, Highland Crusader Offshore Partners, L.P., Highland Crusader Holding Corporation, and Highland Credit Strategies Master Fund, L.P. entered into settlements with UBS. Highland was a signatory to both the Crusader and Credit Strategies settlement agreements. Each agreement settled all of UBS's claims against the applicable fund. The settlement agreements also released *Highland* from claims by UBS arising from the March 2009 Transfers to the Crusader and Credit Strategies funds. Highland is one of the





The Redeemer Committee negotiated this settlement agreement with UBS on the Crusader Fund's behalf. The Redeemer Committee negotiated for UBS's release of Highland to foreclose the risk that, in the event Highland was held liable to UBS for a transfer to the Crusader Fund,

According to UBS's expert in the New York action, the assets that were the subject of the alleged fraudulent transfers to the two settling funds represented approximately ███ of the value of all of the assets that were transferred on March 20, 2009. ███████████████ ███████████████ According to that expert, the market value of remaining assets that were not the subject of these releases was ███████████

## IV. ARGUMENT

In order to establish its claim for over $1 billion against the Debtor, UBS must ignore the decisions issued by the New York Courts and the settlement agreements pursuant to which it released the Debtor from liability arising from most of the March 2009 Transfers. The chapter 11 process, however, does not grant a creditor a "do over" so that it can relitigate claims that are the subject of final, non-appealable decisions issued by state courts, or valid and binding settlement agreements. For the reasons discussed below, the UBS Claim should be disallowed as a matter of law except to the extent UBS is seeking damages with respect to the remaining assets that it alleges

were the subject of fraudulent transfers to entities other than Crusader or Credit Strategies in March

2009, which according to its expert were valued at ███████████

### A.    Standard

The Bankruptcy Code establishes a burden-shifting framework for proving the amount and

validity of a claim. "A claim . . . , proof of which is filed under section 501 [of the Bankruptcy

Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. §502(a). "A proof of

claim executed and filed in accordance with the [Bankruptcy Rules] shall constitute prima facie

evidence of the validity and amount of the claim." Fed. R. Bankr. P.3001(f); *see also In re*

*Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006). However, the ultimate burden of proof

for a claim always lies with the claimant. *Armstrong*, 347 B.R. at 583 (*citing Raleigh v. Ill. Dep't*

*of Rev.*, 530 U.S. 15 (2000)).

### B.    Several New York Court Rulings Bar UBS from Seeking Damages From the Debtor Arising From Conduct Occurring Before February 24, 2009.

This Court should disallow the UBS Claim to the extent it seeks to hold the Debtor liable

for any conduct predating February 24, 2009 because the New York Courts have repeatedly held

that res judicata bars any such claims. *UBS Sec. LLC v. Highland Capital Mgmt., L.P., et al*, 86

A.D.3d 469, 474 (N.Y. App. Div. 2011); *UBS v. Highland Capital Mgmt., L.P., et al*, 93 A.D.3d

489, 490 (N.Y. App. Div. 2012); *UBS Sec. LLC v Highland Capital Mgmt., L.P., et al*, No.

650097/09 at 34 (N.Y. Sup. Ct. Mar., 24 2017); *UBS Sec. LLC v. Highland Capital Mgmt., L.P.,*

*et al*, 159 A.D.3d 512, 514 (N.Y. App. Div. 2018). In its proof of claim, UBS seeks

$1,039,957,799—the exact amount of the judgment against the Fund Counterparties for their

failure to honor the margin calls in the fall of 2008—a claim entirely precluded by res judicata.

(Ex. 4, UBS Securities LLC Proof of Claim ¶24, *In re Highland Capital Mgmt., L.P.,* 19-34054-

sgj11 (N.D. Tex. Jun. 26, 2020) (Claim No. 190); Ex. 19, Judgment at 2, *UBS Sec. LLC v Highland*

*Capital Mgmt., L.P., et al*, No. 650752/10 (N.Y. Sup. Ct. Feb. 10, 2020)).). UBS claims that it is entitled to recover the judgment against the Fund Counterparties from the Debtor because Highland was "party to the same contract and exercised complete control over the two liable affiliates—under which Claimant is entitled to damages that are at least as much as the Phase I judgment amount." (Ex. 4, UBS Securities LLC Proof of Claim ¶24, *In re Highland Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Jun. 26, 2020) (Claim No. 190).) This argument flies in the face of the multiple rulings of the New York Courts to the contrary.

Those final, non-appealable New York Court rulings are binding here. *See Matter of Brady, Texas, Mun. Gas Corp.*, 936 F.2d 212, 218 (5th Cir. 1991) ("unless the Code provides otherwise, state courts have concurrent jurisdiction, and bankruptcy courts are prohibited from relitigating these matters if the state courts have already resolved them."); *In re Ocasio*, 10 F. App'x 531, 531-32 (9th Cir.2001); *In re Bellucci*, 119 B.R. 763, 769 (Bankr. E.D. Cal. 1990).

The Debtor and the Redeemer Committee each pointed out in their objections to UBS's motion to lift the automatic stay that res judicata bars UBS from pursuing these claims. *See* Debtor's Obj. to UBS's Mot. to Lift Automatic Stay ¶25-26, *In re Highland Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Jun. 3, 2020) (Doc. No. 687); Redeemer Comm. Obj. to UBS's Mot. to Lift Automatic Stay at 13-14, *In re Highland Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Jun. 8, 2020) (Doc. No. 714).) In its reply, UBS claimed that the New York courts had, in fact, held the opposite—that UBS was expressly permitted to assert claims arising from pre-February 24, 2009 conduct. (UBS Reply ISO its Mot. to Lift Automatic Stay ¶6, *In re Highland Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Jun. 11, 2020) (Doc. No. 733B) ("This is virtually identical to the [res judicata] "defense" at hand, and both the State Court and the Appellate Division rejected the Debtor's ultimate conclusion—that UBS's ability to prove its claims against

the Debtor are, in fact, "limited" to reliance on post-February 2009 conduct only.") UBS quotes

selective portions of those decisions to support its conclusion:

> The State Court rejected this point when it ruled on the Debtor's motion. *See* Docket No. 688-4 at 25 (Mar. 13, 2017 State Court Summ. J. Op.) ("This court previously rejected the contention, advanced by moving defendants here, that UBS cannot rely on events or conduct occurring before February 2009 to support its alter ego and fraudulent conveyance claims."). And the Appellate Division squarely rejected it once more on appeal. Ex. 2 at 46 (Mar. 15, 2018 Order) ("The court correctly rejected defendants' arguments" because "neither our prior decisions nor the doctrine of res judicata bars plaintiffs from introducing evidence of pre-February 24, 2009 conduct to the extent necessary to prove, with respect to post-February 24, 2009 conduct, their alter ego, fraudulent conveyance and breach of implied covenant claims.").

*Id.*

UBS's citations are misleading, at best. The full text of the lower court's ruling makes

clear that UBS is barred from pursuing claims against the Debtor arising before February 24, 2009:

> This court previously rejected the contention, advanced by moving defendants here, that UBS cannot rely on events or conduct occurring before February 2009 to support its alter ego and fraudulent conveyance claims. ***As held in the prior decision, the Appellate Division decisions preclude any fraudulent conveyance claims arising before February 24, 2009. They therefore preclude UBS from recovering for any alleged fraudulent conveyances made before that date.*** However, proof of pre-February 24, 2009 transfers, and of other conduct involving the operations of the Highland entities, is not prohibited ***to the extent necessary to prove UBS's claims for post-February 24, 2009 fraudulent conveyances, which are maintainable under the Appellate Division decisions on an alter ego theory.***

(Ex. 15, Ruling at 25, *UBS Sec. LLC v Highland Capital Mgmt., L.P., et al*, No. 650097/2009

(N.Y. Sup. Ct. Mar. 24, 2017) (emphasis added).) Similarly, UBS again selectively omits the

portion of the appellate ruling that precludes UBS from pursuing damages arising before February

24, 2009:

> ***There is no dispute that plaintiffs are precluded from pursuing fraudulent conveyance and breach of implied covenant claims that arose prior to February 24, 2009.*** However, neither our prior decisions nor the doctrine of res judicata bars plaintiffs from introducing evidence of pre-February 24, 2009 conduct to the extent necessary to prove, with respect to post-February 24, 2009 conduct, their alter ego, fraudulent conveyance and breach of implied covenant claims. The court correctly rejected defendants' arguments in support of dismissal of the remaining claims at issue.

*UBS Sec. LLC v. Highland Capital Mgmt., L.P., et al*, 86 A.D.3d 469, 474 (N.Y. App. Div. 2011) (emphasis added).

The New York Courts ruled that UBS may not pursue claims against Highland arising from conduct occurring before February 24, 2009. The language that UBS cites states only that, in pursuit of its post-February 24, 2009 claims regarding the March 2009 Transfers, UBS may introduce *evidence* of conduct predating its original complaint.

The "Phase I" judgment that UBS seeks to recover from Highland was, unequivocally, based entirely on conduct predating February 24, 2009. (Ex. 5, Decision and Order at 4-5, *UBS Sec. LLC, et al v. Highland Capital Mgmt., L.P., et al*, No. 650097-2009 (N.Y. Sup. Ct. 2019).) UBS concedes that it seeks to hold Highland liable based on that 2008 conduct, because it was "party to the same contract and exercised complete control over the two liable affiliates" *in 2008*. (*See* Ex. 4, UBS Securities LLC Proof of Claim at ¶24, *In re Highland Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Jun. 26, 2020) (Claim No. 190).) This Court should disallow UBS's claim to the extent it seeks to impose any liability on the Debtor arising from pre-February 24, 2009 conduct, including liability for the Phase I judgment.

The only remaining claims UBS has against the Debtor are for fraudulent conveyance and the breach of good faith and fair dealing with respect to the March 2009 Transfers. However, as demonstrated below, UBS entered into two settlement agreements in the New York action that

substantially reduce UBS's claim to damages ██████████ before any prejudgment interest.

### C. The Settlement Agreements Between UBS and the Crusader and Credit Strategies Funds Released UBS's Claims for Most of the Damages from the March 2009 Transfers.

This Court should disallow UBS's claim to the extent it seeks damages arising from the March 2009 Transfers to the Crusader Fund and the Credit Strategies Fund, because UBS released those claims in 2015 settlement agreements. Bankruptcy courts have the authority to enforce settlement agreements in the claims adjudication process. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 958 (9th Cir. 1994) ("A bankruptcy court, as a court of equity, likewise possesses the power to summarily enforce settlements."); *In re Mortg. Analysis Portfolio Strategies, Inc.*, 221 B.R. 386, 388 (Bankr. W.D. Tex. 1998) (holding that "this Court has the inherent power to enforce settlement agreements between parties."); *In re De La Fuente*, 409 B.R. 842, 845 (Bankr. S.D. Tex. 2009).

As described above, on March 20, 2009, HFP transferred assets ██████████ ████████████████████ according to UBS's expert in the New York action:



On June 11, 2015, UBS agreed to release Highland from ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████ That provision released all claims UBS had against Highland, whether in the form of a fraudulent conveyance claim or a breach of good faith and fair dealing claim, with respect to the March 2009 Transfers to the Credit Strategies Fund.

A few days later, on June 17, 2015, UBS agreed to release Highland from ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██ These provisions release all claims UBS had against Highland—regardless whether the claim was for breach of the implied covenant of good faith and fair dealing or for fraudulent conveyance—with respect to the March 20, 2009 Transfers to those entities.

As a result, UBS retained only claims against Highland for losses or other relief arising ██████████████████████ Credit Opportunities Fund, Credit Opportunities Holding Corporation and Highland itself:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

Based on the values provided by UBS's expert, UBS released Highland from claims arising from the transfer of assets valued at approximately ████████████ of the value of the entire transaction. ████████████████████████ In exchange for releasing its claims for relief against Crusader, Credit Strategies and Highland arising from those transfers, UBS received ██████████████████████████████ and avoided (to date) five more years of litigation against those funds. ██████████████ ████████████████████████████████████ ████████████████

The Crusader Fund paid for and deserves to receive the full benefit of its bargain for its settlement agreement with UBS. ██████████████████████████ Crusader did. And the Redeemer Committee insisted that UBS release Highland because without that release, ████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ███████████████████████████

In its reply in support of its motion to lift the automatic stay, ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ UBS Reply ISO its Mot. to Lift Automatic Stay at 9, *In re Highland Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Jun. 11, 2020) (Doc. No. 733B)  (emphasis in original).) This is, again, selective quotation. The full provision reads:



███████████████████████████████████████████████████████

████████████████████████████████ UBS further claims that ████████████

████████████████████████████████████████████████████████

████████ UBS Reply ISO its Mot. to Lift Automatic Stay at 9, *In re Highland Capital Mgmt., L.P.,* 19-34054-sgj11 (N.D. Tex. Jun. 11, 2020) (Doc. No. 733B).

But the settlement releases are not ambiguous, and their clear language controls—UBS released Highland for ████████████████████████████████████████████

████████ *Shriners Hosp. for Children v. McCarthy Bros. Co.*, 80 F. Supp. 2d 707, 710 (S.D. Tex. 2000) ("Because the settlement provision at issue in this case contains no ambiguity, it therefore must be construed in accordance with its plain meaning.") ████████████████ are both broad terms.  "'[L]osses' is legally synonymous with 'damages,'" and in its good faith and fair dealing claim, UBS is seeking damages arising from the transfers to the Crusader Fund. *Nogueiro v. Kaiser Found. Hosps.*, 250 Cal. Rptr. 478, 481 (Ct. App. 1988); *see* DAMAGES, Black's Law Dictionary

(11th ed. 2019) ("Money claimed by, or ordered to be paid to, a person as compensation for loss or injury.") Further, even if UBS's claim for damages arising from the March 2009 Transfers was somehow not ███████ UBS's Claim for damages is a request for ███████████████████ ████████████████ *Confederated Tribe of Colville Reservation v. White*, 1996 WL 33407856, at *3 (E.D. Wash. Nov. 7, 1996) ("filing a proof of claim is an affirmative act seeking relief via a court's adjudication of a dispute."); *In re Barrett Ref. Corp.*, 221 B.R. 795, 811 (Bankr. W.D. Okla. 1998) ("The filing of a proof of claim is not merely a defense, but is an affirmative claim for relief."); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 269 (1993).

UBS released all claims for any type of relief against Highland arising from the March 2009 Transfers to the two funds, including UBS's claim for breach of good faith and fair dealing arising from that transfer. The Redeemer Committee and the Crusader Fund should be given the full benefit of their bargain from the settlement agreement, and UBS should not be permitted to recover relief from the Debtor that UBS already released. The Crusader Fund and the Redeemer Committee respectfully request that this Court disallow UBS's claim to the extent it seeks to hold the Debtor liable under any legal theory for damages arising from the March 20, 2009 Transfers to the Crusader Fund or Credit Strategies Fund, including UBS's claims for fraudulent conveyance and breach of good faith and fair dealing.

## CONCLUSION

For all these reasons, this Court should disallow UBS's claim against the Debtor to the extent that it (1) seeks to hold the Debtor liable for claims arising from conduct occurring before February 24, 2009; and (2) seeks to hold the Debtor liable for claims arising from the March 2009 Transfers with respect to the asset transfers to the Credit Strategies Fund and Crusader Fund.

Dated this 7th day of August, 2020

Respectfully submitted,

*/s/ Mark A. Platt*
FROST BROWN TODD LLC
Mark A. Platt, Esq.
Texas Bar No. 00791453
2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201
Tel: 214-545-3474
Fax: 214-545-3473
Email: mplatt@fbtlaw.com

– and –

JENNER AND BLOCK, LLP
Terri L. Mascherin
353 North Clark Street
Chicago, IL 60654-3456
(312) 222-9350
Email: TMascherin@jenner.com

Marc B. Hankin
919 3rd Avenue,
New York, NY 10022
(212) 891-1647
Email: MHankin@jenner.com

*Counsel for the Redeemer Committee of the*
*Highland Crusader Fund and the Crusader Funds*[12]

---

[12] Frost Brown Todd LLC is counsel only for the Redeemer Committee and Jenner & Block, LLP is counsel to the Redeemer Committee, and for the limited purpose of this Objection, the Crusader Funds.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, that on this 7th day of August, 2020, he caused to be served a true and correct copy of the *Redeemer Committee of the Highland Crusader Funds and the Crusader Funds' Objection to the Proof Of Claim of UBS AG, London Branch and UBS Securities, LLC and Joinder in the Debtor's Objection*, by electronically filing it with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

*/s/ Mark A. Platt*
Mark A. Platt