# EXHIBIT 10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

UBS SECURITIES LLC and UBS AG, LONDON BRANCH,

                          Plaintiffs,

-against-

HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND
CDO OPPORTUNITY MASTER FUND, L.P. and
HIGHLAND SPECIAL OPPORTUNITIES HOLDING
COMPANY,

                          Defendants.

Index No. 650097/2008
Filed 2/24/2009

**COMPLAINT**

Plaintiffs, UBS Securities LLC ("UBSS") and UBS AG, London Branch ("UBS AG") (collectively, "UBS"), for their Complaint against defendants Highland Capital Management, L.P. ("Highland Capital"), Highland CDO Opportunity Master Fund, L.P. ("CDO Fund") and Highland Special Opportunities Holding Company ("SOHC," and collectively with Highland Capital and CDO Fund, "Highland" or "Defendants") allege as follows:

## NATURE OF THE ACTION

1. This action for indemnification and breach of contract arises out of substantial losses incurred by UBS in connection with a failed proposed collateralized debt obligation transaction to be sponsored by Highland Capital (the "CDO Transaction"), which contemplated that UBS would acquire and warehouse certain securities and assume certain obligations under credit default swaps, with the expectation that special purpose entities would acquire those securities and assume those obligations from UBS, and issue debt and equity securities secured by those securities and obligations. The special purpose entities were never created and the CDO Transaction never occurred. As a result, UBS has suffered losses of no less than $745 million as

before it was completed. CDO Fund and SOHC breached their agreement to provide the requisite collateral to UBS.

5. Specifically, under the Agreements, UBS acquired and held a portfolio of securities (the "Portfolio of Securities") and a portfolio of certain other financial instruments known as "credit default swaps" (the "Portfolio of Credit Default Swaps," and together with the Portfolio of Securities, the "Portfolios") for the purpose of transferring those Portfolios to certain special purpose entities the CDO Transaction.

6. Under the Agreements, UBS was to calculate losses on the Portfolios resulting from a decline in the market value of each of those portfolios and determine, pursuant to the Agreements, what additional amount of collateral ("Additional Collateral") was required based on those losses. Pursuant to the Agreements, the amount of Additional Collateral would be an agreed portion of the increase in the amount of losses. Pursuant to the Agreements, the Funds were required, upon demand, to deposit into a designated account (the "Designated Account") approved securities and/or cash funds as Additional Collateral to partially secure their obligations under the Agreements.

7. Pursuant to the Agreements, in November 2008, UBS demanded that the Funds transfer Additional Collateral of $10 million to the Designated Account. The Funds failed to meet that demand. Accordingly, UBS (after proper notice as described below) terminated the Agreements, and determined the aggregate amount of losses on the Portfolios for which it was entitled under the Agreements to compensation from Highland to be at least $745 million. This loss amount was determined pursuant to the Agreements based on the market values of the Portfolios and any losses incurred with respect to the Portfolios.

8. The Funds have failed to deposit the required amount of Additional Collateral into the Designated Account and pay to UBS the amount of losses it has incurred in connection

with the Portfolios as required by the Agreements. Highland Capital has failed to indemnify UBS for these incurred losses as it is required to do pursuant to the Engagement Letter. Accordingly, UBS is entitled to recover its losses of at least $745 million, plus costs and expenses as described below, less the net proceeds of the sale or liquidation of the collateral held in the Designated Account as described below.

<h2 align="center">THE PARTIES</h2>

**Plaintiffs**

9. Plaintiff UBS AG is a banking corporation organized under the laws of Switzerland with its principal place of business at Finsbury Avenue, London, United Kingdom

10. Plaintiff UBSS is a limited liability company organized under the laws of Delaware with its principal places of business at 677 Washington Blvd., Stamford, Connecticut, and 299 Park Avenue, New York, New York.

**Defendants**

11. Defendant Highland Capital Management, L.P. ("Highland Capital") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business at 13455 Noel Road, Suite 800, Dallas, Texas 75240, and an office at 9 West 57th Street, New York, New York.

12. Defendant Highland CDO Opportunity Master Fund, L.P. ("CDO Fund") is a Bermuda limited partnership, with its principal place of business at 52 Reid Street, Hamilton, Bermuda.

13. Defendant Highland Special Opportunities Holding Company ("SOHC") is a company organized under the laws of the Cayman Islands, with its offices at Walker House, PO Box 908GT, Mary Street, George Town, Grand Cayman, Cayman Islands.

## JURISDICTION AND VENUE

14. Venue is proper under CPLR § 503. Plaintiffs each have a place of business in New York County.

15. Jurisdiction and Venue are also proper in this Court because the parties agreed to submit to the jurisdiction of this Court in connection with any dispute related to the agreements at issue.

## FACTS

### The Original Transaction

16. In April 2007, UBSS and Highland Capital entered into an engagement letter, pursuant to which UBSS was engaged to act as the exclusive financial arranger and placement agent for a collateralized debt obligation transaction (the "Original Transaction"). In connection with the anticipated Original Transaction, UBSS, UBS AG, Highland Capital (as "Servicer"), the CDO Fund and SOHC entered into two warehouse agreements.

17. The agreements for the Original Transaction expired in early 2008 because the anticipated Original Transaction had not taken place. The parties agreed to try to restructure the transaction.

### The Restructured Transaction

#### A.    The Engagement Letter

18. As part of the restructuring, the parties had negotiations leading to an agreement on the terms of a new transaction, and entered into a new engagement letter (the "Engagement Letter," annexed hereto as Exhibit A). Pursuant to the Engagement Letter, UBSS was engaged to act as placement agent in a collateralized debt obligation transaction in which special purpose entities would acquire the Portfolios from UBS and issue debt and equity securities secured by those Portfolios (the "Restructured Transaction").

19. Pursuant to Section 3(c) of the Engagement Letter, UBSS and Highland Capital agreed that the CDO Fund and SOHC would bear 100% of the risk of losses experienced in the Portfolios, including losses experienced in the event the Restructured Transaction failed to occur before the termination of the Agreements.

20. Pursuant to Section 6 and Schedule I to the Engagement Letter, Highland Capital agreed to indemnify and hold harmless UBS from any losses, costs, claims, damages, liabilities and expenses based upon, relating to, arising out of, or in connection with any breach or alleged breach by Highland Capital or any of its affiliates, including the CDO Fund and SOHC, of any agreement, representation, covenant or warranty in the Engagement Letter.

21. In accordance with the terms of the Engagement Letter, the parties entered into warehouse agreements.

## B.    The Warehouse Agreements

22. On March 14, 2008, UBSS, the CDO Fund, SOHC and Highland Capital entered into a cash warehouse agreement (the "Cash Warehouse Agreement"), pursuant to which UBSS agreed to purchase and hold the Portfolio of Securities for the purpose of selling such Portfolio to special purpose entities for the Restructured Transaction. (A true and correct copy of the Cash Warehouse Agreement is annexed hereto as Exhibit B).

23. UBS AG, the CDO Fund, SOHC and Highland Capital also entered into a synthetic warehouse agreement, dated as of March 14, 2008 (the "Synthetic Warehouse Agreement," and together with the Cash Warehouse Agreement, the "Warehouse Agreements"), pursuant to which UBS AG sold credit protection on the Portfolio of Credit Default Swaps for the purpose of ultimately transferring its obligations under such Portfolio to special purpose entities for the Restructured Transaction. (A true and correct copy of the Synthetic Warehouse Agreement is annexed hereto as Exhibit C).

24. Under Section 12 of the Synthetic Warehouse Agreement, the CDO Fund and SOHC agreed to transfer to the Designated Account maintained at State Street Bank and Trust Company cash and/or certain securities to be approved by UBS as collateral to partially secure their respective obligations to UBSS and UBS AG under the Warehouse Agreements as explained below.

C.    **Margin Call Notices**

25. As a result of a decline in the market value of each of the Portfolios and the collateral held in the Designated Account, and an increase in payments and losses relating to each of the Portfolios, on September 16 and October 21, 2008, UBS notified Defendants pursuant to Section 12(C) of the Synthetic Warehouse Agreement, that each of the CDO Fund and SOHC was required to deposit its pro rata share of Additional Collateral of $10 million into the Designated Account. In response, the CDO Fund and SOHC together deposited $20 million into the Designated Account by depositing cash and causing certain securities approved by UBSS and UBS AG to be credited to the Designated Account.

26. Pursuant to Section 12(C) of the Synthetic Warehouse Agreement, on November 7, 2008, UBS notified the Defendants that each of the CDO Fund and SOHC was required to deposit its pro rata share of Additional Collateral of $10 million into the Designated Account within 2 business days.

27. In response to this notice, on November 11, 2008, CDO Fund and SOHC offered certain securities to be credited to the Designated Account. Pursuant to the Warehouse Agreements, UBS is not required to accept any securities unless those securities are approved by UBS. On or after November 13, 2008, UBS rejected the offered securities, and requested that the CDO Fund and SOHC provide cash or cash equivalent collateral to satisfy their obligations under Section 12(C) of the Synthetic Warehouse Agreement.

**D.** **Termination of the Agreements and Demand for Payment of Aggregate Collateral Losses and CDO Losses**

28. As of December 3, 2008, the CDO Fund and SOHC had failed to deposit cash and/or securities approved by UBS into the Designated Account pursuant to Section 12(C) of the Synthetic Warehouse Agreement. This failure resulted in a termination date ("Termination Date") under the Agreements.

29. On December 3, 2008, UBS delivered a letter (the "Termination Date Letter") to the Defendants notifying them of such failure and the occurrence of a Termination Date under each Agreement. (A true and correct copy of the Termination Date Letter is annexed hereto as Exhibit D).

30. Section 5 and Section 7 of the Cash Warehouse Agreement provide that if the closing date of the Restructured Transaction fails to occur on or prior to the Termination Date, UBSS may, in its sole discretion, retain any of the securities in the Portfolio of Securities or sell such securities to one of UBSS's affiliates or an unaffiliated party.

31. Pursuant to the terms of the Agreements, if the closing date of the Restructured Transaction fails to occur on or prior to the Termination Date, each of the CDO Fund and SOHC shall pay to UBS its pro rata share of any market value losses on the Portfolio of Securities, which UBS determines it has experienced and so notifies Highland. The definition of market value (under the Cash Warehouse Agreement) provides that any determination of the market value of the Portfolio of Securities (including any determination of any cost, fee or expense that would be incurred in consideration of a sale thereof) made by or on behalf of UBS shall be conclusive, absent manifest error.

32. On December 19, 2008, UBSS delivered a letter (the "Cash Warehouse Demand Letter") to the Defendants stating that, pursuant to the Agreements, the CDO Fund and

SOHC were required to pay to UBSS the amount of $157,949,885.47 representing the aggregate amount of losses with respect to the Portfolio of Securities (the "Cash Warehouse Required Payment Amount") allocable to the CDO Fund and SOHC on a pro rata basis plus approximately $75,000 in estimated costs. (A true and correct copy of the Cash Warehouse Demand Letter is annexed hereto as Exhibit E). UBSS demanded that the CDO Fund and SOHC pay the Cash Warehouse Required Payment Amount to UBSS no later than 5:00 pm on December 24, 2008 (i.e., the third business day after the date of the Cash Warehouse Demand Letter) (the "Final Payment Date").

33. Highland has not paid the Cash Warehouse Required Payment Amount to UBSS.

34. The Agreements provide that in the event the closing date of the Restructured Transaction fails to occur on or prior the Termination Date, the CDO Fund and SOHC shall collectively be responsible for 100% of the aggregate amount of losses on the Portfolio of Credit Default Swaps and each of the CDO Fund and SOHC shall pay, after notice of such amount due from UBS, its pro rata share of such amount to UBS within 3 business days.

35. On December 19, 2008, UBS AG delivered a letter (the "Synthetic Warehouse Demand Letter") to the Defendants stating that, pursuant to the Agreements, the CDO Fund and SOHC were required to pay the amount of $587,357,060.59 representing the aggregate amount of losses with respect to the Portfolio of Credit Default Swaps (the "Synthetic Warehouse Required Payment Amount") allocable to the CDO Fund and SOHC on a pro rata basis. (A true and correct copy of the Synthetic Warehouse Demand Letter is annexed hereto as Exhibit F). UBS AG demanded that the CDO Fund and SOHC pay the Synthetic Cash Warehouse Required Payment Amount to UBS AG no later than 5:00 PM on the Final Payment Date (i.e., December 24, 2008 -- the third business day after the date of the Synthetic Warehouse Demand Letter) .

36. Highland has not paid the Synthetic Warehouse Required Payment Amount to UBS AG and the required amount of Additional Collateral has not been deposited into the Designated Account.

**E.    Notice of Failure to Pay**

37. On January 5, 2009, UBS notified the Defendants of the failures to pay the Cash Warehouse Required Payment Amount and the Synthetic Warehouse Required Payment Amount when due pursuant to the Agreements and the applicable demand letter.

**FIRST CAUSE OF ACTION**
**(Breach of Contract Under the Agreements**
**against the CDO Fund and SOHC)**

38. Plaintiff UBSS repeats and realleges the allegations set forth in paragraphs 1 through 37 of the Complaint as if fully set forth here.

39. The Agreements are valid and binding contracts.

40. UBSS has performed all of its obligations under the Agreements.

41. Pursuant to the  Agreements, each of the CDO Fund and SOHC was required to transfer its pro rata share of an Additional Collateral of $10,000,000 to the Designated Account within 2 business days of November 7, 2008.   The CDO Fund and SOHC failed to make such transfer.  The failure to make such transfer is a breach under each Agreement and results in a Termination Date under each Agreement.

42. UBSS demanded that each of the CDO Fund and SOHC pays to it its pro rata share of the amount of losses with respect to the Cash Warehouse Required Payment Amount of $157,949,885.47, plus approximately $75,000 in estimated liquidation costs and expenses, by 5 P.M. on the Final Payment Date (i.e., December 24, 2008 – the third business day after the date of the Cash Warehouse Demand Letter).  The CDO Fund and SOHC have failed to pay this

amount to UBSS. The failure to pay this amount to UBSS when due under the Agreements is a further breach under the Agreements.

43. By reason of the foregoing, UBSS has suffered and will continue to suffer damages in an amount to be determined at trial, but in no event less than $157,949,885.47, plus approximately $75,000 in estimated costs and expenses in connection with any sale of the securities subject to the Agreements, less the net proceeds of the sale or liquidation of the collateral in the Designated Account.

## SECOND CAUSE OF ACTION
### (Breach of Contract Under the Agreements against the CDO Fund and SOHC)

44. Plaintiff UBS AG, repeats and realleges the allegations set forth in paragraphs 1 through 43 of the Complaint as if fully set forth here.

45. The Agreements are valid and binding contracts.

46. UBS AG has performed all of its obligations under the Agreements.

47. Pursuant to the Agreements, each of the CDO Fund and SOHC was required to transfer Additional Collateral of $10,000,000 (on a pro rata basis as set forth in the Warehouse Agreements) to the Designated Account within two business days of November 7, 2008. The CDO Fund and SOHC failed to make this transfer. The failure to make such transfer resulted in a breach and a Termination Date under the each Agreement.

48. Accordingly, UBS AG demanded that each of the CDO Fund and SOHC pay to UBS AG its pro rata share of $587,357,060.59 by 5 P.M. on the Final Payment Date (i.e., December 24, 2008 – the third business day after the date of the Synthetic Warehouse Demand Letter). No payment has been made. The failure to pay this amount when due under the Agreements is a further breach under the Agreements.

49. By reason of the foregoing, UBS AG has suffered and will continue to suffer damages in an amount to be determined at trial, but in no event less than the losses with respect to the Synthetic Warehouse Required Payment Amount of $587,357,060.59, plus approximately $75,000 in estimated costs and expenses in connection with any sale of the securities under the Warehouse Agreements, plus any costs, fees and expenses related to the novation or termination of the Portfolio of Credit Default Swaps.

## THIRD CAUSE OF ACTION
### (Indemnification Under the Engagement Letter against Highland Capital)

50. Plaintiff UBSS and UBS AG repeat and reallege the allegations set forth in paragraphs 1 through 49 of the Complaint as if fully set forth here.

51. The Engagement Letter is a valid and binding contract.

52. Pursuant to Section 3(c) of the Engagement Letter, UBSS and Highland Capital agreed that the CDO Fund and SOHC would bear 100% of the risk of losses experienced in the Portfolios, including losses experienced in the event the Restructured Transaction failed to occur before the termination of the Agreements.

53. The CDO Fund and SOHC have not borne risk in accordance with Section 3(c) of the Engagement Letter.

54. As a result of this breach, UBS incurred 100% of the risk of losses in the Portfolios and thereby has suffered and will continue to suffer losses and damages in an amount to be determined at trial, but in no event less than $745,306,946.06, plus costs and expenses, less any net proceeds of the sale or liquidation of the collateral in the Designated Account.

55. Pursuant to Section 6 and Schedule I to the Engagement Letter, Highland Capital agreed to indemnify and hold harmless UBS from any losses, costs, claims, damages, liabilities and expenses based upon, relating to, arising out of, or in connection with any breach

12

by Highland Capital or any of its affiliates, including the CDO Fund and SOHC, of any agreement, representation, covenant or warranty in the Engagement Letter.

56. Highland Capital has failed to indemnify UBS for any of the losses UBS has incurred in connection with the breach of the Engagement Letter.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs UBSS and UBS AG demand judgment:

(a) On the first cause of action, as against the CDO Fund and SOHC, the amount of at least $157,949,885.47, representing the aggregate amount of losses on the Portfolio of Securities, plus approximately $75,000 in estimated costs and expenses in connection with any sale of the securities subject to the Warehouse Agreements, less any net proceeds of the sale or liquidation of the collateral in the Designated Account;

(b) On the second cause of action, as against the CDO Fund and SOHC, in the amount of at least $587,357,060.59, representing the aggregate amount of losses on the Portfolio of Credit Default Swaps, less any net proceeds of the sale or liquidation of the collateral in the Designated Account plus approximately $75,000 in estimated costs and expenses in connection with any sale of the securities under the Warehouse Agreements;

(c) On the third cause of action, as against Highland Capital, in the amount of $745,306,946.06, plus any costs, fees and expenses applicable under the Warehouse Agreements and the Engagement Letter, less any net proceeds of the sale or liquidation of the collateral in the Designated Account;

(d) Granting UBSS and UBS AG costs and disbursements, including reasonable attorneys' fees and expenses of this action; and

(e) Granting such other and further relief as the Court deems just and proper.

Dated:    New York, New York
           February 24, 2009

CADWALADER, WICKERSHAM & TAFT LLP

By: _____

        Gregory A. Markel
        Howard R. Hawkins, Jr.
        Jason Jurgens

Office and Post Office Address:
One World Financial Center
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

*Attorneys for Plaintiffs UBS Securities LLC and
UBS AG, London Branch*