# EXHIBIT 11

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **BERNARD J. FRIED**
                     *Justice*

PART **60**

**E-FILE**

UBS Securities LLC and USB AG, London Branch,

           Plaintiff(s),

- v -

Highland Capital Management, L.P., et al.,

           Defendant(s).

INDEX NO. **650097-2009**

MOTION DATE _____

MOTION SEQ. NO. **006**

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

**PAPERS NUMBERED**

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... _____

Answering Affidavits — Exhibits _____

Replying Affidavits _____

Cross-Motion: ☐ Yes ☐ No

APPEARANCES:

*For Plaintiffs*:
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281
Gregory A. Markel, Esq.
Jason Jurgens, Esq.

*For Defendants*:
Lackey Hershman, LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
Kieran M. Corcoran, Esq.
Paul B. Lackey, Esq.
Baron I. Oursler, Esq.

RECEIVED JUN 18 2010
MOTION SUPPORT OFFICE
NYS SUPREME COURT - CIVIL

RECEIVED JUN 18 2010
MOTION SUPPORT OFFICE
NYS SUPREME COURT - CIVIL

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

    Upon the papers submitted in connection with Motion Seq. No. 006, and upon hearing oral argument, I now render the following decision.

    Before me is a motion by plaintiffs UBS Securities LLC and UBS AG, London Branch, (collectively, "UBS") for leave to file an amended complaint, pursuant to CPLR § 3025(b). Opposition papers have been submitted separately by defendant Highland Capital Management, L.P. ("Highland Capital") and by defendants Highland CDO Opportunity Master Fund, L.P. ("CDO Fund") and Highland Special Opportunities Holding Co.

1

("SOHC"), (collectively, the "Funds"), based on deficiency in pleading, under CPLR §§ 3211(a)(1) and (7), and failure to make a prima facie showing under CPLR § 3025(b). No opposition has been submitted on behalf of any of the proposed new defendants.

Plaintiff's proposed amendment would add six new causes of action: (1) fraudulent inducement against Highland Capital and the Funds; (2) breach of the covenant of good faith and fair dealing against Highland Capital and the Funds; (3) fraudulent conveyance against Highland Capital, the Funds, and five new defendants: Highland Financial Partners, L.P. ("Highland Financial"), Highland Credit Strategies Fund ("Credit Strategies Fund"), Highland Crusader Offshore Partners, L.P. ("Crusader"), Highland Credit Opportunities CDO, L.P. ("Credit Opportunities Fund"), and Strand Advisors, Inc. ("Strand"); (4) tortious interference with contractual relations against Highland Capital, Credit Strategies Fund, Crusader, and Credit Opportunities Fund; and (5) a cause of action seeking a declaration that Strand, Highland Capital's general partner, is responsible for Highland Capital's obligations; and (6) a cause of action seeking a declaration that Highland Financial is SOHC's alter ego and is responsible for its obligations.

The parties previously agreed that this motion would take the place of a motion to dismiss the first amended complaint by the current defendants, if leave to file any part of it were granted.

Opposition briefs were submitted by Highland Capital and the Funds. As counsel for Highland Capital and the Funds does not represent the proposed new defendants, and any statements made by their counsel are not binding on the proposed new defendants, I will disregard their opposition to the addition of new claims against the proposed new defendants, except insofar as they argue that the new claims would affect the current defendants. The proposed new defendants will have an opportunity to answer or move to dismiss these claims if and when a pleading is served on them.

As I noted in my decision on the motion to dismiss the original complaint, this lawsuit arises out of a failed proposed collateralized debt obligation transaction to be sponsored by Highland Capital, a hedge fund. The proposed transaction contemplated that UBS would acquire and warehouse certain securities and assume certain obligations under credit default swaps, with the expectation that "special purpose entities" would acquire those securities and assume those obligations and issue securities secured by those securities and obligations. The special purpose entities were never created, and the contemplated transaction never occurred. The original complaint alleged that the Funds, which are affiliated with Highland Capital, had agreed to provide collateral to UBS to

2

mitigate and offset any losses it suffered in case of adverse economic conditions, but failed to do so. UBS alleged that it consequently suffered losses exceeding $745 million.

The parties entered into three agreements dated March 14, 2008, which were the subject of the original complaint: (a) an engagement letter between UBS Securities and Highland Capital, (b) a cash warehouse agreement between UBS Securities and all three defendants, and (c) a synthetic warehouse agreement between USB AG and all three defendants.

Highland Capital filed a motion to dismiss UBS's cause of action for indemnification against Highland Capital—the only cause of action stated against Highland Capital in the original complaint—pursuant to C.P.L.R. § 3211(a)(1). The resolution of the motion turned on the interpretation of documentary evidence. Although I denied the motion to dismiss, that decision was reversed by the Appellate Division, First Department, in a short decision dated February 22, 2010. The First Department concluded that, as a matter of contract interpretation, "the agreements between the parties contain no promise on the part of Highland to undertake liability with respect to the investment losses suffered by plaintiffs" or otherwise to indemnify UBS's alleged losses. The Court therefore granted Highland Capital's motion to dismiss the complaint against Highland Capital and directed the Clerk to enter judgment in favor of Highland Capital on plaintiff's complaint against it. Its decision left standing plaintiffs' remaining two breach of contract claims against the Funds and Highland Capital's two counterclaims against plaintiffs.

A "party may amend his pleading... at any time by leave of court," which "shall be freely given *upon such terms as may be just* including the granting of costs and continuances." CPLR § 3025(b) (emphasis added). Section 3025 says nothing about whether a pleading that has already been dismissed can be amended.

The First Department, however, has repeatedly held as a general rule that a complaint that has been dismissed as against a party cannot be amended. *E.g., Estate of Brown v. Pullman Group*, 60 A.D.3d 481, 482 (1st Dept. 2009) (leave to amend counterclaims properly denied because the counterclaims had already been dismissed); *Kazakhstan Investment Fund Ltd. v. Manolovici*, 2 A.D.3d 249, 250 (1st Dept. 2003) (motion to amend complaint properly denied since the complaint had been dismissed on a prior motion as time-barred, and there was therefore nothing left before the court to amend); *Jeffrey L. Rosenberg & Assocs., LLC. v. Kadem Cap. Mgmt., Inc.*, 306 A.D.2d 155, 156 (1st Dept. 2003) (leave to amend the complaint was properly denied, as complaint had been previously dismissed on summary judgment, and thus "there was no

3

complaint left before the court to amend"). The Second Department is in accord. *See, e.g., Murray Hill Investments, Inc. v. Adas Yereim, Inc.*, 205 A.D.2d 512, 514 (2d Dept. 1994) (affirming order denying motion to amend complaint to "assert, inter alia, new causes of action against two defendants which had already had the complaint dismissed insofar as it is asserted against them"). I have previously applied this principle to forbid the amendment of a complaint that had been dismissed with prejudice. *See North Amer. Van Lines, Inc. v. Amer. Int'l Cos.*, 819 N.Y.S.2d 849, 2006 WL 908653, at *4 (Sup. Ct. Apr 10, 2006), *aff'd on other grounds*, 38 A.D.3d 450 (1st Dept. 2007).

The First Department has carved out two exceptions to this general rule, but neither of them seems to apply here.

As an example of the first exception: in *Imprimis Investors LLC v. Insight Venture Mgmt., Inc.*, 300 A.D.2d 109 (1st Dept. 2002), the Court permitted the plaintiffs to amend their complaint to substantiate the "conclusory alter ego allegations" regarding the relationship between the defendant and affiliated entities, which had been dismissed in the original complaint. The Court was careful to note that the amendment was permissible, because, although "the motion culminating in the prior order was nominally for summary judgment, it was directed to the sufficiency of the pleading and not to the proof." *Imprimis*, 300 A.D.2d at 110-11.

Similarly, in *Donovan v. Rothman*, 253 A.D.2d 627 (1st Dept. 1998), the Court permitted the plaintiffs to amend their complaint to add factual allegations "that amplified the allegations and otherwise addressed the failings cited by the court in its prior order," concerning the original complaint's failure to state a claim. *Donovan*, 253 A.D.2d at 628-30.

In both of these cases, the complaints were dismissed not on the merits but based on insufficiently-pled facts. The proposed amendments supplemented the conclusory allegations of the *same* causes of action that had been insufficiently pled and therefore dismissed in the original complaints.

Neither of these conditions describes the instant situation. The motion to dismiss the indemnification claim against Highland Capital under CPLR § 3211(a)(1) was granted upon a review of the documentary evidence, and not based on the sufficiency of the pleading. The proposed amended complaint does not supplement the cause of action that was dismissed for insufficient pleading by adding new factual allegations, but rather adds *new* and *different* causes of action. Therefore, the exception to the general rule carved out in *Imprimis* and *Donovan* does not seem to apply here.

4

In *Spada v. B.W. Energy Sys. E., Inc.*, 167 A.D.2d 328, 562 N.Y.S.2d 78 (1st Dept. 1990), the Court carved out another exception to the general rule. There, the Court permitted the plaintiff to amend its complaint to reassert a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, which the trial court had dismissed for lack of jurisdiction, because the Court of Appeals had just issued a decision holding that state courts indeed had concurrent jurisdiction over civil RICO claims, and this decision was issued *after* the dismissal of the RICO claim but still during the pendency of the action. *Spada*, 167 A.D.2d at 78. The facts of *Spada* are exceptional enough that I do not think its holding either applies to the instant case or derogates from the general rule.

Consequently, applying the general rule set forth in cases such as *Estate of Brown*, as UBS has no complaint against Highland Capital, UBS is not entitled to file an amended complaint adding new claims against Highland Capital. Therefore, UBS's motion is denied, insofar as it seeks to resurrect its original complaint against Highland Capital.

**Res judicata**

While I deny the motion to amend the complaint based on binding First Department authority, in the alternative, I will address defendants' contention that plaintiffs' proposed new claims against Highland Capital are barred by res judicata doctrine.

I did not solicit and do not consider the May 11, 2010 letter from plaintiffs providing additional discussion of the res judicata issue.

"[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981). The Court of Appeals has acknowledged, however, that "unfairness may result if the doctrine is applied too harshly; thus in properly seeking to deny a litigant two days in court, courts must be careful not to deprive the litigant of one." *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100 (2005) (internal quotations omitted). In determining whether particular claims are part of the same transaction for res judicata purposes, a "pragmatic test" has been applied, analyzing "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Chen*, 6 N.Y.3d at 100-01 (internal quotations omitted).

Applying this standard, I conclude that res judicata would not apply to preclude the

5

new claims. The original complaint did not state the majority of the allegations that form the basis of the proposed new claims; it did not allege that Highland Capital stripped the Funds of assets, provided false financial information about the Funds, undercapitalized the Funds, co-mingled the Funds' assets with affiliates' assets, or fraudulently transferred assets among its affiliates, or that any affiliates were Highland Capital's alter egos. The evidence that UBS needs to prove the new claims is entirely different from the evidence that it needed to prove the contract claim that was dismissed. Even if UBS learned of the evidence undergirding its new claims many months earlier, as defendants claim, that would not change my conclusion; *when* UBS learned of the new evidence is not relevant to the res judicata inquiry.

Moreover, it would seem unfair not to let UBS amend its complaint, based only on res judicata doctrine, for two additional reasons. First, UBS sought permission by letter to add substantially the same claims while this action was still pending, but compliance with Commercial Division Rule 24 prevented that amendment while UBS waited for a pre-motion conference to be held.[1] Second, the dismissal of the original complaint did not take place in a prior lawsuit, but in the very same lawsuit. As Highland Capital never withdrew its counterclaims, it has remained a party to this lawsuit since it was served with the original complaint.

I will now turn to the merits of the proposed new claims. As the original complaint was never dismissed as against the Funds, they remain a part of this lawsuit. Insofar as the complaint has been dismissed as against Highland Capital, what follows may be considered as a holding in the alternative, in the event that this decision is appealed.

"Mere lateness is not a barrier" to granting permission to amend pleadings. *Edenwald Contracting Co., Inc. v. City of New York*, 60 N.Y.2d 957, 959 (1983) (internal quotations omitted); *Spitzer v. Schussel*, 48 A.D.3d 233, 233-34 (1st Dept. 2008). Barriers to late amendments are either "significant prejudice to the other side," *Edenwald*, 60 N.Y.2d at 959, or a lack of merit to the proposed new cause of action, *Schussel*, 48 A.D.3d

---

[1] In a letter dated February 16, 2010, plaintiffs wrote a letter asking for a conference, pursuant to Commercial Division Rule 24, concerning their request to move for leave to amend their complaint. This letter contemplated adding causes of action for fraudulent inducement, breach of the covenant of good faith and fair dealing, and fraudulent conveyance, and invoking alter ego and general partner liability theories, and adding new defendants. A Rule 24 conference was scheduled for the following week. Two days later, however, on February 18, 2010, the Appellate Division issued its decision, dismissing the complaint.

at 233-34. Under controlling First Department law, the party seeking to amend bears the burden of showing merit to the proposed amendment. *See Schussel*, 48 A.D.3d at 233-34 (affirming denial of plaintiff's motion to amend pleading because proposed new claim lacked merit, despite lack of prejudice to defendants).

### *Fraudulent inducement*

"To plead a claim for common-law fraudulent inducement, a plaintiff must assert the misrepresentation of a material fact, which was known by the defendant to be false and intended to be relied on when made, and that there was justifiable reliance and resulting injury." *Braddock v. Braddock*, 60 A.D.3d 84, 86 (1st Dept. 2009).

The first amended complaint alleges that defendants gave UBS false and misleading information about the Funds' finances, assets, and business practices, which fraudulently induced UBS to restructure their original transaction and to release claims against defendants for losses on certain assets arising out of the termination of the original engagement.

The fraud allegations are based on the following principal contentions: (a) that defendants represented that the Funds owned specific assets that they did not in fact own; (b) that defendants' valuation of the Funds' assets was unreasonable based on existing market conditions; (c) that the financial reports for the Funds that were provided to UBS inflated the Funds' assets by failing to indicate that assets were or would be pledged to other creditors or were borrowed from other Highland affiliates, or by failing to discuss liquidity problems; and (d) that Highland Capital was in the habit of moving funds around among affiliates and disregarding corporate formalities.

UBS has adduced supporting affidavits maintaining that, had UBS known this information, it would not have restructured the original engagement so as to forego enforcement of UBS's contractual rights. (*See* LeRoux Aff. ¶¶ 5-6, 13, 38, 48.)

With regard to the allegation that the Funds owned specific assets that they did not in fact own: I conclude that plaintiffs have adequately stated a fraud claim. I am satisfied that plaintiffs have pled this aspect of their fraud claim with sufficient detail, *see* CPLR § 3016(b), and that this claim may have some merit.

With regard to the allegation that defendants' valuation of the Funds' assets was unreasonable based on existing market conditions: I also find that plaintiffs have adequately stated a claim, and there may be some merit to it.

A more difficult question is whether defendants had a duty to disclose that some of the Funds' assets were pledged to others and/or were borrowed from other Highland

7

affiliates or that defendants moved funds around among Highland affiliates and disregarded corporate formalities, or otherwise to disclose liquidity problems.

UBS maintains that, since it requested and received the Funds' financial reports, which made a statement of their assets, defendants were obligated to disclose additional information not contained in those reports, *i.e.*, that some of the Funds' assets were pledged to others and/or were borrowed from other Highland affiliates, and that the Funds had liquidity problems, under the principle that, where a party to a business transaction has undertaken to make a statement, he cannot stop halfway, where he omits something "so vital" that it goes "to the very essence of the bargain." *Junius Constr. Co. v. Cohen*, 257 N.Y. 393, 399-400 (1931).

Defendants argue on the contrary that UBS, a sophisticated party, had a duty to inquire into this information specifically and to contract for the right to see this information before closing the restructured transaction, as it would have done if it considered it material.

"[A]bsent a fiduciary relationship between the parties, a duty to disclose arises only under the 'special facts' doctrine where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." *Jana L. v. West 129th Street Realty Corp.*, 22 A.D.3d 274, 277 (1st Dept. 2005) (internal quotations omitted). The special facts doctrine "requires satisfaction of a two-prong test: that the material fact was information 'peculiarly within the knowledge' of West Realty, and that the information was not such that could have been discovered by Associates through the 'exercise of ordinary intelligence.'" *Id.* at 278 (internal quotations omitted). A party seeking to employ the special facts doctrine "ha[s], at the very least, a duty to inquire." *Id.*

Here the parties were sophisticated entities engaged in arms-length negotiations. The lengthy complaint and the substantial record submitted by UBS do not allege or evidence a specific inquiry by UBS into whether the Funds' assets were or would be pledged to other creditors or were borrowed from other Highland affiliates, or whether defendants moved funds around among Highland affiliates or disregarded corporate formalities, or otherwise had liquidity problems. *Cf.* First Am. Compl. ¶¶ 47-50, LeRoux Aff. ¶ 12 (alleging generally that UBS requested financial information, but not alleging that it requested the specific information that it now says should have been disclosed). In any case, the first amended complaint alleges that UBS was aware that defendants were willing to disregard corporate formalities on at least one occasion. (First Am. Compl. ¶ 100.) The

8

fact that no inquiry was made as to this specific information, other than a general request for financial reports, suggests that the information may have been less material than UBS now claims it was. I find that UBS has not adequately alleged that it satisfied its duty to inquire as to this information. Accordingly, I conclude that UBS has not established that there is merit to its fraudulent inducement claim against Highland Capital and the Funds based on these allegations.

### Breach of the covenant of good faith and fair dealing

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (1995).

UBS claims that Highland Capital breached the covenant of good faith and fair dealing in their agreements by stripping the Funds of assets, making it impossible for the Funds to satisfy their contractual obligations to UBS to bear certain losses.

Upon review of the first amended complaint and the record on this motion, I am satisfied that this claim has been adequately stated and may have merit.

### Fraudulent conveyance

New York's Debtor and Creditor Law[2] considers a variety of transfers to be fraudulent. "Every conveyance made and every obligation incurred with actual intent... to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Debt. & Cred. Law § 276. A conveyance by a person is also fraudulent if that person "will be thereby rendered insolvent... as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Debt. & Cred. Law § 273. Furthermore, "[e]very conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." Debt. & Cred. Law § 275.

UBS alleges that Highland Capital and the Funds fraudulently transferred cash and assets from the Funds and Highland Financial (which UBS claims is SOHC's alter ego) to Highland Capital, its affiliates, and other Highland creditors, between March 2008 and March 2009, when the Funds and Highland Financial were insolvent.

In opposition to the proposed amendment, Highland Capital appears to concede

---

[2] The parties apparently agree that New York law applies.

that a non-transferee can be liable for a fraudulent transfer if it has dominion and control over the transferred assets or benefits in some way from the conveyance. (Highland Cap. Opp'n Br. at 18.)

I find that the first amended complaint adequately alleges the elements of a fraudulent conveyance cause of action against the Funds. It also sufficiently alleges both that a fraudulent transfer was made to Highland Capital and that Highland Capital had control over or benefitted from alleged transfers of assets, even when it was not the direct recipient of them, and it appears that the allegations may have merit.

***Tortious interference with contractual relations***

Plaintiffs allege that Highland Capital tortiously interfered with the Funds' contract with UBS by stripping them of assets, making it impossible for the Funds to meet their contractual obligations.

The elements of a tortious interference with contract claim are (a) the existence of a valid contract, (b) the tortfeasor's knowledge of the contract and intentional interference with it, (c) the resulting breach, and (d) damages. *Hoag v. Chancellor, Inc.*, 246 A.D.2d 224, 228 (1st Dept. 1998). Economic justification is a defense to this claim, unless there is a showing of malice or illegality. *Foster v. Churchill*, 87 N.Y.2d 744, 750 (1996).

The tortious interference with contract claim against Highland Capital is not precluded simply because Highland Capital is also a party to the agreements at issue. I am persuaded by the reasoning of *Rosecliff, Inc. v. C3, Inc.*, 1995 WL 276156 (S.D.N.Y. May 10, 1995), that a claim for tortious interference can be maintained against a tortfeasor who is a party to a contract when that contract involves at least three parties. Defendants have not cited any contrary New York authority involving a contract between three or more parties.

Nevertheless, based on the allegations of the first amended complaint, Highland Capital's alleged acts were evidently taken in its own economic interests; the first amended complaint does not allege malice or illegality, so as to prevent the application of this defense.[3]

Therefore, I conclude that UBS's allegations do not state a claim for tortious

---

[3] I am not convinced by Highland Capital's "control" argument. The cases cited by Highland Capital in support of it all involve individuals who control a corporation; I am not convinced that the same principle governs the facts here, but I do not need to decide that question.

10

interference with contract.

***Declaratory judgment causes of action***

With regard to the proposed new declaratory judgment causes of action against Strand and Highland Financial: as I stated previously, I do not consider the arguments in opposition to these proposed new claims raised by defendants, their counsel does not represent the proposed new defendants.

I further find that defendants would not experience any significant prejudice by the assertion of the proposed new claims that are otherwise adequately stated.

I offer no final opinion on the merits of any of the proposed new claims.

Finally, UBS has long been pressing for an order accelerating the pace of discovery. In view of this Order and the Order concerning the Funds' proposed amendment also issued today, and the representation at oral argument by counsel for UBS of his intention to file a new related action against Highland Capital if UBS's motion to amend were denied as to Highland Capital, it seems most efficient to convene the next status conference to discuss how the parties want to proceed, *after* the new amended pleading is filed and answered, and after the anticipated new related action has been filed and answered.

Accordingly, it is

ORDERED that plaintiffs' motion for leave to file the first amended complaint is granted in part and denied in part as described in this Order; and it is further

ORDERED that plaintiffs shall serve and file a revised first amended complaint, in conformity with this Order, within 20 days after service on plaintiffs' attorney of a copy of this Order with notice of entry, and defendants shall serve and file an answer within 20 days thereafter; and it is further

ORDERED that the parties shall appear for a discovery conference on July 29, 2010 at 10:30 a.m.

Dated: 6/17/2010

HON. BERNARD J. FRIED

Check one:  ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

Check if appropriate:   ☐ DO NOT POST   ☐ REFERENCE