# EXHIBIT 18

FILED: NEW YORK COUNTY CLERK 05/04/2018 11:09 AM    INDEX NO. 650097/2009

NYSCEF DOC. NO. 194    Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20    Entered 08/07/20 23:11:52    Page 2 of 48    RECEIVED NYSCEF: 05/04/2018

1

```
 1

 2    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK: TRIAL TERM PART 60
 3
      - - - - - - - - - - - - - - - - - - - - X
 4
      UBS SECURITIES LLC and
 5    UBS AG, LONDON BRANCH,

 6                        Plaintiffs,
                                                INDEX NO.
 7         - against -                          650097/09

 8    HIGHLAND CAPITAL MANAGEMENT, L.P.,
      HIGHLAND CDO OPPORTUNITY  MASTER
 9    FUND, L.P., HIGHLAND SPECIAL
      OPPORTUNITIES HOLDING COMPANY,
10    HIGHLAND FINANCIAL PARTNERS, L.P.,
      HIGHLAND CREDIT STRATEGIES MASTER
11    FUND, L.P., HIGHLAND CRUSADER OFFSHORE
      PARTNERS, L.P., HIGHLAND CREDIT
12    OPPORTUNITIES CDO, L.P., and
      STRAND ADVISORS, INC.,
13
                        Defendants.
14
      - - - - - - - - - - - - - - - - - - - - X
15
                        60 Centre Street
16                      New York, New York
                        May 1, 2018
17

18                      TELEPHONE CONFERENCE

19
      BEFORE:
20

21           HONORABLE MARCY S. FRIEDMAN,
                                        Justice
22

23    APPEARANCES:  (Via Telephone)

24
                *** CONTINUED ON NEXT PAGE ***
25

26


               Bonnie Piccirillo - Official Court Reporter
```

```
 1                           Appearances

 2

 3       LATHAM & WATKINS LLP
         Attorneys for the Plaintiffs
 4       11th St. NW, Suite 1000
         Washington DC  20004
 5       BY:   ANDREW CLUBOK, ESQ.
               ELIZABETH DEELEY, ESQ.
 6             SUSAN ENGEL, ESQ.
               KUAN HUANG, ESQ.
 7             ALYSHA NAIK, ESQ.

 8

 9       McKOOL SMITH
         Attorneys for the Defendants
10       One Bryant Park, 47th Floor
         New York, New York  10036
11       BY:   GAYLE  KLEIN, ESQ.
               GARY CRUCIANI, ESQ.
12             MICHAEL FRITZ, ESQ.

13

14

15

16

17

18

19

20

21

22

23

24                     Bonnie Piccirillo
25                  Official Court Reporter

26
```

Bonnie Piccirillo - Official Court Reporter

Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20 Entered 08/07/20 23:11:52 Page 4 of 48

3

```
 1                      Proceedings

 2

 3           THE COURT:  On the record.

 4           Good afternoon, counsel.  This is Judge Friedmann.

 5    May I have the appearances of every counsel who is on the

 6    line, please.

 7           MR. CLUBOK:  Good afternoon, Justice Friedman.

 8    This is Andrew Clubok for plaintiffs, and I'm on the line

 9    with Elizabeth Deeley, Susan Engel, Kuan Huang and Alysha

10    Naik.

11           MS. KLEIN:  Good afternoon, your Honor, this is

12    Gayle Klein from McKool Smith for the defendants, and also

13    joining me this afternoon is Gary Cruciani,

14    C-R-U-C-I-A-N-I, and Michael Fritz, F-R-I-T-Z.

15           THE COURT:  Thank you.

16           Will Mr. Clubok and Ms. Klein be the only two

17    attorneys who will be speaking?

18           MR. CLUBOK:  I think so for us, your Honor.

19           MS. KLEIN:  I believe so, your Honor, unless you

20    start talking about scheduling in which case we might need

21    Mr. Cruciani to speak, as well.

22           THE COURT:  That's fine.  If anyone other than the

23    two of you speaks, that person should say their name before

24    they start speaking.

25           We have reviewed the parties' submissions on the

26    bifurcation issue.  I have quite a few questions.
```

Bonnie Piccirillo - Official Court Reporter

4

```
 1                    Proceedings
 2            The first question is what are the parties'
 3    positions on whether the damages for breach of contract
 4    would be decided by the Court at the bench trial if we
 5    were to bifurcate as between a bench trial and a jury
 6    trial?
 7            Let's start with UBS, please.
 8            MR. CLUBOK:  The Court would decide the damages
 9    for breach of contract.
10            THE COURT:  Ms. Klein, do you disagree?
11            MS. KLEIN:  We do not disagree with that, your
12    Honor.
13            THE COURT:  The next question is as follows:
14            Is it correct that it is plaintiffs' position that
15    the implied covenant claim would be for the Court, but
16    would be tried in the jury trial phase?
17            (Interrupted by a voicemail recording)
18            MR. CLUBOK:  Your Honor, we had previously -- this
19    is your voicemail, your Honor.  Somehow there's a way to
20    delete this message, if you'd just give me a second.
21            (Interrupted by a voicemail recording)
22            Originally, we called in and they put us into the
23    Court's voicemail.  So if there's a message, should be from
24    us, but I think I deleted it.  I'm not sure.
25            THE COURT:  If there is a message from you in
26    this -- we weren't able to transcribe it right now.
```

Bonnie Piccirillo - Official Court Reporter

5

1          Proceedings

2          So, all right --

3          MR. CLUBOK:  You can just delete it.  It was

4   just trying to reach you a few minutes ago when they

5   originally put us through to your voicemail.  You can just

6   delete it.

7          THE COURT:  Ms. Klein, do you agree with that?

8          MS. KLEIN:  Yes, your Honor.

9          THE COURT:  So is it correct that it is

10  plaintiffs' position that the implied covenant claim would

11  be for the Court, but would be tried in the jury trial

12  phase?

13          MR. CLUBOK:  Yes, your Honor.

14          THE COURT:  And is it also the plaintiffs'

15  position that the implied covenant claim relates to the

16  fraudulent conveyance claim and not to the fraudulent

17  inducement?

18          MR. CLUBOK:  Absolutely, yes.

19          THE COURT:  Is it the defendants' position that

20  the implied covenant claim implicates events leading up to

21  the transaction and, therefore, relates to the fraudulent

22  inducement claim?

23          I am referring to a statement that I read on

24  page 2 of the defendants' brief, which seemed to indicate

25  that that was the defendants' position.

26          MS. KLEIN:  That is the defendants' position, your

Bonnie Piccirillo - Official Court Reporter

Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20   Entered 08/07/20 23:11:52   Page 7 of 48

6

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | Proceedings                                                  |
| 2  | Honor.                                                        |
| 3  | THE COURT:  Would you explain in detail the basis            |
| 4  | for claiming that the implied covenant claim relates to the  |
| 5  | fraudulent inducement claim?  And then I will hear a          |
| 6  | response.  I'd like you to address the evidence that would   |
| 7  | be heard on both the implied covenant and the fraudulent     |
| 8  | inducement claim.                                            |
| 9  | That said, I don't expect you to address the                 |
| 10 | evidence exhaustively, but I do expect you to give me some   |
| 11 | specific examples, and you will not be waiving any           |
| 12 | arguments that might be raised in the future by only         |
| 13 | highlighting certain evidence on this conference call.       |
| 14 | Have I allayed any anxiety?                                  |
| 15 | MS. KLEIN:  You have not, your Honor.  Thank you             |
| 16 | for that.                                                    |
| 17 | In the implied covenant of good-faith and                    |
| 18 | fair-dealing claim relates to a claim that the defendants    |
| 19 | somehow had promised with respect to the negotiation of the  |
| 20 | Agreements that they would, in fact -- some of the           |
| 21 | defendants would make sure that the Fund Counterparties      |
| 22 | were sufficiently flourished with assets such that they      |
| 23 | would pay for breach of contract damages, and that they      |
| 24 | would undertake no action that would render them unable to   |
| 25 | pay.  And, that there is sufficient or substantial evidence  |
| 26 | relating to the due-diligence process in which UBS           |

Bonnie Piccirillo - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/04/2018 11:09 AM    INDEX NO. 650097/2009

NYSCEF DOC. NO. 194    Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20    Entered 08/07/20 23:11:52    Page 8 of 48    RECEIVED NYSCEF: 05/04/2018

7

1                              Proceedings

2       undertook a review of the Fund Counterparties' ability to

3       pay and found it lacking.

4              Specifically, they found that the Fund

5       Counterparties had no ability to pay and, therefore, they

6       aired into the transaction fully aware that if there were a

7       breach of contract, they would not be made whole -- "they"

8       being UBS.

9              And, therefore, any suggestion under an implied

10      covenant of good faith and fair dealing that the defendants

11      somehow promised that the Fund Counterparties would have

12      sufficient assets to pay a breach of contract claim is

13      false, and that is the type of evidence that we would

14      elicit in defense to the implied covenant claim, also in

15      defense of the fraudulent inducement claim.

16             THE COURT:  Ms. Klein, isn't the implied covenant

17      claim as pleaded based solely on post entry into

18      transaction alleged wrongful or fraudulent conveyances?

19             MS. KLEIN:  The inability to pay for the breach

20      of contract certainly is, in part, related to the

21      fraudulent conveyance; but the promise or the alleged

22      promise to make sure that there would be assets to pay and

23      that there would not be actions undertaken that would

24      diminish that comes from the contract negotiation and the

25      understanding of the defendants at the time the contract

26      was negotiated, as well as it implicates the assets that

                  Bonnie Piccirillo - Official Court Reporter

8

1                        Proceedings

2       were offered in the margin calls during the contract

3       performance, which the defendants were offered as security

4       and which they refused.

5              THE COURT:  Mr. Clubok, will you respond.

6              MR. CLUBOK:  I will try, your Honor.  I'm having a

7       little hard time tracking this, just to be honest.

8              But, so I think what I'm hearing -- and I have not

9       heard this or had this until we read their briefs and now

10      I'm hearing this explanation like you are.

11             Our claim is that there's a contract and there is

12      pretty unambiguous requirements that two parties make

13      payments.  There's disputes over how much they have to pay,

14      and what the total amounts are going to be, and whether we

15      count this transaction or not; and you're going have to

16      decide those details, but there's a contract for at least

17      some activity, two of the defendants --

18             THE COURT:  Just one moment, please.  The court

19      reporter needs those names.

20             MR. CLUBOK:  I'm sorry.  There's two defendants,

21      CDO Fund and SOHC, the so-called Fund Counterparties who

22      are obligated and under a contract to make certain

23      payments.  There's disputes over how much they have to pay

24      and what's the trigger for those payments, all of those

25      things are part of the breach of contract back and forth.

26             But, if we win, if we prove our case against those

                Bonnie Piccirillo - Official Court Reporter

```
 1                          Proceedings
 2      two, they will have had to pay us money.  And there's a
 3      third party, HCM, that also signed on to those contracts,
 4      but didn't have a direct obligation to pay; yet
 5      nevertheless, we say they had an implied covenant of good
 6      faith and fair dealing not to, for example, commit
 7      fraudulent conveyances that, that made it possible for the
 8      two parties who had owed us the money to pay.
 9              First of all, there's no defense against that
10      because before we signed the contract, internally our folks
11      wondered whether, ultimately, the two parties were good
12      credit risks.  You wouldn't be able to defend against a
13      breach of contract claim under these circumstances with
14      that theory.  So it is kind of manufactured anyway.
15              THE COURT:  Can you slow down a little bit,
16      please, so we can get a record.  Thank you.
17              MR. CLUBOK:  Sure, your Honor.
18              We're talking about the possibility of some parol
19      evidence prior to contract formation about whether or not
20      -- notwithstanding if your Honor finds there were payment
21      terms and monies owed -- that somehow parol evidence from
22      before the contract vitiate the actual obligation to pay
23      because my client was worried that the two parties who
24      promised to pay wouldn't be able to pay.  I have a hard
25      time believing your Honor is going to accept that kind of
26      parol evidence if there's no basis for it.
```

Bonnie Piccirillo - Official Court Reporter

|   |   |
|---|---|
| 1 | Proceedings |
| 2 | Until this bifurcation breach, I don't think we |
| 3 | had ever in the nine years I've litigated the case ever |
| 4 | heard that theory.  I don't think it is legally valid.  It |
| 5 | is just kind of thrown out there. |
| 6 | But, even if there was such a legally valid theory |
| 7 | and let's pretend for purposes of this argument that it's |
| 8 | true, that my clients thought, Gee, if things go south, |
| 9 | these two Fund Counterparties that have promised to pay |
| 10 | will not be able to in fact pay the total amount, the total |
| 11 | $500 million of damages; does that mean then that they |
| 12 | expected there to be fraudulent conveyances which is -- is |
| 13 | basically, you know, the implied covenant of good-faith and |
| 14 | fair-dealing claim that we now have is that they shouldn't |
| 15 | have committed fraudulent conveyances to make it certain |
| 16 | that these two parties couldn't have paid. |
| 17 | I mean, the defendants are just trying to |
| 18 | interject a really far-afield defense that I doubt your |
| 19 | Honor is going to even entertain and then expand it to a |
| 20 | point that it just sort of is something I've never heard of |
| 21 | in a contract dispute and, certainly, we never heard of in |
| 22 | this case until two weeks ago when we saw this brief and |
| 23 | now as I've heard it explained. |
| 24 | So that's -- to make that the bootstrap for now |
| 25 | there's such substantial overlap that we have to bifurcate |
| 26 | the trial, with all due respect the defendants, I think is |

Bonnie Piccirillo - Official Court Reporter

1                         Proceedings

2       a stretch.

3               The other thing I would say is even if you credit

4       this, all I've heard is that there's overlap between

5       fraudulent inducement and implied covenant of good faith

6       and fair dealing, all of which we are proposing to put into

7       the next phase.  So even if your Honor is going to do that

8       stuff, it is going to be in the next phase.

9               But I just think that this is not an argument that

10      can be seriously used -- you know, we can have a motion

11      practice on whether you're going to ever entertain that

12      kind of parol evidence, or we could stipulate for the sake

13      of argument that let's say were even true, that our

14      clients -- the credit risk people that my clients worried

15      that the two Fund Counterparties wouldn't be able to pay or

16      assumed they wouldn't be able to pay and said, Gee, this is

17      a risky contract that these two won't be able to pay, that

18      doesn't -- because people internally are worrying about

19      that, that doesn't strip the obligation to actually pay and

20      it certainly doesn't give license to a signatory to the

21      contract, Highland, to violate either express obligations

22      or to implied duty of good faith and fair dealing by

23      insuring that the two parties can't pay.

24              THE COURT:  Mr. Clubok, when you refer to the

25      possibility of parol evidence, you are talking about parol

26      evidence that the defendants would possibly introduce

                Bonnie Piccirillo - Official Court Reporter

<table>
<tbody>
<tr><td>1</td><td>Proceedings</td></tr>
</tbody>
</table>

1                        Proceedings

2    regarding the lack of assets of the Fund Counterparties or

3    regarding UBS's due diligence unit's knowledge of the lack

4    of assets of the Fund Counterparties; is that correct?

5           MR. CLUBOK:  Correct.  On this particular species

6    of parol evidence, it's something that plaintiffs would

7    never put into the case.  We don't think it is legally

8    relevant.  It's not something that the parties have ever

9    talked about in this context as ever being potentially

10   relevant to the breach and implied covenant good-faith and

11   fair-dealing claim, and I just think it is just -- yes, in

12   short, it is a theory that defendants say they're going to

13   try to interject as a supposed defense to our implied

14   covenant of good-faith and fair-dealing claim, which is

15   really about how Highland Capital dealt with the aftermath

16   of the breach of contract and whether they fraudulently

17   transferred assets.

18        THE COURT:  All right, but you are not intending

19   on your implied covenant claim, am I correct, to put in any

20   evidence that relates to the fraudulent inducement claim;

21   is that right?

22        MR. CLUBOK:  Absolutely not; you are correct.

23        THE COURT:  Okay.

24        All right, now, let's --

25        MS. KLEIN:  May I interject one --

26        THE COURT:  Yes, of course.  Go ahead.

Bonnie Piccirillo - Official Court Reporter

1                     Proceedings

2           MS. KLEIN:  First of all, we don't agree,

3     obviously, that there is a fraudulent conveyance or any

4     fraudulent inducement.  But, more importantly, in order to

5     survive an implied covenant claim, the plaintiffs are going

6     to have to prove what the implied covenant is and that in

7     fact exists, and the evidence that they're calling parol,

8     which we don't think is parol, goes to vitiate the --

9           THE COURT:  Just a moment.  Just a moment.  I know

10    there's a lag.  The reporter didn't get it.  She lost you

11    at "vitiate," so can you repeat your last sentence, please,

12    and the reporter is asking that it be a little slower.

13          MS. KLEIN:  The evidence that we intend to

14    introduce vitiates the fact of any implied covenant of good

15    faith and fair dealing because the plaintiffs new and

16    understood that the Fund Counterparties did not have the

17    ability to pay and that the Highland Capital Management

18    also disputed that in the event the Fund Counterparties

19    could not pay, it was in any way liable.

20          THE COURT:  I don't think I'm going to hear

21    anything more on that at this time.

22          Now, let me go to my next question.

23          How can -- withdrawn.

24          Mr. Clubok, is it your position that it is for the

25    Court to decide the implied covenant claim?

26          MR. CLUBOK:  Yes.  Yes, your Honor.

Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20 Entered 08/07/20 23:11:52 Page 15 of 48

14

```
 1                         Proceedings

 2              THE COURT:  Yes, just give me a minute, please.

 3              Is that not an equitable claim?  And if not, what

 4       happens if the Court and the jury reach different

 5       conclusions on whether action was taken to transfer assets

 6       that would have been used to satisfy a judgment, assuming

 7       for purposes of argument only that the Court would have

 8       previously concluded that there was to be a judgment?

 9              MR. CLUBOK:  Well, there's two different legal

10       standards.  So, the facts that relate to this are the same,

11       the same body of facts.  Mostly overlapping, I would say.

12              There are slightly different legal tests.  One

13       being for implied covenant of good faith and fair dealing

14       is a legal standard that your Honor would have to apply to

15       those facts; and there's a different standard, I think

16       generally a higher standard -- you could argue is different

17       standard.  Let's just say different standard on fraudulent

18       conveyance that largely you take the same set of facts and

19       the jury apply the different, you know, jury instruction to

20       the standard for them to decide whether it constitutes a

21       fraudulent conveyance, then the court and the jury could

22       decide they are both breach of implied covenant good faith

23       and fair dealing and fraudulent conveyances; or, your Honor

24       could decide it is breach of implied duty of good faith and

25       fair dealing, but it doesn't rise to the level of

26       fraudulent conveyance or vice versa.
```

Bonnie Piccirillo - Official Court Reporter

Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20 Entered 08/07/20 23:11:52 Page 16 of 48

15

```
 1                      Proceedings

 2              They're just two different legal tests, but

 3      substantially overlapping facts.

 4              That's why we would propose moving that one -- now

 5      that the fraudulent conveyance is back in the case, that's

 6      why we would say that the trial that was currently set for

 7      June where we were going to have -- where we all agreed

 8      that agree your Honor would do the implied covenant

 9      good faith and fair dealing along with the breach of

10      contract; we're now saying, Okay, that substantially

11      overlaps.  It is a very discrete set of facts so put that

12      for the second phase of the case.

13              THE COURT:  Ms. Klein.

14              MS. KLEIN:  Your Honor, we agree that there are

15      two different legal standards and, of course, the two

16      different triers of fact can decide it differently.  We do

17      disagree that the parties emphatically agree that the case

18      could be bifurcated if the fraudulent conveyance claim came

19      back into the case; and, in fact, it was Mr. Clubok who

20      represented to Ms. Barnett that if the 1st Department

21      reversed course and added the claims back in and that the

22      parties wanted to reconsider whether or not a bifurcation

23      was appropriate, which is what has lead to this exercise.

24              MR. CLUBOK:  If I may, just to be clear, I wasn't

25      suggesting otherwise.  What the parties agreed to on

26      March 9th during the conference with the Court was that
```

Bonnie Piccirillo - Official Court Reporter

Proceedings

2    we were going to -- at that time fraudulent conveyance was

3    out of the case because of the 1st Department's original

4    decision; and the parties had agreed we would do the breach

5    of contract and the breach of implied covenant of good

6    faith and fair dealing; but we would bifurcate out the

7    fraudulent inducement to a later time and alter ego to a

8    later time.  That's the status quo.

9    And then we did say, Gee, if the Court puts back

10    in the fraudulent conveyance, we'll have to reassess and so

11    now that the fraudulent conveyance is back in, we have a

12    couple of options.  One is to do everything all together,

13    but for a number of reasons that makes less sense than just

14    saying, Okay, fraudulent conveyance, it substantially

15    overlaps and I didn't hear Ms. Klein disagree with that.

16    It overlaps with the breach of implied covenant of good

17    faith and fair dealing.

18    So the smart thing to do is to put that one to the

19    later part of the case.  No one had agreed to it before.

20    We said we would reassess, and that's what we're doing and

21    our proposal is we'll make this trial even easier and now

22    we put off one issue that we thought we were going to be

23    trying in June, but now we don't have to try in June

24    because it substantially overlaps with this fraudulent

25    conveyance and we will try the second phase under

26    plaintiffs' proposal.

Bonnie Piccirillo - Official Court Reporter

Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20 Entered 08/07/20 23:11:52 Page 18 of
48

17

1          Proceedings

2          THE COURT:  Mr. Clubok, I really must ask you

3   again to speak more slowly because this is proving very

4   difficult for the reporter.

5          I think we got everything down there, but it's

6   difficult to do it repeatedly at that rate.

7          Ms. Klein, do you have anything that you want to

8   add in response to the last statement of Mr. Clubok?

9          MS. KLEIN:  Yes, your Honor.  Just briefly, and

10  that is that as our submission demonstrates upon evaluation

11  after the 1st Department's decision, we think there's

12  substantial overlap not only of the evidence, but also of

13  the witnesses that we would bring; and, therefore, we think

14  that fairness dictates that this all be done at the same

15  time.

16         THE COURT:  All right, I was actually going to

17  ask you to elaborate on that, on the overlap of witnesses.

18         The briefing on this, it is not expansive, shall

19  we say.  So can you elaborate on which witnesses would

20  overlap and with respect to what issues?

21         MS. KLEIN:  Certainly, your Honor.

22         There are several witnesses on both sides who had

23  involvement in the deal and throughout the process.

24         On the defense side for the Highland Capital

25  Management parties is Philip Braner and on the plaintiffs'

26  side is Mr. LeRoux, L-E-R-O-U-X, and Mr. Grimaldi,

        Bonnie Piccirillo - Official Court Reporter

1        Proceedings

2     G-R-I-M-A-L-D-I and Mr. Bawden, B-A-W-D-E-N.

3             Those three gentlemen participated in the

4     negotiation and the meaning of the Agreements.  They

5     participated throughout the performance of the Agreements

6     and some were also involved in the -- what we'll call post

7     termination conduct.

8             So we anticipate that those three gentlemen have

9     ultimately evidence relevant to all of the claims.

10            The complicating factor, of course, is that

11    Mr. Braner is no longer an employee of a Highland entity.

12    He is now working for a wholly separate company in Dallas;

13    and Mr. LeRoux is no longer working for UBS and he's

14    working for a wholly separate company in North Carolina.

15    And, therefore, if we are not to do this all at the same

16    time, even if Mr. Braner and Mr. LeRoux come to a first

17    trial, it is unknown whether or not that they would

18    participate in a second trial.

19            Therefore, given that they have knowledge of

20    anything that happened before, during and after the

21    performance of this Agreement, we think that there's

22    substantial overlap.

23            The damages experts also have substantial overlap.

24    On our side, it is a gentleman named Mr. Warren, and on the

25    other side it is a gentleman named Mr. Dudney.  So both of

26    those experts would be called to testify in both phases of

Bonnie Piccirillo - Official Court Reporter

                           Proceedings

 1

 2      a trial.

 3              And then, also, the Highland defendants allege

 4      that there's something called hedging.  That is an offset

 5      to damages regardless whether it is breach of contract or

 6      fraudulent conveyance or otherwise.  He testifies about

 7      hedging and about the risks and the process related

 8      thereto.

 9              UBS claims that Mr. Mammola's testimony is not

10      relevant to a breach-of-contract claim because the hedging

11      occurred at the outset of the contract; not at the outset

12      of the alleged breach.

13              But, the hedging did occur at the outset of the

14      alleged fraudulent inducement; and, therefore,

15      Mr. Mammola's testimony would be relevant to all of the

16      claims or at least to a discussion in his testimony about

17      whether or not he should be permitted to testify at trial

18      on breach of contract, as the plaintiffs have alleged that

19      he is not.

20              Mr. Mammola lives in London and, therefore, it is

21      quite costly to bring him to testify to trial.  So that is

22      another witness who is overlapping on a different claim.

23              THE COURT:  Is there a reason why I couldn't hear

24      the hedging offset issue insofar as it bears on the

25      contract claim at the time we had the jury trial?

26              MS. KLEIN:  Well, we believe that the hedging

             Bonnie Piccirillo - Official Court Reporter

Proceedings

1

2    offset, obviously, completely offsets any damages; and,

3    therefore, if your Honor were to do that, that at the

4    outset of the first stage of any trial, you would only

5    decide whether or not there's liability and you would move

6    all damages into a second phase of a trial.

7         THE COURT:  Can you give me a bit more detail on

8    what this overlap is in the testimony that the three UBS

9    witnesses and the one Highland witness would be giving?

10        MS. KLEIN:  Certainly.  Mr. Braner, who is the

11   Highland former employee, negotiated and restructured the

12   transaction; and he has knowledge regarding the signed

13   Counterparties' performance including, without limitation,

14   the offering of certain assets for the margin calls, as

15   well as the participation of the defendants in the Highland

16   Financial Partnerships or HFP.

17        In those margin calls and the unwinding of a note

18   transaction, which the defendants claim is the basis for

19   their fraudulent conveyance claim.  So Mr. Braner has

20   knowledge and testimony that relates to all aspect of the

21   claim.

22        Mr. LeRoux and Mr. Grimaldi also negotiated the

23   restructured transaction and have knowledge of the

24   emphasis, which Mr. Grimaldi and Mr. Bawden have knowledge

25   of assessment of the risk and whether or not the parties

26   would have the ability to pay.  And Mr. LeRoux and Mr.

Bonnie Piccirillo - Official Court Reporter

Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20 Entered 08/07/20 23:11:52 Page 22 of 48

21

Proceedings

2     Grimaldi also determined when to issue margin calls, and

3     Mr. Grimaldi was involved in the decision to refuse certain

4     assets that were offered by the margin call that relate to

5     the note unwind that is alleged to be the basis for the

6     fraudulent conveyance.

7        THE COURT: Is there any reason to believe that

8     Mr. Braner will not appear at two phases of a bifurcated

9     trial?

10        MS. KLEIN: Currently, your Honor, no. He has

11     told us that he will participate; but, of course, he is

12     actively involved with another job and his time is limited,

13     and he is beyond the subpoena power of the Court. And the

14     situation that we seriously want to guard against is

15     Mr. Braner's participation in the first phase; but his

16     refusal in the second phase because he doesn't have time or

17     he's already been generous with his time or because his

18     employer suggests that he should not be able to participate

19     because he's not properly devoting his duties to his new

20     employer, in that instance we would be dealing with a

21     witness who doesn't want to be there and, of course, that

22     is -- if we were to try to force him to come, that would

23     substantially prejudice the defendants because we would

24     have a witness who is uncooperative presenting our main

25     case in front of a jury.

26        THE COURT: And where is Mr. Braner located?

Bonnie Piccirillo - Official Court Reporter

1        Proceedings

2            MS. KLEIN:  He is located in Dallas, Texas.

3            THE COURT:  All right, let's hear from Mr. Clubok

4    on these overlap issues, please.

5            MR. CLUBOK:  Sure.  Mr. Braner was going to have

6    this same issue when we agreed to bifurcate the first time.

7            Mr. Braner is involved in pretty much all aspects

8    of the case from Highland.  So when we agreed to bifurcate

9    for the first time, Highland signed up for the fact that

10   Mr. Braner would have to come twice.

11           Now, the hassle of the flying twice from Dallas,

12   Texas to New York -- I've done it many times and I think

13   Gayle probably has, too -- it is not the worst trip in the

14   world.  It's pretty minimal compared to what will happen

15   now and there will be a certain, much easier to identify

16   exactly when Mr. Braner will have to testify in the first

17   phase and in a narrower band of when he testifies in the

18   second.

19           Also, if our whole bifurcation plan is upset now

20   because Mr. Braner no longer -- well, I just heard that

21   he's willing to come for both so it is like he was willing

22   to do it before.  We still think he's willing, but,

23   theoretically, possibly, Mr. Braner might change his mind

24   later and that's why we shouldn't bifurcate now.  That's,

25   basically, the thrust of the defendants' argument and we

26   disagree with that as being much of a fact for the Court

Bonnie Piccirillo - Official Court Reporter

23

```
 1                        Proceedings
 2      should consider.
 3              Having said that, worst case scenario and
 4      notwithstanding what Mr. Braner committed to before when we
 5      all told the Court we would bifurcate; but notwithstanding
 6      what Mr. Braner has recently reconfirmed what he's willing
 7      to do and notwithstanding the fact that we have video
 8      deposition testimony from him, so we're just happy to
 9      designate that testimony.  It's easier not to come.
10              Another way to go about this is if he all of a
11      sudden changes his mind or his employer won't let him make
12      that trip from Dallas to New York for any day for the
13      second phase of the trial, we could just do a trial
14      deposition of him.  If we really have to accommodate Mr.
15      Braner and he's got to do it live from Dallas, we can make
16      that work.
17              That would not be a reason to un-bifurcate or to
18      un-bifurcate the whole trial.  It is true that Mr. Braner
19      overlaps.  That's the one witness on their side of the fact
20      witness that overlaps, but the evidence that has to come
21      into play for the fraudulent conveyance and the alter ego
22      and fraudulent inducement in the second trial is so -- most
23      of it is totally different and separate and has nothing to
24      do with the straight breach of contract.
25              There is a four-factor test for fraudulent
26      conveyance.  There is a nine-factor test for actual fraud.
```

Bonnie Piccirillo - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/04/2018 11:09 AM
INDEX NO. 650097/2009
NYSCEF DOC. NO. 494
Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20 Entered 08/07/20 23:11:52 Page 25 of
48
RECEIVED NYSCEF: 05/04/2018

24

Proceedings

1
2       There is a seven-factor test for whether or not the
3       transaction issue was actually an equity infusion, which
4       undercuts their defense was a secured loan and there is a
5       nine-factor test for alter ego.  I just did quick math, and
6       that is twenty-nine factors.

7            All those factors are factual issues with lots and
8       lots of facts.  If you recall the summary judgment, much of
9       that PowerPoint that I think I was able to use covered
10      facts because those twenty-nine factors that have nothing
11      to do with the breach of contract that have lots of
12      witnesses and lots of internal documents and lots of stuff
13      of which Mr. Braner is a very small part of.

14           So all of that stuff should be in the second phase
15      of the trial and just because Mr. Brian might,
16      theoretically, change his mind is not a reason to not
17      bifurcate.

18           With respect to everything else, you know, there
19      are three UBS witnesses.  Okay, that's on us.  If our
20      witnesses want to make two trips down to the courthouse,
21      that we appreciate defendants' concern for those witnesses,
22      but that's not a concern they need to worry themselves
23      with.

24           THE COURT:  Excuse me, I thought maybe -- let me
25      clarify this.

26           Ms. Klein, were you saying that you are going to

```
 1                      Proceedings

 2    want to call any of those three UBS witnesses?

 3              MS. KLEIN:  Yes, your Honor.

 4              THE COURT:  All of them?

 5              MS. KLEIN:  We have not yet decided all of them.

 6    Obviously, our presentation of evidence as defendants

 7    depends upon what the plaintiffs present in their case in

 8    chief; but, certainly, the current intent is to call all of

 9    them and that is what we would like to do.

10              If I may, just one point, and that is UBS is

11    seeking hundreds of millions of dollars in recovery from my

12    client.  It is a jury trial, and we will be substantially

13    and unfairly prejudiced if we cannot call our witnesses

14    live in a jury phase of a trial.  We all know that juries

15    respond much better to live witnesses, and we would be at

16    substantial and unfair disadvantage if we were to try to

17    call any witnesses by deposition or by remote feed.

18              And, the difference here with respect to

19    Mr. Braner is he has testimony that relates to the note

20    unwind that is alleged to be part of the fraudulent

21    conveyance claim, which wasn't in the bifurcated proposed

22    trial previously and it is now in; and, therefore,

23    Mr. Braner has essential testimony and it is essential to

24    my client's ability to be able to defend themselves against

25    these claims to have him appear live, and any chance that

26    he will not do that that's caused by bifurcation is
```

Bonnie Piccirillo - Official Court Reporter

Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20 Entered 08/07/20 23:11:52 Page 27 of
48

1                    Proceedings

2     substantial and unfair harm to my clients.

3              MR. CLUBOK:  Well, I have a solution --

4              THE COURT:  Just a moment, please.  Mr. Clubok,

5     can you represent that you have the control to insure that

6     not only Mr. Grimaldi and Mr. Bawden appear in both

7     phases, but also that Mr. LeRoux appears in both phases if

8     Highland wants to call them and you don't in the second

9     phase?

10             MR. CLUBOK:  When Grimaldi and Bawden, they live

11    in New York, I can represent to you and they work for UBS,

12    as long as they do which -- the defendants want this trial

13    to be in October.  There is some risk I suppose they could

14    quit their jobs and move out of town before October, but

15    that doesn't get solved by not bifurcating.

16             So in as much as good faith I can represent that

17    things don't change between now and October, yes, they will

18    show up for the October trial.  But Mr. LeRoux, I can't

19    guarantee that anymore that he'd show up in October or not.

20             I can tell you we are not going to call him even

21    in the first phase.  So whether he comes in October and

22    he's currently had indicated that he will cooperate and try

23    to make himself available, but that I can't guarantee

24    outside of subpoena power.

25             He was deposed by defendants.  They do have his

26    video deposition testimony just like any witness who is

                Bonnie Piccirillo - Official Court Reporter

                              Proceedings

1

2    unavailable.  So whether we bifurcate or not doesn't

3    increase my chances of getting Mr. LeRoux to show up in

4    October.  Either he will or he won't.  And as defendants

5    put in their papers, we had represented to them that our --

6    the indication to us in good faith just like their

7    representation about Mr. Braner which we accept, are that

8    he is willing to try to cooperate.  So that's about the

9    best I can say about Mr. LeRoux; but bifurcating or not

10   doesn't affect that and I'm not planning to call him in our

11   case in the first phase which, by the way, same thing with

12   Mr. Braner.  We're not asking to call Mr. Braner.

13           If Mr. Braner -- what defense are, basically,

14   saying is, Oh, we can't guarantee that Braner will show up.

15   We want to try this case in October when I guess we can

16   guarantee he'll show up somehow, even though I just heard

17   all the stuff about his employer maybe will change their

18   mind.  But, okay, they want to show up for the jury trial,

19   make that the time they show up.

20           If he also doesn't want to come to New York in

21   front of your Honor, I'm sure your Honor will not take

22   offense if he does a videotaped trial deposition if he

23   needs to do more testimony and he doesn't want to make the

24   trip the New York.  Your Honor will be able to distinguish

25   that and will not hold it against him.

26           So, the fact that Mr. Braner may not want to make

               Bonnie Piccirillo - Official Court Reporter

Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20 Entered 08/07/20 23:11:52 Page 29 of 48

                            Proceedings

1

2       a second trip to New York is not a reason to upset, to

3       totally change this case.

4               Furthermore, if I could just continue with the

5       other argument that defendants had made.  On this hedging

6       issue, they say that their expert doesn't want to come here

7       twice to talk about hedging, which he might theoretically

8       have to do.  Your Honor proposed a solution for that, which

9       I think is perfectly fine.  But, look, if we have a jury

10      trial, he's going to have to come here twice.  This was one

11      of the points we made in our brief.

12              If we just have a jury trial in the fall, we are

13      going to use a Frye motion because the hedging issue, that

14      threshold question is a legal one, does its hedging even a

15      possible offset for these damages or not?  And does Mammola

16      meet the standards articulated in Frye for providing expert

17      testimony on this subject?

18              We say no.  There will be a Frye hearing or

19      presumably he will testify, so he still would have to

20      testify twice.  It is just now instead of having to do a

21      Frye hearing -- by the way, all these people, a lot of

22      these experts and your Honor will have to have a Frye

23      hearing and a motion-in-limine hearing which we will avoid

24      to a large extent if we just do those things in what is,

25      essentially, the first phase of the case.

26              By the way, I heard vigorously, vigorously,

                Bonnie Piccirillo - Official Court Reporter

```
 1                         Proceedings

 2     vigorously the defendants say that they believe they will

 3     win the breach-of-contract claim; or because of the hedging

 4     arguments or the other offsets, they will prove there are

 5     no damages.

 6              If that's the case, we'll never have a second

 7     phase.  If there are no breach-of-contract damages, we will

 8     agree to take an appeal if necessary.  If we believe

 9     there's no legal error, we'll just drop the case.  We'll

10     settle it.

11              We will not insist on a trial on fraudulent

12     inducement if we lose all the breach-of-contract claim; and

13     so if the defendants are right, then hedging can prove the

14     offset, we'll just have this one-week long proceeding in

15     June and the case will be over or it will be potentially

16     subject to appeal if we have any appellate grounds on that

17     score.

18              THE COURT:  Let me stop you, please.

19              Ms. Klein, would you like to reply to any of that

20     and, also, I would offer you a further and final

21     opportunity to say anything you think is important to say

22     in support of your claim that we should not bifurcate.

23              MS. KLEIN:  Certainly, your Honor.

24              First of all, I just want to make sure that the

25     record is clear we did not say that Mr. Mammola is not

26     willing to come twice.  I just mentioned that he lives in
```

Bonnie Piccirillo - Official Court Reporter

|     | Proceedings |
| --- | --- |
| 1 |  |
| 2 | London and having have him come to New York twice |
| 3 | potentially increases the cost and burden to the defendants |
| 4 | in defending against these claims. |
| 5 | Same thing with having a bifurcated trial.  We |
| 6 | believe that given the overlap of evidence and witnesses, |
| 7 | it substantially increases the amount of money my clients |
| 8 | have to spend to defend against these claims, which we |
| 9 | think are wholly defensible. |
| 10 | I also heard Mr. Clubok say that if the defense |
| 11 | wins on breach of contract, we may not have a second phase; |
| 12 | and he mentions specifically dropping the fraudulent |
| 13 | inducement claim.  He didn't talk about the fraudulent |
| 14 | conveyance claim, the alter ego, the general partner |
| 15 | liability claims. |
| 16 | We have a great concern that the case will not |
| 17 | stop even if the defense does prove that there is no breach |
| 18 | of contract or no damages. |
| 19 | THE COURT:  I can't understand that position. |
| 20 | What would there be to try if there was no breach in terms |
| 21 | of alter ego or any damages issue? |
| 22 | MS. KLEIN:  Well, I guess with respect to the |
| 23 | fraudulent inducement claim, they could come back and say |
| 24 | that they were fraudulently induced, and that -- |
| 25 | THE COURT:  But that's not what I just heard you |
| 26 | say; and Mr. Clubok just represented that if there is a |

Bonnie Piccirillo - Official Court Reporter

<pre>
 1                          Proceedings

 2       finding of no breach of contract, they will not proceed

 3       with the fraudulent inducement claim.

 4              MS. KLEIN:  And so I guess the concern then is,

 5       your Honor, what does defense victory mean?  What is going

 6       up on appeal?  What is -- what does it mean that there is

 7       no damages?  What if the Court finds that there was, for

 8       example, $44 million in damages?  I was just pulling a

 9       number out of the air.  Does that then mean that we have to

10       move forward with the second phrase of trial?

11              It's just uncertain to us what he means by "if we

12       win."  If the win is no liability or zero damages, that

13       doesn't vitiate the fact that there's a possibility that

14       there would be a trial or a second phase if in fact it is

15       not a -- it's a zero dollar verdict.

16              THE COURT:  Yes, I understand and that is

17       absolutely correct.  That would not vitiate a second phase.

18              I don't mean to cut you off.  Is there anything

19       else that you want to bring to my attention?

20              MS. KLEIN:  The only other thing that I bring to

21       your attention, your Honor, is that if you do, in fact,

22       determine that you would like to bifurcate the trial, we

23       think that the trial should proceed in the fall instead of

24       on June 4th for the reasons that were set forth in our

25       submission.

26              THE COURT:  Mr. Clubok, also, a final opportunity
</pre>

Bonnie Piccirillo - Official Court Reporter

Case 19-34054-sgj11  Doc 933-18  Filed 08/07/20  Entered 08/07/20 23:11:52  Page 33 of
48

32

```
 1                    Proceedings
 2     to you to bring to my attention anything you think
 3     important to bring to my attention.  I'd ask you to please
 4     be brief.
 5              MR. CLUBOK:  I'll be very clear and I'll try to
 6     speak very slowly.
 7              If there is no liability or if there are zero
 8     damages, we will not proceed to a second phase of trial on
 9     any of our claims, including fraudulent inducement,
10     fraudulent conveyance or alter ego.  We will preserve our
11     right to take an appeal if we think it is appropriate.
12              If there is something like $44 million in damages,
13     I think there's a pretty good chance the parties can --
14     there's a pretty good chance the parties will resolve the
15     case, knowing what I know about these parties and about
16     just trials in general.  So, anyway so that's the first
17     thing I would say.
18              The second thing I would just say is that, again,
19     I'd just like to end on the simple fact that the parties
20     have agreed months ago -- when new counsel came along, we
21     were wary that this would be used for a massive delay.  I
22     was assured by defense counsel that it was not their
23     intention to do that; and I for my part said, you know
24     what, we will be reasonable.  We understand, you guys
25     already have vacations, this trial coming up or that trial
26     coming up.
```

Bonnie Piccirillo - Official Court Reporter

```
 1                        Proceedings

 2              Let's find a reasonable time.  My client would

 3      have liked to go to trial in March.  We, ultimately, agreed

 4      to go forward in June on breach of contract and breach of

 5      implied covenant of good faith and fair dealing.

 6              Now, we are saying let's go forward surely on

 7      breach of contract.  It means no Frye hearing.  It means no

 8      motions in limine.  It means we don't have to have the

 9      initial proceeding the Court hd once talked about where we

10      talk about the contract or we talk about hedging in advance

11      of a real trial.

12              It is a trial that we have been super specific

13      about, exactly who we would call.  We have exactly two

14      witnesses in our case in chief:  One company witness and

15      one expert and then some deposition testimony we want to

16      designate.

17              It's a case that we think could be tried in a week

18      or less; and because it's easier than what had previously

19      been agreed to which we agreed to in good faith to wait

20      till June, we do not think it is appropriate now when the

21      case is even simpler than we had agreed to to move

22      everything to October.  We think the case should go forward

23      as scheduled.  It will either end the case or it will frame

24      the next phase of the case and, perhaps, it will lead to a

25      resolution either way.

26              MR. CLUBOK:  Thank you.
```

Bonnie Piccirillo - Official Court Reporter

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | Proceedings                                                  |
| 2  | THE COURT:  Ms. Klein, was there anything new                |
| 3  | there that you feel a need to respond to?                    |
| 4  | MS. KLEIN:  Yes, your Honor.  Just very, very,               |
| 5  | briefly, which is we did come in as new counsel in           |
| 6  | February.  This case has been going on for nine years.       |
| 7  | I've been practicing law for well over twenty, and it is     |
| 8  | literally the most complicated case I have ever been         |
| 9  | involved in.                                                 |
| 10 | For the last several weeks we have been involved             |
| 11 | in reviewing evidence and putting forth the submission to    |
| 12 | your Honor about why or why the case should be bifurcated    |
| 13 | or not and what the overlapping evidence is.  And the 1st    |
| 14 | Department further on March 9th threw a monkey wrench into   |
| 15 | the whole case when it added back in the fraudulent          |
| 16 | conveyance claim.                                            |
| 17 | Therefore, we're not seeking to move the trial to           |
| 18 | the fall for purposes of delay, but so that we be given an   |
| 19 | adequate opportunity to prepare for a designed scope of      |
| 20 | trial and put together our defense.                          |
| 21 | We have been focused on the briefing as of                  |
| 22 | May 1st.  We don't have clarity regarding the scope of the  |
| 23 | trial, and we are in fact seeking leave to appeal the        |
| 24 | 1st Department's recent reversal of the prior opinion and    |
| 25 | we put those papers in last Friday on the -- I'm sorry on    |
| 26 | the 20th.                                                    |

Bonnie Piccirillo - Official Court Reporter

Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20 Entered 08/07/20 23:11:52 Page 36 of
48

35

```
 1                        Proceedings
 2            Therefore, we are moving forward as quickly and
 3       expeditiously as possible.  We just think that a little
 4       more time given the pendency and the complication and
 5       history of this case would not unfairly prejudice UBS in
 6       the slightest, but to force us to a trial on June 4th would
 7       be prejudicial to my clients.
 8            MR. CLUBOK:  Your Honor, may I briefly respond to
 9       a couple new things I heard?
10            THE COURT:  I think that I've heard what I need to
11       hear today.
12            Let's just take a five-minute recess.
13            (Whereupon, at this time a short recess was
14       taken.)
15            THE COURT:  Let's go back on the record.
16            Back on the record.
17            Having read the parties' submissions and heard
18       counsel for the parties on this conference call today, I am
19       persuaded that the trial should be bifurcated and that that
20       procedure will materially enhance the efficiency with which
21       this matter is determined without causing prejudice to
22       either party.
23            There are some complicated legal issues which need
24       to be addressed on the breach-of-contract claim, including
25       the computation of CDS losses as discussed in my summary
26       judgment opinion and whether or not the contractual
```

Bonnie Piccirillo - Official Court Reporter

```
 1                           Proceedings

 2        provisions regarding CDS losses are ambiguous and,

 3        therefore, expert testimony or evidence of custom and usage

 4        should be taken in interpreting those provisions.

 5               In addition, there are complicated issues, among

 6        others, with respect to the hedging offset claims.  Those

 7        issues will require further briefing, and determination of

 8        those issues if there were a jury trial could result in

 9        considerable delays to the jury and to the parties.

10               So, that is the principal reason I am going to

11        bifurcate; but, in addition, I do not find that the

12        inconvenience to witnesses is a basis for not bifurcating.

13               Counsel have had adequate opportunity to determine

14        whether any of these witnesses would not cooperate with a

15        second phase of trial and nothing is being put before the

16        Court to indicate that there is not going to be cooperation

17        of these witnesses; or that if there is not cooperation as

18        it turns out, that the testimony cannot otherwise be

19        obtained from the witnesses via videotaped depositions or

20        otherwise and -- or rather videotaped trial testimony or

21        otherwise.

22               And, in addition, I do not find that the fact that

23        the defendants have chosen to retain new trial counsel on

24        the eve of trial is a basis for deferring any longer the

25        trial of this matter.

26               I appreciate that it has been difficult for new
```

Bonnie Piccirillo - Official Court Reporter

Case 1:19-34054-sgj11 Doc 933-18 Filed 08/07/20 Entered 08/07/20 23:11:52 Page 38 of 48

37

Proceedings

2  counsel to come in and prepare for this trial; but, if

3  anything, new counsel's performance on this conference call

4  today shows what an exceptional job counsel has done in a

5  relatively short time in gaining mastery over the details

6  of this complex case.

7         I am willing, however, to put the trial over for

8  one month to early July to give counsel a further

9  opportunity to prepare.  I don't think that that delay

10  would prejudice the plaintiff, and it would actually suit

11  my schedule better than the June 4th trial date.  Although,

12  I could keep that date if it were absolutely necessary.

13         So, we have the defendants' list of trial

14  conflicts.  It does not appear that starting on July 2nd

15  would cause a problem.  There are some witnesses that are

16  unavailable on certain days, but it doesn't look like the

17  bench part of the trial will be so lengthy that we couldn't

18  work around that.

19         Does the plaintiff have a problem with a July 2nd

20  start date?

21         MR. CLUBOK:  I think that should be fine, your

22  Honor, with the caveat that with a little flexibility to

23  carry into the next week as needed.  Obviously, with the

24  Fourth of July, we have to check, double check with people

25  for that week.  But, if July 2nd works for your Honor, then

26  I think that would be fine.

Bonnie Piccirillo - Official Court Reporter

1                        Proceedings

2            THE COURT:  Is the Fourth of July midweek?  It is,

3    isn't it?

4            MR. CLUBOK:  It is a Wednesday so it is possible,

5    I suppose, that week could be tough for some people.

6            THE COURT:  Maybe we should start the following

7    week, the 9th.  Does that work?

8            MR. CLUBOK:  That's okay with us, I believe.

9            THE COURT:  Ms. Klein, does that work for you?

10           MS. KLEIN:  Mr. Cruciani, are you still on?

11           MR. CRUCIANI:  I am, and it does.

12           MR. CLUBOK:  I believe that should work for us,

13   your Honor.

14           THE COURT:  That's very good.  And let me say,

15   also, that another significant reason for bifurcating is so

16   that I can very carefully consider the evidence in this

17   case and the law that counsel will brief before I present

18   any issues to the jury assuming without suggesting one way

19   or the other or otherwise, of course, that there may be a

20   judgment in favor of the plaintiff.  And that probably is

21   even more important than avoiding delays due to

22   consideration of some of the complex issues that I outlined

23   earlier.

24           So I think this really will work for the best, not

25   only for the parties to receive a considered decision, but

26   also from the point of view of avoiding jury delays.

            Bonnie Piccirillo - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/04/2018 11:09 AM        INDEX NO. 650097/2009

NYSCEF DOC. NO. 494        Case 1:9-34054-sgj11 Doc 933-18 Filed 08/07/20   Entered 08/07/20 23:11:52   Page 40 of        RECEIVED NYSCEF: 05/04/2018

48

39

1              Proceedings

2              Now, I would like counsel to have the opportunity

3      to brief whatever issues they wish to brief, but I think

4      that counsel should confer on what issues they are going to

5      brief so that each side will have the opportunity to

6      address those issues.

7              And, I would also like to have counsel address the

8      issue of the proper interpretation of CDS losses, whether

9      the contract is ambiguous and whether parol evidence will

10     need to be taken on that issue.

11             I would like to leave the call at this point and

12     have you discuss with Ms. Barnett how long you need for

13     this briefing, what page limits you think you need and what

14     you want to do with the previously scheduled May 8th

15     pretrial conference.  It may be best to defer that until

16     after we receive the briefs; but if there are other issues

17     that you think you are going to need to deal with in the

18     near future, we can go ahead.

19             So, I'm going to leave the call at this time.

20     I'm requesting that the plaintiff obtain a copy of the

21     transcript of today's proceedings, e-file it and file two

22     hard copies with the clerk of the part.

23             The transcript will not be so ordered until I

24     receive the hard copies.

25             Let me remind you that I reserve the right to

26     correct errors in the transcript.  Therefore, if it is

                Bonnie Piccirillo - Official Court Reporter

Case 19-34054-sgj11 Doc 933-18 Filed 08/07/20 Entered 08/07/20 23:11:52 Page 41 of 48

40

```
1                         Proceedings

2        needed for any further purpose, you should be sure you have

3        a copy as so-ordered by me and not merely as signed by the

4        court reporter.

5                 Thank you.

6

7                              ---

8                         CERTIFIED TO BE A TRUE
                          AND CORRECT TRANSCRIPT
9

10

11                        _____
                          BONNIE PICCIRILLO
12                        OFFICIAL COURT REPORTER

13

14

15

16

17

18

19

20

21

22

23

24

25

26
```

**$**

**$44** [2] - 31:8, 32:12
**$500** [1] - 10:11

**1**

**1** [1] - 1:16
**1000** [1] - 2:4
**10036** [1] - 2:10
**11th** [1] - 2:7
**1st** [6] - 15:20, 16:3, 17:11, 34:13, 34:22, 34:24

**2**

**2** [1] - 5:24
**20004** [1] - 2:4
**2018** [1] - 1:16
**20th** [1] - 34:26
**2nd** [3] - 37:14, 37:19, 37:25

**4**

**47th** [1] - 2:10
**4th** [3] - 31:24, 35:6, 37:11

**6**

**60** [2] - 1:2, 1:15
**650097/09** [1] - 1:7

**8**

**8th** [1] - 39:14

**9**

**9th** [3] - 15:26, 34:14, 38:7

**A**

**ability** [5] - 7:2, 7:5, 13:17, 20:26, 25:24
**able** [11] - 4:26, 9:12, 9:24, 10:10, 11:15, 11:16, 11:17, 21:18, 24:9, 25:24, 27:24
**absolutely** [4] - 5:18, 12:22, 31:17, 37:12
**accept** [2] - 9:25, 27:7
**accommodate** [1] - 23:14
**action** [2] - 6:24, 14:5
**actions** [1] - 7:23
**actively** [1] - 21:12

**activity** [1] - 8:17
**actual** [2] - 9:22, 23:26
**add** [1] - 17:8
**added** [2] - 15:21, 34:15
**addition** [3] - 36:5, 36:11, 36:22
**address** [4] - 6:6, 6:9, 39:6, 39:7
**addressed** [1] - 35:24
**adequate** [2] - 34:19, 36:13
**advance** [1] - 33:10
**ADVISORS** [1] - 1:12
**affect** [1] - 27:10
**afield** [1] - 10:18
**aftermath** [1] - 12:15
**afternoon** [4] - 3:4, 3:7, 3:11, 3:13
**AG** [1] - 1:5
**ago** [3] - 5:4, 10:22, 32:20
**agree** [6] - 5:7, 13:2, 15:8, 15:14, 15:17, 29:8
**agreed** [11] - 15:7, 15:25, 16:4, 16:19, 22:6, 22:8, 32:20, 33:3, 33:19, 33:21
**Agreement** [1] - 18:21
**Agreements** [3] - 6:20, 18:4, 18:5
**ahead** [2] - 12:26, 39:18
**air** [1] - 31:9
**aired** [1] - 7:6
**allayed** [1] - 6:14
**allege** [1] - 19:3
**alleged** [7] - 7:18, 7:21, 19:12, 19:14, 19:18, 21:5, 25:20
**alter** [6] - 16:7, 23:21, 24:5, 30:14, 30:21, 32:10
**ALYSHA** [1] - 2:7
**Alysha** [1] - 3:9
**ambiguous** [2] - 36:2, 39:9
**amount** [2] - 10:10, 30:7
**amounts** [1] - 8:14
**AND** [1] - 40:8
**ANDREW** [1] - 2:5
**Andrew** [1] - 3:8
**anticipate** [1] - 18:8
**anxiety** [1] - 6:14
**anyway** [2] - 9:14, 32:16
**appeal** [5] - 29:8, 29:16, 31:6, 32:11,

34:23
**appear** [4] - 21:8, 25:25, 26:6, 37:14
**appearances** [1] - 3:5
**APPEARANCES** [1] - 1:23
**appellate** [1] - 29:16
**apply** [2] - 14:14, 14:19
**appreciate** [2] - 24:21, 36:26
**appropriate** [3] - 15:23, 32:11, 33:20
**argue** [1] - 14:16
**argument** [6] - 10:7, 11:9, 11:13, 14:7, 22:25, 28:5
**arguments** [2] - 6:12, 29:4
**articulated** [1] - 28:16
**aspect** [1] - 20:20
**aspects** [1] - 22:7
**assessment** [1] - 20:25
**assets** [10] - 6:22, 7:12, 7:22, 7:26, 12:2, 12:4, 12:17, 14:5, 20:14, 21:4
**assumed** [1] - 11:16
**assuming** [2] - 14:6, 38:18
**assured** [1] - 32:22
**attention** [4] - 31:19, 31:21, 32:2, 32:3
**attorneys** [1] - 3:17
**Attorneys** [2] - 2:3, 2:9
**available** [1] - 26:23
**avoid** [1] - 28:23
**avoiding** [2] - 38:21, 38:26
**aware** [1] - 7:6

**B**

**B-A-W-D-E-N** [1] - 18:2
**band** [1] - 22:17
**Barnett** [2] - 15:20, 39:12
**based** [1] - 7:17
**basis** [6] - 6:3, 9:26, 20:18, 21:5, 36:12, 36:24
**Bawden** [4] - 18:2, 20:24, 26:6, 26:10
**BE** [1] - 40:8
**bears** [1] - 19:24
**BEFORE** [1] - 1:19
**bench** [3] - 4:4, 4:5,

37:17
**best** [3] - 27:9, 38:24, 39:15
**better** [2] - 25:15, 37:11
**between** [3] - 4:5, 11:4, 26:17
**beyond** [1] - 21:13
**bifurcate** [14] - 4:5, 10:25, 16:6, 22:6, 22:8, 22:24, 23:5, 23:17, 23:18, 24:17, 27:2, 29:22, 31:22, 36:11
**bifurcated** [6] - 15:18, 21:8, 25:21, 30:5, 34:12, 35:19
**bifurcating** [4] - 26:15, 27:9, 36:12, 38:15
**bifurcation** [5] - 3:26, 10:2, 15:22, 22:19, 25:26
**bit** [2] - 9:15, 20:7
**body** [1] - 14:11
**BONNIE** [1] - 40:11
**Bonnie** [1] - 2:24
**bootstrap** [1] - 10:24
**BRANCH** [1] - 1:5
**Braner** [26] - 17:25, 18:11, 18:16, 20:10, 20:19, 21:8, 21:26, 22:5, 22:7, 22:10, 22:16, 22:20, 22:23, 23:4, 23:6, 23:15, 23:18, 24:13, 25:19, 25:23, 27:7, 27:12, 27:13, 27:14, 27:26
**Braner's** [1] - 21:15
**breach** [34] - 4:3, 4:9, 6:23, 7:7, 7:12, 7:19, 8:25, 9:13, 10:2, 12:10, 12:16, 14:22, 14:24, 15:9, 16:4, 16:5, 16:16, 19:5, 19:10, 19:12, 19:18, 23:24, 24:11, 29:3, 29:7, 29:12, 30:11, 30:17, 30:20, 31:2, 33:4, 33:7, 35:24
**breach-of-contract** [5] - 19:10, 29:3, 29:7, 29:12, 35:24
**Brian** [1] - 24:15
**brief** [8] - 5:24, 10:22, 28:11, 32:4, 38:17, 39:3, 39:5
**briefing** [4] - 17:18, 34:21, 36:7, 39:13
**briefly** [3] - 17:9, 34:5,

35:8
**briefs** [2] - 8:9, 39:16
**bring** [6] - 17:13, 19:21, 31:19, 31:20, 32:2, 32:3
**Bryant** [1] - 2:10
**burden** [1] - 30:3
**BY** [2] - 2:5, 2:11

**C**

**cannot** [2] - 25:13, 36:18
**Capital** [3] - 12:15, 13:17, 17:24
**CAPITAL** [1] - 1:8
**carefully** [1] - 38:16
**Carolina** [1] - 18:14
**carry** [1] - 37:23
**case** [37] - 3:20, 8:26, 10:3, 10:22, 12:7, 15:5, 15:12, 15:17, 15:19, 16:3, 16:19, 21:25, 22:8, 23:3, 25:7, 27:11, 27:15, 28:3, 28:25, 29:6, 29:9, 29:15, 30:16, 32:15, 33:14, 33:17, 33:21, 33:22, 33:23, 33:24, 34:6, 34:8, 34:12, 34:15, 35:5, 37:6, 38:17
**caused** [1] - 25:26
**causing** [1] - 35:21
**caveat** [1] - 37:22
**CDO** [3] - 1:8, 1:12, 8:21
**CDS** [3] - 35:25, 36:2, 39:8
**Centre** [1] - 1:15
**certain** [7] - 6:13, 8:22, 10:15, 20:14, 21:3, 22:15, 37:16
**certainly** [7] - 7:20, 10:21, 11:20, 17:21, 20:10, 25:8, 29:23
**CERTIFIED** [1] - 40:8
**chance** [3] - 25:25, 32:13, 32:14
**chances** [1] - 27:3
**change** [5] - 22:23, 24:16, 26:17, 27:17, 28:3
**changes** [1] - 23:11
**check** [2] - 37:24
**chief** [2] - 25:8, 33:14
**chosen** [1] - 36:23
**circumstances** [1] - 9:13
**claim** [42] - 4:15, 5:10,

5:15, 5:16, 5:20, 5:22, 6:4, 6:5, 6:8, 6:18, 7:12, 7:14, 7:15, 7:17, 8:11, 9:13, 10:14, 12:11, 12:14, 12:19, 12:20, 13:5, 13:25, 14:3, 15:18, 19:10, 19:22, 19:25, 20:18, 20:19, 20:21, 25:21, 29:3, 29:12, 29:22, 30:13, 30:14, 30:23, 31:3, 34:16, 35:24

**claiming** [1] - 6:4

**claims** [10] - 15:21, 18:9, 19:9, 19:16, 25:25, 30:4, 30:8, 30:15, 32:9, 36:6

**clarify** [1] - 24:25

**clarity** [1] - 34:22

**clear** [3] - 15:24, 29:25, 32:5

**clerk** [1] - 39:22

**client** [3] - 9:23, 25:12, 33:2

**client's** [1] - 25:24

**clients** [6] - 10:8, 11:14, 26:2, 30:7, 35:7

**CLUBOK** [26] - 2:5, 3:7, 3:18, 4:8, 4:18, 5:3, 5:13, 5:18, 8:6, 8:20, 9:17, 12:5, 12:22, 13:26, 14:9, 15:24, 22:5, 26:3, 26:10, 32:5, 33:26, 35:8, 37:21, 38:4, 38:8, 38:12

**Clubok** [13] - 3:8, 3:16, 8:5, 11:24, 13:24, 15:19, 17:2, 17:8, 22:3, 26:4, 30:10, 30:26, 31:26

**coming** [2] - 32:25, 32:26

**commit** [1] - 9:6

**committed** [2] - 10:15, 23:4

**company** [3] - 18:12, 18:14, 33:14

**COMPANY** [1] - 1:9

**compared** [1] - 22:14

**completely** [1] - 20:2

**complex** [2] - 37:6, 38:22

**complicated** [3] - 34:8, 35:23, 36:5

**complicating** [1] - 18:10

**complication** [1] -

35:4

**computation** [1] - 35:25

**concern** [4] - 24:21, 24:22, 30:16, 31:4

**concluded** [1] - 14:8

**conclusions** [1] - 14:5

**conduct** [1] - 18:7

**confer** [1] - 39:4

**conference** [5] - 6:13, 15:26, 35:18, 37:3, 39:15

**CONFERENCE** [1] - 1:18

**conflicts** [1] - 37:14

**consider** [2] - 23:2, 38:16

**considerable** [1] - 36:9

**consideration** [1] - 38:22

**considered** [1] - 38:25

**constitutes** [1] - 14:20

**context** [1] - 12:9

**continue** [1] - 28:4

**CONTINUED** [1] - 1:24

**contract** [41] - 4:3, 4:9, 6:23, 7:7, 7:12, 7:20, 7:24, 7:25, 8:2, 8:11, 8:16, 8:22, 8:25, 9:10, 9:13, 9:19, 9:22, 10:21, 11:17, 11:21, 12:16, 15:10, 16:5, 19:5, 19:10, 19:11, 19:18, 19:25, 23:24, 24:11, 29:3, 29:7, 29:12, 30:11, 30:18, 31:2, 33:4, 33:7, 33:10, 35:24, 39:9

**contracts** [1] - 9:4

**contractual** [1] - 35:26

**control** [1] - 26:5

**conveyance** [22] - 5:16, 7:21, 13:3, 14:18, 14:21, 14:26, 15:5, 15:18, 16:2, 16:10, 16:11, 16:14, 16:25, 19:6, 20:19, 21:6, 23:21, 23:26, 25:21, 30:14, 32:10, 34:16

**conveyances** [5] - 7:18, 9:7, 10:12, 10:15, 14:23

**cooperate** [3] - 26:22, 27:8, 36:14

**cooperation** [2] - 36:16, 36:17

**copies** [1] - 39:22,

39:24

**copy** [2] - 39:20, 40:3

**correct** [8] - 4:14, 5:9, 12:4, 12:5, 12:19, 12:22, 31:17, 39:26

**CORRECT** [1] - 40:8

**cost** [1] - 30:3

**costly** [1] - 19:21

**counsel** [15] - 3:4, 3:5, 32:20, 32:22, 34:5, 35:18, 36:13, 36:23, 37:2, 37:4, 37:8, 38:17, 39:2, 39:4, 39:7

**counsel's** [1] - 37:3

**count** [1] - 8:15

**Counterparties** [10] - 6:21, 7:5, 7:11, 8:21, 10:9, 11:15, 12:2, 12:4, 13:16, 13:18

**Counterparties'** [2] - 7:2, 20:13

**COUNTY** [1] - 1:2

**couple** [2] - 16:12, 35:9

**course** [7] - 12:26, 15:15, 15:21, 18:10, 21:11, 21:21, 38:19

**Court** [16] - 2:25, 4:4, 4:8, 4:15, 5:11, 13:25, 14:4, 14:7, 15:26, 16:9, 21:13, 22:26, 23:5, 31:7, 33:9, 36:16

**court** [3] - 8:18, 14:21, 40:4

**COURT** [47] - 1:2, 3:3, 3:15, 3:22, 4:10, 4:13, 4:25, 5:7, 5:9, 5:14, 5:19, 6:3, 7:16, 8:5, 8:18, 9:15, 11:24, 12:18, 12:23, 12:26, 13:9, 13:20, 14:2, 15:13, 17:2, 17:16, 19:23, 20:7, 21:7, 21:26, 22:3, 24:24, 25:4, 26:4, 29:18, 30:19, 30:25, 31:16, 31:26, 34:2, 35:10, 35:15, 38:2, 38:6, 38:9, 38:14, 40:11

**Court's** [1] - 4:23

**courthouse** [1] - 24:20

**covenant** [26] - 4:15, 5:10, 5:15, 5:20, 6:4, 6:7, 6:17, 7:10, 7:14, 7:16, 9:5, 10:13, 11:5, 12:10, 12:14,

12:19, 13:5, 13:6, 13:14, 13:25, 14:13, 14:22, 15:8, 16:5, 16:16, 33:5

**covered** [1] - 24:9

**credit** [3] - 9:12, 11:3, 11:14

**CREDIT** [2] - 1:10, 1:11

**CRUCIANI** [3] - 2:11, 3:14, 38:11

**Cruciani** [3] - 3:13, 3:21, 38:10

**CRUSADER** [1] - 1:11

**current** [1] - 25:8

**custom** [1] - 36:3

**cut** [1] - 31:18

**D**

**Dallas** [5] - 18:12, 22:2, 22:11, 23:12, 23:15

**damages** [18] - 4:3, 4:8, 6:23, 10:11, 18:23, 19:5, 20:2, 20:6, 28:15, 29:5, 29:7, 30:18, 30:21, 31:7, 31:8, 31:12, 32:8, 32:12

**date** [3] - 37:11, 37:12, 37:20

**days** [1] - 37:16

**DC** [1] - 2:4

**deal** [2] - 17:23, 39:17

**dealing** [17] - 6:18, 7:10, 9:6, 10:14, 11:6, 11:22, 12:11, 12:14, 13:15, 14:13, 14:23, 14:25, 15:9, 16:6, 16:17, 21:20, 33:5

**dealt** [1] - 12:15

**decide** [8] - 4:8, 8:16, 13:25, 14:20, 14:22, 14:24, 15:16, 20:5

**decided** [2] - 4:4, 25:5

**decision** [4] - 16:4, 17:11, 21:3, 38:25

**DEELEY** [1] - 2:5

**Deeley** [1] - 3:9

**defend** [3] - 9:12, 25:24, 30:8

**Defendants** [2] - 1:13, 2:9

**defendants** [25] - 3:12, 6:18, 6:21, 7:10, 7:25, 8:3, 8:17, 8:20, 10:17, 10:26, 11:26, 12:12, 19:3,

20:15, 20:18, 21:23, 25:6, 26:12, 26:25, 27:4, 28:5, 29:2, 29:13, 30:3, 36:23

**defendants'** [7] - 5:19, 5:24, 5:25, 5:26, 22:25, 24:21, 37:13

**defending** [1] - 30:4

**defense** [13] - 7:14, 7:15, 9:9, 10:18, 12:13, 17:24, 24:4, 27:13, 30:10, 30:17, 31:5, 32:22, 34:20

**defensible** [1] - 30:9

**defer** [1] - 39:15

**deferring** [1] - 36:24

**delay** [3] - 32:21, 34:18, 37:9

**delays** [3] - 36:9, 38:21, 38:26

**delete** [3] - 4:20, 5:3, 5:6

**deleted** [1] - 4:24

**demonstrates** [1] - 17:10

**Department** [2] - 15:20, 34:14

**Department's** [3] - 16:3, 17:11, 34:24

**deposed** [1] - 26:25

**deposition** [6] - 23:8, 23:14, 25:17, 26:26, 27:22, 33:15

**depositions** [1] - 36:19

**designate** [2] - 23:9, 33:16

**designed** [1] - 34:19

**detail** [2] - 6:3, 20:7

**details** [2] - 8:16, 37:5

**determination** [1] - 36:7

**determine** [2] - 31:22, 36:13

**determined** [2] - 21:2, 35:21

**devoting** [1] - 21:19

**dictates** [1] - 17:14

**difference** [1] - 25:18

**different** [12] - 14:4, 14:9, 14:12, 14:15, 14:16, 14:17, 14:19, 15:2, 15:15, 15:16, 19:22, 23:23

**differently** [1] - 15:16

**difficult** [3] - 17:4, 17:6, 36:26

**diligence** [2] - 6:26, 12:3

**diminish** [1] - 7:24

**direct** [1] - 9:4
**disadvantage** [1] - 25:16
**disagree** [5] - 4:10, 4:11, 15:17, 16:15, 22:26
**discrete** [1] - 15:11
**discuss** [1] - 39:12
**discussed** [1] - 35:25
**discussion** [1] - 19:16
**dispute** [1] - 10:21
**disputed** [1] - 13:18
**disputes** [2] - 8:13, 8:23
**distinguish** [1] - 27:24
**documents** [1] - 24:12
**dollar** [1] - 31:15
**dollars** [1] - 25:11
**done** [3] - 17:14, 22:12, 37:4
**double** [1] - 37:24
**doubt** [1] - 10:18
**down** [3] - 9:15, 17:5, 24:20
**drop** [1] - 29:9
**dropping** [1] - 30:12
**dudney** [1] - 18:25
**due** [4] - 6:26, 10:26, 12:3, 38:21
**due-diligence** [1] - 6:26
**during** [3] - 8:2, 15:26, 18:20
**duties** [1] - 21:19
**duty** [2] - 11:22, 14:24

**E**

**e-file** [1] - 39:21
**early** [1] - 37:8
**easier** [4] - 16:21, 22:15, 23:9, 33:18
**efficiency** [1] - 35:20
**ego** [6] - 16:7, 23:21, 24:5, 30:14, 30:21, 32:10
**either** [5] - 11:21, 27:4, 33:23, 33:25, 35:22
**elaborate** [2] - 17:17, 17:19
**elicit** [1] - 7:14
**ELIZABETH** [1] - 2:5
**Elizabeth** [1] - 3:9
**emphasis** [1] - 20:24
**emphatically** [1] - 15:17
**employee** [2] - 18:11, 20:11
**employer** [4] - 21:18,

21:20, 23:11, 27:17
**end** [2] - 32:19, 33:23
**ENGEL** [1] - 2:6
**Engel** [1] - 3:9
**enhance** [1] - 35:20
**entertain** [2] - 10:19, 11:11
**entity** [1] - 18:11
**entry** [1] - 7:17
**equitable** [1] - 14:3
**equity** [1] - 24:3
**error** [1] - 29:9
**errors** [1] - 39:26
**ESQ** [8] - 2:5, 2:5, 2:6, 2:6, 2:7, 2:11, 2:11, 2:12
**essential** [2] - 25:23
**essentially** [1] - 28:25
**evaluation** [1] - 17:10
**eve** [1] - 36:24
**event** [1] - 13:18
**events** [1] - 5:20
**evidence** [25] - 6:6, 6:10, 6:13, 6:25, 7:13, 9:19, 9:21, 9:26, 11:12, 11:25, 11:26, 12:6, 12:20, 13:7, 13:13, 17:12, 18:9, 23:20, 25:6, 30:6, 34:11, 34:13, 36:3, 38:16, 39:9
**exactly** [2] - 22:16, 33:13
**example** [2] - 9:6, 31:8
**examples** [1] - 6:11
**exceptional** [1] - 37:4
**excuse** [1] - 24:24
**exercise** [1] - 15:23
**exhaustively** [1] - 6:10
**exists** [1] - 13:7
**expand** [1] - 10:19
**expansive** [1] - 17:18
**expect** [2] - 6:9, 6:10
**expected** [1] - 10:12
**expeditiously** [1] - 35:3
**expert** [4] - 28:6, 28:16, 33:15, 36:3
**experts** [3] - 18:23, 18:26, 28:22
**explain** [1] - 6:3
**explained** [1] - 10:23
**explanation** [1] - 8:10
**express** [1] - 11:21
**extent** [1] - 28:24

**F**

**F-R-I-T-Z** [1] - 3:14
**fact** [17] - 6:20, 10:10,

13:7, 13:14, 15:16, 15:19, 22:9, 22:26, 23:7, 23:19, 27:26, 31:13, 31:14, 31:21, 32:19, 34:23, 36:22
**factor** [5] - 18:10, 23:25, 23:26, 24:2, 24:5
**factors** [3] - 24:6, 24:7, 24:10
**facts** [8] - 14:10, 14:11, 14:15, 14:18, 15:3, 15:11, 24:8, 24:10
**factual** [1] - 24:7
**fair** [16] - 6:18, 7:10, 9:6, 10:14, 11:6, 11:22, 12:11, 12:14, 13:15, 14:13, 14:23, 14:25, 15:9, 16:6, 16:17, 33:5
**fair-dealing** [4] - 6:18, 10:14, 12:11, 12:14
**fairness** [1] - 17:14
**faith** [19] - 6:17, 7:10, 9:6, 10:13, 11:5, 11:22, 12:10, 12:14, 13:15, 14:13, 14:22, 14:24, 15:9, 16:6, 16:17, 26:16, 27:6, 33:5, 33:19
**fall** [3] - 28:12, 31:23, 34:18
**false** [1] - 7:13
**far** [1] - 10:18
**far-afield** [1] - 10:18
**favor** [1] - 38:20
**February** [1] - 34:6
**feed** [1] - 25:17
**few** [2] - 3:26, 5:4
**file** [1] - 39:21
**final** [2] - 29:20, 31:26
**FINANCIAL** [1] - 1:10
**Financial** [1] - 20:16
**fine** [4] - 3:22, 28:9, 37:21, 37:26
**first** [14] - 4:2, 9:9, 13:2, 18:16, 20:4, 21:15, 22:6, 22:9, 22:16, 26:21, 27:11, 28:25, 29:24, 32:16
**five** [1] - 35:12
**five-minute** [1] - 35:12
**flexibility** [1] - 37:22
**Floor** [1] - 2:10
**flourished** [1] - 6:22
**flying** [1] - 22:11
**focused** [1] - 34:21
**folks** [1] - 9:10
**following** [1] - 38:6

**follows** [1] - 4:13
**force** [2] - 21:22, 35:6
**formation** [1] - 9:19
**former** [1] - 20:11
**forth** [3] - 8:25, 31:24, 34:11
**forward** [5] - 31:10, 33:4, 33:6, 33:22, 35:2
**four** [1] - 23:25
**four-factor** [1] - 23:25
**Fourth** [1] - 37:24, 38:2
**frame** [1] - 33:23
**fraud** [1] - 23:26
**fraudulent** [43] - 5:16, 5:21, 6:5, 6:7, 7:15, 7:18, 7:21, 9:7, 10:12, 10:15, 11:5, 12:20, 13:3, 13:4, 14:17, 14:21, 14:23, 14:26, 15:5, 15:18, 16:2, 16:7, 16:10, 16:11, 16:14, 16:24, 19:6, 19:14, 20:19, 21:6, 23:21, 23:22, 23:25, 25:20, 29:11, 30:12, 30:13, 30:23, 31:3, 32:9, 32:10, 34:15
**fraudulently** [2] - 12:16, 30:24
**Friday** [1] - 34:25
**FRIEDMAN** [1] - 1:21
**Friedman** [1] - 3:7
**Friedmann** [1] - 3:4
**Fritz** [1] - 3:14
**FRITZ** [1] - 2:12
**front** [2] - 21:25, 27:21
**Frye** [8] - 28:13, 28:16, 28:18, 28:21, 28:22, 33:7
**fully** [1] - 7:6
**Fund** [12] - 6:21, 7:2, 7:4, 7:11, 8:21, 10:9, 11:15, 12:2, 12:4, 13:16, 13:18
**FUND** [2] - 1:9, 1:11
**furthermore** [1] - 28:4
**future** [2] - 6:12, 39:18

**G**

**gaining** [1] - 37:5
**Gary** [1] - 3:13
**GARY** [1] - 2:11
**Gayle** [2] - 3:12, 22:13
**GAYLE** [1] - 2:11
**Gee** [3] - 10:8, 11:16, 16:9

**general** [2] - 30:14, 32:16
**generally** [1] - 14:16
**generous** [1] - 21:17
**gentleman** [2] - 18:24, 18:25
**gentlemen** [2] - 18:3, 18:8
**given** [4] - 18:19, 30:6, 34:18, 35:4
**good-faith** [4] - 6:17, 10:13, 12:10, 12:14
**great** [1] - 30:16
**Grimaldi** [7] - 17:26, 20:22, 20:24, 21:2, 21:3, 26:6, 26:10
**GRIMALDI** [1] - 18:2
**grounds** [1] - 29:16
**guarantee** [4] - 26:19, 26:23, 27:14, 27:16
**guard** [1] - 21:14
**guess** [3] - 27:15, 30:22, 31:4
**guys** [1] - 32:24

**H**

**happy** [1] - 23:8
**hard** [4] - 8:7, 9:24, 39:22, 39:24
**harm** [1] - 26:2
**hassle** [1] - 22:11
**HCM** [1] - 9:3
**hd** [1] - 33:9
**hear** [6] - 6:5, 13:20, 16:15, 19:23, 22:3, 35:11
**heard** [15] - 6:7, 8:9, 10:4, 10:20, 10:21, 10:23, 11:4, 22:20, 27:16, 28:26, 30:10, 30:25, 35:9, 35:10, 35:17
**hearing** [7] - 8:8, 8:10, 28:18, 28:21, 28:23, 33:7
**hedging** [14] - 19:4, 19:7, 19:10, 19:13, 19:24, 19:26, 28:5, 28:7, 28:13, 28:14, 29:3, 29:13, 33:10, 36:6
**HFP** [1] - 20:16
**higher** [1] - 14:16
**HIGHLAND** [7] - 1:8, 1:8, 1:9, 1:10, 1:10, 1:11, 1:11
**Highland** [12] - 11:21, 12:15, 13:17, 17:24, 18:11, 19:3, 20:9,

20:11, 20:15, 22:8, 22:9, 26:8
**highlighting** [1] - 6:13
**himself** [1] - 26:23
**history** [1] - 35:5
**hold** [1] - 27:25
**HOLDING** [1] - 1:9
**honest** [1] - 8:7
**Honor** [40] - 3:11, 3:18, 3:19, 4:12, 4:18, 4:19, 5:8, 5:13, 6:2, 6:15, 8:6, 9:17, 9:20, 9:25, 10:19, 11:7, 13:26, 14:14, 14:23, 15:8, 15:14, 17:9, 17:21, 20:3, 21:10, 25:3, 27:21, 27:24, 28:8, 28:22, 29:23, 31:5, 31:21, 34:4, 34:12, 35:8, 37:22, 37:25, 38:13
**HONORABLE** [1] - 1:21
**HUANG** [1] - 2:6
**Huang** [1] - 3:9
**hundreds** [1] - 25:11

## I

**identify** [1] - 22:15
**implicates** [2] - 5:20, 7:26
**implied** [28] - 4:15, 5:10, 5:15, 5:20, 6:4, 6:7, 6:17, 7:9, 7:14, 7:16, 9:5, 10:13, 11:5, 11:22, 12:10, 12:13, 12:19, 13:5, 13:6, 13:14, 13:25, 14:13, 14:22, 14:24, 15:8, 16:5, 16:16, 33:5
**important** [3] - 29:21, 32:3, 38:21
**importantly** [1] - 13:4
**inability** [1] - 7:19
**INC** [1] - 1:12
**including** [2] - 20:13, 32:9, 35:24
**inconvenience** [1] - 36:12
**increase** [1] - 27:3
**increases** [2] - 30:3, 30:7
**INDEX** [1] - 1:6
**indicate** [2] - 5:24, 36:16
**indicated** [1] - 26:22
**indication** [1] - 27:6
**induced** [1] - 30:24

**inducement** [16] - 5:17, 5:22, 6:5, 6:8, 7:15, 11:5, 12:20, 13:4, 16:7, 19:14, 23:22, 29:12, 30:13, 30:23, 31:3, 32:9
**infusion** [1] - 24:3
**initial** [1] - 33:9
**insist** [1] - 29:11
**insofar** [1] - 19:24
**instance** [1] - 21:20
**instead** [2] - 28:20, 31:23
**instruction** [1] - 14:19
**insure** [1] - 26:5
**insuring** [1] - 11:23
**intend** [1] - 13:13
**intending** [1] - 12:18
**intent** [1] - 25:8
**intention** [1] - 32:23
**interject** [5] - 10:18, 12:13, 12:25
**internal** [1] - 24:12
**internally** [2] - 9:10, 11:18
**interpretation** [1] - 39:8
**interpreting** [1] - 36:4
**interrupted** [2] - 4:17, 4:21
**introduce** [2] - 11:26, 13:14
**involved** [6] - 18:6, 21:3, 21:12, 22:7, 34:9, 34:10
**involvement** [1] - 17:23
**issue** [11] - 3:26, 16:22, 19:24, 21:2, 22:6, 24:3, 28:6, 28:13, 30:21, 39:8, 39:10
**issues** [13] - 17:20, 22:4, 24:7, 35:23, 36:5, 36:7, 36:8, 38:18, 38:22, 39:3, 39:4, 39:6, 39:16

## J

**job** [2] - 21:12, 37:4
**jobs** [1] - 26:14
**joining** [1] - 3:13
**Judge** [1] - 3:4
**judgment** [5] - 14:6, 14:8, 24:8, 35:26, 38:20
**July** [6] - 37:8, 37:14, 37:19, 37:24, 37:25, 38:2

**June** [9] - 15:7, 16:23, 29:15, 31:24, 33:4, 33:20, 35:6, 37:11
**juries** [1] - 25:14
**jury** [18] - 4:5, 4:16, 5:11, 14:4, 14:19, 14:21, 19:25, 21:25, 25:12, 25:14, 27:18, 28:10, 28:12, 36:8, 36:9, 38:18, 38:26
**Justice** [2] - 1:21, 3:7

## K

**keep** [1] - 37:12
**kind** [4] - 9:14, 9:25, 10:5, 11:12
**Klein** [12] - 3:12, 3:16, 4:10, 5:7, 7:16, 15:13, 16:15, 17:7, 24:26, 29:19, 34:2, 38:9
**KLEIN** [26] - 2:11, 3:11, 3:19, 4:11, 5:8, 5:26, 6:15, 7:19, 12:25, 13:2, 13:13, 15:14, 17:9, 17:21, 19:26, 20:10, 21:10, 22:2, 25:3, 25:5, 29:23, 30:22, 31:4, 31:20, 34:4, 38:10
**knowing** [1] - 32:15
**knowledge** [6] - 12:3, 18:19, 20:12, 20:20, 20:23, 20:24
**KUAN** [1] - 2:6
**Kuan** [1] - 3:9

## L

**L.P** [6] - 1:8, 1:9, 1:10, 1:11, 1:11, 1:12
**lack** [2] - 12:2, 12:3
**lacking** [1] - 7:3
**lag** [1] - 13:10
**large** [1] - 28:24
**largely** [1] - 14:18
**last** [4] - 13:11, 17:8, 34:10, 34:25
**LATHAM** [1] - 2:3
**law** [2] - 34:7, 38:17
**lead** [2] - 15:23, 33:24
**leading** [1] - 5:20
**least** [2] - 8:16, 19:16
**leave** [3] - 34:23, 39:11, 39:19
**legal** [8] - 14:9, 14:12, 14:14, 15:2, 15:15, 28:14, 29:9, 35:23
**legally** [3] - 10:4, 10:6,

12:7
**lengthy** [1] - 37:17
**LeRoux** [9] - 17:26, 18:13, 18:16, 20:22, 20:26, 26:7, 26:18, 27:3, 27:9
**LEROUX** [1] - 17:26
**less** [2] - 16:13, 33:18
**level** [1] - 14:25
**liability** [4] - 20:5, 30:15, 31:12, 32:7
**liable** [1] - 13:19
**license** [1] - 11:20
**limine** [2] - 28:23, 33:8
**limitation** [1] - 20:13
**limited** [1] - 21:12
**limits** [1] - 39:13
**line** [2] - 3:6, 3:8
**list** [1] - 37:13
**literally** [1] - 34:8
**litigated** [1] - 10:3
**live** [5] - 23:15, 25:14, 25:15, 25:25, 26:10
**lives** [2] - 19:20, 29:26
**LLC** [1] - 1:4
**LLP** [1] - 2:3
**loan** [1] - 24:4
**located** [2] - 21:26, 22:2
**LONDON** [1] - 1:5
**London** [2] - 19:20, 30:2
**look** [2] - 28:9, 37:16
**lose** [1] - 29:12
**losses** [3] - 35:25, 36:2, 39:8
**lost** [1] - 13:10

## M

**main** [1] - 21:24
**Mammola** [3] - 19:20, 28:15, 29:25
**Mammola's** [2] - 19:9, 19:15
**MANAGEMENT** [1] - 1:8
**Management** [2] - 13:17, 17:25
**manufactured** [1] - 9:14
**March** [3] - 15:26, 33:3, 34:14
**MARCY** [1] - 1:21
**margin** [5] - 8:2, 20:14, 20:17, 21:2, 21:4
**massive** [1] - 32:21
**MASTER** [2] - 1:8, 1:10

**mastery** [1] - 37:5
**materially** [1] - 35:20
**math** [1] - 24:5
**matter** [2] - 35:21, 36:25
**McKool** [2] - 2:9, 3:12
**mean** [6] - 10:11, 10:17, 31:5, 31:6, 31:9, 31:18
**meaning** [1] - 18:4
**means** [4] - 31:11, 33:7, 33:8
**meet** [1] - 28:16
**mentioned** [1] - 29:26
**mentions** [1] - 30:12
**merely** [1] - 40:3
**message** [3] - 4:20, 4:23, 4:25
**MICHAEL** [1] - 2:12
**Michael** [1] - 3:14
**midweek** [1] - 38:2
**might** [5] - 3:20, 6:12, 22:23, 24:15, 28:7
**million** [3] - 10:11, 31:8, 32:12
**millions** [1] - 25:11
**mind** [4] - 22:23, 23:11, 24:16, 27:18
**minimal** [1] - 22:14
**minute** [2] - 14:2, 35:12
**minutes** [1] - 5:4
**moment** [4] - 8:18, 13:9, 26:4
**money** [3] - 9:2, 9:8, 30:7
**monies** [1] - 9:21
**monkey** [1] - 34:14
**month** [1] - 37:8
**months** [1] - 32:20
**most** [2] - 23:22, 34:8
**mostly** [1] - 14:11
**motion** [3] - 11:10, 28:13, 28:23
**motion-in-limine** [1] - 28:23
**motions** [1] - 33:8
**move** [5] - 20:5, 26:14, 31:10, 33:21, 34:17
**moving** [1] - 15:4, 35:2
**MR** [26] - 3:7, 3:18, 4:8, 4:18, 5:3, 5:13, 5:18, 8:6, 8:20, 9:17, 12:5, 12:22, 13:26, 14:9, 15:24, 22:5, 26:3, 26:10, 32:5, 33:26, 35:8, 37:21, 38:4, 38:8, 38:11, 38:12

**MS** [25] - 3:11, 3:19, 4:11, 5:8, 5:26, 6:15, 7:19, 12:25, 13:2, 13:13, 15:14, 17:9, 17:21, 19:26, 20:10, 21:10, 22:2, 25:3, 25:5, 29:23, 30:22, 31:4, 31:20, 34:4, 38:10
**must** [1] - 17:2

**N**

**NAIK** [1] - 2:7
**Naik** [1] - 3:10
**name** [1] - 3:23
**named** [2] - 18:24, 18:25
**names** [1] - 8:19
**narrower** [1] - 22:17
**near** [1] - 39:18
**necessary** [2] - 29:8, 37:12
**need** [9] - 3:20, 24:22, 34:3, 35:10, 35:23, 39:10, 39:12, 39:13, 39:17
**needed** [2] - 37:23, 40:2
**needs** [2] - 8:19, 27:23
**negotiated** [2] - 7:26, 20:11, 20:22
**negotiation** [3] - 6:19, 7:24, 18:4
**never** [4] - 10:20, 10:21, 12:7, 29:6
**nevertheless** [1] - 9:5
**NEW** [2] - 1:2, 1:2
**new** [9] - 13:15, 21:19, 32:20, 34:2, 34:5, 35:9, 36:23, 36:26, 37:3
**New** [11] - 1:16, 2:10, 22:12, 23:12, 26:11, 27:20, 27:24, 28:2, 30:2
**next** [6] - 4:13, 11:7, 11:8, 13:22, 33:24, 37:23
**NEXT** [1] - 1:24
**nine** [6] - 10:3, 23:26, 24:5, 24:6, 24:10, 34:6
**nine-factor** [2] - 23:26, 24:5
**NO** [1] - 1:6
**North** [1] - 18:14
**note** [3] - 20:17, 21:5, 25:19
**nothing** [3] - 23:23,

24:10, 36:15
**notwithstanding** [4] - 9:20, 23:4, 23:5, 23:7
**number** [2] - 16:13, 31:9
**NW** [1] - 2:4

**O**

**obligated** [1] - 8:22
**obligation** [3] - 9:4, 9:22, 11:19
**obligations** [1] - 11:21
**obtain** [1] - 39:20
**obtained** [1] - 36:19
**obviously** [4] - 13:3, 20:2, 25:6, 37:23
**occur** [1] - 19:13
**occurred** [1] - 19:11
**October** [9] - 26:13, 26:14, 26:17, 26:18, 26:19, 26:21, 27:4, 27:15, 33:22
**OF** [3] - 1:2, 1:2
**offense** [1] - 27:22
**offer** [1] - 29:20
**offered** [3] - 8:2, 8:3, 21:4
**offering** [1] - 20:14
**OFFICIAL** [1] - 40:11
**Official** [1] - 2:25
**offset** [6] - 19:4, 19:24, 20:2, 28:15, 29:14, 36:6
**offsets** [2] - 20:2, 29:4
**OFFSHORE** [1] - 1:11
**ON** [1] - 1:24
**once** [1] - 33:9
**one** [18] - 8:18, 12:25, 14:12, 15:4, 16:12, 16:18, 16:19, 16:22, 20:9, 23:19, 25:10, 28:11, 28:14, 29:14, 33:14, 33:15, 37:8, 38:18
**One** [1] - 2:10
**one-week** [1] - 29:14
**opinion** [2] - 34:24, 35:26
**OPPORTUNITIES** [2] - 1:9, 1:12
**opportunity** [7] - 29:21, 31:26, 34:19, 36:13, 37:9, 39:2, 39:5
**OPPORTUNITY** [1] - 1:8
**options** [1] - 16:12
**order** [1] - 13:4

**ordered** [2] - 39:23, 40:3
**original** [1] - 16:3
**originally** [4] - 4:22, 5:5
**otherwise** [6] - 15:25, 19:6, 36:18, 36:20, 36:21, 38:19
**outlined** [1] - 38:22
**outset** [4] - 19:11, 19:13, 20:4
**outside** [1] - 26:24
**overlap** [10] - 10:25, 11:4, 17:12, 17:17, 17:20, 18:22, 18:23, 20:8, 22:4, 30:6
**overlapping** [4] - 14:11, 15:3, 19:22, 34:13
**overlaps** [6] - 15:11, 16:15, 16:16, 16:24, 23:19, 23:20
**owed** [2] - 9:8, 9:21

**P**

**PAGE** [1] - 1:24
**page** [2] - 5:24, 39:13
**paid** [1] - 10:16
**papers** [2] - 27:5, 34:25
**Park** [1] - 2:10
**parol** [10] - 9:18, 9:21, 9:26, 11:12, 11:25, 12:6, 13:7, 13:8, 39:9
**part** [8] - 7:20, 8:25, 16:19, 24:13, 25:20, 32:23, 37:17, 39:22
**PART** [1] - 1:2
**participate** [3] - 18:18, 21:11, 21:18
**participated** [2] - 18:3, 18:5
**participation** [2] - 20:15, 21:15
**particular** [1] - 12:5
**parties** [20] - 8:12, 9:8, 9:11, 9:23, 10:16, 11:23, 12:8, 15:17, 15:22, 15:25, 16:4, 17:25, 20:25, 32:13, 32:14, 32:15, 32:19, 35:18, 36:9, 38:25
**parties'** [3] - 3:25, 4:2, 35:17
**partner** [1] - 30:14
**PARTNERS** [2] - 1:10, 1:11
**Partnerships** [1] -

20:16
**party** [2] - 9:3, 35:22
**pay** [25] - 6:23, 6:25, 7:3, 7:5, 7:12, 7:19, 7:22, 8:13, 8:23, 9:2, 9:4, 9:8, 9:22, 9:24, 10:9, 10:10, 11:15, 11:16, 11:17, 11:19, 11:23, 13:17, 13:19, 20:26
**payment** [1] - 9:20
**payments** [3] - 8:13, 8:23, 8:24
**pendency** [1] - 35:4
**people** [5] - 11:14, 11:18, 28:21, 37:24, 38:5
**perfectly** [1] - 28:9
**performance** [5] - 8:3, 18:5, 18:21, 20:13, 37:3
**perhaps** [1] - 33:24
**permitted** [1] - 19:17
**person** [1] - 3:23
**persuaded** [1] - 35:19
**phase** [24] - 4:16, 5:12, 11:7, 11:8, 15:12, 16:25, 20:6, 21:15, 21:16, 22:17, 23:13, 24:14, 25:14, 26:9, 26:21, 27:11, 28:25, 29:7, 30:11, 31:14, 31:17, 32:8, 33:24, 36:15
**phases** [4] - 18:26, 21:8, 26:7
**Philip** [1] - 17:25
**phrase** [1] - 31:10
**Piccirillo** [1] - 2:24
**PICCIRILLO** [1] - 40:11
**plaintiff** [4] - 37:10, 37:19, 38:20, 39:20
**Plaintiffs** [2] - 1:6, 2:3
**plaintiffs** [6] - 3:8, 12:6, 13:5, 13:15, 19:18, 25:7
**plaintiffs'** [5] - 4:14, 5:10, 5:14, 16:26, 17:25
**plan** [1] - 22:19
**planning** [1] - 27:10
**play** [1] - 23:21
**pleaded** [1] - 7:17
**point** [4] - 10:20, 25:10, 38:26, 39:11
**points** [1] - 28:11
**position** [8] - 4:14, 5:10, 5:15, 5:19, 5:25, 5:26, 13:24,

30:19
**positions** [1] - 4:3
**possibility** [3] - 9:18, 11:25, 31:13
**possible** [4] - 9:7, 28:15, 35:3, 38:4
**possibly** [1] - 11:26, 22:23
**post** [2] - 7:17, 18:6
**potentially** [3] - 12:9, 29:15, 30:3
**power** [2] - 21:13, 26:24
**PowerPoint** [1] - 24:9
**practice** [1] - 11:11
**practicing** [1] - 34:7
**prejudice** [4] - 21:23, 35:5, 35:21, 37:10
**prejudiced** [1] - 25:13
**prejudicial** [1] - 35:7
**prepare** [3] - 34:19, 37:2, 37:9
**present** [2] - 25:7, 38:17
**presentation** [1] - 25:6
**presenting** [1] - 21:24
**preserve** [1] - 32:10
**presumably** [1] - 28:19
**pretend** [1] - 10:7
**pretrial** [1] - 39:15
**pretty** [5] - 8:12, 22:7, 22:14, 32:13, 32:14
**previously** [5] - 4:18, 14:8, 25:22, 33:18, 39:14
**principal** [1] - 36:10
**problem** [2] - 37:15, 37:19
**procedure** [1] - 35:20
**proceed** [3] - 31:2, 31:23, 32:8
**proceeding** [2] - 29:14, 33:9
**proceedings** [1] - 39:21
**process** [3] - 6:26, 17:23, 19:7
**promise** [2] - 7:21, 7:22
**promised** [4] - 6:19, 7:11, 9:24, 10:9
**proper** [1] - 39:8
**properly** [1] - 21:19
**proposal** [2] - 16:21, 16:26
**propose** [1] - 15:4
**proposed** [2] - 25:21, 28:8

**proposing** [1] - 11:6
**prove** [5] - 8:26, 13:6, 29:4, 29:13, 30:17
**providing** [1] - 28:16
**proving** [1] - 17:3
**provisions** [2] - 36:2, 36:4
**pulling** [1] - 31:8
**purpose** [1] - 40:2
**purposes** [3] - 10:7, 14:7, 34:18
**put** [13] - 4:22, 5:5, 11:6, 12:7, 12:19, 15:11, 16:18, 16:22, 27:5, 34:20, 34:25, 36:15, 37:7
**puts** [1] - 16:9
**putting** [1] - 34:11

### Q

**questions** [1] - 3:26
**quick** [1] - 24:5
**quickly** [1] - 35:2
**quit** [1] - 26:14
**quite** [2] - 3:26, 19:21
**quo** [1] - 16:8

### R

**raised** [1] - 6:12
**rate** [1] - 17:6
**rather** [1] - 36:20
**reach** [2] - 5:4, 14:4
**read** [3] - 5:23, 8:9, 35:17
**real** [1] - 33:11
**really** [5] - 10:18, 12:15, 17:2, 23:14, 38:24
**reason** [7] - 19:23, 21:7, 23:17, 24:16, 28:2, 36:10, 38:15
**reasonable** [2] - 32:24, 33:2
**reasons** [2] - 16:13, 31:24
**reassess** [2] - 16:10, 16:20
**receive** [3] - 38:25, 39:16, 39:24
**recent** [1] - 34:24
**recently** [1] - 23:6
**recess** [2] - 35:12, 35:13
**reconfirmed** [1] - 23:6
**reconsider** [1] - 15:22
**record** [5] - 3:3, 9:16, 29:25, 35:15, 35:16
**recording** [2] - 4:17,

4:21
**recovery** [1] - 25:11
**refer** [1] - 11:24
**referring** [1] - 5:23
**refusal** [1] - 21:16
**refuse** [1] - 21:3
**refused** [1] - 8:4
**regarding** [5] - 12:2, 12:3, 20:12, 34:22, 36:2
**regardless** [1] - 19:5
**relate** [2] - 14:10, 21:4
**related** [2] - 7:20, 19:7
**relates** [7] - 5:15, 5:21, 6:4, 6:18, 12:20, 20:20, 25:19
**relating** [1] - 6:26
**relatively** [1] - 37:5
**relevant** [5] - 12:8, 12:10, 18:9, 19:10, 19:15
**remind** [1] - 39:25
**remote** [1] - 25:17
**render** [1] - 6:24
**repeat** [1] - 13:11
**repeatedly** [1] - 17:6
**reply** [1] - 29:19
**reporter** [5] - 8:19, 13:10, 13:12, 17:4, 40:4
**Reporter** [1] - 2:25
**REPORTER** [1] - 40:11
**represent** [3] - 26:5, 26:11, 26:16
**representation** [1] - 27:7
**represented** [3] - 15:20, 27:5, 30:26
**requesting** [1] - 39:20
**require** [1] - 36:7
**requirements** [1] - 8:12
**reserve** [1] - 39:25
**resolution** [1] - 33:25
**resolve** [1] - 32:14
**respect** [7] - 6:19, 10:26, 17:20, 24:18, 25:18, 30:22, 36:6
**respond** [4] - 8:5, 25:15, 34:3, 35:8
**response** [2] - 6:6, 17:8
**restructured** [2] - 20:11, 20:23
**result** [1] - 36:8
**retain** [1] - 36:23
**reversal** [1] - 34:24
**reversed** [1] - 15:21

**review** [1] - 7:2
**reviewed** [1] - 3:25
**reviewing** [1] - 34:11
**rise** [1] - 14:25
**risk** [3] - 11:14, 20:25, 26:13
**risks** [2] - 9:12, 19:7
**risky** [1] - 11:17

### S

**sake** [1] - 11:12
**satisfy** [1] - 14:6
**saw** [1] - 10:22
**scenario** [1] - 23:3
**schedule** [1] - 37:11
**scheduled** [2] - 33:23, 39:14
**scheduling** [1] - 3:20
**scope** [2] - 34:19, 34:22
**score** [1] - 29:17
**second** [20] - 4:20, 15:12, 16:25, 18:18, 20:6, 21:16, 22:18, 23:13, 23:22, 24:14, 26:8, 28:2, 29:6, 30:11, 31:10, 31:14, 31:17, 32:8, 32:18, 36:15
**secured** [1] - 24:4
**SECURITIES** [1] - 1:4
**security** [1] - 8:3
**seeking** [3] - 25:11, 34:17, 34:23
**sense** [1] - 16:13
**sentence** [1] - 13:11
**separate** [3] - 18:12, 18:14, 23:23
**seriously** [2] - 11:10, 21:14
**set** [4] - 14:18, 15:6, 15:11, 31:24
**settle** [1] - 29:10
**seven** [1] - 24:2
**seven-factor** [1] - 24:2
**several** [2] - 17:22, 34:10
**shall** [1] - 17:18
**short** [3] - 12:12, 35:13, 37:5
**show** [7] - 26:18, 26:19, 27:3, 27:14, 27:16, 27:18, 27:19
**shows** [1] - 37:4
**side** [6] - 17:24, 17:26, 18:24, 18:25, 23:19, 39:5
**sides** [1] - 17:22
**signatory** [1] - 11:20

**signed** [5] - 9:3, 9:10, 20:12, 22:9, 40:3
**significant** [1] - 38:15
**simple** [1] - 32:19
**simpler** [1] - 33:21
**situation** [1] - 21:14
**slightest** [1] - 35:6
**slightly** [1] - 14:12
**slow** [1] - 9:15
**slower** [1] - 13:12
**slowly** [2] - 17:3, 32:6
**small** [1] - 24:13
**smart** [1] - 16:18
**Smith** [1] - 3:12
**SMITH** [1] - 2:9
**so-called** [1] - 8:21
**so-ordered** [1] - 40:3
**SOHC** [1] - 8:21
**solely** [1] - 7:17
**solution** [2] - 26:3, 28:8
**solved** [1] - 26:15
**sorry** [2] - 8:20, 34:25
**sort** [1] - 10:20
**south** [1] - 10:8
**speaking** [2] - 3:17, 3:24
**speaks** [1] - 3:23
**SPECIAL** [1] - 1:9
**species** [1] - 12:5
**specific** [2] - 6:11, 33:12
**specifically** [2] - 7:4, 30:12
**spend** [1] - 30:8
**St** [1] - 2:4
**stage** [1] - 20:4
**standard** [6] - 14:14, 14:15, 14:16, 14:17, 14:20
**standards** [3] - 14:10, 15:15, 28:16
**start** [5] - 3:20, 3:24, 4:7, 37:20, 38:6
**starting** [1] - 37:14
**STATE** [1] - 1:2
**statement** [2] - 5:23, 17:8
**status** [1] - 16:8
**still** [3] - 22:22, 28:19, 38:10
**stipulate** [1] - 11:12
**stop** [2] - 29:18, 30:17
**straight** [1] - 23:24
**STRAND** [1] - 1:12
**STRATEGIES** [1] - 1:10
**Street** [1] - 1:15
**stretch** [1] - 11:2

**strip** [1] - 11:19
**stuff** [4] - 11:8, 24:12, 24:14, 27:17
**subject** [2] - 28:17, 29:16
**submission** [3] - 17:10, 31:25, 34:11
**submissions** [2] - 3:25, 35:17
**subpoena** [2] - 21:13, 26:24
**substantial** [7] - 6:25, 10:25, 17:12, 18:22, 18:23, 25:16, 26:2
**substantially** [7] - 15:3, 15:10, 16:14, 16:24, 21:23, 25:12, 30:7
**sudden** [1] - 23:11
**sufficient** [2] - 6:25, 7:12
**sufficiently** [1] - 6:22
**suggesting** [2] - 15:25, 38:18
**suggestion** [1] - 7:9
**suggests** [1] - 21:18
**suit** [1] - 37:10
**Suite** [1] - 2:4
**summary** [2] - 24:8, 35:25
**super** [1] - 33:12
**support** [1] - 29:22
**suppose** [2] - 26:13, 38:5
**supposed** [1] - 12:13
**SUPREME** [1] - 1:2
**surely** [1] - 33:6
**survive** [1] - 13:5
**SUSAN** [1] - 2:6
**Susan** [1] - 3:9

### T

**TELEPHONE** [1] - 1:18
**Telephone** [1] - 1:23
**TERM** [1] - 1:2
**termination** [1] - 18:7
**terms** [2] - 9:21, 30:20
**test** [4] - 23:25, 23:26, 24:2, 24:5
**testifies** [2] - 19:6, 22:17
**testify** [6] - 18:26, 19:17, 19:21, 22:16, 28:19, 28:20
**testimony** [16] - 19:9, 19:15, 19:16, 20:8, 20:20, 23:8, 23:9, 25:19, 25:23, 26:26,

27:23, 28:17, 33:15, 36:3, 36:18, 36:20
**tests** [2] - 14:12, 15:2
**Texas** [2] - 22:2, 22:12
**THE** [46] - 1:2, 3:3, 3:15, 3:22, 4:10, 4:13, 4:25, 5:7, 5:9, 5:14, 5:19, 6:3, 7:16, 8:5, 8:18, 9:15, 11:24, 12:18, 12:23, 12:26, 13:9, 13:20, 14:2, 15:13, 17:2, 17:16, 19:23, 20:7, 21:7, 21:26, 22:3, 24:24, 25:4, 26:4, 29:18, 30:19, 30:25, 31:16, 31:26, 34:2, 35:10, 35:15, 38:2, 38:6, 38:9, 38:14
**themselves** [2] - 24:22, 25:24
**theoretically** [3] - 22:23, 24:16, 28:7
**theory** [4] - 9:14, 10:4, 10:6, 12:12
**therefore** [14] - 5:21, 7:5, 7:9, 17:13, 18:15, 18:19, 19:14, 19:20, 20:3, 25:22, 34:17, 35:2, 36:3, 39:26
**thereto** [1] - 19:8
**third** [1] - 9:3
**three** [5] - 18:3, 18:8, 20:8, 24:19, 25:2
**threshold** [1] - 28:14
**threw** [1] - 34:14
**throughout** [2] - 17:23, 18:5
**thrown** [1] - 10:5
**thrust** [1] - 22:25
**TO** [1] - 40:8
**today** [3] - 35:11, 35:18, 37:4
**today's** [1] - 39:21
**together** [2] - 16:12, 34:20
**total** [3] - 8:14, 10:10
**totally** [2] - 23:23, 28:3
**tough** [1] - 38:5
**town** [1] - 26:14
**tracking** [1] - 8:7
**transaction** [8] - 5:21, 7:6, 7:18, 8:15, 20:12, 20:18, 20:23, 24:3
**transcribe** [1] - 4:26
**transcript** [3] - 39:21, 39:23, 39:26
**TRANSCRIPT** [1] -

40:8
**transfer** [1] - 14:5
**transferred** [1] - 12:17
**TRIAL** [1] - 1:2
**trial** [59] - 4:4, 4:5, 4:6, 4:16, 5:11, 10:26, 15:6, 16:21, 18:17, 18:18, 19:2, 19:17, 19:21, 19:25, 20:4, 20:6, 21:9, 23:13, 23:18, 23:22, 24:15, 25:12, 25:14, 25:22, 26:12, 26:18, 27:18, 27:22, 28:10, 28:12, 29:11, 30:5, 31:10, 31:14, 31:22, 31:23, 32:8, 32:25, 33:3, 33:11, 33:12, 34:17, 34:20, 34:23, 35:6, 35:19, 36:8, 36:15, 36:20, 36:23, 36:24, 36:25, 37:2, 37:7, 37:11, 37:13, 37:17
**trials** [1] - 32:16
**tried** [3] - 4:16, 5:11, 33:17
**triers** [1] - 15:16
**trigger** [1] - 8:24
**trip** [4] - 22:13, 23:12, 27:24, 28:2
**trips** [1] - 24:20
**true** [3] - 10:8, 11:13, 23:18
**TRUE** [1] - 40:8
**try** [11] - 8:6, 12:13, 16:23, 16:25, 21:22, 25:16, 26:22, 27:8, 27:15, 30:20, 32:5
**trying** [3] - 5:4, 10:17, 16:23
**turns** [1] - 36:18
**twenty** [3] - 24:6, 24:10, 34:7
**twenty-nine** [2] - 24:6, 24:10
**twice** [7] - 22:10, 22:11, 28:7, 28:10, 28:20, 29:26, 30:2
**two** [23] - 3:16, 3:23, 8:12, 8:17, 8:20, 9:2, 9:8, 9:11, 9:23, 10:9, 10:16, 10:22, 11:15, 11:17, 11:23, 14:9, 15:2, 15:15, 21:8, 24:20, 33:13, 39:21
**type** [1] - 7:13

**U**

**UBS** [13] - 1:4, 1:5,

4:7, 6:26, 7:8, 18:13, 19:9, 20:8, 24:19, 25:2, 25:10, 26:11, 35:5
**UBS's** [1] - 12:3
**ultimately** [3] - 9:11, 18:9, 33:3
**un-bifurcate** [2] - 23:17, 23:18
**unable** [1] - 6:24
**unambiguous** [1] - 8:12
**unavailable** [2] - 27:2, 37:16
**uncertain** [1] - 31:11
**uncooperative** [1] - 21:24
**under** [4] - 7:9, 8:22, 9:13, 16:25
**undercuts** [1] - 24:4
**understood** [1] - 13:16
**undertake** [1] - 6:24
**undertaken** [1] - 7:23
**undertook** [1] - 7:2
**unfair** [2] - 25:16, 26:2
**unfairly** [2] - 25:13, 35:5
**unit's** [1] - 12:3
**unknown** [1] - 18:17
**unless** [1] - 3:19
**unwind** [2] - 21:5, 25:20
**unwinding** [1] - 20:17
**up** [12] - 5:20, 22:9, 26:18, 26:19, 27:3, 27:14, 27:16, 27:18, 27:19, 31:6, 32:25, 32:26
**upset** [2] - 22:19, 28:2
**usage** [1] - 36:3

**V**

**vacations** [1] - 32:25
**valid** [2] - 10:4, 10:6
**verdict** [1] - 31:15
**versa** [1] - 14:26
**via** [1] - 36:19
**Via** [1] - 1:23
**vice** [1] - 14:26
**victory** [1] - 31:5
**video** [2] - 23:7, 26:26
**videotaped** [3] - 27:22, 36:19, 36:20
**view** [1] - 38:26
**vigorously** [3] - 28:26, 29:2
**violate** [1] - 11:21
**vitiate** [5] - 9:22, 13:8,

13:11, 31:13, 31:17
**vitiates** [1] - 13:14
**voicemail** [5] - 4:17, 4:19, 4:21, 4:23, 5:5

**W**

**wait** [1] - 33:19
**waiving** [1] - 6:11
**wants** [1] - 26:8
**Warren** [1] - 18:24
**wary** [1] - 32:21
**Washington** [1] - 2:4
**WATKINS** [1] - 2:3
**Wednesday** [1] - 38:4
**week** [6] - 29:14, 33:17, 37:23, 37:25, 38:5, 38:7
**weeks** [2] - 10:22, 34:10
**whole** [4] - 7:7, 22:19, 23:18, 34:15
**wholly** [3] - 18:12, 18:14, 30:9
**willing** [7] - 22:21, 22:22, 23:6, 27:8, 29:26, 37:7
**win** [4] - 8:26, 29:3, 31:12
**wins** [1] - 30:11
**wish** [1] - 39:3
**withdrawn** [1] - 13:23
**witness** [8] - 19:22, 20:9, 21:21, 21:24, 23:19, 23:20, 26:26, 33:14
**witnesses** [20] - 17:13, 17:17, 17:19, 17:22, 20:9, 24:12, 24:19, 24:20, 24:21, 25:2, 25:13, 25:15, 25:17, 30:6, 33:14, 36:12, 36:14, 36:17, 36:19, 37:15
**wondered** [1] - 9:11
**works** [1] - 37:25
**world** [1] - 22:14
**worried** [2] - 9:23, 11:14
**worry** [1] - 24:22
**worrying** [1] - 11:18
**worst** [2] - 22:13, 23:3
**wrench** [1] - 34:14
**wrongful** [1] - 7:18

**Y**

**years** [2] - 10:3, 34:6
**YORK** [2] - 1:2, 1:2
**York** [11] - 1:16, 2:10,

22:12, 23:12, 26:11, 27:20, 27:24, 28:2, 30:2

**Z**

**zero** [3] - 31:12, 31:15, 32:7