Jason P. Kathman
State Bar No. 24070036
PRONSKE & KATHMAN, P.C.
2701 Dallas Pkwy, Suite 590
Plano, Texas 75093
(214) 658-6500 – Telephone
(214) 658-6509 – Telecopier
Email: jkathman@pronskepc.com

**COUNSEL FOR PATRICK DAUGHERTY**

Thomas A. Uebler
*Pro Hac Vice*
Joseph L. Christensen
*Pro Hac Vice*
MCCOLLOM D'EMILIO
SMITH UEBLER LLC
Little Falls Centre Two
2751 Centerville Road, Suite 401
Wilmington, Delaware 19808
(302) 468-5960 – Telephone
(302) 691-6834 – Facsimile

**COUNSEL FOR PATRICK DAUGHERTY**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CASE NO. 19-34054-SGJ-11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **Debtor.** | § | |

**PATRICK HAGAMAN DAUGHERTY'S OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT FOR THE FIRST AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.**

Patrick Hagaman Daugherty ("**Daugherty**") a creditor and party-in-interest in the above-captioned bankruptcy case, files this Objection (the "**Objection**") to the Debtor's *Motion for Entry of an Order (A) Approving the Adequacy of the Disclosure Statement; (B) Scheduling a Hearing to Confirm the First Amended Plan of Reorganization; (C) Establishing Deadline for Filing Objections to Confirmation of Plan; (D) Approving Form of Ballots, Voting Deadline and Solicitation of Procedures; and (E) Approving Form and Manner of Notice* (the "**Solicitation Motion**") [Docket No. 1108] and represents as follows:

**Background**

1. On October 16, 2019 (the "**Petition Date**"), Highland Capital Management, L.P. (the "**Debtor**" or "**Highland**"), filed its voluntary petition for bankruptcy under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware.

2. On October 29, 2019, the Official Committee of Unsecured Creditors (the "**Committee**") was appointed by the United States Trustee for in Delaware.

3. On August 12, 2020, the Debtor filed is Plan of Reorganization (the "**Original Plan**") [Docket No. 944] and Disclosure Statement ("**Original DS**")[Docket No. 945], which were heavily redacted.

4. The Debtor subsequently filed on September 21, 2020, its First Amended Plan of Reorganization of Highland Capital Management, L.P. (the "**Plan**") [Docket No. 1079] and Disclosure Statement for the First Amended Plan of Reorganization of Highland Capital Management, L.P. (the "**Disclosure Statement**") [Docket No. 1080].

5. On October 15, 2020, the Debtor filed its Notice of Filing of (I) Liquidation Analysis and (II) Financial Projections as Exhibits to Debtor's Disclosure Statement for the First Amended Plan of Reorganization of Highland Capital, L.P. (the "**Financials**") [Docket No. 1173].

**Argument and Authority**

6. Approval of the Disclosure Statement should be denied because it does not contain adequate information and the Plan is patently unconfirmable. Section 1125 of the Bankruptcy Code requires that "an acceptance or rejection of a plan may not be solicited…unless, at the time of or before such solicitation, there is transmitted to such holder the plan and a written disclosure statement approved, after notice and a hearing, by the court as containing *adequate*

*information*." *See* 11 U.S.C. § 1125(b)(emphasis added). Further, where a plan is on its face non-confirmable as a matter of law, then it is appropriate to deny approval of the disclosure statement. *See e.g. In re U.S. Brass Corp.*, 194 B.R. 420 (Bankr. E.D. Tex. 1996); *In re Quigley Co. Inc.*, 377 B.R. 110, 115-16 (Bankr. S.D.N. Y. 2007); *In re Bjolmes Realty Trust*, 134 B.R. 1000, 1002 (Bankr. D. Mass. 1991).

**A. The Disclosure Statement Lacks Adequate Information.**

7. Section 1125 of the Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1); *see also In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988)("'Adequate information' is defined in 11 U.S.C. § 1125(a) as being 'information of a kind, and in sufficient detail…that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.'"). Courts have discussed a number of factors for evaluating the adequacy of a disclosure statement, which include:

- the events which led to the filing of a bankruptcy petition;
- a description of the available assets and their value;
- the anticipated future of the company;
- the source of information stated in the disclosure statement;
- a disclaimer;

- the present condition of the debtor while in Chapter 11;
- the scheduled claims;
- the estimated return to creditors under a Chapter 7 liquidation;
- the accounting method utilized to produce financial information and the name of the accountants responsible for such information;
- the future management of the debtor;
- the Chapter 11 plan or a summary thereof;
- the estimated administrative expenses, including attorneys' and accountants' fees;
- the collectability of accounts receivable;
- financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;
- information relevant to the risks posed to creditors under the plan;
- the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
- litigation likely to arise in a non-bankruptcy context;
- tax attributes of the debtor; and
- the relationship of the debtor with the affiliates.

*See e.g. In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *In re U.S. Brass Corp.*, 194 B.R. 420, 424 (Bankr. E.D. Tex. 1996). Although the Disclosure Statement contains information regarding some of these factors, material and substantial information regarding many of the factors is missing. Specifically, information related: (i) the description of the available assets and their value, (ii) estimated return under a chapter 7 liquidation, (iii) financial information, data, valuations or projections relevant to the creditors; decision to accept the plan, including, projected estimated recoveries, (iv) the estimated administrative expenses, including attorneys' and accountants' fees, and (v) the actual or projected realizable value from recovery of preference or otherwise voidable, or any information at all regarding chapter 5 causes of action. Consequently, the Disclosure Statement fails to contain adequate information and the Court should deny approval of the Disclosure Statement.

    i. *The Disclosure Statement does not provide adequate information about the Debtor's financials.*

8. Although the Debtor recently filed the Financials, which provide some indication of the value of the Debtor's assets, as a whole, the Disclosure Statement generally contains very little information about the Debtor's assets or the value of those assets. To the extent the Financials do provide some indication of value, they appear to be in conflict with language in the Disclosure Statement. The Disclosure Statement states: "As of June 30, the Debtor's Assets totaled approximately $351.7 Million."[1] The Financials estimate that there is $195.2 Million or $147.3 Million, depending on whether one looks at the "Plan Analysis" or "Liquidation Analysis." Regardless, there is no explanation of why the text of the Disclosure Statement states one number that is approximately 80% higher than the amount in the Financials.

ii. *The Disclosure Statement does not provide adequate information about the estimated administrative expenses, including attorneys' and accountants' fees.*

9. Generally, in order to confirm a plan, administrative expenses must be paid in full on the Effective Date. *See* 11 U.S.C. § 1129(a)(9). By Daugherty's count, the Debtor has employed at least nine (9) separate professionals in this case, and the Committee has employed another three (3). Although certain of these professionals have filed fee applications throughout the case, there is no discussion of those application and in the Disclosure Statement about the amount of fees paid, the amount of fees still outstanding. Although the Financials contain a line-item of the total amount of estimated administrative expenses, the Debtor should be required to give additional information about the amount and type of administrative expenses to be paid at confirmation.

---

[1] Disclosure Statement at 17.

**PATRICK HAGAMAN DAUGHERTY'S OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT FOR THE FIRST AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P. – Page 5**

*iii. The Disclosure Statement does not contain adequate information about the actual or projected realizable value from recovery from chapter 5 causes of action.*

10. Neither the Disclosure Statement nor Financials contains any information (much less *adequate information*) about the actual or projected realizable value from recovery of chapter 5 causes of action. The Debtor's Statement of Financial Affairs[2] represents that there were $23.2 Million in payments made in the ninety (90) day prior to Petition Date, and just a cursory review of those reveals that there were at least $4.3 million paid to presumably insider for "intercompany funding." In addition to those amounts, the Statement of Financial Affairs shows that there was another $36.6 Million paid to insiders within the one year prior to the Petition Date, and another potentially $36 Million in potentially transfers of the Debtor's assets to "Highland Select Equity Fund, L.P." transferred within two years prior to the Petition Date. All together, the Debtor's Statement of Financial Affairs filed in this case show that facially there is at least $95 Millions in potential chapter 5 causes of action, and that is just the transfers the Debtor has disclosed in its statement of financial affairs. To put the amount of potential Chapter 5 claims in perspective, $95 Million is nearly half of what the Debtor estimates the value of its assets in the Financials under the "Plan Analysis," and yet there is no discussion whatsoever of these claims and causes of action in the Financials or the Disclosure Statement itself. The Debtor's Plan specifically contemplates the potential for a separate "Litigation Sub-Trust," but there is no discussion of any litigation claims, their potential risks and potential recoveries anywhere in the Disclosure Statement.

**B. The Plan is Patently Unconfirmable.**

11. The Debtor's Plan of reorganization is patently unconfirmable because it fails to meet several of the requirements of section 1129 of the Bankruptcy Code. Where a plan is not

[2] Docket No. 248.

confirmable on its face, a bankruptcy court may deny approval of the disclosure statement. *See e.g. In re U.S. Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996)("disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible"); *In re Quigley Co., Inc.* 377 B.R. 110, 115-16 (Bankr. S.D.N.Y. 2007)("If the plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied, as solicitation would be futile."); *In re Miller*, 2008 WL 191256, *3 (Bankr. W.D. La. 2008). The Plan is patently unconfirmable for at least three different reasons, including: (1) the Plan impermissibly gerrymanders classes in order to manufacture a consenting class, (2) violates the absolute priority rule, and (3) is an end around attempt at avoiding the consequences of section 1141(d)(3)—no discharge for a liquidating plan.[3]

*i. Impermissible Gerrymandering.*

12. The Plan's "Convenience Claims" and "Unpaid Employee Claims" classes constitute wrongful gerrymandering. As the Fifth Circuit has pronounced: "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (Matter of Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991). Class 5 consists of "Convenience Claims."[4] "Convenience Claims" means "any prepetition unsecured claim against the Debtor other than an Unpaid Employee Claim that is less than or equal to **$2,500,000** or any General Unsecured Claims that is voluntarily reduced to an Allowed amount less than or equal to $2,500,000."[5] A review of the

[3] Daugherty expressly reserves its right to raise any additional objections to confirmation of the Plan at the appropriate time prior to any deadline to object to confirmation of the Plan.
[4] Plan at 19.
[5] Plan at 6 (emphasis added).

**PATRICK HAGAMAN DAUGHERTY'S OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT FOR THE FIRST AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P. – Page 7**

Debtor's schedules and the available claims registry reveals that practically all of the Debtor's general unsecured creditors, save and except a few (ACIS, the Redeemer Committee, UBS, Daugherty, HarbourVest), will be classified as "Convenience Claims" and will receive what the Debtor estimates as 75% of their claims. What is perhaps even more disturbing, is that the overwhelming majority of creditors and claims included in Class 5 (*i.e.*, the Convenience Class) are the law firms and professionals the Debtor has used to perpetuate its excessive litigation tactics. The Debtor's Schedules indicate that the Debtor owed approximately $15 Million to various law firms and professionals on the Petition Date.[6] Shockingly, the "Convenience Claim Pool" (*i.e.,* the cash being made available to pay the Holders of Convenience Claims)[7] is defined as $15 Million.

13. The Unpaid Employee Claims Class is similarly problematic. The "Unpaid Employee Claims" consists of the claims of "Scott Ellington, Thomas Surgent, Frank Waterhouse, Hunter Cravits, Jean Paul Sevilla, and Issac Leventon."[8] These are the senior employees of the Debtor that have been, at a minimum, complicit in Dondero and Okada's schemes. And with regard to Ellington and Leventon, they are the Debtor's in-house lawyers who approved, and in many cases, guided the Debtor's scorched earth litigation tactics. In addition to treating their claims completely different from all others, the Plan also likely proposes to give these individuals complete releases.[9] Putting aside the fact that such releases are likely not allowed under Fifth Circuit law,[10] there is no legitimate basis to separate classify their claims other than to gerrymander a consenting class. Accordingly, the Court should deny the approval of the Disclosure Statement.

---

[6] *See* Exhibit A to Schedule F of the Debtor's Schedules [Docket No. 247].
[7] Plan at 6.
[8] Plan at 14.
[9] *See* Plan at 44 (Releases by the Debtor); 12 (definition of "Released Parties").
[10] *See In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1061 (5th Cir. 2012); *In re Pacific Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009); *In re Bigler LP*, 442 B.R. 537, 546 (Bankr. S.D. Tex. 2010); *In re Pilgrim's Pride Corp.*, Case No. 08-45664-DML-11, 2010 WL 2000000, at *5 (Bankr. N.D. Tex. 2010)

    *ii. Absolute Priority Rule.*

14. Section 1129(b)(2)(B)(ii) provides in pertinent part that with respect to a class of unsecured claims:

> the holder of any claim of interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property,

11 U.S.C. § 1129(b)(2)(B)(ii); *Bank of Am Nat'l. Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship.*, 526 U.S. 434, 444-48 (1999); *Bank of New York Trust Co., NA v. Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 245 (5th Cir. 2009). On one page, the Plan provides with regard to Class B/C and Class A partnership interests holders will:

> On or soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class [9 or 10] Claim, in full satisfaction, settlement, discharge and release of, ***and in exchange for***, such Claim shall receive (i) Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.[11]

One page later though, the Plan expressly provides: "On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships [*sic*] in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust."[12]

15. The Plan treatment for Class 9 and Class 10, on its face, violates the absolutely priority rule. The plain language of the treatment states that Holders of partnership interests (which are junior to the Class 7 general unsecured creditors) are receiving "***in exchange for***" their limited

[11] Plan at 21-22 (emphasis added).
[12] *See* Plan at 23 (Summary).

partnership interests, the Contingent Claim Trust Interests. While those "Contingent Claimant Trust Interests" may never vest, the mere receipt of the contingent interest themselves when the Plan does not provide for a full recovery to Class 7 creditors violates the absolutely priority rule. The Financials show that the Debtor estimates recovery to general unsecured creditors at 92.51%, less than 100%. Further, the Debtor's CEO, James Seery, testified that with regard to the "cotingent interests" going to limited partners: "without being specific or bankruptcy specific, on account of, they're not getting it for a charitable purpose. As such, the Plan is facially unconfirmable and the Court should deny approval of the Disclosure Statement.

*iii. No Discharge For a Liquidating Plan.*

16. The Debtor's Plan is plainly a liquidating plan and the Bankruptcy Code prohibits a discharge when a "plan provides for the liquidation of all or substantially all of the property of the estate." *See* 11 U.S.C.§ 1141(d)(3). The Plan provides that on or before the "Effective Date" the Debtor shall irrevocably transfer the "Claimant Trust Assets" to the "Claimant Trust." The "Claimant Trust" are in turn defined as: "(i) all assets of the Estate other than the Reorganized Debtor Assets, including, but not limited to, the Causes of Action, Available Cash, any proceeds realized or received from such assets, (ii) any Assets received from the Reorganized Debtor on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC."[13] The "Reorganized Debtor Assets" are defined as "any limited and general partnership interests held by the Debtor, and any other Assets, including Causes of Action (including, without limitation, claims for breach of fiduciary duty), that have not been, or cannot be, for any reason, transferred to the Claimant Trust."[14] In other words, all of the

[13] Plan at 5.
[14] Plan at 12-13.

**PATRICK HAGAMAN DAUGHERTY'S OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT FOR THE FIRST AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P. – Page 10**

Debtor's assets are being transferred to the "Claimant Trust" to be administered and wound down for payment to creditors—or put more succinctly, a liquidating plan. Article IX (Exculpations, Injunction and Related Provisions) then provides *inter alia*: "[e]xcept as otherwise expressly provided by this Plan of the Confirmation Order, upon the Effective Date, the Debtor and its estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions under the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever…"[15] In order to confirm a plan, the plan must comply "with the applicable provisions of this title." *See* 11 U.S.C. § 1129(a)(1); *In re Schwarzmann*, 203 B.R. 919 (Bankr. E.D. Va. 1995). The Plan's inclusion of a discharge when the Plan is a liquidating plan is impermissible and thus the Plan is patently unconfirmable. As such, the Court should decline approval of the Disclosure Statement.

WHEREFORE, Daugherty respectfully requests that the Court enter an order (i) denying the approval of the Disclosure Statement, and (ii) granting Daugherty such other and further relief, legal or equitable, special or general, to which Daugherty may show itself justly entitled.

---

[15] Plan at 44.

Dated: October 19, 2020.

Respectfully submitted,

*/s/ Jason P. Kathman*
Jason P. Kathman
State Bar No. 24070036
PRONSKE & KATHMAN, P.C.
2701 Dallas Pkwy, Suite 590
Plano, Texas 75056
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: jkathman@pronskepc.com

- And –

Thomas A. Uebler
*Pro Hac Vice*
Joseph L. Christensen
*Pro Hac Vice*
MCCOLLUM D'EMILIO
SMITH UEBLER LLC
Little Falls Centre Two
2751 Centerville Road, Suite 401
Wilmington, Delaware 19808
(302) 468-5960 – Telephone
(302) 6691-6834 – Facsimile
Email: tuebler@mdsulaw.com
Email: jchristensen@mdsulaw.com

**COUNSEL FOR DEFENDANT,
PATRICK HAGAMAN DAUGHERTY**