**CROWE & DUNLEVY, P.C.**
Vickie L. Driver
State Bar No. 24026886
2525 McKinnon Street, Suite 425
Dallas, TX 75201
214-420-2142
vickie.driver@crowedunlevy.com

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (*pro hac vice*)
Erica S. Weisgerber (*pro hac vice*)
Daniel E. Stroik (*pro hac vice*)
919 Third Avenue
New York, NY 10022
212-909-6000
nlabovitz@debevoise.com
eweisgerber@debevoise.com
destroik@debevoise.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | : | Case No. 19-34054 |
| Debtor. | : | |

**HARBOURVEST OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT; (B) SCHEDULING A HEARING TO CONFIRM THE FIRST AMENDED PLAN OF REORGANIZATION; (C) ESTABLISHING DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF PLAN; (D) APPROVING FORM OF BALLOTS, VOTING DEADLINE AND SOLICITATION PROCEDURES; AND (E) APPROVING FORM AND MANNER OF NOTICE**

HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P.,[1] HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., on behalf of funds and accounts under management (collectively, "**HarbourVest**") hereby files this objection (the "**Objection**") to the *Debtor's Motion for Entry of an Order (A) Approving the Adequacy of the Disclosure Statement, (B) Scheduling a Hearing to Confirm the First Amended Plan of Reorganization; (C) Establishing Deadline for Filing Objections to Confirmation of Plan; (D) Approving Form of Ballots, Voting Deadline and Solicitation Procedures; and (E) Approving Form and Manner of Notice* [Docket No. 1108] (the "**Solicitation Motion**") by Highland Capital Management, L.P. (the "**Debtor**" or "**Highland**"). In support of the Objection, HarbourVest respectfully represents the following:

## I.  RELEVANT BACKGROUND

1. On September 21, 2020, the Debtor filed the *First Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1079] (the "**Plan**") and related *Disclosure Statement for the First Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1080] (the "**Disclosure Statement**").

2. HarbourVest owns an approximately 49% interest in Highland CLO Funding, f/k/a Acis Loan Funding, Ltd. ("**HCLOF**"). Highland HCF Advisor, Ltd., a subsidiary of the Debtor, is the current portfolio manager of HCLOF. As described in its proofs of claim, listed in the Debtor's claim register as claims number 143, 147, 149, 150, 153, and 154 (the "**Proofs of**

---

[1]  HV International Secondary L.P.'s claim (#153) was not included in the Claims Objection (as defined herein); however, the Debtor has represented to HarbourVest that is was inadvertently omitted, and that they object to it on the same grounds as other HarbourVest Claims.

**Claim**") and further detailed in the *HarbourVest Response to Debtor's First Omnibus Objection to Certain (A) Duplicate Claims; (B) Overstated Claims; (C) Late-Filed Claims; (D) Satisfied Claims; (E) No-Liability Claims; and (F) Insufficient-Documentation Claims* [Docket No. 1057] (the "**Response**"), HarbourVest has significant claims against the Debtor (the "**HarbourVest Claims**") which are described, albeit with the inadequacies detailed below, in the Disclosure Statement. Disclosure Statement, art. II.S.

## II. ARGUMENT & AUTHORITIES

**A. Legal Standards**

3. "Disclosure is the 'pivotal' concept in chapter 11 reorganization." *Westland Oil Dev. Corp. v. MCorp Mgmt Sols., Inc.*, 157 B.R. 100, 102 (Bankr. S.D. Tex. 1993). A disclosure statement must contain information adequate to allow "a hypothetical investor typical of the holders of the claims or interests in the case . . . to make an informed judgment about the plan." 11 U.S.C. § 1125(a). *See In re Metrocraft Publ'g Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (listing 19 non-exclusive factors for evaluating the adequacy of a disclosure statement). "The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan." *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987), *aff'd* 80 B.R. 448 (1987).

**B. Key Plan Components Are Hidden in the Unfiled Claimant Trust Agreement.**

4. The Highland Disclosure Statement does not disclose all "material information" needed to "make an intelligent decision whether to vote for or against the plan." *Id*. Essential details regarding the treatment of general unsecured claims, like HarbourVest's, are not available

3

within the Disclosure Statement itself and will allegedly be implemented "as set forth in the Claimant Trust Agreement," which has not been made available. Disclosure Statement, art. I.A.

5. A key example of this deficiency is the fact that the funding, allocation and management of the Disputed Claims Reserve is left entirely to the Claimant Trust Agreement. This is especially troubling given that the Debtor has adjourned a hearing on the HarbourVest Claims—which amount to hundreds of millions of dollars in potential liability—and may well seek to delay a hearing on the merits of the HarbourVest Claims until after the confirmation hearing, based on their proposed confirmation schedule.[2] Accordingly, the exact mechanism of the disputed claims reserve is of key importance not just to HarbourVest, but to every other creditor who will be unable to receive distributions from the Claimant Trust (as defined in the Plan) until disputed claims, like HarbourVest's, are equitably accounted for. The general unsecured creditors who are to receive an interest in the Claimant Trust under the proposed Plan, in particular, need to understand the mechanism for this accounting and what it means for the amount and timing of their recovery before they can cast an informed vote. Not only does the Disclosure Statement lack material details regarding disputed claims resolution and the associated reserve in the Article II summary of the Plan, the Plan risk factors set forth in Article IV contain no mention of how disputed claims, and the need to fund a disputed claims reserve, could materially impact the timing, and materially reduce the magnitude, of creditor recoveries under the Plan.

6. The disputed claims reserve is just one example among many where essential Plan functionality is simply missing from the Disclosure Statement. Other critical absences include

---

[2] HarbourVest is hardly alone in having significant disputed claims. For example, the Debtor is engaged in active litigation with UBS Securities LLC and UBS AG, London Branch (together, "**UBS**") over the claim they allege in excess of $1 billion, which may well not be resolved before confirmation or the effective date.

details regarding: (i) the final composition, powers, rights and responsibilities of the Claimant Trust, Claimant Trustee, and Claimant Trust Oversight Committee; and (ii) the amount of compensation offered to members of the Claimant Trust Oversight Committee, the Trustee, or employees hired by the Claimant Trust. Instead of including information on these fundamental Plan elements, the Debtor instead promises that they will be described on some future date, when the Debtor finally files its Plan Supplement, potentially as late as "one week prior to the Confirmation Hearing." Disclosure Statement, art. I.C.7. One week before the proposed December 3, 2020 confirmation hearing is November 26, 2020, **which is after the proposed November 20, 2020 voting deadline**. Creditors cannot be expected to cast their ballots on the Plan before its key terms are fully described. The Solicitation Motion instead suggests a deadline of November 13, 2020 for the Plan Supplement—just a week prior to the voting deadline. Solicitation Motion, at 1. Even if November 13, 2020 is in fact the deadline the Debtor intends, filing key Plan details on the eve of voting and outside of the Disclosure Statement process is not sufficient. The absence of these details in the Disclosure Statement leaves significant open questions on the Plan's fundamental economics, governance, and creditor oversight, and means that HarbourVest and other creditors will be unable to make an informed judgment on the plan.

C.     **The Disclosure Statement Inaccurately Characterizes the HarbourVest Claims.**

7.     The Disclosure Statement provides a description of the HarbourVest Claims, and the status of the Debtor's cursory objection thereto, which seems calculated to minimize and undersell the seriousness and magnitude of the claims. The Disclosure Statement does not describe any of the serious allegations which form the basis of the HarbourVest Claims (including credible allegations of fraud, securities law violations, Racketeer Influenced and

5

Corrupt Organizations Act ("**RICO**") violations, and breaches of fiduciary duties, among other things), which could result in allowed claims in excess of $300 million, after taking into account the treble damages provided for under RICO. The Disclosure Statement description also implies that these credible and substantive allegations may be disposed of on the basis of the perfunctory *Debtor's First Omnibus Objection to Certain (A) Duplicate Claims; (B) Overstated Claims; (C) Late-Filed Claims; (D) Satisfied Claims; (E) No-Liability Claims; and (F) Insufficient-Documentation Claims* [Docket No. 906], when nothing could be further from the truth, as evidenced by the adjournment of any hearing on the Debtor's objection to the HarbourVest Claims. Creditors voting on the plan should be fully apprised of the existence of a $300 million plus claim which will, in HarbourVest's view, ultimately be allowed in full but will at the very least result in significant litigation and the necessity for a large reserve before any distributions are made. HarbourVest has circulated proposed supplemental disclosure to the Debtor regarding the HarbourVest Claims, but reserves its right to press this portion of its Objection to the extent such disclosure, or other satisfactory language, is not incorporated into the Disclosure Statement.

[*Signatures on Next Page*]

Dated: Dallas, Texas

October 19, 2020

Respectfully submitted,

 */s/ Vickie L. Driver*

Vickie Driver (No. 24026886)
Crowe & Dunlevy, P.C.

**CROWE & DUNLEVY, P.C.**
Vickie L. Driver
2525 McKinnon Street, Suite 425
Dallas, TX 75201
214-420-2142
vickie.driver@crowedunlevy.com

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (*pro hac vice*)
Erica S. Weisgerber (*pro hac vice*)
Daniel E. Stroik (*pro hac vice*)
919 Third Avenue
New York, NY 10022
212-909-6000
nlabovitz@debevoise.com
eweisgerber@debevoise.com
destroik@debevoise.com

*Attorneys for HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., on behalf of funds and accounts under management*