PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | **Re: Docket Nos. 1089, 1190** |
| | ) | |

## DEBTOR'S REPLY IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENTS WITH (A) THE REDEEMER COMMITTEE OF THE HIGHLAND CRUSADER FUND (CLAIM NO. 72), AND (B) THE HIGHLAND CRUSADER FUNDS (CLAIM NO. 81), AND AUTHORIZING ACTIONS CONSISTENT THEREWITH

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby submits this reply (the "Reply") in support of its *Motion for Entry of an Order Approving Settlement with (A) the Redeemer Committee of the Highland Crusader Funds (Claim No. 72), and (B) the Highland Crusader Funds (Claim No. 81), and Authorizing Actions Consistent Therewith* [Docket No. 1089] (the "Motion").[2]  In further support of the Motion, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1.     The Motion fully and finally resolves the Debtor's extensive prepetition disputes with both the Redeemer Committee and the Crusader Funds.  The facts underlying these disputes are well-known to this Court and resulted in the Redeemer Committee securing a prepetition Arbitration Award against the Debtor in the amount of $190,824,557.  That Award, and the Delaware Chancery Court's imminent entry of judgement confirming the Arbitration Award, were the primary drivers for the Debtor's bankruptcy filing in October 2019.

2.     Through the Motion, the Debtor seeks to resolve the Redeemer Committee's and the Crusader Funds' claims by, among other things:

- Settling the Redeemer Committee's $190 million general unsecured, non-priority claim for $136,696,610;

- Settling the Highland Crusader Funds' $23,483,446 general unsecured, non-priority claim for $50,000;

- Cancelling certain interests in the Crusader Funds that the arbitration Panel determined were wrongfully acquired;

- Providing for the parties' cooperation in the marketing and monetization of Cornerstone and/or Cornerstone's assets pursuant to an agreed-upon schedule;

---

[2] All capitalized terms used but not defined herein have the meanings given to them in the Motion.

- Waiving the Debtor's right to certain deferred fees in consideration for a reduction in the Redeemer Committee's allowed claim; and

- Providing for the exchange of general releases, as set forth in the Settlement Agreement.

The Motion thus fully and finally resolves one of the Debtor's largest claims filed by the Debtor's most significant creditor.

3.      UBS Securities LLC and UBS AG, London Branch (collectively, "UBS") lodged the only objection to the Motion (the "Objection").[3]  The UBS Objection raises four primary objections to the Motion:

- The Debtor's waiver of a portion of the Deferred Fees is inappropriate as the Debtor would be entitled to 100% of such fees if it simply waited until the Crusader Funds were wound down;

- The Debtor has no basis to settle with either the Redeemer Committee or the Crusader Funds because the Arbitration Award is unenforceable and should be challenged by the Debtor in the Delaware Chancery Court;

- The Debtor significantly undervalues the Cornerstone Shares held by the Crusader Funds; and

- The Motion is not in the best interests of the Debtor's creditors because it is not in the best interests of UBS.

For the reasons set forth below, and as the evidence will demonstrate at trial, UBS's objections are without merit and should be overruled, and the Court should grant the Motion in all respects.

## **REPLY**

### I.    **The Deferred Fees**

4.      As this Court knows, the Debtor previously managed the Crusader Funds and,

---

[3] *See Objection to the Debtor's Motion for Entry of an Order Approving Settlements with (A) the Redeemer Committee of the Highland Crusader Fund (Claim No. 72), and (B) the Highland Crusader Funds (Claim No. 81)* [Docket No. 1190].

subject to the scheme instituted in Bermuda, was potentially entitled to receive certain deferred fees from the Crusader Funds upon completion of their liquidation. However, instead of waiting, the Debtor prematurely paid itself and impermissibly took $32,313,000 from the Crusader Funds. Under the Arbitration Award, the Debtor was required to pay back such fees plus interest. Although required to return the fees, the Debtor contended that it would ultimately still be entitled to such fees upon the Crusader Funds' liquidation. *See* Motion ¶¶ 24-27. That issue was not resolved in the Arbitration Award.

5.      In its Objection, UBS challenges the Debtor's compromise of the Deferred Fee whereby it has accepted a reduction in the Arbitration Award of $21,592,000 rather than holding out for the Debtor retaining the full Deferred Fees of $32,313,000 that it took in 2016. According to UBS, the proposed compromise is improper because the Debtor is indisputably entitled to receive 100% of the Deferred Fees upon the completion of the Crusader Funds' liquidation; consequently, the proposed treatment of the Deferred Fees is unjustified. UBS's argument, however, misses the mark.

6.      Even if the Debtor were indisputably entitled to recover the Deferred Fees upon the completion of the Crusader Funds' liquidation (which is heavily contested), under the Arbitration Award, the Debtor would (a) be required to re-pay the Redeemer Committee the approximately $32 million found to have been improperly taken by the Debtor, plus interest,[4] and (b) wait for some future date when it would assert a claim to be paid the Deferred Fees.

---

[4] If the Motion is denied, a new round of litigation will likely ensue over the issue of setoffs: If general unsecured creditors receive less than the value of their allowed claims, can the Debtor "repay" the Deferred Fees found to have been improperly taken with "bankruptcy dollars", or will the Debtor be required to "repay" the Deferred Fees in "hundred cent" dollars? The proposed settlement eliminates the cost and risk of this litigation as well.

4

7.      But the timing of the Crusader Funds' complete liquidation is not in the Debtor's control,[5] and neither the Debtor nor UBS can predict when it will occur.  Indeed, to the extent the Crusader Funds hold an allowed claim, the Crusader Funds' liquidation cannot be completed—and therefore the Debtor cannot assert a claim to the Deferred Fee—until they receive all of their distributions on account of that claim, a process that is likely to take many years.[6]

8.      More important than the issues of delay and setoff litigation that UBS ignores, UBS's contention that the Debtor would face no litigation risk in trying to recover the Deferred Fees is simply wrong.  *See* Motion ¶ 26.  The Redeemer Committee and the Crusader Funds have vigorously asserted that they will rely on the "faithless servant" defense to contest any future claim for payment of the full Deferred Fees.   In response, the Debtor took advice from counsel, considered the Panel's highly critical findings and statements concerning the Debtor's conduct, and concluded, in the exercise of its business judgment, that the Debtor would face meaningful costs and risks if it attempted to recover the full Deferred Fees at some future point.

9.      The Debtor's settlement with respect to the Deferred Fees is thus justified:  In exchange for the benefit of receiving immediate credit for two-thirds of the value of the Deferred Fees that the Debtor took in 2016, the Debtor will avoid (a) litigation over setoff issues; (b) a lengthy delay before it can even assert the right to recover the full Deferred Fees; (c) the cost of

---

[5] The only Crusader Fund asset potentially in the Debtor's control is Cornerstone.  Cornerstone, however, is illiquid, and there can be no guarantee of when (or if) it will be sold.

[6] The UCC (and/or the trust contemplated under the Debtor's proposed plan of reorganization) is expected to prosecute Estate Claims, including claims that may be asserted against James Dondero and certain entities owned or controlled by him.  As UBS should know from its own nearly decade-long experience, and as the Court should consider, litigation with Mr. Dondero is not often quickly resolved.  But until these claims are resolved, the Crusader Funds' liquidation cannot be completed because they will continue to have an interest in the Estate Claims and any distributions made on account of such claims.

litigating the Redeemer Committee's and the Crusader Funds' "faithless servant" defense;[7] and

(d) the risk that the defense may be successful, leaving the Debtor with nothing on account of the

Deferred Fees.

## II. Challenging the Arbitration Award

10. UBS argues that the Debtor should challenge the Arbitration Award and resurrect

its prepetition motion to vacate that was based on certain alleged procedural irregularities. In

essence, UBS wants the Debtor to rewind the clock to October 2019, return to the Delaware

Chancery Court, and continue its litigation with the Redeemer Committee rather than settling it.

Indeed, UBS encourages the Debtor to rely on the arguments tendered by the Debtor's pre-

petition management team.[8] This argument is tone-deaf. This Court has consistently

encouraged the Debtor to stop the litigation and change its litigious culture. UBS is encouraging

the opposite and asking the Debtor to return to state court to prosecute litigation that was

definitively resolved by three highly-qualified arbitrators.

11. From the Debtor's perspective, the settlement represents a far better alternative,

one that is clearly in the paramount interest of creditors.

12. First, for the reasons set forth in the Motion (*see* Motion ¶¶ 43, 48-58), the Debtor

has concluded that it is unlikely to succeed in the motion to partially vacate the Arbitration

Award. It is axiomatic that courts are reluctant to overturn arbitration awards because public

---

[7] The cost of litigating the "faithless servant" defense is likely to be considerable because it will require a fact-intensive inquiry into the Debtor's conduct. In addition, if the litigation takes place five or ten years from now, the Debtor may not be well-positioned because certain witnesses may no longer be available; some may refuse to cooperate; and those that choose to cooperate may have faded memories.

[8] UBS asserts that adjudicating the motion to vacate in Delaware Chancery Court will be quick, but its only justification for that statement is that the Debtor has already fully briefed the motion and it is currently pending. That, however, is no guarantee, and it does not account for COVID-related delays, the availability of the Court, any appeals of the motion, or the time spent having to re-litigate matters that have already been decided.

policy favors the pursuit of agreed-upon alternative dispute mechanisms. The Debtor believes that this institutional reluctance would be heightened here because (a) the arbitration took place over an extended period, with substantial discovery and motion practice; (b) the Arbitration Award was rendered by a "blue ribbon" Panel; (c) the evidentiary hearing spanned nine (9) days; (d) eleven fact witnesses and four (4) expert witnesses testified; (e) the Arbitration Award addressed every claim and argument asserted by the parties, and the Panel resolved each with detailed legal and factual findings and credibility determinations; and (f) many of those findings and credibility determinations were highly critical of the Debtor and its witnesses, making the Debtor a particularly unsympathetic litigant under the circumstances. *See* Motion ¶ 43.

13. In that poorly-positioned state, the Debtor believes the Chancery Court is very likely to adopt the Panel's detailed and well-reasoned decision on the very issues that UBS urges the Debtor to renew. *See* Motion ¶¶ 49-51, 53, 57. Based on the foregoing, including the Panel's consideration of the issues, the Debtor has concluded that it is unlikely to succeed in the motion to partially vacate the Arbitration Award.

14. In addition to second-guessing the Panel and the Debtor on the merits, UBS ignores the fact that the Debtor would lose the benefit of its current bargain with the Redeemer Committee and the Crusader Funds if its high-risk strategy is pursued. For example, in the pursuit of UBS's risk-adjusted benefit of $18.5 million (UBS Objection ¶ 40), the Debtor will certainly lose the compromise concerning the $21.6 million credit it will receive on account of the Deferred Fee, and it will be left to spend money litigating setoff issues and the "faithless servant" defense at some future time with all of the risk that entails. The Debtor does not believe that is in the paramount interest of creditors.

7

15. In sum, the Debtor does not believe it has a meaningful chance of succeeding in the Chancery Court, and the Debtor has concluded in the sound exercise of its business judgment that the proposed settlement constitutes a far superior alternative, the benefits of which would be lost if it continued to pursue what is likely to be fruitless litigation.

## III. The Value of the Cornerstone Shares

16. UBS argues that the Debtor is giving up its interest in the Cornerstone Shares too cheap and, by doing so, providing the Redeemer Committee with a windfall. To make this argument, UBS challenges Houlihan Lokey's valuation of the Cornerstone Shares and seeks to impose the views of its own expert.[9]

17. A few things about Houlihan Lokey and the work that it does for the Debtor should be noted:

- The group at Houlihan Lokey that provides valuations to the Debtor, including the valuation of Cornerstone, is Houlihan Lokey's portfolio valuation and fund advisory services. This group specializes in valuing hard-to-value, Level 3 assets for asset managers and is routinely recognized as the premier provider of such services;

- In many cases, the valuations performed by Houlihan Lokey form the basis for the "net asset value" or "NAV" used by asset managers, including the Debtor, to value the funds managed by those asset managers. That NAV is then used to pay out redeeming interest holders and to calculate the management fees payable to the manager;

- Asset managers routinely rely on Houlihan Lokey to provide the valuations that they disclose to investors and to their auditors; and

- Throughout the Debtor's bankruptcy, Houlihan Lokey's valuations have been used, in certain instances, to support the values included in the Debtor's monthly operating reports and similar financial disclosures, including those provided to the Committee in this case. They have never before been challenged.

---

[9] The Debtor reserves the right to challenge the admission into evidence of any opinions offered by W. Kevin Moentmann, including under *Daubert* and its progeny, Federal Rule of Evidence 702, or otherwise. The Debtor is scheduled to depose Mr. Moentmann on Monday afternoon, October 19, 2020, and further reserves the right to supplement the arguments set forth herein based on the testimony adduced during the deposition.

8

UBS, however, is now attacking Houlihan Lokey's valuation of Cornerstone and seeking to impose its own view. Although UBS may have a different opinion as to the value of the Cornerstone Shares, it cannot argue that the Debtor's reliance on Houlihan Lokey's valuation was unreasonable or an abuse of the Debtor's business judgment.

## IV. Best Interests of Creditors

18. Finally, UBS argues that the settlements with the Redeemer Committee and the Crusader Funds are not in the best interests of *all* of the Debtor's creditors. UBS makes this argument despite the fact that UBS is the *only* creditor or party-in-interest that has objected to the Motion. Based on the UBS Objection, it seems UBS believes that its interests should supplant the interest of all other creditors and parties-in-interest because UBS is "a significant unsecured creditor affected by the Proposed Settlement. . . ." (UBS Obj ¶ 47). Admittedly, UBS has filed a $1 billion-plus proof of claim against the Debtor's estate. That does not, however, make UBS a "significant creditor."

19. Both the Debtor and the Redeemer Committee believe that UBS's claim is, at best, far small than UBS asserts. Both the Debtor and the Redeemer Committee have provided support for their positions in their recently filed motions for summary judgment.[10] UBS should not be able to use its disputed, contingent, and unliquidated proof of claim to upset the Debtor's settlement with one of its <u>actual</u> "significant creditors" or create leverage in the fight over the

---

[10] *See Debtor's Motion for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 of UBS Securities LLC and UBS AG, London Branch* [Docket No. 1180]; *Debtor's Opening Brief in Support of Motion for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 of UBS Securities LLC and UBS AG, London Branch* [Docket No. 1181]; *Redeemer Committee of the Highland Crusader Fund and the Crusaders Funds' Motion for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 of UBS AG, London Branch and UBS Securities LLC* [Docket No. 1183]; and *Redeemer Committee of the Highland Crusader Fund and the Crusaders Funds' Brief in Support of Motion for Partial Summary Judgment and Joinder in the Debtor's Motion for Partial Summary Judgment on Proof of Claim No. 190 and 191 of UBS AG, London Branch and UBS Securities LLC* [Docket No. 1186].

allowance of its claim. The paramount interest of the Debtor's actual creditors should take precedence over the parochial interest of one disputed creditor.

20. However, even if UBS is found to have a claim against the Debtor, that claim would be a general unsecured claim and similarly situated with all other general unsecured claims in this case, including claims arising from prepetition litigation with the Debtor. UBS's preferences should not supersede those of all of the other similarly situated creditors that are not opposing the Motion.

*[Remainder of Page Intentionally Blank]*

WHEREFORE, for the reasons set forth above and in the Motion, the Debtor respectfully requests that the Court grant the Motion.

Dated: October 19, 2020.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)
John A. Morris (NY Bar No. 266326) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:     jpomerantz@pszjlaw.com
               ikharasch@pszjlaw.com
               jmorris@pszjlaw.com
               gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

DOCS_NY:41334.4 36027/002