<div style="text-align:right;border:1px solid black;">
**EXHIBIT**
**SE2**
</div>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## FIRST AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
          ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME,
GOVERNING LAW AND DEFINED TERMS ............................................. 1

    A.    Rules of Interpretation, Computation of Time and Governing Law .................... 1

    B.    Defined Terms ....................................................................................................... 2

ARTICLE II. ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS ................ 15

    A.    Administrative Expense Claims ........................................................................... 15

    B.    Professional Fee Claims ...................................................................................... 15

    C.    Priority Tax Claims ............................................................................................. 16

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
AND EQUITY INTERESTS ...................................................................... 16

    A.    Summary ............................................................................................................. 16

    B.    Summary of Classification and Treatment of Classified Claims and
Equity Interests .................................................................................................. 17

    C.    Elimination of Vacant Classes ........................................................................... 17

    D.    Impaired/Voting Classes .................................................................................... 17

    E.    Unimpaired/Non-Voting Classes ....................................................................... 17

    F.    Impaired/Non-Voting Classes ............................................................................ 17

    G.    Cramdown ........................................................................................................... 17

    H.    Classification and Treatment of Claims and Equity Interests ............................ 18

    I.    Special Provision Governing Unimpaired Claims .............................................. 22

    J.    Subordinated Claims ........................................................................................... 22

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ................................... 23

    A.    Summary ............................................................................................................. 23

    B.    The Claimant Trust ............................................................................................. 23

    *1.*    *Creation and Governance of the Claimant Trust and Litigation Sub-
Trust.* .................................................................................................................. 23

    *2.*    *Claimant Trust Oversight Committee* ............................................................... 24

3.     Purpose of the Claimant Trust. ...........................................................25

4.     Claimant Trustee and Claimant Trust Agreement. ............................25

5.     Compensation and Duties of Trustees. ...............................................26

6.     Cooperation of Debtor and Reorganized Debtor. ..............................27

7.     United States Federal Income Tax Treatment of the Claimant Trust. ................27

8.     Tax Reporting. ......................................................................................27

9.     Claimant Trust Assets. ........................................................................28

10.    Claimant Trust Expenses. ....................................................................28

11.    Trust Distributions to Claimant Trust Beneficiaries. ........................28

12.    Cash Investments. ................................................................................28

13.    Dissolution of the Claimant Trust. ......................................................29

C.     The Reorganized Debtor .......................................................................29

1.     Corporate Existence .............................................................................29

2.     Cancellation of Equity Interests and Release .....................................29

3.     Issuance of New Partnership Interests ................................................29

4.     Management of the Reorganized Debtor ..............................................30

5.     Vesting of Assets in the Reorganized Debtor .......................................30

6.     Distribution of Proceeds from the Reorganized Debtor Assets; Transfer
       of Reorganized Debtor Assets ..............................................................31

D.     Company Action ....................................................................................31

E.     Release of Liens, Claims and Equity Interests ....................................32

F.     Cancellation of Notes, Certificates and Instruments ..........................32

G.     Cancellation of Existing Instruments Governing Security Interests ..................32

H.     Control Provisions ................................................................................33

I.     Treatment of Vacant Classes ...............................................................33

**Page**

    J.      Plan Documents ...................................................................................... 33

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
           LEASES ............................................................................................. 33

    A.     Assumption, Assignment, or Rejection of Executory Contracts and
          Unexpired Leases ................................................................................ 33

    B.     Claims Based on Rejection of Executory Contracts or Unexpired
          Leases ................................................................................................. 34

    C.     Cure of Defaults for Assumed or Assigned Executory Contracts and
          Unexpired Leases ................................................................................ 34

    D.     Assumption of Insurance Policies ...................................................... 35

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 35

    A.     Dates of Distributions ......................................................................... 35

    B.     Distribution Agent .............................................................................. 36

    C.     Cash Distributions .............................................................................. 37

    D.     Disputed Claims Reserve .................................................................... 37

    E.     Rounding of Payments ........................................................................ 37

    F.     *De Minimis* Distribution .................................................................... 37

    G.     Distributions on Account of Allowed Claims ..................................... 37

    H.     General Distribution Procedures ......................................................... 38

    I.      Address for Delivery of Distributions ................................................. 38

    J.      Undeliverable Distributions and Unclaimed Property ........................ 38

    K.     Withholding Taxes .............................................................................. 38

    L.     Setoffs ................................................................................................. 39

    M.    Surrender of Cancelled Instruments or Securities .............................. 39

    N.     Lost, Stolen, Mutilated or Destroyed Securities ................................. 39

**Page**

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS............................................40

    A.    Filing of Proofs of Claim ..................................................................40

    B.    Disputed Claims................................................................................40

    C.    Procedures Regarding Disputed Claims or Disputed Equity Interests ..............40

    D.    Allowance of Claims and Equity Interests.........................................40

    1.    *Allowance of Claims* ......................................................................40

    2.    *Estimation* ......................................................................................41

    3.    *Disallowance of Claims* .................................................................41

ARTICLE VIII. EFFECTIVENESS OF THIS PLAN ........................................41

    A.    Conditions Precedent to the Effective Date ......................................41

    B.    Waiver of Conditions........................................................................43

    C.    Effect of Non-Occurrence of Conditions to Effectiveness .................43

    D.    Dissolution of the Committee ...........................................................43

ARTICLE IX. EXCULPATION, INJUNCTION AND RELATED PROVISIONS ................43

    A.    General .............................................................................................43

    B.    Discharge of Claims..........................................................................44

    C.    Exculpation .......................................................................................44

    D.    Releases by the Debtor......................................................................44

    E.    Preservation of Rights of Action.......................................................45

    1.    *Maintenance of Causes of Action* ...................................................45

    2.    *Preservation of All Causes of Action Not Expressly Settled or Released*...........45

    F.    Injunction .........................................................................................46

    G.    Term of Injunctions or Stays.............................................................47

ARTICLE X. BINDING NATURE OF PLAN ...................................................47

**Page**

ARTICLE XI. RETENTION OF JURISDICTION ................................................................ 47

ARTICLE XII. MISCELLANEOUS PROVISIONS ............................................................ 49

    A.      Payment of Statutory Fees and Filing of Reports ............................................... 49

    B.      Modification of Plan ........................................................................................... 50

    C.      Revocation of Plan ............................................................................................. 50

    D.      Entire Agreement ............................................................................................... 50

    E.      Closing of Chapter 11 Case ............................................................................... 50

    F.      Successors and Assigns...................................................................................... 50

    G.      Reservation of Rights......................................................................................... 51

    H.      Further Assurances............................................................................................. 51

    I.      Severability ........................................................................................................ 51

    J.      Service of Documents ........................................................................................ 52

    K.      Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code............................................................................................ 53

    L.      Governing Law .................................................................................................. 53

    M.      Tax Reporting and Compliance ......................................................................... 53

    N.      Exhibits and Schedules ...................................................................................... 53

    O.      Controlling Document ....................................................................................... 54

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

HIGHLAND CAPITAL MANAGEMENT, L.P., as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), proposes the following chapter 11 plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtor. Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of this Plan. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtor's history, business, results of operations, historical financial information, projections and assets, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents that may be Filed with the Bankruptcy Court that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Documents. All such Exhibits and Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the other provisions of this Plan, and in accordance with the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date.

If this Plan cannot be confirmed, for any reason, then subject to the terms set forth herein, this Plan may be revoked.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A. Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Documents" are references to Articles, Sections, Exhibits and Plan Documents hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns;

(h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## B.    Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Acis*" means collectively Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

2.    "*Administrative Expense Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; and (b) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, and that have not already been paid by the Debtor during the Chapter 11 Case and a Professional Fee Claim.

3.    "*Administrative Expense Claims Bar Date*" means, with respect to any Administrative Expense Claim (other than a Professional Fee Claim) becoming due on or prior to the Effective Date, on [___] at 5:00 p.m. (prevailing Central Time).

4.    "*Administrative Expense Claims Objection Deadline*" means, with respect to any Administrative Expense Claim, the later of (a) ninety (90) days after the Effective Date and (b) sixty (60) days after the timely Filing of the applicable request for payment of such Administrative Expense Claim; *provided, however,* that the Administrative Expense Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

5.    "*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code and also includes any other Entity that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such affiliate.  For the purposes of this definition, the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

6.    "*Allowed*" means, with respect to any Claim, except as otherwise provided in the Plan: (a) any Claim that is evidenced by a Proof of Claim that has been timely Filed by the Bar Date, or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy Code or a Final Order; (b) a Claim that is listed in the Schedules as not contingent, not unliquidated,  and not disputed and for which no Proof of Claim has been timely filed; (c) a

2

Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; or (d) a Claim that is not Disputed (including for which a Proof of Claim has been timely filed in a liquidated and noncontingent amount that has not been objected to by the Claims Objection Deadline or as to which any such objection has been overruled by Final Order); *provided, however,* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order.

7. "*Allowed Claim or Equity Interest*" means a Claim or an Equity Interest of the type that has been Allowed.

8. "*Assets*" means all of the rights, titles, and interest of the Debtor, Reorganized Debtor, or Claimant Trust, in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property, the Debtor's books and records, and the Causes of Action.

9. "*Available Cash*" means any Cash in excess of the amount needed for the Claimant Trust and Reorganized Debtor to maintain business operations as determined in the sole discretion of the Claimant Trustee.

10. "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510, 544, 545, and 547-553 of the Bankruptcy Code or under similar state or federal statutes and common law, including fraudulent transfer laws

11. "*Ballot*" means the form(s) distributed to holders of Impaired Claims or Equity Interests entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

12. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

13. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court having jurisdiction over the Chapter 11 Case.

14. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in each case as amended from time to time and as applicable to the Chapter 11 Case.

15. "*Bar Date*" means the applicable deadlines set by the Bankruptcy Court for the filing of Proofs of Claim against the Debtor as set forth in the Bar Date Order, which deadlines may be or have been extended for certain Claimants by order of the Bankruptcy Court.

16. "*Bar Date Order*" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and (II) Approving the Form and Manner of Notice Thereof* [D.I. 488].

17. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

19. "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. For the avoidance of doubt, Cause of Action includes, without limitation,: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims; (f) the Avoidance Actions, and (g) the Estate Claims. The Causes of Action include, without limitation, the Causes of Action belonging to the Debtor's Estate listed on the schedule of Causes of Action to be filed with the Plan Supplement.

20. "*CEO/CRO*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer.

21. "*Chapter 11 Case*" means the Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Delaware Bankruptcy Court and transferred to the Bankruptcy Court on December 4, 2019, and styled *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj-11.

22. "*Claim*" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

23. "*Claims Objection Deadline*" means the date that is 180 days after the Confirmation Date; *provided, however,* the Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

24. "*Claimant Trust*" means the trust established for the benefit of the Claimant Trust Beneficiaries on the Effective Date in accordance with the terms of this Plan and the Claimant Trust Agreement.

25. "*Claimant Trust Agreement*" means the agreement Filed in the Plan Supplement establishing and delineating the terms and conditions of the Claimant Trust.

26. "*Claimant Trust Assets*" means (i) all Assets of the Estate other than the Reorganized Debtor Assets, including, but not limited to, the Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets received from the Reorganized Debtor on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.

27. "*Claimant Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest at the federal judgment rate in accordance with the terms and conditions set forth in the Claimant Trust Agreement, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

28. "*Claimant Trustee*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer, or such other Person identified in the Plan Supplement who will act as the trustee of the Claimant Trust in accordance with the Plan, the Confirmation Order, and Claimant Trust Agreement or any replacement trustee pursuant to (and in accordance with) the Claimant Trust Agreement. The Claimant Trustee shall be responsible for, among other things, monetizing the Estate's investment assets, resolving Claims, and, as the sole officer of New GP LLC, winding down the Reorganized Debtor's business operations.

29. "*Claimant Trust Expenses*" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Trustees on account of administration of the Claimant Trust, including any reasonable administrative fees and expenses, reasonable attorneys' fees and expenses, reasonable insurance costs, taxes, reasonable escrow expenses, and other expenses.

30. "*Claimant Trust Interests*" means the non-transferable interests in the Claimant Trust that are issued to the Claimant Trust Beneficiaries pursuant to this Plan; *provided*, *however*, Holders of Class A Limited Partnership Interests, Class B Limited Partnership Interests, and Class C Limited Partnership Interests will not be deemed to hold Claimant Trust Interests unless and until the Contingent Claimant Trust Interests distributed to such Holders vest in accordance with the terms of this Plan and the Claimant Trust Agreement.

31. "*Claimant Trust Oversight Committee*" means the committee of five Persons established pursuant to ARTICLE IV of this Plan to oversee the Claimant Trustee's performance of its duties and otherwise serve the functions described in this Plan and the Claimant Trust Agreement.

32. "*Class*" means a category of Holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to section 1122(a) of the Bankruptcy Code.

33. "*Class A Limited Partnership Interest*" means the Class A Limited Partnership Interests as defined in the Limited Partnership Agreement held by The Dugaboy Investment

5

Trust, Mark and Pamela Okada Family Trust – Exempt Trust 2, Mark and Pamela Okada – Exempt Descendants' Trust, and Mark Kiyoshi Okada, and the General Partner Interest.

34. "*Class B Limited Partnership Interest*" means the Class B Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

35. "*Class B/C Limited Partnership Interests*" means, collectively, the Class B Limited Partnership and Class C Limited Partnership Interests.

36. "*Class C Limited Partnership Interest*" means the Class C Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

37. "*Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102(a)(1) on October 29, 2019 [D.I. 65], consisting of (i) Redeemer Committee of Highland Crusader Fund, (ii) Meta-e Discovery, (iii) UBS, and (iv) Acis.

38. "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

39. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

40. "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

41. "*Convenience Claim*" means any prepetition unsecured Claim against the Debtor other than an Unpaid Employee Claim that is less than or equal to $2,500,000 or any General Unsecured Claim that is voluntarily reduced to an Allowed amount less than or equal to $2,500,000.

42. "*Convenience Claim Pool*" means the $15,000,000 in Cash that shall be available upon the Effective Date for distribution to Holders of Convenience Claims under the Plan as set forth herein. If the total amount of Allowed Convenience Claims is less than $15,000,000, any Cash remaining in the Convenience Claim Pool after all distributions to Allowed Holders of Convenience Claims have been made will be transferred to the Claimant Trust and administered as a Claimant Trust Asset.

43. "*Contingent Claimant Trust Interests*" means the contingent Claimant Trust Interests to be distributed to Holders of Class A Limited Partnership Interests, Holders of Class B Limited Partnership Interests, and Holders of Class C Limited Partnership Interests in accordance with this Plan, the rights of which shall not vest, and consequently convert to Claimant Trust Interests, unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest at the federal judgment rate.

As set forth in the Claimant Trust Agreement, the Contingent Claimant Trust Interests distributed to the Holders of Class A Limited Partnership Interests will be subordinated to the Contingent Claimant Trust Interests distributed to the Holders of Class B/C Limited Partnership Interests.

44. "*Debtor*" means Highland Capital Management, L.P. in its capacity as debtor and debtor in possession in the Chapter 11 Case.

45. "*Delaware Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

46. "*Disclosure Statement*" means that certain *Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization*, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

47. "*Disputed*" means with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed.

48. "*Distribution Agent*" means the Claimant Trustee, or any party designated by the Claimant Trustee to serve as distribution agent under this Plan.

49. "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions hereunder, which date shall be the Effective Date or such later date determined by the Bankruptcy Court.

50. "*Effective Date*" means the Business Day that this Plan becomes effective as provided in ARTICLE VIII hereof.

51. "*Entity*" means any "entity" as defined in section 101(15) of the Bankruptcy Code and also includes any Person or any other entity.

52. "*Equity Interest*" means any Equity Security in the Debtor, including, without limitation, all issued, unissued, authorized or outstanding partnership interests, shares, of stock or limited company interests, the Class A Limited Partnership Interests, the Class B Limited Partnership Interests, and the Class C Limited Partnership Interests.

53. "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

54. "*Estate*" means the bankruptcy estate of the Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

55. "*Estate Claims*" has the meaning given to it in <u>Exhibit A</u> to the *Notice of Final Term Sheet* [D.I. 354].

56. "*Exculpated Parties*" means, collectively, (i) the Debtor, (ii) the Independent Directors, (iii) the Committee, (iv) the members of the Committee (in their official capacities), (v) the Professionals retained by the Debtor in the Chapter 11 Case, (vi) Strand (solely from the

date of appointment of the Independent Directors), (vii) the CEO/CRO; and (viii) the Related Persons of each of the parties listed in (i) through (vii); *provided, however,* that neither James Dondero nor Mark Okada is included in the term "Exculpated Party."

57. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

58. "*Exhibit*" means an exhibit annexed hereto or to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

59. "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

60. "*Final Order*" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

61. "*Frontier Secured Claim*" means the loan from Frontier State Bank to the Debtor in the principal amount of $7,879,688.00 made pursuant to that certain First Amended and Restated Loan Agreement, dated March 29, 2018.

62. "*General Partner Interest*" means the Class A Limited Partnership Interest held by Strand, as the Debtor's general partner.

63. "*General Unsecured Claim*" means (1) any prepetition Claim against the Debtor that is not Secured and is not a/an: (a) Administrative Expense Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) Priority Non-Tax Claim; (e) Convenience Claim; (f) Unpaid Employee Claim; or (g) Subordinated Claim and (2) any Convenience Claim or Unpaid Employee Claim that makes the GUC Election.

64. "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

65. "*GUC Election*" means the option provided to each Holder of a Convenience Claim or Unpaid Employee Claim on their Ballot to elect to be treated as a General Unsecured Claim for all purposes under this Plan, including for purposes of voting on this Plan.

66. "*Holder*" means an Entity holding a Claim against, or Equity Interest in, the Debtor.

67. "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

68. "*Independent Directors*" means John S. Dubel, James P. Seery, Jr., and Russell Nelms, the independent directors of Strand appointed on January 9, 2020, and any additional or replacement directors of Strand appointed after January 9, 2020.

69. "*Initial Distribution Date*" means, subject to the "Treatment" sections in ARTICLE III hereof, the date that is on or as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims and Equity Interests.

70. "*Insurance Policies*" means all insurance policies maintained by the Debtor as of the Petition Date.

71. "*Jefferies Secured Claim*" means any Claim in favor of Jefferies, LLC, arising under that certain Prime Brokerage Customer Agreement, dated May 24, 2013, between the Debtor and Jefferies, LLC, that is secured by the assets, if any, maintained in the prime brokerage account created by such Prime Brokerage Customer Agreement.

72. "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

73. "*Limited Partnership Agreement*" means that certain Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 24, 2015, as amended.

74. "*Litigation Sub-Trust*" means a sub-trust that may be established within the Claimant Trust or a wholly –owned subsidiary of the Claimant Trust in each case in accordance with the terms and conditions set forth in the Claimant Trust Agreement. The Litigation Sub-Trust, if created, shall hold the Claimant Trust Assets that are Causes of Action.

75. "*Litigation Trustee*" means the trustee appointed by the Committee who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Claimant Trust Agreement. For avoidance of doubt, the Claimant Trustee may also serve as the Litigation Trustee.

76. "*Managed Funds*" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to this Plan.

77. "*New GP LLC*" means a limited liability company incorporated in the State of Delaware pursuant to the New GP LLC Documents to serve as the general partner of the Reorganized Debtor on the Effective Date.

78. "*New GP LLC Documents*" means the charter, operating agreement, and other formational documents of New GP LLC.

79. "*Ordinary Course Professionals Order*" means that certain *Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course* [D.I. 176].

80. "*Outside Closing Date*" means [___] at 12:00 noon (prevailing Central time).

81. "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, individual, corporation, company, general or limited partnership, limited liability company, unincorporated organization firm, trust, estate, business trust, association, joint stock company, joint venture, government, governmental agency, Governmental Unit or any subdivision thereof, the United States Trustee, or any other entity, whether acting in an individual, fiduciary or other capacity.

82. "*Petition Date*" means October 16, 2019.

83. "*Plan*" means this *Debtor's First Amended Chapter 11 Plan of Reorganization*, including the Exhibits and the Plan Documents and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

84. "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Allowed Equity Interests under this Plan.

85. "*Plan Documents*" means any of the documents, other than this Plan, but including, without limitation, the documents to be filed with the Plan Supplement, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, and as may be modified consistent with the terms hereof with the consent of the Committee.

86. "*Plan Supplement*" means the ancillary documents necessary for the implementation and effectuation of the Plan, including, without limitation, (i) the form of Claimant Trust Agreement, (ii) the forms of New GP LLC Documents, (iii) the form of Reorganized Limited Partnership Agreement, (iv) the Sub-Servicer Agreement (if applicable), (v) the identity of the initial members of the Claimant Trust Oversight Committee, (vi) the schedule of Causes of Action; and (vii) the schedule of Executory Contracts and Unexpired Leases to be assumed pursuant to this Plan, which, in each case, will be in form and substance reasonably acceptable to the Debtor and the Committee.

87. "*Priority Non-Tax Claim*" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

88. "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim or Equity Interest in a particular Class bears to (b) the aggregate Allowed amount of all Claims or Equity Interests in such Class.

89. "*Professional*" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to sections 327, 328, 330, 331, 363, 503(b), 503(b)(4) and 1103 of the Bankruptcy Code.

90. "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code, with respect to a particular Professional, for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

91. "*Professional Fee Claims Bar Date*" means with respect to Professional Fee Claims, the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

92. "*Professional Fee Claims Objection Deadline*" means, with respect to any Professional Fee Claim, thirty (30) days after the timely Filing of the applicable request for payment of such Professional Fee Claim.

93. "*Proof of Claim*" means a written proof of Claim or Equity Interest Filed against the Debtor in the Chapter 11 Case.

94. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

95. "*Protected Parties*" means, collectively, (i) the Debtor, (ii) Strand (solely from the date of the appointment of the Independent Directors), (iii) the Reorganized Debtor, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Claimant Trust, (viii) the Claimant Trustee, (ix) the Litigation Trustee, (x) the members of the Claimant Trust Oversight Committee (in their official capacities), (xi) New GP LLC, (xii) the Professionals retained by the Debtor in the Chapter 11 Case, (xiii) the CEO/CRO; and (xiv) the Related Persons of each of the parties listed in (i) through (xii); *provided, however,* that neither James Dondero nor Mark Okada is included in the term "Protected Party."

96. "*Reinstated*" means, with respect to any Claim or Equity Interest, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Equity Interest in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity

Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim or Equity Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Equity Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Equity Interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Equity Interest (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

97. "*Rejection Claim*" means any Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease pursuant to the Confirmation Order.

98. "*Related Entity*" means, without duplication, (a) James Dondero, (b) Mark Okada, (c) Grant Scott, (d) Hunter Covitz, (e) any entity or person that was an insider of the Debtor on the Petition Date under Section 101(31) of the Bankruptcy Code, including any non-statutory insider, (f) any entity that, after the Effective Date, is controlled directly or indirectly by James Dondero, including, without limitation, The Dugaboy Investment Trust, (g) the Hunter Mountain Investment Trust and any of its direct or indirect parents, and (h) the Charitable Donor Advised Fund, L.P., and any of its direct or indirect subsidiaries.

99. "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present and former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, employees, subsidiaries, divisions, management companies, and other representatives, in each case solely in their capacity as such .

100. "*Released Parties*" means, collectively, (i) the Reorganized Debtor, (ii) the Claimant Trust, (iii) the Litigation Trust, (iv) the Independent Directors,(v) Strand (solely from the date of appointment of the Independent Directors), (vi) the Committee, (vii) the officers, directors, employees, and agents of the Debtor and Strand in each case (a) as are employed as of the Effective Date or (b) as are employed as of the date hereof and subsequently transferred by the Debtor or terminated by the Debtor without cause prior to the Effective Date, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (i) through (vi); *provided, however,* that neither James Dondero nor Mark Okada is included in the term "Released Party."

101. "*Reorganized Debtor*" means the Debtor, as reorganized pursuant to this Plan on and after the Effective Date.

102. "*Reorganized Debtor Assets*" means, without limitation, any limited and general partnership interests held by the Debtor, and any other Assets, including Causes of

Action (including, without limitation, claims for breach of fiduciary duty), that have not been, or cannot be, for any reason, transferred to the Claimant Trust.

103. "*Reorganized Limited Partnership Agreement*" means that certain Fifth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., by and among the Claimant Trust, as limited partner, and New GP LLC, as general partner, Filed with the Plan Supplement.

104. "*Restructuring*" means the restructuring of the Debtor, the principal terms of which are set forth in this Plan and the Disclosure Statement.

105. "*Retained Employee Claim*" means any Claim filed by a current employee of the Debtor who will be employed by the Reorganized Debtor upon the Effective Date.

106. "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtor with the Bankruptcy Court [D.I. 247].

107. "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Debtor's Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the interest of the Debtor's Estate in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

108. "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

109. "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

110. "*Statutory Fees*" means fees payable pursuant to 28 U.S.C. § 1930.

111. "*Strand*" means Strand Advisors, Inc., the Debtor's general partner.

112. "*Sub-Servicer*" means a third-party selected by the Claimant Trustee to service or sub-service the Reorganized Debtor Assets.

113. "*Sub-Servicer Agreement*" means the agreement that may be entered into providing for the servicing of the Reorganized Debtor Assets by the Sub-Servicer.

114.  "*Subordinated Claim*" means any Claim that is subordinated to the Convenience Claims, Unpaid Employee Claims, and General Unsecured Claims pursuant to 11 U.S.C. § 510 or Final Order of the Bankruptcy Court.

115.  "*Subordinated Claimant Trust Interests*" means the Claimant Trust Interests to be distributed to Holders of Allowed Subordinated Claims under the Plan, which such interests shall be subordinated in right and priority to the Claimant Trust Interests distributed to Holders of Allowed General Unsecured Claims as provided in the Claimant Trust Agreement.

116.  "*Trust Distribution*" means the transfer of Cash or other property by the Claimant Trustee to the Claimant Trust Beneficiaries.

117.  "*Trustees*" means, collectively, the Claimant Trustee and Litigation Trustee.

118.  "*UBS*" means, collectively, UBS Securities LLC and UBS AG London Branch.

119.  "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

120.  "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

121.  "*Unpaid Employee Claim*" means any Claim filed by Scott Ellington, Thomas Surgent, Frank Waterhouse, Hunter Covitz, Jean Paul Sevilla, or Isaac Leventon; *provided, however,* that if any such Claim or portion of such Claim is entitled to priority pursuant to section 507(a) of the Bankruptcy Code, such Claim or portion of such Claim will be a Priority Non-Tax Claim.

122.  "*Unpaid Employee Claim Pool*" means the $3,000,000 in Cash that shall be available upon the Effective Date for distribution to Holders of Unpaid Employee Claims under the Plan as set forth herein.  If the total amount of Allowed Unpaid Employee Claims is less than $3,000,000, any Cash remaining in the Unpaid Employee Claim Pool after all distributions to Allowed Holders of Unpaid Employee Claims have been made will be transferred to the Claimant Trust and administered as a Claimant Trust Asset.

123.  "*Voting Deadline*" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the under the Order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125(a) of the Bankruptcy Code and authorizing the Debtor to solicit acceptances of the Plan.

124.  "*Voting Record Date*" means [____].

## ARTICLE II.
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**A.**     **Administrative Expense Claims**

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Administrative Expense Claim either (i) payment in full in Available Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtor or the Reorganized Debtor, as applicable, and such Holder; *provided, however,* that Administrative Expense Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court. All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

If an Administrative Expense Claim (other than a Professional Fee Claim) is not paid by the Debtor in the ordinary course, the Holder of such Administrative Expense Claim must File, on or before the applicable Administrative Expense Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for allowance and payment of such Administrative Expense Claim.

Objections to any Administrative Expense Claim (other than a Professional Fee Claim) must be Filed and served on the Debtor or the Reorganized Debtor, as applicable, and the party asserting such Administrative Expense Claim by the Administrative Expense Claims Objection Deadline.

**B.**     **Professional Fee Claims**

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must submit fee applications under sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code and, upon entry of an order of the Bankruptcy Court granting such fee applications, such Professional Fee Claim shall promptly be paid in Cash in full to the extent provided in such order.

Professionals or other Entities asserting a Professional Fee Claim for services rendered on or prior to the Effective Date must File, on or before the Professional Fee Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated as requiring such notice by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim.

Objections to any Professional Fee Claim must be Filed and served on the Debtor or Reorganized Debtor, as applicable, and the party asserting the Professional Fee Claim by the Professional Fee Claim Objection Deadline. Each Holder of an Allowed Professional Fee Claim

will be paid by the Debtor or the Claimant Trust, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

**C.      Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, or (b) such other less favorable treatment as agreed to in writing by the Debtor and such Holder.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtor may prepay any or all such Claims at any time, without premium or penalty.

<div align="center">

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

</div>

**A.      Summary**

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled (in each case, by the Debtor or any other Entity) prior to the Effective Date.

**B.**     **Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Jefferies Secured Claim | Unimpaired | Deemed to Accept |
| 2 | Frontier Secured Claim | Unimpaired | Deemed to Accept |
| 3 | Priority Non-Tax Claim | Unimpaired | Deemed to Accept |
| 4 | Retained Employee Claim | Unimpaired | Deemed to Accept |
| 5 | Convenience Claims | Impaired | Entitled to Vote |
| 6 | Unpaid Employee Claims | Impaired | Entitled to Vote |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Subordinated Claims | Impaired | Entitled to Vote |
| 9 | Class B/C Limited Partnership Interests | Impaired | Entitled to Vote |
| 10 | Class A Limited Partnership Interests | Impaired | Entitled to Vote |

**C.**     **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**D.**     **Impaired/Voting Classes**

Claims and Equity Interests in Class 5 through Class 10 are Impaired by the Plan, and only the Holders of Claims or Equity Interests in those Classes are entitled to vote to accept or reject the Plan.

**E.**     **Unimpaired/Non-Voting Classes**

Claims in Class 1 through Class 4 are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

**F.**     **Impaired/Non-Voting Classes**

There are no Classes under the Plan that will not receive or retain any property and no Classes are deemed to reject the Plan.

**G.**     **Cramdown**

If any Class of Claims or Equity Interests is deemed to reject this Plan or does not vote to accept this Plan, the Debtor may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code. If a controversy arises as to whether any Claims or Equity Interests, or any

class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**H.** **Classification and Treatment of Claims and Equity Interests**

1. *Class 1 – Jefferies Secured Claim*

   - *Classification*: Class 1 consists of the Jefferies Secured Claim.

   - *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor: (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired. Each Holder of an Allowed Class 1 Claim will retain the Liens securing its Allowed Class 1 Claim as of the Effective Date until full and final payment of such Allowed Class 1 Claim is made as provided herein.

   - *Impairment and Voting*: Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

2. *Class 2 – Frontier Secured Claim*

   - *Classification*: Class 2 consists of the Frontier Secured Claim.

   - *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim, at the election of the Debtor: (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Class 2 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired. Except with respect to Claims that are treated in accordance with the preceding clause (C), each Holder of an Allowed Class 2 Claim will retain the Liens securing its Allowed Class 2 Claim as of the Effective Date until full and final payment of such Allowed Class 2 Claim is made as provided herein.

   - *Impairment and Voting*: Class 2 is Unimpaired, and the Holders of Class 2 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the

Holders of Class 2 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

3.    *Class 3 – Priority Non-Tax Claims*

- *Classification*:  Class 3 consists of the Priority Non-Tax Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later (i) the Initial Distribution Date if such Class 3 Claim is Allowed on the Effective Date or (ii) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 3 Claim Cash equal to the amount of such Allowed Class 3 Claim.

- *Impairment and Voting*:  Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

4.    *Class 4 – Retained Employee Claims*

- *Classification*:  Class 4 consists of the Retained Employee Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Allowed Class 4 Claim will be Reinstated.

- *Impairment and Voting*:  Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

5.    *Class 5 – Convenience Claims*

- *Classification*:  Class 5 consists of the Convenience Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later (i) the Initial Distribution Date if such Class 5 Claim is Allowed on the Effective Date or (ii) the date on which such Class 5 Claim becomes an Allowed Class 5 Claim, each Holder of an Allowed Class 5 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 5 Claim (1) the treatment provided to Allowed Holders of Class 7 General Unsecured Claims if the Holder of such Class 5 Claim makes the GUC Election or (2) an amount in Cash equal to either (a) 75% of the Allowed amount of such Holder's Class 5

Claim or (b) if the total amount of Allowed Class 5 Claims exceeds $15,000,000, such Holder's Pro Rata share of the Convenience Claims Cash Pool.

- *Impairment and Voting*:  Class 5 is Impaired, and the Holders of Class 5 Claims are entitled to vote to accept or reject this Plan.

6.    *Class 6 – Unpaid Employee Claims*

- *Classification*:  Class 6 consists of the Unpaid Employee Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later (i) the Initial Distribution Date if such Class 6 Claim is Allowed on the Effective Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 6 Claim (1) the treatment provided to Allowed Holders of Class 7 General Unsecured Claims if the Holder of such Class 6 Claim makes the GUC Election or (2) an amount in Cash equal to either (a) 75% of the Allowed amount of such Holder's Class 6 Claim or (b) if the total amount of Allowed Class 6 Claims exceeds $3,000,000, such Holder's Pro Rata share of the Unpaid Employee Claims Cash Pool.

- *Impairment and Voting*:  Class 6 is Impaired, and the Holders of Class 6 Claims are entitled to vote to accept or reject this Plan.

7.    *Class 7 – General Unsecured Claims*

- *Classification*:  Class 7 consists of the General Unsecured Claims.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 7 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 7 is Impaired, and the Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

8.  <u>Class 8 – Subordinated Claims</u>

- *Classification*:  Class 8 consists of the Subordinated Claims.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Subordinated Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Subordinated Claim, except with respect to any Subordinated Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 8 is Impaired, and the Holders of Class 8 Claims are entitled to vote to accept or reject this Plan.

9.  <u>Class 9 – Class B/C Limited Partnership Interests</u>

- *Classification*:  Class 9 consists of the Class B/C Limited Partnership Interests.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 9 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class B/C Limited Partnership Interest Claim, except with respect to any Class B/C Limited Partnership Interest Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 9 is Impaired, and the Holders of Class 9 Claims are entitled to vote to accept or reject this Plan.

10. <u>*Class 10 – Class A Limited Partnership Interests*</u>

- *Classification*: Class 10 consists of the Class A Limited Partnership Interests.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class A Limited Partnership Interest, except with respect to any Class A Limited Partnership Interest Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 10 is Impaired, and the Holders of Class 10 Claims are entitled to vote to accept or reject this Plan.

## I.     <u>Special Provision Governing Unimpaired Claims</u>

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

## J.     <u>Subordinated Claims</u>

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Under section 510 of the Bankruptcy Code, upon written notice, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

### A.    Summary

As discussed in the Disclosure Statement, the Plan will be implemented through (i) the Claimant Trust and (ii) the Reorganized Debtor.

On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust.  The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner.  The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited Partnership Agreement.  Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC.  The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to this Plan and the Claimant Trust Agreement.  The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds.

The Reorganized Debtor will distribute all proceeds from the wind down to the Claimant Trust, as its limited partner, and New GP LLC, as its general partner, in each case in accordance with the Reorganized Limited Partnership Agreement.  Such proceeds, along with the proceeds of the Claimant Trust Assets, will ultimately be distributed to the Claimant Trust Beneficiaries as set forth in this Plan and the Claimant Trust Agreement.

### B.    The Claimant Trust

####        1.                    _Creation and Governance of the Claimant Trust and Litigation Sub-Trust._

On or prior to the Effective Date, the Debtor and the Claimant Trustee shall execute the Claimant Trust Agreement and shall take all steps necessary to establish the Claimant Trust and, if applicable, the Litigation Sub-Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the Claimant Trust Beneficiaries.  Additionally, on or prior to the Effective Date the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant

23

Trust Expenses, as provided for in the Claimant Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax.

The Claimant Trustee shall be the exclusive trustee of the Claimant Trust Assets, excluding the Estate Claims if the Litigation Sub-Trust is established, for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Claimant Trust Assets. The Claimant Trust shall also be responsible for resolving all Disputed or disallowed Claims. The Claimant Trust shall be governed by the Claimant Trust Agreement and administered by the Claimant Trustee. The powers, rights, and responsibilities of the Claimant Trustee shall be specified in the Claimant Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in ARTICLE IV, subject to any required reporting to the Claimant Trust Oversight Committee as may be set forth in the Claimant Trust Agreement. The Claimant Trust shall hold and distribute the Claimant Trust Assets in accordance with the provisions of the Plan and the Claimant Trust Agreement. Other rights and duties of the Claimant Trustee and the Claimant Trust Beneficiaries shall be as set forth in the Claimant Trust Agreement. After the Effective Date, neither the Debtor nor the Reorganized Debtor shall have any interest in the Claimant Trust Assets.

If applicable, on or after the Effective Date, the Claimant Trustee and Litigation Trustee may enter into a separate agreement that shall delineate the powers, rights, and responsibilities of the Litigation Trustee and administration and governance of the Litigation Sub-Trust in a manner consistent with the Claimant Trust Agreement.

2.    *Claimant Trust Oversight Committee*

The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) will be overseen by the Claimant Trust Oversight Committee, subject to the terms of the Claimant Trust Agreement.

The Claimant Trust Oversight Committee will initially consist of five members. Four of the five members will be representatives of the members of the Committee: (i) the Redeemer Committee of Highland Crusader Fund, (ii) UBS, (iii) Acis, and (iv) Meta-e Discovery. The fifth member will be an independent, natural Person chosen by the Committee and reasonably acceptable to the Debtor. The members of the Claimant Trust Oversight Committee may be replaced as set forth in the Claimant Trust Agreement. The identity of the members of the Claimant Trust Oversight Committee will be disclosed in the Plan Supplement.

As set forth in the Claimant Trust Agreement, in no event will any member of the Claimant Trust Oversight Committee with a Claim against the Estate be entitled to vote, opine, or otherwise be involved in any matters related to such member's Claim.

The members of the Claimant Trust Oversight Committee may be entitled to compensation for their services as set forth in the Claimant Trust Agreement. Any member of

the Claimant Trust Oversight Committee may be removed, and successor chosen, in the manner set forth in the Claimant Trust Agreement.

3.        *Purpose of the Claimant Trust.*

The Claimant Trust shall be established for the purpose of (i) managing and monetizing the Claimant Trust Assets, subject to the terms of the Claimant Trust Agreement and the oversight of the Claimant Trust Oversight Committee, (ii) serving as the limited partner of, and holding the limited partnership interests in, the Reorganized Debtor, (iii) serving as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner, (iv) in its capacity as the sole member and manager of New GP LLC, overseeing the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement; and (v) administering the Disputed Claims Reserve and serving as Distribution Agent.

In its management of the Claimant Trust Assets, the Claimant Trust will also reconcile and object to the General Unsecured Claims, Subordinated Claims, Class B/C Limited Partnership Interests, and Class A Limited Partnership Interests, as provided for in the Plan, and make Trust Distributions to the Claimant Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

The purpose of the Reorganized Debtor is discussed at greater length in ARTICLE IV.C.

4.        *Claimant Trustee and Claimant Trust Agreement.*

The Claimant Trust Agreement generally will provide for, among other things:

(i)        the payment of the Claimant Trust Expenses;

(ii)       the payment of other reasonable expenses of the Claimant Trust;

(iii)      the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation;

(iv)      the investment of Cash by the Claimant Trustee within certain limitations, including those specified in the Plan;

(v)       the orderly monetization of the Claimant Trust Assets;

(vi)      litigation of any Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(vii)     the resolution of Disputed or disallowed Claims and the allowance, prosecution, and resolution of objections to Claims and Equity Interests, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(viii)   the administration of the Disputed Claims Reserve and distributions to be made therefrom; and

(ix)   the management of the Reorganized Debtor, including the utilization of a Sub-Servicer, with the Claimant Trust serving as the managing member of New GP LLC.

Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement.  The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expenses and shall periodically replenish such reserve, as necessary.

The Trustees, on behalf of the Claimant Trust, may each employ, without further order of the Bankruptcy Court, employees and other professionals (including those previously retained by the Debtor and the Committee) to assist in carrying out the Trustees' duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Claimant Trust Assets in accordance with the Plan and the Claimant Trust Agreement.

The Claimant Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee.  Any such indemnification shall be the sole responsibility of the Claimant Trust and payable solely from the Claimant Trust Assets.

In furtherance of, and consistent with the purpose of, the Claimant Trust and the Plan, the Trustees, for the benefit of the Claimant Trust, shall, subject to reporting and oversight by the Claimant Trust Oversight Committee as set forth in the Claimant Trust Agreement: (i) hold the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries, (ii) make Distributions to the Claimant Trust Beneficiaries as provided herein and in the Claimant Trust Agreement, and (iii) have the sole power and authority to prosecute and resolve any Causes of Action and objections to Claims and Equity Interests, without approval of the Bankruptcy Court.  Except as otherwise provided in the Claimant Trust Agreement, the Claimant Trustee shall be responsible for all decisions and duties with respect to the Claimant Trust and the Claimant Trust Assets; *provided, however,* that if a Litigation Sub-Trust is created upon or after the Effective Date, the prosecution and resolution of any Estate Claims included in the Claimant Trust Assets shall be the responsibility of the Litigation Trustee.  In all circumstances, the Trustees shall act in the best interests of the Claimant Trust Beneficiaries and with the same fiduciary duties as a chapter 7 trustee.

5.   *Compensation and Duties of Trustees.*

The salient terms of each Trustee's employment, including such Trustee's duties and compensation shall be set forth in the Claimant Trust Agreement.  The Trustees shall each be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

6. *Cooperation of Debtor and Reorganized Debtor.*

To effectively investigate, prosecute, compromise and/or settle the Claims and/or Causes of Action that constitute Claimant Trust Assets on behalf of the Claimant Trust, the Claimant Trustee, Litigation Trustee, and each of their counsel may require reasonable access to the Debtor's and Reorganized Debtor's documents, information, and work product relating to the Claimant Trust Assets. Accordingly, the Claimant Trustee and Litigation Trustee shall have reasonable access to copies of the Debtor's and Reorganized Debtor's records and information relating to the Claimant Trust Assets, including electronic records, documents or work product related to the Claims and/or Causes of Action that constitute Claimant Trust Assets.

The Debtor and Reorganized Debtor shall preserve all records, documents or work product (including all electronic records, documents, or work product) related to the Claims and/or Causes of Action that constitute Claimant Trust Assets until the earlier of (a) the dissolution of the Reorganized Debtor or (b) termination of the Claimant Trust.

7. *United States Federal Income Tax Treatment of the Claimant Trust.*

Unless the IRS requires otherwise, for all United States federal income tax purposes, the parties shall treat the transfer of the Claimant Trust Assets to the Claimant Trust as: (a) a transfer of the Claimant Trust Assets (other than the amounts set aside in the Disputed Claim Reserve, if the Claimant Trustee makes the election described in Section 7 below) directly to the applicable Claimant Trust Beneficiaries followed by (b) the transfer by the such Claimant Trust Beneficiaries to the Claimant Trust of such Claimant Trust Assets in exchange for the Claimant Trust Interests. Accordingly, the applicable Claimant Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Claimant Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

8. *Tax Reporting.*

(a) The Claimant Trustee shall file tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity.

(b) The Claimant Trustee shall be responsible for payment, out of the Claimant Trust Assets, of any taxes imposed on the Claimant Trust or its assets.

(c) The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Claimant Trust Beneficiaries of such valuation, and such valuation shall be used consistently for all federal income tax purposes.

(d) The Claimant Trustee shall distribute such tax information to the applicable Claimant Trust Beneficiaries as the Claimant Trustee determines is required by applicable law.

9.     *Claimant Trust Assets.*

The Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action included in the Claimant Trust Assets (except for the Estate Claims) without any further order of the Bankruptcy Court, and the Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to sell, liquidate, or otherwise monetize all Claimant Trust Assets, except as otherwise provided in this Plan or in the Claimant Trust Agreement, without any further order of the Bankruptcy Court.  Notwithstanding anything herein to the contrary, the Litigation Trustee shall have the exclusive right to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Estate Claims included in the Claimant Trust Assets without any further order of the Bankruptcy Court.

From and after the Effective Date, the Trustees, in accordance with section 1123(b)(3) and (4) of the Bankruptcy Code, and on behalf of the Claimant Trust, shall each serve as a representative of the Estate with respect to any and all Claimant Trust Assets, including the Causes of Action and Estate Claims, as appropriate, and shall retain and possess the right to (a) commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Action in any court or other tribunal and (b) sell, liquidate, or otherwise monetize all Claimant Trust Assets.

10.     *Claimant Trust Expenses.*

From and after the Effective Date, the Claimant Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Claimant Trust and any professionals retained by the Claimant Trust from the Claimant Trust Assets, except as otherwise provided in the Claimant Trust Agreement.

11.     *Trust Distributions to Claimant Trust Beneficiaries.*

The Claimant Trustee, in its discretion, may make Trust Distributions to the Claimant Trust Beneficiaries at any time and/or use the Claimant Trust Assets or proceeds thereof, *provided* that such Trust Distributions or use is otherwise permitted under the terms of the Plan, the Claimant Trust Agreement, and applicable law.

12.     *Cash Investments.*

With the consent of the Claimant Trust Oversight Committee, the Claimant Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in a manner consistent with the terms of the Claimant Trust Agreement; *provided, however,* that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

*13.*     *Dissolution of the Claimant Trust.*

The Trustees and the Claimant Trust shall be discharged or dissolved, as the case may be, at such time as: (a) the Litigation Trustee determines that the pursuit of additional Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (b) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (c) all objections to Disputed Claims and Equity Interests are fully resolved, (d) the Reorganized Debtor is dissolved, and (e) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets.

Upon dissolution of the Claimant Trust, and pursuant to the Claimant Trust Agreement, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

## C.     **The Reorganized Debtor**

*1.*     *Corporate Existence*

The Debtor will continue to exist after the Effective Date, with all of the powers of partnerships pursuant to the law of the State of Delaware and as set forth in the Reorganized Limited Partnership Agreement.

*2.*     *Cancellation of Equity Interests and Release*

On the Effective Date, (i) all prepetition Equity Interests, including the Class A Limited Partnership Interests and the Class B/C Limited Partnership Interests, in the Debtor shall be canceled, and (ii) all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, the Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.

*3.*     *Issuance of New Partnership Interests*

On the Effective Date, the Debtor or the Reorganized Debtor, as applicable, will issue new Class A Limited Partnership Interests to (i) the Claimant Trust, as limited partner, and (ii) New GP LLC, as general partner, and will admit (a) the Claimant Trust as the limited partner of the Reorganized Debtor, and (b) New GP LLC as the general partner of the Reorganized Debtor.

The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor. Also, on the Effective Date, the Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement and receive partnership interests in the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement.

4.      *Management of the Reorganized Debtor*

Subject to and consistent with the terms of the Reorganized Limited Partnership Agreement, the Reorganized Debtor shall be managed by its general partner, New GP LLC. The initial officers and employees of the Reorganized Debtor shall be selected by the Debtor. The Reorganized Debtor may, in its discretion, also utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees.

As set forth in the Reorganized Limited Partnership Agreement, New GP LLC will receive a fee for managing the Reorganized Debtor. Although New GP LLC will be a limited liability company, it will elect to be treated as a C-Corporation for tax purposes. Therefore, New GP LLC (and any taxable income attributable to it) will be subject to corporate income taxation on a standalone basis, which may reduce the return to Claimants.

5.      *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in this Plan or the Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

Except as may be otherwise provided in this Plan or the Confirmation Order, the Reorganized Debtor will continue to manage the Reorganized Debtor Assets (which shall include, for the avoidance of doubt, serving as the investment manager of the Managed Funds) and may use, acquire or dispose of the Reorganized Debtor Assets and compromise or settle any Claims with respect to the Reorganized Debtor Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Without limiting the foregoing, the Reorganized Debtor will pay the charges that it incurs after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

6.   *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets*

Any proceeds received by the Reorganized Debtor will be distributed to the Claimant Trust, as limited partner, and New GP LLC, as general partner, in the manner set forth in the Reorganized Limited Partnership Agreement.   As set forth in the Reorganized Limited Partnership Agreement, the Reorganized Debtor may, from time to time distribute Reorganized Debtor Assets to the Claimant Trust either in Cash or in-kind, including to institute the wind-down and dissolution of the Reorganized Debtor.  Any assets distributed to the Claimant Trust will be (i) deemed transferred in all respects as forth in ARTICLE IV.B.1, (ii) deemed Claimant Trust Assets, and (iii) administered as Claimant Trust Assets.

## D.   **Company Action**

Each of the Debtor, the Reorganized Debtor, and the Trustees, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, the Claimant Trust Agreement, the Reorganized Limited Partnership Agreement, or the New GP LLC Documents, as applicable, in the name of and on behalf of the Debtor, the Reorganized Debtor, or the Trustees, as applicable, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers, or directors of the Debtor or the Reorganized Debtor, as applicable, or by any other Person.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the stockholders, partners, directors, managers, or members of the Debtor, any Related Entity, or any Affiliate thereof (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, partners, directors, managers or members of such Persons, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in this Plan involving the legal or corporate structure of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, and any legal or corporate action required by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, in connection with this Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, partners, directors, managers, or members of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, or by any other Person. On the Effective Date, the appropriate officers of the Debtor and the Reorganized Debtor, as applicable, as well as the Trustees, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and the Reorganized Debtor, as well as the Trustees, in each case without further notice to or order of the Bankruptcy Court, act or action

under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The appropriate officer of the Debtor, the Reorganized Debtor, as well as the Trustees, will be authorized to certify or attest to any of the foregoing actions.

## E.      Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, from and after the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or Equity Interests extinguished pursuant to the prior sentence will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

## F.      Cancellation of Notes, Certificates and Instruments

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan, and the obligations of the Debtor thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

## G.      Cancellation of Existing Instruments Governing Security Interests

Upon payment or other satisfaction of an Allowed Class 1 or Allowed Class 2 Claim, or promptly thereafter, the Holder of such Allowed Class 1 or Allowed Class 2 Claim shall deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, any collateral or other property of the Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Class 1 or Allowed Class 2 Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or *lis pendens*, or similar interests or documents.

### H.     Control Provisions

To the extent that there is any inconsistency between this Plan as it relates to the Claimant Trust, the Claimant Trust Agreement, the Reorganized Debtor, or the Reorganized Limited Partnership Agreement, this Plan shall control.

### I.     Treatment of Vacant Classes

Any Claim or Equity Interest in a Class considered vacant under ARTICLE III.C of this Plan shall receive no Plan Distributions.

### J.     Plan Documents

The documents, if any, to be Filed as part of the Plan Documents, including any documents filed with the Plan Supplement, and any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in ARTICLE I hereof) and fully enforceable as if stated in full herein.

The Debtor and the Committee are currently working to finalize the forms of certain of the Plan Documents to be filed with the Plan Supplement. To the extent that the Debtor and the Committee cannot agree as to the form and content of such Plan Documents, they intend to submit the issue to non-binding mediation pursuant to the *Order Directing Mediation* entered on August 3, 2020 [D.I. 912].

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.     Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases

Unless an Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtor pursuant to a Final Order of the Bankruptcy Court entered prior to the Effective Date; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtor on or before the Confirmation Date; (iv) contains a change of control or similar provision that would be triggered by the Chapter 11 Case (unless such provision has been irrevocably waived); or (v) is specifically designated as a contract or lease to be assumed in the Plan Supplement, on the Effective Date, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease is listed in the Plan Supplement.

At any time on or prior to the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may assign (subject to applicable law) any Executory Contract or Unexpired Lease, as determined by the Debtor in consultation with the Committee, or the Reorganized Debtor, as applicable.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, rejections, and assumptions and assignments. Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. To the extent applicable, no change of control (or similar provision) will be deemed to occur under any such Executory Contract or Unexpired Lease.

If certain, but not all, of a contract counterparty's Executory Contracts and/or Unexpired Leases are rejected pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being rejected pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

**B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Any Executory Contract or Unexpired Lease not assumed or rejected on or before the Effective Date shall be deemed rejected, pursuant to the Confirmation Order. Any Person asserting a Rejection Claim shall File a proof of claim within thirty days of the Effective Date. Any Rejection Claims that are not timely Filed pursuant to this Plan shall be forever disallowed and barred. If one or more Rejection Claims are timely Filed, the Claimant Trustee may File an objection to any Rejection Claim.

Rejection Claims shall be classified as Convenience Claims or General Unsecured Claims, as applicable, and shall be treated in accordance with ARTICLE III of this Plan.

**C.      Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases**

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed or assigned hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor upon assumption or assignment thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts may otherwise agree. The Debtor may serve a notice on the Committee and parties to Executory Contracts or Unexpired Leases to be assumed or assigned reflecting the Debtor's or Reorganized Debtor's intention to assume or assign the Executory Contract or Unexpired Lease in connection with this Plan and setting forth the proposed cure amount (if any).

If a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Debtor, the Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assigned or (3) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assignment.

Assumption or assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable cure amounts pursuant to this ARTICLE V.C shall result in the full release and satisfaction of any cure amounts, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assignment. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed or assigned in the Chapter 11 Case, including pursuant to the Confirmation Order, and for which any cure amounts have been fully paid pursuant to this ARTICLE V.C, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

## D.     Assumption of Insurance Policies

Upon the Effective Date, the Reorganized Debtor will assume all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code and all such Insurance Policies shall vest in the Reorganized Debtor. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the Insurance Policies and all such Insurance Policies shall continue in full force and effect thereafter in accordance with their respective terms. Notwithstanding anything to the contrary contained in this Plan, confirmation of this Plan will not impair or otherwise modify any rights of the Debtor or the Reorganized Debtor under the Insurance Policies. To the extent that any Insurance Policy is not assumable, it will be Reinstated.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.     Dates of Distributions

Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtor shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Allowed Equity Interests in the applicable Class and in the manner provided herein. If any payment or act under this Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the

performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in this Plan. Except as otherwise provided in this Plan, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Claims and Equity Interests against the Debtor shall be deemed fixed and adjusted pursuant to this Plan and none of the Debtor, the Reorganized Debtor, or the Claimant Trust will have liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Confirmation Order. All payments and all distributions made by the Distribution Agent under this Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Debtor and the Reorganized Debtor.

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtor and the Equity Interests in the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests. The Debtor, the Reorganized Debtor, the Trustees, and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Claims against the Debtor or Equity Interests in the Debtor occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under this Plan to such Persons or the date of such distributions.

## B.    Distribution Agent

Except as provided herein, all distributions under this Plan shall be made by the Claimant Trustee, as Distribution Agent, or by such other Entity designated by the Claimant Trustee, as a Distribution Agent on the Effective Date or thereafter. The Claimant Trustee, or such other Entity designated by the Claimant Trustee to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

The Distribution Agent shall not have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

## C. Cash Distributions

Distributions of Cash may be made by wire transfer from a domestic bank, except that Cash payments made to foreign creditors may be made in such funds and by such means as the Distribution Agent determines are necessary or customary in a particular foreign jurisdiction.

## D. Disputed Claims Reserve

As set forth in the Claimant Trust Agreement, the Claimant Trustee, as Distribution Agent, shall establish, fund, and maintain a reserve at the Claimant Trust. Any payments to be made under this Plan after the Effective Date shall be paid from the Disputed Claims Reserve as set forth in the Claimant Trust Agreement. Upon the resolution of all Disputed Claims, funds remaining in the Disputed Claims Reserve shall be allocated in the manner set forth in the Claimant Trust Agreement.

## E. Rounding of Payments

Whenever this Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash to be distributed under this Plan remains undistributed as a result of the aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under this Plan.

## F. *De Minimis* Distribution

Except as to any Allowed Claim that is Unimpaired under this Plan, none of the Debtor, the Reorganized Debtor, or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in ARTICLE VI.I hereof within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim. *De minimis* distributions for which no such request is timely received shall revert to the Claimant Trust. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

## G. Distributions on Account of Allowed Claims

Except as otherwise agreed by the Holder of a particular Claim or as provided in this Plan, all distributions shall be made pursuant to the terms of this Plan and the Confirmation Order. Except as otherwise provided in this Plan, distributions to any Holder of an Allowed Claim shall, to the extent applicable, be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

### H. General Distribution Procedures

The Distribution Agent, shall make all distributions of Cash or other property required under this Plan, unless this Plan specifically provides otherwise. All Cash and other property held by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, for ultimate distribution under this Plan shall not be subject to any claim by any Person.

### I. Address for Delivery of Distributions

Distributions to Holders of Allowed Claims, to the extent provided for under this Plan, shall be made (1) at the addresses set forth in any written notices of address change delivered to the Debtor and the Distribution Agent; (2) at the address set forth on any Proofs of Claim Filed by such Holders (to the extent such Proofs of Claim are Filed in the Chapter 11 Case), (2), or (3) at the addresses in the Debtor's books and records.

If there is any conflict or discrepancy between the addresses set forth in (1) through (3) in the foregoing sentence, then (i) the address in Section (2) shall control; (ii) if (2) does not apply, the address in (1) shall control, and (iii) if (1) does not apply, the address in (3) shall control.

### J. Undeliverable Distributions and Unclaimed Property

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtor or the Claimant Trust as undeliverable, no further distribution shall be made to such Holder, and Distribution Agent shall not have any obligation to make any further distribution to the Holder, unless and until the Distribution Agent is notified in writing of such Holder's then current address.

Any Entity that fails to claim any Cash within six months from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under this Plan and such Cash shall thereafter be deemed an Claimant Trust Asset in all respects and for all purposes. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor's Estate, the Reorganized Debtor, the Claimant Trust, or against any Holder of an Allowed Claim to whom distributions are made by the Distribution Agent.

### K. Withholding Taxes

In connection with this Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. The Distribution Agent shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. As a condition to receiving any distribution under this Plan, the Distribution Agent may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to this Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Distribution Agent to comply with applicable tax reporting and withholding laws. If a Holder fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution. Any amounts withheld

pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

## L.     Setoffs

The Distribution Agent may, to the extent permitted under applicable law, set off against any Allowed Claim and any distributions to be made pursuant to this Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Debtor, the Reorganized Debtor, or the Distribution Agent may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with this Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or the Claimant Trustee of any such claims, rights and causes of action that the Debtor, the Reorganized Debtor, or Claimant Trustee possesses against such Holder. Any Holder of an Allowed Claim subject to such setoff reserves the right to challenge any such setoff in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

## M.     Surrender of Cancelled Instruments or Securities

As a condition precedent to receiving any distribution pursuant to this Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to ARTICLE IV of this Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Distribution Agent unless waived in writing by the Distribution Agent.

## N.     Lost, Stolen, Mutilated or Destroyed Securities

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by this Plan, deliver to the Distribution Agent: (i) evidence reasonably satisfactory to the Distribution Agent of such loss, theft, mutilation, or destruction; and (ii) such security or indemnity as may be required by the Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest. Upon compliance with ARTICLE VI.N of this Plan as determined by the Distribution Agent, by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under this Plan, be deemed to have surrendered such security or note to the Distribution Agent.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED AND DISPUTED CLAIMS

**A.**     **Filing of Proofs of Claim**

Unless such Claim appeared in the Schedules and is not listed as disputed, contingent, or unliquidated, or such Claim has otherwise been Allowed or paid, each Holder of a Claim was required to file a Proof of Claim on or prior to the Bar Date.

**B.**     **Disputed Claims**

Following the Effective Date, each of the Reorganized Debtor or the Claimant Trustee, as applicable, may File with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Disputed Equity Interest or any other appropriate motion or adversary proceeding with respect thereto, which shall be litigated to Final Order or, at the discretion of the Reorganized Debtor or Claimant Trustee, as applicable, compromised, settled, withdrew or resolved without further order of the Bankruptcy Court, and (ii) unless otherwise provided in the Confirmation Order, the Reorganized Debtor or the Claimant Trust, as applicable, are authorized to settle, or withdraw any objections to, any Disputed Claim or Disputed Equity Interests following the Effective Date without further notice to creditors (other than the Entity holding such Disputed Claim or Disputed Equity Interest) or authorization of the Bankruptcy Court, in which event such Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of this Plan.

**C.**     **Procedures Regarding Disputed Claims or Disputed Equity Interests**

No payment or other distribution or treatment shall be made on account of a Disputed Claim or Disputed Equity Interest, even if a portion of the Claim is not disputed, unless and until such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interests and the amount of such Allowed Claim or Equity Interest, as applicable, is determined by order of the Bankruptcy Court or by stipulation between the Reorganized Debtor or Claimant Trust, as applicable, and the Holder of the Claim or Equity Interest.

**D.**     **Allowance of Claims and Equity Interests**

Following the date on which a Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interest after the Distribution Date, the Distribution Agent shall make a distribution to the Holder of such Allowed Claim or Equity Interest in accordance with the Plan.

*1.*     *Allowance of Claims*

After the Effective Date and subject to the other provisions of this Plan, the Reorganized Debtor or the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Claim. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim or Equity Interest unless and until such Claim or Equity

Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

### 2. *Estimation*

Subject to the other provisions of this Plan, the Debtor, prior to the Effective Date, and the Reorganized Debtor or the Claimant Trustee, as applicable, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Disputed Equity Interest pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Disputed Equity Interest, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation proceeding.

### 3. *Disallowance of Claims*

Any Claims or Equity Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Reorganized Debtor or the Claimant Trust, as applicable, by that Entity have been turned over or paid to the Reorganized Debtor or the Claimant Trust, as applicable.

**EXCEPT AS OTHERWISE PROVIDED HEREIN OR AS AGREED TO BY THE DEBTOR, REORGANIZED DEBTOR, OR CLAIMANT TRUSTEE, AS APPLICABLE, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

### ARTICLE VIII.
### EFFECTIVENESS OF THIS PLAN

### A. Conditions Precedent to the Effective Date

The Effective Date of this Plan will be conditioned upon the satisfaction or waiver by the

Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee with such consent not to be unreasonably withheld), pursuant to the provisions of ARTICLE VIII.B of this Plan of the following:

- This Plan and the Plan Documents, including the Claimant Trust Agreement and the Reorganized Limited Partnership Agreement, and all schedules, documents, supplements and exhibits to this Plan shall have been Filed in form and substance reasonably acceptable to the Debtor and the Committee.

- The Confirmation Order shall have been entered, not subject to stay pending appeal, and shall be in form and substance reasonably acceptable to the Debtor and the Committee. The Confirmation Order shall provide that, among other things, (i) the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee are authorized to take all actions necessary or appropriate to effectuate and consummate this Plan, including, without limitation, (a) entering into, implementing, effectuating, and consummating the contracts, instruments, releases, and other agreements or documents created in connection with or described in this Plan, (b) assuming the Executory Contracts and Unexpired Leases set forth in the Plan Supplement, (c) making all distributions and issuances as required under this Plan; and (d) entering into any transactions as set forth in the Plan Documents; (ii) the provisions of the Confirmation Order and this Plan are nonseverable and mutually dependent; (iii) the implementation of this Plan in accordance with its terms is authorized; (iv) pursuant to section 1146 of the Bankruptcy Code, the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under this Plan, shall not be subject to any Stamp or Similar Tax; and (v) the vesting of the Claimant Trust Assets in the Claimant Trust and the Reorganized Debtor Assets in the Reorganized Debtor, in each case as of the Effective Date free and clear of liens and claims to the fullest extent permissible under applicable law pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

- All documents and agreements necessary to implement this Plan, including without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, in each case in form and substance reasonably acceptable to the Debtor and the Committee, shall have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement this Plan, including, without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, shall have been obtained, effected or executed and delivered to the required parties and, to the extent

required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent effectiveness or consummation of the Restructuring.

**B.**     **Waiver of Conditions**

The conditions to effectiveness of this Plan set forth in this ARTICLE VIII (other than that the Confirmation Order shall have been entered) may be waived in whole or in part by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee), without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or effectuate this Plan. The failure to satisfy or waive a condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable.

**C.**     **Effect of Non-Occurrence of Conditions to Effectiveness**

Unless waived as set forth in ARTICLE VIII.B, if the Effective Date of this Plan does not occur within twenty calendar days of entry of the Confirmation Order, the Debtor may withdraw this Plan and, if withdrawn, the Plan shall be of no further force or effect.

**D.**     **Dissolution of the Committee**

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent either of the Trustees or to be compensated or reimbursed per the Plan and the Claimant Trust Agreement in connection with such representation.

# ARTICLE IX.
## EXCULPATION, INJUNCTION AND RELATED PROVISIONS

**A.**     **General**

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and

equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

## B.   Discharge of Claims

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

## C.   Exculpation

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation  in connection with the foregoing clauses (i)-(v); *provided*, *however,* the foregoing will not apply to any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

## D.   Releases by the Debtor

On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured,

existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Person. Notwithstanding anything contained herein to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, or (iv) any Causes of Action arising from willful misconduct, criminal misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

## E.     Preservation of Rights of Action

### 1.     Maintenance of Causes of Action

Except as otherwise provided in this Plan, after the Effective Date, the Reorganized Debtor or the Claimant Trust will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action included in the Reorganized Debtor Assets or Claimant Trust Assets, as applicable, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case and, as the successors in interest to the Debtor and the Estate, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Causes of Action without notice to or approval from the Bankruptcy Court.

### 2.     Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including, without limitation, the Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtor or Claimant Trust, as applicable (including, without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action as a consequence of the confirmation, effectiveness, or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such Causes of Action have been expressly released in this Plan or any other Final Order (including, without limitation, the Confirmation Order). In addition, the right of the Reorganized Debtor or the Claimant Trust to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

## F. Injunction

Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective Related Persons, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether proof of such Claims or Equity Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective Related Persons, are permanently enjoined, on and after the Effective Date, with respect to such Claims and Equity Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or against property or interests in property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

The injunctions set forth herein shall extend to any successors of the Debtor, the Reorganized Debtor, and the Claimant Trust and their respective property and interests in property.

**No Entity may commence or pursue a claim or cause of action of any kind against any Protected Party that arose from or is related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice, that such claim or cause of action represents a colorable claim of bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Entity to bring such claim against any such Plan Party. As set forth in ARTICLE XI, the Bankruptcy Court will have sole jurisdiction to adjudicate any such claim for which approval of the Bankruptcy Court to commence or pursue has been granted.**

### G.    Term of Injunctions or Stays

Unless otherwise provided in this Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

## ARTICLE X.
## BINDING NATURE OF PLAN

On the Effective Date, and effective as of the Effective Date, the Plan, including, without limitation, the provisions in ARTICLE IX, will bind, and will be deemed binding upon, all Holders of Claims against and Equity Interests in the Debtor and such Holder's respective successors and assigns, to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder will receive or retain any property or interest in property under the Plan. All Claims and Debts shall be fixed and adjusted pursuant to this Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated thereby is to be recorded with respect to nay taxes of the kind specified in Bankruptcy Code section 1146(a).

## ARTICLE XI.
## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Reorganized Debtor, the Claimant Trust, and this Plan as legally permissible, including, without limitation, jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

- grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Reorganized Debtor shall pay Professionals in the ordinary course of business for any work performed after the Effective Date subject to the terms of this Plan and the Confirmation Order, and such payment shall not be subject to the approval of the Bankruptcy Court;

- resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect

to which the Debtor, Reorganized Debtor, or Claimant Trust may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, any dispute regarding whether a contract or lease is or was executory or expired;

- make any determination with respect to a claim or cause of action against a Plan Party as set forth in ARTICLE IX;

- resolve any claim or cause of action against an Exculpated Party or Plan Party arising from or related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, or the transactions in furtherance of the foregoing;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any sale, disposition, assignment or other transfer of the Reorganized Debtor Assets or Claimant Trust Assets, including any break-up compensation or expense reimbursement that may be requested by a purchaser thereof; *provided, however,* that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any borrowing or the incurrence of indebtedness, whether secured or unsecured by the Reorganized Debtor or Claimant Trust; *provided, however,* that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- resolve any issues related to any matters adjudicated in the Chapter 11 Case;

- ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of this Plan;

- decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, including approval of any settlements, compromises, or other resolutions as may be requested by the Debtor, the Reorganized Debtor, or the Litigation Trustee whether under Bankruptcy Rule 9019 or otherwise, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor or Litigation Trustee after the Effective Date, provided that the Reorganized Debtor and the Litigation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

- enter such orders as may be necessary or appropriate to implement, effectuate, or consummate the provisions of this Plan, the Plan Documents, and all other contracts,

instruments, releases, and other agreements or documents adopted in connection with this Plan, the Plan Documents, or the Disclosure Statement;

- resolve any cases, controversies, suits or disputes that may arise in connection with the implementation, effectiveness, consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

- issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, effectiveness, consummation, or enforcement of this Plan, except as otherwise provided in this Plan;

- enforce the terms and conditions of this Plan and the Confirmation Order;

- resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification, and other provisions contained herein and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

- enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

- resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents, or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

- enter an order concluding or closing the Chapter 11 Case after the Effective Date.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.    Payment of Statutory Fees and Filing of Reports

All outstanding Statutory Fees shall be paid on the Effective Date.  All such fees payable, and all such fees that become due and payable, after the Effective Date shall be paid by the Reorganized Debtor when due or as soon thereafter as practicable until the Chapter 11 Case is closed, converted, or dismissed.  The Claimant Trustee shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Claimant Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee.  The Reorganized Debtor shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

## B.     Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in this Plan:  (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order with the consent of the Committee, such consent not to be unreasonably withheld; and (b) after the entry of the Confirmation Order, the Debtor may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

## C.     Revocation of Plan

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File a subsequent chapter 11 plan with the consent of the Committee.  If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, then:  (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan, assumption of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

## D.     Entire Agreement

Except as otherwise described herein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

## E.     Closing of Chapter 11 Case

The Claimant Trustee shall, after the Effective Date and promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

## F.     Successors and Assigns

This Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns, including, without limitation, the Reorganized Debtor and the Claimant Trustee. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

### G.  Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs.  Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor, the Reorganized Debtor, the Claimant Trustee, or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (1) the Debtor, the Reorganized Debtor, or the Claimant Trustee with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Documents, nor anything contained in this Plan, will constitute an admission by the Debtor that any such contract or lease is or is not an executory contract or lease or that the Debtor, the Reorganized Debtor, the Claimant Trustee, or their respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtor, the Reorganized Debtor, or the Claimant Trustee under any executory or non-executory contract.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, under any executory or non-executory contract or lease.

If there is a dispute regarding whether a contract or lease is or was executory at the time of its assumption under this Plan, the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract.

### H.  Further Assurances

The Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.  On or before the Effective Date, the Debtor shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

### I.  Severability

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered

or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**J.      Service of Documents**

All notices, requests, and demands to or upon the Debtor, the Reorganized Debtor, or the Claimant Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Claimant Trust:**

[_____]
Telephone: [_____]
Facsimile:  [_____]
Attention:  [_____]

**If to the Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Telephone: [_____]
Facsimile:  [_____]
Attention:   James P. Seery, Jr.

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Attn:   Jeffrey N. Pomerantz, Esq.
         Ira D. Kharasch, Esq.
         Gregory V. Demo, Esq.

**If to the Reorganized Debtor:**

Highland Capital Management, L.P.
Telephone: [_____]
Facsimile:  [_____]
Attention:  James P. Seery, Jr.

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Attn:   Jeffrey N. Pomerantz, Esq.
          Ira D. Kharasch, Esq.
          Gregory V. Demo, Esq.

**K.      Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code**

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under this Plan; (ii) the maintenance or creation of security or any Lien as contemplated by this Plan; and (iii) assignments, sales, or transfers executed in connection with any transaction occurring under this Plan.

**L.      Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Texas, without giving effect to the principles of conflicts of law of such jurisdiction; *provided, however,* that corporate governance matters relating to the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trust, as applicable, shall be governed by the laws of the state of organization of the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trustee, as applicable.

**M.      Tax Reporting and Compliance**

The Debtor is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor is for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**N.      Exhibits and Schedules**

All exhibits and schedules to this Plan, if any, including the Exhibits and the Plan Documents, are incorporated and are a part of this Plan as if set forth in full herein.

O.    **Controlling Document**

In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control.    The provisions of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and of the Confirmation Order, on the other hand, shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and any provision of the Confirmation Order, on the other hand, that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan, the Disclosure Statement, and the Plan Documents, as applicable.

*[Remainder of Page Intentionally Blank]*

Dated:  September 21, 2020

Respectfully submitted,

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____
James P. Seery, Jr.
Chief Executive Officer and Chief
Restructuring Officer

Prepared by:

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
       ikharasch@pszjlaw.com
       gdemo@pszjlaw.com

and

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
       ZAnnable@HaywardFirm.com

*Counsel for the Debtor and Debtor-in-Possession*