EXHIBIT
SE9

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX  75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Debtor. | |

## DEBTOR'S NOTICE OF FILING OF PLAN SUPPLEMENT TO THE
## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P.

**PLEASE TAKE NOTICE** that Highland Capital Management, L.P., the above-

captioned debtor and debtor-in-possession (the "Debtor"), filed the *Debtor's Notice of Filing of*

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

*Supplement to Third Amended Plan of Reorganization of Highland Capital Management, L.P.*, on November 13, 2020 [Docket No. 1389] (the "Initial Supplement"). The Initial Supplement included Exhibits A-H to the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.*, dated November 13, 2020 [Docket No. 1383] (the "Third Amended Plan").

**PLEASE TAKE NOTICE** that on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (the "Plan").

**PLEASE TAKE NOTICE** that Exhibits A-H to the Third Amended Plan are Exhibits A-H to the Plan (as such exhibits may be amended as set forth herein).

**PLEASE TAKE NOTICE** that the Debtor hereby files the documents included herewith as **Exhibits I-K** (collectively, the "Plan Supplement") supplementing the Plan.

> **Exhibit I**:     Schedule of Contracts and Leases to Be Assumed
>
> **Exhibit J**:     Amended Form of Senior Employee Stipulation
>
> **Exhibit K**:     Redline of Form of Senior Employee Stipulation

**PLEASE TAKE FURTHER NOTICE** that the Debtor anticipates filing amended versions of certain of the Exhibits to the Plan, including amendments to the Form of Claimant Trust Agreement (Exhibit A) and the Form of Litigation Sub-Trust Agreement (Exhibit D).

**PLEASE TAKE FURTHER NOTICE** that this *Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Notice of Plan Supplement") is being served on parties-in-interest without the Plan Supplement attached. Any party-in-interest wishing to obtain copies of the Plan or the Plan Supplement may do so by (i) contacting the Debtor's Solicitation Agent, KCC, at (i) 1-877-573-3984 (toll free) or 1-310-751-1829 (if international) or by email at HighlandInfo@kccllc.com, or (ii) viewing such

2

documents by accessing them online at https://kccllc.net/HCMLP.  The documents are also available on the Court's website: www.txnb.uscourts.gov.  Please note that a PACER password and login are needed to access documents on the Court's website.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

DOCS_NY:41792.2 36027/002

Dated: December 18, 2020.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:  jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

4

# EXHIBIT I

## Schedule of Contracts and Leases to Be Assumed

1.      Advisory Services Agreement, dated November 21, 2011, effective June 20, 2011, by and between Carey International, Inc., and Highland Capital Management, L.P.

2.      Amended and Restated Advisory Services Agreement, dated March 4, 2013, by and between Trussway Holdings, Inc., and Highland Capital Management, L.P.

3.      Reference Portfolio Management Agreement, dated March 4, 2004, by and between Highland Capital Management, L.P., and Citibank N.A.

4.      Advisory Services Agreement, dated May 25, 2011, by and between CCS Medical, Inc., and Highland Capital Management, L.P.

5.      Amended and Restated Advisory Services Agreement, dated February 28, 2013, by and between Cornerstone Healthcare Group Holding, Inc., and Highland Capital Management, L.P.

6.      Prime Brokerage Agreement by and between Jefferies LLC and Highland Capital Management, L.P., dated May 24, 2013.

7.      Amended and Restated Shared Services Agreement, dated August 21, 2015, by and between Highland Capital Management, L.P., and Falcon E&P Opportunities GP, LLC.

8.      Amended and Restated Administrative Services Agreement, effective as of August 21, 2015, by and between Highland Capital Management, L.P., and Petrocap Partners II GP, LLC.

9.      Office Lease, between Crescent Investors, L.P., and Highland Capital Management, L.P.

10.     Paylocity Corporation Services Agreement, between Highland Capital Management, L.P., and Paylocity Corporation, dated November 19, 2012.

11.     Electronic Trading Services Agreement, between SunTrust Robinson Humphrey Inc., and Highland Capital Management, L.P., dated February 6, 2019.

12.     Letter Agreement, between FTI Consulting, Inc., and Highland Capital Management, L.P., dated November 19, 2018.

13.     Administrative Services Agreement, dated January 1, 2018, between Highland Capital Management, L.P., and Liberty Life Assurance Company of Boston.

14.     Electronic Communications:   Customer Authorization & Indemnification, between Highland Capital Management, L.P., and The Bank of New York Mellon Corporation, dated August 9, 2016.

15.     Letter Agreement, dated August 9, 2016, Electronic Access Terms and Conditions, by and between The Bank of New York Mellon Trust Company, N.A., and Highland Capital Management, L.P.

16.     Shared Services Agreement by and between Highland HCF Advisor, Ltd., and Highland Capital Management, L.P., dated effective October 27, 2017.

17.     Sub-Advisory Agreement, by and between Highland HCF Advisors, Ltd., and Highland Capital Management, dated effective October 27, 2017.

18. Collateral Management Agreement, dated November 2, 2006, by and between Highland Credit Opportunities CDO Ltd. and Highland Capital Management, L.P.

19. Management Agreement, dated November 15, 2007, between Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Restoration Capital Partners Master L.P., Highland Restoration Capital Partners GP, LLC, and Highland Capital Management, L.P.

20. Investment Management Agreement, between Highland Capital Multi-Strategy Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

21. Investment Management Agreement, between Highland Capital Multi-Strategy Master Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

22. Management Agreement, dated August 22, 2007, between and among Highland Capital Management, L.P., and Walkers Fund Services Limited, as trustee of Highland Credit Opportunities Japanese Unit Trust.

23. Third Amended and Restated Investment Management Agreement, by and among Highland Multi Strategy Credit Fund, Ltd., Highland Multi Strategy Credit Fund, L.P., and Highland Capital Management, L.P., dated November 1, 2013.

24. Investment Management Agreement, dated March 31, 2015, by and among Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., and Highland Capital Management, L.P.

25. Amended and Restated Investment Management Agreement, dated February 27, 2017, by and among Highland Prometheus Master Fund L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland SunBridge GP, LLC, and Highland Capital Management, L.P.

26. Servicing Agreement, dated December 20, 2007, by and among Greenbriar CLO, Ltd., and Highland Capital Management, L.P.

27. Investment Management Agreement, dated November 1, 2007, by and between Longhorn Credit Funding, LLC, and Highland Capital Management, L.P. (as amended)

28. Reference Portfolio Management Agreement, dated August 1, 2016, by and between Highland Capital Management, L.P., and Valhalla CLO, Ltd.

29. Collateral Servicing Agreement, dated December 20, 2006, by and among Highland Park CDO I, Ltd., and Highland Capital Management, L.P.

30. Portfolio Management Agreement, dated March 15, 2005, by and among Southfork CLO Ltd., and Highland Capital Management, L.P.

31. Amended and Restated Portfolio Management Agreement, dated November 30, 2005, by and among Jaspar CLO Ltd., and Highland Capital Management, L.P.

32. Servicing Agreement, dated May 31, 2007, by and among Westchester CLO, Ltd., and Highland Capital Management, L.P.

33. Servicing Agreement, dated May 10, 2006, by and among Rockwall CDO Ltd. and Highland Capital Management, L.P. (as amended)

34. Portfolio Management Agreement, dated December 8, 2005, by and between Liberty CLO, Ltd., and Highland Capital Management, L.P.

35. Servicing Agreement, dated March 27, 2008, by and among Aberdeen Loan Funding, Ltd., and Highland Capital Management, L.P.

36. Servicing Agreement, dated May 9, 2007, by and among Rockwall CDO II Ltd. and Highland Capital Management, L.P.

37. Collateral Management Agreement, by and between, Highland Loan Funding V Ltd. and Highland Capital Management, L.P., dated August 1, 2001.

38. Collateral Management Agreement, dated August 18, 1999, by and between Highland Legacy Limited and Highland Capital Management, L.P.

39. Servicing Agreement, dated November 30, 2006, by and among Grayson CLO Ltd., and Highland Capital Management, L.P. (as amended)

40. Servicing Agreement, dated October 25, 2007, by and among Stratford CLO Ltd., and Highland Capital Management, L.P.

41. Servicing Agreement, dated August 3, 2006, by and among Red River CLO Ltd., and Highland Capital Management, L.P. (as amended)

42. Servicing Agreement, dated December 21, 2006, by and among Brentwood CLO, Ltd., and Highland Capital Management, L.P.

43. Servicing Agreement, dated March 13, 2007, by and among Eastland CLO Ltd., and Highland Capital Management, L.P.

44. Portfolio Management, Agreement, dated October 13, 2005, by and among Gleneagles CLO, Ltd., and Highland Capital Management, L.P.

45. AT&T Managed Internet Service, between Highland Capital Management, L.P. and AT&T Corp., dated February 24, 2015.

46. ViaWest, Master Service Agreement, dated October 3, 2011, between Highland Capital Management, L.P. and ViaWest

# EXHIBIT J

## SENIOR EMPLOYEE STIPULATION AND TOLLING
## AGREEMENT EXTENDING STATUTES OF LIMITATION

This stipulation (the "Stipulation") is entered into as of [_____], by and between **[EMPLOYEE NAME]** (the "Senior Employee") and Highland Capital Management, L.P. (the "Debtor"). The Debtor and the Senior Employee are individually referred to as a "Party" and collectively as the "Parties".

## **RECITALS**

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11 (the "Chapter 11 Case"):

WHEREAS, on October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Chapter 11 Case;

WHEREAS, on November 13, 2020, the Debtor filed the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"):[1]

WHEREAS, prior to and during the course of the Chapter 11 Case, the Senior Employee was employed by the Debtor as its [_____] and in such role provided services to the Debtor;

WHEREAS, the Senior Employee is owed for his services (i) certain amounts that were due to be paid to the Senior Employee for the partial year of 2018 in installments due on February 28, 2020 and August 31, 2020; and (ii) certain amounts that were due to the Senior Employee in respect of the 2017 Deferred Award that vested after three years on May 31, 2020 ((i) and (ii), collectively, the "Earned Amounts"):

WHEREAS, the Committee objected to the Senior Employee receiving the Earned Amounts during the Chapter 11 Case and the Earned Amounts, although earned, was not paid;

WHEREAS, as of the date hereof, the total Earned Amounts through and including the date hereof owed to the Senior Employee is $ [_____];

WHEREAS, the Senior Employee may have other prepetition and postpetition Claims against the Debtor in addition to the Earned Amounts (the "Other Employee Claims")[2]:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2] For the avoidance of doubt, the "Other Employee Claims" shall include all prepetition and postpetition Claims of the Senior Employee except for the Earned Amounts.

1

WHEREAS, the Committee has alleged that certain causes of action against the Senior Employee may exist, which causes of action have been retained pursuant to the Plan (the "Causes of Action"):

WHEREAS, the Plan provides for the release of such Causes of Action against the Senior Employee (the "Employee Release"):

WHEREAS, the Employee Release is conditioned on the Senior Employee executing this Stipulation on or prior to the Effective Date of the Plan and reducing his Earned Amounts as set forth herein;

WHEREAS, the Plan provides for the creation of the Claimant Trust and Litigation Sub-Trust and the appointment of the Claimant Trust Oversight Committee (the "CTOC") to oversee such entities;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, each of the Parties stipulates and agrees as follows:

1.     Covenant Not to Sue. In consideration of the Senior Employee's agreement to toll the statutes of limitation with respect to any Causes of Action that can be asserted against him and to waive a portion of the Earned Amounts otherwise due to the Senior Employee, the Debtor and any of its successors or assigns, including the Claimant Trust or the Litigation Sub-Trust (collectively, the "HCMLP Parties") agree not to initiate or commence any lawsuit, action or proceeding for the purpose of prosecuting any Causes of Action against the Senior Employee from the date of this Stipulation until the earlier of (a) thirty calendar days after the Notice Date and (b) the Dissolution Date (each as defined below) (such date, the "Termination Date"). This Stipulation shall expire upon the Termination Date and shall thereafter be of no further force and effect; *provided, however,* that the termination of this Stipulation shall not affect the treatment of the Earned Amounts set forth in Section 5 hereof or in the Plan.

2.     Non-Compliance: Vesting.

a.     As set forth in the Plan, the Senior Employee acknowledges and agrees that the Employee Release will be deemed null and void and of no force and effect (1) if there is more than one member of the CTOC who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full CTOC) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

(1)     sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

(2)     has taken any action that, impairs or harms the value of the

Claimant Trust Assets or the Reorganized Debtor Assets,

(3)    has violated the confidentiality provisions of Section 4 below, or

(4)    (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (i) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (ii) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing. If such determination under this Section 2a is made, the Claimant Trustee will deliver a notice of non-compliance with the Plan (the "Notice") to the Senior Employee. Such Notice will be effective when deemed delivered pursuant to Section 8.h hereof (the "Notice Date").

b.    Notwithstanding anything herein to the contrary, Employee Release will vest and all Causes of Action that may or could be brought against the Senior Employee will be indefeasibly released solely to the extent set forth in Article IX.D of the Plan so long as the Notice Date does not occur on or before the date that the Claimant Trust is dissolved (such date, the "Dissolution Date").

c.    Notwithstanding anything to the contrary in this Stipulation or any other document, Senior Employee expressly reserves the right to take all actions necessary to pursue enforcement and payment of the Other Employee Claims, and such actions shall not violate the terms of this Stipulation; provided, that, for the avoidance of doubt, nothing in this Stipulation shall prejudice the rights of the Debtor, or any of the Debtor's successor in interests under the Plan, to object to or otherwise challenge any Other Employee Claims. Additionally, this Agreement does not affect or impair Senior Employee's rights, if any, to seek indemnification from any party, including, without limitation, the Debtor, any HCMLP Parties, or any other affiliates thereof nor does it affect or impair the right of the Debtor, or any of the Debtor's successor in interests under the Plan, to challenge such request.

3.    Tolling of Statutes of Limitation. In consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that the statute of limitation applicable to any Cause of Action is hereby tolled as of, and extended from, the date of this Stipulation through and including the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause of Action that may be brought by the HCMLP Parties against the Senior Employee. The Senior Employee acknowledges that he will be estopped from arguing that this Stipulation is ineffective to extend the time within which the HCMLP Parties must commence an action to pursue any Cause of Action.

4.    Confidentiality. In further consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that, in addition to existing obligations to maintain all business sensitive information concerning the HCMLP Parties in strictest confidence, each Senior Employee further agrees to keep all discussions, information and observations including, but not limited to, attorney-client privileged or work product information (collectively "Confidential Information") relating to the activities or

planned activities of the HCMLP Parties strictly confidential. Each Senior Employee covenants and represents that it will not discuss such Confidential Information with anyone, other than the Senior Employee's personal attorney, the Claimant Trustee, or its respective representatives.

5. <u>Earned Amounts</u>.

a. The Senior Employee has agreed to forfeit a percentage of his in consideration for the Employee Release and acknowledges that such agreement is an integral part of this Stipulation. The Senior Employee hereby agrees that (i) the Earned Amounts will be treated as an Allowed Class 7 (Convenience Claim) under the Plan and, to the extent required, will reduce his Earned Amounts as required to qualify for such treatment, (ii) the Senior Employee will receive the treatment provided to other Allowed Class 7 (Convenience Claims), (iii) the Earned Amounts will be further reduced by 40% (the "<u>Reduced Amount</u>"), and (iv) the Reduced Amount will be forever waived and released. Except as set forth herein, nothing herein will prejudice or otherwise impact any Other Employee Claim, or prevent the Senior Employee from prosecuting, pursuing, or enforcing any Other Employee Claim.

b. For the avoidance of doubt, although the Employee Release can be nullified as set forth in Section 2, any such nullification will have no effect on the treatment of the Senior Employee's Earned Amounts pursuant to this Section 5.

6. <u>Effective Date</u>. The Parties acknowledge and agree that this Stipulation and the Parties' obligations hereunder are conditioned in all respects on the approval of the Plan by the Bankruptcy Court and the occurrence of the Effective Date of the Plan. If, for any reason, the Plan is not approved by the Bankruptcy Court or the Effective Date does not occur, this Stipulation will be null and void and of no force and effect.

7. <u>Plan Support</u>. The Senior Employee agrees that he will use commercially reasonable efforts to assist the Debtor in confirmation of the Plan and vote any Claims in favor of the Plan.

8. <u>Miscellaneous</u>.

a. <u>Counterparts</u>. This Stipulation may be signed in counterparts and such signatures may be delivered by facsimile or other electronic means.

b. <u>Binding Effect</u>. This Stipulation shall inure to the benefit of, and be binding upon, any and all successors-in-interests, assigns, and legal representatives, of any Party.

c. <u>Authority</u>. Each Party to this Stipulation and each person executing this document on behalf of any Party to this Stipulation warrants and represents that he, she, or it has the power and authority to execute, deliver and perform its obligations under this Stipulation.

d. <u>Entire Agreement</u>. This Stipulation sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions. This Stipulation may only be amended by an agreement in writing signed by the Parties.

        e.     <u>No Waiver and Reservation of Rights</u>. Except as otherwise provided herein, nothing in this Stipulation shall be, or deemed to be, a waiver of any rights, remedies, or privileges of any of the Parties. Except as otherwise provided herein, this Stipulation is without prejudice to any Party's rights, privileges and remedies under applicable law, whether at law or in equity, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

        f.     <u>No Admission of Liability</u>. The Parties acknowledge that there is a bona fide dispute with respect to the Causes of Action. Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Senior Employee and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Senior Employee.

        g.     <u>No Waiver If Breach</u>. The Parties agree that no breach of any provision hereof can be waived except in writing. The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

        h.     <u>Notice</u>. Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered by email, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address as may be subsequently specified in writing by any Party and delivered to all other Parties pursuant to this Section:

**Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

With a copy to:

**Attorneys for Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

**HCMLP**

Highland Capital Management, L.P
[_____]
[_____]
Attention: James P. Seery, Jr.

Telephone No.: [_____]
Email: [_____]

With a copy to:

**Attorneys for HCMLP**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

       i.    <u>Advice of Counsel</u>. Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (b) executed this Stipulation upon the advice of such counsel; (c) read this Stipulation, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Stipulation and all the terms and conditions contained herein explained by independent counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

       j.    <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

       k.    <u>Governing Law: Venue</u>. The Parties agree that this Agreement will be governed by and will be construed according to the laws of the State of Texas without regard to conflict-of-law principles. Each of the Parties hereby submits to the jurisdiction of the Bankruptcy Court with respect to any disputes arising from or out of this Agreement.

*[Remainder of Page Blank]*

**IT IS HEREBY AGREED.**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____

Name: _____

Its: _____

**SENIOR EMPLOYEE**

By: _____

Name: _____

Its: _____

# **EXHIBIT K**

## SENIOR EMPLOYEE STIPULATION AND TOLLING
## AGREEMENT EXTENDING STATUTES OF LIMITATION

This stipulation (the "Stipulation") is entered into as of [_____], by and between **[EMPLOYEE NAME]** (the "Senior Employee") and Highland Capital Management, L.P. (the "Debtor"). The Debtor and the Senior Employee are individually referred to as a "Party" and collectively as the "Parties".

### RECITALS

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11 (the "Chapter 11 Case");:

WHEREAS, on October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Chapter 11 Case;

WHEREAS, on November 13, 2020, the Debtor filed the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan");:[1]

WHEREAS, prior to and during the course of the Chapter 11 Case, the Senior Employee was employed by the Debtor as its [_____] and in such role provided services to the Debtor;

WHEREAS, the Senior Employee ~~was compensated~~is owed for his services ~~in part through~~(i) certain ~~deferred compensation~~amounts that ~~was required~~were due to be paid to the Senior Employee ~~on [_____] (the "Deferred Compensation");~~ for the partial year of 2018 in installments due on February 28, 2020 and August 31, 2020; and (ii) certain amounts that were due to the Senior Employee in respect of the 2017 Deferred Award that vested after three years on May 31, 2020 ((i) and (ii), collectively, the "Earned Amounts"):

WHEREAS, the Committee objected to the Senior Employee receiving the ~~Deferred Compensation~~Earned Amounts during the Chapter 11 Case and the ~~Deferred Compensation~~Earned Amounts, although earned, was not paid;

WHEREAS, as of the date hereof, the total ~~Deferred Compensation~~Earned Amounts through and including the date hereof owed to the Senior Employee is $ [_____];

WHEREAS, the Senior Employee may have other prepetition and postpetition Claims against the Debtor in addition to the ~~Deferred Compensation~~Earned Amounts (the "Other

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Employee Claims”);.[2]

WHEREAS, the Committee has alleged that certain causes of action against the Senior Employee may exist, which causes of action have been retained pursuant to the Plan (the “Causes of Action”);.

WHEREAS, the Plan provides for the release of such Causes of Action against the Senior Employee (the “Employee Release”);.

WHEREAS, the Employee Release is conditioned on the Senior Employee executing this Stipulation on or prior to the Effective Date of the Plan and reducing his ~~Deferred Compensation~~Earned Amounts as set forth herein;

WHEREAS, the Plan provides for the creation of the Claimant Trust and Litigation Sub-Trust and the appointment of the Claimant Trust Oversight Committee (the “CTOC”) to oversee such entities;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, each of the Parties stipulates and agrees as follows:

1. Covenant Not to Sue. In consideration of the Senior Employee’s agreement to toll the statutes of limitation with respect to any Causes of Action that can be asserted against him and to waive a portion of the ~~Deferred Compensation~~Earned Amounts otherwise due to the Senior Employee, the Debtor and any of its successors or assigns, including the Claimant Trust or the Litigation Sub-Trust (collectively, the “HCMLP Parties”) agree not to initiate or commence any lawsuit, action or proceeding for the purpose of prosecuting any Causes of Action against the Senior Employee from the date of this Stipulation until the earlier of (a) thirty calendar days after the Notice Date and (b) the Dissolution Date (each as defined below) (such date, the “Termination Date”). This Stipulation shall expire upon the Termination Date and shall thereafter be of no further force and effect; *provided, however,* that the termination of this Stipulation shall not affect the treatment of the ~~Deferred Compensation~~Earned Amounts set forth in Section 5 hereof or in the Plan.

2. Non-Compliance;; Vesting.

a. As set forth in the Plan, the Senior Employee acknowledges and agrees that the Employee Release will be deemed null and void and of no force and effect (1) if there is more than one member of the CTOC who does not represent entities holding a Disputed or Allowed Claim (the “Independent Members”), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full CTOC) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

(1) sues, attempts to sue, or threatens or works with or assists

---

[2] For the avoidance of doubt, the “Other Employee Claims” shall include all prepetition and postpetition Claims of the Senior Employee except for the Earned Amounts.

any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

(2)     has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets,

(3)     has violated the confidentiality provisions of Section 4 below, or

(4)     (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (i) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (ii) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing. If such determination under this Section 2a is made, the Claimant Trustee will deliver a notice of non-compliance with the Plan (the "Notice") to the Senior Employee.  Such Notice will be effective when deemed delivered pursuant to Section 8.h hereof (the "Notice Date").

b.     Notwithstanding anything herein to the contrary, Employee Release will vest and all Causes of Action that may or could be brought against the Senior Employee will be indefeasibly released solely to the extent set forth in Article IX.D of the Plan so long as the Notice Date does not occur on or before the date that the Claimant Trust is dissolved (such date, the "Dissolution Date").

c.     Notwithstanding anything to the contrary in this Stipulation or any other document, Senior Employee expressly reserves the right to take all actions necessary to pursue enforcement and payment of the Other Employee Claims, and such actions shall not violate the terms of this Stipulation; provided, that, for the avoidance of doubt, nothing in this Stipulation shall prejudice the rights of the Debtor, or any of the Debtor's successor in interests under the Plan, to object to or otherwise challenge any Other Employee Claims.  Additionally, this Agreement does not affect or impair Senior Employee's rights, if any, to seek indemnification from any party, including, without limitation, the Debtor, any HCMLP Parties, or any other affiliates thereof nor does it affect or impair the right of the Debtor, or any of the Debtor's successor in interests under the Plan, to challenge such request.

3.     Tolling of Statutes of Limitation.  In consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that the statute of limitation applicable to any Cause of Action is hereby tolled as of, and extended from, the date of this Stipulation through and including the Termination Date (the "Tolling Period").  The Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause of Action that may be brought by the HCMLP Parties against the Senior Employee.  The Senior Employee acknowledges that he will be estopped from arguing that this Stipulation is ineffective to extend the time within which the HCMLP Parties must commence an action to pursue any Cause of Action.

4.     Confidentiality.     In further consideration of the HCMLP Parties'

"Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that, in addition to existing obligations to maintain all business sensitive information concerning the HCMLP Parties in strictest confidence, each Senior Employee further agrees to keep all discussions, information and observations including, but not limited to, attorney-client privileged or work product information (collectively "<u>Confidential Information</u>") relating to the activities or <u>planned</u> activities of the HCMLP Parties strictly confidential. Each Senior Employee covenants and represents that it will not discuss such Confidential Information with anyone, other than the Senior Employee's personal attorney, the Claimant Trustee, or its respective representatives.

5. ~~Deferred Compensation.~~ <u>Earned Amounts.</u>

a. The Senior Employee has agreed to forfeit a percentage of his ~~Deferred Compensation~~ in consideration for the Employee Release and acknowledges that such agreement is an integral part of this Stipulation. The Senior Employee hereby agrees that (i) the ~~Deferred Compensation~~<u>Earned Amounts</u> will be treated as an Allowed Class 7 (Convenience Claim) under the Plan and, to the extent required, will reduce his ~~Deferred Compensation~~<u>Earned Amounts</u> as required to qualify for such treatment, (ii) the Senior Employee will receive the treatment provided to other Allowed Class 7 (Convenience Claims), (iii) the ~~Deferred Compensation~~<u>Earned Amounts</u> will be further reduced by 40% (the "<u>Reduced Amount</u>"), and (iv) the Reduced Amount will be forever waived and released. Except as set forth herein, nothing herein will prejudice or otherwise impact any Other Employee Claim, or prevent the Senior Employee from prosecuting ~~or,~~ pursuing<u>, or enforcing</u> any Other Employee Claim.

b. For the avoidance of doubt, although the Employee Release can be nullified as set forth in Section ~~2,~~<u>2,</u> any such nullification will have no effect on the treatment of the Senior Employee's ~~Deferred Compensation~~<u>Earned Amounts</u> pursuant to this Section ~~5.~~<u>5.</u>

6. <u>Effective Date</u>. The Parties acknowledge and agree that this Stipulation and the Parties' obligations hereunder are conditioned in all respects on the approval of the Plan by the Bankruptcy Court and the occurrence of the Effective Date of the Plan. If, for any reason, the Plan is not approved by the Bankruptcy Court or the Effective Date does not occur, this Stipulation will be null and void and of no force and effect.

7. <u>Plan Support</u>. The Senior Employee agrees that he will use commercially reasonable efforts to assist the Debtor in confirmation of the Plan and vote any Claims in favor of the Plan.

8. <u>Miscellaneous</u>.

a. <u>Counterparts</u>. This Stipulation may be signed in counterparts and such signatures may be delivered by facsimile or other electronic means.

b. <u>Binding Effect</u>. This Stipulation shall inure to the benefit of, and be binding upon, any and all successors-in-interests, assigns, and legal representatives, of any Party.

c. <u>Authority</u>. Each Party to this Stipulation and each person executing this document on behalf of any Party to this Stipulation warrants and represents that

he, she, or it has the power and authority to execute, deliver and perform its obligations under this Stipulation.

        d.    <u>Entire Agreement</u>.  This Stipulation sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions.  This Stipulation may only be amended by an agreement in writing signed by the Parties.

        e.    <u>No Waiver and Reservation of Rights</u>.  Except as otherwise provided herein, nothing in this Stipulation shall be, or deemed to be, a waiver of any rights, remedies, or privileges of any of the Parties.  Except as otherwise provided herein, this Stipulation is without prejudice to any Party's rights, privileges and remedies under applicable law, whether at law or in equity, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

        f.    <u>No Admission of Liability</u>.  The Parties acknowledge that there is a bona fide dispute with respect to the Causes of Action.  Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Senior Employee and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Senior Employee.

        g.    <u>No Waiver If Breach</u>.  The Parties agree that no breach of any provision hereof can be waived except in writing.  The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

        h.    <u>Notice</u>.  Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered by email, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address as may be subsequently specified in writing by any Party and delivered to all other Parties pursuant to this Section:

~~**Senior Employee**~~           ~~**HCMLP**~~

~~[_____]~~           ~~Highland Capital Management, L.P.~~
                        ~~[_____]~~

~~[_____]~~

~~[_____]~~           ~~[_____]~~
                        ~~Attention:  James P. Seery, Jr.~~

~~Email: [_____]~~       ~~Telephone No.: [_____]~~
                        ~~E-mail: [_____]~~

        i.

**Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

With a copy to:

**Attorneys for Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

**HCMLP**

Highland Capital Management, L.P
[_____]
[_____]
Attention: James P. Seery, Jr.
Telephone No.: [_____]
Email: [_____]

With a copy to:

**Attorneys for HCMLP**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

       j.     <u>Advice of Counsel</u>.  Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (b) executed this Stipulation upon the advice of such counsel; (c) read this Stipulation, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Stipulation and all the terms and conditions contained herein explained by independent counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

       k.     <u>Severability</u>.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any

such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

        l.    <u>Governing Law; Venue</u>. The Parties agree that this Agreement will be governed by and will be construed according to the laws of the State of Texas without regard to conflict-of-law principles. Each of the Parties hereby submits to the jurisdiction of the Bankruptcy Court with respect to any disputes arising from or out of this Agreement.

*[Remainder of Page Blank]*

**IT IS HEREBY AGREED.**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____

Name: _____

Its: _____


**SENIOR EMPLOYEE**

By: _____

Name: _____

Its: _____

Document comparison by Workshare 9.5 on Friday, December 18, 2020 6:30:29 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/41454/6 |
| Description | DOCS_NY-#41454-v6-Highland_-_Senior_Employee_Stipulation |
| Document 2 ID | PowerDocs://DOCS_NY/41454/10 |
| Description | DOCS_NY-#41454-v10-Highland_-_Senior_Employee_Stipulation |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 71 |
| Deletions | 44 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 115 |