# **EXHIBIT B**

## OBJECTION SUMMARY[1]

| Objecting Party | Objection | Response |
|---|---|---|
| U.S. Trustee | The release is overbroad and releases non-debtors in violation of Pacific Lumber | The Debtor Release is not overly broad and only releases claims owned (either directly or derivatively) by the Debtor and the Estate on behalf of the Debtor and its successors, which include the CT and LST only in their capacity as successors. No third party is implicated by the Debtor Release and Pacific Lumber is inapplicable. Section 1123(b)(3) expressly permits a debtor to settle and release its own claims. |
| | The exculpation is overbroad and releases non-debtors in violation of Pacific Lumber | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents. The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |
| Internal Revenue Service | Plan does not state that the Debtor will pay IRS priority tax claims on the Effective Date. | The Plan provides that Allowed Priority Claims would be paid on the Initial Distribution Date. In response to this objection, the Plan has been amended to provide for treatment of priority claims in accordance with 1129(a)(9)(C) |
| | The plan does not provide for statutory interest on the IRS claims under Section 511 | Plan has been amended to provide for treatment of priority claims in accordance with 1129(a)(9)(C) |
| | The IRS asserts that the Debtor failed to file tax Form 720 returns related to its self-insured health plan for 2014, 2016, and 2017 and requests that the Plan be amended to include certain "Default Provisions" that, among other things, allow the IRS to declare defaults, demand that the "entire imposed liability" become due and payable, and the ability to collect unpaid liabilities upon 14 days' notice of demand for payment | The Debtor has provided all applicable tax forms and the proposed Default Provisions are unwarranted. The Debtor would agree, however, to modified Default Provisions.<br><br>The IRS' proposed Default Provisions graft the IRS' potential non-bankruptcy and arguably additional rights and remedies into the Plan, including the IRS' unilateral rights to declare defaults, impose successor liability, and to require payments of "entire imposed liabilities" upon 14 days' notice of demand. The Debtor does not think it is appropriate for the Plan or Confirmation Order to dictate these rights and they should be determined under applicable non bankruptcy law. |

---

[1] The following are summaries only. Parties should read the entirety of the Debtor's Reply.

| **Objecting Party** | **Objection** | **Response** |
|---|---|---|
| Dallas County, City of Allen, Allen ISD, City of Richardson, and Kaufman County | Plan does not appropriately apply for treatment of postpetition and effective date interest on tax claims, Plan does not provide for continued security interest and Plan does not provide that failure to pay tax claims is a default under the plan | The Debtor is currently negotiating language with these taxing authorities to resolve the issues raised in their objection through insertion of language in the Confirmation Order in order to consensually resolve this objection. |
| Jack Yang and Brad Borud (joined by Deadman, Travers, Kauffman [D.I. 1674; 1679]) | Subordinated Claims are defined overly broad as not just claims subordinated under § 510 but also claims arising from Class A/B/C Limited Partnership interests in a way that impermissibly broadens § 510(b) | The Plan has been amended to clarify that it does not provide for categorical subordination of claims relating to partnership interests to address this objection |
| Patrick Daugherty | The Disputed Claims Reserve allows the Debtor to estimate claims for distribution, which provides for impermissible disparate treatment under § 1123(a)(4) | The Plan does not provide for disparate treatment of claims. The Plan provides for a mechanism for the Debtor or Mr. Daugherty (or any creditor) to file a motion to estimate any Disputed Claim for purposes of establishing the amount of the Disputed Claims Reserve pending the allowance or disallowance of his claim. Neither Daugherty or any other creditor is entitled to a reserve for the full amount of a disputed claim. This procedure does not constitute disparate treatment of claims under section 1123(a)(4) |
| Dugaboy Investment Trust and Get Good Investment Trust | Art. III.J allows for subordination under § 510 without the requirement for a hearing, which is impermissible | Section III.J of the Plan has been amended to clarify that subordination will occur after notice and a hearing and any order by the Bankruptcy Court. |
| | The Plan is not complete as it doesn't list final documents governing the claimant trust/litigation trust/reorg debtor, retained causes of action, executory contracts | Dugaboy's reference to documents still under negotiation with the Committee was a vestige from a prior draft. Three Plan Supplements have been filed that contain those documents. An additional Plan Supplement is being filed concurrently herewith. |
| | Plan violates 1129(a)(7) because it doesn't provide the value that would be received in a chapter 7 liquidation because: (i) Reorg Debtor has no affirmative obligation to report to holders of beneficial interests in the Claimant Trust, (ii) Claimant Trustee is only liable for fraud, willful misconduct, or gross negligence and not breach of fiduciary duty; and (iii) a chapter 7 trustee would need to get court authority to sell assets and no such requirement exists for Claimant Trustee [ | The Liquidation Analysis provides that creditors will receive distributions under the Plan that are not less than the value they would receive under a hypothetical distribution under chapter 7. This objection does not contest the conclusions set forth in the Liquidation Analysis.<br><br>The Plan, consistent with other plans including ones confirmed in this court, properly allows the Claimant Trustee and Reorganized Debtor to sell assets post-confirmation without the need for court approval. The standard of liability is also appropriate and consistent with confirmed chapter 11 plans. Moreover, a chapter 7 trustee would enjoy qualified immunity for its actions. |

| **Objecting Party** | **Objection** | **Response** |
|---|---|---|
| | Exculpation provisions are overbroad as (i) they do not relate to a specific time period (just apply from Petition Date through implementation), especially when read in connection with the exculpation provision in the Claimant Trust Agreement, (ii) cover non-Debtors, and (iii) violates Pacific Lumber | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents. The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. The CTA includes standard language limiting liability and is not an improper exculpation. |
| | Release provision (i) is overbroad and releases claims not related to the BK; (ii) waives future claims of the Claimant Trust | The Debtor Release is not overly broad and only releases claims owned (either directly or derivatively) by the Debtor and the Estate on behalf of the Debtor and its successors, which include the CT and the LST only as successors to the Debtor, not any claims the CT or LST might subsequently have of their own. No third party is implicated by the Debtor Release and Pacific Lumber is inapplicable. Section 1123(b)(3) expressly permits a debtor to settle and release its own claims. |
| | The injunction provisions in Article IX.F are overbroad and arguably violates Pacific Lumber as an improper release and In re Zale and Thru, which prevents a non-debtor injunction if it effectively discharges a no debtor | The Injunction Provisions have been modified to address these concerns. The Injunction Provision, as modified, merely implements the Plan's discharge, release, and Exculpation Provisions by enjoining the Enjoined Parties from commencing or maintaining any actions to interfere with the implementation or consummation of the Plan. Implementation and consummation are words used in the Code and have meanings known by practitioners and the Court. The injunction is only applicable to the Debtor and its successors, the Reorganized Debtor, the Claimant Trust and the Litigation Sub-Trust, or against the property of the Debtor, and its successors, the Reorganized Debtor, the Claimant Trust and the Litigation Sub-Trust – none of whom are non-debtor third parties as the debtor has eliminated the Independent Directors from these provisions. |
| | The release provided to released parties does not meet the standards for a release as there is no meaningful contribution to the BK and is not necessary to protect non-debtor entities that are essentially the debtor | Section 1123(b)(3) expressly permits a debtor to settle and release its own claims. The consideration provided by the Released Parties will be presented. The Released Parties are only being released by the Debtor and its successors. |

| Objecting Party | Objection | Response |
|---|---|---|
| | The "channeling injunction" and retention of jurisdiction is improper because it expands the BK court's jurisdiction to actions not arising under, related to, or arising in the BK. This is especially so since there is no post-effective date Reorganized Debtor | The Gatekeeper Provision is a legitimate exercise of the Court's jurisdiction, does not (as modified) implicate the Court's post-effective date jurisdiction as the Court will initially, only be determining if a claim is colorable. Furthermore, as a liquidating plan, the court has – under applicable law – jurisdiction because all acts taken by the trust are related to implementing and effectuating the Plan. Furthermore, the Gatekeeper Provision is supported by the Barton Doctrine (which requires that claims against court-appointed and court-approved fiduciaries be sanctioned by the approving or appointing court) and by the All Writs Act, which permits courts to place limits on the ability of vexatious litigants to continue to file litigation. |
| | The injunction prevents parties from enforcing the rights created by the plan post-effective date | Art. IX.F starts with "Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court. . . . " It does not prevent enforcement of rights created under the Plan |
| | The "channeling injunction" is not a proper channeling injunction under Section 524(j) and even if it were, 524(j) only applies to debtors that are eligible for a discharge under 1141 and HCMLP is not eligible for a discharge because it is a liquidation plan. | The Gatekeeper Provision has nothing to do with Section 524(j). Although the Debtor will be engaging in a long term liquidation given the nature of its assets, during that same time period the Debtor will be engaging in business to maximize such liquidation, including by continuing to manage non-debtor funds |
| James Dondero | The exculpation provision in IX.D is overbroad as it relates to non-debtors under Pacific Lumber | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents. The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |
| | The "channeling injunction" in Article IX.F includes post-confirmation conduct and non-debtors and is effectively a third party release prohibited under Dropbox. | The Gatekeeper Provision is a legitimate exercise of the Court's jurisdiction, does not (as modified) implicate the Court's post-effective date jurisdiction as the court will initially, only be determining if a claim is colorable. Furthermore, as a liquidating plan, the Court has – under applicable law – jurisdiction because all acts taken by the trust are related to implementing and effectuating the Plan. Furthermore, the Gatekeeper Provision is supported by the Barton Doctrine (which requires that claims against court-appointed |

| **Objecting Party** | **Objection** | **Response** |
|---|---|---|
| | | and court-approved fiduciaries be sanctioned by the approving or appointing court) and by the All Writs Act, which permits courts to place limits on the ability of vexatious litigants to continue to file litigation. There is no "release" in the Gatekeeper Provision as it does not prevent claims from being brought – it merely requires that the Bankruptcy Court determine the claim is colorable before it can be brought. |
| | The "channeling injunction" limits jurisdiction to the Bankruptcy Court and ignores other courts with exclusive jurisdiction and specialized jurisdiction | The Gatekeeper Provision has been modified to eliminate the exclusive jurisdiction of the Bankruptcy Court to hear permitted claims on the merits unless it determines it has jurisdiction to do so after determining if a claim is colorable. |
| | The "channeling injunction" is impermissibly vague under FRBP 3016(c) | The Gatekeeper Provision is not vague and, to the extent FRBP 3016(c) is applicable, expressly complies with the rule in that the Gatekeeper Provision describes in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identifies the entities that would be subject to the injunction |
| | The Plan does not provide appropriate mechanisms for oversight of post-confirmation sales and would allow impermissible sales similar to that which occurred during the BK | This is the same objection filed by other Dondero Entities to prevent the post-confirmation monetization of assets. The Plan, consistent with other plans including ones confirmed in this Court, properly allows the Claimant Trustee and Reorganized Debtor to sell assets post-confirmation without the need for court approval. The standard of liability is also appropriate and consistent with confirmed chapter 11 plans. |
| | The jurisdictional provisions are overbroad and would require all claims to be heard in the BK without regard to whether they arise in connection with implementation of the plan or otherwise | The Gatekeeper Provision has been modified to eliminate the exclusive jurisdiction of the Bankruptcy Court to hear permitted claims on the merits unless it determines it has jurisdiction to do so after determining if a claim is colorable. The Bankruptcy Court has jurisdiction to determine if a claim is colorable |
| | The elimination of vacant classes on the effective date would impermissibly limited later re-allocation of claims | The elimination of the only vacant class (Class 5 (Retained Employees)) is for voting tabulation purposes only. This provision permissibly provides for the treatment of any claims that may arise or become Allowed as a Class 5 Claim post-confirmation. |
| | Art. III.J allows for subordination under § 510 without the requirement for a hearing, which is impermissible | Section III.J of the Plan has been amended to clarify that subordination will occur after notice and a hearing and any order by the Bankruptcy Court. |
| NexPoint Real Estate Partners LLC, f/k/a HCRE Partners, LLC | Art. III.J allows for subordination under § 510 without the requirement for a hearing, which is impermissible | Section III.J of the Plan has been amended to clarify that subordination will occur after notice and a hearing and any order by the Bankruptcy Court. |

| **Objecting Party** | **Objection** | **Response** |
|---|---|---|
| | Plan allows Distribution Agent to setoff amounts owed to the Debtor against amounts owed to a creditor in violation of s. 553 and impermissibly shifts burden of proving setoff was improper to the creditor | Creditors have the right to challenge set off in an appropriate manner. The Plan has been amended to clarify this language. |
| | The "channeling injunction" improperly insulates non-debtors under s. 524(e). | The Gatekeeper Provisions do not implicate section 524(e). There is no insulation of any non-debtor. The Gatekeeper Provision simply requires the Bankruptcy Court to determine if a claim is colorable before it can be brought. |
| | The exculpation and release provision release claims not related to the BK but also the administration and implementation of the plan | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents. The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |
| | Period of time covered by the release and exculpation provisions impermissibly extends post-effective date. Cf. Pacific Lumber | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents. The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |
| NexPoint Advisors, Highland Capital Management Fund Advisors, and related funds (joined by CLO Holdco) (joined by NexPoint RE Entities [D.I. 1677] | Investment Advisers Act is "applicable law" that prohibits assumption/assignment of the Portfolio Management Agreements ("PMAs") under 365(c) | As this Court has ruled in Acis, and as SEC No Action Letters advise, the Investment Advisers Act does not prohibit assignment. The "actual test" applies and thus even if the PMAs were nonassignable, they would still be assumable. |
| | PMAs are "personal services contracts" and cannot be assigned under 365(c) | As this Court ruled in Acis, the PMAs are not nonassignable personal services contracts. Further, the counterparties have consented, and under the "actual test" the PMAs would be assumable even if nonassignable. |

| **Objecting Party** | **Objection** | **Response** |
|---|---|---|
| | Fifth Circuit applies the hypothetical test under Section 365(c), not the actual test | Fifth Circuit has applied the actual test under §365(e) and lower courts within the Fifth Circuit have applied the actual test to §365(c). |
| | Even if "actual" test applies, the Reorg Debtor is not the Debtor because of slimmed down staff and use of subservicers | The objectors lack standing to object. As this Court held in Acis, services under the PMAs are delegable and the Debtor is entitled to use a servicer. However, the Reorganized Debtor will have sufficient employees and resources to manage the CLOs post-Confirmation Date. This is an adequate assurance issue, and the contract counterparties have consented. |
| | There is no consent to assumption under 365(c) | CLO issuers are the counterparties and they consent. The objectors have no contract right to object to assumption. |
| | The objectors have standing because they have claims against the estate or will have large rejection claims under shared services agreements. | The Funds, Advisors and CLO Holdco are not creditors and will not be creditors. They agreed to expungement of their claims or reduction to zero. There will be no rejection damages because the contracts are freely terminable upon notice and are being terminated, not rejected. Even if objectors were creditors, that would give them standing only as to whether assumption benefits the estate, not their particular interests. |
| | The objectors have standing because the plan violates 1129 because it provides for assumption of contracts in violation of law. | The objectors have no standing as creditors, they have no standing to object to assumption of contracts to which they are not parties and to which the counterparties have consented, and assumption of the PMAs does not violate any law. |
| | The objectors have standing because the plan seeks to limit their right to remove the manager | The Plan does not limit their removal rights. |
| | Debtor should take direction from the majority of the preference shareholders in the CLOs | The objectors have no contractual right to control the management of the CLOs. |
| | The injunction and release provisions are overbroad because they do not appropriately define their scope and prevent the movants from suing for future malfeasance | The Debtor Release is not overly broad and only releases claims owned (either directly or derivatively) by the Debtor and the Estate on behalf of the Debtor and its successors, which include the CT and LST only in their capacity as successors. No third party is implicated by the Debtor Release and Pacific Lumber is inapplicable. Section 1123(b)(3) expressly permits a debtor to settle and release its own claims. The Injunction, as amended, is clear in scope and application, and only applies to acts to implementation and consummation of the Plan and attempts to collect the claims and interests dealt with by the Plan. |
| | The injunction prevents the objectors and the CLOs from seeking relief against the | The Injunction, as amended, is clear in scope and application, and only applies to acts to implementation and consummation of the Plan |

| Objecting Party | Objection | Response |
|---|---|---|
| | debtor/reorg debtor from any present or future actionable wrongs under the servicing agreements and advisers act | and attempts to collect the claims and interests dealt with by the Plan. |
| | Injunction prevents set off or other damages under the servicing agreements and to seek legal redress | The Injunction, as amended, is clear in scope and application, and only applies to acts to implementation and consummation of the Plan and attempts to collect the claims and interests dealt with by the Plan. |
| | "Channeling Injunction" is defective with respect to post-confirmation actions and is overly broad | The Gatekeeper Provision has been modified to eliminate the exclusive jurisdiction of the Bankruptcy Court to hear permitted claims on the merits unless it determines it has jurisdiction to do so after determining if a claim is colorable. The Bankruptcy Court has jurisdiction to determine if a claim is colorable. |
| | Plan does not disclose who will be operating the reorganized debtor and claimant trust or their comp as required under s 1123(a)(7) or insider compensation under 1129(a)(5) | The Plan Supplement discloses the identity of the Claimant Trustee, Litigation Trustee and Oversight Committee members. The Debtor discloses in the Confirmation Brief the compensation of insiders pursuant 1129(a)(5) under the Plan who will serve post-confirmation in their Confirmation Brief |
| | The plan is not feasible because the treatment of the CLO management agreements is illegal and violates s. 365 | The Plan does not impact any party's rights under the CLO management agreements, and applicable law does not prohibit the Debtor's assumption of the CLO management agreements. |
| | The plan does not provide assurance of future performance with respect to the assumption of the CLO management agreement as required by 365(b) | The objectors lack standing to object. As this Court held in Acis, services under the PMAs are delegable and the Debtor is entitled to use a servicer. However, the Reorganized Debtor will have sufficient employees and resources to manage the CLOs post-Confirmation Date. This is an adequate assurance issue, and the contract counterparties have consented. |
| | Release and injunction provisions are overbroad under Pacific Lumber because they release third parties | Neither the Release nor the Injunction Provisions release non-debtor third parties. |
| | Exculpation provisions are overbroad under Thru | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents. The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |

| Objecting Party | Objection | Response |
|---|---|---|
| | The plan divests movants from their set off rights | Creditors have the right to challenge set off in an appropriate manner.  The Plan has been amended to clarify this language. |
| | The plan provides that contracts can be assumed until the Effective Date in violation of 365(d)(2) | The Plan has been amended to address this objection. |
| | Debtor is not entitled to a discharge under 1141 because it's a liquidating plan | Although the Debtor will be engaging in a long term liquidation given the nature of its assets, during that same time period the Debtor will be engaging in business to maximize such liquidation, including by continuing to manage non-debtor funds |
| | The plan violates the absolute priority rule because equity gets to keep assets while senior creditors may not be paid in full | This assertion is false.  Equity Interests will not receive any property on account of the their interests pursuant to the Plan unless and until the claims of creditors are full paid, inclusive of interests, as provided in the Plan. |
| CLO Holdco Ltd. | CLO Holdco has standing to object because of its interests in the CLOs | As set forth above, CLO Holdco has no standing to assert the rights of the contracting parties to the PMAs.  It is also not a creditor, having reduced its claim to zero and having no rejection claim.  Even if it was a creditor it would not have standing to object to assumption on the basis of rights held by contracting parties. |
| | Joined NPA/HCMFA objection | NPA/HCMFA objection responses are set forth above. |
| | Plan provides for impermissible "partial assumption" because it cherry picks provisions of the CLO management agreements that are going to be assumed by preventing removal of the CLO manager by the preference shares | For the reasons set forth above, CLO Holdco has no standing to assert objections to assumption held by the contracting parties, who consent to assumption. Further, the Plan does not deprive preference shareholders of removal rights. |
| | Injunction and exculpation prohibits creditors from interfering with implementation or consummation of the plan and would prevent the movants from removing the Debtor as the CLO manager | The Injunction, as amended, is clear in scope and application, and only applies to acts to implementation and consummation of the Plan and attempts to collect the claims and interests dealt with by the Plan. |
| | The plan impermissibly modifies the movants' rights under the CLO management agreements without their consent | The Plan does not modify CLO Holdco's rights under the PMAs |
| | Exculpation and indemnification provisions are third party releases in violation of applicable law under Pacific Lumber | The Plan does not contain an" indemnification provision." The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents.  The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity |

| **Objecting Party** | **Objection** | **Response** |
|---|---|---|
| | | of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |
| NexBank Capital, Inc., NexBank Securities, Inc., NexBank Title, Inc., and NexBank | Art. III.J allows for subordination under § 510 without the requirement for a hearing, which is impermissible | The Debtor amended Plan section III.J of the Plan to provide for "notice and a hearing" with respect to any subordination proceeding and corresponding changes to the definition of "Subordinated Claim" and the treatment of any claims that may, potentially, be subordinated after notice and a hearing and any order by the Bankruptcy Court. |
| | Plan allows Distribution Agent to setoff amounts owed to the Debtor against amounts owed to a creditor in violation of s. 553 and impermissibly shifts burden of proving setoff was improper to the creditor | Creditors have the right to challenge set off in an appropriate manner. The Plan has been amended to clarify this language. |
| | The exculpation and release provision release claims not related to the BK but also the administration and implementation of the plan | |
| | The exculpation and release provisions violate Pacific Lumber | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents. The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. The Release is only a release of claims owned by the Debtor and its estate and does not implicate Pacific Lumber which had nothing to do with debtor released which are permitted under section 1123(b)(3). |
| Senior Employees | The Plan violates § 1123(a)(4) because it treats the Senior Employees differently than similarly situated employees by requiring the Senior Employees to sign a Senior Employee Stipulation and reduce a portion of their claim to obtain a release. | The treatment of claims in either Class 7 or Class 8 solely consists of distributions on account of the allowed amounts of such claims, and there is no difference in treatment among members of either class in terms of the distribution scheme provided. The potential Debtor release of its own claims against employees or ex-employees under the Plan does not constitute "treatment" of Class 7 or Class 8 claims. |

| **Objecting Party** | **Objection** | **Response** |
|---|---|---|
| | The Senior Employee Stipulation was not approved by the Senior Employees and contains material problems. | Whether or not the Senior Employees voluntary elect to sign the Senior Employee Stipulation does not constitute a valid basis to object to Plan confirmation. The voluntary decision to execute the Senior Employee Stipulation was at the option of the employee. Moreover, the Debtor has settled this objection with respect to Mr. Surgent and Mr. Waterhouse. |
| | The Debtor has improperly prevented the Senior Employees from making the Convenience Class Election because, as reflected in the chart prepared by the Debtor, the Senior Employees have liquidated claims which are not in dispute. | Under applicable bankruptcy law, the Plan and the Disclosure Statement Order, the Senior Employees are not entitled to split their claims to create a liquidated claim for which Convenience Class Election would even be possible.<br><br>Each Senior Employee filed a single proof of claim and the Senior Employees have not cited any authority supporting the proposition that a claimant may split claims listed in a single proof of claim; to the contrary, courts have stated that claim splitting is impermissible when covered by a single proof of claim. Further, the Plan and Disclosure Statement Order prohibit claim splitting for voting purposes. Finally, as explicitly set forth on the ballots approved by the Disclosure Statement Order, even if a Senior Employee could split his claims in order to elect Convenience Class treatment, the Convenience Class Election only impacts *treatment*, and explicitly does not impact voting. |
| | The Plan provides that a Class 8 Creditor can make the Convenience Class Election for a liquidated claim. Since a portion of each Senior Employee's claim is liquidated, the Senior Employees have a right to make the Convenience Class Election under the Plan.<br><br>The Debtor has contradicted the Plan in how in its conversations with the Senior Employees. Each Senior Employee received two ballots (one Class 7 and one Class 8) and this confusion justifies the Senior Employees review of the Plan.<br><br>The fact that the Plan splits employee claims into PTO claims and other claims is evidence that the Plan allows Claim splitting. The | As set forth directly above, each Senior Employee would have to split his claim in order to also retain the remainder of his Class 8 claim. This is impermissible under applicable case law and the Plan.<br><br>The Debtor's statements have been consistent with the Plan. In any event, the Plan governs. The Senior Employee's receipt of two ballots was an administrative error and cannot override the express terms of the Plan and Disclosure Statement Order.<br><br>As to the PTO Claims, those were separately classified *by the Plan*. The Senior Employees seek to split claims *within the same class*. It is splitting claims within the same class that is prohibited by applicable case law and the Plan and Disclosure Statement Order. |

| **Objecting Party** | **Objection** | **Response** |
|---|---|---|
| | exhibit is a representation that the Senior Employee claims have the right to a split claim because it discusses a Convenience Class claim. | |
| | The Plan identifies no basis for disparate and unfair treatment of the Senior Employees. | Debtors are not required to grant releases to anyone nor are their required to grant releases to all employees equally, especially here, where there are allegations of material misconduct against some, but not all, of the employees. |
| | The Plan appears to impermissibly grant the Debtor, the Reorganized Debtor, and the Claimant Trustee the unfettered power to "reclassify" any claim as a Subordinated Claim. | Section III.J of the Plan has been amended to provide for "notice and a hearing" with respect to any subordination proceeding and corresponding changes to the definition of "Subordinated Claim" and the treatment of any claims that may, potentially, be subordinated after notice and a hearing and any order by the Bankruptcy Court. |
| | The Plan allows the Debtor to make changes to the Plan without Court approval, including changes to the plan supplement documents. | To the contrary, Article XII of the Plan explicitly requires that modifications to the Plan be in compliance with section 1127. |