SIDLEY AUSTIN LLP
Penny P. Reid
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 74201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

Matthew A. Clemente (admitted pro hac vice)
Dennis M. Twomey (admitted pro hac vice)
Alyssa Russell (admitted pro hac vice)
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Counsel for the Official Committee of Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| HIGHLAND CAPITAL MANAGEMENT, ) | Case No. 19-34054-sgj11 |
| L.P.,[1] ) | |
| Debtor. ) | |
| ) | |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
MOTION FOR AN ORDER REQUIRING JAMES D. DONDERO
TO PRESERVE DOCUMENTS AND TO IDENTIFY
MEASURES TAKEN TO ENSURE DOCUMENT PRESERVATION**

NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT (THE EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, RM. 1254, DALLAS,

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR AN ORDER
REQUIRING JAMES D. DONDERO TO PRESERVE DOCUMENTS**                                              Page 1

TEXAS 75242-1496 BEFORE CLOSE OF BUSINESS ON FEBRUARY 22, 2021, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.

IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.

1. Pursuant to Rule 37 of the Federal Rules of Civil Procedure (the "Rules"), made applicable by Rules 7037 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 11 U.S.C. § 105(a), the Official Committee of Unsecured Creditors (the "Committee") for Highland Capital Management, L.P. ("the "Debtor") in the above-captioned bankruptcy case (the "Bankruptcy") respectfully moves this Court for an order requiring James D. Dondero ("Mr. Dondero") to preserve documents and communications and identify all measures taken to ensure document preservation (the "Motion").

2. As this Court knows, Mr. Dondero has a history of engaging in inappropriate conduct in the context of this Bankruptcy and other litigations. Recently, Mr. Dondero testified that his cellular phone, which was bought and paid for by the Debtor, was "disposed of or thrown in the garbage." (*See* Transcript of Proceedings, Preliminary Injunction Hearing [#2] at 55:10-16, Highland Capital Management, L.P. v. James D. Dondero (N.D. Tex. Bankr. Jan. 8, 2021) (No. 20-3190-sgj) [hereinafter "Preliminary Injunction Hearing"].) This type of destructive conduct is greatly concerning to the Committee, especially as Mr. Dondero is aware that the Committee was granted authority to bring claims against him more than a year ago pursuant to the Final Term Sheet and its investigation into potential Estate Claims (as defined herein) against Mr. Dondero is ongoing. Moreover, at the time that Mr. Dondero disposed of his cellular phone, that phone was

subject to an order by this Court requiring that the data included on it be preserved and access provided to the Committee.  (*See Order Resolving Discovery Motions and Objections Thereto*, Dkt. 942 at 2-3.)

3. Given Mr. Dondero's prior conduct, the Committee has serious concerns that Mr. Dondero will continue to dispose of evidence relevant to the Bankruptcy, to the various adversary proceedings of which Mr. Dondero is or may become a party, and to potential Estate Claims.  As a result, the Committee requested that Mr. Dondero confirm that he would comply with his ongoing preservation obligations and that all documents and communications maintained on any prior and current cellphone devices, including any documents and communications stored in any cloud storage or other storage device, along with any other electronic data that he might possess, be retained and not destroyed.  The Committee further requested that the information contained on Mr. Dondero's cellular phones and other electronic devices be forensically imaged, with copies provided to his counsel for safekeeping, to avoid any future mishaps involving Mr. Dondero's devices.  Mr. Dondero refused to provide such assurances and, in fact, there was no response to the Committee's requests at all.  To ensure that Mr. Dondero complies with his continuing legal obligation to preserve potentially relevant documents and communications, the Committee respectfully requests the entry of an order requiring Mr. Dondero to preserve documents and communications—including requiring a third-party forensic image of Mr. Dondero's cellular phones tablets, laptops, computers, or any other electronic devices that can store data in Mr. Dondero's possession, custody, or control—and to identify all other measures taken to ensure document preservation.

## ADDITIONAL BACKGROUND

4. On January 14, 2020, the Debtor and the Committee entered into the Final Term Sheet, which explicitly granted the Committee standing to pursue the Estate Claims, defined as

"**any and all estate claims and causes of actions against Mr. Dondero,** Mr. Okada, other insiders of the Debtor, and each of the Related Entities,[2] including promissory notes held by any of the foregoing." (Dkt. 354-1, at 4 (emphasis added).) Under the Final Term Sheet, Mr. Dondero resigned as the president and chief executive officer of the Debtor, but continued to serve as a portfolio manager and employee of the Debtor. (*Id.* at 3.)

5.   Since the Final Term Sheet was entered, the Committee has been investigating potential Estate Claims against Mr. Dondero. In connection with this investigation, on July 8, 2020, the Committee moved to compel the Debtor to produce "all custodial data" from nine Debtor-custodians, including Mr. Dondero, which included, "without limitation, email[s], chat[s], text[s], Bloomberg messaging, or any other [electronically stored information ("ESI")] attributable to the custodians." (Dkt. 808 at 5, the "Motion to Compel.")

6.   On August 12, 2020, the Court granted the Committee's Motion to Compel in large part and ordered that "all ESI in [the Debtor's] possession, custody, or control" for Mr. Dondero be produced to an e-discovery vendor within 30 days of the entry of the Court's order. (Dkt. 942 at 2, the "Order Compelling Documents.") This included communications and information stored in Mr. Dondero's Debtor-owned cellular phone as well as any other sources of electronic data for which Mr. Dondero was the custodian and that the Debtor had within its possession, custody, or control.

---

[2] The Final Term Sheet defines "Related Entities," as, collectively, "(i) any non-publicly traded third party in which Mr. Dondero, Mr. Okada, or Mr. Grant Scott, or Mr. John Honis . . . has any direct or indirect economic or ownership interest, including as a beneficiary of a trust; (ii) any entity controlled directly or indirectly by Mr. Dondero, Mr. Okada, Mr. Grant Scott, or Mr. John Honis . . . ; (iii) MGM Holdings, Inc.; (iv) any publicly traded company with respect to which the Debtor or any Related Entity has filed a Form 13D or Form 13G; (v) any relative . . . of Mr. Dondero or Mr. Okada each solely to the extent reasonably knowable by the Debtor; (vi) the Hunter Mountain Investment Trust and Dugaboy Investment Trust; (vii) any entity or person that is an insider of the Debtor under Section 101(31) the Bankruptcy Code, . . .; and (viii) to the extent not included in [the above], any entity included in the listing of related entities in **Schedule B** hereto (the "Related Entities Listing")." (Dkt. 354-1, at 52.) The Related Entities Listing lists thousands of entities related to the Debtor.

7. In October 2020, the board of directors of the Debtor's parent company asked for Mr. Dondero's resignation "due to certain actions taken by Mr. Dondero that were adverse to the Debtor's estate." (*See* A.P. Dkt. 1 at 2.)[3]

8. On December 7, 2020, the Debtor brought an adversary proceeding against Mr. Dondero, as well as an emergency motion for a temporary restraining order and preliminary injunction against Mr. Dondero, based on his interference with the Debtor's operations. *See Highland Capital Management, L.P. v. James D. Dondero*, Adversary Proceeding No. 20-03190-sgj (N.D. Tex.) (the "Debtor Adversary Proceeding"). (*See* A.P. Dkt. 1, 3.) On December 10, 2020, the Court granted the temporary restraining order against Mr. Dondero. (A.P. Dkt. 10.) Mr. Dondero has testified that, on or about that same date, his Debtor-purchased cellular phone was "disposed of or thrown in the garbage." (*See* Preliminary Injunction Hearing, at 55:14-16.)

9. On December 17, 2020, the Committee brought an adversary proceeding against Mr. Dondero based on his conduct related to a convoluted series of transactions, which removed Debtor assets from the Debtor's estate for less than reasonably equivalent value. *See Official Committee of Unsecured Creditors v. CLO Holdco, Ltd., et. al,* Adversary Proceeding No. 20-03195-sgj (N.D. Tex.) (the "Committee Adversary Proceeding").

10. On January 5, 2021, Mr. Dondero was deposed in connection with the Debtor's motion for preliminary injunction. During this deposition, Mr. Dondero admitted that his Debtor-owned cellphone was "disposed of." (*See* Remote Video-Recorded Dep. of James D. Dondero at 71:24-25, 72:1-25, Highland Capital Management, L.P. v. James D. Dondero (Jan. 5, 2021).) When pressed to provide any explanation about the disposal of evidence, Mr. Dondero could not provide any detailed information. (*Id.* at 73-80.) In that deposition, the Debtor also showed Mr.

---

[3] Citations to "A.P. Docket" are to the docket of the adversary proceeding captioned *Highland Capital Management, L.P. v. James D. Dondero*, Adversary Proceeding No. 20-03190 (N.D. Tex.).

Dondero a number of his business related text messages, making it evident that Mr. Dondero uses his phone for both personal and work purposes.  (*See id.* at 134:7-25, 135:1-25.)

11.    Given Mr. Dondero's testimony, on January 8, 2021, the Committee sent Mr. Dondero's counsel a notice of preservation, requesting that Mr. Dondero comply with his continuing legal obligation to preserve all electronic and tangible documents, data, and information that may relate to the Bankruptcy, the Committee Adversary Proceeding, other pending litigation, and other as-yet-unfiled claims related to Mr. Dondero's involvement with the Debtor and its Related Entities (the "Preservation Notice," attached hereto as **Exhibit B.)**  Further, because Mr. Dondero had recently testified under oath that his cellular phone was disposed of, the Committee requested Mr. Dondero's counsel explain the preservation process employed by Mr. Dondero in responding to the Debtor's requests for production.  The Committee requested that Mr. Dondero's cellular phones, tablets, laptops, computers, and other electronic devices that could store data in his possession, custody, or control be forensically imaged and reiterated that Mr. Dondero was to retain, and not destroy, all documents and communications maintained on any prior or current cellphone devices, including those communications stored in any cloud storage or other storage device.  The Committee also requested that Mr. Dondero's counsel confirm receipt of the Preservation Notice, confirm that Mr. Dondero was provided with the Preservation Notice and agreed to follow its terms, and confirm that the forensic imaging was done by a third-party and that the images were in Mr. Dondero's counsel's custody by January 12, 2021.  As of the date of this Motion, Mr. Dondero's counsel has not responded to the Preservation Notice.

12.    The Committee strongly believes an order requiring preservation of documents from this Court is warranted and necessary in this case, as Mr. Dondero has already disposed of relevant evidence in violation of his legal preservation obligations.  The Committee fears that,

without an order from the Court, Mr. Dondero may continue to destroy or dispose of evidence relevant to the Bankruptcy, the Committee Adversary Proceeding, and the Estate Claims. Accordingly, the Committee respectfully requests that this Court issue an order requiring Mr. Dondero to preserve documents and identify all measures taken to ensure document preservation.

## ARGUMENT AND AUTHORITIES

13. The Committee respectfully submits that sufficient cause exists for the Court to order Mr. Dondero to preserve evidence and image his electronic devices. Mr. Dondero is under a continuing legal duty to preserve evidence relevant to the Bankruptcy, the Debtor Adversary Proceeding, the Committee Adversary Proceeding, and the Estate Claims. Notwithstanding this duty, Mr. Dondero has admittedly disposed of relevant information. It is clear that, in this case, "the general obligations to preserve evidence and consequences for failure to do so" are insufficient to preserve evidence. *Legacy of Life, Inc. v. Am. Donor Servs., Inc.*, No. SA-06-CA-0802-XR, 2006 WL 8435984, at *3 (W.D. Tex. Sept. 21, 2006).

**I.    The Court Should Order Preservation Because Mr. Dondero Has Admitted Under Oath He Has Already Destroyed Evidence and Irreparable Harm Will Result if Mr. Dondero Continues to Destroy Evidence.**

14. Rule 37, made applicable by Bankruptcy Rule 7037, requires a party to preserve electronically stored information in the anticipation of or conduct of litigation. *See* Fed. R. Civ. P. 37(e). "A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *In re Correra,* 589 B.R. 76, 133 (N.D. Tex. Bankr. 2018) (Jernigan, J.). "Once litigation is reasonably anticipated, a potential party to that litigation must not destroy unique, relevant evidence that might be useful to an adversary." *Id.* (internal quotation marks omitted).

15. Courts have "broad discretion in discovery matters," and "inherently have the power to issue orders to preserve evidence." *Hamilton v. First Am. Title Ins. Co.*, No. 3:07-CV-

1442-G, 2010 WL 791421, at *4 (N.D. Tex. Mar. 8, 2010) (quoting *Winfun v. Daimler Chrysler Corp.*, 255 F. App'x 772, 773 (5th Cir. 2007) (per curium)); *Deggs v. Fives Bronx, Inc.*, No. 19-406-BAJ-EWD, 2020 WL 3100023, at *2 (M.D. La. June 11, 2020). "A motion to preserve evidence has been recognized as the procedural vehicle by which to obtain an order 'to preserve data that would otherwise vanish.'" *Deggs,* 2020 WL 3100023, at *2; *see AT & T Mobility LLC v. Arena Trading, Inc.*, No. 3-08-CV-0330-P, 2008 WL 624104, at *1 (N.D. Tex. Mar. 5, 2008) (ordering a party to preserve all evidence relevant to the action after finding a "legitimate concern for the continuing existence and maintenance of the integrity of evidence in question absent an order preserving evidence"); *Tracfone Wireless, Inc. v. King Trading, Inc.*, No. 3-08-CV-0398-B, 2008 WL 918243, at *1 (N.D. Tex. Mar. 13, 2008) (same).

16. Courts faced with motions to preserve evidence often apply a three-prong balancing test, considering:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433 (W.D. Pa. 2004); *see also Tracfone*, 2008 WL 918243, at *1 (citing the *Capricorn* test when granting motion to preserve where there was a legitimate concern for the continued existence of evidence); *AT & T Mobility,* 2008 WL 624104, at *1 (same).[4] The facts in this case clearly weigh in favor of an order requiring the preservation of evidence.

---

[4] While courts have applied different tests to resolve motions to preserve evidence, including the preliminary injunction standard, many courts have held that the injunctive relief standard is inappropriate as it "involves considerations of a likelihood of success on the merits and of the public interest that are not relevant in the context of

17. First, "there is a legitimate concern for the continuing existence and maintenance of the integrity of the evidence in question absent an order preserving the evidence." *AT & T Mobility,* 2008 WL 642104, at *1. An allegation that a party has destroyed evidence is sufficient to satisfy this requirement. *See Legacy of Life,* 2006 WL 8435984, at *2 (granting order to preserve where the plaintiff alleged that the defendant engaged in destruction of emails on a work computer, holding "[p]laintiff has demonstrated that there is a possibility that [the defendant] may destroy evidence that is directly relevant and, with regard to some documents . . ., essential to this case"); *BCOWW Holdings, LLC v. Collins*, No. SA-17-CV-379-FB, 2017 WL 87929023, at *1 (W.D. Tex. May 3, 2017) (ordering a party to preserve evidence because of allegations in a verified complaint that evidence had "allegedly already been destroyed"). Here, the Court is faced with more than a likelihood of destruction. Mr. Dondero himself has testified that he has already disposed of evidence—his Debtor-owned cellphone—in violation of his duty to preserve evidence and with disregard of this Court's order requiring the production of Mr. Dondero's custodial data. In fact, this Court has already voiced its concerns with Mr. Dondero's recent actions. (*See* Preliminary Injunction Hearing, at 172:24-25, 173:1-7 ("the throwing away of the phone, that was the worst thing I heard all day"). Thus, it is clear that "the general obligations to preserve evidence and consequences for failure to do so" are insufficient to preserve evidence absent a court order. *Legacy of Life*, 2006 WL 8435984, at *2.

---

discovery." *Tellis v. LeBlanc,* No. 18-cv-0541, 2018 WL 6006909, at *2-3 (W.D. La. Nov. 14, 2018); *Legacy of Life*, 2006 WL 8435984, at *2 (injunctive relief standard is not appropriate as "a document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery"). Regardless, the facts here justify an order requiring preservation of evidence given Mr. Dondero's prior conduct disposing of relevant evidence and his failure to agree to the reasonable preservation requests made by the Committee. *Compare with Cook v. City of Dallas*, No. 3:12-CV-03788-P, 2012 WL 13191445, at *4 (N.D. Tex. Nov. 9, 2012) (under the preliminary injunction standard, the court held that "[w]ithout some proof that evidence may be lost or destroyed, a preservation order is not appropriate").

18.   Second, irreparable harm is likely to result to the Committee—and the Debtor's estate—if Mr. Dondero continues to dispose of evidence. *See Capricorn*, 220 F.R.D. at 433. During the course of the Committee's investigation and review of ESI produced from Mr. Dondero's custodial file in response to the Order Compelling Documents, as well as through evidence presented by the Debtor in hearings, it has become clear that Mr. Dondero conducted much of his business and communicated with Debtor employees by phone. (*See, e.g.,* Preliminary Injunction Hearing at 94:7-10 (Mr. Dondero sent a text message to a Debtor employee stating "No Dugaboy details without subpoena," after various entities, including the Committee, requested production of the Dugaboy financials).) Further, Mr. Dondero sits at the center of over a thousand intermingled Related Entities that are at the center of the Committee's Estate Claim investigation. Because of Mr. Dondero's former role controlling the Debtor and continued integral role with many of the Related Entities, the documents and information he possesses are directly relevant to this Bankruptcy and to the Estate Claims, in addition to the claims included in the Committee Adversary Proceeding. Mr. Dondero's misconduct has established a serious concern for the continuing existence of relevant evidence, the destruction of which "would result in irreparable harm because, once destroyed, the evidence cannot be used for any purpose and cannot be recreated." *Deggs*, 2020 WL 3100023, at *6. Thus, an order preserving evidence, and requiring a forensic image of Mr. Dondero's electronic devices in an attempt to remedy the damage caused by the prior disposal of Mr. Dondero's cellular phone, is necessary.

19.   Finally, Mr. Dondero has "the capability . . . to maintain the evidence sought to be preserved" and will not incur significant burdens in doing so. *Capricorn*, 220 F.R.D. at 433; *AT & T Mobility*, 2008 WL 624104, at *1 (granting motion to preserve all evidence, without limitation, relating to disposable phones currently in the defendants' possession when there was evidence that

destruction of potentially relevant evidence had already occurred); *see also Genworth Fin. Wealth Mgmt, Inc. v. McCullan*, 267 F.R.D. 443, 445-49 (D. Conn. 2010) (ordering preservation and forensic imaging of a computer where evidence was presented that the defendant spoliated evidence by discarding his personal computer in a trash can). Given Mr. Dondero's own testimony that he has discarded a device containing relevant data, an order preserving evidence is necessary, and the minimal burden of requiring Mr. Dondero to forensically image his electronic devices is far outweighed by the prejudice to the Debtor's estate and the Committee if a forensic image is not captured. As the Court is aware from Mr. Dondero's representations regarding his POT plan, the cost of forensically imaging the devices and statically preserving any cloud data is miniscule when compared to Mr. Dondero's financial means.

## II. An Order Requiring Preservation is Necessary and Appropriate for the Committee to Carry Out Its Investigation of the Estate Claims.

18. Further, section 105(a) of the Bankruptcy Code empowers this Court to "issue an order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

19. Issuance of a preservation order is necessary and appropriate for the Committee to fulfill its statutory mandates under section 1103(c) of the Bankruptcy Code. As fiduciary for all unsecured creditors, the Committee is granted broad statutory powers to, among other things, "investigate the acts, conduct, assets, and liabilities and financial condition of the debtor, . . . and any other matters relevant to the case or to the formulation of a plan." *Id.* at § 1103(c)(2); *see also* Dkt. 354-1, at 4 (granting the Committee standing to investigate and pursue Estate Claims on behalf of the Debtor). As explained above, Mr. Dondero and the Related Entities that he controls are at the center of the Committee's investigation of potential Estate Claims. As such, documents and information in Mr. Dondero's possession, custody, and control are an integral piece of the

Committee's investigation. Given Mr. Dondero's recent conduct, an order requiring Mr. Dondero to preserve potentially relevant documents is necessary and appropriate for the Committee properly to carry out this mandate.

20. Moreover, this Court "has inherent powers and authority under section 105 of the Bankruptcy Code to address abuses of judicial process and bad faith conduct." *See In re Correra*, 589 B.R. at 124 (sanctioning a party who intentionally destroyed relevant evidence and property of the Debtor's estate). Mr. Dondero's disposal of his cellular phone—after the entry of the Final Term Sheet expressly reserving claims against Mr. Dondero, after this Court ordered a temporary restraining order against him, after the Debtor served him with document requests, and after this Court ordered that Mr. Dondero's custodial data be turned over to the Committee—is bad faith conduct that warrants invocation of this Court's inherent powers. Indeed, Mr. Dondero's actions constitute "an overt effort to make records of the Debtor inaccessible." *Id.* Therefore, to address Mr. Dondero's prior misconduct, an order requiring Mr. Dondero to preserve evidence relevant to the Bankruptcy, the Debtor Adversary Proceeding, the Committee Adversary Proceeding, and the Estate Claims is justified.

## CONCLUSION

21. For the reasons set forth above, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A,** (a) requiring Mr. Dondero to preserve documents and identify all measures taken to ensure document preservation, and (b) granting such other and further relief as the Court may deem just and proper.

[*Signature Page Follows*]

| | |
|---|---|
| Dated: February 1, 2021<br>Dallas, Texas | SIDLEY AUSTIN LLP<br>/s/ *Paige Holden Montgomery*<br>Paige Holden Montgomery<br>Penny P. Reid<br>Juliana L. Hoffman<br>2021 McKinney Avenue<br>Suite 2000<br>Dallas, Texas 74201<br>Telephone: (214) 981-3300<br>Facsimile: (214) 981-3400<br><br>-and-<br><br>Matthew A. Clemente (admitted *pro hac vice*)<br>Dennis M. Twomey (admitted *pro hac vice*)<br>Alyssa Russell (admitted *pro hac vice*)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone: (312) 853-7000<br>Facsimile: (312) 853-7036<br><br>COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS |

## CERTIFICATION OF GOOD FAITH CONFERENCE

The undersigned counsel to the Committee hereby certifies that the Committee's counsel conferred in good faith with Mr. Dondero's counsel on February 1, 2021. Mr. Dondero's counsel indicated that the disputes at issue in the Motion might be resolved by agreement given time. For the reasons set forth in the Motion, the Committee does not agree. Therefore, the Motion is opposed.

/s/ *Paige Holden Montgomery*
Paige Holden Montgomery
SIDLEY AUSTIN LLP

*Counsel for the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

I, Paige Holden Montgomery, hereby certify that on the 1st day of February 2021, a true and correct copy of the foregoing *Official Committee of Unsecured Creditors' Motion for Entry of an Order Requiring James D. Dondero to Preserve Documents and to Identify Measures Taken to Ensure Document Preservation* was sent via electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case.

*/s/ Paige Holden Montgomery*
Paige Holden Montgomery
SIDLEY AUSTIN LLP

*Counsel for the Official Committee of Unsecured Creditors*