**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br>   Debtor. | )<br>)   Chapter 11<br>)<br>)   Case No. 19-34054-sgj11<br>)<br>)<br>)   **Docket Ref. No. 1868**<br>) |

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO SUPPLEMENTAL OBJECTION TO
FIFTH AMENDED PLAN OF REORGANIZATION OF
HIGHLAND CAPITAL MANAGEMENT, L.P. (AS MODIFIED) FILED
BY THE DUGABOY INVESTMENT TRUST AND GET GOOD TRUST**

The official committee of unsecured creditors (the "Committee")[2] of Highland Capital Management, L.P. (the "Debtor"), hereby submits this response (this "Response") to the *Supplemental Objection of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)* filed by The Dugaboy Investment Trust and Get Good Trust on February 1, 2021, i.e., the eve of confirmation [Docket No. 1868] (the "Supplemental Objection").[3] In response to the Supplemental Objection, the Committee respectfully states as follows:

**RESPONSE**

1. James Dondero, through his family trusts (The Dugaboy Investment Trust and Get Good Trust, collectively being the "Dondero Trusts") filed a supplemental objection pushing

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] The Committee consists of (i) Redeemer Committee of Highland Crusader Fund, (ii) Meta-e Discovery, (iii) UBS Securities LLC and UBS AG London Branch, and (iv) Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

[3] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Supplemental Objection.

forward Mr. Dondero's agenda to derail confirmation. This time, the Dondero Trusts are attempting to masquerade as benevolent advocates for the Debtor's true creditors. The true creditors, however, have spoken. Creditors who voted in Class 2 and Class 7 unanimously accepted the Plan. Further, creditors holding 93.54% of the dollar value in Class 8 have voted to accept the Plan—indeed all but one of the Class 8 "no" votes were cast by current or former employees who likely will not have allowed claims or otherwise have a documented history of loyalty to Mr. Dondero.[4] And the Committee, who owes a fiduciary duty to all unsecured creditors, supports the confirmation of the Plan in a sound exercise of their duty. Against this backdrop, the latest filing from the Dondero Trusts must be seen for what it is: the latest iteration of Mr. Dondero's scorched earth tactics to litigate anything and everything in this chapter 11 case.

2. The Dondero Trusts' assertion that re-solicitation of Class 8 is required because of a change in its recovery estimate set forth in the Disclosure Statement is completely meritless. Recovery estimates change over time[5] in virtually every bankruptcy case as claims are settled and the values of assets or businesses vary. Here, the increase in Class 8 Claims reflects, among other things, a settlement reached by the Debtor with HarbourVest between approval of the Disclosure

---

[4] In the *Response of the Official Committee of Unsecured Creditors in Support of Confirmation to Debtor's Fifth Amended Plan of Reorganization and Joinder to Debtor's Reply to Objections to Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1823] (the "Committee Statement"), the Committee erroneously stated the only creditors in Class 8 who voted to reject the Plan were in some form or fashion affiliated with or influenced by Mr. Dondero. *See* Committee Statement, ¶ 2. The Committee acknowledges that Patrick Daugherty, who voted to reject the Plan in Class 8, is not an affiliate of or otherwise influenced by Mr. Dondero.

[5] The Dondero Trusts also assert that the Plan discriminates unfairly against Class 8 because of the decrease in projected recoveries for holders of Class 8 Claims. Nothing in the Plan regarding the treatment of Class 7 or Class 8, however, has changed. The creditors who qualify for Class 7 treatment will receive 85% on account of their Allowed Claims. Holders of Class 8 Claims will receive their pro rata share of the Debtor's remaining assets on account of their Allowed Claims. The treatment has not changed—the estimated recovery has as a result of intervening developments such as the settlement of HarbourVest's claims—just like the recovery can also change as a result of any recoveries on Estate Claims that will be brought against Dondero and his related entities.

Statement and confirmation of the Plan. Additionally, given the nature of the Debtor's assets, the value projected to be realized continues to be refined. And finally, the costs are continually re-evaluated, in large part to account for the litigious and obstructionist behavior of Mr. Dondero. Indeed, it is clear that the Dondero Trusts are not attempting to actually further the interest of unsecured creditors despite taking up the mantle of creditor arguments. Instead, Mr. Dondero, through the Dondero Trusts, simply wants to threaten the unsecured creditors into agreeing to an outcome that he prefers (i.e., *his* plan). Neither the Court nor the creditors need to divine this intent, as it is clear from the words of the Dondero Trusts: "especially because it is virtually certain that, under the Debtor's Plan, there will be years of litigation in multiple adversary proceedings, appeals, and collection activities—all adding substantial uncertainty and delay." Supplemental Objection at 3.

3.      Re-solicitation of the Plan would not change anything. Class 8 already rejected the Plan, primarily because of the votes of contingent creditors or creditors otherwise loyal to Mr. Dondero who likely will not have Allowed Claims. Moreover, the structure of the Plan is straightforward despite the voluminous nature of the pleadings in support and in opposition. The secured claims—the Class 1 Jefferies Claim and the Class 2 Frontier Claim—are being paid in full (with the latter being paid in full over time). A class of convenience claims—Class 7 Convenience Claims—has been properly constructed and will be paid in accordance with the Bankruptcy Code. All remaining value will go to pay the general unsecured creditors—holders of Class 8 General Unsecured Claims—until they are paid in full with interest. This basic structure does not change regardless of whether Mr. Dondero's tactics result in increased costs or whether additional claims are settled out by the Debtor. And, importantly, the possibility of varied recovery is explicitly noted in the Disclosure Statement. *See, e.g.*, Disclosure Statement, Art. IV.B (outlining and

discussing various risk factors regarding recoveries under the Plan). Re-solicitation therefore would serve no legitimate purpose.

4.  Lastly, the Dondero Trusts interestingly assert that the Plan violates the absolute priority rule, because equityholders such as themselves are receiving "property" under the Debtor's Plan. This particular objection goes directly against the Dondero Trusts' self-interest—as The Dugaboy Trust is one of the very equityholders who would receive the contingent interests—and confirms that they are simply another mouthpiece for Mr. Dondero. Aside from this irony and clear gamesmanship, the fact remains that holders of contingent trust interests have absolutely no rights under the Claimant Trust Agreement unless and until their interests vest under the terms thereof. In other words, *all* Class 8 general unsecured claims will have to be paid in full *plus interest* before the equityholders would hold vested interests in the Claimant Trust. And even then, equityholders will not receive any distributions until *all* Class 9 subordinated claims are paid in full. The waterfall of distributions under the Plan and Claimant Trust Agreement clearly complies with the absolute priority rule. As the Dondero Trusts acknowledge, in *Introgen Therapeutics* the bankruptcy court analyzed a liquidating trust structure virtually identical to the structure in this case, where equityholders would receive contingent interests that only vest if and when all senior claims are paid in full, and rejected the very same argument the Dondero Trusts are trying to push here. *See In re Introgen Therapeutics*, 429 B.R. 570, 585 (Bankr. W.D. 2010). There, the court recognized that the objectors were "trying to have it both ways," when, in reality, "they will ultimately receive adequate property to satisfy their claims as contemplated in the Plan, or this property does not now, and never will exist." *Id.* Unlike the other cases cited by the Dondero Trusts, this is not a dispute over the value of the property. Just like *Introgen Therapeutics*, if there is inadequate cash to pay all General Unsecured Claims *in full with interest*, which as of right now

4

is the scenario projected by the Debtor, equityholders will **never** receive a property interest.[6] The equityholders simply have no right to receive a property interest under the Plan unless all senior claims are paid in full, and in the case of General Unsecured Claims, with applicable interest, in full compliance with the absolute priority rule.

5. In sum, the Supplemental Objection entirely lacks merit. As such, the Committee respectfully requests that the Court overrule the Supplemental Objection and confirm the Plan.

[*Remainder of Page Intentionally Left Blank*.]

---

[6] The Committee notes that even if equityholders' contingent interests in the Claimant Trust ultimately vest, The Dugaboy Trust holds Class A Partnership Interests, which are subordinate to Class B and C Partnership Interests. In other words, The Dugaboy Trust would only receive a distribution under the Plan if (1) all General Unsecured Claims are paid in full plus interest, (2) all Subordinated Claims are paid in full, and (3) all Class B and C Partnership Interests are paid in full. The Get Good Trust has no economic interest in the Debtor.

WHEREFORE, the Committee respectfully requests that the Court overrule all objections to the Plan and confirm the Plan.

| | |
|---|---|
| Dated: February 1, 2021<br>Dallas, Texas | SIDLEY AUSTIN LLP<br>/s/ *Juliana L. Hoffman*<br>Penny P. Reid<br>Paige Holden Montgomery<br>Juliana L. Hoffman<br>2021 McKinney Avenue<br>Suite 2000<br>Dallas, Texas 74201<br>Telephone: (214) 981-3300<br>Facsimile: (214) 981-3400<br><br>-and-<br><br>Matthew A. Clemente (admitted *pro hac vice*)<br>Dennis M. Twomey (admitted *pro hac vice*)<br>Alyssa Russell (admitted *pro hac vice*)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone:  (312) 853-7000<br>Facsimile:  (312) 853-7036<br><br>COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS |