

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 22, 2021**

United States Bankruptcy Judge

___

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| HIGHLAND CAPITAL MANAGEMENT, § | CASE NO. 19-34054-SGJ-11 |
| L.P., § | (Chapter 11) |
| DEBTOR. § | |

## ORDER DENYING MOTION TO RECUSE, PURSUANT TO 28 U.S.C. § 455

CAME ON FOR CONSIDERATION before this court the Motion of James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, The Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware limited liability company (collectively, the "Movants") to Recuse, Pursuant to 28 U.S.C. § 455, filed March 18, 2021, along with a supporting Brief and an Appendix that is 2,722 pages in length [DE ## 2060, 2061, & 2062] (hereinafter, the "Motion to Recuse").

The Movants, through newly appearing counsel, Michael J. Lang of Crawford, Wishnew & Lang PLLC, argue that the assigned bankruptcy judge (the "Presiding Judge") should, after 15 months, recuse herself from presiding in the above-referenced case of Highland Capital Management, L.P. (the "Debtor" or "Highland"), whose Chapter 11 plan was recently confirmed. The Movants state that they perceive the Presiding Judge has developed animus towards James Dondero ("Mr. Dondero") and parties connected with him or deemed under his control (the "Affected Entities"). Mr. Dondero and the Affected Entities argue that the Presiding Judge's impartiality can be reasonably questioned. Specifically, they express concerns that the Presiding Judge formed negative opinions of Mr. Dondero in a prior bankruptcy case over which the Presiding Judge presided (*In re Acis Capital Management, L.P.,* Case No. 18-30264)[1]; that those opinions have carried over to the current case; the Presiding Judge has been unable to extricate those opinions from her mind; and this has resulted in an actual bias against Mr. Dondero that is prejudicing him and the Affected Entities.

Accordingly, the Movants ask that the Presiding Judge recuse herself from any future contested matters and adversary proceedings arising in the Highland case.

By way of further background, the Highland case has been pending since October 16, 2019. It was filed in the Bankruptcy Court for the District of Delaware. Venue was transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division, on motion of the Official Unsecured Creditors Committee ("Committee") on December 4, 2019. On January 9, 2020, a significant corporate governance settlement between Highland and the Committee was reached and approved by this court. The settlement involved the removal of Mr. Dondero as CEO and from all decision making at Highland, at the insistence of the

---

[1] Acis Capital Management, L.P. ("Acis") was formerly a company in the Highland corporate organizational structure.

Committee, and an entirely new corporate governance structure was imposed on the Debtor, with extensive oversight by the Committee. This new corporate governance structure was negotiated by the Debtor under pressure from both the Committee and the United States Trustee—both of whom expressed positions that a Chapter 11 Trustee should be appointed in this case, due to alleged conflicts of interest and mismanagement, among other things, attributed to Mr. Dondero. Mr. Dondero signed off on the corporate governance settlement and this court approved it. A new three-member board has controlled the Debtor since then, consisting of a retired bankruptcy judge (Russell Nelms); a second individual with extensive experience serving as an independent board member of companies undergoing bankruptcy or restructuring (John Dubel); and a third individual (later appointed CEO) with broad experience managing distressed debt investments and other products similar to what Highland manages (James P. Seery).

After more than a year, under direction of the new board, the Debtor obtained confirmation of a Chapter 11 Plan on February 22, 2021. The Plan was proposed after many months of contentiousness with several large creditors and the Committee. In fact, in August 2020, the court required the key parties to engage in mediation before two respected co-mediators (Retired Bankruptcy Judge Allan Gropper, S.D.N.Y. and Attorney/Mediator Sylvia Mayer, Houston). The Debtor (either during or after mediation) reached key settlements with the largest creditors in this case (including Acis, which asserted more than a $70 million disputed claim; the Redeemer Committee for the Crusader Fund which asserted more than a $250 million claim and had been in litigation in multiple fora with Highland and affiliates for approximately a decade; and UBS Securities, which asserted more than a $1 billion claim and had also been in litigation with Highland and certain affiliates for more than a decade). Mr. Dondero participated in the mediation, but settlements were not reached with him. The Plan that this court confirmed in February 2021 was supported by the Committee and overwhelmingly by non-insider creditors. Other large, non-insider creditors that supported the Plan,

3

besides those mentioned above, were Patrick Daugherty (a former executive of Highland who has been in litigation with Highland and Mr. Dondero for more than a decade) and HarborVest—each of whom asserted multi-million dollar claims in this case. In any event, the Movants have appealed the confirmation order.

The Motion to Recuse comes 17 months after the Chapter 11 case was filed (although just 15 months after it was transferred to the Presiding Judge). As mentioned, it comes after confirmation of a plan. The Motion to Recuse was filed just two business days before this court is scheduled to hear a motion of the Debtor to hold Mr. Dondero in contempt of a TRO. This hearing on the motion to hold Mr. Dondero in contempt has been continued various times at his request. The underlying TRO has also been the subject of unsuccessful attempts at interlocutory appeals and is currently the subject of a petition for writ of mandamus before the Fifth Circuit.

**I.      LEGAL STANDARD APPLICABLE TO THE MOTION TO RECUSE.**

Before addressing the substance of the Motion to Recuse, the court will address the governing legal authority: 28 U.S.C. § 455, Fed. R. Bankr. Pro. 5004(a), and certain case law interpreting same.

The relevant portions of 28 U.S.C. § 455 provide that:

(a)     Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b)     He shall also disqualify himself in the following circumstances:

(1)     Where he has a personal bias or prejudice concerning a party, a personal knowledge of disputed evidentiary facts concerning the proceeding;

28 U.S.C. § 455(a) & (b)(1).

Bankruptcy Rule 5004(a) further provides that "A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case."

The court first notes that the applicable statute and rule do not expressly address timeliness. However, one Circuit Court has stated that recusal motions must be made in a timely fashion. *Davies v. C.I.R*, 68 F.3d 1129, 1130-31 (9th Cir. 1995) (one year after a ruling was considered untimely).

The court next notes that the applicable statute and rule do not expressly state whether the presiding judge or some other judge should decide a motion to recuse/disqualify. Case authority has interpreted the provisions set forth above to give the targeted judge authority (at least initially) to decide a motion to disqualify. *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999) (a motion to recuse is committed to the discretion of the targeted judge, and the denial of such motion will only be reversed upon the showing of an abuse of discretion); *Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*, 401 B.R. 848, 851 (Bankr. S.D.Tex. 2009) (citing *United States v. Mizell*, 88 F.3d 288, 299 (5th Cir. 1996)(the targeted judge has broad discretion in determining whether disqualification is appropriate)).

Additionally, the court notes that the applicable statute and rule do not expressly state what type of hearing a movant is entitled to, if any. Case authority has interpreted that a motion for disqualification does not necessarily confer upon a movant a right to make a record in open court, nor does it confer upon them a right to an evidentiary hearing. *Lieb v. Tillman (In re Lieb)*, 112 B.R. 830, 835-36 (Bankr. W.D. Tex. 1990).  *See generally* 13A C. Wright, A. Miller & E.

Cooper, *Federal Practice and Procedure* § 3550, at 629 (a section 455 motion can be supported by an affidavit, a verified memorandum, or a statement of facts in some form). The procedure for a targeted judge to follow, as set forth in *Levitt v. University of Texas*, 847 F.2d 221, 226 (5th Cir. 1988), and as more specifically articulated in *Lieb v. Tillman*, 112 B.R. at 836, is: (a) first, the targeted judge should decide whether the "claim asserted" by the movants "rises to the threshold standard of raising a doubt in the mind of a reasonable observer" as to the judge's impartiality; (b) if not, then the judge should not recuse himself; and (c) if so, another judge should "decide what the facts are," *i.e.,* hold an evidentiary hearing, and presumably then this other judge would decide whether disqualification is appropriate.

Next, with regard to evaluating a motion to recuse, the Fifth Circuit has recognized that section 455(a) claims are fact-driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by a comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue. *United States v. Jordan,* 49 F.3d 152, 157 (5th Cir. 1995). As a matter of law, clashes between the court and counsel for a party is an insufficient basis for disqualification, and Circuit Courts have refused to base disqualification under Section 455 upon apparent animosity towards counsel. *In re Lieb*, 112 B.R. at 835 (citing *Davis v. Board of School Comm'rs*, 517 F.2d 1044, 1050-52 (5th Cir. 1975) (holding that disqualification should be determined "on the basis of conduct which shows a bias or prejudice or lack of impartiality by focusing on a party rather than counsel.")); *See also Focus Media, Inc. v. NBC (In re Focus Media),* 378 F.3d 916, 929-31 (9th Cir. 2004) (adverse rulings and negative remarks ordinarily do not support a bias challenge). Disqualification is appropriate if a reasonable person,

knowing all of the relevant circumstances, would harbor doubts about a judge's impartiality. *Chitmacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir. 1982).

Finally, if a movant appeals a decision not to disqualify and the district court finds the record and documents submitted to be inadequate for a determination, it may remand and direct another judge to conduct an evidentiary hearing to enlarge the record. Such procedure is consistent with *Levitt. See Lieb v.Tillman*, 112 B.R. at 836.

## II.     THE UNIQUE FACTS AND CIRCUMSTANCES APPLICABLE HERE.

First, the court determines that the Motion to Recuse is not timely. Again, it was filed more than 15 months after the Presiding Judge was transferred the Highland case. It comes after many dozens of orders have been issued by the court, including a confirmation order that the Movants have now appealed. It comes on the eve of a contempt hearing. The timing does not seem to pass muster—if, indeed, timeliness is a factor, as the Ninth Circuit has suggested.

But, since the Motion to Recuse raises serious issues, the court will nevertheless analyze it as though it is timely. The court will address whether the overall circumstances might cause a reasonable observer to question or harbor doubts about the court's impartiality. Would the claims asserted in the Motion to Recuse rise to the threshold standard of raising a doubt in the mind of a reasonable observer as to the court's impartiality?

### A.  The Acis Case.

At the heart of the Motion to Recuse seems to be an assertion that the Presiding Judge gained extrajudicial knowledge and developed opinions of Mr. Dondero and the Affected Entities during the Acis case and that this has created animus or bias towards them in the Highland case and related adversary proceedings. Evaluating this contention requires some

7

examination of just what the court heard and adjudicated in the Acis case.

Acis Capital Management, L.P. ("Acis LP"), a Delaware limited partnership, and ACIS Capital Management GP, L.L.C. ("Acis GP/LLC"), a Delaware limited liability company—were two entities within the approximately 2,000-entity organizational structure of Highland that were forced into an involuntary bankruptcy case in January 2018 (for convenience, the court will collectively refer to them as "Acis"). The Presiding Judge presided over the Acis case. Mr. Dondero was the president of the two Acis Debtors, as well as the CEO of Highland at the time. The Presiding Judge's recollection is that Mr. Dondero testified *only once* during the lengthy Acis proceedings (during the trial on the involuntary petitions in the Spring of 2018) and, at all other times, various inhouse counsel at Highland served as the witnesses for Acis and Highland.

As far as "extrajudicial knowledge," what the Presiding Judge learned from the Acis case was largely regarding the "CLO Industry." The court learned that Highland was a pioneer, among registered investment advisors, in the securitization investment product known as a "CLO" (collateralized loan obligations) and Acis, for many years, was the vehicle through which Highland's CLO business was managed. The court learned about the typical structure of these CLOs (the various tranches of debt and the rights they enjoyed), the typical governing documents for and life span of a CLO, the typical portfolio management agreements, the shared services agreements, and the sub-advisory agreements that undergirded the whole operation. The court learned about Highland's role in these and the role of Acis, historically, and the role of an entity known as Highland CLO Funding "("HCLOF"). HCLOF is not a movant on the Motion to Recuse. If the Presiding Judge made any specific rulings with regard to Mr. Dondero or the Affected Entities during the Acis case, she cannot recall. The court certainly does recall

accusations made by Acis against *Highland* and *HCLOF* with regard to alleged fraudulent transfers and alleged denuding of Acis assets to thwart judgment creditor Josh Terry. The court has never ruled on the actual fraudulent transfer claims and, the Presiding Judge believes that the claims at least among Acis and Highland have been settled.

In summary, the extrajudicial knowledge—if it should be considered that—the Presiding Judge gained from the Acis case, that is now suggested to have created bias or animus, was knowledge about the highly complex CLO products industry, knowledge about the forms of agreement that typically set forth parties' rights and obligations, and some knowledge about the Highland business structure and the shared services and sub-advisory services model it typically used. The Presiding Judge at all times has been aware that Mr. Dondero was a founder of Highland, and was the President of Acis and CEO of Highland at relevant times. To be clear, a Chapter 11 Trustee was appointed in the Acis case soon after an order for relief was entered, and the Presiding Judge only recalls Mr. Dondero testifying once in court during the Acis case. The Presiding Judge has a vague recollection that deposition testimony may have been presented at another time. The court cannot recall any of the other Affected Entities ever being parties appearing in the Acis case or providing testimony.

The court notes, anecdotally, that 28 U.S.C. § 1408(2) contemplates that venue is proper over a case "in which there is a pending case under title 11 concerning such person's affiliate, general partner or partnership." Thus, it is not *per se* improper (in fact, is generally proper) for a presiding judge to preside over cases of affiliated business entities of a party. It happens all the time.

### B. Bias or Animus, More Generally?

More generally, the court does not believe that the provisions of 28 U.S.C. § 455 are implicated here. The Presiding Judge does not believe she harbors, or has shown, any personal bias or prejudice against the Movants.

As earlier mentioned, case law has held that clashes between a court and counsel for a party is an insufficient basis for disqualification, and Circuit Courts have refused to base disqualification under Section 455 upon apparent animosity towards counsel. *In re Lieb*, 112 B.R. at 835 (citing *Davis v. Board of School Comm'rs*, 517 F.2d 1044, 1050-52 (5th Cir. 1975) (holding that disqualification should be determined "on the basis of conduct which shows a bias or prejudice or lack of impartiality by focusing on a party rather than counsel.")). Not only does this court have the utmost respect for Mr. Dondero's and each of the Affected Entities' counsel, but the court has no disrespect or animus toward Mr. Dondero on a personal level or any of the Movants.

This court has merely addressed motions, objections, and other pleadings as they have been presented. It has issued and enforced orders where requested and warranted. This court and all courts sometimes use strong words as part of managing a complex and contentious case. None of this should be interpreted as "bias" or "prejudice." It is simply about rule enforcement and managing a docket consistent with this court's duty to the public. The court does not believe the assertions of the Movants rise to "the threshold standard of raising a doubt in the mind of a reasonable observer" as to the judge's impartiality.

WHEREFORE, it is hereby

ORDERED that the Motion to Recuse is denied. The court reserves the right to

supplement or amend this ruling.

It is so ORDERED.

###END OF ORDER###