PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Judith Elkin (TX Bar No. 06522200)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | §<br>§ | Case No. 19-34054-SGJ-11 |
| | § | |
| Debtor. | § | |
| | § | |

**DEBTOR'S OBJECTION TO MOTION FOR MODIFICATION OF ORDER AUTHORIZING RETENTION OF JAMES P. SEERY, JR. DUE TO LACK OF SUBJECT MATTER JURISDICTION**

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

Highland Capital Management, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor"), files this objection (the "Objection") to the *Motion for Modification of Order Authorizing Appointment of James P. Seery, Jr. Due to Lack of Subject Matter Jurisdiction* [Docket No. 2242] (the "Motion") filed by Charitable DAF Fund, L.P. ("DAF") and CLO Holdco, Ltd. ("CLOH" and with DAF, the "Movants"). In support of the Objection, the Debtor respectfully states as follows:

## **INTRODUCTION**

1.     Movants blatantly disregarded this Court's prior January 9, 2020[2] and July 16, 2020[3] orders (together, the "Governance Orders") and attempted to add James P. Seery, Jr. to their baseless lawsuit (the "CLOH Lawsuit")[4] filed in the United States District Court for the Northern District of Texas (the "District Court") which should have been filed in this Court in the first instance.[5]  The District Court denied Movants' request and Movants – and their counsel – are now subject to the Debtor's motion seeking to hold them in contempt for such brazen and disrespectful conduct.[6]  Belatedly, Movants – who are controlled by James Dondero and have been actively involved in this case since its inception – argue for the first time that this Court did not have jurisdiction to enter the Governance Orders.  Ignoring that these Governance Orders are final, not subject to appeal, and in the case of the January 9 Order was approved by Mr. Dondero, Movants

---

[2] *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* entered January 9, 2020 [Docket No. 339] (the "January 9 Order").

[3] *Order Approving Debtor's Motion under Bankruptcy Code Sections 105(a) and 363(b) for Authorization to Retain James P. Seery, Jr. as Chief Executive Officer, Chief Restructuring Officer and Foreign Representative Nunc Pro Tunc to March 15, 2020* entered July 16, 2020 [Docket No. 854] (the "July 16 Order").

[4] *Charitable DAF Fund, L.P. and CLO Holdco, Ltd. v. Highland Capital Management, L.P., Highland HCF Advisor, Ltd. and Highland CLO Fund, Ltd.*, Case No. 3-21-cv-00842-B.

[5] The Debtor will be filing a *Motion for an Order to Enforce the Order of Reference* (the "Motion to Enforce Reference") in the District Court asking the District Court to enforce the reference and send the CLOH Lawsuit to this Court.

[6] *Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court Orders* (the "Contempt Motion") [Docket No. 2235, as re-docketed, 2247].

ask this Court to allow them to sue Mr. Seery outside this Court without first demonstrating to this Court that the claims are colorable and asserted in good faith.

2.      Movants position appears to be that since the Governance Orders have a provision that provides for exclusive jurisdiction to hear the underlying matter if this Court determines the claim is colorable, then all the provisions of the Governance Orders should be stricken.  As noted below, Movants position is not only incorrect, but is premature at best given that this Court has not yet ruled on whether the claims in the CLOH Lawsuit are colorable.  Even if this Court were to rule that such claims are colorable, the Court clearly has jurisdiction to hear the claims asserted by Movants in the CLOH Lawsuit under the jurisdiction provisions of title 28 and applicable Fifth Circuit law.

3.      As a preliminary matter, nothing in the Motion explains or justifies Movants' refusal to comply with the Governance Orders, seek the requisite determination from this Court that the CLOH Lawsuit claims are colorable, and then raise the jurisdiction issue with the Court if the claims were determined to be colorable.  As Movants take issue with the Court's jurisdiction to have included one word ("sole") in one sentence of the Governance Orders, such a process would have been compliant with the Governance Orders and significantly more cost-effective for all parties than the procedure chosen by Movants.  Movants argument in this regard is premature as there has yet to be a determination of whether the claims Movants seek to assert against Mr. Seery in the CLOH Lawsuit are colorable.  Until such determination is made, the issue of this Court's jurisdiction to hear such claims is not ripe for review.

4.      Notwithstanding that the Motion is premature, this Court should deny the Motion on the merits as well.  First, Fifth Circuit law is clear that a party may not collaterally attack a court order, even if, as the Movants contend, the Court lacked jurisdiction to enter the order in the first

place. Second, even if the Court could revisit its jurisdiction at this late stage, the Court clearly had jurisdiction to enter the Governance Orders. The subject matter of the Governance Orders – the retention and terms of retention of Court-appointed fiduciaries, the establishment of operating protocols for the Debtor's businesses and assets, and the approval of protections and procedures designed to prevent frivolous litigation – is within the statutory jurisdiction vested in this Court. Under established Fifth Circuit law, this Court is vested with authority to determine whether a claim against a Court-appointed officer is colorable and such authority is also consistent with the Barton Doctrine.

5.       Lastly, the Court clearly would have subject matter jurisdiction to adjudicate the underlying claims in the CLOH Lawsuit. The CLOH Lawsuit is a transparent attempt to collaterally attack and relitigate the Court's approval of the Debtor' settlement with one of its largest creditors, HarbourVest, a settlement Movants objected to and which Mr. Dondero (through a trust he controls and of which he is the beneficiary) has appealed. Any claims against Mr. Seery would directly impact the administration of the estate and creditor recoveries, and trigger indemnification claims thereby vesting this Court with jurisdiction under settled Fifth Circuit authority.

## **BACKGROUND FACTS**

6.       Movants are controlled by Mr. Dondero, the Debtor's founder, and are "Related Entities," as discussed below. CLOH is an entity wholly-owned and controlled by the DAF. Until at least mid-January 2021, Grant Scott, Mr. Dondero's life-long friend and college roommate, was the general partner and sole director of the DAF and the sole trustee of CLOH.

7.       On December 4, 2019, CLOH filed a *Notice of Appearance and Request for Copies* [Docket No. 152] in this bankruptcy case, by and through its counsel Kane Russell Coleman Logan

PC, in which it alleged it was a creditor of the Debtor and sought to be served with all pleadings filed in the case. Since filing the Notice of Appearance, CLOH has received notice of all pleadings filed in the case, objected to certain motions filed by the Debtor, and appeared before this Court multiple times.

8. On January 9, 2020, the Court entered the January 9 Order, approving a settlement pursuant to which, *inter alia*, the Debtor and the Official Committee of Unsecured Creditors (the "Committee") agreed to certain operating protocols and corporate governance changes, including the appointment of an independent board of directors (the "Independent Board") at Strand Advisors, Inc. ("Strand"), the Debtor's general partner, and authorization for the Debtor to indemnify the Independent Board and purchase D&O insurance. The Independent Board consists of Mr. Seery, John S. Dubel, and retired bankruptcy judge Russell Nelms (collectively, the "Independent Directors"). Mr. Dondero consented to the January 9 Order to avoid the appointment of a chapter 11 trustee.[7] Movants were served with a copy of the Governance Settlement Motion[8] and did not object to it.

9. Importantly, as relevant to this Motion, paragraph 10 of the January 9 Order provides as follows:

> No entity may commence or pursue a claim or cause of action of any kind against any Independent Director, any Independent Director's agents, or any Independent Director's advisors relating in any way to the Independent Director's role as an independent director of Strand without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Independent Director, any Independent Director's

---

[7] The January 9 Order also restricted certain actions that could be taken by Mr. Dondero and his "Related Entities," as defined in the Section I.D. of the operating protocols, as amended (the "Protocols") [Docket No. 466] approved by the Court in connection with the January 9 Order. These Related Entities, and various others owned and/or controlled by Mr. Dondero are referred to herein as the "Dondero-Related Entities."

[8] *See Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 281] (the "Governance Settlement Motion") and *Certificate of Service* [Docket No. 297], reflecting service of the Governance Settlement Motion on CLOH on December 27, 2019.

agents, or any Independent Director's advisors and (ii) specifically authorizing such entity to bring such claim. The Court will have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

January 9 Order ¶ 10.[9]

10. On July 16, 2020, this Court entered the July 16 Order which approved the terms and conditions upon which the Debtor was authorized to retain Mr. Seery as chief executive officer ("CEO"), chief restructuring officer ("CRO"), and foreign representative ("FR", and with the titles of CEO and CRO, the "Executive"), as set forth in the Engagement Letter attached to the July 16 Order. Movants were served with a copy of the CEO/CRO Motion[10] and did not object to it.

11. The July 16 Order contained indemnification provisions, D&O insurance coverage, and a gatekeeper provision similar to those contained in the January 9 Order. The July 16 Order contained the same two-step process as the January 9 Order which required potential litigants seeking to sue Mr. Seery in regard to actions taken in his capacity as Executive to first seek a determination from this Court that the alleged claim was colorable, and then, if it was, to litigate such claim in this Court.

12. As relevant to this Motion, paragraph 5 of the July 16 Order provides as follows:

No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval o the Court

---

[9] Movants conveniently ignore the January 9 Order to distance themselves from Mr. Dondero's express agreement to its provisions. They presumably will argue that that are suing Mr. Seery in his capacity as CEO and not as an Independent Director, thereby implicating only the July 16 Order appointing Mr. Seery as CEO. However, Mr. Seery is also covered by the January 9 Order because it applies to the Independent Directors and *their agents*. As the CEO, Mr. Seery is clearly an ***agent*** of the Independent Board and enjoys the protections of both Orders.

[10] See *Motion under Bankruptcy Code Sections 105(a) and 363(b) for Authorization to Retain James P. Seery, Jr. as Chief Executive Officer, Chief Restructuring Officer and Foreign Representative Nunc Pro Tunc to March 15, 2020* [Docket No. 774] (the "CEO/CRO Motion") and *Certificate of Service* [Docket No. 779], reflecting service of the CEO/CRO Motion on CLOH on June 23, 2020.

to commence or pursue has been granted.

July 16 Order ¶ 5.

13.    In entering the Governance Orders, this Court determined it had subject matter jurisdiction in connection therewith. No party appealed either the January 9 Order or the July 16 Order, and both Governance Orders are final orders. While the Dondero-Related Entities objected to the Court's jurisdiction to approve the gatekeeper provision contained in the Debtor's Plan,[11] at no time during the plan confirmation process did the Dondero-Related Entities argue that the Court did not have jurisdiction to approve either the January 9 Order or the July 16 Order, each of which was argued extensively in the context of the exculpation provision contained in the Plan.

14.    On April 12, 2021, after obtaining new counsel,[12] Movants filed a complaint (the "Complaint") in the District Court commencing the CLOH Lawsuit. The Complaint is another collateral attack on an order of this Court, this time on an order approving a settlement between the Debtor and a significant creditor of the Debtor, HarbourVest[13] (the "HarbourVest Settlement"). The HarbourVest Settlement was approved by this Court on January 21, 2020.[14] In their Complaint, Movants assert claims against the Debtor for breach of fiduciary duty, breach of contract, negligence, violation of RICO, violations of federal securities laws and tortious interference, all in connection with the HarbourVest Settlement and arising out of the same facts

---

[11] *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808] (as amended, the "Plan").

[12] Upon information and belief, Mr. Dondero fired Mr. Scott and his counsel, John Kane of Kane Russell, after Mr. Scott withdrew CLOH's objection to the HarbourVest Settlement (as defined below), and settled an adversary proceeding the Debtor commenced against certain Dondero-Related Entities. *See Notice of Settlement* filed at Docket No. 50 in Adversary Proceeding No. 21-03000.

[13] "HarbourVest" collectively refers to the following entities: HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P. HarbourVest asserted a claim in excess of $300 million against the Debtor.

[14] *See Order Approving Debtor's Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith* [Docket No. 1788].

that formed the basis of the HarbourVest Settlement.[15]

15.     Throughout the Complaint, Movants threaten to name Mr. Seery as a defendant, and indeed, on April 19, 2021, just four days after filing the Complaint, counsel for Movants advised Debtor's counsel that they "intend to move for leave today in the district court seeking permission to amend our complaint to add claims against Mr. Seery.  They are the same causes of action.  We believe we are entitled to amend as a matter of course."[16]  Counsel asked whether they could "put your client down as unopposed?"[17]  In response, Debtor's counsel informed Movants' counsel of the gatekeeper provisions contained in the Governance Orders which clearly prohibited commencement of a lawsuit against Mr. Seery without the prior approval of this Court, provided copies, and told Movants' counsel, among other things, that "[i]f you proceed to amend the complaint as you suggest [] without first obtaining Bankruptcy Court approval we reserve all rights to take appropriate action and seek appropriate relief from the Bankruptcy Court."[18]  Later that evening, Movants' counsel confirmed their intention to seek leave from the District Court to sue Mr. Seery and, on April 19, 2021, filed *Plaintiff's Motion for Leave to File First Amended Complaint* (the "Motion for Leave") seeking such relief – without serving or providing a courtesy copy to the Debtor.[19]

16.     The Motion for Leave was a blatant and deliberate violation of the Governance Orders.  On April 23, 2021, the Debtor filed the Contempt Motion.  Later that evening, Movants filed this Motion seeking to "modify," rather than comply with, the July 16 Order.

---

[15] As indicated *supra* n.5, the Debtor will be filing a Motion to Enforce the Reference in regard to the CLOH Lawsuit.

[16] *See Declaration of John A. Morris in Support of Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court Orders* (the "Morris Declaration") [Docket No. 2237], Ex. 14 (e-mails between counsel for the Debtor and counsel for Movants).  The Debtor hereby incorporates the Morris Declaration herein by reference.

[17] *Id.*, Exs. 13 and 14.

[18] *Id.*, Ex. 14.

[19] *Id.*, Ex. 18.  On April 20, 2021, the District Court denied the Motion for Leave without prejudice.  *Id.*, Ex. 19.

## THE MOTION IS AN IMPERMISSIBLE COLLATERAL ATTACK ON PRIOR ORDERS OF THIS COURT

17.     This Court should deny the Motion because it is an impermissible collateral attack on the Governance Orders.  Movants cite no authority that would authorize the Court to revisit either of the Governance Orders.  Movants sole argument is that this Court lacked subject matter jurisdiction to include the gatekeeper provision in the July 16 Order.  As discussed below, the argument is as untimely as it is wrong.

18.      Movants had actual notice of the proceedings resulting in the Governance Orders. Movants never objected to nor appealed from either of the Governance Orders.  In fact, Mr. Dondero agreed to the January 9 Order to avoid the appointment of a chapter 11 trustee.  The Governance Orders have been in place for from 9 months to over a year, are final orders of this Court, and are the law of this case.[20]

19.     The Fifth Circuit in *Republic Supply Co. v. Shoaf*[21] made clear that if a party fails to object to or appeal from a final order - even one that grants relief that may be outside the court's jurisdiction - the order is *res judicata* against parties who had the opportunity to object to it, becomes the law of the case, and is not subject to collateral attack.

20.     *Republic Supply* is directly on point and is dispositive.  Shoaf had guaranteed a debt owed to Republic by his former company, Command.   Command filed for bankruptcy and ultimately confirmed a plan which provided for certain payments to Republic, but also released any guarantors.  Republic appeared at the confirmation hearing, but did not object to nor appeal

---

[20] *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) (regardless of relief sought, it is a collateral attack if it must in some fashion overrule a previous judgment); *see also In re Moye*, 437 Fed. Appx. 338, 341 (5th Cir. 2011) ("Under the law-of-the-case doctrine, a court follows its prior final decisions in the case as the law of that case, except for a few narrow exceptions.") (internal quotations omitted); *In re Provenza*, 316 B.R. 177, 220 (Bankr. E.D. La 2003) ("Under the law of the case doctrine, a court may not address issues that have been litigated and decided in earlier proceedings in the same case.").
[21] 815 F.2d 1046 (5th Cir. 1987).

from the confirmation order which included the release of Shoaf's guaranty.  Republic later tried

to enforce the guaranty against Shoaf.  The Fifth Circuit determined that Republic was barred from

bringing a claim that was specifically and expressly released by a confirmed reorganization plan

because Republic had the opportunity to object to the release at confirmation but failed to do so.

Consequently, the Fifth Circuit held that Republic was now collaterally attacking the release.

21.    In ruling that Republic was bound by the confirmation order's release, the Fifth

Circuit expressly addressed the argument that the bankruptcy court lacked jurisdiction to grant the

third party release.  *Id.* at 1051-1053 and n.6 ("Indeed, our opinion today assumes that the

bankruptcy court did not have subject matter jurisdiction to release the guaranty in question

here.").  Nonetheless, in relying on *Stoll v. Gottlieb*, 305 U.S. 165 (1938), the Fifth Circuit

determined that when a court renders a judgement, it implicitly determines it has jurisdiction to do

so, and if a party who had the opportunity to challenge the court's jurisdiction failed to do so, that

party is bound by the entered order.  *Id.* at 1052.  The Fifth Circuit (quoting from *Stoll*) stated:

> a court by necessity has the authority to determine its own jurisdiction over the
> parties and subject matter, and does so either tacitly or expressly, by rendering a
> judgment.  Consequently, to allow a party to collaterally attack a court's jurisdiction
> is to allow retrial of issues already decided.  Therefore,
>
> > after a Federal court has decided the question of the jurisdiction over
> > the parties as a contested issue, the court in which the plea of *res
> > judicata* is made has not the power to inquire again into that
> > jurisdictional fact.  We see no reason why a court, in the absence of
> > an allegation of fraud in obtaining the judgment, should examine
> > again the question whether the court making the earlier
> > determination on an actual contest over jurisdiction between the
> > parties, did have jurisdiction of the subject matter of the litigation.

*Id*. (citing *Stoll,* 305 U.S. at 172 (footnotes omitted)); *see also, Chicot County Drainage District*

*v. Baxter State Bank*, 308 U.S. 371 (1939) (bondholders were bound by bankruptcy court order

cancelling certain bond obligations which bondholders had the opportunity to object to but did not,

notwithstanding that the bankruptcy court did not have jurisdiction to enter the order).

22.     Movants had actual notice of the Governance Orders.  Movants have been active participants in this case, aided by competent counsel, and clearly know how to file pleadings and object.  In entering the Governance Orders, this Court expressly determined it had jurisdiction to grant the relief set forth therein.  The gatekeeper provisions and the procedures for asserting claims against any of the Independent Directors (including the Executive) are clearly set forth in the Governance Orders.  Movants never objected to the Governance Settlement Motion or the CEO/CRO Motion and never challenged the substance of the resulting Governance Orders or the jurisdiction of this Court to enter them.  Therefore, they cannot now seek relief from this Court to "modify" the Governance Orders.

23.     Movants' collateral attack on the July 16 Order (and by implication, the January 9 Order) is prohibited by applicable Supreme Court and Fifth Circuit law, and the Motion should be denied.

## THE BANKRUPTCY COURT HAD JURISDICTION TO ENTER THE JULY 16 ORDER AND ITS GATEKEEPER PROVISION

24.     Even if this Court or the District Court could revisit the Governance Orders – which they cannot – this Court clearly had jurisdiction to enter the Governance Orders.  Movants fail to address – let alone contest – the requirement that a party first must seek this Court's approval before commencing a claim against Mr. Seery.  As discussed below, both the Barton Doctrine and the jurisdiction granted to this Court under 28 U.S.C. § 157(b) support such jurisdiction.  Rather, Movants focus on the "sole jurisdiction" sentence in an attempt to extricate themselves from compliance with the July 16 Order.  However, even if the provision granting this Court exclusive jurisdiction to adjudicate any such claim that passed through the gate could theoretically raise jurisdictional concerns, none exist in this case because this Court has subject matter jurisdiction over the claims raised in the CLOH Lawsuit.  In any event, the issue is premature until Movants

obtain a determination from this Court that the claims they seek to assert against Mr. Seery are colorable and a lawsuit may be commenced.

## BANKRUPTCY COURTS ARE VESTED WITH JURISDICTION OVER MATTERS ARISING UNDER, ARISING IN OR RELATED TO A CHAPTER 11 CASE

25.     The issue of bankruptcy court jurisdiction has resulted in uncountable numbers of pages of analyses by courts and scholars alike.  Yet, the Fifth Circuit has crafted a comparatively clear standard for determining when bankruptcy courts have jurisdiction, especially as applied to the facts of this case.

26.     In general, district courts have jurisdiction over bankruptcy cases and they may, in their discretion, refer those cases to the bankruptcy courts.  28 U.S.C. § 1334 (district court jurisdiction); 28 U.S.C. § 157 (bankruptcy court jurisdiction).  The jurisdictional grant to the bankruptcy court is divided into "core" and "non-core" proceedings.  Core proceedings arise under title 11 or arise in a case under title 11.  28 U.S.C. § 157(b).  Non-core proceedings are those proceedings that are otherwise related to a bankruptcy case under title 11.  28 U.S.C. § 157(c)(1).  Bankruptcy judges may enter all appropriate orders and judgments in core proceedings, but unless the parties consent to core treatment, a bankruptcy judge must submit proposed findings of fact and conclusions of law in non-core proceedings to the district court.  28 U.S.C. § 157(b) and (c); *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner* (*In re Stonebridge Techs., Inc.*), 430 F.3d 260, 266 (5th Cir. 2005).[22]

27.     The seminal Fifth Circuit case on bankruptcy court jurisdiction is *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir. 1987).  "For the purpose of determining whether a particular

---

[22] In their Motion, Movants state: "Not only does the [Bankruptcy] Court lack '**sole jurisdiction**' over all causes of action brought against Seery related to his role as [the Debtor's] CEO, according to the plain language of 28 U.S.C. § 1334, this [Bankruptcy] Court does not even have **concurrent jurisdiction** over **all** such claims."  Motion at 6 (emphasis original).  This statement is an incorrect reading of section 1334, and contrary to all current bankruptcy jurisprudence.

matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', title 11.  These references operate conjunctively to define the scope of jurisdiction.  Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Id.* at 93.  A proceeding "relates to" a proceeding under title 11 even if it arises from post-petition conduct if "it affects the estate, not just the debtor." *Id.*, at 94.  In *Wood*, the Court expressly adopted the "conceivable impact on the estate" test. *Id*. at 93.  The Fifth Circuit has been consistent in its application of this test in determining whether a matter falls within the bankruptcy court's "related to" jurisdiction.

28.     Since *Wood*, the Fifth Circuit has further elaborated on the "conceivable impact" test:

> To determine whether a particular matter falls within general bankruptcy jurisdiction, we ask whether the outcome of that proceeding could have ***any conceivable effect on the estate*** being administered in bankruptcy. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987).  More specifically, ***an action is related to bankruptcy if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.***" *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir. 1988) (quoting *Pacor Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

*In re Stonebridge Techs., Inc.*, 430 F.3d at 266 (emphasis added).

### THE BANKRUPTCY COURT HAD SUBJECT MATTER JURISDICTION TO REQUIRE THAT PARTIES FIRST SEEK BANKRUPTCY COURT APPROVAL BEFORE COMMENCING A LAWSUIT AGAINST THE INDEPENDENT DIRECTORS, THE EXECUTIVE OR THEIR RESPECTIVE AGENTS.

29.     Both the Governance Settlement Motion and the CEO/CRO Motion were core proceedings under 28 U.S.C. § 157(b)(2)(A) in that they concerned the administration of the estate.  The resulting Governance Orders established an independent corporate governance structure for the Debtor and, through the Protocols, corporate governance procedures as to how the Debtor would operate its various businesses and manage its assets.  Nothing in the Governance Orders is

inconsistent with 28 U.S.C. § 1334(b) which simply provides that the district court shall have "original but not exclusive jurisdiction" over all civil proceedings "arising under," "arising in or related to" a bankruptcy case. Under applicable Fifth Circuit law, both the Governance Orders, including the nearly identical gatekeeper provisions contained in those Orders, were clearly within this Court's jurisdiction.

30. The requirement contained in paragraph 10 of the January 9 Order and paragraph 5 of the July 16 Order that any person seeking to assert a claim against the Independent Directors, their agents and advisors, and the Executive first seek authorization from this Court before asserting such claim was necessary to shield the protected parties from frivolous or endless and burdensome litigation.[23] There can be no credible dispute that frivolous or endless and burdensome litigation would have a "conceivable impact" on the Debtor's estate, both financially and operationally. For example, claims brought against the Independent Directors or the Executive would trigger the Debtor's indemnification obligations thereby depleting assets and diminishing recoveries to the Debtor's creditors.[24]

31. Determining that claims against court-approved estate fiduciaries are "colorable" is clearly within this Court's jurisdiction as pursuit of such claims would have a significant effect on the administration of the Debtor's estate, especially in light of the Debtor's significant

---

[23] As the Court will recall, a substantial part of the two-day evidentiary confirmation hearing was devoted to testimony and argument regarding the Court's authority to approve a gatekeeper provision as part of the Plan. The uncontroverted testimony persuaded the Court that the Dondero-Related Entities' persistent, disruptive actions and litigation tactics necessitated the approval of the Plan gatekeeper provision and that it and the related exculpation provision were critical to the Plan's success. Unfortunately, the last several months of the case have demonstrated just how important the gatekeeper provisions in the Governance Orders (and the Plan) were then – and are now.

[24] More fundamentally, there is substantial evidence in the record – none of which was ever objected to or rebutted – that the Independent Directors and the Executive would *never* have accepted their positions without the gatekeeper provisions precisely because of Mr. Dondero's notorious history for frivolous, endless and burdensome litigation. *See Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], ¶ 14. Stated another way, the gatekeeper provisions the Movants seek to retroactively excise were part of the *quid pro quo* that resulted in the entry of the Governance Orders.

indemnification obligations. *See, e.g., Stonebridge*, 430 F.3d at 266-67 (bankruptcy court had "related to" jurisdiction over a dispute between a landlord and a bank over both a letter of credit draw and claims for misrepresentation where in either case, the estate would be required to reimburse the bank for any liability it had to the landlord); *Collins v. Sidharthan (In re KSRP, Ltd.)*, 809 F.3d 263, 266-67 (5th Cir. 2015) (bankruptcy court had "related to" jurisdiction over lawsuit for breach of contract, tortious interference, and other state law claims against non-debtor third party because of potential indemnification claim against debtor, even though ultimately bankruptcy court determined the indemnification claim was invalid); *Refinery Holding Co., L.P. v. TRMI Holdings, Inc. (In re El Paso Refinery, L.P.)*, 302 F.3d 343, 349 (5th Cir. 2002) (bankruptcy court had "related to" jurisdiction over lawsuit by owner of refinery against Texaco, who was unrelated to the debtor but had previously owned the refinery, as to allocation of environmental liabilities because there was a chain of indemnification obligations beginning with Texaco and leading directly to the debtor which could have a conceivable effect on the estate); *Principal Life Ins. Co. v. JPMorgan Chase Bank, N.A. (In re Brook Mays Music Co.)*, 363 B.R. 801, (Bankr. N.D. Tex. 2007), report and recommendation adopted, 2011 Bankr. LEXIS 3252 (Bankr. N.D. Tex., Mar. 10, 2011) (bankruptcy court had "related to" jurisdiction over state law tort claims asserted by landlord against secured lender and other third parties because the third parties had contractual indemnification rights against the debtor).

32.     The fact that this Court may not have jurisdiction to adjudicate a claim once it is determined to be colorable, does not prevent it from having jurisdiction to determine if the claim is colorable in the first instance.[25] *See Villegas v. Schmidt*, 788 F.3d 156, 158-59 (5th Cir. 2015)

---

[25] *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 546 B.R. 284 (Bankr. S.D.N.Y. 2016) (bankruptcy court acts as gatekeeper to determine whether claims of certain creditors against certain Madoff feeder funds are direct claims (claims which may be brought by the creditor) or derivative claims (claims which either can only be brought by the Madoff post-confirmation liquidating trust or have already been settled by the trust)); *In re*

(under Barton Doctrine, litigant must still seek authority from the bankruptcy court that appointed the trustee before filing litigation even if the bankruptcy court may not have jurisdiction to adjudicate the underlying claim). Movants also ignore cases from this District approving gatekeeper provisions that granted exclusive jurisdiction to hear matters challenging the actions of debtors' officers and directors arising from their conduct in the bankruptcy cases.[26]

33. The Barton Doctrine also supports the gatekeeper provision which, by analogy, should be applied to the Executive, as well as to the Independent Directors. The Barton Doctrine is based on the Supreme Court case, *Barton v. Barbour*, 104 U.S. 126 (1881), dealing with receivers. As this Court has recognized, the Barton Doctrine:

> provides that, as a general rule, before a suit may be brought against a trustee, leave of the appointing court (*i.e.*, the bankruptcy court) must be obtained. The *Barton* doctrine is ***not*** an immunity doctrine but—strange as this may sound— has been held to be a ***jurisdictional*** provision (in other words, a court will not have subject matter jurisdiction to adjudicate a suit against a trustee ***unless and until*** the bankruptcy court has granted leave for the lawsuit to be filed).

*Baron v. Sherman (In re Ondova Ltd. Co.),* 2017 Bankr. LEXIS 325, *29 (Bankr. N.D. Tex. February 1, 2017); report and recommendation adopted, *Baron v. Sherman (In re Ondova Co.),*

---

*Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015) (discussing bankruptcy court's gatekeeper function over GM ignition switch cases); *In re Motors Liquidation Co.*, 568 B.R. 217 (Bankr. S.D.N.Y. 2017) (same). The use of the gatekeeper structure in the *General Motors* cases is particularly apt. The causes of action arising from defective ignition switches are based on state tort law – both product liability and personal injury – and are causes of action unquestionably outside the jurisdiction of a bankruptcy court to hear on the merits. Nevertheless, the *General Motors* bankruptcy court acted as the gatekeeper post-confirmation to determine whether such litigation should proceed against the estate of the old debtor or the asset purchaser under the confirmed plan. *See also Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233 (5th Cir. 1988) (bankruptcy court must determine that claim is colorable before authorizing a committee to sue in the stead of the debtor).

[26] *See, e.g., In re Pilgrim's Pride Corp.*, 2010 Bankr. LEXIS 72 (Bankr. N.D. Tex. Jan. 14, 2010) (bankruptcy court channeled to itself ***exclusive*** jurisdiction to hear claims against debtors' management (including their boards of directors and chief restructuring officer) and the professionals based upon their conduct in pursuit of their responsibilities during the chapter 11 cases.); *see also In re CHC Group, Ltd.* (Case No. 16-31854, Bankr. N.D. Tex.) *Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization* [D.I. 1671-1, attached to *Findings of Fact and Conclusions of Law, and Order Confirming the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization*], Section 10.8(b) at 57 (court retained ***exclusive*** jurisdiction to hear claims against any "Protected Party," including any claims "in connection with or arising out of . . . the administration of this Plan or the property to be distributed under this Plan, . . . or the transactions in furtherance of the foregoing, . . . .") (emphasis added).

2018 U.S. Dist. LEXIS 13439 (N.D. Tex. Jan. 26, 2018), *aff'd, In re Ondova Ltd.*, 2019 U.S. App. LEXIS 3493 (5th Cir. Tex. Feb. 4, 2019). The Barton Doctrine originated as a protection for federal receivers, but courts have expanded the concept to various court-appointed and court-approved fiduciaries and their agents in bankruptcy cases, including debtors in possession,[27] officers and directors of a debtor,[28] and the general partner of a debtor.[29] Similarly, given that the Independent Directors were appointed to avoid the appointment of a trustee, they should have similar protections from suit.[30]

### THE BANKRUPTCY COURT HAS JURISDICTION TO ADJUDICATE CLAIMS RAISED IN THE COMPLAINT

34. Movants argue that this Court does not have authority to exert exclusive jurisdiction over ***any*** claims that pass through the gate. That argument, however, cannot be evaluated in a vacuum. Regardless of whether the argument has any merit as a general proposition, this Court clearly has jurisdiction over the potential claims Movants seek to assert against Mr. Seery arising out of the facts set forth in the Complaint.

35. The Complaint essentially is a collateral attack on the HarbourVest Settlement, alleging violations of RICO, the antifraud provisions of the Investment Advisers Act of 1940, and a variety of other state and federal claims. The Debtor will be filing its Motion to Enforce the

---

[27] *Helmer v. Pogue*, 212 U.S. Dist. LEXIS 151262 (N.D. Ala. Oct. 22, 2012) (applying Barton Doctrine to debtor in possession); *see also* 11 U.S.C §§ 1107(a) of the Bankruptcy Code, providing that a debtor in possession has all the rights and duties of a trustee and serves in the same fiduciary capacity.

[28] *See Carter v. Rodgers*, 220 F.3d 1249, 1252 and n.4 (11th Cir. 2000) (debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer for acts done in the actor's official capacity, and finding no distinction between a "bankruptcy-court-appointed officer" and officers who are "approved" by the court); *Hallock v. Key Fed. Sav. Bank (In re Silver Oak Homes)*, 167 B.R. 389 (Bankr. D. Md. 1994) (president of debtor).

[29] *Gordon v. Nick*, 1998 U.S. App. LEXIS 21519 (4th Cir. 1998) (managing partner of debtor).

[30] *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981) (discussing qualified immunity of trustees acting within the scope of their employment)

Reference in the District Court[31] pursuant to which the Debtor will request that the District Court refer the CLOH Lawsuit to this Court for adjudication. The CLOH Lawsuit is a rehash of the litigation this Court presided over in connection with approval of the HarbourVest Settlement and attacks matters the Court adjudicated in approving the HarbourVest Settlement over Movants' filed and subsequently withdrawn objection. *See generally* Contempt Motion ¶¶6-38. The claims Movants want to assert against Mr. Seery are based on actions taken by Mr. Seery in his role as a court-appointed fiduciary and implicate his indemnification claims against the estate. Therefore, such claims will have a direct impact on the handling and administration of the estate and fall squarely within the subject matter jurisdiction of this Court under the Fifth Circuit authorities cited above.

36.     Moreover, contrary to Movant's assertion, the CLOH Lawsuit is not subject to mandatory abstention pursuant to 28 U.S.C. § 157(d). Section 157(d) provides for mandatory withdrawal of the reference "if the court determines that resolution of the proceeding ***requires consideration*** of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis added). Movants argue that because the CLOH Lawsuit alleges causes of action arising under the Trust Advisers Act of 1940 and RICO, this Court will have to withdraw the reference. Even assuming Movants' federal law claims are not frivolous (which they are), Movants misinterpret 28 U.S.C. § 157(d).

37.     While the Fifth Circuit has not opined on the meaning of "consideration" in interpreting section 157(d), courts within this Circuit apply the majority view and require

---

[31] *See* Misc. Rule No. 33, United States District Court for the Northern District of Texas, *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*, August 4, 1984, which provides in pertinent part: "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 . . . be and they hereby are referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law." *See also* 28 U.S.C. § 157(a).

withdrawal of the reference only:

> [W]hen "substantial and material consideration" of a federal statute other than the Bankruptcy Code is necessary to the resolution of a case or proceeding. Withdrawal is not mandatory in cases that require only the "straightforward application of a federal statute to a particular set of facts." Rather, withdrawal is in order only when litigants raise "issues requiring significant interpretation of federal laws that Congress would have intended to [be] decided by a district judge rather than a bankruptcy judge."

*Southern Pac. Transp. v. Voluntary Purchasing Groups*, 252 B.R. 373, 382 (E.D. Tex. 2000) (quoting *In re National Gypsum*, 14 B.R. 188, 192-93 (N.D. Tex. 1991); *see also Rodriguez v. Countrywide Home Loans, Inc.*, 421 B.R. 341, 347-48 (S.D. Tex. 2009) (adopting the "majority" view requiring "material and substantial consideration of non-Bankruptcy Code federal law" for withdrawal to be mandatory); *UPH Holdings, Inc. v. Sprint Nextel Corp.*, 2013 U.S. Dist. LEXIS 189349, at *4-7 (W.D. Tex. Dec. 10, 2013) (holding no mandatory withdrawal when, among other reasons, the bankruptcy court will be tasked with no more than application of federal communications law to a given set of facts.)

38.     "Consideration" means "something more than the mere process of examining, thinking about, or taking into account." *In re Vicars Ins. Agency, Inc*., 96 F.3d 949, 953-54 (7th Cir. 1996) (internal quotations omitted). Mandatory withdrawal is only required when resolution of a proceeding requires interpretation of non-bankruptcy federal law meaning something "more than mere application of existing law to new facts." *Id.; see also City of N.Y. v. Exxon Corp*., 932 F.2d 1020, 1026 (2d Cir. 1991) (withdrawal is mandatory when case requires "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes"); *In re Johns-Manville Corp*., 63 B.R. 600, 602 (S.D.N.Y. 1986) ("It is issues requiring significant ***interpretation*** of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge.") (emphasis original).

39.     This narrow interpretation of section 157(d) is consistent with the legislative

history.[32] In *Vicars*, the Seventh Circuit noted that permitting withdrawal when any non-bankruptcy federal question is implicated, even in a minor way, and a party requests withdrawal, would "encourage delaying tactics (perhaps further draining the resources of the debtor), forum shopping, and generally unnecessary litigation." *Id; see also Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*, 2009 U.S. Dist. LEXIS 102134, at *6 (N.D. Tex. Oct. 1, 2009) (quoting *In re G-I Holdings, Inc.*, 295 B.R. 211, 221 (D. N.J. 2003)).

40. Therefore, the mere pleading of a federal question is not a basis for mandatory withdrawal; mandatory withdrawal is only proper when a bankruptcy court would have to interpret and apply federal law on a novel and unsettled question. The claims alleged in the CLOH Lawsuit are not subject to mandatory abstention because none of the putative federal causes of action raised by Movants in the Complaint require "substantial and material consideration" of a non-bankruptcy federal statute or more than the cursory application of settled federal law.

41. Other than containing generic *dicta* on jurisdiction, none of the cases cited by Movants are on point. In *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512 (5th Cir. 2014), the Fifth Circuit held that **both** the bankruptcy court and the district court lacked jurisdiction to grant DIP financing liens on the shares of Vantage that were subject to a pre-bankruptcy ownership dispute because the shares were not property of the estate. Nothing in that case addressed the bankruptcy court's jurisdiction to hear litigation against a court-approved officer and director with contractual indemnification rights against the debtor. Similarly, the issue in *In re Prescription Home Health Care*, 316 F.3d 542 (5th Cir. 2002), was whether the bankruptcy court could enjoin the IRS's collection efforts against the debtor's president and sole owner for trust fund taxes for which he was statutorily personally liable. The

---

[32] *Vicars*, 96 F.3d at 953 (see citations to legislative history contained therein indicating that section 157(d) was not intended to be an "escape hatch" for litigants to take cases from the bankruptcy court)

Fifth Circuit analyzed the unique rights granted to taxing authorities in bankruptcy cases and concluded the bankruptcy court did not have jurisdiction to enter an injunction against the IRS.

42. The Motion requests relief relating to the specific Complaint filed in the CLOH Lawsuit. As discussed previously, the issue of whether this court would have jurisdiction over the CLOH Lawsuit is premature, as Movants have not obtained the prerequisite determination that the claims asserted in the CLOH Lawsuit are colorable. Notwithstanding this defect, based on the rulings of the Fifth Circuit setting forth the "conceivable impact on the estate" test and determining that indemnification obligations meet that test, and given that any liability of Mr. Seery based on the causes of action alleged in CLOH Lawsuit would be the ultimate responsibility of the Debtor, this Court would clearly have at least "related to" jurisdiction over the Complaint.

43. This, in and of itself, is sufficient to defeat the Motion. However, as discussed above (and as will be analyzed more fully in the Motion to Enforce Reference), this Court also has "arising under" jurisdiction over the CLOH Lawsuit because it involves core proceedings.[33]

## CONCLUSION

For the reasons set forth herein, Fifth Circuit law clearly establishes this Court had jurisdiction to enter the Governance Orders and, if the causes of action asserted in the Complaint are colorable, this Court has jurisdiction to adjudicate the CLOH Lawsuit. Therefore, the Debtor respectfully requests that the Court deny the Motion.

---

[33] The CLOH Lawsuit is a challenge to a settlement of claims approved by the Court pursuant to sections 105 and 363 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules. As such, the settlement was unique to the bankruptcy process, included the allowance of contested claims, and was a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (M) and (N). The CLOH Lawsuit is also a collateral attack on the order approving the HarbourVest Settlement, and a court always has jurisdiction to enforce its own orders. *Galaz v. Katona (In re Galaz)*, 841 F.3d 316, 322 (5th Cir. 2016) (A bankruptcy court maintains "jurisdiction to interpret and enforce its own prior orders.") (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)).

Dated: May 14, 2021.        PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)
John A. Morris (NY Bar No. 266326) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Judith Elkin (TX Bar No. 06522200)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          jelkin@pszjlaw.com

-and-

HAYWARD PLLC

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*