SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367

*Counsel for The Charitable DAF Fund, L.P.
and CLO Holdco, Ltd.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |

## RESPONSE OF THE CHARITABLE DAF FUND, L.P., CLO HOLDCO, LTD., AND SBAITI & COMPANY PLLC TO SHOW CAUSE ORDER

# I. INTRODUCTION

We write in response on behalf of the Charitable DAF Fund, L.P. (the "DAF"), CLO Holdco, Ltd. ("CLO Holdco"), and Sbaiti & Company PLLC (altogether, the "Respondents").[1]

We are deeply concerned by this Court's adoption of the name-calling initiated by Movants. Identifying Respondents as the "Violators" in the order to show cause suggests that this Court has prejudged the issues before it and creates the appearance of impropriety. We are equally concerned that the show-cause order was communicated to us by Debtor's counsel, verbatim, ***three days before*** this Court actually issued that order, as if Debtor's counsel speaks for the Court and has special, advance access to its pronouncements. This also creates the appearance of impropriety.

We are especially concerned that any prejudgment this Court may have made is based solely on the deliberately misleading statements in Movants' brief. Respondents respectfully submit that the issue before the Court here is not whether Mr. Seery has been sued in violation of an order of this Court, as Movants want this Court to believe. Seery has not been sued at all.

The issue here is whether Respondents should be held in contempt for ***asking permission from the district court***, which has original jurisdiction over the action, to sue Seery. Movants claim this Court has stripped the district court of jurisdiction—construing this Court's reference to "sole jurisdiction" as excluding the district court from which this Court derives its jurisdiction. Not only did we not violate this Court's orders by filing a motion for leave in the district court, we complied with them. And even were it otherwise, no case cited in the Motion, and no case we could find, has issued sanctions as a result of a party asking a court for leave to do something, even if it was the wrong court.

---

[1] The undersigned do not represent the other persons required by this Court's order to appear in person on June 8, 2021, and therefore, this Response is on behalf of the named respondents.

Thus, we respectfully submit:

- that we have not violated any order of this Court,

- that we have carefully studied and complied with those orders,

- that we have not been sneaky or deceptive, and

- that we fully disclosed to the district court, to opposing counsel, and to this Court both what we were seeking to do and why doing so would not violate this Court's orders.

In addition to misrepresenting the law, Movants have misrepresented the facts. They have loaded their motion with histrionics, character smears, and half-truths aimed at distracting this Court from the actual record. We respectfully ask this Court to carefully consider Movants' representations and compare them to the record, as we have attempted to do below. We submit that the record shows that Respondents have not violated any order because we did not sue Seery (the only prohibited act we have been accused of).

We respectfully ask this Court to carefully consider the reach of its own powers—most importantly its power to strip the district court of congressionally granted original jurisdiction—which we respectfully contend this Court did not and cannot do.

We respectfully ask this Court to carefully consider the relief requested by Movants, who claim to have incurred not one red cent in costs or fees defending Respondents' motion for leave, the motion that forms the sole basis for their contempt motion. Because the relief requested is punitive rather than compensatory, we respectfully submit that it is beyond this Court's powers to award non-compensatory damages. And because Respondents have asked this Court for relief from the orders that Movants claim were violated, the present Motion is wholly unnecessary.

Finally, we respectfully ask this Court to expunge from its docket any order prejudging Respondents, or anyone for that matter, by referring to us as the "Violators." Justice requires no less.

## II. PROCEEDINGS IN THE DISTRICT COURT

The DAF is a charitable organization that invests some of its funds as part of its long-term mission to provide financial assistance, primarily in the Dallas/Ft. Worth area to such notable causes as:

- Committing several millions of dollars to support a facility that helps the victims of domestic violence in North Texas—the new facility has, since 2016, supported over 2000 victims each year;

- Supporting children's advocacy centers, as well as education initiatives for underserved children, in addition to education programs to help in things like job training and adult education in underserved populations;

- Supporting organizations that care for homeless military veterans and other institutions that help retrain and support veterans' reintegration, into;

- Supporting the arts in DFW such as proving funding the Perot Museum and the Dallas Zoo; and

- Funding medical research, among other things.

All in, the DAF has helped fund over $32 million in in grants and committed millions more in prospective funding. To meet these commitments, the DAF has an obligation to generate the funds through its investing activities. Doing so marries the charitable mission with the benefits of our market economy.

For that reason as well, the DAF dutifully safeguards its investments and protects its rights when it has been damaged. Hence the underlying lawsuit in the district court. Without the ability to safeguard its investments, the DAF's ability to fund public causes would be severely hampered, costing the people of Dallas/Ft. Worth millions in benefits given to area families and children in need.

4

A. **Respondents' Complaint in District Court Raises Significant, Recently Discovered Issues**

The basis of the DAF's action pending in the district court—the action in which Respondents filed their *Motion for Leave to Amend to Add James Seery*[2]—can be summed up in three simple bullets:

- The defendants, including Debtor, had duties under the Investment Advisers Act of 1940 ("Advisers Act") to the DAF and its subsidiary, CLO Holdco. Those duties arise by operation of law as a result of the defendants' role as a registered investment adviser to the plaintiffs. And those duties are unwaivable.

- The Harbourvest settlement was predicated on a valuation of the HCLOF assets at $22.5 million, which Seery testified was the value of those interests. That statement was not true—but it was relied upon by the plaintiffs at the time—there would be no justification for spending $22.5 million in cash to get $22.5 million in contingent assets. It was only in March 2021, two months after Seery's testimony, that another HCLOF investor brought to light the fact that the interests were worth almost double the amount testified to, and that Seery knew or should have known about that differential, in his role as a registered investment advisor.[3]

- Seery's duty under the Adviser's Act required him to disclose that differential to the DAF and disclose the opportunity to the DAF to purchase the interests. By not doing so, the defendants violated those unwaivable federal duties in connection with the Harbourvest settlement that this Court approved earlier this year.

The DAF and CLO Holdco to file their Original Complaint in the district court to protect their investment. That Complaint, however, purposefully did ***not*** name Seery as a defendant. And the Complaint does ***not*** ask to void, undo, or reverse, the Harbouvest Settlement. Nor is reversing the releases or the "allowed claims" as consideration between Harbourvest and the debtor a necessary predicate to relief in the Complaint. For example, one avenue would be for the defendants to simply sell the Harbourvest interests to the DAF for $22.5 million—which should

---

[2] APP_0027-0036.

[3] APP_0015.

be net-neutral to the debtor, and would actually give the debtor $22.5 million more in cash ***now*** than what it received under the Harbourvest settlement.[4]

Because of the Orders limiting suits against Seery, Respondents did not name him, but instead filed their *Motion for Leave to Amend to Add James Seery* on April 19, 2021 (the "Motion for Leave"), informing the district court (1) that this Court had entered orders limiting suits against Seery, (2) attaching the orders to the motion, and (3) briefing several good-faith, statutorily-based reasons why those orders should not prohibit what we were asking the district court to allow. This Motion for Leave is what Movants contend merits holding us in contempt.

Respondents submit that a fair recitation of the Motion for Leave cannot support a contempt finding.

### B. Movants Make Deliberately Misleading Statements About Us

Movants' brief makes no argument that Respondents' suit in the district court violates any order. Their argument focuses solely on the Motion for Leave, which the district court denied without prejudice on the basis that it was premature.[5] To support their argument, Movants' brief misstates the record in several ways, the highlights of which we identify here:

### 1. Movants Misrepresent Respondents' Prior Knowledge of the Key Facts Underlying the Harbourvest Settlement

The Movants have misrepresented that "CLO Holdco knew of all aspects of the [Harbourvest settlement, which is the transaction at issue in Respondents' action in the district court] before [this] Court granted the Debtor's Settlement Motion."[6]

---

[4] The proposed $22.5 million would add liquidity to the estate and obviate the need for a questionable exit loan.

[5] APP_0120.

[6] APP_0001-0026.

This representation is false in a significant and material way. As noted above, the Harbourvest settlement was predicated on, among other things, the debtor purchasing Harbourvest's interests in Highland CLO Funding, Ltd. for $22,500,000 in consideration.

As alleged in the Original Complaint, the value of Harbourvest's interest was equal to, roughly, 49.98% of the net asset value of the assets of Highland CLO Funding, Ltd. ("HCLOF"). The net asset values were calculated internally at Highland Capital Management, LP (HCMLP or the debtor)—the registered investment advisor for both Highland CLO Funding, Ltd. and for the DAF/CLO Holdco. In the quarter ending December 31, 2020, the net asset value of HCLOF was *almost double* what Seery represented it to be. But those internal values were never communicated prior to the hearing. Seery's self-serving denials are of no moment because he was a registered investment advisor to the DAF; thus, he *should have* calculated those values properly and represented them to the DAF, the failure to do either of which is equally a breach of duties imposed by federal law. It was only in March 2021 that another HCLOF investor brought to light the fact that the interests were worth *their true value*.  As a registered investment advisor to the DAF, Seery knew or should have known otherwise and should have disclosed it.[7]

Thus, the DAF has alleged that Seery, as the person in the middle of these transactions, and one who is cloaked with heightened federally-imposed fiduciary duties under the Advisers Act, concealed material information from the very advisee he owed fiduciary duties to, and consummated a self-dealing transaction at the expense of an advisee to benefit himself, to benefit the debtor, and to benefit its creditors. This Court's orders do not immunize him from the consequences of these acts and omissions.

---

[7] APP_0015.

Unsurprisingly, no case has held that someone in the position of Seery, as a registered investment advisor subject to the federal Advisers Act's rules and regulations, can shirk federally-imposed fiduciary duties to its advisees for the mere expediency of enriching its wealthy creditors—whether in bankruptcy or not. No case has held that being insolvent is an exception to the Advisers Act either.

### 2. Movants Misrepresent Respondents' Communications About This Court's Orders

Movants represent in their brief that Respondents "simply ignored," "intentionally flout[ed]," and "willfully disregard[ed]" this Court's orders,[8] when they know full well that was not the case. The record is clear on this fact.

Before Respondents filed the motion for leave that provides the basis of Movants' motion here, Respondents reached out to Debtor's counsel to confer regarding that motion:

> Mr. Pomerantz,
>
> Mazin [Sbaiti] and I intend to move for leave today in the district court seeking permission to amend our complaint to add claims against Mr. Seery. They are the same causes of action. We believe we are entitled to amend as a matter of course. ***But we will also raise and brief the bankruptcy court s orders re the same.***
>
> Can we put your client down as unopposed?
>
> We appreciate your prompt reply.[9]

Plainly this communication does not support Movant's representation that we ignored or disregarded this Court's orders. Their brief selectively quotes only the third paragraph of this email—"Can we put your client down as unopposed?"—while omitting the context. Apparently only the one line fit the narrative that Movants wished to present to this Court.

---

[8] Memorandum ¶¶ 1, 3 & n.3, 51, 53.

[9] APP_0123.

Counsel responded by informing us that this Court's gatekeeper orders[10] prohibited us from filing our motion. We responded as follows:

> Mr. Pomerantz,
>
> Thank you for sending the orders and for keeping in mind that we're new to a matter that, in the bankruptcy court, has over 2,000 filings. We may well have missed something. But we have seen and carefully studied the orders that you sent. And we do not believe they prohibit the motion we are filing, which briefs them and explains why we don't believe they prohibit our motion.
>
> We also don't think the district court will both decide that we're wrong about this and nonetheless grant our motion. As I read the orders, that's the only theoretical way that a motion for leave could violate them.
>
> And if the district court does grant our motion for the reasons we ask— because it finds that the bankruptcy court exceeded its jurisdiction or because it finds that our motion for leave (which can be referred) complies with the bankruptcy court orders—then we don't think the bankruptcy court can or will overrule the district court.
>
> So please know that we are not willfully violating those orders, as your email suggests. Quite the contrary, we are giving them careful attention. Which is why we are seeking leave rather than amending as of right.[11]

Separately, counsel also explained:

> Jeff,
>
> Our meet and confer is for our motion for leave to amend to add [James Seery]. I believe, per those orders' language, we are following the court's instruction.
>
> We are not unilaterally adding him.
>
> I take it you want us to put you down as " opposed" on the certificate of conference?[12]

---

[10] APP_0101-0118.

[11] APP_0121..

[12] APP_0122.

It is fair for Movants' counsel to disagree with us as to what this Court has and has not prohibited in the gatekeeper orders. It is not fair to represent that we chose to simply disregard those orders, or that we did so in bad faith. The record contradicts that. And Respondents' Motion for Leave specifically articulates good-faith reasons why this Court's orders do not prohibit bringing suit against Seery for his post-petition conduct in violation of the Advisers Act, the SEC's regulations under that statute, and other federal and state laws.

### 3. Movants Misrepresent Respondents Motion As Effectively Ex Parte

Movants attempt to gloss over their own apparent *ex parte* communications by gaslighting the Court and Respondents with a preemptive accusation. Movants misrepresented in their brief that Respondents attempted to get a ruling on the Motion for Leave "effectively on an *ex parte* basis."[13] This is deceitful. Movants obviously knew that we had conferred with them in advance before filing our motion. And they knew we had filed it as an "opposed" motion, guaranteeing that it would not be granted without an opportunity for them to submit a brief. Indeed, the district court denied the motion specifically because not all defendants had yet been served. The minute order states that the denial is without prejudice to refiling once all defendants have been served.[14]

Most importantly, the notion that we attempted to go behind their back or to sneak something past the district court vitiating this Court's Orders is wholly refuted by the Motion for Leave itself, which quotes from and attaches the very orders of this Court that Movants accuse us of completely disregarding.[15]

### 4. Movants Misrepresent Respondents' District Court Action

---

[13] Memorandum ¶ 4; *see also id.* ¶ 53 (implying sneaky, ex parte conduct by stating, "they simply ignored the Orders and sought permission from the District Court—before any of the defendants had appeared in the action").

[14] APP_0120.

[15] APP_0100-0118.

Movants claim that Respondents' lawsuit in the district court action is an attempt to reverse or undo the Harbourvest settlement that this Court previously approved. This is wrong. And it is refuted by the lawsuit itself, which requests no such relief but instead seeks damages. Respecting the finality of the Harbourvest settlement need not require exoneration of those who breached their duties, including Seery, by keeping critical information from CLO Holdco or its parent, the DAF, whom Seery was a registered investment advisor for at the time of the transaction.

## III. ARGUMENT

### A. <u>This Court's Orders Do Not Immunize Seery from All Actions</u>

We do not doubt that Movants intended for this Court to bar, practically speaking, all lawsuits that might implicate Seery in any way. Certainly insulating him from any litigation whatsoever has been a matter of considerable attention in the now protracted proceedings before this Court. But this Court's orders do not go that far. Nor could they, without trampling federal notions of limited jurisdiction, constitutional concerns regarding comity, due process, and takings, and the relationship between the Article I bankruptcy court system and its referring courts.

Thus, it is not surprising that Movants make no argument here that the Original Complaint Respondents filed in the district court action violates any order of this Court. Although that Complaint mentions Seery and his acts and omissions, in detail, it does ***not*** name him as a defendant and therefore is ***not*** the commencement or pursuit of "a claim or cause of against" him, which is all that the orders say is prohibited.

The sole act that Movants do argue is a violation—an argument to which they devote a mere two pages of their 22-page memorandum—is Respondents' motion for leave to amend. As we have made clear, the issue before this Court is not whether Respondents violated any order by ***suing*** Seery. He has not been sued. The issue is whether Respondents should be held in contempt

for ***asking for permission to sue*** Seery. And for doing so in the district court, which Movants say this Court has stripped of its statutorily granted original jurisdiction.

This is a remarkable request. Our research uncovered no precedent of any kind for a finding of contempt as a result of a motion for leave or any other kind of request for permission. Neither have we found any cases holding a party or its counsel in contempt for making a request in the wrong court. Perhaps this is why Movants' argument is so short and devoid of authority.

Moreover, Movants seem to have assumed that the Motion for Leave would be granted, and that the proposed amended complaint naming Seery would therefore be automatically filed. That is not what was intended, and is not what happened,. To the contrary, Respondents expected that the motion for leave would likely be referred to this Court for a report and recommendation. And Respondents planned, if necessary, to move to withdraw the reference under 28 U.SC. § 157(d). In addition, Respondents carefully avoided asking to have our proposed amended complaint "deemed filed," going so far as to submit an amended proposed order when we realized that we had inadvertently used such terminology in our initial proposed order.[16]

All of these acts are legal and have a sound basis in the statutes and in the case law. None of them can be said to be in "bad faith."

### B. Respondents' Action in District Court Is Not Prohibited by This Court's Orders

Movants fail to identify the provision in this Court's gatekeeper orders that they claim Respondents have violated. Instead, they summarily declare the orders "definite and specific," and assert that Respondents violated them "by filing the Seery Motion."[17] Of course, the "Seery Motion" is merely Respondents' Motion for Leave. So Respondents are left to decipher precisely

---

[16] APP_0125.

[17] Memorandum ¶ 59.

how Movants think that asking for permission to sue Seery constitutes a violation of any provision of the gatekeeper orders, which provide, in relevant part,

> No entity may **commence or pursue** a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have **sole jurisdiction** to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.[18]

_**First**_, Respondents submit that asking for permission to do a thing does not equate to doing a thing. School children asking for permission to go to the restroom are not, obviously, going to the restroom by the mere act of asking. In the same way, our motion for leave to commence an action against Seery cannot, as a matter of law, constitute commencing an action. An alternative interpretation would render the order void for vagueness.

_**Second**_, Respondents submit that pursuing a claim or cause of action can only follow—not precede—commencing such action. That commencement must happen first is inherent in the term "commence." Therefore, as a matter of law, our motion for leave cannot amount to pursuing an action.

_**Third**_, Respondents submit that the terms of the order saying that "this Court shall have sole jurisdiction" necessarily means the Northern District of Texas, to which this Court is an adjunct. Because that is so, filing the motion for leave in the Northern District of Texas cannot violate the order because it necessarily complies with it. The alternative interpretation requires this

---

[18] Cite July order. This Court's January Order includes similar language except that it applies only to matters related to Seery's conduct as a director of Strand. Respondents do not believe their cause of action is related to Seery's director role, but that point seems immaterial here because the two orders are so similarly worded.

Court to have meant to strip the district courts of the Northern District of Texas of original jurisdiction. And Respondents do not believe this Court intended to do any such thing.

The reasoning behind this conclusion is not complex. This Court well knows the jurisdictional framework in which it operates, resulting from the Supreme Court's opinion in *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.* opinion.[19] That framework is established by 28 U.S.C. § 151: "In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district."[20]

The Second Circuit, in *United States v. Guariglia*, made precisely this point, holding that an order of the bankruptcy court constitutes an order of the district court it is a unit of:

> In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Under this provision, much of the autonomy has been stripped from the bankruptcy courts, now labeled 'units' of the district courts. By definition, under the statutory scheme, the bankruptcy court Order restraining Guariglia from gambling was issued by a 'unit' of the district court. As an Order originating from a unit of the district court, ***it necessarily follows that the Order constitutes an Order of both the bankruptcy court and the district court for the district encompassing the bankruptcy court from which the Order emanated***.[21]

---

[19] 458 U.S. 50 (1982).

[20] "[B]ankruptcy courts are a unit of the district court in each judicial district under 28 U.S.C. § 151 and exercise the power of the district court in bankruptcy cases." *In re D&B Countryside LLC*, 217 B.R. 72, 75 n.5 (Bankr. E.D. Va. 1998).

[21] 962 F.2d 160, 162-63 (2d Cir. 1992); *accord In re Coastal Plains Inc.*, 338 B.R. 703 (Bankr. N.D. Tex. 2006) ("When Congress reconstructed the jurisdiction of the bankruptcy courts with the 1984 Act, it made those courts 'a unit of the district courts' and classified bankruptcy judges as 'judicial officers of the district court.' Both of these statutes reinforce the current placement of the bankruptcy courts in the federal judicial scheme as a subset of federal district courts that derive their jurisdiction from the primary branch of the district court. . . . [T]he bankruptcy court as such no longer exists as a distinct jurisdictional entity, but is subsumed within the district court apparatus. Hence, removing a case to a bankruptcy court is the functional equivalent of removing it to the federal district court."); *Thomas v. U.S. Bank*, 2010 Bankr. LEXIS 986 at *8-9 (Bankr. D. Or. 2010) ("[B]ecause this court is part of the District Court, both tribunals should be considered the same court and debtors should have asked the District Court to decide the contempt issue at the same time as their other claims."). In sum, "the Bankruptcy Court is the District Court." *In re North Am. Funding Corp.*, 64 B.R. 795, 796 (Bankr. S.D. Tex. 1986) (emphasis added); *accord*

The law is therefore clear that this Court's orders are orders of the district court, that this Court is the district court,[22] and that this Court did not and could not exclude the district court when it ordered that it had "sole jurisdiction" over actions brought against Seery. Therefore, as a matter of law, Respondents could not have violated this Court's orders by seeking leave to sue Seery from the district court.

## C. <u>Stripping the District Court of Jurisdiction Is Beyond This Court's Powers</u>

Respondents filed a Motion for Relief from this Court's gatekeeper orders contemporaneously with Movant's show-cause motion. There, we briefed the proper scope of this Court's jurisdiction with regard to the gatekeeper orders and Movants' position that those orders have stripped the district court of jurisdiction. Respondents incorporate that briefing here by reference. But the gist of the argument bears repeating.

This Court's jurisdiction is derivative of the district court's because, as explained above, this Court *is* the district court. This Court therefore lacks the authority to remove a matter from that court's purview. Movants' contrary contention necessarily requires adoption of the view that this Court's authority trumps that of both the district court and Congress, a very troubling position

---

*Onewoo Corp. v. Hampshire Brands Inc.*, 566 B.R. 136, 144-45 (Bankr. S.D.N.Y. 2017) (holding that party may not remove case from district court to its bankruptcy court because "[a] court cannot remove a case to itself . . . the bankruptcy court is the district court"); *In re Mitchell*, 206 B.R. 204, 211 (Bankr. C.D. Cal. 1997) (labeling argument that a case can be removed from the district court to its bankruptcy court as "logically idiotic" since it would be a removal "from the district court where it is already pending to that very same court").

[22] The Respondents do not concede that this Court had the jurisdiction or authority to enter its order the subject of these proceedings, as discussed below. They present this argument assuming, but not conceding, that the entry of such order was proper.

in light of the separation of powers doctrine and the Supreme Court's recent decision in *Stern v. Marshall*.[23]

The only conceivable ground for contending, as Movants do, that this Court's jurisdiction could be somehow "exclusive"—a term of art ***not*** used in the gatekeeper orders—is the *Barton* doctrine. Respondents respectfully submit that applying the *Barton* doctrine to Seery here—after this Court granted Movants' motion asking the Court to defer to their business judgment in approving Seery's appointment[24]—would be both unprecedented and nonsensical.

Moreover, Respondents' action in the district court—whether or not Seery is ultimately joined by amendment—is beyond the reach of bankruptcy-court jurisdiction.

To begin with, 28 U.S.C. § 157(b) states that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[25] This principle is stated even more directly in 28 U.S.C. § 1409(a), which provides that an action that is "related to a case under title 11 may be commenced in the district court." Plainly Respondents' action in the district court is related to Debtor's bankruptcy case here. That action therefore "may be commenced in the district court" under § 1409(a).

---

[23] 564 U.S. 462, 499 (2011) (holding that "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case.").

[24] APP_0079-0082.

[25] *Compare* 28 U.S.C. § 1409(a) (stating that cases that are "related to a case under title 11 may be commenced in the district court"). This Court previously recognized this principal in *In re AHN Homecare, LLC*, 222 B.R. 804, 809 (Bankr. N.D. Tex. 1998) (quoting 1 L. King, Collier on Bankruptcy, ¶ 3.01[1][c][ii], at 3–22 (15th ed.1991), for the following proposition: "The language of section 1334(b) grants jurisdiction to the district courts, and therefore to the bankruptcy court, over civil proceedings related to bankruptcy and accords with 'the intent of Congress to bring all bankruptcy related litigation within the umbrella of the district court, at least as an initial matter, irrespective of congressional statements to the contrary in the context of other specialized litigation.'").

Bankruptcy courts are not Article III courts. They are created under Congress's Article I authority, and they do not have original jurisdiction over non-bankruptcy matters.[26] The only reason bankruptcy courts can ever hear such matters is because of the ability of the district courts to refer them under 28 U.S.C. § 157(a). Because of this framework, it necessarily follows that the district court here never gave up jurisdiction over cases related to the Debtor's bankruptcy case.

Respondents' action in the district court is such a case. But more to the point, that action falls outside of the reach of this Court's jurisdiction because, in 28 U.S.C. § 157(d), Congress requires district courts to withdraw the reference to bankruptcy courts in a particular proceeding "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Plainly Respondents' district court action involves such considerations, since the Advisers Act was passed under Congress' power to regulate interstate commerce and regulates the investment markets of the United States. Withdrawal of the reference is mandatory in such circumstances.[27]

As a result, this Court lacks jurisdiction to preside over Respondents' district court action and the district court is the appropriate place to bring it. And Movants' attempt to describe this Court's jurisdiction as "exclusive" is both misguided and unsupportable.

**D. <u>The Punitive Relief Requested by Movants Exceeds This Court's Powers</u>**

Movants also overreach with the relief they request. There is no statutory basis for that relief. And although their motion states that they are seeking civil sanctions, that is pretext. The

---

[26] *See generally Stern v. Marshall*, 564 U.S. 462 (2011).

[27] *In re Am. Freight Sys., Inc.*, 150 B.R. 790, 793 (D. Kan. 1993) ("Withdrawal is required if the bankruptcy court would be called upon to make a significant interpretation of a non-Code federal statute.").

relief they seek would be highly punitive in effect, and thus it is in excess of this Court's subject matter jurisdiction.

Bankruptcy court jurisdiction is expressly limited to "civil proceedings" by 28 U.S.C. § 1334(b). The Fifth Circuit, in fact, expressly held in *In re Hipp, Inc.* "that bankruptcy courts do not have inherent criminal contempt powers, at least with respect to the criminal contempt not committed in (or near) their presence."[28] Even as to civil sanctions, the standard for imposing them is a high one.[29] The Fifth Circuit holds that a court's inherent power to sanction "must be exercised with restraint and discretion,"[30] must be accompanied by "a specific finding that the [sanctioned party] acted in 'bad faith,'"[31] *id.* at 236, and "must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees."[32]

Here, this Court's order requiring Respondents to show cause already names them "violators," suggesting that they have been prejudged before they even had a chance to be heard. Notice from opposing counsel accurately informed Respondents that this Court had deemed them "violators" and ordered them to appear in person and show cause three days before the order actually issued, suggesting that *ex parte* communications may have taken place in violation of Rule 9003(a). These circumstances raise serious due process concerns.

---

[28] 895 F.2d 1503, 1510-11 (5th Cir. 1990).

[29] *Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998) ("The threshold for the use of inherent power sanctions is high.").

[30] *Id.*

[31] *Id.* at 236.

[32] *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997) (quoting *Chambers v. NASCO, Inc.*, 111 S. Ct. at 2136).

Stated differently, how can counsel in this matter reassure our clients that they will get a fair shake, before an impartial court, when they have already been deemed "violators," and when opposing counsel knew what that court was going to order days before we did?

Adding to the problem here is that this Court's show-cause order reverses the burden of proof. It is no longer Movants' motion that we must respond to. It is an order of this Court—one that has already deemed us "Violators." Under Fifth Circuit law, this is error. A movant seeking sanctions must bear the burden to show, by clear and convincing evidence, that a violation of this Court's orders has occurred.[33]

As one bankruptcy court explained:

> In effect, such a litigant seeks the Court's endorsement of relief against another private party, on an ex parte basis, before the merits of that relief have been subjected to due process. Such orders create an appearance of impropriety. They create the appearance that the Court has evaluated allegations made by the applicant—without an opportunity for input from the other party—and adopts the applicant's position that a basis exists to require the target of the order to appear and explain himself to the Court.[34]

The same is true here.

Respondents also submit it is telling that the relief sought here includes not a penny for the costs to defend against the allegedly sanctionable acts in the district court. This is, of course, because there are no such costs. The district court's prompt denial of the motion for leave prevented that. Because there is no harm—indeed, there is no attempt by Movants to show

---

[33] *See Louisiana Ed. Ass'n v. Richland Parish School Bd.*, 421 F. Supp. 973, aff'd, 585 F.2d 518 (5th Cir. 1978); *see also In re Cannon*, No. BR 17-11549-JGR, 2017 WL 10774809, at *1 (Bankr. D. Colo. June 13, 2017) (declining "to issue orders that would create such an impression or shift the burden in this manner").

[34] *In re Symka*, 518 B.R. 888, 888-89 (Bankr. D. Colo. 2014); *see also id.* at 889 (noting that, where such a motion relates to a dispute between private litigants, "a court's entry of an order to show cause has the effect of shifting the burden of going forward from the applicant to the target of the show cause order").

prejudice in any form—it is difficult to understand how the sanctions they seek could be anything but punitive in nature.

Every single dollar of "costs" Movants ask this Court to award was incurred in bringing *this* motion—a motion that was unnecessary, because the motion for leave before the district court was no longer pending and because Respondents' motion asking this Court to revise its orders, on jurisdictional grounds, was already in the works. Awarding multipliers on top of the costs for Movants' unnecessary motion would be punitive.[35]

Most importantly, because the allegedly offending conduct consists solely of asking for leave from the district court, it is difficult to understand how this Court could possibly find that Respondents have acted in bad faith. Asking permission from the district court—who very well could have referred Respondents' motion to this Court—does not evidence bad faith. Doing so in a motion that discloses this Court's gatekeeper orders, Respondents submit, is pretty compelling evidence of the opposite.

## VI. CONCLUSION

Respondents respectfully submit that we have not violated any order of this Court, that any order deeming us to be "Violators" is unjust and should be expunged, and that this Court does not have the power to strip the district court of jurisdiction. Respondents also submit that Movants have failed to demonstrate that the prerequisites for an award of sanctions have been met. For these reasons, Respondents urge this Court to deny Movants' motion.

---

[35] *Compare Petroleos Mexicanos v. Crawford Enterprises,* 826 F.2d at 399 (citing *United States v. Rizzo,* 539 F.2d 458, 462-63 (5th Cir. 1976) (for the proposition that sentences for criminal contempt are punitive in their nature and are imposed primarily for the purpose of vindicating the authority of the court), *with id.* (citing *Southern Railway Co. v. Lanham,* 403 F.2d 119, 124 (5th Cir. 1968), for the proposition that sanctions for civil contempt are meant to be "wholly remedial" and serve to benefit the party who has suffered injury or loss at the hands of the contemnor).

Dated:  May 14, 2021

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/  Mazin A. Sbaiti*

**Mazin A. Sbaiti**
Texas Bar No. 24058096
**Jonathan Bridges**
Texas Bar No. 24028835
JPMorgan Chase Tower
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367
E:  mas@sbaitilaw.com
    jeb@sbaitilaw.com

**Counsel for Plaintiffs**