Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Michael E. Landis, La. Bar No. 36542
mlandis@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust and Get Good Trust*

UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | * | Chapter 11 |
| | * | |
| | * | Case No. 19-34054sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | * | |
| | * | |
| Debtor | * | |

**REPLY TO DEBTOR'S OPPOSITION TO MOTION TO COMPEL COMPLIANCE
WITH BANKRUPTCY RULE 2015.3**

The Dugaboy Investment Trust and Get Good Trust ("Movers"), respectfully submit this Reply to the *Debtor's Opposition to Motion to Compel Compliance with Bankruptcy Rule 2015.3 filed by Dugaboy Investment Trust and Get Good Trust* [Dkt. No. 2341] (the "Opposition") filed by Highland Capital Management, L.P. ("Debtor").  The Debtor's Opposition mischaracterizes several issues pertinent to the Mover's Motion to Compel the Debtor's compliance with Rule 2015.3 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and completely fails to address others.  The arguments asserted in the Opposition essentially distil down into: (1) cases that support a *brief delay* in, and in one case a very limited and specific waiver of, filing of a report under Rule 2015.3 can be used to support the Debtor not filing a single one for 20

months and/or a blanket waiver of all 2015.3 reports across all subsidiaries; (2) there is an unwritten rule that parties in interest must raise the issue by some undefined deadline after which the Debtor no longer has to comply with the Bankruptcy Rules; (3) the information is confidential despite being required in every chapter 11 case; and (4) the Debtor does not want any future purchasers of the substantially controlled subsidiaries' assets to know the value of the assets to be purchased. As the following will show, such arguments are unsupportable, without merit, and cannot excuse the Debtors continued disregard for the Bankruptcy Rules.

I.    **NONE OF THE CASES CITED BY THE DEBTOR SUPPORT THE FAILURE TO FILE A RULE 2015.3 REPORT FOR OVER 30 MONTHS.**

The Debtor cites four cases in its Opposition, none of which support a 20-month delay in filing a report under Bankruptcy Rule 2015.3, much less a blanket waiver of filing any reports at all. In *In re Hornbeck Offshore Servs.*, No. 20-32679 (DRJ) (Bankr. S.D. Tex. May 20, 2020), the bankruptcy court, in response to a *first day motion*, granted the debtor in that case an additional 50 days from the Petition Date to file Schedules, Statements of Financial Affairs, and Rule 2015.3 Reports. First, the Debtor in this case did not request an extension in a first day motion. Rather, the Debtor has only now, after nearly 20 months since the Petition Date and over 3 months since the issue was first raised, requested an extension to file the Rule 2015.3 Report, despite the fact that it has filed the Statement of Financial Affairs and all Schedules. Furthermore, there is a big difference between 50 *days* and 20 *months*.

Second, *In re Jason Indus.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. July 2, 2020), involved a prepackaged bankruptcy in which the debtor's plan of reorganization was filed on the petition date. Just as with *Hornbeck*, the bankruptcy court granted the debtor's first day motion requesting a 14-day extension to file the Statements of Financial Affairs, the Schedules, and the Rule 2015.3 Reports. Again, the Debtor's request in the current case was not raised in a first day

motion, nor is it in conjunction with a request to extend the deadline for filing other pertinent financial information, nor is this a case involving a prepackaged plan. It has also been much longer than a mere 14 days since the petition date.

*HCR ManorCare*, No. 18-10467 (KG) (Bankr. D. Del. March 6, 2018), also involved a first day motion request to extend the deadline and a prepackaged plan of reorganization, neither of which are present here. In that case, the bankruptcy court granted a 50-day extension; again, not a 20-month extension.

Lastly, in *In re RCS Capital Corp.*, No. 16-10223 (MFW) (Bankr. D. Del. May 23, 2016), the debtors in that case had already requested an initial extension of time to file the 2015.3 report, which the court granted. *In re RCS Capital Corp.*, No. 16-10223 (MFW) (Bankr. D. Del.) Dkt. No. 714. Prior to the expiration of that initial extension, the debtors filed a motion to sell all of the debtors' membership interests in one of the subsidiary companies in which the debtors had a substantial or controlling interest. *Id.* Upon the expiration date of the initial 2015.3 extension, but before the bankruptcy court had approved the sale motion, the debtor requested an additional extension of time to file the 2015.3 report only as to the subsidiary whose membership interests were being sold, and only for an additional 30 days. *Id.* Shortly after, the bankruptcy court approved the sale of the debtors' interests in the subsidiary and further extended the deadline for filing the 2015.3 report only as to the subsidiary subject to the sale. *Id.* Upon the expiration of the second deadline, the debtors filed a motion to waive the Rule 2015.3 requirement altogether only as to the subsidiary being sold. *Id.* Although the debtors argued that, in addition to the fact that the debtors were divesting themselves of all interest in the subsidiary, the release of the information could be detrimental to the already approved sale, there is nothing in the bankruptcy court's order that indicates that this was the reason for the ultimate granting of the waiver. *Id.* at

Dkt. No. 778. Nor is there anything in the debtors' waiver request that indicates that the purchasing party was not made aware of the necessary financial information, especially in light of the fact that the deal had already been agreed to by the parties and approved by the bankruptcy court—a fact that suggests that the purchasing party had already completed its due-diligence in connection with the sale. It is also significant to mention that the debtors in *RCS Capital* had filed the necessary 2015.3 reports for all other subsidiaries and that the granting of the waiver was not a blanket waiver for all subsidiaries in which the debtor had a controlling interest and that there was no opposition to the waiver as there is in this case.

In the present case, there is no approved sale of the Debtor's interests in any of its subsidiaries, nor has the Debtor requested any previous extension of time. Rather, the Debtor is requesting a blanket waiver of the Rule 2015.3 reports as to *all* subsidiaries well after the statutory deadline has already passed and without requesting *any* previous extensions of time. The Debtor's obligations under Rule 2015.3 have been completely disregarded. As stated in the Movers' Motion, James Seery, when questioned on why the Rule 2015.3 report had not been filed, responded that "it fell through the cracks." [Dkt. No. 1905, pg. 49, lines 18–21].[1] The facts in the present case are clearly distinguishable from all four cases cited by the Debtor in its Opposition.

Further undermining the Debtor's argument that the Court should grant an extension because it is on the verge of making the plan effective, the Debtor itself admits that it "currently expects that [sic] the Effective Date to occur on or after July 1, 2021, *provided the Court approves the Exit Financing Motion*." [Opposition at ¶ 8 (emphasis added)]. As the Court is aware, and as the Debtor fails to mention, Dugaboy has filed a *Preliminary Objection to*

---

[1] Significantly, Mr. Seery did not mention any concerns over the release of confidential information.

*Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to (A) Enter into Exit Financing Agreement in Aid of Confirmed Chapter 11 Plan and (B) Incur and Pay Related Fees and Expenses, and (II) Granting Related Relief* [Dkt. No. 2403], wherein, among other things, Dugaboy raises serious concerns with the fact that the proceeds from the proposed exit financing are detrimental to Trussway Inc.  The Debtor's Exit Financing Motion and going Effective is not a basis for this Court to waive the 2015.3 requirement.

Also pending before this Court is a Motion to significantly increase the fee paid to Mr. Seery as a success fee.  It is impossible to determine how successful his management has been without the disclosures required by Rule 2015.3.  Just looking at the Debtor's disclosure statement and other filings in this case, it is shown that the value of the Debtor's assets has decreased.  The one exception is the increase in the value of the MGM stock which was a fortuitous event outside Mr. Seery's control.

## II.    THERE IS NO DEADLINE FOR RAISING THE FAILURE TO FILE A RULE 2015.3 REPORT

The Debtor also attempts to make noise over the fact that the Movers did not raise any objection until the plan confirmation hearing and only filed a formal motion two months after the plan was ultimately confirmed (which confirmation the Movers have appealed).  Rule 2015.3 does not set any deadline for a party to request that the Debtor comply with the Bankruptcy Rules.  It simply requires that the Debtor file a 2015.3 report prior to the meeting of creditors (which was not done) and every six months thereafter until the effective date of the plan or the case is dismissed or converted.  See FED. R. BANKR. P. 2015.3.  The effective date of the plan has not yet occurred and the case has not been dismissed nor converted.  Yet, the Debtor still has not filed a single Rule 2015.3 report disclosing value, operations, and profitability of each entity in which the Debtor has a substantial or controlling interest.

The Debtor attempts to paint the Movers' delay in filing a formal motion as evidence of

posturing and "gamesmanship;" however, the wording of Rule 2015.3 is clear in this case:

> (b)     The first report required by this rule *shall* be filed no later
> than seven days before the first date set for the meeting of creditors
> under § 341 of the Code.  Subsequent reports *shall* be filed no less
> frequently than every six months thereafter, until the effective date
> of a plan or the case is dismissed or converted. …

FED. R. BANKR. P. 2015.3(b) (emphasis added).

The requirement to file the reports, in other words, is not waived after a certain date.

Rather, after the effective date or dismissal/conversion, there will be no *subsequent* reports, but

the previous reports must still be filed.  Compare the language of Rule 2015.3 with the language

of section 1104 of the Bankruptcy Code concerning the appointment of a trustee or an examiner:

> (a)     At any time after the commencement of the case *but before
> confirmation* of a plan, on request of a party in interest or the
> United States trustee, and after notice and a hearing, the court shall
> order the appointment of a trustee–
>
> …
>
> (c)     If the court does not order the appointment of a trustee
> under this section, then at any time before the confirmation of a
> plan, on request of a party in interest or the United States trustee,
> and after notice and a hearing, the court shall order the
> appointment of an examiner to conduct such an investigation of the
> debtor…

11 U.S.C. § 1104 (emphasis added).

In section 1104, the legislature put a deadline on when another party can request the

appointment of a trustee or examiner.  That language was not mirrored in Rule 2015.3, which

means that there is no deadline on when a party can request that the Debtor comply with the

Bankruptcy Rules.  Rather, the Rule requires the Debtor to file a report for every six-month

period, with the first occurring no later than seven days prior to the meeting of creditors.  It is not

gamesmanship to require a Debtor to do that which the Code and the Bankruptcy Rules require the Debtor to do.

The Debtor's argument that it should not have to file the reports is further brought into question by the fact that at the plan confirmation hearing, Mr. Seery did not seem opposed to filing the reports. Rather, he painted the Debtor's failure to file a 2015.3 report as mere inadvertence, and stated that if they had realized the oversight, they would have filed a request for an extension of time to file the reports.

> Q        Mr. Seery, I appreciate that answer. But you never sought leave from the Bankruptcy Court to postpone the deadlines for filing 2015.3, did you?
>
> A        No. *If it hadn't fallen through the cracks, it would have been something we recalled and we would have done something with it.* But, frankly, it just fell off the – through the cracks. We didn't deal with it.

Dkt. No. 1905, p. 50, lines 2–8 (emphasis added).

Yet, nearly three months after that hearing when the absence of a 2015.3 report was made plain to the Debtor, the Debtor still had not filed a 2015.3 report, nor had it requested an extension of time to do it. Rather, it simply continued to ignore the requirements placed upon it as a debtor by the Bankruptcy Rules and only finally requested an extension after the Movers were finally forced to file a formal motion to compel compliance with the Rules. The Debtor's argument that this is all a plot against it is strained considering that it itself has continued to ignore the Bankruptcy Rules, hoping that no one will notice or require compliance.

## III.    THE INFORMATION CONTAINED IN THE 2015.3 REPORT IS NOT CONFIDENTIAL

Although the Debtor concedes that their failure to file a report required under Rule 2015.3 was originally raised in February at the Confirmation Hearing, the assertion that compliance with Rule 2015.3 would divulge confidential information was not raised until the

Opposition was filed, raising the question of why the Debtor did not consider the information confidential at the time of the confirmation hearing (or any time prior), but does now. Further, even if the Debtor had asserted that the information required by the Rule 2015.3 Report is confidential prior to the Opposition, the simple truth is that the information is, in fact, not confidential.

For one, by the Debtor's own admission, the information has already been disclosed to the Official Committee of Unsecured Creditors. That, by definition, makes the information not confidential. Further along this point, there is no exception to the 2015.3 reporting requirement when the information in those reports is provided to the Committee. The reporting requirement does not simply go away by providing information to the Committee.

Further, there is nothing in Official Form 426, which is the form used for filing a Rule 2015.3 report, that would reveal any confidential information. A copy of Official Form 426 is attached hereto as **Exhibit 1**. A summary of the information to be provided in the report is provided on page 1 of the form and reads as follows:

> Each *Entity Report* consists of five exhibits.
>
> *Exhibit A* contains the most recently available: balance sheet, statement of income (*loss*), statement of cash flows, and a statement of changes in shareholders' or partners' equity (*deficit*) for the period covered by the *Entity Report*, along with summarized footnotes.
>
> *Exhibit B* describes the Controlled Non-Debtor Entity's business operations.
>
> *Exhibit C* describes claims between the Controlled Non-Debtor Entity and any other Controlled Non-Debtor Entity.
>
> *Exhibit D* describes how federal, state or local taxes, and any tax attributes, refunds, or other benefits, have been allocated between or among the Controlled Non-Debtor Entity and any Debtor or any other Controlled Non-Debtor Entity and includes a copy of each tax sharing or tax allocation agreement to which the Controlled Non-Debtor Entity is a party with any other Controlled Non-Debtor Entity.
>
> *Exhibit E* describes any payment, by the Controlled Non-Debtor Entity, of any claims, administrative expenses or professional fees that have been or could be asserted against any Debtor, or the incurrence of any obligation to make such payments, together with the reason for the entity's payment thereof or incurrence of any obligation with respect thereto.

Exhibit A to the report contains basic financial statements that provide the book value of each entity's assets and liabilities.  It does not provide a fair market value analysis as to what the assets of the companies will sell for.  The market will dictate the price of the assets, not the balance sheet.  Basic financial statements can hardly be considered confidential information.

Exhibit B to the report contains a brief description of the business operations.  Again, this information is hardly confidential.

Exhibit C to the report includes any claims that exist between the controlled non-debtor entities.

Exhibit D to the report describes any tax sharing agreements between debtor-controlled entities.  This merely goes to a disclosure of liabilities between controlled entities.

Exhibit E to the report will replicate information that should already be reported in the Debtor's Schedules as either a claim by an insider or a claim owed by a co-debtor.

In sum, none of the information in the 2015.3 report can possibly be considered confidential information and any assertion to that extent is not warranted.  Moreover, the information can be protected through putting the information under seal in the case and requiring parties in interest who want access to the information to be bound by a confidentiality agreement.

## IV.   PREVENTING POTENTIAL BUYERS FROM KNOWING THE VALUE OF THE ASSETS THAT THEY WILL BUY IS NONSENSICAL

Perhaps the most confusing argument in the Debtor's Opposition is the statement in paragraph 18:

> Moreover, providing the information required by Bankruptcy Rule 2015.3 may also inhibit the ability of the Debtor to monetize these assets because other potential buyers would obtain information and insights on the value of these assets to which they otherwise would not be privy.

Opposition at p.8.

The argument appears to be that the Debtor does not want any future buyers of the subsidiaries' assets to know anything about the value of the assets that they are buying. Similar to the confidentiality argument, this is nonsensical. Furthermore, and as outlined above, the information that is provided in the 2015.3 report is all information that would be disclosed to any potential buyer anyway and any value of a company's assets provided in the balance sheets is not determinative of the fair market value, which can only be determined by what the market will pay for the assets at the time of the sale. It is hoped that through the Debtor's "monetization process" it will run sales processes and make available to buyers in excess of that required by the 2015.3 filings. Prudent buyers and even tire kickers will clearly require more than the basic data contained on a 2015.3 filing.

Even giving the Debtor every benefit of the doubt and assuming it is referring to the *RCS Capital* case (*supra*) wherein the debtor requested that the 2015.3 report be waived as to the one entity that the debtor had already agreed to sell and which sale the bankruptcy court had already approved, there is no confidentiality issue and reports should be filed through the time of sale. The Debtor is requesting a blanket waiver of Rule 2015.3, not an entity specific waiver as was the case in *RCS Capital*.

## V.    CONCLUSION

The Debtor's response to the Motion attempts to convert an "oops I forgot" and got caught to a request for a *nunc pro tunc* waiver of a Bankruptcy Rule provision. No legitimate reason for the waiver was advanced by the Debtor during the case and the Seery testimony of "we forgot" should be accorded the same weight that this Court gave to other testimony of Mr. Seery and the Debtors new excuse for a knowing failure to following the bankruptcy rules should not be allowed.

June 8, 2021

Respectfully submitted,


*/s/Douglas S. Draper.*
Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Michael E. Landis, La. Bar No. 36542
mlandis@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust
 and Get Good Trust*