PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Debtor. | **Re: Docket Nos. 2534** |

**DEBTOR'S REPLY TO PLAINTIFFS' POST-HEARING BRIEF REGARDING
MOTION FOR MODIFICATION OF ORDER**

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

DOCS_NY:43657.5 36027/002

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby submits this reply (the "Reply") in response to *Plaintiffs' Court-Ordered Post-Hearing Brief Regarding Motion for Modification of Order* [Docket No. 2534] (the "Plaintiffs' Brief"). In support of the Reply, the Debtor respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  On April 27, 2021, Plaintiffs filed their *Notice of Motion for Modification of Order Authorizing Retention of James P. Seery, Jr., Due to Lack of Subject Matter Jurisdiction* [Docket No. 2248] (the "Motion"). After a full day hearing, this Court denied the Motion on June 30, 2021 [Docket No. 2506] (the "Reconsideration Order").

2.  On June 28, 2021, the Court issued an *Order Requiring Post-Hearing Submissions* [Docket No. 2494] (the "Order") pursuant to which Plaintiffs were directed to address "their position regarding to the application of the *Second Amended and Restated Investment Advisory Agreement* to the alleged jury trial rights of the Movants in Case No. 3:21-cv-00842B before the United States District Court for the Northern District of Texas." Order ¶ 2.

3.  Rather than follow the Order and address the narrow issue presented, Plaintiffs seek to deflect blame for their own error, minimize the importance of the jury waiver provisions in the applicable agreement, and re-argue the Motion even though the Court has already entered the Reconsideration Order.[2]

4.  The Debtor replies briefly to address certain mischaracterizations and to otherwise correct the record.

**REPLY**

**A.  The Second Amended and Restated Advisory Agreement Is Binding Yet Plaintiffs'**

---

[2] Not surprisingly, Plaintiffs have appealed the Reconsideration Order [Docket No. 2513]. This brings the total number of appeals from this Court's rulings filed by Mr. Dondero and his related entities to seven.

**Counsel Relied on an Outdated Agreement in the Complaint They Filed**

5. The Debtor appreciates the Plaintiffs' concession that the *Second Amended and Restated Investment Advisory Agreement*, effective from January 1, 2017, between the Debtor on the one hand and The Charitable DAF Fund, L.P. ("Charitable DAF") and Charitable DAF GP, LLC on the other hand (the "Second Amended Agreement"), is a valid and authentic agreement "regarding the subject matter that it covers." Plaintiffs' Brief at 1-2.

6. Among the subject matter covered in the Second Amended Agreement is a clear and unambiguous waiver of any right to a trial by a jury:

> **EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CAUSE OF ACTION OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLDUING ANY EXHIBITS, SCHEDULES, AND APPENDICIES ATTACHED TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY. EACH PARTY CERTIFIES AND ACKOWLEDGES THAT (A) NO REPRESENTATIVE OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTEHRWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) IT AS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) IT MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY, AND (D) IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.**

**Docket No. 2495, Ex. A** ¶14(f) (emphasis in original).

7. Confronted with this clear and convincing waiver, Plaintiffs were forced to admit that their hastily-filed district court complaint erroneously relied on an earlier version of the parties' agreement – one that allegedly did not contain a jury trial waiver. According to Plaintiffs, however, because no one "had alerted counsel that they were relying on a superseded version of the contract," and counsel "did not have the Second Amended Agreement in their file," they chalked it up to a "good faith mistake" and asserted it was "inadvertent." Plaintiffs' Brief at 2.

8. Respectfully, lawyers have an obligation to conduct basic due diligence *before* filing pleadings rather than relying on their adversaries to confirm that they got it right. Indeed, Plaintiffs' reliance on the wrong agreement here is but the latest in a series of errors which they attempt to dismiss or minimize.[3]

9. In fact, Plaintiffs' counsel's attempt to blame Debtor's counsel for their failure is misplaced for a several reasons. **First**, Plaintiffs' counsel raised the issue of a jury trial for the first time at the June 25 hearing, so Debtor's counsel had no reason to focus on it until then. **Second**, as of June 25, the Debtor had not responded to the Plaintiffs' underlying district court complaint and had no obligation to correct Plaintiffs' counsel's mistake. **Third**, while Plaintiffs' counsel proposed that the Motion be decided "on the papers," that was only after they spent more than an hour presenting their argument in support of their Motion during opening arguments on the Contempt Motion – even though the Court directed that those arguments be held after the Contempt Motion was fully litigated.[4]

10. Plaintiffs' counsel reliance on the wrong document appears to have had a strategic purpose since they emphasized it. They should have simply accepted responsibility rather than minimizing the issue and deflecting blame to others. Their mistake matters.

B. **Significance of the Jury Trial Waiver; Plaintiffs' Citation to the Wrong Agreement**

11. Plaintiffs make five arguments in support of their contention that the Second

---

[3] As the Court will recall, Plaintiffs' counsel (a) failed to note on the Civil Cover Sheet filed at the commencement of the district court action that a related case (the above-referenced bankruptcy case) was pending; (b) failed to mention 11 U.S.C. §1334 as a jurisdictional predicate for the district court action, and (c) were forced to "non-suit" yet another action they commenced against the Debtor, that one on behalf of the Dugaboy Investment Trust ("Dugaboy") because they claimed to be unaware that Dugaboy had filed a proof of claim against the Debtor for the same claims. *The Dugaboy Investment Trust v. Highland Capital Management L.P.*, Case No. 3:21-cv-01479-S (N.D. Tex.) [Docket No. 5]. For the record, Plaintiffs' Civil Cover Sheet is still inaccurate as it fails to reference the pending appeal – in the United States District Court for the Northern District of Texas – of the Debtor's settlement with HarbourVest, which settlement is the foundation for Plaintiffs' claims.

[4] That is precisely why the Debtor "objected" to Plaintiffs' attempt to have the Motion for Modification heard "on the papers." Plaintiffs' Brief at 3.

Amended Agreement "changes nothing in substance in Movants' argument on the Motion for Modification." Plaintiffs' Brief at 3-7. Plaintiffs' arguments are unavailing.

12. ***First***, Plaintiffs assert that "Movants' jury rights were merely illustrative of the legal problems raised by the Court's exculpation language." *Id*. at 3. But this back-tracking is merely an acknowledgment of the weakness of the argument in light of, among other things, the express jury waiver in the Second Amended Agreement.

13. ***Second***, Plaintiffs claim that CLO Holdco is not a party to the Second Amended Agreement and there is no implied waiver. They also contend that "CLO Holdco's claims arise independently by operation of law, as a result, in part, of its role as an investor in HCLOF," an entity whose Subscription and Company Agreement contain no jury waiver. Plaintiffs' Brief at 4. But Plaintiffs err again.

14. Assuming for the sake of argument only that there is no "implied waiver," HCLOF is managed by HCF Advisors, Ltd ("HCFA"), a subsidiary of the Debtor, pursuant to a *Portfolio Management Agreement*, effective from November 15, 2017, and that agreement contains an express ***jury trial waiver***. **Exhibit A** §14(e)(iii). Since HCFA's and the Debtor's fiduciary duties run to HCLOF and not CLO Holdco,[5] there is no jury trial right for any claims that could conceivably be asserted by CLO Holdco against HCFA and the Debtor. Plaintiffs' failure to alert the Court to yet another relevant agreement is either intentionally misleading or is another careless mistake. Either way it is unacceptable.

15. ***Third***, Plaintiffs improperly attempt to re-litigate the Motion, repeating their

---

[5] *See, e.g., Goldstein v. SEC*, 451 F.3d 873, 881(D.C. Cir. 2006) ("The adviser owes fiduciary duties only to the fund [*i.e.*, the client], not to the fund's investors. . . If the investors are owed a duty and the entity is also owed a fiduciary duty, then the adviser will inevitably face conflicts of interest."); *see also* Inv. Adv. Act Re. No. 2628 (Aug. 3, 2007) (Rule 206(4)-8 "'does not create under the Advisers Act a fiduciary duty to investors or prospective investors in a pooled investment vehicle not otherwise imposed by law" or "a private right of action.").

arguments that the Court lacked jurisdiction to grant Mr. Seery exculpation and to adopt the gatekeeper provision. Plaintiffs' Brief at 4-5. Not only is this not responsive to the question presented, it simply is wrong because – as has been discussed and debated in connection with the Motion – bankruptcy courts routinely grant such protections.

16. **_Fourth_**, Plaintiffs – apparently without irony – attempt to suggest that Grant Scott, then the authorized representative of the Charitable DAF, lacked independence when he agreed to the jury trial waiver. This suggestion contradicts every argument made by the Charitable DAF in this bankruptcy case and is nonsensical in the context of a jury trial waiver written in bold, capitalized letters that applies equally to both parties.

17. Plaintiffs also argue that (a) section 11(j) of the Second Amended Agreement describes the exculpation clause and contains an "explicit reference to the unwaivable fiduciary duties that arise by operation of law under the Advisers Act" and that (b) somehow the jury trial waiver cannot apply to such claims. Plaintiffs' Brief at 6. But section 11(j) contains no such "explicit reference," and even if it did, it only means that those claims are retained, not that they are an exception to the express and unqualified jury trial waiver.[6] Indeed, a waiver of jury rights _necessarily_ applies to retained claims; otherwise, the jury waiver would have no meaning. Thus, even if Plaintiffs retained claims under the Advisers Act (which they could not, since they were owed not fiduciary duty and no private right of action exists under the Advisers Act), the jury trial waiver still applies.

18. **_Finally_**, Plaintiffs argue that they were contractually obligated to bring their suit in

---

[6] The applicable portion of section 11(j) states that as a result of the exculpation granted to the Debtor and each Indemnified Party, the Charitable DAF "will be responsible for any Losses resulting from trading errors or similar human errors absent bad faith, willful misconduct, fraud or gross negligence or the ability to waive or limit such Losses under applicable law." Contrary to Plaintiffs' argument, there is no mention (explicit or otherwise) of "fiduciary duties" or the Advisers Act.

the district court as it was identified as the exclusive forum for commencing an action under the Second Amended Agreement. Plaintiffs' Brief at 6. But, as Plaintiffs themselves have noted, the bankruptcy court's jurisdiction is derivative of the district court's such that filing an action in the bankruptcy court related to the bankruptcy would not have been a violation of the contract. Regardless, this has nothing to do with the jury trial waiver.

19. Separately, Plaintiffs "move to withdraw the reference" to the "extent this Court intends to make any decision regarding Movants' right to a jury trial." Plaintiffs' Brief at 7. This is improper for at least two reasons. ***First***, the Court made clear that it was not relying on the jury trial waiver to decide the Motion; rather, it was only seeking an explanation for how Plaintiffs could have advanced arguments that were demonstratively false. In response, Plaintiffs' counsel admitted to their error (and should have left it at that). ***Second***, the "motion" is plainly improper – if Plaintiffs want to withdraw the reference, they must file an actual motion on proper notice. Having failed to do so, the Court should ignore the request.[7]

*[Remainder of Page Intentionally Blank]*

---

[7] On May 19, 2021, the Debtor filed *Defendant Highland Capital Management, L.P.'s Motion for an Order to Enforce the Order of Reference*, Cause No. 3:21-cv-00842-B, Docket No. 22 (N.D. Tex. May 19, 2021) (the "Motion to Enforce") requesting that the District Court refer the Complaint to this Court (where it likely would have automatically been referred had Plaintiffs correctly completed their Civil Cover Sheet). The Motion to Enforce is *sub judice*. If and when the District Court grants the Motion, the Plaintiffs will have the opportunity to request a withdrawal of the reference. The Debtor reserves all rights to oppose any such motion at the appropriate time.

| | |
|---|---|
| Dated: July 15, 2021. | **PACHULSKI STANG ZIEHL & JONES LLP** |

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)
John A. Morris (NY Bar No. 266326) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:  jpomerantz@pszjlaw.com
 ikharasch@pszjlaw.com
 jmorris@pszjlaw.com
 gdemo@pszjlaw.com
 hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*