# EXHIBIT 2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-sgj11 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | **Chapter 11** |
| | § | |
| Debtor | § | |

## DECLARATION OF LOUIS M. PHILLIPS

I, Louis M. Phillips, pursuant to 28 U.S.C. § 1746(a), under penalty of perjury, declare as follows

1.  I am an attorney admitted to practice law before this Court, and as relates to the *Motion for Entry of an Order Authorizing the Examination of Rule 2004 Parties pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* (Dkt. No. 2620) (the "Rule 2004 Motion") am counsel to Charitable DAF Fund, L.P. (the "DAF Fund"); Charitable DAF HoldCo, Ltd. ("DAF HoldCo"); Charitable DAF GP, L.P., (the "DAF GP") (these entities, collectively, the "DAF"), and Highland Dallas Foundation, Inc. ("Highland Dallas Foundation"), (together with the DAF, the "Charitable Respondents"), and submit this Declaration in support of the Charitable Respondents' Objection to the Rule 2004 Motion.

2.   Unless stated otherwise, this Declaration is based on my personal knowledge and review of the documents listed below.

3.  Attached as **Exhibit 1** is a true and correct copy of the Committee's Fourth Request for Production of Documents to the Debtor that I received from previous counsel for CLO HoldCo, Ltd.

4.      Attached as **Exhibit 2** is a true and correct copy of the Committee's First Request for Production of Documents to CLO HoldCO, Ltd. that I received from previous counsel for CLO HoldCo, Ltd.

5.      Attached as **Exhibit 3** is a true and correct copy of the Responses and Objections to the Committee's First Request for Production of Documents to CLO HoldCO, Ltd., and the email service thereof that I received from previous counsel for CLO HoldCo, Ltd.

6.      Attached as **Exhibit 4** is a true and correct copy of the July 29, 2020 email correspondence from the Debtor to former counsel for CLO HoldCo that I received from previous counsel for CLO HoldCo, Ltd.

7.      Upon information and belief, over 6,000 emails from Grant Scott were provided to the Debtor and/or the Committee.

Dated: August 17, 2021

_/s/ Louis M. Phillips_
**Louis M. Phillips**

# EXHIBIT 1
# to DECLARATION OF LOUIS M. PHILLIPS

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Debtor. | |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' FOURTH REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Rule 7034 of the Federal Rules of Bankruptcy Procedure, and the Amended Term Sheet, the Official Committee of Unsecured Creditors in the above captioned bankruptcy case (the "Committee") hereby serves the following requests for production of documents to Highland Capital Management, L.P. ("Request(s)"). The Requests are made pursuant to the Amended Term Sheet to which the Committee and Highland Capital Management, L.P., have agreed (Dkts. 354, 354-1) (the "Final Term Sheet") and which the Court has entered through an Order (Dkt. 339). Moreover, because this is the fourth formal request for production, preceded by three prior formal requests as well as informal discussion among the parties that have not been fulfilled, and the Court has requested that the Committee file certain adversary proceedings within 90 days of its order dated January 9, 2020, any Documents or Communications responsive to these Requests should be included in the production subject to the *Unsecured Creditors' Motion to Compel Production of the Debtor*, filed on July 8, 2020.

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

1

## DEFINITIONS

1.  "Atlas IDF GP" means Atlas IDF GP, LLC, and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

2.  "Atlas IDF, LP" means Atlas IDF, LP and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

3.  "Beacon Mountain" means Beacon Mountain, LLC and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

4.  "Charitable DAF Fund" means Charitable DAF Fund, LP, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

5.  "Charitable DAF GP" means Charitable DAF GP, LLC, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents,

2

advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

6. "Charitable DAF HoldCo" means Charitable DAF HoldCo, Ltd., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

7. "Class A Limited Partners" means the limited partners of the Debtor, as identified in Exhibit A of the Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (Bates numbers Highland/PEO-003550 – Highland/PEO-003585).

8. "Class B Limited Partnership Interests" means the partnership interests held by Class B Limited Partners, as identified in Exhibit A of the Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (Bates numbers Highland/PEO-003550 – Highland/PEO-003585).

9. "CLO HoldCo" means CLO HoldCo, Ltd. and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of the foregoing.

10. "CLO HoldCo Transaction" means a series of transactions executed on December 28, 2016, in which the following transfers occurred, upon information and belief:

    a. The transfer of approximately a 97.6835% interest in a $24 million promissory note with Dugaboy (the "Dugaboy Note") from Get Good to the Debtor, and the transfer of the Transferred Interests (defined below) from the Debtor to Get Good, pursuant

3

to the Purchase and Sale Agreement (Bates numbers Highland/PEO-032722 – Highland/PEO-032737 (the "Purchase and Sale Agreement")) amended by the Amendment to Purchase and Sale Agreement (Bates numbers Highland/PEO-032712 – Highland/PEO-032721 (the "Amended Purchase and Sale Agreement")), or any other Document, Communication, or agreement (the "Debtor/Get Good Transfer");

b. The transfer of the Transferred Interests from Get Good to Highland Dallas Foundation, pursuant to the Exercise of Discretion by Trustee with Respect to Distribution to Charitable Beneficiary (Bates numbers Highland/PEO-032707 – Highland/PEO-032711 (the "Exercise of Discretion")) and the Donative Assignment of Interests (Bates numbers Highland/PEO-032698 – Highland/PEO-032702 (the "Donative Assignment of Interests")), or any other Document, Communication, or agreement (the "Get Good/Highland Dallas Foundation Transfer");

c. The transfer of the Transferred Interests from Highland Dallas Foundation to Charitable DAF HoldCo, pursuant to the Unanimous Written Consent of Directors in Lieu of Meeting (Bates numbers Highland/PEO-032603 – Highland/PEO-032608 (the "Unanimous Consent")), or any other Document, Communication, or agreement (the "Highland Dallas Foundation/Charitable DAF Transfer"); and

d. The transfer of the Transferred Interests from Charitable DAF HoldCo to Charitable DAF Fund, and then to CLO HoldCo, pursuant to the Omnibus Assignment Agreement (Bates numbers Highland/PEO-032686 – Highland/PEO-032692 (the "Omnibus Assignment Agreement")) and by written resolutions executed by

4

Charitable DAF HoldCo, Charitable DAF GP, and CLO HoldCo (Bates numbers respectively Highland/PEO-032822 – Highland/PEO-032827, Highland/PEO-032810 – Highland/PEO-032815, and Highland/PEO-032816 – Highland/PEO-032821 (collectively, the "Written Resolutions")), or any other Document, Communication, or agreement (the "Charitable DAF/CLO HoldCo Transfer").

11. "Communication(s)" means any written or oral communication of any kind or character, including, by way of example and without limitation, e-mails, instant messages, text messages, voicemail or voice messages, audio recordings, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic and telex communications or transmittals of Documents, whether such communication was sent, received, or created, in final or in draft, and all Documents concerning or memorializing such written or oral communications.

12. "Concerning" means consisting of, reflecting, referring to, regarding, related to, involving, evidencing, constituting, or having any legal, logical, evidential, or factual connection with (whether to support or rebut) the subject matter designated in any of these Requests. A request for documents "concerning" a specified subject matter always shall include communications, notes, and memoranda (whenever prepared) relating to the subject matter of the request.

13. "Contribution Agreement" means the Contribution Agreement between the Debtor and Hunter Mountain Investment Trust, dated as of December 21, 2015.

14. "Crown Global" means Crown Global Insurance Company and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

5

15.     "Debtor," "You," and "Your" means the Highland Capital Management, L.P., the Debtor in the above-captioned case, and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

16.     "Document(s)" means, without limitation, the original and all copies, prior drafts, and translation of information in any written, typed, printed, recorded or graphic form, however produced or reproduced, of any type or description, regardless of origin or location, including without limitation, all Electronically Stored Information, Communications, records, tables, charts, analyses, graphs, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), contracts, statements, bills, checks, vouchers, video tapes, photographs, tape recordings, other mechanical records, transcripts or logs of any such recordings, and all other data compilations from which information can be obtained.  The term "Document(s)" is intended to be at least as broad in meaning and scope as the usage of the term in or pursuant to the Federal Rules of Civil Procedure.

17.     "Dondero" means James Dondero and all entities under his control, including without limitation, Dugaboy, Get Good, and the Get Better Trust.

18.     "Dugaboy" means Dugaboy Investment Trust, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, trustees, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, beneficiaries, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

6

19.     "<u>Dynamic Income CLO HoldCo Side Letter</u>" means the letter agreement dated January 10, 2017 (Bates numbers Highland/PEO-032703 – Highland/PEO-032705).

20.     "<u>Dynamic Income Fund</u>" means Highland Dynamic Income Fund, L.P., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

21.     "<u>Eames Ltd.</u>" means Eames Ltd., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

22.     "<u>Empower Dallas Foundation</u>" means Empower Dallas Foundation, created in February 2015 as a tier one supporting organization to the Dallas Foundation.

23.     "<u>Get Better Trust</u>" means The Get Better Trust, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, trustees, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, beneficiaries and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

24.     "<u>Get Good</u>" means The Get Good Nonexempt Trust, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, trustees, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, beneficiaries, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

7

25.     "Guaranty Agreements" means the various guaranty agreements executed by Rand PE Fund I, L.P. as part of the Hunter Mountain Transaction, including without limitation, the guaranty agreement between Hunter Mountain Trust, the Debtor, and Rand PE Fund I, L.P. dated December 21, 2015; the guaranty agreement between Hunter Mountain Trust, The Mark and Pamela Okada Family Trust – Exempt Trust #1, and Rand PE Fund I, L.P. dated  December 24, 2015; the guaranty agreement between Hunter Mountain Trust, The Mark and Pamela Okada Family Trust – Exempt Trust #2, and Rand PE Fund I, L.P. dated December 24, 2015; the guaranty agreement between Hunter Mountain Trust, Mark K. Okada, and Rand PE Fund I, L.P. dated December 24, 2015; and the guaranty agreement between Hunter Mountain Trust, The Dugaboy Investment Trust, and Rand PE Fund I, L.P. dated December 24, 2015.

26.     "Highland Capital Loan Fund" means Highland Capital Loan Fund, L.P., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

27.     "Highland Capital Loan Fund GP" means Highland Capital Loan Fund GP, LLC, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

28.     "Highland Dallas Foundation" means Highland Dallas Foundation, Inc., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents,

8

advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

29.     "<u>Highland Entity</u>" and "<u>Highland Entities</u>" means the Debtor and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

30.     "<u>Highland Kansas City Foundation</u>" means the Highland Kansas City Foundation, Inc. listed as a "Supporting Organization" in the DAF/CLO HoldCo Structure Chart (Bates number Highland/PEO-002398).

31.     "<u>Highland Loan Fund</u>" means Highland Loan Fund, Ltd., a party signatory to Dynamic Income CLO HoldCo Side Letter, of which Trey Parker was a director in January 2017 and signed on behalf of the Highland Loan Fund in the Dynamic Income CLO HoldCo Side Letter.

32.     "<u>Highland Loan Master Fund</u>" means Highland Loan Master Fund, L.P., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

33.     "<u>Highland Santa Barbara Foundation</u>" means Highland Santa Barbara, Inc. listed as a "Supporting Organization" in the DAF/CLO HoldCo Structure Chart (Bates number Highland/PEO-002398).

9

34. "Honis" means John Honis, who as of December 2015 was the sole member of Atlas IDF GP, LLC, and the sole member of Rand PE Fund Management, LLC, among other entities with which he is involved.

35. "Hunter Mountain Trust" means Hunter Mountain Investment Trust and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, trustees, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, beneficiaries, and all other persons and entities acting or purporting to act on behalf of any of the foregoing, including Crown Global Insurance.

36. "Hunter Mountain Transaction" means the transactions between Debtor and Hunter Mountain Trust on December 21, 2015, whereby Hunter Mountain Trust entered into a Contribution Agreement with Debtor to receive 55% of the limited partnership interest in Debtor, and on December 24, 2015, whereby Hunter Mountain Trust received an additional 44.5% limited partnership interest in the Debtor by cash purchase and notes payable to the Limited Partners.

37. "Identify" means to state, to the extent known (or, if not know, to so state,) the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

38. "Jalonick" means Mary Jalonick, who as of December 2016 was a director of Highland Dallas Foundation, among other entities with which she is and/or was involved.

39. "Limited Partner" or "Limited Partners" means the limited partners in the Debtor prior to the Hunter Mountain Transaction, including Mark Okada, The Mark and Pamela Okada Family Trust - Exempt Trust #1 ("Okada Family Trust #1"), The Mark and Pamela Okada Family Trust – Exempt Trust # 2 ("Okada Family Trust #2"), and Dugaboy.

10

40. "<u>Multi Strat</u>" means Highland Multi Strategy Credit Fund, L.P., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

41. "<u>Okada</u>" means Mark Okada and any entities under his control, including without limitation, Okada Family Trust #1 and Okada Family Trust #2.

42. "<u>Okada Family Foundation</u>" means the Okada Family Foundation, Inc., created in February 2015 as a tier one supporting organization to the Dallas Foundation.

43. "<u>Petition Date</u>" means October 16, 2019.

44. "<u>Rand Advisors</u>" means Rand Advisors, LLC, of which John Honis is the investment manager, and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

45. "<u>Rand PE Fund I, L.P.</u>" means Rand PE Fund, I, L.P. and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

46. "<u>Rand PE Fund Management, LLC</u>" means Rand PE Fund Management, LLC and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees,

11

representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

47. "<u>Relating to</u>" means consisting of, reflecting, referring to, regarding, concerning, involving, evidencing, constituting, or having any legal, logical, evidential, or factual contention with (whether to support or to rebut) the subject matter designated in any of these Requests. A request for documents "relating to" a specified subject matter always shall include communications, notes and memoranda (whenever prepared) relating to the subject matter of the request.

48. "<u>Scott</u>" means Grant James Scott, who as of December 2016 was the trustee of Get Good, a director of CLO HoldCo, the managing member of Charitable DAF GP, and a director of Charitable DAF HoldCo, among other entities with which he is and/or was involved.

49. "<u>Transferred Interests</u>" means the $2,032,183.24 (based on 11/30/16 NAV) Series A Interests of Highland Capital Loan Fund (the "<u>Series A Interests</u>"), any ownership and/or participation interest in the call options of American Airlines Group, Inc. (the "<u>American Airlines Call Options</u>"), the participation interests in certain shares of Highland Crusader Fund, L.P. and Highland Crusader Fund II, Ltd. and tracking interests in certain participating shares of Highland Crusader Fund L.P. (the "<u>Participation and Tracking Interests</u>"), as defined in the Purchase and Sale Agreement and Amended Purchase and Sale Agreement, transferred on December 28, 2016 from the Debtor to Get Good, to Highland Dallas Foundation, to Charitable DAF HoldCo, to Charitable DAF Fund, and to CLO HoldCo.

## **<u>INSTRUCTIONS</u>**

1. The Committee requests production of the following documents and information pursuant to the Final Term Sheet and Document Production Protocol contained therein as Exhibit C.

12

2.      The Committee requests production of the following documents and information

on an immediate and rolling basis.  Pursuant to the Final Term Sheet, the Debtor shall search for

ESI at the earliest opportunity and, in no event, later than seven days after the date of these

Requests.

3.      Unless otherwise indicated, all documents shall be produced for the relevant time

period, which shall be the five years before the Petition Date, including any documents having an

earlier origin, if in use during the relevant time period.

4.      The obligation to produce documents responsive to these Requests shall be

continuing in nature, and a producing party is required promptly to produce any documents

requested herein that it locates or obtains after responding to these Requests, up to the conclusion

of the above-captioned Chapter 11 Cases.

5.      Pursuant to the Final Term Sheet's Document Production Protocol, the Committee

will have access to the privileged documents and communications that are within the Debtor's

possession, custody, or control to the extent they are responsive to these requests.

6.      You are requested to produce not only those documents in Your physical

possession, but also those documents within Your custody and control, including, without

limitation, documents in the possession of Your agents, partners, shareholders, members,

employees, affiliates, advisors, or consultants and any other person or entity acting on Your behalf.

7.      If You have no documents responsive to a particular Request, or if for some other

reason You are unable to produce responsive documents, Your response to that Request should

specifically so state.  Accordingly, You should respond to each and every Request herein.  If You

have certain documents that are responsive to a Request, but believe that additional documents not

13

now available to You would also be responsive, You should provide the documents You now have and specifically state when the remainder of the documents will be provided.

8.      Where an objection is made to any document request, the objection shall state with specificity all grounds for objection.

9.      In the event that a requested document has been lost, destroyed, discarded and/or otherwise disposed of; You will identify the document by identifying: (i) its author or preparer; (ii) all persons to whom distributed or shown; (iii) date; (iv) subject matter; (v) attachments or appendices; (vi) date, manner, and reason for destruction or other disposition; (vii) person authorizing destruction or other disposition; (viii) the document request or requests to which the document is responsive.

## **DOCUMENTS REQUESTED**

1.      Any and all Documents or Communications, including without limitation, accounting-level information in Oracle, bank statements, accounting statements, journals, or ledgers documenting transactions, relating to cash transfers into, out of, or on behalf of the Debtor from 2014 to present.  For the avoidance of doubt, this Request includes any Chart of Accounts, Receivables and Payables sub-ledgers, Cash Receipts and Disbursements sub-ledgers, Data Dictionary, and Filed Value Lookup Tables providing definitions for coded field values.

2.      Any and all spreadsheets or other Documents used and listed in the source field of the general ledger printout previously produced by Debtor.

3.      Any and all Vendor Master Files or control files that contain basic information about vendors including address, date added, contact information, and other similar data.

4.      Any and all Documents or Communications, including without limitation, accounting-level information in Oracle, bank statements, accounting statements, journals, or ledgers documenting transactions relating to cash transfers into, out of, or on behalf of Hunter

14

Mountain Trust, Beacon Mountain, Rand PE Fund I, L.P., Rand PE Fund Management, LLC, Atlas IDF, LP, and Atlas IDF GP, LLC.  For the avoidance of doubt, this Request includes any Chart of Accounts, Receivables and Payables sub-ledgers, Cash Receipts and Disbursements sub-ledgers, Data Dictionary, and Filed Value Lookup Tables providing definitions for coded field values.

5.     Any and all Documents or Communications relating to the Hunter Mountain Transaction, including without limitation, the following:

a.  any and all Documents or Communications relating to the creation of Hunter Mountain Trust,

b.  any basis or purposes for the Hunter Mountain Transaction,

c.  the valuation of the Debtor's limited partnership interests at the time of the Hunter Mountain Transaction, and

d.  the source of funds used by Hunter Mountain Trust to purchase the Debtor's limited partnership interests as part of the Hunter Mountain Transaction.

6.     Any and all Documents or Communications relating to the ownership and management structure of Hunter Mountain Trust, including without limitation, governance documents for Hunter Mountain Trust, Beacon Mountain, Rand PE Fund I, L.P., Rand PE Fund Management, LLC, Atlas IDF, LP, Atlas IDF GP, LLC, and Crown Global.

7.     Any and all Documents or Communications relating to the negotiations of the terms of the Hunter Mountain Transaction, including without limitation, the negotiations of the terms of the Contribution Agreement between Hunter Mountain Trust and the Debtor, and the notes payable executed by Hunter Mountain to the Debtor and to the Limited Partners as part of the Hunter Mountain Transaction.

15

8.     Any and all Documents or Communications relating to the determination of and any basis or purposes for the principal amounts, interest rates, and payment schedules of the notes payable from Hunter Mountain Trust to the Debtor and to the Limited Partners as part of the Hunter Mountain Transaction.

9.     Any and all Documents or Communications relating to the determination and calculation of any distributions (regardless of currency or categorization) from the Debtor to Hunter Mountain Trust, including without limitation, distributions of equity or for tax purposes.

10.     Any and all Documents or Communications relating to any subsequent transfer of the limited partnership interest in the Debtor that Hunter Mountain Trust received as part of the Hunter Mountain Transaction, including without limitation, the negotiations relating to the terms of any said transfers, the value received by Hunter Mountain Trust as part of any said transfer, and any basis or purposes of any said transfer.

11.     Any and all Documents or Communications relating to financial statements, accounting, budgets or audits of the Debtor from 2014 to present, including without limitation,

  a.   any and all audited and unaudited financial statements of the Debtor (including any consolidating financial statements at year-end);

  b.   any representation letters provided to independent auditors;

  c.   any engagement letters with outside accounting firms (including for audit services);

  d.   any lawyers' letters provided to auditors in connection with their audits;

  e.   any workpapers or packages prepared for audits/auditors;

  f.   any projections, forecasts, budgets prepared during this period; and

  g.   any valuations of the Debtor or any of the Debtor's assets, including investments, for the year ended December 31, 2014 through present.

16

12.     Any and all management reports from 2014 to present of the Debtor, including without limitation,

    a.   any asset management reports;

    b.   any cash reports;

    c.   any financing reports;

    d.   any strategic planning reports; and

    e.   any variance reports.

13.     Any and all Documents or Communications relating to the Guaranty Agreements.

14.     Any and all Documents or Communications relating to any participation agreements, subscription agreements, and/or governance documents (e.g., bylaws, articles of incorporation, or any other governance documents), between Crown Global and Atlas IDF, LP, including without limitation, the participation and subscription agreements, insurance policies, private placement memoranda, any basis or purposes for the agreements, and negotiations relating to the terms of the agreements.

15.     Any and all Documents or Communications relating to any subscription agreements, governance documents (e.g., bylaws, articles of incorporation, or any other governance documents), and/or partnership agreements between Atlas IDF, LP and Rand PE Fund I, LP, including without limitation, the subscription and partnership agreements, any basis or purposes for the agreements, and negotiations relating to the terms of the agreements.

16.     Any and all Documents or Communications relating to any subscription agreements, governance documents (e.g., bylaws, articles of incorporation, or any other governance documents), and/or partnership agreements between Rand PE Fund I, LP, and Beacon

17

Mountain, LLC, including without limitation, the subscription and partnership agreements, any basis or purposes for the agreements, and negotiations relating to the terms of the agreements.

17. Any and all Documents or Communications relating to any subscription agreements, governance documents (e.g., bylaws, articles of incorporation, or any other governance documents), and/or partnership agreements relating to Atlas IDF GP, LLC and Rand PE Fund Management, LLC including without limitation, the subscription and partnership agreements, any basis or purposes for the agreements, and negotiations relating to the terms of the agreements.

18. Any and all Documents or Communications between Rand Advisors and the Debtor in the Debtor's role as the documented administrator of Rand PE Fund I, L.P.

19. Any and all Documents or Communications relating to valuation of collateral concerning any debt owed to the Debtor by Hunter Mountain Trust.

20. Any and all Documents or Communications relating to payments, distributions, investments, transfers, or the remittance of anything of value from the Debtor to Hunter Mountain Trust, any Limited Partner, Beacon Mountain, Rand PE Fund I, L.P., Rand PE Fund Management, LLC, Atlas IDF, LP, Atlas IDF GP, LLC, Crown Global, Honis, Empower Dallas Foundation, or Okada Family Foundation from 2014 to present, including without limitation, the amount of the payments, distributions, or value, the date of the transfers, and any basis or purposes for the transfers.

21. Any and all Documents or Communications relating to payments, distributions, investments, transfers, or the remittance of anything of value to the Debtor from Hunter Mountain Trust, any Limited Partner, Beacon Mountain, Rand PE Fund I, L.P., Rand PE Fund Management,

ACTIVE 257691391

LLC, Atlas IDF, LP, Atlas IDF GP, LLC, Crown Global, Honis, Empower Dallas Foundation, or Okada Family Foundation from 2014 to present.

22.     Any and all Documents or Communications relating to any position held by or compensation received by Honis in any transactions involving the Debtor, Hunter Mountain Trust, Beacon Mountain, Rand PE Fund I, L.P., Rand PE Fund Management, LLC, Atlas IDF, LP, Atlas IDF GP, LLC, Crown Global, Empower Dallas Foundation, or Okada Family Foundation, including without limitation, Honis's role as the sole member of the Atlas IDF GP, LLC, as sole member of Rand PE Fund Management, LLC, and as administrator of Hunter Mountain Trust.

23.     Any and all Documents or Communications relating to the creation, governance, and funding of Empower Dallas Foundation and Okada Family Foundation, including without limitation, bylaws, articles of incorporation, financial statements, investment management agreements, tax returns and related tax work papers, and any agreements with Crown Global Insurance.

24.     Any and all Documents or Communications relating to any tax treatment, any tax benefits and/or any tax planning process of the Debtor, Dondero, or Okada in connection with the Hunter Mountain Transaction.

25.     Any and all Documents or Communications, including without limitation, internal and external email and memorandum and work papers, addressing the amount of tax distributions made by the Debtor to any of the Limited Partners for tax years 2015 to present.

26.     Any and all Documents or Communications relating to any changes in year-to-date tax distributions for the Debtor's 2015 tax year for the benefit of the Debtor's Class A Limited Partners.

ACTIVE 257691391

27.     Any and all Documents or Communications, including without limitation, internal and external email and memorandum, addressing whether the Debtor experienced a technical termination of the partnership in 2015 under then applicable federal tax law as a result of the Hunter Mountain Transaction.

28.     Any and all Documents or Communications relating to the issuance of Class B Limited Partnership Interests.

29.     Any and all Documents or Communications relating to tax planning for the Debtor from 2011 to present, including without limitation,

        a.  any tax planning memos;

        b.  any engagements with third parties;

        c.  any work papers;

        d.  any tax returns; and

        e.  any engagement letters with outside firms relating to tax services.

30.     Any and all Documents or Communications relating to the CLO HoldCo Transaction, including without limitation, any negotiations of the terms of the CLO HoldCo Transaction, any Communications between or among the Debtor, Get Good, Highland Dallas Foundation, Charitable DAF HoldCo, Charitable DAF Fund, CLO HoldCo, Dondero, Okada, Scott, and Jalonick, and any basis or purposes for the CLO HoldCo Transaction, including without limitation, any Documents or Communications explaining why there were separate transfers, the rationale for each transfer, and any tax considerations for the various transfers.

31.     Any and all Documents or Communications relating to the Debtor/Get Good Transfer, including without limitation, any Documents or Communications relating to the negotiation of the terms of the transfer, valuation of the Series A Interests, valuation of the

20

American Airlines Call Options, valuation of the Participation and Tracking Interests, and any basis or purpose for the transfer.

32.     Any and all Documents or Communications relating to the Purchase and Sale Agreement between the Debtor and Get Good, including without limitation, certain documents discussed therein the Purchase and Sale Agreement such as the Joint Plan of Distribution of the Crusader Funds, the Scheme of Arrangement between the Offshore Crusader Fund and its Scheme Creditors, and any Documents or Communications relating to Eames Ltd.'s ownership of the Participation and Tracking Interests, as referenced and defined in the Purchase and Sale Agreement.

33.     Any and all Documents or Communications relating to the Dugaboy Note, including without limitation, the original Dugaboy Note, dated June 29, 2001, any amendments to the Dugaboy Note, any negotiation of the Dugaboy Note terms, original business purpose and value received for the original Dugaboy Note, any basis for paydowns on the Dugaboy Note any basis or purposes for the transfer of the Dugaboy Note from Get Good to the Debtor, any Documents or Communications explaining the basis or purposes of transferring only a portion (approximately 97.6835%) of the Dugaboy Note to the Debtor, any underwriting or investigation of the Dugaboy Note performed by the Debtor or Get Good, and any Documents or Communications evidencing Dugaboy's ability to pay the Dugaboy Note.

34.     Any and all Documents or Communications relating to the creation or ownership and management structure of Highland Capital Loan Fund, including without limitation, the Limited Partnership Agreement of Highland Capital Loan Fund, as referenced in the Purchase and Sale Agreement, any amended Limited Partnership Agreement of Highland Capital Loan Fund,

any revised Limited Partnership Agreement executed after Highland Capital Loan Fund changed its name to Dynamic Income Fund, and any other governance documents.

35.     Any and all Documents or Communications relating to the creation or ownership and management structure of Get Good, including without limitation, The Get Good Nonexempt Trust Agreement, dated June 29, 2001, as referenced in the Exercise of Discretion, and any other governance documents.

36.     Any and all Documents or Communications relating to the Get Good/Highland Dallas Foundation Transfer, including without limitation, any and all Documents or Communications relating to the Exercise of Discretion, the Donative Assignment of Interests, negotiations of the terms of the transfer, any basis or purposes for the transfer, any claims of a charitable deduction for tax purposes or otherwise, and the Amended Purchase and Sale Agreement.

37.     Any and all Documents or Communications relating to the Highland Dallas Foundation/Charitable DAF Transfer, including without limitation, any and all Documents or Communications relating to the Unanimous Consent, any negotiations of the terms of the transfer, and any basis or purpose for the transfer.

38.     Any and all Documents or Communications relating to the Charitable DAF/CLO HoldCo Transfer, including without limitation, any and all Documents or Communications relating to the Omnibus Assignment Agreement, the Written Resolutions, any basis or purposes for the transfer, and any negotiations of the terms of the transfers, including without limitation, the decision to bind the parties by the terms of the Multi Strat Governing Documents, as defined and referenced in the Omnibus Assignment Agreement.

22

39.     Any and all Documents or Communications relating to the Dynamic Income CLO HoldCo Side Letter, including without limitation, any negotiations of the terms of the letter, any basis or purposes for the letter, and Highland Capital Loan Fund's Confidential Private Placement Memorandum, as defined and referenced in the Dynamic Income CLO HoldCo Side Letter.

40.     Any and all Documents or Communications relating to the approximately $42.3 million received by Highland Dallas Foundation in 2016 and/or the approximately $5.1 million received by Highland Dallas Foundation in 2018.

41.     Any and all Documents or Communications relating to the creation, ownership, management structure, or governing documents of Dugaboy; Highland Dallas Foundation; Charitable DAF HoldCo; Charitable DAF Fund; CLO HoldCo; Dynamic Income Fund; Highland Loan Fund, Ltd.; Highland Capital Loan Fund GP; Highland Loan Master Fund; Eames, Ltd.; and Multi Strat.

42.     Any and all Documents or Communications relating to any transfers between or among the Debtor, Get Good, Highland Dallas Foundation, Charitable DAF HoldCo, Charitable DAF Fund, and CLO HoldCo since the inception of Charitable DAF GP, Charitable DAF HoldCo, Charitable DAF Fund, and CLO HoldCo, including without limitation, any agreements or related documents pertaining to the separately managed account that HCMLP managed on behalf of the Charitable DAF Fund LP.

43.     Any and all Documents or Communications relating to any investments or ownership interests that CLO HoldCo has made in any funds or business entities relating to the Debtor, Dondero, or any related parties, including without limitation, a complete list of transactions, financial statements, communications to control persons, supporting foundations or any other relevant stakeholder, books and records (including general ledger details).

23

44.    Any and all Documents or Communications relating to financial reporting and financial statements for Get Good, Dugaboy, and the Get Better Trust.

45.     Any and all Documents or Communications relating to investment management agreements between the Highland Dallas Foundation, the Highland Kansas City Foundation, and/or the Highland Santa Barbara Foundation, and the Charitable DAF Fund, Charitable DAF GP, and/or Charitable DAF HoldCo.

50.    Any and all Documents or Communications relating to the creation, ownership, management structure, or governing documents of all entities connected to the DAF/CLO Holdco Structure (Bates number Highland/PEO-002398).

51.     Any and all Documents or Communications relating to payments, distributions, investments, transfers, or the remittance of anything of value to, from or between the Debtor, Hunter Mountain Trust, any Limited Partner, Beacon Mountain, Rand PE Fund I, L.P., Rand PE Fund Management, LLC, Atlas IDF, LP, Atlas IDF GP, LLC, Crown Global, Honis, Empower Dallas Foundation, Okada Family Foundation, and any of the entities connected to the DAF/CLO Holdco Structure (Bates number Highland/PEO-002398) since the inception of Charitable DAF GP, Charitable DAF HoldCo, Charitable DAF Fund, and CLO HoldCo.


Dated: July 8, 2020                          Respectfully submitted,

                                              /s/ Mustafa Abdul-Jabbar
                                             _____


24

# EXHIBIT 2
# to DECLARATION OF LOUIS M. PHILLIPS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| In re: | )<br>)<br>) Chapter 11<br>) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11<br>) |
| Debtor. | )<br>) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO CLO HOLDCO LTD.**

Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure and Rules 2004, 7034, and 9016 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Unsecured Creditors in the above captioned bankruptcy case (the "Committee") hereby serves the following requests for production of documents to CLO HoldCo ("Request(s)").

## DEFINITIONS

1.     "Charitable DAF Fund" means Charitable DAF Fund, LP, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

2.     "Charitable DAF GP" means Charitable DAF GP, LLC, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents,

---

[1]     The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

1

advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

3.      "Charitable DAF HoldCo" means Charitable DAF HoldCo, Ltd., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

4.      "CLO HoldCo" means CLO HoldCo, Ltd. and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

5.      "CLO HoldCo Transaction" means a series of transactions executed on December 28, 2016, in which the following transfers occurred, upon information and belief:

a.    The transfer of approximately a 97.6835% interest in a $24 million promissory note with Dugaboy (the "Dugaboy Note") from Get Good to the Debtor, and the transfer of the Transferred Interests (defined below) from the Debtor to Get Good, pursuant to the Purchase and Sale Agreement dated December 28, 2016 between the Debtor and Get Good (the "Purchase and Sale Agreement")) amended by the Amendment to Purchase and Sale Agreement (the "Amended Purchase and Sale Agreement")), or any other Document, Communication, or agreement (the "Debtor/Get Good Transfer");

b.    The transfer of the Transferred Interests from Get Good to Highland Dallas Foundation, pursuant to the Exercise of Discretion by Trustee with Respect to

2

Distribution to Charitable Beneficiary, dated December 28, 2016 (the "Exercise of Discretion")) and the Donative Assignment of Interests, dated December 28, 2016 (the "Donative Assignment of Interests")), or any other Document, Communication, or agreement (the "Get Good/Highland Dallas Foundation Transfer");

c. The transfer of the Transferred Interests from Highland Dallas Foundation to Charitable DAF HoldCo, pursuant to the Unanimous Written Consent of Directors in Lieu of Meeting dated December 28, 2016 (the "Unanimous Consent")), or any other Document, Communication, or agreement (the "Highland Dallas Foundation/Charitable DAF Transfer"); and

d. The transfer of the Transferred Interests from Charitable DAF HoldCo to Charitable DAF Fund, and then to CLO HoldCo, pursuant to the Omnibus Assignment Agreement between Charitable DAF HoldCo, Charitable DAF Fund, and CLO HoldCo (the "Omnibus Assignment Agreement") and by written resolutions executed by Charitable DAF HoldCo, Charitable DAF GP, and CLO HoldCo, dated December 28, 2016 (collectively, the "Written Resolutions")), or any other Document, Communication, or agreement (the "Charitable DAF/CLO HoldCo Transfer").

6. "Communication(s)" means any written or oral communication of any kind or character, including, by way of example and without limitation, e-mails, instant messages, text messages, voicemail or voice messages, audio recordings, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic and telex communications or transmittals

3

of Documents, whether such communication was sent, received, or created, in final or in draft, and all Documents concerning or memorializing such written or oral communications.

7. "Concerning" means consisting of, reflecting, referring to, regarding, related to, involving, evidencing, constituting, or having any legal, logical, evidential, or factual connection with (whether to support or rebut) the subject matter designated in any of these Requests. A request for documents "concerning" a specified subject matter always shall include communications, notes, and memoranda (whenever prepared) relating to the subject matter of the request.

8. "Contribution Agreement" means the Contribution Agreement between the Debtor and Hunter Mountain Investment Trust, dated as of December 21, 2015.

9. "DAF/CLO HoldCo Structure" means the following entities having an interest in CLO HoldCo: (1) The Dallas Foundation, (2) Greater Kansas City Community Foundation, (3) Santa Barbara Foundation, (4) The Community Foundation of North Texas, (5) Scott, (6) Highland Dallas Foundation, (6) Highland Kansas City Foundation, (7) Highland Santa Barbara Foundation, (8) HCMLP Charitable Fund, (9) Charitable DAF GP, (10) Charitable DAF HoldCo, (11) Charitable DAF Fund, (12) CLO HoldCo, (13) various Highland CLOs of which CLO HoldCo has an ownership interest in, (14) various Highland Institutional Funds of which CLO HoldCo has an ownership interest in, (15) CAF Stone Oak Village, LLC, (16) HCT HoldCo 2, Ltd., (17) MCM Studios HoldCo, Ltd., (18) Liberty CLO HoldCo, Ltd., (19) Liberty Sub Ltd. (of which Liberty CLO HoldCo Ltd. has an ownership interest in) (20) NCI RE Properties (of which Liberty CLO HoldCo Ltd. has an ownership interest in), and (21) NREA DST Entities (of which Liberty CLO HoldCo Ltd. has an ownership interest in).

10. "Debtor," "You," and "Your" means the Highland Capital Management, L.P., the Debtor in the above-captioned case, and any direct or indirect predecessors or successors in

4

interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

11. "<u>Document(s)</u>" means, without limitation, the original and all copies, prior drafts, and translation of information in any written, typed, printed, recorded or graphic form, however produced or reproduced, of any type or description, regardless of origin or location, including without limitation, all Electronically Stored Information, Communications, records, tables, charts, analyses, graphs, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), contracts, statements, bills, checks, vouchers, video tapes, photographs, tape recordings, other mechanical records, transcripts or logs of any such recordings, and all other data compilations from which information can be obtained. The term "Document(s)" is intended to be at least as broad in meaning and scope as the usage of the term in or pursuant to the Federal Rules of Civil Procedure.

12. "<u>Dondero</u>" means James Dondero and all entities under his control, including without limitation, Dugaboy, Get Good, and the Get Better Trust.

13. "<u>Dugaboy</u>" means Dugaboy Investment Trust, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, trustees, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, beneficiaries, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

14. "<u>Dynamic Income CLO HoldCo Side Letter</u>" means the letter agreement dated January 10, 2017, from Highland Capital Loan Fund to CLO HoldCo.

5

15. "<u>Dynamic Income Fund</u>" means Highland Dynamic Income Fund, L.P., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

16. "<u>Eames Ltd.</u>" means Eames Ltd., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

17. "<u>Empower Dallas Foundation</u>" means Empower Dallas Foundation, created in February 2015 as a tier one supporting organization to the Dallas Foundation.

18. "<u>Get Better Trust</u>" means The Get Better Trust, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, trustees, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, beneficiaries and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

19. "<u>Get Good</u>" means The Get Good Nonexempt Trust, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, trustees, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, beneficiaries, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

20. "<u>Highland Capital Loan Fund</u>" means Highland Capital Loan Fund, L.P., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them,

6

and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

21. "Highland Capital Loan Fund GP" means Highland Capital Loan Fund GP, LLC, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

22. "Highland Dallas Foundation" means Highland Dallas Foundation, Inc., a purported "Supporting Organization" to Charitable DAF HoldCo, and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

23. "Highland Entity" and "Highland Entities" means the Debtor and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

24. "Highland Kansas City Foundation" means the Highland Kansas City Foundation, Inc., a purported "Supporting Organization" to Charitable DAF HoldCo, and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors,

7

attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

25. "Highland Loan Fund" means Highland Loan Fund, Ltd., a party signatory to Dynamic Income CLO HoldCo Side Letter, of which Trey Parker was a director in January 2017 and signed on behalf of the Highland Loan Fund in the Dynamic Income CLO HoldCo Side Letter.

26. "Highland Loan Master Fund" means Highland Loan Master Fund, L.P., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

27. "Highland Santa Barbara Foundation" means Highland Santa Barbara, Inc., a purported "Supporting Organization" to Charitable DAF HoldCo, and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

28. "Identify" means to state, to the extent known (or, if not know, to so state,) the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

29. "Jalonick" means Mary Jalonick, who as of December 2016 was a director of Highland Dallas Foundation, among other entities with which she is and/or was involved.

30. "Limited Partner" or "Limited Partners" means the limited partners in the Debtor prior to the Hunter Mountain Transaction, including Mark Okada, The Mark and Pamela Okada

8

Family Trust - Exempt Trust #1 ("Okada Family Trust #1"), The Mark and Pamela Okada Family Trust – Exempt Trust # 2 ("Okada Family Trust #2"), and Dugaboy.

31.    "Multi Strat" means Highland Multi Strategy Credit Fund, L.P., any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

32.    "Okada" means Mark Okada and any entities under his control, including without limitation, Okada Family Trust #1 and Okada Family Trust #2.

33.    "Okada Family Foundation" means the Okada Family Foundation, Inc., created in February 2015 as a tier one supporting organization to the Dallas Foundation.

34.    "Petition Date" means October 16, 2019.

35.    "Relating to" means consisting of, reflecting, referring to, regarding, concerning, involving, evidencing, constituting, or having any legal, logical, evidential, or factual contention with (whether to support or to rebut) the subject matter designated in any of these Requests.  A request for documents "relating to" a specified subject matter always shall include communications, notes and memoranda (whenever prepared) relating to the subject matter of the request.

36.    "Scott" means Grant James Scott, who as of December 2016 was the trustee of Get Good, a director of CLO HoldCo, the managing member of Charitable DAF GP, and a director of Charitable DAF HoldCo, among other entities with which he is and/or was involved.

37.    "Transferred Interests" means the $2,032,183.24 (based on 11/30/16 NAV) Series A Interests of Highland Capital Loan Fund (the "Series A Interests"), any ownership and/or

9

participation interest in the call options of American Airlines Group, Inc. (the "American Airlines Call Options"), the participation interests in certain shares of Highland Crusader Fund, L.P. and Highland Crusader Fund II, Ltd. and tracking interests in certain participating shares of Highland Crusader Fund L.P. (the "Participation and Tracking Interests"), as defined in the Purchase and Sale Agreement and Amended Purchase and Sale Agreement, transferred on December 28, 2016 from the Debtor to Get Good, to Highland Dallas Foundation, to Charitable DAF HoldCo, to Charitable DAF Fund, and to CLO HoldCo.

## INSTRUCTIONS

1.      Unless otherwise indicated, all documents shall be produced for the relevant time period, which shall be the five years before the Petition Date, including any documents having an earlier origin, if in use during the relevant time period.

2.      The obligation to produce documents responsive to these Requests shall be continuing in nature, and a producing party is required promptly to produce any documents requested herein that it locates or obtains after responding to these Requests, up to the conclusion of the above-captioned Chapter 11 Cases.

3.      You are requested to produce not only those documents in Your physical possession, but also those documents within Your custody and control, including without limitation, documents in the possession of Your agents, employees, affiliates, advisors, or consultants and any other person or entity acting on Your behalf.

4.      If You have no documents responsive to a particular Request, or if for some other reason You are unable to produce responsive documents, Your response to that Request should specifically so state.  Accordingly, You should respond to each and every Request herein.  If You have certain documents that are responsive to a Request, but believe that additional documents not

10

now available to You would also be responsive, You should provide the documents You now have and specifically state when the remainder of the documents will be provided.

5.      Where an objection is made to any document request, the objection shall state with specificity all grounds for objection.

6.      Where a claim of privilege is asserted in objecting to the production of any document and a document called for by these Requests is withheld on the basis of such assertion, the objecting party shall identify the nature of the privilege (including work product) that is being claimed and, if the privilege is governed by state law, indicate the state's privilege being invoked. In addition, the objecting party shall provide the following information with respect to any document so withheld: (i) the type of document, e.g. letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addresses of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other.

7.      In the event that a requested document has been lost, destroyed, discarded and/or otherwise disposed of; You will identify the document by identifying: (i) its author or preparer; (ii) all persons to whom distributed or shown; (iii) date; (iv) subject matter; (v) attachments or appendices; (vi) date, manner, and reason for destruction or other disposition; (vii) person authorizing destruction or other disposition; (viii) the document request or requests to which the document is responsive.

8.      Produce all responsive documents as they are kept in the usual course of business, or organize and label them to correspond with the request to which they are responsive.

9.     With respect to Electronically Stored Information, the producing party shall confer with the Committee to develop parameters, including custodians and search terms, to identify responsive documents.

## DOCUMENTS REQUESTED

1.     Any and all Documents or Communications relating to financial statements, accounting, budgets or audits of Charitable DAF HoldCo, Charitable DAF GP, Charitable DAF Fund, and/or CLO HoldCo from 2014 to present, including without limitation,

  a.  any and all audited and unaudited financial statements of Charitable DAF HoldCo, Charitable DAF GP, Charitable DAF Fund, and/or CLO HoldCo (including any consolidating financial statements at year-end);

  b.  any representation letters provided to independent auditors;

  c.  any engagement letters with outside accounting firms (including for audit services);

  d.  any lawyers' letters provided to auditors in connection with their audits;

  e.  any workpapers or packages prepared for audits/auditors;

  f.  any projections, forecasts, budgets prepared during this period; and

  g.  any valuations of Charitable DAF HoldCo, Charitable DAF GP, Charitable DAF Fund, and/or CLO HoldCo or any of their assets, including investments, for the year ended December 31, 2014 through present.

2.     Any and all management reports from 2014 to present of Charitable DAF HoldCo, Charitable DAF GP, Charitable DAF Fund, and CLO HoldCo, including without limitation,

  a.  any asset management reports;

  b.  any cash reports;

  c.  any financing reports;

  d.  any strategic planning reports; and

ACTIVE 259093332

      e.   any variance reports.

3.     Any and all Documents or Communications with the Internal Revenue Service or other governmental taxing authority relating to tax inquiry or formal tax audits involving Charitable DAF HoldCo, Charitable DAF GP, Charitable DAF Fund, and/or CLO HoldCo.

4.     Any and all Documents or Communications relating to any position held by or compensation received by Scott in connection with any transactions involving the Debtor and/or any individuals or entities in the DAF/CLO HoldCo Structure and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing, including without limitation, Scott's role as the trustee of Get Good, a director of CLO HoldCo, the managing member of Charitable DAF GP, and a director of Charitable DAF HoldCo.

5.     Any and all Documents or Communications relating to any tax treatment, any tax benefits and/or any tax planning process of any individuals or entities in the DAF/CLO HoldCo Structure and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing, in connection with the CLO HoldCo Transaction.

6.     Any and all Documents or Communications relating to payments, distributions, investments, transfers, or the remittance of anything of value from the Debtor to any individuals or entities in the DAF/CLO HoldCo Structure and any direct or indirect predecessors or successors

13

in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

7.      Any and all Documents or Communications relating to payments, distributions, investments, transfers, or the remittance of anything of value to the Debtor from any individuals or entities in the DAF/CLO HoldCo Structure and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

8.      Any and all Documents or Communications relating to valuation of collateral concerning any debt relating to the CLO HoldCo Transaction, owed by any individuals or entities in the DAF/CLO HoldCo Structure and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

9.      Any and all Documents or Communications relating to tax planning for the CLO HoldCo Transaction from 2011 to present, including without limitation,

    a.   any tax planning memos;

    b.   any engagements with third parties;

    c.   any work papers;

ACTIVE 259093332

     d.   any tax returns; and

     e.   any engagement letters with outside firms relating to tax services.

10.     Any and all Documents or Communications relating to the CLO HoldCo Transaction, including without limitation, any negotiations of the terms of the CLO HoldCo Transaction, any Communications between or among the Debtor, Get Good, Highland Dallas Foundation, Charitable DAF HoldCo, Charitable DAF Fund, CLO HoldCo, Dondero, Okada, Scott, and Jalonick, and any basis or purposes for the CLO HoldCo Transaction, including without limitation, any Documents or Communications explaining why there were separate transfers, the rationale for each transfer, and any tax considerations for the various transfers.

11.     Any and all Documents or Communications relating to the Debtor/Get Good Transfer, including without limitation, any Documents or Communications relating to the negotiation of the terms of the transfer, valuation of the Series A Interests, valuation of the American Airlines Call Options, valuation of the Participation and Tracking Interests, and any basis or purpose for the transfer.

12.     Any and all Documents or Communications relating to the Purchase and Sale Agreement between the Debtor and Get Good, including without limitation, certain documents discussed therein the Purchase and Sale Agreement such as the Joint Plan of Distribution of the Crusader Funds, the Scheme of Arrangement between the Offshore Crusader Fund and its Scheme Creditors, and any Documents or Communications relating to Eames Ltd.'s ownership of the Participation and Tracking Interests, as referenced and defined in the Purchase and Sale Agreement.

13.     Any and all Documents or Communications relating to the Dugaboy Note, including without limitation, the original Dugaboy Note, dated June 29, 2001, any amendments to

the Dugaboy Note, any negotiation of the Dugaboy Note terms, original business purpose and value received for the original Dugaboy Note, any basis for paydowns on the Dugaboy Note any basis or purposes for the transfer of the Dugaboy Note from Get Good to the Debtor, any Documents or Communications explaining the basis or purposes of transferring only a portion (approximately 97.6835%) of the Dugaboy Note to the Debtor, any underwriting or investigation of the Dugaboy Note performed by the Debtor or Get Good, and any Documents or Communications evidencing Dugaboy's ability to pay the Dugaboy Note.

14. Any and all Documents or Communications relating to the creation or ownership and management structure of Highland Capital Loan Fund, including without limitation, the Limited Partnership Agreement of Highland Capital Loan Fund, as referenced in the Purchase and Sale Agreement, any amended Limited Partnership Agreement of Highland Capital Loan Fund, any revised Limited Partnership Agreement executed after Highland Capital Loan Fund changed its name to Dynamic Income Fund, and any other governance documents.

15. Any and all Documents or Communications relating to the creation or ownership and management structure of Get Good, including without limitation, The Get Good Nonexempt Trust Agreement, dated June 29, 2001, as referenced in the Exercise of Discretion, and any other governance documents.

16. Any and all Documents or Communications relating to the Get Good/Highland Dallas Foundation Transfer, including without limitation, any and all Documents or Communications relating to the Exercise of Discretion, the Donative Assignment of Interests, negotiations of the terms of the transfer, any basis or purposes for the transfer, any claims of a charitable deduction for tax purposes or otherwise, and the Amended Purchase and Sale Agreement.

16

17.     Any and all Documents or Communications relating to the Highland Dallas Foundation/Charitable DAF Transfer, including without limitation, any and all Documents or Communications relating to the Unanimous Consent, any negotiations of the terms of the transfer, and any basis or purpose for the transfer.

18.     Any and all Documents or Communications relating to the Charitable DAF/CLO HoldCo Transfer, including without limitation, any and all Documents or Communications relating to the Omnibus Assignment Agreement, the Written Resolutions, any basis or purposes for the transfer, and any negotiations of the terms of the transfers, including without limitation, the decision to bind the parties by the terms of the Multi Strat Governing Documents, as defined and referenced in the Omnibus Assignment Agreement.

19.     Any and all Documents or Communications relating to the Dynamic Income CLO HoldCo Side Letter, including without limitation, any negotiations of the terms of the letter, any basis or purposes for the letter, and Highland Capital Loan Fund's Confidential Private Placement Memorandum, as defined and referenced in the Dynamic Income CLO HoldCo Side Letter.

20.     Any and all Documents or Communications relating to the approximately $42.3 million received by Highland Dallas Foundation in 2016, as evidenced by Highland Dallas Foundation's 2016 990 tax form, and the approximately $5.1 million received by Highland Dallas Foundation in 2018, as evidenced by the Highland Dallas Foundation's 2018 990 tax form.

21.     Any and all Documents or Communications relating to the creation, ownership, management structure, or governing documents of Dugaboy; Highland Dallas Foundation; Highland Kansas City Foundation; Highland Santa Barbara Foundation; Charitable DAF HoldCo; Charitable DAF Fund; CLO HoldCo; Dynamic Income Fund; Highland Loan Fund, Ltd.; Highland Capital Loan Fund GP; Highland Loan Master Fund; Eames, Ltd.; and Multi Strat.

17

22.     Any and all Documents or Communications relating to any transfers between or among the Debtor, Get Good, Highland Dallas Foundation, Highland Kansas City Foundation, Highland Santa Barbara Foundation, Charitable DAF HoldCo, Charitable DAF Fund, and CLO HoldCo since the inception of Charitable DAF GP, Charitable DAF HoldCo, Charitable DAF Fund, and CLO HoldCo, including without limitation, any agreements or related documents pertaining to the separately managed account that HCMLP managed on behalf of the Charitable DAF Fund LP.

23.     Any and all Documents or Communications relating to any investments or ownership interests that CLO HoldCo has made in any funds or business entities relating to the Debtor, Dondero, or any related parties, including without limitation, a complete list of transactions, financial statements, communications to control persons, supporting foundations or any other relevant stakeholder, and books and records.

24.     Any and all Documents or Communications relating to financial reporting and financial statements for Get Good, Dugaboy, and the Get Better Trust.

25.      Any and all Documents or Communications relating to investment management agreements between the Highland Dallas Foundation, the Highland Kansas City Foundation, and/or the Highland Santa Barbara Foundation, and the Charitable DAF Fund, Charitable DAF GP, and/or Charitable DAF HoldCo.

38.     Any and all Documents or Communications relating to the creation, ownership, management structure, or governing documents of all entities connected to the DAF/CLO HoldCo Structure.

18

Dated: July 13, 2020                    Respectfully submitted,

                                        /s/ Mustafa Abdul-Jabbar

ACTIVE 259093332

# EXHIBIT 3
# to DECLARATION OF LOUIS M. PHILLIPS

| | |
|---|---|
| **From:** | Theresa Garcia <tgarcia@krcl.com> |
| **Sent:** | Tuesday, August 17, 2021 3:12 PM |
| **To:** | jpomerantz@pszjlaw.com; ikharasch@pszjlaw.com; mlitvak@pszjlaw.com; gdemo@pszjlaw.com; MHayward@HaywardFirm.com; ZAnnable@HaywardFirm.com; pmontgomery@sidley.com; preid@sidley.com; jhoffman@sidley.com; bguzina@sidley.com; mclemente@sidley.com; dtwomey@sidley.com; alyssa.russell@sidley.com |
| **Cc:** | John J. Kane; Brian Clark |
| **Subject:** | In re Highland Capital Management, L.P.; Case No. 19-34054-SGJ [IWOV-iManage.FID1955366] |
| **Attachments:** | 08.12.2020 - CLO Holdco, Ltd's Responses and Objections to the OCUC First RFP.pdf |

Counsel:

Please see attached CLO Holdco, Ltd.'s Responses and Objections to The Official Committee of Unsecured Creditors' First Request for Production of Documents.

**THERESA R. GARCIA**
Paralegal

# KRCL

**Kane Russell Coleman Logan PC**
901 Main Street | Suite 5200 | Dallas, Texas 75202
**Tel** 214.777.0054
**krcl.com | krclblogs.com**

This email and any attachments are confidential. If you received this email in error, please inform the sender and delete it. Thank you.

Joseph M. Coleman (State Bar No. 04566100)
John J. Kane (State Bar No. 24066794)
Brian W. Clark (State Bar No. 24032075)
**KANE RUSSELL COLEMAN LOGAN PC**
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tele: 214.777.4200
Fax: 214.777.4299
Email: jcoleman@krcl.com
Email: jkane@krcl.com
Email: bclark@krcl.com

**ATTORNEYS FOR CLO HOLDCO, LTD.**

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | CASE NO. 19-34054-SGJ |
| | § | |
| DEBTOR. | § | |

---

### CLO HOLDCO, LTD.'S RESPONSES AND OBJECTIONS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

---

### RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

CLO Holdco, Ltd. ("CLO Holdco") serves the following objections and responses to The Official Committee of the Unsecured Creditors' First Request for Production of Documents:

**REQUEST FOR PRODUCTION NO. 1:** Any and all Documents or Communications relating to financial statements, accounting, budgets or audits of Charitable DAF HoldCo, Charitable DAF GP, Charitable DAF Fund, and/or CLO HoldCo from 2014 to present, including without limitation,

    a.      any and all audited and unaudited financial statements of Charitable DAF HoldCo, Charitable DAF GP, Charitable DAF Fund, and/or CLO HoldCo (including any consolidating financial statements at year-end);

---

b.       any representation letters provided to independent auditors;

c.       any engagement letters with outside accounting firms (including for audit services);

d.       any lawyers' letters provided to auditors in connection with their audits;

e.       any workpapers or packages prepared for audits/auditors;

f.       any projections, forecasts, budgets prepared during this period; and

g.       any valuations of Charitable DAF HoldCo, Charitable DAF GP, Charitable DAF Fund, and/or CLO HoldCo or any of their assets, including investments, for the year ended December 31, 2014 through present.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 2:**      Any and all management reports from 2014 to present of Charitable DAF HoldCo, Charitable DAF GP, Charitable DAF Fund, and CLO HoldCo, including without limitation,

a.       any asset management reports;

b.       any cash reports;

c.       any financing reports;

d.       any strategic planning reports; and

e.       any variance reports.

**RESPONSE:** CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 3:**      Any and all Documents or Communications with the Internal Revenue Service or other governmental taxing authority relating to tax inquiry or formal tax audits involving Charitable DAF HoldCo, Charitable DAF GP, Charitable DAF Fund, and/or CLO HoldCo.

**RESPONSE:** CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 4:** Any and all Documents or Communications relating to any position held by or compensation received by Scott in connection with any transactions involving the Debtor and/or any individuals or entities in the DAF/CLO HoldCo Structure and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing, including without limitation, Scott's role as the trustee of Get Good, a director of CLO HoldCo, the managing member of Charitable DAF GP, and a director of Charitable DAF HoldCo.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 5:** Any and all Documents or Communications relating to any tax treatment, any tax benefits and/or any tax planning process of any individuals or entities in the DAF/CLO HoldCo Structure and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing, in connection with the CLO HoldCo Transaction.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 6:** Any and all Documents or Communications relating to payments, distributions, investments, transfers, or the remittance of anything of value from the Debtor to any individuals or entities in the DAF/CLO HoldCo Structure and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents,

advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 7:** Any and all Documents or Communications relating to payments, distributions, investments, transfers, or the remittance of anything of value to the Debtor from any individuals or entities in the DAF/CLO HoldCo Structure and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 8:** Any and all Documents or Communications relating to valuation of collateral concerning any debt relating to the CLO HoldCo Transaction, owed by any individuals or entities in the DAF/CLO HoldCo Structure and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all partners, officers, directors, shareholders, members, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 9:** Any and all Documents or Communications relating to tax planning for the CLO HoldCo Transaction from 2011 to present, including without limitation,

    a.       any tax planning memos;

    b.       any engagements with third parties;

    c.       any work papers;

    d.       any tax returns; and

    e.       any engagement letters with outside firms relating to tax services.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 10:**    Any and all Documents or Communications relating to the CLO HoldCo Transaction, including without limitation, any negotiations of the terms of the CLO HoldCo Transaction, any Communications between or among the Debtor, Get Good, Highland Dallas Foundation, Charitable DAF HoldCo, Charitable DAF Fund, CLO HoldCo, Dondero, Okada, Scott, and Jalonick, and any basis or purposes for the CLO HoldCo Transaction, including without limitation, any Documents or Communications explaining why there were separate transfers, the rationale for each transfer, and any tax considerations for the various transfers.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 11:**    Any and all Documents or Communications relating to the Debtor/Get Good Transfer, including without limitation, any Documents or Communications relating to the negotiation of the terms of the transfer, valuation of the Series A Interests, valuation of the American Airlines Call Options, valuation of the Participation and Tracking Interests, and any basis or purpose for the transfer.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 12:** Any and all Documents or Communications relating to the Purchase and Sale Agreement between the Debtor and Get Good, including without limitation, certain documents discussed therein the Purchase and Sale Agreement such as the Joint Plan of Distribution of the Crusader Funds, the Scheme of Arrangement between the Offshore Crusader Fund and its Scheme Creditors, and any Documents or Communications relating to Eames Ltd.'s ownership of the Participation and Tracking Interests, as referenced and defined in the Purchase and Sale Agreement.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 13:** Any and all Documents or Communications relating to the Dugaboy Note, including without limitation, the original Dugaboy Note, dated June 29, 2001, any amendments to the Dugaboy Note, any negotiation of the Dugaboy Note terms, original business purpose and value received for the original Dugaboy Note, any basis for paydowns on the Dugaboy Note any basis or purposes for the transfer of the Dugaboy Note from Get Good to the Debtor, any Documents or Communications explaining the basis or purposes of transferring only a portion (approximately 97.6835%) of the Dugaboy Note to the Debtor, any underwriting or investigation of the Dugaboy Note performed by the Debtor or Get Good, and any Documents or Communications evidencing Dugaboy's ability to pay the Dugaboy Note.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 14:** Any and all Documents or Communications relating to the creation or ownership and management structure of Highland Capital Loan Fund, including without limitation, the Limited Partnership Agreement of Highland Capital Loan Fund, as referenced in the Purchase and Sale Agreement, any amended Limited Partnership Agreement of Highland Capital Loan Fund, any revised Limited Partnership Agreement executed after Highland Capital Loan Fund changed its name to Dynamic Income Fund, and any other governance documents.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the

documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 15:** Any and all Documents or Communications relating to the creation or ownership and management structure of Get Good, including without limitation, The Get Good Nonexempt Trust Agreement, dated June 29, 2001, as referenced in the Exercise of Discretion, and any other governance documents.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 16:** Any and all Documents or Communications relating to the Get Good/Highland Dallas Foundation Transfer, including without limitation, any and all Documents or Communications relating to the Exercise of Discretion, the Donative Assignment of Interests, negotiations of the terms of the transfer, any basis or purposes for the transfer, any claims of a charitable deduction for tax purposes or otherwise, and the Amended Purchase and Sale Agreement.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 17:** Any and all Documents or Communications relating to the Highland Dallas Foundation/Charitable DAF Transfer, including without limitation, any and all Documents or Communications relating to the Unanimous Consent, any negotiations of the terms of the transfer, and any basis or purpose for the transfer.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 18:** Any and all Documents or Communications relating to the Charitable DAF/CLO HoldCo Transfer, including without limitation, any and all Documents or Communications relating to the Omnibus Assignment Agreement, the Written Resolutions, any basis or purposes for the transfer, and any negotiations of the terms of the transfers, including without limitation, the decision to bind the parties by the terms of the Multi Strat Governing Documents, as defined and referenced in the Omnibus Assignment Agreement.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 19:** Any and all Documents or Communications relating to the Dynamic Income CLO HoldCo Side Letter, including without limitation, any negotiations of the terms of the letter, any basis or purposes for the letter, and Highland Capital Loan Fund's Confidential Private Placement Memorandum, as defined and referenced in the Dynamic Income CLO HoldCo Side Letter.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 20:** Any and all Documents or Communications relating to the approximately $42.3 million received by Highland Dallas Foundation in 2016, as evidenced by Highland Dallas Foundation's 2016 990 tax form, and the approximately $5.1 million received by Highland Dallas Foundation in 2018, as evidenced by the Highland Dallas Foundation's 2018 990 tax form.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 21:** Any and all Documents or Communications relating to the creation, ownership, management structure, or governing documents of Dugaboy; Highland Dallas Foundation; Highland Kansas City Foundation; Highland Santa Barbara

Foundation; Charitable DAF HoldCo; Charitable DAF Fund; CLO HoldCo; Dynamic Income Fund; Highland Loan Fund, Ltd.; Highland Capital Loan Fund GP; Highland Loan Master Fund; Eames, Ltd.; and Multi Strat.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 22:**    Any and all Documents or Communications relating to any transfers between or among the Debtor, Get Good, Highland Dallas Foundation, Highland Kansas City Foundation, Highland Santa Barbara Foundation, Charitable DAF HoldCo, Charitable DAF Fund, and CLO HoldCo since the inception of Charitable DAF GP, Charitable DAF HoldCo, Charitable DAF Fund, and CLO HoldCo, including without limitation, any agreements or related documents pertaining to the separately managed account that HCMLP managed on behalf of the Charitable DAF Fund LP.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 23:**    Any and all Documents or Communications relating to any investments or ownership interests that CLO HoldCo has made in any funds or business entities relating to the Debtor, Dondero, or any related parties, including without limitation, a complete list of transactions, financial statements, communications to control persons, supporting foundations or any other relevant stakeholder, and books and records.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. CLO Holdco further objects that the request is overly broad and unduly burdensome in that it arguably covers virtually every document and electronic record in CLO Holdco's possession, custody or control, regardless of subject-matter or time-period. Subject to and without waiving the foregoing objections, see documents to be produced by CLO Holdco in response to more specific document requests herein.

**REQUEST FOR PRODUCTION NO. 24:** Any and all Documents or Communications relating to financial reporting and financial statements for Get Good, Dugaboy, and the Get Better Trust.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 25:** Any and all Documents or Communications relating to investment management agreements between the Highland Dallas Foundation, the Highland Kansas City Foundation, and/or the Highland Santa Barbara Foundation, and the Charitable DAF Fund, Charitable DAF GP, and/or Charitable DAF HoldCo.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

**REQUEST FOR PRODUCTION NO. 38 (sic):** Any and all Documents or Communications relating to the creation, ownership, management structure, or governing documents of all entities connected to the DAF/CLO HoldCo Structure.

**RESPONSE:** CLO Holdco objects to the foregoing request on the grounds that the request for "[a]ny and all Documents and Communications relating to" the referenced matters is vague, ambiguous, overly broad and fails to identify the documents sought with reasonable particularity. CLO Holdco further objects that it fails to identify the specific entities in connection with which it seeks documents. Subject to and without waiving the foregoing objections, CLO Holdco is conducting a search of the documents and electronic data in its possession, custody and control and will produce all non-privileged documents that it is able to locate that it reasonably believes are responsive to this request.

DATED:  August 12, 2020            Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By:    */s/ Brian W. Clark*

    **Joseph M. Coleman**
    State Bar No. 0456610
    **John J. Kane**
    State Bar No. 24066794
    **Brian W. Clark**
    State Bar No. 24032075

Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tele: 214.777.4200
Fax: 214.777.4299
Email: jcoleman@krcl.com
Email: jkane@krcl.com
Email: bclark@krcl.com

**ATTORNEYS FOR CLO HOLDCO, LTD.**

## CERTIFICATE OF SERVICE

This is to certify that service of the foregoing document was effected via e-mail on the counsel of record listed below, on the 12th day of August, 2020.

*/s/ Brian W. Clark*
Brian W. Clark

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz
Email: jpomerantz@pszjlaw.com
Ira D. Kharasch
E-mail: ikharasch@pszjlaw.com
Maxim B. Litvak
E-mail: mlitvak@pszjlaw.com
Gregory V. Demo
E-mail: gdemo@pszjlaw.com

**SIDLEY AUSTIN LLP**
Paige Holden Montgomery
Email:  pmontgomery@sidley.com
Penny P. Reid
Email:  preid@sidley.com
Juliana L. Hoffman
E-mail: jhoffman@sidley.com

Bojan Guzina
Email:  bguzina@sidley.com
Matthew A. Clemente
E-mail: mclemente@sidley.com
Dennis M. Twomey
E-mail: dtwomey@sidley.com
Alyssa Russell
E-mail: alyssa.russell@sidley.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward
E-mail: MHayward@HaywardFirm.com
Zachery Z. Annable
E-mail: ZAnnable@HaywardFirm.com

# EXHIBIT 4
# to DECLARATION OF LOUIS M. PHILLIPS

**From:** Isaac Leventon
**Sent:** Wednesday, July 29, 2020 4:03 PM
**To:** John J. Kane; John A. Morris
**CC:** Grant Scott; Stephanie Vitiello
**Subject:** RE: Notice of Requests for Production - CLO Holdco

John Kane,

In response to the Committee's 4th Requests for Production to Debtor, Debtor intends to produce certain documents related to CLO Holdco and the DAF.  I have provided these documents to you contemporaneously with this email via download link.  Please review these documents at your earliest convenience and inform the Debtor if you have any objection to their production.  They will be produced "Confidential" under the Agreed Protective Order.  Debtor would like to produce these documents by the end of this week if possible.

Additionally and in relation to Committee's 4th Requests for Production to Debtor, Debtor is placing you on notice that Debtor intends to search Debtor's email server using search terms related to CLO Holdco and DAF.  The search terms currently are the subject of meet-and-confer negotiations with the Committee.  The results of these searches will be produced pursuant to an order relating to the Committee's Motion to Compel previously heard by the Court.

Thanks, Isaac Leventon

---

**From:** Isaac Leventon
**Sent:** Wednesday, July 15, 2020 4:36 PM
**To:** 'John J. Kane' <jkane@krcl.com>
**Cc:** 'Grant Scott' <gscott@scottlawgroupllc.com>; Stephanie Vitiello <SVitiello@HighlandCapital.com>
**Subject:** Notice of Requests for Production - CLO Holdco

John:

I am attaching the Committee's 4th Requests for Production to Debtor.  Based on a review of the RFPs, Nos. 30, 37 – 39, 41 – 43, and 50 – 51 relate to DAF/CLO Holdco.  With respect to the requests made for DAF-related materials, please let me know if DAF has any objection to the Debtor producing such materials.  All such materials would be produced as "Confidential" subject to the protective order.

Thanks,

**ISAAC LEVENTON**   |   ASSISTANT GENERAL  COUNSEL



300 Crescent Court  |  Suite 700  |  Dallas, Texas 75201
O: 972.628.4100  |  D: 972.419.4482  |  F: 972.628.4147
ileventon@highlandcapital.com  |  www.highlandcapital.com

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.