# EXHIBIT 7

EXECUTION VERSION

# SHARED RESOURCES AGREEMENT

This Shared Resources Agreement (including the Schedule attached hereto, this "Agreement") is entered into effective as of March 1, 2021 (the "Effective Date") by and among Highland Capital Management, L.P. ("HCMLP") and the following parties (collectively, the "NexPoint Parties"): NexPoint Advisors, L.P. ("NPA"), and Highland Capital Management Fund Advisors, L.P. ("HCMFA").

The NexPoint Parties and HCMLP collectively are referred to as the "Parties" and each of them as a "Party".

## PREAMBLE

WHEREAS, HCMLP and the NexPoint Parties were parties to certain Shared Services Agreements (collectively, the "Shared Services Agreements") pursuant to which HCMLP provided certain services, including access to and use of the IT-related systems and resources of HCMLP set forth on Schedule A to this Agreement (the "Shared Resources").

WHEREAS, such Shared Services Agreements were duly terminated as of February 19, 2021.

WHEREAS, the Bankruptcy Court entered an order on February 24, 2021 (the "Order") governing the transfer of books and records and data.

WHEREAS, certain employees of HCMLP have or may form a new company ("Newco") to provide services similar to certain of those provided under the Shared Service Agreements to the NexPoint Parties and other third parties.

WHEREAS, pursuant to that certain Letter Agreement, dated March 1, 2021, between HCMLP and NPA, each of HCMLP and NPA have reached an agreement regarding the retention, assignment and assumption, as applicable, of certain contracts, licenses, and agreements with Bloomberg Finance L.P. and its subsidiaries and affiliates that are needed in connection with the Parties' respective businesses.

WHEREAS, further to the objectives of the Order and pursuant to the terms and subject to the conditions set forth in this Agreements, HCMLP is willing to provide access and use of the Shared Resources to and by the NexPoint Parties in consideration of payments and other agreements of the NexPoint Parties contained herein.

NOW, THEREFORE, in consideration of the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## I.      RESOURCES AND PAYMENTS

Section 1.1      Access to Certain Shared Resources.

(a)      Subject to terms and conditions set forth in this Agreement and the NexPoint Parties' compliance therewith, HCMLP shall provide employees and personnel of the NexPoint Parties with access to and use of the Shared Resources during the term of this Agreement. For the avoidance of doubt, the Parties agree that NexPoint Parties will have access to the same books and records as available under the applicable Shared Services Agreements; provided, however, that notwithstanding anything herein or in the Shared Services Agreements to the contrary, none of the NexPoint Parties, Newco or any of their respective

Agents (as hereinafter defined) shall have access to HCMLP's proprietary data. In addition, HCMLP shall not access any of the NexPoint Parties' proprietary data to the extent generated on or after the Effective Date. Further, to the extent permitted by the terms and agreements governing the Shared Resource, HCMLP agrees that subject to the advance written consent of HCMLP (which may be withheld in its sole discretion), the NexPoint Parties shall have the right to share or sublicense such Shared Resource; provided that HCMLP's prior written consent shall not be required in order for the NexPoint Parties to share or sublicense the Shared Resources to Newco or any other person or entity (or their respective subsidiaries in existence as of the Effective Date) that was a historical user of a Shared Resources as of February 19, 2021 pursuant to a written shared services agreement with HCMLP; provided, further, that each other such person or entity, including Newco and any such historical user, as applicable, shall have executed and delivered to HCMLP a joinder to this Agreement, other than with respect to the payment obligations set forth herein, that is satisfactory to HCMLP in its sole reasonable discretion.

(b)    In consideration of this Agreement, the NexPoint Parties shall make prompt payments in cash, by wire transfer, to HCMLP or its designee in such amounts as are set forth on Schedule A to this Agreement. The NexPoint Parties shall pay the amounts owed for (i) March 2021 as set forth on Schedule A to HCMLP on the Effective Date and (ii) April 2021 as set forth on Schedule A to HCMLP on March 15, 2021. Thereafter, the NexPoint Parties shall make all monthly payments (or other periodic payments) set forth on Schedule A to HCMLP on or before the first day of the calendar month preceding the calendar month (or other period) to which such payment relates. The Parties acknowledge and agree that the amounts set forth on Schedule A reflect the historical costs for such Shared Resources as of calendar year 2020. In the event that the actual invoiced amounts for a given Shared Resource differ from what is set forth in the initial Schedule A, HCMLP shall deliver to NPA an amended Schedule A to reflect such actual amounts and such costs shall continue to be borne 60% by the NexPoint Parties and 40% by HCMLP and paid in accordance with the terms set forth herein. In the event that Schedule A is amended in accordance with the foregoing in respect of payments that have already been made by the NexPoint Parties hereunder, the applicable Party shall promptly reimburse the other Party following the delivery of the amended Schedule A. All payment obligations of the NexPoint Parties under this Agreement shall be joint and not several. Except with respect to such payment obligations, the obligations and liabilities of the NexPoint Parties hereunder shall be several and not joint.

(c)    The NexPoint Parties shall pay their allocable portion of the Siepe Master Agreement for January 2021 and February 2021 within three (3) Business Days of being invoiced.

(d)    Each such Shared Resource shall be renewed only to the extent necessary to remain available to employees and personnel of the NexPoint Parties and HCMLP for such parties to perform their duties consistent with past practices through the End Date (as hereinafter defined). Thereafter, no Party to this Agreement shall be responsible for extension or renewal of any such Shared Resource or to provide access to any such Shared Resource with any other Party. The aggregate cost of any renewal (even if such renewal extends beyond the End Date) shall be borne 60% by the NexPoint Parties and 40% by HCMLP. The NexPoint Parties shall promptly pay their portion of such renewal costs to HCMLP or its designee at the request of HCMLP at least five (5) Business Days before the date such renewal payment is required to be made to the applicable vendor, and assuming timely receipt of such portion, HCMLP shall timely make the full renewal payment to the applicable vendor. For purposes of this Agreement, "Business Day" shall mean a day on which the New York Stock Exchange is open for regular trading. The parties hereby agree to discuss the renewal of each vendor contract in respect of the Shared Resources prior to renewal and agree that (i) if both Parties agree that a Shared Resource in respect of such vendor contract is no longer necessary for each of the Parties to operate through the End Date, then such vendor contract shall not be renewed, and (ii) if either Party determines that a Shared Resource in respect of such vendor contract is necessary for such Party to operate through the End Date, such vendor contract shall be renewed and the aggregate cost of such renewal (even if such renewal extends beyond the term provided in Schedule A) shall be borne 60%

by the NexPoint Parties and 40% by HCMLP. Each of the Parties shall proceed diligently and in good faith, and agree to use all reasonable best efforts to do, and cause to be done, all things necessary, desirable and/or appropriate to ensure such Party will not need any Shared Resource following the End Date.

(e)     The Parties acknowledge and agree that it will be necessary for HCMLP, in its sole good faith discretion, to employ and/or engage certain personnel (the "Necessary Personnel") in order to maintain, provide access to and use of the Shared Resources as contemplated herein, and that HCMLP may engage former employees of HCMLP, including, without limitation, any former employee of HCMLP who enters into an employment or independent contractor relationship with Newco and/or the NexPoint Parties as Necessary Personnel to provide back-office services in connection therewith. The NexPoint Parties shall cooperate fully with HCMLP's efforts to engage such Necessary Personnel and the NexPoint Parties shall not, and shall cause their affiliates and its and their respective employees, personnel, officers, directors, managers, members, representatives, agents, principals, owners, or partners (collectively, "Agents") to not, directly or indirectly, prohibit, prevent, limit or otherwise discourage any former HCMLP employee or any other person from accepting such engagement. Notwithstanding anything herein to the contrary, in the event that HCMLP is unable or ceases to be able to employ and/or engage the Necessary Personnel, HCMLP shall thereafter have no further obligations to the NexPoint Parties or any of their Agents with respect to the Shared Services; provided, that, the foregoing shall not relieve the NexPoint Parties of any of their obligations hereunder.

(f)     The fully loaded aggregate cost of such Necessary Personnel from the Effective Date through the End Date shall be borne 60% by the NexPoint Parties and 40% by HCMLP. HCMLP will invoice the NexPoint Parties for their allocable portion of the Necessary Personnel monthly and the NexPoint Parties shall make payment in respect thereof within five (5) Business Days following delivery of each such invoice.

(g)     The NexPoint Parties shall, and shall ensure that their employees and personnel, comply with and fulfill any obligations or responsibilities applicable to employees or personnel of HCMLP under the policies governing the use of the Shared Resources hereunder. HCMLP shall promptly notify NPA in writing of (i) any changes to HCMLP's policies governing its employees' and personnel's use of the Shared Services and (ii) any amendments to the vendor contracts underlying the Shared Resources, in each case, following the Effective Date, and until HCMLP has delivered such written notification, the NexPoint Parties shall not have any obligation to comply, or to ensure the compliance of their employees and personnel, with such changes and/or amendments, as applicable.

Section 1.2     Unexpected Costs; Repairs. In the event it is necessary for the Parties to incur any costs (e.g., in the case of breakdowns or repairs) for the continued functionality of the Shared Resources, such additional expenditures shall be (i) approved by HCMLP and NPA, and (ii) borne 60% by the NexPoint Parties and 40% by HCMLP.

Section 1.3     Failure to Pay; Cure Period. In the event a NexPoint Party fails to satisfy any payments such NexPoint Party is obligated to make pursuant to this Agreement or breaches its obligations under Section 1.1(d) and such NexPoint Party fails to cure such failure to make prompt payment or breach, as applicable, within five (5) Business Days of receipt of written notice of such failure from HCMLP, HCMLP shall have the right to terminate access to all Shared Resources and all respective agreements in connection with such Shared Resources with respect to all of the NexPoint Parties. HCMLP further agrees that in the event that HCMLP fails to make any payment to a Shared Resource vendor required to be made hereunder, the NexPoint Parties shall have the right to make the payments necessary to retain such vendor contract in respect of such Shared Resource and deduct the amount of such payments from future payments due to HCMLP under this Agreement. If the amounts paid by the NexPoint Parties exceed what would

otherwise be due to HCMLP from such NexPoint Parties, the NexPoint Parties may pursue recovery from HCMLP for such excess amount.

## II. LIMITED LIABILITY

Section 2.1 HCMLP shall not be liable to any person or entity, including any third party, for any action, inaction, or conduct of any NexPoint Party or any of their respective Agents in connection with use by the NexPoint Parties or their Agents of the Shared Resources under this Agreement.

The NexPoint Parties shall not be liable to any person or entity, including any third party, for any obligation of HCMLP to pay any regularly scheduled fee explicitly set forth in the vendor contracts underlying the Shared Resources.

Section 2.2 The NexPoint Parties shall indemnify and hold harmless HCMLP from and against any and all costs and expenses (including advancing of reasonable attorneys' fees) of HCMLP or its affiliates or any of their Agents (including, without limitation, costs and expenses of any disputes, legal actions, examinations, investigations, and other legal or regulatory costs or expenses), related to or arising out of any action, inaction, or conduct by the NexPoint Parties or their Agents in connection with use by the NexPoint Parties of the Shared Resources under this Agreement.

HCMLP shall indemnify and hold harmless the NexPoint Parties from and against any and all costs and expenses (including advancing of reasonable attorneys' fees) of any NexPoint Party or any of their affiliates or Agents (including, without limitation, costs and expenses of any disputes, legal actions, examinations, investigations, and other legal or regulatory costs or expenses), solely to the extent directly arising from HCMLP's failure to pay any regularly scheduled fee explicitly set forth in the vendor contracts underlying the Shared Resources.

Section 2.3 No Party shall be liable to any other Party or to any other person or entity for the failure to provide services, access, or resources hereunder if such failure results from an event beyond the reasonable control of the Party obligated to provide such services, access, or resources. Further, no Party shall be liable to any other Party for any consequential, indirect, special, incidental or punitive damages, including, without limitation, loss of profit or revenue, cost of capital, or cost of temporary equipment or services, whether based in whole or in part in contract, in tort, including negligence, strict liability, or any other theory of liability.

Section 2.4 Notwithstanding anything herein to the contrary, in no event shall HCMLP's liability to the NexPoint Parties and its Agents under this Agreement exceed, in the aggregate, the actual amounts paid by the NexPoint Parties to HCMLP hereunder.

## III. BINDING AGREEMENT

Section 3.1 <u>Binding Agreement</u>. The Parties agree that this Agreement constitutes the legal, valid and binding obligation of each Party, enforceable against each Party in accordance with its terms.

Section 3.2 <u>Entire Current Understanding and Agreement</u>. This Agreement constitutes the entire current understanding and agreement by and among the Parties hereto with respect to the subject matter hereof and supersedes any and all prior or contemporaneous negotiations, term sheets, covenants, agreements, undertakings and understandings (written or oral) and courses of conduct and dealing by or among the Parties with respect to the matters expressly set forth herein. For the avoidance of doubt, this Agreement does not modify, supersede, or alter the Letter Agreement concerning continued access to Bloomberg services.

Section 3.3 <u>Agreement Controls</u>. Any express terms and conditions set forth in this Agreement shall control any conflict or inconsistency with, and amend and supersede, the terms and conditions of any and all other agreements between or among the Parties, except to the extent that (x) another agreement is amended and/or restated or entered into after the Effective Date with the prior written consent of each of HCMLP and NPA and (y) such other agreement states that it shall control in the event of any conflict or inconsistency between such other agreement. For the avoidance of doubt, this Agreement does not modify, supersede, or alter the Letter Agreement concerning continued access to Bloomberg services.

Section 3.4 <u>Efforts, Authorizations and Consents; Cooperation; No Ulterior Actions</u>.

(a) <u>Efforts</u>. Each Party shall proceed diligently and in good faith, and agrees to use all reasonable best efforts to do, and cause to be done, all things necessary, desirable and/or appropriate to, as promptly as practicable and in accordance with the terms and timeline set forth herein, consummate the transactions contemplated by this Agreement, and shall direct and cause its Agents to so proceed and to so act.

(b) <u>Authorizations and Consents</u>. Each Party shall use reasonable best efforts to obtain all authorizations, consents, registrations, orders and approvals that may be or become necessary, desirable and/or appropriate for such Party's execution and delivery of, and the performance of such Party's obligations pursuant to, this Agreement, and each Party agrees to cooperate fully and promptly with a requesting Party in its seeking to obtain all such authorizations, consents, registrations, orders and approvals.

(c) <u>Indirect Actions</u>. Each Party acknowledges and agrees that he will not, on or after the Effective Date, avoid or seek to avoid, the economic and other rights, powers, privileges or interests of the other Parties set forth in this Agreement. Each Party shall not, and each Party shall cause Persons under his control not to, do indirectly that which cannot be done directly under this Agreement.

Section 3.5 <u>Further Assurances</u>. At any time and from time to time, at the request of any Party and without further consideration, the other Parties shall execute and deliver such instruments and take such action as such Party may reasonably determine is necessary, desirable and/or appropriate to carry out the actions contemplated by this Agreement.

Section 3.6 <u>NexPoint Parties Representative</u>. For convenience of administration, all of the NexPoint Parties hereby appoint NPA as their sole representative for purposes of all actions, consents, notices, and communications hereunder to or from the NexPoint Parties. HCMLP may rely upon any action by NPA or communication to or from NPA to serve as an action of, or communication to or from, and to bind, all of the NexPoint Parties.

## IV.   MISCELLANEOUS OTHER PROVISIONS

Section 4.1 <u>Term</u>. This Agreement shall terminate without further action of any Party on August 31, 2021 (the "<u>End Date</u>") (unless otherwise agreed in writing by HCMLP and NPA). Any payments required to be made by a Party hereunder shall for periods through the End Date shall survive termination of this Agreement. In addition, the following sections shall survive termination of this Agreement indefinitely: Sections II (Limited Liability), 4.4 (Notices) 4.7 (Governing Law; Submission to Jurisdiction; Service of Process), 4.9 (No Third-Party Beneficiaries).

Section 4.2    Amendment.  This Agreement shall be binding upon the Parties and may not be modified in any manner, except by an instrument in writing of concurrent or subsequent date signed by each of HCMLP and NPA.

Section 4.3    Waiver of Rights.  No delay or omission by any Party in exercising any right under this Agreement shall operate as a waiver of that or any other right.  A waiver or consent given by any Party hereto on any one occasion shall be effective only in that instance and shall not be construed as a ban or waiver of any right on any other occasion.

Section 4.4    Notices.  All notices, requests, demands, claims, and other communications hereunder shall be in writing.  Any notice, request, demand, claim, or other communication hereunder shall be deemed duly delivered:  (a) four (4) Business Days after it is sent by registered or certified mail, return receipt requested, postage prepaid; (b) one (1) Business Day after it is sent for next Business Day delivery via a reputable nationwide overnight courier service; (c) when sent, if e-mailed on a Business Day; (d) the next Business Day following the day on which the e-mail is sent if e-mailed on a day that is not a Business Day; (e) when receipt is acknowledged, if facsimiled on a Business Day; and (f) the next Business Day following the day on which receipt is acknowledged if facsimiled on a day that is not a Business Day, in each case to the intended recipient as set forth below:

If to HCMLP:

> Highland Capital Management, LP
> 300 Crescent Court
> Dallas, Texas 75201
> Attention: Thomas Surgent, General Counsel
> Email:  tsurgent@highlandcapital.com
>
> With copies to:
>
> Pachulski Stang Ziehl & Jones LLP
> 780 3rd Ave #34
> New York, NY 10017
> Attention:  Gregory V. Demo
> Email:  GDemo@pszjlaw.com
>
> and
>
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA 02109
> Attention:  Timothy F. Silva
> Email:  timothy.silva@wilmerhale.com

If to the NexPoint Parties:

> D.C. Sauter
> 2515 McKinney Ave, Suite 1700
> Dallas, Texas 75201
> Email:  DSauter@NexPoint.com
>
> With a copy to:

6

K&L Gates LLP
4350 Lassiter at North Hills Avenue
Suite 300
P.O. Box 17047
Raleigh, North Carolina 27619
Attention: A. Lee Hogewood III
Email: lee.hogewood@klgates.com

Any Party may give any notice, request, demand, claim, or other communication hereunder using any other means (including personal delivery, expedited courier, messenger service, telecopy, telex, ordinary mail, or electronic mail), but no such notice, request, demand, claim, or other communication shall be deemed to have been duly given unless and until it actually is received by the Party for whom it is intended. Any Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties notice in the manner herein set forth.

Section 4.5    Reservation of Rights. For the avoidance of doubt, each Party reserves all rights it has, or may have, including all rights to pursue and defend any claims and/or causes of action, with respect to any matter, agreement, or understanding not explicitly addressed in this Agreement. The Parties expressly reserve all rights with respect to amounts asserted in connection with the NexPoint Parties' administrative claim, including, without limitation the NexPoint Parties' right to amend such claim to assert additional or lesser amounts, including with respect to the post-petition amounts owed under the Shared Services Agreements; provided, that under no circumstances shall such claim or claims give rise to any right of offset against any amounts payable hereunder, the rights of HCMLP to object to such claim as well as all rights and defenses in connection with all pending and potential Adversary Proceedings between the Parties. All such claims and defenses are expressly preserved for future resolution by the court.

Section 4.6    Successors and Assigns; Survival. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, successors and permitted assigns. No NexPoint Party may assign its rights or obligations hereunder without the prior written consent of HCMLP. HCMLP may not assign its rights or obligations hereunder without the prior written consent of NPA.

Section 4.7    Voluntary Assent; Review of Agreement; Independent Counsel; Construction. Each Party acknowledges and agrees that no promises or agreements of any kind have been made to or with him by the other or by any person or entity whatsoever to cause him to sign this Agreement other than those set forth in this Agreement, and that such Party fully understands the meaning and intent of this Agreement. Each Party further states and represents that it is sophisticated, has carefully read this Agreement, understands its contents, and freely and voluntarily assents to all of its terms and conditions. Each Party further states and represents that he has been represented by independent legal counsel of its own choosing with respect to the negotiation and preparation of this Agreement. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by HCMLP and the NexPoint Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement.

Section 4.8    Governing Law; Submission to Jurisdiction; Service of Process. This Agreement shall be interpreted and construed in accordance with the laws of the State of Texas, without regard to conflict of laws provisions. Each Party hereby irrevocably submits to and acknowledges and recognizes the exclusive jurisdiction of the United States Bankruptcy Court for the Northern District of Texas, Dallas

Division (the "Bankruptcy Court") (which court, for purposes of this Agreement, is the only court of competent jurisdiction), over any suit, action or other proceeding arising out of, under or in connection with this Agreement or its subject matter. Each Party irrevocably consents to service of process in any action or proceeding arising out of or relating to this Agreement in the manner provided for notices in Section 4.4. Nothing in this Agreement shall affect the right of any Party to serve process in any other manner permitted by law.

Section 4.9    Severability; Remedies Cumulative. The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions of this Agreement. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is found by a court or other regulatory authority of competent jurisdiction to be invalid or unenforceable, (a) the Parties shall negotiate in good faith to modify this Agreement so as to give effect to the original intent of the Parties of such invalid or unenforceable provision to the fullest extent permitted by law, and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction. The rights and remedies of the Parties to this Agreement are cumulative and not alternative, and each Party shall have the right in any particular circumstance to enforce any provision of this Agreement without regard to the availability of a remedy under any other provision of this Agreement.

Section 4.10    No Third-Party Beneficiaries.

(a)    It is the explicit intention of the Parties that no Person other than the Parties — and, for the avoidance of doubt, no employee or officer of any Party or any of its affiliates or any of a Party's or its affiliates' owners, officers or employees and no client or investor in any product managed or sponsored by any Party — is or shall be entitled to bring any action to enforce any provision of this Agreement against any Party or otherwise, and that the covenants, undertakings and agreements set forth in this Agreement are for the sole benefit of, and shall be enforceable only by the Parties (and their respective successors and permitted assigns), and they shall not be construed as conferring, and are not intended to confer, any rights on any other person or entity whatsoever.

(b)    No investors and no creditors of any Party shall have any right or entitlement to enforce any of the provisions of this Agreement or to require any Party to discharge its obligations hereunder.

Section 4.11    Headings. The headings of the Sections and sub-Sections of this Agreement are for convenience of reference only, and are not to be considered in construing the terms and provisions of this Agreement.

Section 4.12    Construction. The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation." The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless otherwise indicated: (i) the words "herein," "hereof" and "hereunder," and words of similar import when used in this Agreement, shall be construed to refer this Agreement in its entirety and not to any particular provision hereof and (ii) all references in this Agreement to Exhibits, Schedules, Articles, Sections, paragraphs and sentences shall be construed to refer to Exhibits and Sections to, and Articles, Sections, paragraphs and sentences of, this Agreement. References to statues shall mean such statutes as amended.

Section 4.13 <u>Payments</u>.  All payments and distributions required to be made pursuant this Agreement shall be made in cash and/or other immediately available funds to one (1) or more accounts as directed by the person or entity to whom such amounts are due.

Section 4.14 <u>Counterparts and Electronic Signatures</u>.  This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which together shall constitute one (1) and the same instrument.  This Agreement may be executed by facsimile and/or electronically by any one (1) or more of the Parties.

*[Remainder of page intentionally left blank; signature page follows]*

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the date first written above.

**HIGHLAND CAPITAL MANAGEMENT, LP**

By:
Name:
Title:

**NEXPOINT ADVISORS, L.P.**

By:
Name:  Dustin Norris
Title:   Executive Vice President

**HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

By:
Name:  Dustin Norris
Title:   Executive Vice President

**Schedule A**

**Schedule of Shared Resources and Payments**

**Highland Capital Management, L.P.**
**Contract Listing - Sharing Agreement**
**Schedule A-Shared Resources Agreement**

| | Services | End Date | Cost | | Value | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Shared IT Contracts** | | | | | | | | | | | | |
| AT&T | Internet-Pre Petition | monthly | 857 | Month | - | 857 | 857 | 857 | 857 | 857 | 857 | 5,142 |
| AT&T | Intersite Agreement-Post Petition | 3/28/2023 | 3,574 | Month | - | 3,574 | 3,574 | 3,574 | 3,574 | 3,574 | 3,574 | 21,444 |
| AT&T | Bandwidth connection at Evoque | monthly | 138 | Month | - | 138 | 138 | 138 | 138 | 138 | 138 | 828 |
| At&t | Land line req'd for 1 fax line and 911 | monthly | 395 | Month | - | 395 | 395 | 395 | 395 | 395 | 395 | 2,370 |
| AWS | Dev server hosting | monthly | 2,635 | Month | - | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 15,810 |
| CenturyLink | WAN line and Telephones | 1/28/2023 | 6,190 | Month | - | 6,190 | 6,190 | 6,190 | 6,190 | 6,190 | 6,190 | 37,140 |
| Cisco/CDW | Cisco Hardware Support | 3/31/2021 | 40,000 | Year | - | 40,000 | - | - | - | - | - | 40,000 |
| DUO Security | 2 factor authentication | monthly | 800 | Month | - | 800 | 800 | 800 | 800 | 800 | 800 | 4,800 |
| Evoque Data Center | Disaster Recovery DC | 10/15/2022 | 2,845 | Month | - | 2,845 | 2,845 | 2,845 | 2,845 | 2,845 | 2,845 | 17,070 |
| CDW | F5 load balancers | 6/2/2021 | 6,283 | Year | - | - | - | - | 6,283 | - | - | 6,283 |
| Flexential | Primary Data Center | 8/31/2021 | 11,888 | Month | - | 11,888 | 11,888 | 11,888 | 11,888 | 11,888 | 11,888 | 71,328 |
| CDW | IBM Websphere OMS software | 4/1/2021 | 4,080 | Year | - | - | 4,080 | - | - | - | - | 4,080 |
| Mxtoolbox | E Mailflow monitoring | monthly | 182 | Month | - | 182 | 182 | 182 | 182 | 182 | 182 | 1,092 |
| CDW | NetappSAN Maintenance | 4/30/2021 | 24,862 | Year | - | - | 24,862 | - | - | - | - | 24,862 |
| Netwrix | Auditor for active directory | 6/24/2021 | 2,635 | Year | - | - | - | - | 2,635 | - | - | 2,635 |
| Netwrix | Audits WFH and Cloud Activity | 6/24/2021 | 1,963 | Year | - | - | - | - | 1,963 | - | - | 1,963 |
| Onelogin | Cloud single sign on for HR related employee login | monthly | 340 | Month | - | 340 | 340 | 340 | 340 | 340 | 340 | 2,040 |
| Opentext | Fax Server | 4/9/2021 | 2,834 | Year | - | - | 2,834 | - | - | - | - | 2,834 |
| Solarwinds | FTP server maintenance | 6/1/2021 | 700 | Year | - | - | - | - | 700 | - | - | 700 |
| CDW | Trustwave E Mail Gateway-Anti Spam | 8/10/2021 | 2,182 | Year | - | - | - | - | - | - | 2,182 | 2,182 |
| CDW | Veritax Backup Exec | 3/1/2021 | 1,961 | Year | - | 1,961 | - | - | - | - | - | 1,961 |
| CDW | Veritas Enterprise Vault | 3/1/2021 | 4,706 | Year | - | 4,706 | - | - | - | - | - | 4,706 |
| Verity Group | Print Services for printers in office | monthly | 2,500 | Month | - | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 9,000 |
| WP Engine | Public Website hosting | monthly | 778 | Month | - | 778 | 778 | 778 | 778 | 778 | 778 | 4,668 |
| Zayo Group | WAN line | o or 3/26/202 | 2,083 | Month | - | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 12,498 |
| Zendesk | Helpdesk Platform | monthly | 252 | Month | - | 252 | 252 | 252 | 252 | 252 | 252 | 1,512 |
| SPECOPS | Password protection | 2/27/2021 | 3,717 | Year | - | 3,717 | - | - | - | - | - | 3,717 |
| **Total** | | | | | - | 84,841 | 66,233 | 34,457 | 46,038 | 34,457 | 36,639 | 302,665 |
| **NexPoint Parties' 60% Share** | | | 60.0% | | | 50,905 | 39,740 | 20,674 | 27,623 | 20,674 | 21,983 | 181,599 |
| | | | | | | | | | | | | |
| **Shared Other Contracts** | | | | | | | | | | | | |
| Siepe Software | Software | 9/1/2021 | 18,042 | Month | - | 18,042 | 18,042 | 18,042 | 18,042 | 18,042 | 18,042 | 108,252 |
| Markit | Loan Pricing (pd in full 103,402 thru 3/31/21) | 3/27/2022 | 103,402 | Yearly | - | 103,402 | - | - | - | - | - | 103,402 |
| Markit (Direct bill to funds) | WSO Dirct invoice to all funds (pd qtrly) | 10/31/2021 | | | - | - | - | - | - | - | - | - |
| Advent | Geneva software-prepaid thru termination date | 5/10/2021 | | | | - | - | - | - | - | - | - |
| Bloomberg | Routers At Flexential | | | | - | - | 8,411 | - | - | 8,411 | - | 16,822 |
| Compliance Science fka Financial Tracking | Other Research/Service Contracts | 4/1/2021 | 29,602 | Annual | - | - | 29,602 | - | - | - | - | 29,602 |
| DTCC (Pre trade compliance softeare) | Other Research/Service Contracts | | 3,237 | Monthly | - | 3,237 | 3,237 | 3,237 | 3,237 | 3,237 | 3,237 | 19,422 |
| FT Interactive Data Corp (Also known as I( | Other Research/Service Contracts | 10/1/2021 | 5,187 | Monthly | - | 5,187 | 5,187 | 5,187 | 5,187 | 5,187 | 5,187 | 31,122 |
| Moody'sHigh Yield Research | Other Research/Service Contracts/Allow to Expire | 11/30/2021 | 15,239 | Qtr | - | 15,239 | - | - | 15,239 | - | - | 30,479 |
| **Total** | | | | | - | 145,107 | 64,479 | 26,466 | 41,705 | 34,877 | 26,466 | 339,101 |
| **NexPoint Parties' 60% Share** | | | 60% | | - | 87,064 | 38,687 | 15,880 | 25,023 | 20,926 | 15,880 | 203,460 |
| | | | | | | | | | | | | |
| **Shared Remaining $ Value Contracts (remaining value has been prepaid):** | | | | | | | | | | | | |
| Credit Flux (formerly MergerMarket) | | 9/30/2021 | 18,673 | 7 | 10,893 | 1,556 | 1,556 | 1,556 | 1,556 | 1,556 | 1,556 | 9,337 |
| Debt Domain | | 8/22/2021 | 9,500 | 6 | 4,750 | 792 | 792 | 792 | 792 | 792 | 792 | 4,750 |
| Insider Score | | 5/31/2021 | 25,000 | 3 | 6,250 | 2,083 | 2,083 | 2,083 | - | - | - | 6,250 |
| Intralinks | | 7/31/2021 | 7,500 | 5 | 3,125 | 625 | 625 | 625 | 625 | 625 | - | 3,125 |
| Moody's Ratings-Instrument File | | 12/29/2021 | 61,703 | 10 | 51,419 | 5,142 | 5,142 | 5,142 | 5,142 | 5,142 | 5,142 | 30,852 |
| Proofpoint | | 9/29/2021 | 6,300 | 7 | 3,675 | 525 | 525 | 525 | 525 | 525 | 525 | 3,150 |
| Reorg Research | | 7/31/2021 | 34,521 | 5 | 14,384 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | - | 14,384 |
| **Total Remaining Value Contracts** | | | | | 94,496 | 13,600 | 13,600 | 13,600 | 11,516 | 11,516 | 8,015 | 71,847 |
| **NexPoint Parties' 60% Share** | | | 60% | | | 8,160 | 8,160 | 8,160 | 6,910 | 6,910 | 4,809 | 43,108 |
| | | | | | | | | | | | | |
| **Total NexPoint Parties' Monthly Payment Requirement for IT, Other Contracts and Remaining Value Contracts** | | | | | | 146,129 | 86,587 | 44,714 | 59,556 | 48,510 | 42,672 | 428,167 |

## AMENDMENT NO. 1 TO SHARED RESOURCES AGREEMENT

This Amendment No. 1 to Shared Resources Agreement (this "Amendment") is entered into effective as of March 1, 2021 (the "Effective Date"), by and among Highland Capital Management, L.P. ("HCMLP") and the following parties (collectively, the "NexPoint Parties"): NexPoint Advisors, L.P. ("NPA"), and Highland Capital Management Fund Advisors, L.P. ("HCMFA").

The NexPoint Parties and HCMLP collectively are referred to as the "Parties" and each of them as a "Party".

## **PREAMBLE**

WHEREAS, the Parties have entered into that certain Shared Resources Agreement dated as of the Effective Date (the "Existing Agreement"); and

WHEREAS, the Parties hereto desire to amend the Existing Agreement to on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Definitions. Capitalized terms used and not defined in this Amendment have the respective meanings assigned to them in the Existing Agreement.

2.      Amendments to the Existing Agreement. As of the Effective Date, the Existing Agreement is hereby amended and modified as follows:

(a)      Section 1.1(c) of the Existing Agreement is hereby deleted and replaced in its entirety as follows:

(c)      Within three (3) Business Days of being invoiced by HCMLP, the NexPoint Parties shall pay to HCMLP (i) the NexPoint Parties', and their respective affiliates' and NexBank, SSB's ("NexBank") allocable portion of the fees owed (A) under the Siepe Master Agreement based on the allocation of projects performed by Siepe for January 2021, February 2021 and each month during the term of this Agreement, (B) under the MarkIT – WSOWeb and Portfolio Management Services contract for each quarter during the term of the MarkIT – WSOWeb and Portfolio Management Services contract, including with respect to post-petition periods prior to the Effective Date, and (ii) 60% of the fees under each such contract that are not specifically allocable to any of the Parties or their affiliates; after prior allocation by Siepe and MarkIT of amounts attributable to HCMLP.      Each invoice provided by HCMLP to the NexPoint Parties with respect to the

foregoing contracts shall include the allocation spreadsheet in accordance with which each Parties' respective allocable portions were calculated.

In addition, the NexPoint Parties shall promptly pay or cause to be paid to WSO, all amounts that WSO indicates that the NexPoint Parties or their respective affiliates and NexBank owe under invoices issued under the MarkIT – WSOWeb and Portfolio Management Services contract in respect of service periods before HCMLP filed for bankruptcy.

(b)     A new Section 1.1(g) is hereby added to the Existing Agreement as follows:

(g)     In consideration of $25,000, which the NexPoint Parties shall pay to HCMLP on or before March 12, 2021, HCMLP shall sell and deliver to the NexPoint Parties the equipment listed on Schedule B attached hereto (the "IT Equipment"), including all ancillary equipment and attachments (e.g., monitors, keyboards, cables, standing desks, monitor stands, etc.), to the IT Equipment; provided, that with respect to the IT Equipment identified on Schedule B as 'Copy Prior to Sale', the NexPoint Parties shall immediately return such equipment to HCMLP so that HCMLP can make a copy of all data contained on such equipment as HCMLP determines in its sole discretion, and such equipment shall remain HCMLP's sole and exclusive property unless and until such copies are made to HCMLP's sole satisfaction. The NexPoint Parties acknowledge and agree that the IT Equipment is being sold 'as is', and the NexPoint Parties accept the IT Equipment in its existing condition and has either inspected the IT Equipment or chose not to inspect it. HCMLP expressly disclaims any implied warranty as to fitness for a particular purpose, any implied warranty as to merchantability and any and all other express or implied warranties with respect to the IT Equipment.

(c)     A new Section 1.1(h) is hereby added to the Existing Agreement as follows:

(h)     Each of the following shall terminate effective as of 11:59 p.m. on February 19, 2021, in accordance with its terms: (i) that certain *Payroll Reimbursement Agreement*, dated May 1, 2018, by and between HCMLP and NPA, as subsequently amended on December 14, 2018, and (ii) that certain *Payroll Reimbursement Agreement*, dated May 1, 2018, by and between HCMFA and HCMLP, as subsequently amended on December 14, 2018.

(d)     Schedule A to the Existing Agreement is hereby deleted and replaced in its entirety with Schedule A attached hereto.

(e)        <u>Schedule B</u> attached hereto is hereby added as a new Schedule B to the Existing Agreement.

3.        <u>Date of Effectiveness; Limited Effect</u>. This Amendment will be effective as of the Effective Date. Except as expressly provided in this Amendment, all the terms and provisions of the Existing Agreement are and will remain in full force and effect and are hereby ratified and confirmed by the Parties. Without limiting the generality of the foregoing, the amendments contained herein will not be construed as an amendment to or waiver of any other provision of the Existing Agreement or as a waiver of or consent to any further or future action on the part of either Party that would require the waiver or consent of the other Party. On and after the Effective Date, each reference in the Existing Agreement to "this Agreement," "the Agreement," "hereunder," "hereof," "herein," or words of like import will mean and be a reference to the Existing Agreement as amended by this Amendment.

4.        <u>Miscellaneous</u>.    Each of the terms and provisions set forth in Article IV – Miscellaneous Other Provisions of the Existing Agreement are hereby incorporated by reference.

[*Signature Page Follows.*]

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the date first written above.

**HIGHLAND CAPITAL MANAGEMENT, LP**

By: _____
Name:
Title: CEO/CRO

**NEXPOINT ADVISORS, L.P.**

By: _____
Name: Frank Waterhouse
Title: Chief Financial Officer

**HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

By: _____
Name: Frank Waterhouse
Title: Chief Financial Officer

**Schedule A**

**Schedule of Shared Resources and Payments**

(*Attached*.)

**Highland Capital Management, L.P.**
Contract Listing - Sharing Agreement
Schedule A-Shared Resources Agreement

| | Services | End Date | Cost | | Value | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Shared IT Contracts** | | | | | | | | | | | | |
| AT&T | Internet-Pre Petition | monthly | 857 | Month | - | 857 | 857 | 857 | 857 | 857 | 857 | 5,142 |
| AT&T | Intersite Agreement-Post Petition | 3/28/2023 | 3,574 | Month | - | 3,574 | 3,574 | 3,574 | 3,574 | 3,574 | 3,574 | 21,444 |
| AT&T | Bandwidth connection at Evoque | monthly | 138 | Month | - | 138 | 138 | 138 | 138 | 138 | 138 | 828 |
| At&T | Land line req'd for 1 fax line and 911 | monthly | 395 | Month | - | 395 | 395 | 395 | 395 | 395 | 395 | 2,370 |
| AWS | Dev server hosting | monthly | 2,635 | Month | - | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 15,810 |
| CenturyLink | WAN line and Telephones | 1/28/2023 | 6,190 | Month | - | 6,190 | 6,190 | 6,190 | 6,190 | 6,190 | 6,190 | 37,140 |
| Cisco/CDW | Cisco Hardware Support | 3/31/2021 | 40,000 | Year | - | 40,000 | - | - | - | - | - | 40,000 |
| DUO Security | 2 factor authentication | monthly | 800 | Month | - | 800 | 800 | 800 | 800 | 800 | 800 | 4,800 |
| Evoque Data Center | Disaster Recovery DC | 10/15/2022 | 2,845 | Month | - | 2,845 | 2,845 | 2,845 | 2,845 | 2,845 | 2,845 | 17,070 |
| CDW | F5 load balancers | 6/2/2021 | 6,283 | Year | - | - | - | - | 6,283 | - | - | 6,283 |
| Flexential | Primary Data Center | 8/31/2021 | 11,888 | Month | - | 11,888 | 11,888 | 11,888 | 11,888 | 11,888 | 11,888 | 71,328 |
| CDW | IBM Websphere OMS software | 4/1/2021 | 4,080 | Year | - | 4,080 | - | - | - | - | - | 4,080 |
| Mxtoolbox | E Mailflow monitoring | monthly | 182 | Month | - | 182 | 182 | 182 | 182 | 182 | 182 | 1,092 |
| CDW | NetappSAN Maintenance | 4/30/2021 | 24,862 | Year | - | - | 24,862 | - | - | - | - | 24,862 |
| Netwrix | Auditor for active directory | 6/24/2021 | 2,635 | Year | - | - | - | - | 2,635 | - | - | 2,635 |
| Netwrix | Audits WFH and Cloud Activity | 6/24/2021 | 1,963 | Year | - | - | - | - | 1,963 | - | - | 1,963 |
| Onelogin | Cloud single sign on for HR related employee login | monthly | 340 | Month | - | 340 | 340 | 340 | 340 | 340 | 340 | 2,040 |
| Opentext | Fax Server | 4/9/2021 | 2,834 | Year | - | - | 2,834 | - | - | - | - | 2,834 |
| Solarwinds | FTP server maintenance | 6/1/2021 | 700 | Year | - | - | - | - | 700 | - | - | 700 |
| CDW | Trustwave E Mail Gateway-Anti Spam | 8/10/2021 | 2,182 | Year | - | - | - | - | - | - | 2,182 | 2,182 |
| CDW | Veritas Backup Exec | 3/1/2021 | 1,961 | Year | - | 1,961 | - | - | - | - | - | 1,961 |
| CDW | Veritas Enterprise Vault | 3/1/2021 | 4,706 | Year | - | 4,706 | - | - | - | - | - | 4,706 |
| Verity Group | Print Services for printers in office | monthly | 2,500 | Month | - | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 9,000 |
| WP Engine | Public Website hosting | monthly | 778 | Month | - | 778 | 778 | 778 | 778 | 778 | 778 | 4,668 |
| Zayo Group | WAN line | no or 3/26/202 | 2,083 | Month | - | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 12,498 |
| Zendesk | Helpdesk Platform | monthly | 252 | Month | - | 252 | 252 | 252 | 252 | 252 | 252 | 1,512 |
| SPECOPS | Password protection | 2/27/2021 | 3,717 | Year | - | 3,717 | - | - | - | - | - | 3,717 |
| **Total** | | | | | - | 84,841 | 66,233 | 34,457 | 46,038 | 34,457 | 36,639 | 302,665 |
| **NexPoint Parties' 60% Share** | | | 60.0% | | | 50,905 | 39,740 | 20,674 | 27,623 | 20,674 | 21,983 | 181,599 |
| | | | | | | | | | | | | |
| **Shared Other Contracts** | | | | | | | | | | | | |
| Siepe Software | Software License | 9/1/2021 | 18,042 | Month | - | 18,042 | 18,042 | 18,042 | 18,042 | 18,042 | 18,042 | 108,252 |
| Siepe Master Service Agreement | NexPoint Parties to pay allocable portion + 60% of unallocated amounts, if any. | | | | - | - | - | - | - | - | - | - |
| Markit | Loan Pricing (pd in full 103,402 thru 3/31/21) | 3/27/2022 | 103,402 | Yearly | - | 103,402 | - | - | - | - | - | 103,402 |
| Markit-WSOWeb and Portfolio Management Services | NexPoint Parties to pay allocable portion + 60%of unallocated amounts, if any | 10/31/2021 | | | - | - | - | - | - | - | - | - |
| Oracle | General Ledger Software | 8/15/2021 | | | | 15,000 | - | - | 15,000 | - | - | 30,000 |
| Advent | Geneva software-prepaid thru termination date | 5/10/2021 | | | | - | - | - | - | - | - | - |
| Bloomberg | Routers At Flexential | ? | | | | - | 8,411 | - | - | 8,411 | - | 16,822 |
| Compliance Science fka Financial Tracking | Other Research/Service Contracts | 4/1/2021 | 29,602 | Annual | - | 29,602 | - | - | - | - | - | 29,602 |
| DTCC (Pre trade compliance software) | Other Research/Service Contracts | | 3,237 | Monthly | - | 3,237 | 3,237 | 3,237 | 3,237 | 3,237 | 3,237 | 19,422 |
| FT Interactive Data Corp (Also known as IC | Other Research/Service Contracts | 10/1/2021 | 5,187 | Monthly | - | 5,187 | 5,187 | 5,187 | 5,187 | 5,187 | 5,187 | 31,122 |
| Moody's High Yield Research | Other Research/Service Contracts/Allow to Expire | 11/30/2021 | 15,239 | Qtr | - | 15,239 | - | - | 15,239 | - | - | 30,479 |
| **Total** | | | | | - | 160,107 | 64,479 | 26,466 | 56,705 | 34,877 | 26,466 | 369,101 |
| **NexPoint Parties' 60% Share** | | | 60% | | - | 96,064 | 38,687 | 15,880 | 34,023 | 20,926 | 15,880 | 221,460 |
| | | | | | | | | | | | | |
| **Shared Remaining $ Value Contracts (remaining value has been prepaid):** | | | | | | | | | | | | |
| Credit Flux (formerly MergerMarket) | | 9/30/2021 | 18,673 | 7 | 10,893 | 1,556 | 1,556 | 1,556 | 1,556 | 1,556 | 1,556 | 9,337 |
| Debt Domain | | 8/22/2021 | 9,500 | 6 | 4,750 | 792 | 792 | 792 | 792 | 792 | 792 | 4,750 |
| Insider Score | | 5/31/2021 | 25,000 | 3 | 6,250 | 2,083 | 2,083 | 2,083 | - | - | - | 6,250 |
| Intralinks | | 7/31/2021 | 7,500 | 5 | 3,125 | 625 | 625 | 625 | 625 | 625 | - | 3,125 |
| Moody's Ratings-Instrument File | | 12/29/2021 | 61,703 | 10 | 51,419 | 5,142 | 5,142 | 5,142 | 5,142 | 5,142 | 5,142 | 30,852 |
| Proofpoint | | 9/29/2021 | 6,300 | 7 | 3,675 | 525 | 525 | 525 | 525 | 525 | 525 | 3,150 |
| Reorg Research | | 7/31/2021 | 34,521 | 5 | 14,384 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | - | 14,384 |
| **Total Remaining Value Contracts** | | | | | 94,496 | 13,600 | 13,600 | 13,600 | 11,516 | 11,516 | 8,015 | 71,847 |
| **NexPoint Parties' 60% Share** | | | 60% | | | 8,160 | 8,160 | 8,160 | 6,910 | 6,910 | 4,809 | 43,108 |
| | | | | | | | | | | | | |
| **Total NexPoint Parties' Monthly Payment Requirement for IT, Other Contracts and Remaining Value Contracts** | | | | | | 155,129 | 86,587 | 44,714 | 68,556 | 48,510 | 42,672 | 446,167 |

**Schedule B**

**IT Equipment**

(*Attached.*)

| Username | Name | Owner | Hardware Class | Hardware Item | |
|---|---|---|---|---|---|
| ABARBERA | Angela Barbera | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 6 | |
| ABRUMLEY | Angela Brumley | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| AGIFFORD | Alex Gifford | HCMLP | Machine Model | LENOVO - 20KFCTO1WW | |
| ASIMS | Austin Sims | HCMLP | Machine Model | Microsoft Corporation - Surface Pro | |
| AWILLIAMS | Andy Williams | HCMLP | Machine Model | LENOVO - 20Q0002CUS | |
| BFLAHERTY | Brendan Flaherty | HCMLP | Machine Model | HP - HP EliteDesk 800 G3 TWR | |
| BFUENTES | Brian Fuentes | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| BGRAIME | Brian Graime | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| BHEISS | Bradford Heiss | HCMLP | Machine Model | LENOVO - 20KFCTO1WW | |
| BHEISS | Bradford Heiss | HCMLP | Machine Model | LENOVO - 20UD000HUS | |
| BJAIN | Bhawika Jain | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| BLOOMBERG | | HCMLP | Machine Model | Microsoft Corporation - Virtual Machine | |
| BMCDERMETT | Bonner McDermott | HCMLP | Machine Model | HP - HP ProBook 445R G6 | |
| BMCDERMETT | Bonner McDermott | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 4 | |
| BMITTS | Brian Mitts | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 4 | |
| BSANBORN | Brian Sanborn | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 4 | |
| BSANBORN | Brian Sanborn | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 6 | |
| CCOLEMAN | Clayton Coleman | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| CEMERT | Craig Emert | HCMLP | Machine Model | LENOVO - 20Q0002CUS | |
| CHAKEMACK | Chris Hakemack | HCMLP | Machine Model | Microsoft Corporation - Surface Pro | |
| CLO | | HCMLP | Machine Model | Microsoft Corporation - Virtual Machine | |
| COMPLIANCE | | HCMLP | Machine Model | Microsoft Corporation - Virtual Machine | |
| CZULUAGA | Camilo Zuluaga | HCMLP | Machine Model | HP - HP ProBook 445R G6 | |
| DBULGER | David Bulger | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| DNORRIS | Dustin Norris | HCMLP | Machine Model | LENOVO - 20KHCTO1WW | |
| DSAUTER | DC Sauter | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 6 | |
| DWILLMORE | David Willmore | HCMLP | Machine Model | LENOVO - 20Q0CTO1WW | |
| EBREAULT | Evan Breault | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 4 | |
| EFRITZ | Eric Fritz | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| EHOLT | Eric Holt | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| GESCURDERO | Gaston Escudero | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| GMILLER | Gordon Miller | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| HCOVITZ | Hunter Covitz | HCMLP | Machine Model | HP - HP ProBook 440 G7 | Copy Prior to Sale |
| HSOTO | Hailey Soto | HCMLP | Machine Model | Hewlett-Packard - HP EliteDesk 800 G1 TWR | |
| IHOWLE | Ian Howle | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| JBLAIR | Jesse Blair | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| JCONNOLLY | James Connolly | HCMLP | Machine Model | Standing Desk | |
| JDUNN | John Dunn | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 6 | |
| JGRAHAM | Jackie Graham | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| JGRANT | Jennifer Grant | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 4 | |
| JPOST | Jason Post | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| JSCHOOL | Jenny School | HCMLP | Machine Model | HP - HP ProBook 430 G7 | |
| JSOWIN | Joe Sowin | HCMLP | Machine Model | LENOVO - 20R1S04100 | Copy Prior to Sale |
| jSOWIN | Joe Sowin | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 3 | Copy Prior to Sale |
| JYEHIA | Josef Yehia | HCMLP | Machine Model | Microsoft Corporation - Surface Pro | |
| KCASTLE | Kyle Castle | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| KCAWLEY | Keith Cawley | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 4 | |
| KFULLMER | Kevin Fullmer | HCMLP | Machine Model | Microsoft Corporation - Surface Pro | |
| KGATZKI | Kent Gatzki | HCMLP | Machine Model | Hewlett-Packard - HP EliteDesk 800 G1 TWR | |
| KNELSON | Kaitlin Nelson | HCMLP | Machine Model | LENOVO - 20Q0002CUS | |
| KNOEL | Kirby Noel | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 6 | |

| KROLLINS | Kristin Rollins | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 6 | |
|---|---|---|---|---|---|
| KSACHDEV | Kunal Sachdev | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| LBANNON | Lucy Bannon | HCMLP | Machine Model | HP - HP EliteDesk 800 G2 TWR | Copy Prior to Sale |
| LBANNON | Lucy Bannon | HCMLP | Machine Model | HP - HP ProBook 440 G7 | Copy Prior to Sale |
| LCASTANIEN | Luke Castanien | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 4 | |
| MBEISPIEL | Michael Beispiel | HCMLP | Machine Model | HP - HP EliteDesk 800 G3 TWR | |
| MBRENNAN | Mike Brennan | HCMLP | Machine Model | LENOVO - 20KFS1TE00 | |
| MDILLON | Mark Dillon | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| MFRIZELL | Madeline Frizell | HCMLP | Machine Model | Microsoft Corporation - Surface Pro | |
| MGOETZ | Matthew Goetz | HCMLP | Machine Model | Microsoft Corporation - Surface Pro | |
| MHASELROTH | Matt Haselroth | HCMLP | Machine Model | LENOVO - 20Q0CTO1WW | |
| MHOLLISTER | Mike Hollister | HCMLP | Machine Model | LENOVO - 20KG0022US | |
| MHURLEY | Mike Hurley | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| MJEONG | Michael Jeong | HCMLP | Machine Model | HP - HP EliteDesk 800 G4 TWR | |
| MJEONG | Michael Jeong | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| MJONES | Michael Jones | HCMLP | Machine Model | LENOVO - 20KHCTO1WW | |
| MJORDAN | Micah Jordan | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 6 | |
| MMCGRANER | Matt McGraner | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 6 | |
| MMCGRANER | Matt McGraner | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| MPEARSON | Matt Pearson | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| NBURNS | Nate Burns | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| PRICHARDS | Paul Richards | HCMLP | Machine Model | LENOVO - 20U9001NUS | |
| RHARRIS | Rob Harris | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| SABAYARATHNA | Sahan Abayarathna | HCMLP | Machine Model | HP - HP EliteDesk 800 G3 TWR | |
| SABAYARATHNA | Sahan Abayarathna | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| SBELVAL | Scott Belval | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| SBERRY | Scott Berry | HCMLP | Machine Model | Microsoft Corporation - Surface Pro | |
| SBRODEUR | Steven Brodeur | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| SBRODEUR | Steven Brodeur | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| SKOUZMENKO | Svetlana Kouzmenko | HCMLP | Machine Model | HP - HP ProBook 440 G7 | |
| SPARVIN | Sean Parvin | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 7 | |
| SSIMON | Scott Simon | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 6 | |
| TCHAPLINE | Tom Chapline | HCMLP | Machine Model | LENOVO - 20Q0CTO1WW | |
| TCOLBERT | Taylor Colbert | HCMLP | Machine Model | LENOVO - 20KFCTO1WW | |
| WLARKIN | Will Larkin | HCMLP | Machine Model | Microsoft Corporation - Surface Pro 6 | |