BTXN 116 (rev. 07/08)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# APPEAL SERVICE LIST

## Transmission of the Record

BK Case No.: <u>19−34054−sgj11</u>

Received in District Court by: <u>      </u>

Date: <u>    </u>

Volume Number(s): <u>   </u>

cc: Stacey G. Jernigan
    Robert (Bob) Schaaf
    Nathan (Nate) Elner
    Attorney(s) for Appellant
    US Trustee

**Appellant** James Dondero

Clay M. Taylor
Bryan C. Assink
Bonds Ellis Eppich Schafer Jones LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405−6900 telephone

And

Michael M. Eidelman (admitted pro hac vice)
Douglas J. Lipke (admitted pro hac vice)
Thomas P. Cimino, Jr. (admitted pro hac vice)
William W. Thorsness (admitted pro hac vice)
David L. Kane (admitted pro hac vice)
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
(312) 609−7500 telephone

**Appellee** Highland Capital Management, L.P.

Jeffrey N. Pomerantz (CA Bar No.143717) (pro hac vice)
Ira D. Kharasch (CA Bar No. 109084) (pro hac vice)
John A. Morris (NY Bar No. 266326) (pro hac vice)
Gregory V. Demo (NY Bar No. 5371992) (pro hac vice)
PACHULSKI STANG ZIEHL & JONES LLP

Clay M. Taylor
State Bar I.D. No. 24033261
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

– and –

Michael M. Eidelman (admitted *pro hac vice*)
Douglas J. Lipke (admitted *pro hac vice*)
Thomas P. Cimino, Jr. (admitted *pro hac vice*)
William W. Thorsness (admitted *pro hac vice*)
David L. Kane (admitted *pro hac vice*)
VEDDER PRICE P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
(312) 609-7500 telephone
(312) 609-5005 facsimile

**ATTORNEYS FOR APPELLANT JAMES DONDERO**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Case No. 19-34054** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

## <u>NOTICE OF APPEAL</u>

NOTICE IS HEREBY GIVEN that, pursuant to rules 8002 and 8003 of the Federal Rules

of Bankruptcy Procedure and 28 U.S.C § 158(a), James Dondero hereby appeals to the United

States District Court for the Northern District of Texas (the "<u>District Court</u>") from the

*Memorandum Opinion and Order Holding Certain Parties and Their Attorneys in Civil Contempt*

*of Court for Violation of Bankruptcy Court Orders* [Docket No. 2660] (the "<u>Order</u>") entered by

the United States Bankruptcy Court for the Northern District of Texas on August 4, 2021. A copy

of the Order is attached hereto as "**Exhibit 1**".

The parties to this matter and the names and addresses of their respective attorneys are as

follows:

| Party | Counsel of Record |
|---|---|
| James Dondero, a creditor, indirect equity holder, and party in interest in the above-captioned bankruptcy case<br><br>Appellant | Clay M. Taylor<br>State Bar I.D. No. 24033261<br>Bryan C. Assink<br>State Bar I.D. No. 24089009<br>Bonds Ellis Eppich Schafer Jones LLP<br>420 Throckmorton Street, Suite 1000<br>Fort Worth, Texas 76102<br>(817) 405-6900 telephone<br>(817) 405-6902 facsimile<br><br>– and –<br><br>Michael M. Eidelman (admitted *pro hac vice*)<br>Douglas J. Lipke (admitted *pro hac vice*)<br>Thomas P. Cimino, Jr. (admitted *pro hac vice*)<br>William W. Thorsness (admitted *pro hac vice*)<br>David L. Kane (admitted *pro hac vice*)<br>Vedder Price P.C.<br>222 North LaSalle Street, Suite 2600<br>Chicago, Illinois 60601<br>(312) 609-7500 telephone<br>(312) 609-5005 facsimile |
| Highland Capital Management, L.P., the Debtor in the above-captioned bankruptcy case<br><br>Appellee | Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)<br>Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)<br>John A. Morris (NY Bar No. 266326) (*pro hac vice*)<br>Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>10100 Santa Monica Blvd., 13th Floor |

| | Los Angeles, CA 90067 |
|---|---|
| | Telephone: (310) 277-6910 |
| | Email:jpomerantz@pszjlaw.com |
| | ikharasch@pszjlaw.com |
| | jmorris@pszjlaw.com |
| | gdemo@pszjlaw.com |
| | |
| | and |
| | |
| | Melissa S. Hayward (TX Bar No. 24044908) |
| | Zachery Z. Annable (TX Bar No. 24053075) |
| | HAYWARD PLLC |
| | 10501 N. Central Expy, Ste. 106 |
| | Dallas, Texas 75231 |
| | Telephone: (972) 755-7100 |
| | Email:MHayward@HaywardFirm.com |
| | ZAnnable@HaywardFirm.com |

Dated: August 16, 2021    Respectfully submitted,

         */s/ Bryan C. Assink*     
         Clay M. Taylor
         State Bar I.D. No. 24033261
         Bryan C. Assink
         State Bar I.D. No. 24089009
         BONDS ELLIS EPPICH SCHAFER JONES LLP
         420 Throckmorton Street, Suite 1000
         Fort Worth, Texas 76102
         (817) 405-6900 telephone
         (817) 405-6902 facsimile
         Email: clay.taylor@bondsellis.com
         Email: bryan.assink@bondsellis.com

         - and -

Michael M. Eidelman (admitted *pro hac vice*)
Douglas J. Lipke (admitted *pro hac vice*)
Thomas P. Cimino, Jr. (admitted *pro hac vice*)
William W. Thorsness (admitted *pro hac vice*)
David L. Kane (admitted *pro hac vice*)
VEDDER PRICE P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
(312) 609-7500 telephone
(312) 609-5005 facsimile
Email: meidelman@vedderprice.com
Email: dlipke@vedderprice.com
Email: tcimino@vedderprice.com
Email: wthorsness@vedderprice.com
Email: dkane@vedderprice.com

**ATTORNEYS FOR APPELLANT JAMES DONDERO**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on August 16, 2021 a true and correct copy of the foregoing document was served via the Court's CM/ECF system on counsel for the Debtor and on all other parties requesting or consenting to such service in this case.

*/s/ Bryan C. Assink*
Bryan C. Assink

Case 19-34054-sgj11 Doc 2660 Filed 08/04/21 Entered 08/24/21 12:56:38 Page 6 of 99
Case 3:21-cv-01979-S Document 1-1 Filed 08/24/21 Page 5 of 98 PageID 6
Docket #2660 Date Filed: 8/4/21



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 3, 2021**

_____
**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

### MEMORANDUM OPINION AND ORDER HOLDING CERTAIN PARTIES AND THEIR ATTORNEYS IN CIVIL CONTEMPT OF COURT FOR VIOLATION OF BANKRUPTCY COURT ORDERS[2]

### I.     Introduction.

This Memorandum Opinion and Order addresses the ***second*** civil contempt matter that this

bankruptcy court has been asked to address since confirmation of a Chapter 11 plan for Highland

Capital Management, L.P. (the "Debtor" or "Highland") on February 22, 2021.  In this instance,

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] This ruling constitutes the court's findings of fact and conclusions of law, pursuant to Fed. R. Bankr. Pro. 7052, in connection with the Motion, Memorandum of Law, Declaration, and Show Cause Order found at DE ## 2235, 2236, 2237, 2247, and 2255 in the above-referenced Bankruptcy Case.

EXHIBIT 1

1934054210804000000000001

Highland seeks to have at least two entities held in civil contempt of two bankruptcy court orders and imposed with sanctions: Charitable DAF Fund, L.P. ("DAF") and CLO Holdco, Ltd. ("CLO Holdco") (collectively, the "Alleged Contemnors"). Highland also seeks to have a law firm that has recently begun representing the Alleged Contemnors (Sbaiti & Company PLLC) held in civil contempt of the bankruptcy court, as well as any control-persons who authorized the Alleged Contemnors ("Authorizing Persons") to take the allegedly contemptuous actions.

First, who are these Alleged Contemnors? DAF[3] is alleged to be a charitable fund and a limited company that was formed in the Cayman Islands. DAF is the 100% owner of CLO Holdco, which is also a Cayman Islands entity. Thus, DAF controls CLO Holdco.[4] DAF was founded by Highland's former Chief Executive Officer ("CEO") and indirect beneficial equity owner—Mr. James Dondero ("Mr. Dondero"). DAF controls $200 million of assets, which asset base was derived from Highland, Mr. Dondero, Mr. Dondero's family trusts, or other donor trusts.[5] Mr. Dondero has historically been DAF's informal investment advisor (without an agreement), and he was DAF's managing member until 2012.[6] In 2012, an individual named Grant Scott (a patent lawyer with no experience in finance or running charitable organizations, who was Mr. Dondero's long-time friend, college housemate, and best man at his wedding) became DAF's managing member.[7] Then, Grant Scott resigned from that role, on or around January 31, 2021, after apparent

---

[3] The acronym "DAF" stands for donor advised fund.

[4] Debtor's Exh. 25 [DE # 2410]. CLO Holdco has sometimes been referred to as the "investment arm" of the DAF organizational structure. Transcript of 6/8/21 Hearing at 122:17-20.

[5] Transcript 6/8/21 Hearing at 98:3-99:15 (testimony that the donors "gave up complete dominion and control over the respective assets and at that time claimed a federal income tax donation for that").

[6] Id. at 149:16-150:2.

[7] Id. at 150:3-5; 154:11-24; 156:7-10. See also Debtor's Exh. 23 (Grant Scott Deposition 1/21/21) at 24-25; 28:21 ("I think he is my closest friend") [DE # 2410].

disagreements with Mr. Dondero. After having no manager for a couple of months, an individual named Mark Patrick ("Mr. Patrick") became DAF's general manager on March 24, 2021 (just 19 days before the events occurred that are the subject of this contempt matter). It appears that Mr. Scott assigned his interests that undergirded his managing member role to Mr. Patrick at Mr. Patrick's direction.[8] Mr. Patrick was an employee of Highland (having had some sort of a "tax counsel" role—but not in Highland's legal department) from 2008 until early 2021, and he now is an employee of Highgate Consultants, d/b/a Skyview Group, which is an entity recently created by certain former Highland employees.[9] Mr. Patrick had no prior experience running a charitable organization prior to becoming DAF's manager on March 24, 2021 (just like Grant Scott).[10] He testified that he "hold[s] [him]self out as a tax professional versant on setting up offshore master fund structures."[11]

What were the allegedly contemptuous actions? DAF and CLO Holdco filed: (a) on April 12, 2021, a Complaint[12] ("Complaint") in the United States District Court for the Northern District of Texas (the "District Court Action"), against the Debtor and two Debtor-controlled entities (i.e., Highland HCF Advisor, Ltd. ("Highland HCFA") and Highland CLO Funding, Ltd. (""HCLOF"));[13] and then (b) one week later, on April 19, 2021, filed a motion for leave to amend

---

[8] Debtor's Exh. 24 at 90-93 [DE # 2410].

[9] Transcript from 6/8/21 Hearing, at 95:18-97:2 [DE # 2440].

[10] Id. at 100:2-103:9. For further clarity, above the Cayman Islands structure for DAF and CLO Holdco, there are various foundations that hold "participation shares." Id. Mr. Dondero is president and director of those foundations. Debtor's Exh. 23 at 57.

[11] Id. at 144:7-8.

[12] Debtor's Exh. 12 [DE # 2410].

[13] Highland HCFA is a Cayman Islands limited company 100% owned by the Debtor. HCLOF is a limited company incorporated under the laws of Guernsey. It is 49.02% owned by CLO Holdco and the remaining 50%+ is owned by the Debtor or Debtor's designee, as a result of the HarbourVest Settlement, as further explained herein.

the Complaint to add the Debtor's current CEO, James P. Seery, Jr. ("Mr. Seery") as a defendant in the action (the "Seery Motion").[14] ***It is the Seery Motion that is primarily in controversy here.*** Note that in the original Complaint, Mr. Seery is named as a "potential party"[15] and, while not nominally a party, he was mentioned approximately 50 times, by this court's count. Mr. Seery's conduct is plastered throughout the Complaint, accusing him of deceitful, improper conduct. ***The original Complaint does not mention that Highland is still in bankruptcy, nor that the claims asserted in the Complaint are related to a bankruptcy case pursuant to 28 U.S.C. § 1334, but, rather, asserts that federal subject matter jurisdiction exists in the District Court pursuant to 28 U.S.C. §§ 1331 & 1367.***

As will be explained further below, the District Court Action—which in some ways reads like a minority shareholder suit[16]—is all about the alleged impropriety of a settlement (*i.e.,* the "HarbourVest Settlement") that was proposed by the Debtor to the bankruptcy court in December 2020[17] and approved by the bankruptcy court (with notice to all creditors and after an evidentiary hearing) on January 14, 2021.[18] "HarbourVest" was a collective of investors that had invested approximately $80 million in the year 2017 into the defendant-entity herein known as HCLOF (acquiring a 49.98% interest in it), and filed six proofs of claim against the Debtor in the bankruptcy case, totaling $300 million, alleging that the Debtor had committed fraud back in 2017, in

---

[14] Debtor's Exh. 19 [DE # 2410].

[15] Debtor's Exh. 12 [DE # 2410], ¶ 6.

[16] Indeed, as alluded to in footnote 13 above, CLO Holdco is a minority shareholder (49.02%) of one of the Defendants, HCLOF, and HCLOF is now more than 50% owned by the Debtor or its designee as a result of the HarbourVest Settlement—a fact that CLO Holdco and DAF apparently do not like.

[17] Declaration of John Morris (Exhs. 1 & 2 attached thereto) [DE # 2237].

[18] " HarbourVest" refers to the collective of HarbourVest Dover Street IX Investment, L.P., HarbourVest 2017 Global AIF, L.P., HarbourVest 2017 Global Fund, L.P., HV International VIII Secondary, L.P., and HarbourVest Skew Base AIF, L.P.

connection with its encouraging HarbourVest to invest in and acquire the 49.98% interest in HCLOF. The Debtor and HarbourVest eventually negotiated a settlement of HarbourVest's proofs of claim which, in pertinent part, allowed HarbourVest a $45 million general unsecured claim in the bankruptcy case and involved HarbourVest transferring its 49.98% interest in defendant HCLOF to the Debtor or Debtor's designee.[19] The bankruptcy court approved this settlement as fair and equitable and in the best interests of the bankruptcy estate.[20]

Despite the full vetting in the bankruptcy court of the HarbourVest Settlement and an order approving the HarbourVest Settlement, which was not appealed by DAF or CLO Holdco,[21] various torts and other causes of action are now being alleged by DAF and CLO Holdco against the Debtor *relating entirely to the HarbourVest Settlement*, including: breach of fiduciary duties owed to DAF and CLO Holdco; breach of the HCLOF membership agreement, and an alleged right of first refusal provision therein; negligence; violations of RICO;[22] and tortious interference. In a nutshell, the gravamen of DAF's and CLO Holdco's Complaint is that the economics of the HarbourVest Settlement resulted in the Debtor obtaining HarbourVest's 49.98% in HCLOF for a value of $22.5 million, and DAF and CLO Holdco believe that the 49.98% interest was worth far more than this. DAF and CLO Holdco assert that they and HarbourVest were deceived. Somewhat shockingly to

---

[19] Declaration of John Morris (Exhs. 1 & 2 attached thereto) [DE # 2237]. HarbourVest basically wanted to rescind its earlier acquisition of the 49.98% to extract itself from Highland.

[20] Declaration of John Morris (Exh. 11 attached thereto) [DE # 2237].

[21] *Id.* The court notes that certain family trusts of Mr. Dondero (known as the Dugaboy and Get Good Trusts) did appeal the bankruptcy court order approving the HarbourVest Settlement. However, there was no stay pending appeal and the settlement was implemented.

[22] Shockingly, DAF and CLO Holdco state that Highland's "actions (performed through Seery and others) constitute violations of the federal wire fraud, mail fraud, fraud in connection with a case under Title 11, and/or securities fraud laws, pursuant to 18 U.S.C. § 1961(1)(B) and (D)." Debtor's Exh. 12, [DE # 2410], at ¶ 117.

this court, the Complaint implies that information was withheld from DAF and CLO Holdco.[23] DAF and CLO Holdco further argue that they should have been given the opportunity to purchase HarbourVest's 49.98% interest in HCLOF. Mr. Seery is alleged to be the chief perpetrator of wrongdoing. Subsequently, in the Seery Motion, in which DAF and CLO Holdco seek leave to amend the Complaint to add Mr. Seery to the District Court Action, DAF and CLO Holdco were clear for the first time that there is a "pending Chapter 11 proceeding" and disclosed to the District Court that they did not name Mr. Seery in the Complaint since the bankruptcy court "issued an order prohibiting the filing of any causes of action against Seery in any way related to his role at [Highland], subject to certain prerequisites. In that order, the bankruptcy court also asserted 'sole jurisdiction' over all such causes of action."[24] DAF and CLO Holdco went on to state that the bankruptcy court's order "exceeds the bankruptcy court's powers and is unenforceable," but even if enforceable, in an abundance of caution, DAF and CLO Holdco are satisfying the bankruptcy court's mandates by asking the ***District Court*** for leave to sue Mr. Seery, since the bankruptcy court's powers are derivative from the District Court.[25]

Disturbingly, one of the Alleged Contemnors (CLO Holdco) objected to the HarbourVest Settlement during the bankruptcy case[26] and later withdrew its objection during the bankruptcy

---

[23] Mr. Dondero and CLO Holdco appeared at and examined the HarbourVest witness, Michael Pugatch, at a deposition before the hearing on the HarbourVest Settlement. Declaration of John Morris, Exhs. 7 & 8 thereto [DE # 2237]. Moreover, it is rather astounding to this court for anyone to suggest that any human being (Mr. Seery or anyone else) knew more, or withheld, any information that wasn't ***well known*** to Mr. Dondero and all principals/agents of DAF and CLO Holdco. Mr. Dondero and any personnel associated with DAF and CLO Holdco were as (or more) familiar with HCLOF's assets and their potential value than any human beings on the planet—having managed these assets for years. As one example, it has been represented to the court that HCLOF owns shares in MGM Holdings, Inc. ("MGM"). It is undisputed that Mr. Dondero sits on the MGM Board of Directors. *See* DE # 2236, n.14.

[24] Debtor's Exh. 17 [DE # 2410] at paragraph 2, p. 1.

[25] *Id.* at paragraph 3, pp. 1-2; & pp.5-8.

[26] Declaration of John Morris (Exh. 6 attached thereto) [DE # 2237].

court hearing regarding the settlement,[27] and did not appeal the order approving the HarbourVest Settlement. CLO Holdco, in its later-withdrawn objection, made the very same argument that it now makes in Count 2 of the Complaint (in its breach of HCLOF membership agreement claim)— *i.e.,* that the Debtor committed a breach of a "right of first refusal" in the HCLOF membership agreement (in fact, this was the sole argument CLO Holdco made in its objection).[28] The Debtor and CLO Holdco submitted briefing on the alleged "right of first refusal" prior to the hearing on the HarbourVest Settlement, and the bankruptcy court spent a fair amount of time reviewing the briefing—only to learn on the morning of the hearing that CLO Holdco was withdrawing its objection.

In any event, the Debtor now alleges that the District Court Action is not only an improper collateral attack on the bankruptcy court's order approving the HarbourVest Settlement, but—more germane to this civil contempt matter—the motion to amend the District Court Action to add Mr. Seery is a violation of ***two*** earlier bankruptcy court orders[29] that contained "***gatekeeper provisions***"—*i.e.,* specific provisions ***requiring parties to seek bankruptcy court approval before filing lawsuits against the persons controlling the Debtor***. These gatekeeper provisions—which the bankruptcy court considered to be both (a) a way to maintain control of potentially vexatious, distracting litigation (which might interfere with the reorganization effort), and (b) consistent with the United States Supreme Court case of *Barton v. Barbour*,[30] and some of its progeny (as well as

---

[27] Declaration of John Morris (Exh. 10 attached thereto), Transcript of 1/14/21 Hearing, at 7:20-8:6 [DE # 2237]. Note that two family trusts of Mr. Dondero had objected to the HarbourVest Settlement (in addition to Mr. Dondero personally), but they made clear at the January 14, 2021 Hearing on the HarbourVest Settlement that they were not asserting that the HCLOF membership agreement (or an alleged right of first refusal therein) was being violated by the HarbourVest Settlement. *Id.* at 22:5-20.

[28] Declaration of John Morris (Exh. 6 attached thereto) [DE # 2237].

[29] Debtor's Exh. 15 & 16 [DE # 2410].

[30] 104 U.S. 126 (1881).

the second sentence of 28 U.S.C. § 959(a))—were heavily negotiated in the case and significant, since they were put in place against a backdrop of contentious litigation. ***No one appealed the two bankruptcy court orders with the gatekeeper provisions***. There were still more gatekeeping provisions in the Debtor's Chapter 11 plan that the bankruptcy court confirmed on February 22, 2021 (that plan is on appeal at the Fifth Circuit, although the Fifth Circuit has denied a stay pending appeal; at the time of the hearing on this civil contempt matter, the plan had not yet gone effective).

Objections to the Debtor's request to have the Alleged Contemnors, the Alleged Contemnors' lawyers, and Authorizing Persons held in civil contempt of court were filed by DAF, CLO Holdco, Sbaiti & Company, PLLC,[31] by Mr. Patrick,[32] and by Mr. Dondero.[33] They argue that the Alleged Contemnors have not violated the bankruptcy court's prior orders containing gatekeeper provisions because the Alleged Contemnors have ***not actually sued*** Mr. Seery but, rather, have sought permission from the District Court to sue him. They argue that, even though the January 2020 Corporate Governance Order and July 2020 Seery CEO Order required parties to seek bankruptcy court permission to sue Mr. Seery, that seeking ***District Court*** permission is appropriate, since district courts actually have bankruptcy subject matter jurisdiction and bankruptcy courts are mere units of the district courts. Moreover, the Alleged Contemnors suggest that the bankruptcy court's gatekeeper provisions in the two orders ***exceeded the reach of its powers***, and, again, their Seery Motion was simply about asking the court with original bankruptcy subject matter jurisdiction (*i.e.,* the District Court) for authority to sue Mr. Seery.

---

[31] DE # 2313.

[32] DE # 2309.

[33] DE # 2312.

The bankruptcy court held an evidentiary hearing on the civil contempt matter on June 8, 2021. For the reasons set forth below, the court finds and concludes that DAF, CLO Holdco, Sbaiti & Company, PLLC (and its lawyers Jonathan Bridges and Mazin Sbaiti), Mr. Patrick, and Mr. Dondero are all in civil contempt of at least two bankruptcy court orders of which they had knowledge and were well aware. They shall each be jointly and severally liable for the sum of **$239,655** as a compensatory sanction for their civil contempt, and they will be purged from their contempt if they pay this amount within 15 days of entry of this Order. Moreover, the court will add on a sanction of **$100,000** for each level of rehearing, appeal, or petition for *certiorari* that the Alleged Contemnors may choose to take with regard to this Order, to the extent any such motions for rehearing, appeals, or petitions for *certiorari* are not successful.

## II.     Background.

A brief summary of the above-referenced bankruptcy case can be found in this court's Memorandum and Opinion issued June 7, 2021, regarding an earlier contempt motion that involved Mr. Dondero and different allegedly contemptuous actions.[34] This court will not repeat that summary herein but will hit some of the most pertinent highlights.

Bankruptcy Filing. On October 16, 2019 (the "Petition Date"), Highland filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Highland is a registered investment advisor that manages billions of dollars of assets. Highland's assets are spread out in numerous, separate fund vehicles. While the Debtor has continued to operate and manage its business as a debtor-in-possession, the role of Mr. Dondero *vis-à-vis* the Debtor was significantly limited early in the bankruptcy case and ultimately terminated. The Debtor's current CEO, Mr. Seery, was selected by the creditors and approved by the bankruptcy court during the Chapter 11 case.

---

[34] Adversary Proceeding No. 20-03190, [DE # 190].

<u>Corporate Governance Shake-Up</u>.  Specifically, early in the case, the Official Unsecured Creditors Committee (the "UCC")—whose members asserted well over $1 billion worth of claims and whose members had been in litigation with Highland for many years in many courts—and the U.S. Trustee ("UST") both desired to have a Chapter 11 Trustee appointed in Highland's bankruptcy case—absent some major change in corporate governance—due to conflicts of interest and the alleged self-serving, improper acts of Mr. Dondero and possibly other former officers. Under this pressure, the Debtor negotiated a term sheet and settlement with the UCC, which was executed by Mr. Dondero and approved by a bankruptcy court order on January 9, 2020 (the "January 2020 Corporate Governance Order").[35] The settlement and term sheet contemplated a ***complete overhaul of the corporate governance structure of the Debtor***.  Mr. Dondero resigned from his role as an officer and director of the Debtor and of the Debtor's general partner. Three new independent directors (the "Independent Board") were appointed to govern the Debtor's general partner—Strand Advisors, Inc. ("Strand")—which, in turn, manages the Debtor. All of the new Independent Board members were selected by the UCC and are very experienced within either the industry in which the Debtor operates, restructuring, or both.  The three Independent Board members are:  Retired Bankruptcy Judge Russell Nelms; John Dubel; and Mr. Seery.  As noted above, one of the Independent Board members, Mr. Seery, was ultimately appointed as the Debtor's new CEO and CRO on July 16, 2020 (the "July 2020 Seery CEO Order").[36]  To be clear, Highland—during the bankruptcy case and still now—is governed by these wholly new,

---

[35]  *See* Debtor's Exh. 15 [DE # 2410]. The exact title and location on the Bankruptcy Docket for this Order is: Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course [DE # 339].

[36]  *See* Debtor's Exh. 16 [DE # 2410]. The exact title and location on the Bankruptcy Docket for this Order is: Order Approving Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Retention of James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative Nunc Pro Tunc to March 15, 2020 [DE # 854].

Independent Board members who had no prior connection to Highland. They were brought in to build trust with creditors and to hopefully put an end to a litigation culture that permeated Highland.

As for Mr. Dondero, while not originally contemplated as part of the January 2020 Corporate Governance Settlement, the Debtor proposed at the hearing on the January 2020 Corporate Governance Settlement that Mr. Dondero remain on as an unpaid employee of the Debtor and also continue to serve as a portfolio manager for certain separate *non-Debtor* investment vehicles/entities whose funds are managed by the Debtor. The court approved this arrangement when the UCC ultimately did not oppose it.  Mr. Dondero's authority with the Debtor was subject to oversight by the Independent Board,[37] and Mr. Seery was given authority to oversee the day-to-day management of the Debtor, including the purchase and sale of assets held by the Debtor and its subsidiaries, as well as the purchase and sale of assets that the Debtor manages for various separate non-Debtor investment vehicles/entities.

Eventually, the Debtor's new Independent Board concluded that it was untenable for Mr. Dondero to continue to be employed by the Debtor in any capacity because of conflicts and friction on many issues. Mr. Dondero's employment arrangement with the Debtor ceased in October 2020, but the termination of his employment was not the end of the friction between the Debtor and Mr. Dondero.  In fact, a week after his termination, litigation posturing and disputes began erupting between Mr. Dondero and certain of his related entities, on the one hand, and the Debtor on the other.

---

[37] "Mr. Dondero's responsibilities in such capacities shall in all cases be as determined by the Independent Directors . . . [and] will be subject at all times to the supervision, direction and authority of the Independent Directors.  In the event the Independent Directors determine for any reason that the Debtor shall no longer retain Mr. Dondero as an employee, Mr. Dondero agrees to resign immediately upon such determination." *See* Debtor's Exh. 15 (paragraph 8 therein). [DE # 2410].

Plan Confirmation. The bankruptcy court confirmed a Chapter 11 plan on February 22, 2021. The plan was supported by the UCC and an overwhelming dollar amount of creditors. Mr. Dondero and certain entities related to him objected to the plan and have appealed the Confirmation Order. Mr. Seery remains as the executive of the Debtor, and will continue to serve in that role, under a specific structure established in the plan and accompanying documents (with oversight by the court and creditor representatives).

III.    **The Impetus for this Second Civil Contempt Matter.**

A.  The Orders.

The subject of this second civil contempt matter is, primarily, two orders ***that were never appealed***: (a) the January 2020 Corporate Governance Order; and (b) the July 2020 Seery CEO Order—both referenced above.[38]

B.  The Gatekeeper Provisions in the Two Orders.

As mentioned above, these orders contained certain provisions that are sometimes referred to as "gatekeeper" provisions. These "gatekeeper" protections require litigants to obtain the bankruptcy court's approval before suing certain protected parties in control of the Debtor for actions arising in the course of their duties, including Mr. Seery.

Paragraph 10 of the January 2020 Corporate Governance Order provided:

> No entity may commence or pursue a claim or cause of action of any kind against any Independent Director, any Independent Director's agents, or any Independent Director's advisors relating in any way to the Independent Director's role as an independent director of Strand without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Independent Director, any Independent Director's agents, or any Independent Director's advisors and (ii) specifically authorizing such entity to bring such claim. The Court will have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

---

[38] Debtor's Exhs. 15 & 16. The HarbourVest Settlement Order described above is likewise significant to this analysis (also not appealed by the Alleged Contemnors).

Similarly, paragraph 5 of the July 2020 Seery CEO Order provided:

> No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

Despite these gatekeeper provisions, on April 12, 2021, the Alleged Contemnors, through new counsel (*i.e.,* different from the lawyers who represented them during the Bankruptcy Case previously) filed the District Court Action and promptly thereafter filed the Seery Motion asking the District Court for permission to add him as a defendant.

C. A Few Words About Gatekeeper Provisions.

Gatekeeper provisions are not uncommon in the world of bankruptcy. There are multiple decisions from the Northern District of Texas[39] (as well as other districts)[40] approving gatekeeper

---

[39] *See, e.g., In re Pilgrim's Pride Corp.,* 2010 Bankr. LEXIS 72 (Bankr. N.D. Tex. Jan. 14, 2010) (bankruptcy court channeled to itself exclusive jurisdiction to hear claims against debtors' management (including their boards of directors and chief restructuring officer) and the professionals based upon their conduct in pursuit of their responsibilities during the chapter 11 cases.); *see also In re CHC Group, Ltd.* (Case No. 16-31854, Bankr. N.D. Tex.) Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization [DE # 1671-1, attached to Findings of Fact and Conclusions of Law, and Order Confirming the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization], Section 10.8(b) at 57 (court retained *exclusive* jurisdiction to hear claims against any "Protected Party," including any claims "in connection with or arising out of . . . the administration of this Plan or the property to be distributed under this Plan, . . . or the transactions in furtherance of the foregoing, . . . .") (emphasis added); *see also Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233 (5th Cir. 1988) (bankruptcy court must determine that claim is colorable before authorizing a committee to sue in the stead of the debtor).

[40] *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 546 B.R. 284 (Bankr. S.D.N.Y. 2016) (bankruptcy court acts as gatekeeper to determine whether claims of certain creditors against certain Madoff feeder funds are direct claims (claims which may be brought by the creditor) or derivative claims (claims which either can only be brought by the Madoff post-confirmation liquidating trust or have already been settled by the trust)); *In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015) (discussing bankruptcy court's gatekeeper function over GM ignition switch cases); *In re Motors Liquidation Co.,* 568 B.R. 217 (Bankr. S.D.N.Y. 2017) (same). The use of the gatekeeper structure in the General Motors cases is particularly noteworthy. The causes of action arising from defective ignition switches are based on state tort law – both product liability and personal injury – and are causes of action unquestionably outside the jurisdiction of a bankruptcy court to hear on the merits. Nevertheless, the General Motors bankruptcy court acted as the gatekeeper post-confirmation to determine whether such litigation should proceed against the estate of the old debtor or the asset purchaser under the confirmed plan.

provisions that either: (a) granted exclusive jurisdiction in the bankruptcy court to hear matters challenging the actions of debtors' officers and directors arising from their conduct in the bankruptcy cases; or (b) at least granted power to a bankruptcy court to determine whether such matters could go forward.[41]

Bankruptcy courts frequently determine that the "Barton Doctrine" supports gatekeeper provisions and may, by analogy, sometimes be applied to executives and independent directors of debtors in possession. The "Barton Doctrine" originated from an old Supreme Court case[42] dealing with receivers. The "Barton Doctrine" was eventually expanded in bankruptcy jurisprudence to apply to bankruptcy trustees. As this court once noted regarding the "Barton Doctrine":

> [It] provides that, as a general rule, before a suit may be brought against a trustee, leave of the appointing court (*i.e.,* the bankruptcy court) must be obtained. The Barton doctrine is not an immunity doctrine but—strange as this may sound—has been held to be a jurisdictional provision (in other words, a court will not have subject matter jurisdiction to adjudicate a suit against a trustee unless and until the bankruptcy court has granted leave for the lawsuit to be filed).[43]

Courts have articulated numerous rationales for having this jurisdictional gatekeeping doctrine. One is that, because a "trustee in bankruptcy is an officer of the court that appoints him,"[44] the appointing court "has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties."[45] Another rationale is that the leave requirement

---

[41] *See Villegas v. Schmidt*, 788 F.3d 156, 158-59 (5th Cir. 2015) (under "Barton Doctrine," litigant must still seek authority from the bankruptcy court that appointed the trustee before filing litigation even if the bankruptcy court may not have jurisdiction to adjudicate the underlying claim).

[42] *Barton v. Barbour*, 104 U.S. 126 (1881).

[43] *Baron v. Sherman (In re Ondova Ltd. Co.)*, 2017 Bankr. LEXIS 325, *29 (Bankr. N.D. Tex. February 1, 2017); report and recommendation adopted, *Baron v. Sherman (In re Ondova Co.)*, 2018 U.S. Dist. LEXIS 13439 (N.D. Tex. Jan. 26, 2018), *aff'd, In re Ondova Ltd.*, 2019 U.S. App. LEXIS 3493 (5th Cir. 2019).

[44] *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996).

[45] *Id.*

"enables the bankruptcy court to maintain control over the estate and furthers the goal of centralizing all creditors' claims so they can be efficiently administered."[46] Yet other courts have expressed an underlying reason for the doctrine is to maintain a panel of competent and qualified trustees and to ensure efficient administration of bankruptcy estates: Without the leave requirement, "trusteeship w[ould] become a more irksome duty" and it would become "harder for courts to find competent people to appoint as trustees. Trustees w[ould] have to pay higher malpractice premiums" and "this w[ould] make the administration of bankruptcy estates more expensive."[47] Finally, another policy concern underlying the doctrine is a concern for the overall integrity of the bankruptcy process and the threat of trustees being distracted from or intimidated from doing their jobs. For example, losers in the bankruptcy process might turn to other courts to try to become winners there—by alleging the trustee did a negligent job.[48] The Fifth Circuit has recently recognized the continuing vitality of the "Barton Doctrine"—even after *Stern v. Marshall*[49] (that is, even in a scenario in which the appointing bankruptcy court might not itself have Constitutional authority to **adjudicate** the claims asserted against the trustee pursuant to the *Stern* decision).[50]

To be clear, the "Barton Doctrine" originated as a protection for federal receivers, but courts expanded the concept to bankruptcy trustees, and eventually it has been applied to various court-appointed and court-approved fiduciaries and their agents in bankruptcy cases, including debtors in

---

[46] *In re Ridley Owens, Inc.*, 391 B.R. 867, 871 (Bankr. N.D. Fla. 2008).

[47] *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) (citing *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998)). *See also generally* 1 COLLIER ON BANKRUPTCY 10-4 & 10-5 (Alan R. Resnick and Henry J. Sommer, eds., 16th Ed. 2016).

[48] *Linton*, 136 F.3d at 545-546.

[49] *Stern v. Marshall*, 564 U.S. 462 (2011).

[50] *See Villegas v. Schmidt,* 788 F.3d 156, 58-59 (5th Cir. 2015).

possession,[51] officers and directors of a debtor,[52] and the general partner of a debtor.[53] In the Highland case, since Mr. Seery and the Independent Directors were proposed by the UCC to avoid the appointment of a trustee, it seemed rather obvious to the bankruptcy court that they should have similar protections from suit—particularly against the backdrop of a litigation culture at Highland that had theretofore existed.

DAF and CLO Holdco argue that the gatekeeper provisions that are involved here run afoul of 28 USC § 959(a) and are an inappropriate extension of the "Barton Doctrine" and, more generally, they argue that the January 2020 Corporate Governance Order and July 2020 Seery CEO Order simply went too far by precluding claims being asserted against Mr. Seery that are lesser than gross negligence and willful misconduct—suggesting that precluding claims lesser than gross negligence and willful misconduct (such as a mere negligence claim) would violate federal law (the Investment Advisors Act) because Mr. Seery cannot contract away his fiduciary duties in this regard.

Putting aside for the moment the fact that the January 202 Corporate Governance Order and the July 2020 Seery CEO Order are final and nonappealable orders that have *res judicata* effect, DAF and CLO Holdco are simply wrong about 28 U.S.C. § 959(a) and the unavailability of the "Barton Doctrine" in a situation such as this. 28 U.S.C. § 959(a) states:

---

[51] *Helmer v. Pogue*, 2012 U.S. Dist. LEXIS 151262 (N.D. Ala. Oct. 22, 2012) (applying Barton Doctrine to debtor in possession); *see also* 11 U.S.C §§ 1107(a) (providing that a debtor in possession has all the rights and duties of a trustee and serves in the same fiduciary capacity).

[52] *See Carter v. Rodgers*, 220 F.3d 1249, 1252 & n.4 (11th Cir. 2000) (debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer for acts done in the actor's official capacity, and finding no distinction between a "bankruptcy-court-appointed officer" and officers who are "approved" by the court); *Hallock v. Key Fed. Sav. Bank (In re Silver Oak Homes)*, 167 B.R. 389 (Bankr. D. Md. 1994) (president of debtor).

[53] *Gordon v. Nick*, 1998 U.S. App. LEXIS 21519 (4th Cir. 1998) (managing partner of debtor).

Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. ***Such actions shall be subject to the general equity of such court*** so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury. (Emphasis added.)

To be sure, this statute has long been recognized as a limited exception to the "Barton Doctrine," so that trustees and debtors in possession can be sued for postpetition torts or other causes of action that happen to occur in the ***ordinary course of operating a business*** (as opposed to actions of the trustee while engaged in the general administration of the case)—the classic example being a "slip and fall" personal injury suit that might occur on the premises of a business that a trustee or debtor in possession is operating.[54] However, DAF and CLO Holdco ignore the last sentence of the statute that gives the appointing court the equitable powers to control the litigation "as the same may be necessary to the ends of justice." This is precisely what a gatekeeper provision is all about.[55]

But as earlier noted, DAF and CLO Holdco are too late to argue about the legality or enforceability of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order. The Fifth Circuit has made clear that, if a party fails to object to or appeal a final order— even one that grants relief that may be outside of a bankruptcy court's jurisdiction—the order is *res judicata* as to parties who had the opportunity to object to it. It becomes the law of the case and is

---

[54] *E.g., Muratore v. Darr*, 375 F.3d 140, 144 (1st Cir. 2004) (section 959(a) "is intended to 'permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store'") (quoting *Carter v. Rodgers*, 220 F.3d 1249, 1254 (11th Cir. 2000)). *See also Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996); *In re Am. Associated Sys., Inc.*, 373 F. Supp. 977, 979 (E.D. Ky. 1974).

[55] The court further notes anecdotally that DAF and CLO Holdco demanded a jury trial in their Complaint, and they have alluded to this as a reason why it was appropriate to bring their suit in the District Court. But it appears they contractually waived their jury trial rights in a prepetition agreement with Highland. *See* DE # 2495, Ex. A thereto, ¶14(f).

not subject to collateral attack.[56] The Supreme Court has more recently stated this principle in the bankruptcy context in *United Student Aid Funds, Inc. v. Espinosa.*[57]

In summary, there can be no doubt that there are two binding, nonappealable final orders[58] that govern in the situation at bar. Not only were they wholly proper but parties are now bound by them regardless.

IV. **The Evidence at the June 8, 2021 Hearing.**

The bankruptcy court held an evidentiary hearing on the civil contempt matter on June 8, 2021. The court considered the Declaration of John Morris (with Exhibits 1-18 thereto), at DE # 2237; Debtor's Exhibits 12-55, at DE ## 2410 & 2421; Exhibits 1, 3-12, 15-28, 30-46 of DAF, CLO Holdco, and Mr. Patrick at DE ## 2411 & 2420; and the live witness testimony of Mr. Patrick and Mr. Dondero.

There really is very little, if anything, in dispute. No one disputes the existence of the January 2020 Corporate Governance Order or the July 2020 Seery CEO Order or the Harbourvest Settlement. No one disputes the existence of the District Court Action or the Seery Motion. Thus, all that the court heard at the June 8, 2021 hearing that was "new," beyond what was in the pleadings and documents, was the explanations/rationales given by those involved with filing the District Court Action and the Seery Motion.

---

[56] *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987).

[57] 130 S. Ct. 1367 (2010) (order confirming Chapter 13 plan, that improperly proposed to discharge a student loan without a hardship adversary proceeding, was not void where there had been no objection or appeal).

[58] DAF and CLO Holding presented a case at the June 8, 2021 hearing suggesting the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order might not have been final orders. The case dealt with an employment order under Section 327 of the Bankruptcy Code, and this court does not believe it was applicable here.

Mr. Patrick testified that he became the manager/director of DAF and CLO Holdco on March 24, 2021,[59] and he earns no compensation for that role, although the prior manager/director, Mr. Grant Scott, earned $5,000 per month.[60] Mr. Patrick testified that he authorized the filing of the Complaint and the Seery Motion.[61] He testified that he retained the Sbaiti law firm 12 days before the District Court Action was filed, and the idea for filing the Complaint came from that firm,[62] although Mr. Dondero "brought certain information" to Mr. Patrick. Mr. Patrick then "engaged the Sbaiti firm to launch an investigation," and "also wanted Mr. Dondero to work with the Sbaiti firm with respect to their investigation of the underlying facts."[63] Mr. Patrick elaborated that he had no specific knowledge about the HarbourVest Settlement before taking charge of DAF and CLO Holdco, [64] but Mr. Dondero came to him with information about it. [65] Mr. Patrick did not talk to DAF's and CLO Holdco's prior managing member (Grant Scott) about the District Court Action, even though Grant Scott had been the managing member at the time of the HarbourVest Settlement that is the subject of the District Court Action. [66] Mr. Patrick hired the Sbaiti law firm at the unsolicited recommendation of D.C. Sauter, [67] the in-house general counsel of NexPoint

---

[59] Transcript 6/8/21 Hearing, at 97:3-21. [DE# 2440].

[60] *Id.* at 132:6-17. *See also* Debtor's Exh. 24 at 96:2-18 [DE # 2410].

[61] Transcript 6/8/21 Hearing, at 103:10-14; 104:3-13. [DE # 2440].

[62] *Id.* at 104:9-22.

[63] *Id.* at 105:1-5.

[64] *Id.* at 104:17-22.

[65] *Id.* at 105:13-106:16.

[66] Debtor's Exh. 24 at 101:10-102:20 [DE # 2410]; *see also* Transcript 6/8/21 Hearing, at 108:20-109:22. [DE # 2440].

[67] Transcript 6/8/21 Hearing, at 106:22-107:11. [DE # 2440].

Advisors (a company of which Mr. Dondero is president and controls).[68] Mr. Patrick further testified that Mr. Dondero communicated directly with the Sbaiti firm in relation to the investigation that was being undertaken and he "did not participate in those conversations";[69] Mr. Patrick "considered Mr. Dondero as the investment advisor to the portfolio . . . I wanted him to participate in the investigation."[70] Mr. Patrick confirmed that there is no formal investment advisory agreement with Mr. Dondero, and DAF and CLO Holdco had previously been in an investment advisory agreement with Highland.[71] While Mr. Patrick's testimony was replete with comments that he deferred to the Sbaiti law firm quite a bit, he did confirm that he authorized the filing of the Seery Motion and he was aware of the July 2020 Seery CEO Order.[72]

As for Mr. Dondero, much of the testimony elicited from Mr. Dondero centered around whether he essentially controls DAF and CLO Holdco and the sequence of events that led to Mr. Grant Scott resigning as their managing member. Recall that Mr. Scott had been their managing member at the time of the HarbourVest Settlement—to which CLO Holdco objected and then

---

[68] NexPoint Advisors is 99% owned by Mr. Dondero's family trust, Dugaboy Investment Trust, and is 1% owned by NexPoint Advisors GP, LLC, which is 100% owned by Mr. Dondero.  [DE # 2543].

[69] *Id.* at Transcript 6/8/21 Hearing, at 107:24-108:18. [DE # 2440].

[70] *Id.* at 107:18-23.

[71] The lawyers at Sbaiti & Company commented during opening statements that Mr. Dondero was the source of certain of the information in the Complaint and that they were asserting "work product privilege" and "attorney-client privilege" as to their communications with Mr. Dondero "because he's an agent of our client."  *Id.* at 41:6-10. The court ultimately overruled this claim of privilege since, among other things, Mr. Patrick's own testimony confirmed that Mr. Dondero had no contractual arrangement of any sort with DAF and CLO Holdco, and he was not a board member and had no decision-making authority for them. *Id.* at 137:2-12; *See also id.* at 180:23-188:7. For purposes of privilege assertion, there was no evidence whatsoever that Mr. Dondero was an agent or representative of DAF and CLO Holdco.

[72] *Id.* at 111:5-112:9.

withdrew its objection.[73] Mr. Dondero testified that he believed Mr. Scott's decision to withdraw the objection to the HarbourVest Settlement was inappropriate.[74]

Mr. Dondero further confirmed that he was the founder and primary donor to DAF.[75] He expressed disapproval for Mr. Scott's various decisions on behalf of DAF and CLO Holdco during the bankruptcy case (such as withdrawing a proof of claim and settling a lawsuit with the Debtor).[76] He testified about general knowledge of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order.[77] He confirmed that he participated in discussions with Mr. Sbaiti regarding the filing of the Complaint—indicating he spoke with the firm a "[h]alf dozen times, maybe."[78] He testified that he was not involved with the Seery Motion itself.[79]

The totality of the evidence was clear that Mr. Dondero sparked this fire (*i.e.,* the idea of bringing the District Court Action to essentially re-visit the HarbourVest Settlement and to find a way to challenge Mr. Seery's and the Debtor's conduct), and Mr. Patrick and Sbaiti & Company, PLLC, were happy to take the idea and run with it. The court believes the evidence was clear and convincing that Mr. Dondero encouraged Mr. Patrick to do something wrong, and Mr. Patrick basically abdicated responsibility to Mr. Dondero with regard to dealing with Sbaiti and executing the litigation strategy.

**Conclusions of Law**

---

[73] *Id*. at 163:10-165:18.

[74] *Id*.

[75] *Id*. at 165:19-24.

[76] *Id*. at 161:24-168:1; 169:1-170:9.

[77] *Id*. at 178:16-180:11.

[78] *Id*. at 180:12-22; 207:10-12.

[79] *Id*. at 210:7-14.

A. Jurisdiction and Authority.

Bankruptcy subject matter jurisdiction exists in this matter, pursuant to 28 U.S.C. § 1334(b). This bankruptcy court has authority to exercise such subject matter jurisdiction, pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984. This is a core matter pursuant to 28 U.S.C. § 157(b) in which this court may issue a final order.

The contempt motion currently before the court seeks for this court to hold DAF, CLO Holdco, Sbaiti & Company, PLLC, and any persons who authorized their actions in civil contempt of court for violating two orders of this court. Mr. Patrick and Mr. Dondero have both responded herein—neither, of course, admitting to any wrongdoing.

It is well established that bankruptcy courts have civil (as opposed to criminal) contempt powers. "The power to impose sanctions for contempt of an order is an inherent and well-settled power of all federal courts—including bankruptcy courts."[80] A bankruptcy court's power to sanction those who "flout [its] authority is both necessary and integral" to the court's performance of its duties.[81] Indeed, without such power, the court would be a "mere board[ ] of arbitration, whose judgments and decrees would be only advisory."[82]

---

[80] *In re SkyPort Global Comm's, Inc.,* No. 08-36737-H4-11, 2013 WL 4046397, at *1 (Bankr. S.D.Tex. Aug. 7, 2013), *aff'd.,* 661 Fed. Appx. 835 (5th Cir. 2016); *see also In re Bradley,* 588 F.3d 254, 255 (5th Cir. 2009) (noting that "civil contempt remains a creature of inherent power[,]" to "prevent insults, oppression, and experimentation with disobedience of the law[,]" and it is "widely recognized" that contempt power extends to bankruptcy) (quoting 11 U.S.C. § 105(a), which states, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.),* 108 F.3d 609, 613 (5th Cir.1997) ("[W]e assent with the majority of the circuits … and find that a bankruptcy court's power to conduct civil contempt proceedings and issue orders in accordance with the outcome of those proceedings lies in 11 U.S.C. § 105."); *Citizens Bank & Trust o. v. Case (In re Case),* 937 F.2d 1014, 1023 (5th Cir. 1991) (held that bankruptcy courts, as Article I as opposed to Article III courts, have the inherent power to sanction and police their dockets with respect to misconduct).

[81] *SkyPort Global,* 2013 WL 4046397, at *1.

[82] *Id.* (internal quotations omitted); *see also Bradley,* 588 F.3d at 266 (noting that contempt orders are both necessary and appropriate where a party violates an order for injunctive relief, noting such orders "are important to the

Contempt is characterized as either civil or criminal depending upon its "primary purpose."[83] If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil.[84] It is clear that Highland's intent is to both seek compensation for the expenses incurred by Highland, due to the Alleged Contemnors' purported violations of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order (*i.e.,* the gatekeeper provisions therein), and to coerce compliance going forward.

### B. Type of Civil Contempt: Alleged Violation of a Court Order.

There are different types of civil contempt, but the most common type is violation of a court order (such as is alleged here). "A party commits contempt when [they] violate[] a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order."[85] Thus, the party seeking an order of contempt in a civil contempt proceeding need only establish, by clear and convincing evidence:[86] "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order."[87]

---

management of bankruptcy cases, but have little effect if parties can irremediably defy them before they formally go into effect.").

[83] *Bradley*, 588 F.3d at 263.

[84] *Id.* (internal citations omitted).

[85] *Travelhost*, 68 F.3d at 961.

[86] *United States v. Puente*, 558 F. App'x 338, 341 (5th Cir. 2013) (per curiam) (internal citation omitted) ("[C]ivil contempt orders must satisfy the clear and convincing evidence standard, while criminal contempt orders must be established beyond a reasonable doubt.").

[87] *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995); *see also Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992) (same); *Travelhost*, 68 F.3d at 961 (same).

C.  Specificity of the Order.

To support a contempt finding in the context of an order alleged to have been violated, the order must delineate 'definite and specific' mandates that the defendants violated."[88] The court need not, however, "anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated."[89]

D.  Possible Sanctions.

To be clear, if the court ultimately determines that the Alleged Contemnors are in contempt of court, for not having complied with the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order, the court can order what is necessary to: (1) compel or coerce obedience of the order; and (2) to compensate the Debtor/estate for losses resulting from the Alleged Contemnors' non-compliance with the court orders.[90] The court must determine that the Debtor/movant showed by clear and convincing evidence that: (1) the orders were in effect; (2) the orders required or prohibited certain conduct; and (3) that the Alleged Contemnors failed to comply with the orders.[91] "[T]he factors to be considered in imposing civil contempt sanctions are: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order."[92] "Compensatory civil contempt reimburses the injured party for

---

[88] *Am. Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 578 (5th Cir. 2000) (citing Fed. R. Civ. P. 65).

[89] *Id.*

[90] *In re Gervin,* 337 B.R. 854, 858 (W.D. Tex. 2005) (citing *United States v. United Mine Workers,* 330 U.S. 258 (1947)).

[91] *In re LATCL&F, Inc.,* 2001 WL 984912, at *3 (N.D. Tex. 2001) (citing to *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392, 400 (5th Cir. 1987)).

[92] *Lamar Financial Corp. v. Adams,* 918 F.2d 564, 567 (5th Cir. 1990) (citing *United States v. United Mine Workers,* 330 U.S. 258 (1947)).

the losses and expenses incurred because of [their] adversary's noncompliance."[93] Ultimately, courts have "broad discretion in the assessment of damages in a civil contempt proceeding."[94]

E. **Knowledge of the Order.**

"An alleged contemnor must have had knowledge of the order on which civil contempt is to be based. The level of knowledge required, however, is not high. And intent or good faith is irrelevant."[95] To be clear, "intent is not an element in civil contempt matters. Instead, the basic rule is that all orders and judgments of courts must be complied with promptly."[96]

F. **Willfulness of Actions.**

For civil contempt of a court order to be found, "[t]he contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order."[97] For a stay violation, the complaining party need not show that the contemnor intended to violate the stay. Rather, the complaining party must show that the contemnor intentionally committed the acts which violate the stay. Nevertheless, in determining whether damages should be awarded under the court's contempt powers, the court considers whether the contemnor's conduct constitutes a willful violation of the stay.[98]

---

[93] *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976); *see also Travelhost*, 68 F.3d at 961 (noting that "[b]ecause the contempt order in the present case is intended to compensate [plaintiff] for lost profits and attorneys' fees resulting from the contemptuous conduct, it is clearly compensatory in nature."); *In re Terrebonne Fuel & Lube, Inc.,* 108 F.3d at 613 (affirming court's decision to impose sanctions for violating injunction and awarding plaintiff costs and fees incurred in connection with prosecuting defendant's conduct); *F.D.I.C.*, 43 F.3d at 168 (affirming court's imposition of sanctions requiring defendant to pay movant attorneys' fees).

[94] *Am. Airlines*, 228 F.3d at 585; *see also F.D.I.C.*, 43 F.3d at 168 (reviewing lower court's contempt order for "abuse of discretion" under the "clearly erroneous standard."); *In re Terrebonne Fuel & Lube, Inc.,* 108 F.3d at 613 ("The bankruptcy court's decision to impose sanctions is discretionary[]").

[95] *Kellogg v. Chester,* 71 B.R. at 38.

[96] *In re Unclaimed Freight of Monroe, Inc.,* 244 B.R. 358, 366 (Bankr. W.D. La. 1999); *see also In re Norris*, 192 B.R. 863, 873 (Bankr. W.D. La. 1995) ("Intent is not an element of civil contempt.")

[97] *Am. Airlines*, 228 F.3d at 581 (citing *N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir.1984)).

[98] *In re All Trac Transport, Inc.,* 306 B.R. 859, 875 (Bankr. N.D. Tex. 2004) (internal citations omitted).

G. <u>Applying the Evidence to the Literal Terms of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order.</u>

The court concludes that there is clear and convincing evidence that DAF, CLO Holdco, Sbaiti & Company, PLLC (through attorneys Mazin Sbaiti and Jonathan Bridges), Mr. Patrick, and Mr. Dondero—each and every one of them, with their collaborative actions—violated the specific wording of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order, and all are in contempt of the bankruptcy court. The evidence was clear and convincing: (1) that two court orders were in effect (the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order); (2) that the orders prohibited certain conduct (*i.e.,* "[n]o entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim.");[99] and (3) that the all of the Alleged Contemnors (DAF, CLO Holdco, Sbaiti & Company, PLLC, Mr. Mazin Sbaiti, Mr. Jonathan Bridges, Mr. Patrick, and Mr. Dondero) knew about the orders and failed to comply with the court's orders.

As earlier noted, the District Court Action is all about Mr. Seery's allegedly deceitful conduct in connection with a bankruptcy court-approved settlement (*i.e.,* the HarbourVest Settlement), to which CLO Holdco objected, but then withdrew its objection the day of the hearing. ***The lawsuit is, from this court's estimation, wholly frivolous***. This court is in a better position to realize its frivolousness than any other—having spent hours reflecting on the merits of the HarbourVest Settlement. This court believes that it is clear and convincing that each of the Alleged

---

[99] This is quoting from the July 2020 Seery CEO Order. The January 2020 Corporate Governance Order, of course, had the same prohibitory language as to all three of the Independent Directors.

Contemnors knew that it would be a "hard sell" to convince this bankruptcy court that the District Court Action and the claims against Mr. Seery should be allowed to go forward. That's why they tried their luck with the District Court—concocting a rationale that their methods were proper since the bankruptcy court's power to exercise bankruptcy subject matter is derivative, by statute, from the District Court. This rationale is nothing more than thinly veiled forum shopping. But worse, it is, in this instance, contempt of court. The Alleged Contemnors argue that they should not be held in contempt because, in filing the Complaint (which mentions Mr. Seery 50 times—but merely names him as a "potential party"), they did not "commence or pursue" a claim against Mr. Seery. Likewise, they argue that, in filing the Seery Motion, they did not actually "commence or pursue" a claim against Mr. Seery. They argue that a request for leave from the District Court, to add him to the District Court Action, cannot possibly meet the definition of "pursue"—and that one can only "pursue" litigation against a party *after* "commencing" an action against the party. This is linguistic gymnastics that does not fly. The Alleged Contemnors were pursuing litigation when they filed the Seery Motion in the District Court (and maybe even as early as when they filed the Complaint mentioning Mr. Seery 50 times and describing him as a "potential party"). These were all sharp litigation tactics, to be sure, but more problematic, were contemptuous of this court's orders.

**V. Damages**.

The Contempt Motion requests that the court: (a) find and hold each of the Alleged Contemnors (directed at DAF, CLO Holdco, Sbaiti & Company, PLLC, and any persons who actually authorized their acts—*i.e.,* "Authorizing Persons") in contempt of court; (b) direct the Alleged Contemnors, jointly and severally, to pay the Debtor's estate an amount of money equal to two times the Debtor's actual expenses incurred in bringing this contempt matter, payable within three calendar days of presentment of an itemized list of expenses; (c) impose a penalty of three

times the Debtor's actual expenses incurred in connection with any future violation of any order of this court; and (d) grant the Debtor such other and further relief as the court deems just and proper under the circumstances.[100]

As indicated earlier, the court can order what is necessary to: (1) compel or coerce obedience of an order; and (2) to compensate the Debtor/estate for losses resulting from non-compliance with a court order. Here, the court believes compensatory damages are more appropriate than a remedy to compel or coerce future compliance. Compensatory damages are supposed to reimburse the injured party for the losses and expenses incurred because of their adversary's noncompliance. Courts have broad discretion but may consider such factors as: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order.

As far as the harm from noncompliance, the Debtor presented invoices of the fees incurred by its counsel relating to this matter. The invoices were Exhibits 54 & 55 [DE # 2421]. The invoices reflect fees of the Debtor's primary bankruptcy counsel, Pachulski Stang, relating to this contempt matter, during the time period of April 18–April 30, 2021, of $38,796.50,[101] and another $148,998.50,[102] during the time period of May 1–June 7, 2021. These total **$187,795**, and the court determines these to have been reasonable and necessary fees incurred in having to respond and react to the contemptuous conduct set forth herein. Moreover, the court considers it to likely be a

---

[100] Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court Orders. [DE # 2247].

[101] The total fees and expenses for this time period were $1,295,070.58, but the court has calculated the fees related to this contempt matter.

[102] The total fees and expenses for this time period were $1,465,010 but the court has calculated the fees related to this contempt matter.

conservative number because: (a) it does not reflect the fees and expenses incurred at the June 8, 2021 Hearing (which went 4+ hours); (b) it does not include any expenses the firm incurred (the court notes from the time entries that there were depositions taken—thus, there must have been expenses); (c) it does not include any fees and expenses that the UCC may have incurred monitoring this contested matter; and (d) it does not include any fees for Pachulski's local counsel (Hayward & Associates). As for the June 8, 2021 Hearing, the court is aware that at least three professionals from Pachulski Stang participated (Jeff Pomeranz at $1,295/hour; John Morris at $1,245/hour; and paralegal Asia Canty at $425/hour, for a total of $2,965/hour; multiplied by 4 hours equals $11,860)—thus, the court will add on another $11,860 of fees that should be reimbursed. The expenses the Pachulski firm incurred during this time period were $22,271.14, but they are not itemized. Thus, the court will assume $10,000 of this related to the contempt matter. The court will conservatively assume the UCC incurred $20,000 in fees monitoring this matter—as this matter could impact their constituency's recovery (the court is aware that the UCC's lawyer Matthew Clemente attended the June 8, 2021 Hearing). The court will conservatively assume that Hayward and Associates incurred $10,000 in fees assisting Pachulski. Thus, all totaled, this amounts to **$239,655** of fees and expenses that this court is imposing upon the Alleged Contemnors, jointly and severally, to reimburse the bankruptcy estate for the fees and expenses it has incurred relating to their contemptuous acts.

The Debtor has asked for the court to impose a penalty of three times the Debtor's actual expenses incurred in connection with any future violation of any order of this bankruptcy court. The court declines to do this. However, the court will add on a sanction of $100,000 for each level of rehearing, appeal, or petition for *certiorari* that the Alleged Contemnors may choose to take

with regard to this Order, to the extent any such motions for rehearing, appeals, or petitions for certiorari are not successful.

Accordingly, it is hereby ORDERED that:

(i)     DAF, CLO Holdco, Sbaiti & Company, PLLC (including Mazin Sbaiti and Jonathan Bridges), Mark Patrick, and James Dondero (collectively, now the "Contemnors") are each in civil contempt of court in having violated the court's January 2020 Corporate Governance Order and July 2020 Seery CEO Order—the court having found by clear and convincing evidence that: (1) these orders were in effect and each of the Contemnors knew about them; (2) the orders prohibited certain conduct; and (3) the Contemnors failed to comply with the orders;

(ii)    In order to compensate the Debtor's estate for loss and expense resulting from the Contemnors' non-compliance with the orders, the Contemnors are jointly and severally liable for the compensatory sum of **$239,655** and are directed to pay the Debtor (on the 15th day after entry of this order) an amount of money equal to **$239,655;**

(iii)   The court will add on a monetary sanction of **$100,000** for each level of rehearing, appeal, or petition for *certioriari* that the Contemnors may choose to take with regard to this Order, to the extent that any such motions for rehearing, appeals, or petitions for *certiorari* are pursued by any of them and are not successful;

(iv)    Other sanctions (such as further deterrence sanctions) are denied at this time but, ***should any of these Contemnors be subject to another contempt motion in this court in the future and be found to have committed contempt***, the court anticipates imposing significant deterrence sanctions (the court duly notes that this is the second

30

time in the last several weeks that the court has found Mr. Dondero to be in contempt

of court); and

(v)     The court reserves jurisdiction to interpret and enforce this Order.

### End of Memorandum Opinion and Order ###



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 3, 2021**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § | Case No. 19-34054-sgj11 |
| Debtor. | § § | |

## MEMORANDUM OPINION AND ORDER HOLDING CERTAIN PARTIES AND THEIR ATTORNEYS IN CIVIL CONTEMPT OF COURT FOR VIOLATION OF BANKRUPTCY COURT ORDERS[2]

### I.    Introduction.

This Memorandum Opinion and Order addresses the ***second*** civil contempt matter that this

bankruptcy court has been asked to address since confirmation of a Chapter 11 plan for Highland

Capital Management, L.P. (the "Debtor" or "Highland") on February 22, 2021.  In this instance,

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] This ruling constitutes the court's findings of fact and conclusions of law, pursuant to Fed. R. Bankr. Pro. 7052, in connection with the Motion, Memorandum of Law, Declaration, and Show Cause Order found at DE ## 2235, 2236, 2237, 2247, and 2255 in the above-referenced Bankruptcy Case.

**SEALEDEXH, APPEAL, DirectAppeal, 5thCircuitAppeal, SealedDocument, FUNDS, TRANSIN, REFORM, ClaimsAgent, EXHIBITS, COMPLEX**

# U.S. Bankruptcy Court
## Northern District of Texas (Dallas)
## Bankruptcy Petition #: 19-34054-sgj11

|  |  |
|---|---|
| *Date filed:* | 10/16/2019 |
| *Date Plan Confirmed:* | 02/22/2021 |
| *Date transferred:* | 12/04/2019 |
| *Plan confirmed:* | 02/22/2021 |
| *341 meeting:* | 01/09/2020 |
| *Deadline for filing claims:* | 04/08/2020 |
| *Deadline for filing claims (govt.):* | 04/13/2020 |

*Assigned to:* Stacey G. Jernigan
Chapter 11
Voluntary
Asset

**Debtor**
**Highland Capital Management, L.P.**
300 Crescent Court
Suite 700
Dallas, TX 75201
DALLAS-TX

represented by **Zachery Z. Annable**
Hayward PLLC
10501 N. Central Expressway
Suite 106
Dallas, TX 75231
(972) 755-7108
Fax : (972) 755-7108
Email: zannable@haywardfirm.com

**David Grant Crooks**
Fox Rothschild LLP
5420 LBJ Freeway, Suite 1200
Dallas, TX 75240
(972) 991-0889
Fax : (972) 404-0516
Email: dcrooks@foxrothschild.com

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones L.L.P.
780 Third Avenue
New York, NY 10017-2024
(212) 561-7700
Fax : (212) 561-7777
Email: gdemo@pszjlaw.com

**Robert Joel Feinstein**
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY 10017-2024
(212) 561-7700
Fax : (212) 561-7777
Email: rfeinstein@pszjlaw.com

**Eric Thomas Haitz**
Gibson, Dunn & Crutcher LLP
811 Main Street, Suite 3000
Houston, TX 77002
346-718-6648

Email: chaltz@gibsondunn.com
*TERMINATED: 12/09/2019*

**Melissa S. Hayward**
Hayward PLLC
10501 N. Central Expry, Ste. 106
Dallas, TX 75231
972-755-7104
Fax : 972-755-7104
Email: MHayward@HaywardFirm.com

**Hayward & Associates PLLC**
10501 N. Central Expwy., Ste 106
Dallas, TX 75231

**Juliana Hoffman**
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 969-3581
Fax : (214) 981-3400
Email: jhoffman@sidley.com

**Ira D Kharasch**
10100 Santa Monica Boulevard
13th Floor
Los Angeles, CA 90067
310-227-6910
Fax : 310-201-0760
Email: ikharasch@pszjlaw.com

**Alan J. Kornfeld**
Pachulski Stang Ziehl & Jones LLPL
10100 Santa Monica Blvd., 13 Fl
Los Angeles, CA 90067
310-277-6910
Fax : 301-201-0760

**Maxim B Litvak**
Pachulski Stang Ziehl & Jones LLP
150 California Street
15th Floor
San Francisco, CA 94111
415-263-7000
Email: mlitvak@pszjlaw.com

**John A. Morris**
Pachulski Stang Ziehl & Jones, LLP
780 Third Avenue, 34th Floor
New York, NY 10017-2024
(212) 561-7700
Fax : (212) 561-7777
Email: jmorris@pszjlaw.com

**James E. O'Neill**
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Fl.
Wilmington, DE 19801
302-652-4100
Fax : 302-652-4400
Email: joneill@pszjlaw.com

**Jeffrey N. Pomerantz**
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
310-277-6910
Fax : 310-201-0760
Email: jpomerantz@pszjlaw.com

**Jeffrey Nathan Pomerantz**
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA 90067
(310) 277-6910
Fax : (310) 201-0760
Email: jpomerantz@pszjlaw.com

**Elissa A. Wagner**
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
310-277-6910
Fax : 310-201-0760

**Hayley R. Winograd**
Pachulski Stang Ziehl & Jones LLP
780 3rd Avenue #36
New York, NY 10017
(212) 561-7700
Fax : (212) 561-7777
Email: hwinograd@pszjlaw.com

***U.S. Trustee***
**United States Trustee**
1100 Commerce Street
Room 976
Dallas, TX 75202
214-767-8967

represented by **Lisa L. Lambert**
Office of the United States Trustee
1100 Commerce St., Rm. 976
Dallas, TX 75242
(214) 767-8967 ext 1080
Fax : (214) 767-8971
Email: lisa.l.lambert@usdoj.gov

***Creditor Committee***
**Official Committee of Unsecured Creditors**

represented by **Sean M. Beach**
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
302-571-6600

Email: bankfilings@ycst.com

**Jessica Boelter**
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
212-839-5300
Fax : 212-839-5599
Email: jboelter@sidley.com

**Matthew A. Clemente**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7539
Email: mclemente@sidley.com

**David Grant Crooks**
(See above for address)

**Gregory V. Demo**
(See above for address)

**Bojan Guzina**
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
312-853-7323
Fax : 312-853-7036
Email: bguzina@sidley.com

**Bojan Guzina**
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
3128537323
Email: bguzina@sidley.com

**Juliana Hoffman**
(See above for address)

**Paige Holden Montgomery**
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 981-3300
Fax : (214) 981-3400
Email: pmontgomery@sidley.com

**Edmon L. Morton**
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
1000 North King Street
Wilmington, DE 19801

302-571-6637
Fax : 302-571-1253
Email: emorton@ycst.com

**Michael R. Nestor**
YOUNG CONAWAY STARGATT &
TAYLOR, LL
Rodney Square
1000 North King Street
Wilmington, DE 19801
302-571-6600
Email: mnestor@ycst.com

**Charles Martin Persons, Jr.**
Sidley Austin LLP
2020 McKinney Avenue, Suite 2000
Dallas, TX 75210
(214) 981-3300
Fax : (214) 981-3400
Email: cpersons@sidley.com

**Jeffrey N. Pomerantz**
(See above for address)

**Penny Packard Reid**
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 981-3413
Fax : (214) 981-3400
Email: preid@sidley.com

**Alyssa Russell**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7422
Fax : (312) 853-7036
Email: alyssa.russell@sidley.com

**Dennis M. Twomey**
Sidley Austin, LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7438
Fax : (312) 853-7036
Email: dtwomey@sidley.com

**Jaclyn C. Weissgerber**
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801

302-571-6600
Email: bankfilings@ycst.com

**Sean M. Young Conway Stargatt & Taylor, LLP**
Young Conway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
302-571-6600
Email: sbeach@ycst.com

| Filing Date | Docket Text |
|---|---|
| 12/04/2019 | 🌐 1 (2 pgs) Order transferring case number 19-12239 from U.S. Bankruptcy Court for the District of Delaware Filed by Highland Capital Management, L.P. (Okafor, M.) |
| 12/04/2019 | 🌐 2 (15 pgs) DOCKET SHEET filed in 19-12239 in the U.S. Bankruptcy Court for Delaware . (Okafor, M.) |
| 12/04/2019 | 🌐 3 (106 pgs; 2 docs) Chapter 11 Voluntary Petition . Fee Amount $1717. Filed by Highland Capital Management, L.P.. (Attachments: # 1 Creditor Matrix) [ORIGINALLY FILED AS DOCUMENT #1 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 4 (31 pgs; 2 docs) Motion to Pay Employee Wages /Motion of the Debtors for Entry of Order (I) Authorizing the Debtor to (A) Pay and Honor Prepetition Compensation, Reimbursable Business Expenses, and Employee Benefit Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (II) Granting Related Relief Filed Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Exhibit A - Proposed Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #2 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 5 (23 pgs; 2 docs) Motion to Pay Critical Trade Vendor Claims /Motion of the Debtor for Entry of Interim and Final Orders (A) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (B) Granting Related Relief Filed By Highland Capital Management, L.P. (Attachments: # 1 Exhibit A - Proposed Order)(O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #3 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] |
| 12/04/2019 | 🌐 6 (9 pgs; 2 docs) Motion to Extend Deadline to File Schedules or Provide Required Information Filed by Highland Capital Management, L.P.(Attachments: # 1 Exhibit A - Proposed Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #4 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 7 (24 pgs; 2 docs) Motion to Maintain Bank Accounts /Motion of the Debtor for Interim and Final Orders Authorizing (A) Continuance of Existing Cash Management System and Brokerage Relationships, (B) Continued Use of the Prime Account, (C) Limited Waiver of Section 345(b) Deposit and Investment Requirements, and (D) Granting Related Relief Filed By Highland Capital Management, L.P. (Attachments: # 1 Exhibit A - Interim Order) |

| | O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #5 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
|---|---|
| 12/04/2019 | 🔘 8 (32 pgs; 2 docs) **WITHDRAWN** - 10/29/2019. SEE DOCKET # 72. Motion to Approve Use of Cash Collateral /Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, (C) Authorizing the Liquidation of Securities, (D) Modifying the Automatic Stay, and (E) Scheduling a Final Hearing Filed By Highland Capital Management, L.P. (Attachments: # 1 Exhibit A - Order) (O'Neill, James) Modified on 10/30/2019 (DMC)[ORIGINALLY FILED AS DOCUMENT #6 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] |
| 12/04/2019 | 🔘 9 (36 pgs; 4 docs) Application to Appoint Claims/Noticing Agent KURTZMAN CARSON CONSULTANTS, LLC Filed By Highland Capital Management, L.P. (Attachments: # 1 Exhibit A - Engagement Agreement # 2 Exhibit B - Gershbein Declaration # 3 Exhibit C - Proposed Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #7 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 10 (10 pgs; 2 docs) Motion to File Under Seal/Motion of the Debtor for Entry of Interim and Final Orders Authorizing the Debtor to File Under Seal Portions of Its Creditor Matrix Containing Employee Address Information Filed by Highland Capital Management, L.P.. (Attachments: # 1 Exhibit A - Proposed Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #8 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 11 (44 pgs) Affidavit/Declaration in Support of First Day Motion /Declaration of Frank Waterhouse in Support of First Day Motions Filed By Highland Capital Management, L.P. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #9 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE](Okafor, M.) |
| 12/04/2019 | 🔘 12 (3 pgs) Notice of Hearing on First Day Motions (related document(s)2, 3, 5, 6, 7, 8, 9 [ON DELAWARE DOCKET]) Filed by Highland Capital Management, L.P.. Hearing scheduled for 10/18/2019 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #11 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 13 (15 pgs; 2 docs) Notice of Hearing // Notice of Interim Hearing on Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, (C) Authorizing the Liquidation of Securities, (D) Modifying the Automatic Stay, and (E) Scheduling a Final Hearing (related document(s)6) Filed by Highland Capital Management, L.P.. Hearing scheduled for 10/18/2019 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. (Attachments: # 1 Exhibit A) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #12 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 14 (3 pgs) Notice of Agenda of Matters Scheduled for Hearing Filed by Highland Capital Management, L.P.. Hearing scheduled for 10/18/2019 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. (O'Neill, James) |

| | |
|---|---|
| | ORIGINALLY FILED AS DOCUMENT #13 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 15  (3 pgs) Notice of appearance Filed by Alvarez & Marsal CRF Management, LLC, as Investment Manager of the Highland Crusader Funds (Beach, Sean) [ORIGINALLY FILED AS DOCUMENT #14 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 16  (1 pg) Motion to Appear pro hac vice of Marshall R. King of Gibson, Dunn & Crutcher LLP. Receipt Number 2757354, Filed by Alvarez & Marsal CRF Management, LLC, as Investment Manager of the Highland Crusader Funds. (Beach, Sean) [ORIGINALLY FILED AS DOCUMENT #15 ON 10/1/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 17  (1 pg) Motion to Appear pro hac vice of Michael A. Rosenthal of Gibson, Dunn & Crutcher LLP. Receipt Number 2624495, Filed by Alvarez & Marsal CRF Management, LLC, as Investment Manager of the Highland Crusader Funds. (Beach, Sean) [ORIGINALLY FILED AS DOCUMENT #16 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 18  (1 pg) Motion to Appear pro hac vice of Alan Moskowitz of Gibson, Dunn & Crutcher LLP. Receipt Number 2624495, Filed by Alvarez & Marsal CRF Management, LLC, as Investment Manager of the Highland Crusader Funds. (Beach, Sean) ) [ORIGINALLY FILED AS DOCUMENT #17 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 19  (1 pg) Motion to Appear pro hac vice of Matthew G. Bouslog of Gibson, Dunn & Crutcher LLP. Receipt Number 2581894, Filed by Alvarez & Marsal CRF Management, LLC, as Investment Manager of the Highland Crusader Funds. (Beach, Sean)) [ORIGINALLY FILED AS DOCUMENT #18 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 20  (3 pgs) Notice of Appearance and Request for Notice by Louis J. Cisz filed by Interested Party California Public Employees Retirement System (CalPERS) . (Okafor, M.) [ORIGINALLY FILED AS DOCUMENT #19 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] |
| 12/04/2019 | 🔵 21  (1 pg) Motion to Appear pro hac vice (Jeffrey N. Pomerantz). Receipt Number 2564620, Filed by Highland Capital Management, L.P.. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #20 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 22  (1 pg) Motion to Appear pro hac vice (Maxim B. Litvak). Receipt Number 2564620, Filed by Highland Capital Management, L.P. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #21 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 23  (1 pg) Motion to Appear pro hac vice (Ira D. Kharasch). Receipt Number DEX032537, Filed by Highland Capital Management, L.P.. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #22 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |

| 12/04/2019 | 🌐 24 (1 pg) Motion to Appear pro hac vice (Gregory V. Demo). Receipt Number DEX032536, Filed by Highland Capital Management, L.P. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #23 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
|---|---|
| 12/04/2019 | 🌐 25 (1 pg) Motion to Appear pro hac vice of Marc B. Hankin. Receipt Number 2757358, Filed by Redeemer Committee of the Highland Crusader Fund. (Miller, Curtis) [ORIGINALLY FILED AS DOCUMENT #24 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE](Okafor, M.) |
| 12/04/2019 | 🌐 26 (1 pg) Order Approving Motion for Admission pro hac vice Marshall R. King of Gibson(Related Doc # 15) Order Signed on 10/17/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #25 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 27 (1 pg) Order Approving Motion for Admission pro hac vice Michael A. Rosenthal (Related Doc # 16) Order Signed on 10/17/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #26 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 28 (1 pg) Order Approving Motion for Admission pro hac vice Alan Moskowitz (Related Doc # 17) Order Signed on 10/17/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #27 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 29 (1 pg) Order Approving Motion for Admission pro hac vice Matthew G. Bouslog(Related Doc # 18) Order Signed on 10/17/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #28 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 30 (1 pg) Order Approving Motion for Admission pro hac vice Jeffrey N. Pomerantz (Related Doc # 20) Order Signed on 10/17/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #29 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 31 (1 pg) Order Approving Motion for Admission pro hac vice Maxim B. Litvak (Related Doc # 21) Order Signed on 10/17/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #30 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 32 (1 pg) Order Approving Motion for Admission pro hac vice Ira D. Kharasch (Related Doc # 22) Order Signed on 10/17/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #31 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 33 (1 pg) Order Approving Motion for Admission pro hac vice Gregory V. Demo(Related Doc # 23) Order Signed on 10/17/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #32 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 34 (1 pg) Order Approving Motion for Admission pro hac vice Marc B. Hankin(Related Doc # 24) Order Signed on 10/17/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT |

#33 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.)

| | |
|---|---|
| 12/04/2019 | 🔵 35 (7 pgs) Certificate of Service of: 1) Notice of Hearing on First Day Motions; 2) Notice of Interim Hearing on Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, (C) Authorizing the Liquidation of Securities, (D) Modifying the Automatic Stay, and (E) Scheduling a Final Hearing; and 3) Notice of Agenda for Hearing of First Day Motions Scheduled for October 18, 2019 at 10:00 a.m. (related document(s)11, 12, 13) Filed by Highland Capital Management, L.P.. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #34 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 36 (1 pg) Motion to Appear pro hac vice (John A. Morris). Receipt Number 2635868, Filed by Highland Capital Management, L.P.. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #35 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE](Okafor, M.) |
| 12/04/2019 | 🔵 37 (3 pgs) Notice of Appearance and Request for Notice by Richard B. Levin , Marc B. Hankin , Kevin M. Coen , Curtis S. Miller filed by Interested Party Redeemer Committee of the Highland Crusader Fund . (Miller, Curtis) [ORIGINALLY FILED AS DOCUMENT #36 ON 10/17/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 38 (1 pg) Order Approving Motion for Admission pro hac vice John A. Morris(Related Doc # 35) Order Signed on 10/18/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #38 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 39 (5 pgs) Order (I) Authorizing the Debtor to (A) Pay and Honor Prepetition Compensation, Reimbursable Business Expenses, and Employee Benefit Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (II) Granting Related Relief. (related document(s)2) Order Signed on 10/18/2019. (NAB) [ORIGINALLY FILED AS DOCUMENT #39 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 40 (9 pgs; 2 docs) Interim Order (A) Authorizing the Debtor to Pay Certain Prepetition Claims of Critical Vendors and (B) Granting Related Relief (Related Doc 3) Order Signed on 10/18/2019 (Attachments: # 1 Agreement)) (NAB) Modified Text on 10/21/2019 (LB) [ORIGINALLY FILED AS DOCUMENT #40 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 41 (3 pgs) Notice of Appearance and Request for Notice by Eric Thomas Haitz filed by Debtor Highland Capital Management, L.P.. (Haitz, Eric) |
| 12/04/2019 | 🔵 42 (7 pgs) Interim Order Authorizing (A) Continuance of Existing Cash Management System, (B) Continued Use of the Prime Account, (C) Limited Waiver of Section 345(b) Deposit and Investment Requirements, and (D) Granting Related Relief. (Related Doc 5) Order Signed on 10/18/2019. (JS) Modified Text on 10/21/2019 (LB). [ORIGINALLY FILED AS DOCUMENT #42 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |

| | |
|---|---|
| 12/04/2019 | 🌐 43 (6 pgs) Order Appointing Kurtzman Carson Consultants, LLC as Claims and Noticing Agent for the Debtors Pursuant to 28 U.S.C. §156(C), 11 U.S.C. §105(A), and Local Rule 2002-1(F) (Related Doc # 7) Order Signed on 10/18/2019. (JS) [ORIGINALLY FILED AS DOCUMENT #43 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 44 (3 pgs) Interim Order Authorizing the Debtor to File Under Seal Portions of Its Creditor Matrix Containing Employee Address Information. (Related Doc # 8) Order Signed on 10/18/2019. (JS) [ORIGINALLY FILED AS DOCUMENT #44 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 45 (1 pg) Notice of Appearance and Request for Notice by Elizabeth Weller filed by Irving ISD , Grayson County , Upshur County , Dallas County , Tarrant County , Kaufman County , Rockwall CAD , Allen ISD , Fannin CAD , Coleman County TAD . (Okafor, M.) |
| 12/04/2019 | 🌐 46 (4 pgs) Notice of hearing/*scheduling conference* filed by Debtor Highland Capital Management, L.P. (RE: related document(s)1 Order transferring case number 19-12239 from U.S. Bankruptcy Court for the District of Delaware Filed by Highland Capital Management, L.P. (Okafor, M.)). Status Conference to be held on 12/6/2019 at 09:30 AM at Dallas Judge Jernigan Ctrm. (Haitz, Eric) |
| 12/04/2019 | 🌐 47 (40 pgs; 3 docs) Notice of Service // Notice of Entry of Order on Motion of Debtor for Entry of Order (I) Authorizing the Debtor to (A) Pay and Honor Prepetition Compensation, Reimbursable Business Expenses, and Employee Benefit Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (II) Granting Related Relief (related document(s)2, 39) Filed by Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #47 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 48 (83 pgs; 4 docs) Notice of Service // Notice of Entry of Order on Application for an Order Appointing Kurtzman Carson Consultants LLC as Claims and Noticing Agent for the Debtor Pursuant to 28 U.S.C. §156(C), 11 U.S.C. §105(A), and Local Rule 2002-1(F) (related document(s)7, 43) Filed by Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #48 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) Additional attachment(s) added on 12/9/2019 (Okafor, M.). |
| 12/04/2019 | 🌐 49 (13 pgs; 2 docs) Notice of Hearing // Notice of Motion of Debtor for Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs, and (II) Granting Related Relief (related document(s)4) Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019.(Attachments: # 1 Exhibit 1) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #49 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🌐 50 (37 pgs; 3 docs) Notice of Hearing // Notice of Entry of Interim Order and Final Hearing on Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (B) Granting Related Relief (related document(s)3, 40) Filed by Highland Capital Management, L.P.. Hearing scheduled for |

8/24/2021 Case 19-34054-sgj11 Doc 2767 Filed 08/24/21 CM/ECF Live Database for Northern Texas Entered 08/24/21 12:46:36 Page 49 of 99

Case 3:21-cv-01979-S Document 1-1 Filed 08/24/21 Page 48 of 98 PageID 49

11/7/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #50 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.)

| | |
|---|---|
| 12/04/2019 | 🔵 51 (36 pgs; 3 docs) Notice of Hearing // Notice of Entry of Interim Order and Final Hearing on Motion of Debtor for Entry of Interim and Final Orders Authorizing (A) Continuance of Existing Cash Management System and Brokerage Relationships, (B) Continued Use of the Prime Account, (C) Limited Waiver of Section 345(b) Deposit and Investment Requirements, and (D) Granting Related Relief (related document(s)5, 42) Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019 (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #51 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 52 (22 pgs; 3 docs) Notice of Hearing // Notice of Entry of Interim Order and Final Hearing on Motion of Debtor for Entry of Interim and Final Orders Authorizing Debtor to File Under Seal Portions of Its Creditor Matrix Containing Employee Address Information (related document(s)8, 44) Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #52 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 53 (36 pgs; 2 docs) Notice of Hearing // Notice of Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, (C) Authorizing the Liquidation of Securities, (D) Modifying the Automatic Stay, and (E) Scheduling a Final Hearing (related document(s)6) Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/7/2019 at 03:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 10/31/2019. (Attachments: # 1 Exhibit 1) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #53 ON 10/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔵 54 (7 pgs) Affidavit/Declaration of Service for service of (1) [Signed] Order Approving Motion for Admission pro hac vice Jeffrey N. Pomerantz [Docket No. 29]; (2) [Signed] Order Approving Motion for Admission pro hac vice Maxim B. Litvak [Docket No. 30]; (3) [Signed] Order Approving Motion for Admission pro hac vice Ira D. Kharasch [Docket No. 31]; (4) [Signed] Order Approving Motion for Admission pro hac vice Gregory V. Demo [Docket No. 32]; (5) [Signed] Order Approving Motion for Admission pro hac vice John A. Morris [Docket No. 38]; (6) Notice of Entry of Order on Motion of Debtor for Entry of Order (I) Authorizing the Debtor to (A) Pay and Honor Prepetition Compensation, Reimbursable Business Expenses, and Employee Benefit Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (II) Granting Related Relief [Docket No. 47]; (7) Notice of Entry of Order on Application for an Order Appointing Kurtzman Carson Consultants LLC as Claims and Noticing Agent for Debtor Pursuant to 28 U.S.C. §156(C), 11 U.S.C. §105(A), and Local Rule 2002-1(F) [Docket No. 48]; (8) Notice of Motion of Debtor for Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs, and (II) Granting Related Relief [Docket No. 49]; (9) Notice of Entry of Interim Order and Final Hearing on Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (B) |

Granting Related Relief [Docket No. 50]; (10) Notice of Entry of Interim Order and Final Hearing on Motion of Debtor for Entry of Interim and Final Orders Authorizing (A) Continuance of Existing Cash Management System and Brokerage Relationships, (B) Continued Use of the Prime Account, (C) Limited Waiver of Section 345(b) Deposit and Investment Requirements, and (D) Granting Related Relief [Docket No. 51]; (11) Notice of Entry of Interim Order and Final Hearing on Motion of Debtor for Entry of Interim and Final Orders Authorizing Debtor to File Under Seal Portions of Its Creditor Matrix Containing Employee Address Information [Docket No. 52]; and (12) Notice of Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, (C) Authorizing the Liquidation of Securities, (D) Modifying the Automatic Stay, and (E) Scheduling a Final Hearing [Docket No. 53] (related document(s)29, 30, 31, 32, 38, 47, 48, 49, 50, 51, 52, 53) Filed by Highland Capital Management, L.P. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #55 ON 10/21/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M)

| | |
|---|---|
| 12/04/2019 | 55 (4 pgs; 2 docs) Notice of Appearance and Request for Notice by Josef W. Mintz , John E. Lucian , Phillip L. Lamberson , Rakhee V. Patel filed by Acis Capital Management, L.P. , Acis Capital Management GP, LLC . (Attachments: # 1 Certificate of Service) (Mintz, Josef) [ORIGINALLY FILED AS DOCUMENT #56 ON 10/22/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE](Okafor, M.) |
| 12/04/2019 | 56 (1 pg) Motion to Appear pro hac vice of Rakhee V. Patel of Winstead PC. Receipt Number 3112761165, Filed by Acis Capital Management GP LLC, Acis Capital Management, L.P.. (Mintz, Josef) [ORIGINALLY FILED AS DOCUMENT #57 ON 10/22/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 57 (1 pg) Motion to Appear pro hac vice of Phillip Lamberson of Winstead PC. Receipt Number 3112761165, Filed by Acis Capital Management GP LLC, Acis Capital Management, L.P.. (Mintz, Josef) [ORIGINALLY FILED AS DOCUMENT #58 ON 10/22/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 58 (1 pg) Motion to Appear pro hac vice of John E. Lucian of Blank Rome LLP. Receipt Number 3112548736, Filed by Acis Capital Management GP LLC, Acis Capital Management, L.P.. (Mintz, Josef) [ORIGINALLY FILED AS DOCUMENT #59 ON 10/22/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 59 (4 pgs; 3 docs) Notice of Appearance and Request for Notice by Michael I. Baird filed by Interested Party Pension Benefit Guaranty Corporation . (Attachments: # 1 Certification of United States Government Attorney # 2 Certificate of Service) (Baird, Michael) [ORIGINALLY FILED AS DOCUMENT #60 ON 10/23/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE](Okafor, M.) |
| 12/04/2019 | 60 (1 pg) Order Granting Motion for Admission pro hac vice for Rakhee V. Patel (Related Doc # 57) Order Signed on 10/24/2019. (DRG) [ORIGINALLY FILED AS DOCUMENT #61 ON 10/24/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 61 (1 pg) Order Granting Motion for Admission pro hac vice of John E. Lucian (Related Doc # 59) Order Signed on 10/24/2019. (DRG) [ORIGINALLY FILED AS DOCUMENT |

| | |
|---|---|
| | #62 ON 10/24/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 62 (1 pg) Order Granting Motion for Admission pro hac vice of Phillip Lamberson (Related Doc # 58) Order Signed on 10/24/2019. (DRG) [ORIGINALLY FILED AS DOCUMENT #63 ON 10/24/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 63 (2 pgs) Notice of Appearance and Request for Notice by Michael L. Vild filed by Creditor Patrick Daugherty . (Vild, Michael) [ORIGINALLY FILED AS DOCUMENT #64 ON 10/24/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 64 (1 pg) Notice of Appointment of Creditors' Committee Filed by U.S. Trustee. (Leamy, Jane) [ORIGINALLY FILED AS DOCUMENT #65 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 65 (1 pg) Request of US Trustee to Schedule Section 341 Meeting of Creditors November 20,2019 at 9:30 a.m. Filed by U.S. Trustee. (Leamy, Jane) [ORIGINALLY FILED AS DOCUMENT #66 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 66 (2 pgs) Notice of Meeting of Creditors/Commencement of Case Filed by Highland Capital Management, L.P.. 341(a) meeting to be held on 11/20/2019 at 09:30 AM at J. Caleb Boggs Federal Building, 844 King St., Room 3209, Wilmington, Delaware. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #67 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 67 (27 pgs; 4 docs) Motion to Authorize /Motion of the Debtor for Entry of an Order (I) Authorizing Bradley D. Sharp to Act as Foreign Representative Pursuant to 11 U.S.C. Section 1505 and (II) Granting Related Relief Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019. (Attachments: # 1 Notice # 2 Exhibit A - Proposed Form of Order # 3 Certificate of Service and Service List) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #68 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 68 (48 pgs; 8 docs) Application/Motion to Employ/Retain Foley Gardere, Foley & Lardner LLP as Special Texas Counsel Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B # 4 Exhibit C - Proposed Order # 5 2016 Statement # 6 Declaration Frank Waterhouse # 7 Certificate of Service) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #69 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | 🔘 69 (37 pgs; 7 docs) **WITHDRAWN per #437. Application/Motion to Employ/Retain Lynn Pinker Cox & Hurst LLP as Special Texas Litigation Counsel Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019. (Attachments: # 1 Notice # 2 Exhibit A - Hurst Declaration # 3 Exhibit B - Proposed Order # 4 2016 Statement # 5 Declaration Frank Waterhouse # 6 Certificate of |

| | |
|---|---|
| | service) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #70 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) Modified on 2/11/2020 (Ecker, C.). (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 70 (30 pgs; 7 docs) Application/Motion to Employ/Retain Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019(Attachments: # 1 Notice # 2 Rule 2016 Statement # 3 Declaration of Jeffrey N. Pomerantz in Support # 4 Declaration of Frank Waterhouse # 5 Proposed Form of Order # 6 Certificate of Service and Service List) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #71 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 71 (9 pgs; 2 docs) Notice of Withdrawal of Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, (C) Authorizing the Liquidation of Securities, (D) Modifying the Automatic Stay, and (E) Scheduling a Final Hearing (related document(s)6) Filed by Highland Capital Management, L.P. (Attachments: # 1 Certificate of Service and Service List) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #72 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 72 (28 pgs; 4 docs) Motion for Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019. (Attachments: # 1 Notice # 2 Exhibit A - Proposed Order # 3 Certificate of Service and Service List) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #73 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 73 (41 pgs; 5 docs) Application/Motion to Employ/Retain Kurtzman Carson Consultants as Administrative Advisor Effective Nunc Pro Tunc to the Petition Date Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019. (Attachments: # 1 Notice # 2 Exhibit A - Proposed Order # 3 Exhibit B - Gershbein Declaration # 4 Certificate of Service and Service List) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #74 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 74 (48 pgs; 6 docs) Application/Motion to Employ/Retain Development Specialists, Inc. as Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and Restructuring-Related Services, Nunc Pro Tunc As of the Petition Date Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019. (Attachments: # 1 Notice # 2 Exhibit A - Engagement Letter # 3 Exhibit B - Sharp Declaration # 4 Exhibit C - Proposed Order # 5 Certificate of Service and Service List) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #75 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 75 (37 pgs; 6 docs) Motion to Authorize /Motion for an Order Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the |

| | |
|---|---|
| | Ordinary Course of Business Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019. (Attachments: # 1 Notice # 2 Exhibit A - Proposed Order # 3 Exhibit B - OCP List # 4 Exhibit C - Form of Declaration of Disinterestedness # 5 Certificate of Service and Service List) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #76 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 76  (99 pgs; 6 docs) **WITHDRAWN by # 360** Motion to Approve /Precautionary Motion of the Debtor for Order Approving Protocols for the Debtor to Implement Certain Transactions in the Ordinary Course of Business Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/12/2019. (Attachments: # 1 Notice # 2 Appendix I # 3 Appendix II # 4 Proposed Form of Order # 5 Certificate of Service and Service List) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #77 ON 10/29/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) Modified on 1/16/2020 (Ecker, C.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 77  (2 pgs) Notice of Appearance and Request for Notice by William A. Hazeltine filed by Interested Party Hunter Mountain Trust . (Okafor, M.) (Hazeltine, William) [ORIGINALLY FILED AS DOCUMENT #78 ON 10/30/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.). (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 78  (2 pgs) Notice of Meeting of Creditors/Commencement of Case (Corrected) Filed by Highland Capital Management, L.P.. 341(a) meeting to be held on 11/20/2019 at 09:30 AM at J. Caleb Boggs Federal Building, 844 King St., Room 3209, Wilmington, Delaware. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #79 ON 10/30/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 79  (1 pg) Motion to Appear pro hac vice of Brian P. Shaw of Rogge Dunn Group. Receipt Number 0311-27677, Filed by Acis Capital Management GP LLC, Acis Capital Management, L.P. (Bibiloni, Jose) [ORIGINALLY FILED AS DOCUMENT #80 ON 10/30/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 80  (4 pgs; 2 docs) Amended Notice of Appearance. The party has consented to electronic service. Filed by Acis Capital Management GP LLC, Acis Capital Management, L.P. (Attachments: # 1 Certificate of Service) (Bibiloni, Jose) [ORIGINALLY FILED AS DOCUMENT #81 ON 10/30/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 81  (3 pgs) Notice of Appearance and Request for Notice by Jessica Boelter , Alyssa Russell , Matthew A. Clemente , Bojan Guzina filed by Creditor Committee Official Committee of Unsecured Creditors . (Guzina, Bojan) [ORIGINALLY FILED AS DOCUMENT #82 ON 10/30/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 82  (21 pgs; 2 docs) Initial Reporting Requirements /Initial Monthly Operating Report of Highland Capital Management, LP Filed by Highland Capital Management, L.P.. (Attachments: # 1 Certificate of Service and Service List) (O'Neill, James) [ORIGINALLY |

| | |
|---|---|
| | FILED AS DOCUMENT #83 ON 10/31/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🌐 83  (1 pg) Order Approving Motion for Admission pro hac vice Brian P. Shaw(Related Doc # 80) Order Signed on 11/1/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #84 ON 11/01/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🌐 84  (4 pgs; 2 docs) Notice of Appearance and Request for Notice by Sarah E. Silveira , Michael J. Merchant , Asif Attarwala , Jeffrey E. Bjork filed by Interested Parties UBS AG London Branch , UBS Securities LLC . (Attachments: # 1 Certificate of Service) (Merchant, Michael) [ORIGINALLY FILED AS DOCUMENT #85 ON 11/01/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🌐 85  (159 pgs; 6 docs) Motion to Change Venue/Inter-district Transfer Filed by Official Committee of Unsecured Creditors. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E - Certificate of Service) (Guzina, Bojan) [ORIGINALLY FILED AS DOCUMENT #86 ON 11/01/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🌐 86  (15 pgs; 3 docs) Emergency Motion to Shorten Notice With Respect To The Motion Of Official Committee Of Unsecured Creditors To Transfer Venue Of This Case To The United States Bankruptcy Court For The Northern District Of Texas (related document(s)86) Filed by Official Committee of Unsecured Creditors. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Certificate of Service) (Guzina, Bojan) [ORIGINALLY FILED AS DOCUMENT #87 ON 11/01/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🌐 87  (1 pg) Order Denying Emergency Motion to Shorten Notice With Respect to The Motion of Official Committee of Unsecured Creditors to Transfer Venue of This Case to the United States Bankruptcy Court for the Northern District of Texas (Related Doc # 87) Order Signed on 11/4/2019. (JS) [ORIGINALLY FILED AS DOCUMENT #88 ON 11/04/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🌐 88  (3 pgs) Notice of Appearance. The party has consented to electronic service. Filed by Jefferies LLC. (Bowden, William) [ORIGINALLY FILED AS DOCUMENT #89 ON 11/04/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🌐 89  (1 pg) Motion to Appear pro hac vice of Patrick C. Maxcy. Receipt Number 2770240, Filed by Jefferies LLC. (Bowden, William) [ORIGINALLY FILED AS DOCUMENT #90 ON 11/04/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🌐 90  (1 pg) Motion to Appear pro hac vice of Lauren Macksoud. Receipt Number 2770389, Filed by Jefferies LLC. (Bowden, William) [ORIGINALLY FILED AS DOCUMENT #91 ON 11/04/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🌐 91  (3 pgs) Notice of Appearance. The party has consented to electronic service. Filed by |

| | |
|---|---|
| | INTEGRATED FINANCIAL ASSOCIATES, INC. (Carlyon, Candace) [ORIGINALLY FILED AS DOCUMENT #92 ON 11/04/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 92 (1 pg) Order Approving Motion for Admission pro hac vice Patrick C. Maxcy(Related Doc # 90) Order Signed on 11/5/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #93 ON 11/05/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 93 (1 pg) Order Approving Motion for Admission pro hac vice Lauren Macksoud(Related Doc # 91) Order Signed on 11/5/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #94 ON 11/05/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 94 (11 pgs; 2 docs) HEARING CANCELLED. Notice of Agenda of Matters not going forward. The following hearing has been cancelled. Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/7/2019 at 03:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. (Attachments: # 1 Certificate of Service) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #95 ON 11/05/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 95 (3 pgs; 2 docs) Notice of Appearance. The party has consented to electronic service. Filed by BET Investments, II, L.P.. (Attachments: # 1 Certificate of Service) (Kurtzman, Jeffrey) (Attachments: # 1 Certificate of Service) [ORIGINALLY FILED AS DOCUMENT #96 ON 11/05/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 96 (3 pgs; 2 docs) Certification of Counsel Regarding Order Scheduling Omnibus Hearing Date Filed by Highland Capital Management, L.P.. (Attachments: # 1 Proposed Form of Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #97 ON 11/07/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 98 (1 pg) Order Scheduling Omnibus Hearings. Omnibus Hearings scheduled for 12/17/2019 at 11:00 AM US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Signed on 11/7/2019. (CAS) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #98 ON 11/07/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 101 (17 pgs; 4 docs) Exhibit(s) // Notice of Filing of Amended Exhibit B to Motion for an Order Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized By the Debtor in the Ordinary Course of Business (related document(s)76) Filed by Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Certificate of Service) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #99 ON 11/07/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 102 (8 pgs) Affidavit/Declaration of Service for service of [Signed] Order Scheduling Omnibus Hearing Date [Docket No. 98] (related document(s)98) Filed by Highland Capital Management, L.P.. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #100 ON |

11/07/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE]
(Okafor, M.) (Entered: 12/05/2019)

| | |
|---|---|
| 12/04/2019 | 🔘 103 (10 pgs) Notice of Deposition - Notice to Take Rule 30(b)(6) Deposition Upon Oral Examination of the Debtor, Highland Capital Management, L.P. Filed by Official Committee of Unsecured Creditors. (Guerke, Kevin) [ORIGINALLY FILED AS DOCUMENT #101 ON 11/10/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 104 (2 pgs) Notice of Deposition of Frank Waterhouse Filed by Official Committee of Unsecured Creditors. (Guerke, Kevin) [ORIGINALLY FILED AS DOCUMENT #102 ON 11/10/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 106 (2 pgs) Notice of Service - Notice of Intent to Serve Subpoena Filed by Official Committee of Unsecured Creditors. (Guerke, Kevin) [ORIGINALLY FILED AS DOCUMENT #103 ON 11/10/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 107 (10 pgs; 2 docs) Notice of Substitution of Counsel Filed by Alvarez & Marsal CRF Management, LLC, as Investment Manager of the Highland Crusader Funds. (Attachments: # 1 Certificate of Service) (Ryan, Jeremy) [ORIGINALLY FILED AS DOCUMENT #104 ON 11/11/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 108 (3 pgs) Amended Notice of Appearance. The party has consented to electronic service. Filed by Official Committee of Unsecured Creditors. (Beach, Sean) . [ORIGINALLY FILED AS DOCUMENT #105 ON 11/11/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 110 (1 pg) Motion to Appear pro hac vice Of Bojan Guzina of Sidley Austin LLP. Receipt Number 2775584, Filed by Official Committee of Unsecured Creditors. (Beach, Sean) [ORIGINALLY FILED AS DOCUMENT #106 ON 11/11/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 111 (1 pg) Motion to Appear pro hac vice of Alyssa Russell of Sidley Austin LLP. Receipt Number 2620330, Filed by Official Committee of Unsecured Creditors. (Beach, Sean)[ORIGINALLY FILED AS DOCUMENT #107 ON 11/11/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 112 (1 pg) Motion to Appear pro hac vice of Matthew A. Clemente of Sidley Austin LLP. Receipt Number 2775584, Filed by Official Committee of Unsecured Creditors. (Beach, Sean) [ORIGINALLY FILED AS DOCUMENT #108 ON 11/11/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 113 (1 pg) Motion to Appear pro hac vice of Paige Holden Montgomery. Receipt Number 2775584, Filed by Official Committee of Unsecured Creditors. (Beach, Sean) [ORIGINALLY FILED AS DOCUMENT #109 ON 11/11/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |

| | |
|---|---|
| 12/04/2019 | (1 pg) Motion to Appear pro hac vice of Penny P. Reid of Sidley Austin. Receipt Number 2775584, Filed by Official Committee of Unsecured Creditors. (Beach, Sean) [ORIGINALLY FILED AS DOCUMENT #110 ON 11/11/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 115 (1 pg) Order Approving Motion for Admission pro hac vice Bojan Guzina(Related Doc # 106) Order Signed on 11/12/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #111 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 116 (1 pg) Order Approving Motion for Admission pro hac vice Alyssa Russell (Related Doc # 107) Order Signed on 11/12/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #112 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 117 (1 pg) Order Approving Motion for Admission pro hac vice Matthew A. Clemente (Related Doc # 108) Order Signed on 11/12/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #113 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 118 (1 pg) Order Approving Motion for Admission pro hac vice Paige Holden(Related Doc # 109) Order Signed on 11/12/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #114 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 119 (1 pg) Order Approving Motion for Admission pro hac vice Penny P. Reid(Related Doc # 110) Order Signed on 11/12/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #115 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 120 (94 pgs; 11 docs) Limited Objection to the Debtors: (I) Application for an Order Authorizing the Retention and Employment of Foley Gardere, Foley & Lardner LLP as Special Texas Counsel, Nunc Pro Tunc to the Petition Date; and (II) Application for an Order Authorizing the Retention and Employment of Lynn Pinker Cox & Hurst LLP as Special Texas Litigation Counsel, Nunc Pro Tunc to the Petition Date (related document(s)69, 70) Filed by Acis Capital Management GP LLC, Acis Capital Management, L.P. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Certificate of Service) (Mintz, Josef) [ORIGINALLY FILED AS DOCUMENT #116 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 121 (26 pgs; 3 docs) Limited Objection and Reservation of Rights of Jefferies LLC to Debtor's Motion for Order Approving Protocols for the Debtor to Implement Certain Transactions in the Ordinary Course of Business (related document(s)77) Filed by Jefferies LLC (Attachments: # 1 Exhibit A # 2 Certificate of Service) (Bowden, William) [ORIGINALLY FILED AS DOCUMENT #117 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 122 (27 pgs) Objection of the Debtor to Motion of Official Committee of Unsecured Creditors to Transfer Venue of This Case to the United States Bankruptcy Court for the Northern District of Texas (related document(s)86) Filed by Highland Capital Management, L.P. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #118 ON 11/12/2019 IN |

U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.)
(Entered: 12/05/2019)

| | |
|---|---|
| 12/04/2019 | 🔘 123  (5 pgs) Limited Objection to Motion of the Debtor for an Order Authorizing the Debtor to Retain, Employee, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business (related document(s)76) Filed by Official Committee of Unsecured Creditors (Weissgerber, Jaclyn) [ORIGINALLY FILED AS DOCUMENT #119 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 124  (6 pgs) **WITHDRAWN per # 456** Limited Objection to the Debtor's Application for an Order Authorizing the Retention and Employment of Foley Gardere, Foley & Lardner LLP and Lynn Pinker Cox & Hurst as Special Texas Counsel and Special Litigation Counsel, Nunc Pro Tunc to the Petition Date (related document(s)69, 70) Filed by Official Committee of Unsecured Creditors (Weissgerber, Jaclyn) [ORIGINALLY FILED AS DOCUMENT #120 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) Modified on 2/19/2020 (Ecker, C.). (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 125  (4 pgs) Limited Objection to the Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (B) Granting Related Relief (related document(s)3) Filed by Official Committee of Unsecured Creditors (Weissgerber, Jaclyn) [ORIGINALLY FILED AS DOCUMENT #121 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 126  (11 pgs) Joinder to Motion of the Official Committee of Unsecured Creditors For an Order Transferring Venue of this Case to the United States Bankruptcy Court for the Northern District of Texas (related document(s)86) Filed by Acis Capital Management GP LLC, Acis Capital Management, L.P.. (Mintz, Josef) [ORIGINALLY FILED AS DOCUMENT #122 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE](Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 127  (12 pgs; 3 docs) Motion to File Under Seal of the Omnibus Objection of the Official Committee of Unsecured Creditors to the Debtors (I) Motion for Final Order Authorizing Continuance of the Existing Cash Management System, (II) Motion to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, and (III) Precautionary Motion for Approval of Protocols for Ordinary Course Transactions Filed by Official Committee of Unsecured Creditors. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 11/19/2019. (Attachments: # 1 Notice # 2 Proposed Form of Order) [ORIGINALLY FILED AS DOCUMENT #123 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 128 [SEALED in Delaware Bankruptcy Court] Omnibus Objection to the Debtor's (I) Motion for Final Order Authorizing Continuance of the Existing Cash Management System, (II) Motion to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, and (III) Precautionary Motion for Approval of Protocols for "Ordinary Course" Transactions (related document(s)5, 75, 77, 123) Filed by Official Committee of Unsecured Creditors (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) (Weissgerber, Jaclyn) [ORIGINALLY FILED AS DOCUMENT #124 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |

| | |
|---|---|
| 12/04/2019 | 130 (162 pgs; 6 docs) Objection to the Debtor's (I) Motion for Final Order Authorizing Continuance of the Existing Cash Management System, (II) Motion to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, and (III) Precautionary Motion for Approval of Protocols for "Ordinary Course" Transactions (Redacted) (related document(s)5, 75, 77, 123, 124) Filed by Official Committee of Unsecured Creditors (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E)(Weissgerber, Jaclyn) [ORIGINALLY FILED AS DOCUMENT #125 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 131 (2 pgs) Notice of Service of Discovery Filed by Official Committee of Unsecured Creditors. (Guerke, Kevin) [ORIGINALLY FILED AS DOCUMENT #126 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 132 (5 pgs) Objection Motion of Debtor for Entry of Order Authorizing Debtor to File Under Seal Portions of Creditor Matrix Containing Employee Address Information (related document(s)8) Filed by U.S. Trustee (Leamy, Jane) [ORIGINALLY FILED AS DOCUMENT #127 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 133 (7 pgs) Certificate of Service of Objection of the Debtor to Motion of Official Committee of Unsecured Creditors to Transfer Venue of This Case to the United States Bankruptcy Court for the Northern District of Texas (related document(s)118) Filed by Highland Capital Management, L.P.. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #128 ON 11/12/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE](Okafor, M.) Modified text on 12/5/2019 (Okafor, M.). (Entered: 12/05/2019) |
| 12/04/2019 | 134 (5 pgs) Certificate of Service of Acis's Joinder in Motion to Transfer Venue (related document(s)122) Filed by Acis Capital Management GP LLC, Acis Capital Management, L.P.. (Mintz, Josef) [ORIGINALLY FILED AS DOCUMENT #129 ON 11/13/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 135 (7 pgs; 2 docs) Objection U.S. Trustee's Objection to the Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Provide a Chief Restructuring Officer, Additional Personnel and Financial Advisory and Restructuring Related Services, Nunc Pro Tunc as of the Petition Date (related document(s)75) Filed by U.S. Trustee (Attachments: # 1 Certificate of Service)(Leamy, Jane) [ORIGINALLY FILED AS DOCUMENT #130 ON 11/13/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 136 (1 pg) Certificate of Service of United States Trustees Objection to Motion of Debtor for Entry of Order Authorizing Debtor to File Under Seal Portions of Creditor Matrix Containing Employee Address Information (related document(s)127) Filed by U.S. Trustee. (Leamy, Jane) [ORIGINALLY FILED AS DOCUMENT #131 ON 11/13/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 137 (17 pgs; 3 docs) Certification of Counsel Regarding Debtor's Motion Pursuant to Sections 105(A), 330 and 331 of the Bankruptcy Code for Administrative Order Establishing |

| | Procedures for the Interim Compensation and Reimbursement of Expenses of Professionals (related document(s)73) Filed by Highland Capital Management, L.P.. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Blackline Order)(O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #132 ON 11/13/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
|---|---|
| 12/04/2019 | 138 (17 pgs; 2 docs) Certificate of No Objection Regarding Debtor's Application for Authorization to Employ and Retain Kurtzman Carson Consultants LLC as Administrative Advisor Effective Nunc Pro Tunc to the Petition Date (related document(s)74) Filed by Highland Capital Management, L.P.. (Attachments: # 1 Exhibit A - Proposed Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #133 ON 11/13/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 139 (5 pgs; 2 docs) Certificate of No Objection Regarding Motion of the Debtor for Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs, and (II) Granting Related Relief (related document(s)4) Filed by Highland Capital Management, L.P.. (Attachments: # 1 Exhibit A - Proposed Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #134 ON 11/13/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 140 (2 pgs) Notice of Appearance. The party has consented to electronic service. Filed by Crescent TC Investors, L.P.. (Held, Michael) [ORIGINALLY FILED AS DOCUMENT #135 ON 11/14/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 141 (6 pgs) ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMI3URSEMENT OF EXPENSES OF PROFESSIONALS(Related Doc # 73) Order Signed on 11/14/2019. (DRG) [ORIGINALLY FILED AS DOCUMENT #136 ON 11/14/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 142 (14 pgs) ORDER AUTHORIZING THE DEBTOR TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS ADMINISTRATIVE ADVISOR EFFECTIVE NUNC PRO TUNC TO THE PETITION DATE (Related Doc # 74) Order Signed on 11/14/2019. (DRG) [ORIGINALLY FILED AS DOCUMENT #137 ON 11/14/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 143 (2 pgs) ORDER (I) EXTENDING TIME TO FILE SCHEDULES OF ASSETS AND LIABILITIES, SCHEDULES OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND STATEMENTOF FINANCIAL AFFAIRS, AND (II) GRANTING RELATED RELIEF (Related Doc # 4) Order Signed on 11/14/2019. (DRG) [ORIGINALLY FILED AS DOCUMENT #138 ON 11/14/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 144 (3 pgs) Notice of Appearance. The party has consented to electronic service. Filed by Intertrust Entities. (Desgrosseilliers, Mark) [ORIGINALLY FILED AS DOCUMENT #139 ON 11/14/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |

| | |
|---|---|
| 12/04/2019 | 145 (5 pgs) Notice of Appearance. The party has consented to electronic service. Filed by CLO Entities. (Desgrosseilliers, Mark) [ORIGINALLY FILED AS DOCUMENT #140 ON 11/14/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 146 (11 pgs) Notice of Deposition Upon Oral Examination Under Rules 30 and 30(b)(6) of the Debtor, Highland Capital Management, L.P. Filed by Official Committee of Unsecured Creditors. (Guerke, Kevin) [ORIGINALLY FILED AS DOCUMENT #141 ON 11/15/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 147 (18 pgs; 2 docs) Notice of Agenda of Matters Scheduled for Hearing Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware (Attachments: # 1 Certificate of Service) [ORIGINALLY FILED AS DOCUMENT #142 ON 11/15/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 148 (7 pgs) Affidavit/Declaration of Service for service of (1) [Signed] Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 136]; (2) [Signed] Order Authorizing the Debtor to Employ and Retain Kurtzman Carson Consultants LLC as Administrative Advisor Effective Nunc Pro Tunc to the Petition Date [Docket No. 137]; and (3) [Signed] Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs, and (II) Granting Related Relief [Docket No. 138] (related document(s)136, 137, 138) Filed by Highland Capital Management, L.P.. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #143 ON 11/15/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 149 (2 pgs) Notice of Hearing regarding Motion to Change Venue/Inter-district Transfer (related document(s)86, 87, 88) Filed by Official Committee of Unsecured Creditors. Hearing scheduled for 12/2/2019 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. (Beach, Sean) [ORIGINALLY FILED AS DOCUMENT #144 ON 11/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 150 (9 pgs; 2 docs) Notice of Rescheduled 341 Meeting (related document(s)67, 79) Filed by Highland Capital Management, L.P.. 341(a) meeting to be held on 12/3/2019 at 10:30 AM (check with U.S. Trustee for location) (Attachments: # 1 Certificate of Service) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #145 ON 11/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 151 (17 pgs; 2 docs) Agenda of Matters Scheduled for Telephonic Hearing (related document(s)142) Filed by Highland Capital Management, L.P.. Hearing scheduled for 11/19/2019 at 12:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware.(Attachments: # 1 Certificate of Service) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #146 ON 11/18/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 152 (2 pgs) Notice of Appearance. The party has consented to electronic service. Filed by |

| | |
|---|---|
| | CLO Holdco, Ltd.. (Kane, John) [ORIGINALLY FILED AS DOCUMENT #149 ON 11/19/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 153 (2 pgs) Amended Notice of Deposition of Frank Waterhouse Filed by Official Committee of Unsecured Creditors. (Guerke, Kevin) [ORIGINALLY FILED AS DOCUMENT #150 ON 11/19/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 154 (3 pgs) Notice of Appearance and Request for Notice by Sally T. Siconolfi , Joseph T. Moldovan filed by Interested Party Meta-e Discovery, LLC . (Moldovan, Joseph) [ORIGINALLY FILED AS DOCUMENT #152 ON 11/20/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 156 (4 pgs) Affidavit/Declaration of Service regarding Notice of Hearing regarding Motion to Change Venue/Inter-district Transfer (related document(s)144) Filed by Official Committee of Unsecured Creditors. (Beach, Sean) [ORIGINALLY FILED AS DOCUMENT #153 ON 11/20/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 158 (5 pgs; 2 docs) Motion to Appear pro hac vice of Annmarie Chiarello of Winstead PC. Receipt Number 0311-27843, Filed by Acis Capital Management GP LLC, Acis Capital Management, L.P.. (Bibiloni, Jose) [ORIGINALLY FILED AS DOCUMENT #154 ON 11/20/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) Additional attachment(s) added on 12/5/2019 (Okafor, M.). (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 159 (2 pgs; 2 docs) Order Approving Motion for Admission pro hac vice Annmarie Chiarello (Related Doc # 154) Order Signed on 11/21/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #155 ON 11/21/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) Additional attachment(s) added on 12/5/2019 (Okafor, M.). (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 162 (8 pgs) Reply in Support of Motion to Transfer Venue of This Case to the United States Bankruptcy Court for the Northern District of Texas (related document(s)86, 118) Filed by Official Committee of Unsecured Creditors (Beach, Sean) [ORIGINALLY FILED AS DOCUMENT #156 ON 11/21/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 163 (7 pgs) Reply in Support of the Motion of the Official Committee of Unsecured Creditors For an Order Transferring Venue of this Case to the United States Bankruptcy Court for the Northern District of Texas (related document(s)86, 118, 122, 156) Filed by Acis Capital Management GP LLC, Acis Capital Management, L.P. (Mintz, Josef) [ORIGINALLY FILED AS DOCUMENT #157 ON 11/21/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 164 (4 pgs) Response of the Debtor to Acis's Joinder to Motion to Transfer Venue (related document(s)86, 122) Filed by Highland Capital Management, L.P. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #158 ON 11/21/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔘 165 (265 pgs; 11 docs) Omnibus Reply In Support of (I) Application for an Order |

Authorizing the Retention and Employment of Foley Gardere, Foley & Lardner as Special
Texas Counsel Nunc Pro Tunc to the Petition Date; and (II) Application for an Order
Authorizing the Retention and Employment of Lynn Pinker Cox & Hurst LLP as Special
Texas Litigation Counsel Nunc Pro Tunc to Petition Date (related document(s)69, 70, 116,
120) Filed by Highland Capital Management, L.P.(Attachments: # 1 Exhibit A # 2 Exhibit B
# 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9
Exhibit I # 10 Exhibit J) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #159
ON 11/21/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE]
(Okafor, M.) Modified text on 12/5/2019 (Okafor, M.). (Entered: 12/05/2019)

| | |
|---|---|
| 12/04/2019 | 🔵 166 (46 pgs; 5 docs) Omnibus Reply of the Debtor in Support of: (1) Motion for Final Order Authorizing Continuance of the Existing Cash Management System, (II) Motion to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, and (III) Precautionary Motion for Approval of Protocols for Ordinary Course Transactions (related document(s)5, 75, 77) Filed by Highland Capital Management, L.P. (Attachments: # 1 Exhibit A - Redline Order Approving Ordinary Course Protocols Motion # 2 Exhibit B - Redline Order Approving Cash Management Motion # 3 Exhibit C - Redline Order Approving DSI Retention Motion # 4 Exhibit D - Summary of Intercompany Transactions) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #160 ON 11/21/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 168 (8 pgs) Certificate of Service of 1) Response of the Debtor to Acis's Joinder to Motion to Transfer Venue; 2) Omnibus Reply In Support of (I) Application for an Order Authorizing the Retention and Employment of Foley Gardere, Foley & Lardner as Special Texas Counsel Nunc Pro Tunc to the Petition Date, and (II) Application for an Order Authorizing the Retention and Employment of Lynn Pinker Cox & Hurst LLP; and 3) Omnibus Reply of the Debtor in Support of: (I) Motion for Final Order Authorizing Continuance of the Existing Cash Management System, (II) Motion to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, and (III) Precautionary Motion for Approval of Protocols for Ordinary Course Transactions (related document(s)158, 159, 160) Filed by Highland Capital Management, L.P.. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #161 ON 11/22/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 169 (16 pgs; 4 docs) Exhibit(s) // Notice of Filing of Second Amended Exhibit B to Motion for an Order Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized By the Debtor in the Ordinary Course of Business (related document(s)76, 99) Filed by Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Certificate of Service) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #162 ON 11/25/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 170 (15 pgs; 3 docs) Certification of Counsel Regarding Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (B) Granting Related Relief (related document(s)3, 40) Filed by Highland Capital Management, L.P..(Attachments: # 1 Exhibit A # 2 Exhibit B) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #163 ON 11/25/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 171 (19 pgs; 3 docs) **WITHDRAWN** - 11/26/2019. SEE DOCKET # 165. Certification of Counsel Regarding Motion for an Order Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtor in the Ordinary |

Course of Business (related document(s)76, 99, 162) Filed by Highland Capital Management, L.P. (Attachments: # 1 Exhibit A # 2 Exhibit B) (O'Neill, James) Modified on 11/26/2019 (DMC). [ORIGINALLY FILED AS DOCUMENT #164 ON 11/25/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019)

| | |
|---|---|
| 12/04/2019 | 🔵 172  (2 pgs) Notice of Withdrawal of Certification of Counsel Regarding Motion for an Order Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized By the Debtor in the Ordinary Course of Business (related document(s)164) Filed by Highland Capital Management, L.P.. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #165 ON 11/26/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 173  (29 pgs; 3 docs) Certification of Counsel Regarding Motion for an Order Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized By the Debtor in the Ordinary Course of Business (related document(s)76, 99, 162) Filed by Highland Capital Management, L.P (Attachments: # 1 Exhibit A # 2 Exhibit B)(O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #166 ON 11/26/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 174  (17 pgs; 2 docs) Notice of Agenda of Matters Scheduled for Hearing Filed by Highland Capital Management, L.P.. Hearing scheduled for 12/2/2019 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. (Attachments: # 1 Certificate of Service) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #167 ON 11/26/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 175  (5 pgs) FINAL ORDER (A) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND (B) GRANTING RELATED RELIEF (Related document(s) 3, 40) Signed on 11/26/2019. (DRG) [ORIGINALLY FILED AS DOCUMENT #168 ON 11/26/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 176  (12 pgs; 2 docs) ORDER PURSUANT TO SECTIONS 105(A), 327, 328, AND 330 OF THE BANKRUPTCY CODE AUTH0RIZING THE DEBTOR TO RETAIN, EMPLOY, AND COMPENSATE CERTAIN PROFESSIONALSUTILIZED BY THE DEBTORS IN THE ORDINARY COURSE OF BUSINESS (Related Doc # 76, 99, 162) Order Signed on 11/26/2019. (Attachments: # 1 Exhibit A) (DRG) [ORIGINALLY FILED AS DOCUMENT #169 ON 11/26/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 177  (24 pgs; 3 docs) Motion to Authorize Motion of the Debtor for Entry of an Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations Under Employee Bonus Plans and Granting Related Relief Filed by Highland Capital Management, L.P.. Hearing scheduled for 12/17/2019 at 11:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 12/10/2019. (Attachments: # 1 Exhibit A - Proposed Order # 2 Notice) [ORIGINALLY FILED AS DOCUMENT #170 ON 11/26/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 178  (32 pgs; 3 docs) Supplemental Declaration in Support of Jeffrey N. Pomerantz in Support of Application Pursuant to Section 327(a) of the Bankruptcy Code, Rule 2014 of the |

| | |
|---|---|
| | Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date (related document(s)71) Filed by Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1 # 2 Certificate of Service) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #171 ON 11/26/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE(Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | ⦿ 179 (11 pgs; 3 docs) Certification of Counsel Regarding Debtor's Application Pursuant to Section 327(A) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date (related document(s)71) Filed by Highland Capital Management, L.P.. (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit B - Blackline Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #172 ON 11/26/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE](Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | ⦿ 180 (58 pgs; 6 docs) Application/Motion to Employ/Retain Mercer (US) Inc. as Compensation Consultant Filed by Highland Capital Management, L.P.. Hearing scheduled for 12/17/2019 at 11:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. Objections due by 12/10/2019. (Attachments: # 1 Notice # 2 Exhibit A - Proposed Order # 3 Exhibit B - Declaration of John Dempsey in Support # 4 Exhibit C - Highland Key Employee Incentives # 5 Certificate of Service and Service List)(O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #173 ON 11/26/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | ⦿ 181 (7 pgs) Certificate of Service and Service List for service of Motion of the Debtor for Entry of an Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations Under Employee Bonus Plans and Granting Related Relief [Docket No. 170] (related document(s)170) Filed by Highland Capital Management, L.P.. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #174 ON 11/27/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | ⦿ 182 (18 pgs; 2 docs) Amended Notice of Agenda of Matters Scheduled for Hearing (related document(s)167) Filed by Highland Capital Management, L.P.. Hearing scheduled for 12/2/2019 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware (Attachments: # 1 Certificate of Service)(O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #175 ON 11/27/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | ⦿ 183 (3 pgs) ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE, RULE 2414 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL RULE 2014-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF PACHULSKI TANG ZIEHL & JONES LLP AS COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION NUNC PRO TUNC TO THE PETITION DATE (Related Doc # 71) Order Signed on 12/2/2019. (DRG) [ORIGINALLY FILED AS DOCUMENT #176 ON 12/02/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | ⦿ 184 (6 pgs) Certification of Counsel Regarding Order Transferring Venue of This Case to the United States Bankruptcy Court for the Northern District of Texas (related |

| | document(s)86) Filed by Official Committee of Unsecured Creditors. (Weissgerber, Jaclyn) [ORIGINALLY FILED AS DOCUMENT #182 ON 12/03/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
|---|---|
| 12/04/2019 | 🔵 185  (8 pgs) Affidavit/Declaration of Service for service of (1) [Signed] Final Order (A) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (B) Granting Related Relief [Docket No. 168]; (2) [Signed] Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtor to Retain, Employ and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course of Business [Docket No. 169]; and (3) [Signed] Order Pursuant to Section 327(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 Authorizing the Employment and Retention of Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date [Docket No. 176] (related document(s)168, 169, 176) Filed by Highland Capital Management, L.P.. (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #183 ON 12/03/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 186  (2 pgs) ORDER TRANSFERRING VENUE OF THIS CASE TO THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS (related document(s)86) Order Signed on 12/4/2019. (CAS) [ORIGINALLY FILED AS DOCUMENT #184 ON 12/04/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/04/2019 | 🔵 187  (118 pgs) Certificate of Service re: 1) Notice of Chapter 11 Bankruptcy Case; and 2) [Corrected] Notice of Chapter 11 Bankruptcy Case (related document(s)67, 79) Filed by Kurtzman Carson Consultants LLC. (Kass, Albert) ( [ORIGINALLY FILED AS DOCUMENT #185 ON 12/04/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) (Entered: 12/05/2019) |
| 12/05/2019 | 🔵 97  (3 pgs) Motion to appear pro hac vice for Bojan Guzina. Fee Amount $100 Filed by Creditor Committee Official Committee of Unsecured Creditors (Hoffman, Juliana) |
| 12/05/2019 | Receipt of filing fee for Motion to Appear pro hac vice(19-34054-sgj11) [motion,mprohac] ( 100.00). Receipt number 27228141, amount $ 100.00 (re: Doc# 97). (U.S. Treasury) |
| 12/05/2019 | 🔵 99  (2 pgs) Notice of Appearance and Request for Notice by Linda D. Reece filed by Wylie ISD, Garland ISD, City of Garland. (Reece, Linda) |
| 12/05/2019 | 🔵 100  (3 pgs) Motion to appear pro hac vice for Matthew A. Clemente. Fee Amount $100 Filed by Creditor Committee Official Committee of Unsecured Creditors (Hoffman, Juliana) |
| 12/05/2019 | 🔵 105  (3 pgs) Motion to appear pro hac vice for Alyssa Russell. Fee Amount $100 Filed by Creditor Committee Official Committee of Unsecured Creditors (Hoffman, Juliana) |
| 12/05/2019 | Receipt of filing fee for Motion to Appear pro hac vice(19-34054-sgj11) [motion,mprohac] ( 100.00). Receipt number 27228455, amount $ 100.00 (re: Doc# 100). (U.S. Treasury) |
| 12/05/2019 | Receipt of filing fee for Motion to Appear pro hac vice(19-34054-sgj11) [motion,mprohac] ( 100.00). Receipt number 27228455, amount $ 100.00 (re: Doc# 105). (U.S. Treasury) |
| 12/05/2019 | 🔵 109  (3 pgs) Motion to appear pro hac vice for Ira D. Kharasch. Fee Amount $100 Filed by Debtor Highland Capital Management, L.P. (Haitz, Eric) |

| | |
|---|---|
| 12/05/2019 | Receipt of filing fee for Motion to Appear pro hac vice(19-34054-sgj11) [motion,mprohac] ( 100.00). Receipt number 27228644, amount $ 100.00 (re: Doc# 109). (U.S. Treasury) |
| 12/05/2019 | 129 (1 pg) Notice of Appearance and Request for Notice by Laurie A. Spindler filed by City of Allen, Allen ISD, Dallas County, Grayson County, Irving ISD, Kaufman County, Tarrant County. (Spindler, Laurie) |
| 12/05/2019 | 155 (3 pgs) Notice of Appearance and Request for Notice by Mark A. Platt filed by Interested Party Redeemer Committee of the Highland Crusader Fund. (Platt, Mark) |
| 12/05/2019 | 157 (3 pgs) Motion to appear pro hac vice for Marc B. Hankin. Fee Amount $100 Filed by Interested Party Redeemer Committee of the Highland Crusader Fund (Platt, Mark) |
| 12/05/2019 | 160 (5 pgs; 2 docs) Motion to appear pro hac vice for Richard Levin. Fee Amount $100 Filed by Interested Party Redeemer Committee of the Highland Crusader Fund (Attachments: # 1 Addendum) (Platt, Mark) |
| 12/05/2019 | 161 (3 pgs) Motion to appear pro hac vice for Terri L. Mascherin. Fee Amount $100 Filed by Interested Party Redeemer Committee of the Highland Crusader Fund (Platt, Mark) |
| 12/05/2019 | Receipt of filing fee for Motion to Appear pro hac vice(19-34054-sgj11) [motion,mprohac] ( 100.00). Receipt number 27229964, amount $ 100.00 (re: Doc# 157). (U.S. Treasury) |
| 12/05/2019 | Receipt of filing fee for Motion to Appear pro hac vice(19-34054-sgj11) [motion,mprohac] ( 100.00). Receipt number 27229964, amount $ 100.00 (re: Doc# 160). (U.S. Treasury) |
| 12/05/2019 | Receipt of filing fee for Motion to Appear pro hac vice(19-34054-sgj11) [motion,mprohac] ( 100.00). Receipt number 27229964, amount $ 100.00 (re: Doc# 161). (U.S. Treasury) |
| 12/05/2019 | 167 (3 pgs) Motion to appear pro hac vice for Gregory V. Demo. Fee Amount $100 Filed by Debtor Highland Capital Management, L.P. (Haitz, Eric) |
| 12/05/2019 | Receipt of filing fee for Motion to Appear pro hac vice(19-34054-sgj11) [motion,mprohac] ( 100.00). Receipt number 27230422, amount $ 100.00 (re: Doc# 167). (U.S. Treasury) |
| 12/05/2019 | 188 (4 pgs) Notice of Appearance and Request for Notice by Juliana Hoffman filed by Creditor Committee Official Committee of Unsecured Creditors. (Hoffman, Juliana) |
| 12/06/2019 | 189 (3 pgs) Motion to appear pro hac vice for Jeffrey N. Pomerantz. Fee Amount $100 Filed by Debtor Highland Capital Management, L.P. (Haitz, Eric) |
| 12/06/2019 | Receipt of filing fee for Motion to Appear pro hac vice(19-34054-sgj11) [motion,mprohac] ( 100.00). Receipt number 27233957, amount $ 100.00 (re: Doc# 189). (U.S. Treasury) |
| 12/06/2019 | 190 (3 pgs) Amended Motion to appear pro hac vice for Jeffrey N. Pomerantz. (related document: 189) Filed by Debtor Highland Capital Management, L.P. (Haitz, Eric) |
| 12/06/2019 | 191 (3 pgs) Motion to appear pro hac vice for John A. Morris. Fee Amount $100 Filed by Debtor Highland Capital Management, L.P. (Haitz, Eric) |

| | |
|---|---|
| 12/06/2019 | Receipt of filing fee for Motion to Appear pro hac vice(19-34054-sgj11) [motion,mprohac] ( 100.00). Receipt number 27233983, amount $ 100.00 (re: Doc# 191). (U.S. Treasury) |
| 12/06/2019 | 🌀 192 (2 pgs) INCORRECT ENTRY - Incorrect Event Used; Refiled as Document 220. Motion to withdraw as attorney (Eric T. Haitz) Filed by Debtor Highland Capital Management, L.P. (Haitz, Eric) Modified on 12/9/2019 (Dugan, S.). Modified on 12/9/2019 (Dugan, S.). |
| 12/06/2019 | 🌀 193 Hearing held on 12/6/2019., Hearing continued (RE: related document(s)1 Order transferring case number 19-12239 from U.S. Bankruptcy Court for the District of Delaware Filed by Highland Capital Management, L.P.,) (Continued Hearing to be held on 12/12/2019 at 09:30 AM Dallas Judge Jernigan Ctrm for 1, (Edmond, Michael) |
| 12/06/2019 | 🌀 194 Hearing held on 12/6/2019., Hearing continued (RE: related document(s)1 Order transferring case number 19-12239 from U.S. Bankruptcy Court for the District of Delaware Filed by Highland Capital Management, L.P. (Okafor, M.)) Hearing to be held on 12/12/2019 at 09:30 AM Dallas Judge Jernigan Ctrm for 1, (Appearances: C. Gibbs, introducing J. Pomerantz and I. Kharasch for Debtor (also J. Morris on phone); M. Clemente and P. Reid for Official Committee of Unsecured Creditors; B. Shaw for Axis; M. Platt for Redeemer Committee of Crusader Fund (also on phone M. Hankin and T. Mascherin); M. Rosenthal for Alvarez and Marsal; P. Maxcy (telephonically) for Jeffries; L. Lambert for UST. Nonevidentiary status conference. Court heard reports about case, parties, and ongoing discussions regarding corporate governance. Schedules will be filed next 12/13/19. At request of parties, another status conference is set for 12/12/19 at 9:30 am (telephonic participation will be allowed if requested). At current time, parties are not requesting that pending motions be set.) (Edmond, Michael) |
| 12/06/2019 | 🌀 195 (1 pg) Request for transcript regarding a hearing held on 12/6/2019. The requested turn-around time is hourly. (Edmond, Michael) |
| 12/06/2019 | 🌀 196 (1 pg) Order granting motion to appear pro hac vice adding Bojan Guzina for Official Committee of Unsecured Creditors (related document # 97) Entered on 12/6/2019. (Banks, Courtney) |
| 12/06/2019 | 🌀 197 (1 pg) Order granting motion to appear pro hac vice adding Matthew A. Clemente for Official Committee of Unsecured Creditors (related document # 100) Entered on 12/6/2019. (Banks, Courtney) |
| 12/06/2019 | 🌀 198 (1 pg) Order granting motion to appear pro hac vice adding Alyssa Russell for Official Committee of Unsecured Creditors (related document # 105) Entered on 12/6/2019. (Banks, Courtney) |
| 12/06/2019 | 🌀 199 (1 pg) Order granting motion to appear pro hac vice adding Ira D Kharasch for Highland Capital Management, L.P. (related document # 109) Entered on 12/6/2019. (Banks, Courtney) |
| 12/06/2019 | 🌀 200 (1 pg) Order granting motion to appear pro hac vice adding Richard B. Levin for Redeemer Committee of the Highland Crusader Fund (related document # 160) Entered on 12/6/2019. (Banks, Courtney) |
| 12/06/2019 | 🌀 201 (1 pg) Order granting motion to appear pro hac vice adding Terri L. Mascherin for |

| | Redeemer Committee of the Highland Crusader Fund (related document # 161) Entered on 12/6/2019. (Banks, Courtney) |
|---|---|
| 12/06/2019 | ⦿ 202 (1 pg) Order granting motion to appear pro hac vice adding Gregory V Demo for Highland Capital Management, L.P. (related document # 167) Entered on 12/6/2019. (Banks, Courtney) |
| 12/06/2019 | ⦿ 203 (1 pg) Order granting motion to appear pro hac vice adding Marc B. Hankin for Redeemer Committee of the Highland Crusader Fund (related document # 157) Entered on 12/6/2019. (Banks, Courtney) |
| 12/06/2019 | ⦿ 204 (44 pgs) INCORRECT ENTRY: DRAFT OF MOTION. SEE DOCUMENT 206. Application to employ Sidley Austin LLP as Attorney *APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO SECTIONS 328 AND 1103 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014, FOR AN ORDER APPROVING THE RETENTION AND EMPLOYMENT OF SIDLEY AUSTIN LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, NUNC PRO TUNC TO OCTOBER 29, 2019* Filed by Creditor Committee Official Committee of Unsecured Creditors (Hoffman, Juliana) Modified on 12/18/2019 (Rielly, Bill). |
| 12/06/2019 | ⦿ 205 (37 pgs) Application to employ FTI CONSULTING, INC. as Financial Advisor *APPLICATION PURSUANT TO FED. R. BANKR. P. 2014(a) FOR ORDER UNDER SECTION 1103 OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS NUNC PRO TUNC TO NOVEMBER 6, 2019* Filed by Creditor Committee Official Committee of Unsecured Creditors (Hoffman, Juliana) |
| 12/06/2019 | ⦿ 206 (44 pgs) Application to employ Sidley Austin LLP as Attorney *APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO SECTIONS 328 AND 1103 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014, FOR AN ORDER APPROVING THE RETENTION AND EMPLOYMENT OF SIDLEY AUSTIN LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, NUNC PRO TUNC TO OCTOBER 29, 2019* (related document: 204) Filed by Creditor Committee Official Committee of Unsecured Creditors (Hoffman, Juliana) Modified on 12/18/2019 (Rielly, Bill). |
| 12/06/2019 | ⦿ 220 (2 pgs) Withdrawal filed by Debtor Highland Capital Management, L.P. (RE: related document(s)41 Notice of appearance and request for notice). (Dugan, S.) (Entered: 12/09/2019) |

Highland seeks to have at least two entities held in civil contempt of two bankruptcy court orders and imposed with sanctions: Charitable DAF Fund, L.P. ("DAF") and CLO Holdco, Ltd. ("CLO Holdco") (collectively, the "Alleged Contemnors"). Highland also seeks to have a law firm that has recently begun representing the Alleged Contemnors (Sbaiti & Company PLLC) held in civil contempt of the bankruptcy court, as well as any control-persons who authorized the Alleged Contemnors ("Authorizing Persons") to take the allegedly contemptuous actions.

_First, who are these Alleged Contemnors?_ DAF[3] is alleged to be a charitable fund and a limited company that was formed in the Cayman Islands. DAF is the 100% owner of CLO Holdco, which is also a Cayman Islands entity. Thus, DAF controls CLO Holdco.[4] DAF was founded by Highland's former Chief Executive Officer ("CEO") and indirect beneficial equity owner—Mr. James Dondero ("Mr. Dondero"). DAF controls $200 million of assets, which asset base was derived from Highland, Mr. Dondero, Mr. Dondero's family trusts, or other donor trusts.[5] Mr. Dondero has historically been DAF's informal investment advisor (without an agreement), and he was DAF's managing member until 2012.[6] In 2012, an individual named Grant Scott (a patent lawyer with no experience in finance or running charitable organizations, who was Mr. Dondero's long-time friend, college housemate, and best man at his wedding) became DAF's managing member.[7] Then, Grant Scott resigned from that role, on or around January 31, 2021, after apparent

---

[3] The acronym "DAF" stands for donor advised fund.

[4] Debtor's Exh. 25 [DE # 2410]. CLO Holdco has sometimes been referred to as the "investment arm" of the DAF organizational structure. Transcript of 6/8/21 Hearing at 122:17-20.

[5] Transcript 6/8/21 Hearing at 98:3-99:15 (testimony that the donors "gave up complete dominion and control over the respective assets and at that time claimed a federal income tax donation for that").

[6] _Id._ at 149:16-150:2.

[7] _Id._ at 150:3-5; 154:11-24; 156:7-10. _See also_ Debtor's Exh. 23 (Grant Scott Deposition 1/21/21) at 24-25; 28:21 ("I think he is my closest friend") [DE # 2410].

disagreements with Mr. Dondero. After having no manager for a couple of months, an individual named Mark Patrick ("Mr. Patrick") became DAF's general manager on March 24, 2021 (just 19 days before the events occurred that are the subject of this contempt matter). It appears that Mr. Scott assigned his interests that undergirded his managing member role to Mr. Patrick at Mr. Patrick's direction.[8] Mr. Patrick was an employee of Highland (having had some sort of a "tax counsel" role—but not in Highland's legal department) from 2008 until early 2021, and he now is an employee of Highgate Consultants, d/b/a Skyview Group, which is an entity recently created by certain former Highland employees.[9] Mr. Patrick had no prior experience running a charitable organization prior to becoming DAF's manager on March 24, 2021 (just like Grant Scott).[10] He testified that he "hold[s] [him]self out as a tax professional versant on setting up offshore master fund structures."[11]

What were the allegedly contemptuous actions? DAF and CLO Holdco filed: (a) on April 12, 2021, a Complaint[12] ("Complaint") in the United States District Court for the Northern District of Texas (the "District Court Action"), against the Debtor and two Debtor-controlled entities (*i.e.,* Highland HCF Advisor, Ltd. ("Highland HCFA") and Highland CLO Funding, Ltd. ""HCLOF"));[13] and then (b) one week later, on April 19, 2021, filed a motion for leave to amend

---

[8] Debtor's Exh. 24 at 90-93 [DE # 2410].

[9] Transcript from 6/8/21 Hearing, at 95:18-97:2 [DE # 2440].

[10] *Id.* at 100:2-103:9. For further clarity, above the Cayman Islands structure for DAF and CLO Holdco, there are various foundations that hold "participation shares." *Id.* Mr. Dondero is president and director of those foundations. Debtor's Exh. 23 at 57.

[11] *Id.* at 144:7-8.

[12] Debtor's Exh. 12 [DE # 2410].

[13] Highland HCFA is a Cayman Islands limited company 100% owned by the Debtor. HCLOF is a limited company incorporated under the laws of Guernsey. It is 49.02% owned by CLO Holdco and the remaining 50%+ is owned by the Debtor or Debtor's designee, as a result of the HarbourVest Settlement, as further explained herein.

the Complaint to add the Debtor's current CEO, James P. Seery, Jr. ("Mr. Seery") as a defendant in the action (the "Seery Motion").[14] *It is the Seery Motion that is primarily in controversy here.* Note that in the original Complaint, Mr. Seery is named as a "potential party"[15] and, while not nominally a party, he was mentioned approximately 50 times, by this court's count. Mr. Seery's conduct is plastered throughout the Complaint, accusing him of deceitful, improper conduct. *The original Complaint does not mention that Highland is still in bankruptcy, nor that the claims asserted in the Complaint are related to a bankruptcy case pursuant to 28 U.S.C. § 1334, but, rather, asserts that federal subject matter jurisdiction exists in the District Court pursuant to 28 U.S.C. §§ 1331 & 1367.*

As will be explained further below, the District Court Action—which in some ways reads like a minority shareholder suit[16]—is all about the alleged impropriety of a settlement (*i.e.,* the "HarbourVest Settlement") that was proposed by the Debtor to the bankruptcy court in December 2020[17] and approved by the bankruptcy court (with notice to all creditors and after an evidentiary hearing) on January 14, 2021.[18] "HarbourVest" was a collective of investors that had invested approximately $80 million in the year 2017 into the defendant-entity herein known as HCLOF (acquiring a 49.98% interest in it), and filed six proofs of claim against the Debtor in the bankruptcy case, totaling $300 million, alleging that the Debtor had committed fraud back in 2017, in

---

[14] Debtor's Exh. 19 [DE # 2410].

[15] Debtor's Exh. 12 [DE # 2410], ¶ 6.

[16] Indeed, as alluded to in footnote 13 above, CLO Holdco is a minority shareholder (49.02%) of one of the Defendants, HCLOF, and HCLOF is now more than 50% owned by the Debtor or its designee as a result of the HarbourVest Settlement—a fact that CLO Holdco and DAF apparently do not like.

[17] Declaration of John Morris (Exhs. 1 & 2 attached thereto) [DE # 2237].

[18] " HarbourVest" refers to the collective of HarbourVest Dover Street IX Investment, L.P., HarbourVest 2017 Global AIF, L.P., HarbourVest 2017 Global Fund, L.P., HV International VIII Secondary, L.P., and HarbourVest Skew Base AIF, L.P.

connection with its encouraging HarbourVest to invest in and acquire the 49.98% interest in HCLOF. The Debtor and HarbourVest eventually negotiated a settlement of HarbourVest's proofs of claim which, in pertinent part, allowed HarbourVest a $45 million general unsecured claim in the bankruptcy case and involved HarbourVest transferring its 49.98% interest in defendant HCLOF to the Debtor or Debtor's designee.[19] The bankruptcy court approved this settlement as fair and equitable and in the best interests of the bankruptcy estate.[20]

Despite the full vetting in the bankruptcy court of the HarbourVest Settlement and an order approving the HarbourVest Settlement, which was not appealed by DAF or CLO Holdco,[21] various torts and other causes of action are now being alleged by DAF and CLO Holdco against the Debtor *relating entirely to the HarbourVest Settlement*, including: breach of fiduciary duties owed to DAF and CLO Holdco; breach of the HCLOF membership agreement, and an alleged right of first refusal provision therein; negligence; violations of RICO;[22] and tortious interference. In a nutshell, the gravamen of DAF's and CLO Holdco's Complaint is that the economics of the HarbourVest Settlement resulted in the Debtor obtaining HarbourVest's 49.98% in HCLOF for a value of $22.5 million, and DAF and CLO Holdco believe that the 49.98% interest was worth far more than this. DAF and CLO Holdco assert that they and HarbourVest were deceived. Somewhat shockingly to

---

[19] Declaration of John Morris (Exhs. 1 & 2 attached thereto) [DE # 2237]. HarbourVest basically wanted to rescind its earlier acquisition of the 49.98% to extract itself from Highland.

[20] Declaration of John Morris (Exh. 11 attached thereto) [DE # 2237].

[21] *Id.* The court notes that certain family trusts of Mr. Dondero (known as the Dugaboy and Get Good Trusts) did appeal the bankruptcy court order approving the HarbourVest Settlement. However, there was no stay pending appeal and the settlement was implemented.

[22] Shockingly, DAF and CLO Holdco state that Highland's "actions (performed through Seery and others) constitute violations of the federal wire fraud, mail fraud, fraud in connection with a case under Title 11, and/or securities fraud laws, pursuant to 18 U.S.C. § 1961(1)(B) and (D)." Debtor's Exh. 12, [DE # 2410], at ¶ 117.

this court, the Complaint implies that information was withheld from DAF and CLO Holdco.[23] DAF and CLO Holdco further argue that they should have been given the opportunity to purchase HarbourVest's 49.98% interest in HCLOF. Mr. Seery is alleged to be the chief perpetrator of wrongdoing. Subsequently, in the Seery Motion, in which DAF and CLO Holdco seek leave to amend the Complaint to add Mr. Seery to the District Court Action, DAF and CLO Holdco were clear for the first time that there is a "pending Chapter 11 proceeding" and disclosed to the District Court that they did not name Mr. Seery in the Complaint since the bankruptcy court "issued an order prohibiting the filing of any causes of action against Seery in any way related to his role at [Highland], subject to certain prerequisites. In that order, the bankruptcy court also asserted 'sole jurisdiction' over all such causes of action."[24] DAF and CLO Holdco went on to state that the bankruptcy court's order "exceeds the bankruptcy court's powers and is unenforceable," but even if enforceable, in an abundance of caution, DAF and CLO Holdco are satisfying the bankruptcy court's mandates by asking the ***District Court*** for leave to sue Mr. Seery, since the bankruptcy court's powers are derivative from the District Court.[25]

Disturbingly, one of the Alleged Contemnors (CLO Holdco) objected to the HarbourVest Settlement during the bankruptcy case[26] and later withdrew its objection during the bankruptcy

---

[23] Mr. Dondero and CLO Holdco appeared at and examined the HarbourVest witness, Michael Pugatch, at a deposition before the hearing on the HarbourVest Settlement. Declaration of John Morris, Exhs. 7 & 8 thereto [DE # 2237]. Moreover, it is rather astounding to this court for anyone to suggest that any human being (Mr. Seery or anyone else) knew more, or withheld, any information that wasn't ***well known*** to Mr. Dondero and all principals/agents of DAF and CLO Holdco. Mr. Dondero and any personnel associated with DAF and CLO Holdco were as (or more) familiar with HCLOF's assets and their potential value than any human beings on the planet—having managed these assets for years. As one example, it has been represented to the court that HCLOF owns shares in MGM Holdings, Inc. ("MGM"). It is undisputed that Mr. Dondero sits on the MGM Board of Directors. *See* DE # 2236, n.14.

[24] Debtor's Exh. 17 [DE # 2410] at paragraph 2, p. 1.

[25] *Id.* at paragraph 3, pp. 1-2; & pp.5-8.

[26] Declaration of John Morris (Exh. 6 attached thereto) [DE # 2237].

court hearing regarding the settlement,[27] and did not appeal the order approving the HarbourVest Settlement. CLO Holdco, in its later-withdrawn objection, made the very same argument that it now makes in Count 2 of the Complaint (in its breach of HCLOF membership agreement claim)—*i.e.,* that the Debtor committed a breach of a "right of first refusal" in the HCLOF membership agreement (in fact, this was the sole argument CLO Holdco made in its objection).[28] The Debtor and CLO Holdco submitted briefing on the alleged "right of first refusal" prior to the hearing on the HarbourVest Settlement, and the bankruptcy court spent a fair amount of time reviewing the briefing—only to learn on the morning of the hearing that CLO Holdco was withdrawing its objection.

In any event, the Debtor now alleges that the District Court Action is not only an improper collateral attack on the bankruptcy court's order approving the HarbourVest Settlement, but—more germane to this civil contempt matter—the motion to amend the District Court Action to add Mr. Seery is a violation of *two* earlier bankruptcy court orders[29] that contained "***gatekeeper provisions***"—*i.e.,* specific provisions ***requiring parties to seek bankruptcy court approval before filing lawsuits against the persons controlling the Debtor***. These gatekeeper provisions—which the bankruptcy court considered to be both (a) a way to maintain control of potentially vexatious, distracting litigation (which might interfere with the reorganization effort), and (b) consistent with the United States Supreme Court case of *Barton v. Barbour,*[30] and some of its progeny (as well as

---

[27] Declaration of John Morris (Exh. 10 attached thereto), Transcript of 1/14/21 Hearing, at 7:20-8:6 [DE # 2237]. Note that two family trusts of Mr. Dondero had objected to the HarbourVest Settlement (in addition to Mr. Dondero personally), but they made clear at the January 14, 2021 Hearing on the HarbourVest Settlement that they were not asserting that the HCLOF membership agreement (or an alleged right of first refusal therein) was being violated by the HarbourVest Settlement. *Id.* at 22:5-20.

[28] Declaration of John Morris (Exh. 6 attached thereto) [DE # 2237].

[29] Debtor's Exh. 15 & 16 [DE # 2410].

[30] 104 U.S. 126 (1881).

the second sentence of 28 U.S.C. § 959(a))—were heavily negotiated in the case and significant, since they were put in place against a backdrop of contentious litigation. ***No one appealed the two bankruptcy court orders with the gatekeeper provisions***. There were still more gatekeeping provisions in the Debtor's Chapter 11 plan that the bankruptcy court confirmed on February 22, 2021 (that plan is on appeal at the Fifth Circuit, although the Fifth Circuit has denied a stay pending appeal; at the time of the hearing on this civil contempt matter, the plan had not yet gone effective).

Objections to the Debtor's request to have the Alleged Contemnors, the Alleged Contemnors' lawyers, and Authorizing Persons held in civil contempt of court were filed by DAF, CLO Holdco, Sbaiti & Company, PLLC,[31] by Mr. Patrick,[32] and by Mr. Dondero.[33] They argue that the Alleged Contemnors have not violated the bankruptcy court's prior orders containing gatekeeper provisions because the Alleged Contemnors have ***not actually sued*** Mr. Seery but, rather, have sought permission from the District Court to sue him. They argue that, even though the January 2020 Corporate Governance Order and July 2020 Seery CEO Order required parties to seek bankruptcy court permission to sue Mr. Seery, that seeking ***District Court*** permission is appropriate, since district courts actually have bankruptcy subject matter jurisdiction and bankruptcy courts are mere units of the district courts. Moreover, the Alleged Contemnors suggest that the bankruptcy court's gatekeeper provisions in the two orders ***exceeded the reach of its powers***, and, again, their Seery Motion was simply about asking the court with original bankruptcy subject matter jurisdiction (*i.e.,* the District Court) for authority to sue Mr. Seery.

---

[31] DE # 2313.

[32] DE # 2309.

[33] DE # 2312.

The bankruptcy court held an evidentiary hearing on the civil contempt matter on June 8, 2021. For the reasons set forth below, the court finds and concludes that DAF, CLO Holdco, Sbaiti & Company, PLLC (and its lawyers Jonathan Bridges and Mazin Sbaiti), Mr. Patrick, and Mr. Dondero are all in civil contempt of at least two bankruptcy court orders of which they had knowledge and were well aware. They shall each be jointly and severally liable for the sum of **$239,655** as a compensatory sanction for their civil contempt, and they will be purged from their contempt if they pay this amount within 15 days of entry of this Order. Moreover, the court will add on a sanction of **$100,000** for each level of rehearing, appeal, or petition for *certioriari* that the Alleged Contemnors may choose to take with regard to this Order, to the extent any such motions for rehearing, appeals, or petitions for *certiorari* are not successful.

## II.     Background.

A brief summary of the above-referenced bankruptcy case can be found in this court's Memorandum and Opinion issued June 7, 2021, regarding an earlier contempt motion that involved Mr. Dondero and different allegedly contemptuous actions.[34] This court will not repeat that summary herein but will hit some of the most pertinent highlights.

Bankruptcy Filing. On October 16, 2019 (the "Petition Date"), Highland filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Highland is a registered investment advisor that manages billions of dollars of assets. Highland's assets are spread out in numerous, separate fund vehicles. While the Debtor has continued to operate and manage its business as a debtor-in-possession, the role of Mr. Dondero *vis-à-vis* the Debtor was significantly limited early in the bankruptcy case and ultimately terminated. The Debtor's current CEO, Mr. Seery, was selected by the creditors and approved by the bankruptcy court during the Chapter 11 case.

---

[34] Adversary Proceeding No. 20-03190, [DE # 190].

Corporate Governance Shake-Up. Specifically, early in the case, the Official Unsecured Creditors Committee (the "UCC")—whose members asserted well over $1 billion worth of claims and whose members had been in litigation with Highland for many years in many courts—and the U.S. Trustee ("UST") both desired to have a Chapter 11 Trustee appointed in Highland's bankruptcy case—absent some major change in corporate governance—due to conflicts of interest and the alleged self-serving, improper acts of Mr. Dondero and possibly other former officers. Under this pressure, the Debtor negotiated a term sheet and settlement with the UCC, which was executed by Mr. Dondero and approved by a bankruptcy court order on January 9, 2020 (the "January 2020 Corporate Governance Order").[35] The settlement and term sheet contemplated a ***complete overhaul of the corporate governance structure of the Debtor***. Mr. Dondero resigned from his role as an officer and director of the Debtor and of the Debtor's general partner. Three new independent directors (the "Independent Board") were appointed to govern the Debtor's general partner—Strand Advisors, Inc. ("Strand")—which, in turn, manages the Debtor. All of the new Independent Board members were selected by the UCC and are very experienced within either the industry in which the Debtor operates, restructuring, or both. The three Independent Board members are: Retired Bankruptcy Judge Russell Nelms; John Dubel; and Mr. Seery. As noted above, one of the Independent Board members, Mr. Seery, was ultimately appointed as the Debtor's new CEO and CRO on July 16, 2020 (the "July 2020 Seery CEO Order").[36] To be clear, Highland—during the bankruptcy case and still now—is governed by these wholly new,

---

[35] *See* Debtor's Exh. 15 [DE # 2410]. The exact title and location on the Bankruptcy Docket for this Order is: Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course [DE # 339].

[36] *See* Debtor's Exh. 16 [DE # 2410]. The exact title and location on the Bankruptcy Docket for this Order is: Order Approving Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Retention of James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative Nunc Pro Tunc to March 15, 2020 [DE # 854].

Independent Board members who had no prior connection to Highland. They were brought in to build trust with creditors and to hopefully put an end to a litigation culture that permeated Highland.

As for Mr. Dondero, while not originally contemplated as part of the January 2020 Corporate Governance Settlement, the Debtor proposed at the hearing on the January 2020 Corporate Governance Settlement that Mr. Dondero remain on as an unpaid employee of the Debtor and also continue to serve as a portfolio manager for certain separate **non-Debtor** investment vehicles/entities whose funds are managed by the Debtor. The court approved this arrangement when the UCC ultimately did not oppose it. Mr. Dondero's authority with the Debtor was subject to oversight by the Independent Board,[37] and Mr. Seery was given authority to oversee the day-to-day management of the Debtor, including the purchase and sale of assets held by the Debtor and its subsidiaries, as well as the purchase and sale of assets that the Debtor manages for various separate non-Debtor investment vehicles/entities.

Eventually, the Debtor's new Independent Board concluded that it was untenable for Mr. Dondero to continue to be employed by the Debtor in any capacity because of conflicts and friction on many issues. Mr. Dondero's employment arrangement with the Debtor ceased in October 2020, but the termination of his employment was not the end of the friction between the Debtor and Mr. Dondero. In fact, a week after his termination, litigation posturing and disputes began erupting between Mr. Dondero and certain of his related entities, on the one hand, and the Debtor on the other.

---

[37] "Mr. Dondero's responsibilities in such capacities shall in all cases be as determined by the Independent Directors . . . [and] will be subject at all times to the supervision, direction and authority of the Independent Directors. In the event the Independent Directors determine for any reason that the Debtor shall no longer retain Mr. Dondero as an employee, Mr. Dondero agrees to resign immediately upon such determination." *See* Debtor's Exh. 15 (paragraph 8 therein). [DE # 2410].

<u>Plan Confirmation</u>. The bankruptcy court confirmed a Chapter 11 plan on February 22, 2021. The plan was supported by the UCC and an overwhelming dollar amount of creditors. Mr. Dondero and certain entities related to him objected to the plan and have appealed the Confirmation Order. Mr. Seery remains as the executive of the Debtor, and will continue to serve in that role, under a specific structure established in the plan and accompanying documents (with oversight by the court and creditor representatives).

III. **The Impetus for this Second Civil Contempt Matter.**

A. <u>The Orders</u>.

The subject of this second civil contempt matter is, primarily, two orders ***that were never appealed***: (a) the January 2020 Corporate Governance Order; and (b) the July 2020 Seery CEO Order—both referenced above.[38]

B. <u>The Gatekeeper Provisions in the Two Orders</u>.

As mentioned above, these orders contained certain provisions that are sometimes referred to as "gatekeeper" provisions. These "gatekeeper" protections require litigants to obtain the bankruptcy court's approval before suing certain protected parties in control of the Debtor for actions arising in the course of their duties, including Mr. Seery.

Paragraph 10 of the January 2020 Corporate Governance Order provided:

> No entity may commence or pursue a claim or cause of action of any kind against any Independent Director, any Independent Director's agents, or any Independent Director's advisors relating in any way to the Independent Director's role as an independent director of Strand without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Independent Director, any Independent Director's agents, or any Independent Director's advisors and (ii) specifically authorizing such entity to bring such claim. The Court will have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

---

[38] Debtor's Exhs. 15 & 16. The HarbourVest Settlement Order described above is likewise significant to this analysis (also not appealed by the Alleged Contemnors).

Similarly, paragraph 5 of the July 2020 Seery CEO Order provided:

No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

Despite these gatekeeper provisions, on April 12, 2021, the Alleged Contemnors, through new counsel (*i.e.,* different from the lawyers who represented them during the Bankruptcy Case previously) filed the District Court Action and promptly thereafter filed the Seery Motion asking the District Court for permission to add him as a defendant.

C.  A Few Words About Gatekeeper Provisions.

Gatekeeper provisions are not uncommon in the world of bankruptcy. There are multiple decisions from the Northern District of Texas[39] (as well as other districts)[40] approving gatekeeper

---

[39] *See, e.g., In re Pilgrim's Pride Corp.,* 2010 Bankr. LEXIS 72 (Bankr. N.D. Tex. Jan. 14, 2010) (bankruptcy court channeled to itself exclusive jurisdiction to hear claims against debtors' management (including their boards of directors and chief restructuring officer) and the professionals based upon their conduct in pursuit of their responsibilities during the chapter 11 cases.); *see also In re CHC Group, Ltd.* (Case No. 16-31854, Bankr. N.D. Tex.) Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization [DE # 1671-1, attached to Findings of Fact and Conclusions of Law, and Order Confirming the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization], Section 10.8(b) at 57 (court retained *exclusive* jurisdiction to hear claims against any "Protected Party," including any claims "in connection with or arising out of . . . the administration of this Plan or the property to be distributed under this Plan, . . . or the transactions in furtherance of the foregoing, . . . .") (emphasis added); *see also Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233 (5th Cir. 1988) (bankruptcy court must determine that claim is colorable before authorizing a committee to sue in the stead of the debtor).

[40] *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 546 B.R. 284 (Bankr. S.D.N.Y. 2016) (bankruptcy court acts as gatekeeper to determine whether claims of certain creditors against certain Madoff feeder funds are direct claims (claims which may be brought by the creditor) or derivative claims (claims which either can only be brought by the Madoff post-confirmation liquidating trust or have already been settled by the trust)); *In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015) (discussing bankruptcy court's gatekeeper function over GM ignition switch cases); *In re Motors Liquidation Co.,* 568 B.R. 217 (Bankr. S.D.N.Y. 2017) (same). The use of the gatekeeper structure in the General Motors cases is particularly noteworthy. The causes of action arising from defective ignition switches are based on state tort law – both product liability and personal injury – and are causes of action unquestionably outside the jurisdiction of a bankruptcy court to hear on the merits. Nevertheless, the General Motors bankruptcy court acted as the gatekeeper post-confirmation to determine whether such litigation should proceed against the estate of the old debtor or the asset purchaser under the confirmed plan.

provisions that either: (a) granted exclusive jurisdiction in the bankruptcy court to hear matters challenging the actions of debtors' officers and directors arising from their conduct in the bankruptcy cases; or (b) at least granted power to a bankruptcy court to determine whether such matters could go forward.[41]

Bankruptcy courts frequently determine that the "Barton Doctrine" supports gatekeeper provisions and may, by analogy, sometimes be applied to executives and independent directors of debtors in possession. The "Barton Doctrine" originated from an old Supreme Court case[42] dealing with receivers. The "Barton Doctrine" was eventually expanded in bankruptcy jurisprudence to apply to bankruptcy trustees. As this court once noted regarding the "Barton Doctrine":

> [It] provides that, as a general rule, before a suit may be brought against a trustee, leave of the appointing court (*i.e.*, the bankruptcy court) must be obtained. The Barton doctrine is not an immunity doctrine but—strange as this may sound— has been held to be a jurisdictional provision (in other words, a court will not have subject matter jurisdiction to adjudicate a suit against a trustee unless and until the bankruptcy court has granted leave for the lawsuit to be filed).[43]

Courts have articulated numerous rationales for having this jurisdictional gatekeeping doctrine. One is that, because a "trustee in bankruptcy is an officer of the court that appoints him,"[44] the appointing court "has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties."[45] Another rationale is that the leave requirement

---

[41] *See Villegas v. Schmidt*, 788 F.3d 156, 158-59 (5th Cir. 2015) (under "Barton Doctrine," litigant must still seek authority from the bankruptcy court that appointed the trustee before filing litigation even if the bankruptcy court may not have jurisdiction to adjudicate the underlying claim).

[42] *Barton v. Barbour*, 104 U.S. 126 (1881).

[43] *Baron v. Sherman (In re Ondova Ltd. Co.)*, 2017 Bankr. LEXIS 325, *29 (Bankr. N.D. Tex. February 1, 2017); report and recommendation adopted, *Baron v. Sherman (In re Ondova Co.)*, 2018 U.S. Dist. LEXIS 13439 (N.D. Tex. Jan. 26, 2018), *aff'd, In re Ondova Ltd.*, 2019 U.S. App. LEXIS 3493 (5th Cir. 2019).

[44] *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996).

[45] *Id.*

"enables the bankruptcy court to maintain control over the estate and furthers the goal of centralizing all creditors' claims so they can be efficiently administered."[46] Yet other courts have expressed an underlying reason for the doctrine is to maintain a panel of competent and qualified trustees and to ensure efficient administration of bankruptcy estates: Without the leave requirement, "trusteeship w[ould] become a more irksome duty" and it would become "harder for courts to find competent people to appoint as trustees. Trustees w[ould] have to pay higher malpractice premiums" and "this w[ould] make the administration of bankruptcy estates more expensive."[47] Finally, another policy concern underlying the doctrine is a concern for the overall integrity of the bankruptcy process and the threat of trustees being distracted from or intimidated from doing their jobs. For example, losers in the bankruptcy process might turn to other courts to try to become winners there—by alleging the trustee did a negligent job.[48] The Fifth Circuit has recently recognized the continuing vitality of the "Barton Doctrine"—even after *Stern v. Marshall*[49] (that is, even in a scenario in which the appointing bankruptcy court might not itself have Constitutional authority to **adjudicate** the claims asserted against the trustee pursuant to the *Stern* decision).[50]

To be clear, the "Barton Doctrine" originated as a protection for federal receivers, but courts expanded the concept to bankruptcy trustees, and eventually it has been applied to various court-appointed and court-approved fiduciaries and their agents in bankruptcy cases, including debtors in

---

[46] *In re Ridley Owens, Inc.*, 391 B.R. 867, 871 (Bankr. N.D. Fla. 2008).

[47] *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) (citing *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998)). *See also generally* 1 COLLIER ON BANKRUPTCY 10-4 & 10-5 (Alan R. Resnick and Henry J. Sommer, eds., 16th Ed. 2016).

[48] *Linton*, 136 F.3d at 545-546.

[49] *Stern v. Marshall*, 564 U.S. 462 (2011).

[50] *See Villegas v. Schmidt,* 788 F.3d 156, 58-59 (5th Cir. 2015).

possession,[51] officers and directors of a debtor,[52] and the general partner of a debtor.[53] In the Highland case, since Mr. Seery and the Independent Directors were proposed by the UCC to avoid the appointment of a trustee, it seemed rather obvious to the bankruptcy court that they should have similar protections from suit—particularly against the backdrop of a litigation culture at Highland that had theretofore existed.

DAF and CLO Holdco argue that the gatekeeper provisions that are involved here run afoul of 28 USC § 959(a) and are an inappropriate extension of the "Barton Doctrine" and, more generally, they argue that the January 2020 Corporate Governance Order and July 2020 Seery CEO Order simply went too far by precluding claims being asserted against Mr. Seery that are lesser than gross negligence and willful misconduct—suggesting that precluding claims lesser than gross negligence and willful misconduct (such as a mere negligence claim) would violate federal law (the Investment Advisors Act) because Mr. Seery cannot contract away his fiduciary duties in this regard.

Putting aside for the moment the fact that the January 202 Corporate Governance Order and the July 2020 Seery CEO Order are final and nonappealable orders that have *res judicata* effect, DAF and CLO Holdco are simply wrong about 28 U.S.C. § 959(a) and the unavailability of the "Barton Doctrine" in a situation such as this. 28 U.S.C. § 959(a) states:

---

[51] *Helmer v. Pogue*, 2012 U.S. Dist. LEXIS 151262 (N.D. Ala. Oct. 22, 2012) (applying Barton Doctrine to debtor in possession); *see also* 11 U.S.C §§ 1107(a) (providing that a debtor in possession has all the rights and duties of a trustee and serves in the same fiduciary capacity).

[52] *See Carter v. Rodgers*, 220 F.3d 1249, 1252 & n.4 (11th Cir. 2000) (debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer for acts done in the actor's official capacity, and finding no distinction between a "bankruptcy-court-appointed officer" and officers who are "approved" by the court); *Hallock v. Key Fed. Sav. Bank (In re Silver Oak Homes)*, 167 B.R. 389 (Bankr. D. Md. 1994) (president of debtor).

[53] *Gordon v. Nick*, 1998 U.S. App. LEXIS 21519 (4th Cir. 1998) (managing partner of debtor).

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. ***Such actions shall be subject to the general equity of such court*** so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury. (Emphasis added.)

To be sure, this statute has long been recognized as a limited exception to the "Barton Doctrine," so that trustees and debtors in possession can be sued for postpetition torts or other causes of action that happen to occur in the ***ordinary course of operating a business*** (as opposed to actions of the trustee while engaged in the general administration of the case)—the classic example being a "slip and fall" personal injury suit that might occur on the premises of a business that a trustee or debtor in possession is operating.[54] However, DAF and CLO Holdco ignore the last sentence of the statute that gives the appointing court the equitable powers to control the litigation "as the same may be necessary to the ends of justice." This is precisely what a gatekeeper provision is all about.[55]

But as earlier noted, DAF and CLO Holdco are too late to argue about the legality or enforceability of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order. The Fifth Circuit has made clear that, if a party fails to object to or appeal a final order—even one that grants relief that may be outside of a bankruptcy court's jurisdiction—the order is *res judicata* as to parties who had the opportunity to object to it. It becomes the law of the case and is

---

[54] *E.g., Muratore v. Darr*, 375 F.3d 140, 144 (1st Cir. 2004) (section 959(a) "is intended to 'permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store'") (quoting *Carter v. Rodgers*, 220 F.3d 1249, 1254 (11th Cir. 2000)). *See also Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996); *In re Am. Associated Sys., Inc.*, 373 F. Supp. 977, 979 (E.D. Ky. 1974).

[55] The court further notes anecdotally that DAF and CLO Holdco demanded a jury trial in their Complaint, and they have alluded to this as a reason why it was appropriate to bring their suit in the District Court. But it appears they contractually waived their jury trial rights in a prepetition agreement with Highland. *See* DE # 2495, Ex. A thereto, ¶14(f).

not subject to collateral attack.[56] The Supreme Court has more recently stated this principle in the bankruptcy context in *United Student Aid Funds, Inc. v. Espinosa.*[57]

In summary, there can be no doubt that there are two binding, nonappealable final orders[58] that govern in the situation at bar. Not only were they wholly proper but parties are now bound by them regardless.

### IV. The Evidence at the June 8, 2021 Hearing.

The bankruptcy court held an evidentiary hearing on the civil contempt matter on June 8, 2021. The court considered the Declaration of John Morris (with Exhibits 1-18 thereto), at DE # 2237; Debtor's Exhibits 12-55, at DE ## 2410 & 2421; Exhibits 1, 3-12, 15-28, 30-46 of DAF, CLO Holdco, and Mr. Patrick at DE ## 2411 & 2420; and the live witness testimony of Mr. Patrick and Mr. Dondero.

There really is very little, if anything, in dispute. No one disputes the existence of the January 2020 Corporate Governance Order or the July 2020 Seery CEO Order or the Harbourvest Settlement. No one disputes the existence of the District Court Action or the Seery Motion. Thus, all that the court heard at the June 8, 2021 hearing that was "new," beyond what was in the pleadings and documents, was the explanations/rationales given by those involved with filing the District Court Action and the Seery Motion.

---

[56] *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987).

[57] 130 S. Ct. 1367 (2010) (order confirming Chapter 13 plan, that improperly proposed to discharge a student loan without a hardship adversary proceeding, was not void where there had been no objection or appeal).

[58] DAF and CLO Holding presented a case at the June 8, 2021 hearing suggesting the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order might not have been final orders. The case dealt with an employment order under Section 327 of the Bankruptcy Code, and this court does not believe it was applicable here.

Mr. Patrick testified that he became the manager/director of DAF and CLO Holdco on March 24, 2021,[59] and he earns no compensation for that role, although the prior manager/director, Mr. Grant Scott, earned $5,000 per month.[60] Mr. Patrick testified that he authorized the filing of the Complaint and the Seery Motion.[61] He testified that he retained the Sbaiti law firm 12 days before the District Court Action was filed, and the idea for filing the Complaint came from that firm,[62] although Mr. Dondero "brought certain information" to Mr. Patrick. Mr. Patrick then "engaged the Sbaiti firm to launch an investigation," and "also wanted Mr. Dondero to work with the Sbaiti firm with respect to their investigation of the underlying facts."[63] Mr. Patrick elaborated that he had no specific knowledge about the HarbourVest Settlement before taking charge of DAF and CLO Holdco,[64] but Mr. Dondero came to him with information about it.[65] Mr. Patrick did not talk to DAF's and CLO Holdco's prior managing member (Grant Scott) about the District Court Action, even though Grant Scott had been the managing member at the time of the HarbourVest Settlement that is the subject of the District Court Action.[66] Mr. Patrick hired the Sbaiti law firm at the unsolicited recommendation of D.C. Sauter,[67] the in-house general counsel of NexPoint

---

[59] Transcript 6/8/21 Hearing, at 97:3-21. [DE# 2440].

[60] Id. at 132:6-17. See also Debtor's Exh. 24 at 96:2-18 [DE# 2410].

[61] Transcript 6/8/21 Hearing, at 103:10-14; 104:3-13. [DE# 2440].

[62] Id. at 104:9-22.

[63] Id. at 105:1-5.

[64] Id. at 104:17-22.

[65] Id. at 105:13-106:16.

[66] Debtor's Exh. 24 at 101:10-102:20 [DE# 2410]; see also Transcript 6/8/21 Hearing, at 108:20-109:22. [DE# 2440].

[67] Transcript 6/8/21 Hearing, at 106:22-107:11. [DE# 2440].

Advisors (a company of which Mr. Dondero is president and controls).[68] Mr. Patrick further testified that Mr. Dondero communicated directly with the Sbaiti firm in relation to the investigation that was being undertaken and he "did not participate in those conversations";[69] Mr. Patrick "considered Mr. Dondero as the investment advisor to the portfolio . . . I wanted him to participate in the investigation."[70] Mr. Patrick confirmed that there is no formal investment advisory agreement with Mr. Dondero, and DAF and CLO Holdco had previously been in an investment advisory agreement with Highland.[71] While Mr. Patrick's testimony was replete with comments that he deferred to the Sbaiti law firm quite a bit, he did confirm that he authorized the filing of the Seery Motion and he was aware of the July 2020 Seery CEO Order.[72]

As for Mr. Dondero, much of the testimony elicited from Mr. Dondero centered around whether he essentially controls DAF and CLO Holdco and the sequence of events that led to Mr. Grant Scott resigning as their managing member. Recall that Mr. Scott had been their managing member at the time of the HarbourVest Settlement—to which CLO Holdco objected and then

---

[68] NexPoint Advisors is 99% owned by Mr. Dondero's family trust, Dugaboy Investment Trust, and is 1% owned by NexPoint Advisors GP, LLC, which is 100% owned by Mr. Dondero. [DE # 2543].

[69] *Id.* at Transcript 6/8/21 Hearing, at 107:24-108:18. [DE # 2440].

[70] *Id.* at 107:18-23.

[71] The lawyers at Sbaiti & Company commented during opening statements that Mr. Dondero was the source of certain of the information in the Complaint and that they were asserting "work product privilege" and "attorney-client privilege" as to their communications with Mr. Dondero "because he's an agent of our client." *Id.* at 41:6-10. The court ultimately overruled this claim of privilege since, among other things, Mr. Patrick's own testimony confirmed that Mr. Dondero had no contractual arrangement of any sort with DAF and CLO Holdco, and he was not a board member and had no decision-making authority for them. *Id.* at 137:2-12; *See also id.* at 180:23-188:7. For purposes of privilege assertion, there was no evidence whatsoever that Mr. Dondero was an agent or representative of DAF and CLO Holdco.

[72] *Id.* at 111:5-112:9.

withdrew its objection.[73] Mr. Dondero testified that he believed Mr. Scott's decision to withdraw the objection to the HarbourVest Settlement was inappropriate.[74]

Mr. Dondero further confirmed that he was the founder and primary donor to DAF.[75] He expressed disapproval for Mr. Scott's various decisions on behalf of DAF and CLO Holdco during the bankruptcy case (such as withdrawing a proof of claim and settling a lawsuit with the Debtor).[76] He testified about general knowledge of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order.[77] He confirmed that he participated in discussions with Mr. Sbaiti regarding the filing of the Complaint—indicating he spoke with the firm a "[h]alf dozen times, maybe."[78] He testified that he was not involved with the Seery Motion itself.[79]

The totality of the evidence was clear that Mr. Dondero sparked this fire (*i.e.,* the idea of bringing the District Court Action to essentially re-visit the HarbourVest Settlement and to find a way to challenge Mr. Seery's and the Debtor's conduct), and Mr. Patrick and Sbaiti & Company, PLLC, were happy to take the idea and run with it. The court believes the evidence was clear and convincing that Mr. Dondero encouraged Mr. Patrick to do something wrong, and Mr. Patrick basically abdicated responsibility to Mr. Dondero with regard to dealing with Sbaiti and executing the litigation strategy.

### Conclusions of Law

---

[73] *Id*. at 163:10-165:18.

[74] *Id*.

[75] *Id*. at 165:19-24.

[76] *Id*. at 161:24-168:1; 169:1-170:9.

[77] *Id*. at 178:16-180:11.

[78] *Id*. at 180:12-22; 207:10-12.

[79] *Id*. at 210:7-14.

A. <u>Jurisdiction and Authority</u>.

Bankruptcy subject matter jurisdiction exists in this matter, pursuant to 28 U.S.C. § 1334(b). This bankruptcy court has authority to exercise such subject matter jurisdiction, pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984. This is a core matter pursuant to 28 U.S.C. § 157(b) in which this court may issue a final order.

The contempt motion currently before the court seeks for this court to hold DAF, CLO Holdco, Sbaiti & Company, PLLC, and any persons who authorized their actions in civil contempt of court for violating two orders of this court. Mr. Patrick and Mr. Dondero have both responded herein—neither, of course, admitting to any wrongdoing.

It is well established that bankruptcy courts have civil (as opposed to criminal) contempt powers. "The power to impose sanctions for contempt of an order is an inherent and well-settled power of all federal courts—including bankruptcy courts."[80] A bankruptcy court's power to sanction those who "flout [its] authority is both necessary and integral" to the court's performance of its duties.[81] Indeed, without such power, the court would be a "mere board[ ] of arbitration, whose judgments and decrees would be only advisory."[82]

---

[80] *In re SkyPort Global Comm's, Inc.,* No. 08-36737-H4-11, 2013 WL 4046397, at *1 (Bankr. S.D. Tex. Aug. 7, 2013), *aff'd.,* 661 Fed. Appx. 835 (5th Cir. 2016); *see also In re Bradley,* 588 F.3d 254, 255 (5th Cir. 2009) (noting that "civil contempt remains a creature of inherent power[,]" to "prevent insults, oppression, and experimentation with disobedience of the law[,]" and it is "widely recognized" that contempt power extends to bankruptcy) (quoting 11 U.S.C. § 105(a), which states, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.),* 108 F.3d 609, 613 (5th Cir. 1997) ("[W]e assent with the majority of the circuits … and find that a bankruptcy court's power to conduct civil contempt proceedings and issue orders in accordance with the outcome of those proceedings lies in 11 U.S.C. § 105."); *Citizens Bank & Trust o. v. Case (In re Case),* 937 F.2d 1014, 1023 (5th Cir. 1991) (held that bankruptcy courts, as Article I as opposed to Article III courts, have the inherent power to sanction and police their dockets with respect to misconduct).

[81] *SkyPort Global,* 2013 WL 4046397, at *1.

[82] *Id.* (internal quotations omitted); *see also Bradley,* 588 F.3d at 266 (noting that contempt orders are both necessary and appropriate where a party violates an order for injunctive relief, noting such orders "are important to the

Contempt is characterized as either civil or criminal depending upon its "primary purpose."[83] If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil.[84] It is clear that Highland's intent is to both seek compensation for the expenses incurred by Highland, due to the Alleged Contemnors' purported violations of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order (*i.e.,* the gatekeeper provisions therein), and to coerce compliance going forward.

### B. Type of Civil Contempt: Alleged Violation of a Court Order.

There are different types of civil contempt, but the most common type is violation of a court order (such as is alleged here). "A party commits contempt when [they] violate[] a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order."[85] Thus, the party seeking an order of contempt in a civil contempt proceeding need only establish, by clear and convincing evidence:[86] "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order."[87]

---

management of bankruptcy cases, but have little effect if parties can irremediably defy them before they formally go into effect.").

[83] *Bradley*, 588 F.3d at 263.

[84] *Id.* (internal citations omitted).

[85] *Travelhost*, 68 F.3d at 961.

[86] *United States v. Puente*, 558 F. App'x 338, 341 (5th Cir. 2013) (per curiam) (internal citation omitted) ("[C]ivil contempt orders must satisfy the clear and convincing evidence standard, while criminal contempt orders must be established beyond a reasonable doubt.").

[87] *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995); *see also Martin v. Trinity Indus., Inc.,* 959 F.2d 45, 47 (5th Cir. 1992) (same); *Travelhost*, 68 F.3d at 961 (same).

C. Specificity of the Order.

To support a contempt finding in the context of an order alleged to have been violated, the order must delineate 'definite and specific' mandates that the defendants violated."[88] The court need not, however, "anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated."[89]

D. Possible Sanctions.

To be clear, if the court ultimately determines that the Alleged Contemnors are in contempt of court, for not having complied with the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order, the court can order what is necessary to: (1) compel or coerce obedience of the order; and (2) to compensate the Debtor/estate for losses resulting from the Alleged Contemnors' non-compliance with the court orders.[90] The court must determine that the Debtor/movant showed by clear and convincing evidence that: (1) the orders were in effect; (2) the orders required or prohibited certain conduct; and (3) that the Alleged Contemnors failed to comply with the orders.[91]  "[T]he factors to be considered in imposing civil contempt sanctions are: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order."[92] "Compensatory civil contempt reimburses the injured party for

---

[88] *Am. Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 578 (5th Cir. 2000) (citing Fed. R. Civ. P. 65).

[89] *Id.*

[90] *In re Gervin,* 337 B.R. 854, 858 (W.D. Tex. 2005) (citing *United States v. United Mine Workers,* 330 U.S. 258 (1947)).

[91] *In re LATCL&F, Inc.,* 2001 WL 984912, at *3 (N.D. Tex. 2001) (citing to *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392, 400 (5th Cir. 1987)).

[92] *Lamar Financial Corp. v. Adams,* 918 F.2d 564, 567 (5th Cir. 1990) (citing *United States v. United Mine Workers,* 330 U.S. 258 (1947)).

the losses and expenses incurred because of [their] adversary's noncompliance."[93] Ultimately, courts have "broad discretion in the assessment of damages in a civil contempt proceeding."[94]

### E. Knowledge of the Order.

"An alleged contemnor must have had knowledge of the order on which civil contempt is to be based. The level of knowledge required, however, is not high. And intent or good faith is irrelevant."[95] To be clear, "intent is not an element in civil contempt matters. Instead, the basic rule is that all orders and judgments of courts must be complied with promptly."[96]

### F. Willfulness of Actions.

For civil contempt of a court order to be found, "[t]he contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order."[97] For a stay violation, the complaining party need not show that the contemnor intended to violate the stay. Rather, the complaining party must show that the contemnor intentionally committed the acts which violate the stay. Nevertheless, in determining whether damages should be awarded under the court's contempt powers, the court considers whether the contemnor's conduct constitutes a willful violation of the stay.[98]

---

[93] *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976); *see also Travelhost*, 68 F.3d at 961 (noting that "[b]ecause the contempt order in the present case is intended to compensate [plaintiff] for lost profits and attorneys' fees resulting from the contemptuous conduct, it is clearly compensatory in nature."); *In re Terrebonne Fuel & Lube, Inc.,* 108 F.3d at 613 (affirming court's decision to impose sanctions for violating injunction and awarding plaintiff costs and fees incurred in connection with prosecuting defendant's conduct); *F.D.I.C.*, 43 F.3d at 168 (affirming court's imposition of sanctions requiring defendant to pay movant attorneys' fees).

[94] *Am. Airlines*, 228 F.3d at 585; *see also F.D.I.C.*, 43 F.3d at 168 (reviewing lower court's contempt order for "abuse of discretion" under the "clearly erroneous standard."); *In re Terrebonne Fuel & Lube, Inc.,* 108 F.3d at 613 ("The bankruptcy court's decision to impose sanctions is discretionary[]").

[95] *Kellogg v. Chester,* 71 B.R. at 38.

[96] *In re Unclaimed Freight of Monroe, Inc.,* 244 B.R. 358, 366 (Bankr. W.D. La. 1999); *see also In re Norris*, 192 B.R. 863, 873 (Bankr. W.D. La. 1995) ("Intent is not an element of civil contempt.")

[97] *Am. Airlines*, 228 F.3d at 581 (citing *N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir.1984)).

[98] *In re All Trac Transport, Inc.,* 306 B.R. 859, 875 (Bankr. N.D. Tex. 2004) (internal citations omitted).

G. Applying the Evidence to the Literal Terms of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order.

The court concludes that there is clear and convincing evidence that DAF, CLO Holdco, Sbaiti & Company, PLLC (through attorneys Mazin Sbaiti and Jonathan Bridges), Mr. Patrick, and Mr. Dondero—each and every one of them, with their collaborative actions—violated the specific wording of the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order, and all are in contempt of the bankruptcy court. The evidence was clear and convincing: (1) that two court orders were in effect (the January 2020 Corporate Governance Order and the July 2020 Seery CEO Order); (2) that the orders prohibited certain conduct (*i.e.,* "[n]o entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim.");[99] and (3) that the all of the Alleged Contemnors (DAF, CLO Holdco, Sbaiti & Company, PLLC, Mr. Mazin Sbaiti, Mr. Jonathan Bridges, Mr. Patrick, and Mr. Dondero) knew about the orders and failed to comply with the court's orders.

As earlier noted, the District Court Action is all about Mr. Seery's allegedly deceitful conduct in connection with a bankruptcy court-approved settlement (*i.e.,* the HarbourVest Settlement), to which CLO Holdco objected, but then withdrew its objection the day of the hearing. ***The lawsuit is, from this court's estimation, wholly frivolous***. This court is in a better position to realize its frivolousness than any other—having spent hours reflecting on the merits of the HarbourVest Settlement. This court believes that it is clear and convincing that each of the Alleged

---

[99] This is quoting from the July 2020 Seery CEO Order. The January 2020 Corporate Governance Order, of course, had the same prohibitory language as to all three of the Independent Directors.

Contemnors knew that it would be a "hard sell" to convince this bankruptcy court that the District Court Action and the claims against Mr. Seery should be allowed to go forward. That's why they tried their luck with the District Court—concocting a rationale that their methods were proper since the bankruptcy court's power to exercise bankruptcy subject matter is derivative, by statute, from the District Court. This rationale is nothing more than thinly veiled forum shopping. But worse, it is, in this instance, contempt of court. The Alleged Contemnors argue that they should not be held in contempt because, in filing the Complaint (which mentions Mr. Seery 50 times—but merely names him as a "potential party"), they did not "commence or pursue" a claim against Mr. Seery. Likewise, they argue that, in filing the Seery Motion, they did not actually "commence or pursue" a claim against Mr. Seery. They argue that a request for leave from the District Court, to add him to the District Court Action, cannot possibly meet the definition of "pursue"—and that one can only "pursue" litigation against a party *after* "commencing" an action against the party. This is linguistic gymnastics that does not fly. The Alleged Contemnors were pursuing litigation when they filed the Seery Motion in the District Court (and maybe even as early as when they filed the Complaint mentioning Mr. Seery 50 times and describing him as a "potential party"). These were all sharp litigation tactics, to be sure, but more problematic, were contemptuous of this court's orders.

**V. Damages**.

The Contempt Motion requests that the court: (a) find and hold each of the Alleged Contemnors (directed at DAF, CLO Holdco, Sbaiti & Company, PLLC, and any persons who actually authorized their acts—*i.e.,* "Authorizing Persons") in contempt of court; (b) direct the Alleged Contemnors, jointly and severally, to pay the Debtor's estate an amount of money equal to two times the Debtor's actual expenses incurred in bringing this contempt matter, payable within three calendar days of presentment of an itemized list of expenses; (c) impose a penalty of three

times the Debtor's actual expenses incurred in connection with any future violation of any order of this court; and (d) grant the Debtor such other and further relief as the court deems just and proper under the circumstances.[100]

As indicated earlier, the court can order what is necessary to: (1) compel or coerce obedience of an order; and (2) to compensate the Debtor/estate for losses resulting from non-compliance with a court order. Here, the court believes compensatory damages are more appropriate than a remedy to compel or coerce future compliance. Compensatory damages are supposed to reimburse the injured party for the losses and expenses incurred because of their adversary's noncompliance. Courts have broad discretion but may consider such factors as: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order.

As far as the harm from noncompliance, the Debtor presented invoices of the fees incurred by its counsel relating to this matter. The invoices were Exhibits 54 & 55 [DE # 2421]. The invoices reflect fees of the Debtor's primary bankruptcy counsel, Pachulski Stang, relating to this contempt matter, during the time period of April 18–April 30, 2021, of $38,796.50,[101] and another $148,998.50,[102] during the time period of May 1–June 7, 2021. These total **$187,795**, and the court determines these to have been reasonable and necessary fees incurred in having to respond and react to the contemptuous conduct set forth herein. Moreover, the court considers it to likely be a

---

[100] Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court Orders. [DE # 2247].

[101] The total fees and expenses for this time period were $1,295,070.58, but the court has calculated the fees related to this contempt matter.

[102] The total fees and expenses for this time period were $1,465,010 but the court has calculated the fees related to this contempt matter.

conservative number because: (a) it does not reflect the fees and expenses incurred at the June 8, 2021 Hearing (which went 4+ hours); (b) it does not include any expenses the firm incurred (the court notes from the time entries that there were depositions taken—thus, there must have been expenses); (c) it does not include any fees and expenses that the UCC may have incurred monitoring this contested matter; and (d) it does not include any fees for Pachulski's local counsel (Hayward & Associates). As for the June 8, 2021 Hearing, the court is aware that at least three professionals from Pachulski Stang participated (Jeff Pomeranz at $1,295/hour; John Morris at $1,245/hour; and paralegal Asia Canty at $425/hour, for a total of $2,965/hour; multiplied by 4 hours equals $11,860)—thus, the court will add on another $11,860 of fees that should be reimbursed. The expenses the Pachulski firm incurred during this time period were $22,271.14, but they are not itemized. Thus, the court will assume $10,000 of this related to the contempt matter. The court will conservatively assume the UCC incurred $20,000 in fees monitoring this matter—as this matter could impact their constituency's recovery (the court is aware that the UCC's lawyer Matthew Clemente attended the June 8, 2021 Hearing). The court will conservatively assume that Hayward and Associates incurred $10,000 in fees assisting Pachulski. Thus, all totaled, this amounts to **$239,655** of fees and expenses that this court is imposing upon the Alleged Contemnors, jointly and severally, to reimburse the bankruptcy estate for the fees and expenses it has incurred relating to their contemptuous acts.

The Debtor has asked for the court to impose a penalty of three times the Debtor's actual expenses incurred in connection with any future violation of any order of this bankruptcy court. The court declines to do this. However, the court will add on a sanction of $100,000 for each level of rehearing, appeal, or petition for *certiorari* that the Alleged Contemnors may choose to take

with regard to this Order, to the extent any such motions for rehearing, appeals, or petitions for certiorari are not successful.

Accordingly, it is hereby ORDERED that:

(i)      DAF, CLO Holdco, Sbaiti & Company, PLLC (including Mazin Sbaiti and Jonathan Bridges), Mark Patrick, and James Dondero (collectively, now the "Contemnors") are each in civil contempt of court in having violated the court's January 2020 Corporate Governance Order and July 2020 Seery CEO Order—the court having found by clear and convincing evidence that: (1) these orders were in effect and each of the Contemnors knew about them; (2) the orders prohibited certain conduct; and (3) the Contemnors failed to comply with the orders;

(ii)      In order to compensate the Debtor's estate for loss and expense resulting from the Contemnors' non-compliance with the orders, the Contemnors are jointly and severally liable for the compensatory sum of **$239,655** and are directed to pay the Debtor (on the 15th day after entry of this order) an amount of money equal to **$239,655;**

(iii)      The court will add on a monetary sanction of **$100,000** for each level of rehearing, appeal, or petition for *certioriari* that the Contemnors may choose to take with regard to this Order, to the extent that any such motions for rehearing, appeals, or petitions for *certiorari* are pursued by any of them and are not successful;

(iv)      Other sanctions (such as further deterrence sanctions) are denied at this time but, ***should any of these Contemnors be subject to another contempt motion in this court in the future and be found to have committed contempt***, the court anticipates imposing significant deterrence sanctions (the court duly notes that this is the second

30

time in the last several weeks that the court has found Mr. Dondero to be in contempt

of court); and

(v)    The court reserves jurisdiction to interpret and enforce this Order.

### End of Memorandum Opinion and Order ###