PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

---

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |

---

**MOTION OF THE REORGANIZED DEBTOR TO DISALLOW CLAIM OF FRANK
WATERHOUSE PURSUANT TO BANKRUPTCY CODE SECTION 502**

Highland Capital Management, L.P., the above-captioned reorganized debtor ("HCMLP")

in the above-captioned chapter 11 case ("Bankruptcy Case"), files this motion (the "Motion") for

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

entry of an order, substantially in the form attached as **Exhibit A**, pursuant to sections 105(a) and 502(j) of title 11 of the United States Code (the "Bankruptcy Code"), disallowing in its entirety the claim of Frank Waterhouse ("Mr. Waterhouse") as previously resolved pursuant to that certain *Senior Employee Stipulation and Tolling Agreement Extending Statutes of Limitation* dated as of January 20, 2021 [Docket No. 1811-13] (the "Waterhouse Stipulation").  In support of this Motion, HCMLP represents as follows:

## PRELIMINARY STATEMENT[2]

1.      Mr. Waterhouse was a long-time employee of HCMLP, having served in its finance group and ultimately as its Chief Financial Officer for more than a decade until in or around February 2021.

2.      Following the Petition Date, HCMLP sought the Court's approval to pay certain employees accrued benefits under HCMLP's Bonus Plans.  The Committee objected to the Bonus Motion as applied to the Senior Employees, including Mr. Waterhouse, on various grounds.  In the face of the Committee's objection, HCMLP and the Committee agreed to the entry of an order granting the Bonus Motion that excluded the Senior Employees.

3.      Unbeknownst to HCMLP's Independent Board[3] and outside counsel, James Dondero responded to the resolution of the Bonus Motion by covertly using other entities to funnel to the Senior Employees the cash that was denied them under the Bonus Order and to otherwise "retain" their services.  Specifically, HCMLP recently learned that Mr. Dondero and Scott Ellington, HCMLP's former General Counsel, used or created certain entities owned and

---

[2] Unless noted otherwise, capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to them below.

[3] "Independent Board" refers to the Independent Board that was appointed at Strand Advisors, Inc., on January 9, 2020, to manage HCMLP during the pendency of its bankruptcy [Docket No. 339].

2

controlled by them to enter into "consulting agreements" with, and made substantial cash payments to, the Senior Employees (including Mr. Waterhouse) or entities directly or indirectly owned and controlled by such employees during HCMLP's Bankruptcy Case.[4]

4.      Upon information and belief, the "consulting agreements" were fictions because (a) no services were performed by the "consultants" in addition to the services already being performed by those individuals as employees of HCMLP, and (b) the contracting parties either did not engage in business or otherwise had no need for such services.  Even if the arrangements had economic substance (which they did not), the Senior Employees who entered into "consulting agreements" and received payments after the Petition Date from a source other than HCMLP breached their fiduciary duties of loyalty and candor (by not divulging that they worked for other entities controlled by Mr. Dondero), as well as HCMLP's employment policies, and post-payment actions by certain of the Senior Employees appear to indicate that Mr. Dondero used the payments to buy loyalty at the expense of the Senior Employees' employer, HCMLP.

5.      Despite having received cash intended to replace the bonuses denied them under the Bonus Order, the Senior Employees, including Mr. Waterhouse, filed proofs of claim seeking, among other things, benefits under the Bonus Plans.  In January 2021, just before HCMLP's confirmation hearing, with no knowledge of the "consulting agreements" or any other surreptitious arrangements, HCMLP entered into stipulations with two Senior Employees – Mr. Waterhouse and Thomas Surgent, HCMLP's then Chief Compliance Officer ("CCO") (and now CCO and

---

[4]  Counsel for HCMLP shared a draft of the Motion with counsel for Mr. Waterhouse and others before it was filed. In response, Mr, Waterhouse's attorneys suggested that the Motion had no basis and threatened to seek sanctions if it was filed.  HCMLP then asked whether Mr. Waterhouse would provide a sworn certification in which he would represent that he did not receive anything of value from Mr. Dondero, Mr. Ellington, any former employee of HCMLP, or any entity directly or indirectly owned and/or controlled by them after the Petition Date.  Mr. Waterhouse, through his counsel, refused to provide the requested certification, contending that whether or not Mr. Waterhouse received any such payments is irrelevant.  As a result, HCMLP decided to file the Motion.

General Counsel) – that ostensibly resolved their claims and that were approved as part of the confirmation of HCMLP's Plan.

6.      In July 2021, James P. Seery, Jr., then HCMLP's Chief Executive Officer and Chief Restructuring Officer, learned that Mr. Surgent had entered into Consulting Agreements and received substantial payments thereunder.  Mr. Seery also learned that other Senior Employees, including Mr. Waterhouse, had also received payments after the Petition Date from entities directly or indirectly owned and controlled by Mr. Dondero and/or Mr. Ellington that were never disclosed to the Independent Board or the Court.

7.      Based on the foregoing, pursuant to section 502(j) of the Bankruptcy Code, HCMLP requests that the Court reconsider Mr. Waterhouse's previously allowed claim for cause and upon reconsideration, (a) withdraw its approval of the Waterhouse Stipulation, thereby rendering it null and void, and (b) deny Mr. Waterhouse's claim in its entirety.[5]

## **JURISDICTION**

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The statutory predicates for the relief sought herein are sections 502(j) and 105(a) of the Bankruptcy Code and Rule 3008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[5] Simultaneously with the filing of this Motion, HCMLP is also filing its motion for an order authorizing it to enter into an amended stipulation with Mr. Surgent.  In the amended stipulation, Mr. Surgent provided previously unknown details concerning the arrangement and agreed to, among other things, reduce his previously filed claim by an amount equal to the payments he received from entities owned and controlled by Messrs. Dondero and Ellington.

## RELEVANT BACKGROUND

### A.     Procedural Background

10.     On October 16, 2019 (the "Petition Date"), HCMLP filed with the United States Bankruptcy Court for the District of Delaware a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11.

11.     On October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Bankruptcy Case.

12.     On December 4, 2019, the Delaware Court entered an order transferring venue of HCMLP's Bankruptcy Case to this Court [Docket No. 186].[6]

13.     On December 4, 2019, HCMLP filed its *Motion for Entry of an Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations under Employee Bonus Plans and Granting Related Relief* [Docket No. 177] (the "Bonus Motion").  Pursuant to the Bonus Motion, HCMLP sought authority to honor obligations under certain Bonus Plans (as defined in the Bonus Motion) and to continue a dividend-reinvestment plan for certain employees.

14.     At a hearing conducted on January 21, 2020, the Committee indicated that it did not oppose the Bonus Motion ***except*** as it related to certain senior employees, including Mr. Ellington, Isaac Leventon, Mr. Waterhouse, and Mr. Surgent (collectively, the "Senior Employees").

15.     In the face of the Committee's strenuous objection to the Bonus Motion as applied to the Senior Employees, and in order to protect HCMLP's other employees, HCMLP agreed to

---

[6] All docket numbers refer to the docket maintained by this Court.

limit the order approving the Bonus Motion to certain non-Senior Employees. *See Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations under Employee Bonus Plans and Granting Related Relief* [Docket No. 380] (the "<u>Bonus Order</u>"). Consequently, none of the Senior Employees received any payments under the Bonus Plans on account of the Bonus Order.

16. On May 26, 2020, Mr. Waterhouse filed a proof of claim [Claim No. 182] (the "<u>Proof of Claim</u>") for an amount "not less than $2,102,260.99" that included a demand for amounts purportedly due under the Bonus Plans.

17. On November 24, 2020, HCMLP filed its *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as amended and supplemented, the "<u>Plan</u>").

18. Mr. Waterhouse and HCMLP executed the Waterhouse Stipulation as of January 20, 2021. The Waterhouse Stipulation was entered into to, among other things, resolve Mr. Waterhouse's claims under the Bonus Plans and grant Mr. Waterhouse an allowed claim in the Bonus Amount, as reduced by the Reduced Amount (as those terms are defined in the Waterhouse Stipulation) ("<u>Mr. Waterhouse's Stipulated Amount</u>").

19. The Waterhouse Stipulation was attached as Exhibit CC to the *Debtor's Notice of Filing of Plan Supplement to Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with Technical Modifications)* [Docket No. 1811].

20. On February 22, 2021 (the "<u>Confirmation Date</u>"), the Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], which confirmed the Plan.[7]

---

[7] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The confirmed Plan included certain amendments filed on February 1, 2021. *See Debtor's Notice of Filing of Plan*

21.     The Plan provides for the conditional release of certain of the Causes of Action (the "Released Causes of Action") against Mr. Waterhouse as set forth therein (the "Employee Release").

22.     The Plan became effective on August 11, 2021 [Docket No. 2700] (the "Effective Date"), and the Committee was disbanded pursuant to the terms of the Plan.

23.     As described in more detail below, in July 2021, HCMLP learned that certain of the Senior Employees, including Mr. Waterhouse, received certain payments after the Petition Date from entities believed to be owned and/or controlled by Mr. Dondero and/or Mr. Ellington.

**B.      HCMLP Learns that Mr. Waterhouse Received Undisclosed Payments**

24.     Notwithstanding his continuing status as an employee and senior officer of HCMLP since the Petition Date, HCMLP recently learned that Mr. Waterhouse (and other Senior Employees) received substantial, post-petition payments from entities believed to be owned and/or controlled by Mr. Dondero and Mr. Ellington.  HCMLP believes that these previously undisclosed payments were conceived of by Mr. Dondero and others acting at his direction for the purpose of paying the Senior Employees their deferred compensation after the Committee objected to the Bonus Motion (as it related to the Senior Employees) and to otherwise "retain" the Senior Employees' services and loyalty to Mr. Dondero.

25.     Upon information and belief, Mr. Waterhouse received post-petition payments from Tall Pine Group, LLC ("Tall Pine"), an entity believed by HCMLP to be directly or indirectly owned and/or controlled by Mr. Ellington and Mainspring Ltd. ("Mainspring"), a Cayman Island

---

*Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Ex. B [Docket No. 1875].

entity HCMLP believes to be directly or indirectly owned and/or controlled by Mr. Dondero, and/or other entities directly or indirectly owned and controlled by Mr. Dondero or Mr. Ellington.[8]

26.     Upon information and belief, the payments and agreements pursuant to which they were made were intended to create the appearance of legitimate business dealings in order to disguise the fact that their real purpose was to retain the Senior Employees by surreptitiously funneling cash to them during HCMLP's bankruptcy after they were denied benefits under the Bonus Plans.  Indeed, upon information and belief, neither Mr. Waterhouse nor any entity owned or controlled by him provided any additional services under the agreements, yet they nonetheless received the payments.

27.     None of the Senior Employees, including Mr. Waterhouse, contemporaneously disclosed their "moonlighting" with Mr. Dondero's entities or having received post-petition payments from Messrs. Dondero and Ellington to (i) HCMLP's bankruptcy counsel, Pachulski Stang Ziehl & Jones, LLP; (ii) HCMLP's chief executive officer and chief restructuring officer, Mr. Seery; or (iii) the Independent Board.

## **ARGUMENT**

28.     Bankruptcy courts have the power to reconsider previously allowed claims for "cause."  Section 502(j) of the Bankruptcy Code provides:

> (j)     A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.

11 U.S.C. §502(j); *see also* FED. R. BANKR. P. 3008.

29.     While "cause" is not explicitly defined in the Bankruptcy Code, bankruptcy courts have applied the substantive requirements of Rule 60(b) of the Federal Rules of Civil Procedure

---

[8] Mainspring appears to be an entity associated with Messrs. Dondero and Ellington and appears in the chain of ownership of Sentinel Re (Cayman Islands).

as guidance. *See In re Willoughby*, 324 B.R. 66, 73 (Bankr. S.D. Ind. 2005); *In re W.F. Hurley, Inc.*, 612 F.2d 392, 396 n. 4 (8th Cir. 1980); *In re Gomez*, 250 B.R. 397, 400 (Bankr. M.D. Fla. 1999); *In re Enron, Inc.*, 325 B.R. 114, 117 (Bankr. S.D.N.Y. 2005). Rule 60(b), made applicable in bankruptcy proceedings pursuant to Bankruptcy Rule 9024, provides, *inter alia*, the following "causes": (i) "newly discovered evidence," (ii) "fraud (explicitly or implicitly), misrepresentation, or other misconduct of an adverse party," or (iii) "any other reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60(b).

30.     Notwithstanding the above, bankruptcy courts possess "substantial discretion" in deciding whether "cause" exists under section 502(j). *See Willoughby*, 324 B.R. at 73 (citing *In re Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987)) ("As the Advisory Committee Note to Bankruptcy Rule 3008 evidences, the bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary …. If reconsideration is granted, the court may readjust the claim in any fashion 'according to the equities of the case'"); *In re Pride Cos., L.P.*, 285 B.R. 366, 369 (Bankr. N.D. Tex. 2002) ("section 502(j) and Rule 3008 provide the court with great discretion in reconsidering the allowance or disallowance of claims.") In light of the wide latitude in considering a section 502(j) motion, bankruptcy courts need not "adopt a hard and fast rule as to what constitutes 'cause,' and should instead "consider the totality of the circumstances" and "whether equity requires the claim to be "allowed, disallowed, or otherwise adjusted." *Willoughby*, 324 B.R. at 73-74.

31.     Here, cause exists to reconsider the allowance of Mr. Waterhouse's claim. Upon information and belief, Mr. Waterhouse received payments (a) directly or indirectly from insiders (*i.e.*, Mr. Dondero and/or Mr. Ellington), (b) after the Petition Date, (c) while serving as HCMLP's Chief Financial Officer and owing fiduciary duties to HCMLP and its estate and otherwise in violation of HCMLP's employment policies, and (d) which Mr. Waterhouse never disclosed to the

Independent Board or Mr. Seery.  These newly discovered facts and allegations of misconduct sufficiently warrant reconsideration of Mr. Waterhouse's allowed claim. *See In re Int'l Yacht and Tennis, Inc.*, 922 F.2d 659, 662 (11th Cir. 1991) (vacating and remanding order denying motion for reconsideration under section 502(j) where movant "sufficiently raised an issue of fraud in its motion for reconsideration" where facts "raise[d] a serious issue of whether [adverse parties] perpetrated fraud, or whether [adverse parties] substantially failed to follow corporate formality.")

32.     Moreover, HCMLP would not have executed the Waterhouse Stipulation had it known that Mr. Waterhouse was "moonlighting" with Mr. Dondero and received substantial post-petition cash payments directly or indirectly from insiders (*i.e.*, Mr. Dondero and/or Mr. Ellington). At minimum, HCMLP would have required a full accounting and would have demanded that Mr. Waterhouse's claim be reduced by the payments received from the Dondero- and Ellington-controlled companies.  Based on the foregoing, cause exists to reconsider Mr. Waterhouse's claim as allowed pursuant to the Waterhouse Stipulation.

33.     Upon reconsideration, the equities of this case warrant disallowance of Mr. Waterhouse's claim in its entirety for two independent reasons.  First, Mr. Waterhouse's receipt of post-petition payments from insiders and his failure to disclose his receipt of such payments constitutes a breach of fiduciary duty and HCMLP's employment policies justifying the disallowance of his claim.  Second, upon information and belief, payments were made to the Senior Employees, including Mr. Waterhouse, on account of the benefits denied to them under the Benefit Plans and which formed, in large part, the basis of Mr. Waterhouse's proof of claim against HCMLP's estate.

## NO PRIOR REQUEST

34.     No previous request for the relief sought herein has been made to this, or any other, Court.

## NOTICE

35.     Notice of this Motion will be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the Office of the United States Attorney for the Northern District of Texas; (c) HCMLP's principal secured parties; (d) counsel to the Claimant Trust; and (d) parties requesting notice pursuant to Bankruptcy Rule 2002. HCMLP submits that, in light of the nature of the relief requested, no other or further notice need be given.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, HCMLP respectfully requests that the Court enter an order in the form attached as **Exhibit A** (a) reconsidering Mr. Waterhouse's previously allowed claim for cause and upon reconsideration, (b) withdrawing its approval of the Waterhouse Stipulation, thereby rendering it null and void, and (c) denying Mr. Waterhouse's claim in its entirety.

*[Remainder of Page Intentionally Blank]*

Dated: September 21, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717) (*pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)
John A. Morris (NY Bar No. 266326) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           ikharasch@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*