Judith W. Ross
State Bar No. 21010670
Frances A. Smith
State Bar No. 24033084
Eric Soderlund
State Bar No. 24037525
**ROSS & SMITH, PC**
700 North Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: judith.ross@judithross.com
     frances.smith@judithwross.com
     eric.soderlund@judithwross.com

*Co-Counsel for CPCM, LLC*

Michelle Hartmann
State Bar No. 24032402
**BAKER & McKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, TX 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau (admitted pro hac vice)
Blaire Cahn (admitted pro hac vice)
**BAKER & McKENZIE LLP**
452 Fifth Avenue
New York, NY 10018
Tel: 212-626-4100
Fax: 212 310-1600
Email: debra.dandeneau@bakermckenzie.com
     blaire.cahn@bakermckenzie.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor.[1] | |

## MOTION OF CPCM, LLC FOR ALLOWANCE AND
## PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

CPCM, LLC ("***CPCM***"),[2] by and through its undersigned counsel, files this *Motion of*

*CPCM, LLC for Allowance and Payment of Administrative Expense Claims* (the "***Motion***") in the

---

[1] On August 11, 2021 (the "***Effective Date***"), the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., (As Modified)* [Dkt No. 1808] (the "***Plan***"), filed by Highland Capital Management, L.P. (the "***Debtor***") became effective. Therefore, all references made herein to the "Debtor" are to the "Debtor" as debtor in possession prior to the Effective Date or to the Debtor as reorganized from and after the Effective Date.

[2] In accordance with certain Assignment of Claims Agreements, each of Scott Ellington, Isaac Leventon, and Frank Waterhouse (collectively, the "***Former Employees***") assigned to CPCM, among other things, any and all claims such Former Employee held against the Debtor asserted in various proofs of claim relating to amounts owed to the Former Employees as employment compensation and any claims relating to the right of such Former Employee to receive any performance bonus from the Debtor with respect to the 2019 or 2020 calendar year.

United States Bankruptcy Court for the Northern District of Texas (the "*Court*"), and in support thereof respectively states as follows:[3]

## PRELIMINARY STATEMENT

1. CPCM brings this Motion to recover the Bonus Amounts (as defined herein), which became properly due and owing from the Debtor to the Former Employees during the course of the Debtor's chapter 11 case. The Debtor does not dispute that it never paid the Bonus Amounts, even though the Debtor characterized these Bonus Amounts as part of the compensation payable to the Former Employees in the ordinary course of business, even though the conditions to payment of the Bonus Amounts have long since been satisfied, and even though the Debtor's estate has already reaped the benefit of the postpetition services provided by the Former Employees. Despite postpetition assurances from the Debtor that the Bonus Amounts would be paid and that the Former Employees would receive their ordinary course compensation for services rendered, the Debtor has unreasonably and unjustly withheld payment of the Bonus Amounts.

2. The Bonus Amounts owed to the Former Employees are compensation for postpetition services, which services were necessary and yielded a material benefit to the Debtor's estate. How do we know? The Debtor told the Court so. Specifically, the Debtor informed the Court that the Bonus Amounts "continue to be earned on a postpetition basis," Bonus Motion ¶ 26, and that "[a]lthough the amounts owed to insiders under the Bonus Plans were awarded prepetition, they are deferred over a period of years in order to continue to motivate Employees to achieve the highest possible level of performance." Bonus Motion ¶ 35. Furthermore, the Debtor stressed that "[e]mployee compensation under the Bonus Plans is critical to the Debtor's ongoing operations

---

[3] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the *Motion of the Debtor For Entry of an Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations Under Employee Bonus Plans and Granting Related Relief* [Dkt. No. 177] (the "*Bonus Motion*").

**MOTION OF CPCM, LLC FOR ALLOWANCE AND**
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

2

and any threat of *nonpayment under such plans would have a potentially catastrophic impact on the Debtor's reorganization efforts*." Bonus Motion ¶ 25 (emphasis added).

3.      Significantly, the Bonus Motion originally contemplated compensating *all employees*. The Official Committee of Unsecured Creditors (the "***Creditors' Committee***"), however, apparently complained, and the Debtor capitulated. The Debtor agreed, without any explanation on the record why it was singling out the Former Employees, to carve out the Former Employees from the relief requested under the Bonus Motion. Following that action, however, James Seery, the Debtor's Chief Executive Officer, provided repeated assurances that the Former Employees would be made whole, notwithstanding the carveout. Moreover, the Debtor accounted for the liabilities for the amounts payable to the Former Employees as *postpetition* obligations. In reliance upon these assurances, the Former Employees continued performing services for the Debtor.

4.      The Debtor has made the point repeatedly that the only requirement governing whether payment to an employee of a Bonus Amount should be made is whether the employee was "in their seat" on the vesting date. The Debtor also has asserted that the only way that it could avoid having to make such payment was to terminate an employee (even without cause) before the vesting date. The Bonus Plans do not impose any other requirements for, or conditions to, payment of the Bonus Amounts. It is undisputed that all the Former Employees were employed by the Debtor on the applicable vesting dates. Nevertheless, having induced the Former Employees to remain with the Debtor, the Debtor unilaterally imposed new conditions on payment of the Bonus Amounts and determined that, with respect to the Former Employees, the most that they could obtain was treatment of the Bonus Amounts as Allowed Convenience Claims (as such terms are defined in the Plan) and less than 100% payout of the Bonus Amounts. Because, by the Debtor's

**MOTION OF CPCM, LLC FOR ALLOWANCE AND**
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**
3

own admission, the Bonus Amounts are part of the wages earned by the Former Employees for services rendered after the commencement of the Debtor's chapter 11 case, the Bonus Amounts satisfy the requirements of sections 503(b)(1)(A) and 507(a)(2) of title 11 of the United States Code (the "***Bankruptcy Code***") and must be Allowed and paid as Administrative Expense Claims (as such terms are defined in the Plan).

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT FACTUAL BACKGROUND

### I.      The Former Employees

7.      The Former Employees were all previously employed by the Debtor:  Mr. Ellington was employed from May 21, 2007 until January 5, 2021; Mr. Leventon was employed from September 21, 2009 until January 5, 2021; and Mr. Waterhouse was employed from October 23, 2006 until February 28, 2021. The Bonus Amounts claimed under this Motion for Mr. Ellington and Mr. Leventon vested on February 28, 2020, May 31, 2020, and August 31, 2020. On each of such dates, Mr. Ellington and Mr. Leventon were employed by the Debtor. The Bonus Amounts claimed under this Motion for Mr. Waterhouse vested on February 28, 2020, August 31, 2020, and February 26, 2021. On each of such dates, Mr. Waterhouse was employed by the Debtor.

### II.      The Bonus Plans

8.      In the ordinary course of its business, the Debtor operated two prepetition bonus plans (together, the "***Bonus Plans***"):  the Annual Bonus Plan and the Deferred Bonus Plan (each as defined in the Bonus Motion).

9.      Under the Annual Bonus Plan, all of the Debtor's employees are eligible for a yearly

bonus payable in up to four (4) equal installments, each payable at six-month intervals on the last

business day of each of February and August. Bonus Motion ¶ 11. "In practice, the Annual Bonus

Plan is a necessary component of each Employee's compensation and amounts to payment in lieu

of a higher fixed salary." *Id.* Under the Deferred Bonus Plan, the Debtor's employees generally

are awarded shares of a designated publicly traded stock, the right to which vests 39 months later.

*Id.* at ¶ 15. Under both the Annual Bonus Plan and the Deferred Bonus Plan, the only condition of

payment is that an employee be employed by the Debtor at the time the award (or any portion

thereof) vested.

**A.  *The Liquidated Bonus Amounts Are Properly Due and Owing to
Mr. Ellington and Mr. Leventon under the Bonus Plans[4]***

10.     Mr. Ellington and Mr. Leventon each received written statements evidencing

awards under the Annual Bonus Plan (an "***Award Letter Agreement***") in February 2019 (the "***2019***

***Annual Bonus Award***"). Pursuant to their 2019 Annual Bonus Award, Mr. Ellington and Mr.

Leventon were entitled to payments of $350,000 and $100,000, respectively, in each of February

2019 (installment one), August 2019 (installment two), February 2020 (installment three), and

August 2020 (installment four). Mr. Ellington and Mr. Leventon received the first two installments

of their 2019 Annual Bonus Award. In violation of the explicit terms of the Annual Bonus Plan,

however, the Debtor failed to pay Mr. Ellington and Mr. Leventon installments three and four of

their 2019 Annual Bonus Award, even though they were employed by the Debtor on the applicable

---

[4] Mr. Waterhouse entered into a Senior Employee Stipulation and Tolling Agreement Extending Statutes of Limitation dated as of January 20, 2021 (the "***Waterhouse Stipulation***") with the Debtor pursuant to which Mr. Waterhouse agreed to accept treatment of bonuses owed to him under the 2019 Annual Bonus Award and 2017 Deferred Bonus Award (each as defined herein) as Allowed Convenience Claims (as such terms are defined in the Plan). The Debtor is currently in breach of its obligations under the Waterhouse Stipulation. To the extent the Waterhouse Stipulation is ultimately found to be unenforceable, CPCM reserves the right to further assert amounts owed by the Debtor to CPCM, as assignee, with respect to the 2019 Annual Bonus Award and 2017 Deferred Bonus Award payable to Mr. Waterhouse, as administrative expenses for the same reasons set forth below with respect to amounts due and owing to Mr. Ellington and Mr. Leventon.

**MOTION OF CPCM, LLC FOR ALLOWANCE AND**                                                    5
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

402606954-v17\NA_DMS

vesting dates. On account of the 2019 Annual Bonus Award, the Debtor owes CPCM, as the assignee of Mr. Ellington's claim for the 2019 Annual Bonus Award, $700,000, and the Debtor owes CPCM, as the assignee of Mr. Leventon's claim for the 2019 Annual Bonus Award, $200,000.

11.     Mr. Ellington and Mr. Leventon similarly received written instruments, dated March 21, 2017, evidencing awards under the Deferred Bonus Plan, which awards were effective as of February 28, 2017 and vested on May 31, 2020 (the "*2017 Deferred Bonus Award*"). In violation of the clear terms of the Deferred Bonus Plan, the Debtor never paid such award to either Mr. Ellington or Mr. Leventon, even though both were employed by the Debtor on the vesting date. Consequently, in connection with the 2017 Deferred Bonus Award, the Debtor owes CPCM, as the assignee of Mr. Ellington's claim under the 2017 Bonus Award, $667,197, and the Debtor owes CPCM, as the assignee of Mr. Leventon's claim under the 2017 Bonus Award, $389,198.

12.     Collectively, the outstanding amounts owed by the Debtor to CPCM, as assignee, with respect to the 2019 Annual Bonus Award and the 2017 Deferred Bonus Award payable to Mr. Ellington and Mr. Leventon total $1,956,395 (the "*Liquidated Bonus Amounts*").

**B.  *The Unliquidated Bonus Amounts Are Properly Due and Owing to the Former Employees under the Annual Bonus Plan***

13.     The Former Employees received awards under the Annual Bonus Plan each year of their employment with the Debtor, other than 2020. Consistent with the Debtor's ordinary prepetition practice, upon information and belief, most (if not all) employees of the Debtor, other than the Former Employees,[5] received Award Letter Agreements in 2020, which granted awards

---

[5] Upon information and belief, Thomas Surgent, who was the Debtor's Chief Compliance Officer during the chapter 11 case and is the Debtor's current General Counsel, also did not receive a 2020 Award Letter Agreement.

**MOTION OF CPCM, LLC FOR ALLOWANCE AND**                                                                                 6
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

payable in March 2020 (installment one), August 2020 (installment two), February 2021 (installment three), and August 2021 (installment four) (a "*2020 Award Letter Agreement*").

14.    Upon information and belief, Mr. Seery specifically directed that 2020 Award Letter Agreements *not* be sent to the Former Employees, but also made assurances to the Former Employees that they would be "made whole" under the Plan. This directive was apparently based upon the mistaken belief that insiders of a debtor are not typically paid their ordinary course compensation during the pendency of a bankruptcy case, coupled with the mistaken belief that Mr. Leventon was, in fact, an "insider" of the Debtor.

15.    Although the Plan has been confirmed and the Effective Date has occurred, the Debtor never paid any of the amounts to which the Former Employees otherwise would have been entitled had they rightfully received 2020 Award Letter Agreements (the "*Unliquidated Bonus Amounts*," and together with the Liquidated Bonus Amounts, the "*Bonus Amounts*"). Upon information and belief, no employee who received a 2020 Award Letter Agreement received an award that decreased from the prior year. Therefore, as applied to the Former Employees, and accounting for the dates on which each of the Former Employees continued to be employed by the Debtor, the Debtor would have paid Mr. Waterhouse three installments of $212,500, totaling $637,500; the Debtor would have paid Mr. Ellington two installments of $350,000, totaling $700,000; and the Debtor would have paid Mr. Leventon two installments of $100,000, totaling $200,000. Therefore, the Debtor owes CPCM, as the assignee of the claims for the Unliquidated Bonus Amounts from Mr. Waterhouse, Mr. Ellington, and Mr. Leventon, a total of $1,537,500.

**C.  *The Bonus Motion Was Revised at the Eleventh Hour to Accede to the Demands of the Creditors' Committee***

16.    The Debtor filed the Bonus Motion on December 4, 2019 [Dkt. No. 177], seeking authorization to pay amounts owed to all its employees under the Bonus Plans in the ordinary

**MOTION OF CPCM, LLC FOR ALLOWANCE AND**                                        7
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

course. At the January 21, 2020 hearing on the Bonus Motion (the "***Bonus Motion Hearing***"), the Debtor's counsel indicated that, although the original motion sought authorization to pay bonus amounts to *all employees*, the Debtor, at the insistence of the Creditors' Committee, had "agreed, for purposes of today, to exclude four statutory insiders." *Transcript of Proceedings Before the Honorable Stacey G.C. Jernigan, United States Bankruptcy Judge* [Dkt No. 393] (the "***Bonus Motion Hearing Transcript***"), 118:21-22. Debtor's counsel went on to say that "[t]here are a few others that are being pulled out as well." *Id*. at 119:3-4. Debtor's counsel later reiterated that "the board has decided with respect to the modifications to exclude the four statutory insiders as well as a few others," from the scope of its requested relief. *Id*. at 122:11-13.

17.     The Debtor did not state at the Bonus Motion Hearing how or why the Creditors' Committee and the Debtor came to determine that insiders and these "few others" should be denied their payment rights (resulting in the Debtor paying less than market compensation to those employees). The Debtor failed even to specifically identify which employees it considered included within the scope of the proposed carveout. Instead, the Debtor's counsel simply stated that the Debtor's board would "address the compensation of those employees separately." *Id.* at 122:14-15.  To date, however, the Debtor has never paid the Former Employees (or CPCM as their assignee) the amounts the Debtor owes to them under the Bonus Plans, even though through the month ending December 31, 2020, the Debtor filed Monthly Operating Reports signed by Mr. Seery under penalty of perjury that treated the amounts owed to the Former Employees as postpetition obligations.  Indeed, the *Monthly Operating Report for Highland Capital Management for the Month Ending December 2020* was filed on February 24, 2021 [Doc. 1949] (the "***December 2020 Monthly Operating Report***"), after the Debtor terminated the employment of Mr. Leventon

and Mr. Ellington, yet such report continues to accrue the Liquidated Bonus Amounts as postpetition liabilities.

18.    The Court entered its *Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations Under Employee Bonus Plans and Granting Related Relief* [Dkt No. 380] (the "**Bonus Order**") on January 21, 2020, granting the Bonus Motion "on the terms set forth herein and as presented at the Hearing and as agreed to by the Official Committee of Unsecured Creditors," which is to say with the arbitrary carveout for insiders and certain unnamed others. Bonus Order ¶ 1. Specifically, the Court ordered that "[t]he Debtor is authorized, but not directed, to pay or continue to honor all sums due to the Debtor's employees (as described at the Hearing and as agreed by the Committee, the 'Covered Employees') in the ordinary course under the Bonus Plans, consisting of the Annual Bonus Plan for the 2018 calendar year and the Deferred Bonus Plan." Bonus Order ¶ 2. As noted above, the Debtor never identified who exactly was excluded from the universe of employees the Bonus Order terms "Covered Employees" and neither the Debtor nor the Court itself ever provided further clarity.

## REQUESTED RELIEF

19.    By this Motion, CPCM requests that the Court allow the Bonus Amounts as Administrative Expense Claims pursuant to section 503(b)(1)(A) of the Bankruptcy Code and require the Debtor to pay the Bonus Amounts to CPCM pursuant to section 507(a)(2) of the Bankruptcy Code.

## BASIS FOR RELIEF

### I.    Legal Standard

20.    Section 503(b)(1)(A) of the Bankruptcy Code accords administrative expense status to "the actual, necessary costs and expenses of preserving the estate," which category includes

"wages, salaries, and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A).

21.     "A *prima facie* case under § 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern." *In re Transamerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). Put another way, "'[i]n order to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefi[t]ed the estate.'" *Neutra, Ltd. v. Terry (In re Acis Capital Mgmt., L.P.)*, 604 B.R. 484, 517 (N.D. Tex. 2019) (quoting *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001)).

22.     Along the lines of the above, the United States Court of Appeals for the Fifth Circuit has characterized an administrative expense as "[a]n 'actual and necessary cost' … of benefit to the estate and its creditors." *Texas v. Lowe (In re H.L.S. Energy Co.)*, 151 F.3d 434, 437 (5th Cir. 1998) (citing *Transamerican Natural Gas Corp.*, 978 F.2d at 1416). "The 'benefit' requirement has no independent basis in the Code, however, but is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been 'necessary.'" *Id*. at 437. (citing Lawrence P. King, Ed.., 4 COLLIER ON BANKRUPTCY P 503.06[3][b] (15th rev. ed. 1998)).

23.     Courts have routinely found that the ability of a debtor to conduct business as usual postpetition and the employee services that enable a debtor to do so constitute a benefit to the estate. *See In re Transamerican Natural Gas Corp.*, 978 F.2d at 1420; *Brickley v. Scattered Corp. (In re H&M Oil & Gas, LLC)*, 514 B.R. 790, 826 (Bankr. N.D. Tex. 2014) (allowing an

**MOTION OF CPCM, LLC FOR ALLOWANCE AND**                                                10
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

administrative expense for the salary of an employee whose services "enhanced [the debtor's] ability to function on a postpetition basis"); *In re Amarex, Inc.*, 853 F.2d 1526, 1531-32 (10th Cir. 1988) (allowing an administrative expense for the postpetition portion of a guaranteed annualized bonus effectively constituting part of an employee's salary earned as compensation for the employee's postpetition service); *In re APF Co.*, 270 B.R. 567, 570 (Bankr. D. Del. 2001) ("If Schedule 2.01 is essentially a bonus provision earned postpetition, as Claimants assert, then they have a strong argument that their claim is entitled to administrative expense priority"); *In re Am. Plumbing & Mech., Inc.*, 323 B.R. 442, 465 (Bankr. W.D. Tex. 2005) (emphasizing that "all compensation, *including bonuses*, can qualify as an administrative expense," to the extent that "it counts as compensation for services rendered to the post-petition estate") (emphasis added).

II. **Liquidated Bonus Amounts**

A. *The Liquidated Bonus Amounts Are Compensation That Was Payable to Mr. Ellington and Mr. Leventon for Services Performed Postpetition*

24. By the Debtor's own admission, the Liquidated Bonus Amounts, although granted prepetition, were earned, became due and payable, and compensated employees, including Mr. Ellington and Mr. Leventon, for services performed postpetition. The Debtor made this argument persuasively in the Bonus Motion, in which it stated that payments under the Bonus Plans "continue to be earned on a postpetition basis," Bonus Motion ¶ 26, and pointed out that "[a]lthough the amounts owed to insiders under the Bonus Plans were awarded prepetition, they are deferred over a period of years in order to continue to motivate Employees to achieve the highest possible level of performance." Bonus Motion ¶ 35. Moreover, "the awards under the Bonus Plans do not represent an 'extra' payment to Employees, but rather are an integral part of each Employee's compensation," and "Employees accept reduced salaries in exchange for bonuses." Bonus Motion ¶ 26. Indeed, as set forth in the Bonus Motion, the Debtor clearly treated

**MOTION OF CPCM, LLC FOR ALLOWANCE AND**
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

the Liquidated Bonus Amounts as compensation to the employee in the year in which such amounts were scheduled to be paid. This is further supported by the Debtor's accrual of the Liquidated Bonus Amounts as postpetition liabilities on its books and records and in the Monthly Operating Reports that Mr. Seery signed, and the Debtor filed, after the entry of the Bonus Order and through the filing of the December 2020 Monthly Operating Report on February 24, 2021. The Debtor cannot now credibly argue to the contrary.

25.     Under each of the Bonus Plans, the only condition to payment of any award granted thereunder is that the employee remain employed by the Debtor on the relevant payment date.[6] As the Debtor represented to the Court at the Bonus Motion Hearing, the only instance in which an employee would forfeit their right to compensation under the Bonus Plans is if they were terminated. But even then, employees would be paid if "they're there on the actual payment date." Bonus Motion Hearing Transcript. 121:5-12; *see also* Bonus Motion ¶ 26. Mr. Ellington and Mr. Leventon were each employed and "in their seats" on the dates designated for payment of the Liquidated Bonus Amounts, thereby satisfying the only condition for payment under the Bonus Plans. By the Debtor's own admission, that Mr. Ellington and Mr. Leventon were later terminated after these bonus payments vested and became due and payable has no effect whatsoever on the payments owed to them and earned during their employment with the Debtor.

**B.  *The Liquidated Bonus Amounts Constitute Actual and Necessary Costs of Preserving the Debtor's Estate***

26.     Also by the Debtor's own admission, payment of the amounts owed to employees under the Bonus Plans was vital to the continued operation of the Debtor's business:

> Employee compensation under the Bonus Plans is critical to the Debtor's ongoing operations and any threat of ***nonpayment under such plans would have a potentially catastrophic impact on the Debtor's reorganization***

---

[6] CPCM reserves the right to argue that the Debtor, through its course of conduct prepetition, modified the conditions to payment under the Bonus Plans. The arguments set forth herein are made without prejudice to the aforementioned reservation.

**MOTION OF CPCM, LLC FOR ALLOWANCE AND**                                                    12
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

>  *efforts*. Absent authority to honor the Bonus Plans in the ordinary course, the Debtor would be unable to sustain operations or maximize the value of its vast portfolio of assets, as Employees would likely abandon the Debtor. Bonus Motion ¶ 25 (emphasis added).

The Debtor further argued that if it was

>  unable to pay ordinary course bonuses to ***all of its eligible Employees, including insiders***, the Debtor would likely face a ***mass exodus*** of Employees and the morale of its Employees would be severely jeopardized, putting the Debtor's business and restructuring efforts into ***substantial risk***.

*Id*. ¶ 9 (emphasis added).

27.     In addition, according to the Debtor's own compensation expert, the Bonus Plans "are well within market, and that if such bonuses are not paid, the Debtor's employees would be severely undercompensated," the bottom line being, in the Debtor's own estimation, that "continuing to honor the Debtor's ordinary course bonus obligations, as modified, to employees is critical. The failure to do so is likely to cause an employee exodus and will adversely prejudice the Debtor's efforts to maximize value for all constituents." Bonus Motion Hearing Transcript at 122:24 -123:8.

28.     Furthermore, Mr. Ellington and Mr. Leventon were specifically induced to remain in the Debtor's employ. Mr. Seery made representations that Mr. Ellington and Mr. Leventon would be made whole under the Plan. Having reaped the benefit of such services, the Debtor cannot now be excused from paying for them.

29.     The inescapable conclusion is that the Debtor's acceptance of postpetition services rendered by Mr. Ellington and Mr. Leventon to the Debtor, as to which the Liquidated Bonus Amounts relate, provided a clear benefit to the estate by allowing the Debtor to continue to conduct business as usual as a going concern. Therefore, the Liquidated Bonus Amounts qualify as actual and necessary expenses of the Debtor's estate and are entitled to administrative expense priority.

### C. *The Court Already Determined that the Liquidated Bonus Amounts Are Entitled to Administrative Expense Claim Treatment*

30.     Furthermore, definitively placing the proper treatment of the Liquidated Bonus Amounts as Administrative Expense Claims beyond a shadow of a doubt, the Court previously ruled that payments under the Bonus Plans are Administrative Expense Claims. Specifically, in ruling on the Bonus Motion, the Court provided that its order "shall not be deemed to grant any Covered Employee administrative expense priority for any claim under the Bonus Plans or DRIP *except to the extent a particular payment under such Bonus Plans or DRIP has become due and payable*." Bonus Order ¶ 4 (emphasis added). The Liquidated Bonus Amounts have long since become due and payable. Therefore, they are entitled to administrative expense priority, as any other claim under the Bonus Plans and as recognized and provided for in the Bonus Order. That certain employees, including the Former Employees, may have been excluded from the scope of the Bonus Motion and the Bonus Order is of no consequence because such exclusion does not alter the nature of the underlying obligations and the reasoning behind the Court's ruling in the Bonus Order.

## III.     The Unliquidated Bonus Amounts

### A. *The Former Employees Are Entitled to Receive Awards in Respect of 2020 Award Letter Agreements Mistakenly and Improperly Withheld*

31.     The arguments set forth in part II above in relation to the Liquidated Bonus Amounts apply with equal force to the Unliquidated Bonus Amounts and are expressly incorporated herein.

32.     CPCM acknowledges that none of the Former Employees received a 2020 Award Letter Agreement. Upon information and belief, Mr. Seery instructed that 2020 Award Letter Agreements not be sent to the Former Employees, an instruction that had nothing whatsoever to do with any actual or perceived shortfall in job performance. Upon information and belief, it was

**MOTION OF CPCM, LLC FOR ALLOWANCE AND**
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

402606954-v17\NA_DMS

virtually unprecedented for employees of the Debtor *not* to be awarded bonuses under the Annual Bonus Plan, which was part of what the Debtor considered to be ordinary course compensation to the Debtor's employees. As explained by the Debtor, "awards under the Bonus Plans do not represent an 'extra' payment to Employees, but rather are an integral part of each Employee's compensation." Bonus Motion ¶ 26. Upon information and belief, the failure of an employee to perform to standards ordinarily would have resulted in termination rather than continued employment without bonus pay.

33.     Mr. Seery's sole purported rationale in refusing to issue 2020 Award Letter Agreements to the Former Employees was that, in a bankruptcy case, insiders of the Debtor are not typically paid bonuses during the pendency of the case and that the Former Employees would instead be made whole through the plan process. In this, Mr. Seery and the Debtor are mistaken. The Bankruptcy Code does not contain a blanket prohibition on the payment of ordinary course compensation to the employees of a debtor, insiders or not. To the contrary, under section 363(c)(1) of the Bankruptcy Code, the trustee (or the debtor in possession under section 1107(a)) "may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." As reiterated extensively by the Debtor in the Bonus Motion and by the Debtor's counsel on the record at the Bonus Motion Hearing, awards and payments under the Bonus Plans "are entirely consistent with the ordinary course operations of the Debtor and completely consistent with prepetition practice." Bonus Motion Hearing Transcript, at 124:9-11. Therefore, although the Debtor chose to seek authorization from this Court to continue paying amounts under the Bonus Plans in the ordinary course, it was not required to do so. It would be

inequitable then to punish the Former Employees for the Debtor's own mistake by withholding the Unliquidated Bonus Amounts, which were otherwise rightfully earned.

34.     Moreover, Mr. Leventon was never an "insider" of the Debtor. Section 101(31)(C) of the Bankruptcy Code defines an "insider" of a limited partnership as follows:

> (i) general partner in the debtor; (ii) relative of a general partner in, general partner of, or person in control of the debtor; (iii) partnership in which the debtor is a general partner; (iv) general partner of the debtor; or (v) person in control of the debtor.

Mr. Leventon does not fall under any of the foregoing types of "insiders" of the Debtor.

35.     Further compounding this inequity is that Mr. Seery made assurances on multiple occasions that the Former Employees would be made whole, thereby inducing the Former Employees to continue to perform services for the Debtor on a postpetition basis. The Debtor should not now, having received the benefit of this bargain, be allowed to avoid fulfilling its own end of the deal.

**B.  *The Unliquidated Bonus Amounts Should Be Allowed in an Amount at Least Equal to the Awards Granted to the Former Employees in their 2019 Award Letter Agreements, Consistent with the Debtor's Ordinary Practice***

36.     Mr. Waterhouse was employed by the Debtor until February 28, 2021, Mr. Ellington was employed by the Debtor until January 5, 2021, and Mr. Leventon was employed by the Debtor until January 5, 2021. As such, of the awards that should have been granted to the Former Employees under the 2020 Award Letter Agreements, Mr. Waterhouse (now CPCM, as assignee) has a claim for installments one, two, and three (which vested in February 28, 2020, August 31, 2020, and February 26, 2021, respectively), and each of Mr. Ellington and Mr. Leventon (now CPCM, as assignee) has a claim for installments one and two (which vested in February 28, 2020 and August 31, 2020, respectively). As none of the Former Employees actually

received a 2020 Award Letter Agreement, however, the precise amounts payable in connection with each installment of such awards is, at present, unliquidated.

37.     With that said, an analysis of the Award Letter Agreements issued to each of the Former Employees in 2017, 2018, and 2019 demonstrates that, historically, payments to the Former Employees under the Annual Bonus Plan either remained flat or increased year to year. Payments never decreased from one year to the next. Indeed, upon information and belief, all other employees of the Debtor who received 2020 Award Letter Agreements received awards at least equal to or in excess of the awards they had been granted in 2019.

38.     Therefore, based upon the Debtor's historical practice with respect to employees as a whole and with respect to the Former Employees in particular, CPCM respectfully submits that it is reasonable to assume that awards granted to the Former Employees under 2020 Award Letter Agreements had such agreements actually been properly issued likewise would have remained at least flat versus the previous year's awards. This would have been equivalent to equal installments of $212,500 for Mr. Waterhouse, equal installments of $350,000 for Mr. Ellington, and equal installments of $100,000 for Mr. Leventon. Accounting for the number of installments each Former Employee should have earned by virtue of his continued employment with the Debtor on the date such installment became payable, this comes to a total of $637,500 on account of Mr. Waterhouse, $700,000 on account of Mr. Ellington, and $200,000 on account of Mr. Leventon for a grand total of $1,537,500. The Court should liquidate the Unliquidated Bonus Amounts in such amount, allow them as Administrative Expense Claims, and require the Debtor to pay them to CPCM.

39.     WHEREFORE, for the reasons set forth above, CPCM respectfully requests that the Court (i) order that the Bonus Amounts be Allowed as Administrative Expense Claims

**MOTION OF CPCM, LLC FOR ALLOWANCE AND**                                                                    17
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

pursuant to section 503(b)(1)(A) of the Bankruptcy Code and paid pursuant to section 507(a)(2)

of the Bankruptcy Code and (ii) grant CPCM such further relief as is just.

Dated:  September 24, 2021

By: */s/ Frances A. Smith*
Judith W. Ross
State Bar No. 21010670
Frances A. Smith
State Bar No. 24033084
Eric Soderlund
State Bar No. 24037525
**ROSS & SMITH, PC**
700 N. Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: judith.ross@judithwross.com
frances.smith@judithwross.com
eric.soderlund@judithwross.com

Michelle Hartmann
State Bar No. 24032402
**BAKER & MCKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
**BAKER & MCKENZIE LLP**
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for CPCM*

**MOTION OF CPCM, LLC FOR ALLOWANCE AND
PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

402606954-v17\NA_DMS