Kristin H. Jain, Esq.
Texas Bar No. 24010128
JAIN LAW & ASSOCIATES PLLC
400 North Saint Paul, Suite 510
Dallas, Texas 75201
Telephone:  (214) 446-0330
Facsimile:  (214) 446-0321
Email:  KHJain@JainLaw.com

*Local Counsel for NexPoint Advisors, L.P.*

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
*(Motion for Admission Pro Hac Vice to be Filed)*
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV  89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

*Counsel for NexPoint Advisors, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>                          Debtor. | Chapter 11<br><br>Case N. 19-34054 (SGJ) |

**OMNIBUS OBJECTION AND RESPONSE OF NEXPOINT ADVISORS, L.P.,
CREDITOR AND PARTY IN INTEREST UNDER 11 U.S.C. § 1109(b), PURSUANT TO
11 U.S.C. § 330(a) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2016 TO
<u>FINAL FEE APPLICATIONS SUBMITTED BY VARIOUS ESTATE
PROFESSIONSALS</u>**

NexPoint Advisors, L.P., creditor and party in interest under 11 U.S.C. § 1109(b)

("**NexPoint**"), respectfully submits this omnibus objection and response (the "**Response**") to the final fee applications (the "**Final Applications**") of the retained professionals (the "**Retained Professionals**"), seeking awards of compensation and reimbursement of out-of-pocket expenses in the above-captioned chapter 11 case of Highland Capital Management, L.P. (the "**Debtor**"), and listed as follows:

| **Debtor's Professional Name** | **Period** | **Fees** | **Expenses** |
|---|---|---|---|
| Pachulski Stang Ziehl & Jones LLP (Counsel to Debtor), ECF No. 2906 | 10/16/19-8/10/21 | $23,978,627.25 | $334,232.95 |
| Hayward PLLC (Debtor's Texas Counsel), ECF No. 2910 | 12/10/19-8/11/21 | $825,629.50 | $46,482.92 |
| Wilmer Cutler Pickering Hale & Dorr (Debtor's Regulatory & Compliance Counsel), ECF No. 2907 | 10/16/19-8/11/21 | $2,645,729.72 | $5,207.53 |
| Deloitte Tax LLP (Debtor's Tax Services Provider), ECF No. 2911 | 10/16/19-8/11/21 | $553,412.60 | $0.00 |
| Mercer (US) Inc. (Debtor's Compensation Consultant), ECF No. 2908 | 11/15/19-8/10/21 | $202,317.65 | $2,449.37 |
| Hunton Andrews Kurth (Debtor's Special Counsel), ECF No. 2872 | 7/1/20-8/11/21 | $1,147.059.42 | $2,747.84 |
| **Unsecured Creditors Committee's Professional Name** | **Period** | **Fees** | **Expenses** |
| Sidley Austin LLP (Counsel to the Official Committee of Unsecured Creditors) ECF No. 2904 | 10/29/19-8/11/21 | $13,134,805.20 | $211,841.25 |

| | | | |
|---|---|---|---|
| FTI Consulting (Financial Advisor to the Official Committee of Unsecured Creditors), ECF No. 2902 | 11/06/19- 8/11/21 | $6,176,551.20 | $39,122.91 |
| Teneo Capital, LLC (Litigation Advisor to the Official Committee of Unsecured Creditors), ECF No. 2903 | 4/15/21- 8/11/21 | $1,358,565.52 | $6,257.07 |

NexPoint's Response is supported by the Declaration of Professor Bruce A. Markell attached hereto as **Exhibit A** (the "**Markell Declaration**").

**OBJECTION AND RESPONSE**

1.      At the outset, NexPoint acknowledges the difficult challenges facing both the Debtor and the Committee over the course of this case. Nevertheless, in large, complex cases, professionals are required to maintain the same billing judgment and efficiency that they would in any other chapter 11 case. In particular, under 11 U.S.C. § 330, professionals should ensure that they only bill for services and expenses that are "reasonable," "necessary," and "beneficial" to the client; that they exercise billing judgment that is comparable to what would be expected of them by a client outside of bankruptcy; and that their requests for fees and expenses are consistent with all applicable fee guidelines and orders.

2.      Indeed, the Retained Professionals had the better part of sixty (60) days from Debtor's filing of the notice of the plan's effective date on August 11, 2021, to file their respective Final Applications. (*See* ECF No. 2700). In response, creditors and other parties-in-interest were afforded less than thirty (30) days within which to evaluate and, if advisable, object to any request(s) by Retained Professionals for the entry of a final award of fees and reimbursement of

3

expenses sought by a Retained Professional through a Final Application under 11 U.S.C. § 330(a) and Federal Rule of Bankruptcy Procedure 2016.

3.  With these timing considerations in mind and as set forth in the Markell Declaration, NexPoint is willing (and has made the necessary arrangements) to employ Professor Markell at NexPoint's expense to serve as a fee examiner in this case, and use Legal Decoder (also at NexPoint's expense), to assist with Professor Markell's review of the Retained Professionals' Final Applications in an effort to assist the Court, the United States Trustee, creditors, and other parties in interest under 11 U.S.C. § 1109(b) in their review of the Final Applications. As set forth in the Markell Declaration, Professor Markell believes he and Legal Decoder would need approximately sixty (60) days to review the Final Applications and thereafter submit a report as otherwise contemplated by the Markell Declaration of his findings to this Court for its consideration as part of determining whether the Retained Professionals' fee award and expense reimbursement requests in the Final Applications are, indeed, reasonable, under 11 U.S.C. § 330(a).

4.  NexPoint, therefore, respectfully requests that the November 9, 2021 hearing on the Final Applications be treated as a scheduling conference to provide: (i) a limited period of time for discovery in connection with the Final Applications and the Response; (ii) sufficient time for Professor Markell and Legal Decoder to complete each of their respective reviews of, and Professor Markell's report, if any, with respect to, the Final Applications; (iii) for NexPoint to supplement the record with its substantive objections to the Final Applications; and (iv) the Retained Professionals with an opportunity to reply to any objections. For the collective assurance and comfort of the parties, it is important to note, also, that Professor Markell has <u>not yet</u> agreed

to serve as an expert on the reasonableness or necessity of any fee or expense reimbursement requests; rather, Professor Markell has indicated that he will make that determination once his review of the underlying Final Applications, with the assistance of Legal Decoder, has been completed.

5. NexPoint has identified several major areas of concern based on its review of the Final Applications. The Final Applications reflect numerous instances of questionable billing judgment and overstaffing, and in some instances, professionals appear to have simply disregarded the Local Guidelines, as set forth below. In an expression of its good faith efforts to resolve these matters and in light of the upcoming approach of calendar year end and holidays, NexPoint does not object to the Retained Professionals being paid ten percent (10%) of their twenty percent (20%) holdbacks, subject to and pending this Court's ultimate resolution of the Final Applications and NexPoint's Response thereto. If the Retained Professionals are not, however, amenable to proceeding in the manner described in NexPoint's Response, then NexPoint will be forced to insist that the Final Applications were not properly noticed for hearing in accordance with the Confirmed Plan and Confirmation Order (both as defined below). Briefly, under the terms of the Confirmation Order and the Confirmed Plan, the objection deadlines with respect to the Final Applications could not be set any earlier than thirty (30) days following the filing of any such Final Application. (*See* ECF No. 1943, pgs. 109-110 of 162, ¶¶ 99-101; pgs. 61-62 of 162, ¶ A n. 11).

6. With the exception of the Debtor's special counsel, Hunton Andrews Kurth, all of the remaining Retained Professionals filed their respective Final Applications on October 8, 2021. Under the Confirmed Plan and Confirmation Order, the earliest the objection deadline could have

been set on the Final Applications was, by operation of Federal Rule of Bankruptcy Procedure 9006(a)(1)(C), November 8, 2021. Debtor's omnibus hearing notice with respect to the Final Applications, however, identifies in error Tuesday, November 2, 2021, as the relevant objection deadline for the Final Applications. NexPoint respectfully submits that, because of the defective notice of the Final Applications, the Court is without personal jurisdiction to enter final orders with respect to the Final Applications that would effectively bind any of the notice parties *in personam*. And, for the avoidance of doubt, NexPoint maintains that it was not properly served in accordance with the requirements set forth in Debtor's Confirmed Plan, the Confirmation Order. *See* Federal Rules of Bankruptcy Procedure 2002 and 2016, Local Rules 2002-1(a)(6) and 2016-1(c)(1)-(3), and the *Standing Order Concerning Guidelines for Compensation and Expense Reimbursement of Professionals, for Early Disposition of Assets in Chapter 11 Cases, and for Motions and Order Pertaining to the Use of Cash Collateral and Post-Petition Financing, General Order 2000-7*, attached as Appendix F to the Local Rules (the "**Local Guidelines**").

## BACKGROUND

7. On October 16, 2019 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Delaware Court**").

8. By order entered on December 4, 2019, venue of Debtor's bankruptcy case was transferred from the Delaware Court to this Court. (ECF No. 1).

9. No trustee or examiner has been appointed in this chapter 11 case.

10. The United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Unsecured Creditors' Committee**") on October 29, 2019. (ECF No. 64).

11. On February 22, 2021, this Court entered its *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) and (II) Granting Related Relief* (the "**Confirmation Order**"). (ECF No. 1943).

12. Attached as **Exhibit A** to the Confirmation Order is the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)* (the "**Confirmed Plan**").

13. By its terms, the Confirmation Order confirmed the Confirmed Plan. (ECF No. 1943, pgs. 61-62 of 162, ¶ A n. 11) ("The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code. The terms of the Plan, including the Plan Supplements and Plan Modifications, are incorporated by reference into and are an integral part of this Confirmation Order…The Plan is attached hereto as **Exhibit A**.") (emphasis in original).

14. Under the Confirmed Plan and Confirmation Order, the Final Applications constitute "Professional Fee Claims." (ECF No. 1943, pg. 109 of 162, ¶ 99).

15. Relatedly, Debtor's Confirmed Plan and Confirmation Order established a Professional Fee Claims Bar Date of sixty (60) days after the effective date of the Confirmed Plan. (*Id.* at ¶ 100).

16. On August 11, 2021, Debtor filed a notice of the effective date of the Confirmed Plan identifying August 11, 2021, at the Confirmed Plan's effective date. (ECF No. 2700). For the avoidance of doubt and absent further information to the contrary, NexPoint does not contend that any of the Final Applications were untimely filed under the "Professional Fee Claims Bar Date" established und the Confirmed Plan and Confirmation Order. (ECF No. 1943, pg. 109 of 162, ¶ 100).

17. Importantly, the Confirmed Plan defines the "Professional Fee Claims Objection

Deadline" to mean "with respect to any Professional Fee Claim, thirty (30) days after the timely Filing of the applicable request for payment of such Professional Fee Claim." (ECF No. 1943, pg. 109 of 162, ¶ 101).

18. With the exception of Debtor's counsel, Hunton Andrews Kurth, which filed its Final Application (but does not appear to have separately noticed its Final Application) on September 24, 2021, each of the Retained Professionals filed their respective Final Applications on October 8, 2021. (*See* ECF Nos. 2872, 2902, 2903, 2904, 2906, 2907, 2908, 2910, and 2911).

19. Under Debtor's Confirmed Plan and Confirmation Order, the earliest date on which the applicable Professional Fee Claims Objection Deadline could have been set was thirty (30) days after the filing of each applicable Final Application. (*Id.*). By operation of Federal Rule of Bankruptcy Procedure 9006(a)(1)(C), the earliest deadline for the Final Applications was Monday, November 8, 2021.

20. Debtor's omnibus notice of hearing on the Final Applications designates in error Tuesday, November 2, 2021, as the applicable objection/response deadline for each of the Final Applications. (ECF No. 2915; pgs. 5-6 of 8).

21. NexPoint hereby files the Response out of an abundance of caution under the objection deadlines set forth in Debtor's omnibus notice of hearing. For the avoidance of doubt and in the absence of an agreement from the Retained Professionals to NexPoint's reasonable request to allow the hearing on the Final Applications to unfold with the benefit of Professor Markell's input as outline herein, NexPoint respectfully maintains that none of the Final Applications has been properly noticed for hearing in accordance with the Confirmation Order, the Confirmed Plan, Federal Rules of Bankruptcy Procedure 2002 and 2016, Local Rules. 2002-

1(a)(6) and 2016-1(c)(1)-(3), and the Local Guidelines.

22. For the reasons set forth herein, NexPoint respectfully submits that each of the Final Applications of the Retained Professionals should either: (i) be denied without prejudice to being reset for hearing on appropriate notice in accordance with Confirmation Order, the Confirmed Plan, Federal Rules of Bankruptcy Procedure 2002 and 2016, Local Rules 2002-1(a)(6) and 2016-1(c)(1)-(3), and the Local Guidelines; or (ii) that the November 9, 2021, hearing be treated as a scheduling conference, permitting limited discovery in connection with the Final Applications and Professor Markell and Legal Decoder to complete their collective fee examiner work as set forth in this Response and the Markell Declaration.

## **LEGAL STANDARDS**

### I. **Reasonableness of Fees**

23. Bankruptcy Code Section 330(a)(1) provides that:

> After notice to the parties in interest and the United States trustee and a hearing, and subject to section 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

24. Section 330 of the Bankruptcy Code focuses on reasonableness and benefit to the estate of the professionals' services. *In re Lederman Enter., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993); *In re Fibermark, Inc.*, 349 B.R. 385, 396 (Bankr. Vt. 2006). Accordingly, an application for compensation and reimbursement of expenses must demonstrate that the professional's

9

services were necessary and conferred a benefit to the estate or its creditors. *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997) (*citing In re Arkansas Co., Inc.* 798 F.2d 645, 650 (3d Cir. 1986) (other citation omitted)).

25. Each applicant bears the burden of proof in all fee matters. *In re Northwest Airlines Corp.*, 400 B.R. 393, 398 (Bankr. S.D.N.Y. 2009) (*citing In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997)); *In re JLM, Inc.*, 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997). The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the request for compensation. *In re Beverly Mfg. Corp.*, 841 F.2d 365 (11th Cir. 1988).

26. The Court has an independent burden to review fee applications "lest overreaching … professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." *Keene Corp.*, 205 B.R. at 695 (*quoting In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 844 (3d Cir. 1994)). Under Section 330 of the Bankruptcy Code, the Bankruptcy Court has the authority to reduce fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code. *In re Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995); *see also Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower courts' denial of improperly documented and inadequately detailed expenses).

## II. Actual and Necessary Expenses

27. Under Section 330(a)(1)(B) of the Bankruptcy Code, only documented expenses that are actual and necessary are reimbursable. 11 U.S.C. § 330(a)(1)(B). Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary." *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting *In re S.T.N. Enters., Inc.*, 70 B.R. 823, 834 (Bankr. D. Vt. 1987)). Expenses are "actual" if they are incurred and not based on a formula or *pro rata* calculation. *In re Bennett Funding Group, Inc.*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997). Expenses are "necessary" if they were

"reasonably needed to accomplish proper representation of the client." *In re American Preferred Prescription, Inc.*, 218 B.R. 680, 686-87 (Bankr. E.D.N.Y. 1998).

## OBJECTIONS AND RESPONSES

### A. Specific Objections

28. NexPoint does not believe that any party, including the Court, has been given sufficient time to evaluate fully each of the Final Applications in detail and again advises the Court of its position that both Professor Markell and Legal Decoder should be given the opportunity to examine the Final Applications of the Retained Professionals in this case, again, at NexPoint's expense. NexPoint made the decision not to object to interim requests for compensation made under 11 U.S.C. § 331 and the Court's interim compensation order because NexPoint sought to avoid, if at all possible, (i) having Debtor's case become unduly weighed and bogged down by collateral fee litigation during the pendency of the case, and (ii) being subjected to accusations – however unfounded they may otherwise have been that NexPoint was being unduly punitive due to the inability of the Retained Professionals to recover their fees and expenses litigating fee objections under governing precedent from the Supreme Court of the United States. *See Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121 (2015).

29. NexPoint has, nevertheless identified the following concerns based on its preliminary review of the Final Applications. NexPoint respectfully submits that the following identified issues militate in favor of granting NexPoint's request that it be afforded the opportunity to retain and employ Professor Markell and Legal Decoder, again at NexPoint's expense, to further evaluate the Final Applications for the collective benefit of NexPoint, the Court, the United States Trustee, creditors, and other parties-in-interest under 11 U.S.C. § 1109(b). In light of the precedent that exists in this Court supporting the appointment of a fee examiner in appropriate cases, NexPoint respectfully submits that both Professor Markell and Legal Decoder should be afforded the opportunity to scrutinize the Final Applications thoroughly for the benefit of all

concerned. *See In re Baron*, 2013 Bankr. LEXIS 2604, *33 (Bankr. N.D. Tex. June 26, 2013) (Jernigan, J.), *affirmed in part and reversed in part on unrelated grounds*, *Ferguson v. Baron (In re Baron)*, 593 Fed. Appx. (5th Cir. Dec. 22, 2014).

30.     NexPoint's specific objections are as follows:

First, with respect to counsel for the Unsecured Creditors' Committee, counsel discloses the following:

(i)     five (5) associates who were licensed to practice law in 2017 have four (4) billing rates ranging from $635 to $885;

(ii)    two (2) associates who were licensed to practice law in 2016 have billing ranging rates from $885 - $930; and

(iii)   three (3) associates who were licensed to practice law in 2021 have three (3) billing rates ranging from $590 to $715.

A cursory glance at these numbers reveals that Debtor's estate faces the distinct possibility of being unduly billed at $715 per hour for the work of a first-year associate, while fifth year associates at the same firm are being billed at rates as low as $635 per hour. Further, associates with the same licensing year are being billed at rates that are $250 per hour apart. These rates are simply listed in the application without sufficient explanation justifying such variations in the fee structure, generally, and – perhaps more to the point – why the Debtor's bankruptcy estate should be saddled with such costs. The Final Application for counsel for the Unsecured Creditors' Committee also features "first-year project assistants" billing at $205 - $275 without sufficient explanation or justification why Debtor's estate is being charged for such services when they may otherwise constitute overhead expenses that otherwise would not be eligible for compensation under 11 U.S.C. § 330(a). Relatedly, counsel also does not sufficiently justify why work that could otherwise be done under the firm's overhead costs is being done by first-year project assistants.

31.     Committee counsel's Final Application also disclosed 7,471.50 hours devoted to

litigation matters, making unnecessary overlap almost impossible to avoid. Counsel for the Unsecured Creditors' Committee billed 647.1 hours in July and August 2021 on discovery matters, including examinations under Federal Rule of Bankruptcy Procedure 2004 on the eve of confirmation (both domestic and foreign) featuring much in the way of office conferences and other internal communications. These are just some of the problems that call out for the appointment of a fee examiner with the experience of Professor Markell and Legal Decoder to thoroughly scrutinize the Final Applications for the benefit of all concerned.

32. With respect to Debtor's lead and general bankruptcy counsel, its Final Application features many instances in which multiple attorneys and/or paralegals are making several small time entries throughout each day, across various matters and tasks, making it nearly impossible to ascertain clearly: (i) what a particular professional accomplished on a given day for the estate's benefit within the meaning of 11 U.S.C. § 330; and (ii) whether such services were duplicative of the efforts of another attorney/paraprofessional. This makes it exceedingly difficult and time consuming to determine who did what, when and why. Again, the services of Professor Markell and Legal Decoder will be of significant help to NexPoint, the Court, and all other interested parties in evaluating such entries by collating all such entries per day such that those reviewing the Final Application do not have to scour the entire Final Application to determine what a given professional did on any given day.

33. By way of further example, the Final Applications also feature hearings where multiple attorneys attended and billed their time. Specifically, six (6) attorneys billed multiple hours to attend the hearing on the Motion to Transfer venue that occurred on December 2, 2019. *See* ECF No. 420, pg. 67-68. Similarly, on January 9, 2020, six (6) attorneys billed multiple hours to attend the hearing on the motion regarding corporate governance. *See* ECF No. 501, pg. 36-37. These are simply two examples of instances that warrant investigation and analysis, all of which NexPoint is prepared to undertake.

34. Lead counsel's final application also lists two (2) professionals whose positions

are identified as "Other" – without further detail. Admittedly, these "Other" professionals billed just under $2,000 in total, however, their billing rates are $395.00 per hour and their mere inclusion in lead counsel's application highlights the need for further scrutiny of the Final Applications.

35. Last, the numerous redactions in the Final Applications make it unduly burdensome and, in some instances, exceedingly difficult for NexPoint to determine whether a given professional's time entry constituted an actual, reasonable, and necessary cost and expense aimed at benefiting Debtor's bankruptcy estate within the meaning of 11 U.S.C. § 330(a).

36. These are just some of the issues NexPoint's initial review identified that militate in favor of affording Professor Markell and Legal Decoder to pursue their collective fee examiner work in this case – again, at NexPoint's own expense.

37. Finally, while NexPoint is hopeful that it will be able to reach an agreement with the Retained Professionals to proceed with the Final Applications with the assistance of a fee examiner as outlined in the Response and the Markell Declaration (and, indeed, NexPoint's counsel has undertaken and will continue to undertake such efforts in advance of the November 9, 2021 hearing with Debtor's and the Unsecured Creditors' Committee's Retained Professionals), NexPoint respectfully submits that each of the Final Applications must be denied for insufficient service of process that contravenes the Confirmation Order, the Confirmed Plan, Federal Rules of Bankruptcy Procedure 2002 and 2016, Local Rules 2002-1(a)(6) and 2016-1(c)(1)-(3), and the Local Guidelines.  The faulty notice of the applicable and governing objection deadlines for the Final Applications listing November 2, 2021, instead of November 8, 2021, with a corresponding hearing date of November 9, 2021, raises the distinct and substantial possibility that parties in interest elected to forego objecting to the Final Applications because the already truncated objection period was wrongly shortened, causing parties-in-interest to forego filing an objection altogether.  For this reason, as well as for the reasons set forth herein, NexPoint respectfully submits that the Final Applications should either be denied for lack of personal

jurisdiction, such that any order that may issue from this Court cannot bind any party in interest, including NexPoint, *in personam*; or, NexPoint should be permitted the opportunity to retain and employ Professor Markell and Legal Decoder as set forth herein.

## CONCLUSION

WHEREFORE, NexPoint respectfully submits that the Court enter an order either (i) denying the Final Applications for inadequate and insufficient notice and corresponding lack of personal jurisdiction over creditors and other parties in interest, or (ii) treat the November 9, 2021, hearing as a scheduling conference permitting discovery and NexPoint's employment of Professor Markell and Legal Decoder to work collectively as a fee examiner in this case – again, at NexPoint's exclusive expense, so all parties-in-interest may properly prepare and file objections to the Final Applications.

Dated: November 2, 2021

Respectfully Submitted,

JAIN LAW & ASSOCIATES PLLC

By: /s/ Kristin H. Jain
Kristin H. Jain, Esq.
Texas Bar No. 24010128
JAIN LAW & ASSOCIATES PLLC
400 North Saint Paul, Suite 510
Dallas, Texas 75201
Telephone: (214) 446-0330
Facsimile: (214) 446-0321
Email: KHJain@JainLaw.com
*Local Counsel for NexPoint Advisors, L.P.*

SCHWARTZ LAW, PLLC

By: /s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
*(Motion for Admission Pro Hac Vice to be filed)*
601 East Bridger Avenue
Las Vegas, NV 89101
*Counsel for NexPoint Advisors, L.P.*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on November 2, 2021, a true and correct copy of the foregoing OMNIBUS OBJECTION AND RESPONSE OF NEXPOINT ADVISORS, L.P., CREDITOR AND PARTY IN INTEREST UNDER 11 U.S.C. § 1109(B), PURSUANT TO 11 U.S.C. §330(A) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2016 TO FINAL FEE APPLICATIONS SUBMITTED BY VARIOUS ESTATE PROFESSIONALS was served via the Court's e-filing system upon all parties requesting notice, the Retained Professionals or their counsel, counsel for the Debtor and the United States Trustee.

                                            /s/ Kristin H. Jain