Kristin H. Jain, Esq.
Texas Bar No. 24010128
JAIN LAW & ASSOCIATES PLLC
400 North Saint Paul, Suite 510
Dallas, Texas 75201
Telephone: (214) 446-0330
Facsimile: (214) 446-0321
Email: KHJain@JainLaw.com

*Local Counsel for NexPoint Advisors, L.P.*

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV 89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

*Counsel for NexPoint Advisors, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case N. 19-34054 (SGJ) |
| Debtor. | |

**SUPPLEMENTAL OMNIBUS RESPONSE OF NEXPOINT ADVISORS,**
**L.P., CREDITOR AND PARTY IN INTEREST PURSUANT TO 11 U.S.C. § 330(a)**
**AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2016 TO FINAL**
**FEE APPLICATIONS SUBMITTED BY VARIOUS ESTATE PROFESSIONSALS**

NexPoint Advisors, L.P., creditor and party in interest under 11 U.S.C. § 1109(b)

("**NexPoint**"), respectfully submits this omnibus supplemental response (the "**Supplemental**

**Response**") to the final fee applications (the "**Final Applications**") of the retained professionals

1

(the "**Retained Professionals**"), seeking awards of compensation and reimbursement of out-of-pocket expenses in the above-captioned chapter 11 case of Highland Capital Management, L.P. (the "**Debtor**").[1] NexPoint's Supplemental Response is supported by the Declaration of Joseph Tiano, Chief Executive Officer of Legal Decoder, which is attached hereto as Exhibit A (the "**Legal Decoder Declaration**").

## INTRODUCTION

1.      The Initial Objection was inartful in that it failed to make clear the following points:

     a.  NexPoint does not seek the appointment of a fee examiner pursuant to 11 U.S.C. § 1104(c) – NexPoint seeks time to retain Professor Bruce A. Markell and Legal Decoder as its experts to review the Final Applications;

     b.  Professor Markell provided a declaration which stated he would only provide an opinion in this matter and "consent to be an expert as to the reasonableness or necessity of the fees or expenses" after he undertakes a review of the Final Applications (ECF 2977-1, ¶ 9);

     c.  NexPoint will pay all of the fees and costs incurred by Professor Markell and Legal Decoder – not the bankruptcy estate;

     d.  If Professor Markell and Legal Decoder find the legal fees and costs of the Final Applications were reasonable and necessary, NexPoint will withdraw its objections; and

     e.  NexPoint consents to the payment of half of the Retained Professionals' holdbacks immediately (i.e. 10% of the 20% currently held in reserve).

2.      At bottom, NexPoint renews its request that the Court continue the hearing of the Final Applications to permit NexPoint to retain Professor Bruce A. Markell and Legal Decoder

---

[1]      By this reference, NexPoint incorporates its previously filed *Omnibus Objection and Response of NexPoint Advisors, L.P., Creditor and Party In Interest Under 11 U.S.C. § 1109(b), Pursuant to 11 U.S.C. § 330(a) and Federal Rule of Bankruptcy Procedure 2016 to Final Fee Applications Submitted by Various Professionals (ECF No. 2977)* (the "**Initial Objection**") into the Supplemental Response.

as NexPoint's experts to review the Final Applications, at NexPoint's expense, and submit an expert report to assist the Court in its review of the Final Applications.

3.      Indeed, NexPoint did not intend its use of the term "fee examiner" to infer it was making a request under 11 U.S.C. § 1104(c) – as such a request is no longer possible given the current procedural, post-confirmation posture of this case.   The error in equivocation notwithstanding, NexPoint respectfully submits that its retention of Professor Markell and Legal Decoder will benefit the Court, the United States Trustee, creditors, and other parties in interest greatly by ensuring that any award of fees or reimbursement of actual and necessary expenses under 11 U.S.C. § 330(a) to the Retained Professionals does not unnecessarily diminish creditor recoveries in this case.

4.      NexPoint further submits the timing of the Initial Objection was appropriate with respect to both a case of this size and nature, and the law of this case.  First, following the Supreme Court's opinion in *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121 (2015), the practice in large Chapter 11 cases evolved to reserving objections to the fees and costs of estate professionals for the end of the case, so that (a) estate professionals' fees were not diluted litigating fee objections and (b) bankruptcy courts are not caught up in interim fee application litigation.  Second, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "**Interim Compensation Procedures Order**"), held that the payment of interim compensation was not supposed to prejudice the ability of a party in interest in objecting to any final request for an award of professional fees or reimbursement of actual and necessary expenses.  (ECF No. 141; pg. 4 of 6, ¶ k.).  NexPoint submits it always understood now was the time to raise objections to the Final Applications.

5.      Ultimately, NexPoint seeks 60 days of discovery for Professor Markell and Legal

Decoder to perform their review of the Final Applications – again at NexPoint's cost. *See* ECF 2977-1, ¶ 7. NexPoint will supplement its objections, if any, based on the findings of Professor Markell and Legal Decoder at the end of those 60 days. Upon the filing of any further objections, the Retained Professionals may have as much time as they deem necessary to reply to NexPoint's objections, after which the Court can set an evidentiary hearing. If NexPoint does not supplement its objections to the Final Applications because Professor Markell and Legal Decoder will not provide any testimony of the same, NexPoint's objections shall be deemed withdrawn, and the Final Applications approved.

6.      Again, NexPoint agrees the Retained Professionals should immediately receive half of any funds currently held in reserve for approval of the Final Applications (i.e. 10% of the 20% holdback). While NexPoint did not have sufficient time to review the Final Applications of the Retained Professionals as set forth in the Initial Objection and further described below, NexPoint was able to conclude objections are no longer necessary to the fees and costs of Deloitte Tax LLP (Debtor's Tax Services Provider), ECF No. 2911 and Mercer (US) Inc. (Debtor's Compensation Consultant), ECF No. 2908. NexPoint is not seeking to be punitive. It merely seeks sufficient time to retain its experts, and expeditiously review the fees and costs of the remaining Retained Professionals.

## Immediate Procedural History

7.      Following the filing of the Initial Objection, the Court advised counsel by electronic mail of its decision to continue the hearing of the Final Applications from their originally slated hearing date and time of Tuesday, November 9, 2021, at 9:30 a.m. (CST) to Wednesday, November 17, 2021 at 9:30 a.m. (CST). Further, the Court directed NexPoint to file a supplemental response, if any, to the Final Applications by Friday, November 12, 2021, at 5:00

p.m. (CST). Pursuant to the Court's order and additional guidance, NexPoint hereby supplements the record on the Final Applications through this Supplemental Response.

8. On Friday, November 5, 2021, the professionals of the above-captioned reorganized debtor Highland Capital Management, L.P., (the "**Reorganized Debtor's Professionals**"), through the law firms of Pachulski, Stang, Ziehl, & Jones LLP ("**PSZJ**") and Hayward PLLC (the "**Hayward Firm**") collectively filed their *Reply of Debtor Professionals to Omnibus Objection of NexPoint Advisors, L.P., to Final Fee Applications Submitted by Various Estate Professionals (ECF No. 2988)* (the "**Reorganized Debtor's Reply**").

9. Likewise on Friday November 5, 2021, counsel to the Official Committee of Unsecured Creditors (the "**OCUC**"), the law firm of Sidley Austin LLP ("**Sidley**"), filed its *Response of Sidley Austin LLP, Attorneys for the Official Committee of Unsecured Creditors, to Omnibus Objection and Response of NexPoint Advisors, L.P., Creditor and Party in Interest Under 11 U.S.C. § 1109(b), Pursuant to 11 U.S.C. § 330(a) and Federal Rule of Bankruptcy Procedure 2016 to Final Applications Submitted by Various Estate Professionals (ECF No. 2994)* (the "**Sidley Reply**").[2]

10. The Court further advised both the Reorganized Debtor's Professionals and Sidley (on behalf of itself, FTI, and Teneo) that they would be permitted to file any further reply(ies) to NexPoint's Supplemental Response through Tuesday, November 16, 2021 at 5:00 p.m. (CST).

---

[2] The Sidley Reply includes the undefined term "Committee Professionals." (ECF No. 2994, pg. 2 of 6, ¶ 1). The Sidley Reply later references "the other Committee professionals" in its reservation of rights to reply further to any supplement(s) NexPoint may file in connection with the Initial Objection. For the avoidance of doubt and in a further effort to avoid unnecessary litigation over collateral matters, NexPoint understands the Sidley Reply to stand for Sidley, as well as for retained OCUC professionals FTI Consulting ("**FTI**") and Teneo Capital, LLC ("**Teneo**"). For purposes of clarity of the record before the Court, NexPoint does not oppose the filing of any joinder by either FTI or Teneo to the Sidley Reply and any further reply by Sidley may file in reply to NexPoint's Supplemental Response.

## STANDING

11.     NexPoint has standing to prosecute both the Initial Objection and the Supplemental

Response.  NexPoint qualifies as a party in interest within the meaning of 11 U.S.C. § 1109(b),

and that is all that is necessary under 11 U.S.C. § 330 to object to the Final Applications of the

Retained Professionals.

12.     To start, 11 U.S.C. § 330(a)(1) states:

> After **notice to the parties in interest** and the United States Trustee
> and a hearing, and subject to sections 326, 328, and 329, the court
> may award to a trustee, a consumer privacy ombudsman appointed
> under section 332, an examiner, an ombudsman appointed under
> section 333, or a professional person employed under section 327 or
> 1103 –

11 U.S.C. § 330(a)(1) (emphasis added).

13.     L.B.R. 2002-1(a) likewise addresses twenty-one (21) day notice to **parties in**

**interest**.  *See* L.B.R. 2002-1(a).  Included among the notices set forth in L.B.R. 2002-1's

requirement of 21-days' notice to parties in interest is "Notice of hearings on all applications for

compensation or reimbursement of expenses totaling in excess of $1,000.00, except those to be

heard in connection with a chapter 7 Trustee's Final Report, shall be prepared and served by the

applicant."  L.B.R. 2002-1(a)(6).

14.     Section 1109(b) of the Bankruptcy Code, in turn, both defines a party in interest

and, importantly, establishes the scope of conduct a party in interest may undertake in a chapter

11 case as follows:

> A party in interest, including the debtor, the trustee, a creditors'
> committee, an equity security holders' committee, a creditor, an
> equity security holder, or any indenture trustee, **may raise and may**
> **appear and be heard on any issue in a case under this chapter.**

11 U.S.C. § 1109(b) (emphasis added).

15. NexPoint, as a creditor and party in interest, has standing to file both the Initial Objection and Supplemental Response and be heard on the Final Applications pursuant to 11 U.S.C. §§ 330(a)(1) and 1109(b), as well as under L.B.R. 2002-1(a)(6).

16. While neither 11 U.S.C. § 1109(b) nor any other section in the Bankruptcy Code specifically defines the term "party in interest," section 1109(b) provides a non-exclusive list of entities that fall within the meaning of "party in interest" for the purposes of a chapter 11 proceeding. *See Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.*, 852 F.3d 405, 413 (5th Cir. 2017) ("The Bankruptcy Code does not provide an exclusive definition of a party in interest, but the Code broadly includes debtors, creditors, trustees, indenture trustees, and equity security holders among the parties entitled, *e.g.*, to notice of proceedings in the case.").

17. Specifically, section 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee may raise and may appear and be heard on any issue in a case under [Chapter 11]." 11 U.S.C. § 1109(b). This section "has been construed to create a broad right of participation in Chapter 11 cases." *In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (quoting *In re Combustion Engineering, Inc.*, 391 F.3d 190, 214 n.21 (3d Cir. 2004)).

18. Parties in interest "include not only the debtor, but anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *Adair v. Sherman*, 230 F.3d 890, 894 n. 3 (7th Cir. 2000). *See also* 4 COLLIER ON BANKRUPTCY P 502.02 (16th ed. 2020) ("In the context of a chapter 11 case in particular, the term 'party in interest' expressly includes the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee.").

19.    Further, in the context of a court's evaluation of the Final Applications, the input and interests of creditors are of particular importance.

20.    Here, NexPoint has standing to be heard on any issue in this Chapter 11 case, including related to the Final Applications, because it is (i) a creditor and (ii) a party in interest as those terms are interpreted under the Bankruptcy Code.

21.    For purposes of Article III standing, the crux of the Reorganized Debtor's Reply is addressed to whether a favorable ruling will yield a sufficient return to NexPoint to justify what the Reorganized Debtor's Professionals, Sidley, and the OCUC's professionals appear to contend is an undue or unnecessary exercise.  Indeed, the argument is advanced that, for every $1 million reduction in professional fees, NexPoint stands to gain, allegedly, an enhanced estate dividend of $130.00.  But, this proves too much, because this admission, in and of itself, establishes NexPoint's Article III standing.

22.    First, the Court's jurisdiction over the Final Applications is predicated upon federal question, not diversity jurisdiction.  *See, e.g.,* 28 U.S.C. § 1334(e)(2); *see also In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 624 (Bankr. E.D. Cal. 2012) (construing 28 U.S.C. § 1334(e)(2) to confer exclusive jurisdiction to bankruptcy courts over professional compensation issues arising under 11 U.S.C. § 330).  As the Supreme Court of the United States recently observed and held, Congress long ago abolished the requirement of a minimum amount in controversy for purposes of establishing federal question jurisdiction.  *See Uzuegbunam v. Preczewski*, ___ U.S. ___, 141 S. Ct. 792, 802 (2021) ("But Congress abolished the statutory amount-in-controversy requirement for federal question jurisdiction in 1980…And we have never held that one applies as a matter of constitutional law.") (internal citation omitted).  Indeed, in that case, the majority held that nominal damages or compensatory damages of one dollar ($1.00)

are sufficient to establish the redressability requirement under Article III.

23.     So, whether as a party in interest under 11 U.S.C. § 1109(b) or for purposes of Article III, NexPoint clearly has the requisite standing to prosecute both the Initial Objection and Supplemental Response and to be heard with respect to the Final Applications.   NexPoint respectfully submits that it should be permitted to participate fully at the upcoming hearing on November 17, 2021, unfettered by any such concerns as they are demonstrably without merit.

## THE INTERIM COMPENSATION ORDER AND SECTION 328

24.     As set forth above, the Interim Compensation Procedures Order provides:

> Neither (i) the payment of or the failure to pay, in whole or in part, interim compensation and/or the reimbursement of or the failure to reimburse, in whole or in part, expense under the Interim Compensation Procedures nor (ii) the filing of **or failure to file an Objection will bind any party in interest or the Court with respect to the allowance or applications for payment of compensation and reimbursement of expenses of Professionals. All fees and expenses paid to Professionals under the Interim Compensation Procedures are subject to disgorgement until final allowance by the Court.**

*Id.* (emphasis added).   NexPoint submits the timing of the Initial Objection was appropriate pursuant to the Interim Compensation Procedures Order.

25.     The Court's Order approving PSZJ's retention and employment does not approve in advance PSZJ's rate structure under 11 U.S.C. § 328(a).  (ECF No. 183).

26.     Likewise, the Court's order approving Sidley's retention specifically provides that Sidley's compensation in this case is governed by 11 U.S.C. §§ 330 and 331, not 11 U.S.C. § 328(a).  (ECF No. 334, pg. 2 of 3, ¶ 3).

27.     The Court's order authorizing Debtor's retention and employment of Deloitte Tax LLP similarly makes no mention of 11 U.S.C. § 328(a).  (ECF No. 551).

28.     Although the Court's order authorizing Debtor's employment of the Hayward

Firm specifically references 11 U.S.C. § 328(a), it does not provide a specific number of hours the Hayward Firm is authorized to bill at a predetermined rate structure. (ECF No. 435).

29. The same is true for the Court's order authorizing the Debtor to retain and employ Wilmer Cutler Pickering Hale and Dorr LLP. (ECF No. 669).

30. As is the case for Mercer (US) Inc. as compensation consultant to the Debtor. (ECF No. 381).

31. For its part, none of Hunton Andrews Kurth LLP's orders specifically references 11 U.S.C. § 328(a). (ECF Nos. 763, 1169, and 2686).

32. The Court's order authorizing the OCUC's retention and employment of FTI Consulting, Inc. as its financial advisor similarly makes no reference to 11 U.S.C. § 328(a). (ECF No. 336).

33. Finally, the Court's order authorizing the OCUC's retention and employment of Teneo Capital, LLC as the OCUC's litigation advisor excludes any reference to 11 U.S.C. § 328(a). (ECF No. 2443).

34. Regardless of the Retained Professional and irrespective of whether a given employment order even referenced 11 U.S.C. § 328(a), NexPoint's review of the docket did not disclose the entry of any order(s) for Retained Professionals pursuant to which a given Retained Professional was expressly authorized to bill a predetermined number of hours pursuant to an otherwise approved rate structure under 11 U.S.C. § 328(a).

## LEGAL STANDARD

### I. The Retained Professionals Have Not Satisfied 11 U.S.C. §§ 330(a)(3)(B) & (F)

35. Each of the Retained Professionals bears the burdens of proof and persuasion with respect to their respective Final Application.

36.     For purposes of the lodestar analysis under 11 U.S.C. § 330, this requires each Retained Professional to establish reasonableness of the rates that they charge, as well as that the level of compensation sought by a given Retained Professional is reasonable when compared to compensation rates of comparably skilled practitioners in non-bankruptcy cases. 11 U.S.C. §§ 330(a)(3)(B) and (a)(3)(F).

37.     NexPoint respectfully submits that each of the Retained Professionals has failed to carry its assigned burdens of proof and persuasion under 11 U.S.C. § 330(a) to establish the reasonableness of the rates that they charged in this case, and that their respective levels of compensation sought by each Retained Professional is appropriate when compared to similarly skilled professionals in non-bankruptcy cases.

38.     It is important to note that no Retained Professional benefits here in these twin regards by virtue of advance approval under 11 U.S.C. § 328(a). As the Fifth Circuit observed, even in instances where approval of an hourly rate structure has been sought and obtained in advance under 11 U.S.C. § 328(a) (which is not the case with respect to the overwhelming majority of the Retained Professionals), the failure to obtain the Court's preapproval of a specific number of hours that can be billed at the preapproved rate shifts a reviewing court's review and determination of the reasonableness of hourly rates from one under 11 U.S.C. § 328(a) to one under 11 U.S.C. § 330(a) and its requisite lodestar analysis. *See Asarco, L.L.C. v. Barclays Capital, Inc. (In re Asarco, L.L.C.)*, 702 F.3d 250, 261 n.10 (5th Cir. 2012) ("We note in passing, however, that when a court approves a specific hourly rate (e.g. $200 per hour) pursuant to § 328(a) but fails to pre-approve the specific number of hours that will be billed at that pre-approved hourly rate, the court may review the hours billed for reasonableness in accordance with § 330(a).") (citation omitted).

39. Here, other than conclusory statements, the Retained Professionals have simply failed to carry their assigned burden under the lodestar analysis of establishing the reasonableness of their compensation rate structures and that their requested fee and expense reimbursement awards compare favorably to those of comparably skilled professionals practicing in non-bankruptcy areas of law as contemplated by 11 U.S.C. § 330(a)(3)(B) and (a)(3)(F).

40. The failure to carry this burden should result in the denial of the Final Applications, without prejudice to their resubmission with the benefit and support of an adequate evidentiary record. As a more appropriate remedy, NexPoint respectfully submits that the Final Applications should be set for an evidentiary hearing as contemplated by the Local Guidelines within the context, for example, of preapprovals under 11 U.S.C. § 328(a) to permit the Retained Professionals to supplement their submissions to the Court while, at the same time, permitting NexPoint the opportunity to enlist the services of Professor Markell and Legal Decoder to review each of the Final Applications.

41. Again, however, NexPoint was able to conclude objections are no longer necessary to the fees and costs of Deloitte Tax LLP (Debtor's Tax Services Provider), ECF No. 2911, and Mercer (US) Inc. (Debtor's Compensation Consultant), ECF No. 2908.

## II. Specific Fee Objections

42. NexPoint references and incorporates the specific objections identified in its Initial Objection. In addition, NexPoint raises these specific issues, which it submits make it nearly impossible to review and consider the reasonableness of the fees and costs requested by the Retained Professionals, as follows:

    a. The Final Applications incorporate or reference redacted time entries that cannot be evaluated, including those of:

       i.   Foley Gardere, Foley & Lardner LLP, ECF Nos. 270, 394, 538, 539, 540, 541, 601, 751, 762; and

      ii.   Hunton Andrews Kurth LLP, ECF Nos. 1925, 2644, and 2645.

b.   The certifications of the Sidley and PSZJ Final Applications indicate the time entries were culled for privileged information, which NexPoint understands is appropriate, save and except the redacting or rewriting of time entries to protect privileged information should be vetted for reasonableness (*see* ECF Nos. 2904 and 2906); and

c.   The rate tables of the professionals do not always coincide with the billable rates reflected in the time entries (*see e.g.* ECF 2646 – the rate of Jennifer Seybold is disclosed as $740, however, the time entries reflect a rate of $765).

43.    NexPoint anticipates these matters can be readily reviewed, considered and disposed of, provided NexPoint is given sufficient time to hire Professor Markell and Legal Decoder.  Specifically, Legal Decoder reviews the time entries through the use of software to identify anomalies, inconsistencies (such as mis-matched time entries and billing rates) and excessive time, at a pace that is far faster and less expensive than reviewing the time manually. In turn, Professor Markell can review the anomalies, inconsistencies and excessive time identified by Legal Decoder for their reasonableness and appropriateness and provide a report for all parties in interest (if any) at NexPoint's expense.  The process proposed herein is efficient, effective, and bears no expense to the estate.  As such, NexPoint submits it should be granted the time necessary to properly review the Final Applications as set forth herein.

## **CONCLUSION**

WHEREFORE, NexPoint respectfully submits that the Court enter an order: (i) withdrawing the objections to the Final Applications of Deloitte Tax LLP (Debtor's Tax Services Provider), ECF No. 2911, and Mercer (US) Inc. (Debtor's Compensation Consultant), ECF No. 2908; (ii) immediately releasing and authorizing the payment of half of the remaining Retained Professionals' holdbacks (i.e. 10% of the 20% holdback); and (iii) treating the November 17, 2021, hearing as a scheduling conference permitting discovery and NexPoint's employment of Professor Markell and Legal Decoder, at NexPoint's exclusive expense, so all parties-in-interest may properly prepare and file objections to the Final Applications.

Dated: November 12, 2021    Respectfully Submitted,

           JAIN LAW & ASSOCIATES PLLC

           /s/ *Kristin H. Jain*
           Kristin H. Jain, Esq.
           Texas Bar No. 24010128
           400 North Saint Paul, Suite 510
           Dallas, Texas 75201
           Telephone: (214) 446-0330
           Facsimile: (214) 446-0321
           Email: KHJain@JainLaw.com
           *Local Counsel for NexPoint Advisors, L.P.*

           AND

           SCHWARTZ LAW, PLLC

           /s/ *Samuel A. Schwartz*
           Samuel A. Schwartz, Esq.
           Nevada Bar No. 10985
           601 East Bridger Avenue
           Las Vegas, NV 89101

           *Counsel for NexPoint Advisors, L.P*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 12, 2021, a true and correct copy of the foregoing SUPPLEMENTAL OMNIBUS RESPONSE OF NEXPOINT ADVISORS, L.P., CREDITOR AND PARTY IN INTEREST UNDER 11 U.S.C. § 1109(B), PURSUANT TO 11 U.S.C. §330(A) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2016 TO FINAL FEE APPLICATIONS SUBMITTED BY VARIOUS ESTATE PROFESSIONALS was served via the Court's e-filing system upon all parties requesting notice, the Retained Professionals or their counsel, counsel for the Debtor and the United States Trustee.

/s/ *Kristin H. Jain*