Kristin H. Jain, Esq.
Texas Bar No. 24010128
JAIN LAW & ASSOCIATES PLLC
400 North Saint Paul, Suite 510
Dallas, Texas 75201
Telephone: (214) 446-0330
Facsimile: (214) 446-0321
Email: KHJain@JainLaw.com

*Local Counsel for NexPoint Advisors, L.P.*

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV  89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

*Counsel for NexPoint Advisors, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Reorganized Debtor. | Chapter 11<br><br>Case N. 19-34054 (SGJ) |

**DECLARATION OF JOSEPH TIANO, CHIEF EXECUTIVE OFFICER OF LEGAL DECODER IN SUPPORT OF SUPPLEMENTAL OMNIBUS RESPONSE OF NEXPOINT ADVISORS, L.P., CREDITOR AND PARTY IN INTEREST PURSUANT TO 11 U.S.C. § 330(a)AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2016 TO FINAL FEE APPLICATIONS SUBMITTED BY
<u>VARIOUS ESTATE PROFESSIONSALS</u>**

JOSEPH TIANO, being duly sworn deposes and says:

1. I am over the age of 18 and mentally competent. Unless otherwise stated or qualified, I have personal knowledge of the facts asserted herein. To the extent that any of the following facts are predicated upon my information and belief, I believe those facts to be true. If called upon to testify as to those matters set forth herein for which I have personal knowledge, I could and would do so.

2. I am currently employed as the Chief Executive Officer of Legal Decoder. I am also a lawyer (non-practicing).

3. As the Chief Executive Officer of Legal Decoder, I am authorized to submit this declaration on behalf of Legal Decoder and in support of the above-referenced supplemental response.

4. I was asked by counsel to NexPoint Advisors, L.P. ("**NexPoint**") to evaluate the Final Applications[1] of the Retained Professionals on a preliminary basis to see whether Legal Decoder's software could assist this Court, the United States Trustee, creditors of Highland Capital Management, L.P., the captioned reorganized debtor, and other parties in interest, in an analysis of the Final Applications.

5. On behalf of Legal Decoder, I submit that Legal Decoder's software can programmatically analyze the Final Applications using bankruptcy fee benchmarks and industry-wide billing data and efficiency metrics that help to inform a Section 330 "reasonableness" analysis.

6. At the request of, and upon engagement by NexPoint, Legal Decoder proposes to assist the Court in this regard by analyzing and providing to the Court, via Professor Markell, an

---

[1] Capitalized terms no otherwise defined herein are assigned the meaning(s) set forth in NexPoint's Supplemental Response.

analysis of the fee data contained in the Final Applications using Legal Decoder's proprietary software.

7. Without question, I believe that Professor Markell's excellent credentials speak for themselves.

8. I believe that there are several capabilities which make Legal Decoder's legal spend data analytics software of potentially great service to the Court and all parties in interest in this case.

9. First, Legal Decoder's software, which analyzes attorneys' fee data (and other professionals' fee data) on a line item-by-line item basis has been designed and developed to identify the problematic billing behaviors and inefficiencies highlighted in the 2013 Fee Examiner Guidelines.

10. Second, Legal Decoder's software has been used in several high-profile bankruptcy cases, such as PG&E, Toys R Us, Purdue Pharma, Libbey Glass, MTE Holdings, and ZettaJet.

11. Third, Legal Decoder's software is used outside of the bankruptcy context by both AmLaw50 law firms and corporate legal departments, so its software analysis is neutral and objective in its assessments of staffing efficiency, workflow efficiency, and billing hygiene.

12. Lastly, Legal Decoder brings to bear for the Court, the benefit of software developed based on billions of dollars of fee data analyzed and benchmarked and resulting data insights to help guide the Court's Section 330 reasonableness assessment.

13. Legal Decoder has compiled and offers for the Court's consideration the following statistics (based on billions in analyzed legal fee data arising in the bankruptcy cases) to demonstrate how valuable programmatic data analysis, combined with an expert opinion, could be to the Court's Section 330 "reasonableness" decision:

a. Over 58.7% of line items submitted in a fee applications in other cases have triggered a "flag" in Legal Decoder's data analytics software, meaning that the line item needs to be further evaluated for a staffing efficiency, workflow efficiency, or billing hygiene issue. I have no reason to believe that fee applications in the Highland Capital case will pose any different burden on the Court with respect to the volume of line items meriting heighten scrutiny when undertaking a Section 330 "reasonableness" analysis.

b. Across more than a billion of dollars of bankruptcy professional fee data, 4 of the 5 most frequent flags triggered (which accounted for 28% of total flags) were the Excessive Time (ET) flag, the Skill Set Mismatch – Overqualified (SM-OQ) flag, the Office Communication (OC) flag and the Excessive Research (ER) flag. Manually identifying the behaviors and activities underlying these four flags in invoice data is difficult, particularly without any readily available industry benchmarks at hand. Importantly, these behaviors increase professional fees very quickly. A programmatic analysis using Legal Decoder's software with the overlay of Professor Markell's expertise can be done efficiently and effectively to identify any problematic behaviors which run afoul of Section 330.

c. In other bankruptcy cases, Legal Decoder's software has recommended "write-downs" of professional fees of less than 1.0% to over 35.0%. Never before has the recommended "write-down" generated by Legal Decoder's software been blindly accepted or adopted by a fee examiner or a bankruptcy judge. I do not expect that to change in the Highland Capital case. Indeed, the value Legal Decoder brings to bear is speed, objectivity, consistency and data benchmarking, which benefits all

parties involved. Professor Markell will take Legal Decoder's analysis, as he has done in prior cases, and augment the Legal Decoder analysis with his expert opinion. For all parties involved, I believe the combination of Legal Decoder's solution and Professor Markell's expertise results in the best Section 330 analysis.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 12, 2021

/s/ Joseph Tiano
Joseph Tiano