PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
       jmorris@pszjlaw.com
       gdemo@pszjlaw.com
       hwinograd@pszjlaw.com

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
       ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |

**REORGANIZED DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING
SETTLEMENT WITH PATRICK HAGAMAN DAUGHERTY (CLAIM NO. 205)
AND AUTHORIZING ACTIONS CONSISTENT THEREWITH**

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

# TABLE OF CONTENTS

**PAGE**

JURISDICTION ...................................................................................................................1

RELEVANT BACKGROUND .............................................................................................2

      A.    Procedural Background...................................................................................2

      B.    Procedural Overview of Mr. Daugherty's Claim.......................................2

      C.    Summary of Mr. Daugherty's Claim ........................................................6

      D.    The Parties Engage in Arm's-Length Settlement Discussions ................8

      E.    Summary of Settlement Terms .................................................................9

BASIS FOR RELIEF REQUESTED .....................................................................................10

NO PRIOR REQUEST ...........................................................................................................12

NOTICE...................................................................................................................................12

DOCS_NY:44641.3 36027/003

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*,
 68 F.3d 914 (5th Cir. 1995) ................................................................................................ 11

*In re Age Ref. Inc.*,
 801 F.3d 530 (5th Cir. 2015) ......................................................................................... 10, 11

*Myers v. Martin (In re Martin)*,
 91 F.3d 389 (3d Cir. 1996) ................................................................................................. 10

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*,
 119 F.3d 349 (5th Cir. 1997) .............................................................................................. 11

*Rivercity v. Herpel (In re Jackson Brewing Co.)*,
 624 F.2d 599 (5th Cir. 1980) .............................................................................................. 10

*United States v. AWECO, Inc. (In re AWECO, Inc.)*,
 725 F.2d 293 (5th Cir. 1984) .............................................................................................. 10

DOCS_NY:44641.3 36027/003

TO THE HONORABLE STACEY G. C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE:

Highland Capital Management, L.P., the above-captioned reorganized debtor (the "<u>Reorganized Debtor</u>" or "<u>Debtor</u>," as applicable), files this motion (the "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), approving a settlement agreement (the "<u>Settlement Agreement</u>"),[2] a copy of which is attached as Exhibit 1 to the *Declaration of John A. Morris in Support of the Debtor's Motion for Entry of an Order Approving Settlement with Patrick Hagaman Daugherty (Claim No. 205) and Authorizing Actions Consistent Therewith* being filed simultaneously with this Motion ("<u>Morris Dec.</u>"), that, among other things, fully and finally resolves the proof of claim filed by Patrick Hagaman Daugherty ("<u>Mr. Daugherty</u>"). In support of this Motion, the Reorganized Debtor represents as follows:

### **<u>JURISDICTION</u>**

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory predicates for the relief sought herein are sections 105(a) and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Bankruptcy Rules.

---

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

## RELEVANT BACKGROUND

### A.      Procedural Background

3.      On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Court").

4.      On October 29, 2019, the official committee of unsecured creditors (the "Committee") was appointed by the U.S. Trustee in the Delaware Court.

5.      On December 4, 2019, the Delaware Court entered an order transferring venue of the Debtor's case to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court"). [Docket No. 186].[3]

6.      On February 22, 2021, the Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization (as Modified) and (ii) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order") with respect to the *Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1808] (as subsequently modified, the "Plan").

7.      The Plan went effective on August 11, 2021 (the "Effective Date") and, on that same date, the Reorganized Debtor filed the *Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 2700]. The Reorganized Debtor has commenced making distributions on certain allowed claims in accordance with the terms of the Plan.

### B.      Procedural Overview of Mr. Daugherty's Claim

8.      Mr. Daugherty is a former employee and limited partner of the Debtor and previously served in other positions with affiliates and former affiliates of the Debtor.

---

[3] All docket numbers refer to the docket maintained by this Court.

9.     At the time of his resignation, Mr. Daugherty owned 19.1% of the preferred units of Highland Employee Retention Assets LLC ("HERA"), an employee deferred-compensation vehicle managed by the Debtor and Highland ERA Management, LLC ("ERA Management"). Mr. Daugherty contends that he owned or had the right to own all of the preferred units of HERA.

10.     In April 2012, following Mr. Daugherty's resignation and while under the control of James Dondero ("Mr. Dondero"), the Debtor commenced an action against Mr. Daugherty in Texas state court (the "Texas Action"), and Mr. Daugherty subsequently asserted (i) counterclaims for breach of contract and defamation, and (ii) third-party claims against HERA and others.

11.     After a three-week trial, (a) the Debtor obtained a verdict on its claims against Mr. Daugherty for breach of contract and breach of fiduciary duty and obtained an award of $2.8 million in attorney's fees; and (b) Mr. Daugherty obtained a verdict on his claims against the Debtor and Mr. Dondero for defamation with malice and a third-party claim against HERA and obtained an award of $2.6 million against HERA (the "HERA Judgment"). The HERA Judgment was affirmed on appeal on December 1, 2016.

12.     In July 2017, after being unable to collect on the HERA Judgment, Mr. Daugherty commenced an action against the Debtor, Mr. Dondero, HERA, and ERA Management in the Delaware Chancery Court (the "Chancery Court") in a case captioned *Daugherty v. Highland Capital Management, L.P., et al.*, C.A. No. 2017-0488-MTZ, for, among other claims, fraudulent transfer, promissory estoppel, unjust enrichment, indemnification, and "fees on fees" (the "Highland Chancery Case").

13.     In the spring of 2019, the Chancery Court in the Highland Chancery Case (i) found that the Dondero-related defendants improperly withheld dozens of documents in discovery on privilege grounds, and (ii) ruled that there was "a reasonable basis to believe that a fraud has been perpetrated" such that the Chancery Court applied the "crime-fraud exception" to

3

the attorney-client privilege. Mr. Daugherty asserts that the defendants' failure to provide required discovery injured him by undermining his attempts to build an evidentiary record to support his claims against the Debtor and the other defendants in the Highland Chancery Case.

14.     On October 14, 2019, the Highland Chancery Case proceeded to trial, but on October 16, 2019, before the trial was completed and before the Chancery Court ruled on Mr. Daugherty's and the Debtor's cross-motions for summary judgment regarding indemnification and fees on fees, the Debtor filed for bankruptcy.

15.     On December 1, 2019, Mr. Daugherty filed a separate lawsuit in the Chancery Court captioned *Daugherty v. Dondero, et al.*, C.A. No. 2019-0956-MTZ, against Mr. Dondero, HERA, ERA Management, Hunton Andrews Kurth LLP, Marc Katz, Michael Hurst, the Debtor's then-chief compliance officer, and the Debtor's then in-house counsel, Isaac Leventon and Scott Ellington, for conspiracy to commit fraud among other claims (the "HERA Chancery Case" and together with the Highland Chancery Case, the "Chancery Cases").

16.     On April 1, 2020, Mr. Daugherty filed a general, unsecured, non-priority claim against the Debtor in the amount of at "least $37,483,876.59," and such claim was denoted by the Debtor's claims agent as Proof of Claim No. 67 ("Proof of Claim No. 67").

17.     On April 6, 2020, Mr. Daugherty filed a general, unsecured, non-priority claim against the Debtor in the amount of at "least $37,483,876.59" that superseded Proof of Claim No. 67 and that was denoted by the Debtor's claims agent as Proof of Claim No. 77 ("Proof of Claim No. 77").

18.     On August 31, 2020, the Debtor commenced an adversary proceeding against Mr. Daugherty by filing a complaint (the "Complaint") in which the Debtor: (1) objected to Proof of Claim No. 77 on various grounds (the "Claim Objection"), and (2) asserted a cause of action for the subordination of part of Mr. Daugherty's Claim pursuant to section 510(b) of the

4

Bankruptcy Code. *See* Adv. Proc. No. 20-03107 (the "Adv. Proc.") [Adv. Docket No. 1] (the "Adversary Proceeding").

19.     On September 29, 2020, Mr. Daugherty filed his answer to the Complaint [Adv. Docket No. 8] (the "Answer").

20.     On September 24, 2020, Mr. Daugherty filed his *Motion to Confirm Status of Automatic Stay, or Alternatively to Modify Automatic Stay* [Docket No. 1099] (the "Comfort Motion") pursuant to which he sought to sever the Debtor from the Highland Chancery Case and then consolidate the remaining claims in the Highland Chancery Case into the HERA Chancery Case and proceed with one case against the non-debtors.[4]

21.     On October 23, 2020, Mr. Daugherty filed a motion seeking leave to amend his Proof of Claim [Docket No. 1280] (the "POC Amendment Motion"). The amended proof of claim attached to the POC Amendment Motion increased Mr. Daugherty's general, unsecured, non-priority claim against the Debtor to the amount of at "least $40,710,819.42" and sought to supersede Proof of Claim No. 67 and Claim No. 77.

22.     On October 23, 2020, Mr. Daugherty filed his *Motion for Temporary Allowance of Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018 Motion* seeking for his Claim to be temporarily allowed for voting purposes in the amount of $40,710,819.42 [Docket No. 1281] (the "3018 Motion").

23.     On November 9, 2020, the Debtor filed its *Objection to Patrick Hagaman Daugherty's Motion for Temporary Allowance of Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018 Motion* [Docket No. 1349] (the "3018 Objection").

---

[4] On October 8, 2020, the Debtor commenced a second adversary proceeding against Mr. Daugherty (the "Second Adversary Proceeding"), seeking to enjoin him from prosecuting the Chancery Cases. Adv. Proc. 20-03128 ("2d Adv. Proc.") [2d Adv. Proc. Docket No. 1]. On January 29, 2021, the parties filed a Settlement that resolved the Second Adversary Proceeding, and the Second Adversary Proceeding was subsequently dismissed with prejudice. [2d Adv. Proc. Docket No. 12].

24.     After conducting an evidentiary hearing with respect to the 3018 Motion, the Court entered an order temporarily allowing Mr. Daugherty's Claim for voting purposes in the amount of $9,134,019 [Docket No. 1474] (the "Rule 3018 Order").

25.     On November 3, 2020, the Court granted the Comfort Motion [Docket No. 1327].

26.     On December 10, 2020, the Court entered an order [Docket No. 1533] granting the POC Amendment Motion permitting Mr. Daugherty to amend his proof of claim.  On December 23, 2020, Mr. Daugherty filed an amended proof of claim, designated by the Debtor's claim agent as Proof of Claim No. 205 ("Proof of Claim No. 205" or the "Daugherty Claim"). Proof of Claim No. 205 increased the amount of the Daugherty Claim to $40,710,819.42.

27.     On November 30, 2020, Mr. Daugherty filed his *Motion to Lift the Automatic Stay* (the "Lift Stay Motion") [Docket No. 1491] seeking to lift the automatic stay to allow him to finish his trial in the Chancery Court and liquidate his claims.  The Debtor opposed the Lift Stay Motion, and after a hearing was held on December 17, 2020, the Court denied the relief requested in the Lift Stay Motion [Docket No. 1612].

28.     Except with respect to the Reserved Claim (as defined in the Settlement Agreement), the Parties have agreed to settle and resolve all claims and disputes between them, including the Daugherty Claim, on the terms set forth in the Settlement Agreement.

C.      **Summary of Mr. Daugherty's Claim**

29.     As generally described above, prior to the Petition Date, Mr. Daugherty on the one hand, and the Debtor, Mr. Dondero, other entities controlled by Mr. Dondero, and individuals then employed by the Debtor or otherwise associated with Mr. Dondero on the other hand, were embroiled in more than nine (9) years of highly contentious litigation involving a multitude of claims and counterclaims (the "Pre-Petition Litigation").

6

30.     The Pre-Petition Litigation played out in front of a jury in Texas state court and wound its way through the state appellate courts.  Thereafter, Mr. Daugherty opened a new front by commencing the Highland Chancery Case in the Chancery Court where he sought to hold the defendants to account for leaving HERA "judgment proof" and unable to satisfy the HERA Judgment that Mr. Daugherty had obtained.

31.     While Mr. Dondero's decision to sue Mr. Daugherty in the Texas Action was questionable, his decisions to (a) continue fighting the HERA Judgment rather than accepting the net economic benefits awarded, and (b) fraudulently transfer HERA's assets leaving it "judgment proof" proved to be a disaster because it cost millions of dollars in legal fees and left the Debtor and related entities exposed to claims and liability for substantial wrongdoing.

32.     The Daugherty Claim attaches and incorporates his operative complaint in the Highland Chancery Case and other voluminous documentation.  The Daugherty Claim has the following components:

- Enforcement of the HERA Judgment against the Debtor, pursuant to unjust enrichment, promissory estoppel and fraudulent transfer claims, in the amount of $2.6 million plus prepetition interest of $1.22 million.  (Mr. Daugherty contends that interest has continued to accrue post-petition);

- The estimated value of the HERA assets transferred to the Debtor on the theory that Daugherty owns 100% of HERA because the Debtor was not permitted to acquire the interests that it purchased from the former members and Daugherty was the last remaining interest holder.  This allegedly leaves Mr. Daugherty by default as the 100% owner of the HERA Assets, which Mr. Daugherty asserts are worth at least $26.2 million as a whole;

- Indemnification for attorneys' fees, expenses, and interest of approximately $5.4 million incurred in the Texas Action under the Debtor's partnership agreement for actions Daugherty contends were taken in furtherance of his obligations to investors and funds under the Investment Advisors Act of 1940;

- Compensation as a former employee of the Debtor that Daugherty contends is contingent on the outcome of an audit of the Debtor's 2008/2009 tax returns and related expenses.  Mr. Daugherty estimates this claim at approximately $2.7 million;

7

- Fee shifting and fees on fees that Daugherty contends are due to the bad faith actions of the Debtor, its officers, and agents in the Chancery Court. Daugherty estimates this claim at approximately $2.5 million; and

- Other related claims described in the Daugherty Claim for approximately $0.2 million.

33. The Debtor previously informed the Court that it does not object to Mr. Daugherty's claims related to the HERA Judgment ($2.6 Million, plus interest calculated at approximately $1.22 million as of about a year ago).

34. For a recitation of the Debtor's defenses to Daugherty's Claim, the Debtor incorporates by reference its 3018 Objection.

**D.     The Parties Engage in Arm's-Length Settlement Discussions**

35. Although counsel for the Parties argued over the merits of, and the defenses to, the Daugherty Claim throughout the fall, they began discussing a possible resolution of Daugherty's Claim after the Court entered the 3018 Order.

36. In the days leading up to the Confirmation Hearing, those discussions evolved into substantive negotiations, and counsel for the parties exchanged various proposals and counterproposals in an effort to reach an agreement.

37. With the advice of counsel, James P. Seery, Jr., the Debtor's Chief Executive Officer, took the lead in the negotiations (directly and through counsel) and briefed the Independent Board on the progress.

38. The negotiations bore fruit. On February 2, 2021, at the commencement of the Confirmation Hearing, and with the unanimous approval of the Independent Board, Debtor's counsel announced that it had reached an agreement with Mr. Daugherty (subject to the execution of definitive documentation and Court approval) and read the principal terms into the record.

39. For a variety of reasons, documenting the agreement took more time than expected. For example, in the weeks and months that followed, (1) the principals and their counsel

addressed the implications of the Sentinel Disclosures (as that term is defined below); (2) the tasks

related to getting to the Effective Date took a higher priority; (3) the Reorganized Debtor had to

educate the newly appointed Oversight Board on the background and litigation concerning, and

the proposed resolution of, the Daugherty Claim; (4) the parties exchanged numerous iterations of

the Settlement Agreement and ancillary documents; and (5) frankly, it was difficult to get Mr.

Daugherty to say "yes" as he sought very hard to improve the economic and non-economic terms

of the deal based on certain revelations in the ensuing months (which, of course, was his right).

**E.    Summary of Settlement Terms**

40.    The Settlement Agreement contains the following material terms, among

others:

- Mr. Daugherty shall receive an allowed general unsecured, non-priority Class 8 claim in the amount of $8.25 million;

- Mr. Daugherty shall receive an allowed subordinated general unsecured, non-priority Class 9 claim in the amount of $3.75 million;

- Mr. Daugherty shall receive a one-time lump sum payment in the amount of $750,000 to be paid within five business days of Bankruptcy Court approval of this Settlement Agreement;

- Releases shall be exchanged as provided for in paragraphs 3 through 6 of the Settlement Agreement;

- The Reorganized Debtor shall transfer its interests in HERA and ERA to Mr. Daugherty in accordance with paragraph 6 of the Settlement Agreement;

- The Parties shall cooperate to terminate all litigation in accordance with paragraphs 9 and 10 of the Settlement Agreement; and

- The Parties shall adhere to certain other non-economic matters agreed to by them as specifically set forth in the Settlement Agreement.

*See generally* Morris Dec. Exhibit 1.[5]

---

[5] With two exceptions, these settlement terms are materially the same as those announced on the record on February 2, 2021 in connection with the confirmation hearing on the Debtor's Plan. The two exceptions are that (a) the Class 9 claim was increased by $1 million, and (b) the Reorganized Debtor agreed to transfer its interests in HERA and ERA to Mr. Daugherty. The former change was intended to take into account the increased risk to the Debtor arising from

9

## **BASIS FOR RELIEF REQUESTED**

41.    Bankruptcy Rule 9019 governs the procedural prerequisites to approval of

a settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court may approve a
> compromise or settlement.  Notice shall be given to creditors, the United States
> trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other
> entity as the court may direct.

FED. R. BANKR. P. 9019(a).

42.    Settlements in bankruptcy are favored as a means of minimizing litigation,

expediting the administration of the bankruptcy estate, and providing for the efficient resolution

of bankruptcy cases.  *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *Rivercity*

*v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980).  Pursuant to Bankruptcy

Rule 9019(a), a bankruptcy court may approve a compromise or settlement as long as the proposed

settlement is fair, reasonable, and in the best interest of the estate.  *See In re Age Ref. Inc.*, 801

F.3d 530, 540 (5th Cir. 2015).  Ultimately, "approval of a compromise is within the sound

discretion of the bankruptcy court." *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725

F.2d 293, 297 (5th Cir. 1984); *Jackson Brewing*, 624 F.2d at 602–03.

43.    In making this determination, the United States Court of Appeals for the

Fifth Circuit applies a three-part test "with a focus on comparing 'the terms of the compromise

with the rewards of litigation.'" *Official Comm. of Unsecured Creditors v. Cajun Elec. Power*

*Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997) (citing *Jackson Brewing*,

---

the post-confirmation discovery and disclosures related to Sentinel (the "Sentinel Disclosures").  *See UBS Secs. LLC v. Highland Capital Mgmt., L.P.*, Adv. Pro. No. 21-03020.  The latter concerned Mr. Daugherty's final demand that the Debtor agreed to because (i) Mr. Daugherty continues to retain his claims against HERA and ERA and their respective officers, directors, and agents; (ii) HERA and ERA no longer have any tangible assets; (iii) the HERA Releasing Parties are confirming that they have no claims against and are releasing the HCMLP Released Parties pursuant to the HERA and ERA Release; and (iv) Mr. Daugherty insisted on this final term which, in the overall package, was not material under the Debtor's Plan or otherwise.

624 F.2d at 602). The Fifth Circuit has instructed courts to consider the following factors: "(1) The probability of success in the litigation, with due consideration for the uncertainty of law and fact, (2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) All other factors bearing on the wisdom of the compromise." *Id.* Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortgage Corp.*, 68 F.3d at 918 (citations omitted).

44. There is ample basis to approve the proposed Settlement Agreement based on the Rule 9019 factors set forth by the Fifth Circuit.

45. First, although the Reorganized Debtor believes that it has valid defenses to the Daugherty Claim, there is no guarantee that the Reorganized Debtor would succeed in its litigation with Daugherty. Indeed, to establish its defenses, the Reorganized Debtor would be required to rely, at least in part, on the credibility of witnesses whose veracity has already been called into question by this Court. Moreover, the events giving rise to Mr. Daugherty's claims arose over five years ago, raising considerable questions about the reliability of those witnesses' recollection.

46. The second factor—the complexity, duration, and costs of litigation—also weighs heavily in favor of approving the Settlement Agreement. As this Court is aware, the events forming the basis of the Daugherty Claim—including the Texas Action and the Highland Chancery Case—proceeded *for years* and have already cost the Debtor's estate millions of dollars in legal

11

fees. If the Settlement Agreement is not approved, then the parties will expend significant resources litigating a host of fact-intensive issues including, among other things, the conduct of Mr. Dondero and the other defendants in the pending Chancery Actions.

47. Third, approval of the Settlement Agreement is justified by the paramount interest of creditors. Specifically, the settlement will enable the Reorganized Debtor to: (a) avoid incurring substantial litigation costs; and (b) avoid the litigation risk associated with Daugherty's $40 million claim. Notably, as set forth in its 3018 Objection, and regardless of whether this settlement is approved, the Debtor has already conceded liability of almost $4 million in connection with the HERA Judgment, making the risk/reward analysis compelling.

48. Finally, the Settlement Agreement was unquestionably negotiated at arm's-length. The terms of the settlement are the result of numerous, ongoing discussions and negotiations between the parties and represent neither party's "best case scenario." Indeed, the Settlement Agreement should be approved as a rational exercise of the Reorganized Debtor's business judgment made after due deliberation of the facts and circumstances concerning Daugherty's Claim.

## NO PRIOR REQUEST

49. No previous request for the relief sought herein has been made to this, or any other, Court.

## NOTICE

50. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) counsel for Mr. Daugherty; (b) the Office of the United States Trustee; (c) the Office of the United States Attorney for the Northern District of Texas; and (d) parties requesting notice pursuant to Bankruptcy Rule 2002. The Reorganized Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Reorganized Debtor respectfully requests entry of an order, substantially in the form attached hereto as Exhibit A, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated: December 8, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*