# **EXHIBIT 4**

## SEPARATION AGREEMENT

This Separation Agreement ("Agreement") is entered into by and between Highland Capital Management L.P. (the "Company" or "Employer") and John Yang ("Consultant"), as of April 30, 2009, as follows:

WHEREAS, Consultant has been employed by the Company pursuant to the Employment Agreement between the Company and the Consultant, dated as of June, 2006 (the "Employment Agreement"), and has been a partner of the Company;

WHEREAS, during Consultant's employment, he gained knowledge and information concerning the Highland Crusader Offshore Fund, L.P., Highland Crusader Fund, L.P., Highland Crusader Fund, Ltd., Highland Crusader Fund II, Ltd., the Highland Credit Strategies Master Fund, L.P., the Highland Credit Strategies Fund, L.P. and the Highland Credit Strategies Fund, Ltd. (collectively, the "Funds");

WHEREAS, because of the Consultant's knowledge and information concerning the Funds, the Consultant can provide material assistance to the Company and its counsel in making decisions about matters relating to the Funds, including litigation matters;

WHEREAS, Consultant's employment by the Company shall terminate effective as of April 30, 2009;

WHEREAS, Consultant shall withdraw as a partner of the Company effective a of April 30, 2009;

WHEREAS, Consultant has knowledge and information that is of material value in facilitating and implementing the wind down of the Funds, including but not limited to the development and negotiation of the plans of distribution for the Funds, and the Company and its counsel believe that it would materially benefit the Company and its counsel for Consultant to assist them with regard to such wind down, including potential litigation related thereto;

WHEREAS, the Company desires to retain the services of the Consultant to perform services in accordance with the following terms and conditions, and the Consultant agrees to be retained by the Company to provide such services.

NOW THEREFORE, in consideration of the covenants and conditions set forth herein, the Parties, intending to be legally bound, hereby agree as follows:

1. **Separation Payment.** Consultant hereby voluntarily resigns all positions Consultant held with the Company effective as of the close of business on April 30, 2009 ("Separation Date"). In consideration for Consultant's promises contained herein and provided that Consultant is not in breach of this Agreement, the Company will provide Consultant the following Special Separation Pay:

- 1 -

- A lump sum payment of $292,242 on August 31, 2009

- Payment of Consultant's monthly medical and dental insurance premiums for continuation coverage under COBRA, for the period from May 1, 2009 through July 31, 2010, provided that during the aforementioned dates Consultant does not become eligible for a new employer's medical insurance benefit

These amounts are gross amounts, subject to all deductions that are deemed necessary by the Company to comply with state or federal laws on withholding or other deductions Consultant has previously authorized. Consultant agrees that he will be responsible for paying all state, federal, and local taxes owed in connection with these payments.

The Company acknowledges that, pursuant to his Employment Agreement, Amended and Restated Buy-Sell and Redemption Agreement, and other agreements with and obligations of the Company related to Consultant's employment with and partnership in the Company, the Consultant is entitled to those payments described in Appendix A. Consultant acknowledges and agrees that he is not entitled to any further payment, compensation, or remuneration of any kind with respect to Consultant's employment with the Company or otherwise, other than the payments contemplated by Appendix A.

**2. Confidentiality; Non-Disparagement.** As part of this Agreement, Consultant agrees to keep the terms and conditions of this Agreement confidential. Consultant further agrees not to disparage the Company, its officers, directors, employees, shareholders, agents or representatives.

**3. Modification; Severability.** This Agreement may only be amended or modified through a written document signed by both parties. If any provision contained in this Agreement is determined to be void, illegal or unenforceable, in whole or in part, then the other provisions contained herein shall remain in full force and effect as if the provision which was determined to be void, illegal or unenforceable had not been contained herein; provided, however, that if the Company fails to make any of the payments as provided in Section 1 above, Section 4(a) below, or as described in Appendix A, the obligations of Consultant under sections 4(a) and 5 of this Agreement shall be deemed void and unenforceable.

**4. Consulting.**
a. **Consulting Period and Consulting Fees.** Effective as of May 1, 2009 through July 31, 2009 (the "Initial Consulting Period") the Company shall engage the Consultant to provide consulting services to the Company for an average of twenty (20) hours a week at a monthly rate of $16,667 per month. Consultant agrees to be available for consulting services throughout the entire Initial Consulting Period. In the event a serious illness prevents Consultant from completing twenty (20) hours a week, Consultant shall complete the missed work hours prior to the end of the Initial

Consulting Period (e.g., work thirty hours in one week instead of twenty hours) or by extending the term of your Initial Consulting Period by the number of weeks necessary to complete the work hours missed. Consultant's cell phone expense will be reimbursed by the Company during the Initial Consulting Period.

        b.    **Termination By Consultant.** If the Consultant terminates his performance under section 4(a) before July 31, 2009, the sole remedy available to the Company shall be to withhold (i) any unpaid portion of the Special Separation Pay and (ii) the unearned portion of the payments provided for in section 4(a).

        c.    **Independent Contractor.** Consultant acknowledges that this Agreement is not an employment contract and that nothing contained herein shall be construed to create a relationship of employer and employee between Consultant and the Company. Consequently, the compensation payable to Consultant pursuant to this Section 4 shall not be deemed to be wages, and therefore, shall not be subject to any withholdings or deductions.

The Indemnity Agreement dated on or about April 9, 2009 applies to any claims against the Consultant arising from or related to his providing services under or otherwise performing this Agreement.

        5.    **Cooperation.** Following the Initial Consulting Period and in consideration of the Special Separation Pay, Consultant agrees to cooperate fully and completely, for up to sixty (60) hours in aggregate, with the Company, at their reasonable request at such times as are mutually convenient to the Consultant and the Company, to consult and provide such information as may from time to time be requested by the Company in its sole discretion in connection with various business matters in which Consultant was involved during his employment with Company, or any other matters about which Consultant has knowledge or information relating to the Company and its business, and to take any other action reasonably required by the Company relating to matters occurring during Consultant's employment with the Company, including but not limited to ongoing cooperation with the Company's attorneys relating to potential or pending litigation about such matters. The Company agrees to reimburse Consultant at the agreed hourly rate of $300 for Consultant's time devoted to such activities and for any reasonable out of pocket expenses incurred by Consultant in cooperating pursuant to this Section 5 upon presentation of substantiating documentation. The Indemnity Agreement dated on or about April 9, 2009 applies to any claims against the Consultant arising from or related to his providing services under or otherwise performing this Agreement, including this section 5 of the Agreement.

        6.    **Prior Agreements.** Consultant agrees that he will continue to be bound by the covenants contained in Article V of the Employment Agreement between the Company and the Consultant. Harold Siegel and Brianne Liddle are excluded from any non-recruitment restrictive covenants in all prior agreements.

**CONSULTANT**

_____
John Yang
Date: 5/28/09

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By:_____

Its:_____

Date:_____

## ASSIGNMENT OF INTEREST

## IN

Highland Capital Management, L.P., a Delaware limited partnership (the "Partnership")

John Yang (the "Assignor") hereby assigns, transfers, surrenders and conveys of all of his right, title, and interest in and to a 1.23% Percentage Interest in the Partnership, as represented by 367,981 Long Term Incentive Plan units, and all the capital, profits, and losses of the Partnership associated therewith (the "Interest"), free and clear of all liens, encumbrances, security interests, claims, or options, to the Partnership.

IN WITNESS WHEREOF, the Assignor and the Partnership have executed this Assignment effective as of the 2? day of _May_, 2009.

ASSIGNOR:

_____
John Yang

ACCCEPTED BY THE PARTNERSHIP

Highland Capital Management, L.P.

By: Strand Advisors, Inc.,
     Its general partner

By: _____
Name: _____
Title: _____

- 5 -

The undersigned spouse of John Yang, in consideration of the Salary and Benefits, Special Consideration, and Benefits, covenants and agreements set forth in the Separation Agreement of even date herewith of which this Agreement of Interest is a part, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, hereby agrees to this Assignment of Interest and the terms of the Separation Agreement.

SPOUSE OF ASSIGNOR: _____

## Appendix A

Subject to the terms provided for in this Appendix A, the following payments shall be made to you in satisfaction of all monies owed to you under the terms of Highland Capital's compensation or employee benefit plans:

Long Term Incentive Plan

Cash payments made in full satisfaction of your Interest in the Partnership and under the Long Term Incentive Plan

Payment in accordance with terms of 2005 HCMLP Long-Term Incentive Plan (LTIP) dated on or about January 1, 2005 for the 367,981 vested LTIP units.

Option IT

Payment in accordance with terms of 2005 HCMLP Option Plan Option Agreement (the "Option Plan Agreement") based on underlying net asset values as of April 30, 2009. The resulting payment under the Option Plan Agreement shall be provided within ten business days of applicable final net asset values being produced for the month ended April 30, 2009. The amounts paid are subject to lawful deductions, including any deductions you have previously authorized, and will be paid to you in accordance with applicable law.

If final net asset values for the month ended April 30, 2009 are not available by May 31, 2009, a 70% payment in accordance with terms of the Option Plan Agreement shall be provided by June 15, 2009 based on the estimated net asset values for the month ended April 30, 2009. The remaining amount will be payable within ten business days of the final net asset values for the month ended April 30, 2009 being produced.

Defined Benefit Plan

These monies will be paid out, at your request, by the plan administrator per the terms of the plan.

401K Plan

These monies will be paid out, at your request, by the plan administrator per the terms of the plan.