# EXHIBIT 11

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENTS WITH (A) THE REDEEMER COMMITTEE OF THE HIGHLAND CRUSADER FUND (CLAIM NO. 72), AND (B) THE HIGHLAND CRUSADER FUNDS (CLAIM NO. 81), AND AUTHORIZING ACTIONS CONSISTENT THEREWITH

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



¹¹⁹³⁴⁰⁵⁴²⁰⁰⁹²³⁰⁰⁰⁰⁰⁰⁰⁰⁰⁰⁰³
1934054200923000000000003

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT THE EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, RM. 1254, DALLAS, TEXAS 75242-1496 BEFORE THE CLOSE OF BUSINESS ON OCTOBER 19, 2020, WHICH IS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED, A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

TO THE HONORABLE STACEY G. C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtor and debtor-in-possession (the "Debtor" or "HCMLP") files

this motion (the "Motion") for entry of an order, substantially in the form attached hereto as

**Exhibit A**, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), approving a settlement agreement (the "Stipulation"), a copy of which is

attached as **Exhibit 1** to the *Declaration of John A. Morris in Support of the Debtor's Motion for*

*Entry of an Order Approving Settlement with (A) the Redeemer Committee of the Highland*

*Crusader Fund (Claim No. 72), and (B) the Highland Crusader Funds (Claim No. 81), and*

*Authorizing Actions Consistent Therewith*, executed on September 23, 2020 (the "Morris Dec."),

that fully and finally resolves the proofs of claim filed by (A) the Redeemer Committee of the

Highland Crusader Fund (the "Redeemer Committee"), and (B) Highland Crusader Offshore

Partners, L.P., Highland Crusader Fund, L.P., Highland Crusader Fund, Ltd., and Highland

Crusader Fund II, Ltd. (collectively, the "Crusader Funds"). In support of this Motion, the Debtor represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Bankruptcy Rules.

## RELEVANT BACKGROUND

### A. Procedural Background

3. On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Court").

4. On October 29, 2019, the official committee of unsecured creditors (the "Committee") was appointed by the United States Trustee in the Delaware Court.

5. On December 4, 2019, the Delaware Court entered an order transferring venue of the Debtor's bankruptcy case to this Court [Docket No. 186].[2]

6. On December 27, 2019, the Debtor filed that certain *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No.

---

[2] All docket numbers refer to the docket maintained by this Court.

DOCS_NY:41107.8 36027/002

281] (the "<u>Settlement Motion</u>").  This Court approved the Settlement Motion on January 9, 2020 [Docket No. 339] (the "<u>Settlement Order</u>").

7.       In connection with the Settlement Order, an independent board of directors was constituted at the Debtor's general partner, Strand Advisors, Inc. (the "<u>Independent Board</u>"), and certain operating protocols were instituted (the "<u>Protocols</u>").

8.       On July 16, 2020, this Court entered an order appointing James P. Seery, Jr., as the Debtor's chief executive officer and chief financial officer [Docket No. 854].

9.       The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

## B.       <u>The Redeemer Committee's Claim</u>

10.       The Crusader Funds were formed between 2000 and 2002.  HCMLP served as the Crusader Funds' investment manager until August 2016.

11.       In October 2008, at the height of the financial crisis, HCMLP commenced wind-down proceedings on behalf of the Crusader Funds.

12.       The Redeemer Committee was formed pursuant to a *Joint Plan of Distribution of the Crusader Funds* (the "<u>Plan</u>") and a *Scheme of Arrangement Between the Crusader Funds and Their Scheme Creditors* (the "<u>Scheme</u>") that were adopted in 2011 to resolve certain disputes arising in connection with the Crusader Funds' wind-down proceedings.

13.       HCMLP served as the investment manager for the Crusader Funds until August 4, 2016, as of which date the Redeemer Committee, as set forth in a letter and notice dated July 5, 2016, terminated HCMLP.

DOCS_NY:41107.8 36027/002

14.     On July 5, 2016, the Redeemer Committee commenced an arbitration against HCMLP by filing a Notice of Claim with the American Arbitration Association (the "AAA") in which it asserted various claims arising from HCMLP's service as the investment manager for the Crusader Funds (the "Arbitration").[3]

15.     Following an evidentiary hearing, the panel of arbitrators (the "Panel") issued (a) a *Partial Final Award,* dated March 6, 2019 (the "March Award"), (b) a *Disposition of Application for Modification of Award,* dated March 14, 2019 (the "Modification Award"), and (c) a *Final Award,* dated May 9, 2019 (the "Final Award," and together with the March Award and the Modification Award, the "Arbitration Award").   Morris Dec. Exhibits 2, 3, and 4, respectively.

16.     Pursuant to the Arbitration Award, the Redeemer Committee was awarded gross damages in the aggregate amount of $136,808,302.00; as of the Petition Date, the total value of the Arbitration Award was $190,824,557.00, inclusive of interest (the "Damage Award").

17.     Prior to the Petition Date, the Redeemer Committee timely moved in the Chancery Court to confirm the Arbitration Award.  For its part, HCMLP moved to vacate parts of the Final Award contending that the following aspects of the Awards were procedurally improper:  (a) the award of damages and equitable relief arising in connection with the "Barclays Claim" (as such term is used in the Arbitration Award); (b) the award of prejudgment interest

---

[3] The Redeemer Committee and the Debtor subsequently became engaged in additional lawsuits and actions, the following of which were pending as of the Petition Date: (a) *Redeemer Committee of the Highland Crusader Fund v. Highland Capital Management, L.P.*, Chancery Court, Delaware, C.A. No. 12533-VCG (the "Delaware Action"); (b) *Redeemer Committee of the Highland Crusader Fund and Highland Capital Management, L.P.*, Supreme Court of Bermuda, Civil Jurisdiction, Case No. 01-16-0002-6927 ("Bermuda Action No. 1"); (c) *Highland Capital Management, L.P. and Redeemer Committee of the Highland Crusader Fund*, Supreme Court of Bermuda, Civil Jurisdiction (Commercial Court), 2017: No. 308 ("Bermuda Action No. 2"); and (d) *Redeemer Committee of the Highland Crusader Fund and Highland Capital Management, L.P.*, Grand Court of Cayman Islands, Financial Services Division, Cause No. 153 of 2019 (CRJ) (the "Grand Cayman Action" and together with the Delaware Action and Bermuda Action No. 1, are referred to as the "Redeemer Actions" and the Redeemer Actions and Bermuda Action No. 2 are collectively referred to as the "Pending Actions").

after March 6, 2019, including that the interest be compounded; and (c) the addition of attorneys'
and experts' fees based on evidence admitted after the record was purportedly closed.

18.     HCMLP's procedural challenges were largely based on the argument that the
March Award should have been treated as the "final" award such that the Panel was without
authority to render the Modification Award and the Final Award and the relief granted therein
("HCMLP's Motion to Vacate").[4]    Notably, HCMLP did not challenge any of the factual
findings, credibility assessments, or substantive legal conclusions rendered by the Panel.

19.     The Redeemer Committee's motion to confirm the Arbitration Award and
HCMLP's Motion to Vacate were fully briefed and were scheduled to be heard by the Chancery
Court on the day Highland filed for bankruptcy.

20.     On April 3, 2020, the Redeemer Committee filed a general unsecured claim in the
amount of $190,824,557.00, plus "post-petition interest, attorneys' fees, costs and other expenses
that [allegedly] continue[d] to accrue."   *See* Morris Dec. Exhibit 5 (Proof of Claim No. 72, Rider
at 1-2).

C.      **The Crusader Fund's Claim**

21.     On April 6, 2020, the Crusader Funds filed a general unsecured claim in the
amount of $23,483,446.00, plus "post-petition interest, attorneys' fees, costs and other expenses

---

[4] The Award was subject to the Federal Arbitration Act, under which an award will only be vacated upon a showing
that:

> (1) . . . the award was procured by corruption, fraud, or undue means; (2) . . . there was evident
> partiality or corruption in the arbitrators, or either of them; (3) . . . the arbitrators were guilty of
> misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear
> evidence pertinent and material to the controversy; or of any other misbehavior by which the
> rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers, or so
> imperfectly executed them that a mutual, final, and definite award upon the subject matter
> submitted was not made.

9 U.S.C. § 10.  To challenge an award, a party must move to vacate within three months of delivery of the Award to
the parties.  9 U.S.C. § 12.

that [allegedly] continue[d] to accrue." *See* Morris Dec. Exhibit 6 (Proof of Claim No. 81, Rider at 1-2).[5]

22.    The Crusader Funds' claim sought the disgorgement of all management, distribution, and deferred fees paid to HCMLP based on the so-called "faithless servant" doctrine.

**D.    Summary of Settlement Terms[6]**

23.    The Stipulation contains the following material terms:

- The Redeemer Committee's claim (Claim No. 72) shall be allowed in the amount of $136,696,610.00 as a general unsecured claim;

- The Crusader Funds' claim (Claim No. 81) shall be allowed in the amount of $50,000.00 as a general unsecured claim;

- The Debtor and Eames will each (a) consent to the cancellation of certain interests in the Crusader Funds held by them that the Panel found were wrongfully acquired, and (b) agree that they will not object to the cancellation of certain interests in the Crusader Funds held by the Charitable DAF that the Panel also found were wrongfully acquired;

- The Debtor and Eames will each acknowledge that they will not receive any portion of the Reserved Distributions, and the Debtor will further acknowledge that, beginning as of the Stipulation Effective Date, it will not receive any payments from the Crusader Funds in respect of any Deferred Fees, Distribution Fees, or Management Fees;

- The Debtor and the Redeemer Committee agreed to a form of amendment to the Cornerstone Shareholders' Agreement and to a process whereby the Debtor shall, in good faith, use commercially reasonable efforts to

---

[5] The Crusader Funds also asserted a right to recover the damages granted under the Arbitration Award, but expressly acknowledged that they would "withdraw this portion of their claim if and to the extent that the Redeemer Committee's claim is allowed." Morris Dec. Exhibit 6 at 2.

[6] For purposes of convenience, set forth herein is a summary of the material terms of the Stipulation. If there is an actual or perceived conflict or inconsistency between the summary and the Stipulation, the terms of the Stipulation shall govern. Capitalized terms not defined herein shall have the meanings ascribed to them in the Stipulation.

7

monetize all shares of capital stock of Cornerstone held by the Debtor, any funds managed by the Debtor, and the Crusader Funds;[7]

- Upon the Stipulation Effective Date, the Parties and the Additional Release Parties shall exchange releases as set forth in the Stipulation; and[8]

- The Debtor shall dismiss Bermuda Action No. 2 with prejudice, and the Redeemer Committee and the Crusader Funds covenant not to prosecute, and shall not prosecute, any of the Redeemer Actions against the Debtor, Eames, or any of the Additional Highland Release Parties.

24.    As discussed below, the Stipulation incorporates certain compromises between the Debtor, the Redeemer Committee, and the Crusader Funds with respect to, among other things, the disposition of Deferred Fees and the treatment of the Cornerstone Shares held by the Crusader Funds.

25.    Under the Plan and Scheme, HCMLP agreed to defer receipt of certain Deferred Fees until the liquidation of the Crusader Funds was completed.  Despite the terms of the Plan and Scheme, HCMLP transferred to itself $32,313,000.00 in Deferred Fees from the Crusader Funds' accounts in early 2016.  The Redeemer Committee asserted that the Deferred Fees were prematurely taken and had to be returned.  The Panel agreed and the $32,313,000.00 is included as part of the Damage Award.

26.    During its negotiations with the Redeemer Committee and the Crusader Funds, the Debtor contended that while the Deferred Fees were found to have been prematurely taken, HCMLP would ultimately be entitled to recover the Deferred Fees upon the completion of the Crusader Funds' liquidation.  The Redeemer Committee and the Crusader Funds, on the other

---

[7] The parties continue to discuss the terms of the schedule that was to be attached as Exhibit B to the Stipulation and will file the final version of Exhibit B after the Court rules on the Debtor's motion to file certain documents (including Exhibit B) under seal.

[8] The Stipulation, as filed, has not been executed by two of the Additional Highland Release Parties, Highland Financial Partners, L.P. and Highland Special Opportunities Holding Company.  The Stipulation provides that the Debtor will use commercially reasonable efforts to cause these entities to execute the Stipulation no later than the date on which this Court enters an order confirming a plan.  In the event such an Additional Highland Release Party does not execute the Stipulation, it will not receive any of the releases set forth in the Stipulation.

hand, contended that (a) the Redeemer Committee was entitled to recover all of the Deferred Fees found by the Panel to have been wrongfully taken, (b) the earliest the Debtor could seek to recover those Deferred Fees is upon complete liquidation of the Crusader Funds, which has not yet occurred, and (c) the Debtor is precluded from recovering any of those Fees—even upon the completion of the Crusader Funds' liquidation—from the Crusader Funds under the "faithless servant" doctrine. The Debtor disputed the latter contention on the basis of waiver and estoppel since the Redeemer Committee had failed to raise the defense in the Arbitration, but the Redeemer Committee contended that it had no obligation to raise that defense given the procedural posture that existed at the time and that the Crusader Funds, from which any Deferred Fees would ultimately be paid, had not been a party to the Arbitration and hold their own claim relating to the Deferred Fees.[9]

27. After extensive, arm's-length negotiations, the Debtor and the Redeemer Committee agreed to reduce the Damage Award by $21,592,000.00, or approximately two-thirds of the Deferred Fees that the Panel found HCMLP had prematurely taken but that the Debtor contended it would have nevertheless been entitled to recover upon the completion of the Crusader Funds' liquidation.

28. The other substantial compromise concerned the treatment of the Cornerstone Shares held by the Crusader Funds.

29. Cornerstone Healthcare Group ("Cornerstone") owns hospitals and other healthcare-related entities. HCMLP directly and indirectly controlled 100% of Cornerstone's common stock, some of which was held by the Crusader Funds.

---

[9] Specifically, the Redeemer Committee contended that because it sought to affirmatively recover the Deferred Fees in the Arbitration under theories of breach of contract and breach of fiduciary duty, it was not required to raise the "faithless servant" doctrine because that is a defense that would only be required to be asserted when HCMLP made a claim for the Deferred Fees—as it did during the negotiations.

30. During the Arbitration, the Redeemer Committee established that (a) HCMLP covertly purchased certain shares in Cornerstone from another HCMLP-managed Fund at what the Panel found was a below market price, and that (b) HCMLP had otherwise breached its fiduciary duty to the Crusader Funds by failing to liquidate the Crusader Funds' shares in Cornerstone. The Panel found in favor of the Redeemer Committee on this claim and ordered HCMLP to purchase the Crusader Funds' shares in Cornerstone at a fixed price of $48,070,407.00, plus pre-judgment interest.

31. After extensive, arm's-length negotiations, the parties agreed to treat the Cornerstone Shares differently from the process required under the Arbitration Award. Specifically, rather than having the Debtor purchase the Crusader Funds' shares in Cornerstone for approximately $48 million, pursuant to the Stipulation (a) the Crusader Funds will retain their shares in Cornerstone, (b) the Damage Award will be reduced by approximately $30.5 million to account for the perceived fair market value of those shares, (c) the Cornerstone Shareholders' Agreement will be amended to, among other things, remove certain restrictions, and (d) the parties have agreed upon a process to market and sell Cornerstone.

32. In addition to the forgoing, the parties also agreed on other modest reductions to the Damage Award resulting in an agreement by which the Redeemer Committee shall receive an allowed, general unsecured claim in the amount of $136,696,610.00 and the other consideration provided under the Stipulation.

## E. UBS's Objection to the Redeemer Committee's Claim

33. On August 26, 2020, UBS Securities LLC and UBS AG, London Branch (together, "UBS") filed their *Objection to the Proof of Claim Filed by Redeemer Committee of*

10

*the Highland Crusader Fund* [Docket No. 996] (the "UBS Objection").[10]  UBS challenges the Redeemer Committee's claim in three respects.

34.     First, UBS raises the same procedural arguments asserted in HCMLP's Motion to Vacate.  Specifically, UBS contends that the "arbitration panel impermissibly substantively (and unilaterally) modified several aspects of its first 'final' arbitral award ***after*** that award had already been issued" such that any relief granted pursuant to the Modification Award and the Final Award is barred by the "long-standing common law doctrine of *functus officio*" and the AAA's own rules.  UBS Objection at 1; *see also id*. ¶¶ 12-16, 23-32.  As discussed in detail below, the Panel considered and rejected these arguments as part of the Final Award.[11]

35.     Second, UBS asserts that the value of the settlement must take into account certain obligations that the Redeemer Committee owes to the Debtor, specifically as they relate to the Cornerstone Shares that were to be surrendered under the Arbitration Award and the Deferred Fees that the Debtor would arguably be entitled to upon the completion of the Crusader Funds' liquidation.  UBS Objection ¶¶ 33-37.  As set forth above, however, these obligations were fully considered by the Debtor and form the basis for substantial compromises embedded in the Stipulation. *See supra* ¶¶ 24-31.

36.     Finally, UBS takes issue with the Redeemer Committee's characterization of the Arbitration Award as an executory contract.  UBS Objection ¶¶ 21-22.

37.     Each of these objections is addressed below.

---

[10] The UBS Objection is the only objection lodged against the proofs of claim filed by the Redeemer Committee and the Crusader Funds.

[11] The Panel was comprised of three highly regarded attorneys:  John S. Martin, Jr., a former United States Attorney for the Southern District of New York and a former United States District Court Judge for the Southern District of New York; David Brodsky, a former federal prosecutor and partner at Latham & Watkins and Schulte Roth & Zabel and a Fellow of the American College of Trial Lawyers; and Michael D. Young, one of the most highly-regarded arbitrators in the country who has been a full-time neutral for more than thirty years and who has presided over more than 300 arbitrations, appraisals, or other binding dispute resolution proceedings.

**BASIS FOR RELIEF REQUESTED**

38.     Bankruptcy Rule 9019 governs the procedural prerequisites to approval of a

settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court may approve a
> compromise or settlement.  Notice shall be given to creditors, the United States
> trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any
> other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

39.     Settlements in bankruptcy are favored as a means of minimizing litigation,

expediting the administration of the bankruptcy estate, and providing for the efficient resolution

of bankruptcy cases.  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also*

*Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980).  Pursuant to

Bankruptcy Rule 9019(a), a bankruptcy court may approve a compromise or settlement as long

as the proposed settlement is fair, reasonable, and in the best interest of the estate.  *See In re Age*

*Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).  Ultimately, "approval of a compromise is within

the sound discretion of the bankruptcy court."  *See United States v. AWECO, Inc. (In re AWECO,*

*Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Jackson Brewing*, 624 F.2d at 602–03.

40.     In making this determination, the United States Court of Appeals for the Fifth

Circuit applies a three-part test, "with a focus on comparing 'the terms of the compromise with

the rewards of litigation.'"  *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop.*

*(In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997) (citing *Jackson Brewing*,

624 F.2d at 602).  The Fifth Circuit has instructed courts to consider the following factors:  "(1)

The probability of success in the litigation, with due consideration for the uncertainty of law and

fact, (2) The complexity and likely duration of the litigation and any attendant expense,

12

inconvenience and delay, and (3) All other factors bearing on the wisdom of the compromise." *Id.*

41.    Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.*; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortgage Corp.*, 68 F.3d at 918 (citations omitted).

42.    There is ample basis to approve the proposed Stipulation with the Redeemer Committee and the Crusader Funds based on the Bankruptcy Rule 9019 factors set forth by the Fifth Circuit.

## A.    <u>Probability of Success in the Litigation</u>

43.    The Debtor is unlikely to succeed in contesting the Redeemer Committee's claim because the claim is based on the Arbitration Award, which itself was the product of the following circumstances:

- The proceedings began in July 2016 and concluded in April 2019, almost three years later;

- The arbitration was presided over by a highly regarded Panel (*see supra* n.9);

- The Panel held an evidentiary hearing spanning nine days in September 2018;

- The Panel heard testimony from eleven fact witnesses and four expert witnesses; and

• The Arbitration Award addressed every claim and argument asserted by the parties and the Panel resolved each with detailed legal and factual findings and credibility determinations.

*See* Morris Dec. Exhibit 2 §§ E, F at 4-7.

44. Thus, there can be no dispute that the Arbitration Award was the product of an adversarial but deliberative process where the parties were afforded the opportunity to present their evidence and arguments. Consequently, there is virtually no likelihood that the Arbitration Award—and hence the Redeemer Committee's claim—could be subject to a wholesale attack.

45. The three issues raised by UBS are either unlikely to succeed, have been mooted by the terms of the Stipulation, or are legally irrelevant.

46. First, UBS disputes the Redeemer Committee's contention that the Arbitration Award is an executory contract. *Compare* UBS Objection ¶¶ 21-22 *with* Morris Dec. Exhibit 5 (Rider at 1). This issue is (a) moot because the Stipulation does not treat the Arbitration Award as an executory contract, and (b) legally irrelevant because even if the Debtor successfully challenged the Redeemer Committee's characterization of the Arbitration Award as an executory contract, the Redeemer Committee could simply move to lift the automatic stay for the sole purpose of having the Arbitration Award confirmed, thereby eliminating the alleged "contingent" nature of the claim.

47. Second, UBS challenges the Redeemer Committee's claim on the ground that it "must take into account reciprocal obligations Redeemer owes to the Debtor." UBS Objection ¶¶ 33-37. As set forth above, this issue is also moot because these obligations were taken into account by the Debtor and form the basis for substantial compromises exceeding $40 million in value embedded in the Stipulation. *See* supra ¶¶ 24-31.

14

48.     Finally, UBS's remaining challenge to the Redeemer Committee's claim repeats the arguments made in HCMLP's Motion to Vacate.  Specifically, UBS contends that the "arbitration panel impermissibly substantively (and unilaterally) modified several aspects of its first 'final' arbitral award *after* that award had already been issued" such that any relief granted pursuant to the Modification Award and the Final Award is barred by the "long-standing common law doctrine of *functus officio*" and the AAA's own rules.  UBS Objection at 1; *see also id*. ¶¶ 12-16, 23-32.

49.     These procedural attacks on the Arbitration Award were considered and rejected by the Panel and are unlikely to succeed in undermining the Redeemer Committee's claim here (or in the Chancery Court if the stay were lifted for the purpose of allowing the Redeemer Committee to confirm its award).

50.     Specifically, the Panel found that the March Award was not a "final" award, observing that it had "explicitly denominated the award of March 6 as a 'Partial Final Award,' making clear to the Parties that the arbitral proceeding was still ongoing.  We also explicitly left the hearing open so the parties could meet and confer or make submissions, including providing additional evidence, 'until *all issues* set forth . . . have been agreed to by the Parties or decided by the Tribunal.'  Under these circumstances, the doctrine of *functus officio* does not apply."  Morris Dec. Exhibit 4 at 4-5 (emphasis in original).

51.     Given that (a) the March Award was explicitly labeled a "Partial Final Award," (b) the parties were directed to confer on issues of damages, interest, and the value of the attorneys' fees awarded to the Redeemer Committee, and (c) the Panel expressly determined to "leave the hearing open until all issues set forth above have been agreed upon by the Parties or

15

decided by the Tribunal," it is difficult to understand how the March Award could be treated as a "final" award that fully and finally resolved all issues.[12]

52.     UBS specifically attacks those portions of the Modification Award and Final Award concerning the treatment of prejudgment interest and the so-called "Barclays Claim." UBS Objection ¶ 12.  These attacks are unlikely to succeed.

53.     On the issue of interest, the Panel found that the parties had been directed in the March Award to confer on the issue and that the Panel would decide if the parties could not agree.[13]  Because the parties could not reach an agreement, the Panel ruled (a) in the Redeemer Committee's favor by awarding interest through the earlier of the date of payment or the entry of judgment, but (b) in HCMLP's favor by rejecting the Redeemer Committee's request for compounded interest.  Morris Dec. Exhibit 4, Section E.b.v at 14-15.

54.     On the issue of the "Barclay's Claim," UBS conflates two separate and distinct issues arising from HCMLP's settlement of Barclays' lawsuit  against the Crusader Funds and otherwise fails to properly acknowledge the Panel's ruling on the Redeemer Committee's Barclays Claim.  UBS asserts that "the Panel did not treat HCM's transfers of the Barclays LP Interests to Eames as an independent wrongdoing.  Instead, the Partial Final Award only ever discussed the transfer of the Barclays LP Interests in the context of one of Redeemer's broader sets of claims, known as its "Distribution Fee Claim.'"  UBS Objection ¶ 12.  UBS is mistaken.

---

[12] The AAA Rules specifically permit an arbitral panel to issue a partial award and leave the record open for further submissions.  AAA R-47(b) ("In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders and awards"); AAA R-40 ("The hearing may be reopened on the arbitrator's initiative, or by the direction of the arbitrator upon application of a party, at any time before the award is made.")  The Rules also give to the arbitrators the power to interpret the Rules.  AAA R-8.

[13] In the March Award, the Panel stated, among other things, that "[w]ith respect to the claims below for which we find liability and direct the payment of damages and interest, if the parties are not able to agree on the amount of damages and interest, we direct them to submit simultaneous briefs to the Panel on the issues within thirty (30) days of the date of this Partial Final Award."  Morris Dec. Exhibit 2 at 53.  The parties were unable to agree on all issues concerning interest and complied with the March Award by timely submitting briefs on the topic.  Morris Dec. Exhibit 4 at 2-3.

55.     In the Arbitration, the Redeemer Committee raised two separate claims arising from the Barclays settlement.  The Redeemer Committee claimed that HCMLP breached the Plan and its fiduciary duties by transferring Barclay's limited partnership interests in the Crusader Funds to HCMLP's wholly-owned affiliate, Eames, over the Redeemer Committee's refusal to approve that transfer and sought disgorgement of those partnership interests and of the distributions Eames had received from the Crusader Fund made on account of those interests. Morris Dec. Exhibit 2 § F.6 at 21 (the "Barclays Claim").  In addition, as part of its claim to recover distribution fees improperly paid to HCMLP, the Redeemer Committee sought to recover fees that HCMLP had paid itself based upon distributions to those ill-gotten LP interests. *Id.* § C.3 at 15 (the "Distribution Fee Claim").

56.     The Panel found in the Redeemer Committee's favor on both claims.  In the March Award—and contrary to UBS's mistaken assertion—the Panel independently found the Debtor liable for the Barclays Claim:  "We find that Highland breached the Plan and Scheme by transferring the LP interests to a wholly-controlled affiliate [*i.e.*, Eames] after the Committee had specifically disapproved of the transfer." *Id.* § F.7 at 21.  But unlike the other claims on which it found the Debtor liable, the Panel omitted a discussion of the relief awarded for the Barclays Claim.

57.     The Redeemer Committee filed a timely motion under AAA Arbitration Rule 50 seeking (a) clarification from the Panel whether a discussion of the relief awarded for the Barclays Claim was inadvertently omitted from the March Award, and (b) modification of the March Award to include the Panel's findings regarding that relief.  Morris Dec. Exhibit 4 at 8-10.  That Motion was fully briefed.  *Id.* at 2, 8-10.  The Panel granted the Motion, specifically rejecting the same argument that UBS makes in its Objection.  The Panel found, among other

things, that "we are not adding an 'additional award,' as it is clear from the structure of the Partial Final Award that a paragraph was missing from the damages portion; all other findings of liability were accompanied by a section delineating the applicable damages except for the finding of a breach of the Plan and Scheme by reason of the transfer of LP interests to Eames . . . . [W]e found liability in two respects [*i.e.*, with respect to the Distribution Fee Claim and the Barclays Claim] but omitted a paragraph regarding the remedy for Respondent's breach of the Plan and Scheme that we had found with respect to the transfer, without the required Committee approval, of Barclays' fund interests to itself through entities it controlled as part of the settlement. That omission is a classic example of a clerical error." *Id.* § E.b ¶ 5 at 9.

58.     Under the AAA Rules which were incorporated into the parties' arbitration agreement, "[t]he arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties." AAA Rule 8; *see also* AAA Rule 7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction.") Thus, the Panel had discretion to decide whether the modification of the March Award was warranted and to modify that Award to include the additional relief which UBS now seeks to challenge. Under the Federal Arbitration Act, this Court would be required to defer to the Panel's exercise of that discretion. *Commc'ns Workers of Am., AFL-CIO v. Sw. Bell Tel. Co.*, 953 F.3d 822, 827 (5th Cir. 2020) (holding that the AAA rule "authoriz[ing] an arbitrator to 'interpret and apply [the AAA] rules' binds the parties to the arbitrator's interpretation so long as it is 'within reasonable limits' . . . even where 'reasonable judges and arbitrators could interpret the AAA rules differently'"); *Troegel v. Performance Energy Servs., LLC*, 2020 WL 4370881, at *8 (M.D. La. July 30, 2020)

18

("Similarly, the Arbitrator has the power to interpret the arbitration rules, so that is also not a ground for vacating the attorneys' fee award.")[14]

## B.    The Complexity, Duration, Expense, and Delay Related to Litigation

59.    The issues relating to the Redeemer Committee are fairly complex; litigation would require meaningful resources, would take time, and would delay the Debtor's efforts to get to a confirmable plan.

60.    Among the issues the settlement avoids are those relating to setoff.  Setoff issues are notoriously complex and would arise with respect to the Deferred Fees and Cornerstone issues.[15]

61.    Litigation of these issues, among others, would take time and would either delay confirmation of the Debtor's plan or leave another substantial dispute to be litigated through a post-confirmation trust to the prejudice of all stakeholders.

## C.    The Stipulation Is in the Creditors' Best Interests

62.    The proposed settlement is in the best interests of the Debtor's creditors.

63.    The Stipulation resolves what is likely the largest claim against the Debtor; it does so on reasonable terms; and it is supported by sound business reasons.

---

[14] The Crusader Funds' claim can be succinctly addressed.  As mentioned above, the Crusader Funds assert a claim for over $23 million in management and distribution fees based on the "faithless servant" doctrine. *See supra* ¶¶ 21-22.  The Debtor believes it is very likely to defeat this claim based on, among other things, affirmative defenses including the statute of limitations, waiver, laches, and estoppel.  However, given that the Crusader Funds have agreed to accept an allowed general unsecured claim in the amount $50,000 and exchange releases as part of the Stipulation, the cost of realizing a successfully litigated outcome would be greatly outweigh the benefit of disallowing the Crusader Funds' claim.

[15] UBS speculates that "[i]n all likelihood, Redeemer will tender more in value to HCM when it is forced to turn over the Cornerstone shares than it could ever recover on this portion of its prepetition claim."  UBS's speculation should be rejected for at least the following reasons: (a) if general unsecured claims recover just 60%, then the value of the Redeemer Committee's claim will exceed the value of the Crusader Funds' Cornerstone shares, even using UBS's unsupported valuation; and (b) under principles of setoff, the Redeemer Committee may have only been required to tender shares equal in value to the recovery on its claim.

64.     Pursuant to the Stipulation, among other things, the Debtor's estate (a) will immediately receive the benefit of the value of two-thirds of the Deferred Fees (through the reduction of the Damage Award by approximately $21 million), rather than waiting for the completion of the Crusader Funds' liquidation and litigating at some future date the merits of the Crusader Funds' and Redeemer Committee's "faithless servant" defense; (b) is relieved of the obligation of paying $48 million for the Crusader Fund's minority interest in Cornerstone (when even UBS speculates that the shares are worth less than that);[16] (c) is giving no consideration on account of the Redeemer Committee's claim for post-petition interest, fees, and expenses; (d) is receiving a release of all claims by the Redeemer Committee and the Crusader Funds; (e) will avoid incurring any additional expenses opposing the Redeemer Committee's claim; (f) has obtained the Redeemer Committee's cooperation to sell the Crusader Funds' minority interest in Cornerstone along with the controlling interests held by the Debtor and other affiliates, so that the company may be sold as a whole, to the likely benefit of all creditors; and (g) all of the Pending Actions involving the Debtor will end, thereby eliminating substantial costs and disruptions.[17]

65.     The compromises that led to these benefits are clear, and the Independent Board's decision to accept these terms is a sound exercise of its discretion.

### D.     The Stipulation Is the Product of Good-Faith, Arm's-Length Negotiations

66.     The Stipulation is the product of good-faith, arm's-length negotiations.

---

[16] Notably, the Debtor does not have $48 million in cash to pay the Redeemer Committee for the Cornerstone shares.

[17] Another collateral benefit of the Stipulation is that CLO Holdco, Ltd. ("CLO Holdco") has agreed to withdraw its general unsecured claim in the amount of $11,340,751.26. *See* Claim No. 133. CLO Holdco's claim was based on "participation interests and tracking interests" in the Crusader Funds that were held by the Debtor. However, the Panel found that the Debtor improperly acquired those interests, and the Debtor has agreed to their cancellation in accordance with the Arbitration Award.

67.     Negotiations between the parties began in earnest in the late winter and only recently concluded.  At various times, the principals negotiated directly, counsel for the parties negotiated directly, and, on several occasions, lawyers and clients participated in joint negotiating sessions.

68.     Over these many months, the parties and their counsel met in person (before COVID), participated in Zoom calls (after COVID), spoke telephonically, and exchanged countless written communications.

69.     Numerous versions of a Term Sheet were exchanged, and the Stipulation went through multiple drafts.

70.     Throughout the process, the parties acted in good faith while vigorously advocating for their respective positions.

71.     In short, the process proceeded exactly as it should have.

## NO PRIOR REQUEST

72.     No previous request for the relief sought herein has been made to this, or any other, Court.

## NOTICE

73.     Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) counsel for the Redeemer Committee and the Crusader Funds; (b) the Office of the United States Trustee; (c) the Office of the United States Attorney for the Northern District of Texas; (d) the Debtor's principal secured parties; (e) counsel to the Committee; (f) counsel to UBS; and (g) parties requesting notice pursuant to Bankruptcy Rule 2002.  The

Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **PRAYER**

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

*[Remainder of Page Intentionally Blank]*

DOCS_NY:41107.8 36027/002

Dated:  September 23, 2020.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
(*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084)
(*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326)
(*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992)
(*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:     jpomerantz@pszjlaw.com
             ikharasch@pszjlaw.com
             gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

# EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § Case No. 19-34054-sgj11 |
| | § |
| Debtor. | § Related to Docket No. _____ |

**ORDER APPROVING DEBTOR'S SETTLEMENT WITH (A) THE REDEEMER
COMMITTEE OF THE HIGHLAND CRUSADER FUND (CLAIM NO. 72), AND (B) THE
HIGHLAND CRUSADER FUNDS (CLAIM NO. 81), AND AUTHORIZING ACTIONS
CONSISTENT THEREWITH**

Upon the *Motion for Entry of an Order Approving Settlement with (A) the Redeemer Committee of the Highland Crusader Fund (Claim No. 72), and (B) the Highland Crusader Funds (Claim No. 81), and Authorizing Actions Consistent Therewith* (the "Motion")[2] filed by the above-captioned debtor and debtor-in-possession (the "Debtor"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties-in-interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion, any and all other documents filed in support of the Motion, and the UBS Objection; and this Court having determined that the legal and factual bases set forth in the

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Motion establish good cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is

**HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth herein.

2.      The Settlement, attached as **<u>Exhibit 1</u>** to the Morris Declaration, is approved in all respects pursuant to Bankruptcy Rule 9019.

3.      The UBS Objection is overruled in its entirety.

4.      The Debtor and its agents are authorized to take any and all actions necessary or desirable to implement the Settlement without need of further Court approval or notice.

5.      The Court shall retain jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Order

### END OF ORDER ###

DOCS_NY:41107.8 36027/002