# EXHIBIT 16

**Appx. 05032**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF TEXAS

BEFORE THE HONORABLE STACEY G. JERNIGAN, JUDGE

| | | |
|---|---|---|
| In Re: | ) | Case No. 19-34054-sgj11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | ) | |
| | ) | |
| Debtor. | ) | |
| ——————————————————— | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | ) | Adv. Proc. No. 20-03195-sgj |
| | ) | |
| | ) | PLAINTIFF'S MOTION for CONTINUANCE |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLO HOLDCO, LTD., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | ) | Adv. Proc. No. 21-03003-sgj |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANT DONDERO'S MOTION to COMPEL DISCOVERY, the TESTIMONY of JAMES P. SEERY, JR. |
| v. | ) | |
| | ) | |
| JAMES DONDERO, | ) | |
| | ) | |
| Defendant. | ) | May 20, 2021 |
| ——————————————————— | ) | Dallas, Texas (Via WebEx) |

<u>Appearances in 21-03003</u>:

For Plaintiff Highland    John A. Morris
Capital Management,      Pachulski Stang Ziehl & Jones LLP
                         10100 Santa Monica Boulevard, 13th Floor
                         Los Angeles, California 90067

For Defendant-Movant    Michael P. Aigen
James Dondero:          Stinson, L.L.P.
                         3102 Oak Lawn Avenue, Suite 777
                         Dallas, Texas 75219

                         Bryan C. Assink
                         Bonds Ellis Eppich Schafer Jones LLP
                         420 Throckmorton Street, Suite 1000
                         Forth Worth, Texas 76102

Appearances continued on next page.

Appearances in 20-3195:

| | |
|---|---|
| For the Official Committee of Unsecured Creditors: | Paige Holden Montgomery Sidley Austin LLP 2021 McKinney Avenue, Suite 2000 Dallas, Texas 75201 |
| | Matthew A. Clemente Sidley Austin LLP One South Dearborn Chicago, Illinois 60603 |
| For Defendants Highland Dallas Foundation and CLO Holdco Ltd.: | Louis M. Phillips Kelly Hart & Pitre 301 Main Street, Suite 1600 Baton Rouge, Louisiana 70801 |
| | Amelia L. Hurt Kelly Hart & Pitre 400 Poydras Street, Suite 1812 New Orleans, Louisiana 70130 |
| For Defendants The Dugaboy Investment Trust and The Get Good Nonexempt Trust: | Douglas S. Draper Heller, Draper, Patrick & Horn, L.L.C. 650 Poydras Street, Suite 2500 New Orleans, Louisiana 70130-6103 |
| For Grant James: Scott, III: | John J. Kane Kane Russell Coleman Logan Bank of America Plaza 901 Main Street, Suite 5200 Dallas, Texas 75202 |
| For UBS Securities LLC: | Andrew Clubok Latham & Watkins, LLP 555 Eleventh Street, NW, Suite 1000 Washington, D.C. 20004-1304 |
| For Scott Ellington, Jean Paul Sevilla, Isaac Leventon, and others: | Frances Smith Ross & Smith, PC Plaza of the Americas 700 North Pearl Street, Suite 1610 Dallas, Texas 75201 |
| Digital Court Reporter: | United States Bankruptcy Court Michael F. Edmond Sr., Judicial Support Specialist 1100 Commerce Street, Room 1254 Dallas, Texas 75242 |
| Certified Electronic Transcriber: | Susan Palmer Palmer Reporting Services |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

Appx. 05034

3

<u>I N D E X</u>

Adversary Proceeding 21-3003,
 Defendant Dondero's Motion to Compel:        page   5
      The Ruling of the Court:                page  33


Adversary Proceeding 20-3195:
      Committee's Motion for Continuance:     page  35
      The Ruling of the Court:                page  78

Witnesses:
                         Direct    Cross    Redirect    Recross

Marc Kirschner
 Declaration:            61
 By Mr. Phillips:                  62
 By Ms. Montgomery:                           65


Exhibits Received in Evidence:

      Defendants' 1 - 6:                      page  70

Appx. 05035

*Adversary 21-3003, Motion to Compel Discovery*      4

1   <u>Thursday, May 20, 2021</u>         <u>9:40 o'clock a.m.</u>

2          <u>P R O C E E D I N G S</u>

3      THE COURT: — settings in Highland Capital adversary

4   proceedings.

5      Before I start with that, I want to let anyone who is

6   on the line for a different case, RE Palm Springs II, LLC, that

7   the hearing we had on that matter was continued. Certain of the

8   parties filed an agreed motion to continue, and so I continued

9   that to June 9th at 9:30. So to the extent you are on the line

10   only for the Palm Springs matter, that matter is not going

11   forward today.

12      All right. So turning to Highland, I will start with

13   the first-filed emergency motion. It was in Highland versus

14   Dondero, Adversary 21-3003. Counsel for Dondero filed a motion

15   to compel testimony of James Seery. So who do we have appearing

16   for Mr. Dondero this morning?

17      All right. So —

18      MR. [SPEAKER]: I think he's on mute, Your Honor.

19      THE COURT: Sir, you are on mute. Try again.

20      MR. AIGEN: Ah, I apologize, Your Honor. Is this

21   better?

22      THE COURT: Yes.

23      MR. AIGEN: Okay. Good morning, Your Honor. Michael

24   Aigen from Stinson, representing Mr. Dondero. I apologize for

25   that.

1    THE COURT:  All right.  So you are now co-counsel with

2  Bond Ellis, perceive?

3    MR. AIGEN:  That is correct.  The lead counsel from

4  our firm is Ms. Deborah Deitsch-Perez.  She unfortunately has

5  medical emergencies going on with her family and is

6  unfortunately unable to be here for this hearing.

7    THE COURT:  All right.  Thank you.

8    For Highland, who do we have appearing on this matter?

9    MR. MORRIS:  Good morning, Your Honor.  It's John

10  Morris From Pachulski Stang Ziehl and Jones for the debtor.

11    THE COURT:  All right.  Thank you.  I presume those

12  are the only appearances on this discovery dispute.

13    MR. AIGEN:  That's correct.

14    THE COURT:  All right.  Well, Ms. — Mr. Aigen, you're,

15  I guess, new on the scene in the Highland matters.  And let me

16  just tell you I've read all the pleadings.  So I am aware that

17  of our numerous adversary proceedings, this is the one only

18  involving Dondero as a defendant and only involving three notes.

19  So, to help you find your argument, I'm going to say this.  I

20  remember when I was in law school — here comes a story — one of

21  our law professors said a suit on a note is the simplest kind of

22  lawsuit there is.  And probably when you are a young lawyer and

23  if you go to a civil business practice type law firm, this is

24  probably where you're going to get your feet wet.

25    And so, with that in my brain and having read the

Appx. 05037

1 pleadings, I'm asking: Why is this going to be complicated

2 where we need extensive discovery from the CRO/CEO who came on

3 the scene post bankruptcy two plus years after the notes?

4 So that's what's in my brain having read the

5 pleadings. And so convince me why I'm totally misreading the

6 situation.

7 MR. AIGEN: Thank you, Your Honor. I appreciate that.

8 One thing I want to make sure we understand is this is we're

9 seeking to compel deposition testimony for Mr. Seery in his

10 corporate rep capacity. We're not specifically asking for Mr.

11 Seery. We sent corporate rep depo topics over. They told us

12 Mr. Seery would be the corporate rep but they objected to

13 certain topics, as is their right. The specific topics, as you

14 know, we're seeking discovery on, there's Numbers 9, 14 through

15 17 go together, Number 20. In that sense what we're seeking

16 discovery on is a defense that we have asserted in this

17 proceeding that's currently pending.

18 As I'm sure you know from reading the pleadings, one

19 of Mr. Dondero's defenses is that there was a subsequent oral

20 agreement that the home would be discharged based upon certain

21 conditions being met. Highland, as is their right, believes

22 that this oral agreement never happened. And, as a result, it

23 contends that the defense has no merit. In their motion, I

24 think it was, or in their response, paragraph 4, they

25 specifically say that this defense has no basis in fact. That's

1 their right. The problem, however, is just taking this

2 position, based on this position they're also saying, well, we

3 don't get discovery on this event.

4      And although we're talking about six different

5 requests, it really comes down to three different areas, and

6 I'll jump into those and explain each one. The first one, which

7 I think is the most straightforward, is topic nine, which asks

8 for testimony regarding Mr. Dondero's defenses. Initially we

9 got a response saying that the objection wasn't relevant and

10 then they filed a response. And I think they realized that

11 might not have made a lot of sense saying it wasn't relevant, so

12 they said it was vague or invalid.

13      Counsel's well aware, as you are, what are defenses in

14 this case. They served discovery on these defenses. We

15 responded. They never complained that they're inadequate. They

16 know that our defense, at least one of them, is there had been

17 oral agreement on the loan, that it would be forgiven if certain

18 conditions occur, and that's what we want to take discovery on.

19      I'm confident counsel has interviewed Highland

20 employees to see who knows anything about this agreement. I'm

21 sure it's very possible that no one knows anything about this

22 agreement, and that's fine. But we certainly have a right to

23 ask the corporate rep about this and find out if anyone's going

24 to talk about this oral agreement at trial. This isn't

25 burdensome discovery —

1      THE COURT:  Can I — can I — let me ask a question

2  right there.  The defense is based on an oral agreement.  I mean

3  your client is the payee on the notes — excuse me — excuse me —

4  the maker.  It's easy to get confused here.  He's the maker on

5  the notes, but he was the CEO of the payee on the notes.  So

6  this is not Bank of America makes a loan to Joe, the plumber,

7  or, you know, I mean this is — he's on both sides of the

8  transaction.  So he knows who the oral agreement was made with,

9  right?

10      MR. AIGEN:  Correct, Your Honor.

11      THE COURT:  So, again, I'm trying to understand —

12      MR. AIGEN:  May I follow up —

13      THE COURT:  — the depth of the discovery needed.

14  Presumably, I think I read in here, that you're deposing — or I

15  don't know if it's agreed or not — you're deposing various other

16  Highland former employees.  But — but I don't understand why the

17  current CEO that was not around before the bankruptcy would have

18  any personal knowledge about oral agreements.  I mean this would

19  all be in Mr. Dondero's head, right?

20      MR. AIGEN:  Your Honor, I absolutely agree.  And there

21  are, I guess, two parts to that answer.  One is we aren't taking

22  other Highland employees' depositions.  We've asked for them,

23  and they have refused to give them to us and said they're

24  irrelevant.  We're trying to work that issue out.  And we may

25  get one of their depositions.  If they go give us one for a

1  couple hours and drop off, but this is — right now this is the

2  only discovery we're getting.  Their doc requests, they're not

3  going to give us any documents related to these topics.  So this

4  is our chance to get discovery on it.

5        As to his personal knowledge, he's their corporate

6  rep.  As a corporate rep, he can go figure out what other people

7  know.  But they're going to put someone on the stand — and I

8  think it's important, Your Honor, obviously they're going to

9  make a defense in this case — or, sorry — which stops our

10  defense with legal arguments saying even if this oral agreement

11  occurred and took place, it's not legally enforceable.  I

12  understand.

13        THE COURT:  Yeah, and what about —

14        MR. AIGEN:  I mean this is —

15        THE COURT:  — what about that?  What about that?  I

16  mean it's hard not to separate the need for discovery from that,

17  so what about that?

18        MR. AIGEN:  Well, your — yeah.  No, that's — if they

19  file a summary judgment on a legal issue, then we will address

20  that in our summary judgment legal issue, but right now we have

21  a pending defense.  And, Your Honor, one of their responses to

22  our defense, as they put in their response in paragraph 4, they

23  specifically state that this oral agreement never occurred.  So

24  I need to know how they know that, who are they going to put on

25  the stand.  I don't know which people are saying that.  So we

*Adversary 21-3003, Motion to Compel Discovery*                    10

1  ask for — to put it down into corporate rep topic.  They could

2  have given us anyone.  They decided to give us Mr. Seery.  But,

3  yes, he may not have personal knowledge, but that's who they

4  chose for their corporate rep to testify on this topic.

5          He's the only one I'm able to get this information

6  from.  And he may come up and say no one knows anything about

7  that.  That's fine.  But they have already said: We're taking

8  the position that this oral agreement never occurred.  I don't

9  know how they know that, I don't know who they're going to put

10  on the stand, but they are taking a factual position on that.

11  So we should have a right to take discovery on it.  Whether they

12  don't think this is a legally-valid defense, well, that's fine,

13  they could have moved for summary judgment on day one.  They

14  didn't.  As of now, this defense is still pending.

15          We have less than two months until trial.  I don't

16  know when the summary judgment's going to come, so there's not

17  going to be a chance to wait until the legal aspects of these

18  defenses are heard and then take discovery.  This is our one

19  opportunity to do it.

20          THE COURT:  Okay.  So this is topic number nine.  And

21  you say why not, let us ask a few questions, it may be five

22  minutes of questioning if he doesn't really know anything.  Is

23  that a summary of your position?

24          MR. AIGEN:  Well, yeah, he may not know anything and

25  they may not know anything, or they may, yes.  I don't know how

1  much time it's going to take.  The fact that they put in writing

2  that this agreement never occurred makes me think that someone

3  must know something, but I don't know.  It could be on that.

4  that —

5        THE COURT:  All right.

6        MR. AIGEN:  — it's certainly possible, Your Honor.

7        THE COURT:  All right.

8        MR. AIGEN:  That — and then the second topic or

9  second, I guess, group is 14 through 17 where we ask about

10 information about loans made by Highland or the debtor that were

11 particular to other people.  And the reason these requests are

12 relevant is, once again, — well, not once again — but it's our

13 position that Highland commonly entered into these types of

14 agreements.  They're saying:  Hey, this never happened, this

15 agreement didn't take place.

16       So the fact that Highland entered into other similar

17 type loan agreements with similar type business group

18 provisions, although maybe not dispositive, it certainly leads

19 to evidence that this agreement did in fact take place in the

20 situation where they're telling you and putting a pleading and

21 writing in the pleading, hey, this never — this agreement never

22 took place.  So this is relevant —

23       THE COURT:  So — so — so —

24       MR. AIGEN:  — and, like I said, —

25       THE COURT:  — on topics 14 through 17 you're saying

1  it's relevant if loans were made to other employees or officers

2  besides Mr. Dondero and it's relevant if those loans were

3  forgiven or not as to these three notes?

4  　　　　MR. AIGEN:  Correct, Your Honor.  Because they are

5  challenging that this agreement took place, for the —

6  　　　　THE COURT:  Well, —

7  　　　　MR. AIGEN:  — fact that other similar —

8  　　　　THE COURT:  — what if they did do this with another

9  employee, why is that relevant these three notes?

10 　　　　MR. AIGEN:  Well, because they're challenging that our

11 oral agreement took place.  The fact that oral agreements like

12 this were routine at Highland would make it more believable and

13 factual that our agreement took place, in light of their

14 challenge to the fact that the agreement took place.

15 　　　　Like I said, if they were just making legal challenges

16 to whether the agreement is enforceable, that would be one

17 thing.  So instead they're also taking the position, hey, we

18 don't think this actually took place.  So all — if Highland

19 routinely entered into agreements like this for other employees,

20 like I said, I understand that wouldn't be dispositive, but that

21 would tend to show that this pattern and practice of Highland

22 did include oral agreements like this.

23 　　　　THE COURT:  Okay.  I don't mean to get off on a

24 tangent here, but, you know, are there going to be a lot of

25 fraudulent-transfer lawsuits if in fact there was debt forgiven

1  in the couple of years or four years leading up to bankruptcy?

2  And are we going to have — well, I just don't understand, you

3  know, the obvious big tax exposure to your client and other

4  human beings if your — if your argument prevails, but I guess I

5  shouldn't — I shouldn't second guess legal strategy, but my

6  brain can't help to go there.

7          All right.  But, again to the relevance, your defense

8  is:  There was an agreement to forgive these notes.  It was oral

9  and we're entitled to discovery regarding other loans to other

10 employees for which there might have been oral forgiveness

11 because that will help establish our defense; that's the sum and

12 substance of categories 14 through 17?

13         MR. AIGEN:  That's correct, Your Honor.

14         THE COURT:  Okay.

15         MR. AIGEN:  And obviously I don't think there's any

16 need to try the ultimate legal issues here, but we're well aware

17 of these tax issues and we've worked into it, and so there are

18 different tax consequences depending on how conditions are

19 structured and it's my understanding that in situations like

20 this there wouldn't be sort of tax consequences, but that's an

21 issue for another day.  But because you raised it, Your Honor, I

22 want to make sure that you know we are aware of that issue and

23 that is something we're prepared to address when it — when it

24 comes before this.

25         So should I move on to the last — last topic, Your

*Adversary 21-3003, Motion to Compel Discovery* 14

1  Honor?

2  THE COURT: Okay.

3  MR. AIGEN: The last topic is Request Number 20 which

4  asks for testimony regarding compensation paid by Highland to

5  Mr. Dondero. And I know this might be a little unusual because

6  someone should know what they were paid, but obviously in a

7  situation like this where we don't have control of all the

8  records and the pay structure is complicated, we don't have all

9  of that, so it's a little different than your usual situation.

10  And the reason this is relevant, obviously this goes to the

11  forgiveness aspect of it, and basically information regarding

12  Mr. Dondero's compensation will be helpful or relevant because

13  it shows part of the story here is that if you look at his

14  compensation as a whole, he was underpaid and the notes were

15  forgiven as part of this compensation which goes along with the

16  underpaid. In other words, it puts this oral agreement into

17  context and explains why it is thus. Again, they're saying this

18  never happened, so as part of our presentation of our case,

19  we're going to explain why this was done and why it makes sense.

20  And to put that into context, we want information related to Mr.

21  Dondero's compensation. We're not asking for other people's

22  compensation on this, we said information related to Mr.

23  Dondero's own compensation.

24  And, again, I understand that counsel thinks that

25  these defenses have no merit. That's their right. That makes

*Adversary 21-3003, Motion to Compel Discovery* 15

1  sense.  And I assume they will file a summary judgment on these,

2  but they haven't done it.  These defenses are currently pending.

3  We're going to trial in less than two months.  We may not be

4  getting anyone else's depositions.  They're not giving us

5  documents on this topic.  And I understand it may be a little

6  unique to have Mr. Seery testify on this, but that's because we

7  just presented them with topics.  That's the witness they are

8  putting forward, which is their right.  I have no problem with

9  that.  But this is our one opportunity to get discovery on this

10  and that's why we're before the Court today.  Thank you for your

11  time.

12      THE COURT:  Okay.  Just to clarify, I think I heard

13  you saying Mr. Dondero doesn't have access to the records.  Mr.

14  Dondero doesn't have records regarding the compensation paid by

15  Highland to him and any agreements related to that?

16      MR. AIGEN:  He — he had some but not all.

17      THE COURT:  Okay.  Well, I don't understand that.  Why

18  would that be?  He's the founder, he was the CEO of this company

19  until three months after the bankruptcy was filed.  He — I mean

20  it sounds inconceivable to me that he wouldn't have everything

21  he needs as far as what he was paid in the agreements regarding

22  what he was paid by his company Highland.

23      MR. AIGEN:  Well, Your Honor, fortunately or

24  unfortunately I have not been involved what I understand is sort

25  of disagreements between the parties here on Mr. Dondero's

*Adversary 21-3003, Motion to Compel Discovery*                    16

1  access to certain documents of Highland, but my understanding is

2  he — Highland now has possession of all its documents.  And he —

3  I know there were requests between counsels on Dondero to get

4  particular documents in other matters and other situations going

5  on.  But he — Highland is the one that has possession of those

6  documents now, not — not Mr. Dondero.

7          THE COURT:  Okay.  He'd at least have his tax returns,

8  right, and files regarding his tax returns?

9          MR. AIGEN:  Correct, correct.  Correct.  Yes.  Yes,

10 Your Honor.

11         THE COURT:  All right.  Well, Mr. Morris, now for your

12 responses in — I'm playing devil's advocate with you.  If y'all

13 have named Mr. Seery as a 30(b) corporate rep and out of these

14 20 topics you agree to — two, three, four, five, six — I guess

15 13 of the subject matters, what's the big deal about a few extra

16 questions?

17         MR. MORRIS:  A few — a few issues.

18         First, Your Honor, is Mr. Dondero on the line?

19         THE COURT:  Well, that's a good question.  I forgot to

20 check that because I have ordered him in the past to be at every

21 hearing.

22         Mr. Dondero, are you with us this morning?

23         Mike, did you see him —

24         MR. ASSINK:  No, Your Honor.  This is —

25         THE REPORTER:  I haven't seen Mr. Dondero.

1      THE COURT:  Okay.  Well, Mr. Aigen, what do you know

2  about that?  Or I see Mr. Bryan Assink is out there as well.

3  What do y'all know about that?

4      THE REPORTER:  He's on mute, Your Honor.

5      THE COURT:  You're on mute, sir.

6      MR. ASSINK:  Your Honor, I apologize.  This is Bryan

7  Assink of Bonds Ellis.  I'm just trying to — I'm just trying

8  to —

9      THE COURT:  Okay.  It sounds like someone's speaking,

10  but I can't hear it.

11      THE REPORTER:  Bryan Assink, his voice is low.  He's —

12      THE COURT:  Okay.  Mr. Assink, please turn your volume

13  up.  We can barely, barely, barely hear you.

14      Mr. Assink.

15      MR. ASSINK:  Your Honor, is that — is that better?

16  I'm sorry.  I tested this before —

17      THE COURT:  Okay, it's better now.  Go ahead.

18      MR. ASSINK:  — I joined and —

19      THE COURT:  Go ahead.

20      MR. ASSINK:  Your Honor, this was set on an emergency

21  basis, and we just didn't coordinate with Mr. Dondero.  We

22  didn't think he needed to attend these kind of nonevidentiary

23  hearings and —

24      THE COURT:  Mr. Assink, you asked for the emergency

25  hearing.  And you filed your motion Friday afternoon.  We were

*Adversary 21-3003, Motion to Compel Discovery* 18

1  in court Tuesday.  And I was happy that you resolved our

2  disputes Tuesday.  And I remember saying:  Preview of coming

3  attractions, I guess I'll see y'all Friday, right.  Right,

4  nobody said anything about, uh, we have an emergency setting,

5  we're hoping to have.

6        But, anyway, be that as it may, an hour or two after I

7  got out of court Tuesday, my Courtroom Deputy was telling me

8  that you were wanting the hearing this week.  And I first said

9  it'll have to be Monday.  I mean we're — we've got a backlog of

10 stuff in our queue that we're really trying to get out.  And —

11 and I understood that you really pressed for having this hearing

12 today.  I didn't see the — all the emails, but my Courtroom

13 Deputy said you all really wanted this hearing today, not

14 Monday.

15       So, with that, why would you press for today if Mr.

16 Dondero wasn't available, number one?  And, number two, why

17 would you think he wasn't needed?  I mean it was a couple of

18 hearings ago that I said someone pull out my order and see what

19 I said, because I couldn't remember the exact wording —

20       MR. ASSINK:  No, Your Honor, I apologize.  I'm sorry,

21 Your Honor.  I apologize.  There's been a lot going.  I think it

22 — the coordination might have just slipped.  I'm not sure, Your

23 Honor, I wasn't sure what order required him to be here today

24 with the preliminary injunction dissolves but, you know, it

25 wasn't our intention that he would not — he would not appear.

Appx. 05050

1    We — it was more just a coordination thing.  We intend that he

2    will be at all hearings before, Your Honor, you know, Friday's

3    hearing and substantive hearings.  I just — I think this is more

4    of a coordination issue, Your Honor, and I apologize.

5            THE COURT:  Okay.

6            MR. ASSINK:  There has been a lot going on.

7            THE COURT:  Oh, don't I know.  There's two of us, me

8    and my Law Clerk working on this, and there are a bunch of

9    y'all.  So, yes, I feel — I feel absolutely what you feel and

10   more as far as a lot going on.

11           So let me clarify.  My language that ordered Mr.

12   Dondero to be at every hearing was in the preliminary injunction

13   that's now superseded by the agreed order y'all announced

14   Tuesday.  So are you telling me you thought now that mandate

15   didn't apply?  Is that one of the things —

16           MR. ASSINK:  Not — not specifically, Your Honor, —

17           THE COURT:  — I'm hearing?

18           MR. ASSINK:  Not specifically, Your Honor.  We thought

19   perhaps the formal mandate in the order was no longer applying,

20   but our understanding was you would want Mr. Dondero at

21   substantive hearings going forward, and that has been our

22   understanding.  And we would expect him to be before Your Honor

23   at all such hearings.  Part of the basis, the reasoning he's not

24   here today was perhaps as an oversight on my part due to the

25   scheduling, and I had a lot of deadlines yesterday and I think

1 it just maybe fell through the cracks, and I apologize, Your

2 Honor.

3         THE COURT:  All right.

4         MR. ASSINK:  You know, we — Your Honor, —

5         THE COURT:  Well, I'm going to say a couple of things.

6 You know this could have been raised Tuesday, when we were here

7 on the adversary proceeding, in which the preliminary injunction

8 was issued, okay, it would have been — it would have been wise,

9 it would have been very wise to raise the issue.

10         Second, it screams irony, if nothing else, that at a

11 time when I have under advisement a motion to hold Mr. Dondero

12 in contempt of Court that there would be a trip-up, the

13 second-recent trip-up, by the way, where he didn't appear at a

14 hearing.  There was a time a few weeks ago, two or three weeks

15 ago, can't remember what hearing it was then, but he wasn't

16 here.

17         Okay.  The —

18         MR. ASSINK:  Well, Your Honor, I just want to say —

19         THE COURT:  — the third thing I'm going to say — the

20 third thing I'm going to say is I guess I'll issue an order in

21 the main case now, you know, a one- or two-sentence order in the

22 main case saying repeating the sentence that was in the

23 preliminary injunction, that he's going to show up at every

24 hearing.  I never said only at substantive hearings.  The only

25 thing I hesitated on at all, because I've done this in other

1  cases, is sometimes I'll say any hearing at which, you know, the

2  person is taking a position, okay, an opposition, an objection,

3  you know, even if you file a pleading taking a neutral stand, if

4  he's going to file a pleading that requires the Court and all

5  the lawyers' attention to some extent, he's going to need to be

6  in court. So that's something I thought about doing, but then I

7  was reminded, that I said, no, he's just going to be at all

8  hearings in the future.

9         And procedural, substantive, I never made that

10  distinction and I never would because — because it's taking up

11  time, it's taking up time of the Court, lawyers, parties. And

12  if he is going to use the offices of this Court or, you know,

13  take up the time of any lawyers, then he needs to be a part of

14  it, okay?

15         MR. ASSINK: Your Honor, yes, I —

16         THE COURT: So I thought I made that very clear the

17  last time he didn't show up, but I think —

18         MR. ASSINK: Your Honor, I apologize. You know that's

19  certainly not our intention here. We've been rushing around. I

20  think this is more — this is more on — on me and just the fast

21  pace with everything. We would intend that he would be here at

22  all hearings. We're not trying to make any exception. We're

23  not trying to say that the preliminary injunction got rid of his

24  obligation to be before, Your Honor. You know, we weren't clear

25  exactly what the directive was for these kinds of hearings, or

1    at least perhaps I wasn't fully, and — but, nevertheless, Your

2    Honor, we would — we would have had him be here.  I think the

3    fast pace with the hearing settings and just everything going

4    on, it might have slipped through the cracks.  It's not — there

5    was no ill will with him not being here, Your Honor.  I

6    apologize.  It's just an oversight on our part.  We would

7    anticipate that he will be here for all future hearings.  You

8    know it's no disrespect to the Court.  It was not an intentional

9    thing.  We apologize, Your Honor.  So I understand the Court's

10   comments.  It's — but I just want to make clear it's we're not

11   trying to be cute, we're not trying to say that, oh, the

12   preliminary injunction is gone, he doesn't have to be here.

13   That's not our intention, Your Honor.  It was I think just an

14   oversight and a scheduling issue this time, but Mr. Dondero will

15   of course appear before Your Honor in all matters going forward,

16   so I apologize.

17          THE COURT:  All right.  Well, again, you're

18   scheduling.  You sought the scheduling, you sought the emergency

19   hearing, and this is the second time we've had this discussion

20   in less than a month.

21          All right.  So, Mr. Morris, back to you.  I think —

22          MR. MORRIS:  Yeah.

23          THE COURT:  — you were about to answer the question of

24   if Mr. Seery is going to be produced and talk about 13 different

25   topics, why is it a big deal to talk about these other seven

1    topics.

2            MR. MORRIS: Because there is no way to prepare a

3    witness for the vague statements that are being offered by

4    counsel. I'll point out that Mr. Aigen is yet another former —

5    a lawyer who formerly represented Highland and is now suing us,

6    but we'll dispense with the disqualification motion right now.

7            Your Honor, here is the deal. There have to be some

8    limits, there have to be some reasonable limits. As you

9    started, Your Honor, in law school you're taught that a

10   collection case under demand notes is the simplest thing there

11   is. In fact, in New York there's a special provision in state

12   law that permits a plaintiff to file a motion for summary

13   judgment in lieu of a complaint when they have an instrument

14   such as a note, which is exactly what we have here.

15           Mr. Dondero has already admitted in his answer, in his

16   interrogatories, and in his answers to several requests to admit

17   that the notes are valid, that he received the money

18   contemporaneously with the notes. When he signed the note, he

19   received the money. The debtor has made demand and he hasn't

20   paid, so we will be moving for summary judgment on that basis.

21           So let's look at what the defenses are and why we just

22   feel like it's a burden on the debtor to even entertain these

23   concepts. His first answer, Your Honor, said that the notes

24   were forgiven based on an agreement. So we asked him in the

25   interrogatory or request to admit, I forget which, show us your

*Adversary 21-3003, Motion to Compel Discovery*                    24

1  tax returns that you paid the taxes.  Of course he didn't pay

2  taxes because of course the note wasn't forgiven.  So instead he

3  amends his answers, he amends the affirmative defense to add the

4  words:  Pursuant to a condition subsequent.  Okay, he didn't say

5  that the first time.

6         The first time it was — it was forgiven and now it's

7  not forgiven but it's basically deferred until a condition

8  subsequent.  So he is not even contending.  If you look at his

9  amended answer, he's not even contending that it was forgiven,

10  he's simply saying that the obligation to repay has been

11  deferred pursuant to an oral agreement under which he does have

12  to pay until the debtor completes the liquidation of his assets,

13  basically, if you read it.  That's what it says.  And that's how

14  we got here.

15         I don't know if you picked up on it, Your Honor, but

16  in response to an interrogatory, when we said who made the

17  agreement on behalf of the debtor, Mr. Dondero said that he did.

18  Okay, this isn't an oral agreement unless he was talking to

19  himself.  This is something that happened, according to him, in

20  his head; that somehow he, as the maker of the note, had a

21  discussion with himself in his capacity as the chief executive

22  officer of the debtor, and the two of them, in his head, agreed

23  that he wouldn't have to pay.  Initially wouldn't have to pay at

24  all and now apparently doesn't have to pay until the debtor

25  completes its sale of assets.  That is what the defense is here,

1  so let's be very, very clear about it.

2        It's not an oral agreement, it's something that he's

3  making up in his head that he didn't make up the first time,

4  that he changed the second time, and that he — that he can't

5  describe at all.  One of the interrogatories said:  When did

6  this take place.  He didn't answer that part of the

7  interrogatory.  He hasn't told us.

8        And here is the interesting thing, Your Honor.  He's

9  partially performed.  He has admitted in response to — I forget

10  if it was an interrogatory or a request to admit, it's in our

11  papers — he has admitted that in December 2019, after the

12  petition date, and while he was still in control of the debtor,

13  that he made a payment to the debtor, a portion of which was

14  used to pay principal and interest on one or more of the notes,

15  so.  So either he made that payment after he made his agreement

16  in his head that it would be deferred, which makes no sense, or

17  he entered the agreement in his head after the time that he made

18  the payment, which would be in violation of the automatic stay,

19  because how did he just get to forgive or to defer payment of an

20  obligation to the debtor without seeking permission from the

21  Bankruptcy Court.  Those are the only two possibilities here,

22  okay.

23        So I don't want to have to prepare my client for such

24  nonsense.  I don't think we should be required to prepare my

25  client for such nonsense.  And if you take a look at the other

Appx. 05057

1  so-called affirmative defenses, he's got waiver, but he doesn't

2  know — he doesn't identify how we waived, when we waived, who

3  waived.  And, in fact, it's completely contradicted from the

4  evidence that's already in the record.  Every single monthly

5  operating report, all of the debtor's contemporaneous books and

6  records, they're in the record.  I actually submitted them in

7  opposition to his first request for an adjournment of this

8  proceeding because I wanted — I put my cards on the table, Your

9  Honor.  I really don't — I don't like to play games.  I put my

10  cards on the table.  They see all of that.  All of that is

11  there.  The debtor has — can see them.  So how could we have

12  waived everything.

13          Consideration, I'm supposed to prepare my client to

14  answer questions on his defense of lack of consideration, when

15  Mr. Dondero has already admitted that he received the face

16  amount of each note at the time the note was executed?  What —

17  we should not be entertaining this.

18          And let's talk about topics 14 to 17, the so-called

19  other loans that were forgiven.  Mr. Dondero was the president

20  and chief executive officer of this company for decades.  Has he

21  identified one single person who received a forgiven loan?

22  Nope.  Has he identified one loan that was ever forgiven?  Nope.

23  Has he ever contended that he had a forgivable loan?  Nope.

24  He's got this vague and ambiguous defense that somehow — it's

25  not even a defense, frankly.  His defense is that he had an oral

Appx. 05058

1  agreement with himself, either he did or he didn't, right.

2  We've got document requests outstanding. They were due weeks

3  ago. Mr. Aigen has promised me in writing tomorrow, tomorrow,

4  Friday. May 21st, he's going to complete his document

5  production.

6          We've gotten two documents so far, two bank statements

7  that show his receipt of the loan proceeds, right. We don't

8  have — there is no evidence for this. We don't have the

9  identification of a loan that was ever forgiven. We don't have

10  the identification of a person whose loan was forgiven. We have

11  nothing. How can we possibly prepare?

12          Rule 30(b)(6) actually requires them to describe with

13  reasonable particularity the matters for examination. How do I

14  prepare my client on — on these things? What he's trying to do,

15  I think what they're trying to do is be cute, of course, and

16  they're trying to — they want to ask Mr. Seery and Mr. Seery

17  will say, 'I don't have any knowledge of this.' And then

18  they're going to show up to trial and they're going to put on a

19  case and say, 'Mr. Seery didn't have any knowledge of it, so he

20  can't rebut,' or something — something silly like — I mean I

21  don't really know what they're doing. This is just such bad

22  faith.

23          Your Honor, you heard counsel say that the loan was

24  forgiven or deferred, but it's not even forgiven. So — so it

25  doesn't even make sense, but you heard him say that he was

*Adversary 21-3003, Motion to Compel Discovery* 28

1 underpaid, that Mr. Dondero was underpaid and that there's some

2 connection not with forgiveness because he's admitted that he's

3 now changed his story, it hasn't been forgiven.  It was

4 originally forgiven, now it's just deferred, and that that

5 happened because he was underpaid.  Does that make any sense at

6 all?

7       The guy who was in control of this enterprise from day

8 one, and I'm supposed to prepare my client to provide a history

9 of Mr. Dondero's compensation.  He doesn't know what he was —

10 did he not pay his taxes?  Should we go down that path and

11 should I now start subpoenaing his tax returns?  Because I think

12 that's appropriate.  If you want to ask what I have, I want to

13 know what you have.  So maybe Mr. Aigen can agree on the record

14 that I can have Mr. Dondero's tax returns.  If he'll do that

15 maybe I'll reconsider, because this is nonsense, Your Honor.

16 And that's really the point.  And I want to nip this in the bud

17 now because this is the first of five note cases for entities

18 owned and controlled by Mr. Dondero, and the same thing is

19 happening in some of these other cases, Your Honor.  It is.

20       And — and if we go down this path, you know you're the

21 Judge, you make the call, but we're going to be having a lot of

22 these because I'm not volunteering putting my client through

23 this process.  It's not right.  It's just not right.

24       He made an oral agreement with himself?  Please.  You

25 either violated the automatic stay or you partially performed,

Appx. 05060

*Adversary 21-3003, Motion to Compel Discovery*          29

1  thereby proving it never happened. Mr. Aigen says, oh, we

2  contest it. We don't sit here and contest it. The proof is in

3  the record. The proof is his client's own words. The proof of

4  the documents that we've already put before the Court. (Briefly

5  garbled audio) — never happened.

6          And I just — I just want to nip this in the bud.

7  That's really our point, Your Honor. To put forth a client in —

8  in a notes action, the simplest form of action there could

9  possibly be, to answer questions on 13 different topics, but

10 there's a limit to what we'll do, and this is our limit. And

11 that's why we won't — we won't do it in the absence of a court

12 order.

13         THE COURT: Okay.

14         MR. MORRIS: Thank you, Your Honor.

15         THE COURT: All right. So I will give the last word

16 to you, Mr. Aigen. What would you like to say in rebuttal?

17         All right. You must be on mute.

18         MR. [SPEAKER]: He's on mute.

19         MR. AIGEN: Sorry.

20         THE COURT: Okay.

21         MR. AIGEN: A few quick points, Your Honor. Number

22 one, counsel has referred to New York procedure on how he could

23 file a quick summary judgment. Well, he can file summary

24 judgment here too. They didn't do it. These defenses are

25 pending, we have a right to take discovery on it. I think

1 that's pretty straightforward.

2       Number two, counsel has repeatedly stated, as he

3 states in his pleading, that we changed our position and that

4 first answer it said that the notes were forgiven. It doesn't

5 say that. I'm reading from their pleading at paragraph 16 where

6 they quote our answer, the original one where it says,

7 "Defendant asserts that plaintiff's claim should be barred

8 because it was previously agreed by plaintiff that plaintiff

9 would not collect on the note." There's no change in the

10 position. It wasn't asserted before these notes were actually

11 forgiven, so that's just not true, and his own pleadings reflect

12 that.

13       We also heard a lot of conversation about what we have

14 given them. We have answered their interrogatories. They

15 didn't ask about other people who may have loans forgiven. They

16 had never asked about that. That's why we haven't told them.

17 They could get that information. They could serve discovery.

18 They're the one that wanted this case on a fast track. So keep

19 talking about discovery or answers he doesn't have because those

20 are answers to questions he never asked. There is no discovery

21 out there where they said to us identify the individual who you

22 believe received loans that are forgiven. They never asked

23 that. That's why they don't —

24       THE COURT: Let me —

25       MR. AIGEN: — that answer, so I don't think that's

1  right.

2           THE COURT:  Let me ask you this.  If Bank of America

3  loaned money to Mr. Dondero and he defaulted and they sued him

4  on the note, do you think Mr. Dondero could get discovery

5  regarding all other borrowers or any other borrower that Bank of

6  America may have lent money to and did they forgive some of

7  their indebtedness, did they have special arrangements?  Do you

8  think in a million years a state court judge would allow

9  discovery on this?

10          MR. AIGEN:  Not under that hypothetical, but I would —

11  what I would say, Your Honor, if there was an oral condition as

12  part of that loan and it turns out that everyone knew that Bank

13  of America provided those same oral conditions to a subset other

14  group of lenders — or borrowers, for whatever reason, and the

15  parties disputed that, then I think it would be discoverable.

16  So I think the situation here is —

17          THE COURT:  Oral agreements —

18          MR. AIGEN:  — different from your situation.  I agree

19  with the hypothetical.

20          THE COURT:  I mean again I — you know, oral

21  agreements.  I mean give me examples of case law where oral

22  agreements somehow prevailed at the end of the day.  I mean I

23  just...

24          MR. AIGEN:  And, Your Honor, at summary judgment, when

25  we have to present our case, we'll present our case.  Like I

*Adversary 21-3003, Motion to Compel Discovery* 32

1  said, they could have filed the summary judgment on day one,

2  just like they could do in New York, and said, you know, on the

3  defenses, but we're doing this and we're doing it on a fast

4  track obviously with trial in less than two months. So this is

5  our one opportunity to get discovery. And when they filed their

6  summary judgment, we'll respond with the law. But until they

7  do, for whatever reason they have waived it. They have told you

8  that it would be burdensome to allow him to answer a few other

9  questions. I don't — for one thing, burden was not an objection

10  they made, so he's talking about how it's burdensome and he

11  doesn't want to do it. But this is our one opportunity to get

12  this information. And if they file summary judgment, and, you

13  know, these defenses go away, obviously it won't be an issue

14  later, but this is our one opportunity to get this discovery.

15          THE COURT: Okay.

16          MR. MORRIS: Your Honor, if I may? Just one last

17  point. There is zero chance, zero chance that if any loan was

18  ever forgiven by the debtor that it was on the same terms on

19  which Mr. Dondero now claims his loan would be forgiven or

20  deferred. And how do I know that? Because if you look at his

21  response to the interrogatory, the condition subsequent, by

22  them. And Mr. Aigen is just wrong, he did change his answer.

23  His original answer was that he wouldn't have to pay. And then

24  his new answer, his amended answer is that he wouldn't have to

25  pay until a condition subsequent. And when we asked him what

1 that condition subsequent was, it was the liquidation of certain

2 assets. Since the liquidation of those assets has not been

3 completed, by definition, no other maker could have had a note

4 or an oral agreement or an agreement of any kind of the type

5 that Mr. Dondero has. So yet another reason why it fails to

6 meet the burden, they fail to meet the burden under Rule 26.

7 Nobody could have ever had the same note forgiven or agreement,

8 because the condition subsequent hasn't been met yet.

9         <u>THE COURT'S RULING ON THE MOTION TO COMPEL</u>

10         THE COURT: All right. Well, I'm going to deny the

11 motion to compel. I don't think that the burden has been met to

12 establish the relevance of these, I guess it's — one, two,

13 three, four, five — six topics that are now at issue, topics 9,

14 14 through 17, or 20, and, you know, I don't think the

15 proportionality standard is met here.

16         I do think it would be not proportionate to the needs

17 of the case for the CEO, who came in place in 2020,

18 postpetition, two years after these notes were executed, to have

19 to go do research about any loans made by Highland to any

20 officers and employees over the years and, you know, I don't

21 know who he's going to question, what policy he is going to look

22 into that might be some substance or evidence as to oral

23 agreements or forgiveness. I don't think he should have any

24 obligation to search files and interview people to figure out

25 what the affirmative defenses and Mr. Dondero are all about or

1  based in.  And, again, no one would have better information

2  about his own compensation than Mr. Dondero himself.

3          I mean I want to stress that this comes against a

4  backdrop of — well, it seems like some antagonism, to say the

5  least, on the part of Mr. Dondero where Mr. Seery's concerned.

6  It seems like it's always a fight with Mr. Seery.  And you say,

7  well, we didn't handpick him as the 30(b)(6) witness, but, you

8  know, the motion to compel names him by name.  It just — it

9  feels like another antagonistic move.

10          You've got him for a deposition next Monday on 13 or

11  so different topics.  I think it is appropriate to draw the line

12  on these six or so topics that again just don't seem relevant or

13  proportional to the needs of the case.

14          All right.  So, Mr. Morris, would you please upload

15  just a simple order reflecting the Court's ruling?

16          MR. MORRIS:  I would be happy to, Your Honor.

17          THE COURT:  Okay.  Actually I'm going to ask Mr. Aigen

18  to do it.  I'm sorry.  I need to be thinking about attorney's

19  fees and who should bear the costs of what.

20          So, Mr. Aigen, would you please electronically submit

21  an order?

22          MR. AIGEN:  Yes.

23          THE COURT:  All right.  Thank you.

24          All right.  Well, if there's nothing else on this

25  particular adversary, let me just double check.  Any

Appx. 05066

*Adversary 20-3195, Committee's Motion to Stay*                    35

1  housekeeping matters before I move onto the other adversary?

2          MR. AIGEN:  Not from the debtor, Your Honor.

3          MR. CLUBOK:  Your Honor, —

4          THE COURT:  All right.

5          MR. CLUBOK:  I don't know if you're about to move on.

6  Your Honor, can you hear me?

7          THE COURT:  I'm sorry, Mr. Clubok?

8          MR. CLUBOK:  Your Honor, —

9          THE COURT:  Were you weighing in on —

10         MR. CLUBOK:  Yeah, I'm — I'm sorry.  It's not about

11 that proceeding, but are you about to move on beyond — beyond

12 the Highland matters?

13         THE COURT:  No, no, no.

14         MR. CLUBOK:  There was another Highland matter —

15         THE COURT:  I was next — I was next going to go to the

16 other adversary, the dispute between the committee and seven or

17 so defendants.  And, yes, I know we have UBS I guess all day

18 tomorrow unless anything has changed.  So we'll — we'll hear

19 before we're done any previews about tomorrow.

20         All right, so moving on —

21         MR. CLUBOK:  Thank you.

22         THE COURT:  — the Committee versus CLO Holdco,

23 20-3195.  We have a committee motion to basically stay the

24 adversary proceeding for 90 days.  So I will get lawyer

25 appearances on that.

1        Who do we have appearing for the committee, the

2   movant?

3        MS. MONTGOMERY:  Yes, Your Honor.  Paige Montgomery

4   for the committee.

5        THE COURT:  All right.  And for the defendants, who do

6   we have appearing?

7        MR. PHILLIPS:  Good morning, Your Honor.  Louis M.

8   Phillips on behalf of Highland Dallas Foundation and CLO Holdco

9   Ltd., along with my associate Amelia Hurt.

10        THE COURT:  All right.  I saw your —

11        MR. DRAPER:  Good morning, Your —

12        THE COURT:  — pleading filed at 9:00 something last

13   night.

14        Any other defendant appearances?

15        MR. KANE:  Yes, Your Honor, —

16        MR. DRAPER:  Yes, Your Honor.  Douglas Draper on

17   behalf of the Dugaboy Investment Trust —

18        THE COURT:  All right.  Thank you.

19        MR. DRAPER:  — and Get Good.

20        THE COURT:  Oh, okay.  Thank you.

21        Other appearances?

22        MR. KANE:  Yes, Your Honor.  John Kane on behalf of

23   Grant James Scott, III.

24        THE COURT:  Okay.  Mr. Kane, your volume was very low.

25   You're — you're Mr. Scott's counsel as trustee for these trusts?

Appx. 05068

*Adversary 20-3195, Committee's Motion to Stay*                                    37

1          MR. KANE:  In — in a sense, Your Honor, and in his

2    individual capacity.  I no longer represent CLO Holdco.

3          THE COURT:  Okay.  I don't know if you got that at

4    all, Michael.  It was so faint.

5          THE REPORTER:  Yeah, I got a little of it, but it —

6          THE COURT:  Okay. you're no longer representing CLO

7    Holdco, Ltd., but you're representing Grant Scott in his trustee

8    capacity for these two trusts?

9          MR. KANE:  Your Honor, Grant Scott is no longer the

10   acting director or trustee of CLO Holdco, but he was a named

11   defendant in this action based on his time as trustee or

12   director of CLO Holdco, and I represent him in that capacity.

13         THE COURT:  Okay.  Any other defendant appearances?

14         MR. ASSINK:  Good morning, Your Honor.  This is Bryan

15   Assink for Mr. Dondero.

16         THE COURT:  Okay.  Any other appearances?

17         All right.  Well, Ms. Montgomery, you may make your

18   argument.

19         MS. MONTGOMERY:  Thank you, Your Honor.  And thank you

20   for taking the time to consider our motion so quickly.

21         I'd like to just briefly address how we plan to

22   proceed today.  To make more time, we'd like to give a brief

23   opening statement.  I'm not sure who among the defendants

24   intends to be heard specifically today in opening, but at the

25   conclusion of that we would like to proceed to testimony.  We

*Adversary 20-3195, Committee's Motion to Stay*                    38

1   have Mr. Kirschner, who you can see on the screen, Your Honor,

2   and he's here today.  We plan, for efficiency sake, to put him

3   on by proffer to the extent that that is acceptable to the

4   Court.  And then he will be available to answer any questions

5   that the Court or the defendants may have.

6          THE COURT:  All right.

7          MS. MONTGOMERY:  As you can see in our motion, we're

8   requesting a 90-day stay of the adversary proceeding.  And the

9   purpose for that stay is to allow Mr. Kirschner and his firm,

10  Teneo, the time they need to get up to speed on this case.

11         Stepping back for a moment, it was always the

12  committee's intention have these claims prosecuted by the

13  ultimate litigation trustee.  However, due to a disagreement

14  about certain funds that are held in the Court's registry, the

15  clock started ticking on the committee's time to bring this

16  adversary proceeding.  So but for the order that the committee

17  commenced an adversary proceeding by a date certain, this action

18  would have been brought at a later time by a litigation trustee

19  post effective date as part of a comprehensive litigation

20  strategy related to all estate claims.

21         For a variety of reasons the effective date of the

22  plan has been repeatedly delayed, which has necessarily delayed

23  the formation of the litigation subtrust.  We're coming up on

24  two years since the filing of the bankruptcy proceeding and

25  there's limited time available for the trust to be formed and

**Appx. 05070**

1   the trustee to develop a comprehensive litigation strategy.

2         As the Court may have noted, as we are wrapping things

3   up, two of our four committee members have also recently

4   retired/withdrawn from the committee. So as a result last

5   Friday, the committee filed an application —

6         THE COURT: Just inquiring minds want to know. I mean

7   did they — did they by chance sell their claims or they just

8   were tired of the committee role?

9         MR. CLEMENTE: Your Honor, if I may? It's Matt

10   Clemente. I'll just jump in on that, Your Honor, —

11         THE COURT: Um-hum.

12         MR. CLEMENTE: — very quickly. I don't know how

13   anybody could be tired of being on the committee, but the answer

14   is, Your Honor, that they both sold their claims and

15   claim-transfer notices have been placed on the docket. The

16   United States Trustee is aware and the trustee's position at

17   this point is to keep the committee at the two members, which

18   are Meta E and UBS, as we continue forward here through the case

19   and hopefully to an effective date in the near future.

20         THE COURT: All right. Thank you.

21         All right. Ms. Montgomery, continue.

22         MS. MONTGOMERY: Thank you, Your Honor.

23         So as a result, last Friday the committee filed an

24   application to retain Mr. Kirschner and his firm as litigation

25   advisor to the committee until the plan goes effective and the

**Appx. 05071**

1 litigation subtrust is formed. At that point Mr. Kirschner will

2 become the litigation trustee under the plan and he'll be

3 responsible for all claims brought seeking recovery on behalf of

4 the estate. So obviously under the terms of the plan, our

5 client, the committee, will cease to exist at that point and

6 responsibility for the adversary proceeding that we're currently

7 being heard in will pass to the litigation trustee. And there

8 will be a new oversight committee, which has not been formed yet

9 either as of the effective date.

10      So because this adversary proceeding will transfer to

11 the litigation subtrust upon the effective date of the plan,

12 it's imperative that Mr. Kirschner be involved in the

13 prosecution of the adversary proceeding immediately and the

14 development of legal strategy for all of the estate claims as a

15 whole. For a number of reasons, the 90-day stay of the

16 adversary proceeding will provide Mr. Kirschner with the

17 necessary time he needs to get up to speed.

18      Mr. Kirschner needs to familiarize himself with the

19 Byzantine structure of the debtor and the relationships among

20 the debtor and its thousands of related entities and insiders.

21 The corporate structure, as you have noted on several occasions,

22 is highly complicated. And the ownership and beneficial

23 ownership of entities is confusing enough even before you

24 consider the variety of transfers of estate assets between and

25 among those entities — entities. We've heard these

1  relationships described as tentacles.  I tend to think of them

2  as a web, and the allegations of this adversary proceeding

3  represent only a small section of strands.

4        Mr. Kirschner also needs time to familiarize himself

5  with the pending motions to withdraw the reference and the

6  motions to dismiss, and to develop the strategy which could

7  significantly change the trajectory of the adversary proceeding

8  and future adversary proceedings.  Mr. Kirschner's decisions

9  regarding how to respond to these motions may change the course

10  of the litigation in ways that are material to the pending

11  motions.  For example, he could determine to amend the complaint

12  or he could bring additional claims that the committee does not

13  have standing to bring on its own.  For example, breach of

14  fiduciary duty.  Importantly, there could be arguments

15  surrounding the motion to withdraw the reference and have

16  impacts on the other actions that may be brought by Mr.

17  Kirschner in his role as litigation trustee.

18        The strategy surrounding plaintiff's response to the

19  motion to withdraw the reference may also depend on facts that

20  have not yet been developed.  Mr. Kirschner should be given at

21  least some time to develop that strategy.

22        It's also worth noting that the notice period on Mr.

23  Kirschner's retention application does not end until June 7th,

24  which is after the current hearing date for the motions to

25  withdraw the reference, which are set for June 3rd.  Given his

Appx. 05073

*Adversary 20-3195, Committee's Motion to Stay* 42

1  proposed role as litigation advisor and his future role as

2  litigation trustee, he will be responsible for this adversary

3  proceeding, he should be involved in the strategy to oppose the

4  motions to withdraw the reference.

5        As you know, Your Honor, the Highland entities have an

6  extremely complex structure involving obscure relationships and

7  ownership structures.  Mr. Kirschner not only has to get up to

8  speed with those facts, but he also needs to wrap his hands

9  around the transfer of information obtained from both the debtor

10  and the committee over the course of these proceedings.  So this

11  adversary proceeding is just one part of the complexity that is

12  the estate claims, but it's an important part and he should have

13  time to ensure that he's proceeding in the most efficient way

14  and in the way that's best for the debtor's estate.

15        In addition to needing to get up to speed on the facts

16  giving rise to this case, Mr. Kirschner is also — will be

17  working on a comprehensive strategy for all estate claims.  As

18  pointed out in the response that was filed last night, since he

19  is familiar with the adversary proceeding, obviously, we filed

20  it, and we did so after tedious review of thousands of

21  documents, and it took us months to put together a picture of

22  the transactions that are underlying the complaint, and those

23  months were after we had been actively involved in these

24  proceedings for over a year, so it's a very complicated —

25  there's some pretty complicated stuff going on there.

1    We also believe that we provide competent

2  representation, which is at least tangentially challenged in

3  that response, but we're the lawyers that represent the

4  committee.  We're not the party that's responsible for the

5  decisions of the underlying management of the litigation.

6  Obviously lawyers take direction from their clients and ours as

7  of the effective date will no longer exist, and Mr. Kirschner

8  will be the person who's responsible for making those decisions.

9    So to put it slightly differently, we may be driving

10  the car but we're not deciding, you know, where the car is

11  going.  That's the client's decision.

12    I am at least somewhat offended by opposing counsel's

13  implication that the motion to stay was brought in bad faith

14  because it smelled that there might be some litigation

15  advantage.  All I can do in response to that, Your Honor, is

16  assure the Court that the stay is not being sought for such a

17  purpose.  To the extent that there's any gamesmanship occurring

18  in these proceedings, it's not us that's engaging in it.

19    Mr. Kirschner is entitled to gain his own

20  understanding of the issues underlying this adversary and of the

21  litigation landscape as a whole, and to have an orderly

22  transition of responsibilities from the committee, the debtor,

23  and counsel for both before he's asked to make important

24  strategic decisions that could have long-lasting implications on

25  his work.

1    In short, Your Honor, there is no rush to have the

2   pending motions heard and no prejudice to defendants by a stay

3   of proceedings.  As they point out in their response, the Court

4   has delayed the hearing on the motion to dismiss until after

5   consideration on the motion to withdraw the reference.

6   Additionally, as they make clear in their response, discovery is

7   not underway at this point.  We still haven't effectuated

8   service as to all defendants.  We have some defendants that are

9   foreign entities and we're still working through the service of

10  process.  We're not entirely sure how much longer that's going

11  to take, but it has proven to be a lengthy process to date, and

12  we don't really have an estimated time for when that will be

13  done.  So, if anything, there is an ideal time for a pause on

14  proceedings that won't prejudice any party.

15    The only purported harm our opponents have identified

16  is the delay itself, and I have to admit, Your Honor, that this

17  is the first time I've ever heard a defendant argue that they're

18  prejudiced by litigation against them not proceeding.  In fact,

19  we reviewed the cases that are cited in the response that

20  purport to support a right of good — to a determination of

21  rights and liabilities without undue delay.  Unsurprisingly,

22  both involve instances of a defendant seeking to delay

23  prosecution of a plaintiff's case rather than the reverse, as we

24  see here.  And in those cases, the stays that were sought were

25  either indefinite or extremely long.  They were not a brief

1  90-day extension of the sort recognize requested here.  There's

2  simply no prejudice to the defendant in the adversary by staying

3  the proceeding for 90 days.

4          On the other hand, the 90-day stay of the adversary

5  proceeding will provide Mr. Kirschner with the time that he

6  needs to develop an understanding of this adversary proceeding

7  and the litigation strategy as a whole.  And moving forward

8  without the stay may very well prejudice the future litigation

9  subtrust and harm the debtor's estate.

10          That's all I have for now, Your Honor.

11          THE COURT:  All right.  A couple of questions.  You

12  said there's been no service on certain defendants, and I know

13  that certain of these defendants are said to be Cayman Island

14  entities, these various Charitable — Charitable Daf (phonetic),

15  maybe CLO Holdco Ltd, Charitable Daf Fund, those three in

16  particular, right, right foreign entities?  Okay, so they have

17  gone —

18          MS. MONTGOMERY:  Yes, Your Honor.

19          THE COURT:  — they have not — those are the three, I

20  presume, that have not been served?

21          MS. MONTGOMERY:  CLO Holdco has been served, the

22  others have not.

23          THE COURT:  Okay, okay.  Thank you.  I'm sorry, I'm

24  getting a little mixed up.  So there's been money in the

25  registry of the Court and I remember that was why early on I

1    sort of created a quick time table for you all getting this

2    filed.  How much money is still in the registry of the Court?  I

3    remember there were agreed orders that some of it could be paid

4    over, I think, to Mr. Rocatta (phonetic).  I can't remember who

5    — who all.  But is there still a substantial fund in the

6    registry of the Court without me going online and looking that

7    up?

8              MS. MONTGOMERY:  I'm going to have to look and get the

9    exact numbers as well, Your Honor, but it's the portion of the

10   moneys that were purportedly payable to CLO Holdco are still in

11   the Court's registry.

12             THE COURT:  Okay.  So it's just that defendant's

13   funds.  And am I also correct that now the debtor ultimately has

14   a majority interest in CLO Holdco, the debtor itself, because of

15   that Harbor Vest (phonetic) settlement?

16             MR. PHILLIPS:  No, Your Honor.

17             THE COURT:  Oh, that's not right?

18             MR. PHILLIPS:  I don't think so, no.

19             MR. KANE:  Your Honor, this is John Kane.  I can

20   actually provide some clarity on that.  The Harbor Vest

21   acquisition by the debtor's affiliate relates to HCLOF, Highland

22   CLO Funding, not CLO Holdco.  CLO Holdco is the 49-percent

23   interest owner in HCLOF.

24             THE COURT:  Okay.

25             MR. DEMO:  And this is Greg Demo, Your Honor, from the

Appx. 05078

1   debtor.  I can confirm what Mr. Kane just said.

2          THE COURT:  Okay, okay.  So CLO Holdco is just

3   strictly in that line of the Charitable Daf and as far as who

4   owns — who owns it —

5          MS. MONTGOMERY:  That is — that's my understanding,

6   Your Honor.

7          THE COURT:  Okay, okay, so I — once again I have

8   flipped the organizational structure.

9          All right.  And then my last question for you, Ms.

10  Montgomery, is the effective date of the plan has not occurred.

11  There's obviously an appeal now at the Fifth Circuit, a direct

12  appeal of the confirmation order.  Is there still a stay pending

13  appeal — a motion for a stay pending appeal pending out there

14  either at the District Court or Fifth Circuit, or have those

15  been ruled on one way or the other?

16         MS. MONTGOMERY:  Mr. Demo, could you — were you

17  popping on to answer that question?

18         MR. DEMO:  Yes, Ms. Montgomery.

19         This is Greg Demo, Your Honor, from Highland Capital

20  Management.  We still intend to try to go effective after the

21  hearing on the exit financing, which has been postponed until

22  June 25th.  That's counsel to NexPoint Advisors, and counsel to

23  Highland Capital Management Fund Advisors filed a motion last

24  night with the Fifth Circuit seeking a further stay of the — of

25  the effective date, pending the resolution of their appeal.  So

**Appx. 05079**

*Adversary 20-3195, Committee's Motion to Stay* 48

1  we don't know how that's going to shake out, but the debtor does

2  anticipate trying to go effective following June 25th.

3          THE COURT:  All right.  So has there been a stay of

4  the confirmation order?

5          MR. DEMO:  We've agreed to a short administrative

6  stay —

7          THE COURT:  Okay.

8          MR. DEMO:  — as all this stuff has been going on.  I

9  believe the administrative stay — actually I can't remember when

10 it expires, but we have agreed to a short administrative stay.

11         THE COURT:  Okay.  And so it's —

12         MR. DRAPER:  Your Honor, this is Douglas Draper.

13         THE COURT:  Okay, go ahead.

14         MR. DRAPER:  Just to give the Court some background, —

15         THE COURT:  Go ahead.

16         MR. DRAPER:  — there were two — you denied the stay

17 pending appeal.  There were two appeals taken from your ruling.

18 One by myself on behalf of Dugaboy and one by Devor (phonetic)

19 on behalf of other entities.  They both went up to Judge Godbey.

20 He has never ruled on the stays pending appeal.  So what was

21 done is inasmuch as the motion — the appeal of the confirmation

22 order is up in the Fifth Circuit, last night Devor filed a

23 motion for a stay pending appeal in the Fifth Circuit, and

24 that's pending.  So that's the procedural background of what's

25 gone on.

1    THE COURT: All right.  Thank you, Mr. Draper.

2    All right.  Well, I'll hear opening statements from

3   our defendants.  And I ask you please not to be duplicative of

4   each other.  So who wants to go first for the defendants?

5    MR. PHILLIPS: Your Honor, Louis M. Phillips on behalf

6   of Highland Dallas Foundation and CLO Holdco Ltd.  We filed a

7   response in opposition to the motion to stay.  And we are the

8   ones who, my firm and I, and I'm the one that filed, that sent

9   messages across to counsel for the committee in response to the

10  request for consent or notice of opposition.  So I guess since

11  we filed the response we ought to go forward.

12   We have reviewed the — we laid out a time line in our

13  response.  We've laid out communications between counsel and our

14  response.  We laid out what we think the burden is.  And we've

15  laid out the case law that we think establishes the burden for a

16  stay.

17   What we are concerned about is the — first of all, the

18  90-day stay, it might even come around as far as further

19  activity in the lawsuit because we don't know what the Court

20  would do on June 3rd.  We know that the Local Rules require that

21  — or set forth that the Court will issue a report after the

22  conference on June 3rd about — to the District Court concerning

23  the motion to withdraw reference.  We filed a motion to withdraw

24  reference.  We filed a first response to the litigation, A, a

25  motion to withdraw reference; and, B, a motion to dismiss under

1   Rule 12(b)(6) and a motion for a more definite statement as

2   well.  Both our filings were followed by other defendants who

3   sought withdrawal of the reference and also dismissal.

4          This Court has pushed aside the motion to dismiss

5   pending resolution of the — of the motion to withdraw reference,

6   which we think is entirely appropriate and we're fine with, so

7   where we are, Your Honor, —

8          THE COURT:  And let me — let me just interject there.

9   That is always 100 percent of the time my practice, and I think

10  the other bankruptcy judges here.  It's out of deference to the

11  District Court.  If the District Court ends up withdrawing the

12  reference, they may want to say, 'I want to withdraw the whole

13  darn thing.  We don't even want you doing pretrial matters,' so

14  we don't want to get ahead of them by considering a pretrial

15  matter.  So I did what I do in every case and will take the next

16  steps —

17         MR. PHILLIPS:  And we agree a hundred percent with

18  that approach, Your Honor.  We didn't really know how we were

19  going to proceed on the motions to dismiss.  But we had

20  deadlines to filing and we got very brief extensions for one of

21  our clients to file a response to the complaint after service.

22  On the other client, we didn't get any extension to file a

23  response.  So we filed timely responses and we didn't know how

24  the Court was going to handle the motion to dismiss.  And the

25  way the Court just handled them is entirely what we — we agreed

*Adversary 20-3195, Committee's Motion to Stay* 51

1  that that was the way to do it, because the District Court has

2  several alternatives if it determines to withdraw the reference.

3  And we know the courts, we've looked at the Court's Local Rule.

4  We just don't know how long, and we have no control and we're

5  fine with having no control over how long the Court would —

6  would have to take, given its docket, to issue its report to the

7  District Court.  And we have no control over what the District

8  Court would do.

9          Our problem with the motion for a stay is that we know

10  that the only things really pending now are motions to withdraw

11  reference.  Those are subject to being brought before Your Honor

12  at either kind of a hearing/conference where the parties will

13  put forth their legal arguments and any evidence, but the

14  evidence will basically be the nature of a litigation and the

15  situation of the docket.  So there's no real factual issues in

16  dispute.  We have a lawsuit, we have a motion to withdraw

17  reference that's been briefed.  We grant an extension of the

18  response deadline to May 21st in connection with the request by

19  counsel.  And we purposely asked the Court for the June 3rd

20  date, all with agreement of all counsel.  And then two days we

21  get the emergency motion — or last night, yesterday we get the

22  emergency motion to stay when the litigation assistant was, in

23  fact, retained on the day or two after we filed our responses.

24  And there was no mention in any way, shape, or form of a need to

25  stay at that time.

1          So we have one thing pending:  Motions to withdraw the

2    reference.  We have reviewed and set forth in our response the

3    scope of services for which Teneo was being retained.  It does

4    look to us like it is — it looks like litigation support and

5    litigation analysis.

6          And I hear what counsel for the plaintiff is saying,

7    but there have been — she's — we agree that there has been

8    months and months and months of analysis, there have been

9    millions and millions and millions of dollars spent on U.S. —

10   UCC counsel fees.  They have gone through thousands and

11   thousands of documents.  They came up with this piece of

12   litigation.  This is the one I know about.  This is the one

13   pending before the Court.  And there might be — there is a

14   suggestion that there is an overarching litigation strategy

15   being employed, but this is what we have right here.  And that's

16   speculation that we have no idea about and we assume the Court

17   has no idea about.

18         So we have one thing that we want decided and it's

19   easy for a plaintiff to say — and, look, we're chastised for

20   being defendants who want to move the lawsuit.  One of our

21   clients didn't even ask for an extension of the deadline to

22   respond.  We have — we asked for one extension for one of

23   clients.  And that extension dovetailed into the response date

24   for the other client so that we could file a single response for

25   both clients.  That was granted.  We appreciate that.  And when

1   the committee asked for an additional time, we granted it with

2   the proviso that we get the June 3rd date so that if we need to

3   file a reply, we'd have three or four days to file the reply.

4          We have been — we have not been the ones asking for

5   any delay and we're not going to ask for any delay.  And so I

6   don't care what other cases say, I don't care what the

7   plaintiff's lawyer says about defendants always want to delay.

8   We're not asking for any kind of delay.  We want to move

9   forward.  And we think we have the right to figure out and find

10  out what court is going to be handling our litigation.  That's

11  what we're asking for.

12         We've already said in the communications that we've

13  listed on our witness and exhibit list that we'll be more than

14  happy to talk about some type of stay about motions — you know,

15  discovery, whatever, whatever, if there — if the litigation

16  advisor needs to get up to speed on what documents are out

17  there, what documents it would have to review, that's fine.

18  We're probably going to do some discovery.  But we're only going

19  to discovery if our motion to dismiss under 12(b) are not

20  granted, because if they are there doesn't need to be any

21  litigation advice or any analysis about alternatives or

22  objectives or overarching strategy to deal with the motion to

23  dismiss under Rule 12(b).  That's a legal issue.  And the

24  counsel is very adept — we say counsel's adept.  We know they're

25  adept.  That's why we know that they are ready to proceed in

1  response to our motion to withdraw reference.

2          And then if the District Court takes it after Your

3  Honor gives her report, then we'll bring the motions, we'll get

4  with the lawyers for the plaintiff and we'll make — bring our

5  motion to dismiss before the District Court on some kind of

6  agreed schedule, but those are legal issues.  There is no advice

7  needed for a motion to withdraw reference.  There's no advice

8  needed for a motion to dismiss under 12(b).  Those are legal

9  questions and — and the idea that Sidley and Austin needs

10  assistance from an advisor as to how to approach a legal issue,

11  we don't think is meritorious.

12          So, Your Honor, we have put — we have a witness and

13  exhibit list of six documents.  One is — Document 1 is the

14  application to employ the Teneo firm.  2 is the — 2, 3, 4, 5,

15  and 6 are email communications we have provided them.  They are

16  between counsel that are before the Court here today, just to

17  show that we granted extension for them to respond, then they

18  ask, and we responded, and so that they were on notice that we

19  opposed the requested stay.  And we would like for the motion to

20  withdraw reference to go forward.

21          The parties will have plenty of time to work out

22  discovery, Rule 26 issues, motion for relief — motion to dismiss

23  under 12(b) in front of whichever court is going to handle it.

24  Certainly this Court is — if the motion to withdraw reference is

25  denied, this Court will be in full control of when we have

Appx. 05086

1  hearings on the motion to dismiss. And we understand that. So

2  will the District Court if the District Court grants the motion

3  to withdraw the reference. The District Court will determine

4  hearings on the motion to dismiss under Rule 12(b). And then we

5  have those two things to get past. And those are legal

6  questions, legal questions that are already before the Court or

7  already there. So we don't see how additional time is necessary

8  with respect to that.

9         We think by the time the stay — quote stay expires

10  we'll have a determination at least on the withdrawal motions.

11  And we can probably have a setting on the dismissal motions.

12  And if there — if the plaintiffs survive dismissal, then we'll

13  have discovery that all litigants will be involved in and

14  agreeing to and with scheduling orders, et cetera, from whatever

15  court is going to try this case.

16         And I'd like to say also that once we have — CLO

17  Holdco has been involved in the bankruptcy case. We recognize

18  that. I was not the lawyer for CLO Holdco, but I'm representing

19  CLO Holdco now. The Highland Dallas Foundation has not been.

20  And the Highland Dallas Foundation is a charitable organization

21  that has institutional people on the board, has one donor seat

22  on the board, but it's — it's being sued for twenty something

23  million dollars. And the idea that it has no interest in

24  getting this resolved is not correct. It wants to get it

25  resolved and that's why we're opposing this stay. Thank you,

1   Your Honor.

2          THE COURT:  All right.  A couple of follow-up

3   questions.  I'm struggling a bit with the fact that we have a

4   couple of defendants, two or three defendants that have not even

5   been served yet.  So is it appropriate for this Court to be

6   going forward on a motion to withdraw the reference when I don't

7   know what's going to happen with those two defendants.  Are they

8   going to be served?  If so, what sort of position are they going

9   to have with regard to the reference being withdrawn?

10         And, in any event, ultimately I'm going to have to

11  slice and dice this in a report to the District Court saying,

12  you know, these entities filed proofs of claim and that may

13  affect the authority of the Court, you know, maybe it does.  I

14  mean a part of me thinks what's going on here and should we just

15  wait till they have been served so we have the ability to report

16  to the District Court:  Here is every defendants' position on

17  this.

18         MR. PHILLIPS:  Your Honor, I can't answer the

19  question.  I don't — I mean it seems to me like we have — we

20  have — CLO Holdco was served.  And it is a foreign entity.  We

21  don't know why the other two have not been served.  I'm not — we

22  just don't know.  So I mean does that mean if we — I mean we had

23  to go forward, we had to answer, we had to respond.  We had a

24  deadline to do it.  It didn't matter that two hadn't been

25  served.  And so we — you know, if we hadn't responded, given our

*Adversary 20-3195, Committee's Motion to Stay* 57

1    service, we would have had a default entered against us and a

2    request for a default judgment.  So I don't know the answer to

3    the question because I can't imagine that a plaintiff can file a

4    lawsuit and then the lawsuit was filed months ago and not serve

5    two people and keep the defendants hung up.

6           I don't know if there is a problem of service.  There

7    was one entity that got served that is a foreign entity.  I

8    don't know why the other ones haven't been served.  The Highland

9    Dallas Foundation was served.  The other parties who have

10   appeared were served.  So we have no control over that because

11   we're not serving anybody.  And I would think that the part — I

12   did some looking in the — in the record and it seems to me like

13   we don't have — you know, I can't tell you whether we have —

14   what the arguments would be for the parties who have not been

15   served.

16          I would assume given that everybody has — my two

17   clients have filed what they filed.  CLO Holdco filed a proof of

18   claim, but it was in effect disallowed and converted to a claim

19   for zero.  My other client, Highland Dallas Foundation, has not

20   made any appearance in this case.  So all I can say is we think

21   two — I think the two clients that I'm currently representing,

22   we know they have been served.  We had a deadline to respond.

23   We have responded.  And we think we're entitled to a jury trial

24   and withdrawal of the reference.

25          MS. MONTGOMERY:  Your Honor, if I can answer the

Appx. 05089

1 question. CLO Holdco was served through its counsel, whereas

2 the other two foreign entities require domestication of the

3 subpoena in the Caymans. And it's our understanding that may

4 take as long as — just having heard — as another two months for

5 that process to be complete.

6         THE COURT: All right. My other question I guess is

7 maybe more rhetorical than something you could really answer. I

8 — you know — on the one hand, you know, what Ms. Montgomery is

9 arguing: Our true plaintiff contemplated for this lawsuit isn't

10 in place yet because the plan hadn't gone effective and, you

11 know, some — some of the defendants here or affiliates of

12 defendants are wanting to delay, delay, delay further when the

13 plan can go effective. You know last night a motion for stay

14 pending appeal with the Fifth Circuit was filed. So it's like,

15 no, don't let the plan go forward, let's not get Mr. Kirschner

16 in place. But, oh, don't issue a stay on this lawsuit. It just

17 feels a little bit inconsistent, the two positions. What — do

18 you have anything to say to that?

19         MR. PHILLIPS: I have — all I have to say, all I can

20 say, Your Honor, and that is CLO Holdco, as I understand it, is

21 not an appealing party. My other client that's been served,

22 Highland Dallas Foundation, is not an appealing party. We're a

23 defendant in — in this lawsuit. And so we don't see — we're not

24 in a position to be inconsistent about anything. We're not an

25 appellant. We're not seeking any kind of relief on appeal. And

Appx. 05090

1  we — but we are defendants who have been served and who have

2  filed motions to withdraw reference.  So you will have to ask

3  other people about that.  I'm completely consistent in my

4  position.

5          MR. DRAPER:  Your Honor, this is Douglas Draper on

6  behalf of Dugaboy, who has both —

7          THE COURT:  All right.

8          MR. DRAPER:  — appealed your decision —

9          THE COURT:  Okay.

10          MR. DRAPER:  — and has asked for a stay pending

11  appeal.

12          THE COURT:  Okay.

13          MR. DRAPER:  It's not an inconsistent position because

14  two reasons.  Number one, you gave the committee authority to

15  file this suit.  The committee took that authority and filed the

16  suit within the time period.  So whether the case is going

17  forward or — the stay — the case is stayed and the confirmation

18  order is stayed or not, this action and this entity and this

19  proceeding is going to go forward.

20          And so all we're talking about here, just so we — it's

21  all clear, we're just talking about who is going to try this

22  suit.  We're not talking about a master litigation strategy.

23  We're talking about a location.  And, quite frankly, it would

24  surprise the hell out of me if — if the new person, or whoever,

25  says, look, I want to go to the District Court.

*Adversary 20-3195, Committee's Motion to Stay*                     60

1          This is just a location issue, nothing more.  You can

2    sift through each one of these defendants who have been served

3    as to whether we have a right to a jury trial or not.  And each

4    one, as the Court recognized, is on a — on a defendant-by-

5    defendant basis.  I did file a proof of claim.  Whether I have a

6    right to a jury trial, you're going to have to look at to see if

7    in fact my proof of claim relates to this claim.

8          Mr. — Mr. Phillips is a defendant set of facts.  And

9    these other defendants may be a different set of facts.  So all

10   we're talking about is location.  It is purely procedural.  And

11   I don't think the stay at the district — of the confirmation

12   order or not is — is in any way impacts this whatsoever.  This

13   is a location question.

14         THE COURT:  All right.  Any other opening statements

15   from defendants?

16         All right.  Ms. Montgomery, you may put on your

17   witness.  And I'm fine with the proffer, but we'll then swear

18   him in and see if there cross-examination from the others.  All

19   right, you may proceed.

20         MS. MONTGOMERY:  Yes, Your Honor.  At this point we'd

21   like to proffer Mr. Kirschner's declaration that was submitted

22   in support of our motion for the stay as the content of his

23   proposed testimony.  Mr. Kirschner is obviously here to answer

24   any questions you have or on cross-examination after he's been

25   sworn in.  And, Your Honor, we would just reserve our right to a

1  brief redirect should that prove necessary.

2       THE COURT:  All right.  So I have in front of me the

3  Declaration of Marc S. Kirschner.  It was actually attached to

4  the committee's motion for stay.  It's about four pages long.

5       Let me ask:  Are there lawyers who are going to want

6  to cross-examine Mr. Kirschner?

7       Going once, going twice, no one wishes to

8  cross-examine him?

9       THE REPORTER:  He's on mute.

10       THE COURT:  Oh, Mr. Phillips, —

11       MR. PHILLIPS:  Your Honor, I'm sorry.  I was on mute.

12  I'm on mute, as I probably already muted, but I was on mute and

13  I apologize.

14       Your Honor, this — this is — this declaration, there's

15  no way to cross-examine a declaration that speaks in conclusory

16  language.  The declaration, it was mimicked and mirrors —

17  mirrors exactly as the party looking into the mirror, not as the

18  reverse of the party looking into the mirror, argument by —

19  opening statement by counsel.  I would ask a couple of questions

20  of Mr. Kirschner, please.

21       THE COURT:  All right.  Mr. Kirschner, I need to swear

22  you in.  Would you speak up, say, "testing one, two."

23       MR. KIRSCHNER:  Yes.  Testing one, two.

24       THE COURT:  All right.

25       MR. KIRSCHNER:  Coming through?

*Kirschner - Cross/Phillips* 62

1    THE COURT:  I — I hear you, I don't see —

2    MR. KIRSCHNER:  Okay.

3    THE COURT:  There you are.  Please raise your right

4  hand.

5    MR. KIRSCHNER:  I can.

6   <u>MARC S. KIRSCHNER, COMMITTEE'S WITNESS, SWORN/AFFIRMED</u>

7    THE WITNESS:  I do.

8    THE COURT:  All right.  Thank you.

9    Mr. Phillips, go ahead.

10    MR. PHILLIPS:  Yes, Your Honor.  Thank you.  Just a

11  couple of questions.

12                    <u>CROSS-EXAMINATION</u>

13  BY MR. PHILLIPS:

14  Q.  Mr. Kirschner, in paragraph 7 of your declaration, if you

15  could find it.  Just let me know when you're there.

16  A.  I'm there.  Thank you.

17  Q.  Okay.  Thanks.  You say that it's important for your firm to

18  gain an understanding of the complex transactions described in

19  the adversary proceeding, particularly in connection with the

20  motion to dismiss and motions to withdraw reference and complex

21  issues before the Court.  What does that mean?

22  A.  That means that, as Ms. Paige indicated in her opening

23  statement and as the Court and all the defendants understand, I

24  was — when I was designated as litigation trustee in January,

25  there has been delay after delay after delay in the effective

Appx. 05094

*Kirschner - Cross/Phillips*                                             63

1   date of the plan, and now we're even at the Fifth Circuit, so

2   the trust and my role as subtrustee has not yet gone into

3   effect.  Prior to April 15th, I had no access to the debtor, to

4   the committee, or any of the attorneys, no access through any

5   protected information.  I had no input on the complaint.

6           I became worried as the passage of time went on about

7   the possible running of statute of limitations later on this

8   year in October.  And it was I who suggested to Mr. Clemente to

9   come up with what is an extremely unusual procedure, to permit

10  the committee retain me on an interim basis until the

11  effectiveness of the trust, and then to flip my work effectively

12  into the trust.

13          This is very unusual.  It's not even yet approved by

14  the Court.  Nevertheless, I and my firm have worked very

15  diligently since April 15th to get up to speed on this entire

16  complex factual and legal situation.  I cannot just look at the

17  Holdco adversary in a vacuum.

18          There has been as the Court and all the parties here

19  know much better than I, there has been ongoing litigation on

20  many fronts for quite a long time.  There has been supplied a

21  Byzantine web of some 1400 entities —

22          MR. PHILLIPS:  Your Honor, Your Honor, —

23          THE WITNESS:  — to accomplish —

24          MR. PHILLIPS:  Your Honor, could I interrupt?  He

25  needs to answer the question.

*Kirschner - Cross/Phillips* 64

1  BY MR. PHILLIPS:

2  Q.  What does — what does — what does the understanding about

3  the motion to withdraw reference mean?  What do you need to get

4  up to date on the motion to withdraw reference?

5  A.  I'm responding to your question.

6          THE WITNESS:  If I may, Your Honor, I'm responding to

7  the question.  I'm almost done —

8          MR. PHILLIPS:  Your Honor, a narrative, a preexisting

9  narrative —

10          THE COURT:  Ah, —

11          MR. PHILLIPS:  We just — I just want to know.  We have

12  legal issues.

13          THE COURT:  Okay, I sustain the objection —

14          MR. PHILLIPS:  I want to know what he —

15          THE COURT:  If you could reask the question and we'll

16  see if we can get an answer —

17          MR. PHILLIPS:  All right.  I'll reask the question,

18  Your Honor.  I'm sorry.  I apologize.

19          Your Honor, I'm going to withdraw any questions.  I'm

20  — this is — this is going to turn into just an argument.  His

21  declaration and conclusory and it's just going to be more

22  conclusion.  So I'm — I'm willing to argue from his declaration

23  in closing.

24          THE COURT:  All right.  Any other questions?

25          No other —

*Kirschner - Redirect/Montgomery*                                    65

1          MR. DRAPER:  None, Your Honor, from Dugaboy.

2          THE COURT:  Okay.  Anyone else?

3          Ms. Montgomery, do you have any redirect on that brief

4     cross?

5                        REDIRECT EXAMINATION

6          MS. MONTGOMERY:  Yes.  I think, Your Honor, I would

7     just ask if there is anything else that Mr. Kirschner feels the

8     Court should be aware of before reaching a decision on today's —

9     on today's motion?

10         MR. PHILLIPS:  Your Honor, we object to that question.

11    That's not even a question.

12         THE COURT:  I overrule.  He can answer.

13         THE WITNESS:  Okay.  Thank you very much, Your Honor.

14         As I was saying, there is a Byzantine web here of over

15    1400 entities, many moving intertwined parts.  I have literally

16    and my firm has literally had to triage the monumental amount of

17    work that is necessary to get my hands on this overall

18    situation.  There's allegations that money's been flying all

19    over the world —

20         MR. PHILLIPS:  Your Honor, this is not — this is not

21    appropriate testimony.  This is — that's hearsay.  There's

22    allegations all — money flowing all over the world.  This is —

23    this is a narrative that has nothing to do with the pending

24    motion to withdraw reference and is, in essence, an

25    assassination piece.  This is — what we —

Appx. 05097

*Kirschner - Redirect/Montgomery* 66

1          THE COURT:  I overrule.  He's trying to explain why he

2   needs 90 days at bottom here, so I think it's relevant.

3          MR. PHILLIPS:  Well, the long —

4          THE COURT:  And I understand everything's an

5   allegation subject to evidence.

6          MR. PHILLIPS:  Well, we're talking about

7   allegations, —

8          MR. [SPEAKER]:  Right.

9          MR. PHILLIPS:  — we're talking about — we just heard

10  they're allegations about money flying all over the world.

11  That's not an acceptable testimony.  You know that and everybody

12  on this call knows that.  That's absolute abject hearsay and the

13  idea that you could — you could buttress a motion for stay after

14  you've had 30 days to review a legal analysis about a motion to

15  withdraw reference, because there are allegations of money

16  flowing all over the world is ridiculous.  Your Honor, we — we

17  firmly and in this way object —

18         THE COURT:  Overruled.  I understand you don't like

19  the emotional, if you want to call it, emotional language.  You

20  think it's hyperbole, you think it's hearsay, but he didn't — he

21  didn't offer an out-of-court statement.  He's just saying the

22  allegations — you know, they're in pleadings, they're

23  allegations in many different adversaries, and so I overrule the

24  objection.

25         You can complete your answer, Mr. Kirschner.

**Appx. 05098**

*Kirschner - Redirect/Montgomery* 67

1      THE WITNESS:  Thank you very much, Your Honor.

2      All of these complexities in my view potentially

3  impact on the motions to withdraw.  I recently realized that I

4  cannot properly perform my fiduciary duty to all creditors by

5  the deadline for a response to the motion to withdraw and the

6  motions to dismiss.  I am in fact considering potential

7  amendments to the existing Holdco adversary to possibly other

8  issues that may impact the withdrawal motion.

9      Your Honor said this morning that it's important to

10  take into consideration both procedural and substantive matters.

11  I am worried about potential impacts of whatever I do.  And bear

12  in mind, as Ms. Paige indicated, I am — (brief garbled audio) —

13  no process plan.  All of this was supposed to have been put in

14  the litigation trust under my auspices.  I am now litigation

15  advisor, not yet approved by the Court.  It is the client, I,

16  who direct, after consultation, all strategy by lawyers.

17      I have a long history, as Your Honor has seen from my

18  C.V., of directing complex billions of dollars of litigations.

19  I rely on lawyers, but I am very involved in every aspect of the

20  case.  This is very confusing, not just the CLO Holdco itself

21  but the entire complexity of all of the potential matters here

22  that I need to study in a very short period of time.  I'm

23  concerned that dealing just with this in this couple of days is

24  going to be harmful to creditors ultimately and respectfully

25  request the Court to grant the 90-days adjournment.

1        Maybe I'm being overly cautious and I apologize for

2   that, but I feel strongly about my fiduciary duty and want to do

3   the best I can to understand everything that's going on before

4   we have to respond both to the withdrawal motion and the motion

5   to dismiss.  So thank you, Your Honor.

6        THE COURT:  Thank you.

7        Anything else, Ms. Montgomery, as far as examination?

8        MS. MONTGOMERY:  No, Your Honor.  I have no further

9   questions.

10       THE COURT:  All right.  Mr. Phillips, or anyone else,

11  any recross on that redirect?

12       No?  All right.  Thank you.

13       All right.  This —

14       MR. PHILLIPS:  No, Your Honor.  I muted myself again.

15  No, Your Honor.

16       THE COURT:  Okay.  Is that all of the evidence you're

17  going to present, Ms. Montgomery?

18       MS. MONTGOMERY:  It is, Your Honor.

19       THE COURT:  All right.  Well, I'll turn to our

20  objectors —

21       MR. PHILLIPS:  We —

22       THE COURT:  I'm sorry?

23       MR. PHILLIPS:  We'd like the enter and offer — we'd

24  like to offer and introduce our exhibits that we put on our

25  witness and exhibit list, Your Honor.

1          THE COURT:  Okay.

2          MR. PHILLIPS:  And we've submitted them to the Court,

3  Exhibit 1 through 6, as itemized in our witness and exhibit

4  list.

5          THE COURT:  All right.  This is Docket Number 52 in

6  the adversary, correct?

7          MR. PHILLIPS:  Yes.  Yes, ma'am.

8          THE COURT:  All right.  So let me pull it up here.

9  Okay, we've got the application to employ Teneo and different

10  emails.

11          Any objection, Ms. Montgomery, to this?

12          MS. MONTGOMERY:  I have no objection to Exhibit 1,

13  Your Honor, the application, and obviously it's a pleading that

14  we filed.  I have questions about the relevance of the other

15  exhibits, but I have no objection to their admission.  They're

16  emails that went back and forth between the parties.

17          THE COURT:  All right.  Well, do you want to address

18  that relevance?  I'm not sure if it was an objection or — was it

19  an objection ultimately?  Was it —

20          MR. PHILLIPS:  I didn't hear an objection, Your Honor.

21          THE COURT:  Ms. Montgomery.

22          MS. MONTGOMERY:  Your Honor, for purposes of today's

23  hearing, I have — I have no concerns about their admission for

24  your consideration.

25          THE COURT:  Oh, okay, so —

1          MS. MONTGOMERY:  We're not contesting the history of

2     the back-and-forth between the parties.

3          THE COURT:  Okay.  I will admit 1 through 6.

4          (Defendants' Exhibits 1 through 6 received in evidence.)

5          THE COURT:  All right.  Any — any other evidence from

6     our defendants?

7          MR. PHILLIPS:  No, Your Honor.

8          THE COURT:  All right.  Well, anything in the way of

9     closing argument?  Ms. Montgomery, you are the movant.  You go

10    first.

11         MS. MONTGOMERY:  Yes, Your Honor, just very briefly to

12    address a couple of points.  First of all, I think that there's

13    been some sort of misconstruing of Mr. Kirschner's role as the

14    litigation advisor and ultimately the litigation trustee.  He —

15    functionally, the litigation advisor — we're in a very unique

16    situation here.

17         The parties never expected that the effective date

18    would be delayed in the way that it has been.  We're coming up

19    on the two-year anniversary of the filing of the proceedings.

20    There are a number of claims that need to be investigated and

21    decisions make about how they will be pursued in the next couple

22    of months.  And so this litigation advisor role, as Mr.

23    Kirschner testified, is somewhere unique in that we're trying to

24    work around the constraints that have been created by the way

25    that these proceedings have moved forward.

1    The litigation advisor is really functionally a proxy

2  for the role that Mr. Kirschner will have upon the effective

3  date of the plan as litigation trustee.  He's not acting in the

4  capacity of a law firm or like and FTI or a DSI, or any of the

5  other professionals that have been specifically retained in the

6  bankruptcy to date because the role isn't the same traditional

7  role.  Right, he is functioning in a way that will allow him

8  access that he needs to the data to get up to speed to make the

9  decisions that have to be made so that he can, you know, proceed

10  in the way that is best for meeting his fiduciary duties to the

11  ultimate litigation subtrust.

12    So to the extent that there is any sort of argument

13  that, you know, he — that his role is duplicative or any of the

14  other things that we've heard today or that we've seen in the

15  response, I think that those are just a misunderstanding of what

16  he will actually be doing.  He is going to be the client, Your

17  Honor.  He is not going to be the lawyer.

18    The other thing I think that we talked about a bit is,

19  you know, this argument that Mr. Kirschner has been involved in

20  the case since April 15th and therefore he's had plenty of time

21  to understand everything that he needs to know to be able to

22  move forward.  Technically, Your Honor, I think it goes without

23  saying he's not officially retained until after the return date

24  on the motion to withdraw.  And even so, just based on the years

25  now that we've spent in this case, I can — I can argue to you

1  and I think Your Honor will feel the same way, there's too much

2  learn in that short a time period to be able to say that you are

3  proceeding in the way that is going to be best for the estate in

4  that short timeframe.

5       We're working to get Mr. Kirschner up to speed, the

6  debtor is working to get Mr. Kirschner up to speed, but there is

7  a lot that has happened here and that continues to change on a

8  daily basis, including the stay that was filed just last night.

9       And then, finally, Your Honor, I would argue that

10  there has been no harm established by virtue of the stay. And,

11  in fact, all of the things we've heard today established the

12  fact that there may be harm if the stay is denied. So, for

13  example, Your Honor you know very correctly pointed out that we

14  have two international defendants who haven't even appeared at

15  this proceeding yet, right. We may not effectuate service for

16  another two months. It may be another 60 of these 90 days that

17  we're requesting for a stay may be required just to get them

18  properly served and into this proceeding.

19       And, you know, I agree, Your Honor, that there may be

20  issues that surround those two defendants that, you know, we

21  won't be able to take into consideration until they're properly

22  here in the Court and able to file their own motion to withdraw,

23  if that's what they want, or state their position with regard to

24  it.

25       You know, Your Honor, moreover, there is a lot going

Appx. 05104

*Committee's Motion for Continuance* 73

1  on here and Mr. Kirschner does realistically need time to be

2  able to develop his approach and make decisions about whether or

3  not there will be amendments to the complaint that could impact

4  the motion to withdraw.  He needs to make decisions about other

5  claims that may be brought.  There are a lot of moving parts.

6  It's a unique situation.  And we would urge the Court to allow

7  him the time that he needs to be able to effectuate his duties

8  in the way that he sees fit.

9         THE COURT:  And I know I have it right in front of me,

10 but the employment application for Mr. Kirschner and his firm to

11 potentially be litigation advisor until the plan goes effective,

12 when is that set for hearing?

13        MS. MONTGOMERY:  It's set for June 7th, Your Honor,

14 and the motion to withdraw is currently set for June 3rd.  And

15 that — that motion to retain Mr. Kirschner was only filed on

16 Friday of last week, and our motions that you're hearing today

17 were filed on Tuesday.

18        THE COURT:  Okay.

19        MS. MONTGOMERY:  So it's a very short delay of time

20 between the two.

21        THE COURT:  All right.  I'll hear other closing

22 arguments.

23        MR. PHILLIPS:  Your Honor, thank you.  As far as harm,

24 we have one — we have one client, Highland Dallas Foundation,

25 who has made no appearance in this case, as has very — and

**Appx. 05105**

1  assume they're being sued for $24 million, and that's not a

2  problem.

3        Under the argument structure we're hearing today, we

4  could never really get until a plaintiff has said, 'I have no

5  further ability to amend the complaint,' a hearing on a motion

6  to withdraw reference.  Look, we didn't file the complaint.  The

7  complaint was filed four or five months ago.  And very able

8  counsel looked, and as counsel has argued, has looked at

9  thousands and thousands of documents, have been paid millions

10  and millions of dollars for its work, and it came up with this

11  lawsuit that was filed — I've forgotten the filing date, but it

12  was filed at least four and a half months ago, January of this

13  year I believe.  Ms. Montgomery — counsel for plaintiff can say

14  the exact date.

15        But we've got two defendants who haven't been served,

16  but I've got one — I've got two that have been served.  And we

17  have established a basis upon which we can get — we have a right

18  to a jury trial and a right to withdrawal of the reference.  And

19  that motion has been filed.  And the idea that I'm going to

20  bring — I'm going to change clients — and it's really

21  complicated.  After we've done millions and millions and

22  millions of dollars worth of work, looked at thousands and

23  thousands and thousands of documents, that we may come in and do

24  a different lawsuit that pleads around a motion to withdraw

25  reference is no basis for a stay.

1    That — that — the narrative about, you know, the

2  hearsay, the narrative about the aspersions, the this and the

3  that, this is really complicated, this is really hard, well, we

4  have a lawsuit in front of you, Your Honor, and it's been

5  pending for months.  And it was filed by the committee that had

6  authority to file it and it was filed by the law firm for the

7  committee that had authority to represent the client who filed

8  it.  And that's what they came up with after months and months

9  and months of years of looking at stuff and looking at documents

10  and deciding what to bring as far as claims of this nature

11  against these defendants.  I'm worried about two of them.

12    I'm worried about — particularly worried with respect

13  to the stay, I'm worried about both of them for — with respect

14  to the stay, but one of my clients, Highland Dallas Foundation,

15  has had no involvement in this bankruptcy case.  And now let's

16  just wait around.  It's got a $24 million cloud hanging over its

17  head and it's expected to continue to try to raise money and try

18  to act as a charity while — while Mr. Kirschner gets familiar —

19  refamiliarized and gets familiar with the situation where

20  counsel and the committee have been working for, what, a year

21  and a half, two years, to get ready, and here's what the lawsuit

22  — here's the lawsuit they came up with.

23    So no harm has been alleged.  In fact, harm will be —

24  all you heard about the potential harm to the estate is that

25  notwithstanding millions and tens of millions of dollars of fees

Appx. 05107

1  paid to professionals to determine litigation claims and we have

2  barely, what, two months left to bring them?  That's 22 months

3  worth of looking into things, millions and millions of fees.

4  The estate might be irretrievably harmed if a motion to withdraw

5  reference moves forward, when the committee and counsel were

6  responsible and filed this complaint, and they were responsible

7  to file the complaint under the transaction and occurrences,

8  standards such that whatever they haven't pled, whatever they

9  haven't pled by the time to plead is gone.  And the idea that we

10  need another 22 months for Mr. Kirschner to get up to speed or

11  some other to come up with additional litigation and additional

12  amendments to postpone a withdrawal of reference means that you

13  can never get a hearing on a withdrawal of reference.

14          We think the pleadings are there.  They have been —

15  they have been investigated, we assume.  They're subject to

16  motions to dismiss, which are legal questions.  They're subject

17  to motions to withdraw reference, which are legal questions.

18  And we're ready for a decision on what court's going to handle

19  this.  And by the time that's done, Mr. Kirschner will have

20  whatever rights he has, as if he has any.  The plan will either

21  be confirmed and effective or it won't be, but that's not our

22  problem.  Thank you.

23          THE COURT:  Any other closing arguments?

24          Going once, going twice.

25          MR. ASSINK:  Your Honor, I apologize.  Just for the

1  record, this is Bryan Assink for Mr. Dondero. And Mr. Dondero

2  joins in the objections made by defendants in this proceeding

3  and adopts the arguments made by Mr. Phillips. That is all,

4  Your Honor. Thank you.

5      MR. DRAPER: Your Honor, can the Court hear me?

6      THE COURT: Yes.

7      MR. DRAPER: This is Douglas — okay. What I'd like to

8  make, a short comment. The argument that there are unserved

9  parties is a red herring and it's a red herring for the

10  following reason. The Court has to go through each defendant to

11  determine if they have a right to — a right to withdraw a

12  reference. The facts with respect to Mr. Phillips' clients are

13  different than the facts with respect to my clients. So the two

14  unserved parties may have a right to do it, they may not, but it

15  doesn't affect your ruling with respect to Mr. Phillips' clients

16  or mine because we have either waived or didn't waive our right

17  to a jury trial. And so this argument that there's two other

18  parties out there, again, is a red herring. They have their own

19  right and it will not affect Mr. Phillips' right or mine. So I

20  think that needs to be taken into account.

21      And, again, all we're talking about is location. The

22  — if they want to amend their suit at a later point, that's

23  fine, but we are just talking about who's going to hear the

24  case. And, quite frankly, Mr. Phillips is right, I don't think

25  the Court can in a very short period of time unpack these

*The Ruling of the Court on the Motion to Continue* 78

1  withdrawal issues.  And so you may be looking at a

2  recommendation that you make that takes 30 or 60 days.  We don't

3  know what the District Court's going to do with it.  And, quite

4  frankly, you know we may be 90 or 120 days down the road before

5  the location is even determined.

6         That's all I have to say, Your Honor.

7         THE COURT:  All right.  Anyone else?

8         <u>THE RULING OF THE COURT</u>

9         THE COURT:  All right.  I'll just be honest, I've

10  tried hard to understand where everyone is coming from here, but

11  this has been yet another hearing where I just frankly don't

12  understand why the big fight, why all the papers, and why all

13  the Court time used.

14         I mean I think I hear everyone agreeing that the

15  plaintiff is essentially going to get its/his 90-day stay here.

16  I mean if I were to go forward on the motions, plural, motions

17  to withdraw the reference, let's be real, it's going to take:

18  This Court two or three or four weeks to get a report and

19  recommendation to the District Court, given the complexity here

20  of the parties and, you know, we try to do a very clear roadmap

21  for the District Court, what's this lawsuit about, who are the

22  parties; and then it's going to take a few weeks for the

23  District Court to rule on that.  So I mean optimistically, the

24  most optimistic thing I can imagine is 60 days from now you have

25  an order from the District Court saying where the lawsuit's

1  going to go forward.

2          I mean so we're fighting, to me, over a big nothing

3  burger.  I think the stay is, in effect, going to happen.  So

4  all we're talking about here is pushing a plaintiff to go

5  forward, who at this point is working for free because the plan

6  hadn't gone effective and he hadn't been appointed.  I mean it

7  seems like from my perspective the defendants — again I'm trying

8  to understand the practicalities here, but I'm going to be

9  honest, it almost feels like defendants tweaking with the future

10  litigation trustee, 'We're going to make you go forward and work

11  for free when at the end of the day you're probably going to get

12  a stay anyway,' because there's no way a district judge is going

13  to rule on this in much sooner than 90 days.  It's like you're

14  just forcing him to work for free and move fast on the motion to

15  withdraw the reference.

16          And it is a red herring?  I don't know, maybe.  I

17  think likely this is ultimately going to be tried in the

18  District Court since certain parties haven't filed proofs of

19  claim.  But if the District Court does what it always does, in

20  my experience, I've never had, I can't remember ever having a

21  district court say, 'I'm withdrawing the whole darn thing.'

22  They almost always use the — they almost always use the

23  bankruptcy judges as their magistrates in a case when they

24  withdraw the reference.

25          Bankruptcy judge, handle all the pretrial stuff, the

1  discovery disputes, the motions to dismiss, motions for summary

2  judgment. If you were on a motion to dismiss or a motion for

3  summary judgment in a way that would finally dispose of any

4  claims, well, you have to do that in a report and recommendation

5  to me. So I feel like we all know that's likely where this is

6  heading, so I don't know why we had to have an hour fight.

7       I don't know why it's any big shakes to just stay the

8  whole darn thing for 90 days, especially when we have the whole

9  reason the plaintiff, liquidating trustee is not in place yet,

10  because of a stay, that some of these defendants or their

11  affiliates have wanted. It just seems silly to me.

12       And I do want to address one other thing. There has

13  been an argument that Sidley and Austin and the committee have

14  had months to get up to speed on the issues in the lawsuit, they

15  had months to bring it. It's been pending months. But I'll say

16  something for the benefit of those who have not been around for

17  this whole case, in July of last year, July 2020, which by that

18  point was about 10 months into the case, it was front and center

19  to this Court the difficulty the committee was having getting

20  discovery. They had served four requests for production, going

21  back to before this case was even pending before me. When the

22  case was in Delaware, they were already filing, serving requests

23  for production of documents, wanting to get a protocol in place

24  for ESI, and then finally it all kind of came to a head in July.

25       And I remember saying, 'I'm sure there's a transcript

1   out there you can access.' Gee, I may not have pressed the

2   issue so much on this lawsuit being filed involving CLO Holdco.

3   I may not have pressed the committee's feet to the fire so much

4   on getting that filed if I had been fully aware at all of these

5   efforts going on outside of the Court to get documents, to get

6   documents, four requests for production, and then finally the

7   protocol order, if you will, that the committee filed, asking

8   this Court to put in place some protocol to get ESI from like

9   nine different custodians of debtor records. So my point is

10   those who have not lived with this case for the whole time, they

11   don't know that I kind of live to regret pressing the committee

12   to get this lawsuit on file. You know I was worried because of

13   Holdco. I had like ordered money to be put in the registry of

14   the Court before I had, you know, litigation pending. So that's

15   why I put pressure. But then I learned and had a multi-hour

16   hearing on what the committee had gone through trying to get

17   documentation. So that's very much in the back of my mind here

18   in my ruling.

19        And my ruling is going to be that I grant the 90-day

20   continuance. Again, I hope that in 90 days, we — I don't know

21   if we'll know something from the Fifth Circuit on the plan or

22   not, but at least we'll be closer to that point. And, again,

23   we're looming, you know October 16th, 2021 as a deadline for

24   bringing claims, and I think that's relevant here. There's a

25   lot to be focused on that may or may not impact the way this

1 lawsuit ultimately is mapped out. I think the fact that we have

2 two unserved defendants, I think it does matter.

3          I think a district court may be a little hesitant,

4 really want to see the complete picture on each defendants'

5 position before it rules. So the 90-day stay is granted.

6          All right. So please upload the order, Ms.

7 Montgomery.

8          Thank you, all, for your arguments.

9          Before we wrap it up, Mr. Clubok, if you're still with

10 us, I think you were hoping to raise something that might

11 pertain to tomorrow's hearing on the UBS debtor compromise. If

12 you're still there, you may speak to whatever it was you wanted

13 to present.

14          MR. CLUBOK: Good morning, Your Honor. Still — still

15 the morning. Hopefully you can hear me.

16          THE COURT: I can.

17          MR. CLUBOK: Your Honor, I'm really just previewing an

18 issue. In light of the comment that you made earlier today

19 about having this motion, discovery, and then folks not

20 previewing it, I just wanted to alert you to the fact that in

21 our adversary proceeding we have sought discovery against five

22 third parties, Scott Ellington, Isaac Ellington, three other

23 folks, all of whom are represented by Ms. Smith, who is here,

24 you can see. And we first sought —

25          MS. SMITH: This is Frances Smith. Your Honor,

*The Ruling of the Court on the Motion to Continue*                    83

1  Frances Smith on behalf of Mr. Ellington, J.P. Sevilla, Mr.

2  Isaac Leventon, Matt VRO, and Mary Catherine Lucas (phonetics).

3            I just received an email earlier this morning from Mr.

4  Clubok that he was going to do this preview for you.  To the

5  extent he gets into the substance of any motions that are not

6  filed, that's inappropriate.  And so —

7            THE COURT:  Okay.

8            MS. SMITH:  — if he wants to take Your Honor offer of

9  a preview to say what he is going to file, I'm fine with that.

10 But if he's going to start going into the substance, that is not

11 appropriate.

12           THE COURT:  Okay.  We'll let Mr. Clubok get a little

13 further into what he was going to say, and then we'll decide do

14 we need to cut it off.

15           Mr. Clubok, go ahead.

16           MR. CLUBOK:  Thank you, Your Honor.  I was about to

17 say that there were five — there's the five individuals that Ms.

18 Smith represents, we sought discovery from in April 2nd, and,

19 namely, depositions.  After a long period of time culminating in

20 a meet-and-confer last week, Ms. Smith filed a motion to quash

21 on behalf of these five individuals on Monday and set a hearing

22 date for July 29th.

23           All I'm — all I'm previewing, Your Honor, is to alert

24 you that in response to that motion to quash, a hearing date set

25 for July 29th, so effectively will end up being, you know,

1   months and months of delay to these individuals who are needed

2   to move this conjunctive-relief proceeding forward, we are

3   filing our response today to Ms. Smith's motion and a

4   countermotion to compel.  And I'm merely flagging this issue for

5   Your Honor because we are going to ask either Your Honor or Ms.

6   Ellison, we're going to style our motion as an expedited

7   request, we would just simply love to have a hearing as early as

8   reasonably practicable on these issues.  And I have no intention

9   of getting into the merits now, but happy to do so.  I think it

10  will all be familiar to you from their discussions in the

11  Dondero deposition dispute, but we just — or simply I'm just

12  flagging for you, because you raised it this morning, you know,

13  why didn't people tell me, so we just are going to ask the

14  hearing, the soonest-possible hearing, and I don't think it has

15  to be a very long hearing, on whether or not we get third-party

16  discovery, depositions of Mr. Ellington, Mr. Leventon, and the

17  other three individuals that Ms. Smith represents; subject to

18  one of them is on maternity leave, and we're going to be

19  pursuing discovery of that while she's in that state, but —

20          THE COURT:  All right.

21          MR. CLUBOK:  — but other than that we just ask that a

22  hearing to be scheduled.  And I'm just alerting you that we're

23  going to be making that request.

24          THE COURT:  Okay.  Well, I have been forewarned.  I

25  have been forewarned.  And I'll wait to see the motion for

*The Ruling of the Court on the Motion to Continue* 85

1  expedited hearing and decide if I think it's appropriate to give

2  an expedited hearing, okay?  I'll look at the pleadings and

3  likely just rule on the pleadings on the timing, okay?

4  　　　　　Thank you.

5  　　　　　MR. CLUBOK:  Your Honor, —

6  　　　　　MS. SMITH:  Your Honor, since we're previewing, we

7  will be filing a response to that as well.

8  　　　　　THE COURT:  All right.

9  　　　　　MS. SMITH:  Thank you, Your Honor.

10  　　　　　COURT SECURITY OFFICER:  All rise.

11  　　　　(The hearing was adjourned at 11:45 o'clock a.m.)

12  　　　　　　　　　　　　—o0o—

13

14

15

16

17

18

19

20

21

22

23

24

25

```
State of California        )
                           )    SS.
County of San Joaquin      )
```

I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of Texas, Office of the Clerk, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am not a party to nor in any way interested in the outcome of this matter.

I am a Certified Electronic Reporter and Transcriber by the American Association of Electronic Reporters and Transcribers, Certificate Nos. CER-124 and CET-124. Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.

Susan Palmer
Palmer Reporting Services

Dated May 22, 2021