# EXHIBIT 17

```
 1                  IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF TEXAS
 2                           DALLAS DIVISION

 3                                   )    Case No. 19-34054-sgj-11
     In Re:                          )    Chapter 11
 4                                   )
     HIGHLAND CAPITAL                 )    Dallas, Texas
 5   MANAGEMENT, L.P.,                )    Monday, May 10, 2021
                                     )    1:30 p.m. Docket
 6            Debtor.                 )
     _____)
 7                                   )
     HIGHLAND CAPITAL                 )    Adversary Proceeding 20-3190-sgj
 8   MANAGEMENT, L.P.,                )
                                     )
 9            Plaintiff,              )    - TRIAL DOCKET CALL
                                     )    - DEFENDANT'S EMERGENCY MOTION
10   v.                              )      TO STAY PROCEEDINGS PENDING
                                     )      RESOLUTION OF DEFENDANT'S
11   JAMES D. DONDERO,               )      PETITION FOR WRIT OF
                                     )      MANDAMUS [154]
12            Defendant.             )
     _____)

13                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
14                 UNITED STATES BANKRUPTCY JUDGE.

15   WEBEX APPEARANCES:

16   For the Plaintiff:         John A. Morris
                                PACHULSKI STANG ZIEHL & JONES, LLP
17                              780 Third Avenue, 34th Floor
                                New York, NY  10017-2024
18                              (212) 561-7700

19   For the Plaintiff:         Jeffrey Nathan Pomerantz
                                PACHULSKI STANG ZIEHL & JONES, LLP
20                              10100 Santa Monica Blvd.,
                                  13th Floor
21                              Los Angeles, CA  90067-4003
                                (310) 277-6910

22

23

24

25
```

2

```
 1    APPEARANCES, cont'd.:

 2    For the Defendant:         John T. Wilson
                                 Clay M. Taylor
 3                               BONDS ELLIS EPPICH SCHAFER
                                   JONES, LLP
 4                               420 Throckmorton Street,
                                   Suite 1000
 5                               Fort Worth, TX  76102
                                 (817) 405-6900
 6
      Recorded by:              Michael F. Edmond, Sr.
 7                               UNITED STATES BANKRUPTCY COURT
                                 1100 Commerce Street, 12th Floor
 8                               Dallas, TX  75242
                                 (214) 753-2062
 9
      Transcribed by:           Kathy Rehling
10                               311 Paradise Cove
                                 Shady Shores, TX  76208
11                               (972) 786-3063

12

13

14

15

16

17

18

19

20

21

22

23

24
              Proceedings recorded by electronic sound recording;
25               transcript produced by transcription service.
```

3

1           DALLAS, TEXAS - MAY 10, 2021 - 1:40 P.M.

2           THE COURT:  All right.  The other matter we have set

3   on this docket is Highland Capital Management, LP versus

4   Dondero, Adversary 20-3190.  We had docket call, trial docket

5   call set, as well as Defendant's emergency motion to stay the

6   proceedings.  So I'll ask, first for Plaintiff Highland, who

7   do we have appearing today?

8           MR. MORRIS:  Good afternoon, Your Honor.  It's John

9   Morris from Pachulski Stang Ziehl & Jones on behalf of the

10  Debtor.

11          THE COURT:  All right.  And for Mr. Dondero, who do

12  we have appearing today?

13          MR. WILSON:  John Wilson and Clay Taylor.

14          THE COURT:  All right.  And I assume we have Mr.

15  Dondero out there listening in?

16          MR. TAYLOR:  Yes, Your Honor.  He's next to me.

17          THE COURT:  Okay.  Thank you.  All right.  Thank you.

18  Well, we'll start with the motion to stay proceedings.  Mr.

19  Taylor, will you be making that argument, or Mr. Wilson?

20          MR. WILSON:  I will, Your Honor.

21          THE COURT:  Okay.  You may proceed.

22          MR. WILSON:  Well, Your Honor, this motion to stay

23  is, as you've seen in our papers, it's largely based on the

24  pending proceeding at the Fifth Circuit on a writ of mandamus.

25  And as you are probably aware, that motion or that writ was

4

1  filed on the 8th of March.  The -- late in the evening,

2  actually.  The next morning, shortly after business hours

3  opened, the Fifth Circuit requested a response from the Debtor

4  by March 16th.  The Debtor timely filed that response, and we

5  are awaiting a ruling from the Court.

6      And due to all of the overlapping issues between the

7  preliminary injunction and the permanent injunction that's

8  sought by the Debtor, we thought it would be appropriate to

9  stay the trial on the permanent injunction for reasons of, you

10 know, potential inconsistent rulings or, you know, judicial

11 economy.  It only seems to make sense to, you know, give the

12 Fifth Circuit a little bit longer to consider these issues and

13 see what they're planning to do.

14     And I've got the -- Your Honor, my brief covers the

15 factors that the -- for a stay pending appeal.  Some courts

16 say that you have to apply those factors in this situation.

17 Other courts say that the Court -- the Fifth Circuit's

18 mandamus jurisdiction, there's inherent power to stay.  But in

19 any event, you know, we think that that factors are met here.

20     The four factors would be the showing of a likelihood of

21 success on the merits, and the courts, you know, are uniform

22 in saying that that doesn't mean the showing of a probability

23 of a success, just a likelihood.

24     I think the fact that the Fifth Circuit could have easily

25 denied this without an opinion quickly but instead has

5

1  requested a response and is now -- I think tomorrow will be

2  eight weeks since it's had full briefing in front of it -- you

3  know, we believe that we meet that test because obviously the

4  Fifth Circuit is considering the merits of this.

5       And this is, of course, a serious legal question, because

6  it's the entire issue in this case, is the appropriateness of

7  the injunctive relief that the Debtor seeks.

8       Of course, the second issue, irreparable injury, I think

9  anytime that you're dealing with an injunction, whether, you

10  know, you grant an injunction or are seeking to overturn one

11  or whatever, I mean, irreparable injury to one or the other

12  parties is always at issue.

13       You know, I think that we've raised some serious concerns

14  about Mr. Dondero's constitutional rights and his First

15  Amendment rights specifically.  You know, and being under a --

16  being under an order, a permanent order, is, of course -- you

17  know, exacerbates the seriousness of those matters.

18       Substantial harm to the debtor.  We believe there is none

19  to pushing this proceeding back.  As has been stated, there is

20  a preliminary injunction in place that runs until the

21  effective date of the plan.  That was the way the Debtor chose

22  to seek that relief.  And we think that, you know, the

23  Debtor's rights, if, you know, if they are potentially going

24  to be infringed on, are protected by the preliminary

25  injunction and the plan injunction itself.

6

1          And then finally, Your Honor, you know, this would stay --

2     granting of a stay would serve the public interest due to just

3     consistency and judicial economy.  You know, it's going to be

4     a lengthy trial with multiple witnesses.  You know, those

5     witnesses have to give up time out of their schedule to attend

6     the trial.  You know, there's going to be a lot of attorney

7     time involved.  And, of course, the Court's time.

8          So we just think that a, you know, a brief, appropriate

9     stay or continuance to allow the Fifth Circuit to issue a

10    ruling on this matter would be appropriate.

11              THE COURT:  All right.  Well, I have several

12    questions for both sides.

13         My first question is this.  You've -- with your last

14    comment, you know, we think there's going to be a lengthy

15    trial and whatnot, it's really a judicial efficiency and

16    judicial economy, economy of the parties argument, right?  I

17    mean, that's really what I'm hearing.  Right?

18              MR. WILSON:  Yes, Your Honor.  I mean, that's

19    certainly -- that's certainly a big part of this.  And, you

20    know, we're respectful of the Court's time and, you know, we

21    appreciate that the witnesses would have to give their time as

22    well.  So, --

23              THE COURT:  Okay.  Well, here is a question I have.

24    I'm trying to think through the ifs -- if we do go forward, if

25    we don't go forward -- and here's how I come out on this one.

7

1  If we do go forward, doesn't that lead to judicial efficiency?

2  And here's why I ask.  Because then you've got a permanent

3  order.  A final order, I should say.  There is either a

4  permanent injunction or no injunction.  It's final.  Somebody

5  can appeal it without the procedural problems of, oh, it's

6  only interlocutory, need motion for leave.  And, in fact, if I

7  rule, the Fifth Circuit petition for mandamus becomes moot,

8  right?  Because now --

9          MR. WILSON:  Well, I don't know --

10         THE COURT:  -- forget about that preliminary

11 injunction, good, bad, or indifferent.  Now we have a final

12 order that someone can appeal without needing leave.  And so

13 what -- you know, my brain gravitates towards efficiency:  If

14 I just rule on a final basis in this adversary, then people

15 can go on about their way and appeal the final ruling,

16 whatever it is.

17         MR. WILSON:  Well, Your Honor, it's hard to know if

18 the Fifth Circuit's consideration of the former injunction

19 would be moot without -- without knowing, you know, how

20 they're going to rule.  You know, they could -- you know, as I

21 said, the underlying issues in the preliminary injunction and

22 the permanent are, you know, largely if not wholly

23 overlapping.  And you know, I just can't -- I can't speak for

24 the Fifth Circuit what, you know, what they're intending to do

25 with this thing and how they're intending to rule.  And, you

8

1   know, I think that their -- you know, they do have

2   jurisdiction over this and they can protect their

3   jurisdiction.

4       So, you know, I just can't really -- I can't really agree

5   that a trial on the permanent injunction would moot the

6   preliminary in this case, given the issues that are on

7   mandamus at this point.

8           THE COURT: Well, I'm going to ask you to be more

9   specific on that, because I'm not -- I'm not on the same page

10  at all. I mean, two ways I can rule. I can say, grant a

11  permanent injunction. Okay? And so then you have a final

12  ruling of this Court that, if you appeal, the District Court

13  has to hear it because it's final. And then if you appeal

14  beyond that, the Fifth Circuit has to hear it because it's

15  final.

16      On your -- meanwhile, on your petition for writ of

17  mandamus, what you have asked is: Fifth Circuit, make the

18  District Court hear our appeal of an interlocutory order.

19  Okay? They didn't grant leave. It was interlocutory and they

20  wouldn't grant leave to hear the appeal. Well, at that point,

21  the preliminary injunction that you wanted the District Court

22  to review on appeal has been replaced by a permanent

23  injunction.

24      So, what am I missing? There's nothing --

25          MR. WILSON: Well, I --

9

1          THE COURT:  At that point, it's moot.  Isn't that

2     classic mootness?

3          MR. WILSON:  Well, that's the second part of the

4     relief that we asked for that you just described, Your Honor,

5     at the Fifth Circuit.

6        So, the primary focus of the mandamus was on an order

7     dissolving the preliminary injunction on the issues that are

8     -- you know, were raised in this brief.  And they -- the

9     issues that we've raised in this Court before, but -- the

10    overbreadth and the constitutional concerns and vagueness and

11    those types of things.  And to the extent that the exact same

12    relief is sought in the permanent injunction, while the Fifth

13    Circuit is, you know, considering -- you know, I can't speak

14    for them because they haven't -- they haven't spoken yet, but

15    to the extent that they are considering that aspect of the

16    mandamus, and that's the primary relief we sought, then that's

17    where I have a problem saying that the -- that the preliminary

18    injunction would become moot or the issues related to the

19    preliminary injunction would become moot when a final

20    injunction is issued.

21       And then I would, if Your Honor was to say that, you know,

22    no final injunction will issue and Your Honor was to say that

23    the preliminary injunction is over and ended, then I would

24    agree that the issues would be mooted.  But that's only one

25    scenario that would result from this -- that could result from

10

 1  this trial.

 2          THE COURT:  Okay.  So it will be moot if I deny the

 3  permanent injunction, but it might be useful to wait, you're

 4  saying, because the Fifth Circuit may say, you know,

 5  Subsection (d) of the preliminary injunction -- you know,

 6  2(d), let's say, hypothetically; I'm just plucking one out of

 7  the year -- that went too far.  We're ordering in mandamus

 8  fashion for you to vacate that order as to, you know, whatever

 9  provisions they may say went too far.  And then we would have

10  a hearing on the permanent injunction, and you would say,

11  well, that could be guidance to the Court.  You know you can't

12  do this.  They've already said that goes too far.  Is that

13  what you're saying?

14          MR. WILSON:  So, I think that's -- you know, that's

15  certainly part of it, Your Honor.

16          THE COURT:  All right.  My next question is I assume

17  you've told me everything you know as far as what you've heard

18  from the Fifth Circuit?  You know, the petition for writ of

19  mandamus was filed March 8th.  You said the next day they

20  asked Debtor to respond by March 16th.  The Debtor responded.

21  And it's just been silence since then?

22          MR. WILSON:  That is -- that is correct, Your Honor.

23  I mean, we -- we've actually called the Clerk's Office and,

24  you know, just made a generic inquiry as to the matter in

25  connection with filing this writ -- or, I'm sorry, this motion

11

1   for stay.  But we -- you know, of course, there was no -- you

2   know, no response other than the Court is still considering

3   it.

4               THE COURT:  Okay.  So your view is I ought to stay

5   this until the sooner of the Fifth Circuit ruling one way or

6   another or 60 days?  You're saying at 60 days, well, --

7               MR. WILSON:  Well, that --

8               THE COURT:  -- holy cow, who knows how they're going

9   to rule, so we'll just go forward?

10              MR. WILSON:  I think that was just -- well, yeah, and

11  I don't -- I don't know if there's any -- anything behind that

12  60 days.  I think that was just -- just an example of what,

13  you know, the Court could do that we gave in our brief.

14      But, you know, I think that -- I think that probably the

15  most appropriate way to handle it would be to say that it's

16  going to be set, you know, for docket call, you know, say, 30

17  days after the Fifth Circuit's ruling, you know, if

18  appropriate.  Something like that.  But, you know, I -- 60

19  days wasn't like a magic number.

20              THE COURT:  My next question is, what would a trial

21  look like if we do go forward next week or whenever?  You said

22  it would be a "lengthy" trial.  The pretrial order says, "no

23  more than two days."  I'm just trying to figure out why it

24  would be a lengthy trial.

25              MR. WILSON:  Oh, I mean, I -- I agree that probably

12

1   two days is in the realm of where it will be. I thought that

2   the joint order actually said two and a half days. But I kind

3   of considered -- kind of, you know, estimated that between the

4   witnesses that we wanted to call and then the Debtor's

5   witnesses and then the cross-examinations and all that, that

6   we would have about two days of testimony, and then -- and

7   then argument after that.

8           THE COURT: Okay. Well, --

9           MR. WILSON: And so when I say lengthy, I mean, I was

10   -- I was considering that to be lengthy.

11           THE COURT: Okay. Well, this is maybe more of a

12   question for Mr. Morris, but maybe you have an answer as well.

13   I am wondering what a potential permanent injunction would

14   even look like at this point. Again, this is probably more of

15   a Mr. Morris question, but I'll ask you.

16     I presume the shared services agreements are terminated at

17   this point, so, looking at the preliminary injunction, Columns

18   2C and 2D I'm guessing might go out the window. You know,

19   maybe, maybe not. But, again, I'm -- maybe this ties in to

20   why such a lengthy trial. I'm guessing that the Debtor is

21   probably going to have a skinnied-down request at this point,

22   but maybe not. What -- have you talked to Debtor's counsel

23   about that? Do you have a response to that?

24           MR. WILSON: The Debtor is not telling us any

25   different than what they've put in their papers at this point,

13

1   Your Honor.

2          THE COURT:  Okay.  Well, thank you.  I will turn to

3   Mr. Morris now.  Mr. Morris?

4          MR. MORRIS:  Good afternoon, Your Honor.  John

5   Morris; Pachulski Stang Ziehl & Jones.

6      Let me just start by pointing out several things that Mr.

7   Wilson overlooked in terms of what's been told to the Fifth

8   Circuit.

9      At Page 5 of their petition, which was filed on March 9th,

10  two months ago, the Fifth Circuit was told, "The trial

11  concerning the Debtor's request for a preliminary injunction

12  is currently set for the week of May 17th, 2021."  So the

13  Fifth Circuit knows exactly when this trial is being

14  conducted.

15     Indeed, the Fifth Circuit was told by Mr. Dondero and the

16  Bonds Ellis law firm on March 9th that the Court was going to

17  hold a contempt hearing on March 22nd, and the Fifth Circuit

18  took no action to intervene to stop that.  I think that is a

19  much better indicator of their lack of interest in this

20  petition for writ of mandamus.  It's been sitting there for

21  two months.  They didn't act, despite having knowledge of the

22  contempt motion and the hearing that was going to be held.

23  They know exactly when this hearing is going to happen next

24  week.

25     And you know why they know that?  It's been -- they've

14

1   been told that again, because Mr. Wilson didn't tell you that

2   he also filed a motion in the Fifth Circuit for a stay of

3   these proceedings.  We responded to that this morning, Your

4   Honor, but I don't understand how you can ask him the question

5   of what the Fifth Circuit knows and Mr. Wilson forget to tell

6   you that he has made the exact same motion in the Fifth

7   Circuit.

8       Now let's talk about what their petition for writ of

9   mandamus really is.  There is two parts.  Your Honor focused

10  on one part, and that is they're trying to get the Fifth

11  Circuit to order the District Court to exercise its discretion

12  to hear an interlocutory appeal.  I ask you, Your Honor:  What

13  is the likelihood of success on that?

14      The second thing they're asking the Court to do, the Fifth

15  Circuit Court of Appeals, they're asking the Fifth Circuit to

16  simply throw out the preliminary injunction.  We argued very

17  strongly in our opposition to the petition that the Fifth

18  Circuit doesn't even have jurisdiction to do that.  Yet in

19  their plea for a stay, a last-minute stay of this permanent

20  injunction proceeding, Mr. Dondero doesn't refute that

21  argument at all.

22      In fact, he doesn't address it.  He proffers no facts in

23  support of his position.  He gives no argument as to why the

24  Fifth Circuit is likely to direct the District Court to

25  exercise its discretion to hear an interlocutory appeal.  They

15

1   make no argument at all.  There's no factual, legal, or

2   equitable basis upon which this Court can find that Mr.

3   Dondero is likely to succeed on the merits.

4       The second prong, the harm.  You know exactly what the

5   harm is going to be to the Debtors here, Your Honor.  They

6   asked for 60 days.  What happens if the Fifth Circuit hasn't

7   responded in 50 days?  Are you going to conduct the trial

8   then?  Why would you do that?  You would have to wait longer.

9       What if the Fifth Circuit actually rules and they direct

10  the District Court to exercise its direction [sic] to hear the

11  interlocutory appeal, and the District Court hears it and

12  overrules the appeal?  Then what?  They're going to say we

13  have to wait further so that they can appeal the District

14  Court's rejection of the interlocutory order to the Fifth

15  Circuit.  We will be here for years, and that is exactly what

16  the game is.

17      Your Honor had it exactly right.  It was in our brief,

18  it's never been rebutted by the Bonds Ellis law firm, that if

19  we simply have a trial next week and the Court -- if the Court

20  rules in Mr. Dondero's favor, everything's gone.  If the Court

21  issues the permanent injunction, he will have a final order.

22  There will be no waste of time, no waste of money, no waste of

23  effort dealing with judicial discretion, dealing with issues

24  of interlocutory orders.  He will have a final order.  And

25  what we have asked for is set forth very clearly in our

16

1   proposed findings of fact and conclusions of law.  The order

2   that we're asking for is set forth in Paragraphs 11, 12, and

3   13, and they largely mirror what's in the preliminary

4   injunction.

5       One tweak is exactly what Your Honor picked up on, and

6   that is there's no longer any shared services agreements so

7   there's no longer any exception for talking to the Debtor's

8   employees about shared services because there are no such

9   things anymore.  So we took that out.  Okay?

10      So, likelihood of success on the merits, I've addressed.

11      Irreparable injury.  You know, the Debtor is going to be

12  forced into a quagmire of Mr. Dondero's own making, and it

13  should not be required to do that.  Mr. Dondero, ironically,

14  if he was really here for justice, if he was really here for

15  justice, he would want the quickest possible trial he could

16  get in order to vindicate himself, or, if there's an adverse

17  judgment, to get that judgment reversed as soon as possible.

18  And the best way to do that is to have a speedy trial.

19      If he was honest, if their motives were pure, they would

20  be asking you for the quickest trial possible.  And that, Your

21  Honor, would be consistent with the public interest.  The

22  public interest is served by the speedy administration of

23  justice, and that's what we're looking for here.  Consistent

24  with ample Fifth Circuit precedent, trial courts are permitted

25  to proceed with trials on permanent injunctive relief,

17

1  notwithstanding a pending appeal of an interlocutory order on

2  a preliminary injunction.  We've cited a legion of cases.

3  Silence from the Bonds Ellis law firm.  Silence.  For good

4  reason.   There is nothing to say about it.  That is the law.

5  And we urge the Court to deny the motion.

6      Thank you, Your Honor.

7          THE COURT:  All right.  Mr. Morris, so just to

8  clarify, I do have up on the screen your proposed findings and

9  conclusions, but it might be a little easier for me to just

10 focus on the preliminary injunction that is dated January

11 12th.  I'm looking at Paragraph 2, decretal Paragraph 2, which

12 is where most of the injunction language is.  Are you saying

13 that you would seek the very same sort of permanent

14 injunction, only at Subsection (c) you would cross out the

15 "except as it specifically relates to shared services

16 currently provided to affiliates owned or controlled by Mr.

17 Dondero"?  Everything else would remain --

18          MR. MORRIS:  I don't have a -- yes.

19          THE COURT:  Okay.  So I'm looking --

20          MR. MORRIS:  As would the next paragraph, you know,

21 using his affiliated entities or other people who are acting

22 on his behalf.  That would be enjoined as well.  And from the

23 preliminary injunction, we would also adopt -- actually, it

24 should say permanently enjoined, so there's a typo there.  But

25 it should be permanently enjoined from entering the Highland

18

1   offices.

2       I think the only two things that -- the only changes that

3   we made were to delete the requirement that he appear at all

4   hearings.  That was something that I think Your Honor very

5   appropriately included, but I'll leave that to the Court.  We

6   also deleted the reference to shared services, as I indicated.

7   And frankly, we've eliminated the reference to Ellington and

8   Leventon because they're no longer employees of ours.

9           THE COURT:  Okay.

10          MR. MORRIS:  And we think that that prohibition ought

11  to stay in effect until further order of the Court.  But until

12  there's a -- when there's a further order of the Court, that's

13  not a particular piece that we'll be seeking going forward.

14          THE COURT:  Okay.  I got a little lost.  So,

15  Paragraph 4, you would propose comes out?  Or no?

16          MR. MORRIS:  Is that -- I'm sorry, I don't have it in

17  front of me.

18          THE COURT:  That's the --

19          MR. MORRIS:  Is that Ellington and Leventon?

20          THE COURT:  -- Scott Ellington/Isaac Leventon

21  paragraph.

22          MR. MORRIS:  Yeah.  Right.  Now, they, of course,

23  would still be bound by their -- by their ethical and legal

24  obligations with respect to attorney-client privilege and they

25  couldn't disclose, because we hold the privilege.  So it

19

1  doesn't matter that Mr. Dondero is the former CEO.  We have

2  the privilege.  And so obviously they are duty-bound not to

3  disclose privileged information.

4      But other than that, given that they're no longer

5  employees of the Debtor, we'd rather not get tied into the

6  morass of that.  It's going to be very difficult to police, in

7  any event.

8          THE COURT:  Okay.  All right.  So my next question

9  is, what do you think a trial will look like?  Two days?  A

10  lengthy trial?  I mean, I'm baffled --

11         MR. MORRIS:  I'll be perfectly honest.  I am, too,

12  Your Honor.  Because we've had this trial twice already.  Your

13  Honor, at -- I think our proposed findings of fact and

14  conclusions of law are at Docket 156 of the adversary

15  proceeding.  And I don't know if you've had a chance to look

16  at that yet, Your Honor, but from Paragraph -- I think it's

17  one -- Paragraph 30 to Paragraph 149 -- so, 120 paragraphs

18  long -- we set forth the evidence that was adduced at the

19  preliminary injunction hearing and at the contempt hearing.

20  We have a citation to every single exhibit and every single

21  page and line that we rely upon from the testimony.  And

22  because of that, Your Honor, we plan on relying on that.  I

23  wouldn't anticipate more than 30 or 45 minutes for an opening

24  statement, perhaps an hour of direct testimony from Mr. Seery

25  and Mr. Dondero, which will cover, I promise you, I promise

20

1  you, only topics that have not been previously covered.  And

2  then an hour for closing.  I could do this in two and half

3  hours, Your Honor.

4             THE COURT:  Okay.  You've named Seery and Dondero as

5  potential witnesses.  And Mr. Dondero has named Seery,

6  Dondero, Ellington, Leventon, Jason Post, Dustin Norris, and

7  JP Sevilla as potential witnesses.

8             MR. MORRIS:  Sure.

9             THE COURT:  Well, let me ask you this.

10            MR. MORRIS:  Can I address that issue first, Your

11 Honor?

12            THE COURT:  Okay.  Go ahead.

13            MR. MORRIS:  Because back in March, we actually

14 served an interrogatory that asked the Bonds Ellis firm to

15 identify the witnesses that Mr. Dondero intended to call at

16 trial.  And we were told that because we had served the

17 interrogatory near the end of the discovery deadline and they

18 didn't have 30 days, they had no obligation to answer.

19    I reached out to the Bonds Ellis firm and asked them, if

20 they needed more time, I had no problem with that.  I believe

21 I offered to accept the exact same interrogatory and to serve

22 it three days after they did, and they agreed.  Hadn't heard

23 from them again until I got their witness list and I saw this

24 litany of people on it.  And I wrote to them last week and I

25 expressed considerable concern about that list, witness list.

21

1  And I pointed out that Mr. Dondero has a history of including

2  a laundry list of people on a witness list and never calling

3  them.

4      Specifically, at Docket 83 and Docket 85, they identified

5  Ellington, Leventon, and Rothstein, and never called them.

6  But meanwhile, I have to prepare for all of that, right?  At

7  Docket 106, they put down Ellington, Leventon, and Post, and,

8  again, never called the people associated with that hearing.

9      Now we've got Ellington, Leventon, Post, Norris, and

10  Sevilla for this.  So I said, what are you doing?  Can't you

11  just tell me who you intend to call?  This isn't a case, for

12  example, where you're having a trial for the first time and

13  you're a defendant and you say, gee, I want to see how the

14  evidence comes in.  I can't really tell you for sure because I

15  have to see what the plaintiff's case looks like.

16      Mr. Dondero knows what the Plaintiff's case looks like

17  because we had a trial on January 8th.  We had another trial

18  on March 22nd and March 24th.  And he has my proposed findings

19  of fact and conclusions of law, which go into more detail than

20  you probably wanted to see.

21      And so I asked them again, can you just tell me who you

22  intend to call?  And they declined to tell me.

23      So I will just say at this point, and I will speak more

24  about this in my opening statement, whoever is called at this

25  point on the third try of these issues by definition has no

22

1  credibility.  Their credibility has to be called into

2  question.  Where were they the first time?  Where were they

3  the second time?  And why are they just being called now,

4  after you see the proposed findings of fact and conclusions of

5  law?

6      And if you look at Mr. Dondero's exhibit list, you will

7  not find any documents that are going to support any testimony

8  by any of these people who are now employed, directly or

9  indirectly, by Mr. Dondero.

10     So I really think you asked the perfect question.  How

11 could this possibly be a lengthy trial and why are all these

12 people on the witness list?  And I would ask Mr. Wilson to

13 answer those questions.

14         THE COURT:  My last question for you is I presume the

15 plan has not gone effective yet?

16         MR. MORRIS:  No.  The plan has not gone effective

17 yet.  And I'll address that by just saying I'm not the right

18 person to answer that, but I will say, while there is no basis

19 -- the Debtor believes there is no basis to grant a stay here,

20 if Your Honor disagreed and the plan went effective, the order

21 specifically says that the preliminary injunction terminates

22 upon the effective date unless otherwise ordered by the Court.

23 And before -- before that effective date happens, I assure you

24 Mr. Dondero is not getting to -- not getting the benefit of a

25 stay and being unburdened by the preliminary injunction.  That

23

1  will never happen.  Okay?

2      So I don't think there's any basis to grant a stay.  I

3  think for purposes of judicial economy we should just get this

4  over with already and let the -- let him take his appeal

5  wherever he wants to take his appeal.  But if Your Honor

6  disagrees and the effective date occurs before there is a

7  final order on the interlocutory appeal of the preliminary

8  injunction, we'll be back with a motion to extend the

9  preliminary injunction until that happens.

10          THE COURT:  Okay.  All right.  Thank you.

11      All right.  Mr. Wilson, first, what would you like to say

12  in reply to Mr. Morris?

13          MR. WILSON:  Well, I really want to make a few

14  comments in reply.  I mean, the first thing that struck me was

15  that Mr. Morris stated that the Fifth Circuit did nothing to

16  halt the contempt hearing proceeding, which I would agree

17  with, but on the other hand, no one ever asked them to.  We

18  did not make that request to the Fifth Circuit and they did

19  not do it on their own accord.

20      With respect to the motion to stay filed in the Fifth

21  Circuit, we did make a -- I don't think I improperly answered

22  your question.  I think your question was directed to what

23  have we heard about the mandamus.  We have not heard anything

24  about the mandamus.

25      We did file a kind of companion motion to this in the

24

1  Fifth Circuit after receiving the setting for this -- for this

2  hearing today.  Just in the interest of time, we -- we did

3  tell the Fifth Circuit the entire situation, that we filed

4  this motion, when it's set, and let them know that, you know,

5  we were seeking this stay.  But we also believe that the Fifth

6  Circuit has inherent authority to grant a stay in any event,

7  and so we just wanted to keep them, you know, in the loop, in

8  the interest of time.  And so -- but they have not responded,

9  though.  The Debtor has filed a response to that motion, but

10 the Fifth Circuit has not given us any --

11             THE COURT:  When --

12             MR. WILSON:  -- guidance on that, either.

13             THE COURT:  When did you file the motion for stay --

14             MR. WILSON:  I believe it was on --

15             THE COURT:  -- with the Fifth Circuit?

16             MR. WILSON:  I believe it was on Thursday of last

17 week, Your Honor.

18             THE COURT:  And let me be clear about the

19 jurisdictional basis for that?

20             MR. WILSON:  Well, there is a -- there is a rule, I

21 think it's Federal Appellate Rule 8, that deals with stays

22 pending appeal.  And like I said, there's a difference in

23 interpretation of whether that applies to mandamus or not and

24 whether you have to go through the step of moving in the trial

25 court first.  And -- but in an abundance of caution, just

25

1  given the timing of all this, we went ahead and made that

2  filing in the Fifth Circuit, telling them that we've made this

3  filing but that it would not be heard until today, and told

4  them that -- that they had the jurisdiction to issue that

5  stay, should they want to, under their inherent authority, but

6  also they have the freedom to wait and see what Your Honor

7  does with it first, which they've apparently chosen to do.

8           THE COURT:  You know, if I had known you filed that,

9  I might have canceled this hearing.  Let the Fifth Circuit

10 rule.  He's asked for someone, you know, with higher authority

11 than me for a stay.  Why should I spend my time?

12          MR. WILSON:  Well, Your Honor, like we said, we filed

13 this motion -- I don't recall the date.  But we filed it well

14 over a week ago, and we -- we sought an emergency hearing, to

15 which the Debtor did not object.  And it wasn't until we found

16 that this hearing would not be until the 10th that we -- that

17 we decided that we needed to notify the Fifth Circuit --

18          THE COURT:  You filed it April 30th.  And you decided

19 I didn't --

20          MR. WILSON:  Okay.

21          THE COURT:  -- move fast enough by setting it ten

22 days out, --

23          MR. WILSON:  No, --

24          THE COURT:  -- so you'd go to the Fifth Circuit?

25          MR. WILSON:  Well, no, it was -- the timing is more

26

1  about the -- about the relation to the trial date than -- than

2  the date we filed the motion.

3        THE COURT:  All right.  Well, just so you know, I

4  think you should have told me you filed that.  I don't know

5  how I phrased my question about what have you heard from the

6  Fifth Circuit, but, again, if I had known you had filed that,

7  --

8        MR. WILSON:  Well, --

9        THE COURT:  -- I would have just canceled the

10 hearing.  Just let them rule at this point.

11       MR. WILSON:  I apologize for that, Your Honor.  I

12 honestly thought you were aware of this, but --

13       THE COURT:  Why would I be aware of it?

14       MR. WILSON:  Well, --

15       THE COURT:  Just FYI, the Fifth Circuit doesn't

16 notify the lower courts, oh, by the way, this pleading was

17 filed in an appeal or something affecting you.  That's not the

18 way it works.

19       MR. WILSON:  I apologize, Your Honor.  And like I

20 said, we -- we fully intended to give this Court the

21 opportunity to rule on this first, but in the interest of

22 time, we wanted to go ahead and get the process rolling at the

23 Fifth Circuit.

24   So, like I said, we hadn't heard anything from them in two

25 months, so we, you know, we didn't know if maybe that would

27

1  prompt a quick opinion or what, and maybe just, you know, end

2  the need for this whole proceeding today.

3       THE COURT:  That's really not the way these things

4  work.  I will just let you know, that's really not the way

5  these things work.  Anyway, I don't know why I'm telling you

6  that.  It isn't going to have repercussions on me.  But I

7  don't know if you know, you know, they have death -- execution

8  appeals and, you know, all kinds of really serious life-and-

9  death things.  So, you know, the fact that they haven't ruled

10 --

11      MR. WILSON:  Well, I understand, Your Honor.

12      THE COURT:  -- in two months on something involving a

13 bankruptcy injunction is not shocking, really.

14      MR. WILSON:  I understand, Your Honor.  It's just

15 that this -- it's a mandamus proceeding, and, you know, there

16 was quick action by the Court right off the bat, and, you

17 know, and, you know, a quick briefing schedule.  So, you know,

18 it's a little different than your standard Fifth Circuit

19 procedure.

20      THE COURT:  All right.  Well, address this length of

21 trial thing again.  You know, I had a hearing on or about

22 December 10th on the TRO.  That wasn't a really lengthy all-

23 day hearing, but we heard evidence then.  Then we had the

24 preliminary injunction hearing in the second week of January.

25 Lots of evidence that day.  I think that was all day.  We have

28

1   had the contempt motion on March 22nd and 24th.  And I have

2   pulled up the proposed findings and conclusions of the Debtor,

3   and it is a lot of cross-referencing the evidence I've already

4   heard.

5       So, again, I'm really, really, really trying to understand

6   why we would have a lengthy hearing.  I'm just telling you

7   right now, I'm leaning towards setting this for trial next

8   week, and I'm leaning towards setting it for Friday.  Okay?

9   Partly because we have lots of Highland stuff Monday and

10  Tuesday next week, and so that's just what I'm leaning towards

11  doing.  But I'm trying to understand why Friday, an all-day

12  Friday, we could start at 9:00 o'clock, why wouldn't that be

13  plenty of time?  Maybe three hours of evidence each, plus

14  argument.  That's just where my brain is leaning right now.

15      So, again, help me to understand why that wouldn't be

16  enough time.

17          MR. WILSON:  Well, I think that, you know, as Mr.

18  Morris mentioned earlier, we've had witnesses on exhibit and

19  witness lists for prior hearings, and for various reasons they

20  did not end up being called.

21      I mean, you may recall at the contempt hearing that the

22  Debtor decided to release Ellington and Leventon and not call

23  them, on an agreement with their counsel, and we subsequently

24  decided that we could -- we could go without calling them as

25  well.  However, at the end of that hearing, we'd wished we'd

29

1  had their testimony in there, and we asked you to reopen the

2  evidence and allow them to testify.

3      My point is, is that this is a permanent trial --

4          THE COURT:  To be exact, it was not at the end of the

5  day of evidence.  It was when we came back two days later that

6  you wanted to reopen the evidence, after we made it very

7  crystal clear the evidence had closed.  Okay?  I just -- I

8  don't like things to get incorrectly in the record.

9          MR. WILSON:  I mean, you stated that correctly, Your

10 Honor.  It was -- it was on March 24th that we asked you to

11 allow those witnesses to testify.

12     But in any event, you know, we deserve an opportunity to

13 put on our evidence and to make our record, which, you know,

14 as Mr. Morris told you, has not been done.  And I think Mr.

15 Dondero has that right.  And, you know, we're currently

16 evaluating the relief the Debtor is seeking, and of course

17 we're taking into consideration the comments Mr. Morris just

18 made.  We haven't had an opportunity to talk to my client

19 about that.

20     But, you know, we -- we should have a right to call

21 witnesses.  They've been on the witness and exhibit list, you

22 know, now for the appropriate amount of time.  Mr. Morris has

23 been aware of them.  And, in fact, he's deposed nearly all of

24 them, if not taken them on examination in a hearing as well.

25 And I don't think there's any surprise or whatnot to Mr.

30

1   Morris if any of these guys testify.

2       But, you know, I think that Mr. Dondero has the right to

3   evaluate, you know, what these witnesses could say and to put

4   on their testimony to the extent that we need to to rebut what

5   the Debtor is trying to -- what the -- the case the Debtor is

6   trying to make.

7           THE COURT:  All right.  So, Seery, Dondero,

8   Ellington, Leventon, Jason Post, Dustin Norris, JP Sevilla?

9   Your current plan --

10          MR. WILSON:  And I may be --

11          THE COURT:  Your current plan is to call seven

12  witnesses?

13          MR. WILSON:  I would say up to seven, but my current

14  plan is to call more than just Mr. Dondero and Mr. Seery, as

15  Mr. Morris intends to do.

16          THE COURT:  All right.  I think you were alluding to

17  this, but let me double-check.  Now that you've heard Mr.

18  Morris explain how the permanent injunction he would be

19  requesting is skinnied-down from the preliminary injunction,

20  and that is, you know, taking out references to shared

21  services agreements because those aren't in place anymore and

22  taking out the prohibition on Dondero communicating with Scott

23  Ellington and Isaac Leventon, does this impact the trial at

24  all, from your standpoint?

25      I mean, I know a big issue has been, you know, First

**Appx. 05149**

31

1  Amendment, prohibiting him from talking.  But with Paragraph 4
2  coming out, the Ellington/Leventon prohibition, and with the
3  fact that there's no shared services agreement in place, so,
4  you know, I don't know why he would need potentially to be
5  talking to Debtor personnel, is this -- does this skinny down
6  the trial, at least, in your view?
7          MR. WILSON:  I think it -- I think it very well may,
8  Your Honor.  I mentioned that a minute ago.  Unfortunately, I
9  haven't had the opportunity to visit with my client about that
10  so I can't commit to anything at this moment.  But I think you
11  may very well be right on that.
12          THE COURT:  All right.  Well, I'd like you to have
13  good faith discussions with Mr. Morris in the next 24 hours.
14  You know, Mr. Dondero is there in your office, so I would
15  think you all could caucus and get back with him in 24 hours
16  on that point.
17          MR. WILSON:  Well, yeah, with due respect, Your
18  Honor, Mr. Dondero is in the middle of a deposition with Mr.
19  Taylor, and they're at a separate office than I am at this
20  moment.  They took a break from their deposition to attend
21  this hearing.
22          THE COURT:  Okay.  They're not in your office?  I see
23  Mr. Taylor.  He's in some other office.  Mr. Dondero is
24  waving.
25          MR. TAYLOR:  Yes.  I'm in Dallas, Your Honor.

32

1          THE COURT:  I thought they were all there at Bonds

2    Ellis, but they're not all there at Bonds Ellis.

3          MR. TAYLOR:  Your Honor, Clay Taylor on behalf of Mr.

4    Dondero.  Just so that you know, we've been in depositions for

5    -- where Mr. Dondero was subpoenaed as a third-party witness

6    in the UBS versus Highland Capital case where we moved for a

7    protective order on that but that was denied.  And so we are

8    appearing pursuant to that -- to that notice, and we're going

9    right back to it after this.  Mr. Clubok has, as counsel for

10   UBS, has indicated that it might be a lengthy day today.  I'm

11   hoping that that doesn't turn out to be the case.  But it's --

12   we've already been going at it for some time, and he indicates

13   that he has quite a bit more to ask.  So, just so you know.

14   And then we do have -- Mr. Wilson does indeed need to talk

15   with Mr. Dondero about a few things that we heard that we

16   weren't totally anticipating from Mr. Morris that might --

17   might skinny this down.

18          THE COURT:  Okay.  All right.  Well, thank you, Mr.

19   Taylor.

20      Here's what I'm going to do.  I'm going to deny the motion

21   for a stay.  I just don't think there is the required showing

22   here to stay trial in this adversary proceeding pending the

23   mandamus ruling.  You know, at this point, it's been over two

24   months since the petition for mandamus was filed.  I don't

25   know what that means, just like none of you know what that

33

1  means.  But particularly with a stay pending mandamus pending

2  before the Fifth Circuit right now, I mean, they'll do what

3  they feel is appropriate to do, but I think it's appropriate

4  for this Court to move forward in this trial until ordered

5  otherwise.

6      Again, when looking at the four prongs here, I think one

7  of the most significant prongs here on evaluating should we

8  stay this or not is the, does the stay serve the public

9  interest?

10     And, again, I view the argument largely to be about

11  judicial economy and efficiency of the parties.  And at this

12  point, however I rule at trial, I feel like the mandamus

13  becomes moot and it's much more efficient for everyone to --

14  if someone wants to appeal my final ruling in this adversary,

15  there are not going to be the impediments of needing to seek

16  leave of needing to get mandamus.  It'll be a final ruling one

17  way or another.  That's the only way I can view this.

18     And, again, looking at the other prongs for a stay pending

19  appeal, likelihood of success on the merits.  You know, is

20  there a significant legal issue on a serious legal question?

21  I just don't see that prong having been met.  It's important

22  to people.  I know this litigation is important to people.

23  But it doesn't, in my estimation, meet that high hurdle.

24     So, the stay is denied.  I don't find the other prongs met

25  here.

34

1    I am, as I suggested, going to go ahead and set this for

2 trial a week from Friday.  So what's that, the 21st?

3              MR. WILSON:  Your Honor?

4              THE COURT:  Yes?  Who's speaking?

5              MR. WILSON:  Yes, Your Honor.  Is Friday the only day

6 next week where trial is available?

7              THE COURT:  Do you have a conflict?

8              MR. WILSON:  Well, I just got asked to participate in

9 a proceeding out in Midland on Friday, that we have to go

10 Thursday night.  If -- you know, if that -- if there's another

11 day around there that would work better, that would work

12 better for me personally.

13             THE COURT:  There's really not.  I'm looking at next

14 week, and I have Highland all day on Monday.  As far as I

15 know, a full-day setting is what I have down for the UBS

16 settlement.  Anyone disagree with that going all day?

17             MR. MORRIS:  We haven't gotten objections yet, Your

18 Honor, but that's what we're going to plan for.

19             THE COURT:  Okay.

20             MR. MORRIS:  It's John Morris.  John Morris for the

21 Debtor.

22             THE COURT:  Okay.  So, Tuesday at 9:30, I have

23 Highland matters.  Motion to disqualify Wick Phillips and then

24 various fee applications.  I show a three-hour time estimate

25 on the Wick Phillips matter.  Is that --

35

1          MR. MORRIS:  You know, Your Honor, this is John

2    Morris.  And I know that they're not here, or at least I don't

3    think they're on, I don't think there's representatives, so I

4    want to caveat what I'm about to say.  We received their

5    objection to the motion the other day, and I think it's going

6    to require discovery, and so I do intend to reach out to them

7    before the hearing to see if we could simply have a status

8    conference on Tuesday and just set a scheduling order that

9    will allow us to take some discovery, because we're a little

10   surprised at some of the positions that they're taking and

11   we're certainly not prepared to have an evidentiary hearing.

12      So, you know, I don't have their agreement to say that.

13   I'm just saying that that's what our intention is.  I don't

14   know what the Court's calendar looks like for the balance of

15   the day, but if the balance of the day is free, it's

16   conceivable we could be prepared to try this on Tuesday as

17   well.

18          THE COURT:  All right.  Well, I would be willing to

19   do that.  If the Wick Phillips thing comes off, that leaves

20   one, two, three fee applications.  So we could set the trial

21   for 9:30 and do the fee applications first on Tuesday and then

22   roll into this trial.

23      How does that sound?  Mr. Wilson, does that work better

24   for you?

25          MR. WILSON:  Is there time to roll into Wednesday if

36

1  that becomes necessary?

2        THE COURT:  There is actually some time to roll into

3  Wednesday, if that happens.  All right?  I still want you all

4  to talk about limiting your evidence.  I kind of spit-balled a

5  minute ago three hours each side of evidence, plus opening,

6  plus closing.  I want you to think about is that doable, but I

7  will commit to give you Wednesday morning next week as well if

8  we don't finish on Tuesday.  All right?  Work for everyone?

9        MR. MORRIS:  That's fine with the Debtor, Your Honor.

10  That's fine with the Debtor.

11      I do have one other issue to raise, if I may.  I don't

12  know if there's anything else on your agenda, Your Honor.

13        THE COURT:  Well, there is something else on my

14  agenda, but I'll let you go first.  But just to make the

15  record clear, trial is set on this matter next Tuesday at

16  9:30, and then I'll give you a half a day Wednesday, Wednesday

17  morning as well, if you need it.

18      So, could I ask -- I'll split up the job.  Mr. Wilson, if

19  you could upload an order denying your motion for stay.  And

20  then, Mr. Morris, if you could upload an order setting this

21  for trial next week at 9:30.

22      All right.  So what is your issue, before I get to mine?

23        MR. MORRIS:  Sure.  Just prior to this hearing, the

24  Bonds Ellis firm filed on behalf of Mr. Dondero objections to

25  the Debtor's exhibits.  We had filed our witness and exhibit

37

```
 1   list a couple weeks ago, I believe.  Maybe it was just a week
 2   ago.  And every -- I think maybe all but two or three of the
 3   exhibits on our exhibit list are exhibits that were previously
 4   admitted into evidence, mostly without objection, maybe a
 5   couple over their objections.  But they've all been admitted
 6   into evidence in this case in either the temporary restraining
 7   order proceeding, the preliminary injunction proceeding, or
 8   the contempt proceeding.  So all of it's happened in this
 9   adversary case with these lawyers representing the Defendant.
10   And nevertheless, they filed objections to almost every single
11   exhibit.  On authentication grounds.  On relevance grounds.
12   And I just -- I was struck by that because I've never seen
13   anything like that before, Your Honor.  And I was looking at
14   Rule 11.  Rule 11(b)(2) requires anybody filing a paper with
15   the Court to represent that the legal contentions are
16   warranted by existing law or by a non-frivolous argument for
17   extending, modifying, or reversing existing law.  And I just,
18   I just don't understand what existing law there is that would
19   allow a party to object to evidence that has already been
20   admitted in the adversary proceeding.  And before the Debtor
21   pays me money that it shouldn't, I think -- I think -- I'd
22   like to just raise this issue with the Court because they've
23   objected literally -- they've objected, for example, to one of
24   our exhibits that they cite in their proposed findings of fact
25   and conclusions of law.  Now, mind you, they have a totality
```

38

1    of four citations to the record in their proposed findings of

2    fact and conclusions of law, but two of them are to the

3    January 26th transcript.  Now, it is on our exhibit list, but

4    as Your Honor may recall, that hearing didn't have to do with

5    this adversary proceeding.  It actually had to do with the

6    injunction proceeding against the Advisors.

7        But so they've included -- some of the stuff there --

8    included in their proposed findings, they're objecting to the

9    exhibit on our exhibit list that has it.

10       But that's just, that's just kind of a funny fact.  What's

11   really not so funny is I don't understand how they can object

12   to evidence that's already been admitted in this adversary

13   proceeding.  And it would take -- this trial would be very

14   lengthy if I had to bring in a witness to authenticate

15   documents or to prove relevance for documents and evidence

16   that have already been admitted.

17       Not only has it been admitted, Your Honor, it's been

18   relied upon by the Debtor, as set forth in our proposed

19   findings of fact and conclusions of law.

20       Not only has it been only relied upon by the Debtor, it's

21   been relied upon by the Court in issuing the preliminary

22   injunction order.

23       And moreover, I just -- yeah, so -- so it's out there.

24   It's been out there forever, and I just don't understand how,

25   consistent with Rule 11, somebody could object to that

39

1   evidence now, because I don't know of an existing law and I

2   would really -- you know, it's going to create -- I don't

3   think this is done in good faith.  I really think it's, you

4   know, pursuant to Rule 11(b)(1), it's actually being presented

5   -- these objections are being presented for an improper

6   purpose and to needlessly increase the cost of litigation.

7   And I just -- I look for guidance from the Court, because I

8   don't want to do this unless the Court says I really need to

9   respond.

10          THE COURT:  First off, what time was this filed?

11  Because I thought my law clerk and I checked the docket right

12  before coming in here.  What time was this filed?

13          THE CLERK:  12:50 this afternoon.

14          THE COURT:  12:50?

15          THE CLERK:  Yes.

16          THE COURT:  Okay.  Shame on us for preparing early,

17  because we prepared before 12:50 for the 1:30 hearing.  This

18  was filed at 12:50.  And it shows Brian Assink filed it, Mr.

19  Wilson.  What do you have to say?  I'm looking at it.  This is

20  really the darnedest thing I've ever seen.  You have objected

21  to every exhibit except Exhibit #1, whatever #1 was.  You

22  didn't object to that.  You objected to Exhibits 2 through 65,

23  and most of them are, quote, hearsay, lack of foundation, lack

24  of authentication, relevance.  That's most of them.  Sometimes

25  you have merely hearsay, relevance.  Or relevance.

40

1    What are you doing?  I've already admitted most of these.

2  And, by the way, you stipulated to the admissibility of a lot

3  of these.

4            MR. WILSON:  Well, Your Honor, if I may, I understand

5  that, you know, a permanent injunction trial is a separate

6  proceeding, and that everything that may have been admitted

7  for a different purpose during the adversary or even some

8  other adversary proceedings, you know, is not part of the

9  record unless it's admitted in this proceeding.  And the way

10  we understood the requirements --

11           THE COURT:  Wait.  We're not talking about other

12  adversary proceedings.  We're talking about this adversary

13  proceeding.

14           MR. WILSON:  Well, we are, Your Honor, because --

15           THE COURT:  And the whole adversary proceeding is

16  about an injunction.  A TRO, preliminary, and now permanent.

17           MR. WILSON:  Well, but Your Honor, as Mr. Morris

18  mentioned, he's trying to also incorporate some testimony and

19  evidence from a separate adversary proceeding, the -- I think

20  it was the January 26th hearing.  But, you know, we understood

21  that --

22           THE COURT:  What hearing?  What hearing is that?  I

23  don't know.

24           MR. WILSON:  That was the hearing on the preliminary

25  injunction against the Funds and Advisors.

41

1          MR. MORRIS:  Your Honor, I don't believe there's one

2    citation in our proposed findings of fact and conclusions of

3    law to that transcript.  It's actually Mr. Dondero who cites

4    to that transcript twice in his proposed findings of fact and

5    conclusions of law.  At the same time, they're trying to

6    exclude the transcript from evidence.

7          THE COURT:  Mr. Wilson, got that one wrong?

8          MR. WILSON:  Well, no.  It's on their exhibit list so

9    it's one of the things that we noted an objection to.

10       But my point was, is that, you know, to the extent these

11   -- some of these items or maybe most of these items have been

12   admitted for one purpose or another in a different proceeding,

13   that was for a different purpose.  And, you know, we -- we

14   kind of thought we were starting with a clean record for our

15   permanent injunction trial and that we would, you know, make

16   more objections because there's a different purpose.  There's

17   more at stake and there's different issues.  And so that

18   doesn't mean that we're going to object to every single one,

19   but --

20         THE COURT:  What do you mean, there are different

21   issues?  Elaborate on that.

22         MR. WILSON:   Well, the whole --

23         THE COURT:  They're slightly narrower, I think is

24   what we established earlier.  What's new and different?

25         MR. WILSON:  Well, the whole preliminary versus

42

1   permanent.  I mean, I understand the -- well, right, I mean,

2   with respect to the relief being sought, but with respect to

3   preliminary (garbled) in attendance at the preliminary

4   injunction hearing.

5            THE COURT:  Okay.  Unfortunately, you have

6   connectivity issues suddenly.

7            MR. WILSON:  You know, I've got -- I've got a

8   different view on those things.  I mean, the contempt hearing

9   has some things --

10           THE COURT:  Mr. Wilson, I don't know if --

11           MR. WILSON:  And I think we lost Mr. Morris on the

12  screen.  Can you hear --

13           THE COURT:  -- you can hear me, but we suddenly have

14  very bad connectivity.

15           MR. WILSON:  Can you hear me?

16           THE COURT:  Your screen is frozen, your video is

17  frozen, and I really didn't get any of the last two minutes.

18           MR. WILSON:  Is it better now, Your Honor?

19           THE COURT:  Well, I heard you say, "Is it better

20  now?"

21           MR. WILSON:  I'm going to log off and log back on.

22           THE COURT:  Okay.  We're going to have to -- we're

23  going to have to cut this --

24           MR. WILSON:  I'm going to try to log off and log on.

25           THE COURT:  No.  I'm ready to be finished with this

43

1  hearing.  You need to go back and look at this, because I am
2  leaning towards what Mr. Morris is arguing, and that is that
3  this is really bad faith.  Okay?  There is no change of
4  issues.  It's been the same issue at the TRO hearing, at the
5  preliminary injunction hearing.  Okay.  The motion for
6  contempt, we were looking backwards a little at behavior.  But
7  the issues are not expanded.  Okay?  It's just duration of the
8  injunction.  And now a slightly skinnied-down injunction.
9      So, of course, I am willing to consider evidence I've
10  heard at the TRO hearing and the preliminary injunction
11  hearing.  And I would note that on many, many, many of these
12  exhibits, you didn't object.  Or if you did, you argued it and
13  I overruled it.
14      So you need to go back and look at this and think hard
15  whether you're really going to press these issues at the
16  trial.  Okay?  This is -- again, *Dondi*, we require counsel to
17  work in good faith to streamline trials and work with people.
18  If you can agree, if you can stipulate to evidence, that's
19  what you need to do.  And this looks like -- I don't know what
20  it looks like.  But if this is any guidance to you, it should
21  be, if I admitted it at the TRO hearing, if I admitted it at
22  the preliminary injunction hearing, it's fair game to consider
23  it now.
24      Here's the last thing I want to say, and this is very big-
25  picture, not unique to this adversary proceeding.

1      Can everyone hear me okay?  I don't know if we're having

2   connectivity issues.  Can everyone hear me?

3           MR. MORRIS:  Yes, Your Honor.

4           THE COURT:  Can you hear me, Mr. Wilson?

5           MR. MORRIS:  Yes, Your Honor.

6           MR. WILSON:  Yes, Your Honor.

7           THE COURT:  Okay.  I have been pondering something

8   the past few days.  And I haven't figured out how I want to

9   address it, but maybe Mr. Dondero's counsel and counsel from

10  some of the Dondero-controlled entities, maybe they can listen

11  to what I'm about to say and figure out a solution.

12      As you all know, there are so many law firms, so many

13  lawyers involved now that are basically singing the same tune

14  at a lot of these hearings as far as objections, me too, me

15  too, me too.  And so just quickly eyeballing what we have, we

16  obviously have Mr. Dondero represented by Bonds Ellis.  There

17  is another firm that represents Mr. Dondero that filed a

18  motion asking that I recuse myself.  I can't remember the name

19  of that firm, but I think they appealed my denial of that

20  motion.  So, I can't remember who that was.  Then we have the

21  various affiliates.  We have -- well, I'll just start

22  chronologically.  Highland CLO Funding, Ltd. has historically

23  been represented by King & Spalding.  I don't know if that's

24  -- I know there were some changes there with the ownership of

25  that entity, so maybe they're gone.  But then we have NexPoint

45

 1  Advisors and Highland Capital Management Fund Advisors.  We
 2  call them the Advisors and then the Funds.  Originally, they
 3  were all represented by K&L Gates, but now they've divvied it
 4  up and Munsch Hardt is representing, I guess, the Advisors,
 5  and the Funds are represented by K&L Gates.  CLO Holdco, Ltd.,
 6  it was Kane Russell Coleman & Logan representing them, but I
 7  now think I'm seeing Kane Russell is representing Grant Scott
 8  and -- individually.  I'm not sure if Kane Russell is still
 9  representing CLO Holdco.  We have Dugaboy and Get Good Trusts
10  represented by Doug Draper, Heller Draper.  We have now Louis
11  Phillips representing the Charitable DAFs, Highland Dallas
12  Foundation.  We have NexPoint Real Estate Partners represented
13  by Wick Phillips, although there's the motion to disqualify
14  them.  And then I guess I'll just throw in we've had Baker &
15  McKenzie and Ross & Smith representing certain groups of
16  employees, but now I guess those proofs of claim have been
17  bought by Dondero entities and so I'm not sure who's
18  representing who there.
19      I'm not even sure I got everyone just now, but here's what
20  I'm getting at.  You talk about judicial efficiency and
21  judicial economy and economy of the partners.  We can't go on
22  efficiently with 12 law firms or whatever I just named filing
23  the very same type of motion or objection.  You know, I almost
24  -- if we were in different circumstances, I'd say we need to
25  have an ad hoc committee of these Dondero-controlled

46

1   affiliates, something like that.

2        But I've been thinking about this for a few days because I

3   see, like in one adversary, I think we now have three motions

4   to withdraw the reference.  And I haven't studied them all,

5   but I'm pretty sure they're going to tell me the exact same

6   thing.  And again, I'm just doing some predictions that the

7   UBS settlement, I wouldn't be surprised if I get eight or ten

8   or twelve objections that say the very same thing.

9        We're going to have to work something out.  Okay?  This is

10  not efficient.  It's not useful.  I would think a person such

11  as Mr. Dondero would want to rein in legal fees, but maybe

12  not.

13       Do you all have any ideas, Mr. Taylor, Mr. Wilson?  How

14  can we rein this in?  There's got to be a better way --

15            MR. TAYLOR:  Your Honor?

16            THE COURT:  -- than twelve different law firms filing

17  almost identical pleadings.

18            MR. TAYLOR:  Your Honor, I understand what you're

19  saying, on the one hand.  On the other hand, each of these

20  entities do have -- are separate corporations.  They have

21  different duties to various stakeholders, and they are

22  controlled by different stakeholders.  And that is one of the

23  things that has been a consistent, at least from what I

24  understand from my limited understanding and length of time in

25  the case, that that is one thing that is very important to Mr.

47

1   Dondero and those related entities, is that those duties do

2   run to different parties. So each party has to preserve its

3   individual rights.

4      Sure. Could it be more efficient? Of course. But Mr.

5   Dondero has a different set of duties than do the Advisor,

6   than do the Funds, than do the Trusts that are controlled by a

7   separate trustee. And while of course there's some

8   interrelated cooperation amongst them, amongst the joint

9   defense agreement, it is very important that they maintain

10   their separate corporate identities and act independently from

11   each other, because they truly do have to act independently

12   from each other in many different circumstances. They don't

13   want to lose sight of that.

14      So that is my initial explanation. Of course, I can talk

15   with my client about it further, about seeing what can be

16   done, because he does indeed want to make it more efficient.

17   Has been hammering on me and my firm every month to try to do

18   so, and I'm sure he has with the other professionals.

19      But we do hear Your Honor, but we do want to make sure

20   that that -- those different separate corporate identities of

21   these entities is both recognized and laid out in this case.

22   It is very important to us and just integral to a lot of the

23   things that we've done in this case.

24        THE COURT: You know what would help me understand

25   that better? Is if in every case I had this entity is owned

48

1    by, you know, 25 percent by this, this.  If I knew the owners,

2    if I knew the equitable owners.  But I don't.  That's just all

3    kind of glossed over.  And so that's how perceptions get

4    created that Dondero, Dondero, Dondero, Dondero.  You know

5    what I'm saying?

6            MR. DONDERO:  Your Honor?

7            THE COURT:  And I don't know if you want to share

8    that information or not, but that's why I can't just accept a

9    generalization that, oh, we have very different stakeholders

10   behind --

11           MR. TAYLOR:  Your Honor?  Wait, hold on a second.

12   Your Honor, --

13           THE COURT:  -- this entity versus this one versus

14   this one.

15           MR. TAYLOR:  Your Honor, if you would allow my

16   client, he would like to very briefly address the Court on

17   those points, if he may.

18           THE COURT:  Okay.

19           MR. DONDERO:  Your Honor, just a brief history from

20   my perspective, okay?  We filed with $450 million of assets

21   and $110 million of estimated, as presented by the independent

22   board and Pachulski to the Court, trying to do a quick

23   settlement the first three or four months into bankruptcy.

24   The claims, the awards, the Class 8, the Class 9 awards, the

25   people who didn't even have standing, have all of a sudden

49

1   ballooned to $300-some-odd million.  And the assets in the

2   estate, which we haven't had an examiner go through all these

3   no-process asset sales at a loss, when I would have bought

4   them for more, has driven the estate value down to less than

5   $250 million.

6        We made an offer to try and settle this thing a few months

7   ago at 20 percent more than the estimated value in the

8   recoveries.  But Seery and the UCC are emboldened because they

9   feel in this Court there's going to be no respect of third-

10  party investors, no respect of other Dondero entities, and

11  they've been told that they can get more than a hundred cent

12  recovery by going after me and all my other entities going

13  back ten or twelve years.

14       So there's no chance that this case ever settles.  And

15  what you're going to see is there's a half a dozen or more --

16            MR. POMERANTZ:  Your Honor, I have to -- I have to --

17            MR. DONDERO:  -- there's a half a dozen more law

18  firms coming --

19            THE COURT:  Just a moment.

20            MR. DONDERO:  -- and there's a half a dozen -- there

21  are a half a dozen more --

22            MR. POMERANTZ:  Your Honor, this --

23            THE COURT:  Mr. Morris?

24            MR. POMERANTZ:  This is Jeff Pomerantz.

25            THE COURT:  Mr. Morris?

50

1          MR. POMERANTZ:  This is Jeff Pomerantz, Your Honor.

2          THE COURT:  Oh, Mr. Pomerantz?

3          MR. POMERANTZ:  This is Jeff Pomerantz, Your Honor.

4          THE COURT:  Uh-huh.

5          MR. POMERANTZ:  You know, I think what Mr. Dondero is

6    doing is totally inappropriate.  We're not here to relitigate

7    the history of the case.  We're not here to relitigate or

8    determine why a settlement hasn't been reached.  Your Honor

9    raised some important questions, (garbled) gave an answer, you

10   pushed him, but what Mr. Dondero is doing is just

11   inappropriate, and we shouldn't -- don't think he should be

12   doing this in this manner.

13      If he wants to at some point be put on to testify, he

14   could be cross-examined.  But he's testifying about things

15   that actually just happen not to be true and it's totally

16   inappropriate for this context.

17          THE COURT:  Okay.  Well, I understand --

18          MR. DONDERO:  But Your Honor, there's going to a half

19   dozen --

20          THE COURT:  -- that -- I understand, you know, Mr.

21   Pomerantz is concerned because I asked a specific question

22   aimed at how do we rein in all the lawyers, and the answer

23   was, well, they all are separate entities with separate

24   interests and separate stakeholders.  And my question was,

25   well, could I maybe see a list, a breakdown on all of these

51

1  entities?  Because, you know, in so many cases, --

2          MR. DONDERO:  But Your Honor, --

3          THE COURT:  -- in almost every case I have, I get a

4  big giant what I call spaghetti chart at the beginning of the

5  case where I get a breakdown of debtor affiliates and who owns

6  what.  And this hasn't been clear to me with all of these

7  affiliates.

8      But I do very much have the impression, Mr. Dondero, that

9  all roads lead back to you.  So I let you speak to this, and

10 we've kind of gone down a different trail.  And I want you to

11 know, I know --

12         MR. DONDERO:  Right.

13         THE COURT:  I know where you stand on this because

14 you have told me before.  You have huge concern that Highland

15 had *x* hundred million dollars of assets at the beginning of

16 the case and now it's a lot lower.  I know you have concerns

17 with liquidation at what you think were very inappropriate

18 times.  I know you have all kinds of beefs, beefs about the

19 settlement with Acis, and probably UBS and the Redeemer

20 Committee.  I understand that.  But what I'm talking about

21 right now is going forward.  Going forward, how do we rein

22 this in where we don't --

23         MR. DONDERO:  But going forward, there's going to be

24 more lawyers.  There's going to be more defense.  Because the

25 Debtor is just going to keep trying to broaden, because they

52

1   feel empowered and enabled to go after anything related to

2   Highland, me, et cetera.  But there's probably half a dozen

3   more attorneys coming into this case.  I don't know what to

4   tell you.  It's a circus.

5           THE COURT:  Okay.  Well, I'm going to let you all

6   think about this out of court.  Is there a way you can

7   streamline?  I mean, I know -- I almost chuckle at myself at

8   saying ad hoc committee of Dondero-controlled entities.  I

9   know that that sort of sounds, I don't know, unworkable,

10  maybe.  Maybe not.  I'm not going to read 14 different

11  objections to the UBS settlement that say the very same thing.

12  I'm not going to read a different motion to withdraw the

13  reference by every single defendant in every single adversary

14  that gets filed.  This is just not an efficient way to go

15  forward.

16      So I want you all to think about how you can make this

17  more efficient.  You know, it -- a perception could exist that

18  you're trying to carpet-bomb us all with paper, the Court

19  included.  I mean, it's my job.  I'm going to read everything

20  that's put before me.  That's what I do.  That's what I'm

21  supposed to do.  But it's out of control.  So you all think of

22  a way to get it in control or I might impose something.  The

23  wheels are turning.  What could I do?  You know, page limits.

24          MR. POMERANTZ:  Your Honor, this is Jeff Pomerantz.

25  One suggestion might be, following up on what Your Honor made

53

1   some comments about, and Your Honor has used the word ad hoc

2   committees, and obviously it's sort of a different animal

3   here.  But as Your Honor knows, that every time an ad hoc

4   committee comes in, they have to file a 2019 statement.  So I

5   think it would at least provide Your Honor with information,

6   as it would provide all of us with information, to really

7   understand and know, when people are appearing, is it all

8   roads leading back to Dondero, or, as Mr. Taylor says, what

9   are the different constituents?  Who are the different people?

10         As Your Honor has heard from us, we lump them all together

11  because we believe the evidence has shown throughout this case

12  that it all leads -- the road leads back to Dondero.  But Your

13  Honor may consider asking them to file sort of the equivalent

14  of a 2019 statement to provide Your Honor with that

15  information under oath that Your Honor could then see, when

16  you get several objections to the same thing, whether you

17  really need to be dealing with them as seven different matters

18  or whether dealing with them as one.

19         THE COURT:  Okay.  All right.  Well, I'm giving this

20  thought.  And again, I'll let you all think about it and make

21  a proposal.  But I may or may not accept any proposal you

22  make.  And I am leaning towards requiring information to be

23  filed of who owns what, who are the stakeholders.  That'll

24  help me understand, is it necessary to have this entity filing

25  a separate objection or motion from this other entity or not?

54

1  Can we just have an hoc committee each time?

2     I don't even think I listed all the law firms.  I know a

3  new law firm filed a lawsuit in front of Judge Jane Boyle

4  recently.  We've got a hearing on that coming up in June.  I

5  mean, and now you're -- I'm hearing there are going to be

6  more.  Well, if you don't figure out a way to rein it in, then

7  I'm just going to have to get that list of who are the

8  stakeholders in these entities, under oath, because I don't

9  understand it.  I don't understand why we need these many

10 lawyers filing position papers.

11    So, all right.  Well, we're going to adjourn, and I guess

12 I'll see you next Monday, right?

13          MR. MORRIS:  Thank you, Your Honor.  Yes.

14          THE COURT:  Okay.  Thank you.

15          THE CLERK:  All rise.

16    (Proceedings concluded at 3:07 p.m.)

17                        --oOo--

18

19

20                    CERTIFICATE

21    I certify that the foregoing is a correct transcript from
   the electronic sound recording of the proceedings in the
22 above-entitled matter.

23   **/s/ Kathy Rehling**                    05/11/2021

24 _____     _____

   Kathy Rehling, CETD-444                    Date
25 Certified Electronic Court Transcriber

55

                              INDEX

1

PROCEEDINGS                                                  3

2

WITNESSES

3

-none-

4

EXHIBITS

5

-none-

6

RULINGS

7

Defendant's Emergency Motion to Stay Proceedings Pending     32
Resolution of Defendant's Petition for Writ of Mandamus

8
or, Alternatively, Motion to Continue Trial Setting (154)
- *Denied*

9

10
END OF PROCEEDINGS                                          54

11
INDEX                                                       55

12

13

14

15

16

17

18

19

20

21

22

23

24

25