**EXHIBIT 39**

**Appx. 06273**

Docket #2656 Date Filed: 08/03/2021

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
| | ) |
| Debtor. | ) **Re: Docket Nos. 2535, 2621, 2648** |
| | ) |

**DEBTOR'S AMENDED REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF
AN ORDER (I) AUTHORIZING THE SALE OF CERTAIN PROPERTY AND (II)
GRANTING RELATED RELIEF**

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



1934054210803000000000002

Appx. 06274

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby submits this amended reply (the "Reply")[2] (a) in response to the *Objection to the Debtor's Motion for Entry of an Order (i) Authorizing the Sale of Certain Property and (ii) Granting Related Relief* [Docket No. 2621] (the "Objection") filed by NexPoint Advisors, L.P. ("NexPoint") and (b) in support of the *Motion of the Debtor for Entry of an Order (i) Authorizing the Sale of Certain Property and (ii) Granting Related Relief* [Docket No. 2535] (the "Motion").[3]  In further support of the Motion, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Through the Motion, the Debtor seeks authority to exercise its Management Rights to cause Maple Holdings, its wholly owned subsidiary, to sell the Property to the Purchaser pursuant to the terms of the Purchase Agreement.  After a thorough marketing process, the Debtor determined that the Purchaser's offer for the Property was the highest and otherwise best offer and that conducting a private sale was in the best interests of its estate.  The Committee supports the Debtor's exercise of the Management Rights to cause a sale of the Property to the Purchaser – notwithstanding the competing "offer" presented by NexPoint – and no true creditor or party-in-interest has objected.

2.      Not surprisingly, the only objecting party is NexPoint, an entity owned and controlled by James Dondero.  During the marketing process, the Debtor received an unsolicited offer to purchase the Property from NPRE, another entity owned and controlled by Mr. Dondero.  For the reasons discussed in the Motion, the Debtor determined not to engage with NPRE with

---

[2] The Debtor is filing this amended Reply to clarify an issue initially raised in the *Debtor's Reply in Support of Its Motion for Entry of an Order (i) Authorizing the Sale of Certain Property and (ii) Granting Related Relief* [Docket No. 2648] (the "Initial Reply").  For the convenience of the Court, a redline showing the changes to the Initial Reply is attached hereto as Exhibit B.

[3] All capitalized terms used but not defined herein have the meanings given to them in the Motion.

**Appx. 06275**

respect to the offer. The Debtor has also reviewed NexPoint's unsolicited contingent offer and has determined, for the same reasons, that it is not in the Debtor's best interests to engage with NexPoint regarding a sale of the Property.

3.　　NexPoint challenges the Debtor's business judgment, claiming that the Debtor's decision not to engage with it (1) lacks a "sound business justification," (2) "blatantly shows an unjustified prejudice toward NPA supported by conclusory statements and incomplete facts," and (3) is an "abuse of discretion" and "arbitrary." Objection ¶¶ 1, 4, 6, 7. According to NexPoint, because its offer is nominally higher than the Purchaser's offer, the Debtor must agree to sell the Property to it. NexPoint is wrong.

4.　　Preliminarily, and as discussed below, NexPoint – as a potential purchaser – lacks standing to object to the Motion. To the extent NexPoint asserts standing based upon its post-confirmation acquisition of certain disputed employee claims, such standing is tenuous at best and should be viewed through that lens.

5.　　Even assuming NexPoint has standing, its objection to the Motion is frivolous. First, NexPoint's "offer" is contingent and subject to a ten-day "Inspection Period" at the conclusion of which NexPoint would, in its sole discretion, have the option to terminate its agreement to purchase the Property and receive $990,000 of its $1 million earnest money deposit back in full. NPA PSA, pg. 2; § 5. That is not an offer; it is a free option. Second, NexPoint's overarching argument that the Debtor may not take its prior interactions with Mr. Dondero and his related entities into account in determining whether to transact business with them is nonsensical and not supported by the case law. Actions have consequences. Mr. Dondero's repeated failure to abide by Court orders and contractual obligations to the estate, unabashed willingness to assert

DOCS_NY:43784.7 36027/002

**Appx. 06276**

frivolous positions and initiate baseless lawsuits,[4] and his documented history of litigiousness[5] provide ample support for the Debtor's decision not to engage with Mr. Dondero or any of his related entities in the sale of the Property.

6.      As set forth in the Motion and as will be demonstrated in connection with the hearing on the Motion, the risks associated with selling the Property to Mr. Dondero or his related entities are not present in the transaction with the Purchaser.  NexPoint's argument that both transactions are "apples to apples" ignores (a) the fact that NexPoint's offer is contingent on NexPoint's inspection of the Property and (b)(i) the closing risk, (ii) the risk of potential post-sale litigation if the Debtor transacts with Mr. Dondero, and (iii) the risk that if – for whatever reason – NexPoint does not close, the Purchaser will no longer be willing to complete the transaction, let alone on the terms negotiated.  One need look no further than the years of litigation that caused the Debtor's chapter 11 filing and Mr. Dondero's conduct during the case to conclude that ***any*** commercial transaction with Mr. Dondero presents material risk.  The Court should overrule the Objection and grant the Motion.

---

[4] In fact, in just the few weeks since the Debtor was last before this Court, Mr. Dondero has commenced two new actions against the Debtor that lack factual or legal support and that otherwise make no rational sense to pursue given Mr. Dondero's highly speculative and remote economic interest in the Debtor's estate.

***First***, on July 22, 2021, Mr. Dondero, again through his attorneys at Sbaiti & Co. ("Sbaiti"), filed an action in the Northern District of Texas using the Charitable Donor Advised Fund, L.P. (the "DAF Complaint").  *Original Complaint, The Charitable DAF Fund, LP v. Highland Capital Management, L.P.*, Cause No. 3:21-cv-01710-N (N.D. Tex. July 22, 2021).  The DAF Complaint alleges that the DAF is a limited partner in the Highland Multi-Strategy Credit Fund ("Multi-Strat") and asserts claims against the Debtor for mismanagement of Multi-Strat during the pendency of this Bankruptcy Case.  The DAF Complaint is essentially verbatim the complaint filed in the Northern District of Texas by the Sbaiti firm on behalf of Mr. Dondero's family trust, the Dugaboy Investment Trust.  As this Court will remember, that complaint was duplicative of the proof of claim (Claim No. 177) filed by Dugaboy in this Court and was withdrawn within an hour after it was brought to this Court's attention.

***Second***, also on July 22, 2021, Sbaiti, again on behalf of the DAF, initiated an action in Texas state court for pre-suit discovery against the Redeemer Committee alleging, among other things, that the Redeemer Committee's transfer of its claim was in furtherance of a scheme concocted by James P. Seery, Jr., the Debtor's Court-approved chief executive officer and chief restructuring officer, to drain the estate of resources.  *Verified Petition to Take Deposition Before Suit and Seek Documents, In re James Dondero*, Cause No. DC-21-09534 (Tex. July 22, 2021).

[5] A chart showing the litigation caused, directly and indirectly, by Mr. Dondero since October 2020 is attached hereto as Exhibit A.

### THE COURT SHOULD AUTHORIZE THE DEBTOR TO EXERCISE ITS MANAGEMENT RIGHTS TO CAUSE MAPLES TO SELL THE PROPERTY TO THE PURCHASER

**A.** **NexPoint Lacks Standing to Object to the Motion**

7.       NexPoint filed two proofs claim in this case (Claim Nos. 104 and 108) which were later expunged [Docket No. 1233]. NexPoint, however, holds prepetition claims against the estate after acquiring them from five former Debtor employees (acquisitions done solely to manufacture standing to object to the Plan).[6] The Debtor has objected to each of these claims and believes that they are frivolous [Docket No. 2059]. A hearing on those objections is scheduled for November 15, 2021.

8.       Consequently, NexPoint's standing to object to the Purchase Agreement as a prepetition creditor is extremely attenuated as its chances of recovery in this case are, at best, theoretical and speculative. *See In re Kutner*, 3 B.R. 422, 425 (Bankr. N.D. Tex. 1980) (finding that a party had standing only when it had a "pecuniary interest . . . directly affected by the bankruptcy proceeding"); *see also In re Flintkote Co.*, 486 B.R. 99, 114-15 (Bankr. D. Del. 2012), *aff'd.* 526 B.R. 515 (D. Del. 2014) (a claim that is speculative cannot confer party in interest standing).

9.       Further, any claim made by NexPoint that it has standing to object to the sale of the Property as a potential bidder also fails. *In re VCR I, LLC*, 2017 Bankr. LEXIS 3341, at *12 (Bankr. S.D. Miss. Sept. 29, 2017) ("This Court has previously held that a prospective purchaser does not have standing to object to a sale motion."); *see also Squire v. Scher (In re Squire)*, 282

---

[6] One of NexPoint's "claims," acquired from Michael Beispiel, is not a claim at all. Mr. Beispiel did not file a proof of claim nor was Mr. Beispiel's claim scheduled. Any alleged prepetition claim that Mr. Beispiel might have had is therefore barred. *See Order Establishing Bar Dates for Filing Claims and (ii) Approving the Form and Manner of Notice Thereof* [Docket No. 488] ("Any entity that is required to file a Proof of Claim Form but fails to [do] so properly by the applicable Bar Date, shall not be treated as a creditor with respect to such claim for purposes of voting upon, or receiving distributions under, any chapter 11 plan in this case.").

DOCS_NY:43784.7 36027/002

**Appx. 06278**

Fed. Appx. 413, 416 (6th Cir. 2008) ("Frustrated Bidders do not have standing to object to the sale of a property"); 3 COLLIER ON BANKRUPTCY ¶363.02[c] (same).

10.     Finally, Mr. Dondero initially offered to acquire the Property through NPRE, another of his related entities.  NexPoint only submitted its "offer" after the Motion was filed.  The Debtor believes that Mr. Dondero is causing NexPoint, rather than NPRE, to object because Mr. Dondero recognizes that NPRE has no standing as a prepetition creditor[7] and that NexPoint's standing arguments (although flimsy) are better.  These shell games highlight Mr. Dondero's coordination of the efforts amongst his related entities.

**B.**     **The Debtor's Good Faith Decision Not to Engage Mr. Dondero or His Related Entities in Connection with the Sale of the Property Was Justified and a Proper Exercise of the Debtor's Business Judgment**

11.     As discussed in the Motion, section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  As set forth in Rule 6004(f)(1), sales under 11 U.S.C. § 363(b) can be conducted by "private sale or by public auction." Although the Bankruptcy Code does not include a statutory standard for determining when the use or sale of property should be authorized, it is well-established that a debtor may use or sell property of the estate outside the ordinary course of business if there is a good business reason for doing so and the proposed course of action is advantageous to the estate.  *See, e.g.*, *Black v. Shor (In re BNP Petroleum Corp.)*, 642 F. App'x 429, 435 (5th Cir. 2016); *In re Pisces Energy, LLC*, 2009 Bankr. LEXIS 4709, at *18 (Bankr. S.D. Tex. Dec. 21, 2009).

12.     To challenge the Debtor's business judgment, NexPoint cites to case law for the

---

[7] NPRE filed one proof of claim (Claim No. 146), which seeks to novate a limited liability corporation agreement because NPRE believes that there was a mutual mistake in the drafting of such agreement.  The Debtor believes NPRE's claim is frivolous and has objected [Docket No. 1673].

**Appx. 06279**

unremarkable proposition that the goal of any sale is to maximize the proceeds to the estate.[8]

Objection ¶¶ 9-10 (citing *In re Dura Auto. Sys., Inc.*, 2007 Bankr. LEXIS 2764 (Bankr. D. Del. Aug. 15, 2007); *In re Walker County Hosp. Corp.*, 2021 U.S. App. LEXIS 20610 (5th Cir. July 12, 2021)).[9] The Debtor agrees and believes that the process overseen by the Debtor for the sale of the Property did just that: a sale of the Property to Purchaser has maximized value. NexPoint cites no cases – and the Debtor believes none exist – for the proposition that the Debtor must agree to include any party in a sale process and choose the nominally highest bid regardless of other circumstances that exist.

13.     Under 11 U.S.C. § 363(b), a Debtor is tasked with finding the highest ***and best*** offer, not just accepting the offer that is nominally a higher dollar amount on paper. *See, e.g., Cadle Co. v. Mims (In re Moore),* 608 F.3d 253, 263 (5th Cir. 2010)) (a trustee "must demonstrate that the proposed sale price is the highest and best offer, though a bankruptcy court may accept a lower bid in the presence of sound business reasons, such as substantial doubt that the higher bidder can raise the cash necessary to complete the deal"); *In re Tresha-Mob, LLC*, 2019 Bankr. LEXIS 13333, at *4-6 (Bankr. W.D. Tex. 2019) ("Voltaire adopts a one-track value-maximization argument that ignores the mountains of precedent in which trustees, debtors-in-possession, and courts have rejected the highest bid when it was not the 'best bid'");[10] COLLIER ¶ 363.02[4]

---

[8] NexPoint also alleges, without factual support, that NexPoint's "participation in the sale process has resulted in incremental estate recoveries." Objection ¶ 5. This is not true. Neither NPRE's nor NexPoint's "bids" were shown to any other bidder. They were received after a deal had been reached with Purchaser and simply did not factor in to the agreed upon purchase price.

[9] Although *Walker County* has general language in *dicta* concerning 11 U.S.C. § 363(b), that case does not address the requirements of section 363(b) at all. Instead, *Walker County* deals with whether an appeal is statutorily moot by reason of 11 U.S.C. § 363(m).

[10] In *Treshe-Mob* the bankruptcy court rejected NexPoint's premise that the highest bid is always the best bid:

Here, the objection that Voltaire seeks to pursue is not "colorable." In its *Limited Objection*, Voltaire adopts a one-track value-maximization argument that ignores mountains of precedent in which trustees, debtors-in possession, and courts have rejected the highest bid when it was not the "best bid." *See In re Family Christian, LLC, 533 B.R. 600, 627 (Bankr. W.D. Mich. 2015)* ("a debtor must demonstrate that the proposed purchase price is not only the highest offer, ***but the highest and best offer***") (emphasis added).

DOCS_NY:43784.7 36027/002

("Although a trustee normally would be expected to sell to the highest bidder in an auction, there may be sound business reasons to accept a lower bid, particularly in a negotiated sale.").

14.     *In re 160 Royal Palm*, a case from the District Court for the Southern District of Florida which was affirmed by the 11th Circuit, presented a strikingly similar fact pattern to this case.  600 B.R. 119 (S.D. Fla. 2019), *aff'd* 785 Fed. App'x 829 (11th Cir. 2019).  In *160 Royal Palm*, the Debtor attempted to sell an asset at public auction.  That auction failed in substantial part because of the constant barrage of litigation brought by the property's former owner.  *Id.* at 124.  Ultimately, the Debtor entered into a private sale and sought bankruptcy court approval.  The former owner objected arguing it was "an abuse of discretion to eliminate other potential bidders from the sale," which included, of course, the former owner.  *Id.* at 127.  The bankruptcy court rejected that argument, and the district court affirmed, stating "private sales are not unheard of in bankruptcy proceedings" and, in part because the offer was conditioned on a private sale, the Debtor was entitled to pursue a "bird in hand" approach and sell the asset without competing bids. *Id.* at 128.

15.     In so ruling, the District Court also rejected the unsolicited bid made by the former

---

While the bid that brings in the most cash often wins, it is "common knowledge" that the "highest bid is not always the best bid," especially if there are "conditions sufficient to overbalance the difference between the two." *United States v. Chem. Found.*, 5 F.2d 191, 206 (3d Cir. 1925).  The Bankruptcy Code thus affords courts "broad flexibility in determining which of several bidders should be deemed the successful bidder at a *§ 363(b)* sale." *In re After Six, Inc.*, 154 B.R. 876, 882 (Bankr. E.D. Pa. 1993).  As such, courts routinely reject the proposition that reviewing courts or fiduciaries are "duty-bound to mechanically accept a bid with the highest dollar amount." *Lawsky v. Condor Capital Corp.,* 2015 U.S Dist. LEXIS 96347, 2015 WL 4470332, at *9 (S.D.N.Y. July 21, 2015) (internal quotation marks and citations omitted); *see also After Six, 154 B.R.* at 882 ("The Bankruptcy Code, like any law, must be read in its context as a tool of mankind, not a body of edicts to which mankind is a slave irrespective of its interests to the contrary.").

In determining whether the highest bid is the "best bid," the fiduciary and reviewing court must consider factors such as "the risks associated with each bid and the probabilities that the proposed terms will come to fruition" as well as "contingencies, conditions, timing, or other uncertainties in an offer that may render it less appealing." *Lawsky,* 2015 U.S. Dist. LEXIS 96347, 2015 WL 4470332, at *9 (quoting and citing *Family Christian,* 533 B.R. at 622).

*Treshe-Mob*, 2019 Bankr. LEXIS 1333, at *4-6 (emphasis in original).

**Appx. 06281**

owner on the property despite that bid being higher.  The District Court found persuasive, among other things, the fact that the former owner had defaulted on a prior deal with the Debtor and his documented history of litigiousness:

> While the KKPB offer ostensibly *could* provide the estate with an additional million dollars . . . the Court credits the Debtor's concerns about the uncertainty of that offer.  Indeed, the Debtor sought a settlement and sale with KKPB once in the past, which fell through, because KKPB defaulted.
>
> Appellant vigorously argued at oral argument on April 5 that the Debtor should have accepted its higher bid.  However, the Court notes that while a debtor has a duty to "maximize the return to a bankruptcy estate," which "often does require [the] recommendation of the highest monetary bid, *overemphasis of this usual outcome overlooks a fundamental truism, i.e., a 'highest' bid is not always the 'highest and best' bid*.  The inclusion of 'best' in that conjunction is not mere surplusage." . . . .
>
> Appellant also alleges that Debtor only rejected KKPB's higher offer out of personal animus towards KKPB's owner, Mr. Straub.  The Debtor provides a number of explanations for its rejection of the KKPB offer, including, among other things, Mr. Straub's litigiousness. . . .
>
>> Among other things, Mr. Glickstein testified that the potential for about a $1 million increase in the overall sale price was not worth the risk that KK-PB, and its principal, Mr. Glenn Straub, would take action that would greatly increase the costs to the estate.  Mr. Glickstein pointed to specific experience with Mr. Straub in this very case to support [his] view that the potential increase in recovery was fair outweighed by the risk of additional litigation.  Mr. Glickstein stressed the strength of the purchaser identified in the sale motion. . . .
>
> ***
>
> On the record before this Court, the Debtor had real concerns about the viability of the KKPB offer for a variety of reasons — including the fear of additional litigation.  Though Appellant may characterize this as "animus," the avoidance of litigation is a legitimate business objective.  And, Appellant could not provide the Court with a single case where a court disallowed a sale because the debtor had concerns about future litigation.
>
> The Debtor's duty is to maximize value to the creditors, and that maximization includes considerations such as finality, stability, and expeditious resolution of the bankruptcy proceeding.  The LR offer, although 2.5% lower than the KKPB offer, provided that finality and stability.  When asked by the Court at oral argument, Appellant could provide no other reasons why the KKPB offer constituted the

9

> highest and best offer *other than* the purported one-million-dollar additional benefit to the estate. Thus, to force the Debtor to forego the LR offer and subject itself to a public auction would require this Court to inappropriately use its own business judgment in place of the Debtor's, which this Court will not do.

*Id.*, at 129-30 (emphasis in original).

16.     *160 Royal Palm* supports the Debtor's position in this case. On the one hand, the Debtor has the Purchaser who represents finality and stability. The Purchaser has conducted its diligence and, as its inspection period has expired, has no due diligence out, negotiated a purchase agreement that contemplated a private sale not subject to auction, and is ready, willing, and able to close. NexPoint would have the Debtor renege on the commitment to the Purchaser and enter into a contingent agreement with NexPoint that could be terminated (without material consequence) in NexPoint's sole discretion. No reasonable person would terminate an agreement with the Purchaser and enter into an "agreement" with NexPoint under these conditions.

17.     Moreover, even if the agreements were "apples to apples," NexPoint effectively insists that the Debtor ignore its prior dealings with Mr. Dondero and his related entities and disregard their failure to live up to their prior contractual obligations and documented history of litigation, including more than twenty pending litigation matters in this case alone. And for what purpose? So that the Debtor's estate can theoretically receive $350,000 more in sale proceeds? The Debtor and the Committee have decided that any theoretical upside in agreeing to sell the Property to Mr. Dondero or any of his related entities is not worth the risk. The evidence the Debtor will submit in connection with the hearing on the Motion will unequivocally demonstrate that the Debtor's position is justified.

*[Remainder of Page Intentionally Blank]*

DOCS_NY:43784.7 36027/002

**Appx. 06283**

WHEREFORE, for the reasons set forth above and in the Motion, the Debtor respectfully requests that the Court grant the Motion.

Dated: August 3, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)
John A. Morris (NY Bar No. 266326) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:     jpomerantz@pszjlaw.com
             ikharasch@pszjlaw.com
             jmorris@pszjlaw.com
             gdemo@pszjlaw.com
             hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

DOCS_NY:43784.7 36027/002

**Appx. 06284**

# <u>EXHIBIT A</u>

## SUMMARY OF DONDERO AND RELATED ENTITY LITIGATION*

### *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (Bankr. N.D. Tex.)

**9/23/20**   **Debtor's Motion for Entry of an Order Approving Settlement with (a) Acis Capital Management, L.P. and Acis Capital Management GP LLC (Claim No. 23), (b) Joshua N. Terry and Jennifer G. Terry (Claim No. 156), and (c) Acis Capital Management, L.P. (Claim No. 159) and Authorizing Actions Consistent Therewith [D.I. 1087]**

| | | | | |
|---|---|---|---|---|
| **Objectors**: | Dondero [D.I. 1121] | Acis filed a claim for at least $75 million. Acis claim was the result of an involuntary bankruptcy initiated when the Debtor refused to pay an arbitration award and instead transferred assets to become judgment proof. Debtor settled claim for an allowed Class 8 claim of $23 million and approximately $1 million in cash payments. Dondero objected to the settlement alleging that it was unreasonable and constituted vote buying. | The Acis Settlement Motion was approved and Dondero's objection was overruled [D.I. 1302]. | Dondero appealed [D.I. 1347]. The appeal has been briefed and the decision is pending. |

**11/18/20**   **Motion of the Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Authority to Enter into Sub-Servicer Agreements [D.I. 1424]**

| | | | | |
|---|---|---|---|---|
| **Objectors**: | Dondero [D.I. 1447] | The Debtor filed a motion seeking to retain a sub-servicer to assist in its reorganization consistent with the proposed plan. Dondero alleged that the sub-servicer was not needed; was too expensive; and would not be subject to Bankruptcy Court jurisdiction [D.I. 1447]. | Dondero withdrew his objection [D.I. 1460] after forcing the Debtor to incur costs responding [D.I. 1459]. | N/A |

**11/19/20**   **James Dondero's Motion for Entry of an Order Requiring Notice and Hearing for Future Estate Transactions Occurring Outside of the Ordinary Course [D.I. 1439]**

| | | | | |
|---|---|---|---|---|
| **Movant**: | Dondero | Dondero alleged the Debtor sold significant assets in violation of 11 U.S.C. § 363 and without providing Dondero a chance to bid. Dondero requested an emergency hearing on this motion [D.I. 1443]. Dondero filed this motion despite having agreed to the Protocols governing such sales. | Dondero withdrew this motion [D.I. 1622] after the Debtor and the Committee were forced to incur costs responding and preparing for trial [D.I. 1546, 1551]. | N/A |

**12/8/20**   **Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles [D.I. 1522]**

| | | | | |
|---|---|---|---|---|
| **Movants**: | Advisors Funds | Movants argued that the Debtor should be precluded from causing the CLOs to sell assets without Movants' consent. Movants provided no support for this position which directly contradicted the terms of the CLO Agreements; and was filed notwithstanding the Protocols which governed such sales. Movants requested an emergency hearing on this motion [D.I. 1523]. | The motion was denied [D.I. 1605] and was characterized as "frivolous." | N/A |

**\* The following is by way of summary only and does not include discovery disputes or similar matters. Nothing herein shall be deemed or considered a waiver of any rights or an admission of fact. The Debtor reserves all rights that it may have whether in law or in equity.**

| 12/23/20 | *Debtor's Motion for Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 150, 153, 154) and Authorizing Actions Consistent Therewith [D.I. 1625]* | | | | |
|---|---|---|---|---|---|
| **Objectors**: | Dondero [D.I. 1697] Trusts [D.I. 1706] CLOH [D.I. 1707] | The HarbourVest Entities asserted claims in excess of $300 million in connection with an investment in a fund indirectly managed by the Debtor for, among other things, fraud and fraudulent inducement, concealment, and misrepresentation. Debtor settled for an allowed Class 8 claim of $45 million and an allowed Class 9 claim of $35 million. Dondero and the Trusts alleged that the settlement was unreasonable; was a windfall to the HarbourVest Entities; and constituted vote buying. CLOH argued that the settlement could not be effectuated under the operative documents. | CLOH withdrew its objection at the hearing. The settlement was approved and the remaining objections were overruled [D.I. 1788]. | The Trusts appealed [D.I. 1870], and the appeal has been briefed. CLOH recently filed a complaint alleging, among other things, that the settlement was a breach of fiduciary duty and a RICO violation. |
| 1/14/21 | *Motion to Appoint Examiner Pursuant to 11 U.S.C. § 1104(c) [D.I. 1752]* | | | | |
| **Movants**: | Trusts Dondero [D.I. 1756] | Movants sought the appointment of an examiner 14 months after the Petition Date and commencement of Plan solicitation to assess the legitimacy of the claims against the various Dondero Entities and to avoid litigation. Movants requested an emergency hearing on this motion [D.I. 1748]. | The motion was denied [D.I. 1960]. | N/A |
| 1/20/21 | *James Dondero's Objection to Debtor's Proposed Assumption of Executory Contracts and Cure Amounts Proposed in Connection Therewith [D.I. 1784]* | | | | |
| **Objector**: | Dondero | Dondero objected to the Debtor's proposed assumption of the limited partnership agreement governing the Debtor and MSCF [D.I. 1719]. | Dondero withdrew his objection [D.I. 1876] after forcing the Debtor to incur the expense of responding (which included a statement that the Debtor limited partnership agreement was not being assumed). | N/A |

Appx. 06287

| 1/22/20 | _Objections to Fifth Amended Plan of Reorganization_ **[D.I. 1472]**[1] | | | | |
|---|---|---|---|---|---|
| | **Objectors:**[1] | | All objections to the Plan were consensually resolved prior to the confirmation hearing except for the objections of the Dondero Entities and the U.S. Trustee. The U.S. Trustee did not press its objection at confirmation. | All objections were overruled and the Confirmation Order was entered. The Confirmation Order specifically found that Mr. Dondero would "burn the place down" if his case resolution plan was not accepted. | Dondero, the Trusts, the Advisors, and the Funds appealed [D.I. 1957, 1966, 1970, 1972]. The appeal is being briefed. |
| | Dondero [D.I. 1661] | Trusts [D.I. 1667] | | | |
| | Advisors & Funds[2] [D.I. 1670] | Senior Employees [D.I. 1669] | | | |
| | HCRE [D.I. 1673] | CLOH [D.I. 1675] | | | |
| | NexBank Entities [D.I. 1676] | | | | |
| 1/24/21 | _Application for Allowance of Administrative Expense Claim_ **[D.I. 1826]** | | | | |
| | **Movants:** | Advisors | The Advisors seek an administrative expense claim for approximately $14 million they allege they overpaid to the Debtor during the bankruptcy case under the Shared Services Agreement. Notably, the Advisors have not paid $14 million to the Debtor during the bankruptcy. | This matter is currently being litigated. | N/A |
| 2/3/21 | _NexBank's Application for Allowance of Administrative Expense Claim_ **[D.I. 1888]** | | | | |
| | **Movant:** | NexBank | NexBank seeks an administrative expense claim for reimbursement of $2.5 million paid to the Debtor under its Shared Services Agreement and investment advisory agreement. NexBank alleges that it did not receive the services. | This matter is currently being litigated. | N/A |

---

[1] In addition to the Dondero Entities' objections, the following objections were filed: State Taxing Authorities [D.I. 1662]; Former Employees [D.I. 1666]; IRS [D.I. 1668]; US Trustee [D.I. 1671]; Daugherty [D.I. 1678]. These objections were either resolved prior to confirmation or not pressed at confirmation.

[2] In addition to the Funds, this objection was joined by: Highland Fixed Income Fund, Highland Funds I and its series, Highland Funds II and its series, Highland Healthcare Opportunities Fund, Highland Merger Arbitrate Fund, Highland Opportunistic Credit Fund, Highland Small-Cap Equity Fund, Highland Socially Responsible Equity Fund, Highland Total Return Fund, Highland/iBoxx Senior Loan ETF, NexPoint Real Estate Strategies Fund, NexPoint Real Estate Finance Inc., NexPoint Real Estate Capital, LLC, NexPoint Residential Trust, Inc., NexPoint Hospitality Trust, NexPoint Real Estate Partners, LLC, NexPoint Multifamily Capital Trust, Inc., VineBrook Homes Trust, Inc., NexPoint Real Estate Advisors, L.P., NexPoint Real Estate Advisors II, L.P., NexPoint Real Estate Advisors III, L.P., NexPoint Real Estate Advisors IV, L.P., NexPoint Real Estate Advisors V, L.P., NexPoint Real Estate Advisors VI, L.P., NexPoint Real Estate Advisors VII, L.P., and NexPoint Real Estate Advisors VIII, L.P. [D.I. 1677].

Appx. 06288

| 2/8/21 | *James Dondero Motion for Status Conference* [D.I. 1914] | | | | |
|---|---|---|---|---|---|
| | **Movant:** | Dondero | Dondero requested a chambers conference to convince the Court to delay confirmation of the Plan to allow for continued negotiation of the "pot plan." | The request was denied [D.I. 1929] after the Debtor and Committee informally objected. | N.A. |

| 2/28/21 | *Motions for Stay Pending Appeal* | | | | |
|---|---|---|---|---|---|
| | **Movants:** Dondero [D.I. 1973] Funds [D.I. 1967] | Advisors [D.I. 1955] Trusts [D.I. 1971] | The only parties requesting a stay pending appeal were the Dondero Entities. They alleged a number of potential harms to the Dondero Entities if a stay was not granted and offered to post a $1 million bond. | Relief was denied [D.I. 2084, 2095] and a number of the Movants' arguments were found to be frivolous. | Movants sought a stay pending appeal from this Court. |

| 3/18/21 | ***James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, The Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware Limited Liability Company's Motion to Recuse Pursuant to 28 U.S.C. § 455 [D.I. 2060]*** | | | | |
|---|---|---|---|---|---|
| | **Movants:** | Dondero Advisors Trusts HCRE | Dondero argued that Judge Jernigan should recuse herself as her rulings against him and his related entities were evidence of her bias. | Judge Jernigan denied the motion without briefing from any other party on March 23, 2021 [D.I. 2083]. | The Movants appealed [D.I. 2149]. The opening brief and the Debtor's response have been filed. |

| 4/15/21 | ***Debtor's Motion for Entry of an Order Approving Settlement with UBS Securities LLC and UBS AG London Branch and Authorizing Actions Consistent Therewith [D.I. 2199]*** | | | | |
|---|---|---|---|---|---|
| | **Movants:** | Debtor | UBS Securities LLC and UBS AG London Branch (collectively, "UBS") asserted claims against the Debtor in excess of $1 billion arising from two Debtor-managed funds' breach of contract in 2008. The settlement resolved ten plus years of litigation but had to be renegotiated when the Debtor discovered that the Dondero-controlled Debtor had caused the funds to transfer cash and securities with a face amount of over $300 million to a Cayman-based Dondero controlled entity in 2017, presumably to thwart UBS's ability to collect on its judgment. | The only parties to object were Dondero [D.I. 2295] and Dugaboy [D.I. 2268, 2293]. The Debtor filed an omnibus reply on May 14, 2021 [D.I. 2308]. UBS also filed a reply [D.I. 2310]. The UBS settlement was approved on May 24, 2021 [D.I. 2389]. | The objectors appealed the settlement. |

Appx. 06289

| 4/23/21 | **_Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court Orders_** **[D.I. 2247]** | | | |
|---|---|---|---|---|
| | **Movants**: | Debtor | Debtor filed a motion seeking an order to show cause as to why Dondero, CLOH, DAF, and their counsel should not be held in contempt of court for willingly violating two final Bankruptcy Court orders. The Bankruptcy Court entered an order to show cause on April 29, 2021 [D.I. 2255] and set an in-person hearing for June 8, 2021. | Dondero, CLOH, the DAF, Mark Patrick (allegedly the person in control of the DAF), and their counsel filed responses to the order to show cause on May 14, 2021 [D.I. 2309, 2312, 2313]. The Debtor filed its reply on May 21, 2021 [D.I. 2350]. | A hearing was held on June 8, 2021. The Court stated that she would find contempt but no formal order has been entered. |
| 4/23/21 | **_Motion for Modification of Order Authorizing Appointment of James P. Seery, Jr. Due to Lack of Subject Matter Jurisdiction_ [D.I. 2242]** | | | |
| | **Movants**: | Debtor | DAF and CLOH filed a motion asking the Bankruptcy Court to modify the July 16, 2020, order appointing Seery as the Debtor's CEO/CRO alleging the Bankruptcy Court lacked subject matter jurisdiction. | On May 14, 2021, the Debtor filed a response [D.I. 2311] stating that DAF and CLOH's motion was a collateral attack and barred by res judicata, among other things. The Committee joined in the Debtor's response [D.I. 2315]. DAF and CLOH filed their reply on May 21, 2021 [D.I. 2347]. The Motion was denied on June 25, 2021 [D.I. 2506] | DAF and CLOH have appealed. [D.I. 2513] |
| 4/20/21 | **_Debtor's Motion for Entry of an Order (i) Authorizing the Debtor to (a) Enter into Exit Financing Agreement in Aid of Confirmed Chapter 11 Plan and (b) Incur and Pay Related Fees and Expenses and (ii) Granting Related Relief_ [D.I. 2229]** | | | |
| | **Movants**: | Debtor | The Debtor filed a motion seeking authority to enter into an exit financing facility. The facility was required, in part, to fund the increased costs to the estate from Dondero's litigiousness. Dugaboy filed two objections to the motion alleging, among other things, that there was no basis for the financing [D.I. 2403; 2467] | The motion was granted on June 30 [D.I. 2503] | N/A |

| 4/29/21 | *Motion to Compel Compliance with Bankruptcy Rule 2015.3* **[D.I. 2256]** | | | |
|---|---|---|---|---|
| **Movants:** | Trusts | The Trusts filed a motion on negative notice seeking to compel the Debtor to file certain reports under Rule 2015.3 [D.I. 2256]. The Debtor opposed that motion on May 20, 2021 [D.I. 2341], which was joined by the Committee [D.I. 2343]. The Trusts filed their reply on June 8, 2021 [D.I. 2424] | A hearing was held on June 10, 2021 [D.I. 2442] and the motion was adjourned. | N/A |

### *Highland Capital Management, L.P. v. James D. Dondero*, Adv. Proc. No. 20-03190-sgj (Bankr. N.D. Tex.)

| 12/7/20 | *Plaintiff Highland Capital Management, L.P.'s Emergency Motion for a Temporary Restraining Order and Preliminary Injunction against Mr. James Dondero* **[D.I. 2]** | | | |
|---|---|---|---|---|
| **Movant**: | Debtor | The Debtor commenced an adversary proceeding seeking an injunction against Dondero. Dondero actively interfered with the management of the estate. Seery had instructed Debtor employees to sell certain securities on behalf of the CLOs. Dondero disagreed with Seery's direction and intervened to prevent these sales from being executed. Dondero also threatened Seery via text message and sent threatening emails to other Debtor employees. | A TRO was entered on December 10 [D.I. 10], which prohibited Dondero from, among other things, interfering with the Debtor's estate and communicating with Debtor employees unless it related to the Shared Services Agreements. A preliminary injunction was entered on January 12 after an exhaustive evidentiary hearing [D.I. 59]. This matter was resolved consensually by order entered May 18, 2021 [D.I. 182], which enjoined Dondero from certain conduct until the close of the Bankruptcy Case. | Dondero appealed to the District Court, which declined to hear the interlocutory appeal. Dondero is seeking a writ of mandamus from the Fifth Circuit. The writ of mandamus was withdrawn as part of the settlement. |

Appx. 06291

| 1/7/21 | *Plaintiff's Motion for an Order Requiring Mr. James Dondero to Show Cause Why He Should Not Be Held in Civil Contempt for Violating the TRO* **[D.I. 48]** | | |
|---|---|---|---|
| | **Movant:** Debtor | In late December, the Debtor discovered that Dondero had violated the TRO in multiple ways, including by destroying his cell phone, his text messages, and conspiring with the Debtor's then general counsel and assistant general counsel[3] to coordinate offensive litigation against the Debtor. The hearing on this matter was delayed and there was litigation on evidentiary issues, among other things. An extensive evidentiary hearing was held on March 22. | The Court entered an order finding Mr. Dondero in contempt of court on June 7, 2021 [D.I. 190] | Mr. Dondero has appealed [D.I. 212] |

**Highland Capital Management, L.P. v. Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., Highland Income Fund, NexPoint Strategic Opportunities Fund, NexPoint Capital, Inc., and CLO Holdco, Ltd., Adv. Proc. No. 21-03000-sgj (Bankr. N.D. Tex.)**

| 1/6/21 | *Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction Against Certain Entities Owned and/or Controlled by Mr. James Dondero* **[D.I. 2]** | | |
|---|---|---|---|
| | **Movant:** Debtor | In late December, the Debtor received a number of threatening letters from the Funds, the Advisors, and CLOH regarding the Debtor's management of the CLOs. These letters reiterated the arguments made by these parties in their motion filed on December 8, which the Court concluded were "frivolous." The relief requested by the Debtor was necessary to prevent the Funds, Advisors, and CLOH's improper interference in the Debtor's management of its estate. | The parties agreed to the entry of a temporary restraining order on January 13 [D.I. 20]. A hearing on a preliminary injunction began on January 26 and was continued to May 7. The TRO was further extended with the parties' consent [D.I. 64]. The Debtor reached an agreement with CLOH and dismissed CLOH from the adversary proceeding. The Debtor has reached an agreement in principle with the Funds and Advisors that settled this matter, and filed its 9019 motion. | N/A |

---

[3] As a result of this conduct, among other things, the Debtor terminated its general counsel and assistant general counsel for cause on January 5, 2021.

Appx. 06292

### *Highland Capital Management, L.P. v. Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.*, Adv. Proc. No. 21-03010-sgj (Bankr. N.D. Tex.)

| | | | | |
|---|---|---|---|---|
| 2/17/21 | *Debtor's Emergency Motion for a Mandatory Injunction Requiring the Advisors to Adopt and Implement a Plan for the Transition of Services by February 28, 2021* [D.I. 2] | | | |
| | **Movant**: | Debtor | The Debtor's Plan called for a substantial reduction in its work force. As part of this process, the Debtor terminated the Shared Services Agreements and began negotiating a transition plan with the Advisors that would enable them to continue providing services to the retail funds they managed without interruption. The Debtor was led to believe that without the Debtor's assistance the Advisors would not be able to provide services to their retail funds, and, although the Debtor had proceed appropriately, the Debtor was concerned it would be brought into any action brought by the SEC against the Advisors if they could not service the funds. The Debtor brought this action to force the Advisors to formulate a transition plan and to avoid exposure to the SEC, among others. | At a daylong hearing, the Advisors testified that they had a transition plan in place. An order was entered on February 24 [D.I. 25] making factual findings and ruling that the injunction was moot. The parties recently entered into a stipulation regarding discovery for the remaining breach of contract claim. This action was consolidated with the Advisors' admin claim since both matters arise from Shared Services Agreements. | N/A |

### *Highland Capital Management, L.P. v. James Dondero*, Adv. Proc. No. 21-03003-sgj (Bankr. N.D. Tex.)

| | | | | |
|---|---|---|---|---|
| 1/22/21 | *Complaint for (i) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate* [D.I. 1] | | | |
| | **Movant**: | Debtor | Dondero borrowed $8.825 million from Debtor pursuant to a demand note. Dondero did not pay when the note was called and the Debtor was forced to file an adversary. | The parties are currently conducting discovery. The parties entered into a global revised scheduling agreement for all five notes litigations, which is being finalized and pending filing. | N/A |
| 4/15/21 | *James Dondero's Motion and Memorandum of Law in Support to Withdraw the Reference* [D.I. 21] | | | |
| | **Movant**: | Dondero | Three months after the complaint was filed Dondero filed a motion to withdraw the bankruptcy reference and a motion to stay the adversary pending resolution of his motion [D.I. 22]. | A hearing was held on May 25, 2021, and a stay was granted until mid-July 2021. The Court transmitted a report and recommendation on July 7 [D.I. 69]. Dondero filed a limited objection to the R&R. | N/A |

**Appx. 06293**

***Highland Capital Management, L.P. v. Highland Capital Management Fund Advisors, L.P.***, **Adv. Proc. No. 21-03004-sgj (Bankr. N.D. Tex.)**

| 1/22/21 | *Complaint for (i) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate* **[D.I. 1]** | | | | |
|---|---|---|---|---|---|
| | **Movant**: | Debtor | HCMFA borrowed $7.4 million from Debtor pursuant to a demand note. Dondero did not pay when the note was called and the Debtor was forced to file an adversary. | The parties are currently conducting discovery. The parties entered into a global revised scheduling agreement for all five notes litigations, which is being finalized and pending filing. | N/A |
| 4/13/21 | *Defendants Motion to Withdraw the Reference* **[D.I. 20]** | | | | |
| | **Movant**: | HCMFA | Three months after the complaint was filed HCMFA filed a motion to withdraw the bankruptcy reference. | A hearing was held on May 25, 2021. The Court transmitted a R&R on July 9 [D.I. 52]. HCMFA filed a limited objection to the R&R. | N/A |

***Highland Capital Management, L.P. v. NexPoint Advisors, L.P.***, **Adv. Proc. No. 21-03005-sgj (Bankr. N.D. Tex.)**

| 1/22/21 | *Complaint for (i) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate* **[D.I. 1]** | | | | |
|---|---|---|---|---|---|
| | **Movant**: | Debtor | NPA borrowed approximately $30.75 million under an installment note. NPA did not pay the note when and the Debtor was forced to file an adversary. | The parties are currently conducting discovery. The parties entered into a global revised scheduling agreement for all five notes litigations, which is being finalized and pending filing. | N/A |
| 4/13/21 | *Defendants Motion to Withdraw the Reference* **[D.I. 19]** | | | | |
| | **Movant**: | NPA | Three months after the complaint was filed HCMFA filed a motion to withdraw the bankruptcy reference. | A hearing was held on May 25, 2021. The Court transmitted a R&R on July 9 [D.I. 42]. NPA filed a limited objection to the R&R. The District Court adopted the R&R. [D. Ct. Dkt No. 10]. | N/A |

Appx. 06294

### *Highland Capital Management, L.P. v. Highland Capital Management Services, Inc.*, Adv. Proc. No. 21-03006-sgj (Bankr. N.D. Tex.)

| 1/22/21 | *Complaint for (i) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate* [D.I. 1] | | | |
|---|---|---|---|---|
| | **Movant**: | Debtor | Highland Capital Management Services, Inc. ("HCMS"), borrowed $900,000 in demand notes and approximately $20.5 million in installment notes. HCMS did not pay the notes when due and the Debtor was forced to file an adversary. | The parties are currently conducting discovery. The parties entered into a global revised scheduling agreement for all five notes litigations, which is being finalized and pending filing. | N/A |
| 6/3/21 | *Defendants Motion to Withdraw the Reference* [D.I. 19] | | | |
| | **Movant**: | HCMS | Five months after the complaint was filed HCMS filed a motion to withdraw the reference. | A hearing was held on July 8, 2021. The Court issued its R&R on July 15, 2021 [D. I. 52]. HCMS filed a limited objection to the R&R. the District Court adopted the R&R. [D. Ct. Docket No. 5]. HCMS filed a Motion for Reconsideration of the District Court's Order adopting R&R [D. Ct. Docket No. 8]. | |

### *Highland Capital Management, L.P. v. HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC)*, Adv. Proc. No. 21-03007-sgj (Bankr. N.D. Tex.)

| 1/22/21 | *Complaint for (i) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate* [D.I. 1] | | | |
|---|---|---|---|---|
| | **Movant**: | Debtor | HCRE borrowed $4.25 million in demand notes and approximately $6.05 million in installment notes. HCRE did not pay the notes when due and the Debtor was forced to file an adversary. | The parties are currently conducting discovery. The parties entered into a global revised scheduling agreement for all five notes litigations, which is being finalized and pending filing. | N/A |

**Appx. 06295**

| 6/3/21 | _Defendants Motion to Withdraw the Reference_ **[D.I. 20]** | | | |
|--------|---------|------|----------------------|----------------------|
| **Movant** | HCMS | Five months after the complaint was filed HCMS filed a motion to withdraw the reference. | A hearing was held on July 8, 2021. The Court issued its R&R on July 15, 2021 [D.I. 47]. HCRE filed a limited objection to the R&R [D. Ct. Docket No. 5]. | |

### _Charitable DAF Fund, L.P., and CLO Holdco, Ltd., v. Highland Capital Management, L.P., Highland HCF Advisor, Ltd., and Highland CLO Funding, Ltd.,_ Case No. 21-cv-00842-B (N.D. Tex. April 12, 2021)

| 4/12/21 | _Original Complaint_ | | | |
|---------|---------|------|---------|-----|
| **Movants**: | DAF CLOH | Movants allege that the Debtor and Seery violated SEC rules, breached fiduciary duties, engaged in self-dealing, and violated RICO in connection with its settlement with the HarbourVest Entities. The Movants brought this complaint despite CLOH having objected to the HarbourVest settlement; never raised this issue; and withdrawn its objection. The Debtor believes the complaint is frivolous and represents a collateral attack on the order approving the HarbourVest settlement. The Debtor will take all appropriate actions. | On May 19, the Debtor filed a motion to enforce the order of reference seeking to have the case referred to the Bankruptcy Court [D.I. 22]. On May 27, 2019, the Debtor filed a motion to dismiss the complaint [D.I. 26]. Briefing is complete for both motions, and decisions are pending. | N/A |
| 4/19/21 | _Plaintiff's Motion for Leave to File First Amended Complaint in the District Court_ | | | |
| **Movants**: | DAF CLOH | Movants filed a motion seeking leave from this Court to add Seery as a defendant and to seek, in this Court, a reconsideration of two final Bankruptcy Court orders. | This Court denied the motion but with leave to refile. | N/A |

**Appx. 06296**

### *PCMG Trading Partners XXIII, L.P. v. Highland Capital Management, L.P.*, Case No. 21-cv-01169-N (N.D. Tex. May 21, 2021)

4/12/21      *Original Complaint*

| | | | | |
|---|---|---|---|---|
| **Movants**: | PCMG Trading Partners XXIII, L.P. | Movants allege that the Debtor violated SEC rules and breached fiduciary duties by causing one of its managed investment vehicles to sell certain assets. The Movant is an entity owned and controlled by Dondero, which had less than a 0.05% interest in the investment vehicle at issue and is no longer an investor. The Debtor believes the complaint is frivolous.  The Debtor will take all appropriate actions. | The Complaint was recently filed and the Debtor has not yet been served. The Debtor will respond appropriately. | N/A |

### *The Dugaboy Investment Trust v. Highland Capital Management, L.P.*, Case No. 21-cv-01479-S (N.D. Tex. June 23, 2021)

6/23/21      *Original Complaint*

| | | | | |
|---|---|---|---|---|
| **Movants**: | Dugaboy | Dugaboy alleges that the Debtor violated SEC rules and breached fiduciary duties by causing one of its managed investment vehicles to sell certain assets. Dugaboy is Dondero's family trust with less than a 2% interest in the vehicle. Dugaboy's allegations in the complaint are duplicative of allegations it made in proofs of claim filed in the Bankruptcy Court. | The Complaint was withdrawn after the Debtor informed the Bankruptcy Court of the filing. | N/A |

### *The Charitable DAF Fund, LP v. Highland Capital Management, L.P.*, Case No. 21-cv-01710-N (N.D. Tex. July 22, 2021)

7/22/21      *Original Complaint*

| | | | | |
|---|---|---|---|---|
| **Movants**: | Dugaboy | DAF alleges that the Debtor violated SEC rules and breached fiduciary duties by causing one of its managed investment vehicles to sell certain assets. DAF's allegations in the complaint are duplicative of allegations Dugaboy made in proofs of claim filed in the Bankruptcy Court and in its complaint filed in the Northern District of Texas. | The Complaint has not yet been served.    The Debtor will respond appropriately. | N/A |

**Appx. 06297**

### *In re James Dondero, Petitioner,* **Cause No. DC-21-09534 (Tex. July 22, 2021)**

**7/22/21**    <u>*Original Complaint*</u>

| | | | | |
|---|---|---|---|---|
| **Movants**: | Dondero | Dondero seeks pre-suit discovery from Farallon Capital, a purchaser of certain claims in this case, and the Crusader Fund.  Dondero alleges that Farallon breached certain U.S. Trustee requirements when it purchased those claims.   Dondero also alleges that Farallon purchased those claims because of its relationship to Mr. Seery and that Mr. Seery was leveraging his relationship with Farallon to ensure that he remains in control of the Debtor. | The pre-suit discovery has not yet been served.  The Debtor will respond appropriately. | N/A |

**Appx. 06298**

# <u>EXHIBIT B</u>

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Debtor. | **Re: Docket Nos. 2535, 2621, 2648** |

**DEBTOR'S AMENDED REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF CERTAIN PROPERTY AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby submits this amended reply (the "Reply")[2] (a) in response to the *Objection to the Debtor's Motion for Entry of an Order (i) Authorizing the Sale of Certain Property and (ii) Granting Related Relief* [Docket No. 2621] (the "Objection") filed by NexPoint Advisors, L.P. ("NexPoint") and (b) in support of the *Motion of the Debtor for Entry of an Order (i) Authorizing the Sale of Certain Property and (ii) Granting Related Relief* [Docket No. 2535] (the "Motion").[23]  In further support of the Motion, the Debtor respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      Through the Motion, the Debtor seeks authority to exercise its Management Rights to cause Maple Holdings, its wholly owned subsidiary, to sell the Property to the Purchaser pursuant to the terms of the Purchase Agreement.  After a thorough marketing process, the Debtor determined that the Purchaser's offer for the Property was the highest and otherwise best offer and that conducting a private sale was in the best interests of its estate.  The Committee supports the Debtor's exercise of the Management Rights to cause a sale of the Property to the Purchaser – notwithstanding the competing "offer" presented by NexPoint – and no true creditor or party-in-interest has objected.

2.      Not surprisingly, the only objecting party is NexPoint, an entity owned and controlled by James Dondero.  During the marketing process, the Debtor received an unsolicited offer to purchase the Property from NPRE, another entity owned and controlled by Mr. Dondero.

---

[2] The Debtor is filing this amended Reply to clarify an issue initially raised in the *Debtor's Reply in Support of Its Motion for Entry of an Order (i) Authorizing the Sale of Certain Property and (ii) Granting Related Relief* [Docket No. 2648] (the "Initial Reply").  For the convenience of the Court, a redline showing the changes to the Initial Reply is attached hereto as Exhibit B.

[23] All capitalized terms used but not defined herein have the meanings given to them in the Motion.

DOCS_NY:~~43784.6 36027/002~~43784.7 36027/002

**Appx. 06301**

For the reasons discussed in the Motion, the Debtor determined not to engage with NPRE with respect to the offer.  The Debtor has also reviewed NexPoint's unsolicited contingent offer and has determined, for the same reasons, that it is not in the Debtor's best interests to engage with NexPoint regarding a sale of the Property.

3.      NexPoint challenges the Debtor's business judgment, claiming that the Debtor's decision not to engage with it (1) lacks a "sound business justification," (2) "blatantly shows an unjustified prejudice toward NPA supported by conclusory statements and incomplete facts," and (3) is an "abuse of discretion" and "arbitrary."  Objection ¶¶ 1, 4, 6, 7.  According to NexPoint, because its offer is nominally higher than the Purchaser's offer, the Debtor must agree to sell the Property to it.  NexPoint is wrong.

4.      Preliminarily, and as discussed below, NexPoint – as a potential purchaser – lacks standing to object to the Motion.  To the extent NexPoint asserts standing based upon its post-confirmation acquisition of certain disputed employee claims, such standing is tenuous at best and should be viewed through that lens.

5.      Even assuming NexPoint has standing, its objection to the Motion is frivolous. First, NexPoint's "offer" is contingent and subject to a ten-day "Inspection Period" at the conclusion of which NexPoint would, in its sole discretion, have the option to terminate its agreement to purchase the Property and receive $990,000 of its $1 million earnest money deposit back in full.  NPA PSA, pg. 2; § 5.  That is not an offer; it is a free option.  Second, NexPoint's overarching argument that the Debtor may not take its prior interactions with Mr. Dondero and his related entities into account in determining whether to transact business with them is nonsensical and not supported by the case law.  Actions have consequences.  Mr. Dondero's repeated failure to abide by Court orders and contractual obligations to the estate, unabashed

3

**Appx. 06302**

willingness to assert frivolous positions and initiate baseless lawsuits,[34] and his documented history of litigiousness[45] provide ample support for the Debtor's decision not to engage with Mr. Dondero or any of his related entities in the sale of the Property.

6.     As set forth in the Motion and as will be demonstrated in connection with the hearing on the Motion, the risks associated with selling the Property to Mr. Dondero or his related entities are not present in the transaction with the Purchaser. NexPoint's argument that both transactions are "apples to apples" ignores (a) the fact that NexPoint's offer is contingent on NexPoint's inspection of the Property and (b)(i) the closing risk, (ii) the risk of potential post-sale litigation if the Debtor transacts with Mr. Dondero, and (iii) the risk that if – for whatever reason – NexPoint does not close, the Purchaser will no longer be willing to complete the transaction, let alone on the terms negotiated. One need look no further than the years of litigation that caused the Debtor's chapter 11 filing and Mr. Dondero's conduct during the case to conclude that *any* commercial transaction with Mr. Dondero presents material risk. The Court should overrule the Objection and grant the Motion.

---

[34] In fact, in just the few weeks since the Debtor was last before this Court, Mr. Dondero has commenced two new actions against the Debtor that lack factual or legal support and that otherwise make no rational sense to pursue given Mr. Dondero's highly speculative and remote economic interest in the Debtor's estate.

*First*, on July 22, 2021, Mr. Dondero, again through his attorneys at Sbaiti & Co. ("Sbaiti"), filed an action in the Northern District of Texas using the Charitable Donor Advised Fund, L.P. (the "DAF Complaint"). *Original Complaint, The Charitable DAF Fund, LP v. Highland Capital Management, L.P.*, Cause No. 3:21-cv-01710-N (N.D. Tex. July 22, 2021). The DAF Complaint alleges that the DAF is a limited partner in the Highland Multi-Strategy Credit Fund ("Multi-Strat") and asserts claims against the Debtor for mismanagement of Multi-Strat during the pendency of this Bankruptcy Case. The DAF Complaint is essentially verbatim the complaint filed in the Northern District of Texas by the Sbaiti firm on behalf of Mr. Dondero's family trust, the Dugaboy Investment Trust. As this Court will remember, that complaint was duplicative of the proof of claim (Claim No. 177) filed by Dugaboy in this Court and was withdrawn within an hour after it was brought to this Court's attention.

*Second*, also on July 22, 2021, Sbaiti, again on behalf of the DAF, initiated an action in Texas state court for pre-suit discovery against the Redeemer Committee alleging, among other things, that the Redeemer Committee's transfer of its claim was in furtherance of a scheme concocted by James P. Seery, Jr., the Debtor's Court-approved chief executive officer and chief restructuring officer, to drain the estate of resources. *Verified Petition to Take Deposition Before Suit and Seek Documents, In re James Dondero*, Cause No. DC-21-09534 (Tex. July 22, 2021).

[45] A chart showing the litigation caused, directly and indirectly, by Mr. Dondero since October 2020 is attached hereto as Exhibit A.

**Appx. 06303**

**THE COURT SHOULD AUTHORIZE THE DEBTOR TO EXERCISE ITS MANAGEMENT RIGHTS TO CAUSE MAPLES TO SELL THE PROPERTY TO THE PURCHASER**

A.     **NexPoint Lacks Standing to Object to the Motion**

7.      NexPoint filed two proofs claim in this case (Claim Nos. 104 and 108) which were later expunged [Docket No. 1233]. NexPoint, however, holds prepetition claims against the estate after acquiring them from five former Debtor employees (acquisitions done solely to manufacture standing to object to the Plan).[56] The Debtor has objected to each of these claims and believes that they are frivolous [Docket No. 2059]. A hearing on those objections is scheduled for November 15, 2021.

8.      Consequently, NexPoint's standing to object to the Purchase Agreement as a prepetition creditor is extremely attenuated as its chances of recovery in this case are, at best, theoretical and speculative. *See In re Kutner*, 3 B.R. 422, 425 (Bankr. N.D. Tex. 1980) (finding that a party had standing only when it had a "pecuniary interest . . . directly affected by the bankruptcy proceeding"); *see also In re Flintkote Co.*, 486 B.R. 99, 114-15 (Bankr. D. Del. 2012), *aff'd.* 526 B.R. 515 (D. Del. 2014) (a claim that is speculative cannot confer party in interest standing).

9.      Further, any claim made by NexPoint that it has standing to object to the sale of the Property as a potential bidder also fails. *In re VCR I, LLC*, 2017 Bankr. LEXIS 3341, at *12 (Bankr. S.D. Miss. Sept. 29, 2017) ("This Court has previously held that a prospective purchaser does not have standing to object to a sale motion."); *see also Squire v. Scher (In re Squire)*, 282

---

[56] One of NexPoint's "claims," acquired from Michael Beispiel, is not a claim at all. Mr. Beispiel did not file a proof of claim nor was Mr. Beispiel's claim scheduled. Any alleged prepetition claim that Mr. Beispiel might have had is therefore barred. *See Order Establishing Bar Dates for Filing Claims and (ii) Approving the Form and Manner of Notice Thereof* [Docket No. 488] ("Any entity that is required to file a Proof of Claim Form but fails to [do] so properly by the applicable Bar Date, shall not be treated as a creditor with respect to such claim for purposes of voting upon, or receiving distributions under, any chapter 11 plan in this case.").

**Appx. 06304**

Fed. Appx. 413, 416 (6th Cir. 2008) ("Frustrated Bidders do not have standing to object to the sale of a property"); 3 COLLIER ON BANKRUPTCY ¶363.02[c] (same).

10.    Finally, Mr. Dondero initially offered to acquire the Property through NPRE, another of his related entities.  NexPoint only submitted its "offer" after the Motion was filed. The Debtor believes that Mr. Dondero is causing NexPoint, rather than NPRE, to object because Mr. Dondero recognizes that NPRE has no standing as a prepetition creditor[67] and that NexPoint's standing arguments (although flimsy) are better.  These shell games highlight Mr. Dondero's coordination of the efforts amongst his related entities.

**B.    The Debtor's Good Faith Decision Not to Engage Mr. Dondero or His Related Entities in Connection with the Sale of the Property Was Justified and a Proper Exercise of the Debtor's Business Judgment**

11.    As discussed in the Motion, section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  As set forth in Rule 6004(f)(1), sales under 11 U.S.C. § 363(b) can be conducted by "private sale or by public auction."  Although the Bankruptcy Code does not include a statutory standard for determining when the use or sale of property should be authorized, it is well-established that a debtor may use or sell property of the estate outside the ordinary course of business if there is a good business reason for doing so and the proposed course of action is advantageous to the estate.  *See, e.g.*, *Black v. Shor (In re BNP Petroleum Corp.)*, 642 F. App'x 429, 435 (5th Cir. 2016); *In re Pisces Energy, LLC*, 2009 Bankr. LEXIS 4709, at *18 (Bankr. S.D. Tex. Dec. 21, 2009).

12.    To challenge the Debtor's business judgment, NexPoint cites to case law for the

---

[67] NPRE filed one proof of claim (Claim No. 146), which seeks to novate a limited liability corporation agreement because NPRE believes that there was a mutual mistake in the drafting of such agreement.  The Debtor believes NPRE's claim is frivolous and has objected [Docket No. 1673].

unremarkable proposition that the goal of any sale is to maximize the proceeds to the estate.[78] Objection ¶¶ 9-10 (citing *In re Dura Auto. Sys., Inc.*, 2007 Bankr. LEXIS 2764 (Bankr. D. Del. Aug. 15, 2007); *In re Walker County Hosp. Corp.*, 2021 U.S. App. LEXIS 20610 (5th Cir. July 12, 2021)).[89] The Debtor agrees and believes that the process overseen by the Debtor for the sale of the Property did just that: a sale of the Property to Purchaser has maximized value. NexPoint cites no cases – and the Debtor believes none exist – for the proposition that the Debtor must agree to include any party in a sale process and choose the nominally highest bid regardless of other circumstances that exist.

13.     Under 11 U.S.C. § 363(b), a Debtor is tasked with finding the highest **and best** offer, not just accepting the offer that is nominally a higher dollar amount on paper. *See, e.g., Cadle Co. v. Mims (In re Moore),* 608 F.3d 253, 263 (5th Cir. 2010)) (a trustee "must demonstrate that the proposed sale price is the highest and best offer, though a bankruptcy court may accept a lower bid in the presence of sound business reasons, such as substantial doubt that the higher bidder can raise the cash necessary to complete the deal"); *In re Tresha-Mob, LLC*, 2019 Bankr. LEXIS 13333, at *4-6 (Bankr. W.D. Tex. 2019) ("Voltaire adopts a one-track value-maximization argument that ignores the mountains of precedent in which trustees, debtors-in-possession, and courts have rejected the highest bid when it was not the 'best bid'");[910] COLLIER ¶ 363.02[4] ("Although a trustee normally would be expected to sell to the

---

[78] NexPoint also alleges, without factual support, that NexPoint's "participation in the sale process has resulted in incremental estate recoveries." Objection ¶ 5. This is not true. Neither NPRE's nor NexPoint's "bids" were shown to any other bidder. They were received after a deal had been reached with Purchaser and simply did not factor in to the agreed upon purchase price.

[89] Although *Walker County* has general language in *dicta* concerning 11 U.S.C. § 363(b), that case does not address the requirements of section 363(b) at all. Instead, *Walker County* deals with whether an appeal is statutorily moot by reason of 11 U.S.C. § 363(m).

[910] In *Treshe-Mob* the bankruptcy court rejected NexPoint's premise that the highest bid is always the best bid:

Here, the objection that Voltaire seeks to pursue is not "colorable." In its *Limited Objection*, Voltaire adopts a one-track value-maximization argument that ignores mountains of precedent in which trustees,

highest bidder in an auction, there may be sound business reasons to accept a lower bid, particularly in a negotiated sale.").

14.    *In re 160 Royal Palm*, a case from the District Court for the Southern District of Florida which was affirmed by the 11th Circuit, presented a strikingly similar fact pattern to this case.  600 B.R. 119 (S.D. Fla. 2019), *aff'd* 785 Fed. App'x 829 (11th Cir. 2019).  In *160 Royal Palm*, the Debtor attempted to sell an asset at public auction.  That auction failed in substantial part because of the constant barrage of litigation brought by the property's former owner.  *Id.* at 124.  Ultimately, the Debtor entered into a private sale and sought bankruptcy court approval. The former owner objected arguing it was "an abuse of discretion to eliminate other potential bidders from the sale," which included, of course, the former owner.  *Id.* at 127.  The bankruptcy court rejected that argument, and the district court affirmed, stating "private sales are not unheard of in bankruptcy proceedings" and, in part because the offer was conditioned on a private sale, the Debtor was entitled to pursue a "bird in hand" approach and sell the asset

---

debtors-in possession, and courts have rejected the highest bid when it was not the "best bid."  *See In re Family Christian, LLC, 533 B.R. 600, 627 (Bankr. W.D. Mich. 2015)* ("a debtor must demonstrate that the proposed purchase price is not only the highest offer, ***but the highest and best offer***") (emphasis added).  While the bid that brings in the most cash often wins, it is "common knowledge" that the "highest bid is not always the best bid," especially if there are "conditions sufficient to overbalance the difference between the two."  *United States v. Chem. Found.*, 5 F.2d 191, 206 (3d Cir. 1925).  The Bankruptcy Code thus affords courts "broad flexibility in determining which of several bidders should be deemed the successful bidder at a *§ 363(b)* sale."  *In re After Six, Inc.*, 154 B.R. 876, 882 (Bankr. E.D. Pa. 1993).  As such, courts routinely reject the proposition that reviewing courts or fiduciaries are "duty-bound to mechanically accept a bid with the highest dollar amount."  *Lawsky v. Condor Capital Corp.,* 2015 U.S Dist. LEXIS 96347, 2015 WL 4470332, at *9 (S.D.N.Y. July 21, 2015) (internal quotation marks and citations omitted); *see also After Six, 154 B.R.* at 882 ("The Bankruptcy Code, like any law, must be read in its context as a tool of mankind, not a body of edicts to which mankind is a slave irrespective of its interests to the contrary.").

In determining whether the highest bid is the "best bid," the fiduciary and reviewing court must consider factors such as "the risks associated with each bid and the probabilities that the proposed terms will come to fruition" as well as "contingencies, conditions, timing, or other uncertainties in an offer that may render it less appealing."  *Lawsky,* 2015 U.S. Dist. LEXIS 96347, 2015 WL 4470332, at *9 (quoting and citing *Family Christian,* 533 B.R. at 622).

*Treshe-Mob*, 2019 Bankr. LEXIS 1333, at *4-6 (emphasis in original).

DOCS_NY:43784.6 36027/002 43784.7 36027/002

**Appx. 06307**

without competing bids. *Id.* at 128.

15.    In so ruling, the District Court also rejected the unsolicited bid made by the former owner on the property despite that bid being higher.  The District Court found persuasive, among other things, the fact that the former owner had defaulted on a prior deal with the Debtor and his documented history of litigiousness:

> While the KKPB offer ostensibly *could* provide the estate with an additional million dollars . . . the Court credits the Debtor's concerns about the uncertainty of that offer.  Indeed, the Debtor sought a settlement and sale with KKPB once in the past, which fell through, because KKPB defaulted.
>
> Appellant vigorously argued at oral argument on April 5 that the Debtor should have accepted its higher bid.  However, the Court notes that while a debtor has a duty to "maximize the return to a bankruptcy estate," which "often does require [the] recommendation of the highest monetary bid, *overemphasis of this usual outcome overlooks a fundamental truism, i.e., a 'highest' bid is not always the 'highest and best' bid.*  The inclusion of 'best' in that conjunction is not mere surplusage." . . . .
>
> Appellant also alleges that Debtor only rejected KKPB's higher offer out of personal animus towards KKPB's owner, Mr. Straub.  The Debtor provides a number of explanations for its rejection of the KKPB offer, including, among other things, Mr. Straub's litigiousness. . . .
>
> > Among other things, Mr. Glickstein testified that the potential for about a $1 million increase in the overall sale price was not worth the risk that KK-PB, and its principal, Mr. Glenn Straub, would take action that would greatly increase the costs to the estate.  Mr. Glickstein pointed to specific experience with Mr. Straub in this very case to support [his] view that the potential increase in recovery was fair outweighed by the risk of additional litigation.  Mr. Glickstein stressed the strength of the purchaser identified in the sale motion. . . .
>
> ***
>
> On the record before this Court, the Debtor had real concerns about the viability of the KKPB offer for a variety of reasons — including the fear of additional litigation.  Though Appellant may characterize this as "animus," the avoidance of litigation is a legitimate business objective.  And, Appellant could not provide the Court with a single case where a court disallowed a sale because the debtor had concerns about future litigation.
>
> The Debtor's duty is to maximize value to the creditors, and that maximization

9

**Appx. 06308**

includes considerations such as finality, stability, and expeditious resolution of the bankruptcy proceeding. The LR offer, although 2.5% lower than the KKPB offer, provided that finality and stability. When asked by the Court at oral argument, Appellant could provide no other reasons why the KKPB offer constituted the highest and best offer *other than* the purported one-million-dollar additional benefit to the estate. Thus, to force the Debtor to forego the LR offer and subject itself to a public auction would require this Court to inappropriately use its own business judgment in place of the Debtor's, which this Court will not do.

*Id.*, at 129-30 (emphasis in original).

16.     *160 Royal Palm* supports the Debtor's position in this case. On the one hand, the Debtor has the Purchaser who represents finality and stability. The Purchaser has conducted its diligence and, as its inspection period has expired, has no due diligence out, negotiated a purchase agreement that contemplated a private sale not subject to auction, and is ready, willing, and able to close. NexPoint would have the Debtor renege on the commitment to the Purchaser and ~~agree to sell the Property to NexPoint (subject to NexPoint's diligence)~~enter into a contingent agreement with NexPoint that could be terminated (without material consequence) in NexPoint's sole discretion. No reasonable person would terminate an agreement with the Purchaser and enter into an "agreement" with NexPoint under these conditions.

17.     Moreover, even if the agreements were "apples to apples," NexPoint ~~also~~ effectively insists that the Debtor ignore its prior dealings with Mr. Dondero and his related entities and disregard their failure to live up to their prior contractual obligations and documented history of litigation, including more than twenty pending litigation matters in this case alone. And for what purpose? So that the Debtor's estate can theoretically receive $350,000 more in sale proceeds? The Debtor and the Committee have decided that any theoretical upside in agreeing to sell the Property to Mr. Dondero or any of his related entities is not worth the risk. The evidence the Debtor will submit in connection with the hearing on the

Motion will unequivocally demonstrate that the Debtor's position is justified.

*[Remainder of Page Intentionally Blank]*

DOCS_NY:43784.6 36027/00243784.7 36027/002

WHEREFORE, for the reasons set forth above and in the Motion, the Debtor respectfully requests that the Court grant the Motion.

Dated: August 2~~3~~, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)
John A. Morris (NY Bar No. 266326) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

_____

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

12

DOCS_NY:~~43784.6 36027/002~~43784.7 36027/002

**Appx. 06311**

Document comparison by Workshare Compare on Tuesday, August 03, 2021
1:02:29 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/43784/6 |
| Description | DOCS_NY-#43784-v6-Highland_-_Maple_Ave_Reply |
| Document 2 ID | PowerDocs://DOCS_NY/43784/7 |
| Description | DOCS_NY-#43784-v7-Highland_-_Maple_Ave_Reply |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 32 |
| Deletions | 21 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 53 |

Appx. 06312