# EXHIBIT 56

Appx. 07109

Docket #1661 Date Filed: 01/05/2021

D. Michael Lynn
State Bar I.D. No. 12736500
John Y. Bonds, III
State Bar I.D. No. 02589100
Joshua N. Eppich
State Bar I.D. No. 24050567
J. Robertson Clarke
State Bar I.D. No. 24108098
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

ATTORNEYS FOR JAMES DONDERO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054** |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

## JAMES DONDERO'S OBJECTION TO FIFTH AMENDED PLAN OF
## REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.

James Dondero ("Respondent"), a creditor, indirect equity security holder, and party in interest in the above-captioned bankruptcy case, hereby files this objection (the "Objection") to the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Plan").[1] In support thereof, Respondent respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      On October 16, 2019, Highland Capital Management, L.P. ("Highland" or the "Debtor") initiated a Chapter 11 proceeding in the United States Bankruptcy Court for the District of Delaware. The Chapter 11 Case was subsequently transferred to this Court. The case was

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

JAMES DONDERO'S OBJECTION TO PLAN CONFIRMATION



1934054210105000000000007

commenced with the expectation that Highland would emerge from Chapter 11 as a going concern. However, during the case and leading up to the confirmation hearing on the Plan, Highland's assets have been liquidated at below value prices. Under the Plan, Highland's assets will continue to be liquidated for less than optimal prices, with a view to ultimately terminating Highland's existence.

2.       Confirmation of the Plan should be denied due to numerous deficiencies and improprieties. The problems with the Plan as drafted include, but are not limited to, exculpation and injunction provisions that extend far beyond permissible limits, a lack of transparency following confirmation, inappropriate post-confirmation jurisdictional terms, and the wrongfully obtained votes of certain affiliates of HarbourVest Partners, LLC (collectively, "HarbourVest"). The Plan severs Respondent's rights and fails to comply with the Bankruptcy Code and applicable case law. Therefore, confirmation of the Plan should be denied.

## OBJECTION

### I.       Both the Exculpation and Injunction Sections Violate Fifth Circuit Precedent.

3.       The proposed exculpatory and injunction provisions are simply impermissible. Both contravene established case law in the Fifth Circuit regarding the proper boundaries of such provisions and merit denial of Plan confirmation.

4.       First, Article IX.D proposes to exculpate each and every "Exculpated Party" for all post-petition liability relating to the Debtor's bankruptcy case. The term "Exculpated Party" includes not just the Debtor but also, among others, the Debtor's Employees, the Independent Directors, the CEO/CRO, and the Related Persons of such parties. These exculpations in favor of the Exculpated Parties are prohibited under Fifth Circuit precedent. *See, e.g., In re Pacific Lumber, Co.*, 584 F.3d 229 (5th Cir. 2009); *Dropbox Inc. v. Thru Inc.*, Case No. 17-1958-G, 2018 U.S. Dist.

**Appx. 07111**

LEXIS 179769 * 66-68 (N.D. Tex. Oct. 19, 2018) (finding that the scope of an exculpation clause provided insulation to nondebtor third parties in contravention of Fifth Circuit law).

5.      In *Pacific Lumber*, the Fifth Circuit made clear that section 524(e) prohibits the exoneration of nondebtors such as a debtor's management and professionals, but excluding official committees and their members acting within the scope of their official duties, from negligence during the course of their participation in the bankruptcy. The Fifth Circuit in *Pacific Lumber* stated: "[T]he essential function of the exculpation clause proposed here is to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy. The fresh start § 524(e) provides to debtors is not intended to serve this purpose." *Pacific Lumber*, 584 F.2d at 252. Despite these clear limits, the exculpation provisions in the Plan go far beyond what is permissible through the Bankruptcy Code's intended "fresh start" to encompass virtually all acts or omissions taken in connection with the Debtor's bankruptcy case by a wide range of parties, thus effectively exculpating an unknown number of individuals.

6.      Second, Article IX.F creates a channeling injunction with respect to certain "Protected Parties." The injunction requires Bankruptcy Court approval to pursue any claims related to the Debtor brought by any entity, including claims arising from a Protected Party's post-confirmation conduct. Much like the overbroad definition of "Exculpated Parties", the definition for "Protected Parties" includes a wide swath of individuals and entities beyond simply the Debtor. As a result, the channeling injunction would bring into the Bankruptcy Court all claims against such Exculpated Parties by any party who happens to have a claim or interest in the Debtor. The proposed injunction is effectively a non-consensual third-party release, which is expressly prohibited. *See Dropbox*, 2018 U.S. Dist. LEXIS 179769 * at 65 (disallowing similar injunction). Moreover, the Fifth Circuit has held that a permanent injunction cannot be justified under the broad

equity powers of Bankruptcy Code section 105 "if it effectively discharges a nondebtor." *Feld v. Zale Corporation (In re Zale Corporation)*, 62 F.3d 746, 760 (5th Cir. 1995) (overturning permanent injunction effectively discharging a nondebtor because such an injunction violates section 524 of the Bankruptcy Code, which was designed only to discharge the debtor, not nondebtor parties).

7.      Furthermore, the channeling injunction in Article IX.F limits the jurisdiction to hear claims against Protected Parties to only the Bankruptcy Court. In doing so, the Plan would improperly disregard parties' rights to bring claims even in courts with exclusive jurisdiction and would ignore those courts with specialized jurisdiction to hear certain types of cases. Respondent therefore objects to isolating (and potentially even providing) jurisdiction of any and all claims against Protected Parties in the Bankruptcy Court through this channeling injunction.

8.      In addition, the proposed injunction in Article IX.F is impermissibly vague and broad and, as noted, applies to post-confirmation conduct and claims.

9.      FED. R. BANKR. P. 3016(c) requires that, "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction." The Debtor fails to provide such "specific and conspicuous language" about the proposed injunction here. The Plan instead issues a blanket prohibition on entities from:

> (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the

> Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, . . . ; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

Plan at IX.F. Much like the overbroad exculpation and channeling injunction provisions, this vague and potentially limitless injunction is improper. As a result, the Plan should not be confirmed.

**II.     The Plan Fails to Meet Section 1129(a)(7) due to Lack of Appropriate Sale Procedures for Post-Confirmation Operations.**

10.     The Plan envisions the liquidation of the Debtor's assets by the Reorganized Debtor and the Claimant Trust. This wind down, however, is subject to no oversight or predetermined procedures to ensure that the process is both value-maximizing and transparent. This is critically important because, during the course of the Debtor's bankruptcy case, Respondent would allege on information and belief that the Debtor has sold a number of assets of significant value outside the ordinary course of the Debtor's business as it was conducted prepetition without notice to parties in interest or a complete marketing plan.

11.     The proposed Plan's lack of appropriate marketing and the resulting dampening of competitive bidding requirements for the Reorganized Debtor's assets indicates that the Debtor's creditors and equity holders could receive a higher recovery from the liquidation of the Debtor under Chapter 7 of the Bankruptcy Code in which sales procedures are governed by the Bankruptcy Court to ensure maximization of value through auction or other market-testing means. As it is, for the Debtor to meet its burden to establish all elements of 11 U.S.C. § 1129, specifically including the best interest test of section 1129(a)(7), the Debtor must detail why the proposed liquidation process will test the market as fully as would be the case in Chapter 7.

12.     Moreover, Respondent believes that notice and an opportunity for other potential bidders to come forward will not only provide transparency to the process but also will result in

competitive bidding, increasing the value received by the beneficiaries of the Debtor's liquidation. An asset sale without transparency, on the other hand, will presumptively be done without comprehensive market exposure. Courts have long recognized the need for competitive bidding when approving sales. *In re Muscongus Bay Company,* 597 F.2d 11 (1st Cir. 1979); *In re Alves,* 52 B.R. 353 (Bankr. D. R.I. 1985); *In re Dartmouth Audio Inc.,* 42 B.R. 871, 874 (Bankr. D. N.H. 1984). Competitive bidding yields higher offers and thus benefits the estate. The objective is "to maximize the bidding, not to restrict it." *In re The Ohio Corrugating Company,* 59 B.R. 11, 13 (Bankr. N.D. Ohio 1985) (quoting *In re Beck Industries Inc.,* 605 F.2d 624, 637 (2d Cir. 1979)). Additionally, because the Plan states that equity will receive some recovery under the Plan— Article III.F states that there are no Classes deemed to reject the Plan or being excluded from recovery—equity holders as well as all creditors should receive, *inter alia*, notice and an opportunity to be heard on all significant liquidations and other transactions performed by the Reorganized Debtor.

### III.    Post-Confirmation Jurisdiction under the Plan is Improper.

13.    The various jurisdictional provisions of the Plan are overbroad and mandate that the Bankruptcy Court hear any matter involving the Debtor or its operations post-Effective Date. First, as noted above, the injunction with respect to "Protected Parties" requires that "the Bankruptcy Court will have sole jurisdiction to adjudicate any such claim for which approval of the Bankruptcy Court to commence or pursue has been granted." Plan at Art. IX.F. There is no legal basis for barring recourse to other courts with exclusive jurisdiction—possibly providing the Bankruptcy Court with jurisdiction it does not legally have, especially post-confirmation. *See, e.g., Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and

thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."). Second, the Bankruptcy Court's jurisdiction should not encompass claims and causes of action arising from the Reorganized Debtor's post-confirmation operations.

## IV.    **The Subordination Provisions are Improper.**

14.    The elimination of vacant Classes pursuant to Article IV.I would potentially eliminate certain Classes on the Effective Date and any recovery for such Classes, including Class 9 for Subordinated Claims (assuming the HarbourVest claim in Class 9 is disallowed), despite the later re-allocation of claims into such eliminated Classes.

15.    The Plan contemplates subordination of Claims and Equity Interests yet provides no mechanism, hearing requirement, or deadlines for such subordination. Instead, the Debtor reserves in Article III.J the right to subordinate any Claim and the Claimant's resulting Plan treatment apparently without hearing.

## V.    **Any Acceptance of the Plan by HarbourVest Should be Disallowed.**

16.    HarbourVest agreed to accept the Plan pursuant to the settlement with the Debtor submitted to the Court pursuant to FED. R. BANK. P. 9019. If that settlement is approved by the Court, HarbourVest will have, under the Plan, a Class 8 claim of $45 million and a Class 9 claim of $35 million. Respondent would allege on information and belief that the Debtor's CEO/CRO has stated on multiple occasions that HarbourVest has no valid claim against the Debtor and that its dispute with the Debtor could be settled for $5 million or less.

17.    By including in the settlement agreement the requirement that HarbourVest vote both its Class 8 and Class 9 claim to accept the Plan, the settlement agreement, on its face, reflects the exchange of HarbourVest's acceptance of the Plan for the vastly inflated claims agreed to by

the Debtor. In other words, the Debtor *purchased* HarbourVest's acceptance. This constitutes a violation of Bankruptcy Code section 1129(a)(3) in that HarbourVest's acceptance and the payment for it were not in good faith.

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests that the Bankruptcy Court enter an order (i) denying confirmation of the Plan, and (ii) granting Respondent such other and further relief to which he may be justly entitled.

Dated: January 5, 2021

Respectfully submitted,

*/s/ D. Michael Lynn*
D. Michael Lynn
State Bar I.D. No. 12736500
John Y. Bonds, III
State Bar I.D. No. 02589100
Joshua N. Eppich
State Bar I.D. No. 24050567
J. Robertson Clarke
State Bar I.D. No. 24108098
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: michael.lynn@bondsellis.com
Email: john@bondsellis.com
Email: joshua@bondsellis.com
Email: robbie.clarke@bondsellis.com

**ATTORNEYS FOR JAMES DONDERO**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on January 5, 2021, a true and correct copy of the foregoing document was served via the Bankruptcy Court's CM/ECF system on counsel for the Debtor and on all other parties requesting or consenting to such service in this case.

*/s/ J. Robertson Clarke*
J. Robertson Clarke