# EXHIBIT 59

Appx. 07132

Docket #1667 Date Filed: 01/05/2021

Douglas S. Draper, LA Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust and Get Good Trust*

UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | * | Chapter 11 |
| | * | |
| | * | Case No. 19-34054sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | * | |
| | * | |
| Debtor | * | |

**OBJECTION TO CONFIRMATION OF THE
DEBTOR'S FIFTH AMENDED PLAN OF REORGANIZATION**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The Dugaboy Investment Trust and Get Good Trust (jointly, "Movants"), submit this Objection for the purpose of objecting to the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Dkt. 1472] (the "Plan") submitted by Highland Capital Management, L.P. ("Debtor"). The Dugaboy Investment Trust is an equity owner of the Debtor and has filed proofs of claim. See Claim Numbers 131 and 177. The Get Good Trust has filed proofs of claim in this case. See Claim Numbers 120, 128 and 129. If the Claims[1] filed by Movants are allowed,

---

[1] Capitalized terms not defined in this Objection are taken from the Plan and shall have the meanings given to them in the Plan.



1934054210105000000000013

**Appx. 07133**

Claimants possess claims in Class 7 or 8. The Dugaboy Investment Trust is a member of Class 11 of the Plan.

Movants assert that the Plan does not meet the requirements contained in the Bankruptcy Code, Rules, and applicable case law to be confirmed.

**The Plan Violates 11 U.S.C. § 1129(a)(1)**

In order to confirm a plan, the plan must meet the requirements set forth in 11 U.S.C. §§ 1122, 1123 and 1129. The Plan proposed by the Debtor fails to meet the requirements set forth in the Bankruptcy Code and, as such, confirmation of the Plan must be denied. 11 USC § 1129(a) (1) requires that the Plan comply with the applicable provisions of this title. The cases interpreting this section have held that a plan must meet the requirements of 11 U.S.C. §§ 1122 and 1123. See *In re Star Ambulance Service*, 540 B.R. 251, 260 (N.D.Tex. 2015); *In re Save Our Springs,* 632 F.3d 168 174 5th Cir. 2011); *In Re Counsel of Unit Owners of 100 Harborview Drive Condo*, 572 B.R. 131, 137-139 (Bankr.D.Md. 2017).

**The Plan Contains an Impermissible Claim Subordination Provision**

Article III.J of the Plan contains the following provision:

> Under section 510 of the Bankruptcy Code, upon written notice, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to re-classify, or seek to subordinate, any Claim. . . .

The section gives the named parties the discretion upon "notice" to either subordinate a Claim or re-characterize a Claim whether or not a legal basis exists to either re-characterize the Claim or subordinate it. The term "notice" is nowhere defined, and any time the Bankruptcy Code uses the term notice, it is always accompanied by the words "and a hearing". 11 U.S.C. §§ 1112, 707 and 554 are examples of Bankruptcy Code sections that require both notice and a hearing prior to a party obtaining the relief sought in a pleading. Nowhere in the Bankruptcy

**Appx. 07134**

Code can a debtor obtain relief without affording the parties affected by the requested relief an opportunity for a hearing.

Under Bankruptcy Rule 7001(8), the subordination of a claim, as a general rule, requires the filing of an adversary proceeding.  However, an exception to the rule is that a subordination of a claim can occur through a Plan.  The Plan provision, as written, allows the designated parties the ability to subordinate a claim or re-characterize a claim merely by sending a letter.

The Plan, Plan Supplements and Disclosure Statement do not identify any specific Claim for which subordination is sought.  Rather, in the recent Plan Supplement that was filed on January 4th (Dkt. No. 1656), retained claims are lumped in with all other possible claims and a laundry list of possible targets.   (See Plan Supplement Dkt. No. 1656-1 Exhibit L.)  Notwithstanding the conflicting 5th circuit case law concerning the necessary designation for the retention of claims (See *In re SI Restructuring*, 714 F.3d 860 (5th Cir. 2013) and *In re Texas Wyoming Drilling,* 647 F.3d 547, 549 and 551 (5th Cir 2011) and *In re United Operating,* LLC, 540 F.3d 351 (5th Cir. 2008), the cases do require some notice to the creditor of the potential for the subordination of such creditor's claim.  Bankruptcy Rule 7001 (8) cannot be read to allow a complex "equitable subordination claim" that requires evidence and findings consistent with *In Re Mobile Steel*, 563 F.2d 692 (5th Cir. 1977) to occur with only written notice immediately prior to a confirmation hearing.   The  provision, as written, does not provide any party subject to the so-called notice with due process and violates 11 U.S.C. § 1129(a)(1).

**The Plan is Not Final and Contains an Impermissible Plan Modification Provision**

In addition to the Plan, the Debtor must file a Plan Supplement which will include various documents that will 1) govern the operations of the Highland Claimant Trust and the

Litigation Trust, 2) identify retained causes of action; and 3) list the executory contracts and leases that will be assumed by the Debtor and Plan Documents.

The problem with the Plan Supplement is that, as of the writing of this Objection and possibly even after the hearing on the confirmation of the Debtor's Plan, parties in interest will not have seen the documents that will become an essential part of the Plan. Article IV.J on page 36 of the Plan states:

> The Debtor and the Committee are currently working to finalize the forms of certain of the Plan Documents to be filed with the Plan Supplement. To the extent that the Debtor and the Committee cannot agree as to the form and content of such Plan Documents, they intend to submit the issue to non-binding mediation pursuant to the Order Directing Mediation entered on August 3, 2020 [D.I. 912].

It is clear that no requirement exists in the Plan that the Plan Documents be finalized prior to hearing on the confirmation of the Debtor's Plan so that creditors can object if any terms of the Plan Documents filed in the Plan Supplement adversely impact a creditor's rights or are inconsistent with the Bankruptcy Code and Rules.

The Plan contains a provision allowing modification of the Plan. It is not clear from the language of the modification section the extent of judicial oversight that exists with respect to a Plan modification and whether this Court will have the ability to determine if the proposed plan modification is material or an immaterial. Article XII.B (p. 55) of the Plan provides that the Debtor reserves the right in accordance with the Bankruptcy Code and Rules to amend or modify the Plan prior to the entry of the Confirmation Order with the "consent" of the Committee. The provision does not require compliance with 11 U.S.C. § 1127(a) which specifically provides that the proposed modification prior to confirmation must meet the requirements of 11 U.S.C. §1122 and 11 U.S.C. §1123. In contrast to the Plan provision concerning modification prior the entry of the Confirmation Order, Article XII.B of the Plan does recognize that any modification after the entry of the Confirmation Order must meet the requirements set forth in 11 U.S.C. §§

**Appx. 07136**

1127(b).  From a textual point of view, modifications of the Plan both before and after the entry of the Confirmation Order must meet the requirements of 11 U.S.C. §§ 1122 and 1123.

**The Plan violates 11 U.S.C. § 1129(a)(7)**

Under 11 U.S.C. § 1129(a)(7), in order for a plan to be confirmed, each creditor as of the effective date of the plan will receive or retain under the plan on account of claim or interest an amount that is not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7.

While the Debtor's Plan is a liquidation plan, creditors from a valuation point of view are receiving an amount less than they would receive if the Debtor were liquidated under chapter 7. The amount received by creditors under the Debtor's Plan cannot be viewed solely in the dollars they receive but, rather, the amount actually received must be discounted by two provisions in the Debtor's Plan that reduce the present value of the creditors' recovery under the Plan.  The two discounting factors are the following provisions in the Highland Claimant Trust:

a)  The  Reorganized Debtor has  no affirmative obligation to report any activity or results to the holders of beneficial interests in the Claimant Trust or potential holders of beneficial interests; and

b)  The holders of beneficial interests in the Claimant Trust are required to agree to a standard of liability for the Claimant Trustee that only allows claims against the Claimant Trustee for acts that constitute "fraud, willful misconduct or gross negligence" (See Article 8 of the Highland Claimant Trust).  A notable omission from the standard of liability is a breach of fiduciary duty.  This omission is contrary to the statement contained in the Plan "In all circumstances, the Claimant Trustee shall act in the best interests of the Claimant Trust Beneficiaries and with the same fiduciary duty as a Chapter 7 trustee." (See Plan Page 28)

**Appx. 07137**

c) A Chapter 7 trustee, if it attempted to sell assets, would have to obtain Court authority for the sale and would provide Notice to creditors of the sale. Under the Plan no such requirement exists.

**The Plan And Related Documentation Provide For Impermissible Non-debtor Exculpation, Releases and Injunctions That Are Not Allowed Under Applicable 5ᵗʰ Circuit Case Law**

**A. Exculpation and Releases**

Article IX of the Plan contains extensive exculpation and release provisions that far exceed those allowed in the Fifth Circuit.

Article IX.C (the "Exculpation Clause") exculpates each "Exculpated Party" from, *inter alia*, any liability for conduct occurring **on** or after the Petition Date in connection with or arising out of the filing and administration of the case, the funding, consummation and implementation of the Plan, and any negotiations, transactions and documents pertaining to same that could be asserted in their own name or on behalf of any holder of a claim or interest excluding acts constituting bad faith, fraud, gross negligence, criminal misconduct or willful misconduct.

The term "Exculpated Parties" is defined[2] in Article I.B.61 of the Plan to include:

1. The Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the "Managed Funds," which is defined in Article I.B.83 of the Plan to include Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to the executory contracts assumed under the Plan;

2. Strand Advisors, Inc., the Debtor's general partner ("Strand");

---

[2] The definition of "Exculpated Parties" includes references to numerous other defined terms that also are defined in Article I.B, some of which are summarized here. For the sake of brevity, the definition of each defined term contained in the definition of Exculpated Parties is not reproduced here *verbatim*.

**Appx. 07138**

3. John S. Dubel, James P. Seery, Jr. and Russell Nelms, the independent directors of Strand appointed on January 9, 2020, and any additional or replacement directors appointed between then and the effective date of the Plan (collectively, the "Independent Directors");

4. The Official Committee of Unsecured Creditors appointed in the case (the "Committee");

5. The members of the Committee in their official capacities;

6. Professionals retained by the Debtor and the Committee in the case (the "Professionals");

7. James P. Seery, Jr., the Debtor's chief executive office and chief restructuring officer (the "CEO/CRO"); and

8. "Related Persons" of the Independent Directors, the Committee, the members of the Committee, the Professionals and the CEO/CRO, which is defined to include, *inter alia*, predecessors, successors, assigns, officers, directors, employees, managers, attorneys, consultants, subsidiaries thereof.

The definition does expressly exclude from the definition certain named individuals and entities.

In addition to Article IX of the Plan, the Claimant Trust Agreement [Dkt. 1656-2, Exhibit M] for which approval is sought as part of the Plan confirmation, also provides in Section 8.1 for a reduced standard of care by the parties described therein as the Claimant Trustee, the Delaware Trustee, and the Oversight Board, any individual member thereof, by limiting their liability to that for fraud, willful misconduct, or gross negligence.[3]

---

[3] With respect to the Claimant Trustee, this appears to contradict Plan Article IV.B.5 (p. 28), which provides: "In all circumstances, the Claimant Trustee shall act in the best interests of the Claimant Trust Beneficiaries and with the same fiduciary duties as a chapter 7 trustee."

**Appx. 07139**

The scope of the Exculpation Clause is ambiguous because it does not specify a time frame to which the exculpation applies. Rather than stating that it applies for actions during a definite time period, such as occurring between the petition date and the effective date of the plan, it runs from the petition date through "implementation of the Plan." The word "implementation" is not defined, which leaves the term subject to interpretation. Does it mean the execution of documents to be executed pursuant to the Plan or the actual implementation of the Plan through administration of assets and payment of claims? The ambiguity is exacerbated by the introduction to the Exculpation Clause, which provides for its effect "to the maximum extent permitted by applicable law". Thus, one could expect that Debtor intends the Exculpation Clause to apply to actions of exculpated parties for actions taken far into the future.

Article IX.D (the "Release Clause") provides that each Released Party is deemed released by the Debtor and the Estate, including the trusts created by the Plan (the Claimant Trust and Litigation Sub-Trust) release each Released Party from, *inter alia*, any and all Causes of Action that the Debtor or its estate could legally assert, except for obligations of the party under the Plan certain other agreements, confidentiality and noncompetition agreements, avoidance actions, or acts constituting bad faith, fraud, gross negligence, criminal misconduct or willful misconduct.[4]

The term "Released Parties" is defined in Article I.B.111 of the Plan to include:

1. The Independent Directors

2. Strand, solely from the date of the appointment of the Independent Directors through the effective date of the Plan;

3. The CEO/CRO;

4. The Committee;

5. The members of the Committee;

---

[4] There are some additional limitations specific to "Senior Employees."

      6.   The Professionals; and

      7.   The "Employees," which is defined as the employees of the Debtor set forth in the

          plan supplement.

The term "Causes of Action" is an 18 line definition in Article I.B.19 to include just about any type of cause of action, whether arising before or after the commencement of the bankruptcy case.

The Release Clause applies to causes of action having no relationship to the case. The Release Clause also waives claims of the newly created Claimant Trust and Litigation Sub-Trust "existing or hereafter arising," which means that these entities, which have conducted no business as of the confirmation of the Plan, are releasing future, unknown claims against the Released Parties, such as a future negligent breach of fiduciary duty claim.

The Exculpation Clause, the Release Clause and the Claimant Trust Agreement clearly bestow protection from liability upon numerous non-debtor parties.  Some of the parties covered by the Exculpation Clause as Exculpated Parties, namely Managed Funds Highland Multi-Strategy Credit Fund, L.P. and Highland Restoration Capital Partners, L.P., and possibly by the use of "catch-all phrasing, SSPI Holdings, Inc., recently were argued to be outside the scope of this Court's oversight but for an agreement reached by the Debtor with the Committee allowing for some notice protocols.  *See* Debtor's Response to Mr. James Dondero's Motion For Entry of An Order Requiring Notice And Hearing For Future Estate Transactions Occurring Outside The Ordinary Course Of Business [Dkt. 1546]¶ 12

The Fifth Circuit decision in *In re Pacific Lumber Co*. 584 F.3d 229 (5th Cir. 2009) is dispositive.  In that case, the plan proposed to release the plan proponents and post-reorganization owners of the reorganized debtor, the two new entities created by the plan, and

**Appx. 07141**

the creditor's committee (and their personnel) from liability—other than for willfulness and
gross negligence—related to proposing, implementing and administering the plan.  *Pacific*, 584
F.3d at 251.  This language is similar to the language of the Exculpation Clause.  The *Pacific*
court cited the principle of 11 U.S.C. § 524(e), which states that "discharge of a debt of the
debtor does not affect the liability of any other entity on . . . such debt."  *Id.*  The court noted
that: "We see little equitable about protecting the released non-debtors from negligence suits
arising out of the reorganization."  Pacific, 584 F.3d at 252.  It went on to cite other Fifth Circuit
authority establishing that 11 U.S.C. 524(e) only releases the debtor, not co-liable third parties,
and that the cases seem broadly to foreclose non-consensual non-debtor releases and permanent
injunctions.  *Pacific*, 584 F.3d at 252, citing *In re Coho Resources, Inc.,* 345 F.3d 338, 342 (5th
Cir. 2003); *Hall v. National Gypsum Co.,* 105 F.3d 225, 229 (5th Cir. 1997); *Matter of
Edgeworth*, 993 F.2d 51, 53-54 (5th Cir. 1993), *Feld v. Zale Corporation*, 62 F.3d 746 (5th Cir.
1995).   Finally, the court stated:

> There are no allegations in this record that either [plan proponents/owners
> of reorganized debtors] or their or the Debtors' officers or directors were jointly
> liable for any of [debtors'] pre-petition debt.  They are not guarantors or sureties,
> nor are they insurers.  Instead, the essential function of the exculpation clause
> proposed here is to absolve the released parties from any negligent conduct that
> occurred during the course of the bankruptcy.  The fresh start § 524(e) provides to
> debtors is not intended to serve this purpose.

*Pacific,* 584 F.3d at 252-253.

The *Pacific* court struck down all of the non-debtor releases except those in favor of the
creditor's committee and its members.   The rationale for allowing the exculpation of the
creditor's committee and its members is that the law effectively grants them qualified immunity
for actions within the scope of their duties.  *Pacific*, 584 F.3d at 253.  The court also noted that
the creditor's committee and its members were the only disinterested volunteers among those
among the parties sought to be released, and reasoned that it would be extremely difficult to find

members to serve on the committee if they can be sued by persons unhappy with the committee's performance or the outcome of the case. *Id.*

The Fifth Circuit noted the continuing viability of the rule of *Pacific* in *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1059 (5th Cir. 2012) (". . . a non-consensual, non-debtor release through a bankruptcy proceeding, is generally not available under United States law. Indeed, this court has explicitly prohibited such relief," citing *Pacific.*) Lower courts from within the Fifth Circuit have strictly followed the precedent and struck down various plan clauses dealing with releases and exculpation. *See In re Thru, Inc.*, 2018 WL 5113124, *22 (D.C.N.D.Tex 2018), affirmed 782 Fed.Appx. 339 (5th Cir. 2019) (exculpation provision and injunction); *In re CJ Holding Co.*, 597 B.R. 597, 608 (S.D. Tex. 2019) ("The Fifth Circuit has concluded that a bankruptcy court may not confirm a plan that provides "non-consensual non-debtor releases.""); *In re National Truck Funding LLC*, 588 B.R. 175, 177 (Bankr. S.D. Miss. 2018) ("At hearing, the parties agreed that the Release and Exculpation . . . of the Plan . . . will be further amended by language protecting only the Official Committee of Unsecured Creditors and its representatives, as the Court has previously approved."); *In re LMCHH PCP LLC*, 2017 WL 4408162, at *16 (Bankr. E.D. La. Oct. 2, 2017) ("The modification [to the plan] filed was done to ensure that the exculpation provision complied with [*Pacific*] which held that a plan could not exculpate outside of the Debtors, the Official Unsecured Creditors Committee, and those who act for them, where 'the essential function of the exculpation clause . . . is to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy.'"); *In re Patriot Place, Ltd.*, 486 B.R. 773, 823–24 (Bankr. W.D. Tex. 2013) (Non-debtor releases and exculpation clauses struck down as violative of Fifth Circuit precedent and render the plan unconfirmable.).

{00374857-13}                                                11

All parties exculpated and released other than the Debtor, the Reorganized Debtor, the Committee and its members should be removed from the Plan and the Claimant Trust Agreement, or the Plan is not confirmable.

### B.  Injunction Provisions

Article IX.F of the Plan contains extensive injunction provisions (the "<u>Injunction Provisions</u>") that far exceed those allowed in the Fifth Circuit.  Although not broken down into sections, the Article contains multiple separate and distinct provisions, as follows:

1.  The first paragraph enjoins claimants and equity holders from interfering with plan implementation of consummation;

2.  The second paragraph **permanently** enjoins entities with claims or equity interests and their related persons from, with respect to such interests, *inter alia*, commencing actions, enforcing judgments, creating or enforcing encumbrances, setting off against or affecting the Debtor, the Independent Directors, the Reorganized Debtor created by the Plan or the Claimant Trust created by the Plan, except as otherwise provided by the Plan or other order of this Court;

3.  The third paragraph extends the injunctions of the Article to any successors of the Debtor, the Reorganized Debtor and the Claimant Trust and their respective property and interests in property; and

4.  The fourth paragraph provides that no "Entity[5]" may commence or pursue a claim or cause of action against a "Protected Party"[6] that arose from or is related to the

---

[5] Defined as any "entity" as defined in 11 U.S.C. § 101(15) and also includes any "Person" or any other entity.

[6] The Plan does not define the term "Protected Party."  It defines "Protected Parties" as follows:

"*Protected Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the

**Appx. 07144**

bankruptcy case, the negotiation of the Plan, the administration of the Plan, the wind down of the business, the administration of the Claimant Trust, or transactions in furtherance of the foregoing, without this Court first finding that the claim or cause of action represents a colorable claim of bad faith, criminal misconduct, fraud or gross negligence against the Protected Party, and specifically authorizes such Entity to bring a claim against the Protected Party.[7]  It further provides that this Court has the sole jurisdiction to adjudicate any such claim for which approval to pursue the claim has been granted.

Even the most cursory reading of the language of Article IX.F, especially the fourth paragraph, reveals that it goes farther than the exculpation and release provisions in terms of the parties protected by the permanent injunctions.

Although the Court in *Pacific* did not appear to expressly deal with an injunction, as noted above the court concluded that its own cases ". . . seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions." *Pacific*, 584 F.3d at 252. In addition, the Fifth Circuit in *Vitro*, *supra*, construed *Pacific* as denying a non-debtor permanent injunction, wherein it cited *Pacific* and added: "(discharge of debtor's debt does not affect liability of other entities on such debt and denying non-debtor release and permanent injunction.)"  *Vitro*, 701 F.3d at 1059.  The logic for applying the same principle to both releases/exculpations and injunctions is simple to understand—if a non-debtor cannot be released from claims but

---

Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

[7] The provision is expressly limited as to Strand and Employees to the period from the date of appointment to the effective date of the Plan.

**Appx. 07145**

claimants can be enjoined by the bankruptcy court from prosecuting them against the non-debtor, the exclusion of a release *ab initio* or the striking of a release from a plan is meaningless. For example, the fourth paragraph effectively releases from negligence claims a broad category of persons and entities not entitled to exculpation or releases under *Pacific,* because the paragraph only allows an aggrieved party to proceed after this court has determined that their allegations represent a colorable claim of bad faith, criminal misconduct, willful misconduct, fraud or gross negligence. As noted by the Fifth Circuit in *Zale, supra*, "Accordingly, we must overturn a § 105 injunction if it effectively discharges a nondebtor." *Zale*, 62 F.3d at 760, citing *In re Vitek*, 51 F.3d 530, 536, n. 27, as follows: "('[N]on-debtor property thus should not ordinarily be shielded by the powers of the bankruptcy court.')" *Id. See also In re Thru, Inc.*, 2018 WL 5113124, *21-22 (striking down a plan injunction that "would effectively discharge numerous non-debtor third parties").

All parties protected by the Injunction Provisions other than the Debtor, the Reorganized Debtor, the Committee and its members should be removed or the Plan is not confirmable.

### C. The Claims Released Do Not Meet the Few Exceptions Allowing Release or Injunctions in Favor of Third Parties

There are a few situations where it may be *possible* to argue that third party releases are permissible within the Fifth Circuit, but none are applicable here. The *Pacific* court distinguished one set of cases cited by the plan proponents by saying that they concerned global settlements of mass claims. *Pacific*, 584 F.3d at 252. Another has cited *Pacific* for the proposition that, absent a **meaningful** contribution by the released party, the release would probably be invalid under *Pacific. In re Texas Rangers Baseball Partners*, 431 B.R. 706, 717 FN 29 (Bankr. N.D. Tex. 2010); *See also Zale*, 62 F.3d at 762 (holding that one plan provision temporarily enjoining certain contract claims was valid as an unusual circumstance because it

involved a settlement providing substantial consideration being paid into to the estate). Another referred to a narrowly tailored release of the type found in § 363(f) sales of property free and clear of liens. *In re Patriot Place, Ltd.,* 486 B.R. 773, 821-822 (Bankr. W.D. Tex. 2013). Such releases and injunctions are entered to ensure that the purchaser of the debtor's property (as well as the debtor's property being sold) is insulated from claims that creditors might have against the debtor and the property being sold by the debtor to the purchaser. *Id.*

The court in *Zale* indicated that a **temporary** injunction **may** be proper when unusual circumstances exist. *Zale*, 62 F.3d at 761. These conditions are when the non-debtor and the debtor party enjoy such an identity of interests that the suit against the non-debtor is essentially a suit against the debtor and when the-third party action will have an adverse impact upon the debtor's ability to accomplish reorganization. *Id.* Even in such cases, neither of which is applicable here, an injunction would not be permanent, but would only delay the actions.

None of the foregoing exceptions are applicable in the instant case.

### D. Jurisdiction

Even if the Bankruptcy Code were to permit some exculpation, releases and injunctions protecting non-debtor parties, this Court does not have the power to retain exclusive, indefinite, post-confirmation jurisdiction to determine whether actions against Protected Parties may proceed or, thereafter, to adjudicate claims pertaining thereto.

The fourth paragraph of the Injunction Provisions prohibits the commencement of certain actions against any Protected Party with respect to claims or causes of action that arose from or are related to the case, administration of the case, the wind down of the business of the Debtor or Reorganized Debtor, and the administration of the Claimant Trust. It also channels claims by requiring that any such claims or causes of action be first brought to this Court to determine that

**Appx. 07147**

the claims are outside the scope of protection granted a Protected Party, and to obtain an express authorization from this Court allowing the action to proceed. It then provides that this Court has sole jurisdiction to adjudicate the claim. Because the Reorganized Debtor and the Claimant Trust have engaged in no activity as of the confirmation of the Plan, this provision clearly is intended to extend to unknown, future conduct by Protected Parties in addition to pre-confirmation Protected Parties.

As noted by the Fifth Circuit in *Bank of Louisiana v. Craig's Stores of Texas, Inc. (In re Craig's Stores)*, 266 F.3d 388, 389 (5th Cir. 2001), bankruptcy court jurisdiction does not last forever. Under 28 U.S.C. § 1334, a federal district court has original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." *In re Superior Air Parts, Inc.*, 516 B.R. 85, 92 (Bankr.N.D.Tex. 2014). The district court is authorized under 28 U.S.C. § 157 to refer to the bankruptcy court "any or all proceedings arising under title 11 or arising in or related to a case under title 11." *Id.* By virtue of an order adopted on August 3, 1984, this Court has jurisdiction over any or all proceedings arising under title 11 or arising in or related to a case under title 11. *Id.*

"Arising Under" jurisdiction involves causes of action "created or determined by a statutory provision of title 11." *Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 96 (5th Cir. 1987); *Superior*, 516 B.R. at 93. Nothing involved in the exculpations, releases or injunctions on non-debtor parties involves such a cause of action. By their nature, negligence claims and intentional tort claims arise by operation of law generally applicable to all persons and entities regardless of whether or not they are in bankruptcy. They could exist totally outside a bankruptcy context.

**Appx. 07148**

"Arising in" jurisdiction involves those actions "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Wood*, 825 F.2d at 97; *Faulkner v. Eagle View Capital Mgmt. (In re Heritage Org., LLC)*, 454 B.R. 353, 360 (Bankr.N.D.Tex. 2011); *Superior*, 516 B.R. at 94-95. The example given the by the *Wood* court is "'administrative' matters that arise *only* in bankruptcy cases." *Wood*, 825 F.2d at 97 (emphasis supplied by the court). Again, negligence claims and intentional torts against non-debtors obviously do not meet these criteria.

The final category, "related to" jurisdiction, involves the issue of "'whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.'" *Wood*, 825 F.2d at 93, citing *Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984) (emphasis supplied by the court). Because it is obvious that the non-debtor claims being released, exculpated and enjoined do not "arise under" or "arise in" a bankruptcy case, the only possibly arguable basis for jurisdiction is "related to" jurisdiction. The fourth paragraph of the Injunction Provisions contemplates application to any claim or cause of action "that arose from or is related" to the case.

Initially, it should be noted that there simply is no way that even a massive judgment against the non-debtors could have any impact whatsoever on the estate. Considering that there will be no **estate** being administered **in bankruptcy** post-confirmation, it is inconceivable how releases of non-debtor parties could possibly impact the administration of a now defunct bankruptcy estate of the Debtor. The court in *Craig's* appeared to recognize this principle when it adopted the view that confirmation of a plan changes bankruptcy court jurisdiction. *Craig's*, 266 F.3d at 390. Expansive bankruptcy court jurisdiction is no longer "required to facilitate 'administration' of the debtor's estate, for there is no estate left to reorganize." *Id.*

{00374857-13}                                                   17

In *Craig's,* the Fifth Circuit was dealing with a fact pattern that differs from the instant case in two ways.  First, the case involved a dispute between the aggrieved party and the reorganized debtor, not totally non-debtor parties.  Second, it only partially involved the fact pattern of the instant case, because it only dealt with claims characterized as post-confirmation rather than the mix of pre- and post-confirmation claims against the non-debtor parties protected by the Exculpation Clause, Release Clause and Injunction Provisions.  The case involved a pre-confirmation contract that had been assumed, and a post-confirmation dispute involving state law for damages that at least partially arose post-confirmation.[8]  The court held that there was no jurisdiction over a claim that "principally dealt with post-confirmation relations between the parties." *Craig's,* 266 F.3d at 390.

The later Fifth Circuit case of *Newby v. Enron Corp. (In re Enron Corp. Securities)*, 535 F.3d 325 (5th Cir. 2008) also involved the issue of post-confirmation jurisdiction.[9]  The court summarized the *Craig's* decision as one dealing with the post-confirmation relations between the parties, where there was no antagonism between the parties as of the date of the reorganization, and no facts or law deriving from the plan were necessary to the claim. *Enron*, 535 F.3d at 335.

Under the general principles of *Craig's,* there should be not "related to" jurisdiction involving the claims involved in this case, which purely involve non-debtor parties and non-bankruptcy related claims with no potential impact upon the pre- or post-confirmation estates.

---

[8] The facts are not totally clear.  They indicate that the plan was confirmed in December 1994, and that the claims for damages arose in 1994 and 1995.  *Craig's*, 266 F.3d at 389.  Therefore, at least the 1995 claims arose post-confirmation.

[9] The *Enron* case involved lawsuits against non-debtors that had been removed prior to the commencement of the case, that were dismissed with prejudice after the confirmation of the plan. *Enron*, 535 F.3d at 333.  The plaintiffs alleged that there was no jurisdiction to dismiss the case because "related to" jurisdiction had ceased after the plan was confirmed. 535 F.3d at 334.  However, the parties did not dispute whether the federal courts had "related to" bankruptcy jurisdiction over the cases at the time of removal, so the court framed the question as whether the court, after confirming Enron's plan, maintained "related to" jurisdiction. 535 F.3d at 334-335.  Therefore, the case stands for the proposition of whether "related to" jurisdiction, once conferred, continues post-confirmation. 535 F.3d at 335-336.

This is especially true with respect to post-confirmation future releases of non-debtor parties involved with as yet uncreated entities.

The case of *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594 (2011), decided after *Wood*, *Craig's* and *Enron*, adds additional jurisdictional barriers to confirmation of a Plan containing the language of Article IX.(C), (D) and (F). In *Stern*, Pierce had filed a proof of claim in Marshall's bankruptcy proceedings, alleging a right to recover damages as a result of alleged defamation on the part of Marshall. *Stern*, 131 S.Ct. at 2601. Marshall filed a counterclaim against Pierce alleging tortious interference with a gift that Marshall had expected to receive from her husband, who was Pierce's father. *Id.* The claim was classified by the Supreme Court as a common law tort claim. *Id.* The Supreme Court found that Pierce had consented to resolution of the counterclaim by the Bankruptcy Court. 131 S.Ct. at 2606. After being cast in judgment by the Bankruptcy Court in the amount of over $425 Million, Pierce argued that the Bankruptcy Court did not have jurisdiction over the counterclaim. 131 S.Ct. at 2601. The Supreme Court agreed with Pierce, holding that Article III of the U.S. Constitution did not permit the Bankruptcy Court to enter a final judgement on Marshall's counterclaim. 131 S.Ct. at 2608.

Some claims involved in the instant case are simple tort claims against non-debtors. They occupy the same category as the defamation suit in *Stern*. Movants are entitled to an actual adjudication of their claims, which would mean an adjudication by a state court or an Article III federal court of competent jurisdiction and venue. This Court's submission of a report and recommendation on confirmation to the District Court would not constitute an actual adjudication. Because the Plan provision at issue provides that this Court will **actually adjudicate** the claims, it runs afoul of *Stern* on its face. Similarly, the provision literally would

preclude Movants from seeking to withdraw the reference to have the case actually decided by an Article III court. Because this Court could not adjudicate the case, the Plan's attempt to grant to this Court sole jurisdiction to adjudicate the claims renders the Plan nonconfirmable.

Even if jurisdiction *could* exist for the purpose of determining whether a claim could go forward against a Protected Party, it does not follow that this Court would have jurisdiction to adjudicate the claim. At the point at which this Court determines that a claim could proceed, the action no longer involves any interpretation of either bankruptcy law or the Plan, nor could it have any impact upon the pre- or post-confirmation estate.[10]

**The Plan Prohibits Claimants From Asserting Rights Under The Plan Rendering the Plan Not Confirmable**

Aside from protecting parties not entitled to protection, the Exculpation, Release Injunction Provisions contain provisions that far exceed the scope permitted by bankruptcy law.

The second paragraph of the Injunction Provisions is broad enough to permanently preclude claimants from pursing their rights under the Plan against the Reorganized Debtor and the Claimant Trust because it precludes any attempt to enforce rights, many of which are created pursuant to the Plan, and the third paragraph of the Injunction Provisions goes even farther by extending the injunctions to any successors of the Reorganized Debtor and the Claimant Trust. Under the Plan, the Class 2 claimant is to be given a new promissory in treatment for its claim, the Class 3 claimants have the option to retain collateral, and Class 5 claims are reinstated. If the Reorganized Debtor defaults under any of its obligations, the Injunction Provisions literally prevent any attempt to enforce their rights under the Plan.

---

[10] Movants are aware of *In re Pilgrim's Pride*, 2010 WL 200000 (Bankr.,N.D.Tex 2010) and *In re Camp Arrowhead, Ltd.*, (Bankr.W.D.Tex 2011). Movants believe that these cases blatantly disregard the letter and spirit of *Pacific* and are, therefore, wrongfully decided. In addition, they were decided before *Stern v. Marshall.*

**Appx. 07152**

The best way to demonstrate this issue is to cite a different plan. Although the injunction in *In re Thru, Inc.*, *supra*, was struck down on the basis that it impermissibly released third parties, the injunction contained language that the second paragraph in the instant case is missing. It starts out:

> Except as otherwise expressly provided in this Plan or in the Confirmation Order **and except in connection with the enforcement of the terms of this Plan (including the payment of Distributions hereunder) or any documents provided for or contemplated in this Plan**, all entities . . . are permanently enjoined from. . . .

> *Thru*, 2018 WL 5113124, *21

Compare this language to the second paragraph of the Injunction Provisions, which provides:

> Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities . . . are permanently enjoined. . . .

The Plan literally would require a claimant to come back to this Court for an order if the Reorganized Debtor or the Plan-created trusts default. This goes against the concept espoused by the Fifth Circuit in *Craig's*, indicating that confirmation allows the debtor to go about its business without further supervision or approval, but also without the protection of the bankruptcy court. *Craig's*, 266 F.3d at 390, citing *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991).

**The Plan Contains a DeFacto Channeling Injunction**

As noted earlier, paragraph 4 of the Injunction Provisions in the Plan provide that no Entity may commence or pursue a claim or cause of action against a Protected Party without this Court:

> (i) first determining, after notice, that such claim or cause of action represents a colorable claim of bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Entity to bring such claim against any such Protected Party; . . . .

{00374857-13}                    21

Plan, Article IX.F, fourth unnumbered paragraph.

Thereafter, the Plan provides that this Court retains sole jurisdiction to adjudicate the claim. *Id.*

The above provisions have the effect of channeling all post-petition claims against the Reorganized Debtor, the Creditor Trust and others into the Bankruptcy Court to determine whether a claim can be asserted and then as the forum with the "exclusive jurisdiction" to adjudicate the claim.  The provisions are not authorized under the Bankruptcy Code.

Congress, when it enacted 11 U.S.C. § 524(g), provided a limited channeling injunction for asbestos and in some mass tort cases.  Section 524(g) was not created to shield parties that are liquidating a debtor and its reach does not extend to garden variety unsecured creditors or serve as a barrier to claims that arose after the Effective Date of the Plan.  The impact of Section 524(g) is to address pre-petition claims and future claims arising out of pre-petition activity where the claims have yet to manifest.

In addition, 11 USC 524 § (g) is only applicable to a Debtor that obtains a discharge pursuant to 11 USC § 1141.  The Debtor in its approved Disclosure Statement [See DKT 1473, pp. 8-9] classifies the Debtor's post confirmation activities as one of "wind down" of the Managed Funds as well as the monetization of the balance of the Reorganized Debtor Assets.  In addition, the Claimant Trust formed pursuant to the Plan is a "liquidation trust" [See DKT 1656-2 section 2.2], which makes the Plan a Plan that " liquidates all or substantially all of the property of the estate".  Pursuant to 11 U.S.C. § 1141(d)(3), a Debtor whose Plan is none that liquidates all or substantially all of the property of the estate is not eligible for a discharge.  11 U.S.C. § 524(g) cannot authorize any channeling injunction for the Debtor in its Plan.

**Conclusion**

For the reasons set forth herein, confirmation of the Plan must be denied.

**Appx. 07154**

January 5, 2021

Respectfully submitted,

*/s/Douglas S. Draper.*
Douglas S. Draper, LA Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com

Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust*
*and Get Good Trust*

## CERTIFICATE OF SERVICE

I do hereby certify that on the 5th day of January, 2021, a copy of the above and foregoing *Objection to Confirmation of the Debtor's Fifth Amended Plan of Reorganization* has been served electronically to all parties entitled to receive electronic notice in this matter through the Court's ECF system as follows:

- David G. Adams    david.g.adams@usdoj.gov, southwestern.taxcivil@usdoj.gov;dolores.c.lopez@usdoj.gov
- Amy K. Anderson    aanderson@joneswalker.com, lfields@joneswalker.com,kjohnson@joneswalker.com,sbuchanan@joneswalker.com
- Zachery Z. Annable    zannable@haywardfirm.com
- Bryan C. Assink    bryan.assink@bondsellis.com
- Asif Attarwala    asif.attarwala@lw.com
- Joseph E. Bain    JBain@joneswalker.com, kvrana@joneswalker.com;joseph-bain-8368@ecf.pacerpro.com;msalinas@joneswalker.com
- Michael I. Baird    baird.michael@pbgc.gov, efile@pbgc.gov
- Sean M. Beach    bankfilings@ycst.com, sbeach@ycst.com
- Paul Richard Bessette    pbessette@KSLAW.com, ccisneros@kslaw.com;jworsham@kslaw.com;kbryan@kslaw.com;jcarvalho@kslaw.com;rmatsumura@kslaw.com
- John Y. Bonds    john@bondsellis.com, joyce.rehill@bondsellis.com

**Appx. 07155**

- Larry R. Boyd     lboyd@abernathy-law.com, ljameson@abernathy-law.com
- Jason S. Brookner     jbrookner@grayreed.com, lwebb@grayreed.com;acarson@grayreed.com
- Greta M. Brouphy     gbrouphy@hellerdraper.com, dhepting@hellerdraper.com;esixkiller@hellerdraper.com;jmarino@hellerdraper.com
- M. David Bryant     dbryant@dykema.com, csmith@dykema.com
- Candice Marie Carson     Candice.Carson@butlersnow.com
- Annmarie Antoniette Chiarello     achiarello@winstead.com
- Shawn M. Christianson     schristianson@buchalter.com, cmcintire@buchalter.com
- Matthew A. Clemente     mclemente@sidley.com, matthew-clemente-8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russell@sidley.com;dtwomey@sidley.com
- Megan F. Clontz     mclontz@spencerfane.com, gpronske@spencerfane.com;jkathman@spencerfane.com;lvargas@spencerfane.com
- Andrew Clubok     andrew.clubok@lw.com
- Leslie A. Collins     lcollins@hellerdraper.com
- David Grant Crooks     dcrooks@foxrothschild.com, etaylor@foxrothschild.com,jsagui@foxrothschild.com,plabov@foxrothschild.com,jmanfrey@foxrothschild.com
- Gregory V. Demo     gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com
- Casey William Doherty     casey.doherty@dentons.com, dawn.brown@dentons.com;Docket.General.Lit.DAL@dentons.com;Melinda.sanchez@dentons.com
- Douglas S. Draper     ddraper@hellerdraper.com, dhepting@hellerdraper.com;esixkiller@hellerdraper.com;jmarino@hellerdraper.com
- Lauren Kessler Drawhorn     lauren.drawhorn@wickphillips.com, samantha.tandy@wickphillips.com
- Vickie L. Driver     Vickie.Driver@crowedunlevy.com, crissie.stephenson@crowedunlevy.com;seth.sloan@crowedunlevy.com;elisa.weaver@crowedunlevy.com;ecf@crowedunlevy.com
- Jonathan T. Edwards     jonathan.edwards@alston.com
- Jason Alexander Enright     jenright@winstead.com
- Robert Joel Feinstein     rfeinstein@pszjlaw.com
- Matthew Gold     courts@argopartners.net
- Bojan Guzina     bguzina@sidley.com
- Thomas G. Haskins     thaskins@btlaw.com
- Melissa S. Hayward     MHayward@HaywardFirm.com, mholmes@HaywardFirm.com
- Michael Scott Held     mheld@jw.com, lcrumble@jw.com
- Gregory Getty Hesse     ghesse@HuntonAK.com, amckenzie@HuntonAK.com;tcanada@HuntonAK.com;creeves@HuntonAK.com
- Juliana Hoffman     jhoffman@sidley.com, txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

- A. Lee Hogewood    lee.hogewood@klgates.com, haley.fields@klgates.com;matthew.houston@klgates.com;courtney.ritter@klgates.com;mary-beth.pearson@klgates.com
- John J. Kane    jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com
- Jason Patrick Kathman    jkathman@spencerfane.com, gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com
- Edwin Paul Keiffer    pkeiffer@romclaw.com, bwallace@romclaw.com
- Jeffrey Kurtzman    kurtzman@kurtzmansteady.com
- Phillip L. Lamberson    plamberson@winstead.com
- Lisa L. Lambert    lisa.l.lambert@usdoj.gov
- Paul M. Lopez    bankruptcy@abernathy-law.com
- Faheem A. Mahmooth    mahmooth.faheem@pbgc.gov, efile@pbgc.gov
- Ryan E. Manns    ryan.manns@nortonrosefulbright.com
- Thomas M. Melsheimer    tmelsheimer@winston.com, tom-melsheimer-7823@ecf.pacerpro.com
- Paige Holden Montgomery    pmontgomery@sidley.com, txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com
- J. Seth Moore    smoore@ctstlaw.com, jsteele@ctstlaw.com
- John A. Morris    jmorris@pszjlaw.com
- Edmon L. Morton    emorton@ycst.com
- David Neier    dneier@winston.com, dcunsolo@winston.com;david-neier-0903@ecf.pacerpro.com
- Holland N. O'Neil    honeil@foley.com, jcharrison@foley.com;acordero@foley.com
- Rakhee V. Patel    rpatel@winstead.com, dgalindo@winstead.com;achiarello@winstead.com
- Charles Martin Persons    cpersons@sidley.com
- Mark A. Platt    mplatt@fbtlaw.com, aortiz@fbtlaw.com
- Jeffrey Nathan Pomerantz    jpomerantz@pszjlaw.com
- Kimberly A. Posin    kim.posin@lw.com, colleen.rico@lw.com
- Linda D. Reece    lreece@pbfcm.com
- Penny Packard Reid    preid@sidley.com, txefilingnotice@sidley.com;penny-reid-4098@ecf.pacerpro.com;ncade@sidley.com
- Amanda Melanie Rush    asrush@jonesday.com
- Alyssa Russell    alyssa.russell@sidley.com
- Douglas J. Schneller    douglas.schneller@rimonlaw.com
- Brian Patrick Shaw    shaw@roggedunngroup.com, cashion@roggedunngroup.com;jones@roggedunngroup.com
- Michelle E. Shriro    mshriro@singerlevick.com, scotton@singerlevick.com;tguillory@singerlevick.com
- Nicole Skolnekovich    nskolnekovich@hunton.com, plozano@huntonak.com;astowe@huntonak.com;creeves@huntonak.com
- Jared M. Slade    jared.slade@alston.com
- Frances Anne Smith    frances.smith@judithwross.com, michael.coulombe@judithwross.com
- Eric A. Soderlund    eric.soderlund@judithwross.com

**Appx. 07157**

- Martin A. Sosland    martin.sosland@butlersnow.com, ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com
- Laurie A. Spindler    Laurie.Spindler@lgbs.com, Dora.Casiano-Perez@lgbs.com
- Jonathan D. Sundheimer    jsundhimer@btlaw.com
- Kesha Tanabe    kesha@tanabelaw.com
- Chad D. Timmons    bankruptcy@abernathy-law.com
- Dennis M. Twomey    dtwomey@sidley.com
- Basil A. Umari    BUmari@dykema.com, pelliott@dykema.com
- United States Trustee    ustpregion06.da.ecf@usdoj.gov
- Artoush Varshosaz    artoush.varshosaz@klgates.com, Julie.garrett@klgates.com
- Donna K. Webb    donna.webb@usdoj.gov, brian.stoltz@usdoj.gov;CaseView.ECF@usdoj.gov;brooke.lewis@usdoj.gov
- Jaclyn C. Weissgerber    bankfilings@ycst.com, jweissgerber@ycst.com
- Elizabeth Weller    dallas.bankruptcy@publicans.com, dora.casiano-perez@lgbs.com;Melissa.palo@lgbs.com
- Daniel P. Winikka    danw@lfdslaw.com, craigs@lfdslaw.com,dawnw@lfdslaw.com,ivys@lfdslaw.com
- Hayley R. Winograd    hwinograd@pszjlaw.com
- Megan Young-John    myoung-john@porterhedges.com

I also caused same to be served on January 5, 2021, by Docusource via U.S. First Class Mail, postage prepaid upon the following parties who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service):

Paul N. Adkins
11 Mount Emily Road #07-27
Singapore, 228493

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

James T. Bentley
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

James T. Bentley
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

Jeffrey E. Bjork
LATHAM & WATKINS LLP
355 South Grand Avenue, Ste. 100

**Appx. 07158**

Los Angeles, CA 90071

Jessica Boelter
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019

Matthew G. Bouslog
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612

William P. Bowden
Ashby & Geddes, P.A.
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

Candace C. Carlyon
CARLYON CICA CHTD.
265 e. Warm Springs Road., Ste 107
Las Vegas, NV 89119

Joseph L. Christensen
McCollom D'Emilio Smith Uebler LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808

Louis J. Cisz
Nixon Peabody LLP
One Embarcadero Center, 32nd Fl
San Francisco, CA 94111

Kevin M. Coen
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street, Suite 1600
1000 North King Street
Wilmington, DE 19801

Debra A. Dandeneau
Baker & McKenzie LLP
425 5th Ave.
New York, NY 10018

Deloitte Tax LLP
1111 Bagby Street, Ste. 4500

**Appx. 07159**

Houston, TX 77002

Mark. L. Desgrosseilliers
Chipman, Brown, Cicero & Cole, LLP
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, DE 19801

Development Specialists, Inc.
333 South Grand Ave., Ste. 4070
Los Angeles, CA 90071

Fair Harbor Capital, LLC
Ansonia Finance Station
PO Box 237037
New York, NY 10023

Bojan Guzina
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

Emily M. Hahn
Abernathy, Roeder, Boyd & Hullett, P.C.
1700 Redbud Blvd. Ste. 300
McKinney, TX 75069

Hain Capital Group, LLC
301 Route 17, 6th Floor
Rutherford, NJ 07070

Marc B. Hankin
Jenner & Block LLP
919 Third Avenue
New York, NY 10022-3098

Michelle Hartman
Baker & McKenzie LLP
1900 N. Pearl, Ste. 1500
Dallas, TX 75201

Hayward & Associates PLLC
10501 N. Central Expwy., Ste 106
Dallas, TX 75231

William A. Hazeltine

{00374857-13}                     28

Sullivan Hazeltine Allinson LLC
901 North Market Street
Suite 1300
Wilmington, DE 19801

Kuan Huang
Latham & Watkins LLP
855 Third Avenue
New York, NY 10022

Ira D Kharasch
10100 Santa Monica Boulevard
13th Floor
Los Angeles, CA 90067

Marshall R. King
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
Suite 1400
New York, NY 10066

Alan J. Kornfeld
Pachulski Stang Ziehl & Jones LLPL
10100 Santa Monica Blvd., 13 Fl
Los Angeles, CA 90067

Kurtzman Carson Consultants LLC
Attn: Drake Foster
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA 90245

Kurtzman Carson Consultants, LLC
222 N. Pacific Coast Highway, Ste. 300
El Segundo, CA 90245

M. Natasha Labovitz
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Richard B. Levin
Jenner & Block LLP
919 Third Avenue
New York, NY 10022-3098

Maxim B Litvak

{00374857-13}    29

**Appx. 07161**

Pachulski Stang Ziehl & Jones LLP
150 California Street
15th Floor
San Francisco, CA 94111

John E. Lucian
Blank Rome LLP
1201 N. Market Street, Sutie 800
1000 North King Street
Wilmington, DE 19801

Lauren Macksoud
1221 Avenue of the Americas
New York, NY 10020-1089

Mark M. Maloney
King & Spalding LLP
191 Peachtree St.
Suite 4900
Atlanta, GA 30303-1763
mmaloney@kslaw.com, pwhite@kslaw.com

Mark M. Maloney
King & Spalding LLP
1180 Peachtree Steet, NE
Atlanta, GA 30309

Terri L. Mascherin
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456

Patrick C. Maxcy
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606-6361

R. Stephen McNeill
POTTER ANDERSON & CORROON LLP
1313 North Market Street, 6th Fl
Wilmington, DE 19801

Mercer (US) Inc.
155 N. Wacker Drive, Ste. 1500
Chicago, IL 60606

Appx. 07162

Michael J. Merchant
RICHARDS, LAYTON & FINGER, P.A.
one Rodney Square
920 North King Street
Wilmington, DE 19801

Curtis S. Miller
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street, Suite 1600
1000 North King Street
Wilmington, DE 19801

Josef W. Mintz
Blank Rome LLP
1201 Market Street, Suite 800
1000 North King Street
Wilmington, DE 19801

Joseph T. Moldovan
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022

Alan A. Moskowitz
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10066

Michael R. Nestor
YOUNG CONAWAY STARGATT & TAYLOR, LL
Rodney Square
1000 North King Street
Wilmington, DE 19801

James E. O'Neill
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Fl.
Wilmington, DE 19801

Tracy M. O'Steen
CARLYON CICA CHTD.
265 E. Warm Springs Road., Ste 107
Las Vegas, NV 89119

Jeffrey N. Pomerantz
Pachulski Stang Ziehl & Jones LLP

**Appx. 07163**

10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

Jeffrey N. Pomerantz
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

Kathleen Preston
Winston & Strawn LLP
800 Capitol Street, Ste. 2400
Houston, TX 77002

Michael A. Rosenthal - DO NOT USE
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10066

Jeremy W. Ryan
POTTER ANDERSON & CORROON LLP
1313 North Market Street, 6th Fl
Wilmington, DE 19801

James P. Seery
795 Columbus Ave., 12A
New York, NY 10025

Sally T. Siconolfi
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022

Sarah E. Silveira
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

D. Ryan Slaugh
POTTER ANDERSON & CORROON LLP
1313 North Market Street, 6th Fl
Wilmington, DE 19801

Tracy K. Stratford
Jones Day
North Point

**Appx. 07164**

901 Lakeside Ave.
Cleveland, OH 44114

Daniel E. Stroik
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Sarah A. Tomkowiak
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304

Stephen G. Topetzes
K&L Gates LLP
1601 King St., N.W.
Washington, DC 20006

Thomas A. Uebler
McCollom D'Emilio Smith Uebler LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808

Michael L. Vild
CROSS & SIMON, LLC
1105 N. Market Street, Suite 901
1000 North King Street
Wilmington, DE 19801

Elissa A. Wagner
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003

Erica S. Weisgerber
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

James A. Wright
K&L Gates LLP

**Appx. 07165**

State Street Financial Center
One Lincoln St.
Boston, MA 02111

Sean M. Young Conway Stargatt & Taylor, LLP
Young Conway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801

*/s/Douglas S. Draper*
Douglas S. Draper, LA Bar No. 5073

Appx. 07166