# EXHIBIT 65

Docket #1675 Date Filed: 01/05/2021

Joseph M. Coleman (State Bar No. 04566100)
John J. Kane (State Bar No. 24066794)
**KANE RUSSELL COLEMAN LOGAN PC**
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone - (214) 777-4200
Telecopier - (214) 777-4299
Email: jcoleman@krcl.com
Email: jkane@krcl.com

**ATTORNEYS FOR CLO HOLDCO, LTD.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-SGJ |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |

## CLO HOLDCO, LTD.'S JOINDER TO OBJECTION TO CONFIRMATION OF FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P. [DKT NO 1670] AND SUPPLEMENTAL OBJECTIONS TO PLAN CONFIRMATION

**TO THE HONORABLE STACEY G. JERNIGAN, U.S. BANKRUPTCY JUDGE:**

CLO Holdco, Ltd. ("**CLO Holdco**") respectfully files this *Joinder to Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. [Dkt. No. 1670] and Supplemental Objection to Plan Confirmation* (the "**CLO Holdco Objection**") which seeks entry of an order from this Court denying confirmation of the Debtor's *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "**Plan**") [Dkt. No. 1472] for the reasons stated in that certain *Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* filed by the entities defined therein as the "Funds and Advisors" on January 5, 2020 [Dkt. No. 1670] (the

1934054210105000000000022

**"F&A Objection"**), and the additional reasons set forth below. In support of the CLO Holdco Objection, CLO Holdco respectfully states as follows:

## I.
## PRELIMINARY STATEMENT

1.      CLO Holdco owns interests in certain funds managed by the Debtor pursuant to portfolio management and servicing agreements, including the following funds (**"Managed CLOs"**): Aberdeen Loan Funding, Ltd.; Acis CLO 2017-7; Brentwood CLO, Ltd.; Grayson CLO, Ltd.; Liberty CLO, Ltd.; Red River CLO, Ltd.; Rockwall CDO, Ltd.; Loan Funding II, LLC (Valhalla); and Westchester CLO, Ltd. As evidenced by the Debtor's *Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor pursuant to the Fifth Amended Plan, (II) Cure Amounts, if any, and (III) Related Procedures in Connection Therewith* (the **"Plan Assumption Notice"**) [Dkt. No. 1648], the Debtor intends to assume management contracts for substantially all of the aforementioned Managed CLOs (the **"CLO Management Contracts"**).

2.      In many instances, CLO Holdco, the Funds, and Advisors, collectively own or manage a majority or even super-majority of the remaining beneficial interests in the Managed CLOs. Accordingly, CLO Holdco and the Funds and Advisors have a vested interest in the successful management of the Managed CLOs on a going-forward basis. That interest is real, and many millions of dollars are at stake. Astonishingly, though the Debtor intends to assume the CLO Management Contracts, the Debtor discloses in its Plan and *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the **"Disclosure Statement"**) [Dkt. No. 1473] that it may terminate its investment management employees by the end of January 2021 and that the Reorganized Debtor may employ a Sub-Servicer to perform the Debtor's current portfolio management duties and obligations.

3.      Moreover, the Debtor intends to wind down all "Managed Funds" under the Plan. The term Managed Funds is defined in the Plan to include "any other investment vehicle managed

by the Debtor pursuant to an Executory Contract assumed pursuant to this Plan." PLAN, Art. I.B.83. The CLOs subject to assumed CLO Management Contracts are therefore "Managed Funds" under the Plan, and will be wound down by the Reorganized Debtor regardless of the will of the financial interest holders in those Managed Funds. The Plan lacks flexibility for the appropriate management of Managed Funds, enjoins fund interest owners like CLO Holdco from challenging the appropriateness of a fund wind down, and effectively strips fund interest owners of their contractual rights to seek alternative management for the funds under the agreements assumed by the Debtor.

4. In its most distilled essence, the Plan would allow the Debtor to assume only select Debtor-favorable provisions of the CLO Management Contracts, while effectively discarding potentially adverse governance provisions. The Debtor's proposed assumption of the CLO Management Contracts under the Plan is so illusory that it would empower the Debtor—or a designated Sub-Servicer—to liquidate funds in which the Debtor has no interest for the purported benefit of the Debtor's creditors: (i) in direct contravention of the expressed interests of a majority of the beneficial owners of those funds; and (ii) with no recourse despite express provisions of the CLO Management Contracts that entitle interest holders to replace the Debtor as manager.

5. In conjunction with the Debtor's proposed "cherry picking" of provisions of assumed contracts, the Plan's excessively broad injunction, exculpation, and release provisions render it unconfirmable under applicable United States Supreme Court and Fifth Circuit precedent.

## II.
## BACKGROUND

6. CLO Holdco is a Cayman limited partnership that owns interests in various funds and serves as part of a greater philanthropic endowment generally referred to as the DAF, or Donor Advised Fund. While often painted as a pernicious bad actor before this Court, CLO Holdco facilitates the annual donation of millions of dollars to charitable organizations, and has paid tens of

millions of dollars to the Debtor in recent years pursuant to a Second Amended and Restated Investment Advisory Agreement, dated January 1, 2017, and a Second Amended and Restated Service Agreement dated January 1, 2017, both of which the Debtor is terminating in Q1, 2021.

7.      While CLO Holdco willingly complied with a Debtor request that it amend its claim from more than $11 million to $0 following this Court's approval of the Debtor's settlement with the Redeemer Committee [Dkt. No. 1273], it still has interests affected by the Debtor's proposed Plan.  As described above, CLO Holdco owns interests in certain collateralized loan obligations referred to herein as the Managed CLOs.  The Managed CLOs are securitization vehicles that were formed to acquire and hold pools of debt obligations.  The Managed CLOs also issued various tranches of notes and preferred shares, which are intended to be repaid from proceeds of the subject Managed CLO's pool of debt obligations.  The notes issued by the Managed CLOs are paid according to a contractual waterfall, and after the notes are paid in full all remaining value in the Managed CLOs flows to holders of the preferred shares.

8.      Most of the Managed CLOs have paid off all the tranches of notes or all but the last tranche.  Accordingly, most of the economic value remaining in the Managed CLOs, and all of the upside, belongs to the holders of the preferred shares, like CLO Holdco.  As detailed in the F&A Objection, CLO Holdco, "the registered investment companies, [and] business development company…represent a majority of the investors in the CLOs as follows: … Liberty CLO, Ltd. 70.43%, Stratford CLO, Ltd. 69.05%, Aberdeen Loan Funding, Ltd. 64.58%, Grayson CLO, Ltd. 61.65%*, Westchester CLO, Ltd. 58.13%, Rockwall CDO, Ltd. 55.75%, Brentwood CLO, Ltd. 55.74%, Greenbriar CLO, Ltd. 53.44%." F&A Objection, ¶ 15.

9.      As more fully set forth in the F&A Objection, each of the aforementioned CLOs entered into contracts pursuant to which the Debtor would serve as the fund's portfolio manager. While the contracts vary to some degree, each imposes a duty on the Debtor to maximize the value

of the CLO's assets for the benefit of the CLO's noteholders and preference shareholders. Each also allows a majority or supermajority of the CLO's noteholders to replace the Debtor as portfolio manager either for cause or, in some instances, without cause.

10. Correspondence with Debtor's counsel, in addition to language found in the Plan and Disclosure Statement, makes it abundantly clear that the Debtor intends to assume the CLO Management Contracts, but preclude CLO Holdco and other similarly situated preference shareholders from exercising their contractual rights to remove the Debtor as portfolio manager under those agreements either upon a finding of cause, where required, or requisite majority or super majority vote where no cause is required.

## JOINDER

11. CLO Holdco hereby joins the objections to plan confirmation set forth in the F&A Objection.

## SUPPLEMENTAL OBJECTIONS

### A. PARTIAL ASSUMPTION – THE PLAN VIOLATES CONTROLLING SUPREME COURT PRECEDENT

12. As detailed above, the CLO Management Contracts provide preference shareholders an opportunity to replace the CLO manager, in this case the Debtor, for cause and, in some instances, even without cause upon satisfaction of a requisite vote. The Debtor's Plan would allow the Debtor to assume the CLO Management Contracts, while precluding preference shareholders from exercising their contractual rights under the assumed agreements. The result is de facto "cherry picking" in which the Debtor assumes only favorable provisions of the CLO Management Contracts to the detriment of contract parties. Such "cherry picking" violates controlling Supreme Court and Fifth Circuit precedent, and precludes confirmation of the Plan.

### (i) The Plan Deprives Preference Shareholders Their Remedies Under Assumed CLO Management Contracts

13. In its Disclosure Statement, the Debtor explains that under the Plan "The Reorganized Debtor will manage the wind down of the Managed Funds as well as the monetization of the balance of the Reorganized Debtor Assets." DISCLOSURE STATEMENT, Art. I.C.1 (emphasis added). The Debtor further states that "The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds." Id. at Art. III.F.1. Rather, "[t]he Reorganized Debtor may, in its discretion…utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees" post confirmation to effectuate the wind down of the Managed Funds. Id. at Art. III.F.3.d.

14. In other words, while the Plan guarantees that the Managed Funds, including the Managed CLOs, will be wound down, the Reorganized Debtor may terminate its employee-advisors and delegate the wind down to an unidentified third party sub-servicer. Should the Reorganized Debtor and Sub-Servicer's conduct constitute cause for removal under the assumed CLO Management Contracts, the CLO preference shareholders must be entitled to effectuate their contractual rights and remedies. Alternatively, where the CLO Management Contracts do not require cause for removal of the portfolio manager, the preference shareholders must remain entitled to effectuate their contractual rights and remedies. For instance if the preference shareholders determine that an expedited liquidation is not in their best interests and desire a longer investment horizon, or if they have reason to believe that the Reorganized Debtor or Sub-Servicer is negligently managing their investments, they should be able to seek the replacement of the portfolio manager. It is important to remember, after all, that it is the preference shareholders' money that is at stake, and that the portfolio manager operates for the benefit of the investors, not vice versa.

15. Unfortunately, the injunction found in Article IX.F. of the Plan precludes parties in interest—like preference shareholders of CLO Managed Funds—from "taking any actions to

interfere with the implementation or consummation of the Plan." Under this egregious injunction, preference shareholders appear barred from "taking any actions" that would in any way interfere with the Reorganized Debtor's efforts to "wind down…the Managed Funds." *See* PLAN, Art. IX.F.

16. By assuming the CLO Management Contracts through the Plan, defining them as Managed Funds, and subjecting parties-in-interest under the agreements to the Plan's staggeringly expansive injunction, the Debtor has effectively carved out the preference shareholders' rights and remedies under the CLO Management Contracts in contravention of section 365 of the Bankruptcy Code. The preference shareholders are left without recourse—despite their contractual rights— even if the Reorganized Debtor's winding up of the Managed Funds is negligent, a breach of its duties under the CLO Management Contracts, or cause for removal as portfolio manager.

### (ii) Controlling Case Authority Precludes the Debtor's Proposed Partial Assumption of the CLO Management Contracts

17. A debtor seeking to assume an executory contract under section 365 of the Bankruptcy Code must assume the contract in its entirety, *cum onere*. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984) (citing *In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3d Cir. 1951)). As explained by the Third Circuit in a ruling adopted by the United States Supreme Court, a debtor-in-possession seeking to assume an executory contract "may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other." *Italian Cook Oil*, 190 F.2d at 996. This Court recently adopted and cited the Supreme Court's *Bildisco* holding in the *Senior Care* bankruptcy cases, ruling that "If a debtor chooses to assume an unexpired lease, it must assume the lease *in its entirety*." *In re Senior Care Centers*, 607 B.R. 580, 587 (Bankr. N.D. Tex. 2019) (emphasis added).

18. Like this Court, the Fifth Circuit also agreed with the Third Circuit and Supreme Court's reasoning in *In re National Gypsum Co. See In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000). In that case the Fifth Circuit ruled that "Where the debtor assumes an executory contract, it

**Appx. 07274**

must assume the entire contract, *cum onere*—the debtor accepts both the obligations and the benefits of the executory contract." *Id.*

19. Importantly, the Fifth Circuit also recognizes that a court cannot, through orders or otherwise, effectively modify an executory contract over the objection of parties to the contract. *In re Escarent Entities, L.P.*, 423 Fed.Appx, 462, 466 (5th Cir. 2011). In that case, the Fifth Circuit noted that "The court, moreover, effectively rewrote the parties' contract by adding" certain terms disadvantageous to the counterparty, and that the "un-agreed-to modification betokened more than a mere assumption of the parties' contract." *Id.* The Fifth Circuit condemned the lower court's actions, ruling that they "violated its obligation to ensure that [the debtor] assumed the contract *in toto.*" *Id.* Other courts have similarly ruled that a debtor cannot modify an executory contract through assumption without the agreement of parties to the contract. *See, e.g., In re Network Access Solutions, Corp.*, 330 B.R. 67, 74 (Bankr. D. Del. 2005) (citing *In re Fleming Cos.*, No. 03–10945, 2004 WL 385517 at *3 (Bankr. D. Del. Feb. 27, 2004) ("[A] debtor's assumption ... cannot modify an agreement's express terms[.]").

20. Courts should scrutinize whether a debtor is using a proposed plan of reorganization to effectively modify assumed executory contracts. *See Nat'l Gypsum Co.*, 208 F.3d at 506-07. As the Fifth Circuit ruled in *National Gypsum*, payment obligations due under an assumed executory contract could not be nullified by discharge provisions of the debtor's plan. *Id.* Similarly, the court in *In re Cajun Electric Power Co-Op, Inc.* ruled that the debtor's plan of reorganization was improper where the "natural effect" of the plan was the nonconsensual modification of an assumed executory contract. *In re Cajun Elec. Power Co-Op., Inc.*, 230 B.R. 693, 712-14 (M.D. La. 1999). The court's decision in *Cajun Electric* is pertinent here. As ruled by that court:

> The court finds that the natural effect of the Trustee's Plan results in an improper modification of the Supply Contracts. The court has determined that the Trustee may assume and assign the Supply Contracts; however, in designing a plan which *inter alia* binds the Members for 25 years to treatment which they do not want and

> for which they did not contract, the Trustee has, in effect, achieved a result inconsistent with those jurisprudential directives denying the ability to modify such contracts.

*Id.* at 713-14. A debtor cannot construct a plan that would, in effect, alter the terms and conditions of the very executory contracts the debtor seeks to assume. *Id.*

21.     Other courts have similarly ruled that a debtor cannot modify its contracts through its plan of reorganization without consent, including the consent of *third-party beneficiaries*, regardless of whether the contract was executory. *In re Texas Rangers Baseball Partners*, 498 B.R. 679, 704-05 (Bankr. N.D. Tex. 2013); *In re Coates*, No. 17-00481, 2017 WL 6520456, at *1 (Bankr. M.D. Pa. 2017); *In re Exide Technologies*, 378 B.R. 762, 765 (Bankr. D. Del. 2007) (Noting that purported assumption of executory contracts under plan must comply with the express requirements of section 365 of the Bankruptcy Code).

22.     In *Texas Rangers*, the debtor sought to assume and amend a contract through its plan of reorganization. *Texas Rangers*, 498 B.R. at 704-05. The debtor then used certain language in the plan to effectuate an amendment to the contract that reduced the remaining term of the contract from seven years to three months, without the express consent of third-party beneficiaries to the agreement. *Id.* When the amendment was later challenged, the court ruled that the amendment was invalid and unenforceable "since done without the consent of the third-party beneficiary," and that the debtor's efforts to amend the contract through the plan assumption process without the consent of the third-party beneficiaries "circumvented proper procedures under section 365 of the Bankruptcy Code." *Id.* at 705.

23.     In this case, the Debtor, through its injunction and exculpation provisions, would effectively preclude parties to the CLO Management Contracts, including CLO Holdco, from taking any actions that could, in any way, affect the Reorganized Debtor's efforts to wind down the Managed CLOs. Approving the Plan, as written, would therefore affect the nature of the CLO

Management Contracts and result in a non-consensual modification of those agreements in violation of *Bildisco*, *Escarant*, *National Gypsum*, and *Texas Rangers*. As ruled by the Supreme Court in *Bildisco*, should the Debtor seek to assume the CLO Management Contracts, it must assume them in their entirety, taking benefits with risks. *Bildisco*, 465 U.S. at 531-32.

**B.** **THE PLAN'S EXCULPATION AND INDEMNIFICATION PROVISIONS OPERATE AS THIRD PARTY RELEASES AND VIOLATE CONTROLLING CASE PRECEDENT**

24. The exculpation and release clauses found in Article IX of the Plan are excessive, and violate controlling Fifth Circuit precedent. The Plan defines "Exculpated Parties" to include, among others, all of the Debtor's majority-owned subsidiaries, all Managed Funds, the Independent Directors, and all of the aforementioned parties' "Related Persons," a term itself staggeringly expansive. PLAN, Art. I.B.61., 110. The Plan similarly defines "Protected Parties", which also includes all Managed Funds and their Related Persons. *Id.* at Art. 1.B.104.

25. Under the Plan, all Exculpated Parties are absolved of potential liability associated with any claims or causes of action that may arise related to the implementation of the Plan. *Id.* at Art. IX.C. That would inherently include all actions related to the wind down of the Managed Funds, including any breaches of contract, duties, or even the Advisers Act of 1940. While not expressly worded as a release, the Plan's exculpation clause effectively releases the Exculpated Parties from all such claims or causes of action.

26. Similarly, Protected Parties are effectively released from all claims in any way related to "the administration of the Plan…the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust, or the transactions in furtherance of the foregoing…" other than those arising from "bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence…." *Id.* at Art. IX.F.

27. The Fifth Circuit has addressed the issue of release and exculpation clauses that applied to non-debtor third parties and held that such releases are overly broad. *See, e.g., In re Pacific*

---

**Appx. 07277**

*Lumber Co.*, 584 F.3d 229, 251 (5th Cir. 2009) (citing 11 U.S.C. § 524(e)). Section 524(e) releases only the debtor, not co-liable third parties, and certainly not the Debtor's contract counterparties like the Managed Funds. *See id.* at 252 (citing *See, e.g., In re Coho Resources, Inc.*, 345 F.3d 338, 342 (5th Cir.2003); *Hall v. National Gypsum Co.*, 105 F.3d 225, 229 (5th Cir.1997); *Matter of Edgeworth*, 993 F.2d 51, 53–54 (5th Cir.1993); *Feld v. Zale Corporation*, 62 F.3d 746 (5th Cir.1995)).

28.     The Bankruptcy Court for the Northern District of Texas has also ruled that exculpation clauses must be so narrow that they cannot extend to employees and officers and directors of a debtor. *In re ReoStar Energy Corp.*, 2012 WL 1945801 (Bankr. N.D. Tex. May 30, 2012). Even, post-confirmation permanent injunctions that *effectively* release non-debtors from liability are prohibited. *In re Zale Corp.*, 62 F.3d at 761; 11 U.S.C. § 524(e). In line with this holding, the District Court for the Northern District of Texas recently found clear error where a bankruptcy court confirmed a debtor's plan that provided for injunctions shielding various non-debtor third parties. *In re Thru, Inc.* 2018 WL 5113124, at *21 (N.D. Tex. 2018).

29.     The Plan injunction and exculpation provisions, which effectively release the Managed Funds and non-debtor parties from liability for post-confirmation activities, therefore violate well established and controlling Fifth Circuit and Northern District case precedent and preclude confirmation.

## IV.
## PRAYER FOR RELIEF

WHEREFORE, CLO Holdco requests that this Court grant the CLO Holdco Objection and enter an order denying confirmation of the Debtor's Plan.

DATED: January 5, 2020

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: ____ /s/ John J. Kane _____
     Joseph M. Coleman
     State Bar No. 04566100
     John J. Kane
     State Bar No. 24066794

901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone - (214) 777-4200
Telecopier - (214) 777-4299
Email: jcoleman@krcl.com
Email: jkane@krcl.com

**ATTORNEYS FOR CLO HOLDCO, LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2020, a true and correct copy of the foregoing CLO Holdco Objection was served via the Court's electronic case filing (ECF) system upon all parties receiving such service in this bankruptcy case; and via e-mail upon the United States Trustee at Lisa.L.Lambert@usdoj.gov and upon the following parties:

Paige Holden Montgomery
Penny P. Reid
Juliana L. Hoffman
2021 McKinney Avenue, Suite 2000
Dallas, Texas 74201
Email:  pmontgomery@sidley.com
     preid@sidley.com
     jhoffman@sidley.com

Bojan Guzina
Matthew A. Clemente
Dennis M. Twomey
Alyssa Russell
One South Dearborn Street
Chicago, Illinois 60603
Email:  bguzina@sidley.com
     mclemente@sidley.com
     dtwomey@sidley.com
     alyssa.russell@sidley.com

Jeffrey N. Pomerantz
Ira D. Kharasch
John A. Morris
Gregory V. Demo
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Email:  jpomerantz@pszjlaw.com
     ikharasch@pszjlaw.com
     jmorris@pszjlaw.com
     gdemo@pszjlaw.com

Melissa S. Hayward
Texas Bar No. 24044908
Zachery Z. Annable
Texas Bar No. 24053075
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Email:  MHayward@HaywardFirm.com
     ZAnnable@HaywardFirm.com

     /s/ John J. Kane _____
     John J. Kane