# EXHIBIT 71

Case 19-34054-sgj11 Doc 854 Filed 07/16/20    Entered 07/16/20 14:00:44    Page 1 of 12

Docket #0854  Date Filed: 07/16/2020



**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 16, 2020**

_____
United States Bankruptcy Judge

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | § | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 19-34054** |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | **Chapter 11** |
| **L.P.,** | § | |
| | § | **Re: Docket No. 774** |
| **Debtor.** | § | |

### ORDER APPROVING DEBTOR'S MOTION UNDER
### BANKRUPTCY CODE SECTIONS 105(a) AND 363(b)
### AUTHORIZING RETENTION OF JAMES P. SEERY, JR., AS
### CHIEF EXECUTIVE OFFICER, CHIEF RESTRUCTURING OFFICER, AND
### FOREIGN REPRESENTATIVE NUNC PRO TUNC TO MARCH 15, 2020

Upon the *Debtor's Motion under Bankruptcy Code Sections 105(a) and 363(b) for Authorization to Retain James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer and Foreign Representative Nunc Pro Tunc To March 15, 2020* (the "Motion"),[1] and the

---

[1] All terms not otherwise defined herein shall be given the meanings ascribed to them in the Motion.

DOCS_SF:103156.19 36027/002



1934054200716000000000007

**Appx. 07507**

Court finding that: (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iv) due and sufficient notice of the Motion has been given; (v) entry into the Agreement was an exercise of the Debtor's sound business judgment; and (vi) it appearing that the relief requested in the Motion is necessary and in the best interests of the Debtor's estate and creditors; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, and DECREED** that:

1. The Motion is **GRANTED**.

2. Pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, the Agreement attached hereto as **Exhibit 1** and all terms and conditions thereof are approved, *nunc pro tunc* to March 15, 2020.

3. The Debtor is hereby authorized to enter into and perform under the Agreement.

4. The Debtor is authorized to indemnify Mr. Seery pursuant to the terms of the Agreement. Mr. Seery is also entitled to any indemnification or other similar provisions under the Debtor's existing or future insurance policies, including any policy tails obtained (or which may be obtained in the future), by the Debtor. The Debtor and Strand are authorized to enter into any agreements necessary to execute or implement the transactions described in this paragraph. For avoidance of doubt and notwithstanding anything to the contrary in this Order, Mr. Seery shall be entitled to any state law indemnity protections to which he may be entitled under applicable law.

5. No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

6. Notwithstanding anything in the Motion, the Agreement or the Order to the contrary, the Agreement shall be deemed terminated upon the effective date of a confirmed plan of reorganization unless such plan provides otherwise.

7. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8. This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation and/or implementation of this Order.

9. The Foreign Representative Order is hereby amended to substitute James P. Seery, Jr., as the chief executive officer, in place of Bradley S. Sharp, as the Debtor's Foreign Representative, Bermuda Foreign Representative and Cayman Foreign Representative. All other provisions of the Foreign Representative Order shall remain in full force and effect.

###END OF ORDER###

# EXHIBIT 1

**Engagement Agreement**



J.P. SEERY & CO. LLC

June 23, 2020

CONFIDENTIAL

The Board of Directors of Strand Advisors, Inc.
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201

Re:   Highland Capital Management L.P. (the "Company")

Dear Fellow Board Members:

This letter agreement ("Agreement") sets forth the terms and conditions of the engagement of the undersigned James P. Seery, Jr. ("I", "me" or "my"), as Chief Executive Officer ("CEO") and Chief Restructuring Officer ("CRO"), effective as of March 15, 2020 (the "Commencement Date"), by the Company and its affiliates to perform financial advisory services as detailed below.

I appreciate the trust you have placed in me by asking me to assume these roles and thank you for the opportunity to continue to work with you to restructure the Company.

Roles:

I will serve as the CEO and CRO of the Company during its Chapter 11 bankruptcy case (the "Bankruptcy Case") currently pending in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court").

In those roles, I will be responsible for overall management of the business of the Company in Chapter 11 including, directing the reorganization and restructuring of the Company, monetization of assets, resolution of claims, development and negotiation of a plan of reorganization or liquidation, and implementation of such a plan.

My direct reports will include the individuals at the Company that currently report to the Board of Directors of Strand Advisors, Inc. (the "Board") or such other individuals employed by the Company as I determine should report to directly to me. In the event that the Board determines to restructure the reporting lines or functions of the Company, my direct reports will be amended in accordance with the Board approved restructuring.

At all times, I will remain a full member of the Board entitled to vote on all matters other than those on which I am conflicted.

**Appx. 07511**

I will devote as much time to this engagement as I determine is required to execute my responsibilities as CEO and CRO. I will have no specific on-site requirements in Dallas, but will be on site as much as I determine is necessary to execute my responsibilities as CEO and CRO, consistent with Covid-19 orders applicable to Dallas and New York City.

<u>Limitations on Services</u>

My services under this engagement are limited to those specifically noted in this Agreement and do not include legal, accounting, or tax-related assistance or advisory services. For the avoidance of doubt, I am not providing any legal services in connection with this engagement and will have not any duties as a lawyer to the Company, the Board, or any of the Company's employees. The accuracy and completeness of all information submitted to me by the Company are the sole responsibility of the Company, and I will be entitled to rely on such information without independent investigation or verification.

In my role as CEO and CRO, I will act as an independent professional contractor to the Company and will not be an employee of the Company. I will provide and pay for my own benefits, including medical benefits, by J.P Seery & Co. LLC or otherwise.

<u>Fees and Expenses:</u>

In consideration of my acceptance of this engagement and performance of the services pursuant to this Agreement, the Company shall pay the following:

1. <u>Compensation for Services</u>:
    a. <u>Base Compensation</u>: As compensation for my services as CEO and CRO of the Company, the Company shall pay me $150,000.00 per calendar month ("<u>Base Compensation</u>"). Base Compensation shall be due and payable at the start of each calendar month. Consistent with current Board compensation practice, invoices rendered by me to the Company are due and payable by the Company on receipt. Payment of the Base Compensation will be retroactive to March 15, 2020.
    b. <u>Bonus Compensation/Restructuring Fee:</u>
        i. The Company has agreed to pay me a restructuring fee upon confirmation of either a Case Resolution Plan or a Monetization Vehicle Plan in each case as defined below (the "<u>Restructuring Fee</u>").
        ii. Case Resolution Restructuring Plan
            1. On confirmation of any plan or reorganization or liquidation based on resolution of a material amount of the outstanding claims and their respective treatment, even if such plan includes (x) a debtor/creditor trust or similar monetization and claims resolution vehicle, (y) post-confirmation litigation of certain of the claims, and (z) post-confirmation monetization of debtor assets (a "<u>Case Resolution Plan</u>"):
                a. $1,000,000 on confirmation of the Case Resolution Plan;
                b. $500,000 on the effective date of the Case Resolution Plan; and
                c. $750,000 on completion of cash or property distributions to creditors as contemplated by the Case Resolution Plan.

**Appx. 07512**

      iii. Debtor/Creditor Monetization Vehicle Restructuring Fee:
  1. On confirmation of any plan or reorganization or liquidation based on a debtor/creditor trust or similar asset monetization and claims resolution vehicle that does not include agreement among the debtor and creditors on a material amount of the outstanding claims and their respective treatment at confirmation (a "<u>Monetization Vehicle Plan</u>"):
     a. $500,000 on confirmation of the Monetization Vehicle Plan;
     b. $250,000 on the effective date of the Monetization Vehicle Plan; and
     c. A contingent restructuring fee to be determined by the board or oversight committee installed to oversee the implementation of any Monetization Vehicle Plan based on the CEO/CRO (or acting as trustee) based upon performance under the plan after all material distributions under the Monetization Vehicle Plan are made.

2. <u>Out-of-Pocket Expenses</u>:  In addition to the Base and Bonus Compensation, I shall be entitled to reimbursement for actual and reasonable out-of-pocket expenses ("<u>Expenses</u>") incurred in connection with the provision of services hereunder.  Expenses will be billed along with Base Compensation and shall be paid by the Company at the same time.  Expenses will be generally consistent with expenses incurred to date as a member of the Board.

<u>Bankruptcy Court Approval</u>

Notwithstanding anything herein to the contrary, I understand that this Agreement is contingent, in all respects, on the approval of the Bankruptcy Court.  I also understand that the Company will seek approval of this Agreement in stages and that the Company will first seek approval of my retention as CEO and CRO and the payment of the Base Compensation and will defer seeking Bankruptcy Court approval of the Restructuring Fee until there have been further developments in the Bankruptcy Case.

<u>Conflicts and Other Engagements</u>

I am not aware of any potential conflicts of interest based on my understanding of the various parties involved in this matter to date.

The Company is aware that this engagement is not an exclusive engagement of my time, and that I have and will continue to have other business engagements and investments unrelated to the Company.  Nothing in this Agreement or otherwise precludes me from representing or working with or for any other person or entity in matters not directly related to the services being provided to the Company under this Agreement.  However, I will not take on any engagements directly adverse to the Company during the term of this engagement.

<u>Privilege</u>

**Appx. 07513**

I understand that in the course of this engagement, I may become party to or my services may become part of work product of legal counsel to the Company (the Company's in-house and outside counsel are collectively referred to as "Counsel"), and all communications between Counsel and me relating to this engagement shall be protected from disclosure to third parties under the attorney work product doctrine and/or the attorney-client privilege, and, therefore, shall be treated by me as privileged and confidential. I further understand that the Company has the exclusive right to waive the attorney-client privilege, and Counsel has the exclusive right to waive the protections afforded under the attorney work-product doctrine.

Termination of Engagement

This Agreement may be terminated at any time by either the Company or by me upon two weeks advance written notice given to the other party. The termination of this Agreement shall not affect my right to receive, and the Company's obligation to pay, any and all Base Compensation and Expenses incurred (even if not billed) prior to the giving of the termination notice; provided, however, that (i) if this Agreement is terminated by me, the amount of Base Compensation owed shall be calculated based on the actual number of days worked during the applicable month and I will return any Base Compensation received in excess of such amount and (ii) if this Agreement is terminated by the Company, Base Compensation shall be deemed fully earned as of the first day of any month. Bonus Compensation shall be earned by me immediately upon termination of me by the Company; provided, however, I shall not be entitled to Bonus Compensation if (a) the Bankruptcy Case is converted to chapter 7 or dismissed; (b) a chapter 11 trustee is appointed in the Bankruptcy Case; (c) I am terminated by the Company for Cause; or (d) I resign prior to confirmation of a plan or court approval of a sale as described in the Fees and Expense/Compensation for Services section hereof. For purposes of this Agreement, "Cause" means any of the following grounds for termination of my engagement, in each case as reasonably determined by the Board within 60 days of the Board becoming aware of the existence of the event or circumstance: (A) fraud, embezzlement, or any act of moral turpitude or willful misconduct on my part; (B) conviction of or the entry of a plea of nolo contendere by me for any felony; (C) the willful breach by me of any material term of this Agreement; or (D) the willful failure or refusal by me to perform my duties to the Company, which, if capable of being cured, is not cured on or before fifteen (15) days after my receipt of written notice from the Company.

Conditional Requirement to Seek Further Bankruptcy Court Approval of Agreement

The official committee of unsecured creditors in the Bankruptcy Case (the "Committee") may, upon two weeks advance written notice to the Company, require the Company to file a motion with the Bankruptcy Court on normal notice seeking a continuation of this Agreement and if such motion is not filed, this Agreement will terminate at the expiration of such two week period. If the Company files such motion, I will be entitled to my Base Compensation through and including the date on which a final order is entered on such motion by the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Committee may not deliver such notice to the Company until a date which is more than ninety days following the date the Bankruptcy Court enters an order approving this Agreement.

Indemnification

As a material part of the consideration to me under this Agreement, the Company agrees (i) to indemnify and hold harmless me and any of my affiliates (the "Indemnified Party"), to the fullest extent lawful, from and against any and all losses, claims, costs, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Agreement, my engagement under this Agreement, or any actions taken or omitted to be taken by me or the Company in connection with this Agreement and (ii) to reimburse the Indemnified Party for all expenses ( including, without limitation, the reasonable fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action, or any fee dispute), arising out of or relating to this Agreement, or such engagement, or actions.  However, the Company shall not be liable under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of the Indemnified Party.

The indemnification and insurance currently covering my role as a director shall be extended to me and fully cover me as provided therein in my roles as CEO and CRO.

Miscellaneous

This Agreement (a) constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements among the parties with respect to the subject matter hereof, and (b) may be modified, amended or supplemented only by written agreement among all the parties hereto.

This Agreement is subject to approval by the Bankruptcy Court.  As part of such approval the Company shall request that any such order approving this Agreement contain a provision extending the protections afforded to me as a Board Member pursuant to Paragraph 10 of the Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course entered by the Bankruptcy Court on January 9, 2020 [Docket No. 339] to my role as CEO and CRO, which Order prohibits the commencement of any action against me without first obtaining Bankruptcy Court approval to initiate such action.

This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York.  The parties hereby submit to the jurisdiction of and venue in the federal and state courts located in New York City and waive any right to trial by jury in connection with any dispute related to this Agreement.

This Agreement shall be binding upon the parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

**Appx. 07515**

Failure of any party at any time to require performance of any provision of this Agreement shall not affect the right to require full performance thereof at any time thereafter, and the waiver by any party of a breach of such provisions shall not be taken as or held to be a waiver of any subsequent breach or as nullifying the effectiveness of such provision.

Notices provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand or overnight courier or three days after it has been mailed by United States registered mail, return receipt requested, postage prepaid, addressed to the respective address set forth above in this Agreement, or to such other address as either party may have furnished to the other in writing in accordance herewith.

This Agreement and my rights and duties hereunder shall not be assignable or delegable by me.

The Company may withhold from any amounts payable under this Agreement such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

This Agreement may be executed (including by electronic execution) in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument.  Delivery of an executed counterpart of this Agreement by electronic mail shall have the same force and effect as the delivery of an original executed counterpart of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

_/s/ James P. Seery, Jr._

James. P. Seery, Jr.

AGREED AND ACCEPTED

HIGHLAND CAPITAL MANAGEMENT L.P.

By: Strand Advisors, Inc., its general partner

_____   _____
John Dubel                               Russell Nelms
Director                                 Director
Strand Advisors, Inc.                    Strand Advisors, Inc.

Appx. 07516

This Agreement shall be binding upon the parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Failure of any party at any time to require performance of any provision of this Agreement shall not affect the right to require full performance thereof at any time thereafter, and the waiver by any party of a breach of such provisions shall not be taken as or held to be a waiver of any subsequent breach or as nullifying the effectiveness of such provision.

Notices provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand or overnight courier or three days after it has been mailed by United States registered mail, return receipt requested, postage prepaid, addressed to the respective address set forth above in this Agreement, or to such other address as either party may have furnished to the other in writing in accordance herewith.

This Agreement and my rights and duties hereunder shall not be assignable or delegable by me.

The Company may withhold from any amounts payable under this Agreement such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

This Agreement may be executed (including by electronic execution) in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by electronic mail shall have the same force and effect as the delivery of an original executed counterpart of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,


James. P. Seery, Jr.

AGREED AND ACCEPTED

**HIGHLAND CAPITAL MANAGEMENT L.P.**

By: Strand Advisors, Inc., its general partner

_____     _____
John Dubel                                Russell Nelms
Director                                  Director
Strand Advisors, Inc.                     Strand Advisors, Inc.

**Appx. 07517**

This Agreement shall be binding upon the parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Failure of any party at any time to require performance of any provision of this Agreement shall not affect the right to require full performance thereof at any time thereafter, and the waiver by any party of a breach of such provisions shall not be taken as or held to be a waiver of any subsequent breach or as nullifying the effectiveness of such provision.

Notices provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand or overnight courier or three days after it has been mailed by United States registered mail, return receipt requested, postage prepaid, addressed to the respective address set forth above in this Agreement, or to such other address as either party may have furnished to the other in writing in accordance herewith.

This Agreement and my rights and duties hereunder shall not be assignable or delegable by me.

The Company may withhold from any amounts payable under this Agreement such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

This Agreement may be executed (including by electronic execution) in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by electronic mail shall have the same force and effect as the delivery of an original executed counterpart of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,


James. P. Seery, Jr.

AGREED AND ACCEPTED

**HIGHLAND CAPITAL MANAGEMENT L.P.**

By: Strand Advisors, Inc., its general partner

_____          _____
John Dubel                              Russell Nelms
Director                                Director
Strand Advisors, Inc.                   Strand Advisors, Inc.

**Appx. 07518**