# EXHIBIT 81

**Appx. 07738**

JASON S. BROOKNER
Texas Bar No. 24033684
ANDREW K. YORK
Texas Bar No. 24051554
DRAKE M. RAYSHELL
Texas Bar No. 24118507
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:  jbrookner@grayreed.com
        dyork@grayreed.com
        drayshell@grayreed.com

**ATTORNEYS FOR PATRICK DAUGHERTY**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | |
| SCOTT BYRON ELLINGTON. | Adv. No. _____ |
| | *Removed from the 101st Judicial District Court of Dallas County, Texas Cause No. DC-22-00304* |
| Petitioner, | |
| v. | |
| PATRICK DAUGHERTY, | |
| Respondent. | |

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

-1-

**Appx. 07739**

## NOTICE OF REMOVAL

Patrick Daugherty ("Daugherty") files this Notice of Removal ("Notice") of Cause No. DC-22-00304 ("State Court Action") from the 101st Judicial District Court of Dallas County, Texas to the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

As the Court is well aware, Daugherty is a creditor of the Debtor, asserting the fourth largest claim of all creditors in this bankruptcy proceeding. The dispute between Daugherty and the Debtor began a decade ago when the Debtor filed suit against Daugherty in Texas state court (the "Texas Action"). After a three-week trial, the jury in the Texas Action found for Daugherty against Debtor and James Dondero ("Dondero") for defamation with malice, and on Daugherty's claim for breach of good faith and fair dealing against Debtor's affiliate Highland Employee Retention Assets LLC ("HERA") for $2.6 million plus interest that has been accruing since May 2012.

After being unable to collect on the HERA judgment, Daugherty commenced an action against Debtor, Dondero, HERA and ERA Management, LLC ("ERA") in Delaware Chancery Court. The Delaware court found that the Dondero-related defendants wrongfully withheld dozens of documents in discovery based on improper assertions of privilege and that there was a reasonable basis to believe that a fraud had been perpetrated such that the crime-fraud exception applied to any attorney-client privilege assertion.

Two days into trial in the Delaware case, Debtor filed its chapter 11 petition. Daugherty subsequently filed a second lawsuit in Delaware Chancery Court against Dondero, HERA, ERA, Debtor's former general counsel Scott Byron Ellington ("Ellington"), the Debtor's former in-house counsel Isaac Leventon ("Leventon") and the Debtor's outside counsel, Hunton Andrews Kurth LLP ("HAK"), Marc Katz ("Katz"), and Michael Hurst ("Hurst") for conspiracy to commit fraud, among other claims.

-2-

**Appx. 07740**

Daugherty and the Reorganized Debtor have entered into a settlement agreement that is awaiting Court approval, and a hearing is set with respect to the same on March 1, 2022.  The settlement agreement contains releases of claims against certain parties, but notably, it expressly excludes Dondero, Ellington, Leventon, HAK, Katz and Hurst from the definition of the "HCMLP Released Parties," meaning Daugherty will retain his claims against those parties in the Delaware litigation.

On January 12, 2022, a month after the proposed settlement was filed with the Court, Ellington initiated the State Court Action against Daugherty.  Hurst is listed as one of Ellington's attorneys in the State Court Action.  The petition in the State Court Action asserts that the State Court Action "arises out of the same transaction or occurrence which is the subject of" the Texas Action, and requests transfer of the State Court Action to the 68th Judicial District Court of Dallas County, Texas that is presiding over the Texas Action.  Ellington's counsel also informed the undersigned that Ellington intends to file such a transfer motion.

Ellington and Daugherty are both interested parties in Debtor's bankruptcy.  Removal is appropriate, and this Court has jurisdiction, pursuant to 28 U.S.C. § 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), because the State Court Action relates to Debtor's bankruptcy in several respects: (i) Daugherty is a creditor; (ii) Ellington is a Defendant to claims asserted by the Trustee in the bankruptcy; (iii) Daugherty and the Reorganized Debtor have entered into, and requested Court approval of, a proposed settlement that disfavors Ellington; and (iv) the State Court Action offends this Court's gatekeeper orders, which essentially forbid pursuing legal action involving parties related to the bankruptcy—specifically Debtor's principals—without this Court's approval, requiring any such action to be adjudicated in this Court. *See* Docket No. 2660 at 12-13, 26-27. The State Court Action is an attempt to: (1)

-3-

**Appx. 07741**

improperly evade this Court's clear gatekeeping orders; (2) derail this Court's pending consideration of a proposed settlement; and (3) pursue the Reorganized Debtor through otherwise impermissible discovery in the State Court Action.

## BACKGROUND

1.      The Debtor filed for bankruptcy on October 16, 2019 in the U.S. Bankruptcy Court for the District of Delaware.   The Debtor's chapter 11 case was transferred to this Court on December 4, 2019, and is pending as captioned above, under Case No. 19-34054.  Docket No. 1.

2.      Ellington is a named defendant in action filed by the Litigation Trustee on October 15, 2021.  *See generally* Adversary No. 21-03076.  He is also a former principal of the Debtor, having served as the Debtor's Chief Legal Officer and General Counsel until his termination for cause in January 2021. Docket No. 2934 at 8, ¶ 19.

3.      Daugherty is a former employee and limited partner of the Debtor and previously served in other positions with current and former affiliates of the Debtor.  At the time of his resignation from the Debtor, Daugherty owned 19.1% of the preferred units of HERA.  Since that time, his ownership interest in HERA increased to 100%.

4.      Shortly after Daugherty's resignation, Debtor commenced the Texas Action against Daugherty.  Daugherty obtained a $2.6 million award plus interest which continues to accrue against HERA (the "HERA Judgment"), which was upheld on appeal in December 2016.

5.      In July 2017, unable to collect on the HERA Judgment, Daugherty commenced an action against the Debtor and several of its principals, in their individual capacities, in the Delaware Chancery Court in the case captioned *Daugherty v. Highland Capital Management, L.P., et al.*, C.A. No. 2017-0488-MTZ for, *inter alia*, fraudulent transfer, promissory estoppel, unjust enrichment, indemnification, and "fees on fees" (the "Highland Chancery Case").

4857-9065-1402.7

**Appx. 07742**

6. Prior to trial, the Delaware Chancery Court ruled that the defendants wrongfully withheld dozens of documents in discovery based on improper assertions of privilege. Specifically, the Delaware Chancery Court ruled there was a reasonable basis to believe that a fraud had been perpetrated on Daugherty, resulting in the crime-fraud exception precluding any attorney-client privilege to the withheld documents.

7. The Highland Chancery Case, however, was automatically stayed when the Debtor filed its chapter 11 petition in the middle of trial on October 16, 2019.

8. On December 1, 2019, Daugherty filed a separate lawsuit in the Delaware Chancery court captioned *Daugherty v. Dondero, et al.*, C.A. No. 2019-0956-MTZ, against various principals, agents, and attorneys affiliated with Debtor—including Ellington—for conspiracy to commit fraud, along with other claims (the "Ellington Chancery Case," and together with the Highland Chancery Case, the "Chancery Cases").

9. Daugherty and the Reorganized Debtor engaged in settlement negotiations in an attempt to resolve Daugherty's claim in the chapter 11 case. The parties' negotiations ultimately resulted in the filing of the Reorganized Debtor's *Motion for Entry of an Order Approving Settlement with Patrick Hagaman Daugherty (Claim No. 205) and Authorizing Actions Consistent Therewith* on December 8, 2021, at Docket No. 3088 ("Settlement Approval Motion").

10. The Settlement Approval Motion requests approval of a proposed settlement agreement ("Proposed Settlement"), executed in late November 2021. Pursuant to the Proposed Settlement, Daugherty will release his claims against the Reorganized Debtor's estate and many of the Reorganized Debtor's agents, representatives, and subsidiaries. Exhibit 6, ¶ 6. However, the Proposed Settlement expressly and specifically retains Daugherty's claims against Ellington and select other individuals and entities. Exhibit 6, ¶ 7.

**Appx. 07743**

11. On January 12, 2022, a little over a month after submission of the Settlement Approval Motion, Ellington filed the State Court Action against Daugherty.

12. On the first page of the petition, Ellington's counsel asserts that "this case, in part, arises out of the same transaction or occurrence which is the subject of *Highland Capital Management, L.P. v. Patrick Daugherty*, Cause No. 12-04005, in the 68th Judicial District Court of Dallas County, Texas. Hence, the undersigned believes that this case is subject to transfer . . ." Exhibit 1 at 1.

13. On January 14, 2022, Ellington's lead counsel doubled down on the relationship between the State Court Action and the Texas Action in an email to the undersigned:

> We believe this case is a related case and should be transferred to Judge Hoffman's court. We do not know yet if the transfer will be automatic. If it is not automatically transferred, we intend to file a Motion to Transfer. Please let us know today if we can mark you as unopposed on our motion to transfer.

Exhibit 5.

## BASIS FOR REMOVAL

14. "A party may remove any claim or cause of action in a civil action… to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under 1334[.]" 28 U.S.C. § 1452(a). According to 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings… related to cases under title 11." A matter is "related to" a bankruptcy if its outcome "could 'conceivably have an effect on the estate being administered in the bankruptcy.'" *In re Brooks Mays Music Co.*, 363 B.R. 801, 808 (Bankr. N.D. Tex. 2007) (Jernigan, J.) (quoting *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987)). "Conceivably" is the watchword—neither certainty, nor even probability, is required. *See Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 587 (5th Cir. 1999); *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991). Thus,

4857-9065-1402.7

bankruptcy jurisdiction exists and a matter is "'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007).

15.     Removal directly to this Court is appropriate pursuant to the Northern District of Texas's Standing Order of Reference of Bankruptcy Cases and Proceedings.  Misc. Order No. 33 (Aug. 3, 1984).  This Standing Order provides that "any or all cases … related to a case under Title 11 … are referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law."  *Id.*  Removal directly to the Bankruptcy Court is a regular and accepted practice.  *See, e.g.,* Local Bankr. R. 9027-1(a); *TNT Quadrangle Partners, LP v. SPRF B/Quadrangle Prop., LLC*, No. 3:20-AP-03103, Dkt. 1, 59 (Bankr. N.D. Tex. Feb. 26, 2021) (Jernigan, J.) (granting summary judgment in adversary proceeding removed directly from Texas state court); *Lycoming Engines v. Superior Air Parts, Inc.*, No. 3:12-AP-03035, Dkt. 1, 38 (Bankr. N.D. Tex. July 6, 2012) (Houser, J.) (denying motion to remand in action removed directly from Texas state court).

16.     This Notice is filed within (30) days of the date the State Court Action was commenced and is therefore timely pursuant to 28 U.S.C. § 1446(b) and Bankruptcy Rule 9027(a)(2).  A copy of this Notice is also being filed with the Court Clerk in the State Court Action. Moreover, Daugherty consents to entry of final orders and judgments by this Court.  *See* Fed. R. Bankr. P. 9027.

17.     As discussed above, the State Court Action is "related to" the Debtor's bankruptcy, and Ellington admits as much on the face of the state court petition.  The Proposed Settlement between Daugherty and the Reorganized Debtor addresses both the Texas Action and portions of

4857-9065-1402.7

**Appx. 07745**

the Chancery Cases, and expressly excludes Ellington as a released party. This is more than sufficient to vest this Court with jurisdiction over Ellington's new lawsuit.

18.    Moreover, Ellington appears to seek discovery in the State Court Action to use in defending against the Litigation Trustee's action. On January 13, 2022, Ellington's counsel sent the undersigned counsel a litigation hold letter. *See* Exhibit 7. Among the categories of documents and materials that Ellington requested be retained were "[a]ll documents and communications with any other party, person, or entity regarding . . . the observation, surveillance, or investigation of any Ellington Party or Ellington Location." *Id.* at 2. Combined with the fact that Ellington wants to immediately seek written discovery in the State Court Action, *see* Exhibit 5, it is clear that Ellington's lawsuit attempts to circumvent this Court's gate-keeping orders by seeking information concerning Daugherty's communications with the Official Committee of Unsecured Creditors, the Reorganized Debtor, and Jim Seery concerning Ellington's attempts to conceal his assets to keep them out of the reach of his creditors. The timing of the State Court Action is indicative of its retaliatory nature because Daugherty expressly retained his claims against Ellington in the Proposed Settlement.

19.    Ellington's State Court Petition is attached as Exhibit "1." Attached hereto as Exhibit "2" is a copy of the docket sheet for the State Court Action (last visited January 17, 2022). Attached hereto as Exhibit "3" are all process and other pleadings regarding the State Court Action. Additionally, attached hereto as Exhibit "4" is a listing of counsel involved in the State Court Action, along with their contact information.

4857-9065-1402.7

**Appx. 07746**

### NOTICE

20.     Pursuant to Bankruptcy Rule 9027, Daugherty will file a copy of this Notice of Removal with the Clerk of the Court for the 101st Judicial District Court in Dallas County, and will serve a copy on all parties to the removed action.

Respectfully submitted this 18th day of January, 2022.

**GRAY REED**

By: /s/ *Jason S. Brookner*
      JASON S. BROOKNER
      Texas Bar No. 24033684
      ANDREW K. YORK
      Texas Bar No. 24051554
      DRAKE M. RAYSHELL
      Texas Bar No. 24118507

      1601 Elm Street, Suite 4600
      Dallas, Texas 75201
      Telephone:  (214) 954-4135
      Facsimile:  (214) 953-1332
      Email:    jbrookner@grayreed.com
              dyork@grayreed.com
              drayshell@grayreed.com

**ATTORNEYS FOR PATRICK DAUGHERTY**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 18th day of January, 2022, he caused a true and correct copy of the foregoing pleading to be served via the Court's electronic case filing system (ECF) on all parties to this proceeding who have so-subscribed.

/s/ *Jason S. Brookner*
JASON S. BROOKNER

4857-9065-1402.7

**Appx. 07747**

JASON S. BROOKNER
Texas Bar No. 24033684
ANDREW K. YORK
Texas Bar No. 24051554
DRAKE M. RAYSHELL
Texas Bar No. 24118507
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
dyork@grayreed.com
drayshell@grayreed.com

**ATTORNEYS FOR PATRICK DAUGHERTY**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.[1] | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | |
| SCOTT BYRON ELLINGTON. | |
| Petitioner, | Adv. No. _____<br>*Removed from the 101st Judicial District<br>Court of Dallas County, Texas<br>Cause No. DC-22-00304* |
| v. | |
| PATRICK DAUGHERTY, | |
| Respondent. | |

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

**Appx. 07748**

## APPENDIX TO NOTICE OF REMOVAL

Pursuant to N.D. Tex. Local Bankruptcy Rule 9027-1(c), Respondent Patrick Daugherty submits this appendix of the docket sheet and all pleadings from the court from which this action is being removed.

- **Exhibit 1** is the Petition filed to initiate Cause No. DC-22-00304 in the 101st Judicial District of Dallas County, Texas ("State Court Action").
- **Exhibit 2** is a copy of the docket sheet for the State Court Action (last visited January 17, 2022).
- **Exhibit 3** contains copies of the remaining documents filed on the docket in the State Court Action.
- **Exhibit 4** is a listing of counsel involved in the State Court Action along with their contact information.
- **Exhibit 5** is a true and correct copy of January 14, 2022, email correspondence from Julie Pettit, The Pettit Law Firm, to Drew York and Ruth Ann Daniels, Gray Reed.
- **Exhibit 6** is a true and correct copy of the Proposed Settlement Agreement between Reorganized Debtor and Daugherty.
- **Exhibit 7** is a true and correct copy of the January 13, 2022, Litigation Hold letter from Ellington's counsel to Daugherty.

Respectfully submitted this 18th day of January, 2022.

**GRAY REED**

By:  /s/ *Jason S. Brookner*
      JASON S. BROOKNER
      Texas Bar No. 24033684
      ANDREW K. YORK
      Texas Bar No. 24051554
      DRAKE M. RAYSHELL
      Texas Bar No. 24118507

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:      jbrookner@grayreed.com
          dyork@grayreed.com
          drayshell@grayreed.com

**ATTORNEYS FOR PATRICK DAUGHERTY**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 18th day of January, 2022, he caused a true and correct copy of the foregoing pleading to be served via the Court's electronic case filing system (ECF) on all parties to this proceeding who have so-subscribed.

*/s/ Jason S. Brookner*
JASON S. BROOKNER

**Appx. 07750**

# EXHIBIT 1

FILED
1/11/2022 6:09 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Kayla Buckley DEPUTY

DC-22-00304

NO. _____

| | | |
|---|---|---|
| **SCOTT BYRON ELLINGTON** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | 101st |
| **v.** | § | _____ **JUDICIAL DISTRICT** |
| | § | |
| **PATRICK DAUGHERTY,** | § | |
| | § | |
| *Defendant.* | § | **DALLAS COUNTY, TEXAS** |

---

### PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

---

Comes Now, Scott Byron Ellington, Plaintiff herein, and files this *Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction* against Defendant Patrick Daugherty, and in support thereof, would respectfully show the Court the following:

#### Dallas County LR 1.08 Disclosure

Dallas County Local Rule 1.08 provides that the attorneys of record for the parties in any case within the categories of Local Rule 1.07 must notify the judges of the respective courts in which the earlier and later cases are assigned of the pendency of the latter case. The attorney filing a case that is so related to another previously filed case shall disclose in the original pleading or in a separate simultaneous filing that the case is so related and identify by style, cause number, and court of the related case. Accordingly, and pursuant to L.R. 1.08, the undersigned hereby notifies the Court that this case, in part, arises out of the same transaction or occurrence which is the subject of *Highland Capital Management, L.P. v. Patrick Daugherty*, Cause No. 12-04005, in the 68th Judicial District Court of Dallas County, Texas. Hence, the undersigned believes that this case is subject to transfer under L.R. 1.07(a) or otherwise pursuant to L.R. 106 because the transfer would "facilitate orderly and efficient disposition of the litigation."

Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction

Page 1

**Appx. 07752**

## I. Discovery Control Plan

1. Pursuant to TEXAS RULE OF CIVIL PROCEDURE 190.3, Plaintiff requests a Level 2 discovery control plan.

## II. Parties & Service

2. Plaintiff Scott Byron Ellington, an individual, is a resident of the state of Texas.

3. Defendant Patrick Daugherty is an individual and resident of Dallas County, Texas. Defendant may be served at his residence located at 3621 Cornell Ave, Dallas, Texas 75205, or wherever he may be found.

## III. Rule 47(c) Disclosure

4. Plaintiff seeks damages within the jurisdictional limits of the Court. Specifically, Plaintiff seeks monetary relief over $1,000,000 and non-monetary relief.

## IV. Jurisdiction & Venue

5. The Court has jurisdiction over Defendant because he resides in Texas, has done business in Texas, committed torts, in whole or in part, in Texas, has continuing contacts with Texas, and is amenable to service by a Texas Court.

6. Venue in Dallas County is proper in this case under Sections 15.002(a)(1) and (a)(3) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because this is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred and it is the county where Defendant resides.

## V. Facts

7. Plaintiff Scott Ellington ("Plaintiff" or "Ellington") was, until January of 2021, the general counsel of Highland Capital Management ("Highland").

---

Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction  Page 2

8.      Defendant Daugherty ("<u>Defendant</u>" or "<u>Daugherty</u>") previously worked for Highland.

9.      In 2012, Highland sued Daugherty. In response, Daugherty filed counterclaims against Highland then sued its affiliate, Highland Employee Retention Assets LLC ("<u>HERA</u>"), and three Highland executives. A jury ultimately determined that Daugherty breached his employment agreement and fiduciary duties. It also found that HERA breached the implied duty of good faith and fair dealing, but also found that the executives subject to the counter-claim were not liable to Daugherty. The jury awarded Highland $2,800,000 in attorney's fees and injunctive relief; and awarded Daugherty $2,600,000 in damages against HERA.

10.     Since the 2012 lawsuit's filing, Daugherty and Highland—or Highland related entities and individuals—engaged in protracted litigation in several different forums across the country. Daugherty's expressed goal is to "get" the founder and former CEO of Highland, Jim Dondero, and its former general counsel, Ellington. As part of this campaign, Daugherty personally sued Ellington in December 2019 in Delaware Chancery Court. Ellington's motion to dismiss currently pends in that matter.

11.     While Daugherty's previously limited his vendetta to the courtroom, he began a campaign of harassment against Ellington and his family starting in January 2021 that continues to this day. *See* **<u>Exhibit A</u>** (Declaration of Gregory Allen Brandstatter, the personal security guard of Scott Ellington) (detailing Daugherty's harassment and stalking of Ellington, his family, and loved ones); **<u>Exhibit B</u>** (Declaration of Scott Byron Ellington).

12.     Specifically, Daugherty has been observed outside Ellington's office, his residence, the residence of his long-time girlfriend, Stephanie Archer, his sister's residence, and his father's residence no less than **<u>143 times</u>**, often taking photographs and video recordings while either

Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary
Injunction, and Permanent Injunction                                          Page 3

**Appx. 07754**

parked or driving slowly by. Indeed, on April 21, 2021, Daugherty was observed driving by Ellington's office nine (9) times that day alone.

13.     Daugherty most recently was confirmed taking video or photo recordings outside of Ellington's residence on December 11, 2021. For reasons set forth in the Brandstatter Declaration, attached herein at **Exhibit A**, Daugherty likely stalked Ellington and his loved ones more recently than the latest confirmed date.

14.     Daugherty's harassing conduct is "textbook" behavior that precedes a physical attack that a reasonable person would consider a threat to their safety as well as that of their family and property. Indeed, Ellington has been forced to hire personal security, and his family are in fear for their personal and physical safety.

15.     As evidenced by the over 143 times Daugherty has been observed stalking Ellington and his family, he has the apparent ability to carry out this threat of continued harassment and violence.

16.     Both Mr. Ellington's sister and girlfriend have both demanded to Mr. Daugherty that he stop his harassment. Despite this clear demand for Daugherty to stop engaging in this harassing behavior, he refuses to stop and continues to harass Ellington and his family.

17.     Daugherty's constant stalking and harassment of Ellington and his family reasonably cause them to fear for their safety.

18.     Ellington reported Daugherty's harassing and disturbing behavior to the police.

## VI. Causes of Action

### A. Count One: Stalking.

19.     All facts alleged above, herein, and below are hereby incorporated by reference.

Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary
Injunction, and Permanent Injunction                                          Page 4

**Appx. 07755**

20.     Pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE § 85.002, a defendant is

liable to a claimant for damages arising from stalking of the claimant by the defendant.

21.     A claimant proves stalking against a defendant by showing:

> (1) on more than one occasion the defendant engaged in harassing
> behavior;
> (2) as a result of the harassing behavior, the claimant reasonably
> feared for the claimant's safety or the safety of a member of the
> claimant's family; and
> (3) the defendant violated a restraining order prohibiting harassing
> behavior or:
>> (A) the defendant, while engaged in harassing behavior, by
>> acts or words threatened to inflict bodily injury on the claimant or
>> to commit an offense against the claimant, a member of the
>> claimant's family, or the claimant's property;
>> (B) the defendant had the apparent ability to carry out the
>> threat;
>> (C) the defendant's apparent ability to carry out the threat
>> caused the claimant to reasonably fear for the claimant's safety or
>> the safety of a family member;
>> (D) the claimant at least once clearly demanded that the
>> defendant stop the defendant's harassing behavior;
>> (E) after the demand to stop by the claimant, the defendant
>> continued the harassing behavior; and
>> (F) the harassing behavior has been reported to the police as
>> a stalking offense.

22.     "Harassing behavior" is defined by the statute as "conduct by the defendant directed

specifically toward the claimant, including following the claimant, that is reasonably likely to

harass, annoy, alarm, abuse, torment, or embarrass the claimant." TEX. CIV. PRAC. & REM. CODE

§ 85.001(4).

23.     First, Defendant has engaged in harassing behavior toward the Plaintiff and his

family in the above-described manner. Second, because of the harassing behavior, Plaintiff

reasonably feared for his safety and the safety of his family. Third, Defendant, while engaging in

the harassing behavior, by acts or words threatened to inflict bodily injury on the Plaintiff or to

commit an offense against the Plaintiff, his family, or his property. Specifically, Defendant's

Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary
Injunction, and Permanent Injunction                                    Page 5

**Appx. 07756**

conduct is consistent with behavior leading up to a physical attack and is, therefore, an inherent threat of physical violence. Defendant had the apparent ability to carry out the threat, the Defendant's apparent ability to carry out the threat caused Plaintiff to reasonably fear for his safety or the safety of a family member, the Plaintiff (or his representative) at least once clearly demanded that the Defendant stop his harassing behavior, after the demand to stop by the Plaintiff, the Defendant continued the harassing behavior, and the harassing behavior has been reported to the police as a stalking offense.

24.     Plaintiff seeks recovery of his actual damages caused by Defendant's stalking, exemplary damages, and injunctive relief.

**B. Count Two: Invasion of Privacy by Intrusion.**

25.     All facts alleged above, herein, and below are hereby incorporated by reference.

26.     A claim of invasion of privacy by intrusion has the following elements: (1) an intentional intrusion, (2) upon the seclusion, solitude, or private affairs of another, (3) that would be highly offensive to a reasonable person.

27.     Here, Defendant has intentionally intruded upon the seclusion, solitude, and private affairs of Plaintiff by regularly appearing at his office, his residence, his girlfriend's residence, his father's residence, and his sister's residence, and taking photographs and other recordings of Ellington and his loved ones at these residences. The appearances are unsolicited, uninvited, and constant. These unwanted "visits" by Defendant are highly offensive to a reasonable person.

28.     Plaintiff seeks recovery of his actual damages caused by Defendant's conduct alleged herein, exemplary damages, and injunctive relief.

Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction                                                    Page 6

**Appx. 07757**

**VII. Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction**

**A. Elements for Injunctive Relief.**

29. All facts alleged above, herein, and below are hereby incorporated by reference.

30. In light of the above-described facts, Plaintiff seeks recovery from Defendant.

31. Plaintiff is likely to succeed on the merits of this lawsuit because Defendant has been stalking Plaintiff and his family and has been engaged in otherwise harassing conduct.

32. Unless this Honorable Court immediately restrains the Defendant and his agents the Plaintiff and his family will suffer immediate and irreparable injury, for which there is no adequate remedy at law to give Plaintiff complete, final and equal relief. More specifically, Plaintiff will show the court the following:

    a. The harm to Plaintiff and his family is imminent and ongoing as Defendant has harassed and stalked Plaintiff and his family, including his father, his sister, and girlfriend, almost constantly this entire year.

    b. The imminent harm will cause Plaintiff irreparable injury as the harassment will continue if not restrained. Further, Plaintiff reasonably fears that Defendant may cause him or his family bodily harm, and the accompanying anxiety interferes with his ability to conduct his normal, daily activities. *See, e.g., Quinn v. Harris*, 03-98-00117-CV, 1999 WL 125470, at *11 (Tex. App.—Austin Mar. 11, 1999, pet. denied) ("[I]njunctions designed to prevent harassment are permissible."); *Kramer v. Downey*, 680 S.W.2d 524, 525 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) ("Further, this right to be left alone from unwanted attention may be protected, in a proper case, by injunctive relief."); and

Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction    Page 7

**Appx. 07758**

    c.   There is no adequate remedy at law which will give Plaintiff complete, final and equal relief because the imminent harm is irreparable. *See e.g., Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 294 (Tex. App.—Beaumont 2004, no pet.) ("Issues one (no evidence of inadequate remedy at law) and two (no evidence of irreparable injury) are intertwined under Texas case law.").

## B. Bond.

33.    Plaintiff is willing to post a reasonable temporary restraining order and temporary injunction bond and requests the Court to set such bond.

## C. Remedy.

34.    Plaintiff met his burden by establishing each element which must be present before injunctive relief can be granted by this Court. Thus, Plaintiff is entitled to the requested temporary injunction, and upon a successful trial on the merits, for the temporary injunction to be made permanent.

35.    Plaintiff requests that, while the temporary injunction is in effect, the Court to restrain Defendant and his agents from:

    a.   Being within 500 feet of Ellington;

    b.   Being within 500 feet of Ellington's office located at 120 Cole Street, Dallas, Texas 75207;

    c.   Being within 500 feet of Ellington's residence located at 3825 Potomac Ave, Dallas, Texas 75205;

    d.   Being within 500 feet of Stephanie Archer;

    e.   Being within 500 feet of Stephanie Archer's residence located at 4432 Potomac, Dallas, Texas 75025;

Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction

Page 8

**Appx. 07759**

f.   Being within 500 feet of Marcia Maslow;

g.   Being within 500 feet of Marcia's residence located at 430 Glenbrook Dr., Murphy, Texas 75094;

h.   Being within 500 feet of Byron Ellington;

i.   Being within 500 feet of Byron Ellington's residence located at 5101 Creekside Ct., Parker, Texas 75094;

j.   Photographing, videorecording, or audio recording Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington;

k.   Photographing or videorecording the residences or places of business of Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington; and

l.   Directing any communications toward Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington.

## VIII.   Exemplary Damages

36.   The conduct of Defendant described above constitutes malice and, therefore, Plaintiff is entitled to, and hereby seeks, an award of exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE § 41.003(1).

## IX. Conditions Precedent

37.   All conditions precedent to Plaintiff's suit have occurred or have been performed.

## X.  Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that:

a.   Defendant be cited to appear and answer;

b.   The Court determine any issue of fact and, upon final hearing of this cause, the Court award to Plaintiff:

Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction                                              Page 9

**Appx. 07760**

      i.  Actual damages;

     ii.  Exemplary damages;

    iii.  A temporary restraining order;

    iv.  A temporary injunction;

     v.  A permanent injunction; and

    vi.  Court costs;

c.  The Court grant any other relief to which Plaintiff may be entitled.

---

Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary
Injunction, and Permanent Injunction                  Page 10

**Appx. 07761**

Respectfully submitted,

*/s/ Julie Pettit*
Julie Pettit
State Bar No. 24065971
jpettit@pettitfirm.com
David B. Urteago
State Bar No. 24079493
durteago@pettitfirm.com
**THE PETTIT LAW FIRM**
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Telephone: (214) 329-0151
Facsimile: (214) 329-4076

Michael K. Hurst
State Bar No. 10316310
mhurst@lynnllp.com
Mary Goodrich Nix
State Bar No. 24002694
mnix@lynnllp.com
Nathaniel A. Plemons
State Bar No. 24121059
nplemons@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR PLAINTIFF**

Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction
Page 11

**Appx. 07762**



EXHIBIT
A

# DECLARATION OF GREGORY ALLEN BRANDSTATTER

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

Gregory Allen Brandstatter declares as follows:

1.      My name is Gregory Allen Brandstatter. I am over 21 years of age, have never been convicted of a felony or other crime involving moral turpitude, and suffer from no mental or physical disability that would render me incompetent to make this declaration.

2.      I am able to swear, and hereby do swear under penalty of perjury, that the facts stated in this declaration are true and correct and within my personal knowledge.

3.      I am a Licensed Texas Master Peace Officer with fifteen (15) years of experience, a U.S. Government Contractor with over twelve (12) years of experience in the areas of high threat protection, counterterrorism, and counternarcotics, and I am also a licensed private investigator and security consultant.

4.      On Feb 3, 2021, Scott Ellington ("Scott") called, advising me that he believed someone was stalking himself and his girlfriend Stephanie Archer ("Stephanie"). The day prior to his calling me (Feb 2, 2021), Stephanie had been followed to 120 Cole Street, Dallas, Texas, where Scott has an office. Stephanie stated that for the past month or so she had noticed a large Black SUV possibly following her. On Feb 2, 2021, she noticed that the person in the Black SUV was actively taking pictures of her, and she attempted to confront the individual while she simultaneously took pictures of the Black SUV and its driver. Her picture shows the vehicle Make and License Number, BX9K764. In Stephanie's photo you can also see the person driving holding

DECLARATION OF GREGORY ALLEN BRANDSTATTER

up a cell phone as if taking pictures. A true and correct copy of this photograph is attached hereto as **<u>Exhibit A-1</u>**.

5.        The following day Scott was in his office on Cole Street, when he noticed a vehicle resembling a "Toyota 4 Runner, Tan in color, stop in front of his office. He observed the driver of the taking pictures and or video of his officer and the vehicles parked in front. Scott was able to obtain the License Number of the Vehicle, GPF9512, he also noted that vehicle had a "WMR sticker on the rear window. Scott stated the driver of the vehicle looked like Pat Daugherty ("<u>Daugherty</u>"). Scott and Daugherty both previously worked at an investment firm in Dallas and are currently opponents in financial litigation. Scott believes that Daugherty is attempting to harass him, his friends and coworkers due to the litigation. It should be noted that Daugherty has a history of anger issues and he believes Daugherty may be trying to intimidate him.

6.        Scott asked if I could assist him in determining who the person(s) were taking the photos/videos. I advised Scott that I could check some open sources intelligence ("<u>OSINT</u>") sites and see what I could come up with in reference to the vehicle registrations. I also suggested that we set up a counter surveillance program to determine if these were random acts or an organized surveillance effort.

7.        On Feb 4, 2021, an investigation was opened along with a counter surveillance operation. OSINT sources showed Daugherty to be the registered owner of the Black SUV BX9K764 and that Daugherty currently is listed on the vehicle registration of the Infiniti QX4 GPF9512. The Infiniti QX4 closely resembles a Toyota 4 Runner (as observed by Scott above). We believe that Daugherty sold the Infiniti to one of his domestic employees and "borrowed" the vehicle to avoid detection.

8.      On February 4, 2021, at approximately 11:20 A.M., I observed the Infiniti GPF9512 driven by a while male with sandy blonde hair drive by west bound on Cole slow when passing Scott's office (120 Cole St.) and then proceed west on Cole, south on Levee, east on Alley (rear of 120 Cole), U-turn, south on Levee and east on Leslie. I viewed the driver of this vehicle as he was exiting Alley and can verify, after comparing photos, that Daugherty was the driver of the Infiniti.

9.      At approximately 1:22 P.M. on Feb 4, 2021, Scott advised that Daugherty had followed him to 120 Cole, I was parked on Cole and Levee. As Scott parked, I observed the Infiniti driving west on Cole towards me. I observed Daugherty driving Infiniti GPF9512. Daugherty turned south on Levee, U-turn, north on Levee then east on Cole. I kept my distance as the Infiniti slowed and then stopped in front of Scott's office. While stopped in front of Scott's office, Daugherty verbally engaged Stephanie and Joe (friend of Scott). Daugherty proceeds east on Cole, I followed, Daugherty turned left on Rivers Edge, I am unable to follow due to traffic conditions. Stephanie and Joe identified the driver as Daugherty after comparing to photos. A true and correct copy of a photograph of the back of the Infiniti taken on February 4, 2021, on Cole St. is attached hereto as **Exhibit A-2**.

10.      At approximately 5:15 P.M. on February 4, 2021, Reese Morgan ("Reese"), a private investigator with whom I regularly work, drove by Daugherty's residence and confirmed two vehicles parked in the carport. One is a white Lincoln Navigator LPG9001 and the other is a Black GMC Yukon BX9K764, which is the same vehicle that followed Stephanie on February 3, 2021. The Infiniti GPF9512 (with a "WMR" sticker on the back window) is parked on the street across the street from Daugherty's carport. Attached as **Exhibit A-3** is a true and correct copy of a photograph of the Yukon parked at Daugherty's residence, attached as **Exhibit A-4** is a true and

correct copy of a photograph of the Navigator parked at Daugherty's residence, and attached as **Exhibit A-5** is a true and correct coy of a photograph of the Infiniti parked across the street from Daugherty's residence.

11.    February 5, 2021, approximately 1:40 P.M., Reese drove by Daugherty's Residence and verified the Infiniti GPF9512 parked across street from carport.

12.    February 8, 2021, at approximately 10:10 A.M., I drove by Daugherty's Residence and verified that the Infiniti GPF9512 was parked across street from carport.

13.    Additional screen captures clearly identify Daugherty as the driver videoing and/or photographing Scott's office.  *See* **Exhibit A-6** (March 29, 21, three passes by Daugherty in the Infiniti), **Exhibit A-7** (April 16, 2021, Daugherty in the Yukon); **Exhibit A-8** (April 23, 2021, Daugherty in the Yukon).  Daugherty also is clearly identifiable outside of Scott's sister's home. *See* **Exhibit A-9** (April 25, 2021, Daugherty in the Infiniti).  It is clear that he is recording Scott, his family, and friends.  *See* **Exhibit A-10** (May 3, 2021, Daugherty in the Navigator).

14.    Attached hereto as **Exhibit A-11** is a true and correct copy of a report that I wrote that contains my counter-surveillance log. As documented by the report, following verification that Daugherty was the individual in the Black Yukon with license plate BX9K764 and the Infiniti QX4 with license plate GPF9512, Daugherty was observed an additional 143 times outside Scott's office or the homes of his family or girlfriend between February 19, 2021, and November 23, 2021. In fact, there were many instances where Daugherty would drive by Scott's office several times in a single day. For example, Daugherty was observed driving by Scott's office at least nine (9) times on April 21, 2021. During many of these visits, Daugherty was observed taking photographs or video recordings from the inside of his vehicle.

DECLARATION OF GREGORY ALLEN BRANDSTATTER

15.     Additionally, Daugherty was observed at least eight (8) times outside of the home of Marcia Maslow, Scott's sister.  Mrs. Maslow resides with her husband and two minor daughters. Mrs. Maslow resides in Murphy, Texas, approximately a thirty minute drive (without traffic) from the residences of both Scott and Daugherty.  Mrs. Maslow sent me a written message after she observed Daugherty at her residence in which she describes the emotional trauma experienced by both her and her family.

16.     Finally, Daugherty has been observed at least seven (7) times outside the home of Scott's widower father Byron Ellington.   Mr. Byron Ellington lives in Parker, Texas, approximately a thirty-five minute drive (without traffic) from the residences of both Scott and Daugherty.

17.     While the verified instances whereby Daugherty was visited Scott's office or the home of his friends and family are extensive, Daugherty's harassment is almost certainly more extensive. The following factors lead to this conclusion:

   a.  Daugherty was only first spotted because of Stephanie's lay person observations, so the stalking likely started earlier;

   b.  Each photograph and video clip must be manually extracted from manual review of hours of raw video taken during daytime hours, so there is likely to be more encounters unidentified or unrecorded;

   c.  It is difficult to record Daugherty when his vehicle is following Scott's or those of his family;

   d.  There may be other locations associated with Scott that Daugherty stalked where I did not conduct counter-surveillance.

DECLARATION OF GREGORY ALLEN BRANDSTATTER

**Appx. 07767**

18.      In my experience on the United States Department of State High Threat Protection Team, the sort of conduct exhibited by Daugherty is a precursor to a physical attack. I therefore called the Dallas Police Department to report the stalking, but could not find anyone to take the report. I was told that Scott needed to call 911 instead and report situation.

[*Remainder of Page Intentionally Left Blank; Signature Page Follows*]

FURTHER DECLARANT SAYETH NOT.

My name is Gregory Allen Brandstatter. My date of birth is ███ 1954. My address is 1001 County Road 26100, Roxton, Texas 75477. I declare under penalty of perjury that the foregoing is true and correct.

Executed in <u>Dallas</u> County, State of Texas, on the <u>28th</u> day of December, 2021.

_Gregory Allen Brandstatter_
Gregory Allen Brandstatter

DECLARATION OF GREGORY ALLEN BRANDSTATTER















EXHIBIT

A-4



EXHIBIT

A-5























**Appx. 07783**

111521

Greg Brandstatter, Pat D Investigation / Counter Surveillance log

On Feb 3 2021, Scott Ellington (Scott) called, advising me that he believed someone was stalking himself and his girlfriend Stephanie Archer (Stephanie). The day prior, Feb 2 2021 to his calling me Stephanie had been followed to 120 Cole Street, Dallas, Texas, where Scott has an office. Stephanie stated that she had noticed that for the past month or so she had noticed a large Black SUV possibly following her. On Feb 2 2021 she noticed that the person in a Black SUV actively taking pictures, she had, had enough and attempted to confront the individual while taking a picture of the vehicle. Her picture shows the vehicle Make and License Number, BX9K764. In Stephanie's photo you can also see the person driving holding up a cell phone as if taking pictures. See Stephanie's photo.

The following day Scott was in his office on Cole Street, when he noticed a vehicle resembling a "Toyota 4 Runner, Tan in color, stop in front of his office. He observed the driver of the taking pictures and or video of his officer and the vehicles parked in front. Scott was able to obtain the License Number of the Vehicle, GPF9512, he also noted that vehicle had a "WMR sticker on the rear window. Scott stated the driver of the vehicle looked like Pat Daugherty (Pat). Scott and Pat both previously worked at an investment firm in Dallas, and are currently opponents in financial litigation. Scott believes that Pat is attempting to harass him, his friends and coworkers due to the litigation. It should be noted that Pat has a history of anger issues and he believes Pat may be trying to intimidate him.

Scott asked if I could assist him in determining who the person(s) were taking the photos/videos. I advised Scott that I could check some Open Sources Intelligence sites and see what I could come up with in reference to the vehicle registrations. I also suggested that we set up a counter surveillance program to determine if these were random acts of an organized surveillance effort.

On Feb 4 2021 an investigation was opened along with a counter surveillance operation. OSINT sources showed Pat to be the registered owner of the Black SUV BX9K764 and that Pat was the previous owner of the Infinity QX4 GPF9512. The Infinity QX4 closely resembles a Toyota 4 Runner ( as observed by Scott above). We believe that Pat sold the Infinity to one of his domestic employees and "borrowed" the vehicle to avoid detection.

At approx. 1120 on Feb 4th the Infinity GPF9512 driven by a W/M Sandy Blonde hair drives by WB on Cole slows when passing 120 proceeds W on Cole, S on Levee, E on Alley (rear of 120 Cole), U-turn, S on Levee and E on Leslie. I viewed the driver of this vehicle as he was exiting alley and can verify after comparing Photos, that Pat was the driver of the infinity.

At approx 1322 on Feb 4th Scott advises that the Pat had followed him to 120 Cole, I was parked on at Cole and Levee as Scott parked I observe the Infinity drives W on Cole towards me, I observe Pat driving infinity GPF9512. Pat turns south on Levee, U-turn, N on Levee then E on Cole. I keep my distance as Infinity slows and then stops in front of 120, While stopped in front of 120, Pat verbally engages Stephanie and Joe (friend of Scott). Pat proceeds E on Cole, I follow, Pat turns left on Rivers Edge, I am



EXHIBIT

A-11

**Appx. 07784**

unable to follow due to traffic conditions. Stephanie and Joe are able to Identify the Driver as Pat after comparing to photos. See photos for rear of Infinity, on Cole Street, Note Sticker (WMR).

At Approx 1715 on Feb 4, Reese Morgan (Reese) PI drives by Pat's residence and is able to confirm two vehicles parked in carport, White Lincoln Navigator LPG9001 and Black GMC Yukon BX9L764, same vehicle that followed Stephanie on Feb 3, The Infinity GPF9512 is parked on the street across the street from Pat's carport, see photos

Feb 5 2021, approx 1340, Reese drive by Pat's Residence verify Infinity GPF9512 parked across street from carport.

Feb 8 2021, approx. 1010, Drive by Pats Residence verify Infinity GPF9512 parked across street from carport

Feb 19 2021 approx 1700 Sarah Goldsmith, moving files to 120 Cole St, confronted my W/M Sandy Blonde, Graying hair, driving a "Silver Toyota 4 Runner" (Infinity). Driver ask "Do you know if Scott is back in town?" She ignored him and went into office space until he left. She did not feel safe, she departed and had her husband accompany her back to Cole St. After viewing a picture of Pat, Sarah was able to verify the driver who confronted her was Pat.

Feb 23 2021 approx 1707 Black GMC Yukon BX9K764, Driven by Pat (visual), business attire blue shirt, E-W on Cole, slows at 120, proceeds N on Levee, E on Oaklawn. (Day in Court)

March 4 2021 approx 1113, Black GMC Yukon BX9K764, drives by E-W on Cole slows when passing 120, S on Levee, pulls over appears to be taking notes, continues S on Levee, turns E on Leslie at.

March 9 2021 approx 1110, Black GMC Yukon BX9K764, drives by E-W on Cole, slows, then N on Levee.

approx 1340, Black GMC Yukon BX9K764, drives by E-W on Cole, slows, then N on Levee.

March 23 2021 approx 1450, Black GMC Yukon BX9K764, driven by Pat, drives by E-W on Cole, Stops in front of 120, (note Scott's Vic out front with door open), S on Levee, U-turn, N on Levee. Visually confirm Pat driving.

approx 1700, Black GMC Yukon BX9K764, driven by Pat, drives by E-W on Cole, Stops in front of 120, Scott is in office and observes Pat taking pictures or video of building and vehicles, Pat proceeds W on Cole , N on Levee

March 25 2021 approx 1414, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole Stops short of 120, I observed Pat, dressed in business attire, exit vehicle and put trash in trash container, then proceed W on Cole where he stopped in front of 120 for an extend period of time, before proceeding W on Cole

Approx. 1417, Black GMC Yukon BX9K764, driven by Pat, drives by E-W on Cole, Stops in front of 120, another extended stop at 120 before proceeding W on Cole.

March 26 2021, approx 1414, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole. I pass in opposite direction. Pat is wearing business attire, talking on cell phone

March 29 2021, approx 1430, Infinity QX4 GPF9512, with "WMR sticker on the rear window, driven by Pat, drives by E-W Stops front of 120, peers into building.

**Appx. 07785**

Approx 1433, Infinity QX4 GPF9512, driven by Pat, drives by E-W Stops front of 120, appears to be taking pictures of building and vehicles.

Approx 1450, Infinity QX4 GPF9512, driven by Pat, drives by E-W Slows front of 120

March 31 2021, approx 1508, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole, opens door slightly

Approx 1511, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole stops front of 120, takes pictures

Approx 1518, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole stops front of 120, takes video

Approx 1522, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole stops front of 120, takes extensive video of inside garage door and vehicles out front

April 13 2021, approx 1428, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole

Approx 1430, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole, slows at 120, takes video of building and vehicles

Approx 1433, Black GMC Yukon BX9K764, driven by Pat, driving W-E on Cole

April 14 2021 Scott's Sister Marcia Reports, Black GMC Yukon Denali, stopped in front of her house and was taking pictures of her home, family and vehicles, she reports this is the second instance. First instance was 3 25 2021, She provides Video of second instance, See Marcia's report. Stealthcam deployed.

April 16 2021, approx 1453, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole, slows takes pics/video of vehicles

Approx 1455, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole,I nterested in Scott' new assistant Charleigh.

Approx 1456, Black GMC Yukon BX9K764, driven by Pat, driving W-E on Cole, Passenger in vehicle, New Player

April 19 2021, approx 1423, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole, Stops takes Video

Approx 1426, Black GMC Yukon BX9K764, driven by Pat, driving W-E on Cole

April 20 2021, approx 1335, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1338, Black GMC Yukon BX9K764, driven by Pat drives by, E-W on Cole slows takes pictures

**Appx. 07786**

Approx 1340, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

April 21 2021, approx 1028, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1038, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1040, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1043, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, stops for extended period looking inside garage door, car behind him honks

Approx 1055, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, fast

Approx 1058, Black GMC Yukon BX9K764, driven by Pat drives by W-E Cole

Approx 1215, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, stops and takes pictures of vehicles

Approx 1217, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, slows at 120 and takes video

Approx 1448, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, Stops and takes video of vehicles, Scott confirms he saw, Black GMC Yukon

April 22 2021, approx 1010, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, talking on phone or into voice recorder

Approx 1013, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, talking on phone or into voice recorder

Approx 1220, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, takes picture of Charleigh Vehicle

Approx 1325, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1547, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

April 23 2021, approx 1027, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1321, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, Pics of Ryan's and Trevor Vehicles

Approx 1324, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1457, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, Good Facial Picture

Approx 1500, Black GMC Yukon BX9K764, driven by Pat drives by W-E on Cole

Infinity QX4 GPF9512, driven by Pat, drives by E-W, E-W on Cole

Approx 1432, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

April 24 2021, (Sat) approx 1158, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

approx 1432, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

approx 1605 Black GMC Yukon, driven by Pat drives by Marcia's House

April 25 2021, (Sun) approx 1608, Infinity QX4 GPF9512, driven by Pat drives by Marcia's House

April 26 2021, approx 1533, Infinity QX4 GPF9512, driven by Pat drives by Byron's House

approx 1534, Infinity QX4 GPF9512, driven by Pat drives by Byron's House


April 27 2021 Infinity QX4 GPF9512, drives by E-W on Cole, Video only, Not typical behavior, cannot confirm.

April 28 2021, approx 1030, Infinity QX4 GPF9512, driven by Pat, drives by E-W, slows takes Video, Faster than normal, visual only

approx 1510, Infinity QX4 GPF9512, driven by Pat, drives by E-W, slows but behavior atypical

approx. 1650, Infinity QX4 GPF9512, driven by Pat, drives by E-W, Video confirmation

approx 1745, Black Yukon drives by, Cam Only no Confirmation, (note change vehicle)

April 30 2021, approx. 1634 Infinity QX4 GPF9512, driven by Pat, drives by E-W, Cam only **Atypical**

May 3 2021,   approx. 1506 Lincoln Navigator XXXXXX, driven by Pat, drives by E-W, note vehicle change

approx. 1546 Lincoln Navigator XXXXXX, driven by Pat, drives by W-E

May 4 20212    approx 1642 Infinity QX4 GPF9512, driven by Pat, drives by E-W

approx 1651 Infinity QX4 GPF9512, driven by Pat, drives by W-E, License Plate

approx 1652 Infinity QX4 GPF9512, driven by Pat, drives by E-W

May 5 2021    approx 1123 Infinity QX4 GPF9512, driven by Pat, drives by E-W, Video on site

approx 1254 Infinity QX4 GPF9512, driven by Pat, drives by E-W

approx 1040 Infinity QX4 GPF9512, driven by Pat, drives by Marcia's house

May 12 2021    Approx 0955 Infinity QX4 GPF9512, drives by E-W, License Plate

approx 1308 Infinity QX4 GPF9512, driven by Pat, drives by E-W, takes video, sticker

approx 1311 Infinity QX4 GPF9512, drives by E-W, License Plate, sticker

May 13 2021    approx 1055 Infinity QX4, drives by, E-W

approx  1213 Infinity QX4, drives by, E-W, License Plate

May 14 2021    approx 1523 Infinity QX4, drives by, E-W

May 18 2021    approx  1416 Infinity QW4, drives by E-W

| May 19 2021 | approx | 1411 Infinity QW4, drives by E-W, License Plate |
| May 18 2021 | approx | 1436 Infinity QW4, drives by 4432 Potomac |
| May 21 2021 | approx | 1147 Infinity QW4, drives by E-W, License Plate |
| May 22 2021 | approx | 1345 Infinity QW4, drives by E-W, License plate |
| May 24 2021 | approx | 1132 Infinity QW4, drives by E-W |
| | approx | 1436 Infinity QW4, drives by W-E, License Plate |
| | approx | 1526 Infinity QW4, drives by Marcia's house |
| May 26 2021 | approx | 1035 Infinity QW4, drives by E-W |
| | approx | 1329 Infinity QW4, drives by E-W |
| | approx | 1330 Infinity QW4, drives by W-E |
| | approx | 1333 Infinity QW4, drives by E-W, License Plate |
| | approx | 1334 Infinity QW4, drives by W-E, License Plate, Sticker |
| | approx | 1428 Infinity QW4, drives by Byron's house |
| | approx | 1430 Infinity QW4, drives by Byron's house, Sticker |
| May 27 2021 | approx | 1336 Infinity QW4, drives by E-W |
| May 28 2021 | approx | 1043 Black GMC Yukon, drives by E-W, reverts to GMC, Baseball cap |
| May 29 2021 | approx | 1126 Black GMC Yukon, drives by E-W, License Plate |
| | approx | 1430 Black GMC Yukon, drives by E-W, License Plate |
| | approx | 1432 Black GMC Yukon, drives by W-E |
| | approx | 1432 Black GMC Yukon, drives by E-W, License Plate |
| | approx | 1433 Black GMC Yukon, drives by W-E, License Plate |
| | approx | 1506 Black GMC Yukon, drives by W-E, License Plate |
| June 1 2021 | approx | 1325 Black GMC Yukon, drives by W-E, License Plate |
| June 2 2021 | approx | 1012 Black GMC Yukon, drives by W-E, License Plate, Stop |
| | approx | 1012 Black GMC Yukon, drives by W-E, License Plate, Stop |
| June 4 2021 | approx | 1406 Black GMC Yukon, drives by E-W, License Plate |
| | approx | 1411 Black GMC Yukon, drives by W-E, License Plate |
| June 5 2021 | approx | 0959 Black GMC Yukon, drives by E-W, driven by Pat Blue Shirt |
| | approx | 1007 Black GMC Yukon, drives by E-W, License Plate |

| | |
|---|---|
| June 7 2021 | approx 1504 Black GMC Yukon, drives by E-W gb Visual from office BX9 |
| June 9 2021 | approx 1022 Black GMC Yukon, drives by E-W taking Pics, Trevor |
| | approx 1023 Black GMC Yukon, drives by W-E, stopped |
| | approx 1023 Black GMC Yukon, drives by W-E, stopped |
| | approx 1024 Black GMC Yukon, drives by E-W,  License Plate, Video |
| | approx 1423 Black GMC Yukon, drives by E-W License Plate Red Shirt |
| | approx 1524 Black GMC Yukon, drives by E-W, License Plate + Visual Red Shirt |
| | |
| July 7 2021 | approx 1037 Black GMC Yukon, drives by E-W, License Plate, visual id |
| Aug 9 2021 | approx 1017 Black GMC Yukon, drives by E-W, License Plate |
| Aug 11 2021 | approx 1141  Black GMC Yukon, drives by E-W, License Plate |
| Aug  21 2021 | approx  1658 Black GMC Yukon, drives by Byron house in |
| Aug  21 2021 | approx  1500 Black GMC Yukon , drives by Byron house out |
| Aug  21 2021 | approx  1509 Black GMC Yukon, drives by Byron house out |
| Aug  22 2021 | approx  1230 Black GMC Yukon, drives by Cole E-W |
| Aug  22 2021 | approx  1316 Black GMC Yukon, drives by Marcia house L-R |
| Aug  24 2021 | approx  1331 Infinity, drives by Cole E-W |
| Aug  26 2021 | approx  1458 Black GMC Yukon, drives by Cole W-E |
| Sept 18 2021 | approx  1720 Black GMC Yukon, drives by Cole E-W |
| Sept 21 2021 | approx  1419 Black GMC Yukon, drives by Cole E-W |
| Oct 16 2021 | approx 1235 Black GMC Yukon, drives by Cole E-W ?? enhance LP |
| Oct 23 2021 | approx 1245 Black GMC Yukon, drives by 3825 Potomac W-E, ID by LP |
| | approx 1635 Black GMC Yukon, drives by 3825 Potomac W-E, ?? enhance LP |
| | approx 1635 Black GMC Yukon, drives by 3825 Potomac E-W, ?? enhance LP |
| Oct 30 2021 | approx 0953 Black GMC Yukon, drives by 3825 Potomac E-W |
| | approx 0956 Black GMC Yukon, drives by 3825 Potomac E-W |
| Nov 3 2021 | approx 1555 Black GMC Yukon, drives by 3825 Marcia' house W-E Profile ID |
| | approx 1557 Black GMC Yukon, drives by 3825 Marcia' house W-E Profile ID, either stopped for 2 mins or returned after 2 mins |

Nov 6 2021        approx  1004 Black GMC Yukon, drives by Cole E-W, D clearly visible – driver

Nov 8 2021        approx 1027 Black GMC Yukon, drives by Cole E-W, got in behind PI visual on LP and
                  Driver, Nest Cam Confirm

Nov 10 2021      approx  0747 Black GMC Yukon, drives by Cole W-E, lengthy stop Nest cam confirm

Nov 20 2021      approx 1128 Black GMC Yukon, drives by Cole W-E, Driver Visual

Nov 21 2021      approx 1410 Black GMC Yukon, drives by 3825 W-E, Passenger female? LP

Nov 22 2021      approx 1109 Black GMC Yukon, drives by Cole E-W, Driver visual

Nov 23 2021      approx 1803 Black GMC Yukon, drives by Cole E-W, Driver visual, taking pictures

                  Note SE on Cole earlier

                  approx 1806 Black GMC Yukon, drives by Cole W-E

                  approx 1810 Black GMC Yukon, drives by Cole E-W, Driver visual, taking pictures



EXHIBIT

B

---

## DECLARATION OF SCOTT BYRON ELLINGTON

---

STATE OF TEXAS      §
                           §
COUNTY OF DALLAS    §

Scott Byron Ellington declares as follows:

       1.        My name is Scott Byron Ellington. I am over 21 years of age, have never been convicted of a felony or other crime involving moral turpitude, and suffer from no mental or physical disability that would render me incompetent to make this declaration.

       2.        I am able to swear, and hereby do swear under penalty of perjury, that the facts stated in this declaration are true and correct and within my personal knowledge.

       3.        Starting in January of 2021, my longtime girlfriend, Stephanie Archer ("Stephanie"), noticed a large, Black SUV possibly following her. On February 2, 2021, she was followed by the SUV to my office located at 120 Cole Street, Dallas, Texas. She noticed that the driver in the SUV was taking pictures from inside the vehicle. She confronted the individual while simultaneously taking pictures of the SUV and the driver. The license plate number of the black SUV was BX9K764.

       4.        The next day, on February 3, 2021, I was at my office when I noticed a vehicle resembling a tan Toyota 4 Runner stopped in front of my office with the driver either taking photographs or making a videorecording, or both. The license plate number of the vehicle was GPF9512. The driver of the vehicle appeared to be Patrick Daugherty ("Daugherty").

       5.        Until January of 2021, I was the general counsel for Highland Capital Management, L.P. ("Highland"). Daugherty is a former employee of Highland. In 2012, Highland sued Daugherty and Daugherty counterclaimed. The lawsuit was ultimately resolved by a jury trial, with

DECLARATION OF SCOTT BYRON ELLINGTON

a jury determining that Daugherty breached his employment agreement and his fiduciary duties and awarding Highland $2,800,000 in attorney's fees and injunctive relief. The jury likewise found that a Highland affiliate, Highland Employee Retention Assets LLC ("HERA") breached the implied duty of good faith and fair dealing and awarded Daugherty $2,600,000 in damages.

6.      Since the filing of the original lawsuit in 2012, Daugherty and Highland—or Highland related entities and individuals—have engaged in protracted litigation in several different forums across the country. Daugherty's expressed goal in his campaign is to "get" me and the founder and former CEO of Highland, Jim Dondero.

7.      Daugherty has a history of anger issues and I believed that his "drive by" of my office and following Stephanie was his attempt to intimidate me.

8.      I hired a private investigator, Greg Brandstatter ("Brandstatter"), to assist in confirming the identity of the driver of the black SUV with license plate BX9K764 and the tan SUV with the license plate GPF9512.

9.      Brandstatter's investigation found that Daugherty was the individual following Stephanie and driving by my office. Further, I have reviewed photographs and video recordings of Daugherty outside my home located at 3825 Potomac Ave, Dallas, Texas 75205, my office, the house of my sister, Marcia, and the house of my father, Byron Ellington.

10.      Daugherty has been documented outside my office, my home, and the homes of my family 143 times since January of 2021. Both Marcia and Stephanie have confronted Daugherty at times and demanded that he stop his harassment, but he has continued to visit my office and home, and the homes of my family members, despite these demands.

11.      I have moved residences three times from January 2021 to today. Daugherty has been recorded outside of the second and third residences to which I moved. The second residence

DECLARATION OF SCOTT BYRON ELLINGTON

was Stephanie's house and was not under my name. For the third residence, my address was not searchable under my name on the Dallas County Central Appraisal District website. Nonetheless, Daugherty was recorded outside of that address within two months of me moving. On information and belief, Daugherty could not have located me at either residence without physically following me or others to those locations.

12.     I believe that Daugherty's actions are leading up to a physical attack by him on either myself, Stephanie, or members of my family. I understand that Brandstatter has reported Daugherty's harassment and stalking to the Dallas Police Department. I also called the Dallas Police Department to report the harassment and stalking. The harassment has caused me fear and anxiety and will continue to cause me fear and anxiety.

13.     Daugherty's harassment further interferes with my daily activities. I am constantly looking out for him when I am at my home or at my office. I had to hire Brandstatter to confirm that Daugherty was the individual stalking me and my family and then document the extent of the harassment. I have had security devices, such as cameras, installed at my personal home and office in response to the harassment. I have had to hire personal security. I have also had to change my daily routine to try and avoid being followed by Daugherty.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

FURTHER DECLARANT SAYETH NOT.

My name is Scott Byron Ellington. My date of birth is ███ 1971 ____. My address is 3825 Potomac Ave., Dallas, Texas 75205. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas County, State of Texas, on the 11th Day of January, 2022.

_____

Scott Ellington

DECLARATION OF SCOTT BYRON ELLINGTON

### Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Patricia Perkins Mayes on behalf of Julie Pettit
Bar No. 24065971
pperkins@pettitfirm.com
Envelope ID: 60728974
Status as of 1/12/2022 8:55 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Julie Pettit | | jpettit@pettitfirm.com | 1/11/2022 6:09:57 PM | SENT |
| Beverly Congdon | | bcongdon@lynnllp.com | 1/11/2022 6:09:57 PM | SENT |
| Patricia Perkins Mayes | | pperkins@pettitfirm.com | 1/11/2022 6:09:57 PM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 1/11/2022 6:09:57 PM | SENT |
| Mary GoodrichNix | | mnix@lynnllp.com | 1/11/2022 6:09:57 PM | SENT |
| Nathaniel A.Plemons | | nplemons@lynnllp.com | 1/11/2022 6:09:57 PM | SENT |

# EXHIBIT 2

## Case Information

DC-22-00304 | SCOTT BYRON ELLINGTON vs. PATRICK DAUGHERTY

Case Number
DC-22-00304

Court
101st District Court

Judicial Officer
WILLIAMS, STACI

File Date
01/11/2022

Case Type
OTHER (CIVIL)

Case Status
OPEN

## Party

PLAINTIFF
ELLINGTON, SCOTT BYRON

Active Attorneys ▾

Lead Attorney
PETTIT, JULIE A
Retained

DEFENDANT
DAUGHERTY, PATRICK

Address
3621 CORNELL AVE.
DALLAS TX 75205

## Bond

Bond Type    Bond Number    Bond Amount    Current Bond Status

Appx. 07798

| | | |
|---|---|---|
| TRO CASH BOND | $2,500.00 | POSTED |

## Events and Hearings

01/11/2022 NEW CASE FILED (OCA) - CIVIL

01/11/2022 ORIGINAL PETITION ▾

ORIGINAL PETITION

01/11/2022 ISSUE CITATION

01/11/2022 ISSUE TRO AND NOTICE

01/12/2022 TRO HEARING ▾

ORIGINAL PETITION

Judicial Officer
WILLIAMS, STACI

Hearing Time
3:30 PM

Comment
JULIE PETTIT * AD HOC PER JUDGE WILLIAMS

01/12/2022 ORDER - TEMPORARY RESTRAINING ORDER ▾

ORDER - TEMPORARY RESTRAINING ORDER

01/12/2022 NON-SIGNED PROPOSED ORDER/JUDGMENT ▾

(PROPOSED) TEMPORARY RESTRAINING ORDER

Comment
(PROPOSED) TEMPORARY RESTRAINING ORDER

01/14/2022 BOND FILED

01/14/2022 CORRESPONDENCE - LETTER TO FILE ▾

CORRESONDENCE LETTER

Appx. 07799

01/26/2022 Temporary Injunction ▾

Judicial Officer
WILLIAMS, STACI

Hearing Time
9:30 AM

## Financial

ELLINGTON, SCOTT BYRON

| | | | | |
|---|---|---|---|---|
| | Total Financial Assessment | | | $379.00 |
| | Total Payments and Credits | | | $379.00 |
| 1/12/2022 | Transaction Assessment | | | $366.00 |
| 1/12/2022 | CREDIT CARD - TEXFILE (DC) | Receipt # 1565-2022-DCLK | ELLINGTON, SCOTT BYRON | ($229.00) |
| 1/12/2022 | STATE CREDIT | | | ($137.00) |
| 1/14/2022 | Transaction Assessment | | | $5.00 |
| 1/14/2022 | PAYMENT (CASE FEES) | Receipt # 2349-2022-DCLK | ELLINGTON, SCOTT BYRON | ($5.00) |
| 1/14/2022 | Transaction Assessment | | | $8.00 |
| 1/14/2022 | CREDIT CARD - TEXFILE (DC) | Receipt # 2553-2022-DCLK | ELLINGTON, SCOTT BYRON | ($8.00) |

## Documents

Appx. 07800

ORIGINAL PETITION

ORDER - TEMPORARY RESTRAINING ORDER

(PROPOSED) TEMPORARY RESTRAINING ORDER

CORRESONDENCE LETTER

**Appx. 07801**

# EXHIBIT 3

## CAUSE NO. DC 22-00304

| | | |
|---|---|---|
| **SCOTT ELLINGTON** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **___ JUDICIAL DISTRICT** |
| | § | |
| **PATRICK DAUGHERTY,** | § | |
| | § | |
| *Defendant.* | § | **DALLAS COUNTY, TEXAS** |

## TEMPORARY RESTRAINING ORDER

On this day, the Application for a Temporary Restraining Order of Scott Ellington, Plaintiff herein, was heard before this Court.

Based upon the pleadings, records, documents filed by counsel, and the arguments of counsel at the hearing, IT CLEARLY APPEARS:

1. That unless restrained Defendant Patrick Daugherty ("<u>Defendant</u>") will continue to harass Plaintiff Scott Ellington, his girlfriend (Stephanie Archer), his sister (Marcia Maslow), and his father (Byron Ellington) before notice and a hearing on Plaintiff's Application for Temporary Injunction, including committing the following acts:

   a. Traveling, on a near daily basis, to the personal residences of Scott Ellington, Stephanie Archer, Marcia Maslow, and Byron Ellington without invitation and parking outside or drivingly slowly past the residences;

   b. Taking pictures and video recordings of the personal residences of Scott Ellington, Stephanie Archer, Marcia Maslow, and Byron Ellington;

   c. Traveling, on a near daily basis, to Scott Ellington's office without invitation and parking outside or drivingly slowly past the building where the office is located;

Temporary Restraining Order                                      Page 1 of 3

and

    d. Taking pictures and video recordings of the office of Scott Ellington.

2.    Plaintiff will suffer irreparable harm if Defendant is not restrained immediately from continuing to harass Plaintiff and his family. Specifically, Plaintiff reasonably fears that Defendant may cause him or his family bodily harm, and the accompanying anxiety interferes with his ability to conduct his normal, daily activities.

3.    Given the foregoing, there is no adequate remedy at law to grant Plaintiff complete, final and equal relief.

4.    IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Patrick Daugherty and his agents, servants, and employees are ORDERED to immediately cease and desist from the following acts from the date of this Order until fourteen (14) days thereafter, or until further order of this Court:

    a. Being within 500 feet of Ellington;

    b. Being within 500 feet of Ellington's office located at 120 Cole Street, Dallas, Texas 75207;

    c. Being within 500 feet of Ellington's residence located at 3825 Potomac Ave, Dallas, Texas 75205;

    d. Being within 500 feet of Stephanie Archer;

    e. Being within 500 feet of Stephanie Archer's residence located at 4432 Potomac, Dallas, Texas 75025;

    f. Being within 500 feet of Marcia Maslow;

    g. Being within 500 feet of Marcia's residence located at 430 Glenbrook Dr., Murphy, Texas 75094;

Appx. 07804

    h.  Being within 500 feet of Byron Ellington;

    i.  Being within 500 feet of Byron Ellington's residence located at 5101 Creekside Ct., Parker, Texas 75094;

    j.  Photographing, videorecording, or audio recording Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington;

    k.  Photographing or videorecording the residences or places of business of Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington; and

    l.  Directing any communications toward Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington.

5.    IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff's Application for Temporary Injunction be heard on _____ at _____ M.; Defendant is commanded to appear at that time and show cause, if any exist, why a temporary injunction should not be issued against said Defendant.

6.    The clerk of the above-entitled court shall issue a temporary restraining order in conformity with the law and the terms of this order upon the filing by Plaintiff of the bond hereinafter set.

7.    This order shall not be effective until Plaintiff deposits with the Clerk, a bond in the amount of $_____ in conformity with the law.

SIGNED and ENTERED on _____ at _____ M.

_____
PRESIDING JUDGE

---

Temporary Restraining Order          Page 3 of 3

FILED
1/14/2022 2:00 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Alicia Mata DEPUTY



**2101 Cedar Springs, Suite 1540 | Dallas, Texas 75201**
**Phone: 214-329-0151 | Fax: 214-329-4076**

January 14, 2022

*Via Email*
Chief Clerk
101st Civil District Court
600 Commerce Street
6th Floor West
Dallas, TX 75202

      RE:    Cause Number DC-22-00304; *Scott Byron Ellington v. Dr. Patrick Daugherty*; in
           the 101st Civil District Court, Dallas County, Texas.

Dear Clerk:

    Plaintiff hereby pays the fee of $8.00 for the Temporary Restraining Order along with this
filing. Thank you for your attention to this matter.

                    Sincerely,

                    /s/ Julie Pettit

                    Julie Pettit

JP/ppm

Appx. 07806

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Patricia Perkins Mayes on behalf of Julie Pettit
Bar No. 24065971
pperkins@pettitfirm.com
Envelope ID: 60838852
Status as of 1/14/2022 4:21 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Julie Pettit | | jpettit@pettitfirm.com | 1/14/2022 2:00:21 PM | SENT |
| Beverly Congdon | | bcongdon@lynnllp.com | 1/14/2022 2:00:21 PM | SENT |
| Patricia Perkins Mayes | | pperkins@pettitfirm.com | 1/14/2022 2:00:21 PM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 1/14/2022 2:00:21 PM | SENT |
| Mary GoodrichNix | | mnix@lynnllp.com | 1/14/2022 2:00:21 PM | SENT |
| Nathaniel A.Plemons | | nplemons@lynnllp.com | 1/14/2022 2:00:21 PM | SENT |

<u>CAUSE NO. DC 22-00304</u>

| | | |
|---|---|---|
| **SCOTT ELLINGTON** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | _____ **JUDICIAL DISTRICT** |
| | § | |
| **PATRICK DAUGHERTY,** | § | |
| | § | |
| *Defendant.* | § | **DALLAS COUNTY, TEXAS** |

---

### TEMPORARY RESTRAINING ORDER

---

On this day, the Application for a Temporary Restraining Order of Scott Ellington, Plaintiff herein, was heard before this Court.

Based upon the pleadings, records, documents filed by counsel, and the arguments of counsel at the hearing, IT CLEARLY APPEARS:

1.     That unless restrained Defendant Patrick Daugherty ("<u>Defendant</u>") will continue to harass Plaintiff Scott Ellington, his girlfriend (Stephanie Archer), his sister (Marcia Maslow), and his father (Byron Ellington) before notice and a hearing on Plaintiff's Application for Temporary Injunction, including committing the following acts:

   a.   Traveling, on a near daily basis, to the personal residences of Scott Ellington, Stephanie Archer, Marcia Maslow, and Byron Ellington without invitation and parking outside or drivingly slowly past the residences;

   b.   Taking pictures and video recordings of the personal residences of Scott Ellington, Stephanie Archer, Marcia Maslow, and Byron Ellington;

   c.   Traveling, on a near daily basis, to Scott Ellington's office without invitation and parking outside or drivingly slowly past the building where the office is located;

---

Temporary Restraining Order                                                                 Page 1 of 3

and

d. Taking pictures and video recordings of the office of Scott Ellington.

2. Plaintiff will suffer irreparable harm if Defendant is not restrained immediately from continuing to harass Plaintiff and his family. Specifically, Plaintiff reasonably fears that Defendant may cause him or his family bodily harm, and the accompanying anxiety interferes with his ability to conduct his normal, daily activities.

3. Given the foregoing, there is no adequate remedy at law to grant Plaintiff complete, final and equal relief.

4. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Patrick Daugherty and his agents, servants, and employees are ORDERED to immediately cease and desist from the following acts from the date of this Order until fourteen (14) days thereafter, or until further order of this Court:

    a. Being within 500 feet of Ellington;

    b. Being within 500 feet of Ellington's office located at 120 Cole Street, Dallas, Texas 75207;

    c. Being within 500 feet of Ellington's residence located at 3825 Potomac Ave, Dallas, Texas 75205;

    d. Being within 500 feet of Stephanie Archer;

    e. Being within 500 feet of Stephanie Archer's residence located at 4432 Potomac, Dallas, Texas 75025;

    f. Being within 500 feet of Marcia Maslow;

    g. Being within 500 feet of Marcia's residence located at 430 Glenbrook Dr., Murphy, Texas 75094;

Appx. 07809

    h.   Being within 500 feet of Byron Ellington;

    i.   Being within 500 feet of Byron Ellington's residence located at 5101 Creekside Ct., Parker, Texas 75094;

    j.   Photographing, videorecording, or audio recording Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington;

    k.   Photographing or videorecording the residences or places of business of Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington; and

    l.   Directing any communications toward Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington.

    5.     IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff's Application for Temporary Injunction be heard on _____ at _____M. Defendant is commanded to appear at that time and show cause, if any exist, why a temporary injunction should not be issued against said Defendant.

    6.     The clerk of the above-entitled court shall issue a temporary restraining order in conformity with the law and the terms of this order upon the filing by Plaintiff of the bond hereinafter set.

    7.     This order shall not be effective until Plaintiff deposits with the Clerk, a bond in the amount of $_____ in conformity with the law.

SIGNED and ENTERED on _____ at _____ M.

_____

PRESIDING JUDGE

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Beverly Congdon on behalf of Michael K. Hurst
Bar No. 10316310
bcongdon@lynnllp.com
Envelope ID: 60766800
Status as of 1/13/2022 8:43 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Julie Pettit | | jpettit@pettitfirm.com | 1/12/2022 4:06:06 PM | SENT |
| Beverly Congdon | | bcongdon@lynnllp.com | 1/12/2022 4:06:06 PM | SENT |
| Patricia Perkins Mayes | | pperkins@pettitfirm.com | 1/12/2022 4:06:06 PM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 1/12/2022 4:06:06 PM | SENT |
| Mary GoodrichNix | | mnix@lynnllp.com | 1/12/2022 4:06:06 PM | SENT |
| Nathaniel A.Plemons | | nplemons@lynnllp.com | 1/12/2022 4:06:06 PM | SENT |

# EXHIBIT 4

**Exhibit 4:** Counsel of Record in the State Court Action

### GRAY REED

Ruth Ann Daniels
State Bar No. 15109200
rdaniels@grayreed.com
Andrew K. York
State Bar No. 24051554
dyork@grayreed.com
Drake M. Rayshell
State Bar No. 24118507
drayshell@grayreed.com
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332

### ATTORNEYS FOR PATRICK DAUGHERTY

### THE PETTIT LAW FIRM

Julie Pettit
State Bar No. 24065971
jpettit@pettitfirm.com
David B. Urteago
State Bar No. 24079493
durteago@pettitfirm.com
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Telephone: (214) 329-0151
Facsimile: (214) 329-4076

### LYNN PINKER HURST & SCHWEGMANN, LLP

Michael K. Hurst
State Bar No. 10316310
mhurst@lynnllp.com
Mary Goodrich Nix
State Bar No. 24002694
mnix@lynnllp.com
Nathaniel A. Plemons
State Bar No. 24121059
nplemons@lynnllp.com
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

### ATTORNEYS FOR SCOTT BYRON ELLINGTON

# EXHIBIT 5

**Drew K. York**

| | |
|---|---|
| **From:** | Julie Pettit <jpettit@pettitfirm.com> |
| **Sent:** | Friday, January 14, 2022 11:21 AM |
| **To:** | Drew K. York; Ruth Ann Daniels |
| **Cc:** | Michael K. Hurst; Mary Nix; Nathaniel Plemons |
| **Subject:** | [EXTERNAL] DC-22-00304 Ellington v. Daugherty |
| **Attachments:** | 2022-01-11 Plaintiff's Original Petition and Appl for TRO.pdf; 2022-01-12 Temporary Restraining Order.pdf |

Ruth Ann and Drew,

We have several pressing issues we would like to address with you regarding the upcoming injunction hearing.

    1.   Attached is the TRO signed by Judge Williams and the file-stamped petition. You all have already made an appearance in the case, so please let this email serve as service of the petition on you. Will you likewise accept service of the TRO, or would you like us to serve Mr. Daugherty?

    2.   We believe this case is a related case and should be transferred to Judge Hoffman's court.  We do not yet know if the transfer will be automatic.  If it is not automatically transferred, we intend to file a Motion to Transfer. Please let us know today if we can mark you as unopposed on our motion to transfer.

    3.   We would like to exchange written discovery on an expedited basis prior to the injunction hearing. Would you all agree that the parties will exchange a maximum of 8 RFPs with responses and documents to be produced at least 4 days prior to the hearing? Please let us know today, as we will be filing a motion for expedited discovery if we do not have an agreement on this.

    4.   We will agree to accept a subpoena for Mr. Ellington's appearance at the injunction. Are you authorized to do the same for Mr. Daugherty?

Please let us know your position on these issues. If you would prefer to talk by phone, let me know a time today that works for you and I will give you a call.

Best Regards,

Julie Pettit Greeson
The Pettit Law Firm
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Direct: 214-329-1846
Fax: 214-329-4076
jpettit@pettitfirm.com

THE **PETTIT**
LAW FIRM

**Appx. 07815**

# EXHIBIT 6

# EXHIBIT 1

Final Execution Copy

### SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement") is made and entered into by and between (i) Highland Capital Management, L.P., as reorganized debtor ("HCMLP" or the "Debtor"), and (ii) Patrick Hagaman Daugherty ("Daugherty" and together with HCMLP, the "Parties," and individually as a "Party"). This Settlement provides for the treatment of certain claims asserted by Daugherty against the Debtor, and for the Parties to take certain other specified actions in settlement thereof.

### RECITALS

WHEREAS, on October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Debtor's chapter 11 case (the "Bankruptcy") is pending in the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court");

WHEREAS, on February 2 and 3, 2021, the Court conducted a confirmation hearing with respect to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) [Docket No. 1808] (the "Plan");

WHEREAS, on February 8, 2021, the Court rendered an opinion from the bench in which it confirmed the Plan [Docket No. 1924];

WHEREAS, on February 22, 2021, the Court issued an order confirming the Plan [Docket No. 1943];

WHEREAS, on August 11, 2021, the Effective Date (as defined in the Plan) occurred [Docket No. 2700];

WHEREAS, Daugherty is a former employee and limited partner of the Debtor and has

served in other positions with affiliates and former affiliates of the Debtor;

WHEREAS, at the time of his resignation, Daugherty owned 19.1% of the preferred units of Highland Employee Retention Assets LLC ("HERA"), an employee deferred compensation vehicle managed by the Debtor and Highland ERA Management, LLC ("ERA") and contends that he owned or had the right to own all of the preferred units of HERA;

WHEREAS, prior to his resignation from HCMLP, Daugherty was awarded units of HERA, which vehicle owned interests in Restoration Capital Partners, LP ("RCP"), an HCMLP managed private equity fund, and other investments;

WHEREAS, in April 2012, the Debtor commenced an action against Daugherty in Texas state court (the "Texas Action"), and Daugherty subsequently asserted counterclaims for breach of contract and defamation, and third-party claims against HERA and others;

WHEREAS, after a three-week trial, the jury returned a verdict partially in favor of the Debtor, but Daugherty prevailed on his claims against the Debtor and James Dondero ("Dondero") for defamation with malice and a third-party claim against HERA and was awarded damages of $2.6 million against HERA, plus prejudgment and post-judgment interest at 5% (the "HERA Judgment");[1]

WHEREAS, in July 2017, after being unable to collect on the HERA Judgment, Daugherty commenced an action against the Debtor, Dondero, HERA, and ERA Management in the Delaware Chancery Court (the "Delaware Court"), in a case captioned *Daugherty v. Highland Capital Management, L.P., et al.*, C.A. No. 2017-0488-MTZ, for fraudulent transfer, promissory estoppel, unjust enrichment, indemnification, and fees on fees (the "Highland Delaware Case");

---

[1] The Debtor prevailed on its claims against Mr. Daugherty for breach of contract and breach of fiduciary duty for non-monetary damages and obtained an award of $2.8 million in attorney's fees. The HERA Judgment was affirmed on appeal on December 1, 2016.

2

WHEREAS, the Delaware Court in the Highland Delaware Case (i) found that the Dondero-related defendants improperly withheld dozens of documents in discovery on privilege grounds, and (ii) ruled that there was "a reasonable basis to believe that a fraud has been perpetrated" such that the Delaware Court applied the "crime-fraud exception" to the attorney-client privilege assertion, and such rulings have not been overturned;

WHEREAS, Daugherty asserts that such withholding of documents and the failure to search defendants' and their employees personal electronic devices for stored documents and texts as well as other emails and domain names such as sasmgt.com and gmail.com which were in their possession and control and to provide required discovery injured him by undermining his attempts to build an evidentiary record to support his claims against the Debtor and the other defendants in the Highland Delaware Case;

WHEREAS, on October 14, 2019, the Highland Delaware Case proceeded to trial and two days later, on October 16, 2019, before the completion of the trial and before the Delaware Court ruled on Daugherty's and the Debtor's cross-motions for summary judgment regarding indemnification and fees on fees, the Debtor filed for bankruptcy;

WHEREAS, on December 1, 2019, Daugherty filed a separate lawsuit in the Delaware Court, captioned *Daugherty v. Dondero, et al.*, C.A. No. 2019-0956-MTZ, against Dondero, HERA, ERA, Hunton Andrews Kurth LLP ("Andrews Kurth"), Marc Katz ("Katz"), Michael Hurst ("Hurst"), the Debtor's Chief Compliance Officer, the Debtor's then in-house counsel (Isaac Leventon ("Leventon")), and the Debtor's then general counsel (Scott Ellington ("Ellington")), for conspiracy to commit fraud, among other claims (the "HERA Delaware Case" and together with the Highland Delaware Case, the "Delaware Cases");

WHEREAS, on April 1, 2020, Daugherty filed a general, unsecured, non-priority claim

3

against the Debtor in the amount of at "least $37,483,876.59," and such claim was denoted by the Debtor's claims agent as Proof of Claim No. 67 ("<u>Proof of Claim No. 67</u>");

WHEREAS, on April 6, 2020, Daugherty filed a general, unsecured, non-priority claim against the Debtor in the amount of at "least $37,482,876.62" that superseded Proof of Claim No. 67 and that was denoted by the Debtor's claims agent as Proof of Claim No. 77 ("<u>Proof of Claim No. 77</u>");

WHEREAS, on August 31, 2020, the Debtor commenced an adversary proceeding against Daugherty by filing a complaint (the "<u>Complaint</u>") in which the Debtor: (1) objected to Proof of Claim No. 77 on various grounds (the "<u>Claim Objection</u>"), and (2) asserted a cause of action for the subordination of part of Daugherty's claim pursuant to section 510(b) of the Bankruptcy Code. Adv. Proc. No. 20-03107 (the "<u>Adv. Proc.</u>") [Adv. Docket No. 1] (the "<u>Adversary Proceeding</u>");

WHEREAS, on September 29, 2020, Daugherty filed his answer to the Complaint [Adv. Docket No. 8] (the "<u>Answer</u>");

WHEREAS, on September 24, 2020, Daugherty filed his *Motion to Confirm Status of Automatic Stay, or Alternatively to Modify Automatic Stay* [Docket No. 1099] (the "<u>Stay Motion</u>") pursuant to which he sought to sever the Debtor from the Highland Delaware Case and then consolidate the remaining claims in the Highland Delaware Case into the HERA Delaware Case and proceed with one case against the non-Debtor parties;[2]

WHEREAS, on October 23, 2020, Daugherty filed a motion seeking leave to amend his Proof of Claim No. 77 [Docket No. 1280] (the "<u>POC Amendment Motion</u>"). The amended proof

---

[2] On October 8, 2020, the Debtor commenced a second adversary proceeding against Daugherty (the "<u>Second Adversary Proceeding</u>"), seeking to enjoin him from prosecuting the Delaware Cases. Adv. Proc. 20-03128 ("<u>2d Adv. Proc.</u>") [2d Adv. Proc. Docket No. 1]. On January 29, 2021, the parties filed a Settlement that resolved the Second Adversary Proceeding, and the Second Adversary Proceeding was subsequently dismissed with prejudice. [2d Adv. Proc. Docket No. 12].

of claim attached to the POC Amendment Motion increased Daugherty's general, unsecured, non-priority claim against the Debtor to the amount of at "least $40,410,819.42" and sought to supersede Proof of Claim No. 67 and Proof of Claim No. 77;

WHEREAS, on October 23, 2020, Daugherty filed his *Motion for Temporary Allowance of Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018 Motion*, seeking for his Claim to be temporarily allowed for voting purposes in this amount of $40,410,819.42 [Docket No. 1281] (the "3018 Motion");

WHEREAS, on November 3, 2020, the Court granted the Stay Motion [Docket No. 1327];

WHEREAS, the Debtor opposed the 3018 Motion, and after conducting an evidentiary hearing for the limited purpose of determining the 3018 Motion, the Court entered an order temporarily allowing Daugherty's Claim only for voting purposes in the amount of $9,134,019 [Docket No. 1474];

WHEREAS, on December 10, 2020, the Court entered an order [Docket No. 1533] granting the POC Amendment Motion, and Daugherty was permitted to file an amendment to his proof of claim. On December 23, 2020, Daugherty filed an amended proof of claim, designated by the Debtor's claim agent as Proof of Claim No. 205 ("Proof of Claim No. 205" or the "Daugherty Claim"). Proof of Claim No. 205 superseded Proof of Claim No. 77 and increased the amount of the Daugherty's Claim to $40,710,819.42;

WHEREAS, on November 30, 2020, Daugherty filed his Motion to Lift the Automatic Stay (the "Lift Stay Motion") [Docket No. 1491] seeking to lift the automatic stay to allow him to finish his trial in the Delaware Court and liquidate his claims. The Debtor opposed the Lift Stay Motion, and after a hearing was held on December 17, 2020, the Court denied the relief requested in the Lift Stay Motion [Docket No. 1612];

5

WHEREAS, except with respect to the Reserved Claim (as defined below), the Parties have agreed to settle and resolve all claims and disputes between them and their respective current affiliates, managed entities, and employees, including the Daugherty Claim, on the terms set forth in this Settlement:

AGREEMENT

**NOW, THEREFORE**, after good-faith, arms-length negotiations, and in consideration of the foregoing, it is hereby stipulated and agreed that:

1.    Allowed Claims:  In full satisfaction of the entirety of the Daugherty Claim against the Debtor and HCMLP Released Parties (defined below), excluding the Reserved Claim, Daugherty shall receive (a) an allowed general unsecured Class 8 claim in the amount of $8,250,000; (b) an allowed subordinated general unsecured Class 9 claim in the amount of $3,750,000; and (c) a one-time lump sum cash payment in the amount of $750,000 to be paid within 5 business days of Bankruptcy Court approval of this Settlement Agreement.

2.    Recovery:  The Debtor makes no representation or warranty as to the recovery on Class 8 or Class 9 claims under the Plan.

3.    Observation Access:  As soon as practicable following entry of an order of the Bankruptcy Court approving this Settlement, HCMLP shall use reasonable efforts to petition the Claimant Trust Oversight Board[3] to permit Daugherty to have access as an observer to meetings of the Claimant Trust Oversight Board, subject to policies, procedures, and agreements applicable to other observers of the Claimant Trust Oversight Board, including policies, procedures, and agreements related to confidentiality and common interest.  Whether Daugherty will be granted observer access and any continuing observer access is and will remain at the sole discretion of the

---

[3] The Claimant Trust Oversight Board refers to the Oversight Board as defined in the August 11, 2021 Highland Claimant Trust Agreement establishing the Claimant Trust, as defined therein.

6

Claimant Trust Oversight Board.

4.      <u>RCP Track Record</u>:  HCMLP shall use reasonable efforts to provide Daugherty with data constituting the investment performance track record of RCP during Daugherty's tenure at HCMLP.  Daugherty shall not be entitled to any compensation with respect to the performance of RCP.  HCMLP makes no representations or warranties regarding such data and takes no responsibility with respect to the use of such data for any purposes.

5.      <u>Daugherty Releases</u>:  Except as specifically provided in this paragraph 5, and to the maximum extent permitted by applicable law, the Debtor, on behalf of itself and each of the HCMLP Entities and HCMLP Parties (as those terms are defined in paragraph 6 below), hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and covenants never to sue Daugherty, his successors, affiliates, and assigns, (and in each such category to include their respective advisors, trustees, directors, officers, managers, members, partners, employees, beneficiaries, shareholders, agents, participants, subsidiaries, parents, affiliates, and designees) (collectively, the "<u>Daugherty Additional Release Parties</u>" and together with Daugherty, the "<u>Daugherty Released Parties</u>"), in each case acting in such capacity, for and from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses (including, without limitation, attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise, including, without limitation those which were or could have been asserted in the Bankruptcy, including the Adversary Proceeding, the Texas Action, or the Delaware Cases, all existing as of the date hereof (collectively, the "<u>HCMLP Released Claims</u>"); <u>provided</u>, <u>however</u>, that such release shall not

7

apply with respect to any and all defenses that HCMLP or the HCMLP Entities may have to the Reserved Claim or the Reserve Motion (as those terms are defined herein) or Daugherty's obligations under this Settlement. For the avoidance of doubt, the HCMLP Released Claims include all claims or causes of action and facts, known or unknown, that exist as of the date hereof but do not include or apply to claims or causes of action based on facts occurring after the date hereof.

  6. <u>HCMLP Releases</u>: Except as specifically provided in this paragraph 6, and to the maximum extent permitted by law, Daugherty, on behalf of himself and each of the Daugherty Released Parties, hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and covenants never to sue, (a)(i) HCMLP; (ii) Strand Advisors Inc.; (iii) the Claimant Trust; (iv) the Claimant Trust Oversight Board; (v) the Highland Litigation Sub-Trust; (vi) the Highland Indemnity Trust; (vii) any entity of which greater than fifty percent of the voting ownership is held directly or indirectly by HCMLP as of the date hereof and any entity otherwise directly or indirectly controlled by HCMLP as of the date hereof,; and (viii) any entity managed by either HCMLP or a direct or indirect subsidiary of HCMLP, including Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Restoration Capital Master, L.P. (and all of their respective general partners, feeder funds, managers, and affiliates) (the foregoing (a)(i) through (a)(viii) the "<u>HCMLP Entities</u>"), and (b) with respect to each such HCMLP Entity, such HCMLP Entity's respective current (meaning employed in their respective roles as of the date hereof) advisors, trustees, directors, officers, managers, members, partners, employees, beneficiaries, shareholders (but not the shareholders of Strand Advisors Inc.), agents, participants, subsidiaries, parents, affiliates, successors, designees, and assigns, except as expressly set forth below (the "<u>HCMLP Parties</u>," and together with the

8

HCMLP Entities, the "HCMLP Released Parties"),[4] in each case acting in such capacity, for and from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses (including, without limitation, attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise, including without limitation those which were or could have been asserted in the Bankruptcy, including the Adversary Proceeding, the Texas Action, the Daugherty Claim, or the Highland Delaware Case (collectively, the "Daugherty Released Claims"); provided, however, that such release shall not apply with respect to the Reserved Claim or the Reserve Motion (as those terms are defined in paragraph 9 below) or HCMLP's obligations under this Settlement. This release expressly applies to all current employees of HCMLP as the Reorganized Debtor (as defined in the Plan), in their capacities as such. For the avoidance of doubt, the Daugherty Released Claims includes all claims or causes of action and facts, known or unknown, that exist as of the date hereof but do not include or apply to claims or causes of action based on facts occurring after the date hereof.

7. Reservation of Daugherty Rights: Notwithstanding anything contained herein to the contrary, the term HCMLP Released Parties shall not include (a) NexPoint Advisors, L.P. (or any of its subsidiaries and employees, advisors, or agents), (b) the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and any of their respective employees, advisors, or agents), (c) NexBank, SSB (or any of its subsidiaries, employees, advisors, or agents), (d) James Dondero or any trust in which Dondero or any of his family members are a trustee or beneficiary (or any trustee acting for such trust), including but not limited to Hunter

---

[4] The Daugherty Additional Released Parties and the HCMLP Released Parties are collectively referred to as the "Additional Released Parties."

Appx. 07826

Mountain Investment Trust, The Get Good Trust, Dugaboy Investment Trust, SLHC Investment Trust, (e) HERA (subject to paragraph 8 below), (f) ERA (subject to paragraph 8 below), (g) Grant Scott, (h) Mark Okada and any trust in which Mark Okada or any of his family members are a beneficiary (or any trustee acting for such trust in their respective capacities), (i) Ellington, (j) Leventon, (k) Katz, (l) Hurst, (m) Andrews Kurth, or (m) any other former employee (as of the date hereof) of the HCMLP Released Parties.

8.    <u>HERA and ERA</u>:  The Parties acknowledge and agree that as of the date hereof, HERA and ERA have no material assets other than potential claims that may exist against persons or entities not released at or prior to the date hereof, and no claims against the HCMLP Released Parties. The allowed claims provided in paragraph 1 hereof are expressly agreed to in order to satisfy any liability the Debtor may have in connection with the HERA Judgment.  To facilitate recovery of such potential claims – which expressly excludes any and all claims by or in the name of HERA and ERA against any of the HCMLP Released Parties -- HCMLP will transfer its interests in HERA and ERA to Daugherty.  Such transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system.  Such transfer will be without representation or warranty of any type; including, for the avoidance of doubt, without any representation or warranty as to the merits of the potential claims or the efficacy of the transfer of the potential claims.  Such transfer will be without any liability or material cost to HCMLP or its affiliates or the other HCMLP Released Parties, including any liability in respect of any assets that HERA or ERA ever actually or allegedly owned, possessed, or controlled and that were actually or allegedly transferred, conveyed, sold, written off or otherwise disposed of (in any such case, a "<u>Disposition</u>").  In connection with the transfer, HERA and ERA have expressly released the HCMLP Released Parties from any and all claims, including any claims actions or remedies related

Appx. 07827

to any Disposition, either of them may have against any HCMLP Released Party now or in the future (the "HERA and ERA Release"). Daugherty on behalf of himself and each of the Daugherty Released Parties acknowledges, accepts, and agrees not to challenge the HERA and ERA Release or support any challenge thereto. A copy of the HERA and ERA Release is annexed hereto as **Exhibit A**. Daugherty acknowledges and agrees that even though HERA and ERA are not HCMLP Released Parties under this Agreement, Daugherty and all Daugherty Released Parties shall (a) not seek to hold any HCMLP Released Party liable for any action or inaction taken by or on behalf of HERA or ERA, including through any derivative, veil-piercing or similar cause of action or remedy; and (b) not seek to recover damages or obtain any form of relief against any HCMLP Released Party on account of any action or inaction taken by or on behalf of HERA or ERA, including through any veil piercing or similar cause of action or remedy. If, for any reason, HERA or ERA, or any person or entity acting on their behalf, recovers anything from any HCMLP Released Party, Daugherty shall promptly turnover to HCMLP or its successors and assigns any amounts actually recovered by Daugherty or any Daugherty Released Party, from HERA or ERA arising from, related to, or derived from any claim that HERA or ERA or any person or entity acting on their behalf has or may have against any HCMLP Released Party. HCMLP will provide reasonable assistance to Daugherty to assist with the preparation of any required HERA K-1s for 2021, but any requirement to provide such K-1s will be the obligation, if any, of HERA.

9.    IRS Compensation Claim:  In section 4(ii) of the Addendum to Proof of Claim No. 205, Daugherty contends that he has a contingent, unliquidated claim against the Debtor arising out of a 2008/2009 compensation letter (the "Reserved Claim"), which claim is also related to an audit/dispute between the Debtor and the Internal Revenue Service (the "IRS") (the dispute between the Debtor and IRS being referred to herein as the "IRS Audit Dispute"). The Debtor

11

disputes the validity and amount of the Reserved Claim. Daugherty shall retain the Reserved Claim solely against the Debtor and not against any other HCMLP Released Party, and the Debtor reserves the right to assert any and all defenses thereto. Any litigation by and between the Debtor and Daugherty concerning the validity and amount of the Reserved Claim shall be stayed until the IRS makes a final determination with respect to the IRS Audit Dispute; provided, however, that Daugherty may file a motion with the Bankruptcy Court to have the Reserved Claim estimated for purposes of establishing a reserve as a "Disputed Claim" under the Debtor's Plan (the "Reserve Motion"), and the Debtor (and any successor) reserves the right to assert any and all defenses thereto. Notwithstanding the foregoing, Daugherty may address any personal claim or personal liability to the IRS as a result of the IRS Audit Dispute, including settlement of any such claims; provided, however, Daugherty agrees to forego settling or addressing any claims with the IRS without the written consent of the Debtor until March 31, 2022.

10.    Current HCMLP Employees: The HCMLP Parties set forth on **Appendix A** hereto are currently employed by the Debtor are HCMLP Released Parties. By executing a copy of this Settlement and delivering it to Daugherty, each of the persons on Appendix A agrees not to sue, attempt to sue, or threaten or work with or assist any entity or person to sue, attempt to sue, or threaten any Daugherty Released Party on or in connection with any claim or cause of action arising prior to the date of this Settlement.

11.    Dismissal and Motions in Other Actions. Within ten business days after approval of this Settlement by the Bankruptcy Court, the Parties shall take all steps necessary (a) to dismiss with prejudice (i) the Highland Delaware Case, as against the Debtor and any HCMLP Released Party, and (ii) the HERA Delaware Case, as against every HCMLP Released Party, (b) to file an agreed motion and proposed order to partially vacate the final judgment entered against Daugherty

12

in the Texas Action, (c) withdraw HCMLP's objection to the Daugherty motion to recuse in the Texas Action, and (d) to dismiss the Adversary Proceeding with prejudice. The parties shall file the foregoing motions and withdrawals substantially in the form of the documents annexed hereto as **Exhibit B**.

12. <u>Additional Third Party Claims Discovery</u>: The Debtor (a) shall accept service of any subpoenas via email served by Daugherty in connection with the Delaware Cases on behalf of itself, the HCMLP Entities, the HCMLP Parties (but only in their capacity as employees of HCMLP); and (b) acknowledge and consent to the jurisdiction of the Delaware Chancery Court for purposes of enforcing any such subpoenas, subject in all respects to the rights that the HCMLP Entities and HCMLP Parties to defend the requested production, if any.

13. <u>Settlement of Third Party Claims</u>: Daugherty shall not settle any claims or causes of action against any current or former director, officer, employee, agent or representative of HCMLP or Strand Advisors Inc. (collectively, the "<u>Potentially Indemnified Parties</u>") to the extent such claims have been brought or could have been brought against any Potentially Indemnified Parties, if any such settlement designates, defines or describes the settled claims as arising out of or relating to simple negligence or as having otherwise been within the scope of employment of the Potentially Indemnified Party.

14. <u>Claims Register</u>: As soon as practicable after the Settlement Effective Date, HCMLP shall instruct the claims agent in the Debtor's chapter 11 case to adjust the claims register in accordance with this Settlement.

15. <u>Daugherty Representations</u>: Daugherty represents and warrants to each of the HCMLP Released Parties that (a) he has full authority to release the Daugherty Released Claims and has not sold, transferred, or assigned any Daugherty Released Claim to any other person or

entity and that (b) no person or entity other than Daugherty has been, is, or will be authorized to bring, pursue, or enforce any Daugherty Released Claim on behalf of, for the benefit of, or in the name of (whether directly or derivatively) Daugherty.

16.    <u>HCMLP Representations</u>: Each of HCMLP and each HCMLP Released Party who has signed this Settlement represents and warrants to Daugherty that (a) he, she or it has not sold, transferred, pledged, assigned or hypothecated any HCMLP Released Claim to any other person or entity and (b) he, she, or it has full authority to release any HCMLP Released Claims that such HCMLP Released Party personally has against Daugherty.

17.    <u>Additional HCMLP Representations</u>: HCMLP represents and warrants that it is releasing the HCMLP Released Claims on behalf of the HCMLP Entities to the maximum extent permitted by any contractual or other legal rights HCMLP possesses. To the extent any of the HCMLP Entities dispute HCMLP's right to release the HCMLP Released Claims on behalf of any of the HCMLP Entities, HCMLP shall use commercially reasonable efforts to support Daugherty's position, if any, that such claims were released herein. For the avoidance of doubt, HCMLP will have no obligations to assist Daugherty under this paragraph if HCMLP has been advised by external counsel that such assistance could subject HCMLP to liability to any third party or if such assistance would require HCMLP to expend material amounts of time or money. HCMLP shall not argue in any forum that the non-signatory status of any of the HCMLP Entities to this Settlement shall in any way affect the enforceability of this Settlement vis-à-vis any of the HCMLP Entities. The Parties agree that all of the HCMLP Entities are intended third-party beneficiaries of this Release.

18.    <u>HCMLP Covenant</u>: HCMLP and the HCMLP Entities covenant and agree that they will not pursue or seek to enforce any injunctions entered in the Texas Action against

14

Daugherty.

19. <u>Entire Agreement; Modification</u>: This Settlement contains the entire agreement between the Parties as to its subject matter and supersedes and replaces any and all prior agreements and undertakings between the Parties. This Settlement may not be modified other than by a signed writing executed by the Parties.

20. <u>Bankruptcy Court Approval</u>: Notwithstanding anything to the contrary contained herein, the effectiveness of HCMLP and the Claimant Trust's execution of this Settlement shall be subject to entry of an order of the Bankruptcy Court approving this Settlement. HCMLP shall take all steps necessary to file with the Bankruptcy Court a motion for an order approving this Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 and section 363 of the Bankruptcy Code (the "<u>Motion</u>"). The parties agree to cooperate in the preparation and prosecution of the Motion which shall be filed no later than 5 business day after execution of this Settlement, unless such time is extended by mutual agreement.

21. <u>Counterparts</u>: This Settlement may be executed in counterparts (including facsimile and electronic transmission counterparts), each of which will be deemed an original but all of which together constitute one and the same instrument and shall be effective against a Party or Additional Released Party upon approval of the Settlement by the Bankruptcy Court.

22. <u>Governing Law; Jurisdiction</u>: This Settlement will be exclusively governed by and construed and enforced in accordance with the laws of the State of Delaware, without regard to its conflicts of law principles, and all claims relating to or arising out of this Settlement, or the breach thereof, whether sounding in contract, tort, or otherwise, will likewise be governed by the laws of the State of Delaware, excluding Delaware's conflicts of law principles. The Bankruptcy Court will retain exclusive jurisdiction over all disputes relating to this Settlement.

Appx. 07832

23.   <u>Headings</u>:  Paragraph headings included herein are for convenience and shall have no impact whatsoever on the meaning or interpretation of any part of this Settlement.

[Remainder of page intentionally left blank]

16

Appx. 07833

In witness whereof, the parties hereto, intending to be legally bound, have executed this Settlement as of the day and year set forth below:

Dated: 11-2/-21

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

HIGHLAND CLAIMANT TRUST

By: _____
Name: James P. Seery, Jr.
Title: Claimant Trustee

PATRICK HAGAMAN DAUGHERTY

Dated: 11/22/21

By: _____
Name: Patrick Hagaman Daugherty

Appx. 07834

**EXHIBIT A**

# HERA RELEASE AGREEMENT

This HERA Release Agreement ("HERA Release Agreement") is entered into as of November 21, 2021 by and among Highland Capital Management, L.P., as reorganized debtor ("HCMLP" or the "Debtor"), Patrick Hagaman Daugherty ("Daugherty"), Highland Employee Retention Assets, LLC ("HERA") and Highland ERA Management, LLC ("ERA" and together with HCMLP, and HERA, the "Parties," and individually as a "Party").

WHEREAS, reference is hereby made to the Settlement Agreement (the "Settlement") of even date herewith and attached hereto made and entered into by and between the Debtor, the Highland Claimant Trust, and Daugherty.

WHEREAS, the Settlement settles all of Daugherty's claims against the HCMLP Released Parties, including all claims against the HCMLP Released Parties relating to transfers of assets from HERA.

WHEREAS, the Settlement includes, among other things, the transfer by HCMLP to Daugherty of HCMLP's interests in HERA and ERA.

WHEREAS, under the Settlement such transfer is being made without any liability to any of the HCMLP Released Parties of any type and is conditional on the full release of, and covenant not to sue, each of the HCMLP Released Parties, by and from HERA, ERA, Daugherty and the Daugherty Released Parties.

WHEREAS, neither HERA nor ERA filed proofs of claim in the Bankrupty and have no claims against HCMLP.

WHEREAS, out of an abundance of caution to confirm that HERA, ERA, Daugherty, and the Daugherty Released Parties have no claims against the HCMLP Released Parties, this HERA Release Agreement is being entered into contemporaneously with the Settlement and constitutes an

essential part thereof.

WHEREAS, capitalized terms used herein but not otherwise defined herein have the respective meanings set forth in the Settlement.

NOW, THEREFORE, in consideration of the entry into of the Settlement, the transfer of the equity interests in HERA and ERA to Daugherty in accordance with the Settlement, and for other good and valuable consideration, including the provisions set forth herein, the parties hereto further agree as follows:

1.    Upon entry of an order of the Bankruptcy Court approving this Settlement and to the maximum extent permitted by law, Daugherty, on behalf of himself and each of the Daugherty Additional Release Parties, together with each of HERA and ERA (Daugherty, the Daugherty Additional Release Parties, HERA and ERA shall be collectively referred to herein as the "HERA Releasing Parties"), each hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and covenants never to sue, any of the HCMLP Released Parties for and from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses (including, without limitation, attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise, including without limitation those which were or could have been asserted in the Bankruptcy, including the Adversary Proceeding, the Texas Action, the Daugherty Claim, Highland Delaware Case, or the HERA Delaware Case (collectively, "Claims"), in each case that in any way arise from or otherwise in any way relate to HERA or ERA, including, without limitation, any actual or potential claims, whether known or unknown, in any way related to or

arising out of the formation, management, operation or assets of HERA, ERA or any of their respective predecessors or successors, including the transfer of any assets to or from HERA or ERA, it being understood that all remaining assets of HERA have been transferred to HCMLP prior to the date hereof, and in addition to the releases set forth above, each of the HERA Releasing Parties irrevocably waives and releases and covenants not to sue with respect to any Claims against any of the HCMLP Released Parties in any way related to any such transfers or assets, whether *in personam* with respect to the HCMLP Released Parties or *in rem* with respect to any of their assets (collectively, the "HERA Released Claims") or any other Disposition.

2. This Release constitutes a part of, and is supplemental to, the provisions of the Settlement.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

In witness whereof, the parties hereto, intending to be legally bound, have executed this

HERA Release Agreement as of the date set forth above.

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name:  James P. Seery, Jr.
Title:   Chief Executive Officer

PATRICK HAGAMAN DAUGHERTY

By: _____
Name:  Patrick Hagaman ~~Daugherty~~

HIGHLAND EMPLOYEE RETENTION ASSETS, LLC

By: Highland ERA Management, LLC, its manager

By: Highland Capital Management. LP

By: _____
Name:  James P. Seery, Jr.
Title:   Chief Executive Officer

HIGHLAND ERA MANAGEMENT, LLC

By: _____
Name:  James P. Seery, Jr.
Title:   Authorized Signatory

**EXHIBIT B**

**CAUSE NO. 12-04005**

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | |
| PATRICK DAUGHERTY, | § § | |
| Defendant and Counter-Plaintiff, | § § | DALLAS COUNTY, TEXAS |
| v. | § § | |
| SIERRA VERDE, LLC, HIGHLAND EMPLOYEE RETENTION ASSETS LLC, JAMES DONDERO, PATRICK BOYCE, AND WILLIAM L. BRITAIN, | § § § § § | |
| Third-Party Defendants. | § § § § | 68th JUDICIAL DISTRICT |

## AGREED MOTION TO PARTIALLY VACATE THE FINAL JUDGMENT DATED JULY 14, 2014

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Highland Capital Management, LP ("Highland") and Defendant Patrick Daugherty ("Daugherty" and together with Highland, the "Parties") file this *Agreed Motion to Partially Vacate the Final Judgment dated July 14, 2014* (the "Motion"), and respectfully show the following:

1.      On July 14, 2014, this Court entered a *Final Judgment* (the "Judgment") that, among other things, granted Highland's motion for injunctive relief against Daugherty.

2.      The Judgment was amended on March 23, and June 23, 2017.

3.      On October 16, 2019, filed a petition under chapter 11 in the United States Bankruptcy Court for the District of Delaware ("Highland's Bankruptcy Case"). On October 24,

**AGREED MOTION TO PARTIALLY VACATE FINAL JUDGMENT - PAGE 1 OF 5**
4851-6473-6986.4

2019, as a result of the commencement of Highland's Bankruptcy Case, the Supreme Court of Texas issued an order abating a related case that Daugherty had brought in that court, Case No. 19-0758.   Highland's Bankruptcy Case was subsequently transferred to the United States Bankruptcy Court for the Northern District of Texas.

4.      Daugherty asserted certain claims against Highland in Highland's Bankruptcy Case. The Parties have fully and finally resolved their disputes pursuant to a settlement agreement (the "Settlement Agreement") reached in the Highland Bankruptcy Case pursuant to which, among other things, (a) all of Daugherty's known and unknown claims against each of the Highland Released Parties (as those terms are defined in the Settlement Agreement) are resolved, and (b) this Motion seeking the *vacatur* of certain provisions of the Judgment specifically set forth below is being filed.

5.      Highland and Daugherty hereby agree and stipulate that the Court has plenary power to issue an order granting this Motion because the Court retained authority to enforce the permanent injunction rendered in the Judgment, and that changed circumstances have now arisen such that the Court should dissolve the permanent injunction.   Highland and Daugherty further agree and stipulate that this Motion shall be treated as an agreement of the Parties pursuant to Texas Rule of Civil Procedure 11, and is fully enforceable. *See Coale v. Scott*, 331 S.W.3d 829, 831-32 (Tex. App.—Amarillo 2011, no pet.) ("Irrespective of whether a trial court lost its plenary jurisdiction over its judgment, the trial court's authority to approve a Rule 11 agreement does not depend on whether it has such jurisdiction.").

6.      Highland and Daugherty agree that the following portions of the Judgment shall be vacated pursuant to their settlement in the Highland Bankruptcy:

**AGREED MOTION TO PARTIALLY VACATE FINAL JUDGMENT - PAGE 2 OF 5**
4851-6473-6986.4

   a. The second full paragraph on Page 2 of the Judgment, which begins "The Court, after considering the jury's findings regarding Daugherty's breaches of contract and breaches of fiduciary duty . . .";

   b. The permanent injunction rendered against Daugherty in the third full paragraph on Page 2 of the Judgment, which begins "It is therefore further ORDERED that Daugherty be and hereby is commanded to cease and desist from . . .";

   c. The fourth and fifth full paragraphs on Page 2 of the Judgment awarding Highland a monetary judgment against Daugherty for reasonable and necessary attorney's fees, as well as post-judgment interest on that award[1]; and

   d. The jury's answers to Questions 1, 2, 5, 6, 9 and 12 in the Verdict, which was attached as Exhibit 1 to the Judgment.

    7.    Highland and Daugherty further agree that, as a result of the vacation of the permanent injunction in the Judgment, Highland hereby withdraws any pending motions to show cause or motions for contempt against Daugherty that allege Daugherty violated or is violating the permanent injunction. Highland also agrees not to seek to enforce the permanent injunction in any manner in the future.

---

[1] Daugherty previously satisfied the monetary judgment awarded to Highland, and Highland filed a release of the monetary judgment. Although Highland and Daugherty have agreed to vacate the monetary judgment awarded to Highland, Daugherty waives and relinquishes any right or claim to recover any amount previously paid in satisfaction of the Judgment and Highland shall not be required to reimburse Daugherty for his prior satisfaction of the monetary judgment. To the extent Daugherty is entitled to indemnification for any liabilities, losses, and damages allegedly incurred by him for actions taken in connection with Highland's business, including the liabilities Daugherty allegedly incurred in connection with this action and the Judgment, such indemnification claims have been fully and finally satisfied and resolved under the Settlement Agreement.

**AGREED MOTION TO PARTIALLY VACATE FINAL JUDGMENT - PAGE 3 OF 5**
4851-6473-6986.4

8.      Concurrent with the filing of this Motion, Daugherty will file a motion to dismiss his as-yet unfiled petition for review pending before the Supreme Court of Texas under Case No. 19-0758.

9.      Highland and Daugherty further agree that any portions of the Judgment that are not specifically vacated pursuant to this Motion shall remain in full force and effect.

WHEREFORE, Highland and Daugherty pray that the Court grant this Motion in its entirety, and for all further relief, at law or in equity, the Court deems necessary.

**AGREED MOTION TO PARTIALLY VACATE FINAL JUDGMENT - PAGE 4 OF 5**
4851-6473-6986.4

Respectfully submitted,

GRAY REED & McGRAW LLP

By: ___ /s/ Sonya D. Reddy _____
      ANDREW K. YORK
      State Bar No. 24051554
      E-mail: dyork@grayreed.com
      SONYA D. REDDY
      State Bar No. 24079188
      E-mail: sreddy@grayreed.com

1601 Elm Street, Suite 4600
Dallas, Texas 75201
(214) 954-4135
(214) 953-1332 (Fax)

**ATTORNEYS FOR PATRICK DAUGHERTY**

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been transmitted by electronic transmission to all counsel of record on February ___, 2021, as follows:

| | |
|---|---|
| Marc D. Katz | Michael K. Hurst |
| Crystal J. Woods | A. Shonn Brown |
| DLA PIPER LLP (US) | Jonathan Childers |
| 1717 Main St., Suite 3700 | LYNN PINKER COX HURST, LLP |
| Dallas, Texas 75201 | 2100 Ross Ave., Suite 2700 |
| 214-743-4545 (Fax) | Dallas, Texas 75201 |
| marc.katz@dlapiper.com | (214) 981-3839 (Fax) |
| crystal.woods@dlapiper.com | mhurst@lynnllp.com |
| | sbrown@lynnllp.com |
| Attorneys for Highland Capital | jchilders@lynnllp.com |
| Management, L.P. | |
| | Attorneys for Third-Party Defendants HERA, |
| | Patrick Boyce, and William Britain |

/s/ Sonya D. Reddy _____
SONYA D. REDDY

**AGREED MOTION TO PARTIALLY VACATE FINAL JUDGMENT - PAGE 5 OF 5**
4851-6473-6986.4

**APPENDIX A** (signatures to follow)

1. James P. Seery, Jr.
2. Cameron Baynard
3. Nathan Burns
4. Timothy Cournoyer
5. Naomi Chisum
6. Stetson Clark
7. Sean Fox
8. Matthew Gray
9. Kristin Hendrix
10. David Klos
11. Vishal Patel
12. Thomas Surgent
13. Michael Throckmorton

Appx. 07846

# EXHIBIT 7

# LYNN PINKER HURST SCHWEGMANN

MICHAEL K. HURST
*Partner*
*Board Certified – Civil Trial Law*
*Texas Board of Legal Specialization*

D 214 981 3838
F 214 981 3839
mhurst@lynnllp.com

Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
**lynnllp.com**

January 13, 2022

***Via FedEx and E-Mail***
Patrick Daugherty,
c/o Ruth Ann Daniels & Drew York
rdaniels@grayreed.com
dyork@grayreed.com
GRAY REED & MCGRAW, LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201

Re:    ***Litigation Hold:  Preservation of Information. Scott Byron***
***Ellington v. Patrick Daugherty Cause No. DC-22-00304, in the***
***101st Judicial District, Dallas County (the "Lawsuit").***

Dear Counsel:

Our Firm represents Scott Byron Ellington in the above-referenced Lawsuit.  Texas law requires Defendant Patrick Daugherty to preserve, maintain, and not destroy or delete documents and communications (whether in hard copy or electronic form) that are relevant or could be relevant to this litigation.

Please accept this letter as Mr. Ellington's formal written request that Mr. Daugherty, and any affiliated entities, employees, agents, or representatives of Mr. Daugherty, preserve documents and other evidence, including that stored in magnetic and/or electronic form ("Hold Notice").

The following definitions shall apply in this letter:

- "You" and "your" refers to Mr. Daugherty, your agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions, and their predecessors, successors or affiliates, and their respective agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

- "Ellington Party" refers to Plaintiff Scott Ellington, Byron Ellington, Marcia Maslow, Adam Maslow, the two minor children of Marcia and Adam Maslow, Stephanie Archer and her minor child, and any person who was then accompanying any of the aforementioned individuals.

Ruth Ann Daniels
Drew York
January 13, 2022
Page 2

- "Ellington Location" refers 120 Cole Street, Dallas, Texas 75207, 3825 Potomac Ave, Dallas, Texas 75205, 4432 Potomac, Dallas, Texas 75025, 430 Glenbrook Dr., Murphy, Texas 75094, 5101 Creekside Ct., Parker, Texas 75094, any other residence or place of business of any Ellington Party, and any other location Mr. Daugherty believed to be associated with any Ellington Party.

- "Ellington Recordings" shall mean all electronic recordings of any Ellington Party or Ellington Location, including any persons or vehicles at such Ellington Locations.

## Litigation Hold: Preservation of Information

You are directed to immediately initiate a litigation hold for potentially relevant evidence comprised of (without limitation), documents, communications, tangible things, and as more fully defined below, electronically stored information (hereinafter "ESI") relating to:

(1) All claims and allegations contained within the Original Petition in this case;

(2) All factual, legal, affirmative, or other defenses Mr. Daugherty may assert in the Lawsuit;

(3) All counter-claims or third-party claims Mr. Daugherty may assert in the Lawsuit;

(4) All Ellington Recordings;

(5) All documents and communications evidencing the transmission of any Ellington Recording to any other party, person, or entity;

(6) All documents and communications with any other party, person, or entity regarding the Ellington Recordings and/or the observation, surveillance, or investigation of any Ellington Party or Ellington Location;

(7) All electronic or hand-written notes, memoranda, or other documents related to or evidencing Mr. Daugherty's recordation, observation, surveillance, or investigation of any Ellington Party or Ellington Location; and

(8) All documents and communications regarding any Ellington Party or Ellington Location from 1/1/2021 – present (or from the date Mr. Daugherty began his observation, surveillance, or investigation of any Ellington Party, if earlier than 1/1/2021).

**Appx. 07849**

Ruth Ann Daniels
Drew York
January 13, 2022
Page 3

You must act diligently and in good faith to secure compliance with such litigation hold and thereby preserve the aforementioned documents, tangible things, and ESI (hereinafter, the "Evidence").

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is likely stored on current and former computer systems and other media and devices (including but not limited to personal digital assistants, voice-messaging systems, online repositories, e-mail servers, computer servers, and cellular telephones/smart phones) that belong to you or are in your possession, custody, or control. For the avoidance of doubt, this includes any documents, communications, and information exchanged with your attorneys or otherwise subject to the attorney-client, work product, or other applicable claims of privilege as such information may be the subject of a privilege log or related motion practice.

"ESI" should be afforded the broadest possible definition and includes (by way of example, only, and not as an exclusive list) potentially relevant information electronically, magnetically, or optically stored (whether in final or draft form) as:

- Digital communications (e.g., e-mail, voice mail, text messages, instant messaging, messaging apps);
- Word-processed documents (e.g., Google Docs and Word documents);
- Email, Calendar and Diary Application Data (e.g., Outlook, Yahoo, blog tools);
- Spreadsheets and tables (e.g., Excel or Google Sheets);
- Social media communications (e.g., Facebook, Snapchat, Instagram, LinkedIn)
- Image and Facsimile Files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound Recordings (e.g., .wav and .mp3 files);
- Video and Animation (e.g., .avi, .mpg, .mpeg, .mp4, .flv, .mov files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and
- Back Up and Archival Files (e.g., Zip, .GHO).

Ruth Ann Daniels
Drew York
January 13, 2022
Page 4

## Suspension of Routine Destruction

You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity, or other criteria;
- Using data or media wiping, disposal, erasure, or encryption utilities or devices;
- Overwriting, erasing, destroying, or discarding back up media;
- Re-assigning, re-imaging, or disposing of systems, servers, devices, or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and
- Executing drive or file defragmentation or compression programs.

Adequate preservation of potentially relevant evidence requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of the Evidence. *Be advised that sources of ESI are altered and erased by continued use of your computers and other devices.* Booting a drive, examining its contents, or running any application will irretrievably alter the information it contains and may constitute unlawful spoliation of the Evidence.

## Guard Against Deletion

You should take affirmative steps to prevent anyone with access to your data, systems, and archives from seeking to modify, destroy, or hide ESI on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography, or the like). One way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bit stream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

Ruth Ann Daniels
Drew York
January 13, 2022
Page 5

## Preservation in Native Form

You should anticipate that certain Evidence, including but not limited to spreadsheets and databases, may be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve such Evidence in such native forms, and you should not select methods to preserve the Evidence that remove or degrade the ability to search it by electronic means or make it difficult or burdensome to access or use the information efficiently in a lawsuit. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make it not reasonably accessible and/or illegible.

## Metadata

You should further anticipate that the need to disclose and produce system and application metadata will arise, and you should immediately act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location, and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including: deleted content, draft language, commentary, collaboration and distribution data, and dates of creation and printing. All electronically stored documents will contain metadata. You should preserve all metadata associated with any Evidence or other preserved information.

## Servers

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved.

## Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you must preserve both forms.

## Agents, Attorneys and Third Parties

Your preservation obligation extends beyond Evidence in your care, possession, or custody and includes Evidence in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian, or contractor in possession of Evidence and instruct same to preserve such

Ruth Ann Daniels
Drew York
January 13, 2022
Page 6

Evidence to the full extent of their obligation to do so, and you must take reasonable steps to secure their compliance.

## **Failure to Comply – Sanctions**

Failure to preserve potentially relevant evidence resulting in the corruption, loss, or delay in production of evidence to which we are entitled would constitute spoliation of evidence and could subject you to severe court-imposed sanctions.

This preservation demand is continuing in nature and requires Mr. Daugherty's preservation of potentially relevant documents and materials that come into his possession, custody, or control after the date of this Hold Notice.

Please acknowledge receipt of this Hold Notice and promptly confirm that Mr. Daugherty will comply with this preservation demand. Please have your legal counsel contact me at the first opportunity so that we may discuss this matter.

Respectfully,

Michael K. Hurst

cc: Mary Goodrich Nix (*of the Firm*)
Nathaniel A. Plemons (*of the Firm*)
Julie Pettit Greeson (*Co-counsel*)

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>  Highland Capital Management, L.P. | BANKRUPTCY CASE NO.<br>  19-34054 (SGJ) | |
| DISTRICT IN WHICH CASE IS PENDING<br>  Northern District of Dallas | DIVISION OFFICE<br>  Dallas Division | NAME OF JUDGE<br>  Stacey G. Jernigan |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>    */s/ Jason S. Brookner* | | |
| DATE<br><br>  January 18, 2022 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>    Jason S. Brookner<br>    Gray Reed<br>    Attorney for Patrick Daugherty | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**Appx. 07855**