# EXHIBIT 86

Docket #2460  Date Filed: 06/18/2021



**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON
THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 17, 2021**

_____
**United States Bankruptcy Judge**
_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | |
| | § | Case No. 19-34054-sgj11 |
| Debtor. | § | |
| | § | |

## ORDER REQUIRING DISCLOSURES

### I.    Introduction.

This Order is issued by the court *sua sponte* pursuant to Section 105 of the Bankruptcy Code and the court's inherent ability to efficiently monitor its docket and evaluate the standing of parties who ask for relief in the above-referenced case. More specifically, the Order is directed at clarifying the party-in-interest status or standing of numerous parties who are regularly filing pleadings in the above-referenced 20-month-old Chapter 11 bankruptcy case. The court has determined that there is

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



1934054210618000000000001

**Appx. 07884**

a need to: (a) fully understand whether such parties (defined below) have statutory or constitutional standing with regard to recurring matters on which they frequently file lengthy and contentious pleadings and, if so, (b) ascertain whether their interests are sufficiently aligned such that the parties might be required to file joint pleadings hence forth, rather than each file pleadings that are similar in content. The court has commented many times that certain active parties (*i.e.,* Mr. James Dondero and numerous non-debtor entities that he controls—hereinafter the "Non-Debtor Dondero-Related Entities") seem to have tenuous standing. Mr. Dondero is, of course, the Debtor's co-founder, former President, Chief Executive Officer ("CEO"), and indirect beneficial equity owner.[2] Since standing is a subject matter jurisdiction concern, the court has determined that it is in the interests of judicial economy to gain some clarity with regard to the standing of the various Non-Debtor Dondero-Related Entities. It is also in the interests of judicial economy, the interests of other parties in this case, and in the interest of reducing administrative expenses of this estate that there be consolidation of pleadings, wherever possible, of the Non-Debtor Dondero-Related Entities.

---

[2] In addition to being the former CEO, Mr. Dondero represents that he is a "creditor, indirect equity security holder, and party in interest" in the Debtor's bankruptcy. This court has stated on various occasions that this assertion is ostensibly true, but somewhat tenuous. Mr. Dondero filed five proofs of claim in the Debtor's bankruptcy case. Two of those proofs of claim were withdrawn with prejudice on November 23, 2020 [DE # 1460]. The other three are unliquidated, contingent claims, each of which stated that Mr. Dondero would "update his claim in the next ninety days." Ninety days has long-since passed since those proofs of claim were filed and Mr. Dondero has not updated those claims to this court's knowledge. With regard to Mr. Dondero's assertion that he is an "indirect equity security holder," the details have been represented to the court many times to be as follows (undisputed): Mr. Dondero holds no direct equity interest in the Debtor. Mr. Dondero instead owns 100% of Strand Advisors, Inc. ("Strand"), the Debtor's general partner. Strand, however, holds only 0.25% of the total limited partnership interests in the Debtor through its ownership of Class A limited partnership interests. The Class A limited partnership interests are junior in priority of distribution to the Debtor's Class B and Class C limited partnership interests. The Class A interests are also junior to all other claims filed against the Debtor. Finally, Mr. Dondero's recovery on his indirect equity interest is junior to any claims against Strand itself. Consequently, before Mr. Dondero can recover on his indirect equity interest, the Debtor's estate must be solvent, priority distributions to Class B and Class C creditors must be satisfied, and all claims against Strand must be paid.

## II.  Background: The Chapter 11 Case.[3]

On October 16, 2019 (the "Petition Date"), Highland filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Highland is a registered investment advisor that is in the business of buying, selling, and managing assets on behalf of its managed investment vehicles. It manages billions of dollars of assets—to be clear, the assets are spread out in numerous, separate fund vehicles. While the Debtor has continued to operate and manage its business as a debtor-in-possession, the role of Mr. Dondero *vis-à-vis* the Debtor was significantly limited early in the bankruptcy case and ultimately terminated. The Debtor's current CEO is an individual selected by the creditors named James P. Seery.

Specifically, early in the case, the Official Unsecured Creditors Committee ("UCC") and the U.S. Trustee ("UST") desired to have a Chapter 11 Trustee appointed—absent some major change in corporate governance[4]—due to conflicts of interest and the alleged self-serving, improper acts of Mr. Dondero and possibly other officers (for example, allegedly engaging, for years, in fraudulent schemes to put Highland's assets out of the reach of creditors). Under this pressure, the Debtor negotiated a term sheet and settlement with the UCC (the "January 2020 Corporate Governance Settlement"), which was executed by Mr. Dondero and approved by a court order on January 9, 2020 (the "January 2020 Corporate Governance Order").[5] The settlement and term sheet contemplated a complete overhaul of the corporate governance structure of the Debtor. Mr. Dondero resigned from his role as an officer and director of the Debtor and of its general partner. Three new independent directors (the "Independent Board") were appointed to govern the Debtor's

---

[3] For a more detailed factual description of some of the disputed issues in this case, see the Memorandum of Opinion and Order Granting in Part Plaintiff's Motion to Hold James Dondero in Civil Contempt of Court for Alleged Violation of TRO, entered June 7, 2021, DE # 190, in AP # 20-3190.
[4] The UST was steadfast in wanting a Trustee.
[5] *See* DE ## 281 & 339.

3

general partner Strand Advisors, Inc.—which, in turn, managed the Debtor. All of the new Independent Board members were selected by the UCC and are very experienced within either the industry in which the Debtor operates, restructuring, or both (Retired Bankruptcy Judge Russell Nelms, John Dubel, and James P. Seery). As noted above, one of the Independent Board members, James P. Seery ("Mr. Seery"), was ultimately appointed as the Debtor's new CEO and CRO.[6] As for Mr. Dondero, while not originally contemplated as part of the January 2020 Corporate Governance Settlement, the Debtor proposed at the hearing on the January 2020 Corporate Governance Settlement that Mr. Dondero remain on as an unpaid employee of the Debtor and also continue to serve as and retain the title of a portfolio manager for certain separate **non-Debtor** investment vehicles/entities whose funds are managed by the Debtor. The court approved this arrangement when the UCC ultimately did not oppose it. Mr. Dondero's authority with the Debtor was subject to oversight by the Independent Board, and Mr. Seery was given authority to oversee the day-to-day management of the Debtor, including the purchase and sale of assets held by the Debtor and its subsidiaries, as well as the purchase and sale of assets that the Debtor manages for various separate non-Debtor investment vehicles/entities. Significant to the court and the UCC was a provision in the order, at paragraph 9, stating that "Mr. Dondero shall not cause any Related Entity to terminate any agreements with the Debtor."

To be sure, this was a complex arrangement. Apparently, there were well-meaning professionals in the case that thought that having the founder and "face" behind the Highland brand still involved with the business might be value-enhancing for the Debtor and its creditors (even though Mr. Dondero was perceived as not being the type of fiduciary needed to steer the ship through bankruptcy). For sake of clarity, it should be understood that there are at least hundreds of

---

[6] "CRO" means Chief Restructuring Officer. *See* DE # 854, entered July 16, 2020.

entities—the lawyers have sometimes said 2,000 entities—within the Highland byzantine organizational structure (sometimes referred to as the "Highland complex"), most of which are *not* subsidiaries of the Debtor, nor otherwise owned by Highland. And only Highland itself is in bankruptcy. However, these entities are very much intertwined with Highland—in that they have shared services agreements, sub-advisory agreements, payroll reimbursement agreements, or perhaps, in some cases, less formal arrangements with Highland. Through these agreements Highland (*through its own employees*) has historically provided resources such as fund managers, legal and accounting services, IT support, office space, and other overhead. Many of these non-Debtor entities appear to be under the *de facto* control of Mr. Dondero—as he is the president and portfolio manager for many or most of them—although Mr. Dondero and certain of these entities stress that these entities have board members with independent decision making power and are not the mere "puppets" of Mr. Dondero. This court has never been provided a complete organizational chart that shows ownership and affiliations of all 2,000 Non-Debtor Dondero-Related Entities, but the court has, on occasion, been shown information about some of them and is aware that a great many of them were formed in non-U.S. jurisdictions, such as the Cayman Islands.

Eventually, the Debtor's new Independent Board and management concluded that it was untenable for Mr. Dondero to continue to be employed by the Debtor in any capacity. Various events occurred that led to the termination of his employment with the Debtor. For one thing, Mr. Dondero prominently opposed certain actions taken by the Debtor through its CEO and Independent Board including: (a) objecting to a significant settlement that the Debtor had reached in court-ordered mediation[7] with creditors Acis Capital Management and Josh and Jennifer Terry (the "Acis

---

[7] The court appointed Retired Bankruptcy Judge Allan Gropper, S.D.N.Y., and Attorney Sylvia Mayer, Houston, Texas (both with the American Arbitration Association), to be co-mediators over multiple disputes in the Bankruptcy Case, including the Acis dispute. The co-mediators, among other things, attempted to mediate disputes/issues with Mr. Dondero.

Settlement")—which settlement helped pave the way toward a consensual Chapter 11 plan, and (b) pursuing, through one of his family trusts (the Dugaboy Investment Trust), a proof of claim alleging that the Debtor (including Mr. Seery) had mismanaged one of the Debtor's subsidiaries, Highland Multi Strategy Credit Fund, L.P. ("MSCF") with respect to the sale of certain of its assets during the bankruptcy case (in May of 2020).[8] The Debtor's Independent Board and management considered these two actions to create a conflict of interest— if Mr. Dondero was going to litigate significant issues against the Debtor in court, that was his right, but he could not continue to work for the Debtor (among other things, having access to its computers and office space) while litigating these issues with the Debtor in court.

But the termination of his employment was not the end of the friction between the Debtor and Mr. Dondero. In fact, literally a week after his termination, litigation posturing and disputes began erupting between Mr. Dondero and certain Non-Debtor Dondero-Related Entities, on the one hand, and the Debtor on the other.

At the present time, 11 adversary proceedings have been filed related to this bankruptcy case involving Non-Debtor Dondero-Related Entities. Additionally, Non-Debtor Dondero-Related entities have filed 11 appeals of bankruptcy court orders. Non-Debtor Dondero-Related entities have begun filing lawsuits relating to the bankruptcy case in other *fora* that are the subject of contempt motions.

### III. **The Non-Debtor Dondero-Related Entities**.

The following are the Non-Debtor Dondero-Related Entities encompassed by this Order and their known counsel[9]:

---

[8] *See, e.g.,* Proof of Claim No. 177 and DE # 1154.
[9] There are three other entities that the court is not including in this Order at this time, since, although they have appeared in the past, they are no longer active in the case because of either resolving issues with the Debtor or other reasons: (a) Highland CLO Funding Ltd. (previously represented by the law firm of King and Spaulding); (b) Hunter

6

A. *James D. Dondero*

Mr. Dondero has had three law firms representing him in the bankruptcy proceedings: Bonds Ellis Eppich Schafer Jones LLP; Stinson L.L.P.; and Crawford Wishnew Lang.

As earlier mentioned, Mr. Dondero has three pending proofs of claim that are unliquidated, contingent claims. Each of these claims state that Mr. Dondero would "update his claim in the next ninety days." Ninety days has long-since passed since those proofs of claim were filed and Mr. Dondero has not updated those claims to this court's knowledge. While this court is unclear what the alleged amount of Mr. Dondero's three unliquidated, contingent proofs of claim might be, the court takes judicial notice that the Debtor has filed an adversary proceeding (Adv. Proc. # 21-3003) alleging that Mr. Dondero is liable to three bankruptcy estate on three demand notes, on which the total amount due and owing is $9,004,013.07. Mr. Dondero has also been sued along with CLO Holdco, Grant Scott, Charitable DAF Holdco, Charitable DAF Fund, Highland Dallas Foundation, and the Get Good Trust for alleged fraudulent transfers in Adv. Proc. # 20-3195.

As far as equity interests in the Debtor, the Debtor is a Delaware limited partnership. The general partner is named Strand Advisors, Inc. ("Strand"). Mr. Dondero owns 100% of Strand Advisors, Inc. ("Strand"), the Debtor's general partner, but gave up control of Strand pursuant to a court-approved corporate governance agreement reached in this case in January 2020, to which Mr. Dondero agreed. As of the Petition Date, the Debtor's limited partnership interests were held: (a) 99.5% by an entity called Hunter Mountain Investment Trust; (b) 0.1866% by The Dugaboy Investment Trust (Mr. Dondero's family trust—described below), (c) 0.0627% by the retired co-founder of the Debtor, Mark Okada, personally and through family trusts, and (d) 0.25% by Strand. These limited partnership interests were in three classes (Class A, Class B, and Class C). The

---

Mountain Trust (previously represented by Sullivan Hazeltine Allinson and Rochelle McCullough); and (c) NexBank (previously represented by Alston & Bird).

Appx. 07890

Class A interests were held by The Dugaboy Investment Trust, Mark Okada, and Strand. The Class B and C interests were held by Hunter Mountain Investment Trust and Hunter Mountain. The significance of this is that the Class A limited partnership interests are junior in priority of distribution to the Debtor's Class B and Class C limited partnership interests. The Class A interests are also junior to all other claims filed against the Debtor. And, of course, Mr. Dondero's recovery on his equity interest in Strand is junior to any claims against Strand itself. Consequently, before Mr. Dondero can recover on his indirect equity interest, the Debtor's estate must be solvent, priority distributions to Class B and Class C creditors must be satisfied, and all claims against Strand must be paid.

### B. *The Dugaboy Investment Trust ("Dugaboy") and Get Good Nonexempt Trust ("Get Good")*

The Dugaboy and Get Good Trusts are represented by the law firm Heller Draper & Horn.

Mr. Dondero is the beneficiary of Dugaboy and the settlor of Get Good (and family members are the beneficiaries). It has been represented in pleadings that Get Good is a trust established under the laws of the State of Texas. It has been represented in pleadings that Dugaboy is a trust established under the laws of the State of Delaware. At least as of the Petition Date, an individual named Grant Scott (a long-time friend of Mr. Dondero's, who is a patent lawyer and resides in Colorado) is the trustee of both. Mr. Dondero's sister may also be a trustee of Dugaboy.

As mentioned above, Dugaboy owns a 0.1866% of the Class A junior limited partnership interest in the Debtor.

Get Good has filed a proof of claim in this Bankruptcy Proceeding (submitted by Grant Scott). Dugaboy has filed several proofs of claim in this Bankruptcy Proceeding (all were submitted by Grant Scott). The court is not aware of the nature or amount of these claims, except the court has been apprised that: (a) one Dugaboy proof of claim alleges that Highland is obligated on a debt

owed to Dugaboy by an entity known as Highland Select, allegedly because Highland is Highland Select's general partner and might also be its alter ego; and (b) another proof of claim asserts postpetition mismanagement by the Debtor of assets of one or more Debtor subsidiaries. While the court knows nothing about the Get Good proof of claim, it does know that the Get Good Trust (along with others, including Grant Scott) has been sued for alleged fraudulent transfers in an adversary proceeding in this case (Adv. Proc. # 20-3195)—which may affect the allowability of its proof of claim.

C. *Highland Capital Management Fund Advisors, L.P. ("HCMFA") and NexPoint Advisors, L.P. ("NPA") (sometimes collectively referred to as the "Advisors")*

These entities have been represented by the K&L Gates law firm at times and currently are represented by the law firm of Munsch Hardt Kopf & Harr. The entities are registered investment advisors that previously had shared services agreements with the Debtor.

It has been represented that Mr. Dondero directly or indirectly owns and/or effectively controls each of the Advisors. He is the President of each of them.

It is the court's understanding that both of these entities withdrew their original proofs of claim. However, the Advisors filed an application for an administrative expense claim on January 24, 2021, relating to services the Advisors allege the Debtor did not perform under a shared services agreement. The Debtor has since filed an objection to the claim and the matter is set for trial on September 28, 2021. Further, the Debtor has filed an adversary proceeding (Adv. Pro. # 21-3004) alleging that HCMFA owes the Debtor an aggregate of $7,687,653.07 pursuant to two promissory notes and the Debtor has filed an adversary proceeding (Adv. Pro. # 21-3005) alleging that NPA owes the Debtor $23,071,195.03 pursuant to a promissory note.

> D. *Highland Funds I and its series Highland Healthcare Opportunities Fund, Highland/iBoxx Senior Loan ETF, Highland Opportunistic Credit Fund, and Highland Merger Arbitrage Fund, Highland Funds II and its series Highland Small-Cap Equity Fund, Highland Socially Responsible Equity Fund, Highland Fixed Income Fund, and Highland Total Return Fund, NexPoint Capital, Inc., NexPoint Strategic Opportunities Fund, Highland Income Fund, Highland Global Allocation Fund, and NexPoint Real Estate Strategies Fund*

These entities are represented by the K&L Gates law firm. They are apparently each managed by the Advisors and these funds are specifically managed by Mr. Dondero as portfolio manager.

The court has no idea who owns these companies (assuming they should be regarded as separate companies). The court does not know which, if any of them, have filed proofs of claims.

> E. *Charitable DAF Holdco, Ltd. ("DAF Holdco"), Charitable DAF Fund, LP ("DAF"), Highland Dallas Foundation, Inc., ("Highland Dallas Foundation")*

These entities are represented by the law firms of Kelly Hart Pitre and Sbaiti & Company PLCC.

It has been represented to the court that the DAF is managed by DAF Holdco, which is the managing member of the DAF. It has further been represented to the court that DAF Holdco is owned by three different purported charitable foundations: Highland Dallas Foundation, Inc., Highland Santa Barbara Foundation, Inc., and Highland Kansas City Foundation, Inc. (collectively, the "Highland Foundations"). DAF Holdco is an exempted company incorporated in the Cayman Islands. Grant Scott has apparently, until recently, served as its managing member. The DAF is an exempted company incorporated in the Cayman Islands. Highland Dallas Foundation is a Delaware nonprofit, nonstock corporation.

Mr. Dondero is the president and one of the three directors of each of the Highland Foundations. Apparently, Grant Scott was recently replaced by a former Highland employee named Mark Patrick (who is now an employee of Skyview Group, an entity created by former Highland employees). Although the Debtor is the non-discretionary investment advisor to the

DAF, the Debtor does not have the right or ability to control or direct the DAF or CLO Holdco. Instead, the DAF takes and considers investment and payment advice from the Debtor, but ultimate decisions are in the control of Mr. Patrick, presumably at Mr. Dondero's direction.

The court is not aware whether these entities have filed proofs of claim. However, they, along with Messrs. Dondero and Scott, CLO Holdco and the Get Good have been sued for fraudulent transfers in Adv. Proc. # 20-3195.

F. *CLO Holdco, Ltd.*

This entity was previously represented by the law firm of Kane Russell Coleman & Logan and more recently is represented by the law firm of Sbaiti & Company PLLC.

CLO Holdco is a wholly owned and controlled subsidiary of the DAF. CLO Holdco is an exempted company incorporated in the Cayman Islands. CLO Holdco has filed two proofs of claim in this Bankruptcy Proceeding. Both proofs of claim were submitted by Grant Scott in his capacity as Director of CLO Holdco.

CLO Holdco, along with Messrs. Dondero and Scott, DAF Holdco, DAF Fund, Highland Dallas Foundation, and the Get Good have been sued for fraudulent transfers in Adv. Proc. # 20-3195.

G. *NexPoint Real Estate Finance Inc., NexPoint Real Estate Capital, LLC, NexPoint Residential Trust, Inc., NexPoint Hospitality Trust, NexPoint Real Estate Partners, LLC, NexPoint Multifamily Capital Trust, Inc., VineBrook Homes, Trust, Inc., NexPoint Real Estate Advisors, L.P., NexPoint Real Estate Advisors II, L.P., NexPoint Real Estate Advisors III, L.P., NexPoint Real Estate Advisors IV, L.P., NexPoint Real Estate Advisors V, L.P., NexPoint Real Estate Advisors VI, L.P., NexPoint Real Estate Advisors VII, L.P., NexPoint Real Estate Advisors VIII, L.P., and any funds advised by any of the foregoing and any of their subsidiaries (sometimes collectively referred to as "NPRE")*

These entities are represented by the law firm of Wick Phillips Gould & Martin, LLP.

The entity known as HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) is alleged to owe the Debtor over $11 million pursuant to five promissory notes (as asserted in Adv.

Pro. # 21-3007). The court understands this same entity has filed a proof of claim relating to its alleged interest in "SE Multifamily Holdings, LLC," which has been objected to and has not been resolved.

The court has no idea who owns or manages these companies or what exact function they play in the Highland complex of companies. The court does not know anything about the substance of the proof of claims.

### H. Highland Capital Management Services, Inc.

This entity appears to be represented by both Wick Phillips Gould & Martin, LLP (which also represents NPRE) and Stinson L.L.P. (which also sometimes represents Mr. Dondero personally).

This entity earlier filed two proofs of claim that were objected to and disallowed. Also, this entity is alleged to owe the Debtor approximately $7.7 million pursuant to five different promissory notes (as asserted in Adv. Pro. # 21-3006). The court has no idea who owns or manages this company or what exact function it plays in the Highland complex of companies.

### IV. Disclosure Requirement

Accordingly, in furtherance of this court's desire to be more clear about the standing of various of these entities, and to assess whether their interests may be sufficiently aligned, in some circumstances, so as to require joint pleadings (rather than have a proliferation of similar pleadings) it is hereby **ORDERED** that:

Within 21 days of the entry of this Order, the Non-Debtor Dondero-Related Entities named in this Order shall file a Notice in this case disclosing thereon: (a) who owns the entity (showing percentages);[10] (b) whether Mr. Dondero or his family trusts have either a direct or indirect

---

[10] With regard to any minor children who may be beneficiaries of trusts, actual names should not be used (Child 1, Child 2, *etc.* would be sufficient).

12

ownership interest in the entity and, if so, what percentage of ultimate ownership; (c) who are the officers, directors, managers and/or trustees of the Non-Debtor Dondero-Related Entity; and (d) whether the entity is a creditor of the Debtor (explaining in reasonable detail the amount and substance of its claims).

### End of Order ###