

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 17, 2022**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

### Order Denying Motion to Ratify Second Amended Proof of Claim and Expunging Claim

The Court states the procedural history of the Motion to Ratify Second Amended Proof of Claim (Dkt. No. 3178) (the "Motion") as follows:

WHEREAS, on April 8, 2020, CLO Holdco filed Proof of Claim No. 133, in the amount of $11,340,751.26, against the estate of Highland Capital Management, L.P. ("Highland" or the "Debtor," as applicable).

WHEREAS, on September 23, 2020, the Debtor filed a motion to approve a proposed compromise of its controversy with the Redeemer Committee (the "Redeemer Settlement Motion") (Dkt. No. 1089).

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are (8357). The Reorganized Debtor is a Delaware limited partnership. The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.

WHEREAS, on October 20, 2020, the Court held a hearing on Redeemer Settlement Motion, and granted the Redeemer Settlement Motion based on reasoning given orally (Dkt. No. 1258).

WHEREAS, on October 21, 2020, CLO Holdco filed Proof of Claim 198, amending Proof of Claim 133 to assert an amount of $0.

WHEREAS, the Court entered an order approving the Redeemer Settlement Motion on October 23, 2020 (Dkt. No. 1273).

WHEREAS, the Debtor filed its Fifth Amended Plan of Reorganization (the "Plan") on November 24, 2020 (Dkt. No. 1472). The Court entered an Order approving the Plan, as modified, on February 22, 2021 (Dkt. No. 1943). The Plan became effective on August 11, 2021 (the "Effective Date") (Dkt. No. 2700).

WHEREAS, the Debtor filed its Omnibus Objection to certain amended, superseded, and zero-dollar claims on November 9, 2021 (Dkt. No. 3001).

WHEREAS, CLO Holdco filed Proof of Claim 254 on January 11, 2022, purporting to further amend Proof of Claim 198 to re-assert a positive claim value, in an amount between $3,788,932 and $5,791,485.

WHEREAS, CLO Holdco filed the Motion on January 12, 2022 (Dkt. No. 3178).

WHEREAS, Marc Kirschner, as the Litigation Trustee for the Highland Litigation Sub-Trust (the "Trustee") created by the Plan, filed its opposition on February 1, 2022 (Dkt. No. 3220).

WHEREAS, CLO Holdco filed its reply on February 8, 2022 (Dkt. 3223).

WHEREAS, a hearing was held on the Motion on August 4, 2022 (Dkt. No. 3431).

WHEREAS, for the reasons given orally by the Court following argument of the parties on August 4, 2022, the Court denied the Motion and granted the Trustee's request to expunge Proof of Claim 198, and ordered the parties to submit a proposed order consistent with the Court's oral ruling set forth in the transcript of the August 4, 2022 hearing, attached hereto, made a part hereof and incorporated herein as Exhibit A.

Therefore, it is **ORDERED** that:

1)      The August 4, 2022, transcript of the Court's recitation of its bases for this Order, attached hereto as Exhibit A, is incorporated into this Order as if stated in full herein;

2)      CLO Holdco's Motion to Ratify its Second Amended Proof of Claim is **DENIED**;

3)      The Trustee's objection to Claim No. 198, which is CLO Holdco's only pending proof of claim and is in the amount of zero dollars, is **SUSTAINED**, and the Trustee's request that Claim No. 198 be disallowed and expunged is hereby **GRANTED**;

4)      To the extent applicable, the official claims register in the Debtor's bankruptcy case will be modified in accordance with this Order; and,

5)      The Court shall retain exclusive jurisdiction to hear and determine all matters arising from the implementation of this Order.

****END OF ORDER****

Dated: August 16, 2022
       Dallas, Texas
       Baton Rouge, Louisiana

*Proposed Order Agreed as to Form By*,

**SIDLEY AUSTIN LLP**

 */s/ Paige Holden Montgomery*

Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

-and-

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Susheel Kirpalani (admitted *pro hac vice*)
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
Benjamin I. Finestone (admitted *pro hac vice*)
Calli Ray (admitted *pro hac vice*)
Alexander J. Tschumi (admitted *pro hac vice*)
51 Madison Avenue
Floor 22
New York, NY 10010
Telephone: (212) 849-7000

*Counsel for the Litigation Trustee*

**KELLY HART PITRE**

 */s/ Louis M. Phillips*

Louis M. Phillips
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

4

-and-

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

*Counsel for CLO HoldCo, Ltd.*

## Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| In Re: | ) | **Case No. 19-34054-sgj-11** |
|  | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL | ) | Dallas, Texas |
| MANAGEMENT, L.P., | ) | August 4, 2022 |
|  | ) | 2:30 p.m. Docket |
| Reorganized Debtor. | ) |  |
|  | ) | LITIGATION TRUSTEE'S OMNIBUS |
|  | ) | OBJECTION TO CERTAIN AMENDED |
|  | ) | AND SUPERSEDED CLAIMS AND |
|  | ) | ZERO DOLLAR CLAIMS [3001] |
|  | ) |  |
|  | ) | MOTION TO RATIFY SECOND |
|  | ) | AMENDED PROOF OF CLAIM NO. 198 |
|  | ) | BY CLO HOLDCO, LTD. [3178] |
|  | ) |  |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

| | |
|---|---|
| For the Litigation Trustee: | Robert S. Loigman<br>Deborah J. Newman<br>Aaron Lawrence<br>QUINN EMANUEL URQUHART &<br>  SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000 |
| For CLO Holdco, Ltd., et al.: | Louis M. Phillips<br>Amelia L. Hurt<br>KELLY HART & PITRE<br>301 Main Street, Suite 1600<br>Baton Rouge, LA 70801<br>(225) 381-9643 |
| Recorded by: | Caitlynne Smith<br>UNITED STATES BANKRUPTCY COURT<br>1100 Commerce Street, 12th Floor<br>Dallas, TX 75242<br>(214) 753-2088 |

2

1   Transcribed by:              Kathy Rehling
                                 311 Paradise Cove
2                                Shady Shores, TX   76208
                                 (972) 786-3063
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25          Proceedings recorded by electronic sound recording;
              transcript produced by transcription service.

| | |
|---|---|
| 1 | DALLAS, TEXAS - AUGUST 4, 2022 - 2:37 P.M. |
| 2 | THE COURT:  Good afternoon.  We have a Highland |
| 3 | setting.  It's been continued a couple of times.  This is, of |
| 4 | course, Case No. 19-34054.  We have what's left of the |
| 5 | Litigation Trustee's omnibus objection to certain amended |
| 6 | claims, zero dollar amount claims, and then CLO Holdco's |
| 7 | motion to ratify its second amended proof of claim. |
| 8 | Let's talk about how we're going to go forward in a |
| 9 | minute, but I'll get appearances, of course.  Mr. Phillips, |
| 10 | you're there for CLO Holdco? |
| 11 | MR. PHILLIPS:  Your Honor, thank you very much. |
| 12 | Louis M. Phillips on behalf of CLO Holdco.  I have with me |
| 13 | Amelia Hurt as well.  She is on the system.  And Mr. Mark |
| 14 | Patrick, who is the representative of CLO Holdco is here as |
| 15 | well.  Thank you. |
| 16 | THE COURT:  Thank you.  All right.  Now for the |
| 17 | Litigation Trustee, Ms. Newman, are you going to be the one |
| 18 | presenting that, or who will be presenting that? |
| 19 | MR. LOIGMAN:  So, Judge Jernigan, this is Robert |
| 20 | Loigman, also of the Quinn Emanuel firm, and I'll be |
| 21 | presenting on behalf of the Litigation Trustee today. |
| 22 | THE COURT:  Okay.  Can -- |
| 23 | MR. LOIGMAN:  My partner, Debbie Newman, -- |
| 24 | THE COURT:  I'm sorry. |
| 25 | MR. LOIGMAN:  Sure.  I'm sorry. |

1          THE COURT:  We've got a different court reporter than

2  normal.  I want to make sure she's got your name on the

3  record.  Could you repeat it again, sir?

4          MR. LOIGMAN:  Sure.  Not a problem.  It's Robert

5  Loigman.  I'm happy to spell the last name, if that's helpful.

6          THE COURT:  Okay.  Please do.

7          MR. LOIGMAN:  It's -- sure.  It's L-O-I-G-M-A-N.

8          THE COURT:  Okay.

9          MR. LOIGMAN:  And --

10          THE COURT:  Thank you, Mr. Loigman.

11          MR. LOIGMAN:  Sure.  And I'm also with the firm Quinn

12  Emanuel.  Ms. Newman is on the line also, as is my colleague

13  Aaron Lawrence, who will be assisting today.

14          THE COURT:  Okay.  Thank you.

15      I think you're the only two parties in interest in this

16  contested matter, but are there any other lawyer appearances

17  that I'm missing?

18      (No response.)

19          THE COURT:  Okay.  Just interested observers, I

20  guess.

21      All right.  Well, let's talk about how this is going

22  forward.  I'm guessing everyone thinks it makes sense to hear

23  CLO Holdco's motion to ratify second amended proof of claim,

24  because that could moot or not moot the Litigation Trustee's

25  motion.  Am I thinking about this the correct way, or no?

1          MR. PHILLIPS:  Your Honor, let me -- let me take a

2    shot, and Mr. Loigman can pummel me if I'm not correct.  But

3    we have agreed -- our motion for ratification is in essence to

4    ratify the amendment as a pending amended proof of claim.  We

5    have agreed, as I think we kind of have to, that the question

6    of allowance is not before the Court, but rather, simply:  Is

7    our amended proof of claim viable?

8        And there's a reason -- well, we've agreed, and I say we

9    kind of had to agree, that allowance would be for another day

10   if our amendment is viable, and that's because CLO Holdco is a

11   defendant in the Trustee's -- if I can call Mr. Kirschner,

12   just as opposed to the Sub-Litigation Trust, just the Trustee

13   -- the Trustee's adversary proceeding, which seeks against CLO

14   Holdco an avoidance of certain transfers.  So that, under 502,

15   Section 502(d) of the Code, we would not be able to have any

16   kind of allowance hearing on our proof of claim until after

17   that avoidance matter, the avoidance component of the lawsuit

18   is finalized.

19       And, frankly, we're not hiding from this:  If we lose, and

20   we lose finally and don't pay the avoidable transfer, if we

21   lose and there's an avoidable transfer for which we owe money

22   and we don't pay it back, we can't have an allowed claim.  If

23   we win, we can have an allowed claim.  If we lose and pay it

24   back, we can have an allowed claim.

25       But the point is that the parties have agreed and I think

1   the law requires -- or it wouldn't require, but it would be

2   kind of a waste of time -- for us to deal with allowance down

3   the road as necessary.

4       And so this was on the docket.  We filed our motion -- we

5   filed our amended proof of claim, and then we filed our

6   ratification motion after we filed our amended proof of claim

7   in response to the objection filed that sought an objection to

8   expunge zero amount proofs of claim.  And we filed that about

9   a month before the February 2022 hearing scheduled on that

10  zero amount.

11      We've continued this some time.  We have not been able to

12  present a settlement offer.  We've -- you know, so we're here

13  today.

14      There are two ways to go.  One is to conduct a hearing

15  today on our motion to ratify, which simply asks for the Court

16  to ratify the existence of our amended proof of claim, subject

17  to any and all rights of objection, because we recognize that

18  the Litigation Trust or the Reorganized Debtor, I'm not sure,

19  I guess the Litigation Trust briefed the objection.  They have

20  it in their lawsuit against us as well.  They would have --

21  the only objection pending as an objection, as a contested

22  matter objection, is to a zero claim.  But they've filed an

23  objection to this amended proof of claim in the lawsuit, so

24  it's pending there.  We would have to respond.  In our answer,

25  we filed motions to dismiss and for more definite statement

1   there.

2       But that's, that's what we're here today for, not an

3   allowance proceeding but rather:  Is our amendment viable for

4   purposes of having an amended proof of claim on file that's

5   subject to any objection the Litigation Trust wants to bring,

6   and, as well, subject to Section 502(d), given that we are

7   defendants in an avoidance action?

8           THE COURT:  Okay.  Well, --

9           MR. LOIGMAN:  And --

10          THE COURT:  Go ahead, Counsel.

11          MR. LOIGMAN:  Sure.  Thank you, Your Honor.  I will

12  not seek to pummel Mr. Phillips, to use his words, but I'll

13  try to comment on that in just a shorter form.

14      There was the Litigation's motion -- Litigation Trustee's

15  motion to expunge and disallow claims.  All of the claims that

16  are subject to that motion have already been resolved, with

17  the exception of this one claim by CLO Holdco.

18      At the time the motion was brought, that was a claim for

19  zero dollars.  Then CLO Holdco has subsequently filed this

20  second amended claim.  It had then filed what it termed a

21  motion to ratify the second amended complaint.  From the

22  Litigation Trustee's perspective, it's really a motion to

23  amend its claim.

24      And that's what we are here today and by agreement with

25  counsel for CLO Holdco to address with the Court, is whether

1  that amendment or that ratification, as they term it, is

2  permissible.

3      If it's not, that really resolves the matter.  It's a zero

4  dollar proof of claim.  It can be expunged, I think, as a

5  matter of course.

6      And otherwise, if for any reason it's permitted to go

7  forward -- which, for the reasons we've explained, we don't

8  believe it should be -- but if it is, it can then be dealt

9  with in the due course of the Litigation Trustee's action,

10  which also addresses that claim.

11          THE COURT:  Okay.  Mr. Phillips, --

12          MR. PHILLIPS:  Yes, ma'am.  Yes, Judge.

13          THE COURT:  -- do you view -- do you agree with

14  Counsel's comment that he really views this as a motion to

15  allow an amended proof of claim?  I mean, I don't know what a

16  motion to ratify necessarily means, a motion to say our

17  amendment is viable.  But I guess my brain kind of understands

18  words like, you know, motion to allow amendment of proof of

19  claim.

20      I mean, does it matter to you what we call this?  Do you

21  agree it's one and the same?

22          MR. PHILLIPS:  I don't.  And here's the reason,

23  Judge.  The Litigation Trustee -- the case law that we have

24  cited to Your Honor deals with -- and even post-confirmation

25  -- deals with parties who simply file an amended proof of

1  claim.  There is no requirement for a motion for leave to file

2  a proof of claim.  In what -- what we have seen in certain of

3  the situations -- *Kolstad*, for example, the IRS filed an

4  amended proof of claim, and there was a pending objection, and

5  the IRS filed a responsive motion to allow its proof of claim

6  in the face of the objection.

7      As of the time we filed our proof of claim, there was no

8  ability to get an -- and when I say our proof of claim, it's

9  the second amended proof of claim -- there was no ability to

10  obtain an order of allowance because (a) the objection only

11  said it was a zero claim, but even more importantly, (b) there

12  were pending -- there's pending -- there was pending

13  litigation which precluded us from having an allowed claim,

14  given 502(d), which says that if we are in essence defendants

15  in an avoidance action and we received an avoidable transfer,

16  we can't have an allowed claim until we pay back that

17  avoidable transfer.

18      So, unlike *Kolstad*, and unlike the other cases that we've

19  cited, none of which require any type of motion for leave, we

20  were not in a position to follow up with a motion to allow.

21      What we did -- we could have, and given what is now being

22  proposed by the Litigation Trustee, maybe we should have, we

23  were trying to bring the notion before the Court that our

24  claim is not a zero claim.  We have amended it.  But we

25  recognize that the only objection pending is for expungement

1    of a zero claim.

2         That's got to change, and the only reason it would change

3    is because of our amendment which now recites a claim that

4    we'll have to liquidate if we get down the road to where we

5    have an allowance, which will be part of the litigation if we

6    go forward here.

7         So, out of an abundance of caution, after we filed our

8    proof of claim we filed a motion to simply ratify the

9    amendment so that the Trustee would have before it (a) a

10   response to its objection, because our motion is also a

11   response to its -- the objection that was then pending, and

12   (b) a position for the Court and a notice to the Court and to

13   the other side that we've amended our proof of claim.

14        I think, according to the case law, we could have simply

15   amended the proof of claim and filed a response saying, you

16   don't have an objection because we've amended our proof of

17   claim.  We went the extra mile, filed a motion after we filed

18   our amendment, simply to ratify the amendment.

19        That -- maybe that's premature.  Maybe it should be held

20   in connection with the allowance process in connection with

21   the amended proof of claim and the litigation in the adversary

22   proceeding.  But, you know, we did what we did.  But we didn't

23   ask the Court for permission to amend because there's no

24   requirement that the Court be asked for permission to amend.

25   Rule 15 doesn't apply.  They want it to apply, but it doesn't

1    apply under Rule 9014.  And under 9014(c), the Court would

2    have to give notice and provide an opportunity to comply with

3    those procedures.

4            THE COURT:  Okay.

5            MR. PHILLIPS:  We were trying -- we were trying to

6    bring this to a head.

7            THE COURT:  I feel like maybe we're going into your

8    opening statement now, but -- and that's fine if that's what

9    you want to do.  But I just wanted to be clear what kind of

10   relief you're seeking today and make sure everyone was on the

11   same page.  And it sounds like everyone is on the same page.

12   We're looking at, you know, does this amended proof of claim,

13   second amended proof of claim, whether you say have viability,

14   should it be, you know, allowed, the amendment allowed?  The

15   Court --

16           MR. PHILLIPS:  Not allowed.  Should it --

17           THE COURT:  The amendments, not -- not the --

18           MR. PHILLIPS:  Should it be allowed to stand as an

19   amended proof of claim.

20           THE COURT:  Not the merits of it.  Should it --

21           MR. PHILLIPS:  Yes.

22           THE COURT:  Okay.

23           MR. LOIGMAN:  So, Your Honor, Robert Loigman again

24   for the Trustee.

25       I'll just say, and I think the Court summarized it right:

1  The question as we see it really is should this amendment,

2  which was just filed and then they sought ratification, should

3  it be permitted in the first place?  Is this a permissible

4  amendment?

5      And I think that's the key question before the Court

6  today.  If it's not a permitted amendment, we're back to the

7  zero dollar proof of claim that existed before.

8              THE COURT:  Okay.  All right.  Well, --

9              MR. PHILLIPS:  And I think that's -- I think that's

10 right.  I think that's right, Your Honor.  What we've agreed

11 to in essence is a bifurcated analysis of the amended proof of

12 claim, because we can't go to allowance.  Let's see.  We filed

13 an amended proof of claim.  We think it complies with *Kolstad*,

14 but what I think we've agreed to here is basically a

15 bifurcation of issues.  Is the amendment appropriate?  And if

16 it's appropriate under *Kolstad*, then can -- will we -- then we

17 will be in a position to have an amended proof of claim on

18 file, and (b) litigation involving that amended claim that's

19 already on file as well.

20             THE COURT:  Okay.  All right.  Well, are there any

21 housekeeping matters before I hear the argument and evidence?

22             MR. LOIGMAN:  Your Honor, just one point I wanted to

23 note, that I failed to note before that the Litigation

24 Trustee, Mr. Marc Kirschner, is also on the line today.

25             THE COURT:  Okay.  Good.  Thank you.

1       All right.  Mr. Phillips?

2           OPENING STATEMENT ON BEHALF OF CLO HOLDCO, LTD.

3           MR. PHILLIPS:  Okay.  Thank you, Your Honor, very

4   much.

5       Your Honor, we have submitted a witness and exhibit list.

6   Our exhibit list is basically pleadings and information that's

7   already been put before the Court.  We have Exhibits 1 through

8   11.  And before we go forward, we would like to introduce

9   those.

10      They are the three proofs of claim.  It's the service

11  agreement, the advisory agreement, registration of members of

12  CLO Holdco, the termination of the service agreement, the

13  termination of the advisory agreement, notice of occurrence of

14  the effective date, the declaration of John A. Morris with

15  respect to the Redeemer Committee's-Debtor settlement, and

16  then the motion for settlement.  And that's -- those are our

17  -- those are our exhibits.

18      We have agreed with counsel that some of the exhibits to

19  Mr. Morris's declaration were originally filed under seal.

20  That's Exhibits 2 through 4 of that declaration.  And with the

21  agreement of counsel, we attached the Exhibits 2 through 4,

22  and we agreed (a) they were not confidential, and (b) they

23  were true copies of what were attached to Mr. Morris's

24  deposition.  I mean, declaration.  We had not seen them

25  because they were filed under seal, but we had what we thought

1  were the documents, and we've substituted those, and our

2  witness and exhibit list reflects agreement of counsel that

3  those substituted documents previously filed under seal are in

4  fact copies of what was filed under seal.

5          THE COURT:  All right.  So, Counsel, do you confirm

6  Exhibits 1 through 11 may be admitted?

7          MR. LOIGMAN:  Yes, Your Honor.  For purposes of

8  today's argument, we have no objection.

9          THE COURT:  Okay.  So those will be admitted.

10         MR. PHILLIPS:  Thank you, Counsel.

11     (CLO Holdco, Ltd.'s Exhibits 1 through 11 are received

12  into evidence.)

13         MR. PHILLIPS:  All right.  Your Honor, we think, as I

14  said, we -- we felt like we went the extra mile by filing the

15  motion to ratify the amendment.  We know we can't proceed to

16  allowance because of the pendency of an avoidance action and

17  Section 502 of the Bankruptcy Code.  But our Amended Proof of

18  Claim 254 meets the *Kolstad* standard for proper amendment.  It

19  only asserts a new theory of recovery on the basis of exactly

20  the same documents and transaction basis that were made the

21  subject of the first two proofs of claim, 133 and 198.

22     The opposition incorrectly labels our motion as a motion

23  for leave or a motion to amend.  Our proof of claim was

24  amended.  We look at this more akin to the motion filed by the

25  Internal Revenue Service in *Kolstad*, which is -- was a motion

1  to allow in response to objection.  There's no way we could

2  file a motion to allow, given that when we filed our amended

3  proof of claim we couldn't have -- get an allowed claim

4  because of the pendency of the avoidance action, and therefore

5  that would have been a total waste of time.

6      We could have just filed our -- a proof of claim and

7  responded and said, your objection is moot.  What we did was

8  we filed our proof of claim and then we filed our

9  ratification, seeking to have the Court ratify the proof of

10  claim.

11      Now, I'll tell the Court, if the Court doesn't want to do

12  this but wants to leave the issue until we have basis for an

13  allowance proceeding, we can't oppose that.

14          THE COURT:  Let me -- let me --

15          MR. PHILLIPS:  And the allowance proceeding --

16          THE COURT:  Let me interrupt you right now.  The

17  adversary proceeding, I can't remember the current posture,

18  but the Liquidating Trustee's adversary proceeding against CLO

19  Holdco and I think one other defendant, what is the posture of

20  it?

21          MR. PHILLIPS:  No.  No.  No.  Let me -- let me refer

22  -- let me -- let me clear that up, Judge.  There was a first

23  adversary proceeding against CLO Holdco and a few other people

24  on account of a trans -- an avoidable transfer action, where

25  there was -- they sought to recover $24 million.  That was

1    stayed twice, although in the second order staying it you

2    allowed us to seek recovery of funds held in the registry of

3    the Court.  And after you granted us that relief, we obtained

4    a stipulation from the other side that allowed us to take the

5    money.  And then we had to figure out how to get it out of the

6    registry of the Court, which was slightly more complicated

7    than defeating inflation.  But we did.

8         And so that adversary was stayed.  And then in October

9    there was let's call it the big adversary that was filed that

10   incorporated the allegations within, with some change, but

11   basically incorporated the allegations in the first lawsuit.

12   And upon filing the second lawsuit, the Litigation Trustee,

13   who had been substituted in, dismissed -- after filing the

14   second lawsuit, the first lawsuit was dismissed.  So there's

15   one lawsuit pending now against a lot of defendants.

16              THE COURT:  Okay.

17              MR. PHILLIPS:  CLO Holdco is one.

18              THE COURT:  Okay.

19              MR. PHILLIPS:  And it includes the avoidance action

20   that was the primary and really only subject of the first

21   lawsuit.

22              THE COURT:  Okay.

23              MR. PHILLIPS:  So the second lawsuit includes the

24   first lawsuit, which -- which includes, as one of the two

25   counts against CLO Holdco, an avoidance action under 544, 548.

1    And so for that reason -- and in that -- that avoidance action

2    has come before Your Honor as follows.  Everybody, all the

3    defendants filed responsive pleadings by the scheduling order

4    response date, but I don't know how it happened, but that

5    response date, as I recall, was prior to the date that the

6    Plaintiff Trustee could amend rights by agreement and by

7    virtue of the scheduling order.

8         So after everybody filed their motions to dismiss and

9    motions to withdraw reference, the Plaintiff amended the

10   complaint and we then had to file a second group of responsive

11   pleadings, including second motions to withdraw reference.

12   And Your Honor has recommended to the District Court that the

13   reference be withdrawn over the entirety of the lawsuit, with

14   Your Honor to maintain the pretrial matters pending everybody

15   getting ready for trial.

16             THE COURT:  Okay.

17             MR. PHILLIPS:  In that lawsuit, --

18             THE COURT:  That's really more than I needed to --

19             MR. PHILLIPS:  In that lawsuit, as amended, --

20             THE COURT:  That's really more than I probably needed

21   to know.  I was just --

22             MR. PHILLIPS:  Oh.

23             THE COURT:  -- wondering about the original lawsuit

24   against CLO Holdco --

25             MR. PHILLIPS:  Yes.

1    THE COURT: -- where that $2 million or whatever had

2    been in the registry of the Court.

3    MR. PHILLIPS: After we got that money, that lawsuit

4    was dismissed --

5    THE COURT: It was dismissed? Okay.

6    MR. PHILLIPS: -- because the second lawsuit

7    superseded it.

8    THE COURT: Gotcha. Okay. Continue.

9    MR. PHILLIPS: And in the second lawsuit, they've

10   objected to our amended proof of claim.

11   THE COURT: Okay.

12   MR. PHILLIPS: So, our point is that we have -- our

13   proof of claim, we've agreed that there's a bifurcated issue.

14   Is the amendment a valid amendment? And if it is, then the

15   proof of claim will be an allowed proof of claim, subject to

16   objection within the litigation because they've already

17   objected to it in the litigation.

18   So I guess my point was that while we are here on our

19   motion, we recognize that the Court could say, this motion

20   should be tried within an objection to the proof of claim

21   which is pending in the adversary proceeding and will proceed

22   along with the scheduling order and trial of all the issues

23   that don't settle or don't get out.

24   So that -- that's an alternative that we recognize the

25   Court has authority to do that's responsive to our motion,

1  which is to say I don't want to bifurcate it, let's push it to

2  where we have an allowance process, because we already have an

3  objection to the claim pending in the lawsuit, which was not

4  pending when we filed our motion.  So that's number one.

5      Number two, our motion fully complies with *Kolstad*.  There

6  is no requirement -- there's no applicability of Rule 15 under

7  Rule 9014.  There's no preapproval required to amend a proof

8  of claim.

9      The objection to the proof of claim is a contested matter,

10  so one -- there are cases cited by the Litigation Trustee

11  where Judge Bohm and Judge Leif Clark have applied Rule 15,

12  7015, to -- retroactively, without notice and without the

13  ability to respond to the procedures, as required by Rule

14  9014(c).

15      We think Section 105 can't be used to obviate a Federal

16  Rule of Bankruptcy Procedure, and we also think that the

17  requirements of Rule 9014(c) would have to be prospective.  In

18  other words, the Court would have to enter an order that 9015

19  is going to apply, that Section 701 -- Rule 7015 is going to

20  apply, and then give parties notice under 9014(c) that it's

21  going to apply.

22      We filed our proof of claim, and thereafter filed our

23  motion to ratify, not for allowance but just to ratify the

24  amendment.

25      The United -- the Litigation Trustee says that because we

1    did this after confirmation of the plan, that there's a

2    heightened standard requirement imposed upon amendments.  We

3    have seen the same cases I just pointed out.  Judge Lynn also

4    pointed out a general rule of heightened standard.  But

5    there's no such thing as a general rule.  In *Kolstad*, it was

6    -- it was not a pre-confirmation -- a post-confirmation

7    amendment.  There was no motion for leave.  *Kolstad* sets the

8    bar for analysis of amended proofs of claim.

9        But we've cited cases in our materials that dealt with --

10   deal with post-confirmation amendments, clearly in Chapter 13

11   cases, but there doesn't seem to be any real problem one way

12   or another.  Judge Fish in *Knowles*, cited in our brief, says

13   that it's reversible error to preclude amendment unless it --

14   unless the amendment doesn't comply with *Kolstad*,

15   notwithstanding the fact that the amendment was filed with no

16   motion for leave post-confirmation.

17       Judge Felsenthal in the *Goodman* case cited in our

18   materials holds the same way.

19       Judge Means in *U.S. v. Johnston* holds the same way.

20       The point of these cases is that there's no specific or

21   special trigger that exists as a result of a confirmation

22   hearing or a confirmation order being filed, even -- or even

23   the effective date notice.  Here, the administrative bar date

24   wasn't even past until after the effective date.

25       But the point is *Kolstad* out of the Fifth Circuit sets up

1  the analysis of whether a proof of claim is viable, an amended

2  proof of claim is viable.  And there's two prongs.  Is the

3  creditor trying to set up a new proof of claim that's

4  different from the original claim and the stand -- the basis

5  for the original claim?  And number two, is there undue

6  prejudice caused by the creditor's amendment?

7       Now, we say (a) we absolutely are doing -- and *Kolstad*,

8  according to -- we cited Judge Summerhays' *In re Breaux*, 410

9  B.R. 236, as saying that *Kolstad* points out that if what

10  you're doing is advise -- is making a theory of recovery

11  that's new but it is grounded in the same transaction and

12  occurrence documents, then that is not a new claim.  That's

13  simply a new theory of recovery.  And I'll go through the

14  timeline and show you what we did.  And we complied.  And

15  there can't be prejudice.

16       Number one, there was a bar date.  There was the original

17  Proof of Claim 133.  It attached all of the same agreements

18  and attachments that we have here.  And it set forth that,

19  based on tracking and participation interests in Crusader

20  Redeemer Fund interests held by Highland Capital Management,

21  that CLO Holdco had a claim for the value of those interests,

22  which was $11,340,751.

23       Then, then the Debtor made a deal six months later, five

24  months later, made a deal with the Crusader Redeemer

25  Committee.  And the Crusader Redeemer Committee had undergone

1    an extensive arbitration process where the arbitration panel

2    found against Highland Capital Management, based on my reading

3    of it, about as much as you could find against a party, and

4    made a number of findings that generated claims against

5    Highland Capital Management of a lot, several hundred -- a

6    couple of hundred million dollars.

7        Part of what the arbitration process was was to say that

8    Highland Capital Management bought interests in the Crusader

9    Redeemer Fund that it shouldn't have bought because the

10   Redeemer Fund -- the Redeemer Group had a right of first

11   refusal and Highland could not buy those interests.  And part

12   of what the Redeemer Committee did -- and this is in our

13   Exhibit 2 to Exhibit 10; this is part of Mr. Morris's

14   declaration -- there were two awards, a partial final award

15   that ordered Highland Capital Management to transfer the plan

16   claims to the Redeemer Committee, to pay the Redeemer

17   Committee whatever financial benefits it received, plus

18   interest from the date of each purchase, but also it was net

19   of the purchase price paid by Highland.

20       Why?  Well, Highland paid.  If they bought it illegally,

21   they still bought it -- they still bought it, and they paid a

22   purchase price.  So the point was you're going to extinguish

23   the interests and give them back, but Highland gets a credit

24   for the purchase price.

25           THE COURT:  Can I just ask --

1          MR. PHILLIPS:  And the final award --

2          THE COURT:  Can I just ask where you're seeing that

3  word credit?

4          MR. PHILLIPS:  Let's see.  Amelia, could you put up

5  the --

6          THE COURT:  I hesitate to ask, because this is sort

7  of getting into the merits, but I just -- I never saw the word

8  credit in all of these documents.

9          MR. PHILLIPS:  Okay.  The -- if you look at Exhibit

10  -- Holdco Exhibit 10, Page 100, this is the -- this is the

11  partial final award by the arbitration panel.  We adopt the

12  alternative approach set by the Committee (inaudible)

13  precision.  We order Highland to transfer the 28 plan or

14  scheme shares to the Committee, pay the Committee whatever

15  financial benefits Highland received, less -- from the -- from

16  the 8/28 transaction, less what Highland paid for the plan

17  claims, plus interest at the rate of 9 percent from the date

18  of each purchase.

19      So what the -- what the Committee -- what the arbitration

20  award did was it ordered Highland to pay back, but the amount

21  was less what Highland paid for the interests that were

22  defined as the Plan Claims.

23          THE COURT:  Okay.

24          MR. PHILLIPS:  And --

25          THE COURT:  You acknowledge this award never got

1   confirmed, though?

2          MR. PHILLIPS:  I acknowledge this award never got

3   confirmed.  I do that.  I'm not running away from that fact.

4   But I also pointed out that, in our briefing and in the

5   exhibit, we -- the settlement motion -- the settlement

6   agreement is designed to implement the final award, with a

7   footnote, if you look at the Crusader settlement, this is

8   Exhibit 10, Page 9 of 187, each of the Debtor deems,

9   acknowledges that the cancellation or extinguishment of the

10  canceled LP interests is intended to implement Sections FAB

11  and FAX-2 of the final award.  And look at the parentheses.

12  See also the March award at -- and that's -- actually, it's

13  too small for me to read, but it's at Sections 111(H-25).

14  That is the final award that provides for the credit.

15       The point here is, Judge, that even under the arbitration

16  -- the arbitration award is where we start.  That was the

17  basis for the claim.  The claim was that you have to give us

18  back our stuff, but we recognize that you paid for it, so we

19  have to give you a credit for what you paid, and that's what

20  both the arbitration award did, partial and final, and that's

21  what the Crusader settlement agreement did, because it was

22  meant to implement these provisions of the arbitration award,

23  including the partial final award that we read from earlier.

24          THE COURT:  But the 9019 --

25          MR. PHILLIPS:  And that makes sense --

1          THE COURT:  The 9019 settlement approved by this

2    Court spoke in terms of canceling, canceling --

3          MR. PHILLIPS:  Sure.

4          THE COURT:  -- the interests that Highland had --

5          MR. PHILLIPS:  Certainly.

6          THE COURT:  -- wrongfully acquired.

7          MR. PHILLIPS:  Certainly.  Certainly it did.  And

8    that was extinguished, canceled, whatever.

9       However, the cancellation was not free and clear of the

10   purchase price.  The cancellation came -- it was a -- that's

11   our argument.  There is a disposition of the interests through

12   cancellation, but you -- they were not considered canceled

13   from inception because there was a credit for the purchase

14   price.  And as we've asked and pointed out, we know Pachulski,

15   we know Pachulski are good lawyers, and we know Pachulski

16   didn't tell, in a settlement, didn't tell the Crusader

17   Redeemer Committee, oh, go ahead, we won't take the credit.

18   They took the credit.

19          THE COURT:  Okay.  Let me -- let me just --

20          MR. PHILLIPS:  The credit was the purchase price.

21          THE COURT:  Let me just ask you.  Isn't the real

22   issue here that when your client filed Proof of Claim No. 198

23   in zero amount, which happened to be filed on the same day or

24   the day after the Bankruptcy Court's hearing approving the

25   Redeemer Committee Crusader settlement, you took the position

1  that we have a zero claim because, guess what, our interests,

2  the so-called participation and tracking interests, they just

3  got canceled.  They just got canceled pursuant to the Redeemer

4  Committee settlement.  And then --

5          MR. PHILLIPS:  The Redeemer Committee settlement that

6  implemented the arbitration award.  That is -- that -- and I

7  will tell you, we're not running away from that, either.

8  There was an amendment, and we have cited to the terms of the

9  amended proof of claim.

10         Amelia, can I have that?  Let's do the first one.  Let's

11  do the first one.

12         CLO Holdco understands that the Debtor has reached a

13  settlement with the Redeemer Committee and the Highland

14  Crusader Fund that will terminate the Debtor's (inaudible)

15  limited -- interest -- interested in the Crusader Funds in

16  which CLO owns participation interests.

17         This is kind of an important thing we do, although

18  Litigation -- Litigation Trustee doesn't.  According to the

19  Debtor, the termination of the Debtor's interests in these

20  funds served to cancel CLO's participation interests and the

21  Debtor's interests in those funds.  Accordingly, CLO's claim

22  is reduced to zero.

23         However, within that same amendment, yeah, there was a

24  reservation of rights.  By filing this amendment, CLO Holdco

25  expressly reserves all of its rights to, among other things,

1  amend this claim, file an administrative expense claim, file a

2  rejection claim, and seek attorneys' fees and interest as

3  allowed by law.  If the Debtor objects to this amended proof

4  of claim, CLO reserves the right to produce additional

5  documents and facts as necessary to support its claim.

6      So, the point here is there's a reservation of rights that

7  says that CLO agrees -- CLO reserves the right to amend.  It

8  did not expunge.  It did not withdraw.  And it -- and it -- it

9  reserved the right, if necessary, to add documents to support

10  a further amended claim.

11     Right.  We didn't even do that.  We just kept the same

12  documents and we have come up a different theory (garbled)

13  that, frankly, we are not blaming anybody.  But I came up with

14  this theory of recovery, and that might mark it for disastrous

15  results, given what the Court knows about me.  But it makes

16  perfect sense that if -- if HC -- Highland Capital Management,

17  LP had to give back its interest or give -- get them canceled,

18  same effect, that in accordance with the arbitration award we

19  -- implemented by the settlement, Highland Capital Management

20  got the credit for its purchase price.  And the tracking and

21  participation interests that we have introduced as evidence

22  establish that whatever Highland got out of those interests,

23  it was to pay to us.

24     And it's a simple proposition.  The proposition is that if

25  Highland had sold these interests for the purchase price, we

1  would have gotten the purchase price because we had the

2  participation and tracking interests.  If it lost them but got

3  credit for the purchase price, that's just like receiving the

4  purchase price in money and we're owed that claim.

5      We are not, and I want to make this clear, we are not

6  saying that Highland owes us an administrative claim for that

7  money because our claim arises from a pre-bankruptcy set of

8  documents.  But Highland got the credit.  It got between $3.7

9  and $5.7-something million.  We don't know because we don't

10  know what Highland paid.  But it got that credit, and that is

11  real money, and it owed that credit to us.  Admittedly, as a

12  claim, it couldn't pay us because it was a prepetition claim.

13  It couldn't pay us postpetition because it was a prepetition

14  claim.

15          THE COURT:  Okay.  Let me -- let me --

16          MR. PHILLIPS:  That's our position --

17          THE COURT:  Let me ask you this.  This feels like

18  more of an estoppel/waiver issue.  You know, we're kind of

19  bouncing around a lot here.  But I guess here's what I'm

20  getting at.  This is very factually different from *Kolstad*,

21  even though there are, you know, legal principles from *Kolstad*

22  that should be understood to apply here.

23      And here's what I'm getting at.  You had CLO Holdco's

24  original Proof of Claim 133, $11.3 million, filed on the bar

25  date of April 8, 2020.

1      Then, six months later -- again, the day of or the day

2   after the Redeemer Committee/Crusader Fund settlement was

3   approved by the Bankruptcy Court -- that proof of claim was

4   amended down to zero, with the language you've pointed out,

5   you know, that --

6          MR. PHILLIPS:  Uh-huh.

7          THE COURT:  -- Highland's interests in the Crusader

8   Funds was canceled and therefore our participation interests

9   and tracking interests are canceled.

10      Then, then, I mean, I'll throw in there, I've got a copy

11   of a transcript that was cited in some of the pleadings,

12   August 2021, where I ask when we're in that CLO Holdco

13   adversary context where a stay is being sought by the

14   Liquidating Trustee, and someone mentions, there's a motion to

15   withdraw the reference, I say, oh, is there?  Are there any

16   proofs of claim pending?  And I've got your language where you

17   very vehemently said, oh, we have a zero claim, I didn't file

18   it but it's not a proof of claim, there's not a proof of

19   claim, I can certainly withdraw it because it's zero amount.

20      So that was, you know, August 2021, about ten months after

21   the proof of claim had been amended to zero.  And then

22   Liquidating Trustee -- Litigation Trustee, I should say, filed

23   this omnibus objection objecting to your zero claim, November

24   2021.  And then it's January '22 that this now-amended Proof

25   of Claim 198, or 254, amended zero amount claim, is filed.  So

1   it's, I guess, about 11 months post-confirmation, but about 15

2   months after the zero proof of claim was filed.

3       So, if you could just address this head-on.  It feels kind

4   of like --

5               MR. PHILLIPS:  Uh-huh.

6               THE COURT:  -- waiver or estoppel might be applicable

7   here.

8               MR. PHILLIPS:  Well, Your Honor, --

9               THE COURT:  It's not just for amending the proof of

10  claim.  It's all about the same thing but we've got a

11  different theory.  I mean, it's like whipsawing.  We've got an

12  $11 million proof of claim.  No, no, no.  We've got a zero

13  proof of claim.  Oh, no, we now have a $3 million proof of

14  claim.  It feels like I'm being whipsawed, and it feels like

15  --

16              MR. PHILLIPS:  Well, first of all, --

17              THE COURT:  -- waiver or estoppel.

18              MR. PHILLIPS:  Well, okay, first of all, there are

19  several hundred million (audio gap) of claims, and we have 15

20  or 20 or 30 people on this for between a $3.6 to a $5.7

21  million prepetition proof of claim.  All right.  Let's put

22  this into context.  And I agree, I agree with everything you

23  said about the original filing of the proof of claim.  I agree

24  about the amendment.  And I agree that what the transcript

25  said that I said in August where our proof of claim was not

1   really at issue -- but it was to an extent, because we'd filed

2   a motion to withdraw reference that had never been responded

3   to and that got stayed as well -- I agree that what I said at

4   the time was I don't know what a zero proof of claim is and I

5   can withdraw it.  And when the Debtor sent me a motion to

6   expunge, to say, let's expunge the claim because it's zero,

7   and filed their objection to our zero claim, for the first

8   time, really, I needed to make a decision about, given we

9   weren't going to go anywhere in the litigation on our motion

10  to withdraw reference, that was clear, until after there was

11  going to be a lawsuit filed in October, so we went and looked.

12  And what we figured out was that (a) it wasn't an $11 million

13  proof of claim unless the value was for $11 million, but (b)

14  it wasn't a zero proof of claim because there was this right

15  in the participation documents for whatever HCMLP got for

16  those interests.

17      And I've got to tell you that we got thrown in in April.

18  We had to respond to the lawsuit.  We did respond to the

19  lawsuit and the record at the time.  The lawsuit got stayed.

20  Then the lawsuit got stayed again.  And then the lawsuit got

21  re -- dismissed because a new one got refiled.

22      And I will tell you that, as far as the whipsaw goes, we

23  have fixed all of that.  In response to the big lawsuit, we

24  filed a motion to withdraw reference on behalf of all of our

25  clients, including HCL -- CLO Holdco.  But we said, CLO Holdco

1  cannot get the benefit of its -- a *Stern* argument on the

2  avoidance action because we have filed an amended proof of

3  claim.

4     We did that a second time in connection with the amended

5  lawsuit.  And we told Your Honor at hearing -- at the status

6  conference on the motion to withdraw reference that things had

7  changed for CLO Holdco --

8              THE COURT:  Okay.  I want to direct this back --

9              MR. PHILLIPS:  -- with respect to the avoidance

10  action.

11             THE COURT:  -- to my waiver and estoppel argument.  I

12  mean, can a creditor --

13             MR. PHILLIPS:  I think --

14             THE COURT:  Can a creditor just keep thinking on

15  things and thinking up new theories for the whole Chapter 11

16  case and beyond confirmation?  And, oh, now I think it's $3

17  million.  Now I think it's $11 million.  Now I think it's

18  zero.  I mean, --

19             MR. PHILLIPS:  Well, --

20             THE COURT:  -- this is --

21             MR. PHILLIPS:  Your Honor?  Your Honor, you're --

22             THE COURT:  At what point does waiver and estoppel

23  kick in?  I read *Kolstad* to give a bankruptcy court

24  discretion.  Discretion --

25             MR. PHILLIPS:  I -- I --

1      THE COURT:  -- to allow a proof of claim amendment.

2  And then, you know, when would it be an abuse of discretion

3  versus not an abuse of discretion?  And, you know, *Kolstad*

4  was, like I said, quite different.  The debtor had filed a

5  proof of claim when the IRS missed its bar date, --

6      MR. PHILLIPS:  Uh-huh.

7      THE COURT:  -- as a debtor can do under Rule 3004.

8      MR. PHILLIPS:  Right.

9      THE COURT:  And then the IRS came along a little bit

10  later.  It actually -- the timeline shows about 10 months

11  later, but before plan confirmation -- and filed its amended

12  proof of claim.  You know, we agree with the debtor, the

13  debtor owes us taxes, but it's, you know, $85,000, not

14  $20,000.  And the Bankruptcy Court allowed that amended proof

15  of claim.  And, again, the Fifth Circuit I think says

16  Bankruptcy Court has discretion to allow it.  The creditor is

17  not stuck with the debtor's proof of claim filed on its

18  behalf.  And so then you look at, you know, when you should

19  exercise your discretion to allow an amended proof of claim

20  well past the bar date or not.

21     And it just seems to me that in deciding how to exercise

22  my discretion here, this timeline matters hugely.  This isn't

23  like --

24      MR. PHILLIPS:  I --

25      THE COURT:  -- I missed the bar date, debtor filed a

1    proof of claim on my behalf, and then, oh, I disagree with

2    your amount, you know, I'm going to change the amount right --

3    you know, get my proof of claim on file before confirmation so

4    the plan can deal with the correct amount.

5              MR. PHILLIPS:  No, I was --

6              THE COURT:  This is, you know, months.  Almost two

7    years after the bar date, this amendment that's before me was

8    filed.

9              MR. PHILLIPS:  Your Honor, first of all, let's look

10   at the facts, let's look at the structure of this case versus

11   a Chapter 13 case where the Court -- the -- they're allowed,

12   even though they're much more effective in a Chapter -- an IRS

13   claim is much more effective in a Chapter 13 case than our

14   claim is here.

15      Here, we started out with a lawsuit against our client.

16   We came -- and there was -- and I can't -- I am not going to

17   go into and I can't go into the thought behind the first --

18   the 198 claim down to zero, except I will say that Mr. Kane,

19   in filing that amendment, said that the Debtor, who is

20   advising CLO Holdco at the time under two agreements and

21   getting paid to advise CLO Holdco under two agreements, has

22   told CLO Holdco that the interests are worth zero.  And that's

23   in the amendment.  Right?

24      CLO Holdco -- HC -- HCMLF -- LP made no attempt to limit

25   its rights under the advisory agreements, both advisory as an

1  investment advisor and advisory as a back-room operator and

2  provider of services to CLO Holdco, until the middle to end of

3  first quarter of 2021.  This -- or was it 2022, I guess?  This

4  -- this reservation of rights specifically mentions advice

5  given by the Debtor.  Right?  That's number one.

6      I said what I said at a hearing in August of '19.  At that

7  time, it was a zero proof of claim.  And I can -- I can

8  withdraw it.  I can withdraw it, but I'm not withdrawing what

9  I don't know about, which is what I told you at that hearing.

10  I don't know about a one -- a zero proof of claim, but I can

11  withdraw it.  I can withdraw a zero proof of claim.  But I'm

12  not withdrawing a zero proof of claim until I understand it.

13  And when I looked at the zero proof of claim and when I looked

14  at the first proof of claim, the first proof of claim was

15  filed in the face of the arbitration award.  And it said that

16  CLO Holdco was entitled to the entire "value" of the

17  participation interests.  Well, what if they weren't worth the

18  supposed value?

19      Now, the Litigation Trustee on one hand is telling you

20  they're worth zero, and on the other hand he's suing CLO

21  Holdco because the participation interests were worth $13

22  million.

23      So I don't know who's getting whipsawed here.  We're kind

24  of getting whipsawed because we're being sued because we got

25  valuable consideration and valuable assets from HCMLP worth

1    $12 or $13 million, but today they're worth zero because they

2    were extinguished.

3        So there is not one side here that is innocent.  There's

4    not one side here who is, we think, really guilty.  Everybody

5    is trying to figure out what to do, as was I and as was I when

6    the Debtor says, I want to get an expungement, and I said,

7    okay.  The Debtor objects or the Litigation Trustee objects to

8    our proof of claim for zero, and I say okay.

9        We have had to deal with lawsuits stayed; lawsuits that

10   say we can't have an allowed claim, so why am I worried about

11   it because it's an avoidance action; lawsuits that are going

12   to be stayed past October.

13       We're dealing with a 2004 surface that requires everybody

14   to drop everything for a period of several weeks and spend a

15   lot of money dealing with.

16       Then we get the October 25th lawsuit, and it also is not

17   going to allow us to have an allowed claim because it says we

18   have no claim.  And then we have to decide, we have to do our

19   research, and we did it.  We didn't do the research on the

20   first proof of claim.  We didn't do the research on the (audio

21   gap) proof of claim.  We did the research and the analysis

22   under Claim 254.  And all I can tell you, Judge, is that is

23   what we did.

24       And if you're worried about effects here, this case

25   involves, according to the Litigation Trustee, who's suing 30,

1    40, 50 people for $500 million, it involves several hundreds

2    of million dollars' worth of claims, and we're dealing with

3    $3.7 to $5.7 million in prepetition claims that we couldn't

4    have even gotten to an allowance of because when we started

5    there was a lawsuit against us seeking to avoid any trans -- a

6    transfer.  We couldn't have gotten an allowed claim there.  We

7    couldn't have gotten an allowed claim in October of 2021.  We

8    can't get an allowed claim under the current version of the

9    lawsuit.  But we had to respond because the Debtor wanted us

10   to extinguish the claim, withdraw it, and then there was an

11   objection to claim that we had to respond to.

12       So we are where we are.  We've said what we've said.  We

13   don't think there's a lot of whipsawing going on from our

14   standpoint.  There -- if there is, then there's whipsawing

15   going along on the Plaintiff's standpoint, because they're

16   telling us here we've got zero value, and in the lawsuit

17   against us we've got $13 million of value and gave up none.

18       So we are here just to say we have a viable amendment.  It

19   doesn't meet the facts of *Kolstad*, but *Kolstad* is not limited

20   to its facts.  It says, we're going to allow amendments

21   liberally, and as long as you don't stray from your original

22   proof of claim and it's a new theory of recovery, which this

23   is, and as long as there's no prejudice, which there can't be

24   here because we couldn't have had an allowed claim from the

25   moment we got involved.  There was pending litigation against

1   us.

2        So you can't say, there's no basis to say that any of the

3   estate is prejudiced because it has now between $3-1/2 and

4   $5.7 -- $3.7 and $5.7 [million] in unsecured administrative --

5   an unsecured non-administrative general proof of claim that it

6   might have to litigate at the tail end of litigation that's on

7   a 140-page complaint.  That's not prejudice.  And we've cited

8   cases that establish that legal fees involved in litigation

9   are not prejudice, is not prejudice.

10        So I don't think a knowing waiver existed.  I don't think

11   you can find evidence of a knowing waiver.  And I don't think

12   there's any basis for any heightened requirements, given

13   confirmation of the plan.

14        And the fact is the Debtor's claim objection bar date has

15   not even run.  They still have the right to object to claims.

16   They don't know -- we don't know how much money they have.  We

17   don't know what kind of claims there are.  I don't know if

18   they know what kind of claims there are.  But how can a proof

19   of claim, which, based on, let's say, $300 million, generate

20   at most 1.9 percent of the claims balance, provide any

21   prejudice to any party?  That can't be.

22             THE COURT:  Okay.

23             MR. PHILLIPS:  So I don't think Your Honor can find

24   from the facts that we have here and your reading from a

25   transcript -- I understand the Judge has authority to look

1  into what's pending before them.  You have authority to look

2  at what our evidence is on the reduction of the proof of

3  claim.  But I don't think there's a basis to find a knowing

4  waiver of rights, especially given that there's a reservation

5  of rights to further amendment.

6          THE COURT:  Okay.

7          MR. PHILLIPS:  That's our position on waiver.

8          THE COURT:  All right.  Anything else?

9          MR. PHILLIPS:  Well, Your Honor, hold on a second.

10      (Pause.)

11          MR. PHILLIPS:  I think the point is, Your Honor, that

12  all we're asking for -- we've already got an objection on file

13  in the lawsuit.  All we're asking for is the ability to have

14  our claim pending.  And we think we amended it.  We think it

15  is -- it is consistent with the requirements of *Kolstad* and

16  other case law that determines whether or not amendment is

17  applicable and appropriate.

18      We have not -- there's no way to find prejudice here, and

19  we say there's no way to find a knowing waiver.

20      And we -- we want to point out, finally, that in the last

21  flurry of pleadings that -- and I pointed this out before, but

22  I want to reiterate:  In the last flurry of pleadings, where

23  we all filed our dispositive motions and our motion to

24  withdraw the reference, you held a status conference.  And at

25  that status conference, I said, Judge, we have a proof of

1   claim.  We are not trying to -- we have to tell you that we do

2   not have a *Stern* argument in connection with the CLO proof of

3   claim because of -- to the extent that it relates to the

4   avoidance action.  But we are the caboose on this.  We're only

5   liable if everybody else being sued is liable.  And there's no

6   reason to hold the CLO Holdco component of the litigation.

7   And you said, I'm sending it all to the District Court.

8        But we -- we represented and acknowledged to Your Honor

9   that things have changed, that we did have a proof of claim,

10  that we (audio gap) *Stern* with respect to the avoidance action

11  and our ability to allow a claim in connection with the

12  avoidance action because we didn't have a jury trial right and

13  *Stern* did not protect us.

14            THE COURT:  Okay.  Thank you.  Mr. Loigman?

15       OPENING STATEMENT ON BEHALF OF THE LITIGATION TRUSTEE

16            MR. LOIGMAN:  Yes.  Thank you, Your Honor.  And we

17  will have a slide set that we'll put up today.  We're not

18  going to start with it right away.  But we did provide that

19  set to both the Court and to Mr. Phillips at the outset of the

20  argument today.  So, but we'll put that up on the screen for

21  everybody's convenience.

22       And let me start just by saying that Mr. Phillips spent

23  some time on whether or not Rule 15 applies to the amendment

24  here and whether it applies to amendments of proofs of claim.

25  And I'll tell the Court right off the bat, the cases are mixed

1   on this.  Many cases apply Rule 15 to amendments of proofs of

2   claim; many cases do not.

3       But whether or not Rule 15 applies to this matter really

4   doesn't amount to anything, because what the courts do

5   consistently say is that after a plan confirmation the claim

6   cannot be amended absent compelling circumstances.  That's

7   what Judge Lynn explained in the *In re Dortch* matter, which

8   was 2009 WL 6764538, where he said that a showing of

9   compelling circumstances is required to amend after plan

10  confirmation.

11      And Judge Lynn certainly isn't alone in this matter.  The

12  Seventh Circuit explained in *Holstein v. Brill* that

13  confirmation of the plan is a milestone, after which further

14  changes should be allowed only for compelling reasons.

15      And Judge Easterbrook wrote in *Holstein* that, Whether or

16  not late-breaking claims affect third-party entitlements, they

17  assuredly disrupt the orderly process of adjudication.  And as

18  he said in sort of Judge Easterbrook-like language, To

19  everything, there is a season, and the season for stating the

20  amount of claim is before confirmation of a plan of

21  reorganization.

22      And the Sixth Circuit reached a very similar conclusion in

23  *In re Winn-Dixie Stores*, where it says, We hold that post-

24  confirmation amendment, while not prohibited, is not favored,

25  and only the most compelling circumstances justify it.

1      Now, against all of that which requires compelling

2   circumstances to do a post-amended -- a post-confirmation

3   amendment, I'm sorry, counsel for CLO Holdco has repeatedly

4   relied upon *In re Kolstad*.  And I think Your Honor pointed out

5   quite correctly that the circumstances in that case were very

6   different.

7      To begin with, that was not a post-confirmation amendment

8   to a claim.  It was pre-confirmation.  That was before there

9   was a hearing on the plan of reorganization.

10     And secondly, very unlike the circumstances here where a

11  claim amount has been set by a party and is now seeking to

12  change it, there was no claim amount set by the IRS in

13  *Kolstad*.  The debtor filed that claim because the debtor knew

14  that it would be subject to that claim anyway, whether or not

15  the IRS filed it.  And the IRS then later changed the amount

16  of the claim.

17     And essentially what the Court was recognizing there was a

18  debtor may be free to file a claim on behalf of a party, but

19  certainly it's not free to set what the amount of that claim

20  is on behalf of another party.  It makes sense that the other

21  party could come forward and amend the amount.

22     Mr. Phillips also mentioned a case, *In re* -- I'm sorry,

23  *United States v. Johnston*, which he said was a post-amendment

24  -- sorry, a post-confirmation amendment.  Well, that's

25  correct.  But *United States v. Johnston* presents just the kind

1   of compelling resources -- sources -- circumstances that would

2   permit a change to a claim post-confirmation.

3       And what happened in that case was that the debtor listed

4   their assets, including their real estate assets, and on the

5   basis of that the IRS filed a claim as an unsecured claim.

6   Turns out, after confirmation, the debtor went and sold

7   property that was not on the list.  And had the IRS known

8   about that property, it would have listed its claim as a

9   secured claim.

10      The amendment wasn't changing the claim at all.  The

11  amendment wasn't even changing the amount of the claim.  All

12  it was doing was changing it from an unsecured claim to a

13  secured claim.  And the reason that was permitted was because

14  the debtor misled all of the parties by incorrectly stating on

15  its list what its real estate property assets were.

16      Those are compelling circumstances for a post-confirmation

17  change.  We don't see any compelling circumstances here.  In

18  fact, I think what we're seeing is just the opposite.  We're

19  seeing the whipsaw which Your Honor just referred to.

20      And I'll ask my colleague Aaron to put up on the screen

21  our slide deck, and I'll start with that.  We can walk quickly

22  through the slide deck.

23      And we will start with the second slide in the deck, which

24  is basically a simple timeline to show what's happened here.

25  The first red incident which is on the bottom there is when

1    CLO Holdco files its first proof of claim.  And that's based

2    on these participation interests or these tracking interests.

3    And that's filed in April of 2020.

4         Now, the tracking interest is an interest in the Crusader

5    Funds, and the underlying interests in the Crusader Funds were

6    canceled as a result of HCMLP's settlement with the Redeemer

7    Committee.  And that was confirmed by the Court in October of

8    2020.

9         Aaron, if you could turn to Slide 3.

10        We can see that those claims, the underlying claims, are

11   canceled.  They're extinguished by the settlement between

12   HCMLP and the -- and the Redeemer Committee.

13        So, if we turn to Slide 4, we can see that, appropriately,

14   what CLO Holdco's counsel agreed to was that they would waive

15   CLO Holdco's claim because of the termination of the

16   underlying interests.

17        And you can see in the September 1st email from Mr. Kane

18   it says, We'll agree to waive our claims against Highland

19   pursuant to the Crusader participation interests in our proof

20   of claim.

21        And what he says is that is his written confirmation.

22   That's what they're doing.  They're waiving their claim.

23        And then on October 17th, consistent with that, he says,

24   Look for an amendment from us to zero dollars on Monday.

25        That zero dollar amendment is them waiving their claim, as

1  he says in the first email.

2      And if Aaron could turn to Slide 5, you'll see that on

3  October 21st Mr. Kane sends an email to counsel for HCMLP, for

4  the Debtor, that says, I've executed a claim amendment from my

5  client that reduces CLO's claim to zero.

6      And that day, in fact, the amended claim was filed.

7      Now, more than a year after that, after the effective date

8  of the plan, CLO Holdco filed this purported amendment to its

9  claim which seeks to undo this agreement of counsel and reduce

10 -- the reduction of the claim to zero and act as if that had

11 never occurred.  Completely undo the amendment of the claim,

12 the agreement of counsel.

13      As Your Honor noted, sure seemed like a waiver, that they

14 couldn't be engaged in conduct like that.  And the only

15 asserted basis for this change is that supposedly-new counsel

16 -- and let's keep in mind, this supposedly-new counsel had

17 been in place for CLO Holdco for a year at this point; for a

18 year -- revisited the record and decided that there was a

19 claim for damages here.

20      I would submit, Your Honor, this is --

21          THE COURT:  Let me interrupt right now.  And I -- you

22 know, maybe you're going to get to this.  But what is the

23 significance of it being amended to zero with a reservation of

24 rights versus just withdrawal of the proof of claim?  I mean,

25 --

1           MR. PHILLIPS:  Your Honor, Your Honor, if I could --

2     if I could  --

3           MR. LOIGMAN:  And Your Honor, if I could just answer

4     the question asked.

5           THE COURT:  Yes.  Mr. Phillips, this is not for you

6     right now.  You'll have your rebuttal time.

7           MR. PHILLIPS:  I understand that, but we did not get

8     these slides.  We did not get these slides, and there was not

9     a motion -- there was not a witness and exhibit list submitted

10    by the Litigation Trustee.  We did not get these slides today.

11    I'm not -- I'm just saying, we did not get the slides and

12    there was no witness and exhibit list submitted.  So they're

13    going off of documents that are not before the Court in a

14    witness and exhibit list and provided to us through a slide

15    presentation or a witness and exhibit list.

16          THE COURT:  Okay.  Mr. Loigman, what about that?  I'm

17    looking at the bottom of your screen there.  Was this attached

18    to something, or is this --

19          MR. LOIGMAN:  Yeah, I could --

20          THE COURT:  -- an exhibit that wasn't disclosed?

21          MR. LOIGMAN:  Sure.  I'll be happy to answer all of

22    that.  First of all, the slide show that I'm showing you now,

23    Your Honor, was sent to both the Court and to Mr. Phillips at

24    the beginning of argument.  I'm not saying it was sent any

25    earlier than that.

1            MR. PHILLIPS: Oh, well, I --

2            MR. LOIGMAN: He --

3            MR. PHILLIPS: I can't see it because my -- I'm out

4  of my office, --

5            THE COURT: Okay.

6            MR. PHILLIPS: -- so I'm on a non --

7            THE COURT: Okay.

8            MR. LOIGMAN: But I -- but I --

9            THE COURT: Keep going.

10            MR. LOIGMAN: Your Honor, yeah, to answer your

11  question, with the exception solely I think of the emails that

12  we were just looking at, the emails from Mr. Kane, everything

13  is on the docket, is on the record, or is included in CLO

14  Holdco's own exhibits.

15    These emails were provided in the affidavit of Deborah

16  Newman which accompanied our brief back in February of 2022.

17  So these exact emails were shared with the Court and with Mr.

18  Phillips back in February. There's nothing new in this set of

19  slides at all.

20            MR. PHILLIPS: Understood. Understood. We complied

21  with the -- with the Court's requirement for witness and

22  exhibit lists. That's our point.

23            THE COURT: Okay.

24            MR. LOIGMAN: And I would just ask Mr. Phillips,

25  since I was very patient and listened to his long

1 presentation, to please not interrupt my presentation any

2 further.

3         THE COURT: Okay. So I'm going to disregard the

4 possible problem of no courtesy exchange ahead of time or no

5 filing of an exhibit list because you're telling me that back

6 when this was all set for hearing originally in February there

7 was a declaration of Ms. Newman that attached these emails.

8 Correct?

9         MR. LOIGMAN: That's correct, Your Honor.

10         THE COURT: Okay.

11         MR. LOIGMAN: And that citation is at the bottom --

12 the bottom of this page --

13         THE COURT: Okay.

14         MR. LOIGMAN: -- with the docket number.

15         THE COURT: Okay. So, you were going to answer my

16 question before that exchange about what is the significance

17 of the proof of claim being amended to zero versus just

18 outright withdrawn. Somebody had to have a reason for doing

19 that, and my brain can speculate, but what is the significance

20 for this argument today?

21         MR. LOIGMAN: The significance, Your Honor, is that

22 there is no significance. And I say that not lightly. I say

23 that very simply. As counsel for CLO Holdco said, they were

24 waiving their claim, and the way they were waiving it was by

25 amending their claim to zero dollars. That's what they filed.

1    And the effect of it, what they said they were doing, was to

2    waive their claim.

3         In terms of the reservation of rights to amend the

4    complaint that Mr. Phillips points to that's in the -- that's

5    not the reason the claim was filed, so they could have a

6    reservation of rights to amend it later.  That reservation of

7    rights was boilerplate language that was in the claim.  It was

8    word-for-word identical to the language that was in the first

9    claim that they filed, so it was simply just repeated.

10        And in terms of its effect, the Sixth Circuit's case in *In

11   re Winn-Dixie Stores*, which we cite, is very much on point,

12   because in that case the parties argued the same thing.  They

13   said, oh, but we have a reservation of rights to amend, so we

14   must be allowed to do that.  And what the Court said is this:

15   Appellants argue that their original claims contained language

16   reserving the right to amend and supplement those claims, but

17   such language cannot, as a matter of law, be construed to

18   protect in perpetuity Appellants' right to amend their claims.

19   Such a construction of this language would truly render

20   illusory all finality achieved by a reorganization plan.

21        So simply having that reservation of rights doesn't give

22   them the right to amend the proof of claim down the road.

23        And if we look at Slide 6, the next slide, what this

24   refers to, Your Honor, this is -- these are some snippets from

25   that August 19, 2021 hearing that Your Honor has already

1    referred to.  And that's, that was the hearing on the

2    Trustee's motion for a stay at which Your Honor raised the

3    motion to withdraw reference that CLO Holdco had pending and

4    asking outright if CLO Holdco had any pending proofs of claim.

5    And my partner, Ms. Newman, trying to be technically accurate,

6    said, well, they have this proof of claim for zero dollars.

7    It doesn't amount to anything because it's for zero dollars.

8    And Mr. Phillips got up and said, that is not correct, Your

9    Honor, there is no pending proofs of claim, and went on to

10   explain that the only proof of claim on file is for a zero

11   amount on behalf of CLO Holdco because the very interests that

12   the complaint complains about having been transferred to

13   ultimately CLO Holdco were canceled.  Therefore, of no value.

14        So, to your question, is there a difference between a zero

15   dollar proof of claim and having a proof of claim simply

16   withdrawn, the answer is no, there is no difference.  And Mr.

17   Phillips himself said that to Your Honor back in August of

18   2021.

19        And he explained that because the result of the settlement

20   was that the basis for the proof of claim was extinguished,

21   the proof of claim was amended to reflect the zero amount.

22   And I can certainly withdraw it because it is a zero amount.

23        So, in that regard, Your Honor, there is no difference.

24        Now, one of the things that we've heard Mr. Phillips say

25   is that HCMLP at that time, the Debtor, was the investment

1  advisor to the parent entity, the DAF, and therefore that

2  somehow the Debtor guided them to make this change down to a

3  zero dollar proof of claim.  And plus keep a couple of things

4  in mind.

5      First of all, we saw that correspondence back on Slides 4

6  and 5 between Mr. Kane and Mr. Morris, counsel for CLO Holdco

7  and counsel for the Debtor.  It was very clear that that's

8  correspondence between lawyers for adversary parties talking

9  about the amendment of a proof of claim.  This is not being

10  done cooperatively.  The -- CLO Holdco's counsel knew they had

11  no choice but to amend their claim down to zero, to withdraw

12  it, because it no longer had any value.

13      And keep in mind that in October 2020 that's nine months

14  after Mr. Dondero was already removed from control of HCMLP

15  and was after he even had resigned, was required to resign

16  from HCMLP.

17      So there's no question that by October of 2020 there's an

18  adversity between HCMLP and CLO Holdco.  There's no way that

19  CLO Holdco is simply relying on guidance from HCMLP to

20  withdraw its proof of claim, to mark its proof of claim down

21  to zero or nothing.

22      And one thing that we didn't see from Mr. Phillips in the

23  investment advisory agreement, although he put that in as an

24  exhibit, is that the investment advisory agreement that he put

25  in as Exhibit 5 says in really no uncertain terms whatsoever

1    -- in fact, in all capital letters in Section 7 it says, All

2    ultimate investment decisions with respect to the Fund and its

3    subsidiaries shall at all times rest solely with the general

4    partner, it being expressly understood that the general

5    partner and/or the officers and directors of the applicable

6    subsidiary shall be free to accept and/or reject any of the

7    advice rendered by the investment manager hereunder, for any

8    reason or for no reason.

9        So the concept that CLO Holdco marked its proof of claim

10   down to zero based on what HCMLP was telling them, it doesn't

11   make any sense.  They had complete discretion to do that, and

12   there would be no reason that they would be following guidance

13   from their litigation adversary at that point in time.

14       So what really happened here is that CLO Holdco withdrew

15   its claim by marking it down to zero, and then when we went to

16   clean up the docket and say, okay, now we should just expunge

17   that claim because it's a zero dollar claim, CLO Holdco has

18   come back and said, well, wait a minute, it's a year later and

19   everything, but we now want to come up with a basis for

20   damages.

21       That, Your Honor, I would submit, is the very opposite of

22   compelling circumstances for amendment.  And you heard that

23   from Mr. Phillips, that all it was that they finally decided

24   they had time to review the claim.  They hadn't looked at it

25   closely before then.  Came up with all sorts of reasons why

1  they wouldn't have looked at it before then.  But, frankly, it

2  had been there for months and months.  Obviously, a lot of

3  thought went into the decision to mark it down to zero.  And

4  there's really not compelling circumstances here.

5      Now, as to that, that chronology alone is a sufficient

6  basis for rejecting the amendment.  It's a complete absence of

7  compelling circumstances.  But there's a second independent

8  reason that's equally compelling, and that's because the

9  purported amendment is frivolous and the Court shouldn't

10  exercise its discretion to permit a frivolous amendment.

11      Now, as counsel for CLO Holdco acknowledged, the very

12  interests upon which the claim is based were canceled.  So as

13  the language in the tracking interests -- and my colleague has

14  put up Slide 7 on the screen.  This is the language from the

15  tracking interests.  Again, it's included in the claim

16  submitted by CLO Holdco.  And explains that there has to be

17  proceeds to HCMLP on the Crusader interests in order for

18  anything to be due to the holder of the tracking interests,

19  the holding of the participation interests.

20      Because the underlying interests were canceled, those

21  interests cannot and will never receive proceeds that have to

22  go to the holder of the tracking interests.

23      Now, recognizing that, CLO Holdco is asserting a different

24  basis, a different leg, sort of, to get to damages.  And what

25  it's saying is that, in addition to the underlying interests

1 being canceled, the settlement agreement provides that the

2 Redeemer Committee gets an allowed claim of $137 million.

3 Now, as the Court pointed out, that's separate from

4 damages that's provided in the arbitration agreement.  The

5 arbitration agreement was never entered by any court, and it

6 provided for $190 million in damages, a totally different

7 amount.

8 Nonetheless, CLO Holdco points to language in the

9 arbitration agreement that calculates a portion of the damages

10 as the amount that HCMLP received from the Crusader interests

11 less the amount that it paid for those interests.  That's the

12 language that's now in the slide here, and that is the same

13 language that Mr. Phillips put up on the screen when Your

14 Honor asked about the word credit.  Of course, the word credit

15 doesn't appear anywhere in that language.

16 And what CLO Holdco contends is that somehow this

17 constitutes a credit which was obtained by HCMLP and that CLO

18 Holdco is entitled to recover that credit, that it would flow

19 through through the tracking interests.  And I'd submit, Your

20 Honor, that argument, it's very creative and I give counsel

21 credit for coming up with that, but it's nothing short of

22 absurd.  Because if you look at the arbitration award's

23 calculation of damages, even if we consider the arbitration

24 award, which was never entered, HCMLP did not get any

25 proceeds.  It did not receive anything at all.  Instead, as is

typical, the amount that HCMLP had to pay out in damages was
calculated as the financial benefits less what we paid to get
those financial benefits.  It's disgorging its benefits, its
profits.  And that's how you measure for a disgorgement
remedy.

     If HCMLP were required to pay to CLO Holdco the amount
that it paid to purchase those claims, they would really be
paying that amount out twice:  once when it purchased the
claims, and now again to CLO Holdco.  It never got that money
back.  It paid that money out once, and then it got these
financial benefits.  It paid that money over to -- back to the
Redeemer Committee, all the financial benefits.  So it's paid
out all the money, and at the end of the day, whatever
interests are left, which are the Crusader Fund interests it
has, go back to the Redeemer Committee.  HCMLP gets absolutely
nothing.

     And this is a very similar situation to a director, for
example, Your Honor, that usurps a corporate opportunity.  Say
a director in a company takes a corporate opportunity by
buying an asset for $1 million that should have been made
available to the company and then later sells that asset for
$5 million.  Well, the damages to the company are going to be
$4 million.  That's the amount of the ill-gotten gain.  And
the damages there, like here, are equal to the amount received
-- there, $5 million -- less the amount paid -- $1 million.

56

1    That's the measure of what the damages the director must pay

2    (inaudible).

3        The director doesn't receive $1 million at any point in

4    time.  She doesn't receive $1 million when she buys the asset

5    in the first place; she actually pays out the $1 million.  And

6    she doesn't receive the $1 million when she pays damages for

7    the wrongdoing over to the company.  It's exactly the same

8    situation here.  The argument has no merit.  HCMLP did not

9    receive a dime on the Crusader interests as a result of the

10   settlement, and there are therefore no proceeds to flow

11   through to the tracking interests.

12       So, Your Honor, to summarize this, whatever standard

13   applies to the amendment of CLO Holdco's claim, the amendment

14   should be rejected for two reasons.  One, because it's an

15   untimely act of gamesmanship, of whipsaw, as Your Honor

16   pointed out.  They reduced their claim to zero.  They were

17   very adamant about that.  They were adamant about what that

18   meant.  They made clear on the record that there was no

19   pending proof of claim.

20       And by the way, he made that -- counsel made that clear on

21   the record when it seemed beneficial to the parties to do

22   that.  Now that it no longer seems beneficial, is now removing

23   that assertion.  That, that is a basis for not permitting this

24   amendment.

25       And similarly, the fact that it's a frivolous amendment,

1  that there was never any money, no proceeds that went to HCMLP

2  to pay under the tracking interests, is a separate basis for

3  not permitting the amendment here.

4      And the final thing I'll mention is that counsel talked at

5  the very end about the lack of prejudice to HCMLP here.  I

6  think that's really misguided.  Case law actually shows, and

7  the *In re DePugh* case, 409 B.R. 84, out of the Southern

8  District of Texas Bankruptcy Court, makes clear that frivolous

9  amendments shouldn't be permitted, even if what the result of

10  that -- the prejudice that results from that is just

11  additional attorneys' fees and a waste of the Debtor's and

12  Court's time.  You don't permit frivolous amendments to waste

13  time and money, even if it's not a substantial amount of money

14  relative to the claim as a whole, to the case as a whole.

15  That's not the appropriate measure for determining when to

16  permit such a claim.

17      If Your Honor has any questions, I'd be happy to address

18  them.

19          THE COURT:  My only remaining question is I just want

20  to double-check what I think I'm hearing.  The legal standard

21  here, would you agree it's just Court's discretion?  We

22  technically don't have Rule 15 in this contested matter being

23  applicable.

24      It's not really a Rule 9007 extension of time to file a

25  late proof of claim, where *Pioneer Investments* might apply.

1    I've inferred from the *Kolstad* case that it's just the

2  Court's discretion.  Do you agree that's the legal standard

3  here?

4        MR. LOIGMAN:  I do agree, Your Honor, that it is

5  within the Court's discretion.  But at the same time, I would

6  say cases that look to what that discretion means in the post-

7  confirmation amendment context say compelling circumstances

8  are the appropriate types of circumstances that are required

9  in order to make an amendment.

10    So, again, it is within the Court's discretion.  I

11  completely agree with that.  But the exercise of that

12  discretion in the post-confirmation context, courts almost

13  universally apply compelling circumstances.

14        THE COURT:  The Judge Easterbrook opinion, the *Winn-*

15  *Dixie* opinion, and then the Judge Mike Lynn opinion?

16        MR. LOIGMAN:  That's correct, Your Honor.

17        THE COURT:  Okay.  All right.  Well, thank you.  I

18  have no other questions.

19    Mr. Phillips, you have the last word, if you can make it

20  brief.

21        MR. PHILLIPS:  Appreciate it, Your Honor.

22        THE COURT:  Uh-huh.

23        MR. PHILLIPS:  I appreciate it, Your Honor.

24    I think a couple of things.  Number one, your discretion

25  is your discretion.  However, *Kolstad* and the Fifth Circuit

1   approach is (inaudible) prejudice.  The compelling

2   circumstances, if there are any, have to be decided within the

3   construct of is this an undue prejudice to the estate.

4        Now, *Winn-Dixie*, other cases, talk about how you could

5   have a plan confirmed in a major case, and all of a sudden a

6   post-confirmation change of claim that would undo the plan.

7   That's a compelling circumstance, but that's also -- you don't

8   need to use the term compelling circumstance, because *Kolstad*

9   would say, I'm not allowing that because of the prejudice to

10  the estate, to the process, et cetera.

11       Now, so what we have here, and all I'm telling the Court

12  is there is no trigger by confirmation.  Confirmation is a

13  factor that goes into your discretion, but your discretion is

14  that you need to find undue prejudice.  And the prejudice

15  here, we say, can't fit in *Winn-Dixie*.  It can't fit in

16  another case.  It can't fit in Judge Olack case where, at the

17  end of a Chapter 13 plan, where a hundred percent of the

18  claims were paid as filed, one creditor files an amended claim

19  right before the case is closed and says, by the way, you owe

20  me another amount equal to the amount you already paid, which

21  the debtor can't do because the plan is over with, the plan

22  complied with everything, and Judge Olack says, that is

23  prejudice.

24       So the compelling circumstances would have to be looked at

25  if we're dealing with post-confirmation on whether or not

1  allowing this amendment would in any way, shape, or form undo

2  the plan.  In any way, shape, or form would undo the bargain

3  that the creditors have.

4  We're talking about a 1.5 to 1.9 percent general unsecured

5  claim that right now we don't even know if it can ever be

6  allowed because there's an avoidance action pending against

7  it.

8  I will agree, I will agree that while there's no rule

9  about -- while the general rule is that legal fees and

10  litigating is not precedential, is not prejudicial, I would

11  agree with counsel that this Court is not supposed to allow

12  frivolous amendment.  I would agree with that.  I just don't

13  think we have a frivolous amendment here.

14  And so I'm not going to say, Judge, I think you ought to

15  allow an amendment, though frivolous, because all they got to

16  do is litigate about that.  I know your time is too important

17  to worry about frivolous amendment.  We wouldn't have filed

18  this if we thought it was a frivolous amendment.  If we're

19  wrong, we're wrong.

20  I do agree that prejudice in legal fees and expenses, if

21  it is facing a frivolous something-or-other, would be

22  prejudice, because you're not supposed to litigate frivolous

23  stuff.  We agree with that.

24  We don't have a frivolous thing because our example is not

25  his example.  His example is a third party usurping a

1  corporate opportunity and the corporation getting a damage

2  claim for the damages for that opportunity.  The corporation

3  would have had to pay the $1 million anyway, so the

4  corporation only gets a million bucks.  Not the same thing as

5  I pay a million bucks for a bad thing that might be worth

6  three and I have to give up the $3 million thing but I get my

7  million dollars back.

8      This is a simple question for Your Honor.  Is the fact

9  that -- and we don't hear this from the Trustee.  We don't

10  hear that the settlement was designed to implement the

11  arbitration award provisions, and there are numbers in there

12  in the marked partial final that's referred to in the footnote

13  that we pointed to Your Honor.  That's where we came up with

14  our numbers.

15      The arbitration panel said, we're not just going to let

16  you have all this.  Here is the way we're going to do it.  We

17  are going to do this net what not the third party paid, that's

18  not your measure of damages, but you are going to get credit

19  for your purchase price.

20      We say that, under the participation interests, the same

21  ones that are out there, the same ones that have been out

22  there, there is a basis for a conclusion that HCMLP got in the

23  form of -- you don't have to say credit.  If they say net of,

24  that's a credit.

25      If -- that is considered -- we think that's considered

1  proceeds upon disposition of the interests.  The

2  extinguishment, the cancellation, is certainly a disposition,

3  and HCMLP got its purchase price back through a less -- less

4  the purchase price, which is nothing more than saying that

5  it's a credit given for the purchase price.

6      So we don't think it's -- we don't think that it's a

7  frivolous thing, but we do agree that if -- we're not trying

8  to traffic in frivolous things, but we agree that if it's a

9  frivolous pleading we're asking Your Honor to accept, that

10  whatever Mr. Loigman would have to expend dealing with that

11  frivolous pleading, we agree that we don't -- we think that

12  that's prejudicial, because I don't want to be in the same

13  place of having a court tell me I have to litigate against a

14  frivolous anything.

15          THE COURT:  Okay.  I'm going to take a 15-minute

16  break and come back after I've collected my thoughts and give

17  you a ruling.  All right.  Thank you.

18          MR. PHILLIPS:  Thank you, Your Honor.

19          MR. LOIGMAN:  Thank you.

20          THE CLERK:  All rise.

21    (A recess ensued from 4:13 p.m. until 4:36 p.m.)

22          THE CLERK:  All rise.

23          THE COURT:  All right.  Please be seated.  We're back

24  on the record in the Highland matter before the Court today.

25  The Court has been deliberating, and this will be the ruling

1  of the Court.

2      First, this is a core proceeding.  The Court has

3  bankruptcy subject matter jurisdiction in this contested

4  matter under 28 U.S.C. Section 1334, and this is a core

5  proceeding under 28 U.S.C. § 157(b).

6      Based on the evidence and argument today, the Court will

7  deny the motion to ratify.  So, specifically, the Court is

8  ruling that Proof of Claim No. 254 of CLO Holdco will not be

9  allowed as a viable proof of claim.

10      Now, as I alluded to, this is an odd procedural posture

11  before the Court.  Rule 15 of the Federal Rules of Civil

12  Procedure does not apply in a contested matter, absent a

13  specific order by the Bankruptcy Court, of which there is none

14  here.  And the Court does not have a motion to file a late

15  proof of claim before it, so this is not a Rule 9006 question,

16  where the U.S. Supreme Court of *Pioneer Investments* case would

17  govern and provide the legal standard.

18      Rather, this is a posture where we have, very late in the

19  case, an amendment to a proof of claim.  Actually, a second

20  amendment.  And the Court has discretion, I believe, whether

21  to allow or disallow such a late amendment of a proof of

22  claim.

23      The Fifth Circuit *Kolstad* opinion, which has been

24  discussed a lot today here, is indeed of relevance, although

25  it's factually somewhat different.  In exercising my

1    discretion here, the timing matters greatly.  The timeline

2    matters greatly.

3        And it's not just the post-confirmation timing, although I

4    do agree with the late Judge Mike Lynn and Judge Easterbrook

5    and the Sixth Circuit in the *Winn-Dixie* case that the

6    circumstances ought to be compelling post-confirmation to

7    permit amendments to proofs of claim.  But the timing here,

8    the delay, is all very significant, and it's more than just

9    we're at a post-confirmation point in time.

10        If you look at the timeline, the original Proof of Claim

11   No. 133 in the amount of approximately $11 million was filed

12   April 8, 2020.  Right on the bar date.  Then CLO Holdco's

13   Amended Proof of Claim No. 198, amending it down to zero, was

14   filed six months later, on October 21, 2020, right after the

15   Court approved the Crusader/Redeemer Committee compromise and

16   settlement.

17        Then, on January 4, 2022, CLO Holdco amended its proof of

18   claim again, Proof of Claim No. 198, and of course this time

19   the proof of claim was set in an amount ranging from about

20   $3.7 million to $5.7 million.  And, again, one year and nine

21   months after the bar date in the case, after the original

22   proof of claim was filed by CLO Holdco, and ten months after

23   confirmation.

24        So that delay is very, very significant.  A long, long

25   delay.

1       Notably to me, I did not have any witness testimony today

2   that might have persuaded me there were compelling reasons for

3   the delay and what I referred to informally as the whipsaw.

4   $11 million.  No, zero.  No, $3 to $5 million.

5       So, deadlines matter in bankruptcy, and I consider this a

6   somewhat different situation than the *Kolstad* opinion, where

7   the IRS came in before confirmation.  It was ten months late,

8   after the bar date, or the debtor's proof of claim filed on

9   the IRS's behalf.  That's a long time, but not nearly the

10  delay we have here, and it was before confirmation.

11      In further exercising my discretion, I also am persuaded

12  that CLO Holdco has not merely delayed for a very large amount

13  of time in having filed this amended -- second amended proof

14  of claim, but CLO Holdco has, with its statements on the

15  record in August 2021, you know, we have a zero proof of

16  claim.  I'll withdraw it if I need to, but we don't have a

17  proof of claim, Ms. Newman.  With that, with the emails of

18  prior counsel, CLO Holdco has stepped at least almost in the

19  lane of waiver and estoppel, if not entirely into the lane.

20  That is another fact weighing heavy on the Court's mind in

21  exercising its discretion.  It feels darn close to waiver and

22  estoppel, if not exactly precisely there.

23      Next, in exercising my discretion, it frankly feels some,

24  like, gamesmanship occurred here in the past with the zero

25  proof of claim versus just withdrawing the proof of claim.  It

1  doesn't sit well with me.  As I alluded to, I can only

2  speculate what might have been going on there.  But it has the

3  taint, a little bit, of gamesmanship.

4      Finally, I do think it would be an exercise in futility to

5  allow the amendment because I do think -- I'll use the word of

6  the Trustee's counsel -- it's a creative argument, maybe, but

7  I think frivolous at the end of the day, the theory of CLO

8  Holdco now that Debtor got a credit here in the Crusader-

9  Redeemer settlement, thereby creating proceeds, which thereby

10  would entitle CLO Holdco to a claim because of its

11  participation interests and tracking interests.  I just, I

12  think this is frivolous.

13      Again, this wasn't a hearing on the merits, but I read the

14  exhibits, I read the documents, and it seems pretty clear to

15  me that the Debtor's interest in the Crusader Funds was

16  canceled as part of the 9019 settlement with the Crusader/

17  Redeemer Fund, and that means CLO Holdco's participation and

18  tracking interests were canceled.

19      I further find the estate would be prejudiced if it had to

20  litigate this what I consider frivolous theory so late in the

21  case.  So the motion is denied.

22      All right.  I'm going to ask counsel for the Litigating

23  Trustee, Mr. Loigman, would you upload an order that is

24  consistent with the Court's ruling?  Actually, we need an

25  order on the motion to ratify as well as, I guess, an order

1   sustaining the Trustee's objection to the zero dollar amount

2   Claim No. 198.

3       Any questions?

4           MR. LOIGMAN:  Your Honor, just one question on behalf

5   of the Litigation Trustee, to make sure I understood the last

6   part of what your ruling was.  So the order can provide, then,

7   that the claim is expunged, as requested in our motion to

8   disallow the claim.  Is that correct?

9           THE COURT:  That's correct.  That's correct.

10          MR. LOIGMAN:  Okay.

11          THE COURT:  Okay.  All right.  Thank you.  We're

12  adjourned.

13          MR. PHILLIPS:  I have a -- I have a -- Your Honor,

14  one -- one question.  Would the order simply be for oral

15  reasons assigned?  Is that -- I'm just wondering what kind of

16  order I'm going to be reviewing.

17          THE COURT:  All right.

18          MR. PHILLIPS:  For oral reasons assigned, --

19          THE COURT:  Well, I --

20          MR. PHILLIPS:  -- A, B, C?

21          THE COURT:  I am -- let's talk about that.  I'm fine

22  either way.  I would be perfectly fine with an order that is

23  short and cross-references my oral ruling.  And, you know, you

24  could even attach a transcript.

25          MR. PHILLIPS:  That's fine.

1           THE COURT:  But I'm not insisting on that.  I know

2  this is a case where there is always, always an appeal.  And

3  so I certainly, to use an overused term today, reserve the

4  right to supplement my oral ruling in a more detailed order.

5       So why don't we just talk about this right now, Mr.

6  Loigman.  I mean, are you -- what do you propose doing?

7  Because if you want a lengthy order, I'll make you run it by

8  Mr. Phillips before you electronically submit it.

9           MR. LOIGMAN:  Right.  I mean, what I would propose,

10  Your Honor, is to do essentially what you have suggested,

11  which is to make your oral ruling today the basis for the

12  order.  In fact, attach the ruling to the order --

13           THE COURT:  Okay.

14           MR. LOIGMAN:  -- so it gives it the effect, the

15  order, what you said.  And I think that is probably the best

16  way to capture what the Court's intent is.

17           THE COURT:  Okay.

18           MR. PHILLIPS:  That's fine with us.  I just -- I was

19  just asking purely a question of what I was going to get.

20           THE COURT:  Okay.

21           MR. PHILLIPS:  I think that's fine, and we concur in

22  that process.

23           THE COURT:  Okay.

24           MR. LOIGMAN:  Right.  I think -- I think --

25           MR. PHILLIPS:  And we also -- we also agree that,

69

1  given the Court's ruling, the proper secondary ruling would be

2  that the claim should be -- that the Trustee's relief should

3  coincide with the denial of our motion.

4          THE COURT:  Okay.

5          MR. PHILLIPS:  Whether or not we appeal is another

6  thing, but I think we ought to have one order.  That's my

7  thought on that.

8          MR. LOIGMAN:  That's fine as well.

9       And the one thing I'll add to this, Your Honor, as Your

10 Honor pointed out correctly, I believe, that this case does

11 tend to be one that is litigious and you never know if there's

12 going to be an appeal of anything.  So we will be very

13 specific in pointing to what Your Honor has said in the

14 transcript and what the results are of it.  So while the

15 transcript will then become part of the order, I think we will

16 be very precise in pointing to the parts and what the holdings

17 are.

18         THE COURT:  Okay.

19         MR. LOIGMAN:  So we'll run that by Mr. Phillips, of

20 course.

21         MR. PHILLIPS:  Sure.

22         THE COURT:  Okay.  I'll be on the lookout for the

23 order when it is submitted.

24     Thank you.  We're adjourned.

25         THE CLERK:  All rise.

1    MR. PHILLIPS:  Thank you, Your Honor.

2    (Proceedings concluded at 4:50 p.m.)

3    --oOo--

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    CERTIFICATE

21    I certify that the foregoing is a correct transcript from
the electronic sound recording of the proceedings in the
22    above-entitled matter.

23    **/s/ Kathy Rehling**                    **08/06/2022**

24    _____        _____

25    Kathy Rehling, CETD-444                      Date
Certified Electronic Court Transcriber

71

INDEX

PROCEEDINGS                                                    3

OPENING STATEMENTS

- By Mr. Phillips                                             13
- By Mr. Loigman                                             40

WITNESSES

-none-

EXHIBITS

CLO Holdco, Ltd.'s Exhibits 1 through 11        Received 14

RULINGS                                                      62

END OF PROCEEDINGS                                           70

INDEX                                                        71