CRAWFORD, WISHNEW & LANG PLLC
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Movants*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Debtor. | |

**JAMES DONDERO, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, and NEXPOINT REAL ESTATE PARTNERS, LLC, F/K/A HCRE PARTNERS, LLC, A DELAWARE LIMITED LIABILITY COMPANY'S AMENDED MOTION FOR FINAL APPEALABLE ORDER AND SUPPLEMENT TO MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455 AND BRIEF IN SUPPORT**

Pursuant to 28 U.S.C. § 455 and FEDERAL RULE OF BANKRUPTCY PROCEDURE 5004, Defendants James Dondero ("Mr. Dondero"), Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware limited liability company (collectively the "Affected Parties") (Mr. Dondero and the Affected Parties are collectively referred to herein as "Movants") file this *Amended Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455* and *Brief in Support* and, in support thereof, would respectfully show the Court as follows:

1. Movants previously sought to recuse the Presiding Judge (hereinafter, the "Court") in this bankruptcy proceeding (the "Bankruptcy") (the "Original Recusal Motion").[1]

2. As detailed in the Original Recusal Motion, 28 U.S.C. § 455 requires a judge to be recused if the judge "has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding," or when the court's "impartiality might reasonably be questioned."[2] This is true, even where the judge does not actually have personal bias or prejudice.[3] The provisions of section 455 afford separate, overlapping grounds for recusal.[4]

3. "[Recusal] claims are fact-driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by a comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue."[5] The test for recusal is not whether the judge believes he or she is capable of impartiality or whether the judge possesses actual bias (or knows of grounds requiring recusal).[6] Instead, the test is whether the "'average person on the street who knows all the relevant facts of a case'" **might reasonably question** the judge's impartiality.[7] As Congress recognized when enacting section 455, litigants "ought not have to face a judge where there is a

---

[1] The Original Recusal Motion and Brief in Support (*see* Bankr. Dkt. No. 2060-2061), along with all allegations and arguments set forth therein, as well as all evidence referenced therein and attached thereto via Movants' Appendix (*see* Bankr. Dkt. No. 2062), are incorporated by reference into this Supplement as if fully set forth herein and attached hereto. References to **Exs. 1-30** and App'x. 0001-2719 refer to the exhibits included in the Appendix to the Original Recusal Motion.

[2] 28 U.S.C. § 455(a)-(b)(1).

[3] *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 850 (2001); *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003).

[4] *Andrade*, 338 F.3d at 454.

[5] Bankr. Dkt. No. 2083 at 6.

[6] *See Burke v. Regolado*, 935 F.3d 960, 1054 (10th Cir. 2019) (citations omitted); *Liljeberg*, 486 U.S. at 805.

[7] *In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996).

reasonable question of impartiality."[8] At its core, this statutory provision was "designed to promote public confidence in the impartiality of the judicial process."[9]

4.      Importantly, litigants are entitled to a full and fair opportunity to make their case in an impartial forum—regardless of their history with that forum.[10] "Fundamental to the judiciary is the public's confidence in the impartiality of [its] judges and the proceedings over which they preside."[11] Thus, "justice must satisfy the appearance of justice."[12] For this reason, the Fifth Circuit has held that "[i]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal."[13] Although "[t]he judge can himself decide whether the claim asserted is within § 455, if it is, then a disinterested judge must decide what the facts are."[14]

5.      Notably, while "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," the Supreme Court has held that predispositions developed during the course of a trial can suffice to demonstrate the requisite bias or prejudice if the opinions "***reveal such a high degree of favoritism or antagonism as to make fair judgment impossible***."[15]

6.      Here, the Court denied the Original Recusal Motion (the "Original Recusal Order"). On appeal of the Original Recusal Order to the Northern District of Texas, Judge Kinkeade dismissed the appeal, holding that the Original Recusal Order was non-final and non-appealable.[16] In doing

---

[8] H. Rep. No. 1453, 93rd Cong., 2d Sess. 1 (1974), reprinted in 1974 U.S. Code Cong. & Admin. News 6351, 6355.

[9] *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988) (quoting H.R. Rep. No. 1453); *Liljeberg*, 486 U.S. at 859-60.

[10] *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 893 (5th Cir. 2021) (citing *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995)).

[11] *Id.*

[12] *Id.* (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)).

[13] *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997).

[14] *In re Parson*, No. 15-30080-BJH, 2018 WL 1452295, at *4 (Bankr. N.D. Tex. Mar. 22, 2018) (citing *In Levitt v. University of Texas*, 847 F.2d 221, 226 (5th Cir. 1988)).

[15] *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citation omitted) (emphasis added).

[16] *See* **Ex. 34** (App'x. 2829-2842), Dkt. No. 39 in Cause No. 3:21-cv-00879-K, the Memorandum Opinion and Order,

so, Judge Kinkeade pointed to language in the Court's Original Recusal Order in which the Court expressly "reserve[d] the right to amend or supplement" its ruling.[17] Consequently, Movants have never had their arguments for recusal substantively considered by any appellate court.

7. Obtaining final appellate review of the Original Recusal Motion and Original Recusal Order is important, not only because this Court continues to preside over the underlying Bankruptcy proceedings, but also because there is a new, significant proceeding (that is in its nascent stages), where it is imperative for Movants to get fair and unbiased treatment. In particular, since the Court's Original Recusal Order, Marc S. Kirschner, as Trustee for the Litigation Sub-Trust ("Mr. Kirschner"), has filed a voluminous adversary proceeding against Mr. Dondero and several of the Movants, in which Mr. Kirschner seeks hundreds of millions of dollars of damages (the "Kirschner Litigation").[18] And the Court's appearance of bias has not dissipated in the wake of the Original Recusal Motion or Original Recusal Order.

8. Therefore, to preserve their record for appeal and to ensure that all potential grounds for recusal may be considered by an appellate court, Movants hereby supplement the Original Recusal Motion with the following additional examples of actions taken and statements made by the Court (several of which occurred following the filing of the Original Recusal Motion) to further support the relief requested in the Original Recusal Motion:

- On June 10, 2021, after Movants moved to withdraw the reference, the Court *sua sponte* recommended that Debtor file fraudulent transfer claims, suggesting that those might affect the reference from being withdrawn.[19]

---

a true and correct courtesy copy of which is included in the Appendix to this Supplement.

[17] *Id.* at 2 (App'x. 2830); *see also* Bankr. Dkt. No. 2083 at 10-11.

[18] Many of the defendants in the Kirschner Litigation moved to withdraw the reference for the adversary proceeding. This Court issued a Report and Recommendation in which it agreed the reference should be withdrawn for trial but recommended that the Court retain the case for all pre-trial purposes. The moving defendants have objected to the Court's Report and Recommendation, and those objections remain pending before the District Court.

[19] **Ex. 31** (App'x. 2720-2810), June 10, 2021 Hearing Transcript, at 81:5-16 (App'x. 2804) and 83:1-12 (App'x. 2802), a true and correct copy of which is included in the Appendix to this Supplement.

4

- The Court refused to grant The Dugaboy Investment Trust's motion to compel Debtor to file the "periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or debtor . . . in which the estate holds a substantial or controlling interest" as required by Fed. R. Bankr. P. 2015.3(a).[20] The Court raised concerns that the statutorily required information might be used to "cobble together a new adversary alleging mismanagement" against Debtor[21] and did not grant the motion because, among other things, it would be unduly burdensome.[22]

- The Court entered a *sua sponte* order questioning Movants' standing to object to various settlements and actions involved in the handling of the Estate.[23] The Court ordered any party it perceives to be related to Mr. Dondero (in some instances, despite evidence that no such relationship exists) to disclose: (1) its ownership structure, (2) Mr. Dondero's ownership interest, (3) its managers, officers, and directors, and (4) the basis for the entity's assertion of its status as a creditor with standing.[24]

- The Court ruled that Highland Capital Management, L.P. ("HCMLP") was not required to comply with 11 U.S.C. § 363, even when the transaction at issue involved the sale of a subsidiary. Concurrently, the Court denied Mr. Dondero's request for notice of major, outside-the-ordinary course sales of assets by HCMLP.[25]

- The Court failed to require any reporting by HCMLP or its management during the course of the Bankruptcy, effectively obfuscating the public's ability to ascertain the value of the Estate and fatally undermining public accountability.[26]

- The Court enjoined non-parties from communicating with Mr. Dondero. When the non-parties' counsel later objected to this order as improper, the Court enjoined Mr. Dondero from communicating with non-parties in direct violation of his First

---

[20] *Id.* at 49:12-14 (App'x. 2768).

[21] *Id.* at 46:11-13 (App'x. 2765).

[22] *Id.* at 49:12-51:3 (App'x. 2768-2770).

[23] *See* **Ex. 33** (App'x. 2816-2828), the June 17, 2021 Order, at p. 1 (App'x. 2816), a true and correct copy of which is included in the Appendix to this Supplement ("This Order is issued by the court *sua sponte* pursuant to Section 105 of the Bankruptcy Code and the court's inherent ability to efficiently monitor its docket and evaluate the standing of parties who ask for relief in the above referenced case. More specifically, the Order is directed at clarifying the party-in-interest status or standing of numerous parties who are regularly filing pleadings in the above-referenced 20-month-old Chapter 11 bankruptcy case."); *see also* **Ex. 38** (App'x. 3045-3049), January 14, 2021 Hearing Transcript at 22:24-24:12 (App'x. 3046-3048), a true and correct copy of which is included in the Appendix to this Supplement.

[24] **Ex. 31** (App'x. 2720-2810), June 10, 2021 Hearing Transcript and **Ex. 33** (App'x. 2816-2828), the June 17, 2021 Order at 12-13 (App'x. 2827-2828).

[25] **Ex. 32** (App'x. 2811-2815), Dec. 10, 2020 Hearing Transcript at 36:1-37:21 (App'x. 2813-2814) and 57:1-15 (App'x. 2815), a true and correct copy of which is included in the Appendix to this Supplement.

[26] **Ex. 26** (App'x. 2441-2697), Feb. 3, 2021 Hearing Transcript at 49:5-24 (App'x. 2489); *see also* Bankr. Dkt. No. 2812.

Amendment rights.[27]

- The Court held Mr. Dondero in contempt for actions taken in the Bankruptcy by CLO Holdco, while at the same time acknowledging that Mr. Dondero is not an agent of CLO Holdco.[28] The Court justified its order by generically commenting that Mr. Dondero "sparked the fire."[29] Despite the fact that the invoices submitted by HCMLP's counsel show that it only incurred $38,796.50 in connection with the civil contempt motion, the Court ordered the DAF, CLO Holdco, Sbaiti & Co. (including Mazin Sbaiti and Jonathan Bridges individually), Mark Patrick, and Mr. Dondero to pay ***$239,655*** to HCMLP as a result of their contempt.[30] Worse still, the Court tacked on an additional monetary sanction of $100,000 to be paid by any individual or entity that chose to appeal the Court's sanction order.[31]

- The Court approved a liquidating plan of reorganization even though: (1) the actual evidence demonstrates that HCMLP is and always has been solvent; (2) the only reason for HCMLP's bankruptcy filing was to restructure a single judgment debt; and (3) Mr. Dondero made multiple offers in the Bankruptcy to settle the Estate by paying ***100% to creditors***.

- The Court ordered that Mr. Dondero and his sister Nancy Dondero (but no other party) attend all hearings in the Bankruptcy, regardless of whether their presence is needed or if they are taking a position on the matter at issue in the hearing.[32]

- The Court ordered that a gatekeeping injunction would apply even to cases over which the Court does not have jurisdiction and over which the Court would not preside, based on the Court's conclusion that Mr. Dondero is a "vexatious litigant" (and despite its earlier decision not to make such a finding).[33]

- The Court has continually—and incorrectly—insisted that various entities represented by independent counsel are "controlled by" by Mr. Dondero, going so far as to discourage these entities from separately participating in the litigation and suggesting that they should prove to the Court that they require their own counsel.[34]

---

[27] **Ex. 8** (App'x. 0785-0989), Jan. 8, 2021 Hearing Transcript, *e.g.*, at 164:3-195:12 (App'x. 0948-0979).

[28] Bankr. Dkt. 2660 at 20 n.71.

[29] *Id.* at 21.

[30] *See id.* at 28-30.

[31] *Id.* at 30.

[32] **Ex. 39** (App'x. 3050-3054), May 20, 2021 Hearing Transcript at 20:19-21:14 (App'x. 3051-3052), a true and correct copy of which is included in the Appendix to this Supplement.

[33] **Ex. 41** (App'x. 3068-3070), June 25, 2021 Hearing Transcript at 109 (App'x. 3069), a true and correct copy of which is included in the Appendix to this Supplement.

[34] **Ex. 40** (App'x. 3055-3067), May 10, 2021 Hearing Transcript at 44:12-54:10 (App'x. 3056-3067), a true and correct copy of which is a included in the Appendix to this Supplement ("As you all know, there are ***so many law firms, so***

- When Mr. Dondero moved to compel Debtor's deposition testimony, the Court deemed that there was an ulterior motive of "antagonism" behind Mr. Dondero's request.[35] The statement illustrates how the Court views routine litigation steps by Mr. Dondero, like discovery motions, not as a normal part of defending an adversary proceeding, but rather, as a nefarious "antagonistic move."

- In its latest ruling from the bench, in response to allegations in a separate Texas state-court lawsuit by Mr. Ellington (HCMLP's former General Counsel and a co-defendant with Mr. Dondero in the Kirscher Litigation), in which Mr. Ellington alleges that he and his family had been repeatedly stalked by former HCMLP employee Pat Daugherty, the Court took an unsubstantiated position that stalking statutes do not protect men: "Now, I have read the lawsuit and I have read that Mr. Ellington accuses Mr. Daugherty of driving by his father's house, driving by his sister's house, driving by his office, 143 sightings, he's taking pictures. If – I don't even know what to say except this is embarrassing. One grown man accusing another grown man of stalking. Okay? A statute, by the way, that was designed to protect, you know, ex-wives, girlfriends, battered women, from abusive men. You know, gender doesn't matter, but wow. It's just – I don't know what to say except people should be embarrassed, so that's what I'm going to say."[36] The statutes invoked in that lawsuit do not contain any exclusion based on gender and protect men who are being stalked as equally as women.

9. As set forth in the Original Recusal Motion, "a fair trial in a fair tribunal is a basic requirement of due process."[37] The Court's negative opinions of Mr. Dondero reveal a high

---

*many lawyers involved* now that are basically singing the same tune at a lot of these hearings as far as objections, me too, me too, me too …. ***But I do very much have the impression, Mr. Dondero, that all roads lead back to you*** …. And I am leaning towards requiring information to be filed of who owns what, who are the stakeholders. That'll help me understand, is it necessary to have this entity filing a separate objection or motion from this other entity or not? …. Well, ***if you don't figure out a way to rein it in, then I'm just going to have to get that list of who are the stakeholders in these entities***, under oath, because I don't understand it. ***I don't understand why we need these many lawyers filing position papers.***"); Adv. Dkt. No. 151 at 5 ("The causes of action all arise from pre-confirmation conduct allegedly perpetrated by Highland's founder James Dondero and individuals and entities affiliated with him, which purportedly resulted in hundreds of millions of dollars in damages to Highland. ***It appears that all of the Defendants are owned, controlled, or related to Mr. Dondero, although some of the Defendants dispute this characterization***.").

[35] **Ex. 39** (App'x. 3050-3054), May 20, 2021 Hearing Transcript at 34:3-9 (App'x. 3053) ("I mean I want to stress that this comes against a backdrop of — well, it seems like some antagonism, to say the least, on the part of Mr. Dondero where Mr. Seery's concerned. ***It seems like it's always a fight with Mr. Seery***. And you say, well, we didn't handpick him as the 30(b)(6) witness, but, you know, the motion to compel names him by name. It just — ***it feels like another antagonistic move***.") (emphasis added).

[36] **Ex. 42** (App'x. 3071-3073), Mar. 1, 2022 Hearing Transcript at 83:12-23 (App'x. 3072), a true and correct copy of which is included in the Appendix to this Supplement.

[37] *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868, 877 (2009) (internal quotation marks and citation omitted); *see also Johnson v. Mississippi*, 403 U.S. 212, 216 (1971) (per curiam) ("Trial before 'an unbiased judge' is essential to due process.") (quoting *Bloom v. Illinois*, 391 U.S. 194, 205 (1968)); *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 893 (5th Cir. 2021) (citing *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995)).

degree of antagonism, which makes it nearly impossible for Mr. Dondero and the Affected Parties to fully defend themselves and assert their rights in this forum, including against claims filed against Mr. Dondero and several of the Movants in the Kirschner Litigation. At a minimum, that is the perception that has been created.[38]

10.     The Movants thus file this *Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455* and *Brief in Support*. In doing so, Movants respectfully request the Court, after considering the Original Recusal Motion and this Supplement thereto, enter a final, appealable order on this issue.

Dated: August 26, 2022            Respectfully submitted,

**CRAWFORD, WISHNEW & LANG PLLC**

*/s/ Michael J. Lang*
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Movants*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on August 26, 2022, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

*/s/ Michael J. Lang*
Michael J. Lang

---

[38] *Liteky*, 510 U.S. at 551; *In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996).

8