PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Robert J. Feinstein (NY Bar No. 1767805) *(admitted pro hac vice)*
John A. Morris (NY Bar No. 2405397) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>                   Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |

**MOTION FOR AN ORDER APPROVING HIGHLAND'S ENTRY INTO A
SETTLEMENT AGREEMENT AND AUTHORIZING ACTIONS
<u>CONSISTENT THEREWITH</u>**

---

[1] The last four digits of Highland's taxpayer identification number are 8357. The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

**TO THE HONORABLE STACEY G. C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE:**

Highland Capital Management, L.P., the reorganized debtor ("Highland" or the "Debtor," as applicable) in the above-captioned chapter 11 case (the "Bankruptcy Case"), files this Motion (the "Motion") for entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), substantially in the form attached hereto as **Exhibit A**, approving Highland's entry into a settlement agreement (the "Settlement Agreement")[2] between and among (a) Highland, Highland CDO Opportunity Fund, Ltd. ("CDO Opps"), and Highland CDO Opportunity Master Fund, L.P. ("CDO Fund," and together with Highland and CDO Opps, the "Highland Entities"); (b) UBS Securities LLC and UBS AG London Branch (collectively, the "UBS Parties"); and (c) Sentinel Reinsurance, Ltd. ("Sentinel," and together with the Highland Entities and the UBS Parties, the "Parties"). In support of this Motion,[3] Highland respectfully states as follows:

## INTRODUCTION

1.     By this Motion, Highland requests this Court's approval to enter into the Settlement Agreement.[4] Highland believes the Settlement Agreement represents a significant milestone in this case; it extricates Highland and two of its managed entities, CDO Opps and CDO Fund, from

---

[2] Capitalized terms used herein, but not defined, have the meanings ascribed to such terms in the Settlement Agreement or elsewhere in this Motion, as applicable. A copy of the Settlement Agreement is attached as **Exhibit 1** to the *Declaration of John A. Morris in Support of Motion for Entry of an Order Approving Settlement by and between Highland Capital Management, L.P., UBS Securities LLC, UBS AG London Branch, and Sentinel Reinsurance Ltd. and Authorizing Actions Consistent Therewith* ("Morris Declaration"), filed concurrently herewith.

[3] The facts underlying this Motion and the Parties' entry into the Settlement Agreement were disclosed to this Court at a hearing held on August 8, 2022 in *UBS Securities LLC and UBS AG London Branch v. Highland Capital Management, L.P. (In re Highland Capital Management, L.P.)*, Adv. Proc. No. 21-03020-sgj (Bankr. N.D. Tex. Aug. 8, 2022) (the "August 8 Hearing"). Highland incorporates by reference the evidence introduced at the August 8 Hearing. *See* Adv. Pro. No. 21-03020-sgj, Docket Nos. 176 (Highland's Witness and Exhibit List), 177 (the UBS Parties' Witness and Exhibit List), 179 (the UBS Parties' Amended Witness and Exhibit List), 180 (the UBS Parties' Second Amended Witness and Exhibit List), and 183 (transcript regarding August 8 Hearing).

[4] For the avoidance of doubt, Highland is not seeking this Court's approval or authority to have CDO Fund or CDO Opps enter into the Settlement Agreement.

what could only be an exceedingly expensive, lengthy, acrimonious, and uncertain litigation between the UBS Parties and Sentinel regarding the Transferred Assets and the Insurance Policy that would provide no economic benefit to Highland and its estate even if successful.

2. Although the Highland Entities have a significant interest in the Transferred Assets and the Insurance Policy, the economic benefit therefrom belongs to the UBS Parties due to the sheer size of the Judgment the UBS Parties obtained against CDO Fund (as well as other entities). However, absent the Settlement Agreement, which provides, *inter alia*, mutual and general releases between Sentinel, on the one hand, and the UBS Parties and the Highland Entities, on the other, the Highlands Entities would continue to incur substantial costs with respect to the dispute over the Insurance Policy and Transferred Assets. The Settlement Agreement, which fully and finally resolves the claims between the UBS Parties and Sentinel, thus represents a substantial benefit to Highland: it removes the albatross of litigation from around its neck and allows Highland to focus on implementing its Plan and winding up its estate.

3. Accordingly, Highland believes the Settlement Agreement is in its best interests and the best interests of its estate and respectfully requests that the Court grant this Motion and approve Highland's entry into the Settlement Agreement.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and retained jurisdiction over this matter under the Plan (as defined below). Plan, Art. XI. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 9019.

**RELEVANT BACKGROUND**

I. **Procedural Background**

6. On October 16, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

7. On February 22, 2021, the Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization (as Modified) and (ii) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order")[5] with respect to the *Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1808] (as subsequently modified, the "Plan"). The Plan provided for the orderly monetization of the Debtor's assets. The Plan became effective on August 11, 2021 (the "Effective Date"). *See* Docket No. 2700.

8. Under the Plan, this Court retained jurisdiction to, among other things, approve the settlement of any cause of action, pending prior to or commenced after the Effective Date, under Bankruptcy Rule 9019 or otherwise. *See* Plan, Art. XI.

II. **Background to the UBS Action and the UBS Claims**

9. On February 24, 2009, the UBS Parties filed their first complaint against the Debtor, CDO Fund, and Highland Special Opportunities Holding Company ("SOHC," and together with CDO Fund, the "Funds"). *UBS Secs. LLC, et al. v. Highland Cap. Mgmt., L.P., et al.*, Index No. 650097/2009 (N.Y. Sup. Ct.) (the "2009 Action"). In the 2009 Action, the UBS Parties asserted, among other things, claims relating to the breach of certain warehouse agreements entered into in 2008 among the UBS Parties, the Debtor, and the Funds.

10. On June 28, 2010, UBS filed a new, separate action against the Debtor. *UBS Secs. LLC, et al. v. Highland Cap. Mgmt., L.P.*, Index No. 650752/2010 (N.Y. Sup. Ct.) (the "2010

---

[5] The Confirmation Order was subsequently affirmed, in relevant, part by the United States Court of Appeals for the Fifth Circuit on August 19, 2022. Case No. 21-10449, Document 00516439341 (5th Cir. Aug. 19, 2022).

Action"). In the 2010 Action, UBS asserted claims against the Debtor for fraudulent transfer (actual and constructive) and breach of the implied covenant of good faith and fair dealing. The 2009 Action and 2010 Action (collectively, the "UBS Action") were later consolidated.

11.     The claims asserted in the UBS Action were bifurcated for purposes of trial. Phase I of the trial concluded on July 27, 2018, and, on November 14, 2019, the State Court issued its decision holding that the Funds breached the warehouse agreements and entering judgment against the Funds, in the principal amount of $519,374,149.00 with $520,583,650.44 in prejudgment interest included for an overall judgment of $1,039,957,799.44 as of January 22, 2020, with $128,064.86 in post-judgment interest accruing each day after entry of the judgment on February 10, 2020 (the "Judgment").

12.     The UBS Parties subsequently filed two substantively identical claims in the Debtor's bankruptcy case, Claim Nos. 190 and 191 (the "UBS Claims"), asserting a general unsecured claim in the amount of the Judgment before post-judgment interest, *i.e.* $1,039,957,799.40. The Debtor, among others, objected to the UBS Claims [Docket No. 928].

13.     Ultimately, with the benefit of mediation ordered by this Court [Docket No. 912], the Debtor and the UBS Parties agreed to the terms of a settlement that would have resolved the UBS Claims.

III.    **Discovery of the Insurance Policy and Re-Negotiation of the UBS Settlement**

14.     In late January 2021, prior to confirmation of the Plan and the Effective Date, Highland discovered that in or around August 2017, James Dondero ("Mr. Dondero") and certain of the Debtor's then-employees had surreptitiously transferred all or substantially all of the assets of the Funds, among others, with a purported value of more than $100 million in the aggregate

(the "Transferred Assets"), to Sentinel, a Cayman Islands-domiciled entity ultimately owned and controlled by Mr. Dondero and Scott Ellington.[6]

15. The Transferred Assets were ostensibly used to pay the $25 million premium on an "after the event" insurance policy issued by Sentinel to the Funds and Highland CDO Holding Company (collectively, the "Insureds") with policy limits of approximately $100 million (the "Insurance Policy"). The Insurance Policy was purportedly written to insure against the costs of defending the UBS Action and to pay any adverse judgments entered in the UBS Action. Despite the purported purpose of the Insurance Policy, neither Mr. Dondero nor any of the Debtor's employees who knew about the Insurance Policy ever disclosed it to the Independent Board or its advisors or caused any of the Highland Entities to make a claim under the Insurance Policy, even after the Judgment was entered.[7]

16. In February 2021, prior to the entry of an order confirming the Plan, the Independent Board disclosed the Insurance Policy and Transferred Assets to the UBS Parties, and the UBS Parties sought to reopen the settlement discussions.

17. Relatedly, on March 31, 2021, the UBS Parties filed a complaint and a motion seeking a temporary restraining order preventing Highland from making, or allowing funds under its management or control (including, but not limited to, Highland Multi Strategy Credit Fund, L.P., and CDO Fund) to make any payments or transfers, to Sentinel or any of its affiliates or transferees consisting of, resulting from, or related to the Transferred Assets. Adv. Pro. No. 21-

---

[6] Two of the Transferred Assets were a $2.39 million promissory note from The Dugaboy Investment Trust and a $32.8 million promissory note from CLO Holdco Ltd. As discussed at the August 8 Hearing, those notes, among other assets, were secretly transferred postpetition at the direction of Mr. DiOrio from Sentinel to an entity called Sebastian Clarke Ltd. because they were allegedly "worthless." On information and belief, Sebastian Clarke Ltd. is a Cayman Island entity owned and controlled by Mr. Dondero and Mr. Ellington. The Current Sentinel Directors were able to facilitate the return of these assets to Sentinel.

[7] As detailed at the August 8 Hearing, it appears clear there was a coordinated postpetition effort on the part of certain of the Debtor's employees to conceal the Insurance Policy and the Transferred Assets and prevent Highland from using that information and the value of those assets to resolve the UBS Claims.

03020-sgj, Docket Nos. 3, 4.[8] This Court granted the request for a temporary restraining order on April 9, 2021. *Id.*, Docket No. 21. On August 23, 2022, this Court docketed its order entering a permanent injunction with respect to the Transferred Assets. *Id.*, Docket No. 185 (the "Injunction"). The Injunction, however, allows Highland to transfer the Transferred Assets pursuant to "an agreement between Highland and UBS as to the disposition of the Transferred Assets." *Id.*, ¶ 3(ii). The Settlement Agreement represents such an agreement and, if approved by this Court, Highland will transfer certain of the Transferred Assets or the proceeds thereof to the UBS Parties as required by the Settlement Agreement.

18. In addition, following a lengthy re-negotiation, the UBS Parties and Highland, among others, entered into a settlement agreement, which was approved by this Court on May 27, 2021 [Docket No. 2389] (the "UBS Order"). Under the terms of the UBS Order, Highland is effectively required to assist the UBS Parties in pursuing the Transferred Assets and the Insurance Policy and to turn over any proceeds recovered under the Insurance Policy to the UBS Parties. The UBS Order is being appealed by The Dugaboy Investment Trust, Mr. Dondero's family trust.

IV. **Appointment of the Current Sentinel Directors and Negotiation of the Settlement Agreement**

19. In March 2021, prior to the Effective Date, Highland caused the CDO Fund to make a demand on the Insurance Policy.[9] Following that demand, Highland and CDO Fund were informed that Sentinel's directors, including former Debtor employee Matthew DiOrio, had resigned *en masse* and that new directors—Casey McDonald, Wade Kenny, and JS de Jager—had been appointed (the "Current Sentinel Directors"). Upon information and belief and based on

---

[8] For the avoidance of doubt, while the Transferred Assets were to be transferred to Sentinel, certain of those transfers failed for an unknown reason and certain of the Transferred Assets were never re-registered in Sentinel's name.

[9] Highland does not control SOHC or Highland CDO Holding Company and could not direct them to make a claim on the Insurance Policy.

representations from the Current Sentinel Directors, the Current Sentinel Directors have no affiliation with Mr. Dondero, Mr. Ellington, or the Debtor.

20. Upon information and belief and based on representations from the Current Sentinel Directors, the Current Sentinel Directors undertook substantial due diligence following their appointment to familiarize themselves with the Insurance Policy and Sentinel. CDO Fund demanded payment on the Insurance Policy in March 2021 and threatened suit if payment were not made. The UBS Parties, in turn, threatened suit to recover the Transferred Assets. Ultimately, after months of discussion, the Parties agreed to a day-long mediation conducted by William Wood QC on June 14, 2022. Over the course of that mediation, the Parties negotiated and agreed to the terms that would ultimately form the basis of the Settlement Agreement.

21. The principal terms of the Settlement Agreement are as follows:[10]

- The parties to the Settlement Agreement are (a) the Highland Entities, (b) the UBS Parties, and (c) Sentinel.

- Sentinel will transfer all of the remaining Transferred Assets and their proceeds and certain other non-cash assets to the UBS Parties and/or waive its claim to any of the Transferred Assets currently registered in the name of CDO Fund. Settlement Agreement, §§ 2, 3.

- Sentinel will further transfer $22.5 million in cash to the UBS Parties. Sentinel will retain approximately $5.5 million in cash to fund ongoing business operations. *Id.*, § 2(b).

- The assets transferred to the UBS Parties will be applied to reduce the Judgment dollar-for-dollar first by reducing the post-judgment interest owed, second by reducing the pre-judgment interest owed, and third by reducing the principal. *Id.*, § 4.

- The parties will exchange broad mutual releases, including Sentinel's release of any and all claims against Highland. *Id.*, §5.

- None of the parties are releasing claims against, among others, Sentinel's former directors, direct or indirect parents, ultimate beneficial owners or James Dondero,

---

[10] In the event of any inconsistency between this Motion and the Settlement Agreement, the terms of the Settlement Agreement shall control.

-7-

Scott Ellington, Matthew DiOrio, Jean Paul Sevilla, Mary Kathryn "Katie" Irving (née Lucas), Stephanie Vitiello, and Isaac Leventon. *Id.*[11]

The Settlement Agreement fully and finally resolves all disputes between the parties regarding the Insurance Policy and the Transferred Assets.[12]

## RELIEF REQUESTED

22. By this Motion, Highland requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the Motion, approving Highland's entry into the Settlement Agreement, and authorizing Highland and its agents to take all actions necessary or desirable to implement the Settlement Agreement without the need for further notice or approval by the Court. Highland seeks approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019.

## BASIS FOR RELIEF REQUESTED

23. Bankruptcy Rule 9019 provides that "[o]n motion … and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). Settlements are favored in the bankruptcy context to "minimize litigation and expedite the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). The approval of a settlement is within the "sound discretion" of the Court. *In re Jackson Brewing Co.*, 624 F.2d 599, 603 (5th Cir. 1980).

24. Pursuant to Bankruptcy Rule 9019(a), the Court may approve a settlement if it is fair, reasonable, and in the best interests of the estate. *See, e.g., Official Comm. of Unsecured Creditors v. Moeller (In re Age Refin., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). A settlement should be

---

[11] For the avoidance of doubt, the releases do not apply to any claims asserted in the *Amended Complaint and Objection to Claims*, Adv. Proc. No. 21-03076-sgj, Docket No. 158 (Bankr. N.D. Tex. May 19, 2022).

[12] The Settlement Agreement will become effective the date this Court (a) approves Highland's entry into the Settlement Agreement or (b) determines it (i) has no jurisdiction to approve Highland's entry into the Settlement Agreement or (ii) need not approve Highland's entry into the Settlement Agreement. Settlement Agreement, § 1(c).

-8-

approved unless it falls below the lowest point in the range of reasonableness, based on a comparison between the terms of the settlement and the costs and benefits of further litigation. *See, e.g., Jackson Brewing Co.*, 624 F.2d at 602 (court must compare the "terms of the compromise with the likely rewards of litigation"); *Cook v. Waldron*, 2006 U.S. Dist. LEXIS 31411, at *10 (S.D. Tex. April 18, 2006) (court should "canvass the issues" to decide if settlement falls "below the lowest point in the range of reasonableness").

25.  In evaluating a proposed settlement, courts consider (a) the "probability of success in the litigation, with due consideration for the uncertainty in fact and law," (b) the "complexity and likely duration of the litigation and any attendant expense, inconvenience and delay," and (c) "[a]ll other factors bearing on the wisdom of the compromise." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997) (quoting *Jackson Brewing Co.*, 624 F.2d at 602). The "other factors" include "the best interests of the creditors, 'with proper deference to their reasonable views,'" as well as "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'" *Id.* (quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917-18 (5th Cir. 1995)).

26.  There is ample basis to approve Highland's entry into the Settlement Agreement. As set forth at the August 8 Hearing and in the evidence filed in advance of that hearing, the Parties' in-depth investigations and extensive negotiations with respect to the issues resolved by the Settlement Agreement have resulted in a beneficial compromise between Sentinel and the Highland Entities, including Highland.

27.  Further, the UBS Parties have aggressively pursued their own claims and interests in the Bankruptcy Case. The Settlement Agreement brings further closure to that adversarial relationship.

28. Finally, as discussed above, because of the sheer size of the Judgment, the Highland Entities' claims against Sentinel related to the Transferred Assets and the Insurance Policy have only nominal value to the Highland Entities. Under the UBS Order and related settlement, any dollar recovered by Highland or the other Highland Entities would be immediately turned over to the UBS Parties to reduce the Judgment. Moreover, the value of any direct claims Highland may have against Sentinel is uncertain, and Highland has no direct interest in the Transferred Assets or the Insurance Policy.

29. Consequently, there is little apparent benefit to Highland in litigating against Sentinel; there is only downside. Any litigation between the Parties would last years, would be exceedingly expensive, and would distract Highland from its primary purpose: monetizing assets, distributing proceeds to creditors, and winding down its estate. In addition, although Highland believes in the merits of the Highland Entities' claims against Sentinel, there is no guarantee that Highland and/or the Highland Entities would be the prevailing party in that litigation. And even if the Highland Entities prevailed, after what is sure to be a lengthy and expensive process with potential cross-border implications, the UBS Parties would most likely be the ultimate economic beneficiaries.

30. Highland, therefore, believes its entry into the Settlement Agreement is in the best interests of Highland and its estate.[13] Entry into the Settlement Agreement will settle the dispute between the UBS Parties and Sentinel and thereby extricate Highland (and the Highland Entities) from that dispute—a substantial benefit. In consideration for that benefit, Highland would release Sentinel and the Current Sentinel Directors from any claims, if any, that it may have against them,

---

[13] There can be no credible dispute that the Settlement Agreement was the product of good faith, arms-length negotiations between the Highland Entities, the UBS Parties, and Sentinel. The Parties were represented by independent, sophisticated counsel and reached agreement only after (a) extensive negotiations, (b) a full-day mediation with Mr. Wood, and (c) the exchange of numerous draft term sheets and settlement agreements.

and Sentinel and the Current Sentinel Directors would release Highland and the other Highland Entities from any claims they may have, if any. Although those claims may have value on paper, any recovery on those claims would be turned over to the UBS Parties to reduce the Judgment. Accordingly, Highland is receiving a significant benefit under the Settlement Agreement without having to relinquish any significant economic rights or potential recoveries.

31. The Settlement Agreement should be approved as a rational exercise of Highland's business judgment made after due deliberation of the facts and circumstances.

## **NO PRIOR REQUEST**

32. No previous request for the relief sought herein has been made to this Court or any other court.

## **NOTICE**

33. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) Sentinel; (b) the Office of the United States Trustee; (c) the Office of the United States Attorney for the Northern District of Texas; (d) James Dondero; (e) Scott Ellington; (f) Isaac Leventon; (g) Stephanie Vitiello; (h) Mary Kathryn (Katie) Lucas (née Irving); (i) Matthew DiOrio; (j) Jean Paul Sevilla; and (k) parties requesting notice pursuant to Bankruptcy Rule 2002. Highland submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **PRAYER**

**WHEREFORE**, Highland respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the Motion and the relief requested herein, and granting Highland such other and further relief as the Court deems just and proper.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

Dated:  September 1, 2022.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
          rfeinstein@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## Exhibit A

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § § | |

**ORDER APPROVING HIGHLAND'S ENTRY INTO A SETTLEMENT AGREEMENT AND AUTHORIZING ACTIONS CONSISTENT THEREWITH**

This matter having come before the Court on the *Motion for Entry of an Order Approving Highland's Entry into a Settlement Agreement and Authorizing Actions Consistent Therewith* (the "Motion")[2] filed by Highland Capital Management, L.P., the reorganized debtor ("Highland" or the "Debtor") in the above-captioned chapter 11 case; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core

---

[1] The last four digits of Highland's taxpayer identification number are 8357. The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having considered the Motion, the materials submitted in support of the Motion, all responses to the Motion, and the arguments presented by counsel at the hearing on the Motion; and the Court having found that the relief requested in the Motion is in the best interests of Highland's estate, its creditors, and other parties-in-interest, and is supported by sound business reasons and justifications; and the Court having determined that the legal and factual bases set forth in the Motion establish sufficient cause for the relief granted herein; and adequate notice of the Motion having been given; and after due deliberation and good cause appearing therefor, it is hereby **ORDERED** that:

1. The Motion is **GRANTED**.

2. Highland is authorized to enter the Settlement Agreement attached as **Exhibit 1** to the Morris Declaration, and Highland's entry into the Settlement Agreement is approved in all respects pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

3. Highland and its agents are authorized to take any and all actions necessary or desirable to implement the Settlement Agreement without further notice or further Court approval.

4. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

### END OF ORDER ###