# EXHIBIT 1

## SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is entered into as of September 1, 2022, by and among, (i) Highland CDO Opportunity Master Fund, L.P. ("CDO Fund"), Highland Capital Management, L.P. ("HCMLP"), and Highland CDO Opportunity Fund, Ltd. ("CDO Opps" and with CDO Fund and HCMLP, the "Highland Entities"), (ii) UBS Securities LLC and UBS AG London Branch (the "UBS Parties"); and (iii) Sentinel Reinsurance, Ltd. ("Sentinel").

Each of the Highland Entities, UBS Parties, and Sentinel are sometimes referred to herein collectively as the "Parties" and individually as a "Party."

## R E C I T A L S

**WHEREAS**, in 2007, the UBS Parties entered into certain contracts with HCMLP and two funds managed by HCMLP—CDO Fund and Highland Special Opportunities Holding Company ("SOHC," and together with CDO Fund, the "Funds")—related to a securitization transaction (the "Knox Agreement");

**WHEREAS**, the UBS Parties terminated the Knox Agreement and, on February 24, 2009, the UBS Parties filed a complaint in the Supreme Court of the State of New York, County of New York (the "New York State Court") against HCMLP and the Funds, among others, seeking to recover damages related to the Knox Agreement, in an action captioned *UBS Securities LLC, et al. v. Highland Capital Management, L.P., et al.*, Index No. 650097/2009 (N.Y. Sup. Ct.) (as consolidated and amended) (the "New York State Court Action");

**WHEREAS**, Sentinel entered into a document entitled "Legal Liability Insurance Policy" with a commencement date of August 1, 2017 (the "Insurance Policy") for the benefit of CDO Fund, SOHC, and Highland CDO Holding Company;

**WHEREAS**, on or about August 7, 2017, the Funds, along with CDO Opps, Highland CDO Holding Company, Highland Financial Corp., and Highland Financial Partners, L.P. ("HFP"), agreed to transfer (the "Transfer") assets (the "Transferred Assets")[1] to Sentinel, purportedly as full payment for the premium under the Insurance Policy pursuant to a document entitled "Purchase Agreement," dated August 7, 2017, by and between Sentinel, on the one hand, and the Funds, CDO Opps, Highland CDO Holding Company, HFP, and Highland Financial Corp., on the other hand (the "Purchase Agreement");

**WHEREAS**, the Insurance Policy purports to provide CDO Fund, SOHC, and Highland CDO Holding Company up to $100,000,000 of coverage as adjusted by any purported endorsements or amendments for any legal liability or settlement resulting from the New York State Court Action (the "Insurance Coverage");

---

[1] The Transferred Assets are set forth on Appendix A to this Agreement.

**EXECUTION VERSION**

**WHEREAS**, the New York State Court bifurcated claims asserted in the New York State Court Action for purposes of trial, with the Phase I bench trial deciding the UBS Parties' breach of contract claims against the Funds and HCMLP's counterclaims against the UBS Parties;

**WHEREAS**, on November 14, 2019, the New York State Court issued its decision determining that the Funds breached the Knox Agreement on December 5, 2008, and dismissing HCMLP's counterclaims;

**WHEREAS**, on February 10, 2020, the New York State Court entered a Phase I trial judgment in favor of the UBS Parties and against the Funds as follows: $531,619,426.24 with additional post-judgment interest per day thereafter of $65,313.08 against CDO Fund and $510,771,605.55 with additional post-judgment interest per day thereafter of $62,751.78 against SOHC (the "Judgment");

**WHEREAS**, as of the date of this Agreement, post-judgment interest continues to accrue on the Judgment at a rate of $65,313.08 per day against CDO Fund and $62,751.78 per day against SOHC;

**WHEREAS**, on October 16, 2019, HCMLP filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Case");

**WHEREAS,** the Bankruptcy Case was transferred to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") on December 4, 2019;

**WHEREAS**, Phase II of the trial of the New York State Court Action was stayed as to HCMLP by HCMLP's bankruptcy filing;

**WHEREAS**, Phase II of the trial of the New York State Court Action, was to include, *inter alia*, the UBS Parties' claim for breach of implied covenant of good faith and fair dealing against HCMLP and the UBS Parties' fraudulent transfer claims against HCMLP, among others;

**WHEREAS**, on January 9, 2020, the Bankruptcy Court approved a settlement between HCMLP and HCMLP's official committee of unsecured creditors pursuant to which an independent board of directors (the "Independent Board") was appointed to manage HCMLP, as debtor and debtor-in-possession, during the Bankruptcy Case;

**WHEREAS**, on January 9, 2020, James Seery, Jr. was appointed to serve on the Independent Board and, effective as of March 15, 2020, as the Chief Executive Officer and Chief Restructuring Officer of HCMLP;

**WHEREAS**, the Independent Board was unaware of the Insurance Policy and the Purchase Agreement prior to January 2021;

**WHEREAS**, in early February 2021, the Independent Board disclosed the existence of the Purchase Agreement and Insurance Policy to the UBS Parties;

**WHEREAS**, prior to such disclosure, the Purchase Agreement and Insurance Policy were unknown to the UBS Parties;

**WHEREAS**, CDO Fund is a Bermuda limited partnership managed by its general partner, Highland CDO Opportunity Fund GP, L.P. ("CDO Fund GP"), a Delaware limited partnership;

**WHEREAS**, CDO Fund GP's general partner is Highland CDO Opportunity GP, LLC ("CDO Fund LLC"), a Delaware limited liability company;

**WHEREAS**, HCMLP is the sole member and manager of CDO Fund LLC;

**WHEREAS**, CDO Opps is a Bermuda corporation managed by its board of directors (the "CDO Opps Directors");

**WHEREAS**, HCMLP owns all of the voting shares of CDO Opps;

**WHEREAS**, the CDO Opps Directors have authorized James P. Seery, Jr., to negotiate and execute this Agreement on behalf of CDO Opps;

**WHEREAS**, on March 29, 2021, CDO Fund, through and by Mr. Seery on behalf of HCMLP as manager of CDO Fund, made a claim on the Insurance Policy to collect the Insurance Coverage on account of the Judgment (the "CDO Fund Claim");

**WHEREAS**, on March 29, 2021, the UBS Parties filed an adversary proceeding, captioned *UBS Securities LLC, et al. v. Highland Capital Management, L.P. (In re Highland Capital Management, L.P.)*, Adv. Pro. No. 21-03020-sgj (Bankr. N.D. Tex.), seeking injunctive relief and a motion for a temporary restraining order and preliminary injunction to, among other things, enjoin HCMLP from making or allowing certain entities under its management or control to make payments or transfers to Sentinel, among others, arising from or relating to the Transferred Assets, which temporary relief was granted on April 9, 2021;

**WHEREAS**, on May 25, 2021, Casey McDonald and Wade Kenny were appointed as independent directors for Sentinel, and on June 25, 2021, Johannes Stephanus de Jager was also appointed as independent director for Sentinel;

**WHEREAS**, on December 13, 2021, the UBS Parties filed a motion with the New York State Court seeking an order whereby CDO Fund would transfer or cause to be transferred all cash entering into CDO Fund's Bank of New York Mellon account to the UBS Parties, including cash related to interests issued by ABERDEEN LN FDG LTD PFD and GREENBRIAR CLO LTD PFD 144A (the "Turnover Motion"), which order the New York State Court entered on January 5, 2022 (the "Turnover Order");

**WHEREAS,** the interests issued to CDO Fund by ABERDEEN LN FDG LTD PFD and GREENBRIAR CLO LTD PFD 144A comprise part of the Transferred Assets, but were never formally reregistered to Sentinel, and the UBS Parties disputed in the Turnover Motion that such interests gave Sentinel any right to offset any amounts otherwise owed to the UBS Parties;

**WHEREAS**, on December 30, 2021, the UBS Parties and Sentinel entered into a stipulation that, by Sentinel not objecting to the Turnover Motion, Sentinel in no way waived its rights to claim that any future settlement between the parties should be offset by the cash of ABERDEEN LN FDG LTD PFD and GREENBRIAR CLO LTD PFD 144A;

**WHEREAS,** on July 29, 2022, the New York State Court entered a Decision, Order, and Judgment After Inquest on the UBS Parties' Phase II claims finding, *inter alia*: (i) HFP to be the alter ego of SOHC and thus liable to the UBS Parties for SOHC's portion of the Judgment in the amount of $510,771,650.55 plus post-judgment interest; (ii) CDO Fund liable to the UBS Parties for fraudulent conveyance in the additional amount of $67,222.00; and (iii) CDO Fund, SOHC, and HFP, collectively, liable to the UBS Parties for reasonable attorneys' fees in the additional amount of $16,283,331.00;

**WHEREAS**, on August 23, 2022, the Bankruptcy Court entered an order permanently enjoining and restraining HCMLP from making or allowing certain entities under its management or control to make payments or transfers to Sentinel, among others, arising from or relating to the Transferred Assets pending (i) a decision of a court of competent jurisdiction as to whether the Transferred Assets were fraudulently transferred to or for the benefit of Sentinel, among others, or (ii) an agreement between HCMLP and the UBS Parties as to the disposition of the Transferred Assets;

**WHEREAS**, Sentinel, to date, has not paid CDO Fund any amounts under the Insurance Policy pursuant to the CDO Fund Claim or otherwise on behalf of CDO Fund, SOHC, and Highland CDO Holding Company other than certain claimed costs of defenses;

**WHEREAS**, certain of Sentinel's cash and non-cash assets (and cash related to those non-cash assets) have been frozen pursuant to restraining notices issued in the New York State Court Action (the "Restraining Notices");

**WHEREAS**, the Parties dispute the validity or bona fide nature of and circumstances surrounding the Transfer, Transferred Assets, Insurance Policy, Insurance Coverage, and Purchase Agreement (the "Dispute"); and

**WHEREAS**, the Parties wish to enter into this Agreement to settle all claims and disputes between and among (i) the UBS Parties and Sentinel and (ii) the Highland Entities and Sentinel, to the extent and on the terms and conditions set forth herein, and to exchange the mutual releases set forth herein, without any admission of fault, liability, or wrongdoing on the part of any Party (the "Settlement");

**NOW THEREFORE**, in consideration of the above recitals, the covenants, conditions, and promises made herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

**A G R E E M E N T**

1.     <u>**Definitions**</u>.

    (a)    "<u>Additional Entities</u>" shall mean, collectively, SOHC, Highland CDO Holding Company, HFP, and Highland Financial Corp.

    (b)    "<u>Agreement</u>" shall mean this settlement agreement entered into as of September 1, 2022, by and among, the Parties.

    (c)    "<u>Agreement Effective Date</u>" shall mean the date when the Bankruptcy Court (i) approves HCMLP's entry into this Agreement or (ii) determines it (1) has no jurisdiction to approve HCMLP's entry into this Agreement or (2) need not approve HCMLP's entry into this Agreement.

    (d)    "<u>Bankruptcy Court</u>" shall have the meaning ascribed in the Recitals of this Agreement.

    (e)    "<u>CIBC</u>" shall mean, together, (i) CIBC FirstCaribbean International Bank and (ii) CIBC FirstCaribbean International Bank and Trust.

    (f)    "<u>CIMA</u>" shall mean the Cayman Islands Monetary Authority.

    (g)    "<u>CIMA Submission</u>" shall mean the submission of the signed Agreement to CIMA with a joint request for approval of the transfers of assets required by this Agreement.

    (h)    "<u>Claimant Trust</u>" shall mean the Highland Claimant Trust.

    (i)    "<u>CDO Fund</u>" shall mean Highland CDO Opportunity Master Fund, L.P.

    (j)    "<u>CDO Opps</u>" shall mean Highland CDO Opportunity Fund, Ltd.

    (k)    "<u>Current Sentinel Directors</u>" shall mean Casey McDonald, Wade Kenny, and Johannes Stephanus de Jager, collectively.

    (l)    "<u>Dispute</u>" shall have the meaning ascribed in the Recitals of this Agreement.

    (m)    "<u>HCMLP</u>" shall mean Highland Capital Management, L.P.

    (n)    "<u>HCMLP Motion</u>" shall mean the motion HCMLP shall file in the Bankruptcy Court seeking approval of HCMLP's entry into this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.

    (o)    "<u>HFP</u>" shall have the meaning ascribed in the Recitals of this Agreement.

    (p)    "<u>Highland Entities</u>" shall mean, collectively (i) CDO Fund, (ii) HCMLP, and (iii) CDO Opps.

**EXECUTION VERSION**

(q)     "Insurance Policy" shall have the meaning ascribed in the Recitals of this Agreement.

(r)     "Insurance Coverage" shall have the meaning ascribed in the Recitals of this Agreement.

(s)     "Judgment" shall have the meaning ascribed in the Recitals of this Agreement.

(t)     "Litigation Trust" shall mean the Highland Litigation Sub-Trust.

(u)     "New York State Court" shall have the meaning ascribed in the Recitals of this Agreement.

(v)     "Oversight Board" shall mean the current and former members of the oversight board of the Claimant Trust.

(w)     "Party" or "Parties" shall mean each of the Highland Entities, UBS Parties, and Sentinel.

(x)     "Payment Date" shall mean, unless the Parties agree to extend (which agreement shall not be unreasonably withheld if circumstances beyond the control of Sentinel and the Current Sentinel Directors require such an extension), the date that is no later than three (3) business days after the latest of (i) the Agreement Effective Date; (ii) the date the New York State Court (1) grants the UBS Motion to withdraw the Restraining Notices or (2) determines it need not approve the withdrawal of the Restraining Notices or (3) has no objection to the withdrawal of the Restraining Notices; and (iii) the date CIMA confirms that it (1) authorizes or gives consent to the transfers of assets required by this Agreement or (2) determines its authorization or consent to the transfers of assets required by this Agreement is not required or (3) has no objection to the transfers of assets required by this Agreement.

(y)     "Purchase Agreement" shall have the meaning ascribed in the Recitals of this Agreement.

(z)     "Restraining Notices" shall have the meaning ascribed in the Recitals of this Agreement.

(aa)    "Sentinel" shall mean Sentinel Reinsurance, Ltd.

(bb)     "Sentinel Released Claims" shall have the meaning ascribed in Section 5(a) of this Agreement.

(cc)    "Sentinel Released Parties" shall have the meaning ascribed in Section 5(a) of this Agreement.

(dd)    "Sentinel Releasing Parties" shall have the meaning ascribed in Section 5(c) of this Agreement.

(ee)    "<u>Settlement</u>" shall have the meaning ascribed in the Recitals of this Agreement.

(ff)    "<u>SOHC</u>" shall have the meaning ascribed in the Recitals of this Agreement.

(gg)    "<u>Transfer</u>" shall have the meaning ascribed in the Recitals of this Agreement.

(hh)    "<u>Transferred Assets</u>" shall have the meaning ascribed in the Recitals of this Agreement.

(ii)    "<u>Turnover Order</u>" shall have the meaning ascribed in the Recitals of this Agreement.

(jj)    "<u>UBS and Highland Released Claims</u>" shall have the meaning ascribed in Section 3(c) of this Agreement.

(kk)    "<u>UBS Motion</u>" shall mean the motion that the UBS Parties shall file in the New York State Court Action seeking to withdraw the Restraining Notices.

(ll)    "<u>UBS Parties</u>" shall mean, together, (i) UBS Securities LLC and (ii) UBS AG London Branch.

2.    <u>Settlement of Claims</u>.  In full and complete satisfaction of the Sentinel Released Claims, on the Payment Date:

(a)    Sentinel shall transfer, assign, and convey directly to the UBS Parties all rights, titles, and interests and/or claims to any rights, titles, and interests in any and all non-cash assets (and any cash related to those non-cash assets), tangible or intangible, free and clear of all liens and other encumbrances and/or claims to any rights, titles, and interests known to Sentinel and/or the Current Sentinel Directors, that are currently held or owned by Sentinel directly or indirectly, or held by a subsidiary of Sentinel, or otherwise held for the benefit of Sentinel, including but not limited to (i) the following assets: VALHALLA CLO LTD 0.0 0 I AUG23, ABERDEEN LN FDG LTD PFD, SOUTHFORK CLO LTD CUM PFD 144A, SOUTHFORK CLO LTD PFD, EASTLAND CLO LTD II, GRAYSON CLO LTD 144A (GCLO 0), GREENBRIAR CLO LTD (GRNBR 0), STRATFORD CLO LTD 144A (STRAFD 0), SeaOne Holdings LLC, Highland Credit Opportunities CDO Ltd. Partnership (n/k/a Highland Multi Strategy Credit Fund, L.P.), HIGHLAND PARK C 4.93867, NexPoint Real Estate Strat-Z, CLO Holdco Promissory Note, Dugaboy Investment Trust Promissory Note, Governance Re Promissory Note, GSC ABS COO 2006-4U LT CUM PFD 144A, LONGSTREET COO I LTD PFD 144A, HIGHLAND FINL PARTNERS LP, HIGHLAND FINL PARTNERS LP NPV, PAM CAP FDG LP 0.0 01MAY13 144A, and VERTICAL ABS COO 2 0.0 09MAY46, and (ii) any and all other non-cash assets (and any cash related to those non-cash assets), tangible or intangible, not otherwise specifically identified in this Agreement that are listed in Appendix A to this Agreement, which, for the avoidance of doubt, was not created by the Current Sentinel Directors, and is limited to whatever rights, titles, and interests, and/or claims to any rights, titles, and interests currently held or owned by Sentinel directly or indirectly or held for the benefit of Sentinel in such non-cash assets at present in their present form except for any contingent claims that Sentinel may have

against its ultimate beneficial holders, shareholders, insurance manager, former agents, directors, and managers which shall remain with Sentinel except as may be assigned pursuant to Section 8 of this Agreement; and

      (b)    Sentinel shall, in addition to the consideration set forth in Section 2(a) of this Agreement, pay directly to the UBS Parties an amount equal to $22,563,443.46, by wire transfer in same day funds, from amounts currently held in Sentinel's CIBC Checking Account and Sentinel's CIBC Operating Account and Investment Cash Account. Such payment shall be made to the account(s) designated in writing by the UBS Parties.

      **3.**    **Waiver of Claims to Assets Subject to Turnover Order.** On the Payment Date, the Sentinel Releasing Parties shall forever, finally, fully, unconditionally, irrevocably, and completely waive, release, and forever discharge any and all rights, titles, and interests, and/or claims to any rights, titles, and interests currently held or owned by Sentinel directly or indirectly or held for the benefit of Sentinel, of whatever kind or nature, whether known or unknown (including without limitation any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, including but not limited to the laws of the Cayman Islands), contingent or non-contingent, suspected or unsuspected, or matured or unmatured, including, but not limited to, any claims arising under statutory or common law, or arising in equity, or pursuant to any other law, rule, or regulation, whether foreign or domestic, relating to interests issued by ABERDEEN LN FDG LTD PFD and GREENBRIAR CLO LTD PFD 144A that are currently subject to the Turnover Order.

      **4.**    **Reduction of Judgment.** For the avoidance of doubt, any amounts received by the UBS Parties pursuant to Section 2 of this Agreement shall be applied to and shall reduce the Judgment on a dollar-for-dollar basis, reducing first the outstanding post-judgment interest then the outstanding pre-judgment interest and then the outstanding principal amount.

      **5.**    **Releases.**

      (a)    **UBS Parties Releases.** Upon the occurrence of the Payment Date, and to the maximum extent permitted by law, each of the UBS Parties hereby forever, finally, fully, unconditionally, irrevocably, and completely releases, relieves, acquits, remises, exonerates, forever discharges, and covenants never to sue Sentinel, the Current Sentinel Directors, and Sentinel's current auditors at RSM Cayman, attorneys at Foley Lardner, LLP and Collas Crill, LLP, actuaries at Risk International, and insurance manager at Beecher Carlson (each solely in their capacities as such) (collectively, the "Sentinel Released Parties"), except as expressly set forth below and in this Agreement, for and from (and acknowledge as fully satisfied) any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs, expenses (including, without limitation, attorneys' fees and related costs), damages, injuries, suits, actions, causes of action, rights, duties, sums of money, and contracts of whatever kind or nature, whether known or unknown (including without limitation any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, including but not limited to the laws of the Cayman Islands), contingent or non-contingent, suspected or unsuspected, matured or unmatured, or liquidated or unliquidated, including any

claims arising under statutory or common law, or arising in equity, or pursuant to any other law, rule, or regulation, whether foreign or domestic, including without limitation any claims, defenses, and affirmative defenses, whether known or unknown, including, without limitation, those that have been or could have been alleged or asserted arising out of or related to the Transfer, Transferred Assets, Insurance Policy, Insurance Coverage, Purchase Agreement, or the Dispute in any jurisdiction (the "Sentinel Released Claims"); provided, however, that notwithstanding anything to the contrary herein, the Sentinel Released Claims do not include (i) any claims relating to the enforcement of this Settlement or this Agreement, or in the event of any fraudulent conduct by the Current Sentinel Directors in connection with procuring the Settlement as adjudicated by a court of competent jurisdiction; (ii) any claims against Sentinel's current or former ultimate beneficial owners, direct or indirect parents, shareholders, or former directors, officers, agents, or attorneys; and (iii) any claims against James Dondero, Scott Ellington, Matthew DiOrio, Jean Paul Sevilla, Mary Kathryn "Katie" Irving (f/k/a Lucas), Stephanie Vitiello, or Isaac Leventon, including, but not limited to, acts or omissions whether performed personally or in their capacity as employees, officers, directors, agents, or representatives of Sentinel.

       (b)    **Highland Entities Releases.**  Upon the occurrence of the Payment Date, and to the maximum extent permitted by law, each of the Highland Entities hereby forever, finally, fully, unconditionally, irrevocably, and completely releases, relieves, acquits, remises, exonerates, forever discharges, and covenants never to sue the Sentinel Released Parties (each solely in their capacities as such) except as expressly set forth below and in this Agreement, for and from (and acknowledge as fully satisfied) any and all Sentinel Released Claims; provided, however, that notwithstanding anything to the contrary herein, such Sentinel Released Claims do not include (i) any claims relating to the enforcement of this Settlement or this Agreement, or in the event of any fraudulent conduct by the Current Sentinel Directors in connection with procuring the Settlement as adjudicated by a court of competent jurisdiction; (ii) any claims against Sentinel's current or former ultimate beneficial owners, direct or indirect parents, shareholders, or former directors, officers, agents, or attorneys; and (iii) any claims against James Dondero, Scott Ellington, Matthew DiOrio, Jean Paul Sevilla, Mary Kathryn "Katie" Irving (f/k/a Lucas), Stephanie Vitiello, or Isaac Leventon, including, but not limited to, acts or omissions whether performed personally or in their capacity as employees, officers, directors, agents, or representatives of Sentinel.

       (c)    **Sentinel Releases.**  Upon the occurrence of the Payment Date, and to the maximum extent permitted by law, Sentinel on behalf of itself, each of its subsidiaries, the Current Sentinel Directors, and successors and assigns and any other person or entity legally entitled to bring any claims on behalf of Sentinel (collectively, the "Sentinel Releasing Parties") hereby forever, finally, fully, unconditionally, irrevocably, and completely releases, relieves, acquits, remises, exonerates, forever discharges, and covenants never to sue any of the UBS Parties and the Highland Entities, and each of their current and former respective advisors, attorneys, trustees (including, without limitation, the trustees of the Claimant Trust and Litigation Trust), directors (including, without limitation, the Oversight Board), officers, managers, members, limited and general partners, employees, beneficiaries, shareholders, agents, participants, subsidiaries, direct or indirect parents, the Claimant Trust, the Litigation Trust, affiliates, successors, designees, assigns, managed entities, representatives, auditors, and consultants (each solely in their capacities as such), except the individuals identified in Section 5(c)(ii) and the Additional Entities and except as expressly set forth below and in this Agreement, for and from (and acknowledge as fully satisfied) any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements,

liens, losses, costs, expenses (including, without limitation, attorneys' fees and related costs), damages, injuries, suits, actions, causes of action, rights, duties, sums of money, and contracts of whatever kind or nature, whether known or unknown (including without limitation any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, including but not limited to the laws of the Cayman Islands), contingent or non-contingent, suspected or unsuspected, matured or unmatured, or liquidated or unliquidated, including any claims arising under statutory or common law, or arising in equity, or pursuant to any other law, rule or regulation, whether foreign or domestic, including without limitation any claims, defenses, and affirmative defenses, whether known or unknown, including, without limitation, those that have been or could have been alleged or asserted arising out of or related to the Transfer, Transferred Assets, Insurance Policy, Insurance Coverage, Purchase Agreement, and the Dispute in any jurisdiction, (the "UBS and Highland Released Claims"); provided, however, that notwithstanding anything to the contrary herein, such releases shall not apply to (i) any claims relating to the enforcement of this Settlement or this Agreement; and (ii) any claims against James Dondero, Scott Ellington, Matthew DiOrio, Jean Paul Sevilla, Mary Kathryn "Katie" Irving (f/k/a Lucas), Stephanie Vitiello, or Isaac Leventon, including, but not limited to, acts or omissions whether performed personally or in their capacity as employees, officers, directors, agents, or representatives of the Highland Entities.

6.     **No Third Party Beneficiaries**.  Except for the Parties released by this Agreement, no other person or entity shall be deemed a third-party beneficiary of this Agreement.

7.     **UBS Parties and Highland Entities Covenant Not to Sue.**  Subject to the occurrence of the Payment Date, if any of the UBS Parties and/or the Highland Entities ever controls, directly or indirectly, any of the Additional Entities, each of the UBS Parties and the Highland Entities covenant on behalf of themselves and the Additional Entities under their control, if any, that none of the UBS Parties, the Highland Entities, or the Additional Entities under their control, if any, shall assert or pursue any Sentinel Released Claims any Additional Entity has or may have against any Sentinel Released Party or seek to recover under the Insurance Policy, and the UBS Parties, the Highland Entities, and the Additional Entities under their control, if any, shall disclaim the ability to recover any Sentinel Released Claims as against any Sentinel Released Party through any of the Additional Entities.

8.     **Sentinel Restrictions on Payments to Shareholders or UBOs.**  Sentinel shall not make any distribution, dividend, or reimbursement payments to any Sentinel shareholder, direct or indirect parent, or ultimate beneficial owner until any claims or potential claims relating to the entry of the Settlement or this Agreement have been fully and finally resolved, including but not limited to, through a release of such claims by any Sentinel shareholder, direct or indirect parent, or ultimate beneficial owner ("Section 8 Release") or court order.  If any Section 8 Release is executed, Sentinel shall provide written copies of such Section 8 Release to the UBS Parties and the Highland Entities within five (5) business days of the execution of such Section 8 Release.  In addition, if any legal challenge is raised against the Settlement or this Agreement, Sentinel shall notify the UBS Parties and the Highland Entities within five (5) business days of Sentinel becoming aware of such a challenge.  If any of James Dondero, Scott Ellington, Matthew DiOrio, Jean Paul Sevilla, Mary Kathryn "Katie" Irving (f/k/a Lucas), Stephanie Vitiello, or Isaac Leventon, individually or through entities that they own or control, attempts to frustrate, stop, or

challenge the Settlement, this Agreement, or effectuation of the transfers of assets required by this Agreement, at any time upon the UBS Parties' request at the UBS Parties' sole discretion, Sentinel shall, to the maximum extent permitted by law, fully and forever assign to the UBS Parties any and all claims and causes of action of whatever kind or nature, whether known or unknown, contingent or non-contingent, suspected or unsuspected, or matured or unmatured that Sentinel then has or may have against James Dondero, Scott Ellington, Matthew DiOrio, Jean Paul Sevilla, Mary Kathryn "Katie" Irving (f/k/a Lucas), Stephanie Vitiello, or Isaac Leventon related to the Settlement, this Agreement, or effectuation of the transfers of assets required by this Agreement.

9. **Release of Sentinel Cash.** While the Parties are working to gain any approvals contemplated by Section 10 of this Agreement, the UBS Parties shall cooperate with Sentinel to request the release of sufficient cash to fund reasonable and necessary ongoing expenses, in an amount to be agreed upon within five (5) business days from the date of such a request. Any such expenditures referenced in this Section 9 shall, in no way, diminish the total amount of consideration that the UBS Parties are entitled to under any other provision of this Agreement. For the avoidance of doubt, such expenditures shall cause a reduction (on a dollar-for-dollar basis) in the total amount of cash that Sentinel would otherwise retain following payment to the UBS Parties pursuant to Section 2(b) of this Agreement.

10. **Best Efforts to Obtain Approvals.**

(a) No later than five (5) business days after execution of this Agreement, unless an extension is agreed to by all Parties, HCMLP shall file the HCMLP Motion, in form and substance reasonably acceptable to the Parties.

(b) No later than five (5) business days after the Agreement Effective Date, unless an extension is agreed to by all Parties, the UBS Parties shall file the UBS Motion, in form and substance reasonably acceptable to the Parties.

(c) No later than five (5) business days after the Agreement Effective Date, unless an extension is agreed to by all Parties, Sentinel shall submit the CIMA Submission, in form and substance reasonably acceptable to the Parties.

(d) The Parties shall further use best efforts to seek any necessary or otherwise mutually agreeable regulatory approvals of the Settlement, the Agreement, and/or the transactions contemplated in this Agreement.

(e) The Parties shall not object to any other Party giving notice of the HCMLP Motion, UBS Motion, and CIMA Submission to the following: Sentinel, James Dondero, Scott Ellington, Matthew DiOrio, Jean Paul Sevilla, Mary Kathryn Irving (f/k/a Lucas), Stephanie Vitiello, Isaac Leventon, and the Additional Entities.

11. **Future Cooperation**.

(a) The Parties agree to cooperate and execute such further documentation as is necessary to effectuate the intent of this Agreement, including without limitation, using best efforts to execute, acknowledge (where appropriate), and deliver such other or further instruments

of transfer or assignment as any Party may reasonably require to effect the consummation of the transfers of non-cash assets, cash, and other transfers of assets required by this Agreement.

(b)     Sentinel shall provide reasonable cooperation to the UBS Parties and the Highland Entities regarding discovery in litigation involving any of the UBS Parties or Highland Entities on the one hand, and any current or former Sentinel shareholder, ultimate beneficial owner, direct or indirect parent, subsidiary, or other person or entity who is acting on, or purports to act on, or has acted on, or has purported to act on, Sentinel's behalf, on the other hand, with respect to the Transfer, Transferred Assets, Insurance Policy, Insurance Coverage, Purchase Agreement, or the Dispute.

(c)     Until such a time as Sentinel exhausts all of its assets or obtains Section 8 Releases from all Sentinel shareholders, direct or indirect parent, and ultimate beneficial owners, Sentinel shall provide to the UBS Parties and the Highland Entities: (i) Sentinel's unaudited quarterly financial statements within ten (10) business days of them becoming available to Sentinel; (ii) Sentinel's audited yearly financial statements within ten (10) business days of Sentinel's auditors signing off on the financial statements; and (iii) account statements for Sentinel's CIBC Checking Account, Sentinel's CIBC Operating Account and Investment Cash Account, and any other cash account held or owned by Sentinel directly or indirectly or held for the benefit of Sentinel opened after execution of this Agreement, if any, within ten (10) business days of the end of each month.

12.    <u>**Representations and Warranties**</u>.

(a)     **UBS Parties Representations.**  Each UBS Party represents and warrants that:

(i)     It has full authority to enter into this Agreement and to release the Sentinel Released Claims and has not sold, transferred, or assigned any Sentinel Released Claim to any other person or entity; and

(ii)     No person or entity other than such UBS Party has been, is, or will be authorized to bring, pursue, or enforce any Sentinel Released Claim on behalf of, for the benefit of, or in the name of (whether directly or derivatively) such UBS Party.

(b)     **CDO Fund and CDO Opps Representations**.  Each of CDO Fund and CDO Opps represents and warrants that:

(i)     It has full authority to enter into this Agreement and to release the Sentinel Released Claims and has not sold, transferred, or assigned any Sentinel Released Claim to any other person or entity; and

(ii)     No person or entity other than CDO Fund and CDO Opps has been, is, or will be authorized to bring, pursue, or enforce any Sentinel Released Claim on behalf of, for the benefit of, or in the name of (whether directly or derivatively) CDO Fund and CDO Opps, respectively.

(c)     **HCMLP Representations**.  Subject to Section 10(a) of this Agreement, HCMLP represents and warrants that:

(i)     It has full authority to enter into this Agreement and to release the Sentinel Released Claims and has not sold, transferred, or assigned any Sentinel Released Claim to any other person or entity; and

(ii)     No person or entity other than HCMLP has been, is, or will be authorized to bring, pursue, or enforce any Sentinel Released Claim on behalf of, for the benefit of, or in the name of (whether directly or derivatively) HCMLP.

(d)     **Sentinel Representations**.  Sentinel represents and warrants that:

(i)     It has full authority to enter into this Agreement and to release the UBS and Highland Released Claims and has not sold, transferred, or assigned any UBS and Highland Released Claim to any other person or entity;

(ii)     No person or entity other than Sentinel has been, is, or will be authorized to bring, pursue, or enforce any UBS and Highland Released Claim on behalf of, for the benefit of, or in the name of (whether directly or derivatively) Sentinel;

(iii)     The rights, titles, and interests being assigned, transferred, and conveyed pursuant to Sections 2(a) and (b) of this Agreement constitute all of the rights, titles, and interests currently held or owned by Sentinel directly or indirectly or held for the benefit of Sentinel in the assets listed in Sections 2(a) and (b) of this Agreement;

(iv)     Sentinel shall use best efforts to, upon the Payment Date, transfer to the UBS Parties good and valid title to all of the rights, titles, and interests, and/or claims to any rights, titles, and interests, free and clear of all liens and other encumbrances and/or claims to any rights, titles, and interests known to Sentinel and/or the Current Sentinel Directors, currently held or owned by Sentinel directly or indirectly, or held by a subsidiary of Sentinel, or held for the benefit of Sentinel in the assets listed in Sections 2(a) and (b) of this Agreement with the Sentinel Releasing Parties forever, finally, fully, unconditionally, irrevocably, and completely waiving, releasing, and forever discharging any and all rights, titles, and interests, and/or claims to any rights, titles, and interests in or related to the assets listed in Sections 2(a) and (b) of this Agreement currently held or owned by Sentinel directly or indirectly, or held by a subsidiary of Sentinel, or held for the benefit of Sentinel, of whatever kind or nature, whether known or unknown (including without limitation any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, including but not limited to the laws of the Cayman Islands), contingent or non-contingent, suspected or unsuspected, or matured or unmatured,

**EXECUTION VERSION**

including any claims arising under statutory or common law, or arising in equity, or pursuant to any other law, rule, or regulation, whether foreign or domestic;

(v)    Other than the approvals contemplated in this Agreement, it is not necessary to obtain the consent or approval of, or make any filing with or notification to, or obtain any waivers from, any person or entity to consummate the transfer, assignment, or conveyance of any of the rights, titles, and interests to the assets listed in Sections 2(a) and (b) of this Agreement;

(vi)    As of the Payment Date, the accounts listed in Section 2(b) of this Agreement are the only accounts containing cash currently held or owned by Sentinel directly or indirectly or held for the benefit of Sentinel; and

(vii)    (a) No Highland Entity, nor any agent or representative of or attorney for any such Highland Entity, has made any promise, representation, or warranty, express or implied, written or oral, not otherwise contained in this Agreement to induce Sentinel to execute this Agreement; (b) Sentinel is not executing this Agreement in reliance on any promise, representation, or warranty made by any Highland Entity or agent or representative thereof or attorney therefor not contained in this Agreement; and (c) any such reliance would be unreasonable.

**13.    No Admission of Wrongdoing.**  By entering into this Settlement and Agreement, none of the Parties hereto admit to any wrongdoing. Nothing herein shall be construed as an admission by any Party of and liability of any kind. All wrongdoing or liability is expressly denied by the Parties.

**14.    Non-Disparagement**.   None of any of the UBS Parties or the Highland Entities shall be permitted to make disparaging remarks about or regarding the Current Sentinel Directors, and Sentinel and the Current Sentinel Directors shall not be permitted to make disparaging remarks about or regarding any of the UBS Parties or the Highland Entities.

**15.    No Waiver as to Use of Evidence.**  For the avoidance of doubt, nothing in this Agreement or the Settlement shall be read or interpreted to exclude or limit in any way the ability of any Party from attempting to submit evidence in any proceeding.

**16.    Successors-in-Interest.**  This Agreement shall be binding upon and shall inure to the benefit of each of the Parties and their representatives, successors, and assigns.

**17.    Notice**.  Each notice and other communication hereunder shall be in writing and shall, unless otherwise subsequently directed in writing, be delivered by email and overnight delivery, as set forth below, and shall be deemed to have been given on the date following such mailing.

**The Highland Entities**

Highland Capital Management, L.P.
100 Crescent Court, Suite 1850
Dallas, Texas 75201

Attention: David Klos
E-mail: dklos@HighlandCapital.com

Highland CDO Opportunity Master Fund, L.P.
100 Crescent Court, Suite 1850
Dallas, Texas 75201
Attention: David Klos
E-mail: dklos@HighlandCapital.com

Highland CDO Opportunity Fund, Ltd.
100 Crescent Court, Suite 1850
Dallas, Texas 75201
Attention: David Klos
E-mail: dklos@HighlandCapital.com

with a copy (which shall not constitute notice) to:

Pachulski Stang Ziehl & Jones LLP
Attention:  Jeffrey Pomerantz, Esq.
             Gregory Demo, Esq.
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone No.:  310-277-6910
E-mail:  jpomerantz@pszjlaw.com
         gdemo@pszjlaw.com

**The UBS Parties**

UBS Securities LLC
UBS AG London Branch
Attention:  Elizabeth Kozlowski, Executive Director and Counsel
1285 Avenue of the Americas
New York, NY 10019
Telephone No.:  212-713-9007
E-mail:  elizabeth.kozlowski@ubs.com

UBS Securities LLC
UBS AG London Branch
Attention:  Jignesh Doshi, Managing Director
1285 Avenue of the Americas
New York, NY 10019
Telephone No.:  212-713-8639
E-mail:  jignesh.doshi@ubs.com

with a copy (which shall not constitute notice) to:

Latham & Watkins LLP

Attention:  Andrew Clubok
                 Kathryn George
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone No.:  202-637-3323
Email: andrew.clubok@lw.com
        kathryn.george@lw.com

**Sentinel**

Calderwood
Casey McDonald  and Wade Kenny
4th Floor, Century Yard, Cricket Square, George Town
P.O. Box 31162, Grand Cayman, KY1-1205 Cayman Islands
Telephone No.: 345-324-2022
Email: cmcdonald@calderwood.ky
       wkenny@calderwood.ky

CSI International Underwriting (Cayman) Limited
JS De Jager
Governors Square, 2nd Floor, 23 Lime Tree Bay Avenue
P.O. Box 1569, Grand Cayman KY1-1110, Cayman Islands
Telephone No.: 345-949-7322
Email:  js@csi.ky

with a copy (which shall not constitute notice) to:

Foley & Lardner, LLP
Attention: Katherine R. Catanese
90 Park Avenue
New York, NY 10016
Telephone No.: 212-338-3496
Email: KCatanese@foley.com

Collas Crill
Stephen Leontsinis
Floor 2, Willow House, Cricket Square, PO Box 709
Grand Cayman, Cayman Islands, KY1-1107
Telephone No.: 345-914-9605
Email:Stephen.Leontsinis@collascrill.com

     **18.**   **Non-Reliance**. Each Party acknowledges that no other Party, nor any agent or representative of or attorney for any Party, has made any promise, representation, or warranty, express or implied, written or oral, not otherwise contained in a written, signed agreement to induce any other Party to execute this Agreement.  Each Party further acknowledges that it is not executing this Agreement in reliance on any promise, representation, or warranty made by any other Party

or agent or representative thereof or attorney therefor not contained in a written, signed agreement, and that any such reliance would be unreasonable.

19. <u>**Waiver**</u>.  This Agreement will not be waived or modified except by a subsequent agreement in writing signed by each Party or duly authorized representative of each Party.

20. <u>**Advice of Counsel**</u>.  Each of the Parties represents that such Party has: (a) been adequately represented by legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement; (b) executed this Agreement upon the advice of such counsel; (c) read this Agreement, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Agreement and all the terms and conditions contained herein explained by counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

21. <u>**No Party Deemed Drafter**</u>.  The Parties acknowledge that the terms of this Agreement are contractual and are the result of arm's-length negotiations between the Parties and their chosen counsel.  Each Party and its counsel cooperated in the drafting and preparation of this Agreement.  In any construction to be made of this Agreement, the Agreement shall not be construed against any Party.

22. <u>**Counterparts**</u>.  This Agreement may be executed in counterparts with the same force and effect as if executed in one complete document.  Each Party's signature hereto shall signify acceptance of, and agreement to, the terms and provisions contained in this Agreement. Photographic, electronic, and facsimile copies of signed counterparts may be used in lieu of the originals of this Agreement for any purpose.

23. <u>**Governing Law; Venue; Attorneys' Fees and Costs**</u>.  The Parties agree that this Agreement shall be governed by and shall be construed according to the laws of the State of New York without regard to conflict-of-law principles.  Forum for any enforcement of this Agreement shall be the New York State Court or the Bankruptcy Court, as appropriate.  The Parties acknowledge and agree that Sentinel does not consent to the jurisdiction of the State of New York, or of the United States, regarding the Transfer, Transferred Assets, Insurance Policy, Insurance Coverage, Purchase Agreement, or Dispute, or for any purpose other than enforcement of this Agreement.  This provision only applies to the Parties to this Agreement.  In any action to enforce this Agreement, the prevailing Party shall be entitled to recover its reasonable and necessary attorneys' fees and costs (including experts).

*[Remainder of Page Intentionally Blank]*

**EXECUTION VERSION**

**SIGNATURE PAGES TO 9/1/22 SENTINEL/UBS/HIGHLAND ENTITIES SETTLEMENT AGREEMENT**

**IT IS HEREBY AGREED.**

**SENTINEL REINSURANCE, LTD.**

By: _____
Name:   JS de Jager
Its:    Director

By: _____
Name:   Wade Kenny
Its:    Director

By: _____
Name:   Casey McDonald
Its:    Director

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____
Name: _____
Its: _____

**HIGHLAND CDO OPPORTUNITY FUND, LTD.**

By: _____
Name: _____
Its: _____

**HIGHLAND CDO OPPORTUNITY MASTER FUND, L.P.**

By: _____
Name: _____
Its: _____

**EXECUTION VERSION**

**SIGNATURE PAGES TO 9/1/22 SENTINEL/UBS/HIGHLAND ENTITIES SETTLEMENT AGREEMENT**

**IT IS HEREBY AGREED.**

**SENTINEL REINSURANCE, LTD.**

By: _____
Name: _____
Its: Director

By: _____
Name: _____
Its: Director

By: _____
Name: _____
Its: Director

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____
Name: James P. Seery, Jr.
Its: CEO

**HIGHLAND CDO OPPORTUNITY FUND, LTD.**

By: _____
Name: James P. Seery, Jr.
Its: Authorized Signatory

**HIGHLAND CDO OPPORTUNITY MASTER FUND, L.P.**

By: _____
Name: James P. Seery, Jr.
Its: Authorized Signatory

**EXECUTION VERSION**

**SIGNATURE PAGES TO 9/1/22 SENTINEL/UBS/HIGHLAND ENTITIES SETTLEMENT AGREEMENT**

**UBS SECURITIES LLC**

By: _____

Name: Jignesh Doshi

Its: Authorized Signatory

By: _____

Name: Elizabeth Kozlowski

Its: Authorized Signatory

**UBS AG LONDON BRANCH**

By: _____

Name: Jignesh Doshi

Its: Authorized Signatory

By: _____

Name: Elizabeth Kozlowski

Its: Authorized Signatory

# APPENDIX A

## SCHEDULE A

**HIGHLAND CDO OPPORTUTNITY MASTER FUND, L.P.**

| ISIN | Description | Traded Shares/Par |
|---|---|---|
| KY009A1KXYH6 | ABERDEEN LN FDG LTD PFD | 12,000,000.00 |
| KY84427P2029 | SOUTHFORK CLO LTD CUM PFD 144A | 10,000.00 |
| KYG829101032 | SOUTHFORK CLO LTD PFD | 9,000.00 |
| US00306M3007 | ABERDEEN LN FDG LTD PFD | 5,000.00 |
| US3624682098 | GSC ABS CDO 2006-4U LT CUM PFD 144A | 16,000.00 |
| US39364P2011 | GREENBRIAR CLO LTD PFD 144A | 16,250.00 |
| US43009L2034 | HIGHLAND FINL PARTNERS LP | 615,733.00 |
| US43009L9898 | HIGHLAND FINL PARTNERS LP NPV | 3,000,000.00 |
| US5431742056 | LONGSTREET CDO I LTD PFD 144A | 3,000.00 |
| US65340G2057 | NEXPOINT C COM USD0.001 (POST REV S) | 100.00 |
| US69763NAD30 | PAM CAP FDG LP 0.0 01MAY13 144A | 48,500,000.00 |
| | FRN | 42,868,390.80 |
| US8729623038 | TOUSA INC 8.0 PFD 144A | 1,337.00 |
| US91914QAA40 | VALHALLA CLO LTD 0.0 01AUG23 | 6,000,000.00 |
| | 144A | 6,000,000.00 |
| US925331AA89 | VERTICAL ABS CDO 2 0.0 09MAY46 | 6,000,000.00 |
| | 144A | 6,000,000.00 |
| N/A | HIGHLAND CREDIT OPPORTUNITIES CDO LTD. PARTNERSHIP INTEREST | 24,313.00 |
| | $2,157,088 PROMISSORY NOTE (GOVERNANCE RE, LTD. AS MAKER) AND CASH OF $539,272 – RE: NEXPOINT MULTIFAMILY CAPITAL TRUST INTEREST | 269,636.00 |
| N/A | NEXPOINT REAL ESTATE STRAT – Z | 97,257.00 |
| N/A | HIGHLAND GEMINI PROGRAM (POLLUX) | 65,314.00 |
| | $2,399,996 PROMISSORY NOTE (THE DUGABOY INVESTMENT TRUST AS MAKER) AND CASH | |
| N/A | OF $599,999 – RE: SURVIOS INTEREST | 2,999,995.00 |
| BCC0MVTX4 | CAMBR 5X FLOATING – 12/2045 | 19,350,000.00 |
| N/A | CASH | $7,779,722.00 |

**HIGHLAND CDO OPPORTUTNITY FUND, LTD.**

| ISIN | Description | Traded Shares/Par |
|---|---|---|
| N/A | CASH | $2,349,436.00 |

## HIGHLAND CDO HOLDINGS COMPANY

| ISIN | Description | Traded Shares/Par |
|------|-------------|-------------------|
| US404185AD22 | HFT REAL EST 3.33867 25NOV51 | 750,000.00 |
| | 144A F | 750,000.00 |
| US65340G2057 | NEXPOINT C COM USD0.001 (POST REV S) | 165,395.00 |
| US65341D1028 | NEXPOINT R COM USD0.001 'WI' | 220,527.00 |
| US86280AAE73 | STRATFORD CL 3.16956 01NOV21 | 300,000.00 |
| | 144A F | 300,000.00 |
| USG44392AF82 | HIGHLAND PARK C 4.93867 | 17,000,000.00 |
| | 25NOV51 FRN | 24,076,296.18 |
| N/A | PROMISSORY NOTE – CLO HOLDCO, LTD. AS MAKER – 12/23/2025 | $32,801,593.00 |
| N/A | CASH | $539,641.00 |
| N/A | DIVIDENDS RECEIVABLE – HIGHLAND CAPITAL MANAGEMENT, LP | $136,598.00 |

## HIGHLAND SPECIAL OPPORTUNITIES HOLDINGS COMPANY

| ISIN | Description | Traded Shares/Par |
|------|-------------|-------------------|
| US247126AC93 | DELPHI CORP DEL 7.125 01MAY29 | 1,500,000.00 |
| US247126AD76 | DELPHI CORP DEL 6.55 15JUN06 USD | 3,000,000.00 |
| US5431742056 | LONGSTREET CDO I LTD PFD 144A | 1,570.00 |
| US8729623038 | TOUSA INC 8.0 PFD 144A | 5,349.00 |
| US925331AA89 | VERTICAL ABS CDO 2 0.0 09MAY46 | 5,000,000.00 |
| | 144A | 5,000,000.00 |
| N/A | CASH | $295,136.00 |

## HIGHLAND FINANCIAL CORP.

| ISIN | Description | Traded Shares/Par |
|------|-------------|-------------------|
| N/A | CASH | $80,144.00 |
| N/A | TAX REFUND RECEIVABLE – HIGHLAND CAPITAL MANAGEMENT, LP | $477,637.00 |

## HIGHLAND FINANCIAL PARTNERS, L.P.

| ISIN | Description | Traded Shares/Par |
|------|-------------|-------------------|
| N/A | CASH | $29,252.00 |