PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
| | ) |
| Reorganized Debtor. | ) |
| | ) |

## HIGHLAND CAPITAL MANAGEMENT, L.P.'S OBJECTION
## TO MOTION TO WITHDRAW PROOF OF CLAIM

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT BACKGROUND ........................................................................................... 4

    A.    Highland, HCRE, and BH Equities Pursue "Project Unicorn" and Enter into the Amended LLC Agreement ........................................................................ 4

    B.    HCRE Files a Proof of Claim, the Debtor Objects, and a Contested Matter Is Initiated ............................................................................................................. 7

    C.    The Parties Litigate for Nearly Two Years .......................................................... 8

        1.    Initial Discovery .................................................................................... 8

        2.    The Wick Phillips Disqualification Motion .................................................. 8

        3.    After the Parties Nearly Complete Discovery, Highland Informs HCRE that It Will Move for Summary Judgment .......... 10

    D.    Mr. Dondero Lacked a Good-Faith Basis to Cause HCRE's POC to Be Filed ................................................................................................................... 12

        1.    Employees Working at Mr. Dondero's Direction Drafted the Amended LLC Agreement ...................................................... 12

        2.    The Allocation Is Set Forth in Four Different Places in the Amended LLC Agreement ........................................................... 13

        3.    The Allocation Was Among the Only Provisions in the Amended LLC Agreement that Was Negotiated ........................ 15

        4.    Highland Intended to Move for Summary Judgment .................. 16

    E.    The Motion to Withdraw Was Not Filed in Good Faith ...................................... 16

    F.    HCRE Materially Breached the Amended LLC Agreement .............................. 18

ARGUMENT ................................................................................................................... 18

    A.    Applying the *Manchester* Factors Mandates Denying the Motion ...................... 18

    B.    Alternatively, the Court Should Impose the Conditions to Mitigate the Prejudice to Highland ........................................................................................ 22

DOCS_NY:46329.3 36027/003

## TABLE OF AUTHORITIES

### CASES

*Davis v. Huskipower Outdoor Equip. Corp.,*
  936 F.2d 193 (5th Cir. 1991) ......................................................................... 21, 23

*Elbaor v. Tripath Imaging, Inc.,*
  279 F.3d 314 (5th Cir. 2002) ............................................................................... 21

*Forbes v. CitiMortgage, Inc.,*
  998 F. Supp. 2d 541 (S.D. Tex. 2014) ...................................................... 21, 22, 23

*Ikospentakis v. Thalassic S.S. Agency,*
  915 F.2d 176 (5th Cir. 1990) ............................................................................... 21

*Kumar v. St. Paul Surplus Lines Ins. Co.,*
  2010 WL 1946341 (N.D. Tex. May 12, 2010) ................................................... 20

*Le Compte v. Mr. Chip, Inc.,*
  528 F.2d 601 (5th Cir. 1976) ............................................................................... 20

*Manchester, Inc. v. Lyle (In re Manchester, Inc.),*
  2008 Bankr. LEXIS 3312 (Bankr. N.D. Tex. December 19, 2008).............. 18, 19

*Oxford v. Williams Companies, Inc.,*
  154 F. Supp. 2d 942 (E.D. Tex. 2001) ................................................................ 20

*Robles v. Atl. Sounding Co.,*
  77 Fed. Appx. 274 (5th Cir. 2003)................................................................ 20, 21

*U.S. ex rel. Doe v. Dow Chemical Co.,*
  343 F.3d 325 (5th Cir. 2003) ............................................................................... 20

### RULES

Fed. R. Civ. P. 41(a) ................................................................................................ 20

Fed. R. Civ. P. 41(a)(2)........................................................................................... 21

Highland Capital Management, L.P. ("Highland" or, as applicable, the "Debtor"), the reorganized debtor in the above-captioned chapter 11 case (the "Bankruptcy Case"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Motion to Withdraw Proof of Claim* [Docket No. 3443] (the "Motion to Withdraw"), filed by NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC ("HCRE" and together with Highland/Debtor, the "Parties"). In support of its Objection, Highland states as follows:

## PRELIMINARY STATEMENT[1]

1. In another blatant abuse of the bankruptcy rules and system, HCRE (under the control of Mr. Dondero) filed a baseless proof of claim that it now abruptly seeks to withdraw *after two years of litigation* during which Highland expended substantial resources, completed all of *its* discovery obligations, and uncovered substantial damage caused by HCRE's actions. Just as Highland was compelling HCRE to complete *HCRE's* discovery obligations and preparing for summary judgment, HCRE realized the risk it faced and is now desperately trying to dodge Highland's day in court. Shamelessly, HCRE wants to slither away—without consequence and without offering any evidence—just days before it and its owners were to be deposed on matters certain to elicit testimony concerning HCRE's meritless claim, its contractual breaches, and its questionable tax structuring and filings.[2] Under these dubious circumstances, the Motion to Withdraw should be denied.

---

[1] Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to them below.

[2] HCRE's tax filings on behalf of SE Multifamily were so questionable that BH Equities (the lone third-party member of SE Multifamily) disregarded the 2020 Form K-1 that HCRE caused to be prepared and voluntarily reported to the IRS an allocation of profits from SE Multifamily that BH Equities believed comported with the Amended LLC Agreement. *See Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Objection to Motion to Withdraw Proof of Claim* (being filed simultaneously with this Objection) ("Morris Dec."), Ex. 1 at 129:21-130:7; 144:8-145:12; 147:5-149:14.

2.        Pursuant to Bankruptcy Rule 3006, motions to withdraw contested claims may only be granted after a hearing during which courts may consider various factors (the "*Manchester* Factors") intended to protect the integrity of the system.  Application of those factors here establishes that the Motion to Withdraw is a strategic ploy intended to avoid depositions, harass Highland, and otherwise game the system:

- <u>Diligence in bringing the motion</u>: HCRE gives no indication when it concluded that SE Multifamily was being "operated without interference from the Debtor,"[3] but it filed its Motion to Withdraw after two years of heavily contested litigation during which it never expressed any concerns, made any demands, or sought judicial relief concerning Highland's alleged "interference."

- <u>Undue vexatiousness</u>:  HCRE's conduct in abruptly moving to withdraw its Dondero-signed proof of claim after two years of litigation, and after taking Highland's deposition but days before its own Witnesses were to be deposed, is a textbook example of vexatiousness—and is just the latest instance of Mr. Dondero bringing motions, or asserting claims, or filing objections, only to withdraw them after forcing Highland to spend time, money, and effort addressing them.

- <u>Progress of the case and the effort and expense of the non-moving party</u>:  With the exception of the depositions HCRE seeks to avoid, discovery is complete,[4] and Highland is prepared to move for summary judgment—after spending hundreds of thousands of dollars disqualifying its former counsel over HCRE's objection and engaging in exhaustive discovery, including taking the depositions of the Third-Party Witnesses during which HCRE declined to ask any questions.

- <u>Duplication of re-litigation</u>: Given that this case is trial-ready (but for the completion of the HCRE-related depositions), it would be a massive waste of resources to start this litigation anew (as HCRE implicitly threatens) and would be incredibly prejudicial to Highland because the discovery deadlines have passed and HCRE should be precluded from getting a "do-over."

- <u>Adequacy of explanation</u>: HCRE's explanation makes no sense given the timing: HCRE has not (and cannot) identify anything that occurred between August 10,

---

[3] Motion to Withdraw at 2.

[4] There is one additional exception that warrants mention because of its timing.  In addition to the HCRE depositions, HCRE and Highland entered into a stipulation and proposed amended scheduling on August 5, 2022 (***just seven days before HCRE filed its Motion to Withdraw***) pursuant to which Highland agreed to extend the expert discovery deadline to allow HCRE to proffer an expert report while preserving its right to file a motion for summary judgment. Docket No. 3434.  On August 9, 2022 (***just three days before HCRE filed its Motion to Withdraw***), the Court entered an Order approving the stipulation.  Docket No. 3438.

DOCS_NY:46329.3 36027/003

2022 (when it took the deposition of Highland's corporate representative) and August 12, 2022 (when it filed the Motion to Withdraw) that caused it to conclude that SE Multifamily was being "operated without interference from the Debtor."

3.       Based on the evidence that will be adduced,[5] the Court should deny the Motion to Withdraw, direct HCRE to tender the Witnesses for the depositions that HCRE unilaterally cancelled, and promptly proceed either with Highland's expected summary judgment motion or trial.

4.       However, if the Court is inclined to grant the Motion to Withdraw, it should exercise its discretion under Bankruptcy Rule 3006 and set the following terms and conditions (collectively, the "Conditions") to mitigate the legal prejudice to Highland:

- HCRE should make its corporate representative, Mr. Dondero, and Mr. McGraner available for substantive depositions as previously agreed in order to level the playing field;

- HCRE should be barred from deposing BH Equities, Barker Viggato, and Mark Patrick because HCRE declined to question any of those witnesses during their respective depositions and the discovery deadline has passed;

- HCRE should be barred from taking any further discovery from Highland because Highland has completed its discovery obligations and the discovery deadline has passed;

- After the Witnesses' depositions are complete, this Court should order that the withdrawal of HCRE's POC be *with* prejudice or, alternatively, this Court should retain jurisdiction over all claims initially raised in HCRE's POC such that any re-filing of such claims must be in this Court; and

- HCRE should be ordered to pay all of Highland's legal fees and expenses related to HCRE's POC, including the motion to disqualify and all discovery.

---

[5] In addition to the application of the *Manchester* Factors, Highland will present evidence establishing that Mr. Dondero lacked a good faith basis to sign HCRE's POC and that it was fabricated. Specifically, the evidence will establish that the Allocation that HCRE contends was the product of a "mistake" was: (a) drafted by employees of entities owned and/or controlled by Mr. Dondero; (b) consistently set forth in four separate provisions of the Amended LLC Agreement; (c) one of the few provisions in the Amended LLC Agreement that was negotiated with BH Equities before BH Equities was admitted as a new member in SE Multifamily; and (d) according to BH Equities, consistent with the Parties' intent.

3

5. For the reasons set forth herein, the Motion to Withdraw should be denied; if not, it should be granted subject to all of the Conditions.

**RELEVANT BACKGROUND**

A. **Highland, HCRE, and BH Equities Pursue "Project Unicorn" and Enter into the Amended LLC Agreement**

6. In the summer of 2018, HCRE and Highland began moving forward with a plan to purchase 26 properties with an estimated value over $1.1 billion (referred to as "Project Unicorn").[6] Project Unicorn was a complex transaction with multiple, overlapping components. *See, e.g.*, **Morris Dec. Ex. 1** at 29:18-30:7.

7. The first step was to formalize the relationship between HCRE and Highland. At all relevant times until January 9, 2020, both entities were controlled by James Dondero ("Mr. Dondero"), but HCRE had no employees of its own and relied on Highland's employees (and employees of other entities controlled by Mr. Dondero) to conduct business on its behalf.

8. Highland and HCRE entered into that certain *Limited Liability Company Agreement* for SE Multifamily Holdings LLC ("SE Multifamily"), dated as of August 23, 2018 (the "Original LLC Agreement") pursuant to which SE Multifamily was created. **Morris Dec. Ex. 2**. SE Multifamily was created to, among other things, serve as the Project Unicorn vehicle to acquire and improve real property on behalf of its members, Highland and HCRE. *Id*. ¶ **1.3**.

9. The Original LLC Agreement (a) allocated 51% of SE Multifamily's membership interests to HCRE and 49% of those interests to Highland and (b) was signed by Mr. Dondero on behalf of both Highland and HCRE. *Id*. at 17 and Schedule A.

---

[6] *See, e.g.*, *Brief in Opposition to Debtor's Motion to Disqualify Wick Phillips* [Docket No. 2279] ¶¶ 4-6.

10. In order to finance the acquisition of the real estate, Highland and HCRE, among other borrowers (the "Borrowers"), entered into that certain *Bridge Loan Agreement* (the "Loan Agreement") pursuant to which the Borrowers obtained a secured loan from Keybank, N.A. ("Keybank"), as of September 26, 2018. *See* **Morris Dec. Ex. 3** § 2.02(a) and (b) (providing that the purpose of the financing was "to finance the acquisition cost of the Mortgaged Properties" and "to finance a portion of the acquisition cost of the Portfolio Properties . . . .") The Loan Agreement financed about half of the purchase price of the real estate acquisition and was a necessary component to the closing of Project Unicorn. **Morris Dec. Ex. 1** at 32:21-33:8.

11. Pursuant to the Loan Agreement, Keybank provided up to $556,275,000 in secured loans to the Borrowers, including Highland and HCRE.[7] The Loan Agreement also provided, among other things, that (a) all of the Borrowers (including Highland) were jointly and severally liable for all amounts owed under the Loan Agreement, but (b) HCRE was designated as the "Lead Borrower" with the sole authority to request and obtain borrowings and to determine how loan proceeds would be distributed among the Borrowers. **Morris Dec. Ex. 3** ¶¶ 1.05(a), (b).

12. Highland was essential to Project Unicorn because, among other things, it enhanced the creditworthiness of the Borrowers and enabled the financing under the Loan Agreement to go forward. *See* **Morris Dec. Ex. 4** at 25:11-17 ("And KeyBank needed more credit from the borrower side since this was such a large transaction, and that's when Highland Capital was added as an additional borrower to the loan").

13. BH Equities, LLC ("BH Equities") worked with Highland on Project Unicorn in anticipation of becoming a member of SE Multifamily. Without any formal agreement,

---

[7] Notably, SE Multifamily (the entity created to hold the "unicorn") was not a "Borrower."

BH Equities contributed approximately $21 million in capital to fund Project Unicorn expenses. **Morris Dec. Ex. 1** at 33:9-16, 34:5-35:17.

14. BH Equities, HCRE, and Highland formalized their relationship on March 15, 2019, with BH Equities acquiring 6% of SE Multifamily's membership interests from Highland and HCRE in exchange for the $21 million previously contributed pursuant to that certain *Amended and Restated Limited Liability Company Agreement*, dated as of August 23, 2018 (the "Amended LLC Agreement"). Mr. Dondero signed the Amended LLC Agreement on behalf of HCRE and Highland. **Morris Dec. Ex. 5** at 18 and Schedule A.

15. Pursuant to the Amended LLC Agreement, SE Multifamily's membership interests were allocated 47.94% to HCRE, 46.06% to Highland; and 6% to BH Equities (the "Allocation"). *Id*. at §§ 1.7, 6.1(a), 9.3 and Schedule A. [8]

16. HCRE has served as the manager of SE Multifamily since that entity was formed in August 2018. *See Id*. § 1.6.

---

[8] Under the Amended LLC Agreement, while HCRE was allocated 47.94% of the ownership interests and entitled to 47.94% of the "Net Distributable Cash," Highland was allocated 94% of the book "Profits and Losses" from the enterprise. **Morris Dec. Ex. 5** § 6.4(a). According to BH Equities, this "wasn't exactly normal" because "[n]ormally the allocation of profit and losses would also follow an allocation—the waterfall allocation or those things more closely." **Morris Dec. Ex. 1** at 62:15-63:21. Notwithstanding this provision, Highland never received any cash distributions, but was allocated in excess of $30 million of net rental real estate income in 2018 and 2019, which it recognized for purposes of preparing Highland's tax returns. By contrast, HCRE allocated itself zero profits for the years 2018 and 2019, while receiving actual distributions in excess of its "contributed capital." Further, by allocating the loan proceeds entirely to itself, notwithstanding that Highland was jointly and severally liable under the Loan Agreement, HCRE took all of the deductible interest for itself thereby reducing its own tax burden. In other words, taxable gains were washed through Highland, while deductions were used by HCRE. Compounding the potential impropriety of these tax allocation gymnastics, all of the "Distributable Cash" that was actually distributed to Highland-related parties (millions of dollars) was sent to HCRE and Liberty while Highland received nothing. Although similar in style, the scale is not near the more than [$350] million of ordinary, capital gain, and other income attributed to "Hunter Mountain Investment Trust" in 2016 after virtually all of the Highland economic interests were transferred to that entity at the end of 2015. Highland is continuing to investigate that transaction. As a minority member of SE Multifamily (controlled and managed by Mr. Dondero), Highland has a reasonable expectation that similar shenanigans will continue or even exacerbate in the future if this matter is not now resolved with finality.

6

**B.**     **HCRE Files a Proof of Claim, the Debtor Objects, and a Contested Matter Is Initiated**

17.     On October 16, 2019, Mr. Dondero caused Highland to file a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS).  Docket No. 3 at 4.

18.     On April 8, 2020, Mr. Dondero caused HCRE to file a proof of claim that was denoted by the Debtor's claims agent as proof of claim number 146 ("HCRE's POC"). HCRE's POC asserted, among other things, that:

> [HCRE] may be entitled to distributions out of SE Multifamily, but such distributions have not been made because of the actions of inactions of the Debtor.  Additionally, [HCRE] contends that all or a portion of Debtor's equity, ownership, economic rights, equitable or beneficial interests in SE Multifamily does [not] belong to the Debtor or may be property of [HCRE].  Accordingly, [HCRE] may have a claim against the Debtor.

**Morris Dec. Ex. 6** at 5.[9]

19.     On July 30, 2020, the Debtor objected to HCRE's POC contending that it had no liability under HCRE's POC. Docket No. 906 (the "Debtor's Initial Objection").

20.     On October 16, 2020, HCRE responded to the Debtor's Initial Objection ("HCRE's Initial Response") asserting, among other things:

> After reviewing what documentation is available to HCREP with the Debtor, HCREP believes the organizational documents relating to SE Multifamily Holdings, LLC (the "SE Multifamily Agreement") improperly allocates the ownership percentages of the members thereto due to mutual mistake, lack of consideration, and/or failure of consideration.  As such, HCREP has a claim to reform, rescind and/or modify the agreement.

**Morris Dec. Ex. 7** ¶ 5.

---

[9] Mr. Dondero signed HCRE's POC under penalty of perjury with a notice next to his signature reminding him of the criminal penalties that could be imposed for filing a fraudulent proof of claim.

7

21.     HCRE's Initial Response was filed by the law firm of Wick Phillips Gould & Martin, LLP ("Wick Phillips"). *See id.*

## C.     The Parties Litigate for Nearly Two Years

22.     With the Parties' positions established, they proceeded to litigate the merits of HCRE's POC and Highland's objections thereto.

### 1.     Initial Discovery

23.     On December 10, 2020, the Parties entered into a proposed scheduling order that was subsequently approved by the Court.  Docket Nos. 1536 and 1568 (the "Initial Scheduling Order").  Pursuant to the Initial Scheduling Order, the Parties were to complete discovery by March 8, 2021.  Docket No. 1536 ¶ 1.

24.     Consistent with the Initial Scheduling Order, the Debtor (a) timely served deposition notices and subpoenas, as amended, on HCRE and others, (b) engaged in written discovery, and (c) searched for and produced voluminous documents, including e-mail communications, requested by HCRE.[10]

25.     While reviewing documents in preparation for depositions, the Debtor discovered that Wick Phillips had jointly represented HCRE and Highland in connection with at least some of the underlying transactions concerning Project Unicorn.  Highland immediately brought the issue to HCRE's attention, but HCRE refused to acknowledge that any conflict existed, and Wick Phillips refused to step aside.

### 2.     The Wick Phillips Disqualification Motion

26.     With no choice other than litigating against its prior counsel, the Debtor moved to disqualify Wick Phillips on April 14, 2021.  Docket Nos. 2196, 2197, and 2198 (the

---

[10] *See, e.g.*, Docket Nos. 1898, 1918, 1964, 1965, 1995, 1996, 2118, 2119, 2134, 2135, 2136, and 2137.

"Disqualification Motion"). In the Disqualification Motion, the Debtor contended, among other things, that Wick Phillips should be disqualified from representing HCRE because that firm previously represented the Parties jointly such that pursuing claims against the Debtor would violate Wick Phillips' duties to Highland.[11]

27. On May 6, 2021, HCRE filed its opposition to the Disqualification Motion [Docket Nos. 2278 and 2279], and on May 12, 2021, the Debtor filed its preliminary reply. Docket No. 2294.

28. On May 24, 2021, the Court entered a scheduling order with respect to the Disqualification Motion. Docket No. 2361 (the "Initial DQ Scheduling Order"). The Initial DQ Scheduling Order was amended on August 23, 2021. *See* Docket No. 2757.

29. The Disqualification Motion was heavily contested. The Parties engaged in written discovery, took fact depositions, and retained experts and engaged in expert discovery.[12]

30. On October 1, 2021, following the completion of fact and expert discovery, the Debtor supplemented its Disqualification Motion. Docket Nos. 2893, 2894 and 2895 (the "Supplement").

---

[11] The move to disqualify Wick Phillips was not an academic exercise. Wick Phillips was an integral part of constructing "Project Unicorn" (as the SE Multifamily transaction was known) for the Highland entities and was working with Mr. Dondero to divest Highland of its ownership stake. This was not the first questionable Highland real estate transaction with which these parties were involved. In 2018, in a transaction referred to as "HE 232," Wick Phillips (through D.C. Sauter, then outside counsel) took direction from Scott Ellington to transfer approximately $3 million that rightfully belonged to Highland to a Cayman Islands entity indirectly owned and controlled by Mr. Dondero and Mr. Ellington as part of the secret "**SAS Structure**." Highland continues to investigate these and related Cayman Island transactions.

[12] *See, e.g.*, Docket No. 3054, Ex. 11 (deposition transcript of Robert Wills, HCRE's Rule 30(b)(6) witness for the Disqualification Motion); Docket No. 3054, Ex. 12 (deposition transcript of Robert Kehr, the Debtor's expert on issues of professional responsibilities and attorney ethics); and Docket No. 3060, Ex. 12 (deposition transcript of Ben Selman, HCRE's expert on issues of professional responsibilities and attorney ethics).

31.     On October 15, 2021, HCRE filed its response to Highland's Supplement, [Docket Nos. 2927 and 2928], and on October 22, 2021, Highland filed its reply.  Docket No. 2952.

32.     In advance of the contested hearing on the Disqualification Motion, the Parties filed their respective witness and exhibit lists, as amended.  *See* Docket Nos. 3051, 3052, 3054, and 3060.

33.     On November 30, 2021, the Court held a lengthy hearing on the Disqualification Motion.  *See* Docket Nos. 3062, 3071.

34.     On December 10, 2021, the Court entered an order resolving the Disqualification Motion by, among other things, disqualifying Wick Phillips from representing HCRE in the contested matter concerning HCRE's POC.  Docket No. 3106.

> **3.     After the Parties Nearly Complete Discovery, Highland Informs HCRE that It Will Move for Summary Judgment**

35.     On January 14, 2022, Hoge & Gameros, LLP ("Hoge & Gameros") filed a notice of appearance on behalf of HCRE. Docket No. 3181 (the "Notice of Appearance").

36.     On June 9, 2022, the Parties filed a proposed amended scheduling order that the Court subsequently approved. Docket Nos. 3356 and 3368 (the "Amended Scheduling Order").[13]

---

[13] Despite filing the Notice of Appearance, Hoge & Gameros made no effort to contact Highland' counsel to prosecute HCRE's POC for more than two months.  Consequently, on March 31, 2022, Highland's counsel took the initiative to try to bring this matter to a conclusion, but it took several more weeks and follow-up communications before HCRE's counsel drafted an amended scheduling order.  **Morris Dec. Ex. 8**

37.     Pursuant to the Amended Scheduling Order, the Parties exchanged a second round of written discovery and document production and served various deposition notices and subpoenas, as amended.[14]

38.     On July 7, 2022, Highland filed notices of subpoena (the "Subpoenas") for Mr. Dondero and Mr. McGraner and a Rule 30(b)(6) notice for HCRE (the "HCRE Notice" and together with the Subpoenas, the "Notices").[15]  Docket Nos. 3392, 3393, and 3394.  Hoge & Gameros accepted service of the Subpoenas, and the Notices were amended to accommodate the schedules of HCRE's Witnesses and their counsel.[16]  **Morris Dec. Ex. 9**.

39.     Highland also served a subpoena on Mark Patrick ("Mr. Patrick").[17]  Mr. Patrick has worked at Mr. Dondero's direction for many years (first at Highland and then at Skyview) and was one of the architects of the tax structure embedded in the Amended LLC Agreement.  Mr. Patrick was represented by separate counsel, and Highland completed his deposition on August 2, 2022, during which HCRE asked no questions.

40.     Highland also served a subpoena on BH Equities that required both the production of documents and an appearance at a deposition.[18]  BH Equities was represented by independent counsel, and Highland completed its deposition on August 4, 2022, during which HCRE asked no questions.

41.     Highland also served a subpoena on Barker Viggato, LLP ("Barker Viggato" and together with BH Equities, the "Third-Party Witnesses") that required both the

---

[14] *See, e.g.*, Docket Nos. 3385, 3386, 3418, 3363, 3383, 3392, 3393, 3394, 3412, 3415, 3416, 3417, 3451, and 3452.

[15] The witnesses subject to the Notices (*i.e.*, Mr. Dondero, Mr. McGraner, and HCRE's corporate representative) are collectively referred to as "HCRE's Witnesses".

[16] Docket Nos. 3385, 3415, 3416, and 3418.

[17] Docket Nos. 3394 and 3412.

[18] Docket Nos. 3350 and 3363.

production of documents and the appearance at a deposition.[19] Barker Viggato is the accounting firm that prepared the tax returns and the members' Forms K-1s for SE Multifamily based on information provided by HCRE. Barker Viggato was represented by independent counsel, and Highland completed its deposition on August 5, 2022, during which HCRE asked no questions.

42. HCRE served a Rule 30(b)(6) notice on Highland, and James P. Seery, Jr. was deposed as Highland's corporate representative on August 10, 2022.

43. Pursuant to the final versions of the Notices, and as agreed to by the Parties' counsel, Mr. Dondero was scheduled to be deposed on August 16, and Mr. McGraner was scheduled to be deposed on August 17 in both his individual capacity and in his capacity as HCRE's Rule 30(b)(6) witness (the "Consensual Depositions"). **Morris Dec. Ex. 10**.

44. On August 12, 2022, two days after taking Highland's deposition, HCRE filed the Motion to Withdraw. On August 15, 2022, HCRE's counsel informed Highland's counsel that HCRE was unilaterally cancelling the Consensual Depositions scheduled to take place over the next 48 hours.

## D.     Mr. Dondero Lacked a Good-Faith Basis to Cause HCRE's POC to Be Filed

45. Substantial evidence exists that establishes that HCRE lacked a good-faith basis to assert that the Allocation set forth in the Amended LLC Agreement was the result of a "mistake" or "lack of consideration."

### 1.     Employees Working at Mr. Dondero's Direction Drafted the Amended LLC Agreement

46. The evidence will show that Mr. Dondero controlled HCRE and Highland at the times the Original LLC Agreement and the Amended LLC Agreement were executed, and

---

[19] Docket Nos. 3383 and 3417.

DOCS_NY:46329.3 36027/003

because HCRE had no employees of its own, it relied on Highland's employees to execute Project Unicorn. The blurred lines between HCRE and Highland were clear to BH Equities.

47. BH Equities could not distinguish HCRE from Highland and observed that it viewed the negotiation of the Amended LLC Agreement as a bi-lateral negotiation, with BH Equities on one side, and Highland, HCRE, and Liberty CLO Holdco, Ltd. (a subsidiary of the DAF) ("Liberty") acting as a unitary actor on the other side. **Morris Dec. Ex. 1** at 26:6-22; 28:10-29:17; 69:10-70:5.[20]

48. "Highland" (the unitary actor from BH Equities' perspective) drafted the Amended LLC Agreement, and BH Equities provided comments. *Id*. at 43:9-44:3.

49. In short, the evidence will show that the Original LLC Agreement and the Amended LLC Agreement were drafted by individuals working at Mr. Dondero's direction.

### 2. The Allocation Is Set Forth in Four Different Places in the Amended LLC Agreement

50. The Allocation was reflected in four separate provisions of the Amended LLC Agreement, making the concept of "mistake" or "lack of consideration" far-fetched, at best.

51. Most prominently, Schedule A to the Amended LLC Agreement identified the "Capital Contributions and Percentage Interests" of the members:

| Member Name | Capital Contribution | Percentage Interest |
| --- | --- | --- |
| HCRE | $291,146,036 | 47.94% |
| Highland | $49,000 | 46.06% |
| BH Equities | $21,213,721 | 6.00% |

---

[20] Grant Scott, Mr. Dondero's childhood friend and college roommate, served as Liberty's Director. *See* **Morris Dec. Ex. 5** at 18 (Liberty's signature block). While Liberty apparently acquired certain preferred interests in SE Multifamily, BH Equities did not know who Mr. Scott was, never communicated with him, and never saw any comments to the Amended LLC Agreement tendered on behalf of Liberty. **Morris Dec. Ex. 1** at 42:4-19.

**Morris Dec. Ex. 1** at Schedule A.[21]

52.     As if Schedule A were not enough, the Allocation was set forth in three other provisions in the Amended LLC Agreement: Section 1.7 (Company Ownership),[22] Section 6.1(a) (Distributable Cash),[23] and Section 9.3(e) (Liquidation).[24]

53.     At the time the Amended LLC Agreement was executed, BH Equities believed that the Allocation set forth in Schedule A and in sections 1.7, 6.1(a), and 9.3 reflected the Parties' intent; none of the members identified and errors or suggested otherwise. **Morris Dec. Ex. 1** at 49:5-15; 50:6-11; 50:16-51:7; 54:4-19; 55:12-19; 56:5-57:19; 58:9-59:23; 62:10-14. In fact, BH Equities agreed that Highland would receive 46.06% of the membership interests in SE Multifamily even though it only contributed $49,000 in capital because it understood that was part of the deal. *Id.* at 52:4-20; 60:16-61:21.

54.     In sum, the evidence will show that (a) the Allocation was consistently and unambiguously set forth in four (4) separate provisions of the Amended LLC Agreement; (b) to

---

[21] The evidence will show that HCRE did not actually contribute *any* of its own capital to SE Multifamily—and took no financial risk in connection with Project Unicorn—notwithstanding the "capital contribution" set forth in Schedule A. Instead, HCRE took the corporate opportunity from Highland by misusing its authority under section 1.05(b) of the Loan Agreement to allocate for itself approximately $250 million of the KeyBank loan proceeds and claiming "credit" for the capital even though Highland remained jointly and severally liable for the obligations and provided all of the resources to consummate and execute Project Unicorn. Separately, HCRE borrowed the balance of its "capital contribution" from another affiliate of Mr. Dondero's. Because all of HCRE's "capital contribution" was derived from the proceeds of loans, distributions from SE Multifamily were initially used to pay down those loans in accordance with the "waterfall" set forth in the Amended LLC Agreement. **Morris Dec. Ex. 1** at 123:23-125:7; 126:9-127:21. Thus, by the end of 2020, HCRE held a debt-free 47.94% interest in SE Multifamily without ever having taken any risk and by exploiting Highland's platform, apparent creditworthiness, advantageous tax structure, and human resources. Project Unicorn, indeed.

[22] Section 1.7 of the Amended LLC Agreement provides, among other things, that "except with respect to particular items specified in this Agreement, HCRE shall have 47.94% ownership interest, HCMLP shall have a 46.06% ownership interest, and BH shall have a 6% ownership interest." **Morris Dec. Ex. 5** at 3.

[23] Section 6.1(a) of the Amended LLC Agreement provides, among other things, that "[e]xcept as otherwise specifically provided in this Article 6 and Article 9, all Distributable Cash shall be distributed (i) 47.94% to HCRE, (ii) 46.06% to HCMLP, and (iii) 6% to BH." **Morris Dec. Ex. 5** at 10.

[24] Section 9.3 of the Amended LLC Agreement provides, among other things, that any residual value in a liquidation be distributed "(i) 47.94% to HCRE, (ii) 46.06% to HCMLP, and (iii) 6% to BH." **Morris Dec. Ex. 5** at 14-15.

14

eliminate any doubt, Schedule A set forth the Parties' respective capital contributions side-by-side with the Allocations; and (c) BH Equities has testified that the Allocation was consistent with the Parties' intent at the time the Amended LLC Agreement was entered into.

**3.     The Allocation Was Among the Only Provisions in the Amended LLC Agreement that Was Negotiated**

55.     Ironically, the Allocation was among the only provisions of the Amended LLC Agreement that BH Equities and "Highland" actually discussed.

56.     On March 15, 2019 (the day the Amended LLC Agreement was executed), Paul Broaddus, a Highland employee working at Mr. Dondero's direction, sent an e-mail to BH Equities (with a copy to Matt McGraner) attaching a copy of Schedule A that set forth the Allocation as a stand-alone document. **Morris Dec. Ex. 11**. According to BH Equities, ***Schedule A, including the members' actual contribution numbers, was drafted by "Highland"*** and was the subject of discussions before the Amended LLC Agreement was executed – and HCRE has never asked BH Equities to amend Schedule A. **Morris Dec. Ex. 1** at 75:23-78:20; 103:3-7.

57.     The Allocation was also raised in the context of Section 6.1, referred as the "waterfall," because that provision fixed the priority of cash distributions from SE Multifamily and BH Equities wanted assurances that all capital contributions would be returned before other distributions were made. Thus, later the same day, BH Equities resurrected an earlier proposal to address the issue, but HCRE rejected it. **Morris Dec. Ex. 1** at 80:23-83:14; **Ex. 12**.

58.     Later, Mr. Broaddus sent a counterproposal to BH Equities that was drafted by Freddy Chang (another individual employed in the Highland complex) that (a) addressed BH Equities' concerns, (b) was adopted in full as section 6.1 of the Amended LLC Agreement, and (c) specifically set forth the Allocation. **Morris Dec. Ex. 1** at 88:21-89:25; 91:3-94:16; **Ex. 13**.

15

59.     In sum, Schedule A and Section 6.1 (a) were drafted by employees working within the "Highland" complex; (b) expressly and unambiguously set forth the Allocation; and (c) were among the only provisions in the Amended LLC Agreement that were the subject of negotiations between "Highland" and BH Equities.

### 4.     Highland Intended to Move for Summary Judgment

60.     The foregoing facts prove that Mr. Dondero lacked a good-faith basis to file HCRE's POC and would be among the facts Highland would rely upon in support of its anticipated motion for summary judgment.[25]

61.     It is absurd to suggest that supposedly sophisticated people like Messrs. Dondero, McGraner, Broaddus, Patrick, and Chang could draft and/or execute the applicable agreements and negotiate BH Equities without ever realizing what the Allocation—again, set out in four different provisions—clearly stated.

62.     HCRE's POC was not filed in good faith, and after two years of contested litigation and after receiving notice of Highland's intent to move for summary judgment, HCRE should not be permitted to say "never mind" while reserving the (alleged) right to simply pick up litigation elsewhere at a time and place of its choosing.

### E.     The Motion to Withdraw Was Not Filed in Good Faith

63.     The timing and purported reason for the Motion to Withdraw demonstrate that it was not filed in good faith.  HCRE clearly has undisclosed motives and seeks an unfair, strategic advantage.

---

[25] This list of facts is not intended to be exhaustive.  Other evidence—including, but not limited to, tax returns and Forms K-1 that HCRE caused SE Multifamily to prepare—will further establish that HCRE, its principals, and those working on its behalf always knew and intended that Highland had a 46.06% interest in SE Multifamily.

DOCS_NY:46329.3 36027/003

64. ***First***, HCRE claims that it filed the Motion to Withdraw because SE Multifamily has "operated without anticipated interference from the Debtor" and HCRE wants to avoid the cost and uncertainty of litigation. Motion to Withdraw at 2. But HCRE will never be able to offer any evidence to support its suggestion that Highland has interfered or threatened to interfere with SE Multifamily, or that HCRE ever did anything to address its alleged concerns.

65. Moreover, raising concerns about costs (a peculiar proposition given Mr. Dondero's conduct throughout this case) after two years of hard-fought litigation where all that remains is a few depositions and a short trial is simply not credible. It makes no economic sense to shut down the litigation at this stage with so much supposedly at stake.[26]

66. ***Second***, the timing of the Motion to Withdraw is highly suspicious because ***in the seven-day period before the Motion was filed***: (a) the Parties negotiated, and the Court approved, an amendment to the Scheduling Order to enable HCRE to proffer expert opinions [Docket Nos. 3434 and 3438]; (b) HCRE made a supplemental production of over 4,000 documents, and counsel for the Parties spent time dealing with the ramifications of HCRE's untimely and substantial production [**Morris Dec. Ex. 14**]; (c) HCRE took the deposition of Mr. Seery as Highland's corporate representative two calendar days before filing the Motion to Withdraw; and (d) HCRE filed the Motion to Withdraw just days before its Witnesses were expected to testify per agreement [**Morris Dec. Ex. 15**].

67. ***Third,*** based on the foregoing, HCRE's true intent is transparent: it seeks an improper and unfair strategic advantage by avoiding depositions now, leaving the specter of future litigation hanging over Highland's head, and preserving the ability to re-file its claim later

---

[26] According to Mr. Dondero's "family trust," Highland's interest in SE Multifamily is worth $20 million. *See Motion for Determination of the Value of the Estate and Assets Held by the Claimant Trust* [Docket No. 3382]. Dugaboy's valuation is notable because it shows that HCRE's last-second concern about costs lacks credibility: after two years of litigation, a rational actor would absorb the cost of a few depositions and a short trial to capture a $20 million asset.

(and presumably elsewhere) – in which it could take discovery of Highland and the Third-Party Witnesses, all of which is now foreclosed under the current Scheduling Order.

**F. HCRE Materially Breached the Amended LLC Agreement**

68. HCRE has breached its obligations to Highland in material ways.

69. *First*, the evidence will show that HCRE breached its duty of good faith and fair dealing by eliminating the "tax distribution" provision from the Original LLC Agreement while saddling Highland with 94% of SE Multifamily's profits and losses. *See* **Morris Dec. Ex. 2** § 6.1(f) (tax distribution provision in the Original LLC Agreement that was deleted from the Amended LLC Agreement).

70. *Second*, the evidence will show that, at Mr. McGraner's direction, HCRE breached the Amended LLC Agreement by causing SE Multifamily to return all "capital contributions" to itself and BH Equities while failing to return Highland's capital at the same time.

71. *Third*, the evidence will show that HCRE breached section 8.3 of the Amended LLC Agreement by failing to allow Highland to inspect and copy SE Multifamily's books and records. **Morris Dec. Ex. 15** (Highland's June 28, 2022 demand for access to SE Multifamily's books and records); **Morris Dec. Ex. 16** (e-mail chain showing that all of the lawyers representing HCRE and Mr. Dondero failed to provide any substantive response to Highland's demand).

## ARGUMENT

**A. Applying the *Manchester* Factors Mandates Denying the Motion**

72. Highland agrees that the applicable standard for this Court's consideration of the Motion is set forth in *Manchester, Inc. v. Lyle (In re Manchester, Inc.)*, 2008 Bankr. LEXIS 3312 (Bankr. N.D. Tex. December 19, 2008). Application of those factors here should compel this Court to deny the Motion.

73.     The factors outlined in *Manchester* are:

(1) the movant's diligence in bringing the motion, (2) any "undue vexatiousness" on the part of the movant, (3) the extent to which the suit has progressed, including the effort and expense undertaken by the non-moving party to prepare for trial, (4) the duplicative expense of re-litigation, and (5) the adequacy of the movant's explanation for the need to withdraw the claim.[27]

74.     HCRE applies these factors in a conclusory, selective, and evasive manner. Instead, based on the facts set forth above, the legal prejudice is clear:

- HCRE failed to diligently bring the Motion to Withdraw—and fails to identify what has occurred after two years of litigation to cause it to file the motion at this time.

- "Undue vexatiousness" is easily established: HCRE forced Highland to spend two years litigating and providing complete discovery while now attempting to shut this down before its Witnesses can be deposed and after being informed that Highland intends to move for summary judgment—all while trying to preserve the ability to resurrect the litigation without the restrictions of this Court's scheduling orders.

- Highland has spent considerable time, money, and effort on this matter, including retaining an expert, searching for and producing thousands of pages of documents, taking third-party discovery, and marshalling evidence to present for summary judgment.

- Re-litigating the claims asserted in HCRE's POC would be needlessly expensive and duplicative and (if HCRE has its way) would result in more discovery that is otherwise now foreclosed to it.

- HCRE's explanation for why it suddenly wishes to withdraw its proof of claim has no basis in fact.

75.     The *Manchester* Factors are obviously intended to protect the integrity of the bankruptcy process. When the actual facts and procedural posture of this contested matter are applied, it is clear the Motion to Withdraw should be denied.

76.     The cases HCRE cites do not command a different result. HCRE relies on *Le Compte v. Mr. Chip, Inc.*, 528 F.2d 601 (5th Cir. 1976), for the proposition that merely gaining

---

[27] 2008 Bankr. LEXIS 3312, at *11–12.

a "tactical advantage" is "no bar to dismissal" under Rule 41(a) of the Federal Rules of Civil Procedure. But *Le Compte* is factually distinguishable. There, the defendants opposing the dismissal failed to "indicate how defendants would be prejudiced by an unconditional dismissal …. [T]here is nothing … in the record from which we can ascertain whether the court properly exercised its discretion in imposing conditions on the dismissal." *Id.* at 605. Unlike the defendants in *Le Compte*, Highland has demonstrated the significant prejudice an unconditional dismissal would inflict on Highland and the Claimant Trust beneficiaries.[28]

77. The Fifth Circuit refused to broadly apply *Le Compte* in later cases, calling the district court's conditions in that case "unusual" and noting that "the conditions seemed designed to disadvantage the plaintiff, rather than protect the defendant." *Robles v. Atl. Sounding Co.*, 77 Fed. Appx. 274, 276 (5th Cir. 2003). In *Robles*, the Fifth Circuit affirmed the district court's imposition of two conditions on the dismissal "designed to cure any potential prejudice." *Id.* In affirming the district court's dismissal order, the *Robles* court also noted that "[p]lain legal prejudice can also exist regarding the timing of a motion for voluntary dismissal…. [F]iling a motion for voluntary dismissal at a late stage in the litigation can be grounds for denying the motion." *Id.* at 275 (citing *Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 199 (5th Cir. 1991) ("When a plaintiff fails to seek dismissal until a late stage of trial, *after the defendant has*

---

[28] HCRE also relies on *Kumar v. St. Paul Surplus Lines Ins. Co.*, 2010 WL 1946341 (N.D. Tex. May 12, 2010), for the unremarkable proposition that a plaintiff should ordinarily be permitted to dismiss a lawsuit it no longer wishes to pursue. In that case, the plaintiff had brought a third-party action against its insurer but then sought to dismiss the case before anything of significance had happened in the litigation. The *Kumar* court did note, however, that "a defendant's loss of significant time, effort, or expense in preparing for trial can also constitute legal prejudice" sufficient to deny a motion to dismiss. 2010 WL 1946341, at *4 (citing *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003), and *Oxford v. Williams Cos., Inc.*, 154 F. Supp. 2d 942, 952–53 (E.D. Tex. 2001) (denying dismissal when the plaintiff filed for dismissal after 21 months of significant trial preparation)). Again, Highland will suffer precisely this type of harm, among other things, if HCRE is permitted to withdraw its proof of claim without prejudice and without conditions.

*exerted significant time and effort*, then a court may, in its discretion, refuse to grant a voluntary dismissal") (emphasis added).[29]

78.     A case HCRE cites that *does* resemble this case—to the extent Federal Rule of Civil Procedure 41(a)(2) guides a bankruptcy court's consideration of a motion under Bankruptcy Rule 3006—is *Forbes v. CitiMortgage, Inc.*, 998 F. Supp. 2d 541 (S.D. Tex. 2014). There, the district court denied the plaintiff's motion to dismiss, describing a procedural history that should strike this Court as familiar. The plaintiff commenced a suit and then engaged in "a lengthy discovery dispute" for nearly two years, requiring the defendant to file a motion to compel plaintiff's response to several discovery requests she had ignored. A week after the defendant filed its sanctions motion, but before the court could rule on that motion, the defendant filed a motion for summary judgment and "[w]ithin minutes, [plaintiff] filed her motion to dismiss the entire action without prejudice …." 998 F. Supp. 2d at 546–47. Just like HCRE here,

> Forbes filed her motion to dismiss this action without prejudice nearly **two years** after the action was removed to federal court … The **timing** of Forbes's motion, however—after CitiMortgage filed its motions for discovery sanctions and for summary judgment—provides insight into her reasons. The circumstances indicate that Forbes's motion is a **plain attempt to avoid the consequences of her failure to participate in discovery** and to avoid an adverse ruling in her case. CitiMortgage contends that it will be prejudiced if Forbes's motion is granted and opposes dismissal. At the present stage of the litigation, CitiMortgage has

---

[29] HCRE ignores *Davis* and other cases that uphold a denial of a dismissal motion but *does* cite *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314 (5th Cir. 2002), and *Ikospentakis v. Thalassic S.S. Agency*, 915 F.2d 176 (5th Cir. 1990). Neither case resembles the situation currently before this Court, and neither case supports HCRE's position here. The *Elbaor* court affirmed the district court's placing of conditions on the dismissal because the defendant "argued below in its opposition … that it would be prejudiced by an unconditional dismissal because such a dismissal would potentially strip it of a viable statute of limitations defense." 279 F.3d at 318. The court continued, "because dismissal without prejudice would have caused [defendant] plain legal prejudice, the district court had only two options: it could deny the motion or it could craft reasonable conditions that would eliminate the prejudice." *Id.* at 319. "If the district court chooses the latter path, we note that our case law requires that the district court allow the [plaintiffs] the opportunity to withdraw their motion to dismiss rather than accept the conditions." *Id* at 320. *Ikospentakis* is a maritime case in which the Fifth Circuit **vacated** the district court's dismissal order because the defendants would suffer the clear legal prejudice of losing the ability to assert a substantive venue defense in any subsequent lawsuit. 915 F.2d at 178. That court reached the opposite conclusion HCRE desires here, citing one of the reasons Highland opposes an unconditional dismissal without prejudice.

21

answered the complaint, the parties have participated in scheduling conferences, the parties engaged in mediation, discovery is now complete, and Defendant has briefed and filed a motion for summary judgment. **Based on the factual and procedural history of this case, the Court finds that Defendant will suffer plain legal prejudice if Plaintiff's case is dismissed at this late stage** and Plaintiff is given another opportunity to bring her claims without facing the consequences of her actions in this case. Therefore, Plaintiff's motion to dismiss is denied.

*Id.* at 547 (emphases added).

79.     *Forbes* is squarely on point. Just as in *Forbes,* HCRE filed its Motion to Withdraw after two years of litigation during which Highland (a) waged a lengthy battle to disqualify its former counsel; (b) produced thousands of documents and otherwise satisfied ***all*** of its discovery obligations; (c) took third-party discovery; and (d) notified HCRE that it intends to move for summary judgment. Just as in *Forbes,* HCRE's true motive in seeking to withdraw its Proof of Claim can be gleaned from the timing of its motion—HCRE wants to avoid having its witnesses deposed and facing Highland's imminent summary judgment motion. And just as in *Forbes,* Highland "will suffer plain legal prejudice" if HCRE is permitted to withdraw HCRE's POC "at this late stage and … is given another opportunity to bring [its] claims without facing the consequences of [its] actions in this case."[30]

## B.     <u>Alternatively, the Court Should Impose the Conditions to Mitigate the Prejudice to Highland</u>

80.     HCRE fails to cite any decision granting a motion to withdraw a proof of claim under Bankruptcy Rule 3006 without "terms and conditions" in circumstances remotely similar to those present here. The cases HCRE relies on *all* state that the bankruptcy court can and should impose adequate conditions on any order permitting the withdrawal of a contested proof of

---

[30] The court in *Davis* reached a similar result for similar reasons: "The Davises moved to dismiss this case without prejudice more than a year after the case was removed to federal court. They filed their motion after months of filing pleadings, attending conferences, and submitting memoranda … we do not believe that the district judge abused his discretion in denying the motion for voluntary dismissal without prejudice." 936 F.2d at 199.

claim to redress the "plain legal prejudice" faced by the non-moving party. Conditioning the withdrawal is the only way to remedy Highland's plain legal prejudice and avoid allowing HCRE to benefit from the cynical games HCRE has shamelessly played here.

81.    If this Court is inclined to grant the Motion to Withdraw, this Court should exercise its discretion under Bankruptcy Rule 3006 and impose all of the Conditions.

## **CONCLUSION**

82.    For the foregoing reasons, Highland respectfully requests that this Court deny the Motion to Withdraw or, alternatively, grant the Motion to Withdraw subject to the Conditions, and grant such other relief the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

Dated: September 2, 2022.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:    jpomerantz@pszjlaw.com
             jmorris@pszjlaw.com
             gdemo@pszjlaw.com
             hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

24