**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case N. 19-34054 (SGJ) |
| Debtor. | |

**SUPPLEMENTAL AND AMENDED MOTION FOR DETERMINATION OF THE VALUE OF THE ESTATE AND ASSETS HELD BY THE CLAIMANT TRUST**

## I.  INTRODUCTION

1.      By this Motion, the Dugaboy Investment Trust ("Dugaboy") respectfully seeks a determination by this Court of the current value of the estate and an accounting of the assets currently held the Claimant Trust and available for distribution to creditors, as contemplated by the Fifth Amended Plan of Reorganization, as Amended (the "Plan") of Highland Capital Management, L.P. (the "Debtor" or "HCMLP").  Notably, although the latest quarterly operating report filed by the Reorganized Debtor projects a distribution to creditors totaling $205 million (a scant $11 million more than what the Debtor projected in its Plan Disclosure), Dugaboy has reason to believe that the mix of assets held by the Claimant Trust has changed dramatically since this Court confirmed the Plan and that the estate presently has sufficient cash and other assets with which to pay creditors in full plus interest.  At the same time, the Reorganized Debtor has reported that it has paid to professionals nearly $70 million since the Effective Date of the Plan—an enormous burn for an estate that projects payment of fractionally more to creditors.  And extrapolating from the Reorganized Debtor's most recent financial reporting, it appears that the

estate has reserved or accrued for tens of millions of dollars of additional professional fees.

2.    Notably, the Court previously described Dugaboy's interest in the estate as "extremely remote," a finding based solely on a projection as of February 2021.  *See* Order dated February 22, 2021, Dkt. 1943 ("Plan Confirmation Order") at ¶ 19; *see also id.*, ¶ 18.    That projection was made at an arbitrary point in time (now almost 19 months ago) and was based on the value of assets then held by the estate, which necessarily fluctuates.  But the value of the assets available for distribution to creditors is vastly different today than it was in February of 2021.  We know this because almost all of the major assets have been liquidated, transforming what were once projections into finite values, and other assets have increased in value.  Dugaboy believes that the combination of assets and cash held by the Claimant Trust in its own name and held in various funds, reserve accounts, and subsidiaries—if liquidated—would be sufficient to pay all Claimant Trust Beneficiaries in full, with interest or, at the very least, come very close.  In other words, based upon reality as opposed to the Debtor's projections 19 months ago, the nature of Dugaboy's interest in the estate—and its standing to seek redress in the bankruptcy proceedings—cannot now be classified as remote.

3.    By way of example only, at the time of the Debtor's settlement with HarbourVest, it reported the value of HarbourVest's interest in Highland CLO Funding, Ltd. ("HCLOF") as $22 million.  *See* Dkt 1625, p.9 at fn. 5.  But based on the research Dugaboy has done, HarbourVest's interest in HCLOF was worth closer to $45 million at the time the Debtor acquired that interest and is worth approximately $75 million today, with the majority of the value held in cash.[1]

---

[1] We know, for example, that HCLOF's interest in the Acis CLOs is worth at least $53 million, of which the Debtor

4.      Further, Dugaboy's interest in the estate is very much real and realizable because there is a potential for significant payment to residual equity holders, and the way in which the estate is managed (including its expenses for such management) could detrimentally affect Dugaboy's financial interests.  Indeed, Dugaboy believes that the estate has sold all but a few major assets of the estate, including most recently its Trussway asset, which upon information and belief, generated over $246,000,000 of additional cash with which to pay creditors.  In other words, the funds available to pay creditors and equity holders has grown tremendously since Plan confirmation.  This difference in value is important—and underscores the need for this Motion— because, if accurate, it means that professionals representing the Reorganized Debtor, the Claimant Trust, and the Litigation Sub-Trust are litigating claims against Dugaboy, Hunter Mountain, and others, even though the only beneficiaries of any recovery from such litigation will be Dugaboy and Hunter Mountain.  In other words, Dugaboy and Hunter Mountain are essentially footing the bill for huge legal fees so that the Claimant Trust and Litigation Sub-Trust can sue them only to return any recoveries back to them.  Dugaboy has a very significant interest in a determination as to whether sufficient funds currently exist or will exist to pay all creditors in full such that the estate and its professionals can stop incurring professional fees to pursue unnecessary litigation.

5.      The Debtor's failure to make any sizeable payments to creditors at this stage of proceedings is particularly curious in light of the Debtor's Plan Projections submitted in support of Plan confirmation.  Those Projections reflected the Debtor's intention to distribute to creditors $50,000,000 by September 30, 2021, $50,000,000 by March 31, 2022, $25,000,000 by June 30,

---

is entitled to 50.62% as a result of the acquisition of the HarbourVest interest, or $26.8 million.  HCLOF also had significant holdings in the Highland CLOs, which held, among other assets, MGM stock.  *See* Dkt. 1235 at ¶¶ 1-2.

2022, and all remaining proceeds soon after all remaining assets were monetized.  *See* Debtor's

Amended Witness and Exhibit List With Respect to Confirmation Hearing to Be Held on February

2, 2021, Ex. DDDDDDD, Dkt. 1866-5, p.3, n.P.  Despite these Plan Projections, as disclosed in

the Debtor's most recent Post-Confirmation Report and accompanying Global Notes to Post

Confirmation Report, the Debtor has distributed only $6,201,896 to the General Unsecured

Creditors, or 1.58% of the total Allowed Claims of $390,624,608, while having made

disbursements to parties other than the General Unsecured Creditors of $84,179,524 since the

Effective Date of the Plan, or 21.55% of the total Allowed Claims.  *See* Post-Confirmation Report

for the Quarter Ending 6/30/2022, Dkt. 3409 *and* Global Notes to Post Confirmation Report, Dkt.

3409-1.

6.      Even if the estate does not have sufficient assets at present to pay all allowed claims

in full, a determination of the current value of the estate would still benefit all creditors, residual

equity holders, and parties-in-interest because such a determination would reveal the spread

between the estate's asset value (exclusive of various adversary proceedings, including the notes

lawsuits and the Kirschner litigation) and the estate's net liabilities to creditors.  If all interested

parties were able to understand that spread, it could facilitate a settlement that would achieve

payment of creditors in full and resolution of all outstanding litigation while preventing the further

enormous burn occasioned by legal fees and other costs currently borne by the estate (nearly $70

million since the Effective Date and accruing at a rate of what Dugaboy estimates to be

approximately $5-$7 million/month).[2]

7.      Accordingly, this Motion seeks an evidentiary hearing so that the Court may

---

[2] Indeed, the Debtor's Post-Confirmation Report for the quarter ending June 30, 2022 indicates that the Reorganized

determine the current amount of cash and other assets currently held by the Claimant Trust for

distribution to Claimant Trust Beneficiaries (as that term is defined in the Plan). At the very least,

disclosure of the assets held by the Claimant Trust may facilitate a meaningful settlement

discussion and potentially end the litigation and appellate proceedings currently burdening the

estate and resulting in very high legal fees, to the detriment of creditors and residual equity

holders.

## II.   **BACKGROUND**

### A.   **HCMLP Files A Chapter 11 Petition Anticipating A Quick Restructuring And Exit From Bankruptcy**

8.     HCMLP filed its chapter 11 petition in bankruptcy in the United States Bankruptcy

Court for the District of Delaware on October 16, 2019. Dkt. 3.[3] The case was transferred over

HCMLP's objection to this Court on December 4, 2019. Dkt. 1. As the Court has since

acknowledged, at the time HCMLP filed its chapter 11 petition, the company had "relatively

insignificant secured indebtedness," "did not have problems with its trade vendors or landlords,"

and "did not suffer any type of catastrophic business calamity." Order (I) Confirming the Fifth

Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II)

Granting Related Relief ("Plan Confirmation Order"), Dkt. 1943, ¶ 8. Indeed, at the time of its

filing, HCMLP had over $550 million in assets and no outstanding judgment liabilities against it

other than the award issued by the American Arbitration Association in favor of the Redeemer

Committee of the Crusader Funds.[4] As a result, there was every reason to believe that HCMLP

---

Debtor had disbursed $84,179,524 since the Effective Date, only $6,201,896 of which has been paid on general unsecured claims. *See* Dkt. 3409-1 at pp. 2-3.

[3] All references to the docket are to the docket entries in the Bankruptcy Court for the Northern District of Texas.

[4] HCMLP expected to pay the Redeemer Committee approximately $110 million on that award, after offsets and other adjustments.

{00378831-1}                    5

could achieve a quick and orderly restructuring of its judgment debt and emerge from bankruptcy a going concern.

**B.    The Debtor and its Management Were Not Required To Disclose Assets and Transactions During Bankruptcy Proceedings**

9.    As the Court is aware, a quick exit from bankruptcy did not transpire as anticipated. During the 16 months between the time of HCMLP's bankruptcy filing and the Court's approval of the Plan, the estate's value fluctuated periodically.  Nonetheless, the Debtor—with the Court's approval—only provided the public with limited information regarding the mix of assets held by the estate (including at the subsidiary level).  The Court likewise granted the Debtor's request to shield from public scrutiny asset sales conducted by the Debtor's management during bankruptcy. For example, the Court authorized the Debtor to place assets that were acquired as part of the Debtor's settlement with HarbourVest into a non-debtor special purpose entity.  *See* Dkt. 1788. That placement meant that the true value of the asset, the asset's appreciated value, and its ultimate liquidation were not reported or disclosed to creditors or other interested parties.

10.    The Court also did not require the Debtor to file any Rule 2015.3 reports during the bankruptcy proceedings, notwithstanding that the Debtor did not seek relief from the requirement.[5]  Such reports were especially important in this bankruptcy case because the Debtor held most of its assets in subsidiaries.  The Debtor's failure to file the required reports is difficult to understand.  Indeed, despite this Court's characterization of HCMLP as a "byzantine complex"

---

[5] As the Court is aware, there is a mechanism for seeking such relief under the Federal Rules of Bankruptcy Procedure. Specifically, the Court could have granted the Debtor relief from the Rule 2015.3 disclosure requirement "for cause," including that "the trustee or debtor in possession is not able, after a good faith effort, to comply with th[e] reporting requirements, or that the information required by subdivision (a) is publicly available."  Fed. R. Bankr. P. 2015.3(d). But HCMLP did not seek relief from the requirements under Rule 2015.3(a), nor did it make any "good faith effort" to comply with the Rule.  To the contrary, Mr. Seery publicly represented that the task of filing the required reports simply "fell through the cracks."  *See* Dkt. 1905 (Feb. 3, 2021 Hr'g Tr. at 49:5-21).

(*see* Plan Confirmation Order, ¶ 6), the assets of the estate fall into a handful of discrete investments (less than ten line items), most of which have audited financials and/or were required to make monthly or quarterly net-asset-value or fair-value determinations.[6]  Further, the Debtor provided information regarding these assets' value to the Official Committee for Unsecured Creditors ("UCC") on a weekly basis during the bankruptcy proceedings, and the UCC was able to summarize the so-called "byzantine complex" in two short pages attached to the Debtor's Amended Operating Protocols.  *See* Dkt. 466-1.  And if the Debtor really is a "Byzantine complex" as the Court has claimed, that fact seemingly makes transparency all the more important.  This is particularly true because the Debtor is an SEC-registered investment advisor charged with knowing how much it owns, how much it controls, and where all major assets of the company reside.  But because none of this information was not provided in Rule 2015.3 reports, there was no publicly available information regarding the composition of assets and the corresponding liabilities held by the Debtor at the subsidiary level, making it impossible for outside stakeholders and interested parties to fairly evaluate the Debtor's estate.[7]

11.    Following an extended period of non-transparency and vague quarterly reporting in which the Debtor represented that the estate had suffered a loss in value of more than $230 million (*see* Disclosure Statement, Dkt. 1473), Dugaboy filed a motion seeking appointment of an examiner to independently examine the estate, the reasons for its apparent losses, and other issues relating to estate value.  *See generally* Dkt. 1752.  Although Dugaboy filed the motion well

---

[6] Indeed, during one deposition, Mr. Seery was able to identify most of HCMLP's assets "[o]ff the top of [his] head" and acknowledged that he had a subsidiary ledger that detailed the assets held by the Debtor's subsidiaries.  *See* Deposition of James P. Seery, Jr. ("Seery Dep."), attached hereto as Exhibit A, at 22:4-10, 23:1-29:10.

[7] Furthermore, the information provided in the Quarterly Reports does not provide any information to assist Dugaboy in determining its likelihood of recovery.

before the Plan confirmation hearing, the Court set the motion six weeks out on a date well after the confirmation hearing. *See* Dkt. 1832. Thereafter, the Court denied the motion as moot in light of the Plan Confirmation Order, which the Court held stripped it of authority to appoint an examiner. Dkt. 1960.

12.    In connection with the hearing in the Confirmation of the Debtor's Plan, the Debtor offered up a chart (entitled "Plan Analysis v. Liquidation Analysis"), which attempted to reflect both what creditors could receive in a liquidation and that which Creditors could receive under the Plan. But the analysis reflected in that document is problematic for at least three reasons. First, the document is a summary based upon projections.[8] Second, the Debtor refused to disclose subsidiary ledgers that comprised a significant amount of the Debtor's monetization value. Third, as we know now, the information is inaccurate. Based on that problematic analysis, and the testimony of Mr. Seery at the Plan confirmation hearing—which the Court accepted—the Debtor projected at confirmation that it would realize only $257 million dollars from the "monetization" of its assets by December 31, 2022. Dkt. 1894 (Feb. 2, 2021 Hr'g Tr.) at 120:10-121:3, 122:13-123:2. On information and belief, this projected monetization value is surpassed by the income of the sale of just two assets, Trussway and HCLOF. From that monetization, the Debtor projected that creditors in Classes 8 and 9 would by now be paid $125,000,000. *See* Dkt. 1866-5, p.3, n.P.

13.    It is now more than a year and a half since the Debtor's Plan projections were provided to the Court, and Dugaboy is merely asking for the Court to conduct an evidentiary hearing so that the projections can be judged by the realities of the ongoing liquidation of estate assets and the known increases in asset value. Based on known settlements and other filings

---

[8] What is more, Seery admitted under oath that, in putting together the projections, the Debtor's management arbitrarily adjusted downward third-party valuations of certain Debtor assets. Seery Dep., Ex. A, at 48:1-50:6.

reflecting allowed claims, Dugaboy believes that allowed claims to be paid now total at least $400 million. *See* Dkt. 3409. But nobody has disclosed the total other liabilities of the Claimant Trust. Nor do interested stakeholders know how much was drawn on the exit loan approved by this Court, how much is outstanding on that loan today, and what other payables and contractual liabilities are owed on account of the Claimant Trust and the Litigation Sub-Trust. All of this information is critical to ascertaining what the estate is capable of paying to creditors now or in the near-term and whether a remainder will be left for the residual equity holders.

C.      **The Bankruptcy Court Approves A Liquidation Plan**

14.    The Court ultimately approved a Plan that contemplates the liquidation of HCMLP and an orderly wind-down of operations. *See* Plan Confirmation Order, ¶ 2. In reaching its conclusion that the Plan was in the "best interest" of creditors and other stakeholders, the Court expressly relied upon the Amended Liquidation Analysis/Financial Projections filed by the Debtor that projected a recovery by Class 7 General Unsecured Creditors of 85% and Class 8 General Unsecured Creditors of 71%. *Id.*, ¶ 52; *see also* Dkt. 1875 at p. 4.

15.    Further, the Court overruled objections to the Plan lodged by entities it deemed related to Mr. Dondero, including Dugaboy. In doing so, the Court acknowledged that Dugaboy has a residual ownership interest in HCMLP and therefore "technically" had standing to object to the Plan. *See* Plan Confirmation Order, ¶¶ 17-18. But based on the Debtor's financial projections at the time of confirmation, the Court found that the plan objectors' "economic interests in the Debtor appear to be extremely remote." *Id.*, ¶ 19; *see also id.*, ¶ 17 ("the remoteness of their economic interests is noteworthy").

D.      **The Plan Grants Dugaboy A Springing Interest In The Claimant Trust**

16.    Notably, the Plan expressly contemplates potential payment to Dugaboy and other

residual equity holders.  Rather than leaving Dugaboy and residual equity holder Hunter Mountain Investment Trust with no interest in the Claimant Trust, the Plan expressly includes residual equity holders in the definition of "Claimant Trust Beneficiaries" as follows:

> "*Claimant Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, including, upon Allowance, Disputed General Unsecured Claims and Disputed Subordinated Claims that become Allowed following the Effective Date, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, post-petition interest from the Petition Date at the Federal Judgment Rate in accordance with the terms and conditions set forth in the Claimant Trust Agreement and all Disputed Claims in Class 8 and Class 9 have been resolved, **Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests**.

Plan, § B, ¶ 27 (emphasis added).  The Plan, in turn, makes clear that Dugaboy is a holder of Class A Limited Partnership Interests.  *Id.*, ¶ 33; *see also id.*, ¶¶ 24-26, 29-31 (describing the assets to be held by the Claimant Trust for the benefit of Claimant Trust Beneficiaries and the manner in which the Claimant Trust is to be operated).

17.     In other words, under the Plan, after all allowed claims are paid in full plus interest, the assets of the trust and any payment from the operation of the Claimant Trust goes to Dugaboy (and Hunter Mountain, as a holder of Class B/C Partnership Interests).  *Id.*, ¶¶ 33-36.

**E.     There Is Credible Evidence Demonstrating That The Estate's Value Has Changed**

18.     Since the entry of the Court's Plan Confirmation Order, the Debtor's financial outlook has changed, making the Amended Liquidation Analysis/Financial Projections on which the Court based its Plan Confirmation Order inapplicable.  Indeed, there is every reason to believe that the value of the estate has changed markedly since Plan confirmation.  Not only do many of the assets held by the estate fluctuate in value based on market conditions, but Dugaboy is aware

{00378831-1}                                    10

that many of the major assets of the estate have been liquidated or sold since Plan confirmation,

resulting in increased value to the estate.

19.      Specifically, Dugaboy's information relating to estate value as of June 1, 2022 is

as follows:

| Highland Capital Assets | | Value in Millions | |
|---|---|---|---|
| | | **Low** | **High** |
| Cash as of Feb. 1, 2022[9] | | $125.00 | $125.00 |
| Recently Liquidated | | | |
|    Highland Select Equity | $246.30 | | |
|    Highland MultiStrat Credit Fund | $55.00 | | |
|    Highland Restoration Cap. | $51.44 | | |
|    MGM Shares | $26.00 | | |
|    Portion of HCLOF | $37.50 | | |
|    Total of Recent Liquidations | $416.24 | $416.24 | $416.24 |
| **Current Cash Balance** | | **$541.24** | **$541.24** |
| | | | |
|    Remaining Assets | | | |
|    Highland CLO Funding, Ltd. | | $37.50 | $37.50 |
|    Korea Fund | | $18.00 | $18.00 |
|    SE Multifamily | | $11.98 | $12.10 |
|    Affiliate Notes | | $50.00 | $60.00 |
|    Other (Misc. and legal) | | $5.00 | $20.00 |
| **Total (Current Cash + Remaining Assets)** | | **$663.72** | **$688.84** |

20.      Likewise, the total value of allowed claims has changed since Plan confirmation.

The Debtor and Reorganized Debtor have settled some creditor claims and seen others dismissed,

making estimates given during the Plan confirmation hearing obsolete.  The disparity between the

projected payments to creditors and the actual payments made according to the Post-Confirmation

Report for the quarter ending June 30, 2022, should concern the Court and the creditors and

---

[9] Based on information and belief, the February 1,2022 cash figure is the best estimate of the estate's cash position at that time.

stakeholders who do not possess the information in the hands of the Plan Oversight Committee (comprised of certain, select claimholders), which should necessitate some additional disclosure. As mentioned, at this point, virtually all the Debtor's operating assets have been sold.

21.     Further, the post-confirmation reports filed by the Debtor do not provide any information to creditors regarding the prospect of payment and the expectation of future payment. Specifically, the report for the quarter ending June 30, 2022, reflects that only approximately $7.1 million dollars has been paid to creditors, notwithstanding that the Reorganized Debtor and/or Claimant Trust are holding huge amounts of cash as a result of the asset sales reported above.

### E.     Dugaboy's Appellate Rights Are Compromised By Outdated Projections

22.     The Court's repeated description of Dugaboy's interest in the estate as "remote" is problematic for other reasons as well.  As this Court is aware, Dugaboy has appealed several orders issued by the Court in HCMLP's bankruptcy proceedings, both to the District Court for the Northern District of Texas and the Fifth Circuit Court of Appeals.  *See, e.g.*, Case No. 22-10189 (5th Cir.); Case No. 21-90011 (5th Cir.); Case No. 21-cv-01295 (N.D. Tex.); Case No. 21-00546 (N.D. Tex.).

23.     At least one of those appeals has been dismissed because the appellate court determined that Dugaboy lacked standing to pursue it.  *See, e.g.*, *Highland Capital Mgmt. Fund Advisors, L.P., et al. v. Highland Capital Mgmt., LP*, Case No. 3:21-cv-01895-D (N.D. Tex.), Dkt. 44, at 4.  This Court's prior finding that Dugaboy's interest in the bankruptcy proceedings is "remote" and "contingent" no doubt played a role in these dismissals.  In particular, the appellate courts have relied upon a Fifth Circuit decision—*In re Coho Energy*—which stands for the proposition that an appellant must possess an economic interest in the outcome of an appeal that is not remote or contingent at the time the appeal is heard.  Under *Coho*, a party that may have

{00378831-1}                                        12

had standing at the time of filing its appeal under 11 U.S.C. § 1109 may be subjected to a higher and stricter standard for standing later in the appellate process.

24.     Dugaboy has appealed the dismissal of one of its appeals to the Fifth Circuit Court of Appeals and has raised in its appellate briefing the wisdom and statutory basis for the Court's opinion in *Coho*.  In particular, Dugaboy has argued that *Coho's* iteration of standing cannot be correct because the value of estate assets fluctuates during and after bankruptcy, such that the value of interests held by creditors and residual equity holders likewise fluctuates over time. Standing thus cannot be captured at a single point in time but must account for these potential fluctuations and acknowledge that fluctuations can place a particular party "in the money" such that decisions issued in bankruptcy can cause that party harm.

## III.     DUGABOY HAS STANDING IN THESE BANKRUPTCY PROCEEDINGS

25.     The Plan, on its face, gives Dugaboy an interest in the estate.  Accordingly, and as this Court has acknowledged (*see* Plan Confirmation Order, ¶ 17), Dugaboy has standing to raise issues affecting the estate and Dugaboy's interest in it, including by filing the present motion seeking disclosure of the current value of assets held by the Claimant Trust.  No other Court can hold the valuation hearing requested by Dugaboy.

26.     First, Dugaboy has statutory standing to be heard and to object to actions taken by the Debtor and the Claimant Trustee in these bankruptcy proceedings.   Specifically, the Bankruptcy Code gives any "party in interest" the right to participate in a debtor's chapter 11 proceedings.  *See* 11 U.S.C. § 1109(b).  While neither 11 U.S.C. § 1109(b) nor any other section in the Bankruptcy Code specifically defines the term "party in interest," section 1109(b) provides a non-exclusive list of entities that fall within the meaning of "party in interest" for the purposes of a chapter 11 proceeding.  *See Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.*, 852

{00378831-1}                                    13

F.3d 405, 413 (5th Cir. 2017).   This non-exclusive list "broadly includes debtors, creditors, trustees, indenture trustees, and equity security holders." *Id.*  Other courts and authorities have similarly concluded that parties in interest "include not only the debtor, but anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *Adair v. Sherman*, 230 F.3d 890, 894 n. 3 (7th Cir. 2000); *see also* 4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th ed. 2020) ("In the context of a chapter 11 case in particular, the term 'party in interest' expressly includes the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee.").

27.     Further, any party in interest may raise and may appear and be heard on any issue in a case under [Chapter 11]." 11 U.S.C. § 1109(b).  Indeed, Section 1109(b) "has been construed to create a broad right of participation in Chapter 11 cases." *In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 n.21 (3d Cir. 2004)).

28.     Second, Dugaboy also has Article III standing to be heard in these bankruptcy proceedings.  As the Supreme Court of the United States recently observed and held, Congress long ago abolished the requirement of a minimum amount in controversy for purposes of establishing related federal question jurisdiction. *See Uzuegbunam v. Preczewski*, ___ U.S. ___, 141 S. Ct. 792, 802 (2021) ("But Congress abolished the statutory amount-in-controversy requirement for federal question jurisdiction in 1980…And we have never held that one applies as a matter of constitutional law.") (internal citation omitted).  The absence of a minimum amount in controversy requirement under Section 1334 indicates that it should receive a parallel construction.  Indeed, in *Uzuegbunam*, the majority held that nominal damages or compensatory damages of one dollar ($1.00) are sufficient to establish the redressability requirement under

{00378831-1}                              14

Article III.

29.     As the court is aware, there is more than $1 in controversy here.  Indeed, depending

upon how the estate is managed post-confirmation, Dugaboy stands to recover hundreds of

thousands of dollars as a residual equity holder.  And regardless of the amount of that recovery,

Dugaboy has a very real interest in how the estate is managed by the Reorganized Debtor and the

Claimant Trustee because that management will dictate whether and how much Dugaboy receives

after payment of all creditors of the estate.

30.     Third, as a contingent beneficiary of a Delaware statutory trust, Dugaboy is entitled

to financial information relating to the trust.  Indeed, "[i]n most jurisdictions any beneficiary may

petition the trustee to account, regardless of whether the beneficiary is a current beneficiary, a

remainder beneficiary, whether the remainder interest is vested or contingent (although

accounting rights of contingent beneficiaries are limited in some jurisdictions);[10] or a beneficiary

who will receive distributions from the trust only through the trustee's exercise of discretion."

Alan Newman, George Gleason Bogert, George Taylor Bogert, Amy Morris Hess, *Bogert's The

Law of Trust and Trustees* (June 22), § 967 (internal citations omitted).

31.     Delaware law does not distinguish between current and contingent beneficiaries

nor does it in any way restrict the rights of contingent beneficiaries to request financial

information from the trustee.  To the contrary, Delaware follows the Restatement (Third) of

Trusts, under which the trustee may be required to account not only to current beneficiaries, "but

also to other beneficiaries who will or may be entitled to income or principal in the future,

including beneficiaries whose interests are contingent." RESTATEMENT (THIRD) OF TRUSTS, § 83,

---

[10] Delaware statute contains no such restriction.

{00378831-1}                                    15

cmt. b; *see also Frederick-Conaway v. Baird*, 159 A.3d 285, 298 n.52 (Del. 2017) (citing to the Restatement and noting that the Court looks to the Restatement for guidance on trust law); *J.P. Morgan Trust Co. of DE v. Fisher*, 2019 WL 6605863, at *6 (Del. Ch. Dec. 5, 2019) (citing the Restatement for the proposition that a trustee "ordinarily has a duty promptly to respond to the request of any beneficiary for information concerning the trust and its administration, and to permit beneficiaries on a reasonable basis to inspect trust documents, records, and property holdings"). As the Restatement explains, "[t]his breadth of beneficiary rights . . . is essential to the enforceability of a meaningful duty of impartiality." *Id.*

32.     So, whether as a party in interest under 11 U.S.C. § 1109(b), a contingent beneficiary of the Claimant Trust with information rights pursuant to Delaware law, or for purposes of Article III, Dugaboy has the requisite standing and a right to the information it is seeking.

## IV.    THE COURT SHOULD CONDUCT AN EVIDENTIARY HEARING REGARDING THE VALUE OF THE ESTATE AND THE ASSETS HELD BY THE CLAIMANT TRUST

33.     In addition to issuing a finding that Dugaboy has standing to appear, be heard, and object in these bankruptcy proceedings, the Court should conduct an evidentiary hearing and require disclosure by the Reorganized Debtor and the Claimant Trustee of the value of the estate and all assets held by the Claimant Trust that are available for distribution to creditors and residual equity holders. At a minimum, the hearing would provide valuable information regarding:

- The cash held by the Reorganized Debtor and various entities controlled by the Reorganized Debtor;

- How the cash was acquired and, more specifically, what assets were sold or liquidated;

- How the amounts received for assets sold or liquidated compares to the projections

made by the Debtor at the time of Plan confirmation;

- The value of estate assets still held for the benefit of the estate and its creditors, whether held by the Reorganized Debtor or the Claimant Trust;

- The post-confirmation expenses incurred or to be incurred pursuant to contractual obligations by the estate and its professionals;[11]

- The claims that must be paid prior to the interests of Dugaboy and Hunter Mountain springing into existence;

- Expected professional fees, based at a minimum on the post-confirmation engagement letter with Mr. Seery and/or the agreement entered into between the Debtor and Mr. Seery regarding post-confirmation management of the Debtor and Mr. Seery's compensation package to be paid by the estate.

34.     Such a hearing would benefit not only Dugaboy in ascertaining the value of its current interest in the estate but also stands to benefit the estate and its creditors in two core ways. First, there are currently pending adversary proceedings seeking to recover value for HCMLP's estate, when no such additional value is necessary to pay creditors in full and which could be brought to a swift close, allowing creditors to be paid.  Second, professionals associated with the estate—including but not limited to Mr. Seery, Pachulski, Development Specialists, Inc., Kurtzman Carson Consultants, Quinn Emanuel, Marc Kirschner, and Hayward & Associates— are continuing to incur millions of dollars a month in professional fees, thereby further eroding an estate that is either solvent or can be bridged by a settlement that would pay the spread between current assets and current allowed creditor claims.  If at the hearing the Court finds that the estate is solvent or the spread is minimal, it can order mediation to settle the estate.  Again, a quick resolution of all outstanding proceedings can only benefit the estate and its creditors.

35.     The idea that the estate will incur an additional $20+ million in legal fees and

---

[11] The Debtor's Post-Confirmation Report for the quarter ending March 31, 2022, shows total post-Effective Date disbursements by the estate of approximately $81.9 million.  *See* Dkt. 3325 at p. 2.  The same Report projects additional expenditures of approximately $211 million.

success bonuses when the estate can be finally resolved now should be of concern to the Court.

The Court should not encourage a repeat of the WRT case (which incidentally was managed by

Golden & Associates and David Pauker, who is a member of the Oversight Board for the Claimant

Trust).

36.     Dugaboy is likewise concerned that very few distributions have been made thus

far to creditors.  Dugaboy recognizes that the various trust agreements provide great latitude to

the Claimant Trustee, but the fact that allowed claims are incurring interest, and it is unknown

whether the Claimant Trust is earning a return equal to that being incurred on creditor claims, is

another cause for concern and a reason to require the Reorganized Debtor and the Claimant Trust

to provide this information at an evidentiary hearing.

## **CONCLUSION**

WHEREFORE, Dugaboy respectfully requests that the Court enter an order: (i) finding

that Dugaboy has standing in these bankruptcy proceedings under 11 U.S.C. § 1109(b), Delaware

trust law, and Article III of the United States Constitution; and (ii) setting an evidentiary hearing

to ascertain the assets currently available for distribution to allowed claimants, to determine the

current value of those assets, and to determine whether there is a potential for settling the estate

now, without further pursuing continued expensive and protracted litigation and without incurring

additional enormous professional fees.

IN THE ALTERNATIVE, Dugaboy requests that the Court appoint a neutral to review all

relevant financials of the Debtor and to provide a report to the Court regarding the current value

of the estate.

Dated: September 21, 2022

Respectfully Submitted,


By: /s/ Douglas S. Draper
Douglas S. Draper
*Admitted Pro Hac Vice*
HELLER, DRAPER & HORN, LLC
650 Poydras Street, Suite 2500
New Orleans, Louisiana   70130
Telephone: (504) 299-3300
Email: ddraper@hellerdraper.com

*Counsel for The Dugaboy Investment Trust*


## <u>CERTIFICATE OF SERVICE</u>

I, Douglas S. Draper, the undersigned, hereby certify that on September 21st, 2022, a true and correct copy of the above and foregoing was served via the Court's ECF system on counsel for the Debtor and on all other parties requesting or consenting to such service in this case as follows:

- **David G. Adams**    david.g.adams@usdoj.gov, southwestern.taxcivil@usdoj.gov;dolores.c.lopez@usdoj.gov
- **Michael P. Aigen**    michael.aigen@stinson.com, stephanie.gratt@stinson.com
- **Amy K. Anderson**    aanderson@joneswalker.com, lfields@joneswalker.com;amy-anderson-9331@ecf.pacerpro.com
- **Zachery Z. Annable**    zannable@haywardfirm.com
- **Bryan C. Assink**    bryan.assink@bondsellis.com
- **Asif Attarwala**    asif.attarwala@lw.com
- **Joseph E. Bain**    JBain@joneswalker.com, kvrana@joneswalker.com;joseph-bain-8368@ecf.pacerpro.com;msalinas@joneswalker.com
- **Michael I. Baird**    baird.michael@pbgc.gov, efile@pbgc.gov
- **Sean M. Beach**    bankfilings@ycst.com, sbeach@ycst.com
- **Thomas Daniel Berghman**    tberghman@munsch.com
- **Jason Bernstein**    casey.doherty@dentons.com, dawn.brown@dentons.com;Melinda.sanchez@dentons.com;docket.general.lit.dal@dentons.com

- **Paul Richard Bessette**    pbessette@KSLAW.com,
  ccisneros@kslaw.com;jworsham@kslaw.com;kbryan@kslaw.com;jcarvalho@kslaw.com
- **John Y. Bonds**    john@bondsellis.com
- **Matthew G. Bouslog**    mbouslog@gibsondunn.com, nbrosman@gibsondunn.com
- **Larry R. Boyd**    lboyd@abernathy-law.com, ljameson@abernathy-law.com
- **Jonathan E. Bridges**    jeb@sbaitilaw.com
- **Jason S. Brookner**    jbrookner@grayreed.com,
  lwebb@grayreed.com;acarson@grayreed.com
- **Greta M. Brouphy**    gbrouphy@hellerdraper.com,
  dhepting@hellerdraper.com;vgamble@hellerdraper.com
- **M. David Bryant**    dbryant@dykema.com, csmith@dykema.com
- **Candice Marie Carson**    Candice.Carson@butlersnow.com
- **Annmarie Antoniette Chiarello**    achiarello@winstead.com
- **Shawn M. Christianson**    schristianson@buchalter.com, cmcintire@buchalter.com
- **James Robertson Clarke**    robbie.clarke@bondsellis.com
- **Matthew A. Clemente**    mclemente@sidley.com, matthew-clemente-
  8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russel
  l@sidley.com;dtwomey@sidley.com
- **Megan F. Clontz**    mclontz@spencerfane.com, lvargas@spencerfane.com
- **Andrew Clubok**    andrew.clubok@lw.com, andrew-clubok-
  9012@ecf.pacerpro.com,ny-courtmail@lw.com,dclitserv@lw.com
- **Leslie A. Collins**    lcollins@hellerdraper.com
- **John T. Cox**    tcox@gibsondunn.com,
  WCassidy@gibsondunn.com;twesley@gibsondunn.com
- **David Grant Crooks**    dcrooks@foxrothschild.com,
  etaylor@foxrothschild.com,rdietz@foxrothschild.com,plabov@foxrothschild.com,jmanfr
  ey@foxrothschild.com
- **Debra A Dandeneau**    debra.dandeneau@bakermckenzie.com,
  blaire.cahn@bakermckenzie.com
- **Deborah Rose Deitsch-Perez**    deborah.deitschperez@stinson.com,
  patricia.tomasky@stinson.com;kinga.mccoy@stinson.com
- **Gregory V. Demo**    gdemo@pszjlaw.com,
  jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com
  ;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjla
  w.com;lsc@pszjlaw.com
- **Douglas S. Draper**    ddraper@hellerdraper.com,
  dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbro
  uphy@hellerdraper.com
- **Lauren Kessler Drawhorn**    lkdrawhorn@gmail.com
- **Vickie L. Driver**    Vickie.Driver@crowedunlevy.com,
  crissie.stephenson@crowedunlevy.com;elisa.weaver@crowedunlevy.com;ecf@crowedun
  levy.com
- **Jason Alexander Enright**    jenright@winstead.com
- **Robert Joel Feinstein**    rfeinstein@pszjlaw.com

- **Charles W. Gameros**    bgameros@legaltexas.com,
  lmilam@legaltexas.com;jrauch@legaltexas.com;wcarvell@legaltexas.com
- **Brian D. Glueckstein**    gluecksteinb@sullcrom.com
- **Matthew Gold**    courts@argopartners.net
- **Bojan Guzina**    bguzina@sidley.com
- **Eric Thomas Haitz**    ehaitz@gibsondunn.com, skoller@gibsondunn.com
- **Margaret Michelle Hartmann**    michelle.hartmann@bakermckenzie.com
- **Thomas G. Haskins**    thaskins@btlaw.com
- **Melissa S. Hayward**    MHayward@HaywardFirm.com, mholmes@HaywardFirm.com
- **Michael Scott Held**    mheld@jw.com, lcrumble@jw.com;kgradney@jw.com
- **Gregory Getty Hesse**    ghesse@huntonak.com,
  kkirk@huntonak.com;tcanada@HuntonAK.com;creeves@HuntonAK.com
- **Juliana Hoffman**    jhoffman@sidley.com, txefilingnotice@sidley.com;julianna-
  hoffman-8287@ecf.pacerpro.com
- **A. Lee Hogewood**    lee.hogewood@klgates.com,
  haley.fields@klgates.com;matthew.houston@klgates.com;mary-
  beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.co
  m;Artoush.varshosaz@klgates.com
- **Jason Michael Hopkins**    jason.hopkins@dlapiper.com,
  jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com
- **Warren Horn**    whorn@hellerdraper.com,
  dhepting@hellerdraper.com;vgamble@hellerdraper.com
- **William R. Howell**    william.howell@bondsellis.com, williamhowell@utexas.edu
- **Kristin H. Jain**    KHJain@JainLaw.com, dskierski@skijain.com
- **John J. Kane**    jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com
- **Jason Patrick Kathman**    jkathman@spencerfane.com,
  gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com
- **Edwin Paul Keiffer**    pkeiffer@romclaw.com, bwallace@romclaw.com
- **Susheel Kirpalani**    susheelkirpalani@quinnemanuel.com,
  dian.gwinnup@haynesboone.com
- **Jordan A. Kroop**    jkroop@pszjlaw.com, tcorrea@pszjlaw.com
- **Jeffrey Kurtzman**    kurtzman@kurtzmansteady.com
- **Phillip L. Lamberson**    plamberson@winstead.com
- **Lisa L. Lambert**    lisa.l.lambert@usdoj.gov
- **Michael Justin Lang**    mlang@cwl.law,
  nvazquez@cwl.law;aohlinger@cwl.law;jgonzales@cwl.law;vpatterson@cwl.law
- **Edward J. Leen**    eleen@mkbllp.com
- **Paul M. Lopez**    bankruptcy@abernathy-law.com
- **Faheem A. Mahmooth**    mahmooth.faheem@pbgc.gov, efile@pbgc.gov
- **Ryan E. Manns**    ryan.manns@nortonrosefulbright.com
- **Brant C. Martin**    brant.martin@wickphillips.com, samantha.tandy@wickphillips.com
- **Brent Ryan McIlwain**    brent.mcilwain@hklaw.com,
  robert.jones@hklaw.com;brian.smith@hklaw.com
- **Thomas M. Melsheimer**    tmelsheimer@winston.com, tom-melsheimer-
  7823@ecf.pacerpro.com

- **Paige Holden Montgomery**    pmontgomery@sidley.com, txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;crognes@sidley.com;ebromagen@sidley.com;efilingnotice@sidley.com
- **J. Seth Moore**    smoore@ctstlaw.com, jsteele@ctstlaw.com
- **John A. Morris**    jmorris@pszjlaw.com
- **Edmon L. Morton**    emorton@ycst.com
- **Holland N. O'Neil**    honeil@foley.com, jcharrison@foley.com;acordero@foley.com;holly-holland-oneil-3540@ecf.pacerpro.com
- **Rakhee V. Patel**    rpatel@winstead.com, dgalindo@winstead.com;achiarello@winstead.com
- **Charles Martin Persons**    cpersons@sidley.com, txefilingnotice@sidley.com;charles-persons-5722@ecf.pacerpro.com
- **Louis M. Phillips**    louis.phillips@kellyhart.com, june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com
- **Mark A. Platt**    mplatt@fbtlaw.com, dwilliams@fbtlaw.com,mluna@fbtlaw.com
- **Jeffrey Nathan Pomerantz**    jpomerantz@pszjlaw.com
- **Kimberly A. Posin**    kim.posin@lw.com, colleen.rico@lw.com
- **Jeff P. Prostok**    jprostok@forsheyprostok.com, tlevario@forsheyprostok.com;calendar@forsheyprostok.com;calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com
- **Bennett Rawicki**    brawicki@gibsondunn.com
- **Linda D. Reece**    lreece@pbfcm.com, lreece@ecf.courtdrive.com
- **Penny Packard Reid**    preid@sidley.com, txefilingnotice@sidley.com;penny-reid-4098@ecf.pacerpro.com;ncade@sidley.com
- **Suzanne K. Rosen**    srosen@forsheyprostok.com, tlevario@forsheyprostok.com;calendar@forsheyprostok.com;srosen@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com
- **Michael A. Rosenthal**    mrosenthal@gibsondunn.com
- **Davor Rukavina**    drukavina@munsch.com
- **Amanda Rush**    asrush@jonesday.com
- **Alyssa Russell**    alyssa.russell@sidley.com, efilingnotice@sidley.com;alyssa-russell-3063@ecf.pacerpro.com
- **Mazin Ahmad Sbaiti**    mas@sbaitilaw.com, krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com
- **Thomas C. Scannell**    tscannell@foley.com, acordero@foley.com;thomas-scannell-3441@ecf.pacerpro.com
- **Douglas J. Schneller**    douglas.schneller@rimonlaw.com
- **Sarah A. Schultz**    sschultz@akingump.com, mstamer@akingump.com;afreeman@akingump.com;dkazlow@akingump.com;aqureshi@akingump.com;dkrasa-berstell@akingump.com;bkemp@akingump.com;brenda-kemp-7410@ecf.pacerpro.com
- **Michelle E. Shriro**    mshriro@singerlevick.com, scotton@singerlevick.com;tguillory@singerlevick.com

{00378831-1}                    22

- **Nicole Skolnekovich**    nskolnekovich@hunton.com,
  astowe@huntonak.com;creeves@huntonak.com
- **Brian J. Smith**    brian.smith@hklaw.com,
  robert.jones@hklaw.com;brent.mcilwain@hklaw.com
- **Frances Anne Smith**    frances.smith@judithwross.com,
  michael.coulombe@judithwross.com
- **Eric A. Soderlund**    eric.soderlund@judithwross.com
- **Martin A. Sosland**    martin.sosland@butlersnow.com,
  ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com
- **Laurie A. Spindler**    Laurie.Spindler@lgbs.com, Dora.Casiano-
  Perez@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com
- **Jonathan D. Sundheimer**    jsundhimer@btlaw.com
- **Kesha Tanabe**    kesha@tanabelaw.com
- **Clay M. Taylor**    clay.taylor@bondsellis.com, krista.hillman@bondsellis.com
- **Cortney C. Thomas**    cort@brownfoxlaw.com, korourke@brownfoxlaw.com
- **Chad D. Timmons**    bankruptcy@abernathy-law.com
- **Alexandre J. Tschumi**    alexandretschumi@quinnemanuel.com
- **Dennis M. Twomey**    dtwomey@sidley.com
- **Basil A. Umari**    BUmari@dykema.com, pelliott@dykema.com
- **United States Trustee**    ustpregion06.da.ecf@usdoj.gov
- **Artoush Varshosaz**    artoush.varshosaz@klgates.com, Julie.garrett@klgates.com
- **Julian Preston Vasek**    jvasek@munsch.com
- **Donna K. Webb**    donna.webb@usdoj.gov,
  brian.stoltz@usdoj.gov;CaseView.ECF@usdoj.gov;brooke.lewis@usdoj.gov
- **Jaclyn C. Weissgerber**    bankfilings@ycst.com, jweissgerber@ycst.com
- **Elizabeth Weller**    Dora.Casiano-Perez@lgbs.com, dallas.bankruptcy@lgbs.com
- **Daniel P. Winikka**    danw@ldsrlaw.com,
  craigs@ldsrlaw.com,dawnw@ldsrlaw.com,lindat@ldsrlaw.com
- **Hayley R. Winograd**    hwinograd@pszjlaw.com
- **Megan Young-John**    myoung-john@porterhedges.com

/s/ Douglas S. Draper
Douglas S. Draper