# EXHIBIT A

**for**
**Docket 3533 Reference Page 7 Footnote 6**

Page 1

```
 1   IN THE UNITED STATES BANKRUPTCY COURT
 2   FOR THE NORTHERN DISTRICT OF TEXAS
 3   DALLAS DIVISION
 4   -------------------------------)
 5   In Re:                  Chapter 11
 6   HIGHLAND CAPITAL         Case No.
 7   MANAGEMENT, LP,          19-34054-SGJ 11
 8
 9         Debtor
10   --------------------------------
11
12
13      REMOTE DEPOSITION OF JAMES P. SEERY, JR.
14              January 29, 2021
15               10:11 a.m. EST
16
17
18
19
20
21
22
23
     Reported by:
24   Debra Stevens, RPR-CRR
     JOB NO. 189212
25
```

```
                                                    Page 22
 1                  J. SEERY
 2        Q.    Excuse me?
 3        A.    I believe it does.
 4        Q.    Is there a subsidiary ledger
 5   that would tell me what is the note
 6   component versus what is the hard asset
 7   component?
 8        A.    Yes.
 9        Q.    Who has that?
10        A.    I do.
11              MR. DRAPER:  Mr. Morris, can I
12        get that document?
13              MR. MORRIS:  I will take it
14        under advisement.
15        Q.    There is also a Dugaboy note in
16   your notes that is to be sold.  Is that
17   Dugaboy note in the $40 million, or is it
18   in the hard asset monetization?
19        A.    I believe it is in the -- it is
20   to be sold, so it is not collected in
21   full.  If they default, then we would
22   accelerate that and collect that in full
23   as well.
24        Q.    That doesn't answer my question
25   unfortunately.  What I am asking you, is
```

```
 1                    J. SEERY                    Page 23

 2   it in the $40 million calculation, or in

 3   the $200 million number?

 4      A.    It doesn't answer your question

 5   because you didn't listen to my prior

 6   answer.  I said that the 40 million

 7   calculation was for stuff that had been

 8   demanded.  I think you represent -- do you

 9   represent Dugaboy?  I don't think we

10   demanded --

11      Q.    I do.  Excuse me?

12      A.    So if it wasn't demanded, it is

13   not in the hard asset calculation; it's in

14   the discounted amount.

15      Q.    Let me try to understand your

16   answer.  What you are telling me, just so

17   we are both clear, is that that Dugaboy

18   note is not in the $40 million; it is in

19   the balance of the 257?  That is a yes or

20   no answer.

21      A.    I didn't take it as a question.

22   It sounded like a statement.  I agree with

23   your statement.

24      Q.    Thank you.  So the answer is

25   yes?
```

Main Document Page 5 of 10

```
1                    J. SEERY                        Page 24

2      A.    It wasn't a question. I agree

3   with your statement; yes.

4      Q.    Thank you.

5            Now, let's go to the

6   November 2020 schedule that we had. If

7   you see in the line "Estimated proceeds

8   from monetization of assets," you had

9   $190 million under the plan analysis?

10     A.    Yes.

11     Q.    What percentage of that are

12  notes versus hard assets?

13     A.    The demand notes only were

14  included in the proceeds in terms of

15  recovery in full. I don't quite

16  understand your distinction between hard

17  assets. There is a lot of intangibles as

18  well as tangibles in the total.

19           But if we are distinguishing

20  between notes and other assets, the demand

21  notes are included in the 190. The longer

22  dated notes are assumed to be sold. So,

23  they are included but they are included at

24  a much lower amount.

25     Q.    Okay. Now how much of the
```

```
                                                          Page 25
 1                  J. SEERY
 2    demand notes in the 190, Mr. Seery?
 3        A.    Off the top of my head I don't
 4    recall.  It is the Dondero demand notes as
 5    well as the HCFMA demand notes, so it
 6    should be about 15 to $20 million.
 7    Somewhere in that realm.  The same as the
 8    other demand notes.
 9        Q.    Were the other notes, the
10    $40 million of notes that you referenced
11    in the January document, were they carried
12    at face or at discounted amount in the
13    190?
14        A.    In the 190, the ones that were
15    demand were carried at face.  The ones
16    that were long dated, which really at that
17    point I believe -- the only difference is
18    the $24-and-change-million NexPoint
19    Advisors note was at a discounted amount.
20    The others were at face.
21        Q.    What was the discount that was
22    applied to that note?
23        A.    I don't recall off the top of my
24    head.  It is pretty significant because of
25    the long dated nature of the notes.  They
```

Main Document    Page 7 of 10

```
 1                    J. SEERY                      Page 26
 2   were amended without consideration a few
 3   years ago.  So, for our purposes we didn't
 4   make the assumption, which I am sure will
 5   happen, a fraudulent conveyance claim on
 6   those notes, that a fraudulent conveyance
 7   action would be brought.  We just assumed
 8   that we'd have to discount the notes
 9   heavily to sell them because nobody would
10   respect the ability of the counterparties
11   to fairly pay.
12        Q.   And the same discount was
13   applied in the liquidation analysis to
14   those notes?
15        A.   Yes.
16        Q.   Now --
17        A.   The difference -- there would be
18   a difference, though, because they would
19   pay for a while because they wouldn't want
20   to accelerate them.  So there would be
21   some collections on the notes for P and I.
22        Q.   But in fact as of January you
23   have accelerated those notes?
24        A.   Just one of them, I believe.
25        Q.   Which note was that?
```

```
 1                    J. SEERY                         Page 27
 2       A.    NexPoint, I said.  They
 3  defaulted on the note and we accelerated
 4  it.
 5       Q.    So there is no need to file a
 6  fraudulent conveyance suit with respect to
 7  that note.  Correct, Mr. Seery?
 8            MR. MORRIS:  Objection to the
 9       form of the question.
10       A.    Disagree.  Since it was likely
11  intentional fraud, there may be other
12  recoveries on it.  But to collect on the
13  note, no.
14       Q.    My question was with respect to
15  that note.  Since you have accelerated it,
16  you don't need to deal with the issue of
17  when it's due?
18            MR. MORRIS:  Objection to the
19       form of the question.
20       A.    That wasn't your question.  But
21  to that question, yes, I don't need to
22  deal with when it's due.
23       Q.    Let me go over certain assets.
24  I am not going to ask you for the
25  valuation of them but I am going to ask
```

```
                                                    Page 28
 1                  J. SEERY
 2    you whether they are included in the asset
 3    portion of your $257 million number, all
 4    right?  Mr. Morris didn't want me to go
 5    into specific asset value, and I don't
 6    intend to do that.
 7              The first question I have for
 8    you is, the equity in Trustway Highland
 9    Holdings, is that included in the
10    $257 million number?
11       A.    There is no such entity.
12       Q.    Then I will do it in a different
13    way.  In connection with the sale of the
14    hard assets, what assets are included in
15    there specifically?
16       A.    Off the top of my head -- it is
17    all of the assets, but it includes
18    Trustway Holdings and all the value that
19    flows up from Trustway Holdings.  It
20    includes Targa and all the value that
21    flows up from Targa.  It includes CCS
22    Medical and all the value that would flow
23    to the Debtor from CCS Medical.  It
24    includes Cornerstone and all the value
25    that would flow from Cornerstone.  It
```

|     | Page 29 |
|---|---|

```
 1                    J. SEERY
 2    includes any other securities and all the
 3    value that would flow from Cornerstone.
 4    It includes HCLOF and all the value that
 5    would flow up from HCLOF.  It includes
 6    Korea and all the value that would flow up
 7    from Korea.
 8              There may be others off the top
 9    of my head.  I don't recall them.  I don't
10    have a list in front of me.
11       Q.   Now, with respect to those
12    assets, have you started the sale process
13    of those assets?
14       A.   No.  Well, each asset is
15    different.  So, the answer is, with
16    respect to any securities, we do seek to
17    sell those regularly and we do seek to
18    monetize those assets where we can
19    depending on whether there is a
20    restriction or not and whether there is
21    liquidity in the market.
22              With respect to the PE assets or
23    the companies I described -- Targa, CCS,
24    Cornerstone, JHT -- we have not --
25    Trustway.  We have not sought to sell
```