**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Debtor. | JAMES DONDERO, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., THE DUGABOY INVESTMENT TRUST, THE GET GOOD TRUST, and NEXPOINT REAL ESTATE PARTNERS, LLC, F/K/A HCRE PARTNERS, LLC, A DELAWARE LIMITED LIABILITY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455 |

**MOVANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**RENEWED MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................................i

TABLE OF AUTHORITIES ......................................................................................................ii

**I.  INTRODUCTION** .........................................................................................................1

**II.  PROCEDURAL HISTORY** ...........................................................................................1

**III.  RELEVANT BACKGROUND AND EVIDENCE OF BIAS** ..........................................3

    **A.  Mr. Dondero Ran A Successful And Profitable Business For More Than Two Decades Prior to Bankruptcy** .................................................................................3

    **B.  The Court Formed An Animus Against Mr. Dondero During The Acis Bankruptcy Case That Infected This Bankruptcy Case From The Outset** ......................4

    **C.  The Court's Animus Continued To Infect It Decision-Making And Treatment Of Movants** ...........................................................................................6

        **1.  The February 19, 2020 Motion to Retain Hearing** ...............................6

        **2.  The June 30, 2020 CLO Fund Release Hearing** ..................................8

        **3.  The July 8, 2020 Exclusivity Hearing** ...............................................9

        **4.  The December 16, 2020 And January 26, 2021 CLO Hearings** ...............9

        **5.  The Court's Ruling On Movants' Motion For An Examiner** ....................11

    **D.  The Court Confirms A "Monetization Plan" Over Movants' Objections** .................12

    **E.  The Court's Post-Confirmation Decisions Have Continued To Give The Appearance Of Bias** ..............................................................................................14

        **1.  The Court's August 2021 Sanctions Order** .........................................14

        **2.  The Court's Order To Appear** .........................................................16

        **3.  The Court's September 12, 2022 Withdrawal of Claim Hearing** ..............16

**IV.  THE COURT SHOULD IMMEDIATELY RECUSE ITSELF** ....................................19

**V.  CONCLUSION** ............................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andrade v. Chojnacki*,
  338 F.3d 448 (5th Cir. 2003) ............................................................................................ 19, 21

*Bell v. Johnson*,
  404 F.3d 997 (6th Cir. 2005) .................................................................................................. 20

*Burke v. Regolado*,
  935 F.3d 960 (10th Cir. 2019) ................................................................................................ 20

*Davies v. C.I.R.*,
  68 F.3d 1129 (9th Cir. 1995) .................................................................................................. 23

*In re Carroll*,
  850 F.3d 811 (5th Cir. 2017) (per curiam)............................................................................. 12

*In re Chevron U.S.A., Inc.*,
  121 F.3d 163 (5th Cir. 1997) .................................................................................................. 21

*In re Drexel Burnham Lambert Inc.*,
  861 F.2d 1307 (2d Cir. 1988)................................................................................................. 20

*In re Kansas Pub. Employees Retirement Sys.*,
  85 F.3d 1353 (8th Cir. 1996) .................................................................................................. 20

*In re U.S.*,
  572 F.3d 301 (7th Cir. 1999) ............................................................................................... 9, 22

*In the Matter of Highland Capital Mgmt., L.P.*,
  48 F.4th 419 (5th Cir. 2022) .................................................................................................. 12

*Johnson v. Sawyer*,
  120 F.3d 1307 (5th Cir. 1997) ......................................................................................... 9, 22, 24

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847 (2001)................................................................................................... 19, 20, 21

*Liteky v. U.S.*,
  510 U.S. 540 (1994)................................................................................................... 20, 21, 22

*Miller v. Sam Houston State Univ.*,
  986 F.3d 880 (5th Cir. 2021) .................................................................................................. 21

*Offutt v. United States*,
  348 U.S. 11 (1954)................................................................................................................. 21

*Sentis Group, Inc. v. Coral Group, Inc.*,
  559 F.3d 888 (8th Cir. 2009) ......................................................................................... 7, 8, 21, 24

*The Cadle Co. v. Moore*,
    739 F.3d 724 (5th Cir. 2014) ............................................................................... 14

*U.S. v. Kennedy*,
    682 F.2d 244 (3d Cir. 2012)........................................................................ 9, 22, 24

*U.S. v. Microsoft Corp.*,
    56 F.3d 1448 (D.C. Cir. 1995) ................................................................... 7, 20, 22

*United States v. Jordan*,
    49 F.3d 152 (5th Cir. 1995) ................................................................................. 21

*United States v. Torkington*,
    874 F.2d 1441 (11th Cir.1989) ............................................................................ 20

**Statutes**

28 U.S.C. § 455.................................................................................................... 19

**Other Authorities**

H. Rep. No. 1453, 93rd Cong., 2d Sess. 1 (1974),
    reprinted in 1974 U.S. Code Cong. & Admin. News 6351 ..................................... 20

## I.     INTRODUCTION

This Renewed Motion to Recuse is necessary because the Court denied a prior motion by James Dondero, Highland Capital Management Fund Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC (collectively, "Movants") to supplement the record in support of their original motion to recuse, making it impossible for Movants to have all evidence of the Court's bias considered on appeal. As set forth herein, the Court's animus toward Movants is so evident, persistent, and severe that Movants cannot receive fair treatment or justice in this Court.  And while the Court previously suggested that Movants sought recusal too late, that suggestion rings hollow, because the Court continues to preside over several proceedings involving Movants, and because the Court's bias continues to pervade all proceedings before it.  This Motion should be granted.

## II.    PROCEDURAL HISTORY

The Movants filed their original motion to recuse ("Original Recusal Motion") on March 18, 2021.[1]  The Court denied the Motion less than a week later.[2]  In doing so, the Court acknowledged "that the applicable statute and rule do not expressly address timeliness" but nonetheless concluded that the motion was untimely.[3]  Moreover, despite recognizing that an objective standard should be applied to a recusal determination, the Court instead applied a subjective standard, based entirely on a self-assessment: "The Presiding Judge does not believe she harbors, or has shown, any personal bias or prejudice against the Movants."[4]

The Movants appealed the Bankruptcy Court's order denying their Original Recusal

---

[1] *In re: Highland Capital Management, L.P.*, Case No. 19-34054-sgj11, Bankr. Dkt. No. 2061.
[2] Bankr. Dkt. No. 2083.
[3] *Id.* at 5.
[4] *Id.* at 10.

Motion to the United States District Court for the Northern District of Texas on April 6, 2021.[5]

On February 9, 2022, the District Court denied the appeal for lack of jurisdiction.[6]

Thereafter, this Court continued to preside over the bankruptcy proceedings as well as at least nine adversary proceedings involving the Movants. Further, the Court has since held additional hearings and made additional rulings and other statements that demonstrate clearly the Court's ongoing animus toward Movants. As a result, on August 26, 2022, Movants filed an Amended Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 ("Motion to Supplement"), in which Movants sought: (1) to remove the "reservation language" in the Original Recusal Order; (2) an order stating that Original Recusal Order is final; and (3) to supplement the record on the Original Recusal Motion.[7] The Court held a hearing on the Motion to Supplement on August 31, 2022. At that hearing, the Movants informed the Court that Highland was *unopposed* to the relief requested in the Motion to Supplement. Nevertheless, the Court accused Mr. Dondero and his counsel of "carpet-bombing us with paper and causing us to expend resources," chastised Mr. Dondero's counsel at length for the size of the record submitted in support of the Motion, and asked counsel to "help me to understand why this is not wasting resources in your view and why this isn't just some strategy."[8]

Following the hearing, the Court issued an order denying the Motion to Supplement as procedurally improper.[9] In its order, the Court invited Movants to do one of two things: (1) file a "simple motion" (without attaching additional evidence) seeking the removal of the language

---

[5] *See Dondero v. Hon. Stacey G. C. Jernigan*, Civ. Action No. 3-21-CV-0879-K.

[6] *Id.*, Dkt. No. 39 at 1-2 (noting that the Bankruptcy Court "reserve[d] the right to amend or supplement" its ruling).

[7] Bankr. Dkt. No. 3470.

[8] Ex. U, August 31, 2022 Hr'g Tr. at 20:13-25. Based on the Court's comments, Movants have attached only relevant excerpts of transcripts to this Motion to minimize the volume of exhibits in the record. However, Movants can file an appendix attaching full transcripts at the Court's request.

[9] Bankr. Dkt. No. 3479 at 3.

2

in the Court's original order denying recusal that hindered immediate appeal, or (2) file a new motion to recuse based on "any alleged new evidence or grounds for recusal."[10]  By invoking the first option, Movants would be free to seek mandamus of the Court's denial of the Original Recusal Motion, but would not have the benefit of a full and complete record.  Consequently, Movants have elected to file a new Motion containing all evidence of record that supports recusal.

## III.    RELEVANT BACKGROUND AND EVIDENCE OF BIAS[11]

Many disparaging remarks have been made about Mr. Dondero, his employees, and his businesses during the course of these bankruptcy proceedings, few of which are tethered to facts or evidence adduced in this case.  Among other things, Mr. Dondero has repeatedly been labeled "vexatious," "litigious," and a bad actor.  HCMLP has, in turn, been described as a "Byzantine empire" and "ruinous web."[12]  These accusations—which, to be clear, is all they are—have no basis in the realities of HCMLP's business or Mr. Dondero's management of it.

### A.    Mr. Dondero Ran A Successful And Profitable Business For More Than Two Decades Prior to Bankruptcy

HCMLP is an SEC-registered investment advisor founded in 1993 by Mr. Dondero and Mark A. Okada.[13]  Although this Court has adopted various advocates' description of HCMLP and its affiliates as a complex "web" of entities operated at the whim and for the sole benefit of Mr. Dondero, for 26 years prior to filing a chapter 11 petition, HCMLP operated as a legitimate (and heavily regulated) investment advisor for the benefit of its managed funds and investors.  As of the Petition Date, HCMLP continued to employ 76 employees, including executive-level

---

[10] *Id.*

[11] Movants have truncated the discussion of the relevant background that previously was discussed in Movants' Original Recusal Motion.  Movants hereby incorporate the Original Recusal Motion by reference and, where appropriate, Movants specifically reference sections of that Motion to support their renewed arguments here.

[12] Ex. D, June 30, 2020 Hr'g Tr. at 22:18, 68:24.

[13] Order (I) Confirming Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief ("<u>Confirmation Order</u>"), Bankr. Dkt. No. 1943, ¶ 4.

managers.[14]  Thus, while the Court has described Mr. Dondero as HCMLP's solitary decision-maker on all matters concerning the company's operation and management, that description makes no sense.  At its high-water mark, HCMLP had assets under management exceeding $40 billion.

Following the financial crisis in 2008, HCMLP and some of its managed funds and affiliates, like many other financial institutions and advisors across the globe, faced several lawsuits.  Notably, although the Court has repeatedly characterized Mr. Dondero as "litigious" and "vexatious," in virtually all of the lawsuits involving HCMLP before its bankruptcy filing, HCMLP was *the defendant*.[15]  What is more, between 2008 and HCMLP's bankruptcy filing in 2019, virtually none of the lawsuits filed against HCMLP resulted in any sizeable liability *against HCMLP*, and certainly none that would render HCMLP insolvent.[16]  Indeed, the only significant award issued against HCMLP at any time between 2008 and 2019 is an arbitration award in favor of the Redeemer Committee.  It also bears mentioning that at no time prior to HCMLP's bankruptcy filing had Mr. Dondero ever personally been held liable for *any* misconduct in relation to his management of HCMLP's business.

### B.    The Court Formed An Animus Against Mr. Dondero During The Acis Bankruptcy Case That Infected This Bankruptcy Case From The Outset

The Court's animus toward Movants stems from its earlier involvement in the bankruptcy case of Acis Capital Management, L.P., a Delaware limited partnership formed in 2010.  In January 2018, Joshua Terry, filed an involuntary petition in bankruptcy against Acis and its general partner,

---

[14] *Id.*, ¶ 5.

[15] *See, e.g.*, *UBS Securities, LLC v. Highland Capital Mgmt., L.P., et al.*, Index No. 650097/2009 (N.Y. Sup. Ct.); *Citibank, N.A. v. Highland CDO Opportunity Master Fund, L.P., et al.*, Case No. 1:12-cv-02827-NRB (S.D.N.Y.); *HYMF, Inc. v. Highland Capital Mgmt., L.P., et al.*, Index No. 601027/2009 (N.Y. Sup. Ct.); *Daugherty v. Highland Capital Mgmt., et al.*, Case No. 2017-0488-SG (Del. Ch. Ct.).

[16] Although this Court has suggested that HCMLP owes "$1 billion" to UBS, the UBS judgment was not against HCMLP but two of its managed funds.  *See* Bankr. Dkt. 177-4.  The Debtor itself objected to UBS's $1 billion proof of claim on this basis.  *See* Bankr. Dkt. No. 906.

Acis Capital Management GP, L.L.C. (collectively, "Acis").[17]  This Court presided over the Acis

Bankruptcy.  Prior to its bankruptcy, Acis served as portfolio manager for "hundreds of millions

of dollars' worth" of collateralized loan obligations ("CLOs").[18]  Mr. Dondero served as Acis's

Chief Executive Officer, and HCMLP provided certain services to Acis pursuant to shared services

agreements.  The Court's Bench Ruling confirming Acis's Chapter 11 plan makes abundantly clear

that the Court formed negative opinions of Mr. Dondero during that bankruptcy case.  The ruling

is replete with negative remarks about Mr. Dondero, his management decisions, and the structure

of his businesses.

HCMLP, a separately owned entity, filed its Chapter 11 petition in bankruptcy for entirely

different reasons in Delaware on October 16, 2019.[19]  At the time, Debtor's counsel—Pachulski,

Stang, Ziehl & Jones, LLP ("Pachulski")—explained that it filed the bankruptcy in Delaware to

give HCMLP and its then-existing management (including Mr. Dondero), a "fresh start."[20]  The

Official Committee of Unsecured Creditors (the "UCC") moved to transfer the proceedings to

this Court, arguing that transfer was appropriate because the Court had the benefit of a "learning

curve" because of the Acis Bankruptcy.[21]  At the time, Pachulski resisted the transfer, arguing that

the UCC only wanted to take advantage of the Court's preexisting negative views of HCMLP's

management.[22]  Thus, it was Pachulski that initially questioned the Court's impartiality.  The

---

[17] *In re Acis Capital Mgmt., L.P.*, Case No. 3:18-bk-30264 (N.D. Tex.) ("Acis Bankruptcy"), Dkt. No. 1; *see also* Bench Ruling and Memorandum of Law in Support of: (A) Final Approval of Disclosure Statement; and (B) Confirmation of Chapter 11 Trustee's Third Amended Joint Plan ("Bench Ruling), Acis Bankr. Dkt. No. 287 at 10-11.

[18] Bench Ruling, Acis Bankr. Dkt. No. 827 at 4.

[19] Bankr. Dkt. No. 3.

[20] Ex. A, December 3, 2019 Hr'g Tr. at 78:21-23.

[21] *Id.*

[22] *Id.* at 78:3-8; *see also id.* at 79:14-20 (referring to the opinions the Court formed in the Acis bankruptcy as "baggage").

Delaware Bankruptcy nonetheless granted the UCC's motion to transfer.[23]

Following transfer, this Court foreshadowed that it would rely on the negative opinions it formed during the Acis Bankruptcy in dealing with Mr. Dondero, his former employees, and his affiliated entities.[24]  Indeed, *at the very first hearing* before this Court on January 9, 2020, the Court reiterated its many negative opinions.[25]  And the Court pointed to actions purportedly taken by Mr. Dondero in the Acis Bankruptcy as "evidence" of a presumed propensity of Mr. Dondero to engage in similar actions in the HCMLP bankruptcy.  For that reason, the Court insisted on including language in its order allowing it to hold Mr. Dondero (but no other party) in contempt of court.[26]  Notably, at the time of this first hearing, *Mr. Dondero had not filed a single motion or objection to any motion*.  Consequently, there was nothing in the record before the Court to justify its specific rulings and comments relating to Mr. Dondero.

### C.    The Court's Animus Continued To Infect It Decision-Making And Treatment Of Movants[27]

#### 1.    The February 19, 2020 Motion to Retain Hearing

Just over a month after the Court's initial hearing in the bankruptcy case, on February 19, 2020, the Court held a hearing on HCMLP's application to retain the law firm Foley Gardere to pursue appeals relating to the Acis Bankruptcy on behalf of Neutra Ltd., a company owned by Mr. Dondero that succeeded to the ownership of Acis.  Importantly, during the hearing, former Bankruptcy Judge Russell Nelms—one of the three independent directors appointed to Debtor's

---

[23] *Id.* at 90:15-24.

[24] Shortly after the case was transferred, the United States Trustee likewise relied on the Court's comments and conclusions in the Acis Bankruptcy as the basis for its motion to appoint a Chapter 11 trustee.  *See* Bankr. Dkt. No. 271.  None of the evidence cited in the Trustee's motion had yet been adduced in HCMLP's bankruptcy proceeding.

[25] Ex. B, January 9, 2020 Hr'g Tr. at 78:23-79:16 (stating, "I can't extract what I learned during the Acis case, it's in my brain," and explaining its opinion that Mr. Dondero acted in a "bad way" in the Acis case).

[26] *Id.* at 80:3-6; *see also id.* at 52:10-25.

[27] For completeness and to give a full picture of the extent of the Court's bias, Movants have attached as Appendix A a chart listing many other, similar examples.

Independent Board—testified that, in the Board's business judgment, employment of Foley Gardere and payment of its legal fees was in the Debtor's best interest.[28]  Despite that testimony, the Court *sua sponte* expressed a belief (untethered to evidence) that Mr. Dondero may have somehow used his "powers of persuasion" to unduly influence the Independent Board's business judgment.[29]  The Court did not stop there.  It went on to comment: "Highland is in bankruptcy because of litigation, litigation, litigation.  The past officers and directors and controls' propensity to fight about everything . . . It's about years of litigation coming home to roost.  And this appears to be more of the same, potentially."[30]  That unsolicited commentary is surprising for two reasons.

*First*, again, Mr. Dondero had not yet "fought" anything in the context of the HCMLP proceedings (and indeed, was not even present at the hearing on the Debtor's motion to retain Foley Gardere).

*Second*, HCMLP was the *defendant* in the various lawsuits spawning "years of litigation," which the Court nonetheless blamed on "past officers and directors" of HCMLP.[31]  Where, as here, the Court has manifested an early distrust of one party and made unsolicited negative comments about the party's practices and intent, federal appellate courts have required recusal.[32]

---

[28] Ex. C, February 19, 2020 Hr'g Tr. at 62:6-17.

[29] *Id.* at 177:7-178:3 (emphasizing the Court's "long history" with Mr. Dondero—a history that came entirely from the Acis Bankruptcy).  In the same hearing, the Court also suggested that Mr. Dondero could not be "trusted" to "keep his word." *Id.* at 174:11-175:13.  When applying the reasonable business judgment standard to Mr. Seery and Debtor management, by contrast, the Court has said it is a very low standard requiring judicial deference.  *See* Ex. W, August 4, 2021 Hr'g. Tr. at 77:4-78:20.

[30] Ex. C, Feb. 19, 2020 Hr'g Tr. at 178:4-12.

[31] *See id.* at 177:7-178:17.  Again, the *only* pre-petition lawsuit that ended in any sizeable judgment *against HCMLP* was the arbitration award issued against HCMLP in favor of the Redeemer Committee.  Further, the Debtor *objected* to proofs of claim filed by the parties litigating or attempting to litigate against HCMLP—including those filed by Acis, UBS, Pat Daugherty, and HarbourVest—arguing that their proofs of claim were unmeritorious.  *See* Bankr. Dkt. Nos. 771 (Acis and Terry), 1008 (Daugherty), 906 (HarbourVest), 928 (UBS).

[32] *See Sentis Group, Inc. v. Coral Group, Inc.*, 559 F.3d 888, 904-05 (8th Cir. 2009) (judge's "apparent distrust of Plaintiffs as manifested early in the litigation" were among the reasons that reassignment on remand was appropriate); *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1464-65 (D.C. Cir. 1995) (district judge made "several comments during proceedings which evidenced his distrust of Microsoft's lawyers and his generally poor view of Microsoft's practices" arising out of "other alleged misdeeds," none of which were at issue in the actual case before it).

From that point on, unsurprisingly, HCMLP and its counsel began to leverage the Court's predisposition against Mr. Dondero (*i.e.*, what the Debtor had previously described as the Court's "baggage") for the Debtor's own benefit.[33]

### 2.    The June 30, 2020 CLO Fund Release Hearing

The Court's animus against Movants persisted, and if anything, got worse, from there.  In April 2020, CLO Holdco—a non-debtor wholly-owned subsidiary of a charitable Donor-Advised Fund (the "DAF") established by Mr. Dondero, moved to have $2.5 million in funds that indisputably belonged to CLO Holdco released from the registry of the Court.[34]  The UCC objected.  At a June 2020 hearing, CLO Holdco introduced 16 exhibits supporting its claim to the funds, and the Court admitted that CLO Holdco's lawyer made "perfect arguments" regarding the potential legal ramifications of refusing to release the funds, including that "holding the money in the registry of the Court that a non-debtor asserts is its property" is "tantamount to a prejudgment remedy."[35]  Nonetheless, based entirely on arguments made by counsel for the UCC, the Court again concluded that Mr. Dondero was behind the CLO Holdco filing and, therefore, questioned whether it was filed in "good faith," despite the absence of evidence in the record supporting this belief.[36]  The Court therefore denied the motion.  To date, the UCC has not pursued injunctive (or any other) relief with respect to the funds, but the Court has not released them to CLO Holdco.[37]

---

[33] This is similar in kind to what happened in *Sentis Group, Inc.*, in which the U.S. Court of Appeals for the Eighth Circuit reversed and remanded for reconsideration by a different judge a district court's order dismissing the case as a sanction for perceived discovery misconduct by the plaintiffs.  In a case marred by contentious discovery disputes, the Eight Circuit first noted that "defense counsel's goal shifted from conducting effective discovery to fanning the flames of the court's frustration and building a case for sanctions."  *Id.* at 891.  Ultimately, the Eighth Circuit reversed the sanctions order and held that the district court's statements, in combination with its misconstruction of a prior order and "its apparent distrust of Plaintiffs as manifested early in the litigation" showed a "sufficiently high degree of antagonism to require reassignment of the case on remand."  *Id.* at 904-05.

[34] Bankr. Dkt. No. 590.

[35] *See* Ex. D, June 30, 2020 Hr'g Tr. at 85:17-22.

[36] *Id.* at 82:3-11, 85:4-16.

[37] Needless to say, Movants and every entity that the Court has surmised has any affiliation with Mr. Dondero are gun-shy about filing any motion out of fear they will be slapped with sanctions or deemed to have acted in "bad faith."

### 3.      The July 8, 2020 Exclusivity Hearing

Just over one week later, at a hearing on HCMLP's motion to extend the exclusivity period, the Court, acting *sua sponte*, directed HCMLP's counsel to investigate Mr. Dondero and certain "Highland affiliates" after allegedly seeing a news article (that was not part of the record) that referenced "Mr. Dondero or Highland affiliates" receiving PPP loans.[38]  Notably, neither Mr. Dondero nor the "Highland affiliates" referred to in the article were the property of or controlled by HCMLP.  In fact, as HCMLP would later confirm, the PPP loans at issue had nothing whatsoever to do with the HCMLP.[39]

### 4.      The December 16, 2020 And January 26, 2021 CLO Hearings

In keeping with its habit of accusing entities that the Court perceives to be affiliated with Mr. Dondero of acting "bad faith," the Court did so again in December 2020.[40]  On December 16, 2020, the Court held a hearing on a motion by various third-party financial advisors and retail funds to prevent HCMLP's liquidation of certain CLO assets (the "Restriction Motion").[41]  During the hearing, the Court chastised counsel for the advisors and retail funds for filing the Restriction Motion (*i.e.*, for advocating a good faith position on behalf of their clients), stating that it was "dumbfounded" by the motion, and opining that Mr. Dondero was behind it, notwithstanding that it was filed by separate and distinct legal entities represented by independent counsel.[42]  The Court

---

Conversely, the UCC, which has not alleged any legitimate basis for the Court's continued retention of the funds belonging to CLO Holdco, has not been chastised or threatened with sanctions.

[38] *See* Ex. E, July 8, 2020 Hr'g Tr. at 42:10-24.

[39] Ex. F, July 14, 2020 Hr'g Tr. at 53:17-59:3.

[40] The federal courts have repeatedly required recusal or reassignment to a different judge where the sitting judge questions the integrity of one party or their counsel or suggests that their actions constitute "bad faith." *See, e.g.*, *Johnson v. Sawyer*, 120 F.3d 1307, 1334-37 (5th Cir. 1997); *In re U.S.*, 572 F.3d 301, 311-12 (7th Cir. 1999); *U.S. v. Kennedy*, 682 F.2d 244, 258-60 (3d Cir. 2012).

[41] Bankr. Dkt. No. 1522.  The basis and context for the motion is described in detail in Movants' Original Recusal Motion, Bankr. Dkt. No. 2061, at pp. 8-16.  Notably, the retail funds are registered investment advisors that owe independent fiduciary duties to their investors pursuant to the Investment Advisors Act of 1940.

[42] Ex. J, December 16, 2020 Hr'g Tr. at 63:14-25.

concluded, without any evidentiary basis, that the Restriction Motion was brought for an improper purpose.[43]    The Court further declared the Restriction Motion frivolous, "almost Rule 11 frivolous," notwithstanding that the motion was filed in good faith.[44]    The Court then used the hearing to condemn Mr. Dondero on the record.

Yet another display of the Court's bias toward Movants came in the context of this same dispute, several weeks later.    On January 26, 2021, the Court held a preliminary injunction hearing in which it considered whether the advisors and retail funds had tortiously interfered with agreements relating to management of the CLOs.[45]    It was abundantly clear at the hearing that HCMLP could not make the requisite showing to justify injunctive relief.[46]    And the evidence was undisputed that Mr. Dondero did not influence or cause the advisors or retail funds to take any action.    Nevertheless, the Court once again turned its focus to Mr. Dondero, warning him that the Court had prohibited him from taking action to interfere with the CLOs.    Incredibly, the Court then made the implied finding that Mr. Dondero had caused counsel for the retail funds to take certain actions.[47]    The Court further stated that it was "leaning" toward finding Mr. Dondero in contempt of court and threatening to shift the "whole bundle of attorney's fees" to Mr. Dondero in connection with a motion for injunctive relief filed by HCMLP that had nothing to do with him.[48]

---

[43] *Id.*

[44] *See id.* at 64:1-7.  The statutory basis for the requested relief was section 363(c)(1) or section 1108 of the Bankruptcy Code, which provide that the debtor-in-possession may engage in ordinary course business "unless the court orders otherwise."  That was all that the Advisors and Retail Funds asked the Court to do.

[45] *See* Adv. Proc. No. 21-03000-sgj, Dkt. 1; Ex. L, January 26, 2021 Hr'g Tr.

[46] HCMLP's failures in this regard are detailed in Movants' Original Recusal Motion, Bankr. Dkt. No. 2016, at pp. 13-16.

[47] This finding was in direct contravention of the Court's statements just one week earlier, where it implied that Mr. Dondero lacked such control and prohibited Mr. Dondero from testifying that he exercised no control of the advisors, the retail funds, or their counsel.  Ex. K, January 8, 2021 Hr'g Tr. at 119:6-122:25.

[48] Ex. L, Jan. 26, 2021 Hr'g Tr. at 251:24-252:5.

### 5.    The Court's Ruling On Movants' Motion For An Examiner

Another concerning thing that has happened at the hands of this Court is the repeated disenfranchisement of Movants from judicial process.  For example, the Court has repeatedly wielded its scheduling powers as a sword against Movants, often preventing any real consideration of legitimate motions filed by Movants by ensuring that hearings on those motions happen too late. In one such instance, on January 14, 2021, Dugaboy and Get Good (the "Trusts") requested the Court direct the appointment of a neutral third-party examiner pursuant to 11 U.S.C. § 1104(c) as a less costly means to resolve various issues that had arisen in the HCMLP bankruptcy (the "Examiner Motion").[49]  The Trusts sought the appointment of an examiner to address, among other things (i) the issues raised by the advisors and the retail funds in the Restriction Motion, (ii) various objections to the proposed plan of reorganization raised by the advisors, the retail funds, and the United States Trustee (discussed below), and (iii) concerns expressed by the Court about costs and expenses incurred in the context of the bankruptcy proceedings.[50]

Given the timing of the Examiner Motion relative to the expected date of the hearing on Debtor's Fifth Amended Plan of Reorganization (as Modified) (the "Plan"), the Trusts asked the Court to consider the Motion on an "emergency" basis to avoid interference with the Plan.[51] Despite this request (and despite the Court's willingness to hear motions filed by HCMLP on an emergency basis), the Court set the hearing on a date long after the expected hearing on Plan confirmation, thereby ensuring that the Motion would be rendered moot.

---

[49] Bankr. Dkt. No. 1752.

[50] *Id.*

[51] *Id.*

### D.        The Court Confirms A "Monetization Plan" Over Movants' Objections

The Court's biased decision-making tethered to its preexisting negative views of Mr. Dondero persisted through Plan confirmation.

On February 8, 2021, the Court announced its oral ruling regarding the Plan, in which the Court referred inexplicably and extensively to proceedings in the Acis Bankruptcy.[52]  In its ruling, the Court summarily rejected all of the Plan objections lodged by Movants, decreeing them as filed in bad faith.[53]  Next, even though it had "not been asked to declare Mr. Dondero and his affiliated entities as vexatious litigants per se," the Court deemed Mr. Dondero and other Movants "vexatious litigants."[54]  The Court's ruling failed to comport with its own iteration of the prerequisites to declaring a litigant vexatious.[55]  Indeed, the Fifth Circuit recently explained that the Bankruptcy Court failed to follow proper procedures to designate Mr. Dondero vexatious.[56]

On February 22, 2021, the Court issued its Confirmation Order.  Against the backdrop discussed herein, it is perhaps not surprising that the Court again took the opportunity to criticize and accuse Mr. Dondero and Movants:

- "Naturally, [the independent board members] were worried about getting sued no matter how defensible their efforts—given the litigation culture that enveloped Highland historically.  Based on the record of this case and the proceedings in the Acis chapter 11 case, it seemed as though everything always ended in litigation at Highland."[57]

- "The Debtor's Chief Executive Officer, James P. Seery, credibly testified at the Confirmation Hearing that the Debtor was 'run at a deficit for a long time and then would sell assets or defer employee compensation to cover its deficits.'  The Bankruptcy Court cannot help but wonder if that was necessitated because of

---

[52] Ex. M, February 8, 2021 Hr'g Tr. at 15:15-16:5.

[53] *Id.* at 20:17-20.

[54] *Id.* at 46:20-25, 45:12-14.

[55] *See id.* at 46:6-15 (describing factors to be considered prior to deeming a litigant vexatious).

[56] *See In the Matter of Highland Capital Mgmt., L.P.*, 48 F.4th 419 n.19 (5th Cir. 2022) (citing *In re Carroll*, 850 F.3d 811, 815 (5th Cir. 2017) (per curiam)).  The problems with the Court's ruling regarding vexatiousness are further described in detail in Movants' Original Recusal Motion, Bankr. Dkt. No. 2061 at pp. 21-27.

[57] Confirmation Order, Bankr. Dkt. No. 1943, ¶ 14.

enormous litigation fees and expenses incurred by the Debtor due to its culture of litigation . . . ."[58]

- "[T]he Bankruptcy Court questions the good faith of Mr. Dondero's and the Dondero Related Parties' objections.  In fact, the Bankruptcy Court has good reason to believe that these parties are not objecting to protect economic interests they have in the Debtor but to be disruptors."[59]

- "Mr. Post testified on behalf of the Highland Advisors and Funds that the Funds have independent board members that run the Funds, but the Bankruptcy Court was not convinced of their independence from Mr. Dondero because none of the so-called independent board members have ever testified before the Bankruptcy Court and all have been engaged with the Highland complex for many years.  Notably, the Court questions Mr. Post's credibility because, after more than 12 years of service, he abruptly resigned from the Debtor in October 2020 at the exact same time that Mr. Dondero resigned at the Board of Directors' request, and he is currently employed by Mr. Dondero."[60]

- In discrediting the objections of various NexBank entities, the Court likewise surmised that "Mr. Dondero appears to be in control of these entities as well."[61]

- "[T]he Bankruptcy Court has allowed . . . these objectors to fully present arguments and evidence in opposition to confirmation, even though . . . the Bankruptcy Court questions their good faith.  Specifically, the Bankruptcy Court considers them all to be marching pursuant to the orders of Mr. Dondero."[62]

Again, the Bankruptcy Court offered up no specific evidence of any bad faith on behalf of Mr. Dondero or the other "objectors."  Nor did the Court offer any evidence (or explanation) of why it had "good reason to believe" that Mr. Dondero and the other objectors were seeking to do anything other than protect their legitimate economic interests.[63]  In short, an objective observer reading the

---

[58] *Id.*, ¶ 7.

[59] *Id.*, ¶ 17.

[60] *Id.*, ¶ 18.  Notably, at the time of these comments, there was no evidence of record even suggesting that the Funds were managed by anything other than independent boards, and there was no evidence—other than the Court's own conjecture—that Mr. Post's resignation from his position at HCMLP had anything to do with Mr. Dondero.  Nor is it clear how Mr. Post's mere association with Mr. Dondero could possibly impact his competency or credibility to testify about the management of various Funds that he personally came into contact with during "12 years of service" for the Debtor.

[61] *Id.*

[62] *Id.*, ¶ 19.

[63] Notably, the Fifth Circuit previously has admonished this Court for making findings and decisions based on mere "suspicion" and "indirect inference" rather than evidence.  In *The Cadle Co. v. Moore*, the Fifth Circuit reversed an order of dismissal issued by this court as a sanction for "abuse of judicial process," finding that the "bankruptcy court's

language of the Confirmation Order would have reason to question this Court's impartiality.

    **E.**    **The Court's Post-Confirmation Decisions Have Continued To Give The Appearance Of Bias**

Since confirmation, the Court has continued to act in a biased manner.

    **1.**    <u>The Court's August 2021 Sanctions Order</u>

Perhaps one of the most telling orders issued by the Court since the Original Recusal Motion was filed is the Court's order sanctioning various entities and individuals because two entities—the DAF and CLO Holdco—in consultation with legal counsel, decided to file a lawsuit against HCMLP in the Northern District of Texas. Specifically, on April 12, 2021, a complaint was filed against HCMLP and two HCMLP-controlled entities (Highland HCF Advisor, Ltd. ("HCFA") and Highland CLO Funding, Ltd. ("HCLOF")) alleging, *inter alia*, impropriety by the Debtor, HCFA, and HCLOF in brokering the sale of CLO interests held by HarbourVest[64] to the Debtor, without prior notice to other CLO investors and without respecting those investors' right of first refusal.[65] Shortly after filing the complaint, the DAF and CLO Holdco filed a motion for leave to amend the complaint to add Mr. Seery as a defendant, based on his role brokering the HarbourVest transaction.[66] Within days of these filings, HCMLP filed a motion seeking an order holding the DAF, CLO Holdco, and "the persons who authorized the DAF and CLO Holdco . . . to file the Seery motion," including their attorneys, Sbaiti & Company, PLLC, in civil contempt.[67]

---

mere suspicions do not add up to clear and convincing evidence." 739 F.3d 724, 731 (5th Cir. 2014). In addition, the Fifth Circuit emphasized that it was "troubled by the bankruptcy court's use of indirect inferences" to support its decision. *Id.* at 731 n.11.

[64] "HarbourVest" refers to HarbourVest Dover Street IX Investment, L.P., HarbourVest 2017 Global AIF, L.P., HarbourVest 2017 Global Fund, L.P., HV International VIII Secondary, L.P., and HarbourVest Skew Base AIF, L.P.

[65] *Charitable DAF Fund, L.P. v. Highland Capital Management, L.P.*, Case No. 21-cv-00842 (N.D. Tex.) ("<u>DAF Action</u>").

[66] DAF Action, Dkt. No. 6.

[67] Bankr. Dkt. No. 2247. Specifically, HCMLP argued that the lawsuit and the motion seeking to add Mr. Seery as a defendant violated the Court's Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course [Dkt. 339] and as well as its Order Approving Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Retention of

The Court held an evidentiary hearing on HCLMP's sanctions motion on June 8, 2021.  At that hearing, Mark Patrick, who was then serving as the DAF's general manager, testified that he hired Sbaiti & Co. and that he authorized the DAF to file the lawsuit and the motion to add Mr. Seery as a defendant.[68]  Mr. Dondero testified that, while he provided certain information to the DAF and Sbaiti & Co. in relation to the lawsuit, he was not involved at all in authorizing or preparing the motion to add Mr. Seery (the main reason for the motion for civil contempt).[69]

Despite this testimony and the absence of any contravening testimony, the Court concluded that "Mr. Dondero sparked this fire" and that the evidence "was clear and convincing that Mr. Dondero encouraged Mr. Patrick to do something wrong, and Mr. Patrick basically abdicated responsibility to Mr. Dondero."[70]  The Court then concluded  that the lawsuit filed by the DAF and CLO Holdco was, "***from this Court's estimation, wholly frivolous.***"[71]  In fashioning its sanctions award, the Court took into consideration the invoices submitted by HCMLP's counsel reflecting what the firm actually incurred in connection with the civil contempt motion ($38,796.50), and then compounded the sanction by nearly *seven times* that amount.  In the end, the Court ordered the DAF, CLO Holdco, Sbaiti & Co. (including Mazin Sbaiti and Jonathan Bridges individually), Mark Patrick, and Mr. Dondero to pay $239,655 in sanctions to HCMLP.[72]  Worse still, the Court tacked on a monetary sanction of $100,000 to be paid by anyone that filed any appeal.[73]

In short, the Court ignored the undisputed testimony of record to find "clear and convincing

---

James P. Seery, Jr. as Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative Nunc Pro Tunc to March 15, 2020 [Dkt. 854].  *Id.* at 2.

[68] Bankr. Dkt. No. 2660 at 19.

[69] *Id.* at 21.

[70] *Id.*

[71] *Id.* at 26 (emphasis added).

[72] *See id.* at 28-30.

[73] *Id.* at 30.  The District Court subsequently confirmed the sanctions award.  Mr. Dondero intends to appeal.

evidence" of Mr. Dondero's responsibility for the motion to name Mr. Seery as a defendant, concocted a way to saddle Mr. Dondero and others with a multi-hundred thousand dollar liability, and prophylactically sanctioned any effort to invoke a legal appellate process.[74]

### 2.    The Court's Order To Appear

The Court has further targeted Mr. Dondero (as well as his sister Nancy Dondero) by requiring their presence at all hearings, regardless of whether their presence is needed.  In ordering Mr. Dondero's presence, the Court explained that Mr. Dondero's participation in the bankruptcy and related proceedings was "taking up time."[75]  By the Court's own admission, this is a departure from its usual approach, where a party would be expected to attend hearings only if they are "taking a position" on the issue at hand.[76]

At the same hearing (which was to decide a motion to compel the Debtor's deposition testimony), the Court openly speculated that there was an ulterior motive of "antagonism" behind Mr. Dondero's good-faith litigation conduct.[77]  The Court's statements indicate that, when Mr. Dondero engages in routine litigation steps, like making discovery motions, the Court will treat such actions as nefarious "antagonistic move[s]" rather than ordinary invocation of legal process.

### 3.    The Court's September 12, 2022 Withdrawal of Claim Hearing

And in the most recent example of the Court's biased decision-making, on September 12, 2022, the Court held a hearing on several motions, including a motion by Movant NexPoint Real

---

[74] The District Court recently found that the claims against the Debtor with respect to the Debtor's dealings with HarbourVest *had merit*—despite the Bankruptcy Court's lengthy and opinionated vocalizations to the contrary. *Compare The Charitable DAF Fund, L.P. v. Highland Capital Mgmt., L.P.*, Adv. Proc. No. 3:21-cv-3129-B, Dkt. No. 28, *with* Bankr. Dkt. 2247.  Judge Boyle reversed the Bankruptcy Court's dismissal of the claims against the Debtor on the basis of collateral estoppel, noting that the Bankruptcy Court had raised collateral estoppel *sua sponte*—neither party had raised collateral estoppel below, nor even briefed the issue—and holding that the elements of collateral estoppel *could not be met* under the circumstances.  *See* Adv. Proc. No. 3:21-cv-3129-B, Dkt. 28 at 7-13.

[75] Ex. P, May 20, 2021 Hr'g Tr. at 20:19-21:14.

[76] *Id.*; *see also id.* at 21:1-8.

[77] *Id.* at 34:3-9 (criticizing Mr. Dondero for engaging in "a fight with Mr. Seery" and commenting that "the motion to compel names him by name. It just — it feels like another antagonistic move").

Estate Partners LLC f/k/a HCRE Partners LLC ("<u>HCRE</u>") to withdraw its proof of claim.[78]  In that

hearing, HCRE sought the Court's approval to withdraw a disputed proof of claim relating to

HCRE's asserted interest in a fund called SE Multifamily Holdings.[79]  Counsel for HCMLP

objected to HCRE's withdrawal in the absence of certain concessions by HCRE, including a

stipulation that HCRE would not contest HCMLP's 46.6% interest in SE Multifamily Holdings

and that HCRE would waive any right to appeal a final order on its withdrawn proof of claim.[80]

In what can only be described as an incredible exchange, the Court first asked HCRE's counsel,

Bill Gameros ("<u>Mr. Gameros</u>"), if HCRE would consent to those conditions.  Mr. Gameros agreed

to both.[81]  But that did not satisfy the Court.  The Court instead demanded that a "client

representative" of HCRE appear and testify that the conditions were acceptable.  At that point, DC

Sauter, in-house counsel for Mr. Dondero, appeared and confirmed that HCRE would agree to the

conditions for withdrawal of its proof of claim.[82]  Still, the Court was not satisfied:

> THE COURT:     All right.  Well, it sounds like hearsay to me.  I don't know –
> Counsel, let me have you both respond.  You know, *I worry about
> this will fall apart the minute Mr. Dondero is instructing a lawyer*,
> I never agreed to that.  I mean I just don't know.  This is highly
> unusual.[83]

When Mr. Sauter explained that Mr. Dondero felt more comfortable having a lawyer make legal

representations on the record, the Court responded: "I mean I'm not sure I care what you say, no

offense.  I don't think I have a person with clear authority here."[84]  The Court then rebuffed Mr.

Gameros's suggestion he could make binding representations on behalf of his client: "Mr.

---

[78] Ex. V, Sept. 12, 2022 Hr'g Tr.

[79] Bankr. Dkt. No. 3443 at 3.

[80] Ex. V, Sept. 12, 2022 Hr'g Tr. at 32:22-34:2.

[81] *Id.*

[82] *Id.* at 34:3-20, 35:36.

[83] *Id.* at 36:4-8 (emphasis added).

[84] *Id.* at 36:12-37:9.

Gameros, come on.  You know this is the client's decision to make.  Okay.  I don't have a client representative."[85]

At that point, Mr. Gameros offered to get Mr. Dondero on the phone to give the exact same representation that Mr. Gameros and Mr. Sauter had already given.  Before taking Mr. Dondero's sworn testimony, the Court rebuffed him for failing to have access to video, even though he no previous notice he would have to give testimony at the hearing.[86]  Mr. Dondero testified that HCRE would agree to all of the Debtor's conditions to withdrawal of the proof of claim.[87]  Even then, the Court told Mr. Gameros:  "*I mean he needs to be asked every which way from Sunday whether he's waiving the right* to challenge Highland's 46.06 interest *from now until eternity, okay*.  That's basically, you know, we either have that agreement or we'll just have a trial.[88]  Mr. Dondero then again agreed to the entry of an order denying HCRE's proof of claim with prejudice and agreed not to challenge HCMLP's equity ownership in SE Multifamily Holdings.[89]

After all of that, the Court stated: "[I]t feels like we had a little bit of reluctance to say it as forcefully as we would need to have it said to avoid relitigation" and then denied HCRE's motion to withdraw its proof of claim.[90]  In doing so, the Court found that HCRE had acted with "undue vexatiousness" in pursuing the proof of claim merely because HCMLP opposed the claim and had spent "hundreds of thousands of dollars" doing so.[91]  The Court therefore ordered additional depositions to take place and the parties to attend trial.  And as a parting shot, the Court asked the U.S. Trustee to investigate HCRE and Mr. Dondero (who signed the proof of claim):

---

[85] *Id.* at 37:7-22.
[86] *Id.* at 38:24-39:3, 39:8-24.
[87] *Id.* at 40:9-17, 41:10-22, 42:13-25.
[88] *Id.* at 42:21-25 (emphasis added).
[89] *Id.* at 43:23-44:6.
[90] *Id.* at 54:6-15.
[91] *Id.* at 52:4-53:14.

> I don't mean to be alarming, but I want it run by the U.S. Trustee because, you know, I've heard some things that have troubled me about the, you know, lack of good faith with regard to the proof of claim and, you know alleged gamesmanship. And, you know, I talked earlier about this goes to the integrity of the system, you know, filing a proof of claim under penalty of perjury. . . . It's just something uncomfortable going on in my brain about, you know, again a proof of claim being on file two, almost two and a half years and then, you know, okay, never mind, okay, I agree to never mind as long as you agree to XYZ. . . . I just know if there are quid pro quos I feel like, you know, maybe I need to have the U.S. Trustee, not per se signing off on any agreed order but at least kind of looking at it . . . .[92]

The suggestion that the U.S. Trustee investigate supposed "gamesmanship" by HCRE and Mr. Dondero and whether *they* had given quid pro quos is particularly concerning, where the entire record of the hearing makes clear that it was *HCMLP and its counsel* asking for quid pro quos in return for agreeing to the withdrawal of HCRE's proof of claim.

## IV.    THE COURT SHOULD IMMEDIATELY RECUSE ITSELF

Application of the appropriate standard for recusal leaves little doubt that recusal is required in this case. Under Section 28 U.S.C. § 455, a judge "*shall* disqualify [her]self in any proceeding in which h[er] impartiality may reasonably be questioned."[93] A judge "*shall* also disqualify [her]self" if one of several enumerated circumstances exist, including if the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."[94] The provisions of section 455 are mandatory and afford separate, though overlapping, grounds for recusal.[95]

Under section 455(a), recusal is required whenever a judge's partiality might reasonably be questioned, even if the judge does not have actual personal bias or prejudice.[96] The test is not

---

[92] *Id.* at 57:18-59:4.

[93] 28 U.S.C. § 455(a) (emphasis added).

[94] 28 U.S.C. § 455(b)(1) (emphasis added).

[95] *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003).

[96] *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 850 (2001); *Andrade*, 338 F.3d at 454.

whether the judge believes he or she is capable of impartiality and not whether the judge possesses

actual bias.[97]  Instead, the test is whether the "'average person on the street who knows all the

relevant facts of a case'" might reasonably question the judge's impartiality.[98]  As Congress

explained when enacting section 455, litigants "ought not have to face a judge where there is a

reasonable question of impartiality."[99]  Thus, this statutory provision was "designed to promote

public confidence in the impartiality of the judicial process."[100]  Accordingly, recusal is warranted

where a judge's comments during proceedings would "cause a reasonable observer to question

whether [the judge] 'would have difficulty putting h[er] previous views and findings aside.'"[101]

With respect to 28 U.S.C. § 455(b), although "judicial rulings alone almost never constitute

a valid basis for a bias or partiality motion," the Supreme Court has recognized that predispositions

developed during the course of a trial can suffice to demonstrate the requisite bias or prejudice.[102]

In this regard, the words "bias" and "prejudice" mean a disposition or opinion that is somehow

wrongful or inappropriate, either because: (a) it is undeserved; (b) it rests upon knowledge that the

holder of the opinion ought not to possess; or (c) it is excessive in degree.[103]  Notably, a court's

consideration of an extrajudicial source of information is a factor in favor of finding either an

appearance of partiality under section 455(a) or bias or prejudice under section 455(b)(1).[104]

Moreover, "opinions formed by the judge on the basis of facts introduced or events occurring in

---

[97] *See Burke v. Regolado*, 935 F.3d 960, 1054 (10th Cir. 2019) (citations omitted); *Liljeberg*, 486 U.S. at 805.

[98] *In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996).

[99] H. Rep. No. 1453, 93rd Cong., 2d Sess. 1 (1974), reprinted in 1974 U.S. Code Cong. & Admin. News 6351, 6355.

[100] *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988) (quoting H.R. Rep. No. 1453); *Liljeberg*, 486 U.S. at 859-60.

[101] *Microsoft Corp.*, 56 F.3d at 1465 (quoting *United States v. Torkington,* 874 F.2d 1441, 1447 (11th Cir.1989)).

[102] *Liteky v. U.S.*, 510 U.S. 540, 555 (1994).

[103] *Id.* at 554.

[104] *Bell v. Johnson*, 404 F.3d 997, 1004 (6th Cir. 2005) (citations omitted).  Importantly, consideration of an extrajudicial source is not necessary to a finding of bias or prejudice.  *Liteky*, 510 U.S. at 551, 554-55.

the course of the current proceedings, or of prior proceedings," may evidence bias if the opinions reveal that they "derive from an extrajudicial source; and ***they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible***."[105]

In short, the Movants, like all other litigants, are entitled to a full and fair opportunity to make their case in an impartial forum—regardless of their history with that forum.[106]  Indeed, "fundamental to the judiciary is the public's confidence in the impartiality of [its] judges and the proceedings over which they preside."[107]  Thus, "justice must satisfy the appearance of justice."[108] For this reason, the Fifth Circuit has held that "[i]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal."[109]

In this case, the balance can tip only in one direction because recusal is appropriate under both prongs of 28 U.S.C. § 455.  At a minimum, the Court's statements and actions in this case would cause any objective observer to question the Court's impartiality, which mandates recusal.[110]  As set forth above, the Court has made antagonistic statements to and about Movants and has manifested an "apparent distrust" of Movants since "early in the litigation."[111]  Indeed, the Court deemed Mr. Dondero a bad actor at the very first hearing it held in the case, based entirely on opinions formed during the Acis Bankruptcy.[112]  At that first hearing, the Court singled Mr. Dondero out for potential future sanctions before he had taken any action in this case.  Just one

---

[105] *Liteky*, 510 U.S. at 555(citation omitted) (emphasis added).

[106] *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 893 (5th Cir. 2021) (citing *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995)).

[107] *Id.*

[108] *Id.* (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)).

[109] *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997).

[110] *Liljeberg*, 486 U.S. at 850; *Andrade*, 338 F.3d at 454.

[111] *Sentis Group, Inc.*, 559 F.3d at 904-05 (reassigning case to a new judge on remand for engaging in similar behavior).

[112] *See* Section III.B, *supra* at pp. 6-7; *see also* Original Recusal Motion, Bankr. Dkt. No. 2061 at pp. 5-6.

month later, the Court accused Mr. Dondero of misconduct at a hearing that he did not attend in

connection with a motion that he did not file.[113]   The Court's subsequently repeatedly accused

Movants and their counsel of acting in "bad faith," repeatedly called Mr. Dondero "vexatious" or

"litigious" when he acted in a legally justifiable manner, and generally manifested a distrust of

Movants and their counsel.  Courts repeatedly have found recusal appropriate in circumstances

that mirror these.[114]

But in addition to *appearing* biased, which itself would mandate recusal, the Court in this

case has *acted* in a manner that demonstrates such a "high degree of favoritism or antagonism as

to make fair judgment impossible."[115]  Although the record is replete with examples, by way of

summary, the Court has (1) admitted that the negative opinions about Mr. Dondero formed during

the Acis Bankruptcy cannot be excised from the Court's mind;[116] (2) made repeated negative

statements about Mr. Dondero and entities that the Court perceives be affiliated with him in

connection with the Court's rulings;[117] (3) repeatedly targeted Mr. Dondero with threats of

---

[113] *See* Section III.C.1, *supra* at pp. 7-8.

[114] *See, e.g.*, *In re U.S.*, 572 F.3d at 311-12 (reversing district judge's order denying motion to recuse and ordering that "all orders entered by the Judge after the motion for recusal was filed . . . be vacated" where judge questioned one party's decision to pursue a course of action and made comments that were critical of the party's position ); *Kennedy*, 682 F.2d at 258-60 (ordering reassignment of the case to a different judge on remand where judge openly questioned the integrity of one party's counsel, suggested he was proceeding in "bad faith,"  and called certain decisions made by him "suspicious"); *Johnson*, 120 F.3d at 1334-37 (ordering reassignment of the case to a different judge on remand where judge questioned in open court "the conduct of the lawyers" for one party, and the judge questioned one party's "good faith"); *Microsoft Corp.*, 56 F.3d at 1465 (where judge's comments "evidenced his distrust of [one party's] lawyers and his generally poor view of [one party's] practices," a reasonable observer could question whether judge "would have difficulty putting his previous views and findings aside," requiring recusal on remand).

[115] *Liteky*, 510 U.S. at 555.

[116] *See* Section III.C., *supra* at pp. 6-7 & n.25.

[117] *See* Sections III.B, *supra* at pp. 6-8; Section III.C.4, *supra* at p. 11; Section III.E.1, *supra* at pp. 16-17; Section III.E.2, *supra* at pp. 17-18; Section III.E.3, *supra* at pp. 19-20.  In addition, the Court has repeatedly described Mr. Dondero as "vexatious" and "litigious" as a justification for its actions.  *See* Ex. G, Sept. 23, 2020 Hr'g Tr. at 51:14; Ex. M, Feb. 8, 2021 Hr'g Tr. at 17:15, 37:18, 40:21, 45:13, 46:21; Ex. N, Feb. 23, 2021 Hr'g Tr. at 232:18; Ex. S, June 25, 2021 Hr'g Tr. at 109:21.  The Court also has repeatedly surmised that the actions of Mr. Dondero, Movants, and their attorneys are in "bad faith" or "frivolous."  *See* Ex. J, Dec. 16, 2020 Hr'g Tr. at 64:1-5; Ex. L, Jan. 26, 2021 Hr'g Tr. at 254:4; Ex. N, Feb. 23, 2021 Hr'g Tr. at 233:18; Ex. O, May 10, 2021 Hr'g Tr. at 43:3; Ex. R, June 10, 2021 Hr'g Tr. at 87:6.  And the Court has repeatedly referred to Mr. Dondero and his companies, including Movants, in a pejorative manner, as a "Byzantine complex," "Byzantine empire" and "web."  *See* Confirmation Order, ¶ 6; Ex.

contempt or sanctions, singled Mr. Dondero out for disparate treatment, and and questioned the good faith of Movants and their counsel for defending lawsuits and motions and/or asserting valid legal positions;[118] (5) sanctioned Mr. Dondero in connection with a motion that he and others testified he had no role in filing or responsibility for authorizing;[119] (6) prophylactically sanctioned Mr. Dondero for asserting his lawful appellate rights;[120] (7) concluded, without supporting evidence, that any entity the Court deems connected to Mr. Dondero is essentially no more than a tool of Mr. Dondero;[121] (8) disregarded the testimony of any witness with a connection to Mr. Dondero as per se less credible, which includes attorneys and persons who owe fiduciary duties and ethical obligations;[122] and (9) ruled against Mr. Dondero and the Movants at every possible opportunity, regardless of the evidence and the testimony before the Court.  Each of these examples alone would mandate recusal, but cumulatively they leave no doubt that the Court's antagonism for Movants goes far beyond is acceptable and makes fair judgment impossible.

Moreover, contrary to the Court's prior suggestion that any motion to recuse filed by Movants is untimely, there is a very real and present reason to seek recusal even now.[123]  As explained above, the Court continues to preside over the bankruptcy proceedings, acted in a

---

D, June 30, 2020 Hr'g Tr. at 80:17-18, 86:19, 87:5-8; Ex. E, July 8, 2020 Hr'g Tr. at 46:11; Ex. M, Feb. 8, 2021 Hr'g Tr. at 7:15; Ex. Q, June 8, 2021 Hr'g Tr. at 294:3.  And the Court has singled out Mr. Dondero, his affiliates (including Movants), and his attorneys for disparate treatment at every possible opportunity.  *See* Ex. H, Oct. 21, 2020 Hr'g Tr. at 10:21-24, 34:1-5, 36:1-14; Ex. I, Dec. 10, 2020 Hr'g Tr. at 24:19-25; Ex. N, Feb. 23, 2021 Hr'g Tr. at 232:7-234:19; Ex. T, Mar. 1, 2022 Hr'g Tr. at 83:12-23.

[118] *See, e.g.*, Section III.C.2, *supra* at p. 9; Section III.C.4, *supra* at pp. 10-11; Section III.D., *supra* at p. 14 & nn.59, 62; Section III.E.2, *supra* at pp. 17-18.

[119] *See* Section III.E.1, *supra* at pp. 15-17.

[120] *See id.*

[121] *See* Section III.C.4, *supra* at pp. 10-11.

[122] *See, e.g.*, Section III.D, *supra* at pp. 13-14; Section III.E.3 at pp. 19-20.

[123] The sole case cited by the Court for this proposition—*Davies v. C.I.R.*, 68 F.3d 1129 (9th Cir. 1995)—is inapposite because the basis for the recusal motion was *one* event —a pretrial disclosure by the judge—which occurred eight months prior to the petitioners' motion to recuse.  In stark contrast, the Court's bias in this case has been pervasive and consistent throughout the ongoing proceedings and continues to this day.

manner that was very clearly partial less than two weeks ago, and continues to preside over no less than nine adversary proceedings.  Where, as here, the Court will be called upon to issue future rulings affecting Movants, a motion to recuse is timely.[124]

## V.    CONCLUSION

Litigants before the federal bankruptcy courts should be able to expect fair treatment, such that they may obtain justice, exercise remedies, and freely appeal adverse decisions, whatever the judge's personal opinions of the litigants.  That is not what has happened in the proceedings before this Court, which is precisely why federal statute affords litigants the tool of recusal.  This Court is evidently biased, cannot act in a just manner with respect to the Movants, and should recuse itself and allow all parties the fair day in court that the Constitution requires.  Movants respectfully request that their Motion be granted.  In the alternative, Movants hereby request that the Court make clear that any order denying recusal is final so that Movants may appeal the Court's order to the Northern District of Texas.

---

[124] Indeed, various courts have ordered recusal even on remand, after the district judge has presided over the action through pre-trial proceedings and trial.  *See, e.g.*, *Johnson*, 120 F.3d at 1334 (recusal after trial and explaining that "the loss of efficiency and economy pales in comparison" to "the necessity to preserve the appearance of impartiality, fairness, and justice" on remand); *Kennedy*, 682 F.2d 259-60; *Sentis Group*. 559 F.3d at 905.

Dated: September 27, 2022

Respectfully submitted,

**CRAWFORD, WISHNEW & LANG PLLC**

*/s/ Michael J. Lang*
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Attorney for Movants James Dondero, The Dugaboy Investment Trust, Get Good Trust, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on September 27, 2022, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

*/s/ Michael J. Lang*
Michael J. Lang