PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

**HIGHLAND'S RESPONSE TO MOTION FOR LEAVE TO FILE PROCEEDING**

Highland Capital Management, L.P. ("Highland"), by and through its undersigned counsel, hereby files this response (the "Response") to the *Motion for Leave to File Proceeding* [Docket

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

DOCS_NY:46500.11 36027/003

No. 3507] (the "Motion") filed by CLO Holdco, Ltd. ("CLOH"). In support of its Response, Highland states as follows:

## PRELIMINARY STATEMENT[2]

1. In the Motion, CLOH—a wholly-owned subsidiary of James Dondero's "Charitable" Donor Advised Fund (the "DAF")—asks this Court to sanction its suit against Highland CLO Funding, Ltd. ("HCLOF"), for alleged "unfair prejudice" because HCLOF has not sued to release money reserved by the ACIS CLOs[3] to protect against litigation propounded by NSOF (another Dondero-controlled entity) and threats from CLOH. Highland acknowledges that HCLOF is not protected by the Gatekeeper and that the Plan does not prevent CLOH from bringing suit solely against HCLOF.

2. However, Highland does object to CLOH's request for an advisory opinion from this Court that *if* it files a lawsuit against Highland or HCMLPI as members of HCLOF *at some time in the future* that such lawsuit would not trigger the Gatekeeper or require a prior colorability determination. If, at some future time, CLOH wants to sue Highland or HCMLPI as members of HCLOF (or otherwise), it *must* comply with the Gatekeeper by (a) setting forth its claims in sufficient detail in a complaint and (b) seeking a determination *at that time* and from this Court that (i) the Gatekeeper does not apply (which it does) or (ii), in the alternative, that its claims are colorable.

3. And, while the issue is not currently ripe—CLOH seeks no relief against Highland or HCMLPI—CLOH's argument that the Gatekeeper does not prohibit it from suing Highland or HCMLPI as members of HCLOF is wrong. The Gatekeeper specifically includes Highland and

---

[2] All capitalized terms used but not defined in this Preliminary Statement have the meanings given to them below.

[3] "ACIS CLOs" means, collectively, ACIS CLO 4 Ltd. ("ACIS-4"), ACIS CLO 5 Ltd. ("ACIS-5"), and ACIS CLO 6 Ltd. ("ACIS-6").

2

its subsidiaries as "Protected Parties" entitled in all capacities to the full protection of the Gatekeeper. That protection is not undermined because the term "Protected Party" does not include HCLOF and its members. Any other interpretation would create an absurd result and deny Highland the hard-fought protections (recently affirmed by the Fifth Circuit) that prevent it from being the subject of baseless litigation.

## BACKGROUND

### I. Background to the Bankruptcy Case and Plan

4. On October 16, 2019, Highland filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code.

5. On February 22, 2021, this Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order"), which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808] (the "Plan"). The Plan became effective August 11, 2021 [Docket No. 2700].

6. A material component of the Plan is the "gatekeeper" provision (the "Gatekeeper") which prohibits any "Enjoined Party,"[4] including CLOH, from "commenc[ing] or pursu[ing] a claim or cause of action of any kind against any Protected Party" without this Court "(i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim … and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party …." Plan, Art. IX.F. The Plan explicitly includes as "Protected

---

[4] Enjoined Parties means "(i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ('Dondero'), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons of each of the foregoing." Plan., Art. I.B.56.

3

Parties" "the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries … [and] the Reorganized Debtor …" but excludes from the definition of "Protected Party"—"for the avoidance of doubt"—various entities affiliated with Mr. Dondero. This exclusion includes "Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities)." *Id.*, Art. I.B.105.[5]

7. The Gatekeeper was implemented to "prevent baseless litigation designed merely to harass the post-confirmation entities charged with monetizing the Debtor's assets for the benefit of its economic constituents" and to "avoid abuse of the court system." Confirmation Order, ¶ 79; *see also Id.* ¶ 78 ("[W]ithout appropriate protections in place, in the form of the [Gatekeeper], Mr. Dondero and his related entities will likely commence litigation again the Protected Parties … in jurisdictions other than the Bankruptcy Court in an effort to obtain a forum which Mr. Dondero perceives will be more hospitable to his claims.")

8. On September 8, 2022, the United States Court of Appeals for the Fifth Circuit affirmed the Confirmation Order, in relevant part, and specifically affirmed the Gatekeeper. *NexPoint Advisors, L.P., et al. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. App. LEXIS 25107, at *27 (5th Cir. Sept. 7, 2022) ("[T]he injunction and gatekeeper are sound").

## II. Background to HCLOF

9. HCLOF is a Guernsey-chartered investment vehicle that is managed by its Guernsey-based board of directors. Highland HCF Advisors, Ltd. ("HCFA"), a wholly-owned subsidiary of Highland, serves as HCLOF's portfolio manager. HCLOF is past its investment

---

[5] "'Protected Parties' means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds … (iv) the Reorganized Debtor … *provided, however*, that, for the avoidance of doubt, none of … [the Dondero-entities or] Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities) … is included in the term 'Protected Party.'" *Id.*, Art. I.B.105.

period, and HCFA's role is limited to advising on the liquidation of HCLOF's portfolio and the recovery of cash for distribution to HCLOF's members.

10.  Highland and its wholly-owned subsidiary, HCMLP Investments, LLC ("HCMLPI"), together, hold 50.61% of HCLOF's interests.[6]  CLOH holds 49.02%.  The remaining 0.37% is held by individuals who were formerly employed, directly or indirectly, by Highland.

### III.  HCLOM's Investment in the ACIS CLOs

11.  At the direction of HCFA—then controlled by Mr. Dondero—HCLOF invested in the subordinated notes issued by the ACIS CLOs.  The portfolio manager of the ACIS CLOs is Acis Capital Management, L.P. ("Acis"),[7] and their trustee is U.S. Bank, N.A. ("U.S. Bank").  HCLOF holds all the subordinated notes in ACIS-4 and ACIS-5 and substantially all the subordinated notes in ACIS-6.  NexPoint Strategic Opportunities Fund n/k/a NexPoint Diversified Real Estate Trust ("NSOF"), another entity controlled by Mr. Dondero,[8] holds a minority interest (13%) in ACIS-6.

12.  The ACIS CLOs were redeemed in mid-2021, and the redemption proceeds were used to pay off all senior secured notes.  Consequently, the only outstanding interests in the ACIS CLOs are the subordinated notes, and the ACIS CLOs' only material asset is cash.  However,

---

[6] HCMLPI received its interests in HCLOF pursuant to a settlement agreement, approved by this Court, between HCMLP and HarbourVest.  Docket No. 1788, aff'd Case No. 21-cv-261-L, Docket No. 38 (N.D. Tex. Sept. 26, 2022). CLOH, among others, has sought to unwind that settlement via a complaint filed in the U.S. District Court for the Northern District of Texas, which was subsequently referred to this Court for adjudication pursuant to the standing order of reference.  Adv. Proc. No. 21-03067-sgj, Docket No. 1 (Bankr. N.D. Tex. Sept. 29, 2021).

[7] Acis was chartered as a wholly-owned subsidiary of Highland, which was then under the control of Mr. Dondero. In 2019, Joshua Terry, a former Highland employee, filed an involuntary bankruptcy petition against Acis, which ultimately resulted in Mr. Terry owning Acis and controlling the Acis CLOs.

[8] *NexPoint Advisors, L.P.*, 2022 U.S. App. LEXIS 25107, at *24-26.

because of litigation filed by NSOF[9] and threats levied by CLOH and the DAF,[10] Acis and U.S. Bank declined to distribute that cash and instead reserved it to secure their purported indemnification and other rights under the ACIS CLOs governing documents.[11]

## IV. CLOH's Motion and the Relief Requested

**Allegations with Respect to HCLOF**

13. On September 9, 2022, CLOH filed its Motion in which it requests an order finding that either (a) the filing of the "Unfair Prejudice Proceeding" (which does not name a "Protected Party") does not implicate the Gatekeeper or (b), if the Gatekeeper is implicated, the Unfair Prejudice Proceeding is "colorable." Motion, ¶ 27. The Motion attaches a proposed "Application" to be filed in the Guernsey Royal Court (*Id.* Exh. A), and, while there are significant (but baseless) allegations about Highland and HCMLPI and their alleged improper relationship with HCLOF throughout the Application, they are not named as defendants.

14. While Highland does not speak for HCLOF, Highland concedes that HCLOF is not a "Protected Party" entitled to the protections afforded by the Gatekeeper. That should end the Court's inquiry.

---

[9] *NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P., et al.*, Case No. 21-cv-04384-GHW (S.D.N.Y.) (the "NSOF Litigation"). The Southern District of New York dismissed the NSOF Litigation finding, among other things, that NSOF had no cognizable claims (a) under the Investment Advisors Act of 1940 (the "IAA") or (b) against U.S. Bank. *NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 142029 (S.D.N.Y. Aug. 9, 2022). NSOF has appealed the order only with respect to the IAA.

[10] In December 2021, Acis, Mr. Terry, and U.S. Bank filed a motion for declaratory judgment that none of the DAF, CLOH, or NSOF (with respect to ACIS-4 and ACIS-5) had standing to sue the ACIS CLOs. *U.S. Bank, Nat'l Assoc., et al. v. The Charitable Donor Advised Fund, L.P., et al.*, Case No. 21-cv-11059-GHW (S.D.N.Y. Dec. 24, 2021). The DAF, CLOH, and NSOF filed motions to dismiss this action alleging that there was no cognizable case or controversy. The motion to dismiss has been fully briefed and is under advisement.

[11] On information and belief, HCLOF reserves all rights against Acis and U.S. Bank with respect to the ACIS CLOs, including the reserves, and nothing herein shall be construed as a waiver of such rights.

6

**Allegations with Respect to Highland and HCMLPI**

15. However, despite saying (multiple times) in the Motion and Application that CLOH seeks no relief against Highland or HCMLPI (*id.*, Preamble, ¶¶ 2, 5, 26; Application, ¶ 7), the Application contains significant allegations about their alleged improper relationship with HCLOF, which Highland and HCMLPI regard as baseless. And CLOH never states that it will *not* sue Highland or HCMLPI in connection with the Unfair Prejudice Proceeding (or otherwise). Instead, CLOH essentially seeks a ruling from this Court that if—at some point in the future—it desires to sue Highland or HCMLPI in their capacity as members of HCLOF, such lawsuit is not barred by the Gatekeeper.[12]

16. CLOH's request for an order permitting future suits against Highland and HCMLPI in their capacity as members of HCLOF is premature and amounts to an inappropriate request for an advisory opinion. If, at some point in the future, CLOH wants to sue those parties, it should prepare a complaint and file a motion with this Court seeking a determination that (a) the Gatekeeper does not apply, or (b), alternatively, that its claims are colorable and not designed to harass. CLOH is not entitled to an advance determination in the absence of a fully developed record, particularly where it repeatedly disclaims any current intent to pursue claims against Highland and HCMLPI.

17. Moreover, CLOH's argument that it can sidestep the requirements of the Gatekeeper by naming Highland and HCMLPI in their capacities as members of HCLOF is plainly wrong. The specific inclusion of Highland and its subsidiaries in the term "Protected Parties" (subject to the protection of the Gatekeeper in all respects) is not undermined by the general

---

[12] The Application also represents to the Guernsey Royal Court that CLOH could sue Highland and HCMLPI in Guernsey without leave of this Court. Application ¶ 7 ("Because they are 'members' (i.e. shareholders) of HCLOF, the specific exclusion excludes HCM and HCMLP Investments from the definition of Protected Party in this capacity (as shareholders of HCLOF).") As set forth herein, that statement is wrong.

reference providing that HCLOF and its members are *not* included in the term "Protected Parties." Reading the Gatekeeper in any other way would be absurd—Highland and HCMLPI would both be and not be "Protected Parties"—and would undermine its fundamental reason for existence: to prohibit vexatious and harassing suits designed to impede the efficient monetization of the estate's assets

## ARGUMENT

### I. This Court Lacks the Authority to Issue an Advisory Opinion on the Applicability of the Gatekeeper to Highland and HCMLPI

18. "Federal courts … do not render advisory opinions … [C]oncrete legal issues, presented in actual cases, not abstractions are requisite. This is as true for declaratory judgment as any other field." *United Pub. Workers v. Mitchel*, 330 U.S. 75, 89 (1947) (internal quotation marks omitted); *Franchise Servs. of N. Am. v. United States Trs. (In re Franchise Servs. of N. Am.)*, 891 F.3d 198, 205 (5th Cir. 2018) ("'[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions … The prohibition of advisory opinions is a constitutional limit on the power of the courts") (citations omitted). Instead, "parties must articulate 'concrete legal issues, presented in actual cases, not abstractions.'" *Hsin Chi Su v. F Elephant, Inc. (In re TMT Procurement Corp.)*, 2022 U.S. App. LEXIS 134, at *5 (5th Cir. Jan. 4, 2022); *see also Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967) ("A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop"). A request for an opinion regarding a future right to sue "is neither concrete nor actual." *Su*, 2022 U.S. App. LEXIS 134 at *5 ("Su sought a declaration that he could sue potential future patent infringers for potential future acts. Such a request is neither concrete nor actual. The district court was correct in determining that this request was advisory.")

8

19. As set forth above, CLOH, in its Motion, tacitly asks this Court to find that it could sue Highland and HCMLPI wherever and whenever it desires because they are not protected by the Gatekeeper. CLOH does so, however, without any "actual controversy"—it has unequivocally stated it is not seeking to sue Highland or HCMLPI at this time and has not asked this Court to rule on this issue. CLOH, therefore, requests an advisory opinion that this Court, respectfully, has no jurisdiction to issue. Accordingly, this Court should deny CLOH's "request" as a matter of law and reserve each party's respective rights and remedies if, and to the extent, CLOH seeks to sue Highland or HCMLPI, in any capacity, in the future.

## II. CLOH's Reading of the Gatekeeper Is Wrong and Leads to an Absurd Result

20. A bankruptcy plan is a binding and enforceable contract interpreted in accordance with general principles of contract interpretation. *RI III, Ltd. v. Halla (In re LRI III, Ltd.)*, 464 Fed. Appx. 263, 267 (5th Cir. 2012) ("We interpret bankruptcy plans in accordance with the rules of contract interpretation."); *Mesdaq v. Nancy Sue Davis Tr. (In re Davis Offshore, L.P.)*, 644 F.3d 259, 266 (5th Cir. 2011) (same). Highland's Plan is governed by Texas law (Plan, Art. XII.M) and "'under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless.' … [T]he Fifth Circuit has recognized that, in Texas, specific contractual provisions control general provisions." *In re Wyly*, 2021 Bankr. LEXIS 3003 at *11 (Bankr. N.D. Tex. Oct. 29, 2021); *see also Mesdaq*, 644 F.3d at 266 (same). "Contracts … are interpreted [under Texas law] by looking at the parties' intent … The contract's language must be given its plain grammatical meaning unless such an action defeats the parties' intentions." *Nat'l Gypsum Co. v. Prostok*, 2000 U.S. Dist. LEXIS 16174, at *48 (N.D. Tex. Oct. 5, 2000); *In re House Nursery, Ltd.*, 2016 Bankr. LEXIS 409 at *18 (Bankr. E.D. Tex. Feb. 9, 2016) ("'courts in construing contracts are to determine the intention of the parties from the contract as a whole and then adopt that definition which is most consistent with such intent and

9

will render the questioned term harmonious with, rather than repugnant to, the other provisions of the contract'") (citations omitted). "Where the contract language is clear and definite, the contract is not ambiguous and the court must apply the plain … language as a matter of law.' … At the same time, courts are 'required to interpret '[c]ontract provisions … to avoid meanings that produce unreasonable, oppressive, or absurd results." *RI III, Ltd.*, 464 Fed. Appx. at 267 (citations omitted).

21. Here, the Gatekeeper is clear. It protects "Protected Parties"—which term explicitly includes "the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries … [and] the Reorganized Debtor"—from vexatious and harassing litigation by requiring any "Enjoined Party," such as CLOH, to request leave of this Court prior to initiating suit. Plan, Art. I.B.105, Art. IX.F. CLOH asks this Court to remove that protection because Highland and HCMLPI are "members" of HCLOF and HCLOF's members are *not* "included in the term 'Protected Parties'". *Id.*, Art. I.B.105 ("[F]or the avoidance of doubt, none of … Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities) … is included in the term 'Protected Party.'") That would be an absurd result; Highland and HCMLPI cannot both be "Protected Parties" and not be "Protected Parties." CLOH's attempt, wholly unsupported by the language of the Plan, to limit the carve-out to suits against Highland and HCMPLI in their "capacity" as shareholders of HCLOF does not make its interpretation any less absurd. (Motion Preamble ¶¶ 3, 5, 30). Under Texas law, the "specific" trumps the "general." Here, Highland and HCMLPI were specifically included in the definition of "Protected Parties" and reading them out of that definition because of a general carve-out would be ludicrous.

22. CLOH's interpretation would also seriously undermine the negotiated-for protections in the Plan against vexatious and harassing litigation—a protection this Court found

10

necessary for the successful implementation of the Plan—and the intent of Highland's creditors. Confirmation Order ¶¶ 76-81, *aff'd* 2022 U.S. App. LEXIS 25107. The Gatekeeper was created to give Highland, among others, breathing room to consummate the Plan and manage Highland's assets free from Mr. Dondero's vexatious and harassing litigation for the benefit of *all* creditors. The only parties excepted from the Gatekeeper were, "for the avoidance of doubt," parties, which, at that time, were seen to be affiliated with or related to Mr. Dondero. Plan, Art. I.B.105. CLOH asks this Court to ignore that reality and to construe the Gatekeeper and the term "Protected Parties" to carve out Highland and its wholly-owned subsidiary, HCMLPI, from its protection. That would be an "unreasonable, oppressive, [and] absurd result[]."[13]

## CONCLUSION

23.    For the foregoing reasons, Highland respectfully requests that this Court (a) find that whether Highland and HCMLPI are protected by the Gatekeeper is not ripe for adjudication or, (b) alternatively, issue an order confirming that Highland and HCMLPI are protected, in all respects and in all capacities, by the Gatekeeper, and (c) grant such other relief as the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

---

[13] Highland believes the Plan is unambiguous. However, if either the Gatekeeper or the term "Protected Parties" is ambiguous, this Court "may consider the parties' interpretations of the contract and 'admit extraneous evidence to determine the true meaning of the instrument.'" *RI III, Ltd.*, 464 Fed. Appx. at 267. If necessary, the facts adduced at trial will show that Highland and HCMPI are entitled to the full protection of the Gatekeeper.

| | |
|---|---|
| Dated: September 30, 2022 | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)<br>John A. Morris (NY Bar No. 2405397) (*pro hac vice*)<br>Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)<br>Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)<br>10100 Santa Monica Boulevard, 13th Floor<br>Los Angeles, CA  90067<br>Telephone: (310) 277-6910<br>Facsimile:  (310) 201-0760<br>Email:      jpomerantz@pszjlaw.com<br>                jmorris@pszjlaw.com<br>                gdemo@pszjlaw.com<br>                hwinograd@pszjlaw.com<br><br>-and-<br><br>**HAYWARD PLLC**<br><br>*/s/ Zachery Z. Annable*<br>Melissa S. Hayward<br>Texas Bar No. 24044908<br>MHayward@HaywardFirm.com<br>Zachery Z. Annable<br>Texas Bar No. 24053075<br>ZAnnable@HaywardFirm.com<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Tel: (972) 755-7100<br>Fax: (972) 755-7110<br><br>*Counsel for Highland Capital Management, L.P.* |