UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THE DUGABOY INVESTMENT TRUST and GET GOOD TRUST, <br><br>  *Appellants*, <br><br> v. <br><br> HIGHLAND CAPITAL MANAGEMENT LP, <br><br> *Appellee*. | § § § § § § § § § § § § § Civil Action No. 3:21-CV-01295-X |

### MEMORANDUM OPINION AND ORDER

The Dugaboy Investment Trust and Get Good Trust (the "Trusts") appeal the bankruptcy court's *Order Approving Debtor's Settlement with UBS Securities LLC and UBS AG London Branch and Authorizing Actions Consistent Therewith*. For the reasons explained below, the Court **AFFIRMS** the bankruptcy court's order.

### I. Factual Background

Highland Capital Management, LP ("Highland")—previously headed by James Dondero—filed for Chapter 11 bankruptcy in October 2019. Over the next three years, a deluge of litigation ensued. As relevant here, one of those matters involves claims of UBS Securities, LLC and UBS AG London Branch (collectively "UBS") against Highland and its affiliates.

1

UBS had agreed to "warehouse"[1] Highland's collateralized debt obligations ("CDOs"). In September 2008, UBS made a margin call, demanding that Highland and its affiliates produce additional collateral for UBS to continue to warehouse their CDOs. According to UBS, when it became clear that Highland's affiliates could not produce the requested collateral, Highland and its affiliates began to "comingle funds in an attempt to mislead UBS."[2]

Specifically, Highland Financial Partners, L.P. issued a promissory note to Highland Multi Strategy Credit Fund, L.P. ("Multi-Strat LP")[3] for $6,616,429 in exchange for various life settlements and CDOs. Multi-Strat LP then transferred that note to Highland Multi Strategy Credit Fund, Ltd. ("Multi-Strat LTD")—a limited partner of Multi-Strat LP that, the record showed, "invests all of its investable assets in and conducts all investment activities through" Multi-Strat LP.[4] Shortly after that, Highland Financial Partners and Multi-Strat LTD executed a Termination Agreement by which life settlements and CDOs transferred to Multi-Strat LTD and the promissory note returned to Highland Financial Partners.

UBS sued Highland and its affiliates, including Multi-Strat LP, in New York state court. UBS's claim against Multi-Strat LP was stayed when Highland filed for bankruptcy. In March 2021, Highland, Multi-Strat LP, and UBS reached a

---

[1] "A warehouse is a bank account that acquires collateral in anticipation of doing some type of securitization . . . ." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 252 n.1 (2d Cir. 2021).

[2] Doc. No. 26 at 13.

[3] At the time, its name was Highland Credit Opportunities CDO, L.P.

[4] Doc. No. 22-22 at 157.

settlement agreement: Multi-Strat LP agreed to pay UBS $18.5 million, and UBS agreed to release its claims against Multi-Strat LP. UBS also released its claims against Highland, and Highland agreed to "cooperate with UBS and participate . . . in the investigation or prosecution of claims . . . against the Funds, Multi-Strat, Sentinel, [and] James Dondero."[5]

In April 2021, Highland asked the bankruptcy court for an order "Approving [the] Settlement" and "Authorizing Actions Consistent Therewith."[6] No creditors objected, except Dondero—having left his former post at Highland—and "his family trusts."[7] Specifically, the Dugaboy Investment Trust and Get Good Trust—two investors in Multi-Strat LP—objected on various grounds. The bankruptcy court overruled those objections, granted Highland's motion, and approved the settlement agreement "in all respects pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure."[8] It also found that Highland exercised sound business judgment pursuant to 11 U.S.C. § 363(b) in causing Multi-Strat LP to enter the settlement agreement and authorized Highland to cause Multi-Strat LP to settle the claims involving UBS.

The Trusts now appeal.

---

[5] Doc. No. 22-1 at 20.

[6] Doc. No. 22-2 at 235.

[7] Doc. No. 22-22 at 207.

[8] Doc. No. 1-1 at 106.

## II. Legal Standards

District courts have jurisdiction to hear appeals from final judgments of bankruptcy courts.[9] The Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.[10] The Court finds clear error when "upon examination of the entire evidence [the Court] is left with the definite and firm conviction that a mistake has been committed."[11]

## III. Analysis

The Trusts contend that the bankruptcy court (A) lacked jurisdiction, (B) abused its discretion in approving the settlement, and (C) improperly modified the bankruptcy plan. Each argument fails.

### A. Jurisdiction

The Trusts challenge the bankruptcy court's jurisdiction to issue the settlement order. The Court reviews this issue *de novo*.[12]

Bankruptcy courts have jurisdiction over "all civil proceedings . . . related to" bankruptcy cases.[13] "[A] matter is 'related to' the bankruptcy case . . . if the outcome of that proceeding could conceivably have any effect on the [bankruptcy] estate" or "could alter the debtor's rights, liabilities, options, or freedom of action."[14] "Certainty

---

[9] 28 U.S.C. § 158(a)(1).

[10] *In re Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995).

[11] *Justiss Oil Co., Inc. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996).

[12] *In re Zale Corp.*, 62 F.3d 746, 751 (5th Cir. 1995).

[13] 28 U.S.C. § 1334(b); *see also* 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases . . . related to a case under title 11 shall be referred to the bankruptcy judges . . . .").

[14] *Zale*, 62 F.3d at 752 (quoting *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987)).

is unnecessary . . . ."[15] And "the 'related-to' jurisdiction of the district court is broadly conferred."[16] The bankruptcy court found jurisdiction over the motion under 28 U.S.C. §§ 157(b) and 1334, explaining that "this is related to the Highland bankruptcy estate" and "[t]here is a conceivable effect on the estate."[17] The Trusts raise three objections to that ruling.

First, the Trusts assert that the settlement agreement actually consists of two agreements—one resolving claims between Highland and UBS and another resolving claims between Multi-Strat LP and UBS. Leaning heavily on the Fifth Circuit's opinion finding no jurisdiction over an unrelated claim in *In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995), the Trusts assert that the second agreement is unrelated to the bankruptcy estate because it only involves claims between two non-debtor entities and assets that are not property of the bankruptcy estate.

That's wrong. The parties executed a single settlement agreement, which listed Highland, Multi-Strat LP, and UBS as parties and signatories.[18] UBS was willing to make that agreement only after Highland agreed to give UBS two unsecured claims for over $60 million each, Multi-Strat LP agreed to pay over $18 million, and Highland agreed to release its claims against UBS. Multi-Strat LP's settlement with UBS thus has a conceivable effect on Highland's bankruptcy estate,

---

[15] *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007).

[16] *Broussard v. Hamilton*, No. 1:08-CV-149-TH, 2008 WL 11347919, at *2 (E.D. Tex. June 30, 2008).

[17] Doc. No. 22-22 at 203–05; *see also* Doc. No. 1-1 at 12–13.

[18] Doc. No. 22-1 at 16–31; *see also* Doc. No. 30 at 15 (arguing that Highland's interests are "inextricably bound up with the Multi-Strat-related portions of that agreement").

because, without it, UBS may not have been willing to release its claims against Highland. As the bankruptcy court put it, bankruptcy constitutes "a grand compromise," and, accordingly, "bankruptcy courts . . . frequently[] approve global settlements that involve debtor[s], creditors, [and] other parties that are nondebtors."[19]

Additionally, "it is the relation of dispute to estate . . . that establishes jurisdiction."[20] The dispute between UBS and Multi-Strat LP centers on a transfer of assets between Multi-Strat LP and Highland's affiliates. And the undisputed evidence showed that Multi-Strat LP can only act through its general partner—Highland Multi Strategy Credit Fund, GP, L.P.[21]—and its investment manager—Highland.[22] In short, any fraudulent transfer involved Highland's affiliates, and Highland had to initiate any fraudulent transfer through its control over Multi-Strat LP. Thus, unlike the unrelated claims in *Zale*, UBS's claim against Multi-Strat LP "involve[s] the debtor's behavior," and UBS has an "independent claim against [the debtor]."[23]

Moreover, "an action is 'related to' bankruptcy if the outcome could alter . . . the debtor's rights . . . or freedom of action."[24] Highland had to exercise its management

---

[19] Doc. No. 22-22 at 205.

[20] *Zale*, 62 F.3d at 755 (cleaned up).

[21] Highland owns this entity indirectly.

[22] *See* Doc. No. 22-22 at 205 ("And the evidence, through multiple documents that were put up on the screen and through the testimony of Mr. Seery, which were not disputed, were that Highland is the investment manager, with full authority over Multi-Strat.").

[23] *Zale*, 62 F.3d at 755–56.

[24] *TXNB Internal*, 483 F.3d at 298.

6

and control rights over Multi-Strat LP to settle claims involving Multi-Strat LP. And a bankruptcy debtor's "membership interest, including . . . its governance rights," constitutes "property of the bankruptcy estate."[25] Thus, Highland rightly points out that it "could not exercise its management and control rights over Multi-Strat without exercising control over property of its bankruptcy estate."[26] And, at a minimum, the settlement agreement between Multi-Strat LP and UBS constrained Highland's "rights . . . or freedom of action," by requiring Highland to cause Multi-Strat LP to pay UBS.[27]

Second, the Trusts intimate that the bankruptcy court lacked jurisdiction, because the settlement at issue "is not fair to Multi-Strat LP," and "[t]he *Zale* court . . . recognized the fairness element when it comes to settling claims of non-debtor third parties."[28] But the Trusts don't articulate precisely how perceived unfairness divests a bankruptcy court of jurisdiction. Nor could they. A bankruptcy court's fairness determination "does not give the bankruptcy court jurisdiction" over an otherwise unrelated settlement.[29] Likewise, an unfairness determination does not

---

[25] *In re Thomas*, No. 16-27850-L, 2020 WL 2569993, at *10 (Bankr. W.D. Tenn. May 8, 2020).

[26] Doc. No. 30 at 16.

[27] *TXNB Internal*, 483 F.3d at 298.

[28] Doc. No. 26 at 22. Although the Trusts also claim that "Multi-Strat LP's limited partners were [not] given notice" about the settlement agreement, they don't explain how that alleged fact undermines the fairness of the transaction to Multi-Strat LP itself. *Id.* at 23.

[29] *Zale*, 62 F.3d at 754; *see also id.* at 751 ("Subject matter jurisdiction and power are separate prerequisites to the court's capacity to act. Subject matter jurisdiction is the court's authority to entertain an action between the parties before it. Power under section 105 is the scope and forms of relief the court may order in an action in which it has jurisdiction." (cleaned up)).

7

strip the bankruptcy court of jurisdiction. Accordingly, *Zale* did not *sub silentio* spring open a Pandora's Box of fairness considerations in its jurisdictional analysis.

Third, the Trusts allege that Highland "admit[ted] the Bankruptcy Court's lack of jurisdiction," when it argued that "the Settlement Agreement will not involve property of the Debtor's estate," because "it will involve the transfer of Multi-Strat's property in settlement of UBS's claim against Multi-Strat."[30] But that statement concerns the origin of the *funds* involved in the settlement—not the *relation* of the settlement to the bankruptcy estate under 28 U.S.C. §§ 157 and 1334.[31] Highland made no admission concerning the bankruptcy court's jurisdiction.

The Court finds that the bankruptcy court properly exercised jurisdiction.

## B. Approving the Settlement

The Trusts next contend that the bankruptcy court erred in "approving the settlement as being in the best interests of Multi-Strat."[32] "In ruling on a motion to approve a compromise, the role of the Bankruptcy Court is to determine whether the

---

[30] Doc. No. 26 at 24 (quoting Doc. No. 22-2 at 260).

[31] Doc. No. 22-2 at 260 ("[T]he ***payment*** to be made by Multi-Strat pursuant to the Settlement Agreement will not involve property of the Debtor's estate." (emphasis added)).

[32] Doc. No. 26 at 7. The parties disagree over whether the bankruptcy court approved the settlement between Multi-Strat LP and UBS under Rule 9019 or under Section 363(b). It did both. *See* Doc. No. 1-1 at 6–7 (concluding that the settlement was "approved in all respects pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure" and that "[p]ursuant to Section 363(b) of the Bankruptcy Code, the Debtor, in its capacity as investment manager of Multi-Strat, is authorized to cause Multi-Strat to settle the claims UBS has asserted against Multi-Strat"). As Highland rightly notes, the Trusts do not contest the bankruptcy court's finding of authority under section 363(b) or its finding of sound business judgment.

8

compromise reached is in the best interest of the creditors of the estate."[33] The Court reviews this issue for abuse of discretion.[34]

The bankruptcy court found that the settlement agreement resolved "$1 billion proofs of claim filed by UBS."[35] Because "no creditors . . . objected except for Mr. Dondero and his family trusts," the court also gave "due deference to the views of the creditor body on compromises."[36] Moreover, the court found that "the arm's-length nature of the settlement cannot be credibly questioned," because the parties mediated their dispute with a retired bankruptcy judge and a mediator.[37] The Trusts argue that the bankruptcy court abused its discretion in three ways.[38]

First, the Trusts assert that Highland, as Multi-Strat LP's investment manager, had fiduciary duties pursuant to the Investment Advisers Act. At a general level, the Trusts contend Highland breached those duties by "serv[ing] the interest[s] of multiple parties" in the Settlement Agreement, including Highland, Multi-Strat LP, and Multi-Strat LTD.[39] Additionally, the Trusts complain that there was "a clear

---

[33] *CFB-5, Inc. v. Cunningham*, 371 B.R. 175, 181 (N.D. Tex. 2007).

[34] *See id.*

[35] Doc. No. 22-22 at 206.

[36] *Id.* at 207; *see also Foster Mortg.*, 68 F.3d at 917 ("[A] court should carefully consider the wishes of the majority of the creditors." (cleaned up)).

[37] Doc. No. 22-22 at 207.

[38] The Trusts claim, for the first time in their reply brief, that the bankruptcy court's "granting authority to the Debtor to act under section 363(b) of the Bankruptcy Code and finding that the Debtor was exercising sound business judgment . . . is absolutely on appeal as well." Doc. No. 32 at 6. It's not. The Trusts failed to preserve those issues, because they never objected to the bankruptcy court's ruling on either of those issues in their original brief. *See Cotropia v. Chapman*, 978 F.3d 282, 289 n.14 (5th Cir. 2020) (recognizing that courts "ordinarily disregard arguments raised for the first time in a reply brief" (cleaned up)), *cert. denied*, 141 S. Ct. 2521 (2021).

[39] Doc. No. 26 at 26.

conflict of interest by having [Highland], as the investment manager for Multi-Strat LP, obligate itself to investigate and participate in the prosecution and investigation of claims against Multi-Strat LP."[40]

But that conflict of interest isn't news to Multi-Strat LP: Its Private Placement Memorandum devotes a section to "Potential Conflicts of Interest," acknowledging that management decisions "are made by [Highland]" and that Multi-Strat LP "will be subject to a number of actual and potential conflicts of interest involving the Highland Group."[41] The Memorandum expressly acknowledged that Highland might resolve some of those conflicts in a manner "that would *not* maximize the benefit to the Fund's investors."[42] Further, Multi-Strat LP's Investment Management Agreement specified that Highland had "full discretion and authority, without obtaining the prior approval of any officer or other agent" of Multi-Strat LP, to "institute and settle or compromise suits" involving Multi-Strat LP.[43] Multi-Strat LP's express reference to Highland's conflicts of interest and settlement authority evinces informed consent to that structure.

The Trusts counter that Highland's fiduciary duties under the Investment Advisers Act "cannot be waived."[44] It's true that the Act prohibits "[a]ny . . . provision

---

[40] *Id.* at 25. Highland contends that any fiduciary duties run only to Multi-Strat LP and not to the Trusts themselves. Doubtless, that argument stems from the ambiguity in the Trusts' initial reference to "***certain*** fiduciary duties." Doc. No. 26 at 25 (emphasis added). But, in their reply brief, the Trusts now concede that they "do not dispute" this point. Doc. No. 32 at 8.

[41] Doc. No. 22-3 at 196, 221.

[42] *Id.* at 221 (emphasis added).

[43] Doc. No. 22-4 at 46–47.

[44] Doc. No. 26 at 25.

10

binding any person to waive compliance with any provision" of the Act.[45] But that provision "stands for the proposition that general waivers of the Investment Advisers Act's protections will not be enforceable"; it says nothing about whether a fiduciary-duty beneficiary "gave informed consent to a *specific* [] *scheme*."[46] This Court is not left with a definite and firm conviction that the bankruptcy court erred in rejecting the Trusts' conflict-of-interest argument.

Second, the Trusts challenge the economics of the settlement, claiming that "Multi-Strat LP is paying $18.5 Million to UBS when it received nothing."[47] That assertion appears to hinge on the Trusts' gripe with the merits of UBS's underlying suit, namely their opinion that UBS may have claims "against Multi-Strat LTD, but they do not . . . against Multi-Strat LP."[48] But the Trusts ask this Court to entertain a fiction.[49] In reality, UBS brought claims against Multi-Strat LP—claims that persisted for a decade—and Multi-Strat LP agreed to pay to resolve those claims. The bankruptcy court did not abuse its discretion by declining to entertain the Trusts' fiction.

The Trusts also claim that the underlying transaction "le[ft] Multi-Strat LP $6.6 Million in the hole," because Multi-Strat LP transferred the $6 million

---

[45] 15 U.S.C. § 80b-15(a).

[46] *S.E.C. v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 286, 300 n.6 (E.D. Pa. 2021) (second emphasis added).

[47] Doc. No. 26 at 27.

[48] *Id.* at 28.

[49] Further, the Trusts fail to explain their gripe with the merits of UBS's claim. For instance, they admit that UBS brought "a fraudulent transfer claim against Multi-Strat LP," but they fail to explain why UBS should have lodged that claim against Multi-Strat LTD. *Id.* at 14.

promissory note to Multi-Strat LTD sans consideration.[50]  But that myopic view of the transaction hinges on the Trusts' unsupported assertion that Multi-Strat LTD is "a completely separate entity" from Multi-Strat LP.[51]  In their zeal to bamboozle this Court, the Trusts omit one crucial fact:  Multi-Strat LTD "invest[s] all of its assets in, and carr[ies] out its investment program through," Multi-Strat LP.[52]  Thus, Multi-Strat LP effectively transferred $6 million to an entity that immediately invested that $6 million back into Multi-Strat LP.  It was hardly gypped by that transfer.

Third, the Trusts argue that the settlement agreement falsely "warrants that all parties had independent legal counsel," when, in reality, "the same attorneys retained by the Debtor represented Multi-Strat LP."[53]  But, as Highland points out, besides the conflict-of-interest theory addressed above, the Trusts fail to explain how "Multi-Strat was harmed in any way by not having separate counsel."[54]  Without such an argument, the bankruptcy court did not abuse its discretion by rejecting the Trusts' independent-counsel argument.

The bankruptcy court did not abuse its discretion in approving the settlement agreement.

---

[50] *Id.* at 12.

[51] *Id.* at 22.

[52] Doc. No. 22-3 at 245.  The Trusts assert that this Court would need to apply "some alter ego or single business enterprise theory" to show that the two funds should share liability.  Doc. No. 26 at 12.  That's neither here nor there.  The Trusts' objection pertains to the economics of the transaction, not to a particular theory of liability.

[53] Doc. No. 26 at 27, 29; *see also* Doc. No. 22-1 at 20.

[54] Doc. No. 30 at 30.

12

### C. Plan Modification

The Trusts argue that the March 2021 settlement was an improper plan modification. This is a "mixed question of law and fact that is subject to *de novo* review."[55]

The Bankruptcy Code "prohibits modification of a substantially consummated plan of reorganization."[56] A plan modification occurs when a proposed action "alter[s] the parties' rights, obligations, and expectations under the plan."[57] And, in order to effectuate a plan modification, courts must generally confirm any modification "after notice and a hearing."[58] The bankruptcy court found that the settlement agreement was not a plan modification. The Court agrees.

The Trusts advance one theory of plan modification: Highland's Bankruptcy Plan says that "the prosecution . . . of any Estate Claims . . . shall be the responsibility of the Litigation Trustee."[59] The settlement agreement with UBS provides that Highland will "use reasonable efforts to . . . cooperate with UBS and participate . . . in the investigation or prosecution of claims . . . against the Funds."[60] This section, the argument goes, modifies Highland's Bankruptcy Plan by requiring Highland to

---

[55] *In re U.S. Brass Corp.*, 301 F.3d 296, 307 (5th Cir. 2002); *accord In re Highland Cap. Mgmt., L.P.*, No. 3:21-CV-1895-D, 2022 WL 270862, at *3 (N.D. Tex. Jan. 28, 2022).

[56] *U.S. Brass*, 301 F.3d at 303.

[57] *Highland Cap.*, 2022 WL 270862, at *3 (quoting *U.S. Brass*, 301 F.3d at 309).

[58] 11 U.S.C. § 1127(b).

[59] Doc. No. 22-2 at 42.

[60] Doc. No. 22-1 at 20. Contrary to the Trusts' assertion, that provision does not specify that Highland must "prosecute *in its own name*" claims against Multi-Strat LP. Doc. No. 26 at 18 (emphasis added).

"pursue (or at least cooperate with litigating) the claims against the Funds" and to "turn over the proceeds to UBS" instead of "distributing the proceeds for the benefit of the Claimant Trust Beneficiaries."[61]

Tellingly, the Trusts devote a solitary sentence to elucidating this theory.[62] As Highland rightly argues, the obligation for Highland to cooperate with UBS in the prosecution of UBS's claims "does not conflict with [Highland]'s prosecution of its own claims."[63] Further, as Highland correctly explains, the Trusts do not—and cannot—cite any provision of the settlement agreement indicating that the "proceeds of [Highland's] claims . . . will be diverted . . . to UBS."[64]

The bankruptcy court properly rejected the Trusts' argument concerning plan modification.

## IV. Conclusion

For the foregoing reasons, the judgment of the bankruptcy court is **AFFIRMED**.

**IT IS SO ORDERED** this 22nd day of September, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[61] Doc. No. 26 at 30.

[62] What's more, the Trusts' reply brief entirely "rest[s] on the arguments in their original Brief" to conclude that "the Settlement Agreement is absolutely a plan modification." Doc. No. 32 at 4, 14.

[63] Doc. No. 30 at 32.

[64] Doc. No. 30 at 34.