PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Jordan A. Kroop (NY Bar No. 2680882) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
  jmorris@pszjlaw.com
  gdemo@pszjlaw.com
  jkroop@pszjlaw.com

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email:  MHayward@HaywardFirm.com
  ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |

## REPLY IN SUPPORT OF MOTION TO CONFORM PLAN

Highland Capital Management, L.P., the reorganized debtor ("Highland") in the above-captioned chapter 11 case, further supports its *Motion to Conform Plan* [Docket No. 3503] (the "Motion") by replying to (1) the *Funds' Response to the Motion to Conform Plan* [Docket No. 3539] filed by Highland Income Fund, NexPoint Strategic Opportunities Fund (n/k/a NexPoint Diversified Real Estate Trust), Highland Global Allocation Fund, and NexPoint Capital, Inc. (collectively, the "Funds"), (2) the *Joinder to the Funds' Response to the Motion to Conform Plan*

DOCS_NY:46561.10 36027/003

[Docket No. 3540] filed by The Dugaboy Investment Trust ("Dugaboy"), and (3) the *Limited Objection of the Advisors to Motion to Conform Plan* [Docket No. 3551] (the "Advisors Objection") filed by NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P. (together, the "Advisors" and collectively with the Funds and Dugaboy, the "Dondero Parties"[1] and their three filings collectively, the "Response").

## PRELIMINARY STATEMENT[2]

1. The Dondero Parties' request to limit the definition of "Protected Parties"—*i.e.*, the parties protected by the Plan's Gatekeeper Provision—is based on a misunderstanding of the Initial Opinion and the limited modification the Fifth Circuit made to it as a result of the Funds' Petition for Rehearing, which resulted in the issuance of the Final Opinion.

2. In its Initial Opinion, the Fifth Circuit rejected every argument the Dondero Parties raised in the confirmation appeal *except* the argument that the Exculpation Provision exceeded the permissible scope of Bankruptcy Code section 524(e). The Fifth Circuit held that the Exculpation Provision constituted an unauthorized release of parties other than the Debtor, the Committee and its members, and the Independent Directors. The Initial Opinion, however, characterized the Injunction and Gatekeeper Provisions as "perfectly lawful."[3]

3. The Funds sought rehearing and specifically requested that the Fifth Circuit limit the definition of Protected Parties—a term that applies ***only*** to the Gatekeeper Provision—in the same way that it did with respect to the parties entitled to exculpation.[4] While the Fifth Circuit granted the Funds' request for rehearing, it did not change the definition of Protected Parties.

---

[1] Each Dondero Party is directly or indirectly owned and/or controlled by James Dondero.
[2] Capitalized terms used but not defined in this Reply retain the meanings given to them in the Motion, the Response, or below, as applicable.
[3] Initial Opinion at 27.
[4] The Fifth Circuit confused the parties included in the definition of "Exculpated Parties," stating that it included the Claimant Trust Oversight Board. Final Decision at 7. "Exculpated Parties" never included the Oversight Board.

2

Instead, the Fifth Circuit simply deleted the sentence stating that the Gatekeeper Provision and Injunction was "perfectly lawful" but otherwise left the Initial Opinion—and its affirmance of the Gatekeeper Provision and Injunction—intact.

4. That minor change was necessary because the Initial Opinion held that "Appellants' concerns with the breadth of the injunction were addressed by the limitation of the definition of Exculpated Parties." The only reasonable interpretation of that language is that the Injunction, which prohibits actions inconsistent with the Plan, could have been read to prohibit the pursuit of negligence claims against previously "Exculpated Parties." The Fifth Circuit accordingly clarified that the Injunction was "sound" but not "perfectly lawful." But, again, ***nothing*** in the Final Opinion supports the Dondero Parties' position that the Fifth Circuit, in the Final Opinion, intended to limit the Protected Parties that are protected by the Gatekeeper Provision from harassing and frivolous litigation. To the contrary: Because the Gatekeeper Provision is not a release and does not implicate section 524(e), it is inconceivable that the Fifth Circuit intended so drastic a change by its slightly amended Final Opinion.[5]

5. Accordingly, the Dondero Parties' request in their Response exceeds the scope of the Fifth Circuit's Mandate and is based on the Dondero Parties' misreading of both the Final Opinion and the Gatekeeper Provision.[6] The Dondero Parties imagine that the Fifth Circuit ruled that the Gatekeeper Provision is an over-broad release, but the Final Opinion is clear that the

---

[5] This conclusion is clear because the Fifth Circuit declined the Dondero Parties' explicit request to limit the definition of "Protected Parties."

[6] The Funds are imprecise when they argue in the Response that the definition of "Protected Parties" affects the breadth and application of the injunction provisions of the first three paragraphs of Plan Article IX.F (the "Injunction") as well as the gatekeeper provision contained in the fourth paragraph of Plan Article IX.F (the "Gatekeeper Provision"). *See* Response at 2 ("The Reorganized Debtor's Motion to Conform … omits to make a similar request with respect to the list of parties protected by the injunction and gatekeeping provisions of the Plan.") Neither the phrase "Protected Parties" nor the individuals and entities included within that definition appear anywhere in the Injunction. To be precise, "Protected Parties" matters only in the Gatekeeper Provision inasmuch as the individuals and entities included within that definition are the beneficiaries of the Gatekeeper Provision specifically, not the Injunction.

3

Gatekeeper Provision is *not* a release, does *not* implicate section 524(e), and is necessary to prevent harassment. This Court should deny the Dondero Parties' meritless request and grant Highland's Motion.

**The Gatekeeper Provision Prevents Meritless Litigation and Is Not a Release**

6. The Gatekeeper Provision provides that:

> Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party ….

7. There is thus nothing in the Gatekeeper Provision that releases or enjoins parties from pursuing colorable claims or immunizes any "Protected Party" from litigation. It simply requires an Enjoined Party who believes it has a claim against a Protected Party to seek leave from this Court to pursue that claim by establishing that the claim is colorable.[7] If the claim is colorable and this Court has jurisdiction, it may adjudicate the claim in this Court. If the claim is colorable but this Court lacks jurisdiction, the claim may be pursued in any court of competent jurisdiction.

---

[7] If the Dondero Parties are arguing that a bankruptcy court's ability to prohibit them pursuing non-colorable claims is not within the jurisdiction of a non-Article III court and therefore constitutes a release or "immunization," the Fifth Circuit considered and rejected that argument as being inconsistent with its opinion in *Villegas v. Schmidt*, 788 F.3d 156, 159 (5th Cir. 2015). Final Opinion at 28-29. Further, there is nothing preventing any party, including a Dondero Party, from appealing this Court's determination that a claim is not colorable.

The Gatekeeper Provision does not release or limit the scope of claims that may be pursued or immunize anyone.[8]

8. Nevertheless, the Dondero Parties continue to assert that the Gatekeeper Provision constitutes a non-debtor release. But repeating the same argument (for the fourth time now) changes nothing. The Gatekeeper Provision is susceptible to only one interpretation—that no claims are enjoined or released. An Enjoined Party may assert a colorable claim against anyone and has not lost the right to do so. The Gatekeeper Provision only prevents non-colorable claims from being filed against Protected Parties. The Final Opinion does nothing to call that formulation into question. The Fifth Circuit's singular quarrel with the Plan—that the exculpation exceeded what was permissible under Bankruptcy Code section 524(e)—has nothing to do with the Gatekeeper Provision, which the Fifth Circuit specifically approved: "Courts have long recognized bankruptcy courts can perform a gatekeeping function."[9] The Dondero Parties' request to change the definition of "Protected Parties" to match the Fifth-Circuit-altered definition of "Exculpated Parties" would only make sense if the Gatekeeper Provision was, like the exculpation, a release of claims. But it isn't. *The Gatekeeper Provision does **not** exculpate anyone, does **not** release any claims or immunize anyone, and does **not** shield anyone from colorable claims.*

---

[8] The Advisors argue that this Court should carve out from the Gatekeeper Provision "suits expressly allowed by 28 U.S.C. § 959(a)" as not doing so would make the Gatekeeper Provision unenforceable due to lack of notice, lack of definiteness and specificity, and legal infirmity. Advisors Objection ¶ 7. The Advisors completely ignore the Final Decision, which affirmed the Gatekeeper notwithstanding the Advisors' 28 U.S.C. § 959 argument. The Advisors also misconstrue 28 U.S.C. § 959, which does not "allow, without leave of the appointing court" suits relating to "carrying on business connected with [] property" but leaves the question of whether those actions can continue "to the general equity power" of the appointing court, *i.e.,* this Court. *Id.*; 28 U.S.C. § 959(a). There is no need to carve out something explicitly left to this Court's discretion in the first instance. The Advisors' other arguments are also misleading. The Gatekeeper Provision only applies to "Enjoined Parties," *i.e.,* parties that filed a claim or otherwise have been active in this case. Plan, Art. I.B.56. "Enjoined Parties," by definition, received notice of the Plan and the Gatekeeper Provision and had every opportunity to object to, or seek clarification of, the Gatekeeper Provision.

[9] Final Opinion at 28.

5

9. Consequently, section 524(e) is irrelevant to the Gatekeeper Provision. The release of parties is what the Fifth Circuit has held *Pacific Lumber*[10] addresses and what the Fifth Circuit addressed through the limitation on Exculpated Parties. That is not what a gatekeeping function is and is why the Fifth Circuit left the Gatekeeper Provision and the definition of "Protected Parties" entirely untouched, even after the Petition for Rehearing.

### The Fifth Circuit Affirmed this Court's Approval of the Gatekeeper Provision *in Toto*

10. This Court found the gatekeeper function was "critical to the effective and efficient administration, implementation, and consummation of the Plan."[11] This Court relied on the evidence of Highland's pre-petition litigation history, the "substantial, costly, and time-consuming" post-petition litigation that Mr. Dondero and his related entities foisted on the Chapter 11 proceedings, and the likelihood that Mr. Dondero and his related entities would commence harassing and frivolous post-confirmation litigation in other jurisdictions he "perceives will be more hospitable to his claims."[12] The Fifth Circuit left intact all of these findings and explicitly affirmed the Gatekeeper Provision—"the injunction and gatekeeping provisions are sound …."[13] In doing so, the Fifth Circuit said nothing about the Gatekeeper Provision's scope or the identity of the "Protected Parties"—a term used solely in the Gatekeeper Provision.

11. Notwithstanding these findings, the Funds argued in the Petition for Rehearing that "the parties protected by the injunction and gatekeeper provisions must similarly be limited to Highland Capital, the Committee and its members, and the Independent Directors, such that the protections afforded thereby coincide with the permissible scope of the exculpation provision and

---

[10] 584 F.3d 229 (5th Cir. 2009).
[11] Confirmation Order ¶ 76.
[12] Confirmation Order ¶¶ 77-79.
[13] Final Opinion at 22.

6

11 U.S.C. § 524(e)."[14] Yet, the Fifth Circuit did *not* amend the Initial Opinion in any way that addressed this specific plea or the Dondero Parties' related request set forth in the Response. The only difference between the Initial Opinion and the Final Opinion was replacing:

> "The injunction and gatekeeper provisions are, on the other hand, perfectly lawful."

*with:*

> "We now turn to the Plan's injunction and gatekeeper provisions."

The Fifth Circuit otherwise declined to make any of the Funds' requested changes.

12. Specifically, the Funds asked the Fifth Circuit to "clarify" that the people and entities protected by the injunction and gatekeeper provisions[15] should be limited to those people and entities properly exculpated.[16] The Fifth Circuit didn't do that.

13. The Funds asked the Fifth Circuit to "tailor" the injunction and gatekeeper provisions.[17] The Fifth Circuit didn't do that, either.

14. Finally, the Funds asked the Fifth Circuit to "narrowly amend the Opinion in order to confirm the Court's holding that the impermissibly exculpated parties are similarly struck from the protections of the injunction and gatekeeper provisions of the Plan …."[18] Again, the Fifth Circuit didn't do that.

15. The Final Opinion should be assumed to say only what it says and nothing more. Surely—and especially in light of the Funds' explicit requests—the Fifth Circuit knew how to

---

[14] *Petition of Appellants Highland Income Fund; NexPoint Strategic Opportunities Fund; Highland Global Allocation Fund; and NexPoint Capital, Inc. for Limited Panel Rehearing*, Doc. No. 00516458961, Case No. 21-10449 (5th Cir. Sept. 2, 2022) (the "Petition for Rehearing") at 3 ¶ 4.

[15] Again, this is imprecise. The definition of "Protected Parties" only applies to the Gatekeeper Provision, not the Injunction. *See supra* n. 6.

[16] Petition for Rehearing at 4 ¶ 6.

[17] Petition for Rehearing at 4 ¶ 5.

[18] Petition for Rehearing at 4 ¶ 6.

DOCS_NY:46561.10 36027/003

write something like, "The injunction and gatekeeper provisions must be similarly narrowed by amending the definition of 'Protected Parties' to include only those parties this Court today rules are entitled to the benefits of the exculpation provision." But it didn't.

16. Instead, the Fifth Circuit restated in the Final Opinion that: "Though the injunction and gatekeeping provisions are sound, the exculpation of certain non-debtors exceeds the bankruptcy court's authority. We reverse and vacate that limited portion of the Plan."[19] It did so notwithstanding the Funds' argument that those provisions would, without "tailoring," be as offensive to section 524(e) as the Fifth Circuit held the exculpation was. The Fifth Circuit did so because *the Gatekeeper Provision isn't a release and 524(e) is not implicated.*

17. The Dondero Parties focus on the Fifth Circuit's statement that "Appellants' primary contention—that the Plan's injunction 'is broad' by releasing non-debtors in violation of § 524(e)—is resolved by our striking the impermissibly exculpated parties,"[20] contending that this statement requires a limitation on "Protected Parties." But this is not what it says. Nor does it mean that the exculpation and the Injunction are interdependent or that they rely on the same concepts and definitions in the Plan. The only effect on the Injunction from the Fifth Circuit's circumscription of the definition of Exculpated Parties is that a negligence claim asserted against an individual or entity within the definition of "Protected Parties" (but who is no longer an "Exculpated Party") would not be subject to the Injunction. Before the Fifth Circuit's ruling, a claim against such a party would have had to be based on something more than simple negligence. The result of the Final Opinion is that this Court could be called on to evaluate whether a simple negligence claim against a formerly Exculpated Party is colorable under the Gatekeeper Provision.

---

[19] Final Opinion at 22.

[20] Final Opinion at 28; *see also id.* at 30 ("[T]he Plan violates § 524(e) but only insofar as it exculpates and enjoins certain non-debtors.").

8

That minor effect does not require a redefining of "Protected Parties" because a potential plaintiff can now assert an expanded body of potential claims—*if* this Court finds them colorable.[21]

18. The Fifth Circuit said clearly in both the Initial and Final Opinions that narrowing the term Exculpated Parties fixes the only concern it had with the Plan.[22] The Fifth Circuit accordingly left the definition of "Protected Parties" intact because that definition identifies the individuals and entities covered by the Gatekeeper Provision, and the Fifth Circuit expressly found that the Gatekeeper Provision was "sound." There was thus no reason to amend the Gatekeeper Provision or the definition of "Protected Parties."[23]

## **Conclusion**

19. This Court should make the one change the Fifth Circuit mandated—the one change Highland has requested in its Motion—and no more. To accede to the Dondero Parties' inappropriate request to go beyond the Fifth Circuit's Mandate is to unjustifiably give the Dondero Parties substantive relief they already sought and were denied at the Fifth Circuit.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

---

[21] Any potential confusion from the sentence—"Appellants' primary contention—that the Plan's injunction 'is broad' by releasing non-debtors in violation of § 524(e)—is resolved by our striking the impermissibly exculpated parties"—is presumably caused by the Fifth Circuit being less familiar with the Plan than this Court is. That sentence, however, remained unchanged between the Initial Opinion and the Final Opinion, and it is hard to imagine the Fifth Circuit employing such oblique language to narrow or limit the Injunction and Gatekeeper Provision in some way while explicitly characterizing those provisions as "sound" and, originally, "perfectly lawful." It is equally unreasonable to conclude that the Fifth Circuit would substantively amend the Injunction or Gatekeeper Provision, which it recognized as critical to the Plan, on essentially one day's notice without affording Highland a chance to respond. The Petition for Rehearing was filed on the Friday before Labor Day, and the Fifth Circuit issued its Final Opinion on the Tuesday after Labor Day. Finally, the Fifth Circuit did not change the date of issuance of the Mandate, as it would have done if it believed it had made substantive changes to the Initial Opinion.

[22] The Fifth Circuit concluded: "In sum, the Plan violates § 524(e) but only insofar as it exculpates and enjoins certain non-debtors[,]" (Final Opinion at 30) and describes the *only* basis for not affirming the Confirmation Order in all respects.

[23] On October 7, 2022, the Advisors asked the Fifth Circuit to recall the Mandate and stay the issuance of a new mandate (Case No. 21-10449, Document 516500603 (5th Cir. Oct. 7. 2022)) in part to stay this Motion. In support of their motion to stay, the Advisors fully described Highland's position to the Fifth Circuit (conformance of only the definition of Exculpated Party) and their own (limitation of the parties protected by the Gatekeeper Provision). *See, e.g., Id.*, pg. 13 n.3. The Fifth Circuit denied the Advisors' request for a stay the same day it was filed. Case No. 21-10449, Document 516501412 (5th Cir. Oct. 7, 2022).

| | |
|---|---|
| Dated: October 14, 2022 | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>Jeffrey N. Pomerantz (CA Bar No. 143717)<br>John A. Morris (NY Bar No. 2405397)<br>Gregory V. Demo (NY Bar No. 5371992)<br>Jordan A. Kroop (NY Bar No. 2680882)<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 277-6910<br>Facsimile: (310) 201-0760<br>Email: jpomerantz@pszjlaw.com<br>         jmorris@pszjlaw.com<br>         gdemo@pszjlaw.com<br>         jkroop@pszjlaw.com<br><br>-and-<br><br>**HAYWARD PLLC**<br><br>*/s/ Zachery Z. Annable*<br>Melissa S. Hayward<br>Texas Bar No. 24044908<br>MHayward@HaywardFirm.com<br>Zachery Z. Annable<br>Texas Bar No. 24053075<br>ZAnnable@HaywardFirm.com<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Tel: (972) 755-7100<br>Fax: (972) 755-7110<br><br>*Counsel for Highland Capital Management, L.P.* |