# EXHIBIT 31

Exhibit 31    Page 2 of 6

Exhibit 6

| Message | |
|---|---|
| From: | Dusty Thomas [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=276F934B237540EEA820BABEF5CDFC7D-DUSTY THOMA] |
| Sent: | 3/15/2019 8:59:21 PM |
| To: | Paul Broaddus [PBroaddus@HighlandCapital.com] |
| CC: | Ben Roby (broby@bhmanagement.com) [broby@bhmanagement.com] |
| Subject: | FW: [Ext] Unicorn Combined Underwriting |
| Attachments: | Uniform Portfolio - SE Multifamily LLC Agreement - Changes to Distribution & BH Fee Provisions .docx; SE_Multifamily_Holdings_LLC_-_AR_LLC_Agreement (REVISED).docx; Unicorn Combined Underwriting - Portfolio.pdf |

Paul,

Attached is what we proposed in October to try and handle this. This covers the distribution language in a way that we can get comfortable with as we need to make sure that if the capital that Highland put in associated with debt is paid off, that it is also not dilutive to BH a second time in the pro-rata allocation or we could be in a position where we are unable to repay our borrowings even with a successful deal. We think the attached does that while still allocating the taxable income/loss in a way that meets your needs (by %). We would be most comfortable signing something that explicitly states that everyone gets their capital back first (inclusive of a return). The capital in this agreement would only be the capital that Highland put in that is not also incorporated in the bridge loan agreements. I think that is +/- $40 million based on my understanding from our discussion but that might.

If you need to redline any of the tax provisions etc we can get comfortable there, but we really need language related to the payback of capital first in order to be able to sign an agreement and meet your deadline. We understand you are on a tight timeline, but this is the best we can do at the moment.

I am with my son this afternoon, but if we need to talk call my cell. 515.783.6179.

Dusty

**From:** Ben Roby
**Sent:** Friday, March 15, 2019 3:09 PM
**To:** Dusty Thomas <DThomas@bhmanagement.com>; Joanna Zabriskie <JZabriskie@bhmanagement.com>
**Subject:** Fwd: [Ext] Unicorn Combined Underwriting

Ben Roby | Director of Acquisitions

Extension: 1286
Phone: (515) 201-3774
Fax: (515) 244-2742

Begin Forwarded Message:

BH0001363

From: "Ben Roby" <broby@bhmanagement.com>

Subject: [Ext] Unicorn Combined Underwriting

Date: 12 October 2018 17:47

To: "Matt McGraner" <MMcGraner@HighlandCapital.com>

Cc: "Ian O'Connor" <ioconnor@bhmanagement.com>, "Joanna Zabriskie" <JZabriskie@bhmanagement.com>

Matt –

Just wanted to revisit this so we could button up the SE Multifamily Investment LLC before the lenders coming asking for it.



Attached is the underwriting and the SEMF JV agreement previously sent to DC with Harry's signature.

Thanks,

Ben

**Ben Roby**

Acquisitions Manager
BH Management Services, LLC
Phone: (515) 201-3774
Fax: (515) 244-2742
400 Locust St., Ste. 790 Des Moines, IA 50309

bhmanagement.com

The Davis Brown Law Firm is committed to providing Exceptional Client Service. For a review of the supporting principles, go to www.davisbrownlaw.com/exceptional.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply E-mail and destroy all copies of the original message.

HEALTHCARE PRIVACY STATEMENT: This message may contain protected health information that is strictly confidential. If you have received this email, you are required to maintain the security and confidentiality of the information and may not disclose it without written consent from the patient or as otherwise permitted by law. Unauthorized disclosure may be subject to federal and state penalties.

6.1 **Distributions of Cash.** The Company shall not make any distributions to the Members until the Tranche B Loan (as defined in that certain Bridge Loan Agreement, dated as of the date hereof, by and among HCMLP, HCRE, the Dugaboy Investment Trust, the SLHC Trust, Nexpoint Advisors, L.P., Nexpoint Real Estate Advisors IV, L.P., SE Multifamily REIT Holdings, LLC, and certain other borrowers listed therein, as borrowers, the lenders party thereto, Keybank National Association, as administrative agent, and Keybanc Capital Markets, as sole lead arranger and bookrunner) has been repaid in full.

(a) **Distributable Cash.** Except as otherwise specifically provided in this Article VI and Article IX, all Distributable Cash shall be distributed to the Members at such time and in such amounts as determined by the Manager as follows:

(i) First, pro rata in proportion to the Member's respective Percentage Interests until the Members have received cumulative distributions equal to their respective Capital Contributions plus a 7 percent cumulative, but noncompounded annual return on unreturned Capital Contributions; then

(ii) Second, 85% to the Members (including BH), pro rata in proportion to the Member's respective Percentage Interests; and 15% to BH until cumulative distributions made under this Section 6.1(b) total $25,000,000; and

(iii) Third, the balance, 80% to the Members (including BH), pro rata in proportion to the Member's respective Percentage Interests; and 20% to BH.

(b) **Net Cash from Specified Company Assets.** Net Cash from the sale, refinancing or other disposition of any Specified Company Asset shall be distributed to the Members in proportion to their Capital Percentage Interests with respect to such Specified Company Asset; provided, however, that once the Members have received cumulative distributions equal to their respective Capital Contributions plus a 7 percent cumulative, but noncompounded annual return on unreturned Capital Contributions, then subsequent distributions shall be made in accordance with Section 6.1(a)(ii) and (iii).

(c) Notwithstanding Sections 6.1(a) and (b), if any "Preferred Membership Interest" is issued and outstanding, cash from all sources that is available for distribution as determined in the sole discretion of the Manager shall be distributed to HCRE with respect to HCRE's Preferred Membership Interest until HCRE has received cumulative distributions under this Sections 6.1(c) equal to HCRE's additional capital contributions plus an 8 percent simple preferred return on such additional capital contributions made to acquire such Preferred Membership Interest.

(d) **Distributions in Kind.** If at any time the Manager determines, with the written consent of all the Members, to make a distribution of any Specified Company Assets in-kind, such Specified Company Assets shall be distributed to the Members in the same respective proportions as distributions would at the time be made pursuant to Section 6.1(b) or Section 9.3, as the case may be, if the Specified Company Assets were sold and cash proceeds from such sale were distributed as Net Cash from Specified Company Assets.

Confidential - Subject to Protective Order                                                                                                                            BH0001366

(e) <u>Tax Distributions</u>. Notwithstanding anything in <u>Section 6.1(a), (b) and (c)</u>, the Company shall first make minimum distributions of cash available from all sources as determined in the sole discretion of the Manager to the Members in an amount necessary for each Member to pay taxes on taxable income allocable to such Member, assuming each Member is subject to tax at the highest combined marginal federal, state and local tax for an individual living in Dallas, Texas. Distributions to any Member under this <u>Section 6.1(e)</u> shall be treated as advances against any future distributions payable to such Member under <u>Section 6.1(a), (b) and (c)</u>.

********************************

**NEW SECTION 6.5**

<u>6.5     BH Stucturing Fees.  Upon the sale or other disposition of any real estate asset owned directly or indirectly by the Company to a Delaware statutory trust or similar entity, a fee shall be paid by the Company to BH in the amount of 0.20% of the sales price or other consideration paid for such asset.</u>

Confidential - Subject to Protective Order

BH0001367