# EXHIBIT 32

Message

| | |
|---|---|
| **From**: | Paul Broaddus [PBroaddus@HighlandCapital.com] |
| **Sent**: | 3/15/2019 11:00:21 PM |
| **To**: | Dusty Thomas [dthomas@bhmanagement.com] |
| **Subject**: | FW: [Ext] Unicorn Combined Underwriting |

**From:** Freddy Chang <FChang@HighlandCapital.com>
**Sent:** Friday, March 15, 2019 4:48 PM
**To:** Paul Broaddus <PBroaddus@HighlandCapital.com>
**Subject:** RE: [Ext] Unicorn Combined Underwriting

1.1    Distributions of Cash.

(a)    Distributable Cash.  Except as otherwise specifically provided in this Article 6 and Article 9, all Distributable Cash shall be distributed (i) 47.94% to HCRE, (ii) 46.06% to HCMLP, and (iii) 6% to BH, at such time and in such amounts as determined by the Manager.

(b)    Net Cash from Specified Company Assets. Net Cash from the sale, refinancing or other disposition of any Specified Company Asset shall be distributed to the Members in proportion to their Capital Percentage Interests with respect to such Specified Company Asset.

(c)    Notwithstanding Sections 6.1(a) and (b), if any class of "Preferred Membership Interest" is issued and outstanding, cash from all sources that is available for distribution may, as determined in the sole discretion of the Manager, be distributed to Liberty with respect to one or more classes of Liberty's Preferred Membership Interest until Liberty has received cumulative distributions under this Sections 6.1(c) equal to the sum of (i) Liberty's capital contributions with respect to such Preferred Membership Interest, and (ii) with respect to Liberty's Class A Preferred Membership Interest, a 12 percent per annum simple return on such capital contributions made to acquire such Preferred Membership Interest or, with respect to Liberty's Class B Preferred Membership Interest, a 6.25 percent per annum simple return on such capital contributions made to acquire such Preferred Membership Interest.

(d)    Distributions in Kind.  If at any time the Manager determines, with the written consent of all the Members, to make a distribution of any Specified Company Assets in-kind, such Specified Company Assets shall be distributed to the Members in the same respective proportions as distributions would at the time be made pursuant to Section 6.1(b) or Section 9.3, as the case may be, if the Specified Company Assets were sold and cash proceeds from such sale were distributed as Net Cash from Specified Company Assets.

(e)    Notwithstanding Sections 6.1(a), 6.1(b), 6.1(c) and 6.1(d), the first amounts of any Distributable Cash shall be deemed distributed to each Member (i) in proportion to the amounts paid by the Company directly to any lender on behalf of such Member to pay principal and interest on any loan incurred by such Member to fund such Member's capital contributions to the Company until such loans are fully extinguished, then (ii) pro rata in proportion to the Members' respective Capital Accounts until the Members' respective Capital Accounts are reduced to zero.

Frederic Chang
Highland Capital Management, L.P.
(972) 628-4163

**From:** Paul Broaddus <PBroaddus@HighlandCapital.com>
**Sent:** Friday, March 15, 2019 4:31 PM
**To:** Freddy Chang <FChang@HighlandCapital.com>
**Subject:** Fwd: [Ext] Unicorn Combined Underwriting


Sent from my iPhone

Begin forwarded message:

**From:** Dusty Thomas <DThomas@bhmanagement.com>
**Date:** March 15, 2019 at 3:59:21 PM CDT
**To:** Paul Broaddus <PBroaddus@HighlandCapital.com>
**Cc:** Ben Roby <broby@bhmanagement.com>
**Subject: FW: [Ext] Unicorn Combined Underwriting**

Paul,
Attached is what we proposed in October to try and handle this.  This covers the distribution language in a way that we can get comfortable with as we need to make sure that if the capital that Highland put in associated with debt is paid off, that it is also not dilutive to BH a second time in the pro-rata allocation or we could be in a position where we are unable to repay our borrowings even with a successful deal.  We think the attached does that while still allocating the taxable income/loss in a way that meets your needs (by %).  We would be most comfortable signing something that explicitly states that everyone gets their capital back first (inclusive of a return).  The capital in this agreement would only be the capital that Highland put in that is not also incorporated in the bridge loan agreements.  I think that is +/- $40 million based on my understanding from our discussion but that might.

If you need to redline any of the tax provisions etc we can get comfortable there, but we really need language related to the payback of capital first in order to be able to sign an agreement and meet your deadline.  We understand you are on a tight timeline, but this is the best we can do at the moment.

I am with my son this afternoon, but if we need to talk call my cell.  515.783.6179.

Dusty

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.