# EXHIBIT 65

1      BEN SELMAN - 9/17/2021

2      IN THE UNITED STATES BANKRUPTCY COURT
       FOR THE NORTHERN DISTRICT OF TEXAS
3            DALLAS DIVISION

4   IN RE:              )  CHAPTER 11
                        )
5   HIGHLAND CAPITAL     )  CASE NO.
    MANAGEMENT, L.P.,     )
6                       )  19-34054-SGI11
       Debtor.          )
7                       )
    -----------------------x  )
8                       )
    HIGHLAND CAPITAL        )
9   MANAGEMENT, L.P.,       )
                        )  ADVERSARY
10       Plaintiff,       )  PROCEEDING
                        )  NO:
11   Vs.                )  21-03000-SGI
                        )
12   HIGHLAND CAPITAL        )
     MANAGEMENT FUND        )
13   ADVISORS, L.P.; NEXPOINT  )
     ADVISORS, L.P.; HIGHLAND  )
14   INCOME FUND; NEXPOINT    )
     STRATEGIC OPPORTUNITIES    )
15   FUND; NEXPOINT CAPITAL,   )
     INC.; AND CLO HOLDCO,    )
16   LTD.,               )
                        )
17       Defendants.      )
                        )
18   -----------------------/  )

19       REMOTE DEPOSITION OF BEN SELMAN

20           Waco, Texas

21       Friday, September 17, 2021

22

23   Reported by:

24   KIM A. McCANN, RMR, CRR, CSR

25   JOB NO. 199442

Page 2

```
1          BEN SELMAN - 9/17/2021
2
3          September 17, 2021
4          2:02 p.m. Central
5
6          Remote Oral deposition of Ben Selman,
7   held at the offices of Naman, Howell, Smith &
8   Lee, located in Waco, Texas, pursuant to the
9   Federal Rules of Civil Procedure before Kim A.
10  McCann, Registered Merit Reporter, Certified
11  Realtime Reporter and Certified Shorthand
12  Reporter in and for the State of Texas.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1          BEN SELMAN - 9/17/2021
2   A P P E A R A N C E S :
3   (Remote via Zoom)
4   Counsel for the Debtor:
5   Pachulski Stang Ziehl & Jones
6   150 California Street
7   San Francisco, California 94111
8     BY: Kenneth Brown, Esq.
9   - and -
10  Pachulski Stang Ziehl & Jones
11  780 Third Avenue
12  New York, New York 10017
13    BY: Hayley Winograd, Esq.
14
15  Counsel for HCRE Partners, LLC (n/k/a NexPoint
16  Real Estate Partners, LLC):
17  WICK PHILLIPS
18  100 Throckmorton Street
19  Fort Worth, Texas 76102
20    BY: Lauren Drawhorn, Esq.
21
22  ALSO PRESENT:
23    La Asia Canty
24    Robert L. Kehr
25
```

Page 4

```
1          BEN SELMAN - 9/17/2021
2          I N D E X
3                            PAGE
4   Examination by Mr. Brown          5
5
6          E X H I B I T S
7   NUMBER     DESCRIPTION          PAGE
8   Exhibit A  NexPoint Real Estate Partners,   23
               LLC's Designation of Expert
9              Witness
10  Exhibit B  Index of Documents Examined by   30
               Expert
11
    Exhibit C  Engagement Letter          39
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
1          BEN SELMAN - 9/17/2021
2          P R O C E E D I N G S
3          BEN SELMAN,
4   Having been first duly sworn, testified as
5   follows:
6          EXAMINATION
7   BY MR. BROWN:
8      Q.  Good afternoon, Mr. Selman.  My name
9   is Ken Brown and I -- I'm one of the lawyers for
10  Highland Capital Management, LP.  And this
11  proceeding today is related to Highland -- and
12  I'm going to refer to Highland Capital
13  Management, LP as Highland in this deposition.
14      Will you understand what I mean when
15  I say "Highland"?
16      A.  Yes.
17      Q.  This proceeding today is -- relates
18  to Highland's motion to disqualify the
19  Wick Phillips law firm from the representation of
20  an entity that we're going to -- well, let's see.
21  Maybe we should get the definitions straight
22  here.
23      So NexPoint Real Estate Partners,
24  also known as HCRE Partners, the motion is to
25  disqualify Wick Phillips from representing HCRE
```

Page 6

BEN SELMAN - 9/17/2021

1      BEN SELMAN - 9/17/2021
2  Partners, LLC in connection with a proof of claim
3  they filed in the bankruptcy case against
4  Highland.
5      Is that your understanding?
6      A. Yes.
7      Q. And is it okay with you if I refer to
8  NexPoint Real Estate Partners, also known as HCRE
9  Partners, LLC as HCRE?
10     A. Yes.
11     Q. And you'll understand what I'm
12 referring to?
13     A. Yes.
14     Q. Okay. Can you tell me whether or not
15 you've ever been deposed before, Mr. Selman?
16     A. I have.
17     Q. How many times?
18     A. Three or four, I think.
19     Q. Okay. So --
20     A. I'm not --
21     Q. I'm going to assume --
22     A. I'm not real sure about that. I
23 think it's three or four.
24     Q. All right. I'm going
25 to nevertheless -- even though I'm sure you're

Page 7

BEN SELMAN - 9/17/2021

1      BEN SELMAN - 9/17/2021
2  relatively familiar with the ground rules, I'm
3  going to go through them, nevertheless, just to
4  make sure we're all on the same page.
5      So you understand your testimony here
6  is under oath; even though we're doing this
7  remotely and we're all in separate places, you're
8  sworn and this is just like you were testifying
9  in court. Do you understand that?
10     A. Yes.
11     Q. Okay. And because you're under oath,
12 you have the obligation to tell the truth. You
13 understand that?
14     A. Yes.
15     Q. And everything you say and I say here
16 and your lawyer says, it's all on the record and
17 it's going to appear in the transcript. You
18 understand that?
19     A. The only correction is I don't
20 actually have a lawyer. I'm not represented in
21 this matter, but I do understand the concept of
22 transcript.
23     Q. Okay. I was referring to
24 Ms. Drawhorn who --
25     MR. BROWN: Who are you appearing

Page 8

BEN SELMAN - 9/17/2021

1      BEN SELMAN - 9/17/2021
2  for, Ms. Drawhorn?
3      MS. DRAWHORN: I'm appearing for
4  NexPoint Real Estate Partners, LLC formerly
5  known as HCRE Partners, LLC.
6      MR. BROWN: Understood.
7      Q. Pardon my inaccuracy and thank you
8  for correcting me.
9      A. You're welcome.
10     Q. You're familiar with deposition
11 transcripts, you've seen them before; correct?
12     A. Yes.
13     Q. And you will have an opportunity to
14 review this -- the transcript after it's
15 completed and to make corrections to it. You
16 understand that?
17     A. Yes.
18     Q. You also understand that if you make
19 any changes to the -- to the transcript, I am
20 entitled to and may comment on those changes at
21 the hearing on this matter?
22     A. Yes.
23     Q. Okay. Important that you understand
24 my questions. If you don't, please ask me --
25 please tell me you don't understand it, and I'll

Page 9

BEN SELMAN - 9/17/2021

1      BEN SELMAN - 9/17/2021
2  try and state it in a way that you can better
3  understand it. Okay?
4      A. Yes.
5      Q. Also even more important than usual
6  because we're not in the same room, it's
7  important that we -- none of us try and talk at
8  the same time because the court reporter can only
9  take down one person talking at a time.
10     So if you would permit me to complete
11 my question before you answer it, that will make
12 for a -- even if you know what I'm going to say,
13 and you may well, it will permit for a cleaner
14 record. You understand that?
15     A. Yes.
16     Q. Okay. So are you comfortable that
17 you understand the deposition process and the
18 ground rules?
19     A. Yes.
20     Q. Okay. Now, is it correct that you're
21 going to testify at the hearing on the
22 disqualification motion as an expert witness;
23 correct?
24     A. Yes.
25     Q. Not -- you're not a fact witness or

Page 10

BEN SELMAN - 9/17/2021

1
2 percipient witness in this case, are you?
3      A. No, I am not.
4      Q. Where are you located, Mr. Selman?
5      A. I'm located --
6      Q. Where are you now?
7      A. I'm located in my firm's offices in
8 Waco, Texas.
9      Q. And where is Wick Phillips' lawyer
10 located?
11      A. Couldn't tell you.
12      Q. Okay. Not in the same room with you;
13 correct?
14      A. No.
15      Q. Is there anyone else in the room with
16 you?
17      A. No.
18      Q. Okay. You understand that you're not
19 permitted to contact -- to contact anyone about
20 the subject of this deposition now that you've
21 been sworn?
22      A. Yes.
23      Q. Okay. And you understand that it's
24 my position that if you do have discussions with
25 anyone after you've been sworn, including the

Page 11

BEN SELMAN - 9/17/2021

1
2 lawyer for Wick Phillips, I'm entitled to inquire
3 as to the nature of those discussions.
4      Do you understand that?
5      A. Yes.
6      Q. Is there any reason that you cannot
7 testify today competently and truthfully?
8      A. Not that I'm aware of.
9      Q. Okay. So how are you currently
10 employed, Mr. Selman?
11      A. I'm an attorney with the law firm of
12 Naman Howell Smith & Lee, and I'm an adjunct
13 professor at Baylor University School of Law.
14      Q. Okay. How long have you been with
15 your -- your current firm?
16      A. I began here in 1989.
17      Q. Are you a founder of the firm?
18      A. No.
19      Q. Are you a partner -- you're a partner
20 in the firm; correct?
21      A. That's technically difficult to
22 answer. My title is of counsel at this time, but
23 I believe the correct construction is income
24 partner.
25      Q. Okay. Can you describe the nature of

Page 12

BEN SELMAN - 9/17/2021

1
2 your practice?
3      A. My practice is primarily family law
4 primarily in the area of dissolution property
5 only. I do some work in regard to the defense of
6 medical malpractice claims for a couple of large
7 hospital systems, but that work is sporadic and
8 not frequent. I represent a nongovernmental
9 organization in regard to licensing in the
10 delivery of care to children and the issues
11 arising through that. And I have various
12 not-for-profits that I deliver some legal
13 services to.
14      Q. Have you ever been party to a lawsuit
15 personally?
16      A. No.
17      Q. Have you ever testified in court as
18 an expert witness?
19      A. Yes.
20      Q. How many times?
21      A. That is truly hard to say.
22 Frequently in family law practice, other
23 practicing family law specialists will be
24 designated as expert witnesses to testify as to
25 the reasonableness and necessity of attorney's

Page 13

BEN SELMAN - 9/17/2021

1
2 fees under the old standard.
3      That has fallen off significantly
4 since the Supreme Court changed the standard
5 around and we're not designated now as testifying
6 witness -- testifying experts but instead as
7 testifying rebuttal witnesses to match the
8 standard.
9      I have testified live in regard to
10 issues that are on the table today previously in
11 State District Court one time, and I've testified
12 live in regard to the reasonableness and
13 necessity of attorney's fees in arbitration
14 matters.
15      Q. Okay. You've said, I believe -- and
16 I'll try and say the words you've said -- but you
17 said you testified in court one time with respect
18 to the matters on the table today, and I want to
19 understand what you mean by that.
20      Can you elaborate?
21      A. Yes. It's a application of the
22 Disciplinary Rules Under Oath, the Texas
23 Disciplinary Rules of Professional Conduct and
24 the ABA Model Rules with regard to conflicts of
25 interest.

Page 14

1      BEN SELMAN - 9/17/2021
2      Q. Okay. And can you be more specific
3  about the nature of your testimony; in other
4  words, were there particular rules involved?
5  What was the issue and what were the rules
6  involved in the one time you have been -- you've
7  testified in court with respect to the Texas
8  Disciplinary and ABA Model Rules?
9      A. The rules involved were Rule 1.06 and
10  1.09 of the Disciplinary Rules of Professional
11  Conduct and Rules 1.7 and 1.9 of the ABA Model
12  Rules. The issue was subsequent representation
13  of client in a unrelated matter, prior
14  representation of another client.
15      Q. And do you recall the name of that
16  lawsuit?
17      A. Not offhand. I'm sorry.
18      Q. Do you recall any of the parties to
19  it?
20      A. I recall that the parties to it were
21  two owners of car dealerships in the Dallas/Fort
22  Worth area. But as I sit here now, to tell you
23  the names of the dealerships or the parties, I
24  cannot.
25      Q. Okay. And when did you -- when was

Page 15

1      BEN SELMAN - 9/17/2021
2  that testimony?
3      A. Maybe -- maybe three or four years
4  ago. I'm just not certain of the date.
5      Q. And were you retained by a law firm
6  to provide testimony on their behalf?
7      I -- I think we're both anticipating
8  what the other one's going to say because it's
9  not a surprise. But I'm going to remind --
10  gently remind you, give you a nudge to try and
11  wait because I think we both were talking at the
12  same time.
13      Okay. What was the name of the law
14  firm that retained you?
15      A. It was Wick Phillips.
16      Q. It was. Okay. And what was the
17  outcome of that disqualification motion?
18      A. The motion to disqualify was
19  overruled and attorney's fees were awarded in
20  favor of the party against whom the motion had
21  been filed.
22      Q. Okay. So you've said you testified
23  as an expert at trial more -- multiple times,
24  only once with respect to attorney conflict of
25  interest issues; correct?

Page 16

1      BEN SELMAN - 9/17/2021
2      A. That's correct.
3      Q. Okay. What about deposition
4  testimony as an expert in matters that didn't go
5  to trial? And maybe let me be more specific.
6      Have you ever given deposition
7  testimony as a expert witness in matters that you
8  did not testify in at trial?
9      A. I believe the answer is yes, but not
10  in regard to ethical issues.
11      Q. Okay. So the only time you have been
12  retained as an expert on attorney ethical issues
13  is this time three or four years ago when you
14  were retained by Wick Phillips; is that correct?
15      A. No, that is not correct.
16      Q. Okay. Tell me about the other times
17  you have been retained as an expert with respect
18  to attorney ethical issues?
19      A. I'm consulted from time to time by
20  other law firms about ethical issues and I'm paid
21  for that, and I assume that that's probably what
22  you're asking about. In terms of retainer, our
23  practice is to send a bill for the time expended,
24  generally answer questions over the telephone or
25  by email. And without a formal engagement as is

Page 17

1      BEN SELMAN - 9/17/2021
2  the process here, I do that relatively
3  frequently.
4      I'm also retained in certain
5  disciplinary matters as a witness, and those
6  generally speaking do not result in testimony.
7  They generally speaking result in direction of
8  how to handle the matter and who to handle it
9  with and what the forms take and that kind of
10  advice.
11      But there, once again, we handle the
12  matter -- I handle the matter generally by
13  telephone and email, not by any kind of
14  formalized filing and bill for the time that I
15  spend on that. There's no formal retainer
16  agreement nor is there any billing usually but
17  beyond one time for specific advice in regard to
18  a specific issue.
19      Q. And has your work in that capacity --
20  and I'm going to characterize it -- tell me if
21  I'm mischaracterizing it, but I'm going to
22  characterize that as you working as a consultant
23  as opposed to an expert witness.
24      Would you agree with that?
25      A. Well, I think that's fair. I don't

Page 18

1      BEN SELMAN - 9/17/2021
2  want to minimize the role I play in terms of
3  being able to lend some degree of expertise to
4  the conversations that are going on. But I
5  believe "consultant" is a fair word.
6      Q. And that's not my intention at all.
7  I just want to have a way to refer and
8  distinguish between the work you do as an expert
9  witness with respect to attorney ethical issues
10  and the work that you do as a nonexpert witness.
11  So that's my only intention here.
12      With respect to the work you do with
13  clients in a nonexpert witness capacity advising
14  with respect to attorney ethics, have you ever
15  provided advice with respect to the matter at
16  hand today or the matter at hand in connection
17  with the Wick Phillips disqualification issue,
18  i.e., whether or not a matter constitutes --
19  subsequent representation constitutes the same or
20  substantially related matter under Texas Rule
21  1.09 or any other similar state law or the Model
22  -- the Model Rule analog?
23      A. Yes.
24      Q. How many times?
25      A. I would have absolutely no way of

Page 19

1      BEN SELMAN - 9/17/2021
2  determining that. I'm not -- I'm not trying to
3  avoid the question, I just -- it's a matter
4  that's frequently done. I frequently don't
5  charge for it. I frequently do charge for it in
6  terms of a standard engagement, though that just
7  doesn't go on.
8      So I've got really no way to track
9  that as that kind of representation -- as that
10  kind of consultancy.
11      Q. Understand. I asked you whether you
12  testified in court, and I think I know the answer
13  to this question. But have you ever testified in
14  a tribunal other than at court as an expert
15  witness, like in a disciplinary proceeding?
16      A. Yes.
17      Q. Okay. Have you ever testified in a
18  tribunal other than at court on attorney conflict
19  issues?
20      A. The answer testified, I can't be
21  certain where, when, or how many times. If I --
22  if I tell you I've been consulted by numerous
23  courts about we've got this issue, the -- drawing
24  the distinction between expert witness and
25  consultant -- we've got this issue, it's a issue

Page 20

1      BEN SELMAN - 9/17/2021
2  of whatever ethically, do you have an opinion on
3  that, then once again, I'd be unable to tell you
4  how many times. But I've done that several
5  times.
6      Q. And have you ever done it with
7  respect to the issue of whether or not a matter
8  constitutes the same or a substantially related
9  proceeding to a prior matter?
10      A. Yes.
11      Q. How many times?
12      A. Half a dozen. I don't know. It --
13  I'm guessing to try to be helpful.
14      Q. Okay. Have you ever been subject to
15  a disciplinary proceeding?
16      A. I think the correct technical answer
17  is no. I'm a family lawyer and so about every
18  five to seven years I'll get the angry former
19  spouse or angry ex-family member who will make a
20  complaint, and those complaints are uniformly
21  dismissed without classification on screening.
22      I think the correct technical answer
23  is no. You know, I take this business very
24  seriously, and so if somebody makes a complaint,
25  then I -- I think the correct forthright answer

Page 21

1      BEN SELMAN - 9/17/2021
2  is yes, I've had matters filed not by clients and
3  they've been uniformly dismissed.
4      Q. Have you ever had a -- so these --
5  would you characterize these as -- would they be
6  called grievances that get filed by these people?
7      A. Yes.
8      Q. And who do they get filed with?
9      A. The Office of Chief Disciplinary
10  Counsel.
11      Q. Can you tell me how much of your
12  practice consists of providing expert testimony
13  or acting as an expert witness?
14      A. With any degree of certainty, no. I
15  act as ethics counsel to our law firm and have
16  for many years. And I act as a continuing member
17  of the disciplinary system at this moment. And I
18  have continued to render opinions with regard to
19  how I believe certain elements of the
20  disciplinary system operate in the State of Texas
21  to various participants in the disciplinary
22  system.
23      I have a active practice in
24  representing attorneys against whom grievance
25  matters have been filed and classified, and I

Page 22

1        BEN SELMAN - 9/17/2021
2  have a lot of people that call and say, hey, I
3  need some help, can you tell me what the answer
4  to this question is.  A lot of attorneys call and
5  ask and I do that, sometimes for money, sometimes
6  not.
7        Q.  So are you unable to estimate what
8  portion of your practice that consists of
9  compared to the family law practice and the other
10  things you've said you do?
11        A.  Compared to -- compared to family law
12  and the other fee-producing matters that I handle
13  and looking at the fee production from dealing
14  with ethical matters, I would have to say that I
15  probably don't have more than 10 percent of my
16  fees that come in as a result of ethical opinions
17  or work involvement that ignores that there's a
18  major component here that I don't bill for.
19        Q.  Understood.  Has any court or
20  tribunal not permitted you to testify as an
21  expert?
22        A.  No.
23        Q.  Has any court or tribunal limited the
24  scope of your testimony as an expert?
25        A.  No.

Page 23

1        BEN SELMAN - 9/17/2021
2        MR. BROWN:  La Asia, could you put
3  Exhibit A on the screen for us, please?
4        (Exhibit A was marked.)
5        MR. BROWN:  Okay.  And I want to
6  flip to the Exhibit A to Exhibit A, which
7  is the CV of Mr. Selman.  Well, you know
8  what, let's go back to the first page.  I'm
9  sorry.  Okay.
10        (Discussion off the record.)
11        MR. BROWN:  So -- in any event, I
12  want this marked as Exhibit A, so however
13  we're going to accomplish that is fine with
14  me.
15        Q.  (BY MR. BROWN)  Mr. Selman, have you
16  ever seen Exhibit A, which is titled "NexPoint
17  Real Estate Partners, LLC's Designation of Expert
18  Witness"?
19        A.  Yes.
20        Q.  And do you know if -- attached to
21  Exhibit A to this NexPoint Real Estate Partners,
22  LLC's Designation of Expert Witness, is that a
23  true copy of your CV?
24        A.  It is.
25        Q.  So there's a list of your writings

Page 24

1        BEN SELMAN - 9/17/2021
2  and publications on the CV.  Is that a complete
3  list and a complete and accurate list of the
4  things you've written and published and
5  presented?
6        A.  Well --
7        MR. BROWN:  We can flip down.  Keep
8  going.
9        THE WITNESS:  Thank you.
10        MR. BROWN:  There we go.
11        A.  I have -- thank you.  I had it here
12  in front of me.
13        Q.  Okay.
14        A.  And the answer to your question is
15  going to be twofold.  It is not a complete list
16  of matters that I've published as far as I can
17  tell, lacking only one.  However --
18        Q.  And it's only -- go ahead.  Sorry.
19        A.  That's all right.  However, it is
20  likewise not even nearly a complete list of what
21  I've written.  My pattern for writing in
22  conjunction with my law school requirements is
23  that I write every lecture before I deliver it,
24  and those lectures are actually in written form.
25        I just threw out four notebooks full

Page 25

1        BEN SELMAN - 9/17/2021
2  of lectures with regard to a class which is no
3  longer presented.  Each one of these classes that
4  I've presented will have anywhere between 20 and
5  25 rather complete lectures.  I have written
6  those and with few exceptions, they're in a
7  position that if I were to drop dead, another
8  person could walk into the room and begin to talk
9  where I drop dead and can continue that lecture
10  on out to the end in good English and in good
11  order.
12        So there's -- there would be an
13  unmanageable number of other matters that I have
14  written.  The same with publications to do with
15  my time in undergraduate school that were
16  published, there would literally be dozens, if
17  not hundreds of those.
18        And during the time of my service on
19  the Board of Disciplinary Appeals, I wrote
20  probably hundreds of disciplinary judgments and
21  signed them, and those matters are -- some are
22  public record, some are not.  But each one of
23  those was either drafted by me or approved
24  drafting by an assistant and -- and signed by me.
25        So there's a number of publications

Page 26

1    BEN SELMAN - 9/17/2021
2  that exist. An example of which is I'm involved
3  in a current disability matter at this time
4  pending in another county, and there will be a
5  written judgment in that. It's a -- a judgment
6  that I will draft whether -- whatever the
7  result's going to be, there will be a judgment.
8  I'll draft the judgment, but that judgment will
9  not be subject to publication.
10    So the correct answer to your
11  question is in one sense this is a representative
12  public list. In another sense it's short by
13  probably several hundred different documents,
14  some of which --
15    Q. Short by documents that you've
16  written for various things but haven't made it
17  into -- haven't been published; correct?
18    A. That's correct.
19    Q. Okay. And, Mr. Selman, what classes
20  do you teach at Baylor? What are you currently
21  teaching and what have you previously taught?
22    A. The classes that I have taught at
23  Baylor have been about eight. I have those under
24  a bullet point on page 1 of my CV resum?, and to
25  list those -- yeah, you can see them there on the

Page 27

1    BEN SELMAN - 9/17/2021
2  screen.
3    Q. I got it. Okay. Thank you.
4    A. Yes, sir.
5    Q. What is the Law, Ethics, and Morality
6  Seminar?
7    A. Well, Law, Ethics, and Morality
8  Seminar was the interplay of the ethical system
9  in regard to regulation of attorney practice and
10  attorney discipline combined with the overarching
11  responsibility of attorney to act in a moral way.
12  And because it's at Baylor, there was a large
13  religious component of that seminar.
14    Q. Okay. And the Professional
15  Responsibility class?
16    A. Yes, that's standard senior.
17    Q. Standard, yeah. Okay. Do you
18  currently have anything submitted for publication
19  that has not yet been published?
20    A. No, I do not.
21    Q. Do you blog?
22    A. No.
23    Q. Have you ever published anything on
24  the issue of attorney disqualification?
25    A. In the sense of submission to a

Page 28

1    BEN SELMAN - 9/17/2021
2  third-party publisher and acceptance and
3  publication, no.
4    Q. That's a pregnant pause. In another
5  sense, have you?
6    A. In any other sense when I'm making
7  statements for publication, I will frequently
8  include ethical considerations. Sometimes those
9  get quoted, but that's some -- that's an element
10  that I come back to. And I can't sit here and
11  with absolute certainty tell you that I have not
12  spoken on that issue and it hadn't gotten -- it
13  hadn't gotten into a publication somewhere.
14    I have not written a deliberate
15  article in regard to the interplay of the rules
16  involved in this matter for publication by a
17  third-party source.
18    Q. Okay. Have you told me all the prior
19  work or summarized the prior work you've done
20  relating to attorney disqualification? Is there
21  anything else?
22    A. Well, I don't want to nitpick with
23  your question. I think I know what you're asking
24  by saying the prior work that I've done. I think
25  what you're asking is the works that I've written

Page 29

1    BEN SELMAN - 9/17/2021
2  down and submitted to third parties for
3  publication. If that's -- if that's your
4  question, then I've told you everything.
5    If the question, however, is the
6  prior work that I've done in regard to attorney
7  disqualification, then the answer is no.
8    Q. Okay. Do you view your CV as
9  current?
10    A. Relatively.
11    Q. Okay. What would you add to it in
12  the attorney disqualification arena that's not
13  already on there?
14    A. I wouldn't add anything else. The
15  work I'm referring to -- and I don't intend to be
16  obscure with you -- the work that I'm referring
17  to is in regard to the drafting, preparation,
18  signing, and implementation of disciplinary
19  judgments in disciplinary hearings in which I was
20  an adjuratory officer, personally I don't feel I
21  have a right to comment on publicly that's part
22  of my work. Part of it's published; part of it's
23  not.
24    Q. Are you currently an active member of
25  -- well, let me put it another way.

Page 30

BEN SELMAN - 9/17/2021

1     BEN SELMAN - 9/17/2021
2        Can you tell me the -- the State Bars
3  for -- in which you are currently an active
4  member?
5     A. Texas.
6     Q. Just Texas?
7     A. Yes, sir.
8     Q. We're going to come back to Exhibit A
9  to deal with the -- your -- the summary of your
10  opinions, but right now I want to go to Exhibit
11  -- Exhibit B.
12        (Exhibit B was marked.)
13     MR. BROWN: So, La Asia, if you
14  could put Exhibit B up. And, Kim, if we
15  can do whatever we need to do to ensure
16  that Exhibit B is marked.
17        (Discussion off the record.)
18     MR. BROWN: One thing as just a
19  housekeeping matter, I think I transmitted
20  Exhibits A through O and I will not be
21  using them all. So that's why I want to be
22  careful of telling you which of the
23  exhibits -- of the documents I sent you
24  which I actually intend to have marked as
25  exhibits to the deposition, it's probably

Page 31

1  not going to be everything that I sent.
2  Got it.
3     THE REPORTER: Yes, sir.
4     Q. (BY MR. BROWN) So Exhibit B is up on
5  the screen, Mr. Selman. And I -- I gather that
6  you also have a binder of exhibits in front of
7  you?
8     A. I do.
9     Q. Okay. Great. So are you looking at
10  Exhibit B?
11     A. Yes.
12     Q. And it's called "Index to Documents
13  Examined by Expert." Is that correct?
14     A. Yes.
15     Q. Have you ever seen it before?
16     A. Yes.
17     Q. When did you see it?
18     A. Last night about 7:00-ish.
19     Q. Never saw it before that?
20     A. No, sir.
21     Q. Didn't see it before it -- did you
22  have any role in creating it or drafting it?
23     A. Probably. I sent to Ms. Drawhorn a
24  list that I had made of the documents that I

Page 32

1     BEN SELMAN - 9/17/2021
2  examined, and I assume that that may have played
3  some part in the drafting of this document. But
4  whether I've seen this one before or not, I'm not
5  completely sure. But I -- I'm not calling it to
6  mind other than I did definitely see it last
7  night after I concluded my presentation last
8  night.
9     Q. When you refer to your -- the
10  presentation you did last night, that was
11  unrelated to this matter; correct?
12     A. Yes.
13     Q. Okay. Is this Exhibit B a complete
14  list of all the documents that you've considered
15  in forming the opinions that you intend to
16  testify on at the hearing on the motion to
17  disqualify Wick Phillips?
18     A. I believe so, with one possible
19  exception.
20     Q. And do you want to tell us what the
21  exception -- what the one possible exception is?
22     A. I have received a document from
23  Ms. Drawhorn, I believe, in the last two or three
24  days which is entitled "Release From Loan
25  Agreement Or Other Security Documents," and it's

Page 33

1  not reflected specifically on Exhibit B. I guess
2  it could be implied that it's in here, but I
3  think the implication would be misleading.
4     Q. Understood. I think the reason that
5  that's not on this list is she may not have had
6  it at the time the list was comprised.
7        But in any event, other than that,
8  other than the release that you just referred to,
9  is this a complete list of all the documents that
10  you've considered in formulating any of the
11  opinions that you intend to testify upon at the
12  hearing on the motion to disqualify
13  Wick Phillips?
14     A. As far as I know.
15     Q. Okay. Now, did you consider any
16  legal authorities in forming the opinions that
17  you intend to testify upon at the trial -- at the
18  hearing on the motion to disqualify
19  Wick Phillips?
20     A. Yes.
21     Q. And why aren't they listed on this --
22  on this document?
23     A. I don't know.
24     Q. What legal authorities did you

Page 34

BEN SELMAN - 9/17/2021

1  consider?

2  A. I pulled, examined, and studied four

3  disciplinary rules, and I also examined each of

4  the cases cited by each of the attorneys in the

5  respective motions and responses, but did not

6  make copies of those documents.

7  Q. But you read them -- you read the

8  cases cited in the briefs?

9  A. I did.

10  Q. Okay. Other than the four

11  disciplinary rules and the authority cited in the

12  briefs and the parties related to -- you know, in

13  support of and the opposition to the

14  disqualification motion, did you consider any

15  other authorities in formulating your opinions?

16  A. I want to correct one thing. I

17  misspoke. It was five disciplinary rules that I

18  pulled to look at based on my reading of the

19  motion and the response.

20  Q. Okay.

21  A. And other authority that I considered

22  was a search of Texas ethics opinions from the

23  Texas Center For Legal Ethics and

24  Professionalism. And that's the extent of my

Page 35

BEN SELMAN - 9/17/2021

1  literature search.

2  Q. Okay. When you searched the Texas

3  ethics opinions, did you find any ethical

4  opinions that you considered in formulating your

5  opinions?

6  A. No.

7  Q. And what were the five disciplinary

8  rules that you considered?

9  A. Rule 1.7 and 1.9 of the ABA Model

10  Rules, Rule 1.05, 1.06 and 1.09 of the

11  Disciplinary Rules of Professional Conduct. And

12  I apologize for misspeaking earlier.

13  Q. About what?

14  A. Telling you I'd looked at four rules

15  when I've looked at five.

16  Q. Yeah, that's pretty egregious,

17  Mr. Selman. Were you in the Boy Scouts?

18  A. No, sir.

19  Q. All right.

20  MR. BROWN: So we've been going

21  about an hour. How about a convenience

22  break for five minutes?

23  THE WITNESS: That's fine. But

24  whatever -- whatever y'all agree to is fine

Page 36

BEN SELMAN - 9/17/2021

1  with me.

2  MS. DRAWHORN: That's fine with me,

3  Ken.

4  MR. BROWN: Let's take five

5  minutes.

6  (Break from 2:50 p.m. to 2:56 p.m.)

7  Q. (BY MR. BROWN) So Mr. Selman, you

8  had indicated of the five rules, the disciplinary

9  rules that you've reviewed in connection with

10  forming your opinions, that among them were ADA

11  Model Code 1.9 -- and I'm going to get it

12  wrong -- but the Texas Disciplinary Rules, I

13  don't have at the tip of my tongue what the full

14  name of it is?

15  A. The Texas Disciplinary Rules of

16  Professional Conduct.

17  Q. So the Texas Disciplinary Rules of

18  Professional Conduct No. 1.09; correct?

19  A. Yes.

20  Q. Are there -- is ADA Model Code 1.9

21  and the Texas Disciplinary Code of Professional

22  Conduct, are those materially different in any

23  way?

24  A. In my opinion, not materially.

Page 37

BEN SELMAN - 9/17/2021

1  Q. How do you consider them different at

2  all? Do they reflect a different standard?

3  A. No.

4  Q. If we could go back to Exhibit A and

5  the CV.

6  A. Yes, sir.

7  Q. So under adjunct professor, the first

8  course listed is Professional Responsibility.

9  When did you teach that course last?

10  A. As the presenting professor full

11  time, '93. When I taught it last was a couple of

12  quarters ago doing supply teaching for a

13  professor who couldn't be there.

14  Q. Supply teaching?

15  A. Yes.

16  Q. What is that?

17  A. That means -- that means to step in

18  when someone has another obligation and present

19  his or her lecture for them.

20  Q. Okay. Like a substitute?

21  A. Yes.

22  Q. Okay. So when -- you had said you

23  often -- I think you said that you sometimes

24  don't enter into engagement agreements with

Page 38

1      BEN SELMAN - 9/17/2021
2  paying clients, did I recollect that correctly?
3      A. Yes.
4      Q. Texas Disciplinary Rule -- are you
5  familiar with Texas Disciplinary Rule 1.04(c)?
6      A. I am.
7      Q. I think it states when the lawyer has
8  not regularly represented the client, the basis
9  or rate of the fees shall be communicated to the
10 client preferably in writing before or within a
11 reasonable time after commencing the
12 representation.
13     Do you generally follow that rule?
14     A. If you're asking do I tell the
15 clients fee bases before beginning services, yes,
16 I follow that in each case.
17     Q. Even when you don't have an
18 engagement letter; correct?
19     A. That's correct. I think the rule
20 speaks for itself in regard to a written
21 engagement letter or contract.
22     Q. Okay.
23     MR. BROWN: So can we flip -- can
24 we move to the beginning of Exhibit A? Oh,
25 sorry. Actually, Exhibit C. Can we move

Page 39

1      BEN SELMAN - 9/17/2021
2  -- can we put Exhibit C up?
3      (Exhibit C was marked.)
4      MR. BROWN: And can we go forward
5  to document No. NREPDQ00009? Okay. So I
6  do want this entire series of documents,
7  the emails before this and this letter all
8  -- they were transmitted as Exhibit C, I'd
9  like to have them marked as Exhibit C to
10 the deposition.
11     Q. (BY MR. BROWN) Mr. Selman, have you
12 seen this May 14, 2021, letter from the Naman
13 Howell Smith & Lee law firm before?
14     A. Yes.
15     Q. And what is it?
16     A. It's an engagement letter.
17     Q. With whom?
18     A. With Brant Martin and Laura Drawhorn
19 at Wick Phillips Gould & Martin.
20     Q. Is this the engagement letter
21 pursuant to which -- that governs your retention
22 by Wick Phillips in connection with your service
23 as an expert witness for Wick Phillips in -- as
24 an expert witness in opposition of the motion to
25 disqualify Wick Phillips?

Page 40

1      BEN SELMAN - 9/17/2021
2      A. Again, I don't want to nitpick, but
3  it's in regard to consultation regarding a motion
4  to disqualify and response to that.
5      Q. Does this engagement letter encompass
6  your services as an expert witness in connection
7  -- on behalf of Wick Phillips in connection with
8  a disqualification motion?
9      A. It does.
10     Q. And your point is it may encompass
11 some other things as well?
12     A. Actually, what I was doing was saying
13 your question said in opposition to, and I don't
14 want it to appear that I entered into this
15 relationship either in favor of or in opposition
16 to any particular position. I entered into it to
17 consult.
18     Q. Okay. This letter is dated May 14,
19 2021. When were you first contacted by
20 Wick Phillips?
21     A. I do not recall.
22     Q. Prior to May 14, 2021, though;
23 correct?
24     A. Yes.
25     Q. Who at Wick Phillips contacted you?

Page 41

1      BEN SELMAN - 9/17/2021
2      A. Ms. Drawhorn originally contacted me.
3      Q. And you had a prior relationship with
4  Wick Phillips, did you not?
5      A. I did.
6      Q. And who had previously contacted you
7  from Wick Phillips in connection with the prior
8  representation?
9      A. Brant Martin.
10     Q. And other than this representation
11 and the prior representation which you've
12 described, have you had any other dealings with
13 Wick Phillips?
14     A. Not that I'm aware of.
15     Q. Mr. Selman, your hourly rate is
16 identified as $420 an hour at page 2 of the
17 May 14, 2021 retention letter.
18     Does that accurately reflect the
19 hourly rate you're charging in this matter?
20     A. Yes.
21     Q. Are you doing all the work in
22 connection with this matter, or are there other
23 people doing work at your firm in connection with
24 this matter?
25     A. Well, I have staff that prepares

Page 42

1      BEN SELMAN - 9/17/2021
2   documents that I -- that I use. I've had legal
3   assistants assist me in regard to drawing up a
4   working outline of the volume of documents that
5   all of y'all have filed, which needed to be done.
6   But I believe the correct answer to your question
7   is I'm doing the work.
8      Q. Okay. And you're the only lawyer
9   that's doing the work in the matter; correct?
10      A. That's correct.
11      Q. Do you have a different rate that you
12   charge for your work as an expert witness
13   compared to the work that you do for providing
14   other legal services?
15      A. The correct answer to that question
16   is the $420 an hour is my computer billing rate.
17   That's assigned to me at the beginning of each
18   fiscal year. I have lower rates that I charge in
19   regard to the delivery of certain law services
20   and certain disciplinary services, but I do not
21   have a higher rate than $420 per hour in any
22   matter.
23      Q. But you're charging Wick Phillips
24   $420 an hour in this matter; correct?
25      A. That's correct.

Page 43

1      BEN SELMAN - 9/17/2021
2      Q. Is your compensation in this matter
3   in any way related to the outcome of the
4   disqualification motion?
5      A. No.
6      Q. Do you know how much time you've
7   spent on this matter to date?
8      A. I do not.
9      Q. Can you estimate?
10      A. Not with any real degree of accuracy.
11   Maybe 10 to 12 before yesterday evening.
12      Q. Do you know how much you've billed on
13   the matter to date?
14      A. No.
15      Q. Did you spend any time with
16   Ms. Drawhorn or any other member of the
17   Wick Phillips firm preparing for this deposition?
18      A. Let me answer that in this way: I
19   talked with Ms. Drawhorn yesterday about the
20   release document. And I received electronic
21   mail, as I said, last night delivering the
22   exhibits, and I opened that probably about 7:00
23   or so yesterday evening. I called Ms. Drawhorn
24   today prior to the deposition to confirm
25   arrangements, but nobody sat with me and prepared

Page 44

1      BEN SELMAN - 9/17/2021
2   me for a deposition the way we prepare our
3   clients for depositions.
4      Q. Have you completed your work in
5   connection with forming your opinions in this
6   matter?
7      A. That depends on how many more
8   documents the two sides file and ask me to look
9   at. If there's more filed and more to look at,
10   then no, I haven't concluded my work.
11      Q. Let's -- let's make the assumption
12   that you've seen the universe of documents. Have
13   you completed your work with respect to the
14   documents that you have currently had an
15   opportunity to consider?
16      A. With regard to the documents I have
17   currently had an opportunity to consider, yes.
18      Q. Okay. So you made a judgment with
19   respect to those documents and formed your final
20   opinions that you're going to offer at the
21   hearing on this matter, assuming there are no
22   additional documents?
23      A. With one exception, please. I
24   understand from talking with Ms. Drawhorn that
25   the deposition of the expert for Highland has

Page 45

1      BEN SELMAN - 9/17/2021
2   been taken, and I expressed a desire to look at
3   that. I would like to look at that and see the
4   issues that were addressed in that deposition and
5   -- and the answers that were given. That might
6   or might not have any bearing on my decision.
7      Q. Okay.
8      A. But I have --
9      Q. Other than that -- other than taking
10   a look at Mr. Kehr's deposition testimony, you
11   have done all the work you are going to do in
12   connection with forming your final opinions in
13   this matter; is that correct?
14      A. That's all the work I plan to do. If
15   I'm asked to do more work, I will do more work.
16      Q. Okay. What have you been asked to do
17   in this case?
18      A. I've been asked to evaluate these
19   documents that have been transmitted to me, which
20   are described in Exhibit B and the release
21   document and to render an opinion regarding the
22   motion to disqualify and the responses to motion
23   to disqualify.
24      Q. Anything else?
25      A. That's it.

Page 46

BEN SELMAN - 9/17/2021

1
2 Q. Okay. And can you describe what
3 you've done in connection with forming your
4 opinions to date?
5 MS. DRAWHORN: Objection. Okay.
6 Objection to the extent I just want to
7 caution the witness to limit the work --
8 just keep it to the -- if you're talking
9 about attorney communications or
10 communications you've had with us, only the
11 substance that you considered in connection
12 with your opinion. The question was a
13 little vague, so I just want to --
14 Q. (BY MR. BROWN) So let me try and be
15 more precise in the question. I'm not asking you
16 to tell me about the communications with
17 Wick Phillips other than to the extent they have
18 provided you with facts you've relied on, outside
19 of the documents or assumptions you've relied on
20 outside of the documents or any other information
21 you've considered in forming your opinions, I
22 believe you're obligated to disclose those
23 categories of communications to me.
24 So with that clarification, I would
25 like you to tell me and describe the tasks that

Page 47

BEN SELMAN - 9/17/2021

1
2 you've performed to date in forming your
3 opinions?
4 A. I've received what's now three large
5 volumes of documents. I've organized those
6 documents largely on a chronological scale and
7 largely then by party, the debtor, and the
8 contesting party. And the third volume that I've
9 organized is the exhibits which were received
10 last night.
11 I've studied each one of these
12 documents with regard to the presenting issue.
13 I've reviewed what I believe to be the relevant
14 disciplinary rules, both federal and Texas in
15 regard to the disqualification issue presented
16 and contested in the motions. I've looked at the
17 cases cited by both parties, and I've formulated
18 an opinion based on that work.
19 Q. Is that a complete description of the
20 work you've done?
21 A. I believe so.
22 Q. Have you spoken to anyone other than
23 members of Wick Phillips in connection with the
24 work you've done in this matter?
25 A. Staff.

Page 48

BEN SELMAN - 9/17/2021

1
2 Q. Nobody outside your law firm, though?
3 A. That's correct.
4 Q. You've not spoken to any other
5 experts or consultants; correct?
6 A. That's correct.
7 Q. Have you made any assumptions in
8 forming your opinions in connection with this
9 matter?
10 A. Can you be a bit more specific with
11 that?
12 Q. I -- well, I want to know if -- if
13 you have made assumptions with respect to any
14 facts that are not established in this case?
15 A. I have assumed that each factual
16 position taken by the contesting parties in this
17 matter are factual positions that can be born out
18 through some sort of relevant admissible
19 evidence. So I've made that assumption in each
20 instance, taking the motions and responses on the
21 face of them and assuming that the factual
22 positions taken can be born out by correct
23 admissible evidence.
24 But beyond that, I've really made no
25 other assumptions of any relevance to this

Page 49

BEN SELMAN - 9/17/2021

1
2 proceeding.
3 Q. Okay. All right.
4 MR. BROWN: Can we put Exhibit A
5 back up? Let's go to the beginning of
6 Exhibit A. Okay.
7 Q. (BY MR. BROWN) So have you seen this
8 exhibit -- this part of Exhibit A before,
9 NexPoint Real Estate Partner, LLC's Designation
10 of Expert Witness?
11 A. Not before the designation of expert
12 witness.
13 Q. Okay.
14 MR. BROWN: And, Kim, I just want
15 to make sure -- so this was already marked,
16 so never mind.
17 Q. (BY MR. BROWN) So you didn't have any
18 role in preparing this?
19 A. I spoke with Ms. Drawhorn at the
20 point that I was ready to say what my opinion
21 was, and so to that extent, I would have had -- I
22 would have had, I suspect, a role in helping to
23 prepare it. I certainly indicated the rules that
24 I have looked at at that time.
25 Now, obviously I've looked at other

Page 50

BEN SELMAN - 9/17/2021

1 rules to just kind of trying to think what the
2 parties might be talking about in terms of the
3 broad scope, and though it wasn't raised by the
4 motions and the responses, study of Rule 1.05
5 confidentiality provisions and Rule 1.6 in regard
6 to confidentiality provisions need -- needs to be
7 included in.
8       But otherwise this is a correct
9 reflection of my recollection of the discussion
10 with Ms. Drawhorn. I have not seen the document
11 at the time of preparation of filing, and I
12 actually saw it, I believe, when she transmitted
13 it to me. I think last night was the first time
14 I'd actually seen the document myself, but, you
15 know, I may have seen it before that.
16       Q. It's fair to say you did not edit
17 this document in any way?
18       A. That's fair.
19       Q. Okay. Just to get terms straight so
20 you and I are all talking about the same thing,
21 there is -- among the documents you've
22 considered, there is a SE Multi-Family Holdings,
23 LLC, a Limited Liability Agreement in this case.
24       Are you familiar with that?

Page 51

BEN SELMAN - 9/17/2021

1       A. I've received it and read it.
2       Q. Okay. Are you -- can we refer to
3 that as the original LLC agreement and we'll be
4 talking about the same thing?
5       A. That'd be fine.
6       Q. And then there's a First Amended and
7 Restated Limited Liability Company Agreement.
8       Can we refer to that as the amended
9 LLC agreement?
10       A. That would be fine.
11       Q. And then there is a -- a bridge loan
12 agreement. Let's see if I can find it. It's a
13 bridge loan agreement that's dated as of
14 September 26, 2018, by a group of borrowers that
15 include both Highland and HCRE among others and
16 some lenders, including KeyBank National
17 Association and KeyBank Capital Partners.
18       Are you familiar with that loan
19 agreement?
20       A. I've received it and read it.
21       Q. Okay. Can we refer to that today as
22 the bridge loan agreement?
23       A. That would be fine.
24       Q. Okay. Now, is it correct that you're

Page 52

BEN SELMAN - 9/17/2021

1 not going to be offering any opinions in this
2 matter other than the opinions that are reflected
3 in this summary -- flip to the next page of
4 Exhibit A.
5       Is it true you're not going to be
6 offering any opinions in this matter that are not
7 identified in this Designation and Disclosure,
8 the second page of Exhibit A?
9       A. That's the basis of my opinion at
10 this time. If there's other considerations that
11 are brought to me, I may or may not have a
12 different opinion. If I'm asked to formulate a
13 different opinion, I'll formulate whatever
14 opinion I feel is justified under the facts and
15 the documents.
16       So I can't say this is the only
17 opinion that I will have, and I must also say
18 that I will try to answer to the best of my
19 ability whatever question is put to me by counsel
20 or Court.
21       Q. Okay. Well, I'm going to be asking
22 you today, you know, to tell me everything you're
23 going to testify on at trial. And of course, you
24 know how this goes, if you have something that

Page 53

BEN SELMAN - 9/17/2021

1 you come up with later that you want to testify
2 at trial about, I can take the position that
3 that's precluded if you don't tell me about it
4 today.
5       But, you know, everybody can argue
6 about that, but I just want you to understand
7 that if you don't tell me what you're going to
8 say today, there will be an issue at the hearing
9 if you try to say -- express an opinion that you
10 haven't told me about today.
11       Are we on the same page on that?
12       A. I'll answer every question you ask
13 me.
14       Q. All right. And, again, I think I
15 established this at the beginning, but where
16 NexPoint Real Estate Partners and HCRE Partners
17 are the same entity, and we're referring to them
18 here as HCRE; correct?
19       A. Yes.
20       Q. And do you acknowledge that
21 Wick Phillips' current representation of HCRE in
22 connection with its proof of claim challenging
23 the ownership allocation to Highland under the
24 LLC agreement is adverse to Highland?

Page 54

BEN SELMAN - 9/17/2021

1
2   A. Yes.
3   Q. Okay. Good enough. And do you
4   acknowledge that Wick Phillips represented both
5   HCRE and Highland along with other borrowers in
6   connection with the bridge loan agreement?
7   A. Yes.
8   Q. Okay. So I'm going to go through
9   this designation that identifies the opinions
10  that you are going -- that your counsel has
11  indicated you're going to testify to at the
12  hearing.
13      So it says, Mr. Selman may testify
14  and offer opinions regarding the allegations
15  underlying the debtor's motion to compel
16  disqualification of Wick Phillips as counsel for
17  HCRE, the DQ motion.
18      So what opinion -- that's letter A.
19  So with respect to letter A of this designation,
20  what opinion are you going to express at the
21  hearing?
22      A. Well, I believe that the sentence
23  indicates both testimony and the offering of
24  opinions. I intend to testify about any of the
25  allegations contained in both motion and I

Page 55

BEN SELMAN - 9/17/2021

1
2   believe restated motion to -- or additional
3   motion to disqualify and the motion or motions in
4   opposition to the motion and its restatement to
5   disqualify.
6       And I intend to answer questions
7   regarding what those allegations mean or don't
8   mean. I'm not terribly sure that my opinions
9   regarding other folks' drafting is terribly
10  relevant to the Court's consideration, but I'm
11  accepting the allegations both in the motion to
12  disqualify and in the responsive motions as being
13  factually based in provable form.
14      Q. I'm interested in your opinions that
15  you're going to testify to at the hearing. This
16  designation says, Mr. Selman may testify -- so
17  it's -- and offer opinions regarding, A, the
18  allegations underlying the debtor's motion to
19  compel disqualification of Wick Phillips. Okay.
20      What opinions are you -- have you
21  currently formed and you intend to testify to at
22  the hearing on that subject?
23      A. And this may be a matter of
24  semantics. I intend to address the allegations
25  in both A and B, but specifically with A to the

Page 56

BEN SELMAN - 9/17/2021

1
2   extent that those would be grounded and provable
3   facts and do that from an assumption standpoint.
4   That would be the opinion that I would offer
5   ultimately in regard to A and B.
6       Q. What is the opinion that you will
7   express with regard to A and B?
8       A. I'm sorry. I interrupted you. I
9   apologize.
10      Q. Sorry. I think I may have
11  interrupted you. But I'm entitled to have the
12  opinions that you are going to testify to at the
13  hearing, and so far you haven't told me what they
14  are.
15      So are you going to tell me what your
16  opinions are in this deposition?
17      MS. DRAWHORN: Objection. Asked
18  and answered. He explained what his
19  opinions were -- how he was going to
20  testify regarding A and B.
21      A. Yes.
22      Q. Okay. Let's --
23      A. My answer to your question is yes.
24      Q. I'm not sure what the question you're
25  answering now is?

Page 57

BEN SELMAN - 9/17/2021

1
2       A. Am I going to testify and give
3   opinions is my understanding of the last
4   question. And I hope I understood it correctly,
5   but if that's the last question you asked, then
6   my answer to that question is yes.
7       Q. Have you formed opinions?
8       A. I have.
9       Q. Okay. Please tell me what your
10  opinions are.
11      A. My opinions are that the
12  Wick Phillips firm represented both Highland and
13  NREP together with other borrowers in regard to
14  the bridge loan; that the bridge loan was
15  consummated by execution on September 25, 2018,
16  showing an effective date of September 26, 2018.
17      My opinion is that Wick Phillips'
18  representation of all parties ceased at that
19  point, and that representation was limited on the
20  part of Wick Phillips with regard to the named
21  parties in regard to the bridge loan as of the
22  time of the execution, perhaps a bit earlier, but
23  I don't really have a way to isolate that.
24      My opinion is further that some six
25  months after the bridge loan was consummated, the

Page 58

1        BEN SELMAN - 9/17/2021
2    SE Multi-Family Company restated itself, and in
3    doing so presented a contestable matter that bore
4    no relationship of any materiality or of any
5    substance to the bridge loan.
6        I believe the fact is that
7    Wick Phillips began representation of NREP in
8    regard to that narrow issue in a contested matter
9    in the bankruptcy proceeding, and that this
10   motion to disqualify and responsive motions about
11   which we're talking today resulted from
12   Wick Phillips' representation of NREP in a matter
13   that is almost wholly dissimilar to the bridge
14   loan. But that it certainly bears no same
15   relationship to the bridge loan and appears to
16   bear no substantial relationship to the bridge
17   loan.
18       I haven't yet formulated but I will
19   formulate at some point an opinion with regard to
20   the document that we talked about earlier, the
21   release from loan agreement document that I've
22   recently received and needs to be studied.
23       I've reviewed it three or four times
24   and I still have questions that need to be looked
25   at before I'll have an opinion on it. But it is

Page 59

1        BEN SELMAN - 9/17/2021
2    my opinion based on the plain language of the
3    release document that the bridge loan as a result
4    of the release agreement between Highland Capital
5    and the bridge loan lenders are between
6    Highland Capital and two other allied companies
7    appears to even further isolate the bridge loan
8    from the instant contested matter litigation.
9        That having been said, there appears
10   to be no discernible violation of Rule 1.9 of the
11   ABA Model Rules or of 1.7 of the ABA Model Rules
12   or of 1.06 of the Texas Disciplinary Rules of
13   Professional Conduct or Rule 1.09 of the Texas
14   Disciplinary Rules of Professional Conduct by or
15   through Wick Phillips' present representation of
16   NREP in regard to the amended and restated SE
17   Multi-Family Holdings, LLC.
18       Q.  Sorry.  You broke up on that last.
19   Could you repeat the last thing you said,
20   Mr. Selman?
21       A.  Yes.  The amended and restated SE
22   Multi-Family Holdings, LLC.
23       Q.  Before that.  Go back -- could you
24   repeat that entire last thought.
25       A.  Not without a great deal of

Page 60

1        BEN SELMAN - 9/17/2021
2    assistance. If the court reporter got it --
3        MR. BROWN: Yeah. Can the court
4    reporter read back, you know, the last,
5    say, minute of testimony.
6        (Requested portion was read.)
7        MR. BROWN: Okay. Okay.
8        Q. (BY MR. BROWN) Mr. Selman, do you
9    have -- is that the entirety of the opinion that
10   you've currently formed in this matter?
11       A. To the best of my ability, yes.
12       Q. Okay.
13       MR. BROWN: Can we take a -- about
14   a five-minute break and we'll come back?
15       MS. DRAWHORN: Sure.
16       THE WITNESS: Absolutely.
17       (Break from 3:40 p.m. to 3:49 p.m.)
18       Q. (BY MR. BROWN) So, Mr. Selman, you
19   understand you're still under oath?
20       A. Yes.
21       Q. Okay. You just presented or
22   testified to the opinion that you've said you
23   would be offering at the hearing on this matter.
24       And can you now tell me the basis for
25   your conclusion that there is no basis for a

Page 61

1        BEN SELMAN - 9/17/2021
2    violation of any of the Texas Rules of
3    Professional Conduct or the Model Rules?
4        A. There is no discernible similarity
5    between the services that were rendered by
6    Wick Phillips on the bridge loan and the services
7    that are being rendered by Wick Phillips in
8    regard to the Amended and Restated SE
9    Multi-Family Holdings, LLC.
10       They are not the same actions. They
11   don't involve substantially similar issues, and
12   in the event this release document means what it
13   appears to say, then the bridge loan appears to
14   be even further isolated away from the Amended
15   and Restated SE Family Holdings -- excuse me --
16   Multi-Family Holdings, LLC contested matter
17   presents in issues of both fact and law.
18       That aside, I am of the opinion that
19   there is no discernible material similarity
20   between the two representations and that
21   thereby -- and they're certainly not the same
22   representations, thereby there is no presentable
23   violation of the either the ABA Model Rules or
24   the Texas Disciplinary Rules of Professional
25   Conduct that bear on this issue, which I

Page 62

1      BEN SELMAN - 9/17/2021
2  understand to be the law standard that the Court
3  may apply in determining his ruling or her ruling
4  on this matter.
5      Q. So let me ask you on this release
6  agreement -- do you have a copy in front of you?
7      A. I do.
8      Q. And what's the date on it?
9      A. October 7, 2019.
10     Q. And do we agree that -- let's see --
11 the -- the amended -- the Amended Limited
12 Liability Company Agreement was dated March 15,
13 2019, to be effective August 23, 2018; correct?
14     A. Those are correct dates.
15     Q. So the release took place substantial
16 period of time after the First Amended Limited
17 Liability Agreement; correct?
18     A. Several months.
19     Q. Yeah. So I'm trying to understand
20 what basis -- what role the release has in your
21 opinion?
22     A. It appears to me from the exchange of
23 documents in this matter that the position of the
24 debtor in seeking disqualification is that
25 Wick Phillips' representation of some of the

Page 63

1      BEN SELMAN - 9/17/2021
2  borrowers in part of the bridge loan transaction
3  disqualifies Wick Phillips.
4      If that bridge loan didn't exist as
5  of the time of representation in this matter or
6  as of the present time, then the bridge loan
7  bears even less relationship from a persuasive,
8  from an argumentative, or from a factual
9  perspective than it has been alleged to involve.
10     More importantly -- and that's just a
11 question that I'm dealing with at this point that
12 I haven't finalized on with regard to an opinion.
13     More importantly, I'm of the opinion
14 that Wick Phillips' services that have been
15 described in regard to the bridge loan are not
16 the same as or substantially similar to the
17 issues of the contested matter in any way
18 whatsoever. They're just not related other than
19 by pointing and conjecture, which may be exactly
20 what this release has to do with the bridge loan.
21 I just -- I mention that because it's something
22 that I've recently received and I'm kind of
23 struggling with in terms of what does this mean
24 to the bridge loan.
25     At the end of the day, with or

Page 64

1      BEN SELMAN - 9/17/2021
2  without the release, I am of the opinion that the
3  work done on the bridge loan by Wick Phillips for
4  Highland Capital and for NREP is not the same as
5  or substantially similar to the contested matter
6  that's in progress on the Amended and Restated SE
7  Multi-Family Holdings, LLC and bears little
8  material relationship, if any at all, to the
9  contested matter. Therefore, Wick Phillips, in
10 my opinion, is not disqualified under the quoted
11 rules from representing NREP as it's doing in the
12 contested matter.
13     Q. What I -- I'm not understanding,
14 though, how the release, which occurred long
15 after the bridge loan and long after the amended
16 limited liability agreement, how the subsequent
17 execution of the release of Highland from the
18 obligations under the loan has any impact on
19 whether or not the representation that
20 Wick Phillips was involved in on behalf of
21 Highland in connection with the bridge loan and
22 its subsequent representation adverse to Highland
23 on behalf of HCRE are either the same or a
24 substantially related matter -- how does the
25 release impact that analysis?

Page 65

1      BEN SELMAN - 9/17/2021
2      A. At this point right now, I'm trying
3  to tell you I don't know. It may. I haven't had
4  enough time to study the document and to analyze
5  it at this point to finalize an opinion. You
6  asked me for all my opinions, and the best
7  opinion I can give you on that at this point is
8  it may have some impact on my analysis and it may
9  have no impact on my analysis.
10     Q. And right now, as you sit here -- and
11 you have read the release; correct?
12     A. I have.
13     Q. And you've read the loan agreement;
14 correct?
15     A. I have.
16     Q. And you've read the original LLC
17 agreement and the amended LLC agreement; correct?
18     A. I have.
19     Q. And right now you're unable to
20 articulate in any way whatsoever how the release
21 impacts the analysis of whether Wick Phillips'
22 prior representation and current representation
23 are either the same or substantially related; is
24 that true?
25     A. No.

BEN SELMAN - 9/17/2021

1

2    Q.  Okay.  Well, why don't you tell me

3  how -- tell me then how it does relate to it?

4    A.  In answer to your two-part question,

5  it may impact material adversity.  I don't know

6  that.  I don't believe at this point it impacts

7  my opinion with regard to whether or not the

8  representations in question here were the same or

9  substantially similar.

10    I still don't believe with or without

11  the release that there is any identifiable

12  sameness to the transactions at all, and there is

13  no substantially related joinder between the two

14  representations.

15    However, this release may have a

16  bearing on the issue of adversity or material

17  adversity and may not.  That's one additional

18  element which you never reach in this analysis if

19  your analysis is that Wick Phillips'

20  representation in the bridge loan and

21  Wick Phillips' representation in regard to the

22  contested matter simply are not the same and are

23  not substantially related to each other.

24    You really don't reach that.  And

25  perhaps, you know, me looking at this document

BEN SELMAN - 9/17/2021

1

2  that I was sent and trying to find what it means

3  in regard to these motions that have been filed

4  and the responses that have been filed is a

5  bridge too far in regard to this.

6    My analysis is these two transactions

7  just are not related to each other in any

8  material way.

9    Q.  I want to understand something

10  because now you've said that you thought the

11  release might impact the analysis of material

12  adversity.

13    Do you mean to say that you think the

14  release could impact the -- your conclusion that

15  Wick Phillips' current representation of NCRE in

16  the proof of claim contested matter is adverse to

17  Highland?  You previously acknowledged that it

18  was.  Are you saying that the release somehow

19  changes that conclusion?

20    A.  No, that's not what I'm saying at

21  all.

22    Q.  Okay.

23    A.  I've got a document sitting in front

24  of me --

25    Q.  What do you mean material --

BEN SELMAN - 9/17/2021

1

2    A.  Excuse me just a second.  I've got a

3  document sitting in front of me that I've

4  received and I've been asked about and I knew I

5  was going to be asked about.  And I'm trying to

6  be completely honest and say I haven't fully

7  formulated my opinion about what this means yet.

8  I don't believe it's going to change my analysis

9  or my opinion in any way at all.

10    Q.  I don't think it should either, but

11  that's what I'm trying to explore.

12    A.  Right.  Right.  Right.

13    Q.  Okay.  There is -- about two-thirds

14  of the way down, there's a sentence that says, It

15  is expected that Mr. Selman will further testify

16  that the transactional timeline between the two

17  transactions that appear to be fatally in

18  opposition -- the two transactions -- It is

19  expected that Mr. Selman will further testify

20  that the transactional timeline between the two

21  transactions appear to be fatally in opposition

22  with any applicable potential for confidentiality

23  information disclosure basis regarding the DQ

24  motion, and that there is no identifiable

25  confidential client information which could be

BEN SELMAN - 9/17/2021

1

2  exposed by a subsequent representation.

3    So when you refer to the term

4  "transactional timeline," what do you mean?

5    A.  I'm talking about the relationship of

6  the work on the bridge loan to the relationship

7  of the work on the contested matter.

8    Q.  Right.  So you're talking about the

9  fact that the bridge loan was, I think, sometime

10  in September of 2018; correct?  And -- well, tell

11  me what you mean by -- tell me exactly what this

12  reference to transactional timeline in this

13  context means?

14    A.  When the bridge loan was being worked

15  on up to the point that it was closed and

16  representation ceased compared to the time that

17  the contested matter was initiated, it doesn't

18  appear to me that Wick Phillips was involved in

19  the underlying transactions regarding the

20  contested matter in any way, neither their

21  attorneys nor their advice nor their counsel.

22    It does appear that Wick Phillips

23  represented both Highland and NREP among several

24  other borrowers in regard to funding about half

25  of the transaction made the basis of the bridge

Page 70

BEN SELMAN - 9/17/2021

1 loan.
2     But those two transactions in point
3 of time and in point of transaction do not appear
4 to bear on each other in any discernible way, and
5 they're certainly not the same as or
6 substantially similar to the two transactions.
7 That's what I'm trying to say there.
8     Q. You referenced the bridge loan
9 funding about half of the transaction.
10     What transaction are you referring
11 to?
12     A. I believe it was called the Unicorn
13 transaction.
14     Q. Project Unicorn, is that what you're
15 referring to?
16     A. Yeah. I -- I just used the term
17 "Unicorn" because that's what I've seen.
18     Q. Yeah. I'll represent to you I think
19 that the way the parties referred to it was
20 Project Unicorn in the documents.
21     So when you refer to the transaction
22 that the bridge loan funded approximately half
23 of, that's what you mean?
24     A. That's what I mean.

Page 71

BEN SELMAN - 9/17/2021

1     Q. Okay. And have you reviewed the
2 Project Unicorn documents, any documents relating
3 to Project Unicorn?
4     A. I have not.
5     Q. Okay. But it's your understanding --
6     A. Except -- Counsel, I'm interrupting
7 you and I apologize.
8     Q. Go ahead.
9     A. Except to the extent that some of the
10 bridge loan documents might have some bearing on
11 whatever it was that Unicorn was and was doing.
12 But the Unicorn project documents I have not
13 reviewed.
14     Q. But your understanding was that the
15 bridge loan was to fund a portion of the Project
16 Unicorn property acquisitions; correct?
17     A. That's correct.
18     Q. Then again in the very end of this
19 paragraph, which is the Expert Disclosure and
20 Designation, it says, It is expected that
21 Mr. Selman will testify that the facts of the
22 representation are disconnected in points of time
23 and representation so that disclosure of
24 confidential information is not possible based on

Page 72

BEN SELMAN - 9/17/2021

1 transaction times and the significance of the
2 drafting and of the core transaction documents by
3 counsel other than Wick Phillips among other
4 things.
5     What do you mean -- what's meant by
6 that?
7     A. Well, again, I didn't write this, but
8 the way I construe the sentence that you just
9 read and is laying in front of me, what happened
10 on the bridge loan was closed, whatever that was,
11 and it was closed by disclosure to public
12 sources.
13     When you talk about confidential
14 information, there are exceptions to confidential
15 information under the disciplinary rules. One of
16 these exceptions that takes information -- client
17 information outside the realm of confidential
18 information, which is the gravamen of a violation
19 under both Rule 1.06 and Rule 1.09 with regard to
20 prior representation is that the client has given
21 consent of disclosure of confidential
22 information.
23     And that's what the bridge loan was,
24 it was consent to disclose information. I don't

Page 73

BEN SELMAN - 9/17/2021

1 know whether that information was confidential
2 before it arrived in the hands of the various
3 lawyers that handled this transaction. But
4 assuming that the client considered that
5 information to be confidential when the client
6 said take this information and use it to get me
7 money, do this loan with a third party, at that
8 point there is no expectation of confidentiality
9 and there's consent to disclosure.
10     Q. Disclosure to who? Among the joint
11 clients, do you mean?
12     A. No, to a third party. You've gone
13 outside the clients to a third party to disclose
14 information.
15     Q. So is your position that
16 Wick Phillips' clients in connection with the
17 loan agreement could not have engaged in any
18 communications with Wick Phillips that were not
19 transmitted to the lender?
20     A. I'm not talking about that. I'm not
21 talking about transmissions. I'm talking about
22 the core operative elements of the bridge loan,
23 the ones that would be related to substantially
24 similar representation in the contested matter.

Page 74

BEN SELMAN - 9/17/2021

1
2  Q. Okay.
3  A. Those are no longer confidential.
4  Q. And --
5  A. Those apply --
6  Q. Is your understanding of Rule 1.09
7  that a matter cannot be the same or substantially
8  related unless confidential information is
9  disclosed?
10  A. I think that's one of the elements of
11  the Court's analysis of Rule 1.09 and motions to
12  disqualify, yes, I do believe that.
13  Q. You don't have an understanding that
14  the transmission of confidential information is
15  irrebuttably presumed when the prior and current
16  representation -- and subsequent representations
17  are in the same or substantially related matter,
18  you don't believe that that's the state of the
19  law?
20  A. I'm not understanding the question
21  you just asked.
22  Q. Okay.
23  A. I'm sorry.
24  Q. So is it not the case that when there
25  -- a lawyer represents a client in one matter

Page 75

BEN SELMAN - 9/17/2021

1
2  that is the same or substantially related to a
3  subsequent matter, that disqualification is
4  merited, whether or not confidential information
5  is transmitted?
6  A. The transmission of confidential
7  information by the attorney in the two matters is
8  part of the analysis that the Courts do in regard
9  to same or substantially related because of --
10  Q. That's not my question.
11  A. Excuse me -- because of the danger
12  that confidential information may be revealed, if
13  I'm understanding your question.
14  Q. No. I'm trying to -- so do you
15  understand the law to be that transmission of
16  confidential information is a requirement to --
17  to disqualify a lawyer under Section 1.09 or 1.9
18  of the Model Rules?
19  A. I understand that's a part of the
20  test of the analysis of Rule 1.09 and Rule 1.06.
21  Q. Is it a requirement? Can a lawyer be
22  disqualified under either Model Rule 1.9 or Texas
23  Rule 1.09 if the current and prior
24  representations are the same or substantially
25  related even if there is no evidence of that

Page 76

BEN SELMAN - 9/17/2021

1
2  confidential information was transmitted in the
3  prior representation?
4  A. Yes.
5  Q. Thank you. So, Mr. Selman, have you
6  described fully each opinion you plan on offering
7  at the hearing?
8  A. I believe so, subject to the
9  exceptions that I've made with my earlier answer
10  regarding additional documents to review and
11  reaching some conclusion on this release
12  document.
13  Q. Okay. But if there are no additional
14  documents that are presented to you, and if you
15  ultimately conclude that the release does not
16  impact your opinion, then you have fully
17  described to me the opinions you plan on offering
18  at the hearing; correct?
19  A. That's correct.
20  Q. Have you disclosed to me all of the
21  bases of those opinions?
22  A. Yes.
23  Q. Have you described all of the work
24  that you've done in connection with this matter?
25  A. Yes. Except for telling you the

Page 77

BEN SELMAN - 9/17/2021

1
2  amount of time involved, which I'm simply --
3  Q. Understood.
4  A. -- not prepared to.
5  Q. Do you plan to do additional work on
6  this matter prior to the hearing?
7  A. If I'm called on.
8  Q. What would that -- I mean, what would
9  that work -- well, do you believe that you need
10  to do additional work to present the opinions
11  that you've described to me today?
12  A. Yes. If there's going to be live
13  testimony, obviously I'm going to need at some
14  point in the future to pick this file up again
15  and look at it again and get it back in my mind
16  again --
17  Q. Yeah.
18  A. -- and get it as well organized as
19  all of y'all have gotten it for me today. But
20  beyond that, I do not anticipate additional work
21  right now, except trying to riddle this release
22  through.
23  Q. Okay. Do you intend to testify at
24  the hearing concerning any matters which you have
25  not discussed with me today?

Page 78

BEN SELMAN - 9/17/2021

1    A.  Well, the answer is if I'm called on
2    to answer questions and there's no sustained
3    objection made, then I'll answer question.  But I
4    don't plan on giving opinions other than the
5    opinions that you've asked me to give and that
6    I've given.
7    Q.  Okay.  So I asked you to tell me all
8    of the opinions that you presently intend to
9    testify to at trial, and you told me you've done
10   that; correct?
11   A.  I believe I've done that.
12   Q.  Okay.  And you've given me all the
13   bases for those opinions; correct?
14   A.  I believe so.
15   Q.  And at the present time, you don't
16   have any other opinions or you've not formed any
17   other opinions that you haven't discussed with me
18   today that you intend -- strike that.
19   At the present time, you do not have
20   other opinions you intend to present at the
21   hearing that you have not expressed to me today
22   in this deposition; is that correct?
23   A.  At the present time, that's correct.
24   Q.  Okay.  If you do -- if there is an
25

Page 79

BEN SELMAN - 9/17/2021

1    attempt to offer additional opinions, we're going
2    to reserve the right to re-depose you on those
3    opinions.  You understand that?
4    A.  Yes, probably.
5    Q.  All right.  I'm not asking you to
6    consent to it, I'm saying we're going to do it.
7    We will certainly want to understand from you any
8    opinions that you're going to testify to at the
9    hearing, to the extent they haven't been
10   disclosed today fully.  Okay.
11   Hold on, let me just go through these
12   exhibits here, make sure I don't have any others.
13   MR. BROWN:  Okay.  I don't have any
14   further questions.
15   MS. DRAWHORN:  We'll reserve our
16   questions for trial.
17   THE REPORTER:  And, Ms. Drawhorn,
18   are you guys ordering a copy?
19   MS. DRAWHORN:  Yes.  And Ben said
20   you can send it to me for the witness to
21   review and sign.
22   (Time noted - 4:23 p.m.)
23
24
25

Page 80

BEN SELMAN - 9/17/2021

1
2
3
4    _____
5    BEN SELMAN
6
7    Subscribed and sworn to before me this _____
8    day of _____, 20____.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 81

BEN SELMAN - 9/17/2021

1
2    C E R T I F I C A T E
3    I, Kim A. McCann, RMR, CRR, CSR in and
4    for the State of Texas, do hereby certify:
5    That BEN SELMAN, the witness whose
6    deposition is hereinbefore set forth, was duly
7    sworn by me and that such deposition is a true
8    record of the testimony given by such witness;
9    That pursuant to FRCP Rule 30,
10   signature of the witness was requested by the
11   witness or other party before the conclusion of
12   the deposition;
13   I further certify that I am not related
14   to any of the parties to this action by blood or
15   marriage; and that I am in no way interested in
16   the outcome of this matter.
17   IN WITNESS WHEREOF, I have hereunto
18   set my hand this September 17, 2021.
19
20
21   _____
22   Kim A. McCann, RMR, CRR, CSR
23
24
25

Page 82

1      BEN SELMAN - 9/17/2021

2  ERRATA SHEET FOR THE TRANSCRIPT OF:

3  Case Name:  In re:  Highland Capital Management

4  Dep. Date:  September 17, 2021

5  Deponent:   BEN SELMAN

6  Pg. Ln. Now Reads   Should Read    Reason

7   ___ ___ _____  _____  _____

8   ___ ___ _____  _____  _____

9   ___ ___ _____  _____  _____

10  ___ ___ _____  _____  _____

11  ___ ___ _____  _____  _____

12  ___ ___ _____  _____  _____

13  ___ ___ _____  _____  _____

14  ___ ___ _____  _____  _____

15  ___ ___ _____  _____  _____

16  ___ ___ _____  _____  _____

17  ___ ___ _____  _____  _____

18

19           _____

20            Signature of Deponent

21  SUBSCRIBED AND SWORN BEFORE ME

22  THIS _____ DAY OF _____, 20_____.

23

24  _____

25  (Notary Public) MY COMMISSION EXPIRES: _____

**$**

**$420** 41:16 42:16,21,
24

**1**

**1** 26:24
**1.04(c)** 38:5
**1.05** 35:11 50:5
**1.06** 14:9 35:11 59:12
72:20 75:20
**1.09** 14:10 18:21
35:11 36:19 59:13
72:20 74:6,11 75:17,
20,23
**1.6** 50:6
**1.7** 14:11 35:10 59:11
**1.9** 14:11 35:10
36:12,21 59:10
75:17,22
**10** 22:15 43:11
**12** 43:11
**14** 39:12 40:18,22
41:17
**15** 62:12
**1989** 11:16

**2**

**2** 41:16
**20** 25:4
**2018** 51:15 57:15,16
62:13 69:10
**2019** 62:9,13
**2021** 39:12 40:19,22
41:17
**23** 62:13
**25** 25:5 57:15
**26** 51:15 57:16
**2:50** 36:7
**2:56** 36:7

**3**

**3:40** 60:17
**3:49** 60:17

**4**

**4:23** 79:23

**7**

**7** 62:9
**7:00** 43:22
**7:00-ish** 31:19

**9**

**9/17/2021** 5:1 6:1 7:1
8:1 9:1 10:1 11:1
12:1 13:1 14:1 15:1
16:1 17:1 18:1 19:1
20:1 21:1 22:1 23:1
24:1 25:1 26:1 27:1
28:1 29:1 30:1 31:1
32:1 33:1 34:1 35:1
36:1 37:1 38:1 39:1
40:1 41:1 42:1 43:1
44:1 45:1 46:1 47:1
48:1 49:1 50:1 51:1
52:1 53:1 54:1 55:1
56:1 57:1 58:1 59:1
60:1 61:1 62:1 63:1
64:1 65:1 66:1 67:1
68:1 69:1 70:1 71:1
72:1 73:1 74:1 75:1
76:1 77:1 78:1 79:1
**93** 37:12

**A**

**ABA** 13:24 14:8,11
35:10 59:11 61:23
**ability** 52:20 60:11
**absolute** 28:11
**absolutely** 18:25
60:16
**acceptance** 28:2

**accepting** 55:11
**accomplish** 23:13
**accuracy** 43:10
**accurate** 24:3
**accurately** 41:18
**acknowledge** 53:21
54:4
**acknowledged**
67:17
**acquisitions** 71:17
**act** 21:15,16 27:11
**acting** 21:13
**actions** 61:10
**active** 21:23 29:24
30:3
**ADA** 36:11,21
**add** 29:11,14
**additional** 44:22
55:2 66:17 76:10,13
77:5,10,20 79:2
**address** 55:24
**addressed** 45:4
**adjunct** 11:12 37:8
**adjuratory** 29:20
**admissible** 48:18,23
**adverse** 53:25 64:22
67:16
**adversity** 66:5,16,17
67:12
**advice** 17:10,17
18:15 69:21
**advising** 18:13
**afternoon** 5:8
**agree** 17:24 35:25
62:10
**agreement** 17:16
32:25 50:24 51:4,8,
10,13,14,20,23 53:25
54:6 58:21 59:4 62:6,
12,17 64:16 65:13,17
73:18

**agreements** 37:25
**ahead** 24:18 71:9
**allegations** 54:14,25
55:7,11,18,24
**alleged** 63:9
**allied** 59:6
**allocation** 53:24
**amended** 51:7,9
59:16,21 61:8,14
62:11,16 64:6,15
65:17
**amount** 77:2
**analog** 18:22
**analysis** 64:25 65:8,
9,21 66:18,19 67:6,
11 68:8 74:11 75:8,
20
**analyze** 65:4
**angry** 20:18,19
**answering** 56:25
**answers** 45:5
**anticipate** 77:20
**anticipating** 15:7
**apologize** 35:13
56:9 71:8
**Appeals** 25:19
**appearing** 7:25 8:3
**appears** 58:15 59:7,
9 61:13 62:22
**applicable** 68:22
**application** 13:21
**apply** 62:3 74:5
**approved** 25:23
**approximately**
70:23
**arbitration** 13:13
**area** 12:4 14:22
**arena** 29:12
**argue** 53:6
**argumentative** 63:8

**arising** 12:11
**arrangements**
43:25
**arrived** 73:3
**article** 28:15
**articulate** 65:20
**Asia** 23:2 30:13
**assigned** 42:17
**assist** 42:3
**assistance** 60:2
**assistant** 25:24
**assistants** 42:3
**Association** 51:18
**assume** 6:21 16:21
32:2
**assumed** 48:15
**assuming** 44:21
48:21 73:5
**assumption** 44:11
48:19 56:3
**assumptions** 46:19
48:7,13,25
**attached** 23:20
**attempt** 79:2
**attorney** 11:11 15:24
16:12,18 18:9,14
19:18 27:9,10,11,24
28:20 29:6,12 46:9
75:7
**attorney's** 12:25
13:13 15:19
**attorneys** 21:24 22:4
34:5 69:21
**August** 62:13
**authorities** 33:17,25
34:16
**authority** 34:12,22
**avoid** 19:3
**awarded** 15:19
**aware** 11:8 41:14

Index: back..consummated

**B**

**back** 23:8 28:10 30:8 37:5 49:5 59:23 60:4, 14 77:15

**bankruptcy** 6:3 58:9

**Bars** 30:2

**based** 34:19 47:18 55:13 59:2 71:25

**bases** 38:15 76:21 78:14

**basis** 38:8 52:10 60:24,25 62:20 68:23 69:25

**Baylor** 11:13 26:20, 23 27:12

**bear** 58:16 61:25 70:5

**bearing** 45:6 66:16 71:11

**bears** 58:14 63:7 64:7

**began** 11:16 58:7

**begin** 25:8

**beginning** 38:15,24 42:17 49:5 53:16

**behalf** 15:6 40:7 64:20,23

**Ben** 5:1,3 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1,20

**bill** 16:23 17:14 22:18

**billed** 43:12

**billing** 17:16 42:16

**binder** 31:7

**bit** 48:10 57:22

**blog** 27:21

**Board** 25:19

**bore** 58:3

**born** 48:17,22

**borrowers** 51:15 54:5 57:13 63:2 69:24

**Boy** 35:18

**Brant** 39:18 41:9

**break** 35:23 36:7 60:14,17

**bridge** 51:12,14,23 54:6 57:14,21,25 58:5,13,15,16 59:3,5, 7 61:6,13 63:2,4,6, 15,20,24 64:3,15,21 66:20 67:5 69:6,9,14, 25 70:9,23 71:11,16 72:11,24 73:23

**briefs** 34:9,13

**broad** 50:4

**broke** 59:18

**brought** 52:12

**Brown** 5:7,9 7:25 8:6 23:2,5,11,15 24:7,10 30:13,18 31:5 35:21 36:5,8 38:23 39:4,11 46:14 49:4,7,14,17 60:3,7,8,13,18 79:14

**bullet** 26:24

**business** 20:23

**C**

**call** 22:2,4

**called** 21:6 31:13 43:23 70:13 77:7 78:2

**calling** 32:5

**capacity** 17:19 18:13

**Capital** 5:10,12 51:18 59:4,6 64:4

**car** 14:21

**care** 12:10

**careful** 30:22

**case** 6:3 10:2 38:16 45:17 48:14 50:24 74:24

**cases** 34:5,9 47:17

**categories** 46:23

**caution** 46:7

**ceased** 57:18 69:16

**Center** 34:24

**certainty** 21:14 28:11

**challenging** 53:23

**change** 68:8

**changed** 13:4

**characterize** 17:20, 22 21:5

**charge** 19:5 42:12,18

**charging** 41:19 42:23

**Chief** 21:9

**children** 12:10

**chronological** 47:6

**cited** 34:5,9,12 47:17

**claim** 6:2 53:23 67:16

**claims** 12:6

**clarification** 46:24

**class** 25:2 27:15

**classes** 25:3 26:19, 22

**classification** 20:21

**classified** 21:25

**cleaner** 9:13

**client** 14:13,14 38:8, 10 68:25 72:17,21

73:5,6 74:25

**clients** 18:13 21:2 38:2,15 44:3 73:12, 14,17

**closed** 69:15 72:11, 12

**Code** 36:12,21,22

**combined** 27:10

**comfortable** 9:16

**commencing** 38:11

**comment** 8:20 29:21

**communicated** 38:9

**communications** 46:9,10,16,23 73:19

**companies** 59:6

**Company** 51:8 58:2 62:12

**compared** 22:9,11 42:13 69:16

**compel** 54:15 55:19

**compensation** 43:2

**competently** 11:7

**complaint** 20:20,24

**complaints** 20:20

**complete** 9:10 24:2, 3,15,20 25:5 32:13 33:10 47:19

**completed** 8:15 44:4,13

**completely** 32:5 68:6

**component** 22:18 27:13

**comprised** 33:7

**computer** 42:16

**concept** 7:21

**conclude** 76:15

**concluded** 32:7 44:10

**conclusion** 60:25 67:14,19 76:11

**Conduct** 13:23 14:11 35:12 36:17,19,23 59:13,14 61:3,25

**confidential** 68:25 71:25 72:14,15,18,22 73:2,6 74:3,8,14 75:4,6,12,16 76:2

**confidentiality** 50:6, 7 68:22 73:9

**confirm** 43:24

**conflict** 15:24 19:18

**conflicts** 13:24

**conjecture** 63:19

**conjunction** 24:22

**connection** 6:2 18:16 36:10 39:22 40:6,7 41:7,22,23 44:5 45:12 46:3,11 47:23 48:5 53:23 54:6 64:21 73:17 76:24

**consent** 72:22,25 73:10 79:7

**consideration** 55:10

**considerations** 28:8 52:11

**considered** 32:14 33:11 34:22 35:5,9 46:11,21 50:23 73:5

**consists** 21:12 22:8

**constitutes** 18:18, 19 20:8

**construction** 11:23

**construe** 72:9

**consult** 40:17

**consultancy** 19:10

**consultant** 17:22 18:5 19:25

**consultants** 48:5

**consultation** 40:3

**consulted** 16:19 19:22

**consummated** 57:15,25

**contact** 10:19

**contacted** 40:19,25 41:2,6

**contained** 54:25

**contestable** 58:3

**contested** 47:16 58:8 59:8 61:16 63:17 64:5,9,12 66:22 67:16 69:7,17, 20 73:25

**contesting** 47:8 48:16

**context** 69:13

**continue** 25:9

**continued** 21:18

**continuing** 21:16

**contract** 38:21

**convenience** 35:22

**conversations** 18:4

**copies** 34:7

**copy** 23:23 62:6 79:19

**core** 72:3 73:23

**correct** 8:11 9:20,23 10:13 11:20,23 15:25 16:2,14,15 20:16,22, 25 26:10,17,18 31:14 32:11 34:17 36:19 38:18,19 40:23 42:6, 9,10,15,24,25 45:13 48:3,5,6,22 50:9 51:25 53:19 62:13, 14,17 65:11,14,17 69:10 71:17,18 76:18,19 78:11,14, 23,24

**correcting** 8:8

**correction** 7:19

**corrections** 8:15

**correctly** 38:2 57:4

**counsel** 11:22 21:10, 15 52:20 54:10,16 69:21 71:7 72:4

**county** 26:4

**couple** 12:6 37:12

**court** 7:9 9:8 12:17 13:4,11,17 14:7 19:12,14,18 22:19,23 52:21 60:2,3 62:2

**Court's** 55:10 74:11

**courts** 19:23 75:8

**creating** 31:23

**current** 11:15 26:3 29:9 53:22 65:22 67:15 74:15 75:23

**CV** 23:7,23 24:2 26:24 29:8 37:6

---

**D**

**Dallas/fort** 14:21

**danger** 75:11

**date** 15:4 43:7,13 46:4 47:2 57:16 62:8

**dated** 40:18 51:14 62:12

**dates** 62:14

**day** 63:25

**days** 32:24

**dead** 25:7,9

**deal** 30:9 59:25

**dealerships** 14:21, 23

**dealing** 22:13 63:11

**dealings** 41:12

**debtor** 47:7 62:24

**debtor's** 54:15 55:18

**decision** 45:6

**defense** 12:5

**definitions** 5:21

**degree** 18:3 21:14 43:10

**deliberate** 28:14

**deliver** 12:12 24:23

**delivering** 43:21

**delivery** 12:10 42:19

**depends** 44:7

**deposed** 6:15

**deposition** 5:13 8:10 9:17 10:20 16:3,6 30:25 39:10 43:17,24 44:2,25 45:4,10 56:16 78:23

**depositions** 44:3

**describe** 11:25 46:2, 25

**description** 47:19

**designated** 12:24 13:5

**designation** 23:17, 22 49:9,11 52:8 54:9, 19 55:16 71:21

**desire** 45:2

**determining** 19:2 62:3

**difficult** 11:21

**direction** 17:7

**disability** 26:3

**discernible** 59:10 61:4,19 70:5

**disciplinary** 13:22, 23 14:8,10 17:5 19:15 20:15 21:9,17, 20,21 25:19,20 29:18,19 34:4,12,18 35:8,12 36:9,13,16, 18,22 38:4,5 42:20 47:14 59:12,14 61:24 72:16

**discipline** 27:10

**disclose** 46:22 72:25 73:14

**disclosed** 74:9 76:20 79:11

**disclosure** 52:8 68:23 71:20,24 72:12,22 73:10,11

**disconnected** 71:23

**discussed** 77:25 78:18

**discussion** 23:10 30:17 50:10

**discussions** 10:24 11:3

**dismissed** 20:21 21:3

**disqualification** 9:22 15:17 18:17 27:24 28:20 29:7,12 34:15 40:8 43:4 47:15 54:16 55:19 62:24 75:3

**disqualified** 64:10 75:22

**disqualifies** 63:3

**disqualify** 5:18,25 15:18 32:17 33:13,19 39:25 40:4 45:22,23 55:3,5,12 58:10 74:12 75:17

**dissimilar** 58:13

**dissolution** 12:4

**distinction** 19:24

**distinguish** 18:8

**District** 13:11

**document** 32:3,22 33:23 39:5 43:20 45:21 50:11,15,18 58:20,21 59:3 61:12 65:4 66:25 67:23 68:3 76:12

**documents** 26:13, 15 30:23 31:13,25 32:14,25 33:10 34:7 39:6 42:2,4 44:8,12, 14,16,19,22 45:19 46:19,20 47:5,6,12 50:22 52:16 62:23 70:21 71:3,11,13 72:3 76:10,14

**dozen** 20:12

**dozens** 25:16

**DQ** 54:17 68:23

**draft** 26:6,8

**drafted** 25:23

**drafting** 25:24 29:17

31:23 32:3 55:9 72:3

**Drawhorn** 7:24 8:2,3 31:24 32:23 36:3 39:18 41:2 43:16,19, 23 44:24 46:5 49:19 50:11 56:17 60:15 79:16,18,20

**drawing** 19:23 42:3

**drop** 25:7,9

**duly** 5:4

---

**E**

**earlier** 35:13 57:22 58:20 76:9

**edit** 50:17

**effective** 57:16 62:13

**egregious** 35:17

**elaborate** 13:20

**electronic** 43:20

**element** 28:9 66:18

**elements** 21:19 73:23 74:10

**email** 16:25 17:13

**emails** 39:7

**employed** 11:10

**encompass** 40:5,10

**end** 25:10 63:25 71:19

**engaged** 73:18

**engagement** 16:25 19:6 37:25 38:18,21 39:16,20 40:5

**English** 25:10

**ensure** 30:15

**enter** 37:25

**entered** 40:14,16

**entire** 39:6 59:24

**entirety** 60:9

**entitled** 8:20 11:2 32:24 56:11

**entity** 5:20 53:18

**established** 48:14 53:16

**Estate** 5:23 6:8 8:4 23:17,21 49:9 53:17

**estimate** 22:7 43:9

**ethical** 16:10,12,18, 20 18:9 22:14,16 27:8 28:8 35:4

**ethically** 20:2

**ethics** 18:14 21:15 27:5,7 34:23,24 35:4

**evaluate** 45:18

**evening** 43:11,23

**event** 23:11 33:8 61:12

**evidence** 48:19,23 75:25

**ex-family** 20:19

**EXAMINATION** 5:6

**examined** 31:14 32:2 34:3,4

**exception** 32:19,21 44:23

**exceptions** 25:6 72:15,17 76:9

**exchange** 62:22

**excuse** 61:15 68:2 75:11

**execution** 57:15,22 64:17

**exhibit** 23:3,4,6,12, 16,21 30:8,10,11,12, 14,16 31:5,11 32:13 33:2 37:5 38:24,25 39:2,3,8,9 45:20 49:4,6,8 52:5,9

**exhibits** 30:20,23,25 31:7 43:22 47:9 79:13

**exist** 26:2 63:4

**expectation** 73:9

**expected** 68:15,19 71:21

**expended** 16:23

**expert** 9:22 12:18,24 15:23 16:4,7,12,17 17:23 18:8 19:14,24 21:12,13 22:21,24 23:17,22 31:14 39:23,24 40:6 42:12 44:25 49:10,11 71:20

**expertise** 18:3

**experts** 13:6 48:5

**explained** 56:18

**explore** 68:11

**exposed** 69:2

**express** 53:10 54:20 56:7

**expressed** 45:2 78:22

**extent** 34:25 46:6,17 49:21 56:2 71:10 79:10

**F**

**face** 48:21

**fact** 9:25 58:6 61:17 69:9

**facts** 46:18 48:14 52:15 56:3 71:22

**factual** 48:15,17,21 63:8

**factually** 55:13

**fair** 17:25 18:5 50:17, 19

**fallen** 13:3

**familiar** 7:2 8:10 38:5 50:25 51:19

**family** 12:3,22,23 20:17 22:9,11 61:15

**fatally** 68:17,21

**favor** 15:20 40:15

**federal** 47:14

**fee** 22:13 38:15

**fee-producing** 22:12

**feel** 29:20 52:15

**fees** 13:2,13 15:19 22:16 38:9

**file** 44:8 77:14

**filed** 6:3 15:21 21:2,6, 8,25 42:5 44:9 67:3,4

**filing** 17:14 50:12

**final** 44:19 45:12

**finalize** 65:5

**finalized** 63:12

**find** 35:4 51:13 67:2

**fine** 23:13 35:24,25 36:3 51:6,11,24

**firm** 5:19 11:11,15, 17,20 15:5,14 21:15 39:13 41:23 43:17 48:2 57:12

**firm's** 10:7

**firms** 16:20

**fiscal** 42:18

**five-minute** 60:14

**flip** 23:6 24:7 38:23 52:4

**folks'** 55:9

**follow** 38:13,16

**form** 24:24 55:13

**formal** 16:25 17:15

**formalized** 17:14

**formed** 44:19 55:21 57:7 60:10 78:17

**forming** 32:15 33:17 36:11 44:5 45:12 46:3,21 47:2 48:8

**forms** 17:9

**formulate** 52:13,14 58:19

**formulated** 47:17 58:18 68:7

**formulating** 33:11 34:16 35:5

**forthright** 20:25

**forward** 39:4

**founder** 11:17

**frequent** 12:8

**frequently** 12:22 17:3 19:4,5 28:7

**front** 24:12 31:7 62:6 67:23 68:3 72:10

**full** 24:25 36:14 37:11

**fully** 68:6 76:6,16 79:11

**fund** 71:16

**funded** 70:23

**funding** 69:24 70:10

**future** 77:14

**G**

**gather** 31:6

**generally** 16:24 17:6,7,12 38:13

**gently** 15:10

**give** 15:10 57:2 65:7 78:6

**giving** 78:5

**good** 5:8 25:10 54:3

**Gould** 39:19

**governs** 39:21

**gravamen** 72:19

**great** 31:10 59:25

**grievance** 21:24

**grievances** 21:6

**ground** 7:2 9:18

**grounded** 56:2

**group** 51:15

**guess** 33:2

**guessing** 20:13

**guys** 79:19

**H**

**half** 20:12 69:24 70:10,23

**hand** 18:16

**handle** 17:8,11,12 22:12

**handled** 73:4

**hands** 73:3

**happened** 72:10

**hard** 12:21

**HCRE** 5:24,25 6:8,9 8:5 51:16 53:17,19, 22 54:5,17 64:23

**hearing** 8:21 9:21 32:16 33:13,19 44:21 53:9 54:12,21 55:15, 22 56:13 60:23 76:7, 18 77:6,24 78:22 79:10

**hearings** 29:19

**helpful** 20:13

**helping** 49:22

**hey** 22:2

**higher** 42:21

**Highland** 5:10,11,12, 13,15 6:4 44:25 51:16 53:24,25 54:5 57:12 59:4,6 64:4,17, 21,22 67:17 69:23

**Highland's** 5:18

**Hold** 79:12

**Holdings** 50:23 59:17,22 61:9,15,16 64:7

**honest** 68:6

**hope** 57:4

**hospital** 12:7

**hour** 35:22 41:16 42:16,21,24

**hourly** 41:15,19

**housekeeping** 30:19

**Howell** 11:12 39:13

**hundred** 26:13

**hundreds** 25:17,20

**I**

**i.e.** 18:18

**identifiable** 66:11 68:24

**identified** 41:16 52:8

**identifies** 54:9

**ignores** 22:17

**impact** 64:18,25 65:8,9 66:5 67:11,14 76:16

**impacts** 65:21 66:6

**implementation** 29:18

**implication** 33:4

**implied** 33:3

**important** 8:23 9:5,7

**importantly** 63:10,13

**inaccuracy** 8:7

**include** 28:8 51:16

**included** 50:8

**including** 10:25 51:17

**income** 11:23

**Index** 31:13

**information** 46:20 68:23,25 71:25 72:15,16,17,18,19, 23,25 73:2,6,7,15 74:8,14 75:4,7,12,16 76:2

**initiated** 69:17

**inquire** 11:2

**instance** 48:20

**instant** 59:8

**intend** 29:15 30:24 32:15 33:12,18 54:24

**intention** 18:6,11

**interest** 13:25 15:25

**interested** 55:14

**interplay** 27:8 28:15

**interrupted** 56:8,11

**interrupting** 71:7

**involve** 61:11 63:9

**involved** 14:4,6,9 26:2 28:16 64:20 69:18 77:2

**involvement** 22:17

**irrebuttably** 74:15

**isolate** 57:23 59:7

**isolated** 61:14

**issue** 14:5,12 17:18 18:17 19:23,25 20:7 27:24 28:12 47:12,15 53:9 58:8 61:25 66:16

**issues** 12:10 13:10 15:25 16:10,12,18,20 18:9 19:19 45:4 61:11,17 63:17

**J**

**joinder** 66:13

**joint** 73:11

**judgment** 26:5,7,8 44:18

**judgments** 25:20 29:19

**justified** 52:15

**K**

**Kehr's** 45:10

**Ken** 5:9 36:4

**Keybank** 51:17,18

**Kim** 30:14 49:14

**kind** 17:9,13 19:9,10 50:2 63:22

**knew** 68:4

**L**

**La** 23:2 30:13

**lacking** 24:17

**language** 59:2

**large** 12:6 27:12 47:4

**largely** 47:6,7

**Laura** 39:18

**law** 5:19 11:11,13 12:3,22,23 15:5,13 16:20 18:21 21:15 22:9,11 24:22 27:5,7 39:13 42:19 48:2 61:17 62:2 74:19 75:15

**lawsuit** 12:14 14:16

**lawyer** 7:16,20 10:9 11:2 20:17 38:7 42:8 74:25 75:17,21

**lawyers** 5:9 73:4

**laying** 72:10

**lecture** 24:23 25:9 37:20

**lectures** 24:24 25:2,5

**Lee** 11:12 39:13

**legal** 12:12 33:17,25 34:24 42:2,14

**lend** 18:3

**lender** 73:20

**lenders** 51:17 59:5

**letter** 38:18,21 39:7, 12,16,20 40:5,18 41:17 54:18,19

**liability** 50:24 51:8 62:12,17 64:16

**licensing** 12:9

**likewise** 24:20

**limit** 46:7

**limited** 22:23 50:24 51:8 57:19 62:11,16 64:16

**list** 23:25 24:3,15,20 26:12,25 31:25 32:14 33:6,7,10

**listed** 33:22 37:9

**literally** 25:16

**literature** 35:2

**litigation** 59:8

**live** 13:9,12 77:12

**LLC** 6:2,9 8:4,5 50:24 51:4,10 53:25 59:17, 22 61:9,16 64:7 65:16,17

**LLC's** 23:17,22 49:9

**loan** 32:24 51:12,14, 19,23 54:6 57:14,21, 25 58:5,14,15,17,21 59:3,5,7 61:6,13 63:2,4,6,15,20,24 64:3,15,18,21 65:13 66:20 69:6,9,14 70:2, 9,23 71:11,16 72:11, 24 73:8,18,23

**located** 10:4,5,7,10

**long** 11:14 64:14,15

**longer** 25:3 74:3

**looked** 35:15,16 47:16 49:24,25 58:24

**lot** 22:2,4

**lower** 42:18

**LP** 5:10,13

**M**

**made** 26:16 31:25 44:18 48:7,13,19,24 69:25 76:9 78:4

**mail** 43:21

**major** 22:18

**make** 7:4 8:15,18 9:11 20:19 34:7 44:11 49:15 79:13

**makes** 20:24

**making** 28:6

**malpractice** 12:6

**Management** 5:10, 13

**March** 62:12

**marked** 23:4,12 30:12,16,24 39:3,9 49:15

**Martin** 39:18,19 41:9

**match** 13:7

**material** 61:19 64:8 66:5,16 67:8,11,25

**materiality** 58:4

**materially** 36:23,25

**matter** 7:21 8:21 14:13 17:8,12 18:15, 16,18,20 19:3 20:7,9 26:3 28:16 30:19 32:11 41:19,22,24 42:9,22,24 43:2,7,13 44:6,21 45:13 47:24 48:9,17 52:3,7 55:23 58:3,8,12 59:8 60:10, 23 61:16 62:4,23 63:5,17 64:5,9,12,24 66:22 67:16 69:7,17, 20 73:25 74:7,17,25 75:3 76:24 77:6

**matters** 13:14,18 16:4,7 17:5 21:2,25 22:12,14 24:16 25:13,21 75:7 77:24

**means** 37:18 61:12 67:2 68:7 69:13

**meant** 72:6

**medical** 12:6

**member** 20:19 21:16 29:24 30:4 43:16

**members** 47:23

**mention** 63:21

**merited** 75:4

**mind** 32:6 49:16 77:15

**minimize** 18:2

minute 60:5

minutes 35:23 36:6

mischaracterizing 17:21

misleading 33:4

misspeaking 35:13

misspoke 34:18

Model 13:24 14:8,11 18:21,22 35:10 36:12,21 59:11 61:3, 23 75:18,22

moment 21:17

money 22:5 73:8

months 57:25 62:18

moral 27:11

Morality 27:5,7

motion 5:18,24 9:22 15:17,18,20 32:16 33:13,19 34:15,20 39:24 40:3,8 43:4 45:22 54:15,17,25 55:2,3,4,11,18 58:10 68:24

motions 34:6 47:16 48:20 50:5 55:3,12 58:10 67:3 74:11

move 38:24,25

Multi-family 50:23 58:2 59:17,22 61:9, 16 64:7

multiple 15:23

N

Naman 11:12 39:12

named 57:20

names 14:23

narrow 58:8

National 51:17

nature 11:3,25 14:3

NCRE 67:15

necessity 12:25 13:13

needed 42:5

Nexpoint 5:23 6:8 8:4 23:16,21 49:9 53:17

night 31:19 32:7,8,10 43:21 47:10 50:14

nitpick 28:22 40:2

nonexpert 18:10,13

nongovernmental 12:8

not-for-profits 12:12

notebooks 24:25

noted 79:23

NREP 57:13 58:7,12 59:16 64:4,11 69:23

NREPDQ00009 39:5

nudge 15:10

number 25:13,25

numerous 19:22

O

oath 7:6,11 13:22 60:19

objection 46:5,6 56:17 78:4

obligated 46:22

obligation 7:12 37:19

obligations 64:18

obscure 29:16

occurred 64:14

October 62:9

offer 44:20 54:14 55:17 56:4 79:2

offering 52:2,7 54:23 60:23 76:6,17

offhand 14:17

Office 21:9

officer 29:20

offices 10:7

one's 15:8

opened 43:22

operate 21:20

operative 73:23

opinion 20:2 36:25 45:21 46:12 47:18 49:20 52:10,13,14, 15,18 53:10 54:18,20 56:4,6 57:17,24 58:19,25 59:2 60:9, 22 61:18 62:21 63:12,13 64:2,10 65:5,7 66:7 68:7,9 76:6,16

opinions 21:18 22:16 30:10 32:15 33:12,17 34:16,23 35:4,5,6 36:11 44:5, 20 45:12 46:4,21 47:3 48:8 52:2,3,7 54:9,14,24 55:8,14, 17,20 56:12,16,19 57:3,7,10,11 65:6 76:17,21 77:10 78:5, 6,9,14,17,18,21 79:2, 4,9

opportunity 8:13 44:15,17

opposed 17:23

opposition 34:14 39:24 40:13,15 55:4 68:18,21

order 25:11

ordering 79:19

organization 12:9

organized 47:5,9 77:18

original 51:4 65:16

originally 41:2

outcome 15:17 43:3

outline 42:4

overarching 27:10

overruled 15:19

owners 14:21

ownership 53:24

P

p.m. 36:7 60:17 79:23

paid 16:20

paragraph 71:20

Pardon 8:7

part 29:21,22 32:3 49:8 57:20 63:2 75:8, 19

participants 21:21

parties 14:18,20,23 29:2 34:13 47:17 48:16 50:3 57:18,21 70:20

partner 11:19,24 49:9

Partners 5:23,24 6:2, 8,9 8:4,5 23:17,21 51:18 53:17

party 12:14 15:20 47:7,8 73:8,13,14

pattern 24:21

pause 28:4

paying 38:2

pending 26:4

people 21:6 22:2 41:23

percent 22:15

percipient 10:2

performed 47:2

period 62:16

permit 9:10,13

permitted 10:19 22:20

person 9:9 25:8

personally 12:15 29:20

perspective 63:9

persuasive 63:7

Phillips 5:19,25 11:2

15:15 16:14 18:17 32:17 33:14,20 39:19,22,23,25 40:7, 20,25 41:4,7,13 42:23 43:17 46:17 47:23 54:4,16 55:19 57:12,20 58:7 61:6,7 63:3 64:3,9,20 69:18, 22 72:4 73:19

Phillips' 10:9 53:22 57:17 58:12 59:15 62:25 63:14 65:21 66:19,21 67:15 73:17

pick 77:14

place 62:15

places 7:7

plain 59:2

plan 45:14 76:6,17 77:5 78:5

play 18:2

played 32:2

point 26:24 40:10 49:20 57:19 58:19 63:11 65:2,5,7 66:6 69:15 70:3,4 73:9 77:14

pointing 63:19

points 71:23

portion 22:8 60:6 71:16

position 10:24 25:7 40:16 48:16 53:3 62:23 73:16

positions 48:17,22

potential 68:22

practice 12:2,3,22 16:23 21:12,23 22:8, 9 27:9

practicing 12:23

precise 46:15

precluded 53:4

preferably 38:10

pregnant 28:4

preparation 29:17

50:12

**prepare** 44:2 49:23

**prepared** 43:25 77:4

**prepares** 41:25

**preparing** 43:17 49:18

**present** 37:19 59:15 63:6 77:10 78:16,20, 21,24

**presentable** 61:22

**presentation** 32:7, 10

**presented** 24:5 25:3, 4 47:15 58:3 60:21 76:14

**presenting** 37:11 47:12

**presently** 78:9

**presents** 61:17

**presumed** 74:15

**pretty** 35:17

**previously** 13:10 26:21 41:6 67:17

**primarily** 12:3,4

**prior** 14:13 20:9 28:18,19,22 39:6 40:22 41:3,7,11 43:24 65:22 72:21 74:15 75:23 76:3 77:6

**proceeding** 5:11,17 19:15 20:9,15 49:2 58:9

**process** 9:17 17:2

**production** 22:13

**Professional** 13:23 14:10 27:14 35:12 36:17,19,22 37:9 59:13,14 61:3,24

**Professionalism** 34:25

**professor** 11:13 37:8,11,14

**progress** 64:6

**project** 70:15,21 71:3,4,13,16

**proof** 6:2 53:23 67:16

**property** 12:4 71:17

**provable** 55:13 56:2

**provide** 15:6

**provided** 18:15 46:18

**providing** 21:12 42:13

**provisions** 50:6,7

**public** 25:22 26:12 72:12

**publication** 26:9 27:18 28:3,7,13,16 29:3

**publications** 24:2 25:14,25

**publicly** 29:21

**published** 24:4,16 25:16 26:17 27:19,23 29:22

**publisher** 28:2

**pulled** 34:3,19

**pursuant** 39:21

**put** 23:2 29:25 30:14 39:2 49:4 52:20

---

**Q**

**quarters** 37:13

**question** 9:11 19:3, 13 22:4 24:14 26:11 28:23 29:4,5 40:13 42:6,15 46:12,15 52:20 53:13 56:23,24 57:4,5,6 63:11 66:4,8 74:20 75:10,13 78:4

**questions** 8:24 16:24 55:6 58:24 78:3 79:15,17

**quoted** 28:9 64:10

---

**R**

**raised** 50:4

**rate** 38:9 41:15,19 42:11,16,21

**rates** 42:18

**re-depose** 79:3

**reach** 66:18,24

**reaching** 76:11

**read** 34:8 51:2,21 60:4,6 65:11,13,16 72:10

**reading** 34:19

**ready** 49:20

**real** 5:23 6:8,22 8:4 23:17,21 43:10 49:9 53:17

**realm** 72:18

**reason** 11:6 33:5

**reasonable** 38:11

**reasonableness** 12:25 13:12

**rebuttal** 13:7

**recall** 14:15,18,20 40:21

**received** 32:22 43:20 47:4,9 51:2,21 58:22 63:22 68:4

**recently** 58:22 63:22

**recollect** 38:2

**recollection** 50:10

**record** 7:16 9:14 23:10 25:22 30:17

**refer** 5:12 6:7 18:7 32:9 51:3,9,22 69:3 70:22

**reference** 69:12

**referenced** 70:9

**referred** 33:9 70:20

**referring** 6:12 7:23 29:15,16 53:18 70:11,16

**reflect** 37:3 41:18

**reflected** 33:2 52:3

**reflection** 50:10

**regard** 12:5,9 13:9, 12,24 16:10 17:17 21:18 25:2 27:9 28:15 29:6,17 38:20 40:3 42:3,19 44:16 47:12,15 50:6 56:5,7 57:13,20,21 58:8,19 59:16 61:8 63:12,15 66:7,21 67:3,5 69:24 72:20 75:8

**regularly** 38:8

**regulation** 27:9

**relate** 66:3

**related** 5:11 18:20 20:8 34:13 43:3 63:18 64:24 65:23 66:13,23 67:7 73:24 74:8,17 75:2,9,25

**relates** 5:17

**relating** 28:20 71:3

**relationship** 40:15 41:3 58:4,15,16 63:7 64:8 69:5,6

**release** 32:24 33:9 43:20 45:20 58:21 59:3,4 61:12 62:5,15, 20 63:20 64:2,14,17, 25 65:11,20 66:11,15 67:11,14,18 76:11,15 77:21

**relevance** 48:25

**relevant** 47:13 48:18 55:10

**relied** 46:18,19

**religious** 27:13

**remind** 15:9,10

**remotely** 7:7

**render** 21:18 45:21

**rendered** 61:5,7

**repeat** 59:19,24

**reporter** 9:8 31:4 60:2,4 79:18

**represent** 12:8 70:19

**representation** 5:19 14:12,14 18:19 19:9 38:12 41:8,10,11 53:22 57:18,19 58:7, 12 59:15 62:25 63:5 64:19,22 65:22 66:20,21 67:15 69:2, 16 71:23,24 72:21 73:25 74:16 76:3

**representations** 61:20,22 66:8,14 74:16 75:24

**representative** 26:11

**represented** 7:20 38:8 54:4 57:12 69:23

**representing** 5:25 21:24 64:11

**represents** 74:25

**requested** 60:6

**requirement** 75:16, 21

**requirements** 24:22

**reserve** 79:3,16

**respect** 13:17 14:7 15:24 16:17 18:9,12, 14,15 20:7 44:13,19 48:13 54:19

**respective** 34:6

**response** 34:20 40:4

**responses** 34:6 45:22 48:20 50:5 67:4

**responsibility** 27:11,15 37:9

**responsive** 55:12 58:10

**restated** 51:8 55:2 58:2 59:16,21 61:8, 15 64:6

**restatement** 55:4

**result** 17:6,7 22:16 59:3

---

**result's** 26:7

**resulted** 58:11

**resum** 26:24

**retained** 15:5,14 16:12,14,17 17:4

**retainer** 16:22 17:15

**retention** 39:21 41:17

**revealed** 75:12

**review** 8:14 76:10 79:22

**reviewed** 36:10 47:13 58:23 71:2,14

**riddle** 77:21

**role** 18:2 31:23 49:18,22 62:20

**room** 9:6 10:12,15 25:8

**rule** 14:9 18:20,22 35:10,11 38:4,5,13, 19 50:5,6 59:10,13 72:20 74:6,11 75:20, 22,23

**rules** 7:2 9:18 13:22, 23,24 14:4,5,8,9,10, 11,12 28:15 34:4,12, 18 35:9,11,12,15 36:9,10,13,16,18 47:14 49:23 50:2 59:11,12,14 61:2,3, 23,24 64:11 72:16 75:18

**ruling** 62:3

**S**

**sameness** 66:12

**sat** 43:25

**scale** 47:6

**school** 11:13 24:22 25:15

**scope** 22:24 50:4

**Scouts** 35:18

**screen** 23:3 27:2 31:6

**screening** 20:21

**search** 34:23 35:2

**searched** 35:3

**Section** 75:17

**Security** 32:25

**seeking** 62:24

**Selman** 5:1,3,8 6:1, 15 7:1 8:1 9:1 10:1,4 11:1,10 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1,7,15 24:1 25:1 26:1,19 27:1 28:1 29:1 30:1 31:1,6 32:1 33:1 34:1 35:1, 18 36:1,8 37:1 38:1 39:1,11 40:1 41:1,15 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1,13 55:1,16 56:1 57:1 58:1 59:1,20 60:1,8,18 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1,15,19 69:1 70:1 71:1,22 72:1 73:1 74:1 75:1 76:1,5 77:1 78:1 79:1

**semantics** 55:24

**seminar** 27:6,8,13

**send** 16:23 79:21

**senior** 27:16

**sense** 26:11,12 27:25 28:5,6

**sentence** 54:22 68:14 72:9

**separate** 7:7

**September** 51:15 57:15,16 69:10

**series** 39:6

**service** 25:18 39:22

**services** 12:13 38:15 40:6 42:14,19,20 61:5,6 63:14

**short** 26:12,15

**showing** 57:16

**sides** 44:8

**sign** 79:22

**signed** 25:21,24

**significance** 72:2

**significantly** 13:3

**signing** 29:18

**similar** 18:21 61:11 63:16 64:5 66:9 70:7 73:25

**similarity** 61:4,19

**simply** 66:22 77:2

**sir** 27:4 30:7 31:4,21 35:19 37:7

**sit** 14:22 28:10 65:10

**sitting** 67:23 68:3

**Smith** 11:12 39:13

**sort** 48:18

**source** 28:17

**sources** 72:13

**speaking** 17:6,7

**speaks** 38:20

**specialists** 12:23

**specific** 14:2 16:5 17:17,18 48:10

**specifically** 33:2 55:25

**spend** 17:15 43:15

**spent** 43:7

**spoke** 49:19

**spoken** 28:12 47:22 48:4

**sporadic** 12:7

**spouse** 20:19

**staff** 41:25 47:25

**standard** 13:2,4,8 19:6 27:16,17 37:3 62:2

**standpoint** 56:3

**state** 9:2 13:11 18:21 21:20 30:2 74:18

**statements** 28:7

**states** 38:7

**step** 37:18

**straight** 5:21 50:20

**strike** 78:19

**struggling** 63:23

**studied** 34:3 47:11 58:22

**study** 50:5 65:4

**subject** 10:20 20:14 26:9 55:22 76:8

**submission** 27:25

**submitted** 27:18 29:2

**subsequent** 14:12 18:19 64:16,22 69:2 74:16 75:3

**substance** 46:11 58:5

**substantial** 58:16 62:15

**substantially** 18:20 20:8 61:11 63:16 64:5,24 65:23 66:9, 13,23 70:7 73:24 74:7,17 75:2,9,24

**substitute** 37:21

**summarized** 28:19

**summary** 30:9 52:4

**supply** 37:13,15

**support** 34:14

**Supreme** 13:4

**surprise** 15:9

**suspect** 49:22

**sustained** 78:3

**sworn** 5:4 7:8 10:21, 25

**system** 21:17,20,22 27:8

**systems** 12:7

**T**

**table** 13:10,18

**takes** 72:17

**taking** 45:9 48:20

**talk** 9:7 25:8 72:14

**talked** 43:19 58:20

**talking** 9:9 15:11 44:24 46:8 50:3,21 51:5 58:11 69:5,8 73:21,22

**tasks** 46:25

**taught** 26:21,22 37:12

**teach** 26:20 37:10

**teaching** 26:21 37:13,15

**technical** 20:16,22

**technically** 11:21

**telephone** 16:24 17:13

**telling** 30:22 35:15 76:25

**term** 69:3 70:17

**terms** 16:22 18:2 19:6 50:3,20 63:23

**terribly** 55:8,9

**test** 75:20

**testified** 5:4 12:17 13:9,11,17 14:7 15:22 19:12,13,17,20 60:22

**testify** 9:21 11:7 12:24 16:8 22:20 32:16 33:12,18 52:24 53:2 54:11,13,24 55:15,16,21 56:12,20 57:2 68:15,19 71:22 77:23 78:10 79:9

**testifying** 7:8 13:5,6, 7

**testimony** 7:5 14:3 15:2,6 16:4,7 17:6 21:12 22:24 45:10

54:23 60:5 77:13

**Texas** 10:8 13:22
14:7 18:20 21:20
30:5,6 34:23,24 35:3
36:13,16,18,22 38:4,
5 47:14 59:12,13
61:2,24 75:22

**thing** 30:18 34:17
50:21 51:5 59:19

**things** 22:10 24:4
26:16 40:11 72:5

**third-party** 28:2,17

**thought** 59:24 67:10

**threw** 24:25

**time** 9:8,9 11:22
13:11,17 14:6 15:12
16:11,13,19,23
17:14,17 25:15,18
26:3 33:7 37:12
38:11 43:6,15 49:24
50:12,14 52:11 57:22
62:16 63:5,6 65:4
69:16 70:4 71:23
77:2 78:16,20,24
79:23

**timeline** 68:16,20
69:4,12

**times** 6:17 12:20
15:23 16:16 18:24
19:21 20:4,5,11
58:23 72:2

**tip** 36:14

**title** 11:22

**titled** 23:16

**today** 5:11,17 11:7
13:10,18 18:16 43:24
51:22 52:23 53:5,9,
11 58:11 77:11,19,25
78:19,22 79:11

**told** 28:18 29:4 53:11
56:13 78:10

**tongue** 36:14

**track** 19:8

**transaction** 63:2
69:25 70:4,10,11,14,
22 72:2,3 73:4

**transactional** 68:16,
20 69:4,12

**transactions** 66:12
67:6 68:17,18,21
69:19 70:3,7

**transcript** 7:17,22
8:14,19

**transcripts** 8:11

**transmission** 74:14
75:6,15

**transmissions**
73:22

**transmitted** 30:19
39:8 45:19 50:13
73:20 75:5 76:2

**trial** 15:23 16:5,8
33:18 52:24 53:3
78:10 79:17

**tribunal** 19:14,18
22:20,23

**true** 23:23 52:6 65:24

**truth** 7:12

**truthfully** 11:7

**two-part** 66:4

**two-thirds** 68:13

**twofold** 24:15

---

**U**

**ultimately** 56:5
76:15

**unable** 20:3 22:7
65:19

**undergraduate**
25:15

**underlying** 54:15
55:18 69:19

**understand** 5:14
6:11 7:5,9,13,18,21
8:16,18,23,25 9:3,14,
17 10:18,23 11:4
13:19 19:11 44:24
53:7 60:19 62:2,19
67:9 75:15,19 79:4,8

**understanding** 6:5

57:3 64:13 71:6,15
74:6,13,20 75:13

**understood** 8:6
22:19 33:5 57:4 77:3

**Unicorn** 70:13,15,18,
21 71:3,4,12,13,17

**uniformly** 20:20 21:3

**universe** 44:12

**University** 11:13

**unmanageable**
25:13

**unrelated** 14:13
32:11

**usual** 9:5

---

**V**

**vague** 46:13

**view** 29:8

**violation** 59:10 61:2,
23 72:19

**volume** 42:4 47:8

**volumes** 47:5

---

**W**

**Waco** 10:8

**wait** 15:11

**walk** 25:8

**whatsoever** 63:18
65:20

**wholly** 58:13

**Wick** 5:19,25 10:9
11:2 15:15 16:14
18:17 32:17 33:14,20
39:19,22,23,25 40:7,
20,25 41:4,7,13
42:23 43:17 46:17
47:23 53:22 54:4,16
55:19 57:12,17,20
58:7,12 59:15 61:6,7
62:25 63:3,14 64:3,9,
20 65:21 66:19,21
67:15 69:18,22 72:4
73:17,19

**witnesses** 12:24
13:7

**word** 18:5

**words** 13:16 14:4

**work** 12:5,7 17:19
18:8,10,12 22:17
28:19,24 29:6,15,16,
22 41:21,23 42:7,9,
12,13 44:4,10,13
45:11,14,15 46:7
47:18,20,24 64:3
69:6,7 76:23 77:5,9,
10,20

**worked** 69:14

**working** 17:22 42:4

**works** 28:25

**Worth** 14:22

**write** 24:23 72:8

**writing** 24:21 38:10

**writings** 23:25

**written** 24:4,21,24
25:5,14 26:5,16
28:14,25 38:20

**wrong** 36:13

**wrote** 25:19

---

**Y**

**y'all** 35:25 42:5 77:19

**year** 42:18

**years** 15:3 16:13
20:18 21:16

**yesterday** 43:11,19,
23