# EXHIBIT 76

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
|  | § |  |
| Debtor. | § |  |

## DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY WICK PHILLIPS GOULD & MARTIN, LLP AS COUNSEL TO HCRE PARTNERS, LLC AND FOR RELATED RELIEF

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



1934054210414000000000008

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

    A.    Wick Phillips Advises the Debtor in Connection with the Transactions that Are the Subject of HCRE's Claim ...................................................................... 3

    B.    The Debtor Files for Bankruptcy and Mr. Dondero Signs and Causes to Be Filed a Proof of Claim on Behalf of HCRE ............................................................ 5

    C.    While Preparing for Depositions, the Debtor Learns that Wick Phillips Represented HCMLP in Matters Substantially Related to the Resolution of HCRE's Claim and Demands that Wick Phillips Withdraw as Counsel to HCRE ....................................................................................................... 7

    D.    Wick Phillips Denies Any Conflict Exists and Refuses to Resign ....................... 9

LEGAL STANDARD ................................................................................................ 10

ARGUMENT ........................................................................................................... 15

    A.    The Substantial Relationship Test Is Satisfied .................................................. 15

        1.    An Attorney-Client Relationship Existed Between HCMLP and Wick Phillips ....................................................................... 15

        2.    The Previous and Current Representations Are Substantially Related ....................................................................... 16

    B.    The Appearance-of-Impropriety Standard Is Satisfied ....................................... 18

CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Acad. of Allergy & Asthma in Primary Care v. Louisiana Health Serv. & Indem. Co.*,
    384 F. Supp. 3d 644 (E.D. La. 2018) .......................................................................... 13, 15, 17

*Asgaard Funding LLC v. ReynoldsStrong LLC*,
    426 F. Supp. 3d. 292 (N.D. Tex. 2019) ....................................................................... 11, 12, 15

*City of El Paso v. Sales-Porras Soule*,
    6 F. Supp. 2d 616 (W.D. Tex. 1998) ........................................................................... 17

*Green v. Administrators of Tulane Education Fund*,
    No. 97-1869, 1998 WL 24424 at *1 (E.D. La. Jan. 23, 1998) ......................................... passim

*Grosser-Samuels v. Jacquelin Designs Enters, Inc.*,
    448 F. Supp. 2d 772 (N.D. Tex. 2006 ........................................................................... passim

*In re American Airlines*,
    972 F.2d 605 (5th Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) ..................................... passim

*In re Dresser Indus., Inc.*,
    972 F.2d 540 (5th Cir.1992) ....................................................................................... 10, 11, 13, 15

*In re ProEducation Int'l, Inc.*,
    587 F.3d 296 (5th Cir. 2009) ....................................................................................... 11

*Islander East Rental Program v. Ferguson*,
    917 F. Supp. 504 (S.D. Tex. 1996) .............................................................................. 15, 19, 20, 21

*Musicus v. Westinghouse Elec. Corp.*,
    621 F.2d 742 (5th Cir. 1980) ....................................................................................... 10

*Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*,
    559 F.2d 250 (5th Cir. 1977) ....................................................................................... 13, 14

DOCS_NY:42834.6 36027/002

Highland Capital Management, L.P., the debtor and debtor-in-possession (the "Debtor" or "HCMLP") in the above-captioned chapter 11 case ("Bankruptcy Case"), by and through its undersigned counsel, files this memorandum of law in support of its *Motion to Disqualify Wick Phillips Gould & Martin, LLP as Counsel to HCRE Partners, LLC and for Related Relief* (the "Motion").  In support of its Motion, the Debtor states the following:

## PRELIMINARY STATEMENT

1.     Wick Phillips Gould & Martin, LLP ("Wick Phillips") is a law firm that represents HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) ("HCRE") and other entities directly or indirectly owned and/or controlled by James Dondero in four separate matters arising in the Bankruptcy Case.

2.     In one of those matters, Wick Phillips is prosecuting a claim on behalf of HCRE arising from an investment that the Debtor and HCRE jointly made in 2018.[2]  In its claim, HCRE contends that "all or a portion" of the Debtor's ownership interest in the investment "may" in fact be HCRE's property because the organizational documents "improperly allocate[] the ownership percentage of the members thereto due to mutual mistake, lack of consideration, and/or failure of consideration.  As such, HCRE[] has a claim to reform, rescind, and/or modify the agreement."

3.     Mr. Dondero (a) signed the underlying agreements on behalf of the Debtor *and* HCRE, (b) signed the proof of claim on behalf of HCRE, and (c) caused his personal counsel to file HCRE's Claim (as that term is defined below) in the Bankruptcy Case before Wick Phillips appeared on behalf of HCRE.

---

[2] Wick Phillips also represents (a) HCRE in defense of an adversary proceeding commenced by the Debtor to collect on certain promissory notes and recover property of the Debtor's estate (Adv. Pro. 21-03007-sgj); (b) Highland Capital Management Services, Inc. in defense of an adversary proceeding commenced by the Debtor to collect on certain promissory notes and recover property of the Debtor's estate (Adv. Pro. 21-03006-sgj); and (c) NexBank Capital, Inc., and related entities in the prosecution of an administrative claim (*see* Docket No. 1888).  The Debtor reserves the right to seek the disqualification of Wick Phillips in all or any of these matters as and if circumstances warrant.

DOCS_NY:42834.6 36027/002

4.      After the Debtor objected to HCRE's Claim, Wick Phillips filed HCRE's response, counsel for the parties negotiated a scheduling order, and the parties exchanged written discovery and documents responsive thereto.  On March 29, 2021, while the Debtor was preparing for depositions, it became apparent that Wick Phillips served as HCMLP's counsel in connection with the underlying transactions that are the subject of the Claim.

5.      The Debtor immediately wrote to HCRE's counsel and (a) adjourned the depositions, (b) demanded that Wick Phillips (i) withdraw as HCRE's counsel, (ii) return the Debtor's files to it, and (iii) disclose the full nature and scope of Wick Phillips' prior representation of the Debtor, and (c) otherwise reserved its rights.  After almost two weeks, Wick Phillips disputed the Debtor's contention, claiming that it only represented HCRE in the underlying transactions and that HCMLP's in-house tax counsel, Mark Patrick and Paul Broaddus, represented HCMLP's interests.  Wick Phillips failed to provide any engagement letter or other documentary evidence to support its position and ignored completely the undisputed fact that it jointly represented HCMLP and HCRE (among other entities) in connection with the debt financing that made the investment at issue possible.

6.      Based on the foregoing and the facts set forth below, the Debtor respectfully requests that the Court enter an order:

- Disqualifying Wick Phillips from serving as counsel to HCRE in connection with the prosecution of HCRE's Claim;

- Directing Wick Phillips to immediately turnover to the Debtor all files and records relating to the LLC Agreement, the Loan Agreement, and the Restated LLC Agreement (as those terms are defined below);

- Directing HCRE to reimburse the Debtor for all costs and fees incurred in making this Motion, including reasonable attorneys' fees;

- Directing HCRE to engage substitute counsel within fourteen (14) days from the entry of an Order granting the Motion to represent it in connection with the prosecution of HCRE's Claim;

- Directing HCRE to disclose all communications it (or anyone purporting to act on its behalf, including Wick Phillips) has had with Mark Patrick and Paul Broaddus concerning HCRE's Claim; and

- Granting the Debtor such other and further relief as the Court deems just and proper.

## FACTUAL BACKGROUND

A.    **Wick Phillips Advises the Debtor in Connection with the Transactions that Are the Subject of HCRE's Claim**

7.        On or about August 23, 2018, the Debtor and HCRE (together, the "<u>Parties</u>") entered into that certain *Limited Liability Company Agreement* (the "<u>LLC Agreement</u>") pursuant to which SE Multifamily Holdings, LLC ("<u>SE Multifamily</u>") was created.  **Morris Dec. Ex. A.**[3]

8.        Mr. Dondero signed the LLC Agreement on behalf of the Debtor **and** HCRE. **Morris Dec. Ex. A** at 17 (Mr. Dondero signed as President of Strand Advisors, Inc., HCMLP's general partner, and as the Manager of HCRE).

9.        The LLC Agreement provides that "[e]xcept with respect to particular items specified in this Agreement, HCRE shall have a 51% ownership interest and HCMLP shall have a 49% ownership interest, respectively, in all assets and activities of the Company, including, without limitation, rights to receive distributions of cash and assets in-kind in the process of winding down and liquidating" SE Multifamily pursuant to the LLC Agreement (the "<u>Allocation</u>"). **Morris Dec. Ex. A** ¶1.7.  The Allocation was consistent with the Parties' respective initial capital contributions.  **Morris Dec. Ex. A** ¶ 2.1 and Schedule A.

10.        SE Multifamily was created to, among other things, acquire and improve real property on behalf of its members, the Debtor and HCRE.  **Morris Dec. Ex. A** ¶1.3.  In order to finance their investment in SE Multifamily, the Debtor and HCRE, among other borrowers,

---

[3] Citations to "<u>Morris Dec.</u>" are to the *Declaration of John A. Morris Submitted in Support of the Debtor's Motion to Disqualify Wick Phillips Gould & Martin, LLP as Counsel to HCRE Partners, LLC and for Related Relief* being filed contemporaneously with the Motion.

obtained a secured loan from Keybank National Association ("Keybank"), as administrative agent and lender, as of September 18, 2018. **Morris Dec. Ex. B** (the "Loan Agreement").[4]

11.    Pursuant to the Loan Agreement, Keybank provided up to $556,275,000 in secured loans to the Borrowers, including HCMLP and HCRE. The Loan Agreement also provided, among other things, that (a) all of the Borrowers (including HCMLP) were jointly and severally liable to Keybank for all amounts borrowed under the Loan Agreement, but that (b) HCRE was designated as the "Lead Borrower" with the sole authority to request and obtain borrowings and to determine how loan proceeds would be distributed among the Borrowers. **Morris Dec. Ex. B** ¶¶1.05(a), (b).

12.    The Loan Agreement expressly identified Wick Phillips as counsel to the "Borrower." **Morris Dec. Ex. B** ¶¶ 4.01(b), 9.01(a). HCMLP was a "Borrower" under the Loan Agreement. **Morris Dec. Ex. B** at 3.

13.    Attached to the Loan Agreement as Schedule 3.15 were organizational charts prepared by the Borrowers for each project. Wick Phillips worked with HCMLP to make sure that the organizational charts were accurate. *See*, *e.g.*, **Morris Dec. Ex. C**. In every one of the twenty-two (22) organizational charts in which SE Multifamily was a participant, the Allocation of the Parties' interests in SE Multifamily was depicted consistently with the LLC Agreement (*i.e.*, 51% to HCRE and 49% to HCMLP). *See* **Morris Dec. Ex. B**, Schedule 3.15.

14.    On or about March 15, 2019, the Parties entered into an *Amended and Restated Limited Liability Company Agreement*, dated as of August 23, 2018 (the "Restated LLC Agreement") in order to admit a new member. **Morris Dec. Ex. D**.

---

[4] Upon information and belief, the "Borrowers" under the Loan Agreement were all entities directly or indirectly owned and/or controlled by Mr. Dondero, including HCMLP, HCRE, The Dugaboy Investment Trust, the SLHC Trust, NexPoint Advisors, L.P., NexPoint Real Estate Advisors IV, L.P., SE Multifamily Reit Holdings, LLC, and certain property owners. **Morris Dec. Ex.** B at 3 (definition of "Borrowers").

4

15.     Mr. Dondero signed the Restated LLC Agreement on behalf of the Debtor *and* HCRE.  **Morris Dec. Ex. D** at 18 (Mr. Dondero signed as President of Strand Advisors, Inc., the HCMLP's general partner, and as the Manager of HCRE).

16.     Pursuant to the Restated LLC Agreement, BH Equities, LLC ("BH Equities") acquired 6% of the membership interests in SE Multifamily.  Upon information and belief, BH Equities is unrelated to the Debtor or Mr. Dondero.

17.     HCRE, the Debtor, and BH Equities adjusted the original Allocation to take into account BH Equities' newly acquired membership interests.  Specifically, the Allocation was adjusted to reflect that HCRE's membership interests were diluted by 6%, from 51% to 47.94%; HCMLP's membership interests were diluted by 6%, from 49% to 46.06%; and BH Equities obtained the remaining 6% of SE Multifamily's membership interests (the "Revised Allocation").

**Morris Dec. Ex. D** ¶1.7.[5]

## B.      The Debtor Files for Bankruptcy and Mr. Dondero Signs and Causes to Be Filed a Proof of Claim on Behalf of HCRE

18.     On October 16, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Highland Bankruptcy Case").

19.     On December 4, 2019, the Delaware Court entered an order transferring venue of the Highland Bankruptcy Case to this Court [Docket No. 186].[6]

20.     On April 8, 2020, HCRE filed a general unsecured, non-priority claim that was denoted by the Debtor's claims agent as claim number 146 ("HCRE's Claim").  Mr. Dondero signed HCRE's Claim as HCRE's authorized agent and his personal counsel (the law firm of

---

[5] The Revised Allocation is repeated in Schedule A to the Restated LLC Agreement alongside the capital contributions of each member.  **Morris Dec. Ex. D**, Schedule A.

[6] All docket numbers refer to the main docket for the Bankruptcy Case maintained by this Court.

5

Bonds Ellis Eppich Schafer Jones LLP) was identified as the contact party.  A true and correct copy of HCRE's Claim is attached as **Morris Dec. Ex. E**.

21.      In an exhibit attached to HCRE's Claim, HCRE asserts that it:

may be entitled to distributions out of SE Multifamily, but such distributions have not been made because of the actions or inactions of the Debtor.  Additionally, [HCRE] contends that all or a portion of Debtor's equity, ownership, economic rights, equitable or beneficial interests in SE Multifamily does [not] belong to the Debtor or may be the property of [HCRE].  Accordingly, [HCRE] may have a claim against the Debtor.  [HCRE] has requested information from the Debtor to ascertain the exact amount of its claim.  This process is on-going.  Additionally, this process has been delayed due to the outbreak of the Coronavirus.  [HCRE] is continuing to work to ascertain the exact amount of its claim and will update its claim in the next ninety days.

**Morris Dec. Ex. E**, Exhibit. A.

22.      HCRE (a) did not attach any documentation to support its Claim; (b) made no further substantive comment, argument, or offer of proof in support of its Claim; and (c) more than a year later, has not updated its Claim or otherwise asserted a liquidated claim amount.

23.      On July 30, 2020, the Debtor filed its *First Omnibus Objection to Certain (A) Duplicate Claims; (B) Overstated Claims; (C) Late-Filed Claims; (D) Satisfied Claims; (E) No-Liability Claims; and (F) Insufficient-Documentation Claims* [Docket No. 906] (the "Claims Objection").  **Morris Dec. Ex. F**. As part of the Claims Objection, the Debtor objected to HCRE's Claim on the ground that it has no liability.

24.      On October 19, 2020, Wick Phillips filed HCRE's response to the Claims Objection [Docket No. 1212] (the "Response").  **Morris Dec. Ex. G**.  In its Response, HCRE asserted that the "organizational documents" relating to SE Multifamily (and that Mr. Dondero signed on behalf of the Debtor *and* HCRE) "improperly allocate[] the ownership percentages of the members thereto due to mutual mistake, lack of consideration, and/or failure of consideration.  As such, HCRE[] has a claim to reform, rescind and/or modify the agreement."  **Morris Dec. Ex. G** ¶5.

6

25.     On December 11, 2020, the Court entered an Order [Docket No. 1568]   approving a stipulation between the Parties that set forth a discovery schedule.  The Parties thereafter timely exchanged written document requests, produced documents, and served deposition notices.

26.     Specifically, the Debtor served (a) a deposition notice on HCRE pursuant to Federal Rule of Civil Procedure 30(b)(6), as well as (b) a notice for the deposition of Mr. Dondero.  HCRE served deposition notices on Mark Patrick and Paul Broaddus, two tax attorneys who were employed by HCMLP at the time the LLC Agreement, the Loan Agreement, and the Restated LLC Agreement were drafted and executed.

**C.     While Preparing for Depositions, the Debtor Learns that Wick Phillips Represented HCMLP in Matters Substantially Related to the Resolution of HCRE's Claim and Demands that Wick Phillips Withdraw as Counsel to HCRE**

27.     While preparing to take the depositions of Messrs. Patrick and Broaddus, outside counsel for the Debtor was reviewing documents and learned that Wicks Phillips represented HCMLP in the negotiation of the Loan Agreement that was used by the Parties to finance their investment in SE Multifamily.  *See* **Morris Dec. Ex. B** ¶¶ 4.01(b), 9.01(a).  Based on e-mail communications between Wick Phillips attorneys (including DC Sauter and Rachel Sam)[7] and certain non-attorneys at HCMLP, it also appeared that Wick Phillips represented the Debtor— either solely or jointly with HCRE—in connection with the drafting and negotiation of the original LLC Agreement that HCRE now contends should be rescinded based on "mutual mistake."

28.     On Monday, March 29, 2021—the day that they discovered that Wick Phillips represented HCMLP in at least some aspects of the underlying transactions—Debtor's counsel wrote to Wick Phillips the following:

---

[7] DC Sauter was a partner at Wick Phillips when the transactions at issue were consummated, and he rendered legal advice in connection therewith.  Mr. Sauter is now the General Counsel of NexPoint Advisors, L.P., an entity owned and controlled by Mr. Dondero.

This morning while preparing for tomorrow's deposition I noticed in the attached Loan Agreement that Wicks Phillips represented HCMLP in that transaction.  See Article IX section 9.01(a).

It also appears that Wicks Phillips represented HCMLP in the drafting of the LCC documents that HCRE now contends are void due to mutual mistake and lack of consideration (it is unclear whether it was a joint representation with HCRE, but we see that as irrelevant).   We do not understand how Wicks Phillips can represent HCRE in this matter given what appear to be substantial and unavoidable conflicts, although if you have a waiver letter, please provide that.

In light of Wicks Phillips' prior representation of HCMLP in the transaction that is at the heart of this litigation, the Debtor (a) demands that Wicks Phillips (i) immediately withdraw as counsel to HCRE in connection with this adversary proceeding, (ii) provide to the Debtor all files relating to Wicks Phillips' engagement by the Debtor in the SE Multifamily transaction (including the Key Bank loan), including any engagement letter(s), and (iii) disclose the full nature and scope of Wicks Phillip's representation in the SE Multifamily transaction (including the Key Bank loan), and  (b) intends to adjourn tomorrow's depositions.

Please acknowledge your receipt of this e-mail as soon as possible.

**Morris Dec. Ex. H.**

29.     On Tuesday, March 30, 2021, Debtor's counsel told Wick Phillips that the Debtor needed a response by the end of the week.  Later that day, the Debtor informed Wick Phillips that it had run a search for "Wick Phillips" over the Debtor's document production and came up with over 200 "hits."  **Morris Dec. Ex. I**.

30.     During the next several days, the Debtor continued to press for copies of Wick Phillips' engagement letters relating to the matters at issue and for prompt answers.  In response, Wick Phillips failed to provide its engagement letters or any substantive response, stating only that "[w]e are still looking into this.  I expect to have a response for you early next week."  The Debtor expressed concern that Wick Philips might "need almost a week to determine who Wick Phillips represented in these transactions," and otherwise reserved its rights.  **Morris Dec. Ex. I**.

8

D.  **Wick Phillips Denies Any Conflict Exists and Refuses to Resign**

31.    On April 9, 2021, almost two weeks after the Debtor first raised the issue, Wick Phillips wrote to Debtor's counsel denying that it had any conflict and contending that (a) Wick Phillips represented *only* HCRE and NexPoint Real Estate Advisors in connection with the negotiation of the LLC Agreement, and (b) Mark Patrick, "an HCMLP employee, drafted the SE Multifamily LLC Agreement in house" with the assistance of outside tax counsel.  **Morris Dec. Ex. J**.

32.    Wick Phillips completely ignored its representation of HCMLP in connection with the Keybank loan, including the negotiation of the Loan Agreement on behalf of HCRE and HCMLP, and failed to provide any engagement letters or other documentary evidence establishing that it *only* represented HCRE (and NexPoint Real Estate Advisors) in connection with the negotiation of the LLC Agreement.  *See* **Morris Dec. Ex. J**.

33.    Moreover, Wick Phillips offered no explanation (credible or otherwise) as to how it could have *only* represented HCRE when Mr. Dondero signed the LLC Agreement on behalf of *both* HCRE and HCMLP.

34.    Tellingly, Wick Phillips suggested that "[i]f you search the emails of Mark Patrick and Paul Broaddus, emails that are in your sole custody and control, you will see direct communications between Mr. Patrick and Mr. Broaddus and Hunton & Williams on this matter. Accordingly, your assertion of conflict is unwarranted."  **Morris Dec. Ex. J**.

35.    Wick Phillips offered no explanation as to how it knows of the existence of privileged communications between the Debtor and its counsel that are supposedly within the Debtor's exclusive control.  Upon information and belief, Wick Phillips has communicated with Mr. Patrick and Mr. Broaddus—the very tax attorneys that Wick Phillips now contends solely

9

represented HCMLP in its "negotiations" with Wick Phillips, as counsel to HCRE—in connection with the litigation of HCRE's Claim.

## **LEGAL STANDARD**

36.     Courts are obligated to take measures against any unethical conduct occurring in connection with the proceedings before them. *See Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980).  Thus, "[a] motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court." *Id.*; *see also In re Am. Airlines*, 972 F.2d 605, 605 (5th Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) (noting that in cases of conflict of interest, "unless a conflict is addressed by courts upon a motion for disqualification, it may not be addressed at all … it is our business—our responsibility").  For this reason, the Fifth Circuit is "sensitive to preventing conflicts of interest," and it has continued to "rigorously apply the relevant ethical standards" in assessing disqualification motions. *Am. Airlines*, 972 F.2d at 605.

37.     Motions to disqualify are substantive motions decided under federal law. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir.1992).  In determining motions to disqualify, courts are guided by both state and national ethical standards in light of the public interest in the legal system. *Am. Airlines*, 972 F.2d at 610.  Specifically, courts in the Fifth Circuit consider the following ethical canons to determine whether to disqualify counsel: (i) the American Bar Association's Model Rules of Professional Conduct (the "ABA Model Rules"), (ii) the Texas Disciplinary Rules of Professional Conduct (the "Texas Rules"), and (iii) the local rules of the deciding court (the "Local Rules").  *See id.* at 614; *Dresser*, 972 F.2d at 542-43.

38.     "When considering motions to disqualify, courts should first look to the local rules promulgated by the local court itself." *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (internal quotations omitted).  For instance, attorneys practicing in the Northern District of

Texas are subject to the Texas Rules.  *See* N.D. TEX. L.B.R. 2090-2(d) (stating that "unethical"

behavior means conduct that violates the Texas Disciplinary Rules of Professional Conduct);

*Asgaard Funding LLC v. ReynoldsStrong LLC*, 426 F. Supp. 3d. 292, 296 (N.D. Tex. 2019)

("[A]ttorneys practicing in the Northern District of Texas are subject to the Texas Disciplinary

Rules of Professional Conduct").  The Fifth Circuit recognizes the ABA Model Rules as the

"national standard" for considering motions to disqualify. *Am. Airlines*, 972 F.2d at 610.  Thus,

"when assessing a motion to disqualify, this Court consider[s] both the Texas Rules and the Model

Rules." *Asgaard*, 426 F. Supp. 3d. at 296 (internal quotations omitted).

39.     Texas Rule 1.09 governs a lawyer's duty to former clients.  It provides, in pertinent

part:

> **Conflict of Interest:** Former Client
>
> (a) Without prior consent, a lawyer who personally has formerly represented a
> client in a matter shall not thereafter represent another person in a matter adverse
> to the former client:
> > . . . .
>
> > (2) if the representation in reasonable probability will involve a violation of
> > Rule 1.05; or
>
> > (3) if it is the same or a substantially related matter.

TEX. R. PROF'L CONDUCT 1.09(a).   Texas Rule 1.05, incorporated above, prohibits a lawyer's use

of confidential information obtained from a former client to that former client's disadvantage.  *See*

TEX. R. PROF'L CONDUCT 1.05(b)(3).  "Rule 1.09 thus on its face forbids a lawyer to appear against

a former client if the current representation in reasonable probability will involve the use of

confidential information *or* if the current matter is substantially related to the matters in which the

lawyer has represented the former client." *Am. Airlines*, 972 F.2d at 615.  These standards are

imputed to the former lawyer's law firm as well.  Rule 1.09 provides:

> (b) Except to the extent authorized by Rule 1.10, when lawyers are or have become
> members of or associated with a firm, none of them shall knowingly represent a

11

client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

(c) When the association of a lawyer with a firm has terminated, the lawyers who were then associated with that lawyer shall not knowingly represent a client if the lawyer whose association with that firm has terminated would be prohibited from doing so by paragraph (a)(1) or if the representation in reasonable probability will involve a violation of Rule 1.05.

TEX. R. PROF'L CONDUCT 1.09(b)-(c).  The ABA Model Rules "are identical in all important respects."[8]  *Am. Airlines*, 972 F.2d at 614 n. 2; *see also Asgaard*, 426 F. Supp. 3d. at 298 (same).

40.    Fifth Circuit precedent is a "reinforcement" of these applicable ethical rules. *Grosser-Samuels v. Jacquelin Designs Enters, Inc.*, 448 F. Supp. 2d 772, 779-80 (N.D. Tex. 2006; *see also Dresser*, 972 F.2d at 543 (noting that the Fifth Circuit's "source for the standards of the profession has been the canons of ethics developed by the American Bar Association").  For instance, Fifth Circuit law is "fairly straightforward" that, when a former client moves to disqualify an attorney who represents its adversary, the movant need only show: (i) "an actual attorney-client relationship between the moving party and the attorney they seek to disqualify," and (ii) "a substantial relationship between the subject matter of the former and present representations." *Am. Airlines*, 972 F.2d at 614; *see also Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 252 (5th Cir. 1977) (to show disqualification warranted of former counsel representing

---

[8] *See* ABA Rule 1.9:

    (a)  A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

    . . . .

    (c)  A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter

        1.    use information relating to the representation to the disadvantage of the former client
          . . . .

ABA MODEL R. OF PROF'L CONDUCT 1.9.

adversary, movant "need only to show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented [it]"); *Acad. of Allergy & Asthma in Primary Care v. La. Health Serv. & Indem. Co.*, 384 F. Supp. 3d 644, 652 (E.D. La. 2018) (noting that "[i]n the Fifth Circuit, the substantial relationship test governs whether [local rules] require disqualification of an attorney—and [their] firm by virtue of imputation").

41.     The two fundamental protections afforded by the substantial relationship test are "the duty to preserve confidences and the duty of loyalty to a former client." *Am. Airlines*, 972 F.2d at 618 (internal quotations omitted); *see also Grosser*, 448 F. Supp. 2d at 779 (noting that the "substantial relationship" test protects the "basic tenants of the legal profession"). The substantial relationship test thus rests upon an irrebuttable presumption: "Once it is established that the prior matters are substantially related to the present case, the court will *irrebuttably* presume that relevant confidential information was disclosed during the former period of representation." *Am. Airlines,* 972 F.2d at 614 (emphasis added); *see also Wilson*, 559 F.2d at 252 ("This rule rests upon the presumption that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation"). In other words, once a movant proves that adverse counsel previously represented them as counsel, the court's inquiry is narrowed to the sole issue of whether this prior representation is substantially related to the instant representation. *Am. Airlines,* 972 F.2d at 614.

42.     The "second irrebuttable presumption is that confidences obtained by an individual lawyer will be shared with the other members of [their] firm." *Am. Airlines*, 972 F.2d at 614 n.1*; see also Green v. Adm'rs of Tulane Educ. Fund*, No. 97-1869, 1998 WL 24424, at *3 (E.D. La. Jan. 23, 1998) ("The Rules presume that confidences obtained by an individual lawyer are shared with members of his or her firm," noting that Fifth Circuit does not "rebut this presumption");

13

*Grosser*, 448 F. Supp. 2d at 772 (same).  The substantial relationship test is thus "categorical in requiring disqualification upon the establishment of a substantial relationship between past and current representations." *Am. Airlines*, 972 F.2d at 614; *see also Acad. of Allergy*, 384 F. Supp. 3d at 653 (noting that evidence that a firm has carefully screened a conflicted attorney and that no confidential information has been shared between attorneys in the conflicted attorney's firm is "irrelevant" to the "substantial relationship" test); *Islander East Rental Program v. Ferguson*, 917 F. Supp. 504, 508 (S.D. Tex. 1996) ("It is beyond dispute that an attorney is prohibited from accepting representations to a former client if the subject matter of the current representation is substantially related to the subject matter of the former representation").

43.    In assessing whether a conflict warrants disqualification, the Fifth Circuit also considers the public interest and perceptions of "impropriety."  *Dresser*, 972 F.2d at 543; *see also Grosser*, 448 F. Supp. 2d at 779 ("included in the ABA standards is the admonition that lawyers should avoid even the appearance of impropriety") (internal quotations omitted); *Green*, 1998 WL 24424 at *4 ("Of greater concern to the Court is the appearance of impropriety, the duty to preserve confidences, and the duty of loyalty to a former client."); *Asgaard*, 426 F. Supp. 3d. at 297 (same). Such factors include "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Dresser*, 972 F.2d at 543.

44.    Applying the ethical standards set forth above, Wick Phillips should be disqualified from representing HCRE in connection with the litigation of HCRE's Claim, and the Court should grant the Debtor's plea for related relief.

## ARGUMENT

45.    Disqualification of Wick Phillips is required under the conflict standards set forth by the Fifth Circuit.

**A.    The Substantial Relationship Test Is Satisfied**

46.    The substantial relationship test requires disqualification of Wick Phillips as counsel to HCRE because both elements are met.

### 1.    An Attorney-Client Relationship Existed Between HCMLP and Wick Phillips

47.    While Wick Phillips disputes the scope of its representation of HCMLP, at a bare minimum there can be no dispute that (a) Wick Phillips represented HCMLP (and the other Borrowers) in connection with the Loan Agreement, (b) Wick Phillips worked with HCMLP to make sure that the organizational charts attached as Schedule 3.15 to the Loan Agreement were accurate, (c) each of those organizational charts (22 in total) reflected the same Allocation set forth in the LLC Agreement, and (d) the Allocation is the very provision of the LLC Agreement that HCRE now contends was a mistake.

48.    Upon information and belief, the evidence will ultimately show that Wick Phillips jointly represented HCRE and HCMLP in the preparation of the LLC Agreement.  Indeed, given that Mr. Dondero signed the LLC Agreement (and the Restated LLC Agreement) on behalf of ***both*** parties, no other plausible explanation exists.  But that fact, if established, will only serve to reinforce what is already plain:  Wick Phillips represented HCMLP and HCRE in connection with the financing of the investment at issue, including working with HCMLP to make sure that the Allocation was properly presented in the Loan Agreement.

49.    "An attorney and a client can create an attorney-client relationship either explicitly or implicitly by conduct manifesting an intention to create the attorney-client relationship."  *City of El Paso v. Sales-Porras Soule*, 6 F. Supp. 2d 616, 622 (W.D. Tex. 1998).  "It is usually not a

15

difficult matter for the client to establish an attorney-client relationship" for purposes of the substantial relationship test. *Id.*; *see also Green,* 1998 WL 24424 at *4 ("It is undisputed" that attorney-client relationship existed). Here, there can be no dispute that an attorney-client relationship existed between HCMLP and Wick Phillips because the Loan Agreement states so— twice. **Morris Dec. Exhibit B ¶¶**4.01(b), 9.01(a). *See Acad. of Allergy* 384 F. Supp. 3d 654 ("It is inescapably clear that an attorney-client relationship formed because [counsel] formally manifested its consent in an engagement letter it sent to [client]"). The first element of the substantial relationship test is, therefore, satisfied.

**2.      The Previous and Current Representations Are Substantially Related**

50.      The subject matter of Wick Phillips' former representation of the Debtor is also "substantially related" to Wick Phillips' current representation in the prosecution of HCRE's Claim. To be "substantially related," the "two representations need only involve the same subject matter." *Am. Airlines* at 625 (internal quotations omitted). Representations involve the same subject matter where, for instance, an issue is relevant or "common" to both. *See Acad. of Allergy*, 384 F. Supp. at 659.

51.      Here, at a minimum, Wick Phillips represented HCMLP (and HCRE) in connection the Keybank loan. The Keybank loan was obtained to finance the Parties' investment in SE Multifamily. HCMLP and HCRE (and the other Borrowers) were all jointly and severally liable for all obligations under the Loan Agreement. The Loan Agreement included the organizational charts that were (a) the subject of consultation between Wick Phillips and HCMLP and (b) consistent with the Allocation set forth in the LLC Agreement. And, to complete the circle, the

16

foundation of HCRE's Claim is that the Allocation was a mistake, and based on that mistake, HCRE is entitled to rescind the Restated LLC Agreement.[9]

52.    Under these circumstances, any assertion by HCRE or Wick Phillips that the LLC Agreement, the Loan Agreement, and the Restated LLC Agreement are unrelated cannot be credible.[10]  *See Green*, 1998 WL 24424 at *4 (finding the current and former representation "substantially related" where counsel's representations of former client and current client "both involve the suit filed by" former client); *El Paso*, 6 F. Supp. 2d at 624 (representations substantially related where former client relied on counsel's advice and where "[i]t would be patently unfair to allow the same lawyer to represent interests adverse to a former client regarding the same business affairs"); *Grosser*, 448 F. Supp. 2d at 783 (ordering disqualification of counsel where their "former intellectual property representation" of client is "substantially related to the intellectual property issue raised by the pleadings in this case.  Thus, there is an irrebuttable presumption that relevant confidential information pertaining to the affairs of [former client] was disclosed to [counsel] while he was acting as attorney for [former client]"); *Am. Airlines*, at 625-28 (finding that, despite litigation involving different causes of action, law firm's three prior representations substantially related to current matter where counsel gave advice to client on an issue that was of importance in the instant suit and was privy to former clients' views on another issue related to subject suit).

---

[9] BH Equities is a party to the Restated LLC Agreement and is therefore a necessary party to this dispute that HCRE has failed to name.

[10] The assertion that the Allocation was the result of a "mistake" also lacks credibility for at least two undisputed reasons.  First, the Allocation is reflected in 22 separate organizational charts that were attached to the Loan Agreement and that Wick Phillips worked to make sure were accurate.  **Morris Dec. Ex. B** (Schedule 3.15); **Morris Dec. Ex. C** (e-mails between Wick Phillips and HCMLP concerning the accuracy of the organizational charts).  Second, HCRE and HCMLP effectively ratified the Allocation when they entered into the Restated LLC Agreement because HCRE, HCMLP, and BH Equities all agreed to adjust the Allocation to take into account BH Equities' acquisition of 6% of the membership interests of SE Multifamily.  **Morris Dec. Ex. D** ¶1.7, Schedule A (HCRE's interest was diluted by 6%, from 51% to 47.94%; HCMLP's interests were diluted by 6%, from 49% to 46.06%; and BH Equities was granted a 6% interest in SE Multifamily).

17

Case 19-34054-sgj11 Doc 3607-60 Filed 10/27/22 Entered 10/27/22 15:17:13 Page 21 of 24
Case 19-34054-sgj11 Doc 1950-4 Filed 01/27/21 Entered 04/01/21 14:10:57 Page 22 of 25
Exhibit 76    Page 22 of 25

53.    For the foregoing reasons, the substantial relationship test is satisfied, and, for this reason alone, disqualification of Wick Phillips is mandated.  *See Green*, 1998 WL 24424 at *4 (holding that where attorney's representation of current client and former client met substantial relationship test, Fifth Circuit law and ethical rules required disqualification of attorney and its law firm).

## B.    **The Appearance-of-Impropriety Standard Is Satisfied**

54.    In addition to the direct conflict demonstrated by the substantial relationship test, Wick Phillips' continued representation of HCRE would create an "appearance-of-impropriety." As noted above, the Debtor disclosed confidential information to Wick Phillips that is related to the very matter governing Wick Phillips' representation of HCRE.  This, alone, creates the appearance of impropriety.  *See Islander East*, 917 F. Supp. at 514 (counsel's continued representation of party created "appearance of impropriety and unfairness, particularly in light of the Defendant's discovery request for the very information previously disclosed to [counsel] by [former client]").

55.    Moreover, there is a "reasonable probability" that Wick Philips' knowledge could be used to disadvantage the Debtor during the course of these proceedings.  Indeed, Wick Phillips appears to have knowledge of the Debtor's privileged communications and has noticed for deposition the two attorneys that Wick Phillips now contends solely represented HCMLP's interests.  *See Islander*, 917 F. Supp. at 514 (noting that even if the court "were to accept [counsel's] statement that it received no information about any" confidential information, "disqualification would still be required in this case because "there is a reasonable probability" that confidential information received from former client would be "relevant to some of the clients raised by the Defendants in this litigation"); *Aasgard*, 426 F. Supp. 2d at 298-99 (finding appearance of impropriety where counsel "had once-potentially confidential information that

could be relevant to a claim in this lawsuit," and counsel's access to such information therefore "raises the possibility that he used such information to [client's] advantage"). For instance, since Wick Phillips advised the Debtor on the very transaction that is now the subject of HCRE's Claim against the Debtor, Wick Phillips will likely be called as a witness against the Debtor (or called as witness against its own client on the Debtor's behalf). This is, on its face, grounds for disqualification. *See Islander*, 917 F. Supp. at 514 (finding disqualification warranted where, "regardless of the exact content of" party's disclosures to former counsel, "the information disclosed to [party] could be used to impeach [party], depending on the development of the testimony at trial"); *Grosser*, 448 F. Supp. 2d at 785 (ordering disqualification of counsel and all counsel associated with attorney's law firm where there is a "prospect that [counsel] could be called as a witness in this action and might well be made a party" and that such a risk "raises serious concerns").

56.     In light of the above, and given the contentious nature of numerous and related claims asserted by the Debtor, HCRE, and Mr. Dondero's other controlled entities, the line between disclosures involving HCRE or SEMF is "simply too fine." *See Islander East*, 917 F. Supp. at 514 ("Given the contentious and acrimonious nature of this litigation and the numerous, aggressive claims asserted by the parties, the line between disclosures involving" the various claims at issue "is simply too fine"); *El Paso*, 6 F. Supp. 2d at 624 (finding that even if the court had found that the legal advice rendered by counsel to former client was not "substantially related to the current cause," there is a "reasonable probability that confidential information related to the administering of the advice could be used to Defendants' disadvantage in this litigation," mandating disqualification pursuant to the confidentiality protections under Texas Rule 1.09 and 1.05).

57.    Based on the foregoing, Wick Phillips' continued representation of HCRE would create an appearance of impropriety, and for this additional reason, disqualification is warranted. *See Grosser*, 448 F. Supp. 2d at 783 (noting that "[i]n addition to the direct conflict," existing from counsel's continued representation, "[i]f the appearance-of-impropriety standard is applied to this case, the need for disqualification would become even more apparent"); *Islander East*, 917 F. Supp. at 514 (finding impropriety concerns and requiring disqualification where counsel's continued representation of client against former client would cause "public suspicion of the legal profession generally, and cause the public to question the extent of an attorney's loyalty to [their] client and whether information given to an attorney is truly confidential"); *Green*, 1998 WL 24424 at *4 (finding that "ethical rules, Fifth Circuit precedent, and societal interest all required the disqualification of" counsel where counsel formerly represented party and was exposed to that party's files and confidential information, but is "now employed by the law firm who represents a direct adversary in" that same party's case).

## **CONCLUSION**

58.    For the foregoing reasons, Fifth Circuit law and ethical rules proscribed by Texas Rules and ABA Model Rules mandate the disqualification of Wick Phillips as counsel to HCRE.

20

Dated:  April 14, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*