# EXHIBIT 81

Case 19-34054-sgj11 Doc 2839 Filed 10/01/21 Entered 10/01/21 07:12:15 Page 1 of 18
Case 19-34054-sgj11 Doc 2890-81 Filed 10/27/23 Entered 10/27/23 17:12:45 Exhibit 81 Page 2 of 19
Docket #2894 Date Filed: 10/01/2021

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Kenneth Brown (CA Bar No. 100396) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § § § | |

**HIGHLAND'S MEMORANDUM OF LAW IN SUPPORT OF SUPPLEMENTAL MOTION TO DISQUALIFY WICK PHILLIPS GOULD & MARTIN, LLP AS <u>COUNSEL TO HCRE PARTNERS, LLC AND FOR RELATED RELIEF</u>**


**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | FACTUAL BACKGROUND | 3 |
| | A. The Loan Agreement, the LLC Agreement, and the Restated LLC Agreement Constitute One Integrated Transaction to Acquire a Real Property Portfolio | 3 |
| | B. Wick Phillips' Current Representation of HCRE | 7 |
| III. | ARGUMENT | 8 |
| | A. Legal Standard | 8 |
| | B. Wick Phillips' Prior Representation of Highland and Current Representation of HCRE Involve the Same Matter | 11 |
| | C. Wick Phillips Prior Representation of Highland and Current Representation of HCRE are Substantially Related | 12 |
| CONCLUSION | | 14 |

i

# **TABLE OF AUTHORITIES**

**CASES**

*Acad. of Allergy & Asthma in Primary Care v. La. Health Serv. & Indem. Co.*,
 384 F. Supp. 3d 644 (E.D. La. 2018) ............................................................................... 9, 12, 13

*Centerline Indus., Inc. v. Knize*,
 894 S.W.2d 874 (Tex. App. 12 1995) ...................................................................................... 10

*City of El Paso v. Sales-Porras Soule*,
 6 F. Supp. 2d 616 (W.D. Tex. 1998) ....................................................................................... 13

*Green v. Adm'rs of Tulane Educ. Fund*,
 No. 97-1869, 1998 WL 24424 (E.D. La. Jan. 23, 1998) ......................................................... 13

*Grosser-Samuels v. Jacquelin Designs Enters, Inc.*,
 448 F. Supp. 2d 772 (N.D.Tex. 2006) ....................................................................................... 9

*In re Am. Airlines*,
 972 F.2d 605 (5th Cir. 1992) ............................................................................................. passim

*In re Boone*,
 83 F. 944 (C.C.N.D. Cal. 1897) .............................................................................................. 10

*Islander East Rental Program v. Ferguson*,
 917 F. Supp. 504 (S.D. Tex. 1996) .......................................................................................... 11

*John Crane Prod. Sols., Inc. v. R2R & D, LLC*,
 2012 WL 3453696 (N.D. Tex. 2012) ...................................................................................... 10

*Vinewood Cap., LLC v. Dar Al-Maal Al-Islami Tr.*,
 2010 WL 1172947 (N.D. Tex. 2010) ...................................................................................... 10

DOCS_NY:44174.5 36027/003

Highland Capital Management, L.P., the reorganized debtor[1] ("Highland" or "HCMLP" as may temporally be required) in the above-captioned chapter 11 case ("Bankruptcy Case"), by and through its undersigned counsel, files this memorandum of law in support of its *Supplemental Motion to Disqualify Wick Phillips Gould & Martin, LLP as Counsel to HCRE Partners, LLC and for Related Relief* (the "Supplemental Motion") pursuant to the *Agreed First Amended Scheduling Order with Respect to Debtor's Motion to Disqualify Wick Phillips Gould & Martin, LLP as Counsel to HCRE Partners, LLC* [Docket No. 2757]. In support of its Supplemental Motion, Highland states as follows:

## I. PRELIMINARY STATEMENT[2]

1. Wick Phillips' Current Representation of HCRE constitutes a conflict of interest that violates well-settled ethical duties of loyalty owed by lawyers to their former clients. The facts warranting disqualification of Wick Phillips as counsel to HCRE are undisputed.

2. In its Prior Representation, Wick Phillips represented Highland and HCRE (along with other Borrowers) in the negotiation, drafting and formation of a Loan Agreement to finance a joint investment in real estate, "Project Unicorn." Project Unicorn involved the formation of SE Multifamily, an entity created for the purpose of acquiring and improving real estate. The execution of Project Unicorn involved a series of integrated agreements, including, in pertinent part: (i) the LLC Agreement, (ii) the Loan Agreement, and (iii) a Restated LLC Agreement to

---

[1] On February 22, 2021, the Bankruptcy Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization (as Modified) and (ii) Granting Related Relief* [Bankr. Docket No. 1943] (the "Confirmation Order") which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., as Modified* [Bankr. Docket No. 1808] (the "Plan"). The Plan went Effective (as defined in the Plan) on August 11, 2021, and Highland is the Reorganized Debtor (as defined in the Plan) since the Effective Date. *See Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Bankr. Docket No. 2700].

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them either below or in the *Debtor's Memorandum of Law in Support of its Motion to Disqualify Wick Phillips* [Docket No. 2197] (the "Initial Brief").

1

account for an additional investor. The LLC Agreement set forth Highland's and HCRE's rights and obligations, including the allocation of their respective ownership interests in SE Multifamily. Highland's and HCRE's joint investment in SE Multifamily was financed with the proceeds obtained under the Loan Agreement. The Loan Agreement included Organizational Charts that incorporated the ownership allocations set forth in the LLC Agreement and that Highland represented to the Lenders were true and accurate. Wick Phillips represented Highland (and the other borrowers, including HCRE) in connection with the Loan Agreement and worked with Highland to ensure that the ownership percentages of the Parties' interests in SE Multifamily were consistent with the percentages set forth in the LLC Agreement.

3.      In its Current Representation, Wick Phillips represents HCRE in connection with HCRE's Claim disputing the very ownership percentages reflected in the LLC Agreement and the Loan Agreement. In the HCRE Claim, HCRE contends that the Restated LLC Agreement overstates Highland's ownership interest in SE Multifamily due to mutual mistake, lack of consideration, and/or failure of consideration. The HCRE Claim seeks to reform, rescind, and/or modify the LLC Agreements with respect to the ownership allocations.

4.      Wick Phillips' Current Representation of HCRE violates the basic tenants of the duty of loyalty and the duty of confidentiality owed by them to their former client, Highland, because material aspects of the Prior Representation and Current Representations involve the same matter: Highland's and HCRE's respective ownership interest in SE Multifamily. For this reason alone, disqualification of Wick Phillips as counsel to HCRE is warranted.

5.      Even if the Prior and Current Representations do not involve the same matter, *per se* (which they do), disqualification is still mandated because the two Representations are clearly substantially related. They both involve the same common critical issues: Highland's and HCRE's respective ownership interest in SE Multifamily.

2

6. For the foregoing reasons, and for the reasons below, Wick Phillips should be disqualified as counsel to HCRE in connection with the HCRE Claim.

## II. FACTUAL BACKGROUND[3]

A. **The Loan Agreement, the LLC Agreement, and the Restated LLC Agreement Constitute One Integrated Transaction to Acquire a Real Property Portfolio.**

7. The following facts are undisputed.

8. In July 2018, NexPoint Real Estate Advisors, LLC ("NREA") began moving forward with a plan to purchase 26 properties with an estimated value over $1.1 billion (referred to as "Project Unicorn" or the "Unicorn Acquisition").[4]

9. Project Unicorn was a complex transaction with multiple overlapping components, including, in pertinent part:, (i) the LLC Agreement between HCRE and HCMLP, (ii) the Restated LLC Agreement, and (iii) the Loan Agreement, as well as three separate purchase and sale contracts each dealing with a different bucket of properties and the six separate agreements attached as exhibits to the Loan Agreement. *See* **Morris Dec.**[5] **Exs. A, B, D**, respectfully.

10. Specifically, on or about August 23, 2018, Highland and HCRE (together, the "Parties") entered into the LLC Agreement, pursuant to which SE Multifamily was created. **Morris Dec. Ex. A.** SE Multifamily was created to, among other things, acquire and improve real property on behalf of its members, Highland and HCRE.[6] **Morris Dec. Ex. A ¶ 1.3.**[7]

11. The LLC Agreement set forth Highland's and HCRE's respective ownership Allocations in SE Multifamily, providing that:

---

[3] Unless otherwise indicated, Highland incorporates by reference the facts set forth in the Initial Brief.

[4] *See, e.g.*, Wick Phillips' *Brief in Opposition to Debtor's Motion to Disqualify Wick Phillips* [Docket No. 2279] (the "Opposition Brief") ¶¶ 4-6.

[5] Refers to the *Declaration of John A. Morris Submitted in Support of the Debtor's Motion to Disqualify Wick Phillips Gould & Martin, LLP as Counsel to HCRE Partners, LLC and for Related Relief* [Docket No. 2198].

[6] Mr. Dondero signed the LLC Agreement on behalf of the HCMLP and HCRE. Morris Dec**. Exhibit A** at 17.

[7] *See also* Opposition Brief ¶ 5.

3

"[e]xcept with respect to particular items specified in this Agreement, HCRE shall have a 51% ownership interest and HCMLP shall have a 49% ownership interest, respectively, in all assets and activities of the Company, including, without limitation, rights to receive distributions of cash and assets in-kind in the process of winding down and liquidating" SE Multifamily pursuant to the LLC Agreement.

**Morris Dec. Ex. A** ¶ 1.7. The Allocation was consistent with the Parties' respective initial capital contributions. **Morris Dec. Ex. A** ¶ 2.1 and Schedule A.

12. In order to finance their investment in SE Multifamily, Highland and HCRE, among other borrowers (the "<u>Borrowers</u>"), entered into the Loan Agreement, pursuant to which the Borrowers obtained a secured loan from Keybank, as of September 26, 2018. **Morris Dec. Ex. B**.[8] *See* Loan Agreement § 2.02(a) and (b) (providing that the purpose of the financing was "to finance the acquisition cost of the Mortgaged Properties" and "to finance a portion of the acquisition cost of the Portfolio Properties . . . .")[9] The Loan Agreement financed about half of the purchase price of the Unicorn Acquisition by providing financing to Highland and HCRE, among other Borrowers, and was critical to the Unicorn Acquisition.[10]

13. Pursuant to the Loan Agreement, Keybank provided up to $556,275,000 in secured loans to the Borrowers, including Highland and HCRE. The Loan Agreement also provided, among other things, that (a) all of the Borrowers (including Highland) were jointly and severally liable to Keybank for all amounts borrowed under the Loan Agreement, but that (b) HCRE was designated as the "Lead Borrower" with the sole authority to request and obtain borrowings and

---

[8] Upon information and belief, all of the "Borrowers" under the Loan Agreement were entities directly or indirectly owned and/or controlled by Mr. Dondero, including HCMLP, HCRE, The Dugaboy Investment Trust, the SLHC Trust, NexPoint Advisors, L.P., NexPoint Real Estate Advisors IV, L.P., SE Multifamily Reit Holdings, LLC, and certain property owners. **Morris Dec. Ex.** B at 3 (definition of "<u>Borrowers</u>").

[9] The terms "Mortgaged Properties" and "Portfolio Properties" are defined in the Loan Agreement. **Morris Dec. Ex.** B at 16, 19. These definitions total thirty-two separate real property purchases comprising the Unicorn Acquisition. As with any large complex transaction, the completion of the Unicorn Acquisition required numerous subsidiary instruments related to the acquisitions and to the Loan Agreement.

[10] Morris Dec, **Exhibit B;** *see also* Opposition Brief ¶ 6.

4

to determine how loan proceeds would be distributed among the Borrowers. **Morris Dec. Ex. B** ¶¶ 1.05(a), (b).

14. Highland was essential to the Unicorn Acquisition because it enhanced the creditworthiness of the Borrowers and permitted the financing under the Loan Agreement to go forward. *See* August 11, 2021 Deposition Transcript of Rob Wills (the "Wills Transcript"), a true and correct copy of which is attached to the Brown Declaration[11] as **Exhibit A**, at 25:11-17 ("And KeyBank needed more credit from the borrower side since this was such a large transaction, and that's when Highland Capital was added as an additional borrower to the loan").

15. Wick Phillips represented Highland (and HCRE) as a "Borrower" in connection with the Loan Agreement. *See* **Morris Dec. Ex. B** ¶¶ 4.01(b), 9.01(a) (Loan Agreement expressly identifying Wick Phillips as counsel to the "Borrower"); *id.* at 3 (identifying Highland as a "Borrower" under the Loan Agreement) (the "Prior Representation").[12]

16. Wick Phillips did not obtain a conflict waiver for their joint representation of the Borrowers in connection with the Loan Agreement, *see* Wills Transcript at 33:5-9, in violation of Tex. R. Prof. Conduct 1.07(a)(1); *see also* ABA Model Rule 1.7; 7 Tex. Jur. 3d Attorneys at Law § 180 ("Joint representation by the same attorney is permitted when all clients consent and there is no substantial risk that the lawyer's representation of one client would be materially adversely affected by the lawyer's duties to the other.")

17. In its Prior Representation of Highland in connection with the Loan Agreement, Wick Phillips' was involved in reviewing certain organizational charts (the "Organizational Charts") attached to the Loan Agreement as Schedule 3.15. These Organizational Charts were

---

[11] Refers to the *Declaration of Kenneth H. Brown in Support of Supplemental Motion to Disqualify Wick Phillips Gould & Martin, LLP as Counsel to HCRE Partners, LLC and For Related Relief* being filed concurrently herewith.

[12] *See also* Opposition Brief ¶ 7 ("As a Borrower under the Bridge Loan, Wick Phillips was counsel to HCMLP").

5

prepared by the Borrowers for each property to be acquired in the Unicorn Acquisition. Wick Phillips communicated with Highland concerning the Organizational Charts and made certain revisions to the Organizational Charts to ensure their accuracy.[13] Specifically, Wick Phillips performed diligence on behalf of the Borrowers to confirm that the representations and warranties they made in the Loan Agreement were accurate, including with respect to Section 3.15 of the Loan Agreement in which the Borrowers represented and warranted that the ownership interests of HCRE and HCMLP in their joint investment in the Unicorn Acquisition set forth in in Schedule 3.15 were accurate.[14] In every one of the twenty-two (22) Organizational Charts in which SE Multifamily was a participant, the Allocation of the Parties' interests in SE Multifamily was depicted consistently with the LLC Agreement (*i.e.*, 51% to HCRE and 49% to HCMLP). *See* **Morris Dec. Ex. B**, Schedule 3.15.

18.    On or about March 15, 2019, the Parties entered into the Restated LLC Agreement (together with the LLC Agreement, the "LLC Agreements") in order to admit a new member, BH Equities. **Morris Dec. Ex. D**.

19.    Mr. Dondero signed the Restated LLC Agreement on behalf of the Debtor ***and*** HCRE. **Morris Dec. Ex. D** at 18 (Mr. Dondero signed as President of Strand Advisors, Inc., HCMLP's general partner, and as the Manager of HCRE).

20.    Pursuant to the Restated LLC Agreement, BH Equities acquired 6% of the membership interests in SE Multifamily.

---

[13] *See* Wills Transcript at 49:24-25; 50:2-25; *see also* emails between HCMLP and Rachel Sam, one of the Wick Phillips lawyers representing HCMLP and the other Borrowers with respect to the Loan Agreement. **Morris Dec. Ex. C** ("I made a couple of clean up changes to the DST Org Charts and am waiting for sign off from Baker Mackenzie. Once I hear back from Baker, I will circulate those updated Org charts.")

[14] Wills Transcript at 66: 22-25; 67: 1-21.

6

21. HCRE, Highland, and BH Equities adjusted the original Allocation to take into account BH Equities' newly acquired membership interests in SE Multifamily. The Allocation was adjusted to reflect that: (i) HCRE's ownership interests were diluted by 6%, from 51% to 47.94%; (ii) Highland's interests were diluted by 6%, from 49% to 46.06%; and (iii) BH Equities obtained the remaining 6% of SE Multifamily's interests (the "Revised Allocation"). **Morris Dec. Ex. D** ¶1.7.[15]

22. Accordingly, the Loan Agreement, the LLC Agreement forming SE Multifamily, and the Restated LLC Agreement were all components of the same unitary matter. Wick Phillips acknowledges this fact. *See* Wills Transcript at 5:5-9 ("Project Unicorn incorporates really all of the topics on the depo notice, the Loan Agreement, LLC Agreements. It's all sort of the same global project.").[16]

B. **Wick Phillips' Current Representation of HCRE**

23. Wick Phillips currently represents HCRE in connection with the HCRE Claim (the "Current Representation"). On April 8, 2020, HCRE filed a general unsecured, non-priority claim that was denoted by the Debtor's claims agent as claim number 146. Mr. Dondero signed HCRE's Claim as HCRE's authorized agent and his personal counsel (the law firm of Bonds Ellis Eppich Schafer Jones LLP) was identified as the contact party. A true and correct copy of HCRE's Claim is attached as **Morris Dec. Ex. E**.

24. In an exhibit attached to HCRE's Claim, HCRE asserts that it:

may be entitled to distributions out of SE Multifamily, but such distributions have not been made because of the actions or inactions of the Debtor. Additionally,

---

[15] The Revised Allocation is repeated in Schedule A to the Restated LLC Agreement alongside the capital contributions of each member. **Morris Dec. Ex. D**, Schedule A.

[16] The "depo notice" refers to the *Debtor's Amended Notice of Rule 30(b)6) Deposition to Wick Phillips Gould & Martin, LLP* [Docket No. 2608] (the "Deposition Notice"), dated July 26, 2021. Pursuant to the Deposition Notice, Wick Phillips designated a representative to testify on its behalf with respect to its roles in the LLC Agreement, the Restated LLC Agreement and the Loan Agreement. A true and correct copy of the Deposition Notice is attached to the Brown Declaration as **Exhibit B**.

7

[HCRE] contends that all or a portion of Debtor's equity, ownership, economic rights, equitable or beneficial interests in SE Multifamily does [not] belong to the Debtor or may be the property of [HCRE].

**Morris Dec. Ex. E**, Exhibit. A.

25. Through its Claim, HCRE specifically seeks to "reform, rescind and/or modify the agreement" on the grounds that the "***organizational documents relating to [the LLC Agreement]*** improperly allocate[] the ownership percentages" **Morris Dec. Ex. G ¶¶** 5, and challenges the "memorialization of the parties' agreement and improper distribution provisions," *id.* ¶ 6.

### III. ARGUMENT

26. Disqualification of Wick Phillips as counsel to HCRE is mandated under applicable ethical standards because the Prior Representations and Current Representations involve (i) the same matter, and (ii) at the minimum, are "substantially related."

**A. Legal Standard**

27. Highland fully incorporates by reference the legal standard set forth in the Initial Brief, *see* Initial Brief ¶¶ 36-44, and provides a summary of the applicable ethical standards below.

28. A lawyer owes two duties to a former client: the continuing duties of loyalty and of confidentiality. *See* TEX. R. PROF'L CONDUCT 1.09. Texas Rule 1.09 provides:

**Conflict of Interest:** Former Client

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>
> > (2) if the representation in reasonable probability will involve a violation of Rule 1.05; or
> >
> > (3) if it is the same or a substantially related matter.

8

Case 19-34054-sgj11 Doc 2895-81 Filed 10/27/22 Entered 10/27/22 17:45 12 of 18
Case 21-03054-sgj Doc 189-1 Filed 10/21/22 Entered 10/21/22 17:45 12 of 18
Exhibit 81    Page 13 of 19

TEX. R. PROF'L CONDUCT 1.09(a); *see also* ABA Rule 1.9.[17] There is no analytical difference between the "same" or "substantially related." Lawyers have the same duty of loyalty or fidelity to their former client whether the two representations are viewed as in the same or substantially related matter. *See* September 16, 2021 Deposition Transcript of Robert Kehr, a true and correct copy of which is attached to the Brown Declaration as **Exhibit C** (the "Kehr Transcript") at 68:6-12.

29.    The Fifth Circuit has reinforced these continuing duties of loyalty and confidentiality to former clients, providing that "Rule 1.09 [] on its face forbids a lawyer to appear against a former client if the current representation in reasonable probability will involve the use of confidential information *or* if the current matter is substantially related to the matters in which the lawyer has represented the former client." *In re Am. Airlines*, 972 F.2d 605, 615 (5th Cir. 1992). Thus, the two fundamental protections afforded by the "substantial relationship" test are "the duty to preserve confidences and the duty of loyalty to a former client." *Id.* at 618 (internal quotations omitted); *see also Grosser-Samuels v. Jacquelin Designs Enters, Inc.*, 448 F. Supp. 2d 772, 779 (N.D.Tex. 2006) (noting that the "substantial relationship" test protects the "basic tenants of the legal profession"); *see also Acad. of Allergy & Asthma in Primary Care v. La. Health Serv. & Indem. Co.*, 384 F. Supp. 3d 644, 653 (E.D. La. 2018); *John Crane Prod. Sols., Inc. v. R2R & D, LLC*, 2012 WL 3453696, at *3 (N.D. Tex. 2012); *Vinewood Cap., LLC v. Dar Al-Maal Al-Islami Tr.*, 2010 WL 1172947, at *7 (N.D. Tex. 2010); and *Centerline Indus., Inc. v. Knize*, 894 S.W.2d 874, 876 (Tex. App. 12 1995).[18]

---

[17] The ABA Rules are identical to the Texas Rules in all material respects. *See Am. Airlines*, 972 F.2d at 614 n. 2; see also *Asgaard*, 426 F. Supp. 3d. at 298 (same).

[18] Judicial recognition of the continuing duty of loyalty owed to a former client goes back at least as far as *In re Boone*, 83 F. 944 (C.C.N.D. Cal. 1897): "It is the general and well-settled rule that an attorney who has acted as such for one side cannot render services professionally in the same case to the other side, nor, in any event, whether it be in the same case or not, can he assume a position hostile to his client, and one inimical to the very interests he was engaged

9

30. A lawyer who represents a client in a prior matter must be disqualified from an adverse representation of another client in the same or a substantially related matter whether or not the lawyer has received confidential information in the prior matter. *See Am. Airlines* (to show that disqualification is warranted of former counsel representing adversary, movant "need only to show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented [it]"). This is because "[o]nce it is established that the prior matters are substantially related to the present case, the court will *irrebuttably* presume that relevant confidential information was disclosed during the former period of representation." *Am. Airlines*, 559 F.2d at 252. In other words, once a movant proves that adverse counsel previously represented them as counsel, the court's inquiry is narrowed to the sole issue of whether this prior representation is substantially related to the instant representation. *Am. Airlines,* 972 F.2d at 614. Thus, the substantial relationship test is "categorical in requiring disqualification upon the establishment of a substantial relationship between past and current representations." *Id.*; *see also Islander East Rental Program v. Ferguson*, 917 F. Supp. 504, 508 (S.D. Tex. 1996) ("It is beyond dispute that an attorney is prohibited from accepting representations to a former client if the subject matter of the current representation is substantially related to the subject matter of the former representation").

31. These ethical standards compel disqualification of Wick Phillips.

---

to protect; and it makes no difference, in this respect, whether the relation itself has terminated, for the obligation of fidelity and loyalty still continues." *Id.* at 952-54.

10

B.  **Wick Phillips' Prior Representation of Highland and Current
    Representation of HCRE Involve the Same Matter**

32.  Wick Phillips' Prior Representation of Highland in the Unicorn Acquisition and Wick Phillips' Current Adverse Representation of HCRE in challenging the Allocation or "ownership percentages" involve the "same matter."

33.  In its Prior Representation of Highland, Wick Phillips represented Highland in connection with the Loan Agreement, and specifically reviewed the Organizational Charts in the Loan Agreement to ensure the ownership interests in SE Multifamily were accurate. These Organizational Charts reflect the Allocations set forth in the LLC Agreement and subsequent Restated LLC Agreement. The revised ownership Allocation set forth in the Restated LLC Agreement is based on the ownership Allocations set forth in the Loan Agreement and the original LLC Agreement, adjusted only to reflect the ownership interest of the new investor and the pro rata reductions for HCRE and Highland. Thus, as discussed *supra*, the Loan Agreement, the LLC Agreement, and the Restated LLC Agreement all constitute one integrated transaction. *See* Kehr Transcript at 66:7-23 (testifying that the Agreements are "part of a single transaction" that "all existed for the single purpose of acquiring" property, and that the Loan Agreement "wouldn't have existed except for the other agreements.") Indeed, as noted *supra*, Wick Phillips admitted that the Loan Agreements and the LLC Agreements were parts of the "same global project." Wills Transcript at 5:5-9.

34.  Wick Phillips' Current Representation of HCRE involves the same matter because the HCRE Claim challenges the ownership allocations originally reflected in the Loan Agreement. *See* Kehr Transcript at 62:19-22 ("[HCRE's] claim and the effort to reallocate the ownership interest is hostile to the interests that [Wick Phillips] previously was engaged [by Highland] to protect in advance."). In challenging the ownership interests in SE Multifamily in its Current Representation, Wick Phillips is essentially attacking the very same work it performed for

11

Highland in connection with the Loan Agreement.  This is a clear violation of the duty of loyalty that is protected by Texas Rule 1.09(a)(3).  *See id.* at 72:8-12 ("[T]he loyalty concept is that the lawyer cannot attack the matter on which [they] previously was engaged by [the] former client, and sometimes that's phrased as attacking the lawyer's own work."); 73:7-13 ("[Wick Phillips] is acting in a way that is adverse to its former client with regard to the subject of the former representation.")  For this reason alone, disqualification of Wick Phillips as counsel to HCRE is required by Texas Rule 1.09(a)(3).

C.   **Wick Phillips Prior Representation of Highland and
     Current Representation of HCRE are Substantially Related**

35.    Even if the two matters are not the "same," *per se*, disqualification is still mandated because the Prior and Current Representations are clearly "substantially related."

36.    To be "substantially related," the "two representations need only involve the same subject matter."  *Am. Airlines* at 625 (internal quotations omitted); *see also Acad. of Allergy*, 384 F. Supp. 3d at 658 (noting that in order two matters to be substantially related, "there need not be an exact overlap of the issues of each representation.")  Representations involve the same subject matter where an issue is relevant or "common" to both.  *See Acad. of Allergy*, 384 F. Supp. 3d at 659.  There can be no dispute that Wick Phillips' Prior Representation of Highland in connection with the Loan Agreement involves the same subject matter as its Current Representation of HCRE.  In its Prior Representation, Wick Phillips: (a) worked with Highland to make sure that the Organizational Charts attached as Schedule 3.15 to the Loan Agreement were accurate, (b) revised the Charts and transmitted them between Highland and HCRE and to Keybank, and (c) each of those Organizational Charts (22 in total) reflected the same allocation set forth in the LLC Agreements.  Wick Phillips' Current Representation of HCRE involves challenges to the "ownership percentages" in the "organizational documents.  *See* **Morris Dec. Exs. E and G**.

12

37.     The new allocation set forth in the Restated LLC Agreement allocating a 6% ownership interest to BH Equities was based on the ownership allocations set forth in the Loan Agreement and was revised only to reflect the ownership interest of the new investor (BH Equities). Wick Phillips represented the Borrower, including Highland, in connection with the BH Equities investment and the adjustment of the Borrower's ownership interests.  Now, Wick Phillips (on behalf of only HCRE) contends the allocation and its own legal work was "a mistake." The two Representations necessarily involve the same critical issues of ownership allocations in SE Multifamily pursuant to the LLC Agreements, and are, therefore, "substantially related." *See Acad. of Allergy* 384 F. Supp. 3d at 659 (prior and current representations were substantially related where "representations share a common subject matter" and shared same "critical issue," and where counsel advises its current client on the very subject matter it had previously advised its former client); *Green v. Adm'rs of Tulane Educ. Fund*, No. 97-1869, 1998 WL 24424, at *4 (E.D. La. Jan. 23, 1998) (finding the current and former representation "substantially related" where counsel's representations of former client and current client "both involve the suit filed by" former client); *City of El Paso v. Sales-Porras Soule*, 6 F. Supp. 2d 616, 624 (W.D. Tex. 1998) (representations substantially related where former client relied on counsel's advice and where "[i]t would be patently unfair to allow the same lawyer to represent interests adverse to a former client regarding the same business affairs"); *Grosser*, 448 F. Supp. 2d at 783 (ordering disqualification of counsel where their "former intellectual property representation" of client is "substantially related to the intellectual property issue raised by the pleadings in this case. Thus, there is an irrebuttable presumption that relevant confidential information pertaining to the affairs of [former client] was disclosed to [counsel] while he was acting as attorney for [former client]"); *Am. Airlines*, at 625-28 (finding that, despite litigation involving different causes of action, law firm's three prior representations substantially related to current matter where counsel gave advice

13

to client on an issue that was of importance in the instant suit and was privy to former clients'

views on another issue related to subject suit).

38. Accordingly, the substantial relationship test is satisfied, and, for this additional,

disqualification of Wick Phillips is warranted.

## **CONCLUSION**

39. For the foregoing reasons, Highland respectfully requests that the Court enter an

order:

- Disqualifying Wick Phillips from serving as counsel to HCRE in connection with the prosecution of HCRE's Claim;

- Directing HCRE to reimburse Highland for all costs and fees incurred in making this Motion, including reasonable attorneys' fees;

- Directing HCRE to engage substitute counsel within fourteen (14) days from the entry of an Order granting the Motion to represent it in connection with the prosecution of HCRE's Claim; and

- Granting the Highland such other and further relief as the Court deems just and proper.

14

| | |
|---|---|
| Dated: October 1, 2021 | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | Jeffrey N. Pomerantz (CA Bar No. 143717)<br>John A. Morris (NY Bar No. 266326)<br>Kenneth Brown (CA Bar No. 100396)<br>Gregory V. Demo (NY Bar No. 5371992)<br>Hayley R. Winograd (NY Bar No. 5612569)<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 277-6910<br>Facsimile: (310) 201-0760<br>Email: jpomerantz@pszjlaw.com<br>         jmorris@pszjlaw.com<br>         kbrown@pszjlaw.com<br>         gdemo@pszjlaw.com<br>         hwinograd@pszjlaw.com |
| | -and- |
| | **HAYWARD PLLC** |
| | */s/ Zachery Z. Annable*<br>Melissa S. Hayward (Texas Bar No. 24044908)<br>Zachery Z. Annable (Texas Bar No. 24053075)<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Tel: (972) 755-7100<br>Fax: (972) 755-7110<br>Email: MHayward@HaywardFirm.com<br>         ZAnnable@HaywardFirm.com |
| | *Counsel for Highland Capital Management, L.P.* |

15