# EXHIBIT 83

Brant C. Martin
Texas State Bar No. 24002529
brant.martin@wickphillips.com
Jason M. Rudd
Texas State Bar No. 24028786
jason.rudd@wickphillips.com
Lauren K. Drawhorn
Texas State Bar No. 24074528
lauren.drawhorn@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255

**COUNSEL FOR NEXPOINT REAL ESTATE PARTNERS, LLC**
**F/K/A HCRE PARTNERS, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | § | Case No.: 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

**RESPONSE AND BRIEF IN OPPOSITION TO HIGHLAND'S SUPPLEMENTAL MOTION TO DISQUALIFY WICK PHILLIPS GOULD & MARTIN, LLP AS COUNSEL TO HCRE PARTNERS, LLC AND RELATED RELIEF**

NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC ("NREP") files this Response and Brief in Opposition ("Supplemental Response") to Highland's Supplemental Motion to Disqualify Wick Phillips Gould & Martin, LLP as Counsel to HCRE Partners, LLC and Memorandum of Law in Support (collectively, the "Supplemental DQ Motion") and respectfully states as follows:[1]

---

[1] This Supplemental Response supplements NREP's original Response and Brief in Opposition to Debtor's Motion to Disqualify Wick Phillips Gould & Martin LLP [ECF Nos. 2278, 2279] ("Original Response"). Capitalized terms not defined herein shall have the meaning ascribed in the Original Response or the Debtor's original Motion to Disqualify Wick Phillips Gould & Martin LLP as Counsel to HCRE Partners and Related Relief and Memorandum of Law in Support [ECF Nos. 2196, 2197] (collectively, the "Original DQ Motion").

**NREP'S RESPONSE AND BRIEF IN OPPOSITION TO DEBTOR'S**
**SUPPLEMENTAL MOTION TO DISQUALIFY**

1934054211015000000000009

## I. SUMMARY OF ARGUMENT

This disqualification dispute resolves around one question: is Wick Phillips' representation of borrowers in connection with the drafting and negotiation of a loan agreement the same or substantially related to Wick Phillips' representation of one member's challenge to the membership allocations in an amended and restated limited liability company agreement, which was amended six months after the loan funded? The answer to that question is **no** because (i) it is undisputed that Wick Phillips had no involvement in the formation, drafting, negotiation, or allocations in the Original LLC Agreement or the Amended LLC Agreement; (ii) the LLC Agreement was amended approximately six months after the Bridge Loan; and (iii) the membership allocations in the Amended LLC Agreement were not referenced, transcribed, or otherwise included in the Bridge Loan or its schedules. These matters are not the same or substantially related and, as such, the Court should deny HCMLP's Original and Supplemental DQ Motions.

## II. UNDISPUTED FACTS

**A.    The Unicorn Acquisition.**

1.    In or around July 2018, NexPoint Real Estate Advisors, LP ("NREA") decided to move forward with purchasing a $1.1+ billion portfolio from Starwood, with the project name "Unicorn."[2] The acquisition was done through three separate purchase and sale contracts, each dealing with a different "bucket" of properties (the "Unicorn PSAs").[3] Highland Capital Management LP ("HCMLP") was not a party to the Unicorn PSAs.[4] HCMLP was, however, a co-borrower along with at least seven other entities, including NREP, under the bridge loan with

---

[2]   App. 003.
[3]   App. 003, 222.
[4]   App. 006-221.

KeyBank National Association ("KeyBank"), which funded approximately half of the total purchase price (the "Bridge Loan").[5]

2. In the Bridge Loan, the Borrowers represented and warranted that, "[a]s of the Effective Date, no Person owns any Equity Interests in the Portfolio Properties, Summers Landing Property, or HCRE Properties, except as set forth on Schedule 3.15 attached hereto."[6] Many, although not all, of the properties purchased in the Unicorn acquisition were held indirectly by SE Multifamily Holdings, LLC ("SE Multifamily"), which HCMLP and NREP owned as of the effective date of the Bridge Loan.[7] Thus, in connection with the negotiation and drafting of the Bridge Loan, Wick Phillips received, transcribed, and transmitted information regarding the ownership structure of all entities with any equity interest in the properties in Schedule 3.15, including SE Multifamily, which owned 100% or 49% of the membership interests in certain limited liability companies that were the 100% owner of other limited liability companies or limited partnerships that ultimately held many, but not all, of the Portfolio or Mortgaged Properties, with varying layers of entities in between.[8]

3. While Wick Phillips made some "clean up changes" to the organizational charts including in Schedule 3.15, DST[9] counsel gave final sign-off on the organizational charts and Wick Phillips did not provide any material changes to the organizational charts.[10] Wick Phillips

---

[5] App. 003, App. 224-253; see also, Declaration of John A. Morris in support of Original DQ Motion [ECF No. 2198] ("Morris Decl."), Ex. B, pp. 16, 23.
[6] Morris Decl., Ex. B, Section 3.15.
[7] App. 225; Morris Decl., Ex. B, Schedule 3.15.
[8] Morris Decl., Ex. B, Schedule 3.15.
[9] DST stands for "Delaware Statutory Trust." DST counsel in the Project Unicorn matter was Baker Mackenzie.
[10] Morris Decl., Ex. C ("I made a couple of clean up changes to the DST Org Charts and **am waiting for sign off from Baker Mackenzie. Once I hear back from Baker, I will circulate those updated Org Charts.**") (emphasis added); Declaration of Kenneth H. Brown in support of Supplemental DQ Motion [ECF No. 2895] ("Brown Decl."), Ex. A pp. 79:23-80:5 ("Q: So, for example, you don't know whether the changes related to substance, do you? Mr. Martin: Objection, form. A: Well, I do because we are not DST counsel. So we would not be making material changes to the DST org chart.").

did not render business formation or transactional advice to HCMLP or NREP and simply confirmed the ownership interests set forth in the Original LLC Agreement matched the organization charts in Schedule 3.15.[11]

## B. SE Multifamily Original LLC Agreement

4. HCMLP personnel handled the formation of SE Multifamily in-house.[12] The purpose of SE Multifamily, according to its limited liability company agreement, was to

> (i) acquire, invest, hold, maintain, finance, improve, manage, develop, operate, lease, sell, exchange or otherwise deal in financial and real estate-related investment property; (ii) engage or participate in such other activities related or incidental thereto as the Manager may from time to time deem necessary, appropriate or desirable; and (iii) conduct any business or activity related to the foregoing activities that may lawfully be conducted by a limited liability company organized under the Act. Any or all of the foregoing activities may be conducted directly by the Company or indirectly through another limited liability company, partnership, joint venture or other arrangement.[13]

This purpose was not limited or specific to the Unicorn acquisition.[14]

5. SE Multifamily's Limited Liability Company Agreement was dated August 23, 2018 (the "Original LLC Agreement") and provided for capital contributions and percentage interests, consistent with the parties' respective nominal capital contributions of $51 and $49.[15] It is undisputed that HCMLP personnel asked the law firm of Hunton & Williams to draft and prepare the Original LLC Agreement.[16] It is also undisputed that Wick Phillips did not represent HCMLP or NREP in connection with the Original LLC Agreement:

> Q (Mr. Brown): Did Wick Phillips represent Highland in connection with the original LLC agreement?
>
> A (Mark Patrick): No.

---

[11] Morris Decl., Ex. B, Schedule 3.15; Ex. A, Schedule A.
[12] App. 003.
[13] Morris Decl., Ex. A, Section 1.3.
[14] Id.
[15] Morris Decl., Ex. B, Schedule A.
[16] Supp. App. 0421-22.

Q: Did Wick Phillips represent HCRE in connection with the original LLC agreement"

A: No.

…

Q: Did you ever have any communications with any lawyer from Wick Phillips with – that concerned the original LLC Agreement?

A: No.[17]

6. Wick Phillips did not participate in the formation, filing, initiation, or any ongoing needs of SE Multifamily or provide any advice or legal services in connection with the Original LLC Agreement.

C. **SE Multifamily Amended and Restated LLC Agreement.**

7. The Unicorn Acquisition closed on or around September 26, 2018.[18] Almost six months later, HCMLP prepared a First Amended and Restated Limited Liability Company Agreement dated March 15, 2019, to be effective as of August 23, 2018 (the "Amended LLC Agreement"). The Amended LLC Agreement added a member and restructured the membership percentages. The ownership interests set forth in the Amended LLC Agreement were not included in Schedule 3.15 to the Bridge Loan.[19] It is undisputed that Wick Phillips had no role in connection with the Amended LLC Agreement.[20] Instead, HCMLP drafted the Amended LLC Agreement internally.[21]

---

[17] Supp. App. 0428, 0430-31.
[18] App. 003, ¶ 4.
[19] Morris Decl., Ex. B, Schedule 3.15; Ex. D, Schedule A.
[20] Supp. App. 0459 ("Q: Do you know if Wick Phillips had any role in connection with the amended LLC agreement? A: My understanding, they had no role. Q: Did you ever have any communications with Wick Phillips in connection with the amended LLC agreement? A: I do not recall ever having communications with Wick Phillips on this amended LLC agreement.").
[21] App. 0334-0337.

**D.    The Contested Proof of Claim.**

8.    The current dispute resolves solely around the allocation of ownership percentages in the Amended LLC Agreement.[22] Specifically, whether HCMLP, which contributed $49,000 of the $312,408,757 contributed to the joint venture (i.e., 0.0015% of the contributed capital), is entitled to a percentage interest of 46.06% and 94.00% of the profits, based on the Amended LLC Agreement that HCMLP prepared almost six months after the Unicorn Acquisition closed. In other words, does the Amended LLC Agreement improperly allocate the ownership percentages among BH, NREP, and HCMLP due to mutual mistake, lack of consideration, and/or failure of consideration (the "Contested POC").

### III.  ARGUMENT AND AUTHORITIES

9.    As mentioned above, the key issue in this disqualification dispute is whether Wick Phillips' representation of HCMLP as a co-borrower on the Bridge Loan is the same or a substantially related matter to Wick Phillips' representation of NREP in connection with its dispute of the Amended LLC Agreement. Because the two matters are not the same or substantially related, the Court should deny HCMLP's Original and Supplemental DQ Motion.

10.    Two matters are "substantially related" when "a genuine threat exists that a lawyer may divulge in one matter confidential information obtained in the other because the facts and issues involved in both are so similar." *Classic Ink, Inc. v. Tampa Bay Rowdies*, Civ. Action No. 3:09-cv-784, 2010 WL 2927285, *3 (N.D. Tex. July 23, 2010). Courts consider three factors to determine whether present and former matters are substantially related: (i) the factual similarities between the current and former representation, (ii) the similarities between the legal question posed, and (iii) the nature and extent of the attorney's involvement with the former representation."

---

[22] Morris Decl., Ex. G, ¶ 5.

*Microsoft Corp. v. Commonwealth Scientific and Indus. Research Organisation*, Civ. Action Nos. 6:06 CV 549, 6:06 CV 550, 2007 WL 4376104, *7 (E.D. Tex. Dec. 13, 2007). "A superficial likeness between issues is not enough to equate to a substantial relationship." *Suarez v. Campbell*, Civ. Action No. 4:05-cv-741, 2006 WL 8438381, *2 (N.D. Tex. July 18, 2006).

11. There is simply no similarity in facts, legal questions, or the nature and extent of Wick Phillips' involvement in the Bridge Loan and the Contested POC. Wick Phillips' representation of the Borrowers to the Bridge Loan involved the negotiation and drafting of loan documents and advising on legal issues related to such financing. It did not involve the formation, organization, or drafting of any company agreements or advising on legal issues in connection with the same. On the other hand, Wick Phillips' representation of NREP in connection with the Contested POC involves the litigation of its claims of mutual mistake, lack of consideration, and/or failure of consideration in connection with the Amended LLC Agreement.

12. The mere fact that Wick Phillips transcribed the organizational structure, as set forth in the Original LLC Agreement, on a schedule to the Bridge Loan does not make the Bridge Loan and the Contested POC the same or substantially related. Wick Phillips was not involved in the organization and structuring of the membership interests, contributions, and allocations in the Original LLC Agreement. Wick Phillips was not involved in the reorganization and restructuring of membership interests, contributions, and ownership allocations as evidenced in the Amended LLC Agreement. SE Multifamily was not the direct owner of any of the properties acquired by the Bridge Loan funding and was the indirect owner of only some of the properties. And the Contested POC disputes the membership allocation in the Amended LLC Agreement, which HCMLP amended six months after the Bridge Loan and, again, in which Wick Phillips had no involvement.

Because the Bridge Loan and Contested POC are neither the same nor substantially related, the Court should deny HCMLP's Original and Supplemental DQ Motions.

## IV. CONCLUSION

For these reasons, NREP respectfully requests the Court deny HCMLP's Original and Supplemental DQ Motion and grant NREP such other relief at law or in equity to which it may be entitled.

Respectfully submitted,

*/s/ Lauren K. Drawhorn*
Brant C. Martin
Texas Bar No. 24002529
Jason M. Rudd
Texas Bar No. 24028786
Lauren K. Drawhorn
Texas Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255
Email: brant.martin@wickphillips.com
jason.rudd@wickphillips.com
lauren.drawhorn@wickphillips.com

**COUNSEL FOR NEXPOINT REAL ESTATE PARTNERS, LLC F/K/A HCRE PARTNERS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2021, a true and correct copy of the foregoing was served via the Court's electronic case filing (ECF) system upon all parties receiving such service in this bankruptcy case:

Jeffrey N. Pomerantz
Ira D. Kharasch
Kenneth Brown
John A. Morris
Gregory V. Demo
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Email: jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          kbrown@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com

Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Email: MHayward@HaywardFirm.com
          ZAnnable@HaywardFirm.com

          */s/ Lauren K. Drawhorn*
          Lauren K. Drawhorn