PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Reorganized Debtor. | ) |  |
|  | ) |  |

## HIGHLAND'S OBJECTION TO RENEWED MOTION TO
## RECUSE PURSUANT TO 28 U.S.C. § 455 AND BRIEF IN SUPPORT

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

PROCEDURAL BACKGROUND.......................................................... 4

I.      GENERAL BACKGROUND TO THE BANKRUPTCY CASE ................... 4

II.     MOVANTS' INITIAL MOTION IS DENIED ................................... 5

III.    MOVANTS' APPEAL OF THE RECUSAL ORDER IS DISMISSED ........... 6

IV.     MOVANTS FILE THE SUPPLEMENTAL MOTION ......................... 7

V.      THE COURT HOLDS A STATUS CONFERENCE.......................... 8

VI.     MOVANTS FILE THE RENEWED MOTION ............................... 9

ADDITIONAL BACKGROUND ............................................................. 11

I.      MULTIPLE COURTS HAVE QUESTIONED MR. DONDERO'S CONDUCT
        OR SANCTIONED HIM AND HIS CONTROLLED ENTITIES ............... 11

II.     HIGHLAND FILES BANKRUPTCY; THE CASE IS TRANSFERRED TO
        THIS COURT ................................................................ 13

III.    THE BASIS FOR RECUSAL ASSERTED IN THE RENEWED MOTION........... 14

        A.      The December 2019 Transfer Motion................................. 14

        B.      The January 2020 Settlement Hearing............................... 15

        C.      The February 19, 2020 Application-to-Employ Hearing.................. 16

        D.      The June 2020 CLO HoldCo, Ltd., Hearing........................... 18

        E.      The July 2020 Exclusivity Hearing................................. 20

        F.      The December 2020 Restriction Motion.............................. 20

                i       Highland Had the Exclusive Contractual Right to Buy and Sell
                        CLO Assets ................................................. 21

                ii      The Dondero Parties Did Not Accuse Highland of Any
                        Wrongdoing ................................................ 21

                iii     Mr. Dondero Controls the Dondero Parties and Caused the
                        Restriction Motion to Be Filed .............................. 22

                iv      Mr. Norris Was Not a Competent Witness and Had No Credibility ....... 22

                v       Movants Did Not Notify Any Other CLO Investors of the
                        Restriction Motion ......................................... 22

        G.      The January 2021 Hearing on Highland's Motion for Injunctive Relief............ 24

        H.      January 2021 Examiner Motion.................................... 26

        I.      February 2021 Confirmation Hearing................................ 27

i

J.      January and July 2021 Orders Requiring Mr. Dondero's Appearance ............... 29

K.      May 2021 Denial of Mr. Dondero's Motion to Compel Testimony ................... 30

L.      August 2021 Order Finding Certain Movants in Contempt of this Court ........... 31

M.      September 2022 Denial of HCRE's Motion to Withdraw Its Proof of
        Claim. ................................................................................................................. 34

ARGUMENT ................................................................................................................. 39

I.      THE RENEWED MOTION MUST BE DENIED AS UNTIMELY ............................. 41

II.     THE RENEWED MOTION MUST BE DENIED ON THE MERITS ......................... 45

A.      There Is No Extrajudicial Bias Present Here ...................................................... 45

B.      This Court Does Not Have Deep-Seated Antagonism Toward Movants ........... 47

III.    THIS COURT LACKS THE AUTHORITY TO GRANT MOVANTS'
        ALTERNATIVE RELIEF ................................................................................ 49

CONCLUSION ............................................................................................................... 50

DOCS_NY:46569.9 36027/003

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Andrade v. Chojnacki*,
   338 F.3d 448 (5th Cir. 2003) .............................................................. 41, 45, 46, 48

*Brown v. Oil States Skagit Smatco*,
   664 F.3d 71 (5th Cir. 2011) ............................................................................... 45

*Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*,
   2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022)....................................... 31, 34

*Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*
   2022 Bankr. LEXIS 659 (Bankr. N.D. Tex. Mar. 11, 2022) ............................................ 32

*Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*
   643 B.R. 162 (N.D. Tex.2022)............................................................................ 32

*Conkling v. Turner*,
   138 F.3d 577 (5th Cir. 1998) ........................................................................ 45, 46

*Da Silva Moore v. Publicis Groupe*,
   868 F. Supp. 2d 137 (S.D.N.Y. 2012)................................................................. 43, 44

*Delesdernier v. Porterie*,
   666 F.2d 116 (5th Cir. 1982) .............................................................................. 40

*Friendly Fin. Serv.-Eastgate, Inc. v. Dorsey (In re Dorsey)*,
   489 Fed. Appx. 763, 764 (5th Cir. 2012)................................................................. 49

*Garcia v. Woman's Hosp. of Tex.*,
   143 F.3d 227 (5th Cir. 1998) .............................................................................. 48

*Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors for La. System*,
   286 Fed. App'x 864 (5th Cir. 2008) .................................................................... 40, 43

*Henderson v. Dep't of Pub. Safety and Corrs.*,
   901 F.2d 1288 (5th Cir. 1990) ......................................................................... 46, 48

*Highland Cap. Mgmt, L.P. v. Dondero (In re Highland Cap. Mgmt, L.P.)*,
   2021 Bankr. LEXIS 1533 (Bankr. N.D. Tex. Jun. 7, 2021) ............................................... 5

*Hill v. Breazeale*,
   197 Fed. App'x 331 (5th Cir. 2006) ................................................................... 40, 42

*Hill v. Schilling*,
   495 Fed. App'x 480 (5th Cir. 2012) ............................................................... 40, 43, 44

*In re Chevron U.S.A., Inc.*,
   121 F.3d 163 (5th Cir. 1997) .............................................................................. 47

*Liteky v. United States*,
   510 U.S. 540 (1994)............................................................................. 45, 46, 47, 48

*Manchester, Inc. v. Lyle (In re Manchester, Inc.)*
   2008 Bankr. LEXIS (Bankr. N.D. Tex. Dec. 19, 2008)........................................... 36, 37, 39

*Martin v. Monumental Life Ins. Co.*,
   240 F.3d 223 (3d Cir. 2001).............................................................................. 44

DOCS_NY:46569.9 36027/003

*Miller v. Sam Houston State Univ.*,
   986 F.3d 880 (5th Cir. 2021) ................................................................. 47

*NexPoint Advisors, L.P., et al. v. Highland Cap. Mgmt., L.P.*,
   2022 U.S. App. LEXIS 25107 (5th Cir. Sept. 7, 2022) ................................ 4, 5, 28

*Nix v. Major League Baseball*,
   2022 U.S. Dist. LEXIS 104770 (S.D. Tex. Jun. 13, 2022) ................................ 25

*Travelers Ins. Co. v. Liljeberg Enters., Inc.*,
   38 F.3d 1404 (5th Cir. 1994) ................................................................ 40

*United States v. Bremers*,
   195 F.3d 221 (5th Cir. 1999) ................................................................ 41

*United States v. Jordan*,
   49 F.3d 152 (5th Cir. 1995) ................................................................. 41

*United States v. Landerman*,
   109 F.3d 1053 (5th Cir. 1997) ............................................................... 48

*United States v. Olis*,
   571 F. Supp. 2d 777 (5th Cir. 2008) ........................................................ 44

*United States v. Sanford*,
   157 F.3d 987 (5th Cir. 1998) ........................................................... 40, 43

*United States v. Williams*,
   127 Fed. App'x 736 (5th Cir. 2005) ......................................................... 48

*United States v. York*,
   888 F.2d 1050 (5th Cir. 1989) .............................................................. 44

*Vieux Carre Prop. Owners, Residents & Assocs. v. Brown*,
   948 F.2d 1436 (5th Cir. 1991) .............................................................. 41

*Weisshaus v. Fagan*,
   456 Fed. App'x 23 (2d Cir. 2012) ....................................................... 43, 44

## STATUTES

11 U.S.C. § 330 ......................................................................... 17

18 U.S.C. § 3057(a) ..................................................................... 39

28 U.S.C. § 158(a) .................................................................... 7, 49

28 U.S.C. § 158(a)(1) ................................................................... 49

28 U.S.C. § 455(a) ...................................................................... 40

28 U.S.C. § 455(b)(1) ................................................................... 40

## RULES

FRBP 3006 .............................................................................. 36

FRBP 5004(a) ........................................................................... 40

DOCS_NY:46569.9 36027/003

Highland Capital Management, L.P. ("Highland"), by and through its undersigned counsel, hereby files this objection (the "Objection")[1] to *James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware Limited Liability Company's Renewed Motion to Recuse* [Docket Nos. 3541, 3542] (the "First Renewed Motion"),[2] as amended by Docket Nos. 3570 and 3571  (as amended, the "Renewed Motion").[3]  In support of its Objection, Highland states as follows:

## PRELIMINARY STATEMENT[4]

1.    Under Mr. Dondero's direction, Highland was forced to file bankruptcy in October 2019 to protect itself from an avalanche of adverse rulings that had either been entered against it and its Dondero-controlled affiliates or were about to be entered.  For nearly a decade, courts and arbitration panels in Texas, Delaware, New York, and in foreign jurisdictions such as the Cayman Islands, Bermuda, and Guernsey, have issued a series of rulings against Mr. Dondero and his enterprise, some with stinging rebukes.

2.    Now, Mr. Dondero has filed the Renewed Motion to recuse this Court in the misguided belief that he might have more success with a different judge.  But the lengthy record proves that Mr. Dondero's problem is not judicial bias.  It is the never-ending, meritless, vindictive, and vexatious litigation strategy that Mr. Dondero stubbornly clings to regardless of the burdens

---

[1] Concurrently herewith, Highland is filing its *Appendix in Support of Highland's Objection to Renewed Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support* (the "Appendix").  Citations to the Appendix are annotated as follows:  Ex. #, Appx. #.

[2] Citations to the First Renewed Motion refer to *Movants' Memorandum of Law in Support of Renewed Motion to Recuse Pursuant to 28 U.S.C. § 455* [Docket No. 3542].

[3] Citations to the Renewed Motion refer to *Movants' Amended Memorandum of Law in Support of Amended Renewed Motion to Recuse Pursuant to 28 U.S.C. § 455* [Docket No. 3571].

[4] All capitalized terms used but not defined in this Preliminary Statement have the meanings given to them below.

1

imposed on the judicial system, the havoc wrought, and the damage inflicted on himself, Highland's creditors, and even his own steadfast loyalists.

3.      The Renewed Motion is Movants'[5] third attempt to recuse this Court from all matters relating to Highland's bankruptcy.  Like Movants' Initial and Supplemental Motions to recuse, it is untimely, replete with factual misstatements and omissions, premised on final orders or orders upheld on appeal, and must be denied.

4.      The Initial Motion was filed on March 18, 2021—(a) sixteen months after the Petition Date, (b) fourteen months after venue was transferred to this Court, (c) one month after entry of the Confirmation Order, (d) just before the first contempt hearing, and (e) after more than 2,000 documents were filed on the main docket.[6]  The Supplemental Motion was filed on July 19, 2022—(a) twenty-two months after the Petition Date, (b) twenty months after venue was transferred, (c) eleven months after entry of the Confirmation Order, (d) five months after the District Court denied Movants' appeal of the Initial Motion, and (e) after more than 3,400 documents were filed on the main docket, all in an effort to prevent this Court from adjudicating the Kirschner Adversary.  Now, nearly three years after Highland's bankruptcy proceeding was transferred to this Court, Movants—for the third time—complain that this Court is biased against Mr. Dondero—as if no other judge or fact-finder had previously ruled against him and the entities he controls.

5.      Movants' Renewed Motion largely regurgitates the "evidence" in the untimely Initial Motion; namely, snippets of out-of-context quotes and eight rulings out of the hundreds

---

[5] "Movants" means, collectively, James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P. ("NexPoint"), The Dugaboy Investment Trust ("Dugaboy"), Get Good Trust ("Get Good"), and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC ("HCRE").

[6] This does not include hundreds of docket entries in adversary proceedings in which Mr. Dondero and/or his affiliates were parties.

entered by this Court (some of which have now been affirmed by the appellate courts). However, Movants do cite to five additional orders as "new" evidence of this Court's alleged bias. Like the old evidence, the "new" evidence is untimely[7] and fails to support any credible claim of bias or prejudice.

6.      Movants thus failed to seek disqualification "at the earliest possible moment." They instead sat on their hands for almost a year and a half before filing the Initial Motion (and substantially longer before filing the Supplemental and Renewed Motions) after supposedly concluding that this Court was biased. As this Court previously ruled, Movants' indefensible delay in seeking recusal is fatal, and the Renewed Motion, like the Initial Motion, must be denied as untimely. The Renewed Motion also fails on the merits—largely for the same reasons the Initial Motion did. Movants have not, and cannot, meet their heavy burden of proving this Court is biased or somehow prejudiced against Movants. Seen in context, the record demonstrates that (a) numerous courts and tribunals have consistently ruled against Mr. Dondero and his enterprise, thereby demonstrating that this Court does not stand alone, (b) this Court's rulings and orders are sound (and have largely been upheld on appeal), (c) there is no evidence presented of extrajudicial bias or prejudice, and (d) no objective person would find that Mr. Dondero and his enterprise are the victims of improper judicial conduct rising to the extraordinary remedy of recusal. Mr. Dondero's desire to re-litigate the record using the Renewed Motion is both unavailing and procedurally improper.

7.      Further, this Court, respectfully, cannot grant Movants' alternative request to "make clear that any order denying recusal is final so that Movants may appeal the Court's order to the Northern District of Texas." This request is precluded by the District Court's February

---

[7] One order was entered before the Initial Motion was filed and three were entered in mid-2021, over a year ago.

Order dismissing Movants' appeal of the denial of the Initial Motion; as Movants concede, this Court simply lacks the authority to unilaterally determine that its orders are final and appealable. And, while this Court could remove the reservation of rights from its Recusal Order, it cannot force the District Court to hear an appeal of that interlocutory order.

## PROCEDURAL BACKGROUND

### I.     General Background to the Bankruptcy Case

8.      On October 16, 2019 (the "Petition Date"), Mr. Dondero caused Highland to file a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Court").  The Delaware Court entered an order transferring venue of Highland's bankruptcy case to this Court [Docket No. 186][8] on December 4, 2019.

9.      On February 22, 2021, this Court, over the objections of Mr. Dondero and his controlled affiliates, entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order"), which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808] (the "Plan").  The Plan became effective on August 11, 2021 [Docket No. 2700].

10.     On September 8, 2022, the U.S. Court of Appeals for the Fifth Circuit (the "Fifth Circuit") affirmed, in material part, the Confirmation Order's factual findings and legal conclusions.  *NexPoint Advisors, L.P., et al. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. App. LEXIS 25107 (5th Cir. Sept. 7, 2022).

---

[8] Unless otherwise indicated, all docket numbers refer to the main docket maintained by this Court.

## II.    **Movants' Initial Motion Is Denied**

11.    On March 18, 2021, Movants—Mr. Dondero and entities he controls[9]—filed their motion to recuse this Court [Docket Nos. 2060, 2061, 2062] (the "Initial Motion").[10]  The Initial Motion asked this Court to recuse itself from any adversary proceedings and future contested matters involving Movants or any entity connected to Mr. Dondero.

12.    On March 23, 2021, this Court denied the Initial Motion [Docket No. 2083] (the "Recusal Order") finding that "the timing does not seem to pass muster."  The Initial Motion (a) "was filed more than 15 months after" this case was transferred to this Court; (b) "comes after many dozens of orders have been issued by the [Bankruptcy] Court," and (c) "comes on the eve of a contempt hearing."[11]  Recusal Order at 7.  This Court further found that, even if the Initial Motion had been timely, recusal was not warranted on the merits.[12]  Accordingly, this Court determined, in an exercise of its discretion, that Movants' assertions did not "rise to the threshold standard of

---

[9] Confirmation Order ¶ 19; *see also NexPoint Advisors, L.P.*, 2022 U.S. App. LEXIS 25107, at *24-26.

[10] Citations to the Initial Motion refer to *James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, The Get Good Trust, and NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC, a Delaware Limited Liability Company's Brief in Support of Their Motion to Recuse 28 U.S.C. § 455* [Docket No. 2061].

[11] On June 7, 2021, Mr. Dondero was held in contempt for violating this Court's injunction.  *Highland Cap. Mgmt., L.P. v. Dondero (In re Highland Cap. Mgmt., L.P.)*, 2021 Bankr. LEXIS 1533 (Bankr. N.D. Tex. Jun. 7, 2021).  Mr. Dondero subsequently appealed this Court's ruling.  On August 17, 2022, the District Court affirmed this Court's findings in all material respects.  *Order*, Case No. 3:21-cv-01590-N, Docket No. 42 (N.D. Tex. Aug. 17, 2021).  Ex. 1, Appx. 1-14.  Notably, Movants do not contend that this Court's contempt order is evidence of its bias.

[12] This Court noted that Movants' allegations of "extrajudicial" bias resulting from the Acis Bankruptcy (defined below) were "at the heart of the" Initial Motion (Recusal Order at 7) but explained it did not form any animus or bias toward Movants during the Acis Bankruptcy and concluded that any knowledge learned from the Acis Bankruptcy did not constitute "extrajudicial" knowledge warranting recusal.  *Id.*  This Court also found that "more generally," it did not harbor, and has not shown, any "personal bias or prejudice" against Movants.  Recusal Order at 10.  This Court explained that it "has merely addressed motions, objections and other pleadings as they have been presented," and "has issued and enforced orders where requested and warranted."  *Id.*  "This court and all courts sometimes use strong words as part of managing a complex and contentious case.  None of this should be interpreted as 'bias' or 'prejudice … clashes between a court and counsel for a party [are] an insufficient basis for disqualification under Section 455."  *Id.* (citations omitted).  This Court stated it has "the utmost respect for [Movants]" and has "no disrespect for Mr. Dondero on a personal level or any of the [Movants]."  *Id.*

raising a doubt in the mind of a reasonable observer as to" this Court's impartiality.[13]  (*Id.* at 10).

### III.    Movants' Appeal of the Recusal Order Is Dismissed

13.     Movants appealed the Recusal Order to the U.S. District Court for the Northern District of Texas (the "District Court") on April 1, 2021.[14]  On June 28, 2021, Movants filed their appellate brief[15] (a) arguing the Initial Motion was "timely" and (b) otherwise restating their baseless arguments that this Court is prejudiced and biased and exhibits antagonism towards Movants.  On July 28, 2021, Highland filed its appellate brief (the "Highland Brief").[16]  Exs. 5-6, Appx. 184-2048.

14.     On December 10, 2021, the District Court, *sua sponte*, issued an order questioning the finality of the Recusal Order, directing supplemental briefing, and observing that this Court "expressly 'reserve[d] the right to supplement or amend'" the Recusal Order.  Ex. 9, Appx. 2069-2073.  On December 15, 2021, Movants filed their supplemental brief.  Ex. 10, Appx. 2074-2084.  Highland filed its supplemental brief on December 20, 2021.  Ex. 11, Appx. 2085-2097).

15.     On February 9, 2022, the District Court denied Movants' appeal finding that under clear Fifth Circuit precedent, the Recusal Order was *per se* interlocutory, could only be reviewed upon final judgment, and was not subject to the collateral order doctrine (the "February Order").[17]

---

[13] Movants contend that "the Court … applied a subjective standard [in the Recusal Order], based entirely on self-assessment."  Renewed Motion at 1.  This contention is spurious and belied by this Court's explicit statements to the contrary.  *See, e.g.,* Ex. 2, Appx. 31-32 ("And the standard is I have to stand back and look at would a reasonable person have concerns here.  So I can't just say, I know I'm not biased, I don't think I'm biased; I have to look at what a reasonable person might think. So you presented to me a 2,722-page appendix for me to do my job and look at what a reasonable person would think.  So, then would it raise a doubt in the mind of a reasonable observer as to the judge's impartiality?").

[14] Case No. 3:21-cv-00879-K (N.D. Tex.).

[15] Case No. 3:21-cv-00879-K, Docket Nos. 16, 17 (N.D. Tex.).

[16] The District Court granted Highland's motion to intervene over Movants' objection.  Exs. 7-8, Appx. 2049-2064.

[17] The February Order did not rely on this Court's reservation of rights in its analysis but simply held that the Recusal Order, like all orders denying recusal, was interlocutory and could not be appealed until a final judgment in this case, which the record reflected had not—and still has not—occurred.  *See* Ex. 36, Appx. 4165-4169.

6

The District Court also rejected Movants' arguments that (a) a different standard of finality applied in bankruptcy proceedings and (b) the Recusal Order was appealable under the "collateral order doctrine." *Id.* Appx. 2105-2106.[18]

16.    Movants did not appeal the February Order or file a petition for rehearing.

## IV.    **Movants File the Supplemental Motion**

17.    On July 20, 2022, more than five months after the District Court entered the February Order, Movants filed their supplemental motion to recuse this Court [Docket No. 3406] (the "Supplemental Motion") asking this Court to enter a final, appealable version of the Recusal Order (implying this Court could dictate to the District Court that its orders are appealable and could do so by deleting the reservation of rights from the Recusal Order).[19]  Movants also sought to introduce new "examples" of this Court's bias "to preserve their record for appeal and to ensure that all potential grounds for recusal may be considered by an appellate court."  Supplemental Motion ¶ 8.

18.    On August 15, 2022, Highland objected [Docket No. 3444] (the "Highland Objection") arguing that (a) this Court lacked the authority to determine whether the Recusal Order was final; (b) the Supplemental Motion was procedurally improper as it required (i) a motion under Federal Rule of Civil Procedure ("FRCP") 54(b) or (ii) an entirely new motion predicated solely on Movants' "new" examples of bias; and (c) Movants' new "examples" of bias were meritless. The Highland Objection included an extensive, annotated chart [Docket No. 3444-1] proving that Movants' new "examples" (a) were premised on material distortions or omissions of (i) fact, (ii)

---

[18] The District Court also ruled on Movants' request for leave to appeal an interlocutory order (*i.e.*, the Recusal Order) under 28 U.S.C. § 158(a)(3).  After a lengthy analysis, the District Court held that Movants "failed to satisfy any of the three § 1292(b) criteria" and denied Movants' request to appeal the Recusal Order. Ex. 12, Appx. 2106-2110.

[19] Supplemental Motion ¶ 6 ("On appeal of the [Recusal Order] … Judge Kinkeade dismissed the appeal, holding that the [Recusal Order] was non-final and non-appealable.  In doing so, Judge Kinkeade pointed to language in the [Recusal Order] in which the Court expressly 'reserve[d] the right to amend or supplement' its ruling.")

this Court's rulings, and/or (iii) statements on the record and (b) viewed fairly, were not the product

of bias, prejudice, or lack of impartiality.

19.     On August 22, 2022, Movants filed their reply seeking to have their Supplemental

Motion treated as a motion to supplement the record pursuant to FRCP 54 and, again, reiterating

their procedurally and substantively improper request that this Court "amend the [Recusal Order]

to make it final."  [Docket No. 3463].

## V.     <u>The Court Holds a Status Conference</u>

20.     On August 31, 2022, this Court held a status conference on the Supplemental

Motion during which it asked Movants to clarify their position, the relief requested, and the

procedural basis for that relief.[20]  Movants responded that, notwithstanding the confusion caused

by their procedurally and substantively deficient Supplemental Motion, they were seeking two

things: (a) removal of the reservation of rights from the Recusal Order and (b) supplementation of

the appellate record.   At the Status Conference, Highland stated that it was not opposed to

Movants' requested relief *per se* but would *not* consent to Movants' procedurally improper request

to have this Court designate the Recusal Order "final."  Ex. 2, Appx. 29.

21.     Ultimately, on September 1, 2022, this Court denied the Supplemental Motion as

"procedurally improper" but allowed Movants to file "(1) a simple motion … seeking only a

revised and amended Recusal Order that removes" the reservation of rights or "(2) a new motion

to recuse … based on any alleged new evidence or grounds for recusal that were not considered

… at the time of [this Court's] consideration of the original Recusal Order" [Docket No. 3479]

(the "<u>September Order</u>").

---

[20] On August 19, 2022, this Court entered an order [Docket No. 3462] converting the hearing on the Supplemental
Motion to a status conference and requiring Movants to clarify the legal and procedural basis for the Supplemental
Motion.

## VI.    **Movants File the Renewed Motion**

22.    On September 27, 2022, Movants filed the First Renewed Motion—their third motion to recuse—and amended it on October 17, 2022.  In the Renewed Motion, Movants incorporate the entirety of the Initial Motion by reference (Renewed Motion at n. 11)[21] and ask this Court to recuse itself.  In the alternative, Movants reiterate their improper request that this Court "make clear that any order denying recusal is final so that Movants may appeal the Court's order to the Northern District of Texas."  *Id.* at 24.

23.    The Renewed Motion, and the relief it requests, thus violates this Court's September Order.[22]

24.    Moreover, like the Initial and Supplemental Motions, the Renewed Motion is untimely and is, again, premised on material distortions or omissions of fact, this Court's rulings, and/or statements on the record.  In the Renewed Motion, Movants argue the following are a basis to recuse this Court:

- This Court's knowledge gained during the 2019 Acis Bankruptcy (defined below);

- The February 2020 hearing on Highland's retention of Foley Gardere, Foley & Lardner LLP ("Foley");

- The June 2020 hearing regarding the release of approximately $2.5 million from the court registry;

---

[21] In contrast, the Renewed Motion does *not* incorporate the Supplemental Motion or cite to the "examples" of this Court's bias included therein nor does it include certain of the "examples" of bias raised in the appeal of the Recusal Order.  Consequently, Movants have waived their right to rely on those un-cited "examples" of alleged bias and Highland will not address them here.  Movants' First Renewed Motion also referenced an Appendix A which allegedly "list[ed] many other, similar examples" of this Court's bias.  First Renewed Motion at 6 n.27.  However, Movants amended the First Renewed Motion to eliminate footnote 27 and the reference to Appendix A.  Docket No. 3571.  Highland reserves all rights to object if Movants ever seek to rely on any alleged "examples" of bias not specifically identified or incorporated in the Renewed Motion.

[22] On August 31, 2022, this Court stated from the bench that Movants could file (a) a simple motion to remove the reservation of rights under FRCP 54 or (b) "a new motion to recuse … to start this over and supplement the record."  Ex. 2, Appx. 39.  Based on the entirety of the August 31, 2022, transcript and the clear language of the September Order, however, it is clear that this Court did not intend Movants to re-argue the entirety of the Initial Motion.

- The July 2020 hearing at which this Court inquired as to whether Highland had received PPP loans;

- The December 2020 hearing on the Dondero Parties' (defined below) attempt to halt Highland's trading in the CLOs;

- The January 2021 injunction prohibiting the Dondero Parties from interfering with Highland's management of the CLOs;

- The January 2021 motion to appoint an examiner filed by Dugaboy and Get Good, Mr. Dondero's family trusts, and joined by Mr. Dondero;

- The February 2021 confirmation hearing and Confirmation Order;

- The January 2021, May 2021, and July 2021 orders requiring Mr. Dondero and Dugaboy, respectively, to appear at certain hearings;

- The May 2021 denial, in part, of Mr. Dondero's motion to compel the deposition testimony of James P. Seery, Jr.;

- The August 2021 order finding certain Movants and others in contempt for violation of this Court's orders; and

- The September 2022 hearing denying HCRE's motion to withdraw its proof of claim.

Of the foregoing "examples," twelve are orders entered by this Court.  Movants appealed only two of those orders; the appellate courts denied both appeals and affirmed this Court's orders.  All Movants' "examples" (other than the August 2021 contempt order and the September 2022 denial of claim withdrawal) were previously asserted by Movants in either the Initial Motion or Supplemental Motion and debunked as false by Highland at great expense.[23]  Yet, Movants double down on these "examples" as if they were true and ignore Highland's detailed factual corrections.

25.     Ultimately, the Renewed Motion, like Movants' prior attempts to recuse, provides no credible evidence of this Court's bias, prejudice, or lack of impartiality and, like the Initial Motion which it largely duplicates, should be summarily denied.

---

[23] Highland Objection, Exhibit A; Highland Brief, Ex. 5, Appx. 196-219.

## ADDITIONAL BACKGROUND

I.    **Multiple Courts Have Questioned Mr. Dondero's Conduct or Sanctioned Him
and His Controlled Entities**

26.    Between 2008 and the Petition Date, courts and arbitration panels in multiple

domestic and foreign jurisdictions issued a plethora of judgments and orders against Mr. Dondero,

Highland, and other entities then under Mr. Dondero's control.[24]

27.    For example, in March 2019, a blue-ribbon arbitration panel issued a 56-page

decision in which it (a) rejected nearly every argument advanced by Highland and made highly

critical assessments of the credibility of Highland's witnesses; (b) found Highland had breached

its fiduciary duties to its investors, breached certain agreements, and engaged in other wrongful

conduct; and (c) rendered an award against Highland in excess of $150 million.[25]  Just two months

later, in an unrelated case, the Delaware Chancery Court found that the Dondero-related defendants

improperly withheld dozens of documents in discovery on privilege grounds and ruled that there

was "a reasonable basis to believe that a fraud has been perpetrated" such that the Chancery Court

applied the "crime-fraud exception" to the attorney-client privilege.[26]

---

[24] An overview of some of the prepetition litigation involving Highland and other Dondero-related parties is set forth in the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*, Docket No. 1473 at 20-24.

[25] *See Partial Final Award* rendered in the arbitration captioned *Redeemer Comm. of the Highland Crusader Fund v. Highland Capital Management, L.P.*, Case No. 01-16-0002-6927. Ex. 13, Appx. 2113-2175.  The Partial Final Award was incorporated into the arbitration panel's final award (Ex. 14, Appx. 2176-2199), and a hearing in the Delaware Chancery Court to have the award confirmed was about to begin when Mr. Dondero caused Highland to file for bankruptcy protection for the purpose of gaining the protection of the automatic stay.

[26] *Daugherty v. Highland Cap. Mgmt., L.P.*, C.A. No. 2018-0488-MTZ, May 17, 2019 transcript (bench ruling on motion to compel production of documents) at 10-15.  Ex. 15, Appx. 2210-2215.  The Dondero-related defendants made three desperate but unsuccessful attempts to overturn or stay the Chancery Court's rulings.  *See Order Denying Application to Certify Interlocutory Appeal*, entered in C.A. No. 2018-0488-MTZ on July 8, 2019 ¶ K-L.  Ex. 16, Appx. 2303-2304.

28.     The adverse rulings against Mr. Dondero and his controlled entities are legion[27]— and have resulted in the imposition of judgments and awards totaling more than $1 billion (inclusive of interest).  This Court had no involvement in any of these cases (except, in certain cases, to adjudicate proposed claim settlements under Bankruptcy Rule 9019).

29.     This Court's experience with Mr. Dondero and Highland began in January 2018, when it was assigned a case captioned *In re Acis Capital Management, L.P.* (the "Acis Bankruptcy").[28]  The Acis Bankruptcy was involuntarily commenced by Joshua Terry, a former Highland executive who had obtained an $8 million arbitration award against the Acis entities then under Mr. Dondero's control, but who could not collect on the judgment because Mr. Dondero allegedly orchestrated a fraudulent transfer of assets that left the Acis debtors judgment proof.  Mr. Dondero and Mr. Terry were the chief antagonists in the highly contested Acis Bankruptcy, and this Court made numerous credibility findings against Mr. Dondero and his associates before confirming a plan of reorganization that effectively transferred control of a valuable business from Mr. Dondero and Highland to Mr. Terry.[29]  Mr. Dondero and entities controlled by him appealed

---

[27] Movants argue that, prior to the bankruptcy, Mr. Dondero and his controlled entities were merely defendants in litigation (Renewed Motion at 2) and that Mr. Dondero had never been held personally "liable for any misconduct in relation to his management of [Highland's] business" (*Id.*).  Movants ignore that each Movant is controlled by Mr. Dondero and Mr. Dondero's controlled entities have incurred significant liability to third parties at Mr. Dondero's direction and under his oversight.  In any event, as relevant here, there is no dispute that—regardless of whether he or an entity he controlled was the plaintiff or the defendant—numerous tribunals entered a string of adverse orders and judgments just as this Court has.  Again, the problem is not this Court; it is that Mr. Dondero and his loyalists advance meritless positions and therefore lack credibility.

[28] Case No. 18-30264-sgj11 (Bankr. N.D. Tex.).

[29] *See, e.g.*, (a) *Order Denying Alleged Debtors' Joint Motion to Dismiss the Involuntary Petitions Filed by Joshua N. Terry for Lack of Subject Matter Jurisdiction or, Alternatively, to Compel Arbitration*, Case No. 18-30264-sgj11, Docket No. 75 (Bankr. N.D. Tex. Mar. 20, 2018) (Ex. 17, Appx. 2312-2316); and (b) *Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital* Management*, L.P. and Acis Capital Management GP, LLC, as Modified,* Case No. 18-30264-sgj11, Docket No. 829 (Bankr. N.D. Tex. Jan. 31, 2019) (Ex. 18, Appx. 2317-2546).

the Acis confirmation order, but the appeals were denied by the District Court and the Fifth
Circuit.[30]

## II.     Highland Files Bankruptcy; the Case Is Transferred to this Court

30.     With various judgment creditors bearing down, on October 16, 2019, Mr. Dondero
caused Highland to file this case in the Delaware Court hoping it would be a more hospitable
forum.  Less than two weeks later, on November 1, 2019, the Committee sought to transfer the
case to this Court [Docket No. 86] (the "Transfer Motion").  Ex. 21, Appx. 2637-2796.  The
Committee set out its intentions in filing the Transfer Motion:

> [T]he Dallas Bankruptcy Court is already intimately familiar with the Debtor's
> principals and complex organizational structure [because the Acis Bankruptcy is
> pending in that Court].  Specifically, the Dallas Bankruptcy Court has (a) heard
> multiple days' worth of material testimony from the Debtor's principal owner
> (James Dondero), the Debtor's minority owner (Mark Okada), the Debtor's general
> counsel, at least two assistant general counsels, and numerous other employees of
> the Debtor and other witnesses; and (b) issued at least six published opinions . . .
> [This Court is] intimately familiar with the Debtor's business, principal owner, and
> key executives.   For these reasons, the Dallas Bankruptcy Court is uniquely
> positioned to oversee this chapter 11 case.

*Id.* Appx. 2639.

31.     The Delaware Court agreed.  At a December 2, 2019 hearing, the Delaware Court
stated that it would grant the Transfer Motion, reasoning:

> This is a unique case … [T]his case is very focused on responding to existing [Acis]
> litigation. And that existing litigation of a former affiliate, as of a few months ago,
> and a pending appeal that could make it a current affiliate, is located in the Northern
> District of Texas. The [Bankruptcy Court] has done a tremendous amount of work
> and has … issued a number of opinions, had a number of trials.  That work creates
> a familiarity with the facts, issues, and players in a case ….

---

[30] *See* (a) *Opinion* affirming Confirmation Order Case, No. 3:19-cv-00291-D, Docket No. 75 (N.D. Tex. July 18, 2019), Ex. 19, Appx. 2547-2631; (b) *Opinion* affirming Confirmation Order, Case No. 19-10847 (5th Cir. June 17, 2021), Ex. 20, Appx. 2632-2636.

13

*See* Ex. 22, Appx. 2905-2906.  Mr. Dondero and Movants knew ***on December 2, 2019*** they were being sent back to the very Court that took a serious and informed view of Mr. Dondero and his associates.  Indeed, that is exactly why Highland (then under Mr. Dondero's control) opposed the Transfer Motion.  [Docket No. 122].

32.    Fully cognizant that he would soon face this Court, which had substantial knowledge of (some of) his business practices, Mr. Dondero never caused Highland to appeal the Delaware Court's order granting the Transfer Motion or seek this Court's recusal on the basis of bias or prejudice (at least not until March 2021, more than fourteen months after he was forced to relinquish control of Highland).

III.   **The Basis for Recusal Asserted in the Renewed Motion**

33.    As set forth above, on September 27, 2022—nearly three years after this case was transferred to this Court and seven months after the District Court entered the February Order—Movants filed the Renewed Motion restating the request that this Court recuse itself relying on much of the same "evidence" set forth in the Initial Motion.  Like the Initial Motion, the Renewed Motion is untimely and premised on a mischaracterization of facts, cherry-picked and out-of-context quotations, and a willful ignorance of the considerable evidence supporting each of the orders at issue.

A.    **The December 2019 Transfer Motion**

34.    Movants argue that the risk of prejudice to Mr. Dondero was first noted when this case was filed in the Delaware Court, citing comments made during the hearing on the Transfer Motion by Highland's counsel about this Court's pre-existing, negative view of Mr. Dondero from the Acis Bankruptcy and resulting "baggage."  Renewed Motion at 5-6; Initial Motion ¶¶ 4-5.  As noted *supra*, Mr. Dondero controlled Highland and directed its counsel to oppose the Transfer Motion on this basis during the December 2, 2019 hearing.  The Delaware Court rejected this

argument and in fact relied on this Court's extensive familiarity with the parties as one of the bases

for transferring venue of this case to this Court.  Ex. 22, Appx. 2905.

35.     No party appealed the order transferring venue to this Court.

**B.     The January 2020 Settlement Hearing**

36.     Movants cite to this Court's comments made during a January 9, 2020, hearing as

evidence of this Court's alleged bias toward Mr. Dondero resulting from the Acis Bankruptcy.

Renewed Motion at 6; Initial Motion ¶¶ 9-13.  This hearing occurred fourteen months prior to the

Initial Motion and thirty-three months prior to the Renewed Motion.

37.     On January 9, 2020, this Court held an evidentiary hearing on a motion to approve

a settlement [Docket No. 281] (the "Settlement Motion") between Highland and its Official

Committee of Unsecured Creditors (the "Committee"), which was necessitated by (a) the

Committee's and the Office of the U.S. Trustee's (the "UST") concerns about the integrity of

Highland's management (under Mr. Dondero's stewardship) due to its history of self-dealing,

creditor-avoidance asset transfers, and other breaches of fiduciary duty and (b) the possibility that

the Committee and the UST might seek the appointment of a trustee.

38.     Following the hearing, this Court entered an order granting the Settlement Motion

[Docket No. 339] (the "Settlement Order").[31]  Pursuant to the Settlement Order, Mr. Dondero,

Highland's founder and former Chief Executive Officer, voluntarily surrendered control of

Highland to an independent board of three directors, Russell Nelms, John Dubel, and James P.

Seery, Jr. (the "Independent Board").  The Settlement Order directed Mr. Dondero not to "cause

any Related Entity to terminate any agreements with the Debtor."  *Id*. at ¶ 9.  In finding that this

"language is very important" to protect Highland, this Court noted that in the Acis Bankruptcy,

---

[31] Notwithstanding the Settlement Order, the UST still sought to appoint a chapter 11 trustee [Docket No. 271].

Mr. Dondero was "surreptitiously liquidating funds" and "doing things behind the scenes that were impacting the value of Highland in a bad way." Ex. 23, Appx. 3015. Notwithstanding Movants' implications that this language unfairly targeted Mr. Dondero, Mr. Dondero did not object to the inclusion of this language in the Settlement Order and, in fact, affirmatively approved and signed off on the Settlement Order and the documents which effectuated it.

39.     No party appealed the Settlement Order.

**C.      The February 19, 2020 Application-to-Employ Hearing**

40.     Movants cite to the February 19, 2020 hearing on Highland's application to retain Foley as special Texas counsel [Docket No. 68] (the "<u>Foley Application</u>") as another manifestation of this Court's "early distrust" of and "predisposition against" Mr. Dondero. Renewed Motion at 6-8; Initial Motion ¶¶ 14-15. This hearing occurred thirteen months prior to filing the Initial Motion and thirty-one months prior to filing the Renewed Motion.

41.     Movants argue that this Court discounted the testimony of Russell Nelms—an Independent Board member—concerning Highland's business judgment and the need to retain Foley and "*sua sponte* expressed a belief (untethered to evidence) that Mr. Dondero may have used his 'powers of persuasion' to unduly influence the Independent Board's business judgment." Renewed Motion at 7; *see also* Initial Motion ¶¶ 14-16. Movants' further note this Court's "unsolicited commentary" regarding Highland's litigiousness—not Mr. Dondero's—and that of its past officers and directors as further evidence of this Court's predisposition against Mr. Dondero. Renewed Motion at 7. Movants mischaracterize the facts of this hearing.

42.     ***First***, as set forth above, Highland had a history and culture of litigiousness while under Mr. Dondero's control.[32]  That culture was necessarily propagated by human beings, not corporate entities, and the suggestion that Mr. Dondero—the person with sole authority over Highland and its employees—can shift the blame for Highland's litigiousness from himself to those employees is extremely disingenuous.  This Court's observations were accurate.

43.     ***Second***, Movants are wrong about the Foley Application.  Through the Foley Application, Highland sought to retain Foley on behalf of both Highland ***and*** a non-Debtor entity, Neutra Ltd. ("Neutra"), in the appeal of the Acis confirmation order and related matters (the "Acis Appeal").  In support of the Foley Application, Highland disclosed that: (a) Neutra was owned by Mr. Dondero and his partner, Mark Okada, and (b) Highland intended to pay for Foley's representation of Neutra in the Acis Appeal.[33]  The Committee and Acis objected to the Foley Application on the ground that Highland should not be permitted to use estate assets to support Neutra, a Dondero-controlled entity.  [Docket No. 120]

44.     Mr. Nelms testified in support of the Foley Application but was subject to a lengthy cross-examination which undermined Highland's arguments.  Ex. 24, Appx. 3086-3142.  This Court approved Highland's retention of Foley but determined that the evidence was insufficient to justify expending estate assets to pay Neutra's legal fees, a non-Debtor entity in which Highland

---

[32] In light of the substantial orders and judgments entered against Highland and other entities controlled by Mr. Dondero in other forums, Movants' attempt "to play the victim" is absurd.  Renewed Motion at 7 n.30.  Movants also imply that Highland, while under the control of the Independent Board, was equally litigious as it had objected to proofs of claim filed in this bankruptcy.  Again, Movants ignore the facts, including that, postpetition, Highland *actually settled* the claims against its estate.

[33] Highland justified its payment of Neutra's fees under 11 U.S.C. § 330 (which does not allow the payment of non-debtor legal fees) by arguing, *inter alia*, that if Neutra were successful in its appeal of the involuntary petition entered in the Acis Bankruptcy (a) the Acis Bankruptcy would be unwound, (b) the equity in Acis would return to Highland, (c) Highland would regain the benefit of certain management fees that were otherwise being paid to Acis for the benefit of its new owner, Mr. Terry, and (d) Highland would have negotiating leverage with respect to Acis' $75 million claim against Highland's estate.  Ex. 24, Appx. 3180-3181; Docket Nos. 69, 165.

held no interest. *Id.* Appx. 3204-3209.  This Court's ruling on the Foley Application was not, as Movants contend, a magnification of this Court's "early distrust" of Mr. Dondero or evidence of bias towards him.  Renewed Motion at 7.  Rather, it was based on its determination that Highland failed to prove that the estate would benefit by paying a non-Debtor's legal fees, as required by applicable law.

45.    No party appealed this Court's denial of the Foley Application.

### D.    The June 2020 CLO HoldCo, Ltd., Hearing

46.    Movants argue this Court's animus towards Mr. Dondero is evidenced by its rulings with respect to CLO HoldCo, Ltd. ("CLOH"), a wholly owned subsidiary of the "Charitable Donor Advised Fund, Ltd. (the "DAF"), and its questioning CLOH's good faith in filing its motion in April 2020 [Docket No. 590] seeking release of $2.5 million from the court registry.  Again, Movants' arguments are premised on factual inaccuracies.[34]

47.    *First*, neither CLOH nor the DAF are Movants, and Movants make no effort to explain how alleged bias towards CLOH or the DAF constitutes bias towards Movants.  This is perplexing.  Movants argue at length (*see* ¶¶ 81-87 *infra*) that this Court's factual findings regarding Mr. Dondero's control over CLOH and the DAF are baseless and are themselves examples of bias.  Movants cannot have it both ways.  Either CLOH and the DAF are controlled by Mr. Dondero or they are not.[35]

48.    *Second*, Movants ignore that the $2.5 million was deposited into the court registry *at CLOH's request*.  The Settlement Order implemented certain operating protocols [Docket Nos.

---

[34] Movants had initially argued that this Court was biased because it "has not released [the $2.5 million] to CLO HoldCo." First Renewed Motion at 8.  That statement is not true.  Movants amended the First Renewed Motion to correct this error but elected not to correct any of the myriad other factual errors.

[35] This statement is rhetorical; there is clear evidence that Mr. Dondero controls the DAF and CLOH.  Movants' attempt to hide behind corporate forms is a further example of Mr. Dondero's misuse of his controlled entities and abuse of the judicial process.

354, 466], which prohibited distributions (a) from Highland or entities managed by Highland (b) to certain "Related Entities," such as CLOH.   On February 24, 2020, Highland filed a motion seeking authority to cause two of its managed funds to make distributions to CLOH and Mark Okada—both "Related Entities."   The Committee objected, arguing, among other things, the distributions to CLOH should be offset against amounts CLOH owed to Highland.  [Docket No. 624]  At the March 4, 2020, hearing on the motion, *CLOH's counsel* asked this Court to resolve Highland's motion by depositing the funds directly into the court's registry.[36]  This Court, with the consent of the Committee, adopted CLOH's proposal and entered an order requiring the $2.5 million be deposited into the court's registry.  Despite its conduct in March, CLOH filed a motion with this Court seeking the release of the $2.5 million from the registry in April 2020—less than one month later.  [Docket No. 590]  CLOH's April motion to release the funds was vigorously opposed by the Committee.  [Docket No. 624]

49.    Consequently, there was evidence of CLOH's bad faith—CLOH entered into a settlement in open court and then attempted to unwind that settlement a month later.  But despite CLOH's conduct, this Court, again, did not leave it without a remedy or deny its motion outright. Instead, this Court entered an order that provided for the release of the $2.5 million to CLOH

---

[36] Ex. 25, Appx. 3260-3261:

We'd like to suggest the following should the Court determine that the motion should be denied. And that is that instead of the debtor retaining the funds, that the debtor distribute the funds into the registry of the Court. That way, they lose control over the funds and they can say that they've distributed them in accordance with their agreements and applicable law.

The funds would remain there until either a recipient or prospective recipient posts a bond or other suitable collateral or the Creditors Committee agrees to the distribution to the insider or there is a Court entered for another reason after a showing made before Your Honor. The debtor and the Creditors Committee would, of course, retain all rights to seek the funds they would have had, which rights they would have had immediately before the distribution to the registry, plus any rights that would be gained by reason of the distribution itself.

The debtor thus distributes, the Creditors Committee retains its rights, the Court retains control, and this can all be done, we believe, by a Court order and we hope this may give the Court a suitable alternative.

*See also id.* Appx. 3262.

DOCS_NY:46569.9 36027/003

*unless* the Committee fixed the procedural deficiencies in its objection by filing an adversary

proceeding to enjoin the release of the money from the registry.  [Docket No. 825]  CLOH and the

Committee subsequently resolved the Committee's objection,[37] and the $2.5 million was released

to CLOH pursuant to this Court's order in October 2021.  [Docket No. 2946]

### E.    The July 2020 Exclusivity Hearing

50.    Movants bizarrely contend that this Court's inquiries into COVID-related "PPP

loans" at a July 8, 2020, hearing was evidence of bias against Mr. Dondero.  Renewed Motion at

8-9; Initial Motion ¶ 52.  That hearing occurred nine months prior to the Initial Motion and twenty-

eight months prior to the Renewed Motion.  As fully disclosed by this Court, the inquiries were

prompted by an extrajudicial source (a newspaper article) that purportedly noted that "Mr.

Dondero or affiliates" received PPP loans.  Because of the vagueness of the article, this Court

sought information about *Highland*—not Movants—and ordered Highland to disclose any PPP

loans it had received.  Highland responded to the Court at a subsequent hearing that Highland had

not obtained any PPP loans.  Neither Mr. Dondero nor any of his affiliated entities were directed

to provide any information, no action was taken against them, and the issue was never raised again.

Movants' attempt to falsely recast this event is emblematic of the lack of merit—and candor—in

the Renewed Motion.

### F.    The December 2020 Restriction Motion

51.    Movants cite this Court's comments and rulings at the conclusion of an evidentiary

hearing held on December 16, 2020 (the "December Hearing") on Movants' motion to restrict

Highland's contractual right to manage its CLOs [Docket No. 1522] (the "Restriction Motion") as

evidence of bias.  Movants argue this Court improperly (a) denied their Restriction Motion as

---

[37] *Stipulation and [Proposed] Order Regarding Registry Funds and Dismissal of Motion for Preliminary Injunction*,
Adv. Pro. No. 20-03195-sgj, Docket No. 89.

"frivolous," despite it being filed in "good faith" and (b) found that Mr. Dondero was behind the filing of the Restriction Motion.  Renewed Motion at 9-10; Initial Motion ¶¶ 18-26.

52.      The December Hearing occurred four months prior to the Initial Motion and twenty-two months prior to the Renewed Motion.

53.      In their Restriction Motion, the movants (*i.e.*, the Advisors and certain investment funds managed by the Advisors (the "<u>Retail Funds</u>," and with the Advisors, the ("<u>Dondero Parties</u>")) asked this Court to "impose a temporary restriction on Highland's ability, as portfolio manager, to cause CLOs to sell assets."  Restriction Motion ¶ 17.  The Dondero Parties called as their only witness Dustin Norris, the Executive Vice President of each of the Dondero Parties. During the December Hearing, Mr. Norris made the following admissions:

**i      <u>Highland Had the Exclusive Contractual Right to Buy and Sell CLO Assets</u>**

- Highland is the portfolio manager for each of the CLOs in which the Advisors caused the Retail Funds to invest (Ex. 26, Appx. 3380);

- Highland's management of the CLOs is governed by written agreements (*id.* Appx. 3380-3381);

- None of the Dondero Parties is a party to Highland's CLO management agreements (*id.* Appx. 3381);

- Highland, as the CLO Portfolio Manager, has the responsibility to buy and sell assets on behalf of the CLOs (*id.* Appx. 3381);

- Nobody other than Highland has any right or authority to buy and sell assets in the CLOs in which the Retails Funds invested (*id.* Appx. 3381-3382); and

- Holders of preferred CLO shares, such as the Retail Funds, "do not make investment decisions on behalf of the CLOs" and the Advisors knew that when they caused the Retail Funds to make their investments (*id.* Appx. 3382).

**ii      <u>The Dondero Parties Did Not Accuse Highland of Any Wrongdoing</u>**

- The Dondero Parties did not allege or contend that Highland (a) engaged in fraudulent conduct; (b) breached any agreement by effectuating any transactions; or (c) violated any CLO management agreement (*id.* Appx. 3388-3389); and

21

- The Dondero Parties did not question Highland's business judgment nor could they since they did not know why Highland executed the transactions and never even asked (*id.* Appx. 3389-3390).

### iii    Mr. Dondero Controls the Dondero Parties and Caused the Restriction Motion to Be Filed

- Mr. Dondero owns and controls the Advisors (*id.* Appx. 3367; Appx. 3374-3375);

- The Advisors manage the Retail Funds; Mr. Dondero serves as the Portfolio Manager of each of the Retail Funds and caused the Retail Funds to invest in the CLOs managed by Highland (*id.* Appx. 3367-3368; Appx. 3375);

- The "whole idea" for the Restriction Motion began with Mr. Dondero (*id.* Appx. 3368; Appx. 3380); and

- The Retail Funds' Boards did not authorize the filing of the Restriction Motion (*id.* Appx. 3376-3377).

### iv    Mr. Norris Was Not a Competent Witness and Had No Credibility

- Mr. Norris admitted that he does not make investment decisions, is not an investment manager, and has never worked for a CLO (*id.* Appx. 3378);

- Mr. Norris (a) did not write his Declaration filed in support of the Restriction Motion, (b) did not provide any substantive comments to his Declaration, and (c) relied on the Advisors' "management" (including Mr. Dondero) for all "key information" in his Declaration (*id.* Appx. 3379); and

- Mr. Norris did not bother to review the very CLO management agreements the Dondero Parties were seeking to interfere with (*id.* Appx. 3381).

### v    Movants Did Not Notify Any Other CLO Investors of the Restriction Motion

- The Dondero Parties hold (a) less than 50% of the preferred interests in 12 of the 15 CLOs at issue, and (b) less than 70% of the preferred interests in the other three CLOs at issue (*id.* Appx. 3383-3384);

- Yet, the Restriction Motion was pursued solely on behalf of the Dondero Parties and no other holder of interests in the CLOs (*id.* Appx. 3385);

- The Dondero Parties did not notify any other holder of CLO interests of the Restriction Motion and made no attempt to do so (*id.* Appx. 3386);

- The Dondero Parties made no attempt to obtain the consent of all of the holders of the preferred shares to seek the relief sought in the Restriction Motion (*id.* Appx. 3386);

- Mr. Norris did not know whether any other holder of CLO preferred shares wanted the relief sought in the Restriction Motion (*id.* Appx. 3386);

- Mr. Norris did not know whether Highland's counterparties in the CLO management agreements (*i.e.*, the CLOs) wanted the relief sought in the Restriction Motion (*id.* Appx. 3386-3387); and

- Mr. Norris had no personal knowledge of the two transactions described in his Declaration; he testified that he was "very remote" and he didn't have "much knowledge." (*id.* Appx. 3392-3394).

54. Based considerably on Mr. Norris's testimony, this Court (a) found that there was no factual or legal basis for the Restriction Motion, (b) declared the Restriction Motion "frivolous," and (c) granted Highland's motion for a directed verdict. *Id.* Appx. 3403. While Movants contend this Court improperly "opined that Mr. Dondero was behind the [Restriction Motion] notwithstanding that it was filed by separate and distinct legal entities represented by independent counsel (Renewed Motion at 9), Mr. Norris provided all the evidence the Court needed to reach its conclusion:

> Q:    The whole idea for this motion initiated with Mr. Dondero; isn't that right?

> A:    The concern, yes, the concern originated, and his concern was voiced to our legal and compliance team.

*Id.* Appx. 3380.[38]

55. The Restriction Motion was a misguided effort by Mr. Dondero and his associates to exert control over Highland and its estate and was frivolous.[39]

56. No party appealed the denial of the Restriction Motion.

---

[38] *See also id.* Appx. 3368 ("the initial cause for concern was raised by Mr. Dondero himself"); Appx. 3367 (Mr. Dondero has a control relationship with the Advisors); Appx. 3365 (responsibility for the Retail Funds' portfolio management and investment decisions are delegated to the Advisors); Appx. 3374-3375 (Mr. Dondero owns and controls the Advisors); Appx. 3376-3377 (the Retail Funds' Boards did not authorize the filing of the Restriction Motion).

[39] The Restriction Motion largely focused on Mr. Dondero's efforts to prevent Highland's managed entities from selling certain securities, including Avaya Holdings Corp. common equity (TICKER: AVYA). Ultimately, and notwithstanding Mr. Dondero's efforts, more than 2 million shares of AVYA were sold at an average price of $23.26. Since then, AVYA has traded as low as $0.61 and closed on October 28, 2022 at $1.46.

G. **The January 2021 Hearing on Highland's Motion for Injunctive Relief**

57. Not chastened by the debacle of the December Hearing, Mr. Dondero caused the

Advisors and Retails Funds to continue interfering with, and unjustifiably threatening, Highland.

Consequently, on January 6, 2021, Highland filed its *Verified Original Complaint for Declaratory*

*and Injunctive Relief* against the Advisors and Retail Funds (Adv. Pro. No. 21-03000-sgj, Docket

No. 1) seeking injunctive relief after they interfered with Highland's trading activities and sent

Highland a flurry of written correspondence (the "K&L Gates Letters") (Exs. 27-28, Appx. 3406-

3413) threatening to terminate Highland's CLO management agreements and asserting spurious

claims.  This Court held an exhaustive evidentiary hearing on the TRO Motion on January 26,

2021 (the "TRO Hearing"), during which it admitted voluminous documentary evidence and

assessed the credibility of multiple witnesses, including that of Mr. Dondero.  Ex. 29, Appx. 3430-

3433; 3456-3613.  At the conclusion of the TRO Hearing, this Court determined that the TRO was

necessary to protect Highland's interests pending a hearing on the preliminary injunction.  *See*

*generally id.*

58. The TRO Hearing occurred two months prior to the Initial Motion and twenty-one

months prior to the Renewed Motion.

59. Movants cite to two aspects of the TRO Hearing as evidence of this Court's alleged

bias against Mr. Dondero, while ignoring their own misconduct:  (a) singling Mr. Dondero out for

criticism when, according to Movants, the "evidence was undisputed that Mr. Dondero did not

influence or cause the advisors or retail funds to take any action" and (b) approving the TRO when

"[i]t was abundantly clear … that [Highland] could not make the requisite showing for injunctive

relief."  Renewed Motion at 10; Initial Motion ¶¶ 27-35.  Consistent with much of the Renewed

Motion, Movants misrepresent the record by failing to disclose keys facts.

24

60.    *First*, Movants now admit the K&L Gates Letters were sent for an improper purpose—to procure the same relief sought in the Restriction Motion, relief this Court denied less than a month earlier.[40]    That conduct—seeking previously denied relief through alternative means—is quintessentially vexatious and sanctionable conduct.    *See, e.g., Nix v. Major League Baseball*, 2022 U.S. Dist. LEXIS 104770, at *58-65 (S.D. Tex. Jun. 13, 2022).

61.    *Second*, the Settlement Order, which Mr. Dondero agreed to, expressly prohibited Mr. Dondero from "caus[ing] any Related Entity to terminate any agreements with the Debtor." Settlement Order ¶ 9.    The evidence established that the Dondero Entities were "Related Entities" for purposes of the Settlement Order,[41] yet the K&L Gates Letters improperly threatened to seek to terminate Highland's CLO management agreements.

62.    *Third*, Mr. Dondero's TRO enjoined him from, among other things, "causing, encouraging, or conspiring with (a) any entity owned or controlled by him, and/or (b) any person or entity acting on his behalf, from, directly or indirectly" making express or implied threats against Highland or interfering with Highland's business.    *See Order Granting Debtor's Motion for a Temporary Restraining Order Against James Dondero*, Adversary Pro. No. 20-03190-sgj, Docket No. 10.    Yet, that is precisely what the evidence showed he did.    Ex. 29, Appx. 3456-3521.

63.    Given the evidence and the clear and unambiguous orders in effect, it would have been shocking if this Court ignored Mr. Dondero and instead treated the Dondero Parties as if they

---

[40] Initial Motion ¶ 27 ("In December of 2020, due to the Court's denial of the Restriction Motion, K&L Gates … exchanged correspondence with counsel for Debtor … for the following reasons: to reiterate the Advisors' and the Retail Funds' objection to the Debtor's handing of the Retail Funds' investments; to request, again, that Debtor not liquidate the CLOs; to reserve any rights that the Advisors and the Retail Funds might have against Debtor for failure to maximize the value of the investment as required under the [CLO] Portfolio Management Agreements; and to notify Debtor that the Retail Funds … intended to initiate the procedure to remove Debtor as fund manager of the CLOs.")

[41] This fact was (a) first established during the December Hearing (*see* ¶¶ 53-54 *supra*), (b) was confirmed at the TRO Hearing, and (c) was subsequently admitted to by the Advisors as part of the resolution of the adversary proceeding. *See* Docket No. 2590, Ex. A ¶ 2(c) (settlement agreement in which each of the Advisors represents and warrants that it (a) is controlled by Mr. Dondero and (b) is a "Related Party" for purposes of paragraph 9 of the Settlement Order).

were independent third-party actors.  Mr. Dondero controlled (and controls) the Dondero Parties.

He clearly "caused" or "encouraged" or "conspired" with them to improperly attempt to re-assert

control over Highland.  The Court's focus on Mr. Dondero was entirely justified—particularly

when seen in the context of this Court's pertinent orders which Movants pretend did not exist.

64.     No party appealed the TRO.

**H.     January 2021 Examiner Motion**

65.     Movants allege this Court's bias is manifested in its "repeated disenfranchisement

of Movants from [sic] judicial process" and how it has "wielded its scheduling powers … often

preventing any real consideration of legitimate motions filed by Movants."  Renewed Motion at

10-11.  Despite Movants' extremely strong language about the consistency with which this Court

has disenfranchised them and abused its powers, Movants only cite to a single alleged example of

that conduct:  Dugaboy and Get Good's motion to appoint an examiner [Docket No. 1752] (the

"Examiner Motion") filed on January 14, 2021.  Renewed Motion at 10-11.  This, again, misstates

the facts and is belied by Movants' own admissions.

66.     *First*, Movants' allegations about disenfranchisement are false.  Movants have been

heard multiple times by this Court and appealed a significant number of this Court's orders.  This

Court has never prohibited them from doing so or prevented them from being heard

notwithstanding their tenuous standing.  Confirmation Order ¶¶ 18-19.

67.     *Second*, Movants admit the Examiner Motion, which was not supported by any

non-Dondero party,[42] was filed for improper purposes—to force a delay of the long-scheduled

Confirmation Hearing (defined below), to collaterally attack this Court's final orders, and to have

Movants' Plan objections adjudicated away from this Court in a forum deemed more hospitable to

---

[42] The only party to support the Examiner Motion was Mr. Dondero.  [Docket No. 1756].

26

Movants.  Initial Motion ¶ 37 ("[W]hen the Trusts made the Examiner Motion, they believed that

the motion would cause delay or a continuance of the confirmation hearing on the Plan ….");

Renewed Motion at 11 ("The Trustees sought the appointment of an examiner to address … (i) the

issues raised … in the Restriction Motion [*i.e.*, a motion this Court had denied a month earlier],

[and] (ii) various objections to the proposed [Plan] raised by the advisors, the retail funds, and the

[UST].")  Again, quintessentially vexatious.

68.      Accordingly, Movants' claim of prejudice because this Court did not accede to their

demands to delay confirmation (contrary to the interests of creditors), collaterally attack its orders,

and forum shop is ridiculous, particularly in light of Movants' unequivocal admission of their

actual intent.

69.      No party appealed the denial of the Examiner Motion.

## I.      February 2021 Confirmation Hearing

70.      Movants cite to the February 2021 confirmation hearing on the Plan (the

"Confirmation Hearing") to support their argument that this Court was biased. Renewed Motion

at 11-13; Initial Motion ¶¶ 38-50.  Movants principally contend that during the Confirmation

Hearing, this Court: (a) "summarily rejected all of the Plan objections lodged by Movants,

decreeing them as filed in bad faith" (Renewed Motion at 12) when such objections were no

different than those raised by the UST whose good faith was "not questioned;" (b) found the

objections were not asserted in good faith; (c) concluded, "without basis," that the entity Movants

were "controlled by Mr. Dondero"; (d) disregarded witness testimony of Mr. Jason Post on the

ground that the witness had left Highland's employ to work for one of the Advisors; and (e)

wrongfully accused of Movants of being "vexatious litigants."  *See* Initial Motion ¶¶ 38-50.

71.      As a threshold matter, Movants simply ignore the Fifth Circuit's opinion affirming

the Confirmation Order in relevant part.  In its opinion, the Fifth Circuit expressly upheld this

27

Court's factual findings, including some of the very findings Movants' complain of here, *e.g.*, Mr. Dondero's control of the Funds and Advisors, Mr. Post's credibility, and Mr. Dondero's penchant for litigation. *NexPoint Advisors, L.P.,* 2022 U.S. App. LEXIS 25107 at *20-24, 27-37.[43]

72.     Substantively, and contrary to Movants' suggestion, this Court provided Movants with a full and fair opportunity to present and pursue their objections, notwithstanding their tenuous standing.  Confirmation Order ¶¶ 18-19.  Rather than being "summarily" overruled, this Court conducted a two-day evidentiary hearing during which Movants' counsel made their arguments and cross-examined witnesses unimpeded. The Court subsequently made detailed findings of fact and conclusions of law in the Confirmation Order supporting the overruling of all the objections, including those of Movants.  Movants are obviously unhappy with the Court's findings and conclusions—which were, again, upheld in material part by the Fifth Circuit—but fail to present any evidence of bias or prejudice arising in connection with confirmation.

73.     Finally, Movants' contention that they were treated differently than the UST disingenuously equates the objectors and is also meritless.  Movants asserted spurious objections to (a) plan provisions that had no impact on them as they held no claims in the subject classes (the absolute priority rule); (b) the assumption of certain executory contracts to which they were not party (the actual contract counterparties had consented to assumption of the contracts); and (c) common plan provisions like debtor releases, plan supplements, and a plan injunction.  In contrast,

---

[43] Movants' allegation that this Court found them to be "vexatious litigants" is contrary to the record.  This Court did *not* find or conclude that Movants are "vexatious litigants."   Rather, this Court determined that Mr. Dondero's litigation history supported the inclusion of a gatekeeper provision in the Plan. *See* Confirmation Order ¶¶ 80-81; Ex. 30, Appx. 3717-3719.  Significantly, the Fifth Circuit affirmed this Court's findings and concluded that the gatekeeper provision was justified and "sound." *NexPoint Advisors, L.P.,* 2022 U.S. App. LEXIS 25107 at *5-6.

28

the UST filed a six-page "limited objection" that addressed only the scope of the Plan's exculpation clause—ironically, the only issue reversed on appeal.[44]

74.    In sum, Movants' stubborn instance that this Court's findings or conduct of the confirmation hearing reflect bias and prejudice *after* those same issues have been affirmed by the Fifth Circuit demonstrates the bad-faith nature of the Renewed Motion.

### J.    January and July 2021 Orders Requiring Mr. Dondero's Appearance

75.    In the Renewed Motion, Movants assert a new "example" of this Court's bias:  Its orders—entered in January 2021, May 2021, and June 2021—"target[ing] Mr. Dondero (as well as his sister Nancy Dondero) by requiring their presence at all hearings, regardless of whether their presence is needed."  Renewed Motion at 16.  Again, Movants misstate the facts.

76.    During the January 8, 2021, proceeding to determine whether to grant a preliminary injunction against Mr. Dondero, Mr. Dondero admitted that he had not attended the earlier TRO hearing or read the transcript and had "never bothered to read the TRO."[45]  Concerned that his failure to fully participate would create an opportunity for "plausible deniability," this Court ordered Mr. Dondero—*two months before the Initial Motion was filed*—to appear at all hearings to ensure his compliance with this Court's orders.[46]  Incredibly, Mr. Dondero subsequently failed to appear at a hearing thereby validating the Court's concerns.  Consequently, this Court entered an order on May 24, 2021—sixteen months before the Renewed Motion—clarifying that Mr.

---

[44] *Compare* Docket Nos. 1661 (Dondero), 1667 (Trusts), 1670 (Funds and Advisors), and 1673 (HCRE) *with Limited Objection of the U.S. Trustee* [Docket No. 1671].

[45] Ex. 31, Appx. 3755 ("Q … At least as of today, you never bothered to read the TRO that was entered against you, correct?  A  Correct.").

[46] *Order Granting Debtor's Motion for a Preliminary Injunction Against James Dondero*, Adv. Proc. No. 20-03190-sgj, Docket No. 59.  Members of the Independent Board and/or Highland's Chief Executive Officer have been present at virtually every hearing in this case.

29

Dondero was required to appear at all hearings in the bankruptcy case.  [Docket No. 2362]  Mr.
Dondero did not appeal the preliminary injunction or the May 2021 order.

77.    This Court has *never* ordered Nancy Dondero to appear at any hearings.  Instead,
on June 17, 2021—fifteen months before the Initial Motion—the Court ordered the trustee of
Dugaboy and Get Good to appear at all hearings and proceedings but only "where either of the
Trusts are a party or take a position."  [Docket No. 2458]  The Court provided a detailed rationale
for its order and it was never appealed.  Nevertheless, Movants now falsely assert that Ms. Dondero
was required to appear at all hearings "regardless of whether [her] presence [was] needed."

### K.    May 2021 Denial of Mr. Dondero's Motion to Compel Testimony

78.    In the Renewed Motion, Movants assert as another "new" example of bias this
Court's denial of a "routine litigation step[]" to compel Mr. Seery's deposition testimony and
thereby indicating that it "will treat such [routine actions] as nefarious 'antagonistic move[s]'
rather than ordinary invocation of legal process."  Renewed Motion at 16.  This is not what
happened.

79.    On May 24, 2021—sixteen months before the Renewed Motion—this Court denied
Mr. Dondero's motion to compel deposition testimony[47] concerning six (out of twenty) Rule
30(b)(6) topics on the grounds that the topics were either irrelevant or sought information in Mr.
Dondero's possession. Ex. 32, Appx. 3963-3964.  Despite referencing the "antagonism" between
Mr. Dondero and Mr. Seery, this Court did not prevent Mr. Dondero from deposing Mr. Seery on
fourteen other deposition topics.

80.    Mr. Dondero did not appeal this ruling.

---

[47] Adv. Proc. No. 21-03003, Docket No. 49.

**L.**     **August 2021 Order Finding Certain Movants in Contempt of this Court**

81.     In the Renewed Motion, Movants cite an order entered on August 4, 2021—thirteen months before the Renewed Motion—holding Mr. Dondero and various non-Movants in civil contempt [Docket No. 2660] (the "<u>Contempt Order</u>")[48] as "[p]erhaps one of the most telling" examples of this Court's bias.  Renewed Motion at 14-15.  Movants, again, misstate the facts and the record and—most importantly—ignore the District Court's order affirming this Court's factual and legal findings in the Contempt Order in all material respects.[49]

82.     *First*, Movants materially misstate the facts of the April 12, 2021, complaint (the "<u>HV Complaint</u>").[50]  Movants allege the HV Complaint addressed Highland's "brokering the sale of CLO interests held by HarbourVest … without prior notice to other CLO investors and without respecting those investors' right of first refusal" in violation of some undisclosed duty.  Renewed Motion at 14.  That is wrong, and Movants should know that.  They drafted the HV Complaint.

83.     As this Court knows, the facts are as follows:  Prior to Highland's bankruptcy, HarbourVest[51] purchased certain of CLOH's interests in Highland CLO Funding, Ltd. ("<u>HCLOF</u>"), a Guernsey-based investment vehicle,[52] for approximately $80 million ultimately owning 49.98% of HCLOF's interests.  After Highland's bankruptcy, HarbourVest filed claims against Highland in excess of $300 million and sought rescission of its investment in HCLOF

---

[48] The Contempt Order is the second time that Mr. Dondero has been held in contempt for violating this Court's orders. *See* n.11 *supra.*

[49] *Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022).  The only finding not affirmed was the payment of $100,000 if an appeal was filed.  Movants only mention of the District Court order is a one line footnote.  Renewed Motion at 15 n.72.

[50] Adv. Proc. No. 21-03067-sgj, Docket No. 1.

[51] "<u>HarbourVest</u>" means, collectively, HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P.

[52] HCLOF is managed by its Guernsey-based board of directors and is not controlled by Highland.

31

alleging it was fraudulently induced by factual misrepresentations and omissions made by Mr.
Dondero and certain of Highland's employees prior to the bankruptcy.

84.     Highland and HarbourVest settled HarbourVest's claims, and Highland filed a
motion [Docket No. 1625] seeking Court approval.  Under the settlement, HarbourVest received
allowed claims totaling $80 million in aggregate and transferred its interests in HCLOF to a
Highland subsidiary, effectively rescinding HarbourVest's investment in HCLOF.  All aspects of
the settlement were publicly disclosed in Highland's motion.  Mr. Dondero, Dugaboy, Get Good,
and CLOH all objected.  CLOH argued it had a right of first refusal to HarbourVest's HCLOF
interests.  However, after reviewing Highland's pleadings, HCLOF's governing documents, and
applicable law, CLOH determined it had no such right and knowingly and intentionally withdrew
its objection. This Court approved the settlement, including the transfer of HarbourVest's interests
in HCLOF.

85.     Three months later, CLOH, among others (collectively, the "Dondero Plaintiffs"),
filed the HV Complaint seeking, among other things, to enforce their alleged right of first refusal—
a right CLOH had conceded did not exist.[53]  Shortly thereafter, the Dondero Plaintiffs sought to
add Mr. Seery as a defendant in clear violation of the Settlement Order and the order appointing
Mr. Seery as Highland's chief executive officer and chief restructuring officer [Docket No. 854].

---

[53] The District Court referred the HV Complaint to this Court for adjudication under the standing order reference, and,
on March 11, 2022, this Court dismissed the HV Complaint on the basis of collateral and judicial estoppel. *Charitable
DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 659 (Bankr.
N.D. Tex. Mar. 11, 2022).  The Dondero Plaintiffs appealed, and the District Court reversed and remanded. Ex. 33,
Appx. 4017-4038.  Contrary to Movants' statements, the District Court did not find, in any way, that the HV Complaint
"had merit."  Renewed Motion at 15 n.72.  Instead, it found that this Court appropriately applied collateral estoppel
*sua sponte* and that all of the elements of collateral estoppel were met except one—"actually litigated"—because a
settlement under Rule 9019 has a different legal standard.  *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.
(In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 173 (N.D. Tex. 2022).  The District Court also found that the first
two elements of judicial estoppel—"inconsistency" and "court's acceptance"—were met but that this Court failed to
assess the third element—"inadvertence."  *Id.* at 175.  The District Court remanded to this Court to determine if
CLOH's withdrawal of its objection was "inadvertent."  On October 14, 2022, Highland filed a renewed motion to
dismiss the HV Complaint.  Adv. Proc. No. 21-03067-sgj, Docket No. 122 (Bankr. N.D. Tex. Oct. 14, 2022).

Accordingly, this Court, after an evidentiary hearing, issued the Contempt Order finding Mr. Dondero and others in contempt.

86.    ***Second,*** Movants falsely allege Mr. Dondero credibly testified "he was not involved at all in authorizing or preparing the motion to add Mr. Seery" and there was no evidence to the contrary.  Renewed Motion at 15.  This is directly contradicted by the actual record.  As the District Court explained:

> Ample evidence supports the bankruptcy court's factual findings.  Dondero has had a significant role in DAF for over a decade.  DAF's assets come in part from Dondero and his "family trusts."  Dondero "was DAF's managing member until 2012," and he remains "DAF's informal investment advisor."  After Dondero stepped down as managing member, that role went to Grant Scott, "Dondero's long-time friend, college housemate, and best man at his wedding."  Scott ultimately resigned due to "disagreements with … Dondero."

> Patrick replaced Scott as "DAF's general manager on March 24, 2021"—19 days before the Seery Motion.  Patrick initially had "no reason to believe that Mr. Seery had done anything wrong with respect to the HarbourVest transaction."  Only once "Dondero told [him] that an investment opportunity was essentially usurped" did Patrick "engage[] the Sbaiti firm to launch an investigation" and ask "Mr. Dondero to work with the Sbaiti firm with respect to their investigation of the underlying facts."  After that, Dondero "communicated directly with the Sbaiti firm"—Patrick did not.  Dondero "saw versions of the complaint before it was filed" and had "conversations with attorneys" about the complaint pre-filing.  That complaint focused on "Seery's allegedly deceitful conduct" and "mention[ed] Mr. Seery 50 times."  Further, when listing the parties, the complaint listed each party named in the caption along with "[p]otential party James P. Seery, Jr.," providing his citizenship and domicile.

> Further, although Dondero averred that he did not direct the Sbaiti firm to add Seery to the complaint, Dondero also contradicted himself, first claiming that he did not know that "the Sbaiti firm intended to file a motion for leave to amend their complaint to add Mr. Seery," but then agreeing during the hearing that he "[p]robably" was "aware that that motion was going to be filed prior to the time that it actually was filed."  He also testified to conversations about the Seery Motion, noting that it involved a "very complicated legal preservation" issue.

> Based on all that evidence, the Court is not left with a definite and firm conviction that the bankruptcy court erred.  After being stymied in the bankruptcy court, Dondero manufactured the exigency for the lawsuit that challenged Seery's conduct.  Dondero's claim that he "did not suggest that Mr. Seery should be added as a defendant" is not credible.  Dondero gave Patrick the idea of challenging

33

Seery's conduct, and he worked with the Sbaiti firm to bring that idea to fruition in the complaint—a complaint that clearly contemplated adding Seery to the lawsuit. Likewise, his plea that he "had no involvement with the Seery Motion" is not credible. Dondero himself testified to the contents of attorney communications concerning the Seery Motion, eventually admitting that he "probably" had knowledge of the Motion before it was filed. In short, the bankruptcy court did not err, after considering the "totality of the evidence," in finding that Dondero had "the idea of" suing to "challenge Mr. Seery's … conduct," that he "encouraged Mr. Patrick to do something wrong," and that Patrick "abdicated responsibility to Mr. Dondero with regard to . . . executing the litigation strategy."

*Charitable DAF Fund, L.P.*, 2022 U.S. Dist. LEXIS 175778, at \*18-21. The District Court, like this Court, included ample citations to the record, including the direct testimony of both Mr. Dondero and Mr. Patrick, to support its factual findings.[54] It is inconceivable this Court and the District Court both erred in assessing the evidence concerning Mr. Dondero's direct involvement in violating this Court's orders, yet Movants ignore the District Court.

87.     ***Third,*** Movants allegations about this Court's sanctions are false. Movants falsely allege Highland submitted invoices showing it had incurred just $38,796.50 defending against Mr. Dondero's contemptuous actions. Not true. Highland submitted invoices for $187,795. [Docket Nos. 2421-1, 2421-2; Ex. 34, Appx. 4048-4102]. Although this Court added to that amount to compensate for additional costs, this Court's sanction of $239,655 was affirmed by the District Court. *Charitable DAF Fund, L.P.*, 2022 U.S. Dist. LEXIS 175778, at \*13-17. Again, Movants ignore the facts and the District Court.

## M.     September 2022 Denial of HCRE's Motion to Withdraw Its Proof of Claim.

88.     Finally, Movants cite to the September 12, 2022, hearing on the withdrawal of HCRE's proof of claim as an example of this Court's bias. Renewed Motion at 16-19. This

---

[54] Mr. Patrick was a long-time employee of Highland and, on information and belief, works for Skyview—an entity created to service Mr. Dondero and his controlled entities. Mr. Patrick has exclusively worked for Mr. Dondero and/or his controlled entities as a tax attorney for almost fifteen years.

example, like the others, is premised on a material distortion of the record and requires a complete factual reset before Movants' baseless allegations can be addressed.

89.     On April 8, 2020, HCRE filed a proof of claim with this Court (Claim No. 146) (the "HCRE Claim") that was signed by Mr. Dondero, HCRE's manager, and filed under penalty of perjury.  The HCRE Claim challenged Highland's interest in SE Multifamily Holdings, LLC ("SEMF"):

> HCRE … contends that all or a portion of Debtor's equity, ownership, economic rights, equitable or beneficial interests in SE Multifamily does [not] belong to the Debtor or may be the property of [HCRE]. Accordingly, [HCRE] may have a claim against the Debtor.

HCRE Claim, Ex. A.  On July 30, 2020, Highland objected to the HCRE Claim [Docket No. 906].

90.     On October 16, 2020, HCRE responded [Docket No. 1197] (the "HCRE Response") asserting, among other things, that it believed the SEMF governing documents "improperly allocate[] the ownership percentages of the members thereto due to mutual mistake, lack of consideration, and/or failure of consideration." HCRE Response ¶ 5.  The HCRE Response was filed by the law firm of Wick Phillips Gould & Martin LLP ("Wick Phillips").

91.     During initial discovery, Highland discovered that Wick Phillips had represented Highland with respect to SEMF.  Wick Phillips refused to withdraw despite the conflict, and Highland moved to disqualify them on April 14, 2021 (the "Motion to Disqualify").[55]  The Motion to Disqualify was fully briefed[56] and heavily contested with significant pre-trial discovery.  On November 30, 2021, this Court held a lengthy hearing on the Motion to Disqualify and ultimately disqualified Wick Phillips from representing HCRE in connection with the HCRE Claim.

---

[55] Docket Nos. 2196, 2197, 2198.

[56] Docket Nos. 2278, 2279, 2294, 2893, 2894, 2895, 2927, 2928, 2952.

92.     In January 2022, HCRE retained replacement counsel.  After six months of HCRE's

silence, the parties agreed to an amended scheduling order on June 9, 2022 [Docket Nos. 3356,

3368] and restarted discovery.  Discovery included significant document production and

depositions of Mark Patrick, BH Equities (a third-party investor in HCRE), Barker Viggato LLP

(HCRE's accountant), and James P. Seery, Jr., as Highland's 30(b)(6) witness.

93.     Mr. Dondero and Matthew McGraner (a SEMF equity holder) were scheduled to

be deposed, and trial was set for early November 2022.

94.     However, on August 12, 2022, two days after Mr. Seery's deposition, HCRE filed

its motion to withdraw the HCRE Claim [Docket No. 3443] (the "Motion to Withdraw") pursuant

to Federal Rule of Bankruptcy Procedure ("FRBP") 3006 and unilaterally canceled the previously

scheduled depositions of Mr. Dondero and Mr. McGraner.

95.     The Motion to Withdraw (correctly) cited *Manchester, Inc. v. Lyle (In re

Manchester, Inc.)* for the test to determine whether a claim could be withdrawn under FRBP 3006.

2008 Bankr. LEXIS, at *11-12 (Bankr. N.D. Tex. Dec. 19, 2008) (weighing (1) movant's diligence

in bringing the motion; (2) movant's "undue vexatiousness;" (3) extent to which the suit has

progressed and the costs and expenses incurred by the non-party in preparing for trial; (4)

duplicative expense of re-litigation; and (5) adequacy of movant's explanation for withdrawal).

96.     On September 2, 2022, Highland filed its opposition to the Motion to Withdraw

[Docket No. 3487] (the "Objection to Withdraw") asking this Court to deny the Motion to

Withdraw and require Mr. Dondero and Mr. McGraner to sit for the previously agreed depositions

or, in the alternative, to condition the withdrawal of the HCRE Claim pursuant to FRBP 3006.

Objection to Withdraw ¶¶ 4, 76-80.

97.     On September 12, 2022, this Court held a hearing on the Motion to Withdraw.

Contrary to Movants' allegations, this Court did not show bias towards Movants at that hearing.

Instead, the following is clear from the record:

- HCRE presented *no* evidence regarding the *Manchester* factors and only addressed one *Manchester* factor—legal prejudice—in argument.[57]

- HCRE's only explanation for withdrawing the HCRE Claim was that HCRE "[didn't] need the proof of claim anymore."[58]   HCRE did not address why it believed there was a mutual mistake when it filed the HCRE Claim in April 2020 or provide any other explanation for the withdrawal of the HCRE Claim on the eve of trial.

- Highland, in distinction, introduced significant evidence with respect to each of the *Manchester* factors.  Specifically, Highland showed that:

  1) HCRE was not diligent in filing the Motion to Withdraw having filed it twenty-eight months after filing the HCRE Claim;

  2) HCRE was "unduly vexatious" as it (a) had no good faith basis for filing the HCRE Claim in the first instance, (b) forced Highland to spend hundreds of thousands of dollars on discovery, depositions, and the Motion to Disqualify, and (c) withdrew the HCRE Claim only after it had completed its discovery while denying Highland the opportunity to depose Messrs. Dondero and McGraner;

  3) The HCRE Claim had been litigated for two years and was, with the exception of the depositions of Mr. Dondero and Mr. McGraner, trial-ready;

  4) There was a material risk of duplicative litigation.  HCRE (and Mr. Dondero) consistently declined to answer whether withdrawal of the HCRE Claim would preclude future challenges to Highland's ownership interest in SEMF—the subject matter of the HCRE Claim; and

  5) HCRE had no adequate explanation for withdrawing the HCRE Claim.  HCRE provided no evidence justifying its concern about Highland's interference in SEMF's management and no articulated basis for no longer asserting mutual mistake.

Ex. 35, Appx. 4112-4132.

98.     Notwithstanding HCRE's complete lack of evidence, at the hearing, Highland

stated, on the record, it would consent to the withdrawal of the HCRE Claim if HCRE (a) made

---

[57] Ex. 35, Appx. 4109-4110.

[58] *Id.* Appx. 4109-4110; Appx. 4134.

"an ironclad commitment that HCRE is irrevocably waiving its right to challenge Highland's interest in [SEMF];" (b) waived its right to appeal; (c) agreed not to rely on its deposition of Mr. Seery for any purpose; and (d) reimbursed Highland's costs incurred in the two years of litigation on the HCRE Claim. *Id.* Appx. 4114-4115; Appx. 4129; Appx. 4136-4137.

99.    HCRE, however, was unable to satisfy even the first requested condition—waiver of its right to challenge Highland's interest in SEMF.

- First, HCRE's counsel, Bill Gameros,[59] attempted to enter into an agreement on behalf of his client; however, it was clear from the record that Mr. Gameros had not spoken with his client about the proposed resolution, that he needed "to confer with [his] client" before he could agree, and he had no authority to bind his client.

- Second, after a fifteen minute recess to allow Mr. Gameros to produce a client representative, D.C. Sauter appeared before this Court. This Court asked Mr. Gameros "what is [Mr. Sauter's] position with HCRE." Mr. Sauter replied: "I don't have an official position with HCRE" but alleged, without evidence or support, that Mr. Dondero had authorized him to speak on HCRE's behalf despite his not being an officer, director, employee, interest holder, or even counsel of HCRE. Mr. Sauter clearly had no legal capacity to bind HCRE.[60]

- Third, Mr. Dondero, HCRE's manager, appeared before this Court by telephone.[61] Mr. Dondero, however, refused to give an unconditional response to his counsel's question: "Mr. Dondero, do you agree that [HCRE] will not challenge in any way the estate's interest in [SEMF], its 46-point whatever percent interest it is" Instead, Mr. Dondero stated Highland's ownership interest in SEMF "could change over time" and that "no business man can agree" to Mr. Gameros' question.

---

[59] Highland and this Court were both justifiably concerned about Mr. Gameros' ability to make a binding deal based on their experience with, among other things, the HV Complaint. In early 2021, CLOH, through counsel, conceded on the record that it had no right of first refusal to HarbourVest's interests in HCLOF. Three months later, CLOH, through new counsel, filed the HV Complaint arguing it did have a right of first refusal. *See* ¶ 84 *infra*.

[60] Movants allege this Court chastised Mr. Sauter. Renewed Motion at 17 ("[T]he Court responded [to Mr. Sauter]: 'I mean I'm not sure I care what you say, no offense. I don't think I have a person with clear authority here.'") The Court directed that statement at John Morris, Highland's counsel, not Mr. Sauter. Ex. 35, Appx. 4140 ("Mr. Morris, do you want to respond? I mean I'm not sure, frankly, I care what you say….")

[61] Movants allege this Court "rebuffed [Mr. Dondero] for failing to have access to video, even though he [had] no previous notice he would have to give testimony at the hearing." Renewed Motion at 18. This Court was justifiably confused by Mr. Dondero's lack of access to video. Moments before Mr. Dondero's appearance, Mr. Sauter said he had "to run around the corner and try to make sure [Mr. Dondero] knows how to unmute himself." *Id.* Appx. 4141-4142. The logical inference from that statement is that Mr. Dondero was in the office with Mr. Sauter, not in his car as he claimed. Regardless, all this Court said about Mr. Dondero's lack of video was "this is not ideal, you know, without us seeing you." *Id.* Appx. 4142. That is no "rebuff."

DOCS_NY:46569.9 36027/003

*Id.* Appx. 4135-4146. Consequently, because of HCRE's (a) inability to satisfy the condition to withdraw and (b) failure to satisfy any of the *Manchester* factors, this Court denied HCRE's request to withdraw the HCRE Claim.

100.   Notwithstanding the allegations in the Renewed Motion:

- This Court did not find that HCRE "had acted with 'undue vexatiousness' … merely because [Highland] opposed the claim and had spent 'hundreds of thousands of dollars' doing so." Renewed Motion at 18. As set forth above, "undue vexatiousness" is a *Manchester* factor which this Court had to assess. After reviewing Highland's voluminous evidence and the lack of evidence from HCRE, this Court simply found "the undue vexatiousness factor … weigh[ed] in favor of there has been undue vexatiousness." *Id.* Appx. 4156.

- This Court did not "order[] additional depositions to take place and the parties to attend trial." Renewed Motion at 18. The Motion to Withdraw was denied, and, accordingly, the hearing on the HCRE Claim and Highland's previously scheduled depositions of Mr. Dondero and Mr. McGraner would naturally proceed. *Id.* Appx. 4158.

- This Court did not, "as a parting shot," direct the UST to investigate HCRE and Mr. Dondero. Renewed Motion at 18. Significant evidence had been produced at the hearing on the lack of good faith of the HCRE Claim (and Mr. Dondero's potential perjury) (*Id.* Appx. 4117-4123), and this Court was obligated by law to report the matter to the UST pursuant to 18 U.S.C. § 3057(a).[62]

## **ARGUMENT**

101.   Section 455 of Chapter 28 of the United States Code provides, in relevant part, that:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings.

---

[62] *See* 18 U.S.C. § 3057(a) ("Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed.")

28 U.S.C. § 455(a), (b)(1).  "A bankruptcy judge shall be governed by 28 U.S.C. § 455, and

disqualified from presiding over the proceeding or contested matter in which the disqualifying

circumstances arises or, if appropriate, shall be disqualified from presiding over the case."  FRBP

5004(a).

102.    Recusal motions brought under Section 455(a) must be "timely."  *Hill v. Schilling*,

495 Fed. App'x 480, 483 (5th Cir. 2012); *see also Grambling Univ. Nat'l Alumni Ass'n v. Bd. of

Supervisors for La. System*, 286 Fed. App'x 864, 867 (5th Cir. 2008) (noting that while "[s]ection

455 does not contain an explicit timeliness requirement … this Court has consistently inferred such

a requirement") (citing *United States v. Sanford*, 157 F.3d 987, 988 (5th Cir. 1998)).  "The

timeliness rule requires that 'one seeking disqualification must do so at the earliest moment after

knowledge of the facts demonstrating the basis for such disqualification.'" *Sanford*, 157 F.3d at

988–89 (quoting *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)).

"The most egregious delay—the closest thing to *per se* untimeliness—occurs when a party already

knows the facts purportedly showing an appearance of impropriety but waits until after an adverse

decision has been made by the judge before raising the issue of recusal."  *Sanford*, 157 F.3d at

988–89; *see also Delesdernier v. Porterie*, 666 F.2d 116, 122 (5th Cir. 1982) ("Congress did not

enact § 455(a) to allow counsel to make a game of the federal judiciary's ethical obligations; we

should seek to preserve the integrity of the statute by discouraging bad faith manipulation of its

rules for litigious advantage.")

103.    Even if a motion is timely, whether to grant it is committed to the sound discretion

of the targeted court. *See Hill v. Breazeale*, 197 Fed. App'x 331, 335 (5th Cir. 2006).  "The judge

abuses [his or her] discretion in denying recusal where a reasonable [person], cognizant of the

relevant circumstances surrounding [the] judge's failure to recuse, would harbor legitimate doubts

about that judge's impartiality." *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999) (a motion to recuse is committed to the discretion of the targeted judge). "The standard for bias is not 'subjective' … but, rather, 'objective.'" *Andrade v. Chojnacki*, 338 F.3d 448, 454-55 (5th Cir. 2003) (citing *Vieux Carre Prop. Owners, Residents & Assocs. v. Brown*, 948 F.2d 1436, 1448 (5th Cir. 1991)). In other words, it "is with reference to the 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person' that the objective standard is currently established." *Id.* (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)). "Another maxim is that review should entail a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents." *Id.* at 455. Finally, the common-law doctrine called the "extrajudicial source rule" under Section 455 "divides events occurring or opinions expressed in the course of judicial proceedings from those that take place outside of the litigation context and holds that the former rarely require recusal." *Id.* The movant must: (1) demonstrate that the alleged comment, action, or circumstance was of "extrajudicial" origin, (2) place the offending event into the context of the entire trial, and (3) do so by an "objective" observer's standard. The movant must also demonstrate the "court's refusal to recuse was not merely erroneous, but, rather, an abuse of discretion." *Id.* at 456-62.

104.    Here, it is indisputable that (a) the Renewed Motion, which largely restates the Initial Motion, is "untimely;" (b) "bias" does not exist; (c) there is no "deep seated antagonism;" and (d) there is no evidence of "extrajudicial knowledge." The exceptional and rare remedy of recusal is not warranted and the Renewed Motion, like the Initial Motion, must be denied.

## I.    The Renewed Motion Must Be Denied as Untimely

105.    This Court denied the Initial Motion on the basis that it was untimely and should deny the Renewed Motion on the same grounds.

106.    This Court determined the Initial Motion was "untimely" because it was filed: (a) "more than 15 months after the case was transferred to this Court" and after Movants learned about the facts purportedly showing an "appearance of impropriety," (b) "after many dozens of orders" were issued by this Court, and (c) "on the eve of a contempt hearing." Recusal Order at 7.  Yet, Movants did not seek recusal until March 2021 and allowed this Court to expend significant judicial resources overseeing this case and Movants' litigation.  Movants offered no credible explanation for the delay in bringing the Initial Motion.

107.    The Renewed Motion suffers from the same infirmities but is even less "timely" than the Initial Motion.  ***First***, the Renewed Motion incorporates the Initial Motion and its "examples" of bias.  Those examples were untimely when the Initial Motion was filed in March 2021 and are even more so now.  ***Second***, the Renewed Motion was filed (a) thirty-four months after this case was transferred to this Court, (b) seven months after the District Court denied the appeal of the Recusal Order, and (c) after this Court entered many hundreds more orders.  The "new" examples of bias in the Renewed Motion are also untimely.  With one meritless exception, all "new" examples occurred on or before August 4, 2021—over a year ago—with one actually occurring before the Initial Motion was filed.  Like the Initial Motion, the Renewed Motion was also filed to prevent this Court from entering orders adverse to Movants—denying the dispositive motions to dismiss filed in the Kirschner Adversary.[63]  Supplemental Motion ¶¶ 7, 9.

108.    This, alone, constitutes "*per se* untimeless."  *See Hill*, 197 Fed. App'x at 335 (holding district court did not abuse its discretion in denying motion to recuse as untimely where party "waited, for no given reason, to raise the issue until after the district court ruled against

---

[63] "Kirschner Adversary" means *Marc S. Kirschner, as Litigation Trustee for the Litigation Sub-Trust v. James D. Dondero, et al.*, Adv. Proc. No. 21-03076-sgj (Bankr. N.D. Tex.).

him"); *Sanford*, 157 F.3d at 989 (affirming district court's denial of recusal motion as untimely where party "knew of the facts purportedly causing an appearance of impropriety," but waited until after an adverse decision to raise the recusal issue); *Grambling*, 286 Fed. App'x at 867-88 (affirming denial of recusal motion as "*per se*" untimely where "despite having knowledge of the facts underlying its recusal argument," party "did not immediately move to have this case assigned to a judge from another division or district and instead allowed the case to linger … for nearly ten months. When the [party] finally acted, it did so only after [the judge] had dismissed its claims"); *Hill v. Schilling*, 2014 WL 1516193, at \*3 (N.D. Tex. Apr. 17, 2014) (affirming judge's finding that motion to recuse was untimely where it was brought "some eleven months after [plaintiff] and his counsel first became aware of the" facts giving rise to alleged perception of bias); *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 155 (S.D.N.Y. 2012) ("Plaintiffs here had the requisite knowledge no later than January 4, 2012, but the recusal request did not come until nearly three months later," noting "I have made no efforts to hide my views, relationships or affiliations. If plaintiffs truly believed that any of these issues, individually or collectively, created a bias or the appearance of partiality, they should have promptly moved for my recusal.")

109.    This Court also appropriately considered the fact that the Initial Motion came on the "eve of the contempt hearing." Recusal Order at 7. Similarly, Movants seek recusal now, after Mr. Dondero has been twice found in contempt, to prevent this Court from ruling in the Kirschner Adversary. Supplemental Motion ¶ 7. That is, in itself, grounds for denial. *See Weisshaus v. Fagan,* 456 Fed. App'x 23, 34 (2d Cir. 2012) (noting that "[a]lthough there was no dispositive ruling as to [defendant] at the time [plaintiff] brought her recusal motion, the district court aptly noted that the motion came on the heels of its direction that [plaintiff] submit to a deposition, thus strongly   suggesting   that   the   motion   was   a   mere   fall-back   position   in   response   to

43

an adverse ruling."); *Da Silva*, 868 F. Supp. 2d at 154 (denying recusal motion where "[i]t appears that plaintiffs are improperly using the recusal motion as a 'fall-back position' to an unfavorable ruling.")

110.    In light of the expansive nature of this case and this Court's extensive knowledge of the proceedings that it has overseen throughout the last thirty-four months, interests of judicial economy also support this Court's denial of the Renewed Motion. *See United States v. Olis*, 571 F. Supp. 2d 777 (5th Cir. 2008) (affirming denial of recusal motion as untimely where party was aware of facts stated in recusal motion "well before he filed" the motion, noting that party "had duty to file [ ] motion for recusal before the court's judicial resources were spent on resolution of motions" and party "neither argues nor explains why his delay" was reasonable); *Hill*, 495 Fed. App'x at 484 ("Particularly in light of the expansive nature of these proceedings, considerations of judicial economy likewise countenance our conclusion that the district court did not abuse its discretion"); *United States v. York*, 888 F.2d 1050, 1055 (5th Cir. 1989) ("The motivation behind a timeliness requirement [for Section 455] is [] to a large extent one of judicial economy"); *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 237 (3d Cir. 2001) ("After a massive proceeding such as this, when the court has invested substantial judicial resources and there is indisputably no evidence of prejudice, a motion for recusal of a trial judge should be supported by substantial justification, not fanciful illusion"); *Weisshaus*, 456 Fed. App'x at 34 (affirming district court's denial of recusal motion as untimely where party "waited almost nineteen months" to file the recusal motion, at which point the district court had already expended substantial judicial resources overseeing and adjudicating" the parties' claims).

111.    Accordingly, this Court is well within its discretion to deny the Renewed Motion—like the Initial Motion—as untimely.

## II.    The Renewed Motion Must Be Denied on the Merits

112.    Even if the Renewed Motion had been timely, it must be denied on the merits.  The Renewed Motion fails to prove that any of the circumstances that would require disqualification under Section 455 are present here.

### A.    There Is No Extrajudicial Bias Present Here

113.    The core of Movants' argument in the Renewed Motion is, as in the Initial Motion, that this Court's "extrajudicial" bias toward Movants stemmed from opinions formed during the Acis Bankruptcy.  Renewed Motion at 4-5; Initial Motion ¶¶ 4-13.  That argument is still frivolous.

114.    As articulated by the Supreme Court, "[o]pinions formed by the judge on the basis of facts of prior proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Conkling v. Turner*, 138 F.3d 577, 592 (5th Cir. 1998) ("As a general rule, for purposes of recusal, a judge's 'personal' knowledge of evidentiary facts means 'extrajudicial,' so facts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification") (internal quotations omitted).  Rather, opinions or beliefs formed from events on the record or from prior proceedings, or "intrajudicial" opinions, are subject to a "deferential" review, and are the "type of opinions/expressions that *Liteky* holds nearly exempt from causing recusal." *Andrade*, 338 F.3d at 460-62.

115.    Any opinion allegedly formed by this Court from the Acis Bankruptcy, a prior proceeding, is thus not an "extrajudicial" source and is precisely the type of opinion exempt from warranting recusal.  *See Liteky*, 510 U.S. at 555; *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 81 (5th Cir. 2011) (affirming denial of motion for recusal where "the only facts the [judge] learned about [party's] conduct were learned from judicial proceedings in the instant case and in previous

cases"); *Conkling*, 138 F.3d at 592 ("As a general rule, for purposes of recusal, a judge's 'personal'

knowledge of evidentiary facts means 'extrajudicial,' so facts learned by a judge in his or her

judicial capacity regarding the parties before the court, whether learned in the same or a related

proceeding, cannot be the basis for disqualification") (internal quotations omitted).[64]

116.    For these same reasons, Movants' reliance on this Court's rulings as evidence of

"antagonism" is equally deficient.  "[J]udicial rulings alone almost never constitute a valid basis

for a bias or partiality motion … and can only in the rarest circumstances evidence the degree of

favoritism or antagonism required … when no extrajudicial source is involved." *Liteky*, 510 U.S.

at 555.  Here, and as set forth above, Movants rely on various rulings issued by this Court to

demonstrate "bias."  These rulings, none of which involve an extrajudicial source, simply do not

rise to the rare circumstance of evidencing the degree of antagonism warranted for recusal.  *See*

*Liteky*, 510 U.S. at 555 ("Almost invariably, judicial rulings are proper grounds for appeal, not for

recusal"); *Andrade*, 338 F.3d at 456 (denying recusal based on judicial rulings where events cited

"are embodied in judicial actions that Movants could have, but did not, appeal").  Simply put,

Movants offer no credible legal or factual basis for recusal. *See Henderson v. Dep't of Pub. Safety*

*and Corrs.*, 901 F.2d 1288, 1296 (5th Cir. 1990) ("[E]ven the most superficial research would have

put [the party] on notice that the factual circumstances he alleged were not grounds for recusal"

under *Liteky*, noting "there is absolutely no case authority cited by [party] to the contrary.")

117.    Movants' "due process" argument that they "are entitled to a full and fair

opportunity to make their case in an impartial forum—regardless of their history with that forum"

(Renewed Motion at 19-20) is frivolous and should be summarily rejected.  Movants fail to support

---

[64] Movants rely on only one allegedly "extrajudicial" source relating to this Court's inquiries into COVID-related "PPP loans."  Renewed Motion at 8-9; Initial Motion ¶ 52.  However, as noted *supra*, this Court took no action against Mr. Dondero or any of the other Movants and did not even ask them to respond.

any notion of a "due process" violation. Nor could they. The record of this case shows the great lengths this Court has gone through to respect Movants' due process rights, notwithstanding their limited, if any, skin in the game. The cases cited by Movants in support of their contention are entirely inapplicable. *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 893 (5th Cir. 2021) does not address the standard for "recusal" under Section 455 or the "extrajudicial" source rule. Rather, *Miller* deals with whether a case should be reassigned to a different district court judge on remand after the original judge did not give plaintiff the opportunity for discovery and *sua sponte* dismissed a plaintiff's claim of sex discrimination and retaliation under the Fair Labor Standards Act. Movants' other case on this point is equally irrelevant.[65] The types of exceptional circumstances warranting recusal in those cases are not present here. Movants otherwise offer no legal basis in support of their argument. Accordingly, this Court properly exercised its discretion in finding that there was no "extrajudicial" source warranting recusal.

### B.    This Court Does Not Have Deep-Seated Antagonism Toward Movants

118.    Similarly, there is no basis to find that this Court has "demonstrate[d] such a 'high degree of favoritism or antagonism as make fair judgment impossible.'" Renewed Motion at 22. Movants contend the "record is replete with examples" of this Court's "antagonism" such that a reasonable observer would doubt this Court's impartiality. *Id.* Movants' arguments are without merit.

119.    "Judicial remarks that are critical or disapproving of, or even hostile to, counsel for the parties or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555. In support of their argument that this Court harbored "bias" toward Movants, Movants

---

[65] The Court in *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 167 (5th Cir. 1997), denied a petition for a writ of mandamus challenging denial of recusal premised on racist remarks, where, although a "reasonable person might indeed harbor doubts about the trial judge's impartiality" in a "racially-charged case such as the instant one," the judge had already presided over the case for so long such that recusal at that stage "would be unprecedented."

refer to a number of this Court's statements regarding Mr. Dondero and his conduct. *See generally* ¶¶ 29-32, 34-100 *supra*. In relying on such statements, Movants disregard the law on recusal. *See Andrade*, 338 F.3d at 459 (affirming denial of recusal motion premised on judge's negative comments made on the record—including describing a witness as a "crazy, murdering son-of-a-bitch" and referring to parties' attempt to introduce certain evidence as "bullcrap") (citing *Liteky*, 510, U.S. at 555)). As this Court previously found, Movants' cited remarks are, at best, "clashes between a court and counsel," and such remarks are "simply insufficient" for recusal. Recusal Order at 10; *see also United States v. Landerman*, 109 F.3d 1053, 1066 (5th Cir. 1997) (affirming denial of motion to recuse where district judge allowed "the Government more leeway during its questioning and did interrupt defense counsel's questioning more often than the Government's questioning"); *Garcia v. Woman's Hosp. of Tex.*, 143 F.3d 227, 230 (5th Cir. 1998) (affirming denial of motion to recuse where district judge had made unflattering comments about plaintiff's ability to prove her case).

120.    Based on the entirety of the proceedings before this Court, in which all events raised by Movants relate to either this Court's knowledge of prior proceedings or this Court's remarks during these proceedings, the exceptional remedy of recusal is not warranted. *See United States v. Williams*, 127 Fed. App'x 736, 737-38 (5th Cir. 2005) ("As our review of the entire context of the judicial proceedings in which the events challenged in this case arose reveals no disqualifying judicial bias, we conclude that there was no abuse of discretion in the district court's denial of [the] recusal motion"); *Henderson*, 901 F.2d at 1296 (affirming court's denial of recusal motion, where "none of the circumstances requiring disqualification under § 455 are present here" and "the trial judge was well within his discretion in finding that the motion for recusal was not well founded, either in fact or in law.")

48

121.    This Court, respectfully, should again find that that Movants' assertions do not "rise

to the threshold standard of raising doubt in the mind of a reasonable observer as to the judge's

impartiality" (Recusal Order at 10) and deny the Renewed Motion.

### III.    This Court Lacks the Authority to Grant Movants' Alternative Relief

122.    Pursuant to 28 U.S.C. § 158(a), the District Court sits as a court of appeals over this

Court and reviews (a) this Court's final orders and (b), if leave is granted by the District Court, its

interlocutory orders.  28 U.S.C. § 158(a)(1), (3).  In its February Order, the District Court held

that, as a matter of law, an order denying a motion to recuse is "an interlocutory order from which

no appeal lies prior to this Court entering a final judgment" and is not an appealable collateral

order.  *See, e.g.*, Ex. 12, Appx. 2106.  And, as set forth on Exhibit 36 (Appx. 4165-4169), there is

still no final judgment; multiple matters are currently pending before this Court or are on appeal

to the District Court or the Fifth Circuit.[66]  Yet, Movants, again, ask this Court to "make clear that

any order denying recusal is final so that Movants may appeal this Court's order to the Northern

District of Texas."  Renewed Motion at 24.

123.    As discussed above, in the Highland Objection, and at the August 31, 2022 status

conference, it is not for this Court to determine whether its orders are final and appealable.

Movants' therefore request this Court to take actions that, respectfully, it has no authority to take:

(a) enter an order declaring any interlocutory order it enters denying the Renewed Motion "final"

and (b) dictate to the District Court that it has jurisdiction to hear an appeal of that interlocutory

order.  Movants' request should be denied as a matter of law.

---

[66] *See Friendly Fin. Serv.-Eastgate, Inc. v. Dorsey (In re Dorsey)*, 489 Fed. Appx. 763, 764 (5th Cir. 2012) ("Here, there is a final judgment from the bankruptcy court, but the appeal of that judgment has not been fully resolved. … [W]e lack jurisdiction to review the motion to recuse.  Friendly Finance must await the final resolution of its appeal.")

## **CONCLUSION**

124.    For the foregoing reasons, Highland respectfully requests that this Court deny the

Renewed Motion and grant such other relief the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

Dated: October 31, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA  90067
Tel: (310) 277-6910
Fax:  (310) 201-0760
Email:      jpomerantz@pszjlaw.com
                 jmorris@pszjlaw.com
                 gdemo@pszjlaw.com
                 hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

51