# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES DONDERO, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-1590-N |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Appellee. | § | |

# **ORDER**

This Order addresses James Dondero's appeal [16] from an Order of Contempt of the Bankruptcy Court for the Northern District of Texas against him. *See Highland Cap. Mgmt., L.P. v. Dondero* (*In re Highland Cap. Mgmt., L.P.*), 2021 WL 2326350 (Bankr. N.D. Tex. June 7, 2021) (the "Contempt Order"). The parties agree that one of the monetary sanctions exceeded the Bankruptcy Court's authority, and the Court therefore reverses that penalty. With respect to all other challenged components of the contempt order, however, the Court finds neither clear error nor abuse of discretion and affirms.

## I. THE ORIGINS OF THE DISPUTE

This is an appeal from an Order of the Bankruptcy Court for the Northern District of Texas finding Dondero in contempt for violating the terms of a Temporary Restraining Order ("TRO") and assessing monetary sanctions. In its order, the Bankruptcy Court thoroughly detailed the history of the bankruptcy case that ultimately led to the adversary proceeding in which Dondero was held in contempt. Contempt Order, at *2–3. The

ORDER – PAGE 1

bankruptcy involved a large alternative asset manager, Highland Capital Management, L.P. ("Highland"). *Id.* at *2. Dondero co-founded Highland and at the time of its entry into Chapter 11 bankruptcy served as its President and CEO. *Id.* at *1.

To understand the contempt finding at issue in this appeal requires some discussion of the relationship between the bankruptcy debtor — Highland Capital Management, L.P. — and many related entities that were not part of the bankruptcy case, some of which remain under Dondero's control to this day. As the Bankruptcy Court cogently explained:

> [I]t should be understood that there are at least hundreds of entities—the lawyers have sometimes said 2,000 entities—within the Highland byzantine organizational structure (sometimes referred to as the "Highland complex"), most of which are not subsidiaries of the Debtor, nor otherwise owned by Highland. And only Highland itself is in bankruptcy. However, these entities are very much intertwined with Highland—in that they have shared services agreements, sub-advisory agreements, payroll reimbursement agreements, or perhaps, in some cases, less formal arrangements with Highland. Through these agreements Highland (through its own employees) has historically provided resources such as fund managers, legal and accounting services, IT support, office space, and other overhead. Many of these non-Debtor entities appear to be under the de facto control of Mr. Dondero—as he is the president and portfolio manager for many or most of them—although Mr. Dondero and certain of these entities stress that these entities have board members with independent decision-making power and are not the mere "puppets" of Mr. Dondero [(the "Dondero-Affiliated Entities")].

*Id.* at *3.

Early in the case — under pressure from the Unsecured Creditors Committee ("UCC") and U.S. Trustee, who wanted a Chapter 11 trustee appointed — Dondero agreed to resign to permit a "complete overhaul of the governance structure" at Highland. *Id.* at *2. A new board of Independent Directors came in, one of whom ultimately became Highland's CEO. *Id.* Dondero remained an unpaid employee of Highland while

ORDER – PAGE 2

continuing to serve as a portfolio manager for several non-debtor investment vehicles (whose assets Highland managed on their behalf). *Id.*

Permitting Dondero to retain a formal relationship with Highland soon became "untenable" after he began vocally opposing aspects of the bankruptcy process and challenging actions taken by the new CEO. *Id.* at *3. Highland terminated Dondero, after which the tension only increased. *Id.*

In November 2020, shortly after Dondero's termination, Highland's new CEO ordered the disposition of assets — SKY and AVYA equity securities — held by several special-purpose entities ("SPEs") managed by Highland. *Id.* at *6, *14. The SPEs held assets, which backed claims on the cashflows generated by those assets. Each SPE issued different classes of these claims, each with different payment priority. This general scheme describes a wide variety of debt investments collectively referred to as "structured products." In this case specifically, the claims were collateralized loan obligations ("CLOs"), though the relevant investments owned by the SPEs were actually stocks instead of loans. *Id.* at *6. Some of the Dondero-Affiliated Entities owned the riskiest category of the structured products issued by the SPEs managed by Highland. *Id.* Crucially, the terms of this investment did not imbue the owner of these investments with any right to control the manner in which Highland managed the SPEs' assets. *Id.*

Dondero (on behalf of certain Dondero-Affiliated Entities) contacted Highland employees and instructed them to stop trading the securities. *Id.* Based on this interference, Highland moved for entry of a TRO. *Id.* at *7. The Bankruptcy Court held a hearing and

ORDER – PAGE 3

entered a TRO against Dondero on December 10, 2020. *Id.* at *10. The TRO prohibited Dondero from:

> (a) communicating (whether orally, in writing, or otherwise), directly or indirectly, with any Board member unless Mr. Dondero's counsel and counsel for the Debtor are included in any such communication; (b) making any express or implied threats of any nature against the Debtor or any of its directors, officers, employees, professionals, or agents; (c) communicating with any of the Debtor's employees, except as it specifically relates to shared services currently provided to affiliates owned or controlled by Mr. Dondero; (d) interfering with or otherwise impeding, directly or indirectly, the Debtor's business, including but not limited to the Debtor's decisions concerning its operations, management, treatment of claims, disposition of assets owned or controlled by the Debtor, and pursuit of the Plan or any alternative to the Plan; and (e) otherwise violating section 362(a) of the Bankruptcy Code.

*Id.* at *7.

Almost immediately, Highland became aware that Dondero was continuing to behave adversely to its interests in ways that arguably violated the terms of the TRO. *Id.* at *14. Less than a month after the Bankruptcy Court entered the TRO — before the hearing on a preliminary in junction could even be held — Highland filed a motion for contempt. *Id.* at *7, *8 n.44. After a two-day hearing, the Bankruptcy Court found that Dondero had attempted to interfere in Highland's trading in SKY and AVYA securities after the TRO went into effect. *Id.* at *21. It also found that he had impermissible contacts with Highland employees. *Id.* at *22. The Bankruptcy Court held him in contempt and assessed two monetary sanctions: $450,000 in compensatory damages for Highland's legal expenses and a further $100,000 for each unsuccessful appeal (or request for reconsideration) of the contempt order. *Id.* at *25–26.

ORDER – PAGE 4

Dondero appeals the Bankruptcy Court's contempt order. He asserts that the finding that he interfered with Highland's trading activity after the TRO lacks any evidentiary support. He also argues that the provision of the TRO pertaining to permissible contacts with Highland employees is impermissibly vague. Finally, he contends that the monetary sanctions are marred — in whole or in part — by various deficiencies.

## II. STANDARD OF REVIEW

A district court "reviews a bankruptcy court's findings of fact for clear error, and its legal conclusions de novo." *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 261 (5th Cir. 2009). It reviews contempt orders for abuse of discretion. *FDIC v. LeGrand*, 43 F.3d 163, 166 (5th Cir. 1995). A court may hold a party in contempt where it has found by clear and convincing evidence that "1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000) (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)). The movant bears the burden of proof on these points. *Id.*

## III. THE BANKRUPTCY COURT'S FINDING OF POST-TRO VIOLATIONS IS NOT CLEARLY ERRONEOUS

The Bankruptcy Court found that Dondero had violated the TRO by interfering with Highland's sales of SKY and AVYA equity securities in late December 2020. Dondero objects that no evidence in the record supports a finding of interference in any dispositions occurring after the TRO went into effect. The Court concludes, however, that evidence in

the record (and cited by the Bankruptcy Court in its Order) reasonably supports the finding of a post-TRO violation.

Though the Bankruptcy Court's order does quote from emails and reference events that occurred prior to the TRO, the record supports the Court's ultimate conclusion that Dondero interfered with Highland's trading in late December. For one, Dondero admitted at a deposition in early January that he had interfered with dispositions in late December. R. 06838–06839.[1] On appeal, Dondero suggests without explicitly asserting (because it would be an incorrect statement) that the transcript of the deposition was not properly in evidence in the contempt proceeding.[2] Even were that true, however, it would not suffice to demonstrate clear error. Without a doubt, Dondero denied any post-TRO interference in his live testimony at the hearing on the motion for contempt. R. 08958. But Highland's counsel impeached him with his earlier inconsistent testimony. R. 08959. At that point, the Bankruptcy Court as fact finder properly weighed the witness's credibility to determine which of the inconsistent statements was true. It concluded that the earlier admission was truthful. Nothing more need be said on this point. The Bankruptcy Court's factual conclusion does not constitute clear error.

---

[1] For clarity, the Court refers to material in the Record on Appeal by reference to Bates numbers. An index for the record can be found at Docket Entry 7-1.
[2] The transcript came in as part of Highland's Exhibit 28, which the Bankruptcy Court admitted into evidence. R. 08912.

ORDER – PAGE 6

## IV. THE TRO STATED ITS TERMS WITH SUFFICIENT CLARITY

Dondero next asserts two purely legal arguments why the TRO cannot serve as a basis for contempt. Both arguments turn on whether the TRO met the specificity requirements of Federal Rule of Civil Procedure 65(d). First, he argues that the TRO impermissibly required reference to a document other than the TRO itself. Alternatively, Dondero contends that the TRO failed to state clearly and unambiguously the conduct that it prohibited. Neither argument is availing.

The TRO proscribed "communication with any of [Highland's] employees, except as it specifically relates to shared services currently provided to" Dondero-affiliated entities connected to Highland. Contempt Order, at *7. Dondero argues that this clause requires reference to the written agreements between these affiliated entities and Highland. As a matter of pure textual analysis, this argument fails. It does not expressly refer the reader to any written agreement at all. Rather than incorporate the specifics of an outside writing, the TRO merely refers to the operational reality — those "services currently provided" — as of the time the TRO took effect. As the former lead executive at Highland no one was as well-placed to understand the way Highland and the relevant entities had conducted themselves previously. Dondero's attempts to muddy the waters by casting doubt on the future arrangement between Highland and the Dondero-affiliated entities (as Highland emerged from bankruptcy) fails to establish that the TRO required reference to documents presumably predating the bankruptcy. And, as Highland points out by way of a parade of horribles, it is difficult to identify a limiting principle in Dondero's argument. Appellee's

ORDER – PAGE 7

Br., at 22 [34] (asking whether Dondero's argument implies that the TRO's reference to Highland's employees requires resort to a written employee roster). The Court agrees that Dondero's interpretation of Rule 65(d) would create an unworkable standard.

As an alternate argument, Dondero contends that the same section of the TRO fails to state the conduct it prohibits with adequate specificity, thereby violating Rule 65(d). Much of this argument repackages the objection to the purported incorporation of the shared services agreements raised in the first argument. Dondero draws heavily from several clauses of these agreements to demonstrate the ambiguity they create with respect to what conduct is or is not permitted by the TRO. But the language of these agreements only matters insofar as the TRO requires resort to them, a position this Court has already rejected. The principle of fair notice guides the application of the specificity standard — the TRO's proscriptive language should "be framed so that those enjoined will know what conduct the court has prohibited." *Am. Airlines*, 228 F.3d at 578 (quoting *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981)). Consequently, the "mere fact that . . . interpretation is necessary does not render the injunction so vague and ambiguous that a party cannot know what is expected of him." *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999). The Court holds that the challenged provision of the TRO meets this fair notice standard considering that the enjoined individual was the long-time chief executive of the Highland empire and had sufficient insight into how services were shared between Highland and the related entities to enable him to comply.

ORDER – PAGE 8

At the conclusion of his challenge to the TRO's specificity, in a single short paragraph, Dondero also challenges the factual findings supporting the conclusion that he failed to comply with the TRO. The Bankruptcy Court enumerated numerous offending contacts between Dondero and Highland employees, only a subset of which he challenges. The Court concludes that the myriad communications identified by the Bankruptcy Court substantiate its factual finding sufficiently to surpass the low bar of clear error review easily.

## V. THE COURT REVERSES THE UNSUCCESSFUL-APPEAL SANCTION BUT AFFIRMS THE COMPENSATORY SANCTION

Dondero attacks both categories of monetary sanctions awarded by the Bankruptcy Court. First, he argues that it lacked the authority to impose a $100,000 sanction for "each level of rehearing, appeal, or petition for *certiorari*" unsuccessfully pursued. Contempt Order, at *26. Highland concedes this point in its brief. Accordingly, this Court reverses the forward-looking sanction applicable to unsuccessful appeals.

The Bankruptcy Court also awarded the Highland $450,000 to compensate it for the "loss and expense resulting from [Dondero's] non-compliance with the TRO." *Id.* This award consists of $365,921 in attorney's fees incurred in December 2020 and January 2021, $33,400 in estimated legal fees preparing for and conducting the hearing on the motion for contempt, and an additional $50,000 in estimated additional expenses. *Id.* at *25. Dondero complains that (i) the fees from December 2020 and January 2021 lack proper support, (ii) the Bankruptcy Court lacked authority to award compensatory damages for the latter two categories at all, and (iii) that all three categories include fees for work

ORDER – PAGE 9

not associated with the claims on which Highland prevailed. The Court rejects all of these arguments and affirms the Bankruptcy Court's compensatory damages award.

Courts possess an inherent power to enforce their orders via civil contempt. *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977). "Discretion, including the discretion to award attorneys' fees, must be left to a court in the enforcement of its decrees." *Id.* Quite logically, then, a Bankruptcy Court's assessment of monetary sanctions for civil contempt is reviewed for abuse of discretion. *In re Bradley*, 588 F.3d at 261. Likewise, the basis for the *amount* of attorney's fees awarded by the court is also assessed under an abuse of discretion standard. *See Cook*, 559 F.2d at 273 (holding that amount of attorney's fees awarded as compensatory damages in civil contempt proceeding must conform to standard articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

The Court first dispenses with Dondero's objection that the Bankruptcy Court abused its discretion in awarding fees incurred during the period from December 2020 to January 2021. In support of this amount, Highland provided eighty-seven pages of line-by-line time entries that specified the biller and the work performed. R. 008108–008196. That these records date back to November (before issuance of the TRO) is of no moment because the Bankruptcy Court only awarded attorney's fees for work performed during December and January. Contempt Order at *25. The Bankruptcy Court, relying on its familiarity with the work provided by Highland's counsel garnered in the course of this proceeding scrutinized the time entries to ensure that it included only work that pertained to the contempt proceeding. The amount awarded for December 2020 constitutes less than

ORDER – PAGE 10

a third of the total amount billed to Highland for December 2020 by its counsel. The Bankruptcy Court concluded that the documentation before it adequately established the reasonableness and necessity of the fees charged. It had ample experience with Highland's counsel — both in terms of the nature of the work and its cost — garnered over the course of this years-long proceeding. Relying on those voluminous records does not constitute an abuse of discretion.

The Court next addresses Dondero's contention that the Bankruptcy Court impermissibly included fees predating the contemptuous conduct. Assuming the Bankruptcy Court included fees incurred in preparing or arguing the motion for TRO, did it abuse its discretion? Dondero argues, citing *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), that the Bankruptcy Court could only award fees that would not have been incurred but-for his misconduct. While this rule did apply to restrict the Bankruptcy Court's authority to grant fees, Dondero's frames his but-for test far more narrowly than the language of *Goodyear Tire* requires. A trial court "may decide, for example, that all (or a set percentage) of a particular category of expenses — say, for expert discovery—were incurred solely because of a litigant's bad-faith conduct." *Goodyear Tire*, 137 S. Ct. at 1187. Some circumstances warrant the shifting of all fees in a case (or from a moment in the case). *Id.* Where a specific course of litigant misconduct sets off a new phase of litigation that results in a party incurring fees which it would not have incurred absent the misconduct, a court may properly shift fees for that entire phase of the case. *See id.* at 1188 (noting that a court may shift fees from some moment onward if "all fees in the litigation, or a phase of it, . . . would not have been incurred except for the misconduct").

ORDER – PAGE 11

This phase of the case began with Dondero's November misconduct which resulted in the issuance of a TRO. That pattern of conduct — the behavior found contemptuous closely mirrors the interference giving rise to the TRO — continued largely unabated through the relevant period in time. The Bankruptcy Court did not abuse its discretion in concluding that the fees related to the TRO would not have been incurred but-for the discrete pattern of misconduct giving rise to the ultimate finding of contempt.

Dondero's argument that the but-for test prohibits the inclusion of fees incurred in support of non-contemptuous conduct also fails. Unlike in *Fox v. Vice*, 563 U.S. 826 (2011), a precursor case to *Goodyear Tire*, the issue is one of *factual allegations* and not discrete *legal claims*. Highland alleged a broad set of facts in support of the same legal theory. The level of specificity in billing that Dondero seeks to impose is utterly unworkable because no attorneys segregate their billing based on the factual allegation they are currently working in support of. Moreover, as the Supreme Court squarely addressed this kind of nit-picky argument when it noted:

> The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.

*Fox*, 563 U.S. at 838 (internal citations omitted). In sum, the Bankruptcy Court did not abuse its discretion in awarding attorney's fees for the work related to the contempt motion, including work addressing factual allegations ultimately found noncontemptuous.

Finally, the Court affirms the Bankruptcy Court's inclusion of estimated fees related to the contempt hearing itself as well as for additional expenses. Again, "trial courts may take into account their overall sense of a suit[] and may use estimates in calculating and allocating" attorney's fees. *Id.* The Bankruptcy Court used extremely conservative assumptions regarding the additional time expended in preparing for and conducting the hearing. The Bankruptcy Court likewise drew on its substantial knowledge of the scope of work required in this case to arrive at a conservative estimate for legal work and other necessary expenses associated with prosecuting Dondero's contemptuous conduct. While Dondero may seek "auditing perfection," that is not the standard. This Court rejects the contention that the Bankruptcy Court's compensatory sanction rose to the level of an abuse of discretion.

## CONCLUSION

In consideration of the foregoing, the Court affirms all challenged components of the Bankruptcy Court's Contempt Order, save for its sanction of $100,000 for each unsuccessful appeal of that Order. As to the unsuccessful-appeal penalty, the Court reverses the Bankruptcy Court's sanction as an abuse of discretion.

Signed August 17, 2022.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 13