# EXHIBIT 2

Appx. 00015

1
2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| 3 | In Re: | ) **Case No. 19-34054-sgj-11** |
| | | ) Chapter 11 |
| | | ) |
| 4 | HIGHLAND CAPITAL | ) Dallas, Texas |
| | MANAGEMENT, L.P., | ) August 31, 2022 |
| 5 | | ) 9:30 a.m. Docket |
| | | ) |
| 6 | Reorganized Debtor. | ) |
| | | ) STATUS CONFERENCE RE: MOTION |
| | | ) FOR FINAL APPEALABLE ORDER |
| 7 | | ) FILED BY JAMES DONDERO |
| | | ) [3406] |
| 8 | _____ | ) |

9          TRANSCRIPT OF PROCEEDINGS
    BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
10          UNITED STATES BANKRUPTCY JUDGE.

11   APPEARANCES:

12   For the Reorganized          Jeffrey Nathan Pomerantz
     Debtor:                      PACHULSKI STANG ZIEHL & JONES, LLP
13                                10100 Santa Monica Blvd.,
                                    11th Floor
14                                Los Angeles, CA  90067
                                  (310) 277-6910
15
     For the Reorganized          Melissa S. Hayward
16   Debtor:                      HAYWARD, PLLC
                                  10501 N. Central Expressway,
17                                  Suite 106
                                  Dallas, TX  75231
18                                (972) 755-7104

19   For James Dondero,           Michael Justin Lang
     Movant:                      CRAWFORD WISHNEW & LANG, PLLC
20                                1700 Pacific Avenue, Suite 2390
                                  Dallas, TX  75201
21                                (214) 817-4500

22   Recorded by:                 Michael F. Edmond, Sr.
                                  UNITED STATES BANKRUPTCY COURT
23                                1100 Commerce Street, 12th Floor
                                  Dallas, TX  75242
24                                (214) 753-2062

25

2

Transcribed by:            Kathy Rehling
                           311 Paradise Cove
                           Shady Shores, TX  76208
                           (972) 786-3063

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

3

DALLAS, TEXAS - AUGUST 31, 2022 - 9:40 A.M.

2          THE COURT:  All right.  We have a status conference

3    in the Highland matter.  So, before I get appearances, let me

4    just kind of set the stage here.  The impetus for this was a

5    motion filed by six different entities, including James

6    Dondero and NexPoint and HCMFA and Dugaboy Family Trust.  It

7    was titled a Motion for Final Appealable Order and Supplement

8    to Motion to Recuse Pursuant to 28 U.S.C. Section 455.

9        So that was filed, and then Highland filed a motion to

10   strike certain items that were in the appendix.  And there was

11   -- how many -- I've been counting pages here.  I think there

12   was a 365-page appendix.  And Highland wanted to strike

13   certain documents in that appendix.  And then there was an

14   alternative request by Highland to compel depositions of

15   certain persons if those documents weren't stricken.

16       So I felt the need for a status conference.  After

17   originally setting this motion for hearing, I decided to

18   convert today to a status conference because, to be perfectly

19   honest, I didn't understand what in the heck the Movants were

20   procedurally seeking.

21       Okay.  So, I'm aware that Highland's motion to strike and

22   Highland's motion to compel were later resolved by

23   stipulation, but -- and then I guess an amended motion was

24   filed by Movants.  But I'm still confused, and so I just want

25   to kind of talk about process and procedure.

4

1     I will say -- and I see Mr. Pomerantz on the video, and

2     Ms. Hayward and many others -- if we want to talk more

3     generally status, I'm open to that, because I have become

4     aware that the Fifth Circuit affirmed in substantial part the

5     confirmation order, so I don't know if, in light of that, the

6     parties want to talk about big-picture status.

7           MR. POMERANTZ:  Your Honor, I could address that

8     briefly.  I don't think we're prepared today --

9           THE COURT:  Okay.

10          MR. POMERANTZ:  -- for a number of reasons.  One

11    because the other adversaries aren't here.  But suffice it to

12    say we read the order and we intend to bring an appropriate

13    motion before Your Honor to implement the Fifth Circuit

14    opinion, and will do so relatively soon.

15          THE COURT:  Okay.  Thank you.  All right.  So, with

16    that, let me go ahead and get formal appearances on the motion

17    before the Court.  So, for the Movants, Mr. Lang, are you the

18    one appearing for the Movants?

19          MR. LANG:  Yes, Your Honor.

20          THE COURT:  All right.  And for Highland, who do we

21    have appearing on this motion, the status conference?

22          MR. POMERANTZ:  Good morning.  Jeff Pomerantz;

23    Pachulski Stang Ziehl & Jones; on behalf of Highland Capital.

24          THE COURT:  Okay.  And I'll just ask.  I know we have

25    observers, but is there anyone else who wanted to make an

5

1    appearance on this particular motion?

2        (No response.)

3            THE COURT:  All right.  Well, Mr. Lang, I'm turning

4    it over to you.  Can you explain to me exactly what you're

5    seeking with your motion?  I know it's about recusal, --

6            MR. LANG:  Sure.

7            THE COURT:  -- but we've plowed a lot of ground, and

8    I'm kind of confused about the --

9            MR. LANG:  No, that's good.  That's fair.

10            THE COURT:  -- procedure.

11            MR. LANG:  And I just want to let you know that we

12    conferred with Highland's counsel, and they have no objection

13    -- and I understand the Court, you know, has some issues that

14    you want to discuss -- but they have no objection to our

15    request to remove the reservation language.

16        Highland also, now that we have stipulated to the removal

17    of the three documents that they had an issue with, Highland

18    also doesn't object to Movants' appendix and supplementing the

19    record.  And likewise, Movants do not object to Highland's

20    appendix and supplementation of the record.  Just so you know,

21    that's unopposed on those issues.

22        With respect to what we are seeking, we are seeking for

23    the Court just to issue an order removing the reservation

24    language.  As the Court is aware, Judge Kinkeade raised the

25    issue about that reservation language in the response

6

1  briefing.  Highland seized upon that language and -- or,

2  argued that the recusal order was not final because Your Honor

3  had, you know, could potentially supplement or amend the

4  recusal order in the future.

5      And we are trying to get this in a position to get this

6  reviewed on appeal, even if it's through mandamus, and are

7  trying to eliminate any obstacles that might pop up due to

8  that reservation language.  So, it's really that simple on

9  that issue.

10          THE COURT:  Okay.  Let me --

11          MR. POMERANTZ:  Your Honor, may I --

12          THE COURT:  Well, yes, but let me just ask this one

13  very basic question.  If all you are seeking at the end of the

14  day is for this Court to remove the one sentence at the end of

15  the March order that provided the Court reserves the right to

16  supplement or amend, why didn't you just file a motion saying

17  that?

18          MR. LANG:  Well, we say --

19          THE COURT:  And what I'm talking about is it's a

20  lengthy motion.  As I mentioned, it had 365 pages of

21  supplemental material.  And that's why we're here on a status

22  conference, because I didn't understand exactly what you were

23  seeking to do.  You know, why would you file such a thick

24  motion if all you were seeking was for me to remove?  Why

25  wouldn't you have just said -- you know, I guess cited Rule

7

1  54?  I guess that would be the applicable authority.  I mean,

2  so help me to understand.  Have you evolved your approach?

3  Did you originally think you wanted more and then now you're

4  seeking to narrow it to just having the Court delete that

5  sentence, or what?

6          MR. LANG:  No.  That goes to your second issue about

7  the supplementation.  You know, the United States Supreme

8  Court in the *Liteky* case states that, you know, when you've

9  got a recusal, you look at events occurring in the course of

10 the proceedings that evidence deep-seated favoritism or

11 antagonism.  So you look at the entire course of the

12 proceeding.

13     We put in additional examples.  I think all but one of the

14 transcripts was after the recusal motion was filed and after

15 the order.  And it is, you know, this isn't a single-issue

16 case and it's not a situation where, you know, for example,

17 the Court owns stock in a company that was one of the parties.

18 This is, you know, from our perspective, it's an ongoing case

19 that's still in process, and that in the course of the

20 proceedings there have been statements made and things that

21 happened that we believe are going to be reviewed to apply the

22 standard.

23     And so it is -- the supplementation goes to things that

24 happened after the recusal.  And so we are supplementing to

25 add that.  And that's -- even the Fifth Circuit says that you

8

1  look at the entire course of the judicial proceedings when

2  reviewing a recusal motion.

3      So that's -- that was the second point that you raised,

4  which is why, 17 months after the order, are we supplementing?

5  It is because the proceedings continued and we believe it's

6  just additional examples and -- that support the relief that

7  we request, and we're putting it in the record, and we wanted

8  the Court to review it.

9      I think we say in the motion, or in the reply, you know,

10 we don't -- we don't think the Court is going to come to a

11 different conclusion, but regardless, we wanted to put the

12 information in the record and put it before the Court, and the

13 Court can review it and make the ruling that the Court is

14 going to make, and then we'll just go from there.

15         THE COURT:  All right.  One more question for now,

16 and then, Mr. Pomerantz, I'll hear from you.

17     Again, I care about procedure, as I hope any court does.

18 It occurred to me that there were two ways that might

19 procedurally be proper to raise the issues here.  One, as I

20 mentioned, just a simple, I guess, Rule 54 motion:  Please,

21 Judge, take out that last sentence of your order, because some

22 day we want to have a final order that we can appeal.  And I

23 don't think taking out that order, I mean, that one sentence,

24 is going to make it a final order.

25     But then the second -- so that could have been the motion.

9

1   Or you could have filed just a new motion to recuse, I guess,

2   and added a new record.

3       But it just felt like you were -- well, I was just

4   confused.  That's why we're here.  And I said I was going to

5   turn to Mr. Pomerantz, but one more question for you.  Do you

6   think if I remove the one sentence from my March 2021 order,

7   all of a sudden you have a final appealable order that you

8   could immediately file a new appeal on?

9           MR. LANG:  No.  What I previously said was that that

10  language, as Highland argued, creates, you know, an argument

11  that the Court has left open the issue on recusal.  And we

12  think that removing that language makes Your Honor's ruling on

13  this final for purposes of allowing us to seek mandamus.  So

14  that's -- that's why we -- just remove the argument that if we

15  seek mandamus, that, no, the Court is not done with this

16  issue, the Court has left open the prospect, you know,

17  prospect of later amending or supplementing the ruling.  And

18  so we're just trying to get that hurdle out of the way.

19          THE COURT:  Okay.  So you acknowledge that if the

20  last sentence is removed, it's still not going to be a final

21  appealable order because of the posture of the bankruptcy

22  case, but you think it somehow gives you the ability to seek a

23  petition for writ of mandamus?

24          MR. LANG:  I think it removes an argument when we

25  seek a petition for writ of mandamus that this is not -- that

10

1   the Court is not done with this issue and therefore it would

2   be premature.

3       So we're just removing -- again, the argument was made

4   after Judge Kinkeade raised the issue about that language in

5   the order, the argument was made by Highland that that

6   language means that the Court is not done with the issue,

7   potentially not done, and the Court reserved the right to

8   visit that issue at a later date, and therefore, you know, the

9   judge -- the Court's not done dealing with the issue.

10      So we are asking the Court, just remove that language,

11  remove that potential obstacle, and allow us to go forward

12  with whatever procedural rights we have.

13              THE COURT:  Okay.

14              MR. LANG:  We're not asking the Court --

15              THE COURT:  I'm just trying --

16              MR. LANG:  -- to declare --

17              THE COURT:  I'm trying not to waste judicial

18  resources.  And as I understood the Judge Kinkeade ruling,

19  which I went back and read -- I hadn't read it before you

20  filed this new motion -- while he makes a passing reference to

21  the last sentence of my March 2021 order, he gives about five

22  reasons why an order denying a motion to recuse is not a final

23  appealable order until the end of the proceedings it's filed

24  in.

25      And so I read the opinion as there was established case

11

1    law that, even if that last sentence hadn't been in there, you

2    didn't have a final appealable order.  Do you read it

3    differently?

4          MR. LANG:  No, I don't read his opinion differently.

5    And that's why I said that, you know, as far as the petition

6    for writ of mandamus, we don't have to have a final -- the

7    proceeding doesn't have to be final.  It's a different avenue

8    for appeal.

9       And so Judge Kinkeade did not consider, even though we

10   asked him to go ahead and just consider this a petition for

11   writ of mandamus, Judge Kinkeade denied that request, so he

12   did not rule on that issue.  And that's why, again, removing

13   the language eliminates the argument under the mandamus --

14   when the mandamus is filed, it just eliminates the argument

15   that the Court is not done dealing with the issue.

16         THE COURT:  He denied -- okay.  Well, there was

17   something in that ruling that made you think, hey, if you go

18   back and get this last sentence removed, then maybe I would

19   consider a petition for writ of mandamus in this context?

20         MR. LANG:  No.  At the end of the order, he said he

21   denies Appellants' request to construe their appeal as a

22   petition for writ of mandamus.  So the way it was procedurally

23   postured, he said it could not be appealed.

24         THE COURT:  Did --

25         MR. LANG:  But the mandamus position remains open.

12

1  And when he, being Judge Kinkeade, after the briefs were

2  filed, he obviously was looking at it, he questioned his

3  jurisdiction, he requested briefing on the jurisdiction,

4  because in that order that he sent out requesting the

5  briefing, he pointed out -- you know, one of the issues he

6  pointed out was the Court's language, the reservation language

7  in the order.  And, again, Highland argued that because of

8  that language, among other things, that language made the

9  order not final.

10      So all we're saying, all we're asking is just remove that

11  language so when we file the writ of mandamus that argument

12  isn't there.  The Court is done dealing with the issue.

13  Nobody can disagree with it.

14      You know, nobody -- Highland is not agreeing that we, you

15  know, can seek mandamus, so I'm not saying that.  And I'm not

16  asking the Court to agree to that.  Mandamus is a -- we

17  believe is an option.  It's still on the table.  And we're

18  just dealing with one issue that came up before and just

19  trying to head it off before -- so that we don't have to come

20  back down and ask the Court to remove it later.

21          THE COURT:  All right.  Mr. Pomerantz, what do you

22  want to say about this?

23          MR. POMERANTZ:  So, Your Honor, this is extremely

24  frustrating.  I know Your Honor had said you didn't want to

25  waste Court time.  There has already been a tremendous amount

13

1  of Court time that's wasted.

2      When we got this motion, it was a head-scratcher.  We read

3  it as seeking way more things than what Mr. Lang is saying

4  now.  If he had called up and asked us if we had any issue,

5  subject to Your Honor's agreement, to remove that last

6  sentence, we would have said we don't, because the briefing

7  before the District Court and the District Court's decision

8  have really nothing to do with that last sentence.  Maybe the

9  -- Judge Kinkeade mentioned it in his December order, but it's

10  clear, as Your Honor mentions, from the reading of the

11  District Court opinion that it is irrelevant.

12      And the argument that the Court, the District Court which

13  denied interlocutory appeal is somehow, once that sentence is

14  eliminated, going to entertain and grant a writ of mandamus is

15  farcical.  It's just not going to happen.  And unfortunately,

16  what's going to happen is we're going to have to spend more

17  time, more money, and more effort.

18      And Your Honor, I know the motion to strike has been

19  resolved, but I'd just like to mention it, because this is --

20  continues to be frustrating from the Highland side.  They

21  filed an appendix that sought to slip in three letters written

22  by attorneys for various Dondero entities that were

23  essentially a smear campaign, a smear campaign on Mr. Seery, a

24  smear campaign on the Independent Directors, incidentally,

25  which may be actionable in its own right.

14

1     That had nothing to do with bias.  They wanted to slip

2   that in, somehow it would get into the appellate record, if

3   and when they ever got to an appeals court.

4     So what do we do, Your Honor?  We called them up, called

5   Mr. Lang up and said, will you withdraw the letters?  There's

6   no basis for those to be included in the appendix.  He said

7   no.  Said, okay, will you make the deponents -- the people who

8   wrote the letters available for deposition?  Wouldn't agree to

9   that, either.

10     And then we go to the time and the money, we file our

11   motion to strike, and lo and behold, which has become a

12   considerable pattern in this case, Your Honor, what does Mr.

13   Lang do?  He calls up and says, I will withdraw the letters.

14   Okay?  That's aside.  We got what we wanted.  There's nothing

15   we can do.  But it is kind of frustrating, how that -- how

16   that played out.

17     Your Honor, this motion, to the extent it asks for that

18   sentence to be removed, that's fine.  Again, we think it's a

19   legal nullity.  What Mr. Lang asked for in his motion is for

20   Your Honor to issue a final order.  Your Honor can't determine

21   whether your order is final.  We've made that point in our

22   opposition.  It seems maybe now Mr. Lang is walking back on

23   that.  There's nothing you can do.  Your Honor can issue an

24   order; it'll be up to the District Court.

25     With respect to the supplement, Your Honor, as we put in

15

1  the record, we think all the quote/unquote evidence that was

2  submitted just is a severe mischaracterization of the record.

3  And it's important, Your Honor, that not only does the -- we

4  agree that the evidence can come in, but we think Your Honor

5  has to make a determination whether those additional

6  allegations of bias and evidence do in fact demonstrate bias.

7  What we think Mr. Lang wanted to do, or the Appellants wanted

8  to do, or the Movants, they wanted to have that information

9  come in and argue at first blush to the Appellate Court that

10  that is bias, without having had Your Honor make the initial

11  determination, as you would have if there was a motion to

12  reconsider, as you would have if there was a new motion.

13      And so we think it's very important that Your Honor

14  consider those additional allegations.  We think categorically

15  they do not demonstrate any bias, and our Exhibit A goes

16  through each item and points out the severe

17  mischaracterizations.

18      So, Your Honor, we've wasted a lot of time.  We've wasted

19  a lot of money.  But if all they want is to remove that

20  sentence, supplement the record, have Your Honor deny the

21  motion yet again after considering the additional evidence, we

22  do not have an opposition to that.  But it was -- kind of took

23  a long time and a lot of money to get to this place.

24      Thank you, Your Honor.

25          THE COURT:  All right.  And Mr. Lang, on the subject

1  of it took a lot of time and a lot of money, estate resources,

2  to get to this place, I just want to note a couple of things.

3  And I guess I'm happy to hear any response to these things

4  that I feel very frustrated about.

5      Again, my focus at this point is judicial resources as

6  well as estate resources.  And no judge, no judge looks

7  lightly on a motion to recuse.  Okay?  Any judge, I would

8  think, is going to have some self-introspection.  Like, oh my

9  goodness, what would motivate someone to think this needs to

10  be urged?

11      But, so on the topic of -- again, I want you to respond to

12  this, Mr. Lang -- my concern about judicial resources and

13  estate resources.

14      The timeline here -- and I always talk about timelines, I

15  know -- but this Court signed the confirmation order in this

16  case February 22, 2021, and your motion to recuse was filed

17  about a month later, March 18, 2021.  Now, here's the first

18  thing I'll mention about judicial resources and estate

19  resources.  Your motion and brief to recuse included an

20  appendix that was 200 -- no, excuse me, 2,722 pages long.

21  Okay?

22      So any judge, again, has to take it seriously when a

23  motion to recuse is filed.  And the standard is I have to

24  stand back and look at would a reasonable person have concerns

25  here.  So I can't just say, I know I'm not biased, I don't

17

1  think I'm biased; I have to look at what a reasonable person

2  might think.

3      So you presented to me a 2,722-page appendix for me to do

4  my job and look at what would a reasonable person think.  So,

5  then would it raise a doubt in the mind of a reasonable

6  observer as to the judge's impartiality?

7      So I think here's another point that goes to judicial

8  resources.  I had my law clerk, just out of curiosity, count

9  up for me how many orders that I had signed as of the day that

10  the motion to recuse was filed, March 18, 2021, and I had

11  presided over the bankruptcy case for 15 months at that point,

12  but it had been in Delaware for two months before Dallas.  On

13  the day you had filed your motion to recuse, March 18, 2021, I

14  had signed 263 orders in the Highland bankruptcy case and the

15  adversary proceedings.  It's a lot more now, of course.  But

16  so I suppose, if I was really to do my job thoroughly, I might

17  look not merely at your 2,722 pages of appendix attached to

18  your motion to recuse, but all 263 orders I had entered to

19  see, hmm, would a reasonable observer question my

20  impartiality?

21      So, anyway, this is all about judicial resources and

22  estate resources.  So, going down the timeline, March 23,

23  2021, five days after you filed the motion to recuse -- after,

24  I will tell you, I won't say I dropped everything to pore

25  through this, but spent a lot of time -- I issued an order

18

1  denying the motion to recuse.

2      Now, here's inside baseball, okay, if there ever was:  The

3  last sentence, reserving the right to supplement or amend,

4  here's why I did it.  I didn't know it would cause a brouhaha.

5  Maybe I didn't give it enough thought.  But in reading the

6  case law during those many days and hours I spent focusing on

7  your motion to recuse, I realized that most of the case law

8  says you don't have to have a hearing, okay, the statute

9  doesn't require a hearing, the case law says you don't have to

10  have a hearing.  And I cited some of that my order.  But I

11  thought, these Movants, after seeing this order, they may come

12  back and say, you didn't give us our day in court.  We wanted

13  a hearing.  We weren't just going to rely on our 2,722-page

14  appendix.  We wanted to put on witnesses.

15      So I didn't have to stick that sentence in there, but I

16  was just sort of anticipating what the Movants might do.

17      Okay.  So, live and learn.  I guess I won't, if I'm ever

18  confronted with the situation again, do that.  But that's what

19  that was about.

20      So, my law clerk went and looked at the appellate record

21  in the past few days, because, I mean, again, head-scratcher.

22  We were trying to get a feel for how big a deal was this

23  sentence, okay, to the District Court, if at all.  But anyway,

24  we happened to note that in July, July 20, 2021, the District

25  Court record on appeal was supplemented with 1,001 more pages

19

1   of record.  So I guess, goodness gracious, poor Judge Kinkeade

2   and his staff, they had 3,723 pages of appendix.  I don't even

3   know if that's all.  You know, I don't know.

4       But so Judge Kinkeade dismissed the appeal because he said

5   my order was interlocutory on February 9, 2022, and then we

6   didn't see a motion for rehearing or an appeal to the Fifth

7   Circuit or a petition for writ of mandamus to the Fifth

8   Circuit.  Five and half months later, this new motion for

9   final appealable order and supplement to the motion to recuse

10  is filed, containing 365 more pages.  And then I see that, Mr.

11  Lang, you filed an amended motion to take out certain of the

12  items, with the agreement, the stipulation that was reached

13  with Debtor's counsel, so it's now a 154-page appendix.

14      But I should add that, in Highland's objection to your

15  latest motion, they attached 86 exhibits, and I couldn't count

16  all those exhibits, but it was more than 5,500 pages.  And it

17  was, as I understood it, sort of almost like a rule of

18  optional completeness.  If you're going to submit these 154

19  pages to supplement the record, we think you need to attach

20  more than snippets of a transcript here and there.  You need

21  to have the whole context.

22      So, anyway, I -- you know, look at what you're doing.  I'm

23  just -- and I guess I could totally appreciate and understand

24  if there had been a brief order from Judge Kinkeade saying,

25  because of that one sentence, this is an interlocutory order,

20

1   no leave to appeal an interlocutory order is warranted, end of

2   order.  And, frankly, when you filed your motion, this latest

3   motion, having not seen Judge Kinkeade's order, I thought

4   that's what it was going to say.

5       So, from the tone of your motion, it sounded like that's

6   all his order was about, just:  I have a problem with this

7   last sentence, it makes the whole order interlocutory.  And

8   then I go back and read it and he gives four or five different

9   reasons why an order denying a motion to recuse is

10  interlocutory until the end of the case.  I know that's a

11  bizarre concept in the world of bankruptcy, but he considered

12  this is even the rule in the world of bankruptcy.

13      So, anyway, help me to understand why this isn't

14  unnecessary carpet-bombing the Court, me and whoever might

15  hear your petition for writ of mandamus, and the Debtor

16  estate, carpet-bombing us with paper and causing us to expend

17  resources.  And, again, we've got this backdrop of the

18  original motion to recuse being filed 15 months after I

19  started presiding over the case and after I had signed 263

20  orders.

21      Please, Mr. Lang, please help me to understand if this is

22  warranted.  Why, I mean, help me to understand why this is not

23  wasting resources in your view and why this isn't just some

24  strategy.  Again, I'm trying to not play psychologist, I'm

25  really trying to understand why you think this is fine.

1        MR. LANG:  Well, Your Honor, we've moved to recuse,

2    and we've stated the grounds, and we have put in documents

3    from the record that we think support those grounds.  We have

4    not unnecessarily carpet-bombed.  We've cited to the various

5    transcripts.  The length of the record is directly related to

6    the length of the transcripts mostly, the various transcripts

7    throughout the proceeding.  And so, you know, with respect to

8    the 2,722 pages of appendix, most of those are just complete

9    copies of transcripts.

10       But again, we're just creating our record to support our

11   position on our motion.  And the current motion is eight

12   pages.  It's got reference to the additional grounds that

13   we've set forth that we think support our motion.  And we

14   attached the various documents and transcripts that, again,

15   support -- we think support our position.  And we're making

16   our record for appeal.

17       And as far as Mr. Pomerantz and the withdrawing of the

18   letters, you know, I was getting ready for trial when Mr.

19   Morris called.  And he said, they're hearsay.  We had a brief

20   conversation.  I disagreed.  They filed their motion.  When I

21   got the time to look at it, I read through it, and Mr. Morris

22   and I had a conversation, and we decided, you know what, we

23   don't need them, we'll pull them out.  Let's just do away with

24   this issue.  It's not worth the time to deal with it.

25       I'm sorry they had to file their motion.  But, you know, I

22

1   couldn't drop everything at that moment to look through.  And

2   again, the reason that he gave was hearsay.  So, you know,

3   it's not gamesmanship.  It was just, look, you know, when we

4   got down to looking at it, when I looked at it, I decided it

5   wasn't worth the effort and the hassle, and we agreed to pull

6   them down and withdraw them.  And that's why I filed the

7   amended motion.

8        As far as the current appendix, Your Honor, we're just

9   making a record.  You know, we're trying to get this thing

10  reviewed.  We're making sure the Court is aware of all the

11  grounds and having considered all the grounds and all the

12  actions that we think support our motion.  We're giving the

13  Court the opportunity to look at it, and then just enter the

14  order without that language and we'll deal with the mandamus.

15       Again, the issue is ultimately going to be reviewed.

16  We're trying to get it reviewed.  And you're right, you know,

17  we don't have to, you know, you didn't have to have a hearing

18  on the first deal, you don't have to have a hearing on this

19  one.

20            THE COURT:  Okay.

21            MR. POMERANTZ:  Your Honor, this is -- this is just

22  one more match in furtherance of Mr. Dondero's stated desire,

23  as you've heard many times, to burn the place down.  We would

24  have hoped, and I guess it would have been naïve to hope, as I

25  know Your Honor has hoped throughout the case, that at some

23

1   point in time the Dondero side would stop blaming Your Honor,

2   blaming Mr. Seery, blaming the estate, and actually look at

3   what he can do to put an end to this.  Pay his notes, stop

4   raising frivolous claims, so everyone can go on with his life.

5   That's what the estate wanted to do and wants to do.  That's

6   what Mr. Seery wants to do.  Unfortunately, Mr. Dondero

7   doesn't seem capable of it, and this is just one more match on

8   the flames.  And Mr. Lang, doing his job, following his

9   client's wishes, is just one more player in that.  But it is

10  extremely frustrating.

11          THE COURT:  Okay.  All right.  Here's what I'm going

12  to do.  First, I'm simply going to deny the pending amended

13  motion for final appealable order and supplement to motion to

14  recuse, as it is procedurally improper as framed.  Okay?  It

15  was kind of like a Rule 54 motion.  It was kind of like a new

16  motion to recuse.  It was kind of like a Rule 59 motion for,

17  you know, new -- to put in new evidence, have a new trial, but

18  way untimely for that.

19      So I'm just denying the motion that's before me.  Okay?

20  And by doing that, I mean, I guess, I guess the stipulation

21  and order that's before me on the motion to strike and the

22  motion to compel, I guess I'll -- it's in my queue, I'll sign

23  it, unless someone tells me there is a reason it doesn't make

24  sense to sign it.

25      But I'm denying the motion before me.  But just so it's

24

1  clear, Mr. Lang, it's without prejudice to you either filing a

2  simple Rule 54 motion, without attachments, that simply asks

3  me to strike the last sentence of my original order denying

4  your motion to recuse from March 2021.

5      If you give me a simple Rule 54-based motion simply asking

6  me to strike that sentence, I'll sign it.  Without a waiting

7  period.  Without a hearing.  And I assume Mr. Pomerantz

8  doesn't have a problem with that.

9          MR. POMERANTZ:  That is correct, Your Honor.  If all

10  that motion asks for, we would not oppose that.

11          THE COURT:  Okay.  It's also, my ruling today denying

12  your motion, is without prejudice to you filing a new motion

13  to recuse, if that's what you want to do, to start this over

14  and supplement the record.

15      But, you know, proceed as you will.  This Court is going

16  to do its duty.  And, well, if you want to do that, you do

17  that, but I'll have a more elaborate order if I have to rule

18  on a new motion to recuse.  Among other things, I'm going to

19  point out to the Court above, whoever hears this, that because

20  I think timeliness was always an issue I raised in your

21  original order, you know, filing a motion to recuse after

22  confirmation, 15 months after this judge was assigned to the

23  case, and after the judge had signed 263 orders.

24      You know, we have case authority, as I'm sure you

25  researched and know, that talk about timeliness.  Even though

25

1  it's not baked into the statute, 28 U.S.C. Section 455, it is

2  a factor.  And so this is not *A v. B* litigation.  This is a

3  case affecting many, many people.  And at some point, don't we

4  have to wonder why a motion would be filed after 263 orders?

5  If your clients legitimately think there was bias, I don't

6  know why they didn't raise the issue way, way earlier in the

7  case.

8      And that's why these appendices are so huge, right?  It

9  dovetails with the timeliness.  Okay?  Fifteen months.

10 There's a huge, huge, huge, huge record.

11     So, anyway, do you have any questions, Mr. Lang?

12     Again, I  will say it for at least the third time this

13 morning:  I'm worried about judicial resources and estate

14 resources.  Okay?  And, you know, I have to worry about I'll

15 loosely call my bosses, okay, you know, the courts that grade

16 my papers.  The District Court who hears appeals and hears

17 petitions for writ of mandamus.  The Fifth Circuit.  They're

18 going to get frustrated with me if -- well, you know, if, for

19 example, I had ruled on this motion before me today, a clearly

20 procedurally defective motion.  And if I just willy-nilly let

21 people put things in the record without a procedurally proper

22 basis, it just makes more work for the Court of Appeals,

23 right?

24     So it's not just about the lawyers here.  It's not just

25 about me and my staff.  It's about the people who grade my

26

1   papers.  If I granted your motion as it's pending here before

2   me today, I have every reason to think, whether it's Judge

3   Kinkeade or the Fifth Circuit, they would think, what is this

4   judge doing?  Okay?  So it's just procedurally defective, what

5   you filed.  Okay?  But, again, you've got the ruling.  Do you

6   have any questions?

7            MR. LANG:  I don't.

8            THE COURT:  We're adjourned.

9            THE CLERK:  All rise.

10      (Proceedings concluded at 10:25 a.m.)

11                        --oOo--

12

13

14

15

16

17

18

19

20                     CERTIFICATE

21      I certify that the foregoing is a correct transcript from
    the electronic sound recording of the proceedings in the
22   above-entitled matter.

23    /s/ Kathy Rehling                     08/31/2022

24   _____    _____
    Kathy Rehling, CETD-444                      Date
25   Certified Electronic Court Transcriber

27

INDEX

1

PROCEEDINGS                                                            3

WITNESSES

-none-

EXHIBITS

-none-

RULINGS                                                               23

END OF PROCEEDINGS                                                    26

INDEX                                                                 27

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25