# EXHIBIT 5

Case 19-34054-sgj11   Doc 3596-5   Filed 10/31/22   Entered 10/31/22 15:27:09   Desc
Exhibit 5   Page 2 of 61
Case 3:21-cv-00879-K   Document 20   Filed 07/28/21   Page 1 of 60   PageID 10087

Docket #0020  Date Filed: 7/28/2021

Case No. 3:21-cv-00879-K

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

---

**JAMES DONDERO, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., THE DUGABOY INVESTMENT TRUST, THE GET GOOD TRUST, AND NEXPOINT REAL ESTATE PARTNERS, LLC,**

<u>**Appellants,**</u>

**v.**

**HON. STACEY G. C. JERNIGAN AND HIGHLAND CAPITAL MANAGEMENT, L.P.**

<u>**Appellees.**</u>

---

**On Appeal from the United States Bankruptcy Court**
**Northern District of Texas, Dallas Division**
**The Honorable Stacey G. C. Jernigan, United States Bankruptcy Court**

**In re:  Highland Capital Management, L.P.**
**Case No. 19-34054 (Jointly Administered)**

---

## ANSWERING BRIEF OF APPELLEE
## HIGHLAND CAPITAL MANAGEMENT, L.P.

---

1934054210728000000000006

**Appx. 00185**

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Judith Elkin (TX Bar No. 06522200)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        rfeinstein@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        jelkin@pszjlaw.com
        hwinograd@pszjlaw.com


-and-

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Appellee*

DOCS_NY:43746.7 36027/002

**Appx. 00186**

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...........................................................1

I.    STATEMENT OF ISSUES AND STANDARD OF REVIEW ........................2

II.   SUMMARY OF THE RESPONSE ...................................................................3

III.  STATEMENT OF FACTS .................................................................................6

    A.   The Bankruptcy Court Presides Over the Acis Bankruptcy Case, and the Delaware Court Transfers this Case to the Bankruptcy Court for that Very Reason .............................................................................6

    B.   Appellants File the Recusal Motion ...................................................11

        1.   The December 2019 Transfer Motion...........................................12

        2.   The January 2020 Settlement Hearing .........................................12

        3.   The February 19, 2020 Application to Employ Hearing ...........13

        4.   The December 2020 Restriction Motion........................................16

        5.   The January 2021 Hearing on the Debtor's Motion for Injunctive Relief.........................................................................20

        6.   The February 2021 Confirmation Hearing....................................22

        7.   Article Referencing PPP Loans....................................................28

        8.   Mandatory Injunction .................................................................29

    C.   The Bankruptcy Court Denies the Recusal Motion......................................31

    D.   Appellants Appeal the Bankruptcy Court's Recusal Order .........................32

IV.   SUMMARY OF THE ARGUMENT ..................................................................33

V.    ARGUMENT ......................................................................................................35

    A.   The Bankruptcy Court Properly Exercised Its Discretion in Finding the Recusal Motion Was Untimely .........................................35

    B.   The Bankruptcy Court Properly Exercised Its Discretion in Denying the Recusal Motion on the Merits.........................................43

        1.   There Is No Extrajudicial Bias Present Here ...........................45

        2.   The Bankruptcy Court Does Not Harbor Deep-Seated Antagonism Toward Appellants ..................................................49

CONCLUSION.....................................................................................................52

DOCS_NY:43746.7 36027/002

**Appx. 00187**

# TABLE OF AUTHORITIES

## CASES

*Andrade v. Chojnacki*,
   338 F.3d 448 (5th Cir. 2003) ...................................................................... passim
*Apple v. Jewish Hosp. & Med. Ctr.*,
   829 F.2d 326 (2d Cir. 1987) ...............................................................................39
*Bossart v. Havis*,
   389 B.R. 511 (S.D. Tex.), aff'd sub nom. *In re Bossart*, 296 F. App'x 398
   (5th Cir. 2008) ......................................................................................................3
*Brown v. Oil States Skagit Smatco*,
   664 F.3d 71 (5th Cir. 2011) .................................................................................46
*Caperton v. A.T. Massey Coal Co.*,
   556 U.S. 868 (2009) .............................................................................................49
*Conkling v. Turner*,
   138 F.3d 577 (5th Cir. 1998) ......................................................................... 45, 46
*Da Silva Moore v. Publicis Groupe*,
   868 F. Supp. 2d 137 (S.D.N.Y. 2012) ............................................................ 38, 40
*Davis v. Board of School Comm'rs*,
   517 F.2d 1044 (5th Cir. 1975) .............................................................................32
*Delesdernier v. Porterie*,
   666 F.2d 116 (5th Cir. 1982) ...............................................................................36
*Garcia v. Woman's Hosp. of Texas*,
   143 F.3d 227 (5th Cir. 1998) ...............................................................................51
*Grambling University Nat. Alumni Ass'n v. Board of Sup'rs for La. System*,
   286 Fed.Appx. 864 (5th Cir. 2008) ......................................................................35
*Henderson v. Department of Public Safety and Corrections*,
   901 F.2d 1288 (5th Cir. 1990) ....................................................................... 48, 51
*Hill v. Breazeale*,
   197 Fed.Appx. 331 (5th Cir. 2006) ............................................................... 37, 43
*Hill v. Schilling*,
   495 Fed. Appx. 480 (5th Cir. 2012) .................................................... 2, 3, 35, 42
*Hill v. Schilling*,
   No. 3:07–CV–2020–L, 2014 WL 1516193, (N.D. Tex. Apr. 17, 2014) ..............38
*Hirczy v. Hamilton*,
   190 Fed. Appx. 357 (5th Cir. 2006) .............................................................. 39, 43
*In re Chevron U.S.A., Inc.*,
   121 F.3d 163 (5th Cir. 1997) ...............................................................................49

DOCS_NY:43746.7 36027/002

*In re Ramba, Inc.*,
    416 F.3d 394 (5th Cir. 2005) ................................................................................3

*Johnson v. Mississippi*,
    403 U.S. 212 (1971) ..........................................................................................49

*Lieb v. Tillman (In re Lieb)*,
    112 B.R. 830 (Bankr. W.D.Tex 1990) ................................................................32

*Liteky v. U.S.*,
    510 U.S. 540 (1994) .................................................................................. passim

*Love v. Tyson Foods, Inc.*,
    677 F.3d 258 (5th Cir. 2012) ................................................................................3

*Marshall v. Jerrico*,
    446 U.S. 238 (1980) ..........................................................................................48

*Martin v. Monumental Life Ins. Co.*,
    240 F.3d 223 (3d Cir. 2001) ...............................................................................42

*Miller v. Sam Houston State University*,
    986 F.3d 880 (5th Cir. 2021) ..............................................................................48

*Preston v. Tenet Healthsystem Memorial Med. Ctr., Inc.*,
    485 F.3d 793 (5th Cir. 2007) ................................................................................3

*Travelers Ins. Co. v. Liljeberg Enters., Inc.*,
    38 F.3d 1404 (5th Cir. 1994) ..............................................................................35

*U.S. v. Jordan*,
    49 F.3d 152 (5th Cir. 1995) ................................................................................44

*U.S. v. Olis*,
    571 F.Supp.2d 777 (5th Cir. 2008) .....................................................................41

*U.S. v. Sanford*,
    157 F.3d 987 (5th Cir. 1998) ................................................................ 35, 36, 38

*U.S. v. Williams*,
    127 Fed. Appx. 736 (5th Cir. 2005) ....................................................................51

*U.S. v. York*,
    888 F.2d 1050 (5th Cir. 1989) ............................................................................42

*United States v. Bremers*,
    195 F.3d 221 (5th Cir. 1999) ..............................................................................43

*United States v. Landerman*,
    109 F.3d 1053 (5th Cir. 1997) ............................................................................51

*Vieux Carre Prop. Owners, Residents & Assocs. v. Brown*,
    948 F.2d 1436 (5th Cir. 1991) ............................................................................44

*Weisshaus v. Fagan*,
    456 Fed.Appx. 23 (2d Cir. 2012) .................................................................. 40, 42

DOCS_NY:43746.7 36027/002

**STATUTES**

11 U.S.C. § 330 ................................................................................................... 14
28 U.S.C. § 455 ............................................................................................. passim

DOCS_NY:43746.7 36027/002

## CORPORATE DISCLOSURE STATEMENT

Appellee Highland Capital Management, L.P. is a limited partnership, the general partner of which is Strand Advisors, Inc., a privately held corporation. No publicly held corporation owns 10% or more of the interest in either entity.

DOCS_NY:43746.8 36027/002

**Appx. 00191**

Appellee Highland Capital Management, L.P. ("Highland" or the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case (the "Bankruptcy Case"),  hereby submits its Answering Brief to the Opening Brief of appellants James Dondero ("Mr. Dondero"), Highland Capital Management Fund Advisors, L.P. ("HCMFA"), NexPoint Advisors, L.P. ("NPA," and together with HCMFA, the "Advisors"), The Dugaboy Investment Trust ("Dugaboy"), The Get Good Trust ("Get Good," and together with Dugaboy, the "Trusts"), and NexPoint Real Estate Partners, LLC (collectively, "Appellants") in respect of their appeal from the *Order Denying Motion to Recuse, Pursuant to 28 U.S.C. § 455,* (*see* R. 31)[1] (the "Recusal Order"), entered by the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") on March 18, 2021.

## I.      STATEMENT OF ISSUES AND STANDARD OF REVIEW

The issue on appeal is whether the Bankruptcy Court properly exercised its discretion in denying Appellants' *Motion to Recuse, Pursuant to 28 U.S.C. § 455*, (*see* R. 2338) (the "Recusal Motion").  The standard of review for a denial of a motion to recuse is abuse of discretion. *See Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003); *Hill v. Schilling*, 495 Fed. Appx. 480, 483 (5th Cir. 2012). "[D]eference ... is the hallmark of abuse-of-discretion review." *Love v. Tyson Foods,*

---

[1] Refers to Appellants' Record on Appeal [Docket No. 9].  Any reference to "Supp. R." refers to Appellants' Supplemental Record [Docket No. 19].

*Inc.*, 677 F.3d 258, 262 (5th Cir. 2012).  "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Hill*, 495 Fed. Appx. at 483 (internal quotations omitted). "A finding of fact is clearly erroneous only when although there may be evidence to support it, the reviewing court on the entire [record] is left with the definite and firm conviction that a mistake has been committed." *Preston v. Tenet Healthsystem Memorial Med. Ctr., Inc.*, 485 F.3d 793, 796–97 (5th Cir. 2007) (internal quotations omitted).  "Stated differently, a 'factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole.'" *Bossart v. Havis*, 389 B.R. 511, 515 (S.D. Tex.), *aff'd sub nom. In re Bossart*, 296 Fed. App'x 398 (5th Cir. 2008) (quoting *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005)). For the reasons below, the Bankruptcy Court properly exercised its discretion in denying the Recusal Motion.

## II.    SUMMARY OF THE RESPONSE

Under Mr. Dondero's direction, the Debtor was forced to file for bankruptcy in October 2019 to protect itself from an avalanche of adverse rulings entered against Highland and Dondero-controlled affiliates.  For nearly a decade, courts and arbitration panels in Texas, Delaware, New York, and in foreign jurisdictions such as the Cayman Islands, Bermuda, and Guernsey, issued a series of rulings against Mr. Dondero and his enterprise, some with stinging rebukes.

DOCS_NY:43746.7 36027/002

**Appx. 00193**

Now, over a year after the Debtor's bankruptcy proceeding was transferred to the Bankruptcy Court,[2] Appellants complain that the Bankruptcy Court is biased against Mr. Dondero, as if no other judge or fact-finder had previously ruled against him and the entities he controls. Appellants base their appeal on snippets of out-of-context quotes and on eight specific rulings out of the dozens entered by the Bankruptcy Court, while ignoring the mountain of evidence justifying that Court's rulings.

While Appellants' egregious omissions of evidence and other portions of the record are addressed below, it is noteworthy that Appellants have appealed only one of the eight orders and judgments they complain of. If the Bankruptcy Court's bias and prejudice was as open and notorious as Appellants now contend, Appellants would have appealed all of them, and their failure to do so is telling.

Rather than seeking disqualification "at the earliest possible moment," as litigants are required under applicable Fifth Circuit precedent, Appellants sat on their hands for almost a year and a half after supposedly first concluding that the Bankruptcy Court was biased. According to Appellants, the Debtor first expressed these concerns in the fall of 2019 when—then under Mr. Dondero's control—it opposed a motion to transfer venue to the Bankruptcy Court on the express basis that

---

[2] "Bankruptcy Court" refers to the United States Bankruptcy Court for the Northern District of Texas, The Hon. Stacey G. C. Jernigan presiding.

4

it was not objective.  App. Brief ¶¶ 1-2.  Appellants contend that the Bankruptcy

Court's bias was on full display during hearings held on (i) January 9, 2020, (ii)

February 19, 2020, (iii) June 30, 2020, (iv) July 8, 2020, and (v) September 2020.

*Id.* ¶¶ 3-6, 24-26.  Rather than seek recusal at any time during 2020, Appellants

waited until mid-March 2021 (after at least three additional adverse rulings were

entered against them),[3] days before the Bankruptcy Court was to conduct an

evidentiary hearing on the Debtor's motion to hold Mr. Dondero in contempt of

court.[4]  Based on Appellants' collective failure to promptly seek disqualification, the

Bankruptcy Court properly denied the Recusal Motion as "untimely."

Appellants have not—and cannot—meet their heavy burden of proving that

the Bankruptcy Court abused its discretion in denying the Recusal Motion on the

---

[3] Appellants contend that the Bankruptcy Court's rulings and comments in (a)
December 2020, (b) January 2021, and (c) and early February 2021, all conveyed
bias and prejudice.  App. Brief ¶¶ 7-22.

[4] Notably, Appellants *do not* contend that the Bankruptcy Court exhibited any bias
or prejudice against Mr. Dondero with respect to its (a) *Order Granting Debtor's
Motion for Temporary Restraining Order Against James Dondero*, entered on
December 10, 2020 (R. 7233) ("Mr. Dondero's TRO"), or its (b) *Order Granting
Debtor's Motion for Preliminary Injunction Against James Dondero*, entered on
January 12, 2021 (R. 7382).  The Bankruptcy Court held an evidentiary hearing on
the Debtor's contempt motion promptly after denying the Recusal Motion and on
June 7, 2021, issued a 55-page *Memorandum Opinion and Order Granting in Part
Plaintiff's Motion to Hold James Dondero in Civil Contempt of Court for Alleged
Violation of TRO* (*see* Supp. R. 474) (the "Contempt Order").  The Contempt Order
included an exhaustive recitation of facts and over 170 detailed footnotes as well as
(ironically) express findings in Mr. Dondero's favor that mitigated the consequences
of the Contempt Order.

merits.   Seen in context, the record demonstrates that (a) numerous courts and tribunals have consistently ruled against Mr. Dondero and his enterprise, thereby demonstrating that the Bankruptcy Court does not stand alone, (b) the Bankruptcy Court's rulings and orders are unassailable (as evidenced by, among other things, Appellants' decision to appeal only one of those complained of), (c) there is ***no*** evidence presented of extrajudicial bias or prejudice, and (d) no objective person would find that Mr. Dondero and his enterprise are the victims of improper judicial conduct rising to the extraordinary remedy of recusal.

### III.   STATEMENT OF FACTS

**A.   The Bankruptcy Court Presides Over the Acis Bankruptcy Case, and the Delaware Court Transfers this Case to the Bankruptcy Court for that Very Reason**

Between 2008 and October 16, 2019, courts and arbitration panels in multiple domestic and foreign jurisdictions handed down a plethora of judgments and orders against Mr. Dondero, the Debtor, and other entities then under Mr. Dondero's control.[5]

For example, in March 2019, a blue-ribbon arbitration panel issued a 56-page decision in which it (a) rejected nearly every argument advanced by the Debtor and

---

[5] An overview of some of the prepetition litigation involving the Debtor and other Dondero-related parties is set forth in the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*, Case No. 19-34054-sgj11, Docket No. 1473 (Bankr. N.D. Tex. Nov. 24, 2020) at 20-24 (Appx. 1:31-35).

made highly critical assessments of the credibility of Highland's witnesses, (b) found that the Debtor had breached its fiduciary duties to its investors, breached certain agreements, and engaged in other wrongful conduct, and (c) rendered an award against the Debtor in excess of $150 million.[6]  Just two months later, in an unrelated case, the Chancery Court in the state of Delaware (i) found that the Dondero-related defendants improperly withheld dozens of documents in discovery on privilege grounds, and (ii) ruled that there was "a reasonable basis to believe that a fraud has been perpetrated" such that the Chancery Court applied the "crime-fraud exception" to the attorney-client privilege in any event.[7]

The adverse rulings against Mr. Dondero and his controlled entities are legion—and have resulted in the imposition of judgments and awards totaling more than $1 billion (inclusive of interest).  The Bankruptcy Court had no involvement in any of these cases.

---

[6] *See Partial Final Award* rendered in the arbitration captioned *Redeemer Committee of the Highland Crusader Fund v. Highland Capital Management, L.P.*, Case No. 01-16-0002-6927.  (Appx. 2:181-242).  The Partial Final Award was incorporated into the arbitration panel's final award (Appx. 3:244-266), and a hearing in the Delaware Chancery Court to have the award confirmed was about to begin when Mr. Dondero caused the Debtor to file for bankruptcy protection for the purpose of gaining the protection of the automatic stay.

[7] *Daugherty v. Highland Capital Management, L.P.*, C.A. No. 2018-0488-MTZ, May 17, 2019 transcript (bench ruling on motion to compel production of documents) at 10-15.  (Appx. 4:277-282).  The Dondero-related defendants made three desperate but unsuccessful attempts to overturn or stay the Chancery Court's rulings.  *See Order Denying Application to Certify Interlocutory Appeal*, entered in C.A. No. 2018-0488-MTZ on July 8, 2019 ¶ K-L.  (Appx. 5:366-378).

DOCS_NY:43746.7 36027/002

The Bankruptcy Court's experience with Mr. Dondero and the Debtor began in January 2018, when it was assigned a case captioned *In re Acis Capital Management, L.P.*, Case No. 18-30264-sgj11 (Bankr. N.D. Tex.) (the "Acis Bankruptcy").  The Acis Bankruptcy was involuntarily commenced by Joshua Terry, a former Highland executive who had obtained an arbitration award against the Acis entities then under Mr. Dondero's control, but who could not collect on the judgment because Mr. Dondero allegedly orchestrated a fraudulent transfer of assets that left the Acis debtors judgment proof.  Mr. Dondero and Mr. Terry were the chief antagonists in the highly contested Acis Bankruptcy, and the Bankruptcy Court made numerous credibility findings against Mr. Dondero and his associates before confirming a plan of reorganization that effectively transferred control of a valuable business from Mr. Dondero and Highland to Mr. Terry.[8]

With various judgment creditors bearing down, on October 16, 2019, the Debtor filed this case in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court") expecting it to be a more hospitable forum.  Less

---

[8] *See*, *e.g.*, (a) *Order Denying Alleged Debtors' Joint Motion to Dismiss the Involuntary Petitions Filed by Joshua N. Terry for Lack of Subject Matter Jurisdiction or, Alternatively, to Compel Arbitration*, Case No. 18-30264-sgj11, Docket No. 75 (Bankr. N.D. Tex. Mar. 20, 2018) (Appx. 7:540-543); and (b) *Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, as Modified,* Case No. 18-30264-sgj11, Docket No. 829 (Bankr. N.D. Tex. Jan. 31, 2019) (Appx. 8:545-773).

than two weeks later, on November 1, 2019, the Official Committee of Unsecured

Creditors (the "UCC") filed their *Motion for an Order Transferring Venue of this*

*Case to the United States Bankruptcy Court for the Northern District of Texas,* Case

No. 19-12239 (CSS), Docket No. 86 (Bankr. D. Del. Nov. 11, 2019) (Appx. 6:380-

538)[9] (the "Transfer Motion").  The UCC laid out its intentions in filing the Transfer

Motion:

> [T]he Dallas Bankruptcy Court is already intimately familiar with the
> Debtor's principals and complex organizational structure [because the
> Acis Bankruptcy is pending in that Court].  Specifically, the Dallas
> Bankruptcy Court has (a) heard multiple days' worth of material
> testimony from the Debtor's principal owner (James Dondero), the
> Debtor's minority owner (Mark Okada), the Debtor's general counsel,
> at least two assistant general counsels, and numerous other employees
> of the Debtor and other witnesses; and (b) issued at least six published
> opinions . . . [The Bankruptcy Court is] intimately familiar with the
> Debtor's business, principal owner, and key executives.  For these
> reasons, the Dallas Bankruptcy Court is uniquely positioned to
> oversee this chapter 11 case.

(*Id.* ¶ 2).

The Delaware Court agreed.  During a December 2, 2019 hearing, the

Delaware Court stated that it would grant the Transfer Motion, reasoning:

> This is a unique case … [T]his case is very focused on responding to
> existing [Acis] litigation.  And that existing litigation of a former
> affiliate, as of a few months ago, and a pending appeal that could make
> it a current affiliate, is located in the Northern District of Texas.  The
> [Bankruptcy Court] has done a tremendous amount of work and has

---

[9] Refers to the Debtor's appendix filed with this brief.

**Appx. 00199**

… issued a number of opinions, had a number of trials.  That work creates a familiarity with the facts, issues, and players in a case …

(R. 2488:23-35-2499:1-11).

Mr. Dondero and Appellants knew **on December 2, 2019** that they were being sent back to the very Bankruptcy Court that took a justifiably stern view of Mr. Dondero and his associates.[10]  Indeed, that is exactly why the Debtor (then under Mr. Dondero's control) opposed the Transfer Motion.[11]

Fully cognizant that he would soon face a Bankruptcy Court with substantial knowledge of (some of) his business practices, Mr. Dondero never caused the Debtor to (a) appeal the Delaware Court's order granting the Transfer Motion, or (b) seek the Bankruptcy Court's recusal on the basis of bias or prejudice (at least not until March 2021).

---

[10] Mr. Dondero and entities controlled by him appealed the Acis confirmation order, but the appeals were denied by the United States District Court for the Northern District of Texas and the United States Court of Appeals for the Fifth Circuit. *See* (a) *Opinion* affirming Confirmation Order Case No. 3:19-cv-00291-D, Docket No. 75 (N.D. Tex. July 18, 2019) (Appx. 9:775-858); (b) *Opinion* affirming Confirmation Order, Case No. 19-10847 (5th Cir. June 17, 2021) (Appx. 10:860-863).

[11] *See Objection of the Debtor to Motion of Official Committee of Unsecured Creditors for an Order Transferring Venue of this Case to the United States Bankruptcy Court for the Northern District of Texas*, Case No. 19-12239 (CSS), Docket No. 118 (Bankr. D. Del. Nov. 12, 2019) (Appx. 11:865-891).

10

**Appx. 00200**

**B.**    **Appellants File the Recusal Motion**

On March 18, 2021, Appellants filed their Recusal Motion requesting that the Bankruptcy Court recuse itself from any adversary proceedings and future contested matters involving Appellants or any entity connected to Mr. Dondero.  In their Recusal Motion, Appellants argue that the Bankruptcy Court is "predisposed against Mr. Dondero" because it: (i) had "negative opinions about Mr. Dondero formed during the Acis case;" (ii) "made repeated reference to proceedings in the Acis case to justify findings made in this case" and made "repeated negative statements about Mr. Dondero;" (iii) "threatened sanctions on" Appellants and "questioned the good-faith basis" of certain of their positions; (iv) declared Appellants "vexatious" litigants; (v) concluded that an entity "connected to or controlled by Mr. Dondero" is "no more than a tool of Mr. Dondero;" and (vi) purportedly disregarded "the testimony of any witness with a connection to Mr. Dondero as *per se* less credible." Recusal Motion ¶ 67.  In support of their Recusal Motion, Appellants cite to a number of proceedings that occurred between December 2019 and February 2021 in an attempt to show that the Bankruptcy Court's comments and rulings demonstrate a "deep-seeded antagonism" toward Appellants resulting from "extrajudicial" bias emanating from the Acis Bankruptcy. *See id.* ¶ 68.  Appellants mischaracterize the facts of these hearings by cherry-picking quotes out of context and by ignoring the considerable evidence underlying each of the orders at issue.

DOCS_NY:43746.7 36027/002

**Appx. 00201**

## 1.   The December 2019 Transfer Motion

Appellants argue that "the risk of prejudice to Mr. Dondero in this [Bankruptcy] Court has been apparent since this Bankruptcy's inception in Delaware," citing to comments made during the hearing on the Transfer Motion where Debtor's counsel "expressly acknowledged that the UCC's actual motive in seeking transfer to [the Bankruptcy Court] was [that] Court's pre-existing negative views" of Mr. Dondero from the Acis Bankruptcy.  Recusal Motion ¶¶ 4-5.  As noted *supra*, Mr. Dondero controlled the Debtor and directed its counsel to oppose the Transfer Motion on this basis during the December 2, 2019 hearing.  The Delaware Court rejected this argument, and in fact relied on the Bankruptcy Court's extensive familiarity with the parties as one of the bases for transferring venue of the Highland Bankruptcy Case to the Bankruptcy Court. (*See* R. 2488).

## 2.   The January 2020 Settlement Hearing

Appellants cite to the Bankruptcy Court's comments made during a January 9, 2020 hearing as evidence of the Bankruptcy Court's alleged bias toward Mr. Dondero resulting from the Acis Bankruptcy. Recusal Motion ¶¶9-13.  On January 9, 2020, the Bankruptcy Court held an evidentiary hearing, (R. 2519), on the *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course*), Case No. 19-34054-sgj11, Docket No. 281 (Bankr. N.D. Tex.

DOCS_NY:43746.7 36027/002

**Appx. 00202**

Dec. 27, 2019) (Appx. 12:893-992) (the "Settlement Motion").  The settlement set forth in the Settlement Motion was prompted by (a) concerns expressed by the UCC about the integrity of the Debtor's management (under Mr. Dondero's stewardship) due to its history of self-dealing, creditor avoidance asset transfers, and other breaches of fiduciary duty, and (b) the possibility that the UCC might seek the appointment of a trustee.

The Bankruptcy Court entered an order granting the Settlement Motion (R. 7291) (the "Settlement Order").  Pursuant to the Settlement Order, Mr. Dondero, the Debtor's founder and former CEO, voluntarily surrendered control of the Debtor to an independent board of three directors, Russell Nelms, John Dubel, and James P. Seery, Jr. (the "Board").  The Settlement Order directed Mr. Dondero not to "cause any Related Entity to terminate any agreements with the Debtor."  (R. 7293).  In finding that this "language is very important" to protect the Debtor, the Bankruptcy Court noted that in the Acis Bankruptcy, "Mr. Dondero was surreptitiously liquidating funds," and "doing things behind the scenes that were impacting the value of the Debtor in a bad way." (R. 2597).  Mr. Dondero did not object to this language and signed off on the Settlement Order.

### 3.    The February 19, 2020 Application to Employ Hearing

Appellants cite to the February 19, 2020, hearing on the Debtor's *Application for an Order Authorizing the Retention and Employment of Foley Gardere, Foley &*

DOCS_NY:43746.7 36027/002

**Appx. 00203**

*Lardner LLP as Special Texas Counsel, Nunc Pro Tunc to the Petition Date* (the "Foley Application") (R. 415) as another example of the Bankruptcy Court's "predisposition against Mr. Dondero." Recusal Motion ¶¶ 14-15.  Appellants argue that the Bankruptcy Court discounted "the testimony of demonstrably independent witnesses who testified" in support of the Foley Application on a "pre-determined basis that any person sharing an opinion with Mr. Dondero … was somehow being unduly influenced by him." Recusal Motion ¶¶ 14-16.  Appellants mischaracterize the facts of this hearing.

Through the Foley Application, the Debtor sought to retain Foley on behalf of both the Debtor ***and*** a non-Debtor entity, Neutra Ltd. ("Neutra"), in the appeal of the Acis confirmation order and related matters (the "Acis Appeal").  In support of the Foley Application, the Debtor disclosed that: (i) Neutra was wholly owned by Mr. Dondero and his partner, Mark Okada, and (ii) the Debtor intended to pay for Foley's representation of Neutra in the Acis Appeal.[12]  The UCC and Acis objected

---

[12] The Debtor justified its payment of Neutra's fees under 11 U.S.C. § 330 (which does not allow the payment of non-debtor legal fees) by arguing, *inter alia*, that if Neutra were successful in its appeal of the involuntary petition entered in the Acis Bankruptcy (a) the Acis Bankruptcy would be unwound, (b) the equity in Acis would return to the Debtor, (c) the Debtor would regain the benefit of certain management fees that were otherwise being paid to Acis for the benefit of its new owner, Mr. Terry, and (d) the Debtor would have negotiating leverage with respect to Acis' $75 million claim against the Debtor's estate.  *See* R. 2761:10-25-R. 2762:1-16. *See* (i) *Debtor's Omnibus Reply in Support of (i) Application for an Order Authorizing the Retention and Employment of Foley Gardere, Foley & Lardner LLP as Special Texas Counsel, Nunc Pro Tunc to the Petition Date,* Case No. 19-12239 (CSS),

14

to the Foley Application on the ground that the Debtor should not be permitted to use estate assets to support Neutra, a Dondero-controlled entity.[13]

Russell Nelms testified in support of the Application.  Mr. Nelms was subject to a lengthy cross-examination which undermined the Debtor's arguments.  (R. 2666-2723).  The Bankruptcy Court approved the Debtor's retention of Foley, but determined that the evidence was insufficient to justify expending estate assets to pay the legal fees of Neutra, a non-Debtor entity in which the Debtor held no interest. (R. 2785-2790).  The Bankruptcy Court's ruling on the Foley Application was not, as Appellants contend, premised on any "pre-determined" bias toward Mr. Dondero to "contest positions that could benefit Mr. Dondero."  (App. Brief ¶ 16).  It was

---

Docket No. 159 (Bankr. D. Del. Nov. 21, 2019) (Appx. 13:994-1258), *and (ii) Application for an Order Authorizing the Retention and Employment of Lynn Pinker Cox & Hurst LLP as Special Texas Litigation Counsel, Nunc Pro Tunc to the Petition Date*, Case No. 19-12239 (CSS), Docket No. 70 (Bankr. D. Del. Oct. 29, 2019) (Appx. 14:1260-1296).

[13] *See* (i) *Limited Objection to the Debtor's: (i) Application for an Order Authorizing the Retention and Employment of Foley Gardere, Foley & Lardner LLP as Special Texas Counsel, Nunc Pro Tunc to the Petition Date; and (ii) Application for an Order Authorizing the Retention and Employment of Lynn Pinker Cox & Hurst LLP as Special Texas Litigation Counsel, Nunc Pro Tunc to the Petition Date*, Case No. 19-12239 (CSS), Docket No. 116 (Bankr. D. Del. Nov. 12, 2019) (Appx. 15:1298-1391); *Limited Objection of the Official Committee of Unsecured Creditors to the Debtor's Application for an Order Authorizing the Retention and Employment of Foley Gardere, Foley & Lardner LLP and Lynn Piker Cox & Hurst as Special Texas Counsel and Special Texas Litigation Counsel, Nunc Pro Tunc to the Petition Date*, Case No. 19-12239 (CSS), Docket No. 120 (Bankr. D. Del. Nov. 12, 2019) (Appx. 16:1393-1398).

DOCS_NY:43746.7 36027/002

based on its determination that the Debtor failed to prove that the estate would benefit by paying a non-Debtor's legal fees, as required by applicable law.

Neither Mr. Dondero nor Neutra appealed the Bankruptcy Court's evidence-based order on the Foley Application.

### 4.    The December 2020 Restriction Motion

Appellants cite to certain of Judge Jernigan's comments and rulings made at the conclusion of an evidentiary hearing held on December 16, 2020 (the "December Hearing") [14] as evidence of bias.  Appellants argue that the Bankruptcy Court improperly denied their Restriction Motion as "frivolous," despite being filed in "good faith." (Recusal Motion ¶¶ 18-26).

In their Restriction Motion, the movants (*i.e.*, the Advisors and certain investment funds managed by the Advisors (the "Retail Funds," and with the Advisors, the "Movants")) asked the Bankruptcy Court to "impose a temporary restriction on the Debtor's ability, as portfolio manager, to cause CLOs to sell assets." (Restriction Motion ¶ 17).  The Movants called as their only witness Dustin Norris, the Executive Vice President of each of the Movants ("Mr. Norris").  During the December Hearing, Mr. Norris made the following admissions:

---

[14] The December Hearing was held in connection with that certain *Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles*, (R. 2798), brought by the Advisors and the Retail Funds (the "Restriction Motion").

DOCS_NY:43746.7 36027/002

## The Debtor Had the Exclusive Contractual Right to Buy and Sell CLO Assets

- The Debtor is the portfolio manager for each of the CLOs in which the Advisors caused the Retail Funds to invest (December 2020 Transcript at 41:18-24) (R. 6265);
- The Debtor's management of the CLOs is governed by written agreements (*id.* at 41:25-42:3) (R. 6265-6266);
- None of the Movants are parties to the Debtor's CLO management agreements (*id.* at 42:4-11) (R. 6266);
- The Debtor, as the CLO Portfolio Manager, has the responsibility to buy and sell assets on behalf of the CLOs (*id.* at 42:12-24) (R. 6266);
- Nobody other than the Debtor has any right or authority to buy and sell assets in the CLOs in which the Retails Funds invested (*id.* at 42:25-43:3) (R. 6266-6267); and
- Holders of preferred CLO shares, such as the Retail Funds, "do not make investment decisions on behalf of the CLOs" and the Advisors knew that when they caused the Retail Funds to make their investments (*id.* at 43:4-17) (R. 6267).

## The Movants Did Not Accuse the Debtor of Any Wrongdoing

- The Movants did not allege or contend that the Debtor (a) engaged in fraudulent conduct; (b) breached any agreement by effectuating any transactions; or (c) violated any CLO management agreement (*id.* at 49:5-50:10) (R. 6273-6274); and
- The Movants did not question the Debtor's business judgment nor could they since they did not know why the Debtor executed the transactions and never even asked (*id.* at 50:11-51:15) (R. 6274-6275).

## Mr. Dondero Controls the Movants and Caused the Restriction Motion to Be Filed

- Mr. Dondero owns and controls the Advisors (*id.* at 28:20-22) (R. 6252); (35:14-36:15) (R. 6259-6260);
- The Advisors manage the Retail Funds; Mr. Dondero serves as the Portfolio Manager of each of the Retail Funds and caused the Retail Funds to invest in the CLOs managed by the Debtor (*id.* at 28:23-29:4) (R. 6252-6253), 36:16-22 (R. 6260);

**Appx. 00207**

- The "whole idea" for the Restriction Motion initiated with Mr. Dondero (*id.* at 29:19-22 (R. 6253), 41:6-10 (R. 6265)); and
- The Retail Funds' Boards did not authorize the filing of the Restriction Motion (*id.* at 37:23-38:6 (R. 6261-6262).

### Mr. Norris Was Not a Competent Witness and Had No Credibility

- Mr. Norris admitted that he does not make investment decisions, is not an investment manager, and has never worked for a CLO (*id.* at 39:7-16) (R. 6263);
- Mr. Norris (a) did not write his Declaration filed in support of the Restriction Motion, (b) did not provide any substantive comments to his Declaration, and (c) relied on the Advisors' "management" (including Mr. Dondero) for all "key information" in his Declaration (*id.* at 40:11-24) (R. 6264); and
- Mr. Norris did not bother to review the very CLO management agreements the Movants were seeking to interfere with (*id.* at 42:12-16) (R. 6266).

### The Movants Did Not Notify Any Other CLO Investors of the Restriction Motion

- The Movants hold (a) less than 50% of the preferred interests in 12 of the 15 CLOs at issue, and (b) less than 70% of the preferred interests in the other three CLOs at issue (*id.* at 44:22-45:7) (R. 6268-6269);
- Yet, the Restriction Motion was pursued solely on behalf of the Movants (*id.* at 46:22-25) (R. 6270);
- The Movants did not notify any other holder of CLO interests of the Restriction Motion and made no attempt to do so (*id.* at 47:1-12) (R. 6271);
- The Movants made no attempt to obtain the consent of all of the holders of the preferred shares to seek the relief sought in the Restriction Motion (*id.* at 47:13-16 (R. 6271));
- Mr. Norris did not know whether any other holder of CLO preferred shares wanted the relief sought in the Restriction Motion (*id.* at 47:17-21) (R. 6271);
- Mr. Norris did not know whether the Debtor's counterparties in the CLO management agreements (*i.e.*, the CLOs) wanted the relief sought in the Restriction Motion (*id.* at 47:22-48:1) (R. 6271-6272); and

18

- Mr. Norris had no personal knowledge of the two transactions described in his Declaration; he testified that he was "very remote" and he didn't have "much knowledge." (*id.* at 53:22-55:13) (R. 6277-6279).

Based, in large part, on Mr. Norris's testimony, the Bankruptcy Court (a) found that there was no factual or legal basis for the Restriction Motion, and (b) declared the Restriction Motion "frivolous," and (c) granted the Debtor's motion for a directed verdict. (December Hearing Transcript at 64:1-7) (R. 6287).  While Appellants contend that the "Bankruptcy Court inscrutably blamed Mr. Dondero" for the Restriction Motion, (App. Brief ¶ 11), Mr. Norris provided all the evidence the Court needed to reach its conclusion:

> Q:   The whole idea for this motion initiated with Mr. Dondero; isn't that right?
>
> A:   The concern, yes, the concern originated, and his concern was voiced to our legal and compliance team.

(*Id.* at 41:6-9) (R. 6265).[15]

The Restriction Motion was a misguided effort by Mr. Dondero and his associates to exert control over the Debtor.  The Motion was frivolous.

---

[15] *See also id.* at 29:21-22 ("the initial cause for concern was raised by Mr. Dondero himself") (R. 6253); 28:20-22 (Mr. Dondero has a control relationship with the Advisors) (R. 6252); 26:11-17 (responsibility for the Retail Funds' portfolio management and investment decisions are delegated to the Advisors) (R. 6250); 35:14-36:15 (Mr. Dondero owns and controls the Advisors); (R. 6259-6260); 37:23-38:6 (the Retail Funds' Boards did not authorize the filing of the Restriction Motion) (R. 6261-6262).

DOCS_NY:43746.7 36027/002

**Appx. 00209**

**5.      The January 2021 Hearing on the Debtor's Motion for Injunctive Relief**

Unchastened by the debacle of the December Hearing, Mr. Dondero caused the Advisors and Retails Funds to continue to interfere with and unjustifiably threaten the Debtor.  Consequently, on January 6, 2021, the Debtor filed its *Verified Original Complaint for Declaratory and Injunctive Relief* against the Advisors and Retail Funds (R. 1962) seeking injunctive relief after they interfered with the Debtor's trading activities and sent the Debtor a flurry of written correspondence (the "K&L Gates Letters") (R. 4158-4160, 4161-4163) threatening to terminate the Debtor's CLO management agreements and asserting specious claims. (R. 8069). The Bankruptcy Court held an exhaustive evidentiary hearing on the TRO Motion on January 26, 2021 (the "TRO Hearing"), during which it admitted voluminous documentary evidence and assessed the credibility of multiple witnesses, including that of Mr. Dondero. (*See* TRO Hearing Transcript) (R. 6291).  At the conclusion of the TRO Hearing, the Bankruptcy Court determined that the TRO was necessary to protect the Debtor's interests pending a hearing on the preliminary injunction. (*See id.)*

Appellants cite to certain aspects of the TRO Hearing as evidence of the Bankruptcy Court's bias against Mr. Dondero while minimizing their conduct and

DOCS_NY:43746.7 36027/002

**Appx. 00210**

noting that the Debtor did not prove specific damages. (App. Brief ¶¶ 12-17.)[16] But, consistent with the balance of the Recusal Motion, Appellants fail to disclose keys facts that caused the Bankruptcy Court to focus on Mr. Dondero: (a) the evidence established that he controlled the Advisors and Retails Funds and was involved in all of the acts complained of, and (b) their conduct implicated two court orders.

*First*, the Settlement Order expressly prohibited Mr. Dondero from "caus[ing] any Related Entity to terminate any agreements with the Debtor." (Settlement Order ¶ 9). The evidence established that the Advisors were "Related Entities" for purposes of the Settlement Order,[17] yet the K&L Gates Letters expressly and improperly threatened to seek to terminate the Debtor's CLO management agreements.

*Second*, Mr. Dondero's TRO enjoined him from, among other things, "causing, encouraging, or conspiring with (a) any entity owned or controlled by him, and/or (b) any person or entity acting on his behalf, from, directly or indirectly"

---

[16] Notably, the Debtor never attempted to prove damages during the TRO Hearing as it would have undermined its claim for equitable relief.

[17] This fact was (a) first established during the December Hearing (*see supra* at 12), (b) was confirmed at the TRO Hearing, and (c) was subsequently admitted to by the Advisors as part of the resolution of the adversary proceeding. *See Declaration of John A. Morris in Support of Debtor's Motion for Entry of an Order Approving Settlement Pursuant to Bankruptcy Rule 9019 and Authorizing Actions Consistent Therewith*, Case No. 19-34054-sgj11, Docket No. 2590 (Bankr. N.D. Tex. July 20, 2021) Ex. A ¶ 2(c) (*see* Appx. 17:1408) (settlement agreement in which each of the Advisors represents and warrants that it (i) is controlled by Mr. Dondero and (ii) is a "Related Party" for purposes of paragraph 9 of the Settlement Order).

DOCS_NY:43746.7 36027/002

making express or implied threats against the Debtor or interfering with the Debtor's business. (*See* R. 7235). Yet, that is precisely what the evidence showed Mr. Dondero did. (*TRO Hearing Transcript* at 42:9-107:10) (R. 6332-6397).

Given the evidence and the clear and unambiguous orders in effect, it would have been shocking if the Bankruptcy Court ignored Mr. Dondero and instead treated the Advisors and Retail Funds as if they were independent third-party actors. Mr. Dondero controlled the Advisors and the Retail Funds. He clearly "caused" or "encouraged" or "conspired" with them to engage in wrongful conduct. The Court's focus on Mr. Dondero was entirely justified—particularly when seen in the context of the applicable Bankruptcy Court orders that the Appellants pretend did not exist.

### 6. <u>The February 2021 Confirmation Hearing</u>

Appellants cite to the February 2021 confirmation hearing on the Debtor's Plan[18] (the "<u>February 2021 Confirmation Hearing</u>") in support of their argument that the Bankruptcy Court was biased against Appellants. *See* Recusal Motion ¶¶ 38-50. Appellants principally contend that during the February 2021 Confirmation Hearing, the Bankruptcy Court: (i) "summarily rejected ***<u>all</u>*** of the objections" to the Plan when such objections were no different than those raised by the U.S. Trustee whose good faith was "not questioned;" (ii) found the objections were not asserted in good faith,

---

[18] Refers to the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (as amended, the "<u>Plan</u>").

DOCS_NY:43746.7 36027/002

**Appx. 00212**

(iii) concluded, "without basis," that the entity Appellants were "controlled by Mr. Dondero"; (iv) disregarded witness testimony of Mr. Jason Post on the ground that the witness had left the Debtor's employ to work for one of the Advisors; and (v) wrongfully accused of Appellants of being "vexatious litigants." *See id.*

First, Appellants' confirmation objections were far more extensive than those filed by the U.S. Trustee, and included objections to (i) plan provisions that had no impact on them as they held no claims in the subject classes (the absolute priority rule), (ii) the assumption of certain executory contracts to which they were not party (the actual contract counterparties had consented to assumption of the contracts by the Debtor), and (iii) common plan provisions like debtor releases, plan supplements and a plan injunction.[19]

Moreover, the Bankruptcy Court included Appellants in the process by considering their objections. (R. 2085 ¶¶ 18-19); (R. 2102-2104).   Appellants'

---

[19] Appellants did not include their objections to confirmation in the record on appeal. They can be found at Bankruptcy Docket Nos. 1661 (Dondero) (Appx. 18:1423-1430), 1667 (Trusts) (Appx. 19:1432-1465), 1670 (Funds and Advisors) (Appx. 20:1467-1516), and 1673 (NexPoint Real Estate Partners) (Appx. 21:1518-1524). The *Limited Objection of the U.S. Trustee* is at Docket No. 1671(Appx. 22:1526-1531). All Appellants' objections to confirmation were addressed at length in the *Debtor's Memorandum of Law in Support of Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1814] (Appx. 23:1533-1600) and *Omnibus Reply to Objections to Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management* [Docket No. 1807] (Appx. 24:1602-1726) and by the Bankruptcy Court in its February 8, 2021 oral ruling on confirmation (R. 3371) and in the Confirmation Order (R. 2085).

DOCS_NY:43746.7 36027/002

objections were not overruled "summarily." Rather, the Bankruptcy Court conducted a two-day evidentiary hearing, at the conclusion of which it made detailed findings of fact and conclusions of law supporting the overruling of all the objections, including those of Appellants. Appellants were not treated any differently than any other objector at the February 2021 Confirmation Hearing.

The Bankruptcy Court also did not "disregard" the testimony of Mr. Post "solely" because Mr. Post had left the employ of the Debtor to work for the Advisors. This only was one of many factors the Bankruptcy Court considered in determining that Mr. Post's testimony was not credible. For instance:

     1.    Mr. Post testified at the confirmation hearing on behalf of both the Advisors and the Funds. (February 2021 Confirmation Hearing Transcript at 51:12 (R. 4872)). For twelve years, Mr. Post served as the Assistant Chief Compliance Officer ("CCO") for the Debtor, the Advisors and the Retail Funds, but left to become the CCO for the Advisors and the Retail Funds contemporaneously with Mr. Dondero leaving the Debtor. (*Id.* at 56:14-57:1). Mr. Post had no knowledge about the relationship between the board members for each of the Retail Funds and either the Debtor (during the years it was controlled by Mr. Dondero) or Mr. Dondero, and no board member (who presumably had knowledge and who Appellants contend are independent

**Appx. 00214**

*actors) ever testified at any hearing or proceeding. (*Id.* at 57-61) (R. 4878-
4882).

2.      Mr. Post testified that the Advisors manage and provide
investment advice to the Retail Funds, and that the Advisors have been owned
and controlled by Mr. Dondero for the entire period of time he served in the
capacity of assistant CCO for the various entities. (*Id.* at 61:12-62:6) (R. 4882-
4883).

3.      Mr. Post testified that he left the Debtor because of "conflicts that
were created by being an employee of the Debtor and by also serving as the
assistant CCO to the named Funds and the Advisors, and it coincided with Jim
[Dondero] toggling over from HCMLP [the Debtor] to NexPoint [one of the
Advisors]. It just made sense more functionally and from a silo perspective
for me to be the named CCO for that entity since he [Mr. Dondero] was no
longer an employee of HCMLP [the Debtor]." (*Id.* at 62:16-63:8) (R. 4883-
4884). On cross-examination, Mr. Post acknowledged that the conflicts he
mentioned had existed as of the Petition Date but claimed they had become
"more evident as time progressed." (*Id.* at 63:15-23) (R. 4884).

Based on this testimony, the Bankruptcy Court concluded that Mr. Post had
left the employ of the Debtor to follow Mr. Dondero, that the alleged conflicts only
became an issue when Mr. Dondero started his feud with the Debtor, and that his

DOCS_NY:43746.7 36027/002

**Appx. 00215**

testimony about the alleged independence of the Retail Funds' boards was not within the scope of his knowledge and was contradicted by the prior testimony of Mr. Norris, as discussed below.

In finding Mr. Post's testimony not to be credible, the Bankruptcy Court also considered the testimony of Mr. Dustin Norris.[20]  Mr. Post acknowledged that he had never reviewed Mr. Norris's testimony and was unaware of the nature or extent of his testimony.  (February 3, 2021 Confirmation Hearing Transcript at 59:12-19) (R. 4880).  Mr. Norris testified that Mr. Dondero had a control relationship with the Advisors, and that he is a portfolio manager for each of the Retail Funds, but that relationship is subject to the annual review by the Funds' boards.  (*Id*. at 28:20-29:4) (R. 6252-6253).

Mr. Norris acknowledged that the Advisors were owned and controlled by Mr. Dondero.  (February 3, 2021 Confirmation Hearing Transcript at 35:14-36:15) (R. 6259-6260).  Mr. Norris further acknowledged that the Retail Funds are managed by the Advisors, the Advisors control the Retail Funds' investment decisions, and Mr. Dondero is either the (or one of the) portfolio managers of each of the Retail Funds. (*Id*. at 36:19-37:13) (R. 6260-6261).  Mr. Norris further testified that the Funds' boards make no investment decisions, (*id*. at 37:14-22) (R. 6261), and did not participate in or approve the filing of the motion then at issue because it wasn't part

---

[20] (*See id.* at 63) (R. 6287).

of their duties.  (*Id.* at 37:23-38:6) (R. 6261-6262).  Mr. Norris testified that the directors were nearly identical for the dozen or so funds managed by the Advisors (who were controlled by Mr. Dondero), including the Retail Funds, and that many of the board members had, at various times, worked for Mr. Dondero at the Debtor or otherwise had long-standing relationships with him.  (*Id.* at 55:19-58:6) (R. 6279-6282).  Based on this evidence, the Bankruptcy Court determined that the Advisors and the Retail Funds were controlled by Mr. Dondero.  The Bankruptcy Court's conclusion in this regard was thus not based, as Appellants represent, on the Bankruptcy Court's "disregard" of Mr. Post's testimony, but rather the entirety of the evidence presented and credibility of all witnesses.

Appellants' allegation that the Bankruptcy Court unfairly determined them to be "vexatious litigants" is equally unfounded.  The Bankruptcy Court did not actually find Appellants to be "vexatious litigants."  Rather, as part of the Court's analysis of the legal basis for approving the Plan's Gatekeeper Provision, the Bankruptcy Court determined that a court may approve a gatekeeper provision when the evidence shows a party may be subject to extensive and frivolous litigation. (Confirmation Order ¶¶ 80-81) (R. 2142-2143); (R. 6548 at 45:12-47:17 R. 6592-6594).  The Debtor presented such evidence, and, accordingly, the Bankruptcy Court took judicial notice of all the actions that had been filed by Appellants through objections, appeals or adversary proceedings, as well as all the litigation the Debtor

**Appx. 00217**

was forced to participate in due to the actions of Mr. Dondero and his related entities.[21]  For the convenience of the Court, the Debtor has summarized all this litigation in a chart that was filed as an exhibit to *Debtor's Reply in Support of the Debtor's Motion to Enforce the Order of Reference*, Case No. 21-842 [Docket No. 43] and is included herein. (*See* Appx. 29:1786-1797).[22]  The chart was created from the public record in this Bankruptcy Case which is part of the confirmation record.  Based on this evidence, the Bankruptcy Court determined that the Gatekeeper Provision was necessary and appropriate to protect the Debtor from litigation of the type and magnitude that had been filed during the case.  The vexatious litigant analogy was only one part of the legal basis for the Bankruptcy Court's approval of the Plan Gatekeeper Provision.  (R. 6548 at 45:12-47:17 R. 6592-6594).

### 7.    Article Referencing PPP Loans

Appellants contend that the Bankruptcy Court's inquiries into COVID-related "PPP loans" was evidence of bias against Mr. Dondero.  Recusal Motion ¶ 52.  As fully disclosed by the Bankruptcy Court, the inquiries were prompted by an extrajudicial source (a newspaper article) that purportedly noted that "Mr. Dondero

---

[21] The exhibits entered into the record at the confirmation hearing included the dockets from certain specified litigation as well as all documents and exhibits on the docket of the bankruptcy case and all exhibits necessary for impeachment.  *See Debtor's Witness and Exhibit Lists for Confirmation Hearing* (as amended) (Docket Nos.  1822, 1866, 1877 and 1895) (Appx. 25:1728-1740; Appx. 26:1742-1754; Appx. 27:1756-1769; and Appx. 28:1771-1784).
[22] This chart reflects the status of Dondero-related litigation as of July 13, 2021.

DOCS_NY:43746.7 36027/002

**Appx. 00218**

or affiliates" received PPP loans.  Because of the vagueness of the article, the
Bankruptcy Court sought information about the Debtor and ordered it to disclose
any PPP loans it had received.  The Debtor responded to the court at a subsequent
hearing that the Debtor had not obtained any PPP loans.  Neither Mr. Dondero nor
any of his affiliated entities were asked to provide any information, no action was
taken against them and the issue was never raised in court again.  Appellants'
reliance on this event is emblematic of the lack of merit – and candor -- in the
Recusal Motion and this appeal.

### 8.    **Mandatory Injunction**

Appellants cite to the February 23, 2021 hearing on the Debtor's motion for a
mandatory injunction (the "Mandatory Injunction").  (Recusal Motion ¶ 27).  The
Mandatory Injunction related to Appellants' failure to provide for a transition of the
services previously provided by the Debtor under certain shared service agreements
(the "SSAs").  Historically, the Debtor had provided back and middle office support
to certain of the Appellants under the SSAs, including the Advisors.  The Debtor
publicly disclosed that it would be materially reducing its work force and would no
longer provide services under the SSAs.  Consistent therewith, the Debtor exercised
its contractual rights to terminate the SSAs in November 2020 with the termination
of the Advisors' SSAs becoming effective January 31, 2021.  (R. 4178).  The
Advisors, which manage a series of retail funds, failed to adopt or implement a

29

**Appx. 00219**

transition plan that would replace the services provided under the SSAs and allow them to manage their funds without risk of default following termination of the SSAs. (*See id.*)  Because the Advisors manage retail, (*i.e.*, "mom and pop,") money, the Debtor was rightfully concerned that there would be significant legal and regulatory exposure both to the Advisors and the Debtor if the Advisors' funds could not operate and, to prevent a catastrophic result, the Debtor agreed to a series of extensions of the SSAs.  This position was untenable.  To avert the potential liability and to extricate itself from its unwanted contractual relationship with the Advisors, the Debtor sought, on an emergency basis, an order requiring the Advisors to implement a transition plan by the end of February before the Debtor would be forced to reduce its workforce and be unable to provide services under the SSAs. (*Id.*)  Thus, this Mandatory Injunction was not "frivolous," as Appellants imply, (*see* Recusal Motion ¶ 50), but wholly necessary to protect the Debtor's estate from significant loss or risk of litigation.  During the hearing, the Advisors (for the first time) stated unequivocally that they had adopted an operating plan to obtain or provide all services previously provided by the Debtor under the SSAs and could manage their funds without the Debtor's assistance. (*See* R. 4199-4437).  Having credited the Advisors' testimony, the Bankruptcy Court issued its order finding the Debtor's motion for a Mandatory Injunction "moot." (R. 4194-98).

DOCS_NY:43746.7 36027/002

**Appx. 00220**

## C.   The Bankruptcy Court Denies the Recusal Motion

On March 23, 2021, the Bankruptcy Court issued its Recusal Order denying the Recusal Motion on the grounds that it was (i) not "timely," and (ii) without merit. Regarding timeliness, the Bankruptcy Court found that "the timing does not seem to pass muster," reasoning that the Recusal Motion (i) "was filed more than 15 months after" the Case was transferred to the Bankruptcy Court; (ii) "comes after many dozens of orders have been issued by the [Bankruptcy] Court," and (iii) "comes on the eve of a contempt hearing." (Recusal Order at 7). The Bankruptcy Court further found that, even if the Recusal Motion had been timely, recusal was not warranted on the merits.

The Bankruptcy Court noted that Appellants' allegations of "extrajudicial" bias resulting from the Acis Bankruptcy were "at the heart of the" Recusal Motion. (Recusal Order at 7). The Bankruptcy Court explained that it did not form any animus or bias toward Appellants during the Acis Bankruptcy and concluded that any knowledge learned from the Acis Bankruptcy did not constitute "extrajudicial" knowledge warranting recusal. (*Id.*)

The Bankruptcy Court also found that "more generally," it does not harbor, and has not shown, any "personal bias or prejudice" against Appellants. (Recusal Order at 10). The Bankruptcy Court explained that it "has merely addressed motions, objections and other pleadings as they have been presented," and "has

31

**Appx. 00221**

issued and enforced orders where requested and warranted." *Id.* The Bankruptcy

Court noted that: "This court and all courts sometimes use strong words as part of

managing a complex and contentious case. None of this should be interpreted as

'bias' or 'prejudice." *Id.* The Bankruptcy Court reasoned that "clashes between a

court and counsel for a party [are] an insufficient basis for disqualification under

Section 455. (Citing *Lieb v. Tillman (In re Lieb)*, 112 B.R. 830, 835-36 (Bankr. W.D.

Tex 1990) (citing *Davis v. Board of School Comm'rs*, 517 F.2d 1044, 1050-52 (5th

Cir. 1975) (holding that disqualification should be determined "on the basis of

conduct which shows a bias or prejudice or lack of impartiality by focusing on a

party rather than counsel.")). To that end, the Bankruptcy Court explained, it has

"the utmost respect for [Appellants]" and it has "no disrespect for Mr. Dondero on

a personal level or any of the [Appellants]." (*Id.*)

Accordingly, the Bankruptcy Court determined, in an exercise of its

discretion, that Appellants' assertions did not "rise to the threshold standard of

raising a doubt in the mind of a reasonable observer as to" the Bankruptcy Court's

impartiality. (Recusal Order at 10).

**D.     Appellants Appeal the Bankruptcy Court's Recusal Order**

On April 1, 2021, Appellants appealed the Bankruptcy Court's Recusal Order

on the grounds that (i) the Recusal Motion was "timely" and (ii) the Bankruptcy

Court "erred in denying the Recusal Motion on the merits." (App. Brief at 19-20).

DOCS_NY:43746.7 36027/002

**Appx. 00222**

In support of their appeal, Appellants argue that the Bankruptcy Court abused its discretion in finding that the Recusal Motion was untimely because, in pertinent part: (i) "timeliness is not an express condition of a recusal motion under § 455," and (ii) the Bankruptcy Court's bias "did not manifest itself until late 2020 and early 2021." (*Id.* at 19). Appellants further argue that: (i) the Bankruptcy Court exhibits "deep-seated antagonism toward" Appellants "that went well beyond 'normal' admonishment," (*id.* at 20), and (ii) even if there is a "lack of extrajudicial knowledge, it is not fatal" to the Recusal Motion because "Appellants are entitled a full and fair opportunity to make their case in an impartial forum." (*Id.* at 19-20). For the reasons that follow, the Bankruptcy Court properly exercised its discretion in denying the Recusal Motion.

## IV.  <u>SUMMARY OF THE ARGUMENT</u>

The Bankruptcy Court properly exercised its discretion in denying the Recusal Motion pursuant to 28 U.S.C. § 455 ("<u>Section 455</u>") on the grounds that it was (i) untimely and, independently, (ii) without merit. First, the Bankruptcy Court properly applied the "timeliness" requirement to Section 455, as mandated by the statute and applicable case law. In order to be timely, a party must move for recusal at the "earliest moment" after learning the facts forming the basis for recusal. The Bankruptcy Court properly determined that the Recusal Motion was untimely because Appellants waited 15 months to bring the Recusal Motion, after dozens of

DOCS_NY:43746.7 36027/002

**Appx. 00223**

orders had been issued by the Bankruptcy Court, and on the eve of a hearing on a pending contempt motion against Mr. Dondero.

The Bankruptcy Court also properly exercised its discretion in finding that, had the Recusal Motion been timely, it was without merit on the grounds that: (i) there was no "extrajudicial" bias present, and (ii) the facts of this case do not rise to the extreme circumstance of showing a "deep seated antagonism" toward Appellants warranting recusal.  The law is clear that recusal is not warranted where comments or opinions formed by the court result from events that transpire during current or prior proceedings, *i.e.*, intrajudicial bias, unless the movant can demonstrate such comments rise to the rare level of a "deep-seated antagonism" or "favoritism."  Here, there was no "extrajudicial" source forming the Bankruptcy Court's alleged "bias." Rather, all events cited by Appellants relate to either judicial rulings or judicial comments, or "intrajudicial" sources.  These types of events are nearly exempt from recusal.    There is also no evidence of the Bankruptcy Court's "deep seated antagonism" toward Appellants such that a reasonable person would question its impartiality in this Case.   Based on the entirety of the proceedings, the exceptional and rare remedy of recusal is not warranted.

DOCS_NY:43746.7 36027/002

**Appx. 00224**

## V.     ARGUMENT

### A.     The Bankruptcy Court Properly Exercised Its Discretion in Finding the Recusal Motion Was Untimely

The Bankruptcy Court properly exercised its discretion in denying the Motion to Recuse on the basis that it was untimely.  Appellants argue that the Bankruptcy Court abused its discretion in finding that the Recusal Motion was untimely principally on the grounds that: (i) "timeliness is not an express condition of a recusal motion under § 455," (ii) the Bankruptcy Court's bias "did not manifest itself until late 2020 and early 2021," and (iii) that the Debtor's motion for contempt against Mr. Dondero was "pending" when Appellants filed the Recusal Motion is "irrelevant." (*See* App. Brief. ¶¶ 36-44).  Appellants' arguments are without merit.

As the Bankruptcy Court correctly stated, recusal motions brought under Section 455(a) must be "timely." *Hill*, 495 Fed. App'x at 483; *see also Grambling Univ. Nat'l Alumni Ass'n v. Board of Supervisors for La. System*, 286 Fed. App'x 864, 867 (5th Cir. 2008) (noting that while "[s]ection 455 does not contain an explicit timeliness requirement … this Court has consistently inferred such a requirement") (citing *U.S. v. Sanford*, 157 F.3d 987, 988 (5th Cir. 1998)).  "The timeliness rule requires that 'one seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.'" *Sanford*, 157 F.3d at 988–89 (quoting *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)).

**Appx. 00225**

"The most egregious delay—the closest thing to *per se* untimeliness—occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal." *Sanford*, 157 F.3d at 988–89.  Courts have "rejected recusal challenges on appeal when the challenger waited to see if he liked an outcome before springing the recusal issue," and "rejected other challenges on appeal as simply too late under the facts to be timely." *Id.* at 989; *see also Delesdernier v. Porterie*, 666 F.2d 116, 122 (5th Cir. 1982) ("Congress did not enact § 455(a) to allow counsel to make a game of the federal judiciary's ethical obligations; we should seek to preserve the integrity of the statute by discouraging bad faith manipulation of its rules for litigious advantage.") The Bankruptcy Court, therefore, correctly applied the "timeliness" requirement in analyzing the Recusal Motion.

The Bankruptcy Court also properly exercised its discretion in determining that the Motion to Recuse was "untimely" because it was filed: (i) "more than 15 months after the case was transferred to the Bankruptcy Court," (b) "after many dozens of orders" were issued by the Bankruptcy Court, and (iii) "on the eve of a contempt hearing." (Recusal Order at 7).

As the Bankruptcy Court found, Appellants learned about the facts purportedly showing an "appearance of impropriety" fifteen (15) months before

**Appx. 00226**

filing their Motion to Recuse. *See, e.g.*, Recusal Motion ¶ 1 (discussing Appellants' awareness of Bankruptcy Court's alleged "pre-existing, negative views of" Mr. Dondero during December 2, 2019 Motion to Transfer hearing); *id.* at 3 (alleging that the "prejudice to Mr. Dondero has been apparent since the inception of this Case").[23]  Appellants learned about the Bankruptcy Court's purported "bias" in open court around this same time. *See id.* ¶ 3 (citing Bankruptcy Court's language from January 9, 2020 hearing as evidence of bias).  Appellants cite to adverse decisions rendered by the Bankruptcy Court from as early as February 2020, which they contend show its "predisposition against Mr. Dondero." *See id.* ¶¶ 5-6.

Despite learning the requisite facts giving rise to their Recusal Motion as early as December 2019, and throughout the following 15 months, Appellants did not move to recuse until March 2021.  During these 15 months, the Bankruptcy Court expended significant judicial resources overseeing the Bankruptcy Case and Appellants' litigation.  Appellants fail to offer any credible explanation for their delay in bringing the Recusal Motion at any point after the first moments of learning of the Bankruptcy Court's purported "bias" over one year ago.  This, alone, constitutes "*per se* untimeless." *See Hill v. Breazeale*, 197 Fed. App'x 331, 335 (5th Cir. 2006) (holding district court did not abuse its discretion in denying motion to recuse as untimely where party "waited, for no given reason, to raise the issue until

---

[23] *See also supra* at 5-7.

after the district court ruled against him"); *Sanford*, 157 F.3d at 989 (affirming district court's denial of recusal motion as untimely where party "knew of the facts purportedly causing an appearance of impropriety," but waited until after an adverse decision to raise the recusal issue); *Grambling*, 286 Fed. App'x at 867-88 (affirming denial of recusal motion as "*per se*" untimely where "despite having knowledge of the facts underlying its recusal argument," party "did not immediately move to have this case assigned to a judge from another division or district and instead allowed the case to linger … for nearly ten months. When the [party] finally acted, it did so only after [the judge] had dismissed its claims"); *Hill v. Schilling***,** No. 3:07–CV–2020–L, 2014 WL 1516193, at *3 (N.D. Tex. Apr. 17, 2014) (affirming judge's finding that motion to recuse was untimely where it was brought "some eleven months after [plaintiff] and his counsel first became aware of the" facts giving rise to alleged perception of bias); *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 155 (S.D.N.Y. 2012) ("Plaintiffs here had the requisite knowledge no later than January 4, 2012, but the recusal request did not come until nearly three months later," noting "I have made no efforts to hide my views, relationships or affiliations. If plaintiffs truly believed that any of these issues, individually or collectively, created a bias or the appearance of partiality, they should have promptly moved for my recusal.")

DOCS_NY:43746.7 36027/002

**Appx. 00228**

Based on their own pleading and allegations, Appellants' contention that the Bankruptcy Court's bias "did not manifest itself until late 2020 and early 2021" is without merit. (App. Brief ¶¶ 38-42). Such an assertion also contradicts Appellants' own argument that the Bankruptcy Court's "bias" against Mr. Dondero was "apparent" from this Case's inception. (*See* Recusal Motion ¶ 3). Even assuming it was not until "late 2020" that such a "manifestation" of bias presented itself, the Recusal Motion would still be untimely because Appellants waited several months to bring the Recusal Motion, during which time the Bankruptcy Court held evidentiary hearings for injunctive relief in *three* separate adversary proceedings as well as a two-day contested confirmation hearing—all of which involved some or all of the Appellants. As discussed *supra*, this is precisely the type of delay that courts routinely find "untimely." *See Hirczy v. Hamilton*, 190 Fed. App'x 357, 360 (5th Cir. 2006) (affirming district court's denial of motion to recuse as "untimely" where party "learned directly" from the judge in open court of potential bias, yet "he waited over two months until and after the adverse decision to file his motion to recuse" further noting that because motion was untimely, "a substantive review for abuse of discretion is unnecessary"); *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 334 (2d Cir. 1987) (motion untimely where party waited two months after events giving rise to charge of bias or prejudice before making its recusal motion);

DOCS_NY:43746.7 36027/002

*Da Silva*, 868 F. Supp. 2d at 155.  Appellants otherwise offer no credible legal or factual basis in support of their "manifestation" argument. [24]

The Bankruptcy Court also appropriately considered the fact that the Recusal Motion came on the "eve of the contempt hearing." (Recusal Order at 7); *see Weisshaus v. Fagan,* 456 Fed. App'x 23, 34 (2d Cir. 2012) (noting that "[a]lthough there was no dispositive ruling as to [defendant] at the time [plaintiff] brought her recusal motion, the district court aptly noted that the motion came on the heels of its direction that [plaintiff] submit to a deposition, thus strongly suggesting that the motion was a mere fall-back position in response to an adverse ruling."); *Da Silva*, 868 F. Supp. 2d at 154 (denying recusal motion where "[i]t appears that plaintiffs are improperly using the recusal motion as a 'fall-back position' to an unfavorable ruling.")

Appellants' remaining contentions regarding "timeliness" are equally frivolous.  Nevertheless, they warrant a response.  Appellants' attempt to distinguish the Bankruptcy Court's cite to *Davies* is in vain.  Appellants assert that *Davies* "does not support the Order" because there, a party moved to recuse "almost a year after an adverse ruling." (App. Brief ¶¶ 36-37 (quoting *Davies,* 68 F.3d at 1130-31)).  But that is exactly what happened here.  *See supra* at 27-29.  As alleged by Appellants,

---

[24] The only case Appellants cite in support of this contention is *Davies*—the same case they try to distinguish from the present facts, (*see* App. Brief ¶ 37), and a case which does not even support that statement.

DOCS_NY:43746.7 36027/002

**Appx. 00230**

the Recusal Motion was filed more than one year after (a) an adverse ruling was granted (*i.e.*, the Transfer Motion) in December 2019 (App. Brief ¶¶1-2); (b) the Bankruptcy Court improperly relied on its opinions of Mr. Dondero to include certain provisions in the Settlement Order on January 9, 2020 (*id.* at ¶¶3-4); and (c) the Bankruptcy Court's bias allegedly caused it reached conclusions without evidence and render an adverse ruling in connection with the February 2020 hearing on the Foley Application (*id.* ¶¶ 5-6).

Finally, Appellants' cite to the Delaware Bankruptcy Court's statements regarding the "presumption" that the Bankruptcy Court would follow the "rules of evidence" early in the Case, (App. Brief. ¶ 9), is entirely irrelevant for purposes of this Appeal, and should be disregarded by the Court.[25]  Indeed, Appellants' failure to appeal any of the orders complain of (other than the Confirmation Order) demonstrates that Appellants themselves generally find no fault in the actual conclusions reached and orders entered by the Bankruptcy Court.

In light of the expansive nature of this Case and the Bankruptcy Court's extensive knowledge of the proceedings that it has overseen throughout the last 21 months, interests of judicial economy also support the Bankruptcy Court's denial of the Recusal Motion. *See U.S. v. Olis*, 571 F. Supp. 2d 777 (5th Cir. 2008) (affirming

---

[25] Nothing in the Recusal Motion alleges the Bankruptcy Court has failed to follow the Federal Rules of Evidence.

DOCS_NY:43746.7 36027/002

denial of recusal motion as untimely where party was aware of facts stated in recusal

motion "well before he filed" the motion, noting that party "had duty to file [ ]

motion for recusal before the court's judicial resources were spent on resolution of

motions" and party "neither argues nor explains why his delay" was reasonable);

*Hill*, 495 Fed. App'x at 484 ("Particularly in light of the expansive nature of these

proceedings, considerations of judicial economy likewise countenance our

conclusion that the district court did not abuse its discretion"); *United States v. York*,

888 F.2d 1050, 1055 (5th Cir. 1989) ("The motivation behind a timeliness

requirement [for Section 455] is [] to a large extent one of judicial economy");

*Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 237 (3d Cir. 2001) ("After a

massive proceeding such as this, when the court has invested substantial judicial

resources and there is indisputably no evidence of prejudice, a motion for recusal of

a trial judge should be supported by substantial justification, not fanciful illusion");

*Weisshaus*, 456 Fed. App'x at 34 (affirming district court's denial of recusal motion

as untimely where party "waited almost nineteen months" to file the recusal motion,

at which point the district court had already expended substantial judicial resources

overseeing and adjudicating" the parties' claims).

Accordingly, the Bankruptcy Court was well within its discretion in finding

Appellants' Recusal Motion untimely.  For this reason alone, the Recusal Motion

was properly denied. *See Hill*, 495 Fed. App'x at 482 (affirming denial of recusal

**Appx. 00232**

motion solely because it was "untimely," noting "[b]ecause we affirm on the basis of untimeliness, we do not reach the merits of the recusal issue"); *Hirczy*, 190 Fed. App'x at 360 (noting that because recusal motion was untimely, "a substantive review for abuse of discretion is unnecessary."); *Andrade*, 338 F.3d at 459 ("[U]ntimely motions to recuse are ordinarily rejected.")

## B.  The Bankruptcy Court Properly Exercised Its Discretion in Denying the Recusal Motion on the Merits

Even if the Recusal Motion had been timely, the Bankruptcy Court did not abuse its discretion in denying Appellants' Motion to Recuse on the merits.  A motion for recusal is committed to the sound discretion of the district court. *Hill*, 197 Fed. Appx'x at 335.  "The judge abuses [their] discretion in denying recusal where a reasonable [person], cognizant of the relevant circumstances surrounding [the] judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality." *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999).

Pursuant to Section 455:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned.

(b) [They] shall also disqualify [themselves] in the following circumstances:

(1) Where [they] has a personal bias or prejudice concerning a party, a personal knowledge of disputed evidentiary facts concerning the proceeding.

28 U.S.C. § 455(a) and (b)(1).

**Appx. 00233**

*"*The standard for bias is not 'subjective,' as it once was, but, rather, 'objective.'" *Andrade*, 338 F.3d at 454-55 (citing *Vieux Carre Prop. Owners, Residents & Assocs. v. Brown*, 948 F.2d 1436, 1448 (5th Cir. 1991)).  In other words, it "is with reference to the 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person' that the objective standard is currently established." *Id.* (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)).  "Another maxim is that review should entail a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents." *Id.* at 455.  Finally, the common-law doctrine called the "extrajudicial source rule" under Section 455 "divides events occurring or opinions expressed in the course of judicial proceedings from those that take place outside of the litigation context and holds that the former rarely require recusal." *Id.*  Ultimately, to succeed in an appeal of a denial of a recusal motion, the appellant must: (1) demonstrate that the alleged comment, action, or circumstance was of "extrajudicial" origin, (2) place the offending event into the context of the entire trial, and (3) do so by an "objective" observer's standard.  They must also demonstrate that the "district court's refusal to recuse was not merely erroneous, but, rather, an abuse of discretion." *Id.* at 456-62.

As the Bankruptcy Court properly determined, none of the circumstances requiring disqualification under Section 455 are present here.

DOCS_NY:43746.7 36027/002

1.     <u>**There Is No Extrajudicial Bias Present Here**</u>

The Bankruptcy Court correctly found that any knowledge learned from the Acis Bankruptcy is insufficient to constitute "extrajudicial" knowledge warranting recusal. (*See* Recusal Order at 9).  The core of Appellants' argument on appeal is that the Bankruptcy Court's "extrajudicial" bias toward Appellants stemmed from opinions formed during the Acis Bankruptcy. (*See* App. Brief. ¶¶ 3-4).  Appellants' argument is frivolous.

As articulated by the most prominent Supreme Court case on recusal, "[o]pinions formed by the judge on the basis of facts of prior proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Conkling v. Turner*, 138 F.3d 577, 592 (5th Cir. 1998) ("As a general rule, for purposes of recusal, a judge's 'personal' knowledge of evidentiary facts means 'extrajudicial,' so facts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification") (internal quotations omitted).  Rather, opinions or beliefs formed from events on the record or from prior proceedings, or "intrajudicial" opinions, are subject to a "deferential" review, and are the "type of opinions/expressions that *Liteky* holds nearly exempt from causing recusal." *Andrade*, 338 F.3d at 460-62.

DOCS_NY:43746.7 36027/002

Any opinion allegedly formed by the Bankruptcy Court from the Acis Bankruptcy, a prior proceeding, is thus not contemplated by the "extrajudicial" source rule and is precisely the type of opinion that is exempt from warranting recusal. *See Litkey*, 510 U.S. at 555; *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 81 (5th Cir. 2011) (affirming denial of motion for recusal where "the only facts the [judge] learned about [party's] conduct were learned from judicial proceedings in the instant case and in previous cases"); *Conkling*, 138 F.3d at 592 ("As a general rule, for purposes of recusal, a judge's 'personal' knowledge of evidentiary facts means 'extrajudicial,' so facts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification") (internal quotations omitted).[26]

For these same reasons, Appellants' reliance on the Bankruptcy Court's rulings as evidence of "antagonism" is equally deficient. (*See, e.g.*, App. Brief ¶¶ 55-56). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion … and can only in the rarest circumstances evidence the degree of favoritism or antagonism required … when no extrajudicial source is involved." *Liteky*, 510 U.S. at 555. Here, Appellants rely on various rulings issued by the

---

[26] Appellants rely on only one allegedly "extrajudicial" source relating to the Bankruptcy Court's inquiries into COVID-related "PPP loans." (App. Brief. ¶ 24). However, as noted *supra*, the Bankruptcy Court took no action against Mr. Dondero or any of the Appellants and did not even ask them to respond.

DOCS_NY:43746.7 36027/002

**Appx. 00236**

Bankruptcy Court to demonstrate "bias." *See* App. Brief. ¶¶ 7-11 (citing to Bankruptcy Court's grant in part and denial in part on Foley Application; *id.* ¶¶ 12-17 (citing to Bankruptcy Court's denial of Appellants' Restriction Motion), *id.* ¶¶ 27-28 (citing to Bankruptcy Court's grant of Debtor's TRO Motion against Advisors and Funds); *id.* ¶ 57 (citing to Bankruptcy Court's holding that Debtor's motion for Mandatory Injunction against Advisors and Funds was "moot"); *id.* ¶ 57 (citing to Bankruptcy Court's denial of Dugaboy's motion to compel the Debtor to file "unduly burdensome" financial reports); *id.* ¶ 58 (citing June 17 Order requiring Appellants to disclose inter alia, whether they are "creditors" of the Debtor and Mr. Dondero's ownership interest in entities "with ties to Mr. Dondero").  These rulings, none of which involve an extrajudicial source, simply do not rise to the rare circumstance of evidencing the degree of antagonism warranted for recusal.  *See Liteky*, 510 U.S. at 555 ("Almost invariably, judicial rulings are proper grounds for appeal, not for recusal"); *Andrade*, 338 F.3d at 456 (denying recusal based on judicial rulings where events cited "are embodied in judicial actions that Appellants could have, but did not, appeal").  Appellants fail to even address the established law set forth under *Liteky*, which plainly forecloses their remedy of recusal, and instead merely cite to *Liteky* in a few footnotes while twisting its holdings. (*See* App. Brief ¶¶ 54-55 fn. 114, 115, 117).  Simply put, Appellants offer no credible legal or factual basis for recusal. *See Henderson v. Dep't of Pub. Safety and Corrs.*, 901 F.2d 1288,

**Appx. 00237**

1296 (5th Cir. 1990) ("[E]ven the most superficial research would have put [the party] on notice that the factual circumstances he alleged were not grounds for recusal" under *Liteky*, noting "there is absolutely no case authority cited by [party] to the contrary.")

Appellants' "due process" argument that "even a lack of extrajudicial knowledge is not fatal because Appellants are entitled to make their case in an impartial forum," App Brief. ¶¶50, 54, is frivolous and should be summarily rejected by the Court.  Appellants fail to support any notion of a "due process" violation.  Nor could they.  The record of this Case shows the great extent to which the Bankruptcy Court has respected the due process rights of Appellants, notwithstanding their limited, if any, skin in the game.  The cases cited by Appellants in support of their contention are entirely inapplicable.  *Miller v. Sam Houston State Univ.,* 986 F.3d 880, 893 (5th Cir. 2021) does not address the standard for "recusal" under Section 455 or the "extrajudicial" source rule.  Rather, *Miller* deals with whether a case should be reassigned to a different district court judge on remand after the original judge did not give plaintiff the opportunity for discovery and *sua sponte* dismissed a plaintiff's claim of sex discrimination and retaliation under the Fair Labor Standers Act. *Marshall v. Jerrico*, 446 U.S. 238 (1980) also does not address recusal motions, but deals with whether the "reimbursement provision of the [Fair Labor Standards] Act violate the Due Process Clause." *Id.* at 243.  Appellants' remaining case cites on

48

**Appx. 00238**

this point are equally irrelevant.[27]   The types of exceptional circumstances warranting recusal in those cases are not present here.   Appellants otherwise offer no legal basis in support of their argument.   Accordingly, the Bankruptcy Court properly exercised its discretion in finding that there was no "extrajudicial" source warranting recusal.

### 2. The Bankruptcy Court Does Not Harbor Deep-Seated Antagonism Toward Appellants

The Bankruptcy Court also properly exercised its discretion in finding that it did not harbor any "deep-seated antagonism" toward Appellants such that it would raise "doubt in the mind of a reasonable observer" as to the Bankruptcy Court's impartiality. (Recusal Order at 10).   Appellants contend that the Bankruptcy Court's "repeated negative statements about Mr. Dondero" and "reference to proceedings in the Acis Bankruptcy to justify findings made in the Highland" case justify recusal. (App. Brief ¶¶ 51-58).   Appellants' arguments are without merit.

---

[27] For example, the Court in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), reversed a denial of a recusal motion as a "matter of due process" where, following entry of a $50 million judgment against a corporation in favor of the CEO, that CEO contributed $3 million to help elect the same judge who the CEO knew would preside over corporation's appeal.   The Court in *Johnson v. Mississippi*, 403 U.S. 212 (1971), found recusal of a judge was necessary where that judge "was a defendant in one of petitioner's civil rights suits and a losing party at that."   *Id.* at 215.   The Court in *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 167 (5th Cir. 1997), denied a petition for writ of mandamus challenging denial of recusal premised on racist remarks, where, although a "reasonable person might indeed harbor doubts about the trial judge's impartiality" in a "racially-charged case such as the instant one," the judge had already presided over the case for so long such that recusal at that stage "would be unprecedented."

DOCS_NY:43746.7 36027/002

**Appx. 00239**

"Judicial remarks that are critical or disapproving of, or even hostile to, counsel for the parties or their cases, ordinarily do not support a bias or partiality challenge."  *Liteky*, 510 U.S. at 555.   In support of their argument that the Bankruptcy Court harbored "bias" toward Appellants, Appellants refer to a number of the Bankruptcy Court's remarks regarding, *inter alia*: (i) the "importance" of the language in Settlement Order and Mr. Dondero abiding by its terms, (App. Brief ¶¶ 3-4), (ii) its "concern" regarding Mr. Dondero's appeal of Acis, (*id.* ¶ 6), (iii) the Restriction Motion as "frivolous," (*id.* ¶ 11); and (iv) its reminder to Mr. Dondero that the Settlement Order prohibits him from terminating the Debtor's agreements after evidence established that he was likely behind the K&L Gates Letters, (*id.* ¶ 17).

In relying on such statements, Appellants again disregard the law on recusal. *See Andrade*, 338 F.3d at 459 (affirming denial of recusal motion premised on judge's negative comments made on the record – including describing a witness as "crazy, murdering son-of-a-bitch" and referring to parties' attempt to introduce certain evidence as "bullcrap," – noting that appellants "brief omits citing the most prominent Supreme Court statement on point (citing *Liteky*, 510, U.S. at 555)).   As the Bankruptcy Court properly found, Appellants' cited remarks are, at best, "clashes between a court and counsel," and such remarks are "simply insufficient" for recusal. (Recusal Order at 10). *See United States v. Landerman*, 109 F.3d 1053, 1066 (5th

**Appx. 00240**

Cir. 1997) (affirming denial of motion to recuse where district judge allowed "the Government more leeway during its questioning and did interrupt defense counsel's questioning more often than the Government's questioning"); *Garcia v. Woman's Hosp. of Texas*, 143 F.3d 227, 230 (5th Cir. 1998) (affirming denial of motion to recuse where district judge had made unflattering comments about plaintiff's ability to prove her case).

Based on the entirety of the proceedings before the Bankruptcy Court, in which all events raised by Appellants relate to either the Bankruptcy Court's knowledge of prior proceedings or the Bankruptcy Court's remarks during these proceedings, the exceptional remedy of recusal is not warranted. *See United States v. Williams*, 127 Fed. App'x 736, 737-38 (5th Cir. 2005) ("As our review of the entire context of the judicial proceedings in which the events challenged in this case arose reveals no disqualifying judicial bias, we conclude that there was no abuse of discretion in the district court's denial of [the] recusal motion"); *Henderson*, 901 F.2d at 1296 (affirming court's denial of recusal motion, where "none of the circumstances requiring disqualification under § 455 are present here" and "the trial judge was well within his discretion in finding that the motion for recusal was not well founded, either in fact or in law.")  The Bankruptcy Court, therefore, properly exercised its discretion in finding that Appellants' assertions do not "rise to the

**Appx. 00241**

threshold standard of raising doubt in the mind of a reasonable observer' as to the judge's impartiality." (Recusal Order at 10).

Accordingly, the Bankruptcy Court was well within its discretion in denying the Recusal Motion on the merits.

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtor respectfully requests that this Court affirm the Recusal Order.

DOCS_NY:43746.7 36027/002

**Appx. 00242**

Dated:  July 28, 2021                      **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Judith Elkin (TX Bar No. 06522200)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        rfeinstein@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        jelkin@pszjlaw.com
        hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

DOCS_NY:43746.7 36027/002

**Appx. 00243**

## CERTIFICATE OF COMPLIANCE WITH RULE 8015

This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, according to Microsoft Word, it contains 12,803 words, excluding the portions of the document exempted by Fed. R. Bankr. P. 8015(g).


By: */s/ Zachery Z. Annable*
Zachery Z. Annable

DOCS_NY:43746.7 36027/002

**Appx. 00244**