# EXHIBIT 14

**Appx. 02176**

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitration Tribunal

REDEEMER COMMITTEE OF THE
HIGHLAND CRUSADER FUND,

Claimant,

v.                                         Case No. 01-16-0002-6927

HIGHLAND CAPITAL MANAGEMENT, L.P.,

Respondent.

## FINAL AWARD

WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with
Section 9.03 of the Joint Plan of Distribution, and the Scheme of Arrangement, both entered into
between the above-named parties and adopted in July 2011, and having been duly sworn, and
having duly heard the proofs and allegations of the parties, do hereby, AWARD, as follows:

A. On March 6, 2019, we issued a Partial Final Award, finding Respondent Highland
Capital Management, L.P. ("Respondent") liable in a number of respects and awarding
damages, interest, attorneys' fees, and costs to Claimant Redeemer Committee of the
Highland Crusader Fund ("Claimant"), as described, in relevant part, below. We "le[ft]
the hearing open until all issues set forth ... have been agreed upon by the Parties or
decided by the Tribunal."

B. In response to an email from Claimant, dated March 7, 2019, seeking clarification on an
apparent omission from the Partial Final Award, we issued a Disposition of Application
for Modification of Award dated March 14, 2019 ("Modification of Award").[1]

C. This Final Award incorporates the Partial Final Award and the Modification of Award
(together, the "Partial Award"). We re-adopt all prior findings and conclusions of the
Partial Award, except as specifically modified hereinafter.

D. We have before us the following:

---

[1] The Modification of Award referred to Rule R-46 of the AAA Commercial Arbitration Rules, instead of
Rule R-50, as the basis for the modification of a clerical error, relying upon the predecessor version of
Rule R-50. The substantive text of old Rule R-46 and present Rule R-50 are the same.

1

Appx. 02177

a. Respondent's Memorandum, dated March 17, 2019, requesting that (1) the Panel
withdraw its Modification of Award entered on March 16, 2019; (2) cease any
further attempts to award additional damages, attorneys' fees, or costs that are not
expressly set forth in the Partial Award; and (3) reconfirm that the hearing and all
evidence is closed and the Panel is not empowered to take any further action
beyond the issuance of its Partial Award ("Respondent's March 17
Memorandum").

b. Claimant's Submission Regarding Fees and Costs, dated March 21, 2019, made
pursuant to Rules R-28, R-47, R-53, R-54, and R-55, AAA Commercial
Arbitration Rules, seeking an award of $11,865,181.28 in attorneys' fees and
costs, including Claimant's attorneys' fees, AAA administrative fees, arbitration
expenses, fees incurred by A&M, expert fees, and Panel compensation paid by the
Respondent Highland on behalf of the Committee in this arbitration ("Claimant's
Fee Submission").

c. Claimant's Application, dated March 25, 2019, made pursuant to Rule 50, AAA
Commercial Arbitration Rules, to modify the Partial Award, issued by this Panel
on March 6, 2019 (Claimant's March 25 Application").

d. Claimant's and Respondent's Joint Submission on Damages dated April 5, 2019,
in which the Parties agreed on the mathematical calculation of the amount of
damages and interest contained in the Partial Award and Modification of Award,
subject to Highland's objections to the inclusion of any damages awards that
were not specified in the Partial Award and subject to objections on two specific
issues: (1) whether the Eames residual LP interests would be extinguished; and
(2) whether prejudgment interest awarded by the Panel will continue to run after
March 6, 2019 until the earlier of the date the amount awarded is paid to the
Committee for the benefit of the Fund, or the date on which a Final Judgment is
issued on the Award ("Joint Submission").

e. Respondent's Memorandum dated April 5, 2019 opposing the motion to modify
the Partial Award; and opposing any award for damages, attorneys' fees, or costs
("Respondent's April 5 Memorandum").

f. Claimant's Memorandum dated April 5, 2019 arguing that (1) the Panel should
award further damages in connection with the Barclays claim measured by the
Fund's loss of the residual value of the Eames LP interests, either by
extinguishing the former Barclays LP interests, or alternatively, by awarding an
appropriate amount of damages to compensate the Fund for loss of the value of
those interests, which the Committee puts at $11,589,474; and (2) the Panel
should award prejudgment interest through the date the Award is paid or final
judgment is entered ("Claimant's April 5 Memorandum").

g. On April 10, 2019, Respondent sought leave, which we granted on consent, to file
an additional Memorandum on two issues raised by Claimant in its April 5

Memorandum, namely, that Claimant adds a new and improper request that interest after March 6, 2019 be compound, and not simple, interest by applying an additional 9% statutory interest to both (a) the damages awarded and (b) the interest accrued through March 6, 2019; and that Claimant has provided a new and improper damages calculation relating to the extinguishment of the Eames LP interests.

h.  Having reopened the record on March 6, 2019, for additional submissions, as described above, we deem the record closed as of April 10, 2019.

E.  Issues

a.  Fees and costs

1.  In the Partial Award, we evaluated the competing claims made by Claimant and Respondent regarding an award of fees, which both sides had sought in their pleadings. As we noted in the Partial Award, ¶VI.A, 52, AAA Commercial Arbitration Rule R-47 (d)(ii) authorizes the Arbitrator to award attorneys' fees if, as here, "all parties have requested such an award . . . " "[M]utual demands for counsel fees in an arbitration proceeding constitute, in effect, an agreement to submit the issue to arbitration, with the resultant award being valid and enforceable." *R.F. Lafferty & Co., Inc. v. Winter*, 161 A.D.3d 535, 536 (1st Dep't 2018) (internal quotation marks and citations omitted); *In re U.S. Offshore, Inc. and Seabulk Offshore Ltd.*, 753 F. Supp. 86, 92 (S.D.N.Y. 1990) ("If both parties sought attorney's fees, . . . then both parties agreed *pro tanto* to submit that issue to arbitration, and the arbitrators had jurisdiction to consider that issue and to award them.")."

2.  During closing oral arguments, Respondent did not mention its own request for an award of fees, but "*acknowledge[d] the Tribunal's discretion* to order an award of attorneys' fees…" Indeed, Respondent made oral and written closing arguments that conceded that it was "*not disputing the discretion that the Panel has* [to award fees]." Tr. 13 444:2-3 (emphasis added). In its closing slides, Respondent also urged that "The Panel *should exercise its discretion in applying the American Rule*." Respondent Closing Slides at 261 (emphasis added).

3.  Respondent also argued that denying the Claimant's request for attorneys' fees would be consistent with Section 9.02 of the Plan which provides that "each of the Crusader Funds retains obligations it has to pay . . . legal fees." Second, Respondent urged that the only basis upon which Claimant is seeking an award is that Respondent allegedly engaged in bad faith and vexatious conduct.

3

4. Respondent now chooses to oppose the grant of fees on grounds
distinctly different from those set forth above. It belatedly argues
an alleged lack of proof and the Panel's being *functus officio* to
award fees.

  1. Respondent argues that the Panel "found that the evidence
in the record was insufficient to determine many of the
Committee's claims for damages, as well as its claims for
costs and fees." Resp. April 5 Mem. 14.

  2. But that is incorrect; we did not find any insufficiency;
instead, with no objection, we adopted a well-recognized
method of dealing with attorneys' fees and costs by
deciding entitlement before amount. See *Franco v. Dweck*,
87 N.Y.S.3d 5 (2018) ("Contrary to respondents'
contention, the final award did not run afoul of the doctrine
of *functus officio*, which precludes an arbitrator from
altering in substance a prior award (see *Matter of Wolff &
Munier [Diesel Constr. Co.]*, 41 A.D.2d 618, 340 N.Y.S.2d
455 [1st Dept. 1973] ). As the partial final award *expressly
reserved* the issue of attorneys' fees, it cannot bar a
*subsequent* award of those fees (see *Shimon v. Silberman*,
26 Misc.3d 910, 914–915, 891 N.Y.S.2d 891 [Sup. Ct.,
Kings County 2009] )."

5. Accordingly, we reject Respondent's new positions. From at least
the time the pre-hearing briefs, witness lists, and list of exhibits
were mutually filed, it was clear that whichever side that was going
to seek attorneys' fees if it prevailed was reserving on the specific
rates and amounts of legal fees, as well as costs and expenses,
many of which had not yet been incurred. To do otherwise would
be a waste of resources. Not once did Respondent ever raise the
question of proof regarding attorneys' fees and costs; by its silence
and conduct, Respondent consented to the process regarding proof
of attorneys' fees that the Panel was following, see CCA Guide to
Best Practices in Commercial Arbitration (3d edition), 246.

6. Second, we explicitly denominated the award of March 6 as a
"Partial Final Award," making clear to the Parties that the arbitral
proceeding was still ongoing. We also explicitly left the hearing
open so that the Parties could meet and confer or make
submissions, including providing additional evidence, "until *all
issues* set forth ... have been agreed upon by the Parties or decided
by the Tribunal." Under these circumstances, the doctrine of
*functus officio* does not apply. *Kennecott Utah Copper Corp. V.
Becker, 186 F.3d 1261, 1270-71 & n.4* (10th Cir. 1999) (*Functus*

4

*officio* provides that, "once an arbitrator has issued a *final* award and thus discharged his or her office, that arbitrator lacks any continuing power to revise the award or issue a new one.")(emphasis added).

i.  Accordingly, we turn to an examination of the application for attorneys' fees and costs, sought by Claimant:

    a.  Claimant seeks the following in fees and costs:

        i.  Jenner & Block Fees - $9,278,248.99

            1.  In support of its fee application, Claimant has provided detailed time records, billing records, and a declaration of Andrew Vail, a partner of Jenner & Block, that establishes that records were maintained on a contemporaneous basis, that time billed on duplicative, inefficient, or extraneous to the arbitral proceeding was excluded from the application, and that hourly rates, and a fixed-fee discount, where applicable, were discounted by 15%. Vail Declaration ¶¶13-18. The hourly rates are shown to be comparable to rates charged by other similar firms and consistent with prevailing market rates for attorneys of similar high levels of expertise and experience. We note that Respondent does not object to the amount sought, except on the bases previously discussed. We find the request for legal fees to be reasonable, especially given the complex factual and legal setting, and grant Claimant's application.

        ii.  FTI Expert Fees - $1,274,853.26; and A&M Arbitration Fees - $655,160.00

            1.  In support of the FTI fees, Claimant submitted a declaration, with supporting exhibits, of Mr. Vail, who affirmed that the fees reflected "services that were necessary for the Committee to prosecute its claims against [Respondent] and to defend against [Respondent's] counterclaims, and … the amounts charged for such services were reasonable given the necessity of those services." Vail Declaration ¶26.

5

2. In support of the A&M Arbitration Fees, Claimant has provided the declaration of Steven Varner, a Managing Director of A&M, who affirms that A&M maintained billing records on a contemporaneous basis for its services throughout the course of this arbitration, but did not keep detailed descriptions of its billed time for specific matters within that engagement. He further affirmed that he and another managing director compiled a "conservative estimate of the time that A&M personnel spent on matters that were specifically required in connection with HCMLP's failure to timely provide A&M with books and records relating to the Fund." That work totaled approximately $655,160.00, after discounts were applied to their normal billing rates. Varner Declaration ¶¶6, 7, and 10.

3. Claimant is not seeking recovery for over $140,000 in attorneys' fees and costs for A&M's counsel to pursue information from Cornerstone pursuant to Del. Code Ann. tit. 8 § 220. Varner Declaration ¶8.

4. Respondent principally opposes the fees of FTI and A&M on the grounds that "while the AAA Rules permit the award of certain expenses (e.g. administrative costs and Panel compensation), they are much more restrictive when it comes to witness costs for the parties. In fact, Rule 54 expressly divides expenses into two categories: (i) witness expenses—which are to be borne by the party presenting the witness; and (ii) '[a]ll other expenses'—which may be apportioned by the arbitrator(s)."

5. While acknowledging some dispute among the courts as to whether Rule R-54 permits a prevailing party to recover its expert witness fees, Claimant urges that the weight of authority provides that both consulting and testifying witness fees are recoverable under the AAA's rules, citing *Dealer Comp*.

6

**Appx. 02182**

*Servs., Inc. v. Hammonasset Ford Lincoln-Mercury, Inc.*, 2008 WL 5378065, at \*2, \*4 (S.D. Tex. Dec. 22, 2008) (confirming final arbitration award that included expert witness fees); *In re Pos'tive Produc, Inc. v Thermal C/M Services, Inc.*, 2011 WL 13220365, at \*4 (N.Y. Sup. Ct. Nov. 18, 2011) (confirming award that included "expert fees and costs"); and *Cardno Int'l Pty, Ltd. v. Merino*, 2017 WL 6034172 (S.D. Fla. Oct. 30, 2017).

6. Rule 47(a) gives the Tribunal the power to "grant any remedy or relief that the arbitrator deems *just and equitable* and within the scope of the agreement of the parties…", while Rule 47(c) provides that "In the final award, the arbitrator *shall* assess the fees, expenses, and compensation provided in Sections R-53, R-54, and R-55. The arbitrator *may apportion* such fees, expenses, and compensation among the parties in such amounts *as the arbitrator determines is appropriate*." (Emphasis added.) Parsing these sections in conjunction with R-54 leads us to conclude that we have the power to award the expenses of the arbitration, including expert fees, as we deem just, equitable, and appropriate. *White Springs Agric. Chemicals, Inc. v. Glawson Investments Corp.*, No. 3:07-CV-752-J-25JRK, 2010 WL 11507082, at \*4 (M.D. Fla. Sept. 13, 2010) (confirming award where tribunal awarded prevailing party its expert fees), *aff'd*, 660 F.3d 1277 (11th Cir. 2011).

7. Under the complex circumstances presented here, we find that the experts were essential to the prosecution of the Claimant's case and that their services, and consequent fees, were a necessary obligation the Claimant was bound to its members to undertake in its pursuit of the claims against Respondent.

7

8. We note, specifically with respect to the A&M fees, that a large portion of the fees appear to relate to "time spent organizing the tens of thousands of individual page PDF files that HCMLP provided as books and records instead of complete documents." Varner Declaration ¶7.

9. From our observations at the hearing and our review of the reported rates and fees of FTI and A&M, we conclude that such fees were fair and reasonable and we find that it would be "just and equitable" and "appropriate" relief to award Claimant all of the expert fees it seeks, and we do so.

   iii. Respondent does not object to the following categories of fees sought by Claimant:

1. AAA Administrative Costs - $64,750.00;
2. Court Reporter Hr'g Costs - $114,697.77;
3. Court Reporter Dep. Costs - $28,890.04; and
4. AAA Panel Compensation - $448,581.22 (to date).

b. Accordingly, in our discretion, we award Claimant the total sought in fees, costs, and expenses, as detailed and updated in section F. below.

b. Claimant's Motion for Modification of the Partial Final Award
   i. On March 25, 2019, Claimant moved, pursuant to AAA Rule 50, to modify the Partial Final Award in several respects.

1. First, with respect to the Partial Final Award regarding the finding of liability of Respondent with respect to the Barclays LP interests, Claimant moved to correct a clerical error that resulted in the omission of a Barclays damages paragraph from the Partial Final Award by modifying that Award to include the paragraph set forth in the Panel's March 14, 2019 Modification of Award.

2. Second, also pursuant to Rule 50, Claimant moved that the Panel modify the award to address other clerical, typographical, and computational errors in the Partial Final Award.

3. AAA Rule 50 provides in relevant part, as follows: "R-50. Modification of Award. Within 20 calendar days after the

8

transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 calendar days to respond to the request. The arbitrator shall dispose of the request within 20 calendar days after transmittal by the AAA to the arbitrator of the request and any response thereto."

4. With respect to the Barclays issues, Respondent contends both that Rule 50 does not apply and that the doctrine of *functus officio* divests the Panel of the power to modify the Partial Final Award, as the Panel would be adding an "additional award" that "represents an entirely new award of $34 million in damages not included in the [Partial Final Award] ... constitut[ing] a material revision of the award."(Respondent's April 5 Memorandum at 5).

5. First, we are not adding an "additional award," as it is clear from the structure of the Partial Final Award that a paragraph was missing from the damages portion; all other findings of liability were accompanied by a section delineating the applicable damages except for the finding of a breach of the Plan and Scheme by reason of the transfer of LP interests to Eames. In other words, we found liability in two respects but omitted a paragraph regarding the remedy for Respondent's breach of the Plan and Scheme that we had found with respect to the transfer, without the required Committee approval, of Barclays' fund interests to itself through entities it controlled as part of the settlement. That omission is a classic example of a clerical error.

6. Second, although the effect of the Modification was to add additional damages to the award against the Respondent, the Panel did not "materially revise" the Partial Final Award since liability had already been found.

7. In addition, as previously discussed, the doctrine of *functus officio* "provides that, *while an arbitrator may correct clerical, typographical, or computational errors in a final award, he has no power to revisit the merits of the award after it has issued...*" Int'l Broth. Of Elec. Workers, Local Union 824 v. Verizon Florida, LLC, 803 F.3d 1241, 1250 (11th Cir. 2015). However, we did not issue a final award; it was explicitly labeled a Partial Final Award and was explicitly subject to being supplemented by subsequent presentations of damages analyses by both Parties.

9

Appx. 02185

8. Finally, there is ample case law for the proposition that the Panel is not divested of power, even when issuing a final award, from correcting clerical, typographical, or computational errors. See *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472-73 (5th Cir. 2012); *E. Seaboard Const. Co., Inc. v. Gray Const., Inc.*, 553 F.3d 1, 5-6 (1st Cir. 2008).

9. Respondent also argues that the Panel is barred from correcting the Partial Final Award by AAA Rule 45, which provides that "The award shall be made ... no later than 30 calendar days from the date of closing the hearing..." Respondent urges that "the parties agreed that the final award would be made on or before March 7, 2019. Accordingly, any award made after that date is untimely and beyond the scope of the Panel's authority." (Resp. April 5 Mem. at 7). But, once again, this argument ignores the explicit nature of the March 6 Partial Final Award, which "le[ft] the hearing open until all issues set forth above have been agreed upon by the Parties or decided by the Tribunal."

10. Respondent also argues that we are "reopening" the record in violation of AAA Rule 40. That rule provides, in relevant part, as follows: "The hearing may be reopened on the arbitrator's initiative, or by the direction of the arbitrator upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed to by the parties in the arbitration agreement, the matter may not be reopened unless the parties agree to an extension of time. When no specific date is fixed by agreement of the parties, the arbitrator shall have 30 calendar days from the closing of the reopened hearing within which to make an award..."

11. We acknowledge that a communication from the AAA, dated December 12, 2018, stated that the "no additional evidence is to be submitted and that the hearings are declared closed as of December 12, 2018," but this statement was subsequently withdrawn by the previously-quoted language of the Partial Final Award where we explicitly left the record open "until all issues set forth ... have been agreed upon by the Parties or decided by the Tribunal."

12. That language is equivalent to the language that "we will reopen the hearing." *Int'l Bhd. of Teamsters Local 959 v. Horizon Lines of Alaska, LLC*, 22 F. Supp. 3d 1005, 1007–08 (D. Alaska 2014) ("Where an arbitrator specifically retains jurisdiction to resolve disputes regarding damages, that indicates that the arbitrator did not intend the award to be Final. Put simply, an arbitration award that postpones the determination of a remedy should not constitute

**Appx. 02186**

a final and binding award"); *Golden v. Lim*, 2016 WL 520302, at
*3, *9 (E.D. Mich. Feb. 10, 2016)(holding that the arbitrator had
the authority under the AAA Rules to reopen the hearing to accept
further submissions on attorneys' fees).

13. Second, even if the relief sought required a reopening of the
record, Rule 40 authorizes the Panel to do so "upon the application
of a party," so long as doing so did not violate "the specific time
agreed to by the parties in the arbitration agreement" for the
making of the award. No such time period is set forth in the
arbitration agreement. Finally, we interpret Rule 40 to be speaking
to the instance of reopening the hearing after the final award is
made, which is, again, not the situation we are in.

ii. We grant Claimant's application under AAA Rule 50[2] and formally
correct the clerical error by re-adopting the additional paragraph,
previously included in the Panel's March 16 Modification of Award, as
follows:

1. "Insert the following paragraph at page 54, immediately after
VII.B.2.f: "3. The transfer of Barclays Fund interests: By
transferring, without the required Committee approval, Barclays'
fund interests to itself through entities it controlled as part of the
settlement, Highland breached the Plan and Scheme. We award the
Committee damages measured by the benefits Highland received
in excess of the amount it would have been entitled to receive from
the Redeemer Trust Account because Barclays claim was settled
for less than its value. In Table 11, Version 2, Claimant's damages
expert, Basil Imburgia, calculated that such an amount totaled
$34,661,749. RC-522. As with other amounts awarded, the Parties
are to confer to determine the actual amount of damages including
the 9% interest to date."

iii. Claimant also moves under Rule 50 to correct four other clerical errors, set
forth below, as to which Respondent does not object. The motion is
granted; the clerical errors are set forth below and corrected as noted:

1. The Partial Final Award reference to the amount of Deferred Fees
improperly taken from the Fund by Highland as "$33,313,000"
(Partial Final Award at 14, 54) is corrected to read "$32,313,000."

---

[2] We acknowledge Respondent's interesting linguistic analysis of the differences between ICDR Article
33 and AAA Rule 50, see Respondent April 5 Memorandum at 5-6, but we deny the underlying premise
that what we are being asked to do is to make an "additional award as to claims, counterclaims, or setoffs
presented but omitted from the award." We had found liability as to two claims involving the Barclays LP
interests but omitted the damages component of one of the two liability findings. That does not constitute
an award as to a claim argued by Claimant but omitted from the partial final award.

2. The Partial Final Award reference to the amount of improper Distribution Fees calculated by Mr. Imburgia as $14,452,275 (Partial Final Award at 24, 54) is corrected to read "$14,457,275."

3. The Partial Final Award reference to the amount of "$23.5/9" and "$23.5 million" (Partial Final Award at 36, 40) is corrected to read "$23,938,568."

4. The Partial Final Award reference to the incentive period as ending on "December 30, 2016" (Partial Final Award at 40, 41, 42, 55) is corrected to read "September 30, 2016."

iv. Eames

1. In the March 6 Partial Final Award, as modified herein, we found Respondent liable for having transferred the Barclays LP interests to an entity which it wholly controlled, Eames [LLC].[3] We awarded damages "measured by the benefits Highland received in excess of the amount it would have been entitled to receive from the Redeemer Trust Account because Barclays claim was settled for less than its value." We estimated — but did not find — that amount by referring to a damages calculation by Claimant's damages expert, Basil Imburgia, who "calculated that such an amount totaled $34,661,749. RC-522." "As with other amounts awarded," we directed "the Parties ... to confer to determine the actual amount of damages including the 9% interest to date."

2. The Parties have conferred and disagree as to the appropriate amount of damages for Respondent's breach of the Plan and Scheme. Claimant asserts that the appropriate amount of damages is $29,609,015, which is lower than the amount estimated by its expert and cited in the Partial Final Award, because "the value of the Barclays interests which [Respondent] now controls through Eames is expressly excluded, as it would be extinguished and that value would be spread amongst the remaining Fund investors." Claimant April 5 Memorandum, 5.

3. Thus, Claimant urges that "the Panel should either (1) award $29,609,015 and order the extinguishment of the Barclays LP interests owned and controlled by Highland, or (2) award $29,609,015 plus the current value of those LP interests, which its

---

[3] We found, and it is not disputed, that Highland controls Eames through an entity, Hockney, Ltd., that Highland wholly owns, and which, along with Eames, was created solely for the purpose of holding the Barclays LP interests for Highland's financial benefit. JX24; Tr. Day 8 83:21-86:13; Tr. Day 9 144:21-25, 220:18-25.)

Appx. 02188

damages expert estimates to be $11,589,474. Claimant April 5
Mem. at 10; Imburgia April 5 Declaration, ¶15.

4. Respondent urges that the "March 16 Modification contains
specific language awarding the Committee a specific amount of
monetary damages." However, as discussed above, that is not
what the Panel did. We directed the Parties to confer on the exact
amount to be awarded and to come to the Panel if they could not
agree.

5. Respondent further argues that nowhere in the March 6 Partial
Final Award or the March 16 Modification did the Panel award
Claimant equitable relief concerning the Barclays Claim, and that
had the Panel wanted to do so, it knew how to do so.

6. Respondent goes on to argue that Eames is not a party to this
arbitration, and, therefore, the Panel lacks the authority to issue an
award determining Eames' legal rights and obligations." Even if
the Panel determines that the remaining equity interest should have
been extinguished at the time of the 2012 settlement, "the fact
remains that the equity interest was transferred to—and is still held
by—Eames." Respondent April 5 Memorandum, 21-22.

7. Finally, in its April 10 submission, Respondent objects to the
Claimant's calculation of interest on any award regarding Barclays
or the other claims, to wit, Claimant's April 5 Request adds an
improper request that interest after March 6, 2019 be compound,
and not simple, interest by applying an additional 9% statutory
interest to both (a) the damages awarded and (b) the interest
accrued through March 6, 2019.

8. We disagree with Respondent's arguments except as relating to the
compounding of interest sought by Claimant, which we discuss
more fully below. First, when we found that "Highland breached
the Plan and Scheme by transferring the LP interests to a wholly-
controlled affiliate after the Committee had specifically
disapproved of the transfer," we sought a remedy to deprive
Respondent of the benefits that it had received illegitimately, or, in
other words, to void the Eames transaction and put the parties back
into the position they should have been in. Respondent may not
benefit in the future by its breach of the Plan and Scheme, and the
illegitimate transaction it engaged in, by forfeiting some, but
receiving future, benefits through its absolute control of the entity
it created, Eames.

13

9.  Second, although Eames is not a party in this proceeding, that is irrelevant to the relief we grant. The operating party throughout all of the machinations that resulted in the transfer of Barclays' LP interests to an entity it created solely for the purpose of holding such interests was, and remains, Respondent. It is completely within its power to unwind the transfer and re-transfer those interests back to the Fund for the benefit of its investors, as we now order.

10. Regarding the appropriate amount upon which to award interest, for reasons set forth below, we reject Claimant's argument that $29,609,015 is the appropriate amount upon which to award interest, as to do so would be to violated well-settled law in New York regarding pre-judgment interest, CPLR §§5003-5004.

11. We award Claimant monetary damages against Respondent in the amount of $21,768,743, plus 9% simple prejudgment interest from the date of the breach until the earlier of either (1) the date the amount awarded is paid to Claimant for the benefit of the Fund, or (2) the date on which a court of competent jurisdiction enters a final judgment upon this Award.

12. We further order that Respondent take all necessary steps to cause the improperly taken Fund LP interests currently owned and controlled by Respondent through Eames, Ltd to be returned to Claimant within sixty (60) days from the date of transmittal of this Final Award to the Parties.

v.  Interest

1.  In the March 6 Partial Final Award, we awarded damages and interest through the date of that award, but then, as already referred to, directed the Parties to confer regarding all damages and interest issues. Claimant now urges that we award 9% prejudgment interest on the damage amounts awarded until the earlier of: (1) the date on which the amounts due are paid to the Committee for the benefit of the Fund; or (2) the date on which a court of competent jurisdiction enters a final judgment on the Final Award.

2.  However, as Respondent points out, Claimant is, in effect, arguing for a compounding of interest upon interest. We agree. The effect of Claimant's interest calculations would violate New York law, as an award of 9% interest post-March 6 on an amount that already includes 9% interest from the breach through March 6, would amount to compound interest after March 6, 2019. "[T]he statutory

14

scheme [in New York] for awarding ..., where applicable, prejudgment interest, does not provide for compound interest." *520 East 81st Street Associates* v. *State of New York*, 19 AD3d 24 (2005).

3. Respondent also contends that the March 6 Partial Final Award contained specific language awarding interest "through the date of this Partial Final Award"— i.e., March 6, 2019, and that awarding interest through any other date would constitute an untimely modification of the Partial Final Award.

4. We disagree with Respondent that changing the termination date of prejudgment interest would constitute an untimely modification. Although the Partial Final Award did use the date of March 6 as a reference point for calculation of interest, that fact is not determinative of this issue. We also explicitly left open calculations of damages and interest until the Parties had fully conferred on the extremely complex financial calculations that had to be made. Among the calculations was a further calculation of interest.  It is not an unlawful modification of the Partial Final Award to make, as we do here, a final award on all damages and interest issues based upon a final record.

5. Furthermore, failing to continue the running of interest through payment or entry of a final judgment could well, under the circumstances presented here, result in Fund investors with no compensation for their documented losses during that time, as well as provide an incentive to Respondent to prolong the confirmation process. We have already had occasion to comment on Respondent's tactics of putting forth witnesses who were "unworthy of belief" and an "[il]legitimate defense to many of the Committee's claims." Partial Award ¶VI(E). We will not adopt a result that would allow Respondent to impose more hardships on the Fund Investors.

6. We award Claimant 9% prejudgment simple interest on all sums awarded from the dates of each breach through the earlier of the date paid or the entry of a final judgment.

F.  FINAL AWARD

a.  We reaffirm the findings of fact, conclusions of law, and findings of liability as set forth in the March 6 Partial Award, and make the following awards with respect to such findings and conclusions:

15

**Appx. 02191**

i.  Claimant's Application to modify the Partial Final Award is granted pursuant to the Disposition of Application for Modification dated March 14, 2019.

ii. Claimant's Motion to Correct Errors is granted, on consent; the clerical errors are set forth below and corrected as noted:

1.  The Partial Final Award reference to the amount of Deferred Fees improperly taken from the Fund by Highland as "$33,313,000" (Partial Final Award at 14, 54) is corrected to read "$32,313,000."

2.  The Partial Final Award reference to the amount of improper Distribution Fees calculated by Mr. Imburgia as $14,452,275 (Partial Final Award at 24, 54) is corrected to read "$14,457,275."

3.  The Partial Final Award reference to the amount of "$23.5/9" and "$23.5 million" (Partial Final Award at 36, 40) is corrected to read "$23,938,568."

4.  The Partial Final Award reference to the incentive period as ending on "December 30, 2016" (Partial Final Award at 40, 41, 42, 55) is corrected to read "September 30, 2016."

5.  In all other respects, the Partial Final Award dated March 6, 2019 and the Disposition of Application for Modification dated March 14, 2019 are reaffirmed and incorporated by reference.

iii. For the Deferred Fee Claim, the Panel awards the following relief: the Panel orders Respondent to pay to the Claimant, on or before May 21, 2019, the Deferred Fees in the amount of $32,313,000 as directed in the Partial Final Award, plus prejudgment interest at the New York statutory rate of 9% simple applied to that sum from the dates of the breaches and continuing until the earlier of: (1) the date the amount awarded is paid to Claimant for the benefit of the Fund, or (2) the date on which a court of competent jurisdiction enters a final judgment upon this Award.

iv. For the Distribution Fee Claim, the Panel awards the following relief: the Panel orders Respondent to pay to the Claimant, on or before May 21, 2019, the amount of $14,457,275, plus prejudgment interest at the New York statutory rate of 9% simple applied to that sum from the dates of breach and continuing until the earlier of: (1) the date the amount awarded is paid to Claimant for the benefit of the Fund, or (2) the date on which a court of competent jurisdiction enters a final judgment upon this Award.

v.  For the Taking of Plan Claims, the Panel awards the following relief: the Panel orders Respondent to pay to the Claimant, on or before May 21,

2019, the amount of $3,106,414. The Panel further orders that LP interests identified in RC411 be transferred to Claimant for the benefit of the Crusader Fund or that Claimant cause the Fund to extinguish those claims. The Panel also awards prejudgment interest at the New York statutory rate of 9% simple applied to $3,106,414 beginning on March 7, 2019 and continuing until the earlier of: (1) the date the amount awarded is paid to Claimant for the benefit of the Fund, or (2) the date on which a court of competent jurisdiction enters a final judgment upon this Award.

vi. For the CLO Trades Claim, the Panel awards the following relief: the Panel orders Respondent to pay to the Claimant, on or before May 21, 2019, the amount of $449,375.00. The Panel also awards prejudgment interest at the New York statutory rate of 9% simple, from the dates of the breaches and continuing until the earlier of: (1) the date the amount awarded is paid to Claimant for the benefit of the Fund, or (2) the date on which a court of competent jurisdiction enters a final judgment upon this Award.

vii. For the Credit Suisse Claim, the Panel awards the following relief: the Panel orders Respondent to pay to the Claimant, on or before May 21, 2019, the amount of $2,735,411. The Panel also awards prejudgment interest at the New York statutory rate of 9% simple on that sum, from the date of the breach and continuing until the earlier of: (1) the date the amount awarded is paid to Claimant for the benefit of the Fund, or (2) the date on which a court of competent jurisdiction enters a final judgment upon this Award.

viii. For the UBS Claim, the Panel awards the following relief: the Panel orders Respondent to pay to the Claimant, on or before May 21, 2019, the amount of $2,041,664. The Panel also awards prejudgment interest at the New York statutory rate of 9% simple applied to that sum from the date of breach until the earlier of: (1) the date the amount awarded is paid to Claimant for the benefit of the Fund, or (2) the date on which a court of competent jurisdiction enters a final judgment upon this Award.

ix. For the Cornerstone Claim, the Panel awards the following relief: the Panel orders Respondent to pay to Claimant, on or before May 21, 2019, the amount of $48,070,407 for the sale of the Crusader Fund's shares in Cornerstone. The Panel also awards pre-prejudgment interest at the New York statutory rate of 9% simple on that sum from the date of breach and continuing until the earlier of: (1) the date the amount awarded is paid to Claimant for the benefit of the Fund, or (2) the date on which a court of competent jurisdiction enters a final judgment upon this Award. When the amount awarded for the Cornerstone claim is paid by Respondent, Claimant shall cause the Crusader Fund to tender its Cornerstone shares to Respondent.

x. For the Barclays Claim, the Panel awards the following relief:

    1. The Panel orders Respondent to pay to Claimant, on or before May 21, 2019, the amount of $21,768,743. The Panel also awards prejudgment interest at the New York statutory rate of 9% simple applied to that sum from the date of the breach and continuing until the earlier of: (1) the date the amount awarded is paid to Claimant for the benefit of the Fund, or (2) the date on which a court of competent jurisdiction enters a final judgment upon this Award.

    2. Further to the Barclays Claim, the Panel orders that Respondent take all necessary steps to cause the improperly taken Fund LP interests currently owned and controlled by Respondent through Eames, Ltd to be transferred to Claimant for the benefit of the Crusader Fund within sixty (60) days from the date of transmittal of this Final Award to the Parties, or, alternatively, that Claimant cause the Fund to extinguish those interests.

xi. For Claimant's Application for Legal Fees, Costs, and Expenses, we award Claimant $11,351,850.06 in fees, costs, and expenses as per the following:

    1. Jenner & Block Fees - $9,278,248.99;
    2. FTI Expert Fees - $1,274,853.26;
    3. A&M Arbitration Fees - $655,160.00;
    4. Court Reporter Hr'g Costs - $114,697.77;
    5. Court Reporter Dep. Costs - $28,890.04

xii. The administrative fees and expenses of the International Centre for Dispute Resolution (ICDR) totaling US$94,693.88 and the compensation and expenses of the Tribunal totaling US$887,427.89 shall be borne by Respondent. Therefore, Respondent shall reimburse Claimant the additional sum of US$514,163.97, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.

G. We have carefully considered, although not discussed in their entirety herein, all arguments made by Claimant and Respondent. Any other claims or requests for relief, made by either Party, are denied.

Appx. 02194

We hereby certify that, for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in New York, New York, USA.

Date: April 29, 2019

_____
David M. Brodsky, Chair

_____
John S. Martin, Jr.

_____
Michael D. Young

19

We hereby certify that, for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in New York, New York, USA.

Date: April 29, 2019


_____

David M. Brodsky, Chair


_____

John S. Martin, Jr.


_____

Michael D. Young

State of New York        )
                         )    SS:
County of New York       )

I, David M. Brodsky, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is our Final Award.

___5/9/19___                              _____
Date                                      David M. Brodsky, Chairperson

State of New York        )
                         )    SS:
County of New York       )

On this _9_ day of May, 2019, before me personally came and appeared David M. Brodsky, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_____
Notary Public

ISAIAS MATEO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MA6274151
Qualified in New York County
My Commission Expires 12-31-2020

20

State of  Florida      )
                       )   SS:
County of Lee          )

I, John S. Martin, Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is our          Final Award.

_Date April 29,2019

_____
John S. Martin, Jr., Arbitrator

State of  Florida      )
                       )   SS:
County of  Lee         )

On this 29th day of April, 2019, before me personally came and appeared John S. Martin, Jr., to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_____
Notary Public

ROBIN A. YEOMANS
MY COMMISSION # GG 121122
EXPIRES: November 3, 2021
Bonded Thru Notary Public Underwriters

21

State of New York          )
                           )    SS:
County of New York         )

I, Michael D. Young, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is our          Final Award.

_____4/29/19_____                    _Michael Young_____
Date                                 Michael D. Young, Arbitrator

State of New York          )
                           )    SS:
County of New York         )

On this 29 day of April, 2019, before me personally came and appeared Michael D. Young, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_Vickie L Johnston_____
Notary Public

VICKIE L. JOHNSTON
Notary Public - State of New York
No. 01JO6113098
Qualified in Queens County
My Commission Expires July 19, 20 20

22

Appx. 02199