# EXHIBIT 16

EFiled: Jul 08 2019 04:21PM EDT
Transaction ID 63518449
Case No. 2017-0488-MTZ

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| PATRICK DAUGHERTY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HIGHLAND CAPITAL MANAGEMENT, ) <br> L.P., HIGHLAND EMPLOYEE ) <br> RETENTION ASSETS LLC, ) <br> HIGHLAND ERA MANAGEMENT LLC, ) <br> and JAMES DONDERO, ) <br> ) <br> Defendants, ) <br> ) <br> and ) <br> ) <br> HIGHLAND EMPLOYEE ) <br> RETENTION ASSETS LLC, ) <br> ) <br> Nominal Defendant. ) | C.A. No. 2017-0488-MTZ |

### ORDER DENYING APPLICATION TO CERTIFY INTERLOCUTORY APPEAL

WHEREAS:

A. Plaintiff Patrick Daugherty was a partner and senior executive of Defendant Highland Capital and certain of its affiliates from 1998 until his resignation in 2011.

B. Highland sued Daugherty in Texas, and Daugherty countered with claims against Highland and Highland Employee Retention Assets LLC ("HERA") (the "Texas Action").

C. During the course of the Texas Action, Defendants represented to the Texas court that Highland had placed Daugherty's HERA interests, worth approximately $3.1 million, in escrow with Abrams & Bayliss LLP as escrow agent.

D. Highland received a judgment against Daugherty, and Daugherty received a judgment against HERA. Daugherty paid the judgment against him. HERA did not pay the judgment against it. The day after the Texas judgment became final and non-appealable, Abrams & Bayliss resigned as escrow agent and transferred the escrow assets it held back to Highland. HERA claimed to have no assets to satisfy a judgment.

E. Daugherty responded by filing his complaint in this action on July 6, 2017. Vice Chancellor Glasscock, who previously presided over this case, dismissed some of Daugherty's claims. Daugherty then filed his first amended complaint. The case was reassigned to me in October 2018. After Daugherty filed his second amended complaint, I denied a motion to dismiss. The surviving claims are for fraudulent transfer, unjust enrichment, and indemnification.

F. On February 2, 2018, Daugherty served a subpoena on Abrams & Bayliss.[1] Defendants moved to quash the subpoena "in its entirety given the privileged and sensitive nature of the information requested and Daugherty's

---

[1] D.I. 52.

failure to demonstrate relevance to this lawsuit."[2] Vice Chancellor Glasscock heard the motion to quash. He started the argument by stating "general principles":

> First, information regarding the actions of Abrams & Bayliss in connection with its operation of the escrow as agents of Highlands, HERA, those documents, that information is relevant, and it doesn't appear to me to be generally privileged. Second, to the extent the subpoena requests attorney client privilege material, I'm going to need a privilege log to decide issues of privilege, waiver, and common interest doctrine. Third, it is appropriate to seek discovery from the escrow agent as well as from the defendants. Fourth, the subpoena in question is overbroad as it seeks information far beyond Abrams & Bayliss' documents as escrow agents, and I'm not going to require a third party to answer overbroad discovery requests that surely implicate attorney-client privilege. Fifth, I am therefore disposed to quash the subpoena with leave to file a more narrow subpoena. And once that subpoena is issued, there needs to be a meaningful meet and confer as to what is producible and what is not so that the disputes that come to me are tailored to the discoverability of the documents and any privilege that may apply.[3]

G. Daugherty again subpoenaed Abrams & Bayliss, which produced 285 documents. Daugherty and Abrams & Bayliss met and conferred. Defendants asserted more than 300 documents were privileged.

H. Daugherty challenged Defendants' privilege assertions by moving to compel (the "Motion"). Daugherty challenged whether documents relating to Abrams & Bayliss's work as escrow agent were properly withheld, and argued the

---

[2] D.I. 61 ¶ 2.
[3] D.I. 97 at 3-4.

3

crime-fraud exception vitiated any proper assertion of privilege. I heard argument on April 12.[4] The hearing was not productive as Defendants could not articulate the scope of their claimed privilege. I gave Highland yet another chance to defend its privilege and reconsider its privilege log, and specifically requested Abrams & Bayliss's engagement letter and billing records. I also requested to review the withheld documents *in camera*.[5]

I.  After receiving and reviewing the documents on the Defendants' privilege log *in camera*, I granted the Motion (the "Motion to Compel Ruling"). The privilege log was organized chronologically, and the withheld documents fell into four categories. The first comprised documents regarding the initiation, negotiation, and establishment of Abrams & Bayliss as Highland's escrow agent. The second comprised Abrams & Bayliss's legal work during the pendency of the Texas action to determine whether and how Daugherty might access the escrowed assets. The third category comprised Abrams & Bayliss's work responding to a subpoena in Texas. And the fourth comprised documents regarding Abrams & Bayliss's resignation as Highland's escrow agent.

J.  For reasons set forth at length in the Motion to Compel Ruling, I concluded that "unfortunately my *in camera* review confirmed Daugherty's fear

---

[4] D.I. 181.

[5] D.I. 181 at 37-38.

that Highland is improperly withholding documents in categories 1 and 4 illustrating A&B's service and resignation as escrow agent, which are nonprivileged materials."[6] I decided any privilege related to the topics in categories 1 and 4 was waived, but stopped short of a broader waiver.[7] Additionally, I concluded that even assuming categories 1 and 4 were privileged, the crime fraud exception applied to categories 1, 2 and 4.[8]

K. On May 24, 2019, Defendants moved for reargument.[9] On June 3, Defendants moved to stay the implementation of the Ruling pending interlocutory appeal. On June 17, I denied Defendants' motion for reargument and declined to stay the decision pending interlocutory appeal (the "Reargument Ruling" and together with the "Motion to Compel Ruling," the "Rulings").[10] I ordered the parties to agree upon a framework under Delaware Rule of Evidence 510(f) to govern discovery under the Rulings, which was entered on June 27.

---

[6] D.I. 218 at 4.

[7] *Id*. at 10 ("Because Highland stuck by its position and continued to assert such a large percentage of improper privilege assertions while claiming it was producing documents concerning A&B's role as escrow agent, any privilege related to that topic is waived, and a full waiver of Highland's privilege could be an appropriate consequence. … I conclude Highland's unjustified withholding of other documents related to the escrow was not so egregious as to waive any privilege over these two sets of documents.").

[8] *Id*. at 10-15.

[9] D.I. 211.

[10] D.I. 253 (unredacted, filed under seal); D.I. 254 (redacted).

5

L. On June 17, Defendants applied for certification of an interlocutory appeal of the Rulings (the "Application").[11] Defendants identified three issues for certification:

1. Can Delaware courts apply the crime-fraud exception to destroy both attorney-client privilege and work-product protection without sufficient prima facie evidence that a party committed or attempted a fraud?

2. Can Delaware courts apply the crime-fraud exception to destroy both attorney-client privilege and work-product protection with respect to communications years before an alleged fraudulent transfer and without specific findings that each communication at issue was made in furtherance of the alleged fraud?

3. Can the Court impose a waiver of privilege as punishment from a party's good faith, but ultimately incorrect, assertion of privilege?[12]

M. Plaintiff filed his opposition to the Application on June 27.

N. Under Supreme Court Rule 42(b), there are to be no interlocutory appeals "unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[13]

O. "If the 'substantial issue' requirement is met, this Court will then analyze whether 'there are substantial benefits that will outweigh the certain costs

---

[11] D.I. 231.

[12] D.I. 231 at 5.

[13] Supr. Ct. R. 42(b)(i).

that accompany an interlocutory appeal.'"[14] Under Supreme Court Rule 42(b)(iii) the Court weighs the following factors along with "its own assessment of the most efficient and just schedule to resolve the case":

> (A) The interlocutory order involves a question of law resolved for the first time in this State; (B) The decisions of the trial courts are conflicting upon the question of law; (C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order; (D) The interlocutory order has sustained the controverted jurisdiction of the trial court; (E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice; (F) The interlocutory order has vacated or opened a judgment of the trial court; (G) Review of the interlocutory order may terminate the litigation; or (H) Review of the interlocutory order may serve considerations of justice.

P. "If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[15]

**IT IS ORDERED**, this 8th day of July, 2019, that the Application is DENIED based on the following:

1. The Rulings did not decide "a substantial issue of material importance that merits appellate review before a final judgment."[16] "The 'substantial issue'

---

[14] *Sider v. Hertz Glob. Hldgs., Inc.*, 2019 WL 2501481, at *4 (Del. Ch. June 17, 2019) (quoting Supr. Ct. R. 42(b)(ii)).

[15] Supr. Ct. R. 42(b)(iii).

requirement is met when an interlocutory order decides a main question of law which relates to the merits of the case, and not to collateral matters."[17] "Generally speaking, the substantive element of the appealability of an interlocutory order must relate to the merits of the case, not to matters of discovery."[18] That "proscription against interlocutory review of discovery rulings 'does not change merely because the discovery/disclosure order implicates the attorney-client privilege.'"[19] The Rulings decided the application and waiver of the attorney-client and work product privileges, not a main issue on the merits. The Rulings did not decide a substantial issue of material importance that warrants appellate review before a final judgment.

2. Highland argues that it is not seeking "appellate review simply so that an appellate court can re-review each communication at issue and evaluate the privilege determinations made. . . . What [it] seeks is different. It challenges the

---

[16] Supr. Ct. R. 42(b)(i).

[17] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008).

[18] *In re Examworks Grp., Inc.*, 2018 WL 1672991, at *2 (Del. Ch. Apr. 05, 2018) (ORDER) (quoting *Castaldo v. Pittsburgh-Des Moines Steel Co.*, 301 A.2d 87, 87 (Del. 1973)); *accord Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 1993 WL 478084, at *1 (Del. Nov. 16, 1993) (ORDER); *see also Deloitte LLP v. Klig*, 2010 WL 3736141, at *1 (Del. Sept. 27, 2010) (ORDER) (refusing interlocutory appeal of order finding waiver of privilege).

[19] *Certain Underwriters at Lloyd's, London v. Monsanto Co.*, 1991 WL 134471, at *1 (Del. June 7, 1991) (ORDER) (citations omitted) (quoting *In re Rinehardt*, 575 A.2d 1079, 1081 (Del. 1990)).

Order's *legal conclusions* that will reverberate throughout this action."[20] This is a distinction without a difference. Whether a party properly asserted a privilege, or whether an exception to the privilege applies, is a legal conclusion. The question is whether it is the type of legal conclusion that warrants interlocutory review. It is not.

3. Turning to the factors underpinning whether there are substantial benefits that will outweigh the costs of interlocutory appeal, Highland identifies only Supreme Court Rule 42(b)(iii)(B) and (H) as favoring its Application. I therefore "limit[] my review principally to those" issues.[21] In short, the high costs of piecemeal litigation and interlocutory appeals outweigh the value of this Application. This is particularly true here where trial will start on September 10 and there are other ongoing discovery disputes requiring the parties' attention.[22]

4. The Rulings do not conflict with decisions of other trial courts.[23] Defendants have not identified any Delaware decision at odds with the Rulings on the crime-fraud exception. Defendants cite authorities, such as *Buttonwood Tree*

---

[20] D.I. 231 at 6 (emphasis in original).

[21] *Chemours Co. v. DowDuPont Inc.*, 2019 WL 2404817, at *3 (Del. Ch. June 7, 2019).

[22] On July 5, I attempted to quantify and remedy Defendants' other discovery shortcomings by appointing a third-party neutral to collect documents. D.I. 255. It is possible that trial will have to be postponed. But this possibility, borne from Defendants' failure to collect their own documents, should not support the relief Defendants seek here.

[23] Supr. Ct. R. 42(b)(iii)(B).

9

*Value Partners, L.P. v. R.L. Polk & Co.*,[24] and *Princeton Ins. Co. v. Vergano*,[25] discussed in the Rulings, and argue the Court erred in ruling Daugherty had made a *prima facie* showing of fraud. Defendants do not dispute that Abrams & Bayliss assisted Highland in the transaction that Daugherty claims was fraudulent, but argue he "has not established through a prima facie showing [] that the transaction *was* fraudulent."[26]

5. Distilled, Defendants' argument is that Daugherty has not shown sufficient evidence of fraud in Highland's "desire to avoid paying money to Daugherty."[27] In arguing the Court applied a standard that was too low, Defendants advocate for a standard that is too high. As explained in the Reargument Ruling, "the party opposing the privilege is not required to introduce evidence sufficient to support a verdict of crime or fraud or even to show that it is more likely than not that the crime or fraud occurred."[28] Discovery to date, and *in camera* review, indicate that Defendants used Abrams & Bayliss as their escrow agent, made numerous representations to the Texas court and Daugherty that assets to satisfy any judgment were held in escrow, held the assets in escrow differently

---

[24] 2018 WL 346036 (Del. Ch. Jan. 10, 2018).

[25] 883 A.2d 44 (Del. Ch. 2005).

[26] D.I. 231 at 9 (emphasis in original).

[27] *Id.* at 9 n.2.

[28] D.I. 254 at 11 (quoting *Kickflip, Inc. v. Facebook, Inc.*, 2016 WL 5929003, at *5 (D. Del. Sept. 14, 2016)).

than represented, and then at the end of it all directed Abrams & Bayliss to transfer assets from that same escrow to Highland to avoid satisfying the judgment to Daugherty.[29] Daugherty met his burden of showing a *prima facie* case of fraud sufficient to warrant the crime-fraud exception. Defendants cite no Delaware decisions that conflict with this analysis. As a result, they have not shown interlocutory review is warranted to resolve conflicting decisions.

6. Defendants also argue that the Court applied the crime-fraud exception too broadly and "did not make the factual finding needed to support its conclusion that each communication [] 'was made in furtherance of a fraud' and thus fell within the exception."[30] In fact, *in camera* review showed that the documents in category 2 reflected "efforts that culminated in the allegedly fraudulent acts."[31] The Court made the factual finding Defendants seek. Again, Defendants cannot identify Delaware decisions that conflict with this analysis, and so have not shown interlocutory review is warranted.

7. Finally, Defendants argue the Rulings conflict with precedent concerning the sanction of a punitive waiver. Defendants have failed to present a conflict among trial court decisions that merits interlocutory review. Waiver was

---

[29] I described specific documents in the Reargument Ruling, but sealed that portion of the transcript pending resolution of Defendants' Application and will not repeat that description here. *See* D.I. 253 at 13-15.

[30] D.I. 231 at 10.

[31] D.I. 218 at 13.

based on Defendants' persistence in claiming privilege over the work of their escrow agent, after Vice Chancellor Glasscock informed them that work was not privileged, and after they were given multiple opportunities to follow those instructions.[32] The waiver component of the Rulings "applied settled principles of law" on the application and waiver of privilege.[33] "An improperly asserted claim of privilege is no claim at all."[34] Further, for reasons explained in the Reargument Ruling, Defendants misconstrued the Motion to Compel Ruling: I concluded categories 1 and 4 were not privileged, but went on to make the point that even if they were, that privilege would have been waived. Defendants have not identified any documents or testimony that they assert are privileged but that they must produce as a result of the waiver.

8. The second factor Defendants address is that interlocutory review may serve considerations of justice.[35] Defendants seek interlocutory relief on the secondary holding that categories 1 and 4 would be waived if they were privileged, and on the crime-fraud exception, in pursuit of a different set of guideposts for the remainder of the case. The Supreme Court has declined to intervene to move discovery guideposts, even where the attorney-client privilege (and any harm

---

[32] Ex. 254 at 19-22.

[33] *Klig v. Deloitte LLP*, 2010 WL 3489735, at *9 (Del. Ch. Sept. 7, 2010) (describing decisions applying principle).

[34] *Id*. at *4.

[35] Supr. Ct. R. 42(b)(iii)(H).

flowing from disclosure) is at issue.[36] This factor does not support interlocutory appeal.

9. Neither side argues any of the remaining factors set out in Supreme Court Rule 42(b)(iii). None of those factors apply here.

10. In line with our State's general preference against interlocutory appeals, I decline to certify the Rulings for interlocutory review.

/s/ Morgan T. Zurn<br>
Vice Chancellor Morgan T. Zurn

---

[36] *Supra* ¶ 1.