PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Jordan A. Kroop (NY Bar No. 2680882) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         jkroop@pszjlaw.com

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email:   MHayward@HaywardFirm.com
         ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |

**REPLY IN FURTHER OPPOSITION TO VALUATION MOTION[1]**

Highland Capital Management, L.P. ("**Highland**"), hereby files this reply in further support of the *Reorganized Debtor's Objection to Motion for Determination of Value* [Docket No.

---

[1] Pursuant to the parties' agreement as set forth in the *Notice of Status Conference and Briefing Schedule* [Docket No. 3543] (the "**Stipulated Notice**"), this is the final pleading in this contested matter. The Stipulated Notice provides that this Court will conduct a "status conference on **Tuesday, November 15, 2022 at 9:30 a.m.**" (not November 14, as Dugaboy misstates in the Dugaboy Reply). Dugaboy's sudden request for a ruling on the briefs (*see* Dugaboy Reply at 8) is contrary to the parties' agreement as set forth in the Stipulated Notice and should be denied.

DOCS_NY:46707.9 36027/003

3465] (the "**Objection**")[2] and in opposition to (a) the *Motion for Determination of the Value of the Estate and Assets Held by the Claimant Trust* [Docket No. 3382], as supplemented [Docket No. 3533] (as supplemented, the "**Valuation Motion**"), filed by The Dugaboy Investment Trust ("**Dugaboy**"); (b) the *Limited Response in Support of Certain Requested Relief* [Docket No. 3467] filed by The Hunter Mountain Investment Trust ("**HMIT**" and, together with Dugaboy, "**Movants**");[3] (c) *The Dugaboy Investment Trust's Reply in Support of Its Motion for Determination of Value* [Docket No. 3603] (the "**Dugaboy Reply**"); and (d) *Reply in Support* [Docket No. 3606] filed by HMIT (the "**HMIT Reply**" and, together with the Dugaboy Reply, the "**Replies**").

**Preliminary Statement**

1.   Movants are not entitled to the information they seek. The terms of the Plan, the Confirmation Order, the Claimant Trust Agreement, and applicable Delaware law do not entitle Movants to any information regarding Highland or the Claimant Trust's assets. Movants' purported desire to use the information sought to settle their disputes with the Highland Entities is disingenuous. Movants have had numerous opportunities throughout this case to settle and to avoid the unnecessary waste of time and resources created by their vexatious, harassing, and frivolous litigation strategy. By now, it's clear Movants have no interest in settling anything; rather, they want information they're not entitled to so that they can (a) open new litigation battlefronts against the Highland Entities and their management, (b) frustrate the Highland Entities' ability to maximize the value of their assets for the benefit of actual creditors, and (c) generally engage in more of the mischief that has typified this chapter 11 case over the last three years.

---

[2] All capitalized terms used but not defined herein have the meanings given to them in the Objection.
[3] It is beyond a doubt that Dugaboy is controlled, directly or indirectly, by James Dondero. On information and belief, Mr. Dondero also controls, directly or indirectly, HMIT.

DOCS_NY:46707.9 36027/003

2. To support their Valuation Motion, Movants offer two specious arguments. Dugaboy's primary argument is that it has no obligation "to cite a statute, rule, or case specifically delineating entitlement to the relief sought as a precondition to awarding the relief"[4]—an argument contrary to every legal tenet—but that its requested relief is mandated by some generalized concept of "equity" and "transparency." HMIT imagines that sections 105 and 1142 can be reformed to somehow provide a statutory basis for the Valuation Motion. Both arguments ignore the Plan and applicable law and are simply wrong. The Court should deny all the relief sought in the Valuation Motion.

**The Claimant Trust Agreement and Delaware Law Preclude the Relief Sought**

3. Pursuant to the terms of the Plan, "Claimant Trust Beneficiaries," by design, have limited information rights, which are set forth in section 3.12(b) of the Claimant Trust Agreement ("**Section 3.12(b)**"):[5]

> The Claimant Trustee shall provide quarterly reporting to … Claimant Trust Beneficiaries of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; provided, however, that the Claimant Trustee may, with respect to any … Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.[6]

Nothing in the Claimant Trust Agreement (or the Plan or Confirmation Order) grants any other information rights, and, in fact, the Claimant Trust Agreement is clear that there are no rights

---

[4] Dugaboy Reply ¶ 3.
[5] The Claimant Trust Agreement is at Docket No. 1811-2 as modified by Docket No. 1875-4.
[6] Claimant Trust Agreement § 3.12(b).

outside those in Section 3.12(b).[7] Accordingly, the **only** entities with information rights under the Plan are "Claimant Trust Beneficiaries," and those rights (a) are limited, (b) do not include rights to asset or subsidiary level information, and (c) can be further limited by the Claimant Trustee as appropriate to "maintain confidentiality."

4. As such, the Plan does not allow the relief sought by Movants. "Claimant Trust Beneficiaries" are defined as:

> the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, and, **only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest at the federal judgment rate in accordance with the terms and conditions set forth herein**, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.[8]

Movants acknowledge that they are not "Claimant Trust Beneficiaries" but nevertheless suggest that they should be treated as such. Movants' suggestion must be rejected because it contravenes the plain terms of the Plan. Movants (a) hold unvested and inchoate "Contingent Claimant Trust Interests"[9] and (b) will only become "Claimant Trust Beneficiaries" if the Claimant Trustee has certified that (i) all Holders of Allowed General Unsecured and Subordinated Claims have been paid in full and (ii) all disputed claims in Classes 8 and 9 have been resolved.[10] Thus, by design, holders of Contingent Claimant Trust Interests are not Claimant Trust Beneficiaries and accordingly have no information rights under the Plan.

---

[7] *Id* § 5.10(a) ("The Claimant Trust Beneficiaries shall have no rights other than those set forth in this Agreement, the Confirmation Order, or the Plan (including any Plan Supplement documents incorporated therein)").

[8] Claimant Trust Agreement § 1.1(h) (emphasis added); Plan Art. I.B. 27, 44.

[9] Plan Art. I.B.44 ("Contingent Claimant Trust Interests" means the contingent Claimant Trust Interests to be distributed to Holders of Class A Limited Partnership Interests, Holders of Class B Limited Partnership Interests, and Holders of Class C Limited Partnership Interests in accordance with this Plan, the rights of which shall not vest, and consequently convert to Claimant Trust Interests, unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been paid indefeasibly in full …."); Claimant Trust Agreement § 1.1(m).

[10] Plan, Art. I.B.27, 44; Confirmation Order ¶ 60.

4

5.  Despite this clear language, Movants argue they are entitled to information because they **might** become Claimant Trust Beneficiaries if it turns out that they are "in the money" because "it seems likely that the Debtor's available cash and other assets will be sufficient to pay all allowed claims with interest …."[11] This is inapposite and contrary to the terms of the Plan. Whether Movants might be "in the money" today or someday in the future does not transform them into Claimant Trust Beneficiaries or entitle them to any information under the Claimant Trust Agreement.[12]

6.  Further, Dugaboy argues that Movants are entitled to information because "under Delaware law, contingent beneficiaries have equal entitlement to seek financial information from a trust" because Delaware follows the Restatement (Third) of Trusts.[13] Dugaboy's reliance on the Restatement evinces a fundamental misunderstanding of applicable Delaware law pertaining to trusts. The Claimant Trust is a Delaware **statutory trust**, governed by the Delaware Statutory

---

[11] Dugaboy Reply ¶ 5.

[12] Ironically, Movants ignore that the only reason they might be "in the money" is because of the extraordinary work done by James P. Seery, Jr., and his team to maximize the value of the Highland Entities' assets notwithstanding Mr. Dondero's efforts to burn Highland down. Indeed, one cannot plausibly reconcile Mr. Dondero's contrary assertions that (a) under Mr. Seery's management, the Highland Entities have delivered unexpectedly large returns on allowed claims that might leave Dugaboy and HMIT "in the money" and (b) he and his affiliates nevertheless have viable claims against Mr. Seery and the Highland Entities for mismanagement and breaches of duty. As evidenced by the prepetition litigation with UBS, the Redeemer Committee, Mr. Daugherty, and Mr. Terry, economic rationality is not Mr. Dondero's hallmark. In each of those cases, Mr. Dondero caused Highland and related entities to spend millions of dollars litigating and—rather than accept the losses and satisfy the adverse judgments and awards entered—subsequently caused those same entities to transfer assets while spending millions more in fruitless and vindictive follow-up litigation, much of which remains pending in this Court and elsewhere.

[13] Dugaboy Reply ¶ 2.

5

Trust Act (the "**Trust Act**"),[14] not by the Restatement. Dugaboy is simply wrong on the law, its status as a beneficiary, and its information rights.[15]

7. Section 3819(a) of the Trust Act, which Dugaboy never mentions, governs information rights for beneficiaries of Delaware statutory trusts and ascribes primacy to the trust's agreement:

> **Except to the extent otherwise provided in the governing instrument of a statutory trust**, each beneficial owner of a statutory trust … has the right, **subject to such reasonable standards** … **as may be established by the trustees or other persons who have authority to manage the business and affairs of the statutory trust,** to obtain from the statutory trust from time to time upon reasonable demand for any purpose reasonably related to the beneficial owner's interest as a beneficial owner of the statutory trust ….[16]

Thus, under applicable Delaware law, a beneficiary's information rights are governed exclusively by the Claimant Trust Agreement—not the Restatement or any other treatise.[17] The Claimant Trust Agreement provides **no** information rights to entities other than Claimant Trust Beneficiaries, even if they think it "seems likely" that they may become "in the money."[18] Holders of Contingent Claimant Trust Interests, like Movants, are not entitled to information.

---

[14] Trust Act, 12 Del. C. § 3801 *et seq. See also* Claimant Trust Agreement § 1.1(f) ("'Claimant Trust' means the 'Highland Claimant Trust' established in accordance with the Delaware Statutory Trust Act …"); § 1.1(o) ("'Delaware Statutory Trust Act' means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time"); § 2.1(a) ("The Claimant Trust is hereby created as a statutory trust under the Delaware Statutory Trust Act …").

[15] Dugaboy cites to two Delaware cases but neither involve a Delaware statutory trust and both are inapposite. *Frederick-Conaway v. Baird,* 159 A.3d 285 (Del. 2017), involved a revocable grantor trust created by a deceased individual as part of the disposal of the decedent's estate, not a Delaware statutory business trust created by agreement among scores of parties to a Chapter 11 case. Similarly, *J.P. Morgan Trust Co. of DE v. Fisher,* 2019 WL 6605863 (Del Ch. Dec. 5, 2019), pertains to a testamentary trust created shortly before an individual's death as part of his estate plan, not a Delaware statutory trust like the Clamant Trust governed by the Trust Act.

[16] 12 Del. C. § 3819(a) (emphasis added).

[17] *See Grand Acquisition, LLC v. Passco Indian Springs DST*, 145 A.3d 990, 994-99 (Del. Ch. 2016).

[18] Dugaboy attempts to persuade the Court that there is some urgency to obtaining information because the Indemnity Subtrust presently holds a $25 million reserve against indemnification claims and the Claimant Trust continues to hold a reserve for professional fees. Dugaboy, of course, neglects to mention that Dondero-related entities continue to oppose both the formation of the Indemnity Subtrust (the Fifth Circuit has scheduled oral argument on that appeal for next month) and the allowance of professional fees (the District Court's dismissal of NexPoint's appeal of the fee orders is also on appeal to the Fifth Circuit).

**The Bankruptcy Code Provides No Basis for the Valuation Motion**

8.  Movants fail to cite any provision of the Bankruptcy Code that would entitle them to the relief they request in the Valuation Motion. Instead, Dugaboy argues that there is a general expectation of "transparency in bankruptcy proceedings." HMIT argues that section 105(a) of the Bankruptcy Code coupled with section 1142 supports the relief requested. Both arguments fail.

9.  First, Dugaboy's only support for its "transparency" argument is a citation to the operating guidelines for chapter 11 debtors published by the Office of the U.S. Trustee (the "**UST**"), which require "transparency regarding a debtor's financial condition and business activities … to inform creditors and other interested parties of the debtor's financial affairs."[19] Dugaboy's reliance on the UST guidelines is misplaced because neither Highland nor the Claimant Trust is a debtor in a chapter 11 case. Highland's Plan became effective on August 11, 2021, the same date the Claimant Trust came into existence. The UST guidelines treat post-effective date, reorganized entities differently from debtors in chapter 11, and there is no dispute that Highland and the Claimant Trust have complied with the UST's guidelines by filing all required quarterly operating reports. The UST guidelines simply do not apply to post-effective date entities in the manner Dugaboy suggests nor do they trump the clear language of the Claimant Trust Agreement, which is the document governing information rights.

10. Second, HMIT's argument fails as a matter of bankruptcy law. As held by the Supreme Court in *Law v. Siegel,* section 105(a) "is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere," and that "'whatever equitable powers remain in the bankruptcy courts must and

---

[19] Dugaboy Reply ¶ 2.

can only be exercised within the confines of' the Bankruptcy Code."[20] Section 105(a), therefore, cannot itself be the basis for this Court to grant relief—let alone where the relief requested is specifically precluded by the plain terms of a written agreement—and must be tethered to some other provision in the Bankruptcy Code. Section 1142 is not that provision. Section 1142(a) authorizes the Court to issue orders "necessary for the consummation of the plan." Here, the Claimant Trustee is complying with the Plan by abiding by Section 3.12(b). No order is necessary to ensure compliance. If anything, Bankruptcy Code section 1142(a) requires **denial** of the Valuation Motion. As set forth above, only Claimant Trust Beneficiaries have information rights. Applying section 1142(a) as advocated by HMIT would allow HMIT to use section 1142(a) to modify the terms of a confirmed plan and rewrite the parties' information rights in a way entirely contrary to creditor expectations and Bankruptcy Code section 1127.[21]

### No Breach of Covenant of Good Faith

11. Under the Trust Act, it is clear that a trustee's "duties (including fiduciary duties) … may be … restricted or eliminated by provisions in the governing instrument[,]" but "the governing instrument may not eliminate the implied contractual covenant of good faith and fair

---

[20] 571 U.S. 415, 421 (2014) (quoting *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206 (1988)). S*ee also United States v. Sutton*, 785 F.2d 1305, 1308 (5th Cir. 1986) ("[Section 105] does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.").

[21] HMIT cites two cases but neither support its argument [HMIT Reply at 4]. *In re WorldCom, Inc.,* 2009 Bankr. LEXIS 1136 (Bankr. S.D.N.Y. May 19, 2009), stands for the unremarkable proposition that a bankruptcy court retains jurisdiction to enforce the terms of a confirmed plan by issuing an order directing payment on an allowed claim—that is, to implement the terms of the confirmed plan. Likewise, *In re Goldblatt Bros., Inc.,* 132 B.R. 736 (Bankr. N.D. Ill. 1991), used section 1142(a) as a basis for an order directing a debtor to distribute plan-mandated funds to holders of allowed claims who had not updated their contact information in the ten years since plan confirmation. Neither case supports the notion that section 1142(a) can be used to order something **diametrically opposed** to a plan provision, yet that is exactly what HMIT argues here. Granting the Valuation Motion would severely undermine the Plan; it wouldn't "enforce unperformed terms of the Plan[,]" (HMIT Reply at 4) which is the only reason HMIT cites (incompletely) *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.,)* 301 F.3d 296 (5th Cir. 2002) (relying on section 1142(a) as the basis for continuing jurisdiction of the bankruptcy court in the face of an arbitration demand).

dealing."[22] It is also clear that the implied covenant of good faith and fair dealing cannot be used to change the terms of a trust agreement but instead only prevents actions that violate the spirit of the agreement.[23]

12. Here, and as set forth above, the Claimant Trust Agreement provides Movants with **no right** to request or receive information. Consequently, the Claimant Trustee cannot be in breach of any covenant or duty of good faith by declining to give Movants something they're not entitled to under the Claimant Trust Agreement, the Plan, the Confirmation Order, or applicable law. In fact, the Claimant Trustee would conceivably breach his *actual* duties to *actual* Claimant Trust Beneficiaries if he were to violate the Claimant Trust Agreement by disclosing information to parties, like Movants, which are not entitled to it.

13. Yet, HMIT still argues that not providing it with information it is not entitled to under the Claimant Trust Agreement breaches the duty of good faith and fair dealing because it is contrary to "the spirit of the [Claimant Trust Agreement]." That is plainly wrong. As the Court is aware, the Plan and Claimant Trust Agreement were written to address Mr. Dondero's well-documented penchant for bringing value-destructive and harassing litigation against his perceived adversaries and to minimize his ability to disrupt the orderly and optimal implementation of the Plan.[24] That is the "spirit" of the Claimant Trust Agreement; that "spirit" is effectuated by a Claimant Trust Agreement that: (1) foreswears **any** duties to holders of "Contingent Claimant

---

[22] Trust Act § 3806(c). The Claimant Trust Agreement is clear that (a) the only fiduciary obligations are to the Claimant Trust Beneficiaries and (b) the "implied contractual covenant of good faith and fair dealing" is not altered. Claimant Trust Agreement § 4.3.

[23] *Chamison v. Healthtrust, Inc.*, 735 A.2d 912, 920-21 (Del. Ch. 1999) ("Under Delaware law, an implied covenant of good faith and fair dealing inheres in every contract. … [and] requires the Court to extrapolate the spirit of the agreement from its express terms … **The implied covenant cannot contravene the parties' express agreement and cannot be used to forge a new agreement beyond the scope of the written contract.**") (emphasis added).

[24] *See, e.g.*, Confirmation Order ¶¶ 76-79; *NexPoint Advisors, L.P., et al. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4 419, 426-27 (5th Cir. 2022).

Trust Interests" (*i.e.*, Movants), (2) denies holders of "Contingent Claimant Trust Interests" (Movants) information rights, (3) distinguishes Claimant Trust Beneficiaries (actual creditors) from holders of Contingent Claimant Trust Interests (Movants), and (4) grants Claimant Trust Beneficiaries a specific set of rights granted to no one else. Accordingly, the Claimant Trustee has more than ample, good-faith reasons—supported by both the express terms and "spirit" of the Claimant Trust Agreement—to refuse to provide Movants with sensitive, confidential information regarding unliquidated assets they're not entitled to.

14. But there's more.[25] Highland continues to believe—based on an enormous body of experience-based evidence—that Movants' **real** motivation in filing the Valuation Motion and serving the Subpoenas is to seek new fodder for ever more lawsuits against the Highland Entities and Mr. Seery (and everyone else associated with this case). And they've told us so:

- The Valuation Motion's efforts to obtain information about assets and subsidiaries is largely duplicative of Dugaboy's motion to force compliance with Federal Rule of Bankruptcy Procedure 2015.3 [Docket No. 2256]—a motion Dugaboy now admits was filed to "determine" whether there were even more lawsuits that could be brought against Highland.[26]

- Movants' motivation to obtain information to justify new (but frivolous) lawsuits is also evidenced by the types of suits that Movants (and other Dondero-controlled entities) have brought throughout this case. For example:

    o Mr. Dondero and his controlled entities sued Mr. Seery and Highland for breach of alleged fiduciary and other duties to Mr. Dondero's "charitable" foundations in connection with the HarbourVest settlement

---

[25] Although Dugaboy now seeks to avoid the argument, Dugaboy was more than clear that its "main purpose" in filing the Valuation Motion was to try to substantiate appellate standing under the "person aggrieved" standard, a standard the Dondero entities have almost uniformly failed to meet and which is currently on appeal (through multiple actions) to the Fifth Circuit. Dugaboy's attempt to use this Court to subvert appellate court jurisdiction over this standing issue should be summarily rejected.

[26] *See, e.g., Opening Brief of Appellant The Dugaboy Investment Trust*, Case No. 22-10831, Document 516519791, at 12-13 (5th Cir. Oct. 24, 2022) ("One of the purposes of requiring bankruptcy debtors to file Rule 2015.3 Reports is to provide a complete accounting of all transactions involving non-debtor affiliates of the debtor ***to determine whether any post-petition claims exist***. By not requiring the Debtor to file the Rule 2015.3 Reports, the bankruptcy court's decision foreclosed Dugaboy's ability to ***determine what claims against the estate exist which arose from transactions between the Debtor and the non-debtor affiliates***.") (emphases added).

10

(notwithstanding this Court's prior approval of the HarbourVest settlement over the Dondero entities' objections).[27]

- o Mr. Dondero and his controlled entities sued Highland for its alleged mismanagement of, and breach of fiduciary duty to, the Highland Multi Strategy Credit Fund, L.P.,[28] and the Highland Select Equity Fund, L.P.,[29] when they sold assets against Mr. Dondero wishes.

- The Dondero entities continue to fight confirmation of the Plan and its Gatekeeper provision having objected in this Court and appealed to the Fifth Circuit. After the Fifth Circuit affirmed the Gatekeeper,[30] the Dondero entities objected to Highland's motion to conform the Plan,[31] arguing to this Court that the Gatekeeper must be limited.[32] After this Court denied the Dondero entities' objections, they effectively told this Court that they intend to appeal the motion to conform. The Dondero entities have also already unequivocally demonstrated that they intend to petition the Supreme Court for a writ of *certiorari* of the Fifth Circuit's opinion affirming the Gatekeeper. The Dondero entities are fighting the Gatekeeper provision solely so that they can bring actions without this Court first determining their colorability.

In other words, Movants want information they're not legally or contractually entitled to so they can create new and frivolous claims that can be used to "burn the place down."

**Movants' Suggestion of a Potential Settlement Is Disingenuous**

15. Movants deny the ulterior motives Highland ascribes to the Valuation Motion, arguing that they will be in a better position to negotiate and complete a global settlement of all their disputes with the Claimant Trust if only they can access confidential information regarding unliquidated assets. Movants' "settlement" dance is a charade. All evidence points to the Dondero entities' continuing their onslaught of litigation until they run out of courts to listen to them or the

---

[27] *Charitable DAF Fund, L.P., et al. v. Highland Cap. Mgmt. L.P., et al. (In re Highland Cap. Mgmt., L.P.)*, Adv. Proc. No. 21-03067-sgj (Bankr. N.D. Tex.)

[28] *The Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, Adv. Proc. No. 22-03052-sgj (Bankr. N.D. Tex.)

[29] *PCMG Trading Partners XXIII, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, Adv. Proc. No. 22-03062-sgj (Bankr. N.D. Tex.)

[30] *NexPoint*, 48 F.4 at 438-39.

[31] Docket No. 3503.

[32] Docket Nos. 3539, 3540, 3551.

11

Highland Entities' resources are exhausted.[33] Multiple attempts to settle with Mr. Dondero and his entities—prepetition efforts with Highland's creditors like Redeemer, Acis, and UBS; post-petition efforts to negotiate a consensual plan; Court-ordered mediation; attempts to negotiate a consensual transition of services—all failed because no adversary of Mr. Dondero could ever complete a deal with him.

16. Likewise, Movants' concern that continuing to pursue them and other Dondero-entities in adversary proceedings is futile if they become "in the money" misstates the facts and misunderstands the Plan and Claimant Trust Agreement. The Highland Entities are obligated to protect their management and agents and to reserve sufficient funds to do so. Consequently, it is impossible to know if there are, or will be, enough funds to pay creditors in full unless and until the Dondero entities stop their litigation siege of this estate. Movants' complaints notwithstanding, the vast majority of the fees incurred both before and after the Plan's effective date have been incurred in fighting against the Dondero entities' unceasing litigation in this Court and their scores of appeals in the District Court and the Fifth Circuit. If Movants want to curtail the accrual of legal fees and "put this bankruptcy to rest," they should stop their vexatious litigation.

**Conclusion**

17. For the reasons set forth above and in the Objection, this Court should deny the Valuation Motion and grant Highland such other relief as is just and proper.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

---

[33] The Dondero entities have taken and continue to prosecute myriad appeals up and down the federal court system. Undeterred by the loss of nearly every single appeal, the Dondero entities have already indicated that they will seek *certiorari* from the Supreme Court on the Fifth Circuit's affirmance of the Confirmation Order.

Dated: November 8, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Jordan A. Kroop (NY Bar No. 2680882)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
      jmorris@pszjlaw.com
      gdemo@pszjlaw.com
      jkroop@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

13