PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

**THE HIGHLAND PARTIES' REPLY IN FURTHER SUPPORT OF MOTION
TO QUASH SUBPOENAS SERVED BY THE DUGABOY INVESTMENT
<u>TRUST OR FOR A PROTECTIVE ORDER</u>**

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

DOCS_NY:46701.7 36027/003

The Highland Parties, by and through their undersigned counsel, hereby file this reply (the "Reply") in further support of their Motion to Quash and in response to the objections (together, the "Objections") to the Motion to Quash filed by Dugaboy [Docket No. 3602] (the "Dugaboy Objection") and Hunter Mountain Investment Trust ("HMIT") [Docket No. 3605] (the "HMIT Objection").[1] As and for their Reply, the Highland Parties respectfully submit the following:

## REPLY

1.  In its Objection, Dugaboy effectively admits that the Subpoenas are a vehicle to obtain the very relief sought in the Valuation Motion:

> If the Court rules . . . that Dugaboy is entitled to the information, then there is no reason to quash the Subpoenas; instead, they should become effective and enforceable. On the other hand, if the Court denies Dugaboy access to the information it seeks, then the issues raised in the Motion to Quash will be moot.

Dugaboy Objection ¶ 3.[2]

2.  In this instance, Dugaboy has it exactly right. The Court should first decide whether Dugaboy has a legal or equitable right to the information sought in the context of the Valuation Motion. The reason is simple: there is no substantive difference between the relief sought in the Valuation Motion and the information sought in the Subpoenas (or, at least there shouldn't be).[3]

---

[1] Capitalized terms not defined in this Reply shall have the meanings ascribed to them in *The Highland Parties' Motion to Quash Subpoenas Served by the Dugaboy Investment Trust* [Docket No. 3520] (the "Motion to Quash").

[2] The Parties agree that if, and only if, the Court denies the Motion to Quash, the Parties will then address the propriety of the specific requests set forth in the Subpoenas. *See e.g.*, Motion to Quash ¶ 5, n.3 ("If the Court grants the Valuation Motion, the Highland Parties should be permitted to object to the scope of the requests within the Subpoenas as it deems appropriate"); HMIT Objection ¶ 8 ("Once entitled [sic] to discovery on these issues is established, the parties can work towards a consensual scope of subpoenas to meet all requirements under the applicable Federal Rules of Bankruptcy Procedure").

[3] In fact, the Subpoenas are more akin to a Rule 2004 "fishing expedition" insofar as Dugaboy seeks information far beyond that needed to determine whether it is "in the money" today and far beyond anything any member of the Claimant Trust Committee or Claimant Trust Beneficiary could ever receive under the Claimant Trust Agreement. By way of example only, Dugaboy seeks various bank and investment account statements; audited and unaudited financial statements; reports that "reflect the value of any beneficiary's interest in the Claimant Trust;" governing documents; and documents concerning compensation matters. *See generally* Morris Decl. Exhibits 2-4. None of this is needed to determine whether Dugaboy is "in the money" today; indeed, the over-reaching and unjustifiable scope of the requests serves only to call into further question the motives of Dugaboy and HMIT.

3. If the Court hears and denies the Motion to Quash first, and Highland is required to comply with the Subpoenas before the Valuation Motion is determined, then the Valuation Motion would effectively be rendered moot as it would serve no useful purpose. That would make no sense.

4. As a legal matter, neither Dugaboy nor HMIT would have any right to serve the Subpoenas in the absence of a contested matter or adversary proceeding. Yet, they are using the Valuation Motion as a subterfuge to "serve discovery" for information they otherwise have no legal or equitable right to obtain and that constitutes the ultimate relief sought in the Valuation Motion (and then some). That is the foundation of the holdings in the cases Highland cited that both Dugaboy and HMIT simply ignore. *See* Motion to Quash ¶ 23.[4]

5. As Highland's objection to the Valuation Motion establishes, whether or not Dugaboy and HMIT are "in the money" today, based upon some current valuation of remaining assets, does not give them the rights of beneficiaries under the Claimant Trust Agreement. As the Claimant Trust Agreement makes clear, Dugaboy and HMIT only become Claimant Trust Beneficiaries after the Claimant Trustee certifies that Classes 8 and 9 have been paid in full and all disputed claims in Class 8 and 9 have been resolved, an event that will not occur until Mr. Dondero ends his relentless and vindictive pursuit of litigation. Until that time, no fiduciary duties are owed to Dugaboy or HMIT, and neither of them are entitled to any of the Trust's sensitive and confidential information, whether under the Claimant Trust Agreement, the Bankruptcy Code, at law or in equity.

---

[4] *See Nageire v. Ortega T. (In re Ortega T.)*, 562 B.R. 538, 543 (Bankr. S.D. Fla. 2016) (accounting premature until court determined that entities in issue were property of the estate); *Robinson v. Miller*, No. 2:11-cv-56-JHR, 2011 U.S. Dist. LEXIS 71149, at *25 (D. Me. June 30, 2011) (Plaintiff not entitled to discovery on accounting claim before establishing right to accounting); *Arthur Finnieston, Inc. v. Pratt*, 673 So. 2d 560, 562 (Fla. Dist. Ct. App. 1996) ("It is well established that discovery as to an accounting must be deferred until the preliminary issue of the right to an accounting is settled") (internal quotation marks omitted)).

DOCS_NY:46701.7 36027/003

6. Stripped to its core, Dugaboy and HMIT are improperly using the Valuation Motion as a pretext to get what they want through "discovery" without making any showing of entitlement. As the Highland Parties pointed out in the Motion to Quash, that puts the cart before the horse. Motion to Quash ¶ 1.

7. Next, Dugaboy contends that issues of confidentiality and burden are no barriers to disclosure here because "transparency" is the hallmark of bankruptcy proceedings and "the Debtor should have all the information readily available." Dugaboy Objection ¶¶ 7-9. But Highland's Plan became effective long ago; consequently, Highland is no longer subject to the same disclosure obligations it had as a debtor in bankruptcy nor is there any expectation of "transparency" under the circumstances. The Reorganized Debtor and Claimant Trust have complied with their post-confirmation reporting obligations by filing periodic Post Confirmation Reports using the format provided for in the United States Trustee Guidelines, and neither Dugaboy nor HMIT contend otherwise. Moreover, the "burden" is not limited to the effort it would take to produce responsive information,[5] but extends to the burden and risk of providing highly sensitive and confidential information to parties with no legal or equitable right to receive it and whose motives are highly questionable, particularly where Highland is in the midst of executing its asset-monetization plan.[6]

---

[5] As mentioned above (*see supra* n. 3), however, Dugaboy seeks information far beyond that which is necessary to determine if it is "in the money" today. Thus, while Highland reserves the right to lodge specific objections when and if the Court denies the Motion to Quash, the "burden" of complying with Dugaboy's requests—measured in time, money, and effort—would undoubtedly be substantial.

[6] Dugaboy asserts that "at the time Dugaboy issued the subpoenas, it assumed that the Court would consider the issues of Dugaboy's entitlement to the information sought and hear evidence regarding valuation simultaneously. Instead, ***the Court converted*** the hearing on the Valuation Motion into a status conference" and the Highland Parties thereafter sought to have the Valuation Motion heard first. Dugaboy Objection ¶3 (emphasis added). A few observations about Dugaboy's assertions are warranted. ***First***, Dugaboy again proves the Highland Parties' point: the Court cannot possibly "hear evidence regarding valuation" (assuming it is needed, which it is not) without having first made a determination of "Dugaboy's entitlement to the information sought." ***Second***, Dugaboy's assertion that the Court was responsible for "convert[ing] the hearing on the Valuation Motion into a status conference" is disrespectful, at best. As Dugaboy knows, its counsel worked with HMIT's counsel and Highland's counsel to jointly draft and file the *Notice of Hearing and Briefing Schedule* [Docket No. 3543] ("the "Notice"). The Notice included a briefing schedule as well as **the parties' agreement** that the Valuation Motion and the Motion to Quash would be set for a status conference on November 15, 2022. The Court played no role in addressing any of the issues set forth in the Notice.

3

8. For its part, HMIT makes two substantive arguments in support of enforcing the Subpoenas, both of which misstate Highland's position and neither of which has any merit.

9. *First*, HMIT contends that, "according to the Highland Parties, there is no amount of Assets that could ever satisfy the Obligations so **no party** is allowed discovery into what the Assets and Obligations are." HMIT Objection ¶ 4 (emphasis added). Intentionally or otherwise, HMIT mischaracterizes the Highland Parties' position as they never made such a sweeping assertion. Instead, the Highland Parties established that **neither Dugaboy nor HMIT** has a legal or equitable right to Highland's confidential information concerning its assets and finances. *See generally Reorganized Debtor's Objection to Motion for Determination of Value* [Docket No. 3465] ("Highland's Objection"). The analysis is straight-forward:

- There is no dispute that under section 3.12(b) of the Claimant Trust Agreement, the Claimant Oversight Board and Claimant Trust Beneficiaries were granted certain limited information rights, subject to the terms and conditions of the Claimant Trust Agreement.

- There is no dispute that neither Dugaboy nor HMIT is a member of the Claimant Oversight Board nor a Claimant Trust Beneficiary and therefore have no rights under section 3.12(b).

- There is no dispute that until the Contingent Trust Interests held by Dugaboy and HMIT vest, if they ever do, they are not owed any fiduciary duty by the Claimant Trustee and "shall not have any rights under" the Claimant Trust Agreement (Morris Decl. Ex. 5 §5.1(c)).

- Thus, while certain "parties" (*i.e.*, members of the Claimant Oversight Board and Claimant Trust Beneficiaries) have limited information rights (and therefore no need for "discovery"), neither Dugaboy nor HMIT are among them.

- This contested matter proves the point: Unlike members of the Claimant Oversight Board and Claimant Trust Beneficiaries who possess certain information rights (again, subject to the terms of the Claimant Trust Agreement), Dugaboy and HMIT were forced to file the Valuation Motion and make "equitable" arguments in support thereof.[7]

---

[7] *See The Dugaboy Investment Trust's Reply in Support of Its Motion for Determination of Value* [Docket No. 3603] ¶3 ("It is axiomatic that bankruptcy courts are courts of equity. And for that reason, parties in interest frequently ask the courts to award relief that is fair and equitable.")

4

DOCS_NY:46701.7 36027/003

10. In short, HMIT's attempt to treat itself as if it was a member of the Claimant Oversight Board or a Claimant Trust Beneficiary—parties with limited information rights regardless of asset values—fails because it is neither.

11. *Second*, HMIT also mischaracterizes the Highland Parties' position as being that the "Motion for Valuation should be denied because there are not enough Assets" and then uses that false narrative to contend that it needs discovery to defend against it. HMIT Objection ¶ 6.

12. HMIT's machinations miss the mark. Highland never took a position on the current value of the assets. Instead, it pointed out that "asset values" are irrelevant: "regardless of the value at which the assets are monetized, creditors and senior equity holders will not be paid in full until the threat of Mr. Dondero's continued pursuit of his 'litigation strategy' ends."[8] As long as Mr. Dondero pursues litigation, the Claimant Trustee is obligated to reserve amounts sufficient to defend the Trust and indemnified parties and satisfy any judgments that may be entered.[9]

13. In the end, HMIT's burden is to establish a legal or equitable right to the information it seeks. HMIT's ability to meet that burden will be determined by the terms of the Claimant Trust Agreement and the equities, not by estimates of current asset values or whether HMIT or Dugaboy are currently "in the money."

---

[8] *Reorganized Debtor's Objection to Motion for Determination of Value* [Docket No. 3465] ¶¶ 4, 21-23 ("Highland's Objection").

[9] Mr. Dondero's intention to pursue anyone acting on behalf of the Reorganized Debtor, the Claimant Trust, and the Litigation Sub-Trust is evidenced by his continued efforts, at any cost, to seek reversal of the Fifth Circuit's approval of the Plan's gatekeeper provision solely so that he and his affiliates can bring meritless claims against such parties in courts other than this Court. Indeed, Mr. Dondero and his affiliates have indicated they intend to file a petition for *writ of certiorari* with the United States Supreme Court.

5

DOCS_NY:46701.7 36027/003

**PRAYER**

WHEREFORE, the Highland Parties reiterate their request that the Court enter an order quashing the Subpoenas, or, alternatively, issuing a protective order adjourning this Motion to Quash until 30 days after its order on the Valuation Motion becomes final and non-appealable.

[*Remainder of Page Intentionally Blank*]

Dated: November 8, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:    jpomerantz@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

7