# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
January 11, 2023
Lyle W. Cayce
Clerk

No. 22-10189

---

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P.

*Debtor*,

HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; NEXPOINT ADVISORS, L.P.; THE DUGABOY INVESTMENT TRUST,

*Appellants*,

*versus*

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-1895

---

Before KING, STEWART, and HAYNES, *Circuit Judges*.

KING, *Circuit Judge*:

  Following the bankruptcy court's confirmation of its reorganization plan, Highland Capital Management, L.P. filed a motion with the bankruptcy court seeking entry of an order authorizing the creation of an indemnity sub-trust. Over several objections, the bankruptcy court entered an order

Case 19-34054-sgj11 Doc 3658 Filed 02/08/23 Entered 02/08/23 15:04:01 Desc
Case 3:21-cv-01895-D Document 52 Filed 02/06/23 Page 2 of 17 PageID 4726
Main Document Page 2 of 17

No. 22-10189

approving the motion. Several objectors appealed, arguing that the order impermissibly modified the plan. The district court affirmed the bankruptcy court's order and dismissed several of the appellants from the appeal. The appellants then sought review in this court. We DISMISS IN PART the appeal and AFFIRM the district court's judgment.

## I.

### A. The Parties

Highland Capital Management, L.P. ("Highland Capital") was co-founded in 1993 by James Dondero and Mark Okada. It was a multibillion-dollar global investment advisor that operated through a complex set of entities doing business under the Highland umbrella. Prior to plan confirmation, Appellant Dugaboy Investment Trust ("Dugaboy"), a trust created to manage some of Dondero's assets, possessed a fractional (0.1866%) limited partnership interest in Highland Capital; this interest was canceled under the confirmed plan.

Dondero also manages the other appellants, which were two of Highland Capital's clients—Highland Capital Management Fund Advisors, L.P. ("HCMFA") and NexPoint Advisors, L.P. ("NexPoint"). Like Highland Capital, HCMFA and NexPoint serviced and advised large, publicly traded investment funds.

### B. The Reorganization Plan

In October 2019, Highland Capital filed for Chapter 11 bankruptcy in the District of Delaware due to significant business litigation claims that it faced. In December 2019, the bankruptcy court transferred the case to the Northern District of Texas.

The reorganization of Highland Capital was negotiated by a four-member Unsecured Creditors' Committee (the "Committee"). Early in this

Case 19-34054-sgj11 Doc 3658 Filed 02/08/23 Entered 02/08/23 15:04:02 Desc
Case 3:21-cv-01895-D Main Document 52 Filed 02/08/23 Page 3 of 17   Page 3 of 17   PageID 4727

No. 22-10189

process, the Committee sought to appoint a Chapter 11 trustee due to its concerns over and distrust of Dondero. After many weeks of negotiation, the Committee and Dondero reached a corporate governance settlement agreement whereby Dondero relinquished control of Highland Capital and resigned his positions as an officer and director. As part of the settlement, three independent directors were chosen to carry Highland Capital through reorganization. The bankruptcy court approved the settlement in January 2020. It later appointed James Seery, Jr., one of the independent directors, as Highland Capital's Chief Executive Officer, among other titles.

In August 2020, the independent directors, with the support of the Committee, filed the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (the "Plan"). This court previously sketched the basic structure of the Plan:

> The Plan works like this: It dissolves the Committee, and creates four entities—the Claimant Trust, the Reorganized Debtor, HCMLP GP LLC,[1] and the Litigation Sub-Trust. Administered by its trustee Seery, the Claimant Trust "wind[s]-down" Highland Capital's estate over approximately three years by liquidating its assets and issuing distributions to class-8 and -9 claimants as trust beneficiaries. Highland Capital vests its ongoing servicing agreements with the Reorganized Debtor, which "among other things" continues to manage the CLOs [collateral loan obligations] and other investment portfolios. The Reorganized Debtor's only general partner is HCMLP GP LLC. And the Litigation Sub-

---

[1] The Plan calls this entity "New GP LLC," but it was later named HCMLP GP LLC. For the sake of clarity, we use HCMLP GP LLC.

3

No. 22-10189

> Trust resolves pending claims against Highland Capital under the direction of its trustee Marc Kirschner.
>
> The whole operation is overseen by a Claimant Trust Oversight Board (the "Oversight Board") comprised of four creditor representatives and one restructuring advisor. The Claimant Trust wholly owns the limited partnership interests in the Reorganized Debtor, HCMLP GP LLC, and the Litigation Sub-Trust. The Claimant Trust (and its interests) will dissolve either at the soonest of three years after the effective date (August 2024) or (1) when it is unlikely to obtain additional proceeds to justify further action, (2) all claims and objections are resolved, (3) all distributions are made, and (4) the Reorganized Debtor is dissolved.

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt. L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 426–27 (5th Cir. 2022) (footnote omitted).

The Plan also includes several conditions precedent that may be waived in whole or in part by Highland Capital, including a condition that Highland Capital shall obtain directors' and officers' ("D&O") insurance coverage acceptable to it, the Committee, the Oversight Board, the Claimant Trustee, and the Litigation Trustee. The bankruptcy court found that the absence of such insurance, which protects the personal assets of directors and officers against lawsuits arising from actions taken as part of their duties, would present unacceptable risks to parties, like the independent directors, because of Dondero's continued litigiousness.

In February 2021, the bankruptcy court confirmed the Plan over several remaining objections by Dondero and Dondero-owned or -controlled entities. The confirmation order roundly criticized Dondero's behavior before and during the bankruptcy proceedings and deduced that Dondero

Case 19-34054-sgj11 Doc 3658 Filed 02/08/23 Entered 02/08/23 15:34:02 Desc
Case 3:21-cv-01895-D Document 52 Filed 02/02/23 Page 5 of 17 PageID 4729

No. 22-10189

was a serial litigator whose objections to the Plan were not made in good faith. *Id.* at 428. It also approved the Plan's voting and confirmation procedures and its treatment of dissenting classes, and held that the Plan complied with the statutory requirements for confirmation. *Id.* Dondero and a web of Highland-related entities moved to directly appeal the confirmation order to this court, which the bankruptcy court granted. *Id.* In September 2022, we affirmed the Plan in all respects except one, concluding that the Plan exculpated certain non-debtors beyond the bankruptcy court's authority. *Id.* at 429.

### C. The Indemnity Sub-Trust Motion

While that appeal was ongoing, disputes surrounding the Plan's implementation continued before the bankruptcy court. According to Seery, the appeal of the confirmation order made it more difficult for Highland Capital to secure D&O insurance because of the additional risk it presented. The only D&O insurance that Highland Capital could have secured at that time was, in Seery's view, insufficient because of its coverage gaps and cost. Highland Capital and the Committee decided to investigate alternative structures, and they determined that the Indemnity Sub-Trust would provide the same protections as the D&O insurance considered by the Plan.

On June 25, 2021, Highland Capital filed a motion with the bankruptcy court for entry of an order authorizing the creation of the Indemnity Sub-Trust. The Indemnity Sub-Trust was contemplated as a mechanism to secure the indemnity obligations of the Claimant Trust, the Litigation Trust, and the Reorganized Debtor, serving as a source of claim indemnification only in the event that one of these entities did not pay such claims. Under the proposal, the Claimant Trust would fund the Indemnity Sub-Trust with $2.5 million in cash and a funding note in the amount of $22.5 million. The Claimant Trust, the Litigation Sub-Trust, and the Reorganized Debtor

Case 19-34054-sgj11 Doc 3658 Filed 02/08/23 Entered 02/08/23 15:34:02 Desc
Case 3:21-cv-01895-D Document 52 Filed 02/02/23 Page 5 of 17 PageID 4729

5

would be jointly and severally liable for the indebtedness evidenced by the note.

Dugaboy, NexPoint, and HCMFA (collectively, "Appellants"), as well as Dondero, objected to the motion, arguing that it was a modification to the Plan requiring solicitation, voting, and confirmation under § 1127(b) of the Bankruptcy Code. The bankruptcy court disagreed and granted the motion in an order authorizing the creation of the Indemnity Sub-Trust on July 21, 2021 (the "Order"). It determined that the creation of the Indemnity Sub-Trust was within the literal terms of the Plan because the Plan "contained a provision addressing that a reserve might be established for potential indemnification claims"; the Claimant Trust Agreement, the Litigation Trust Agreement, and the Limited Partnership Agreement for the Reorganized Debtor contemplated it; and the Indemnity Sub-Trust was not "materially astray from the concepts built into the plan." It concluded that the Indemnity Sub-Trust was within the bounds of the Plan and thus not a modification. Lastly, it held that the creation of the Indemnity Sub-Trust was a valid exercise of business judgment as required by § 363(b)(1) of the Bankruptcy Code.

### D. The Appeal

Appellants appealed the Order to the district court, arguing that it was an impermissible Plan modification. Highland Capital moved to dismiss the appeal as equitably and constitutionally moot.

The district court dismissed the appeal in part for lack of prudential standing and affirmed the Order on January 28, 2022. It held that HCMFA and Dugaboy lacked standing and dismissed their appeals, but it reached the merits of Appellants' claim because NexPoint possessed standing. On the merits, the district court held that the Order was not a modification because

No. 22-10189

it did not alter the parties' rights, obligations, and expectations under the Plan.

Appellants timely appealed to this court, contesting the district court's ruling that the Order was not a Plan modification and that HCMFA and Dugaboy lacked standing to pursue the appeal. Highland Capital argues that the Order did not modify the Plan and that HCMFA and Dugaboy failed to preserve for appellate review the district court's dismissal of their appeal.

## II.

"We review the decision of a district court, sitting in its appellate capacity, by applying the same standards of review to the bankruptcy court's finding of fact and conclusions of law as applied by the district court." *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 600 (5th Cir. 2011). We review the bankruptcy court's conclusions of law, as well as mixed questions of law and fact, *de novo*, and the bankruptcy court's findings of fact for clear error. *Id.* at 601. We review issues of standing *de novo*. *Dean v. Seidel (In re Dean)*, 18 F.4th 842, 844 (5th Cir. 2021).

## III.

Bankruptcy Rule 8009—previously Rule 8006—requires that, in an appeal to a district court or bankruptcy appellate panel, "[t]he appellant must file with the bankruptcy clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented." FED. R. BANKR. P. 8009(a)(1)(A). A similar rule governs appeals from a district court to an appellate court in bankruptcy cases and requires that "the appellant must file with the clerk possessing the record assembled in accordance with Bankruptcy Rule 8009—and serve on the appellee—a statement of the issues to be presented on appeal and a designation of the record to be certified and made available to the circuit clerk." FED. R. APP. P. 6(b)(2)(B)(i). We have previously held that, "even

7

Case 19-34054-sgj11 Doc 3658 Filed 02/08/23 Entered 02/08/23 15:04:01 Desc
Case 3:21-cv-01895-D Document 52 Filed 02/02/23 Page 8 of 17 PageID 4732
Main Document Page 8 of 17

No. 22-10189

if an issue is argued in the bankruptcy court and ruled on by that court, it is not preserved for appeal under Bankruptcy Rule 8006 unless the appellant includes the issue in its statement of issues on appeal." *Smith ex rel. McCombs v. H.D. Smith Wholesale Drug Co. (In re McCombs)*, 659 F.3d 503, 510 (5th Cir. 2011) (quoting *Zimmermann v. Jenkins (In re GGM, P.C.)*, 165 F.3d 1026, 1032 (5th Cir. 1999)). In such cases, "[t]he issue is waived on subsequent appeal to the Fifth Circuit, even if the issue was argued before the district court." *Id.*

Appellants timely filed a statement of the issues on appeal, which we must consider to determine whether they properly preserved for appeal the issues and arguments contained in their briefs. Appellants' statement of the issues on appeal presents the following issues:

> 1. Whether the District Court erred by affirming the *Order Approving Debtor's Motion for Entry of an Order (I) Authorizing the (A) Creation of an Indemnity Subtrust and (B) Entry into an Indemnity Trust Agreement and (II) Granting Related Relief* (the "Order"), entered by the Bankruptcy Court on July 21, 2021 in the above captioned bankruptcy case.
>
> 2. Whether the relief requested and granted in the *Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to (A) Enter into Exit Financing Agreement in Aid of Confirmed Chapter 11 Plan and (B) Incur and Pay Related Fees and Expenses, and (III) Granting Related Relief* (the "Motion") constituted a plan modification.
>
> 3. Whether the relief requested and granted in the Motion satisfied the requirements of 11 U.S.C. §§ 1122, 1123, 1125 and 1127.

No. 22-10189

    4.    Whether the Bankruptcy Court otherwise erred by granting the Motion.

By contrast, in their appellate brief Appellants state and argue, as relevant here, the following issue: "Whether the District Court erred by affirming the Indemnity Trust Order, entered by the Bankruptcy Court on July 21, 2021, including, without limitation, by (a) holding that the Indemnity Trust Order did not effectuate a plan modification; and (b) holding that HCMFA lacked standing to appeal."[2]

The parties dispute whether Appellants preserved issue (b) in their appellate brief, namely the issue of the district court's dismissal of the appeal as to Dugaboy and HCMFA for lack of standing. Highland Capital asserts that Appellants have not preserved this issue for appeal because they did not mention this issue in their statement of the issues on appeal. We agree. As we have previously held, "the rules regarding preservation of issues on appeal in bankruptcy cases apply with equal force regardless of whether the appeal is from the bankruptcy court to the district court . . . from the district court to the court of appeals . . . or from the bankruptcy court to the court of appeals"—in other words, Appellants' "statement of issues must be considered to determine whether [they] properly preserved for appeal the issues and arguments contained in [their] brief." *Id.* at 511.

As relevant here, Appellants' statement of the issues on appeal includes the district court's affirmance of the Order; however, it does not include the district court's partial dismissal of the appeal on the basis that HCMFA and Dugaboy lacked standing. These are separate issues—in fact, they are separate decrees—and Appellants' statement of the issues on appeal

---

[2] In separate briefing, Dugaboy challenged solely the portion of the district court's opinion holding that Dugaboy lacked standing to pursue the appeal.

9

Case 19-34054-sgj11 Doc 3658-5 Filed 03/02/23    Entered 03/02/23 15:02:02    Desc
Case 3:21-cv-01895-D   Main Document    Page 20 of 27Filed 02/02/23    Page 10 of 17    PageID 4734

No. 22-10189

does not fairly encompass the separate issue of the district court's dismissal for lack of standing. *See Galaz v. Katona (In re Galaz)*, 841 F.3d 316, 324–25 (5th Cir. 2016) (rejecting the notion that we should construe the statement of the issues on appeal broadly). Therefore, Appellants did not preserve for appeal a challenge to the district court's partial dismissal below for lack of standing. The appeals of HCMFA and Dugaboy remain dismissed below and, for this reason, they must be dismissed from the current appeal as well.

Unlike HCMFA and Dugaboy, NexPoint was not dismissed from the appeal below. The district court determined that NexPoint had standing to pursue the appeal, and the parties do not contest this issue. Nonetheless, we may consider prudential standing issues *sua sponte*. *Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417–18 (5th Cir. 2012). "[S]tanding to appeal a bankruptcy court order is, of necessity, quite limited." *In re Dean*, 18 F.4th at 844 (quoting *Furlough v. Cage (In re Technicool Sys., Inc.)*, 896 F.3d 382, 385 (5th Cir. 2018)). This circuit uses the "person aggrieved" standard to determine whether a party has standing to appeal a bankruptcy court order. *Id.*; *see also Gibbs & Bruns LLP v. Coho Energy Inc. (In re Coho Energy Inc.)*, 395 F.3d 198, 202 (5th Cir. 2004). This standard "is an even more exacting standard than traditional constitutional standing," *In re Dean*, 18 F.4th at 844 (quoting *Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 366 (5th Cir. 2015)), as it requires an appellant to show she is "directly, adversely, and financially impacted by a bankruptcy order," *id.* (quoting *In re Technicool*, 896 F.3d at 384). When this appeal was initiated, NexPoint possessed the claim of Hunter Covitz valued at $250,000.[3] This claim, though small,

---

[3] The claim was disallowed and expunged by the bankruptcy court on January 13, 2022. However, this order has been appealed, and the district court reviewing the order disallowing this claim has not yet issued a ruling. For this reason, the bankruptcy court's order is not final, and NexPoint still possesses the claim for the purposes of this appeal. *Cf. Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 148 (2009) (holding that a bankruptcy court

Case 19-34054-sgj11 Doc 3658 Filed 03/02/23 Entered 03/02/23 15:02:01 Desc
Case 3:21-cv-01895-D Main Document Filed 02/02/23 Page 11 of 17 PageID 4735

No. 22-10189

requires the Claimant Trust to reserve funds against it, which makes NexPoint a person aggrieved by the Order. Accordingly, NexPoint has standing, and we proceed to the merits.

## IV.

Appellants argue that the Order impermissibly effectuated a modification to the Plan previously approved by the bankruptcy court. We disagree and affirm.

Under § 1127(b) of the Bankruptcy Code, "the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan," if "the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title." 11 U.S.C. § 1127(b). Plan modifications must comply with § 1125, which requires disclosure to claimholders and solicitation of their acceptance or rejection of the proposed modifications. *Id.* §§ 1125, 1127(c). Of course, not every proposed post-confirmation action by the reorganized debtor is a plan modification. Although the Bankruptcy Code does not define "modification," we have previously held that post-confirmation proposals constitute modifications in cases where they "would alter the parties' rights, obligations, and expectations under the plan." *U.S. Brass Corp. v. Travelers Ins. Grp. (In re U.S. Brass Corp.)*, 301 F.3d 296, 309 (5th Cir. 2002).

Appellants argue that the Order alters the parties' rights, obligations, and expectations under the Plan in three ways: first, the Order requires the Claimant Trust to indemnify numerous parties beyond those authorized by

---

order becomes final "on direct review" by the district court); *Okla. State. Treasurer v. Linn Operating, Inc. (In re Linn Energy, L.L.C.)*, 927 F.3d 862, 866 (5th Cir. 2019) (describing final bankruptcy orders as "orders that are affirmed upon direct review, or . . . not appealed or contested").

No. 22-10189

the Plan; second, the creation of a trust is different from the establishment of a reserve and is thus not contemplated by the Plan; and third, Highland Capital's filing of the motion with the bankruptcy court necessarily admits that it sought to modify the Plan. But Appellants agree that, if the motion is not a Plan modification, then the bankruptcy court properly exercised its discretion to enter the Order.

Highland Capital disagrees and instead characterizes the Order as one of several permissible ways it could have implemented the Plan. In its view, the Indemnity Sub-Trust accomplishes the same objective as D&O insurance and does not alter any party's rights, obligations, or expectations under the Plan.

The Claimant Trust Agreement, which was incorporated into and fully enforceable under the Plan, outlines several parties that shall be indemnified by the Claimant Trust: the Claimant Trustee, the Delaware Trustee,[4] the Oversight Board, and all past and present members of the Oversight Board. Appellants argue that the Plan permits the Claimant Trust to indemnify only these parties, while the Order requires the Claimant Trust to also indemnify the Reorganized Debtor's professionals, officers, and employees. Greater indemnification obligations, they contend, risk reducing creditor recoveries because they entangle the Claimant Trust's assets with the Reorganized Debtor's post-confirmation activity.[5] Even if the Indemnity Sub-Trust does not indemnify the Reorganized Debtor's professionals,

---

[4] The Delaware Trustee has the power and authority to accept legal process served on the Claimant Trust in Delaware and to execute and file any required certificates with Delaware's Office of the Secretary of State.

[5] Appellants and Highland Capital agree that the Claimant Trust is authorized to indemnify the parties indemnified under the Litigation Sub-Trust Agreement, who are also beneficiaries under the Indemnity Sub-Trust.

12

Case 19-34054-sgj11 Doc 3658 Filed 03/02/23 Entered 03/02/23 15:02/02/2023 Desc
Case 3:21-cv-01895-D Main Document Filed 02/02/23 Page 13 of 17 PageID 4737

No. 22-10189

officers, and employees, Appellants contend that up to $25 million of creditor recoveries will be irrevocably transferred to the Indemnity Sub-Trust in favor of these potential obligations.

However, the Plan approves of such asset sharing; the Claimant Trust's assets may be employed for the benefit of the Reorganized Debtor without any relevant limitations. Under the Claimant Trust Agreement, the Claimant Trust is permitted to withhold funds from disbursement that, among other things, are "necessary to pay or reserve for reasonably incurred or anticipated Claimant Trust Expenses and any other expenses incurred by the Claimant Trust." Claimant Trust Expenses encompass the "costs, expenses, liabilities, and obligations incurred by the Claimant Trust and/or the Claimant Trustee in administering and conducting the affairs of the Claimant Trust, and otherwise carrying out the terms of the Claimant Trust and the Plan on behalf of the Claimant Trust." As part of its duties under the Plan,[6] the Claimant Trust may "make additional capital contribution to the Partnership," which includes the Reorganized Debtor, if requested by HCMLP GP LLC, which itself is wholly owned by the Claimant Trust. The Plan contains no limitations on such capital contributions in either amount or purpose. Separately, the Plan requires the Claimant Trustee to "exercise and perform the rights, powers, and duties arising from the Claimant Trust's role" as sole member of HCMLP GP LLC and HCMLP GP LLC's role as general partner of the Reorganized Debtor. Such duties include, as relevant here, calling capital from the Claimant Trust to the Reorganized Debtor as necessary. Therefore, the Claimant Trust may contribute capital to the Reorganized Debtor for any purpose, including indemnification. Accordingly, creditors face no greater risk of lost recoveries following the

---

[6] The Reorganized LP Agreement, which lists this requirement, was incorporated by reference into the Plan.

No. 22-10189

Order than they did under the Plan; the Plan always permitted the Claimant Trust to use its assets in this manner.[7]

Appellants also argue that the Plan did not sanction the creation of the Indemnity Sub-Trust. They concede that the Plan allows the Claimant Trust to establish a reserve but aver that the Indemnity Sub-Trust goes far beyond that allowance. In their view, the Indemnity Sub-Trust grants extraneous relief not contemplated by the Plan in several respects: it involves appointing a corporate trustee, who receives indemnification; the Indemnity Trust Administrator may hire her own financial and legal professionals, and the Claimant Trust must pay their fees; beneficiaries have no rights with respect to the administration of the Indemnity Sub-Trust; and it eliminates the Oversight Board's authority over investments held by the Indemnity Sub-Trust.

These arguments are unavailing. The Plan allows for the creation of a reserve and contemplates the use of D&O insurance to provide collateral security supporting the indemnification obligations it outlines. The Indemnity Sub-Trust serves the same purpose and is one of several ways Highland Capital could, as the Plan demands, "reserve or retain any cash . . . reasonably necessary to meet claims and contingent liabilities," including indemnification obligations. By arguing that the Plan did not permit the creation of the Indemnity Sub-Trust, Appellants seek to restrain Highland Capital's exercise of its authority to those actions clearly defined in the Plan. However, that is not the proper inquiry. Instead, we must determine

---

[7] For this reason, Appellants' arguments regarding the irrevocability of the Claimant Trust's $25 million in funding to the Indemnity Sub-Trust are without merit. Even so, the funds are not irrevocable. Once all indemnification rights—which are senior priority obligations to distributions to the Claimant Trust's beneficiaries—have expired, the funds are transferred back to the Claimant Trust.

Case 19-34054-sgj11 Doc 3658 Filed 03/02/23 Entered 03/02/23 15:02:02 Desc
Case 3:21-cv-01895-D Document 52 Filed 02/02/23 Page 15 of 17 PageID 4739

No. 22-10189

whether the use of the Indemnity Sub-Trust, as opposed to a reserve or D&O insurance, alters the parties' rights, obligations, and expectations. *In re U.S. Brass*, 301 F.3d at 309.

In *U.S. Brass*, we considered a confirmed plan of reorganization that provided certain claims "would be resolved in a court of competent jurisdiction and determined by settlement or final judgment" and a subsequent proposed agreement "to liquidate the claims through binding arbitration." *Id.* at 299. We held that the proposed agreement constituted a plan modification for several reasons. Under the plan, the requirement to resolve claims by settlement or final judgment minimized the risk of collusion, whereas arbitration would allow parties to "collusively generate a binding award that is inconsistent with the facts and applicable law" of the approved plan. *Id.* at 308. Moreover, arbitration of claims was not contemplated and negotiated by the parties at plan confirmation—in fact, the insurers were actively concerned with collusive behavior among parties during plan negotiations, and the bankruptcy court decided not to confirm the plan until insurers were satisfied with the plan and withdrew their objections. *Id.* In short, the parties specifically bargained for the right to litigate or settle their claims, and arbitration undercut those bargained-for rights. For that reason, we ruled that the proposed agreement constituted a plan modification.

Here, the record shows that securing funds for indemnification obligations was particularly important for agreement to the Plan. The Plan includes D&O insurance as a waivable condition precedent, and the condition was waived only upon approval of the motion seeking authorization for the creation of the Indemnity Sub-Trust. In Seery's words, it was crucial that the parties "could reserve for, protect, and indemnify the indemnification obligations that each of the trusts and the Reorganized Debtor have to those running it." But the mechanism for providing collateral

15

Case 19-34054-sgj11 Doc 3658 Filed 03/02/23 Entered 03/02/23 15:02:02 Desc
Case 3:21-cv-01895-D Main Document Filed 02/02/23 Page 16 of 17 PageID 4740

No. 22-10189

security was not clearly defined as part of the Plan—D&O insurance was one option, but it also more generally permitted the Claimant Trust to reserve funds for indemnification obligations. The precise contours of the collateral mechanism were not a "bargain" won during Plan negotiations. *See In re U.S. Brass*, 301 F.3d at 308. Rather, indemnification was the bargained-for requirement, and the details were left to be determined. As previously explained, the Order does not alter the parties' rights, obligations, or expectations under the Plan because the Plan permits the Claimant Trust to contribute capital to the Reorganized Debtor for indemnification.

Moreover, the supposed extraneous relief created by the Indemnity Sub-Trust is nothing new. The Indemnity Sub-Trust is an agent of the Claimant Trust, so its employees and appointees are contemplated by the Plan and have rights to payment and indemnification. Indemnification beneficiaries would have no rights with respect to the indemnity funds regardless of whether they were held by the Indemnity Sub-Trust or the other post-confirmation entities. And while the Oversight Board must approve the investment of Claimant Trust Assets (as defined in the Plan), it is not obvious that this includes assets transferred to other entities such as the Indemnity Sub-Trust. Even if it does, Appellants have failed to explain how this alters the rights, obligations, or expectations of the parties; absent Oversight Board approval, the Plan still strictly limits how assets may be invested.

Lastly, Appellants question why Highland Capital filed the motion in the first place, suggesting that there is no reason to file a motion with the bankruptcy court unless the requested relief somehow modifies the Plan. For this argument, they rely upon our statement in *U.S. Brass* that, "if the agreement is indeed consistent with the plan, the question becomes why . . . file the motion for approval." 301 F.3d at 307. Highland Capital answered this question at oral argument. In its view, proceeding by motion during the period between confirmation and the effective date is not unusual.

Case 19-34054-sgj11 Doc 3658 Filed 02/03/23 Entered 02/03/23 15:02:02 Desc
Case 3:21-cv-01895-D Main Document Filed 02/02/23 Page 17 of 17 Page 17 of 17 PageID 4741

No. 22-10189

Nor was it unique in this case: during that period, Highland Capital filed a motion for exit financing with the bankruptcy court, and it was approved. We are satisfied by this explanation in light of the circumstances of this case.

## V.

For the foregoing reasons, the appeal is DISMISSED IN PART and the judgment of the district court is AFFIRMED.

17