

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 27, 2023**

_____
**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § § § | |

## MEMORANDUM OPINION AND ORDER ON REORGANIZED DEBTOR'S MOTION TO CONFORM PLAN [DE # 3503]

### I.       INTRODUCTION

This Memorandum Opinion and Order addresses a *Motion to Conform Plan* [DE # 3503] ("*Motion*") filed by Highland Capital Management, L.P. ("Highland" or the "Reorganized Debtor").[1]  The *Motion* was filed in response to a ruling of the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") in connection with an appeal of the confirmation order on

---

[1] The court will sometimes use the term "Debtor" when referring to Highland during the post-petition/pre-confirmation time period.

Highland's Chapter 11 plan ("Plan"). As further explained herein, the Fifth Circuit affirmed the confirmation order in all respects except the following:  it determined that certain **exculpations** in the Plan, as to certain parties, were impermissible pursuant to section 524(e) of the Bankruptcy Code and should be stricken as to those parties.  More specifically, the Fifth Circuit held that the only parties properly entitled to Plan exculpations were:  the Debtor, the Official Committee of Unsecured Creditors (the "UCC") and its members, and the "Independent Directors"[2] (collectively, the "Properly Exculpated Parties").  The Fifth Circuit then remanded "to the Bankruptcy Court for further proceedings in accordance with the opinion of this Court."[3]

Accordingly, the Reorganized Debtor filed the *Motion*, proposing that the bankruptcy court approve a scaled down defined term for "Exculpated Parties" in the Plan.  This, says the Reorganized Debtor, is all that the Fifth Circuit's mandate required—i.e., a narrowing of the defined universe of persons who received exculpations under the Plan.

Three sets of parties objected to the *Motion*: (a) Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund, and NexPoint Capital, Inc. (the "Funds") [DE # 3539]; (b) the Dugaboy Investment Trust ("Dugaboy")[4] [DE # 3540]; and (c) NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P. (the "Advisors") [DE # 3551].[5]   These objectors argue that the Fifth Circuit's ruling requires more surgery on the Plan than simply narrowing the defined term for "Exculpated Parties."   The Reorganized Debtor disagreed in a Reply [DE # 3566], and the court thereafter held a hearing to allow oral argument. The court gave an oral ruling from the bench at the hearing, stating that the Reorganized Debtor's

---

[2] The Independent Directors—consisting of James P. Seery, Jr., John Dubel, and Retired Bankruptcy Judge Russell Nelms—were appointed by the bankruptcy court and were comparable to "quasi-trustees."

[3] *NexPoint v. Highland Capital Management*, Case No. 21-10449 at DE # 213 (5th Cir. Sep. 12, 2022).

[4] Dugaboy is a family trust of James Dondero ("Mr. Dondero"), the co-founder and former CEO of the Debtor.

[5] It has been conceded at prior hearings that the Advisors are controlled by Mr. Dondero. The court assumes that is still the case.

proposal of simply changing the defined term in the Plan for "Exculpated Parties" would seem to properly address the Fifth Circuit's ruling and mandate, but the parties asked the court to draft a formal written Order providing its reasoning, for the parties' benefit and in case there were appeals of the court's ruling on the *Motion*. This constitutes the court's written ruling.

## II.      RELEVANT BACKGROUND

On October 16, 2019, Highland filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On February 22, 2021, the bankruptcy court entered a Confirmation Order [DE # 1943] confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) [Docket No. 1808] (as subsequently modified, the "Plan"). The Confirmation Order was appealed by the Funds, the Advisors, Dugaboy, the Get Good Trust (the latter of which is another family trust of Mr. Dondero), and Mr. Dondero in his individual capacity ("Appellants") [DE ## 1957, 1966, 1970, 1972]. Appellants' appeal was certified for direct appeal to the Fifth Circuit.

On August 19, 2022, the Fifth Circuit issued an opinion (the "Initial Fifth Circuit Opinion")[6] and a judgment ("Judgment") affirming in substantial part the Confirmation Order, stating that it reversed "only insofar as the plan exculpates certain non-debtors in violation of 11 U.S.C. § 524(e)," and would "strike those few parties from the plan's exculpation, and affirm on all remaining grounds."[7] The Fifth Circuit remanded to the bankruptcy court "for further proceedings in accordance with the opinion of this Court."[8]

---

[6] *NexPoint v. Highland Capital Management*, 2022 WL 3571094, Case No. 21-10449, slip opinion previously available at DE # 194 (5th Cir. Aug. 19, 2022). The Initial Fifth Circuit Opinion was attached to the Funds' objection to the *Motion* as an Exhibit A [DE # 3539].
[7] *Id.* at p. 2.
[8] *Id.*

On September 2, 2022, the Funds filed a short (four-and-one-half pages) motion for rehearing at the Fifth Circuit (the "Motion for Rehearing").[9]  This was on the Friday before Labor Day.  The Funds requested "that the Court narrowly amend the [Initial Fifth Circuit] Opinion in order to confirm the Court's holding that the impermissibly exculpated parties are similarly struck from the protections of the injunction and gatekeeper provisions of the plan (in other words, that such parties cannot constitute 'Protected Parties')."  As later explained, the Plan contained distinct "Exculpation," "Injunctions," and "Gatekeeper" provisions.  On September 7, 2022 (the Tuesday after Labor Day), the Fifth Circuit granted the Motion for Rehearing and, without entertaining responses or oral argument, withdrew the Initial Fifth Circuit Opinion and entered a substituted opinion (the "Final Fifth Circuit Opinion").[10]  The Final Fifth Circuit Opinion *replaced only one sentence* that had been in the Initial Fifth Circuit Opinion:

> ***"The injunction and gatekeeper provisions are, on the other hand, perfectly lawful"***[11]
> with the following sentence:

> ***"We now turn to the Plan's injunction and gatekeeper provisions."***[12]

However, in the Final Fifth Circuit Opinion, same as the Initial Fifth Circuit Opinion, the Fifth Circuit stated that, with regard to the Confirmation Order, the panel would "reverse only insofar as the plan exculpates certain non-debtors in violation of 11 U.S.C. § 524(e), strike those few parties from the plan's exculpation, and affirm on all remaining grounds."[13]  To be clear, no

---

[9] DE # 3539, Exhibit C thereto.

[10] *NexPoint v. Highland Capital Management*, 48 F.4th 419, Case No. 21-10449, slip opinion at DE # 210 (5th Cir. Sep. 7, 2022). The Final Fifth Circuit Opinion was attached to the Funds' objection to the *Motion* as an Exhibit C [DE # 3539]. Most subsequent references to the Final Fifth Circuit Opinion will cite to the published version of it in the West Reporter Service, appearing at 48 F.4th 419.

[11] *See* slip opinion, at p. 27 [DE # 3539, Exhibit A thereto].

[12] *See* Final Fifth Circuit Opinion, slip opinion at p. 28 [DE # 3539, Exhibit C thereto]. 48 F.4th at 438.

[13] 48 F.4th at 424.

findings, discussion, or rulings regarding the injunction and gatekeeper provisions that were in the Initial Fifth Circuit Opinion were disturbed.

The Fifth Circuit's docket reflects that it issued its Judgment and a mandate on September 12, 2022, remanding "to the Bankruptcy Court for further proceedings in accordance with the opinion of this Court."[14]

On October 7, 2022, the Fifth Circuit denied a motion by certain Appellants for a stay of the mandate.[15]

Thereafter, on January 10 and 23, 2023, petitions for *writ of certiorari* to the United States Supreme Court were filed by the Reorganized Debtor and certain Appellants.[16]  There being no stay of the Final Fifth Circuit Opinion or the mandate, this court now issues this ruling on the *Motion*.

## III.    JURISDICTION

The bankruptcy court has jurisdiction to rule on the *Motion* pursuant to the mandate of the Fifth Circuit issued on September 12, 2022.  Furthermore, the underlying statutory authority that is applicable is 11 U.S.C. §§ 105(a) and 1142.

## IV.    THE PLAN PROVISIONS THAT ARE CONCEIVABLY AT ISSUE

To put the relief sought in the *Motion* and the objections thereto into proper context, a review of three sets of Plan provisions is appropriate.  First, the ***exculpation provisions***.  Second, the ***injunction provisions***.  Third, the ***gatekeeping provisions***.  These all had distinct functions;

---

[14] *NexPoint v. Highland Capital Management*, Case No. 21-10449 at DE # 213 (5th Cir. Sep. 12, 2022).
[15] *Id.* at DE # 222 (5th Cir. Oct. 7, 2022).
[16] *Id.* at DE ## 227 & 228 (5th Cir. Jan. 10 & 23, 2023).

they were not in any way redundant. Sometimes they have been collectively referred to as the

"*Protection Provisions*."

        **Exculpations**.  The Plan addressed Exculpation at Article IX.C thereof. The "Exculpation"

provision, in pertinent part, stated as follows:

        Subject in all respects to ARTICLE XII.D of this Plan, to the maximum
extent permitted by applicable law, ***no Exculpated Party will have or incur***, and
each Exculpated Party is hereby exculpated from, any claim, obligation, suit,
judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and ***liability
for conduct occurring on or after the Petition Date*** in connection with or arising
out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation
and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or
confirmation of, the Plan; (iii) the funding or consummation of the Plan (including
the Plan Supplement) or any related agreements, instruments, or other documents,
the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of
any securities issued or to be issued pursuant to the Plan, including the Claimant
Trust Interests, whether or not such Plan Distributions occur following the Effective
Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions,
and documentation in connection with the foregoing clauses (i)-(iv); provided,
however, ***the foregoing will not apply to (a) any acts or omissions of an
Exculpated Party arising out of or related to acts or omissions that constitute bad
faith, fraud, gross negligence, criminal misconduct, or willful misconduct*** or (b)
Strand or any Employee other than with respect to actions taken by such Entities
from the date of appointment of the Independent Directors through the Effective
Date.  This exculpation shall be in addition to, and not in limitation of, all other
releases, indemnities, exculpations, any other applicable law or rules, or any other
provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated
Parties from liability. (Emphasis added.)

        The Plan had a defined term for "Exculpated Parties," at Article I.B.62 that read as follows:

        "**Exculpated Parties**" means, collectively, (i) the Debtor and its successors
and assigns, direct and indirect majority-owned subsidiaries, and the Managed
Funds, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the
Committee, (vi) the members of the Committee (in their official capacities), (vii)
the Professionals retained by the Debtor and the Committee in the Chapter 11 Case,
(viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in
(iv) through (viii); provided, however, that, for the avoidance of doubt, none of
James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries
and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its

subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

Simply stated, the Exculpation Provisions shielded a specified list of parties from any ***negligence liability*** for ***post-petition conduct*** in connection with the Highland Chapter 11 cases. The provisions effectuated ***an absolution of liability*** for the Exculpated Parties—but, again, only for mere negligent conduct occurring on or after the Petition Date and in connection with the case. It is also notable that the Exculpation Provisions deal only with pre-Effective Date Parties (i.e., not any parties created by the terms of the Plan, such as the Litigation Trustee or Claimant Trustee).

**Injunctions.** The Plan addresses Injunctions at Article IX.F, in the first three paragraphs thereof. The "Injunctions" provision, in pertinent part, stated as follows:

> Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, ***from taking any actions to interfere with the implementation or consummation of the Plan***.

> Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting ***the Debtor or the property of the Debtor***, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order ***against the Debtor or the property of the Debtor***, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind ***against the Debtor or the property of the Debtor***, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the ***Debtor or against property or interests in property of the Debtor***, except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy Code, and (v) ***acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.***

The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Debtor, including, ***but not limited to, the Reorganized Debtor, the Litigation Sub-Trust, and the Claimant Trust and their respective property and interests in property***. (Emphasis added.)

The Plan had a defined term for "Enjoined Parties," at Article I.B.56 that read as follows:

"**Enjoined Parties**" means (i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons[17] of each of the foregoing.

Simply stated, the injunctions were ***not*** a release, or absolution of liability, or exculpation *per se*, but were, rather, an equitable device aimed at: (a) enforcing the discharge of the Debtor; (b) protecting the Debtor's property dealt with by the Plan; and (c) preventing interference with implementation of the Plan.  It was directed to claimants, equity interest holders, those who had participated in the Chapter 11 Case (including Mr. Dondero) and parties related to them.  In sum—similar to so many Chapter 11 plans that this court sees—this provision was "belts and suspenders" to the Plan discharge and was essentially a ***policing mechanism to deter actions in violations of the discharge or otherwise inconsistent with the Plan***.

**Gatekeeper Provisions**.  The Plan set forth gatekeeper provisions in the fourth paragraph of Article IX.F, although the gatekeeper provision did not use this title.  This provision was very

---

[17] "Related Entity" and "Related Persons" were defined terms under the Plan, but the definitions will not be set forth herein, because they are not deemed relevant to the court's analysis.

much part and parcel to the Injunctions (which explains why it is located in the same section of

the Plan).  The provision stated:

> Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party *that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing* without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; provided, however, the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date.  *The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action*.  (Emphasis added.)

The Plan had a defined term for "Protected Parties" as follows:

> "**Protected Parties**" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv)  the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); provided, however, that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy

Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

Notably, the list of "Protected Parties" was not identical to the list of "Exculpated Parties." Namely, the "Protected Parties" list included several parties that were not even in existence prior to confirmation—such as the Claimant Trustee, Claimant Trust Oversight Board, and Litigation Trustee.  In any event, simply put, the Gatekeeper Provision was somewhat of a tool to deal with any future, potential lawsuits that might be deemed to run afoul of the Injunctions. It did not effectuate a release or an absolution of any liability. Rather, as the "gatekeeper" nickname implies, it simply provided that a plaintiff would have to **ask** the gatekeeper before bringing a claim.  No one would be allowed to bring a claim against a defined universe of "Protected Parties" without first asking the bankruptcy court.  The bankruptcy court would have to determine, after notice, that such claim or cause of action represents a colorable claim against a Protected Party and specifically authorize such plaintiff to bring such claim against any such Protected Party.  If the bankruptcy court were to deny permission, then, presumably, such denial could be appealed.

The Confirmation Order addressed Exculpation, the Injunctions, and the Gatekeeper Provisions at length at pages 48-59.

V.     **THE RELIEF SOUGHT IN THE MOTION TO CONFORM PLAN**

As noted earlier, in the *Motion*, the Reorganized Debtor proposes that only one change is needed to make the Plan compliant with the Fifth Circuit's ruling: narrow the defined term for "Exculpated Parties" to read as follows:

"Exculpated Parties" means, collectively, (i) the Debtor, (ii) the Independent Directors, (iii) the Committee, and (iv) members of the Committee (in their official capacities).

10

The Reorganized Debtor states that this one simple revision of this defined term "directly addresses all instances of exculpation deemed by the Fifth Circuit to violate section 524(e) of the Bankruptcy Code, and no other changes" are required to conform the Plan and Confirmation Order to the Final Fifth Circuit Opinion.[18]

The Funds' Opposition.  The Funds support the revision of the defined term "Exculpated Parties," as proposed by the Reorganized Debtor, but they argue that the defined term "Protected Parties" must likewise be revised to "fully implement[ ] the mandate of the Fifth Circuit . . . ." [19] The Funds point to their Motion for Rehearing filed at the Fifth Circuit, wherein they expressed concern that "the Court's statement that the injunction and gatekeeper provisions are 'perfectly lawful,' might be argued to mean that the injunction and gatekeeper provisions – without any tailoring – are allowed to stand."[20]  The Funds specifically asked the Fifth Circuit panel to revise its opinion to clarify and "to confirm the Court's holding that the impermissibly exculpated parties are similarly struck from the protections of the injunction and gatekeeper provisions of the Plan (in other words, that such parties cannot constitute 'Protected Parties'), such that the injunction and gatekeeper provisions extend only to Highland Capital, the Committee and its members, and the Independent Directors."[21]  The Funds' argue that the fact that the panel granted the Motion for Rehearing and removed the "perfectly lawful" sentence (replacing it with the sentence noted above) and otherwise left the language unchanged means that the panel agreed with the Funds' interpretation of the Initial Fifth Circuit Opinion that "the parties protected by the injunction and

---

[18] DE # 3503, ¶ 11.
[19] DE # 3539, ¶ 3.
[20] DE # 3539, ¶ 5.
[21] DE # 3539, Exhibit B thereto, at ¶ 3.

gatekeeper provisions (the Protected Parties) must similarly be limited to the Properly Exculpated

Parties – Highland, the Committee and its members, and the Independent Directors."[22]

Accordingly, the Funds request that, in addition to narrowing the defined term "Exculpated

Parties," the bankruptcy court order a similar narrowing of the defined term "Protected Parties" to

read:

> "Protected Parties" means, collectively, (i) the Debtor, (ii) the Independent
> Directors, (iii) the Committee, and (iv) members of the Committee (in their official
> capacities).[23]

Dugaboy's Opposition.  Dugaboy filed a short Joinder simply adopting the arguments of

the Funds.[24]

The Advisors' Opposition.  The Advisors filed an Objection adopting the Funds' Response

but requesting two additional revisions to the Plan.[25]  First, the Advisors proposed fully deleting

the provision in the Injunctions section (Plan, Art. IX.F., third para.) that "purports to enjoin claims

against successors of the Debtor who are not entitled to limited qualified immunity under" the

Final Fifth Circuit Opinion.[26]  Second, the Advisors proposed "carv[ing] out from the gatekeeping

provision of the injunction those suits that are expressly allowed by 28 U.S.C. § 959(a)," by

"amend[ing] the fourth paragraph of Article IX.F of the Plan by excepting from the gatekeeping

provisions actions that relate to the Independent Directors or Debtor 'carrying on business

connected with [their] property' as provided in § 959(a)." With respect to the "carve out" request,

the Advisors point to footnote 18 of the Final Fifth Circuit Opinion, which states, "[W]e also leave

---

[22] DE # 3539, ¶ 14.
[23] DE # 3539, ¶ 19.
[24] DE # 3540.
[25] DE # 3551.
[26] *Id.* at ¶ 6.

the applicability of *Barton*'s[27] limited statutory exception to the bankruptcy and district courts in the first instance."[28]

    <u>Highland's Reply</u>.   Highland replied to all of this by arguing that the Motion for Rehearing—and what the Funds asked for therein—is hugely significant.  The Funds specifically requested, in their Motion for Rehearing, that the Fifth Circuit panel (a) limit the definition of "Protected Parties" in the same way that it did with respect to the parties entitled to exculpation, and (b) "tailor" the injunction and gatekeeper provisions, in order to confirm that the Fifth Circuit meant to narrow the parties covered by the injunctions and gatekeeper provisions of the Plan.  The Fifth Circuit did none of those things when it granted the Motion for Rehearing; it simply deleted the sentence stating that the gatekeeper provisions and injunction are "perfectly lawful" and otherwise left its initial affirmance of the gatekeeper provisions and injunctions intact. Highland argues that "the Fifth Circuit . . . clarified that the Injunction was 'sound' but not 'perfectly lawful'" and that nothing in the Final Fifth Circuit Opinion supports the position that the Fifth Circuit intended to limit the Protected Parties that are protected by the Gatekeeper Provision from "harassing and frivolous litigation." Highland further argues that, since the Gatekeeper Provision is not a release, it does not implicate § 524(e), but is necessary to prevent harassment.

## VI.    RULING ON MOTION TO CONFORM PLAN

    The court grants the request of the Reorganized Debtor, holding that the only thing that needs to be done in response to the Final Fifth Circuit Opinion and mandate is to change the defined term for "Exculpated Parties," at Art. I.B.62 of the Plan as follows:

---

[27] This is, of course, a reference to *Barton v. Barbour*, 104 U.S. 126 (1881).
[28] 48 F.4th at 439 n.18 (citing 28 U.S.C. § 959(a) "(allowing suit, without leave of the appointing court, if the challenged acts relate to the trustee or debtor in possession 'carrying on business connected with [their] property'")).

"'Exculpated Parties' means, collectively, (i) the Debtor, (ii) the Independent Directors, (iii) the Committee, and (iv) the members of the Committee (in their official capacities)."

In so holding, this court has scoured the Final Fifth Circuit Opinion to be clear what language survived and to discern what the Court did or did not find problematic with the Plan Protections. In that regard, this court notes the following:

On Page 429, the Fifth Circuit states:

> We then turn to the merits, conclude the Plan exculpates certain non-debtors beyond the bankruptcy court's authority, and affirm in all other respects.[29]

On Page 432, the Court states:

> We do, however, agree with Appellants that the bankruptcy court exceeded its statutory authority under § 524(e) by exculpating certain non-debtors, and so we reverse and vacate the Plan only to that extent.[30]

On Page 435, the Fifth Circuit states, before launching into a discussion of the various type of Plan Protections:

> The bankruptcy court deemed the provisions legal, necessary under the circumstances, and in the best interest of all parties. We agree, but only in part. Though the injunction and gatekeeping provisions are sound, the exculpation of certain non-debtors exceeds the bankruptcy court's authority. We reverse and vacate that limited portion of the Plan. . . . In a Chapter 11 bankruptcy proceeding, ''discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.'' 11 U.S.C. § 524(e). Contrary to the bankruptcy court's holding, the exculpation here partly runs afoul of that statutory bar on non-debtor discharge by reaching beyond Highland Capital, the Committee, and the Independent Directors. *See Pacific Lumber,* 584 F.3d at 251–53. We must reverse and strike the few unlawful parts of the Plan's exculpation provision.[31]

---

[29] 48 F.4th at 429.
[30] *Id.* at 432.
[31] *Id.* at 435.

On pages 437-438, in wrapping up its discussion of the Exculpation Provisions, the Fifth

Circuit states:

> In sum, our precedent and § 524(e) require any exculpation in a Chapter 11 reorganization plan be limited to the debtor, the creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties, *see Baron*, 914 F.3d at 993. And so, excepting the Independent Directors and the Committee members, the exculpation of non-debtors here was unlawful. Accordingly, the other non-debtor exculpations must be struck from the Plan. *See Pacific Lumber*, 584 F.3d at 253.

> As it stands, the Plan's exculpation provision extends to Highland Capital and its employees and CEO; Strand; the Reorganized Debtor and HCMLP GP LLC; the Independent Directors; the Committee and its members; the Claimant Trust, its trustee, and the members of its Oversight Board; the Litigation Sub-Trust and its trustee; professionals retained by the Highland Capital and the Committee in this case; and all ''Related Persons.'' Consistent with § 524(e), we strike all exculpated parties from the Plan except Highland Capital, the Committee and its members, and the Independent Directors.[32]

On page 438, immediately after the previously quoted language, the next section of the

Final Fifth Circuit Opinion has a subheading "Injunction & Gatekeeper Provisions,"

and then states:

> ***We now turn to the Plan's injunction and gatekeeper provisions.*** Appellants object to the bankruptcy court's injunction as vague and the gatekeeper provision as overbroad. We are unpersuaded.[33]

Note that the bolded sentence above is the only new sentence in the Final Fifth Circuit

Opinion, and it replaced a previous sentence that read: "The injunction and gatekeeper provisions

are on the other hand, perfectly lawful."

---

[32] *Id.* at 437-38.
[33] *Id.* at 438 (emphasis added).

Finally, in the penultimate paragraph of the entire Final Fifth Circuit Opinion, the Fifth

Circuit states:

> In sum, the Plan violates § 524(e), but only insofar as it exculpates and
> enjoins certain non-debtors. The exculpatory order is therefore vacated as to all
> parties except Highland Capital, the Committee and its members, and the
> Independent Directors for conduct within the scope of their duties. We otherwise
> affirm the inclusion of the injunction and the gatekeeper provisions in the Plan.

On balance, this court does not know how it could be clearer, that the Fifth Circuit was

holding that the exculpations of certain parties violated section 524(e), but the other Plan

Protections were "sound."[34]

Of course, this still begs the question: what might the Fifth Circuit have meant in replacing

the sentence ***"The injunction and gatekeeper provisions are on the other hand, perfectly lawful"***

with the sentence "***We now turn to the Plan's injunction and gatekeeper provisions***"?[35]

It is certainly awkward for this court to attempt to be a mind-reader regarding editorial or

wordsmithing decisions undertaken by the Fifth Circuit.  All this court can be sure of is that the

Fifth Circuit declined the Funds' request, in their Motion for Rehearing, to strike or modify the

defined term "Protected Parties" (that pertains to the Gatekeeper Provision) so that it would be

coterminous with the defined term "Exculpated Parties."  The Fifth Circuit did not modify the

Gatekeeper Provision or its applicable definition of "Protected Parties" in any way, let alone in the

manner that the Funds requested.  And the Fifth Circuit did not include anything in its Final Fifth

Circuit Opinion to indicate that the panel agreed with the Funds' analysis.

---

[34] *Id.* at 435.
[35] *Id.* at 438.

Moreover, limiting the definition of "Protected Parties" to be coterminous with the defined term "Exculpated Parties" would mean that the Gatekeeper Provision would have no effect on any conduct that occurs after the Plan Effective Date.  Why?  ***Because the persons included in the defined term "Exculpated Parties"—as now limited by the Fifth Circuit's ruling to include only the Debtor, the UCC, the UCC members, and Independent Directors—are all gone now.***  They all ceased to exist on the Effective Date.  Additionally, the Debtor would not even need a Gatekeeper Provision for pre-Effective Date conduct because the Debtor was discharged. The Gatekeeper Provision is largely forward-looking, to prevent interference with post-Effective-Date management as they consummate the Plan, wind down the assets, and administer the Claimant Trust and the Litigation Sub-Trust. As noted, the defined term for "Protected Parties" includes several parties that did not even exist pre-confirmation such as the Claimant Trustee, Claimant Trust Oversight Board, and Litigation Trustee. It is mostly a tool to deal with any future, potential lawsuits that might be deemed to run afoul of Plan implementation. The Gatekeeper Provision did not effectuate a release or an absolution of any liability. Rather, as the "gatekeeper" nickname implies, it simply provided that a plaintiff would have to ***ask*** the gatekeeper before bringing a claim against the defined universe of "Protected Parties." If such a request is made, the bankruptcy court will determine, after notice, whether such claim or cause of action represents a colorable claim against a Protected Party and specifically authorize such plaintiff to bring such claim against any such Protected Party.  If the bankruptcy court denies permission, then, presumably, such denial could be appealed.

The bankruptcy court humbly suggests that the Fifth Circuit well understood all of this. Perhaps they deleted the one sentence out of concern that there might be something in the Injunction Provisions that ran afoul of the new, narrowed defined term for "Exculpated Parties"—

for example, the catchall clause at Article IX.F(v) of the Injunction Provision. Specifically, that catchall clause, appearing after the injunctions of all sorts of conduct *against the Debtor* or its property, also enjoins parties from "(v) *acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan."* Perhaps the Fifth Circuit thought this injunctive language was a little vague or broad, but it had fixed any problem with it, by making clear that no one was absolved from any liability except the Debtor, the UCC, the UCC members, and the Independent Directors. The Fifth Circuit had fixed any problem with the cause by ruling that the defined term "Exculpated Parties" was too broad.

But perhaps the Fifth Circuit was simply making a stylistic edit—maybe they thought the words "perfectly lawful" may have sounded a bit too rosy or glowing, with regard to gatekeeper provisions generally, and they did not want to suggest that they had blessed them for every plan in the future, no matter what the facts and circumstances were. Perhaps the word "sound" seemed more measured and case-specific than the words "perfectly lawful."

In any event, in light of the Fifth Circuit keeping intact, in its Final Fifth Circuit Opinion, the language that the "the injunction and gatekeeping provisions are sound," this court sees no need to tailor those provisions in any manner. This tailoring request was made to the Fifth Circuit in the Motion for Rehearing, and they declined.

Finally, with regard to the Advisors' request that this court delete the provision in the Injunctions section (Plan, Art. IX.F., third para.) that "purports to enjoin claims against successors of the Debtor who are not entitled to limited qualified immunity" pursuant to the Final Fifth Circuit Opinion and "carve out from the gatekeeping provision . . . those suits that are expressly allowed by 28 U.S.C. § 959(a)," the bankruptcy court declines this request. This court does not read footnote 18 of the Fifth Circuit's Final Opinion, which states, "[W]e also leave the applicability of

18

*Barton*'s[36] limited statutory exception to the bankruptcy and district courts in the first instance,"[37] as necessitating any modification to the Plan whatsoever.

## VII.   CONCLUSION

The court grants the *Motion* and orders that one change be made to the Plan to conform it to the mandate of the Fifth Circuit:  revise the definition of "Exculpated Parties" as proposed in the *Motion* and no more.

**# # # END OF MEMORANDUM OPINION AND ORDER # # #**

---

[36] This is, of course, a reference to *Barton v. Barbour*, 104 U.S. 126 (1881).
[37] 48 F.4th at 439 n.18 (citing 28 U.S.C. § 959(a) "(allowing suit, without leave of the appointing court, if the challenged acts relate to the trustee or debtor in possession 'carrying on business connected with [their] property'")).