IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Debtor. | JAMES DONDERO, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., THE DUGABOY INVESTMENT TRUST, THE GET GOOD TRUST, and NEXPOINT REAL ESTATE PARTNERS, LLC, F/K/A HCRE PARTNERS, LLC, A DELAWARE LIMITED LIABILITY COMPANY'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF AMENDED RENEWED MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455 |

**MOVANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF AMENDED RENEWED MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455**

James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, The Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware limited liability company (collectively, "Movants") file this *Supplemental Memorandum of Law in Support of Renewed Motion to Recuse Pursuant to 28 U.S.C. § 455,* supplementing their Amended Renewed Motion to Recuse Pursuant to 28 U.S.C. § 455 (the "Amended Renewed Recusal Motion") [DE # 3570-3571.1] with information regarding two books published by Judge Jernigan, which Movants recently learned about and read. Those books, which were written and published while the Court was presiding over the bankruptcies of Acis Capital Management, L.P., Acis Capital Management GP, LLC, and HCMLP (the "Bankruptcy Proceedings"), contain derisive commentary about financial industry executives, the financial industry generally, and the financial instruments specifically at issue in HCMLP's bankruptcy.

1

Further, the second novel appears based on Judge Jernigan's experiences with HCMLP and Mr. Dondero in the Bankruptcy Proceedings.

On February 27, 2023, Highland Capital Management Fund Advisors, LP filed a motion to recuse in the case styled: *In re: Highland Capital Management LP*, case number 21-03076, in the U.S. Bankruptcy Court for the Northern District of Texas. As addressed in that motion, the two novels at issue contain highly antagonistic statements about the hedge fund industry, hedge fund managers, and the same investment vehicles that the Court knows HCMLP managed pre-petition. While the Court claims at the outset of each novel that they are works of fiction, there can be little doubt, under the circumstances, that the books are based upon Judge Jernigan's experiences as a sitting bankruptcy judge—and, in particular, from the Court's experience presiding over the Bankruptcy Proceedings.

The first novel, *He Watches All My Paths*, was released on January 3, 2019, just weeks before the Court confirmed the joint bankruptcy plan of Acis Capital Management, L.P. and Acis Capital Management GP, LLC (collectively, "Acis")—companies for which Mr. Dondero served as CEO and for which HCMLP performed certain management services prior to Acis's bankruptcy. Against that backdrop, the book describes the financial industry as being dominated by "[h]igh flying hedge fund managers" that "suck up money like an i-robot vacuum" and seem to "make money no matter what" and who routinely show "outrageous amounts of hubris" as part of their "bro culture." Moreover, the novel's central protagonist, a Dallas federal bankruptcy judge, suspects that the death threats she is receiving are coming from a hedge fund manager that has previously appeared in her court.

The second novel, *Hedging Death*, was released in March 2022, less than a year after HCMLP's Plan became effective and while the Bankruptcy Proceedings were still ongoing.

*Hedging Death* invokes even more details from the Bankruptcy Proceedings. Again, the central protagonist of the novel is a Dallas bankruptcy judge, and the protagonist's husband is, like Judge Jernigan's husband, a retired police officer and private investigator.[1] The story involves a Dallas hedge fund manager who is described as a reckless investment manager and vexatious litigant—the same language that the Court has described Mr. Dondero in the Bankruptcy Proceedings. The investment firm in the novel is called *Ranger* Capital and is experiencing economic distress largely due to extensive litigation stemming from bad investments. Notably, HCMLP's original name was *Ranger* Asset Management, as is prominently disclosed on the website of Mr. Dondero's investment firm NexPoint and which has been mentioned in other filings in the Bankruptcy Proceedings. In addition, HCMLP, like the "fictitious" Ranger Capital, initially sought chapter 11 protection because of investor litigation. The similarities do not stop there. In the novel, Ranger Capital, like HCMLP, is a "multi-billion dollar conglomerate, which manage[s] not just hedge funds but private equity funds, [collateralized debt obligations], CLOs, REITs, life settlements, and all manner of complicated financial products." HCMLP and its affiliates managed hedge funds, private equity funds, CDOs, CLOs,[2] REITS, life settlement portfolios, and private investment accounts for institutions around the world—exactly the same unusual mix of investments at issue in the second "fictional" novel.[3] There can be no question that the basis for this mix of investments is derived from the Court's work in Acis and Highland Bankruptcies.

---

[1] *See Hedging Death*, back cover.
[2] Notably, Highland was a pioneer that launched one of the first ever CLOs and was the world's largest CLO manager for years.
[3] Notably, there are no other enterprises in Dallas that manage this mixture of product types. Moreover, this mixture includes products not normally found at the same firm because they (1) require divergent skill sets and teams to manage, (2) usually have significantly different time horizons for asset realization (which require a diverse base of investors with different timing needs), and (3) have limited overlap in which managed funds can take investments, such as CLOs and CDOs (which only can invest in debt), private equity (which is equity only), and REITs (which are real-estate only). Consequently, firms normally do not manage combinations of CLO and CDOs on one hand and REITs and private equity on the other, or products that are regarded as esoteric even within the finance community, such as life settlements portfolios.

Indeed, even financial hubs such as New York and Los Angeles have only a limited number of firms with the mixture of products found at HCMLP.[4] Notably, the novel describes the life settlement industry—an industry the Court knows that HCMLP and Mr. Dondero invested in—as "creepy," "immoral," "unethical," and "should be illegal."

In short, Judge Jernigan's writings, which any reasonable person would agree appear patterned after Mr. Dondero, are additional evidence that the Court harbors exceedingly negative views about hedge fund managers and the hedge fund industry, generally, as well as Mr. Dondero specifically. At the very least, the commentary made in the novels about the financial managers, the financial industry, and the financial products at issue would lead a reasonable observer to question the Court's impartiality in these Bankruptcy Proceedings, mandating recusal.

In short, the Court's negative opinions of Mr. Dondero, Movants, and their perceived affiliates—as set forth in the Amended Renewed Recusal Motion and as reflected by the Court's commentary in two recently-published novels—reveal a high degree of antagonism, which makes it nearly impossible for Mr. Dondero and the Affected Parties to fully defend themselves and assert their rights in this forum, including in connection with claims filed against Mr. Dondero and Affected Parties. At a minimum, that is the perception that has been created.[5]

Movants hereby supplement the Amended Renewed Recusal Motion. In doing so, pursuant to 28 U.S.C. § 455, Movants respectfully request the Court, after considering the Amended Renewed

---

[4] Highland's unique history created this diversity of product types. Highland primarily was a CLO manager that then created hedge funds to house its purchase of CLO equity tranches. Highland only opened its private equity funds when, in the 2008 financial crisis, bankruptcies forced many of the CLO's debt positions to convert to equity. Highland created REITs because Dondero made personal investments in real estate, and a transactional lawyer hired in the legal department evidenced a flare for real estate investments which proved successful enough to support a REIT business. Life settlements also were the idea of a single analyst from another business unit to whom Dondero gave an opportunity. The Highland mixture of products likely exists only at a sprawling firm that invests in almost all asset types, or but not at any other founder-managed mid-size firm.

[5] *Liteky v. United States*, 510 U.S. 540, 551 (1994); *In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996).

4

Recusal Motion and this Supplement thereto, grant their Motion and recuse herself from presiding over this proceeding. In the alternative, Movants hereby request that the Court make clear that any order denying recusal is final on the issue so that Movants may pursue any appellate remedies that exist, including mandamus.

Dated: March 3, 2023

Respectfully submitted,

**CRAWFORD, WISHNEW & LANG PLLC**

*/s/ Michael J. Lang*
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Attorneys for Movants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 3, 2023, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

*/s/ Michael J. Lang*
Michael J. Lang