Shawn M. Bates
Texas Bar No. 24027287
Federal Bar No. 30758
**AHMAD, ZAVITSANOS & MENSING PLLC**
1221 McKinney St., Suite 2500
Houston, Texas 77010
(713) 655-1101 Telephone
(713) 655-0062 Facsimile
sbates@azalaw.com

Attorney for Acis Capital Management, L.P.
and Acis Capital Management GP, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: § | | Chapter 11 |
| § | | |
| **HIGHLAND CAPITAL MANGEMENT, L.P.,** § § | | Case No. 19-34054-sgj11 |
| § | | Re: Docket 247 |
| Debtor. § § | | |

### ACIS CAPITAL MANAGEMENT, L.P.'S MOTION TO INTERVENE
### AND BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 24, Intervenor Acis Capital Management, L.P. ("Acis") files this Motion to Intervene and Brief in Support because Acis is the proper payee for the $9,541,446.00 Note made the basis of Highland CLO Management Ltd. ("HCLOM")'s Claims 3.65 and 3.66 in the above-styled Bankruptcy Case. Acis respectfully shows the Court as follows:

# I. BACKGROUND

**A. Acis was founded as a portfolio manager with Highland employees.**

Acis was founded in 2011 as a registered investment advisor to raise money from third-party investors to invest in certain collateralized loan obligation funds (the "CLOs").[1] Acis was the portfolio manager for the CLOs and generated revenue primarily through the management of the CLOs via certain portfolio management agreements (the "PMAs").[2]

Acis has no employees of its own. Instead, it contracted out its administrative functions and portfolio management responsibilities to Highland Capital Management, L.P. ("Highland") through shared services and sub-advisory agreements.[3]

**B. Acis sold part of its CLO Servicer Fees to Highland in exchange for the Note.**

On October 7, 2016, Acis LP and Highland entered into an Agreement for Purchase and Sale of CLO Participation Interests ("Purchase Agreement"), whereby Acis sold some of its interest in cash flow from the CLO PMAs to Highland.[4] Acis promised to "promptly remit, or cause to be promptly remitted, to [Highland] the cash received with respect to the Acis Participation Interests."[5] In exchange, Highland promised Acis cash up front and a series of installment payments pursuant to a $12,666,446 Promissory Note (the "Note"). In other words, Highland purchased Acis's right to receive Servicer Fees.

The Purchase Agreement required Highland to make an initial payment of $666,655.[6] Highland was also required to make the following payments to Acis:

---

[1] *See* Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued after Trial on Contested Involuntary Bankruptcy Petitions in Bankruptcy Case No. 18-30264-SGJ-7 ("Involuntary Opinion"), attached as Exhibit A, p. 9 ¶¶ 23-24; Original Complaint of Acis Capital Management, L.P. and Acis Capital Management GP, LLC in Bankruptcy Case No. 18-30264-SGJ-11 ("Original Complaint"), attached as Exhibit B, pp. 12-13 ¶ 33.
[2] *See* Involuntary Opinion, Exhibit A, pp. 9-15 ¶¶ 22-28.
[3] *See id.* at 14-15 ¶¶ 27-28.
[4] *See id.* at 16-17 ¶ 31(a); *see also* Purchase Agreement, attached as Exhibit C.
[5] *See* Purchase Agreement, Exhibit C, p. 7 ¶ 4.1.
[6] Involuntary Opinion, Exhibit A, p. 16 ¶ 31(a).

    (1) a $3,370,964 payment on May 31, 2017;
    (2) a $5,286,243 payment on May 31, 2018; and
    (3) a $4,677,690 payment on May 31, 2019.[7]

Highland only made the first of these three payments to Acis,[8] leaving a balance of approximately $9.5 million on the Note—plus interest.

**C.**   **James Dondero attempted to transfer the Note away from Acis.**

On October 20, 2017, Mr. Josh Terry, Acis's former portfolio manager, obtained an Arbitration Award (herein so called) against Acis in the amount of $7,949,749.15, plus post-award interest at the legal rate, based on theories of breach of contract and breach of fiduciary duties.[9]

On November 3, 2017, Acis, Highland, and Highland CLO Management ("HCLOM") entered into an Agreement for Assignment and Transfer of Promissory Note (the "Transfer Agreement"), in an effort to transfer the Note from Acis to HCLOM.[10] The Transfer Agreement stated that "[Highland] has notified Acis that [Highland] is unwilling to continue to provide support personnel and other critical services to Acis with respect to the CLOs[.]"[11] Accordingly, Acis would no longer be able to "fulfill its duties as portfolio manager of the CLOs," and would thus "assign its rights as portfolio manager in the CLOs to a qualified successor . . . ."[12]

As purported consideration for Acis assigning the Note to HCLOM, the Transfer Agreement provided that HCLOM would "irrevocably commit[]" to acting as a "Successor Manager."[13] HCLOM would become the "Payee" under the Note and would remit to Highland the Servicer Fees that Acis had previously received for managing the CLO portfolios.[14]

---

[7] Amortization Schedule, Exhibit A to Note.
[8] Objection, p. 12 ¶ 37.
[9] Involuntary Opinion, Exhibit A, p. 4 ¶ 8.
[10] Original Complaint, Exhibit B, p. 30 ¶ 89.
[11] Transfer Agreement, attached as Exhibit D, p. 1.
[12] *Id.*
[13] *Id.*
[14] *Id.* at 2 ¶ 3.

3

James Dondero, Highland CEO and then-President of Acis's general partner, Acis Capital Management GP, LLC, signed the Transfer Agreement on behalf of both Acis and Highland.[15]

After the Transfer Agreement was signed, Acis stopped remitting servicer fees to Highland. The last such payment was made on November 1, 2017.[16]

**D.    Acis entered bankruptcy and pursued Dondero for fraudulent transfer of the Note.**

On January 30, 2018—roughly three months after the Transfer Agreement—Acis LP and Acis GP entered bankruptcy.[17] In March 2018, this Court held a multi-day trial, culminating in the Court's April 13, 2018, Involuntary Opinion.[18] On May 14, 2018, Robin Phelan was appointed trustee.[19] This Court confirmed the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC on January 31, 2019 (the "Plan").[20] The Plan provided that Acis would be substituted for Phelan as trustee and in any related adversary proceedings, with "exclusive standing and authority to prosecute, settle or compromise" claims for breach of fiduciary duty and fraud on Acis's behalf.[21]

On April 11, 2020, Acis filed an Adversary Proceeding against Dondero and other defendants, bringing causes of action for breach of fiduciary duty and asserting that Dondero "directed Highland Capital and its affiliates to commit [a] series of fraudulent transfers . . . in order to denude Acis of its assets and transfer Acis's valuable business to [] Highlands."[22]

---

[15] *Id.* at 6.
[16] Objection, p. 12 ¶ 38.
[17] *Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued after Trial on Contested Involuntary Bankruptcy Petitions* ("Involuntary Opinion"), attached as Exhibit A, p. 7 ¶ 16.
[18] *Id.* at 1.
[19] *See* Case No. 18-30264, Docket No. 213.
[20] *See* Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, as Modified [Case No. 18-30264, Docket Nos. 829 and 830].
[21] Plan, p. 19 § 7.03; *see id.* at 36 ¶ 2 (defining "Estate Claims" as including claims for breach of fiduciary duty and fraud).
[22] *See* Original Complaint, Exhibit B, p. 45 ¶ 138.

E.  **Highland filed for bankruptcy, HCLOM asserted a claim, and Highland objects.**

In October 2019, Highland Capital filed for bankruptcy.[23] This Court confirmed a plan of reorganization for Highland on February 22, 2021.[24] In September 2020, HCLOM, as a nonpriority creditor, filed claims 3.65 and 3.66 (collectively, the "HCLOM Scheduled Claim") in the Highland bankruptcy proceeding. Claim 3.65 asserts that Highland owes HCLOM $599,187.26 for interest payable on the Note. Claim 3.66 asserts that Highland owes HCLOM $9,541,446 payable on the Note itself.[25]

On February 2, 2023, Highland objected to the HCLOM Scheduled Claim, arguing that because Acis "has continued to manage the CLOs," and because "no Servicer Fees were paid to Highland[,]" Highland is "relieved" of its "obligations under the Note[,]" and the Transfer Agreement is void.[26] Alternatively, Highland argues that if it is determined to have any continuing obligations under the Note, "any such obligations would be subject to Reorganized Highland's rights of offset and recoupment for all amounts due from both Acis and HCLOM (*i.e.*, all covered Servicer Fees on the Acis CLOs from the date of the Note to the present)."[27]

## II.  RELIEF REQUESTED AND BRIEF IN SUPPORT

A.  **Intervention as of Right**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, a party is entitled to intervene "of right" if the party:

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may

---

[23] *Id.*
[24] *Id.* at 5 ¶ 11.
[25] HCLOM Note Claim, p. 21 (page number refers to PDF pagination).
[26] Objection, pp. 3-4 ¶ 5.
[27] *Id.* at 4 ¶ 6.

5

>as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24.

Rule 24 is to be construed liberally, with all doubts resolved in favor of the proposed intervenor, because intervention allows a court to resolve related disputes in a single action. *In re Lease Oil Antitrust Litigation*, 570 F.3d 244, 248 (5th Cir. 2009). A proposed intervenor must satisfy four criteria in order to intervene of right under Rule 24(a):

>(1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014).

The Rule 24(a) inquiry "is a flexible one, which focuses on the particular facts and circumstances surrounding each application . . . measured by a practical rather than technical yardstick." *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *Edwards v. City of Hous.*, 78 F.3d 983, 999 (5th Cir. 1996)). Accordingly, the Fifth Circuit has held that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). Acis satisfies all four *Brumfield* elements.

1. <u>Acis's intervention is timely.</u>

    The Fifth Circuit has identified four factors,

    >sometimes referred to as the *Stallworth* factors, to determine whether a motion to intervene is timely: the length of time the movant waited to file, the prejudice to the existing parties from any delay, the prejudice to the movant if intervention is denied, and any unusual circumstances.

*Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021).

6

The first timeliness factor is "the length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene." *Id.* (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1977) (alterations omitted)). Courts have found interventions timely when the delay in filing was over a month. *See, e.g.*, *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (delays of 37 and 47 days); *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (delay of one month). Acis is well within this range. Highland filed its objection to HCLOM's claims on February 2, 2023.[28] Acis wasted no time responding with this motion.

Moreover, neither Highland nor HCLOM would be prejudiced as minimal additional discovery, if any, would be required by Acis's intervention, whereas Acis could be severely prejudiced if intervention is denied (as addressed in detail below).

2. <u>Acis has an obvious interest in the subject matter of the litigation.</u>

Acis has a $9.5 million-plus interest in showing that the Transfer Agreement was fraudulently transferred and is invalid for lack of consideration, among other reasons. HCLOM's Claims 3.65 and 3.66 can succeed ***only if*** the Transfer Agreement is valid. Acis contends that the Transfer Agreement is ***not*** valid.

Under Texas law, "[a] contract must be based on a valid consideration; that is, mutuality of obligation." *Plains Builders, Inc. v. Steel Source, Inc.*, 408 S.W.3d 596, 602 (Tex. App.—Amarillo 2013, no pet.). "Consideration is a present exchange bargained for in return for a promise and consists of benefits and detriments to the contracting parties." *TLC Hospitality, LLC v. Pillar Income Asset Management, Inc.*, 570 S.W.3d 749, 760 (Tex. App.—Tyler 2018, pet. denied). "The

---

[28] *See* Objection, p. 1.

7

detriments must induce the parties to make the promises, and the promises must induce the parties to incur the detriments." *Id.*

The Transfer Agreement offered Acis no meaningful consideration. It was one of many transactions initiated by Dondero to denude Acis of its assets and make it "judgment-proof" so that Terry could not collect the Arbitration Award. Dondero first created a problem by refusing to provide Acis with employees to manage the CLOs, then purported to solve that problem by having HCLOM step into Acis's shoes, take over management of the CLOs, and receive the right to payments under the Note.[29] Instead of promising Acis some benefit in exchange for Acis incurring a detriment, *see Roark*, 813 S.W.2d at 496, the Transfer Agreement provided that Acis would incur a detriment in exchange for **another** detriment: Acis would give up its right to payment under the Note "in exchange for" also giving up its valuable CLO management business. In other words, the Transfer Agreement would have required Acis to **pay for the privilege** of irrevocably losing its business. This is not consideration—it is extortion.

Moreover, the Transfer Agreement purported to confer great benefits on Highland without imposing any corresponding obligation on Highland. *See Mosley*, 304 S.W.3d at 628 ("Lack of consideration occurs when the contract, at its inception, does not impose obligations on both parties."). Highland would have benefited by transferring Highland's liability under the Note away from Acis, thus placing the Note beyond the reach of Terry and any other creditors. But nothing in the Transfer Agreement imposes any corresponding obligation on Highland. Without mutuality of obligation, the Transfer Agreement is unenforceable. *See Mosley*, 304 S.W.3d at 628.

---

[29] Original Complaint, Exhibit B, pp. 30-31 ¶¶ 89-92.

8

3. <u>Acis's interest in the Note could be impaired or impeded if Acis does not intervene.</u>

Acis is justifiably concerned that if it does not intervene in this case, its interest in the Note will be impaired or impeded. To be clear, ***Acis does <u>not</u> concede that any determination in the above-styled case would preclude it from claiming the Note***. To the contrary, neither res judicata (claim preclusion) nor collateral estoppel (issue preclusion) would prevent Acis from asserting its right to the Note, no matter how the Court decides HCLOM's claims or Highland's Objection. Nonetheless, Acis must acknowledge the possibility of preclusive effect. Further, even if not binding, adverse findings of fact could be potentially used to Acis's detriment in other proceedings. Therefore, Acis must intervene to ensure that its interest in the Note is not impaired.

4. <u>The existing parties to the action do not adequately represent Acis's interest.</u>

Acis seeks a declaration that the Transfer Agreement fails for lack of consideration ***to Acis***. Neither party advances this argument. HCLOM necessarily asserts that the Transfer Agreement is valid (otherwise it would have no basis for Claims 3.65 and 3.66) and, as such, is directly opposed to Acis's interest. Highland argues that the Transfer Agreement is not valid, but for the wrong reasons—Highland argues that the agreement lacked sufficient consideration ***to Highland***.[30] This also does not represent Acis's interests.

For the reasons set forth above, Acis respectfully submits that it is entitled to intervene as of right.

**B.    Permissive Intervention**

If, for any reason, the Court declines to find Acis's entitlement to intervention as of right, Acis respectfully requests that the Court alternatively grant it permissive intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. Rule 24(b) states that "[o]n timely motion, the

---

[30] Objection, p. 4 ¶ 6.

court may permit anyone to intervene who: . . . (2) has a claim or defense that share with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). As set forth above, Acis's claims relate to the same factual circumstances and issues as those raised in HCLOM's Claims and Highland's Objection. Accordingly, permissive intervention is proper in this case.

WHEREFORE, PREMISES CONSIDERED, Intervenor Acis Capital Management, L.P. respectfully requests the Court grant this Motion to Intervene as a Plaintiff-in-Intervention in this action and allow Acis to file a response to the Claim Objection.

Respectfully submitted,

*/s/ Shawn Bates*
AHMAD, ZAVITSANOS & MENSING, PLLC
Joseph Y. Ahmad
Texas Bar No. 00941100
Federal Bar No. 11604
Shawn M. Bates
Texas Bar No. 24027287
Federal Bar No. 30758
Alex Dvorscak
Texas Bar No. 24120461
1221 McKinney St. Suite 2500
Houston, Texas 77010
(713) 655-1101 Telephone
(713) 655-0062 Facsimile
joeahmad@azalaw.com
sbates@azalaw.com
advorscak@azalaw.com

**COUNSEL FOR ACIS CAPITAL MANAGEMENT, L.P.**

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that prior to filing this Motion, I communicated with counsel for both Highland and HCLOM to request both parties' position on the relief requested herein. Mr. Morris, counsel for Highland, indicated that his takes no position as to the requested relief. The undersigned reached out to counsel for HCLOM, but as of the time of this filing, counsel for HCLOM has not responded.

*/s/ Shawn M. Bates*
Shawn M. Bates

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 27, 2023, a true and correct copy of the foregoing document was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this bankruptcy case, include both Highland and HCLOM, through counsel.

/ */s/ Shawn M. Bates*
Shawn M. Bates
