**STINSON LLP**
Deborah Deitsch-Perez
Michael P. Aigen
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for Highland CLO Management, Ltd.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (sgj) |
| Reorganized Debtor. | |

**RESPONSE OF HIGHLAND CLO MANAGEMENT, LTD. TO
HIGHLAND CAPITAL MANAGEMENT, L.P.'S OBJECTION TO SCHEDULED
CLAIMS 3.65 AND 3.66 OF HIGHLAND CLO MANAGEMENT, LTD.**

Highland CLO Management, Ltd. ("HCLOM"), by and through its undersigned attorneys, hereby submits this response to *Highland Capital Management, L.P.'s Objection to Scheduled Claims 3.65 and 3.66 of Highland CLO Management, Ltd.* [Docket No. 3657] (the "Objection"). In support of its response, HCLOM states the following:

**I.    INTRODUCTION**

1.    In the Objection, reorganized debtor Highland Capital Management, L.P. ("HCMLP" or the "Debtor") seeks to expunge the undisputed, non-contingent, liquidated claims it scheduled for HCLOM for a promissory note [the "Note"] and related interest. Although

HCMLP asserts that there was a prior material breach of contract under the Note and other documents and asserts that such prior material breach is both itself a defense and gives rise to a failure of consideration, these allegations are inconsistent with the language of the Note, the underlying facts, and, importantly, positions the Debtor has successfully taken elsewhere in this bankruptcy proceeding.

## II.    FACTUAL BACKGROUND

2.    On October 16, 2019 (the "Petition Date"), HCMLP filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532 in the United States Bankruptcy Court for the District of Delaware.

3.    Pursuant to an *Order Transferring Venue of this Case to the United States Bankruptcy Court for the Northern District of Texas*, the resulting bankruptcy case was transferred to this Court on December 4, 2019.

4.    On December 13, 2019, the Debtor filed its schedule of liabilities. The schedule of creditors who have unsecured claims included a claim for "Interest payable" in the amount of $599,187.26, and a claim for "Note payable" in the amount of $9,541,446.00. The schedule incorrectly listed the promissory note principal and interest as payable to Highland CLO Holdco.[1]

5.    James P. Seery, Jr. was engaged as Chief Executive Office and Chief Restructuring Office ("CEO/CRO") for the Debtor effective as of March 15, 2020.

6.    The Debtor filed amended schedules on September 22, 2020 (the "Amended Schedules"), correcting the claimant name to HCLOM, but leaving the amounts the same.[2]

---

[1] *See* Official Form 206Sum, dated December 13, 2019 ("Original Schedules"), Dkt. 247 in Case No. 19-34054-sgj-11. Schedule E/F, §§ 3.64 and 3.65, annexed hereto as Exhibit 1 ("Ex. 1") at App. 0027.
[2] Notice of Filing of Debtor's Amended Schedules, dated September 22, 2020, Dkt. 1082 in Case No. 19-34054-sgj-11, Schedule E/F, §§ 3.65 and 3.66 (the "HCLOM Scheduled Claims"), annexed hereto as Exhibit 2 ("Ex. 2") at App. 0105.

7. The Amended Schedules did not list the HCLOM Scheduled Claims as disputed, contingent or unliquidated. Mr. Seery, in his role as CEO/CRO for the Debtor, signed the Amended Schedules under penalty of perjury.

8. The Debtor's note principal and interest obligations to HCLOM arose under a Promissory Note in the original principal amount of $12,666,446 with HCMLP as the maker, and Acis Capital Management, L.P. ("Acis") as the payee. [3]

9. The Note originated as part of a transaction in October 2016 whereby Acis agreed to pay fifty percent (50%) of its collateralized loan obligation ("CLO") servicing fees over a period of years to the Debtor pursuant to an Agreement for Purchase and Sale of CLO Participation Interests (the "CLO Participation Agreement"), and in exchange the Debtor promised to pay Acis the principal amount of the Note over a period of three years. [4]

10. The Debtor was to make principal amortization payments under the Note in May of each of the three scheduled payment years, and Acis was to pay the Debtor its portion of the CLO servicing fees on a quarterly basis (the "Servicer Fees"). [5]

11. The Note was assigned to HCLOM pursuant to an Assignment and Transfer Agreement between Acis, HCMLP and HCLOM dated November 3, 2017 (the "Note Transfer Agreement"). [6]

12. Following execution of the Note Transfer Agreement, an involuntary bankruptcy petition was filed against Acis in this Court on January 30, 2018, leading to the entry of an order

---

[3] Promissory Note from Highland Capital Management, L.P. to Acis Capital Management, L.P. in the amount of $12,666,446, dated October 2016, Dkt. 3695-3 in Case No. 19-34054-sgj-11, annexed hereto as Exhibit 3 ("Ex. 3") at App. 0115-0120.
[4] *Id.* at Exhibit A, Amortization Schedule, App.0120.
[5] Agreement for Purchase and Sale of CLO Participation Interests by and between Acis Capital Management, L.P. and Highland Capital Management, L.P., dated October 7, 2016, annexed hereto as Exhibit 4 ("Ex. 4") at App.0122-0135.
[6] Agreement for Assignment and Transfer of Promissory Note between Acis Capital Management, L.P. and Highland Capital Management, L.P., dated October 7, 2016, Dkt. 3695-3 in Case No. 19-34054-sgj-11, annexed hereto as Exhibit 5 ("Ex. 5") at App.0137-0142.

3

for relief on April 16, 2018 in *In re Acis Capital Management, L.P. and Acis Capital Management GP, LLC*, Case No. 18-30264 (the "Acis Bankruptcy Case").

### III. LEGAL STANDARD

13. The Debtor listed the HCLOM Scheduled Claims on the Amended Schedules and did not schedule them as disputed, contingent, or unliquidated. As a result, the HCLOM Scheduled Claims constitute prima facie evidence of the validity and amount of the claims pursuant to Federal Rule of Bankruptcy Procedure 3003(b)(1).

14. Once such prima facie evidence is established, the claimant will prevail unless a party objecting to a claim produces evidence to rebut at least one of the allegations that is essential to the claim's legal sufficiency. *See In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988); *McGee v. O'Connor (In re O'Connor)*, 153 F.3d 258, 260 (5th Cir. 1988).

15. If the objecting party rebuts the presumption of validity, the claim is not *per se* denied. *In re Armstrong*, 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005). Rather, "[t]he claimant may still establish the claim's validity at an evidentiary hearing." *In re Today's Destiny, Inc.*, 2008 WL 5479109 at *4 (Bankr. S.D. Tex. Nov. 26. 2008). At this point the burden shifts back to the claimant to prove its claim by a preponderance of the evidence. *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006).

### IV. RESPONSE

**A. No Alleged Breaches of the CLO Participation Agreement and/or the Note Excuse the Debtor's Performance under the Note.**

16. The Debtor first argues that Acis's breaches of contract excuse the Debtor's performance under the Note. In doing so, it alleges breaches of the CLO Participation Agreement by "HCLOM and/or Acis." Objection, ¶¶ 36 – 47.

4

17. However, HCLOM is not a party to the CLO Participation Agreement, and could not breach it.

18. Further, although the Note was made as consideration for the CLO Participation Agreement, the Debtor's liability on the Note contains no provision conditioning the Debtor's payment obligations on performance by Acis of its obligations under the CLO Participation Agreement.[7]

19. In fact, the plain language of the Note states the opposite. The "Note embodies the final, entire agreement between Maker [Debtor] and Payee [Acis] with respect to the indebtedness evidenced hereby" and does not incorporate the CLO Participation Agreement by reference.[8]

20. Courts are tasked with construing a contract by looking at the langue of the parties' agreement. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas Inc.*, 590 S.W. 3d 471, 479 (Tex. 2019). The court must "give effect to the parties' intentions, as express in their agreement" unless the "plain, grammatical meaning would clearly defeat the parties' intentions." *Id.* (internal citations omitted).

21. In claiming that alleged breaches of contract by Acis excuse the Debtor's performance under the Note, the Debtor cites to cases holding that in certain circumstances multiple documents can be deemed to be part of one instrument. However, this concept cannot be stretched to replace the parties' intentions when preparing the documents.

> Where appropriate, "a court may determine, as a matter of law," that multiple separate contracts, documents, and agreements "were part of a single, unified instrument." In determining whether multiple agreements are part and parcel of a unified instrument, a court may consider whether each written agreement and instrument was "a necessary part of the same transaction." But when construing multiple documents together, courts must do so with caution, bearing in mind that tethering documents to each other is "simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily and without regard to the realities of the situation."

---

[7] Ex. 3, p. 4, at App.0118.
[8] *Id.*

5

*Rieder v. Woods*, 603 S.W.3d 86, 94–95 (Tex. 2020).

22. Here, the CLO Participation Agreement states that

> [E]xcept as provided in Section 1.5, the Seller [Acis] may exercise all of its legal rights under and remedies to enforce the Purchaser's [Debtor's] obligations under the Note even if the Acis Participation Interests are not paid, in full or in part, by the CLO Trustee for any reason… The Purchaser bears the sole risk with respect to non-payment of the Acis Participation Interests (other than as a result of the Seller breaching its covenants under this Agreement or as a result of the fraud or willful misconduct of the Seller).[9]

The only exception, § 1.5, contemplates Acis failing to pay the Participation Interests/Servicer Fees as a result of regulatory proceeding against Acis, which did not occur.[10]

23. In furtherance of its efforts to tie the Note to the CLO Participation Agreement, the Debtor cites the provision in the CLO Participation Agreement stating that the Note shall not be payable until "all conditions to the effectiveness of the Purchase Agreement have been or will be fulfilled contemporaneously with the initial advance under this Note." Objection at ¶ 15. While "initial advance" is not defined in the Note, the Debtor was obligated to pay Acis an initial amount of $666,655 under the CLO Participation Agreement.[11] There is no dispute that the Debtor made that payment and that the conditions precedent for the Note to become effective were met.

24. The Debtor also made further payments to Acis on the Note, additional evidence that the Debtor was performing under the Note and that the conditions precedent was satisfied.[12] While HCLOM requires discovery to obtain the complete payment history, the Debtor's schedules show that $9,541,446 25 remains owed on the original Note balance of $12,666,446. *Compare* Ex. 1 with the Amended Schedules at Schedule E/F §3.66. This reflects that the Debtor made a principal pay down of $3,125,000 prior to the Petition Date. According to Ex. 1 at Exhibit A

---

[9] Ex. 4, § 3.6, at App.0127-0128.
[10] *Id.,* § 1.5, at App. 0124.
[11] *Id.,* § 1.1, at App.0123.
[12] October 20, 2021, Hr'g Tr., 191:8-12, annexed hereto as Exhibit 6 ("Ex. 6") at App.0334.

6

thereto, the Amortization Schedule shows that a principal payment was due May 31, 2017, in the amount of $3,125,000.[13]

**B.　HCLOM Did Not Breach the Note Transfer Agreement, Nor Would Any Alleged Breach Excuse the Debtor's Performance under the Note.**

25.　The Debtor then argues that HCLOM breached the Note Transfer Agreement, thus excusing the Debtor from performing under the Note. However, HCLOM acted to perform under the Note Transfer Agreement.

26.　HCLOM "irrevocably commits" in the Note Transfer Agreement to be appointed as successor manager.[14] The Note Transfer Agreement contemplated that the controlling class of each of the Acis-managed CLOs would provide a notice to replace Acis with HCLOM as the manager of the CLOs.[15]

27.　The controlling classes of the Acis CLOs issued optional redemptions attempting to effectuate the process of designating HCLOM as the manager of the Acis CLOs.[16] However, this Court entered a temporary restraining order, and then a plan injunction in the Acis Bankruptcy Case, preventing the Notices from being effectuated.[17]

28.　As a result, HCLOM never was appointed as the manager of the CLOs.

---

[13] The Amended Schedules also reflect a balance of $599,187.26 in unpaid interest on the Note. *See* Ex. 2, Schedule E/F §3.65, at App.0105.
[14] Ex. 5 at App.0137.
[15] *Id.,* § 1, at App. 0138.
[16] Acis CLO Notices of Optional Redemption dated April 30, 2018, Dkt. 3695-2 in Case No. 19-34054-sgj-11, annexed hereto as Exhibit 7 ("Ex. 7") at App.0401-0412.
[17] *See* Ex Parte Temporary Restraining Order, dated June 21, 2018, Dkt. 310 in Case No. 18-30264-sgj-11, annexed hereto as Exhibit 8 ("Ex. 8") at App.0418; Agreed Extension of Temporary Restraining Order, dated June 29, 2018, Dkt. 354 in Case No. 18-30264-sgj-11, annexed hereto as Exhibit 9 ("Ex. 9") at App. 0424; Bench Ruling and Memorandum of Law in Support of: (1) Final Approval of Disclosure Statement; and (B) Confirmation of Chapter 11 Trustee's Third Amended Joint Plan, dated January 31, 2019, Dkt.827 in Case No. 18-30264-sgj-11, annexed hereto as Exhibit 10 ("Ex. 10") at App. 0430-0476; Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, as Modified, dated January 31, 2019, Dkt. 829 in Case No. 18-30264-sgj-11, annexed hereto as Exhibit 11 ("Ex. 11") at App.0512.

29. Prior to HCLOM becoming the manager, Acis continued to be responsible for paying the Servicer Fees due to the Debtor under the CLO Participation Agreement.[18] The Note Transfer Agreement is clear that only when HCLOM became the replacement manager of the CLOs and started to receive fees would HCLOM be obligated to remit a portion of the Servicer Fees to the Debtor.[19]

30. HCLOM never received any of the Servicer Fees contemplated under the Note Transfer Agreement §3(c). Instead, Acis at all times continued to receive such Servicer Fees.

31. Therefore, HCLOM was under no obligation to remit any Servicer Fees to the Debtor, and could not breach the Note Transfer Agreement by failing to do so.

32. Nor would any alleged breach of the Note Transfer Agreement excuse the Debtor's obligation to perform under the Note. Under the Note Transfer Agreement, the Note was transferred from Acis to HCLOM "effective immediately upon execution" of the agreement and was not conditional.[20]

**C.    The Debtor's Allegations in the Objection Are Inconsistent with the Debtor's Positions Taken in this Case and the Acis Bankruptcy Case.**

33. The Debtor's claims in the Objection that is has no obligation to perform under the Note stand in stark contrast to the positions it has taken and testimony it has provided both in this case and in the Acis Bankruptcy Case.

34. In the Acis Bankruptcy Case adversary proceeding, *Acis Capital Management, L.P. and Acis Capital Management GP, LLC v. Highland Capital Management, L.P., et al.*, Adversary

---

[18] *See* Ex. 5, §3(b), at App.0138..
[19] *Id.*, §3(c), at App.0138.
[20] *Id.*, §3(a), at App.0138.

8

Proceeding No. 18-03078 (the "Acis Adversary Proceeding"), Acis asserted claims against both the Debtor and HCLOM for fraudulent transfer with respect to the Note.[21]

35. The Debtor moved to dismiss these claims, but did not assert a defense that the Note was either invalid or subject to set off because of prior material breach.[22]

36. After the Debtor filed for bankruptcy, Acis incorporated the Acis Complaint into its proof of claim filed in this case designated as Claim No. 23 in the Claims Register maintained by the Debtor's noticing and claims agent (the "Acis POC").[23]

37. In its objection to the Acis POC ("Acis Claim Objection), the Debtor stated that "Not only did the Debtor not receive the Note, it remains liable!"[24] The Debtor continued that "Debtor did not receive the Note, and indeed remains liable on the Note."[25]

38. The Debtor enumerated five separate grounds for objecting to the Note-related claims in the Acis Complaint, but never argued that Debtor was not liable on the Note for failure of consideration or prior material breach.[26] Notably, the Debtor's objection was filed in June 2020, well after the Independent Board has assumed control of the Debtor from previous management and Mr. Seery stepped in as CEO/CRO.

39. Subsequently, the Debtor reached a settlement of a $23 million allowed claim amount on the Acis POC, which was documented in a settlement agreement (the "Acis Settlement

---

[21] Second Amended Complaint (Including Claim Objections and Objections to Administrative Expense Claim), dated June 20, 2019, Dkt. 157 in Case No. 18-03078-sgj, annexed hereto as Exhibit 12 ("Ex. 12") at App.0708-0815.
[22] Highland Capital's Partial Motion to Dismiss the Second Amended Complaint and Brief in Support, dated July 22, 2019, Dkt. 171 in Case No. 18-03078-sgj, annexed hereto as Exhibit 13 ("Ex. 13") at App.0817-0849.
[23] Acis Proof of Claim #23 in Case No. 18-30264-sgj-11, dated December 31, 2019, annexed hereto as Exhibit 14 ("Ex. 14") at App. 0851-0964
[24] Debtor Objection to Acis Claim, dated June 23, 2020, Dkt. 771 in Case No. 19-34054-sgj-11, annexed hereto as Exhibit 15 ("Ex. 15"), ¶ 58, at App.1001.
[25] *Id.*, ¶ 58(a), at App.1002.
[26] *Id.*, ¶ 58(c)(1-5), at App.1002.

9

Agreement").[27] As part of this settlement, Acis specifically disclaimed and released all claims for payment with respect to the Note (the "Acis Release").[28]. Acis further agreed to withdraw its claims against the Debtor-controlled defendants.[29]

40. Consistent with the Acis Settlement Agreement, on November 3, 2020, Acis moved to voluntarily dismiss all claims against HCLOM in the Acis Adversary Proceeding, which was promptly approved by this Court.[30]

41. In obtaining the Court's approval of the Acis Settlement Agreement, Mr. Seery specifically addressed the Debtor's liability on the Note. When asked to explain the basis for the settlement, Mr. Seery testified:

> Some of them [the Acis claims], we looked at and we thought those were actually, if we could get that settlement as part of it, it would be a pretty straightforward trade. So with respect to an intercompany note that's about $10 million, it was arguably (inaudible) transferred from -- from Acis, it was transferred -- its claim was it was transferred to Highland. Highland paid on the note. It was actually transferred to an entity that Highland owns and controls. That transfer was done without consideration, was about $10 million. We would have been liable on that note.
>
> We now believe that, for example, that one, we had very little defense on other than a technical defense, and that we would have – we'd have -- not going to have any liability on it because we effectively owe it to ourself, and now we believe it can be recharacterized or should have been recharacterized as equity in the first instance.[31]

Mr. Seery continued "In addition, as I mentioned, of the total amount, we think that the note was one that we actually owe, and we owe it to somebody, but now we owe it to ourselves. So of the

---

[27] Order Approving Debtor's Settlement with (A) Acis Capital Management, L.P. and Acis Capital Management GP, LLC (Claim No. 23) (B) Joshua N. Terry and Jennifer G. Terry (Claim No. 156, and (C) Acis Capital management, L.P. (Claim No. 159) and Authorizing Actions Consistent Therewith, dated October 20, 2020, Dkt.1302 in Case No. 19-34054-sgj-11, annexed hereto as Exhibit 16 ("Ex. 16"), p. 6, at App.1037-1044.
[28] *Id.*, at App.1046-1055; and at App. 1047 (Acis Release releasing, among other claims, all debts, liabilities, and obligations against any Debtor-controlled party, which included HCLOM).
[29] *Id.*, § 2, at App.1049.
[30] Acis Motion to Dismiss Less than All Defendants, dated November 3, 2010, Dkt. 215 in Case No. 18-03078-sgj, annexed hereto as Exhibit 17 ("Ex. 17"), at App.1057-1060; Order Dismissing Less than All Defendants, dated November 6, 2020, Dkt. 216 in Case No. 18-03078-sgj, annexed hereto as Exhibit 18 ("Ex. 18"), at App.1062-1063.
[31] Ex. 6, 191:6-21, at App.0334.

10

total settlement amount, $10 million really is self-funding because we're not going to have to pay that obligation."[32]

42. In addition to providing evidence that the Debtor believes its performance is required under the Note, to the extent that this Court relied on Mr. Seery's testimony in approving the settlement with Acis, the contract positions in the Objection should be barred by the doctrine of judicial estoppel. "In order for judicial estoppel to apply, three requirements must be satisfied: (1) the party's position must be clearly inconsistent with the position previously taken by the party; (2) the court must have accepted the previous position; and (3) the previous position (or non-disclosure) must not have been inadvertent." *In re Tex. Rangers Baseball Partners*, 521 B.R. 134, 173 (Bankr. N.D. Tex. 2014); citing *In re Superior Crewboats Inc.*, 374 F. 330, 335 (5th Cir. 2004).

43. As Mr. Seery expressed above, the Debtor owed on the Note, but Mr. Seery understood that the Note was transferred to "an entity that Highland owns and controls," so the Debtor could effectively wipe out the Note obligation as a result of the settlement.

44. However, Mr. Seery either misapprehended or misstated the structure of HCLOM, in which the Debtor then held controlling, but not economic, interest. Any inadvertence in understanding the nature of the Debtor's interest in HCLOM was not inadvertence in its belief that it was liable under the Note. Apparently believing that the Debtor effectively owned the Note, Mr. Seery freely admitted that the Note was payable.

45. Mr. Seery knew or should have known that the Debtor did not have an economic interest in HCLOM. The declaration in support of the Debtor's first day motions addressed the

---

[32] *Id.*, 196:25-197:4, at App.0339-0340.

Note. Specifically, the Debtor stated that, as of the Petition Date, "[t]he Debtor's obligations under the CLO Purchase Agreement and CLO Note are unsecured."[33]

46. The Debtor further stated that Acis had assigned the Note to HCLOM in November 2017, and that "the Debtor does not have any beneficial ownership interest in HCLOM."[34] It concluded that "[a]s of the Petition Date, the aggregate principal balance of the CLO Note was approximately $9.5 million."[35]

47. Subsequent to the Acis settlement, the Debtor and Mr. Seery further confirmed that the Note was a valid liability of the Debtor owed to HCLOM. As explained above, the Debtor's original schedules filed prior to the installation of the Independent Board incorrectly recorded the Note principal and interest as payable to a similarly named affiliate called Highland CLO Holdco.[36]

48. The Debtor executed the Settlement Agreement with Acis on September 9, 2020,[37] and thirteen days later, the Debtor filed the Amended Schedules properly reflecting that the Note principal and interest were owed to HCLOM.[38] Mr. Seery signed the Debtor's Amended Schedules under penalty of perjury.

49. Neither HCLOM nor any other party took any action to prompt the Debtor to make this amendment to its schedules, so this amendment appears to be the Debtor's independent belief about its own liability on the Note. As of the date of this Response, the Debtor has not amended its Schedules to remove this liability. At all times, from its First Day declaration to its current schedules, the Debtor readily admitted that it owed this liability.

---

[33] Declaration of Frank Waterhouse in Support of First Day Motions, dated December 4, 2019, Dkt. 11 in Case No. 19-34054-sgj-11, annexed hereto as Exhibit 19 ("Ex. 19"), at App.1065-1108.
[34] *Id.*, ¶ 18, at App. 1071.
[35] *Id.,* ¶ 20, at App.1072.
[36] Ex. 1, Schedule E/F §§3.65 and 3.66, at App.0027.
[37] Ex. 16 at App. 1037, 1043-1044
[38] Ex. 2, Schedule E/F §§3.65 and 3.66, at App.0105.

12

**D. The Debtor's Arguments about Failure of Consideration for the Note Are Inconsistent and Unavailing.**

50. The Debtor also tries to argue that the Note is unenforceable due to a failure of consideration. When there is a written agreement between parties, the "written contract presumes that there was consideration for its execution." *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 185 (Tex. App.—Fort Worth 1995, no writ) (citing *Wright v. Robert & St. John Motor Co.*, 122 Tex. 278, 282, 58 S.W.2d 67, 69 (1933); *Hargis v. Radio Corp. of Am.*, 539 S.W.2d 230, 232 (Tex. Civ. App.—Austin 1976, no writ)).

51. Under Texas law, failure of consideration is recognized as an affirmative defense to an action on a written agreement. *See Nat'l Bank of Commerce v. Williams*, 125 Tex. 619, 84 S.W.2d 691, 692 (Tex. 1935). As such, the burden is on the Debtor to prove a failure of consideration.

52. There was no failure of consideration under the CLO Participation Agreement, to which HCLOM is not a party. As the Debtor admits in the Objection, "Highland and Acis appeared to perform their respective obligations under the [CLO Participation] Agreement through early November 2017." Objection at ¶ 2.

53. Nor was there a failure of consideration under the Note Transfer Agreement. The Note Transfer Agreement came about after the Debtor informed Acis that it was "unwilling to continue providing support personnel and other critical services to Acis with respect to the CLOs."[39] As explained above, HCLOM irrevocably agreed to step in as successor manager and Acis and HCLOM took efforts to effectuate the transfer as promised.

---

[39] Ex. 5, p. 1, at App.0137.

54. Any subsequent failure by Acis to transfer the Servicer Fees to HCMLP was not a failure by HCLOM, and such underlying claims have been released in the Debtor's settlement with Acis.

55. Additionally, Debtor has no standing to object to the Note Transfer Agreement. As a matter of law, the Debtor is not permitted to object to failure of consideration for a contract if the Debtor was not a party to that specific contract. *Berger v. Berger*, 578 S.W.2d 547, 549 (Tex. Civ. App. – Houston [1st Dist.] 1979, no writ) (holding a grantor was the only person who could set aside a deed for failure of consideration); *see also Lopez v. Morales*, No. 04-09-00476-CV, 2010 WL 3332318, at *3 (Tex. Civ. App. – San Antonio 2010, no pet.) (holding a grandson did not have standing to assert a claim for failure of consideration on behalf his grandfather when the grandson was not a party to the deed).

56. Even if payment on the Note is deemed an undeserved windfall, then it is a windfall received by Acis and allowed to occur by the Debtor and its counsel. Similarly, as asserted by the Debtor against Acis in the Acis Claim Objection, any claim by HCMLP against its alleged co-conspirators would be barred by *in pari delicto*, as HCMLP was a least equally culpable in all of the conduct it alleges."[40]

57. Texas courts refer to the doctrine of *in pari delicto* as the "unlawful acts rule." *Rico v. Flores*, 481 F.3d 234, 241 (5th Cir. 2007). It is an equitable affirmative defense which bars a party from asserting an action where the party itself has engaged in substantially equal wrongdoing or criminal conduct. *Id.* at 242. Although it is an open question in the Fifth Circuit *whether in pari delicto* can be asserted against a trustee or reorganized debtor, there is support for doing so.

---

[40] Ex. 15, ¶ 69, at App.1010.

14

*See Osherow v. York*, No. 5:17-CV-483-DAE, 2019 U.S. Dist. LEXIS 200382, at *16-17 (W.D. Tex. Aug. 5, 2019).

58. The same lawyers that signed the Objection in February 2023 signed the Acis Claim Objection in June 2020. The Debtor's First Day Declaration, which they also helped prepare, put them on notice of the issues surrounding the Note. The same lawyers assisted in negotiating the settlement of the Acis POC and sponsored Mr. Seery's testimony at the Acis 9019 hearing that the Note was a valid obligation of the Debtor.

59. The underlying facts and law are the same now as they were then, as are the persons making the arguments for the Debtor. If the Debtor is correct in its currently asserted arguments, then the Debtor's management and professionals permitted a windfall payment to Acis and the objection should be denied under the doctrine of *in pari delicto*.

E. **The Debtor Has No Right to Setoff or Recoupment Against HCLOM.**

60. Finally, the Debtor argues in the alternative that if its performance under the Note is not excused, its obligations are subject to setoff and recoupment.

61. As the Debtor noted in the Objection, recoupment requires that "(1) some type of overpayment must have been made, and (2) both the creditor's claim and the amount owed the debtor must arise from a single transaction." Objection, at ¶ 59 (citing *Sommers v. Concepción*, 20 S.W.3d 27, 35 (Tex. App. 2000)).

62. No overpayment has been made by the Debtor. As the Debtor admits in the Objection, "Highland and Acis appeared to perform their respective obligations under the [CLO Participation] Agreement through early November 2017." Objection at ¶ 2.

63. Nor did the Scheduled HCLOM Claims and HCMLP's alleged right to Servicer Fees arise from a single transaction. Any amounts owed to the Debtor arose under the CLO

15

Participation Agreement and the Scheduled HCLOM Claims arose under the Note, which was assigned to HCLOM over a year later pursuant to the Note Transfer Agreement.

64. Setoff is similarly unavailable to the Debtor. "In order for one demand to be set off against another, there must be mutuality." *F.D.I.C. v. Projects American Corp.*, 828 S.W.2d 771, 772 (Tex. App. - Texarkana1992, writ denied). "Mutuality of demand exists where debts are owing between the same parties in the same right or capacity." *Id.*

65. Here there is no mutuality. HCLOM had no obligation to pay the Debtor under the Note Transfer Agreement. Any right of the Debtor to be paid is against Acis, and such claims were unequivocally released in the Acis settlement.

WHEREFORE, HCLOM respectfully requests that this Court enter an Order (i) overruling the Objection; (ii) allowing the HCLOM Scheduled Claims; and (iii) granting such other and further relief as this Court may deem equitable and proper.

Dated April 3, 2023　　　　　　　　　　　Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas Bar No. 24036072
Michael P. Aigen
Texas Bar No. 24012196
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for Highland CLO Management, Ltd.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 3, 2023, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez