Thomas Cooke
Texas Bar No. 24124818
**AHMAD, ZAVITSANOS & MENSING PLLC**
1221 McKinney St., Suite 2500
Houston, Texas 77010
(713) 600-4925 Telephone
(713) 655-0062 Facsimile
tcooke@azalaw.com

Attorney for Acis Capital Management, L.P.
and Acis Capital Management GP, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **HIGHLAND CAPITAL MANGEMENT, L.P.,** | § | **Case No. 19-34054-sgj11** |
| | § | |
| | § | **Re: Docket 247** |
| **Debtor.** | § | |
| | § | |

---

### ACIS CAPITAL MANAGEMENT, L.P.'S RESPONSE TO SCHEDULED CLAIMS 3.65 AND 3.66 OF HIGHLAND CLO MANAGEMENT, LTD.
#### *SUBJECT TO PENDING MOTION TO INTERVENE*

---

Intervenor Acis Capital Management, L.P. ("Acis") files this Response to Highland Capital Management, L.P. ("Highland")'s Objection to Scheduled Claims 3.65 and 3.66 of Highland CLO Management, Ltd. ("HCLOM") (the "Objection") in the above-styled Bankruptcy Case.[1] Acis respectfully shows the Court as follows:

---
[1] Acis files this Response subject to its pending Motion to Intervene (Dkt. # 3691).

# I.    INTRODUCTION

Acis has brought an Adversary Proceeding against James Dondero, the former President of both Acis and Highland, for breach of fiduciary duty.[2] Acis alleges that Dondero and his accomplices "orchestrated a massive scheme to fraudulently transfer Acis's assets" away from Acis and towards entities that Dondero controlled.[3] Acis further alleges that Dondero's scheme included the fraudulent transfer of a promissory note (the "Note")[4] worth approximately $9.5 million, plus interest.[5] That same Note is the basis of HCLOM's Scheduled Claims 3.65 and 3.66 in the above-styled Bankruptcy Case.[6] Highland has filed an Objection to HCLOM's Scheduled Claims 3.65 and 3.66, asserting that HCLOM's claims should be disallowed with prejudice or, in the alternative, that Highland is entitled to offset and recoupment from Acis.[7]

HCLOM's claims should be disallowed with prejudice because

(1) the agreement that purportedly transferred the Note to HCLOM fails for lack of consideration to Acis, and

(2) HCLOM cannot claim an asset it received by fraudulent transfer.

Highland is not entitled to offset or recoupment from Acis because

(1) any claim that Acis owes Highland is barred by the parties' October 2020 settlement and Acis's January 2019 confirmed bankruptcy plan, and

(2) any alleged nonperformance by Acis is excused by Highland's anticipatory breach.

It is not clear whether Highland is arguing that Acis owes Highland for unpaid servicer fees, especially given that Highland fails to acknowledge that such a claim is foreclosed by Acis's bankruptcy plan and by the parties' settlement agreement.

---

[2] *See* Original Complaint of Acis Capital Management, L.P. and Acis Capital Management GP, LLC in Bankruptcy Case No. 18-30264-SGJ-11 ("Original Complaint"), attached as Exhibit B, p. 2 ¶ 1.
[3] *See id.*
[4] Note, attached as Exhibit E.
[5] *See* Ex. B, Original Complaint, pp. 30-31 ¶¶ 89-92.
[6] Notice of Filing of Debtor's Amended Schedules, p. 18 [Docket No. 1082-1].
[7] Objection [Docket No. 3657].

## II.    BACKGROUND

The Court is well aware of the facts underlying the involuntary bankruptcy filing of Acis LP and Acis GP. Rather than attempt an exhaustive restatement here, Acis incorporates by reference this Court's Findings of Fact and Conclusions of Law issued after the involuntary trial.[8] Acis also incorporates this Court's Findings of Fact and Conclusions of Law issued in connection with confirmation of the Acis bankruptcy plan.[9] The facts below are tailored specifically to respond to the claim objection at hand.

### A.    Acis was founded as a portfolio manager with Highland employees.

Acis was founded in 2011 as a registered investment advisor to raise money from third-party investors to invest in certain collateralized loan obligation funds (the "CLOs").[10] Acis was the portfolio manager for the CLOs and generated revenue primarily through the management of the CLOs via certain portfolio management agreements (the "PMAs").[11]

Acis has no employees of its own. Instead, it contracted out its administrative functions and portfolio management responsibilities to Highland Capital Management, L.P. ("Highland") through shared services and sub-advisory agreements.[12]

### B.    Acis sold part of its CLO Servicer Fees to Highland in exchange for the Note.

On October 7, 2016, Acis LP and Highland entered into an Agreement for Purchase and Sale of CLO Participation Interests ("Purchase Agreement"), whereby Acis sold some of its

---

[8] *See* Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued after Trial on Contested Involuntary Bankruptcy Petitions in Bankruptcy Case No. 18-30264-SGJ-7 ("Involuntary Opinion"), attached as Exhibit A.

[9] Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, as Modified [Case No. 18-30264, Docket Nos. 829 and 830].

[10] *See* Ex. A, Involuntary Opinion, p. 9 ¶¶ 23-24.

[11] *See id.* at 9-15 ¶¶ 22-28.

[12] *See id.* at 14-15 ¶¶ 27-28.

interest in cash flow from the CLO PMAs to Highland.[13] Acis promised to "promptly remit, or cause to be promptly remitted, to [Highland] the cash received with respect to the Acis Participation Interests."[14] In exchange, Highland promised Acis cash up front and a series of installment payments pursuant to a $12,666,446 Promissory Note (the "Note").[15] In other words, Highland purchased Acis's right to receive Servicer Fees.

The Purchase Agreement required Highland to make an initial payment of $666,655.[16] Highland was also required to make the following payments to Acis:

> (1) a $3,370,964 payment on May 31, 2017;
> (2) a $5,286,243 payment on May 31, 2018; and
> (3) a $4,677,690 payment on May 31, 2019.[17]

Highland only made the first of these three payments to Acis,[18] leaving a balance of approximately $9.5 million on the Note—plus interest.

## C.   James Dondero attempted to transfer the Note and the CLO PMAs away from Acis.

On October 20, 2017, Josh Terry, Acis's former portfolio manager, obtained an Arbitration Award against Acis in the amount of $7,949,749.15, plus post-award interest at the legal rate, based on theories of breach of contract and breach of fiduciary duty.[19]

On November 3, 2017, Acis, Highland, and HCLOM[20] entered into an Agreement for Assignment and Transfer of Promissory Note (the "Transfer Agreement"), in an effort to transfer

---

[13] *See id.* at 16-17 ¶ 31(a); *see also* Purchase Agreement, attached as Exhibit C.
[14] *See* Ex. C, Purchase Agreement, p. 7 ¶ 4.1.
[15] Ex. A, Involuntary Opinion, p. 16 ¶ 31(a).
[16] *Id.*
[17] Ex. E, Note, p. 6.
[18] Dkt. 3657, Objection, p. 12 ¶ 37.
[19] Ex. A, Involuntary Opinion, p. 4 ¶ 8.
[20] HCLOM was registered in the Cayman Islands on October 27, 2017, roughly a week before the Note Transfer (and the exact same day as the ALF PMA Transfer). HCLOM had *zero* portfolio or collateral management experience when it entered the Transfer Agreement. To the contrary, it appears that HCLOM was created specifically to hold the Note and eventually take possession of the PMAs in an offshore jurisdiction that would be difficult for Terry or any judgment creditor to reach.

the Note from Acis to HCLOM.[21] The Transfer Agreement stated that "[Highland] has notified Acis that [Highland] is unwilling to continue to provide support personnel and other critical services to Acis with respect to the CLOs[.]"[22] Accordingly, the Transfer Agreement stated, Acis would no longer be able to "fulfill its duties as portfolio manager of the CLOs," and would thus "assign its rights as portfolio manager in the CLOs to a qualified successor . . . ."[23]

As purported consideration for Acis assigning the Note to HCLOM, the Transfer Agreement provided that HCLOM would "irrevocably commit[]" to acting as a "Successor Manager."[24] HCLOM would become the "Payee" under the Note and would remit to Highland the Servicer Fees that Acis had previously received for managing the CLO portfolios.[25]

James Dondero, Highland CEO and then-President of Acis's general partner, Acis Capital Management GP, LLC, signed the Transfer Agreement on behalf of both Acis and Highland.[26]

Highland alleges that after the Transfer Agreement was signed, Acis stopped remitting servicer fees to Highland, and that the last such payment was made on November 1, 2017.[27] In fact, Acis continued to pay Highland sub-advisory and shared service fees even after the purported Transfer and in spite of Highland's breach. Acis paid $941,000 on November 3, 2017—the same date the Transfer Agreement was signed—and an additional $85,000 in December 2017.[28]

---

[21] Transfer Agreement, attached as Exhibit D.
[22] *Id.* at 1.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 2 ¶ 3.
[26] *Id.* at 6.
[27] Dkt. 3657, Objection, p. 12 ¶ 38.
[28] *See* Proof of Payment, attached as Exhibit J, pp. 44-45; *see also* Highland General Ledger, attached as Exhibit K, rows 733 and 740.

**D.    Acis entered bankruptcy and pursued Dondero for fraudulent transfer of the Note.**

On January 30, 2018—roughly three months after the Transfer Agreement—Acis LP and Acis GP entered bankruptcy.[29] In March 2018, this Court held a multi-day trial, culminating in the Court's April 13, 2018, Involuntary Opinion.[30] On May 14, 2018, Robin Phelan was appointed trustee.[31] This Court confirmed the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC on January 31, 2019 (the "Plan").[32] The Plan provided that Acis would be substituted for Phelan as trustee and in any related adversary proceedings, with "exclusive standing and authority to prosecute, settle or compromise" claims for breach of fiduciary duty and fraud on Acis's behalf.[33]

On April 11, 2020, Acis filed an Adversary Proceeding against Dondero and other defendants, bringing causes of action for breach of fiduciary duty and asserting that Dondero "directed Highland Capital and its affiliates to commit [a] series of fraudulent transfers . . . in order to denude Acis of its assets and transfer Acis's valuable business to [] Highlands."[34]

**E.    Highland filed for bankruptcy, HCLOM asserts a claim, and Highland objects.**

In October 2019, Highland Capital filed for bankruptcy (the "Highland Bankruptcy").[35] This Court confirmed a plan of reorganization for Highland on February 22, 2021.[36] In September 2020, HCLOM, as a nonpriority creditor, filed claims 3.65 and 3.66 (collectively, the "HCLOM Scheduled Claim") in the Highland bankruptcy proceeding. Claim 3.65 asserts that Highland owes

---

[29] Ex. A, Involuntary Opinion, p. 7 ¶ 16.
[30] *Id.* at 1.
[31] *See* Chapter 11 Notice of Appointment of Trustee [Case No. 18-30264, Docket No. 213].
[32] *See* Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, as Modified [Case No. 18-30264, Docket Nos. 829 and 830].
[33] Plan, p. 36 ¶ 2 [Case No. 18-30264, Docket No. 660] (defining "Estate Claims" as including claims for breach of fiduciary duty and fraud).
[34] Ex. B, Original Complaint, p. 45 ¶ 138.
[35] *See* Voluntary Petition for Non-Individuals Filing for Bankruptcy [Docket No. 3].
[36] Order Confirming Fifth Amended Chapter 11 Plan [Docket No. 1943].

HCLOM $599,187.26 for interest payable on the Note. Claim 3.66 asserts that Highland owes HCLOM $9,541,446 payable on the Note itself.[37]

On February 2, 2023, Highland objected to the HCLOM Scheduled Claim, arguing that because Acis "has continued to manage the CLOs," and because "no Servicer Fees were paid to Highland[,]" Highland is "relieved" of its "obligations under the Note[,]" and the Transfer Agreement is void.[38] Alternatively, Highland argues that if it is determined to have any continuing obligations under the Note, "any such obligations would be subject to Reorganized Highland's rights of offset and recoupment for all amounts due from both Acis and HCLOM (*i.e.*, all covered Servicer Fees on the Acis CLOs from the date of the Note to the present)."[39]

## III.    RELIEF REQUESTED AND BRIEF IN SUPPORT

### A.    The Transfer Agreement is invalid for lack of consideration to Acis.

HCLOM's Claims 3.65 and 3.66 should be disallowed with prejudice because they are premised on the invalid and unenforceable Transfer Agreement.

Under Texas law, "[a] contract must be based on a valid consideration; that is, mutuality of obligation." *Plains Builders, Inc. v. Steel Source, Inc.*, 408 S.W.3d 596, 602 (Tex. App.—Amarillo 2013, no pet.). "Consideration is a present exchange bargained for in return for a promise and consists of benefits and detriments to the contracting parties." *TLC Hospitality, LLC v. Pillar Income Asset Management, Inc.*, 570 S.W.3d 749, 760 (Tex. App.—Tyler 2018, pet. denied). "The detriments must induce the parties to make the promises, and the promises must induce the parties to incur the detriments." *Id.*

---

[37] Notice of Filing of Debtor's Amended Schedules, p. 18 [Docket No. 1082-1].
[38] Dkt. 3657, Objection, pp. 3-4 ¶ 5.
[39] *Id.* at 4 ¶ 6.

The Transfer Agreement offered Acis no meaningful consideration. It was one of many transactions initiated by Dondero to denude Acis of its assets and make it "judgment-proof" so that Terry could not collect the Arbitration Award.[40] Dondero first created a problem by refusing to provide Acis with employees to manage the CLOs, then purported to solve that problem by having HCLOM step into Acis's shoes, take over management of the CLOs, and receive the right to payments under the Note. Instead of promising Acis some benefit in exchange for Acis incurring a detriment, *see Roark*, 813 S.W.2d at 496, the parties to the Transfer Agreement promised that Acis would incur a detriment in exchange for ***another*** detriment: Acis would give up its right to payment under the Note "in exchange for" also giving up its valuable CLO management business. In other words, the Transfer Agreement would have required Acis to ***pay for the privilege*** of irrevocably losing its business. This is not consideration—it is extortion.

Moreover, the Transfer Agreement purported to confer great benefits on Highland without imposing any corresponding obligation on Highland. *See Mosley*, 304 S.W.3d at 628 ("Lack of consideration occurs when the contract, at its inception, does not impose obligations on both parties."). Highland would have benefited by transferring its liability under the Note away from Acis, thus placing the Note beyond the reach of Mr. Terry and any other creditors. But nothing in the Transfer Agreement imposes any corresponding obligation on Highland. Without mutuality of obligation, the Transfer Agreement is unenforceable. *See Mosley*, 304 S.W.3d at 628.

Accordingly, the claim for the Note is not HCLOM's to assert. If anyone had a claim to the Note, it would be Acis—but, as explained below, Acis and Highland have settled any claims they might bring against each other for the Note. As for HCLOM, it "obtained" this Note fraudulently, and the Court should disallow its Claims 3.65 and 3.66 with prejudice.

---

[40] *See* Ex. B, Original Complaint, pp. 30-31 ¶¶ 89-92.

**B.     HCLOM cannot recover under a Note it received fraudulently.**

Section 502 of the Bankruptcy Code provides that when a party in interest objects to a claim, "the court, after notice and a hearing," shall allow such claim ***except*** to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" 11 U.S.C. § 502(a)-(b)(1). The same section further provides that "the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer ***avoidable*** under section 522(F), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title[.]" 11 U.S.C. § 502(d).

Notably, Section 502(d) does not require that the transfer in question be actually ***avoided***— to disallow the claim, the Court need only find that the claimant received a transfer that was ***avoidable*** under the enumerated statutes. One of those statutes is Section 548, which provides that a trustee may avoid any transfer of a debtor's interest in property made or incurred within two years before the date of the filing of a bankruptcy petition if the debtor made the transfer "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted." 11 U.S.C. § 548(a)(1)(A). Alternatively, Section 548 allows for the avoidance of transfers for which the debtor "received less than a reasonably equivalent value in exchange" and "intended to incur, or believed that [it] would incur, debts that would be beyond the debtor's ability to pay as such debts matured[.]" 11 U.S.C. § 548(a)(1)(B)(i)(III).

The purported transfer of the Note is fraudulent under both rubrics. Dondero executed the Transfer Agreement in November 2017[41]—just two months before the Acis Involuntary Petitions.[42] Dondero made the transfer with the intention of hindering and delaying Acis's payment

---

[41] Ex. D, Transfer Agreement, p. 1.
[42] *See* Ex. A, Involuntary Opinion, pp. 1-2 (stating that Terry filed the petitions on January 30, 2018).

of the Arbitration Award to Terry, *i.e.*, with the intent to defraud Terry. That satisfies the elements of fraudulent transfer under § 548(a)(1)(A). Alternatively, the transfer is fraudulent under § 548(a)(1)(B) because Dondero made the transfer as President of Acis while giving Acis nothing in return (far, far "less than a reasonably equivalent value in exchange") and while believing that Acis would incur debts beyond Acis's ability to pay (as explained in detail below, Dondero testified in the Acis Adversary Proceeding that he ***personally approved*** a provision in the Transfer Agreement that would allow for Acis to be reimbursed for legal and administrative expenses if Acis became unable to pay,[43] but he never intended for that commitment to be honored, and in fact it was not honored).

The purported transfer of the Note to HCLOM was fraudulent and therefore avoidable under § 548, which in turn means that HCLOM's claim to the Note is disallowed under § 502.

## C.     Highland has no right to offset or recoupment from Acis.

Highland argues that Acis's decision to stop remitting Servicer Fees after November 3, 2017 constituted a "breach of the covenant to make such payments under the Purchase Agreement," and therefore "Highland's obligation to pay any amounts under the Note was excused[,]" and Acis "forfeited its rights to enforce Highland's obligations under the Note."[44] Highland further argues that it is owed "offset and recoupment"[45] for fees that Acis did not remit:

> Even if Reorganized Highland's remaining obligations under the Note are not excused, Reorganized Highland's rights of setoff and recoupment would reduce those obligations by an amount that is not less than the amount of unpaid Servicer Fees that should have been remitted to Highland through August 2019 by Acis and HCLOM. . . . Because Highland's obligations under the Note arose from the same transaction as Acis' payment obligations under the Purchase Agreement, Highland's obligations must be reduced under a theory of recoupment by the amount of Acis' obligations to Highland. Alternatively, even if Highland's obligations under the Note are not viewed as arising under the same transaction as

---

[43] James Dondero – Cross (Under Seal), 22:13-20, attached as Exhibit F.
[44] *See* Dkt. 3657, Objection, p. 13 ¶¶ 39-40.
[45] *See id.* at 4 ¶ 6.

Acis's or HCLOM's respective obligations to Highland, Reorganized Highland's obligations must be reduced under a theory of setoff by all amounts ***owed by Acis*** and HCLOM to Highland, which include all unpaid obligations of those entities under the Purchase Agreement and the Assignment.

Dkt. 3657, Objection, pp. 20-21 ¶¶ 57-61 (emphasis added).

Highland is wrong. Acis did not breach, and it does not owe Highland any recoupment. It is not entirely clear from Highland's objection whether it is asserting merely that its obligation to HCLOM must be reduced by the amount of allegedly unpaid Servicer Fees, or whether Highland actually intends to seek the allegedly unpaid fees from Acis. If Highland intends the latter, then Highland cannot succeed.

First, Acis and Highland have settled all claims that they brought or might have brought against one another in the Highland Bankruptcy,[46] and Acis's bankruptcy plan similarly forecloses any right of Highland to seek recoupment from Acis now. But, had Acis and Highland litigated this issue, Acis would have shown that it is Highland who owes Acis for the Note—not the other way around.

Second, Acis was excused from its obligation to remit Servicer Fees when Dondero executed the Transfer Agreement, because the Transfer Agreement itself was an act of anticipatory breach. By executing the Transfer Agreement, Dondero announced ***Highland's*** intention to breach the Purchase Agreement, the Note, and the Shared Service and Sub-Advisory Agreements that had governed the Acis-Highland business relationship up to that point. This anticipatory breach not only excused Acis's nonperformance, but also constituted an Event of Default that made the entire balance of the Note immediately due and payable to Acis.

---

[46] Order Approving Debtor's Settlement with (A) Acis Capital Management, L.P. and Acis Capital Management GP LLC (Claim No. 23), (B) Joshua N. Terry and Jennifer G. Terry (Claim No. 156), and (C) Acis Capital Management, L.P. (Claim No. 159) and Authorizing Actions Consistent Therewith [Docket No. 1302].

1.    <u>Highland can seek nothing from Acis per their Settlement and Acis's Plan.</u>

On October 27, 2020, the Court signed an order approving Highland's settlement with Acis in the Highland Bankruptcy.[47] As part of this settlement, Highland agreed never to bring any claims against Acis that "were or could have been asserted in, in connection with, or with respect to the Filed Cases[.]"[48] This would include Acis's claims against Highland that the Note was fraudulently transferred, which Acis asserted in Adversary No. 18-03078-sgj,[49] and which Highland responded to.[50] Accordingly, Highland cannot now seek to recoup from Acis any of the Servicer Fees that Highland alleges Acis still owes. Highland forfeited any such claim when the parties settled.

Moreover, Acis's bankruptcy plan, confirmed in January 2019, provides that, with specifically enumerated exceptions, "all Persons shall be precluded and forever barred by the Plan Injunction from asserting against [Acis] any . . . further Claims or causes of action based upon any act, omission, transaction or other activity of any kind or nature that occurred or came into existence prior to the Effective Date[.]"[51] "All persons" includes Highland, and the Plan Injunction prohibits it from "the commencing or continuation in any manner, directly or indirectly, of any action, case, lawsuit or other proceeding of any type or nature against [Acis] with respect to any such claim or interest arising or accruing before the Effective Date[.]"[52]

---

[47] *Id.*
[48] *See id.* at 16-17.
[49] *See* Defendant's Answer, Affirmative Defenses, Counterclaims, and Third Party Claims, pp. 24-25 ¶¶ 161-162 [Case No. 18-03078-sgj, Docket No. 23].
[50] *See* Objection to Proof of Claim of Acis Capital Management L.P. and Acis Capital Management GP, LLC, pp. 36-37 ¶¶ 57-58 [Case No. 19-34054, Docket No. 771].
[51] Plan, p. 26 § 14.01(a) [Case No. 18-30264, Docket No. 660].
[52] *Id.* at 26-27 § 14.03.

There are no more claims between Acis and Highland. What remains are Acis's claims against Dondero for the "fraudulent schemes" he orchestrated to "transfer Acis's valuable business to the Highlands."[53] Acis will recover the value of the Note from Dondero in a separate proceeding.

2.    Highland's anticipatory breach excused Acis's alleged nonperformance.

Acis does not owe Highland recoupment for failing to remit Servicer Fees. Instead, Acis's refusal to remit Servicer Fees is excused by *Highland's* anticipatory breach of the agreements that governed the Acis-Highland business relationship. Dondero and his accomplices are responsible for this breach, and Acis will hold those parties accountable in its Adversary Proceeding.

"'A fundamental principle of [Texas] contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform,' and its failure to perform cannot be considered a termination or breach of the contract." *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 406 (N.D. Tex. 2016), aff'd as modified and remanded, 725 F. App'x 256 (5th Cir. 2018) (quoting *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)). A breach of contract occurs "when a party fails *or refuses* to do something he has promised to do." *Atrium Med. Ctr., LP v. Houston Red C LLC*, 546 S.W.3d 305, 311 (Tex. App.—Houston [14th Dist.] 2017, aff'd, 595 S.W.3d 188 (Tex. 2020)) (emphasis added).

"In Texas, to prevail on a claim for anticipatory breach, a plaintiff must establish each of the following elements: (1) an absolute repudiation of the obligation; (2) a lack of just excuse for the repudiation; and (3) damage to the nonrepudiating party." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 630 (N.D. Tex. 2010) (citing *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004)).    "An anticipatory repudiation of a contract may consist of either words or actions

---

[53] *See* Complaint, Docket Entry No. 1 in Case No. 20-03060-sgj, pp. 42-43 ¶ 126; pp. 47-48 ¶ 148.

by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms." *Id.* (citing *Builders Sand, Inc. v. Turtur*, 678 S.W.2d 115, 120 (Tex. App.—Houston [14th Dist.] 1984, no writ)).

By signing the Transfer Agreement, Dondero repudiated the Purchase Agreement and the Note.[54] The Purchase Agreement obligated Highland to deliver the Note to Acis in consideration of the sale of the Acis Participation Interests.[55] The Note obligated Highland to pay Acis a series of installment payments, including a payment of about $5.2 million in May 2018 and a payment of about $4.6 million in May 2019.[56] But when Dondero signed the Transfer Agreement, he explicitly stated that Highland would ***not*** make these payments to Acis, but would instead assign the Note to HCLOM.[57] This was an absolute repudiation of the Purchase Agreement and Note—a statement by Dondero that he "[was] not going to perform the contract according to its terms." *See Narvaez*, 757 F. Supp. at 630. *See also Murray v. Crest Const., Inc.*, 900 S.W.2d 342, 344 (Tex. 1995) ("Crest repudiated the Beaumont settlement agreement by informing Murray that it would not perform on the promissory note when its performance became due.").

The Transfer Agreement was also an absolute repudiation of Highland's duties under the Shared Services and Sub-Advisory Agreements. These agreements, read together, obligated Highland to provide Acis with "Shared Services, including without limitation, all of the (i) finance and accounting services, (ii) human resource services, (iii) marketing services, (iv) legal services, (v) corporate services, (vi) information technology services, and (vii) operations services" that Acis required to advise the CLOs.[58] But Dondero, in executing the fraudulent Transfer Agreement,

---

[54] For purposes of this motion, Acis agrees with Highland that the Note and the Purchase Agreement must be read together as one document. *See* Dkt. 3657, Objection, pp. 15-16 ¶¶ 44-46 (listing cases).
[55] Ex. C, Purchase Agreement, p. 2 ¶ 1.1.
[56] *See* Ex. E, Note, p. 1; *see id.* at 6.
[57] Ex. D, Transfer Agreement, p. 1.
[58] *See* Sub-Advisory Agreement, p. 1 ¶ 2, attached as Exhibit L (providing that Highland will provide the shared services described in the Shared Services Agreement); Shared Services Agreement, p. 3 § 2.01, attached as Exhibit I

stated that Highland was simply "unwilling to continue to provide support personnel and other critical services to Acis with respect to the CLOs[.]"[59] Dondero knowingly and intentionally hamstrung Acis's ability to do its job and serve its clients. By sabotaging a company whose interests he was obligated to serve, Dondero breached his fiduciary duty, and he and his accomplices will soon be held accountable.

Dondero did not even attempt to offer a "just excuse" for his brazen repudiation of Acis and Highland's agreements. *See Narvaez*, 757 F. Supp. at 630. The only "excuse" appearing on the face of the Transfer Agreement is that Highland was "unwilling to continue to provide support personnel and other critical services to Acis with respect to the CLOs[.]"[60] The reason for Highland's unwillingness is obvious—Dondero wanted to deprive Acis of a revenue stream that would have allowed Acis to pay Terry the Arbitration Award. There is nothing "just" about trying to avoid justice.

Dondero's fraudulent transfer of the Note injured Acis in several ways. For one, as stated above, Dondero denied Acis access to the services that Acis depended on Highland to provide. Per the Shared Services and Sub-Advisory Agreements, Acis relied on Highland to share employees who performed the various "back- and- middle-office" tasks that allowed Acis to function. Such an event could have caused an Event of Default under the CLO PMAs, which in turn would have terminated Acis's right to receive fees paid from the CLOs. Had such termination occurred, Highland's obligations under the Note would have survived, and its payments would remain due.

Second, Acis was injured to the tune of at least $9.5 million because Dondero's fraudulent Transfer Agreement deprived Acis of its ability to sell the Note. Before the purported transfer,

---

(setting forth the duties quoted above); *see also* Fourth Amended and Restated Shared Services Agreement, pp. 4-5 § 2.01, attached as Exhibit H (restating many of the same duties, as well as others).
[59] *Id.*
[60] *Id.*

Acis could have marketed the Note to third parties. But Dondero, as President of Acis, made no effort to get a third-party valuation of the Note.[61] Instead, he purported to transfer the Note to HCLOM for effectively nothing. In Texas, where a transfer is avoidable as fraudulent, a creditor may recover judgment for the value of the asset transferred against the person for whose benefit the transfer was made. *See* TEX. BUS. AND COM. CODE § 24.009(b)(1). In this case, that person is Dondero, and Acis will seek the full value of the Note from him in the separate Adversary Proceeding.

Less obvious, but no less serious, is how Dondero's decision to stop making payments to Acis under the Note endangered Acis's ability to comply with financial regulations. The Purchase Agreement states that "recent European and U.S. regulatory rules require sponsors of newly issued CLO investments, such as [Acis], to retain during the life of the CLO, a five percent ownership interest in the equity or capital structure of the CLO (the 'Risk Retention Amount')."[62] The Purchase Agreement further states that the reason why Acis remitted Servicer Fees to Highland in exchange for the Note, as opposed to just keeping Servicer Fees for itself, was that "cash flows from the Servicer Fees [were] unpredictable and unstable" and that Acis had "determined that obtaining a guaranteed fixed amount of cash flow from [Highland] [was] a prudent business decision in order to facilitate [Acis's] compliance with its obligation to contribute funds toward the Risk Retention Amount to the joint venture entity."[63] The Promissory Note provided important capital for Acis to be able to issue new CLOs and comply with risk retention. Without the regular payments provided by the Note, Acis risked regulatory noncompliance on any new CLOs.

---

[61] Ex. F, James Dondero – Cross (Under Seal), 24:1-6.
[62] Ex. C, Purchase Agreement, p. 1.
[63] *Id.* at 1-2.

16

While the harm to Acis is still being quantified and is by no means limited to the injuries listed above (and will be litigated in full in Acis's separate proceeding against Dondero), there is no doubt that it was substantial. Accordingly, Highland anticipatorily breached its agreements with Acis, *see Narvaez*, 757 F. Supp. at 630, and Acis owes Highland nothing.

       3.    <u>The Transfer Agreement was an "Event of Default" under the Note.</u>

While Acis maintains that all claims between it and Highland are settled as to the Note, Highland appears to argue that it has "the right to seek specific performance of the Purchase Agreement," *i.e.*, to seek remittance of Servicer Fees.[64] The reality is that even if Acis and Highland may still bring claims against one another for the Note (they cannot), ***Highland*** owes ***Acis*** $9.5 million—plus interest—because Dondero's fraudulent Transfer Agreement caused multiple "Events of Default" that not only terminated Acis's commitment to remit Servicer Fees but also made the ***entire balance of the Note immediately due and payable to Acis***.

The Note provides that Highland "shall be in default under this Note upon the occurrence of any of" several enumerated "Events of Default," including:

    (a)  The failure of Maker [(Highland)] to make any payment required to be made under this Note when such payment becomes due;

    (b)  Maker defaults in the performance of any obligation, covenant, or agreement now or hereafter made or owed by Maker to Payee [(Acis)], whether under this Note or ***any related document***;

    (c)  Any representation or warranty made by Maker to Payee in connection with this Note or any document executed or delivered in connection therewith, is false or misleading in any material respect when made[.]

Note, p. 2 (emphasis added).

There is no doubt that the Transfer Agreement constituted a default in the performance of an "obligation, covenant, or agreement" under the Note and related documents. As explained

---

[64] *See* Dkt. 3657, Objection, p. 8 ¶ 21.

above, the Transfer Agreement repudiated Highland's obligation to make payments to Acis required under the Note, while also repudiating Highland's obligations under the Purchase Agreement, Shared Services Agreement, and Sub-Advisory Agreement. Dondero therefore caused an Event of Default under (b) and announced his intention to cause one under (a).

Dondero caused an Event of Default under (c) because a number of statements in the Transfer Agreement were materially false or misleading when made. For one, the Transfer Agreement stated that Highland had "notified Acis" that it was unwilling to continue to provide support personnel.[65] Nothing in the record suggests that Highland ever gave Acis any such notification before the Transfer Agreement. This misrepresentation is material because the live Shared Services Agreement required written notice of termination 30 days in advance.[66]

The Transfer Agreement contains another false statement: its promise that "HCLOM shall promptly pay to Acis, or at Acis' written request, to Acis' creditors," the amount of any "shortfall" that Acis faced in paying its legal or administrative expenses, up to three million dollars.[67] Dondero testified in March 2018 that he personally approved including this provision:

> I wanted there to be something extra. I don't [know] if it was my idea or the lawyer's idea, but I approved of the idea of—what we described as the three-million-dollar windfall, or the three million dollars for expenses, beyond just the cancellation of the Note and the flows that—to have an additional value shifted in the direction of Acis.

Ex. F, James Dondero – Cross (Under Seal), 22:13-20.[68]

On direct examination, Dondero was asked about whether he intended to honor this provision of the agreement:

---

[65] Ex. D, Transfer Agreement, p. 1.
[66] Ex. H, Fourth Amended and Restated Shared Services Agreement, p. 14 § 7.01.
[67] *See* Ex. E, Note, p. 2 ¶ 4 (in which HCLOM promises to pay the "Acis Expenses"); p. 1 (defining the "Acis Expenses" as including Acis's legal and administrative expenses).
[68] Ex. F, James Dondero – Cross (Under Seal), 22:13-20.

Q:    Therefore, was there ever any occasion to trigger this particular expense and
      support provision?

A:    No.

Q:    Now, if there came a time with litigation costs and other expenses where
      Acis was unable to pay its expenses when they became due, what was your
      intent in signing this as to whether or not HCLOM would honor this and
      make the payment?

A:    We would – we would honor it and – and pay as appropriate.

Transcript of Hearing, 146:4-12 [Case No. 18-30264-sgj11, Docket No. 99].

But Dondero—who signed on Highland's behalf—never intended to honor this provision
of the agreement. Following Dondero's testimony, on May 14, 2019, counsel for Acis sent a letter
to then-counsel for Highland and HCLOM seeking two million dollars in legal expenses and one
million in administrative expenses and requesting that a check be made out to Acis on or before
May 30, 2019.[69] This request was never honored and never received any response. Highland filed
for bankruptcy five months later.[70]

All of the above breaches, repudiations, and misrepresentations constitute Events of
Default under the Note. The Note provides that, should an Event of Default occur, Acis may
"(a) terminate [its] commitment to make any advances under this Note" and/or "(b) declare the
indebtedness evidenced by this Note, or any part thereof, immediately due and payable[.]"[71] The
Note further provides that Acis may undertake these remedies "at its option and at any time, and
without presentment, demand, or protest," and that "failure or delay of [Acis] to exercise any of
its rights or remedies shall not constitute a waiver thereof."[72] Accordingly, Acis had a right to the

---

[69] Letter Re: Assignment and Transfer Agreement dated November 3, 2017 between Highland Capital Management,
LP, Highland CLO Management, L.P., and Acis Capital Management, L.P., attached as Exhibit G.
[70] Dkt. 3, Voluntary Petition for Non-Individuals Filing for Bankruptcy.
[71] Ex. E, Note, p. 3.
[72] Id.

entire balance of the Note the moment Dondero executed the Transfer Agreement. If the settlement does not truly settle Acis's and Highland's claims, then Acis *still* has that right.

Acis's right to pursue the full $9.5 million value of the Note is not forfeited or diminished in any way by its decision to stop remitting Servicer Fees. Section 3.6 of the Purchase and Sale Agreement explicitly provides that Acis

> may exercise all of its legal rights and remedies to enforce [Highland's] obligations under the Note even if the Acis Participation Interests are not paid . . . for any reason, including the termination of [Acis] as the manager, a hostile buyout of [a] CLO, or any other reason (other than as a result of [Acis] breaching its covenants under this Agreement or as a result of fraud or by willful misconduct of [Acis]) . . . .

Ex. C, Purchase Agreement, pp. 6-7.

Highland asserts that HCLOM and Acis breached their covenant to "remit the cash received with respect to the Acis Participation Interests to Highland" and that Section 3.6 therefore excused Highland's own nonperformance under the Note and forfeited Acis's rights to enforce Highland's obligations.[73] But for reasons explained above, Acis did not breach any covenant when it stopped remitting Servicer Fees. Accordingly, Section 3.6 is not Highland's shield, but Acis's sword, establishing Acis's right to seek the full amount of the Note from Highland.

## IV.    CONCLUSION

For the foregoing reasons, Intervenor Acis Capital Management, L.P. respectfully requests the Court disallow HCLOM's Claims 3.65 and 3.66 with prejudice. Additionally, Acis seeks a declaration from the Court that it owes no continuing obligation or debt to Highland under the Note or Purchase Agreement.

---

[73] *See* Dkt. 3657, Objection, p. 13 ¶ 40.

Respectfully submitted,

*/s/ Thomas Cooke*
AHMAD, ZAVITSANOS & MENSING, PLLC
Joseph Y. Ahmad
Texas Bar No. 00941100
Federal Bar No. 11604
Shawn M. Bates
Texas Bar No. 24027287
Federal Bar No. 30758
Alex Dvorscak
Texas Bar No. 24120461
Thomas Cooke
Texas Bar No. 24124818
1221 McKinney St. Suite 2500
Houston, Texas 77010
(713) 655-1101 Telephone
(713) 655-0062 Facsimile
joeahmad@azalaw.com
sbates@azalaw.com
advorscak@azalaw.com
tcooke@azalaw.com

**COUNSEL FOR ACIS CAPITAL
MANAGEMENT, L.P.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 3, 2023, a true and correct copy of the foregoing document was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this bankruptcy case, include both Highland and HCLOM, through counsel.

*/s/  Thomas Cooke*
Thomas Cooke