IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case N. 19-34054 (SGJ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JAMES D. DONDERO, DUGABOY INVESTMENT TRUST, GET GOOD TRUST, AND STRAND ADVISORS, INC.'S MOTION TO STAY AND MOTION TO COMPEL MEDIATION**

**I.    INTRODUCTION**

Defendants James D. Dondero, Strand Advisors, Inc., Dugaboy Investment Trust, and Get Good Trust (collectively, the "Dondero Defendants") hereby file this Motion to Stay and to Compel Mediation (the "Motion"). This bankruptcy case has been pending a long time, and the professional fee burn has been tremendous. That professional spend is in part what caused Marc S. Kirschner, as Trustee of the Litigation Sub-Trust (the "Litigation Trustee"), to move to stay the adversary proceeding filed by the Litigation Trustee against the Dondero Defendants and others. During the hearing on Kirschner's motion to stay, the Court expressed willingness to entertain a broader stay of proceedings to facilitate mediation and eventual settlement of all pending disputes between the parties. The Dondero Defendants agree that an attempted resolution is long overdue, and mediation is the best and least expensive method of accomplishing that goal. But in addition, mediation is an opportunity for the Debtor to finally provide information that is critically important to ultimate resolution, including information regarding the value of the estate and its current and contingent liabilities—information that, for whatever, reason has been shrouded in secrecy

1

throughout these bankruptcy proceedings.

Accordingly, and as set forth in greater detail below, the Court should employ its inherent powers to fashion a stay that will (1) pause the numerous adversary proceedings and disputes still being litigated in the context of the Highland Capital Management, L.P. bankruptcy ("HCMLP Bankruptcy"), (2) require the parties to submit their remaining disputes to mediation, and (3) mandate disclosure by the Debtor and Claimant Trustee of information that will allow the parties to meaningfully discuss global resolution.  The Dondero Defendants' Motion should be granted.

## II.    FACTUAL BACKGROUND

### A.    The Parties Fail To Reach A Global Resolution In Mediation, And The Court Confirms A "Monetization" Plan

As the Court is aware, the Dondero Defendants fought hard to reach agreement with the Debtor to implement a plan of reorganization that would resolve the estate, pay all creditors in full, and allow Highland Capital Management, L.P. ("HCMLP") to emerge from bankruptcy as a going concern.  *See* Order Confirming Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) ("Confirmation Order"), Bankr. Dkt. 1943, ¶ 17.  To facilitate what the Court has deemed a "grand bargain" between the parties, the Court ordered the Debtor, Acis Capital Management GP, LLC and Acis Capital Management, L.P. (collectively, "Acis"), UBS Securities LLC and UBS AG London Branch (collectively, "UBS"), the Redeemer Committee, and Mr. Dondero to mediation in the summer of 2020.  *Id.*, ¶ 15; *see also* Bankr. Dkt. 912.

Notably, when the parties initially raised the possibility of mediation with the Bankruptcy Court, they told the Court that *all parties* desired to mediate before two specific sitting bankruptcy judges—Judge David Jones and Judge Marvin Isgur.  *See* July 8, 2020 Hr'g Tr.  at 10:19-11:15, attached hereto as Ex. A.  At the time, Debtor's counsel explained that mediation should involve

2

"two general areas"—resolution of the claims of Acis and UBS and resolution of issues the Debtor might have with Mr. Dondero and related entities (what Debtor's counsel deemed a "plan mediation process" aimed at "global resolution"). *Id.* The Court pushed back on the parties' mediator selections, expressing its disbelief that Judges Jones and Isgur would have availability because of their busy schedules. *Id.* at 44:23-48:21, 51:10-53:24. As a result, the Court took control of the mediator selection process, ultimately assigning two totally different mediators to the job: Retired Bankruptcy Judge Alan Gropper from the Southern District of New York and Sylvia Mayer, a former bankruptcy practitioner turned mediator/arbitrator in Houston. *See* July 14, 2020 Hr'g Tr. at 121:8-129:5, attached hereto as Ex. B; *see also* Confirmation Order, Bankr. Dkt. 1943, ¶ 15. Nonetheless, at the time, the Court agreed that "[t]his isn't the type of case that needs to be in bankruptcy for months and months and months," in part because ""we have the issue of professional fees accruing, of course, like every case." July 14, 2020 Hr'g Tr., Ex. B, at 117:2-7.

In the end, however, the mediation did not result in any "grand bargain." That is not surprising: in advance of mediation, the Debtor and its management refused to respond to Mr. Dondero's numerous offers to settle the estate and pay creditors in full.[1] When pressed by Mr. Dondero's counsel for a response, the Debtor made clear that any global resolution involving Mr. Dondero would come at an unreasonable price. The Debtor then used mediation as an opportunity to broker two-way settlements with Acis, UBS, and the Redeemer Committee. *See* Confirmation Order, Bankr. Dkt. 1943, ¶ 15. At no point during the mediation process did any party ever make

---

[1] The Debtor also refused to permit the participation of other key individuals in the mediation process, including former employees Scott Ellington and Isaac Leventon, whose deep knowledge regarding HCMLP's pre-petition litigation may have proven useful in discussions regarding a global resolution.

3

any demand of Mr. Dondero, nor did the mediators solicit any offer from Mr. Dondero. Ultimately, mediation resulted in settlements between the Debtor and Acis, and the Debtor and the Redeemer Committee, but no other immediate resolution. *Id.*

Following mediation, it became clear that the Debtor was not interested in brokering a deal involving Mr. Dondero, even if Mr. Dondero's proposals were superior to the plan being proposed by the Debtor. In fact, on January 28, 2021, Mr. Dondero and other entities, through counsel, proposed a plan that contained significant guarantees, promised to pay creditors and holders of allowed claims more than the plan proposed by the Debtor, and preserved HCMLP's business as a going concern. *See* Declaration of Davor Rukavina ("Rukavina Dec."), ¶ 2 & Ex. 1. In response, the Debtor made clear that it would defer to the judgment of the UCC regarding which plan to adopt; counsel for the UCC explained that it would not negotiate with Mr. Dondero and that Mr. Dondero would instead need to negotiate with the UCC members themselves; and at least two of the UCC members, through counsel, and through multiple communications, refused to negotiate regarding Mr. Dondero's competing plan, saying he would have to "do more" than what he was proposing, but without ever explaining what that "more" should have been. Rukavina Dec., ¶ 3. In other words, neither the Debtor nor the UCC gave serious consideration to Mr. Dondero's proposed plan, and neither engaged in any real negotiation with Mr. Dondero.

Ultimately, over the Dondero Defendants' objection, the Bankruptcy Court confirmed the Debtor's Fifth Amended Plan of Reorganization (the "Plan") on February 22, 2021. *See* Plan Confirmation Order, Bankr. Dkt. 1943. The Plan became effective on August 11, 2021 (the "Effective Date"). *See* Dkt. 2700. Unlike Mr. Dondero's proposed plan, the confirmed Plan contemplated a liquidation rather than a reorganization of HCMLP's business. At no point prior to Plan confirmation did the Debtor disclose key financials (through Rule 2015.3 reports or

4

otherwise), such as total assets held by the Debtor and its subsidiaries, total claims to be paid by the estate, cash being held by the Debtor for potential indemnity claims, or valuation estimates prepared by third parties.

### B. The Litigation Trustee Commences An Adversary Proceeding, And Professionals Continue To Drain The Estate

In the face of a Plan that did not promise creditors payment in full, the Litigation Trustee sought to bridge the gap by commencing an adversary proceeding against the Dondero Defendants and numerous other defendants two months later, on October 15, 2021. *See Kirschner v. Dondero, et al.*, Adv. Proc. No. 21-03076-sgj (the "*Kirschner* Adversary").

Since Plan confirmation, James P. Seery, now acting as Trustee for the Claimant Trust, has continued to sell and monetize assets of the estate for the benefit of Claimant Trust Beneficiaries. The Dondero Defendants have reason to believe that process is nearing an end and that the estate has sufficient funds to pay all creditors in full with interest, leaving sufficient cash and other liquid assets to pay a return to residual equity stakeholders in Classes 10 and 11. *See* Bankr. Dkt. 3662, at ¶¶ 10-11. Yet there continue to be disputes, adversary proceedings, and appeals filed in relation to the HCMLP Bankruptcy. Those proceedings have caused a significant professional burn—to the tune of millions of dollars a month—impacting potential recovery to creditors and residual equity stakeholders.

For context, it appears that, by June 20, 2022, the estate had nearly $550 million in cash and approximately $120 million in other assets:

5

| Highland Capital Assets | | Value in Millions | |
|---|---|---|---|
| | | Low | High |
| Cash as of Feb 1. 2022 | | $125.00 | $125.00 |
| Recently Liquidated | $246.30 | | |
| Highland Select Equity | $55.00 | | |
| Highland MultiStrat Credit Fund | $51.44 | | |
| MGM Shares | $26.00 | | |
| Portion of HCLOF | $37.50 | | |
| Total of Recent Liquidations | $416.24 | $416.24 | $416.24 |
| **Current Cash Balance** | | **$541.24** | **$541.24** |
| | | | |
| Remaining Assets | | | |
| Highland CLO Funding, LTD | | $37.50 | $37.50 |
| Korea Fund | | $18.00 | $18.00 |
| SE Multifamily | | $11.98 | $12.10 |
| Affiliate Notes[2] | | $50.00 | $60.00 |
| Other (Misc. and legal) | | $5.00 | $20.00 |
| **Total (Current Cash + Remaining Assets)** | | **$663.72** | **$688.84** |

*See* Bankr. Dkt. 3662, ¶ 10 & Ex. A, ¶¶ 6-7. Yet between the Effective Date of the Plan and December 31, 2022, the Claimant Trust made non-claims holder cash disbursements of approximately $34.9 million, and HCMLP made non-claims holder cash disbursements totaling nearly $100 million. *Compare* Bankr. Dkt. 3653, p. 2 (listing total cash disbursements since Effective Date), *with id.*, p. 7 (listing disbursements to various claims holders); Bankr. Dkt. 3652, p. 2. And the Claimant Trustee has now paid distributions to allowed claims holders of approximately $261 million, or approximately 64% of allowed claims. *See* Bankr. Dkt. 3653 at p. 7.

The seemingly endless and significant professional burn in the face of what the Dondero Defendants believe to be a solvent estate ultimately prompted the Dondero Defendants to seek

---

[2] According to the Valuation Complaint, some of the Affiliate Notes should have been forgiven as of the MGM sale, but litigation continues over that also. Bankr. Dkt. 3662 at ¶ 11 n.4.

critical information regarding the value of the estate from the Debtor and the Claimant Trust that has never been disclosed to the public. Among other efforts, pre-confirmation, the Dondero Defendants sought the appointment of an examine to independently value the estate. *See* Bankr. Dkt. 1752. Then, in June 2022, the Dondero Defendants filed a motion to determine the value of the estate. *See* Bankr. Dkt. 3382. And most recently, in a Motion for Leave to File Valuation Adversary Proceeding ("Valuation Motion"), the Dondero Defendants pointed out that, if their estimations are correct, then the *Kirschner* Adversary can only benefit some of the residual stakeholders currently being sued in that proceeding. Bankr. Dkt. 3662 at ¶ 18. Almost ten months have passed and an estimated average of $4.7 million in costs have been incurred since the Dondero Defendants first sought the information.

Shortly thereafter, on March 24, 2023, the Litigation Trustee filed a motion to stay the *Kirschner* Adversary. *See Kirschner* Adversary, Dkt. 324. In response, the Dondero Defendants filed an objection and competing motion to stay, arguing that the Court should enter a broader stay than that proposed by the Litigation Trustee and compel the parties to mediate during the pendency of any stay. *See id.*, Dkt. 329; *see also* Bankr. Dkt. 3702. In particular, the Dondero Defendants sought to stay proceedings on the Debtor's objection to Scheduled Claims 3.65 and 3.66 of Highland CLO Management, Ltd. and proceedings on the Valuation Motion in favor of a simple information exchange and mediation. Eventually, however, the Dondero Defendants withdrew their objection to the Litigation Trustee's motion to stay, in part to stop the professional fee burn occurring in the *Kirschner* Adversary.

At the hearing on the Litigation Trustee's motion to stay, the Court indicated a willingness to entertain a broader stay of proceedings and to compel mediation of remaining disputes. This motion is an attempt to facilitate that type of near-term resolution.

### III. LEGAL STANDARD

A federal court has the inherent power to control its own docket, including the power to stay proceedings before it. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants.")). When considering motions to stay, courts "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254.

It is likewise within the Court's inherent authority under 11 U.S.C. § 105 to refer contested matters to mediation. *See In re Sargeant Farms, Inc.*, 224 B.R. 842 (Bankr. M.D. Fla.) ("[I]t is quite apparent the bankruptcy court has the authority and power to promulgate rules associated with court-ordered mediation and, where necessary, to require the parties to participate in same."). Indeed, this Court previously invoked its inherent authority to order various parties to the HCMLP Bankruptcy to mediation. *See* Bankr. Dkt. 912.

### IV. THE DONDERO DEFENDANTS' MOTION SHOULD BE GRANTED

#### A. A Broader Stay Is Warranted

A broad stay of proceedings relating to the HCMLP Bankruptcy is necessary to preserve private and judicial resources, and to preserve what is left of the Debtor's estate. Although the Court already has stayed the *Kirschner* Adversary, that stay alone will not stop the professional spend on other disputes and litigation relating to the HCMLP Bankruptcy, will not encourage the parties to reach a global resolution of pending disputes, and will not facilitate the close of the HCMLP Bankruptcy.

The Court should aim higher by entering a broader stay sufficient to accomplish these goals. Specifically, and at a minimum, the Court should stay the following proceedings:

- Proceedings on the Debtor's Objection to Scheduled Claim 3.65 and 3.66 of

8

        Highland CLO Management, Ltd., Bankr. Dkt. 3657;

- Proceedings on the Valuation Motion, Bankr. Dkt. 3662;

- Any other outstanding adversary proceedings or contested matters currently pending before this Court that are not *sub judice*.[3]

Ordering a stay of these proceedings is well within the Court's inherent power to manage its own docket for the purpose of conserving both party and judicial resources. *See Landis*, 299 U.S. at 254-55. If the *Kirschner* Adversary remains stayed while the parties continue to fight about numerous other issues, that limited stay will have little effect on stopping the bleed. At the present burn rate, described above, professional fees and expenses will quickly overwhelm what little is left in the estate for payment of remaining estate liabilities.

It goes without saying that there is substantial water under the bridge. It remains the Dondero Defendants' position that there is no reason that HCMLP's highly solvent estate should have been liquidated, nor should estate professionals have facilitated sizeable claims trades to a handful of insiders for meager consideration, to the detriment of creditors and stakeholders. *See generally* Dkt. 3662 & Exs. A-1 – A-3. The Debtor and the Liquidation Trustee likely have a different view. But despite years of litigation, the HCMLP Bankruptcy and related disputes continue. The parties can continue to fight and spend resources, or the fights can be put on hold, an attempt at resolution can be made, and the acrimony can be put to rest. The Dondero

---

[3] Notably, in the consolidated notes cases currently pending in the United States District Court for the Northern District of Texas, the Debtor recently sought leave to file a lengthy Motion to Deem the Dondero Entities Vexatious Litigants and for Related Relief ("Vexatious Litigant Motion"), which seeks to have more than 20 individuals and entities (some of whom have never appeared in the notes cases) deemed "vexatious." *See Highland Capital Mgmt., L.P. v. Highland Capital Mgmt. Fund Advisors, L.P.*, Case No. 3:21-cv-881-X, Dkt. No. 102 & Ex. A. Suffice it to say, the cost of responding to that motion alone will be substantial and require the participation of potentially dozens of law firms. For that reason, should the Court decide to grant this Motion, the Dondero Defendants also request that the Court order the Debtor to refrain from pursuing, or seek to stay, the Vexatious Litigant Motion during the pendency of any stay of these bankruptcy proceedigs.

Defendants' Motion for a broader stay should be granted.

### B. The Court Should Order All Relevant Stakeholders To Mediation

One core reason that limited stay of the *Kirschner* Adversary is insufficient is that the stay lacks *any* mechanism aimed at achieving a global resolution of the remaining issues between the parties. Even if the *Kirschner* Adversary is rendered moot by the full payment of all creditors' claims, significant disputes between Mr. Dondero and his affiliates and the Debtor and its current management would remain. Such disputes include, but are not limited to, numerous pending adversary proceedings, any claims that Mr. Dondero or his affiliates may have against third parties in relation to the HCMLP Bankruptcy or pending adversary proceedings, and the scope of any releases to be given to HCMLP and its current management, which are necessary to finally bring the bankruptcy to a close. Given the complexity of these issues, the long history of litigation and mistrust that has developed between the parties, and the Court's limited resources, mediation presents a viable and low-cost opportunity to reach a global resolution.

This Court has expressed doubt about the potential success of mediation because the prior mediation in the HCMLP Bankruptcy failed to achieve a global resolution. As set forth above, part of the problem was that stakeholders previously ordered to mediation refused to deal with Mr. Dondero, and the appointed mediators were not able to facilitate broader discussions. For that reason, the Dondero Defendants request the entry of an order compelling mediation that:

- Requires all parties currently engaged in adversary proceeding relating to the HCMLP Bankruptcy to attend mediation (the "Mediating Parties")[4];

- Within 30 days, requires those parties to agree to the appointment of one or more sitting or retired United States Bankruptcy or Judges (outside of the Northern District of Texas) to be appointed as mediators;

---

[4] Those parties would include, at a minimum, the Debtor, the Claimant Trustee, Mr. Dondero, The Dugaboy Investment Trust, Get Good Trust, Hunter Mountain Investment Trust, Stonehill Capital Management, Farallon Capital Management, Muck Holdings, and Jessup Holdings.

- Within 30 days of the appointment of any mediators, requires the parties to exchange information that the mediators deem necessary to the facilitation of the mediation, including at a minimum the information set forth in Section C, below; and

- Requires mediation to occur on or before August 31, 2023.

There is no downside to issuing an order compelling the parties to mediation. If mediation is successful, then the HCMLP Bankruptcy and related adversary proceedings will be fully and finally resolved, and the remaining estate will be preserved for the benefit of creditors and other stakeholders. If mediation is unsuccessful, the cost is minimal, and nothing is lost. At the very least, compelling the parties to mediation might facilitate meaningful conversations that expedite resolution of pending disputes and ultimately save the estate money. The Dondero Defendants' Motion to compel mediation should be granted.

### C. The Court Should Require The Disclosure Of Critical Financial Information By The Debtor And Claimant Trust Prior To Mediation

Finally, any order compelling mediation should require the Debtor and/or Claimant Trustee to disclose the financial information required to assess the extent of the bankruptcy estate's assets and liabilities. Again, there is a valuable opportunity to reach a global resolution of the parties' outstanding disputes—including the Litigation Trustee's claims against defendants and the Dondero Defendants' potential claims against third parties or the Debtor—but the Dondero Defendants cannot consider resolution without this information. Specifically, the Dondero Defendants request that any order compelling mediation require the Debtor and/or Claimant Trustee to disclose, within thirty (30) days of entry of appointment of any mediator, the following information:

- Consolidated annual and consolidated quarterly financials for the Claimant Trust prepared in accordance with Generally Accepted Accounting Principles (GAAP), including relevant supporting schedules and footnotes for the entire period the Claimant Trust has been operating and for the period immediately preceding the

transfer of assets and liabilities to the Claimant Trust;[5]

- Stand-alone annual and quarterly financials prepared in accordance with sound accounting principles consistently applied for the Trust, including relevant supporting schedules and footnotes for the entire period the Claimant Trust has been operating and for the period immediately preceding the transfer of assets and liabilities to the Claimant Trust;

- Restricted and unrestricted cash balances as of the end of each calendar quarter from Q3 2021 through Q1 2023, including information regarding whether restricted cash balances are being reserved for particular expenses, indemnities, or disputed claims and, if so, identifying those specifically;

- Aggregate amounts paid and remaining amounts owed to allowed class 8 claimholders as of March 31, 2023;

- Aggregate amounts paid and remaining amounts owed to allowed class 9 claimholders as of March 31, 2023;

- Remaining pending disputed and administrative claims, including the claimholder and face amount of the claim, as of March 31, 2023;

- Cumulative amounts funded to the Indemnity Trust as of March 31, 2023;

- Total interest-bearing debt outstanding as of March 31, 2023;

- The net proceeds to the Claimant Trust and/or HCMLP of the following assets: Trussway, Targa, SSP, Cornerstone, HCLOF, MGM (directly held shares), Maple Avenue, and PetroCap Partners III; and

- List of material assets remaining, including assets available for sale, remaining notes to be collected, investment assets to be collected, membership interests to be recognized and monetized, and summary of other miscellaneous assets.

The above information will reveal whether the estate has sufficient assets to pay its creditors. If the estate does have sufficient assets to pay creditors in full, and the Dondero Defendants have reason to believe that it does, then the *Kirschner* Adversary proceeding is moot, and the parties should be able to bring the HCMLP Bankruptcy to a swift close. That is something the parties must understand in order to resolve remaining disputes. While the Dondero Defendants believe

---

[5] If GAAP financials are unavailable, the financial statements should be prepared in accordance with sound accounting principles consistently applied.

that this information should be publicly available to ensure transparency in the HCMLP Bankruptcy proceeding, they are also amenable to receiving this information pursuant to a reasonable and appropriate protective order and pursuant to a process prescribed by an appointed mediator to address the Debtor's concerns about confidentiality, if any.

## V. CONCLUSION

It is time to bring the HCMLP Bankruptcy to a close. But the only meaningful way to do so is to enter a broad stay, order the parties to mediation, and require disclosure of information that is necessary to facilitate global resolution. The Court's stay of the *Kirschner* Adversary is a step, but it is not sufficient. The Court should exercise its inherent powers to issue an order (1) broadly staying disputes and adversary proceedings relating to the HCMLP Bankruptcy, (2) compelling current litigants to mediate, and (3) requiring the disclosure of financial information that will enable meaningful negotiations between the parties. The Dondero Defendants respectfully request that the Court grant this Motion.

Dated: April 20, 2023　　　　　　　　　　　　DLA PIPER LLP (US)

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Jason M. Hopkins*
　　　　　　　　　　　　　　　　　　　　　　　Amy L. Ruhland (Rudd)
　　　　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24043561
　　　　　　　　　　　　　　　　　　　　　　　amy.ruhland@us.dlapiper.com
　　　　　　　　　　　　　　　　　　　　　　　303 Colorado Street, Suite 3000
　　　　　　　　　　　　　　　　　　　　　　　Austin, TX 78701
　　　　　　　　　　　　　　　　　　　　　　　Tele: 512.457.7000

　　　　　　　　　　　　　　　　　　　　　　　Jason M. Hopkins
　　　　　　　　　　　　　　　　　　　　　　　Texas Bar No.24059969
　　　　　　　　　　　　　　　　　　　　　　　1900 N. Pearl Street, Suite 2200
　　　　　　　　　　　　　　　　　　　　　　　Dallas, Texas 75201
　　　　　　　　　　　　　　　　　　　　　　　Tel: 214-743-4500
　　　　　　　　　　　　　　　　　　　　　　　Fax: 214-743-4545
　　　　　　　　　　　　　　　　　　　　　　　Email: jason.hopkins@us.dlapiper.com

13

*Attorneys for Defendants James D. Dondero,
Strand Advisors, Inc., Dugaboy Investment
Trust, and Get Good Trust*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on April 20, 2023, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Amy L. Ruhland*
Amy L. Ruhland (Rudd)