Brent R. McIlwain, TSB 24013140
David C. Schulte TSB 24037456
Christopher A. Bailey TSB 24104598
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201
Tel.: (214) 964-9500
Fax: (214) 964-9501
brent.mcilwain@hklaw.com
david.schulte@hklaw.com
chris.bailey@hklaw.com

COUNSEL TO MUCK HOLDINGS, LLC,
JESSUP HOLDINGS LLC,
FARALLON CAPITAL MANAGEMENT, L.L.C., AND
STONEHILL CAPITAL MANAGEMENT LLC

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Case No. 19-34054 (SGJ) |
| Highland Capital Management, L.P.[1] | Chapter 11 |
| Debtor. | (Jointly Administered) |

## CLAIM PURCHASERS' OBJECTION TO HUNTER MOUNTAIN INVESTMENT TRUST'S (I) EMERGENCY MOTION FOR LEAVE TO FILE VERIFIED ADVERSARY PROCEEDING; AND (II) SUPPLEMENT TO EMERGENCY MOTION FOR LEAVE TO FILE VERIFIED ADVERSARY PROCEEDING

---

[1] The last four digits of Debtor's taxpayer identification number are (6725). The headquarters and service address for Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND .................................................................................................................4

    A.    Claims are Filed, Settled, Allowed, and Transferred at Arms-Length ...........................4

    B.    Plan is Filed, Confirmed and Goes Effective ..................................................6

    C.    Dondero and HMIT Unsuccessfully Seek Discovery in State Court.............................7

OBJECTION ........................................................................................................................8

    A.    HMIT has no standing to assert the causes of action in the Proposed Complaint. ..........8

    B.    Equitable disallowance and equitable subordination are not available to HMIT. .........12

    C.    HMIT has not established a legally cognizable claim. .................................................14

    i.    Claim Purchasers owed no duty owed to HMIT........................................................15

    ii.    Claim Purchasers are not "non-statutory" insiders ...................................................15

    D.    The Alleged Claims Must be "Colorable" to Overcome the Gatekeeper Provision......18

    E.    The Claims in the Proposed Complaint are not Plausible or Colorable. ......................19

    i.    The Proposed Complaint fails to plead facts which lead to the inference that the Claim Purchasers engaged in *quid pro quo* with Seery. ...........................................20

    ii.    The Proposed Complaint fails to plead facts which lead to the inference that Seery provided the Claim Purchasers with material, non-public information...........21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Acis Capital Mgmt., L.P.*,
604 B.R. 484 (N.D. Tex. 2019), *aff'd sub nom. Matter of Acis Capital Mgmt.,
L.P.*, 850 F. App'x 302 (5th Cir. 2021) .......................................................... *passim*

*In re Adelphia Commc'ns Corp.*,
365 B.R. 24 (Bankr. S.D.N.Y. 2007) ........................................................................13

*Barton v. Barbour*,
104 U.S. 126 (1881)....................................................................................19, 20

*In re Christensen*,
598 B.R. 658 (Bankr. D. Utah 2019) .................................................................19, 20

*U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge,
LLC*,
138 S. Ct. 960 (2018).........................................................................................16

*DaimlerChrysler Corp. v. Inman*,
252 S.W.3d 299 (Tex. 2008)................................................................................11

*In re Exec. Office Ctrs., Inc.*,
96 B.R. 642 (Bankr. E.D. La. 1988) .....................................................................15

*Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*,
95 F.3d 358 (5th Cir. 1996) .................................................................................8

*Heckman v. Williamson Cnty.*,
369 S.W.3d 137 (Tex. 2012)................................................................................9

*In re Highland Capital Management, L.P.*,
Case No. 19-12239 (Bankr. D. Del. Oct. 16, 2019)...................................................4

*Highland capital Management, L.P. v. James Dondero, et al.*,
Adv. No. 21-03003-SGJ (Bankr. N.D. Tex. Jan. 22, 2021).................................1, 3

*In re Hunter Mountain Investment Trust*,
Cause No. DC-23-01004......................................................................................7

*In re James Dondero*,
Cause No. DC-21-09534......................................................................................7

*In re LightSquared Inc.*,
504 B.R. 321 (Bankr. S.D.N.Y. 2013) ..................................................................13

*Little v. KPMG LLP*,
    575 F.3d 533 (5th Cir. 2009) ...................................................................11

*In re Lorraine Castle Apartments Bldg. Corp.*,
    149 F.2d 55 (7th Cir. 1945) .....................................................................15

*In re Mobile Steel Co.*,
    563 F.2d 692 (5th Cir. 1977) ...................................................................12

*Nobles v. Marcus*,
    533 S.W.2d 923 (Tex. 1976)....................................................................15

*In re Olmos Equip., Inc.*,
    601 B.R. 412 (Bankr. W.D. Tex. 2019) .............................................17, 19

*Pepper v. Litton*,
    308 U.S. 295 (1939)..................................................................................13

*In re Perry*,
    425 B.R. 323 (Bankr. S.D. Tex. 2010) ....................................................14

*SED Holdings, LLC v. 3 Star Props., LLC*,
    2019 WL 13192236 (S.D. Tex. Sept. 11, 2019) ......................................14

*Stalnaker v. Gratton (In re Rosen Auto Leasing)*,
    346 B.R. 798 (8th Cir. BAP 2006)...........................................................17

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
    549 U.S. 443 (2007)..................................................................................13

*Vichi v. Koninklijke Philips Elecs. N.V.*,
    62 A.3d 26 (Del. Ch. 2012).................................................................9, 11

*In re Washington Mut., Inc.*,
    461 B.R. 200 (Bankr. D. Del. 2011) ........................................................13

*In re Winstar Commc'ns, Inc.*,
    554 F.3d 382 (3d Cir. 2009)......................................................................14

**Statutes**

11 U.S.C. § 502(b) ...........................................................................................13

11 U.S.C. § 510(b) ...........................................................................................11

11 U.S.C. § 510(c) ...........................................................................................14

**Other Authorities**

Aaron L. Hammer & Michael A. Brandess, *Claims Trading: The Wild West of Chapter 11s*, Am. Bankr. Inst. J. 62 (July/Aug. 2010) ............................................................6

Benjamin Mullin, *MGM Holdings, Studio Behind 'James Bond,' Explores a Sale*, The Wall Street Journal (Dec. 21, 2020, 6:38 p.m.) ................................................22

Fed. R. Bankr. P. 3001(e) ...........................................................................................6, 7

Fed. R. Bankr. P. 3001(e)(2).............................................................................................1

Fed. R. of Civ. P. 12(b)(6) ........................................................................................19, 20

Fed. R. of Bankr. P. 3001.............................................................................................1, 4

Tex. R. Civ. P. 202...........................................................................................................7

Muck Holdings, LLC ("Muck"), Jessup Holdings LLC ("Jessup"), Farallon Capital Management, L.L.C. ("Farallon"), and Stonehill Capital Management LLC ("Stonehill", and collectively, with Muck, Jessup, and Farallon, the "Claim Purchasers") file this *Objection to Hunter Mountain Investment Trust's (i) Emergency Motion for Leave to File Verified Adversary Proceeding; and (ii) Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding* (the "Objection"). In support, the Claim Purchasers respectfully state as follows:

## PRELIMINARY STATEMENT

1.       Hunter Mountain Investment Trust's ("HMIT") *Emergency Motion for Leave to File Verified Adversary Proceeding* ("Motion to File Complaint") is a continuation of James Dondero's ("Dondero") relentless barrage of meritless litigation against the bankruptcy estate of Highland Capital Management, L.P. ("HCMLP" or the "Debtor"). Brought almost two years after the alleged "wrongdoing," the Motion to File Complaint seeks leave for HMIT, a Dondero affiliate, to file an adversary proceeding against the Claim Purchasers, James P. Seery, the post-effective date trustee of the Debtor's estate ("Seery"), and others based upon *private bilateral claim sales* between the Claim Purchasers and third-party sellers ("Claims Sellers"). HMIT lacks standing to complain about  transactions between the Claim Purchasers and Claims Sellers, and for that reason alone, the Motion to File Complaint should be denied.

2.       In addition, the Claims Purchasers owed no duties to the bankruptcy estate or any equity holders of the bankruptcy estate (including Dondero or HMIT) at the time of the claims transfers. As this Court knows, the trading of claims is not a process that involves the Court or the bankruptcy estate, other than the perfunctory filing of notice under FED. R. BANKR. P. 3001(e)(2). The Claim Purchasers filed Rule 3001 notices (most more than two years ago) and not one objection, response, or statement was filed with in response to those notices.

3.     Moreover, none of the third-party Claims Sellers (who are sophisticated parties represented by skilled bankruptcy and transactional counsel) has ever made any allegation that the claims transfers damaged them or were in any way not valid, appropriately informed, arms-length transactions. The record shows that the Claims Sellers were well familiar with the circumstances of the Highland bankruptcy, having litigated for many years with Highland and Dondero themselves. The Claims Sellers sold their claims and have put their involvement behind them.

4.     The structure of the bankruptcy estate shows that HMIT cannot better its position by pursuing the claims in the Proposed Complaint. Fundamentally, and fatally—whether HMIT could upend the transfers, or whether it could succeed in equitably subordinating the validly transferred claims—HMIT would be in the same position it is today: an equity holder with a speculative interest in the residual rump of the bankruptcy estate. With this Proposed Complaint, it is obvious that HMIT does not seek to bring justice to the Claims Sellers or even to the estate; it wants to bring nuisance against Seery and the Claim Purchasers. The law does not allow such actions, and the gatekeeper process should preclude HMIT from filing its Proposed Complaint.

5.     Setting aside HMIT's lack of standing and lack of cognizable claims, which should cause the Proposed Complaint to fail even under a motion to dismiss standard, the claims HMIT seeks to assert are not colorable and thus cannot pass through the Plan's gatekeeper provision. The gravamen of the Proposed Complaint is that Seery provided the Claim Purchasers with "material non-public information" concerning Amazon's potential acquisition of MGM Holdings, Inc. ("MGM"), prompting the Claim Purchasers to acquire certain claims asserted in the bankruptcy case. The claims are not securities, of course, and HMIT's pleading fails to allege an information disparity between the transferors and Claims Purchasers. But why would Seery, an individual who *did* owe fiduciary duties to the bankruptcy estate, take such an unprecedented risk that would

imperil his role in the case and irreparably damage his reputation? HMIT alleges that Seery took such action to benefit himself by replacing the claims transferors with the Claim Purchasers, who allegedly agreed to "rubber stamp" Seery's compensation requests post-effective date. In other words, HMIT dreamed-up a *quid pro quo* where "inside information" was exchanged for an agreement to excessively compensate Seery later. There is no plausibility to that outlandish claim.

6.      HMIT must establish a "prima facie" case that its claims have foundation. This standard requires that HMIT do more than simply plead speculative "facts" and have the Court treat them as true. Rather, HMIT must show that its allegations are "plausible on their face"; otherwise, the Plan's gatekeeper provision has no practical limitation on vexatious litigation. HMIT has not met this standard. Indeed, HMIT alleges no plausible facts supporting an inference that Seery shared non-public information with the Claim Purchasers, that the Claims Sellers were deceived in selling their claims, or that Seery and the Claim Purchasers agreed to a "*quid pro quo.*"

7.      Allowing HMIT to proceed with litigation, after more than a year of harassing the Claim Purchasers in Texas state court (with no success), flies in the face of the central purpose of the Plan's gatekeeper provision. The HCMLP bankruptcy estate, led by Seery, is engaged in substantive litigation against Dondero and his affiliated entities to recoup losses arising from various breaches and malfeasance allegedly committed by Dondero and his affiliated entities.[2] HMIT and Dondero are vexatious litigants who are desperately attempting to gain leverage in the litigation pending against them. They seek to send a message to the market that participation in the Highland liquidation case and in related adversary proceedings will come at great cost and with substantial downside to anyone who dares attempt to recoup losses caused by Dondero and his

---

[2] *See, e.g.*, *Highland capital Management, L.P. v. James Dondero*, et al., Adv. No. 21-03003-SGJ (Bankr. N.D. Tex. Jan. 22, 2021).

entities and thereby profit from the vestiges of the HCMLP estate that Dondero no longer controls. This Court should deliver to HMIT and Dondero the stronger message that the gatekeeper terms were designed to control exactly this kind of baseless and damaging litigation.

## **BACKGROUND**

8.      On October 16, 2019, HCMLP filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the District of Delaware (the "Delaware Court"), instituting a voluntary chapter 11 bankruptcy case styled *In re Highland Capital Management, L.P.*, Case No. 19-12239 (Bankr. D. Del. Oct. 16, 2019) (the "Delaware Case"). On November 11, 2019, the Official Committee of Unsecured Creditors filed its *Motion of the Official Committee of Unsecured Creditors for an Order Transferring Venue of This Case to the United States Bankruptcy Court for the Northern District of Texas* [Delaware Case at Dkt. No. 86] (the "Venue Motion"). On December 4, 2019, the Delaware Court granted the Venue Motion [Delaware Case at Dkt. No. 184], transferring the Debtor's case to the Bankruptcy Court for the Northern District of Texas (the "Court").

### A.      **Claims are Filed, Settled, Allowed, and Transferred at Arms-Length**

9.      As set forth below, the claims transferred by the Claims Sellers were filed, settled, and ultimately allowed by this Court. Further, at every turn, Dondero and his affiliated entities objected to the settlements and were overruled. The Claim Purchasers acquired the claims through various arm's-length transactions, after the respective claims were allowed by this Court, and in each case, Rule 3001 notices were filed as reflected below:

| Claimant(s) | Date Filed/ Claim No. | Asserted Amount | Claim Settled/Allowed Amount | Rule 3001 Notice Filed |
|---|---|---|---|---|
| Acis Capital Management LP and Acis Capital Management, GP LLC (together, "Acis") | 12/31/2019<br><br>Claim No. 23 | $23,000,000 | Yes [Dkt. No. 1302][3]<br><br>$23,000,000 | Dkt. No. 2215 (Muck) |
| Redeemer Committee Highland Crusader Fund (the "Redeemer Committee") | 4/3/2020<br><br>Claim No. 72 | $190,824,557 | Yes [Dkt. No. 1273]<br><br>$137,696,610 | Dkt. No. 2261 (Jessup) |
| HarbourVest 2017 Global Fund, LP, HarbourVest 2017 Global AIF, LP, HarbourVest Partners LP, HarbourVest Dover Street IX Investment LP, HV International VIII Secondary LP, HarbourVest Skew Base AIF LP (collectively, the "HarbourVest Parties") | April 8, 2020<br><br>Claim Nos. 143, 147, 149, 150, 153, 154 | Unliquidated | Yes [Dkt. No. 1788][4]<br><br>$80,000,000 in aggregate ($45,000,000 General Unsecured Claim, and $35,000,000 subordinated claim) | Dkt. No. 2263 (Muck) |
| UBS Securities LLC, UBS AG, London Branch (the "UBS Parties") | June 26, 2020<br><br>Claim Nos. 190, 191 | $1,039,957,799.40 | Yes [Dkt. No. 2389][5]<br><br>$125,000,000 in aggregate ($65,000,000 General | Dkt. No. 2698 (Muck) and Dkt. No. 2697 (Jessup) |

[3] The Debtor's settlement with Acis was approved over the objection of James Dondero [Dkt. No. 1121].

[4] The Debtor's settlement with the HarbourVest Parties was approved over the objections of James Dondero [Dkt. No. 1697] and The Dugaboy Investment Trust and Get Good Trust [Dkt. No. 1706].

[5] The Debtor's settlement with the UBS Parties was approved over the objections of James Dondero [Dkt. No. 2295], and the Dugaboy Investment Trust and Get Good Trust [Dkt. Nos. 2268, 2293].

| | | | Unsecured Claim and $60,000,000 subordinated claim) | |
|---|---|---|---|---|

10.     HMIT hypothesizes, without alleging any credible facts, that the Claim Purchasers acquired the claims based on "inside information" disclosed by Seery in return for an agreement to approve excessive compensation for Seery at some point in the future. Indeed, while HMIT bears the burden of satisfying the gatekeeper standard, the record shows that the Claims Sellers, who are the only possible victims under HMIT's theories, have expressed no interest whatsoever in HMIT's allegations. And only the Claims Sellers have standing to dispute a claim sale. *See, e.g.*, Aaron L. Hammer & Michael A. Brandess, *Claims Trading: The Wild West of Chapter 11s*, Am. Bankr. Inst. J. 62 (July/Aug. 2010) ("In 1991, Fed. R. Bankr. P. 3001(e) was amended to limit the court's oversight on claims trading" such that "only the transferor may object to a transfer.").

### B.    Plan is Filed, Confirmed and Goes Effective

11.     On November 24, 2020, the Debtor filed its *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Dkt. No. 1472] (the "Plan"). With respect to the claims held by the Claim Purchasers, the Plan provided, *inter alia*, that "[o]n or as soon as reasonably practicable after the Effective Date, each holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim" will receive interests in the Claimant Trust.[6] Plan at Art. III(H)(8). Further, the Plan provides

> Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with

---

[6]     The Plan includes substantially similar language with respect to Class 9 Subordinated Claims.  Plan, Art. III(H)(9).

respect to any General Unsecured Claim, ***except with respect to any General
Unsecured Claim Allowed by Final Order of the Bankruptcy Court***.

*Id*. (emphasis added).[7]

12.    On February 22, 2021, the Court entered the *Order (i) Confirming the Fifth
Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and
(ii) Granting Related Relief* [Dkt. No. 1943] (the "<u>Confirmation Order</u>").

13.    All of the claim trades were consummated ***after*** the Confirmation Order was
entered.

14.    On August 11, 2021, the Debtor filed its *Notice of Occurrence of Effective Date of
Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Dkt.
No. 2700], indicating that the Plan went effective on August 11, 2021.

### C.    <u>Dondero and HMIT Unsuccessfully Seek Discovery in State Court</u>

15.    In July of  2021, Dondero filed a pre-suit discovery request, targeting Farallon and
Alvarez & Marsal ("<u>A&M</u>"), under TEX. R. CIV. P. 202 ("<u>Rule 202</u>"): *In Re: James Dondero*,
Cause No. DC-21-09534, in the 95th Judicial District Court of Dallas County, Texas ("<u>First 202</u>").
While the First 202 did not seek discovery from Seery directly, Farallon and A&M removed that
case to this Court, as it was clear that the purpose of the First 202 was to impugn Seery's conduct.
After extensive briefing and a hearing, due to misalignment of Rule 202 proceedings and
bankruptcy cases, the Court remanded the First 202 to the Texas state court "with grave
misgivings." The state court ultimately denied and dismissed the First 202 on June 1, 2022.

16.    As the Court is aware, Dondero waited over six months and filed a new Rule 202
petition through his affiliate HMIT – raising the same issues related to claims trading as in the

---

[7]    The Plan includes substantially similar language with respect to Class 9 Subordinated Claims.  Plan
at Art. III(H)(8)-(9)

First 202, based on the same allegations of misconduct by Seery – but now in a different Texas state court: *In re: Hunter Mountain Investment Trust*, Cause No. DC-23-01004, in the 191st Judicial District of Dallas County, Texas ("Second 202"). The recipient of the Second 202 was once again Farallon, with the addition of Stonehill. HMIT, undeterred by the dismissal of the First 202, carefully avoided not only this Court, but also the 95th Judicial District Court that dismissed the First 202, and it sought to convince yet another state court judge that it had a valid basis to "investigate" claims purchases in a bankruptcy proceeding. After briefing and a hearing, the Second 202 met the same fate as the first: it was denied and dismissed on March 8, 2023.

17.     Only after Dondero and HMIT failed to obtain state-court permission to harass the Claim Purchasers with broad discovery in support of futile theories did HMIT file its Motion to File Complaint, which is supported primarily with affidavits from Dondero, making the same baseless allegations that he and his lawyers have made for more than two years.

## **OBJECTION**

18.     HMIT's Motion to File Complaint [Dkt. No. 3699] should be denied because (i) HMIT lacks standing to pursue the claims asserted in the verified complaint attached as Exhibit 1-A to HMIT's *Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding* [Dkt. No. 3760] (the "Proposed Complaint"), (ii) HMIT has no cognizable claims against the Claims Purchasers, (iii) the Claim Purchasers are protected by the "Gatekeeper Provision" of the Plan, and (iv) the claims alleged by HMIT are not colorable.

### A.     **HMIT has no standing to assert the causes of action in the Proposed Complaint.**

19.     For a party to have standing to assert a cause of action, *inter alia*, the alleged injury must be fairly traceable to the defendant's conduct. *See, e.g.*, *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 360 (5th Cir. 1996) ("To demonstrate that [plaintiffs] have

standing, [plaintiffs] must show that: 1) its members have suffered an actual or threatened injury;

2) the injury is 'fairly traceable' to the defendant's actions; and 3) the injury will likely be redressed

if it prevails in the lawsuit."); *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155 (Tex. 2012)

("The second element of the standing test requires that the plaintiff's alleged injury be

'fairly traceable' to the defendant's conduct."); *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d

26, 38 (Del. Ch. 2012) ("there must be a causal connection between the injury and the conduct

complained of-the injury has to be fairly traceable to the challenged action of the [respondent]…").

20.    HMIT lacks standing to pursue the claims asserted in the Proposed Complaint

because (i) neither HMIT nor the Bankruptcy Estate was affected or harmed by the Claim

Purchasers' acquisition of the claims; and (ii) the Proposed Complaint fails to allege a cause of

action against the Claim Purchasers because it lacks a theory of cognizable damages to the

Debtor's bankruptcy estate, the Claimant Trust (as defined in the *Fifth Amended Plan of

Reorganization of Highland Capital Management, L.P.* [Dkt. No. 1808] (the "Plan")[8]), and/or the

beneficiaries of the Claimant Trust, such that HMIT has been injured.

21.    Under the Plan, HMIT held a Class 10 claim which was converted post-

confirmation to a contingent trust interest in the Claimant Trust. HMIT admits that the requisite

conditions have not been satisfied to convert its contingent trust interest into a beneficial interest,

and that more than $9.5 million must be paid to creditors other than the Claim Purchasers before

HMIT becomes a Claimant Trust Beneficiary.[9] In an attempt to bridge this gap, HMIT asserts that

it (or the bankruptcy estate) is entitled to the equitable disallowance, equitable subordination,

---

[8]    Capitalized terms used herein but not otherwise defined have the meanings ascribed in the Plan.

[9]    *See, e.g.*, Motion to File Complaint, ¶ 17 (stating that creditors other than the Claim Purchasers are owed at least $9.627 million).  This $9.5 million does not include the tens of millions still owed to the Claim Purchasers.

disgorgement and/or constructive trust of amounts paid or owed to the Claim Purchasers on account of their claims. Yet the transactions with which HMIT takes issue are private claim sales between the Claim Purchasers and various creditors of the Debtor's estate (the Claim Sellers). Neither HMIT nor the bankruptcy estate (including the Claimant Trust) has standing to challenge these sales.[10] Even assuming that the allegations in the Proposed Complaint are true (which is disputed), it is the Claim Sellers who potentially would have been damaged, not the bankruptcy estate. Whether the claims are held by the Claim Purchasers or the Claim Sellers, the economic effect on the bankruptcy estate (and thus on HMIT and its rights under the Plan) is the same.[11]

22.    Perhaps realizing this deficiency in the Proposed Complaint, HMIT asserts that the Claim Purchasers and their proposed co-defendants are liable for excess compensation paid to Seery in furtherance of an alleged fraudulent scheme.[12] Yet HMIT has not pleaded facts sufficient to show that, even if Seery received extraordinary and excess compensation and such compensation was returned, HMIT's contingent interests in the Claimant Trust would vest. In fact, the Proposed Complaint is devoid of any factual assertions regarding the magnitude of the excess compensation Seery has received or will receive. HMIT admits that creditors, other than the Claim Purchasers, are owed more than $9.627 million and remain ahead of HMIT in priority, which creditors must be paid before HMIT becomes a Claimant Trust Beneficiary.[13] Accordingly, even if everything in the Proposed Complaint were true (which is disputed), HMIT failed to plead facts showing that it has been damaged, and thus it lacks standing.

---

[10]    *See* Motion to File Complaint, ¶ 27.

[11]    Notably, the Claim Sellers have not alleged that improper conduct occurred with respect to the relevant claim sales, despite having the greatest economic incentive to do so.

[12]    *See, e.g.*, Proposed Complaint, ¶¶ 4, 14, 16, 65, 69.

[13]    *See, e.g.*, Plan, Art. I.B.44; Motion to File Complaint, ¶ 17 (stating that creditors other than the Claim Purchasers are owed at least $9.627 million).

23.    Further, because HMIT's alleged injury is not actual or imminent—but rather, is hypothetical and contingent, as it depends on HMIT becoming a Claimant Trust Beneficiary at some future date—it lacks standing to prosecute the causes of action it threatens (or such threatened claims are not ripe because they depend on contingent or hypothetical facts or events that have not yet occurred). *See, e.g.*, *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) ("However, allegations of injury that is merely conjectural or hypothetical do not suffice to confer standing."); *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008) ("For standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical."); *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 38 (Del. Ch. 2012) (stating that for a claimant to have standing, the alleged injury must be "concrete and particularized," "actual or imminent," and "not conjectural or hypothetical"). HMIT must identify "an existing—rather than future or speculative—right that may be presently asserted." *Id*. Here, as any interest it has in the Claimant Trust is contingent, HMIT has no such right to assert. For this additional reason, HMIT's Motion to File Complaint should be denied. *Id.*

24.    In addition, the Plan specifically reserves *only* to the Debtor, the Reorganized Debtor, and the Claimant Trustee the right to seek equitable subordination:

> The allowance, classification, and treatment of all Claims under the Plan ***shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.*** Upon written notice and hearing, the ***Debtor the Reorganized Debtor, and the Claimant Trustee*** reserve the right to seek entry of an order by the Bankruptcy Court ***to re-classify or to subordinate any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination***.

Resp. Ex. 3 (Plan), Art. III.J. (emphasis added). There is no independent right under the Plan for creditors like HMIT to seek to equitably subordinate other creditors' claims. HMIT lacks standing to assert the proposed claims because the Plan does not authorize these claims by such parties.

11

**B.** **Equitable disallowance and equitable subordination are not available to HMIT.**

25.    As an initial matter, the Claim Purchasers no longer have claims which could be subordinated and/or disallowed. All of the relevant claims were settled and allowed prior to the Effective Date of the Plan.[14] Pursuant to the terms of the Plan, on the Effective Date of the Plan, such claims were exchanged for interests in the Claimant Trust, and thus there are no claims left which could be subordinated or disallowed. *See* Plan at Art. III(H)(8)-(9).

26.    Further, the Plan provides that *only* the Debtor, the Reorganized Debtor and the Claimant Trustee reserved the right to seek to reclassify or subordinate claims. Plan, Art. III(J). However, any rights or defenses the Debtor's estate had with respect to the relevant claims were expressly disclaimed under the Plan, since all of the relevant claims were allowed by a final order of the Court, and thus no party has standing to seek to subordinate or disallow the Claim Purchasers' claims. *See, e.g.*, Plan at Art. III(H)(8)-(9) ("Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, *except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court*.") (emphasis added).

27.    Even if the relevant claims still remain subject to challenge, the remedies sought by HMIT are either not available, or cannot benefit HMIT. HMIT primarily seeks the equitable disallowance of the Claim Purchasers' claims. Proposed Complaint, ¶¶ 82-87. However, the Fifth Circuit has recognized that "equitable considerations can justify only the subordination of claims, not their disallowance." *In re Mobile Steel Co.*, 563 F.2d 692, 699 (5th Cir. 1977). Further, the

---

[14] *See* Dkt. Nos. 1273, 1302, 1788, 2389.

Supreme Court has indicated that the only grounds for disallowing a claim are those enumerated in section 502(b) of the Bankruptcy Code. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 444 (2007) ("But even where a party in interest objects, the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)."). Inequitable conduct, as alleged by HMIT, is not one of the enumerated grounds for disallowance under section 502(b). *See* 11 U.S.C. § 502(b).

28.     The cases cited by HMIT in support of equitable disallowance, in addition to being out of circuit and counter to Fifth Circuit precedent, are inapposite. First, as the Southern District of New York has noted, "[w]hile courts … have permitted claims for equitable disallowance to survive motions to dismiss, no court has ever employed equitable disallowance as a remedy or sanction under the Bankruptcy Code." *In re LightSquared Inc.*, 504 B.R. 321, 338 (Bankr. S.D.N.Y. 2013). Notably, the statement from *Lightsquared* **specifically** cites to each of the cases that HMIT uses to advance its equitable disallowance argument. *Id.*

29.     Further, in each of the cited cases, the claims for which equitable disallowance was sought belonged to estate fiduciaries. *See Pepper v. Litton*, 308 U.S. 295, 311 (1939) (analyzing the ability to disallow claims of a fiduciary); *In re Adelphia Commc'ns Corp.*, 365 B.R. 24, 71 (Bankr. S.D.N.Y. 2007) (same); *In re Washington Mut., Inc.*, 461 B.R. 200 (Bankr. D. Del. 2011) (same). Here, the claims were filed and settled by non-fiduciaries, and were allowed while the claims were still held by non-fiduciaries. Further, the claims were acquired by the Claim Purchasers well before they became members of the Claimant Trust Oversight Committee, and thus before they were estate fiduciaries. *Id*. Thus, the considerations discussed in *Adelphia*, *Pepper*, and *Washington Mutual* do not apply under the circumstances.

30.    In the alternative, HMIT seeks equitable subordination of the Claim Purchasers' claims. Proposed Complaint, ¶ 87 ("Pleading in the alternative only, subordination of Muck's and Jessup's [claims] to all other interests in the Claimant Trust … is necessary and appropriate."). But the plain language of section 510(c) of the Bankruptcy Code precludes the relief sought by HMIT: "under principles of equitable subordination, [the court may] subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510(c).

31.    "Under the express language of 11 U.S.C. § 510(c), the Court may not subordinate a claim to an equity interest; it may only subordinate one claim to another claim and one equity interest to another equity interest." *In re Perry*, 425 B.R. 323, 380 (Bankr. S.D. Tex. 2010); *see also SED Holdings, LLC v. 3 Star Props., LLC*, 2019 WL 13192236, *2 (S.D. Tex. Sept. 11, 2019) ("the claim may only be subordinated, but not disallowed."); *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 414 (3d Cir. 2009) ("Finally, Lucent contends that the Bankruptcy Court's equitable subordination holding was inconsistent with the Bankruptcy Code because § 510(c) does not permit the subordination of debt to equity. We agree.").

32.    HMIT's claims are based upon its previous equity interests in the Debtor. *See, e.g.*, Motion to File Complaint, ¶ 8 ("HMIT was the largest equity holder in the Original Debtor and held a 99.5% limited partnership interest."). Because the claims held by the Claim Purchasers cannot be subordinated to HMIT's interests, equitable subordination would not benefit HMIT.

## C.    HMIT has not established a legally cognizable claim.

33.    HMIT does not allege that it has any interest in the claims that were transferred to Muck and Jessup, yet HMIT still seeks to challenge such transfers based on conclusory allegations devoid of substance. Here, the Claim Sellers were creditors of the Debtor, and they were entitled

to sell their claims to Muck and Jessup (or to any other buyer) on whatever terms (including price) the parties agreed to. HMIT has no right to second-guess those terms.

### i.    Claim Purchasers owed no duty owed to HMIT

34.    HMIT has not identified any legal duty that the Claim Purchasers owed to HMIT related to the claims transfers; nor has HMIT identified any authority for a private cause of action belonging to HMIT related to the claims transfers. The Claim Purchasers owed no duty (fiduciary or otherwise) to the bankruptcy estate, creditor, or equity holder at the time of the claim transfers. *See, e.g.*, *In re Exec. Office Ctrs., Inc.*, 96 B.R. 642, 651 (Bankr. E.D. La. 1988) (finding that an acquirer of a claim had no fiduciary duty to third parties, and the claim's effect on the bankruptcy estate before or after the claim's acquisition was the same, and "[t]herefore, there are no grounds for this Court to invoke its equitable powers to disallow or limit the claim of [the claim acquirer] in this bankruptcy case."); *In re Lorraine Castle Apartments Bldg. Corp.*, 149 F.2d 55, 57 (7th Cir. 1945) (finding that claim purchasers had no fiduciary duties to the estate or its beneficiaries).

35.    This is not a mere academic point. HMIT must have sustained a legal injury as a result of a breach of a legal duty. *See, e.g.*, *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976) ("It is a fundamental rule of law that only the person whose primary legal right has been breached may seek redress for an injury. … Without breach of a legal right belonging to the plaintiff no cause of action can accrue to his benefit."). This is fatal to HMIT's proposed claims.

### ii.    Claim Purchasers are not "non-statutory" insiders

36.    HMIT tries to avoid the fact that no duty was owed to it by the Claim Purchasers by alleging that the Claim Purchasers were non-statutory insiders at the time of the claim transfers. Proposed Complaint, ¶¶ 14, 17. This Court has addressed similar arguments in another case. *See, e.g.*, *In re Acis Capital Mgmt., L.P.*, 604 B.R. 484, 535 (N.D. Tex. 2019), *aff'd sub nom. Matter of Acis Capital Mgmt., L.P.*, 850 F. App'x 302 (5th Cir. 2021).

37.    In deciding whether a person is a non-statutory insider, this Court has considered two factors: (i) the closeness of the relationship between the putative insider and the debtor; and (ii) whether the transactions between the putative insider and the debtor were conducted at arm's length. *In re Acis Capital Mgmt., L.P.*, 604 B.R. 484, 535. "Under this test, because prongs one and two are conjunctive, a court's conclusion that the relevant transaction was conducted at arm's length necessarily defeats a finding of non-statutory insider status, regardless of how close a person's relationship with the debtor is or whether he is otherwise comparable to a statutorily enumerated insider." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 970 (2018) (concurrence). Here, HMIT fails to plead facts sufficient to show that the Claim Purchasers are non-statutory insiders.

38.    One prong of the test requires a showing that the transactions between the putative insider **and the debtor** were not conducted at arm's length. *See, e.g.*, *Acis Capital Mgmt*, 604 B.R. at 535. Here, the complained-of transactions are between the Claim Purchasers and the Claim Sellers, not the Debtor. *See, e.g.*, Proposed Complaint, ¶ 14 ("Because of their long-standing, historical relationships with Seery, **and their use of material non-public information**, the Defendant Purchasers obtained effective control over various affairs of the Debtor's bankruptcy, including compensation awards to Seery. As such, they became nonstatutory insiders.") (emphasis added); *id.*, ¶ 17 ("By acquiring the claims at issue, Muck and Jessup, the shell entities created and controlled by Stonehill and Farallon, also became non-statutory insiders, and also aided and abetted Seery's breaches of fiduciary duties."). HMIT's allegations miss the necessary element that the debtor be a party to the contested transaction.

39.    On the other prong of the test, showing an unwholesome relationship between the third party and the debtor, the factual bases upon which HMIT asserts that Claim Purchasers are

non-statutory insiders of the Debtors are insufficient. Essentially, HMIT argues that because Seery and the Claim Purchasers had business dealings in the past, including Seery allegedly representing Farallon as its legal counsel, that the Claim Purchasers should be deemed non-statutory insiders. *See* Proposed Complaint, ¶ 48. But prior business dealings alone is insufficient to confer non-statutory insider status on a non-debtor third party. *See Stalnaker v. Gratton (In re Rosen Auto Leasing)*, 346 B.R. 798, 801 (8th Cir. BAP 2006) (finding that a social relationship turned business relationship between a debtor's chairman and a third party was insufficient for such third party to be deemed a non-statutory insider of the debtor). Neither is a prior attorney-client relationship. *In re Olmos Equip., Inc.*, 601 B.R. 412, 426 (Bankr. W.D. Tex. 2019) (finding that a prior attorney-client relationship was insufficient to deem a third party a non-statutory insider). Accordingly, HMIT fails to meet the first prong of the non-statutory insider test.

40.     And, even assuming that the Claim Purchasers' acquisitions of the claims were the type of transaction that might confer non-statutory insider status on the Claim Purchasers, HMIT has not pleaded credible facts sufficient to show that the Claim Purchasers' acquisitions of the relevant claims were not at arm's-length. And, aside from conclusory implausible statements, the Proposed Complaint fails to set forth facts about any transactions between the Claim Purchasers, Seery, and/or the Debtor regarding Seery's compensation that can give rise to a reasonable inference that compensation decisions were not negotiated and agreed at arm's-length. HMIT's Proposed Complaint on its face fails to meet the second prong of the non-statutory insider test.

41.     Simply put, there is no meritorious, legally cognizable claim related to the transferred claims for HMIT to pursue, and thus the Motion to File Complaint should be denied.

**D.** **The Alleged Claims Must be "Colorable" to Overcome the Gatekeeper Provision.**

42.    The Claim Purchasers are protected by the "gatekeeper provision" in the Plan. Due to concerns about Dondero and his affiliates inundating the Debtor's bankruptcy estate with vexatious litigation,[15] the Plan contains a provision which requires any entity seeking to assert a claim against a "Protected Party"[16] to first obtain leave of the Bankruptcy Court before filing an action. *See* Plan, Art. IX(f). Specifically, the Plan states as follows:

> Subject in all respects to ARTICLE XII.D, no Entity may commence or pursue a claim or cause of action of any kind against any Protected Party that arose from or is related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice, that such claim or cause of action represents a colorable claim of bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Entity to bring such claim against any such Protected Party . . . .

---

[15]    *See* Confirmation Order, ¶ 79 ("The Bankruptcy Court further finds that unless the Bankruptcy Court approves the Gatekeeper Provision, the Claimant Trustee and the Claimant Trust Oversight Board will not be able to obtain D&O insurance, the absence of which will present unacceptable risks to parties currently willing to serve in such roles. The Bankruptcy Court heard testimony from Mark Tauber, a Vice President with AON Financial Services, the Debtor's insurance broker ('AON'), regarding his efforts to obtain D&O insurance. Mr. Tauber credibly testified that of all the insurance carriers that AON approached to provide D&O insurance coverage after the Effective Date, the only one willing to do so without an exclusion for claims asserted by Mr. Dondero and his affiliates otherwise requires that this Order approve the Gatekeeper Provision.")

[16]    "Protected Party" is defined as "collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); provided, however, that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term 'Protected Party.'" Plan, Art. I(B)(104).

*Id.*

43.     Here, as members of the Claimant Trust Oversight Committee (or Related Persons[17]

of members of the Claimant Trust Oversight Committee), the Claim Purchasers are "Protected

Parties." Because the allegations in the Proposed Complaint hinge on the Claim Purchasers acting

as members of the Claimant Trust Oversight Committee to overpay Seery, the Claim Purchasers

are Protected Parties.[18] Accordingly, all of the causes of action that HMIT seeks to assert against

the Claim Purchasers in the Proposed Complaint are gated by the gatekeeper provision.

**E.      The Claims in the Proposed Complaint are not Plausible or Colorable.**

44.     HMIT has argued that it must only satisfy the Rule 12(b)(6) pleading standard to

establish that a colorable claim exists sufficient to overcome the gatekeeper provision. But if that

were the case, HMIT's allegations would be presumed true, and the gatekeeper provision would

have no practical effect. Rather, the proper inquiry is found under the *Barton* doctrine.

45.     In 1881, the Supreme Court established the *Barton* doctrine, which precluded suit

being filed against court-appointed receivers absent the permission of the appointing court. *See*

*Barton v. Barbour*, 104 U.S. 126, 127 (1881) ("It is a general rule that before suit is brought against

a receiver leave of the court by which he was appointed must be obtained."). The *Barton* doctrine

has since been expanded to protect, *inter alia*, court-appointed bankruptcy trustees. *See In re*

*Christensen*, 598 B.R. 658, 664 (Bankr. D. Utah 2019) (stating that the *Barton* doctrine "precludes

suit against a bankruptcy trustee for claims based on alleged misconduct in the discharge of a

---

[17]     As defined in the Plan, "Related Persons" means "with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present and former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, employees, subsidiaries, divisions, management companies, and other representatives, in each case solely in their capacity as such." Plan, Art. I(B)(110).

[18]     *See, e.g.*, Proposed Complaint, ¶¶ 4, 14, 16, 18, 47, 65.

trustee's official duties absent approval from the appointing bankruptcy court."). Because HMIT

seeks to file suit against Seery for alleged misconduct committed in furtherance of his official

duties, and because these allegations are inextricably intertwined with the allegations against the

Claim Purchasers, HMIT must satisfy *Barton* before its claims can move forward.

46.    The *Barton* doctrine is strictly a "jurisdictional gatekeeping doctrine," and it strips

all courts—except the bankruptcy court that appointed the trustee—of subject-matter jurisdiction

to hear a lawsuit against the trustee unless the bankruptcy court orders otherwise. *Id*. Under the

*Barton* Doctrine, a court must determine if the party seeking to sue a trustee made "a prima facie

case showing that [their claims are] not without foundation." *Id*.  Failure to establish a prima facie

case results in denial of leave to sue. *Id*. Although similar to the standard for a motion to dismiss

for failure to state a claim under FED. R. CIV. P. 12(b)(6), the "not without foundation" standard is

more flexible, and the proposed plaintiff must allege facts sufficient to state a claim to relief that

is "plausible on its face." *Id*. The Proposed Complaint fails to state facially plausible claims.

> i.    **The Proposed Complaint fails to plead facts which lead to the inference
> that the Claim Purchasers engaged in *quid pro quo* with Seery.**

47.    The Proposed Complaint asserts that the Claim Purchasers were "given control

(through Muck and Jessup) to approve discretionary bonuses and success fees for Seery from [the

Debtor's assets]." Proposed Complaint, ¶ 54; *see also id.*, ¶¶ 4, 14, 16, 65, 71. The Proposed

Complaint is devoid of any factual assertions as to how the Claim Purchasers have affected Seery's

compensation, and for this reason alone, the Proposed Complaint fails to assert a colorable cause

against the Claim Purchasers for "knowing participation in Breach of Fiduciary Duties" (Count II)

or "Conspiracy" (Count III), as each relies on the Claim Purchasers providing *quid pro quo* in

exchange for allegedly receiving material non-public information. Proposed Complaint, ¶¶ 71, 77.

       **ii.**      **The Proposed Complaint fails to plead facts which lead to the inference that Seery provided the Claim Purchasers with material, non-public information.**

48.     The allegations in the Proposed Complaint against the Claim Purchasers rely on the conclusory assertion that Seery provided the Claim Purchasers with material, non-public information that the Claim Purchasers used to their benefit in purchasing the claims. *See, e.g.*, Proposed Complaint, ¶ 3 ("Thus, acting within a cloak of secrecy, Seery provided close business acquaintances, the other Defendants, with material non-public information concerning the value of assets which they then used to purchase the largest approved unsecured claims."). In support of that allegation, however, HMIT offers no factual support, and in fact admits that a logical leap is required to arrive at the conclusion that the Claim Purchasers were involved in nefarious activity:

> It made no sense for the Defendant Purchasers to invest millions of dollars for assets that –per the publicly available information – did not offer a sufficient potential profit to justify the publicly disclosed risk. ***The counter-intuitive nature of the purchases at issue compels the conclusion that the Defendant Purchasers acted on inside information and Seery's secret assurance of great profits.***

*Id*. (emphasis added). Unsubstantiated claims of "counter-intuitive," "secret," unprofessional actions by the respected professional this Court appointed are not plausible.  For this reason alone, the Proposed Complaint fails to assert a colorable claim. Yet the Proposed Complaint suffers from other deficiencies rendering the causes of action it seeks to assert non-colorable.

49.     The Proposed Complaint admits that when the Claim Purchasers acquired the relevant claims, they would have turned a profit based upon then-existing projections. *See, e.g.*, *id.*, ¶ 3 (arguing only that the purchased claims "did not offer sufficient potential profit" to justify their purchase); *id.* ¶ 43 ("Furthermore, although the publicly available projections suggested only a small margin of error on any profit potential for its significant investment . . . ."); *id.* ¶ 49 ("Yet, in this case, it would have been *impossible* for Stonehill and Farallon (in the absence of inside information) to forecast *any* **significant** profit at the time of their multi-million-dollar investments

given the publicly available, negative financial information.") (bold added). HMIT's speculation about what level of projected return would be sufficient for the Claims Purchasers to purchase the claims does not give rise to a plausible inference that they acted improperly.

50.     Second, contrary to the Proposed Complaint's statement that it would have been "*impossible* for Stonehill and Farallon (in the absence of insider information) to forecast *any* significant profit at the time of their multi-million-dollar investments," there was already media reporting that MGM was engaging with Apple and others on selling its media portfolio. *See, e.g.*, Benjamin Mullin, *MGM Holdings, Studio Behind 'James Bond,' Explores a Sale*, THE WALL STREET JOURNAL (Dec. 21, 2020, 6:38 p.m.), https://www.wsj.com/articles/mgm-holdings-studio-behind-james-bond-explores-a-sale-11608588732.  Far from material non-public information, the fact that MGM was negotiating a potential transaction was publicly known. HMIT's suggestion that the Claims Purchasers had information not known to the Claims Sellers is not plausible.

51.     Finally, the Claim Purchasers acquired the UBS Claims approximately two and a half months *after* the announcement of the Amazon/MGM transaction, a fact which the Proposed Complaint neither discloses nor attempts to harmonize with its overall theory of the Claim Purchasers profiting from inside information. The Proposed Complaint's lack of internal consistency, as well as its lack of consistency with verifiable public facts, renders it implausible.

52.     Accordingly, the Proposed Complaint is devoid of necessary factual assertions, and what facts are pleaded do not take the causes of action in the Proposed Complaint from the realm of "conceivable" to being "plausible," as required under relevant law.

For these reasons, the Claim Purchasers respectfully request that the Court deny the Motion to File Complaint, and grant the Claim Purchasers such other and further relief as is just and proper.

Dated:  May 11, 2023           HOLLAND & KNIGHT LLP

By: */s/ Christopher A. Bailey*
Brent R. McIlwain, TSB 24013140
David C. Schulte    TSB 24037456
Christopher A. Bailey TSB 24104598
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX  75201
Tel.:    (214) 964-9500
Fax      (214) 964-9501
brent.mcilwain@hklaw.com
david.schulte@hklaw.com
chris.bailey@hklaw.com

COUNSEL TO MUCK HOLDINGS, LLC,
JESSUP HOLDINGS LLC, FARALLON
CAPITAL MANAGEMENT, L.L.C., AND
STONEHILL CAPITAL MANAGEMENT LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, and served upon all parties receiving notice pursuant to the CM/ECF system on this the 11th day of May, 2023.

*/s/ Christopher A. Bailey*
Christopher A. Bailey