Deborah Deitsch-Perez
Michael P. Aigen
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Debtor. | THE DUGABOY INVESTMENT TRUST'S MOTION TO PRESERVE EVIDENCE AND COMPEL FORENSIC IMAGING OF JAMES P. SEERY, JR.'S IPHONE |

**THE DUGABOY INVESTMENT TRUST'S MOTION TO PRESERVE EVIDENCE AND
COMPEL FORENSIC IMAGING OF JAMES P. SEERY, JR.'S IPHONE**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT AND AUTHORITIES ............................................................................. 3

    A. HCMLP and Mr. Seery Had a Continuing Duty to Preserve ESI on Mr. Seery's iPhone from the Time He Joined HCMLP's Board in January 2020, when HCMLP Was Already in Bankruptcy Litigation ............................................................. 3

    B. Mr. Seery's Years-Long Use of Auto-Delete Violated His and HCMLP's Duty to Preserve ESI ........................................................................................................... 9

    C. The Court Should Require Forensic Imaging to Preserve the Remaining ESI on Mr. Seery's iPhone and to Prevent Further Evidence Spoliation ................................... 10

III. CONCLUSION .............................................................................................................. 15

CORE/3522697.0002/181736306.13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ameriwood Indus., Inc. v. Liberman*,
  No. 4:06-CV-524-DJS, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006) ..............................12, 13

*Antioch Co. v. Scrapbook Boarders, Inc.*,
  210 F.R.D. 645 (D. Minn. Apr. 29, 2002) ......................................................................12, 13

*Areizaga v. ADW Corp.*,
  No. 3:14-cv-2899-B, 2016 WL 9526396 (N.D. Tex. Aug. 1, 2016) ................................11, 12

*Brewer v. Leprino Foods Co., Inc.*,
  No. CV-1:16-1091-SMM, 2019 WL 356657 (E.D. Cal. Jan. 29, 2019)..................................5

*In re Correra*,
  589 B.R. 76 (N.D. Tex. Bankr. 2018) (Jernigan, J.)..........................................................3, 11

*Fast v. GoDaddy.com LLC*,
  340 F.R.D. 326 (D. Ariz. 2022) ............................................................................................5

*Gaddy v. Blitz U.S.A., Inc.*,
  No. 2:09-CV-52-DF, No. 6:09–CV–283-MHS, 2010 WL 11527376 (E.D.
  Tex. Sept. 13, 2010)..............................................................................................................4

*Gaina v. Northridge Hosp. Med. Ctr.*,
  No. CV 18-00177, 2018 WL 6258895, (C.D. Cal. Nov. 21, 2018)..........................................5

*Genworth Fin. Wealth Mgmt. v. McMullan*,
  267 F.R.D. 443 (D. Conn. June 1, 2010) ........................................................................12, 13

*Guzman v. Jones*,
  804 F.3d 707 (5th Cir. 2015) .................................................................................................3

*Hamilton v. First Am. Title Ins. Co.*,
  No. 3:07-CV-1442-G, 2010 WL 791421 (N.D. Tex. Mar. 8, 2010).......................................11

*In re Highland Cap. Mgmt., L.P.*,
  No. 19-34054-SGJ11, 2021 WL 2326350 (Bankr. N.D. Tex. June 7, 2021) .......................5, 7

*John B. v. Goetz*,
  531 F.3d 448 (6th Cir. 2008) ...........................................................................................3, 11

CORE/3522697.0002/181736306.13

*Laub v. Horbaczewski,*
    No. CV 17-6210-JAK (KS), 2020 WL 9066078, (C.D. Cal. July 22, 2020) ............................ 5

*Moore v. CITGO Refining & Chem Co., L.P.*,
    735 F.3d 309 (5th Cir. 2013) ............................................................................................. 4

*NuVasive, Inc. v. Kormanis*,
    No. 1:18CV282, 2019 WL 1171486 (M.D.N.C. Mar. 13, 2019) ..................................... 5, 9

*Paisley Park Enters., Inc. v. Boxill*,
    330 F.R.D. 226 (D. Minn. 2019) ................................................................................ 3, 4, 5

*Rimkus Consulting Group, Inc. v. Cammarata*,
    688 F.Supp.2d 598 (S.D. Tex. 2010) .................................................................................. 3

*Schnatter v. 247 Grp., LLC*,
    No. 3:20-cv-00003-BJB-CHL, 2022 WL 2402658 (W.D. Ky. Mar. 14, 2022) ..................... 4

*Simon Prop. Group L.P. v. mySimon, Inc.*,
    194 F.R.D. 639 (S.D. Ind. 2000) .................................................................................. 12, 13

*In re Skanska USA Civ. Se. Inc.*,
    340 F.R.D. 180 (N.D. Fla. 2021) ..................................................................................... 4, 5

*Talon Trans. Tech., Inc., v. Stoneeagle Servs., Inc.*,
    No. 3:13-CV-902-P, 2013 WL 12172924 (N.D. Tex. May 1, 2013) ............................ 12, 13

*Youngevity Int'l v. Smith*,
    No. 3:16-CV-704-BTM-JLB, 2020 WL 7048687 (S.D. Cal. July 28, 2020) ......................... 5

**Statutes and Rules**

11 U.S. Code § 105 .............................................................................................................. 11

Fed. R. of Civ. P. 34 ......................................................................................................... 3, 4

Fed. R. Civ. P. 37(e) .............................................................................................................. 3

**Other Authorities**

Johnson, Dave; Lynch, John, ed., *How to delete messages and conversations on your iPhone, and set them to auto-delete*, Business Insider (April 22, 2019), https://www.businessinsider.com/guids/tech/how-to-delete-messages-on-iphone .................................................................................................................................. 9

Jones, Dustin, *When it comes to data on your phone, deleting a text isn't the end of the story*, NPR (July 15, 2022),
    https://www.npr.org/2022/07/15/1111778878 ................................................................ 10

I. **INTRODUCTION**[1]

The Dugaboy Investment Trust ("Movant") files this Motion to Preserve Evidence and Compel the Forensic Imaging of James P. Seery, Jr.'s iPhone (and any other of his Apple devices sharing the same Apple ID) to preserve the ESI contained on that iPhone and to permit the recovery of text messages Mr. Seery admits to deleting.

On February 16, 2023, Mr. Morris of Pachulski Stang Ziehl & Jones wrote in his capacity as Mr. Seery's personal counsel in responding to a subpoena in another matter. With respect to Mr. Seery's iPhone, Mr. Morris stated the following:

> 1. Mr. Seery's iPhone is personal in nature. While it is backed up to iCloud, that back-up does not contain deleted items, whether deleted manually or as part of an automatic setting.
>
> 2. The automatic text deletion setting is currently set at one year; texts that are manually or automatically deleted are not retrievable.[2]

This shocking disclosure of Mr. Seery's automatic text deletion setting – made now for the first time despite years of litigation in this bankruptcy case and related adversary proceedings – triggered all that follows below.

Mr. Seery joined the board of Highland Capital Management, L.P. ("HCMLP" or the "Reorganized Debtor") on January 9, 2020, he was appointed Chief Executive Officer and Chief Restructuring Officer in July 2020, and he is a significant witness in this proceeding and various related adversary proceedings. He is in possession of, and is continuing to use, an iPhone that he asserts is "personal in nature," but which he also has testified he uses regularly for HCMLP

---

[1] Concurrently herewith, Movant is filing its *Appendix in Support of The Dugaboy Investment Trust's Motion to Preserve Evidence and Compel Forensic Imaging of James P. Seery, Jr.'s iPhone* (the "Appendix"). Citations to the Appendix are annotated as follows: Ex. #, App. #.

[2] Hartmann Decl., Ex. A, Email from J. Morris to M. Naudin, dated Feb. 16, 2023.

CORE/3522697.0002/181736306.13

business purposes.[3] Despite having a duty to preserve evidence in this proceeding from the moment he joined the HCMLP board, despite also later becoming materially involved in other related litigation in which he also had a duty to preserve evidence, and despite specifically receiving a December 30, 2020, letter reminding him and HCMLP of their duty to preserve evidence, specifically including text messages and cellular phone voice mails, Mr. Seery deliberately, and in violation of his and HCMLP's duty to preserve evidence, activated a one-year auto-delete setting on his iPhone so text messages more than one year old were automatically deleted on a rolling basis, thus willfully destroying potentially relevant evidence.

This is not (at this time) a motion to compel Movant's *access* to the forensic image. Rather, in light of Mr. Seery's admission that he has been continuously deleting potentially relevant ESI for years, Movant seeks to prevent his further destruction of evidence and to create an image from which HCMLP's or Mr. Seery's counsel can review and produce responsive ESI, and from which the parties may attempt to recover relevant ESI Mr. Seery has already deleted, which his ongoing use of the iPhone is potentially overwriting and rendering unrecoverable.

Movant conferred with counsel for Mr. Seery, but despite the admitted destruction of ESI, Mr. Seery refused to permit the preservation of evidence on Mr. Seery's iPhone by creating a forensic image without sound justification. Thus, for the reasons set forth below, Movant respectfully requests that the Court enter an order compelling HCMLP and/or Mr. Seery to promptly submit Mr. Seery's iPhone to a neutral forensic data expert to create a forensic image of his iPhone, pursuant to the protocol set forth below. This is necessary to ensure the preservation

---

[3] *See, e.g.*, **Ex. 1**, App. 000001-3 text messages between Mr. Seery (via his iPhone) and HCMLP's former CEO Jim Dondero, regarding HCMLP business and litigation (attached to Mr. Seery's December 7, 2020 sworn declaration in adversary proceeding 20-03190-SGJ as a "true and correct copy" of the text messages); **Ex. 2**, App. 000004-6 text messages between Mr. Seery (via his iPhone) and HCMLP's former employee Patrick Daugherty regarding HCMLP business and litigation) (produced by Mr. Seery in litigation between Mr. Daugherty and another former HCMLP employee).

2

of evidence on Mr. Seery's iPhone reasonably believed to be relevant to this and various other proceedings, to assist efforts to recover already-deleted text messages before his continued use renders such efforts impossible, and to prevent Mr. Seery's further spoliation of evidence.

## II. ARGUMENT AND AUTHORITIES

### A. HCMLP and Mr. Seery Had a Continuing Duty to Preserve ESI on Mr. Seery's iPhone from the Time He Joined HCMLP's Board in January 2020, when HCMLP Was Already in Bankruptcy Litigation

"As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party "has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.""[4] Thus, "[t]he Federal Rules of Civil Procedure require that parties take reasonable steps to preserve ESI that is relevant to litigation."[5] "Generally, the duty to preserve extends to documents or tangible things (defined by Federal Rule of Civil Procedure 34) by or to individuals 'likely to have discoverable information that the disclosing party may use to support its claims or defenses.'"[6] The "duty to preserve evidence extends to those persons likely to have relevant

---

[4] *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (cleaned up); *see also Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) ("A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant."); *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 232 (D. Minn. 2019) ("A party is obligated to preserve evidence once the party knows or should know that the evidence is relevant to future or current litigation."); *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 612 (S.D. Tex. 2010) ("Generally, the duty to preserve arises when a party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'"); *In re Correra*, 589 B.R. 76, 133 (N.D. Tex. Bankr. 2018) (Jernigan, J.) ("A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation.").

[5] *Paisley Park Enters.*, 330 F.R.D. at 232 (citing Fed. R. Civ. P. 37(e)); Fed. R. Civ. P. 37(e) ("If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.").

[6] *Rimkus Consulting Group*, 688 F.Supp.2d at 612 (*quoting Zubulake v. UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 217-218 (S.D.N.Y. 2003)).

3

information – the key players in the case, and applies to unique, relevant evidence that might be useful to the adversary."[7] Companies with a duty to preserve evidence are also required "to effectively communicate to employees who [are] likely to have possession of relevant documents and electronically stored information that they should preserve that information for purposes of ongoing and anticipated litigation."[8] The preservation duty extends to communications on employees' personal devices also used (even if infrequently) for business purposes.[9]

Specifically regarding text messages, "[i]t is well established that text messages "fit comfortably within the scope of materials that a party may request under Rule 34.""[10] Thus, the failure to suspend routine document destruction policies, resulting in the deletion of text messages, is a failure of reasonable document preservation steps.[11] Thus, courts have found the failure to turn off, or suspend, a mobile phone's text message "auto-erase" function violates the requirement

---

[7] *Paisley Park Enters.*, 330 F.R.D. at 233 (cleaned up); *see also Schnatter v. 247 Grp., LLC*, No. 3:20-cv-00003-BJB-CHL, 2022 WL 2402658, at *9 (W.D. Ky. Mar. 14, 2022) ("As Schnatter is the plaintiff in this case and a key witness, his personal cellphones were well within the normal scope of discovery").

[8] *Gaddy v. Blitz U.S.A., Inc.*, No. 2:09-CV-52-DF, No. 6:09–CV–283-MHS, 2010 WL 11527376, at *9 (E.D. Tex. Sept. 13, 2010), *opinion modified on denial of reconsideration on other grounds*, No. 2:09-CV-52-DF, 2011 WL 13196167 (E.D. Tex. Feb. 1, 2011).

[9] *Moore v. CITGO Refining & Chem Co., L.P.*, 735 F.3d 309, 317 (5th Cir. 2013); *Paisley Park Enters.*, 330 F.R.D. at 234-35 (rejecting as "without merit" the argument that "given the personal nature of their phones, it is unreasonable for the Court to expect them to know they should preserve information contained on those devices," when "based on text messages that other parties produced in this litigation, that Staley and Wilson used their personal cell phones to conduct the business of RMA and Deliverance."); *Schnatter*, 2022 WL 2402658, at *9 ("First, it would be unreasonable for Schnatter to have believed that his cellphones were exempt from discovery merely because they are not the primary means for his business communications. Even taking Schnatter at his word regarding his limited use of his personal cellphones for business purposes, by his own admission, Schnatter used text messaging for business at least on a limited basis. … As Schnatter is the plaintiff in this case and a key witness, his personal cellphones were well within the normal scope of discovery.").

[10] *Paisley Park Enters.*, 330 F.R.D. at 234 (cleaned up).

[11] *See, e.g.*, *In re Skanska USA Civ. Se. Inc.*, 340 F.R.D. 180, 186-87 (N.D. Fla. 2021) ("the Court finds that Skanska did not take reasonable steps to preserve the cell phone data for these custodians," including because "Skanska also failed [to] suspend its routine document destruction policies, which allowed employees to delete text messages, and did not require cell phone data to be backed up."); *Paisley Park Enters.*, 330 F.R.D. at 233 (D. Minn. 2019) ("The principles of the 'standard reasonableness framework' require a party to suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.") (cleaned up).

4

to take reasonable steps to preserve evidence.[12] Failing to back up an iPhone also violates the duty to preserve ESI.[13] At least one federal court noted that "[i]t takes, at most, only a few minutes to disengage the auto-delete function on a cell phone."[14] Indeed, this Court has cited with approval to such cases,[15] including in an opinion based in part on a January 8, 2021 hearing concerning Mr. Dondero's cell phone, which Mr. Seery personally attended.

Mr. Seery's testimony confirms he knew of his retention obligation. Mr. Seery testified about how to maintain text messages on Apple phones in the context of Mr. Dondero's alleged obligations to maintain such messages on his personal phone.[16] He also testified that even a personal mobile device may have Highland information on it.[17] Most notably, he engaged in the following exchange: "Q: Do you have a Highland cell phone? A: No. Q: So do you use your personal phone for Highland business? A: Yes. Q: Do you preserve all of your text messages?

---

[12] *See, e.g.*, *Paisley Park Enters.*, 330 F.R.D. at 233 ("Defendants were required to take reasonable steps to preserve Staley and Wilson's text messages. The RMA Defendants did not do so. First, Staley and Wilson did not suspend the auto-erase function on their phones."); *Youngevity Int'l v. Smith*, No. 3:16-CV-704-BTM-JLB, 2020 WL 7048687, at *2 (S.D. Cal. July 28, 2020) ("The Relevant Defendants' failure to prevent destruction by backing up their phones' contents or disabling automatic deletion functions was not reasonable because they had control over their text messages and should have taken affirmative steps to prevent their destruction when they became aware of their potential relevance."); *see also In re Skanska*, 340 F.R.D. at 189; *NuVasive, Inc. v. Kormanis*, No. 1:18CV282, 2019 WL 1171486, at *8-9 (M.D.N.C. Mar. 13, 2019), *report and recommendation adopted*, No. 1:18-CV-282, 2019 WL 1418145 (M.D.N.C. Mar. 29, 2019).

[13] *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 344 (D. Ariz. 2022) ("By failing to back up her iPhone, Plaintiff failed to take reasonable steps to preserve the ESI contained on the phone.") (citing *Youngevity Int'l*, 2020 WL 7048687, at *2; *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KS), 2020 WL 9066078, at *4 (C.D. Cal. July 22, 2020); *Paisley Park Enters.*, 330 F.R.D. at 233; *Brewer v. Leprino Foods Co., Inc.*, No. CV-1:16-1091-SMM, 2019 WL 356657, at *10 (E.D. Cal. Jan. 29, 2019); *Gaina v. Northridge Hosp. Med. Ctr.*, No. CV 18-00177, 2018 WL 6258895, at *5 (C.D. Cal. Nov. 21, 2018)).

[14] *Paisley Park Enters.*, 330 F.R.D. at 233.

[15] *In re Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ11, 2021 WL 2326350, at *22 n.165 (Bankr. N.D. Tex. June 7, 2021).

[16] **Ex. 7**, App. 000221 3/22/2021 Hearing Transcript (Adversary Proceeding No. 20-3190-sgj) at 229:19 – 21: "The phone company doesn't maintain text messages for those who use Apple products. Apple maintains them." (Seery, J.).

[17] *Id.* at 228:23 – 229:7 (testifying, in the context of Mr. Okada's phone, that a mobile phone may have Highland information even if it is a personal device).

5

A: I don't delete them. I believe that they're accessible, yes."[18] All of this testimony was given in the context of Mr. Seery's experience and training as "a licensed attorney [who] was formerly a partner and co-Head of the Sidley Austin LLP New York Corporate Reorganization and Bankruptcy Group."[19] It is therefore beyond doubt that Mr. Seery was acutely aware of his continuing duty to preserve text messages.

HCMLP had a duty to preserve ESI when it entered Chapter 11 Bankruptcy on October 16, 2019.[20] Mr. Seery had a duty to preserve ESI on his devices when he was appointed to HCMLP's board approximately three months later, on January 9, 2020.[21] That duty was continuing when Mr. Seery was also appointed as HCMLP's Chief Executive Officer and Chief Restructuring Officer, which became effective as of March 15, 2020.[22] Moreover, on December 30, 2020, HCMLP (through counsel) and Mr. Seery (directly) received a letter from counsel for then-current, and now-former, HCMLP employees, reminding HCMLP and Mr. Seery of their duty to preserve evidence, including text messages:

> we remind you that you must comply with the law to preserve all evidence that could be relevant to this matter, including all documents, *text messages, voice mails*, and emails, including but not limited to all communications with our clients, including *text messages and cellular phone voice mails* concerning the subject matter of this letter; including *text messages and cellular phone voice mails* by and between *the Independent Board* and the Creditor's Committee; any and all documents reflecting fees paid by affiliated entities to the Debtor for work performed by and bonuses (cash, retention, and deferred) to be paid to our clients; and any and

---

[18] *Id.* at 233:2 – 9.

[19] **Ex. 3**, App. 000007-107 HCMLP Bankr. Dkt. 281-2.

[20] *See* Dkt. 2.

[21] *See* Dkt. 339.

[22] **Ex. 4**, App. 000108-120 *See* Dkt. 854.

6

CORE/3522697.0002/181736306.13

all documents reflecting ***the Independent Board***'s decision on what constitutes an "insider."[23]

In fact, in connection with these proceedings, HCMLP expressly acknowledged its duty to preserve evidence as well as its corresponding duty to notify its employees of their duty to preserve evidence, stating in the Document Production Protocol made part of its Settlement Term Sheet: "Debtor [HCMLP] acknowledges that they should take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. This includes notifying employees possessing relevant information of their obligation to preserve such data."[24] In adversary proceeding 19-34054-sgj11, this Court emphasized HCMLP's acknowledgment of those duties, stating:

> the January 2020 Corporate Governance Settlement set forth a "Document Production Protocol," which stated that ESI was included within the documents being sought and stated that "***Debtor acknowledges that they should take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. This includes notifying employees possessing relevant information of their obligation to preserve such data***."[25]

The Court thus concluded that "whether Mr. Dondero and inhouse counsel paid attention or not, ***they were on notice very early in this case that they had a duty to preserve ESI***."[26] This very early notice applies equally to HCMLP's new CEO, Mr. Seery.

Moreover, it is no excuse that HCMLP characterizes Mr. Seery's iPhone as "personal in nature,"[27] because the truth is that Mr. Seery has testified that he used his iPhone for business

---

[23] Smith Decl., Ex. A, December 30, 2020 Letter (emphasis added).

[24] **Ex. 5**, App. 000128 and App. 000165 Dkt. 281-1, Settlement Term Sheet Ex. C, Document Production Protocol, pp. 7, 44.

[25] *In re Highland Cap. Mgmt., L.P.*, 2021 WL 2326350, at *12 (emphasis in original).

[26] *Id.* (emphasis added).

[27] Hartmann Decl., Ex. A, Email from J. Morris to M. Naudin, dated Feb. 16, 2023.

7

purposes,[28] including using the phone to exchange text messages with then-current, and now-former, HCMLP employees, including HCMLP's former CEO Jim Dondero, regarding HCMLP business.[29] HCMLP and Mr. Seery unquestionably had a duty to preserve the ESI, including text messages, on Mr. Seery's iPhone beginning on January 9, 2020.

Based on his position, Mr. Seery would certainly have communicated with others about (1) purchases and/or sales of HCM assets (2) costs of HCM operations, (3) claims of creditors, (4) settlement of claims of creditors, (5) claims trading, (6) duty to prepare reports, (7) provision of (or refusals to provide) information to equity and numerous other matters potentially relevant to (A) claims brought pursuant to the Motion for Leave at Dkt 3662, (B) the Valuation Adversary Proceeding at Dkt 1 in Cause No. 23-03038, (C) the so-called Vexatious Litigant Motion evidenced at Dkt 102-1 in Cause No. 3:21-cv-00881-X, (D) the Kirschner litigation, Dkt 158 in Cause no. 21-03076. and (E) Charitable DAF Fund, LP and CLO Holdco, Ltd. v. Highland Capital Management, LP, et al, at Cause No. 21-03067, among many other matters. It is beyond dispute that Mr. Seery has been the Debtor's principal witness in nearly every instance in which the Debtor has been required to give testimony.[30]

---

[28] Ex. 7, App. 000225 at 233:2 – 9.

[29] *See, e.g.*, Ex. 1, App. 000001-3 text messages between Mr. Seery (via his iPhone) and HCMLP's former CEO Jim Dondero, regarding HCMLP business and litigation (attached to Mr. Seery's December 7, 2020 sworn declaration in adversary proceeding 20-03190-SGJ as a "true and correct copy" of the text messages); Ex. 2, App. 000004-6 text messages between Mr. Seery (via his iPhone) and HCMLP's former employee Patrick Daugherty regarding HCMLP business and litigation) (produced by Mr. Seery in litigation between Mr. Daugherty and another former HCMLP employee); *see also* Hartmann Decl., Ex. B, Letter from M. Hartmann to J. Morris, dated Mar. 4, 2023, p.2.

[30] For example: **Ex. 8**, App. 000263-318 3/4/2020 Hearing Transcript (Cause No. 19-34054); **Ex. 9**, App. 000319-384 7/14/2020 Hearing Transcript (Cause No. 19-34054); **Ex. 10**, App. 000385-409 9/10/2020 Hearing Transcript (Cause No. 19-34054); **Ex. 11**, App. 000410- 414 10/17/2020 Deposition Transcript (Cause No. 19-34054); **Ex. 12**, App. 000415-532 10/20/2020 Hearing Transcript (Cause No. 19-34054); **Ex. 13**, App. 000533-537 12/14/2020 Deposition Transcript (Cause No. 19-34054); **Ex. 14**, App. 000538-610 1/14/2021 Hearing Transcript (Cause No. 19-34054); **Ex. 15**, App. 000611-615 1/20/2021 Deposition Transcript (Adversary Proceeding No. 21-03000-sgj); **Ex. 16**, App. 000616-672 1/26/2021 Hearing Transcript (Cause No. 19-34054 and Adversary Proceeding No. 21-03000-sgj); **Ex. 17**, App. 000673-677 1/29/2021 Deposition Transcript (Cause No. 19-34054); **Ex. 18**, App. 000678-885 2/2/2021 Hearing Transcript (Cause No. 19-34054); **Ex. 19**, App. 000886-896 2/3/2021 Hearing Transcript (Cause No. 19-34054); **Ex. 20**, App. 000897-946 2/23/2021 Hearing Transcript (Adversary Proceeding Nos. 20-03190-sgj

8

## B. Mr. Seery's Years-Long Use of Auto-Delete Violated His and HCMLP's Duty to Preserve ESI

Despite his ongoing duty to preserve the text messages on his iPhone, Mr. Seery deliberately set his iPhone to automatically delete *all* text messages more than a year old, regardless of their relevance to existing or future litigation.[31] Notably, the default text message preservation setting on an iPhone is to retain text messages forever, so to automatically delete text messages after a year (or 30 days), a user must manually change the default retention setting.[32] Thus, at some point after obtaining his iPhone, Mr. Seery actively changed (or caused to be changed) his default iPhone text message retention setting from permanent retention to a one-year auto-delete setting.[33] Mr. Seery maintained that one-year auto-delete setting until shortly before March 10, 2023, on which date he represented that the setting had been "recently suspended."[34] Mr. Seery deactivated his auto-delete setting only after use of the setting was discovered in another lawsuit and he received multiple requests to cease deleting messages from counsel for certain

---

and 21-03010-sgj); Ex. 7, App. 000201-262; **Ex. 21**, App. 000947-951 5/14/2021 Deposition Transcript (Adversary Proceeding No. 21-03000-sgj); **Ex. 22**, App. 000952-1066 5/21/2021 Hearing Transcript (Cause No. 19-34054); **Ex. 23**, App. 001067-1071 5/24/2021 30(b)6 Deposition Transcript (Adversary Proceeding No. 21-03003-sgj); **Ex. 24**, App. 001072-1110 6/25/2021 Hearing Transcript (Cause No. 19-34054); **Ex. 25**, App. 001111-1129 7/19/2021 Hearing Transcript (Cause No. 19-34054); **Ex. 26**, App. 001130-1172 8/4/2021 Hearing Transcript (Cause No. 19-34054); **Ex. 27**, App. 001173-1177 10/21/2021 Deposition Transcript (Adversary Proceeding No. 21-03005-sgj); **Ex. 28**, App. 001178-1227 3/1/2022 Hearing Transcript (Adversary Proceeding No. 22-03003-sgj); **Ex. 29**, App. 001228-1231 3/11/2022 30(b)6 Deposition Transcript (Adversary Proceeding No. 21-03010-sgj); **Ex. 30**, App. 001232-1235 5/3/2022 30(b)6 Deposition Transcript (Adversary Proceeding No. 21-03082-sgj); **Ex. 31**, App. 001236-1278 8/8/2022 Hearing Transcript (Adversary Proceeding No. 21-03020-sgj).

[31] Hartmann Decl., Ex. A, Email from J. Morris to M. Naudin, dated Feb. 16, 2023.

[32] *NuVasive*, 2019 WL 1171486, at *5, n.7 (recognizing offending user's acknowledgment that an "iPhone's default setting [is] for permanent text message retention."); *see also* Dave Johnson, John Lynch, ed., *How to delete messages and conversations on your iPhone, and set them to auto-delete*, Business Insider, April 22, 2019 ("By default, the iPhone keeps all messages forever (or until you manually delete them). If you prefer, tap "30 Days" or '1 Year." If you do, the iPhone will automatically discard your messages after the selected time period.") (attached for reference, and available at https://www.businessinsider.com/guides/tech/how-to-delete-messages-on-iphone); Declaration of Erik Laykin, ¶ 6.

[33] Hartmann Decl., Ex. A, Email from J. Morris to M. Naudin, dated Feb. 16, 2023.

[34] Hartmann Decl., Ex. D, Email from J. Morris to M. Hartmann, dated Mar. 10, 2023. The one-year auto-delete setting was in place at least as long as February 16, 2023. Hartmann Decl., Ex. A, Email from J. Morris to M. Naudin, dated Feb. 16, 2023.

9

adversary proceeding defendants.[35] Notably, Mr. Seery, though his counsel, was queried as to when he enabled the setting, but refused to answer.[36] While Mr. Seery maintained the one-year auto-delete setting, any iCloud backup did not back up the deleted messages.[37] Thus, Mr. Seery represents that the deleted text messages "are not retrievable," and he is unable to produce any of the deleted text messages.[38] However, to the extent Mr. Seery uses other Apple devices (*e.g.*, iPad, MacBook, Apple Watch) sharing the same Apple ID as the iPhone, it is possible that the deleted text messages were replicated on the other Apple devices.

> C. **The Court Should Require Forensic Imaging to Preserve the Remaining ESI on Mr. Seery's iPhone and to Prevent Further Evidence Spoliation**

Despite "recently suspend[ing]" his iPhone's auto-delete setting, Mr. Seery continues to use his iPhone, thereby continuing to store new data on his device, which makes the recovery of deleted texts more difficult or, eventually, potentially impossible. "When you delete a piece of data from your device — a photo, video, text or document — it doesn't vanish. Instead, your device labels that space as available to be overwritten by new information.… Once the memory on that device fills up entirely, new information is saved on top of those deleted items."[39] So, the longer one uses a device with deleted data, the bigger the risk that the deleted data will be overwritten so that it is no longer recoverable.[40]

Consequently, to mitigate Mr. Seery's destruction of evidence, and to provide the best

---

[35] Hartmann Decl., Ex. B, Letter from M. Hartmann to J. Morris, dated Mar. 4, 2023; Hartmann Decl., Ex. C, Letter from M. Hartmann to R. Loigman and J. Morris, dated Mar. 7, 2023.

[36] *Id.*

[37] Hartmann Decl., Ex. A, Email from J. Morris to M. Naudin, dated Feb. 16, 2023.

[38] *Id.*

[39] Dustin Jones, *When it comes to data on your phone, deleting a text isn't the end of the story*, NPR, July 15, 2022 (attached for convenience at **Ex. 32**, App. 001279-1283 and available at https://www.npr.org/2022/07/15/1111778878); *see also* Declaration of Erik Laykin, ¶ 7.

[40] Declaration of Erik Laykin, ¶ 10.

10

chance for a digital forensics expert to recover Mr. Seery's deleted texts, it is essential to create a forensic image of Mr. Seery's iPhone as soon as possible.[41] Although it is likely that many of the deleted texts are currently recoverable, each day Mr. Seery uses his iPhone, he increases the risk that the deleted texts will be overwritten, and thereby rendered unrecoverable.[42] For that reason, it is also important to preserve an image of any other Apple devices Mr. Seery uses or used (*e.g.*, iPad, MacBook, Apple Watch) that share the same Apple ID as the iPhone because it is possible that the deleted text messages were replicated on the other Apple devices.

Importantly, the pressing need to create a forensic image of Mr. Seery's iPhone exists only because of Mr. Seery's deliberate destruction of ESI through activating a one-year auto-delete setting on his iPhone.

This Court has the power and discretion to order HCMLP and Mr. Seery to create a forensic (or mirror) image of his iPhone (and other connected Apple devices).[43] Indeed, this Court has already ordered forensic imaging of "cellular phones tablets, laptops, computers, or any other electronic devices that can store data," in this very case.[44] "To be sure, forensic imaging is not uncommon in the course of civil discovery,"[45] though "'courts must consider the significant interests implicated by forensic imaging before ordering such procedures,' including that they must 'account properly for the significant privacy and confidentiality concerns` of the parties."[46]

---

[41] Declaration of Erik Laykin, ¶ 11.

[42] Declaration of Erik Laykin, ¶¶ 10-12.

[43] *See In re Correra*, 589 B.R. at 124 (the Court "has inherent powers and authority under section 105 of the Bankruptcy Code to address abuses of judicial process and bad faith conduct."); *see also Hamilton v. First Am. Title Ins. Co.*, No. 3:07-CV-1442-G, 2010 WL 791421, at *4 (N.D. Tex. Mar. 8, 2010) (courts have "broad discretion in discovery matters") (quoting *Winfun v. Daimler Chrysler Corp.*, 255 F. Appx 772, 773 (5th Cir. 2007) (per curiam)).

[44] **Ex. 33**, App. 001284-001286 Dkt. 2177, Order, ¶ 3.

[45] *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008).

[46] *Areizaga v. ADW Corp.*, No. 3:14-cv-2899-B, 2016 WL 9526396, at *3 (N.D. Tex. Aug. 1, 2016) (quoting *John B.*, 53 F.3d at 460).

11

However, with these considerations in mind, "courts have permitted restrained and orderly computer forensic examinations where the moving party has demonstrated that its opponent has defaulted in its discovery obligations by unwillingness or failure to produce relevant information by more conventional means."[47]

Those circumstances are present here, where HCMLP and Mr. Seery have admitted they failed to preserve ESI on Mr. Seery's iPhone and consider the deleted texts to be "not retrievable,"[48] and therefore not available for production. In other words, the only way a party will ever obtain relevant evidence from one of Mr. Seery's deleted texts will be through a forensic data recovery process.

Courts have also ordered forensic imaging specifically to facilitate the recovery of deleted ESI. For instance, in *Talon Transaction Technologies*, the court ordered forensic imaging when, like here, a party admitted it did not preserve all potentially relevant ESI, and that ESI was subject to being overwritten.[49]

Similarly, like here, in *Antioch Co. v. Scrapbook Boarders, Inc.*, the plaintiff sought forensic imaging "to ensure the recovery, and preservation, of [deleted] information," when "data from a computer which has been deleted remains on the hard drive, but is constantly being

---

[47] *Id.*; *see also Talon Trans. Tech., Inc., v. Stoneeagle Servs., Inc.*, No. 3:13-CV-902-P, 2013 WL 12172924, at *3-5 (N.D. Tex. May 1, 2013) (establishing an imaging protocol for creation and review of a forensic image); *Genworth Fin. Wealth Mgmt. v. McMullan*, 267 F.R.D. 443, 446-49 (D. Conn. 2010) (same); *Ameriwood Indus., Inc. v. Liberman*, No. 4:06-CV-524-DJS, 2006 WL 3825291, at *5-7 (E.D. Mo. Dec. 27, 2006) (same); *Antioch Co. v. Scrapbook Boarders, Inc.*, 210 F.R.D. 645, 653-54 (D. Minn. 2002) (same); *Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D. Ind. 2000) (same).

[48] Hartmann Decl., Ex. A, Email from J. Morris to M. Naudin, dated Feb. 16, 2023.

[49] *Talon Trans. Tech.*, 2013 WL 12172924, at *2 ("And, as Defendants have apparently represented to Plaintiffs, Defendants have not preserved all potentially relevant hard drives but rather have only 'backed up' one hard drive. Moreover, it appears that certain portions of Defendants' systems that Plaintiffs insist are relevant may be overwritten on a regular basis. The undersigned concludes that a forensic imaging of Defendants' relevant computer equipment is permissible and appropriate under the circumstances.") (internal citations omitted).

12

overwritten, irretrievably, by the Defendants' continued use of that equipment."[50] And also like Movant here, Antioch provided the affidavit of a forensic data expert attesting that "data which is deleted from a computer is retained on the hard drive, but is constantly being overwritten by new data, through the normal use of the computer equipment."[51] The court concluded that "the Defendants may have relevant information, on their computer equipment, which is being lost through normal use of the computer, and which might be relevant to the Plaintiff's claims, or the Defendants' defenses."[52] The court granted the motion to compel the forensic imaging because "Antioch should be able to attempt to resurrect data which has been deleted from the Defendants' computer equipment."[53]

Courts that have compelled forensic imaging of computer equipment and phones have utilized a similar protocol to balance the need to preserve or recover potentially relevant ESI with privacy and confidentiality considerations.[54] This Court should draw from those protocols and apply a similar protocol in this case, as follows:

1. The parties shall agree on a neutral expert to conduct the forensic imaging of Mr. Seery's iPhone and any other Apple devices sharing the same Apple ID as Mr. Seery's iPhone (the "Devices") within one week from the date of the order granting this Motion.[55] If the parties are unable to agree on a neutral expert, the Court will appoint one.

---

[50] *Antioch*, 210 F.R.D. at 650-51.

[51] *Id.* at 651.

[52] *Id.* at 652.

[53] *Id.* at 652.

[54] *See Talon Trans. Tech*, 2013 WL 12172924, at *3-5 (N.D. Tex. May 1, 2013); *Genworth Fin. Wealth Mgmt*, 267 F.R.D. at 449; *Ameriwood Indus.*, 2006 WL 3825291, at *5-7; *Antioch*, 210 F.R.D. at 653-54; *Simon Prop. Group*, 194 F.R.D. at 640.

[55] HCMLP and Mr. Seery's culpability for the deleted text messages warrants a significant shifting of costs in their direction. *Genworth Fin. Wealth Mgmt. v*, 267 F.R.D. at 448 ("In light of the Defendants' culpability in

13

2. The expert will maintain all information regarding the imaging of the Devices in the strictest confidence. Within one week from the date of the order granting this Motion, the parties will agree on a confidentiality agreement to govern the expert's handling of the imaged information. The expert's inspection of Mr. Seery's Devices will not waive any applicable privilege or other doctrine, rule, or protection assuring the confidentiality of the information and data on the Devices.

3. HCMLP and Mr. Seery will make Mr. Seery's Devices available for imaging at a mutually agreeable time aimed to minimize disruption, but in any event no later than one week after expert is designated. HCMLP and Mr. Seery are to provide a detailed report and notice of all Devices produced for inspection by the same date.

4. After the expert has completed making the forensic image(s), Mr. Seery's Devices may be returned to normal use, provided that the auto-delete setting remains deactivated.

5. The expert shall use the forensic image to attempt to recover the deleted text messages in a reasonable searchable form.

6. The expert shall provide the image and the recovered data to HCMLP's and Mr. Seery's counsel and shall also provide a contemporaneous report identifying and detailing, for each Device, any recovered data to counsel for HCMLP, Mr. Seery, and Movant, by no later than 3 weeks after the Devices are imaged.

---

necessitating the expense of a neutral expert, the cost for the appointment of a neutral forensic expert is to be borne 80% by the Defendants and 20% by the Plaintiff."). Cost shifting further is warranted by Mr. Seery's misleading, if not outright false, testimony about his text messages that "I don't delete them. I believe they're accessible, yes." Ex. 7, App. 000225 at 233:2 – 9.

14

7. HCMLP's and/or Mr. Seery's counsel will maintain the image and the recovered data for future review and production of responsive documents in accordance with the Federal Rules of Civil Procedure.

8. The expert shall also maintain the image and recovered data until 60 days after the conclusion of this bankruptcy proceeding and all related adversary proceedings, or until such other later time as agreed by the parties.

The foregoing protocols adequately address any privacy or confidentiality concerns associated with the imaging of Mr. Seery's Devices, while permitting Movant to attempt to resurrect data Mr. Seery deleted from his iPhone in violation of his duty to preserve evidence.

### III. CONCLUSION

Movant respectfully requests that the Court grant the Motion and enter an order compelling HCMLP and/or Mr. Seery to submit Mr. Seery's Devices for forensic imaging according to the foregoing protocol.

Dated: May 31, 2023

Respectfully submitted,

*/s/Michael P. Aigen*
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for The Dugaboy Investment Trust*

15

**CERTIFICATE OF CONFERENCE**

I certify that on May 30, 2023, counsel for Mr. Seery, Joshua Levy of Willkie Farr & Gallagher, and counsel for The Dugaboy Investment Trust, Michael P. Aigen, held a conference to discuss the foregoing motion and requested relief. Counsel for Mr. Seery contended that, contrary to the prior written representations from Debtor's counsel, Mr. Seery was able to recover deleted texts so that an image of Mr. Seery's devices was unnecessary. Counsel did not know, however, whether this recovered all texts that were previously deleted and would not agree to a forensic imaging of Mr. Seery's iPhone in order to determine if all deleted texts were recovered. Thus the parties could not reach an agreement regarding Movant's requested relief.

*/s/ Michael P. Aigen*
Michael P. Aigen

**CERTIFICATE OF SERVICE**

I certify that on May 31, 2023, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing system to the parties that are registered or otherwise entitled to receive electronic notices in this proceeding.

*/s/Michael P. Aigen*
Michael P. Aigen

16

CORE/3522697.0002/181736306.13