PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris *(*admitted *pro hac vice)*
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P., and the Highland Claimant Trust*

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

REED SMITH LLP
Omar J. Alaniz
Texas Bar No. 24040402
Lindsey L. Robin
Texas Bar No. 24091422
2850 N. Harwood St., Ste. 1500
Dallas, Texas 75201
(469) 680-4292

*Counsel for James P. Seery, Jr.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
| | ) |
| Reorganized Debtor. | ) |
| | ) |

**HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLAIMANT TRUST, AND JAMES P. SEERY, JR.'S REPLY IN FURTHER SUPPORT OF THEIR JOINT MOTION TO EXCLUDE TESTIMONY AND DOCUMENTS OF <u>SCOTT VAN METER AND STEVE PULLY</u>**

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

As discussed during the June 8, 2023 hearing ("Hearing"), the Highland Parties respectfully submit this Reply in Support of Their Joint Motion To Exclude Testimony And Documents of Scott Van Meter and Steve Pully ("Motion" or "Mot."; Dkt. No. 3820).[2]

1. Contrary to HMIT's Response ("Resp."; Dkt. No. 3828) and HMIT's statements at the Hearing, the Purported Experts' testimony should not be admitted. As set forth below—and as further explained in the Highland Parties' Motion and at the Hearing—the Purported Experts should be excluded for at least four, independently sufficiently reasons:

- The Purported Experts were untimely proffered, particularly in light of this Court's multiple prior conferences and Orders setting the scope of the Hearing and associated discovery;

- HMIT's belated identification did not comply with Federal Rule of Civil Procedure 26(b)(4)(A) (which is incorporated by Federal Rule of Bankruptcy Procedure 9014);

- The Purported Experts' testimony cannot satisfy basic *Daubert* principles that, contrary to HMIT's contentions, apply to screen out "junk science" in this contested matter; and

- In any event, the Purported Experts will not "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), but rather will serve only to introduce additional delay and expense.

2. ***First***, HMIT's revelation that it sought to admit expert testimony came far too late. As HMIT acknowledged at the Hearing, it failed to raise its Purported Experts—or even the prospect of expert testimony—at any point during the five briefs and two conferences on HMIT's Motion for Leave. During the two conferences, this Court repeatedly asked HMIT "what you want

---

[2] Capitalized terms have the meanings as in the Motion unless otherwise indicated. All internal alterations, citations, and quotations omitted unless otherwise indicated.

the Court to do" at the Hearing. (Mot. ¶ 13.) HMIT sought to conduct the Hearing "on the pleadings only" or, alternatively, to conduct an evidentiary Hearing after expedited discovery of documents, fact depositions, and corporate representative depositions. (*Id.*; Dkt. No. 3791.) HMIT made no mention of any experts. Only after this Court had ruled on HMIT's request for expedited discovery—and expressly limited the scope of discovery (*see* Mot. ¶ 14; Resp. ¶¶ 2–3)—did HMIT reveal its gambit when the parties' exchanged witness and exhibit lists three days before the Hearing (Dkt. No. 3818).

3. At the Hearing, HMIT's counsel sought to justify this quintessential "trial by ambush" strategy by claiming that it was under no duty to disclose the existence or substance of expert testimony prior to exchange of witness lists, because Bankruptcy Rule 9014 does not incorporate Rule 26(a)(2)'s rules defining the content and timing for expert disclosures. But HMIT fails to acknowledge that Bankruptcy Rule 9014 provides that the exempted sections *may* apply if "the court directs otherwise." Having never once mentioned the possibility of calling experts—and thus depriving the Court of the opportunity to determine whether and on what terms to require expert disclosures—HMIT cannot hide behind the *default* presumption set forth in Bankruptcy Rule 9014.

4. HMIT's suggestion that it simply had not "decided" whether to call experts until nearly midnight on Monday, June 5 rings hollow. Even if that were true (and there is no basis to believe that it is), that is no excuse for failing to advise the Court and the Highland Parties that it was considering such a move. The exchange of witness lists did not commit HMIT to *calling* its experts; HMIT could have reserved that decision until the close of its case at the Hearing. Accordingly, the purpose and effect of HMIT's belated disclosure was to disadvantage the Highland Parties' ability to challenge that evidence (or to submit competing expert testimony) *and*

to hamstring this Court's prerogative to determine what expert disclosures would be appropriate to facilitate an orderly Hearing. Standing alone, HMIT's transparent gamesmanship is a more than sufficient basis to exclude the Proposed Experts. (*See* Mot. ¶¶ 18–19 (collecting cases).)

5. **Second**, contrary to HMIT's repeated statements at the Hearing that it had *exceeded* its disclosure obligations, HMIT's tactics did not comply with the Rules. As noted above, and as HMIT observes repeatedly, Bankruptcy Rule 9014 "excludes Rule 26(a)(2)(b) requirements regarding expert witness disclosures and reports." (Resp. ¶ 1.) But HMIT *ignores* that Bankruptcy Rule 9014 *includes* Rule 26(b)(4)(A), which provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." *See* Fed. R. Bankr. P. 9014(b); Fed. R. Bankr. P. 7026. This Court had limited pre-Hearing discovery to "depositions of Mr. Dondero and/or Mr. Seery" (Resp. ¶ 4) in reliance on HMIT's representations, which omitted any reference to expert witnesses. HMIT then waited until roughly 60 hours before the Hearing to disclose the Purported Experts, which ensured that the Highland Parties did not have sufficient time to seek to modify this Court's Order, let alone take two expert depositions.

6. In any event, during the Hearing, HMIT conceded that the Highland Parties should have the opportunity to depose the Purported Experts, which puts the lie to their assertions that their "expert witness disclosures were timely." (*Id.* ¶ 6.) What is more, HMIT's concession belies their contention that, because the Rule 26(a)(2) disclosure rules do not automatically apply in a contested matter, a party need not even mention the possibility of expert testimony prior to exchange of witness and exhibit lists. As HMIT would have it, the default rule in this Court is that, while an expert must be made available for deposition, the very existence of that (or any) expert can be revealed just two business days before the contested matter is heard. HMIT's position would make a mockery of this Court's rules and procedures.

7. ***Third***, the Purported Experts could not plausibly pass basic *Daubert* standards. Astonishingly, HMIT claims that *Daubert* simply does not apply: "This is a bench hearing on colorability—not a trial where 'junk science' is a concern." (Resp. ¶ 11.) But HMIT cites no authority for this extraordinary position, nor could it. The Federal Rules of Evidence, including Rule 702 and *Daubert*, expressly "apply to proceedings before[] . . . United States **bankruptcy** and magistrate judges," and in all "civil cases and proceedings, including **bankruptcy**, admiralty, and maritime cases." Fed. R. Evid. 1101(a)–(b) (emphasis added). Courts in this District routinely exclude experts in contested matters based on *Daubert* challenges. *See, e.g.*, *In re Ondova Ltd. Co.*, 2012 WL 5879147, at *10 (Bankr. N.D. Tex. Nov. 21, 2012) (Jernigan, J.) ("After a *Daubert*-objection was lodged by the Receiver's counsel, the court did not let Dr. Lindenthal testify as to his opinion on the value of the Domain Names, because he could not share the methodology he used-it is proprietary information of Sedo, LLC.") (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); Fed. R. Evid. 702); *In re Vill. At Camp Bowie I, L.P.*, 454 B.R. 702, 706 n.6 (Bankr. N.D. Tex. 2011) ("Debtor originally designated Ben E. Dyess Jr. ("Dyess") of Ben Dyess & Associates as its appraiser, but the court sustained a challenge to Dyess's expert report based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, , 125 L.Ed.2d 469 (1993).").

8. HMIT wants to evade the requirements of Rule 702 and *Daubert* because the Proposed Experts do not come close to satisfying them. For example, HMIT is unable to point to a single item in Van Meter's CV that qualifies him to opine about Seery's compensation, stating only that he is "familiar with post-confirmation compensation of a trustee." (Resp. ¶ 10.) "Familiarity is not expertise." *Royale Green Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 2009 WL 2589514, at *2 (S.D. Fla. Aug. 18, 2009) (granting in part *Daubert* motion to exclude expert testimony). Nor does HMIT even try to show that the Purported Experts opinions are reliable or

anything more than (bad) arithmetic and repackaged legal conclusions. (*See* Resp. ¶ 11; Mot. ¶¶ 23–26.)

9.  Indeed, the Purported Experts' arithmetic amounts to "junk science" on its face. For example, Pulley purports to calculate Stonehill and Farallon's internal rate of return ("IRR") on their purchase of Class 8 and Class 9 claims. (HMIT Ex. 48–52.) But Pulley's method for arriving at the supposed 8.4% internal rate of return (which is still more than the 6% IRR HMIT claimed without foundation at the Hearing) would make an elementary school math student blush. He simply *aggregated* all four of the Muck and Jessup trades, which occurred with four different counterparties (Redeemer, Acis, HarbourVest, and UBS) at four different times. That is, he treated all of those transactions as a single trade, and then plugged that nonsensical result into the XIRR function in Microsoft Excel to generate an 8.4% hypothetical rate of return over 24 months. (*Id.* Exs. 50, 52.) From that "data," he extrapolates the conclusion that hedge funds do not make investments in distressed assets with this expected return.

10. As the Highland Parties explained during closing arguments at the Hearing, however, the allegations from HMIT's own complaint demonstrate that the Purported Experts' conclusions are "junk arithmetic" in the extreme. No particular "expertise" is required to understand that—even assuming that Highland met only the plan projection in the November 30, 2020, disclosure statement—Stonehill and Farallon expected to earn substantial rates of return on their respective purchases of the Redeemer, Acis, and HarbourVest claims. Nor is expert testimony necessary to appreciate that when Stonehill and Farallon purchased the UBS claim in August 2021, the sale of MGM had been publicly announced months earlier, such that the prior plan projections would have been obviously stale.

| Claim Seller | Claim Purchaser | Class 8 | A<br>Projected Proceeds[3] | B<br>Alleged Purchase Price | C = A – B<br>Expected Gain | D = C / B<br>Expected Gain% | Hit Proj's<br>IRR |
|---|---|---|---|---|---|---|---|
| Redeemer | Stonehill | $137.7 | $98.2 | $78.0 | $20.2 | 26.0% | 24.2% |
| Acis | Farallon | $23.0 | $16.4 | $8.0 | $8.4 | 105.1% | 98.6% |
| HarbourVest | Farallon | $45.0 | $32.1 | $27.0 | $5.1 | 18.9% | 17.5% |
| **Totals (weighted average)** | | $205.7 | $146.7 | $113.0 | $33.7 | 29.9% | 27.8% |
| **May 26th – MGM/Amazon Merger Announced** | | | | | | | |
| UBS | Stonehill & Farallon | $64.4 | $45.9 | $50.0 | ($4.1) | -8.2% | -9.8% |
| **Totals (weighted average)** | | $270.1 | $192.6 | $163.0 | $29.6 | 18.2% | **18.4%** |

No amount of so-called "expert" testimony can change the reality that—by HMIT's own allegations—these trades were anything but suspicious.

11. But the Purported Experts' analysis gets even worse. As the Highland Parties explained at the hearing, the "projected" returns set forth in HMIT's complaint ignores the significant potential upside the claims offered. There was, of course, a possibility that Class 8 interests would recover *more* than the projected 71.32%—which means there was an additional $77.41 million in potential recovery on those claims alone, plus an additional $95 million of Class 9 claims. Thus, even crediting HMIT's speculation that Stonehill and Farallon might only have "expected" 71.32% Class 8 recoveries as a base case, any purchaser would have ascribed some value to the potential upside scenarios, particularly when the UBS claims were purchased

---

[3] "Projected Proceeds" are derived by multiplying the Class 8 face amount by the projected recovery of 71.32% for that class. (Dkt. No. 1875.)

-6-

after the MGM announcement (the UBS claim included the lion's share—$60 million—of the purchased Class 9 claims).

| Claim Seller | Claim Purchaser | Class 8 | Class 9 | IRR – 100% On Class 8 | IRR – 100% On Class 8 + $25M Class 9 |
|---|---|---|---|---|---|
| Redeemer | Stonehill | $137.7 | $0.0 | 60.8% | 60.8% |
| Acis | Farallon | $23.0 | $0.0 | 144.7% | 144.7% |
| HarbourVest | Farallon | $45.0 | $35.0 | 52.8% | 85.0% |
| **Totals (weighted average)** | | **$205.7** | **$35.0** | **65.0%** | **72.9%** |
| **May 26th – MGM/Amazon Merger Announced** | | | | | |
| UBS | Stonehill & Farallon | $64.4 | $36.0 | 30.5% | 48.4% |
| **Totals (weighted average)** | | **$270.1** | **$71.0** | **56.9%** | **67.2%** |

12. There was substantial reason to think upside scenarios were highly plausible when the claims were purchased. The Plan Supplement did not include certain possible litigation recoveries. (Dkt. No. 1875.) The November 30, 2020 valuation date upon which the projections were based was among the darkest economic shadow following the onset of COVID. As explained at the Hearing, asset values generally increased substantially during this time period: The S&P 500 Index rose 9.6% from November 30, 2020, to March 15, 2021, and rose *an additional* 11% by August 1, 2021.[4] And, as noted above and HMIT concede at the Hearing, the MGM announcement in May 2021 was further positive news for Highland claims purchasers. The failure of the Purported Experts to account for these indisputably relevant inputs further demonstrates the unreliability of their methodology. Indeed, their proffered conclusions are the classic illustration

---

[4] This Court "can, of course, take judicial notice of stock prices." *Schweitzer v. Invs. Comm. of Phillips 66 Savings Plan*, 960 F.3d 190, 193 n.3 (5th Cir. 2020).

of the maxim "garbage in, garbage out," and illustrate precisely what *Daubert* operates to weed out from the fact-finding exercise.

13. **Fourth** and finally, the Purported Experts' testimony and documents are inadmissible because they will not "help the trier of fact under the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). During the Hearing, HMIT failed to present any evidence of any *quid pro quo* between Seery, on the one hand, and Stonehill and Farallon on the other. Specifically, HMIT presented no plausible evidence that Seery provided any material, nonpublic information to Stonehill or Farallon before they purchased claims; no evidence that Seery had any special relationship or any reason to provide such information; and no evidence that that anyone rubber-stamped Seery's compensation, which undisputed testimony established was the product of extensive arms'-length negotiations. "When," as here, "an expert's testimony is 'not based upon the facts in the record but on altered facts and speculation designed to bolster a party's position,' the trial court should exclude it." *Moore v. Int'l Paint L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (quoting *Guillory v. Domtar Indus, Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)).

14. Moreover, Rule 702(a) by its terms requires the Court to determine whether the proffered testimony "will help the trier of fact." The fact-finder here is the Court, and the Court thus may decide whether the Purported Experts would help it analyze or understand an issue. The Court is well within its discretion to conclude that the Purported Experts cries of "red flags"—most of which are unidentified, and certain of which are contradicted by HMIT's own allegations and undisputed facts—do not advance the Courts analysis. Particularly after the lengthy Hearing proceedings, we respectfully submit that the Court has heard more than enough of HMIT's scattershot conclusory allegations. The Court should therefore exercise its discretion under

Rule 702(a) not to consume still further judicial resources, and allow HMIT to impose still more costs and delays on the Respondents.

## CONCLUSION

15. For the foregoing reasons, and those set forth in the Motion and at the Hearing, the Highland Parties respectfully request that this Court exclude from the Hearing the Purported Experts' testimony and HMIT's Exhibits 39 to 52.

Dated: June 12, 2023

| **PACHULSKI STANG ZIEHL & JONES LLP** | **WILLKIE FARR & GALLAGHER LLP** |
|---|---|
| */s/ John A. Morris* | */s/ Mark T. Stancil* |
| Jeffrey N. Pomerantz (admitted *pro hac vice*) | Mark T. Stancil (admitted *pro hac vice*) |
| John A. Morris (admitted *pro hac vice*) | Joshua S. Levy (admitted *pro hac vice*) |
| Gregory V. Demo (admitted *pro hac vice*) | 1875 K Street, N.W. |
| Hayley R. Winograd (admitted *pro hac vice*) | Washington, D.C. 20006 |
| 10100 Santa Monica Boulevard, 13th Floor | (202) 303-1000 |
| Los Angeles, CA 90067 | mstancil@willkie.com |
| Tel: (310) 277-6910 | jlevy@willkie.com |
| Fax: (310) 201-0760 | |
| Email:  jpomerantz@pszjlaw.com | -and- |
|            jmorris@pszjlaw.com | |
|            gdemo@pszjlaw.com | |
|            hwinograd@pszjlaw.com | |

-and-

| **HAYWARD PLLC** | **REED SMITH LLP** |
|---|---|
| Melissa S. Hayward | Omar J. Alaniz |
| Texas Bar No. 24044908 | Texas Bar No. 24040402 |
| MHayward@HaywardFirm.com | Lindsey L. Robin |
| Zachery Z. Annable | Texas Bar No. 24091422 |
| Texas Bar No. 24053075 | 2850 N. Harwood St., Ste. 1500 |
| ZAnnable@HaywardFirm.com | Dallas, Texas 75201 |
| 10501 N. Central Expy, Ste. 106 | (469) 680-4292 |
| Dallas, Texas 75231 | |
| Tel: (972) 755-7100 | |
| Fax: (972) 755-7110 | |
| | |
| *Counsel for Highland Capital Management, L.P., and the Highland Claimant Trust* | *Counsel for James P. Seery, Jr.* |

-9-