# **EXHIBIT B**

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com


-and-

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email:   MHayward@HaywardFirm.com
         ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| Plaintiff, | § | Case No. 3:21-cv-00881-X |
| vs. | § § § | |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., et al., | § § § | (Consolidated with 3:21-cv-00880-X, 3:21-cv-01010-X, 3:21-cv-01378-X, 3:21-cv-01379-X) |
| Defendants. | § § | |

## HIGHLAND CAPITAL MANAGEMENT, L.P.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DEEM THE DONDERO ENTITIES VEXATIOUS LITIGANTS AND FOR RELATED RELIEF[1]

---

[1] This Memorandum of Law is in excess of the page limits and is being filed pursuant to this Court's order entered on July 6, 2023 [Docket No. 132].

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   PRELIMINARY STATEMENT ............................................................................. 1

II.  BACKGROUND ............................................................................................... 3

    A.   HCMLP's Prepetition Culture of Litigation ............................................. 3

    B.   HCMLP Files Bankruptcy; the Independent Board Is Appointed;
         Negotiations Commence ........................................................................ 6

    C.   Dondero Interferes with the Estate and Vows to "Burn [HCMLP] Down" .......... 8

    D.   Confirmation of HCMLP's Plan; Approval of Gatekeeper; Fifth Circuit
         Affirmation; and Subsequent Litigation ............................................... 9

    E.   The Dondero Entities' Vexatiousness Impeded HCMLP's Bankruptcy and
         Continues to This Day ........................................................................ 11

         i     Meritless Claims Against HCMLP's Estate ................................ 12

         ii    Meritless Motions in the Bankruptcy Case ............................... 14

         iii   Meritless Objections in the Bankruptcy Case ........................... 16

         iv    HCMLP Litigates to Protect Its Rights and the Bankruptcy Process ...... 17

         v     The Dondero Entities Appeal Nearly Every Order ..................... 20

         vi    The Dondero Entities' Attempt to Evade the Bankruptcy Court ........... 22

         vii   The Pending Actions Prove the Need for Additional Sanctions ......... 26

III. RELIEF REQUESTED ..................................................................................... 27

IV.  ARGUMENT ................................................................................................. 29

    A.   This Court Can Deem Litigants "Vexatious" and Issue Pre-Filing
         Injunctions ........................................................................................ 29

    B.   This Court Has Jurisdiction Over This Court and the Bankruptcy Court ........... 32

    C.   HCMLP Satisfies the Four-Part Test for Obtaining a Pre-Filing Injunction ....... 32

         i     History of Vexatious and Harassing Litigation ......................... 32

         ii    Lack a Good-Faith Basis for Pursuing the Litigation .................. 33

         iii   Burden on the Court System and HCMLP ............................... 34

         iv    Alternative Sanctions Are Inadequate to Deter the Conduct ......... 34

V.   CONCLUSION ............................................................................................... 35

i

# TABLE OF AUTHORITIES

 **CASES**

*Alliance Riggers & Constructors, Ltd. v. Restrepo*,
  2015 U.S. Dist. LEXIS 29346 (W.D. Tex. Jan. 7, 2015) .................................................. 30

*Baum v. Blue Moon Ventures, LLC*,
  513 F.3d 181 (5th Cir. 2008) ................................................................... 29, 30, 31

*Bowling v. Willis*,
  2019 U.S. Dist. LEXIS 168602 (E.D. Tex. Aug. 9, 2019), *aff'd* 853 F. App'x.
  983 (5th Cir. 2021) .............................................................................. 29, 30

*Caroll v. Abide (In re Carroll)*,
  850 F.3d 811 (5th Cir. 2017) ................................................................... 29, 30, 31

*Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*,
  2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022).............................................. 21

*Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*,
  2022 U.S. Dist. LEXIS 659 (Bankr. N.D. Tex. Mar. 11, 2022) .......................................... 22

*Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*,
  2023 Bankr. LEXIS 1637 (Bankr. N.D. Tex. Jun. 8, 2023) .............................................. 23

*Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*,
  643 B.R. 162 (N.D. Tex. 2022)....................................................................... 22

*Clark v. Mortenson*,
  93 F. App'x. 643 (5th Cir. 2004) ............................................................... 29, 30, 31

*CLO Holdco, Ltd. v. Kirschner (In re Highland Cap. Mgmt., L.P.)*,
  2023 U.S. Dist. LEXIS 87842 (N.D. Tex. May 18, 2023) ................................................ 12

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt.,
  L.P.)*,
  2023 U.S. App. LEXIS 4839 (5th Cir. Feb. 28, 2023) .................................................. 21

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 172351
  (N.D. Tex. Sept. 22, 2022)......................................................................... 21

*Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re
  Highland Cap. Mgmt., L.P.)*,
  2022 U.S. Dist. LEXIS 15648 (N.D. Tex. Jan. 28, 2022) ............................................... 17

*Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re
  Highland Cap. Mgmt., L.P.)*,
  57 F.4th 494 (5th Cir.2023) ................................................................. 10, 17, 19

*Highland Cap. Mgmt., L.P. v Dondero (In re Highland Cap. Mgmt., L.P.)*,
  2021 Bankr. LEXIS 1533 (Bankr. N.D. Tex. Jun. 7, 2021) .............................................. 17

*In re Acis Cap. Mgmt., L.P.*,
  584 B.R. 115 (Bankr. N.D. Tex. 2018)................................................................. 6

*In re Highland Cap. Mgmt., L.P.*,
  2023 Bankr. LEXIS 1149 (Bankr. N.D. Tex. Apr. 28, 2023)............................................. 14

*In re Highland Cap. Mgmt., L.P.*,
  2023 Bankr. LEXIS 527 (Bankr. N.D. Tex. Feb. 27, 2023) ............................................. 11

ii

*In re Highland Cap. Mgmt., L.P.*,
    2023 Bankr. LEXIS 579 (Bankr. N.D. Tex. Mar. 5, 2023) ................................. 15

*Marinez v. Wells Fargo Bank, N.A.*,
    2013 U.S. Dist. LEXIS 208591 (W.D. Tex. May 31, 2020) ............................... 31

*Newby v. Enron Corp.*,
    302 F.3d 295 (5th Cir. 2002) ........................................................................ 29

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap.
    Mgmt., L.P.)*,
    48 F.4th 419 (5th Cir. 2022) ..................................................................... 10, 29

*NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P.*,
    620 F.Supp. 3d 36 (S.D.N.Y. 2022) ................................................................. 6

*Nix v. Major League Baseball*,
    2022 U.S. Dist. LEXIS 104770 (S.D. Tex. Jun. 13, 2022), *aff'd* 62 F.4th 920
    (5th Cir. 2023) ........................................................................................ 30, 31

*Payne v. Anthony Scott Law Firm PLLC*
    2023 U.S. Dist. LEXIS 89798 (N.D. Tex. May 5, 2023) ............................... 30, 32

*Schum v. Fortress Value Recovery Fund I LLC*,
    2019 U.S. Dist. LEXIS 226679 (N.D. Tex. Dec. 2, 2019), *aff'd* 805 F. App'x.
    319 (5th Cir. 2020) ......................................................................... 29, 30, 31, 32

*Silver City v. City of San Antonio*,
    2022 U.S. Dist. LEXIS 118643 (W.D. Tex. Jul. 7, 2020) ................................. 31

*Staten v. Harrison Cnty.*,
    2021 U.S. App. LEXIS 35747 (5th Cir. Dec. 2, 2021) ................................ 29, 31

*Williams v. McKeithen*,
    939 F.2d 1100 (5th Cir. 1991) ....................................................................... 31

## **STATUTES**

11 U.S.C. § 363 ................................................................................................ 14

18 U.S.C. § 3057 ................................................................................................ 8

28 U.S.C. § 157(c)(1) ...................................................................................... 32

28 U.S.C. § 158(a) .......................................................................................... 32

28 U.S.C. § 1651 ............................................................................................. 29

28 U.S.C. § 1651(a) ........................................................................................ 29

DOCS_NY:46677.20 36027/003

Highland Capital Management, L.P. ("HCMLP"), by and through its undersigned counsel,

submits this *Memorandum of Law*[1] in support of its motion (the "Motion") to deem the above-

captioned defendants, their affiliated entities, and any person or entity controlled by or acting in

concert with James Dondero (collectively, the "Dondero Entities")[2] vexatious litigants and for

related relief. In support of the Motion, HCMLP states as follows:

## I.   PRELIMINARY STATEMENT[3]

1.      The Dondero Entities—all of which are dominated and controlled by or acting in

concert with Dondero, HCMLP's co-founder and ousted Chief Executive Officer—are engaged in

a coordinated litigation strategy spanning nearly three years to wear down HCMLP and its

management and undermine HCMLP's confirmed Plan. The Dondero Entities have clogged the

dockets of this Court, the Bankruptcy Court, and the Fifth Circuit and have wasted untold judicial

and estate resources. Accordingly, HCMLP asks this Court to (a) declare the Dondero Entities

vexatious, (b) enjoin them from commencing or pursuing any claim or cause of action in this Court

or the Bankruptcy Court against any "Covered Party" without this Court's written permission, and

(c) require that they file a copy of this Court's order finding them vexatious in any pending or

future litigation or proceeding.

---

[1] HCMLP is concurrently filing its *Appendix in Support of Motion to Deem the Dondero Entities Vexatious Litigants and for Related Relief* (the "Appendix"). Citations to the Appendix are notated as "Ex. #, Appx. #."

[2] "Dondero Entities" refers, collectively, to (a) Dondero, (b) NexPoint Advisors, L.P. ("NPA"), (c) Highland Capital Management Fund Advisors, L.P., n/k/a NexPoint Asset Management, L.P. ("HCMFA"), (d) HCRE Partners LLC n/k/a NexPoint Real Estate Partners LLC ("HCRE"), (e) Highland Capital Management Services, Inc., (f) Nancy Dondero, and (g) any entity directly or indirectly controlled by, or acting in concert with, Dondero, including, without limitation, (i) The Charitable DAF Fund, L.P. ("DAF"), (ii) CLO HoldCo, Ltd. ("CLOH"), (iii) The Dugaboy Investment Trust ("Dugaboy"), (iv) Get Good Investment Trust ("Get Good"), (v) Hunter Mountain Investment Trust ("HMIT"), (vi) NexPoint Strategic Opportunities Fund n/k/a NexPoint Diversified Real Estate ("NSOF"), (vii) Highland Income Fund, (viii) Highland Fixed Income Fund, (ix) Highland Global Allocation Fund, (x) NexPoint Capital, Inc., (xi) Strand Advisors, Inc., (xii) The Get Good Non-Exempt Trust 1, (xiii) The Get Good Non-Exempt Trust 2, and (xiv) PCMG Trading Partners XXIII, L.P. ("PCMG").

[3] Capitalized terms in this Preliminary Statement have the meanings given to them below.

2.      Dondero's "strategy" is not new; he has used litigation as a weapon to harass and exact revenge against his perceived enemies for years. Prior to its 2019 bankruptcy, Dondero fostered a culture of scorched-earth, vindictive litigation at HCMLP, suing anyone who challenged him or refused to cave to his demands. That culture spawned litigation in courts and arbitration panels in Texas, Delaware, New York, and foreign jurisdictions like the Cayman Islands, Bermuda, and Guernsey lasting more than a decade.

3.      But Dondero's litigation "strategy" caught up with him. A series of adverse rulings forced HCMLP to file bankruptcy in October 2019. HCMLP's unsecured creditors Committee was comprised largely of litigation claimants who were intimately familiar with Dondero's tactics. The Committee immediately sought to remove Dondero from control of HCMLP. To avoid appointment of a chapter 11 trustee, HCMLP, Dondero, and the Committee entered into a settlement in January 2020, which removed Dondero and appointed an Independent Board to manage and oversee HCMLP's bankruptcy.

4.      In late 2020, after the Committee rejected Dondero's settlement offers as inadequate—thus blocking Dondero's efforts to regain control of HCMLP—he vowed to "burn down the place" unless they capitulated to his demands. Thereafter, directly and through the Dondero Entities, he began interfering with the management of the estate, threatening HCMLP employees, challenging nearly every action taken to further HCMLP's reorganization, commencing new (and frivolous) litigation against HCMLP and its management both inside and outside of the Bankruptcy Court, violating Bankruptcy Court orders, filing multiple motions to recuse, and appealing nearly everything resulting in nearly 30 total appeals.[4]

---

[4] With a few narrow exceptions, these appeals have been rejected and reviewing courts have sometimes been blunt in their characterization. For example, this Court expressed its belief that Dondero's arguments were intended to "bamboozle" (*see* ¶ 27 *infra*), and the Fifth Circuit described the Dondero Entities' collective objections to confirmation as "blunderbuss" (*see* ¶ 17 *infra*).

5.      Despite the Dondero Entities' roadblocks, in February 2021, the Bankruptcy Court confirmed HCMLP's Plan, which included a Gatekeeper provision preventing the Dondero Entities from suing HCMLP, its employees, and its management without leave of the Bankruptcy Court. The Fifth Circuit affirmed the Confirmation Order, including the Gatekeeper, in all material respects but remanded solely to limit the parties exculpated by the Plan. On remand, the Dondero Entities blatantly mischaracterized the Fifth Circuit's ruling, wrongly asserting the Fifth Circuit had severely limited the Gatekeeper. The Bankruptcy Court rejected this assertion and entered an order conforming the Plan without changing the Gatekeeper. The Dondero Entities immediately appealed and have indicated that, if they ever succeed in overturning the Gatekeeper, they will flood the estate with more harassing and meritless litigation.[5]

6.      The Dondero Entities are the only entities currently litigating with the estate. Accordingly, to protect its estate, the bankruptcy process, and the court system, HCMLP asks this Court to deem the Dondero Entities vexatious and grant such further relief as set forth herein.

## II.      BACKGROUND

### A.      HCMLP's Prepetition Culture of Litigation

7.      HCMLP was founded in 1993 by James Dondero and Mark Okada (who resigned pre-bankruptcy) and was controlled by Dondero as the owner and sole director of its general partner. At its peak, HCMLP was a global investment adviser managing nearly $40 billion, and, for most of its history, was successful. Its bankruptcy was not caused by a business calamity. "Rather, [HCMLP] filed for Chapter 11 protection due to a myriad of massive, unrelated, business litigation claims that it faced—many of which had finally become liquidated (or were about to

---

[5] Dondero's proclivity for frivolous litigation is so well known that HCMLP was unable to obtain cost-effective insurance because the insurance market refuses to insure the risk of Dondero's vexatiousness, calling it the "Dondero Exclusion." *See* ¶ 25 *infra*.

become liquidated) after a decade or more of contentious litigation in multiple forums all over the world."[6] For example:

- UBS: UBS Securities LLC and UBS AG, London Branch (collectively, "UBS"), sued two funds controlled by HCMLP in 2009 in New York state court for breach of contract. After discovering HCMLP—through Dondero—had orchestrated a series of frauds that rendered the funds judgment-proof, UBS named HCMLP and others as defendants. In February 2020, a $1 billion-plus judgment was entered against the two HCMLP funds,[7] which UBS sought to recover from HCMLP alleging, among other things, alter ego liability.[8] This litigation continues.

- Patrick Daugherty: Daugherty was a HCMLP employee and limited partner who resigned in 2011. Thereafter, Dondero, directly and by proxy, began a campaign to deprive Daugherty of income earned at HCMLP. After Daugherty prevailed against certain affiliated entities, Dondero orchestrated a series of fraudulent transfers that left those entities judgment-proof. Dondero's actions led the Delaware Chancery Court to find "a reasonable basis to believe that a fraud has been perpetrated" and to apply the "crime-fraud exception" to Dondero confederates' assertions of attorney-client privilege.[9] This litigation continues.

- Redeemer Committee: In 2011, a Redeemer Committee was appointed by a Bermudian court to oversee the wind-down of the Highland Crusader Fund because of concerns with Dondero's stewardship. Disputes arose, and, in 2016, the Redeemer Committee terminated

---

[6] *See Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief*, B.D.I. 1943 ("Confirmation Order") ¶ 8. "B.D.I." refers to the docket maintained in Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

[7] *Judgment*, Index No.: 650097/2009, NYSCEF Doc. No. 646 (N.Y. Sup. Feb. 10, 2020), **Ex. 2, Appx. 17-21**; *Decision and Order After Trial*, Index No. 650097/2009, NYSCEF Doc. No. 650 (N.Y. Sup. Sept. 14, 2020), **Ex. 3, Appx. 22-62**.

[8] Proofs of Claim No. 190, 191, **Exs. 4-5, Appx. 63-306**.

[9] *Daugherty v. Highland Cap. Mgmt., L.P.*, C.A. No. 2018-0488-MTZ, May 17, 2019 Trans. (bench ruling on motion to compel production of documents) at 10-15, **Ex. 6, Appx. 317-322**.

HCMLP as investment manager and commenced binding arbitration alleging, among other things, that HCMLP had converted over $30 million, breached its fiduciary duties, and engaged in other misconduct. In March 2019, the arbitration panel (a) rejected HCMLP's arguments; (b) made highly critical assessments of the credibility of HCMLP's witnesses; (c) found HCMLP breached its fiduciary duties and certain agreements and engaged in other wrongful conduct; and (d) awarded the Redeemer Committee more than $190 million.[10]

- Acis: Joshua Terry was a HCMLP employee and limited partner of a former HCMLP affiliate, Acis Capital Management, L.P. ("Acis"), who was terminated in June 2016. Terry subsequently obtained an $8 million arbitration award against Acis. Rather than satisfying the award, Dondero followed his playbook by stripping Acis of assets and taking other vindictive actions against Terry, including converting Terry's and his wife's retirement account. Unable to collect, Terry filed an involuntary bankruptcy petition against Acis in the Bankruptcy Court in 2018, resulting in the appointment of a chapter 11 trustee. The bankruptcy was marked by

---

[10] *Partial Final Award* rendered in the arbitration captioned *Redeemer Comm. of the Highland Crusader Fund v. Highland Cap. Mgmt., L.P.*, Case No. 01-16-0002-6927. **Ex. 7, Appx. 405-467**. The Partial Final Award was incorporated into the arbitration panel's final award. *Final Award*, Case No. 01-16-0002-6927 (**Ex. 8, Appx. 468-491**).

extraordinarily acrimonious litigation,[11] but, ultimately, Acis's plan transferred ownership of Acis to Terry.[12] Dondero's war against Terry and Acis continues.[13]

8.      HCMLP's culture of litigation—of which the foregoing are only examples—ultimately forced HCMLP to seek bankruptcy protection.[14]

## B.    HCMLP Files Bankruptcy; the Independent Board Is Appointed; Negotiations Commence

9.      On October 16, 2019 (the "Petition Date"), Dondero caused HCMLP to file a voluntary petition for relief under chapter 11 of the Bankruptcy Code  (the "Bankruptcy Case") in the U.S. Bankruptcy Court for the District of Delaware, and HCMLP's statutory committee of unsecured creditors (the "Committee") was appointed. Three of the four members of the Committee—Acis, UBS, and the Redeemer Committee—held litigation claims against HCMLP and the other was an e-discovery vendor.[15]

---

[11] *See, e.g., In re Acis Cap. Mgmt., L.P.*, 584 B.R. 115 (Bankr. N.D. Tex. 2018).

[12] *Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, as Modified*, Case No. 18-30264-sgj11, Docket No. 829 (Bankr. N.D. Tex. Jan. 31, 2019). The Dondero Entities, of course, appealed the Acis confirmation order; their appeals were denied. *See* Case No. 3:19-cv-00291-D, Docket No. 75 (N.D. Tex. July 18, 2019); Case No. 19-10847 (5th Cir. June 17, 2021).

[13] Immediately after the expiration of the injunction in Acis' plan, Dondero—through NSOF—filed suit against Acis, Terry, and others in the Southern District of New York alleging they violated their fiduciary duties to NSOF as an investor in a CLO managed by Acis (and which had been managed by Dondero prior to the Acis bankruptcy). Civ. Case No. 21-cv-04384-GHW (S.D.N.Y. May 14, 2021). Dondero's litigation caused Acis to halt distributions from its managed CLOs thus depriving HCMLP of approximately $20 million in proceeds. The Southern District of New York dismissed Dondero's litigation. *NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P.*, 620 F.Supp. 3d 36 (S.D.N.Y. 2022). Undeterred, Dondero appealed to the Second Circuit (Case No. 22-1912 (2d Cir.)), re-filed his breach of fiduciary duty claims in New York state court (Index No. 653654/2022 (N.Y. Sup. Ct. 2022)) (**Ex. 76, Appx. 2214-2261**), asserted duplicative counterclaims in another pending litigation involving Acis (Case No. 23-cv-11059-GHW (S.D.N.Y. Dec. 24, 2021)), and filed a lawsuit against HCLOF in the Royal Court of Guernsey alleging HCLOF unfairly prejudiced CLOH by settling with Acis, rather than suing it (No. 106-25786898 (Royal Court of Guernsey)) (**Ex. 77, Appx. 2262-2294**).

[14] The direct catalyst for HCMLP's bankruptcy was the Redeemer Committee's arbitration award. HCMLP lacked the liquidity to pay the award and was desperate to avoid its public disclosure, which was averted by HCMLP's filing.

[15] HCMLP's culture of litigation ran so deep that HCMLP's 20 largest unsecured, non-insider creditors included *19* litigation claimants, law firms, and other professionals related to litigation. B.D.I. 1.

6

10.     The Committee immediately moved to transfer the Bankruptcy Case to the U.S.
Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court")—
where Acis's bankruptcy was pending—and, on December 2, 2019, HCMLP's case was
transferred.[16]

11.     Soon thereafter, the Committee, with the support of the U.S. Trustee (the "UST"),
told HCMLP it intended to seek appointment of a chapter 11 trustee because it did not believe
Dondero could act as an estate fiduciary based on his history of self-dealing, asset stripping, and
other breaches of fiduciary duty. To avoid a trustee, Dondero and HCMLP entered into a settlement
with the Committee—approved by the Bankruptcy Court in January 2020 (the "January
Order")[17]—that: (a) removed Dondero from all control positions at HCMLP; (b) appointed an
independent board (the "Independent Board") to manage the bankruptcy; and (c) implemented
operating protocols (the "Protocols") that, among other things, (i) generally required Committee
approval before most asset sales or transfers, and (ii) prohibited Dondero and his controlled
affiliates from terminating contracts with HCMLP. Dondero remained at HCMLP as an unpaid
portfolio manager subject to the Independent Board's oversight. The Bankruptcy Court
subsequently appointed one of the Independent Board members, James P. Seery, Jr. ("Seery"), as
HCMLP's Chief Restructuring Officer and Chief Executive Officer (the "July Order").[18]

12.     The January and July Orders included gatekeeper provisions to protect HCMLP's
fiduciaries from harassing litigation.[19]

---

[16] The Delaware court transferred venue to the Bankruptcy Court because of, among other reasons, its knowledge of and experience with Dondero and his use of surrogates and proxies to litigate his positions.

[17] B.D.I. 339.

[18] B.D.I. 854.

[19] *See* January Order ¶ 10 ("No entity may commence or pursue a claim or cause of action of any kind against any Independent Director … without the Bankruptcy Court … specifically authorizing such entity to bring a claim."); July Order ¶ 5 ("No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery … without the Bankruptcy Court … specifically authorizing such entity to bring a claim.").

13.     In August 2020, HCMLP, Dondero, the Committee, Acis, UBS, and the Redeemer Committee entered mediation with retired bankruptcy judge Allan Gropper and attorney Sylvia Mayer in the hope of reaching a global settlement.[20] The mediation resulted in settlements with the Redeemer Committee, Acis, and UBS[21]—but not Dondero. Thereafter, HCMLP and the Committee negotiated a plan of reorganization to monetize HCMLP's assets and distribute proceeds to creditors.

## C.    Dondero Interferes with the Estate and Vows to "Burn [HCMLP] Down"

14.     With the Committee refusing to capitulate, and frustrated by his inability to regain control of HCMLP, Dondero told Seery that he would "burn down the place."[22] True to his word, Dondero became an implacable opponent of HCMLP and the Committee's efforts to confirm a plan and settle claims, resulting in the Independent Board demanding his resignation. Dondero and the Dondero Entities then embarked on a coordinated campaign of destruction: (a) objecting to virtually every settlement; (b) commencing actions that were either frivolous or withdrawn on the eve of trial; (c) forcing HCMLP to sue to collect on over $60 million of simple, two-page demand and term notes and then asserting fabricated and frivolous defenses to repayment; (d) interfering with HCMLP's management of its estate; (e) threatening HCMLP employees and management; and (f) appealing virtually every order. The Bankruptcy Court found the Dondero Entities' litigation was intended to harass.[23]

---

[20] B.D.I. 912.

[21] The settlement with UBS was subsequently renegotiated after HCMLP—then independently managed—uncovered and disclosed a massive fraud in which Dondero surreptitiously caused two entities against which UBS ultimately procured a billion-dollar judgment to transfer $300 million in face amount of cash and securities to an offshore entity owned and controlled by Dondero and Scott Ellington, in August 2017. **Ex. 9, Appx. 553-616**. After the details of this transfer were presented to the Bankruptcy Court, the Bankruptcy Court indicated it would review the facts, which it called "damning," and, if warranted, make a criminal referral pursuant to 18 U.S.C. § 3057(a). **Id., Appx. 623-624**.

[22] Confirmation Order ¶ 78.

[23] Confirmation Order ¶ 77 ("During the last several months, Mr. Dondero and the Dondero Related Entities have harassed [HCMLP], which has resulted in further substantial, costly, and time-consuming litigation for [HCMLP].")

**D.    Confirmation of HCMLP's Plan; Approval of Gatekeeper; Fifth Circuit Affirmation; and Subsequent Litigation**

15.    On February 22, 2021, the Bankruptcy Court overruled the Dondero Entities' objections and, with the support of 99.8% of creditors in amount,[24] entered the Confirmation Order, which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*.[25] In the Confirmation Order, the Bankruptcy Court found Dondero controlled the Dondero Entities and that they were "marching" to his orders.[26]

16.    The confirmed Plan included a "gatekeeper" provision (the "Gatekeeper") prohibiting the Dondero Entities, among others, from bringing claims against HCMLP, any of the entities created under the Plan, and HCMLP's management, among others, unless the Bankruptcy Court found the claims "colorable."[27] The Bankruptcy Court found the Gatekeeper was:

> necessary and appropriate in light of the history of the continued litigiousness of Mr. Dondero and his related entities in this Chapter 11 Case and necessary to the effective and efficient administration, implementation and consummation of the Plan …. Approval of the Gatekeeper Provision will prevent baseless litigation designed merely to harass the post-confirmation entities charged with monetizing the Debtor's assets for the benefit of its economic constituents, will avoid abuse of the court system and preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants.[28]

17.    The Dondero Entities appealed the Confirmation Order, arguing, among other things, the protections in the Plan, including the Gatekeeper, were overbroad and illegal. On direct appeal, the Fifth Circuit rejected the Dondero Entities' arguments, calling their scatter-shot

---

[24] Confirmation Order ¶ 3.

[25] B.D.I. 1808 (the "Plan").

[26] Confirmation Order ¶ 19.

[27] Plan, Art. IX.F. The Plan also provided for the creation of the Highland Litigation Sub-Trust and the appointment of Marc Kirschner as litigation trustee. *See generally* Plan, Art. IV.B. Kirschner, as litigation trustee, subsequently filed suit against Dondero and a number of Dondero Entities in the Bankruptcy Court. Adv. Proc. No. 21-03051-sgj (Bankr. N.D. Tex.). This litigation was voluntarily stayed in April 2023. *Id.*, Docket No. 338.

[28] Confirmation Order ¶ 79.

DOCS_NY:46677.20 36027/003

strategy a "bankruptcy-law blunderbuss" [29] and affirmed the Confirmation Order in material part, including the Gatekeeper[30] and the factual findings regarding Dondero's control of the Dondero Entities.[31] The Fifth Circuit, however, limited the Plan's exculpation provision and remanded "for further proceedings consistent with [its] opinion."[32]

18.     The Dondero Entities immediately petitioned for rehearing, effectively requesting that the Fifth Circuit "clarify" its opinion and limit the parties protected by the Gatekeeper so they could continue harassing the estate.[33] The Fifth Circuit granted their petition without a hearing but rejected their request for "clarification." Instead, the Fifth Circuit simply deleted one sentence leaving the substance of its opinion—and its affirmation of the Gatekeeper—intact.[34]

19.     Following remand, HCMLP moved in the Bankruptcy Court to conform the Plan to the Fifth Circuit's opinion by limiting the parties receiving exculpation.[35] The Dondero Entities objected, arguing the Fifth Circuit had limited the Gatekeeper the same way it limited exculpation.[36] The Bankruptcy Court overruled the Dondero Entities' objections and granted

---

[29] *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 432 (5th Cir. 2022).

[30] *Id.*, at 435 ("the injunction and gatekeeper are sound"); *see also id.*, at 439 ("We otherwise affirm the inclusion of the injunction and the gatekeeper provision in the Plan.")

[31] *NexPoint.* 48 F.4th at 434-35. The Fifth Circuit also affirmed that the January and July Orders were *res judicata*. *Id.* at 438, n.15.

[32] *Id.* at 439-40; *see also id.* at 439, n.19 ("Nothing in this opinion should be construed to hinder the bankruptcy court's power to enjoin and impose sanctions on Dondero and other entities by following the procedures to designate them vexatious litigants.").

[33] *Petition of Appellants Highland Income Fund; NexPoint Strategic Opportunities Fund; Highland Global Allocation Fund; and NexPoint Capital, Inc. for Limited Panel Rehearing*, Case No. 21-10449, Document 516458961 (Sept. 2, 2022).

[34] *Cf.* Case No. 21-10449, Document 516439341 (5th Cir. Aug. 19, 2022), *with* Case No. 21-10449, Document 516462923 (5th Cir. Sept. 7, 2022). The Fifth Circuit subsequently confirmed it had limited only the exculpation provision. *Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 57 F.4th 494, 498 (5th Cir.2023) ("In September 2022, we affirmed the Plan in all respects except one, concluding that the Plan exculpated certain non-debtors beyond the bankruptcy court's authority").

[35] B.D.I. 3503.

[36] B.D.I. 3539, 3551.

HCMLP's motion, conforming the Plan with *no* changes to the Gatekeeper.[37] The Dondero Entities immediately appealed and, once again, seek to challenge the Gatekeeper in the Fifth Circuit.[38] Although HCMLP believes the appeal will fail, if the Dondero Entities succeed, they are nearly certain to expand their abuse of the court system and baselessly pursue Seery, the estate, and anyone else involved in its management.

20.    Because the Dondero Entities continue to challenge the Gatekeeper (and the July Order),[39] this Motion is necessary to prevent further harassment of HCMLP and its employees.

**E.    The Dondero Entities' Vexatiousness Impeded HCMLP's Bankruptcy and Continues to This Day**

21.    The Dondero Entities' relentless litigation and related actions during HCMLP's Bankruptcy Case have created substantial and unnecessary burdens for the estate and the judiciary. The Dondero Entities (a) filed in the Bankruptcy Court approximately (i) 52 pre-petition claims against the estate; (ii) 85 motions; and (iii) 79 objections, including objections to the UBS, Acis, and Redeemer Committee settlements; (b) forced HCMLP to commence 9 adversary proceedings against the Dondero Entities in order to protect, or collect property of, the estate; (c) appealed 18 Bankruptcy Court orders to this Court and 9 orders to the Fifth Circuit; and (d) took other actions to impede HCMLP's reorganization. A more detailed summary of the Dondero Entities' actions is

---

[37] *In re Highland Cap. Mgmt., L.P.*, 2023 Bankr. LEXIS 527 (Bankr. N.D. Tex. Feb. 27, 2023).

[38] The appeal was certified for direct appeal to the Fifth Circuit with the consent of all parties. B.D.I. 3696.

[39] The Dondero Entities are already mischaracterizing the Fifth Circuit's opinion in a disingenuous attempt to limit the gatekeeper provision in the July Order appointing Seery. *See Brief for Appellants The Charitable DAF Fund L.P.; CLO HoldCo, Ltd.; Mark Patrick; Sbaiti & Company PLLC; Mazin A. Sbaiti; Jonathan Bridges*, Case No. 22-11036, Document 66 at 53 (5th Cir. Feb. 6, 2023) ("[The Fifth Circuit] refus[ed] to extend … gatekeeping protections to non-debtors including Seery as CEO, even while acknowledging and permitting the *Barton* doctrine and related protections to apply to debtors in possession who stand in the shoes of trustee …. The bankruptcy court, by contrast, did precisely what the Supreme Court now rejects—it expanded a judicially-invented doctrine [*i.e.*, the *Barton* Doctrine] beyond its precedential scope based on its own policy views [by approving the gatekeeper in the July Order].") This statement is plainly wrong. The Fifth Circuit's opinion did not limit the Gatekeeper and expressly declared that the January and July Orders were *res judicata* and not subject to collateral attack. Consistent with their goal to strip away all protections against harassing litigation, the Dondero Entities also, via separate motion, moved to reconsider the July Order.

included in the Appendix as **Ex. 1, Appx. 1-16**. Certain of the Dondero Entities' most egregious conduct is summarized below.

22.     The Dondero Entities are the *only* parties currently litigating with HCMLP. All other parties resolved their claims and causes of action long ago and are awaiting their Plan distributions.

**i       Meritless Claims Against HCMLP's Estate**

23.     During the Bankruptcy Case, the Dondero Entities filed dozens of claims against the estate, every one of which was either withdrawn—after HCMLP was forced to object to them— or disallowed by the Bankruptcy Court (and then, of course, appealed).

• The Dondero Entities' Prepetition Claims: The Dondero Entities filed 52 proofs of claim and then withdrew (or attempted to withdraw) them after HCMLP was forced to incur the cost of objecting.[40] CLOH publicly and voluntarily reduced its claim to $0.00. Over a year later, Dondero replaced CLOH's trustee and—with a new titular head—CLOH moved to amend its $0.00 claim to over $2 million.[41] *As of today, none of the Dondero Entities hold a single allowed claim against the estate.*

• NPA's and HCMFA's Administrative Expense Claim: NPA and HCMFA filed an administrative expense claim seeking $14 million for alleged overpayments to HCMLP under certain shared service and employee-reimbursement agreements during the Bankruptcy Case.[42]

---

[40] **Exs. 10-61, Appx. 626-1211**. If former employee claims are counted, 92 proofs of claim were filed. NPA subsequently acquired five additional prepetition claims in early 2021 filed by former HCMLP employees all of which were subsequently withdrawn. B.D.I. 2044, 2045, 2046, 2047, 2266. In January 2022, NPA acquired a disputed employee claim (B.D.I. 3146) (**Ex. 75, Appx. 2201-2213**), which was expunged (B.D.I. 3180). NPA has appealed.

[41] B.D.I. 3177, 3178, 3220, 3223. The Bankruptcy Court denied CLOH's motion (B.D.I. 3457), and this Court rejected CLOH's initial appeal (*CLO Holdco, Ltd. v. Kirschner (In re Highland Cap. Mgmt., L.P.)*, 2023 U.S. Dist. LEXIS 87842 (N.D. Tex. May 18, 2023)). CLOH has appealed to the Fifth Circuit.

[42] **Ex. 62, Appx. 1212-1224**.

DOCS_NY:46677.20 36027/003

After a two-day evidentiary hearing,[43] the Bankruptcy Court found there were no overpayments but that NPA and HCMFA had breached the foregoing agreements at Dondero's direction and awarded HCMLP $2.596 million in contract damages.[44] The Dondero Entities appealed.

- <u>CPCM, LLC Employee Claims</u>: During the bankruptcy, HCMLP disclosed it was terminating nearly all employees upon Plan confirmation. Because HCMLP's bonus program did not allow terminated employees to receive bonuses, HCMLP received approval for a retention plan intended to make employees largely whole.[45] Dondero, however, as a condition to future employment, demanded HCMLP's employees reject HCMLP's offer and assign their claims to CPCM, LLC—a newly-created entity owned by HCMLP's former general counsel. After HCMLP incurred significant costs objecting, CPCM withdrew its (baseless) claims for a nuisance settlement of $100,000, which CPCM was subsequently forced to forfeit in order to settle yet another frivolous claim against the estate.[46]

- <u>HCRE Proof of Claim</u>: HCRE (a Dondero-controlled entity) filed a proof of claim alleging that all or part of HCMLP's interest in SE Multifamily LLC (another Dondero-controlled entity) actually belonged to HCRE.[47] After HCMLP learned HCRE's counsel had jointly represented HCRE and HCMLP in the underlying transactions, HCMLP was forced to seek disqualification over HCRE's objection.[48] After a six-month delay and the deposition of HCMLP's witnesses, HCRE then abruptly canceled the depositions of Dondero and Matthew McGraner (a Dondero

---

[43] While testifying, Dondero made a series of vague threats about future allegations the Dondero Entities were going to bring to the UST. **Ex. 63, Appx. 1298-1299**. Dondero's threats at the hearing were consistent with baseless allegations actually made to the UST by two Dondero Entities. *See* ¶ 28 *infra*.

[44] Adv. Proc. No. 21-03010-sgj, Docket No. 124 (Bankr. N.D. Tex. Aug. 30, 2022).

[45] B.D.I. 1849

[46] B.D.I. 3244; 3328 ¶ 5.

[47] **Ex. 52, Appx. 1018-1023**.

[48] B.D.I. 3106.

loyalist and joint-owner of HCRE) and moved to withdraw its claim.[49] At a subsequent hearing, it became clear HCRE's goal was to preserve its claim for future litigation outside of the Bankruptcy Court, so the motion to withdraw was denied.[50] The Bankruptcy Court then held an evidentiary hearing on the merits after which it entered an order that betrayed the frivolous nature of the claim and HCRE's contentions.[51]

### ii    Meritless Motions in the Bankruptcy Case

24.    The Dondero Entities also filed numerous motions attempting to re-assert control over HCMLP or, failing that, to overwhelm the estate with litigation. For example:

• Motion Requiring Notice and Hearing of Asset Sales: Dondero alleged HCMLP violated 11 U.S.C. § 363 by selling assets without Bankruptcy Court approval *and* without giving him a chance to purchase those assets. Dondero withdrew his baseless motion after HCMLP and the Committee incurred significant costs responding and preparing for trial.[52]

• Motion for Temporary Restriction on CLO Sales: After withdrawing the motion to restrict asset sales, five Dondero Entities moved to prevent HCMLP from causing its managed CLOs to sell assets without the Dondero Entities' approval (the "Restriction Motion").[53] The movants cited no authority and relied solely on Dondero's disagreement with HCMLP's business decisions. After an evidentiary hearing, the Bankruptcy Court denied the motion as "almost Rule 11 frivolous."[54]

• Motion to Appoint Examiner: Fifteen months after the Petition Date, and just days before confirmation, Dondero's family "trusts," Dugaboy and Get Good, moved for the appointment of

---

[49] B.D.I. 3443, 3487, 3505.

[50] *In re Highland Cap. Mgmt., L.P.*, 2023 Bankr. LEXIS 1149 (Bankr. N.D. Tex. Apr. 28, 2023)).

[51] **Ex. 64, Appx. 1413-1414, 1416-1436, 1439-1450**; B.D.I. 3851.

[52] B.D.I. 1349, 1546, 1551, 1622

[53] B.D.I. 1522

[54] **Ex. 65, Appx. 1533**.

an examiner,[55] purportedly to assess the claims against the estate (most of which had already settled) and the Dondero Entities' Plan objections.[56]

- <u>Motion to Compel Compliance with Rule 2015.3</u>: Two months post-confirmation and 18 months after the Petition Date, Dugaboy and Get Good sought to compel HCMLP to file reports under Bankruptcy Rule 2015.3.[57] HCMLP and the Committee objected, arguing the request was untimely, unduly burdensome, and was an attempt to obtain information for the purpose of manufacturing more litigation claims. The motion was denied as moot. On appeal, the Dondero Entities admitted their goal was to create additional litigation.[58]

- <u>Motions to Recuse</u>: Seventeen months post-petition, the Dondero Entities sought to recuse the Bankruptcy Court. After their motion was denied, they appealed, but this Court held the order was interlocutory. In July 2022, the Dondero Entities defiantly moved the Bankruptcy Court to rule its order was "final" so it could be appealed to this Court and asserted additional allegations of bias. The motion was denied. In September 2022, the Dondero Entities filed their third motion to recuse, which they amended in October 2022.[59] The Dondero Entities filed another motion to recuse in the Kirschner adversary in February 2023.[60] The motions to recuse were denied in March 2023.[61] The Dondero Entities' petition for a writ of mandamus was also denied.[62]

---

[55] B.D.I. 1752.

[56] The Dondero Entities subsequently admitted the motion was filed to delay confirmation, re-litigate settlements, and adjudicate the Dondero Entities' Plan objections in a different forum—completely improper purposes. B.D.I. 2061 ¶ 37 ("[W]hen the Trusts made the Examiner Motion, they believed that the motion would cause delay or a continuance of the confirmation hearing on the Plan …."); B.D.I. 3542 at 11 ("The Trustees sought the appointment of an examiner to address … (i) the issues raised … in the Restriction Motion [*i.e.*, a motion denied a month earlier], [and] (ii) various objections to the proposed [Plan] ….").

[57] B.D.I. 2256.

[58] *See* ¶ 89 *infra*.

[59] B.D.I. 2061, 2601, 2062, 3470, 3542, 3570.

[60] Adv. Proc. No. 21-03076-sgj, Docket Nos. 309, 315, 318.

[61] *In re Highland Cap. Mgmt., L.P.*, 2023 Bankr. LEXIS 579 (Bankr. N.D. Tex. Mar. 5, 2023).

[62] Civ. Action No. 3:21-cv-00879-K, Docket Nos. 41, 42 (N.D. Tex. Apr. 5, 2023).

### iii    **Meritless Objections in the Bankruptcy Case**

25.    In addition to their meritless claims and motions, the Dondero Entities objected to nearly every motion HCMLP filed in the Bankruptcy Court. For example:

- Objections to Settlements: In late 2020 and early 2021, HCMLP settled with holders of the largest litigation claims against the estate—something the Bankruptcy Court called "nothing short of a miracle"—and sought court approval. The Dondero Entities objected to most of the settlements, including those with Acis, UBS, and HarbourVest.[63] Scott Ellington—Dondero's long-time general counsel—objected to the settlement with Daugherty.[64]

- Objections to Confirmation: Twenty-one of the Dondero Entities filed five separate objections to confirmation. Fifteen funds managed by NPA and HCMFA joined the objections. Certain former HCMLP employees (most of whom were then working for Dondero) and Dondero's Dallas-based bank, NexBank and its affiliates, also separately objected.[65] The Dondero Entities were the only parties pressing objections at confirmation. Their objections were overruled and a number found borderline frivolous.[66] The Dondero Entities appealed to the Fifth Circuit, which affirmed the Confirmation Order in all material respects.

- NPA Fee Objections: NPA objected to the fee applications of nearly every professional in the Bankruptcy Case and asked the Bankruptcy Court to delay allowing fees and to allow NPA to retain a fee examiner. NPA's objection was overruled. NPA appealed to this Court, and, after the appeal was dismissed for lack of prudential standing, to the Fifth Circuit. The matter is *sub judice*.

---

[63] B.D.I. 1177, 1121, 1706, 1697, 1707, 2268, 2268, 2293. HarbourVest refers to a series of affiliated funds that invested in Highland CLO Funding, Ltd. ("HCLOF"), a Guernsey-based investment vehicle. HarbourVest asserted a $300 million-plus claim against HCMLP, alleging Dondero and certain former HCMLP employees fraudulently induced it to invest in HCLOF.

[64] B.D.I. 3242.

[65] B.D.I. 1661, 1667, 1669, 1670, 1673, 1675, 1676.

[66] Confirmation Order ¶ C; **Ex. 66, Appx. 1606** ("The Court considered [certain Dondero Entity plan objections] to wholly lack merit, and are borderline frivolous, frankly. They do not raise a serious legal question.").

- <u>Objection to Indemnity Trust Motion</u>: After HCMLP was unable to procure cost-effective insurance necessary for its reorganization because of Dondero's reputation in the insurance community—colloquially known as the "Dondero Exclusion"[67]—HCMLP and the Committee created an indemnity trust to self-insure its indemnification obligations.[68] The Dondero Entities were the only objectors,[69] claiming the trust was somehow a plan modification. The Bankruptcy Court overruled their objections,[70] and the Dondero Entities' appeals to this Court and the Fifth Circuit were denied.[71]

### iv    HCMLP Litigates to Protect Its Rights and the Bankruptcy Process

26.     HCMLP was forced to file affirmative litigation to protect itself and to compel the Dondero Entities to comply with Bankruptcy Court orders and simple obligations:

- <u>First TRO; Contempt Order</u>: In December 2020, after Dondero interfered with HCMLP's exclusive management of the CLOs and threatened Seery in writing—"Be careful what you do, last warning"—HCMLP sought and obtained a temporary restraining order ("<u>TRO</u>") preventing Dondero from, *inter alia*, (a) threatening HCMLP and its employees and agents; (b) communicating with HCMLP's employees (with one specified exception); and (c) interfering with HCMLP's business. Dondero was later held in contempt and sanctioned $450,000 for violating the TRO.[72] Dondero's initial appeal to the District Court was denied; his appeal to the Fifth Circuit is pending.

---

[67] **Ex. 73, Appx. 2179-2180**.

[68] B.D.I. 2491, 2576, 2577.

[69] B.D.I. 2563.

[70] B.D.I. 2599.

[71] *Highland Cap. Mgmt. Fund Advisors v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 U.S. Dist. LEXIS 15648 (N.D. Tex. Jan. 28, 2022); *Highland Cap. Mgmt. Fund Advisors*, 57 F.4th at 496.

[72] *Highland Cap. Mgmt., L.P. v. Dondero (In re Highland Cap. Mgmt., L.P.)*, 2021 Bankr. LEXIS 1533 (Bankr. N.D. Tex. Jun. 7, 2021).

- <u>Second TRO</u>: Days after the Restriction Motion was dismissed as "frivolous,"[73] certain Dondero Entities demanded that HCMLP refrain from causing the CLOs to sell assets and threatening to terminate HCMLP's management agreements with the CLOs (an action prohibited by the Protocols).[74] The Dondero Entities' actions forced HCMLP to seek and obtain another temporary restraining order to prevent further interference with the estate.[75]

- <u>Mandatory Injunction</u>: Prior to its bankruptcy, HCMLP had arrangements to provide middle- and back-office services to certain Dondero Entities. In late 2020, HCMLP gave notice of its intent to terminate the agreements due to the downsizing of its workforce. HCMLP tried to negotiate in good faith a transition plan with the Dondero Entities to prevent their retail funds from going into freefall, which could have negatively impacted HCMLP. Although all material terms were agreed upon, the Dondero Entities refused to sign unless Dondero regained access to HCMLP's offices; he had previously been evicted. With a substantial reduction-in-workforce days away, HCMLP sought an injunction compelling the Dondero Entities to create a transition plan.[76] At the hearing, and presumably to avoid SEC scrutiny, the Dondero Entities disclosed for the first time that they had cobbled together their own transition plan, thus mooting HCMLP's motion.[77]

- <u>Actions to Collect Notes</u>: HCMLP loaned certain Dondero Entities more than $60 million in aggregate pursuant to a series of simple demand and term notes. In late 2020, HCMLP called

---

[73] *See* ¶ 24 *supra*.

[74] Adv. Proc. No. 21-03000-sgj, Docket Nos. 4-6, 4-7, 4-8, 4-9, 4-10, 4-11. The Dondero Entities subsequently admitted their letters were sent to procure denied relief. B.D.I. 2061 ¶ 27 ("In December of 2020, due to the Court's denial of the Restriction Motion, … [the Dondero Entities sent] correspondence … to reiterate [their] … request, again, that Debtor not liquidate the CLOs; to reserve any rights that the Advisors and the Retail Funds might have against Debtor for failure to maximize the value of the investment as required under the [CLO] Portfolio Management Agreements; and to notify Debtor that the Retail Funds … intended to initiate the procedure to remove Debtor as fund manager of the CLOs.").

[75] Adv. Proc. No. 21-03000-sgj, Docket Nos. 2, 3, 4, 5, 6, 7, 20, 64, 76 (Bankr. N.D. Tex.).

[76] Adv. Proc. No. 21-03010-sgj, Docket No. 2 (Bankr. N.D. Tex. Feb. 17, 2021).

[77] Adv. Proc. No. 21-03010-sgj, Docket No. 25 (Bankr. N.D. Tex. Feb. 24, 2021); **Ex. 79, Appx. 2317**.

the demand notes and, in January 2021, following defaults, accelerated the term notes. The Dondero Entities refused to satisfy their obligations and fabricated multiple (and ever-shifting) defenses, including that the notes were (a) compensation structured as a non-repayable note for tax purposes, (b) subject to an undisclosed oral agreement between Dondero and his sister to forgive the notes under certain conditions, (c) void due to mutual mistake, and (d) executed without proper authority. After discovery, the Bankruptcy Court recommended summary judgment be granted to HCMLP, finding the Dondero Entities' defenses "farfetched," based on a "complete lack of evidence," and unable to pass the "Straight-Face Test."[78] The Bankruptcy Court assessed HCMLP's costs against the Dondero Entities as required under the notes.  In July 2023, this Court overruled the Dondero Entities' objections,[79] adopted each report and recommendation, and entered judgments against the Dondero Entities in excess of $65 million.[80]

- <u>Second Contempt Order</u>: The DAF and CLOH pursued claims against Seery in this Court (not the Bankruptcy Court)[81] in violation of the "gatekeeper" provisions in the January and July Orders. Following an evidentiary hearing, the Bankruptcy Court held Dondero, DAF, CLOH, their trustee, and their counsel in contempt.[82] The Dondero Entities appealed.

---

[78] *Highland Cap. Mgmt., L.P. v. Highland Cap. Mgmt. Fund Advisors, L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 1989 at * 40-41, 46-47, 59-60 (Bankr. N.D. Tex. Jul. 19, 2022); HCMLP filed a separate suit to collect on two other notes issued by HCMFA. The Bankruptcy Court also recommended summary judgment in favor of HCMLP in that action. Adv. Proc. No. 21-03082-sgj, Docket No. 73 (Bankr. N.D. Tex. Oct. 12, 2022).

[79] Civ. Action No. 3:21-cv-00881-X, Docket Nos. 27-1, 27-4, 27-5, 34, 62, 78, 87, 98, 204, 210 (N.D. Tex.).

[80] *Id.*, Docket Nos. 127, 128, 129, 130, 131, 133, 135.

[81] *See* ¶ 28 *infra*.

[82] *In re Highland Cap. Mgmt., L.P.*, 2021 Bankr. LEXIS 2074 at *28-29, 40-41 (Bankr. N.D. Tex. Aug. 3, 2021), *aff'd* 2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022) ("The totality of the evidence was clear that Mr. Dondero sparked this fire … Mr. Dondero encouraged [plaintiffs] to do something wrong, and [plaintiffs] basically abdicated responsibility to Mr. Dondero with regard to … executing the litigation strategy.").

DOCS_NY:46677.20 36027/003

**v**      **The Dondero Entities Appeal Nearly Every Order**

27.      Not content to abuse the Bankruptcy Court's jurisdiction, the Dondero Entities have appealed nearly every Bankruptcy Court order to this Court, and, when unsuccessful here, to the Fifth Circuit. Certain examples of the abusive appeals are as follows:

- Appeal of Confirmation Order: The Dondero Entities' appeal of their Plan objections was certified to the Fifth Circuit. The Fifth Circuit (a) affirmed the Gatekeeper and the factual findings concerning Dondero's control over the Dondero Entities, but (b) limited the parties exculpated by the Plan. The Fifth Circuit also implied that the Dondero Entities should be deemed vexatious. The Fifth Circuit remanded to the Bankruptcy Court to conform the Plan.[83] On remand, HCMLP moved to conform the Plan to limit the exculpated parties as directed by the Fifth Circuit, and an order approving the motion was entered over the Dondero Entities' objection. The Dondero Entities immediately appealed to overturn the Gatekeeper.

- Appeal of TRO; First Contempt Order: Dondero appealed the TRO prohibiting him from interfering with the estate or colluding with HCMLP employees, but this Court denied his request for an interlocutory appeal[84] and the Fifth Circuit dismissed his writ of mandamus.[85] Dondero appealed the order holding him in contempt. This Court affirmed the Bankruptcy Court in all respects but one.[86] Dondero has appealed to the Fifth Circuit.

- Appeal of Settlement Orders: The Dondero Entities appealed the orders approving the settlements with Acis, UBS, and HarbourVest. The appeals of the Acis and HarbourVest

---

[83] See ¶¶ 15-19 supra.

[84] Case No. 3:21-CV-0132-E, Docket No. 9 (N.D. Tex. Feb. 11, 2021).

[85] Case No. 21-10219, Document 515867137 (5th Cir. May 18, 2021). Dondero moved to dismiss his writ after it became clear it would not be granted.

[86] Civ. Action No. 3:21-CV-1590-N, Docket No. 42 (N.D. Tex. Aug. 17, 2022). The parties agreed the Bankruptcy Court's monetary sanction assessing a penalty of $100,000 for each unsuccessful appeal exceeded its authority. The order was otherwise affirmed.

settlements were dismissed for lack of prudential standing. The appeal of the UBS settlement was dismissed on the merits, with this Court finding that aspects of the appeal were intended to "bamboozle" the Court.[87] The Dondero Entities appealed the HarbourVest and UBS settlements to the Fifth Circuit. These matters are *sub judice*.

- Appeal of Second Contempt Order: The Dondero Entities appealed the order holding them in contempt for pursuing claims against Seery in violation of the January and July Orders. On appeal, this Court (a) found the gatekeeper provisions in the January and July Orders "failed to deter" the Dondero Entities and the contempt finding was based on "clear and convincing evidence" and (b) affirmed the finding regarding Dondero's control of DAF and CLOH.[88] The Dondero Entities appealed to the Fifth Circuit.

- Appeal of Rule 2015.3 Order: Dugaboy appealed the order denying its motion to compel compliance with Rule 2015.3, admitting it had been filed to gain information to manufacture new litigation claims.[89] This Court dismissed Dugaboy's appeal for lack of prudential standing. Dugaboy appealed to the Fifth Circuit,[90] which denied its appeal without argument.[91]

---

[87] *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 172351, at *12 (N.D. Tex. Sept. 22, 2022).

[88] *Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 175778, at *3, 5-11, 18-21 (N.D. Tex. Sept. 28, 2022).

[89] Case No. 3:21-cv-02268-S, Docket No. 15, at 2-3 (N.D. Tex. Jan. 1, 2022) ("That is the point of this appeal [of the order on the 2015.3 reports]: to determine what claims against the estate exist which arose from transactions with non-debtor affiliates—a determination that was foreclosed because of the Bankruptcy Court's Order rendering production of the 2015.3 Reports moot"); *see also* Case No. 3:22-CV-2268-S, Docket No. 21 at 5 (N.D. Tex. Aug. 8, 2022) ("Dugaboy's primary contention is that, but for the bankruptcy court's failure to compel Debtor to file retroactive reports regarding its ownership interests in non-debtor subsidiaries as of the bankruptcy petition date, Dugaboy might have used the information in those reports to investigate whether any post-petition claims exist against Debtor's estate by any non-debtor affiliate") (citations omitted).

[90] In its reply to the Fifth Circuit, Dugaboy alleged, without factual support, that HCMLP's failure to comply with Rule 2015.3 meant HCMLP's bankruptcy case was a "black box allowing [HCMLP] and its professionals to pilfer the estate for tens of million dollars" with the complicity of "the courts." Case No. 22-10831, Document 516578672, at 5 (5th Cir. Dec. 14, 2022). HCMLP moved to strike Dugaboy's unsupported statements. Although the Fifth Circuit denied the motion, it directed HCMLP to file a sur-reply, which it did. Case No. 22-10831, Document 39-1 (5th Cir. Jan. 12, 2023); *see also* Case No. 22-10831, Document 40 (5th Cir. Jan. 23, 2023).

[91] *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2023 U.S. App. LEXIS 4839 (5th Cir. Feb. 28, 2023).

- <u>Appeal of Orders on Lack of Standing</u>: The Dondero Entities appealed this Court's orders dismissing their appeals for lack of prudential standing, arguing the "person aggrieved" standard (applied in this Circuit and all other Circuits for decades) must be overturned.[92] These matters are *sub judice*.

### vi    <u>The Dondero Entities' Attempt to Evade the Bankruptcy Court</u>

28.    In an effort to evade the Bankruptcy Court, the Dondero Entities have filed multiple lawsuits in other courts and sought regulatory intervention in the Bankruptcy Case.

- *Charitable DAF Fund, L.P., et al v. Highland Cap. Mgmt., L.P., et al*: The DAF and its subsidiary, CLOH, filed suit in this Court[93] alleging HCMLP breached its purported duties by entering into the Bankruptcy Court-approved HarbourVest settlement—notwithstanding that CLOH had objected to the settlement and then, after conducting research and reviewing the arguments, publicly withdrew its objection, stating it had no merit.[94] Shortly thereafter, DAF and CLOH sought to add Seery as a defendant in violation of the January and July Orders.[95] The complaint was referred to the Bankruptcy Court in September 2021 and dismissed on collateral and judicial estoppel grounds.[96] This Court reversed, in part, and remanded for additional findings.[97] HCMLP renewed its motion to dismiss in October 2022, and, in November 2022,

---

[92] Case No. 22-10960 (5th Cir. Oct. 5, 2022); Case No. 22-10575 (5th Cir. Jun. 10, 2022); Case No. 22-10831 (5th Cir. Aug. 24, 2022).

[93] 3:21-cv-00842-B (N.D. Tex. Apr. 21, 2021).

[94] **Ex. 67, Appx. 1626-1627**; **Ex. 68, Appx. 1804-1805**.

[95] *See* ¶ 26 *supra*.

[96] *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 659 (Bankr. N.D. Tex. Mar. 11, 2022).

[97] *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162 (N.D. Tex. 2022). Although this Court reversed, it did not, in any way, find the Dondero Entities' complaint had merit. Instead, it found the Bankruptcy Court appropriately applied collateral estoppel *sua sponte* and that all elements of collateral estoppel were met except one—"actually litigated"—because a settlement under Rule 9019 has a different legal standard. *Id.*, at 173. This Court also found the first two elements of judicial estoppel—"inconsistency" and "court's acceptance"—were met but the third element—"inadvertence"—was not assessed and remanded to determine if CLOH's withdrawal of its objection was "inadvertent."

DOCS_NY:46677.20 36027/003

plaintiffs moved for the first time to withdraw the reference. After a hearing, the Bankruptcy Court recommended this Court *not* withdraw the reference, finding the motion was untimely and "forum shopping and an attempt to delay adjudication."[98] DAF and CLOH objected to the report and recommendation.[99] The Bankruptcy Court granted the renewed motion to dismiss in June 2023;[100] DAF and CLOH have appealed to this Court.

• *PCMG Trading Partners XXIII, L.P. v. Highland Cap. Mgmt., L.P.*: PCMG, a Dondero Entity, filed suit in this Court[101] alleging HCMLP mismanaged an investment fund during the Bankruptcy Case. PCMG never served its complaint and moved for an *ex parte* stay. After HCMLP re-opened the case, this Court referred the complaint to the Bankruptcy Court, and HCMLP moved to dismiss. PCMG withdrew its complaint shortly before the hearing without explanation.[102]

• *The Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*: Dugaboy filed suit in this Court,[103] alleging HCMLP mismanaged the Highland Multi-Strategy Credit Fund, L.P. ("MSCF") by causing it to sell assets during the Bankruptcy Case. Dugaboy did not serve its complaint but withdrew it after HCMLP discovered it and disclosed that it was duplicative of Dugaboy's proof of claim,[104] which itself was withdrawn after HCMLP incurred the cost of objecting.[105]

• *The Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*: After Dugaboy withdrew its complaint, the DAF filed virtually the same complaint in this Court[106] alleging, again,

---

[98] Civ. Act. No. 3:21-0842-B, Docket No. 162 at 14 (N.D. Tex. Feb. 6, 2023).

[99] Civ. Act. No. 22-02802-S, Docket No. 3 (N.D. Tex. Feb. 21, 2023).

[100] *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2023 Bankr. LEXIS 1637 (Bankr. N.D. Tex. Jun. 8, 2023)

[101] 3:21-cv-01169-N (N.D. Tex. May 21, 2021).

[102] Adv. Proc. No. 22-03068-sgj, Docket No. 27 (Bankr. N.D. Tex. Aug. 1, 2022).

[103] 3:21-cv-01479-S (N.D. Tex. Jun. 23, 2021).

[104] **Ex. 57, Appx. 1058-1063**.

[105] B.D.I. 2965.

[106] Civ. Action No. 3:21-cv-01710-N (N.D. Tex. Jul. 22, 2021).

mismanagement of MSCF. The DAF never served its complaint and moved for an *ex parte* stay. After HCMLP re-opened the case, this Court referred the complaint to the Bankruptcy Court. In August 2022, the Bankruptcy Court dismissed the complaint.[107]

- Pre-Suit Discovery in Texas State Court: In July 2021, Dondero filed a petition in Texas state court seeking pre-suit discovery from Alvarez & Marsal CRF Management, LLC ("Alvarez"), and Farallon Capital Management, LLC ("Farallon"), alleging that Seery provided "inside information" to Farallon to assist in the purchase of claims from the Redeemer Committee (represented by Alvarez). Dondero also sought discovery on the HarbourVest settlement.[108] The petition clearly targeted Seery. The petition was removed to the Bankruptcy Court but remanded.[109] The state court held a hearing and dismissed the petition the same day.[110]

On January 20, 2023, HMIT filed another petition in Texas state court for pre-suit discovery against Farallon and Stonehill Capital Management, LLC ("Stonehill"), alleging (a) they purchased the Redeemer Committee, UBS, Acis, and HarbourVest claims with "inside information," including information related to the HarbourVest settlement, so (b) Seery could

---

[107] Adv. Proc. No. 22-03052-sgj, Docket No. 42, 43 (Bankr. N.D. Tex. Sept. 30, 2022). The DAF appealed but subsequently dismissed its appeal without explanation. Civ. Action No. 3:22-cv-02280-S, Docket No. 9 (N.D. Tex. Feb. 22, 2023).

[108] *Verified Petition to Take Deposition Before Suit and Seek Documents*, Cause No. DC-21-09534 (Tex. Dist. 95th Jul. 22, 2021); *Verified Amended Petition to Take Deposition Before Suit and Seek Documents*, Cause No. DC-21-09534 (Tex. Dist. 95th May 2, 2022). **Exs. 69-70, Appx. 1833-1856**.

[109] Despite remanding the action to state court, the Bankruptcy Court noted that Dondero's petition focused primarily on Seery despite not naming him directly. Adv. Proc. No. 21-03054-sgj, Docket No. 23 at 6 (Bankr. N.D. Tex. Jan. 4, 2022) ("It appears that Dondero may be seeking discovery as a means to craft a lawsuit against Seery … despite being previously sanctioned, along with related parties, by this court when he attempted to add Seery to a lawsuit … in violation of this court's prior gatekeeping orders …. Disturbingly, Seery again appears to be at the center of Dondero's allegations of wrongful acts, as his name appears nine times in the petition that commenced the Rule 202 Proceeding").

[110] *Order*, Cause No. 21-09534 (Tex. Dist. 95th Jun. 1, 2022), **Ex. 71, Appx. 1857-1858**.

fraudulently increase his compensation.[111] Seery was not named but was clearly the target. After

a hearing, the state court dismissed HMIT's petition.[112]

- <u>Letters to the UST</u>: In late 2021, and again in May 2022, Dugaboy, NPA, and HCMFA

sent letters to the UST[113] falsely alleging, among other things, that: (a) the Bankruptcy Court ruled

for HCMLP because HCMLP knowingly misrepresented facts; (b) the Bankruptcy Case lacked

transparency because HCMLP did not file its Rule 2015.3 reports; (c) HCMLP's settlement with

HarbourVest was fraudulent; (d) HCMLP engaged in asset sales without Bankruptcy Court

approval and without offering investors (*i.e.*, Dondero) the opportunity to purchase the assets; (e)

Seery violated employee rights by not paying the employee claims transferred to CPCM; (f) the

Plan impermissibly sought to liquidate a solvent estate against creditor wishes; (g) Seery engaged

in insider trading and used his authority to dominate HCMLP for his own self-interest; and (h)

Seery conspired with Stonehill and Farallon on the purchase of claims. The UST has not contacted

HCMLP concerning Dondero's libelous letters.

- <u>Texas State Security Board</u>: Mark Patrick, as the DAF's trustee, admitted that the DAF or

"one of its entities" filed a complaint against HCMLP with the Texas State Securities Board (the

---

[111] *Petitioner Hunter Mountain Investment Trust's Verified Rule 202 Petition*, Cause No. DC-23-01004 (Tex. Dist. 191st Jan. 20, 2023), **Ex. 72, Appx. 1859-1902**.

[112] *Order Denying Hunter Mountain Investment Trust's Verified Rule 202 Petition,* Cause No. DC-23-01004 (Tex. Dist. 191st Mar 8, 2023), **Ex. 74, Appx. 2199-2200**.

[113] Dugaboy sent its letter to the UST on October 5, 2021. NPA and HCMFA sent letters on November 3, 2021, and May 11, 2022. The letters can be found at B.D.I. 3662-1.

"TSSB") during the Bankruptcy Case.[114]  In May 2023, the TSSB, after "full consideration,"

closed its investigation of HCMLP without finding any wrongdoing.[115]

      **vii**    **The Pending Actions Prove the Need for Additional Sanctions**

    29.    On February 6, 2023, certain of the Dondero Entities filed a motion for leave to file

a complaint against HCMLP seeking information about HCMLP's current assets, the results of its

asset sales, and the amounts distributed to creditors.[116] While HCMLP objected to certain of the

allegations, it acknowledged that—based on the relief sought—the Gatekeeper was not implicated.

The Dondero Entities then filed their action as an adversary proceeding which will likely be

dismissed as a matter of law.[117]

    30.    Separately, in March 2023, HMIT sought leave to sue HCMLP for allegedly

breaching its fiduciary and other obligations to HMIT—a prepetition equity holder.[118] The

Bankruptcy Court held an evidentiary hearing on June 8, 2023, and HCMLP believes HMIT's

motion for leave will be denied. However, HMIT's putative complaint is emblematic of the

Dondero Entities' unceasing litigation—largely (a) restating the litany of false statements in their

letters to the UST about alleged insider trading and (b) seeking to create standing so the Dondero

Entities can re-litigate settled issues (*e.g.*, the HarbourVest settlement).

---

[114] **Ex. 80, Appx. 2840**.  HMIT cited the DAF's TSSB complaint to support its allegation that its alleged claims against HCMLP regarding insider trading were "colorable" and should pass through the Gatekeeper. B.D.I. 3699 ¶ 37 (The TSSB "opened in investigation into the subject matter of the insider trades at issue" and the "continuing nature of this investigation underscores HMIT's position that the claims described in [HMIT's complaint] are plausible and certainly far more than a 'colorable.'"").

[115] **Ex. 78, Appx. 2295-2296** (The TSSB "has completed its review of the complaint … against [HCMLP]. The issues raised in the complaint and information provided to our Agency were given full consideration, and a decision was made that no further regulatory action is warranted at this time.")

[116] B.D.I. 3662; *see also* B.D.I. 3692, 3771, 3722.

[117] Adv. Proc. No. 23-03038-sgj (Bankr. N.D. Tex. May 10, 2023).

[118] B.D.I. 3699, 3760; *see also* B.D.I. 3780, 3783, 3815, 3816; **Ex. 80, Appx. 2537-2926**. A hearing on this motion was held on June 6, 2023, and it is *sub judice*.

31.     The Dondero Entities' recent conduct demonstrates that their litigation crusade is far from over. Instead, it is clear their goal is to file new and ever more frivolous motions and regulatory actions—like the Texas state court actions, the letters to the UST, and the complaint to the TSSB—to gin up additional (and baseless) claims against HCMLP and its management.

### III.     <u>RELIEF REQUESTED</u>

32.     HCMLP requests an order (a) deeming the Dondero Entities "vexatious litigants;" (b) prohibiting them from pursuing, instituting, or commencing, a claim or cause of action of any kind, including regulatory or administrative actions, against (i) HCMLP, the Highland Claimant Trust, the Highland Litigation Sub-Trust, and the Highland Indemnity Trust (collectively, the "<u>Highland Entities</u>"), (ii) any entity directly or indirectly majority-owned and/or controlled by any Highland Entity, (iii) any entity directly or indirectly managed by any Highland Entity ((i)-(iii), collectively, the "<u>Highland Parties</u>"), (iv) each of the Highland Parties' trustees (including, without limitation, the trustees of the Highland Claimant Trust, Highland Litigation Sub-Trust, and Highland Indemnity Trust), officers, executives, agents, directors, and employees, (v) the current and former members of the Oversight Board of the Highland Claimant Trust and their affiliates, including, without limitation, Farallon, Stonehill, Muck Holdings LLC, and Jessup Holdings LLC, (vi) the independent board of directors appointed by the Bankruptcy Court on January 9, 2020, and its members John Dubel, James P. Seery, Jr., and Russell Nelms (in their official capacities), (vii) James P. Seery, Jr. (in his capacity as CEO/CRO (as such term is defined in the Plan)), (viii) the Committee and each of its members (in their official capacities), (ix) the professionals (and their respective firms) retained by HCMLP or the Committee during the Bankruptcy Case and by any Highland Party thereafter, and (x) any person or entity indemnified by any Highland Entity ((i)-

27

(x), collectively, the "<u>Covered Parties</u>")[119] arising from or related to the Bankruptcy Case or the management of the Highland Entities or the Highland Entities' property (collectively, the "<u>Estate Administration</u>") without this Court's prior approval obtained *after* reasonable notice to the applicable Covered Parties and a hearing where (1) the Court need not accept the movant's allegations as true as if it were adjudicating a motion to dismiss, (2) the movant(s) and putative defendant(s) may offer evidence to establish or rebut the plausibility of any putative claim(s) and (3) the movant(s) will have the burden of proving, among any other requirements that this Court may impose, that (A) the Action (as defined below) presents plausible claims, (B) the Action is legally and procedurally sound, (C) the Action is not being brought for any improper purpose, such as harassment, and (D) that the factual support for, and allegations in, the Action are more likely than not after giving due weight to the movant's prior legal proceedings, and (c) ordering each Dondero Entity to file a copy of this Court's order finding the Dondero Entities vexatious in any (i) court (whether foreign or domestic), (ii) administrative tribunal, or (iii) administrative or regulatory agency where any pending or future litigation (including arbitrations and appeals, proceedings, suits, claims, or actions of any kind (any of the forgoing, an "<u>Action</u>")) against any Covered Party concerning Estate Administration is pursued or commenced by any Dondero Entity.

---

[119] The Covered Parties include, without limitation, HCLOF, Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Argentina Regional Opportunity Fund, Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd.,  Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding A, Longhorn Credit Funding B, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Prometheus Master Fund, L.P., Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd.

## IV.    <u>ARGUMENT</u>

### A.    **This Court Can Deem Litigants "Vexatious" and Issue Pre-Filing Injunctions**

33.    The Fifth Circuit has on many occasions affirmed lower court orders declaring litigants "vexatious" and imposing pre-filing injunctions as a sanction against abusive and harassing litigation.[120] In doing so, the Fifth Circuit has repeatedly held that federal courts (a) have the inherent power to "sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of [their] docket[s]"[121] and (b) may exercise their power, and the authority provided by the All Writs Act (28 U.S.C. § 1651(a)), to deem a litigant "vexatious" and to impose a pre-filing injunction and any other remedy necessary to stop the vexatious conduct if they find that the litigant acted in "bad faith."[122] The Fifth Circuit effectively affirmed its prior holdings in September 2022 when it all but encouraged HCMLP to move for sanctions and have the Dondero Entities deemed vexatious.[123]

34.    In the Fifth Circuit, the "traditional standards for injunctive relief—*i.e.* irreparable injury and inadequate remedy at law—do not apply to the issuance of a pre-filing injunction against a vexatious litigant."[124] Instead, courts apply a four-part test to determine whether to impose a pre-filing injunction, analyzing: (a) the party's history of litigation, in particular whether s/he has filed

---

[120] *See, e.g., Bowling v. Willis*, 2019 U.S. Dist. LEXIS 168602 (E.D. Tex. Aug. 9, 2019), *aff'd* 853 F. App'x. 983 (5th Cir. 2021); *Staten v. Harrison Cnty.*, 2021 U.S. App. LEXIS 35747 (5th Cir. Dec. 2, 2021); *Schum v. Fortress Value Recovery Fund I LLC*, 2019 U.S. Dist. LEXIS 226679 at *14-15 (N.D. Tex. Dec. 2, 2019), *aff'd* 805 F. App'x. 319 (5th Cir. 2020); *Caroll v. Abide (In re Carroll)*, 850 F.3d 811 (5th Cir. 2017); *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181 (5th Cir. 2008); *Clark v. Mortenson*, 93 F. App'x. 643, 645-46 (5th Cir. 2004); *Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002).

[121] *Caroll*, 850 F.3d at 815.

[122] *Id.; see also Staten*, 2021 U.S. App. LEXIS 35747 at *7 ("District court have authority to enjoin vexatious litigants under the All Writs Act, 28 U.S.C. § 1651. They also have inherent power to impose pre-filing injunctions to deter vexatious, abusive, and harassing litigation, and they have a constitutional obligation to protect their jurisdiction from conduct that impairs their ability to carry out their Article III functions.").

[123] *NexPoint*, 48 F.4th at 369, n.19 ("Nothing in this opinion should be construed to hinder the bankruptcy court's power to enjoin and impose sanctions on Dondero and other entities by following the procedures to designate them vexatious litigants.").

[124] *Baum*, 513 F.3d at 189 (citations omitted).

DOCS_NY:46677.20 36027/003

vexatious, harassing, or duplicative lawsuits; (b) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (c) the extent of the burden on the courts and other parties resulting from the party's filings; and (d) the adequacy of alternative sanctions.[125]

35.    In assessing these factors, courts consider affirmative litigation as well as objections, appeals, attempts to re-litigate settled issues, and other actions, including regulatory and defensive actions taken by the vexatious litigant.[126] If relevant, courts may also consider—and take judicial notice of—actions in other courts or outside of court if they threaten the court's jurisdiction or assist in determining bad faith.[127]

36.    The conduct in *Caroll* is instructive (and less egregious than the Dondero Entities'). In *Carroll*, after a trustee was appointed to manage the bankruptcy estate, the Carolls began filing a "legion" of motions and objections to undermine her mandate. The court found the Carolls vexatious, highlighting the following, among others, as examples of vexatious conduct: (a) challenges to, and appeals of, orders authorizing the sale of debtor property, (b) challenging the

---

[125] *Id.*

[126] *Caroll*, 850 F.3d at 815-16 ("Appellants' suggestion that their conduct was not done in bad faith is belied by their repeated attempts to litigate issues that have been conclusively resolved against them or that they had no standing to assert and by their unsupported and multiple attempts to remove … the trustee."); *Clark*, 93 F. App'x. at 645-46 (finding multiple lawsuits against receiver for breach of fiduciary duty, conspiracy, embezzlement, mail fraud, and RICO violations vexatious); *Caroll*, 2016 U.S. Dist. LEXIS 100930 at *32-33 (M.D. La. Aug. 2, 2016), *aff'd* 850 F.3d 811 (5th Cir. 2017) (finding appeal of bankruptcy court orders and standing that was "entirely 'uncertain'" evidence of vexatiousness); *Schum*, 2019 U.S. Dist. LEXIS 226679 at *14-15 (finding objections and motions, including motion to recuse, and appeal of nearly every order vexatious); *Alliance Riggers & Constructors, Ltd. v. Restrepo*, 2015 U.S. Dist. LEXIS 29346 at *14-15 (W.D. Tex. Jan. 7, 2015) (holding litigant can be vexatious if a defendant or plaintiff if "seeks to halt the judicial process with identical meritless filings").

[127] *Payne v. Anthony Scott Law Firm PLLC*, 2023 U.S. Dist. LEXIS 89798 at *13-14 (N.D. Tex. May 5, 2023) ("Here, the Court takes judicial notice of the documents filed in Plaintiff's bankruptcy proceedings and Judge Jernigan's attendant orders to establish the vexatiousness of Plaintiff's conduct"); *Bowling*, 2019 U.S. Dist. LEXIS 168602 at *10-14 (upholding pre-filing injunction based on the "totality of the record" where movant filed three federal cases seeking to re-litigate or interfere with her state court divorce proceeding); *Baum*, 513 F.3d at 191 ("The district court could consider Baum's conduct in the state court proceedings in determining whether his conduct before the bankruptcy court was undertaken in bad faith or for an improper motive"); *Nix v. Major League Baseball*, 2022 U.S. Dist. LEXIS 104770 at *15-16, 62 (S.D. Tex. Jun. 13, 2022), *aff'd* 62 F.4th 920 (5th Cir. 2023) (taking judicial notice of actions filed in other courts and an attempt to strong arm a party with threats of litigation); *Schum*, 2019 U.S. Dist. LEXIS 226679 at *15 (considering appeal of FCC approval of bankruptcy sale as evidence of vexatious litigation).

estate's ownership of property, resulting in findings of contempt, orders to compel, and denial of motions to stay, (c) two motions to remove the trustee, and (d) filing a complaint with the UST, not coincidentally, at the same time the Carolls were seeking to thwart bankruptcy sales.[128] The court found the Carolls and their daughters (non-debtors who filed actions at the direction of their parents) "vexatious litigants" and issued a pre-filing injunction.[129]

37.    Finally, and as was done in *Caroll* (and other cases), a court may enjoin parties in front of the court and those under such parties' control or that act in concert with them[130] and may require that the vexatious litigants file the order deeming them vexatious in any pending or future proceeding.[131]

---

[128] *In re Caroll*, 2016 Bankr. LEXIS 937 at *5-27 (Bankr. M.D. La. 2016).

[129] *Id.* at *34; *see also Caroll v. Abide*, 2016 U.S. Dist. LEXIS 100930, at *32 (M.D. La. Aug. 2, 2016) ("For years, then, Appellants have appealed well-founded orders issued by the Bankruptcy Court and thusly delayed (or attempted to hinder) specific actions by court or trustee which were authorized by either Code or jurisprudence."); *Caroll*, 850 F.3d at 815-16 ("As both the bankruptcy court and the district court meticulously explained, Appellants have engaged in conduct intended to harass and delay. Appellants' suggestion that their conduct was not done in bad faith is belied by their repeated attempts to litigate issues that have been conclusively resolved against them or that they had no standing to assert and by their unsupported and multiple attempts to remove Abide as the trustee."). The conduct in *Caroll* is consistent with conduct other courts have found to be vexatious. *See, e.g. Clark*, 93 F. App'x. at 645-46; *Schum*, 2019 U.S. Dist. LEXIS 226679, at *14-15.

[130] *Caroll*, 2016 Bankr. LEXIS 937, at *34 (prohibiting litigation filed by the vexatious litigants and "anyone acting on their behalf"); *Clark v. Mortenson*, 93 F. App'x. at 654 (prohibiting suits brought "directly and indirectly" by the vexatious litigants); *see also Staten*, 2021 U.S. App. LEXIS 35747, at *6-7 (extending pre-filing injunction to protect certain named parties "and those in privity with them"); *see also Restrepo*, 2015 U.S. Dist. LEXIS 29346 at *15 ("[O]rders made pursuant to the All Writs Act may be directed not only to the immediate parties to a proceeding, but also 'to person who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice.'") (citing *Williams v. McKeithen*, 939 F.2d 1100, 1104 (5th Cir. 1991).

[131] *Baum*, 513 F.3d at 191 ("[T]he Second Circuit … upheld those provisions of the injunction requiring Martin-Trigona to alert state courts of his history of vexatious filings in federal courts."); *Nix v. Major League Baseball*, 2022 U.S. Dist. LEXIS 104770 at *70 ("The court also orders Nix to file a copy of this opinion with any filing that he makes in any other court"); *see also Silver v. City of San Antonio*, 2020 U.S. Dist. LEXIS 118643, at *31-32 (W.D. Tex. Jul. 7, 2020) (requiring vexatious litigant file in any court a notice listing every sanction imposed or sanction warning issued and each order imposing sanctions or issuing a sanctions warning and alert state courts of history of vexatious federal filings); *Marinez v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 208591, at *14 (W.D. Tex. May 31, 2013) ("[P]laintiff will disclose the contents of this order and the outcome of every previously filed suit related to the subject property that was previously filed by her.")

**B.     This Court Has Jurisdiction Over This Court and the Bankruptcy Court**

38.     As discussed in *Schum* and affirmed by the Fifth Circuit, district courts, which sit as courts of review over bankruptcy courts, have the inherent authority to enjoin filings in both the district court *and in the bankruptcy courts*. Orders issued by the Bankruptcy Court are appealed to this Court pursuant to 28 U.S.C. § 158(a). Similarly, this Court is required by 28 U.S.C. § 157(c)(1) to review the Bankruptcy Court's proposed findings of fact and conclusions of law with respect to "non-core" matters and any objections thereto. Accordingly, events in the Bankruptcy Court directly affect this Court's jurisdiction. This Court may take judicial notice of events and filings in the Bankruptcy Court to establish the Dondero Entities' vexatiousness[132] and enjoin future filings in this Court and the Bankruptcy Court.[133]

**C.     HCMLP Satisfies the Four-Part Test for Obtaining a Pre-Filing Injunction**

39.     Based on the Dondero Entities' actions, HCMLP has established each element of the Fifth Circuit's four-part test for obtaining a pre-filing injunction.

**i     History of Vexatious and Harassing Litigation**

40.     HCMLP easily meets the first prong: history of litigation. As set forth above, the Dondero Entities' vindictive litigation crusade against HCMLP has continued for over two years without limit. The Dondero Entities have objected to everything, filed (and then sometimes abandoned) baseless claims, pursued claims in other forums to evade the Bankruptcy Court, and appealed every adverse ruling regardless of the merits, the evidence, the standard on appeal,

---

[132] *See, e.g., Payne*, 2023 U.S. Dist. LEXIS 89798 at *13-14.

[133] *Schum*, 2019 U.S. Dist. LEXIS 226679 at *12-13 ("[A] court may issue injunctive relief … in aid of its appellate jurisdiction over the bankruptcy court … Appellees seek injunctive relief prohibiting Appellant from making future filings related to [two bankruptcy court proceedings]. Those filings, when decided and if appealed, will affect the Court's future appellate jurisdiction over those bankruptcy proceedings. Accordingly, the Court has the jurisdiction to order the requested relief.").

whether they have standing, or whether the appeal is economically rational. The Dondero Entities'
recent conduct shows they have no intent to stop their harassment.

41.     Nor is the Dondero Entities' strategy new; they are still locked in vociferous,
decade-long litigation with UBS, Daugherty, and Terry and Acis notwithstanding the adverse
rulings—and harsh criticisms—issued against them. The Dondero Entities have a long and storied
history of vexatious litigation—a history so infamous the insurance industry generally refuses to
insure against it.

**ii      Lack a Good-Faith Basis for Pursuing the Litigation**

42.     HCMLP also satisfies the second prong: lack of good faith. The Dondero Entities'
relentless litigation is simply the execution of Dondero's stated plan to "burn down the place" after
he failed to impose his will and re-take control of HCMLP and his personal threat against Seery—
"Be careful what you do, last warning." The Dondero Entities' actions led the Bankruptcy Court
to find their litigation was "designed merely to harass," resulted in two contempt orders and two
restraining orders, multiple admonishments (including from this Court), and caused the Fifth
Circuit to *sua sponte* suggest deeming the Dondero Entities vexatious litigants. Unrepentant and
unrestrained, the Dondero Entities continue to appeal nearly every adverse ruling, seek information
to manufacture more baseless claims, and attempt to re-litigate settled issues in other forums.[134]

43.     The Dondero Entities are the *only* parties litigating with HCMLP. All others have
resolved their claims and await distributions under the confirmed Plan—confirmed with the

---

[134] By way of example, the Dondero Entities challenged the HarbourVest settlement in the Bankruptcy Court and then
in this Court. When those efforts proved unsuccessful (and led to a finding of contempt), the Dondero Entities sent
letters to the UST, sought pre-suit discovery in Texas state courts to challenge the HarbourVest settlement, and filed
a complaint with the TSSB. *See* ¶ 28 *supra*. The Dondero Entities also challenged the same settlement in the state and
federal courts of New York and in the Guernsey Royal Court in connection with their litigation against Acis and Terry.
*See* n.13 *supra*.

approval of 99.8% of creditors in amount. The Dondero Entities' conduct in this case (and prior cases), and their attempts to "burn down the place," evinces their lack of good faith.

### iii   Burden on the Court System and HCMLP

44.     The third prong of the test—burden on the courts and HCMLP—is easily met. In the Bankruptcy Court, the Dondero Entities filed 52 prepetition claims (not one of which was ultimately allowed), 85 motions, 79 objections, and forced HCMLP to file 9 adversary proceedings against them. The Dondero Entities appealed nearly every adverse ruling from the Bankruptcy Court to this Court and, when unsuccessful, to the Fifth Circuit, resulting in nearly 30 appeals. The burden created on the court system is enormous. So is the burden on HCMLP. HCMLP spent substantial sums litigating with the Dondero Entities and, in fact, procured exit financing, in large part, to fund its defense of the Dondero Entities' litigation.[135]

### iv   Alternative Sanctions Are Inadequate to Deter the Conduct

45.     Finally, the Dondero Entities have shown that previous sanctions are inadequate. They have been enjoined twice; their violations of Bankruptcy Court orders have led to two contempt findings and monetary sanctions.

46.     In order to protect HCMLP and its court-appointed management, the Bankruptcy Court issued the January and July Orders and approved the Gatekeeper. The Dondero Entities violated the July Order, and, notwithstanding the Fifth Circuit's affirmance of the Gatekeeper, its finding that the January and July Orders were *res judicata*, and the Bankruptcy Court's order conforming the Plan, the Dondero Entities still seek to overturn the protections afforded HCMLP and its estate—appealing the order on the motion to conform in a second attempt to overturn the Gatekeeper. Not content with waiting for the Fifth Circuit, the Dondero Entities are already

---

[135] B.D.I. 2229, 2503. The Dondero Entities objected to the exit financing. B.D.I. 2403, 2467.

contending that the Fifth Circuit *actually limited the Gatekeeper* in their efforts to overturn the July Order[136] and tried to circumvent the Gatekeeper by attempting to conscript the UST, the Texas state courts, and the TSSB in their crusade against Seery and HCMLP.

47.     The Dondero Entities are actively challenging the Gatekeeper (and the other orders protecting HCMLP's management) in the hope of flooding the courts with additional litigation; the current sanctions are inadequate to protect the estate.

## V.     <u>CONCLUSION</u>

48.     WHEREFORE, HCMLP respectfully requests that this Court (a) grant the Motion and (i) deem the Dondero Entities vexatious litigants; (ii) issue a pre-filing injunction prohibiting the Dondero Entities from instituting, commencing, or pursuing a claim or cause of action of any kind against any Covered Party related to the Estate Administration without obtaining Prior Approval; (iii) grant the other relief requested in paragraph 32 *supra*; and (b) grant such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

---

[136] *See* n. 39 *supra*.

Dated: July 14, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA  90067
Tel: (310) 277-6910
Fax:  (310) 201-0760
Email:      jpomerantz@pszjlaw.com
            jmorris@pszjlaw.com
            gdemo@pszjlaw.com
            hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

DOCS_NY:46677.20 36027/003