# Exhibit 7



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 16, 2023**

_____
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § § § | |

## MEMORANDUM OPINION AND ORDER GRANTING JOINT MOTION TO EXCLUDE EXPERT EVIDENCE [DE # 3820]

I.       **INTRODUCTION**.

BEFORE THIS COURT is yet another dispute in the continuing saga of the Chapter 11 bankruptcy case of Highland Capital Management, L.P. ("Highland" or "Reorganized Debtor").

The Reorganized Debtor has been operating under a confirmed Chapter 11 plan for approximately two years now—a plan having been confirmed on February 22, 2021. The plan was never stayed; it went effective in August 2021; and it was affirmed almost in its entirety by

the United States Court of Appeals for the Fifth Circuit (in late summer 2022).  A petition for writ

of certiorari regarding the plan confirmation order has been pending at the United States Supreme

Court since January 2023. Millions of dollars have been paid out to creditors under the plan,

although the plan has not been completed.

This court uses the words "continuing saga" because there is a mountain of litigation that

is still pending.  First, there are numerous adversary proceedings still pending, in which the

Reorganized Debtor and a Litigation Trustee appointed under the plan are seeking to liquidate

claims that Highland has against others, in order to augment the pot of money available for

unsecured creditors.  Some of these adversary proceedings involve what seem like simple suits on

promissory notes (albeit very large promissory notes), and others involve highly complex torts.

There are numerous appeals pending and, from time to time, petitions for writs of mandamus have

been filed post-confirmation.  And there are new lawsuits popping up around every corner it seems.

To be sure, this post-confirmation litigation is not the "usual stuff," and the adverse parties

in this ongoing post-confirmation litigation are not the "usual suspects."  For example, the

numerous post-confirmation adversary proceedings do not involve preference lawsuits or other

Chapter 5 avoidance actions against non-insider creditors—as we so often see proliferate in

Chapter 11 cases post-confirmation.  And we do not have long-running proof of claim objections

pending post-confirmation—because all of the proof of claim objections regarding non-insider

creditors were resolved long ago (with major compromises reached and settlements approved by

the court—some after formal mediation).  And as for the myriad appeals, the non-insider creditors

in this case—with proofs of claim asserted in the hundreds of millions of dollars—overwhelmingly

supported Highland's confirmed plan and, therefore, they have not been appellants on any of the

aforementioned appeals.

Case 19-34054-sgj11 Doc 3887 Filed 09/16/23 Entered 09/16/23 16:46:28 Desc
Exhibit Page 13 of 17

So who has been the adverse party in this deluge of post-confirmation litigation? The founder and former Chief Executive Officer ("CEO") of Highland, Mr. James Dondero personally, and entities that he controls (*e.g.,* family trusts; investment advisory firms; managed funds; and other entities—frequently organized offshore—that were not themselves debtors in the Highland Chapter 11 case but assert party-in-interest status in various capacities). To be clear, Mr. Dondero takes umbrage at the suggestion that *all* of the adverse parties in these numerous post-confirmation scuffles are controlled by him.

Which brings us to the current, post-confirmation contested matter before the court. Currently, a party called Hunter Mountain Investment Trust ("HMIT"), a Delaware trust, has filed a "gatekeeper motion"—that is, a motion seeking leave from this court to file an adversary proceeding in the bankruptcy court against the Reorganized Debtor's CEO and certain investors who purchased allowed unsecured claims in this case post-confirmation and pre-Effective Date (as further described below). HMIT's gatekeeper motion has given birth to a sideshow, so to speak, regarding ***what, if any, evidence the court ought to consider in connection with HMIT's gatekeeper motion—the latest "act" in such sideshow focusing on the propriety of considering expert testimony.***

Who or what exactly is HMIT? HMIT is an entity with no employees and no income whose only asset is a contingent right of recovery under the Highland confirmed plan—by virtue of HMIT having held a majority (99.5%) of the limited partnership interests in Highland pre-confirmation, which interests were classified in the plan in a "Class 10" (that was projected to receive no recovery). Mr. Dondero asserts that he does not control HMIT. HMIT represents that, since on or about August 2022, it has been solely controlled by a Mr. Mark Patrick (a former employee of Highland who left Highland one week after its Plan was confirmed and went to work for an entity

3

called "Skyview Group," that was formed by certain former Highland employees, and apparently

now advises various affiliate entities of Mr. Dondero).[1] While HMIT only has one asset (the "Class

10" contingent interest), Mark Patrick has testified that HMIT is liable on a $62.6 million-dollar

indebtedness that it owes to The Dugaboy Investment Trust (a family trust of which Mr. Dondero

is the lifetime beneficiary), pursuant to a promissory note made by HMIT in favor of Dugaboy, in

2015, in exchange for Dugaboy transferring to HMIT an ownership interest in Highland. *See*

Transcript 6/8/23 Hearing, at pp. 304-308 [DE # 3843]. *See also* Highland Exh. 51 from 6/8/23

Hearing [DE # 3817]. Mr. Patrick has testified that Dugaboy and HMIT have a settlement,

pursuant to which, Dugaboy is paying HMIT's attorney's fees. Transcript 6/8/23 Hearing, at p. at

313:2-18 [DE # 3843].

II. **HMIT'S MOTION FOR LEAVE TO FILE LAWSUIT (a.k.a. THE "GATEKEEPER MOTION").**

To understand the procedural motion now before the court—***which deals with whether or***

***not the bankruptcy court should allow or exclude expert witness testimony and documents*** (more

fully described below)—one must understand the context in which it is being considered, which is

the hearing on HMIT's *Emergency Motion for Leave to File Verified Adversary Proceeding* that

was filed by HMIT (the "HMIT Motion for Leave"), which this court loosely refers to sometimes

as the "Gatekeeping Motion."

The HMIT Motion for Leave, as alluded to, requests leave from the bankruptcy court to

file a post-confirmation, post-Effective Date adversary proceeding pursuant to this bankruptcy

court's "gatekeeping" orders and, specifically, the gatekeeping, injunction, and exculpation

---

[1] *See* DE # 2440 (Transcript of a 6/8/21 Hearing, at pp. 95:18-96:10).

provisions of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.

[DE # 1943], as modified (the "Plan"). The HMIT Motion for Leave, with attachments, as first

filed, was 387 pages in length, and the attachments included a proposed complaint and two sworn

declarations of the aforementioned former CEO of the Reorganized Debtor, Mr. Dondero. The

HMIT Motion for Leave was later amended to eliminate the declarations of Mr. Dondero. DE ##

3815 & 3816. In a nutshell, HMIT desires leave to sue certain parties regarding *the post-*

*confirmation, pre-Effective Date purchase of allowed unsecured claims*. The proposed

defendants would be:

> **Mr. James P. Seery, Jr.,** who now serves as the CEO of the Reorganized
> Debtor and also serves as the Trustee of the Highland Claimant Trust created
> pursuant to the Plan, and also was previously Highland's Chief Restructuring
> Officer ("CRO") during the case, then CEO, and, also, an Independent Board
> Member of Highland's general partner during the Highland case. Mr. Seery is best
> understood as the man who took Mr. Dondero's place running Highland—per the
> request of the Official Unsecured Creditors Committee.

> **Certain Claims Purchasers,** known as Farallon Capital Management, LLC
> ("Farallon"); Muck Holdings, LLC ("Muck"), which was a special purpose entity
> created by Farallon to purchase unsecured claims against Highland; Stonehill
> Capital Management, LLC ("Stonehill"); and Jessup Holdings, LLC ("Jessup"),
> which was a special purpose entity created by Stonehill to purchase unsecured
> claims against Highland (collectively, the "Claims Purchasers"). The Claims
> Purchasers purchased $240 million face value of unsecured claims post-
> confirmation and pre-Effective Date—which claims had already been allowed
> during the Highland case—in the spring of 2021 and another $125 million face
> value allowed unsecured claims in August 2021. Bankruptcy Rule 3001(e)
> notices—giving notice of same—were filed on the bankruptcy clerk's docket
> regarding these purchases. The claims had previously been held by the creditors
> known as the Crusader Redeemer Committee, Acis Capital, HarbourVest, and UBS
> (three of these four creditors formerly served on the Official Unsecured Creditors
> Committee during the Highland bankruptcy case).

> **John Doe Defendant Nos. 1-10**, which are described to be "currently
> unknown individuals or business entities who may be identified in discovery as
> involved in the wrongful transactions at issue."

> The proposed plaintiffs would be:

> **HMIT,** which represents that it was the largest equity holder in Highland
> and held a 99.5% limited partnership interest (specifically, Class B/C limited

partnership interests).  HMIT represents that it currently holds a Class 10 interest under the confirmed Highland plan, which gives it a contingent interest in the Claimant Trust created under the plan, and as defined in the Claimant Trust Agreement ("CTA").

**Reorganized Debtor,** as a nominal party.  HMIT wishes to bring its complaint on behalf of itself and derivatively on behalf of the Reorganized Debtor.

**Highland Claimant Trust**, as a nominal party.  HMIT wishes to bring its complaint on behalf of itself and derivatively on behalf of the Highland Claimant Trust.

The gist of the complaint that HMIT seeks leave to file is as follows.  HMIT asserts that something seems amiss regarding the post-confirmation/pre-Effective Date purchase of claims by the Claims Purchasers.  Actually, more bluntly, HMIT asserts that "wrongful conduct occurred" and "improper trades" were made.  HMIT Motion for Leave, 7.  HMIT believes the Claim Purchasers paid around $160 million for the $365 million face amount of claims they purchased.  HMIT believes that this amount was too high for any rational claim purchaser (particularly hedge funds who expect high returns) to have paid for the claims—based on Highland's Disclosure Statement and Plan projections regarding the projected distributions under the Plan to holders of allowed unsecured claims.  Also, Mr. Dondero purports to have concluded from conversations he had with representatives of one of the Claims Purchasers that they did no due diligence before purchasing the claims.  Therefore, HMIT surmises, Mr. Seery must have given these claims purchasers material nonpublic information ("MNPI") regarding Highland that convinced them that it was to their economic advantage to purchase the claims.  In particular, HMIT surmises Mr. Seery shared MNPI regarding the likely imminent sale of Metro-Goldwyn-Mayer Studios, Inc. ("MGM"), in which Highland had, directly and indirectly, substantial holdings.  Indeed, MGM was ultimately purchased by Amazon after a sale process that had been quite publicly discussed in

6

media reports for several months[2] and that was officially announced to the public in late May 2021

(just a few weeks after the Claims Purchasers purchased some of their claims, but a few months

***before*** certain of their claims—the UBS claims—were purchased).[3]   Note that Highland and

entities it controlled tendered their MGM holdings in connection with the Amazon transaction

(they did not sell their holdings while the MGM-Amazon deal was under discussion and/or not

made public).   In summary, while HMIT's proposed complaint is lengthy and at times hard to

follow, it boils down to allegations that:  (a) Mr. Seery filed (or caused to be filed) deflated,

pessimistic, misleading projections regarding the value of the Debtor's estate in connection with

the Plan, (b) then induced very sophisticated unsecured creditors (who, incidentally, are not

complaining) to discount and sell their claims to the likewise very sophisticated Claims Purchasers,

(c) which Claims Purchasers are allegedly friendly with Mr. Seery, and are now happily approving

Mr. Seery's allegedly excessive compensation demands post-Effective Date (resulting in less

money in the pot to pay off the creditor body in full, and, thus, a diminished likelihood that HMIT

will realize any recovery on its contingent Class 10 interest).   HMIT argues that Mr. Seery should

be required to disgorge his compensation.   It appears that HMIT also seeks other damages.

The individual counts that HMIT wants to allege are:

I.        Breach of Fiduciary Duty (as to Mr. Seery)

---

[2] *See* Highland Exh. 25 ("MGM has held preliminary talks with Apple, Netflix and other larger media companies . . .
. MGM, in particular, seems like a logical candidate to sell this year. Its owners include Anchorage Capital, Highland
Capital and Solus Alternative Asset Management, hedge funds that acquired the company out of bankruptcy in 2010.")
(article dated 1/26/20); Highland Exh. 26 (describing prospects of an MGM sale noting that, among its largest
shareholders, was "Highland Capital Management, LP") (article October 11, 2020).  *See also* Highland Exhs. 27-30
& 34 (various other articles regarding possible sale/suitors of MGM, dated in years 2020 and 2021, and ultimately
announcing sale to Amazon on May 26, 2021, for $8.4 billion).

[3] The MGM-Amazon deal was ultimately consummated in March 2022 for approximately $6.1 billion, net of cash
acquired, plus approximately $2.5 billion in debt that Amazon assumed and immediately repaid.

II.      Breach of Fiduciary Duty and Knowing Participation in Breach of
         Fiduciary Duty (as to Claims Purchasers)

III.     Fraud by Misrepresentation and Material Nondisclosure (as to all
         proposed defendants)[4]

IV.      Conspiracy (as to all proposed defendants)

V.       Equitable Disallowance (as to Muck and Jessup)

VI.      Unjust Enrichment and Constructive Trust (as to all proposed
         defendants)

V.       Declaratory Judgment (as to all proposed defendants)


**III.   NEXT, THE DELUGE OF ACTIVITY, IN MULTIPLE COURTS, AFTER
         THE FILING OF THE HMIT MOTION FOR LEAVE**.


After the HMIT Motion for Leave was filed on March 28, 2023, there was two-and-a-half
months of activity regarding ***what type of hearing the bankruptcy court would hold and when*** on
the HMIT Motion for Leave.  A timeline is set forth below.

**3/28/23**:  The HMIT Motion for Leave was filed, along with a request for emergency
hearing on same.  DE ## 3699 & 3700.  HMIT requested that the court schedule a hearing on the
motion "on three (3) days' notice, and that any responses be filed no later than twenty-four hours
before the scheduled hearing sought."  DE # 3700, 2. The HMIT Motion for Leave was 37 pages
in length, plus another 350 pages of supporting exhibits, including two sworn declarations of Mr.
Dondero.

**3/31/23**:  Bankruptcy Court entered order denying an emergency hearing on the HMIT
Motion for Leave. DE # 3713.  The court stated that it would set the hearing on normal notice (at
least 21 days' notice), seeing no emergency.

**4/4/23-4/12/23**:  HMIT pursued an unsuccessful interlocutory appeal and then a petition
for writ of mandamus regarding the Bankruptcy Court's denial of an emergency hearing at first the
District Court and then the Fifth Circuit.

**4/13/23**:  Highland filed a motion asking the Bankruptcy Court to set a briefing schedule
on the HMIT Motion for Leave, indicating that Highland's proposed timetable for same was
opposed by HMIT. DE # 3738.  The Claims Purchaser and Mr. Seery joined in that motion.  DE
## 3740 & 3747. HMIT subsequently filed a response unopposed to a briefing schedule and status
conference.  DE # 3748.

---

[4] This Count III has gone in and out of the various drafts HMIT has filed with the court and was included in the latest
version of the proposed complaint that was filed at DE # 3816.

**4/21/23:** HMIT filed a Brief [DE # 3758] before the status conference indicating it was opposed to there being any evidence at the ultimate hearing on the HMIT Motion for Leave— arguing the Bankruptcy Court did not need evidence in order to exercise its gatekeeping function and determine if HMIT has a "colorable" claim. Rather, the court need only engage in a Rule 12(b)(6)-type plausibility analysis.

**4/24/23:** The Bankruptcy Court held a status/scheduling conference; there was extensive discussion among all the parties regarding what type of hearing there needed to be on the HMIT Motion for Leave. HMIT was adamant there should be no evidence. Highland and Mr. Seery argued they ought to be able to cross-examine Mr. Dondero since his sworn declarations had been attached to the HMIT Motion for Leave as "objective evidence" that "supported" the HMIT Motion for Leave. DE #3699, p. 2. HMIT stated that it would withdraw Mr. Dondero's declarations, but not if the court was going to allow evidence.

**5/11/23:** Bankruptcy Court entered Order [DE # 3781] fixing a briefing schedule for the parties and stating that the court would "advise the parties on or reasonably after May 18, 2023, whether the Court intend[ed] to conduct the hearing on an evidentiary basis."

**5/22/23:** Bankruptcy Court issued an Order [DE # 3787] after receipt of briefing, stating that "the court has determined that there may be mixed questions of fact and law implicated by the Motion for Leave—and, in particular, pertaining to the court's required inquiry into whether 'colorable' claims may exist, as described in the Motion for Leave. Therefore, the parties will be permitted to present evidence (including witness testimony) at the June 8, 2023 hearing if they so choose. This may include examining any witness for whom a Declaration or Affidavit has already been filed. The parties will be allowed no more than three hours of presentation time each (allocated three hours to the movant and three hours to the aggregate respondents). This allocated presentation time may be spent in whatever manner the parties believe will be useful to the court (argument/evidence)."

**5/24/23:** HMIT filed an emergency motion for expedited discovery or alternatively for continuance of the June 8, 2023 hearing. [DE # 3788 & 3789]. HMIT continued to urge that it did not think presentation of evidence was appropriate in connection with the HMIT Motion for Leave, but that "subject to and without waiving its objections, HMIT requests immediate leave to obtain all of its requested discovery on or before the specific dates identified in each deposition notice (with duces tecum), failing which the hearing on HMIT's Motion for Leave should be continued until HMIT has obtained such discovery. The requested discovery is generally described in this Motion, but is set forth with particularity in the Deposition Notices with Duces Tecum attached as Exhibits A-E. [paragraph numbering omitted.] In summary, HMIT seeks expedited depositions of corporate representatives of Farallon Capital Management, LLC ("Farallon"), Stonehill Capital Management, LLC ("Stonehill"), Muck Holdings, LLC ("Muck"), Jessup Holdings, LLC ("Jessup") and also seeks the deposition of James A. Seery, Jr. ("Seery")." Deposition Notices were attached for each of these five parties. Nothing was stated about a possible need for (or intention to present) expert testimony.

**5/26/23:** The Bankruptcy Court held yet another status conference in response to HMIT's newest emergency motion. The Bankruptcy Court referred to this as a "second hearing on what kind of hearing we were going to have" on the HMIT Motion for Leave. The court heard more discussions on whether it was appropriate to consider evidence at the hearing on the HMIT Motion for Leave. Nothing was mentioned about possible experts. The court, continuing to believe that

there could be mixed questions of fact and law inherent in deciding the HMIT Motion for Leave, granted in part and denied in part HMIT's request for expedited discovery it sought of Mr. Seery and the Claims Purchasers. The Bankruptcy Court issued a follow-up order [DE # 3800] that provided:  "(1) To the extent any party would like to depose either James P. Seery, Jr. or James Dondero in advance of the June 8 hearing ("June 8 Hearing") on HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding [Dkt. No. 3699] and Supplement to Emergency Motion for Leave to File Verified Adversary Proceeding [Dkt. 3760] (together, the "Motion for Leave"), Mr. Seery and Mr. Dondero shall be made available for depositions ("Depositions") on a date and at a time agreeable to the parties that is no earlier than May 31, 2023, and no later than June 7, 2023, and no discovery or depositions of any other party or witness will be permitted prior to the June 8 hearing; and (2) None of the parties shall be entitled to any other discovery, including the production of documents from Mr. Seery or Mr. Dondero, or any other party or witness pursuant to a subpoena duces tecum, or otherwise, prior to the conduct of the Depositions or to the court's ruling on the Motion for Leave following the June 8, 2023 hearing"  The Bankruptcy Court issued this ruling with the expectation—based on everything it heard—that HMIT did not wish for the court to consider evidence but, if it did, it thought it should get to depose Mr. Seery and the Claims Purchasers.  The court reached what seemed like appropriate middle ground by allowing the deposition of Mr. Seery and allowing the other parties to depose Mr. Dondero (for whom sworn declarations had been submitted), but the court was not going to allow any more discovery (i.e., of the Claims Purchasers) at so late an hour.  The court was aware that HMIT and Mr. Dondero had been seeking discovery from the Claims Purchasers in state court "Rule 202" proceedings for approximately two years.

**June 5, 2023 (10:10 pm)**:  HMIT filed its Witness and Exhibit List disclosing two potential expert witnesses (along with biographical information and a disclosure regarding the subject matter of their likely testimony).

**June 7, 2023 (4:07 pm):**  A Joint Motion to Exclude Expert Testimony and Documents was filed by Highland, Mr. Seery, and the Highland Claimant Trust ("Motion to Exclude Expert Evidence").

**June 8, 2023 (8:12 am):**  HMIT filed a Response to the Motion to Exclude Expert Evidence.

**June 8, 2023 (9:30 am):** The Bankruptcy Court commenced its hearing on the HMIT Motion for Leave.  The parties desired for court to rule on whether the expert testimony and exhibits should be allowed into the record.  After much discussion, the court informed parties that it had not had the opportunity to study their eleventh-hour filings, and that the court would go forward with the hearing as the court had earlier contemplated (three hours per side; no experts for now) and the court would take the Motion to Exclude Expert Evidence under advisement and would schedule a "Day 2" for the hearing on the HMIT Motion for Leave for the experts if it determined that was appropriate.  The court gave Highland, Mr. Seery, and the Highland Claimant Trust a deadline of 6/12/23 to reply to HMIT's Response. They filed a Reply (in which the Claims Purchasers joined).  The Bankruptcy Court ordered no more pleadings would be considered. HMIT filed another pleading on this topic on 6/13/23 [DE # 3845] and Highland and Mr. Seery responded to the HMIT additional pleading [DE # 3846] and then HMIT replied to their response [DE # 3847].

### IV.  TURNING, FINALLY, TO THE MOTION TO EXCLUDE EXPERT EVIDENCE

As indicated in the timeline above, HMIT designated on June 5, 2023, at 10:10 pm CDT, two expert witnesses to testify at the hearing on the HMIT Motion for Leave.  The first one was Mr. Scott Van Meter, stating that he "may provide opinion testimony on issues relating to Mr. Seery's compensation and claims trading."  The second one was Mr. Steve Pully, stating that he "may provide opinion testimony on issues relating to Mr. Seery's claims trading."  To be clear, Mr. Seery is not alleged to have engaged in claims trading (i.e., he is not alleged to have either sold or purchased any claims in the Highland case).  Rather, it is surmised by HMIT that Mr. Seery might have shared MNPI with the Claims Purchasers.  Details about the two proposed experts' education, experience, and the likely substance of their testimony were provided.

Further, with regard to Mr. Van Meter, HMIT disclosed that he had analyzed the claims trading in the Highland case and holds the opinion that there are "red flags" plausibly indicating the use of MNPI in connection with the claim purchasers' investment in their claims –primarily among them the fact that the claims purchasers allegedly did not undertake due diligence. He also would apparently opine that Mr. Seery's compensation is not reasonable or excessive because not based on any market study and because the Claims Purchasers, as large creditors on the post-confirmation oversight committee, have the ability to control it.

Further, with regard to Mr. Pully, HMIT disclosed that the projections in the publicly available information (presumably the Disclosure Statement and Plan and accompanying exhibits, the Bankruptcy Schedules, and Monthly Operating Reports) would not have rewarded the Claims Purchasers with the type of economic return that hedge funds/private equity firms would expect to realize.  Thus, they must have had some MNPI to convince them that the claims purchasing was worthwhile.

There are procedural problems and substantive problems with the Proposed Experts (hereinafter so called).

### A.   *The Procedural Problems.*

The timeline set forth above is highly problematic.  Highland, Mr. Seery, and the Highland Claimant Trust refer to the timeline here as tantamount to "trial by ambush."

HMIT counters that it, in fact, complied with this court's local rules and national rules as well.  As to the local rules, Local Bankruptcy Rule 9014-1(c) of the Northern District of Texas requires, in contested matters, the exchange of exhibits and witness lists with opposing parties at least 3 calendar days before a scheduled hearing (unless a specific order otherwise applies).  The hearing on the HMIT Motion for Leave was scheduled for June 8, 2023, at 9:30 am CDT, and HMIT filed its exhibit and witness list on June 5, 2023, at 10:10 pm CDT—technically three calendar days before the hearing, albeit less than 72 hours before the hearing.  As for the national rules, HMIT states that it was under no duty to disclose the existence or substance of expert testimony prior to the exchange of witness lists, because national Rule 9014 of the Federal Rules of Bankruptcy Procedure ("FRBP"), applying to contested matters, does not incorporate Rule 26(a)(2) of the Federal Rules of Civil Procedure ("FRCP"), which defines the content and timing for expert disclosures (unless the court directs otherwise, which it did not here).

HMIT's focus on these rules is disingenuous.  The court does not view the Proposed Experts as having been appropriately and timely disclosed in light of the two-and-a-half-month timeline set forth above and—most importantly—the bankruptcy court's multiple prior conferences and orders setting the scope of the hearing and associated discovery. HMIT's revelation (approximately 60 hours before the hearing on the HMIT Motion for Leave) that it

sought to offer expert testimony came far too late. HMIT never raised even the prospect of expert testimony at any point in its multiple filings with the bankruptcy court (which consisted of many hundreds of pages) or during the two status/scheduling conferences on the HMIT Motion for Leave. During the two status/scheduling conferences, this court repeatedly asked HMIT what it wanted to do at the hearing on the HMIT Motion for Leave (as far as there being evidence or no evidence—zeroing in on the inconvenient complication for HMIT that it had already put in some evidence, through the filing of the declarations of Mr. Dondero in support of its motion, and this, at the very least, would entitle the parties to cross-examine him on the statements contained in the declarations).  HMIT represented that it desired for the hearing to be conducted "on the pleadings only" and that it had or would withdraw the declarations of Mr. Dondero (it had not withdrawn the declarations as of the status/scheduling conferences).  But, alternatively, if there would be evidence, HMIT wanted to conduct expedited discovery of documents, fact depositions, and corporate representative depositions. [DE # 3791].  *HMIT made no mention of any experts*. Only after the bankruptcy court had ruled on HMIT's request for expedited discovery—and expressly limited the scope of discovery—did HMIT reveal its Proposed Experts [DE # 3818].  Obviously, the court would have fully vetted with the parties at the status/scheduling conferences the need for experts and the need for any discovery of them if HMIT mentioned it as a possibility.

Additionally, while HMIT focuses on the fact that FRBP 9014 excludes FRCP 26(a)(2)(b)'s requirements regarding expert witness disclosures and reports (absent the court directing otherwise), FRBP 9014 *does* include *FRCP 26(b)(4)(A)*, in contested matters, which provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." *See* FRBP 9014(b); FRBP 7026.  As alluded to above, this bankruptcy court had limited pre-hearing discovery to "depositions of Mr. Dondero and/or Mr. Seery" in reliance on

HMIT's representations, which omitted any reference to expert witnesses. By waiting until roughly 60 hours before the hearing to disclose the Proposed Experts, this resulted in Highland, Mr. Seery, and the Highland Claimant Trust not having sufficient time to seek to modify the court's prior status/scheduling orders, let alone take two expert depositions.

B.   *The Substantive Problems*.

Finally, on a substantive level, the Proposed Experts' testimony and documents are inadmissible because they will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Federal Rule of Evidence 702(a) provides that a witness who is qualified as an expert may testify in the form of an opinion or otherwise if, among other requirements, "the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."

The fact finder here at this stage, in the context of determining whether HMIT's proposed complaint asserts "colorable" claims under the gatekeeper provision of the Plan, obviously, is the bankruptcy judge. The judge, thus, may decide whether the Proposed Experts would help her analyze or understand an issue. This court is well within its discretion to conclude that the Proposed Experts would not advance the judge's analysis. This bankruptcy judge has had years of experience (both before and after her 17 years as a bankruptcy judge) with the topic of claims purchasing that sometimes occurs during a bankruptcy case. The court notes, anecdotally, that the activity of investing in distressed debt (which frequently even occurs during a bankruptcy case—sometimes referred to as "claims trading") is ubiquitous and has, indeed, been for a couple of decades. As noted by one scholar:

> The creation of a market in bankruptcy claims is the single most important development in the bankruptcy world since the Bankruptcy Code's enactment in

1978. [Citations omitted.] Claims trading has revolutionized bankruptcy by making it a much more market-driven process. [Citations omitted.] . . . The development of a robust market for all types of claims against debtors has changed the cast of characters involved in bankruptcies. In addition to long-standing relational creditors, like trade creditors or a single senior secured bank or bank group, bankruptcy cases now involve professional distressed debt investors, whose interests and behavior are often quite different than traditional relational counterparty creditors.

ADAM J. LEVITIN, BANKRUPTCY MARKETS: MAKING SENSE OF CLAIMS TRADING, 4 BROOK. J. CORP. FIN. & COM. L. 64, 65 (2010).

This judge has likewise had decades of experience with hedge funds and private equity funds. The court understands very well financial concepts such as return on investment, risk, and the handicapping of how certain events might impact recoveries. This court can take judicial notice that there was volatility in the capital markets during the time period of this case that would certainly factor into decisions to buy or sell claims.[5] This court understands the concepts of MNPI and fiduciary duties. The judge remembers very well when the possibility of an MGM-Amazon transaction flooded the news in late 2020 and 2021, and then became a reality. The court remembers asking the parties in the Highland case during open court about it, since it was widely known that Highland and its affiliates owned direct or indirect interests in MGM stock. This was before, by the way, certain of the claims purchases that are at issue here were made.

Finally, this judge has decades of experience with executive compensation in bankruptcy cases and in connection with post-confirmation trusts.[6] In fact, this court approved Mr. Seery's

---

[5] A court "can, of course, take judicial notice of stock prices." *Schweitzer v. Invs. Comm. of Phillips 66 Savings Plan*, 960 F.3d 190, 193 n.3 (5th Cir. 2020).

[6] This court even ran across one article that the above-signing judge published on the topic before she was a judge. *Bringing Home the Bacon, or Just Being a Hog? Employee and Executive Compensation Issues in Chapter 11*, 22nd Annual Bankruptcy Conference, The University of Texas School of Law (Nov. 2003) (co-authored with Frances Smith). The bankruptcy judge does not mean to suggest that a 20-year-old article makes anyone per se an expert. It

compensation early on during the bankruptcy case (in 2020), and his compensation was negotiated

by the former members of the Official Unsecured Creditors Committee, among others.  Mr. Seery's

compensation during this bankruptcy case was obviously subject to a motion, notice and a hearing,

and was fully disclosed.  Mr. Seery's base compensation now is the same as what this court

approved back in 2020. Certainly, in a bankruptcy case, one size does not fit all.  Highland is a

unique case that has involved great contentiousness and hundreds of millions of dollars of assets.

Mr. Seery's compensation reflects these circumstances, among other things.

In summary, with all due respect to the Proposed Experts, it is hard for this court to

conceive how they could help this court to understand the evidence or determine a fact in issue

relative to the gatekeeping motion—as contemplated by Fed. R. Evid. 702(a)—when this court

deals with the issues presented by motion, and similar issues, somewhat regularly.

Accordingly, the court will exercise its discretion under Fed. R. Evid 702(a) and exclude

the Proposed Experts testimony and HMIT Exhibits 39-52 relating to same.

A further opinion and order will be forthcoming on the HMIT Motion for Leave.

#### END OF MEMORANDUM OPINION AND ORDER####

---

is merely to further the point that a long-term bankruptcy judge with Chapter 11 experience typically has developed
expertise regarding executive compensation issues pre-and post-confirmation in Chapter 11 cases.