James J. Lee
  State Bar No. 12074550
  jimlee@velaw.com
Michael C. Lee
  State Bar No. 24109461
  mlee@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone: (214) 220-7700

*Attorneys for Lynn Pinker Hurst & Schwegmann, LLP and The Pettit Law Firm*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 19-34054-SGJ11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | |
| | § | CHAPTER 11 |
| | § | |
| *Reorganized Debtor* | § | |

**LYNN PINKER HURST & SCHWEGMANN, LLP AND THE PETTIT LAW FIRM'S MOTION TO STRIKE AND RESPONSE SUBJECT THERETO OPPOSING THE MOVANTS' MOTION REQUESTING AN ORDER REQUIRING LYNN PINKER AND PETTIT TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE GATEKEEPER PROVISION AND GATEKEEPER ORDERS**

TO THE HONORABLE STACEY G.C. JERNIGAN, CHIEF UNITED STATES BANKRUPTCY JUDGE:

**MOVANTS' MOTION IS A LITIGATION TACTIC INTENDED TO THWART LEGITIMATE STATE COURT DISCOVERY**

In their Motion for Contempt (the "Motion"), Movants[2] claim that the State Court Law Firms "pursued a claim" and violated this Court's Orders merely by serving and seeking to enforce third-party discovery subpoenas against certain Movants and others in the State Court

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

[2] Undefined capitalized terms in the introduction have the meanings set forth below. Capitalized terms not defined herein shall have the meanings set forth in the Motion.

Action. The Court should strike the Motion because Movants failed to follow the applicable bankruptcy rules of procedure and also failed to properly confer before filing it. Even if the Court accepted every inflammatory and incorrect statement in the Motion, it still would fail as a matter of law because issuing third-party discovery subpoenas does not constitute the pursuit of any claim or cause of action. The state court discovery asserts no actual or potential causes of action against Movants and seeks no monetary or equitable relief against them. Opinions from this Court and other courts provide that serving third-party discovery does not equal the pursuit of a claim. Seery's willing production of thousands of documents and agreement to appear for a deposition in the State Court Action without this Court's prior approval confirms that Movants do not believe third-party discovery constitutes pursuit of a claim.

Moreover, while there is zero evidence that the State Court Law Firms intend to file a claim against Movants or to do so without seeking this Court's permission, their intent is irrelevant because they have not engaged in any activity that would require this Court's permission under its Orders.

Knowing neither the law nor the facts support the Motion, Movants employ hardball litigation tactics by seeking to unjustifiably hold the State Court Law Firms in contempt. They offer no factual support for serious allegations of professional misconduct, other than their own self-serving, wholly uninformed, and incorrect opinions about the alleged motive of the State Court Law Firms in serving certain discovery. In truth, the State Court Action involves very serious and threatening conduct caused by Daugherty personally appearing outside Ellington's house, office, and the residences of family members at least 143 times, resulting in traumatic events such as children being afraid to play outside and women fearing for their safety and worrying about being secretly photographed in their own homes. After this Court remanded the

State Court Action, the State Court Law Firms discovered that Daugherty had provided to and discussed with Movants the photographs and information obtained during his illegal stalking activities. The State Court Law Firms appropriately pursued third-party discovery on behalf of their client to develop evidence relevant to his claims against Daugherty, as shown by the following chronology of events:

- On March 29, 2022, this Court heard Ellington's motion to remand, and counsel for Highland and the Trust appeared at the hearing. The Highland entities took no formal position regarding the motion to remand, and, despite being given an opportunity, failed to disclose Seery's contacts with Daugherty relating to the stalking. The Court thereafter granted the motion to remand.

- After remand, discovery in the State Court Action revealed extensive communications between Daugherty and Seery, among others, regarding the stalking. Indeed, Daugherty admitted in his deposition to creating an extensive dossier of materials regarding Ellington and his family and then sharing those materials with Seery, Andrew Clubock, supposedly the entire Creditors' Committee, and others.

- Following that revelation in the State Court Action, the State Court Law Firms served a series of non-party discovery subpoenas, including a subpoena directed to Seery.

- In response to the subpoena, Seery produced thousands of pages of documents without any motion practice or intervention from the state court and without arguing that prior approval from this Court was needed.

- The State Court Law Firms then served Seery a deposition subpoena.

- The State Court Law Firms and Seery's counsel reached an agreement on the scope and duration of the deposition and thereafter the deposition was scheduled for July 31, 2023.

- On July 14, 2023, Seery supplemented his production to include text messages he had with Daugherty. Despite some of those messages having been previously produced by Daugherty, many had not been produced – some of which were redacted.

- The State Court Law Firms postponed Seery's deposition to seek the redacted text messages. To that end, the State Court Law Firms filed a motion to compel Daugherty to produce the redacted messages. On September 1, 2023, the state court granted the motion and ordered any supplemental documents to be produced by September 15, 2023.

- On September 13, 2023, many weeks after the State Court Law Firms' last communication with Movants' counsel and ***without any attempt to confer with the State Court Law Firms or to seek relief in the State Court Action regarding the text messages***, Movants filed the Motion. Movants argue that the state court's order does not actually compel production of the redacted messages and then – ***incredibly*** – offer to submit the disputed messages to this Court to review *in camera* to confirm that point, an offer that was never made to the state court judge overseeing the discovery.

This Court need not delve into these factual details to reject the baseless Motion, but the chronology confirms that Movants filed the Motion for the improper purpose of preventing the state court from making a routine decision about the scope of third-party discovery. Movants motive is obvious; they seek for this Court to decide the appropriate scope of discovery in the State Court Action, as evidenced by their offer to provide the redacted text messages *in camera* to this Court without making any such offer in the State Court Action.  And to accomplish this, Movants are willing to wrongfully accuse the State Court Law Firms of contempt. Here, Movants' ends do not justify their means.

# TABLE OF CONTENTS

MOVANTS' MOTION IS A LITIGATION TACTIC INTENDED TO THWART
LEGITIMATE STATE COURT DISCOVERY ............................................................... 1

TABLE OF CONTENTS ....................................................................................... 5

INDEX OF AUTHORITIES ..................................................................................... 6

MOTION TO STRIKE ........................................................................................... 8

RESPONSE TO MOVANTS' MOTION FOR SHOW CAUSE ORDER ................................. 11

    A.    Movants' improperly attempt to implicate the Orders to challenge the
scope, not the propriety, of discovery in the State Court Action ......................... 16

    B.    Third-party discovery does not constitute pursuit of a "claim" or "cause of
action" ............................................................................................... 17

    C.    The State Court Law Firms have not and do not anticipate ever pursuing
claims or causes of action against Movants on their own behalf and would
never do so without first seeking this Court's permission .................................. 19

    D.    Courts, including this Court, hold that Rule 202 Petitions – which, unlike
third-party discovery, contemplate potential legal relief – don't constitute
pursuit of a claim or cause of action ........................................................... 21

    E.    Movants fail to present evidence – much less clear and convincing
evidence – that the State Court Law Firms seek to bring claims against any
Movant ............................................................................................... 22

CONCLUSION AND PRAYER ............................................................................... 24

CERTIFICATE OF CONFERENCE .......................................................................... 24

CERTIFICATE OF SERVICE ................................................................................. 25

# INDEX OF AUTHORITIES

**Cases**

*Askins v. Hagopian*,
  713 Fed. Appx. 380 (5th Cir. 2018) ........................................................................... 10

*Charitable DAF Fund LP v. Highland Capital Mgmt. LP*,
  No. 3:21-CV-01974-X, 2022 WL 4538466 (N.D. Tex. Sept. 28, 2022) ........................... 18, 19

*Dow Jones & Co., Inc. v. Highland Capital Mgmt., L.P.*,
  564 S.W.3d 852 (Tex. App.—Dallas 2018, pet. denied) ................................................ 18, 19

*In re Correra*, 589 B.R. 76, 125 (Bankr. N.D. Tex. 2018) .......................................... 23

*In re Highland Capital Mgmt., L.P.*,
  No. 19-34054-SGJ11, 2021 WL 3418657 (Bankr. N.D. Tex. Aug. 4, 2021) ................... 18, 22

*In re Pratt*,
  524 F.3d 580 (5th Cir. 2008) ................................................................................... 10

*RJ Mach. Co., Inc. v. Canada Pipeline Accessories Co. Ltd.*,
  No. A-13-CA-579-SS, 2015 WL 5139295 (W.D. Tex. Aug. 31, 2015) ............................ 21

*Taggart v. Lorenzen*,
  139 S. Ct. 1795, 204 L. Ed. 2d 129 (2019) ............................................................... 22, 23

*Tetra Tech, Inc. v. NSAA Investments Group, LLC*,
  No. 02-15-00297-CV, 2016 WL 3364876 (Tex. App.—Fort Worth June 16, 2016,
  no pet.) ............................................................................................................... 17, 18, 19

*Tompkins v. Cyr*,
  202 F.3d 770 (5th Cir. 2000) ................................................................................... 10

**Statutes**

11 U.S.C. § 101(5) ................................................................................................... 17

11 U.S.C. § 105(a) ................................................................................................... 23

**Rules**

FED. R. BANKR. P. 7004 .......................................................................................... 8, 11

FED. R. BANKR. P. 7005 .......................................................................................... 8, 11

FED. R. BANKR. P. 9011 .......................................................................................... 8, 9, 10, 11

FED. R. BANKR. P. 9011(b) ...................................................................................... 9

FED. R. BANKR. P. 9011(c) ...................................................................................... 9

FED. R. BANKR. P. 9011(c)(1)(A) ............................................................................. 9

FED. R. BANKR. P. 9014 .......................................................................................... 8, 11

FED. R. BANKR. P. 9014(b) ...................................................................................... 8

FED. R. BANKR. P. 9020 .......................................................................................... 8, 11

TEX. R. CIV. P. 202.................................................................................................................... 21

TEX. R. CIV. P. 202.1................................................................................................................. 21

**MOTION TO STRIKE**

Highland Capital Management, L.P. ("Highland"), Highland Claimant Trust (the "Trust"), and James P. Seery, Jr.'s ("Seery") (collectively, "Movants") motion (the "Motion") for an order requiring Scott Byron Ellington ("Ellington") and his counsel Lynn Pinker Hurst & Schwegmann, LLP ("Lynn Pinker") and The Pettit Law Firm ("Pettit Firm") (collectively, the "State Court Law Firms") to show cause why Ellington and the State Court Law Firms should not be held in contempt for violating the Gatekeeper Provision and Gatekeeper Orders (Doc. 3910)[3] is procedurally improper and must be stricken.

Civil contempt motions in bankruptcy cases are governed by FED. R. BANKR. P. 9020 which implicates Rule 9014 governing contested matters.[4] The Motion does not even mention Rule 9020 and Movants' failed to properly serve the State Court Law Firms under Rules 7004 and 7005.[5] Rather, Movants improperly rely upon Rule 9011 in attempt to have this Court impose sanctions against the State Court Law Firms for seeking discovery in the ***State Court Action*** and not for any conduct in this Court. Rule 9011(c) provides courts a vehicle to impose sanctions if "the court determines that [Rule 9011] subdivision (b) has been violated." *See*

---

[3] As used herein, "Gatekeeper Provision" means the relevant portions of the Confirmation Order ¶ AA (Doc. 1943, pp. 76-77). The term "Gatekeeper Orders" mean collectively, this Court's January 9, 2020 Order (Doc. 339) and July 16, 2020 Order (Doc. 854).  Herein after, the Gatekeeper Provision and the Gatekeeper Orders shall be collectively referred to as the "Orders."

[4] FED. R. BANKR. P. 9020 ("Rule 9014 governs a motion for an order of contempt made by … a party in interest."). Unless otherwise indicated, all rules referenced herein are Federal Rules of Bankruptcy Procedure.

[5] Rule 9014 requires that a "motion shall be served in the manner provided for service of a summons and complaint by Rule 7004." FED. R. BANKR. P. 9014(b). In turn, L.B.R. 9014-1 instructs that "[t]he movant shall serve the motion electronically, or by mail, in the manner provided by Bankruptcy Rule 7004. No summons is required. Following service of the motion, pursuant to Bankruptcy Rule 7005, movant shall file with the Bankruptcy Clerk a certificate of service, attached to the motion, evidencing the date and mode of service and the names and addresses of the parties served." Movants never properly served the Motion (merely emailing a copy to the State Court Law Firms) nor did they file a certificate of service with the Court.

FED. R. BANKR. P. 9011(c). Rule 9011(b) contemplates *representations to the court* (*i.e.*, this Court) in a "petition, pleading, written motion, or other paper." *Id.* at 9011(b). The State Court Law Firms have never appeared before, much less made any representations to, *this Court* in connection with seeking the discovery that Movants assert is contemptuous conduct. Thus, Rule 9011 is inapplicable.

Moreover, Movants wholly failed to comply with Rule 9011 by failing to provide the Law Firms *at least 21 days' notice prior to filing the Motion*. *See* FED. R. BANKR. P. 9011(c)(1)(A) (a "motion for sanctions may not be filed with or presented to the court unless, within 21 days *after service of the motion* ... the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.") (emphasis added).

Instead, Movants' counsel made a superficial attempt to confer by sending the State Court Law Firms an email at 11:47 a.m. on September 13, 2023, mere hours before filing the Motion. *See* Exhibit A, Declaration of Julie Pettit ("Pettit Dec.") ¶ 5, Ex. A-1; Exhibit B, Declaration of Michael K. Hurst ("Hurst Dec.") ¶ 5. Before the September 13, 2023 email, Movants' counsel had not made any effort to communicate with the State Court Law Firms *for nearly six weeks*. *See* Pettit Dec. ¶ 5, Hurst Dec. ¶ 5. Blindsided, Ms. Pettit requested a copy of the Motion that likely had been in the works for weeks – as Rule 9011 mandates – in an attempt to properly confer. *See* Pettit Dec. ¶ 5, Ex. A-1. Movants' counsel – Josh Levy – refused, erroneously citing Northern District of Texas LR 7.1 *which does not apply in this proceeding*. *See* L.B.R. 9029-3[6]; *see id.* (Mr. Levy stated that "[t]he local rules do not require us to provide advanced copies of our motions and we do not intend to do so. *See* N.D. Tex. Local Civ. R.

---

[6] "Other than the District Court Local Civil Rules adopted specifically in these Local Bankruptcy Rules or adopted in a separate order of the Bankruptcy Court, and District Court Local Civil Rules 8005.1 through 8010.4 regarding bankruptcy appeals, *the District Court Local Civil Rules do not apply in the Bankruptcy Court*." (emphasis added).

7.1(a)."). Movants indisputably failed to provide the State Court Law Firms a copy of the Motion at least 21 days before filing the same on September 13, 2023, and refused to meaningfully confer regarding the grounds of the Motion.

The Fifth Circuit has squarely addressed this issue, upholding a bankruptcy court's denial of a Rule 9011 motion for sanctions because the movant failed to provide the respondent a copy of the motion at least 21 days before filing with the court. *See In re Pratt*, 524 F.3d 580, 588 (5th Cir. 2008) ("We hold that the bankruptcy court did not abuse its discretion by denying [movant's] motion for Rule 9011 sanctions because [movant] failed to serve [respondent] with a copy of the motion at least twenty-one days prior to filing it with the court."); *see also Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000) (affirming district court's denial of Rule 11 motion because the movants' "failed to comply with the twenty-one-day [notice] rule.").

Further, counsel for Movants' unjustified threat of sanctions in emails to the State Court Law Firms (*see e.g.* Doc. 3912-12)[7] does not satisfy Rule 9011's notice requirement. *See In re Pratt*, 524 F.3d at 586 ("[movant] urges that such informal notice is sufficient to meet the service requirement because it (1) notified [respondent] of the possibility that [movant] would seek sanctions and (2) allowed [respondent] the opportunity to change his pleadings prior to [movant's] filing with the court. *We disagree*.") (emphasis added); *see also Askins v. Hagopian*, 713 Fed. Appx. 380, 381 (5th Cir. 2018) ("although Hagopian's counsel sent an e-mail stating that the lawsuit was 'frivolous and vexatious' to Askins' counsel nearly a year before filing the motion, ***this e-mail was insufficient to comply with the [21 day notice] safe harbor provision***.") (emphasis added).

---

[7] On July 25, 2023, Movants' counsel Josh Levy sent Ms. Pettit and Mr. Hurst an email advising that "Mr. Seery, Highland, and the Claimant Trust … will enforce all rights and seek appropriate sanctions."

Irrespective of Movants' other baseless attempts to smear the State Court Law Firms' good names and reputations, the Motion should be stricken because Movants failed to proceed under Rule 9020, failed to properly serve the State Court Law Firms under Rules 7004, 7005, and 9014, and Rule 9011 is inapplicable. Regardless, Movants fail to meet their basic notice requirements. More importantly, Movants' total failure to comply with the procedural rules governing motions for contempt and sanctions reveals the Motion for what it really is – a litigation maneuver intended to thwart legitimate discovery and to move discovery disputes before a court that Movants perceive as a more favorable forum.

**RESPONSE TO MOVANTS' MOTION FOR SHOW CAUSE ORDER**

## I.      STATEMENT OF FACTS

1.      The Pettit Dec. and Hurst Dec. are incorporated by reference in their entirety. The key facts therein are summarized below for the Court's convenience.

***Ellington Sues Daugherty to Make Him Stop Stalking and Harassing His Family and Him***

2.      On January 11, 2022, Ellington, represented by the State Court Law Firms, filed an Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against defendant Patrick Daugherty ("Daugherty") in the 101st Judicial District, Dallas County, Texas (the "State Court Action"). *See* Doc. 3912-2. As detailed in the State Court Action, Ellington alleged that Daugherty engaged in a campaign of dangerous harassment against his family and him seemingly as an escalation from the previous decade of litigation between Daugherty and either Ellington, personally, or parties with whom Ellington was affiliated. This included a 2019 lawsuit filed by Daugherty in Delaware Chancery Court that has been dismissed, which dismissal has been upheld. Hurst Dec. ¶ 7. Indeed, while the full extent of the harassment is unknown, Ellington documented "no less than 143 instances where Daugherty ***personally*** appeared outside his residence, his office, or the residences of his family

between February and December of 2021." Pettit Dec. ¶ 7; Hurst Dec. ¶ 7. Based on the facts either known or reasonably believed at the time the State Court Action was filed, "Ellington asserted claims *solely* against Daugherty for civil stalking and invasion of privacy." *Id.*

3.    The state court entered a temporary restraining order prohibiting Daugherty from coming within 500 feet of Ellington and his family on January 12, 2022. Pettit Dec. ¶ 8, Ex. A-2; Hurst Dec. ¶ 8.

***Daugherty's Failed Attempt to Remove the State Court Action***

4.    Daugherty filed a Notice of Removal of the State Court Action on January 18, 2022 (Adv. 22-03003, Doc. 1.) prompting Ellington's counsel at Baker & McKenzie LLP and Ross Smith, P.C.[8] to move to remand on January 25, 2022. *See id.*, Doc. 3.

5.    Daugherty's response opposing Ellington's motion to remand alleged, among other things, that "the State Court Action is nothing more than a transparent attempt by Ellington to attempt to thwart" Daugherty's proof of claim filed against Highland. *Id.*, Doc. 15, p. 3. Daugherty further alleged that "[t]he State Court Action is also an improper attempt to obtain discovery from Daugherty and third parties that Ellington and others could use to violate the Court's gatekeeping orders." *Id.*

6.    On March 30, 2022, this Court granted Ellington's motion to remand, finding no evidence that the remand action "somehow implicated the gatekeeping order – that was dangled out in the pleadings." *Id.*, Doc. 33: 21-23.

---

[8] Neither Lynn Pinker nor the Pettit Firm represented Ellington in the adversary proceeding initiated by Daugherty. *See* Pettit Dec. ¶ 4; Hurst Dec. ¶ 5.

*After the Remand, Ellington Discovers that Daugherty Had Shared the Fruits of His Stalking*

7.      When the State Court Action resumed in April of 2022, the parties fought over several procedural issues. Nonetheless, Ellington's application for temporary injunction was eventually set for hearing on September 1, 2022.

8.      In advance of the temporary injunction hearing, Ellington propounded written discovery requests on Daugherty, including requests for production, and then issued a deposition notice for July 14, 2022. Pettit Dec. ¶¶ 13-14; Hurst Dec. ¶¶ 13-14.

9.      Ellington served his first requests for production to Daugherty on May 15, 2022. Pettit Dec. ¶ 14, Ex. A-4; Hurst Dec. ¶ 14. Ellington served eight (8) requests for production, including requests for any communications referencing the materials created by the stalking (defined in the requests as the "Ellington Recordings") as well as any communications identifying others who either knew of or were involved in the stalking. *Id.* The requests did not specifically reference Seery or any other individual involved in the Highland Bankruptcy Case because at the time of service, neither Ellington nor his State Court Law Firms had any reason to suspect that such individuals had any connection to the stalking. *Id.*

10.      On July 11, 2022, in response to the requests for production, Daugherty produced text message conversations with Seery and others related to the stalking. Pettit Dec. ¶ 15, Ex. A-5; Hurst Dec. ¶ 15. This was the first time that Ellington or the State Court Law Firms learned that Daugherty had been communicating with Seery about the stalking.

11.      On July 14, 2022, a few days after those messages were produced, Mr. Hurst, in his capacity as counsel for Ellington in the State Court Action, took Daugherty's deposition wherein Daugherty testified that he had "investigated" Ellington in connection with a Delaware lawsuit Daugherty filed against Ellington and others. Pettit Dec. ¶¶ 16-19, Ex. A-6; Hurst Dec.

¶¶ 16-19. Notwithstanding Daugherty's professed motivation for his tortious behavior lasting at least a year, when confronted with questioning and the text messages that he had recently produced, Daugherty admitted providing Seery, members of Highland's creditors' committee, and others information and reports about Ellington obtained during the so-called "investigation." *Id.*

***Ellington Seeks Third-Party Discovery to Support Claims and Damages in State Court Action***

12.     Daugherty's deposition testimony and text messages prompted Ellington to serve a series of non-party discovery subpoenas on the individuals to which Daugherty stated he provided the stalking information. Pettit Dec. ¶ 23; Hurst Dec. ¶ 23. Pertinent to the Motion is the Subpoena Duces Tecum to Seery (Doc. 3912-5) served on November 2, 2022, requesting documents relating to claims, damages, and Daugherty's credibility in the State Court Action, including Daugherty's so-called "investigation."

13.     Seery complied with Ellington's subpoena without court intervention and ultimately produced documents on January 3, 2023. Pettit Dec. ¶ 25; Hurst Dec. ¶ 25. Importantly, Seery did not object to the aforementioned discovery on the basis that the State Court Law Firms had failed to get prior authorization from this Court pursuant to the Orders. *Id.*

14.     During the summer of 2023, Mr. Hurst and Ms. Pettit engaged in protracted dialogue with Seery's counsel regarding Seery's third-party deposition in the State Court Action. Pettit Dec. ¶ 26, Ex. A-10; Hurst Dec. ¶ 26. On July 13, 2023, Seery's counsel – Josh Levy – confirmed the parties' agreement regarding Seery's July 31, 2023 deposition and also explained that Seery would make a supplemental production of documents. *Id.*

15.     On July 14, 2023, Seery produced, for the first time, redacted text messages – including several redacted in their entirety – many which appear to be responsive to the

November 2, 2022 subpoena. Pettit Dec. ¶ 28; Hurst Dec. ¶ 28. This eleventh hour production of redacted information prompted Ellington to postpone Seery's deposition until Ellington could obtain a determination regarding the validity of the redactions. *Id.*

16.     Given that Seery willingly conferred with Daugherty on a regular basis and accepted the fruits of Daugherty's improper stalking activities, the State Court Law Firms reasonably wanted to discover what had been disclosed to Seery. *Id.*

17.     Ultimately, Ellington and his counsel decided to seek the redacted text messages from Daugherty, the other sender/recipient and a party to the State Court Action for reasons of efficiency and economy. Pettit Dec. ¶ 29; Hurst Dec. ¶ 29. When Daugherty refused, Ellington filed a motion to compel the redacted messages in the State Court Action which the court granted. *Id.*

18.     Pursuant to the order granting Ellington's motion to compel, the text messages needed to be produced no later than September 15, 2023. Pettit Dec. ¶ 30, Ex. A-12; Hurst Dec. ¶ 30. In a desperate effort to avoid having to disclose the contents of Seery's communications with Daugherty, Movants improvidently and preemptively filed the Motion on September 13, 2023.

## II.     THIRD-PARTY DISCOVERY REQUESTS IN THE STATE COURT ACTION DO NOT CONSTITUTE PURSUING A "CLAIM" OR "CAUSE OF ACTION" UNDER THE ORDERS

Movants' conclusory statements that certain third-party discovery requests in the State Court Action constitute pursuit of a "claim" or "cause of action" in violation of the Orders (*see e.g.* Mot. 15 - 16) is belied by the law and has no basis in fact. For example, Movants baldly allege, without any factual support, that "Ellington and [the State Court Law Firms] efforts to obtain discovery in the [State Court Action through third-party subpoenas] to develop potential claims against Highland and Seery constitutes 'pursu[ing] a claim or cause of action' under the Gatekeeper Provision as a matter of law." *Id.* 16. This is simply wrong.

### A. Movants' improperly attempt to implicate the Orders to challenge the scope, not the propriety, of discovery in the State Court Action

First, Movants' assertion that the purpose of the requested discovery is "to develop potential claims against Highland and Seery" is rank speculation. The State Court Law Firms have *never* threatened such claims.

Next, Seery's willing participation in discovery in the State Court Action by producing "tens of thousands of pages of documents, including text messages between Seery and Daugherty" (Mot. ¶ 6) and agreeing "to testify about certain topics" identified in a deposition subpoena (Mot. ¶ 24) confirms that third-party discovery does not constitute pursuing a claim or cause of action. Had Movants thought Ellington's third-party discovery requests – that Seery willing complied with – violated the Orders, then Movants would have brought their Motion long ago.[9] They did not.

Movants now run to this Court and accuse the State Court Law Firms of Contempt in order to challenge the *scope of discovery* in the State Court Action. They do so by unilaterally declaring that the Daugherty Settlement negotiations and certain redacted text messages between Seery and Daugherty are irrelevant to the State Court Action. *See* Mot. ¶ 27. This is a matter for the state court judge. Movants could have sought a protective order or offered to provide the redacted messages *in camera* in the State Court Action. Instead, they chose to file the Motion in an attempt to have this Court inject itself into the State Court Action discovery matters, thereby wrestling control of that discovery from the state court judge and overturning her prior rulings.

Notably, Movants offer to provide this Court the unredacted text messages for *in camera* review, an offer they never made to the state court judge, clearly demonstrating their desire to have this Court determine the scope of discovery in the State Court Action. *See* Mot. n. 10. Thus,

---

[9] Ellington sought discovery from Seery in the State Court Action on November 2, 2022.

Movants are improperly weaponizing the Orders – which are intended to prevent baseless litigation against Protected Parties – in an attempt to unilaterally thwart relevant discovery in the State Court Action, which should be the sole province of the state court judge.

**B.    Third-party discovery does not constitute pursuit of a "claim" or "cause of action"**

Movants seek to re-write the Orders by providing their own interpretation of what constitutes pursuit of a claim or cause of action. Yet Movants fail to provide any facts nor a plausible explanation demonstrating that discovery in the State Court Action equates to pursuing a claim and their early voluntary participation in discovery undermines their current argument.

Courts have held that third-party discovery does not constitute pursing a "claim" or "cause of action." In *Tetra Tech, Inc. v. NSAA Investments Group, LLC*, the court found that third-party discovery requests served on an indemnified party did not constitute a claim or cause of action and thus did not trigger the indemnifier's duty to defend against "any and all claims … [or] causes of action." No. 02-15-00297-CV, 2016 WL 3364876, at *3-5 (Tex. App.—Fort Worth June 16, 2016, no pet.). The court reasoned that a subpoena "is not the type of relief to which a prevailing litigant would be entitled at the conclusion of the lawsuit" and does not meet Black's Law Dictionary definition of "claim" – "A demand for money, property, or a legal remedy" – because "subpoenas and depositions are not legal remedies." *Id.*[10]

Similarly, in a case involving Highland Capital and Daugherty, the Dallas Court of Appeals affirmed the trial court's finding that a third-party subpoena does not constitute a "legal action" under the Texas Citizens Participation Act because "[a] third-party discovery subpoena

---

[10] The State Court Law Firms recognize that the terms "claim" or "cause of action" are not defined in the Orders. But, to the extent the Court intended for the Bankruptcy Code's definition of "claim" to apply, the result is the same because the third-party subpoenas in the State Court Action do not seek any right to payment and discovery is not a claim. *See* 11 U.S.C. § 101(5) ("claim means right to payment" or "equitable remedy for breach of performance if such breach gives rise to a right to payment.").

does not seek legal or equitable relief in the traditional sense" and "**subpoenas and depositions are not legal remedies**." *See Dow Jones & Co., Inc. v. Highland Capital Mgmt., L.P.*, 564 S.W.3d 852, 857 (Tex. App.—Dallas 2018, pet. denied) (emphasis added).

Here, Movants, like the movants in *Tetra* and *Dow Jones*, urge this Court to equate third-party discovery with pursuit of a legal remedy. But, the third-party subpoenas in the State Court Action, like the subpoenas in *Tetra* and *Dow Jones*, do not constitute pursuit of a "claim" or "cause of action" under the Orders because Ellington is seeking information solely to support his claims against Daugherty in the State Court Action. There is no evidence that Ellington, much less the State Court Law Firms, have made any demand for money, property, or a legal remedy against any Movant.

The State Court Law Firms' conduct here, while decisively different from this Court's prior finding that Dondero, his counsel, and others violated the Orders, finds support in *In re Highland Capital Mgmt., L.P.*, No. 19-34054-SGJ11, 2021 WL 3418657, at *12 (Bankr. N.D. Tex. Aug. 4, 2021) (Jernigan, C.J.), aff'd in part, vacated in part sub nom. *Charitable DAF Fund LP v. Highland Capital Mgmt. LP*, No. 3:21-CV-01974-X, 2022 WL 4538466 (N.D. Tex. Sept. 28, 2022). As this Court knows, the Contemnors there **filed a complaint** in the Northern District of Texas implicating Seery over fifty times and, a week later, filed a motion for leave to amend to add Seery as a defendant in the action. *Id.* at *2. This Court held that '[t]he Alleged Contemnors were pursuing litigation **when they filed the Seery Motion** in the District Court (and maybe even as early as **when they filed the Compliant** mentioning Mr. Seery 50 times and describing him as a 'potential party.').'" *Id.* at *12 (emphasis added). The Contemnors action of filing a complaint and filing a motion for leave to add Seery is drastically different from Ellington seeking third-party discovery to support his claims against only Daugherty in the State

Court Action. And it is axiomatic that third-party subpoena practice does not seek a legal remedy and does not constitute the pursuit of a claim or cause of action. *See Tetra Tech, Inc. v. NSAA Investments Group, LLC*, 2016 WL 3364876, at *3-5; *see Dow Jones & Co., Inc. v. Highland Capital Mgmt., L.P.*, 564 S.W.3d at 857.

Movants' cite *Charitable DAF* (Mot. ¶ 37(c)) but fail to acknowledge the District Court's clarification that "[r]equesting leave to amend differs from legal research or client communications because 'a party who moves to amend usually does intend to amend.'" *Charitable DAF Fund LP v. Highland Capital Mgmt. LP*, 2022 WL 4538466, at *3 (internal citation omitted). Judge Starr indicated that investigatory actions (*i.e.* research, discovery, conferring with a client) do not constitute pursuit of a claim or cause of action. *Id.*

### C. The State Court Law Firms have not and do not anticipate ever pursuing claims or causes of action against Movants on their own behalf and would never do so without first seeking this Court's permission

Movants' allegations that third-party discovery subpoenas directed to Seery and Judge Nelms in the State Court Action are vehicles to pursue claims against Protected Parties are unsupported and purely speculative. Movants have not (and cannot) present a single shred of evidence showing the State Court Law Firms contemplate pursuing a claim or cause of action against them on their own behalf. Movants well know that the State Court Law Firms have never acted in other than a representative capacity and thus they should not have been named in the Motion.

First, no Movant is a named party in the State Court Action, nor involved in any other proceeding where the State Court Law Firms are parties or otherwise involved. Movants could secure the relief they seek had they only named Ellington in the Motion; Movants' naming of the State Court Law Firms is an obvious litigation tactic designed to intimidate the State Court Law Firms from pursuing discovery which Movants wish to avoid.

Second, Movants' assertions that Ellington is using the State Court Action to aid Dondero or Dugaboy (Mot. ¶¶ 7, 23) are baseless and speculative. Notably, the proceeding wherein Movants accuse the State Court Law Firms of aiding Dugaboy occurred in this Court which clearly was not a violation of the Orders. The State Court Law Firms were also unaware of Dugaboy's motion to compel imaging of Seery's iPhone until ***Movants' filed the Motion*** and there is no allegation nor evidence that the State Court Law Firms provided any State Court Action discovery to Dugaboy or Dondero. *See* Pettit Dec. ¶ 31, Hurst Dec. ¶ 31. In fact, Ms. Pettit and Mr. Hurst have never spoken to Dondero about this matter. *See* Pettit Dec. ¶ 32, Hurst Dec. ¶ 32. The State Court Law Firms, as they are obligated to do, shared discovery in the State Court Action with Ellington only. If Seery wanted to prevent dissemination of certain discovery he produced, then he should have sought a protective order in the State Court Action. He did not. Finally, Movants' notion that Ellington seeks discovery to use in the October global mediation (Mot. ¶ 7) is objectively wrong; that mediation already occurred.

Third, Judge Nelms is not a Movant nor is he represented by Movants' counsel. Thus, Movants' repeated reliance on discovery involving Judge Nelms as evidence of contempt is suspect and has no relevance here. In any event, Movants' note that Judge Nelms' counsel indicated "that Judge Nelms 'was not involved in and has no knowledge of, the matters at issue in' the Stalking Action" and offered a declaration of Judge Nelms to that effect. Mot. ¶ 28. The State Court Law Firms consider this to be a key fact in the State Court Action, but fear a declaration would be challenged as hearsay at trial. Therefore, Ellington seeks Judge Nelms' deposition to secure his testimony in admissible form.[11]

---

[11] Likewise, John Dubel is not a Movant, neither Ellington nor the State Court Law Firms are pursuing claims against him, and there is a similar justification for seeking his deposition.

Finally, the State Court Law Firms represent to this Court that they have no intention of pursuing any claims or causes of action against any Movant on their own behalf or anyone else's behalf. *See* Pettit Dec. ¶ 32, Hurst Dec. ¶ 32. Should that change, the State Court Law Firms would first come to this Court. *See id.*

### D.    Courts, including this Court, hold that Rule 202 Petitions – which, unlike third-party discovery, contemplate potential legal relief – don't constitute pursuit of a claim or cause of action

Texas Rule of Civil Procedure 202 provides that "[a] person may petition the court for an order authorizing the taking of a deposition … to investigate a potential claim or suit." TEX. R. CIV. P. 202.1. Thus, Rule 202 contemplates a party investigating a claim (*i.e.* preparing for suit) which is decisively different from merely seeking third-party discovery to support claims against a ***different*** party.

Notwithstanding, Courts have consistently refused to find that a Rule 202 petition constitutes a "claim" or "cause of action." For instance, "[c]ourts hold consistently that a Rule 202 petition is ***a request for discovery, not a claim, demand, or cause of action***." *RJ Mach. Co., Inc. v. Canada Pipeline Accessories Co. Ltd.*, No. A-13-CA-579-SS, 2015 WL 5139295, at *5 (W.D. Tex. Aug. 31, 2015) (emphasis added). A Rule 202 petition is "ultimately a petition that asserts ***no substantive claim or cause of action upon which relief can be granted.*** A successful rule 202 petitioner simply acquires the right to obtain discovery – discovery that may or may not lead to a claim or cause of action." *Id.* (internal quotation omitted) (emphasis added). Thus, the *RJ Mach.* court found that the defendant's Rule 202 petition did not violate a covenant "to refrain from making any claim(s) or demand(s) against [plaintiff]" because the defendant "[was] investigating potential causes of action through preliminary discovery." *Id.* at *5-6.

This Court has similarly held that a Rule 202 petition is not a removable "claim" or "civil action." *See In re Highland Capital Mgmt., L.P.*, No. 19-34054-SGJ11, 2022 WL 38310, at *9 (Bankr. N.D. Tex. Jan. 4, 2022) (Jernigan, C.J.).

If a Rule 202 petition – which contemplates potential legal action against a party – does not qualify as a claim, demand, or cause of action, then a discovery subpoena – which does not contemplate legal action against the third-party – cannot constitute a claim or cause of action either. Movants' assertions to the contrary are simply wrong.

### E.   Movants fail to present evidence – much less clear and convincing evidence – that the State Court Law Firms seek to bring claims against any Movant

Movants' recognize that a civil contempt finding requires a showing, by clear and convincing evidence, that among other things, the respondent failed to comply with the court's order. Mot. ¶ 41 (citing *In re Highland Capital Mgmt., L.P.*, 2021 WL 3418657, at *12). There is no evidence – much less clear and convincing evidence – showing that the State Court Law Firms have pursued a claim or cause of action against any Movant in violation of the Court's Orders.

The United States Supreme Court, addressing an analogous situation, held that "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799, 204 L. Ed. 2d 129 (2019) (emphasis in original). Stated differently, "a court [may] impose civil sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Id.* at 1801.

Movants fail to present any evidence, let alone clear and convincing evidence, that seeking third-party discovery on behalf of Ellington in the State Court Action objectively violated the Orders. Contrarily, and for all the reasons articulated above, there is an objectively

reasonable basis for the State Court Law Firms concluding that third-party discovery in the State

Court Action does not constitute pursuit of a claim or cause of action under the Orders, not the

least of which is Seery's earlier voluntary production of discovery without objection or requiring

this Court's prior approval. Therefore, fair ground for doubt exists as to whether the Orders

prohibited state court discovery absent this Court's permission. Thus, under *Taggart*, the State

Court Law Firms' seeking discovery from Movants on behalf of Ellington does not support a

contempt finding.

This is especially so given the legitimate purpose of the requested discovery – to test

Daugherty's credibility in light of his sworn testimony as to why he stalked Ellington and his

family. Such discovery is also relevant to actual and exemplary damages as it likely will show

that Daugherty's stalking was motivated by malice and potential financial reward which

demonstrates bad faith. Seery chose to confer with Daugherty and readily accepted the fruits of

stalking, but now wants to avoid discovery of those communications. One can only wonder what

is so sensitive in the communications regarding the stalking allegations that would cause Seery to

accuse the State Court Law Firms of contempt in order to avoid disclosure?

Finally, Movants' request for this Court to hold the State Court Law Firms in contempt

under 11 U.S.C. § 105(a) is unwarranted. As this Court explained, "a decision to invoke the

court's inherent power to sanction requires a finding that bad faith or willful abuse of the judicial

process occurred [and] [t]he finding of bad faith must be supported by clear and convincing

proof." *In re Correra*, 589 B.R. 76, 125 (Bankr. N.D. Tex. 2018) (Jernigan, C.J.) (imposing

sanctions on the debtor and the debtor's assistant for the intentional destruction of evidence). The

conduct Movants complain of here – the State Court Law Firms representing their client by

seeking third-party discovery in the State Court Action – is a far cry from conduct that warrants

sanctions (*i.e.* intentional spoliation of evidence). Movants have not (and cannot) direct this Court to any evidence – much less clear and convincing evidence – remotely suggesting that the State Court Law Firms acted willfully or in bad faith to violate the Orders by seeking third-party discovery for the State Court Action.

## CONCLUSION AND PRAYER

For all the foregoing reasons, the Motion should be stricken and the relief requested therein denied.

Respectfully submitted,

*/s/ James J. Lee*
James J. Lee
  State Bar No. 12074550
  jimlee@velaw.com
Michael C. Lee
  State Bar No. 24109461
  mlee@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas  75201
Telephone: (214) 220-7700

*Attorneys for Lynn Pinker Hurst &
Schwegmann, LLP and The Pettit Law Firm*

## CERTIFICATE OF CONFERENCE

I certify that on October 23, 2023, I emailed counsel for Movants, John A. Morris and Josh S. Levy, regarding Movants' position on the State Court Law Firms' Motion to Strike. Highland and the Trust's counsel, John A. Morris, indicated Highland and the Trust are opposed. At the time of filing, Mr. Seery's counsel has not responded or indicated a position, therefore I assume Mr. Seery will oppose the Motion to Strike.

*/s/ James J. Lee*
James J. Lee

## CERTIFICATE OF SERVICE

I certify that on October 24, 2023, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

*/s/  James J. Lee*
James J. Lee