# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO.  19-34054-SGJ11 |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P.,[1] | § | CHAPTER 11 |
| | § | |
| *Reorganized Debtor* | § | |

## DECLARATION OF JULIE PETTIT

I, Julie Pettit, declare under penalty of perjury as follows:

### A. Introduction.

1.       My name is Julie Pettit. I am over eighteen (18) years of age, I am of sound mind, I never been convicted of a felony, I am capable of making this declaration, and I am fully competent to testify unto the matters stated herein.

2.       I am able to swear, and I hereby do swear, that the facts stated in this declaration are true and correct and are within my personal knowledge.

3.       I am an attorney of record for Scott Byron Ellington ("Ellington") in the lawsuit styled *Scott Byron Ellington v. Patrick Daugherty*, Cause No. DC-22-00304, pending in the 101st Judicial District Court in Dallas County, Texas (the "State Court Action").

4.       Though I am counsel for Ellington in the State Court Action, I have never made an appearance in any capacity in the bankruptcy matter styled *In re: Highland Capital Management, L.P.*, Case No. 19-34054-sgj11, pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Highland Bankruptcy").

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

5.      I am in receipt of Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery, Jr.'s (collectively, the "Movants") motion for an order to show cause (Doc. 3910) (the "Motion"). I learned of Movants' intent to file the Motion on September 13, 2023, the day it was filed. Specifically, at 11:47 a.m. that day, I received an email from Joshua S. Levy, counsel for Seery, who advised of the imminent filing of the Motion. This was the first correspondence I received from Highland's or Seery's counsel since late July 2023. While the subject line of the email was "meet and confer," Levy stated that his email was merely a "courtesy," and then refused to send me a draft of the Motion so I could meaningfully confer regarding his client's complaints. A true and correct copy of the September 13, 2023 email is attached hereto as **Exhibit A-1.**

6.      The Motion contains misstatements of fact, omits other important facts, and presents a misleading depiction of the journey that the State Court Action has taken to arrive at the point where Ellington is now seeking discovery from Seery, among others.

**B.  Ellington sues Daugherty in the State Court Action for civil stalking and invasion of privacy.**

7.      On January 11, 2022, Ellington filed his original petition and application for temporary restraining order in the 101st Judicial District Court in Dallas County, Texas. A true and correct copy of the petition is filed at Doc. 3912-2. As detailed in the petition, Ellington alleged that Patrick Daugherty ("Daugherty") engaged in a campaign of dangerous harassment against him and his family seemingly as an escalation from the previous decade of litigation between Daugherty and either Ellington personally or parties that Ellington was aligned with, including a 2019 lawsuit filed by Daugherty in Delaware Chancery Court. Indeed, while the full extent of the harassment is unknown, Ellington, though his security expert, documented no less than 143 instances where Daugherty ***personally*** appeared outside Ellington's residence, his office, or the

residences of his family between February and December of 2021. Based on the facts either known or reasonably believed at the time the petition was filed, Ellington asserted claims *solely* against Daugherty for civil stalking and invasion of privacy.

8.      On January 12, 2022, the day after Ellington filed the petition, the Texas state district court signed and entered a temporary restraining order ("<u>TRO</u>") prohibiting Daugherty from being within 500 hundred feet of Ellington or his family. A true and correct copy of the TRO is attached hereto as **<u>Exhibit A-2</u>**.

**C.  Daugherty removed the State Court Action to this Court in an unsuccessful attempt to connect the lawsuit with the Highland Bankruptcy.**

9.      On January 18, 2022, Daugherty removed the State Court Action to this Court. On January 25, 2022, Ellington filed a motion to remand in this Court. Ross & Smith, PC and Baker & McKenzie LLP represented Ellington in this Court on his motion to remand. Neither The Pettit Law Firm nor Lynn Pinker Hurst Schwegmann, LLP represented Ellington in connection with the remand.

10.     On March 29, 2022, the Court held a hearing on Ellington's motion to remand. As previously mentioned, I did not represent Ellington in connection with any proceedings in this Court. Accordingly, I was not present at the hearing. However, Baker & McKenzie LLP and Ross Smith, P.C. subsequently provided me a copy of the hearing transcript. A true and correct copy of the transcript given to me is attached hereto as **<u>Exhibit A-3</u>**.

11.     On April 11, 2022, the Court signed and entered an order remanding the lawsuit back to the state court.

**D. After remand of the State Court Action, the parties engaged in discovery revealing that Daugherty sent documentation of his stalking to a number of third-parties, including Seery and several members of the creditors' committee for the Highland Bankruptcy.**

12.     When the State Court Action resumed in April of 2022, the parties fought over several procedural issues. Nonetheless, Ellington's application for temporary injunction was eventually set for hearing on September 1, 2022.

13.     In advance of the temporary injunction hearing, Ellington propounded written discovery requests on Daugherty, including requests for production, and then issued a deposition notice for July 14, 2022.

14.     Ellington served his first requests for production to Daugherty on May 15, 2022. A true and correct copy of these requests are attached as **Exhibit A-4**. Ellington served eight (8) requests for production, including requests for any communications referencing the materials created by the stalking (defined in the requests as the "Ellington Recordings") as well as any communications identifying others who either knew of or were involved in the stalking. *See* Ex. A-4 at RFP Nos. 2, 8. The requests did not specifically identify Seery or any other individual involved in the Highland Bankruptcy because at the time of service, we had no reason to believe that such individuals received materials Daugherty obtained and compiled in connection with the stalking.

15.     In response to the requests for production, Daugherty produced what appeared to be fragmented text message conversations with Seery and others connected to the stalking. A true and correct copy of the first text messages produced on or about July 11, 2022 by Daugherty are attached hereto as **Exhibit A-5.**

16.    During his deposition, Daugherty did not deny that he appeared uninvited at Ellington's home, workplace, or the homes of Ellington's family. Instead, Daugherty claimed that he engaged in these activities to investigate Ellington's assets that was somehow connected to Daugherty's claims against Ellington in a Delaware lawsuit. A true and correct copy of pertinent excerpts from Daugherty's deposition is attached hereto as **Exhibit A-6.** The following exchange during Daugherty's deposition neatly demonstrates his stated rationale for his actions:

> Q. (By Mr. Hurst) Okay. And what you were doing, whether you agree that it was 140-something times at least or not, you're saying that what you were doing is a, quote, investigation?
>
> A. My actions were purely investigatory.
>
> Q. And investigatory for what reason?
>
> A. To inventory, identify and discover assets of Scott Ellington's.
>
> Q. Why is that important to you?
>
> A. Because he has a history of transferring assets out of entities where I owned or had an economic interest or other entities like Highland Capital.
>
> Q. Okay. And –
>
> A. And its affiliates.
>
> Q. Okay. And so what were you doing in this investigation, if you will, in the context of?
>
> A. I don't understand your question.
>
> Q. Why were you investigating his assets?
>
> A. I just told you.
>
> Q. You told me that you're concerned he was going to transfer assets. But why is that important to you?
>
> A. I had litigation against him in Delaware as a defendant.

*See* Ex. A-6 at 56:23-57:22.

17.     However, during his deposition, Daugherty disclosed that he sent the information he gathered from the stalking activities not to individuals connected to the Delaware lawsuit – but to individuals that I understand are connected with the *Highland Bankruptcy*, including Seery:

Q. Do you have a compilation, as you just testified to a minute ago?

A. Of the data?

Q. Yes.

A. In various forms, yes.

Q. Where is that?

A. I drafted emails that included that information.

Q. Have you provided those to us?

A. No.

Q. Have you provided the compilations?

A. No.

Q. To whom did you provide these emails and compilations?

A. To the creditors' committee.

Q. Who in particular did you address it to? Sorry.

A. Can I finish? Yeah, answer your question.

MS. DANIELS: Allow him to answer your questions before you interrupt him.

A. ***To the creditors' committee for the Highland Capital bankruptcy***.
To **Matt Clemente**, who is counsel for the creditors' committee.
To **Andrew Clubok**, who is a representative of UBS on the creditors' committee.

> To – I can't say for sure. I might have emailed everybody on
> the committee. I don't know. I generally – I don't know if I included
> Josh Terry or not. I don't know if I included everybody.
>         And then to **Jim Seery**, who is the CEO of Highland.
>         To – what's the guy's name – the litigation trustee on the
> Highland estate. What was his name? It's **Marc Something,
> Kirshner**.
>         So **various members of the Quinn Emanuel legal team**.
>
> Q. (By Mr. Hurst) Who else?
>
> A. There may be more. I just don't recall off the top of my head.

*See* Ex. A-6 at 59:21-61:10 (emphasis added).

18.     According to Daugherty, Seery and the creditors' committee "appreciated" the

information:

> Q. Did anybody tell you that they approved of your investigation?
>
> A. I wouldn't use that word.
>
> Q. Is there a word that you would use instead of approved of your
> so-called investigation?
>
>         MS. DANIELS: Objection, form.
>
> A. Appreciated.
>
> Q. (By Mr. Hurst) Who would you say appreciated your so-called
> investigation of Scott Ellington and perhaps others?
>
>         MS. DANIELS: Objection, form.
>
> A. Of the assets, right; that's what I was doing.
>         People, representatives of the creditors' committee, Marc
> Kirschner, the litigation trustee, Quinn Emanuel lawyers, the Sidley
> lawyers, Seery himself. There may be others.

*See* Ex. A-6 at 104:11-105:2.

19.     Daugherty testified that he "investigated" Ellington for the Delaware litigation, but

admitted to distributing the same information to the entire creditors' committee in the *Highland*

*Bankruptcy*. I understand that the Delaware lawsuit against Ellington and the Highland Bankruptcy are not connected, so it is unclear why Daugherty distributed this information to the creditors' committee if his investigation was to look into assets connected with the Delaware litigation. In fact, when Michael Hurst, my co-counsel in the State Court Action, attempted to ask follow-up questions about this inconsistency in the deposition, Daugherty's counsel objected and instructed Daugherty not to answer. *See* Ex. A-6 at 61:20-63:20.

### E. At the hearing on Ellington's application for temporary injunction, Daugherty again referenced the Highland Bankruptcy – this time as a *defense* to Ellington's claims for stalking and invasion of privacy.

20.     Ellington's application for temporary injunction hearing proceeded as noticed on September 1, 2022. During opening statements, Daugherty's counsel, the same lawyer who argued the motion to remand in the bankruptcy court, gave a lengthy presentation about a supposed scheme to hide assets from Highland and the bankruptcy court. A true and correct excerpt of opening statements is attached hereto as **Exhibit A-7**. The following excerpt illustrates Daugherty's heavy emphasis on events relating to the Highland Bankruptcy during opening statement:

> So why is that important? Well, in addition to that, as part of that lawsuit, Mr. Daugherty was engaging in discovery, and at the same time Highland had filed bankruptcy. In early 2021, Mr. Dondero testified in the Highland bankruptcy case that both he and Mr. Ellington had destroyed their cell phones. Well, that was problematic because at the time Mr. Ellington and Mr. Dondero were still parties, and are still parties, in Mr. Daugherty's Delaware action, and they were subject to discovery from those phones under the purview of a special master. So they engaged in the spoliation.
>
> ***Additionally, the information on those phones would seemingly be relevant to claims that were going on in the Highland bankruptcy that the creditor's committee was bringing, and Mr. Daugherty was a creditor of Highland at the time.*** So Mr. Daugherty at that point had determined that the information that he was trying to get in discovery wasn't coming to him, and he believed

he needed to conduct further investigation on his own of Mr. Ellington, including what Mr. Ellington's assets were that might be available to satisfy Mr. Daugherty's underlying judgment.

***

…. But why did the investigation matter? Well, based on Mr. Daugherty's surveillance of Mr. Ellington's office and his house and being able to get license plates of vehicles that were parked there, he eventually discovered a web of various entities that Mr. Ellington and Mr. Dondero were using to siphon assets from the reach of creditors, both Mr. Daugherty and then ***the Court-appointed creditor's committee*** in the Highland bankruptcy.

So let's walk through one example of this. The first is that there was a lawsuit involving a Highland affiliate and UBS in which UBS is paying a substantial judgment, nine figures initially that grew to a billion dollars, and Mr. Ellington came up with the idea of setting up a dummy entity in the Cayman Islands that was going to provide an after-the-event insurance policy that it sold to the Highland affiliate for less than the face value of the assets which the Highland affiliate actually owned. In other words, it was a fraudulent transfer, and all of this was Mr. Ellington's idea as he admitted in the Highland bankruptcy.

As part of this scheme, Mr. Ellington and Mr. Dondero set up all of these entities to run this through, including at the top you'll see there's an entity called SAS Holdings SPV Limited. That's important here because you're going to hear some testimony about it later on today that it has implications in this lawsuit itself.

Well, not only did they use these entities to create these fraudulent transfers, Mr. Ellington, Mr. Dondero, Mr. Leventon, who, by the way, is on the call listening to this hearing and is apparently Mr. Ellington's counsel, then actively concealed the existence of their scheme from ***new management of Highland that had taken over in the course of the Highland bankruptcy, and they also concealed it from the bankruptcy court, and they concealed it from UBS.*** In fact, Mr. Ellington lied about it in e-mails saying these were just ghost funds that had no assets whatsoever which actually wasn't the case.

*See* Ex. A-7 at 22:5-24:23 (emphasis added).

21.     When the state court judge questioned the relevance of any of those allegations regarding the Highland Bankruptcy, counsel stated:

> MR YORK: Your Honor, the reason this is relevant goes to the purpose and the intent for why Mr. Daugherty engaged in the investigation activities he engaged in; not because he was attempting to intimidate, harass or threaten Mr. Ellington.

*See* Ex. A-7 at 26:1-5. In other words, Daugherty had interjected the parties' actions relating to the Highland Bankruptcy as a defense to Ellington's state law claims for civil stalking and invasion of privacy.

22.     The state court granted Ellington's application for temporary injunction and ordered Daugherty to stay away from Ellington and his family. A true and correct copy of the Temporary Injunction order is attached hereto as **Exhibit A-8**.

**F. After the state court issued the temporary injunction, Ellington refocused on discovery and served non-party discovery subpoenas to better understand the facts and circumstances of the stalking.**

23.     After the hearing, Ellington followed-up on the information learned during Daugherty's deposition by serving targeted discovery requests to obtain the communications Daugherty had with certain individuals, including Seery, regarding his "investigation" of Ellington. Ellington served the following discovery:

a.  On September 8, 2022, Ellington served his third requests for production, which contained specific requests for Daugherty to produce his communications with lawyers at Sidley Austin, lawyers at Quinn Emanuel, lawyers at Latham & Watkins, and lawyers at Pachulski Stang Ziehl & Jones, among many others.

b.  On October 6, 2022, Ellington served a notice[2] of intent to serve a non-party discovery subpoena on John Dubel.

---

[2] Per Texas Rule of Civil Procedure 205.2, a party must serve notice of intent to serve a non-party discovery subpoena at least ten (10) days before serving the subpoena. I am including in this declaration references to the notices as opposed to the actual subpoenas merely to create an accurate timeline of when Ellington first attempted to formally request documents from certain non-parties by use of the discovery process.

c.   On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Glacier Lake Partners, LP.

d.   On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on John Morris.

e.   On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Matthew McGraner.

f.   On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Matthew Clemente.

g.   On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Paige Montgomery.

h.   On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Marc Kirschner.

i.   On October 7, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Andrew Clubok.

j.   On October 19, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Eric Felton.

k.   On October 19, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on the Honorable Russel Nelms.

l.   On October 19, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Carl Moore.

m.   On October 19, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Joshua Terry.

n.   On October 20, 2022, Ellington served a notice of intent to serve a non-party Michael Colvin.

24.    The Motion references the subpoena served on Judge Nelms. I was party to a lengthy email exchange with Judge Nelms' counsel regarding the subpoena. A true and correct copy of that email thread is attached hereto as **Exhibit A-9**. Unlike Seery, Judge Nelms disclaimed any communications with Daugherty. However, as I explained to Judge Nelms' counsel, we had a good faith basis to believe Judge Nelms had knowledge of facts and circumstances relating to the

Daugherty Settlement. Discovery is still ongoing, but based on information produced thus far, we would like to investigate Daugherty's stalking of Ellington as a possible *quid-pro-quo* in exchange for a more beneficial settlement with Highland. Judge Nelms apparent lack of knowledge regarding the stalking seems curious and raises questions regarding Daugherty's motivation behind the decision to omit a member of the creditors' committee. Indeed, the timeline as we know it would support that allegation as after Daugherty transmitted the information he gathered on Ellington to Seery and members of the creditors committee, it is my understanding that he ultimately received a settlement that was materially better than what had been previously agreed to.

### G. Seery substantively responded to the discovery subpoena served on him, produced documents, and agreed to a deposition to take place on July 31, 2023.

25.    Seery received and served formal responses and objections to Ellington's discovery subpoena in the State Court Action first on December 9, 2022, and then served amended responses and objections on December 23, 2022. Seery ultimately produced documents on January 3, 2023. Seery never filed or served any objections to the aforementioned discovery on the basis that Ellington (or Lynn Pinker and the Pettit Firm) failed to obtain prior authorization from the Highland Bankruptcy Court.

26.    In June of 2023, I along with my co-counsel, Michael Hurst, began a dialogue with Seery's counsel to schedule his deposition. A true and correct copy of this email chain is attached hereto as **Exhibit A-10**. After several cooperative emails and phone calls, we reached agreement with Seery's counsel regarding the deposition including date and time, narrowing of the topics, attendance of third parties (*i.e.*, John Morris), and Seery's supplemental production in advance of the deposition. As a result of the agreements above, Ellington issued an amended subpoena (the negotiated deposition topics were attached thereto as Exhibit A) and served via email on Seery's

counsel. A true and correct copy of the amended subpoena is attached hereto as **Exhibit A-11**.

Seery's counsel accepted service of the subpoena via email and then sent a reply email

memorializing the parties' agreements:

On Thu, Jul 13, 2023 at 9:52 AM Levy, Joshua S. <JLevy@willkie.com> wrote:

Thanks Laura, we agree to accept service. Thanks also to Michael and Julie for the productive call on Jim Seery's deposition. To summarize where we landed:

- **Time Limits.** We agreed to limit the deposition to 4 hours and you'll endeavor to keep it keep it shorter if possible.

- **Attendance.** John Morris can attend the deposition and can instruct the witness not to answer questions on privilege grounds or as he deems appropriate under the Bankruptcy Court's Gatekeeper Orders. You reserved your right to challenge those instruction in a motion after the deposition.

- **Topics.** We agreed to limit the deposition to the topics noticed. We also agreed to exchange objections to the topics by email and you reserved the right to challenge those objections in a motion after the deposition. Here are our objections:

    o **Topic No. 6.** We object to Topic No. 6 to the extent it seeks testimony regarding "entities affiliated with Ellington" on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and violates the Bankruptcy Court's Gatekeeper Orders.

    o **Topic No. 7.** We object to Topic No. 7 on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and violates the Bankruptcy Court's Gatekeeper Orders.

    o **Topic No. 9.** We object to Topic No. 9 to the extent it seeks testimony regarding "Mr. Daugherty's Proof of Claim in the Highland bankruptcy" on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and violates the Bankruptcy Court's Gatekeeper Orders.

- **Logistics.** We agreed to reschedule the deposition for the week of August 1 and to conduct the deposition remotely. We are checking with our client about specific days and times. Once we have the deposition scheduled, please send us links for joining the deposition, exhibit sharing, and realtime feeds.

In addition, our e-discovery vendor has run into technical issues with our supplemental production. We are pressing them to make the production this week. It's a small production, but we want to be upfront about the timing. We'll let you know if this timing changes.

Regards,

Josh

*See* Ex. A-10.

27.    The amended subpoena's negotiated deposition topics are excerpted below:

**SCHEDULE A**

DEPOSITION TOPICS

1.    Any documents and/or communications produced by James Seery in response to the Subpoena *Duces Tecum* served on Mr. Seery c/o Joshua S. Levy, Esq., in or around November 2022.

2.    Mr. Seery's personal knowledge of the allegations asserted in the Action.

3.    Mr. Seery's personal knowledge of the relationship between the Defendant in the Action, Patrick Daugherty ("Daugherty"), and the Plaintiff, Scott Byron Ellington ("Ellington").

4.    Mr. Seery's receipt of photos, videos, data, or other information from Daugherty relating to Greg Brandstatter.

5.    Mr. Seery's receipt of photos, videos, data, or other information from Daugherty relating to Sarah Bell (formerly Goldsmith).

6.    Mr. Seery's receipt of communications, emails, photos, videos, data, or other information from Daugherty relating to Ellington or entities affiliated with Ellington.

7.    Any meetings or communications between any representative of the Highland Bankruptcy estate and Mr. Daugherty and/or his representatives related in any way to Ellington.

8.    Any instructions or approval, whether explicit or tacit, provided to Mr. Daugherty with respect to Mr. Daugherty's so-called "investigation" of Mr. Ellington or the stalking allegations in this case.

9.    Any consideration provided to Daugherty with respect to Mr. Daugherty's so-called "investigation" of Mr. Ellington or the stalking in this case, including, but not limited to, the treatment of Mr. Daugherty's Proof of Claim in the Highland bankruptcy.

*See* Ex. A-11.

28.    On July 14, 2023, Seery made a supplemental production that included some of Seery's text messages with Daugherty. Despite receiving some of the text messages from Daugherty previously, some of the text messages were directly responsive to the prior requests but being produced for the first time.  Further, Seery redacted several messages in their entirety. These developments prompted Ellington to postpone Seery's deposition until we could either obtain the unredacted text messages or secure a ruling in the State Court Action regarding the same.

29.     We believed that because Daugherty was a party to the redacted text messages, he possessed the same. Ellington believed seeking the text messages from Daugherty – a party to the State Court Action – was more logical and efficient as opposed to seeking the text messages from non-party Seery in New York. Daugherty refused to voluntarily produce the messages and Ellington sought to compel their production. On August 21, 2023, Ellington filed "Plaintiff's Fourth Motion to Compel" seeking an order in the State Court Action compelling that the text messages be disclosed. The motion was then set for hearing on September 1, 2023.

30.     On September 1, 2023, the state court granted Ellington's Fourth Motion to Compel. A true and correct copy of the order is attached hereto as **Exhibit A-12**.

**H. I did not pass along communications and documents to the Dugaboy Investment Trust.**

31.     After reviewing the Motion, I understand Movants allege that the Dugaboy Investment Trust supported its motion for a forensic examination of Seery's phone with discovery related communications involving myself and others in the State Court Action. I did not disclose those communications to Dugaboy or its counsel, nor was I even aware Dugaboy sought such relief or that those communications had been provided to Dugaboy until I reviewed the Motion.

32.     I want to make the following clear—

a.   I am not aware of any plans to pursue any claim in any forum against the Movants;

b.   If I ever became aware of any plans to pursue any claim in any forum against the Movants, I would not be involved in any such proceeding unless the Court granted leave under the Gatekeeper Provision and Orders; and

c.   I have not coordinated in any way with James Dondero as it relates to the stalking litigation or the Highland Bankruptcy. As far as I can recall, I have

never even had a conversation, exchanged an email, or exchanged a text with

James Dondero.

FURTHER DECLARANT SAYETH NOT.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 23 day of October, 2023.

_Julie Pettit_
_____
Julie Pettit

# EXHIBIT A-1



---------- Forwarded message ---------
From: **Stancil, Mark** <MStancil@willkie.com>
Date: Wed, Sep 13, 2023 at 3:40 PM
Subject: RE: Meet and Confer
To: Julie Pettit <jpettit@pettitfirm.com>, Levy, Joshua S. <JLevy@willkie.com>
Cc: mhurst@lynnllp.com <mhurst@lynnllp.com>, John A. Morris <jmorris@pszjlaw.com>, Brennan, John L.
<JBrennan@willkie.com>

Julie,

Local Rule 7007-1(a) requires that "an attorney for the moving party shall confer with an attorney for each party
affected by the requested relief to determine whether the motion is opposed." We have more than fulfilled that
obligation and are not required to provide you with a copy of the motion before filing.

We agreed to a deposition of Mr. Seery only as to topics that were ***actually*** germane to the stalking claims.
You will recall that we disagreed quite pointedly about many of your proposed topics, such as those suggesting
that treatment of Mr. Daugherty's claim in the bankruptcy case was somehow improper. You reserved the right
to ask those questions. We reserved the right to instruct Mr. Seery not to answer on the grounds, *inter alia*, that
they violated the Gatekeeper provisions. You demanded that Mr. Seery produce text messages that were not
germane to the stalking allegations. When we refused—again under the Gatekeeper provisions—you
postponed Mr. Seery's deposition so that you could file a motion to compel. I won't speculate here why you
have yet to do so, but I note the conspicuous absence in your email of any statement that you do not still claim
a right to and intend to seek that information.

Even if you had abandoned your improper discovery demands against Mr. Seery (which you have  not), you do
not deny that you are making the same demands to former Highland personnel, such as Judge Nelms and Mr.
Dubel. Seeking the same improper information from other parties is no less a violation of the Gatekeeper
provisions as to Mr. Seery. You do not deny that you are seeking to develop information that Mr. Seery and
Highland somehow acted improperly in the bankruptcy case. That is, as we have repeatedly explained, a clear
violation of the Gatekeeper provisions and we are entitled to seek relief from the court.

If you think we are wrong about any or all of the above, you will have the opportunity to present your arguments to the court. We have more than fulfilled our obligations to meet and confer and will commence filing shortly.

**Mark T. Stancil**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1133 | Fax: +1 202 303 2000
mstancil@willkie.com | vCard | www.willkie.com bio

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Wednesday, September 13, 2023 4:14 PM
**To:** Levy, Joshua S. <JLevy@willkie.com>
**Cc:** mhurst@lynnllp.com; Morris, Daniel L. <DMorris@willkie.com>; Brennan, John L. <JBrennan@willkie.com>; Stancil, Mark <MStancil@willkie.com>
**Subject:** Re: Meet and Confer

**\*\*\* EXTERNAL EMAIL \*\*\***

Josh,

It seems ridiculous that you would need to file this motion immediately without giving us the chance to review. As you are aware, there is currently *no* pending deposition date for Mr. Seery, there are *no* additional discovery requests that have been served on Mr. Seery, and there are absolutely *no* motions or actions pending against Mr. Seery.

In fact, Mr. Seery had previously *agreed* to a deposition, which Mr. Ellington then voluntarily cancelled. And as you know, Mr. Ellington has taken no further action with respect to Mr. Seery since that deposition was cancelled and there has been no communication between you and I since July.

We obviously haven't seen your motion since you refuse to allow us to see it, but I am unable to see how whatever forthcoming motion you intend to file is even ripe at this time.

If you truly want to resolve the issues, I ask that you allow us to review the motion and then we can actually confer.

Best Regards,


Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com




On Wed, Sep 13, 2023 at 12:57 PM Levy, Joshua S. <JLevy@willkie.com> wrote:

Julie,


Thanks for getting back to me promptly.  I left a voicemail on your direct line listed in your email signature, so it's surprising that you don't see any messages.  In any event, we could not disagree more with your characterization of the events that have lead us to this point.  We've repeatedly explained, by phone and by email, why seeking information regarding, among other things, the treatment of Patrick Daugherty's claim in bankruptcy is neither germane to the merits of the stalking claims nor permissible in light of the Gatekeeper Provision and Gatekeeper Orders.  You've also been advised repeatedly of the same by counsel for Judge Nelms and John Dubel.  The local rules do not require us to provide advance copies of our motions and we do not intend to do so.  *See* N.D. Tex. Local Civ. R. 7.1(a).  If you're willing to immediately withdraw all of those impermissible demands, please advise by 5 PM ET.  Failing that, we will mark your position on this motion as opposed when filing.


Regards,

Josh

**Joshua S. Levy**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
jlevy@willkie.com | vCard | www.willkie.com bio

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Wednesday, September 13, 2023 1:05 PM
**To:** Levy, Joshua S. <JLevy@willkie.com>
**Cc:** mhurst@lynnllp.com; Morris, Daniel L. <DMorris@willkie.com>; Brennan, John L.
<JBrennan@willkie.com>; Stancil, Mark <MStancil@willkie.com>
**Subject:** Re: Meet and Confer

**\*\*\* EXTERNAL EMAIL \*\*\***

Hi Josh,

I do not have any messages from you on my office line or my cell phone.

In any event, please send a copy of the proposed motion prior to filing.  Separately, we have been engaged in good faith negotiations with you over the potential subject matter of the deposition for months.  It seems unprofessional to unilaterally end those discussions with a sanctions motion.  We would at least expect the courtesy of a discussion after seeing the basis for the motion prior to its filing.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com

On Wed, Sep 13, 2023 at 11:47 AM Levy, Joshua S. <JLevy@willkie.com> wrote:

Julie and Michael,


I called each of you earlier today and did not hear back, so I'm following up by email.  As we've discussed by phone and by email, we believe that you and Scott Ellington are using discovery in the stalking litigation against Patrick Daugherty to pursue claims against Highland and Jim Seery in violation of the Gatekeeper Provision and Gatekeeper Orders entered by the Bankruptcy Court.  We therefore plan to seek sanctions in the Bankruptcy Court.  I expect you oppose our request but, as a courtesy, I wanted to reach out before we filed.  Please let me know by 5 PM ET.  I'm happy to discuss by phone if that would be helpful.



Regards,

Josh


**Joshua S. Levy**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
jlevy@willkie.com | vCard | www.willkie.com bio

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# EXHIBIT A-2

### CAUSE NO. DC 22-00304

| | | |
|---|---|---|
| **SCOTT ELLINGTON** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **101 JUDICIAL DISTRICT** |
| | § | |
| **PATRICK DAUGHERTY,** | § | |
| | § | |
| *Defendant.* | § | **DALLAS COUNTY, TEXAS** |

### TEMPORARY RESTRAINING ORDER

On this day, the Application for a Temporary Restraining Order of Scott Ellington, Plaintiff herein, was heard before this Court.

Based upon the pleadings, records, documents filed by counsel, and the arguments of counsel at the hearing, IT CLEARLY APPEARS:

1.    That unless restrained Defendant Patrick Daugherty ("Defendant") will continue to harass Plaintiff Scott Ellington, his girlfriend (Stephanie Archer), his sister (Marcia Maslow), and his father (Byron Ellington) before notice and a hearing on Plaintiff's Application for Temporary Injunction, including committing the following acts:

   a.    Traveling, on a near daily basis, to the personal residences of Scott Ellington, Stephanie Archer, Marcia Maslow, and Byron Ellington without invitation and parking outside or drivingly slowly past the residences;

   b.    Taking pictures and video recordings of the personal residences of Scott Ellington, Stephanie Archer, Marcia Maslow, and Byron Ellington;

   c.    Traveling, on a near daily basis, to Scott Ellington's office without invitation and parking outside or drivingly slowly past the building where the office is located;

and

    d. Taking pictures and video recordings of the office of Scott Ellington.

2.     Plaintiff will suffer irreparable harm if Defendant is not restrained immediately from continuing to harass Plaintiff and his family. Specifically, Plaintiff reasonably fears that Defendant may cause him or his family bodily harm, and the accompanying anxiety interferes with his ability to conduct his normal, daily activities.

3.     Given the foregoing, there is no adequate remedy at law to grant Plaintiff complete, final and equal relief.

4.     IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Patrick Daugherty and his agents, servants, and employees are ORDERED to immediately cease and desist from the following acts from the date of this Order until fourteen (14) days thereafter, or until further order of this Court:

    a. Being within 500 feet of Ellington;

    b. Being within 500 feet of Ellington's office located at 120 Cole Street, Dallas, Texas 75207;

    c. Being within 500 feet of Ellington's residence located at 3825 Potomac Ave, Dallas, Texas 75205;

    d. Being within 500 feet of Stephanie Archer;

    e. Being within 500 feet of Stephanie Archer's residence located at 4432 Potomac, Dallas, Texas 75025;

    f. Being within 500 feet of Marcia Maslow;

    g. Being within 500 feet of Marcia's residence located at 430 Glenbrook Dr., Murphy, Texas 75094;

    h.  Being within 500 feet of Byron Ellington;

    i.  Being within 500 feet of Byron Ellington's residence located at 5101 Creekside Ct., Parker, Texas 75094;

    j.  Photographing, videorecording, or audio recording Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington;

    k.  Photographing or videorecording the residences or places of business of Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington; and

    l.  Directing any communications toward Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington.

5.    IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff's Application for Temporary Injunction be heard on _____ at _____ M. Defendant is commanded to appear at that time and show cause, if any exist, why a temporary injunction should not be issued against said Defendant.

6.    The clerk of the above-entitled court shall issue a temporary restraining order in conformity with the law and the terms of this order upon the filing by Plaintiff of the bond hereinafter set.

7.    This order shall not be effective until Plaintiff deposits with the Clerk, a bond in the amount of $ _____ in conformity with the law.

SIGNED and ENTERED on _____ at _____ M.

_____
PRESIDING JUDGE

# EXHIBIT A-3

```
                    IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE NORTHERN DISTRICT OF TEXAS
                              DALLAS DIVISION

                                   )   Case No. 19-34054-sgj-11
In Re:                             )   Chapter 11
                                   )
HIGHLAND CAPITAL                   )   Dallas, Texas
MANAGEMENT, L.P.,                  )   Tuesday, March 29, 2022
                                   )   1:30 p.m. Docket
       Reorganized Debtor.         )
_____)
                                   )
ELLINGTON,                         )   Adversary Proceeding 22-3003-sgj
                                   )
       Plaintiff,                  )
                                   )   SCOTT ELLINGTON'S MOTION
v.                                 )   TO ABSTAIN AND REMAND [3]
                                   )
DAUGHERTY,                         )
                                   )
       Defendant.                  )
_____)
```

                    TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
                UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

```
For Scott Byron              Frances Anne Smith
Ellington, Plaintiff:        ROSS & SMITH, PC
                             Plaza of the Americas
                             700 N. Pearl Street, Suite 1610
                             Dallas, TX  75201
                             (214) 377-7879

For Scott Byron              Michelle Hartmann
Ellington, Plaintiff:        BAKER & MCKENZIE, LLP
                             1900 North Pearl Street,
                               Suite 1500
                             Dallas, TX  75201
                             (214) 978-3421

For Patrick Daugherty,       Drew York
Defendant:                   Jason S. Brookner
                             GRAY REED & MCGRAW, LLP
                             1601 Main Street, Suite 4600
                             Dallas, TX  75201
                             (469) 320-6132
```

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 31 of 216

2

```
 1    APPEARANCES, cont'd.:

 2    For Highland Capital         Gregory V. Demo
      Management and Highland      PACHULSKI STANG ZIEHL & JONES, LLP
 3    Claimant Trust:              780 Third Avenue, 34th Floor
                                   New York, NY  10017-2024
 4                                 (212) 561-7700

 5    Recorded by:                 Michael F. Edmond, Sr.
                                   UNITED STATES BANKRUPTCY COURT
 6                                 1100 Commerce Street, 12th Floor
                                   Dallas, TX  75242
 7                                 (214) 753-2062

 8    Transcribed by:              Kathy Rehling
                                   311 Paradise Cove
 9                                 Shady Shores, TX  76208
                                   (972) 786-3063
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
              Proceedings recorded by electronic sound recording;
25                transcript produced by transcription service.
```

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 32 of 216

3

1        DALLAS, TEXAS - MARCH 29, 2022 - 1:37 P.M.

2            THE COURT:  All right.  We will begin our setting

3    today in Ellington versus Daugherty, Adversary 22-3003.

4    First, who do we have appearing for Ellington?

5            MS. SMITH:  Good afternoon, Your Honor.  Frances

6    Smith with Ross & Smith and Michelle Hartmann with Baker &

7    McKenzie on behalf of Mr. Ellington.

8            THE COURT:  All right.  Thank you.  Who do we have

9    appearing to Mr. Daugherty?

10            MR. YORK:  Good afternoon, Your Honor.  It's Drew

11    York from Gray Reed.  On the line with me today is Jason

12    Brookner.

13            THE COURT:  All right.  Good afternoon.  I presume

14    those are all the formal appearances we have.  Is there anyone

15    else out there who felt the need to appear?

16            MR. DEMO:  Your Honor, this is Greg Demo from

17    Pachulski Stang Ziehl & Jones on behalf of Highland Capital

18    Management and the Highland Claimant Trust.  We are not a

19    party to this adversary.  We haven't filed papers.  Nobody's

20    asked our opinion prior to filing papers in this case.  And

21    honestly, Your Honor, we do believe that this is just another

22    facet of the feud between Mr. Daugherty and Mr. Dondero and

23    honestly want nothing to do with this hearing.

24        That said, Your Honor, we would like to reserve the right

25    to reply if anything is said at this hearing that impacts our

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 33 of 216

4

1    affects Highland or if any factual assertions or implications

2    are made that could impact or affect Highland.

3            THE COURT:  All right.  That is fine.

4            MR. DEMO:  Thank you.

5            THE COURT:  Any other appearances?

6     (No response.)

7            THE COURT:  All right.  Well, this is, of course, a

8    removed action, and we are here today on Mr. Ellington's

9    motion for abstention or remand.  Who will be making the

10   argument for Mr. Ellington?

11           MS. SMITH:  Your Honor, Ms. Hartmann will be making

12   the argument for Mr. Ellington.  But as a housekeeping matter,

13   we did have five exhibits that I believe were filed under

14   Docket No. 22, and I would like to move for the admission of

15   those five exhibits.  It's the petition -- I'm sorry, Your

16   Honor.

17           THE COURT:  Okay.  All right.  I see -- I see the

18   five exhibits at Docket Entry 22.  Is there any objection from

19   Daugherty's counsel?

20           MR. YORK:  No, Your Honor.  And I believe that, as a

21   housekeeping matter, we also have exhibits which were filed

22   at, I believe, Docket 24.  And we'd move to admit those as

23   well, PD 1 through 17.

24           THE COURT:  All right.  Any objection --

25           MS. SMITH:  Your Honor, --

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 34 of 216

5

1    THE COURT:  -- objection to those?

2    MS. SMITH:  Your Honor, this is Frances Smith on

3 behalf of Mr. Ellington.  Actually, Mr. Daugherty's exhibits,

4 I believe, are at Docket 23.  We have no objection to Mr.

5 Daugherty's Exhibit 10 or Exhibits 13 through 17.  We object

6 to Exhibits 1 through 9 and --

7    THE COURT:  Okay.  Okay.  Slow -- slow down.  Or,

8 actually, if you could repeat yourself.  The connection is a

9 little garbly, so -- I don't know why.  If you could repeat

10 again.  I'm pulling them up.  You have no objection --

11    MS. SMITH:  Yes, Your Honor.

12    THE COURT:  You have no objection to -- and you're

13 right, they're at 23.  You have no objection to what exhibits?

14    MS. SMITH:  To Exhibit PD 10.

15    THE COURT:  Okay.

16    MS. SMITH:  PD 13.

17    THE COURT:  Okay.

18    MS. SMITH:  PD 14.

19    THE COURT:  Okay.

20    MS. SMITH:  PD 15.

21    THE COURT:  All right.

22    MS. SMITH:  16.  And PD 17.  So that's, to recap, 10,

23 and then 13 through 17.

24    THE COURT:  Okay.  But you're objecting to all other

25 exhibits?

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 35 of 216

6

1          MS. SMITH:  Yes.  On relevance.  And can you hear me

2     better now?  I've moved closer to the mic.

3          THE COURT:  I can hear you a little better.

4        So I am admitting 10, 13, 14, 15, 16, and 17 of Mr.

5     Daugherty's.  But you're going to ask that Mr. Daugherty move

6     to admit the others the old-fashioned way with a prove-up?

7          MS. SMITH:  Yes, Your Honor.

8          THE COURT:  All right.  Well, we shall see what Mr.

9     Daugherty wants to do on that front.

10        (Plaintiff's five exhibits at Docket 22 are received into

11     evidence.)

12        (Defendant's Exhibit 10, as well as Exhibits 13 through

13     17, at Docket 23 are received into evidence.)

14          THE COURT:  All right.  Ms. Hartmann, I'll hear your

15     arguments.

16          MS. HARTMANN:  Thank you, Your Honor.  I'm going to

17     try to share my screen.

18          THE COURT:  Okay.

19          MS. HARTMANN:  I think this is better.  That's fine.

20     Michelle Hartmann, Baker & McKenzie, on behalf of Scott

21     Ellington.  And may it please the Court.  As Your Honor

22     stated, we're here today on an emergency motion to abstain and

23     remand.

24        Turning to the state court action on the next slide, this

25     case relates to purely state law and involves nondebtors.

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 36 of 216

7

1      We appreciate Your Honor's comments during the status

2   conference, and we don't want to get into the merits of this

3   case, but it was filed by Lynn Pinker & Hurst.  We do believe

4   that the case has significant merits.

5      And based on Your Honor's comments, we did want to just

6   put a couple of allegations in.  Part of the reason why Mr.

7   Ellington felt the need to file this case related to his

8   family.  And as you see in the state court petition, Mr.

9   Daugherty has been observed clearly parking in front of his --

10  Mr. Ellington's sister's house -- she has two minor daughters

11  -- filming, including them going to school.  She lives in

12  Murphy, Texas, nowhere near where Mr. Ellington lives.

13     Mr. Daugherty has also been observed, again, parking in

14  front of Mr. Ellington's elderly father's house, filming and

15  -- for long periods of time.  He, again, lives in Parker,

16  Texas.

17     The same action was taken as to Mr. Ellington's fiancée,

18  who has a minor son, filming, including the minors, which is

19  why this action was brought.

20     Turning to the next slide, this is brought, as Your Honor

21  correctly noted in the status conference, under the stalking

22  statutes and privacy common law, and it relates, really, to

23  claimant's fear of the safety of a member of the claimant's

24  family.  That was the impetus for this, much more so than

25  anything related to Mr. Ellington himself.

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 37 of 216

8

1    And you can see just a couple of the pictures where Mr.

2   Daugherty is literally just parking outside family members'

3   houses.  It had escalated recently in December, which led to

4   the filing, where packages, anonymous packages and letters are

5   being left as well.

6    Turning to the next slide, one day after the case was

7   filed, Judge Williams in the 101st Court entered a temporary

8   restraining order.  And Your Honor can see that it relates not

9   just to Mr. Ellington but to his girlfriend, his sister, and

10  to his elderly father.

11    Turning to the issue at hand, Your Honor, case timeline,

12  we wanted to include this more than anything just to show that

13  the removal was on January 18, 2022.  That's at Docket 1.  And

14  Mr. Ellington timely filed for abstention and remand, which is

15  what we're asking for today.

16    Before the Court are two questions.  Assuming there is

17  subject matter jurisdiction, whether mandatory abstention is

18  warranted as the claims exclusively involve state law claims

19  against two nondebtors.  And we'll talk about Your Honor's

20  precedent in that.  We believe that it is warranted here.  And

21  alternatively, to fashion a permissive abstention.

22    Turning to Mr. Daugherty's response, as Your Honor I'm

23  sure noted, the first 14 pages of the 25-page response are

24  really an introduction and factual background that have

25  nothing to do with either the state court case or the question

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 38 of 216

9

1    on abstention before the Court.  There is long recitation of

2    Daugherty's employment at Highland, his disputes with Mr.

3    Dondero, and other actions that were pending in state court in

4    Dallas County and in Delaware.  Again, there's no relevance of

5    that to the state court action or the question of mandatory or

6    permissive abstention.

7        There's a long history of HERA, the escrow agreement, and

8    HCMLP-related lawsuits in Texas and Delaware.  Again, no

9    relevance to the state court action or the question of

10   mandatory or permissive abstention.

11       And then there's a section that -- a docket that really is

12   just intended to cast irrelevant aspersions at Mr. Ellington

13   in an attempt to justify the stalking.

14       We don't, again, want to get into the merits of this.  We

15   think that this is a question that you can answer without

16   getting into some of these irrelevant allegations.  But a

17   couple of them we saw as material either omissions or

18   misstatements, and we wanted to make sure that the record was

19   accurate on this.

20       Mr. Daugherty represents that the jury found for him and

21   against the Highland -- Highland and Dondero and attained a

22   judgment against HERA of $2.6 million.  That is true, but when

23   you look at the final judgment, there's also $2.8 million

24   against Daugherty, and all the claims against the executives

25   were dismissed.  You can see that they -- there was a

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit    Page 39 of 216

10

1    take-nothing judgment.

2        Another argument, turning to the next slide, that Mr.

3    Daugherty spends quite a bit of time on is trying to argue

4    that Mr. Ellington appears to be fraudulently transferring his

5    own personal assets.  And that'll be the next slide.  And the

6    basis for that is that Mr. Ellington purportedly signed on to

7    his video deposition on February 16, 2021 -- the next one --

8    purportedly using an alias.  It's perhaps the worst alias

9    ever.  It's his fiancée, and he's taking a deposition from his

10   fiancée's house.  Of course, it's a woman, Stephanie Archer,

11   and he immediately told the court reporter who -- what his

12   name was and why Stephane Archer was the identifier.  Mr.

13   Daugherty began stalking Ms. Archer and her minor son shortly

14   after this.

15       Turning to the next slide, which I think was the previous

16   one in your deck.  There we go.  And the last one, we just

17   wanted to highlight.  Again, Mr. Daugherty states, and this is

18   at Paragraph 30, Docket 15, that Ellington swears under

19   penalty of perjury that he feared Daugherty so much he moved

20   residences three times in the last year.  Nothing like that is

21   said in the state court petition, and we've added for Your

22   Honor as an exhibit SE 1, Mr. Ellington's actual declaration.

23   He does state that he moved three times January 2021 to today.

24   Nowhere does he say that it's because he feared Mr. Daugherty.

25   Again, this was for his family that he brought this

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 40 of 216

11

1   litigation.  What he said is that his address was not

2   searchable and yet Mr. Daugherty continued to -- to show up at

3   these residences.

4       And just finally, Your Honor, the investigator is a former

5   Highland Park police officer.  It is not Mr. Ellington's

6   personal assistant.

7       There are a lot of other allegations that are completely

8   incorrect, including storing high-end cars, when in fact Mr.

9   Daugherty must have been filming the warehouse next to Mr.

10  Ellington's warehouse, where there are no high-end cars but

11  some Gold's Gym equipment that he used during COVID.  But,

12  again, we don't think it relates to the facts and the matter

13  before Your Honor.

14      So, turning to the next slide and shoring up these

15  irrelevant allegations, the legal issue before Your Honor

16  relates to mandatory abstention and permissive abstention.

17  Mr. Daugherty, and this is Paragraph 39 of his response, he

18  acknowledges that the first and third factors are not in

19  dispute.  So that there's no independent basis for federal

20  jurisdiction other than Section 1334(b), and that they had

21  removed the state court action to this Court, leaving only

22  Factors 2 and 4, whether the claim is a noncore proceeding and

23  whether the action could be adjudicated timely in state court.

24      With regard to the noncore proceeding, and turning to the

25  next slide, Mr. Daugherty argues under the catchall provision

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 41 of 216

12

1   of Section 157(b)(2)(A) and (O).  And he really focuses on

2   three arguments that we'll address for Your Honor.

3       Number one, he states that Mr. Ellington's objection to

4   the settlement agreement somehow transforms the state court

5   case to a core proceeding.

6       Number two, that a litigation hold letter again somehow

7   transforms the state court case to a core proceeding.

8       And three, that Daugherty's status as a creditor does the

9   same.

10       And we'd note for Your Honor the case law, which Your

11   Honor certainly is aware of, about defining core proceedings

12   narrowly.

13       But turning to the first bucket, the settlement agreement

14   and Ellington's objection to the Daugherty settlement

15   agreement.  So, Daugherty's response states that Ellington was

16   using the state court action in an attempt to alter the

17   proposed settlement between Daugherty and Highland.

18       First, if Ellington's sole purpose was to use the state

19   court action as a tactical advantage, he would have done so

20   after that settlement was announced back in February 2021.

21   Again, we thought that this would end.  Instead, going into

22   December in particular, it escalated again with the delivery

23   of these packages and these anonymous letters.

24       More importantly on this point, as was stated in the

25   objection, Ellington states he has no reason to believe that

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 42 of 216

13

1   HCMLP was aware of the alleged activities of Daugherty or the

2   allegations raised in the Ellington action at the time that

3   HCMLP entered into the settlement agreement.  So we

4   specifically state in this objection that Ellington didn't

5   have reason to believe that the Debtor had anything to do with

6   this.

7   Turning to the next slide, Ellington's objection -- and

8   Your Honor knows this because you presided over the hearing --

9   was limited to really challenging two provisions, the observer

10   status and then the assignment of any HERA or ERA claims.

11   One thing that Daugherty focuses on is a letter that was

12   sent to the Debtor in an effort to confer on the objection

13   before the objection was filed.  In these discussions and the

14   conferral process, it became clear that the Debtor's counsel

15   lacked knowledge of Daugherty's conduct but also didn't

16   believe the two provisions would contribute to any further

17   stalking.

18   Conferring with the Debtor on a limited objection to two

19   noneconomic terms before filing an objection does not

20   transform the state court action involving nondebtor parties

21   into a core proceeding.

22   On this point -- and again, Mr. Demo is here -- but

23   neither the Debtor nor the Litigation Trustee had filed

24   anything with this Court, notwithstanding that the responsive

25   deadline for taking a position had passed.  There may be

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 43 of 216

14

1   something that is said today, but thus far no claims have been

2   brought against the Debtor, nor does Mr. Ellington intend to,

3   and there hasn't been a position that has been lodged with

4   regard to either the Debtor or the Litigation Trustee.

5       And finally on the settlement point -- there you go -- on

6   the settlement point, a hearing was held on the Daugherty

7   settlement, including Ellington's objection, March 1, 2022.

8   The appeals are exhausted on May 23, 2022.  This was not

9   appealed.  And as the Court is aware, the Court denied

10  Ellington's objection, finding a lack of standing, without

11  needing to resort to any issues related to the state court

12  action.

13      So, on this main argument, then, that Mr. Daugherty has as

14  to the objection to the Daugherty settlement, we see it as

15  fully resolved and really moot to the motion before the Court

16  on mandatory abstention.

17      The second bucket or argument that Mr. Daugherty makes is

18  that a litigation hold that was sent by counsel in the state

19  court action, Michael Hurst, to preserve communication somehow

20  makes the state court action core.  And they point to No. 6 on

21  the litigation hold for documents and communications with any

22  other party, person, or entity (audio gap) is requested to be

23  preserved.

24      Nowhere does this litigation hold seek documents from the

25  Debtor.  And even if it had, it didn't bring claims against

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 44 of 216

15

1    the Debtor.  This is merely asking to preserve communications

2    related to the -- what we call the stalking actions.

3        Again, a mere litigation hold notice doesn't transform the

4    dispute into a core proceeding.

5        And then the last argument that Mr. Daugherty makes as a

6    basis for the state court proceeding being core is that

7    Daugherty is a creditor.  Again, creditor status, without

8    more, doesn't make a dispute core.  If Ellington -- Mr.

9    Ellington were to succeed in the state court action, it

10   wouldn't make and shouldn't make a difference to the Debtor's

11   estate.  And if somehow Mr. Daugherty would be found not

12   liable, again, there shouldn't be a difference made to the

13   Debtor's estate.

14       So there should not be any kind of financial impact, and

15   creditor status alone should not be enough.

16       The next element that is challenged, Your Honor, is the

17   timely adjudication element.  Mr. Ellington put forth the pace

18   at which Judge Williams in the 101st had already been moving,

19   and also pled that, had they not removed the action on January

20   18, the state court would have continued its timely

21   adjudication, and had already set deadlines for the

22   preliminary injunction.

23       What Mr. Daugherty argues is that the impact of COVID-19

24   on the timely adjudication analysis makes a difference.  And

25   in particular, he cites to and focuses exclusively on jury

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 45 of 216

16

1    trials and the backlog of jury trials.  But the timely

2    adjudication here involves injunctive relief, scheduling,

3    discovery, and other issues.  And although the brief, Mr.

4    Daugherty's brief cites to the Dallas County COVID-19 risk

5    level as red during COVID, we note that it is now down to a

6    yellow COVID-19 risk level.

7        And finally, on the existence of jury trial, we think that

8    matters, since Mr. Daugherty has focused on these jury trial

9    statistics.  Daugherty recognizes -- and this is the Docket

10   15, Paragraph 53(k) -- that both Ellington and Daugherty are

11   entitled to a jury trial and have requested a jury trial.  And

12   we cite Your Honor to your case in *In re Senior Care*.  You

13   state that if a party requests a jury trial this matter could

14   take far longer to adjudicate in this Court than state court,

15   because unless the parties were to agree to this Court

16   conducting a jury trial, the case would need to be withdrawn

17   to the district court.

18       We believe, based on the record before Your Honor,

19   Ellington -- Mr. Ellington has met the low threshold for

20   timely adjudication.

21       So with regard to mandatory abstention, we know Your Honor

22   is aware that if the requirements are met the federal court

23   has no discretion but must abstain.  We feel that's what

24   should be done here.

25       Alternatively, we believe that permissive abstention

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 46 of 216

17

1   should be found.

2       All fourteen factors here, we believe, favor permissive

3   abstention and remand, or at least are neutral, but in any

4   event tip in favor of Mr. Ellington.

5       We'd note that of these fourteen factors, seven of them

6   related to and were the subject of arguments in Mr.

7   Daugherty's response dealing with the settlement and the

8   objection to the settlement.  As the settlement has already

9   been entered and the objection has been denied, we believe

10  those are moot and tip in favor of Mr. Ellington.

11      Number three, the difficult or unsettled nature of the

12  applicable law is probably neutral.

13      The presence of a related proceeding commenced in state

14  court or other nonbankruptcy proceeding, frankly, neutral,

15  although we'd note that Mr. Daugherty spends a lot of his

16  brief making the argument that either the Delaware state

17  action or the former Dallas County state action are somehow

18  related.

19      Number eight, Mr. Daugherty admits that this factor is

20  inapplicable.

21      The burden on the Court's docket, again, is neutral.

22      And then eleven, twelve, and fourteen we would say tip in

23  favor of Mr. Ellington.

24      The existence of a jury trial, we've already discussed.

25      The presence in the proceeding of nondebtor parties.  The

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 47 of 216

18

1    opposite is the case here.  All -- Mr. Ellington and Mr.

2    Daugherty are both nondebtor parties.

3        And then the possibility of prejudice to other parties in

4    the action.  There will be nonparty witnesses in the state

5    court litigation.  And of course, as Mr. Ellington is the

6    Plaintiff here, he chose to be in state court in this matter.

7        I want to turn just briefly, unless Your Honor has any

8    questions, to the case law.  Mr. Daugherty's response fails to

9    cite any factually-similar cases.  Let me just focus on the

10    ones that he does cite to.

11        In the response, Docket 15, Paragraph 40, he cites to *In*

12    *re Directory Distributing Associates* for the proposition that

13    the state court action is core because its state law claims

14    concern the administration of a bankruptcy estate.  That case

15    is highly distinguishable.  It involved a -- the decision

16    involved motion to transfer Texas and California proceedings

17    involving the debtor.  These were a Fair Labor Standards Act

18    class action, so they were going to be in federal court no

19    matter what, which is quite different from the purely state

20    court claims here involving two nondebtors.  Again, the

21    question in this case was not abstention; it was transfer.

22        The response at Docket 15, Paragraph 34, *In re Ritchey* is

23    cited for the proposition that the matter of the state court

24    action is core because it involves the Court's enforcement of

25    its own gatekeeping orders.  Here we have purely state law

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 48 of 216

19

1  claims brought to stop a behavior.  We do not think that that

2  implicates the Court's gatekeeping injunction.  But, again,

3  this *Ritchie* case involved a sanction motion for violating a

4  discharge order, but, again, did not have to do with

5  abstention.

6        And finally, the response, Docket 15, Paragraphs 53(a) and

7  (d), the *Sabre* case is cited, *Sabre Technologies v. TSM*

8  *Skyline*, for the proposition that Ellington's transparent

9  purpose in filing the state court action is to thwart the

10  Court's efficient administration of the Debtor's estate.  This

11  argument and the case citation I believe really relate to the

12  objection to the settlement agreement, which, again, we see

13  it's a moot point.

14        In any event, the *Sabre* case, the plaintiff there sued the

15  owner of the debtor and an affiliate of the debtor, alleging

16  fraudulent transfers from the debtor to the affiliate.  So you

17  were dealing with core matters here, not the state law claims

18  that you have before Your Honor.

19        And the two last cases that are cited by Mr. Daugherty, *In*

20  *re Brook Mays Music Company* -- your decision, Your Honor --

21  for the proposition cited that evidence favored retention

22  where the Court has familiarity with the parties and the

23  disputes.

24        What we see on this case, though, is that the plaintiff

25  sued Chase in its capacity as the debtor's lender and TRG in

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 49 of 216

20

1    its capacity as the financial advisor to the debtor.  As Your

2    Honor noted in the decision, diversity jurisdiction existed,

3    making mandatory abstention inapplicable.  And Your Honor

4    states that the Court agreed in that case that the debtor was

5    likely to be a necessary party.  Again, that case, to us, does

6    not seem factually similar.

7        And the final case cited is *In re Doctors' Hospital*.  It's

8    cited for the proposition that plaintiff is forum shopping to

9    escape the bankruptcy court.  That's just not the case here.

10   These are state laws claims that are brought in state court.

11   In that case, there were clear forum shopping -- there was

12   clear forum shopping evidence.  Number one, the abstention

13   motion was not timely filed.  The state court case was removed

14   pre-plan confirmation, and then the abstention motion was

15   filed only after a preliminary injunction request was denied.

16   And the plaintiff has already agreed and expressly consented

17   to the bankruptcy court jurisdiction.

18       If there's any forum shopping here, we would submit to the

19   Court that it is by Mr. Daugherty.

20       And Your Honor, citing to another case of Your Honor, we

21   think that the *In re Senior Care Centers* is factually similar

22   to the case before the Court and the question before the

23   Court.  As Your Honor will recall, the plaintiff-landlord

24   sought to enforce a lease guaranty against the defendant-

25   guarantor.  The Court noted in the decision that the defendant

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 50 of 216

21

1  sought to characterize the matter as core on the grounds that

2  it's going to seek reconsideration of this Court's

3  determination that the defendant-guarantor was not released by

4  a settlement agreement.  Again, relating to a settlement

5  agreement.  Your Honor stated three points that we think are

6  directly on point here.

7      Number one, the defendant-guarantor's assertions are red

8  herrings that distract from the fact that the removed action

9  concerns a noncore breach of contract claim made by one

10  nondebtor against a non -- against another nondebtor.  The

11  same situation we have here, where it's a state -- state --

12  purely state law claim between two nondebtors.

13      Secondly, that state law issues do not really predominate

14  if they overwhelm.  The exact situation we have here.

15      And that any doubt concerning removal must be resolved

16  against removal and in favor of remanding the case back to

17  state court.

18      We believe that *In re Senior Care Center* precedent is

19  similar or should -- should follow these in the case before

20  the Court and the question before the Court, as the facts are

21  similar and the Court's well-reasoned analysis applies equally

22  in this case.

23      So, respectfully, Your Honor, we request that the Court

24  grant the motion to remand on the basis of mandatory

25  abstention, or alternatively, permissible abstention.

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 51 of 216

22

1              THE COURT:  All right.  Thank you, Ms. Hartmann.  Mr.

2    York?

3              MR. YORK:  Thank you, Your Honor.  Mr. Ellington may

4    claim that this lawsuit he has filed is about stalking, but it

5    is -- that's not what it's about at all.  It's not what it has

6    been about.  It's not what it is about at the end of the day.

7         As we indicated in our response that we filed, you need to

8    understand the context of the ten-plus years of litigation

9    that's involved Mr. Daugherty with Highland, Highland-related

10   entities, and Highland executives, to get the context for why

11   we are at where we are at today.

12        As the Court is aware, Mr. Daugherty has filed a lawsuit

13   in Delaware against Mr. Ellington as well as Mr. Dondero and

14   some of Highland's former outside counsel, alleging

15   constructive -- excuse me, alleging fraudulent transfers and

16   conspiracy to commit fraud relating to the escrow agreement

17   that had been entered into as part of the underlying first

18   Texas state court lawsuit between Mr. Daugherty and Highland.

19        And Your Honor, I want to correct a couple of things that

20   Ms. Hartmann said.  You know, she mentioned that we omitted

21   some aspects of the judgment in the Texas state court case.

22   What she omitted as part of that discussion was that, as part

23   of that lawsuit, Mr. Daugherty also obtained a defamation

24   verdict against Highland and Mr. Dondero in that case.

25        What happened, Your Honor, after this bankruptcy was filed

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 52 of 216

23

1   and as Mr. Daugherty was proceeding in Delaware is that Mr.

2   Dondero came to this Court and admitted during a contempt

3   hearing that he had destroyed his phone, and it had came out

4   in that litigation or in that hearing that apparently Mr.

5   Ellington had as well, which piqued Mr. Daugherty's interest

6   that perhaps there was something more nefarious going on here,

7   which led him to conduct further investigation.

8       That is -- that investigation is what has led to these

9   bogus stalking claims that Mr. Ellington has filed against Mr.

10  Daugherty.

11      And I think it's important to remember several things.

12  Number one, as Ms. Hartmann mentioned, the alleged contacts,

13  or at least when Mr. Daugherty was driving past Mr.

14  Ellington's home or office, began in February of 2021.  It

15  took Mr. Ellington eleven months to file his lawsuit against

16  Mr. Daugherty, even though Mr. Ellington had been aware of and

17  purportedly feared Mr. Daugherty driving past his home and his

18  office during that eleven-month period.

19      Ms. Hartmann mentioned that there were photographs and

20  videos being taken of minor children.  If you look at Mr.

21  Ellington's declaration, as well as the declaration of the

22  private investigator, which were attached to Mr. Ellington's

23  lawsuit and are exhibits, I believe it's SE 1, there was no

24  mention of any of that.  There was no mention of any of these

25  videos.  There was no mention anywhere of anonymous packages

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 53 of 216

24

1  or letters.  There is no indication that any of those packages

2  or letters have come from Mr. Daugherty.

3      All of this is a ruse because Mr. Ellington became unhappy

4  when he finally realized in the fall of 2021 that the

5  potential settlement agreement between Highland and Mr.

6  Daugherty in this bankruptcy was not going to release Mr.

7  Daugherty's claims against Mr. Ellington.  And once that

8  settlement agreement became public, he then filed his lawsuit

9  against Mr. Daugherty.

10      So, despite having had months and months of that alleged

11  harassment, he waited, because he wanted to use it in order to

12  try to thwart the settlement agreement.  And in fact, it was

13  the only basis for him to go to Highland and complain that

14  they shouldn't move forward with the settlement.  And then,

15  Your Honor, it was the only basis for his objection to the

16  proposed settlement, and he was the only one who filed an

17  objection.

18      So he has been attempting to use the lawsuit to prevent

19  the settlement agreement from going through.

20      Now, Ms. Hartmann mentioned that there's been no storage

21  of high-end cars.  I was surprised to hear that.  And,

22  frankly, I have, Your Honor, if I may show the Court, I have

23  some photographs, a photograph of a Porsche that Mr. Daugherty

24  took outside of Mr. Ellington's office, and the license plate

25  is tied to Mr. Ellington as the owner of the vehicle.

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 54 of 216

25

1          Now, I'm going to -- I'll only show that if the Court

2     really believes that the issue of whether there's stalking

3     that has occurred or not is dispositive of the Court's

4     decision today.  I don't think it is.  But I can certainly

5     show that, because I think it -- this shows the ridiculousness

6     of the claims that have been asserted in this case.

7               THE COURT:  I don't need to see a picture of a

8     Porsche.

9               MR. YORK:  All right.  Thank you, Your Honor.

10         So let's move, then, to the issues that have been raised.

11    First, the issue of mandatory abstention.  I do agree with Ms.

12    Hartmann that at least the settlement agreement has been

13    approved by this Court and there was no appeal that was filed.

14         However, Your Honor, I am not aware of any case -- I have

15    not found one yet -- that has held that the mere fact of a

16    subsequent event after a removal removes a case from the core

17    to a noncore proceeding.  In other words, the fact that the

18    settlement agreement was approved and that it has -- the

19    appeal time has passed, that that somehow moots whether that

20    is a core proceeding or not.

21         But more importantly, Your Honor, Mr. Ellington has not

22    proved that this meets the -- all four elements for mandatory

23    abstention, because he has not shown that the state court can

24    timely adjudicate this case.

25         His only argument is that the state court entered the TRO

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 55 of 216

26

1  and set an application for temporary injunction for hearing

2  fourteen days later, which, as the Court is well aware, that's

3  the time period that's required under the Texas Rules of Civil

4  Procedure.

5       And what Ms. Hartmann focused on in her argument was that

6  the adjudication is, well, how long it will take to complete

7  discovery, potentially an injunction hearing.  It has nothing

8  to do with whether a jury trial can occur timely or not.

9       Well, Your Honor, frankly, the definition of adjudication

10  is to complete and decide the matter.  It's not just the

11  completion of discovery.  And as we had pointed out in our

12  response and showed the Court, there are a huge backlog of

13  cases that were set for trial in the state court in March and

14  April, as many as 85 in one week.  Some of those cases have

15  lasted more than three years.  One's actually over four years

16  old.

17       So the fact of the matter is Mr. Ellington has not proved

18  that the state court can timely adjudicate the matter, and so

19  there is no mandatory abstention here.

20       And that then turns us to the issue of permissive

21  abstention, Your Honor.  And if you look at the factors, as we

22  pointed out in our response, the factors weigh in favor of the

23  Court ultimately keeping this case and not deciding to remand

24  it or abstain.

25       These are not difficult or unsettled issues of applicable

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 56 of 216

27

1   law.  The Court can handle that.

2       There is no related proceeding that would be applicable

3   here.

4       There would be normal burden on the Court to keep this

5   case and adjudicate it to its full extent.

6       Frankly, the forum shopping here was by Mr. Ellington by

7   filing his case originally in the state court, knowing full

8   well that his intention was to try to thwart the settlement

9   agreement.

10      As to Ms. Hartmann's argument on the right to jury trial,

11  Mr. Ellington stated in both his motion and in his reply that

12  he wants a jury trial.  As we state in our response, Mr.

13  Daugherty also wants a jury trial.  It appears the parties

14  agree to a jury trial.  This Court could try that case.  There

15  would be no reason to have to send the case to district court

16  for trial.

17      Although there are nondebtor parties involved here, both

18  Mr. Ellington and Mr. Daugherty have participated in the

19  bankruptcy extensively.  There are no comity issues that have

20  been raised.  And certainly there's been no evidence or

21  showing that anybody would be prejudiced by having this Court

22  adjudicate this case.

23      So, because the majority of the factors weigh in favor of

24  the Court retaining the case, we believe the Court should

25  reject the request for abstention and deny the motion

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 57 of 216

28

1    outright.

2         I'm happy to -- I'm sorry.  Before I finish, Your Honor,

3    with respect to the exhibits that were objected to, the

4    objection as I understand it was on relevance grounds.  The

5    exhibits are, we believe, relevant to understanding the

6    context of the underlying dispute that has been raised by Mr.

7    Ellington.  They are also all documents that were filed of

8    record in either the state court in Texas or in Delaware, so

9    the Court could also take judicial notice of them.  And

10   therefore we move to admit Exhibits PD 2 through 9 and I

11   believe it was 11, 12, and I think it was also 17 was the last

12   one.

13             THE COURT:  17 was admitted.

14             MR. YORK:  Okay.

15             THE COURT:  All right.  I sustain the relevance

16   objection, and so I'm not going to admit those additional

17   exhibits.

18        All right.  Ms. Hartmann, you get the last word.

19             MS. HARTMANN:  Your Honor, actually, I'd yield my

20   time to Ms. Smith, if that's all right with Your Honor.

21             THE COURT:  All right.  Ms. Smith?

22             MS. SMITH:  Thank you, Your Honor.  Am I coming

23   through clearly?

24             THE COURT:  You are.  Uh-huh.

25             MS. SMITH:  Okay.  Your Honor, nothing that Mr. York

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 58 of 216

29

1  stated in his argument changed the facts that mandatory

2  abstention is required and also that permissive abstention

3  applies.

4      This settlement was announced in February 2021, during

5  plan confirmation.  The lawsuit was filed not because of the

6  settlement, but because of the escalation in the stalking

7  behaviors.

8      Because Mr. Daugherty has already conceded the first and

9  third prongs of the mandatory abstention, I just want to

10  reiterate that, as to the second element, any small hook that

11  Mr. Daugherty may have had has now disappeared with the

12  Court's approval of the Daugherty settlement, the entry of

13  that order, and the passage of the appellate deadline.

14      Your Honor, this is a noncore action.  The action, the

15  state court action does not alter the rights, obligations, or

16  choices of action of the Debtor.  The action does not have any

17  effect at all on the administration of the bankruptcy estate.

18  There is no outcome of the state court action that will bring

19  assets into the estate, and the subject of a dispute is not

20  property of the estate.

21      The fact that an individual has a dispute with a creditor

22  of a debtor does not give rise to a core proceeding because it

23  is the relationship of the dispute to the estate, not to --

24  not the party, not to the relationship of the party to the

25  estate that establishes jurisdiction.  And that is the Fifth

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit    Page 59 of 216

30

1  Circuit in *In re Bass.*

2      The Daugherty settlement was approved by Your Honor

3  without adjudication of any of the issues raised in the state

4  court action.  The state court action claims for stalking,

5  invasion of privacy, and injunction relief all rise under

6  state law.  They were asserted in the state court and could

7  have proceeded in the state court, had the matter not been

8  removed, without any impact on the bankruptcy.

9      This Court should narrowly construe core proceedings, as

10 the Fifth Circuit has warned, against a broad interpretation

11 of 157(b)(2) and prefers to deem a proceeding as core under

12 more specific examples.  Daugherty's broad interpretation has

13 been repeatedly rejected by the Fifth Circuit.

14     Mr. Daugherty took the position that Mr. Ellington used

15 the state court action in an attempt to alter the proposed

16 settlement.  Again, the Court resolved that settlement without

17 reaching any of those issues.  The omission in the state court

18 action of any mention of the Daugherty settlement is not

19 surprising, as the Daugherty settlement has no bearing on the

20 merits of Ellington's stalking and invasion of privacy claim.

21 And that is -- I just wanted to put that order in our

22 exhibits, Your Honor.

23     Fourth, the Court should -- the fourth prong, the Court

24 should abstain from hearing Ellington's noncore state court

25 action because it can be timely adjudicated by the state

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 60 of 216

31

1    court.  Mr. York's anecdotal recitation of the delay in the

2    state court on a few cases being a couple of years behind,

3    those -- those could be for any reason, including discovery

4    disputes between the parties or other reasons besides the

5    state court's ability to timely adjudicate.

6        The party moving for mandatory abstention need not show

7    that the action can be more timely adjudicated in state court,

8    only that the matter can be timely adjudicated in state court.

9    The state court moved quickly on a TRO.  It moved quickly to

10   set a hearing on the preliminary injunction.  And we believe

11   that that meets the standard for the low bar that we need to

12   show that the case can be timely adjudicated.

13       The action was filed January 11, 2022, the TRO was entered

14   January 12, '22, and the application for temporary injunction

15   was set for hearing on January 26th.  So that state court was

16   moving very quickly.

17       We are not jury trial ready.  None of the metrics

18   presented by Mr. Daugherty relate to non-jury trial

19   administration of the case.  So the case can go ahead and

20   proceed under state court.

21       In the alternative, Your Honor, the Court should also

22   abstain under permissive abstention.  All of the factors in

23   *Senior Care*, the *Senior Care* analysis, favor abstention, as

24   Ms. Hartmann went through and told the Court.

25       The Court should reject the Daugherty settlement as a

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 61 of 216

32

1    basis for hearing the removed action, and in doing so, that

2    tips seven of the fourteen favors in favor of abstention.

3    Daugherty already conceded that two of the favors -- factors

4    were neutral and, in other words, not applicable because all

5    the claims were state law claims.

6        Your Honor, once this Court finds that the state court

7    action is not core, it should immediately abstain and remand

8    the case.  Even if Your Honor has any small doubts concerning

9    remand, it should favor remand, as doubts concerning removal

10   must be resolved against removal and in favor of remand.

11       Nothing on the face of the state court action implicates

12   the jurisdiction of the bankruptcy court.  Mr. Daugherty has

13   failed to give you a compelling reason why this Court should

14   adjudicate issues that are prime for mandatory or at least

15   permissive abstention.

16       For these reasons, we request that the Court abstain from

17   hearing the removed action entirely and immediately remand the

18   removed action to state court.

19       Thank you, Your Honor.

20           THE COURT:  All right.  Thank you.  Mr. Demo,

21   anything you wanted to add?

22           MR. DEMO:  Nothing to add, Your Honor.

23           THE COURT:  All right.  The Court concludes it must

24   grant the motion to abstain and to remand.  I do think that

25   the underlying action is, at most, a noncore related-to

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 62 of 216

33

1  proceeding, and frankly, probably not even noncore related-to.

2  So I find that mandatory abstention is appropriate pursuant to

3  1334(c)(2).

4      There's no independent basis in federal law for this

5  action other than maybe 28 U.S.C. 1334(b).  It's, at most,

6  noncore, but that's even questionable.  We have an action that

7  was already commenced in state court, and I have reason to

8  conclude the action could be adjudicated timely in state

9  court.

10      But even if mandatory abstention is not appropriate, I

11 believe it's appropriate to abstain under 28 U.S.C.

12 1334(c)(1), or even equitably remand under 28 U.S.C. 1452(b)

13 in the interests of comity with state courts and out of

14 respect for state law.  I believe state law issues do

15 predominate here.  There is a remoteness, extreme remoteness

16 to the bankruptcy case, and there would appear to be jury

17 trial rights, and Ellington says he would not consent to the

18 bankruptcy court having a jury trial.

19      In coming into today's hearing, the only possible hook, if

20 you will, if you want to call it a hook, for the bankruptcy

21 court or federal court jurisdiction was if this somehow

22 implicated the gatekeeping order -- that was dangled out in

23 the pleadings -- or if it involved interpretation,

24 implementation, or execution of the confirmed plan or

25 confirmation order, or if the estate was somehow going to be

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 63 of 216

34

1    impacted.  And I just didn't find, based on the evidence or

2    argument, any of those things implicated.

3        So the motion is granted.  If Ms. Smith or Ms. Hartmann

4    could please upload an order to that effect electronically.

5        (Proceedings concluded at 2:27 p.m.)

6                              --oOo--

7

8

9

10

11

12

13

14

15

16

17

18

19

20                          CERTIFICATE

21        I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
22   above-entitled matter.

23     **/s/ Kathy Rehling**                              **03/30/2022**

24   _____        _____
     Kathy Rehling, CETD-444                        Date
25   Certified Electronic Court Transcriber

35

                                   INDEX

1

PROCEEDINGS                                                        3

2

WITNESSES

3

-none-

4

EXHIBITS

5

Plaintiff's Five Exhibits at Docket 22            Received 6

6

Defendant's Exhibits 10, 13, 14, 15, 16,          Received 6
and 17 at Docket 23

7

8

RULINGS                                                          32

9

END OF PROCEEDINGS                                              34

10

INDEX                                                           35

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT A-4

<u>NO. **DC-22-00304**</u>

| | | |
|---|---|---|
| **SCOTT BYRON ELLINGTON** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **101st JUDICIAL DISTRICT** |
| | § | |
| **PATRICK DAUGHERTY,** | § | |
| | § | |
| *Defendant.* | § | **DALLAS COUNTY, TEXAS** |

---

### PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO PATRICK DAUGHERTY

---

**To:** Defendant Patrick Daugherty by and through his counsel Ruth Ann Daniels and Drew York at **Gray Reed & McGraw, LLP**, 1601 Elm Street, Suite 4600, Dallas, Texas 75201.

### <u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

#### A. INSTRUCTIONS

1.      Your responses should be complete and based on all information reasonably available to you at the time the response is made. Your responses must be preceded by the request to which they apply. These requests are ongoing in nature and you are requested to make timely amendments or supplements as new information becomes available during this case.

2.      Any objections to these Requests must state the legal or factual basis for the objection and indicate the extent to which you are refusing to comply with the request. Please note that objections that are not made within the time required or which are obscured by numerous, unfounded objections, are waived unless the Court excuses the waiver for good cause. In addition, you should not object that any of the Requests calls for the production of information that is privileged. Instead, you should state that the information responsive to the request has been withheld and the privileges asserted justifying withholding that information.

3.      Your responses to these Requests must be served at the agreed upon time and date, 09:00 CST on June 14, 2022, at the law offices of **Lynn Pinker Hurst & Schwegmann, LLP**, 2100 Ross Ave., Suite 2700, Dallas, Texas 75201.

4.      With respect to any objection or assertion of privilege, you are state: (1) that production, inspection, or other requested action will be permitted as requested; (2) that the requested items are being served with the response; (3) that production, inspection, or other requested action will take place at a specified time and place (if you are objecting to the time and place of production); or (4) that no responsive items have been identified after a diligent search.

---

5.      These Requests seek the production of electronic or magnetic data. Information that exists in electronic form is requested in its native or near-native format and should not be converted to imaged formats. Native format requires production in the same format in which the information was customarily created, used, and stored by you, with all metadata intact. The following are examples of the native or near-native forms in which specific types of electronically-stored information ("ESI") should be produced.

| Microsoft Word documents | .doc, .docx |
|---|---|
| Microsoft Excel spreadsheets | .xls, .xlsx |
| Microsoft PowerPoint presentations | .ppt, .pptx |
| Microsoft Access databases | .mdb, .accdb |
| WordPerfect documents | .wpd |
| Adobe Acrobat documents | .pdf |
| Images | .jpg, .jpeg, .png, .tiff, .gif |
| Videos | .avi, .mpg, .mpeg, .mp4, .flv, .mov |
| Audio | .mp3 |
| Email | Messages should be produced in a form that readily supports import into standard email client programs, such as those outlined in RFC 5322 (the internet email standard). For Microsoft Exchange or Outlook, that means .pst format. Single message production formats like .msg or .eml may be furnished, if source foldering data is preserved and produced. If your workflow requires that attachments be extracted and produced separately, those attachments should be produced in their native forms with parent/child relationships to the messages and containers preserved and produced in a delimited text file. |
| Databases | Unless the entire contents of a database are responsive, extract responsive content to a fielded and electronically searchable format preserving metadata values, keys and filed relationships. If doing so is not feasible, please identify and supply information concerning the schemae and query language of its export capabilities, so as to facilitate crafting a query to extract and export responsive data |

Information that does not exist in native electronic formats or which require redaction of privileged content should be produced as single page .tiff images with OCR text furnished and logical unitization and family relationships preserved. Production of ESI should be made using a thumb/flash drive or, preferably, an FTP client.

6.      For any documents you that you claim no longer exist or cannot be located, provide all of the following

       a.      A statement identifying the documents;

       b.      A statement of how and when the document ceased to exist or when it could no longer be located;

       c.      The reasons for the document's nonexistence or loss;

       d.      The identity, address, and job title of each person having knowledge about the nonexistence or loss of the document; and

       e.      The identity of any other document evidencing the nonexistence or loss of the document or any fact concerning the nonexistence or loss.

7.      The date range for these Requests is from January 1, 2021 through the entry of a final, unappealable judgment or other disposition of this action (or from the date You began Your observation, surveillance, recordation, and/or investigation of any Ellington Party or Location, if earlier than January 1, 2021 through the entry of a final, unappealable judgment or other disposition of this action).

## B. DEFINITIONS

1.      "Defendant," "You," or "Daugherty" means Defendant Patrick Daugherty, your agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions, and their predecessors, successors or affiliates, and their respective agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

2.      "Plaintiff" means Plaintiff Scott Byron Ellington.

3.      "Ellington Party" means Scott Byron Ellington, Byron Ellington, Marcia Maslow, Adam Maslow, the two minor children of Marcia and Adam Maslow, Stephanie Archer and her minor child, and any person who was then accompanying any of the aforementioned individuals.

4.      "Ellington Location" means 120 Cole Street, Dallas, Texas 75207, 3825 Potomac Ave, Dallas, Texas 75205, 4432 Potomac, Dallas, Texas 75025, 430 Glenbrook Dr., Murphy, Texas 75094, 5101 Creekside Ct., Parker, Texas 75094, any other residence or place of business of any Ellington Party, and any other location You believed to be associated with any Ellington Party.

5.      "Ellington Recordings" means all electronic recordings of any Ellington Party or Ellington Location, including any persons or vehicles at such Ellington Locations.

6.      "Petition" means the Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction.

7.       "Documents" should be afforded the broadest possible definition and includes (by way of example, only, and **not** as an exclusive list) any written, recorded, or graphic material of any kind or description, whether sent or received or neither, including originals, non-identical copies (whether different from the original because of marginal notes or other material inserted therein or attached thereto, or otherwise), drafts (and both sides thereof), and including, but not limited to, papers, letters, memoranda, journals, notes, telephone messages or memos, minutes, opinions, reports, contracts, agreements, correspondence, telegraphs, cables, e-mails, telex messages, text messages (SMS), multimedia messages (MMS), online access data (including GPS data and internet browser search history), social media posts and messages on platforms including but not limited to Facebook, Snapchat, Instagram, LinkedIn, and the like, messages and message attachments on messaging platforms including but not limited to Telegram, Signal, Kik, WhatsApp, Facebook Messenger and the like, reports and recordings of telephone and other conversations, or other interviews, or conferences or other meetings, photographs, negatives, Photostats, layouts, drawings, sketches, specifications, blueprints, brochures, fliers, advertisements, data sheets, data processing cards, magnetic discs, tapes and chips, usb drives, computer printouts, recordings and tapes, video recordings and tapes, purchase orders, invoices, diaries, desk calendars, appointment books, logs and things similar to any of the foregoing that are in your possessions, custody, control, agency, or known by you to exist, or that possession, custody, control, agency of your attorney.

## C.  REQUESTS FOR PRODUCTION

Request No. 1:  All Ellington Recordings, with metadata sufficient to identify (a) the time and date the Ellington Recording was made, and (b) devices used to make each such Ellington Recording.

Request No. 2: All documents and communications containing or referencing any Ellington Recording sent to or received from any other person or entity.

Request No. 3: All documents and communications with any other person or entity regarding the Ellington Recordings and/or the observation, surveillance, recordation, or investigation of any Ellington Party or Location.

Request No. 4: All electronic or hand-written notes, memoranda, or other documents related to or evidencing Your recordation, observation, surveillance, or investigation of any Ellington Party or Ellington Location.

Request No. 5: The make, model, year, and identity of the owner of all vehicles driven by You while observing, surveilling, recording, or investigating any Ellington Party or Location, especially on the dates and times referenced in Petition paragraphs 11–13 as well as throughout Petition **Exhibits A**, **A-11**, and **B**.

Request No. 6: All documents and communications sufficient to show Your location while observing, surveilling, recording, or investigating any Ellington Party or Location, especially on

the dates and times referenced in Petition paragraphs 11–13 as well as throughout Petition **Exhibits A**, **A-11**, and **B**.

Request No. 7: All documents and communications sufficient to show the reasoning behind Your decision to record, observe, surveil, and investigate the Ellington Parties and Locations.

Request No. 8: All documents and communications sufficient to show any person or entity other than You that knew of and/or was involved in Your observation, recordation, surveillance, and investigation of the Ellington Parties.

Respectfully submitted,

*/s/ Michael K. Hurst*
Michael K. Hurst
  State Bar No. 10316310
  mhurst@lynnllp.com
Mary Goodrich Nix
  State Bar No. 24002694
  mnix@lynnllp.com
Nathaniel A. Plemons
  State Bar No. 24121059
  nplemons@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Julie Pettit
  State Bar No. 24065971
  jpettit@pettitfirm.com
David B. Urteago
  State Bar No. 24079493
  durteago@pettitfirm.com
**THE PETTIT LAW FIRM**
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Telephone: (214) 329-0151
Facsimile: (214) 329-4076

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record *via electronic service* on May 15, 2022.


*/s/ Julie Pettit*

_____

Julie Pettit

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Julie Pettit on behalf of Julie Pettit
Bar No. 24065971
jpettit@pettitfirm.com
Envelope ID: 64514008
Status as of 5/15/2022 2:56 PM CST

Associated Case Party: PATRICK DAUGHERTY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew K.York | | dyork@grayreed.com | 5/15/2022 2:55:35 PM | SENT |
| RUTH ANN DANIELS | | RDANIELS@GRAYREED.COM | 5/15/2022 2:55:35 PM | SENT |
| Drake M.Rayshell | | drayshell@grayreed.com | 5/15/2022 2:55:35 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Susan Langley | | slangley@grayreed.com | 5/15/2022 2:55:35 PM | SENT |
| Julie Pettit | | jpettit@pettitfirm.com | 5/15/2022 2:55:35 PM | SENT |
| Beverly Congdon | | bcongdon@lynnllp.com | 5/15/2022 2:55:35 PM | SENT |
| Patricia Perkins Mayes | | pperkins@pettitfirm.com | 5/15/2022 2:55:35 PM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 5/15/2022 2:55:35 PM | SENT |
| Mary GoodrichNix | | mnix@lynnllp.com | 5/15/2022 2:55:35 PM | SENT |
| Nathaniel A.Plemons | | nplemons@lynnllp.com | 5/15/2022 2:55:35 PM | SENT |
| Natalie Clark | | nclark@lynnllp.com | 5/15/2022 2:55:35 PM | SENT |
| Gina Flores | | gflores@lynnllp.com | 5/15/2022 2:55:35 PM | SENT |
| Michele Naudin | | mnaudin@lynnllp.com | 5/15/2022 2:55:35 PM | SENT |

# EXHIBIT A-5

**New iMessage** Cancel

To: Jim Seery

Feb 20, 2021, 11:25 AM

Other people on the SAS team with @sasmgt.com emails:

Sbell@sasmgt.com
Svitiello@sasmgt.com
Lthedford@sasmgt.com
Egirard@sasmgt.com

Feb 20, 2021, 12:34 PM



iMessage

   

       

DEF000236

10:26

**New iMessage**                    Cancel

To: Jim Seery



These are photos of Sarah Bell Goldsmith delivering boxes of document to 120 Cole St - Ellington's bat cave

Yesterday at 4:21p CST

Pat she is now a former employee as is he. I suggest leaving her alone but assume she just came across your view by accident.

I am maintaining an inventory

  iMessage 

       

DEF000237

‹ **Jim** › ◻️

Sat, Feb 20, 12:34 PM



These are photos of Sarah Bell Goldsmith delivering boxes of document to 120 Cole St - Ellington's bat cave

Yesterday at 4:21p CST

Pat she is now a former

  iMessage 

       

DEF000238





**Jim** ›

I'll call you back tomorrow if ok

Thx

No problem

Stephanie Archer

Feb 20, 2021, 11:25 AM

Other people on the SAS team with @sasmgt.com emails:

Sbell@sasmgt.com
Svitiello@sasmgt.com
Lthedford@sasmgt.com
Egirard@sasmgt.com

Feb 20, 2021, 12:34 PM



  iMessage 

       

6:09

‹    **Jim** ›    📹

Fri, Aug 20, 12:03 PM



I'm hearing that do to Pink Shrek's "retirement to spend more time with family", DC has now assumed the top role at Highgate/SkyView.

Mon, Aug 30, 2:08 PM

Called u re ur email items



DEF000240



Mon, Aug 23, 4:08 PM



I heard you guys lost Ellington. I think I found him in my neighborhood masquerading as "Pink Shrek"

Thu, Jan 27, 4:29 PM

You are eloquent, I will give you that. It's just that you have aligned yourself with a



DEF000241



DEF000242



DEF000243



DEF000244



DEF000245

6:07

< **Jim** >

Feb 20, 2021, 12:34 PM



These are photos of Sarah Bell Goldsmith delivering boxes of document to 120 Cole St - Ellington's bat cave

Yesterday at 4:21p CST

Pat she is now a former

iMessage

  

       

DEF000246



**Jim** ›

Pat she is now a former employee as is he. I suggest leaving her alone but assume she just came across your view by accident.

I am maintaining an inventory of assets re parties that I am adverse to in Delaware. She visited a location and delivered documents to a property where Ellington has been storing assets.

Ellington disposed of his phone and admitted he did not retain evidence via An ESI discovery demand regarding my case in Delaware. His assets and the people that assist him in moving those assets or evidence thereof are relevant to my Delaware claims. We will eventually subpoena her and others in that regard.



# EXHIBIT A-6

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 87 of 216

1

Patrick Daugherty - July 14, 2022

NO. DC-22-00304

| | | |
|---|---|---|
| SCOTT BYRON ELLINGTON | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 101ST JUDICIAL DISTRICT |
| | § | |
| PATRICK DAUGHERTY, | § | |
| | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

ORAL AND VIDEOTAPED DEPOSITION OF

PATRICK DAUGHERTY

JULY 14, 2022

        ORAL AND VIDEOTAPED DEPOSITION OF
PATRICK DAUGHERTY, produced as a witness at the
instance of the Plaintiff, and duly sworn or affirmed,
was taken in the above-styled and numbered cause on
the 14th of July, 2022, from 9:20 a.m. to 3:57 p.m.,
before Jennifer Quick Davenport, CSR in and for the
State of Texas, reported by machine shorthand, at the
offices of Gray Reed & McGraw LLP, 1601 Elm Street,
Suite 4600, in the City of Dallas, County of Dallas,
State of Texas, pursuant to Notice and the Texas Rules
of Civil Procedure.

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 88 of 216

56

Patrick Daugherty - July 14, 2022

1  from a legal perspective.  Now I'm asking you to

2  speculate based upon your own perspective.

3              MS. DANIELS:  Objection, form.

4      A.  I've answered your question.

5      Q.  (By Mr. Hurst)  Okay.  So you refuse to

6  answer the question about how many times it would take

7  for you to drive by Scott's residence, his office, his

8  sister's residence, his place of work -- I'm sorry,

9  his -- I've already said his place of work -- or his

10  father's and late mother's house that would

11  constitute, in your mind, an invasion of privacy or

12  stalking?

13              MS. DANIELS:  Objection, form.

14      A.  I'm not going to speculate.

15      Q.  (By Mr. Hurst)  Okay.  Do you believe that

16  what we have called stalking and invasion of privacy

17  in our lawsuit, you would define that as an

18  investigation?  Is it fair to say?

19              MS. DANIELS:  Objection, form.

20      A.  I have no conclusions on what you guys --

21  your intentions are in your lawsuit.  I just know what

22  I was doing.

23      Q.  (By Mr. Hurst)  Okay.  And what you were

24  doing, whether you agree that it was 140-something

25  times at least or not, you're saying that what you

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 89 of 216

57

Patrick Daugherty - July 14, 2022

1   were doing is a, quote, investigation?

2        A.   My actions were purely investigatory.

3        Q.   And investigatory for what reason?

4        A.   To inventory, identify and discover assets of

5   Scott Ellington's.

6        Q.   Why is that important to you?

7        A.   Because he has a history of transferring

8   assets out of entities where I owned or had an

9   economic interest or other entities like Highland

10  Capital.

11       Q.   Okay.  And --

12       A.   And its affiliates.

13       Q.   Okay.  And so what were you doing in this

14  investigation, if you will, in the context of?

15       A.   I don't understand your question.

16       Q.   Why were you investigating his assets?

17       A.   I just told you.

18       Q.   You told me that you're concerned he was

19  going to transfer assets.  But why is that important

20  to you?

21       A.   I had litigation against him in Delaware as a

22  defendant.

23       Q.   There's --

24       A.   I'm still answering my question, if you don't

25  mind.

Patrick Daugherty - July 14, 2022

1  fake, fraudulent insurance companies in the Cayman

2  Islands created by Ellington and Dondero.  That's just

3  a few that come to mind.

4           But that's why I was concerned and felt I

5  needed to identify and inventory those assets that I

6  could.

7       Q.  So in my reading into all of that response,

8  that you are identifying and investigating Scott

9  Ellington's assets because you have a claim against

10  him?

11      A.  No.  I mentioned a litany of things.

12      Q.  I'm sorry?

13      A.  I mentioned a litany of things.  It's more

14  than just a claim against him.

15      Q.  What are you planning on doing or what have

16  you been doing with the information that you're

17  gathering on Scott Ellington's assets?

18      A.  Compile it.

19      Q.  Is there a compilation of that?

20      A.  I mean, I have -- I did research, right.

21      Q.  Do you have a compilation, as you just

22  testified to a minute ago?

23      A.  Of the data?

24      Q.  Yes.

25      A.  In various forms, yes.

Case 19-34054-sgj11 Doc 3957-2 Filed 10/24/23 Entered 10/24/23 16:28:29 Desc
Exhibit A - Declaration of Julie Pettit Page 91 of 216

60

Patrick Daugherty - July 14, 2022

1    Q.  Where is that?

2    A.  I drafted emails that included that

3  information.

4    Q.  Have you provided those to us?

5    A.  No.

6    Q.  Have you provided the compilations?

7    A.  No.

8    Q.  To whom did you provide these emails and

9  compilations?

10   A.  To the creditors' committee.

11   Q.  Who in particular did you address it to?

12  Sorry.

13   A.  Can I finish?  Yeah, answer your question.

14         MS. DANIELS:  Allow him to answer your

15  questions before you interrupt him.

16   A.  To the creditors' committee for the Highland

17  Capital bankruptcy.

18         To Matt Clemente, who is counsel for the

19  creditors' committee.

20         To Andrew Clubok, who is a representative

21  of UBS on the creditors' committee.

22         To -- I can't say for sure.  I might have

23  emailed everybody on the committee.  I don't know.  I

24  generally -- I don't know if I included Josh Terry or

25  not.  I don't know if I included everybody.

Case 19-34054-sgj11    Doc 3957-2    Filed 10/24/23    Entered 10/24/23 16:28:29    Desc
Exhibit A - Declaration of Julie Pettit    Page 92 of 216

61

Patrick Daugherty - July 14, 2022

1              And then to Jim Seery, who is the CEO of

2    Highland.

3              To -- what's the guy's name -- the

4    litigation trustee on the Highland estate.  What was

5    his name?  It's Marc something, Kirschner.

6              So various members of the Quinn Emanuel

7    legal team.

8         Q.  (By Mr. Hurst)  Who else?

9         A.  There may be more.  I just don't recall off

10   the top of my head.

11        Q.  Did you send these emails with this

12   information in the compilations on an ongoing basis or

13   did you do it all at once?

14        A.  Which compilations?

15        Q.  The compilations of the assets or research

16   that you've indicated you had.

17        A.  Different, you know -- those are different

18   things, different emails.

19        Q.  Can you break them down for me, then?

20              MS. DANIELS:  So I've allowed some leeway

21   here with respect to Mr. Daugherty's explanation of

22   what he did with the information he gathered with

23   respect to investigating Mr. Ellington's assets and

24   why he did it.

25              But now you are attempting to discover

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 93 of 216

62

Patrick Daugherty - July 14, 2022

1  anything beyond that goes two or three steps, for
2  sure, past the allegations you're making in this
3  lawsuit.
4              MR. HURST:  Absolutely not.
5              MS. DANIELS:  I'm going to instruct,
6  Mr. Daugherty, that you've provided enough information
7  with respect to the information you gathered and
8  instruct you not to answer any further.
9              MR. HURST:  I wholeheartedly object to
10  the sidebar and that instruction.  What you have
11  provided to third parties, what you have discussed to
12  third parties absolutely relates to both of our causes
13  of action.
14              You have produced information regarding
15  some of the people that you have communicated with
16  that are outside of you and Mr. Ellington, and we are
17  entitled to explore that.  We are entitled to find out
18  what you did with the stalking and invasion of privacy
19  information.
20              So I guess I will ask you right now, are
21  you going to instruct him not to answer what he's done
22  with the very information that is the heart of our
23  lawsuit?
24              MS. DANIELS:  So I will disagree with you
25  that the very information that is the heart of your

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 94 of 216

63

Patrick Daugherty - July 14, 2022

1  lawsuit, you have completely mischaracterized your

2  lawsuit.  Maybe you didn't sue for the right thing.

3  But your lawsuit is for stalking and invasion of

4  privacy.

5            MR. HURST:  Correct.

6            MS. DANIELS:  And the actions of stalking

7  and invasion of privacy are what you're entitled to

8  conduct discovery on, which I have not in any way

9  attempted to affect today.

10            But when you start going beyond and

11  trying to use this for other purposes, which obviously

12  is what it's for --

13            MR. HURST:  No, it's not.  You're wrong.

14            MS. DANIELS:  -- I am going to limit --

15            MR. HURST:  Let's go off the record.

16  We're going to discuss whether we go to the Court on

17  this right now.

18            MS. DANIELS:  Okay.

19            THE VIDEOGRAPHER:  We're off the record.

20  The time is 10:23.

21            (Recess 10:23-10:54.)

22            THE VIDEOGRAPHER:  We're back on the

23  record.  The time is 10:54.

24       Q.  (By Mr. Hurst)  Mr. Daugherty, before I go

25  back into what we were disputing about before break, I

Patrick Daugherty - July 14, 2022

1    to Surgent.  I don't recall.

2        Q.  So it was either Jim Seery or somebody else?

3        A.  No.  Cody Morton was a guy -- I don't know

4    exactly who told me.  I just don't know.

5        Q.  Okay.  When did they tell you his name,

6    whoever it was?

7        A.  I don't recall.

8        Q.  Okay.  Did anyone ask you to investigate

9    Scott Ellington or anybody else?

10       A.  No.

11       Q.  Did anybody tell you that they approved of

12   your investigation?

13       A.  I wouldn't use that word.

14       Q.  Is there a word that you would use instead of

15   approved of your so-called investigation?

16           MS. DANIELS:  Objection, form.

17       A.  Appreciated.

18       Q.  (By Mr. Hurst)  Who would you say appreciated

19   your so-called investigation of Scott Ellington and

20   perhaps others?

21           MS. DANIELS:  Objection, form.

22       A.  Of the assets, right; that's what I was

23   doing.

24           People, representatives of the creditors'

25   committee, Marc Kirschner, the litigation trustee,

Patrick Daugherty - July 14, 2022

1  Quinn Emanuel lawyers, the Sidley lawyers, Seery

2  himself.  There may be others.

3      Q.  (By Mr. Hurst)  They all told you that they

4  appreciated what you were doing?

5      A.  In a sense, yeah.  Some said it outright.

6      Q.  Who said it outright?

7      A.  I just don't recall.  I think the Quinn

8  Emanuel people were very appreciative.  Kirschner.

9  Seery said it before.  I mean, there might be others.

10 Like I said, I didn't take notes on that.

11     Q.  What representatives of the creditors'

12 committee?

13     A.  The UBS representatives, Matt Clemente, the

14 lawyer for the credit committee at large.  Oh, Eric

15 Felton, who was on the committee on behalf of the

16 Crusader Redeemer Committee.

17     Q.  Anyone else?

18     A.  That's all I can think of.  There may be

19 more.

20     Q.  Let's go back to Exhibit Number 6, if we

21 could, and I'm going to -- which looks like these

22 texts just generally kind of repeat themselves and

23 then maybe a little bit more is sometimes added to the

24 bottom.

25              Is that fair?

Case 19-34054-sgj11   Doc 3957-2   Filed 10/24/23   Entered 10/24/23 16:28:29   Desc
Exhibit A - Declaration of Julie Pettit   Page 97 of 216

222

Patrick Daugherty - July 14, 2022

```
 1                    NO. DC-22-00304
 2  SCOTT BYRON ELLINGTON        §   IN THE DISTRICT COURT
                                 §
 3       Plaintiff,              §
                                 §
 4  v.                           §   101ST JUDICIAL DISTRICT
                                 §
 5  PATRICK DAUGHERTY,           §
                                 §
 6       Defendant.              §   DALLAS COUNTY, TEXAS
 7
 8
                     REPORTER'S CERTIFICATION
 9               DEPOSITION OF PATRICK DAUGHERTY
                         JULY 14, 2022
10
11            I, Jennifer Quick Davenport, Certified
12  Shorthand Reporter in and for the State of Texas,
13  hereby certify to the following:
14            That the witness, PATRICK DAUGHERTY, was
15  duly sworn or affirmed by the officer and that the
16  transcript of oral deposition is a true record of the
17  testimony given by the witness;
18            That the deposition transcript was submitted
19  on July 18, 2022, to the witness or to the attorney
20  for the witness for examination, signature and return
21  to me by August 8, 2022;
22            That the amount of time used by each party
23  at the deposition is as follows:
24  Mr. Hurst - 4:05
    Ms. Daniels - 0:00
25
```

Patrick Daugherty - July 14, 2022

1          That pursuant to information given to the
2  deposition officer at the time said testimony was
3  taken, the following includes counsel for all parties
4  of record:
5  Mr. Hurst, Ms. Pettit, Attorneys for Plaintiff
   Ms. Daniels, Attorney for Defendant
6
7          I further certify that I am neither counsel
8  for, related to, nor employed by any of the parties or
9  attorneys in the action in which this proceeding was
10 taken, and further that I am not financially or
11 otherwise interested in the outcome of the action.
12         Further certification requirements pursuant
13 to Rule 203 of TRCP will be certified to after they
14 have occurred.
15         Certified to by me this 17th day of July,
16 2022.
17
18         _____
           Jennifer Quick Davenport, Certified
19         Shorthand Reporter No. 1683
           Dickman Davenport, Inc.
20         Firm Registration #312
           Suite 101
21         4228 North Central Expressway
           Dallas, Texas 75206
22         214.855.5100     800.445.9548
           email:  jqd@dickmandavenport.com
23         Commission expires 10-31-23
24
25

# EXHIBIT A-7

REPORTER'S RECORD
VOLUME 2 OF 3
TRIAL COURT CAUSE NO. DC-22-00304
**COURT OF APPEALS CAUSE NO. 05-22-00991-CV**

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
09/29/22 3:27:00 PM
Claudia McCoy
Clerk Pro Tem

SCOTT BYRON ELLINGTON          )          IN THE DISTRICT COURT
                               )
               Plaintiff,      )
                               )
VS.                            )          DALLAS COUNTY, TEXAS
                               )
PATRICK DAUGHERTY,             )
                               )
               Defendant.      )          101ST DISTRICT COURT

TEMPORARY INJUNCTION

which was heard on

THURSDAY, SEPTEMBER 1, 2022

        On the 1st of September, 2022, the following

proceedings came on to be heard in the above-entitled

and numbered cause before the Honorable STACI WILLIAMS,

Judge Presiding, held in Dallas, Dallas County, Texas.

        Proceedings reported by machine shorthand utilizing

computer-assisted realtime transcription.  Proceedings

1   multiple lawsuits in Delaware, including a lawsuit

2   against Mr. Ellington and others that's still pending

3   for, among other things, fraud and fraudulent transfer

4   claims.

5             So why is that important?  Well, in

6   addition to that, as part of that lawsuit, Mr. Daugherty

7   was engaging in discovery, and at the same time Highland

8   had filed for bankruptcy.  In early 2021, Mr. Dondero

9   testified in the Highland bankruptcy case that both he

10  and Mr. Ellington had destroyed their cell phones.

11  Well, that was problematic because at the time

12  Mr. Ellington and Mr. Dondero were still parties, and

13  are still parties, in Mr. Daugherty's Delaware action,

14  and they were subject to discovery from those phones

15  under the purview of a special master.  So they engaged

16  in the spoliation.

17            Additionally, the information on those

18  phones would seemingly be relevant to claims that were

19  going on in the Highland bankruptcy that the creditor's

20  committee was bringing, and Mr. Daugherty was a creditor

21  of Highland at the time.  So Mr. Daugherty at that point

22  had determined that the information that he was trying

23  to get in discovery wasn't coming to him, and he

24  believed he needed to conduct further investigation on

25  his own of Mr. Ellington, including what Mr. Ellington's

1  assets were that might be available to satisfy

2  Mr. Daugherty's underlying judgment.

3                     Well, as part of Mr. Daugherty's

4  investigation -- let me back up.

5                     First, it's undisputed, as I said,

6  Mr. Daugherty has not been to any Ellington location for

7  any investigatory purposes since December of 2021.  That

8  is important to the imminent harm issue.  But why did

9  the investigation matter?  Well, based on

10  Mr. Daugherty's surveillance of Mr. Ellington's office

11  and his house and being able to get license plates of

12  vehicles that were parked there, he eventually

13  discovered a web of various entities that Mr. Ellington

14  and Mr. Dondero were using to siphon assets from the

15  reach of creditors, both Mr. Daugherty and then the

16  Court-appointed creditor's committee in the Highland

17  bankruptcy.

18                     So let's walk through one example of

19  this.  The first is that there was a lawsuit involving a

20  Highland affiliate and UBS in which UBS is paying a

21  substantial judgment, nine figures initially that grew

22  to a billion dollars, and Mr. Ellington came up with the

23  idea of setting up a dummy entity in the Cayman Islands

24  that was going to provide an after-the-event insurance

25  policy that it sold to the Highland affiliate for less

1   than the face value of the assets which the Highland

2   affiliate actually owned.  In other words, it was a

3   fraudulent transfer, and all of this was Mr. Ellington's

4   idea as he admitted in the Highland bankruptcy.

5               As part of this scheme, Mr. Ellington and

6   Mr. Dondero set up all of these entities to run this

7   through, including at the top you'll see there's an

8   entity called SAS Holdings SPV Limited.  That's

9   important here because you're going to hear some

10  testimony about it later on today that it has

11  implications in this lawsuit itself.

12              Well, not only did they use these

13  entities to create these fraudulent transfers,

14  Mr. Ellington, Mr. Dondero, Mr. Leventon, who, by the

15  way, is on the call listening to this hearing and is

16  apparently Mr. Ellington's counsel, then actively

17  concealed the existence of their scheme from new

18  management of Highland that had taken over in the course

19  of the Highland bankruptcy, and they also concealed it

20  from the bankruptcy court, and they concealed it from

21  UBS.  In fact, Mr. Ellington lied about it in e-mails

22  saying these were just ghost funds that had no assets

23  whatsoever which actually wasn't the case.

24              So what actually happened?  Well, they

25  were using these entities, Mr. Ellington and others were

1   using these entities to continue to try to operate for

2   Highland for various personal expenses, including a trip

3   to London and Paris, and another 40 plus thousand

4   dollars that was spent in Las Vegas, a trip to Toronto.

5   The one to Vegas, Your Honor, is really kind of

6   interesting because those expenses included expenses

7   spent at the Sapphire Gentleman's Club in Las Vegas.

8           So why did the investigation matter?

9   Well, there was a hearing about a month ago and Judge

10  Jernigan said that the referrals would likely be made to

11  the State Bar Disciplinary Agency regarding the

12  attorneys' activities I've heard about which would

13  particularly include Mr. Ellington.

14          MS. PETTIT:  Your Honor --

15          MR. YORK:  I'm sorry, Your Honor?

16          THE COURT:  No, that wasn't me.  I think

17  Ms. Pettit was trying to make an objection.

18          MS. PETTIT:  Yes, Your Honor.  All of this is

19  hearsay what some other bankruptcy court has said, and

20  we're not sure about the relevance of this.

21          THE COURT:  Yeah, I've let all you guys go

22  off.  I mean, we're supposed to be in Dallas.  It looks

23  like we're on a ranch in East Texas.  I'm going to give

24  them a couple more minutes and hopefully we'll get to

25  the issue at hand.

1           MR. YORK:  Your Honor, the reason this is

2    relevant goes to the purpose and the intent for why

3    Mr. Daugherty engaged in the investigation activities he

4    engaged in; not because he was attempting to intimidate,

5    harass or threaten Mr. Ellington.

6                But let me move forward because

7    Mr. Ellington's lawsuit is actually a vendetta against

8    Mr. Daugherty.  He's seeking retribution.  Here's the

9    timeline:  In December 2021, Highland filed a motion to

10   settle Mr. Daugherty's creditor claim.  The settlement

11   agreement was finally unveiled, and in the settlement

12   agreement it expressly provided that Mr. Ellington and

13   others were excluded from the released parties because

14   Mr. Daugherty was continuing his claims in Delaware

15   against them.

16               So what happened a month later?  Mr.

17   Ellington filed this lawsuit against Mr. Daugherty.

18   Then a month after that Mr. Ellington filed an objection

19   to the proposed settlement in the bankruptcy proceeding

20   based upon the claims that he asserted in this case

21   against Mr. Daugherty.  The bankruptcy court fortunately

22   overruled the objection and approved the settlement

23   which included a vacatur of the judgment against Mr.

24   Daugherty as I mentioned earlier.  So this lawsuit was

25   nothing but an attempt to thwart Mr. Daugherty's

```
1   STATE OF  TEXAS  )

2   COUNTY OF DALLAS  )

3

4           I, Terri Etekochay, Official Court Reporter

5   in and for the 101st District Court of Dallas County,

6   State of Texas, do hereby certify that the above and

7   foregoing contains a true and correct transcription of

8   all portions of evidence and other proceedings requested

9   orally by counsel for the parties to be included in this

10  volume of the Reporter's Record in the above-styled and

11  numbered cause, all of which occurred in open court and

12  were reported by me.

13          I further certify that this Reporter's Record

14  of the proceedings truly and correctly reflects the

15  exhibits, if any, offered by the respective parties.

16

17          WITNESS MY HAND this 22nd day of September,

18  2022.

19  _____ T.Etekochay

20          Terri Etekochay, Texas CSR #8283
            Certificate Expires: 1-31-2023
21          Email: terri.etekochay@dallascounty.org
            Official Reporter, 101st District Court
22          George Allen Sr. Courts Building
            600 Commerce Street, 6th Floor
23          Dallas, Texas 75202-4631

24

25
```

Terri Etekochay, CSR, RPR, CRR
Official Court Reporter, 101st District Court

# EXHIBIT A-8

**CAUSE NO. DC 22-00304**

| | | |
|---|---|---|
| **SCOTT ELLINGTON** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **101ˢᵗ JUDICIAL DISTRICT** |
| | § | |
| **PATRICK DAUGHERTY,** | § | |
| | § | |
| *Defendant.* | § | **DALLAS COUNTY, TEXAS** |

## TEMPORARY INJUNCTION

On September 1, 2022, this Court heard Plaintiff Scott Ellington's Application for Temporary Injunction, requesting that the Court grant injunctive relief against Defendant Patrick Daugherty. The Court, having considered the application and the evidence and arguments of counsel presented at or in connection with the temporary injunction hearing, finds that Plaintiff has met his burden to establish that he has a probable right of recovery as to both causes of action against Defendant, based on a finding of the facts as set for below. The Court further finds that, absent injunctive relief, there will be immediate and irreparable injury to Plaintiff, as explained further below.

1. The evidence presented at the temporary injunction hearing supports the following findings by the Court as to invasion of privacy:

   a. Defendant intentionally intruded upon the seclusion, solitude, and private affairs of Plaintiff by regularly appearing at this office, residence, his wife's residence, his father's residence, and his sister's residence.

   b. Defendant took photographs and other recordings of Plaintiff's residences and the residences of Plaintiff's family members.

    c.   Defendant also appeared at these locations associated with Plaintiff on more than one occasion and these appearances were unsolicited, unwanted, and highly offensive to a reasonable person.

    d.   Defendant's continued behavior increasingly caused Plaintiff to be upset, agitated, depressed, and fearful for the safety of himself and his family.

    e.   Defendant's behavior constituted an intentional intrusion of privacy and Plaintiff suffered injury as a result of intrusions.

2.    The evidence presented at the temporary injunction hearing supports the following findings by the Court as to stalking:

    a.   On more than one occasion, the Defendant engaged in harassing behavior;

    b.   As a result of the harassing behavior, Plaintiff reasonably feared for his safety or the safety of a member of his family; and

    c.   the defendant, while engaged in harassing behavior, by acts or words threatened to inflict bodily injury on the claimant or to commit an offense against the claimant, a member of the claimant's family, or the claimant's property;

    d.   Defendant had the apparent ability to carry out the threat, and Defendant's apparent ability to carry out the threat caused Plaintiff to fear for the safety of himself or a member of his family.

    e.   Plaintiff had at least once clearly demanded that the Defendant stop the harassing behavior and after the demand, Defendant continued.

    f.   Plaintiff also reported the harassing behavior to the police as a stalking offense.

3.    The Court further finds that unless restrained Defendant Patrick Daugherty will continue to harass Plaintiff Scott Ellington, his wife (Stephanie Archer), his sister (Marcia Maslow),

and his father (Byron Ellington), including committing the following acts:

    a. Traveling, on a near daily basis, to the personal residences of Plaintiff, Stephanie Archer, Marcia Maslow, and Byron Ellington without invitation and parking outside or drivingly slowly past the residences;

    b. Taking pictures and video recordings of the personal residences of Plaintiff, Stephanie Archer, Marcia Maslow, and Byron Ellington;

    c. Traveling, on a near daily basis, to Plaintiff's office without invitation and parking outside or drivingly slowly past the building where the office is located;

    d. Taking pictures or other recordings of Plaintiff, his family members, and his office, residence, or his family's residences.

    e. The Court finds that even if those activities have since slowed, or ceased, due to this pending hearing on this temporary injunction, the issuance of a temporary injunction is still necessary to maintain the status quo.

4.     Plaintiff will suffer irreparable harm if Defendant is not restrained immediately from continuing to harass Plaintiff and his family. Specifically, Plaintiff reasonably fears that Defendant may cause him or his family bodily harm, and the accompanying anxiety interferes with his ability to conduct his normal, daily activities. Plaintiff has also already suffered irreparable harm due to the harassment and invasions of privacy already suffered.

5.     Given the foregoing, there is no adequate remedy at law to grant Plaintiff complete, final and equal relief.

6.     **IT IS ORDERED** that, from the date of this order through final trial on the merits, Patrick Daugherty, his agents, servants, employees, attorneys, and any persons in active concert or participation with him and who receives actual notice of this order,

to refrain from the following:



a.  Being within 500 feet of Plaintiff's *presence;*

b.  Being within 500 feet of Plaintiff's office located at 120 Cole Street, Dallas, Texas 75207;

c.  Being within 500 feet of Plaintiff's residence located at 3825 Potomac Ave, Dallas, Texas 75205;

d.  Being within 500 feet of Stephanie Archer;

e.  Being within 500 feet of Stephanie Archer's residence located at 4432 Potomac, Dallas, Texas 75025;

f.  Being within 500 feet of Marcia Maslow;

g.  Being within 500 feet of Marcia's residence located at 430 Glenbrook Dr., Murphy, Texas 75094;

h.  Being within 500 feet of Byron Ellington

i.  Being within 500 feet of Byron Ellington's residence located at 5101 Creekside Ct., Parker, Texas 75094;

j.  Photographing, videorecording, or audio recording Plaintiff, Stephanie Archer, Marcia Maslow, or Byron Ellington;

k.  Photographing or videorecording the vehicles, residences or places of business of Plaintiff, Stephanie Archer, Marcia Maslow, or Byron Ellington; and

l.  Directing any communications toward Plaintiff, Stephanie Archer, Marcia Maslow, or Byron Ellington.

7.  Issuance of this temporary injunction will not disserve the public interest.

8.  Plaintiff's injury outweighs any injury that will be caused to Defendant by issuance of this temporary injunction.

---

Temporary Injunction                                   Page 4 of 5

9.    **IT IS FURTHER ORDERED THAT** bond shall be set at $25,000.00 *(handwritten)*

*(handwritten left margin: [Twenty-five dollars and xx/100 )*

On entry of this Order, the clerk of the Court shall issue a new writ of injunction

conforming with the law and the terms of this Order.

10.    **IT IS FURTHER ORDERED THAT** this case shall be set for trial on the merits

beginning on *September 2, 2023* at *9:00 a.m.* in *(handwritten: -2week trial date)*

the 101st Judicial District Court, Dallas County, Texas.  This temporary injunction

shall remain in effect through trial, except upon further order of this Court.

11.    Daugherty is hereby notified that violation of this Order by him, his officers, agents,

attorneys, servants, employees and/or by any person acting in active concert of

participation with him and who receives actual notice of this Order, may be subject

to contempt proceedings.

SIGNED and ENTERED on *Sept. 1, 2022* at *11:00 P.M.*

_____
PRESIDING JUDGE

# EXHIBIT A-9



---------- Forwarded message ---------
From: **Julie Pettit** <jpettit@pettitfirm.com>
Date: Fri, Aug 25, 2023 at 8:13 PM
Subject: Re: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause No. DC-22-00304 (101st Jud. Dist., Dallas
To: Thompson, Blayne R. <blayne.thompson@hoganlovells.com>
Cc: mhurst@lynnllp.com <mhurst@lynnllp.com>, McNeilly, Edward <edward.mcneilly@hoganlovells.com>, Wynne, Rick <richard.wynne@hoganlovells.com>, John A. Morris <jmorris@pszjlaw.com>


Blayne,


For reasons that we are not obligated to disclose, we believe Judge Nelms' testimony is important to Mr. Ellington's damages and motivations.  Are you available for a call early next week to discuss?


Best Regards,

Julie Pettit Greeson
The Pettit Law Firm
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Direct: 214-329-1846

Fax: 214-329-4076
jpettit@pettitfirm.com



On Fri, Aug 25, 2023 at 1:32 PM Thompson, Blayne R. <blayne.thompson@hoganlovells.com> wrote:

Thank you, Julie. Please let us know this afternoon, if possible.

If we do not hear back from you by 4:00 CT, we'll need to file our motion.

Sincerely,

Blayne

**Blayne Thompson**
Senior Attorney

**Hogan Lovells US LLP**
609 Main Street, Suite 4200

Houston, TX 77002

Tel:      +1 713 632 1400
Direct:   +1 713 632 1429
Fax:      +1 713 632 1401
Email:    blayne.thompson@hoganlovells.com
          www.hoganlovells.com

*Please consider the environment before printing this e-mail.*

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Friday, August 25, 2023 1:22 PM
**To:** Thompson, Blayne R. <blayne.thompson@hoganlovells.com>
**Cc:** mhurst@lynnllp.com; McNeilly, Edward <edward.mcneilly@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; John A. Morris <jmorris@pszjlaw.com>
**Subject:** Re: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause No. DC-22-00304 (101st Jud. Dist., Dallas

**[EXTERNAL]**

Hi Blayne,


We have not yet had an opportunity to discuss this with our client. I will respond as soon as I have had an opportunity to discuss with him.


Thank you.


Best Regards,


Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com




On Fri, Aug 25, 2023 at 10:01 AM Thompson, Blayne R. <blayne.thompson@hoganlovells.com> wrote:

  Julie,


  Following up on the message below. Please confirm that you are withdrawing the subpoena.

If we do not receive a response from you by 2:00 pm today, we will have to file our motion to quash.


Sincerely,

Blayne




**Blayne Thompson**
Senior Attorney

**Hogan Lovells US LLP**
609 Main Street, Suite 4200

Houston, TX 77002

Tel:     +1 713 632 1400
Direct:  +1 713 632 1429
Fax:     +1 713 632 1401
Email:  blayne.thompson@hoganlovells.com
          www.hoganlovells.com


*Please consider the environment before printing this e-mail.*




**From:** Thompson, Blayne R.
**Sent:** Wednesday, August 23, 2023 11:02 PM
**To:** Julie Pettit <jpettit@pettitfirm.com>
**Cc:** mhurst@lynnllp.com; McNeilly, Edward <edward.mcneilly@hoganlovells.com>; Wynne, Rick
<richard.wynne@hoganlovells.com>; John A. Morris <jmorris@pszjlaw.com>
**Subject:** RE: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause No. DC-22-00304 (101st Jud. Dist., Dallas


Julie,


It has been nearly a month now, and we still have not received any response to our below email.


Instead, and much to our surprise, Judge Nelms has informed us that he was again personally served by a process server with another subpoena from your office yesterday. Not only does this come unannounced as we continue to await a response from you to our latest correspondence below, but it also comes despite (1) our making it clear that we represent Judge Nelms and (2) our agreement to accept service of a new subpoena for a mutually agreeable time

and location, in the event that such a deposition would be relevant and necessary. This behavior is unnecessary and harassing. Let's not let it happen again.

We have indicated to you repeatedly that we are willing to work with you to the extent that there is relevant information that you need from Judge Nelms. To that end, as you have agreed below, it is clear that Judge Nelms has no information relevant to the stalking claims you have asserted, making a deposition both unnecessary and inappropriate. Further, we provided a detailed timeline below showing that the November 2021 settlement agreement you complain about happened *after* Judge Nelms left the role of being an independent director—which you never responded to. Nonetheless, in an effort to compromise and eliminate any further waste of time and expense, if desired, we have offered to provide a declaration attesting to his lack of knowledge. We have also invited you to send us a draft declaration for Judge Nelms to review. Please respond to that email.

In the meantime, please confirm that you are withdrawing the most recent subpoena, in which you again inappropriately and unilaterally scheduled a deposition for a date that does not work for us. If you do not agree to do so by noon on Friday, we will have to file a motion to quash.

Sincerely,

Blayne

**Blayne Thompson**
Senior Attorney

**Hogan Lovells US LLP**
609 Main Street, Suite 4200

Houston, TX 77002

Tel:      +1 713 632 1400
Direct:  +1 713 632 1429
Fax:      +1 713 632 1401
Email:   blayne.thompson@hoganlovells.com
            www.hoganlovells.com

*Please consider the environment before printing this e-mail.*

**From:** McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Sent:** Thursday, July 27, 2023 12:57 PM
**To:** Julie Pettit <jpettit@pettitfirm.com>
**Cc:** Thompson, Blayne R. <blayne.thompson@hoganlovells.com>; Hefter, Michael C.

<michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; mhurst@lynnllp.com; John A. Morris <jmorris@pszjlaw.com>

**Subject:** RE: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause No. DC-22-00304 (101st Jud. Dist., Dallas

Julie:

Thank you for your email. It highlights for us why deposing Judge Nelms is unnecessary, irrelevant and appears designed for the improper purpose of fishing for evidence to bolster claims in the bankruptcy case.

- First, you acknowledge that Judge Nelms did not have knowledge of Mr. Daugherty's alleged actions.

- Second, the timeline outlined in your email reinforces this point. Highland's chapter 11 plan was confirmed on February 22, 2021. The effective date of the plan was August 11, 2021. Judge Nelms is not, and has never been, a board member of the Highland Claimant Trust or any other post-confirmation entity. Indeed, the chapter 11 plan contemplated no role post-effective date for Judge Nelms, who ceased to have any official role with the Highland estate on August 11, 2021. In light of that, it is unsurprising that Judge Nelms involvement with the Highland estate post-confirmation (i.e., post-February 22, 2021) was minimal and certainly unrelated to any claims asserted by your client. Moreover, and critically, the allegedly improper additional settlement consideration that you assert Daugherty obtained relates to a settlement agreement executed on November 22, 2021, over three months after the effective date of the plan and thus over three months after Judge Nelms ceased to have any official role with the Highland estate. You also offer no basis for why the claim that "Seery and Clubok kept [Judge Nelms] in the dark regarding the stalking" is either factually accurate or relevant to the stalking complaint, as Judge Nelms in any event had no role in approving any such settlement agreement.

- Third, we agree entirely with the email sent by Joshua Levy at approximately 2:28 p.m. (CT) on July 25, 2023. The discovery efforts in this litigation (which Mr. Ellington had remanded to state court on the basis that the litigation was not connected to the bankruptcy) clearly implicate the Gatekeeper Order. We are copying John Morris on this response and, like Mr. Levy, request that you copy Mr. Morris on all correspondence with us, as the Gatekeeper Order and Mr. Morris's clients are clearly implicated.

As the ostensible purpose of the deposition is to confirm that Judge Nelms knows nothing about the stalking allegations, he is willing to make that statement in a declaration, which will save everyone time and money and will obviate the myriad problems with a deposition outlined above. Please draft a declaration for us and Judge Nelms to review.

Sincerely,

Edward McNeilly

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Tuesday, July 25, 2023 1:46 PM
**To:** McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Cc:** Thompson, Blayne R. <blayne.thompson@hoganlovells.com>; Hefter, Michael C.
<michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; mhurst@lynnllp.com
**Subject:** Re: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause No. DC-22-00304 (101st Jud. Dist., Dallas

**[EXTERNAL]**

Edward and Blayne,

Thank you for your email. Please allow me to provide some context to why we are seeking the deposition of Judge Nelms.

- We have evidence in this case that Daugherty—with the assistance of at least one other individual—stalked Mr. Ellington, his assistant, his fiancé, his father, his sister, and his counsel.

- We have evidence in this case that Daugherty—with the assistance of at least one other—stalked Mr. Ellington's home, Mr. Ellington's office, Mr. Ellington's assistant, Mr. Ellington's sister's home, and Mr. Ellington's father's home. **(See attached Exhibit A for photos taken by Daugherty of each)**

- We have evidence that during the same time period, the same make/model of Daugherty's car was found to have been following Mr. Ellington's fiancé for miles and miles while she was alone in her vehicle. **(See attached Exhibit B, for video of black Yukon following Stephanie Archer for miles)**

- We have testimony that Mr. Daugherty took photos and possibly videos of Mr. Ellington's minor nieces playing basketball, which we believe he has since deleted.

- We believe Mr. Daugherty attempted to run Mr. Ellington's elderly father off the road while his father was taking a walk.

- We have evidence that Daugherty would do things such as hide behind dumpsters in attempts to obtain photos of Mr. Ellington and his family **(See attached Exhibit C, photo of Daugherty behind dumpster)**

7

Following a full evidentiary hearing, an injunction was put into place that required Daugherty to cease the stalking and invasion of privacy (**See Exhibit D, injunction**)

Based on what we have discovered so far, we agree that Judge Nelms did *not* have knowledge of Mr. Daugherty's actions. We also believe he would *not* have condoned Mr. Daugherty's actions if he had known about these actions. We would like to confirm these facts in the deposition of Judge Nelms.

While we do believe Daugherty left Judge Nelms was left in the dark regarding Daugherty's stalking, what is significant is that all of this happened during the time Judge Nelms was on the board and Jim Seery and Andy Clubok *did know about Mr. Daugherty's inappropriate investigation*. **(See attached Exhibit E, for communications during the relevant time period with Seery and Clubok in which Judge Nelms is not included)** In fact, not only were Seery and Clubok aware—but according to Daugherty, Seery himself told Daugherty that he "appreciated" the investigation. **(See attached Exhibit F, deposition of Daugherty, pages 104-105)**. We want to depose Judge Nelms on whether, as we expect, Seery and Clubok kept him in the dark regarding the stalking.

Additionally, please take note of the following:

- Seery has produced over 18,000 pages of emails and texts in response to our subpoena for communications from Daugherty regarding his investigation into Ellington;


- To date, Clubok has refused to produce his responsive documents and has been dodging service attempts for his deposition.  However, Daugherty testified that he did provide documentation regarding his investigation directly to Clubok **(See Exhibit G, deposition of Daugherty, pages 5-60)**

At the Plan Confirmation hearing on February 2, 2021, the Debtor and Daugherty announced a settlement of Daugherty's proof of claim in the Highland Bankruptcy.  Nine months later in November 2021, the Debtor and Daugherty executed a settlement agreement that, in addition to the material terms announced in February 2021, gave Daugherty an additional $1m in Class 9, part of Highland's investment track record to claim as his own, ownership of two Highland affiliates he could use to pursue litigation claims, and a prospective observer role on the Claimant Oversight Board.  The Debtor agreed to all of this additional settlement consideration subsequent to receiving Mr. Daugherty's cooperation in investigating Ellington.  Given the Board's role in approving settlement of material proofs of claim in the bankruptcy, Ellington believes that Judge Nelms should have been made aware of Daugherty's actions—if not by Daugherty, then certainly by Jim Seery and Andy Clubok.

It does not seem to be a coincidence that Judge Nelms was excluded from all communications relating to the stalking and investigation. It does not seem to be a coincidence that Mr. Daugherty's settlement in the bankruptcy became materially better for Mr. Daugherty after Judge Nelms was seemingly cut out of communications and only after Mr. Daugherty had provided Seery and Clubok with thousands upon thousands of pages of his investigatory work regarding Ellington. And it does not seem to be a coincidence that Judge Nelms participated in the *legitimate* negotiations with Daugherty, but that Judge Nelms was purposefully excluded from what Mr. Ellington believes were the illegitimate negotiations.

For these reasons, we believe the deposition of Judge Nelms is relevant and critical. As we have reiterated multiple times, we are willing to work with Jude Nelms with respect to his scheduling. We will endeavor to be as efficient as possible and respect his time. Please advise regarding his availability.

Thanks,

Julie

On Fri, Jul 21, 2023 at 4:27 PM McNeilly, Edward <edward.mcneilly@hoganlovells.com> wrote:

Julie:

We should have responded sooner that Blayne is on vacation.  As we assess the current situation, we think that the basis for taking the deposition of Judge Nelms is seriously less compelling than we originally thought, which was baseless from the outset.  We now understand that, in his deposition testimony, Daugherty testified that he did not recall ever speaking with Judge Nelms.  In light of this testimony, what is your basis for thinking that Judge Nelms has any relevant information to the stalking allegations? As you know Judge Nelms has declared that he has none.  In that vein, can you show us a single document that has been produced by the parties in the case, or any third party, that might provide a justification for the deposition.  We doubt that you can, especially given that Judge Nelms has none.  But if you think there is something that you would like us to look at, please provide it as soon as you can.

Given the clear evidence that Judge Nelms was not involved in, and has no knowledge of, the matters that are at issue in this litigation, we invite you to reconsider your plan to depose him.  Judge Nelms has compelling reasons to seek and obtain a protective order should your client persist in seeking his deposition.  In the meantime, when the Judge returns from his vacation, we will seek his availability after July 27, to the extent the Court were to determine that his deposition is required under the Texas Rules of Civil Procedure.

Edward

---

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Friday, July 21, 2023 11:06 AM
**To:** Thompson, Blayne R. <blayne.thompson@hoganlovells.com>
**Cc:** Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; McNeilly, Edward <edward.mcneilly@hoganlovells.com>; mhurst@lynnllp.com
**Subject:** Re: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause No. DC-22-00304 (101st Jud. Dist., Dallas

[EXTERNAL]

Hi Blayne,

Can you let us know what dates work? We are trying to accommodate his schedule.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

[jpettit@pettitfirm.com](mailto:jpettit@pettitfirm.com)



On Thu, Jul 20, 2023 at 2:07 PM Julie Pettit <[jpettit@pettitfirm.com](mailto:jpettit@pettitfirm.com)> wrote:

Hi Blayne,

We are trying to work with you on dates. Please advise.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

[jpettit@pettitfirm.com](mailto:jpettit@pettitfirm.com)



On Wed, Jul 19, 2023 at 8:23 AM Julie Pettit <[jpettit@pettitfirm.com](mailto:jpettit@pettitfirm.com)> wrote:

Hi Blayne,

Just following up on this.  Please advise regarding dates.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

[jpettit@pettitfirm.com](mailto:jpettit@pettitfirm.com)



On Sun, Jul 9, 2023 at 10:41 PM Julie Pettit <[jpettit@pettitfirm.com](mailto:jpettit@pettitfirm.com)> wrote:

Hi Blayne,

We are still working through some issues and hoping to reach an agreement on the items discussed below.  Daugherty's counsel is taking a deposition of one of our witnesses tomorrow, but may Michael and I call you after that exposition tomorrow?

The 11th seems too tight to work through these issues, so are there any other days in July that Judge Nelms is available for a deposition? I know you said he is available on the 27th, but are there any other days you are available? We want to make sure we can accommodate everyone's schedules.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com



On Fri, Jun 30, 2023 at 4:48 PM Thompson, Blayne R. <blayne.thompson@hoganlovells.com> wrote:

Julie,

Thank you for sending the petition. It confirms our understanding that the claims in this case are quite narrow, and that Judge Nelms has no connection to the relevant issues.

Given that, and your refusal to agree that the scope of the deposition will be limited to the claims & defenses in this case, as required by the Rules, it appears that a motion for protection may be necessary. To that end, your vague representation that the questions will be "appropriate" to not only the claims & defenses, but also "the documents produced in the case," is insufficient and does not represent the permissible scope of discovery in Texas. See Tex. R. Civ. P. 192.3. And we do have the right to instruct the witness not to answer in the event that questions clearly exceed the permissible scope of discovery. See Tex. R. Civ. P. 199.5(f); *id.* 199 cmt. 4. We asked for the Rule 11 Agreement given that it seems that you plainly intend to go beyond the permissible scope of discovery, and we do not want there to be any confusion when the witness refuses to answer such questions. We understand your position, so as of now, unless we hear otherwise from you on this point, in the event you decide to proceed with a deposition of Judge Nelms, we will seek a motion for protection and move to quash the deposition in the interim, and will mark you down as opposed.

That said, we remain open to reaching agreement on the scope to avoid the need for a protective order. We understand that Jim Seery's counsel has reached out to set up a joint call with you, John Morris, and us next week in an effort to reach agreement on a shared scope for the depositions. We also understand that you have provided Mr. Seery with topics for his deposition. If we can come to an agreement on scope in a similar fashion— by agreement on a list of topics—that may ameliorate the need for a protective order.

Also, as Mr. Seery's counsel notified you in his email earlier today, please note that there is a Gatekeeper order in place in the bankruptcy court that prohibits, among other things, any conduct that could be considered the "pursuit of a claim" against Judge Nelms. We have reattached that order, and the related orders you received, for your reference. Pursuant to Rule 199.5, we will instruct the witness not to answer any questions that would violate this order.

As to Mr. Morris, he does not intend to appear on the record. With that, please take notice that he intends to attend any deposition of Judge Nelms, if one goes forward.

Finally, should a deposition of Judge Nelms proceed, Michael Hefter and/or Rick Wynne (copied) intend to seek *pro hac vice* admission to defend the deposition. Please confirm that you are unopposed to this.

Sincerely,

Blayne

**Blayne Thompson**
Senior Attorney

**Hogan Lovells US LLP**
609 Main Street, Suite 4200

Houston, TX 77002

Tel:       +1 713 632 1400
Direct:  +1 713 632 1429
Fax:      +1 713 632 1401
Email:   blayne.thompson@hoganlovells.com
             www.hoganlovells.com

*Please consider the environment before printing this e-mail.*

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Thursday, June 29, 2023 4:27 PM
**To:** Thompson, Blayne R. <blayne.thompson@hoganlovells.com>
**Cc:** Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>;
McNeilly, Edward <edward.mcneilly@hoganlovells.com>; mhurst@lynnllp.com>
**Subject:** Re: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause No.
DC-22-00304 (101st Jud. Dist., Dallas

**[EXTERNAL]**

Thanks, Blayne. Please let me know.


We would likely take it on the 11th, which is the other date you offered.


Best Regards,


Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com



On Thu, Jun 29, 2023 at 3:48 PM Thompson, Blayne R. <blayne.thompson@hoganlovells.com> wrote:

Julie,

We are discussing internally and expect to be able to get back to you by tomorrow.

In the meantime, please note that we misspoke on Judge Nelms' availability. He is not available on July 26, but can be available on July 27, subject to reaching an agreement on the terms of the deposition as discussed below.

Thank you,

Blayne

**Blayne Thompson**
Senior Attorney

**Hogan Lovells US LLP**
609 Main Street, Suite 4200

Houston, TX 77002

Tel:      +1 713 632 1400
Direct:   +1 713 632 1429
Fax:      +1 713 632 1401
Email:   blayne.thompson@hoganlovells.com
            www.hoganlovells.com

*Please consider the environment before printing this e-mail.*

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Thursday, June 29, 2023 9:55 AM
**To:** Thompson, Blayne R. <blayne.thompson@hoganlovells.com>
**Cc:** Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>;
McNeilly, Edward <edward.mcneilly@hoganlovells.com>; mhurst@lynnllp.com>
**Subject:** Re: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause No.
DC-22-00304 (101st Jud. Dist., Dallas

**[EXTERNAL]**

Hi Blayne,

Following up on my email below.  Please advise.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com



On Mon, Jun 26, 2023 at 2:51 PM Julie Pettit <jpettit@pettitfirm.com> wrote:

Blayne,

1. Please see attached a copy of our live petition.  As previously stated, the questions in the deposition will be appropriate to the allegations, defenses, and documents produced in the case.  I am not aware of any rule that permits you to instruct the witness not to answer because you unilaterally deem it to be irrelevant to the case, in particular a case where your client is a third party and you are not familiar with the claims, defenses, underlying factual allegations, and document production.  As stated below, we expect your objections will be limited to form, non-responsive, and leading.

2. With respect to Mr. Morris' attendance, we will consider this request.  At a minimum, Mr. Morris is not counsel of record, has not made an appearance, and does not represent a party or witness, so he will not be permitted to speak during on the record during the deposition.  If this minimal condition cannot be met, then please let me know so we can consider appropriate court relief.

Please let me know if either of these two items will be an issue.

We are working to schedule various depositions in this case, but I believe that July 11 or 26 will likely work subject to availability of Daugherty's counsel.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com



On Fri, Jun 23, 2023 at 5:36 PM Thompson, Blayne R. <blayne.thompson@hoganlovells.com> wrote:

Counsel:

We are following up on your deposition subpoena issued to Judge Nelms, your refusal to agree on our inherently reasonable parameters, and our motion. In your responses, you have provided no information suggesting that Judge Nelms has information relevant to the claims asserted in the *Ellington v Daugherty* litigation. The notion that you think that he has material information to your case is baseless and refuted by his lack of any documents. But if you think that you want to burden and harass him, we are willing to make him available for a limited deposition.

Based on Judge Nelms' schedule and summer travel, and our schedules, we are prepared to make Judge Nelms available on July 11, subject to your agreement on the limitation on scope. Otherwise we are available to proceed on July 26, subject to the same conditions. That scope shall be embodied in a Rule 11 agreement containing the following terms:

1. The topics for questioning at the deposition will be strictly limited to those relevant to the claims and defenses in the operative pleadings (as of today, you have still not sent us the operative petition, which you promised to send in your email of June 20, 2023 at 2:00 p.m. CT), as required by TRCP 192.3, and we will instruct the witness not to answer in the event that questions exceed this scope; and
2. John Morris of Pachulski Stang Ziehl & Jones, counsel to Highland Capital Management, L.P. and the Highland Claimant Trust, will attend the deposition.

Should you refuse to agree to these reasonable terms, we promptly seek a protective order, and move to quash any deposition notice that would otherwise require proceeding before a protective order can be obtained.

Sincerely,

Blayne

**Blayne Thompson**
Senior Attorney

**Hogan Lovells US LLP**
609 Main Street, Suite 4200

Houston, TX 77002

Tel:      +1 713 632 1400
Direct:   +1 713 632 1429
Fax:      +1 713 632 1401
Email:    blayne.thompson@hoganlovells.com
          www.hoganlovells.com

*Please consider the environment before printing this e-mail.*

---

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Friday, June 23, 2023 3:32 PM
**To:** McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Cc:** Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick
<richard.wynne@hoganlovells.com>; Thompson, Blayne R. <blayne.thompson@hoganlovells.com>;
mhurst@lynnllp.com
**Subject:** Re: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause
No. DC-22-00304 (101st Jud. Dist., Dallas

**[EXTERNAL]**

Edward,

Following up. Can you please provide us with a new date for deposition?

Thank you.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com



On Tue, Jun 20, 2023 at 6:06 PM McNeilly, Edward <edward.mcneilly@hoganlovells.com> wrote:

Julie,

Thank you for withdrawing the subpoena. We agree to accept service for a new subpoena that is issued for a mutually agreeable time and location.

We will confer with Judge Nelms and get back to you shortly with available dates. In the meantime, for clarity, by virtue of both the motion to quash and your agreement to withdraw the subpoena, we understand that the currently noticed deposition will not proceed as scheduled.

Please note that we reserve all rights, including the right to move to quash or move for protection in the event that new deposition is again noticed for a date or otherwise under terms that are not mutually agreeable.

Sincerely,


Edward

---

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Tuesday, June 20, 2023 3:15 PM
**To:** McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Cc:** Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; Thompson, Blayne R. <blayne.thompson@hoganlovells.com>; mhurst@lynnllp.com
**Subject:** Re: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause No. DC-22-00304 (101st Jud. Dist., Dallas

**[EXTERNAL]**

Edward,

As I stated, we will withdraw the subpoena subject to you agreeing to accept service for a new subpoena issued for a mutually agreeable time and location.

Can you provide us with a new date?

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com



On Tue, Jun 20, 2023 at 5:03 PM McNeilly, Edward <edward.mcneilly@hoganlovells.com> wrote:

Counsel:

Based on timing, we were compelled to file our Motion to Quash. We are prepared to withdraw the Motion to Quash if you withdraw the subpoena. If you withdraw the subpoena, we are also prepared to accept service.

Sincerely,


Edward McNeilly

---

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Tuesday, June 20, 2023 2:47 PM
**To:** McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Cc:** Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick
<richard.wynne@hoganlovells.com>; Thompson, Blayne R. <blayne.thompson@hoganlovells.com>;
mhurst@lynnllp.com
**Subject:** Re: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause
No. DC-22-00304 (101st Jud. Dist., Dallas


**[EXTERNAL]**

Counsel,


We have signed a Rule 11 Agreement with Defendant Daugherty extending the discovery deadline to July
25, 2023.  Plaintiff agrees to withdraw the subpoena subject to you agreeing to accept service for a new
subpoena issued for a mutually agreeable time and location.


Thank you.


Best Regards,


Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com



On Tue, Jun 20, 2023 at 3:06 PM McNeilly, Edward <edward.mcneilly@hoganlovells.com> wrote:

Ms. Pettit:

Your response did not confirm that you are withdrawing the present subpoena. Please confirm that you are withdrawing the current subpoena immediately, otherwise we will be forced to file the Motion to Quash by 5:00 p.m. CT today. We will confer with our client regarding times for the deposition where he is available and will get back to you. Judge Nelms reserves all rights with respect to the reissued subpoena, including, without limitation, to file a Motion to Quash or Modify or for Protective Order, if an appropriate scope for the deposition cannot be mutually agreed.

Sincerely,

Edward McNeilly

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Tuesday, June 20, 2023 11:59 AM
**To:** McNeilly, Edward <edward.mcneilly@hoganlovells.com>; Hefter, Michael C.
<michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; Thompson,
Blayne R. <blayne.thompson@hoganlovells.com>
**Cc:** mhurst@lynnllp.com
**Subject:** Re: Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause
No. DC-22-00304 (101st Jud. Dist., Dallas

**[EXTERNAL]**

Mr. Hefter:

In response to your correspondence dated June 16, 2023 regarding the deposition subpoena of former Judge Russel Nelms, you included four proposed limitations on the deposition.  I address each of those in turn:

- the deposition will take place at a mutually convenient time that counsel and the witness are available (at this time, we are not available next week);

Response: We will work with you and your client regarding a convenient time and place for the deposition.  Please let us know a few dates when the witness is available and we will re-issue the subpoena.

- the deposition will not exceed one hour in time;

Response: Tex. R. Civ. P. 199.5(c) provides six hours of questioning for a deposition.  While we do not have any intention of arbitrarily using all six hours, we cannot agree to an artificial time limit that waives our procedural rights.

- the topics for questioning at the deposition will be strictly limited to the allegations in the operative complaint as of the date of this letter (as to which, please send us a copy of such complaint); and

Response: The questions in the deposition will be appropriate to the allegations, defenses, and documents produced in the case.  However, please be advised that Tex. R. Civ. P. 199.5(e) provides that all objections shall be limited to "form," "leading," or "non-responsive."  Unless specifically requested, we do not invite your explanations or argument regarding any form objection.  Argumentative or suggestive objections or explanations waive objection and may be grounds for terminating the oral deposition or assessing costs or other sanctions.  We expect you will follow this rule.  With respect to your request for a copy of the live complaint, we will provide you a copy as requested.

- John Morris of Pachulski Stang Ziehl & Jones, counsel to Highland Capital Management, L.P. and the Highland Claimant Trust, is permitted to attend the deposition.

Response: Mr. Morris is neither counsel of record in this matter nor counsel for the witness.  As far as we are aware, he is not barred in the State of Texas, nor admitted to practice *pro hac vice* in the

courts of the State of Texas.  Accordingly, we do not see any valid reason for him to attend the deposition.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com



On Tue, Jun 20, 2023 at 1:32 PM McNeilly, Edward <edward.mcneilly@hoganlovells.com> wrote:

Counsel:

I write further to my email of June 16, 2023 below (which attached a letter from Michael Hefter), to the telephone message that I left with Ms. Pettit's receptionist at or around 12:13 CT today (as Ms. Pettit was unavailable) and to the voice message that I left with Mr. Hurst on his office line at or around 12:20 CT today (as Mr. Hurst was not available). Due to the timing requirements of Dallas County Local Civil Rule 2.12, absent written agreement from you by **1:30 p.m. (PT) / 3:30 p.m. (CT) today** that you will withdraw the subpoena and deposition notice and agree to meet and confer regarding the time, place and scope of the deposition, we will file a motion to quash by 5:00 p.m. (CT) today.

Sincerely,

Edward McNeilly

**Edward McNeilly**
Senior Associate

**Hogan Lovells US LLP**
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Tel:        +1 310 785 4600
Direct:    +1 310 785 4671
Mobile:   +1 310 435 5749
Fax:        +1 310 785 4601
Email:     edward.mcneilly@hoganlovells.com
                www.hoganlovells.com

**From:** McNeilly, Edward
**Sent:** Friday, June 16, 2023 1:18 PM
**To:** 'jpettit@pettitfirm.com' <jpettit@pettitfirm.com>; 'mhurst@lynnllp.com' <mhurst@lynnllp.com>
**Cc:** Wynne, Rick <richard.wynne@hoganlovells.com>; Hefter, Michael C.
<michael.hefter@hoganlovells.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Subject:** Letter re: Subpoena to Hon. Russell Nelms in Scott Byron Ellington v. Patrick Daugherty, Cause
No. DC-22-00304 (101st Jud. Dist., Dallas

Counsel:

Please see the attached letter sent on behalf of Michael Hefter.

Sincerely,

Edward McNeilly

**Edward McNeilly**
Senior Associate

**Hogan Lovells US LLP**
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Tel:      +1 310 785 4600
Direct:   +1 310 785 4671
Mobile:  +1 310 435 5749
Fax:      +1 310 785 4601
Email:    edward.mcneilly@hoganlovells.com
          www.hoganlovells.com

**About Hogan Lovells**
Hogan Lovells is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP. For more information, see www.hoganlovells.com.

CONFIDENTIALITY. This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

PRIVACY. Hogan Lovells processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hoganlovells.com/en/privacy.

# EXHIBIT A-10

 **Gmail**

Julie Pettit <jpettit@pettitfirm.com>

---

## Re: J. Seery - Deposition Subpoena
1 message

**Julie Pettit** <jpettit@pettitfirm.com>                                         Thu, Jul 27, 2023 at 3:41 PM
To: "Levy, Joshua S." <JLevy@willkie.com>
Cc: "Laura M. Garcia" <lgarcia@weinsteinklein.com>, "Stancil, Mark" <MStancil@willkie.com>, "John A. Morris"
<jmorris@pszjlaw.com>, Shirley Xu <sxu@lynnllp.com>, Beverly Congdon <BCongdon@lynnllp.com>, "Michael K. Hurst"
<MHurst@lynnllp.com>, Patricia Perkins <pperkins@pettitfirm.com>, Michele Naudin <mnaudin@lynnllp.com>, "Damien H.
Weinstein" <dweinstein@weinsteinklein.com>, "Alexis C. Wyckoff" <awyckoff@weinsteinklein.com>, "Brennan, John L."
<JBrennan@willkie.com>, "Thompson, Blayne R." <blayne.thompson@hoganlovells.com>, "Hefter, Michael C."
<michael.hefter@hoganlovells.com>, "Wynne, Rick" <richard.wynne@hoganlovells.com>, "McNeilly, Edward"
<edward.mcneilly@hoganlovells.com>

Josh,

We are going to file a Motion to Compel the redacted text messages. We will postpone Mr. Seery's deposition and take it
after the issue of the redactions is resolved by the Court.

For purposes of our certificate of conference, we will assume you are opposed to our motion. If that is not the case,
please let us know.

Thank you.

Best Regards,

Julie Pettit Greeson
The Pettit Law Firm
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Direct: 214-329-1846
Fax: 214-329-4076
jpettit@pettitfirm.com
THE PETTIT
LAW FIRM


On Thu, Jul 27, 2023 at 11:27 AM Levy, Joshua S. <JLevy@willkie.com> wrote:

> Hi Julie,
>
>
> Please send links for Mr. Seery's deposition on Monday, including for Zoom, exhibit share, and real time.  Apologies
> if you already sent this and I missed it.
>
>
> Regards,
>
> Josh
>
>
> **Joshua S. Levy**
> **Willkie Farr & Gallagher LLP**
> 1875 K Street, N.W. | Washington, DC 20006-1238

Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
jlevy@willkie.com | vCard | www.willkie.com bio

---

**From:** Levy, Joshua S. <JLevy@willkie.com>
**Sent:** Friday, July 14, 2023 3:30 PM
**To:** Julie Pettit <jpettit@pettitfirm.com>
**Cc:** Laura M. Garcia <lgarcia@weinsteinklein.com>; Stancil, Mark <MStancil@willkie.com>; John A. Morris <jmorris@pszjlaw.com>; Shirley Xu <sxu@lynnllp.com>; Beverly Congdon <BCongdon@lynnllp.com>; Michael K. Hurst <MHurst@lynnllp.com>; Patricia Perkins <pperkins@pettitfirm.com>; Michele Naudin <mnaudin@lynnllp.com>; Damien H. Weinstein <dweinstein@weinsteinklein.com>; Alexis C. Wyckoff <awyckoff@weinsteinklein.com>; Brennan, John L. <JBrennan@willkie.com>; Thompson, Blayne R. <blayne.thompson@hoganlovells.com>; Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Subject:** RE: J. Seery - Deposition Subpoena

Hi Julie.  July 31 at 9:30 AM ET works for us.

Regards,

Josh

**Joshua S. Levy**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
jlevy@willkie.com | vCard | www.willkie.com bio

---

**From:** Levy, Joshua S. <JLevy@willkie.com>
**Sent:** Thursday, July 13, 2023 8:13 PM
**To:** Julie Pettit <jpettit@pettitfirm.com>
**Cc:** Laura M. Garcia <lgarcia@weinsteinklein.com>; Stancil, Mark <MStancil@willkie.com>; John A. Morris <jmorris@pszjlaw.com>; Shirley Xu <sxu@lynnllp.com>; Beverly Congdon <BCongdon@lynnllp.com>; Michael K. Hurst <MHurst@lynnllp.com>; Patricia Perkins <pperkins@pettitfirm.com>; Michele Naudin <mnaudin@lynnllp.com>; Damien H. Weinstein <dweinstein@weinsteinklein.com>; Alexis C. Wyckoff <awyckoff@weinsteinklein.com>; Brennan, John L. <JBrennan@willkie.com>; Thompson, Blayne R. <blayne.thompson@hoganlovells.com>; Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Subject:** Re: J. Seery - Deposition Subpoena

Thanks Julie, we'll check that date.  I'm sure all counsel will be able to raise objections and instructions in a professional manner.

Regards,

Josh

**Joshua S. Levy**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
jlevy@willkie.com | vCard | www.willkie.com bio

On Jul 13, 2023, at 7:55 PM, Julie Pettit <jpettit@pettitfirm.com> wrote:

**\*\*\* EXTERNAL EMAIL \*\*\***

Sorry, my email below should have said **July 31** as the date of the deposition.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com



On Thu, Jul 13, 2023 at 6:49 PM Julie Pettit <jpettit@pettitfirm.com> wrote:

Hi Josh,

The amended subpoena you were served with indicates a deposition date of May 31.  If that does not work for your side, please promptly let us know, as we were under the impression that day worked for you.

Also note that as we discussed, if anyone is disruptive during the deposition, we reserve all rights to seek court intervention, including but not limited to seeking court intervention during the deposition.

Thank you.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com



On Thu, Jul 13, 2023 at 9:52 AM Levy, Joshua S. <JLevy@willkie.com> wrote:

Thanks Laura, we agree to accept service.  Thanks also to Michael and Julie for the productive call on Jim Seery's deposition.  To summarize where we landed:

- **Time Limits.**  We agreed to limit the deposition to 4 hours and you'll endeavor to keep it keep it shorter if possible.

- **Attendance.**  John Morris can attend the deposition and can instruct the witness not to answer questions on privilege grounds or as he deems appropriate under the Bankruptcy Court's Gatekeeper Orders.  You reserved your right to challenge those instruction in a motion after the deposition.

- **Topics.**  We agreed to limit the deposition to the topics noticed.  We also agreed to exchange objections to the topics by email and you reserved the right to challenge those objections in a motion after the deposition.  Here are our objections:

    o **Topic No. 6.**  We object to Topic No. 6 to the extent it seeks testimony regarding "entities affiliated with Ellington" on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and violates the Bankruptcy Court's Gatekeeper Orders.

    o **Topic No. 7.**  We object to Topic No. 7 on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and violates the Bankruptcy Court's Gatekeeper Orders.

    o **Topic No. 9.**  We object to Topic No. 9 to the extent it seeks testimony regarding "Mr. Daugherty's Proof of Claim in the Highland bankruptcy" on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and violates the Bankruptcy Court's Gatekeeper Orders.

- **Logistics.**  We agreed to reschedule the deposition for the week of August 1 and to conduct the deposition remotely.  We are checking with our client about specific days and times.  Once we have the deposition scheduled, please send us links for joining the deposition, exhibit sharing, and realtime feeds.

In addition, our e-discovery vendor has run into technical issues with our supplemental production. We are pressing them to make the production this week. It's a small production, but we want to be upfront about the timing. We'll let you know if this timing changes.

Regards,

Josh

**Joshua S. Levy**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
jlevy@willkie.com | vCard | www.willkie.com bio

**From:** Laura M. Garcia <lgarcia@weinsteinklein.com>
**Sent:** Thursday, July 13, 2023 10:15 AM
**To:** Levy, Joshua S. <JLevy@willkie.com>
**Cc:** Stancil, Mark <MStancil@willkie.com>; John A. Morris <jmorris@pszjlaw.com>; Shirley Xu <sxu@lynnllp.com>; Beverly Congdon <BCongdon@lynnllp.com>; Michael K. Hurst <MHurst@lynnllp.com>; Patricia Perkins <pperkins@pettitfirm.com>; Michele Naudin <mnaudin@lynnllp.com>; Damien H. Weinstein <dweinstein@weinsteinklein.com>; Alexis C. Wyckoff <awyckoff@weinsteinklein.com>; Brennan, John L. <JBrennan@willkie.com>; 'Julie Pettit' <jpettit@pettitfirm.com>; Thompson, Blayne R. <blayne.thompson@hoganlovells.com>; Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Subject:** RE: J. Seery - Deposition Subpoena

**\*\*\* EXTERNAL EMAIL \*\*\***

Good morning Josh,

Please see the attached amended subpoena, reflecting the new deposition date and revised topics. Please confirm that you'll accept service via email.

Thank you,

Laura

<image002.jpg>                    Laura M. Garcia

D: 347.919.8422

M: 732.850.2201

lgarcia@weinsteinklein.com

www.weinsteinklein.com

<image004.jpg>

<image006.jpg>

<image008.jpg>

<image011.jpg>

If you have received this email in error, please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute, or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this information is strictly prohibited.

**From:** Levy, Joshua S. <JLevy@willkie.com>
**Sent:** Monday, July 10, 2023 3:36 PM
**To:** 'Julie Pettit' <jpettit@pettitfirm.com>
**Cc:** Stancil, Mark <MStancil@willkie.com>; John A. Morris <jmorris@pszjlaw.com>; Laura M. Garcia <lgarcia@weinsteinklein.com>; Shirley Xu <sxu@lynnllp.com>; Beverly Congdon <BCongdon@lynnllp.com>; Michael K. Hurst <MHurst@lynnllp.com>; Patricia Perkins <pperkins@pettitfirm.com>; Michele Naudin <mnaudin@lynnllp.com>; Damien H. Weinstein <dweinstein@weinsteinklein.com>; Alexis C. Wyckoff <awyckoff@weinsteinklein.com>; Brennan, John L. <JBrennan@willkie.com>; Thompson, Blayne R. <blayne.thompson@hoganlovells.com>; Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Subject:** RE: J. Seery - Deposition Subpoena

**External Email**

Thanks Julie.  As I've noted, the whole group would like to participate so we'll keep the call scheduled for 4:30 PM ET.  As to the three issues:

1. **Scope of Deposition.**  We have concerns about the scope of the revised topics, particularly "entities affiliated with Ellington" in Topic 6, Topic 7, and "Mr. Daugherty's

Proof of Claim in the Highland Bankruptcy" in Topic 9.  We'd like to discuss the topics in light of the Bankruptcy Court's Gatekeeper Orders and procedures for raising objections.

2. **Time Limits.**  We're disappointed that you are insisting on a six-hour deposition for a third-party witness and will not agree to any reasonable time limits.  As a professional courtesy and out of respect for the burden on Mr. Seery's time, we hope you'll reconsider.

3. **Deposition Attendance.**  We are agreed that Mr. Morris will attend Mr. Seery's deposition.

Regards,

Josh

**Joshua S. Levy**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
jlevy@willkie.com | vCard | www.willkie.com bio

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Monday, July 10, 2023 3:07 PM
**To:** Levy, Joshua S. <JLevy@willkie.com>
**Cc:** Stancil, Mark <MStancil@willkie.com>; John A. Morris <jmorris@pszjlaw.com>; Laura M. Garcia <lgarcia@weinsteinklein.com>; Shirley Xu <sxu@lynnllp.com>; Beverly Congdon <BCongdon@lynnllp.com>; Michael K. Hurst <MHurst@lynnllp.com>; Patricia Perkins <pperkins@pettitfirm.com>; Michele Naudin <mnaudin@lynnllp.com>; Damien H. Weinstein <dweinstein@weinsteinklein.com>; Alexis C. Wyckoff <awyckoff@weinsteinklein.com>; Brennan, John L. <JBrennan@willkie.com>; Thompson, Blayne R. <blayne.thompson@hoganlovells.com>; Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Subject:** Re: J. Seery - Deposition Subpoena

**\*\*\* EXTERNAL EMAIL \*\*\***

Josh,

Michael and I just left you a voicemail about 30 minutes ago.

Regarding your three issues below:

1. We have sent you the revised topics.  Please let me know if you have any questions.

2. With respect to time limits, we will certainly be sensitive to the witness' time, but without knowing how the witness will answer, we cannot agree to a particular time limit other than what is permitted by the Texas rules.

3. With respect to Mr. Morris' attendance, we do not see any legitimate reason why he would have a right to attend the deposition.  We do not agree with your interpretation of the bankruptcy order. That said, if we can agree on everything else, then as a courtesy, we will agree to allow him to attend so long as he is silent and non obstructive.  We reserve the right to seek immediate relief from the Court and/or have Mr. Morris removed from the deposition if he obstructs the deposition in any way.

Please confirm if these terms are agreeable.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com

<image012.jpg>

On Mon, Jul 10, 2023 at 10:06 AM Levy, Joshua S. <JLevy@willkie.com> wrote:

> Thanks Julie.  We want to make sure everyone is able to participate in the call today, so we'll push it back to 4:30 PM ET.

> Regards,

> Josh

> **Joshua S. Levy**
> **Willkie Farr & Gallagher LLP**
> 1875 K Street, N.W. | Washington, DC 20006-1238
> Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
> jlevy@willkie.com | vCard | www.willkie.com bio

> **From:** Julie Pettit <jpettit@pettitfirm.com>
> **Sent:** Sunday, July 9, 2023 11:31 PM

**To:** Levy, Joshua S. <JLevy@willkie.com>
**Cc:** Stancil, Mark <MStancil@willkie.com>; John A. Morris <jmorris@pszjlaw.com>; Laura M. Garcia <lgarcia@weinsteinklein.com>; Shirley Xu <sxu@lynnllp.com>; Beverly Congdon <BCongdon@lynnllp.com>; Michael K. Hurst <MHurst@lynnllp.com>; Patricia Perkins <pperkins@pettitfirm.com>; Michele Naudin <mnaudin@lynnllp.com>; Damien H. Weinstein <dweinstein@weinsteinklein.com>; Alexis C. Wyckoff <awyckoff@weinsteinklein.com>; Brennan, John L. <JBrennan@willkie.com>; Thompson, Blayne R. <blayne.thompson@hoganlovells.com>; Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Subject:** Re: J. Seery - Deposition Subpoena

**\*\*\* EXTERNAL EMAIL \*\*\***

Hi Josh,

Daugherty's counsel is taking a deposition of one of our witnesses tomorrow.  We are unsure what time that will conclude, but Michael and I can call you once it is over.

In the meantime, attached is a slightly revised list of topics.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com

<image012.jpg>

On Fri, Jul 7, 2023 at 3:44 PM Levy, Joshua S. <JLevy@willkie.com> wrote:

> Thanks Julie.  Just to get a time on the calendar, I'm going to send a dial in for 12 PM ET on Monday.

As an update, we expect to make the supplemental production on Monday.  We'll let you know if that timing changes.


Have a good weekend,

Josh



**Joshua S. Levy**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
jlevy@willkie.com | vCard | www.willkie.com bio

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Wednesday, July 5, 2023 3:55 PM
**To:** Levy, Joshua S. <JLevy@willkie.com>
**Cc:** Stancil, Mark <MStancil@willkie.com>; John A. Morris <jmorris@pszjlaw.com>; Laura M. Garcia <lgarcia@weinsteinklein.com>; Shirley Xu <sxu@lynnllp.com>; Beverly Congdon <BCongdon@lynnllp.com>; Michael K. Hurst <MHurst@lynnllp.com>; Patricia Perkins <pperkins@pettitfirm.com>; Michele Naudin <mnaudin@lynnllp.com>; Damien H. Weinstein <dweinstein@weinsteinklein.com>; Alexis C. Wyckoff <awyckoff@weinsteinklein.com>; Brennan, John L. <JBrennan@willkie.com>; Thompson, Blayne R. <blayne.thompson@hoganlovells.com>; Hefter, Michael C. <michael.hefter@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; McNeilly, Edward <edward.mcneilly@hoganlovells.com>
**Subject:** Re: J. Seery - Deposition Subpoena



*** EXTERNAL EMAIL ***



Hi Josh,


Lots of folks on our side are traveling, but we will get back with you by early next week.


Best Regards,


Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com

<image012.jpg>

On Wed, Jul 5, 2023 at 10:14 AM Levy, Joshua S. <JLevy@willkie.com> wrote:

Hi Julie.  Following up about this.

Regards,

Josh

**Joshua S. Levy**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
jlevy@willkie.com | vCard | www.willkie.com bio

On Jun 30, 2023, at 5:02 PM, Levy, Joshua S. <JLevy@willkie.com> wrote:

Julie,

We'd like to schedule a call next Wednesday to discuss Jim Seery's
upcoming deposition.  Specifically, we'd like to discuss:

1. **Scope of Deposition.**  We appreciate that you appended a list of
   deposition topics to the subpoena to Mr. Seery.  We'd like to discuss
   the topics, how they affect the scope of the deposition, and the
   procedure for raising objections to questions that exceed that scope.
2. **Time Limits.**  Because Mr. Seery is a third-party witness, we'd like to
   discuss the appropriate length of his deposition.
3. **Deposition Attendance.**  We understand that John Morris, counsel
   for Highland (copied here), wants to attend the deposition and
   potentially raise objections under the Gatekeeper Orders entered by
   the Bankruptcy Court (which I've attached) to ensure discovery in
   the *Ellington* litigation is not used in connection with the *Highland*
   bankruptcy in violation of the Gatekeeper Orders.

Please let us know your availability on Wednesday for a call.  I've copied
counsel for Russell Nelms who plans to participate in our call because many
of these same issues are relevant for Mr. Nelms' depositions.

Regards,

Josh


**Joshua S. Levy**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
jlevy@willkie.com | vCard | www.willkie.com bio

---

**From:** Levy, Joshua S. <JLevy@willkie.com>
**Sent:** Tuesday, June 27, 2023 12:53 PM
**To:** 'Julie Pettit' <jpettit@pettitfirm.com>; Stancil, Mark
<MStancil@willkie.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Laura M. Garcia
<lgarcia@weinsteinklein.com>; Shirley Xu <sxu@lynnllp.com>; Beverly
Congdon <BCongdon@lynnllp.com>; Michael K. Hurst
<MHurst@lynnllp.com>; Patricia Perkins <pperkins@pettitfirm.com>;
Michele Naudin <mnaudin@lynnllp.com>; Damien H. Weinstein
<dweinstein@weinsteinklein.com>; Alexis C. Wyckoff
<awyckoff@weinsteinklein.com>; Brennan, John L.
<JBrennan@willkie.com>
**Subject:** RE: J. Seery - Deposition Subpoena


Thanks Julie.  We're aiming to make a supplemental production next week
and will let you know if that timing changes.


Regards,

Josh


**Joshua S. Levy**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1147 | Mobile: +1 516 680 5751
jlevy@willkie.com | vCard | www.willkie.com bio

**From:** Julie Pettit <jpettit@pettitfirm.com>
**Sent:** Tuesday, June 27, 2023 12:44 PM
**To:** Stancil, Mark <MStancil@willkie.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Laura M. Garcia
<lgarcia@weinsteinklein.com>; Shirley Xu <sxu@lynnllp.com>; Beverly
Congdon <BCongdon@lynnllp.com>; Michael K. Hurst
<MHurst@lynnllp.com>; Patricia Perkins <pperkins@pettitfirm.com>;
Michele Naudin <mnaudin@lynnllp.com>; Damien H. Weinstein
<dweinstein@weinsteinklein.com>; Alexis C. Wyckoff
<awyckoff@weinsteinklein.com>; Levy, Joshua S. <JLevy@willkie.com>;
Brennan, John L. <JBrennan@willkie.com>
**Subject:** Re: J. Seery - Deposition Subpoena

**\*\*\* EXTERNAL EMAIL \*\*\***

Hi Mark,

I will be back in touch with you to confirm for sure, but it looks like July 17 will work.

Also, is there any update on the supplemental production?

Thank you.

Best Regards,

Julie Pettit Greeson

The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com

<image001.jpg>

On Fri, Jun 23, 2023 at 11:44 AM Julie Pettit <jpettit@pettitfirm.com> wrote:

> Hi Mark,
>
> Thank you for your email. We are working to coordinate dates with counsel with Daugherty. I will be in touch shortly, but I'm hopeful that week will work.
>
> Best Regards,
>
> Julie Pettit Greeson
>
> The Pettit Law Firm

2101 Cedar Springs, Suite 1540

Dallas, Texas 75201

Direct: 214-329-1846

Fax: 214-329-4076

jpettit@pettitfirm.com

<image001.jpg>

On Thu, Jun 22, 2023 at 5:39 PM Stancil, Mark <MStancil@willkie.com> wrote:

> Ms. Garcia,
>
> I am authorized to accept service on behalf of Mr. Seery, on the understanding that we can figure out a mutually agreeable date. Mr. Seery has some international travel scheduled, but the week of July 17 is probably workable. Also, I expect we will make a small supplemental production to you shortly -- I should know by the end of next week whether/when that will be available, but I'm confident it will be modest.
>
> I'm also copying my colleagues, Josh Levy and John Brennan, who are working with me on this matter.
>
> Best,
>
> Mark
>
> **Mark T. Stancil**
> **Willkie Farr & Gallagher LLP**
> 1875 K Street, N.W. | Washington, DC 20006-1238
> Direct: +1 202 303 1133 | Fax: +1 202 303 2000
> mstancil@willkie.com | vCard | www.willkie.com bio
>
> -----Original Message-----
> From: John A. Morris <jmorris@pszjlaw.com>
> Sent: Monday, June 19, 2023 7:52 PM
> To: Laura M. Garcia <lgarcia@weinsteinklein.com>
> Cc: Julie Pettit <jpettit@pettitfirm.com>; Shirley Xu <sxu@lynnllp.com>; Beverly Congdon <BCongdon@lynnllp.com>; Michael K. Hurst <MHurst@lynnllp.com>; Patricia Perkins <pperkins@pettitfirm.com>; Michele Naudin <mnaudin@lynnllp.com>; Damien H. Weinstein <dweinstein@weinsteinklein.com>; Alexis C. Wyckoff <awyckoff@weinsteinklein.com>; Stancil, Mark <MStancil@willkie.com>
> Subject: Re: J. Seery - Deposition Subpoena
>
> *** EXTERNAL EMAIL ***
>
> Adding Mark Stancil, Mr. Seery's personal counsel.
>
> We'll be in touch shortly.
>
> Regards,
>
> John

Sent from my iPhone

On Jun 19, 2023, at 3:36 PM, Laura M. Garcia
<lgarcia@weinsteinklein.com> wrote:

John,

Please see the attached subpoena ad testificandum. Let us know if
you'll accept electronic service of the attached on behalf of your client.
We will send you a hard copy of the attached, as well as the witness
fee for Mr. Seery, under separate cover.

Thank you,
Laura

Laura M. Garcia

D: 347.919.8422
M: 732.850.2201
lgarcia@weinsteinklein.com<mailto:lgarcia@weinsteinklein.com>
https://urldefense.com/v3/__http://www.weinsteinklein.com_
_;!!O6UFbZt64g!NGJThqYTkPQFUep0j1Lp1qd7yuYG5oFXXejY39q-
DhLmZbMqx1NfWrWTzPVPlTn9EL2KW7v3Qw90-x6sTw$
<https://urldefense.com/v3/__http://www.weinsteinklein.com_
_;!!O6UFbZt64g!NGJThqYTkPQFUep0j1Lp1qd7yuYG5oFXXejY39q-
DhLmZbMqx1NfWrWTzPVPlTn9EL2KW7v3Qw90-x6sTw$ >

                <https://urldefense.com/v3/__
https://www.facebook.com/WeinsteinKlein__;!!O6UFbZt64g!
NGJThqYTkPQFUep0j1Lp1qd7yuYG5oFXXejY39q-
DhLmZbMqx1NfWrWTzPVPlTn9EL2KW7v3Qw_5DM4TqQ$ >

<https://urldefense.com/v3/__https://www.facebook.com/
WeinsteinKlein__;!!O6UFbZt64g!
NGJThqYTkPQFUep0j1Lp1qd7yuYG5oFXXejY39q-
DhLmZbMqx1NfWrWTzPVPlTn9EL2KW7v3Qw_5DM4TqQ$ >
<https://urldefense.com/v3/__https://twitter.com/weinstein_
klein__;!!O6UFbZt64g!NGJThqYTkPQFUep0j1Lp1qd7yuYG5o
FXXejY39q-DhLmZbMqx1NfWrWTzPVPlTn9EL2KW7
v3Qw8HCNXS3A$ >

<https://urldefense.com/v3/__https://twitter.com/weinstein_
klein__;!!O6UFbZt64g!NGJThqYTkPQFUep0j1Lp1qd7yuYG5o
FXXejY39q-DhLmZbMqx1NfWrWTzPVPlTn9EL2KW7
v3Qw8HCNXS3A$ >  <https://urldefense.com/v3/__
https://www.instagram.com/lg_onthelaw__;!!O6UFbZt64g!
NGJThqYTkPQFUep0j1Lp1qd7yuYG5oFXXejY39q-
DhLmZbMqx1NfWrWTzPVPlTn9EL2KW7v3Qw-eNnHJHQ$ >

<https://urldefense.com/v3/__https://www.instagram.com/lg_
onthelaw__;!!O6UFbZt64g!NGJThqYTkPQFUep0j1Lp1qd7yuYG5o
FXXejY39q-DhLmZbMqx1NfWrWTzPVPlTn9EL2KW7v3Qw-
eNnHJHQ$ >  <https://urldefense.com/v3/__
https://www.linkedin.com/in/lauramgarciaesq__;!!O6UFbZt64g!
NGJThqYTkPQFUep0j1Lp1qd7yuYG5oFXXejY39q-
DhLmZbMqx1NfWrWTzPVPlTn9EL2KW7v3Qw_Zse2vqQ$ >

<https://urldefense.com/v3/__https://www.linkedin.com/in/
lauramgarciaesq__;!!O6UFbZt64g!

KOJTHqYFkFQFUepbJjLEpTqbYyGsGTG0cXeJH38q4
DhLmZbMqx1NfWrWTzPVPITn9EL2KW7v3Qw_Zse2vqQ$ >

If you have received this email in error, please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute, or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this information is strictly prohibited.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

<Highland - Confirmation Order.pdf>

<Highland - Seery Retention Order.pdf>

<Highland - January Settlement Order.pdf>

<Highland - Confirmation Order (5th Cir).pdf>

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# EXHIBIT A-11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SCOTT BRYON ELLINGTON | ***AMENDED SUBPOENA AD TESTIFICANDUM*** |
| Plaintiff, | ***PURSUANT TO THE UNIFORM INTERSTATE*** |
| | ***DEPOSITION AND DISCOVERY ACT*** |
| v. | ***AND CPLR § 3119*** |
| PATRICK DAUGHERTY, | **Originating State: <u>Texas</u>** |
| Defendant. | **Originating County: <u>Dallas</u>** |
| | **Originating Court: <u>101st Judicial District Court</u>** |
| | **Originating Case No.: <u>DC-22-00304</u>** |

**THE PEOPLE OF THE STATE OF NEW YORK**

**TO**:    James Seery
c/o Joshua S. Levy
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019

**WE COMMAND YOU,** that all business and excuses being laid aside, to appear virtually, via a Zoom or Teams meeting, at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 on the 31st day of July 2023, at 9:30 a.m., or at a date and time mutually agreed to between the parties, but no less than twenty (20) days from the date of service of this Amended Subpoena, or as ordered by the Court, to be examined and give deposition testimony on the topics set forth in Schedule A.

**PLEASE BE FURTHER ADVISED** that the meeting link and/or login credentials will be provided to you in advance of the deposition.

**PLEASE BE FURTHER ADVISED** that the deposition will be videotaped by Cindy Afanador Court Reporting, Inc., with a business address at P.O. Box 984, Suite 1120, Kings Park, New York 11754.

**PLEASE BE FURTHER ADVISED** that you have the right to move to quash or modify this Amended Subpoena or otherwise move under CPLR § 2304 or any other rule governing the courts of the State of New York that are applicable to discovery.

**PLEASE BE FURTHER ADVISED** that this matter is pending in the State of Texas, County of Dallas, 101st Judicial District, captioned as *Scott Byron Ellington v. Patrick Daugherty*, Cause No. DC-22-00304 (the "Action"), the Original Petition of which, dated January 11, 2022, is attached hereto as <u>Exhibit 1</u>.

**PLEASE BE FURTHER ADVISED** that counsel of record in this matter, and their contact information, are:

Julie Pettit, Esq.
**THE PETTIT LAW FIRM**
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
(214) 329-0151

Michael K. Hurst, Esq.
Mary Goodrich Nix, Esq.
Michele Naudin, Esq.
**LYNN PINKER HURST & SCHWEGMANN**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 292-3636
*Attorneys for Plaintiff Scott Byron Ellington*

Ruth Ann Daniels, Esq.
Andrew K. York, Esq.
Drake M. Rayshell, Esq.
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
*Attorneys for Defendant Patrick Daugherty*

**PLEASE BE FURTHER ADVISED** that the terms of the Texas Amended Subpoena *Ad Testificandum* attached hereto as <u>Exhibit 2</u> are also incorporated herein to the extent that those terms do not conflict with the rules governing the courts of the State of New York that are applicable to discovery.

**FAILURE TO APPEAR OR COMPLY** with this subpoena is punishable as a contempt of Court and shall make you liable to the person on whose behalf this subpoena was issued for a penalty not to exceed one hundred and fifty dollars ($150.00) and all damages sustained by reason of your failure to comply.

Dated: July 13, 2023

*/s/ Damien H. Weinstein*
Damien H. Weinstein
Laura M. Garcia
**WEINSTEIN & KLEIN P.C.**
1 High Street Court, Suite 5
Morristown, New Jersey 07960
(347) 502-6464

2

cc (via email):      Julie Pettit (jpettit@pettitfirm.com)
Mary Goodrich Nix (mnix@lynnllp.com)
Michael K. Hurst (mhurst@lynnllp.com)
Michele Naudin (mnaudin@lynnllp.com)
Ruth Ann Daniels (rdaniels@grayreed.com)
Andrew K. York (dyork@grayreed.com)
Drake M. Rayshell (drayshell@grayreed.com)

3

## SCHEDULE A

<u>DEPOSITION TOPICS</u>

1.      Any documents and/or communications produced by James Seery in response to the Subpoena *Duces Tecum* served on Mr. Seery c/o Joshua S. Levy, Esq., in or around November 2022.

2.      Mr. Seery's personal knowledge of the allegations asserted in the Action.

3.      Mr. Seery's personal knowledge of the relationship between the Defendant in the Action, Patrick Daugherty ("Daugherty"), and the Plaintiff, Scott Byron Ellington ("Ellington").

4.      Mr. Seery's receipt of photos, videos, data, or other information from Daugherty relating to Greg Brandstatter.

5.      Mr. Seery's receipt of photos, videos, data, or other information from Daugherty relating to Sarah Bell (formerly Goldsmith).

6.      Mr. Seery's receipt of communications, emails, photos, videos, data, or other information from Daugherty relating to Ellington or entities affiliated with Ellington.

7.      Any meetings or communications between any representative of the Highland Bankruptcy estate and Mr. Daugherty and/or his representatives related in any way to Ellington.

8.      Any instructions or approval, whether explicit or tacit, provided to Mr. Daugherty with respect to Mr. Daugherty's so-called "investigation" of Mr. Ellington or the stalking allegations in this case.

9.      Any consideration provided to Daugherty with respect to Mr. Daugherty's so-called "investigation" of Mr. Ellington or the stalking in this case, including, but not limited to, the treatment of Mr. Daugherty's Proof of Claim in the Highland bankruptcy.

4

# EXHIBIT 1

FILED
1/11/2022 6:09 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Kayla Buckley DEPUTY

DC-22-00304

NO. _____

| | | |
|---|---|---|
| **SCOTT BYRON ELLINGTON** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | 101st |
| **v.** | § | _____ **JUDICIAL DISTRICT** |
| | § | |
| **PATRICK DAUGHERTY,** | § | |
| | § | |
| *Defendant.* | § | **DALLAS COUNTY, TEXAS** |

---

### PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

---

Comes Now, Scott Byron Ellington, Plaintiff herein, and files this *Plaintiff's Original Petition, Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction* against Defendant Patrick Daugherty, and in support thereof, would respectfully show the Court the following:

#### Dallas County LR 1.08 Disclosure

Dallas County Local Rule 1.08 provides that the attorneys of record for the parties in any case within the categories of Local Rule 1.07 must notify the judges of the respective courts in which the earlier and later cases are assigned of the pendency of the latter case. The attorney filing a case that is so related to another previously filed case shall disclose in the original pleading or in a separate simultaneous filing that the case is so related and identify by style, cause number, and court of the related case. Accordingly, and pursuant to L.R. 1.08, the undersigned hereby notifies the Court that this case, in part, arises out of the same transaction or occurrence which is the subject of *Highland Capital Management, L.P. v. Patrick Daugherty*, Cause No. 12-04005, in the 68th Judicial District Court of Dallas County, Texas. Hence, the undersigned believes that this case is subject to transfer under L.R. 1.07(a) or otherwise pursuant to L.R. 106 because the transfer would "facilitate orderly and efficient disposition of the litigation."

---

## I.  Discovery Control Plan

1.      Pursuant to TEXAS RULE OF CIVIL PROCEDURE 190.3, Plaintiff requests a Level 2

discovery control plan.

## II.  Parties & Service

2.      Plaintiff Scott Byron Ellington, an individual, is a resident of the state of Texas.

3.      Defendant Patrick Daugherty is an individual and resident of Dallas County, Texas.

Defendant may be served at his residence located at 3621 Cornell Ave, Dallas, Texas 75205, or

wherever he may be found.

## III. Rule 47(c) Disclosure

4.      Plaintiff seeks damages within the jurisdictional limits of the Court. Specifically,

Plaintiff seeks monetary relief over $1,000,000 and non-monetary relief.

## IV. Jurisdiction & Venue

5.      The Court has jurisdiction over Defendant because he resides in Texas, has done

business in Texas, committed torts, in whole or in part, in Texas, has continuing contacts with

Texas, and is amenable to service by a Texas Court.

6.      Venue in Dallas County is proper in this case under Sections 15.002(a)(1) and (a)(3)

of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because this is the county in which all or a

substantial part of the events or omissions giving rise to the claim occurred and it is the county

where Defendant resides.

## V.  Facts

7.      Plaintiff Scott Ellington ("Plaintiff" or "Ellington") was, until January of 2021, the

general counsel of Highland Capital Management ("Highland").

---

8.      Defendant Daugherty ("<u>Defendant</u>" or "<u>Daugherty</u>") previously worked for Highland.

9.      In 2012, Highland sued Daugherty. In response, Daugherty filed counterclaims against Highland then sued its affiliate, Highland Employee Retention Assets LLC ("<u>HERA</u>"), and three Highland executives. A jury ultimately determined that Daugherty breached his employment agreement and fiduciary duties. It also found that HERA breached the implied duty of good faith and fair dealing, but also found that the executives subject to the counter-claim were not liable to Daugherty. The jury awarded Highland $2,800,000 in attorney's fees and injunctive relief; and awarded Daugherty $2,600,000 in damages against HERA.

10.     Since the 2012 lawsuit's filing, Daugherty and Highland—or Highland related entities and individuals—engaged in protracted litigation in several different forums across the country. Daugherty's expressed goal is to "get" the founder and former CEO of Highland, Jim Dondero, and its former general counsel, Ellington. As part of this campaign, Daugherty personally sued Ellington in December 2019 in Delaware Chancery Court. Ellington's motion to dismiss currently pends in that matter.

11.     While Daugherty's previously limited his vendetta to the courtroom, he began a campaign of harassment against Ellington and his family starting in January 2021 that continues to this day. *See* **<u>Exhibit A</u>** (Declaration of Gregory Allen Brandstatter, the personal security guard of Scott Ellington) (detailing Daugherty's harassment and stalking of Ellington, his family, and loved ones); **<u>Exhibit B</u>** (Declaration of Scott Byron Ellington).

12.     Specifically, Daugherty has been observed outside Ellington's office, his residence, the residence of his long-time girlfriend, Stephanie Archer, his sister's residence, and his father's residence no less than **<u>143 times</u>**, often taking photographs and video recordings while either

parked or driving slowly by. Indeed, on April 21, 2021, Daugherty was observed driving by Ellington's office nine (9) times that day alone.

13.     Daugherty most recently was confirmed taking video or photo recordings outside of Ellington's residence on December 11, 2021. For reasons set forth in the Brandstatter Declaration, attached herein at **Exhibit A**, Daugherty likely stalked Ellington and his loved ones more recently than the latest confirmed date.

14.     Daugherty's harassing conduct is "textbook" behavior that precedes a physical attack that a reasonable person would consider a threat to their safety as well as that of their family and property. Indeed, Ellington has been forced to hire personal security, and his family are in fear for their personal and physical safety.

15.     As evidenced by the over 143 times Daugherty has been observed stalking Ellington and his family, he has the apparent ability to carry out this threat of continued harassment and violence.

16.     Both Mr. Ellington's sister and girlfriend have both demanded to Mr. Daugherty that he stop his harassment. Despite this clear demand for Daugherty to stop engaging in this harassing behavior, he refuses to stop and continues to harass Ellington and his family.

17.     Daugherty's constant stalking and harassment of Ellington and his family reasonably cause them to fear for their safety.

18.     Ellington reported Daugherty's harassing and disturbing behavior to the police.

**VI. Causes of Action**

**A.  Count One: Stalking.**

19.     All facts alleged above, herein, and below are hereby incorporated by reference.

20.     Pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE § 85.002, a defendant is liable to a claimant for damages arising from stalking of the claimant by the defendant.

21.     A claimant proves stalking against a defendant by showing:

(1) on more than one occasion the defendant engaged in harassing behavior;

(2) as a result of the harassing behavior, the claimant reasonably feared for the claimant's safety or the safety of a member of the claimant's family; and

(3) the defendant violated a restraining order prohibiting harassing behavior or:

(A) the defendant, while engaged in harassing behavior, by acts or words threatened to inflict bodily injury on the claimant or to commit an offense against the claimant, a member of the claimant's family, or the claimant's property;

(B) the defendant had the apparent ability to carry out the threat;

(C) the defendant's apparent ability to carry out the threat caused the claimant to reasonably fear for the claimant's safety or the safety of a family member;

(D) the claimant at least once clearly demanded that the defendant stop the defendant's harassing behavior;

(E) after the demand to stop by the claimant, the defendant continued the harassing behavior; and

(F) the harassing behavior has been reported to the police as a stalking offense.

22.     "Harassing behavior" is defined by the statute as "conduct by the defendant directed specifically toward the claimant, including following the claimant, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the claimant." TEX. CIV. PRAC. & REM. CODE § 85.001(4).

23.     First, Defendant has engaged in harassing behavior toward the Plaintiff and his family in the above-described manner. Second, because of the harassing behavior, Plaintiff reasonably feared for his safety and the safety of his family. Third, Defendant, while engaging in the harassing behavior, by acts or words threatened to inflict bodily injury on the Plaintiff or to commit an offense against the Plaintiff, his family, or his property. Specifically, Defendant's

conduct is consistent with behavior leading up to a physical attack and is, therefore, an inherent threat of physical violence. Defendant had the apparent ability to carry out the threat, the Defendant's apparent ability to carry out the threat caused Plaintiff to reasonably fear for his safety or the safety of a family member, the Plaintiff (or his representative) at least once clearly demanded that the Defendant stop his harassing behavior, after the demand to stop by the Plaintiff, the Defendant continued the harassing behavior, and the harassing behavior has been reported to the police as a stalking offense.

24.     Plaintiff seeks recovery of his actual damages caused by Defendant's stalking, exemplary damages, and injunctive relief.

**B.  Count Two: Invasion of Privacy by Intrusion.**

25.     All facts alleged above, herein, and below are hereby incorporated by reference.

26.     A claim of invasion of privacy by intrusion has the following elements: (1) an intentional intrusion, (2) upon the seclusion, solitude, or private affairs of another, (3) that would be highly offensive to a reasonable person.

27.     Here, Defendant has intentionally intruded upon the seclusion, solitude, and private affairs of Plaintiff by regularly appearing at his office, his residence, his girlfriend's residence, his father's residence, and his sister's residence, and taking photographs and other recordings of Ellington and his loved ones at these residences. The appearances are unsolicited, uninvited, and constant. These unwanted "visits" by Defendant are highly offensive to a reasonable person.

28.     Plaintiff seeks recovery of his actual damages caused by Defendant's conduct alleged herein, exemplary damages, and injunctive relief.

## VII.    Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction

### A. Elements for Injunctive Relief.

29.    All facts alleged above, herein, and below are hereby incorporated by reference.

30.    In light of the above-described facts, Plaintiff seeks recovery from Defendant.

31.    Plaintiff is likely to succeed on the merits of this lawsuit because Defendant has been stalking Plaintiff and his family and has been engaged in otherwise harassing conduct.

32.    Unless this Honorable Court immediately restrains the Defendant and his agents the Plaintiff and his family will suffer immediate and irreparable injury, for which there is no adequate remedy at law to give Plaintiff complete, final and equal relief. More specifically, Plaintiff will show the court the following:

a.    The harm to Plaintiff and his family is imminent and ongoing as Defendant has harassed and stalked Plaintiff and his family, including his father, his sister, and girlfriend, almost constantly this entire year.

b.    The imminent harm will cause Plaintiff irreparable injury as the harassment will continue if not restrained. Further, Plaintiff reasonably fears that Defendant may cause him or his family bodily harm, and the accompanying anxiety interferes with his ability to conduct his normal, daily activities. *See, e.g., Quinn v. Harris*, 03-98-00117-CV, 1999 WL 125470, at *11 (Tex. App.—Austin Mar. 11, 1999, pet. denied) ("[I]njunctions designed to prevent harassment are permissible."); *Kramer v. Downey*, 680 S.W.2d 524, 525 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) ("Further, this right to be left alone from unwanted attention may be protected, in a proper case, by injunctive relief."); and

    c.   There is no adequate remedy at law which will give Plaintiff complete, final and equal relief because the imminent harm is irreparable. *See e.g., Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 294 (Tex. App.—Beaumont 2004, no pet.) ("Issues one (no evidence of inadequate remedy at law) and two (no evidence of irreparable injury) are intertwined under Texas case law.").

**B.  Bond.**

33.    Plaintiff is willing to post a reasonable temporary restraining order and temporary injunction bond and requests the Court to set such bond.

**C.  Remedy.**

34.    Plaintiff met his burden by establishing each element which must be present before injunctive relief can be granted by this Court. Thus, Plaintiff is entitled to the requested temporary injunction, and upon a successful trial on the merits, for the temporary injunction to be made permanent.

35.    Plaintiff requests that, while the temporary injunction is in effect, the Court to restrain Defendant and his agents from:

    a.   Being within 500 feet of Ellington;

    b.   Being within 500 feet of Ellington's office located at 120 Cole Street, Dallas, Texas 75207;

    c.   Being within 500 feet of Ellington's residence located at 3825 Potomac Ave, Dallas, Texas 75205;

    d.   Being within 500 feet of Stephanie Archer;

    e.   Being within 500 feet of Stephanie Archer's residence located at 4432 Potomac, Dallas, Texas 75025;

    f.    Being within 500 feet of Marcia Maslow;

    g.    Being within 500 feet of Marcia's residence located at 430 Glenbrook Dr., Murphy, Texas 75094;

    h.    Being within 500 feet of Byron Ellington;

    i.    Being within 500 feet of Byron Ellington's residence located at 5101 Creekside Ct., Parker, Texas 75094;

    j.    Photographing, videorecording, or audio recording Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington;

    k.    Photographing or videorecording the residences or places of business of Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington; and

    l.    Directing any communications toward Ellington, Stephanie Archer, Marcia Maslow, or Byron Ellington.

### VIII.  Exemplary Damages

36.    The conduct of Defendant described above constitutes malice and, therefore, Plaintiff is entitled to, and hereby seeks, an award of exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE § 41.003(1).

### IX. Conditions Precedent

37.    All conditions precedent to Plaintiff's suit have occurred or have been performed.

### X.  Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that:

    a.    Defendant be cited to appear and answer;

    b.    The Court determine any issue of fact and, upon final hearing of this cause, the Court award to Plaintiff:

     i.   Actual damages;

    ii.   Exemplary damages;

   iii.   A temporary restraining order;

   iv.   A temporary injunction;

    v.   A permanent injunction; and

   vi.   Court costs;

c.   The Court grant any other relief to which Plaintiff may be entitled.

Respectfully submitted,


*/s/ Julie Pettit*

Julie Pettit
State Bar No. 24065971
jpettit@pettitfirm.com
David B. Urteago
State Bar No. 24079493
durteago@pettitfirm.com
**THE PETTIT LAW FIRM**
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Telephone: (214) 329-0151
Facsimile: (214) 329-4076

Michael K. Hurst
State Bar No. 10316310
mhurst@lynnllp.com
Mary Goodrich Nix
State Bar No. 24002694
mnix@lynnllp.com
Nathaniel A. Plemons
State Bar No. 24121059
nplemons@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN,
LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR PLAINTIFF**

EXHIBIT

A

## DECLARATION OF GREGORY ALLEN BRANDSTATTER

STATE OF TEXAS             §
                           §
COUNTY OF DALLAS           §

Gregory Allen Brandstatter declares as follows:

1.      My name is Gregory Allen Brandstatter. I am over 21 years of age, have never been convicted of a felony or other crime involving moral turpitude, and suffer from no mental or physical disability that would render me incompetent to make this declaration.

2.      I am able to swear, and hereby do swear under penalty of perjury, that the facts stated in this declaration are true and correct and within my personal knowledge.

3.      I am a Licensed Texas Master Peace Officer with fifteen (15) years of experience, a U.S. Government Contractor with over twelve (12) years of experience in the areas of high threat protection, counterterrorism, and counternarcotics, and I am also a licensed private investigator and security consultant.

4.      On Feb 3, 2021, Scott Ellington ("Scott") called, advising me that he believed someone was stalking himself and his girlfriend Stephanie Archer ("Stephanie"). The day prior to his calling me (Feb 2, 2021), Stephanie had been followed to 120 Cole Street, Dallas, Texas, where Scott has an office. Stephanie stated that for the past month or so she had noticed a large Black SUV possibly following her. On Feb 2, 2021, she noticed that the person in the Black SUV was actively taking pictures of her, and she attempted to confront the individual while she simultaneously took pictures of the Black SUV and its driver. Her picture shows the vehicle Make and License Number, BX9K764. In Stephanie's photo you can also see the person driving holding

up a cell phone as if taking pictures. A true and correct copy of this photograph is attached hereto as **Exhibit A-1**.

5.      The following day Scott was in his office on Cole Street, when he noticed a vehicle resembling a "Toyota 4 Runner, Tan in color, stop in front of his office. He observed the driver of the taking pictures and or video of his officer and the vehicles parked in front. Scott was able to obtain the License Number of the Vehicle, GPF9512, he also noted that vehicle had a "WMR sticker on the rear window. Scott stated the driver of the vehicle looked like Pat Daugherty ("Daugherty"). Scott and Daugherty both previously worked at an investment firm in Dallas and are currently opponents in financial litigation. Scott believes that Daugherty is attempting to harass him, his friends and coworkers due to the litigation. It should be noted that Daugherty has a history of anger issues and he believes Daugherty may be trying to intimidate him.

6.      Scott asked if I could assist him in determining who the person(s) were taking the photos/videos. I advised Scott that I could check some open sources intelligence ("OSINT") sites and see what I could come up with in reference to the vehicle registrations. I also suggested that we set up a counter surveillance program to determine if these were random acts or an organized surveillance effort.

7.      On Feb 4, 2021, an investigation was opened along with a counter surveillance operation. OSINT sources showed Daugherty to be the registered owner of the Black SUV BX9K764 and that Daugherty currently is listed on the vehicle registration of the Infiniti QX4 GPF9512. The Infiniti QX4 closely resembles a Toyota 4 Runner (as observed by Scott above). We believe that Daugherty sold the Infiniti to one of his domestic employees and "borrowed" the vehicle to avoid detection.

DECLARATION OF GREGORY ALLEN BRANDSTATTER

8.       On February 4, 2021, at approximately 11:20 A.M., I observed the Infiniti GPF9512 driven by a while male with sandy blonde hair drive by west bound on Cole slow when passing Scott's office (120 Cole St.) and then proceed west on Cole, south on Levee, east on Alley (rear of 120 Cole), U-turn, south on Levee and east on Leslie. I viewed the driver of this vehicle as he was exiting Alley and can verify, after comparing photos, that Daugherty was the driver of the Infiniti.

9.       At approximately 1:22 P.M. on Feb 4, 2021, Scott advised that Daugherty had followed him to 120 Cole, I was parked on Cole and Levee. As Scott parked, I observed the Infiniti driving west on Cole towards me. I observed Daugherty driving Infiniti GPF9512. Daugherty turned south on Levee, U-turn, north on Levee then east on Cole. I kept my distance as the Infiniti slowed and then stopped in front of Scott's office. While stopped in front of Scott's office, Daugherty verbally engaged Stephanie and Joe (friend of Scott). Daugherty proceeds east on Cole, I followed, Daugherty turned left on Rivers Edge, I am unable to follow due to traffic conditions. Stephanie and Joe identified the driver as Daugherty after comparing to photos. A true and correct copy of a photograph of the back of the Infiniti taken on February 4, 2021, on Cole St. is attached hereto as **Exhibit A-2**.

10.       At approximately 5:15 P.M. on February 4, 2021, Reese Morgan ("Reese"), a private investigator with whom I regularly work, drove by Daugherty's residence and confirmed two vehicles parked in the carport. One is a white Lincoln Navigator LPG9001 and the other is a Black GMC Yukon BX9K764, which is the same vehicle that followed Stephanie on February 3, 2021. The Infiniti GPF9512 (with a "WMR" sticker on the back window) is parked on the street across the street from Daugherty's carport. Attached as **Exhibit A-3** is a true and correct copy of a photograph of the Yukon parked at Daugherty's residence, attached as **Exhibit A-4** is a true and

DECLARATION OF GREGORY ALLEN BRANDSTATTER

correct copy of a photograph of the Navigator parked at Daugherty's residence, and attached as **Exhibit A-5** is a true and correct coy of a photograph of the Infiniti parked across the street from Daugherty's residence.

11.    February 5, 2021, approximately 1:40 P.M., Reese drove by Daugherty's Residence and verified the Infiniti GPF9512 parked across street from carport.

12.    February 8, 2021, at approximately 10:10 A.M., I drove by Daugherty's Residence and verified that the Infiniti GPF9512 was parked across street from carport.

13.    Additional screen captures clearly identify Daugherty as the driver videoing and/or photographing Scott's office.  *See* **Exhibit A-6** (March 29, 21, three passes by Daugherty in the Infiniti), **Exhibit A-7** (April 16, 2021, Daugherty in the Yukon); **Exhibit A-8** (April 23, 2021, Daugherty in the Yukon).  Daugherty also is clearly identifiable outside of Scott's sister's home. *See* **Exhibit A-9** (April 25, 2021, Daugherty in the Infiniti).  It is clear that he is recording Scott, his family, and friends.  *See* **Exhibit A-10** (May 3, 2021, Daugherty in the Navigator).

14.    Attached hereto as **Exhibit A-11** is a true and correct copy of a report that I wrote that contains my counter-surveillance log. As documented by the report, following verification that Daugherty was the individual in the Black Yukon with license plate BX9K764 and the Infiniti QX4 with license plate GPF9512, Daugherty was observed an additional 143 times outside Scott's office or the homes of his family or girlfriend between February 19, 2021, and November 23, 2021. In fact, there were many instances where Daugherty would drive by Scott's office several times in a single day. For example, Daugherty was observed driving by Scott's office at least nine (9) times on April 21, 2021. During many of these visits, Daugherty was observed taking photographs or video recordings from the inside of his vehicle.

DECLARATION OF GREGORY ALLEN BRANDSTATTER

15.    Additionally, Daugherty was observed at least eight (8) times outside of the home of Marcia Maslow, Scott's sister.  Mrs. Maslow resides with her husband and two minor daughters. Mrs. Maslow resides in Murphy, Texas, approximately a thirty minute drive (without traffic) from the residences of both Scott and Daugherty.  Mrs. Maslow sent me a written message after she observed Daugherty at her residence in which she describes the emotional trauma experienced by both her and her family.

16.    Finally, Daugherty has been observed at least seven (7) times outside the home of Scott's widower father Byron Ellington.  Mr. Byron Ellington lives in Parker, Texas, approximately a thirty-five minute drive (without traffic) from the residences of both Scott and Daugherty.

17.    While the verified instances whereby Daugherty was visited Scott's office or the home of his friends and family are extensive, Daugherty's harassment is almost certainly more extensive. The following factors lead to this conclusion:

    a.    Daugherty was only first spotted because of Stephanie's lay person observations, so the stalking likely started earlier;

    b.    Each photograph and video clip must be manually extracted from manual review of hours of raw video taken during daytime hours, so there is likely to be more encounters unidentified or unrecorded;

    c.    It is difficult to record Daugherty when his vehicle is following Scott's or those of his family;

    d.    There may be other locations associated with Scott that Daugherty stalked where I did not conduct counter-surveillance.

DECLARATION OF GREGORY ALLEN BRANDSTATTER

18.    In my experience on the United States Department of State High Threat Protection Team, the sort of conduct exhibited by Daugherty is a precursor to a physical attack. I therefore called the Dallas Police Department to report the stalking, but could not find anyone to take the report. I was told that Scott needed to call 911 instead and report situation.

[*Remainder of Page Intentionally Left Blank; Signature Page Follows*]

DECLARATION OF GREGORY ALLEN BRANDSTATTER

FURTHER DECLARANT SAYETH NOT.

My name is Gregory Allen Brandstatter. My date of birth is <u>May 4, 1954</u>. My address is 1001 County Road 26100, Roxton, Texas 75477. I declare under penalty of perjury that the foregoing is true and correct.

Executed in <u>Dallas</u> County, State of Texas, on the <u>28th</u> day of December, 2021.

_Gregory Allen Brandstatter_

Gregory Allen Brandstatter

DECLARATION OF GREGORY ALLEN BRANDSTATTER



EXHIBIT

A-1



EXHIBIT

A-2



EXHIBIT

A-3



**EXHIBIT**

**A-4**



**EXHIBIT**

**A-5**



EXHIBIT

A-6







**EXHIBIT**

**A-7**

exhibitsticker.com



EXHIBIT

A-8





EXHIBIT

A-10





111521

Greg Brandstatter, Pat D Investigation / Counter Surveillance log

On Feb 3 2021, Scott Ellington (Scott) called, advising me that he believed someone was stalking himself and his girlfriend Stephanie Archer (Stephanie). The day prior, Feb 2 2021 to his calling me Stephanie had been followed to 120 Cole Street, Dallas, Texas, where Scott has an office. Stephanie stated that she had noticed that for the past month or so she had noticed a large Black SUV possibly following her. On Feb 2 2021 she noticed that the person in a Black SUV actively taking pictures, she had, had enough and attempted to confront the individual while taking a picture of the vehicle. Her picture shows the vehicle Make and License Number, BX9K764. In Stephanie's photo you can also see the person driving holding up a cell phone as if taking pictures. See Stephanie's photo.

The following day Scott was in his office on Cole Street, when he noticed a vehicle resembling a "Toyota 4 Runner, Tan in color, stop in front of his office. He observed the driver of the taking pictures and or video of his officer and the vehicles parked in front. Scott was able to obtain the License Number of the Vehicle, GPF9512, he also noted that vehicle had a "WMR sticker on the rear window. Scott stated the driver of the vehicle looked like Pat Daugherty (Pat). Scott and Pat both previously worked at an investment firm in Dallas, and are currently opponents in financial litigation. Scott believes that Pat is attempting to harass him, his friends and coworkers due to the litigation. It should be noted that Pat has a history of anger issues and he believes Pat may be trying to intimidate him.

Scott asked if I could assist him in determining who the person(s) were taking the photos/videos. I advised Scott that I could check some Open Sources Intelligence sites and see what I could come up with in reference to the vehicle registrations. I also suggested that we set up a counter surveillance program to determine if these were random acts of an organized surveillance effort.

On Feb 4 2021 an investigation was opened along with a counter surveillance operation. OSINT sources showed Pat to be the registered owner of the Black SUV BX9K764 and that Pat was the previous owner of the Infinity QX4 GPF9512. The Infinity QX4 closely resembles a Toyota 4 Runner ( as observed by Scott above). We believe that Pat sold the Infinity to one of his domestic employees and "borrowed" the vehicle to avoid detection.

At approx. 1120 on Feb 4th the Infinity GPF9512 driven by a W/M Sandy Blonde hair drives by WB on Cole slows when passing 120 proceeds W on Cole, S on Levee, E on Alley (rear of 120 Cole), U-turn, S on Levee and E on Leslie. I viewed the driver of this vehicle as he was exiting alley and can verify after comparing Photos, that Pat was the driver of the infinity.

At approx 1322 on Feb 4th Scott advises that the Pat had followed him to 120 Cole, I was parked on at Cole and Levee as Scott parked I observe the Infinity drives W on Cole towards me, I observe Pat driving infinity GPF9512. Pat turns south on Levee, U-turn, N on Levee then E on Cole. I keep my distance as Infinity slows then stops in front of 120, While stopped in front of 120, Pat verbally engages Stephanie and Joe (friend of Scott). Pat proceeds E on Cole, I follow, Pat turns left on Rivers Edge, I am

EXHIBIT

A-11

unable to follow due to traffic conditions. Stephanie and Joe are able to Identify the Driver as Pat after comparing to photos. See photos for rear of Infinity, on Cole Street, Note Sticker (WMR).

At Approx 1715 on Feb 4, Reese Morgan (Reese) PI drives by Pat's residence and is able to confirm two vehicles parked in carport, White Lincoln Navigator LPG9001 and Black GMC Yukon BX9L764, same vehicle that followed Stephanie on Feb 3, The Infinity GPF9512 is parked on the street across the street from Pat's carport, see photos

Feb 5 2021, approx 1340, Reese drive by Pat's Residence verify Infinity GPF9512 parked across street from carport.

Feb 8 2021, approx. 1010, Drive by Pats Residence verify Infinity GPF9512 parked across street from carport

Feb 19 2021 approx 1700 Sarah Goldsmith, moving files to 120 Cole St, confronted my W/M Sandy Blonde, Graying hair, driving a "Silver Toyota 4 Runner" (Infinity). Driver ask "Do you know if Scott is back in town?" She ignored him and went into office space until he left. She did not feel safe, she departed and had her husband accompany her back to Cole St. After viewing a picture of Pat, Sarah was able to verify the driver who confronted her was Pat.

Feb 23 2021 approx 1707 Black GMC Yukon BX9K764, Driven by Pat (visual), business attire blue shirt, E-W on Cole, slows at 120, proceeds N on Levee, E on Oaklawn. (Day in Court)

March 4 2021 approx 1113, Black GMC Yukon BX9K764, drives by E-W on Cole slows when passing 120, S on Levee, pulls over appears to be taking notes, continues S on Levee, turns E on Leslie at.

March 9 2021 approx 1110, Black GMC Yukon BX9K764, drives by E-W on Cole, slows, then N on Levee.

approx 1340, Black GMC Yukon BX9K764, drives by E-W on Cole, slows, then N on Levee.

March 23 2021 approx 1450, Black GMC Yukon BX9K764, driven by Pat, drives by E-W on Cole, Stops in front of 120, (note Scott's Vic out front with door open), S on Levee, U-turn, N on Levee. Visually confirm Pat driving.

approx 1700, Black GMC Yukon BX9K764, driven by Pat, drives by E-W on Cole, Stops in front of 120, Scott is in office and observes Pat taking pictures or video of building and vehicles, Pat proceeds W on Cole , N on Levee

March 25 2021 approx 1414, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole Stops short of 120, I observed Pat, dressed in business attire, exit vehicle and put trash in trash container, then proceed W on Cole where he stopped in front of 120 for an extend period of time, before proceeding W on Cole

Approx. 1417, Black GMC Yukon BX9K764, driven by Pat, drives by E-W on Cole, Stops in front of 120, another extended stop at 120 before proceeding W on Cole.

March 26 2021, approx 1414, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole. I pass in opposite direction. Pat is wearing business attire, talking on cell phone

March 29 2021, approx 1430, Infinity QX4 GPF9512, with "WMR sticker on the rear window, driven by Pat, drives by E-W Stops front of 120, peers into building.

Approx 1433, Infinity QX4 GPF9512, driven by Pat, drives by E-W Stops front of 120, appears to be taking pictures of building and vehicles.

Approx 1450, Infinity QX4 GPF9512, driven by Pat, drives by E-W Slows front of 120

March 31 2021, approx 1508, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole, opens door slightly

Approx 1511, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole stops front of 120, takes pictures

Approx 1518, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole stops front of 120, takes video

Approx 1522, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole stops front of 120, takes extensive video of inside garage door and vehicles out front

April 13 2021, approx 1428, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole

Approx 1430, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole, slows at 120, takes video of building and vehicles

Approx 1433, Black GMC Yukon BX9K764, driven by Pat, driving W-E on Cole

April 14 2021  Scott's Sister Marcia Reports, Black GMC Yukon Denali, stopped in front of her house and was taking pictures of her home, family and vehicles, she reports this is the second instance. First instance was 3 25 2021, She provides Video of second instance, See Marcia's report. Stealthcam deployed.

April 16 2021, approx 1453, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole, slows takes pics/video of vehicles

Approx 1455, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole,I nterested in Scott' new assistant Charleigh.

Approx 1456, Black GMC Yukon BX9K764, driven by Pat, driving W-E on Cole, Passenger in vehicle, New Player

April 19 2021, approx 1423, Black GMC Yukon BX9K764, driven by Pat, driving E-W on Cole, Stops takes Video

Approx 1426, Black GMC Yukon BX9K764, driven by Pat, driving W-E on Cole

April 20 2021, approx 1335, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1338, Black GMC Yukon BX9K764, driven by Pat drives by, E-W on Cole slows takes pictures

Approx 1340, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

April 21 2021,   approx 1028, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1038, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1040, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1043, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, stops for extended period looking inside garage door, car behind him honks

Approx 1055, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, fast

Approx 1058, Black GMC Yukon BX9K764, driven by Pat drives by W-E on Cole

Approx 1215, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, stops and takes pictures of vehicles

Approx 1217, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, slows at 120 and takes video

Approx 1448, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, Stops and takes video of vehicles, Scott confirms he saw, Black GMC Yukon

April 22 2021,   approx 1010, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, talking on phone or into voice recorder

Approx 1013, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, talking on phone or into voice recorder

Approx 1220, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, takes picture of Charleigh Vehicle

Approx 1325, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1547, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

April 23 2021, approx 1027, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1321, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, Pics of Ryan's and Trevor Vehicles

Approx 1324, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

Approx 1457, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole, Good Facial Picture

Approx 1500, Black GMC Yukon BX9K764, driven by Pat drives by W-E on Cole

Infinity QX4 GPF9512, driven by Pat, drives E-W,  E-W on Cole

Approx 1432, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

April 24 2021, (Sat) approx 1158, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

approx 1432, Black GMC Yukon BX9K764, driven by Pat drives by E-W on Cole

approx 1605 Black GMC Yukon, driven by Pat drives by Marcia's House

April 25 2021, (Sun) approx 1608, Infinity QX4 GPF9512, driven by Pat drives by Marcia's House

April 26 2021, approx 1533, Infinity QX4 GPF9512, driven by Pat drives by Byron's House

approx 1534, Infinity QX4 GPF9512, driven by Pat drives by Byron's House


April 27 2021 Infinity QX4 GPF9512, drives by E-W on Cole, Video only, Not typical behavior, cannot confirm.

April 28 2021, approx 1030, Infinity QX4 GPF9512, driven by Pat, drives by E-W, slows takes Video, Faster than normal, visual only

approx 1510, Infinity QX4 GPF9512, driven by Pat, drives by E-W, slows but behavior atypical

approx. 1650, Infinity QX4 GPF9512, driven by Pat, drives by E-W, Video confirmation

approx 1745, Black Yukon drives by, Cam Only no Confirmation, (note change vehicle)

April 30 2021, approx. 1634 Infinity QX4 GPF9512, driven by Pat, drives by E-W, Cam only **Atypical**

May 3 2021, approx. 1506 Lincoln Navigator XXXXXX, driven by Pat, drives by E-W, note vehicle change

approx. 1546 Lincoln Navigator XXXXXX, driven by Pat, drives by W-E

May 4 20212 approx 1642 Infinity QX4 GPF9512, driven by Pat, drives by E-W

approx 1651 Infinity QX4 GPF9512, driven by Pat, drives by W-E, License Plate

approx 1652 Infinity QX4 GPF9512, driven by Pat, drives by E-W

May 5 2021 approx 1123 Infinity QX4 GPF9512, driven by Pat, drives by E-W, Video on site

approx 1254 Infinity QX4 GPF9512, driven by Pat, drives by E-W

approx 1040 Infinity QX4 GPF9512, driven by Pat, drives by Marcia's house

May 12 2021 Approx 0955 Infinity QX4 GPF9512, drives by E-W, License Plate

approx 1308 Infinity QX4 GPF9512, driven by Pat, drives by E-W, takes video, sticker

approx 1311 Infinity QX4 GPF9512, drives by E-W, License Plate, sticker

May 13 2021 approx 1055 Infinity QX4, drives by, E-W

approx 1213 Infinity QX4, drives by, E-W, License Plate

May 14 2021 approx 1523 Infinity QX4, drives by, E-W

May 18 2021 approx 1416 Infinity QW4, drives by E-W

May 19 2021    approx  1411 Infinity QW4, drives by E-W, License Plate

May 18 2021    approx  1436 Infinity QW4, drives by 4432 Potomac

May 21 2021    approx  1147 Infinity QW4, drives by E-W, License Plate

May 22 2021    approx  1345 Infinity QW4, drives by E-W, License plate

May 24 2021    approx  1132 Infinity QW4, drives by E-W

               approx  1436 Infinity QW4, drives by W-E, License Plate

               approx  1526 Infinity QW4, drives by Marcia's house

May 26 2021    approx  1035 Infinity QW4, drives by E-W

               approx  1329 Infinity QW4, drives by E-W

               approx  1330 Infinity QW4, drives by W-E

               approx  1333 Infinity QW4, drives by E-W, License Plate

               approx  1334 Infinity QW4, drives by W-E, License Plate, Sticker

               approx  1428 Infinity QW4, drives by Byron's house

               approx  1430 Infinity QW4, drives by Byron's house, Sticker

May 27 2021    approx  1336 Infinity QW4, drives by E-W

May 28 2021    approx  1043 Black GMC Yukon, drives by E-W, reverts to GMC, Baseball cap

May 29 2021    approx  1126 Black GMC Yukon, drives by E-W, License Plate

               approx  1430 Black GMC Yukon, drives by E-W, License Plate

               approx  1432 Black GMC Yukon, drives by W-E

               approx  1432 Black GMC Yukon, drives by E-W, License Plate

               approx  1433 Black GMC Yukon, drives by W-E, License Plate

               approx  1506 Black GMC Yukon, drives by W-E, License Plate

June 1 2021    approx  1325 Black GMC Yukon, drives by W-E, License Plate

June 2 2021    approx  1012 Black GMC Yukon, drives by W-E, License Plate, Stop

               approx  1012 Black GMC Yukon, drives by W-E, License Plate, Stop

June 4 2021    approx  1406 Black GMC Yukon, drives by E-W, License Plate

               approx  1411 Black GMC Yukon, drives by W-E, License Plate

June 5 2021    approx  0959 Black GMC Yukon, drives by E-W, driven by Pat Blue Shirt

               approx  1007 Black GMC Yukon, drives by E-W, License Plate

June 7 2021      approx 1504 Black GMC Yukon, drives by E-W gb Visual from office BX9

June 9 2021      approx 1022 Black GMC Yukon, drives by E-W taking Pics, Trevor

approx 1023 Black GMC Yukon, drives by W-E, stopped

approx 1023 Black GMC Yukon, drives by W-E, stopped

approx 1024 Black GMC Yukon, drives by E-W,  License Plate, Video

approx 1423 Black GMC Yukon, drives by E-W License Plate Red Shirt

approx 1524 Black GMC Yukon, drives by E-W, License Plate + Visual Red Shirt


July 7 2021      approx 1037 Black GMC Yukon, drives by E-W, License Plate, visual id

Aug 9 2021       approx 1017 Black GMC Yukon, drives by E-W, License Plate

Aug 11 2021      approx 1141  Black GMC Yukon, drives by E-W, License Plate

Aug  21 2021     approx  1658 Black GMC Yukon, drives by Byron house in

Aug  21 2021     approx  1500 Black GMC Yukon , drives by Byron house out

Aug  21 2021     approx  1509 Black GMC Yukon, drives by Byron house out

Aug  22 2021     approx  1230 Black GMC Yukon, drives by Cole E-W

Aug  22 2021     approx  1316 Black GMC Yukon, drives by Marcia house L-R

Aug  24 2021     approx  1331 Infinity, drives by Cole E-W

Aug  26 2021     approx  1458 Black GMC Yukon, drives by Cole W-E

Sept 18 2021     approx  1720 Black GMC Yukon, drives by Cole E-W

Sept 21 2021     approx  1419 Black GMC Yukon, drives by Cole E-W

Oct 16 2021      approx 1235 Black GMC Yukon, drives by Cole E-W ?? enhance LP

Oct 23 2021      approx 1245 Black GMC Yukon, drives by 3825 Potomac W-E, ID by LP

approx 1635 Black GMC Yukon, drives by 3825 Potomac W-E, ?? enhance LP

approx 1635 Black GMC Yukon, drives by 3825 Potomac E-W, ?? enhance LP

Oct 30 2021      approx 0953 Black GMC Yukon, drives by 3825 Potomac E-W

approx 0956 Black GMC Yukon, drives by 3825 Potomac E-W

Nov 3 2021       approx 1555 Black GMC Yukon, drives by 3825 Marcia' house W-E Profile ID

approx 1557 Black GMC Yukon, drives by 3825 Marcia' house W-E Profile ID, either
stopped for 2 mins or returned after 2 mins

Nov 6 2021        approx  1004 Black GMC Yukon, drives by Cole E-W, D clearly visible – driver

Nov 8 2021        approx 1027 Black GMC Yukon, drives by Cole E-W, got in behind PI visual on LP and
                  Driver, Nest Cam Confirm

Nov 10 2021       approx  0747 Black GMC Yukon, drives by Cole W-E, lengthy stop Nest cam confirm

Nov 20 2021       approx 1128 Black GMC Yukon, drives by Cole W-E, Driver Visual

Nov 21 2021       approx 1410 Black GMC Yukon, drives by 3825 W-E, Passenger female? LP

Nov 22 2021       approx 1109 Black GMC Yukon, drives by Cole E-W, Driver visual

Nov 23 2021       approx 1803 Black GMC Yukon, drives by Cole E-W, Driver visual, taking pictures

                  Note SE on Cole earlier

                  approx 1806 Black GMC Yukon, drives by Cole W-E

                  approx 1810 Black GMC Yukon, drives by Cole E-W, Driver visual, taking pictures

**EXHIBIT**

**B**

---

## DECLARATION OF SCOTT BYRON ELLINGTON

---

STATE OF TEXAS      §
             §
COUNTY OF DALLAS    §

Scott Byron Ellington declares as follows:

  1.  My name is Scott Byron Ellington. I am over 21 years of age, have never been convicted of a felony or other crime involving moral turpitude, and suffer from no mental or physical disability that would render me incompetent to make this declaration.

  2.  I am able to swear, and hereby do swear under penalty of perjury, that the facts stated in this declaration are true and correct and within my personal knowledge.

  3.  Starting in January of 2021, my longtime girlfriend, Stephanie Archer ("Stephanie"), noticed a large, Black SUV possibly following her. On February 2, 2021, she was followed by the SUV to my office located at 120 Cole Street, Dallas, Texas. She noticed that the driver in the SUV was taking pictures from inside the vehicle. She confronted the individual while simultaneously taking pictures of the SUV and the driver. The license plate number of the black SUV was BX9K764.

  4.  The next day, on February 3, 2021, I was at my office when I noticed a vehicle resembling a tan Toyota 4 Runner stopped in front of my office with the driver either taking photographs or making a videorecording, or both. The license plate number of the vehicle was GPF9512. The driver of the vehicle appeared to be Patrick Daugherty ("Daugherty").

  5.  Until January of 2021, I was the general counsel for Highland Capital Management, L.P. ("Highland"). Daugherty is a former employee of Highland. In 2012, Highland sued Daugherty and Daugherty counterclaimed. The lawsuit was ultimately resolved by a jury trial, with

a jury determining that Daugherty breached his employment agreement and his fiduciary duties and awarding Highland $2,800,000 in attorney's fees and injunctive relief. The jury likewise found that a Highland affiliate, Highland Employee Retention Assets LLC ("HERA") breached the implied duty of good faith and fair dealing and awarded Daugherty $2,600,000 in damages.

6.      Since the filing of the original lawsuit in 2012, Daugherty and Highland—or Highland related entities and individuals—have engaged in protracted litigation in several different forums across the country. Daugherty's expressed goal in his campaign is to "get" me and the founder and former CEO of Highland, Jim Dondero.

7.      Daugherty has a history of anger issues and I believed that his "drive by" of my office and following Stephanie was his attempt to intimidate me.

8.      I hired a private investigator, Greg Brandstatter ("Brandstatter"), to assist in confirming the identity of the driver of the black SUV with license plate BX9K764 and the tan SUV with the license plate GPF9512.

9.      Brandstatter's investigation found that Daugherty was the individual following Stephanie and driving by my office. Further, I have reviewed photographs and video recordings of Daugherty outside my home located at 3825 Potomac Ave, Dallas, Texas 75205, my office, the house of my sister, Marcia, and the house of my father, Byron Ellington.

10.      Daugherty has been documented outside my office, my home, and the homes of my family 143 times since January of 2021. Both Marcia and Stephanie have confronted Daugherty at times and demanded that he stop his harassment, but he has continued to visit my office and home, and the homes of my family members, despite these demands.

11.      I have moved residences three times from January 2021 to today.  Daugherty has been recorded outside of the second and third residences to which I moved.  The second residence

was Stephanie's house and was not under my name.  For the third residence, my address was not searchable under my name on the Dallas County Central Appraisal District website.  Nonetheless, Daugherty was recorded outside of that address within two months of me moving. On information and belief, Daugherty could not have located me at either residence without physically following me or others to those locations.

12.     I believe that Daugherty's actions are leading up to a physical attack by him on either myself, Stephanie, or members of my family. I understand that Brandstatter has reported Daugherty's harassment and stalking to the Dallas Police Department. I also called the Dallas Police Department to report the harassment and stalking.  The harassment has caused me fear and anxiety and will continue to cause me fear and anxiety.

13.     Daugherty's harassment further interferes with my daily activities. I am constantly looking out for him when I am at my home or at my office. I had to hire Brandstatter to confirm that Daugherty was the individual stalking me and my family and then document the extent of the harassment. I have had security devices, such as cameras, installed at my personal home and office in response to the harassment. I have had to hire personal security. I have also had to change my daily routine to try and avoid being followed by Daugherty.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

FURTHER DECLARANT SAYETH NOT.

My name is Scott Byron Ellington. My date of birth is <u>10.24.1971</u>. My address is 3825 Potomac Ave., Dallas, Texas 75205. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas County, State of Texas, on the 11th Day of January, 2022.


_____

Scott Ellington

DECLARATION OF SCOTT BYRON ELLINGTON

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Patricia Perkins Mayes on behalf of Julie Pettit
Bar No. 24065971
pperkins@pettitfirm.com
Envelope ID: 60728974
Status as of 1/12/2022 8:55 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Julie Pettit | | jpettit@pettitfirm.com | 1/11/2022 6:09:57 PM | SENT |
| Beverly Congdon | | bcongdon@lynnllp.com | 1/11/2022 6:09:57 PM | SENT |
| Patricia Perkins Mayes | | pperkins@pettitfirm.com | 1/11/2022 6:09:57 PM | SENT |
| Michael K.Hurst | | mhurst@lynnllp.com | 1/11/2022 6:09:57 PM | SENT |
| Mary GoodrichNix | | mnix@lynnllp.com | 1/11/2022 6:09:57 PM | SENT |
| Nathaniel A.Plemons | | nplemons@lynnllp.com | 1/11/2022 6:09:57 PM | SENT |

# EXHIBIT 2

**For the Issuance of a New York Subpoena Under CPLR § 3119**

**CAUSE NO. DC-22-00304**

| | | |
|---|---|---|
| **SCOTT BYRON ELLINGTON** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **101st JUDICIAL DISTRICT** |
| | § | |
| **PATRICK DAUGHERTY,** | § | |
| | § | |
| *Defendant.* | § | **DALLAS COUNTY, TEXAS** |

---

## AMENDED SUBPOENA FOR THE DEPOSITION OF NON-PARTY JAMES SEERY

---

TO:   Any sheriff or constable of the State of Texas or other person authorized to serve and execute subpoenas as provided in Texas Rule of Civil Procedure 176.5.

YOU ARE COMMANDED to summon:

| | |
|---|---|
| Deponent: | James Seery |
| Address: | c/o Joshua S. Levy |
| | Willkie Farr & Gallagher LLP |
| | 787 Seventh Avenue |
| | New York, New York 10019-6099 |

TO APPEAR VIRTUALLY AT:

| | |
|---|---|
| Location: | Willkie Farr & Gallagher LLP |
| | 787 Seventh Avenue |
| | New York, New York 10019-6099 |
| Date: | Monday, July 31, 2023 |
| Time: | 9:30 AM |

The above-named Deponent is hereby commanded to appear at the time, date, and place set forth above for deposition in the above-captioned case, and to remain in attendance from day to day until lawfully discharged.

**Warning: Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued**

**or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both**

This amended subpoena is issued at the request of Plaintiff, whose attorney of record is Julie Pettit.

**DATE OF ISSUANCE**: July 13, 2023

AMENDED SUBPOENA ISSUED BY:

*/s/ Julie Pettit*
**Julie Pettit**
State Bar No. 24065971
jpettit@pettitfirm.com
**THE PETTIT LAW FIRM**
2101 Cedar Springs, Suite 1540
Dallas, Texas 75201
Telephone: (214) 329-0151
Facsimile: (214) 329-4076

**Michael Hurst**
State Bar No. 10316310
mhurst@lynnllp.com
**Mary Goodrich Nix**
State Bar No. 24002694
mnix@lynnllp.com
**Michele Naudin**
State Bar No. 24118898
mnaudin@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR PLAINTIFF**

## RETURN OF AMENDED SUBPOENA

I, _____, delivered a copy of this subpoena to _____, in

person at _____,

in _____ County, Texas, on _____, 2023, at _____ o'clock

_____.m., and tendered to the witness a fee of $_____ in cash.

I, _____, was unable to deliver a copy of this subpoena to _____

_____ for the following reasons:

_____

_____

_____

_____

By: _____
Signature of person authorized by law or
written order of trial court who has no interest
in the lawsuit and is at least 18 years old.

Name: _____

Title: _____

## ACCEPTANCE OF SERVICE OF AMENDED SUBPOENA BY WITNESS UNDER TEXAS RULE OF CIVIL PROCEDURE 176

I accept service of this amended subpoena.

_____

Witness: James Seery, c/o Joshua S. Levy, Esq.

_____

Date:

FEE FOR SERVICE OF SUBPOENA: $_____

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record *via electronic service* on July 13, 2023:

*/s/ Julie Pettit*
_____
Julie Pettit
Counsel for Plaintiff

# EXHIBIT A-12

**CAUSE NO. DC-22-00304**

| | | |
|---|---|---|
| **SCOTT BYRON ELLINGTON** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **101ST JUDICIAL DISTRICT** |
| | § | |
| **PATRICK DAUGHERTY,** | § | |
| | § | |
| *Defendant.* | § | **DALLAS COUNTY, TEXAS** |

---

### ORDER GRANTING PLAINTIFF'S FOURTH MOTION TO COMPEL

---

Before the Court is "Plaintiff's Fourth Motion to Compel" filed on August 21, 2023 (the

"Motion"). After considering the Motion, the Response, the arguments of counsel, and all evidence

properly before the Court, the Court finds that the Motion should be GRANTED.

IT IS THEREFORE ORDERED that the Motion is GRANTED.

IT IS FURTHER ORDERRED THAT Defendant shall produce all text messages with *(and the stalking issues)*

James Seery regarding Plaintiff, including the unredacted versions of the text messages already

produced by James Seery within *15 (fifteen)* days of the date of this Order.

SIGNED this _1st_ day of _September,_ 2023.

_____
**JUDGE STACI WILLIAMS**