# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 19-34054-SGJ11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § § | CHAPTER 11 |
| *Reorganized Debtor* | § § | |

**DECLARATION OF MICHAEL K. HURST**

I, Michael K. Hurst, declare under penalty of perjury as follows:

**A. Introduction.**

1.   My name is Michael K. Hurst. I am over eighteen (18) years of age, I am of sound mind, I never been convicted of a felony, I am capable of making this declaration, and I am fully competent to testify unto the matters stated herein.

2.   I am able to swear, and I hereby do swear, that the facts stated in this declaration are true and correct and are within my personal knowledge.

3.   I am an attorney of record for Scott Byron Ellington ("Ellington") in the lawsuit styled *Scott Byron Ellington v. Patrick Daugherty*, Cause No. DC-22-00304, pending in the 101st Judicial District Court in Dallas County, Texas (the "State Court Action").

4.   Though I am counsel for Ellington in the State Court Action, I have not made an appearance on behalf of Ellington in the bankruptcy matter styled *In re: Highland Capital Management, L.P.*, Case No. 19-34054-sgj11, pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Highland Bankruptcy").

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

DECLARATION OF MICHAEL K. HURST – PAGE 1

5. I received Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery, Jr.'s (collectively, the "Movants") motion for an order to show cause (Doc. 3910) (the "Motion"). I learned of Movants' intent to file the Motion on September 13, 2023, the day it was filed. Specifically, at 11:47 a.m. that day, I received an email from Joshua S. Levy, counsel for Seery, who advised of the imminent filing of the Motion. This was the first correspondence I received from Highland's or Seery's counsel since late July 2023. While the subject line of the email was "meet and confer," Levy stated that his email was merely a "courtesy," and then refused to send my co-counsel in the State Court Action (Julie Pettit) a draft of the Motion or otherwise provide advance time to discuss the Motion so I could meaningfully confer regarding his client's allegations. A true and correct copy of the September 13, 2023 email is attached to the Declaration of Julie Pettit ("Pettit Dec.") as **Exhibit A-1.**

6. The Motion contains misstatements of fact, omits other important facts, and presents a misleading depiction of the journey that the State Court Action has taken to arrive at the point where Ellington is now seeking discovery from Seery, among others.

### B. Ellington sues Daugherty in the State Court Action for civil stalking and invasion of privacy.

7. On January 11, 2022, Ellington filed his original petition and application for temporary restraining order in the 101st Judicial District Court in Dallas County, Texas. A true and correct copy of the petition is filed at Doc. 3912-2. As detailed in the petition, Ellington alleged that Patrick Daugherty ("Daugherty") engaged in a campaign of dangerous harassment against him and his family seemingly as an escalation from the previous decade of litigation between Daugherty and either Ellington personally or parties that Ellington was aligned with, including a 2019 lawsuit filed by Daugherty in Delaware Chancery Court that I understand has been dismissed. Indeed, while the full extent of the harassment is unknown, Ellington and a retired law enforcement

investigator documented no less than 143 instances where Daugherty *personally* appeared outside his residence, his office, or the residences of his family between February and December of 2021. Based on the facts either known or reasonably believed at the time the petition was filed, Ellington asserted claims *solely* against Daugherty for civil stalking and invasion of privacy.

8. On January 12, 2022, the day after Ellington filed the petition, the Texas state district court signed and entered a temporary restraining order ("TRO") prohibiting Daugherty from being within 500 hundred feet of Ellington or his family. A true and correct copy of the TRO is attached to the Pettit Dec. as **Exhibit A-2**.

C. **Daugherty removed the State Court Action to this Court in an unsuccessful attempt to connect the lawsuit with the Highland Bankruptcy.**

9. On January 18, 2022, Daugherty removed the State Court Action to this Court. On January 25, 2022, Ellington filed a motion to remand in this Court. Ross & Smith, PC and Baker & McKenzie LLP represented Ellington in this Court on his motion to remand. Neither The Pettit Law Firm nor Lynn Pinker Hurst Schwegmann, LLP represented Ellington in connection with the remand.

10. On March 29, 2022, the Court held a hearing on Ellington's motion to remand. As previously mentioned, I did not represent Ellington in connection with the remand proceedings in this Court. Accordingly, I was not present at the hearing.

11. On April 11, 2022, the Court signed and entered a written order remanding the lawsuit back to the state court.

**D. After remand of the State Court Action, the parties engaged in discovery revealing that Daugherty sent documentation of his stalking to a number of third-parties, including Seery and several members of the creditors' committee for the Highland Bankruptcy.**

12. When the State Court Action resumed in April of 2022, the parties fought over several procedural issues. Nonetheless, Ellington's application for temporary injunction was eventually set for hearing on September 1, 2022.

13. After the remand and in advance of the hearing on the temporary injunction, Ellington propounded written discovery requests on Daugherty, including requests for production, and then issued a notice of deposition for July 14, 2022.

14. Ellington served his first requests for production to Daugherty on May 15, 2022. A true and correct copy of these requests are attached to the Pettit Dec. as **Exhibit A-4**. Ellington served eight (8) requests for production, including requests for any communications referencing the materials created by the stalking (defined in the requests as the "Ellington Recordings") as well as any communications identifying others who either knew of or were involved in the stalking. *See id.*, Ex. A-4 at RFP Nos. 2, 8. The requests did not specifically identify Seery or any other individual involved in the Highland Bankruptcy because at the time of service, we had no reason to believe that such individuals received materials Daugherty obtained and compiled in connection with the stalking.

15. In response to the requests for production, Daugherty produced what appeared to be fragmented and incomplete text message conversations with Seery and others connected to the stalking. A true and correct copy of the first text messages produced on or about July 11, 2022 by Daugherty are attached to the Pettit Dec as **Exhibit A-5**.

16. During his deposition, Daugherty admitted that he appeared uninvited at Ellington's home, workplace, and the homes of Ellington's family. Daugherty claimed that he

engaged in these activities to investigate Ellington's assets in connection with Daugherty's claims against Ellington in a Delaware lawsuit. A true and correct copy of pertinent excerpts from Daugherty's deposition is attached to the Pettit Dec. as **Exhibit A-6.** The following exchange during Daugherty's deposition neatly demonstrates his stated rationale for his actions:

> Q. (By Mr. Hurst) Okay. And what you were doing, whether you agree that it was 140-something times at least or not, you're saying that what you were doing is a, quote, investigation?
>
> A. My actions were purely investigatory.
>
> Q. And investigatory for what reason?
>
> A. To inventory, identify and discover assets of Scott Ellington's.
>
> Q. Why is that important to you?
>
> A. Because he has a history of transferring assets out of entities where I owned or had an economic interest or other entities like Highland Capital.
>
> Q. Okay. And –
>
> A. And its affiliates.
>
> Q. Okay. And so what were you doing in this investigation, if you will, in the context of?
>
> A. I don't understand your question.
>
> Q. Why were you investigating his assets?
>
> A. I just told you.
>
> Q. You told me that you're concerned he was going to transfer assets. But why is that important to you?
>
> A. I had litigation against him in Delaware as a defendant.

*See id.*, Ex. A-6 at 56:23-57:22.

17.　　However, during his deposition, Daugherty disclosed that he sent the information he gathered from the stalking activities not to individuals connected to the now-dismissed Delaware lawsuit – but to individuals connected with the *Highland Bankruptcy*, including Seery:

Q. Do you have a compilation, as you just testified to a minute ago?

A. Of the data?

Q. Yes.

A. In various forms, yes.

Q. Where is that?

A. I drafted emails that included that information.

Q. Have you provided those to us?

A. No.

Q. Have you provided the compilations?

A. No.

Q. To whom did you provide these emails and compilations?

A. To the creditors' committee.

Q. Who in particular did you address it to? Sorry.

A. Can I finish? Yeah, answer your question.

　　MS. DANIELS: Allow him to answer your questions before you interrupt him.

A. ***To the creditors' committee for the Highland Capital bankruptcy***.
　　To ***Matt Clemente***, who is counsel for the creditors' committee.
　　To ***Andrew Clubok***, who is a representative of UBS on the creditors' committee.
　　To – I can't say for sure. I might have emailed everybody on the committee. I don't know. I generally – I don't know if I included Josh Terry or not. I don't know if I included everybody.

> And then to *Jim Seery*, who is the CEO of Highland.
> To – what's the guy's name – the litigation trustee on the Highland estate. What was his name? It's *Marc Something, Kirshner*.
> So *various members of the Quinn Emanuel legal team*.
>
> Q. (By Mr. Hurst) Who else?
>
> A. There may be more. I just don't recall off the top of my head.

*See id.*, Ex. A-6 at 59:21-61:10 (emphasis added).

18. According to Daugherty, Seery and the creditors' committee "appreciated" the information:

> Q. Did anybody tell you that they approved of your investigation?
>
> A. I wouldn't use that word.
>
> Q. Is there a word that you would use instead of approved of your so-called investigation?
>
>     MS. DANIELS: Objection, form.
>
> A. Appreciated.
>
> Q. (By Mr. Hurst) Who would you say appreciated your so-called investigation of Scott Ellington and perhaps others?
>
>     MS. DANIELS: Objection, form.
>
> A. Of the assets, right; that's what I was doing.
> People, representatives of the creditors' committee, Marc Kirschner, the litigation trustee, Quinn Emanuel lawyers, the Sidley lawyers, Seery himself. There may be others.

*See id.*, Ex. A-6 at 104:11-105:2.

19. Daugherty testified that he "investigated" Ellington for the Delaware litigation but admitted to distributing the same information to members of the creditors' committee in the *Highland Bankruptcy*. I understand that the Delaware lawsuit against Ellington, which has been dismissed and upheld on appeal, and the Highland Bankruptcy are not connected, so it is more

DECLARATION OF MICHAEL K. HURST – PAGE 7

than suspicious why Daugherty distributed this information to the creditors' committee if his investigation was to look into assets connected with the Delaware litigation. In fact, when I attempted to ask follow-up questions about this inconsistency in the deposition, Daugherty's counsel objected and instructed Daugherty not to answer. *See id.*, Ex. A-6 at 61:20-63:20.

E. **At the hearing on Ellington's application for temporary injunction, Daugherty again referenced the Highland Bankruptcy – this time as a *defense* to Ellington's claims for stalking and invasion of privacy.**

20. Ellington's application for temporary injunction hearing proceeded as noticed on September 1, 2022. During opening statements, Daugherty's counsel, the same lawyer who argued the motion to remand in the bankruptcy court, tried to rationalize Daugherty's behavior by giving a lengthy presentation about a supposed scheme to hide assets from Highland and the bankruptcy court. A true and correct excerpt of opening statements is attached to the Pettit Dec. as **Exhibit A-7**. The following excerpt illustrates Daugherty's heavy emphasis on events relating to the Highland Bankruptcy during opening statement:

> So why is that important? Well, in addition to that, as part of that lawsuit, Mr. Daugherty was engaging in discovery, and at the same time Highland had filed bankruptcy. In early 2021, Mr. Dondero testified in the Highland bankruptcy case that both he and Mr. Ellington had destroyed their cell phones. Well, that was problematic because at the time Mr. Ellington and Mr. Dondero were still parties, and are still parties, in Mr. Daugherty's Delaware action, and they were subject to discovery from those phones under the purview of a special master. So they engaged in the spoliation.
>
> *Additionally, the information on those phones would seemingly be relevant to claims that were going on in the Highland bankruptcy that the creditor's committee was bringing, and Mr. Daugherty was a creditor of Highland at the time.* So Mr. Daugherty at that point had determined that the information that he was trying to get in discovery wasn't coming to him, and he believed he needed to conduct further investigation on his own of Mr. Ellington, including what Mr. Ellington's assets were that might be available to satisfy Mr. Daugherty's underlying judgment.

\*\*\*

.... But why did the investigation matter? Well, based on Mr. Daugherty's surveillance of Mr. Ellington's office and his house and being able to get license plates of vehicles that were parked there, he eventually discovered a web of various entities that Mr. Ellington and Mr. Dondero were using to siphon assets from the reach of creditors, both Mr. Daugherty and then *the Court-appointed creditor's committee* in the Highland bankruptcy.

So let's walk through one example of this. The first is that there was a lawsuit involving a Highland affiliate and UBS in which UBS is paying a substantial judgment, nine figures initially that grew to a billion dollars, and Mr. Ellington came up with the idea of setting up a dummy entity in the Cayman Islands that was going to provide an after-the-event insurance policy that it sold to the Highland affiliate for less than the face value of the assets which the Highland affiliate actually owned. In other words, it was a fraudulent transfer, and all of this was Mr. Ellington's idea as he admitted in the Highland bankruptcy.

As part of this scheme, Mr. Ellington and Mr. Dondero set up all of these entities to run this through, including at the top you'll see there's an entity called SAS Holdings SPV Limited. That's important here because you're going to hear some testimony about it later on today that it has implications in this lawsuit itself.

Well, not only did they use these entities to create these fraudulent transfers, Mr. Ellington, Mr. Dondero, Mr. Leventon, who, by the way, is on the call listening to this hearing and is apparently Mr. Ellington's counsel, then actively concealed the existence of their scheme from new management of Highland that had taken over in the course of the Highland bankruptcy, and they also concealed it from the bankruptcy court, and they concealed it from UBS. In fact, Mr. Ellington lied about it in e-mails saying these were just ghost funds that had no assets whatsoever which actually wasn't the case.

*See id.*, Ex. A-7 at 22:5-24:23 (emphasis added).

21. When the state court judge questioned the relevance of any of those allegations regarding the Highland Bankruptcy, counsel stated:

MR YORK: Your Honor, the reason this is relevant goes to the purpose and the intent for why Mr. Daugherty engaged in the

DECLARATION OF MICHAEL K. HURST – PAGE 9

investigation activities he engaged in; not because he was attempting to intimidate, harass or threaten Mr. Ellington.

See id., Ex. A-7 at 26:1-5. In other words, Daugherty had interjected the parties' actions relating to the Highland Bankruptcy as a defense to Ellington's state law claims for civil stalking and invasion of privacy.

22. At the conclusion of the hearing, the state court granted Ellington's application for temporary injunction and ordered Daugherty to stay away from Ellington and his family.

**F. After the state court issued the temporary injunction, Ellington refocused on discovery and served extensive non-party discovery subpoenas to better understand the facts and circumstances of the stalking.**

23. After the hearing, Ellington followed-up on the information learned during Daugherty's deposition by serving targeted discovery requests to obtain the communications Daugherty had with certain individuals, including Seery, regarding his "investigation" of Ellington. Ellington served the following discovery:

a. On September 8, 2022, Ellington served his third requests for production, which contained specific requests for Daugherty to produce his communications with lawyers at Sidley Austin, lawyers at Quinn Emanuel, lawyers at Latham & Watkins, and lawyers at Pachulski Stang Ziehl & Jones, among many others.

b. On October 6, 2022, Ellington served a notice[2] of intent to serve a non-party discovery subpoena on John Dubel.

c. On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Glacier Lake Partners, LP.

d. On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on John Morris.

e. On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Matthew McGraner.

---

[2] Per Texas Rule of Civil Procedure 205.2, a party must serve notice of intent to serve a non-party discovery subpoena at least ten (10) days before serving the subpoena. I am including in this declaration references to the notices as opposed to the actual subpoenas merely to create an accurate timeline of when Ellington first attempted to formally request documents from certain non-parties by use of the discovery process.

DECLARATION OF MICHAEL K. HURST – PAGE 10

 f. On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Matthew Clemente.

 g. On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Paige Montgomery.

 h. On October 6, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Marc Kirschner.

 i. On October 7, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Andrew Clubok.

 j. On October 19, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Eric Felton.

 k. On October 19, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on the Honorable Russel Nelms.

 l. On October 19, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Carl Moore.

 m. On October 19, 2022, Ellington served a notice of intent to serve a non-party discovery subpoena on Joshua Terry.

 n. On October 20, 2022, Ellington served a notice of intent to serve a non-party Michael Colvin.

24. The Motion references the subpoena served on Judge Nelms. I was party to a lengthy email exchange with Judge Nelms' counsel regarding the subpoena. A true and correct copy of that email thread is attached to the Pettit Dec. as **Exhibit A-9**. Unlike Seery, Judge Nelms disclaimed any communications with Daugherty. However, as Julie Pettit explained to Judge Nelms' counsel, we had a good faith basis to believe Judge Nelms had knowledge of facts and circumstances relating to the Daugherty Settlement. Discovery is still ongoing, but based on information produced thus far, we have a good faith basis to investigate Daugherty's stalking of Ellington as a possible *quid-pro-quo* in exchange for a more beneficial settlement with Highland. Judge Nelms apparent lack of knowledge regarding the stalking seems curious and raises questions regarding Daugherty's motivation behind the decision to omit a member of the creditors'

committee. Indeed, the timeline as we know it would support that allegation as after Daugherty transmitted the information he gathered on Ellington to Seery and members of the creditors' committee, it is my understanding that he ultimately received a settlement that was materially better than what had been previously agreed to.

### G. Seery substantively responded to the discovery subpoena served on him, produced documents, and agreed to a deposition to take place on July 31, 2023.

25.　Seery received and served formal responses and objections to Ellington's discovery subpoena in the State Court Action first on December 9, 2022, and then served amended responses and objections on December 23, 2022. Seery ultimately produced documents on January 3, 2023. Seery never objected to the aforementioned discovery on the basis that Ellington (or Lynn Pinker and the Pettit Firm) failed to obtain prior authorization from the Highland Bankruptcy Court.

26.　In June of 2023, I along with my co-counsel, Julie Pettit, began a dialogue with Seery's counsel to schedule his deposition. A true and correct copy of this email chain is attached to the Pettit Dec. as **Exhibit A-10**. After several cooperative emails and phone calls with numerous lawyers at Mr. Seery's law firm, along with John Morris, we reached agreements with Seery's counsel and Mr. Morris regarding the deposition including date and time, narrowing of the topics, attendance of third parties (*i.e.*, John Morris), and Seery's supplemental production in advance of the deposition. As a result of the agreements above, Ellington issued an amended subpoena (the negotiated deposition topics were attached thereto as Exhibit A) and served via email on Seery's counsel. A true and correct copy of the amended subpoena is attached to the Pettit Dec. as **Exhibit A-11**. Seery's counsel accepted services of the subpoena via email and then sent a reply email memorializing the parties' agreements:

> On Thu, Jul 13, 2023 at 9:52 AM Levy, Joshua S. <JLevy@willkie.com> wrote:
>
> Thanks Laura, we agree to accept service. Thanks also to Michael and Julie for the productive call on Jim Seery's deposition. To summarize where we landed:
>
> - **Time Limits.** We agreed to limit the deposition to 4 hours and you'll endeavor to keep it keep it shorter if possible.
>
> - **Attendance.** John Morris can attend the deposition and can instruct the witness not to answer questions on privilege grounds or as he deems appropriate under the Bankruptcy Court's Gatekeeper Orders. You reserved your right to challenge those instruction in a motion after the deposition.
>
> - **Topics.** We agreed to limit the deposition to the topics noticed. We also agreed to exchange objections to the topics by email and you reserved the right to challenge those objections in a motion after the deposition. Here are our objections:
>
>   - **Topic No. 6.** We object to Topic No. 6 to the extent it seeks testimony regarding "entities affiliated with Ellington" on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and violates the Bankruptcy Court's Gatekeeper Orders.
>
>   - **Topic No. 7.** We object to Topic No. 7 on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and violates the Bankruptcy Court's Gatekeeper Orders.
>
>   - **Topic No. 9.** We object to Topic No. 9 to the extent it seeks testimony regarding "Mr. Daugherty's Proof of Claim in the Highland bankruptcy" on the grounds that it is overly broad, not relevant to the claims and defenses at issue, and violates the Bankruptcy Court's Gatekeeper Orders.
>
> - **Logistics.** We agreed to reschedule the deposition for the week of August 1 and to conduct the deposition remotely. We are checking with our client about specific days and times. Once we have the deposition scheduled, please send us links for joining the deposition, exhibit sharing, and realtime feeds.
>
> In addition, our e-discovery vendor has run into technical issues with our supplemental production. We are pressing them to make the production this week. It's a small production, but we want to be upfront about the timing. We'll let you know if this timing changes.
>
> Regards,
>
> Josh

See *id.*, Ex. A-10.

27. The amended subpoena's negotiated deposition topics are excerpted below:

DECLARATION OF MICHAEL K. HURST – PAGE 13

> **SCHEDULE A**
>
> **DEPOSITION TOPICS**
>
> 1. Any documents and/or communications produced by James Seery in response to the Subpoena *Duces Tecum* served on Mr. Seery c/o Joshua S. Levy, Esq., in or around November 2022.
>
> 2. Mr. Seery's personal knowledge of the allegations asserted in the Action.
>
> 3. Mr. Seery's personal knowledge of the relationship between the Defendant in the Action, Patrick Daugherty ("Daugherty"), and the Plaintiff, Scott Byron Ellington ("Ellington").
>
> 4. Mr. Seery's receipt of photos, videos, data, or other information from Daugherty relating to Greg Brandstatter.
>
> 5. Mr. Seery's receipt of photos, videos, data, or other information from Daugherty relating to Sarah Bell (formerly Goldsmith).
>
> 6. Mr. Seery's receipt of communications, emails, photos, videos, data, or other information from Daugherty relating to Ellington or entities affiliated with Ellington.
>
> 7. Any meetings or communications between any representative of the Highland Bankruptcy estate and Mr. Daugherty and/or his representatives related in any way to Ellington.
>
> 8. Any instructions or approval, whether explicit or tacit, provided to Mr. Daugherty with respect to Mr. Daugherty's so-called "investigation" of Mr. Ellington or the stalking allegations in this case.
>
> 9. Any consideration provided to Daugherty with respect to Mr. Daugherty's so-called "investigation" of Mr. Ellington or the stalking in this case, including, but not limited to, the treatment of Mr. Daugherty's Proof of Claim in the Highland bankruptcy.

*See id.*, Ex. A-11.

28. On July 14, 2023, Seery made a supplemental production that included some of Seery's text messages with Daugherty. Despite receiving some of the text messages from Daugherty previously, many of the text messages were directly responsive to the prior requests but being produced for the first time. Further, Seery redacted several messages in their entirety. These developments prompted Ellington to postpone Seery's deposition until we could either obtain the unredacted text messages or secure a ruling in the State Court Action regarding the same.

29. We believed that because Daugherty was a party to the redacted text messages, he possessed the same. Ellington believed seeking the text messages from Daugherty – a party to the State Court Action – was more logical and efficient as opposed to seeking the text messages from non-party Seery in New York. Daugherty refused to voluntarily produce the messages and Ellington sought to compel their production. On August 21, 2023, Ellington filed "Plaintiff's Fourth Motion to Compel" seeking an order in the State Court Action compelling that the text messages be disclosed. The motion was then set for hearing on September 1, 2023.

30. On September 1, 2023, the state court issued an order granting Ellington's Fourth Motion to Compel.

### H. I did not pass along communications and documents to the Dugaboy Investment Trust.

31. After reviewing the Motion, I understand Movants allege that the Dugaboy Investment Trust supported its motion for a forensic examination of Seery's phone with discovery related communications involving myself and others in the State Court Action. I did not disclose those communications to Dugaboy or its counsel, nor was I even aware Dugaboy sought such relief or that those communications had been provided to Dugaboy until I reviewed the Motion.

32. I want to make the following clear—

   a. I am not aware of any plans to pursue any claim in any forum against the Movants;

   b. If I ever became aware of any plans to pursue any claim in any forum against the Movants, I would not be involved in any such proceeding unless the Court granted leave under the Gatekeeper Provision and Orders; and

    c. I have not coordinated in any way with James Dondero as it relates to the stalking litigation or the Highland Bankruptcy. As far as I can recall, I have never communicated with James Dondero about the State Court Action.

FURTHER DECLARANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 24th day of October, 2023.

                                                        Michael K. Hurst