Michelle Hartmann
State Bar No. 24032402
**BAKER & McKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, TX 75201
Tel.: 214-978-3000
Fax: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau (admitted *pro hac vice*)
**BAKER & McKENZIE LLP**
452 Fifth Avenue
New York, NY  10018
Tel: 212-626-4100
Fax: 212 310-1600
Email:  debra.dandeneau@bakermckenzie.com

*Counsel for Scott Ellington*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |

## ELLINGTON'S RESPONSE IN OPPOSITION TO
## THE JOINT MOTION OF HIGHLAND CAPITAL MANAGEMENT, L.P.,
## HIGHLAND CLAIMANT TRUST, AND JAMES P. SEERY, JR. FOR AN
## ORDER REQUIRING ELLINGTON AND HIS COUNSEL TO SHOW
## CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR
## <u>VIOLATING THE GATEKEEPER PROVISION AND GATEKEEPER ORDERS</u>

# <u>TABLE OF CONTENTS</u>

I.            PRELIMINARY STATEMENT ........................................................................... 1

II.           RELEVANT BACKGROUND ........................................................................... 2

      A.     The Gatekeeper Orders are restricted to the commencement or pursuit of an actual claim or cause of action against Seery that relates to the Bankruptcy Case or his role as an Independent Director or officer of the Debtor. ...................................... 2

      B.     This Court previously found the State Court Action unrelated to the Bankruptcy Case and remanded it back to State Court. ........................................................... 4

      C.     Through the normal course of discovery in the State Court Action, Daugherty has repeatedly referred to the Bankruptcy Case and his communications with Seery, claiming they are relevant to his motives in stalking Ellington and his defenses asserted in the State Court Action. .......................................................................... 6

III.          ARGUMENT AND AUTHORITIES ................................................................. 12

      A.     Movants' novel interpretation of the Gatekeeper Orders is inconsistent with the *Barton* doctrine. ........................................................................................ 13

      B.     Movants' expansive reading of the Gatekeeper Orders ignores the plain language of the orders and prior precedent of this Court interpreting those orders. ............ 14

      C.     Movants have not met the stringent burden to prove, by clear and convincing evidence, that Ellington violated the Court's Gatekeeping Orders. ...................... 18

IV.         CONCLUSION .................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baddock v. Villard (In re Baum)*,
  606 F.2d 592 (5th Cir. 1979) ...................................................................................19

*Bennett v. Bombela*,
  No. 83 C 480, 1996 WL 745384 (N.D. Ill. Dec. 30, 1996) ....................................................17

*Bryant v. Dayton Casket Co.*,
  433 N.E.2d 142 (Ohio 1982)...................................................................................17

*Carroll v. Abide*,
  788 F.3d 502 (5th Cir. 2015) ...................................................................................13

*Charitable DAF Fund LP v. Highland Capital Mgmt. LP*,
  No. 3:21-cv-01974-X, 2022 WL 4538466 (N.D. Tex. Sept. 28, 2022)............................16, 17

*In re Correra*,
  589 B.R. 76 (Bankr. N.D. Tex. 2018) (Jernigan, C.J.) ...........................................................19

*Dondero v. Alvarez & Marsal CRF Management LLC (In re Highland Capital
  Management, L.P.)*,
  No. 19-34054-sgj11, 2022 WL 38310 (Bankr. N.D. Tex. Jan. 4, 2022) ................1, 13, 15, 19

*Dow Jones & Co. v. Highland Capital Mgmt., L.P.*,
  564 S.W.3d 852 (Tex. App.—Dallas 2018)...................................................................15

*Ellington v. Daugherty (In re Highland Cap. Mgmt., L.P.)*,
  Ch. 11 Case No. 19-34054-sgj11, Adv. Proc. No. 22-03003-sgj (Bankr. N.D.
  Tex.)...................................................................................................................5

*In re Highland Capital Mgmt., L.P.*,
  No. 19-34054-sgj-11, 2023 WL 5523949 (Bankr. N.D. Tex. Aug. 25, 2023) ........................15

*Martin v. Trinity Indus., Inc.*,
  959 F.2d 45 (5th Cir. 1992) ...................................................................................19

*Mayfield-George v. Tex. Rehab. Comm'n*,
  197 F.R.D. 280 (N.D. Tex. 2000)...............................................................................15

*NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital
  Mgmt., L.P.)*,
  48 F.4th 419 (5th Cir. 2022) ...................................................................................4

*PFS Invs., Inc. v. Imhoff*,
  No. 11-10142, 2012 WL 254125 (E.D. Mich. Jan. 27, 2012) .................................................14

*Shao v. Brady (In re Media Grp., Inc.)*,
  No. NC-05-1432-SAlMa, 2006 WL 6810963 (B.A.P. 9th Cir. 2006)..............................13, 14

*Teton Mill Work Sales v. Schlossberg*,
  No. 07-CV-014-J, 2007 WL 9657995 (D. Wyo. June 22, 2007)............................................14

*Tetra Tech, Inc. v. NSAA Investments Group, LLC*,
  No. 02-15-00297-CV, 2016 WL 3364876 (Tex. App.—Fort Worth June 16,
  2016) ......................................................................................................................................15

**Statutes**

11 U.S.C. § 101(5) ...........................................................................................................1, 15, 18

**Other Authorities**

Tex. R. Civ. P. 202............................................................................................................. *passim*

Scott Byron Ellington ("**Ellington**") files this Response in Opposition (the "**Opposition**")

to the *Joint Motion for an Order Requiring Ellington and His Counsel to Show Cause Why They

Should Not Be Held in Civil Contempt for Violating the Gatekeeper Provision and Gatekeeper

Orders* (the "**Motion**") [DE # 3910][1] filed by Highland Capital Management, L.P. ("**HCMLP**"),

the Highland Claimant Trust, and James P. Seery, Jr. ("**Seery**" and together with HCMLP and the

Highland Claimant Trust, the "**Movants**"), and respectfully states as follows:

## I.    PRELIMINARY STATEMENT[2]

1.     Movants not only ask this Court to adopt an unprecedented interpretation of the

Gatekeeper Orders, but, remarkably, they also seek to sanction Ellington and his Counsel[3] with no

supporting evidence whatsoever. In so doing, they stretch the Gatekeeper Orders in a manner that

conflicts with Fifth Circuit precedent and this Court's holding in *Dondero v. Alvarez & Marsal

CRF Management LLC (In re Highland Capital Management, L.P.)*, No. 19-34054-sgj11, 2022

WL 38310 (Bankr. N.D. Tex. Jan. 4, 2022).

2.     Shorn of Movants' rhetoric, even they must admit that no "claim or cause of action"

has been brought by Ellington. Instead and at most, Movants complain that "Ellington and his

counsel . . . are . . . using the Stalking Action *to seek discovery* into the Debtor's negotiations

regarding the Court-approved Daugherty Settlement . . . ." Mot. at 15 (emphasis added). The

Motion begins and ends with that admission. Seeking discovery is not the same as bringing a

"claim or cause of action" such that the Gatekeeper Orders would be implicated, and nothing in

---

[1] Unless otherwise stated herein, docket number identifications refer to Case No. 19-34054-sgj11 (the "***Bankruptcy
Case***" or the "***chapter 11 case***").

[2] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meaning ascribed to
them in this Opposition.

[3] Ellington retained Lynn Pinker Hurst & Schwegmann LLP and The Pettit Law Firm to represent him in the State
Court Action. Movants' Motion is directed to Ellington's Counsel in the State Court Action and not the undersigned
counsel. Undersigned counsel has not represented Ellington in connection with any proceedings in the State Court
Action, but has represented Ellington in connection with certain matters in in the Bankruptcy Case.

the Gatekeeper Orders or the *Barton* doctrine requires Ellington to obtain court permission to seek discovery in a state court case in which Protected Parties are not named.

3.      The Movants know as much, which presumably is why they responded to third-party discovery served on Seery in the State Court Action *almost a year ago* and thereafter produced "tens of thousands of pages of documents" on January 3, 2023 and July 14, 2023, with no resort to this Court. To be sure, they only filed the Motion after the State Court determined (on September 1, 2023) that *Daugherty* was required to produce all text messages with Seery regarding Ellington and the stalking issues, including certain un-redacted versions of the text messages already produced by Seery.

4.      The Motion is a transparent attempt to have this Court intervene in and overrule the State Court's recent discovery order. Telling on this point, there is *no* pending discovery request on Movants, as Ellington and his counsel have not sought to compel any further document production from Seery in the State Court Action, nor have they sought to reschedule Seery's deposition. In any event, this Court, following Fifth Circuit precedent, has held that discovery, even in the context of a Rule 202 proceeding, does not constitute a "claim or cause of action." As such, the Motion should be denied in all respects.

## II.      RELEVANT BACKGROUND

**A.      The Gatekeeper Orders are restricted to the commencement or pursuit of an actual claim or cause of action against Seery that relates to the Bankruptcy Case or his role as an Independent Director or officer of the Debtor.**

5.      On January 9, 2020, the Court entered an order providing, in relevant part, as follows:

> No entity may ***commence or pursue a claim or cause of action*** of any kind against any Independent Director . . . ***relating in any way to the Independent Director's role as an independent director of Strand*** without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence

2

> against Independent Director…and (ii) specifically authorizing such entity
> to bring such claim.

DE # 339 ¶ 10 (emphasis added) (the "***First Gatekeeper Order***").

6.      On July 16, 2020, the Court entered a similar order providing, in relevant part, as

follows:

> No entity may ***commence or pursue a claim or cause of action*** of any kind
> ***against Mr. Seery relating in any way to his role as the chief executive***
> ***officer and chief restructuring officer of the Debtor*** without the
> Bankruptcy Court (i) first determining after notice that such claim or cause
> of action represents a colorable claim of willful misconduct or gross
> negligence against Mr. Seery, and (ii) specifically authorizing such entity to
> bring such claim.

DE # 854 ¶ 5 (emphasis added) (the "***Second Gatekeeper Order***").

7.      On February 22, 2021, this Court entered an order (the "***Confirmation Order***")

confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as

Modified) (the "***Plan***") [DE # 1943]. The Plan contains an injunction provision (the "***Gatekeeper***

***Provision***" and together with the First and Second Gatekeeper Orders, the "***Gatekeeper Orders***"),

which provides, in relevant part, as follows:

> **Upon entry of the Confirmation Order, all Enjoined Parties are and**
> **shall be permanently enjoined, on and after the Effective Date, from**
> **taking any actions to interfere with the implementation or**
> **consummation of the Plan.**
> …
> **Subject in all respects to ARTICLE XII.D, no Enjoined Party may**
> **commence or pursue a claim or cause of action of any kind against any**
> **Protected Party that arose or arises from or is related to the Chapter**
> **11 Case, the negotiation of the Plan, the administration of the Plan or**
> **property to be distributed under the Plan, the wind down of the**
> **business of the Debtor or Reorganized Debtor, the administration of the**
> **Claimant Trust or the Litigation Sub-Trust, or the transactions in**
> **furtherance of the foregoing without the Bankruptcy Court (i) first**
> **determining, after notice and a hearing, that such claim or cause of**
> **action represents a colorable claim of any kind, including, but not**
> **limited to, negligence, bad faith, criminal misconduct, willful**
> **misconduct, fraud, or gross negligence against a Protected Party and**

**(ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party;**

Plan, art. IX.F at 50-51 (emphasis in original).

8.      The Gatekeeper Provision was adopted by this Court to aid in the "the effective and efficient administration, implementation, and consummation of the Plan" and to prevent baseless litigation against entities "charged with monetizing the Debtor's assets." Confirmation Order ¶ 76. This Court also found that the Gatekeeper Provision was "within the spirit of the Supreme Court's 'Barton Doctrine.'" *Id.* ¶ 80.

9.      After confirmation, the Plan's injunction and Gatekeeper Provision were challenged as overbroad and vague. However, on September 7, 2022, the Fifth Circuit upheld the Gatekeeper Provision in accordance with the *Barton* doctrine, which the Fifth Circuit described as "pre-approval of a claim" — "requir[ing] a party to 'obtain leave of the bankruptcy court before initiating an action against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity.'" *NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 439 (5th Cir. 2022) (citations omitted).

10.     Under the Plan, a Protected Party includes "the Debtor and its successors and assigns" and "the Independent Directors." *Id.*, art. I.B.104 (defining "***Protected Party***"). Daugherty, as a creditor of the Debtor, is not a Protected Party.

**B.      This Court previously found the State Court Action unrelated to the Bankruptcy Case and remanded it back to State Court.**

11.     On January 11, 2022, Ellington filed a petition in the 101st Judicial District Court in Dallas County, Texas (the "***State Court***") solely against Daugherty, seeking damages and a permanent injunction after Ellington and other individuals closely associated with Ellington were repeatedly stalked and harassed by Daugherty (the "***State Court Action***"). Notice of Removal,

Ex. 1 (*Ellington v. Daugherty (In re Highland Cap. Mgmt., L.P.)*, Ch. 11 Case No. 19-34054-sgj11, Adv. Proc. No. 22-03003-sgj (Bankr. N.D. Tex.)) ("***Adv. Proc.***") [Adv. Proc. DE # 1-1].

12.     On January 18, 2022, Daugherty removed the State Court Action to this Court, asserting that the State Court Action somehow "relates to" the Bankruptcy Case in several respects, including because (1) Daugherty's settlement of his proof of claim with the Debtor (the "***Daugherty Settlement***") "disfavors Ellington," and (2) the State Court Action "offends this Court's gatekeeper orders." Notice of Removal at 3. Ellington sought to remand the case back to the State Court because Ellington's State Court claims focus on Daugherty's personal conduct in stalking Ellington and other individuals closely associated with Ellington, and this Court had no basis to exercise federal jurisdiction over the State Court Action. Ellington's Emergency Mot. to Abstain and to Remand (the "***Remand Motion***") [Adv. Proc. DE # 3].

13.     As Ellington recognized at the hearing on the Remand Motion, this Court had "fully resolved" the Daugherty Settlement, and it did so without resolution of any issue raised in the State Court Action. Remand Hr'g Tr. 14:5–16 (Mar. 29, 2022) (the "***Remand Hr'g Tr.***") [Adv. Proc. DE # 30]. Further, Ellington was not contesting the "interpretation, implementation or execution" of the Daugherty Settlement or the order approving that settlement in the State Court Action. In that regard, Ellington's objection to the Daugherty Settlement was overruled, and he did not appeal. *Id*.

14.     At the hearing on the Remand Motion, this Court found that "the only possible hook" for bankruptcy court or federal court jurisdiction over the State Court Action "was if [the State Court Action] somehow implicated the gatekeeping order . . . or if it involved interpretation, implementation, or execution of the confirmed plan or confirmation order, or if the estate was

somehow going to be impacted." Remand Hr'g Tr. 33:19–34:1. However, this Court "didn't find, based on the evidence or argument, any of those things implicated." *Id.* at 34:1–2.

15. On April 11, 2022, this Court granted the Remand Motion and remanded the State Court Action back to the State Court, abstaining from hearing and trying the proceeding. Order Granting Ellington's Remand Motion [Adv. Proc. DE # 33].

16. Since the proceeding was remanded, Ellington has not amended his claims against Daugherty, and Daugherty remains the sole defendant in that case. As detailed below, however, through the normal course of discovery, Daugherty testified and produced certain documents that revealed that Seery and others were aware of the stalking actions and possess documentation directly related to the claims asserted in the State Court Action. It is the further pursuit of this relevant discovery that Movants seek to stop by resort to this Court, rather than the State Court.

**C. Through the normal course of discovery in the State Court Action, Daugherty has repeatedly referred to the Bankruptcy Case and his communications with Seery, claiming they are relevant to his motives in stalking Ellington and his defenses asserted in the State Court Action.**

17. Discovery in the State Court Action has been ongoing for well over a year. Ellington first propounded written discovery solely on Daugherty on May 15, 2022, and noticed Daugherty's deposition for July 14, 2022. The written discovery was narrowly tailored to communications regarding the stalking. At that time, neither Seery nor any other Protected Party was even identified in the document requests. *See* Ellington's Fourth Mot. to Compel, Ex. A [DE # 3912-1 at 11–15]. However, on or about July 11, 2022, Daugherty produced text messages that appeared to contain conversations with Seery related to the stalking. *See* Declaration of Michelle Hartmann ("*Hartmann Dec.*"), Ex. 1, Daugherty Doc. Produc. DEF0000236–247. Then, during Daugherty's deposition on July 14, 2022, Daugherty confirmed that he had communications with Seery related to his "investigation" of Ellington and that he had sent the information he gathered from his

stalking activities to individuals connected with the Bankruptcy Case, including Seery. *See*

Ellington's Fourth Mot. to Compel, Ex. A [DE # 3912-1 at 4–5]; *see also* Hartmann Dec., Ex. 2,

Daugherty Dep. 59:21–61:10, 81:14–84:8. Daugherty apparently did so as a creditor of HCMLP.

> Q. You mentioned earlier that one of the things that you were doing this so-called investigation for was as a creditor of the Highland bankruptcy; is that correct?

> A. A creditor in the Highland bankruptcy.

*Id*. at 143:25–144:4.

18.    On September 1, 2022, a temporary injunction hearing was held in the State Court

Action. At the hearing, Daugherty's counsel again referenced the Bankruptcy Case:

> **Mr. Daugherty was a creditor of Highland at the time. So Mr. Daugherty at that point** had determined that the information that he was trying to get in discovery wasn't coming to him, and **he believed he needed to conduct further investigation on his own of Mr. Ellington, including what Mr. Ellington's assets were that might be available to satisfy Mr. Daugherty's underlying judgment. Well, as part of Mr. Daugherty's investigation** -- let me back up.

> First, it's undisputed, as I said, Mr. Daugherty has not been to any Ellington location for any investigatory purposes since December of 2021. That is important to the imminent harm issue. **But why did the investigation matter? Well, based on Mr. Daugherty's surveillance of Mr. Ellington's office and his house and being able to get license plates of vehicles that were parked there, he eventually discovered a web of various entities that Mr. Ellington and Mr. Dondero were using to siphon assets from the reach of creditors, both Mr. Daugherty and then the Court-appointed creditor's committee in the Highland bankruptcy.**

Hartmann Dec., Ex. 3, Inj. Hr'g Tr. at 22:17–23:17 (emphasis added); *see also id.* at 22:5–

8, 23:18–24:11.

19.    After objection from Ellington's counsel as to the relevance of this argument (as

Ellington was unaware that the Bankruptcy Case had anything to do with Ellington's stalking

claims at this time), Daugherty's counsel argued that the parties' actions in the Bankruptcy Case

were part of Daugherty's defense to the stalking claims:

> [T]he reason this is relevant **goes to the purpose and the intent for why
> Mr. Daugherty engaged in the investigation activities he engaged in**; not
> because he was attempting to intimidate, harass or threaten Mr. Ellington.

*Id.* at 26:1–5 (emphasis added). The State Court granted Ellington's application for a temporary

injunction.

20.   After receiving Daugherty's documents and testimony, which showed that

Daugherty was in communication with Seery and others (including Andy Clubok on a regular

basis) regarding the stalking, on September 8, 2022, Ellington served requests for production on

Daugherty specifically seeking all communications with Seery regarding Ellington. *See*

Ellington's Fourth Mot. to Compel, Ex. B [DE # 3912-1 at 18, 20] (requesting "[a]ll documents

and communications referencing any Ellington Party, Ellington Location, or Ellington Recording

sent to and received from with [*sic*] Jim Seery"). On October 10, 2022, Daugherty served

responses, noting he was producing documents subject to numerous objections. *See id.* at 18–31.

21.   In early November 2022, following Daugherty's document production, deposition,

and the temporary injunction hearing, Ellington served Seery with a third-party subpoena, seeking

documents specific to the claims asserted in the State Court Action, as follows:

> (1)   Any and all communications and documents from or between You
> and Daugherty relating to Scott Byron Ellington.

> (2)   Any and all communications and documents from or between You
> and Daugherty relating to any Ellington Party, Ellington Location,
> or Ellington Recording.

> (3)   Any and all communications and documents relating to any
> investigation conducted by Daugherty relating to Scott Byron
> Ellington.

> (4)   Any and all communications and documents relating to any
> compilation of data by Daugherty regarding Scott Byron Ellington.

(5)     Any assets or list(s) of assets of Scott Byron Ellington provided to
        you by Daugherty.

(6)     Any and all communications and documents relating to any
        Ellington Location.

(7)     Any photos or videos you have received from Daugherty relating to
        any Ellington Location.

(8)     Any photos or videos you have received from Daugherty relating to
        any Ellington Party.

(9)     Any photos or videos you have received from Daugherty relating to
        Greg Brandstatter at any Ellington Location.

(10)    Any photos or videos you have received from Daugherty relating to
        Sarah Bell (formerly Goldsmith) at any Ellington Location.

(11)    Any and all communications in which any party acknowledges
        receipt of, asks questions regarding, expressed "appreciation" for,
        requests additional information related to, or otherwise discusses
        any information Daugherty provided regarding Scott Byron
        Ellington, any Ellington Party, Ellington Location, or any Ellington
        Recording.

Doc. Subpoena [DE # 3912-5 at 5, 11–12].

22.     Seery did *not* seek to quash this subpoena.[4] Instead, as Movants acknowledge, Seery

subsequently "produced tens of thousands of pages of documents in response to the subpoena,

including emails between Seery and Daugherty." Mot. at 11–12.

23.     After receiving Seery's initial document production, Ellington sought to take

Seery's deposition. Seery's counsel accepted service of the subpoena and scheduled the deposition

for July 31, 2023. July 2023 E-Mail Thread No. 1 [DE # 3912-10 at 16]. *At no point did Seery seek*

*to quash the deposition subpoena*. Rather, the parties worked cooperatively to schedule the

deposition, with Ellington's counsel in the State Court Action even agreeing that "John Morris can

attend the deposition and can instruct the witness not to answer questions on privilege grounds or

---

[4] This is in contrast to actions taken by the Honorable Russell Nelms, who has sought to quash the deposition
subpoenas served on him in the State Court Action through the correct forum, the State Court.

as he deems appropriate under the Bankruptcy Court's Gatekeeper Orders." *See id*. Ellington's

counsel reserved the right to challenge such objections in a motion after the deposition. *See id.*

24.     On July 14, 2023, shortly before his deposition, Seery produced more text messages

with Daugherty that were directly responsive to prior discovery requests. However, some of the

messages were redacted in their entirety. *See* Ellington's Fourth Mot. to Compel, Ex. C

[DE # 3912-1 at 34–71]. Given that HCMLP and Seery had no privilege with Daugherty, there did

not appear to be a valid basis for making these redactions. *See* Hartmann Dec., Ex. 2, Daugherty

Dep. 65:10–66:15 (Daugherty confirming there was no attorney-client privilege with Seery and

others to whom Daugherty sent information that he had compiled from his so-called investigation

of Ellington and his family). On July 19, 2023, Ellington's counsel informed Seery's counsel,

> We are in receipt of the text messages you produced. Given the context and
> scope of the communications between Mr. Seery and Mr. Daugherty that
> you did produce, we do not see how the redacted texts could truly be
> nonresponsive.
>
> In any event, if you stand by your assertion that the redacted texts are
> nonresponsive, we intend to serve a new subpoena that would include any
> and all of the redacted texts.

Ellington's Fourth Mot. to Compel, Ex. D [DE # 3912-1 at 75].

25.     On July 24, 2023, Ellington's counsel explained the relevance of the messages to

the claims asserted against Daugherty in the State Court Action, noting "[t]he production provided

by Mr Daugherty, Mr Seery, and others in this matter suggests the factual conclusion that the

Highland Estate provided Mr. Daugherty with additional settlement consideration in exchange for

information on Mr Ellington." *Id*. at 72. To the extent that the redacted messages related to the

negotiations between Daugherty and Seery, those communications regarding the Daugherty

Settlement would be relevant—*not so Ellington could challenge the settlement in the Bankruptcy

Case or bring claims against Seery as the Movants suggest*—but so Ellington could obtain

materials related to Daugherty's apparent motive in stalking Ellington and also assign a value to his damages in the State Court Action.[5]

26.    On July 27, 2023, Ellington's counsel informed Seery's counsel of their intent to file a motion to compel the text messages that had been redacted and to postpone Seery's deposition pending resolution of the motion to compel. July 2023 E-Mail Thread No. 1 [DE # 3912-10 at 2]. And, on August 21, 2023, Ellington filed a motion to compel *against Daugherty*, to compel the production of an un-redacted version of the text messages *from Daugherty* to Seery. *See* Ellington's Fourth Mot. to Compel [DE # 3912-1 at 2–7]. These documents clearly should have been—but were not—produced *by Daugherty*. After briefing and a hearing on the motion, on September 1, 2023, the State Court determined that the requests fell within the scope of permissible discovery and ordered that Daugherty produce all text messages with Seery regarding Ellington and the stalking issues, including the un-redacted versions of the text messages already produced by Seery. *See* Order Granting Ellington's Fourth Mot. to Compel [DE # 3912-14].

27.    Less than two weeks after the State Court's order regarding production of the un-redacted text messages from Daugherty, Movants filed the instant Motion. Ellington and his

---

[5] It is without contest that, following Daugherty's elaborate stalking actions and sharing of information with Seery and others associated with HCMLP, the settlement amount to be paid to Daugherty in the Bankruptcy Case increased by $1 million. In that regard, at the Confirmation Hearing on February 2, 2021, Debtor's counsel confirmed that "[u]nder the Patrick Daugherty settlement, Mr. Daugherty will receive a $750,000 cash payment on the effective date. He will receive an $8.25 million general unsecured claim, and he will receive a $2.75 million Class 9 subordinated claim." Confirmation Hr'g Tr. (Feb. 2, 2021) at 16:3–14, 29:4–18. However, on December 8, 2021, the Reorganized Debtor filed its Motion for Entry of an Order Approving Settlement with Patrick Hagaman Daugherty. DE # 3088. The Settlement Agreement provided that "Daugherty shall receive (a) an allowed general unsecured Class 8 claim in the amount of $8,250,000; (b) an allowed subordinated general unsecured Class 9 claim in the amount of $3,750,000; and (c) a one-time lump sum cash payment in the amount of $750,000." DE # 3089-1 at 6. Ellington is entitled to explore the increase in settlement amount, as Daugherty has argued that was his motive for stalking Ellington and his family.

counsel have not sought to compel any further document production from Seery in the State Court

Action, nor have they sought to reschedule Seery's deposition at this time.

28.    On August 22, 2023, Ellington's counsel served a deposition subpoena on Judge

Nelms. Ellington's counsel explained the relevance of Judge Nelms's testimony to the State Court

Action to Judge Nelms's counsel:

> At the Plan Confirmation hearing on February 2, 2021, the Debtor and
> Daugherty announced a settlement of Daugherty's proof of claim in the
> Highland Bankruptcy. Nine months later in November 2021, the Debtor and
> Daugherty executed a settlement agreement that, in addition to the material
> terms announced in February 2021, gave Daugherty an additional $lm in
> Class 9, part of Highland's investment track record to claim as his own,
> ownership of two Highland affiliates he could use to pursue litigation
> claims, and a prospective observer role on the Claimant Oversight Board.
> **The Debtor agreed to all of this additional settlement consideration
> subsequent to receiving Mr. Daugherty's cooperation in investigating
> Ellington.** Given the Board's role in approving settlement of material
> proofs of claim in the bankruptcy, Ellington believes that Judge Nelms
> should have been made aware of Daugherty's actions—if not by Daugherty,
> then certainly by Jim Seery and Andy Clubok.

Hartmann Dec., Ex. 4, Nelms's Non-Party Motion for Protection at 7 (emphasis added). On

August 25, 2023, Judge Nelms filed a Motion to Quash the deposition subpoena. On September 15,

2023, Judge Nelms filed a Motion for Protection in the State Court Action. These motions are set

for hearing in November in the State Court.

## III.    ARGUMENT AND AUTHORITIES

29.    Movants acknowledge that Ellington has not actually brought or pursued claims or

causes of action against Seery. Yet, they nevertheless invite the Court to stretch the Gatekeeper

Orders (and the *Barton* doctrine on which they are based) to require leave of the Court when

discovery is sought against Protected Parties that *may* "develop potential claims." Mot. at 16.

Movants' overly broad interpretation of the Gatekeeper Orders is not supported by the purpose of

the *Barton* doctrine, the clear language of those orders, or this Court's precedent. As such, the Motion should be denied.

**A.    Movants' novel interpretation of the Gatekeeper Orders is inconsistent with the *Barton* doctrine.**

30.    As this Circuit has recognized, the *Barton* doctrine does not give unfettered power to bankruptcy courts to police the actions of an enjoined party in other courts—particularly where, as here, an enjoined party sought non-party discovery related to claims against a Non-Protected Party. *See Carroll v. Abide*, 788 F.3d 502, 506 (5th Cir. 2015) (declining to extend the *Barton* doctrine to require permission from the bankruptcy court where the trustee's conduct at issue was not related to the bankruptcy case); *accord In re Highland Capital Management, L.P.*, 2022 WL 38310, at *4 (holding that a Rule 202 proceeding is neither choate enough to be a "claim" or "cause of action" nor choate enough for bankruptcy court subject matter jurisdiction). Indeed, noticeably absent from Movants' Motion is the citation to *any* authority, much less authority from this Circuit, extending the *Barton* doctrine to require Ellington to seek leave of this Court before serving third-party discovery against Seery in the State Court Action.

31.    *In re Media Group, Inc.* is instructive on this point and the question before the Court. *See Shao v. Brady (In re Media Grp., Inc.)*, No. NC-05-1432-SAlMa, 2006 WL 6810963 (B.A.P. 9th Cir. 2006). In that decision, the Ninth Circuit Bankruptcy Appellate Panel reversed a bankruptcy court's order sanctioning a party for alleged violations of the *Barton* doctrine related to serving a subpoena in a state court action seeking document production and the deposition of the trustee and its counsel. *Id.* at *9. The trustee and its counsel were not named parties in the state court action. In reversing the bankruptcy court's order on sanctions, the panel distinguished between "commencement of a lawsuit" and "the propounding of discovery" as "two distinct legal processes," only one of which is covered by the *Barton* doctrine:

> [T]he commencement of a lawsuit and the propounding of discovery are two distinct legal processes . . . . [N]either *Barton* nor *Crown Vantage* supports the proposition that leave from the appointing court must be obtained before pursuing *discovery* in a case in which the court appointee is not a named party. We therefore conclude that the bankruptcy court erred in imposing sanctions against Shao on the ground that she violated the *Barton* Doctrine.

*Id.* at *7 (emphasis in original). In so doing, the panel reaffirmed that the *Barton* doctrine is limited to the commencement of a legal action against a court appointee, explicitly declining to expand the doctrine to circumstances in which discovery was sought. *Id*. at *6-7.

32.     The Court should follow *In re Media Group, Inc.* and other well-reasoned decisions and reject Movants' invitation to extend the *Barton* doctrine in the circumstances of this case. *See also PFS Invs., Inc. v. Imhoff*, No. 11-10142, 2012 WL 254125, at *2-3 (E.D. Mich. Jan. 27, 2012) (limiting the *Barton* doctrine to cases where a party sought specific property or money damages from the trustee); *Teton Mill Work Sales v. Schlossberg*, No. 07-CV-014-J, 2007 WL 9657995, at *2 (D. Wyo. June 22, 2007) (denying motion to stay discovery and rejecting defendant's argument that participating in discovery outside the jurisdiction of the appointing court would impose expense and inconvenience, which the *Barton* doctrine was designed to prevent).

**B.     Movants' expansive reading of the Gatekeeper Orders ignores the plain language of the orders and prior precedent of this Court interpreting those orders.**

33.     The Gatekeeper Provision specifically provides that "no Enjoined Party may **commence or pursue a claim or cause of action** of any kind against any Protected Party…" without the Bankruptcy Court first determining whether "**such claim or cause of action represents a colorable claim** of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party." Plan, art. IX.F (emphasis added). Of course, the listing of specific claims or causes of action that give rise to a right to relief does not include "seeking discovery" for the simple reason that discovery itself does not constitute a "claim or cause of action" and does not raise a claim or right

to relief.[6] *Mayfield-George v. Tex. Rehab. Comm'n*, 197 F.R.D. 280, 283 (N.D. Tex. 2000) ("There

is no Fifth Circuit authority for construing a petition for discovery before trial under the Texas

Rules of Civil Procedure as a 'civil action'"); *see Dow Jones & Co. v. Highland Capital Mgmt.,*

*L.P.*, 564 S.W.3d 852, 858 (Tex. App.—Dallas 2018) (finding that third-party subpoenas are not

causes of action and reiterating that "subpoenas and depositions are not legal remedies"); *Tetra*

*Tech, Inc. v. NSAA Investments Group, LLC*, No. 02-15-00297-CV, 2016 WL 3364876, at *3 (Tex.

App.—Fort Worth June 16, 2016) (noting that "subpoenas and depositions are not legal remedies"

but rather "are simply discovery tools used to support an assertion of the right to a legal remedy").

At most, seeking discovery to "develop potential claims," as Movants claim (without proof) that

Ellington is doing here, is tantamount to a Rule 202 Petition for pre-suit discovery, which has been

found by this Court to be too "inchoate, premature, and attenuated" to be subject to the Gatekeeper

Orders. *See In re Highland Capital Management, L.P.*, 2022 WL 38310, at *9 (holding that "the

Rule 202 Proceeding is too inchoate, premature, and attenuated to provide the court with 'related

to' bankruptcy subject matter jurisdiction"); *In re Highland Capital Mgmt., L.P.*, No. 19-34054-

sgj-11, 2023 WL 5523949, at *21 (Bankr. N.D. Tex. Aug. 25, 2023) (acknowledging that "HMIT

and Dondero had been seeking discovery relating to the very trades that are the subject of the

---

[6] The Plan and the Bankruptcy Code also support this notion as they define the term "claim" to mean a specific right to relief:

> (A) **right to payment**, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

> (B) right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment*, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added); Plan, art I.B.22. Here, Ellington has not sought any right to payment from Seery or HCMLP, nor has he sought any equitable remedy for breach of performance that would give rise to any right to payment from Seery or HCMLP. Rather, Ellington has served third-party document requests and deposition notices in the normal course of discovery requesting communications that relate to stalking and invasion of privacy claims— neither of which relate to a right to payment or breach of performance that gives rise to a right to payment.

Revised Proposed Complaint from the Claims Purchasers in Texas state court 'Rule 202'

proceedings for approximately two years" without being met with contempt motions).

34.     Movants' sole authority that third-party discovery is "pursuing" a claim is the

District Court's decision in *Charitable DAF Fund LP v. Highland Capital Mgmt. LP*. However,

Movants' reliance is misplaced. In that case, Charitable DAF Fund LP ("**DAF**") and CLO Holdco,

Ltd. ("**CLO Holdco**") filed a Complaint in the United States District Court for the Northern District

of Texas against HCMLP alleging that HCMLP fraudulently withheld information when it settled

with HarbourVest. *Charitable DAF Fund LP v. Highland Capital Mgmt. LP*, No. 3:21-cv-01974-

X, 2022 WL 4538466, at *2 (N.D. Tex. Sept. 28, 2022). The Complaint named Seery as a potential

party. *Id.* DAF and CLO Holdco then immediately sought leave from the District Court to add

Seery as a defendant, attaching a copy of the amended complaint to the motion for leave. The

District Court denied the motion on the ground that the defendants had not yet been served.

HCMLP filed a motion for contempt in this Court. In affirming in part and vacating in part, this

Court's order finding DAF and CLO Holdco in contempt for violating the gatekeeping orders, the

District Court noted that, by requesting leave to amend and attaching a copy of the proposed

amended complaint to their filing, DAF and CLO Holdco "tried to—and, in fact, took every action

necessary on their part to—bring a claim against Seery." *Id.* at *3. The actions of DAF and CLO

Holdco seeking leave to bring claims against Seery stands in stark contrast to the third-party

discovery served by Ellington on Seery *over one year ago* in the State Court Action, to which

Seery already has responded.

35.     Rather than support Movants' position, the District Court order demonstrates that

propounding third-party discovery is not "pursuing" a claim. The District Court states that "to

pursue a claim, a party must 'try' or 'seek' to bring that claim." *Id.* at *6. The District Court noted

that even actions used to develop a claim, such as legal research, are excluded from the Gatekeeper

Orders as distinct from direct actions such as seeking leave to file a claim. *Id.* at *6–7. It has been

over a year, and Ellington neither has filed a claim against Seery nor sought leave to do so.

Ellington's actions have not met the District Court's threshold that he "try or seek" to bring a claim

in order to trigger the Gatekeeping Orders.

36.     Even giving credit to Movants' unsupported speculation that Ellington intends to

use the third-party discovery to file a future claim against Seery, there still is no violation of the

Gatekeeper Orders. In a *Minority Report* interpretation of the Gatekeeping Orders, Movants argue

that having an intent to pursue claims or causes of action against Seery *in the future* also violates

the Gatekeeper Orders. However, even the expression of an intent to pursue a claim (of which

there is no evidence here) is not sufficient to constitute the actual pursuit of a claim. *See Bryant v.*

*Dayton Casket Co.*, 433 N.E.2d 142, 145 (Ohio 1982) (rejecting Plaintiff's argument that

expressing an intent to pursue a claim was sufficient to constitute "pursuit" of a proceeding and

finding that Plaintiff needed to "tak[e] some action which would constitute his actual pursuit of

his claim, not just an expression of his intent to do so."); *see also Bennett v. Bombela*, No. 83 C

480, 1996 WL 745384, at *5 (N.D. Ill. Dec. 30, 1996) (noting that "whether the mere filing of the

lawsuits constitutes a 'pursuit of the discrimination claims' is suspect" and "Black's Law

Dictionary [] defines 'pursuit' as, 'To follow, prosecute, or enforce a matter judicially, as a

complaining party.'"). Again, there is not even a pending discovery request on Movants. Although

Ellington's counsel informally offered to amend the State Court petition to make the claims *against*

*Daugherty* more clear, neither Ellington nor his counsel have tried to or sought to add Movants as

parties to the State Court Action. *See* Email from Ellington's Counsel dated July 24, 2023

[DE # 3912-12]. And Movants only filed the Motion with this Court after the State Court's September discovery order against *Daugherty.*

37.    Notably, Daugherty himself (not Ellington) made the communications between Daugherty and Seery concerning the Daugherty Settlement relevant to the stalking and invasion of privacy claims in the State Court Action. In that regard, Daugherty repeatedly cited to the Bankruptcy Case as one of Daugherty's defenses in the State Court Action, arguing that Daugherty's status as a creditor in the Bankruptcy Case and claims that HCMLP had against Ellington justified Daugherty conducting his investigation and providing the tortiously obtained information to Seery, HCMLP and others. *See* Hartmann Dec., Ex. 2, Daugherty Dep. 143:25–144:4; *See* Ex. 3, Inj. Hr'g Tr., 22:17–23:17, 25:18–26:5. That the communications sought regarding the Daugherty Settlement may also arise from or be related to the chapter 11 case is beside the point here, as the "claims" at issue are Ellington's stalking and invasion of privacy claims *against Daugherty*, which this Court already has held it has no jurisdiction to hear.[7] If Movants believe that the discovery sought by Ellington in the State Court Action is beyond the scope of permissible discovery, then their remedy is to move to quash or otherwise seek a protective order from the State Court.

**C.    Movants have not met the stringent burden to prove, by clear and convincing evidence, that Ellington violated the Court's Gatekeeping Orders.**

38.    Movant's request that Ellington be held in civil contempt should be seen for what it is—a transparent attempt to harass Ellington. Movants have not presented *any* evidence, much less clear and convincing evidence, that Ellington violated a clear and unambiguous order of this

---

[7] Ellington has previously acknowledged that the Daugherty Settlement has been fully resolved  without needing to resort to any issues related to the State Court Action. Remand Hr'g Tr. 14:5–16. Nothing has changed in that regard. Ellington is not contesting the "interpretation, implementation or execution" of the Daugherty Settlement or the order approving that settlement in the State Court Action, as was represented previously to this Court. *Id.*.

Court simply by seeking third-party discovery in connection with claims asserted against a non-Protected Party in the State Court Action. *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992) (discussing the "clear and convincing" burden); *see In re Correra*, 589 B.R. 76, 125 (Bankr. N.D. Tex. 2018) (Jernigan, C.J.) (noting that "[a] decision to invoke the court's inherent power to sanction requires a finding that bad faith or willful abuse of the judicial process occurred" and "[t]he finding of bad faith must be supported by clear and convincing proof").

39.     The Court's Gatekeeper Orders are plain. Before pursuing a "claim" or "cause of action" against Seery or HCMLP, Ellington is required to seek a determination from this Court that any such claims are colorable. Plan, art. IX.F. But nowhere in the Gatekeeper Orders is Ellington required to seek a determination from this Court that third-party discovery is colorable. *See, e.g.*, *Baddock v. Villard (In re Baum)*, 606 F.2d 592, 593 (5th Cir. 1979) ("Contempt is committed when a person violates an order of a court requiring in specific and definite language that a person do or refrain from doing an act.") (internal quotation and citations omitted). To the contrary, this Court's previous decisions make clear that discovery, even in the context of a Rule 202 proceeding, does *not* constitute a "claim or cause of action" for which the Gatekeeper Orders would be implicated. *In re Highland Capital Management, L.P.*, 2022 WL 38310, at *6 ("Almost all of the Texas federal courts that have examined the issue have determined that a petition under *Rule 202* is not a 'civil action.'"). Movants know as much, which is why they responded to initial third-party discovery from Ellington and thereafter produced "tens of thousands of pages of documents" without resort to this Court. As such, the Motion has no basis in fact or law, is based upon pure harassment, and should be denied.

## IV.    <u>CONCLUSION</u>

40.    The Motion should be denied in full, and Ellington should be granted such further relief as is just and warranted. There is no evidence that Ellington and his counsel failed to comply with the Gatekeeper Orders.

Dated:  October 24, 2023

By: */s/ Michelle Hartmann*
BAKER & MCKENZIE LLP
Michelle Hartmann
State Bar No. 24032402
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau (admitted *pro hac vice*)
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com

*Counsel for Scott Byron Ellington*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on October 24, 2023, a true and correct copy of this document was served via the Court's CM/ECF system to the parties that have requested or consented to such service.

*/s/ Michelle Hartmann*
Michelle Hartmann