Jason S. Brookner
Texas Bar No. 24033684
Andrew K. York
Texas Bar No. 24051554
Drake M. Rayshell
Texas Bar No. 24118507
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:   (214) 954-4135
Facsimile:    (214) 953-1332
Email:          jbrookner@grayreed.com
                    dyork@grayreed.com
                    drayshell@grayreed.com

**ATTORNEYS FOR PATRICK DAUGHERTY**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>　　　　　　　　　　Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |

**PATRICK DAUGHERTY'S JOINDER IN SUPPORT
OF HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND
CLAIMANT TRUST, AND JAMES P. SEERY, JR.'S JOINT MOTION FOR
AN ORDER REQUIRING SCOTT BYRON ELLINGTON AND HIS COUNSEL
TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT
FOR VIOLATING THE GATEKEEPER PROVISION AND GATEKEEPER ORDERS**

Patrick Daugherty ("Daugherty") files this joinder (this "Joinder") in the *Joint Motion for an Order Requiring Scott Byron Ellington and His Counsel to Show Cause Why They Should Not Be Held in Civil Contempt for Violating the Gatekeeper Provision and Gatekeeper Orders* [Dkt. No. 3910] (the "Motion") filed by Highland Capital Management, L.P., Highland Claimant Trust, and James P. Seery, Jr. (collectively, the "Movants") and the Reply in Further Support

4884-6726-6451

Thereof and in Opposition to Ellington's Counsel's Motion to Strike [Dkt. No. 3969] (together with the Motion, the "Joint Motion for Contempt"), and respectfully states as follows:

## INTRODUCTION

1. Daugherty files this Joinder to provide the Court with critical context regarding the conduct of Scott Byron Ellington ("Ellington") and his counsel (together with Ellington, the "Respondents") in the State Court Action that warrants contempt here.[1] Moreover, Ellington's Counsel's representations before this Court regarding Daugherty's alleged conduct are both false and misleading.[2]

2. The State Court Action has been a ruse from its inception. The evidence allegedly supporting Ellington's claims therein for stalking and invasion of privacy has never existed.[3] Contrary to Ellington's Counsel's bald assertions, Daugherty never took photographs of Ellington's family members (including children) standing outside of their homes.[4] Nor has he set up cameras inside their homes.[5] Indeed, the evidence showed that Daugherty never initiated any

---

[1] "State Court Action" refers to the action captioned *Scott Byron Ellington v. Patrick Daugherty,* Cause No-DC-22-00304, in the 101st District Court of Dallas County.

[2] *See* Dkt. No. 3958 (Ellington's Response in Opposition to Joint Motion for Contempt) ("Ellington's Resp."); Dkt. No. 3957 (Lynn Pinker Hurst & Schwegmann, LLP and The Pettit Law Firm's Motion (collectively, "Ellington's Counsel") to Strike and Response in Opposition to Joint Motion for Contempt ("Mot. to Strike").

[3] Movants and Respondents neglect to mention that the State Court's temporary injunction entered on September 1, 2022, is the subject of a pending interlocutory appeal before the Court of Appeals for the Fifth District at Dallas, Texas. *See* Exhibit A, Declaration of Drake Rayshell ("Rayshell Decl."), ¶ 4, Ex. A-1 (2022.11.18 Appellant Daugherty's Brief). Although briefing finished February 17, 2023, the court of appeals has not issued an opinion. *Id.* On October 23, 2023, Daugherty filed a no evidence motion for summary judgment, which remains pending before the trial court. *Id.*

[4] Remarkably, Ellington's opposition does not contain any of the salacious and unsupported allegations contained in Ellington's Counsel's opposition. The obvious reason for this is that Ellington knows no supporting evidence exists. Daugherty has produced hundreds of photographs and thousands of pages of documents in the State Court action, they contain almost entirely pictures of car license plates and only a few of individuals that transported and received assets from Highland related parties or otherwise were following Daugherty. *See* e.g., Dkt. 3960. None include women in or around their homes, and there is not a single picture of children.

[5] Ellington's Counsel's opposition asserted, for the first time ever, that Ellington's family members are worried "about being secretly photographed in their own homes." Mot. to Strike at 2.

2

communications with Ellington or any of his family members.[6] In fact, Daugherty and Ellington ***never*** exchanged words on any occasion when Daugherty investigated Ellington's assets.[7] Daugherty also never talked to Ellington's sister,[8] and never saw her children, let alone made contact with them.

3. Daugherty was entitled to investigate Ellington's assets and activities, and Ellington had every reason to expect Daugherty would do so. Through years of litigation and persistent discovery with Ellington and related entities, Daugherty discovered that Ellington and his cohorts were directly involved in secretly stripping HERA (Highland Employee Retention Assets) of its assets, using similar techniques as evidenced by the Acis[9] and UBS[10] litigation. When persons are engaged in litigation, they must expect that the other parties will investigate the claims and, to that extent, their privacy rights are circumscribed. *See, e.g.*, *I.C.U. Investigations, Inc. v. Jones*, 780 So. 2d 685, 689 (Ala. 2000); *McLain v. Boise Cascade Corp.*, 533 P.2d 343, 346 (Or. 1975); *Ellenberg v. Pinkerton's, Inc.*, 202 S.W.2d 701, 704 (Ga. Ct. App. 1973); *Forster v. Manchester*, 189 A.2d 147, 150 (Pa. 1963). Moreover, Daugherty owns an economic interest in the Highland Claimant Trust, and Highland in turn has brought claims against Ellington. The

---

[6] Ellington's sister, Marcia Maslow testified she never spoke to Daugherty, and Stephanie Archer (Ellington's then-fiancée) testified that Daugherty never initiated a conversation with her. *See* Ex. A, Rayshell Decl., ¶¶ 5, 6 Ex. A-2 (2023.07.11 M. Maslow's Depo.) at 98:2-23, 102:19-103:2 and Ex. A-3 (2023.07.10 S. Archer's Depo.) at 67:5-72:4.

[7] Ellington's Counsel also embellishes that Daugherty drove past Ellington's home, office, or his family members' homes on 143 separate occasions. Many of the so-called "separate" occasions were actually instances where Daugherty passed by the location multiple times within a short period of time while taking pictures of licenses plates from a public street. And, the license plate information obtained on those trips connected back to Ellington and his web of Cayman Islands-based entities, many of which Ellington previously denied knowledge of, or attempted to conceal.

[8] See *supra* note 6.

[9] *See, e.g.*, Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued after Trial on Contested Involuntary Bankruptcy Proceedings, *In re Acis Capital Management, L.P.*, No. 18-30265-sgj7, Dkt. 118 (April. 15, 2018).

[10] *See UBS Securities LLC v. Dondero.*, Case No. 650744/2023 (N.Y. Sup. Ct. Feb. 8, 2023) (UBS's New York State Court Petition including UBS's claims against named defendants James Dondero and Scott Ellington).

3

4884-6726-6451

reality is that the State Court Action was brought for no reason other than furthering Ellington's (and others aligned with him) interests in the Highland bankruptcy and affiliated adversary proceedings in violation of the Gatekeeping Orders and Gatekeeper Provision.[11]

## JOINDER

4. Daugherty hereby joins in Movant's Joint Motion for Contempt.

## ADDITIONAL FACTS

5. In addition to joining in the Joint Motion for Contempt, Daugherty sets forth additional salient facts below, to bring certain matters to the Court's attention, and to otherwise provide appropriate context.

**A. Respondents misrepresent their awareness of the proceedings before this Court.**

6. Aside from their hyperbole, Respondents have misrepresented critical facts—and in certain cases outrightly lied—to the Court,[12]

7. Central to the Joint Motion for Contempt are certain communications produced by James Seery in response to non-party subpoenas issued by Respondents in the State Court Action that were provided to persons associated with the Dugaboy Investment Trust. Those communications were then used in Dugaboy's Imaging Motion against Seery.[13] Ellington does not dispute that he provided those materials to Dondero. But Ellington's Counsel each claim—in sworn declarations—that neither of them was "*. . . **even aware** Dugaboy sought such relief or that those communications had been provided to Dugaboy until I reviewed the [Joint Motion for*

---

[11] The terms "Gatekeeping Orders" and "Gatekeeper Provision" are defined in Movant's Joint Motion for Contempt, Dkt. No. 3910 at ¶ 11.

[12] For example, Ellington contends he suspected Daugherty's investigation included engaging in "masturbatory fantasies." *See* Ex. A, Rayshell Decl., ¶ 7, Ex. A-4 at 129:3-134:7 (2022.07.08 S. Ellington Depo. Trans.).

[13] The term "Imaging Motion" is defined in Movant's Joint Motion for Contempt, Dkt. No. 3910 at FN 3.

4

*Contempt]*."[14] This statement is false. Daugherty referenced Dugaboy's Imaging Motion in the State Court Action on at least three occasions before the Joint Motion for Contempt was filed,[15] and attached the Imaging Motion in at least two of those instances.[16]

**B. Ellington has repeatedly used the State Court Action to further his direct and indirect interests in proceedings before this Court.**

8.  The bases for Movant's Joint Motion for Contempt were foreshadowed when Daugherty removed the State Court Action to this Court, stating in the Notice of Removal that Ellington's "State Court Action is an attempt to:

>   (1) improperly evade this Court's clear gatekeeping orders;
>   (2) derail this Court's pending consideration of a proposed settlement; and
>   (3) pursue the Reorganized Debtor through otherwise impermissible discovery in the State Court Action."[17]

9.  All three of these predictions have come true. First, Ellington sought to derail Daugherty's proposed settlement with Highland by objecting on the basis of his spurious Stalking allegations.[18] Following that failed effort, and after this Court remanded the action to State Court, Ellington has continually attempted to use the State Court Action to end-run this Court's clear

---

[14] Dkt. No. 3957-2 at p. 16, ¶ 31 (Decl. of Julie Pettit) (emphasis added); Dkt. No. 3957-2 at p. 15, ¶ 31 (Decl. of Michael K. Hurst) (emphasis added); *see also* Dkt. No. 3957 (Mot. to Strike) ("The State Court Law Firms were also unaware of Dugaboy's motion to compel imaging of Seery's iPhone until **Movants' filed the [Joint Motion for Contempt]** and there is no allegation nor evidence that the State Court Law Firms provided any State Court Action discovery to Dugaboy or Dondero.") (emphasis in original).

[15] *See* Ex. A, Rayshell Decl. ¶¶ 8, 9, 10, Exs. A-5, A-6, and A-7.

[16] *Id.*

[17] Notice of Removal, *In re Highland Capital Mgmt., L.P.,* No. 22-03003-sgj, Dkt. 1 at ¶ 1 (Jan. 18, 2022); *see also* Dkt. No. 3185 (Daugherty's removal and initiation of adversary proceeding).

[18] *See* Dkt. No. 3242 at ¶ 8 ("In light of what has come to light about Daugherty's alleged activities, HCMLP should have an opportunity to reconsider whether it wishes to include these added provisions, especially as it appears that their sole purpose is to allow an alleged stalker to have further access to his victims and to create more opportunities for Daugherty to pursue his victims through litigation.").

5

Gatekeeping Orders,[19] to obtain discovery for use in this Court.[20] Daugherty has been forced to fend off multiple motions to compel and multiple motions for a forensic inspection of his electronic devices, all seeking to expand the scope of discovery in the State Court Action beyond what is relevant to Ellington's State law claims and into issues subject to this Court's Gatekeeping Orders and Gatekeeper Provision.

10. Indeed, on September 8, 2022, Ellington opened the flood gates with his Third Requests for Production ("Ellington's Third RFPs") and began to pursue the Reorganized Debtor through otherwise impermissible discovery in the State Court Action.[21] Ellington's Third RFPs expressly sought communications exchanged between Daugherty and individuals and law firms directly connected to the Highland Bankruptcy and associated adversary proceedings before this Court.[22] Among other items—for the first time—Ellington sought "[a]ll communications and documents referencing any Ellington Party, Ellington Location, or Ellington Recording sent to and received from with [sic] Jim Seery."[23] That is, Ellington sought every document and communication exchanged with Seery merely referencing "Ellington," without limitation.[24]

11. Ellington's Third RFPs also sought communications and documents exchanged with Sidley Austin, LLP, Teneo Global Advisory, Quinn Emanual Urquhart & Sullivan, LLP, Latham & Watkins, LLP, Pachulski Stang Ziehl & Jones, LLP, and others that merely referenced

---

[19] See Dkt. No. 3969 at ¶ 15.

[20] See e.g., Ex. A, Rayshell Decl. ¶ 11, Ex. A-8 (2022.07.14 P. Daugherty Depo. Trans.) at 57:3-61:10 (Daugherty's testimony regarding the purpose of his investigation), 158:18-160-18 (Ellington's Counsel's inquiries into Daugherty's communications with parties affiliated with the Highland Bankruptcy).

[21] Ex. A, Rayshell Decl. at Ex. A-9.

[22] Id.

[23] Id.

[24] Id.

4884-6726-6451

"Ellington."[25] Daugherty objected[26] to the discovery on the basis that it was far afield from the scope of relevance to Ellington's State Law claims:

> **REQUEST FOR PRODUCTION NO. 15:** All documents and communications referencing any Ellington Party, Ellington Location, or Ellington Recording sent to and received from with Jim Seery.
>
> **RESPONSE:** Daugherty objects to this Request on the basis that it seeks information not relevant and material to Ellington's allegations and claims of Stalking and Invasion of Privacy, nor reasonably calculated to lead to the discovery of admissible evidence, as the Request seeks "[a]ll documents and communications referencing any Ellington Party, Ellington Location," regardless of whether such documents and communications (1) relate to Ellington's claims asserted in this litigation, (2) were communicated in connection with one or more other wholly-unrelated cases proceeding concurrently in other Federal and State courts where Ellington and/or his associates are named-parties, or (3) something else entirely.
>
> Daugherty further objects to this Request on the basis that it is overly broad and constitutes an impermissible fishing expedition as it seeks information completely unrelated to Ellington's claims asserted in this litigation.
>
> Daugherty also adopts and incorporates by reference, as if fully set forth herein, his objections to the definitions of the terms "Ellington Party," "Ellington Location," and "Ellington Recordings."
>
> Daugherty objects to the time and place for production. Subject to the foregoing objection(s) and without waiving the same, Daugherty will produce copies of responsive documents, if any, within his possession, custody, or control on a rolling basis.
>
> Additionally, please see Daugherty's previous productions which contain documents responsive to this request.

Since then, Daugherty has asserted the same or similar objections to over 30 comparable requests for production issued by Ellington, and multiple interrogatories issued by Ellington, most seeking information beyond the State Court Action's scope of relevance and within the purview of issues subject to this Court's Gatekeeping Orders and Gatekeeper Provision.[27]

---

[25] *Id.*

[26] Ex. A, Rayshell Decl. at Ex. A-10.

[27] *Id.*

12. Ellington then filed multiple motions to compel before the State Court, and the State Court has recognized that Ellington's discovery requests are far afield of the claims and defenses in the State Court Action, and has limited discovery to items regarding alleged "stalking issues:"

> IT IS FURTHER ORDERRED THAT Defendant shall produce all text messages with James Seery regarding Plaintiff (and the stalking issues) including the unredacted versions of the text messages already produced by James Seery within 15 (fifteen) days of the date of this Order.
>
> SIGNED this 1st day of Sept, 2023.
>
> JUDGE STACI WILLIAMS

No additional texts were identified by Daugherty for production consistent with the State Court's Order's express language.[28]

### C. If not rebuked by this Court, Respondents' conduct will continue.

13. On September 22, 2023, little more than a week after Movants filed their Joint Motion for Contempt, Ellington served additional discovery on Daugherty seeking, *inter alia*, details regarding alleged meetings and communications between Daugherty and Andrew Clubok, counsel for UBS (one of the largest creditors in the Highland Bankruptcy proceeding).[29] Ellington also served requests seeking communications exchanged between Daugherty and a laundry-list of individuals and entities, notably including entities such as Sentinel, Nexpoint and NexBank, and individuals such as UCC member Josh Terry, counsel for Acis (Roggee Dunn and Brian Shaw),

---

[28] Ex. A, Rayshell Decl. ¶ 14, Exs. A-11, A-12.

[29] Ex. A, Rayshell Decl. ¶¶ 15, 16, 17, Exs. A-13, A-14, and A-15.

4884-6726-6451

and former/current Highland legal team members Matt DiOrio, Michael Colvin, Thomas Surgent, and others.[30] As before, on October 23, 2023, Daugherty again responded and objected to Ellington's blatant attempt to broaden the scope of discovery in the State Court Action to circumvent the language and spirit of this Court's Gatekeeping Orders and Gatekeeper Provision.[31]

14. On November 7, 2023, Ellington filed his fifth motion to compel (the "Fifth Motion to Compel") in furtherance of his attempts to evade this Court's orders and gather otherwise impermissible discovery.[32] Now, for the first time, Respondents seek to expand the time frame for relevant discovery back to January 1, 2020 despite Ellington's live petition in the State Court Action which complains of Daugherty actions beginning a year later in January 2021.[33] Now, before this Court, Ellington advances a new theory of damages, somehow dependent upon Daugherty's settlement with Highland that Ellington has never formally disclosed in the State Court Action.[34]

WHEREFORE, Daugherty respectfully requests that the Court grant the relief sought in the Joint Motion for Contempt.

---

[30] *Id.*

[31] Ex. A, Rayshell Decl. ¶¶ 18, 19, 20, Exs. A-16, A-17, and A-18.

[32] Ex. A, Rayshell Decl. ¶ 21, Ex. A-19. The motion, among other things, seeks communications with Terry, Dunn and Shaw.

[33] Dkt. No. 3957-2, p.194, ¶ 11 (Ellington's Petition).

[34] Ex. A, Rayshell Decl. ¶ 22, Ex. A-20.

4884-6726-6451

Respectfully submitted this 28th day of November, 2023.

**GRAY REED**

By: */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
    Andrew K. York
    Texas Bar No. 24051554
    Drake M. Rayshell
    Texas Bar No. 24118507
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:    jbrookner@grayreed.com
           dyork@grayreed.com
           drayshell@grayreed.com

**ATTORNEYS FOR PATRICK DAUGHERTY**

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on the 28th day of November, 2023, he caused a true and correct copy of the foregoing pleading to be served via the Court's electronic case filing system (ECF) on all parties to this proceeding who have so-subscribed.

                                          */s/ Jason S. Brookner*
                                          Jason S. Brookner

4884-6726-6451