PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

*Counsel for Pachulski Stang Ziehl & Jones LLP*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

## PSZJ'S AMENDED OPPOSITION TO MOTION OF JAMES D. DONDERO AND STRAND ADVISORS, INC. FOR LEAVE TO FILE ADVERSARY COMPLAINT [DOCKET NO. 3981]

Pachulski Stang Ziehl & Jones LLP ("**PSZJ**"), restructuring counsel to Highland Capital Management, L.P., the reorganized debtor in this chapter 11 case ("**Highland**"), files this opposition (the "**Opposition**") to the *Motion of James D. Dondero and Strand Advisors, Inc. for Leave to File Adversary Complaint* [Docket No. 3981] (the "**Motion for Leave**"). The Motion for Leave should be denied for the reasons stated below.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ...............................................................................................1

II. STATEMENT OF FACTS.................................................................................4

    A.    Highland's Prepetition Retention of PSZJ.............................................4

    B.    PSZJ Advises Highland of Significant Risks a Chapter 11 Filing Would Entail.....................................................................................................6

    C.    Highland Commences Its Chapter 11 Case and Files an Application to Employ PSZJ as General Restructuring Counsel.....................................7

    D.    Mr. Dondero Agrees to Cede Control of Highland to the Independent Board to Avoid the Appointment of a Chapter 11 Trustee.......................8

    E.    Mr. Dondero Retains Bonds Ellis as His Personal Counsel ...................9

    F.    The Court Approves PSZJ's Application for Final Compensation, Over the Objection of NexPoint Advisors, L.P., Which Is Owned and Controlled by Mr. Dondero...........................................................................................14

    G.    Strand's Counsel Seeks a Turnover of Its Books and Records but Is Informed that PSZJ Never Represented Strand ....................................14

    H.    Dondero's Lawyers File Substantial But False Allegations of Wrongdoing with the United States Trustee but Never Mention an Attorney-Client Relationship Between Movants and PSZJ or Allege that PSZJ was Not "Disinterested"....................................................................................15

III. MOVANTS' CLAIM IS NOT COLORABLE................................................17

    A.    The Gatekeeper Colorability Test........................................................17

    B.    PSZJ Never Had an Attorney-Client Relationship with Either Movant...............18

    C.    PSZJ Owed No Fiduciary Duty to Either Movant Because No Attorney-Client Relationship Between Them Existed .........................................20

    D.    Texas Law Does Not Permit Plaintiffs to a Recast Malpractice Claim as a Fiduciary Duty Claim Simply to Avoid the Shorter Malpractice Claim Statute of Limitations.........................................................................21

    E.    The Colorability Standard Cannot Be Met ..........................................23

    F.    Movants Have Waived Their Claim .....................................................25

    G.    As a Result of the Allowance of the Final Fee Application by a Final Order, Movant's Claim Is Barred by *Res Judicata*.............................27

IV. CONCLUSION.................................................................................................30

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Abney v. Wal-Mart*,
  984 F. Supp. 526 (E.D. Tex. 2007) ........................................................................................ 27

*Atasi Corp. v. Seagate Tech.*,
  847 F.2d 826 (Fed. Cir. 1988) ............................................................................................ 287

*Belliveau v. Barco, Inc.*, 987 F.3d 122 (5th Cir. 2021) .......................................................... 20

*Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
  2022 Bankr. LEXIS 659 (Bankr. N.D. Tex. Mar. 11, 2022) ................................................ 31

*Cinco Bayous, LLC v. Samson Expl., LLC*,
  2020 U.S. Dist. LEXIS 265754 (E.D. Tex. Aug. 17, 2020) ................................................. 27

*Comer v. Murphy Oil USA*,
  718 F.3d 460 (5th Cir. 2013) ............................................................................................... 29

*Cox v. Am. Cast Iron Pipe Co*.,
  847 F.2d 725 (11th Cir. 1988) ............................................................................................. 27

*Cuyler v. Minns*,
  60 S.W.3d 209 (Tex. App. 2001) ........................................................................................ 23

*Dodson v. Huff (In re Smyth)*,
  2001 U.S. App. LEXIS 30164 (5th Cir. August 7, 2001) .................................................... 27

*First Union Commer. Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters.)*,
  81 F.3d 1310 (4th Cir. 1996) ............................................................................................... 27

*Gidner v. JPMorganChase Bank N.A. (In re Gidner)*,
  2013 Bankr. LEXIS 4273 (Bankr. N.D. Tex. October 11, 2013) ......................................... 27

*Goffney v. Rabson*,
  56 S.W.3d 186 (Tex. App. 2001) ........................................................................................ 23

*Granger v. Aaron's, Inc.*,
  636 F.3d 708 (5th Cir. 2012) ............................................................................................... 22

*Houston Pro. Towing Ass'n v City of Houston*,
  812 F.3d 443 (5th Cir. 2016) ............................................................................................... 29

*In re Corrugated Container Antitrust Litig*.,
  659 F.2d 1341 (5th Cir. 1981) ............................................................................................. 27

*In re Digerati Techs., Inc.*,
  537 B.R. 317 (Bankr. S.D. Tex. 2015) ................................................................................ 31

*In re DISH Network, LLC*,
  528 S.W.3d 177 (Tex. App. 2017) ....................................................................................... 20

*In re Intelogic Trace, Inc.)*,
  200 F.3d 382 (5th Cir. 2000) ............................................................................................... 29

*In re Simmons*,
  765 F.2d 547 (5th Cir. 1985) ............................................................................................... 27

*Jackson v. J.C. Penney Co*.,
  521 F. Supp. 1032 (N.D. Ga. 1981) .................................................................................... 28

*Kennedy v. Gulf Coast Cancer & Diagnostic*,
  326 S.W.3d 352 (Tex. App. 2010) ....................................................................................... 19

*Kiger v. Balestri*, 376 S.W.3d 287 (Tex. App. 2012) .............................................................. 20

*Martin v. Grehn*,
  546 F. App'x. 415 (5th Cir. 2013) ................................................................. 22
*Microsoft Corp. v. Commonwealth Sci. & Indus.*,
  No. 2007 U.S. Dist. LEXIS 91550,
  2007 WL 4376104 (E.D. Tex. Dec. 13, 2007)........................................................ 28
*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*
  *(In re Highland Cap. Mgmt., L.P.),*
  48 F.4th 419 (5th Cir. 2022) ................................................................. 9
*NexPoint Advisors, L.P. v. Pachulski Stang Ziehl & Jones, L.L.P. (In re Highland Capital Mgmt.,
  L.P.),*
  74 F.4th 361 (5th Cir. 2023) ................................................................. 11
*Osherow*,
  200 F.3d at 386 ................................................................. 30
*Pendergest-Holt v. Certain Underwriters at Lloyd's of London*,
  No. 2010 U.S. Dist. LEXIS 155196 (S.D. Tex. July 30, 2010)............................... 27
*Pendergest-Holt*,
  2010 U.S. Dist. LEXIS 155196, 2010 WL 11661414 ........................................... 28
*Redd v. Shell Oil Co.*,
  518 F.2d 311 (10th Cir. 1975) ................................................................. 27
*Ross v. Arkwright Mut. Ins. Co.*,
  892 S.W.2d 119
  (Tex. App.—Houston [14th Dist.] 1994 ....................................................... 23
*Sacks v. Tex. S. Univ.*,
  83 F.4th 340 (5th Cir. 2023) ................................................................. 30
*Sledge v. Alsup*,
  759 S.W.2d 1 (Tex. App. 1988)................................................................. 23
*Smith v. Heard*,
  980 S.W.2d 693................................................................. 23
*Span Enterprises v. Wood*,
  274 S.W.3d 854 (Tex. App. 2008)................................................................. 20
*Thompson v. Vinson & Elkins*,
  859 S.W.2d 617 (Tex. App. 1993)................................................................. 21
*Tr. Corp. of Mont. v. Piper Aircraft Corp.*,
  701 F.2d 85 (9th Cir. 1983) ................................................................. 27
*U.S. v. Shanbaum*,
  10 F.3d 305 (5th Cir. 1994) ................................................................. 27
*Van Den Broeke v. Bellanca Aircraft Corp.*,
  576 F.2d 582 (5th Cir. 1978) ................................................................. 26
*Willis v. Maverick*,
  760 S.W.2d 642 (Tex. 1988)................................................................. 21

**Statutes**

11 U.S.C. § 328(c) ................................................................. 29
11 U.S.C. § 330................................................................. 28
28 U.S.C. § 157(a)................................................................. 28
Bankruptcy Code § 327(a)................................................................. 15

Bankruptcy Code § 330 ................................................................................................ 11
Bankruptcy Rule 2014 ........................................................................................... 13, 15
Bankruptcy Rule 9011 ............................................................................................... 13
Bankruptcy Rule 9011(b)(1)–(3) .............................................................................. 15
Bankruptcy Rule 9011(c) ........................................................................................... 15
Rule 12(b)(6) .............................................................................................................. 17
Tex. Civ. Prac. & Rem. Code § 16.003(a) ................................................................. 23
Tex. Civ. Prac. & Rem. Code § 16.004 ..................................................................... 23

**Other Authorities**

3 COLLIER ON BANKRUPTCY ¶ 330.01 ....................................................................... 28
ABA Model Code of Professional Responsibility ...................................................... 26

# I. INTRODUCTION[1]

1.      In the latest chapter of their ongoing campaign to interfere with Highland's reorganization plan and harass their adversaries by initiating frivolous litigation, James Dondero and Strand Advisors, Inc. (together, "**Movants**") seek leave under the "gatekeeper" provision of the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (the "**Plan**") to commence an adversary proceeding against PSZJ by filing the complaint attached to the Motion for Leave (the "**Proposed Complaint**"). The Proposed Complaint contains a single count of breach of fiduciary duty. That claim is based entirely on the allegation that PSZJ began representing Movants in September 2019 at the same time PSZJ commenced representing Highland as its restructuring counsel and that PSZJ violated its fiduciary duty to the Movants by fulfilling its fiduciary duty to the estate. Movants' newly-manufactured allegation that they had an attorney-client relationship—asserted essentially for the first time more than four years after PSZJ began representing Highland—is a frivolous fabrication, is being made to harass PSZJ and interfere with Highland's reorganization; and lacks any evidentiary support.[2]

2.      The indisputable evidence conclusively establishes that PSZJ has always represented Highland alone, and never Mr. Dondero or Strand. Such evidence includes, among other things, (a) PSZJ's written Retention Agreement with Highland (as contrasted against the absence of any agreement with either Movant) and Employment Application under Bankruptcy Code § 327(a) and Bankruptcy Rule 2014, and (b) Movants' years-long silence about PSZJ's

---

[1] Capitalized terms used but not defined in this Introduction have the meanings given to them below.

[2] Contemporaneously with the filing of this Opposition, PSZJ served a letter and draft motion under Bankruptcy Rule 9011(c) to Movants and their counsel demanding the withdrawal of the Motion for Leave for violating Bankruptcy Rule 9011(b)(1)–(3). If the Motion for Leave is not withdrawn, PSZJ will move for sanctions against Movants and their counsel under Bankruptcy Rule 9011(c).

supposed representation of them despite dozens of matters in which PSZJ represented Highland adversely to them.[3]

3.    Movants' factual allegations are a recent invention and will never be corroborated by competent or credible evidence. Movants allege that PSZJ advised them (or Highland) that Highland could easily restructure its affairs in chapter 11 and emerge quickly with its business, operations, and corporate governance intact. In fact, the indisputable documentary evidence establishes that ***PSZJ provided the exact opposite advice***. Before the Petition Date, PSZJ advised Highland, in writing, of certain material risks associated with a chapter 11 filing, including that (a) Highland's "existing management could be replaced or its authority could be modified or limited" through the appointment of a chapter 11 trustee or conversion of the case to one under chapter 7 and (b) Highland's "choice of venue in Delaware could be rejected in favor of a transfer of venue to Dallas, Texas." Movants' related argument that they would have remained in control had PSZJ not recommended to Highland the corporate governance settlement is false. The indisputable record shows that if Highland and the Committee had not agreed to the Independent Board, the Court would have appointed a chapter 11 trustee divesting Movants of their control positions with Highland.

4.    Beyond lacking any evidentiary support, Movant's claim is frivolous as a matter of law for several reasons. First, Movants waived their claim that they had an attorney-client relationship with PSZJ and that PSZJ had a conflict of interest by failing to raise it until now.

---

[3] Particularly damning are four separate letters (one of which was sent by Movants' counsel just three months ago) sent over a two-year period to the Executive Office of the United States Trustee (the "**EOUST**") on Mr. Dondero's behalf, each of which (a) included a laundry list of serious but false allegations against Highland and its fiduciaries, but (b) excluded any allegation that PSZJ (i) violated Bankruptcy §327(a) and Bankruptcy Rule 2014 by failing to disclose its alleged attorney-client relationships with Mr. Dondero and Strand, or (ii) breached its fiduciary duty to the Movants by fulfilling its fiduciary duty to Highland. Indeed, contrary to the allegations in the Proposed Complaint, Movants' counsel told the EOUST that Mr. Dondero retained PSZJ to "file a Chapter 11 bankruptcy petition on Highland's behalf." *See* ¶¶ 28–31 below.

Despite having every incentive to do so, they did not raise their claim when Highland filed its application to retain PSZJ, which attested to PSZJ's disinterestedness; they did not raise their claim in any of the dozens of contested matters, adversary proceedings, and appeals in which PSZJ was adverse to them; and they did not raise their claim in any of the four letters sent to the EOUST. Movants will never be able to credibly explain why they waited until December 2023 to seek authority to file an action alleging that PSZJ served as their counsel in late 2019 and early 2020, and never previously sought relief despite PSZJ's representation of Highland in matters adverse to them *for years*. In fact, Movants' utter failure to seek relief until now proves that the claim is fabricated and is being pursued in bad faith.

5.      Second, Movants' claim is barred by the two-year statute of limitations applicable to malpractice actions. Movants' attempt to repackage their purported malpractice claim as a breach of fiduciary duty claim to avoid the running of the statute of limitations fails as a matter of law.

6.      Third, Movants' claim is barred by *res judicata*. Movants' prayer for relief seeks to compel PSZJ to disgorge fees received from Highland under this Court's order approving those fees on a final basis. Movants should have raised their claim that PSZJ represented them and was not disinterested during the final fee application process; if proven, that claim would most certainly have affected the Court's final compensation order. They remained silent on that issue, even as their affiliates objected to PSZJ's final fee application on other, unrelated grounds.

This Court has previously held that, for purposes of determining whether a claim is "colorable" under the "gatekeeper" provision, the putative claimant must make "a prima facie case that is proposed claims are ***not without foundation***, are ***not without merit***, and are ***not being***

*pursued for any improper purpose such as harassment*."[4] Because Movants cannot possibly

satisfy that standard, the Court should deny the Motion.

## II. STATEMENT OF FACTS

7.      Movants' contention that they retained PSZJ to provide them individually with

legal advice in September 2019 when Highland retained PSZJ is a recent fabrication contradicted

by considerable documentary evidence and Movants' own consistent, four-year course of conduct.

The facts below are indisputable.

**A.      Highland's Prepetition Retention of PSZJ**

8.      On September 29, 2019, Highland contacted PSZJ regarding a potential chapter 11

filing to forestall the confirmation of an arbitration award in Redeemer's favor. PSZJ prepared a

*Retention Agreement* and exchanged drafts with Isaac Leventon, Highland's Assistant General

Counsel.[5] The *Retention Agreement* provides, among other things:

> Based on the information, [*sic*] the Firm has received to date, it is not aware of any
> current or past relationship with another party interested in the subject matter of
> this representation that would constitute a conflict of interest, nor does the Firm
> itself have an interest in the subject matter of the representation …. The Firm will
> utilize the list to comply with the applicable provisions of the Bankruptcy Code and
> Bankruptcy Rules to be sure that the firm is 'disinterested' and is in a position to
> make all required disclosures to a Bankruptcy Court. … The Firm is being engaged
> by the Client, being the individual(s), entity or entities for which appear below
> signature blocks (other than the signature block for the Firm). **Unless reflected by
> a separate agreement, the Firm's representation of the Client does not include
> the representation of others, including individual officers, directors, partners,
> shareholders or employees of the Client**….

---

[4] Docket No. 3903 at 91 (emphasis in original).

[5] Mr. Leventon provided written comments to the draft Retention Agreement.

**Exhibit 1** at 6-7 (emphasis added).[6] On October 1, 2019, Scott Ellington, a licensed, practicing

lawyer and Highland's General Counsel, signed the *Retention Agreement* on Highland's behalf in

his capacity as the Secretary of Strand, Highland's general partner:

**T.    Effective Date.**

This Agreement will govern all legal services performed by the Firm on behalf of Client
commencing with the date the Firm first performed services. The date at the beginning of this Agreement
is for reference only. Even if this Agreement does not take effect, Client will be obligated to pay the Firm
the reasonable value of any services the Firm may have performed for Client.

THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS AND AGREE TO
THEM AS OF THE DATE THE FIRM FIRST PROVIDED SERVICES. IF MORE THAN ONE CLIENT
SIGNS BELOW, EACH AGREES TO BE LIABLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS
UNDER THIS AGREEMENT.

CLIENT SHOULD SEEK INDEPENDENT COUNSEL TO ADVISE IT CONCERNING THIS
AGREEMENT.

Dated: October 1, 2019

PACHULSKI STANG ZIEHL & JONES, LLP    HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____    By: _____
A Member and Principal    By: Strand Advisor, Inc., general partner
By: Scott Ellington, Secretary

Highland and PSZJ are the only signatories to the *Retention Agreement* and Highland funded a

$500,000 retainer to PSZJ for its representation of Highland.[7] No "separate agreement" between

PSZJ and any other person or entity concerning Highland's contemplated bankruptcy filing was

ever contemplated, discussed, drafted, or executed.

9.    If Mr. Ellington believed or was informed that PSZJ also represented Strand and

Mr. Dondero, it is inconceivable that he would have signed an agreement indicating unequivocally

---

[6] Citations to "Exhibits __" refer to the exhibits attached to the *Declaration of Hayley R. Winograd in Support of PSZJ's Opposition to Motion of James D. Dondero and Strand Advisors, Inc. for Leave to File Adversary Complaint,* filed contemporaneously with this Opposition.

[7] Highland asked PSZJ whether entities other than Highland could contribute to the retainer being requested by PSZJ. PSZJ unequivocally told Highland that the full retainer needed to come from Highland and not any affiliated entities.

that PSZJ's only client was Highland. It is also inconceivable that neither Mr. Ellington nor Mr. Leventon, in their capacities as Highland's General and Assistant General Counsel, respectively, would have failed to review the *Retention Agreement* with Mr. Dondero, Highland's president, or inform him of the substance of that document.

10.     There is no retention agreement between PSZJ and Mr. Dondero or between PSZJ and Strand. There is no document or written communication that establishes, reflects, or even refers to an attorney-client relationship between PSZJ and either Mr. Dondero or Strand. Nor is it alleged that Mr. Dondero or Strand ever paid PSZJ a penny—PSZJ was paid entirely by its sole client in this matter, Highland.[8] And there will never be any evidence that PSZJ believed that it was entering into an attorney-client relationship with any entity or individual other than Highland. Movants haven't even alleged that such evidence exists.

**B.      PSZJ Advises Highland of Significant Risks a Chapter 11 Filing Would Entail**

11.     Movants' theory of the case is that PSZJ advised them to file chapter 11 to resolve the claim of Redeemer and that the chapter 11 would ensure that Movants would retain control of Highland. The reality is that PSZJ advised Highland to try to settle with Redeemer to *avoid* chapter 11. On October 2, 2019, PSZJ provided Highland with a memorandum (the "**October 2 Memo**") that warned Highland of potential adverse consequences a chapter 11 filing might have on Highland's business and operations, and on Movants' ability to retain control of Highland. **Exhibit 2**. The contents and significance of the October 2 Memo are discussed further below.

---

[8] There will be no evidence that PSZJ ever rendered an invoice to Mr. Dondero or Strand or that either of them ever compensated PSZJ for services allegedly rendered.

**C.      Highland Commences Its Chapter 11 Case and Files an Application to Employ PSZJ as General Restructuring Counsel**

12.      On October 16, 2019 (the "**Petition Date**"), Highland filed its voluntary chapter 11 petition in the Bankruptcy Court for the District of Delaware (the "**Delaware Bankruptcy Court**"). **Exhibit 3**. Mr. Dondero signed the petition (under penalty of perjury) on Highland's behalf in his capacity as President of Strand, Highland's general partner.[9]

13.      On December 4, 2019, the Delaware Bankruptcy Court entered an order transferring venue of Highland's chapter 11 case to this Court.

14.      Before the chapter 11 case was transferred to this Court, Highland filed the *Debtor's Application Pursuant to Section 327(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 70] (the "**Employment Application**"). **Exhibit 4**. The Employment Application specifically represented:

> ***PSZ&J has not represented the Debtor [sic], its creditors, equity security holders, or any other parties in interest, or its respective attorneys, in any matter relating to the Debtor or its estate.*** Further, to the best of the Debtor's knowledge, PSZ&J does not hold or represent any interest adverse to the Debtor's estate, PSZ&J is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code ….[10]

15.      The Employment Application was signed on Highland's behalf by Frank Waterhouse, Highland's Chief Financial Officer, in his capacity as the Treasurer of Strand, Highland's general partner.[11] Movants did not challenge, oppose, or question the accuracy of these

---

[9] Docket No. 3 at 4.

[10] Docket No. 70 at 5-6 (emphasis added).

[11] The Employment Application and the Bankruptcy Court's order approving the Employment Application were each served on Strand. Docket No. 70 at 28 and Docket No. 185, respectively. These documents were also served on The Dugaboy Investment Trust and Hunter Mountain Investment Trust, entities controlled by Mr. Dondero. *Id.*

representations. Movants' failure to do so is inconceivable if Movants believed that PSZJ also represented Movants.

16.    Nor did Movants ever challenge or raise any concern regarding the three verified statements Jeffrey Pomerantz filed with the Bankruptcy Court under Bankruptcy Rule 2014 in support of the Employment Application (on October 29, 2019, on November 26, 2019, and on March 22, 2021, collectively, the "**Pomerantz Statements**"),[12] each of which affirmatively represented that PSZJ was "disinterested" and that PSZJ has never represented any Highland affiliate, officer, equity holder, partner, or subsidiary. **Exhibit 5**. Movants never raised the issue of their supposed attorney-client relationship with PSZJ or PSZJ's alleged "conflict of interest" until now, more than four years after the first Pomerantz Statement was filed.

**D.    Mr. Dondero Agrees to Cede Control of Highland to the Independent Board to Avoid the Appointment of a Chapter 11 Trustee**

17.    Because of significant misgivings about Mr. Dondero's ability to function as an estate fiduciary, Highland's official committee of unsecured creditors (the "**Committee**") and the U.S. Trustee both threatened to seek appointment of a chapter 11 trustee to manage Highland's bankruptcy case. To avoid appointment of a trustee, Mr. Dondero and Highland entered into an agreement with the Committee that: (a) removed Mr. Dondero from all managerial control positions at Highland; (b) appointed an independent board (the "**Independent Board**") at Strand to manage the chapter 11 case; and (c) implemented operating protocols that, among other things,

---

[12] Mr. Pomerantz has led PSZJ's engagement by Highland since it began. The first Pomerantz Statement was included in the Employment Application and was served on Strand and other Dondero-related entities. *See* n. 11 above. The second Pomerantz Statement was also served on Strand and other Dondero-related entities. *See* Docket No. 178 at 26 and 30. The third Pomerantz Statement [Docket No. 2079] was served on Mr. Dondero (through his counsel, Bonds Ellis) and other Dondero-related individuals and entities, including Scott Ellington and Isaac Leventon (each of whom was terminated by Highland for cause and was fully aligned with Mr. Dondero), The Dugaboy Investment Trust, Hunter Mountain Investment Trust, Highland Capital Management Advisors, L.P., and NexPoint Advisors, L.P. *See* Docket No. 2125.

generally required Committee approval of most asset sales or transfers. The Bankruptcy Court

approved the settlement on January 9, 2020.[13]

18.     Not satisfied, the U.S. Trustee continued to press its motion for the appointment of

a chapter 11 trustee.[14] On January 21, 2020, following an evidentiary hearing, the Bankruptcy

Court denied the U.S. Trustee's motion precisely because Mr. Dondero had already ceded all

control positions to the Independent Board as part of the corporate governance settlement.[15]

**E.     Mr. Dondero Retains Bonds Ellis as His Personal Counsel**

19.     On March 6, 2020, Mr. Dondero's personal bankruptcy counsel, Bonds Ellis

Eppich Schafrer Jones LLP ("**Bonds Ellis**"), filed a notice of appearance noting "their

representation of Mr. James Dondero in the above styled and numbered cause …." **Exhibit 7**.

Presumably, Mr. Dondero would have had no need to retain Bonds Ellis if PSZJ was his counsel

in Highland's bankruptcy case, as he now alleges.[16] Neither Bonds Ellis nor Mr. Dondero ever

---

[13] Docket No. 339.

[14] Docket No. 271.

[15] At the hearing on January 21, 2020, the Court said:

> The U.S. Trustee relies on the strict wording that, quote, The Court shall order the appointment of a trustee for cause, including fraud, dishonesty, incompetence, or gross [mis]management of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause. The Court believes this statutory provision is aimed at problems or malfeasance with current management. All of this has been fixed. It's a very different scenario than when this case was filed…. Again, this was a complete overhaul. The facts and timing are such today that Mr. Dondero is no longer current management. Current management are the words used in Section 1104…. A new board and new management are not only a pragmatic solution, but this Court concludes are totally within the parameters and the provisions and overall structure of Chapter 11…. *I approved the new governance structure pursuant to Sections 363 and 105, and now we don't have the cause that 1104 refers to*.

> *Transcript of Proceedings Before the Honorable Stacey G.C. Jernigan, United States Bankruptcy Judge,* January 21, 2020, *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj-11 (**Exhibit 6**) at 115:3 – 116:19 (emphasis added). *See also* the Court's order confirming the Plan, Docket No. 1943 at 13 ("Suffice it to say the settlement and *the appointment of the independent directors changed the entire trajectory of the case and saved the Debtor from the appointment of a trustee*.") (emphasis added).

[16] Had Mr. Dondero actually believed that PSZJ was his counsel before then, he would have discharged PSZJ when he engaged Bonds Ellis. Of course, Mr. Dondero did nothing of the kind precisely because there was no attorney-client relationship to discharge.

---

informed PSZJ (or anyone else) that Bonds Ellis was substituting in as counsel for Mr. Dondero. Neither Bonds Ellis nor Mr. Dondero ever asked PSZJ to turn over Mr. Dondero's client files. Neither Bonds Ellis (a firm of bankruptcy experts who presumably know what "disinterested" means in the Bankruptcy Code) nor Mr. Dondero informed PSZJ that it could not continue to represent Highland because a conflict of interest supposedly existed.[17]

20.     Mr. Dondero relied on his own counsel to advance his personal interests in the chapter 11 case.[18] Mr. Dondero had his own counsel in the nearly countless array of litigations where Highland (represented by PSZJ) and Mr. Dondero were directly adverse to one another. Never—not once over the course of more than four years—did Mr. Dondero or Strand raise a concern about PSZJ's representing Highland in matters adverse to Movants and their affiliates, let alone seek to disqualify PSZJ from doing so on the ground that PSZJ previously represented Movants. To offer but a few of the more notable examples:

a.      On January 7, 2021, Highland, represented by PSZJ, moved to hold Mr. Dondero in contempt of court for violating the Court's temporary restraining order entered in Adv. Proc. No. 20-03190-sgj; on June 7, 2021, following an evidentiary hearing during which PSZJ vigorously cross-examined Mr. Dondero, the Court held Mr. Dondero in contempt of court [Adv.

---

[17] This is not the first time Mr. Dondero has attacked lawyers when he didn't get what he wanted. *See James Dondero vs. Bonds Ellis Eppich Schafer Jones LLP, et al.*, Docket No. DC-22-08142 (Tex. Dist. Ct. July 15, 2022) (a suit for alleged malpractice). Parsons McEntire McCleary PLLC commenced that suit on Mr. Dondero's behalf. Significantly, the complaint in that lawsuit (**Exhibit 8**) includes a litany of items Mr. Dondero alleges Bonds Ellis failed to raise, yet the complaint is devoid of any mention of Bonds Ellis having failed to raise the issue of PSZJ suffering from some sort of conflict of interest or having committed malpractice. On information and belief, Mr. Dondero and entities controlled by him have entered into tolling agreements with other law firms with respect to alleged malpractice claims they threatened to pursue.

[18] After the unfortunate passing of former bankruptcy judge D. Michael Lynn, Mr. Dondero retained new counsel to represent him in the chapter 11 case, Stinson LLP ("**Stinson**"). Like Bonds Ellis, Stinson never raised PSZJ's alleged conflict of interest or breach of fiduciary duty, nor, until now, did any of the other myriad law firms representing Mr. Dondero's interests.

Proc. Docket No. 190]. Bonds Ellis represented Mr. Dondero in these proceedings but never raised any "conflict of interest" issue concerning PSZJ's supposed representation of Mr. Dondero.

b.      On April 27, 2021, Highland, represented by PSZJ, moved to hold Mr. Dondero and others in contempt of court for violating the "gatekeeper" orders; on August 4, 2021, following an evidentiary hearing during which PSZJ vigorously cross-examined Mr. Dondero, the Court held Mr. Dondero and others in contempt of court [Docket No. 2660]. Bonds Ellis represented Mr. Dondero in these proceedings but never raised any "conflict of interest" issue concerning PSZJ's supposed representation of Mr. Dondero.

c.      In January 2021, Highland, represented by PSZJ, commenced five related adversary proceedings seeking to collect over $60 million of demand promissory notes owed by Mr. Dondero and four of his entities. In December 2021, Highland moved for partial summary judgment and, following argument in April 2022, the Court recommended partial summary judgment in Highland's favor, ruling that Mr. Dondero's alleged "oral agreement" defense couldn't pass the "straight-face test," citing "a complete lack of evidence" supporting it. Stinson represented Mr. Dondero in these proceedings but never raised any "conflict of interest" issue concerning PSZJ's supposed representation of Mr. Dondero.

d.      On March 31, 2021, after Highland discovered that former employees under Mr. Dondero's direction caused certain of Highland's controlled entities to fraudulently transfer some $300 million in face amount of cash and securities to avoid UBS's judgment before the Petition Date, UBS filed an adversary complaint seeking a restraining order against Highland. Following discovery,[19] Highland, represented by PSZJ, consented to a permanent injunction the

---

[19] During discovery, Highland learned, among other things, that Mr. Dondero secretly used a Cayman Islands entity to indemnify six Highland employees in June 2020 while Highland's bankruptcy case was pending.

Court granted on August 23, 2022, following a hearing during which the Court said it would assess the evidence to determine whether a criminal referral of Mr. Dondero, among others, was warranted. Mr. Dondero participated in discovery, was aware of the damaging evidence being marshalled against him, but never raised any "conflict of interest" issue concerning PSZJ's supposed representation of him.

      e.    In January 2021, Dondero-controlled entities referred to as the "Advisors" filed an application for allowance of an approximately $14 million administrative expense claim. The Dondero entities were represented by Munsch Hardt Kopf & Harr, P.C. ("**Munsch Hardt**"). Highland responded with a countervailing breach of contract claim against the Advisors. After a two-day trial during which PSZJ vigorously examined Mr. Dondero on Highland's behalf,[20] the Court granted Highland's breach of contract claim and denied the Advisors' administrative expense claim. Again, no "conflict of interest" issue was raised concerning PSZJ's supposed representation of Mr. Dondero.

      f.    The highly litigious proceedings concerning confirmation of the Plan— which permanently extinguished the roles of Mr. Dondero and his affiliates in Highland—could not have been more adverse to Movants' interests. Yet at no time during the confirmation proceedings and trial—during which Mr. Dondero and numerous other entities he controlled objected to confirmation on so many grounds that the Fifth Circuit Court of Appeals characterized their arguments as a "bankruptcy-law blunderbuss"[21]—did either Movant ever raise the issue of a

---

[20] During cross-examination, Mr. Dondero was forced to admit that, in the spring of 2020, after having supposedly ceded control of Highland, he paid $10 million to certain then-Highland employees without disclosing those payments to the Independent Board or this Court.

[21] *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),* 48 F.4th 419, 432 (5th Cir. 2022).

conflict of interest or breach of fiduciary duty on PSZJ's part.[22] If there was ever a conflict on PSZJ's part, one would certainly have expected Movants and their phalanx of attorneys to raise that issue then. They did not—thereby corroborating the fact that there was no issue to raise.

g.      In March 2023, Highland, the Claimant Trust, Mr. Seery, and others opposed a motion brought by Hunter Mountain Investment Trust ("**HMIT**"), another of Mr. Dondero's entities, for leave to file a complaint alleging insider claims trading and breach of fiduciary duty. After a trial in June 2023 during which Mr. Dondero was forced—under cross-examination by PSZJ—to admit to, among other things, insider trading and lying about Amazon's December 2020 agreement to meet MGM's offer price, the Court denied HMIT's motion and adopted the Gatekeeper Colorability Test described further below. PSZJ represented Highland and the Claimant Trust in opposing the motion, and no one raised any "conflict of interest" issue.[23]

21.      Although the foregoing is obviously not an exhaustive list of litigated matters involving Mr. Dondero and his affiliates, PSZJ has indisputably represented Highland—and only Highland—in every litigated matter against Mr. Dondero and his affiliates since the Independent Board was installed in January 2020. During that time, PSZJ deposed Mr. Dondero and cross-examined him at trial more than a dozen times, and in each instance, Mr. Dondero was represented and defended by counsel other than PSZJ. At no time did Mr. Dondero mention the existence of a

---

[22] In the contested Plan confirmation proceedings, Mr. Dondero was represented by Bonds Ellis, and his affiliated entities were represented by Heller Draper & Horn LLC, K&L Gates LLP, and Munsch Hardt, all experienced bankruptcy practitioners who presumably know that PSZJ was required to be "disinterested" at all times.

[23] The evidence adduced during the hearing established that HMIT exists solely for Mr. Dondero's personal benefit. Significantly, Mr. Dondero's personal counsel at Stinson, Deborah Deitsch-Perez, simultaneously represents HMIT and sat in the courtroom during PSZJ's cross-examination of Mr. Dondero yet never said a word about any supposed "conflict of interest" or breach of fiduciary duty. *See, e.g.*, Adv. Pro. 23-03038-sgj, Docket No. 1.

disabling attorney-client relationship or conflict of interest, nor did his counsel ever move to disqualify PSZJ from representing Highland on that basis.[24]

**F.    The Court Approves PSZJ's Application for Final Compensation, Over the Objection of NexPoint Advisors, L.P., Which Is Owned and Controlled by Mr. Dondero**

22.    Movants had a golden opportunity to raise the issue of PSZJ's alleged representation of Movants and the resulting conflict when PSZJ filed its final application for approval of fees and expenses under Bankruptcy Code § 330 (the "**Final Fee Application**"). **Exhibit 9**. Yet, as they did throughout Highland's bankruptcy case, Movants remained silent on the issue.[25]

23.    Although Movants failed to object to PSZJ's Final Fee Application, NexPoint Advisors, L.P. ("**NexPoint**")—another entity owned and controlled by Mr. Dondero—did so. NexPoint was represented in that matter by Jain Law & Associates PLLC and Schwartz Law PLLC and raised numerous objections to the Final Fee Application—but PSZJ's alleged prior and conflicting representation of Movants or violation of Bankruptcy Code §327(a) and Bankruptcy Rule 2014 were not among them.[26]

**G.    Strand's Counsel Seeks a Turnover of Its Books and Records but Is Informed that PSZJ Never Represented Strand**

24.    The Plan went effective on August 11, 2021. Under the Plan, Highland was reorganized and all partnership interests, including Strand's, were terminated. Concurrently,

---

[24] Even now Movants do not seek to disqualify PSZJ from representing Highland in the future; they just seek "damages" and the "[d]isgorgement of fees." *See* Proposed Complaint at 20 (Prayer for Relief).

[25] This failure lies at the heart of the *res judicata* defense below and further supports the waiver defense.

[26] Following a contested hearing held on November 17, 2021 (the "**Fee Hearing**"), this Court overruled NexPoint's objections and entered an order granting PSZJ's Final Fee Application (the "**Final Fee Order**"). NexPoint's appeals to the District Court and the Fifth Circuit Court of Appeals were dismissed for lack of standing. *NexPoint Advisors, L.P. v. Pachulski Stang Ziehl & Jones, L.L.P. (In re Highland Capital Mgmt., L.P.),* 74 F.4th 361 (5th Cir. 2023).

HCMLP GP LLC became reorganized Highland's new general partner, and Strand was removed as Highland's general partner. The members of the Independent Board also resigned.

25.    On February 3, 2022, Strand's counsel, Amy Ruhland (the same lawyer who signed the Motion for Leave as Movants' counsel), emailed Mr. Pomerantz a letter (the "**Ruhland Letter**"), demanding that PSZJ turn over its "client file" regarding Strand and essentially assuming that PSZJ had been counsel to Strand, even conjuring up an engagement letter between PSZJ and Strand that never existed. On February 11, 2022, Mr. Pomerantz responded to the Ruhland Letter with a one-sentence email: "In response to your February 3, 2022 letter, please be advised that Pachulski Stang Ziehl & Jones (the 'Firm') acted solely as counsel to Highland Capital Management L.P. during Highland's chapter 11 bankruptcy case and has never represented Strand Advisors, Inc." **Exhibit 10** (including the Ruhland Letter).

26.    Ms. Ruhland dropped the matter. Neither Ms. Ruhland nor anyone else representing Strand or Mr. Dondero ever responded to Mr. Pomerantz. Again, it was only in the Motion for Leave, a draft of which was provided to PSZJ on November 28, 2023—almost *22 months* after Mr. Pomerantz's February 3, 2022, email—that Strand directly alleged (rather than assumed, as Ms. Ruhland did in the Ruhland Letter) that PSZJ ever acted as Strand's counsel. Not surprisingly, the Motion for Leave does not mention (let alone attach) any retainer agreement between PSZJ and Strand, despite Ms. Ruhland's earlier reference to one. No such agreement exists.

**H.    Dondero's Lawyers File Substantial But False Allegations of Wrongdoing with the United States Trustee but Never Mention an Attorney-Client Relationship Between Movants and PSZJ or Allege that PSZJ was Not "Disinterested"**

27.    Between October 11, 2021, and September 8, 2023, Mr. Dondero and entities he controls caused four separate letters (collectively, the "**EOUST Letters**") to be sent to the EOUST in Washington, D.C. **Exhibit 11**. In general, the EOUST Letters detailed Mr. Dondero's

contentions of "serious abuses of the bankruptcy process" including alleged breaches of fiduciary duties and a lack of transparency.[27]

28.      The last of the EOUST Letters was sent on September 8, 2023 - just before the parties were supposed to mediate their disputes by Amy Ruhland - the attorney who signed the Motion for Leave. Ms. Ruhland not only failed to raise any issues concerning alleged "conflicts of interest" or "breaches of fiduciary duty," she tacitly acknowledged to the EOUST that Mr. Dondero hired PSZJ to represent Highland, and Highland alone: "Mr. Dondero (who was then the acting CEO and sole director of Highland's general partner, Strand Advisors, Inc. ("Strand")), in consultation with counsel, determined that an orderly restructuring was in Highland's best interest. Accordingly, ***he retained [PSZJ] to file a Chapter 11 bankruptcy petition on Highland's behalf***."[28].

29.      The other three EOUST Letters were written by Douglas Draper and Davor Rukavina, respectively, attorneys who regularly practice bankruptcy law and presumably know that Bankruptcy Code § 327(a) and Bankruptcy Rule 2014 require a debtor's counsel to be "disinterested." Yet none of the EOUST Letters even suggest that PSZJ: (a) failed to disclose the existence of a conflicting attorney-client relationship with Mr. Dondero and Strand; (b) violated Bankruptcy Code § 327(a) and Bankruptcy Rule 2014 because PSZJ was, in fact, "interested" based on the supposed attorney-client relationship with the Movants; or (c) breached their fiduciary duty to the Movants by fulfilling their fiduciary duty to Highland.

---

[27] The EOUST Letters collectively cover nearly 75 single-spaced pages (excluding hundreds of pages of exhibits) and set forth a litany of serious but fabricated or grossly misleading allegations against Highland and its fiduciaries. Because the EOUST Letters were not filed in any court, neither Bankruptcy Rule 9011 nor Rule 11 of the Federal Rules of Civil Procedure apply. But other laws do, and Highland and its fiduciaries (who are now falsely accused of wrongdoing) reserve all rights to address these spurious and malicious allegations at a time and in a manner of their choosing. Notably, the EOUST has never contacted Highland or its fiduciaries concerning any aspect of the EOUST Letters.

[28] **Exhibit 11** at 2 (emphasis added).

30.     The failure of Mr. Draper, Mr. Rukavina, and Ms. Ruhland to press any of these matters is particularly noteworthy because (a) Mr. Dondero should have been highly motivated to identify another area of alleged wrongdoing (one that would certainly fall within the EOUST's purview), and (b) each of the EOUST Letters included an overview of the circumstances concerning the commencement of Highland's bankruptcy case and/or the appointment of the Independent Board where these matters would have been directly relevant.[29]

### III. MOVANTS' CLAIM IS NOT COLORABLE

**A.    The Gatekeeper Colorability Test**

31.     This Court recently articulated the standard of "colorability" under the Plan's gatekeeper provision (the "**Gatekeeper Colorability Test**") as follows:

> The court concludes that the appropriate standard to be applied in making its "colorability" determination in *this* bankruptcy case, in the exercise of its gatekeeping function pursuant to the two Gatekeeper Orders and the Gatekeeper Provision in *this* Plan, is a broader standard than the "plausibility" standard applied to Rule 12(b)(6) motions to dismiss. It is, rather, a standard that involves an *additional level of review*—one that places on the proposed plaintiff a burden of making a prima facie case that its proposed claims are *not without foundation*, are *not without merit*, and are *not being pursued for any improper purpose such as harassment*. Additionally, this court may, and should, take into consideration its *knowledge* of the *bankruptcy proceedings* and *the parties* and any additional evidence presented at the hearing on the Motion for Leave.[30]

Movant's proposed claim does not satisfy any part of the Court's Gatekeeper Colorability Test. The allegations concerning an "implied" attorney-client relationship between PSZJ and Movants lack any evidentiary support and are directly contradicted by Movants' consistent course of conduct; the alleged breach of fiduciary duty claim based on that alleged relationship is meritless for multiple reasons. The claim is being pursued to harass PSZJ and, by extension, Highland and

---

[29] *See* **Exhibit 11** (Ruhland 9/8/23 letter) at 4; **Exhibit 11, Ex. A** (Draper 10/11/21 letter) at 2; **Exhibit 11, Ex. B** (Rukavina 11/3/21 letter) at 2; **Exhibit 11, Ex. C** (Rukavina 5/11/22 letter) at 5–7.

[30] Docket No. 3903 at 91 (emphasis in original).

the Claimant Trust, and—like so many other coordinated actions by Mr. Dondero and his counsel—to undermine Highland and frustrate the Plan's implementation.

**B.     PSZJ Never Had an Attorney-Client Relationship with Either Movant**

(1)     *No Express Attorney-Client Relationship Existed*

32.     The Motion for Leave and the Proposed Complaint depend on the simple issue of whether an attorney-client relationship between PSZJ and either Movant ever existed. It didn't. Conspicuously absent from both the Motion for Leave and the Proposed Complaint is any allegation that a written agreement or other document or recorded communication exists to establish an express attorney-client relationship between PSZJ and either Movant. There never was one.

33.     PSZJ and Highland signed binding contracts, executed documents, and communicated by email regarding PSZJ's retention with one goal: to establish an attorney-client relationship between PSZJ and Highland (and only Highland). Movants said nothing before (or after) the Bankruptcy Court approved the Employment Application about their having an attorney-client relationship with PSZJ and accepted without objection the Pomerantz Statements, which included the unchallenged assertions that PSZJ never represented any Highland affiliate, officer, equity holder, partner, or subsidiary.

34.     Even when Mr. Dondero's personal counsel, Bonds Ellis, filed a notice of appearance, Movants said nothing about some sort of dual representation or conflict of interest at any point—not when pitched litigation ensued between Highland and Mr. Dondero, not when Mr. Dondero opposed confirmation of the Plan, not in any of the several dozen appeals Mr. Dondero and his entities have pursued over the last four years, not when Mr. Dondero's lawyers wrote four letters to the EOUST complaining about supposed "abuses of the bankruptcy process," and not even when NexPoint objected to the Final Fee Application. On this record, there is simply no way

that any court applying Texas law could reasonably conclude that PSZJ ever had an attorney-client relationship with either Movant.

(2)    <em>No Implied Attorney-Client Relationship Existed</em>

35.    Because no express attorney-client relationship ever existed between PSZJ and either Movant, Movants must establish that an "implied" attorney-client relationship existed under Texas law. "In determining whether a contractual relationship can be implied, we use an objective standard, looking at what the parties said and did for some manifestation that **both** parties intended to create an attorney-client relationship, and do not consider their unstated, subjective beliefs."[31]

36.    Movants haven't identified any evidence - or even alleged the existence of any evidence - that PSZJ ever intended to create an attorney-client relationship with either of them or that either Movant intended to create an attorney-client relationship when *Highland* retained PSZJ. PSZJ never said or did anything that would have reasonably led either Movant to believe that PSZJ represented it. In fact, *all* of PSZJ's actions and *all* of PSZJ's representations to the Bankruptcy Court—about which Movants said nothing, ever—provide no evidence of an implicit attorney-client relationship between PSZJ and either Movant and instead lead inexorably to the conclusion that PSZJ represented Highland and only Highland.[32] The documentary evidence proves that there never was such a relationship and that no one—neither PSZJ nor even the Movants—ever conducted themselves in a manner that would evince the legally-required *mutual* belief that PSZJ represented Movants.

---

[31] *Kennedy v. Gulf Coast Cancer & Diagnostic*, 326 S.W.3d 352, 357-58 (Tex. App. 2010) (emphasis added).

[32] As this Court knows, Mr. Dondero is perfectly willing to fabricate stories even in the face of an avalanche of contrary documentary evidence: recall Mr. Dondero's uncorroborated tale concerning a series of secret oral agreements with his sister to forgive over $60 million in promissory notes that caused this Court to invoke the "sham affidavit" rule.

37.     Any subjective and previously undisclosed beliefs about the alleged relationship held by Movants—beliefs contradicted by all the documentary evidence and their own lengthy, uninterrupted, and inexplicable silence—are legally irrelevant.[33] "Texas law is clear that one party's subjective beliefs are not evidence of an implied attorney-client relationship."[34] If, as Texas courts uniformly hold, Movants' subjective beliefs are not evidence of an attorney-client relationship, then no such evidence exists. The lack of an attorney-client relationship is fatal to Movants' claim for breach of fiduciary duty. The Movant's claim is not colorable—and the Motion for Leave must fail—on that basis alone.

## C.    PSZJ Owed No Fiduciary Duty to Either Movant Because No Attorney-Client Relationship Between Them Existed

38.     An attorney has a fiduciary duty only when an attorney-client relationship is created.[35] The corollary is that attorneys never owe fiduciary duties to non-clients because no attorney-client relationship exists. "A fiduciary duty is an extraordinary one and will not be lightly created. The mere fact that one subjectively trusted the other does not, alone, indicate that he reposed confidence in the other in the sense demanded by fiduciary relations, because something apart from the transaction itself is necessary."[36]

---

[33] Assuming for the sake of argument only that Movants actually held such subjective beliefs and those beliefs were relevant, Movants' primary allegation is that PSZJ had "engag[ed] in numerous discussions with Mr. Dondero personally" and advised him to take certain actions to benefit Highland. Mr. Dondero was the CEO of PSZJ's sole client, Highland. If a debtor's counsel forms a personal attorney-client relationship with a debtor's CEO simply by discussing the debtor's bankruptcy case with that CEO, then no counsel could ever be "disinterested" under § 327(a) and would always be in breach of its duties to the debtor and its estate.

[34] *Kiger v. Balestri*, 376 S.W.3d 287, 291 (Tex. App. 2012); *see also Belliveau v. Barco, Inc.*, 987 F.3d 122, 133 (5th Cir. 2021) ("courts 'determine whether a[n] [attorney-client] contract can be implied using an objective standard ... and ... do not consider [the parties'] unstated, subjective beliefs'") (quoting *Span Enterprises v. Wood*, 274 S.W.3d 854, 858 (Tex. App. 2008)); *In re DISH Network, LLC*, 528 S.W.3d 177, 185 (Tex. App. 2017) ("A court cannot consider a client's or attorney's unspoken subjective beliefs about the relationship").

[35] *See, e.g.*, *Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex. 1988).

[36] *Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 623 (Tex. App. 1993).

39.    The parallels between the *Thompson* case and the present Motion for Leave are instructive. The court in *Thompson* explained that "the record indicates that V & E's involvement with the trust itself was in representing one of the trustees, Johnson. [A written retention agreement existed between V&E and Johnson only.] Although a fiduciary relationship may exist between the beneficiary of a trust and a trustee, under the facts presented here, no fiduciary relationship exists between the beneficiary of a trust and the attorney representing a trust."[37] Here, the attorney-client relationship between PSZJ and Highland certainly created a fiduciary duty running from PSZJ to Highland but not to Highland's general partner (Strand) or the general partner's owner (Mr. Dondero).

40.    The Proposed Complaint's single count for breach of fiduciary duty fails because it is predicated entirely on the existence of an attorney-client relationship between Movants and PSZJ. Movants' unstated, subjective belief—which is contrary to all the documentary evidence and their inconsistent conduct—is insufficient, as a matter of law, to create an attorney-client relationship.

**D.    Texas Law Does Not Permit Plaintiffs to a Recast Malpractice Claim as a Fiduciary Duty Claim Simply to Avoid the Shorter Malpractice Claim Statute of Limitations**

41.    Even if Movants could allege a colorable claim for breach of fiduciary duty (they can't), Texas law prohibits clients from "fracturing" a malpractice claim into an additional breach of fiduciary duty claim. Yet that is exactly what Movants attempt here for the transparent and legally improper purpose of avoiding the applicable statute of limitations.[38]

---

[37] *Id.* at 623–24.

[38] The Proposed Complaint contains this self-serving provision:

> In the alternative, Plaintiffs specifically plead that all limitations periods (i) have been tolled during the bankruptcy period due to the inability to assert certain claims; (ii) tolled during the applicable discovery period during which Plaintiffs could not, in the exercise of reasonable diligence, discover the true nature of Pachulski's wrongdoing and/or (iii) equitably tolled.

42.    "Legal malpractice is not the only cause of action under which a client can recover from her attorney. Texas law, however, does not permit a plaintiff to divide or fracture her legal malpractice claims into additional causes of action."[39] When a plaintiff's claim for breach of fiduciary duty is based on the same operative facts giving rise to a malpractice claim, Texas law does not permit the fiduciary duty claim to proceed when the malpractice claim cannot. "Breach of fiduciary duty by an attorney most often involves the attorney's failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing personal interests over the client's interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations."[40] Here, Movants base their breach of fiduciary duty claim entirely on PSZJ's alleged conflict of interest. But, as the Court in *Goffney* noted, these "allegations in support of [the] breach of fiduciary duty claim constitute no more than a claim for

---

Movants' argument that any statute of limitations should be equitably tolled because they "could not, in the exercise of reasonable diligence, discover the true nature of Pachulski's wrongdoing" is absurd. "[E]quitable tolling requires (1) that the plaintiff pursued his rights diligently and (2) some **extraordinary circumstances** stood in his way." *Martin v. Grehn,* 546 F. App'x. 415, 420 (5th Cir. 2013) (emphasis added). Equitable tolling is applied only "sparingly." *Id.* (quoting *Granger v. Aaron's, Inc.,* 636 F.3d 708, 712 (5th Cir. 2012)). Movants bear the burden to justify a claim for equitable tolling. *Martin,* 546 F. App'x. at 420. Movants admit that they became adverse to Highland (and, by extension, Highland's counsel, PSZJ) soon after the Independent Board was appointed in January 2020, and litigation between Mr. Dondero and his affiliated parties commenced in or around October 2020, more than three years ago. The Plan was confirmed, divesting Movants of their interests in Highland in February 2021 and it became effective in August 2021. Movants will never be able to credibly explain why they waited years to assert their purported breach of fiduciary duty claim against PSZJ. Movants have no defense to the application of Texas's two-year statute of limitations on malpractice.

[39] *Goffney v. Rabson,* 56 S.W.3d 186, 190 (Tex. App. 2001). In *Goffney,* the court held that the plaintiff's breach of fiduciary duty claims were "essentially legal malpractice claims." Because plaintiff had previously lost the right to pursue malpractice, the plaintiff's breach of fiduciary duty claim was likewise no longer viable. *See also Cuyler v. Minns,* 60 S.W.3d 209, 216 (Tex. App. 2001) ("we find that Cuyler's claims for breach of contract and breach of fiduciary duty represent an impermissible fracturing of her claim for legal malpractice. 'If a lawyer's error or mistake is actionable, it should give rise to a cause of action for legal malpractice with one set of issues which inquire if the conduct or omission occurred, if that conduct or omission was malpractice and if so, subsequent issues on causation and damages.' *Sledge v. Alsup,* 759 S.W.2d 1, 2 (Tex. App. 1988); *see also Ross v. Arkwright Mut. Ins. Co.,* 892 S.W.2d 119, 133-134 (Tex. App.—Houston [14th Dist.] 1994, no writ) (discussing state's public policy against splintering claims). We find that all these claims arise from the same set of facts and circumstances as the alleged malpractice; since summary judgment on that alleged malpractice was proper, summary judgment on these claims was proper. *See Smith v. Heard,* 980 S.W.2d 693, 697 (Tex. App.—San Antonio 1998, pet. denied)").

[40] *Goffney*, 56 S.W.3d at 193.

legal malpractice …. [T]hese allegations do not amount to self-dealing, deception, or misrepresentations in Goffney's legal representation … to support a separate cause of action for breach of fiduciary duty."[41]

43.    Movants' proposed breach of fiduciary duty claim is based on the type of alleged conflict of interest that would give rise to a malpractice claim under Texas law and cannot be "fractured" into a breach of fiduciary duty claim, especially when the malpractice claim is no longer viable. The statute of limitations for legal malpractice in Texas is two years,[42] shorter than the four-year statute of limitations applicable to breach of fiduciary duty claims.[43] Just as the *Goffney* court would not permit the plaintiff to resurrect a lost malpractice claim by recasting it as a breach of fiduciary duty claim, Movants can't do so here. Even charitably pushing back the accrual of such a claim to March 2020, when Mr. Dondero's counsel filed its notice of appearance, the applicable statute of limitations for a malpractice claim against PSZJ would have expired in March 2022, almost two years ago.

## E.    The Colorability Standard Cannot Be Met

44.    Under this Court's precedent, to be "colorable" a claim must not be (i) without foundation, (ii) without merit, or (iii) pursued for an improper purpose such as harassment. The Proposed Complaint and the Motion for Leave fail to satisfy any of the elements.

---

[41] *Id.* at 194 (cleaned up) ("Because Rabson's breach of fiduciary duty claim is actually a claim for legal malpractice, which Rabson abandoned prior to trial, she may not recover for breach of fiduciary duty"). Similarly, one could suppose that a breach of fiduciary duty claim would lie if PSZJ had a conflict it didn't disclose to its client. But, here, Mr. Dondero necessarily knew of the alleged conflict because he was the party or controlled each party to the alleged conflict (*i.e.*, Mr. Dondero personally, Strand (which Mr. Dondero owned and controlled as President) and Highland (which Mr. Dondero controlled as President and CEO)), making PSZJ's supposed failure to disclose the conflict to the Bankruptcy Court would-be malpractice, not a breach of fiduciary duty.

[42] TEX. CIV. PRAC. & REM. CODE § 16.003(a).

[43] TEX. CIV. PRAC. & REM. CODE § 16.004.

45.    **The Claim Lacks Foundation.** Movants' claim for breach of fiduciary duty lacks any foundation. Movants neither offer any evidence nor even allege that evidence exists that approaches the type of objective indicia of a mutual belief in the formation of an attorney-client relationship's formation that Texas law requires. Rather, Movants allege nothing but the type of secret, subjective, uncommunicated belief Texas courts disregard. In contrast, the Retention Agreement, the Employment Application, and the Pomerantz Statements, reinforced by Movants' multi-year silence about any supposed attorney-client relationship with PSZJ even as it repeatedly represented Highland against Movants, establishes that such a relationship never existed.

46.    **The Claim Lacks Merit.** For the myriad reasons set forth above, Movants' claim also lacks any merit. A claim without merit is not colorable under this Court's established standard.

47.    **The Claim Is Being Pursued for an Improper Purpose.** The Motion for Leave is the latest in a series of attempts by Mr. Dondero and his affiliates to interfere with the implementation of the Plan,[44] this time seeking to undermine Highland's ability to rely on PSZJ to litigate with Mr. Dondero and his affiliates. Had Movants actually believed that PSZJ represented them beginning in September 2019—instead of inventing the claim that it did so years later as a pretext for more litigation—they would have raised these claims long ago. Rather, running out of options after having lost on almost every issue in the more than three dozen appeals to the District Court, and more than a dozen appeals to the Fifth Circuit Court of Appeals (so far), Mr. Dondero now has pivoted to attacking Highland's long-time counsel with a frivolous lawsuit alleging that PSZJ violated fiduciary duties to Mr. Dondero by advancing the estate's interests rather than Mr. Dondero's parochial desires. The Motion for Leave and the Proposed Complaint

---

[44] Such interference takes several forms, among them: (a) preventing distributions to real creditors (unlike Movants) by necessitating cash reserves for ceaseless defensive litigation against Mr. Dondero and his entities; (b) distracting Highland's and the Creditor Trust's management by making them frequent targets of frivolous litigation; and (c) reducing recoveries to creditors by forcing the Creditor Trust to pay lawyers to defend it at every turn.

are yet another attempt to harass Highland and interfere with the implementation of the Plan, precisely the improper motive this Court used as an example when articulating its Gatekeeper Colorability Test.

**F.      Movants Have Waived Their Claim**

48.      Waiver is the knowing and intentional relinquishment of a known right.[45] Movants claim to have had an implied attorney-client relationship with PSZJ as early as September 2019. Although Movants would have had to know of this supposed attorney-client relationship if it actually existed, they never asserted, disclosed it, or contended that a "conflict of interest" arose from PSZJ's continued representation of Highland against them. Movants had every incentive and opportunity to raise this issue in the chapter 11 case and with the EOUST, but stayed silent. As a result of this inaction, they have waived any conflict-of-interest claim arising from the alleged attorney-client relationship with PSZJ.

49.      After PSZJ started pursuing matters directly against Mr. Dondero on Highland's behalf in the fall of 2020—for example, by successfully seeking and obtaining two orders of contempt against him; deposing him multiple times; successfully objecting to every claim filed by him and entities he controls; and successfully suing him and his sister to collect on demand notes— Movants could have asserted their alleged rights arising from the supposed attorney-client relationship with PSZJ, and should have done so if such rights actually existed, but never did.

50.      Neither Movant objected to the Employment Application on the basis that it incorrectly stated that PSZJ represented no one in relation to this case but Highland—or on any other ground. Neither Movant challenged the veracity of the three Pomerantz Statements. Neither

---

[45] *See, e.g.*, *Van Den Broeke v. Bellanca Aircraft Corp.*, 576 F.2d 582, 584 (5th Cir. 1978).

Movant raised the supposed conflict of interest issue in objections to PSZJ's Final Fee Application or in the EOUST Letters.

51.     When a litigant is given ample and numerous opportunities to raise a ripe objection and doesn't, the objection is waived.[46] "It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right."[47] "A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion."[48] A party waives an objection to a former client conflict "where the delay in moving for disqualification is for an extended period of time, or where it is done on the eve of

---

[46] *See, e.g., Gidner v. JPMorganChase Bank N.A. (In re Gidner),* 2013 Bankr. LEXIS 4273, *26 (Bankr. N.D. Tex. October 11, 2013) ) (quoting *U.S. v. Shanbaum*, 10 F.3d 305, 310-11 (5th Cir. 1994)) ("If a party does not raise a claim or a defense in the prior action, that party thereby waives its right to raise that claim or defense in the subsequent action."); *First Union Commer. Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters.),* 81 F.3d 1310 (4th Cir. 1996) (citing *In re Simmons*, 765 F.2d 547 (5th Cir. 1985)) ("a confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditors alike … a party in interest's failure to object to a claim … prior to confirmation of the debtor's reorganization plan may operate as a waiver, barring the party from asserting the objection later"); *Dodson v. Huff (In re Smyth),* 2001 U.S. App. LEXIS 30164, *16, n.9 (5th Cir. August 7, 2001) (appellant "may well have waived" claims for malpractice by not raising them until well after a professional's final fee order was entered).

[47] *Cinco Bayous, LLC v. Samson Expl., LLC*, 2020 U.S. Dist. LEXIS 265754, at *24 (E.D. Tex. Aug. 17, 2020) (quoting *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, No. 2010 U.S. Dist. LEXIS 155196, at *5-6 (S.D. Tex. July 30, 2010); *Tr. Corp. of Mont. v. Piper Aircraft Corp*., 701 F.2d 85, 87 (9th Cir. 1983)); *see Cox v. Am. Cast Iron Pipe Co*., 847 F.2d 725, 729 (11th Cir. 1988) ("A failure to make a timely objection [to a violation of Canon 4] may also result in a waiver"); *In re Corrugated Container Antitrust Litig*., 659 F.2d 1341, 1348-49 (5th Cir. 1981) (a client may waive an objection regarding a violation of ABA Model Code of Professional Responsibility canons); *Redd v. Shell Oil Co.*, 518 F.2d 311, 315 (10th Cir. 1975) ("lawyer conflict of interest problems ought to be brought up long before the date of trial").

[48] *Cox*, 847 F.2d at 729 (quoting *Jackson v. J.C. Penney Co*., 521 F. Supp. 1032, 1034-35 (N.D. Ga. 1981)); *Pendergest-Holt*, 2010 U.S. Dist. LEXIS 155196, 2010 WL 11661414, at *5-6.

trial."[49] Timing matters. Waiting too long to claim malpractice—especially when circumstances (like the ones present here) tend to indicate that the delay is a strategic ploy—waives the claim.[50]

52.    Here, neither Mr. Dondero nor Strand ever contended that PSZJ had a conflict of interest until now, despite countless opportunities to do so if such conflict actually existed. Consequently, Movants long ago waived the sole claim asserted in the Proposed Complaint. That claim is, accordingly, without merit and not colorable.[51]

## G.    As a Result of the Allowance of the Final Fee Application by a Final Order, Movant's Claim Is Barred by *Res Judicata*

53.    The Proposed Complaint is barred by *res judicata* as a result of the allowance of the Final Fee Application by the Final Fee Order. *Res judicata* applies where "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."[52] "[T]he critical question for *res judicata*

---

[49] *Pendergest-Holt*, 2010 U.S. Dist. LEXIS 155196, 2010 WL 11661414, at *5-6 (quoting *Abney v. Wal-Mart*, 984 F. Supp. 526, 530 (E.D. Tex. 2007)) (plaintiff waived claim after waiting one year after learning of potential conflict before filing motion to disqualify; motion filed one month before trial)); *Microsoft Corp. v. Commonwealth Sci. & Indus.*, No. 2007 U.S. Dist. LEXIS 91550, 2007 WL 4376104 at *9 (E.D. Tex. Dec. 13, 2007) (waiver appropriate when movant waited two years to file motion to disqualify after it knew or should have known about [a conflict of interest], and even waited six months after movant claims that [the] conflict [of interest] arose).

[50] *Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 832 (Fed. Cir. 1988) (waiver appropriate "when a motion to disqualify is used in an abusive manner as part of litigation tactics").

[51] Movants can show no damages in any regard. The October 2 Memo advised Highland (and, of course, Mr. Dondero in his capacity as Highland's CEO and ultimate decision-maker) of certain risks of filing chapter 11 that Mr. Dondero now assert as the basis for his damages. Mr. Dondero cannot contend that he was damaged because "Pachulski neither disclosed nor counseled Plaintiffs that the interests of HCMLP might become adverse to Plaintiffs in the future" (Motion for Leave at 11) when the October 2 Memo summarized the exact risks that Mr. Dondero claims caused his harm. ***Further, regardless of what happened to Highland, Mr. Dondero had no direct economic interest in the estate and Strand has only an infinitesimally small and deeply subordinated economic interest***. Unless Mr. Dondero is willing to finally admit that he was Highland's alter ego, he cannot allege that the loss of Highland caused him any harm; he had no direct interest in it.

[52] *Houston Pro. Towing Ass'n v City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) (internal quotations omitted); *see also Comer v. Murphy Oil USA*, 718 F.3d 460, 467 (5th Cir. 2013) (same); *Dodson*, 2001 U.S. App. LEXIS 30164, at *5 (citing *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 386 (5th Cir. 2000)) (same).

purposes is whether the party could or should have asserted the claim in the earlier proceeding."[53] All elements of *res judicata* are satisfied here.

54.     **Identical Parties/Privity.** At the time of the Fee Hearing, Mr. Dondero controlled Strand and NexPoint. NexPoint objected to the Final Fee Application. There is privity.[54] Moreover, Movants were also parties-in-interest in Highland's chapter 11 case and could have objected to PSZJ's fees on their own behalf.[55]

55.     **Jurisdiction/Final Judgment.** This Court indisputably had core jurisdiction to issue the Final Fee Order, and it was a final judgment on the merits of the Final Fee Application.[56]

56.     **Same Claim.** To determine whether a claim is the "same claim," the Fifth Circuit applies "the transactional test of the Restatement (Second) of Judgments. The critical issue is … whether the two actions under consideration are based on 'the same nucleus of operative facts.'"[57] As in *Osherow*, this Court allowed PSZJ's fees under § 330.[58] "The compensation allowable under [§ 330] is subject to the provisions of sections 326, 328, and 329…."[59] Section 328(c) requires denial of fees if the professional is not "a disinterested person, or represent[ed] … an interest

---

[53] *Osherow*, 200 F.3d at 383.

[54] *See, e.g., Sacks v. Tex. S. Univ.*, 83 F.4th 340, 345-46 (5th Cir. 2023) (finding privity "(1) where the non-party is a successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit").

[55] *Dodson*, 2001 U.S. App. LEXIS 30164 at *1-3, 5-6 (finding *all* creditors barred by *res judicata* from subsequently bringing malpractice claims against an estate professional when they failed to object at the final fee hearing). Strand's senior officers, including Mr. Ellington and Mr. Waterhouse (through their personal counsel Baker McKenzie), Mr. Dondero (through his counsels Stinson and DLA Piper), and Strand itself (through its counsel DLA Piper, including Ms. Ruhland) were all served with the Final Fee Application via the Court's ECF system on October 8, 2021.

[56] *See* 28 U.S.C. § 157(a); 11 U.S.C. § 330.

[57] *Osherow*, 200 F.3d at 386 (citations omitted).

[58] *Id.* (finding that a state court malpractice claim against an estate professional was barred by *res judicata* because § 330 required a determination as to the quality of services provided).

[59] 3 COLLIER ON BANKRUPTCY ¶ 330.01.

adverse to the estate ….”[60] Movants' allegations of conflict of interest and resulting claims for breach of fiduciary duty thus arose from the "same nucleus of operative facts" as the matters necessarily adjudicated at the Fee Hearing.

57.    Finally, Movants "could and should" have asserted their claim that they had an attorney-client relationship with PSZJ that might give rise to a conflict of interest on its part in opposition to the Final Fee Application. Movants knew of PSZJ's alleged conflict at the time of the Fee Hearing—*all* allegations arose well before then[61]—and, like in *Osherow*, Movants could have fully litigated their alleged claim at the Fee Hearing.[62]

58.    Movants, through NexPoint, objected to PSZJ's fees at the Fee Hearing but said nothing about an alleged attorney-client relationship or conflict of interest. Now, two years later and after their appeals regarding the Final Fee Order have been exhausted, Movants seek to pry open a back door to object to PSZJ's fees again. Movants are barred from doing so by *res judicata*.

---

[60] 11 U.S.C. § 328(c); *see also In re Digerati Techs., Inc.*, 537 B.R. 317, 369 (Bankr. S.D. Tex. 2015) ("In the Fifth Circuit, failure to make required disclosures to a bankruptcy court can be grounds for total denial of a fee application …. Indeed, in *Delta Oil*, the Fifth Circuit denied all fees after finding that the professional failed to disclose an interest that would have been disqualifying").

[61] In fact, PSZJ included in the Final Fee Application a summary of the very actions alleged in the Proposed Complaint to have harmed Movants as further justification for the requested fee award.

[62] *Osherow*, 200 F.3d at 389-90 (finding that the fee hearing could have been converted to an adversary to adjudicate the malpractice claims or otherwise stayed to allow the malpractice claim to be adjudicated); *see also Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 659, at *20-21 (Bankr. N.D. Tex. Mar. 11, 2022) (recognizing *Osherow* "barred claims that could have been asserted at a fee hearing").

# IV. CONCLUSION

59.     For the reasons stated above, the sole claim underlying the Proposed Complaint and the Motion for Leave is not colorable and should not be permitted to proceed under the Plan's gatekeeper provision. PSZJ respectfully requests that the Court deny the Motion for Leave and grant PSZJ any additional relief regarding the Motion for Leave that the Court deems just and proper under the circumstances.

Dated: December 26, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

By: */s/ Jeffrey N. Pomerantz*
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email:      jpomerantz@pszjlaw.com
               jmorris@pszjlaw.com
               gdemo@pszjlaw.com
               jkroop@pszjlaw.com
               hwinograd@pszjlaw.com

*Counsel for Pachulski Stang Ziehl & Jones LLP*

4890-0760-2582, v. 17