# EXHIBIT 1

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| HUNTER MOUNTAIN INVESTMENT TRUST | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A.No. _____ |
| v. | ) |
| | ) |
| JAMES P. SEERY, JR. | ) |
| | ) |
| Defendant. | ) |

## <u>COMPLAINT TO REMOVE THE TRUSTEE</u>

Plaintiff, Hunter Mountain Investment Trust ("HMIT"), by and through its undersigned counsel, hereby brings the following Complaint seeking the removal of Defendant James P. Seery, Jr. as Trustee of the Highland Claimant Trust (the "Claimant Trust") pursuant to 12 *Del. C.* § 3327(1), (3)(b), and/or (3)(c). In support, HMIT respectfully states as follows:

## I.      PARTIES

1.      Plaintiff HMIT is a Delaware statutory trust that was formerly the largest equity holder in Highland Capital Management, L.P. (the "Debtor"), holding a 99.5% limited partnership interest. HMIT is now the largest holder of a Contingent Trust Interest in the Claimant Trust pursuant to the terms of the Claimant Trust Agreement ("**CTA**").[1]

---

[1] *See* **Exhibit 1**.

CORE/3529447.0003/185353235.11

2.      Defendant James P. Seery, Jr. ("Mr. Seery or Seery") is an individual citizen and resident of the State of New York. Mr. Seery may be served with process at 100 Crescent Court, Suite 1805, Dallas, Texas 75201. Mr. Seery acts as the Claimant Trustee under the CTA and as Trust Administrator of the Indemnity Subtrust as described herein.  Mr. Seery may be served with process pursuant to 10 *Del. C.* § 3114 because he serves as the trustee of a Delaware statutory trust.

## II.     JURISDICTION

3.      This Court has jurisdiction over this matter pursuant to 10 *Del. C.* § 341 and 12 *Del. C.* § 3327.

## III.    STANDING

4.      HMIT seeks to have this Court remove Mr. Seery as Claimant Trustee of the Claimant Trust pursuant to 12 *Del. C.* § 3327. HMIT has standing as Plaintiff in this proceeding because it is a beneficiary within the meaning of Delaware trust law and, at a minimum, a contingent beneficiary under the terms of the Claimant Trust.

## IV.    FACTS

### A.     The Claimant Trust Agreement

5.      In a chapter 11 bankruptcy proceeding in the Bankruptcy Court for the Northern District of Texas, the Debtor filed and the Bankruptcy Court confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified)* (*In re Highland Capital Management LP,* Case No. 19-34054-sgj11 in the

CORE/3529447.0003/185353235.11

United States Bankruptcy Court for the Northern District of Texas, Doc. 1943 at Ex. A) (the "**Plan**").

6.     Pursuant to the Plan, assets of the bankruptcy estate of the Debtor were transferred to the Claimant Trust.

7.     The CTA identifies different "classes" of trust interests. In particular, Class 8 interests were distributed to Holders of Allowed Class 8 General Unsecured Claims; Class 9 interests were distributed to Holders of Allowed Class 9 Subordinated Claims; Class 10 interests were distributed to Holders of Allowed Class 10 Class B/C Limited Partnership Interests; and Class 11 interests were distributed to Holders of Allowed Class 11 Class A Limited Partnership Interests.

8.     The CTA directs Seery, as Claimant Trustee, "to litigate and settle Claims in Class 8 and Class 9." (CTA at ¶ 2.3(b)(ii).)

9.     After Class 8 and Class 9 interest holders are paid in full, the CTA directs Seery, as Claimant Trustee, to file with the Bankruptcy Court a "GUC Payment Certification." (CTA at ¶ 5.1(c).)

10.    As described in the CTA, Class 10 and Class 11 interests are "Contingent Trust Interests," meaning they will not "vest" under the terms of the CTA until Class 8 and Class 9 interest holders are paid in full and the Claimant Trustee files the GUC Payment Certification. (CTA at ¶¶ 1.1(m) and 5.1(c).).

CORE/3529447.0003/185353235.11

11.     Among other things, the CTA requires Mr. Seery to pay the remaining Class 8 and 9 claims in full and file the GUC Certification, thereby "vesting" the Class 10 and 11 Equity Interests under the terms of the CTA. (CTA at ¶¶ 1.1(h), 1.1(aa), and 5.1.) In addition, he has the duty to do so timely and "not unduly prolong the duration of the Claimant Trust." (CTA at ¶¶ 2.2(b), 3.2(a), and 3.3(a).)

12.     The Claimant Trust expressly does not indemnify parties for acts which are determined by order a court of competent jurisdiction to constitute willful fraud, willful misconduct, or gross negligence. (CTA at ¶ 8.2.)

**B.     The Indemnity Subtrust**

13.     Months after confirmation of the chapter 11 Plan and creation of the Claimant Trust, the Bankruptcy Court authorized the creation of the Indemnity Subtrust.  The Indemnity Subtrust was created to provide a source of conditional indemnity, in lieu of liability insurance coverage, to parties identified as "Indemnified Parties" in Section 8.2 of the CTA, including Mr. Seery and the Claimant Trust Oversight Board to the extent they otherwise qualify under the terms of the CTA. According to the terms of the motion filed with the bankruptcy court seeking to create the Indemnity Subtrust, Mr. Seery placed himself in the position of Trust Administrator of the Indemnity Subtrust (to whom the trustee of the Indemnity Subtrust answers). Accordingly, Mr. Seery has exercised sole control of both the

Claimant Trust and Indemnity Subtrust with respect to all matters concerning indemnity.

14.    Mr. Seery has an irresolvable conflict of interest whereby he has exclusive control over the Indemnity Subtrust—to the detriment of the Class 8 and 9 Claimants, and the Class 10 and 11 Equity Interests. In such position, Mr. Seery enjoys power in his sole and absolute discretion to direct administration of all aspects of the Indemnity Subtrust for his own benefit, and all matters relating to indemnity with respect to the Claimant Trust.

15.    The sole conditional beneficiaries of the Indemnity Subtrust are the Indemnified Parties as defined in Section 8.2 of the Claimant Trust Agreement, including Seery himself and the Claimant Trust Oversight Board.

**C.    The Claimant Trust Has Sufficient Assets to Pay Class 8 and 9 Interest Holders**

16.    Based on a consolidated balance sheet filed on July 6, 2023, the Claimant Trust has about $250 million in assets (of which $180 million is cash) and only about $126 million in Class 8 and 9 claims.

CORE/3529447.0003/185353235.11

**Highland Claimant Trust**
**Summarized Consolidated Balance Sheet [1]**
**As of May 31, 2023**
**The accompanying notes are integral to understanding this balance sheet**
**(Estimated and unaudited, $ in millions)**

| | Balance per books | | adjustments (see notes) | | Adjusted balance |
|---|---|---|---|---|---|
| **Assets** | | | | | |
| Cash and equivalents | $ | 13 | $ | - | $ 13 |
| Disputed claims reserve [2] | | 12 | | - | 12 |
| Other restricted cash | | 12 | | - | 12 |
| Investments [3] | | 118 | | (12) [4] | 106 |
| Notes receivable, net [4] | | 86 | | (83) [4] | 3 |
| Other assets | | 6 | | - | 6 |
| **Total assets** | $ | 247 | $ | (95) | $ 152 |
| | | | | | |
| **Liabilities** | | | | | |
| Secured and other debt | $ | - | $ | - | $ - |
| Distribution payable [2] | | 12 | | - | 12 |
| Additional indemnification reserves | | - | | 90 [5] | 90 |
| Other liabilities | | 15 | | 13 [5] | 28 |
| **Total liabilities [5]** | $ | 27 | $ | 103 | $ 130 |
| | | | | | |
| Book/adjusted book equity (see accompanying notes) [6] | | 220 | | (198) | 22 |
| | | | | | |
| **Total liabilities and book/adjusted book equity** | $ | 247 | $ | (95) | $ 152 |
| | | | | | |
| **Supplemental Info: [7]** | | | | | |
| Sum of remaining allowed Class 8 Trust Beneficiaries, excluding interest | $ | 27 | | | |
| Sum of remaining allowed Class 9 Trust Beneficiaries, excluding interest | | 99 | | | |
| Sum of face amount of pending Class 8/9 potential Trust Beneficiaries, excluding interest | | 13 | | | |
| Sub-total | $ | 139 | | | |

17.    Notably, the Claimant Trust's balance sheet assets do not include a fully cash-funded at least $35 million indemnity account (reportedly now $50 million) that presumably may be used to pay creditors to the extent it is not consumed by the estate's professionals. (*See Notice of Filing of Current Balance Sheet of the Highland Claimant Trust,* Dkt. 3872 at Ex. A, Note 1.)[2] To reduce the Claimant Trust's book value, the Debtor purports to add "non-book" adjustments to the balance sheet. One such adjustment gives zero asset value to the notes payable by alleged affiliates of Jim Dondero. (*See id.* at Ex. A.) However, $70 million of those notes are fully bonded by cash deposited in the registry of the district court. *See* Case No. 3:31-cv-00881-X (N.D. Tex.), *Order Granting Joint Agreed Emergency Motion*

---

[2] *See* **Exhibit 2**.

*for Order Approving Stipulation for the Bonding of Judgments and Stays of Executions Pending Appeals* [Dkt. 149] and *Notices of Bonding* [Dkts. 151, 152, and 160-162.[3]

18.    Additionally, Mr. Seery declared a supplemental "indemnity account" now holding approximately $90 million, on top of the $35 (or $50) million cash indemnity reserve, for the benefit of the Indemnified Parties (including Mr. Seery).

19.    Were it not for the inappropriate $125 million (or more) indemnity reserve, Debtor's creditors could and should have been paid, the estate closed and the residual returned to former equity months ago.

20.    As a practical matter, the Claimant Trust could pay the Class 8 and 9 claims in full with interest, Mr. Seery could file the GUC Certification, and the Equity interests, including Plaintiff's, would fully "vest" under the terms of the CTA. All of these steps could be, and indeed, should have been, completed without any interference with the Indemnity Sub-Trust or Indemnity Trust.

### D.    Mr. Seery Refuses to Pay Class 8 and 9 Interest Holders, and thereby Seeks to Prevent HMIT's Class 10 Interests from Vesting, to Advance His Own Self-Interest.

21.    As a result of Mr. Seery's roles as both Claimant Trustee and Trust Administrator of the Indemnity Subtrust, Mr. Seery is determined to hold the assets of the Claimant Trust "hostage" by creating an indemnity reserve and/or funding the

---

[3] *See* **Exhibit 3**.

Indemnity Subtrust to solely benefit the Indemnified Parties, including himself personally.

22.     Mr. Seery's use of the Claimant Trust Asset's to build an indemnity "wall" for his own benefit rather than paying off the Class 8 and 9 claims, reflects an attempt to avoid "vesting" of equity Classes 10 and 11 under the CTA, of which HMIT is the largest interest holder. Such conduct is adverse to the interests of the Beneficiaries and the Contingent Beneficiaries of the Claimant Trust, including HMIT.

23.     Mr. Seery's serving as both the Claimant Trustee and as the Trust Administrator of the Indemnity Subtrust therefore creates an irresolvable conflict of interest.

24.     Seery has duties to the Claimant Trust Beneficiaries which include, without limitation: a) paying the remaining Class 8 and 9 claims in full, b) filing the GUC Certification, and c) vesting the Class 10 and 11 Equity Interests under the terms of the CTA. (CTA at ¶¶ 1.1(h), 1.1(aa), and 5.1.) In addition, Mr. Seery has the duty to do so timely and "not unduly prolong the duration of the Claimant Trust." (CTA at ¶¶ 2.2(b), 3.2(a), and 3.3(a).)

25.     But, because Mr. Seery is a conditionally Indemnified Party, he self-servingly chooses essentially to use assets of the Claimant Trust to both fund a cash reserve to the Indemnity Subtrust, reportedly now totaling $50 million, and on top

of that, create an additional "indemnity reserve" of some $90 million in cash in the Claimant Trust. Meanwhile, Mr. Seery continues to collect substantial income in his capacity as Claimant Trustee rather than winding up the estate.

26.     Simply put, Seery has chosen to dedicate assets of the Claimant Trust to erect an "indemnity wall" in front of himself instead of performing his remaining duties as the Claimant Trustee.

27.     *De facto*, but for Mr. Seery's deliberate failure to pay the remaining Class 8 and 9 claims in full with interest from the liquid assets in the Trust, the Class 10 and 11 Equity Holders are Claimant Trust Beneficiaries.

28.     Notwithstanding that creditor constituencies voted to support, and the Bankruptcy Court approved, the Plan, understanding that there would be a partially independent, five-member Oversight Board supervising the monetization and distribution of estate assets, that contemplated governance structure has long since been ignored and has failed to safeguard the Claimant Trust. The representations in the Plan, the findings by the Bankruptcy Court, and the belief of the Fifth Circuit that Mr. Seery's conduct as Claimant Trustee would be affirmatively overseen to assure that the Plan would be fully performed, are – at least as to the appropriate use of funds and indemnification -- all false.

CORE/3529447.0003/185353235.11

### E.  Mr. Seery's Refusal to Administer the CTA Has Created Hostility between Mr. Seery and the Beneficiaries

29.   The Claimant Trust, of which Mr. Seery is Trustee, owns the limited partnership interests in the Reorganized Debtor.[4]

30.   In the United States District Court for the Northern District of Texas, Highland Capital Management, L.P. ("HCMLP"), the Reorganized Debtor, filed a *Motion to Deem the Dondero Entities Vexatious Litigants and for Related Relief*, (Dist. Ct. Case No. 3:21-cv-00881-X, Dkt. No. 136) and filed a Memorandum of Law (*Id.* at Dkt. No. 137) in support thereof.

31.   In the Memorandum of Law, the Reorganized Debtor (under the control of the Claimant Trust), defines "Dondero Entities" as including HMIT (Movant herein) in footnote 1, page 1. The Memorandum of Law declares that, "The Dondero Entities—all of which are dominated and controlled by or acting in concert with Dondero, HCMLP's co-founder and ousted Chief Executive Officer—are engaged in a coordinated litigation strategy spanning nearly three years to wear down HCMLP and its management and undermine HCMLP's confirmed Plan." (*Id.*, p. 1.) The Memorandum further states, "Thereafter, directly and through the Dondero Entities, he began interfering with the management of the estate, threatening HCMLP employees, challenging nearly every action taken to further HCMLP's

---

[4] *Memorandum Opinion* [Dkt. No. 3903], at page 11.

reorganization, commencing new (and frivolous) litigation against HCMLP and its management both insider and outside of Bankruptcy Court…" (*Id.* at p. 2.)

32.    In particular, with respect to HMIT, the reorganized Debtor's, Memorandum states, "[s]eparately, in March 2023, HMIT sought leave to sue HCMLP for allegedly breaching its fiduciary duty and other obligations to HMIT— a prepetition equity holder…. However, HMIT's putative complaint is emblematic of the Dondero Entities' unceasing litigation--…" (*Id.* at ¶ 30, p. 26.)  Ironically, the Memorandum was wrong:  HMIT's referenced motion sought leave to bring derivative claims **on behalf of HCMLP**.

33.    Mr. Seery's hostility to Dondero is also well documented in hearing testimony, depositions, and declarations Mr. Seery has provided since October of 2020.[5]

---

[5] *See* Highland Capital Management, L.P.'s Memorandum of Law in Support of its Motion to Deem the Dondero Entities Vexatious Litigants and for Related Relief, Case No. 21-00881 (N.D. Tex.), Dkt. 137 (wherein the Reorganized Debtor (under the control of the Claimant Trust), defines "Dondero Entities" as including HMIT (Movant herein) at fn. 1; states "The Dondero Entities—all of which are dominated and controlled by or acting in concert with Dondero, HCMLP's co-founder and ousted Chief Executive Officer—are engaged in a coordinated litigation strategy spanning nearly three years to wear down HCMLP and its management and undermine HCMLP's confirmed Plan." *Id.*, at ¶ 1.; "Thereafter, directly and through the Dondero Entities, he began interfering with the management of the estate, threatening HCMLP employees, challenging nearly every action taken to further HCMLP's reorganization, commencing new (and frivolous) litigation against HCMLP and its management both insider and outside of Bankruptcy Court…" *Id.* at ¶ 4; "Separately, in March 2023, HMIT sought leave to sue HCMLP for allegedly breaching its fiduciary duty and other obligations to HMIT—a prepetition equity holder…. However, HMIT's putative complaint is emblematic of the Dondero Entities' unceasing litigation--…" *Id.* at ¶ 30); Dec. 14, 2020 Depo. Tr. at 37:22-25 ("He has an interest in sticking his fingers in virtually everything but not providing any value.  That's pretty consistent."); Aug. 4, 2021 Hr'g Tr. at 66:15-18 ("We wanted to make sure we had a clean, fast transaction.  And based upon our dealings with the Dondero entities, we didn't think we could possibly have that."); June 2, 2023 Depo. Tr. at 113:17-20 ("… I don't think this was a complicated case at all.  I think this could have been easily resolved.  And with normal commercial actors, it would have been.").

34. Based on the above, there can be no question that Mr. Seery (a) is overtly hostile to Dondero, (b) contends that Dondero controls HMIT, and (c) is hostile to HMIT directly. Such hostility is well beyond mere discord.

## V. CAUSES OF ACTION

35. Pursuant to 12 *Del. C.* § 3327, an "officeholder," including a trustee "may be removed in accordance with the terms of the governing instrument." 12 *Del. C.* § 3327. Additionally, "the Court of Chancery may remove an officeholder on the Court's own initiative or on petition of a trustor, another officeholder, or beneficiary" in any of five circumstances:

1) ***The officeholder has committed a breach of trust; or***
2) ***The continued service of the officeholder substantially impairs the administration of the trust***; or
3) The court, having due regard for the expressed intention of the trustor and the best interests of the beneficiaries, determines that notwithstanding the absence of a breach of trust, there exists:
a) A substantial change in circumstances;
b) ***Unfitness, unwillingness or inability of the officeholder to administer the trust or perform its duties properly; or***
c) ***Hostility between the officeholder and beneficiaries or other officeholders that threatens the efficient administration of the trust.***

12 Del. C. § 3327 (emphasis added).

CORE/3529447.0003/185353235.11

## Count I
### (Removal of Seery for Breach of the Duty of Trust)

36.    Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs.

37.    As Claimant Trustee, Mr. Seery owes duties to the Claimant Trust Beneficiaries to pay the remaining Class 8 and 9 claims in full and file the GUC Certification, thereby vesting the Class 10 and 11 Equity Interests under the terms of the CTA. (CTA at ¶¶ 1.1(h), 1.1(aa), and 5.1.) In addition, he has the duty to do so timely and "not unduly prolong the duration of the Claimant Trust." (CTA at ¶¶ 2.2(b), 3.2(a), and 3.3(a).)

38.    Mr. Seery also has a duty of loyalty and may not act in his own self-interest to the detriment of the Claimant Trust.

39.    Mr. Seery has engaged in self-dealing and otherwise breached his duty of loyalty by refusing to pay the Class 8 and 9 Claims in full with interest and refusing to file the GUC Payment Certification in an effort to prevent Class 10 and 11 equity interests from "vesting" under the terms of the CTA, in order to create a "wall" of indemnity for his own benefit while continuing to collect professional fees.

40.    Mr. Seery's conduct constitutes a breach of the duty of loyalty and a breach of trust warranting Mr. Seery's removal.

CORE/3529447.0003/185353235.11

## Count II
### (Removal of Mr. Seery for Impairment of the Administration of the Trust)

41.    Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs.

42.    The administration of the CTA requires payment to the remaining Class 8 and 9 creditors and the filing of the GUC Certification.

43.    The Claimant Trust has more than sufficient funds to pay the remaining Class 8 and 9 creditors with interest. Nevertheless, Mr. Seery refuses to do so.

44.    By refusing to pay the Class 8 and 9 creditors, thereby preventing the Class 10 and 11 equity interests from "vesting" under the terms of the CTA, despite the Claimant Trust having ample money to do so, Mr. Seery is substantially impairing the administration of the Trust, warranting his removal.

## Count III

### (Removal of Mr. Seery for Unwillingness to Administer the Trust)

45.    Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs.

46.    The administration of the CTA requires payment to the remaining Class 8 and 9 creditors and the filing of the GUC Certification.

47.    The Claimant Trust has more than sufficient funds to pay the remaining Class 8 and 9 creditors with interest. Nevertheless, Mr. Seery refuses to do so.

CORE/3529447.0003/185353235.11

48.     By refusing to pay the Class 8 and 9 creditors, thereby preventing the

Class 10 and 11 equity interests from "vesting" under the terms of the CTA, despite

the Claimant Trust having ample money to do so, Mr. Seery is necessarily unwilling

to administer the trust, warranting his removal.

**Count IV**
**(Removal of Mr. Seery because his Continued Services Substantially**
**Impairs the Administration of the Trust)**

49.     Plaintiff re-alleges and incorporates the allegations contained in the

preceding paragraphs.

50.     Mr. Seery's dual roles as Claimant Trustee and Indemnity Subtrust

Administrator creates an irreconcilable conflict of interest.

51.     As Claimant Trustee, Mr. Seery has duties to the Claimant Trust

Beneficiaries to timely pay the remaining Class 8 and 9 claims, file the GUC

Certification, and "vest" the Class 10 and 11 Equity Interests under the terms of the

CTA.

52.     However, Mr. Seery, as an Indemnified Party and as Indemnity Subtrust

Administrator, is instead using assets of the Claimant Trust to fund a $50 million

cash reserve to the Indemnity Subtrust and create an additional $90 million

"indemnity reserve."

CORE/3529447.0003/185353235.11

53.     Mr. Seery's choice to pursue creation of an "indemnity wall" as Indemnity Subtrust Administrator rather than perform his duties as Claimant Trustee substantially impairs the administration of the trust, warranting his removal.

<div align="center">

**Count V**

**(Removal of Mr. Seery due to Hostility
that Threatens Administration of the Trust)**

</div>

54.     Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs.

55.     The hostility between Mr. Seery and the beneficiaries does not merely "threaten" the efficient administration of the Claimant Trust, it has in fact led to Mr. Seery refusing to administer the Claimant Trust at all, warranting Mr. Seery's removal.

<div align="center">

**VI.    PRAYER FOR RELIEF**

</div>

WHEREFORE, Plaintiff HMIT respectfully requests that this Court:

(i) remove James P. Seery, Jr. as Claimant Trustee for the Highland Claimant Trust;

(ii) appoint a neutral and professional successor trustee that is not indemnified by the assets of the Claimant Trust;

(iii) award Plaintiff all costs and attorneys' fees against Defendant pursuant to 12 *Del. C.* § 3584; and

<div align="center">16</div>

(iv) grant Plaintiff any and all other relief, at law or in equity, to which it is

entitled.

| Dated: January __, 2024 | BAYARD, P.A. |
|---|---|
| | _____ |
| | Stephen B. Brauerman (#4952) |
| | 600 N. King St., Suite 400 |
| | Wilmington, Delaware 19801 |
| | (302) 655-5000 |
| | |
| | Attorneys for Plaintiff Hunter Mountain Investment Trust |

17

# EXHIBIT 1

*EXECUTION VERSION*

# CLAIMANT TRUST AGREEMENT

This Claimant Trust Agreement, effective as of August 11, 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among Highland Capital Management, L.P. (as debtor and debtor-in-possession, the "Debtor"), as settlor, and James P. Seery, Jr., as trustee (the "Claimant Trustee"), and Wilmington Trust, National Association, a national banking association ("WTNA"), as Delaware trustee (in such capacity hereunder, and not in its individual capacity, the "Delaware Trustee," and together with the Debtor and the Claimant Trustee, the "Parties") for the benefit of the Claimant Trust Beneficiaries entitled to the Claimant Trust Assets.

# RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on February 22, 2021, pursuant to the *Findings of Fact and Order Confirming Plan of Reorganization for the Debtor* [Docket No. 1943] (the "Confirmation Order");

WHEREAS, this Agreement, including all exhibits hereto, is the "Claimant Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Claimant Trust Assets are to be transferred to the Claimant Trust (each as defined herein) created and evidenced by this Agreement so that (i) the Claimant Trust Assets can be held in a trust for the benefit of the Claimant Trust Beneficiaries entitled thereto in accordance with Treasury Regulation Section 301.7701-4(d) for the objectives and purposes set forth herein and in the Plan; (ii) the Claimant Trust Assets can be monetized; (iii) the Claimant Trust will transfer Estate Claims to the Litigation Sub-Trust to be prosecuted, settled, abandoned, or resolved as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement, for the benefit of the Claimant Trust; (iv) proceeds of the Claimant Trust Assets, including Estate Claims, may be distributed to the Claimant Trust Beneficiaries[2] in accordance with the Plan; (v) the Claimant Trustee can resolve

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The confirmed Plan included certain amendments filed on February 1, 2021. *See Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Docket No. 1875, Exh. B.

[2] For the avoidance of doubt, and as set forth in the Plan, Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests will be Claimant Trust Beneficiaries only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest in accordance with the terms and conditions set forth herein and in the Plan.

Disputed Claims as set forth herein and in the Plan; and (vi) administrative services relating to the activities of the Claimant Trust and relating to the implementation of the Plan can be performed by the Claimant Trustee.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor, the Claimant Trustee, and the Delaware Trustee have executed this Agreement for the benefit of the Claimant Trust Beneficiaries entitled to share in the Claimant Trust Assets and, at the direction of such Claimant Trust Beneficiaries as provided for in the Plan.

TO HAVE AND TO HOLD unto the Claimant Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust Beneficiaries, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Claimant Trust in accordance with Article IX hereof, this Claimant Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Claimant Trust Assets are to be strictly held and applied by the Claimant Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1    Certain Definitions.  Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan. For all purposes of this Agreement, the following terms shall have the following meanings:

(a)    "Acis" means collectively, Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

(b)    "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(c)    "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, with respect to a Member, or to the extent applicable, the Claimant Trustee, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(d)    "Claimant Trust Agreement" means this Agreement.

(e)    "<u>Claimant Trustee</u>" means James P. Seery, Jr., as the initial "Claimant Trustee" hereunder and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of this Agreement.

(f)    "<u>Claimant Trust</u>" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(g)    "<u>Claimant Trust Assets</u>" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

(h)    "<u>Claimant Trust Beneficiaries</u>" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest at the federal judgment rate in accordance with the terms and conditions set forth herein, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

(i)    "<u>Claimant Trust Expense Cash Reserve</u>" means $[•] million in Cash to be funded pursuant to the Plan into a bank account of the Claimant Trust on or before the Effective Date for the purpose of paying Claimant Trust Expenses in accordance herewith.

(j)    "<u>Claimant Trust Expenses</u>" means the costs, expenses, liabilities and obligations incurred by the Claimant Trust and/or the Claimant Trustee in administering and conducting the affairs of the Claimant Trust, and otherwise carrying out the terms of the Claimant Trust and the Plan on behalf of the Claimant Trust, including without any limitation, any taxes owed by the Claimant Trust, and the fees and expenses of the Claimant Trustee and professional persons retained by the Claimant Trust or Claimant Trustee in accordance with this Agreement.

(k)    "<u>Committee Member</u>" means a Member who is/was also a member of the Creditors' Committee.

(l)    "<u>Conflicted Member</u>" has the meaning set forth in Section 4.6(c) hereof.

(m)    "<u>Contingent Trust Interests</u>" means the contingent interests in the Claimant Trust to be distributed to Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests in accordance with the Plan.

(n)    "<u>Creditors' Committee</u>" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Case, comprised of Acis, Meta-e Discovery, the Redeemer Committee and UBS.

3

(o)    "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(p)    "Delaware Trustee" has the meaning set forth in the introduction hereof.

(q)    "Disability" means as a result of the Claimant Trustee's or a Member's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Claimant Trustee or the Member, as applicable, the Claimant Trustee or such Member has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(r)    "Disinterested Members" has the meaning set forth in Section 4.1 hereof.

(s)    "Disputed Claims Reserve" means the reserve account to be opened by the Claimant Trust on or after the Effective Date and funded in an initial amount determined by the Claimant Trustee [(in a manner consistent with the Plan and with the consent of a simple majority of the Oversight Board)] to be sufficient to pay Disputed Claims under the Plan.

(t)    "Employees" means the employees of the Debtor set forth in the Plan Supplement.

(u)    "Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(v)    "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(w)    "Equity Trust Interests" has the meaning given to it in Section 5.1(c) hereof.

(x)    "Exchange Act" means the Securities Exchange Act of 1934, as amended.

(y)    "General Unsecured Claim Trust Interests" means interests in the Claimant Trust to be distributed to Holders of Allowed Class 8 General Unsecured Claims (including Disputed General Unsecured Claims that are subsequently Allowed) in accordance with the Plan.

(z)    "GUC Beneficiaries" means the Claimant Trust Beneficiaries who hold General Unsecured Claim Trust Interests.

(aa)    "GUC Payment Certification" has the meaning given to it in Section 5.1(c) hereof.

(bb)    "HarbourVest" means, collectively, HarbourVest 2017 Global Fund, L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment, L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners, L.P.

(cc)     "Investment Advisers Act" means the Investment Advisers Act of 1940, as amended.

(dd)     "Investment Company Act" means the Investment Company Act of 1940, as amended.

(ee)     "Litigation Sub-Trust" means the sub-trust created pursuant to the Litigation Sub-Trust Agreement, which shall hold the Claimant Trust Assets that are Estate Claims and investigate, litigate, and/or settle the Estate Claims for the benefit of the Claimant Trust.

(ff)     "Litigation Sub-Trust Agreement" means the litigation sub-trust agreement to be entered into by and between the Claimant Trustee and Litigation Trustee establishing and setting forth the terms and conditions of the Litigation Sub-Trust and governing the rights and responsibilities of the Litigation Trustee.

(gg)     "Litigation Trustee" means Marc S. Kirschner, and any successor Litigation Trustee that may be appointed pursuant to the terms of the Litigation Sub-Trust Agreement, who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

(hh)     "Managed Funds" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to the Plan; *provided, however,* that the Highland Select Equity Fund, L.P. (and its direct and indirect subsidiaries) will not be considered a Managed Fund for purposes hereof.

(ii)     "Material Claims" means the Claims asserted by UBS, Patrick Hagaman Daugherty, Integrated Financial Associates, Inc., and the Employees.

(jj)     "Member" means a Person that is member of the Oversight Board.

(kk)     "New GP LLC" means the general partner of the Reorganized Debtor.

(ll)     "Oversight Board" means the board comprised of five (5) Members established pursuant to the Plan and Article III of this Agreement to oversee the Claimant Trustee's performance of his duties and otherwise serve the functions set forth in this Agreement and those of the "Claimant Trust Oversight Committee" described in the Plan.  Subject to the terms of this Agreement, the initial Members of the Oversight Board shall be: (i) Eric Felton, as representative of the Redeemer Committee; (ii) Josh Terry, as representative of Acis; (iii) Elizabeth Kozlowski, as representative of UBS; (iv) Paul McVoy, as representative of Meta-e Discovery; and (v) David Pauker.

(mm)     "Plan" has the meaning set forth in the Recitals hereof.

(nn)     "Privileges" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Employee Claims, including, without limitation, to,

DOCS_NY:43843.3 36027/002

attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence; <u>provided</u>, <u>however</u>, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(oo)    "<u>PSZJ</u>" means Pachulski Stang Ziehl & Jones LLP.

(pp)    "<u>Redeemer Committee</u>" means the Redeemer Committee of the Highland Crusader Fund.

(qq)    "<u>Registrar</u>" has the meaning given to it in Section 5.3(a) hereof.

(rr)    "<u>Reorganized Debtor Assets</u>" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust.  For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

(ss)    "<u>Securities Act</u>" means the Securities Act of 1933, as amended.

(tt)    "<u>Subordinated Beneficiaries</u>" means the Claimant Trust Beneficiaries who hold Subordinated Claim Trust Interests.

(uu)    "<u>Subordinated Claim Trust Interests</u>" means the subordinated interests in the Claimant Trust to be distributed to Holders of Allowed Class 9 Subordinated Claims in accordance with the Plan.

(vv)    "<u>TIA</u>" means the Trust Indenture Act of 1939, as amended.

(ww)    "<u>Trust Interests</u>" means collectively the General Unsecured Claim Trust Interests, Subordinated Claim Trust Interests, and Equity Trust Interests.

(xx)    "<u>Trust Register</u>" has the meaning given to it in Section 5.4(b) hereof.

(yy)    "<u>Trustees</u>" means collectively the Claimant Trustee and Delaware Trustee, however, it is expressly understood and agreed that the Delaware Trustee shall have none of the duties or liabilities of the Claimant Trustee.

(zz)    "<u>UBS</u>" means collectively UBS Securities LLC and UBS AG London Branch.

(aaa)    "<u>WilmerHale</u>" Wilmer Cutler Pickering Hale & Dorr LLP.

1.2    <u>General Construction</u>.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all

6

cases where they would apply. "Includes" and "including" are not limiting and "or" is not exclusive. References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement. Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars. References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3     Incorporation of the Plan. The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

## ARTICLE II.
## ESTABLISHMENT OF THE CLAIMANT TRUST

2.1     Creation of Name of Trust.

(a)     The Claimant Trust is hereby created as a statutory trust under the Delaware Statutory Trust Act and shall be called the "Highland Claimant Trust." The Claimant Trustee shall be empowered to conduct all business and hold all property constituting the Claimant Trust Assets in such name in accordance with the terms and conditions set forth herein.

(b)     The Trustees shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in their capacity as Trustees, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2     Objectives.

(a)     The Claimant Trust is established for the purpose of satisfying Allowed General Unsecured Claims and Allowed Subordinated Claims (and only to the extent provided herein, Allowed Class A Limited Partnership Interests and Class B/C Limited Partnership Interests) under the Plan, by monetizing the Claimant Trust Assets transferred to it and making distributions to the Claimant Trust Beneficiaries. The Claimant Trust shall not continue or engage in any trade or business except to the extent reasonably necessary to monetize and distribute the Claimant Trust Assets consistent with this Agreement and the Plan and act as sole member and manager of New GP LLC. The Claimant Trust shall provide a mechanism for (i) the monetization of the Claimant Trust Assets and (ii) the distribution of the proceeds thereof, net of all claims, expenses, charges, liabilities, and obligations of the Claimant Trust, to the Claimant Trust Beneficiaries in accordance with the Plan. In furtherance of this distribution objective, the Claimant Trust will, from time to time, prosecute and resolve objections to certain Claims and Interests as provided herein and in the Plan.

(b)     It is intended that the Claimant Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations. In furtherance of this objective, the Claimant Trustee shall, in his business judgment,

7

make continuing best efforts to (i) dispose of or monetize the Claimant Trust Assets and resolve Claims, (ii) make timely distributions, and (iii) not unduly prolong the duration of the Claimant Trust, in each case in accordance with this Agreement.

2.3    <u>Nature and Purposes of the Claimant Trust</u>.

(a)    The Claimant Trust is organized and established as a trust for the purpose of monetizing the Claimant Trust Assets and making distributions to Claimant Trust Beneficiaries in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d).  The Claimant Trust shall retain all rights to commence and pursue all Causes of Action of the Debtor other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement, and (ii) Causes of Action constituting Reorganized Debtor Assets, if any, which shall be commenced and pursued by the Reorganized Debtor at the direction of the Claimant Trust as sole member of New GP LLC pursuant to the terms of the Reorganized Limited Partnership Agreement.  The Claimant Trust and Claimant Trustee shall have and retain, and, as applicable, assign and transfer to the Litigation Sub-Trust and Litigation Trustee, any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Claim as of the Petition Date.  On and after the date hereof, in accordance with and subject to the Plan, the Claimant Trustee shall have the authority to (i) compromise, settle or otherwise resolve, or withdraw any objections to Claims against the Debtor, <u>provided</u>, <u>however</u>, the Claimant Trustee shall only have the authority to compromise or settle any Employee Claim with the unanimous consent of the Oversight Board and in the absence of unanimous consent, any such Employee Claim shall be transferred to the Litigation Sub-Trust and be litigated, comprised, settled, or otherwise resolved exclusively by the Litigation Trustee and (ii) compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, which authority may be shared with or transferred to the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement.  For the avoidance of doubt, the Claimant Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Claims other than Estate Claims, the Employee Claims, and those Claims constituting Reorganized Debtor Assets.

(b)    The Claimant Trust shall be administered by the Claimant Trustee, in accordance with this Agreement, for the following purposes:

(i)    to manage and monetize the Claimant Trust Assets in an expeditious but orderly manner with a view towards maximizing value within a reasonable time period;

(ii)    to litigate and settle Claims in Class 8 and Class 9 (other than the Employee Claims, which shall be litigated and/or settled by the Litigation Trustee if the Oversight Board does not unanimously approve of any proposed settlement of such Employee Claim by the Claimant Trustee) and any of the Causes of Action included in the Claimant Trust Assets (including any cross-claims and counter-claims); <u>provided</u>, <u>however,</u> that Estate Claims transferred to the Litigation Sub-Trust shall be litigated and settled by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement;

     (iii) to distribute net proceeds of the Claimant Trust Assets to the Claimant Trust Beneficiaries;

     (iv) to distribute funds from the Disputed Claims Reserve to Holders of Trust Interests or to the Reorganized Debtor for distribution to Holders of Disputed Claims in each case in accordance with the Plan from time to time as any such Holder's Disputed Claim becomes an Allowed Claim under the Plan;

     (v) to distribute funds to the Litigation Sub-Trust at the direction the Oversight Board;

     (vi) to serve as the limited partner of, and to hold the limited partnership interests in, the Reorganized Debtor;

     (vii) to serve as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner;

     (viii) to oversee the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement, in its capacity as the sole member and manager of New GP LLC pursuant to the terms of the New GP LLC Documents, all with a view toward maximizing value in a reasonable time in a manner consistent with the Reorganized Debtor's fiduciary duties as investment adviser to the Managed Funds; and

     (ix) to perform any other functions and take any other actions provided for or permitted by this Agreement and the Plan, and in any other agreement executed by the Claimant Trustee.

   2.4 <u>Transfer of Assets and Rights to the Claimant Trust; Litigation Sub-Trust</u>.

     (a) On the Effective Date, pursuant to the Plan, the Debtor shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Claimant Trust Assets and related Privileges held by the Debtor to the Claimant Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan and this Agreement. To the extent certain assets comprising the Claimant Trust Assets, because of their nature or because such assets will accrue or become transferable subsequent to the Effective Date, and cannot be transferred to, vested in, and assumed by the Claimant Trust on such date, such assets shall be considered Reorganized Debtor Assets, which may be subsequently transferred to the Claimant Trust by the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement after such date.

     (b) On or as soon as practicable after the Effective Date, the Claimant Trust shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims and related Privileges held by the Claimant Trust to the Litigation Sub-Trust Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan, this Agreement, and the Litigation Sub-Trust Agreement. Following the transfer of such Privileges, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(c)     On or before the Effective Date, and continuing thereafter, the Debtor or Reorganized Debtor, as applicable, shall provide (i) for the Claimant Trustee's and Litigation Trustee's reasonable access to all records and information in the Debtor's and Reorganized Debtor's possession, custody or control, (ii) that all Privileges related to the Claimant Trust Assets shall transfer to and vest exclusively in the Claimant Trust (except for those Privileges that will be transferred and assigned to the Litigation Sub-Trust in respect of the Estate Claims), and (iii) subject to Section 3.12(c), the Debtor and Reorganized Debtor shall preserve all records and documents (including all electronic records or documents), including, but not limited to, the Debtor's file server, email server, email archiving system, master journal, SharePoint, Oracle E-Business Suite, Advent Geneva, Siepe database, Bloomberg chat data, and any backups of the foregoing, until such time as the Claimant Trustee, with the consent of the Oversight Board and, if pertaining to any of the Estate Claims, the Litigation Trustee, directs the Reorganized Debtor, as sole member of its general partner, that such records are no longer required to be preserved.  For the purposes of transfer of documents, the Claimant Trust or Litigation Sub-Trust, as applicable, is an assignee and successor to the Debtor in respect of the Claimant Trust Assets and Estate Claims, respectively, and shall be treated as such in any review of confidentiality restrictions in requested documents.

(d)     Until the Claimant Trust terminates pursuant to the terms hereof, legal title to the Claimant Trust Assets (other than Estate Claims) and all property contained therein shall be vested at all times in the Claimant Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Claimant Trust Assets to be vested in the Claimant Trustee, in which case title shall be deemed to be vested in the Claimant Trustee, solely in his capacity as Claimant Trustee.  For purposes of such jurisdictions, the term Claimant Trust, as used herein, shall be read to mean the Claimant Trustee.

2.5     Principal Office.  The principal office of the Claimant Trust shall be maintained by the Claimant Trustee at the following address:  100 Crescent Court, Suite 1850, Dallas, Texas 75201.

2.6     Acceptance.  The Claimant Trustee accepts the Claimant Trust imposed by this Agreement and agrees to observe and perform that Claimant Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.7     Further Assurances.  The Debtor, Reorganized Debtor, and any successors thereof will, upon reasonable request of the Claimant Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Claimant Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Claimant Trustee the powers, instruments or funds in trust hereunder.

2.8     Incidents of Ownership.  The Claimant Trust Beneficiaries shall be the sole beneficiaries of the Claimant Trust and the Claimant Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

# ARTICLE III.
# THE TRUSTEES

3.1    <u>Role</u>.  In furtherance of and consistent with the purpose of the Claimant Trust, the Plan, and this Agreement, the Claimant Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Claimant Trustee with respect to the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries and maintain, manage, and take action on behalf of the Claimant Trust.

3.2    <u>Authority</u>.

(a)    In connection with the administration of the Claimant Trust, in addition to any and all of the powers enumerated elsewhere herein, the Claimant Trustee shall, in an expeditious but orderly manner, monetize the Claimant Trust Assets, make timely distributions and not unduly prolong the duration of the Claimant Trust.  The Claimant Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Claimant Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.  The Claimant Trustee will monetize the Claimant Trust Assets with a view toward maximizing value in a reasonable time.

(b)    The Claimant Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Claims and Causes of Action that are part of the Claimant Trust Assets, other than the Estate Claims transferred to the Litigation Sub-Trust, as the Claimant Trustee determines is in the best interests of the Claimant Trust; <u>provided</u>, <u>however</u>, that if the Claimant Trustee proposes a settlement of an Employee Claim and does not obtain unanimous consent of the Oversight Board of such settlement, such Employee Claim shall be transferred to the Litigation Sub-Trust for the Litigation Trustee to litigate.  To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Claims and Causes of Action prior to the Effective Date, on the Effective Date the Claimant Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "[Claimant Trustee], not individually but solely as Claimant Trustee for the Claimant Trust, et al. v. [Defendant]".

(c)    Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Claimant Trustee shall have the power and authority to:

(i)    solely as required by Section 2.4(d), hold legal title to any and all rights of the Claimant Trust and Beneficiaries in or arising from the Claimant Trust Assets, including collecting and receiving any and all money and other property belonging to the Claimant Trust and the right to vote or exercise any other right with respect to any claim or interest relating to the Claimant Trust Assets in any case under the Bankruptcy Code and receive any distribution with respect thereto;

DOCS_NY:43843.3 36027/002

(ii)    open accounts for the Claimant Trust and make distributions of Claimant Trust Assets in accordance herewith;

(iii)    as set forth in Section 3.11, exercise and perform the rights, powers, and duties held by the Debtor with respect to the Claimant Trust Assets (other than Estate Claims), including the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting as a representative of the Debtor's Estate with respect to the Claimant Trust Assets, including with respect to the sale, transfer, or other disposition of the Claimant Trust Assets;

(iv)    settle or resolve any Claims in Class 8 and Class 9 other than the Material Claims and any Equity Interests;

(v)    sell or otherwise monetize any publicly-traded asset for which there is a marketplace and any other assets (other than the Other Assets (as defined below)) valued less than or equal to $3,000,000 (over a thirty-day period);

(vi)    upon the direction of the Oversight Board, fund the Litigation Sub-Trust on the Effective Date and as necessary thereafter;

(vii)    exercise and perform the rights, powers, and duties arising from the Claimant Trust's role as sole member of New GP LLC, and the role of New GP LLC, as general partner of the Reorganized Debtor, including the management of the Managed Funds;

(viii)    protect and enforce the rights to the Claimant Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(ix)    obtain reasonable insurance coverage with respect to any liabilities and obligations of the Trustees, Litigation Trustee, and the Members of the Oversight Board solely in their capacities as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise.  The cost of any such insurance shall be a Claimant Trust Expense and paid by the Claimant Trustee from the Claimant Trust Assets;

(x)    without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Claimant Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Claimant Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Claimant Trustee shall be Claimant Trust Expenses and paid by the Claimant Trustee from the Claimant Trust Assets;

(xi)    retain and approve compensation arrangements of an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Claimant Trust as may be required by this Agreement, the Plan, the Confirmation Order, and applicable laws and as may be reasonably and appropriate in Claimant Trustee's discretion. Subject to the foregoing, the Claimant Trustee may commit the Claimant Trust to, and shall pay,

12

such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid by the Claimant Trustee from Claimant Trust Assets;

(xii)    prepare and file (A) tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (B) an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity, or (C) any periodic or current reports that may be required under applicable law;

(xiii)    prepare and send annually to the Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Claimant Trust and its share of the Claimant Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

(xiv)    to the extent applicable, assert, enforce, release, or waive any attorney-client communication, attorney work product or other Privilege or defense on behalf of the Claimant Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Claimant Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xv)    subject to Section 3.4, invest the proceeds of the Claimant Trust Assets and all income earned by the Claimant Trust, pending any distributions in short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills;

(xvi)    request any appropriate tax determination with respect to the Claimant Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(xvii)    take or refrain from taking any and all actions the Claimant Trustee reasonably deems necessary for the continuation, protection, and maximization of the value of the Claimant Trust Assets consistent with purposes hereof;

(xviii)    take all steps and execute all instruments and documents necessary to effectuate the purpose of the Claimant Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder;

(xix)    exercise such other powers and authority as may be vested in or assumed by the Claimant Trustee by any Final Order;

(xx)    evaluate and determine strategy with respect to the Claimant Trust Assets, and hold, pursue, prosecute, adjust, arbitrate, compromise, release, settle or abandon the Claimant Trust Assets on behalf of the Claimant Trust; and

(xxi)    with respect to the Claimant Trust Beneficiaries, perform all duties and functions of the Distribution Agent as set forth in the Plan, including distributing Cash from

the Disputed Claims Reserve, solely on account of Disputed Class 1 through Class 7 Claims that were Disputed as of the Effective Date, but become Allowed, to the Reorganization Debtor such that the Reorganized Debtor can satisfy its duties and functions as Distribution Agent with respect to Claims in Class 1 through Class 7 (the foregoing subparagraphs (i)-(xxi) being collectively, the "Authorized Acts").

(d)    The Claimant Trustee and the Oversight Committee will enter into an agreement as soon as practicable after the Effective Date concerning the Claimant Trustee's authority with respect to certain other assets, including certain portfolio company assets (the "Other Assets").

(e)    The Claimant Trustee has the power and authority to act as trustee of the Claimant Trust and perform the Authorized Acts through the date such Claimant Trustee resigns, is removed, or is otherwise unable to serve for any reason.

3.3    Limitation of Authority.

(a)    Notwithstanding anything herein to the contrary, the Claimant Trust and the Claimant Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Claimant Trust Assets as are required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement, or (iv) cause New GP LLC to cause the Reorganized Debtor to take any action in contravention of the Plan, Plan Documents or the Confirmation Order.

(b)    Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Claimant Trustee must receive the consent by vote of a simple majority of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 herein, in order to:

(i)    terminate or extend the term of the Claimant Trust;

(ii)    prosecute, litigate, settle or otherwise resolve any of the Material Claims;

(iii)    except otherwise set forth herein, sell or otherwise monetize any assets that are not Other Assets, including Reorganized Debtor Assets (other than with respect to the Managed Funds), that are valued greater than $3,000,000 (over a thirty-day period);

(iv)    except for cash distributions made in accordance with the terms of this Agreement, make any cash distributions to Claimant Trust Beneficiaries in accordance with Article IV of the Plan;

(v)    except for any distributions made in accordance with the terms of this Agreement, make distributions from the Disputed Claims Reserve to Holders of Disputed Claims after such time that such Holder's Claim becomes an Allowed Claim under the Plan;

DOCS_NY:43843.3 36027/002

(vi)     reserve or retain any cash or cash equivalents in an amount reasonably necessary to meet claims and contingent liabilities (including Disputed Claims and any indemnification obligations that may arise under Section 8.2 of this Agreement), to maintain the value of the Claimant Trust Assets, or to fund ongoing operations and administration of the Litigation Sub-Trust;

(vii)     borrow as may be necessary to fund activities of the Claimant Trust;

(viii)     determine whether the conditions under Section 5.1(c) of this Agreement have been satisfied such that a certification should be filed with the Bankruptcy Court;

(ix)     invest the Claimant Trust Assets, proceeds thereof, or any income earned by the Claimant Trust (for the avoidance of doubt, this shall not apply to investment decisions made by the Reorganized Debtor or its subsidiaries solely with respect to Managed Funds);

(x)     change the compensation of the Claimant Trustee;

(xi)     subject to ARTICLE X, make structural changes to the Claimant Trust or take other actions to minimize any tax on the Claimant Trust Assets; and

(xii)     retain counsel, experts, advisors, or any other professionals; provided, however, the Claimant Trustee shall not be required to obtain the consent of the Oversight Board for the retention of (i) PSZJ, WilmerHale, or Development Specialists, Inc. and (ii) any other professional whose expected fees and expenses are estimated at less than or equal to $200,000.

(c)     [Reserved.]

3.4     <u>Investment of Cash</u>.  The right and power of the Claimant Trustee to invest the Claimant Trust Assets, the proceeds thereof, or any income earned by the Claimant Trust, with majority approval of the Oversight Board, shall be limited to the right and power to invest in such Claimant Trust Assets only in Cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; provided, however that (a) the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("<u>IRS</u>") guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, (b) the Claimant Trustee may retain any Claimant Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly monetization or other disposition of such assets, and (c) the Claimant Trustee may expend the assets of the Claimant Trust (i) as reasonably necessary to meet contingent liabilities (including indemnification and similar obligations) and maintain the value of the assets of the Claimant Trust during the pendency of this Claimant Trust, (ii) to pay Claimant Trust Expenses (including, but not limited to, any taxes imposed on the Claimant Trust and reasonable attorneys' fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Claimant Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement).

15

3.5     Binding Nature of Actions.  All actions taken and determinations made by the Claimant Trustee in accordance with the provisions of this Agreement shall be final and binding upon any and all Beneficiaries.

3.6     Term of Service.  The Claimant Trustee shall serve as the Claimant Trustee for the duration of the Claimant Trust, subject to death, resignation or removal.

3.7     Resignation.  The Claimant Trustee may resign as Claimant Trustee of the Claimant Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Claimant Trustee shall continue to serve as Claimant Trustee after delivery of the Claimant Trustee's resignation until the proposed effective date of such resignation, unless the Claimant Trustee and a simple majority of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Claimant Trustee in accordance with Section 3.9 hereof becomes effective.

3.8     Removal.

(a)     The Claimant Trustee may be removed by a simple majority vote of the Oversight Board for Cause for Cause immediately upon notice thereof, or without Cause upon 60 days' prior written notice.  Upon the removal of the Claimant Trustee pursuant hereto, the Claimant Trustee will resign, or be deemed to have resigned, from any role or position he or she may have at New GP LLC or the Reorganized Debtor effective upon the expiration of the foregoing 60 day period unless the Claimant Trustee and a simple majority of the Oversight Board agree otherwise.

(b)     To the extent there is any dispute regarding the removal of a Claimant Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Claimant Trustee will continue to serve as the Claimant Trustee after his removal until the earlier of (i) the time when a successor Claimant Trustee will become effective in accordance with Section 3.9 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.9     Appointment of Successor.

(a)     Appointment of Successor.  In the event of a vacancy by reason of the death or Disability (in the case of a Claimant Trustee that is a natural person), dissolution (in the case of a Claimant Trustee that is not a natural person), or removal of the Claimant Trustee, or prospective vacancy by reason of resignation, a successor Claimant Trustee shall be selected by a simple majority vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Claimant Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Claimant Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Claimant Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Claimant Trust.  The successor Claimant Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the

16

vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Claimant Trustee.

(b)    <u>Vesting or Rights in Successor Claimant Trustee</u>.  Every successor Claimant Trustee appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trust, the exiting Claimant Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Claimant Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Claimant Trustee, except that the successor Claimant Trustee shall not be liable for the acts or omissions of the retiring Claimant Trustee.  In no event shall the retiring Claimant Trustee be liable for the acts or omissions of the successor Claimant Trustee.

(c)    <u>Interim Claimant Trustee</u>.  During any period in which there is a vacancy in the position of Claimant Trustee, the Oversight Board shall appoint one of its Members to serve as the interim Claimant Trustee (the "<u>Interim Trustee</u>") until a successor Claimant Trustee is appointed pursuant to Section 3.9(a).  The Interim Trustee shall be subject to all the terms and conditions applicable to a Claimant Trustee hereunder.  Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board merely by such Person's appointment as Interim Trustee.

3.10    <u>Continuance of Claimant Trust</u>.  The death, resignation, or removal of the Claimant Trustee shall not operate to terminate the Claimant Trust created by this Agreement or to revoke any existing agency (other than any agency of the Claimant Trustee as the Claimant Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Claimant Trustee.  In the event of the resignation or removal of the Claimant Trustee, the Claimant Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Claimant Trustee's capacity under this Agreement and the conveyance of the Claimant Trust Assets then held by the exiting Claimant Trustee to the successor Claimant Trustee; (ii) deliver to the successor Claimant Trustee all non-privileged documents, instruments, records, and other writings relating to the Claimant Trust as may be in the possession or under the control of the exiting Claimant Trustee, provided, the exiting Claimant Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Claimant Trustee and the cost of making such copies shall be a Claimant Trust Expense to be paid by the Claimant Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Claimant Trustee's obligations and functions by his successor, <u>provided</u> the fees and expenses of such assistance and cooperation shall be paid to the exiting Claimant Trustee by the Claimant Trust.  The exiting Claimant Trustee shall irrevocably appoint the successor Claimant Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Claimant Trustee is obligated to perform under this Section 3.10.

3.11    <u>Claimant Trustee as "Estate Representative"</u>.  The Claimant Trustee will be the exclusive trustee of the Claimant Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "<u>Estate Representative</u>") with respect to the Claimant

Trust Assets, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement; provided that all rights and powers as representative of the Estate pursuant to section 1123(b)(3)(B) shall be transferred to the Litigation Trustee in respect of the Estate Claims and the Employee Claims.  The Claimant Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Claimant Trust Assets, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order.  All actions, claims, rights or interest constituting Claimant Trust Assets are preserved and retained and may be enforced, or assignable to the Litigation Sub-Trust, by the Claimant Trustee as an Estate Representative.

    3.12    Books and Records.

        (a)    The Claimant Trustee shall maintain in respect of the Claimant Trust and the Claimant Trust Beneficiaries books and records reflecting Claimant Trust Assets in its possession and the income of the Claimant Trust and payment of expenses, liabilities, and claims against or assumed by the Claimant Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Claimant Trust and the requirements of Article VII herein.  Except as otherwise provided herein, nothing in this Agreement requires the Claimant Trustee to file any accounting or seek approval of any court with respect to the administration of the Claimant Trust, or as a condition for managing any payment or distribution out of the Claimant Trust Assets.

        (b)    The Claimant Trustee shall provide quarterly reporting to the Oversight Board and Claimant Trust Beneficiaries of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; provided, however, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.

        (c)    The Claimant Trustee may dispose some or all of the books and records maintained by the Claimant Trustee at the later of (i) such time as the Claimant Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Claimant Trust, or (ii) upon the termination and winding up of the Claimant Trust under Article IX of this Agreement; provided, however, the Claimant Trustee shall not dispose of any books and records related to the Estate Claims or Employee Claims without the consent of the Litigation Trustee.  Notwithstanding the foregoing, the Claimant Trustee shall cause the Reorganized Debtor and its subsidiaries to retain such books and records, and for such periods, as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

18

3.13    Compensation and Reimbursement; Engagement of Professionals.

(a)    Compensation and Expenses.

(i)    Compensation.  As compensation for any services rendered by the Claimant Trustee in connection with this Agreement, the Claimant Trustee shall receive compensation of $150,000 per month (the "Base Salary").  Within the first forty-five days following the Confirmation Date, the Claimant Trustee, on the one hand, and the Committee, if prior to the Effective Date, or the Oversight Board, if on or after the Effective Date, on the other, will negotiate go-forward compensation for the Claimant Trustee which will include (a) the Base Salary, (b) a success fee, and (c) severance.

(ii)    Expense Reimbursements.  All reasonable out-of-pocket expenses of the Claimant Trustee in the performance of his or her duties hereunder, shall be reimbursed as Claimant Trust Expenses paid by the Claimant Trust.

(b)    Professionals.

(i)    Engagement of Professionals.  The Claimant Trustee shall engage professionals from time to time in conjunction with the services provided hereunder.  The Claimant Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii)    Fees and Expenses of Professionals.  The Claimant Trustee shall pay the reasonable fees and expenses of any retained professionals as Claimant Trust Expenses.

3.14    Reliance by Claimant Trustee.  Except as otherwise provided herein, the Claimant Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Claimant Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Claimant Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein.  The Claimant Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning the Claimant Trust Assets, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15    Commingling of Claimant Trust Assets.  The Claimant Trustee shall not commingle any of the Claimant Trust Assets with his or her own property or the property of any other Person.

DOCS_NY:43843.3 36027/002

3.16    Delaware Trustee.

(a)    The Delaware Trustee shall have the limited power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Claimant Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Delaware Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement, in either case as may be directed in a writing delivered to the Delaware Trustee by the Claimant Trustee and upon which the Delaware Trustee shall be entitled to conclusively and exclusively rely; provided, however, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law.  The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law.  Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Claimant Trust. For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.  The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Claimant Trustee set forth herein.  The Delaware Trustee shall be one of the trustees of the Claimant Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Delaware Statutory Trust Act and for taking such actions as are required to be taken by a Delaware Trustee under the Delaware Statutory Trust Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to those expressly set forth in this Section 3.16 and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Claimant Trust, the other parties hereto or any beneficiary of the Claimant Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Agreement.

(b)    The Delaware Trustee shall serve until such time as the Claimant Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Claimant Trustee in accordance with the terms hereof.  The Delaware Trustee may resign at any time upon the giving of at least thirty (30) days' advance written notice to the Claimant Trustee; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Claimant Trustee in accordance with the terms hereof. If the Claimant Trustee does not act within such thirty (30) day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(c)    Upon the resignation or removal of the Delaware Trustee, the Claimant Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the

outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Delaware Statutory Trust Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Claimant Trustee and any undisputed fees, expenses and indemnity due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Agreement.

(d)     The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement. The Claimant Trust shall promptly advance and reimburse the Delaware Trustee for all reasonable out-of-pocket costs and expenses (including reasonable legal fees and expenses) incurred by the Delaware Trustee in connection with the performance of its duties hereunder.

(e)     WTNA shall not be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

(f)     Any corporation or association into which WTNA may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Delaware Trustee is a party, will be and become the successor Delaware Trustee under this Agreement and will have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

## ARTICLE IV.
## THE OVERSIGHT BOARD

4.1     <u>Oversight Board Members</u>.  The Oversight Board will be comprised of five (5) Members appointed to serve as the board of managers of the Claimant Trust, at least two (2) of which shall be disinterested Members selected by the Creditors' Committee (such disinterested members, the "<u>Disinterested Members</u>").  The initial Members of the Oversight Board will be representatives of Acis, the Redeemer Committee, Meta-e Discovery, UBS, and David Pauker. David Pauker and Paul McVoy, the representative of Meta-e Discovery, shall serve as the initial Disinterested Board Members; <u>provided</u>, <u>however</u>, that if the Plan is confirmed with the Convenience Class or any other convenience class supported by the Creditors' Committee, Meta-

21

E Discovery and its representative will resign on the Effective Date or as soon as practicable thereafter and be replaced in accordance with Section 4.10 hereof..

4.2    Authority and Responsibilities.

(a)    The Oversight Board shall, as and when requested by either of the Claimant Trustee and Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Claimant Trustee and Litigation Trustee as to the administration and management of the Claimant Trust and the Litigation Sub-Trust, as applicable, in accordance with the Plan, the Confirmation Order, this Agreement, and Litigation Sub-Trust Agreement (as applicable) and shall have the other responsibilities and powers as set forth herein.  As set forth in the Plan, the Confirmation Order, and herein, the Oversight Board shall have the authority and responsibility to oversee, review, and govern the activities of the Claimant Trust, including the Litigation Sub-Trust, and the performance of the Claimant Trustee and Litigation Trustee, and shall have the authority to remove the Claimant Trustee in accordance with Section 3.8 hereof or the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; provided, however, that the Oversight Board may not direct either Claimant Trustee and Litigation Trustee to act inconsistently with their respective duties under this Agreement (including without limitation as set in Section 4.2(e) below), the Litigation Sub-Trust Agreement, the Plan, the Confirmation Order, or applicable law.

(b)    The Oversight Board shall also (i) monitor and oversee the administration of the Claimant Trust and the Claimant Trustee's performance of his or her responsibilities under this Agreement, (ii) as more fully set forth in the Litigation Sub-Trust Agreement, approve funding to the Litigation Sub-Trust, monitor and oversee the administration of the Litigation Sub-Trust and the Litigation Trustee's performance of his responsibilities under the Litigation Sub-Trust Agreement, and (iii) perform such other tasks as are set forth herein, in the Litigation Sub-Trust Agreement, and in the Plan.

(c)    The Claimant Trustee shall consult with and provide information to the Oversight Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement to enable the Oversight Board to meet its obligations hereunder.

(d)    Notwithstanding any provision of this Agreement to the contrary, the Claimant Trustee shall not be required to (i) obtain the approval of any action  by the Oversight Board to the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is required to be taken by applicable law, the Plan, the Confirmation Order, or this Agreement or (ii) follow the directions of the Oversight Board to take any action the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is prohibited by applicable law the Plan, the Confirmation Order, or this Agreement.

(e)    Notwithstanding provision of this Agreement to the contrary, with respect to the activities of the Reorganized Debtor in its capacity as an investment adviser (and subsidiaries of the Reorganized Debtor that serve as general partner or in an equivalent capacity) to any Managed Funds, the Oversight Board shall not make investment decisions or otherwise participate

in the investment decision making process relating to any such Managed Funds, nor shall the Oversight Board or any member thereof serve as a fiduciary to any such Managed Funds. It is agreed and understood that investment decisions made by the Reorganized Debtor (or its subsidiary entities) with respect to Managed Funds shall be made by the Claimant Trustee in his capacity as an officer of the Reorganized Debtor and New GP LLC and/or such persons who serve as investment personnel of the Reorganized Debtor from time to time, and shall be subject to the fiduciary duties applicable to such entities and persons as investment adviser to such Managed Funds.

4.3     <u>Fiduciary Duties</u>.  The Oversight Board (and each Member in its capacity as such) shall have fiduciary duties to the Claimant Trust Beneficiaries consistent with the fiduciary duties that the members of the Creditors' Committee have to unsecured creditors and shall exercise its responsibilities accordingly; <u>provided</u>, <u>however</u>, that the Oversight Board shall not owe fiduciary obligations to any Holders of Class A Limited Partnership Interests or Class B/C Limited Partnership Interests until such Holders become Claimant Trust Beneficiaries in accordance with Section 5.1(c) hereof; <u>provided</u>, <u>further</u>, that the Oversight Board shall not owe fiduciary obligations to a Holder of an Equity Trust Interest if such Holder is named as a defendant in any of the Causes of Action, including Estate Claims, in their capacities as such, it being the intent that the Oversight Board's fiduciary duties are to maximize the value of the Claimant Trust Assets, including the Causes of Action. In all circumstances, the Oversight Board shall act in the best interests of the Claimant Trust Beneficiaries and in furtherance of the purpose of the Claimant Trust. Notwithstanding anything to the contrary contained in this Agreement, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.

4.4     <u>Meetings of the Oversight Board</u>.  Meetings of the Oversight Board are to be held as necessary to ensure the operation of the Claimant Trust but in no event less often than quarterly. Special meetings of the Oversight Board may be held whenever and wherever called for by the Claimant Trustee or any Member; <u>provided</u>, <u>however</u>, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice requirement being subject to any waiver by the Members in the minutes, if any, or other transcript, if any, of proceedings of the Oversight Board). Unless the Oversight Board decides otherwise (which decision shall rest in the reasonable discretion of the Oversight Board), the Claimant Trustee, and each of the Claimant Trustee's designated advisors may, but are not required to, attend meetings of the Oversight Board.

4.5     <u>Unanimous Written Consent</u>.  Any action required or permitted to be taken by the Oversight Board in a meeting may be taken without a meeting if the action is taken by unanimous written consents describing the actions taken, signed by all Members and recorded. If any Member informs the Claimant Trustee (via e-mail or otherwise) that he or she objects to the decision, determination, action, or inaction proposed to be made by unanimous written consent, the Claimant Trustee must use reasonable good faith efforts to schedule a meeting on the issue to be set within 48 hours of the request or as soon thereafter as possible on which all members of the Oversight Board are available in person or by telephone. Such decision, determination, action, or inaction must then be made pursuant to the meeting protocols set forth herein.

DOCS_NY:43843.3 36027/002

4.6    <u>Manner of Acting</u>.

(a)    A quorum for the transaction of business at any meeting of the Oversight Board shall consist of at least three Members (including no less than one (1) Disinterested Member); <u>provided</u> that if the transaction of business at a meeting would constitute a direct or indirect conflict of interest for the Redeemer Committee, Acis, and/or UBS, at least two Disinterested Members must be present for there to be a quorum.  Except as set otherwise forth herein, the majority vote of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Oversight Board except as otherwise required by law or as provided in this Agreement.  Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference, or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition of the place) for the holding hereof.  Any Member participating in a meeting by this means is deemed to be present in person at the meeting.  Voting (including on negative notice) may be conducted by electronic mail or individual communications by the applicable Trustee and each Member.

(b)    Any Member who is present and entitled to vote at a meeting of the Oversight Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Board, unless (i) such Member objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Oversight Board before its adjournment.  The right of dissent or abstention is not available to any Member of the Oversight Board who votes in favor of the action taken.

(c)    Prior to a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member shall report to the Oversight Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Trust Interests).  A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Claimant Trust shall be deemed a "<u>Conflicted Member</u>" who shall not be entitled to vote or take part in any action with respect to such matter or issue.  In the event of a Conflicted Member, the vote or action with respect to such matter or issue giving rise to such conflict shall be undertaken only by Members who are not Conflicted Members and, notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Oversight Board.

(d)    Each of Acis, the Redeemer Committee, and UBS shall be deemed "Conflicted Members" with respect to any matter or issue related to or otherwise affecting any of their respective Claim(s) (a "<u>Committee Member Claim Matter</u>").  A unanimous vote of the Disinterested Members shall be required to approve of or otherwise take action with respect to any

Committee Member Claim Matter and, notwithstanding anything herein to the contrary, the same shall be the act of the Oversight Board.

4.7    <u>Tenure of the Members of the Oversight Board</u>.  The authority of the Members of the Oversight Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Claimant Trust is terminated in accordance with Article IX hereof.  The Members of the Oversight Board will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 4.8 below, or removal pursuant to Section 4.9 below.

4.8    <u>Resignation</u>.  A Member of the Oversight Board may resign by giving prior written notice thereof to the Claimant Trustee and other Members.  Such resignation shall become effective on the earlier to occur of (i) the day that is 90 days following the delivery of such notice, (ii) the appointment of a successor in accordance with Section 4.10 below, and (iii) such other date as may be agreed to by the Claimant Trustee and the non-resigning Members of the Oversight Board.

4.9    <u>Removal</u>.  A majority of the Oversight Board may remove any Member for Cause or Disability.  If any Committee Member has its Claim disallowed in its entirety the representative of such entity will immediately be removed as a Member without the requirement for a vote and a successor will be appointed in the manner set forth herein.  Notwithstanding the foregoing, upon the termination of the Claimant Trust, any or all of the Members shall be deemed to have resigned.

4.10    <u>Appointment of a Successor Member</u>.

(a)    In the event of a vacancy on the Oversight Board (whether by removal, death, or resignation), a new Member may be appointed to fill such position by the remaining Members acting unanimously; <u>provided</u>, <u>however,</u> that any vacancy resulting from the removal, resignation, or death of a Disinterested Member may only be filled by a disinterested Person unaffiliated with any Claimant or constituency in the Chapter 11 Case; <u>provided</u>, <u>further,</u> that if an individual serving as the representative of a Committee Member resigns from its role as representative, such resignation shall not be deemed resignation of the Committee Member itself and such Committee Member shall have the exclusive right to designate its replacement representative for the Oversight Board.  The appointment of a successor Member will be further evidenced by the Claimant Trustee's filing with the Bankruptcy Court (to the extent a final decree has not been entered) and posting on the Claimant Trustee's website a notice of appointment, at the direction of the Oversight Board, which notice will include the name, address, and telephone number of the successor Member.

(b)    Immediately upon the appointment of any successor Member, the successor Member shall assume all rights, powers, duties, authority, and privileges of a Member hereunder and such rights and privileges will be vested in and undertaken by the successor Member without any further act.  A successor Member will not be liable personally for any act or omission of a predecessor Member.

(c)    Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trustee and other Members an instrument accepting the appointment

DOCS_NY:43843.3 36027/002

under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of a Member hereunder.

4.11    Compensation and Reimbursement of Expenses.    Unless determined by the Oversight Board, no Member shall be entitled to compensation in connection with his or her service to the Oversight Board; provided, however, that a Disinterested Member shall be compensated in a manner and amount initially set by the other Members and as thereafter amended from time to time by agreement between the Oversight Board and the Disinterested Member. Notwithstanding the foregoing, the Claimant Trustee will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of their duties hereunder (which shall not include fees, costs, and expenses of legal counsel).

4.12    Confidentiality.  Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Claimant Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member ("Confidential Trust Information"), except as otherwise required by law.  For the avoidance of doubt, a Member's Affiliates, employer, and employer's Affiliates (and collectively with such Persons' directors, officers, partners, principals and employees, "Member Affiliates") shall not be deemed to have received Confidential Trust Information solely due to the fact that a Member has received Confidential Trust Information in his or her capacity as a Member of the Oversight Board and to the extent that (a) a Member does not disclose any Confidential Trust Information to a Member Affiliate, (b) the business activities of such Member Affiliates are conducted without reference to, and without use of, Confidential Trust Information, and (c) no Member Affiliate is otherwise directed to take, or takes on behalf of a Member or Member Affiliate, any actions that are contrary to the terms of this Section 4.12.

## ARTICLE V.
## TRUST INTERESTS

5.1    Claimant Trust Interests.

(a)    General Unsecured Claim Trust Interests. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue General Unsecured Claim Trust Interests to Holders of Allowed Class 8 General Unsecured Claims (the "GUC Beneficiaries").  The Claimant Trustee shall allocate to each Holder of an Allowed Class 8 General Unsecured Claim a General Unsecured Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 8 Claim bears to the total amount of the Allowed Class 8 Claims. The General Unsecured Claim Trust Interests shall be entitled to distributions from the Claimant Trust Assets in accordance with the terms of the Plan and this Agreement.

(b)    Subordinated Claim Trust Interests.  On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue Subordinated Claim Trust Interests to Holders of Class 9 Subordinated Claims (the "Subordinated Beneficiaries").  The

DOCS_NY:43843.3 36027/002

Claimant Trustee shall allocate to each Holder of an Allowed Class 9 Subordinated Claim a Subordinated Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 9 Claim bears to the total of amount of the Allowed Class 9. The Subordinated Trust Interests shall be subordinated in right and priority to the General Unsecured Claim Trust Interests. The Subordinated Beneficiaries shall only be entitled to distributions from the Claimant Trust Assets after each GUC Beneficiary has been repaid in full with applicable interest on account of such GUC Beneficiary's Allowed General Unsecured Claim, and all Disputed General Unsecured Claims have been resolved, in accordance with the terms of the Plan and this Agreement.

(c)    Contingent Trust Interests. On the date hereof, or on the date such Interest becomes Allowed under the Plan, the Claimant Trust shall issue Contingent Interests to Holders of Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the "Equity Holders"). The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan. Contingent Trust Interests shall not vest, and the Equity Holders shall not have any rights under this Agreement, unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan and all Disputed Claims have been resolved (the "GUC Payment Certification"). Equity Holders will only be deemed "Beneficiaries" under this Agreement upon the filing of a GUC Payment Certification with the Bankruptcy Court, at which time the Contingent Trust Interests will vest and be deemed "Equity Trust Interests." The Equity Trust Interests shall be subordinated in right and priority to Subordinated Trust Interests, and distributions on account thereof shall only be made if and when Subordinated Beneficiaries have been repaid in full on account of such Subordinated Beneficiary's Allowed Subordinated Claim, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.

5.2    Interests Beneficial Only. The ownership of the beneficial interests in the Claimant Trust shall not entitle the Claimant Trust Beneficiaries to any title in or to the Claimant Trust Assets (which title shall be vested in the Claimant Trust) or to any right to call for a partition or division of the Claimant Trust Assets or to require an accounting. No Claimant Trust Beneficiary shall have any governance right or other wright to direct Claimant Trust activities.

5.3    Transferability of Trust Interests. No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected until (i) such action is unanimously approved by the Oversight Board, (ii) the Claimant Trustee and Oversight Board have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary to assure that any such disposition shall not cause the Claimant Trust to be subject to entity-level taxation for U.S. federal income tax purposes, and (iii) either (x) the Claimant Trustee and Oversight Board, acting unanimously, have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary or appropriate to assure that any such disposition shall not (a) require the Claimant Trust to comply with the registration and/or

27

reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act or (b) cause any adverse effect under the Investment Advisers Act, or (y) the Oversight Board, acting unanimously, has determined, in its sole and absolute discretion, to cause the Claimant Trust to become a public reporting company and/or make periodic reports under the Exchange Act (provided that it is not required to register under the Investment Company Act or register its securities under the Securities Act) to enable such disposition to be made.  In the event that any such disposition is allowed, the Oversight Board and the Claimant Trustee may add such restrictions upon such disposition and other terms of this Agreement as are deemed necessary or appropriate by the Claimant Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

5.4     Registry of Trust Interests.

(a)     Registrar.  The Claimant Trustee shall appoint a registrar, which may be the Claimant Trustee (the "Registrar"), for the purpose of recording ownership of the Trust Interests as provided herein.  The Registrar, if other than the Claimant Trustee, shall be an institution or person acceptable to the Oversight Board.  For its services hereunder, the Registrar, unless it is the Claimant Trustee, shall be entitled to receive reasonable compensation from the Claimant Trust as a Claimant Trust Expense.

(b)     Trust Register.  The Claimant Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time, a registry of the Claimant Trust Beneficiaries and the Equity Holders (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Claimant Trustee and the Registrar may prescribe.

(c)     Access to Register by Beneficiaries.  The Claimant Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Claimant Trustee, and in accordance with reasonable regulations prescribed by the Claimant Trustee, to inspect and, at the expense of the Claimant Trust Beneficiary make copies of the Trust Register, in each case for a purpose reasonable and related to such Claimant Trust Beneficiary's Trust Interest.

5.5     Exemption from Registration.  The Parties hereto intend that the rights of the Claimant Trust Beneficiaries arising under this Claimant Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.  The Oversight Board, acting unanimously, and Claimant Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Claimant Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.  The Trust Interests shall not have consent or voting rights or otherwise confer on the Claimant Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Claimant Trustee under this Agreement.

5.6     Absolute Owners.  The Claimant Trustee may deem and treat the Claimant Trust Beneficiary of record as determined pursuant to this Article 5 as the absolute owner of such Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

5.7     Effect of Death, Incapacity, or Bankruptcy.  The death, incapacity, or bankruptcy of any Claimant Trust Beneficiary during the term of the Claimant Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any of other Claimant Trust Beneficiary under this Agreement.

5.8     Change of Address.  Any Claimant Trust Beneficiary may, after the Effective Date, select an alternative distribution address by providing notice to the Claimant Trustee identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Claimant Trustee.  Absent actual receipt of such notice by the Claimant Trustee, the Claimant Trustee shall not recognize any such change of distribution address.

5.9     Standing.  No Claimant Trust Beneficiary shall have standing to direct the Claimant Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Claimant Trust Assets.  No Claimant Trust Beneficiary shall have any direct interest in or to any of the Claimant Trust Assets.

5.10    Limitations on Rights of Claimant Trust Beneficiaries.

(a)     The Claimant Trust Beneficiaries shall have no rights other than those set forth in this Agreement, the Confirmation Order, or the Plan (including any Plan Supplement documents incorporated therein).

(b)     In any action taken by a Claimant Trust Beneficiary against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, the prevailing party will be entitled to reimbursement of attorneys' fees and other costs; provided, however, that any fees and costs shall be borne by the Claimant Trust on behalf of any such Trustee or Member, as set forth herein.

(c)     A Claimant Trust Beneficiary who brings any action against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, may be required by order of the Bankruptcy Court to post a bond ensuring that the full costs of a legal defense can be reimbursed.  A request for such bond can be made by the Claimant Trust or by Claimant Trust Beneficiaries constituting in the aggregate at least 50% of the most senior class of Claimant Trust Interests.

(d)     Any action brought by a Claimant Trust Beneficiary must be brought in the United States Bankruptcy Court for the Northern District of Texas.  Claimant Trust Beneficiaries are deemed to have waived any right to a trial by jury

(e)     The rights of Claimant Trust Beneficiaries to bring any action against the Claimant Trust, a current or former Trustee, or current or former Member, in their capacity as such, shall not survive the final distribution by the Claimant Trust.

29

## ARTICLE VI.
## DISTRIBUTIONS

6.1    Distributions.

(a)    Notwithstanding anything to the contrary contained herein, the Claimant Trustee shall distribute to holders of Trust Interests at least annually the Cash on hand net of any amounts that (a) are reasonably necessary to maintain the value of the Claimant Trust Assets pending their monetization or other disposition during the term of the Claimant Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Claimant Trust Expenses and any other expenses incurred by the Claimant Trust (including, but not limited to, any taxes imposed on or payable by the Claimant Trustee with respect to the Claimant Trust Assets), (c) are necessary to pay or reserve for the anticipated costs and expenses of the Litigation Sub-Trust, (d) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Claimant Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses in such amounts and for such period of time as the Claimant Trustee determines, in good faith, may be necessary and appropriate, which determination shall not be subject to consent of the Oversight Board, may not be modified without the express written consent of the Claimant Trustee, and shall survive termination of the Claimant Trustee), (e) are necessary to maintain the Disputed Claims Reserve, and (f) are necessary to pay Allowed Claims in Class 1 through Class 7.  Notwithstanding anything to the contrary contained in this paragraph, the Claimant Trustee shall exercise reasonable efforts to make initial distributions within six months of the Effective Date, and the Oversight Board may not prevent such initial distributions unless upon a unanimous vote of the Oversight Board.  The Claimant Trustee may otherwise distribute all Claimant Trust Assets on behalf of the Claimant Trust in accordance with this Agreement and the Plan at such time or times as the Claimant Trustee is directed by the Oversight Board.

(b)    At the request of the Reorganized Debtor, subject in all respects to the provisions of this Agreement, the Claimant Trustee shall distribute Cash to the Reorganized Debtor, as Distribution Agent with respect to Claims in Class 1 through 7, sufficient to satisfy Allowed Claims in Class 1 through Class 7.

(c)    All proceeds of Claimant Trust Assets shall be distributed in accordance with the Plan and this Agreement.

6.2    Manner of Payment or Distribution.  All distributions made by the Claimant Trustee on behalf of the Claimant Trust to the Claimant Trust Beneficiaries shall be payable by the Claimant Trustee directly to the Claimant Trust Beneficiaries of record as of the twentieth (20th) day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3    Delivery of Distributions.  All distributions under this Agreement to any Claimant Trust Beneficiary shall be made, as applicable, at the address of such Claimant Trust Beneficiary (a) as set forth on the Schedules filed with the Bankruptcy Court or (b) on the books and records

DOCS_NY:43843.3 36027/002

of the Debtor or their agents, as applicable, unless the Claimant Trustee has been notified in writing of a change of address pursuant to Section 5.6 hereof.

6.4    <u>Disputed Claims Reserves</u>.  There will be no distributions under this Agreement or the Plan on account of Disputed Claims pending Allowance.  The Claimant Trustee will maintain a Disputed Claims Reserve as set forth in the Plan and will make distributions from the Disputed Claims Reserve as set forth in the Plan.

6.5    <u>Undeliverable Distributions and Unclaimed Property</u>.    All undeliverable distributions and unclaimed property shall be treated in the manner set forth in the Plan.

6.6    <u>*De Minimis* Distributions</u>.  Distributions with a value of less than $100 will be treated in accordance with the Plan.

6.7    <u>United States Claimant Trustee Fees and Reports</u>.  **After the Effective Date, the Claimant Trust shall pay as a Claimant Trust Expense, all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Claimant Trust's disbursements until the Chapter 11 Case is closed.  After the Effective Date, the Claimant Trust shall prepare and serve on the Office of the United States Trustee such quarterly disbursement reports for the Claimant Trust as required by the Office of the United States Trustee Office for as long as the Chapter 11 Case remains open.**

# ARTICLE VII.
# TAX MATTERS

7.1    <u>Tax Treatment and Tax Returns</u>.

(a)    It is intended for the initial transfer of the Claimant Trust Assets to the Claimant Trust to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) as if the Debtor transferred the Claimant Trust Assets (other than the amounts set aside in the Disputed Claim Reserve, if the Claimant Trustee makes the election described below) to the Claimant Trust Beneficiaries and then, immediately thereafter, the Claimant Trust Beneficiaries transferred the Claimant Trust Assets to the Claimant Trust.  Consistent with such treatment, (i) it is intended that the Claimant Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), (ii) it is intended that the Claimant Trust Beneficiaries will be treated as the grantors of the Claimant Trust and owners of their respective share of the Claimant Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable).  The Claimant Trustee shall file all federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Claimant Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

(b)    The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Beneficiaries of such valuation, and such valuation shall be used consistently by all parties for all federal income tax purposes.

(c)    The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the

DOCS_NY:43843.3 36027/002

Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity.

7.2     <u>Withholding</u>.  The Claimant Trustee may withhold from any amount distributed from the Claimant Trust to any Claimant Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable Beneficiary.  As a condition to receiving any distribution from the Claimant Trust, the Claimant Trustee may require that the Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Claimant Trustee to comply with applicable tax reporting and withholding laws.  If a Beneficiary fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution and treated in accordance with Section 6.5(b) of this Agreement.

<div align="center">

**ARTICLE VIII.**
**STANDARD OF CARE AND INDEMNIFICATION**

</div>

8.1     <u>Standard of Care</u>.  None of the Claimant Trustee, acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan, the Delaware Trustee, acting in its capacity as Delaware Trustee, the Oversight Board, or any current or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Claimant Trust or to any Person (including any Claimant Trust Beneficiary) in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the acts or omissions of any such Claimant Trustee, Delaware Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence.  The employees, agents and professionals retained by the Claimant Trust, the Claimant Trustee,  Delaware Trustee, Oversight Board, or individual Member shall not be personally liable to the Claimant Trust or any other Person in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence.  None of the Claimant Trustee, Delaware Trustee, Oversight Board, or any Member shall be personally liable to the Claimant Trust or to any Person for the acts or omissions of any employee, agent or professional of the Claimant Trust or Claimant Trustee taken or not taken in good faith reliance on the advice of professionals or, as applicable, with the approval of the Bankruptcy Court, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the Claimant Trustee, Delaware Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Claimant Trust.

8.2     <u>Indemnification</u>.  The Claimant Trustee (including each former Claimant Trustee), WTNA in its individual capacity and as Delaware Trustee, the Oversight Board, and all past and present Members (collectively, in their capacities as such, the "<u>Indemnified Parties</u>") shall be

<div align="center">32</div>

indemnified by the Claimant Trust against and held harmless by the Claimant Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Claimant Trustee, Delaware Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence.  If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Claimant Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Claimant Trustee and/or Oversight Board, as applicable; provided, however, that the failure of an Indemnified Party to promptly notify the Claimant Trustee and/or Oversight Board of an indemnification obligation will not excuse the Claimant Trust from indemnifying the Indemnified Party unless such delay has caused the Claimant Trust material harm.  The Claimant Trust shall pay, advance or otherwise reimburse on demand of an Indemnified Party the Indemnified Party's reasonable legal and other defense expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and other expenses related to any claim that has been brought or threatened to be brought) incurred in connection therewith or in connection with enforcing his or her rights under this Section 8.2 as a Claimant Trust Expense, and the Claimant Trust shall not refuse to make any payments to the Indemnified Party on the assertion that the Indemnified Party engaged in willful misconduct or acted in bad faith; provided that the Indemnified Party shall be required to repay promptly to the Claimant Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, willful misconduct, or gross negligence in connection with the affairs of the Claimant Trust with respect to which such expenses were paid; provided, further, that any such repayment obligation shall be unsecured and interest free.  The Claimant Trust shall indemnify and hold harmless the employees, agents and professionals of the Claimant Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties.  For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Claimant Trustee, WTNA in its individual capacity and as Delaware Trustee, or Member or the estate of any decedent Claimant Trustee or Member, solely in their capacities as such.  The indemnification provided hereby shall be a Claimant Trust Expense and shall not be deemed exclusive of any other rights to which the Indemnified Party may now or in the future be entitled to under the Plan or any applicable insurance policy.  The failure of the Claimant Trust to pay or reimburse an Indemnified Party as required under this Section 8.2 shall constitute irreparable harm to the Indemnified Party and such Indemnified Party shall be entitled to specific performance of the obligations herein.  The terms of this Section 8.2 shall survive the termination of this Agreement and the resignation or removal of any Indemnified Party.

8.3    No Personal Liability.  Except as otherwise provided herein, neither of the Trustees nor Members of the Oversight Board shall be subject to any personal liability whatsoever, whether in tort, contract, or otherwise, to any Person in connection with the affairs of the Claimant Trust to the fullest extent provided under Section 3803 of the Delaware Statutory Trust Act, and all Persons asserting claims against the Claimant Trustee, Litigation Trustee, or any Members, or

33

otherwise asserting claims of any nature in connection with the affairs of the Claimant Trust, shall look solely to the Claimant Trust Assets for satisfaction of any such claims.

8.4    <u>Other Protections</u>.  To the extent applicable and not otherwise addressed herein, the provisions and protections set forth in Article IX of the Plan will apply to the Claimant Trust, the Claimant Trustee, the Litigation Trustee, and the Members.

<div align="center">

**ARTICLE IX.**
**TERMINATION**

</div>

9.1    <u>Duration</u>.  The Trustees, the Claimant Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets.

9.2    <u>Distributions in Kind</u>.  Upon dissolution of the Claimant Trust, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

9.3    <u>Continuance of the Claimant Trustee for Winding Up</u>.  After dissolution of the Claimant Trust and for purpose of liquidating and winding up the affairs of the Claimant Trust, the Claimant Trustee shall continue to act as such until the Claimant Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Claimant Trust Assets, the Claimant Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Claimant Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Claimant Trust, until such time as the winding up of the Claimant Trust is completed.  Upon the dissolution of the Claimant Trust and completion of the winding up of the assets, liabilities and affairs of the Claimant Trust pursuant to the Delaware Statutory Trust Act, the Claimant Trustee shall prepare, execute and file a certificate of cancellation with the State of Delaware to terminate the Claimant Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "<u>Termination Date</u>").  If the Delaware Trustee's signature is required for purposes of filing such certificate of cancellation, the Claimant Trustee shall provide the Delaware

<div align="center">34</div>

Trustee with written direction to execute such certificate of cancellation, and the Delaware Trustee shall be entitled to conclusively and exclusively rely upon such written direction without further inquiry.  Upon the Termination date, the Claimant Trustee shall retain for a period of two (2) years, as a Claimant Trust Expense, the books, records, Claimant Trust Beneficiary lists, and certificated and other documents and files that have been delivered to or created by the Claimant Trustee.  At the Claimant Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.4     Termination of Duties.  Except as otherwise specifically provided herein, upon the Termination Date of the Claimant Trust, the Claimant Trustee, the Oversight Board and its Members shall have no further duties or obligations hereunder.

9.5     No Survival.  The rights of Claimant Trust Beneficiaries hereunder shall not survive the Termination Date, provided that such Claimant Trust Beneficiaries are provided with notice of such Termination Date.

## ARTICLE X.
## AMENDMENTS AND WAIVER

The Claimant Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions.  This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Claimant Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Claimant Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.  No amendment or waiver of this Agreement that adversely affects the Delaware Trustee shall be effective unless the Delaware Trustee has consented thereto in writing in its sole and absolute discretion.

## ARTICLE XI.
## MISCELLANEOUS

11.1     Trust Irrevocable.  Except as set forth in this Agreement, establishment of the Claimant Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Claimant Trust Beneficiaries.

11.2     Bankruptcy of Claimant Trust Beneficiaries.   The dissolution, termination, bankruptcy, insolvency or other similar incapacity of any Claimant Trust Beneficiary shall not permit any creditor, trustee, or any other Claimant Trust Beneficiary to obtain possession of, or exercise legal or equitable remedies with respect to, the Claimant Trust Assets.

11.3     Claimant Trust Beneficiaries have No Legal Title to Claimant Trust Assets.  No Claimant Trust Beneficiary shall have legal title to any part of the Claimant Trust Assets.

11.4     Agreement for Benefit of Parties Only.  Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Claimant Trustee, Oversight Board, and the Claimant Trust Beneficiaries any legal or equitable right, remedy or claim under or in

respect of this Agreement. The Claimant Trust Assets shall be held for the sole and exclusive benefit of the Claimant Trust Beneficiaries.

     11.5    <u>Notices</u>. All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

        (a)    If to the Claimant Trustee:

> Claimant Trustee
> c/o Highland Capital Management, L.P.
> 100 Crescent Court, Suite 1850
> Dallas, Texas 75201

With a copy to:

> Pachulski Stang Ziehl & Jones LLP
> 10100 Santa Monica Blvd, 13th Floor
> Los Angeles, CA 90067
> Attn:  Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
>        Ira Kharasch (ikharasch@pszjlaw.com)
>        Gregory Demo (gdemo@pszjlaw.com)

        (b)    If to the Delaware Trustee:

> Wilmington Trust, National Association
> 1100 North Market Street
> Wilmington, DE 19890
> Attn:  Corporate Trust Administration/David Young
> Email:  nmarlett@wilmingtontrust.com
> Phone:  (302) 636-6728
> Fax:  (302) 636-4145

Notice mailed shall be effective on the date mailed or sent. Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.5 to the entity to be charged with knowledge of such change.

     11.6    <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

     11.7    <u>Counterparts</u>. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

DOCS_NY:43843.3 36027/002

11.8    _Binding Effect, etc._    All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Claimant Trust, the Claimant Trustee, and the Claimant Trust Beneficiaries, and their respective successors and assigns.  Any notice, direction, consent, waiver or other instrument or action by any Claimant Trust Beneficiary shall bind its successors and assigns.

11.9    _Headings; References_.    The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.10    _Governing Law_.    This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.11    _Consent to Jurisdiction_.    Each of the parties hereto, each Member (solely in their capacity as Members of the Oversight Board), and each Claimant Trust Beneficiary consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement, the Plan or any act or omission of the Claimant Trustee (acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan), Litigation Trustee (acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan), the Oversight Board. or any individual Member (solely in their capacity as Members of the Oversight Board); _provided, however_, that if the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the Northern District of Texas.

11.12    _Transferee Liabilities_.    The Claimant Trust shall have no liability for, and the Claimant Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement.  In no event shall the Claimant Trustee or the Claimant Trust Beneficiaries have any personal liability for such claims.  If any liability shall be asserted against the Claimant Trust or the Claimant Trustee as the transferee of the Claimant Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Claimant Trustee may use such part of the Claimant Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Claimant Trustee as a Claimant Trust Expense.

[Remainder of Page Intentionally Blank]

IN WITNESS HEREOF, the parties hereto have caused this Claimant Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Highland Capital Management, L.P.

By: _____

James P. Seery, Jr.
Chief Executive Officer and
Chief Restructuring Officer

Claimant Trustee

By: _____

James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

Wilmington Trust, National Association,
as Delaware Trustee

By: _____

Name:  Neumann Marlett

Title:  Bank Officer

# EXHIBIT 2

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for the Reorganized Debtor and the Highland Claimant Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|                                         |   |                            |
|-----------------------------------------|---|----------------------------|
|                                         | § |                            |
| In re:                                  | § | Chapter 11                 |
|                                         | § |                            |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]   | § | Case No. 19-34054-sgj11    |
|                                         | § |                            |
|                     Reorganized Debtor. | § |                            |

## NOTICE OF FILING OF
## THE CURRENT BALANCE SHEET OF THE HIGHLAND CLAIMANT TRUST

**PLEASE TAKE NOTICE** that, pursuant to the Court's *Order (A) Continuing Hearing on*

*Motion to Stay and to Compel Mediation [Dkt. 3752] and (B) Directing Certain Actions in Advance*

*of Continued Hearing* [Docket No. 3870], Highland Capital Management, L.P., the reorganized

debtor in the above-captioned bankruptcy case, and the Highland Claimant Trust hereby file the

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are 8357. The headquarters and
service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.



¦1934054230706000000000001¦

current balance sheet attached hereto as **Exhibit A** showing the general categories of assets and

liabilities of the Highland Claimant Trust, subject to the accompanying notes.

<center>[*Remainder of Page Intentionally Left Blank*]</center>

Dated:  July 6, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Reorganized Debtor and
the Highland Claimant Trust*

# EXHIBIT A

**Highland Claimant Trust**
**Summarized Consolidated Balance Sheet** [1]
**As of May 31, 2023**
**The accompanying notes are integral to understanding this balance sheet**
**(Estimated and unaudited, $ in millions)**

| | Balance per books | | adjustments (see notes) | | Adjusted balance | |
|---|---|---|---|---|---|---|
| **Assets** | | | | | | |
| Cash and equivalents | $ | 13 | $ | - | $ | 13 |
| Disputed claims reserve [2] | | 12 | | - | | 12 |
| Other restricted cash | | 12 | | - | | 12 |
| Investments [3] | | 118 | | (12) [6] | | 106 |
| Notes receivable, net [4] | | 86 | | (83) [4] | | 3 |
| Other assets | | 6 | | - | | 6 |
| **Total assets** | $ | 247 | $ | (95) | $ | 152 |
| | | | | | | |
| **Liabilities** | | | | | | |
| Secured and other debt | $ | - | $ | - | $ | - |
| Distribution payable [2] | | 12 | | - | | 12 |
| Additional indemnification reserves | | - | | 90 [5] | | 90 |
| Other liabilities | | 15 | | 13 [5] | | 28 |
| **Total liabilities** [5] | $ | 27 | $ | 103 | $ | 130 |
| | | | | | | |
| **Book/adjusted book equity (see accompanying notes)** [5] | | 220 | | (198) | | 22 |
| | | | | | | |
| **Total liabilities and book/adjusted book equity** | $ | 247 | $ | (95) | $ | 152 |

| | | |
|---|---|---|
| **Supplemental Info:** [7] | | |
| Sum of remaining allowed Class 8 Trust Beneficiaries, excluding interest | $ | 27 |
| Sum of remaining allowed Class 9 Trust Beneficiaries, excluding interest | | 99 |
| Sum of face amount of pending Class 8/9 potential Trust Beneficiaries, excluding interest | | 13 |
| Sub-total | $ | 139 |

*{SEE ACCOMPANYING NOTES ON THE FOLLOWING PAGE}*

The information contained in this summarized consolidated balance sheet (the "Summary") is based on estimates, and therefore should not be relied upon, as actual results may differ materially from the estimates contained herein.

This Summary is neither an offer nor a solicitation of an offer to buy or sell securities.

Information contained herein is not indicative of, nor does it guarantee, future results. The information contained in this Summary is based on matters as they exist as of the date of preparation and not as of any future date. Valuations do not reflect performance in different economic or market cycles and there can be no assurances that valuations will be achieved. Trust Beneficiaries may experience materially different results and outcomes.

**Highland Claimant Trust**
**Summarized Consolidated Balance Sheet** [1]
**As of May 31, 2023**

**Notes:**

(1) This presentation is not in accordance with US GAAP and is unaudited, but has nevertheless been prepared in good faith and with the intention of providing the reader with a comprehensive understanding of the remaining assets and liabilities of the Highland Claimant Trust, Highland Capital Management, LP, HCMLP GP LLC, and Highland Litigation Trust (the "Consolidated Entities"). These entities have each been aggregated on a stand-alone basis, with intercompany amounts eliminated. Funds and entities that may otherwise be consolidated by one or more of the Consolidated Entities under US GAAP are not fully consolidated and rather are included solely at their equity value. For example, if Highland Capital Management, LP is a 20% investor in a managed fund with assets of $100 million and liabilities of zero that would normally require consolidation under US GAAP, the presentation contained herein reflects an investment of $20 million as opposed to fully consolidating the $100 million fund and reflecting minority interest of $80 million. The value of the Highland Indemnity Trust is not included herein. As of May 31, 2023, $35 million has been funded to the Highland Indemnity Trust. Highland Indemnity Trust beneficiaries are Claimant Trust Indemnified Parties. Any unused assets remaining after satisfying indemnification obligations will be transferred to the Highland Claimant Trust or otherwise be distributed to the Claimant Trust Beneficiaries in accordance with the Indemnity Trust Agreement. For presentation purposes, it is assumed that outstanding indemnification obligations will consume the entirety of the Highland Indemnity Trust. Further, no current recovery amount has been ascribed to the "Kirschner Adversary" as all such value is considered to be contingent, nor have any liabilities been reserved for various success fees payable to professionals associated with the Kirschner Adversary or any other litigations. Such liabilities are also contingent in nature.

(2) Amounts already authorized for distribution, but reserved in the Disputed Claims Reserve related to resolution of pending disputed claims.

(3) Value reflected herein consists primarily of ownership in private funds and subsidiaries, valued using NAV as the practical expedient, public & private investments (including residual sale recovery), valued at fair value, and SE Multifamily Holdings, LLC, valued using book equity value as of the most recent financials received. See note 6 for further information. There is substantial risk and uncertainty with respect to the timing and ultimate cash value to be received from monetizations of these investments and such value could ultimately be materially impacted by actual monetizations.

(4) Book amounts reflect principal amounts outstanding on various notes, without discount, adjustment, or estimates of future costs of collection, with two exceptions. The first exception is to the note receivable from Hunter Mountain Investment Trust for which over $90 million of principal and interest is currently due, payable, and in default. These notes are a component of the "Kirschner Adversary" which is currently stayed. These principal and interest amounts are fully reserved based on the assumption that Hunter Mountain Investment Trust has no other assets other than a contingent, unvested interest in the Highland Claimant Trust. That assumption is subject to change. The second exception relates to the note receivable from Highland Select Equity Master Fund, LP. This amount is fully reserved based on the pendency of the Ch. 7 proceeding for Highland Select Equity Master Fund, LP and the minimal remaining value of Highland Select Equity Master Fund, LP's assets, which is expected to be further consumed (at least in part) by trustee and professional fees. Aside from these exceptions, approximately $65 million of these principal amounts (further described below) are subject to ongoing litigation with various note counterparties who are contesting the validity of their obligations. These disputed amounts are contained within the "Balance per books" column herein without discount or adjustment. While the makers have asserted defenses, Highland believes they are meritless and is confident that judgments will ultimately be entered in Highland's favor. However, based on Mr. Dondero's history of failing to satisfy judgments entered against his affiliates by others (e.g., UBS, the Redeemer Committee, Joshua Terry, and Patrick Daugherty), the effect of complete non-payment of principal is reflected in the "adjustments" column, which also assumes non-payment of the currently performing $18 million note receivable from The Dugaboy Investment Trust. Ultimate recoveries from these notes could differ materially from the current principal outstanding depending on the outcome of the pending litigation and no recovery can be assured. Accrued interest is captured in the "Other assets" line item, subject to the exceptions discussed within this footnote. While there is currently a report & recommendation from the bankruptcy court for summary judgment, plus costs of collection, no costs of collection are reflected as assets on this balance sheet, so would be incremental. The estimated amount of such costs of collections are over $3 million.

Detail of note principal amounts subject to report & recommendations of the bankruptcy court, currently pending in district court (excludes accrued interest):

| Note Maker | Principal O/S | Comments |
|---|---|---|
| NexPoint Advisors, LP | $ 25 | Consists of a single note |
| NexPoint Real Estate Partners, LLC | 12 | fka HCRE Partners, LLC; five underlying notes comprise balance |
| NexPoint Asset Management, LP | 11 | fka Highland Capital Management Fund Advisors, LP; four underlying notes comprise balance |
| James Dondero | 10 | Three underlying notes comprise balance |
| Highland Capital Management Services, Inc. | 7 | Five underlying notes comprise balance |
| Sub-total | $ 65 | |

(5) The book equity amount reflects a multitude of estimates including, but not limited to the value of investments and collectability of notes receivable. For book purposes, no contingent liabilities or indemnification reserves have been recorded as liabilities that would reduce book equity, notwithstanding that it is currently expected that there will be a) a need to maintain further highly material indemnification reserves; and b) further incurrence of springing contingent liabilities if distribution milestones are achieved. The amount of further incremental indemnification reserves are currently expected to exceed $90 million, and may ultimately be greater, which will be required to be funded (at least in part) prior to any further material distributions to Trust Beneficiaries. In the absence of a global settlement that, among other things, fully and finally releases all Claimant Trust Indemnified Parties, Highland believes the additional indemnification reserves are required because, among other reasons, (a) based on the so-called "Dondero exclusion," insurance is likely to remain cost-prohibitive and/or unsatisfactory, leaving the Claimant Trust and Indemnity Trust assets as the sole sources of funding for indemnity obligations, (b) approximately twenty (20) matters are being actively litigated in at least 9 different forums; and (c) based on history, new litigation can be expected. Any unused assets remaining after satisfaction of indemnity obligations will be distributed as required by the Indemnity Trust Agreement. The amount of incremental springing contingent liabilities are expected to range from $5 million to $15 million, which are exclusive of various success fees associated with recoveries under the "Kirschner Adversary" and others. No reserves have been accrued for any current, pending, or threatened litigation brought by any Dondero-related parties. Lastly, it is expected that the trust and its subsidiaries will operate at an operating loss prospectively. The corresponding information in the "adjustments" column above is an estimate of the effects of these incremental indemnification reserves and contingent liabilities, but does not assume any expected future operating cash burn, which is expected to be significant.

6) The value of SE Multifamily Holdings LLC maintained on this balance sheet is $15.7 million, which is a component of the "Investments" line item and is based on a several years stale book-basis balance sheet. Notwithstanding Dondero-entities' previous disclosures of this interest at values of $20 million and $12 million, Highland also received interest from Dondero to acquire the interest for $3.8 million, among other assets. The purpose of this adjustment is to assume that the holding could be monetized at the lower $3.8 million level, which would result in a $11.9 million decrease to Highland's book equity if it were hypothetically transacted at that level. Highland has initiated proceedings in Delaware to receive books and records relating to SE Multifamily Holdings LLC, for which it has the contractual right and has been seeking for approximately a year, but for which Dondero-controlled entities have not provided to date.

7) Amounts described herein represent the face amounts of outstanding allowed and pending claims. The pending claim amounts do not include amounts that are the subject of various appeals or that are undisputed. The allowed and pending claims (along with accrued interest) could ultimately be satisfied in part or in full using 1) assets of the disputed claims reserve, 2) the residual amount of cash in the indemnity trust after satisfying all indemnification obligations, and 3) the residual amount of cash remaining after monetizing all other non-cash assets and paying liabilities and future expenses.

The information contained in this summarized consolidated balance sheet (the "Summary") is based on estimates, and therefore should not be relied upon, as actual results may differ materially from the estimates contained herein.

This Summary is neither an offer nor a solicitation of an offer to buy or sell securities.

Information contained herein is not indicative of, nor does it guarantee, future results. The information contained in this Summary is based on matters as they exist as of the date of preparation and not as of any future date. Valuations do not reflect performance in different economic or market cycles and there can be no assurances that valuations will be achieved. Trust Beneficiaries may experience materially different results and outcomes.

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § § | |
| | § | **Case No. 19-34054-sgj11** |
| Debtor. | § | |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § | |
| | § | **Civ. Act. No. 3:21-cv-00881-X** |
| **Plaintiff,** | § § | |
| v. | § § | **(Consolidated with 3:21-cv-00880-X; 3:21-cv-01010-X; 3:21-cv-01360-X; 3:21-cv-01362-X; 3:21-cv-01378-X; 3:21-cv-01379-X; 3:21-cv-03207-X; 3:22-cv-0789-X)** |
| **NEXPOINT ASSET MANAGEMENT, L.P. (F/K/A HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.), et al.,** | § § § § § § | |
| **Defendants.** | § | |

## ORDER GRANTING JOINT AGREED EMERGENCY MOTION FOR ORDER APPROVING STIPULATION FOR THE BONDING OF JUDGMENTS AND STAYS OF EXECUTIONS PENDING APPEALS

Upon consideration of the Parties' *Joint Agreed Emergency Motion for Order Approving Stipulation for the Bonding of Judgments and Stays of Execution Pending Appeals* (the "Motion"),[1] the Court hereby finds that the Motion should be GRANTED as set forth below. Accordingly,

**IT IS HEREBY ORDERED** that:

1.     The Motion is **GRANTED** in its entirety.

---

[1] Capitalized terms not defined in this Order shall have the meanings ascribed to them in the Motion.



1934054230803000000000008

2.      The Parties' entry into the Binding Bonding Agreement, a copy of which is attached hereto as **Exhibit A**, is hereby **APPROVED.**

3.      The Parties are directed to comply with each and every term of the Binding Bonding Agreement.

4.      The deposit of any amounts required by the Binding Bonding Agreement into the Court Registry will be done in each case in accordance with Miscellaneous Order No. 45, entered by the U.S. District Court of the Northern District of Texas on October 7, 1997 (the "Misc. Order").  For the avoidance of doubt, this Order shall constitute the Court's express order authorizing the deposit or transfer of funds into the Court Registry as required by the terms of the Misc. Order, and the Clerk of Court shall accept this Order as the requisite order of the Court permitting the deposit or transfer of funds into the Court Registry.

5.      This Court shall have and retain jurisdiction over all disputes arising out of or otherwise concerning the interpretation and enforcement of this Order.

**IT IS SO ORDERED** this 3rd day of August, 2023.

_____
THE HONORABLE BRANTLEY STARR
UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT A

## Binding Bonding Agreement

This Binding Bonding Agreement ("***Agreement***") is entered into by and between Highland Capital Management, L.P. ("***Highland***") and James Dondero, NexPoint Asset Management, L.P., NexPoint Advisors, L.P., NexPoint Real Estate Partners, LLC, and Highland Capital Management Services, Inc. (the "***Judgment Debtors***") (along with Highland, collectively the "***Parties***") with respect to judgments entered in US Dist. Court Case No. 3:21-cv-00881-X and its consolidated cause numbers (the "***Judgments***" in the "***District Court Case***").

### RECITALS

WHEREAS, as of July 31, 2023, the Judgments entered in the District Court Case on July 6, 2023, total $68,902,707.24 ("***Combined Judgment Amount***"), inclusive of principal, pre- and post-judgment interest, and awarded fees and expenses;

WHEREAS, Highland and the Judgment Debtors dispute the finality of certain of the Judgments;

WHEREAS, Highland may execute upon the Judgments thirty (30) days after the entry of a final Judgment, unless the United States District Court for the Northern District of Texas (the "***District Court***") orders otherwise;

WHEREAS, the Judgment Debtors may stay execution of such Judgments by providing a supersedeas bond in conformance with the District Court's rules ("***Bond***") for each Judgment Debtor;

WHEREAS, the Parties seek to avoid the motion practice, expense, and harm caused by execution of the Judgments;

NOW THEREFORE, the Parties agree as follows:

### AGREEMENT

1. The Parties will request the District Court to enter separate judgments ("***Individual Judgment Amount***") for each Judgment Debtor against each respective Judgment Debtor as follows (which the parties agree to consolidate for the purposes of appeal). Each Judgment Debtor shall Bond in the amount of 111% of its Individual Judgment Amount ("***Individual Bond Amount***") as set forth below (the Individual Bond Amounts collectively the "***Combined Bond Amount***"):

| Party | Individual Judgment Amount | Individual Bond Amount |
|---|---|---|
| NexPoint Asset Management, L.P. | $3,628,692.37 | $4,027,848.53 |

| | | |
|---|---|---|
| NexPoint Asset Management, L.P. | $8,441,524.65 | $9,370,092.36 |
| NexPoint Advisors, L.P. | $25,849,816.94 | $28,693,296.80 |
| NexPoint Real Estate Partners, LLC | $13,251,661.00 | $14,709,343.70 |
| Highland Capital Management Services, Inc. | $7,578,620.41 | $8,412,268.66 |
| James Dondero | $10,152,391.87 | $11,269,154.90 |
| Total | $68,902,707.24 | $76,482,004.95 |

2.  The Judgment Debtors shall Bond the Combined Bond Amount according to the following schedule ("*Bonding Schedule*"):

| Date[1] | Additional Bonded Amount | Combined Bonded Amount |
|---|---|---|
| August 11, 2023 | $30,000,000.00 | $30,000,000.00 |
| August 18 2023 | $10,000,000.00 | $40,000,000.00 |
| August 25, 2023 | $10,000,000.00 | $50,000,000.00 |
| September 8, 2023 | $10,000,000.00 | $60,000,000.00 |
| October 11, 2023 | $16,482,004.95 | $76,482,004.95 |

3.  In substitution for posting Bond, if, and only if, the registry of the District Court is willing to accept USD$ cash in lieu of a Bond conforming with the rules of the District Court, a Judgment Debtor may post cash as security to an interest-bearing account (if the registry maintains such an account) with the Registry of the District Court ("*Cash Security*"). For all purposes under this Agreement, including calculation of the Combined Bonded Amount under the Bonding Schedule, a Judgment Debtor shall be credited as having posted a Bond equivalent to 111% of all amounts posted as Cash Security only if (a) the interest rate payable on such Cash Security by the registry of the District Court is equal to or greater than the 5.35% Federal Judgment Rate applicable to the Judgments (or, if less, the "Top-up Interest" is paid as described in footnote 2 below) and (b) all interest paid on the Cash Security becomes part of the Cash Security and remains in the Registry of the District Court and available to satisfy the Judgments. If the Registry of the District Court is not willing to accept a Cash Security or does not accrue and apply interest to the Cash Security as required by the immediately preceding sentence hereof, the Judgment Debtor must post the required amount in the form of a supersedeas Bond consistent with the Federal Rules of Civil Procedure and the Local Rules for the District Court. Consistent with the foregoing,

---

[1] For avoidance of doubt, failure to post the required Combined Bond Amount by the calendar dates set forth in the Bonding Schedule will constitute a default permitting the plaintiffs to immediately begin enforcement and collection proceedings for the unbonded amounts then outstanding against each and every Judgment Debtor, unless the parties otherwise agree and adjust the Bonding Schedule, or the District Court extends the stay of execution. If at least $60 million in Bond (or the equivalent required amount in cash) has been posted on or before September 8, 2023, the parties will work in good faith to negotiate a fair and equitable schedule for completing Bonding if it cannot be completed by October 11, 2023; if Highland rejects the proposal of the remaining Judgment Debtors, Highland may begin collection efforts if Judgment Debtors have not obtained a stay of execution within 7 days of such rejection.

interest generated by any acceptable USD$ cash deposit to the Registry of the District Court shall be treated as part of the Bond with respect to the right of collection after finalization of appeals.[2]

4.  Upon posting of (a) Bond or (b) if acceptable to the Registry of the District Court, Cash Security in substitution of a Bond, the Judgment Debtors shall notify Highland in writing to counsel of record of the Judgment Debtor(s) on whose behalf such Bond or Cash Security was posted and the amount of Combined Bond Amount posted for the purposes of satisfaction of the Bonding Schedule. Except as set forth in footnote 1, failure to post the required Combined Bond Amount by the calendar date above shall constitute an event of default permitting Highland to immediately begin enforcement and collection proceedings for the unbonded amounts against each Judgment Debtor.

5.  Each of the Judgment Debtors hereby represents and warrants on its own behalf that it has not since January 1, 2023, engaged in any Fraudulent Transfers. For the purposes of this Agreement, "Fraudulent Transfer" shall have its meaning as defined in 11 U.S.C. §§ 544, 548.

6.  None of the Judgment Debtors shall transfer any of its assets with a value of over $100,000 in one or a series of related transactions (an "*Asset Transfer*"), without providing five days (5) written notice to Highland (the "*Notice*") except that Notice is not required for (i) ordinary and customary payments to vendors, employees, contractors, or consultants, including for any bonuses that are already scheduled in the current compensation schedule, all consistent with recent past practice; (ii) payments made pursuant to the terms of a contract executed and effective prior to January 1, 2023 (payments under paragraph 6(i) and (ii) are referred to as "*Ordinary Course Payments*"), or (iii) transfers and transactions made for the purpose of bonding the Judgments. Notwithstanding the foregoing, other than with respect to Ordinary Course Payments being made pursuant to already existing written agreements, the Judgment Debtors *shall* provide Notice to Highland of all contemplated Asset Transfers between or among any Judgment Debtor, on the one hand, and any of Mr. Dondero or Scott Ellington or either of their immediate families or either of their affiliated entities (including Highgate Consulting Group, Inc., d/b/a Skyview Group ("*Skyview*")), on the other (any such contemplated Asset Transfer, an "*Insider Transaction*"). For the avoidance of doubt, items such as contractual payments to Skyview and its employees, scheduled bonus amounts, and medical reimbursements are not required to be disclosed to Highland so long as they otherwise constitute Ordinary Course Payments. While Notice of all other Insider Transactions is required, the Parties do not intend to restrict Asset

---

[2] As set forth above, the interest rate for by the deposit of Cash Security must be equal to or greater than the 5.35% statutory post-judgment interest rate applicable to the Judgments. In the event that the Cash Security interest rate available at the Registry of the District Court is less than the statutory 5.35% post-judgment interest rate applicable to the Judgments, each the Judgment Debtor shall post additional Cash Security or post additional Bond in the amount of the dollar difference between the Cash Security interest rate payable at the Registry of the District Court (as applied to the Judgments) and the 5.35% post-judgment statutory interest rate applicable to the Judgments ("*Top-Up Interest*"). Top-Up Interest must be deposited with the Registry of the District Court and added to the Cash Security on the first business day of each month. Failure to timely deposit Top-Up Interest shall be an event of default hereunder permitting Highland to immediately begin enforcement and collection proceedings for the unbonded amounts against each Judgment Debtor.

Transfers made as Ordinary Course Payments. The provisions of this Paragraph 6 shall expire (a) for each Judgment Debtor upon the posting of a Bond or Cash Security for its Individual Bond Amount or (b) upon the complete satisfaction of the Bonding Schedule. If Highland objects in writing to any Asset Transfer or Insider Transaction, the proposed transaction(s) may only be pursued if Highland has not moved on shortened notice and as expedited a basis as the District Court will accommodate for injunctive or other relief within 5 days of written notice of a Judgment Debtor's objection to Highland's objection (the Parties all hereby consent to having a motion under this provision heard on shortened notice or on an emergency basis), and such period has not been extended pursuant to a written agreement between the parties or by the Court upon good cause shown.

7. Prior to completion of the Bonding Schedule, and promptly following execution of this Agreement and entry of an order of the District Court approving this Agreement (and in any event on or before August 11, 2023), the Judgment Debtors shall grant (or cause to be granted) to Highland properly perfected, first-priority security interests (the "*Liens*") in collateral collectively up to the amount of $76.4 million ("*Interim Collateral*"). To the extent the Liens are perfected through the filing of a UCC-1, the Liens will be recorded with UCC-1 filings in Dallas County, Texas, and in the state of incorporation/formation of the debtor listed in the applicable UCC-1. Each Lien shall be released with respect to each Judgment Debtor as each Judgment Debtor posts a Bond or Cash Security equal to its Individual Bond Amount in accordance with this Agreement as follows: upon approval by the District Court of any Bond or Cash Security equal to an Individual Bond Amount, Highland shall release its lien and security interest on Interim Collateral in the amount of such Bond or Cash Security with respect to the asset of the particular Judgment Debtor posting such Bond or Cash Security.

8. So long as the Judgment Debtors are in strict compliance with the Bonding Schedule (time being of the essence), and paragraphs 6 and 7 concerning Interim Collateral, Highland shall take no action to execute upon the Judgments.

9. Upon execution of this Agreement, the Parties agree that they shall immediately submit this Agreement to the District Court as a stipulation to be entered on the District Court Case docket and approved by the Court.

**AGREED BY COUNSEL TO THE PARTIES TO THIS AGREEMENT:**

_____
Deborah Deitsch-Perez

_____
John A. Morris

DOCS_NY:48039.11 36027/004

Counsel to the Judgement Debtors                    Counsel to Highland

Deborah Deitsch-Perez
Michael P. Aigen
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: Deborah.deitschperez@stinson.com
Email: Michael.aigen@stinson.com

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| | § | **Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | **Case No. 19-34054-sgj11** |
| | § | |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| Plaintiff, | § | **Civ. Act. No. 3:21-cv-00881-X** |
| | § | |
| v. | § | **(Consolidated with 3:21-cv-00880-X,** |
| | § | **3:21-cv-01010-X, 3:21-cv-01378-X,** |
| **HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., et al.** | § | **3:21-cv-01379-X)** |
| | § | |
| Defendants. | § | |



## NOTICE OF BONDING

PLEASE TAKE NOTICE that, on August 8, 2023, in accordance with the terms of the

Binding Bonding Agreement attached as Exhibit A to Order Granting Joint Agreed Emergency

Motion for Order Approving Stipulation for the Bonding of Judgments and Stays of Executions

Pending Appeals, as well as the Amended Final Judgments against the Judgment Debtors at Dkts

1934054230919000000000003

143-145 and 147, Defendants NexPoint Asset Management, L.P.; NexPoint Advisors, L.P.; and Highland Capital Management Services, Inc., tendered bond to the Treasury Registry for the United States District Court for the Northern District of Texas. Proof of payment is attached hereto as Exhibit 1.

Dated: August 10, 2023

Respectfully submitted,

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on August 10, 2023, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all parties registered to receive electronic notices in this case.

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez

# Exhibit 1

# U.S. District Court

## Texas Northern - Dallas

### THIS IS A COPY

### AMENDED RECEIPT

Receipt Date: Aug 8, 2023 2:56PM

| Rcpt. No: 300007043 | | Trans. Date: Aug 8, 2023 2:56PM | | | Cashier ID: #OH |

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|----------------------|-----|-------|-----|
| 701 | Treasury Registry | DTXN321cv000881 /01<br>FBO: Nexpoint Asset Management LP | 1 | 6000000.00 | 6000000.00 |

| CD | Tender | | | Amt |
|----|--------|--|--|-----|
| CH | Check | #046304 | 08/8/2023 | $6,000,000.00 |

|  |  |
|--|--|
| Total Due Prior to Payment: | $6,000,000.00 |
| Total Tendered: | $6,000,000.00 |
| Total Cash Received: | $0.00 |
| Cash Change Amount: | $0.00 |

**RECEIPT AMENDED** by staff #1788 8/8/2023 3:18 PM
**AMENDMENT VERIFIED** by staff #1774 8/8/2023 3:19 PM
**Correction Reason:** 03) Incorrect Case/Party Number

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

# U.S. District Court

## Texas Northern - Dallas

### THIS IS A COPY

### AMENDED RECEIPT

Receipt Date: Aug 8, 2023 3:01PM

Rcpt. No: 300007048                    Trans. Date: Aug 8, 2023 3:01PM                    Cashier ID: #OH

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|---------------------|-----|-------|-----|
| 701 | Treasury Registry | Dtxn321cv000881 /01<br>**FBO**: Nexpoint Advisors LP | 1 | 18798654.37 | 18798654.37 |

| CD | Tender | | | Amt |
|----|--------|--|--|-----|
| CH | Check | #046302 | 08/8/2023 | $18,798,654.37 |

| | |
|--|--|
| Total Due Prior to Payment: | $18,798,654.37 |
| Total Tendered: | $18,798,654.37 |
| Total Cash Received: | $0.00 |
| Cash Change Amount: | $0.00 |

**RECEIPT AMENDED** by staff #1788 8/8/2023 3:12 PM
**AMENDMENT VERIFIED** by staff #1774 8/8/2023 3:12 PM
**Correction Reason:** 03) Incorrect Case/Party Number

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

# U.S. District Court

## Texas Northern - Dallas

### THIS IS A COPY

### AMENDED RECEIPT

Receipt Date: Aug 8, 2023 2:59PM

Rcpt. No: 300007046                    Trans. Date: Aug 8, 2023 2:59PM                    Cashier ID: #OH

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|---------------------|-----|-------|-----|
| 701 | Treasury Registry | Dtxn321cv000881 /01<br>FBO: Nexpoint Asset Management LP | 1 | 6070217.02 | 6070217.02 |

| CD | Tender | | | | Amt |
|----|--------|---|---|---|-----|
| CH | Check | #046305 | 08/8/2023 | | $6,070,217.02 |
| | | | Total Due Prior to Payment: | | $6,070,217.02 |
| | | | Total Tendered: | | $6,070,217.02 |
| | | | Total Cash Received: | | $0.00 |
| | | | Cash Change Amount: | | $0.00 |

**RECEIPT AMENDED** by staff #1788 8/8/2023 3:29 PM
**AMENDMENT VERIFIED** by staff #1774 8/8/2023 3:29 PM
**Correction Reason:** 04) Incorrect Remitter

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

# U.S. District Court

## Texas Northern - Dallas

### THIS IS A COPY

### AMENDED RECEIPT

Receipt Date: Aug 8, 2023 3:07PM

Rcpt. No: 300007052                  Trans. Date: Aug 8, 2023 3:07PM                  Cashier ID: #OH

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|----------------------|-----|-------|-----|
| 701 | Treasury Registry | Dtxn321cv000881 /01<br>**FBO:** Nexpoint Advisors LP | 1 | 921379.59 | 921379.59 |

| CD | Tender | | | Amt |
|----|--------|--|--|-----|
| CH | Check | #046303 | 08/8/2023 | $921,379.59 |

|  |  |
|--|--|
| Total Due Prior to Payment: | $921,379.59 |
| Total Tendered: | $921,379.59 |
| Total Cash Received: | $0.00 |
| Cash Change Amount: | $0.00 |

**RECEIPT AMENDED** by staff #1788 8/8/2023 3:31 PM
**AMENDMENT VERIFIED** by staff #1774 8/8/2023 3:31 PM
**Correction Reason:** 07) Incorrect FBO 03) Incorrect Case/Party Number

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

## U.S. District Court

### Texas Northern - Dallas

#### THIS IS A COPY

#### AMENDED RECEIPT

Receipt Date: Aug 8, 2023 3:04PM

Rcpt. No: 300007050                     Trans. Date: Aug 8, 2023 3:04PM                     Cashier ID: #OH

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|----------------------|-----|-------|-----|
| 701 | Treasury Registry | DTXN321cv000881 /01 **FBO:** Nexpoint Advisors LP | 1 | 6129782.98 | 6129782.98 |

| CD | Tender | | | Amt |
|----|--------|--|--|-----|
| CH | Check | #046306 | 08/8/2023 | $6,129,782.98 |

|  |  |
|--|--|
| Total Due Prior to Payment: | $6,129,782.98 |
| Total Tendered: | $6,129,782.98 |
| Total Cash Received: | $0.00 |
| Cash Change Amount: | $0.00 |

**RECEIPT AMENDED** by staff #1788 8/8/2023 3:30 PM
**AMENDMENT VERIFIED** by staff #1774 8/8/2023 3:30 PM
**Correction Reason:** 07) Incorrect FBO

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

# U.S. District Court

## Texas Northern - Dallas

#### THIS IS A COPY

#### AMENDED RECEIPT

Receipt Date: Aug 8, 2023 2:15PM

Rcpt. No: 300007029        Trans. Date: Aug 8, 2023 2:15PM        Cashier ID: #OH

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|---|---|---|---|---|---|
| 701 | Treasury Registry | DDTX321cv000881 /01<br>FBO: Highland Capital Management Services Inc | 1 | 7578620.41 | 7578620.41 |

| CD | Tender | | | Amt |
|---|---|---|---|---|
| CH | Check | #046300 | 08/8/2023 | $7,578,620.41 |

| | | |
|---|---|---|
| Total Due Prior to Payment: | $7,578,620.41 |
| Total Tendered: | $7,578,620.41 |
| Total Cash Received: | $0.00 |
| Cash Change Amount: | $0.00 |

**RECEIPT AMENDED** by staff #1788 8/8/2023 3:21 PM
**AMENDMENT VERIFIED** by staff #1774 8/8/2023 3:22 PM
**Correction Reason:** 03) Incorrect Case/Party Number

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

Deborah Deitsch-Perez
Michael P. Aigen
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: Deborah.deitschperez@stinson.com
Email: Michael.aigen@stinson.com

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION



| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | **Chapter 11** |
| **L.P.,** | § | |
| | § | **Case No. 19-34054-sgj11** |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P.,** | § | |
| | § | |
| **Plaintiff,** | § | **Civ. Act. No. 3:21-cv-00881-X** |
| | § | |
| v. | § | **(Consolidated with 3:21-cv-00880-X,** |
| | § | **3:21-cv-01010-X, 3:21-cv-01378-X,** |
| **HIGHLAND CAPITAL MANAGEMENT** | § | **3:21-cv-01379-X)** |
| **FUND ADVISORS, L.P., et al.** | § | |
| | § | |
| Defendants. | § | |

## NOTICE OF BONDING

PLEASE TAKE NOTICE that, on August 24, 2023, in accordance with the terms of the

Binding Bonding Agreement attached as Exhibit A to Order Granting Joint Agreed Emergency

Motion for Order Approving Stipulation for the Bonding of Judgments and Stays of Executions

Pending Appeals, as well as the Amended Final Judgments against the Judgment Debtors at Dkts.

1934054230828000000000001

146 and 148, Defendants NexPoint Real Estate Partners LLC (f/k/a HCRE Partners LLC) and

James Dondero tendered bond to the Treasury Registry for the United States District Court for the

Northern District of Texas. Proof of payment is attached hereto as Exhibit 1.


Dated: August 28, 2023

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for Defendants*

</div>

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on August 28, 2023, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all parties registered to receive electronic notices in this case.

<div style="margin-left:40%">

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez

</div>

CORE/3522697.0002/184016956.1

# EXHIBIT 1

Generated: Aug 24, 2023 1:48PM

Page 1/1

# U.S. District Court

### Texas Northern - Dallas

Receipt Date: Aug 24, 2023 1:48PM

Rcpt. No: 300007302                Trans. Date: Aug 24, 2023 1:48PM                Cashier ID: #OH

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|----------------------|-----|-------|-----|
| 701 | Treasury Registry | DTXN321CV000881 /001<br>HIGHLAND CAPITAL MGMT SERVICES INC<br>**FBO:** Nextpoint Real Estate Partners LLC | 1 | 13251661.00 | 13251661.00 |

| CD | Tender | | | | Amt |
|----|--------|--|--|--|-----|
| CH | Check | #046362 | 08/24/2023 | | $13,251,661.00 |
| | | | Total Due Prior to Payment: | | $13,251,661.00 |
| | | | Total Tendered: | | $13,251,661.00 |
| | | | Total Cash Received: | | $0.00 |
| | | | Cash Change Amount: | | $0.00 |

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

Case 19-34054-sgj11    Doc 4000-1    Filed 01/01/24    Entered 01/01/24 19:38:23    Desc
Case 3:21-cv-00881-X    Document 152-1    Filed 08/02/23    Page 3 of 3    PageID 11673

Generated: Aug 24, 2023 1:51PM                                                                 Page 1/1

# U.S. District Court

## Texas Northern - Dallas

Receipt Date: Aug 24, 2023 1:51PM

Rcpt. No: 300007303                  Trans. Date: Aug 24, 2023 1:51PM                  Cashier ID: #OH

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|---|---|---|---|---|---|
| 701 | Treasury Registry | DTXN321CV000881 /001 HIGHLAND CAPITAL MGMT SERVICES INC **FBO:** James Dondero | 1 | 1248339.00 | 1248339.00 |

| CD | Tender | | | | Amt |
|---|---|---|---|---|---|
| CH | Check | #046361 | 08/24/2023 | | $1,248,339.00 |
| | | | Total Due Prior to Payment: | | $1,248,339.00 |
| | | | Total Tendered: | | $1,248,339.00 |
| | | | Total Cash Received: | | $0.00 |
| | | | Cash Change Amount: | | $0.00 |

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

Deborah Deitsch-Perez
Michael P. Aigen
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: Deborah.deitschperez@stinson.com
Email: Michael.aigen@stinson.com

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**



| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § | **Chapter 11** |
| | § | **Case No. 19-34054-sgj11** |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § | |
| Plaintiff, | § § | **Civ. Act. No. 3:21-cv-00881-X** |
| v. | § § § | **(Consolidated with 3:21-cv-00880-X, 3:21-cv-01010-X, 3:21-cv-01378-X, 3:21-cv-01379-X)** |
| **HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., et al.** | § § § | |
| Defendants. | § | |

<u>**NOTICE OF BONDING**</u>

PLEASE TAKE NOTICE that, on October 4, 2023, in accordance with the terms of the

Binding Bonding Agreement attached as Exhibit A to Order Granting Joint Agreed Emergency

Motion for Order Approving Stipulation for the Bonding of Judgments and Stays of Executions

Pending Appeals [Dkt 149], as well as the Amended Final Judgments against the Judgment

CORE/3522697.0002/184880545.1

1934054231005000000000002

Debtors [Dkts. 143-148], Defendants James Dondero, NexPoint Real Estate Partners LLC (f/k/a

HCRE Partners LLC), NexPoint Asset Management LP, NexPoint Advisors LP, and Highland

Capital Management Services, Inc. tendered top-up interest payments to the Treasury Registry for

the United States District Court for the Northern District of Texas.  Proof of payment is attached

hereto as Exhibit 1.


Dated:  October 4, 2023

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for Defendants*

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on October 4, 2023, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all parties registered to receive electronic notices in this case.

<div style="margin-left:40%">

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez

</div>

CORE/3522697.0002/184880545.1

# EXHIBIT 1

Case 19-34054-sgj11   Doc 4000-1   Filed 01/01/24   Entered 01/01/24 19:38:23   Desc
Case 3:21-cv-00881-X   Document 160-1   Filed 02/01/23   Page 2 of 2   PageID 11762

Generated: Oct 4, 2023 9:24AM

Page 1/1

# U.S. District Court

## Texas Northern - Dallas

Receipt Date: Oct 4, 2023 9:24AM

Rcpt. No: 300008032          Trans. Date: Oct 4, 2023 9:24AM          Cashier ID: #AC

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|----------------------|-----|-------|-----|
| 701 | Treasury Registry | DTXN321CV000881 /005<br>JAMES DONDERO<br>**FBO:** James Dondero | 1 | 435.76 | 435.76 |
| 701 | Treasury Registry | DTXN321CV000881<br>Nextpoint Real Estate Partners<br>**FBO:** Nextpoint Real Estate Partners | 1 | 4625.75 | 4625.75 |
| 701 | Treasury Registry | DTXN321CV000881 /003<br>NEXPOINT ASSET MGMT LP<br>**FBO:** Nextpoint Asset Management | 1 | 4213.34 | 4213.34 |
| 701 | Treasury Registry | DTXN321CV000881 /002<br>NEXPOINT ADVISORS LP<br>**FBO:** Nextpoint Advisors | 1 | 9023.37 | 9023.37 |
| 701 | Treasury Registry | DTXN321CV000881 /001<br>HIGHLAND CAPITAL MGMT SERVICES INC<br>**FBO:** Highland Capital Management | 1 | 2645.46 | 2645.46 |

| CD | Tender | | | Amt |
|----|--------|--|--|-----|
| CH | Check | #046437 | 10/3/2023 | $20,943.68 |

| | |
|--|--|
| Total Due Prior to Payment: | $20,943.68 |
| Total Tendered: | $20,943.68 |
| Total Cash Received: | $0.00 |
| Cash Change Amount: | $0.00 |

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

Deborah Deitsch-Perez
Michael P. Aigen
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: Deborah.deitschperez@stinson.com
Email: Michael.aigen@stinson.com

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION



| In re: | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § § | **Chapter 11** |
| | § | **Case No. 19-34054-sgj11** |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § | |
| Plaintiff, | § § | **Civ. Act. No. 3:21-cv-00881-X** |
| v. | § § § | **(Consolidated with 3:21-cv-00880-X, 3:21-cv-01010-X, 3:21-cv-01378-X, 3:21-cv-01379-X)** |
| **HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., et al.** | § § § | |
| Defendants. | § | |

## <u>NOTICE OF BONDING</u>

PLEASE TAKE NOTICE that, on October 12, 2023, in accordance with the terms of the

Binding Bonding Agreement attached as Exhibit A to Order Granting Joint Agreed Emergency

Motion for Order Approving Stipulation for the Bonding of Judgments and Stays of Executions

Pending Appeals [Dkt 149], as well as the Amended Final Judgments against James Dondero [Dkt.

CORE/3522697.0002/185043285.1

1934054231013000000000003

148], Defendant James Dondero tendered bond to the Treasury Registry for the United States District Court for the Northern District of Texas. Proof of payment is attached hereto as Exhibit 1.

Dated: October 12, 2023

Respectfully submitted,

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on October 12, 2023, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all parties registered to receive electronic notices in this case.

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez

CORE/3522697.0002/185043285.1

# EXHIBIT 1

Case 19-34054-sgj11 Doc 4000-1 Filed 01/01/24 Entered 01/01/24 19:38:23 Desc
Case 3:21-cv-00881-X Document 161-1 Filed 06/01/23 Page 2 of 2 PageID 11766
Generated: Oct 12, 2023 4:16PM

Page 1/1

# U.S. District Court

## Texas Northern - Dallas

Receipt Date: Oct 12, 2023 4:16PM

James Dondero

Rcpt. No: 300008175                     Trans. Date: Oct 12, 2023 4:16PM                     Cashier ID: #OH

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|---------------------|-----|-------|-----|
| 701 | Treasury Registry | DTXN321CV000881 /005 JAMES DONDERO **FBO:** James Dondero | 1 | 8904052.87 | 8904052.87 |

| CD | Tender | | | | Amt |
|----|--------|--|--|--|-----|
| CH | Check | #046450 | 10/12/2023 | | $8,904,052.87 |
| | | | Total Due Prior to Payment: | | $8,904,052.87 |
| | | | Total Tendered: | | $8,904,052.87 |
| | | | Total Cash Received: | | $0.00 |
| | | | Cash Change Amount: | | $0.00 |

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

Deborah Deitsch-Perez
Michael P. Aigen
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: Deborah.deitschperez@stinson.com
Email: Michael.aigen@stinson.com

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re:<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>Debtor. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Chapter 11**<br><br>**Case No. 19-34054-sgj11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., et al.**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civ. Act. No. 3:21-cv-00881-X**<br><br>**(Consolidated with 3:21-cv-00880-X, 3:21-cv-01010-X, 3:21-cv-01378-X, 3:21-cv-01379-X)** |

## <u>NOTICE OF BONDING</u>

PLEASE TAKE NOTICE that, on November 1, 2023, in accordance with the terms of the

Binding Bonding Agreement attached as Exhibit A to Order Granting Joint Agreed Emergency

Motion for Order Approving Stipulation for the Bonding of Judgments and Stays of Executions

Pending Appeals [Dkt 149], as well as the Amended Final Judgments against the Judgment

CORE/3522697.0002/185352114.1



Debtors [Dkts. 143-148], Defendants James Dondero, NexPoint Real Estate Partners LLC (f/k/a

HCRE Partners LLC), NexPoint Asset Management LP, NexPoint Advisors LP, and Highland

Capital Management Services, Inc. tendered top-up interest payments to the Treasury Registry for

the United States District Court for the Northern District of Texas. Proof of payment is attached

hereto as Exhibit 1.

Dated: November 1, 2023

Respectfully submitted,

/s/ Deborah Deitsch-Perez
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on November 1, 2023, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all parties registered to receive electronic notices in this case.

/s/ Deborah Deitsch-Perez
Deborah Deitsch-Perez

CORE/3522697.0002/185352114.1

# EXHIBIT 1

# U.S. District Court

## Texas Northern - Dallas

Receipt Date: Nov 1, 2023 1:49PM

Rcpt. No: 300008516                    Trans. Date: Nov 1, 2023 1:49PM                    Cashier ID: #OH

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|---------------------|-----|-------|-----|
| 701 | Treasury Registry | DTXN321CV000881 /005 JAMES DONDERO **FBO:** James Dondero | 1 | 3798.75 | 3798.75 |
| 701 | Treasury Registry | DTXN321CV000881 **FBO:** Nextpoint Real Estate Partners LLC | 1 | 5275.40 | 5275.40 |
| 701 | Treasury Registry | DTXN321CV000881 /003 NEXPOINT ASSET MGMT LP **FBO:** NexPoint Asset Management LP | 1 | 4701.90 | 4701.90 |
| 701 | Treasury Registry | DTXN321CV000881 /002 NEXPOINT ADVISORS LP | 1 | 10069.64 | 10069.64 |
| 701 | Treasury Registry | DTXN321CV000881 /001 HIGHLAND CAPITAL MGMT SERVICES INC | 1 | 2952.20 | 2952.20 |

| CD | Tender | | | | Amt |
|----|--------|--|--|--|-----|
| CH | Check | #046504 | 11/1/2023 | | $26,797.89 |
| | | | Total Due Prior to Payment: | | $26,797.89 |
| | | | Total Tendered: | | $26,797.89 |
| | | | Total Cash Received: | | $0.00 |
| | | | Cash Change Amount: | | $0.00 |

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.