PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (admitted *pro hac vice*)
John A. Morris (NY Bar No. 2405397) (admitted *pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (admitted *pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |

**HIGHLAND CAPITAL MANAGEMENT L.P.'S REPLY IN FURTHER SUPPORT
OF ITS MOTION FOR (A) BAD FAITH FINDING AND (B) ATTORNEYS' FEES
AGAINST NEXPOINT REAL ESTATE PARTNERS LLC (F/K/A HCRE
PARTNERS, LLC) IN CONNECTION WITH PROOF OF CLAIM 146**

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

4855-3781-9807.1 36027.003

Highland Capital Management, L.P. ("Highland"), the reorganized debtor in the above-captioned bankruptcy case, by and through its undersigned counsel, hereby files this Reply in further support of its Motion and in response to HCRE's *Response to Debtor's [sic] Motion for (A) Bad Faith Finding and (B) Attorneys' Fees* [Docket No. 3995] (the "Response").[2]

## PRELIMINARY STATEMENT

1. Predictably, HCRE—acting through Mr. Dondero (HCRE's sole manager since HCRE was formed) and Mr. McGraner (HCRE's only other officer)—defiantly doubles down on its disingenuous positions. Nothing in the Response warrants the denial of the Motion or its requested award of attorneys' fees. In fact, the Response only amplifies the propriety and necessity of granting the requested relief.

2. As the record makes clear, HCRE and its principals clearly and convincingly acted in bad faith by (a) knowingly filing and prosecuting a baseless Proof of Claim, (b) opposing the Disqualification Motion when—as was revealed on cross-examination during the hearing on the merits—that there was no basis for doing so, (c) seeking an unfair litigation advantage by trying to withdraw its Proof of Claim *after* taking Highland's depositions but *before* subjecting its own witnesses to questioning, and (d) trying at all times to preserve for another day the claims it asserted (*i.e.*, to "reform, rescind and/or modify the agreement").

3. HCRE must be held accountable for this wrongful conduct. The Motion should be granted.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in *Highland Capital Management L.P.'s Motion for (A) Bad Faith Finding and (B) Attorneys' Fees Against NexPoint Real Estate Partners LLC (f/k/a HCRE Partners, LLC) in Connection with Proof of Claim 146* [Docket No. 3851] (the "Motion").

## **REPLY STATEMENT OF FACTS**

4. The evidence clearly and convincingly proves that HCRE engaged in numerous acts of bad faith in connection with the filing and prosecution of its Proof of Claim.

A. **Clear and Convincing Evidence Proves That Mr. Dondero Had No Basis to Swear That the Proof of Claim Was True and Correct**

5. As established in the Motion, the evidence clearly and convincingly proves that Mr. Dondero lacked *any* basis to swear, under penalty of perjury, that HCRE's Proof of Claim was true and correct. Motion ¶¶ 14-15 (citing Morris Ex. D. at 4-5).

6. In an effort to dodge the obvious impact of Mr. Dondero's testimony, HCRE tries to deflect by averring that Mr. Dondero was too busy to read and understand the proof of claim and its impact because he supposedly "had a host of responsibilities across a sprawling and sophisticated corporate structure and relied on numerous individuals within that structure to help manage the day-to-day operations of Highland and its subsidiaries and managed funds." Response ¶ 16. But to the best of Highland's knowledge, the "very important person" defense has never been adopted by any court anywhere.

7. HCRE also contends that Mr. Dondero "relied" on his attorneys who he "believed" had "worked with some of the other staff" to prepare the Proof of Claim and vaguely described a "process" by which "complex documents" were signed. *See generally* Response ¶¶ 15-24.

8. But Mr. Dondero had *no* basis to rely on anyone because he asked no questions, did no diligence, and made no effort to determine if reliance was reasonable under the circumstances. *See* Motion ¶ 14 (summarizing extensive testimony cited in Morris Ex. D at 4-5). Nor did he have any basis to know whether the so-called "process" for signing "high risk" documents was followed in this case (assuming, for the sake of argument, such a "process" actually existed).

9. Aside from Mr. Dondero's utter lack of diligence, the most damning evidence that clearly and convincingly proves there was no good faith basis for the Proof of Claim were his own unqualified admissions and those of his partner, Mr. McGraner, that the allocation of the membership interests in the Amended LLC Agreement—including Highland's 46.06% interest—accurately reflected the parties' contemporaneous intent. Morris Dec. Ex. E at 53:25-54:23 (Mr. Dondero admitted knowing that Highland's 49% interest in SE Multifamily would be diluted by 6% when BH Equities was admitted as a member such that Exhibit A to the Amended LLC Agreement comported with his expectations when he signed the Agreement); 93:24-94:20, 95:3-103:20, 105:11-107:22 (Mr. McGraner knew the allocation of membership interests in Schedule A and other provisions in the Amended LLC Agreement accurately reflected the parties' intent).

10. Mr. Dondero did nothing to satisfy himself that there was a good faith basis to sign the Proof of Claim. If he only searched his own memory or asked Mr. McGraner, he would have realized that fact. His failure to do so warrants a finding of bad faith.

**B.  Clear and Convincing Evidence Proves That HCRE Opposed Highland's Disqualification Motion in Bad Faith**

11. The evidence clearly and convincingly proves that HCRE opposed Highland's Disqualification Motion in bad faith.

12. As set forth in the Motion, Wick Phillips initially represented HCRE in this contested matter, including filing HCRE's Response in which HCRE baselessly asserted that the organizational documents "improperly allocate[d] the ownership percentages of the members thereto due to mutual mistake, lack of consideration, and/or failure of consideration" such that HCRE "ha[d] a claim to reform, rescind and/or modify the agreement." Motion ¶ 6 (citing Morris Dec. Ex. C ¶5).

13. Highland moved to disqualify Wick Phillips because that firm represented both HCRE and Highland in Project Unicorn (the given name of the SE Multifamily project), but HCRE opposed Highland's Disqualification Motion. After being forced to engage in fact and expert discovery and conduct a lengthy argument, the Court granted Highland's Disqualification Motion but denied Highland's request to recover attorneys' fees. Motion ¶ 8 (citing Morris Dec. Ex. D at 6-7).

14. However, at the hearing on the merits of HCRE's Proof of Claim, it became obvious that HCRE never had a good faith basis to oppose the Disqualification Motion. There, Mr. McGraner—HCRE's self-described "quarterback" for the SE Multifamily transaction—admitted that (a) he ***knew*** Wick Phillips jointly provided legal services to HCRE *and* Highland in connection with Project Unicorn and that, in fact, "all of the law firms were working on behalf of both HCRE and Highland jointly"; and (b) HCRE opposed Highland's disqualification motion ***after*** Highland refused to provide Wick Phillips with a waiver. Ex. 5 at 126:8-132:3. Mr. McGraner's testimony clearly and convincingly proves that HCRE lacked a good faith basis to oppose the Disqualification Motion because it is axiomatic that a law firm should never be adverse to a former client in connection with a prior representation, particularly where the former client refuses to provide a waiver.[3]

C. **Clear and Convincing Evidence Proves That HCRE Moved to Withdraw Its Proof of Claim in Bad Faith**

15. As set forth in the Motion, the timing of HCRE's Motion to Withdraw the Proof of Claim clearly and convincingly proves that the Motion to Withdraw was filed in bad faith as part

---

[3] To be clear, Highland respects the Court's prior ruling and does not seek to recover attorneys' fees in connection with the Disqualification Motion. *See* Morris Dec. ¶11. However, in light of Mr. McGraner's testimony, the Court could and should find that HCRE's opposition to Highland's Disqualification Motion was made in bad faith.

of a continuing game of whack-a-mole foisted on the Highland estate by Mr. Dondero. *See* Motion ¶ 10.

16. HCRE failed to address this point and has never explained why it decided to abruptly file the Motion to Withdraw two business days *after* completing Highland's depositions but two business days *before* the consensually-scheduled depositions of HCRE's witnesses were to take place. *Id*. The timing of HCRE's Motion to Withdraw was not an accident.

17. The only fair conclusion is that HCRE—in another act of bad faith—wanted to take the depositions of Highland's witnesses for use in later litigation to challenge Highland's ownership interest in SE Multifamily while shielding its own witnesses from testifying—a conclusion validated by HCRE's later attempts to preserve the very claims upon which the Proof Claim was based.

D. **Clear and Convincing Evidence Proves That HCRE Tried to Preserve Its Claims in Bad Faith**

18. HCRE contends that, rather than "taking a win" after it moved to withdraw its Proof of Claim, "the Debtor [sic] and its lawyers chose to generate fees to get to the same result." Response at 2 (Summary). HCRE continues to play games. The evidence clearly and convincingly proves that any such "victory" through the withdrawal of the Proof of Claim would have been pyrrhic because ***HCRE—in a clear act of bad faith—tried to withdraw its Proof of Claim while preserving the substance of it claims for another day***. Had HCRE's duplicitous strategy been successful, Highland's interest in SE Multifamily would have remained subject to challenge—an untenable result for anyone, let alone a post-confirmation entity seeking to implement a court-approved asset monetization plan.

19. Again, HCRE expressly asserted that it "ha[d] a claim to reform, rescind and/or modify the agreement." Motion ¶ 6 (citing Morris Dec. Ex. C ¶5). This Court denied the Motion

to Withdraw precisely because "HCRE was not willing to agree, at the hearing, to language in an order allowing it to withdraw its Proof of Claim stating, unequivocally, that HCRE waived the right to relitigate or challenge the issue of Highland's 46.06% ownership interest in SE Multifamily." Notably, even after expressing concerns about the "integrity of the bankruptcy system and claims process" and "gamesmanship," the Court *still* held open the possibility of signing an agreed order and denied the Motion to Withdraw only after no such consensual order was presented. Morris Dec. Ex. D at n. 36.

20. Undeterred, HCRE continued right through closing argument to try and limit this Court's ruling to the denial of the Proof of Claim in an effort to save for another day the very claims asserted in support of its Proof of Claim (*i.e.*, "claim[s] to reform, rescind and/or modify the agreement"). Morris Dec. Ex. E at 180:17-181:2 ("They want you to make findings that we can't raise any of these other issues, recissions, stays, et cetera, going forward. That's not proper relief on a proof of claim"). The Court rebuffed HCRE's attempt to preserve its claims, and Highland succeeded in getting what it was indisputably entitled to and what would have been unavailable had HCRE been permitted to simply withdraw its Proof of Claim: good, clear title to its 46.06% interest in SE Multifamily that everyone—HCRE, Mr. Dondero, Mr. McGraner, and BH Equities—unequivocally acknowledged was Highland's intended allocation when the Amended LLC Agreement was executed and every day since, until Mr. Dondero and Mr. McGraner tried to change their minds, post-petition. *See infra* ¶¶ 22-23.

E. **Clear and Convincing Evidence Proves That the Proof of Claim Lacked Any Basis in Fact or Law**

21. The undisputed evidence clearly and convincingly proves that HCRE's Proof of Claim lacked any factual or legal basis and was pursued in bad faith.

22. Specifically, Mr. McGraner's admissions at trial clearly and convincingly established that no basis existed for HCRE's contention that "Highland had an improperly large equity allocation in SE Multifamily given the size of its investment and contribution" (Response ¶ 28), or to "reform, rescind and/or modify the agreement." Morris Ex. C ¶ 5. Mr. McGraner admitted, among other things, that:

- He (a) owns 25% of HCRE; (b) has been one of only two officers of HCRE since it was formed (Mr. Dondero is HCRE's Manager); (c) is one of only two people authorized to act on HCRE's behalf (Mr. Dondero is the other); and (d) was the "quarterback" of the transactions concerning SE Multifamily (Ex. E at 75:20-76:4; 79:12-25; 80:3-5; 82:13-16);

- "Highland bankrolled HCRE's business" *(id.* at 80-12-20);

- He (a) did not believe there were any mistakes in the allocation of membership interests in the Original LLC Agreement and (b) had no reason to believe that Agreement failed to reflect the parties' intent (*id*. at 82-21-83:10);

- Mr. McGraner and Mr. Dondero included Highland as a member of SE Multifamily because (a) HCRE did not have the financial wherewithal to close on the Key Bank loan by itself and needed Highland to provide "capital flexibility" by co-signing for the Key bank loan;[4] and (b) Highland's inclusion was expected to provide tax benefits (*id*. at 83:11-85:2);

- With a March 15, 2019 deadline for the completion of an amendment to the Original LLC Agreement that would both permit BH Equities to be admitted as a new member and have the amendment retroactive to August 2018, the parties worked to update the contribution schedule with full knowledge of Highland's capital contribution (*Id*. at 86:9-88-4);

- Mr. McGraner (a) reviewed the draft Schedule A for the proposed amendment; (b) saw that it unambiguously showed Highland making a $49,000 capital contribution and receiving a 46.06% interest in SE Multifamily; (c) believed Schedule A reflected his understanding of the terms between Highland and HCRE; and (d) knew of no obligation that

---

[4] Mr. McGraner admitted that "in the end KeyBank insisted on Highland being a coborrower." Ex. E at 85:2-4. Thus, it is indisputable that (i) HCRE could not have closed on the KeyBank loan and executed Project Unicorn without Highland, and (ii) Highland was a co-obligor under the KeyBank loan.

- Highland had to make any future additional capital contribution (*id*. at 93:24-94:20; 105:11-106:7; Ex. 30);

- The allocation of membership interests in Schedule A was consistent with the parties' negotiation of the "waterfall" and other provisions in the Amended LLC Agreement that HCRE understood accurately reflected the parties' intent (*id*. at 95:3-103:20; 106:8-107:22);

- To the best of Mr. McGraner's knowledge and understanding, Schedule A as set forth in the Amended LLC Agreement reflected the parties' intent at the time it was signed (*id*. at 100:-21-101:21);

- HCRE filed the claim because Highland and HCRE were "no longer the same partners" after Highland filed for bankruptcy and the dispute was just "an unintended consequence." (*id*. at 108:3-109:4).

23. For his part, Mr. Dondero also flatly admitted that (a) Highland was included in the SE Multifamily as part of a tax scheme to shelter income, and (b) his understanding when he signed the Amended LLC Agreement was that Highland's 49% interest in SE Multifamily under the Original LLC Agreement would be reduced by 6% to account for the interest being conveyed to BH Equities. Morris Ex. E at 43:2-14, 51:11-52:18, 53:25-54:23.

24. Given these extensive, undisputed, and unqualified admissions, there never was a good-faith basis to (a) support HCRE's contention in the Proof of Claim that "all or a portion of Debtor's equity, ownership, economic rights, equitable or beneficial interests in SE Multifamily does [not] belong to Debtor or may be property of Claimant" (Morris Dec. Ex. 1, Exhibit A), or (b) to "reform, rescind and/or modify the agreement." Motion ¶ 6 (citing Morris Dec. Ex. C ¶ 5).

### F. The Record Supports Highland's Request for Attorneys' Fees

25. HCRE makes various complaints about Highland's request for attorneys' fees and generally contends that the fees are "excessive." Response ¶¶ 33-45. None of HCRE's gripes withstand scrutiny.

26. ***First***, HCRE baldly contends that the "Debtor [sic] also insisted on taking additional discovery in advance of [the] hearing that could and should have been avoided

altogether." Response ¶ 33. But *no* merits-based depositions had been taken before August 2022. HCRE's contention is also undermined by the fact that the transcripts from the depositions of HCRE, Mr. McGraner, BH Equities, and SE Multifamily's accountant were all admitted into evidence, supported Highland's objection, and—in the case of Mr. McGraner—was used repeatedly to impeach his credibility.

27. **Second**, HCRE contends (again, with no legal or factual support) that Highland's fee request of $809,776.50 is "*per se* excessive for a single proof of claim." Response ¶ 34. This argument is likewise without merit. Just six months before the hearing in this contested matter, The Dugaboy Investment Trust represented to this Court that Highland's interest in SE Multifamily was worth $20 million.[5] Spending less than 5% of the value of an asset (according to Mr. Dondero's family trust) to obtain good, clear title is economically rational and consistent with the Claimant Trust's duty to maximize value for the benefit of the Claimant Trust's beneficiaries.

28. **Third**, HCRE complains that the identities of three professionals (two of whom billed one hour or less) were undisclosed. Response ¶¶ 35, 38-40. "BEL" are the initials for Beth Levine, a litigator who billed one hour of time. "RMS" are the initials for Robert Saunders, a bankruptcy attorney who billed 0.6 hours of time. "JMF" are the initials for Joshua Fried, a bankruptcy partner who billed 15.1 hours of time. Collectively, these attorneys—who were obviously called upon to provide discrete support—charged 0.023% of the total fee request.[6]

---

[5] *See Motion for Determination of the Value of the Estate and Assets Held by the Claimant Trust* [Docket No. 3382]. There is no dispute that HCRE is the manager of SE Multifamily and therefore—through Mr. Dondero—would be best positioned to opine on the value of Highland's interest in SE Multifamily.

[6] Despite HCRE's hyperbolic suggestion that there were "layers of timekeepers," (Response ¶ 45), over 82% of the charges related to one litigation partner (John Morris), one litigation associate (Hayley Winograd), and one paralegal (La Asia Canty). Two other lawyers who have been on the Pachulski team since the inception of the engagement—Jeffrey Pomerantz and Gregory Demo—billed relatively modest amounts of time over the course of this prolonged litigation. *See* Response ¶ 36 (Table 1). In context, there is no factual basis for HCRE's suggestion that this matter was overstaffed.

29. **Fourth**, HCRE complains that two lawyers charged (collectively) $9,840 (or, 0.012% of the total fee request) for travel time. Response ¶37. But (a) as HCRE acknowledges, non-working travel time is billed at half the attorney's regular hourly rate (*see* Response ¶ 36 (Table 1)), and (b) the charges cannot come as a surprise to Mr. Dondero because Highland agreed to pay for travel time in its engagement letter signed prior to the Petition Date.[7]

30. **Fifth**, HCRE complains about Mr. Agler's invoice. Response ¶ 42. As was previously explained, Mr. Agler provided "specialized tax advice concerning SE Multifamily and other matters related to the Proof of Claim." Morris Dec. ¶ 15. Notably, Mr. Agler provided his services in August 2022 in conjunction with Highlands's deposition preparation, including the deposition of SE Multifamily's accountant. These services were necessary because—as Mr. Dondero and Mr. McGraner admitted and as the evidence showed—Highland's participation in SE Multifamily was expected to provide substantial tax benefits. *See* Morris Ex. 5 at 43:2-14; 83:17-84:2; 191:23-193:21 (citing to testimony and tax returns that were admitted into evidence).

31. In the end, there is no basis to modify or reduce Highland's request for attorneys' fees. The fees were well-documented, reasonable under the circumstances, and should be borne by HCRE as a bare minimum sanction for its bad faith filing and pursuit of the Proof of Claim.

## REPLY LEGAL ARGUMENT

32. The Court should exercise its inherent authority under section 105 of the Bankruptcy Code to issue sanctions against HCRE. As set forth in the Motion, "it is well-settled that a court may impose sanctions against litigants so long as the court makes a specific finding that they engaged in bad faith conduct." *In re Skyport Glob. Commc'n, Inc.*, 642 F. App'x 301,

---

[7] *See Declaration of Hayley R. Winograd in Support of PSZJ's Amended Opposition to Motion of James D. Dondero and Strand Advisors, Inc. for Leave to File Adversary Complaint*, [Docket No. 3998], Ex. 1 § E.2 ("The Firm will charge for waiting time in court and elsewhere and for travel time, both local and out of town"). The Court can and should take judicial notice that the substance of this provision is customary in the industry.

304 (5th Cir. 2016) (citing *In re Yorkshire, LLC*, 540 F.3d 328, 332 (5th Cir. 2008)); *see also In re Cleveland Imaging and Surgical Hosp., L.L.C.*, 26 F.4th 285, 297 (5th Cir. 2022) (noting that a bankruptcy court may sanction litigants if it finds, by clear and convincing evidence, that they acted in bad faith or willfully abused the judicial process").

33. Here, the record establishes that HCRE clearly and convincingly acted in bad faith in connection with the filing and prosecution of its Proof of Claim. As set forth in the Motion and above, the evidence at trial established that HCRE knew when it filed the Proof of Claim that no legal or factual basis existed for HCRE's contention that "Highland had an improperly large equity allocation in SE Multifamily given the size of its investment and contribution." Mr. Dondero had no basis to swear that the Proof of Claim was true and correct at the time he signed it. Mr. Dondero and Mr. McGraner both testified that the allocation of the membership interests in the Amended LLC Agreement—the very basis for the Proof of Claim—accurately reflected the parties' contemporaneous intent. And although HCRE insists that it tried to withdraw the Proof of Claim, HCRE did not do so in good faith. Rather, it did so only after trying to obtain a patently unfair litigation advantage (*i.e.*, after taking Highland's depositions but before subjecting its own witnesses to questioning) while trying at all times to preserve for another day the very baseless claims asserted.

34. Viewed in its entirety, the record supports a finding that HCRE acted in bad faith in connection with the filing and prosecution of its Proof of Claim. *See In re Carroll*, 850 F.3d 811, 816 (2017) ("At bottom, the record fully supports the bankruptcy court's determination of bad faith" where, among other things, parties attempted to relitigate issues that had been resolved, pursue remedies that were unsupported, and "persisted in their unsupported filings"); *In re Jacobsen*, 609 F.3d 647, 662 (5th Cir. 2010) (affirming bankruptcy court's finding of bad faith as

not clearly erroneous where "[t]he bankruptcy court had ample evidence in the form of Jacobsen's own testimony," and "the bankruptcy court, sitting as the factfinder, had the ability to evaluate Jacobsen's testimony and his credibility firsthand. We have little difficulty concluding that a finding of bad faith is plausible in light of the record viewed in its entirety"); *Cleveland*, 26 F.4th at 298 (affirming bankruptcy court's conclusion that parties "were acting in bad faith when they filed their adversary. The factual findings stand.")[8]

35.     HCRE's cases in support of its contention that the evidence here does not establish its bad faith are inapposite. For instance, in *In re Pastran*, 462 B.R. 201 (2011), the court found that a loan servicer, in filing motion for relief from a stay as to a deed of trust property, did not act with "bad faith, improper motive, or reckless disregard of its duty to the court," where, although they presented "somewhat lackluster evidence" at a hearing, "the court does not think that forgetfulness in offering a piece of evidence or carelessness when choosing the proper best witness to prove up one's case necessarily rises to the level which would allow this court to assess the Debtor's attorney's fees against" that party. *Id.* at 208-09.  Here, by contrast, in filing the Proof of Claim and engaging in all the proceedings that followed, HCRE's conduct did not amount to simple carelessness or forgetfulness but was completely intentional.

36.     In *National Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206 (2023), the court found that a licensor's conduct in entering into a settlement agreement with a licensee for patent infringement action in connection with a patent that licensor did not own did not rise to the level of a fraud on the court, thus precluding the district court from invoking its inherent authority to dismiss the licensor's claim for breach of settlement agreement. The court explained that there was no evidence that licensor's assertions regarding its ownership of the patent in the underlying action

---

[8] *See also* Motion ¶ 25 (collecting cases).

amounted to an "unconscionable plan or scheme designed to improperly influence the court," or that the party "committed a fraud on the court or otherwise abused the judicial process … by clear and convincing evidence." *Id.* at 220.  Here, the issue is not whether HCRE's conduct amounted to the "fraud on the court" or whether HCRE was engaged in a "scheme which [was] designed to improperly influence the court in its decision."  It is whether HCRE's conduct amounted to bad faith by knowingly filing a baseless Proof of Claim, interfering with discovery on that Proof of Claim, and then abruptly withdrawing that Proof of Claim while attempting to preserve the bogus issues for a later time.

37. *In re Wingerter*, 594 F.3d 931 (2010) is equally distinguishable. There, the court found that a creditor's filing of a proof of claim that it was ultimately forced to withdraw for lack of supporting documentation did not warrant Rule 9011 sanctions.  The creditor made "reasonable" pre-filing inquiry into the validity of a claim which it had purchased from an intermediary when it subsequently filed the proof of claim based on this claim, by not only conducting its own pre-purchase investigation, but insisting on a warranty of the claim's validity from the intermediary—a company from which it had purchased 1,017 claims, only two of which were found to be invalid, and which itself had acquired the claim only after conducting an investigation using collection agency with which it subcontracted. The court found that, under the particular circumstances of that case, the creditor's failure to insist that the intermediary provide it with originating documents supporting the claim, in an attempt to cut down on the costs of the purchase transaction, did not affect the reasonableness of the creditor's inquiry. *See id.* at 939-40.  HCRE's level of pre-filing diligence (none) does not come close to the level of pre-filing diligence undertaken by the creditor in *Wingerter*.

38.     Here, unlike in all the cases cited by HCRE, a finding that HCRE engaged in bad faith in connection with its Proof of Claim is clearly and convincingly supported by the record. HCRE's argument that the attorney's fees demand is "excessive," (Response ¶¶ 59-63), is unsupported and without merit for all the reasons discussed *supra* ¶¶ 25-31.  Accordingly, the Court should exercise its broad discretion in issuing sanctions against HCRE in the form of reimbursement to Highland for its attorney's fees and costs. *See Skyport*, 642 Fed. Appx. at 304 (finding "the bankruptcy court did not abuse its discretion in ordering sanctions"); *In re Monteagudo*, 536 Fed. Appx. 456, 459 (5th Cir. 2013) (sanctions orders granted under bankruptcy court's inherent powers are reviewed for "abuse of discretion"); *In re ASARCO, L.L.C.*, 751 F.3d 291, 294 (5th Cir. 2014), *aff'd sub nom. Baker Botts L.L.P. v ASARCO LLC*, 576 U.S. 121 (2015) ("A bankruptcy court has 'broad discretion' to determine reasonable attorneys' fees, as the bankruptcy court is familiar "with the actual services performed" and is well positioned to determine "what is just and reasonable") (internal quotations omitted); *Yorkshire*, 540 F.3d at, 332-33 (finding the bankruptcy court did not abuse its discretion in the amount of sanctions it imposed against Appellants under its inherent authority after making a finding of bad faith).  The record establishes that HCRE acted in bad faith, and the Court should award sanctions against HCRE for its bad faith conduct.

## CONCLUSION

For the foregoing reasons, and those set forth in the Motion, Highland respectfully requests that the Court enter an order finding that HCRE acted in bad faith in the filing and prosecution of the Proof of Claim; awarding Highland its attorneys' fees in the amount of $809,776.50, plus expenses of $16,164.05; and granting such other and further relief as the Court deems just and proper under the circumstances.

| | |
|---|---|
| Dated:  January 19, 2024 | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>Jeffrey N. Pomerantz (CA Bar No. 143717)<br>John A. Morris (NY Bar No. 2405397)<br>Gregory V. Demo (NY Bar No. 5371992)<br>Hayley R. Winograd (NY Bar No. 5612569)<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 277-6910<br>Facsimile:  (310) 201-0760<br>E-mail: jpomerantz@pszjlaw.com<br>            jmorris@pszjlaw.com<br>            gdemo@pszjlaw.com<br>            hwinograd@pszjlaw.com<br><br>- and -<br><br>**HAYWARD PLLC**<br><br>*/s/ Zachery Z. Annable*<br>Melissa S. Hayward<br>Texas Bar No. 24044908<br>MHayward@HaywardFirm.com<br>Zachery Z. Annable<br>Texas Bar No. 24053075<br>ZAnnable@HaywardFirm.com<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Telephone: (972) 755-7100<br>Facsimile:  (972) 755-7110<br><br>*Counsel for Highland Capital Management, L.P.* |