# EXHIBIT A

Docket #4038  Date Filed: 03/05/2024



**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 4, 2024**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| IN RE: | § | |
| | § | **Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj-11** |
| **Reorganized Debtor** | § | |

**MEMORANDUM OPINION AND ORDER GRANTING HIGHLAND CAPITAL
MANAGEMENT, L.P.'S MOTION FOR (A) BAD FAITH FINDING
AND (B) ATTORNEYS' FEES AGAINST NEXPOINT REAL ESTATE PARTNERS LLC
(F/K/A HCRE PARTNERS, LLC) IN CONNECTION WITH PROOF OF CLAIM # 146**

### I.    INTRODUCTION

Before this court is a sanctions motion[1] filed by Highland Capital Management, L.P.

("Highland," the "Debtor," or the "Reorganized Debtor"). [2]  The motion seeks sanctions against

---

[1] *Highland Capital Management, L.P.'s Motion for (A) Bad Faith Finding and (B) Attorneys' Fees against NexPoint Real Estate Partners LLC (f/k/a HCRE Partners, LLC) in connection with Proof of Claim 146* ("Sanctions Motion"). Dkt. No. 3851.

[2] Highland is a reorganized debtor under the confirmed *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (the "Plan"). Dkt. No. 1808. *See Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* ("Confirmation Order"). Dkt. No. 1943.



NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC ("NexPoint/HCRE") for its filing, prosecution, and then abrupt attempt to withdraw a meritless proof of claim (after almost three years of protracted litigation).

NexPoint/HCRE filed the subject proof of claim, #146 on the claims register ("Proof of Claim"), on April 8, 2020.[3]   The Proof of Claim was signed electronically by James D. Dondero ("Dondero") and was prepared and filed by a law firm that was representing him personally at that time.[4]   The Proof of Claim was not in a liquidated amount and was somewhat ambiguous.  It stated in an Exhibit A thereto, that NexPoint/HCRE, which was a limited partner, along with Highland, in a limited liability company called SE Multifamily Holdings, LLC ("SE Multifamily")—an entity which owned valuable real estate—"may be entitled to distributions out of SE Multifamily, but such distributions have not been made because of the actions or inactions of the Debtor" and added that Highland's equity interest "may be the property of Claimant.  Accordingly, Claimant may have a claim against the Debtor."  NexPoint/HCRE stated that it would update the Proof of Claim to provide the exact amount of it "in the next ninety days" but never did.

Highland objected to the Proof of Claim.  Thereafter, NexPoint/HCRE (while still not providing any liquidated amount of its Proof of Claim) refined its position therein to argue that the organizational documents relating to SE Multifamily improperly allocated the ownership percentages of the equity members, due to mutual mistake, lack of consideration, and/or failure of consideration. NexPoint/HCRE essentially sought to reform, rescind, and/or modify the SE Multifamily limited liability company agreement (and possibly other documentation) to give Highland less ownership (or no ownership interest) in SE Multifamily and, accordingly,

---

[3] Claim No. 146.

[4] Bonds Ellis Eppich Schafer Jones LLP.

NexPoint/HCRE would have a larger ownership interest in SE Multifamily.  Next, there occurred years of litigation between the parties, including:  (a) a skirmish over Highland's motion to disqualify NexPoint/HCRE's newest counsel (*i.e.,* a law firm that had represented both Highland and NexPoint/HCRE in transactions involving SE Multifamily), which was ultimately granted, and (b) an eleventh-hour attempt by NexPoint/HCRE to withdraw its Proof of Claim (by its newest law firm—this one #3 regarding the Proof of Claim), on the eve of depositions of its principals, including Dondero, and just prior to a trial on the merits.  Highland objected to the withdrawal. The court held a hearing on that, as required by Bankruptcy Rule 3006.  The court declined to allow withdrawal of the Proof of Claim, when the parties could not stipulate to an agreed form of order (*i.e.,* NexPoint/HCRE was unwilling to withdraw the Proof of Claim **with prejudice** to asserting its claims again in any future litigation in any forum).

Painfully, after all this, an evidentiary hearing was held on the merits of the Proof of Claim ("Trial") on November 1, 2022.  During the Trial, Highland made an oral motion for a bad faith finding and assessment of attorneys' fees against NexPoint/HCRE in connection with its filing and prosecution of the Proof of Claim ("Oral Sanctions Motion"), which this court took under advisement, along with the consideration of the Proof of Claim as a whole.

On April 28, 2023, this court entered a 39-page memorandum opinion and order[5] sustaining Highland's objection to NexPoint/HCRE's Proof of Claim, but denying Highland's Oral Sanctions Motion, without prejudice, **as procedurally deficient in that it was made orally and for the first time during the Trial.** Thus, the Oral Sanctions Motion failed to provide NexPoint/HCRE sufficient notice and an opportunity to respond and, therefore, did not satisfy concerns of due process.

---

[5] *See Memorandum Opinion and Order Sustaining Debtor's Objection to, and Disallowing, Proof of Claim Number 146 [Dkt. No. 906]* ("Proof of Claim Disallowance Order"). Dkt. No. 3767.

On June 16, 2023, Highland filed the instant Sanctions Motion, setting forth the legal and factual bases for the relief sought. The Sanctions Motion specifically seeks a finding of bad faith against NexPoint/HCRE and reimbursement of Highland's attorneys' fees and costs, as a sanction for NexPoint/HCRE's filing and prosecution of the Proof of Claim.

After due notice to NexPoint/HCRE, and a hearing held January 24, 2024 on the Sanctions Motion ("Sanctions Motion Hearing"), and after consideration of the pleadings filed, evidence in the record, and arguments of counsel, the court finds, for the reasons detailed in the findings of fact and conclusions of law below,[6] that NexPoint/HCRE acted in bad faith and willfully abused the judicial process in filing, prosecuting, and then pursuing an eleventh-hour withdrawal of its Proof of Claim. Accordingly, NexPoint/HCRE will be required, as a sanction, to reimburse Highland's attorneys' fees and costs (totaling **$825,940.55**) incurred in connection with its objection to the Proof of Claim.

## II.    JURISDICTION

This court has jurisdiction and authority to determine and enter a final order in this matter, pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A), (B), and (O) and 1334.[7]

## III.    BACKGROUND, PROCEDURAL HISTORY, AND FINDINGS OF FACT

### A. *Incorporation Herein of Proof of Claim Disallowance Order*

As noted above, this court, on April 28, 2023, issued its 39-page Proof of Claim Disallowance Order, sustaining Highland's objection to NexPoint/HCRE's Proof of Claim

---

[6] To the extent that any of the findings of fact should be construed as a conclusion of law, it shall be construed as such. To the extent that any of the conclusions of law should be construed as a finding of fact, it shall be construed as such.

[7] The Fifth Circuit recently confirmed the jurisdiction and authority of bankruptcy courts to issue sanctions orders in connection with bankruptcy cases and proceedings over which they exercise jurisdiction, because they are in the nature of *civil contempt* orders—which are considered "part of the underlying case" – "because the bankruptcy court had jurisdiction over the [ ] bankruptcy case, it had jurisdiction to enter the sanctions order, too." *Kreit v. Quinn (In re Cleveland Imaging and Surgical Hospital, L.L.C.)*, 26 F.4th 285, 294 (5th Cir. 2022) (cleaned up).

following the Trial on same.   The Proof of Claim Disallowance Order sets forth extensive procedural history, findings of fact, and conclusions of law pertaining to NexPoint/HCRE's filing and prosecution of its Proof of Claim, which Highland alleges in the instant Sanctions Motion was conducted in bad faith.   NexPoint/HCRE did not appeal the Proof of Claim Disallowance Order. Thus, it is a final and non-appealable order.[8]  The court hereby incorporates by reference the Proof of Claim Disallowance Order (and all of the findings and conclusions therein), as if set forth verbatim herein.[9]

### B.  Highland Files Sanctions Motion

On June 16, 2023, Highland filed the instant Sanctions Motion.   It was supported with a Declaration of John A. Morris in support of the Sanctions Motion ("Morris Declaration")[10] and 431 pages of attached exhibits as set forth in the following table:

| Exhibit A | NexPoint/HCRE's Proof of Claim[11] |
|-----------|-------------------------------------|
| Exhibit B | Highland's Objection to NexPoint/HCRE's Proof of Claim[12] |
| Exhibit C | NexPoint/HCRE's Response to Objection to Claim[13] |

---

[8] The Proof of Claim Disallowance Order is one of the few bankruptcy court orders issued in this bankruptcy case that was not appealed by Dondero or a Dondero-controlled entity.   Although the court has not counted the exact number of appeals filed by Dondero and/or Dondero-controlled entities in this bankruptcy case and related proceedings, this court takes judicial notice of information contained in a vexatious litigant motion filed by Highland in the district court (before Judge Brantley Starr), reflecting that Dondero and his controlled entities have "filed over 35 total appeals." *See Highland Capital Management, L.P.'s Reply to Objections to Motion to Deem the Dondero Entities Vexatious Litigants and for Related Relief*, 12, at ¶ 24, filed on February 9, 2024. Dkt. No. 189 (NDTX Case No. 3:21-cv-00881-X).

[9] The Proof of Claim Disallowance Order was attached as Exhibit D to the Declaration of John A. Morris, Dkt. No. 3852, which was filed by Highland in connection with, and in support of, the relief requested in the Sanctions Motion.

[10] Dkt. No. 3852.

[11] Claim No. 146, filed April 8, 2020.

[12] *Debtor's First Omnibus Objection to Certain (A) Duplicate Claims; (B) Overstated Claims; (C) Late-Filed Claims; (D) Satisfied Claims; (E) No-Liability Claims; and (F) Insufficient-Documentation Claims* ("Objection to Claim"), filed July 30, 2020. Dkt. No. 906.

[13] *NexPoint Real Estate Partners LLC's Response to Debtor's First Omnibus Objection to Certain (A) Duplicate Claims; (B) Overstated Claims; (C) Late-Filed Claims; (D) Satisfied Claims; (E) No-Liability Claims; and (F) Insufficient-Documentation Claims* ("Response to Objection to Claim"), filed October 19, 2020. Dkt. No. 1212.

| Exhibit D | Proof of Claim Disallowance Order |
|---|---|
| Exhibit E | Transcript of November 1, 2022 Trial (on NexPoint/HCRE's Proof of Claim) |
| Exhibit F | Attorneys' Fees of Pachulski Stang Ziehl & Jones LLP ("PSZJ") for the period of August 1, 2021 through December 31, 2022 incurred in connection with the litigation on the NexPoint/HCRE Proof of Claim |
| Exhibit G | Invoices for court reporting services provided in connection with depositions taken and defended during the course of the Proof of Claim litigation |
| Exhibit H | Invoice for services rendered by David Agler, who provided specialized tax advice concerning SE Multifamily and other matters related to the Proof of Claim |
| Exhibit I | Summary of Fees and Expenses Incurred by Highland in Connection with NexPoint/HCRE's Proof of Claim |

The Sanctions Motion (unlike the Oral Sanctions Motion made during the Trial) provided NexPoint/HCRE with due and appropriate notice of the legal and factual bases for Highland's request for a bad faith finding and reimbursement of attorneys' fees and costs incurred by it in litigating the Proof of Claim.  As stated in the Sanctions Motion, the legal basis for Highland's request for reimbursement of its attorneys' fees as a sanction for NexPoint/HCRE's bad faith filing and prosecution of its Proof of Claim is the bankruptcy court's "inherent authority under section 105 of the Bankruptcy Code to issue sanctions after making a finding of bad faith."[14]  Highland referred to specific documentary and testimonial evidence adduced during the Trial that it alleges supports a finding that NexPoint/HCRE filed and prosecuted its Proof of Claim in bad faith, and attached invoices evidencing its attorneys' fees and costs incurred as a direct result of this alleged bad faith.

---

[14] *See* Sanctions Motion, 10, ¶25.

Before NexPoint/HCRE filed its response to the Sanctions Motion, the matter was stayed on August 2, 2023, pending court-ordered global mediation.[15]  The mediation ultimately proved to be unsuccessful.[16]  Thereafter, NexPoint/HCRE filed its *Response to Debtor's Motion for (A) Bad Faith Finding and (B) Attorneys' Fees* ("Response")[17] on December 22, 2023. NexPoint/HCRE denies that it filed and prosecuted its Proof of Claim in bad faith and argues it should not be sanctioned at all.  It further argues that, even if the filing and prosecution of the Proof of Claim are found to have been in bad faith, the amount of the fees incurred by Highland in connection with the Proof of Claim litigation is "*per se* excessive for a single proof of claim objection"[18] and "extraordinarily high given that this dispute could have been brought to a swift close many months ago"—if only NexPoint/HCRE had been allowed to withdraw its Proof of Claim in September of 2022.[19]  Highland's has sought reimbursement of more than $800,000 in attorneys' fees and more than $16,000 in expenses, identified in Exhibits F through H (and summarized in Exhibit I) of the Morris Declaration as having been incurred by Highland in connection with its litigation of the Proof of Claim.

Highland filed its *Reply in Further Support of Its Motion for (A) Bad Faith Finding and (B) Attorneys' Fees against NexPoint Real Estate Partners LLC (f/k/a HCRE Partners, LLC) in*

---

[15] *See Order Granting in Part and Denying in Part Motion to Stay and to Compel Mediation*. Dkt. No. 3897.  This was not the first time the bankruptcy court has ordered global mediation in the Highland case.

[16] *See Joint Notice of Mediation Report* filed on November 7, 2023. Dkt. No. 3995.

[17] Dkt. No. 3995.

[18] Response, 10, ¶34.

[19] Response, 13, ¶45. NexPoint/HCRE argues that, because it had sought to withdraw its Proof of Claim, any fees incurred by Highland after the filing of NexPoint/HCRE's motion to withdraw cannot be attributable to NexPoint/HCRE's alleged bad faith filing and prosecution of its Proof of Claim; rather, such fees were incurred by Highland as a result of Highland's decision to object to NexPoint/HCRE's withdrawal of its Proof of Claim and to proceed with the litigation, including taking depositions, and proceeding to "trial" on the merits instead of "taking a win" with NexPoint/HCRE's withdrawal of its Proof of Claim. *See* Response, 2.

*Connection with Proof of Claim 146*[20] on January 19, 2024, and filed an *Amended Reply in Further Support of Its Motion for (A) Bad Faith Finding and (B) Attorneys' Fees against NexPoint Real Estate Partners LLC (f/k/a HCRE Partners, LLC) in Connection with Proof of Claim 146* ("Reply")[21] on January 23, 2024.  Highland argues that "[n]othing in the Response warrants the denial of the [Sanctions] Motion or its requested award of attorneys' fees" and that "the record makes clear" that NexPoint/HCRE and its principals "clearly and convincingly acted in bad faith by (a) knowingly filing and prosecuting a baseless Proof of Claim, . . . ([b]) seeking an unfair litigation advantage by trying to withdraw its Proof of Claim **after** taking Highland's depositions but **before** subjecting its own witnesses to questioning, and ([c]) trying at all times to preserve for another day the claims it asserted (*i.e.*, to "reform, rescind and/or modify the agreement")."[22]

The court held a hearing on the Sanctions Motion ("Hearing") on January 24, 2024, during which NexPoint/HCRE was given a full opportunity to respond to Highland's allegations of bad faith and request for sanctions.

## IV.    CONCLUSIONS OF LAW

### A.  The Sanctions Motion Satisfies Due Process Considerations

In invoking its inherent power to sanction bad faith conduct or a willful abuse of the judicial process, "[a] court must exercise caution . . . , and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *In re Correra*, 589 B.R. 76, 125 (Bankr. N.D. Tex. 2018). As noted above, the court entered its Proof of Claim Disallowance Order on April 28, 2023, in which it sustained Highland's objection to, and disallowed, the Proof of Claim but denied, without prejudice, Highland's Oral Sanctions Motion

---

[20] Dkt. No. 4018.

[21] Dkt. No. 4023.

[22] Reply, 2, ¶2.

as being procedurally defective because, having been raised for the first time during Trial and not having been made in writing, it had not given NexPoint/HCRE adequate notice and an opportunity to respond to the specific allegations of bad faith being made against it.  The court pointed out that it did not address or make any determination regarding the substance of Highland's requests in the Oral Sanctions Motion for a bad faith finding and sanctions against NexPoint/HCRE, subject to Highland's right seek a bad faith finding and sanctions against NexPoint/HCRE upon and after giving it proper notice and an opportunity to respond:

> Here, where the Reorganized Debtor's generic oral request for a finding of bad faith and for "an award costs for a bad faith filing" did not articulate the legal basis for such an award and was raised for the first time during the Trial, HCRE was not given sufficient notice and an opportunity to respond, and, therefore, the court will deny, without prejudice, [Highland's] request for reimbursement of its costs incurred in connection with its objection to HCRE's Proof of Claim.

Proof of Claim Disallowance Order, 38-39 (quoting *In re Emanuel*, 422 B.R. 453, 464 (Bankr. S.D.N.Y. 2010) ("[A] person facing possible sanctions is entitled to due process. . . .  At a minimum, the respondent is entitled to notice of the authority for the sanctions, notice of the specific conduct or omission that forms the basis of possible sanctions and the opportunity to respond."); *In re Magari*, 2010 WL 817327 at **2-3 (Bankr. N.D. Tex. Mar. 4, 2010) ("By requesting the sanctions award, the Trustee has raised due process concerns that can only be satisfied by providing to the affected party sufficient notice and opportunity to respond.")).

The court concludes that the instant Sanctions Motion and Hearing have provided NexPoint/HCRE with the due process that was lacking in connection with the Oral Sanctions Motion.  NexPoint/HCRE was given adequate notice of the legal authority invoked for sanctions (the bankruptcy court's inherent powers under section 105 of the Bankruptcy Code) and NexPoint/HCRE's specific conduct (the filing and prosecution of its Proof of Claim) that Highland

alleges to have been in bad faith, and NexPoint/HCRE was given adequate opportunity to respond through briefing and at the Hearing on the Sanctions Motion.

With due process concerns having been now addressed and satisfied, the court is able to address the substantive questions raised in the instant Sanctions Motion of (1) whether NexPoint/HCRE did, indeed, act in bad faith in the filing and prosecution of its Proof of Claim and (2) if so, whether an award of reimbursement of Highland's attorneys' fees and costs incurred in connection with its litigation of the Proof of Claim is an appropriate sanction for such bad faith.

### B. *NexPoint/HCRE Filed and Prosecuted its Proof of Claim in Bad Faith and Willfully Abused the Judicial Process*

A bankruptcy court may sanction a litigant for bad faith filing or litigation if the court makes specific findings, based on clear and convincing evidence, of bad faith or willful abuse of the judicial process. *See Cleveland Imaging*, 26 F.4th at 292 (A bankruptcy court may only sanction a party using its inherent authority if "(1) the bankruptcy court finds that the party acted in bad faith or willfully abused the judicial process and (2) its finding is supported by clear and convincing evidence.") (citing *Cadle Co. v. Moore (In re Moore)*, 739 F.3d 724, 729-30 (5th Cir. 2014)).  The bankruptcy court's power to sanction bad faith or willful abuse of the judicial process derives from its inherent authority under 11 U.S.C. § 105(a) to issue civil contempt orders. *Id.* at 294, 294 n.14 (quoting the "relevant part" of Bankruptcy Code section 105(a), which provides that bankruptcy courts may "sua sponte, tak[e] any action . . . necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.") (cleaned up).

Having reviewed the record and the evidence adduced at Trial and NexPoint/HCRE's response to the Sanctions Motion (both in its Response and at the hearing on the Sanctions Motion), the court finds and concludes that there is clear and convincing evidence here that

NexPoint/HCRE filed and prosecuted is Proof of Claim in bad faith and that it willfully abused the

judicial process.

    1.    *Dondero's Execution and Authorization of the Filing of the Proof of Claim Without First Having Read the Document or Conducting Any Due Diligence Was in Bad Faith and a Willful Abuse of the Judicial Process*

As noted in the Proof of Claim Disallowance Order, NexPoint/HCRE filed its Proof of

Claim in this Highland bankruptcy case on April 8, 2020, several months after the post-petition

"nasty breakup" between Highland and its co-founder and president and chief executive officer,

Dondero.  NexPoint/HCRE described the basis of its claim in Exhibit A attached to its Proof of

Claim:[23]

### Exhibit A

> HCRE Partner, LLC ("Claimant") is a limited partner with the Debtor in an entity called SE Multifamily Holdings, LLC ("SE Multifamily").  Claimant may be entitled to distributions out of SE Multifamily, but such distributions have not been made because of the actions or inactions of the Debtor.  Additionally, Claimant contends that all or a portion of Debtor's equity, ownership, economic rights, equitable or beneficial interests in SE Multifamily does [not] belong to the Debtor or may be the property of Claimant.  Accordingly, Claimant may have a claim against the Debtor.  Claimant has requested information from the Debtor to ascertain the exact amount of its claim.  This process is on-going.  Additionally, this process has been delayed due to the outbreak of the Coronavirus.  Claimant is continuing to work to ascertain the exact amount of its claim and will update its claim in the next ninety days.

NexPoint/HCRE was one of the many non-debtor Dondero-controlled entities affiliated

with Highland. Dondero was the president and sole manager of NexPoint/HCRE, and an individual

named Matt McGraner ("McGraner") was NexPoint/HCRE's vice president and secretary.

NexPoint/HCRE had no employees of its own but instead relied on Highland's employees (and

employees of other entities controlled by Dondero) to conduct business on its behalf.  Dondero

executed the Proof of Claim as the "person who is completing and signing this claim," checking

---

[23] Claim No. 146.

the box that indicates he is "the creditor's attorney or authorized agent" and acknowledging that "I have examined the information in this *Proof of Claim* and have reasonable belief that the information is true and correct" and that "I declare under penalty of perjury that the foregoing is true and correct."[24] The evidence overwhelmingly supports a finding that Dondero signed and authorized the filing of the Proof of Claim (that the court ultimately determined was lacking in any factual or legal support) without having even read it and without conducting any due diligence on, or investigation into, whether the statements made in the Proof of Claim were truthful and accurate, which supports a finding that Dondero's signing and filing of the Proof of Claim on behalf of NexPoint/HCRE was done in bad faith and constituted a willful abuse of the judicial process.

At Trial, Dondero testified that he had authorized his electronic signature to be affixed to the document and to be filed on behalf of NexPoint/HCRE and admitted that he had not reviewed the document before doing so.[25]  He further testified that he could not recall "personally [doing] any due diligence of any kind to make sure that Exhibit A was truthful and accurate before [he] authorized it to be filed,"[26] and, more specifically, that he did not, prior to authorizing his law firm (Bonds Ellis) to affix his electronic signature on, and to file, the Proof of Claim, review or provide comments to the Proof of Claim or its Exhibit A, review the SE Multifamily Amended LLC Agreement or any documents,[27] "check with any member of the real estate group to see whether or not they believed [the Proof of Claim] was truthful and accurate before [he] authorized Bonds Ellis to file it," or do "anything . . . to make sure that this proof of claim was truthful and accurate before [he] authorized [his] electronic signature to be affixed and to have it filed on behalf of

---

[24] Proof of Claim, 3.

[25] Transcript of the November 1, 2022 Trial on Debtor's Objection to HCRE's Proof of Claim ("Trial Tr.")[Dkt. No. 3616] 55:2-22.

[26] Trial Tr. 56:20-23.

[27] Trial Tr. 55:10-22, 56:15-57:6.

HCRE."[28]   Moreover, he testified that he did not know whose idea it was to file the Proof of Claim,[29] who at NexPoint/HCRE worked with, or provided information to, Bonds Ellis to enable Bonds Ellis to prepare the Proof of Claim, what information was given to Bonds Ellis that enabled them to formulate the Proof of Claim, or whether "Bonds Ellis ever communicated with anybody in the real estate group regarding [the Proof of Claim]."[30]

Dondero has argued that he had a good faith basis to sign and file the Proof of Claim on behalf of NexPoint/HCRE because "he had a host of responsibilities across a sprawling and sophisticated corporate structure and relied on numerous individuals within that structure to help manage the day-to-day operations of Highland and its subsidiaries and managed funds"[31] and that he "ha[d] to rely on systems and processes[,]" because "[he] can't be directly involved in everything."[32]   Dondero further testified that "[he] sign[s] a lot of high-risk documents and [has] to rely on the process and the people and internally and externally as part of the process to sign it without direct validation from or verification from me, and this [Proof of Claim] is another one of those items."[33]

Dondero's "I'm-a-very-busy-person/too-busy-to-be-bothered-to-investigate" excuse is not a defense, as a matter of law, to his bad faith and willful abuse of the judicial process in connection with the filing of the Proof of Claim.   Nor is Dondero's claimed reliance on systems and processes in connection with the execution and filing of this Proof of Claim, as a matter of fact, supported by the evidence.   The court notes that the Proof of Claim is not a complex, lengthy legal or

---

[28] Trial Tr. 57:25-58:16.

[29] Trial Tr. 57:7-9.

[30] Trial Tr. 56:1-14.

[31] Response, 7, ¶16.

[32] Trial Tr. 57:25-58:7.

[33] Trial Tr. 57:25-59:2.

corporate document; Exhibit A to the Proof of Claim, which set forth the basis for the claim, is only one paragraph long, yet Dondero did not even bother to read it before signing under penalty of perjury that the information contained in the Proof of Claim, including Exhibit A, was truthful and accurate. And, Dondero's own testimony contradicts his assertion that he relied on "systems and processes" and on other people within the "sprawling and sophisticated corporate structure" and his outside counsel to ensure the accuracy of the Proof of Claim. He had no reasonable or justifiable basis to rely on anyone or any "process" that was allegedly in place in connection with his signing of "high risk" documents, because he asked no questions, conducted no due diligence, and made no effort, whatsoever, to verify that the information that he was swearing was accurate under penalty of perjury was, in fact, truthful.

The court finds and concludes that the foregoing admissions by NexPoint/HCRE, through Dondero, provide clear and convincing evidence that ***NexPoint/HCRE filed its Proof of Claim*** in bad faith and willfully abused the judicial process.

2.  *NexPoint/HCRE's Litigation Strategy and Actions in the Prosecution of Its Proof of Claim Are Further Evidence of Its Bad Faith and Willful Abuse of the Judicial Process*

Moreover, NexPoint/HCRE's ***litigation strategy and actions*** taken in the course of prosecuting its Proof of Claim over the next two and a half years, after filing it, ***provide further support for a finding that NexPoint/HCRE engaged in bad faith and willfully abused the judicial process***.

As noted in the Proof of Claim Disallowance Order, six months after Dondero signed and filed the Proof of Claim in April 2020, and in response to Highland's objection to its Proof of Claim,[34] NexPoint/HCRE fleshed-out the legal and factual bases for its claim:[35]

> After reviewing what documentation is available to [NexPoint/HCRE] with the Debtor, [NexPoint/HCRE] believes the organizational documents relating to SE Multifamily Holdings, LLC (the "SE Multifamily Agreement") improperly allocates the ownership percentages of the members thereto due to mutual mistake, lack of consideration, and/or failure of consideration.  As such, [NexPoint/HCRE] has a claim to reform, rescind and/or modify the agreement.

> However, [NexPoint/HCRE] requires additional discovery, including, but not limited to, email communications and testimony, to determine what happened in connection with the memorialization of the parties' agreement and improper distribution provisions, evaluate the amount of its claim against the Debtor, and protect its interests under the agreement.

The Response was filed by a new law firm—Wick Phillips Gould & Martin, LLP ("Wick Phillips") – not the law firm of Bonds Ellis, which had handled the filing of the Proof of Claim. In the course of discovery, Highland became aware that Wick Phillips had jointly represented NexPoint/HCRE and Highland in connection with at least some of the underlying transactions that were the subject of the Proof of Claim, and, on April 14, 2021, more than a year after NexPoint/HCRE filed its Proof of Claim, Highland moved to disqualify Wick Phillips.[36]  Notably, Highland's Plan had been confirmed on February 22, 2021, over the objections of Dondero and his related entities (including NexPoint/HCRE).[37]  The effective date ("Effective Date") of the Plan occurred on August 11, 2021, and Highland became the Reorganized Debtor under the Plan.

---

[34] On July 30, 2020, Highland filed an objection to the allowance of the Proof of Claim, contending it had no liability under the Proof of Claim. *See Debtor's First Omnibus Objection to Certain (A) Duplicate Claims; (B) Overstated Claims; (C) Late-Filed Claims, (D) Satisfied Claims; (E) No-Liability Claims; and (F) Insufficient-Documentation Claims*, Dkt. No. 906.

[35] Response to Objection to Claim, 2-3, ¶¶ 5-6.

[36] Dkt. Nos. 2196-2198. On October 1, 2021, Highland filed a supplemental disqualification motion. Dkt. No. 2893.

[37] NexPoint/HCRE, represented by Wick Phillips, filed its *Objection to Debtor's Fifth Amended Plan of Reorganization* on January 5, 2021. Dkt. No. 1673.

Pursuant to the Plan, on or after the Effective Date, all or substantially all of the Debtor's assets

vested in the Reorganized Debtor or the claimant trust ("Claimant Trust") created under the terms

of the Plan, including Highland's 46.06% membership interest in SE Multifamily.

Meanwhile, NexPoint/HCRE vigorously fought the disqualification of Wick Phillips, filing

its opposition to the disqualification motion on May 6, 2021,[38] and initiating a more than six-month

period of expensive discovery and side litigation that culminated, after a lengthy hearing on the

disqualification motion, with the entry by this court on December 10, 2021, of its *Order Granting

in Part and Denying in Part Highland's Supplemental Motion to Disqualify Wick Phillips Gould

& Martin, LLP As Counsel to HCRE Partners, LLC and for Related Relief* ("Disqualification

Order"),[39] resolving the disqualification motion by, among other things, disqualifying Wick

Phillips from representing NexPoint/HCRE in the contested matter concerning the Proof of Claim,

but specifically denying Highland's request that NexPoint/HCRE reimburse it all costs and fees

incurred in making and prosecuting the disqualification motion.[40]

In the instant Sanctions Motion, Highland acknowledged that the court denied Highland's

specific request for sanctions of reimbursement of Highland's costs and fees in making the

Disqualification Motion in its December 2021 Disqualification Order.[41]  The court notes that the

denial was not "with prejudice"[42] to Highland's right to bring a sanctions motion in the future in

connection with allegations that NexPoint/HCRE's filing and prosecution of its Proof of Claim,

including its vigorous defense of the Disqualification Motion.  Notably, while Highland includes

---

[38] Dkt. Nos. 2278 and 2279.

[39] Dkt. No. 3106.

[40] Disqualification Order, 4.

[41] *See* Sanctions Motion, 4, ¶8.

[42] The Disqualification Order stated, in relevant part, "Highland's request that HCRE reimburse it all costs and fees incurred in making and prosecuting the Motion, including reasonable attorneys' fees, is **DENIED**."

a reference in the instant Sanctions Motion to the lengthy and expensive proceedings on the Disqualification Motion in its recitation of evidence in the record that supports Highland's allegations that NexPoint/HCRE engaged in bad faith conduct in the filing and prosecution of its Proof of Claim, it did ***not*** include them as part of the fees and costs for which Highland is seeking to be reimbursed by NexPoint/HCRE as a sanction for NexPoint/HCRE's bad faith filing and prosecution of its Proof of Claim.[43]

In any event, following the disqualification of Wick Phillips, NexPoint/HCRE hired yet a third law firm, Hoge & Gameros, LLP, in connection with this matter, and the parties engaged in a second round of extensive discovery, which included the exchange of written discovery and document production and the service of various deposition notices and subpoenas.  On August 12, 2022, just two business days after NexPoint/HCRE completed the depositions of Highland's witnesses, and a day after NexPoint/HCRE made a supplemental production of more than 4,000 pages of documentation, and two business days before the consensually scheduled depositions of NexPoint/HCRE's witnesses, Dondero and McGraner, were set to occur, NexPoint/HCRE filed a motion to withdraw its Proof of Claim ("<u>Motion to Withdraw</u>").[44]  By this point, Highland had spent hundreds of thousands of dollars objecting to the Proof of Claim.

Query why might NexPoint/HCRE have done this?  Just six months earlier, Dondero's family trust, The Dugaboy Investment Trust, had represented to the bankruptcy court that

---

[43] *See* Morris Declaration, 3-4, at ¶11 (Referencing the court's denial in its Disqualification Order of Highland's previous request for attorneys' fees incurred in connection with the Disqualification Motion, Morris stated "[W]e reviewed the PSZJ Invoices and redacted all entries relating to the Disqualification Motion; thus, for the avoidance of doubt, Highland does not seek any fee award with respect to any work done in connection with the Disqualification Motion.").

[44] *See Motion to Withdraw Proof of Claim* [Dkt. No. 3442].

Highland's 46.06% interest in SE Multifamily was worth $20 million,[45] and now, NexPoint/HCRE (which presumably also spent substantial sums prosecuting its Proof of Claim during the nearly two and a half years of litigation) appeared willing to walk away from its multi-million dollar challenge to Highland's 46.06% interest in SE Multifamily.    Highland objected to NexPoint/HCRE's Motion to Withdraw, and the court held a hearing on September 12, 2022 (as required by Bankruptcy Rule 3006), following which the court entered an order denying NexPoint/HCRE's Motion to Withdraw, for the reasons set forth on the record,[46] and directing the parties to "confer in good faith to complete the depositions" of Dondero, McGraner, and NexPoint/HCRE and otherwise comply with the scheduling order that had been entered by the court on this matter, which included appearing for an evidentiary hearing on November 1, 2022.[47] The court denied NexPoint/HCRE's Motion to Withdraw, in part, because it was concerned that the timing of it all–just two business days *after* completing Highland's depositions but two business days *before* the consensually-scheduled depositions of NexPoint/HCRE's witnesses were to take place—reflected gamesmanship on the part of NexPoint/HCRE (*i.e.,* NexPoint/HCRE prosecuted its Proof of Claim for two and a half years, through and including the taking of depositions of Highland's witness, while shielding its own witnesses from testifying).  The court was also concerned by NexPoint/HCRE's repeated attempts to preserve its claims against Highland for use against Highland in the future.  In fact, the court entered its order denying NexPoint/HCRE's Motion to Withdraw only after: (1) NexPoint/HCRE refused to agree, at the

---

[45] *See Motion for Determination of the Value of the Estate and Assets Held by the Claimant Trust* [Docket No. 3382]. As pointed out by Highland in its Response, "[t]here is no dispute that HCRE is the manager of SE Multifamily and therefore—through Mr. Dondero—would be best positioned to opine on the value of Highland's interest in SE Multifamily." Response, 9, at ¶27 n. 4.

[46] The court noted in its order denying HCRE's Motion to Withdraw that, under the Bankruptcy Rules, a creditor does not have an absolute right to withdraw a proof of claim.

[47] Dkt. No. 3525.

September 12 hearing, to language in an order allowing withdrawal of the Proof of Claim that stated, unequivocally, that NexPoint/HCRE waived the right to relitigate or challenge the issue of Highland's 46.06% ownership interest in SE Multifamily, and (2) counsel were thereafter unable, in the day or two after the hearing, to work out mutually acceptable language in an agreed order that protected both parties.[48]    As noted in its order denying NexPoint/HCRE's Motion to Withdraw, the court had expressed concerns, during the hearing on the Motion to Withdraw, relating to the integrity of the bankruptcy system and claims process if it allowed NexPoint/HCRE to withdraw its Proof of Claim after two and a half years of litigation, and having caused Highland to spend hundreds of thousands of dollars litigating the Proof of Claim, while at the same time allowing NexPoint/HCRE to preserve its challenges to Highland's ownership interest in SE Multifamily to be used against Highland in the future.    The court did not, at the time, make any express findings regarding NexPoint/HCRE's bad faith or abuse of the judicial process, only because Highland's mid-hearing Oral Sanctions Motion had not provided NexPoint/HCRE with adequate notice and an opportunity to respond.[49]    With the instant Sanctions Motion, those due process concerns have been satisfied.

Having considered the evidence and argument of counsel at both the Trial on NexPoint/HCRE's Proof of Claim and the hearing on the Sanctions Motion, and the pleadings filed in connection with the Sanctions Motion, including NexPoint/HCRE's written Response, and based on the record as a whole, the court expressly finds and concludes that NexPoint/HCRE's

---

[48] At the end of the September 12 hearing, the court had expressed concerns about gamesmanship but, at the same time, assured the parties that it was still open to signing an agreed order regarding withdrawal of the Proof of Claim, if counsel could work out mutually acceptable language that protected both parties "without the pressure of the Court hovering over you." *See* Transcript of Hearing on Motion to Withdraw, Dkt. No. 3519, 50:14-59:14. Apparently, counsel were unable to reach an agreement on the terms of an agreed order, and so the court signed the order at docket number 3525, denying NexPoint/HCRE's Motion to Withdraw.

[49] As noted below, NexPoint/HCRE persisted to the end in arguing that the disallowance of its Proof of Claim could not bar NexPoint/HCRE from making future challenges to Highland's 46.06% membership interest in SE Multifamily.

*litigation strategy and actions* in prosecution of its Proof of Claim (including vigorous opposition

to the Disqualification Motion, the timing of the Motion to Withdraw, and its repeated and overt

attempts to preserve the very claims upon which its Proof of Claim was based in connection with

the Motion to Withdraw) demonstrates bad faith and a willful abuse of the judicial process on the

part of NexPoint/HCRE.

3.  *NexPoint/HCRE's Admissions at Trial Are Further Evidence of its Bad Faith Filing
    and Willful Abuse of the Judicial Process*

Following the denial of NexPoint/HCRE's Motion to Withdraw, the parties complied with

the court's order to schedule the depositions of Dondero and McGraner at mutually agreeable times

to complete discovery and then appeared at Trial on November 1, 2022.  At the conclusion of the

Trial, NexPoint/HCRE doubled-down on its request of the court  "to grant the proof of claim and

reallocate the equity [in SE Multifamily] based on the capital contribution[s]."[50] This was despite

admissions by Dondero and McGraner in their Trial testimony that made it clear that

NexPoint/HCRE did not, and never did, have a factual or legal basis for its request.  Nevertheless,

NexPoint/HCRE continued to the end to try to limit any order disallowing its Proof of Claim so as

to preserve its right to assert the very claims asserted in its Proof of Claim (for rescission,

reformation and/or modification of the SE Multifamily Amended LLC Agreement to reallocate

the membership percentages) for use in the future.[51]

The Trial testimony of Dondero and McGraner revealed that NexPoint/HCRE had no

factual basis to claim that a mistake was made by any of the parties, much less a mutual mistake

---

[50] Trial Tr. 179:23-25; 180:8-9.

[51] Trial Tr. 179:21-24 ("They want you to make findings that we can't raise any of these other issues, rescissions,
stays, et cetera, going forward. That's not proper relief on a proof of claim."); 200:8-12 ("If Your Honor's going to
deny the proof of claim, I would ask that you simply deny the proof of claim. We don't have an adversary proceeding
here. There wasn't one started. Mr. Morris considered that and then didn't follow that path, because all we have here
today is a proof of claim.").

of the parties, regarding the allocation of ownership percentages in SE Multifamily in corporate documentation,[52] and, in fact, "the evidence overwhelmingly point[ed] to the conclusion that both Mr. Dondero and Mr. McGraner understood that the allocation of 46.06% membership interest to Highland, and a total capital contribution by Highland of $49,000 in the Amended LLC Agreement, reflected the intent of the parties prior to, and at the time of, the execution of the Amended LLC Agreement."[53] The court specifically noted in the Proof of Claim Disallowance Order that Dondero admitted that he had not read or reviewed the Amended LLC Agreement or any drafts of it before he signed it—apparently the Amended LLC Agreement was one of those important, high-risk documents that Dondero was too busy to read or investigate before signing (like the Proof of Claim)—but he nevertheless testified that "the capital contributions and membership allocations contained in Schedule A of the Amended LLC Agreement comported with his understanding and intent when he signed the Amended LLC Agreement on behalf of HCRE and Highland."[54]   NexPoint/HCRE was also unable to produce any evidence at Trial to support its factual allegation that there was a "lack of consideration" or a "failure of consideration" with respect to the Amended LLC Agreement, such that NexPoint/HCRE would be entitled to a

---

[52] The court concluded, specifically, that

> HCRE did not produce any evidence, much less clear and convincing evidence, that the parties to the Amended LLC Agreement – HCRE, Highland, BH Equities, and Liberty – had come to a specific understanding, prior to the execution of the Amended LLC Agreement in March 2019, that the allocation of percentage membership interests in SE Multifamily was different from the percentage allocations contained in the Amended LLC Agreement.  When asked on cross-examination, Mr. McGraner, HCRE's officer and co-owner who was most involved in the negotiations of the terms of the Amended LLC Agreement, was unable to identify any specific mistake made in the drafting of the Amended LLC Agreement.  Neither he nor NexPoint/HCRE's other witness, Mr. Dondero, were able to point to a specific meeting of the minds of the members of SE Multifamily prior to (or after, for that matter) the execution of the Amended LLC Agreement that the parties intended Highland's allocation of SE Multifamily membership interests to be any percentage other than the 46.06% allocation attributed to Highland in the written Amended LLC Agreement.

Proof of Claim Disallowance Order, 30.

[53] *Id.*, 30-31.

[54] *Id.*, 31 n. 119.

reformation,[55] rescission,[56] or modification of it, to re-allocate the ownership percentages that the

parties agreed to at the time of the execution of it.[57]

In fact, McGraner ultimately admitted in his Trial testimony that the only reason

NexPoint/HCRE had for filing its Proof of Claim, which challenged Highland's title to its 46.06%

membership interest in SE Multifamily, was, essentially, ***that NexPoint/HCRE was frustrated***

***with the consequences of Dondero's decision in 2019 to seek bankruptcy protection for***

***Highland (notably, the bankruptcy case was filed just a few months after the Amended LLC***

***Agreement was executed), which resulted in Dondero losing control over Highland***, such that,

as far as NexPoint/HCRE was concerned, its "partner" [in SE Multifamily] was no longer its

"partner."  The court noted in the Proof of Claim Disallowance Order that McGraner

> could not point to any provision of the Amended LLC Agreement that was either
> "wrong" or a "mistake;" rather, he testified that the "mistake" was "when the
> bankruptcy was filed and we can't amend it" because "[o]ur partners aren't our
> partners" – "if you have good partners and you're working with partners that are –

---

[55] After noting that "neither lack of consideration nor failure of consideration are bases for reformation of a contract under Delaware law (which is what NexPoint/HCRE is seeking in its Proof of Claim)," the court concluded that "HCRE is not entitled to reformation of the Amended LLC Agreement to reallocate the members' membership interests as requested based on its allegations of lack of consideration and/or failure of consideration." Proof of Claim Disallowance Order, 32 n. 120.

[56] The court noted in the Proof of Claim Disallowance Order that NexPoint/HCRE had not actually stated a claim for rescission of the Amended LLC Agreement with respect to its Proof of Claim, but that, if it had,

> Mr. Dondero's admission that he did not read the Amended LLC Agreement (or even have the terms explained to him by counsel or anyone else) prior to signing it on behalf of HCRE and Highland would bar any claim by HCRE for rescission of the Amended LLC Agreement.  Moreover, even if HCRE's claim for rescission was not barred by Mr. Dondero's failure to read the Amended LLC Agreement prior to signing it, HCRE did not present any evidence of the other elements of a rescission claim:  that the parties were mistaken as to a basic assumption on which the Amended LLC Agreement was made and that the mistake had a material effect on the agreed-upon exchange of performances.

Proof of Claim Disallowance Order, 33-34.

[57] *See* Proof of Claim Disallowance Order, 32-33 n. 120 (where the court found that "HCRE has not shown that there was a lack or failure of consideration on behalf of Highland in connection with the Amended LLC Agreement. . . . Under Delaware law, the courts 'limit [their] inquiry into consideration to its existence and not whether it is fair or adequate,' . . . . '[E]ven if the consideration exchanged is grossly unequal or of dubious value, the parties to a contract are free to make their bargain.' (citations omitted). Here, it is undisputed that Highland made a cash capital contribution of $49,000, that Highland was a jointly and severally liable coborrower under the KeyBank Loan, and that SE Multifamily (and HCRE), having no employees of their own, relied on Highland's employees to conduct business.  Thus, HCRE's claim, to the extent it is based on alleged lack and/or failure of consideration fails.").

that are known to you, then you make amendments to reflect the contributions of those partners, whether monetary or otherwise . . . [a]nd my understanding is I can't do that right now."[58]

McGraner testified that "despite Mr. Dondero being in control of both HCRE and Highland prior to the bankruptcy filing, and despite 'all of the fears [he] had [related to Highland's bankruptcy filing],' HCRE made no effort to amend the agreement before the bankruptcy or post-bankruptcy (because 'we didn't think it would be worth it')[ ][59] [and] 'because [it] hoped that the issues that caused the bankruptcy filing would resolve themselves.'"[60] This is not a good-faith basis for filing and prosecuting the Proof of Claim, and it exhibits a willful abuse of the bankruptcy claims process by NexPoint/HCRE.

In summary, the admissions by Dondero and McGraner in their Trial testimony made clear that NexPoint/HCRE never had a factual or legal basis for the Proof of Claim.  NexPoint/HCRE's principals knew, at the time of filing and through its prosecution of the Proof of Claim, that there was no factual basis for its claim of rescission, reformation, and/or modification of the Amended LLC Agreement to dispossess Highland of some or all of its 46.06% membership interest in SE Multifamily.  This clearly and convincingly constitutes bad faith by NexPoint/HCRE and a willful abuse of the judicial process.

### C.  Reimbursement of Attorneys' Fees and Costs Incurred by Highland in the Proof of Claim Litigation Is an Appropriate Sanction for NexPoint/HCRE's Bad Faith

Having found and concluded by clear and convincing evidence that NexPoint/HCRE filed and prosecuted (and attempted withdrawal of) its Proof of Claim in bad faith and willfully abused the judicial process, this court may use its inherent powers under Bankruptcy Code section 105(a)

---

[58] Proof of Claim Disallowance Order, 27 (citing Trial Tr. 114:24-115:16, 118:6-15).

[59] *Id.* (citing Trial Tr. 121:24-122:9).

[60] *Id.* at 28 (citing Trial Tr. 122:20-125:21).

to sanction it for such conduct.  Reimbursement of the opposing party's fees and costs incurred in responding to a bad faith filing or willful abuse of the judicial process has been upheld as an appropriate form of sanctions. *See Cleveland Imaging*, 26 F.4th at 294 (upholding the bankruptcy court's sanction order that required the parties who were found to have filed bankruptcy petitions in bad faith to reimburse the fees incurred by a post-confirmation litigation trust in responding to the bad faith filing); *Carroll v. Abide (In re Carroll)*, 850 F.3d 811 (5th Cir. 2017) (bankruptcy court did not abuse its discretion in ordering the debtors to "pay $49,432, which represents the amount of attorneys' fees incurred by [the bankruptcy trustee] in responding to certain instances of the [debtors'] bad faith conduct.");  *In re Yorkshire, LLC*, 540 F.3d 328, 332 (5th Cir. 2008) (affirming bankruptcy court's use of its inherent powers to issue monetary sanctions for bad faith filing that were, in part, based upon the opposing parties' attorneys' fees and costs "following an extensive hearing in which the bankruptcy court heard testimony from the parties and witnesses and made certain credibility determinations," and "made specific findings that Appellants acted in bad faith."); *In re Paige*, 365 B.R. 632, 637-399 (Bankr. N.D. Tex. 2007) (awarding attorneys' fees against debtor for their "bad faith" conduct during bankruptcy case, noting "[t]he sanction here is derived from the Court's inherent power to sanction" under section 105(a)); *In re Lopez*, 576 B.R. 84, 93 (S.D. Tex. 2017) (same).  Any sanction imposed pursuant to a bankruptcy court's inherent powers for bad faith conduct or willful abuse of the judicial process "must be compensatory rather than punitive in nature." *In re Lopez*, 576 B.R. at 93 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017) (citing *Mine Workers v. Bagwell*, 512 U.S. 821, 826-30 (1994)).  "[A] sanction counts as compensatory only if it is 'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based[,]" and "[a] fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned." *Goodyear Tire & Rubber*, 581 U.S.

at 108 (quoting *Bagwell*, 512 U.S. at 834).  The fee award must be "limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Id.* (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. at 104).  The "'causal link' between the sanctionable conduct and the opposing party's attorney's fees" must be established "through a 'but-for test:' to wit, the complaining party may only recover the portion of fees that they would not have paid 'but-for' the sanctionable conduct." *Id.* (citing *Goodyear Tire & Rubber*, 581 U.S. at 108-109 (citing *Fox v. Vice*, 563 U.S. 826, 836 (2011)).

Here, as earlier noted, Highland has requested, as a sanction, reimbursement of its attorneys' fees and costs incurred by it in responding to NexPoint/HCRE's filing and prosecution of its Proof of Claim.  Specifically, Highland seeks reimbursement of an aggregate amount of **$825,940.55**, consisting of

- **$782,476.50** in attorneys' fees charged by its primary bankruptcy counsel, PSZJ, for the period August 1, 2021 through December 31, 2022, for work performed in connection with the litigation of the Proof of Claim;[61]

- **$16,164.05** in third-party expenses for court reporting services provided in connection with the Proof of Claim litigation;[62] and,

---

[61] *See* Morris Declaration, 3-4, at ¶¶ 8-13, and Ex. F. As stated in the Morris Declaration, the $782,476.50 amount does not include any fees relating to the Disqualification Motion or any fees that PSZJ concluded were inadvertently coded by a timekeeper to the NexPoint/HCRE Claim Objection category "or that were otherwise unrelated to services rendered in connection with the Proof of Claim litigation." *Id.*, 3-4, at ¶¶ 11 and 12. By way of specific example, Morris stated that "in 2022 and 2023 we charged Highland for services rendered in connection with our unsuccessful attempts to obtain SE Multifamily's books and records but excluded those charges here because they do not directly relate to the litigation of HCRE's Proof of Claim; Highland is seeking those fees in the Delaware Chancery Court where Highland was forced to commence an action against HCRE for specific performance (Case No. 2023-0493-LM))." *Id.*, 4, at ¶ 12.

[62] *See id.*, 4, at ¶ 14, and Ex. G.

- **$27,300.00** in attorneys' fees charged by David Agler for providing Highland with specialized tax advice concerning SE Multifamily and other matters related to the Proof of Claim.[63]

NexPoint/HCRE challenges Highland's request for reimbursement of its fees on several bases. ***First***, it argues that it cannot be ordered to reimburse the fees and expenses incurred by Highland ***after*** NexPoint/HCRE attempted to withdraw its Proof of Claim because they do not satisfy the "but for" test for establishing a "causal link" between those fees and costs and NexPoint/HCRE's filing and pursuit of its Proof of Claim—that Highland cannot show that "but for" NexPoint/HCRE's filing and prosecution of its Proof of Claim, Highland would not have incurred those fees and costs. NexPoint/HCRE urges the court to adopt its narrative of the proceedings that "instead of taking a win, [Highland] and its lawyers chose to generate fees to get the same result" and thus Highland's attorneys' efforts were "totally unnecessary" and a "waste of time and resources" that was "the fault of [Highland], not [NexPoint/HCRE]."[64] NexPoint/HCRE states in its Response that "[h]ere, ***it is undisputed*** that, had [Highland] agreed to the withdrawal of the Proof of Claim many months ago – before engaging in costly additional discovery and preparing for and attending a trial on the merits of the claim – [Highland] would have been exactly in the same position that it is in now, but at far less expense" and further that "[t]he real, practical difference between refusing to consent to the withdrawal of [NexPoint/HCRE]'s Proof of Claim and instead prosecuting the Objection to its end is several hundred thousand dollars in attorneys' fees" and, thus, "[t]he Motion abjectly fails any 'but–for' analysis."[65]

---

[63] *See id.*, 4-5, at ¶¶ 15 and 16, and Ex. H.  A summary of the aggregate fees and expenses of which Highland is seeking reimbursement in the Sanctions Motion is attached as Exhibit I to the Morris Declaration. *See id.*, 5, at ¶ 17, and Ex. I.

[64] Response, 2.

[65] Response, 20, at ¶60 (emphasis added).

The court disagrees with NexPoint/HCRE's "narrative" and its view of the evidence established at Trial.  Highland *does* dispute NexPoint/HCRE's contention that, if only it had allowed it to withdraw its Proof of Claim and accepted a "win," that Highland would have been "exactly in the same position that it is in now [after a Trial and ruling on the merits of the Proof of Claim], but at far less expense."   The court does as well.   As Highland has argued, NexPoint/HCRE's Motion to Withdraw was itself filed in bad faith.  Highland was forced to oppose the withdrawal of the Proof of Claim because NexPoint/HCRE would not agree to a withdrawal, with prejudice, to NexPoint/HCRE's right to challenge Highland's title to its 46.06% membership interest in SE Multifamily in the future.[66]   The evidence clearly and convincingly established that any "win" or "victory" that Highland would have obtained through the withdrawal of the Proof of Claim[67]

> would have been pyrrhic because ***HCRE—in a clear act of bad faith—tried to withdraw its Proof of Claim while preserving the substance of it claims for another day***. Had HCRE's duplicitous strategy been successful, Highland's interest in SE Multifamily would have remained subject to challenge—an untenable result for anyone, let alone a post-confirmation entity seeking to implement a court-approved asset monetization plan.

The court finds and concludes, as argued by Highland, that there is clear and convincing evidence here that the fees and costs incurred by it, after NexPoint/HCRE sought to withdraw its Proof of Claim (*i.e.,* to prepare for the Trial and prosecute its objection to the Proof of Claim through a trial and ruling on the merits), would not have been incurred "but for" NexPoint/HCRE's bad faith.  As pointed out by Highland and as noted above,[68] the court did not enter the Proof of Claim Disallowance Order in December 2022 in a vacuum.  Rather, the court denied

---

[66] *See supra* note 45 and accompanying text.

[67] Response, 5, at ¶18.

[68] *See supra* at pages 16-17.

NexPoint/HCRE's Motion to Withdraw only *after:* (1) the court had expressed concerns that the timing and context of its filing of its Motion to Withdraw suggested gamesmanship on its part, and that the integrity of the bankruptcy system and claims process would be in jeopardy if the court were to simply allow withdrawal, without protecting Highland from future challenges to its membership interest in SE Multifamily (particularly, after Highland had spent hundreds of thousands of dollars to that point in objecting to the Proof of Claim); and (2) NexPoint/HCRE refused to agree to language in an order that would alleviate these expressed concerns.  The court—having now made an express finding that NexPoint/HCRE's filing of its Motion to Withdraw was in bad faith and part of its willful abuse of the bankruptcy claims process that began with the filing of its Proof of Claim in April 2020—now expressly finds that the fees and costs incurred by Highland after NexPoint/HCRE filed its Motion to Withdraw were necessary for Highland to protect its interests and would not have been incurred "but for" NexPoint/HCRE's bad faith conduct and willful abuse of the judicial process.

*Second*, NexPoint/HCRE objects to Highland's fees ($809,776.50) and expenses ($16,164.05) as being "*per se* excessive for a single proof of claim objection."[69]  Highland argues that "[s]pending less than 5% of the value of an asset (according to Mr. Dondero's family trust) to obtain good, clear title is economically rational and consistent with the Claimant Trust's duty to maximize value for the benefit of the Claimant Trust's beneficiaries."  Per the Morris Declaration, Highland only seeks reimbursement of expenses and fees charged to Highland for expenses incurred and work performed in litigating the Proof of Claim (but—as noted earlier—specifically excluding any fees charged relating to the Disqualification Motion).  The court agrees with Highland and finds that the fees and expenses incurred by it in objecting to the Proof of Claim,

---

[69] Response, 10, ¶34.

including the fees incurred *after* NexPoint/HCRE sought to withdraw its Proof of Claim, were reasonable and necessary for Highland to protect a valuable asset—it's 46.06% interest in SE Multifamily—and, thus, they are not excessive.

*Third*, NexPoint/HCRE complains, in its Response, that the fees charged by PSZJ were unreasonable and excessive because the PSZJ invoices show that it was seeking reimbursement for fees charged by "layers of timekeepers whose identities and roles have not been disclosed."[70] NexPoint/HCRE points out three professionals (two of whom billed one hour or less) who were identified in PSZJ's invoices only by their initials.[71]   In its Reply, Highland identified the timekeepers by name—as a litigator who billed one hour of time; a bankruptcy attorney who billed 0.6 hours of time; and a bankruptcy partner who billed 15.1 hours of time—all of whom were "called upon to provide discrete support."[72]   Collectively, the three previously "unidentified" attorneys charged just 0.023% of the total fee request.[73]   PSZJ's identification of the "unidentified timekeepers" and explanation of the work performed by them satisfies the court that these fees were reasonable and necessary fees incurred as a direct result of NexPoint/HCRE's bad faith filing and prosecution of its Proof of Claim.   The court rejects NexPoint/HCRE's suggestion that PSZJ overstaffed and overbilled the file because there were "layers of timekeepers."   As pointed out in Highland's Reply, "over 82% of the charges related to one litigation partner . . . , one litigation associate . . . , and one paralegal" and "[t]wo other lawyers who have been on the Pachulski team since the inception of this engagement . . . billed relatively modest amounts of time over the course

---

[70] *Id.*, 13, ¶45.

[71] *Id.*, 12, ¶38.

[72] Reply, 9, ¶28.

[73] *Id.*

of this prolonged litigation."[74]  There is simply no factual basis to support a conclusion that the matter was overstaffed.

**Fourth**, NexPoint/HCRE objects to $9,840 charged by two attorneys for travel time,[75] while acknowledging that those attorneys' non-working travel time was billed at half of the attorneys' regular hourly rate.[76]  As pointed out by Highland in its Reply, Highland agreed to pay for travel time in its pre-petition engagement letter, so those "charges cannot come as a surprise to Mr. Dondero."[77]  The court takes judicial notice of the fact that attorneys charging half of their hourly rates for non-working travel time, as PSZJ did here, pursuant to its engagement letter with Highland that was approved when the court authorized the retention of PSZJ as counsel for the Debtor, is common practice and is a commonly approved term of engagement of professionals in bankruptcy cases.  The $9,840 charged by two attorneys for travel time in this matter was a reasonable and necessary expense incurred by Highland in responding to NexPoint/HCRE's bad faith filing and prosecution of its Proof of Claim.

**Fifth**, and finally, NexPoint/HCRE objects to the fees charged by David Agler (39 hours of work performed at $700 per hour) for providing Highland with tax advice in August 2022, on the basis that the invoice attached as Exhibit H to the Morris Declaration "indicated that it was 'unbilled' work" and that "[w]hatever work he did, it did not manifest itself in the proceedings."[78]  Highland pointed out that it **had** explained, in the Morris Declaration, that Mr. Agler provided "specialized tax advice concerning SE Multifamily and other matters related to the Proof of

---

[74] *Id.*, 9, ¶28 n. 5.

[75] Response, 12, ¶37.

[76] *Id.*, 11, ¶36 (Table 1).

[77] Reply, 9-10, ¶29.

[78] Response, 12, ¶42.

Claim."[79]  Highland provided a more detailed description of the services provided by Mr. Agler and why those services were necessary in its Reply:  "Mr. Agler provided his services in August 2022 in conjunction with Highlands's deposition preparation, including the deposition of SE Multifamily's accountant. These services were necessary because—as Mr. Dondero and Mr. McGraner admitted and as the evidence showed—Highland's participation in SE Multifamily was expected to provide substantial tax benefits."[80]  The court finds that the fees charged by David Agler for work performed for Highland that are set forth in Exhibit H to the Morris Declaration were reasonable and necessary expenses incurred by Highland in responding to HCRE's bad faith conduct and that they would not have been incurred "but for" NexPoint/HCRE's bad faith conduct and willful abuse of the judicial process.

The court has determined that the full amount of fees – $809,776.50 – and costs – $16,164.05 – that are set forth in detail in Exhibits F through H (and summarized on Exhibit I) of the Morris Declaration were reasonable and necessary for Highland to respond to, and would not have been incurred "but for," NexPoint/HCRE's bad faith filing and prosecution of its Proof of Claim, which the court has found to have been a willful abuse by NexPoit/HCRE of the judicial process.  Under Fifth Circuit precedent, it is appropriate for the court, in the use of its inherent power under Bankruptcy Code § 105(a), to order NexPoint/HCRE, as a compensatory sanction for its bad faith conduct and willful abuse of the judicial process, to reimburse Highland the full amount of fees and costs requested by Highland, which, in the aggregate, total $825,940.55. NexPoint/HCRE's objections to such amounts as excessive, unnecessary, unreasonable, or unrelated to NexPoint/HCRE's bad faith conduct, are overruled.

---

[79] Reply, 10, ¶30 (citing Morris Declaration, ¶15).

[80] *See id.* (citing Morris Declaration, Ex. [E] (Trial Transcript) 43:2-14; 83:17-84:2; 191:23-193:21 (citing to testimony and tax returns that were admitted into evidence)).

## V.     CONCLUSION AND ORDER

In summary, the court has determined that NexPoint/HCRE was given adequate notice and an opportunity to respond to the Sanctions Motion and that there is clear and convincing evidence that it filed and prosecuted its Proof of Claim, including its eleventh-hour attempt to withdraw its Proof of Claim, in bad faith and that it willfully abused the judicial process.  Such conduct directly caused Highland to incur $825,940.55 in fees and expenses.  In the exercise of its inherent power under Bankruptcy Code § 105(a), the court will grant Highland's Sanctions Motion and order NexPoint/HCRE to reimburse Highland for those fees and expenses as an appropriate sanction for NexPoint/HCRE's bad faith or willful abuse of the judicial process.

Accordingly, and based on the foregoing findings of fact and conclusions of law, including those findings and conclusions in this court's Proof of Claim Disallowance Order, which has been incorporated herein by reference,

**IT IS ORDERED** that the Sanctions Motion [Dkt. No. 3851] be, and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that, in order to compensate Highland for loss and expense resulting from NexPoint/HCRE's bad faith and willful abuse of the judicial process, in filing and prosecuting its Proof of Claim, NexPoint/HCRE is hereby directed to pay Highland the compensatory sum of **$825,940.55**.

**###End of Memorandum Opinion and Order###**