Joseph Y. Ahmad
Texas Bar No. 00941100
Federal Bar No. 11604
Shawn M. Bates
Texas Bar No. 24027287
Federal Bar No. 30758
Thomas Cooke
Texas Bar No. 24124818
Federal Bar No. 3837479
AHMAD, ZAVITSANOS & MENSING PLLC
1221 McKinney St., Suite 2500
Houston, Texas 77010
(713) 655-1101 Telephone
(713) 655-0062 Facsimile
joeahmad@azalaw.com
sbates@azalaw.com
tcooke@azalaw.com

Attorneys for Acis Capital Management, L.P.
and Acis Capital Management GP, LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: § | | Chapter 11 |
| § | | |
| **HIGHLAND CAPITAL MANGEMENT,** § | | Case No. 19-34054-sgj11 |
| **L.P.,** § | | |
| § | | Re: Docket 4080 |
| Debtor. § | | |
| § | | |

**ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANGEMENT GP, LLC'S REPLY IN SUPPORT OF MOTION TO INTERVENE**

Acis Capital Management, L.P. and Acis Capital Management GP, LLC (collectively, "Acis") submits this reply in support of its Motion to Intervene and Brief in Support [Dkt. 3695] ("Acis's Motion"), which Acis filed on March 25, 2023, and which Acis incorporates by reference as though fully stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A. Highland owed Acis under a multimillion-dollar Note, which Dondero transferred to HCLOM for no consideration to Acis.**

On October 27, 2016, Acis entered an agreement with Highland Capital Management, LP ("Highland" or "Debtor") whereby Acis sold some of its interest in cash flow from the management of Collateralized Loan Obligation ("CLO") portfolios to Highland in exchange for a $12,666,446 Promissory Note (the "Note").[1]

On October 20, 2017, Acis co-founder Josh Terry ("Terry") won a $7.9 million Arbitration Award against Acis.[2] On October 27, 2017, Highland president and chief executive James Dondero ("Dondero") formed Highland CLO Management, Ltd. ("HCLOM") in the Cayman Islands to receive the Note (which then had a balance of $9.6 million plus accrued interest).[3] On November 3, 2017, Dondero signed—in his capacity as president of Highland and as president of Acis Capital Management GP, LLC—an agreement that transferred the Note from Acis to HCLOM (the "Transfer Agreement") for no consideration to Acis.[4]

**B. Acis entered bankruptcy and initiated an adversary proceeding against Highland and various Highland affiliates.**

On January 30, 2018, Terry initiated involuntary bankruptcy proceedings against Acis.[5] On May 14, 2018, Robin Phelan (the "Trustee") was appointed as chapter 11 trustee in Acis's bankruptcy estate.[6]

---

[1] Dkt. 3695-4, Purchase Agreement, Ex. C to Acis's Motion; *see also* Dkt. 3695-2, Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued after Trial on Contest Involuntary Bankruptcy Petitions in Bankruptcy Case No. 18-30264-SGJ-7 ("Involuntary Opinion").
[2] *See* Involuntary Opinion, p. 4 ¶ 8.
[3] *See id.* at 19-20 ¶ 31.
[4] *See id.*
[5] *See* Case No. 18-30264, Docket No. 1 and Case No. 18-30265, Docket No. 1.
[6] *See* Case No. 18-30264, Docket No. 213.

On May 30, 2018, Highland and its affiliate entity, Highland CLO Funding, Ltd. ("HCLOF") filed a complaint against the Trustee.[7]

On June 21, 2018, the Trustee filed a complaint and application for a TRO against Highland and HCLOF.[8]

On July 2, 2018, the Trustee filed an answer to Highland and HCLOF's complaint and asserted counterclaims and third-party claims against Highland, HCLOF, HCLOM, and Highland HCF Advisor, Ltd. ("Highland Advisor").[9]

On January 31, 2019, this Court issued a confirmation order,[10] which approved Acis's Third Amended Joint Plan (the "Plan") and was supplemented by a confirmation opinion.[11] On February 15, 2019, the Plan's Effective Date, Acis was substituted for the Trustee in the above-referenced adversary cases.[12]

On March 11, 2019, the Court consolidated Adversary Case Nos. 18-03078 and 18-03212 under the caption *Robin Phelan, Chapter 11 Trustee v. Highland Capital Management, L.P., et al.* (the "Highland Adversary"), resulting in the designation of the Trustee (now Acis) as the Plaintiff and Highland Capital and its affiliates as Defendants.[13]

**C.      Acis settled claims against Debtor-Highland and certain Debtor-Highland affiliates but retained claims against James Dondero.**

On October 16, 2019, Highland filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware (the "Highland

---

[7] *See* Adv. No. 18-03078, Docket No. 1.
[8] *See* Adv. No. 18-03212, Docket No. 1.
[9] *See* Adv. No. 18-03078, Docket No. 23.
[10] Case No. 18-30264, Docket Nos. 829 and 830.
[11] Case No. 18-30264, Docket No. 827.
[12] Case No. 18-30264, Docket No. 863.
[13] *See* Adv. No. 18-03078, Docket No. 127; Adv. No. 18-03212, Docket No. 63.

3

Bankruptcy").[14] The Highland Bankruptcy was transferred to the Northern District of Texas on December 4, 2019.[15]

On April 11, 2020, Acis filed an adversary proceeding against James Dondero, a number of affiliated individuals, and CLO HoldCo, Ltd. (the "Dondero Adversary").[16]

On September 9, 2020, Acis reached a settlement agreement (the "Highland Settlement Agreement") with Debtor (so called because Highland had now entered bankruptcy) and Debtor-controlled entities, with some enumerated exceptions.[17] However, the Highland Settlement Agreement made clear that Acis would retain its claims against Dondero and a number of named Dondero affiliates.[18]

**D.  Three years after HCLOM asserted claims in the Highland Bankruptcy, Highland objected to HCLOM's claims. A month later, Acis intervened.**

On September 22, 2020, Debtor filed Amended Schedules of Assets and Liabilities in the Highland Bankruptcy ("Schedule E/F").[19] This was the first schedule to list claims by HCLOM against Debtor. Specifically, HCLOM asserted Claims 3.65 and 3.66, seeking the full amount of the Note and interest thereon.

On February 2, 2023—three years after the filing of Schedule E/F—Debtor filed its objection to Claims 3.65 and 3.66 ("Debtor's Objection").[20]

On March 25, 2023, Acis filed its Motion to Intervene and Brief in Support ("Acis's Motion").[21] On April 3, 2023, Acis filed a response to claims 3.65 and 3.66 subject to its pending

---

[14] *See* Case No. 19-12239, Docket No. 1.
[15] Dkt. 1.
[16] *See* Case No. 20-03060, Docket No. 1.
[17] *See* Dkt. 1088-2, p. 2 ¶ 1(a).
[18] *See id.*
[19] Dkt. 1082.
[20] Dkt. 3657.
[21] Dkt. 3691 and 3695.

4

motion to intervene.[22]

On April 3, 2023, HCLOM filed its response to Debtor's Objection.[23] Notably, HCLOM did not argue and has never argued that Debtor's Objection was untimely, despite the three-year delay between the filing of Schedule E/F and the filing of Debtor's Objection.

On June 7, 2024, HCLOM filed its objection to Acis's Motion ("HCLOM's Objection").[24] Acis hereby files its response.

## II. ARGUMENT

**A. Acis has never disclaimed its interest in the Note.**

Since April 2020, Acis has continued to press its claim against James Dondero for breaching his fiduciary duty to Acis and fraudulently transferring the Note to HCLOM. Yet HCLOM argues that Acis has disclaimed its interest in the Note. HCLOM is wrong.

1. Acis's intervention is not foreclosed by the Highland Settlement Agreement.

HCLOM argues that "Acis disclaimed any interest in the Note" because "as part of the [Highland] Settlement Agreement, Acis specifically disclaimed and released all claims for payment with respect for the Note" and "Acis further agreed to withdraw its claims against the Debtor-controlled defendants, including HCLOM."[25]

HCLOM is wrong. By entering the Highland Settlement Agreement, Acis relinquished its claims against Debtor and HCLOM, but it did not disclaim its interest in the Note itself. HCLOM has not pointed to the language in the Highland Settlement Agreement wherein Acis "specifically" disclaimed any interest it had in the Note, because there is no such language.

---

[22] Dkt. 3717.
[23] Dkt. 3714.
[24] Dkt. 4080.
[25] *Id.* at 11 ¶ 18 (pagination refers to the number imprinted at the top of the page by the Court's electronic case filing system).

5

Moreover, **Acis is not suing Debtor or HCLOM**. Acis is suing Dondero for breaching his fiduciary duty to Acis by fraudulently transferring the Note.[26] Acis does not seek any recovery whatsoever from Debtor or HCLOM. Therefore, Acis's intervention is not foreclosed by the Highland Settlement Agreement.

2. <u>The Transfer Agreement did not disclaim Acis's interest in the Note.</u>

HCLOM also argues that Acis disclaimed its interest in the Note because "Acis signed a valid Transfer Agreement on November 3, 2017[.]"[27] Of course, this argument assumes that the Transfer Agreement was "valid"—which is the very issue that Acis is intervening to litigate.

When HCLOM says that "Acis signed a valid Transfer Agreement," HCLOM is referring to **Dondero** signing the Transfer Agreement on behalf of both Acis and Debtor—an act for which Acis is suing Dondero on theories of breach of fiduciary duty and fraudulent transfer. Acis contends that the Transfer Agreement was **not** valid, but rather that it failed for lack of consideration to Acis.

HCLOM argues that Acis received consideration for the Note Transfer in that Acis relinquished its duty to manage the CLO portfolios, which HCLOM describes as "something [Acis] could no longer do[.]"[28] Of course, this ignores the **reason** why Acis "could no longer" manage the CLO portfolios, *i.e.*, Dondero decided to stop providing Acis with the services and support Acis needed to do the job. Dondero hamstrung Acis's ability to do business, then cited the

---

[26] It is evident that HCLOM has confused one pleading with another. HCLOM refers to the Dondero Adversary as "an Adversary Proceeding against Debtor and HCLOM[.]" *See* HCLOM's Objection, Dkt. 4080, p. 3 ¶ 9. But neither Debtor nor HCLOM have ever been named as defendants in the Dondero Adversary. To date, Acis has filed two complaints in the Dondero Adversary, both of which seek to hold **Dondero** liable for the Note Transfer, and neither of which assert any claim whatsoever against HCLOM or Debtor. HCLOM likely means to refer to the Highland Adversary, which was indeed settled by the Highland Settlement Agreement. But, as mentioned above, (1) the Highland Settlement Agreement did not dispose of every claim that Acis might make as to the **Note**, but rather disposed of claims that Acis might make against **Debtor** and **HCLOM**, and (2) the Highland Settlement Agreement explicitly retained Acis's claims against **Dondero**.
[27] *See* Dkt. 4080, HCLOM's Objection, p. 11 ¶ 19.
[28] *Id.* at ¶ 20.

6

loss of Acis's business as consideration for transferring away a $9.5 million asset. Plaintiffs have already addressed the absurdity of HCLOM's "consideration" argument,[29] but it bears repeating that Acis's purported "consideration" for giving HCLOM the Note was that Acis would **also** give HCLOM its highly lucrative management contracts—a detriment in exchange for a detriment.

Moreover, if HCLOM really wants to argue whether Acis received valid consideration for the Note Transfer, then HCLOM should welcome Acis's intervention. HCLOM argues that "Acis' underlying claim lacks merit[.]"[30] This is a tacit admission that Acis **does** have an interest in these proceedings, because these proceedings cut to the "merit" of Acis's "underlying claim," *i.e.*, Acis's Motion and HCLOM's Claims share "a common question of law or fact." *See* FED. R. CIV. P. 24(b)(1).

HCLOM's argument requires the Court to decide the very issue that Acis's Motion seeks to resolve. Acis's Motion should be granted, so that all parties may be heard on this issue.

**B.     Acis's intervention is timely.**

HCLOM contends that Acis's intervention is untimely because (1) Acis waited "years" before seeking to intervene, and (2) Acis's intervention would prejudice HCLOM and Debtor by requiring additional discovery and "drastically" altering the issues in these proceedings.[31]

HCLOM is wrong on both counts. For reasons explained below, Acis could not have intervened any earlier than the filing of Debtor's Objection in February 2023. Moreover, Acis's

---

[29] Plaintiffs have already addressed the absurdity of HCLOM's argument that Plaintiffs' "consideration" for the Transfer Agreement was to have HCLOM replace Acis as the manager of CLO portfolios. *See* Dkt. 3695, Acis's Motion, p. 8 ("Instead of promising Acis some benefit in exchange for Acis incurring a detriment . . . the Transfer Agreement provided that Acis would incur a detriment in exchange for **another** detriment: Acis would give up its right to payment under the Note 'in exchange for' also giving up its valuable CLO management business. In other words, the Transfer Agreement would have required Acis to **pay for the privilege** of irrevocably losing its business. This is not consideration—it is extortion.").
[30] Dkt. 4080, HCLOM's Objection, p. 10 ¶ 16.
[31] *Id.* at 15 ¶ 30.

7

intervention will require minimal (if any) additional discovery, and it will not alter the fundamental questions at issue in these proceedings one bit.

1. Acis's intervention will not cause prejudice.

HCLOM argues that it would be prejudiced if Acis's Motion were granted, because Acis's intervention would (1) "drastically alter the proceedings" and (2) require additional discovery.[32] HCLOM is wrong on both counts. Acis's intervention would not alter the questions at issue in these proceedings one bit, and it would only require minimal (if any) additional discovery. Accordingly, allowing Acis's intervention would not cause prejudice, and Acis's Motion is timely.

"The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene." *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970); *see also Rotstain v. Mendez*, 986 F.3d 931, 938 (5th Cir. 2021) (same). "In fact, this may well be the **only** significant consideration when the proposed intervenor seeks intervention of right." *Id.* This principle is widely recognized in federal courts across the country, not only the Fifth Circuit. *See, e.g.*, *Cook v. Bates*, 92 F.R.D. 119, 122 (S.D.N.Y. 1981) ("In the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention").

Permitting Acis to intervene in these proceedings would not prejudice HCLOM or Debtor. Even if HCLOM were correct that Acis waited "years" to assert its interest in the Note (which, for reasons explained below, HCLOM is **not** correct), the fact remains that Claims 3.65 and 3.66 sat on Debtor's bankruptcy schedule for almost three years before Debtor objected to them, and Acis moved to intervene just a few weeks afterwards. HCLOM is not prejudiced by Acis's intervention in a dispute that had only just begun.

---

[32] *See id.*

8

The facts here are very similar to those in *Bates*, where the court permitted intervention in a case it had retained for **three years**, holding that "[s]ince nothing has been done in this litigation but await a resolution of the related state proceedings, defendants will suffer no prejudice from a grant of the motion." *Cook v. Bates*, 92 F.R.D. 119, 122 (S.D.N.Y. 1981). Here, "nothing [was] done" with Claims 3.65 and 3.66 until Debtor's Objection. Acis filed its Motion to Intervene a few weeks after Debtor's Objection—and a full week before HCLOM responded to Debtor's Objection. In other words, Acis intervened in the dispute almost as soon as there was a dispute in which to intervene, and in fact responded sooner than HCLOM did.

HCLOM asserts two broad counterarguments. Both arguments lack merit.

First, HCLOM contends that allowing Acis to intervene would "drastically alter the proceedings" by forcing the Court to "at least partially focus on the enforceability of this Court's Order dismissing with prejudice Acis' claims against Debtor and HCLOM, and the Acis Settlement Agreement, which this Court approved."[33] But this is not true. As discussed above, Acis does not dispute that it agreed to dismiss its claims against both Debtor and HCLOM. There is no reason why the Court would need to "focus on the enforceability" of the settlement agreement—not even "partially"—because no one is arguing that point. Again, Acis is suing Dondero, not HCLOM or Debtor.

Moreover, Acis seeks intervention so that it can address the same fundamental points that Debtor and HCLOM are disputing in these proceedings, namely (1) whether the Transfer Agreement was valid, and (2) whether Debtor was obligated to pay under the Note, regardless of whether Acis remitted servicer fees or not. Those are the issues in these proceedings, and Acis's intervention would not change them one bit—let alone "drastically alter" them.

---

[33] *See id.*

As to the "additional discovery" issue, it is not an issue at all. Acis has already stated, and will here reiterate, that it would require only minimal discovery, if indeed it required any additional discovery at all.[34] HCLOM's hand-wringing on this point comes across as somewhat disingenuous, given that in HCLOM's response to Debtor's Objection—which, again, was filed a full week **after** Acis's Motion to Intervene—**HCLOM** requested additional discovery.[35]

Acis's intervention would not prejudice HCLOM. Given that prejudice is the "most important" of the Fifth Circuit's timeliness factors, Acis's Motion is timely and should be granted.

2. <u>Acis could not have intervened before Debtor's Objection.</u>

HCLOM contends that Acis waited "years" before seeking to intervene.[36] Not true. Acis intervened just a few weeks after the filing of Debtor's Objection, and a week before HCLOM's response to same. Moreover, Acis could not have intervened before Debtor's Objection.

In the Fifth Circuit, "delay is measured **either** from the time the applicant knew or reasonably should have known of his interest **or** from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit." *Rotstain*, 986 F.3d at 937 (emphasis in original) (internal quotations and citations omitted). Here, it is the second time limit that must apply, because Acis could not have intervened without first demonstrating that the existing parties would not protect its interests.

A party seeking to intervene as of right "must be inadequately represented by the existing parties to the suit." *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014). This inadequacy cannot be merely inferred or surmised—the applicant "has the burden of **demonstrating** inadequate representation[.]" *See id.* (emphasis added). This burden has "teeth" in that, "when the would-be

---

[34] *See* Dkt. 3695, p. 7.
[35] *See* Dkt. 3714, p. 6 ¶ 24 ("HCLOM requires discovery to obtain the complete payment history[.]").
[36] *See* Dkt. 4080, p. 12.

intervenor has the same ultimate objective as a party to the lawsuit . . . . the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party[.]" *Id.* (citing *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)).

Until the filing of Debtor's Objection in February 2023, Acis was not aware—and certainly could not have "demonstrated"—that Debtor would not adequately protect Acis's interest in the Note. Up until February 2023, any observer could have reasonably assumed that Debtor and Acis had the same "ultimate objective," *i.e.*, to see the Transfer Agreement declared invalid.

It was only when Debtor filed its objection that Acis learned of Debtor's principal contentions, namely that (1) the Transfer Agreement failed for lack of consideration to **Debtor**,[37] and (2) Debtor was excused from making payments under the Note because of various breaches by Acis and/or HCLOM.[38] These contentions stand in stark contrast to Acis's principal arguments, namely that (1) the Transfer Agreement failed for lack of consideration to **Acis**, and (2) Debtor was obligated to continue making payments on the Note regardless of whether Acis continued to remit Servicer Fees or not.

Accordingly, the "delay" should be measured from the date of Debtor's Objection in February 2023, because that was "the time [Acis] became aware that [its] interest would no longer be protected by the existing parties to the lawsuit." *See Rotstain*, 986 F.3d at 937. This means a delay of mere weeks—not "years," as HCLOM claims.

Acis's Motion is timely and should be granted.

3. Until Debtors objected, there was no "suit" or "action" in which to intervene.

Acis could not intervene until there was some dispute in which to intervene. There was no such dispute until the filing of Debtor's Objection in February 2023.

---

[37] *Id.* at 17 ¶¶ 48-49.
[38] Dkt. 3657, Debtor's Objection, pp. 12-17 ¶¶ 37-47; pp. 18-19 ¶¶ 50-56.

11

Under Fed. R. Civ. P. 24 (applicable through Fed. R. Bankr. 7024), the court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the ***action*** and is so situated that disposing of the ***action*** may as a practical matter impair or impede the movant's ability to protect that interest." FED. R. CIV. P. 24(a)(2) (emphasis added). Nearly a century of Fifth Circuit precedent requires the existence of a "suit," *i.e.*, a continuing dispute on the merits, for an applicant to intervene. *See, e.g.*, *Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926) ("An existing suit within the court's jurisdiction is a prerequisite of an intervention[.]"); *Truvillion v. King's Daughters Hospital*, 614 F.2d 520, 526 (5th Cir. 1980) (same); *Sommers v. Bank of America, N.A.*, 835 F.3d 509, 513 n.5 (5th Cir. 2016) (same).

But there was no "suit" or "action" prior to the filing of Debtor's Objection—just two claims that had sat, relatively static, on Debtor's schedule for almost three years without dispute. Accordingly, Acis could not have intervened any sooner than February 2023. As it happened, Acis intervened in March 2023—hardly a prejudicial delay, and certainly not a delay of "years."

Acis's Motion is timely and should be granted.

### III. CONCLUSION

For the reasons set forth above, Acis's Motion to Intervene is timely and should be granted. Acis has a valid interest in seeing its claims as to the Note vindicated, and it has a valid interest in seeing Debtor and HCLOM's claims rejected. Moreover, allowing Acis to intervene would not prejudice any party to the existing dispute, whereas disallowing Acis's intervention could result in a finding of law or fact that would imperil Acis's ongoing litigation against Dondero.

Accordingly, Acis respectfully asks that its Motion to Intervene be granted.

12

Respectfully submitted,

*/s/ Shawn Bates*
AHMAD, ZAVITSANOS & MENSING, PLLC
Joseph Y. Ahmad
Texas Bar No. 00941100
Federal Bar No. 11604
Shawn M. Bates
Texas Bar No. 24027287
Federal Bar No. 30758
Thomas Cooke
Texas Bar No. 24124818
Federal Bar No. 3837479
1221 McKinney St. Suite 2500
Houston, Texas 77010
(713) 655-1101 Telephone
(713) 655-0062 Facsimile
joeahmad@azalaw.com
sbates@azalaw.com
tcooke@azalaw.com

**COUNSEL FOR ACIS CAPITAL MANAGEMENT, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 28, 2024, a true and correct copy of the foregoing document was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this bankruptcy case, include both Highland and HCLOM, through counsel.

*/s/ Shawn M. Bates*
Shawn M. Bates