PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| In re: | § § | Chapter 11 |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § § | |

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S NOTICE OF DEPOSITION FOR FRANK WATERHOUSE, INDIVIDUALLY AND AS CORPORATE REPRESENTATIVE OF HIGHLAND CLO MANAGEMENT, LTD.**

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, made applicable herein pursuant to Federal Rules of Bankruptcy Procedure 7030 and 9014, Highland Capital Management, L.P. ("Highland"), the reorganized debtor in the above-captioned chapter 11 case (the "Bankruptcy Case"), shall take the deposition of Frank Waterhouse, individually and in his capacity as the corporate representative of Highland CLO

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

4880-3816-1117.7 36027.003

Management, Ltd. ("HCLOM"), with respect to the topics described in **Exhibit A** below and in connection with Highland's Objection (as defined in Exhibit A below), on **Tuesday, September 24, 2024**, commencing at **10:00 a.m. Central Time**, or at such other day and time as Highland may agree in writing. The deposition will be taken under oath before a notary public or other person authorized by law to administer oaths and shall take place in person at the offices of **Stinson LLP, 2200 Ross Avenue, Suite 2900, Dallas, Texas**. The deposition will be recorded by videographic and stenographic means for all purposes in this matter, including trial.

Dated: September 12, 2024

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:   jpomerantz@pszjlaw.com
              jmorris@pszjlaw.com
              gdemo@pszjlaw.com
              hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
E-mail:   MHayward@HaywardFirm.com
              ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

# **EXHIBIT A**

# **DEFINITIONS**

1. "<u>Acis</u>" refers to Acis Capital Management, L.P.

2. "<u>Ancillary Agreements</u>" refers to, individually and collectively, the agreements Highland identified in response to Interrogatory No. 5 served by HCLOM in this contested matter (*i.e.*, (a) the *Forbearance Agreement*, dated as of May 31, 2018, entered into by and between Highland and HCLOM; (b) the *Amended and Restated Forbearance Agreement*, dated as of May 31, 2019, entered into by and between Highland and HCLOM; (c) the *Acknowledgement and Waiver*, dated as of January 19, 2018, entered into by and among Highland, Acis, and HCLOM; and (d) the *Agreement*, dated as of January 10, 2018, entered into by and among Acis and Highland).

3. "<u>Appointment</u>" has the meaning ascribed to that term in ¶2 of the Assignment.

4. "<u>Assignment</u>" refers to that certain *Assignment and Transfer Agreement* dated as of November 3, 2017, and executed by Highland, Acis, and HCLOM.

5. "<u>Cancellation Agreement</u>" refers to that certain *Payment Cancellation Agreement*, dated as of May 10, 2018, prepared for execution by Highland and HCLOM.

6. "<u>CLOs</u>" refers, individually and collectively, to the collateralized loan obligation issuances listed in Schedule A of the Purchase Agreement.

7. "<u>Communications</u>" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and includes all oral and written communications of any nature, type or kind including, but not limited to, any ESI (and any attachments thereto), Documents, telephone conversations, text messages, discussions, meetings, facsimiles, e-mails,

pagers, memoranda, and any other medium through which any information is conveyed or transmitted.

8. "Concerning" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, edifying, analyzing, stating, referring to, dealing with, or in any way pertaining to the subject matter.

9. "Discovery Responses" means *Highland CLO Management, Ltd.'s Combined Discovery Responses and Objections* dated and served on August 23, 2024.

10. "Note" refers to that certain Promissory Note dated October 7, 2016, in the original principal amount of $12,666,446 by Highland in favor of Acis.

11. "Objection" refers to *Highland Capital Management, L.P.'s Objection to Scheduled Claims 3.65 and 3.66 of Highland CLO Management, Ltd.* filed at Docket No. 3657.

12. "Purchase Agreement" refers to that certain *Agreement for Purchase and Sale of CLO Participation Interests* dated October 7, 2016.

13. "Response" refers to the *Response of Highland CLO Management, Ltd. to Highland Capital Management, L.P.'s Objection to Scheduled Claims 3.65 and 3.66 of Highland CLO Management, Ltd.* filed at Docket No. 3715.

14. "Scheduled Claims" refers to scheduled claims 3.65 and 3.66 (individually and together) included in Exhibit 2 to the *Notice of Filing of Debtor's Amended Schedules* filed at Docket No. 1082.

15. "Servicer Fees" has the meaning ascribed to that term in the Recitals contained in the Assignment.

16. "Successor Manager" has the meaning ascribed to that term in the Recitals contained in the Assignment.

17. "You" or "Your" refers to HCLOM, and any person or entity authorized to act on behalf of HCLOM.

**TOPICS**

**Topic No. 1:**

The Purchase Agreement, including (a) the purpose of the Purchase Agreement; (b) the drafting, negotiation (if any), terms and conditions of the Purchase Agreement; (c) the timing of the execution of the Purchase Agreement; (d) the performance of the parties' obligations under the Purchase Agreement; (e) the representations, warranties and assurances of the seller and purchaser under the Purchase Agreement; and (f) Communications Concerning the Purchase Agreement.

**Topic No. 2:**

The Note, including (a) the purpose of the Note; (b) the drafting and negotiation (if any) of the Note; (c) the conditions precedent, events of default, and remedies under the Note; (d) the performance of obligations under the Note; and (e) Communications Concerning the Note.

**Topic No. 3:**

The Assignment, including (a) the purpose of the Assignment; (b) the drafting, negotiation (if any), terms and conditions of the Assignment; (c) the timing of the execution of the Assignment; (d) Your obligations under the Assignment; (e) Your performance of any obligations under the Assignment; (f) any contracts or agreements that You entered into in order to fulfill Your obligations and duties under the Assignment; (g) the authority of each person to execute the Assignment; and (h) Communications Concerning the Assignment.

**Topic No. 4:**

Each Ancillary Agreement, including (a) the purpose of each Ancillary Agreement; (b) the drafting, negotiation (if any), terms and conditions of each Ancillary Agreement; (c) the timing of the execution of each Ancillary Agreement; (d) the performance of each parties' obligations

under each Ancillary Agreement; (e) the authority of each person to execute each Ancillary Agreement; and (f) Communications Concerning each Ancillary Agreement.

**Topic No. 5:**

The Cancellation Agreement, including (a) the purpose of the Cancellation Agreement; (b) the drafting, negotiation (if any), terms and conditions of the Cancellation Agreement; (c) the decision not to execute the Cancellation Agreement (including the reasons for the decision and the person(s) who made that decision); and (d) Communications Concerning the Cancellation Agreement.

**Topic No. 6:**

The formation and operation of HCLOM, including (a) the purpose(s) for which HCLOM was formed; (b) the decision to form HCLOM, including the timing and the person(s) who made the decision to form HCLOM; (c) the identification, appointment and/or selection of HCLOM's officers and directors; (d) business conducted in the name of HCLOM; and (e) the direct and/or indirect ownership of HCLOM at all times since formation and the timing and reasons for all ownership changes.

**Topic No. 7:**

Any consideration (*i.e.*, anything of value) that You provided to Acis in exchange for the Assignment.

**Topic No. 8:**

Any consideration (*i.e.*, anything of value) that You provided to Highland in exchange for the Note.

**Topic No. 9:**

The Response, including (a) HCLOM's statement that the Assignment "contemplated that the controlling class of each of the Acis-managed CLOs would provide notice to replace ACIS

2

with HCLOM" as set forth in paragraph 26 of the Response; (b) HCLOM's statements that (i) the "controlling classes of the Acis CLOs issued optional redemptions attempting to effectuate the process of designating HCLOM as the manager of the Acis CLOs" and (ii) the Bankruptcy "Court entered a temporary restraining order, and then a plan injunction in the Acis Bankruptcy Case" and that "[a]s a result, HCLOM was never appointed the manager of the CLOs" as set forth in paragraphs 27 and 28 of the Response; (c) Highland's alleged unwillingness "to continue providing support personnel and other critical services to Acis with respect to the CLOs," as set forth in paragraph 53 of the Response; and (d) the *in pari delicto* defense asserted in paragraph 56 of the Response.

**Topic No. 10:**

Your Discovery Responses.

**Topic No. 11:**

The Scheduled Claims.

**Topic No. 12:**

Any attempted "re-set" or refinancing of the CLOs after June 9, 2016 (whether with Guggenheim Securities, BNP Paribas, Mizuho, Goldman Sachs or otherwise), and all communications concerning any such attempt(s).