# EXHIBIT 4

FILED
7/22/2021 5:53 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
JAVIER HERNANDEZ DEPUTY

DC-21-09534

CAUSE NO. _____

| | | |
|---|---|---|
| IN RE JAMES DONDERO, | § | IN THE DISTRICT COURT |
| | § | 95th |
| *Petitioner.* | § | _____ JUDICIAL DISTRICT |
| | § | |
| | § | DALLAS COUNTY, TEXAS |

### VERIFIED PETITION TO TAKE DEPOSITION BEFORE SUIT AND SEEK DOCUMENTS

Petitioner James Dondero respectfully requests that this Court order, pursuant to Texas Rule of Civil Procedure 202, the deposition of the corporate representatives of Alvarez & Marsal CRF Management, LLC, and of Farallon Capital Management, LLC. Petitioner further requests that the Court order certain limited, yet relevant documents to be provided under Texas Rule of Civil Procedure 199.2 as set forth below.

Petitioner would respectfully show the Court that:

### I.

### PARTIES

1. Petitioner James Dondero ("Petitioner") is an individual resident in Dallas County, Texas and is impacted by the potential acts and omissions alleged herein.

2. Respondent Alvarez & Marsal CRF Management, LLC ("A&M") is a Delaware limited liability company serving as an investment adviser, with offices in Dallas County, Texas, at 2100 Ross Ave., 21st Floor, Dallas, Texas 75201.

3. Respondent Farallon Capital Management LLC is a limited liability company with its primary place of business in California ("Farallon" and together with A&M, the "Respondents") which is an investment fund located at One Maritime Plaza, Suite 2100, San Francisco, CA 94111.

## II.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this matter pursuant to Texas Rule of Civil Procedure 202. The anticipated lawsuit would include common law claims.

5. The Court has personal jurisdiction over A&M because it maintains a regular place of business in Dallas County. Personal jurisdiction is also proper under TEX. CIR. PRAC. REM. CODE § 17.003, and under § 17.042(1)-(3) because its acts on behalf of the Crusader Funds (as defined below), would constitute a tort in this state. Furthermore, it participated in substantial acts in this state which are the subject of the investigation. Moreover, this Court has quasi *in rem* jurisdiction over any potential claims because the action concerns the sale of personal property that was located in Dallas County, and in which Plaintiff claims an interest.

6. The Court has personal jurisdiction over Farallon because it, acting on behalf of itself or one of its subsidiaries/affiliates, communicated with representatives of Highland Capital Management, LP which is located in Dallas County, and with representatives of Acis and Josh Terry (both of whom are residents in Dallas County), to purchase claims in the Highland Capital Management, LP ("Highland") Chapter 11 bankruptcy case (the "Highland Bankruptcy Case"). Such acts, if shown to have occurred could constitute a tort in this state. Moreover, this Court has quasi *in rem* jurisdiction over any potential claims because the action concerns the sale of personal property that was located in Dallas County, and in which Plaintiff claims an interest.

7. Venue is proper in Dallas County, Texas, where venue of the anticipated lawsuit may lie and where the property at issue exists, and where a substantial amount of the acts and omissions underlying the potential suit occurred.

8. Removal is not proper because there is no basis for federal jurisdiction because a Rule 202 petition, as a pre-suit mechanism, does not meet Article III of the United States Constitution's standing requirement of an actual, live case or controversy.

## III.

## FACTUAL BACKGROUND

9. This matter arises out of Farallon's purchase of certain bankruptcy claims in the Highland Bankruptcy Case, pending in the Northern District of Texas bankruptcy court, from three sources: HarbourVest, Acis Capital Management, LP, and the Crusader Funds (as defined below).

10. Petitioner is the founder and former CEO of Highland and is an adviser and/or manager of several trusts who own the equity in Highland. In addition, Petitioner is an investor in Highland Crusader Fund, Ltd. and several of its companion and affiliated funds (the "Crusader Funds").

11. Until recently, the Crusader Funds were managed by Highland, but are now managed and advised by A&M.

12. Shortly after the commencement of the Highland Bankruptcy Case, the Office of the United States Trustee solicited Highland's twenty largest unsecured creditors to serve on the Official Committee of Unsecured Creditors in the Highland Bankruptcy Case (the "UCC").

13. As set forth below, the Information Sheet attached to such solicitation provided, *inter alia*,

> **Creditors wishing to serve as fiduciaries on any official committee are advised that they may not purchase, sell or otherwise trade in or transfer claims against the Debtor while they are committee members absent an order of the Court. By submitting the enclosed Questionnaire and accepting membership on an official committee of creditors, you agree to this prohibition. The United States Trustee reserves the right to take appropriate action, including removing a creditor from any committee, if the information provided in the Questionnaire is inaccurate, if the foregoing prohibition is violated, or for any**

Petitioner's Verified Petition to Take Deposition Before Suit    Page 3

**other reason the United States Trustee believes is proper in the exercise of her discretion**. (Emphasis in Original)

14. The UCC was originally populated by four members, (i) the Redeemer Committee of the Highland Crusader Fund (the "Redeemer Committee"), (ii) Acis Capital Management, L.P. (iii) UBS Securities LLC and UBS AG London Branch (together, "UBS") and (iv) Meta-E Discovery LLC.

15. Upon information and belief, two of Highland's creditors – the Redeemer Committee (a member of the UCC) and the Crusader Funds, who between them held approximately $191 million in claims in the Highland Bankruptcy Case (the "Crusader Claims")–sold their claims to Jessup Holdings LLC ("Jessup"), a newly established limited liability company established by Farallon right before the sale. It was formed for the purpose of holding claims Farallon purchased in the Highland Bankruptcy Case.

16. Upon information and belief, two other Highland creditors—Joshua Terry and Acis Capital Management (another member of the UCC), who between them held approximately $25 million in claims (the "Acis Claims")—sold their claims to Muck Holdings LLC ("Muck"), a newly established limited liability company set up by Farallon solely for the purpose of holding the Acis Claims that Farallon purchased.

17. Finally, another group of affiliated creditors, HarbourVest 2017 Global Fund, L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment, L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners, L.P. (collectively, "HarbourVest") also sold $80 million worth of their claims (the "HarbourVest Claims", together with the Crusader Claims and Acis Claims, the "Claims") to Muck.

18. Notwithstanding the instructions issued by the Office of the United States Trustee, no one—not Farallon, nor the Redeemer Committee, HarbourVest or Acis Capital Management—ever sought, much less obtained Court approval to sell their respective claims.

19. Upon information and belief, a substantial amount of time passed between the agreement to sell the Claims and the consummation of such sales. Notwithstanding their agreement to sell their respective claims, neither the Redeemer Committee nor Acis Capital Management resigned from the UCC.

20. The current CEO of Highland, James Seery, has an age-old connection to Farallon and, upon information and belief, advised Farallon to purchase the claims.

21. On a telephone call between Petitioner and a representative of Farallon, Michael Lin, Mr. Lin informed Petitioner that Farallon had purchased the claims sight unseen—relying entirely on Mr. Seery's advice solely because of their prior dealings.

22. Mr. Seery had much to gain by brokering a sale of the Claims to Jessup and Muck—namely, his knowledge that Farallon—as a friendly investor—would allow him to remain as Highland's CEO with virtually unfettered discretion to administer Highland. In addition, Mr. Seery's rich compensation package incentivized him to continue the bankruptcy for as long as possible.

23. As Highland's current CEO, Mr. Seery had non-public, material information concerning Highland. Upon information and belief, such non-public, material information was the basis for instructing Farallon to purchase the Claims, in violation the Registered Investment Advisor Act 15 U.S.C § 80b-1 et seq., among other things.

24. Additionally, A&M, upon information and belief, did not put the Crusader Claims on the open market prior to selling them to Farallon. The sale of the Crusader Claims by A&M

was not pursuant to normal means and there is reason to doubt that A&M sought or obtained the highest price for the assets that it sold. This would have injured Petitioner as an investor in the Crusader Funds.

## IV.

## RELIEF SOUGHT

1. Petitioner asks this Court to issue an Order authorizing Petitioner to take a pre-suit deposition of a designated representative, or representatives, of A&M, and to depose Michael Lin, on the following topics, to investigate any potential claims by Petitioner arising out of the highly irregular manner in which the Claim were marketed (if at all) and sold, within ten days of the Court's Order, or as agreed by the parties:

   a. A&M's agreements with the Crusader Funds, and the agreement(s) of those funds with their respective investors;

   b. The valuation, marketing and sale of the Claims to Farallon (or its subsidiaries/. affiliates);

   c. The negotiations and communications leading up to the purchase or sale of the Claims;

   d. Any discussions with James Seery regarding the Claims;

   e. Any prior relationship with James Seery.

2. As part of the Court's Order, Petitioner requests this Court to require Respondents to produce the following documents at their respective depositions:

   a. All agreements, contracts, or other documents (including any e-mails, correspondence, texts, drafts, term sheets, or communications related to same) related to or concerning the valuation, purchase, marketing or sale of the Claims (or any subset of the Claims);

   b. All communications with James Seery regarding the Claims;

   c. All communications with, between or among A&M, Seery, HarbourVest, Joshua Terry, Acis, or Highland Capital Management ,LP (or any agent or

       representative thereof), regarding or related to the Claims (or any subset or portion thereof);

d. All communications regarding filing any notice with the Bankruptcy Court overseeing the Highland Bankruptcy Case or seeking such Court's approval for the sale or purchase of the Claims;

e. All offers to sell or purchase the Claims and/or all correspondence regarding same;

## V.

## HEARING

21. After service of this Petition and notice, Rule 202.3(a) requires the Court to hold a hearing on the Petition.

22. FOR THESE REASONS, Petitioner asks the Court to set a date for hearing on this Petition, and after the hearing, to find that the likely benefit of allowing Petitioner to take the requested depositions outweighs the burden or expense of the procedure. Petitioner further asks the Court to issue an Order authorizing Petitioner to take the oral depositions of Michael Lin and a designated representative or representatives of A&M after proper notice and service at the offices of Sbaiti & Company PLLC, 2200 Ross Avenue, Suite 4900W, Dallas, Texas 75201, within ten (10) days of the Court's Order, or as agreed by the parties, and to produce the requested documents at said deposition. Petitioner also seeks any further relief to which he may be justly entitled.

Dated:  July 22, 2021

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti**
 Texas Bar No. 24058096
**Brad J. Robinson**
 Texas Bar No. 24058076
J.P. Morgan Chase Tower
2200 Ross Avenue Suite 4900W
Dallas, Texas 75205
T:  (214) 432-2899
F:  (214) 853-4367
E:  mas@sbaitilaw.com
     bjr@sbaitilaw.com

**Counsel for Petitioner**

## VERIFICATION

I, the undersigned, have reviewed attached *Verified Petition to Take Deposition Before Suit and Seek Documents* and verify, pursuant to Tex. Civ. Prac. Rem. Code § 132.001 under penalty of perjury, that the factual statements therein, as stated, are true and correct, and are within the best of my personal knowledge as stated therein. The date of my birth is June 29, 1962, and my address is 2515 McKinney Avenue, Suite 1100, Dallas, Texas 75201.

Verified this 22nd Day of July, 2021.

_____
**James Dondero**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim James on behalf of Mazin Sbaiti
Bar No. 24058096
krj@sbaitilaw.com
Envelope ID: 55626531
Status as of 7/23/2021 3:02 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Kim James | | krj@sbaitilaw.com | 7/22/2021 5:53:07 PM | SENT |
| Jonathan E.Bridges | | jeb@sbaitilaw.com | 7/22/2021 5:53:07 PM | SENT |
| Charlotte Casso | | bcc@sbaitilaw.com | 7/22/2021 5:53:07 PM | SENT |
| Brad Robinson | | bjr@sbaitilaw.com | 7/22/2021 5:53:07 PM | SENT |
| Mazin Sbaiti | | mas@sbaitilaw.com | 7/22/2021 5:53:07 PM | SENT |