# EXHIBIT 6

CASE NO. DC-22-10107

| | | |
|---|---|---|
| CHARITABLE DAF FUND, L.P., | § | IN THE DISTRICT COURT |
| *Plaintiff*, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| ALVAREZ & MARSAL, CRF | § | |
| MANAGEMENT, LLC | § | |
| *Defendant*. | § | 116th JUDICIAL DISTRICT |

**PLAINTIFF CHARITABLE DAF FUND, L.P.'S SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT ALVAREZ & MARSAL, CRF MANAGEMENT, LLC**

TO:    Defendant Alvarez & Marsal, CRF Management, LLC, by and through its attorneys of record, John T. Cox III and Andrew Bean, GIBSON, DUNN & CRUTCHER LLP, 2001 Ross Avenue, Suite 2100, Dallas, TX 75201-2923

Plaintiff, Charitable DAF Fund, L.P. ("DAF"), serves this Second Set of Interrogatories and Requests for Production (collectively "Requests") on Defendant, Alvarez & Marsal, CRF Management, LLC ("A&M") as authorized by Rules 196 and 197 of the Texas Rules of Civil Procedure. A&M is requested to respond fully and in writing, along with producing all responsive, non-privileged documents, within thirty (30) days of service.

1

## INSTRUCTIONS

1. Each Request shall be construed and answered separately and shall not be combined for the purpose of supplying a common response thereto. Each answer shall set forth verbatim the Request to which it responds. The answer to a Request shall not be supplied by referring to the answer to another Request unless the Request referred to supplies a complete and accurate answer to the Request being answered. The specificity of any Request shall not be construed or understood as limiting the generality or breadth of any other Request.

2. These Requests require you to produce Documents and Communications and/or to provide information in your physical possession, custody, or control, as well as in the possession, custody, or control of any agents, employees, officers, members, managing members, directors, shareholders, partners, general partners, legal representatives, predecessors, successors, and assigns. All requested Documents, Communications, or information not subject to a valid objection that is known by, possessed by, or available to you that appears in your records must be provided.

3. In addition to original and final versions of Documents and Communications, each Request includes all drafts, alterations, modifications, changes, and amendments of such Documents and Communications, as well as copies non-identical to the original in any respect, including any copies bearing non-identical markings or notations of any kind.

4. If any requested Document, Communication, or information was, but no longer is, in A&M's possession, state whether a copy thereof is in the possession, custody, or control of some other person, agency, entity, partnership, or corporation, and why such Document, Communication, or information is no longer available, and the circumstances under which the loss occurred.

5. Each requested Document and Communication shall be produced in its entirety with an affixed bates stamp. If an identical copy appears in more than one person's files, each of the copies shall be produced or the extracted metadata shall reflect the source, owner, and/or custodian for all persons with identical copies. If a Document or Communication responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why the production of the remainder is not possible.

6. In the event you do not answer any Request, in whole or in part, on the basis of an assertion of attorney-client privilege, the work-product doctrine, or any other claim of privilege or immunity, answer each Request to the extent consistent with the

privilege or immunity asserted and provide information sufficient to permit the Court to make a determination of whether a proper basis exists for the assertion of privilege or immunity. For all documents withheld on the basis of privilege, state the basis for your claim with specificity and, for each such document, identify:

a. whether the document contains a request for legal advice and, if so, identify the person who requested the legal advice;

b. whether the document contains advice as to the meaning or application of particular laws or rules in response to such request;

c. any further information to explain and support the claim of privilege and to permit the adjudication of the propriety of that claim;

d. the nature of the privilege (including work product) that is being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and the type of document, *e.g.* letter or memorandum; the general subject of the document; and such other information sufficient to identify the document, including, where appropriate, the date, author, addressee, and other recipient(s) of the document.

7. If there are no Documents or Communications responsive to a particular Request, please provide a written response so stating.

8. DAF specifically reserves the right to serve additional Requests.

9. These Requests are continuing in nature as to require supplemental responses in accordance with the Texas Rules of Civil Procedure if and when additional Documents, Communications, or information responsive to any of the Requests herein is/are obtained, discovered, or located between the time of responding to these Requests and the final disposition of this action.

3

## RULES OF CONSTRUCTION

Along with the rules of construction and instructions provided under applicable discovery rules and law, these Rules of Construction apply to the following Requests:

1. Unless specifically stated otherwise in a particular Request, the relevant time period is October 16, 2019, to the present.

2. The terms "any" and "all" should be understood in either the most or the least inclusive sense as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope. "Any" includes the word "all," and "all" includes the term "any."

3. The terms "any," "all," and "each" shall each be construed as encompassing any and all.

4. The use of the singular form of any word shall be construed to include the plural and vice versa.

5. All phrases following the terms "including" are intended to illustrate the kinds of information responsive to each Interrogatory, and shall be construed as "including, but not limited to." Such examples are not intended to be exhaustive of the information sought and shall not in any way be read to limit the scope of an Interrogatory.

6. References to an entity are intended to include past and present officers, directors, employees, agents, affiliates, subsidiaries, owners, partners, general partners, shareholders, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, and/or any other person(s) acting on behalf of such entity.

4

# DEFINITIONS

For the purposes of these Requests, the following terms shall have the following definitions and meanings, unless expressly provided otherwise:

1. "A&M," "you," and "your," shall mean Alvarez & Marsal, CRF Management, LLC, and its managing members and other members, officers, agents, employees, representatives, attorneys, partners, predecessors, successors, assigns, and anyone else acting on A&M's behalf, now or at any time relevant to the response.

2. "Big Boy Clause" shall mean any agreement, or provision in any agreement, that purports to waive claims based on one party's superior knowledge and the non-disclosure of that superior knowledge to the other transacting party.

3. "Claims" shall mean collectively the "Redeemer Committee Claim," as defined herein, and the "Crusader Funds Claim," as defined herein.

4. "Communication(s)" and "communicate" shall mean any manner in which the mental processes of one individual are relayed to another, including, without limitation, any verbal utterance, correspondence, email, text message, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

5. "Concerning" shall mean reflecting, regarding, relating to, referring to, describing, evidencing, supporting, forming any basis for, or constituting.

6. "Crusader Fund" shall mean the Highland Crusader Fund II, Ltd., which is subject to this Lawsuit, and in which DAF purchased participating shares in or around June of 2016.

7. "Crusader Funds Claims" shall mean the Crusader Funds' allowed general unsecured claim of $50,000 against Highland Capital Management L.P., as referred to in Exhibit 1 hereto.

8. "Document" or "Documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the Texas Rules of Civil Procedure, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or

5

other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

9. "Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) and/or all related metadata with respect to all such Documents/ESI.

10. "Grosvenor" shall mean Grosvenor Capital Management, L.P.

11. "HCM" shall mean Highland Capital Management L.P.

12. "Identify" or "Identity(ies)" (person(s)) when referring to person shall, shall mean to provide the person's full first and last name; last known address, telephone number, and e-mail address; and last known place of employment.

13. "Identify" or "Identity(ies)" (document(s)) when referring to a document, shall mean to provide the document's name; the date of the document's creation; the form of the document (e.g., letter, e-mail message, etc.); a description of the substance of the document; and the identity of the person who currently possesses the document (and, if the document no longer exists, an explanation for why it no longer exists and the date on which it ceased to exist).

14. "Lawsuit" shall mean and refer to the above-captioned lawsuit styled: *Charitable DAF Fund, L.P. v. Alvarez & Marsal, CRF Management, LLC*, Cause No. DC-22-10107; 116th Judicial District Court of Dallas County, Texas.

15. "Jessup" shall mean Jessup Holdings LLC.

16. "Material Terms" shall mean the purchase price, any "Bigboy" clauses, value disclaimers, closing deadlines and any conditions precedent or conditions subsequent.

17. "Person" shall mean any natural person and/or any business, legal, or governmental entity or association.

18. "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, shall mean the party or parties, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

19. "Redeemer Committee Claim" shall mean the Redeemer Committee's allowed general unsecured claim of $137,696,610 against HCM, as referred to in Exhibit 1 hereto.

20. "Sale of the Claims" shall mean the sale of the Claims that occurred on or about April 30, 2021, as described in Exhibit 1 hereto.

21. "Seery" shall mean James P. Seery.

22. "Stonehill" shall mean Stonehill Capital Management, LLC.

7

## SECOND SET OF INTERROGATORIES

INTERROGATORY NO. 16: Describe A&M's role in preparing any written solicitation and participation in the negotiation of offers to purchase the Claims.

ANSWER:


INTERROGATORY NO. 17: Identify the asking price of the Redeemer Committee and the Crusader Fund relating to the Sale of the Claims.

ANSWER:


INTERROGATORY NO. 18: Identify all persons and/or entities that submitted an offer or offers to purchase the Claims.

ANSWER:


INTERROGATORY NO. 19: Identify the price set forth in each offer to purchase the Claims.

ANSWER:


INTERROGATORY NO. 20: Other than price, identify all other material terms of each offer to purchase either of the Claims.

ANSWER:


INTERROGATORY NO. 21: Describe whether the Redeemer Committee and/or the Crusader Fund has any right to participate in ultimate recoveries on the Claims and, if so, the terms of any such participation arrangement.

ANSWER:

8

INTERROGATORY NO. 22: Identify all persons and/or entities that communicated with A&M concerning DAF's Direct Interest, DAF's Full Direct Interest, DAF's capital account value, and/or DAF's shares in the Crusader Fund.

ANSWER:

INTERROGATORY NO. 23: Identify and describe in detail the role of Seery, Grosvenor, and/or anyone on the Redeemer Committee in the solicitation or negotiation of any of the offers leading up to the Sale of the Claims.

ANSWER:

INTERROGATORY NO. 24: Identify the material terms of the Sale of the Claims to Jessup.

ANSWER:

9

**SECOND SET OF REQUESTS FOR PRODUCTION**

REQUEST FOR PRODUCTION NO. 43: All Documents and Communications concerning the solicitation and negotiation of offers to purchase the Claims.

RESPONSE:


REQUEST FOR PRODUCTION NO. 44: All Documents and Communications concerning A&M's involvement in the solicitation and negotiation of offers to purchase the Claims.

RESPONSE:


REQUEST FOR PRODUCTION NO. 45: Any and all bids, offers, solicitation packages, term sheets, or similar documents, relating to the Sale of the Claims.

RESPONSE:


REQUEST FOR PRODUCTION NO. 46: All Documents and Communications concerning or reflecting the value of each of the Claims prior to or after the Sale of the Claims, or in connection with the solicitation or negotiation of offers as described in Exhibit 1.

RESPONSE:


REQUEST FOR PRODUCTION NO. 47: Any and all agreements granting the Redeemer Committee, or any member of the Redeemer Committee, and/or the Crusader Fund the right to participate in the ultimate recoveries on the Claims, and all Communications relating to any such grant.

RESPONSE:


REQUEST FOR PRODUCTION NO. 48: All Documents and Communications concerning or reflecting Seery's role in the solicitation or negotiation of any of the offers made in connection with the Sale of the Claims.

10

RESPONSE:

REQUEST FOR PRODUCTION NO. 49: All Documents and Communications concerning or reflecting Grosvenor's and/or anyone on the Redeemer Committee's role in the solicitation or negotiation of any of the offers made in connection with the Sale of the Claims.

RESPONSE:

REQUEST FOR PRODUCTION NO. 50: All Documents reflecting any Communications involving and/or including Seery, on the one hand, and A&M, on the other hand, regarding the Sale of Claims or the Claims

RESPONSE:

REQUEST FOR PRODUCTION NO. 51: All Documents reflecting any Communications involving and/or including Grosvenor, on the one hand, and A&M, on the other hand, regarding the Sale of Claims or the Claims

RESPONSE:

REQUEST FOR PRODUCTION NO. 52: All Documents reflecting any Communications involving and/or including Stonehill, on the one hand, and A&M, on the other hand, regarding the Sale of Claims or the Claims.

RESPONSE:

REQUEST FOR PRODUCTION NO. 53: All Documents reflecting any Communications involving and/or including Jessup, on the one hand, and A&M, on the other hand, regarding the Sale of Claims.

RESPONSE:

11

REQUEST FOR PRODUCTION NO. 54: All Documents reflecting any Communications between and/or among one or more of A&M, Seery, Grosvenor, Stonehill, and/or Jessup regarding any Big Boy Clause proposed or agreed to in connection with the Sale of the Claims or the Claims

RESPONSE:


REQUEST FOR PRODUCTION NO. 55: All Documents reflecting any Communications between and/or among one or more of A&M, Seery, Grosvenor, Stonehill, and/or Jessup regarding any risks of recovery on the Claims.

RESPONSE:


REQUEST FOR PRODUCTION NO. 56: All Documents reflecting any Communications between and/or among one or more of A&M, Seery, Grosvenor, Stonehill, and/or Jessup regarding any deferred payment(s) for the Claims, including but not limited to, any agreement to pay any additional money based on the ultimate/percentage of recovery on the Claims from HCM's bankruptcy estate.

RESPONSE:


REQUEST FOR PRODUCTION NO. 57: All Documents and Communications concerning or reflecting all persons and/or entities that communicated with A&M concerning DAF's Direct Interest, DAF's Full Direct Interest, DAF's capital account value, and/or DAF's shares in the Crusader Fund.

RESPONSE:


REQUEST FOR PRODUCTION NO. 58: All Documents and Communications concerning or reflecting Grosvenor's interest in the Crusader Fund.

RESPONSE:

REQUEST FOR PRODUCTION NO. 59: All Documents and Communications concerning or reflecting Grosvenor's interest, if any, in Stonehill.

RESPONSE:

REQUEST FOR PRODUCTION NO. 60: All Documents and Communications concerning or reflecting Grosvenor's interest, if any, in Jessup.

RESPONSE:

| | |
|---|---|
| Dated: July 29, 2024 | Respectfully submitted, |

/s/ *Sawnie A. McEntire*
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

Roger L. McCleary
Texas Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
(713) 960-7315 (Phone)
(713) 960-7347 (Facsimile)

**ATTORNEYS FOR PLAINTIFF
CHARITABLE DAF FUND, L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024, a true and correct copy of this instrument was filed and served on all known counsel of record in accordance with the Texas Rules of Civil Procedure.

/s/ *Sawnie A. McEntire*
Sawnie A. McEntire

3163998.1

14

# EXHIBIT 1



**Alvarez & Marsal CRF
Management, LLC** 2029 Century
Park East Suite 2060 Los
Angeles, CA 90067

July 6, 2021

**Re: Update & Notice of Distribution**

Dear Highland Crusader Funds Stakeholder,

As you know, in October 2020, the Bankruptcy Court approved a settlement of the Redeemer Committee's and the Crusader Funds' claims against Highland Capital Management L.P. ("HCM"), as a result of which the Redeemer Committee was allowed a general unsecured claim of $137,696,610 against HCM and the Crusader Funds were allowed a general unsecured claim of $50,000 against HCM (collectively, the "Claims"). In addition, as part of the settlement, various interests in the Crusader Funds held by HCM and certain of its affiliates are to be extinguished (the "Extinguished Interests"), and the Redeemer Committee and the Crusader Funds received a general release from HCM and a waiver by HCM of any claim to distributions or fees that it might otherwise receive from the Crusader Funds (the "Released Claims" and, collectively with the Extinguished Interests, the "Retained Rights").

A timely appeal of the settlement was taken by UBS (the "UBS Appeal) in the United States District Court for the Northern District of Texas, Dallas Division. However, the Bankruptcy Court subsequently approved a settlement between HCM and UBS, resulting in dismissal of the UBS Appeal with prejudice on June 14, 2021.

On April 30, 2021, the Crusader Funds and the Redeemer Committee consummated the sale of the Claims against HCM and the majority of the remaining investments held by the Crusader Funds to Jessup Holdings LLC ("Jessup") for $78 million in cash, which was paid in full to the Crusader Funds at closing. The sale specifically excluded the Crusader Funds' investment in Cornerstone Healthcare Group Holding Inc. and excluded certain specified provisions of the settlement agreement with HCM (the "Settlement Agreement"), including, but not limited to, the Retained Rights. The sale of the Claims and investments was made with no holdbacks or escrows.

The sale to Jessup resulted from a solicitation of offers to purchase the Claims commenced by Alvarez & Marsal CRF Management LLC ("A&M CRF"), as Investment Manager of the Crusader Funds, in consultation with the Redeemer Committee. Ultimately, the Crusader Funds and the Redeemer Committee entered exclusive negotiations with Jessup, culminating in the sale to Jessup.

A&M CRF, pursuant to the Plan and Scheme and with the approval of House Hanover, the Redeemer Committee and the Board of the Master Fund, now intends to distribute the proceeds from the Jessup transaction ($78 million), net of any applicable tax withholdings and with no reserves for the Extinguished Claims or the Released Claims. In addition, the distribution will include approximately $9.4 million in proceeds that have been redistributed due to the cancellation

and extinguishment of the interests and shares in the Crusader Funds held by HCM, Charitable DAF and Eames in connection with the Settlement Agreement, resulting in a total gross distribution of $87.4 million. Distributions will be based on net asset value as of June 30, 2021.

Please note that A&M CRF intends to make the distributions by wire transfer no later than July 31, 2021. Please confirm your wire instructions on or before **July 20, 2021**. If there are any revisions to your wire information, please use the attached template to provide SEI and A&M CRF your updated information on investor letterhead. This information should be sent on or before **July 20, 2021** to Alvarez & Marsal CRF and SEI at CRFInvestor@alvarezandmarsal.com and AIFS-IS_Crusader@seic.com, respectively.

The wire payments will be made to the investor bank account on file with an effective and record date of July 1, 2021. Should you have any questions, please contact SEI or A&M CRF at the e-mail addresses listed above.

Sincerely,

Alvarez & Marsal CRF Management, LLC

By: _____

Steven Varner
Managing Director

**On investor letterhead, please use the template below to provide Alvarez & Marsal CRF Management, LLC and SEI your updated wire information.**

| Information Needed | Wire Information Input |
|---|---|
| Investor name (as it reads on monthly statements)<br><br>Fund(s) Invested<br><br>Contact Information (Phone No. and Email)<br><br>Updated Wire Information<br>• Beneficiary Bank<br>• Bank Address<br>• Beneficiary (Account) Name<br>• ABA/Routing #<br>• Account #<br>• SWIFT Code<br><br>International Wires<br>• Correspondent Bank<br>• ABA/Routing #<br>• SWIFT Code | |

Signed By: _____          Date: _____