**STINSON LLP**
Deborah Deitsch-Perez
Michael P. Aigen
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for The Dugaboy Investment Trust*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| *In re* <br><br> HIGHLAND CAPITAL MANAGEMENT, L.P., <br><br> Reorganized Debtor.[1] | § § § § § § § § | Chapter 11 <br><br> Case No. 19-34054-sgj11 |

## OBJECTION OF THE DUGABOY INVESTMENT TRUST TO MOTION FOR AN ORDER FURTHER EXTENDING DURATION OF TRUSTS

---

[1] The *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., (As Modified)* [Dkt. 1808] ("*Plan*"), filed by Highland Capital Management, L.P. ("*HCMLP*") became effective on August 11, 2021 (the "*Effective Date*").

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ..................................................................................................................... 2

    A.     The Trusts' Motion Fails to Provide the Justification Necessary to Support the Requested Extension ............................................................................................ 2

    B.     A Substantial Portion of the Remaining Litigation Was Commenced or Expanded by the Debtor ......................................................................................... 5

    C.     The Trusts Should Be Compelled to Provide Additional Information .................... 9

    D.     The United States Trustee Should Intervene and Investigate ............................... 10

III. CONCLUSION ............................................................................................................... 11

CORE/3524155.0004/199115464.19

The Dugaboy Investment Trust ("Dugaboy") hereby objects to the motion of the Highland Claimant Trust ("Claimant Trust") and the Highland Litigation Sub-Trust ("Litigation Trust," and together with the Claimant Trust, the "Trusts"), formed under the confirmed and effective Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) [Dkt. 1808] ("Plan"), for entry of an order further extending the duration of the Trusts through and including August 11, 2026 ("Motion") [Dkt. 4213].

## I.    INTRODUCTION

1.    Over four years after Plan confirmation and after having disbursed more $376 million on $397 million of allowed claims, the Trusts seek a year extension of their existence without any specific justification for needing additional time. Yet under the Claimant Trust Agreement ("CTA"), "[t]he Claimant Trust shall not continue . . . except to the extent reasonably necessary to monetize and distribute the Claimant Trust Assets . . . ." [CTA, § 2.2(a)], and the Claimant Trustee is duty-bound to "manage and monetize the Claimant Trust Assets in an expeditious but orderly manner with a view towards maximizing value within a reasonable time period. . . ." [CTA, 2.3(b)(i)]. These concepts of an expeditious and prompt monetization of the Claimant Trust Assets are echoed throughout the CTA:

- a. "The Claimant Trust shall be administered by the Claimant Trustee . . . to oversee the . . .monetization of the Reorganized Debtor Assets . . . with a view toward maximizing value *in a reasonable time* . . . ."  CTA § 2.3(b)(viii) (emphasis added).

- b. "[T]he Claimant Trustee shall, in an *expeditious but orderly manner*, monetize the Claimant Trust Assets, make timely distributions and *not unduly prolong the duration of the Claimant Trust*."  CTA § 3.2(a) (emphasis added).

1

c. "The Claimant Trustee will monetize the Claimant Trust Assets with a view toward maximizing value *in a reasonable time*." CTA § 3.2(a) (emphasis added).

2. This means the Claimant Trust will pay (at least) another year of Mr. Seery's $150,000 a month salary plus potential additional unknown sums, along with paying the cost of a staff of numerous but unspecified others, and a huge complement of expensive professionals, to preside over what is admittedly largely a pile of cash. The Motion fails to provide any financial data to support the Motion other than conclusory, unsupported references to litigation. In other words, as explained below, the Trusts fail to allege a good faith basis or cause to extend the duration of the Trusts. In the absence of any data- or evidentiary-driven justification for the Motion, it should be denied.

3. Moreover, the Trusts fail to admit that they actually seek to remain in existence for several more years, with all the concomitant costs. The Debtor just filed a motion for approval of a settlement with Hunter Mountain Investment Trust (discussed further below) that indicates the Trusts intend to remain in existence until 2029.[2] At a minimum, Dugaboy (and any other interested parties) should be permitted to take discovery as to whether it is necessary for the Trusts to continue to exist, and, if so, for how long they are actually necessary, and what their continued existence will cost.

## II. ARGUMENT

**A. The Trusts' Motion Fails to Provide the Justification Necessary to Support the Requested Extension**

4. Extending the duration of the Trusts is not a matter to be lightly undertaken. The Trusts were supposed to have ended already, under the terms of the CTA. CTA § 14 (contemplated

---

[2] *See* Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement With The HMIT Entities And Authorizing Actions Consistent Therewith, filed May 19, 2025, Bankr. Dkt. No. 4216 at ¶ 21 ("Subject to certain conditions precedent, the Indemnity Trust will make subsequent distributions Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests with a final distribution date estimated to be on or about April 1, 2029.").

2

three-year term from the Effective Date). An extension is only permitted if it is "necessary" to complete the liquidation of the Claimant Trust Assets. *Id*. Nothing in the Trusts' Motion provides and explanation of how the extension is "necessary."

5.    Rather, the Trusts' Motion raises a host of questions, all of which should be answered before entering any order allowing the Trusts to continue in existence: (1) Why hasn't the estate been liquidating more assets so that distributions can be made to creditors and former equity? (2) What particular assets remain in the estate and what is the value of those assets? (3) How much money is in the indemnity sub-trust? (4) How many employees are the Trusts continuing to employ on work related to the estate and what compensation (including bonuses) have those employees received or been promised? (5) Is the compensation being paid to the Trusts' professionals reasonable given the very limited duties remaining?

6.    Obtaining answers to these questions is essential because, although the operative plan is a liquating plan, the Trusts appear to be focusing on litigation instead of proceeding with the timely and orderly liquidation of the Claimant Trust's assets for the benefit of the creditors and former equity, which is the Claimant Trust's express purpose.

7.    This is especially so in this case where it is evident that the estate has sufficient assets to pay all unsecured creditors in full, meaning that the Litigation Trustee does not have standing to prosecute its claims in the Kirschner Litigation and that case should be dismissed, not deployed as an excuse to keep the Trusts alive and spend more of the estate's funds.[3] If in fact an analysis of the estate shows that all creditors can be paid, then the duty of good faith and fair dealing (which the

---

[3] *See* 26 C.F.R. § 301.7701-4(d) ("However, if the liquidation is unreasonably prolonged or if the liquidation purpose becomes so obscured by business activities that the declared purpose of liquidation can be said to be lost or abandoned, the status of the organization will no longer be that of a liquidating trust."); *Est. of Cornell v. Johnson*, 367 P.3d 173, 178 (Idaho 2016) ("[V]esting cannot be postponed by unreasonable delay in distributing an estate and [] when there is such delay, contingent interests vest at the time distribution should have been made.") (discussed in RESTATEMENT (SECOND) OF TRUSTS, § 198 (1959)); *see also Edwards v. Gillis*, 146 Cal.Rptr.3d 256, 263 (Cal.App. 4 Dist., 2012) ("when there is [unreasonable] delay contingent interests vest at the time distribution should have been made.").

3

CTA acknowledges applies, CTA 4.3) requires the Trustee to make the payments, make the GUC Payment Certification, pay the holders of Contingent Interests (former equity) and dissolve the Trusts, not keep them artificially alive to benefit the administrators of the Trusts and their professionals.

8. Requesting at least one more year to liquidate and wind down the estate is particularly troublesome in view of the already colossal and largely unexplained spending by the Debtor, the Trusts, and their professionals to date. As Dugaboy has previously pointed out, estate professionals have earned more than $250 million in fees and continue to accrue fees at an alarming and irresponsible rate. Yet the post-confirmation estate has been structured in a way that precludes any checks on this unmitigated spending. Ironically, Pachulski and the Unsecured Creditors Committee advocated removal of pre-bankruptcy management to avoid the cannibalization of the estate, but "independent" management has somehow been permitted to do that very thing.

9. In light of the estate's solvency, the former equity holders have made continuous efforts to obtain meaningful financial information about the estate and to hold estate professionals accountable for their continued professional spend. After all, any continued erosion of the estate comes directly out of the pockets of Class 10 and 11 claimholders. This is particularly true for Dugaboy, now that HMIT has attempted to negotiate a pot of cash for itself despite the continued information vacuum that the Trusts have insisted on maintaining.

10. The consequence of the Court's continued refusal to scrutinize Mr. Seery's management of the Claimant Trust and the value of the estate is significant. Any reasonable observer could surmise that the Claimant Trust has sufficient assets to pay Class 8 and 9 claimholders in full with interest and to certify that Class 10 and 11 claimholders are "Claimant Trust Beneficiaries" with a right to the surplus of the estate.

11. But without the Court's willingness to examine the reasons for the Trusts' continued existence and their continued spending, Mr. Seery may continue to hold the Claimant Trust hostage

4

to protect his own interests—in direct contravention of his fiduciary duties under applicable Delaware Trust law. That is precisely why the Court should demand answers and transparency (or allow necessary discovery) prior to granting the Trusts' Motion.

### B. A Substantial Portion of the Remaining Litigation Was Commenced or Expanded by the Debtor

12. The Trusts argue that a continuation of their existence is necessary because of unresolved litigation that they contend was caused by Mr. Dondero and his affiliates. Specifically, the Trusts claim that "a significant portion of the Claimant Trusts' time has been devoted to addressing litigation initiated or caused by James Dondero and his affiliates" and attach Exhibit B, which contains a list of that unresolved litigation. Motion at ¶ 13.

13. An analysis of Exhibit B, however, demonstrates that a substantial portion of the unresolved litigation was necessitated by Debtor conduct, or commenced or expanded by the Debtor, and/or stayed indefinitely at the behest of the Debtor. And none of it justifies the proposed year-long extension of the life of the Trusts.

- *Dondero v. Jernigan*, Case No. 24-10287 (5th Cir.) (Jernigan Recusal Litigation): This is a case in which the Fifth Circuit has acknowledged that "a strong argument could be made that [Judge Jernigan] had a duty to recuse." April 16, 2025 Fifth Circuit Panel Op. at 15. In other words, it is a case that Dondero and Dugaboy were and are justified in pursuing. In any event, few proceedings relating to recusal remain, and the Trusts make no effort to quantify the reserve needed to resolve the case.

- *HCMFA v. HCMLP*, Case No. 23-10534 (5th Cir.) ("*Highland II*") (Confirmation/Gatekeeper Appeal): This is an appeal justifiably taken to ensure that this Court properly implemented the Fifth Circuit's instructions in *In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022) ("*Highland I*") by narrowing the scope of the Plan's injunction provision and gatekeeper clause coextensively with the Plan's

5

exculpation provision. HCMFA recently *prevailed* in the appeal, and the Fifth Circuit *denied* Highland's petition for rehearing, its petition for rehearing en banc, and its motion to stay the mandate pending a petition for writ of certiorari. *See Highland Capital Mgmt., L.P. v. Highland Cap. Mgmt. Fund Advisors, L.P.*, No. 23-10534, Dkt. No. 68 (March 18, 2025) (finding the Bankruptcy Court erred by failing to follow *Highland I*'s instruction to narrow the injunction provision and gatekeeper clause); *id.*, Dkt. 83 (April 28, 2025) (denying petitions for rehearing and rehearing en banc); *id.*, Dkt. No. 105 (May 22, 2025) (denying the Debtor's motion to stay the mandate). Indeed, it is the Debtor and the Trusts that have been pursuing costly efforts to impermissibly broaden the gatekeeper and to chill oversight of the estate, all of which have been rejected.[4] In any event, few proceedings relating to the blue-penciling of the gatekeeper clause remain (except the Debtor's own misguided effort to seek Supreme Court review of the Fifth Circuit's order upholding *Highland I*), and the Trusts make no effort to quantify the reserve needed to resolve the case.

- *HMIT v. HCMLP*, Case No. 3:23-cv-02071-E (N.D. Tex.) (Claims Trading Appeal): This is a case where the Debtor and the Court insisted on a full evidentiary hearing to determine, under the overbroad gatekeeper clause, whether HMIT and Dugaboy had stated a colorable claim. But the Fifth Circuit in *Highland II* has now held that the Bankruptcy Court had no gatekeeping authority over the many of the claims raised by HMIT. Thus, much of the cost of the gatekeeping proceedings could have been avoided had Highland not encouraged the Bankruptcy Court to adopt an unduly restrictive reading of the Fifth Circuit's directive in *Highland I* and to retain the

---

[4] *See also* December 23, 2024 Memorandum Opinion and Order (denying HCMLP's Motion to Deem the Dondero Entities Vexatious Litigants), Civil Action No. 3:21-cv-0881-X, Doc. 234.

6

overbroad protection of the original gatekeeper clause. Moreover, the proposed settlement between HMIT, the Debtor, and the Trusts would resolve this case, removing it as a justification for extension of the Trusts.

- *HCRE v. HCMLP*, Case No. 3:24-cv-1479-S (N.D. Tex.) (HCRE Appeal of Bad Faith Order): The Bankruptcy Court granted the Debtor's motion for bad faith finding and sanctions against NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC ("HCRE"), and HCRE appealed that order. The appeal is fully briefed and pending in the District Court. This litigation would have been simple and considerably less costly had the Debtor not fought to keep it alive solely for the purpose of seeking sanctions, and insisted on a conducting a full evidentiary hearing on a proof of claim that HCRE had long sought to withdraw. In other words, the Debtor and Trusts are responsible for multiplying the cost. But in any event, few proceedings relating to the Bad Faith Order remain, and the Trusts make no effort to quantify the reserve needed to resolve the matter.

- *Dugaboy v. HCMLP*, Case No. 3:24-cv-01531-X (N.D. Tex.) (Appeal of Dugaboy Valuation Dismissal): In this litigation, Dugaboy simply sought information about distributions and an accounting of the assets and liabilities held by the Claimant Trust, the same information that is necessary to determine whether the pending Motion is necessary. This litigation would have been simple and less costly had the Claimant Trust simply provided this information. But in any event, the pending appeal relates to a narrow issue, and the Trusts make no effort to quantify the reserve needed to resolve the matter.

- *HMIT v. Seery*, Case No. 3:24-cv-01786- BW (N.D. Tex.): In this proceeding, HMIT sought removal of Seery as Claimant Trustee through a motion for leave that was

7

stayed by the Bankruptcy Court. But based on *Highland II*, this is a dispute over which the Bankruptcy Court has no gatekeeping authority. Thus, all of the costs of the gatekeeping proceedings were incurred because of the Debtor's and Trusts' wrongful application of the gatekeeper clause of the Plan.

- *Kirschner v. Dondero*, Adv. Proc. No. 21-03076-sgj (Bankr. N.D. Tex.): This proceeding was instituted by Mr. Kirschner, the Litigation Trustee, and stayed in the Bankruptcy Court pursuant to a request made by Mr. Kirschner. Moreover, it is by now apparent that the costly litigation never should have been filed because the estate is, and always has been, solvent and capable of paying all creditors' claims in full.

- Dugaboy's Motion to Preserve Evidence and Compel Forensic Imaging of James P. Seery, Jr.'s iPhone, Bankr. Dkt. No. 3802: This dispute was stayed, along with several other disputes, pursuant to the Bankruptcy Court's Order Granting In Part and Denying In Part Motion To Stay And To Compel Mediation [Dkt. No. 3897] on August 2, 2023. And the motion was only made necessary because Mr. Seery admittedly failed to preserve communications sent from and received on his personal cell phone. In any event, the Trusts make no effort to quantify the reserve needed to resolve the dispute.

- *Highland v. Daugherty*, Adv. Proc. No. 25-03055-sgj (Bankr. N.D. Tex.) (Objection to Patrick Daugherty's Remaining Disputed Proof of Claim): This dispute was commenced by the estate against Patrick Daugherty. Mr. Dondero and his entities have no involvement in the dispute.

14. In short, nothing in the Trusts' Exhibit B supports the notion that Mr. Dondero and his affiliates have prevented a full liquidation and winding down of the estate. Nor does Exhibit B help demonstrate why another year would be necessary to deal with the straggling disputes listed or give any indication of how much money they Trusts believe they need to spend to resolve the disputes.

8

Without any analysis of the costs versus the benefits of pursuing or defending the above litigation and the budgets for doing so, the litigation is not a valid basis to extend the life of the Trusts. At a minimum, Dugaboy should be allowed discovery with respect to these issues so that remaining stakeholders and the Court may evaluate whether the Trusts' Motion has any merit.

15. Setting aside Exhibit B, the Fifth Circuit has acknowledged that the Bankruptcy Court itself has wrongfully contributed to the unnecessary costs in the estate. Specifically, the Fifth Circuit found, in reversing the contempt order that the Bankruptcy Court had levied on Mr. Dondero, that "Highland incurred virtually all its contempt-related expenses because the bankruptcy court permitted extensive discovery and conducted a marathon evidentiary hearing to unearth Dondero's role in filing the Motion. But Dondero's intentions were relevant only to criminal contempt—a sanction the bankruptcy court was powerless to impose." *Matter of Highland Cap. Mgmt., L.P.*, 98 F.4th 170, 176 (5th Cir. 2024). The Bankruptcy Court similarly permitted the Debtor's witch hunt in the HCRE matter discussed above, which is likely to suffer a similar fate when it reaches the Fifth Circuit, as an entirely unnecessary but expensive exercise in hunting for an excuse to punish Mr. Dondero and his affiliates.

    C.    **The Trusts Should Be Compelled to Provide Additional Information.**

16. Given all of these open questions, Dugaboy objects to the continuation of the Trusts unless they provide credible evidence justifying the delay in liquidating the estate, efforts being undertaken to distribute remaining assets to the Class 9 Claimants, and the financial information referenced above. Dugaboy also responds to make it clear that it continues to maintain (and does not waive any argument), among other things, that: (i) counsel that filed the Motion has conflicts of interest and is charging unnecessary fees; (ii) the indemnity fund that has been set aside is excessive; (iii) creditors should be paid in full now; (iv) Mr. Seery should not continue to be paid $150,000 a

9

month; (v) Dugaboy has a vested interest and is entitled to distributions; and (vi) this case should be resolved.

17.　　With respect to the Litigation Trust, it has recognized, by staying its only litigation,[5] that litigation to increase the estate's coffers is unnecessary because the estate has more than sufficient assets to pay all creditors in full. Nonetheless, extremely expensive counsel for the Litigation Trust still appears at hearings, including those not remotely pertinent to the Litigation Trust (which is nearly all of the hearings occurring at this juncture). Dugaboy therefore respectfully requests that the Litigation Trust and its professionals cease all such activities unless those activities are undertaken at no expense to the estate. For the same reason, if the Litigation Trust or its professionals are receiving any periodic stipends (such as flat fees or data hosting fees), Dugaboy requests that those also be ceased.[6]

### D.　　The United States Trustee Should Intervene and Investigate.

18.　　By this Objection, Dugaboy reiterates its prior pleas[7] and requests that the United States Trustee intervene and investigate the post-confirmation management of the Debtor's estate to encourage better oversight and transparency. The post-confirmation trust structure created by the Debtor has been the linchpin of its efforts to obfuscate estate value and to prevent resolution of the estate for the benefit of all creditors. It appears as though post-confirmation management is content to indefinitely increase the pot for the Indemnity Sub-trust, so long as that creates enough of a drain to make the estate look insolvent and to prevent the payoff of creditor claims. Indeed, it appears that Mr. Seery is intent on disenfranchising former equity rather than efficiently and timely monetizing

---

[5] The Litigation Trustees' Motion to Stay the Adversary Proceeding, filed March 24, 2023, Adv. Pro. No. 21-03076-sgj at Dkt. 324.

[6] Nothing in this response should be construed as a waiver of Dugaboy's rights, as allowed by law, to challenge the attorneys' fees received by either counsel for the Claimant Trust or the Litigation Trust, which rights are specifically reserved.

[7] *See, e.g.*, Letter dated August 20, 2024 from Counsel from Dugaboy to Executive Office of the US Trustee annexed hereto as Exhibit A.

CORE/3524155.0004/199115464.19

and resolving the estate as required by the CTA. As such, Dugaboy continues to believe that such an intervention is proper and would benefit all parties involved in this bankruptcy to the extent that the Motion is granted and the Trusts are extended.

### III. CONCLUSION

For the foregoing reasons, Dugaboy requests that the Trusts' Motion be denied or, alternatively, if it is granted, the Trusts should be compelled to produce the information requested in this response.

Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas Bar No. 24036072
Michael P. Aigen
Texas Bar No. 24012196
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com
*Counsel for The Dugaboy Investment Trust*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 29, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez

12