Jason S. Brookner (Texas Bar No. 24033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
Drake M. Rayshell (Texas Bar No. 24118507)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email:   jbrookner@grayreed.com
         dyork@grayreed.com
         jsmeltzer@grayreed.com
         drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054 (SGJ) |
| | § | |
| Reorganized Debtor. | § | |
| | § | |

**PATRICK DAUGHERTY'S OBJECTION
TO MOTION FOR ENTRY OF AN ORDER
PURSUANT TO BANKRUPTCY RULE 9019 AND
11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT
ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH**

Patrick Daugherty ("Daugherty) files this Objection to the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4216] (the "Motion") filed by Highland Capital Management, L.P.'s ("Debtor" or "Highland"), the Highland Claimant Trust (the "Claimant Trust"), and the Highland Litigation Sub-Trust (the "Litigation Sub-Trust")

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

4938-1049-1722

(collectively, Highland, the Claimant Trust and the Litigation Sub-Trust are referred to as "Movants"). In support of this Objection, Daugherty respectfully states as follows:

## I.    SUMMARY

1. The proposed settlement between Movants and the HMIT Entities[2] is not in the best interests of Highland's estate and violates the Plan, this Court's Confirmation Order, the Claimant Trust Agreement, and the absolute priority rule because the proposed settlement contravenes the class priority required by the same. As Movants state in their Motion, Daugherty remains the "only unresolved Claim[]" against the estate, which is classified as a Class 8 claim. Motion at 4, n. 3, ¶ 21; *see also* Adv. Proc. 25-03055-sgj, Docket No. 1 at ¶ 37. The HMIT Entities' claims are contingent Class 10 claims under the Plan and are subordinated to Daugherty's unresolved claim. Adv. Proc. 25-03055-sgj, Docket No. 1 at ¶ 37, n. 8. Thus, the HMIT Entities' claim cannot be resolved, and there cannot be any distributions from the estate to the HMIT Entities until Daugherty's remaining Class 8 claim is resolved.

2. In addition to violating the terms of the Plan and Claimant Trust Agreement, the proposed settlement violates promises made by James Seery to Daugherty that Daugherty's remaining claim would be resolved before Highland reached any resolution that would effectively lead to the liquidation of the estate, as this proposed settlement with the HMIT Entities seeks to do. Worse, the proposed settlement, on its face, inverts the priority of Class 8 and 10 creditors in an attempt to provide a payoff to the HMIT Entities and their insiders who have consistently sought to subvert the Bankruptcy.

3. What is more, at face value, the proposed settlement appears to be Movants' submission to the HMIT Entities' litigation tactics. In exchange for Movants' consideration under

---

[2] Capitalized terms not otherwise defined herein are defined in the Motion.

2

the Settlement Agreement, Movants are seeking individual releases and protections from the HMIT Entities, that courts have otherwise withheld or limited, as opposed to prioritizing the interests of the estate. Tellingly, the proposed settlement comes on the heels of the United States Court of Appeals for the Fifth Circuit's March 18, 2025, judgment that Highland recently characterized as having "shredded" the gatekeeper provision in the approved Governance Settlement. *See* Emergency App. For Stay of Mandate and Judgment, at 2 in Case No. 24A1154 (filed May 27, 2025 in the Supreme Court of the United States).[3]

4.  For all of these reasons, as more fully set forth below, the Court should reject the proposed settlement.

## II. BACKGROUND

5.  Daugherty filed Proof of Claim No. 67 on April 1, 2020. He later filed Proof of Claim No. 77, which superseded and replaced Claim No. 67 in its entirety. Then on December 23, 2020, Daugherty filed Proof of Claim No. 205, which superseded and replaced Claim No. 77 in its entirety.

6.  On January 22, 2021, Highland filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1808] (the "Plan"). A month later, the Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) and (II) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order"). The Plan then became effective on August 11, 2021. *See* Docket No. 2700.

---

[3] In addition to the claims made in the various adversary proceedings tied to Highland's bankruptcy, the proposed settlement would insulate current Highland employees from potential liability in other litigation in the absence of the gatekeeper provision. *See, e.g.*, *Highland Employee Retention Assets LLC v. James Dondero et al.*, Civ. A. No. 3:24-cv-00498-K (N.D. Tex.) at Docket No. 1 (Complaint)(implicating current Highland employees, such as Thomas Surgent and David Klos, even though they are not named parties).

3

7. On March 8, 2022, following Court approval, Daugherty and Highland entered a Settlement Agreement to resolve, in part, his Claim No. 205. Docket No. 3088, 3089 (the "Settlement Agreement").

8. Under that Settlement Agreement, Daugherty retained a Reserved Claim[4] relating to Highland's 2008 tax return. *Id*. The Reserved Claim concerns a compensation and benefits contract between Highland and Daugherty relating to Daugherty's cash bonus, that was presented to Daugherty pursuant to a tax refund scheme developed by Highland during the financial crisis in 2008 and 2009. That tax refund scheme was later challenged by the Internal Revenue Service ("IRS"). The gravamen of Daugherty's Reserved Claim relates to whether Highland's refund "deviated materially from [Highland's] estimate" such that "other compensation [to Daugherty should have been] fairly adjusted" as promised. Adv. Proc. 25-03055-sgj, Docket No. 1-1.

9. Critically, under the terms of the Settlement Agreement, "[a]ny litigation by and between the [Debtor] and Daugherty concerning the validity and amount of the Reserved Claim *shall be stayed* until the IRS makes a final determination with respect to the IRS Audit Dispute." *Id.* (emphasis added). Highland concedes that the resolution of the IRS audit is still pending. Adv. Proceeding 25-03055-sgj, Docket No. 1 at ¶ 3 ("Highland's 2008 tax return *is currently subject to an IRS audit*.") (emphasis added); ¶ 4 ("It is unclear when, how, or if the 2008 Audit will be finally resolved."). Movants also acknowledged Daugherty's Reserved Claim is "contingent on the final outcome of the 2008 Audit." *Id.* at ¶ 35. Thus, the validity and amount of Daugherty's Reserved Claim remains pending until the IRS Audit Dispute[5] is resolved.

10. Daugherty's Reserved Claim is a general unsecured claim and thus is classified as a Class 8 Claim under the Plan. *See* Docket No. 1943, Ex. A at 22-23. Following the Court's

---

[4] "Reserved Claim" has the meaning ascribed to it in Docket No. 3089, the parties' Settlement Agreement.
[5] "IRS Audit Dispute" has the meaning ascribed to it in Docket No. 3089, the parties' Settlement Agreement.

4938-1049-1722

approval of the Settlement Agreement, Seery promised Daugherty on at least one occasion that Highland would not take any steps to liquidate the estate before Daugherty's Reserved Claim was resolved.

11. The proposed settlement between Movants and the HMIT Entities would, among other things, make an allowance for the HMIT Entities' Class 10 Interest in the Claimant Trust in a fixed amount, and make distributions to the HMIT Entities on account of its Class 10 Interest. Docket No. 4216 at 3.

12. The Plan provides that the "allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise." Plan at Art. III.J.

13. This Court's Confirmation Order approving the Plan echoes that same sentiment, providing that:

> [T]he Contingent Interests [in Class 10 and Class 11] will not vest unless and until holders of Class 8 General Unsecured Claims and Class 9 Subordinated Claims receive distributions equal to 100% of the amount of their Allowed Claims plus interest as provided under the Plan and Claimant Trust Agreement. ***Accordingly, as the holders of Equity Interests that are junior to the Claims in Class 8 and Class 9 will not receive or retain under the Plan on account of such junior claim interest any property unless and until the Claims in Class 8 and Class 9 are paid in full plus applicable interest.***

*See* Docket No. 1943 at 44 (emphasis added).

14. Further, the Highland Capital Claimant Trust Agreement (the "<u>Claimant Trust Agreement</u>") does not allow Class 10 or Class 11 claims to vest, "unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan, and all Disputed Claims have been resolved"

5

(the "GUC Payment Certification"). Docket No. 3817-4 at 577. As of the date of this Objection, the Claimant Trustee has not filed the GUC Payment Certification. Nor could it because Daugherty's remaining claim is unresolved.[6]

15. As Movants concede, and the Court is well aware, this Bankruptcy proceeding has endured a tortured history of disputed claims, off-shoot litigation, challenges to this Court's authority, a multitude of appeals, and a myriad of material accusations levied by Movants against the very HMIT Entities, and their insiders, that Movants now seek to absolve and reward through this proposed settlement. *See e.g.,* Motion at ¶¶ 14-19 (collecting actions). Perhaps a poster child for the prolific scope of the HMIT Entites' litigation strategy, the Court previously issued an excoriating 105-page opinion lambasting the HMIT Entities' attempt to subvert the Bankruptcy through seeking leave to file an adversary proceeding (one of many) without standing to do so. Docket No. 3903.

16. At various points in the Bankruptcy, the Litigation Trustee, Mark Kirschner, on behalf of the Litigation Sub-Trust, has taken the position that insiders of the HMIT Entities were individually responsible and beholden to the estate to return enormous sums of money that were fraudulently siphoned from the Debtors' coffers through a series of illegitimate schemes. *See* Adv. Proceeding 21-03076-sgj, Docket No. 158 (asserting multiple claims sounding in Fraud against the HMIT Entities and their insiders). Now, rather than seek to recover the "hundreds of millions of dollars in damages that [Highland] suffered at the hands of its founder, James Dondero, acting in concert with other entities [(including the HMIT Entities)] that he owned and controlled [] and with the aid of other [Highland] officers and attorneys who disregarded their fiduciary duties to

---

[6] Recently, Highland announced that it had paid all Class 9 claims in full, which would also violate the Plan, the Claimant Trust Agreement, and the absolute priority rule vis-à-vis Daugherty's Reserved Claim. *See* Docket 3817-4 at 576-77 (providing that Class 9 Claims "shall only be entitled to distributions" after "all Disputed General Unsecured Claims have been resolved").

6

4938-1049-1722

[Highland] in favor of Dondero and their own self-interest," Movants seek to lay down and forgo the potential recovery of hundreds of millions of dollars for the estate and its creditors. *Id.* at ¶ 1.

17. Against that backdrop, and in direct contravention of the explicit prohibitions in the Plan, Confirmation Order, and Claimant Trust Agreement, the Movants have elected to enter into a settlement that would result in the transfer payments of over $300 million of value on account of the HMIT Entities' *contingent* Class 10 equity interests. In other words, with this proposed settlement, Movants aim to sidestep their fiduciary obligations and reward the HMIT Entities for their vexatious litigation tactics. It appears HMIT Entities' strategy to overwhelm the Movants, and Dondero's oft-quoted goal to "burn the place down," has worn the Movants into submission such that Movants would prefer to take an offramp in lieu of continuing the pursuit of recovering hundreds of millions of dollars rightfully belonging to creditors of the estate.

### III. ARGUMENT AND AUTHORITIES

**A. The Proposed Settlement Inverts the Priority Structure Under the Confirmation Order and the Bankruptcy Code.**

18. It is settled law that a confirmation order is "a judgment that binds all interested parties to the plan's terms." *Matter of German Pellets Louisiana, L.L.C.*, 91 F.4th 802, 805 (5th Cir. 2024). Here, the Confirmation Order established a binding priority structure that requires the payment in full of Class 8 claims before distributing funds to contingent Class 10 equity interest holders. *See* Docket No. 1943 at 44. Indeed, holders of any equity interests that are junior to the Claims in Class 8 and Class 9 "will not receive or retain under the Plan . . . any property unless and until the Claims in Class 8 and Class 9 are paid in full plus applicable interest." *Id*. This Court interpreted and applied this very language in a now dismissed adversary proceeding. In a May 24, 2024, memorandum opinion, the Court found that HMIT's former limited partnership interest in Highland was classified in Class 10 and that:

7

4938-1049-1722

> [u]nder the terms of the Plan, [HMIT's] interest[] [was] cancelled in exchange for [a] ***unvested*** contingent interest[] in the Claimant Trust . . . that will vest if, and only if, the Claimant Trustee certifies that the Class 8 general unsecured claims and Class 9 subordinated claims have been paid in full, all disputed claims in Classes 8 and 9 have been resolved, ***and*** certain other obligations—primarily, the Claimant Trust's significant indemnity obligations—have been satisfied.

*Hunter Mountain Inv. Tr. v. Highland Capital Mgmt., L.P.,* (*In re Highland Capital Mgmt., L.P.*), No. 19-34054-SGJ-11, 2024 WL 2703149, at *3 (Bankr. N.D. Tex. May 24, 2024) (emphasis in original); *See In re Highland Capital Mgmt., L.P.*, No. 19-34054-SGJ-11, 2023 WL 5523949, at *35 n. 215 (Bankr. N.D. Tex. Aug. 25, 2023).

19. Further, the Claimant Trust Agreement approved by this Court requires the Creditor Trustee to file a GUC Payment Certification confirming that all general unsecured claims under Class 8 and Class 9 had been paid "indefeasibly in full" prior to making any payments to Class 10 or Class 11 equity interest holders. Docket No. 3817-4 at 577. The Certification requires the Creditor Trustee to certify that all Disputed Claims have been resolved.

20. Notwithstanding the plain language of the Plan, Confirmation Order, and the Claimant Trust Agreement, Bankruptcy Code § 1129(b)(2) requires the payments of creditors under a plan of reorganization to be "fair and equitable." 11 U.S.C. § 1129(b)(2). A fundamental part of the fair and equitable standard is that "the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property." *Id* § 1129(b)(2)(C)(ii). This standard is commonly referred to as the absolute priority rule.

21. Here, the Movants' proposed settlement agreement with HMIT would violate not only this Court's Confirmation Order, but also the absolute priority rule. *See Hunter Mountain Inv. Tr.*, 2024 WL 2703149, at *3; *see also* 11 U.S.C. 1129(b)(2). The Debtor's own Motion admits as much. Motion at 4 n. 3, ¶ 21 (Daugherty remains the "only unresolved Claim[]" against

8

the estate.); *see also* Adv. Proc. 25-03055-sgj, Docket No. 1 at ¶ 37. The indisputable fact looming over the Movants' proposed settlement agreement with the HMIT Entities is that Daugherty's Class 8 claim has not been "paid in full plus applicable interest." *See* Docket No. 1943 at 44. Therefore, any settlement payments made to the HMIT Entities—a holder of Class 10 contingent equity interests—prior to the full satisfaction of Daugherty's Class 8 claim would be improper and subvert the Bankruptcy Code, this Court's Confirmation Order, and the Claimant Trust Agreement. For this reason alone, the Court should deny the Movants' Motion.

    B.    **The Proposed Settlement Operates to Reward the HMIT Entities' Bad-Faith Litigation Tactics Employed to Diminish and Obstruct the Bankruptcy Estate and Does Not Satisfy the Three-Factor Test Courts in the Fifth Circuit Employ to Analyze and, Ultimately, Approve Proposed Settlements**.

22.    Under Bankruptcy Rule 9019, a bankruptcy court may approve a compromise or settlement after appropriate notice and a hearing so long as the proposed settlement is fair, reasonable, and in the estate's best interest. *See Official Comm. of Unsecured Creditors v. Moeller (In re Age Refin. Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, a decision to accept or reject a compromise or settlement is within the sound discretion of the Court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602–03 (5th Cir. 1980)); *In re ASARCO LLC*, No. 05-21207, 2009 WL 8176641, at *10 (Bankr. S.D. Tex. June 5, 2009).

23.    Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

24.    To determine whether a settlement is fair and equitable, this Court should consider and evaluate the following factors: "(1) [t]he probability of success in the litigation, with due

9

4938-1049-1722

consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) [a]ll other factors bearing on the wisdom of the compromise." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997) (citing *In re Jackson Brewing Co.*, 624 F.2d at 602); *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1997); *In re Wright*, 545 B.R. 541, 561 (Bankr. S.D. Tex. 2016); *see also TMT Trailer Ferry, Inc.*, 390 U.S. at 424–25 (providing that in determining whether a settlement is fair and equitable, a court should consider "the probabilities of ultimate success should the claim be litigated…[,] the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.").

25.   Factors "bearing on the wisdom of the compromise" include:  (a) "the paramount interest of creditors with proper deference to their reasonable views"; and (2) "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *In re Foster Mortg. Corp.*, 68 F.3d at 917–18; *Cajun Electric*, 119 F.3d at 356; *In re Wright*, 545 B.R. at 561.

26.   Movants run afoul of the foregoing factors by skirting their obligation to prosecute their legitimate and well-founded claims against the HMIT Entities for their part in fraudulently dissipating hundreds of millions of dollars from Highland's coffers.  *See e.g.*, Adv. Proceeding 21-03076-sgj, Docket No. 158; *see also* Motion at ¶¶ 14-19 (collecting actions).  Appallingly, Movants seek to instead promise hundreds of millions of dollars to the HMIT Entities in exchange for mutual releases.  These mutual releases are the result of the HMIT Entities bringing a barrage

10

4938-1049-1722

of actions against Movants that this Court and others have repeatedly rebuffed, including on appeal. *Id.* Moreover, this laydown occurs in spite of Movants' steadfast assertion in this Court that "they have strong and meritorious defenses to all." *Id.* at ¶ 28. The HMIT Entities' barrage of actions that at one point even prompted Highland to "seek an adjudication that they or some of [the HMIT Entities] are vexations litigants." *Id.* at ¶ 2.

27. Casting all of it to the wayside, Movants now seek to throw in the towel because "history has shown that defending the Pending HMIT Litigation, including the appeals that *could* result therefrom, will be costly, time-consuming and value-destructive to the estate and creditor recoveries" and there is no guarantee that "the HMIT Entities will not file additional litigation against the Highland Entities *and their indemnified parties*." *Id.* at ¶ 28 (emphasis added). Apparently, Movants have decided that succumbing to the HMIT Entities' litigation tactics better suits their individual pursuits and economic wellbeing, regardless of its impact on the estate. *Id.* Stated plainly, this proposed settlement is a matter of self-serving convenience, not one of fairness and equity.

28. The ultimate effect of this proposed settlement is to reward bad-faith and vexatious litigants, who defrauded the estate, in response to their overwhelming litigation tactics. There can be no wisdom identified in such a proposed compromise, because there is no compromise—there is simply submission and surrender. As such, this proposed settlement is not fair, reasonable, or in the best interest of the estate and should be categorically denied.

### IV. CONCLUSION

29. For the foregoing reasons, the Court should reject the proposed settlement between Movants and the HMIT Entities.

Respectfully submitted this 9th day of June, 2025.

                                      **GRAY REED**

                                      By:   */s/ Andrew K. York*
                                              Jason S. Brookner
                                              Texas Bar No. 24033684
                                              Andrew K. York
                                              Texas Bar No. 24051554
                                              Joshua D. Smeltzer
                                              Texas Bar No. 24113859
                                              Drake M. Rayshell
                                              Texas Bar No. 24118507
                                      1601 Elm Street, Suite 4600
                                      Dallas, Texas 75201
                                      Telephone:  (469) 320-6050
                                      Facsimile:   (469) 320-6886
                                      Email:        jbrookner@grayreed.com
                                                        dyork@grayreed.com
                                                        jsmeltzer@grayreed.com
                                                        draysehll@grayreed.com

                                      *Counsel to Patrick Daugherty*

4938-1049-1722

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this 9th day of June 2025, via the CM/ECF system and/or email.

| **PACHULSKI STANG ZIEHL & JONES LLP** | **HAYWARD PLLC** |
|---|---|
| Jeffrey N. Pomerantz | Melissa S. Hayward |
| CA Bar No. 143717 | TX Bar No. 24044908 |
| jpomerantz@pszjlaw.com | MHayward@HaywardFirm.com |
| John A. Morris | Zachery Z. Annable |
| NY Bar No. 2405397 | TX Bar No. 24053075 |
| jmorris@pszjlaw.com | ZAnnable@HaywardFirm.com |
| Gregory V. Demo | 10501 N. Central Expy, Ste. 106 |
| NY Bar No. 5371992 | Dallas, TX 75231 |
| gdemo@pszjlaw.com | Telephone: (972) 755-7100 |
| Hayley R. Winograd | Facsimile: (972) 755-7110 |
| NY Bar No. 5612569 | |
| hwinograd@pszjlaw.com | |
| 10100 Santa Monica Blvd., 13th Floor | |
| Los Angeles, CA 90067 | |
| Telephone: (310) 277-6910 | |
| Facsimile: (310) 201-0760 | |

*Counsel for Highland Capital Management, L.P.*

By: /s/ *Andrew K. York*
      Andrew K. York

4938-1049-1722