Matthew S. Okin
Texas Bar No. 00784695
David L. Curry, Jr.
Texas Bar No. 24065107
Okin Adams Bartlett Curry LLP
1113 Vine Street, Suite 240
Houston, Texas 77002
Tel: (713) 228-4100
Fax: (346) 247-7158
mokin@okinadams.com
dcurry@okinadams.com

ATTORNEYS FOR THE DALLAS FOUNDATION AND
CROWN GLOBAL LIFE INSURANCE, LTD.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL | § | |
| MANAGEMENT, L.P., | § | |
| | § | Case No. 19-34054-sgj11 |
| Debtor. | § | |

**OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH**
[Related Docket No. 4216]

The Dallas Foundation (the "Foundation"), on behalf of Empower Dallas Foundation ("EDF") and The Okada Family Foundation (the "Okada Foundation"), and Crown Global Life Insurance, Ltd. ("Crown,"), not individually, but solely in respect of Segregated Accounts 30218 & 30219 (the "Segregated Accounts") hereby file this objection (the "Objection") to the Motion (the "9019 Motion") for entry of an order pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") filed on behalf of Highland Capital Management, L.P., the

reorganized debtor (the "Debtor" or "Highland," as applicable) in the above-captioned chapter 11 case (the "Bankruptcy Case"), the Highland Claimant Trust (the "Claimant Trust"), and the Highland Litigation Sub-Trust (the "Litigation Sub-Trust" and together with Highland and the Claimant Trust, the "Movants"), and respectfully states as follows:

## I.
## PRELIMINARY STATEMENT

1.  Through the Motion, the Movants seek approval of a settlement agreement (the "Settlement") purportedly entered into by Movants with Hunter Mountain Investment Trust ("HMIT"), Beacon Mountain LLC ("Beacon Mountain"), Rand Advisors, LLC ("Rand Advisors"), Rand PE Fund I, LP ("Rand PE Fund"), Rand PE Fund Management, LLC ("Rand GP"), Atlas IDF, LP ("Atlas IDF"), and Atlas IDF GP, LLC ("Atlas GP" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP, and Atlas IDF, the "HMIT Entities"), which Movants describe as "one of the most significant developments in the long-running Highland Bankruptcy Case." *Motion*, p. 3. As described by Movants, the significance of the settlement rests in the belief that it will bring to an end "protracted and value-destructive litigation that has impeded the Highland Entities' ability to distribute their assets to their constituents and fully implement the Plan." *Id.*

2.  Unfortunately, unbeknownst to the Movants, the Settlement is potentially tainted by the actions of Mark Patrick, the apparent sole manager and director of the HMIT Entities. Specifically, upon information and belief, Mr. Patrick illicitly restructured the ownership of the HMIT Entities in a manner that seems to facilitate the diversion of millions of dollars in assets from the charitable entities that are the beneficial owners of the HMIT Entities. As set forth herein, given the actions of Mr. Patrick and the pending proceedings related thereto, rather than

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 2 –

4903-0158-0364, v. 5

provide the peace sought by Movants, approval of and consummation of the Settlement will most likely result in further litigation both before this Court and in jurisdictions outside of the United States.

3. Further, as set forth in more detail herein, the alleged actions of Mr. Patrick, taken in his capacity as the sole manager or officer of various entities within the charitable organization structure supported by the HMIT Entities and their assets, along with the timing of the Settlement, all establish a cloud of suspicion over the HMIT Entities' entry into the Settlement. Upon information and belief, under the structure illicitly put in place by Mr. Patrick, more than half of the proceeds of the Settlement will flow to an entity formed very recently by Mr. Patrick and based out his personal home, rather than to the Charitable Entities (defined below) who should be receiving such proceeds. Approval of the Settlement would, therefore, also be inequitable at this time.

4. For these reasons, as more fully set forth herein, the 9019 Motion should be denied.

## II.
## FACTUAL BACKGROUND

5. The lengthy procedural history of this Bankruptcy Case has been well documented in numerous prior pleadings and orders from this Court and is, therefore, not repeated herein. Moreover, the Beneficial Owners do not at this time have sufficient information to either admit or deny the procedural or background allegations set forth in the Motion but admit that those certain publicly available pleadings and orders referenced were filed or entered, as the case may be, on the dates and in the proceedings set forth in the Motion.

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 3 –

4903-0158-0364, v. 5

A.  **The Foundation is a Beneficial Owner of the HMIT Entities**

6. The HMIT Entities, and their assets, are held and managed for distribution to certain charitable organizations through a Donor Advised Fund (a "DAF") established at the direction of James Dondero in 2011.[1] The DAF was structured as a limited partnership and registered under the name The Charitable DAF Fund, L.P. (the "Fund"). The formation documents for the Fund make clear its charitable purposes and further establish that, while certain non-voting limited partnership interests were nominally held by the Supporting Organizations (defined below), the Charitable Entities (defined below) that they supported were the actual indirect, beneficial owners of the Fund.

7. Specifically, the recitals set forth in its partnership agreement provide that:

> the [Fund] was formed in order to own, operate and make certain investments directly or indirectly on behalf of certain entities exempt from taxation under Section 501(c)(3) of the U.S. Internal Revenue Code of 1986, as amended (the "Code") and the parties hereto desire for the [Fund] to be for the economic benefit of the Limited Partner and its Indirect Charitable Owners (as defined below) as set forth herein.

*Amended and Restated Exempted Limited Partnership Agreement of The Charitable DAF Fund, LP*, p. 1. Further, the "Purpose and Powers" of the Fund include investment: "in the sole discretion of the General Partner for the purpose of benefitting, directly or indirectly, the Indirect Charitable Owners." *Id.*, at p. 2, Art. 1.3.

8. Lastly, the partnership agreement specifically provides that the Charitable Entities are: "the indirect equity owners of the Limited Partners, which shall at all times be entities or Organisations exempt from taxation under Section 501(c)(3) of the Code or entities or

---

[1] As originally structured, the HMIT Entities were wholly owned by their sole member, Charitable DAF Holdings Corp., which is, in turn, indirectly owned by the Fund.

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 4 –

4903-0158-0364, v. 5

Organisations whose sole beneficiaries are entities or Organisations exempt from taxation under Section 501(c)(3) of the Code." *Id*. at p. 4, Art. 1.12(b).

9. As a beneficial owner of the HMIT Entities, approval of the Settlement will have a direct, pecuniary impact upon the Charitable Entities, including the Foundation. This is because, as a result of actions believed to have illicitly taken by Mr. Patrick, a significant portion of the economic interests derived by the HMIT Entities from the Settlement will flow to Mr. Patrick rather than the Charitable Entities for whose benefit the Fund was established.

B. **The Original Structure and Management of the Fund**

10. To achieve certain desired tax treatments, the Fund, a Cayman Islands exempted limited partnership, was structured with a single limited partner, Charitable DAF Holdco, Ltd ("Holdco"), holding 99% of the economic interests in the Fund. Holdco, in turn, was owned through the issuance of participation shares (the "Participation Shares") to: (i) Highland Dallas Foundation, Inc. ("HDFI") (32.787%) for the benefit of the Foundation; (ii) Highland Kansas City Foundation, Inc. ("HKCF") (32.787%) for the benefit of Greater Kansas City Community Foundation ("GKCC Foundation"); (iii) Highland Santa Barbara Foundation, Inc. ("HSBFI") (32.787%) for the benefit of Santa Barbara Foundation ("SB Foundation"); and (iv) HCMLP Charitable Fund ("HCMLP," and, with HDFI, HKCF, and HSBFI, the "Supporting Organizations") (1.639%) for the benefit of The Community Foundation of North Texas ("CFNT," and, with the Foundation, the GKCC Foundation, and the SB Foundation, the "Charitable Entities").

11. The general partner of the Fund, as originally established, Charitable DAF GP, LLC (the "Original GP"), a Delaware limited liability company, held the remaining de minimis economic interest in the Fund. Additionally, to achieve the desired tax treatment as referenced

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH    – Page 5 –

4903-0158-0364, v. 5

above, the Fund issued to the Orignial GP 100 management shares (the "Management Shares") representing the only voting rights for any and all shareholders. In essence, this structure granted complete control of the Fund to the holder of the Management Shares, which shares have at all material times been held by a single individual as the manager of the Original GP. As a result, the manager of the general partner has substantial control over the entire Fund structure (the "Control Position"). From the inception of the Fund until March 25, 2021, the Control Position was held by Grant Scott.

C.     **Change of Control in 2021 and Resulting Concerns Regarding Mr. Patrick**

12.    In March 2021, Mr. Scott indicated his desire to retire from the Control Position. Mr. Patrick offered himself as a replacement to both Mr. Dondero and Mr. Scott. Mr. Patrick had been employed by the Debtor as tax counsel since 2008.[2] He had also provided personal tax advice to Mr. Dondero. Significantly, Mr. Patrick was intimately involved in the creation of the Fund in 2011, including providing advice as to the Fund's structure and in drafting the Fund's governing documents. He was at the time clearly an individual trusted by both Mr. Dondero and Mr. Scott to oversee the DAF and its charitable purposes. Thus, on March 25, 2021, Mr. Scott transferred the Management Shares, and the shares held in Holdco, to Mr. Patrick.

13.    There was, initially, no noticeable change in the Fund's management following the transfer to Mr. Patrick. Over time, however, communications from Mr. Patrick and the Fund became less frequent and less substantive when provided. Further, through the Supporting Organizations, the Foundation and Crown became aware that Mr. Patrick had taken or had attempted to take various actions that appeared to be in conflict with the duties owed to the

---

[2] In February 2021, as part of this Bankruptcy Case, the employment contracts of many of Highland's employees, including Mr. Patrick, were terminated. Mr. Patrick, along with many other of the former back-office employees of the Debtor thereafter became employees of a newly formed company, Skyview Group ("Skyview"), that provides middle and back-office services to various clients.

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH                  – Page 6 –

Charitable Entities as beneficial owners of the Fund. Finally, an initial investigation into these alleged improper actions highlighted a substantial and sudden increase in the costs and expenses borne by the Fund.

    i.    *<u>Mr. Patrick attempts to direct charitable funds to benefit his own family.</u>*

14.    An early example of these concerns occurred in June 2023. On June 28, 2023, Mr. Patrick attempted to have HDFI "*direct $10,000*" to Creative HEARTS TX ("<u>CHTX</u>"), a non-profit entity formed just two weeks earlier. Following due diligence, it was discovered that the directors of the CHTX were Mr. Patrick, Darees Patrick and Alyse Patrick (his daughter and wife). Mr. Patrick did not initially disclose either his or his family's involvement with CHTX.

15.    When questioned regarding the nature of CHTX and his family's involvement Mr. Patrick represented that the nonprofit was formed to facilitate paying for trainers or speakers on self-defense training for teenage girls. Upon information and belief, Mr. Patrick's expectation was that this would be an annual donation to a "club" at his daughter's school. The grant payment to CHTX was authorized on September 5, 2023, but Mr. Patrick was informed that further payments were unlikely.

    ii.    *<u>Mr. Patrick resigns amidst insider trading concerns.</u>*

16.    In August 2024, additional concerns arose regarding Mr. Patrick when he attempted to provide advice to the Foundation regarding an asset held directly by the Foundation (the asset in question was held separately from the Fund). Upon information and belief, the information provided was obtained by Mr. Patrick through his employment at Skyview and constituted material non-public information ("<u>MNPI</u>"). On the basis of this MNPI, Mr. Patrick advised the Foundation to exercise a put option it held in the subject asset. Uncomfortable with

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 7 –

4903-0158-0364, v. 5

the nature of the information provided and the "tip" from Mr. Patrick, the Foundation notified Skyview of Mr. Patrick's actions and declined to act upon Mr. Patrick's advice.

17. On October 2, 2024, while his actions were being reviewed by Skyview's internal compliance department, Mr. Patrick abruptly resigned from his position at Skyview. On the same day, Mr. Patrick also terminated Skyview's service agreement with the Fund.

   *iii.*   *<u>Diversion of assets through the creation of new entities.</u>*

18. Through the Control Position, Mr. Patrick also manages the HMIT Entities, including Atlas IDF and its general partner, Atlas GP, which itself is a wholly owned subsidiary of the Fund. The economic beneficiaries of Atlas IDF are EDF and the Okada Foundation as the holders of annuity policies issued by Crown.

19. On February 20, 2025, Mr. Patrick in his capacity as the general partner of Atlas GP, sent a letter to Crown advising of the intention to dissolve Atlas IDF in accordance with the partnership agreement dated November 30, 2015, on the basis of (i) concerns about the long-term availability and viability of back-office support; (ii) unsuccessful efforts to sell certain defaulted Notes (the "<u>HCRE Notes</u>") issued by HCRE Partners (a Dondero affiliate) dated May 7, 2014, in the amount of $2,300,000.00, and May 27, 2014, in the amount of $5,000,000, which notes were held by Atlas IDF; and (iii) the decision by an affiliate of Atlas GP to purchase the HCRE Notes at a price above their appraised value of zero dollars to facilitate an orderly wind-up. At the time, the amounts outstanding on the HCRE Notes, including accumulated interest, was in excess of $13,000,000. The stated intention was to sell the HCRE Notes collectively for $500,000.

20. Crown initially provided consent to the sale and liquidation, but withdrew said consent on February 28, 2025, after being advised of the potential misconduct by Mr. Patrick. That same day, Mr. Patrick sent a further letter to Crown Global responding to the revocation of

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 8 –

4903-0158-0364, v. 5

consent, and noting that: "*in addition to the purchase of the 'Notes' for $500,000, we also intend to include a provision in the purchase and sale documents that, if the Notes are repaid in full within 12 months, all amounts received (minus fees and expenses of collection and purchase price) will be remitted to you as the sole limited partner of Atlas IDF, LP.*"

21. At the time that Mr. Patrick attempted to sell the HCRE Notes, upon information and belief, HCRE had proposed to cure its default and repay the HCRE Notes in full pursuant to a revised amortization schedule. As such, the initial zero valuation and proposed $500,000 sale price disclosed to Crown is troubling. More troubling, however, is the fact that the proposed amortization schedule extends beyond 12 months. In other words, Mr. Patrick's proposed "fix" – i.e. sharing upside in the event the HCRE Notes were repaid within one year – was carefully tailored to give the appearance of addressing Crown's concerns even though Mr. Patrick already knew that the repayment would not occur within the 12 month period.

D.    **The Cayman Insolvency Proceedings**

22. In or around October 2024, the Charitable Entities, acting through counsel and the Supporting Organizations, requested that Mr. Patrick provide financial information explaining certain significant increases in the costs charged to the Fund.[3] In November 2024, having not received any of the requested financial information, the Charitable Entities delivered a letter of no confidence to Mr. Patrick requesting a formal reorganization of the Fund. No response to the no confidence letter was received.

---

[3] For example, directors' fees increased from $40,000 in 2022 to almost $600,000 in 2023 –and increased even further to around $2.25 million in the first half of 2024 alone. Expenses overall for the first half of 2024 were around $18.3 million – roughly the same amount spent over the entire course of 2023 (i.e. $18.6 million).

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH    – Page 9 –

4903-0158-0364, v. 5

23. In January 2025, the Charitable Entities again reached out to Mr. Patrick and invited him to provide a presentation directly to the Charitable Entities and/or the Supporting Organizations to address the concerns raised in the no confidence letter.

24. In February 2025, the Supporting Organizations and the Charitable Entities learned that, almost a year earlier, Mr. Patrick had secretly redomiciled and replaced the Original GP. Specifically, on February 27, 2024, Mr. Patrick caused the formation of CDH GP, Ltd (the "New GP"), which was incorporated in the Caymen Islands (registration number 407515) with its registered office at Campbells Corporate Services Ltd, Floor 4, Willow House, Cricket Square, Grand Cayman KY1-9010, Cayman Islands. Mark Patrick is the sole director of the New GP.

25. In light of the mounting concerns regarding Mr. Patrick's actions, the Supporting Organizations, as holders of the Participation Shares, filed a petition (the "Cayman Petition") in the Cayman Islands requesting that the Fund be liquidated under the supervision of the Cayman Islands court and the appointment of joint official liquidators.

26. The Cayman Petition was served on the Fund on April 24, 2025. The next day, April 25, 2025, counsel purporting to act on behalf of the Fund responded by correspondence to counsel for the petitioning Supporting Organizations. Through this correspondence, the Supporting Organizations and the Charitable Entities that they serve learned for the first time that Mr. Patrick had engaged Kroll Cayman Ltd ("Kroll") to commence a liquidation of the Fund.

27. The Supporting Organizations and Charitable Entities further learned that Mr. Patrick had caused the issuance of new Participation Interests, representing 51.04% of the resulting total of issued Participation Interests, to an entity named DFW Charitable Foundation (the "MP Charity"). The issuance of these new Participation Interests resulted in substantial

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 10 –

4903-0158-0364, v. 5

dilution of the interests beneficially held by the Charitable Entities such that, following the new issuance: (i) HDFI's interest was diluted from 32.787% to 16.05%; (ii) HKCF's interest was diluted from 32.787% to 16.05%; (iii) HSBFI's interest was diluted from 32.787% to 16.05%; and (iv) HCMLP's interest was diluted from 1.639% to 0.80%.

28. Publicly available records indicate that the MP Charity was formed in December 2024 and is based out of Mr. Patrick's home.

29. Additionally, the Supporting Organizations and the Charitable Entities learned that Mr. Patrick had caused the formation of another new entity, CDMCFAD, LLC ("<u>CDMCFAD</u>"), which was secretly inserted into the charitable organization structure. CDMCFAD is nominally a new wholly-owned subsidiary of the Fund, though, like the MP Charity, it is based out of Mr. Patrick's home. Upon information and belief, Mr. Patrick then caused the Fund to transfer its 100% interests in Charitable DAF Fund, LP to CDMCFAD. On March 27, 2025, the Fund's interest in CDMCFAD was purportedly redeemed for proceeds totaling $1,612,192.00 to be distributed to the Fund's participating interest holders.

30. In light of the existing liquidation and with these newly discovered facts, the Supporting Organizations amended their Cayman Petition to request that liquidation of the Fund continue under the supervision of the Cayman courts and that new independent, joint official liquidators be appointed to replace Kroll.

31. Following a hearing to consider the amended Cayman petition, the Cayman court entered its Supervision Order on May 6, 2025, and appointed Margo MacInnis and Sandipan Bhowmik as Joint Official Liquidators.[4]

---

[4] Mr. Patrick's chosen liquidators, Kroll, withdrew their consent to nomination prior to a May 5, 2025, hearing to consider the amended petition.

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 11 –

4903-0158-0364, v. 5

# III.
# OBJECTION

32. Against this backdrop, the proposed Settlement is problematic for a number of reasons. First, the Settlement purports to have been entered into on May 19, 2025, less than two weeks after entry of the Supervision Order by the Cayman court. Unfortunately, it does not appear, however, that Joint Official Liquidators are parties to or have authorized the Settlement. As a result, it is unclear whether Mr. Patrick had the requisite corporate authority to cause the HMIT Entities to enter into the Settlement. Indeed, many of Mr. Patrick's actions, including the insertion of newly created entities into the Fund's structure for the apparent purpose of diverting charitable assets will now be subject to the scrutiny of an independent, court appointed fiduciary and may be subject to claw back or other avoidance actions in the Cayman liquidation or such other tribunal as has jurisdiction.

33. In the event that it is ultimately determined that Mr. Patrick has acted against the fiduciary duties owed to the Fund, the Supporting Organizations, and the Charitable Entities, and the transfers of interests to Mr. Patrick's newly created companies are avoided, the validity of the Settlement will be in question. Thus, even if approved by this Court, consummation of the Settlement is not likely to buy the peace the Debtor now seeks.

34. Additionally, while Mr. Patrick may nominally be the sole manager of each of the HMIT Entities at this time, there is ample evidence that Mr. Patrick has acted and is acting well outside the scope of his authority and fiduciary obligations. Indeed, in light of the above, there is reason to suspect that the HMIT Entities' entry into the Settlement will further a scheme to wrongfully divert charitable funds from their intended beneficiaries. Under such circumstances, approval of the Settlement would be wholly inequitable.

---

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 12 –

4903-0158-0364, v. 5

35. For these reasons, the 9019 Motion should be denied.

## IV.
## ALTERNATIVE RELIEF

36. Alternatively, the Foundation and Crown respectfully request a continuance of the hearing to consider the 9019 Motion, which is currently scheduled for June 25, 2025. As noted above, upon becoming aware of the allegations discussed herein, the Supporting Organizations and Charitable Entities acted diligently to bring their concerns before a court of competent jurisdiction in the Cayman Islands. The Cayman court has granted relief in the form of the Supervision Order and the appointment of the JOLs. The JOLs, however, have held their positions for just over one month. Given the significance of the proposed Settlement to this bankruptcy estate, a short continuance to ensure that the Settlement is not being entered into improperly, without authority, and will not result in further, likely avoidable litigation, would benefit all parties in interest.

## V.
## CONCLUSION

37. In sum, the Foundation and Crown have received credible evidence that substantial charitable assets have been and are still being diverted from their benefit. The facts and circumstances set forth herein show that, at a minimum, there is good cause to suspect that entry into the Settlement by the HMIT Entities is but another attempt or the conclusion of an existing attempt to divert said charitable assets from their rightful recipients. Further, under these facts and circumstances, there is good cause to suspect that Mr. Patrick lacked the requisite corporate authority to enter into the Settlement or that any apparent authority he holds results from improper actions subject to avoidance and clawback. Under such circumstances, approval and consummation of the Settlement will not result in a cessation of litigation but will instead

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH    – Page 13 –

4903-0158-0364, v. 5

result in more litigation across multiple forums. For these reasons, the Foundation and Crown, each a beneficial owner of the HMIT Entities, respectfully request that the 9019 Motion be denied.

## VI.
## PRAYER

WHEREFORE, for the reasons stated above, The Dallas Foundation and Crown Global Insurance, Ltd., request that this Court enter an order (i) denying the 9019 Motion; or, in the alternative, continuing the hearing set for June 25, 2025; and (ii) granting such other and further relief as the Court may deem just and proper.

Respectfully submitted on this 9th day of June 2025.

                                  **OKIN ADAMS BARTLETT CURRY LLP**

                                  By: /s/ *David L. Curry, Jr.*
                                        Matthew S. Okin
                                        Texas Bar No. 00784695
                                        David L. Curry, Jr.
                                        Texas Bar No. 24065107
                                        1113 Vine Street, Suite 240
                                        Houston, Texas 77002
                                        Tel: (713) 228-4100
                                        Fax: (346) 247-7158
                                        Email: mokin@okinadams.com
                                        Email: dcurry@okinadams.com

                                  **ATTORNEYS FOR THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD.**

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 14 –

4903-0158-0364, v. 5

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 9, 2025, a true and correct copy of this document, with all exhibits, was served via the Court's CM/ECF system to all parties consenting to service through the same.

By: */s/ David L. Curry, Jr.*
David L. Curry, Jr.

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 15 –

4903-0158-0364, v. 5