**EXHIBIT 18**

**CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT**

In connection with the evaluation of a potential acquisition of all or a portion of the assets, business and/or interests of or in Highland Capital Management Korea, Ltd., Stonebridge-Highland Private Equity Fund and their respective subsidiaries (collectively, "*Highland Korea*", and such potential acquisition, a "*Potential Transaction*"), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ("*Receiving Party*") has requested that Highland Capital Management, L.P. ("*Disclosing Party*") furnish Receiving Party with, or cause Receiving Party to be furnished with, certain Confidential Information (as defined below). Disclosing Party and Receiving Party may be referred to herein individually as a "*Party*" or collectively as the "*Parties*." As a condition to furnishing such Confidential Information, Disclosing Party has required that Receiving Party execute and enter into this Confidentiality and Non-Disclosure Agreement (this "*Agreement*"), dated March 18, 2024 (the "*Effective Date*"), with the following terms and conditions.

**1. Confidential Information.** "*Confidential Information*" is defined as any and all of the following items that has been or may hereafter be disclosed to Receiving Party or its Representatives by or on behalf of Disclosing Party: proprietary or non-public information concerning the business and affairs of Disclosing Party, its affiliates, or any of its or their respective managed, subadvised or proposed to be managed or subadvised funds or separate accounts or other entities (including, without limitation, Highland Korea), including without limitation financial statements; reports and data; past, current or planned investment or portfolio information; contracts and agreements; know-how, inventions and ideas, whether past, current or planned; partner or investor lists; partner or investor information; current and anticipated investor requirements; business plans; fund structure details; all compliance related reports, records and information; and any other information, however documented, that is proprietary to Disclosing Party, its affiliates, or any of its or their respective managed or subadvised funds or separate accounts or other entities (including, without limitation, Highland Korea) or is a trade secret within the meaning of applicable state trade secret law.

To the extent that any Confidential Information includes materials subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters, and it is their desire, intention, and mutual understanding that the sharing of such material is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work-product doctrine, or other applicable privilege. Accordingly, all Confidential Information disclosed to Receiving Party or its Representatives by on or on behalf of Disclosing Party that is entitled to protection under the attorney-client privilege, work-product doctrine, or other applicable privilege shall remain entitled to such protection under these privileges, this Agreement, and under the joint-defense doctrine.

Notwithstanding the foregoing, Confidential Information does not include information which Receiving Party can demonstrate (i) is, through no improper action or inaction by Receiving Party in breach of the terms hereof, generally available to the public, (ii) was rightfully in the possession of Receiving Party, on a non-confidential basis from a third-party source, prior to receipt from the Disclosing Party (as evidenced by documentation that was in such persons' possession prior to disclosure), or (iii) was independently developed by employees of the Receiving Party who had no access to, and developed such information without use of, reference to or reliance upon, the Confidential Information (as evidenced by documentation that was in such persons' possession prior to disclosure) and without violating any obligations of or restrictions contained in this Agreement.

2. **Treatment.** Receiving Party agrees (a) to hold the Confidential Information in strict confidence, (b) to take all reasonable precautions to protect the confidentiality of the Confidential Information, and (c) that neither Receiving Party, nor any of its Representatives, will disclose, or cause to be disclosed, directly or indirectly, in whole or in part, any Confidential Information, except with Disclosing Party's prior written consent or as is expressly permitted by this Agreement. Receiving Party agrees that it will not use the Confidential Information, or permit the Confidential Information to be accessed or used, at any time for any purpose except solely in connection with its evaluation of a Potential Transaction. Receiving Party agrees to only share Confidential Information with those of its directors, officers and employees who need to know such information for the purpose of assisting Receiving Party in evaluating a Potential Transaction and who have agreed to abide by the terms of this Agreement as though they were a party hereto ("***Representatives***"). Receiving Party will inform each Representative who is given access to Confidential Information of the confidential nature of the Confidential Information and direct each Representative to treat such information confidentially. Receiving Party shall cause its Representatives to observe and abide by all terms of this Agreement and agrees to be responsible for all breaches of this Agreement by any of its Representatives or any other party who gains access to Confidential Information via Receiving Party as though such failure was a failure to comply with this Agreement by Receiving Party itself. Receiving Party shall promptly notify Disclosing Party of any unauthorized disclosure of Confidential Information or other breaches of this Agreement by Receiving Party or its Representatives of which Receiving Party has knowledge and shall use reasonable best efforts to retrieve the lost or wrongfully disclosed Confidential Information and cooperate with Disclosing Party in any effort undertaken to enforce its rights related to any such breaches or unauthorized disclosures. No rights or licenses of any nature are implied or granted under this Agreement and Confidential Information shall remain the property of Disclosing Party.

If Receiving Party or any of its Representatives are requested (by deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar process) or reasonably believe (on the advice of outside legal counsel) that they are legally required to disclose any Confidential Information by applicable law or regulation, in connection with any judicial or administrative proceedings or by any governmental or regulatory authorities having appropriate jurisdiction (where such request or requirement is not caused by any voluntary action or proposed action by the Receiving Party or any of its Representatives), Receiving Party will promptly notify Disclosing Party in writing to permit the Disclosing Party to seek a protective order or to take another appropriate action. Receiving Party will also, and will cause its Representative to, cooperate as reasonably requested by the Disclosing Party to obtain a protective order or other reasonable assurance that Confidential Information will be accorded confidential treatment. If, in the absence of a protective order, Receiving Party or any of its Representatives are, on the advice of outside legal counsel, required as a matter of law to disclose the Confidential Information to a third party, Receiving Party may disclose to such third party only the part of such Confidential Information as is (on the advice of outside legal counsel) required by law to be disclosed. In such case, prior to such disclosure, Receiving Party will reasonably consult with Disclosing Party and its counsel in advance as to the nature and wording of such disclosure, and Receiving Party will use reasonable best efforts to obtain confidential treatment therefor.

3. **Return of Confidential Information.** Disclosing Party may elect at any time to terminate Receiving Party's further access to Confidential Information. At the request of Disclosing Party, the Receiving Party will promptly return or destroy all Confidential Information, including all of Receiving Party's data, documents, notes and summaries related to the Confidential Information, and shall direct its Representatives to do the same. Destruction must be certified in writing by an officer of Receiving Party within thirty (30) days of the destruction request. Notwithstanding the foregoing, subject to the provisions of this Agreement Receiving Party may retain one copy of the Confidential Information (a) as required to

comply with legal or regulatory compliance obligations, and (b) in electronic format on standard system back-up tapes or other standard system back-up media according to standard electronic back-up and archival procedures, provided that such information is only accessible by information technology personnel in connection with disaster recovery or legal or regulatory compliance measures. Confidential Information so retained will remain subject to the terms of this Agreement notwithstanding its termination for so long as such material is retained and for one (1) year thereafter.

**4. Warranties.** With respect to any information, including but not limited to the Confidential Information, that Disclosing Party or any of its representatives furnishes pursuant to this Agreement, Receiving Party acknowledges that Disclosing Party makes no express or implied representation or warranty, including without limitation as to the completeness, quality, fitness for a particular purpose or accuracy of the Confidential Information, and that Disclosing Party shall have no liability whatsoever to Receiving Party or any of its Representatives relating to or arising from their review or use of any information so furnished. This Agreement does not constitute or create any obligation of the Disclosing Party to provide any Confidential Information or other information to the Receiving Party. Further, Disclosing Party shall have no obligation to update any Confidential Information provided to Receiving Party hereunder.

**5. Term.** This Agreement shall terminate and be of no further force and effect two (2) years from the Effective Date, provided that such termination shall not relieve Receiving Party from its responsibilities with respect to any breach of this Agreement prior to such termination.

**6. Communication; Non-Circumvention.** Except as otherwise consented to in writing by Disclosing Party (which consent may be withheld in Disclosing Party's sole discretion), Receiving Party agrees that all (a) communications regarding Highland Korea, the Potential Transaction and Confidential Information, and (b) requests for additional information will be submitted or directed exclusively to the person or persons specifically designated in writing by Disclosing Party for such purpose[1]. Except as provided for herein and without limiting the generality of the use and non-disclosure obligations set forth in this Agreement, in no event will Receiving Party or any of its Representatives communicate directly or indirectly with any employee, manager, investment manager, co-investment manager, director, officer, agent, customer, licensee, licensor, investor, limited partner, lender, portfolio company, target or business partner of Highland Korea concerning Highland Korea, Highland Korea's assets, business, operations, personnel, prospects, finances, the Confidential Information or the Potential Transaction without Disclosing Party's prior written consent (which consent may be withheld in Disclosing Party's sole discretion). Further, Receiving Party and its Representatives will not, without Disclosing Party's prior written consent (which consent may be withheld in Disclosing Party's sole discretion), (i) attempt to deal directly or indirectly in any matter with any individuals or companies to whom Receiving Party or its Representative was introduced in connection with the Potential Transaction, or (ii) bypass, avoid, obviate, circumvent or attempt to circumvent Disclosing Party relative to the Potential Transaction, including by using any of the Confidential Information. For a period of one (1) year from the Effective Date, Receiving Party and its Representatives will not, and Receiving Party shall cause its controlled affiliates (including its portfolio companies) not to, directly or indirectly, enter into any agreement or transaction with any individual or company that is an acquisition target or prospective acquisition target of Highland Korea which is disclosed to Receiving Party or any of its Representatives by or on behalf of Disclosing Party, in each case, without the prior written consent of Disclosing Party (which consent may be withheld in the Disclosing Party's sole discretion).

---

[1] As of the Effective Date, the initial list of such persons shall be James P. Seery, Jr., David Klos, Nate Burns, Jun Park, Thomas Surgent and Tim Cournoyer.

3

7. **Irreparable Harm.** Receiving Party acknowledges and agrees that there may be no adequate remedy at law for any breach of its obligations hereunder, as such breach may result in irreparable harm to Disclosing Party, and therefore, that upon any such breach or any threat thereof, Disclosing Party may be entitled to seek appropriate equitable relief in addition to whatever remedies it might have at law and to be indemnified by Receiving Party from any loss or harm, including, without limitation, attorneys' fees and expenses, in connection with any breach or enforcement of the Receiving Party's obligations hereunder or the unauthorized use or release of any such Confidential Information as set forth herein. In the event of litigation arising out of this Agreement, if a court of competent jurisdiction issues a final, non-appealable judgment, the non-prevailing party in such litigation agrees to reimburse the prevailing party for its costs and expenses (including reasonable attorneys' fees and expenses in obtaining such judgment). Receiving Party will notify Disclosing Party in writing immediately upon the occurrence of any such unauthorized release or other breach of which it is aware.

8. **Severability.** The invalidity or unenforceability of any particular provision of this Agreement will not affect the other provisions of the Agreement. If any provision of this Agreement is held illegal, invalid or unenforceable by a court of competent jurisdiction, such provision shall be limited to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect.

9. **Choice of Law & Venue.** This Agreement will be governed by the laws of the State of Texas without regard to conflicts of laws principles. The Parties agree that the sole and exclusive jurisdiction and venue for any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement shall be in the state courts of the State of Texas, or, if it has or can acquire jurisdiction, in the United States District Court for the Northern District of Texas, and each of the parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to personal jurisdiction, venue, and inconvenient forum laid therein. Process and any action or proceeding referred to in the preceding sentence may be served on any Party anywhere in the world. Receiving Party further hereby irrevocably and unconditionally waives any objection to the laying of venue in any such action, suit or proceeding in such courts and agrees not to plead or claim in any such court that any such action, suit or proceeding has been brought in an inconvenient forum.

10. **Definitive Agreement Controls.** Until a definitive written agreement regarding a Potential Transaction has been executed (the "***Definitive Agreement***"), neither Disclosing Party or Receiving Party shall be under any legal obligation or have any liability to the other Party of any nature whatsoever with respect to a Potential Transaction by virtue of this Agreement or otherwise (other than with respect to the explicit confidentiality and other obligations set forth herein). Except to the extent specified in the Definitive Agreement, Disclosing Party, in its sole discretion, may (i) conduct a transaction process that may or may not result in a Potential Transaction in such manner as it deems appropriate, (ii) enter into a definitive agreement with any third party without notice to the Receiving Party, and (iii) reserve the right to change the transaction process with respect to a Potential Transaction without notice to Receiving Party (including, without limitation, terminating all further discussions with Receiving Party and requesting that the other Party return or destroy the Confidential Information as described above).

11. **Third Party Beneficiaries; Assignment.** Receiving Party is executing this Agreement for the benefit of Disclosing Party and Highland Korea, and Highland Korea shall be a third-party beneficiary of this Agreement, entitled to enforce the terms hereof. Disclosing Party has the right to assign all of its rights under this Agreement to any of its affiliates or to a successor in interest to the business of Disclosing Party, including the right to enforce this Agreement, and Receiving Party hereby consents to such

HCMLPDT003101

assignment. Receiving Party shall not assign any of its rights or delegate any of its duties under this Agreement without the prior written consent of Disclosing Party.

**12. Entire Agreement.** This Agreement supersedes all prior discussions and agreements and constitutes the entire agreement between Disclosing Party and Receiving Party with respect to the subject matter hereof.

**13. Waiver.** The waiver of any breach of any provision under this Agreement by any Party shall not be deemed to be a waiver of any preceding or subsequent breach, nor shall any waiver constitute a continuing waiver.

**14. Modification.** This Agreement may only be modified in writing, signed by both Parties.

**15. Counterparts.** This Agreement may be executed by manual, facsimile, or electronic signatures in counterparts, which together will constitute one original.

*[Signature Page Follows]*

HCMLPDT003102

IN WITNESS WHEREOF, the Parties have executed this Confidentiality and Nondisclosure Agreement on the date indicated below to be effective as of the Effective Date.

By: ████████████████████

Name: ████████

Title: ████████████

Date: 3/26/2024

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____

Name: James P. Seery, Jr.

Title: Chief Executive Officer

Date:    03/26/2024