# EXHIBIT 23

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** FW: 2022 settlement
**Date:** Thu, 10 Apr 2025 20:57:55 +0000
**Importance:** Normal
**Attachments:** Hunter_Mountain_Settlement_--_Final_Execution_Version_(All_Signatures).pdf
**Inline-Images:** image002.png

---

John and Jeff,

Please see the 2022 Settlement Agreement re the HMIT note(s) that we discussed during the call.

**Louis M. Phillips**
*Partner*




KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (the "Agreement") is entered into as of June 21, 2022 (the "Effective Date"), by and between Hunter Mountain Investment Trust, a Delaware statutory trust ("HMIT") and Rand PE Fund I, LP, Series 1, a Delaware series limited partnership ("Rand") (and together with HMIT, the "Cross-Plaintiffs"), on the one hand, and James D. Dondero ("Dondero"), Mark K. Okada ("Okada), The Dugaboy Investment Trust, a Delaware statutory trust ("Dugaboy"), The Mark and Pamela Okada Family Trust – Exempt Trust #1, a Delaware statutory trust ("MAP#1"), and The Mark and Pamela Okada Family Trust – Exempt Trust #2, a Delaware statutory trust ("MAP#2") (and collectively with Dondero, Okada, Dugaboy, and MAP #1, the "Cross-Defendants"), on the other hand. In this Agreement, Cross-Plaintiffs and Cross-Defendants are referred to collectively as the "Parties" and each individually as a "Party."

## RECITALS

WHEREAS, on or about December 21, 2015, Highland Capital Management, L.P. ("HCMLP"), a Delaware limited partnership, and its limited partners Dugaboy, Okada, MAP#1, MAP#2, and HMIT (together, the "HCMLP Limited Partners") entered into a Second Amended and Restated Buy-Sell and Redemption Agreement, pursuant to which HMIT agreed to purchase certain limited partnership interests in HCMLP from the HCMLP Limited Partners, which interests, prior to any subsequent transaction, represented 99.5% of the then existing limited partnership interests of HCMLP;

WHEREAS, on or about December 21, 2015, HCMLP and HMIT executed a Contribution Agreement, pursuant to which HMIT agreed to contribute Seventy Million Dollars ($70,000,000.00) of capital (the "Capital Contribution") in the form of cash and a note to HCMLP in return for the issuance of limited partnership interests in HCMLP which when combined with those held by the HCMLP Limited Partners, represented a Fifty-Five Percent (55%) of the limited partnership interests in HCMLP.

WHEREAS, HCMLP required Rand to execute a Guaranty Agreement in which Rand guaranteed the full and prompt payment and performance of all indebtedness, liabilities, and obligations of HMIT arising under or in connection with the Capital Contribution.

WHEREAS, on December 21, 2015, HMIT issued to HCMLP a Secured Promissory Note in which HMIT agreed to pay HCMLP the principal amount of Sixty-Three Million Dollars ($63,000,000.00), together with interest on the outstanding principal amount at the rate of Two and Sixty-One One Hundredths Percent (2.61%) per annum for the purchase of the limited partnership interests described in the Contribution Agreement;

WHEREAS, on December 24, 2015, HMIT, in addition to cash considerations, issued Security Promissory Notes to the HCMLP Limited Partners in which HMIT agreed to (i) pay Dugaboy the principal amount of Sixty-Two Million, Six Hundred Fifty-Seven Thousand, Six-Hundred and Forty Seven Dollars and Twenty-Seven Cents ($62,657,647.27), (ii) pay Okada the principal amount of Sixteen Million, Three Hundred and Fifty-One Thousand, Three Hundred and Fifty-Seven Hundred Dollars and Seventy-Two Cents ($16,351,357.12), (iii) pay MAP#1 the

principal amount of Three Million, Two Hundred Eighty-Three Thousand, Six Hundred Eight-Eight Dollars and Nine Cents ($3,283,688.09), (iv) pay MAP#2 the principal amount of One Million, Four Hundred Seven Thousand, Three Hundred Six Dollars and Ninety-Two Cents ($1,407,306.92), and (v) pay interest on the outstanding principal amounts of each of the Secured Promissory Notes at the rate of Two and Sixty-One One Hundredths Percent (2.61%) per annum, in order to pay for HMIT's acquisition of the limited partnership interests in HCMLP from the HCMLP Limited Partners (44.5% post issuance per the Contribution Agreement) in accordance with the Partnership Interest Purchase Agreement;

WHEREAS, as a condition to HMIT's acquiring the referenced limited partnership interests from the HCMLP Limited Partners, the HCMLP Limited Partners each required Rand to execute Guaranty Agreements in which Rand guaranteed the full and prompt payment and performance of all indebtedness, liabilities, and obligations of HMIT arising under or in connection with the Secured Promissory Notes;

WHEREAS, on or about December 24, 2015, HCMLP and the HCMLP Limited Partners executed a Fourth Amended and Restated Agreement of Limited Partnership admitting HMIT as a limited partner of HCMLP;

WHEREAS, on or about October 16, 2019, HCMLP filed a chapter 11 petition in bankruptcy ("HCMLP Bankruptcy");

WHEREAS, on or about April 2, 2020, HMIT filed a proof of claim in the HCMLP Bankruptcy totaling $60,298,739.00;

WHEREAS, HCMLP objected to HMIT's proof of claim, and HCMLP sought subordination of HMIT's claim by instituting an adversary proceeding styled *Highland Capital Management, L.P. v. Hunter Mountain Investment Trust* Adv. Proc. No. 20-03105-sgj (Bankr. N.D. Tex) (the "HMIT Adversary Proceeding");

WHEREAS, by stipulation entered in the HMIT Adversary Proceeding and in the HCMLP Bankruptcy, HMIT withdrew its proof of claim;

WHEREAS, on or about October 15, 2021, Marc A. Kirschner ("Kirschner"), as Trustee of the Litigation Sub-Trust, filed an adversary proceeding, styled *Kirschner v. Dondero, et al.*, Adv. Proc. No. 21-03076-sgj (Bankr. N.D. Tex.) (the "Kirchner Litigation"), in which Kirschner named HMIT and Rand as defendants and asserted claims (i) against HMIT for avoidance and recovery of allegedly constructive and/or intentional fraudulent transfers, illegal distributions under the Delaware Revised Uniform Limited Partnership Act, and breach of contract, and (ii) against Rand for breach of contract;

WHEREAS, on or about March 23, 2022, HMIT and Rand filed cross-claims in the Kirschner Litigation against Cross-Defendants, alleging generally that Cross-Defendants are liable for and should be required to pay any and all damages for which HMIT or Rand may be liable in the Kirschner Litigation (the "Cross-Complaint");

WHEREAS, the Cross-Defendants dispute their liability to Cross-Plaintiffs and all allegations contained in the Cross-Complaint; and

WHEREAS, the Parties now wish to resolve the Cross-Complaint and all other potential disputes between them;

NOW THEREFORE, in consideration of the foregoing recitals, the promises contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties stipulate and agree as follows:

## TERMS OF AGREEMENT

### 1. Consideration for Settlement

1.1 Settlement Payment. The Parties agree that, simultaneously with the execution of this Agreement, and no later than the Effective Date, Cross-Defendants shall make a one-time payment of Fifty Thousand Dollars ($50,000.00) (the "Settlement Payment") to Cross-Plaintiffs consistent with the instructions set forth in Sections 1.3 and 1.4 below.

1.2 Payment of Past Attorneys' Fees, Audit Fees, and Bank Fees. In addition to the Settlement Payment, Cross-Defendants shall, within ten (10) business days of receiving a written demand by Cross-Plaintiffs, which demand shall include relevant back-up documentation, including at a minimum documentation of attorney rates and time entries, pay (i) all attorneys' fees incurred by Cross-Plaintiffs in connection with either the HCMLP Bankruptcy or the Kirschner Lawsuit, (ii) all audit fees incurred by Cross-Plaintiffs during the pendency of the HCMLP Bankruptcy, and (iii) all bank fees incurred by Cross-Plaintiffs during the pendency of the HCMLP Bankruptcy (the "Past Fees Payment"). The Past Fees Payment shall be made consistent with the instructions set forth in Sections 1.3 and 1.4 below.

1.3 Manner of Payments. The Settlement Payment, and any other payments to be made pursuant to this Agreement, shall be deemed made when received by wire transfer, without set-off, in immediately available funds. All such payments should be made in a manner to ensure receipt not later than 5:00 p.m., Central Standard Time, on the date when due under this Agreement. Whenever any payment to be made hereunder is due on a day which is not a Business Day (as defined below), such payment shall be made on the next Business Day thereafter, and any such payment shall be deemed timely made. "Business Day" means a day of the year (other than a Saturday, Sunday, legal holiday, or other day on which banking institutions in the State of Texas are authorized or required by law to close) in which banking institutions are open for the purpose of conducting commercial business.

1.4 Wire Transfer Instructions. Unless Cross-Plaintiffs instruct Cross-Defendants otherwise in writing, all payments to be made pursuant to this Agreement shall be made pursuant to the wire transfer instructions set forth below:

To: Rand PE Fund I LP
Bank: PNC Bank
Bank Address: PO Box 640750
Pittsburgh, PA 15264-0570

ABA Routing: 043000096
Account No: 4947568529

1.5 Agreement to Fund Defense. In addition to the payments contemplated in this Section 1, as further consideration for settlement, Cross-Defendants agree to fund Cross-Plaintiffs' defense costs in the same manner as set forth in Section 1.2 through 1.4 above with regard to any and all claims now or hereafter asserted against Cross-Plaintiffs in the Kirschner Litigation. Such defense shall include, at a minimum, the retention of a licensed attorney to represent Cross-Plaintiffs in the Kirschner Litigation and payment of all costs and attorneys' fees associated with Cross-Plaintiffs' defense. For the avoidance of doubt, the Parties agree that Cross-Defendants may select any counsel of their choosing, in their sole discretion, to replace Cross-Plaintiffs' existing counsel and may retain counsel already representing other named defendants in the Kirschner Litigation, so long as no ethical or other legal conflict bars such dual representation. Cross-Plaintiffs shall retain full control of their defense in the Kirschner Litigation; provided however, that upon the substitution of counsel for Cross-Plaintiffs as contemplated in this Agreement, Cross-Defendants shall only control Cross-Plaintiffs' defense (hereinafter referred to as a "Change of Litigation Control"). In the event of a Change of Litigation Control, Cross-Plaintiffs shall: a) continue to be promptly apprised of all Kirschner Litigation events, issues, and circumstances which may affect Cross-Plaintiffs in said litigation by substitute counsel; and b) retain the right to consent to any resolution of the claims asserted against Cross-Plaintiffs in the Kirschner Litigation that involves (i) the payment of money by Cross-Plaintiffs, or (ii) any admission of liability by Cross-Plaintiffs, whether by settlement, default judgment, or otherwise.

**2. Dismissal of Cross-Complaint.**

4.1 Timing of Dismissal. Within five (5) business days of the Effective Date of this Agreement, the Parties shall stipulate to the dismissal of the Cross-Complaint with prejudice.

4.2 Responsibility for Filing. Cross-Plaintiffs shall bear responsibility for ensuring that appropriate notice of the Parties' stipulation of dismissal of the Cross-Complaint is timely filed with the United States Bankruptcy Court for the Northern District of Texas.

**3. Releases**

3.1 Release by Cross-Plaintiffs of Cross-Defendants. Cross-Plaintiffs, on behalf of themselves, their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents, employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "Cross-Plaintiff Releasing Parties") hereby fully and irrevocably release and discharge Cross-Defendants, together with their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents, employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "Cross-Defendant Released Parties"), from all claims, rights, demands, actions, lawsuits, causes of action, grievances, liabilities, obligations, controversies, damages, costs, expenses, losses, and debts, of any nature whatsoever, present or future, known or unknown, contingent or definitive, conditional or unconditional, that the Cross-Plaintiff Releasing Parties had, have, or may have against the Cross-Defendant Released Parties, which arise out of or relate in any manner to the subject matter of this Agreement or the Cross-

Complaint, or any other agreements executed by and between the Parties prior to the Effective Date.

3.2 Release by Cross-Defendants of Cross-Plaintiffs. Cross-Defendants, on behalf of themselves, their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents, employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "Cross-Defendant Releasing Parties") hereby fully and irrevocably release and discharge Cross-Plaintiffs, together with their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents (inclusive of counsels for Cross-Plaintiffs), employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "Cross-Plaintiff Released Parties"), from all claims, rights, demands, actions, lawsuits, causes of action, grievances, liabilities, obligations, controversies, damages, costs, expenses, losses, and debts, of any nature whatsoever, present or future, known or unknown, contingent or definitive, conditional or unconditional, that the Cross-Defendant Releasing Parties had, have, or may have against the Cross-Plaintiff Released Parties, which arise out of or relate in any manner to the subject matter of this Agreement or the Cross-Complaint, or any other agreements executed by and between the Parties prior to the Effective Date, including but not limited to any and all guarantees or debt obligations facially owed by Cross-Plaintiffs to Cross-Defendants.

**4. Confidentiality and Non-Disparagement**

4.1 Duty of Confidentiality. The terms of this Agreement and all correspondence relating to this Agreement are and shall remain confidential. The Parties shall not disclose any information relating to this Agreement or its contents, nor shall any Party cause any individual, entity, affiliate, or agent acting under its direction or control to disclose any information relating to this Agreement or its contents, to any third party whatsoever, except (i) with the prior written consent of the other Party to this Agreement; (ii) as may be required by applicable law, regulation, or order of a governmental authority of competent jurisdiction; (iii) during the course of litigation so long as the disclosure is subject to the same restrictions as are embodied in a court-ordered protective order limiting disclosure to outside counsel; or (iv) in confidence to the Party's counsel, accountants, financial advisors, or tax professionals, whom the Party shall advise of the confidential nature of this Agreement.

4.2 Requirements Prior to Disclosure. Should any Party disclose any information relating to this Agreement or its contents under any of the circumstances specified in Section 3.1, the disclosing Party shall notify the other Parties in writing before any disclosure of the same. In such case, the disclosing Party shall: (i) make available as soon as practicable (and in any event prior to disclosure), for inspection and copying, a copy of the Agreement or other information the Party intends to disclose; (ii) where applicable, identify the law, regulation, order, or other legal basis for the disclosure; and (iii) to the extent possible, refrain from disclosing anything for at least ten (10) business days following the disclosing Party's written notice of disclosure to give the other Parties an opportunity to resist disclosure or seek other appropriate legal relief. In any event, the Parties shall use reasonable efforts to limit the disclosure of the terms and conditions of this Agreement and seek a protective order or other confidential treatment of the disclosed information.

4.3 Duty of Non-Disparagement. Subject to applicable law, each of the Parties covenant and agree that neither they nor any of their respective agents, subsidiaries, affiliates, successors, assigns, officers, employees or directors, will in any way publicly disparage, call into disrepute, defame, slander or otherwise criticize the opposing Parties or such other Parties' agents, subsidiaries, affiliates, successors, assigns, officers, employees, agents, or directors.

4.4 Violation of Duties of Confidentiality and Non-Disparagement. Any Party violating their duties of confidentiality or non-disparagement shall be responsible for payment of any damages incurred by the other Parties as a result of the violation. The Parties also shall have the right and standing to seek an injunction against any person and/or entity violating this Section 5, or any person and/or entity who has announced an intention to violate this Section 5 or who has failed to desist from any such violation after written demand to do so, from further or future violations. All attorneys' fees, costs, and expenses incurred by a Party in enforcing its rights pursuant to this Section 5 shall be the liability of and borne by each and every person and/or entity against whom injunctive, monetary, or other relief is obtained.

**5. Covenants, Representations, and Warranties**

5.1 Authority to Enter Into Agreement. The Parties covenant and warrant that they have the full power and authority to enter into this Agreement and to carry out its terms and that they have not previously assigned, sold, or otherwise pledged or encumbered any right, title, or interest in the claims released herein or their right, power, or authority to enter into this Agreement.

5.2 Authority to Execute on Behalf of Another. Any person signing this Agreement on behalf of another person or entity represents and warrants that he or she has full power and authority to do so and that said other person or entity is bound hereby.

5.3 No Admission of Liability. By entering into this Agreement, no Party is admitting any liability to any other Party or any other person or entity. Neither this Agreement, nor any document or instrument delivered hereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement, is intended to be or shall be construed as or deemed to be evidence of an admission or concession of any liability or wrongdoing or of the truth of any allegations asserted by any Party against another, and no such statement, transaction, or proceeding shall be admissible in evidence for any such purpose except as required to enforce this Agreement.

5.4 Covenant Not To Sue. The Parties, for themselves, their heirs, and successors hereby covenant and agree not to file any lawsuit or other action concerning the claims released herein, other than an action to enforce the Agreement.

5.5 Representation by Counsel. Each Party has executed this Agreement upon its own independent judgment and upon the advice of its independent legal counsel, and not in reliance upon any representation, express or implied, of any kind or nature from any other Party or Party's counsel.

**6. Miscellaneous Provisions**

6.1 Governing Law. The provisions of this Agreement shall be interpreted in accordance with, and governed by, the laws of the State of Texas, without regard to conflict of laws principles.

6.2 Dispute Resolution. In the event there is an unresolved legal dispute between the Parties and/or any of their respective officers, directors, partners, employees, agents, affiliates or other representatives that involves legal rights or remedies arising from this Agreement, the Parties agree to submit their dispute to binding arbitration under the authority of the Federal Arbitration Act; provided, however, that any Party may pursue a temporary restraining order and/or preliminary injunctive relief in connection with any confidentiality covenants or agreements binding on the other party, with related expedited discovery for the parties, in a court of law, and thereafter, require arbitration of all issues of final relief. The arbitration will be conducted by the American Arbitration Association pursuant to the rules governing complex commercial disputes. A panel of three arbitrators will preside over the arbitration and will together deliberate, decide, and issue the final award. The arbitrators shall be duly licensed to practice law in the state of Texas. The arbitrators shall be required to state in a written opinion all facts and conclusions of law relied upon to support any decision rendered. The arbitrators will not have the authority to render a decision that contains an outcome based on error of state or federal law or to fashion a cause of action or remedy not otherwise provided for under applicable state or federal law. Any dispute over whether the arbitrators have failed to comply with the foregoing will be resolved by summary judgment in a court of law. All proceedings shall be conducted in Dallas, Texas or another mutually agreeable site. Each party shall bear its own attorneys' fees, costs, and expenses, including any costs of experts, witnesses, and/or travel.

6.3 Waiver of Right to Jury Trial.

EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH PARTY TO THIS AGREEMENT CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) SUCH PARTY HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, AND (C) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY.

6.4 Cooperation. Each of the Parties hereto shall execute such additional documents and take such additional actions as are or may be reasonably necessary to effectuate the purposes of this Agreement.

6.5 Counterparts. This Agreement may be executed in counterparts. All counterparts so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all Parties are not signatory to the original or to the same counterpart.

6.6 Entire Agreement/No Other Agreements.

THE PARTIES EXPRESSLY ACKNOWLEDGE, COVENANT, AND AGREE THAT THIS AGREEMENT AND ITS EXHIBITS CONSTITUTE THE ENTIRE AGREEMENT OF THE PARTIES WITH RESPECT TO THE SUBJECT MATTER CONTAINED THEREIN. THE PARTIES EXPRESSLY WAIVE AND DISAVOW ALL PRIOR AGREEMENTS, COVENANTS, REPRESENTATIONS, AND WARRANTIES, EXPRESS OR IMPLIED, WRITTEN OR ORAL, OF THE PARTIES CONCERNING THE SUBJECT MATTER OF THIS AGREEMENT.

6.7 Modification. This Agreement shall not be modified or amended except by an instrument in writing signed by an authorized representative of each Party.

6.8 No Third-Party Beneficiaries. This Agreement is for the sole benefit of the Parties and their respective successors and permitted assigns and Released Parties, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable rights, benefit, or remedy of any nature whatsoever.

6.9 No Waiver. The failure by any Party to enforce any term of this Agreement shall not be deemed a waiver of the term or any other term of the Agreement, nor shall any Party be deemed to have waived any right to performance under this Agreement unless such waiver is made expressly in writing by the Party making the waiver.

6.10 Severability. It is expressly understood and agreed that each provision of this Agreement shall be deemed to be severable, and if any provision herein is determined to be invalid, illegal, or unenforceable by a court of competent jurisdiction for any reason, then such invalidity, illegality, and/or unenforceability shall not affect the validity, legality, and enforceability of the remaining provisions of this Agreement.

6.11 Mutual Interpretation. The Parties agree and stipulate that this Agreement was negotiated on an "arms-length" basis between parties of equal bargaining power, and that this Agreement has been drafted jointly by the Parties and their respective Counsel. Accordingly, this Agreement shall be neutral, and no ambiguity shall be construed in favor of or against either Party.

6.12 Binding Effect; Successors and Assigns. This Agreement, and each provision of this Agreement, shall inure to the benefit of, and shall be binding upon, the Parties as well as the legal successors and assigns of the Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

**Hunter Mountain Investment Trust**

Name: John W. Honis

Title: Trustee

Date: 6/21/22

**Rand PE Fund I, LP, Series 1.**

Name: John W. Honis

Title: Manager, Rand PE LGP

Date: 6/21/22

**James D. Dondero**

Date: __________

**The Mark and Pamela Okada Family Trust – Exempt Trust #1**

Name: __________

Title: __________

Date: __________

**Mark K. Okada**

Date: __________

**The Dugaboy Investment Trust,**

Name: __________

Title: __________

Date: __________

**The Mark and Pamela Okada Family Trust – Exempt Trust #2**

Name: __________

Title: __________

Date: __________

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

______________________________

**Hunter Mountain Investment Trust**

Name: ______________________

Title: ______________________

Date: ______________________

______________________________

**Rand PE Fund I, LP, Series 1.**

Name: ______________________

Title: ______________________

Date: ______________________

______________________________

**James D. Dondero**

Date: June 21, 2022

______________________________

**Mark K. Okada**

Date: ______________________

______________________________

**The Dugaboy Investment Trust,**

Name: ______________________

Title: ______________________

Date: ______________________

______________________________

**The Mark and Pamela Okada Family Trust – Exempt Trust #1**

Name: ______________________

Title: ______________________

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

______________________________

**Hunter Mountain Investment Trust**

Name: ______________________

Title: ______________________

Date: ______________________

______________________________

**Rand PE Fund I, LP, Series 1.**

Name: ______________________

Title: ______________________

Date: ______________________

______________________________

**James D. Dondero**

Date: ______________________

______________________________

**Mark K. Okada**

Date: ______________________

______________________________

**The Mark and Pamela Okada Family Trust – Exempt Trust #1**

Name: ______________________

Title: Trustee

Date: June 21, 2022

______________________________

**The Dugaboy Investment Trust**,

Name: ______________________

Title: ______________________

Date: ______________________

______________________________

**The Mark and Pamela Okada Family Trust – Exempt Trust #2**

Name: ______________________

Title: Trustee

Date: June 21, 2022

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

______________________________

**Hunter Mountain Investment Trust**

Name: ______________________

Title: ______________________

Date: ______________________

______________________________

**Rand PE Fund I, LP, Series 1.**

Name: ______________________

Title: ______________________

Date: ______________________

______________________________

**James D. Dondero**

Date: ______________________

______________________________

**The Mark and Pamela Okada Family Trust – Exempt Trust #1**

Name: ______________________

Title: ______________________

Date: ______________________

______________________________

**Mark K. Okada**

Date: ______________________

______________________________

**The Dugaboy Investment Trust,**

Name: Nancy Dondero

Title: TRUSTEE

Date: 6/21/22

______________________________

**The Mark and Pamela Okada Family Trust – Exempt Trust #2**

Name: ______________________

Title: ______________________

Date: ______________________