**EXHIBIT 46**

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis Phillips" <Louis.Phillips@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "amelia.hurt@kellyhart.com"
<Amelia.Hurt@kellyhart.com>
**Subject:** Highland: Confidential Settlement Communication
**Date:** Wed, 16 Apr 2025 20:58:17 +0000
**Importance:** Normal
**Attachments:** PRIVILEGED_AND_CONFIDENTIAL_DRAFT_SETTLEMENT_STRUCTURE_CLEAN
_4.16.25.pdf;
PRIVILEGED_AND_CONFIDENTIAL_DRAFT_SETTLEMENT_STRUCTURE_REDLI
NE_4.16.25.pdf; Privileged_and_Confidential_-_Indemnity_Trust_2025-4-16_Draft.pdf;
Highland_Indemnity_Trust_-
_Second_Amended_and_Restated_Indemnity_Trust_Agreement.pdf
**Inline-Images:** image001.jpg

---

**COMMUNICATION TENDERED PURSUANT TO FED. R. EVID. 408**
**AND THE PARTIES' CONFIDENTIALITY AGREEMENT**

Louis,

We're following up on recent discussions, including the call last Friday between Mark Patrick and Jim Seery.

We are providing three groups of documents: (a) a revised settlement structure (and black line) that takes into account the discussion between Mark and Jim; (b) an illustration of sources/uses and plausible timeline for payments; and (c) the Second Amended and Restated Indemnity Trust Agreement (which we expect to be executed in the coming days).

Specifically, please find attached the following:

1. Revised draft of settlement structure (Clean)
2. Revised draft of settlement structure (Redlined against version from last week)
3. Illustrative sources and uses of timing/amounts of potential future Indemnity Trust payouts
4. Second Amended and Restated Indemnity Trust Agreement
   a. The provisions we believe the HMIT team should focus on to understand the uses and limitations of the Indemnity Trust are:
      i. Intro and First Whereas Clause with certain definitions
      ii. Section 1.1

      1. Beneficiaries
      2. Indemnified Parties
      3. Indemnity Obligations
      4. Indemnity Trust Account
      5. Indemnity Trust Assets
      6. Trust Indemnified Parties
      iii. Section 2.1(c)
      iv. Section 2.4
      v. Section 3.5
      vi. Article VIII
      vii. Section 9.12 (Okada)

HCMLPHMIT00000672

Jim and his team would like to walk you and your team through these documents. We have a Board call tomorrow afternoon so if we could speak tomorrow until 3:00 pm Eastern, that would be ideal (we believe 90 minutes is sufficient). If that is not feasible, we can also be available until 1:00 pm Eastern on Friday.

Finally, if Mr. Shields is going to review any of the attached documents or participate in our discussions, please be sure to send his Joinder in advance.

Please let us know what works for your side.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

HCMLPHMIT00000673

**SECOND AMENDED AND RESTATED INDEMNITY TRUST AGREEMENT**

This Second Amended and Restated Indemnity Trust Agreement (this "Agreement"), dated as of [●], 2025, by and among the Highland Claimant Trust, a Delaware statutory trust, as grantor (the "Grantor"), James P. Seery, Jr., as indemnity trust administrator (the "Indemnity Trust Administrator," which term shall include any successor Indemnity Trust Administrator), Wilmington Trust, National Association, a national banking association ("WTNA"), as indemnity trustee, for the benefit of the Beneficiaries (in such capacity hereunder, and not in its individual capacity, the "Indemnity Trustee"), and WTNA, as the Delaware trustee (in such capacity hereunder, and not in its individual capacity, the "Delaware Trustee") (collectively, the "Parties"), amends and restates the First Amended and Restated Indemnity Trust Agreement entered into by and among the Parties, effective as of July 1, 2024 (the "Prior Agreement"). Capitalized terms used herein but not defined shall have the respective meanings assigned thereto in Section 1.1.

**RECITALS**

WHEREAS, the Parties entered into the Indemnity Trust Agreement, effective as of August 16, 2021 (the "Original Indemnity Trust Agreement") to establish a Delaware statutory trust, the Indemnity Trust, for the benefit of the Beneficiaries, (a) to secure the performance by each of the Claimant Trust, the Litigation Sub-Trust and the Reorganized Debtor of its indemnity obligations as specified in (i) Section 8.2 of that certain Claimant Trust Agreement, (ii) Section 8.2 of the Litigation Sub-Trust Agreement and (iii) Section 10 of the Reorganized Limited Partnership Agreement, establishing the Reorganized Debtor pursuant to the Plan (the foregoing (i)-(iii), the "Indemnity Obligations"), and (b) following the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, to be the primary source of indemnification for the respective Indemnity Obligations, in each case regardless of whether such Indemnity Obligations survive the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable;

WHEREAS, the Indemnity Trust Administrator agreed to act as administrator hereunder to direct the Indemnity Trustee with respect to the transfer, distribution and release of Indemnity Trust Assets;

WHEREAS, the Indemnity Trustee agreed to act as trustee hereunder to hold and apply the Indemnity Trust Assets on behalf of the Indemnity Trust, as specified herein, for the sole use and exclusive benefit of the Beneficiaries;

WHEREAS, the Indemnity Trust is the payee under the Indemnification Funding Note;

WHEREAS, the Indemnification Funding Note requires the payors thereunder to make payments on the Indemnification Funding Note so that the Indemnity Trust Assets are not less than $25 million;

WHEREAS, the Grantor initially funded the Indemnity Trust by depositing $2.5 million in cash and the Indemnification Funding Note into the Indemnity Trust Account;

WHEREAS, the payors funded the Indemnification Funding Note so that the Indemnity Trust Account held approximately $25 million in cash Assets;

WHEREAS, Section 2.3(b) of the Original Indemnity Trust Agreement authorized the Grantor to transfer Assets into the Indemnity Trust Account in excess of the amount due on the Indemnification Funding Note;

WHEREAS, the Grantor regularly assesses the potential magnitude of Indemnity Obligations and whether the Indemnity Trust Assets are sufficient to cover all current or potential Indemnity Obligations;

WHEREAS, the Grantor's assessment and re-assessment of the magnitude of potential Indemnity Obligations is continually informed by developments in litigations related to the Plan, and the costs related thereto, taken against the Grantor and other Trust Indemnified Parties, as well as actions against third-parties that relate to the Plan or Trust Indemnified Parties;

WHEREAS, based upon the Grantor's initial re-assessment of the potential magnitude of Indemnity Obligations, the Grantor determined that $25 million in the Indemnity Trust Account was likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on March 13, 2023, the Grantor transferred an additional interim amount of $7 million in cash into the Indemnity Trust Account;

WHEREAS, effective May 3, 2023, the Parties amended the Original Indemnity Trust Agreement by entering into the First Amendment to Indemnity Trust Agreement to clarify that the transfer of additional Assets to the Indemnity Trust and any additional transfers of Assets to the Indemnity Trust will be subject to the Indemnity Trust Administrator's ability to transfer Indemnity Trust Assets from the Indemnity Trust Account to the Claimant Trust if he determines, in his sole and absolute discretion, that amounts in excess of $32 million (the then approximate amount of Indemnity Trust Assets) in cash or other Assets are not then required to satisfy potential Indemnity Obligations;

WHEREAS, based upon the Grantor's further re-assessment of Indemnity Obligations and its determination that the Indemnity Trust Assets were then likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on May 3, 2023, the Grantor transferred an additional interim amount of $3 million in cash into the Indemnity Trust Account;

WHEREAS, based upon the Grantor's further re-assessment of Indemnity Obligations and its determination that the Indemnity Trust Assets were then likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on August 29, 2023, the Grantor transferred an additional interim amount of $15 million in cash into the Indemnity Trust Account;

WHEREAS, that certain Settlement Agreement was entered into as of January 11, 2024, by and among (a) Highland Capital Management, L.P.; (b) the Litigation Trustee; (c) the Claimant Trust; (d) the Indemnity Trust; (e) Mark K. Okada ("Okada"); (f) Mark & Pamela Okada Family Trust – Exempt Trust # 1 ("MAP Trust 1"); (g) Mark & Pamela Okada Family Trust – Exempt Trust #2 ("MAP Trust 2"); and (h) Lawrence Tonomura, solely in his capacity as Trustee of MAP

HCMLPHMIT00000675

Trust 1 and MAP Trust 2 ("Tonomura," and together with Okada, MAP Trust 1, and MAP Trust 2, the "Okada Parties"), and such Settlement Agreement became effective when approved by the Bankruptcy Court on February 7, 2024 (as so approved by the Bankruptcy Court, the "Okada Settlement Agreement");

WHEREAS, based upon the Grantor's further re-assessment of Indemnity Obligations and its determination that the Indemnity Trust Assets were then likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on December 24, 2024, the Grantor transferred an additional interim amount of $10 million in cash into the Indemnity Trust Account;

WHEREAS, the Grantor continually re-assesses all existing and potential Indemnity Obligations, and based on developing litigation threats and litigation actions involving Trust Indemnified Parties it has determined the current cash and US Treasury balance of the Indemnity Trust Account of approximately $68.7 million (including the face value of US Treasuries with maturities of less than 1 (one) year, but excluding non-cash assets) is likely insufficient to satisfy existing and potential future Indemnification Obligations and additional Assets will be required to satisfy all Indemnification Obligations absent final court resolution of certain litigation issues and/or comprehensive settlements;

WHEREAS, the Grantor has a limited life and (a) certain of the books and records and privileges of its subsidiaries are required by regulation to be maintained beyond its permitted life, and (b) certain of its books and records and privileges and the books and records and privileges of its subsidiaries are essential to support Indemnified Obligations for the benefit of Beneficiaries;

WHEREAS, in order for the Indemnity Trust to efficiently support its obligation to satisfy all Indemnity Obligations for the benefit of the Beneficiaries, it must maintain records and privileges currently maintained for the benefit of the Beneficiaries beyond the life of the Grantor, including by owning additional non-cash Assets contributed to it by the Grantor;

WHEREAS, the Parties desire to make additional amendments consistent with the Prior Agreement in order to facilitate the efficient management of the Indemnity Trust and the Indemnity Trust Assets for the benefit of the Beneficiaries; and

WHEREAS, in consideration of the mutual covenants and promises, and upon the terms and conditions, set forth herein, the Parties agree to amend and restate the Prior Agreement in its entirety as follows:

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements and covenants herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, each of the Grantor, the Indemnity Trust Administrator, and the Indemnity Trustee have executed this Agreement for the benefit of the Beneficiaries.

3

TO HAVE AND TO HOLD unto the Indemnity Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Beneficiaries, and for the performance of and compliance with the terms hereof.

IT IS FURTHER COVENANTED AND DECLARED that the Indemnity Trust Assets are to be strictly held and applied by the Indemnity Trustee on behalf of the Indemnity Trust subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1     <u>Certain Definitions</u>.  Unless the context shall otherwise require and except as contained in this <u>Section 1.1</u> or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Claimant Trust Agreement, or if not defined therein, shall have the respective meanings assigned thereto in the Plan.  For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "<u>Acis 7 Proceeds</u>" has the meaning ascribed to it in the Okada Settlement Agreement.

(b)     "<u>Advisory Representatives</u>" means the following individuals who are also current Oversight Board representatives as of the date of this Agreement: (i) independent member Richard Katz, (ii) Muck Holdings LLC representative Michael Linn, and (iii) Jessup Holdings LLC representative Christopher Provost, each to the extent they desire to and do act as Advisory Representatives hereunder.

(c)     "<u>Agreement</u>" has the meaning set forth in the preamble hereto.

(d)     "<u>Assets</u>" means all assets, property, rights, benefits, or privileges that a "liquidated trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, which, for the avoidance of doubt, need not be in the form of cash or cash equivalents.

(e)     "<u>Bankruptcy Court</u>" means the Bankruptcy Court for the Northern District of Texas, Dallas Division.

(f)     "<u>Beneficiaries</u>" means the Trust Indemnified Parties.

(g)     "<u>Beneficiary Withdrawal Request</u>" has the meaning set forth in <u>Section 2.4(c).</u>

(h)     "<u>Business Day</u>" means any day other than a Saturday, a Sunday or a day on which banking institutions or trust companies in Wilmington, Delaware are authorized or obligated by law, regulation or executive order to remain closed.

(i)     "<u>Cause</u>" means (i) a person's willful failure to perform his material duties hereunder, which is not remedied within thirty (30) days of notice; (ii) a person's commission of

4

an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(j)     "<u>Claimant Trust Agreement</u>" means that certain agreement effective as of the Effective Date of the Plan (as may be amended, supplemented, or otherwise modified in accordance with the terms thereof), by and among Highland Capital Management, L.P., the Claimant Trustee, and the Delaware Trustee (as defined in the Claimant Trust Agreement) for the benefit of the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) filed with the Plan Supplement [Docket No. 1811].

(k)     "<u>Claimant Trustee</u>" means James P. Seery, Jr., as the initial "Claimant Trustee" under the Claimant Trust Agreement and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of the Claimant Trust Agreement.

(l)     "<u>Claimant Trust</u>" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to the Claimant Trust Agreement.

(m)     "<u>Delaware Statutory Trust Act</u>" means the Delaware Statutory Trust Act, 12 Del. C. §3801, et seq.

(n)     "<u>Delaware Trustee</u>" has the meaning set forth in the preamble hereto.

(o)     "<u>Final Order</u>" means an order or judgment of a court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

(p)     "<u>Indemnification Funding Note</u>" means that certain $25 million note made by Highland Capital Management, L.P., Grantor, and Litigation Sub-Trust, dated August 11, 2021, in favor of the Indemnity Trust, a form of which is attached hereto as <u>Exhibit A</u>.

(q)     "<u>Indemnified Amount</u>" has the meaning set forth in <u>Section 2.4(c)</u>.

(r)     "<u>Indemnified Party</u>" has the meaning set forth in <u>Section 7.2(a)</u>.

(s)     "<u>Indemnity Obligations</u>" has the meaning set forth in the Recitals hereof.

HCMLPHMIT00000678

(t)    "<u>Indemnity Trust</u>" means the "Highland Indemnity Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(u)    "<u>Indemnity Trust Account</u>" has the meaning set forth in <u>Section 2.1(c)</u>.

(v)    "<u>Indemnity Trust Administrator</u>" has the meaning set forth in the preamble hereto.

(w)    "<u>Indemnity Trust Assets</u>" means (i) all Assets, including, but not limited to, cash, the Indemnification Funding Note, and any cash equivalents, notes, or other Assets held in the Indemnity Trust Account or otherwise owned by the Indemnity Trust or held for the benefit of the Indemnity Trust, and any proceeds realized or received from or with respect to such Assets, and (ii) any Assets transferred by or on behalf of the Grantor to the Indemnity Trust Account on or after the Effective Date.

(x)    "<u>Indemnity Trustee</u>" has the meaning set forth in the preamble hereto.

(y)    "<u>Investment Company Act</u>" means the Investment Company Act of 1940.

(z)    "<u>IRS</u>" means the Internal Revenue Service.

(aa)    "<u>Liability</u>" means any claim, expense, debt, obligation, liability, loss, damages, injury (to person, property or natural resources), penalty, stamp or other similar tax, action, suits, judgment, cost and expense (including costs of investigation and defense and attorneys' fees, costs and expenses), in each case, whether direct or indirect and whether accrued or contingent.

(bb)    "<u>Litigation Sub-Trust</u>" means the sub-trust created pursuant to the Litigation Sub-Trust Agreement, which shall hold the Claimant Trust Assets that are Estate Claims (as defined in the Plan) and investigate, litigate, and/or settle the Estate Claims for the benefit of the Claimant Trust.

(cc)    "<u>Litigation Sub-Trust Agreement</u>" means the litigation sub-trust agreement to be entered into by and between the Claimant Trustee and Litigation Trustee establishing and setting forth the terms and conditions of the Litigation Sub-Trust and governing the rights and responsibilities of the Litigation Trustee.

(dd)    "<u>Litigation Trustee</u>" means Marc S. Kirschner, and any successor Litigation Trustee that may be appointed pursuant to the terms of the Litigation Sub-Trust Agreement, who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

(ee)    "<u>MAP Trust 1</u>" has the meaning set forth in the Recitals hereof.

(ff)    "<u>MAP Trust 2</u>" has the meaning set forth in the Recitals hereof.

HCMLPHMIT00000679

(gg)    "<u>Okada</u>" has the meaning set forth in the Recitals hereof.

(hh)    "<u>Okada Parties</u>" has the meaning set forth in the Recitals hereof.

(ii)    "<u>Okada Settlement Agreement</u>" has the meaning set forth in the Recitals hereof.

(jj)    "<u>Original Indemnity Trust Agreement</u>" has the meaning set forth in the preamble hereto.

(kk)    "<u>Oversight Board</u>" means the Oversight Board of the Claimant Trust consisting of (x) independent member Richard Katz, (y) Jessup Holdings LLC, and (z) Muck Holdings LLC.

(ll)    "<u>Permitted Investments</u>" has the meaning set forth in <u>Section 3.1(b)</u>.

(mm)    "<u>PetroCap Proceeds</u>" has the meaning set forth in <u>Section 9.12(a)</u>.

(nn)    "<u>PetroCap Proceeds Demand</u>" has the meaning set forth in <u>Section 9.12(a)</u>.

(oo)    "<u>Plan</u>" means the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) [Docket No. 1808] (as amended [Docket No. 1875]) confirmed pursuant to that certain *Order (i) Confirming the Fifth Amended Plan of Reorganization (as Modified) and (ii) Granting Related Relief* [Docket No. 1943].

(pp)    "<u>Prior Agreement</u>" has the meaning set forth in the preamble hereto.

(qq)    "<u>SLP</u>" has the meaning set forth in <u>Section 9.12(a)</u>.

(rr)    "<u>Termination Date</u>" has the meaning set forth in <u>Section 8.1(d)</u>.

(ss)    "<u>Tonomura</u>" has the meaning set forth in the Recitals hereof.

(tt)    "<u>Trust Indemnified Parties</u>" means the following:

(i)    "Indemnified Parties" under Section 8.2 of the Claimant Trust Agreement and their respective employees, agents and professionals, which are also indemnitees under the same provision;

(ii)    "Indemnified Parties" under Section 8.2 of the Litigation Sub-Trust Agreement and their respective employees, agents and professionals, which are also indemnitees under the same provision; and

(iii)    "Covered Persons" under Section 10 of the Reorganized Limited Partnership Agreement.

(uu)    "<u>Withdrawal Notice</u>" has the meaning set forth in <u>Section 2.4(e)</u>.

7

HCMLPHMIT00000680

(vv)    "<u>WTNA</u>" has the meaning set forth in the preamble hereto.

1.2    <u>General Construction</u>.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular terms or numbers shall be deemed to include the others in all cases where they would apply.  Terms defined in the current tense shall have a comparable meaning when used in the past or future tense and vice versa.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter," "hereof" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements, instruments or other documents shall be deemed to refer to such agreements, instruments or other documents as the same may be amended, restated, supplemented or otherwise modified in accordance with the terms thereof.  Any statute or regulation referred to herein means such statute or regulation as amended, modified, supplemented or replaced from time to time (and, in the case of any statute, includes any rules and regulations promulgated under such statute), and references to any section of any statute or regulation include any successor to such section.

<b>ARTICLE II.</b><br><b>INDEMNITY TRUST AND INDEMNITY TRUST ACCOUNT</b>

2.1    <u>Creation of Trust and Establishment of Account</u>.

(a)    Pursuant to the Original Indemnity Trust Agreement, the Indemnity Trust was created as a statutory trust under the Delaware Statutory Trust Act and shall be called the "Highland Indemnity Trust", and the Indemnity Trust is hereby continued.  The Indemnity Trustee shall be empowered to conduct all business and hold all property constituting the Indemnity Trust Assets in such name in accordance with the terms and conditions set forth herein.

(b)    Pursuant to the Original Indemnity Trust Agreement, the Delaware Trustee and the Indemnity Trustee have caused to be executed and filed in the office of the Secretary of State of the State of Delaware a Certificate of Trust for the Indemnity Trust, and each of them agree to execute, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law, in accordance with the terms and conditions set forth herein.

(c)    Pursuant to the Original Indemnity Trust Agreement, the Grantor established a trust account with the Indemnity Trustee in the name of the Indemnity Trust with account no. 150474-000 (the "<u>Indemnity Trust Account</u>"), which shall be a segregated non-interest bearing trust account for the sole use and exclusive benefit of the Beneficiaries upon the terms and conditions hereinafter set forth.  For all purposes of this Agreement, the term "<u>Indemnity Trust Account</u>" means the funds and Assets held by the Indemnity Trustee on behalf of the Indemnity Trust hereunder constituting the corpus of the Indemnity Trust, upon the terms and conditions hereinafter set forth.

8

HCMLPHMIT00000681

2.2     Authorization to Receive Assets.  The Indemnity Trustee and its lawfully appointed successors are authorized and shall have the power to receive such Assets as the Grantor shall transfer or cause to be transferred to the Indemnity Trustee on behalf of the Indemnity Trust, and to hold, invest, reinvest, manage and dispose of the same for the uses and purposes and in the manner and according to the provisions hereinafter set forth.  All such Assets placed in the Indemnity Trust shall at all times be maintained in the Indemnity Trust Account, separate and distinct from all other assets of the Grantor, and within the dominion and control of the Indemnity Trustee on behalf of the Indemnity Trust for the benefit of the Beneficiaries.

2.3     Deposit of Assets to the Indemnity Trust Account.

(a)     Pursuant to the Original Indemnity Trust Agreement, the Grantor transferred to the Indemnity Trustee on behalf of the Indemnity Trust, for deposit in the Indemnity Trust Account, cash in an amount equal to $2,500,000 and an Indemnification Funding Note, the form of which is attached hereto as Exhibit A.

(b)     Thereafter, the Grantor (or any other person on behalf of the Grantor) may from time to time transfer to the Indemnity Trustee on behalf of the Indemnity Trust, for deposit to the Indemnity Trust Account or to be otherwise held by the Indemnity Trustee for the benefit of the Beneficiaries, any Assets, including pursuant to Section 9.12(a) or Section 9.12(b), as payments under the Indemnification Funding Note or otherwise for the benefit of the Beneficiaries; provided that such Assets shall be valued according to their current fair market value. Any interest or investment income on such Assets, to the extent not invested or reinvested, shall be retained in the Indemnity Trust Account and will be considered a part of the corpus of the Indemnity Trust and included in the balance of the Indemnity Trust Account.  The Indemnity Trustee shall not be responsible for valuing any Indemnity Trust Assets.

(c)     Upon receipt at any time of a contribution or payment from the Grantor (or any other person on behalf of the Grantor) and after giving effect to any payments required to be made hereunder, the Indemnity Trustee shall invest available Indemnity Trust Assets in Permitted Investments but only at and in accordance with the written direction of the Indemnity Trust Administrator; provided, that whether any Indemnity Trust Asset should be held in its original form, disposed of or liquidated, or invested in Permitted Investments shall be determined by the Indemnity Trust Administrator in his sole and absolute discretion.  The Indemnity Trustee may conclusively and exclusively rely on any such investment direction and shall bear no Liability for any loss or other injury based on acting or omitting to act in accordance with such investment direction.  All such Permitted Investments shall constitute Indemnity Trust Assets and be held by the Indemnity Trustee on behalf of the Indemnity Trust in the Indemnity Trust Account for the benefit of the Beneficiaries.  In the absence of such written direction, the Indemnity Trust Assets including any available funds shall be held uninvested in the Indemnity Trust Account.  Any earnings and income shall become part of the Indemnity Trust Assets and disbursed in accordance with this Agreement.  The Indemnity Trustee is hereby authorized and directed to sell or redeem any such investments as it deems necessary to make any payments or distributions required or permitted under this Agreement; provided that the Acis 7 Proceeds and any PetroCap Proceeds may be expended only in the order contemplated in Section 9.12(d) as instructed in writing by the Indemnity Trust Administrator.  The Indemnity Trustee shall have no responsibility or Liability for any loss which may result from any investment or sale of

9

investment made pursuant to this Agreement or any disbursement instructed by the Indemnity Trust Administrator.  The Indemnity Trustee is hereby authorized, in making or disposing of any investment permitted by this Agreement, to deal with itself (in its individual capacity) or with any one or more of its affiliates, whether it or any such affiliate is acting as agent of the Indemnity Trustee or for any third person or dealing as principal for its own account.  The Parties acknowledge that the Indemnity Trustee is not providing investment supervision, recommendations, or advice.

2.4     <u>Withdrawals on Behalf of the Beneficiaries</u>.

(a)     The Indemnity Trust shall pay or reimburse the applicable Beneficiary for the amounts requested by such Beneficiary (i) to be paid by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, with respect to its Indemnity Obligations to the extent not otherwise paid by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, and (ii) following the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, for any claims that if brought against such Beneficiary would have been subject to indemnification under Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub-Trust or Section 10 of the Reorganized Limited Partnership Agreement, as applicable, in each case regardless of whether such Indemnity Obligations survive the dissolution or termination and cancellation of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, pursuant to the procedures set forth below.  With respect to clause (ii) above, the Indemnity Trust shall assume for the benefit of the Beneficiaries the Indemnity Obligations on the terms set forth herein.

(b)     The Indemnity Trustee shall (i) make withdrawals of Indemnity Trust Assets, as instructed in writing by the Indemnity Trust Administrator as described herein pursuant to a Withdrawal Notice, to satisfy amounts due under the Indemnity Obligations in accordance with this Agreement, and (ii) take any action with respect to the Indemnity Trust Assets, as instructed by the Indemnity Trust Administrator, promptly and, in any event, within three (3) Business Days following receipt of such instruction.  The Indemnity Trustee shall be entitled to conclusively and exclusively rely upon any Withdrawal Notice or other written instruction provided to it by the Indemnity Trust Administrator with respect to any withdrawals of Indemnity Trust Assets or other action with respect to the Indemnity Trust Assets in accordance with this Agreement without further inquiry or Liability.

(c)     At any time prior to the dissolution of the Claimant Trust, any Beneficiary who has made a claim for indemnity to the Claimant Trust pursuant to Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub Trust Agreement or Section 10 of the Reorganized Limited Partnership Agreement, as applicable, but has not been paid in full within fourteen (14) days of such claim for indemnification may make a request for withdrawal of Indemnity Trust Assets from the Indemnity Trust Account by delivering a written notice to the Indemnity Trust Administrator (with a copy to the Indemnity Trustee), substantially in the form attached hereto as <u>Exhibit B</u> ("<u>Beneficiary Withdrawal Request</u>"), setting forth (i) a certification that such Beneficiary has made a claim for indemnification to the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as the case may be, which was not paid in full within fourteen (14) days of such claim for indemnification and (ii) the amount owed to such Beneficiary with respect to such claim for indemnification (the "<u>Indemnified Amount</u>").  For the

10

HCMLPHMIT00000683

avoidance of doubt, the Indemnity Trustee shall have no duty or Liability to review any Beneficiary Withdrawal Request or verify any information contained therein, it being understood and agreed that the Indemnity Trust Administrator shall be solely responsible for doing so.

(d)    At any time following the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, any Beneficiary may make a claim for the Indemnified Amount by making a request for withdrawal of Indemnity Trust Assets from the Indemnity Trust Account by delivering a Beneficiary Withdrawal Request to the Indemnity Trust Administrator (with a copy to the Indemnity Trustee);

(e)    Following receipt of a Beneficiary Withdrawal Request, the Indemnity Trust Administrator shall (i) verify whether such Beneficiary has made a claim for indemnification and has not been paid in full by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, within fourteen (14) days of such claim for indemnification (provided that this clause (i) shall not be applicable to claims made pursuant to Section 2.4(d)); (ii) review the supporting documents attached to such Beneficiary Withdrawal Request; and (iii) deliver a written notice to the Indemnity Trustee (with a copy to the applicable Beneficiary) in the form attached hereto as Exhibit C (the "Withdrawal Notice"). The Withdrawal Notice shall specify the amount to be paid to the applicable Beneficiary and any applicable wire transfer instructions as may be required by the Indemnity Trustee to make such payment. All payments by the Indemnity Trustee to any Beneficiary hereunder shall be sent by wire transfer. The Indemnity Trustee shall have no obligation to determine whether the Indemnity Trust Administrator has complied with the provisions of this Section 2.4(e). If the Indemnity Trust Administrator does not issue a Withdrawal Notice within two (2) Business Days of receipt of a Beneficiary Withdrawal Request, the Indemnity Trust Administrator shall provide the applicable Beneficiary, no later than the third (3rd) Business Day following receipt of the Beneficiary Withdrawal Request, with an explanation in writing of the reasons for the denial of the Beneficiary Withdrawal Request. All disputes related to Beneficiary Withdrawal Requests shall be resolved by the Bankruptcy Court, or another court of competent jurisdiction, in accordance with Section 9.10 of this Agreement. The Indemnity Trustee is entitled to conclusively rely on any order from the Bankruptcy Court or other court of competent jurisdiction concerning any such disputes.

(f)    Within three (3) Business Days of receipt of such Withdrawal Notice, the Indemnity Trustee shall pay by wire transfer of immediately available funds to the applicable Beneficiary the lesser of (i) the Indemnified Amount and (ii) the amount of funds in the Indemnity Trust Account, provided that if the Indemnity Trust Account contains insufficient funds to pay the amounts set forth in such Withdrawal Notice, any such unpaid amounts will be paid by the Indemnity Trustee within three (3) Business Days of receipt by the Indemnity Trustee in the Indemnity Trust Account of sufficient funds (including, for the avoidance of doubt, from any funds subsequently received as payments on the Indemnification Funding Note) to pay any portion thereof.

(g)    If any Beneficiary who has made a claim for indemnification hereunder receives payment with respect to such claim for indemnification from the Claimant Trust or any other source, such Beneficiary must promptly notify the Indemnity Trust Administrator (with a copy to the Indemnity Trustee), upon which the applicable request for payment from the

11

Indemnity Trust will be revised accordingly, and to the extent that any such amounts were already received from the Indemnity Trust, the Indemnity Trust Administrator, in his reasonable discretion, shall cause such Beneficiary to repay or return such amounts to the Indemnity Trust Account, without interest, or offset such amounts against any future requests for indemnification.

(h)    For the avoidance of doubt, the Indemnity Trustee shall withdraw Indemnity Trust Assets credited to the Indemnity Trust Account without notice to or the consent of the Grantor at any time and from time to time upon a Withdrawal Notice or other written instructions from the Indemnity Trust Administrator in accordance with the terms of this <u>Section 2.4</u>. No other statement or document need be presented to the Indemnity Trustee by the Indemnity Trust Administrator in order to withdraw Indemnity Trust Assets credited to the Indemnity Trust Account. Upon receipt of a Withdrawal Notice or other written instructions from the Indemnity Trust Administrator in accordance with the terms of this <u>Section 2.4</u> by the Indemnity Trustee, the Indemnity Trustee shall promptly take any and all necessary steps to pay the applicable Beneficiary and, when appropriate, to liquidate (but only at the written direction of the Indemnity Trust Administrator) non-cash Indemnity Trust Assets in the Indemnity Trust to pay the applicable Beneficiary. The Indemnity Trustee shall be fully protected in conclusively relying upon any such Withdrawal Notice or other written instructions from the Indemnity Trust Administrator delivered in accordance with this Agreement for such withdrawal and shall not be obligated to investigate or ascertain that the applicable Beneficiary intends to use or uses the Indemnity Trust Assets withdrawn for the purposes set forth herein. Except for acts or omissions involving its own gross negligence or willful misconduct, the Indemnity Trustee shall not be liable to the Grantor, any Beneficiary, the Indemnity Trust Administrator or any third party, for any withdrawals or payments made pursuant to a Withdrawal Notice or other written instructions from the Indemnity Trust Administrator delivered in accordance with this Agreement.

## <u>ARTICLE III.</u>
## <u>INDEMNITY TRUST ADMINISTRATOR</u>

3.1    <u>Authority</u>.

(a)    For any action contemplated or required in connection with the operation of the Indemnity Trust, and for any guidance or instruction to be provided to the Indemnity Trustee, such function, rights and responsibility shall be vested in the Indemnity Trust Administrator. The Indemnity Trust Administrator is an express agent of the Indemnity Trust and is not a delegatee of the Indemnity Trustee.

(b)    The Indemnity Trust Administrator shall have the power to take any actions the Indemnity Trust Administrator, in his sole and absolute discretion, deems desirable or necessary in connection with the operation of the Indemnity Trust. Notwithstanding the foregoing, the right and power of the Indemnity Trust Administrator to direct the Indemnity Trustee to invest the Indemnity Trust Assets, the proceeds thereof, or any income earned by the Indemnity Trust shall be limited to the right and power to invest such Indemnity Trust Assets only in cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; <u>provided</u>, <u>however</u>, that the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold pursuant to the Treasury

HCMLPHMIT00000685

Regulations, or any modification in the Internal Revenue Guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise; including, for the avoidance of doubt, any obligations of the United States Treasury, including bills, notes, bonds, or TIPS having a remaining maturity of less than one year at the time of investment ("Permitted Investments"). The Indemnity Trustee shall have no duty to determine if any investment direction provided to it by the Indemnity Trust Administrator satisfies the definition of "Permitted Investments" hereunder.  In the event that market conditions are such that negative interest applies to amounts deposited in the Indemnity Trust Account, the Grantor shall be responsible for the payment of such interest and the Indemnity Trustee shall be entitled to deduct from amounts on deposit with it an amount necessary to pay such negative interest.  For the avoidance of doubt, the indemnification protections afforded to the Indemnity Trustee under Section 7.2 shall cover any interest-related expenses (including, but not limited to, negative interest) incurred by the Indemnity Trustee in the performance of its duties hereunder.

(c)     The Indemnity Trust Administrator shall have the power and authority to retain counsel, tax advisors, consultants, brokers and other experts or advisors, as he considers appropriate to address any matter relating to the Indemnity Trust. Without limiting the generality of the foregoing, to the extent the Indemnity Trust Administrator identifies any conflict of interest in his capacity as a Beneficiary, on the one hand, and the Indemnity Trust Administrator, on the other, or otherwise relating to the Indemnity Trust, the Indemnity Trust Administrator may retain such advisors or experts, as he, in his sole and absolute discretion, considers appropriate to evaluate and resolve any such conflict of interest.  The cost of any such advisors or experts will be paid by the Claimant Trust, and if not paid in a timely fashion, may represent a claim for indemnity under this Agreement.  The Indemnity Trust Administrator shall keep a record of such fees and expenses incurred and upon the request of the Grantor or any Beneficiary, the Indemnity Trust Administrator shall promptly permit the requesting Party or Beneficiary, its respective agents, employees or independent auditors to examine, audit, excerpt, transcribe and copy such records, during normal business hours at the expense of such requesting Party or Beneficiary.

3.2     Records; Reporting.

(a)     The Indemnity Trust Administrator shall create and maintain a record of any Beneficiary who makes a claim hereunder at his office or at such other place or places as it shall designate from time to time, which shall be subject to inspection by any Beneficiary upon request; provided that such Beneficiary may be required to agree to maintain confidentiality with respect to any non-public information.

(b)     The Indemnity Trust Administrator shall provide quarterly reporting to the Oversight Board (for so long as it exists) of the Claimant Trust and the Advisory Representatives of (i) the status of the Indemnity Trust Assets, (ii) the balance of cash held by the Indemnity Trust, (iii) the status of any claims made by Beneficiaries and any resolutions thereof, (iv) the status of any litigation, and (vii) operating expenses; provided, however, that the Indemnity Trust Administrator may, with respect to any member of the Oversight Board of the Claimant Trust or Advisory Representative, redact any portion of such reports that relate to such person's or entity's claim for indemnification hereunder, as applicable, and any reporting provided hereunder may be subject to such member of the Oversight Board of the Claimant Trust

13

HCMLPHMIT00000686

or Advisory Representative's agreement to maintain confidentiality with respect to any non-public information.

3.3     Term of Service.  The Indemnity Trust Administrator shall serve as the Indemnity Trust Administrator for the duration of the Indemnity Trust, subject to death, disability, resignation or removal.

3.4     Resignation or Removal of the Indemnity Trust Administrator.

(a)     The Indemnity Trust Administrator may resign as Indemnity Trust Administrator at any time by giving not less than thirty (30) days' written notice thereof to the Grantor and the Indemnity Trustee.  Upon the resignation of the Indemnity Trust Administrator, the successor Indemnity Trust Administrator will be appointed in accordance with Section 3.4(d).  The resignation of the Indemnity Trust Administrator shall become effective on the acceptance of appointment by a successor Indemnity Trust Administrator.

(b)     The Indemnity Trust Administrator may be removed for Cause immediately upon notice thereof by the Grantor as the Grantor deems appropriate or upon the request of a Beneficiary; provided that such notice shall be accompanied by a final order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, by a final order of such other court of competent jurisdiction establishing Cause.

(c)     [Reserved]

(d)     In the event of a vacancy by reason of Cause, or the death or Disability of the Indemnity Trust Administrator or prospective vacancy by reason of resignation, the successor Indemnity Trust Administrator shall be Richard Katz (the Independent Member of the Oversight Board of Grantor as of the date hereof), and in the event of a vacancy by reason of Cause, or the death or Disability of the fallback successor Indemnity Trust Administrator, the contingent successor shall be David Klos (the CFO of Highland Capital Management, L.P. as of the date hereof).  In the event that neither Richard Katz nor David Klos is able or willing to serve as Indemnity Trust Administrator, a majority of the Advisory Representatives willing to vote shall select the successor.  Any such successor Indemnity Trust Administrator shall be appointed as soon as practicable, but in any event no later than thirty (30) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the-then acting Indemnity Trust Administrator.

3.5     Expenses and Other Payments to the Indemnity Trust Administrator.

(a)     The Indemnity Trust Administrator shall not be compensated for its services under this Agreement; provided that the Indemnity Trust Administrator shall be paid or reimbursed for all of the Indemnity Trust Administrator's reasonable and documented out-of-pocket expenses and disbursements in connection with his duties under this Agreement (including reasonable attorney's fees and expenses in his capacity as such), except any such expense or disbursement as may arise from the Indemnity Trustee's fraud, willful misconduct or gross negligence.  The Indemnity Trust Administrator shall keep a record of such expenses and upon the request of the Grantor or any Beneficiary, the Indemnity Trust Administrator shall

14

HCMLPHMIT00000687

promptly permit the requesting Party or Beneficiary, its respective agents, employees or independent auditors to examine, audit, excerpt, transcribe and copy such records, during normal business hours at the expense of such requesting Party or Beneficiary.

(b)     In the event that the Grantor is dissolved and Assets or Liabilities are transferred to the Indemnity Trust in accordance with this Agreement, nothing in this Agreement shall prohibit the Indemnity Trust from (i) compensating the Indemnity Trust Administrator in his capacity as an officer, other employee, or agent of such Assets or Liabilities for managing such Assets or Liabilities or (ii) compensating any other officers, employees, or agents of such Assets or Liabilities in assisting in the management of such Assets or Liabilities; provided, however, that any such compensation shall be paid solely from funds advanced to the Indemnity Trust with (or in connection with) the Assets or Liabilities transferred, and such funds shall be accounted for and managed by the Indemnity Trust Administrator separate and apart from the Indemnity Trust Assets.

## ARTICLE IV.
## THE INDEMNITY TRUSTEE AND DELAWARE TRUSTEE

4.1     Indemnity Trustee Authority and Duties.

(a)     The Indemnity Trustee shall have the power and authority to hold legal title on behalf of the Indemnity Trust to any and all Assets and rights of the Indemnity Trust in accordance with the terms hereof.  For the avoidance of doubt, the Beneficiaries shall be the sole beneficiaries of the Indemnity Trust and the Indemnity Trustee on behalf of the Indemnity Trust shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

(b)     The Indemnity Trustee shall take written directions from the Indemnity Trust Administrator, in such form specified herein and otherwise satisfactory to the Indemnity Trustee, and shall be entitled to conclusively and exclusively rely upon any such written directions from the Indemnity Trust Administrator without further inquiry or Liability.

(c)     The Indemnity Trustee's duties and responsibilities hereunder shall be determined solely by the express provisions of this Agreement and no other or further duties or responsibilities shall be implied.  The duties and responsibilities of the Indemnity Trustee hereunder shall be deemed purely ministerial in nature, and the Indemnity Trustee shall not be liable except for the performance of such duties, and no implied covenants or obligations shall be read into this Agreement against the Indemnity Trustee.  The Indemnity Trustee shall not be liable or responsible for any loss to the Indemnity Trust Account unless the same is caused by its own willful misconduct or gross negligence.  In no event shall the Indemnity Trustee be responsible or liable for special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Indemnity Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.  To the extent that, at law or in equity, the Indemnity Trustee has duties (including fiduciary duties) and Liabilities relating thereto to the Indemnity Trust, the other parties hereto or any beneficiary of the Indemnity Trust, it is hereby understood and agreed by the other parties hereto that such duties and Liabilities are replaced by the duties and Liabilities

15

HCMLPHMIT00000688

of the Indemnity Trustee expressly set forth in this Agreement.  The Indemnity Trustee shall have no Liability for any action taken, or errors in judgment made, in good faith by it or any of its officers, employees or agents, unless it shall have been grossly negligent in ascertaining the pertinent facts.  The permissive rights of the Indemnity Trustee to do things enumerated in this Agreement shall not be construed as a duty and, with respect to such permissive rights, the Indemnity Trustee shall not be answerable for other than its gross negligence or willful misconduct.  The Indemnity Trustee shall not be liable for any amount in excess of the value of the Indemnity Trust Assets.

(d)     The Indemnity Trustee shall take all steps and execute all instruments and documents necessary to effectuate the purpose of the Indemnity Trust and the activities contemplated herein, and take all actions necessary to comply with this Agreement and the obligations hereunder, but only upon receipt of appropriate written instructions from the Indemnity Trust Administrator.  The Indemnity Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Agreement at the request or direction of the Indemnity Trust Administrator, pursuant to the provisions of this Agreement, if the Indemnity Trustee is not satisfied that reasonable security or indemnity (satisfactory to the Indemnity Trustee in its sole and absolute discretion) against the costs, expenses and Liabilities which may be incurred by it in compliance with such request or direction is available to the Indemnity Trustee.

(e)     The Indemnity Trustee shall have no duty or responsibility whatsoever to determine that any Indemnity Trust Assets withdrawn from the Indemnity Trust Account pursuant to this Agreement will be used and applied in the manner provided for by this Agreement.  The Indemnity Trustee shall only be liable for such losses, damages or expenses which have been finally adjudicated by a court of competent jurisdiction to have directly resulted from its own fraud, willful misconduct, or gross negligence.

(f)     The Indemnity Trustee shall not be responsible for the existence, genuineness or value of any of the Indemnity Trust Assets, for the validity of title to the Indemnity Trust Assets, or for insuring the Indemnity Trust Assets or for the payment of taxes, charges, assessments or liens upon the Indemnity Trust Assets.

(g)     The Indemnity Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.  The Indemnity Trust shall promptly advance and reimburse the Indemnity Trustee for all reasonable out-of-pocket costs and expenses (including reasonable legal fees and expenses) incurred by the Indemnity Trustee in connection with the performance of its duties hereunder.  The terms of this paragraph shall survive termination of this Agreement and/or the earlier resignation or removal of the Indemnity Trustee.

(h)     The Indemnity Trustee shall not be required to risk or expend its own funds in performing its obligations under this Agreement.

(i)     The Indemnity Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document provided to the Indemnity Trustee by the Indemnity Trust

16

HCMLPHMIT00000689

Administrator or the Beneficiaries.  The Indemnity Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, attorneys, custodians or nominees, and the Indemnity Trustee shall not be responsible for any misconduct or negligence on the part of, or for the supervision of, any such agent, attorney, custodian or nominee appointed with due care by it.

(j)     The Indemnity Trustee shall be protected in acting upon any statement, notice, resolution, request, consent, order, certificate, report, appraisal, opinion, facsimile, electronic media, letter or other paper or document believed by the Indemnity Trustee to be genuine and to have been signed, sent or presented by the proper Party or Parties.  All notices to the Indemnity Trustee (unless otherwise provided therein) shall be deemed to be effective when received by an officer of the Indemnity Trustee with direct responsibility for the administration of this Agreement.

(k)     Unless otherwise provided in this Agreement, the Indemnity Trustee is authorized to follow and rely upon all written instructions given by the Indemnity Trust Administrator and by attorneys-in-fact acting under written authority furnished to the Indemnity Trustee by the Indemnity Trust Administrator, including instructions given by electronic media, letter and facsimile transmission, if the Indemnity Trustee believes such instructions to be genuine and to have been signed by the proper party or parties.  The Indemnity Trustee shall not incur any Liability to anyone resulting from actions taken by the Indemnity Trustee in reliance in good faith on such written instructions.

(l)     The Indemnity Trustee represents and warrants that (i) it is a national banking association; and (ii) it is not a parent, subsidiary or affiliate of the Grantor, any Beneficiary or the Indemnity Trust Administrator.

(m)     The Indemnity Trustee shall be entitled to rely on and shall not be liable for any action taken or omitted to be taken by the Indemnity Trustee in accordance with the advice of counsel or other professionals retained or consulted by the Indemnity Trustee.

(n)     The Indemnity Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Agreement, whether or not an original or a copy of such agreement has been provided to the Indemnity Trustee.  The Indemnity Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument, or document other than this Agreement.

(o)     Neither the Indemnity Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Grantor or the Indemnity Trust Administrator, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any Liability in connection with the malfeasance or nonfeasance by such party.  The Indemnity Trustee may assume performance by all such Persons of their respective obligations.  The Indemnity Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other Person.

HCMLPHMIT00000690

(p)     In the event that any Indemnity Trust Assets or other Assets of the Indemnity Trust shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the Indemnity Trust Assets or other Assets of the Indemnity Trust, the Indemnity Trustee is hereby expressly authorized, in its sole discretion, to respond as it deems appropriate or to comply with all writs, orders or decrees so entered or issued, or which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction.  In the event that the Indemnity Trustee obeys or complies with any such writ, order or decree it shall not be liable to any of the Parties or to any other person, firm or corporation, should, by reason of such compliance notwithstanding, such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

(q)     The Indemnity Trustee shall be entitled to request and receive written instructions from the Indemnity Trust Administrator and shall have no responsibility or Liability for any losses or damages of any nature that may arise from any action taken or not taken by the Indemnity Trustee in accordance with the written direction of the Indemnity Trust Administrator.

(r)     Notwithstanding anything to the contrary herein, the Indemnity Trustee shall have no duty to prepare or file any Federal or state tax report or return with respect to any funds held pursuant to this Agreement or any income earned thereon, except for the delivery and filing of tax information reporting forms required to be delivered and filed with the Internal Revenue Service.   With respect to the preparation, delivery and filing of such required tax information reporting forms and all matters pertaining to the reporting of earnings on funds held under this Agreement, the Indemnity Trustee shall be entitled to request and receive written instructions from the Indemnity Trust Administrator, and the Indemnity Trustee shall be entitled to rely conclusively and without further inquiry on such written instructions.   With respect to any other payments made under this Agreement, the Indemnity Trustee shall not be deemed the payer and shall have no responsibility for performing tax reporting.  The Indemnity Trustee's function of making such payments is solely ministerial and upon express direction of the Indemnity Trust Administrator.

4.2     Term of Service.  The Indemnity Trustee shall serve as the Indemnity Trustee for the duration of the Indemnity Trust, subject to resignation or removal.

4.3     Resignation or Removal of the Indemnity Trustee.

(a)     The Indemnity Trustee may resign at any time by giving not less than thirty (30) days' written notice thereof to the Indemnity Trust Administrator.  The Indemnity Trustee may be removed by the Indemnity Trust Administrator's delivery of not less than thirty (30) days' written notice of removal to the Indemnity Trustee.  Such resignation or removal shall become effective on the acceptance of appointment by a successor Indemnity Trustee and the transfer to such successor Indemnity Trustee of all Indemnity Trust Assets in accordance with Section 4.3(b) and any undisputed fees, expenses and indemnity due to the outgoing Indemnity Trustee are paid.  If the Indemnity Trust Administrator does not act within such 30-day period, the Indemnity Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Indemnity Trustee.

18

(b)     Upon receipt of the Indemnity Trustee's notice of resignation or delivery of notice of Indemnity Trustee's removal, the Indemnity Trust Administrator shall appoint a successor Indemnity Trustee.  Any successor Indemnity Trustee shall be a bank or trust company that is a member of the Federal Reserve System or chartered in the State of Delaware and shall not be a parent, a subsidiary or an affiliate of the Grantor or any of the Beneficiaries.  Upon the acceptance of the appointment as Indemnity Trustee hereunder by a successor Indemnity Trustee and the transfer to such successor Indemnity Trustee of all Indemnity Trust Assets, the resignation or removal of the Indemnity Trustee shall become effective.  Thereupon, such successor Indemnity Trustee shall succeed to and become vested with all the rights, powers, privileges and duties of the resigning or removed Indemnity Trustee, and the resigning or removed Indemnity Trustee shall be discharged from any future duties and obligations under this Agreement.

4.4     <u>Reporting</u>.     The Indemnity Trustee shall provide the Indemnity Trust Administrator, upon the inception of the Indemnity Trust Account, online electronic access to view the Indemnity Trust Account.  Thereafter, the Indemnity Trust Administrator will make available to any Beneficiary a written statement identifying in reasonable detail the balance of the Indemnity Trust Assets as of the applicable reporting date, plus a full accounting of all deposits (including amounts collected under the Indemnification Funding Note and any interest or investment income) and any withdrawals made during the applicable period and the effect of any investment losses; <u>provided</u>, <u>however</u>, that such written statements may be redacted for any sensitive information, as determined by the Indemnity Trust Administrator, in his sole and absolute discretion.

4.5     <u>Books and Records</u>.

(a)     The Indemnity Trustee shall maintain in respect of the Indemnity Trust books and records reflecting Indemnity Trust Assets in its possession and the income of the Indemnity Trust and payment of expenses, Liabilities, and claims against or assumed by the Indemnity Trust in such detail and for such period of time as is customary for the Indemnity Trustee in accordance with its ordinary and customary corporate trust business.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Indemnity Trust.  Except as otherwise provided herein, nothing in this Agreement requires the Indemnity Trustee to file any accounting or seek approval of any court with respect to the administration of the Indemnity Trust, or as a condition for managing any payment or distribution out of the Indemnity Trust Assets.

(b)     The Indemnity Trustee will provide the Indemnity Trust Administrator any books and records concerning the Indemnity Trust Assets upon the Indemnity Trustee's receipt of written direction from the Indemnity Trust Administrator.  The Indemnity Trust Administrator will thereafter promptly permit the Grantor, any Beneficiary or its respective agents, employees or independent auditors to examine, audit, excerpt, transcribe and copy, any non-privileged and non-confidential books, documents, papers and records relating to the Indemnity Trust Account or the Indemnity Trust Assets at the expense of such requesting Party or Beneficiary.  It is understood and agreed that the Indemnity Trustee shall only provide the information in its possession to the Indemnity Trust Administrator and shall have no duty or obligation to provide such information to any other person or entity.

19

4.6  [Reserved]

4.7 WTNA, as Indemnity Trustee or Delaware Trustee, shall not be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

4.8 Any corporation or association into which WTNA may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Delaware Trustee or the Indemnity Trustee is a party, will be and become the successor Delaware Trustee or Indemnity Trustee, as applicable, under this Agreement and will have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

4.9 Delaware Trustee.

  (a) The Delaware Trustee shall have the limited power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Indemnity Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Delaware Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement, in either case as may be directed in a writing delivered to the Delaware Trustee by the Indemnity Trust Administrator and upon which the Delaware Trustee shall be entitled to conclusively and exclusively rely; provided, however, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal Liability or to result in personal Liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Indemnity Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law. The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Indemnity Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law. Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Indemnity Trust. For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Indemnity Trustee or the Indemnity Trust Administrator set forth herein. The Delaware Trustee shall be one of the trustees of the Indemnity Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Delaware Statutory Trust Act and

HCMLPHMIT00000693

for taking such actions as are required to be taken by a Delaware Trustee under the Delaware Statutory Trust Act.  The duties (including fiduciary duties), Liabilities and obligations of the Delaware Trustee shall be limited to those expressly set forth in this Section 4.9(a) and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and Liabilities relating thereto to the Indemnity Trust, the other parties hereto or any beneficiary of the Indemnity Trust, it is hereby understood and agreed by the other parties hereto that such duties and Liabilities are replaced by the duties and Liabilities of the Delaware Trustee expressly set forth in this Agreement.

(b)    The Delaware Trustee shall serve until such time as the Indemnity Trust Administrator removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Indemnity Trust Administrator in accordance with the terms hereof.  The Delaware Trustee may resign at any time upon the giving of at least thirty (30) days' advance written notice to the Indemnity Trust Administrator; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Indemnity Trust Administrator in accordance with the terms hereof.  If the Claimant Trustee does not act within such 30-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(c)    Upon the resignation or removal of the Delaware Trustee, the Indemnity Trust Administrator shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee.  Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Delaware Statutory Trust Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Indemnity Trust Administrator and any undisputed fees, expenses and indemnity due to the outgoing Delaware Trustee are paid.  Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Agreement.

(d)    The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.  The Indemnity Trust shall promptly advance and reimburse the Delaware Trustee for all reasonable out-of-pocket costs and expenses (including reasonable legal fees and expenses) incurred by the Delaware Trustee in connection with the performance of its duties hereunder.  The terms of this paragraph shall survive termination of this Agreement and/or the earlier resignation or removal of the Delaware Trustee.

## ARTICLE V.
## TRUST INTERESTS

5.1    Interests Beneficial Only.  The beneficial interests afforded a Beneficiary hereunder shall not entitle the Beneficiaries to any title in or to the Indemnity Trust Assets (which title shall

21

be vested in the Indemnity Trust) or to any right with respect to the administration of the Indemnity Trust except with respect to reporting and the review of books and records as set forth in this Agreement. Further, the Beneficiaries (other than the Indemnity Trustee in such capacity) shall not have any right to direct the actions of the Indemnity Trustee with respect to the Indemnity Trust Assets or the Indemnity Trust Account, or to direct the actions of the Indemnity Trust Administrator.

5.2 <u>Transferability of Trust Interests</u>. No transfer, assignment, pledge, hypothecation, or other disposition of a Beneficiary's interest in the Indemnity Trust may be effected without the consent of the Indemnity Trust Administrator in his sole and absolute discretion, <u>provided</u> that any such transfer, assignment or hypothecation does not confer upon such assignee status as a Beneficiary under the Indemnity Trust. The Indemnity Trust Administrator may impose such conditions and other terms upon any transfer, assignment or hypothecation as he considers appropriate, in his sole and absolute discretion. In the event of an assignment pledge, hypothecation, or other disposition, the foregoing limitations on transferability shall continue to apply in all respects to such beneficial interest and shall be binding on the assignee of such beneficial interest.

5.3 <u>Effect of Death, Incapacity, or Bankruptcy</u>. The death, incapacity, or bankruptcy of any Beneficiary during the term of the Indemnity Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any other Beneficiary under this Agreement.

5.4 <u>Change of Address</u>. Any Beneficiary may, after the Effective Date, select an alternative address by providing notice to the Indemnity Trust Administrator and the Indemnity Trustee identifying such alternative address. Such notification shall be effective only upon receipt by the Indemnity Trust Administrator and the Indemnity Trustee. Absent actual receipt of such notice by the Indemnity Trust Administrator and an officer of the Indemnity Trustee responsible for the administration of this Agreement, neither the Indemnity Trust Administrator nor the Indemnity Trustee shall recognize any such change of distribution address.

## ARTICLE VI.
## TAX MATTERS

6.1 <u>Tax Treatment and Tax Returns</u>. It is intended that the Indemnity Trust Assets shall be treated as owned by the Grantor for federal and applicable state and local income tax purposes. The Grantor shall be responsible for causing to be prepared and filed in a timely fashion all tax returns of the Indemnity Trust relating to the transactions contemplated by this Agreement or otherwise contemplated hereby, and it shall send a copy of each such tax return to the Indemnity Trustee. The Indemnity Trustee, acting only upon the written direction of the Indemnity Trust Administrator, shall furnish to the Grantor all such information as it has in its possession and as may be reasonably required in connection with the preparation of such tax returns and shall execute such returns if required to do so by the applicable taxing authority. The Indemnity Trustee shall not be liable for any tax due and payable in connection with this Agreement except for any tax based on or measured by the income of the institution or person acting as the Indemnity Trustee resulting from the amounts paid to the Indemnity Trustee as fees or compensation for acting as the Indemnity Trustee hereunder. Each Party (other than the Indemnity Trustee and the Delaware

22

Trustee) shall provide the Indemnity Trustee with certified tax identification numbers by furnishing appropriate forms W-9 or W-8 and such other forms and documents that the Indemnity Trustee may request. Each such Party understands that if such tax reporting documentation is not provided and certified to the Indemnity Trustee, the Indemnity Trustee may be required by the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, to withhold a portion of any interest or other income earned on the investment of the Indemnity Trust Assets.

## ARTICLE VII.
## STANDARD OF CARE AND INDEMNIFICATION

7.1     Standard of Care.  Neither the Indemnity Trustee acting in its capacity as Indemnity Trustee nor the Indemnity Trust Administrator, acting in his capacity as the Indemnity Trust Administrator, shall be personally liable to the Indemnity Trust or to any person (including any Beneficiary) in connection with the affairs of the Indemnity Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such other court of competent jurisdiction, that the acts or omissions of the Indemnity Trustee or the Indemnity Trust Administrator, as the case may be, constituted fraud, willful misconduct, or gross negligence.

7.2     Indemnification.

(a)     At any time prior to the dissolution of the Grantor, the Grantor shall indemnify, defend and hold harmless the Indemnity Trustee, the Delaware Trustee, the Indemnity Trust Administrator, the Advisory Representatives and all current, former and future officers, directors, employees, representatives and/or agents of any of the Indemnity Trust, the Indemnity Trustee, the Delaware Trustee, the Indemnity Trust Administrator or any of their respective subsidiaries (each, an "Indemnified Party"), from and against and reimburse each Indemnified Party for any and all Liabilities of whatever kind or nature regardless of their merit, demanded, asserted or claimed against such Indemnified Party directly or indirectly relating to, or arising from, claims against such Indemnified Party by reason of its participation in the transactions contemplated hereby, including without limitation all reasonable costs associated with claims for damages to persons or property, and reasonable attorneys' and consultants' fees and expenses and court costs except to the extent caused by such Indemnified Party's fraud, willful misconduct, or gross negligence.  Promptly after receipt by an Indemnified Party of notification of the commencement of any proceeding, such Indemnified Party will promptly notify the Grantor in writing of such matter; provided, however, that the failure to provide such prompt notice to the Grantor shall not relieve the Grantor of Liability which it may have to such Indemnified Party hereunder.

(b)     At any time upon or following (i) the dissolution of Grantor or (ii) the Grantor's failure to satisfy a claim for indemnification of an Indemnified Party pursuant to Section 7.2(a), the Indemnity Trust shall indemnify, defend and hold harmless the Indemnified Parties, from and against and reimburse each Indemnified Party for any and all Liabilities of whatever kind or nature regardless of their merit, demanded, asserted or claimed against such Indemnified Party directly or indirectly relating to, or arising from, claims against such Indemnified Party by reason of its participation in the transactions contemplated hereby,

23

HCMLPHMIT00000696

including without limitation all reasonable costs associated with claims for damages to persons or property, and reasonable attorneys' and consultants' fees and expenses and court costs except to the extent caused by such Indemnified Party's fraud, willful misconduct, or gross negligence. Promptly after receipt by an Indemnified Party of notification of the commencement of any proceeding, such Indemnified Party will promptly notify the Indemnity Trust in writing of such matter; provided, however, that the failure to provide such prompt notice to the Indemnity Trust shall not relieve the Indemnity Trust of Liability which it may have to such Indemnified Party hereunder.

(c)     The provisions of this Section 7.2 shall survive the termination of this Agreement or the earlier of the resignation or removal of the Indemnity Trustee or the Indemnity Trust Administrator, as applicable.

7.3     Tax Indemnification.

(a)     To the extent that the Indemnity Trustee becomes liable for the payment of any taxes in respect of income derived from the investment of the Indemnity Trust Assets, the Indemnity Trustee shall satisfy such Liability to the extent possible from the Indemnity Trust Assets.

(b)     At any time prior to the dissolution of the Grantor, the Grantor shall indemnify, defend and hold the Indemnity Trustee harmless from and against any tax, late payment, interest, penalty or other Liability that may be assessed against the Indemnity Trustee on or with respect to the Indemnity Trust Assets and the investment thereof unless such tax, late payment, interest, penalty or other expense was finally adjudicated to have been directly caused by the gross negligence or willful misconduct of the Indemnity Trustee.

(c)     At any time upon or following (i) the dissolution of Grantor or (ii) the Grantor's failure to satisfy a claim for indemnification pursuant to Section 7.3(b), the Indemnity Trust shall indemnify, defend and hold the Indemnity Trustee harmless from and against any tax, late payment, interest, penalty or other Liability that may be assessed against the Indemnity Trustee on or with respect to the Indemnity Trust Assets and the investment thereof unless such tax, late payment, interest, penalty or other expense was finally adjudicated to have been directly caused by the gross negligence or willful misconduct of the Indemnity Trustee.

(d)     The indemnification provided by this Section 7.3 is in addition to the indemnification provided in Section 7.2 and shall survive the resignation or removal of the Indemnity Trustee and the termination of this Agreement.

## ARTICLE VIII.
## TERMINATION

8.1     Term.

(a)     The Indemnity Trust shall be dissolved and its affairs shall be wound up in accordance with this Agreement and Delaware Statutory Trust Act upon the earlier of (i) the later of (x) the resolution by Final Order of all litigation, claims or proceedings in any forum of any kind which could give rise to an Indemnity Obligation and the payment in full of all

24

Indemnity Obligations related thereto and (y) the expiration of all applicable statutes of limitations and any applicable tolling of any such statutes of limitations (in either case of (x) or (y), as determined by agreement of (A) the Indemnity Trust Administrator (in his sole, absolute discretion) and (B) a majority of the remaining Advisory Representatives willing to act (in their respective sole absolute discretion)) for any claims that if brought against a Beneficiary would be or would have been subject to indemnification under Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub-Trust Agreement or Section 10 of the Reorganized Limited Partnership Agreement, as applicable, and (ii) the mutual agreement to dissolve the Indemnity Trust by (A) the Indemnity Trust Administrator and (B) a majority of the remaining Advisory Representatives willing to act, and, if required, entry of an order by the Bankruptcy Court or another court of competent jurisdiction authorizing the termination of the Indemnity Trust.  Notwithstanding the foregoing, if the Indemnity Trust is to be dissolved pursuant to Section 8.1(a)(ii) hereof prior to the expiry of all Indemnification Obligations, (x) if the Grantor is still in existence, then the Grantor, at its expense, shall obtain insurance coverage acceptable to (A) the Indemnity Trust Administrator and (B) a majority of the remaining Advisory Representatives willing to act prior to such dissolution; or (y) if the Grantor is no longer in existence, then the Indemnity Trust Administrator shall, using Indemnity Trust Assets, obtain insurance coverage acceptable to (A) the Indemnity Trust Administrator and (B) a majority of the remaining Advisory Representatives willing to act prior to such dissolution.  For the avoidance of doubt, neither the liquidation, dissolution nor termination and cancellation of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, nor the legal existence of the Grantor or any other party will have any effect on the legal existence of the Indemnity Trust.

(b)    Upon the determination of the Indemnity Trust Administrator that the Claimant Trust has substantially completed its efforts to monetize and distribute its assets or such earlier date that the Indemnity Trust Administrator shall determine in his sole and absolute discretion, the Indemnity Trust Administrator and majority of the remaining Advisory Representatives willing to act shall work in good faith to replace the Indemnity Trust with a suitable third-party insurance policy providing then suitable protections to Beneficiaries, in each case, as determined in the sole, absolute discretion of (i) the Indemnity Trust Administrator and (ii) a majority of the remaining Advisory Representatives willing to act.

(c)    At any time prior to the dissolution of the Indemnity Trust as described in Section 8.1(d), if (i) the Indemnity Trust Administrator (in his sole and absolute discretion) and (ii) a majority of the remaining Advisory Representatives willing to act (in their respective sole and absolute discretion) determine that the Indemnity Trust Assets are not reasonably necessary to satisfy current or potential Indemnification Obligations to all persons who are or might become Beneficiaries, the Indemnity Trust Administrator may transfer such excess Indemnity Trust Assets (A) at any time prior to the dissolution of the Claimant Trust, to the Claimant Trust for use by the Claimant Trust in accordance with the Claimant Trust Agreement, and (B) at any time upon or following the dissolution of the Claimant Trust, according to the same distribution methodology contemplated in Section 9.2 of the Claimant Trust Agreement in effect as of the effective date of the dissolution of the Claimant Trust; provided, however, that in no event will any such transferee be entitled to the books, records and or privileges of the Indemnity Trust; provided, further, that for the avoidance of doubt, any person or entity's contractual right to receive or recover any such remaining Indemnity Trust Assets as set forth herein does not make

25

HCMLPHMIT00000698

them or any other person a beneficiary of the Indemnity Trust or this Agreement; and provided, further, that the Indemnity Trust Assets shall at no time be less than $32 million (valued according to their market value at the time of transfer into the Indemnity Trust Account) unless otherwise provided by Section 8.1(a) or (b) of this Agreement.  Any such determination by the (i) the Indemnity Trust Administrator and (ii) a majority of the remaining Advisory Representatives willing to act is final and not subject to review, and in relation to any such determination and transfer, the Indemnity Trust Administrator, the Advisory Representatives, the Oversight Board, the Indemnity Trustee, and the Delaware Trustee will be entitled to the protections of this Agreement, including but not limited to Article VII, Article VIII, and Article IX.

        (d)    Upon the dissolution of the Indemnity Trust and in connection with winding up the Indemnity Trust's affairs, any remaining Indemnity Trust Assets (as reduced by payments (actual and reserved) and provisions to pay all claims and obligations of the Indemnity Trust, payments to any Beneficiary or as used to purchase insurance for the benefit of the Beneficiaries to augment or replace the Indemnity Trust or as paid out in accordance with Section 9.12 hereof) will be transferred at the written direction of the Indemnity Trust Administrator (i) at any time prior to the dissolution of the Claimant Trust, to the Claimant Trust and (ii) at any time following the dissolution of the Claimant Trust, according to the same distribution methodology contemplated in Section 9.2 of the Claimant Trust Agreement in effect as of the effective date of the dissolution of the Claimant Trust provided, however, that in no event will any such transferee be entitled to the books, records and or privileges of the Indemnity Trust; provided, further, that for the avoidance of doubt, any person or entity's contractual right to receive or recover any such remaining Indemnity Trust Assets as set forth herein does not make them or any other person a beneficiary of the Indemnity Trust or this Agreement.  The Indemnity Trust Administrator shall be solely responsible for the dissolution, liquidation and winding up of the affairs of the Indemnity Trust.  Upon the dissolution of the Indemnity Trust and completion of the winding up of the Assets, Liabilities and affairs of the Indemnity Trust pursuant to the Delaware Statutory Trust Act, the Indemnity Trustee (acting only at the written direction of the Indemnity Trust Administrator) shall prepare, execute and file a certificate of cancellation with the State of Delaware to terminate the Indemnity Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date").  If the Delaware Trustee's signature is required for purposes of filing such certificate of cancellation, the Indemnity Trust Administrator shall provide the Delaware Trustee with written direction to execute such certificate of cancellation, and the Delaware Trustee shall be entitled to conclusively and exclusively rely upon such written direction without further inquiry.

    8.2    Termination of Duties.  Except as otherwise specifically provided herein, upon the Termination Date of the Indemnity Trust, the Indemnity Trustee, the Indemnity Trust Administrator and the Delaware Trustee shall have no further duties or obligations hereunder.

    8.3    No Survival.    The rights of Beneficiaries hereunder shall not survive the Termination Date.

26

## **ARTICLE IX.** **MISCELLANEOUS**

9.1     Trust Irrevocable.   Except as set forth in this Agreement, establishment of the Indemnity Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Beneficiaries.

9.2     Beneficiaries have No Legal Title to the Indemnity Trust Assets.   No Beneficiary shall have legal title to any part of the Indemnity Trust Assets.

9.3     Agreement for Benefit of Parties Only.   Nothing herein, whether expressed or implied, shall be construed to give any person other than the Parties, the Beneficiaries and the Indemnified Parties any legal or equitable right, remedy or claim under or in respect of this Agreement.   The Indemnity Trust Assets shall be held for the sole and exclusive benefit of the Beneficiaries.   The Beneficiaries and the Indemnified Parties will have the right to enforce the terms of this Agreement in case the Indemnity Trust Administrator fails to perform its obligations hereunder as determined by the Bankruptcy Court or another court of competent jurisdiction.

9.4     Limited Recourse.   Notwithstanding anything herein to the contrary, all obligations of the Indemnity Trust under this Agreement shall be limited recourse obligations of the Indemnity Trust payable solely from the Indemnity Trust Assets.   All obligations of and any claims against the Indemnity Trust hereunder shall be extinguished and not thereafter revive in the event that, at any time, all of the Indemnity Trust Assets are exhausted (including, for the avoidance of doubt, after giving effect to funds subsequently received as payments on the Indemnification Funding Note or otherwise) or distributed pursuant to Section 8.1(d).   None of the Beneficiaries nor any other person or entity entitled to payments hereunder (including, without limitation pursuant to Sections 7.2, 7.3 and 8.1(c) and (d) hereof) will have recourse to the Indemnity Trust Administrator, the Advisory Representatives, the Oversight Board, Indemnity Trustee or the Delaware Trustee or any of their respective affiliates or their respective officers, directors, employees, representatives or respective assets.

9.5     Notices.   All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

(a)     If to the Grantor:

> Grantor
> c/o Highland Capital Management, L.P.
> 100 Crescent Court, Suite 1850
> Dallas, Texas 75201

With a copy to:

> Pachulski Stang Ziehl & Jones LLP
> 10100 Santa Monica Blvd, 13th Floor
> Los Angeles, CA 90067
> Attn:   Jeffrey Pomerantz (jpomerantz@pszjlaw.com)

HCMLPHMIT00000700

Ira Kharasch (ikharasch@pszjlaw.com)
Gregory Demo (gdemo@pszjlaw.com)

(b)    If to the Indemnity Trust Administrator:

Indemnity Trust Administrator
c/o Highland Capital Management, L.P.
100 Crescent Court, Suite 1850
Dallas, Texas 75201
Attention:  James P. Seery, Jr.

With a copy to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067
Attn:    Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
         Ira Kharasch (ikharasch@pszjlaw.com)
         Gregory Demo (gdemo@pszjlaw.com)

(c)    If to the Indemnity Trustee:

Indemnity Trustee
Wilmington Trust, National Association
1100 North Market Street
Wilmington, DE 19890
Attn:  Corporate Trust Administration/Neumann Marlett III
Email:  nmarlett@wilmingtontrust.com
Phone:  (302) 636-6728
Fax:  (302) 636-4145

(d)    If to the Delaware Trustee

Wilmington Trust, National Association
1100 North Market Street
Wilmington, DE 19890
Attn:  Corporate Trust Administration/Neumann Marlett III
Email:  nmarlett@wilmingtontrust.com
Phone:  (302) 636-6728
Fax:  (302) 636-4145

Notice mailed shall be effective on the date mailed or sent.  Any Party may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 9.4 to the other Parties of such change.

9.6    Amendments.  Any change or modification to this Agreement will be made by written amendment to this Agreement and signed by the Parties hereto; provided, however, that

28

any amendment to this Agreement that is materially detrimental to a Beneficiary will not be effective unless consented to in writing by such Beneficiary.

9.7    Severability.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

9.8    Counterparts.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.  This Agreement and the exhibits hereto set forth the entire agreement and understanding of the parties related to this transaction and supersedes all prior agreements and understandings, oral or written.

9.9    Headings; References.  The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

9.10    Governing Law; Waiver of Jury Trial.  This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance, but without reference to its conflict of law provisions.  Each Party hereto irrevocably waives, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement or the transactions contemplated hereby.  Beneficiaries are deemed to have waived any right to a trial by jury.

9.11    Consent to Jurisdiction.  Any action brought by a Beneficiary must be brought in the Bankruptcy Court.  Each of the Parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or Liability arising under or by reason of this Agreement, or any act or omission of the Indemnity Trustee or the Indemnity Trust Administrator. If the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the State of Delaware.

9.12    Okada Settlement.

(a)    On January 21, 2025 and pursuant to the Okada Settlement Agreement, Okada has  transferred, or has cause to be transferred, to the Indemnity Trust, Acis 7 Proceeds, which were transferred and used in accordance with the Okada Settlement Agreement and this Section 9.12.  On January 22, 2025 and in accordance with the Okada Settlement Agreement, the Indemnity Trust Administrator provide written notice to Okada of such receipt by the Indemnity Trust, including the amount of gross proceeds received.  Further, within five (5) Business Days of receipt of any funds on account of Okada's Special Limited Partnership Interest ("SLP") in PetroCap Incentive Partners II, LP (the "PetroCap Proceeds"), Okada will provide written notice to the Indemnity Trust Administrator of such receipt and the amount of gross proceeds received, whereupon a written request from the Indemnity Trust Administrator, Okada

29

will provide information reasonably related to SLP that Okada is permitted to provide consistent with his confidentiality or other obligations, for the limited purpose of the Indemnity Trust Administrator assessing the value of and funds received on account of the SLP.  If Okada determines that he is unable to provide any such information to the Indemnity Trust Administrator based on confidentiality or other obligations, he will cooperate with the Indemnity Trust Administrator to address those concerns to enable such information to be provided.

(b)     On or after January 1, 2025,  the Indemnity Trust Administrator may in writing demand that Okada provide to the Indemnity Trust the lesser of (i) $1,000,000 and  (ii) 50% of the gross amount of PetroCap Proceeds Okada actually received as of the date of such demand (the "PetroCap Proceeds Demand"); provided that the PetroCap Proceeds Demand include a written representation by the Indemnity Trust Administrator that all Indemnity Trust Assets have been or will imminently be exhausted and that such demand be made no more than once (assuming the timely and full satisfaction of such demand) by the Indemnity Trust Administrator.  If the PetroCap Proceeds Demand is fully satisfied by Okada in a timely manner, Okada's contingent funding obligation under the Okada Settlement Agreement shall be extinguished and no further PetroCap Proceeds Demand may be made by the Indemnity Trust Administrator.

(c)     The Acis 7 Proceeds and any PetroCap Proceeds shall be maintained as part of the Indemnity Trust Account, but accounted for and tracked separately from other Indemnity Trust Assets.  The Acis 7 Proceeds and any PetroCap Proceeds transferred to the Indemnity Trust Account may be used in the same authorized manner as other Indemnity Trust Assets, but used only as "last out" funds after all other cash and other Indemnity Trust Assets are expended or otherwise disbursed in accordance with the terms of this Agreement.  Further, upon written request from Okada to the Indemnity Trust Administrator, the Indemnity Trust Administrator or the Trust Administrator, as applicable, shall provide information as to the remaining amounts of Acis 7 Proceeds and/or PetroCap Proceeds held by the Indemnity Trust.

(d)     On the earlier of (x) the winding-up of the Indemnity Trust and (y) any disbursement of Indemnity Trust Assets to the Claimant Trust (or any other disbursement in accordance with Article VIII), any unused portion of the Acis 7 Proceeds or the PetroCap Proceeds, plus any interest earned on those proceeds, shall be paid to Okada prior to any distributions of other Indemnity Trust Assets in accordance with Section 8.1(d); provided, that Okada shall provide to the Indemnity Trust and the Indemnity Trust Administrator a bring down of the release provided in paragraph 10 of the Okada Settlement Agreement as a condition to the release of such Indemnity Trust Assets to Okada.

(e)     The Parties acknowledge that Okada retains a reversionary interest in the Acis 7 Proceeds and the PetroCap Proceeds (to the extent they actually exist and are deposited into the Indemnity Trust Account), and to the extent they are not expended or disbursed pursuant to the terms of this Agreement, any unused portion of the Acis 7 Proceeds and/or PetroCap Proceeds shall be returned to Okada in accordance with Section 9(d).  For the avoidance of doubt, Okada's right to recover any unused portion of Acis 7 Proceeds and/or PetroCap Proceeds as set forth herein does not make Okada or any of the Okada Parties a beneficiary of the Indemnity Trust or this Agreement.

30

[Remainder of Page Intentionally Blank]

SUBJECT TO CONFIDENTIALITY AGREEMENT

31

HCMLPHMIT00000704

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Claimant Trust, as Grantor

By: _____
      James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

James P. Seery, Jr., as Indemnity Trust Administrator

By: _____
      James P. Seery, Jr., not individually but solely in his capacity as the Indemnity Trust Administrator

Wilmington   Trust,   National   Association,   as Indemnity Trustee

By: _____

Wilmington   Trust,   National   Association,   as Delaware Trustee

By: _____

SUBJECT TO CONFIDENTIALITY AGREEMENT

## EXHIBIT A

### Form of Indemnification Funding Note

## UNSECURED PROMISSORY NOTE

August [●], 2021

FOR VALUE RECEIVED, the undersigned, Highland Capital Management L.P., Claimant Trust, and Litigation Sub-Trust, (collectively, "Payors") jointly and severally hereby promise to pay to the Indemnity Trust (the "Payee") the Principal Amount (defined below), as provided in this promissory note (this "Indemnification Funding Note").

### Principal Amount

At all times, the amount owed under this Indemnification Funding Note (the "Principal Amount") shall be equal to TWENTY FIVE MILLION DOLLARS ($25,000,000) **less** the value of any Assets held by the Indemnity Trust. The Principal Amount shall be determined and documented by the Indemnity Trust Administrator and paid in accordance with the payment terms herein. Capitalized terms utilized herein, but not defined have the meanings ascribed to them in the Indemnity Trust Agreement, effective as of August 16, 2021 (the "Agreement").

### Payment

Payment of the Principal Amount shall be made, in full or in part, on the earlier of (a) demand for payment from the Indemnity Trust Administrator or (b) the date at which the combined Net Asset Value of Highland Capital Management L.P., the Claimant Trust, and the Litigation Sub-Trust is less than 200% of the Principal Amount. Subject to the foregoing, the Claimant Trustee will have sole and absolute discretion to determine the timing and amount of payments of the Principal Amount consistent with his view of liquidity needs of the Claimant Trust and related entities and the requirements of any financing agreement binding on the Claimant Trust. Upon the Claimant Trustee's determination that a payment of the Principal Amount in whole or in part should be made, the amount of the payment shall be due within five (5) days of such a determination. *Notwithstanding anything in the foregoing*, no payment shall be required to be made at any time if such payment would cause Highland Capital Management L.P., the Claimant Trust, or the Litigation Sub-Trust to be in default under or in violation of that certain *Financing Agreement*, dated as of August 11, 2021, by and among, Highland Capital Management, L.P. and Trussway Industries, LLC, as borrowers, each of the entities listed as guarantors thereon, the lenders from time to time party thereto, and Blue Torch Finance LLC (the "Exit Financing Agreement").

For the avoidance of doubt, the foregoing payments of Principal Amount will be senior to any distribution to beneficiaries under the Claimant Trust. In the event that the liquid assets of the Claimant Trust, the Litigation Sub-Trust, and Highland Capital Management L.P. are insufficient to satisfy the foregoing payments, the Claimant Trustee must take all reasonable action, subject in all respects to the terms of the Exit Financing Agreement, to satisfy such obligations under the Indemnification Funding Note, including accessing any available credit lines or third party

A-1

HCMLPHMIT00000706

leverage, and no current payments to Claimant Trust beneficiaries will be made until all current amounts of Principal Amount due have been made.

## Interest

The Indemnification Funding Note shall not bear interest, other than that which must be imputed under applicable law.

## Governing Law

This Indemnification Funding Note shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance, but without reference to its conflict of law provisions.

Executed as of August [●], 2021

    *Payors*:

    HIGHLAND CLAIMANT TRUST

By: _____
    James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

    HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
    James P. Seery, Jr., not individually but solely in his capacity as Chief Executive Officer

    HIGHLAND LITIGATION TRUST

By: _____
    Marc Kirschner, not individually but solely in his capacity as the Litigation Trustee

A-2

## EXHIBIT B

### Form of Beneficiary Withdrawal Request

Indemnity Trust Administrator
[insert contact info for Indemnity Trust Administrator]

with a copy to:

[_____]
[insert contact info for the applicable Beneficiary]

[DATE]

Reference is made to the Indemnity Trust Agreement, effective as of _____, 2021 (as amended from time to time, the "<u>Indemnity Trust Agreement</u>"), by and among the Claimant Trust, as grantor (the "<u>Grantor</u>"), the Indemnity Trust Administrator, Wilmington Trust, National Association ("<u>WTNA</u>"), as indemnity trustee (the "<u>Indemnity Trustee</u>"), and WTNA, as the Delaware Trustee. Capitalized terms used herein shall have the meanings assigned thereto in the Indemnity Trust Agreement.

[In accordance with Section 2.4(c) of the Indemnity Trust Agreement, the undersigned hereby certifies that a claim for indemnification was made under [Section 8.2 of the Claimant Trust Agreement][Section 8.2 of the Litigation Sub-Trust Agreement][Section 10 of the Reorganized Limited Partnership Agreement], but that [he][she][entity name] did not receive full payment within fourteen (14) days of submitting such claim for indemnification. A copy of such claim and all underlying documentation is attached hereto as Schedule A.][1]

The undersigned hereby requests the Indemnity Trustee to pay an amount equal to $[_____] out of the funds on deposit in the Indemnity Trust Account. A breakdown of the amounts payable by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, to the undersigned with respect to the Indemnity Obligations is attached hereto as Schedule B.

Wire instructions for the undersigned are attached hereto as Schedule C.

By executing and delivering this Beneficiary Withdrawal Request, the undersigned acknowledges and agrees that any claim for indemnification made hereby is made pursuant to, and is subject in all respects to, the express terms of the [Claimant Trust Agreement] [Litigation Sub-Trust Agreement] [Reorganized Limited Partnership Agreement].

The undersigned irrevocably waives, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to this request for indemnification and consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or Liability arising hereunder. If the Bankruptcy Court either declines to exercise

---

[1] To be omitted from any Beneficiary Withdrawal Requests made pursuant to Section 2.4(d).

HCMLPHMIT00000708

jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the Northern District of Texas.


[_____], as Beneficiary


By:_____
      Name:
      Title:

SUBJECT TO CONFIDENTIALITY AGREEMENT

B-2

HCMLPHMIT00000709

Schedule A[2]

---

[2] To be omitted from any Beneficiary Withdrawal Requests made pursuant to Section 2.4(d).

HCMLPHMIT00000710

Schedule B

SUBJECT TO CONFIDENTIALITY AGREEMENT

HCMLPHMIT00000711

**EXHIBIT C**

**Form of Withdrawal Notice**

Indemnity Trustee
[insert contact info for Indemnity Trustee]

with a copy to:

[_____]
[insert contact info for the applicable Beneficiary]


[DATE]

Reference is made to the Indemnity Trust Agreement, effective as of August 16, 2021 (as amended from time to time, the "Indemnity Trust Agreement"), by and among the Claimant Trust, as grantor, the Indemnity Trust Administrator, Wilmington Trust, National Association ("WTNA"), as indemnity trustee (the "Indemnity Trustee"), and WTNA, as the Delaware Trustee, and (ii) the Beneficiary Withdrawal Request from [insert Beneficiary name] dated [insert date]. Capitalized terms used herein shall have the meanings assigned thereto in the Indemnity Trust Agreement.

In accordance with Section 2.4(e) of the Indemnity Trust Agreement, the Indemnity Trust Administrator hereby directs the Indemnity Trustee to pay an amount equal to $[_____] out of the funds on deposit in the Indemnity Trust Account by wire transfer to the following account:

[Insert wire instructions for the applicable Beneficiary]


Indemnity Trust Administrator


By: _____

James P. Seery, Jr., not individually but solely in his capacity as the Indemnity Trust Administrator

C-1

REVISED DRAFT

**PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON**

**PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION**

**PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA**

April 15, 2025

DRAFT Potential Settlement Structure with DAF and HMIT

**HMIT**

- **Settlement of remanded motion to sue** – HCMLP, the Claimant Trust, and HMIT settle existing motion to sue and all other claims with prejudice for a cash payment of [$500k]
- **Allowance of claim** - HCMLP to allow HMIT Class 10 interest in the amount of ~$337mm (calculated as ~$395mm Petition Date capital account, less ~$58mm P&I outstanding on HMIT note as of Petition Date), subject to:
  - The HMIT allowed Class 10 interest is not transferable
  - HMIT releases all claims and accepts the "Litigation Protections" – see separate document containing the releases and other required provisions – which eliminate claims and limit the Class 10 allowed interest
  - LT releases HMIT from all other claims in the LT litigation and otherwise
  - LT transfers to holders of allowed Class 10 interests all remaining LT litigation (after HMIT and DAF/CLO Holdco releases) "as-is, where-is" along with all documents produced in the LT case to date
    - Such causes of action are limited to the currently stayed litigation and other causes of action that may exist related to former employees Ellington and Leventon
    - If for any reason the transfer of the LT litigation is nullified, the settlement will not be affected
  - Complete cessation and withdrawal of any other litigation among the parties
  - Class 10 remains senior to Class 11 as required by the Plan
- **Court Approval –** Settlement and allowance of Class 10 Claim subject to approval of the Bankruptcy Court

**DAF**

- **Settlement of DAF Claims** – HCMLP, the Claimant Trust, and DAF/CLO Holdco settle all claims underlying the current Fifth Circuit appeal and all other claims with

**REVISED DRAFT**

prejudice for a cash payment of $[2mm] within [10] business days of execution of the settlement; the Fifth Circuit appeal will be dismissed with prejudice within [10] business days of execution of the settlement

- o HCMLP will purchase DAF's right to distribution from HCLOF related to Acis 6, as is - where is, without representation except for unencumbered ownership, for $[3mm] cash, to be paid within [10] business days of execution of the settlement; DAF releases HCLOF from any claims related to Acis 6 distributions
- o DAF/CLO Holdco release all claims and accept the "Litigation Protections" – see separate document containing the releases and other required provisions
- o LT releases DAF/CLO Holdco from all other claims in the LT litigation and otherwise
- o Complete cessation and withdrawal of any other litigation among the parties
- o Settlement will be filed with the Bankruptcy Court and "so ordered"

**Distributions**

- **Initial Interim Cash Distributions** – Within [91] days of the receipt of a final/non-appealable order not subject to certiorari:
  - o The Indemnity Trust will distribute $[10]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement
  - o [Subject to Class 9 Approval], the Indemnity Trust will distribute $[10]mm cash directly to holders of allowed Class 10 interests
    - ▪ On approval of the settlement by the Bankruptcy Court, the Indemnity Trust will set up a separate $[10]mm reserve for the Initial Interim Cash Distribution which reserve will be held in UST on the same terms as other Indemnity Trust holdings pending distribution to Class 10 interest holders or reversal/remand of the settlement
    - ▪ Any payments on the Dugaboy Note from the date of Bankruptcy Court approval of the settlement to the date of the Initial Interim Cash Distributions will be held by the Indemnity Trust in a separate account and also be paid to holders of allowed Class 10 interests
      - • The actual dollar amount of any such P+I payments paid will reduce the Class 10 interests outstanding

**REVISED DRAFT**

- **Subsequent Distribution(s)** - Following the Initial Interim Cash Distributions, most, if not all remaining assets will be held by the Indemnity Trust, except for potentially the Disputed Claims Reserve (if the pending claim is not fully resolved) and cash at the Claimant Trust and HCMLP (indirectly owned by the Indemnity Trust) to be used in the wind-down of those entities with any excess amounts contributed/distributed to the Indemnity Trust
  - On April 1, 2028, if no threats, demands, or litigations have been brought against the Indemnity Trust or its beneficiaries:
    - The Indemnity Trust will distribute ~$[11]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement, satisfying the remainder of the Class 9 interests outstanding
    - The Indemnity Trust will distribute $[5]mm cash directly to holders of allowed Class 10 interests
    - Note Cash or In-Kind Distribution – At the election of HMIT, the Indemnity Trust will either (a) sell the currently $[17.6]mm face value (P+I) promissory note receivable from Dugaboy Investment Trust to HCMLP that has been irrevocably participated (and may be assigned if it defaults) to the Indemnity Trust (the "Dugaboy Note") and distribute the net proceeds (plus all P+I payments on the Dugaboy Note from the Interim Cash Distribution Date to April 1, 2028) to holders of allowed Class 10 interests or (b) assign the Dugaboy Note directly to holders of allowed Class 10 interests
      - For purposes of tracking progress toward the ~$337mm Class 10 interest:
        - if the Dugaboy Note is sold, the distribution will be valued at the amount of cash distributed;
        - if the Dugaboy Note is distributed in kind, the distribution will be valued at fair market value as determined by the Indemnity Trust Administrator
      - Assumes the Dugaboy Note continues to perform; if there is a default prior to April 1, 2028, the Indemnity Trust will accelerate the Dugaboy Note and pursue full collection plus cost of collection
        - If distribution of the Dugaboy Note is to be effected on April 1, 2028 and collection litigation has been commenced, at its election, holders of allowed Class 10 interests can receive, the collected balance or the

**REVISED DRAFT**

litigation or elect to have the Indemnity Trust continue the litigation and subsequently pay the proceeds to holders of allowed Class 10 interests

- o  As it pertains to the Disputed Claims Reserve, Highland will object to the Daugherty tax POC (final remaining pending claim).  Following a final non-appealable order resolving the claim, any remaining funds will be distributed to Class 9 or, if Class 9 has been paid in full, to holders of allowed Class 10 interests

- **"Final Distribution"** - After April 1, 2029, if no threats, demands, or litigations have been brought against beneficiaries of the Indemnity Trust and all statutes of limitation (SOLs) and any potentially applicable tolling thereof have expired, at the Indemnity Trust Administrator's sole discretion, any excess remaining funds in the Indemnity Trust shall be paid out in accordance with the Plan and the Indemnity Trust Agreement (i.e. to holders of allowed Class 10 interests, up to allowed amounts) in conjunction with the dissolution, wind down and cancellation of the Indemnity Trust
  - o  The Indemnity Trust Administrator will consult with [Mark Patrick] regarding potentially applicable SOLs and tolling

- **Other**
  - o  **Extension of Claimant Trust –** A one-year extension for the Claimant Trust will be sought in the bankruptcy court.  During the 1-year extension period, the Claimant Trust will be placed into dissolution and begin its winding up.
    - ▪  The Indemnity Trust will covenant not to transfer any funds to the Claimant Trust following the date of final non-appealable approval of the HMIT settlement
  - o  **HCMLP wind down –** the remaining unliquidated assets of the estate, including HCMLP, itself, will be retained within the Indemnity Trust and will be liquidated.
    - ▪  HCMLP personnel will complete the liquidation, dissolution, cancellation, tax compliance, and any other winding up activities for the remaining entities under its purview, including HCMLP.
    - ▪  Any excess amounts remaining at cancellation of HCMLP will be distributed to the Indemnity Trust.

**REVISED DRAFT**

- ▪ The Indemnity Trust will covenant not to transfer any funds to HCMLP following the date of final non-appealable approval of the HMIT settlement
  - HCMLP will have a funding agreement with the Claimant Trust to assure that the Claimant Trust has sufficient funds to complete its wind-down
  - Any excess funds in the Claimant Trust at its cancellation will be contributed to the Indemnity Trust; excess funds at HMLP will be distributed to the Indemnity Trust

o **HCMLP and its general partner –** While HCMLP will be placed into dissolution, the entity will continue to survive during its winding up period, during which time it may continue to defend inbound litigation, prosecute outbound litigation, maintain its books and records, and monetize its remaining assets.  HCMLP's general partner will be dissolved, wound-down and cancelled along with HCMLP

o **Claimant Trust Oversight Board –** Subject to the Plan and Claimant Trust agreement, it is anticipated that the members of the Oversight Board will continue in their existing roles until the final/non-appealable order approving the HMIT settlement is received

o **Information rights to HMIT –** After Bankruptcy Court approval of the HMIT settlement, per the Claimant Trust Agreement, except that:
  - ▪ HCMLP will review forecasted expenses with [Mark Patrick] at his request, but not more often than quarterly, and will work in good faith to reduce expenses where possible

o **Approval rights –** None, other than as specified elsewhere

o **Duties to HMIT –** None before or after vesting/Bankruptcy Court approval of the HMIT settlement

o **Compensation –** CEO and employee compensation remains governed by existing agreements with the oversight of the Claimant Trust Oversight Board; following the vesting of HMIT's interests, no changes will be permitted to those agreements without HMIT written consent; CEO maintains ability to maintain or reduce headcount in his absolute discretion

**REVISED DRAFT**

**PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON**

**PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION**

**PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA**

April ~~8~~15, 2025

DRAFT Potential Settlement Structure with DAF and HMIT

**HMIT**

- **Settlement of remanded motion to sue** – HCMLP, the Claimant Trust, and HMIT settle existing motion to sue and all other claims with prejudice for a cash payment of [$500k]
- **Allowance of claim** - HCMLP to allow HMIT Class 10 interest in the amount of ~$337mm (calculated as ~$395mm Petition Date capital account, less ~$58mm P&I outstanding on HMIT note as of Petition Date), subject to:
  - The HMIT allowed Class 10 interest is not transferable
  - HMIT ~~release~~releases all claims and accepts the "Litigation Protections" – see separate document containing the releases and other required provisions – which eliminate claims and limit the Class 10 allowed interest
  - LT releases HMIT from all other claims in the LT litigation and otherwise
  - LT transfers to ~~HMIT~~holders of allowed Class 10 interests all remaining LT litigation (after HMIT and DAF/CLO Holdco releases) "as-is, where-is" along with all documents produced in the LT case to date
    - Such causes of action are limited to the currently stayed litigation and other causes of action that may exist related to former employees Ellington and Leventon
    - If for any reason the transfer of the LT litigation is nullified, the settlement will not be affected
  - Complete cessation and withdrawal of any other litigation among the parties
  - Class 10 remains senior to Class 11 as required by the Plan
- **Court Approval –** Settlement and allowance of Class 10 Claim subject to approval of the Bankruptcy Court

**DAF**

- **Settlement of DAF Claims** – HCMLP, the Claimant Trust, and DAF/CLO Holdco ~~will~~ settle ~~the~~all claims underlying the current Fifth Circuit appeal and all other claims

**REVISED DRAFT**

with prejudice for a cash payment of [$250k];$[2mm] within [10] business days of execution of the settlement; the Fifth Circuit appeal will be dismissed with prejudice within [10] business days of execution of the settlement

- o HCMLP will purchase DAF's right to distribution from HCLOF related to Acis 6, as is - where is, without representation except for unencumbered ownership, for [$2.5mm$[3mm] cash, to be paid within [10] business days of approvalexecution of the settlement by the Bankruptcy Court; DAF releases HCLOF from any claims related to Acis 6 distributions

- o DAF/CLO Holdco release all claims and accept the "Litigation Protections" – see separate document containing the releases and other required provisions

- o LT releases DAF/CLO Holdco from all other claims in the LT litigation and otherwise

- o Complete cessation and withdrawal of any other litigation among the parties

- o Settlement will be filed with the Bankruptcy Court and "so ordered"

**Distributions**

- **Initial Interim Cash Distributions** – Within [91] days of the receipt of a final/non-appealable order not subject to certiorari:

  - o The Indemnity Trust will distribute $[10]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement

  - o [Subject to Class 9 Approval], the Indemnity Trust will distribute $[1110]mm cash directly to HMIT on accountholders of its allowed Class 10 interestsinterests

    - ▪ On approval of the settlement by the Bankruptcy Court, the Indemnity Trust will set up a separate $[1110]mm reserve for the HMITInitial Interim Cash Distribution which reserve will be held in UST on the same terms as other Indemnity Trust holdings pending distribution to HMITClass 10 interest holders or reversal/remand of the settlement

    - ▪ Any payments on the Dugaboy Note from the date of Bankruptcy Court approval of the settlement to the date of the Initial Interim Cash Distributions will be held by the Indemnity Trust in a separate account and also be paid to holders of allowed Class 10 interests

      - • The actual dollar amount of any such P+I payments paid will reduce the Class 10 interests outstanding

HCMLPHMIT00000719

**REVISED DRAFT**

- **Subsequent Distribution(s)** - Following the Initial Interim Cash Distributions, most, if not all remaining assets will be held by the Indemnity Trust, except for potentially the Disputed Claims Reserve (if the pending claim is not fully resolved) and cash at the Claimant Trust and HCMLP (indirectly owned by the Indemnity Trust) to be used in the wind-down of those entities with any excess amounts contributed/distributed to the Indemnity Trust

  - On [January 14April 1, 2028],, if no threats, demands, or litigations have been brought against the Indemnity Trust or its beneficiaries of the Indemnity Trust:

    - The Indemnity Trust will distribute ~$[11]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement, satisfying the remainder of the Class 9 interests outstanding

    - The Indemnity Trust will distribute $[5]mm cash directly to HMIT on accountholders of itsallowed Class 10 interestinterests

    - The indemnityNote Cash or In-Kind Distribution – At the election of HMIT, the Indemnity Trust will assign directly to HMITeither (a) sell the currently $[17.56]mm face value (P+I) promissory note receivable from Dugaboy Investment Trust to HCMLP that has been irrevocably participated to the Indemnity Trust(and may be assigned if it defaults) to the Indemnity Trust (the "Dugaboy Note") and distribute the net proceeds (plus all P+I payments on the Dugaboy Note from the Interim Cash Distribution Date to April 1, 2028) to holders of allowed Class 10 interests or (b) assign the Dugaboy Note directly to holders of allowed Class 10 interests

      - Note will be valued at $[4]mm forFor purposes of tracking progress toward the ~$337mm Class 10 interest:

    - Any payments on if the Dugaboy Note fromis sold, the date of approval of distribution will be valued at the settlement to the date of assignment of the Dugaboy note will also be paid to HMIT on account of its Class 10 interest

        - The actual dollar amount of any such P+I payments paid to HMIT will reduce the HMIT Class 10 interest. cash distributed;

        - if the Dugaboy Note is distributed in kind, the distribution will be valued at fair market value as determined by the Indemnity Trust Administrator

**REVISED DRAFT**

- Assumes the Dugaboy Note continues to perform; if there is a default prior to April 1, 2028, the Indemnity Trust will accelerate the Dugaboy Note and pursue full collection plus cost of collection
    - o If distribution of the Dugaboy Note is to be effected on April 1, 2028 and collection litigation has been commenced, at its election, holders of allowed Class 10 interests can receive, the collected balance of the litigation or elect to have the Indemnity Trust continue the litigation and subsequently pay the proceeds to holders of allowed Class 10 interests
  - o As it pertains to the Disputed Claims Reserve, Highland will object to the Daugherty tax POC (final remaining pending claim).  Following a final non-appealable order resolving the claim, any remaining funds will be distributed to Class 9 or, if Class 9 has been paid in full, to ~~HMIT on account~~holders of ~~its~~allowed Class 10 ~~interest.~~interests

- **"Final Distribution"**  - After ~~January 31~~April 1, 2029, if no threats, demands, or litigations have been brought against beneficiaries of the Indemnity Trust and all statutes of limitation (SOLs) and any potentially applicable tolling thereof have expired, at the Indemnity Trust Administrator's sole discretion, any excess remaining funds in the Indemnity Trust shall be paid out in accordance with the Plan and the Indemnity Trust Agreement (i.e. to ~~HMIT on account~~holders of ~~its~~allowed Class 10 ~~interest~~interests, up to ~~its~~ allowed ~~amount~~amounts) in conjunction with the dissolution, wind down, and cancellation of the Indemnity Trust~~.~~
  - o The Indemnity Trust Administrator will consult with [Mark Patrick] regarding potentially applicable SOLs and tolling


- **Other**
  - o **Extension of Claimant Trust –** A one-year extension for the Claimant Trust will be sought in the bankruptcy court.  During the 1-year extension period, the Claimant Trust will be placed into dissolution and begin its winding up.
    - ▪ The Indemnity Trust will covenant not to transfer any funds to the Claimant Trust following the date of final non-appealable approval of the HMIT settlement

**REVISED DRAFT**

- o **HCMLP wind down –** the remaining unliquidated assets of the estate, including HCMLP, itself, will be retained within the Indemnity Trust and will be liquidated.
    - ▪ HCMLP personnel will complete the liquidation, dissolution, cancellation, tax compliance, and any other winding up activities for the remaining entities under its purview, including HCMLP. ~~Any excess amounts remaining at cancellation of HCMLP will be distributed to the Indemnity Trust.~~
    - ▪ Any excess amounts remaining at cancellation of HCMLP will be distributed to the Indemnity Trust.
    - ▪ The Indemnity Trust will covenant not to transfer any funds to HCMLP following the date of final non-appealable approval of the HMIT settlement
        - • HCMLP will have a funding agreement with the Claimant Trust to assure that the Claimant Trust has sufficient funds to complete its wind-down
        - • Any excess funds in the Claimant Trust at its cancellation will be contributed to the Indemnity Trust; excess funds at HMLP will be distributed to the Indemnity Trust
- o **HCMLP and its general partner –** While HCMLP will be placed into dissolution, the entity will continue to survive during its winding up period, during which time it may continue to defend inbound litigation, prosecute outbound litigation, maintain its books and records, and monetize its remaining assets.  HCMLP's general partner will be dissolved, wound-down and cancelled along with HCMLP~~.~~
- o **Claimant Trust Oversight Board –** Subject to the Plan and Claimant Trust agreement, it is anticipated that the members of the Oversight Board will continue in their existing roles until the final/non-appealable order approving the HMIT settlement is received~~.~~
- o **Information rights to HMIT –** ~~None prior to vesting;~~ After ~~vesting~~Bankruptcy Court approval of the HMIT settlement, per the Claimant Trust Agreement, except that:
    - ▪ HCMLP will review forecasted expenses with [Mark Patrick] at his request, but not more often than quarterly, and will work in good faith to reduce expenses where possible
- o **Approval rights –** None, other than as specified elsewhere
- o **Duties to HMIT –** None before or after vesting/Bankruptcy Court approval of the HMIT settlement

**REVISED DRAFT**

o **Compensation –** CEO and employee compensation remains governed by existing agreements with the oversight of the Claimant Trust Oversight Board; following the vesting of HMIT's interests, no changes will be permitted to those agreements without HMIT written consent; CEO maintains ability to maintain or reduce headcount in his absolute discretion.

DRAFT – SUBJECT TO CONFIDENTIALITY AGREEMENT

PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON

PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION

PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

# ILLUSTRATIVE HIGHLAND INDEMNITY TRUST PAYOUT SCHEDULE

EXPERIENCED. DISCIPLINED. **BOLD.**

HIGHLAND CAPITAL
MANAGEMENT

HCMLPHMIT00000724

PRIVILEGED AND CONFIDENTIAL  ATTORNEY CLIENT COMMUNICATION PREPARED AT THE DIRECTION OF COUNSEL IN
CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION PROTECTED BY FRE 408 AND
SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

**HIGHLAND INDEMNITY TRUST**

## Total Illustrative Sources and Uses (4/1/26 - 4/1/29)

| Sources | | Uses | |
|---|---|---|---|
| Beginning Cash | $ 67,850,000 | Cash to repay 9s in Full | $ 21,029,073 |
| Interest Received on Cash (4% annual) | $ 6,970,471 | Cash distributions to 10s [2] | $ 60,439,653 |
| Dugaboy Note P&I Received | $ 3,991,523 | | |
| Disputed Claim Reserve [1] | $ 2,656,732 | | |
| Total Cash Sources | $ 81,468,726 | Total Cash Uses | $ 81,468,726 |
| | | | |
| Dugaboy Note (P& Accrued I)  4/1/28 [3] | $ 15,137,110 | Dugaboy Note to 10s [3] | $ 15,137,110 |
| Total Sources | $ 96,605,837 | Total Uses | $ 96,605,837 |
| | | | |
| | | Total to 9s | $ 21,029,073 |
| | | Total to 10s (incl Dugaboy Note) [3] [4] | $ 75,576,763 |

Notes

[1] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[2] Assumes no indemnification costs are expended throughout the period.

[3] Assumes Dugaboy Note FMV at face with no discounting.

[4] Excludes any net value ultimately obtained from the Kirschner Litigation

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

HCMLPHMIT00000725



# HIGHLAND INDEMNITY TRUST

PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATION PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATIONPROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

## Interim Cash Distribution Sources and Uses (4/1/26)

| Sources | | | Uses | | |
|---|---|---|---|---|---|
| Beginning Cash | $ | 67,850,000 | Distribution to 9s - IT | $ | 10,000,000 |
| Interest Received on Cash | $ | 1,360,718 | Distribution to 9s - DCR | $ | 2,656,732 |
| Dugaboy Note P&I Received | $ | 1,354,892 | Distribution to 10s - IT | $ | 10,000,000 |
| Disputed Claim Reserve | $ | 2,656,732 | Distribution to 10s - Dugaboy Note P&I | $ | 1,354,892 |
| | | | Remaining Indemnity Trust Cash | $ | 49,210,718 |
| Total Cash Sources | $ | 73,222,342 | Total Cash Uses | $ | 73,222,342 |

## Subsequent Distribution(s) Sources and Uses (4/1/28) [1]

| Sources | | | Uses | | |
|---|---|---|---|---|---|
| Beginning Cash | $ | 49,210,718 | Distribution to 9s - IT | $ | 8,372,341 |
| Interest Received on Cash | $ | 4,015,595 | Distribution to 10s - IT | $ | 5,000,000 |
| Dugaboy Note P&I Received | $ | 2,636,631 | Distribution to 10s - Dugaboy Note P&I | $ | 2,636,631 |
| | | | Remaining Indemnity Trust Cash | $ | 39,853,972 |
| Total Cash Sources | $ | 55,862,943 | Total Cash Uses | $ | 55,862,943 |
| | | | | | |
| Dugaboy Note (P& Accrued I)  4/1/28 | $ | 15,137,110 | Dugaboy Note to 10s | $ | 15,137,110 |
| Total Sources | $ | 71,000,054 | Total Uses | $ | 71,000,054 |

## Final Distribution (4/1/29) [1] [2]

| Sources | | | Uses | | |
|---|---|---|---|---|---|
| Beginning Cash | $ | 39,853,972 | Distribution to 10s | $ | 41,448,130 |
| Interest Received on Cash | $ | 1,594,159 | | | |
| Total Cash Sources | $ | 41,448,130 | Total Cash Uses | $ | 41,448,130 |

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicable tolling) expired.

HCMLPHMIT00000726



# HIGHLAND INDEMNITY TRUST

PRIVILEGED AND CONFIDENTIAL  ATTORNEY CLIENT COMMUNICATION PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

**Illustrative Indemnity Trust Payout - Draft**
**4/15/2025**

| Period Ending | Start Date 9/30/2025 | Assumed Final Order Year 1 4/1/2026 | Year 2 4/1/2027 | Subsequent Distribution(s)[1] Year 3 4/1/2028 | Final Distribution[1][2] Year 4 4/1/2029 | Total |
|---|---|---|---|---|---|---|
| Indemnity Trust Cash Balance[3] | $ 67,850,000 | $ 49,210,718 | $ 51,179,147 | $ 39,853,972 | $ - | |
| Dugaboy Note Balance (P & and Accrued I)[4] | $ 17,806,565 | $ 16,729,382 | $ 15,932,744 | $ - | $ - | |
| TOTAL INDEMNITY TRUST | $ 85,656,565 | $ 65,940,100 | $ 67,111,891 | $ 39,853,972 | $ - | |
| | | | | | | |
| Disputed Claim Reserve | $ 2,656,732 | $ - | $ - | $ - | $ - | |
| | | | | | | |
| Class 9 Payment of Disputed Claim Reserve[5] | | $ (2,656,732) | $ - | $ - | $ - | $ (2,656,732) |
| Class 9 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (8,372,341) | $ - | $ (18,372,341) |
| Class 9 Total Payments | | $ (12,656,732) | $ - | $ (8,372,341) | $ - | $ (21,029,073) |
| Class 9 Balance[6] | $ 21,009,022 | $ 8,352,290 | $ 8,358,972 | $ - | $ - | |
| | | | | | | |
| Class 10 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (5,000,000) | $ (41,448,130) | $ (56,448,130) |
| Class 10 Payments Dugaboy Note[7] | | $ (1,354,892) | $ - | $ (17,773,741) | $ - | $ (19,128,633) |
| Class 10 Total Payments | | $ (11,354,892) | $ - | $ (22,773,741) | $ (41,448,130) | $ (75,576,763) |
| Class 10 Balance | $ 336,940,231 | $ 325,585,339 | $ 325,585,339 | $ 302,811,598 | $ 261,363,467 | |

Notes

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicatable tolling) expired.

[3] Assumes no threats, demands or litigations. Assumes 4% Interest earned each period.

[4] 3.26% Interest and $790k Amort due 12/31 each year

[5] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[6] Interest on balance accrues at 0.08%. Start Date face value of claims outstanding is $20,584,958.56.

[7] Assumes Dugaboy Note FMV at face with no discounting. Payment Year 3 includes P&I received after Initial Interim Cash Distribution.

HCMLPHMIT00000727