**EXHIBIT 53**

|  |  |
|---:|:---|
| **From:** | David Klos <DKlos@HighlandCapital.com> |
| **To:** | Jim Shields <jshields@shieldslegal.com> |
| **Cc:** | "John A. Morris" <jmorris@pszjlaw.com>, Jim Seery <jpseeryjr@gmail.com>, "Louis.Phillips@kellyhart.com" <Louis.Phillips@kellyhart.com> |
| **Subject:** | Confidential - Subject to Rule 408 and Confidentiality Agreement |
| **Date:** | Tue, 22 Apr 2025 16:20:33 +0000 |
| **Importance:** | Normal |
| **Attachments:** | Privileged_and_confidential_-_DRAFT_4.8.25_discussion_materials.pdf; PRIVILEGED_AND_CONFIDENTIAL_DRAFT_SETTLEMENT_STRUCTURE_CLEAN_4.16.25.pdf; Privileged_and_Confidential_-_Indemnity_Trust_2025-4-16_Draft.pdf |
| **Inline-Images:** | image001.jpg |

Jim,

It was nice meeting you virtually this morning. As a follow-up to our discussion, I understand the attached materials have already been provided to Louis, but I am re-sending this subset to you as well as I understand he's heading out of the country soon.

Attached are:

1. Discussion materials from April 8 meeting (<u>the projected budget build-up can be found on p. 4</u>)
2. Clean draft of settlement structure
3. Illustrative sources and uses of timing/amounts of potential future Indemnity Trust payouts

If you have other follow-ups or clarifications needed, feel free to reach out to John, Jim, or me.

Thank you,

-Dave

**DAVID KLOS**



100 Crescent Court  |  Suite 1850  |  Dallas, Texas 75201
C: 214.674.2926  |  O: 972.419.4478  |  F: 972.628.4147
dklos@highlandcapital.com   |   www.highlandcapital.com

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

**REVISED DRAFT**

**PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON**

**PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION**

**PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA**

**April 15, 2025**

DRAFT Potential Settlement Structure with DAF and HMIT

**HMIT**

- **Settlement of remanded motion to sue** – HCMLP, the Claimant Trust, and HMIT settle existing motion to sue and all other claims with prejudice for a cash payment of [$500k]
- **Allowance of claim** - HCMLP to allow HMIT Class 10 interest in the amount of ~$337mm (calculated as ~$395mm Petition Date capital account, less ~$58mm P&I outstanding on HMIT note as of Petition Date), subject to:
    - The HMIT allowed Class 10 interest is not transferable
    - HMIT releases all claims and accepts the "Litigation Protections" – see separate document containing the releases and other required provisions – which eliminate claims and limit the Class 10 allowed interest
    - LT releases HMIT from all other claims in the LT litigation and otherwise
    - LT transfers to holders of allowed Class 10 interests all remaining LT litigation (after HMIT and DAF/CLO Holdco releases) "as-is, where-is" along with all documents produced in the LT case to date
        - Such causes of action are limited to the currently stayed litigation and other causes of action that may exist related to former employees Ellington and Leventon
        - If for any reason the transfer of the LT litigation is nullified, the settlement will not be affected
    - Complete cessation and withdrawal of any other litigation among the parties
    - Class 10 remains senior to Class 11 as required by the Plan
- **Court Approval –** Settlement and allowance of Class 10 Claim subject to approval of the Bankruptcy Court

**DAF**

- **Settlement of DAF Claims** – HCMLP, the Claimant Trust, and DAF/CLO Holdco settle all claims underlying the current Fifth Circuit appeal and all other claims with

**REVISED DRAFT**

prejudice for a cash payment of $[2mm] within [10] business days of execution of the settlement; the Fifth Circuit appeal will be dismissed with prejudice within [10] business days of execution of the settlement

- HCMLP will purchase DAF's right to distribution from HCLOF related to Acis 6, as is - where is, without representation except for unencumbered ownership, for $[3mm] cash, to be paid within [10] business days of execution of the settlement; DAF releases HCLOF from any claims related to Acis 6 distributions
- DAF/CLO Holdco release all claims and accept the "Litigation Protections" – see separate document containing the releases and other required provisions
- LT releases DAF/CLO Holdco from all other claims in the LT litigation and otherwise
- Complete cessation and withdrawal of any other litigation among the parties
- Settlement will be filed with the Bankruptcy Court and "so ordered"

**Distributions**

- **Initial Interim Cash Distributions** – Within [91] days of the receipt of a final/non-appealable order not subject to certiorari:
    - The Indemnity Trust will distribute $[10]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement
    - [Subject to Class 9 Approval], the Indemnity Trust will distribute $[10]mm cash directly to holders of allowed Class 10 interests
        - On approval of the settlement by the Bankruptcy Court, the Indemnity Trust will set up a separate $[10]mm reserve for the Initial Interim Cash Distribution which reserve will be held in UST on the same terms as other Indemnity Trust holdings pending distribution to Class 10 interest holders or reversal/remand of the settlement
        - Any payments on the Dugaboy Note from the date of Bankruptcy Court approval of the settlement to the date of the Initial Interim Cash Distributions will be held by the Indemnity Trust in a separate account and also be paid to holders of allowed Class 10 interests
            - The actual dollar amount of any such P+I payments paid will reduce the Class 10 interests outstanding

HCMLPHMIT00000989

**REVISED DRAFT**

- **Subsequent Distribution(s)** - Following the Initial Interim Cash Distributions, most, if not all remaining assets will be held by the Indemnity Trust, except for potentially the Disputed Claims Reserve (if the pending claim is not fully resolved) and cash at the Claimant Trust and HCMLP (indirectly owned by the Indemnity Trust) to be used in the wind-down of those entities with any excess amounts contributed/distributed to the Indemnity Trust
    - On April 1, 2028, if no threats, demands, or litigations have been brought against the Indemnity Trust or its beneficiaries:
        - The Indemnity Trust will distribute ~$[11]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement, satisfying the remainder of the Class 9 interests outstanding
        - The Indemnity Trust will distribute $[5]mm cash directly to holders of allowed Class 10 interests
        - Note Cash or In-Kind Distribution – At the election of HMIT, the Indemnity Trust will either (a) sell the currently $[17.6]mm face value (P+I) promissory note receivable from Dugaboy Investment Trust to HCMLP that has been irrevocably participated (and may be assigned if it defaults) to the Indemnity Trust (the "Dugaboy Note") and distribute the net proceeds (plus all P+I payments on the Dugaboy Note from the Interim Cash Distribution Date to April 1, 2028) to holders of allowed Class 10 interests or (b) assign the Dugaboy Note directly to holders of allowed Class 10 interests
            - For purposes of tracking progress toward the ~$337mm Class 10 interest:
                - if the Dugaboy Note is sold, the distribution will be valued at the amount of cash distributed;
                - if the Dugaboy Note is distributed in kind, the distribution will be valued at fair market value as determined by the Indemnity Trust Administrator
            - Assumes the Dugaboy Note continues to perform; if there is a default prior to April 1, 2028, the Indemnity Trust will accelerate the Dugaboy Note and pursue full collection plus cost of collection
                - If distribution of the Dugaboy Note is to be effected on April 1, 2028 and collection litigation has been commenced, at its election, holders of allowed Class 10 interests can receive, the collected balance or the

**REVISED DRAFT**

> litigation or elect to have the Indemnity Trust continue the litigation and subsequently pay the proceeds to holders of allowed Class 10 interests
- As it pertains to the Disputed Claims Reserve, Highland will object to the Daugherty tax POC (final remaining pending claim). Following a final non-appealable order resolving the claim, any remaining funds will be distributed to Class 9 or, if Class 9 has been paid in full, to holders of allowed Class 10 interests

- **"Final Distribution"** - After April 1, 2029, if no threats, demands, or litigations have been brought against beneficiaries of the Indemnity Trust and all statutes of limitation (SOLs) and any potentially applicable tolling thereof have expired, at the Indemnity Trust Administrator's sole discretion, any excess remaining funds in the Indemnity Trust shall be paid out in accordance with the Plan and the Indemnity Trust Agreement (i.e. to holders of allowed Class 10 interests, up to allowed amounts) in conjunction with the dissolution, wind down and cancellation of the Indemnity Trust
  - The Indemnity Trust Administrator will consult with [Mark Patrick] regarding potentially applicable SOLs and tolling

- **Other**
  - **Extension of Claimant Trust –** A one-year extension for the Claimant Trust will be sought in the bankruptcy court. During the 1-year extension period, the Claimant Trust will be placed into dissolution and begin its winding up.
    - The Indemnity Trust will covenant not to transfer any funds to the Claimant Trust following the date of final non-appealable approval of the HMIT settlement
  - **HCMLP wind down –** the remaining unliquidated assets of the estate, including HCMLP, itself, will be retained within the Indemnity Trust and will be liquidated.
    - HCMLP personnel will complete the liquidation, dissolution, cancellation, tax compliance, and any other winding up activities for the remaining entities under its purview, including HCMLP.
    - Any excess amounts remaining at cancellation of HCMLP will be distributed to the Indemnity Trust.

**REVISED DRAFT**

- The Indemnity Trust will covenant not to transfer any funds to HCMLP following the date of final non-appealable approval of the HMIT settlement
  - HCMLP will have a funding agreement with the Claimant Trust to assure that the Claimant Trust has sufficient funds to complete its wind-down
  - Any excess funds in the Claimant Trust at its cancellation will be contributed to the Indemnity Trust; excess funds at HMLP will be distributed to the Indemnity Trust
- **HCMLP and its general partner –** While HCMLP will be placed into dissolution, the entity will continue to survive during its winding up period, during which time it may continue to defend inbound litigation, prosecute outbound litigation, maintain its books and records, and monetize its remaining assets. HCMLP's general partner will be dissolved, wound-down and cancelled along with HCMLP
- **Claimant Trust Oversight Board –** Subject to the Plan and Claimant Trust agreement, it is anticipated that the members of the Oversight Board will continue in their existing roles until the final/non-appealable order approving the HMIT settlement is received
- **Information rights to HMIT –** After Bankruptcy Court approval of the HMIT settlement, per the Claimant Trust Agreement, except that:
  - HCMLP will review forecasted expenses with [Mark Patrick] at his request, but not more often than quarterly, and will work in good faith to reduce expenses where possible
- **Approval rights –** None, other than as specified elsewhere
- **Duties to HMIT –** None before or after vesting/Bankruptcy Court approval of the HMIT settlement
- **Compensation –** CEO and employee compensation remains governed by existing agreements with the oversight of the Claimant Trust Oversight Board; following the vesting of HMIT's interests, no changes will be permitted to those agreements without HMIT written consent; CEO maintains ability to maintain or reduce headcount in his absolute discretion

PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON

PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION

PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS. PROVIDED PURSUANT TO NDA

# ILLUSTRATIVE HIGHLAND INDEMNITY TRUST PAYOUT SCHEDULE

EXPERIENCED. DISCIPLINED. **BOLD.**



DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

HCMLPHMIT00000993

PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATION PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

**HIGHLAND INDEMNITY TRUST**

## Total Illustrative Sources and Uses (4/1/26 - 4/1/29)

| **Sources** | | **Uses** | |
|---|---|---|---|
| Beginning Cash | $ 67,850,000 | Cash to repay 9s in Full | $ 21,029,073 |
| Interest Received on Cash (4% annual) | $ 6,970,471 | Cash distributions to 10s [2] | $ 60,439,653 |
| Dugaboy Note P&I Received | $ 3,991,523 | | |
| Disputed Claim Reserve [1] | $ 2,656,732 | | |
| Total Cash Sources | $ 81,468,726 | Total Cash Uses | $ 81,468,726 |
| | | | |
| Dugaboy Note (P& Accrued I)  4/1/28 [3] | $ 15,137,110 | Dugaboy Note to 10s [3] | $ 15,137,110 |
| Total Sources | $ 96,605,837 | Total Uses | $ 96,605,837 |
| | | | |
| | | Total to 9s | $ 21,029,073 |
| | | Total to 10s (incl Dugaboy Note) [3][4] | $ 75,576,763 |

Notes

[1] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[2] Assumes no indemnification costs are expended throughout the period.

[3] Assumes Dugaboy Note FMV at face with no discounting.

[4] Excludes any net value ultimately obtained from the Kirschner Litigation

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATION PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA



# HIGHLAND INDEMNITY TRUST

## Interim Cash Distribution Sources and Uses (4/1/26)

| Sources | | Uses | |
|---|---|---|---|
| Beginning Cash | $ 67,850,000 | Distribution to 9s - IT | $ 10,000,000 |
| Interest Received on Cash | $ 1,360,718 | Distribution to 9s - DCR | $ 2,656,732 |
| Dugaboy Note P&I Received | $ 1,354,892 | Distribution to 10s - IT | $ 10,000,000 |
| Disputed Claim Reserve | $ 2,656,732 | Distribution to 10s - Dugaboy Note P&I | $ 1,354,892 |
| | | Remaining Indemnity Trust Cash | $ 49,210,718 |
| Total Cash Sources | $ 73,222,342 | Total Cash Uses | $ 73,222,342 |

## Subsequent Distribution(s) Sources and Uses (4/1/28) [1]

| Sources | | Uses | |
|---|---|---|---|
| Beginning Cash | $ 49,210,718 | Distribution to 9s - IT | $ 8,372,341 |
| Interest Received on Cash | $ 4,015,595 | Distribution to 10s - IT | $ 5,000,000 |
| Dugaboy Note P&I Received | $ 2,636,631 | Distribution to 10s - Dugaboy Note P&I | $ 2,636,631 |
| | | Remaining Indemnity Trust Cash | $ 39,853,972 |
| Total Cash Sources | $ 55,862,943 | Total Cash Uses | $ 55,862,943 |
| | | | |
| Dugaboy Note (P& Accrued I)  4/1/28 | $ 15,137,110 | Dugaboy Note to 10s | $ 15,137,110 |
| Total Sources | $ 71,000,054 | Total Uses | $ 71,000,054 |

## Final Distribution (4/1/29) [1] [2]

| Sources | | Uses | |
|---|---|---|---|
| Beginning Cash | $ 39,853,972 | Distribution to 10s | $ 41,448,130 |
| Interest Received on Cash | $ 1,594,159 | | |
| Total Cash Sources | $ 41,448,130 | Total Cash Uses | $ 41,448,130 |

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicable tolling) expired.

*DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT*

HCMLPHMIT00000995


**HIGHLAND INDEMNITY TRUST**

PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATION PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

**Illustrative Indemnity Trust Payout - Draft**
4/15/2025

| | Start Date | Assumed Final Order | | Subsequent Distribution(s)[1] | Final Distribution[1][2] | Total |
|---|---|---|---|---|---|---|
| | | Year 1 | Year 2 | Year 3 | Year 4 | |
| Period Ending | 9/30/2025 | 4/1/2026 | 4/1/2027 | 4/1/2028 | 4/1/2029 | |
| | | | | | | |
| Indemnity Trust Cash Balance[3] | $ 67,850,000 | $ 49,210,718 | $ 51,179,147 | $ 39,853,972 | $ - | |
| Dugaboy Note Balance (P & and Accrued I)[4] | $ 17,806,565 | $ 16,729,382 | $ 15,932,744 | $ - | $ - | |
| TOTAL INDEMNITY TRUST | $ 85,656,565 | $ 65,940,100 | $ 67,111,891 | $ 39,853,972 | $ - | |
| | | | | | | |
| Disputed Claim Reserve | $ 2,656,732 | $ - | $ - | $ - | $ - | |
| | | | | | | |
| Class 9 Payment of Disputed Claim Reserve[5] | | $ (2,656,732) | $ - | $ - | $ - | $ (2,656,732) |
| Class 9 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (8,372,341) | $ - | $ (18,372,341) |
| Class 9 Total Payments | | $ (12,656,732) | $ - | $ (8,372,341) | $ - | $ (21,029,073) |
| Class 9 Balance[6] | $ 21,009,022 | $ 8,352,290 | $ 8,358,972 | $ - | $ - | |
| | | | | | | |
| Class 10 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (5,000,000) | $ (41,448,130) | $ (56,448,130) |
| Class 10 Payments Dugaboy Note[7] | | $ (1,354,892) | $ - | $ (17,773,741) | $ - | $ (19,128,633) |
| Class 10 Total Payments | | $ (11,354,892) | $ - | $ (22,773,741) | $ (41,448,130) | $ (75,576,763) |
| Class 10 Balance | $ 336,940,231 | $ 325,585,339 | $ 325,585,339 | $ 302,811,598 | $ 261,363,467 | |

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

**Notes**

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicatable tolling) expired.

[3] Assumes no threats, demands or litigations. Assumes 4% Interest earned each period.

[4] 3.26% Interest and $790k Amort due 12/31 each year

[5] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[6] Interest on balance accrues at 0.08%. Start Date face value of claims outstanding is $20,584,958.56.

[7] Assumes Dugaboy Note FMV at face with no discounting. Payment Year 3 includes P&I received after Initial Interim Cash Distribution.

**Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties**

**Current Snapshot - remaining assets [1]**
*in USD millions, except percentages*

| Asset description | Ref | Claimant Trust [2] | Indemnity Trust [3] | Combined |
|---|---|---:|---:|---:|
| Cash/treasuries | [4] | $ 20.3 | $ 67.9 | $ 88.1 |
| Disputed Claims Reserve | [5] | 2.7 | - | 2.7 |
| Dugaboy Note receivable | [6] | - | 17.6 | 17.6 |
| HCM Korea (note and equity) | [7] | 3.0 | - | 3.0 |
| HCLOF shares | [8] | 2.5 | - | 2.5 |
| HCRE bad faith sanction | [9] | 0.9 | - | 0.9 |
| Kirschner Litigation (main adversary) | [10] | *See footnote* | - | - |
| HMIT note | [11] | *See footnote* | - | - |
| **Total assets** | | **$ 29.4** | **$ 85.5** | **$ 114.8** |

[1] As of April 3, 2025. This disclosure is NOT a balance sheet prepared in accordance with US GAAP. In some instances, values are estimated and actual amounts realized may ultimately differ materially. No liabilities are included herein, including existing liabilities, contingent liabilities, indemnification obligations, or considerations for future expenses, including costs of liquidation that have not yet been, but will be incurred.

[2] Claimant Trust, including consolidation of the various "Plan" entities other than the Indemnity Trust (HCMLP GP, LLC, Highland Capital Management, LP, Litigation Sub-Trust), each on a standalone basis, with intercompany balances eliminated.

[3] Stand-alone assets retained by the Indemnity Trust. Other than less than <$1M retained in cash, remainder of cash is invested in US treasuries with maturities less than 1 year. Excludes <$1M of cash/treasuries on account of the Okada settlement. Pursuant to the Okada settlement, these funds are segregated and are to be repaid to Okada as first-out funds to the extent that any excess exists in the Indemnity Trust. Accordingly, in a settlement scenario, these funds would not be available to Class 10 interest holders.

[4] Cash and treasuries includes full face amount of treasuries maturing within 6 months and has also been adjusted up to assume the near-term receipt of approximately $5 million from Highland CLO Funding, Ltd.

[5] Segregated funds invested in US treasuries with near-term maturities. Funds are reserved for the Daugherty tax proof of claim, which remains pending. If Highland successfully objects to the proof of claim, funds would be released from the Disputed Claims Reserve. If the claim is ultimately allowed in full or in part, funds would be paid to Daugherty on account of the allowed claim and any excess remaining would be released from the Disputed Claims Reserve.

[6] Note receivable from The Dugaboy Investment Trust ("Dugaboy"). ~$17.4M principal and ~$0.2M interest currently outstanding, accruing at approximately $1,553/day. Fair value is less than face value as the note is long-dated, accruing interest at 3.26% and makes annual principal and interest payments through 2046, with the last of such payments due December 31, 2046. Dugaboy is current on its payments, including with the most recent payment completed for year-end 2024. Principal payments due are $790,215 yearly, plus accrued interest, which declines each year as principal declines. The next interest payment due December 31, 2025 is $566,677. No assurance that Dugaboy will continue making the annual principal and interest payments when due, although the holder of the note could accelerate and pursue collection in that event.

[7] 100% equity interest in Highland Capital Management Korea Limited ("HCM Korea"), plus $2.5 million note from HCM Korea. Ultimate value dependent on the monetization of the Caris Life Sciences investment through an expected 2025 IPO, which is expected to be in the range of $2 million to $5 million, but could also exceed or fall short of this range.

[8] Shares of Highland CLO Funding, Ltd. ("HCLOF"), a Guernsey company. Value has been adjusted down to assume a near-term cash dividend of approximately $5 million. Remaining value is primarily tied up in the "Acis 6" asset, for which a NexPoint entity has recently initiated an appeal in the 2nd Circuit Court of Appeals. Ultimate value dependent on the Acis 6 litigation and costs of winding down HCLOF and expected to be in the range of $2 million to $4 million, but could also exceed or fall short of this range.

[9] Bad faith sanction against HCRE of $825,940.55, currently on appeal in the District Court. Fully briefed since November 2024. Award was posted in the court registry and is accruing post-judgment interest at a rate of $118.80/day. Approximately $870k is outstanding, including post-judgment interest currently. No assurance that the appeal will resolve favorably and as a result, there is no assurance that any amounts will ultimately be collected.

[10] Litigation brought by Marc Kirschner as Litigation Trustee to the Litigation Sub-Trust. Adversary proceeding is currently stayed. The value of the claims, their collectibility, and the costs of their continued pursuit is ultimately unknown. For purposes of aggregating the current value of assets for this illustrative presentation, no value has been ascribed.

[11] Within the litigation brought by Marc Kirschner as Litigation Trustee to the Litigation Sub-Trust were claims against HMIT relating to the "HMIT note" receivable, which had originally been a portion of the consideration HMIT paid for acquiring limited partnership interests in Highland in 2015. These claims are also stayed as part of the overall stay in the case. The value of the note, its collectibility, and the costs of their continued pursuit is ultimately unknown. For purposes of aggregating the current value of assets for this illustrative presentation, no value has been ascribed.

**Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties**

**Uses: how much could be left after satisfying Class 9 claims?**
*in USD millions*

| | | |
|---|---:|---|
| **Total combined assets** | $ 114.8 | *see "current snapshot"* |
| Less: | | |
| Oustanding Class 9, including interest | (21.0) | |
| Existing Incentive Compensation triggered through full payment of Class 9 | (2.5) | |
| Long-dated assets - Dugaboy Note receivable | (17.6) | [1] |
| Wind down expenses and accrued liabilities | (20.0) | [2] |
| Pending Class 8 claims (Daugherty tax) | *See footnote* | [3] |
| Indemnification obligations | *See footnote* | [4] |
| **Net expected cash prior to any indemnification considerations and necessary reserves** | $ 53.7 | [5] |
| **Plus: Non-cash assets - Dugaboy Note receivable** | $ 17.6 | |

[1] Note receivable from The Dugaboy Investment Trust ("Dugaboy").  ~$17.4M principal and ~$0.2M interest currently outstanding, accruing at approximately $1,553/day.   Fair value is less than face value as the note is long-dated, accruing interest at 3.26% and makes annual principal and interest payments through 2046, with the last of such payments due December 31, 2046.  Dugaboy is current on its payments, including with the most recent payment completed for year-end 2024.  Principal payments due are $790,215 yearly, plus accrued interest, which declines each year as principal declines.  The next interest payment due December 31, 2025 is $566,677.  No assurance that Dugaboy will continue making the annual principal and interest payments when due, although the holder of the note could accelerate and pursue collection in that event.

[2] Amount is ultimately TBD and will ultimately depend on litigation, timing of monetization of remaining assets, and operational needs.  For example, if additional litigation is brought forth, outside counsel will incur additional time and expense and certain employees may need to be retained for a longer period of time.  If actual expenses exceed $20 million, less cash would be potentially available after Class 9; if actual expenses fall short of $20 million, more cash would be potentially available after Class 9.

[3] For illustrative purposes of this presentation, $0 is assumed.  However, if the claim is ultimately allowed in full or in part, funds would be paid to Daugherty on account of the allowed claim, which would reduce cash potentially available after Class 9.  No assurances can be provided that the claim will be completely disallowed.

[4] For illustrative purposes of this presentation, $0 is assumed.  Thus, all funds utilized for purposes of satisfying indemnification obligations will reduce the funds available dollar for dollar.  Under current conditions, it is believed that at least $100 million may be needed for indemnification obligations and as a result, there is not sufficient liquidity at this time to even make any further payments to Class 9 interest holders.  Assuming a final/non-appealable order, providing for among other things, a complete cessation of litigation and comprehensive releases from the HMIT/DAF parties, the need for indemnification reserves could be greatly reduced.

[5] Assumes HCM Korea, HCLOF, and HCRE bad faith sanctions are monetized for the amounts described on the "current snapshot" ($6.4 million in aggregate).  Monetization in excess of these amounts would result in more cash remaining; monetization below those amounts would result in less cash remaining.

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

2

HCMLPHMIT00000998

*Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties*
**Information request made April 7, 2025**

### (i) Accrued liabilities

| | Entity | Amount | |
|---|---|---:|---|
| End of case/severance bonuses - remaining employees | HCMLP | $ 1,230,000 | |
| Accounts payable book balance (as of March 31, 2025) | HCMLP | 576,207 | |
| Estimate of other incurred, but not invoiced for work performed | HCMLP | 500,000 | *general estimate* |
| **Sub-total (i)** | | **$ 2,306,207** | **A** |

| Other liabilities not included in section totals above | Entity | Amount | |
|---|---|---:|---|
| Distribution payable | HCT | $ 2,656,732 | *previously authorized distributions related to pending Daugherty claim (has offsetting cash reserve; see current snapshot); to be released following resolution of the pending claim* |
| Okada settlement payable | Indemnity Trust | $ 870,000 | *first-out dollars in treasuries (amount is face of such treasuries) - for purposes of settlement discussions, the cash reserved related to the Okada settlement and the potential first-out dollars are excluded as irrelevant* |

### (ii) Anticipated success or severance (or completion) payments or bonuses

| | Entity | Amount | |
|---|---|---:|---|
| Incentive Compensation Plan | HCMLP/HCT | $ 2,480,088 | *assuming full payment of the Class 9's; calc'd as 14.71516% on remaining distributions to Class 9 with a time discount applied to the gross dollars distributed* |
| Retention Date payments - employees | HCMLP | 925,000 | *Retention Date is 9/30/2025* |
| Nate Burns (employee) incentive comp | HCMLP | - | *Nate receives a portion of the performance fees earned related to HCM Korea; assuming zero for presentation purposes as amounts would be a percentage of incremental value received from HCM Korea* |
| **Sub-total (ii)** | | **$ 3,405,088** | **B** |

### (iii) Continuing admin budget for the Claimant Trust, Indemnification sub trust and/or litigation sub trust

| | | | |
|---|---|---:|---|
| **See subsequent page; Sub-total (iii)** | | **$ 16,768,874** | **C** - *additional detail contained on separate page* |

| | | | |
|---|---|---:|---|
| **Sum of A, B, and C** | | **$ 22,480,169** | |

### (iv) Identity and amount and basis for any holdback(s)

| Identity: | | Amount | Basis for amount |
|---|---|---:|---|
| Sum of A, B, and C from above | | $ 22,480,169 | *from above; See notes and assumptions related to items A, B, and C* |
| Incremental operational reserve | | 5,000,000 | *Excess cash to retain to cover potential cost overages - largest risk is incremental litigation and resulting time and expense of PSZJ plus longer retention of employees/CEO to assist with litigation, if applicable* |
| Indemnification reserves | | 35,000,000 | *Assumes comprehensive releases and settlement amongst the HMIT/DAF Parties; at least $100 million if no settlement* |
| Sum of items above | | $ 62,480,169 | *to below* |

| Calc of estimated cash available for a prelim distribution to Class 10, assuming settlement | | $ millions | |
|---|---|---:|---|
| Current cash/treasuries (see previous page) | | $ 88.1 | *Cash and treasuries (including all Plan entities)* |
| Assets expected to monetize in next 12 months | | 6.4 | *HCM Korea, remainder of HCLOF, bad faith sanction (but excluding near-term Dugaboy Note P&I amortization due December 2025)* |
| **Sub-total** | | **$ 94.5** | |
| | | | |
| less: outstanding Class 9, including interest | | (21.0) | *current outstanding Class 9 with interest* |
| less: holdbacks (from above) | | (62.5) | *from above* |
| | | | |
| Remaining cash available for initial distribution to Class 10 | | $ 11.1 | *[1]* |
| **Round to nearest million** | | **$ 11.0** | |

[1] Possibility of incremental amount of up to $2.7 million in the event of a successful opposition to the pending Daugherty tax POC, along with incremental interim cash received from Dugaboy Note P&I amortization. Amount also does not include non-cash assets (litigation, oustanding Dugaboy Note, etc).

*DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT*

3

HCMLPHMIT00000999

*Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties*
**Projected Budget Build-Up**

**Remaining expected budget assuming a comprehensive settlement with HMIT/DAF Parties (excluding accrued liabilities and contingencies separately discussed)**

| Description | Total for budget | Notes and assumptions |
|---|---:|---|
| Pachulski Stang and other litigation or BK-related | $ 5,000,000 | Primary issues: expected new litigation to defend (actual causes of action unknown) from Dondero parties, incorporation of HMIT/DAF settlement and approval/appeals of same, appeals of "valuation complaint" and "HCRE bad faith", extension of the Trust for 1 yr. and dissolution issues. Ultimate amount required could vary materially higher or lower. |
| HCMLP employees salary and benefits (other than CEO) | 4,084,354 | Assumes declining headcount from 6 to 3, ending August 2026 (monthly trending from approx. $300k/month currently to approx. $200k/month at end) |
| Claimant Trustee/CEO salary | 2,700,000 | Assumes 18 months at $150k/month |
| Litigation Trustee | 360,000 | Assumes 18 months at $20k/month |
| Independent Member | 225,000 | Assumes 18 months at $12.5k/month |
| Litigation trust (other than Trustee) | 250,000 | Assuming minimal time and expense other than in conjunction with transfer of main case |
| Incentive Compensation on distributions to Cl. 10 | TBD | Provide for alignment in regards to quantum and timing of distributions and management of costs |
| <u>Overhead related</u> | | |
| Facilities/offsite storage and related | 1,079,121 | Office space through end of 2026 and offsite document retention through 2028 |
| External tax | 1,000,000 | Declining each year with final year for tax year 2027 |
| IT costs | 701,760 | Cloud storage, network infrastructure through 2027, email storage through 2030 |
| Accounting systems and information | 331,045 | General retention and maintenance through 2028 (primarily Oracle maintenance) |
| Other professionals | 200,000 | Misc reserve for other professionals |
| Other misc overhead | 200,000 | Misc reserve for other overhead, T&E, entity wind-up costs, etc |
| Indemnification expenses | 200,000 | Assuming misc. expenses from misc. matters |
| US Trustee | 437,594 | Assuming 0.8% of budget + accruals + distributions (assuming $30M total) |
| **Grand total** | **$ 16,768,874** | *to previous page* |

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

4

HCMLPHMIT00001000