**EXHIBIT 67**

```
                     IN THE UNITED STATES BANKRUPTCY COURT
 1                    FOR THE NORTHERN DISTRICT OF TEXAS
                                 DALLAS DIVISION
 2
                                    )   Case No. 19-34054-sgj-11
 3   In Re:                         )   Chapter 11
                                    )
 4   HIGHLAND CAPITAL               )   Dallas, Texas
     MANAGEMENT, L.P.,              )   December 18, 2024
 5                                  )   9:00 a.m. Docket
            Reorganized Debtor.     )
 6                                  )   - OBJECTION TO SCHEDULED
                                    )     CLAIMS [3657]
 7                                  )   - MOTION FOR A BAD FAITH
                                    )     FINDING [4176]
 8   _____)

 9                       TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
10                   UNITED STATES BANKRUPTCY JUDGE.

11   APPEARANCES:

12   For the Reorganized          John A. Morris
     Debtor:                      Hayley R. Winograd
13                                PACHULSKI STANG ZIEHL & JONES, LLP
                                  780 Third Avenue, 34th Floor
14                                New York, NY  10017-2024
                                  (212) 561-7760
15
     For the Reorganized          Zachery Z. Annable
16   Debtor:                      HAYWARD, PLLC
                                  10501 N. Central Expressway,
17                                  Suite 106
                                  Dallas, TX  75231
18                                (972) 755-7108

19   For the Reorganized          Jeffrey N. Pomerantz
     Debtor:                      PACHULSKI STANG ZIEHL & JONES, LLP
20                                10100 Santa Monica Blvd.,
                                    13th Floor
21                                Los Angeles, CA  90067
                                  (310) 277-6910
22
     For Highland CLO             Deborah Rose Deitsch-Perez
23   Management, Ltd. and         Michael P. Aigen
     James Dondero:               STINSON, LLP
24                                2200 Ross Avenue, Suite 2900
                                  Dallas, TX  75201
25                                (214) 560-2201
```



```
1   Recorded by:              Michael F. Edmond, Sr.
                              UNITED STATES BANKRUPTCY COURT
2                             1100 Commerce Street, 12th Floor
                              Dallas, TX  75242
3                             (214) 753-2062

4   Transcribed by:           Kathy Rehling
                              311 Paradise Cove
5                             Shady Shores, TX   76208
                              (972) 786-3063
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25         Proceedings recorded by electronic sound recording;
              transcript produced by transcription service.
```

HCMLPHMIT00003830

1         DALLAS, TEXAS - DECEMBER 18, 2024 - 9:05 A.M.

2         THE CLERK:  All rise.  The United States Bankruptcy

3 Court for the Northern District of Texas, Dallas Division, is

4 now in session, the Honorable Stacey Jernigan presiding.

5         THE COURT:  Good morning, everyone.  Please be

6 seated.

7     All right.  We have a hearing all day today scheduled for

8 Highland, an objection to the scheduled claim of what I'm

9 going to call HCLOM.  You all tell me today if you want to

10 call it something different.  For the record, this is Case No.

11 19-34054.  So let's start out by getting appearances from our

12 lawyers.

13         MR. MORRIS:  Good morning, Your Honor.  It's been a

14 while.  Nice to see you.  John Morris from Pachulski Stang

15 Ziehl & Jones for Highland Capital Management, LP.  I'm joined

16 here today by my colleagues, Jeffrey Pomerantz, Hayley

17 Winograd, and Zachery Annable.

18         THE COURT:  Okay.  Good morning to all.

19         MS. DEITSCH-PEREZ:  Good morning, Your Honor.  I'm

20 Deborah Deitsch-Perez from Stinson representing HCLOM, which I

21 will sometimes refer to as Limited to distinguish it from

22 HCLOM, LLC.  So I'll call one Limited and the other LLC,

23 hopefully.

24         THE COURT:  Okay.

25         MS. DEITSCH-PEREZ:  I'm here with my colleague Mike

HCMLPHMIT00003831

1   Aigen, and Patricia Tomasky, who's a paralegal, and Fred

2   Jones, who are assisting.

3           THE COURT:  Okay.

4           MS. DEITSCH-PEREZ:  Thank you.

5           THE COURT:  Good morning to all.

6       All right.  I presume those are the only appearances, and

7   anyone else on the WebEx is an observer.

8       Do we have a housekeeping matters or shall we go to

9   opening statements?

10          MS. DEITSCH-PEREZ:  I have one housekeeping matter

11  I'd like to raise.  And this is really because Your Honor has

12  on many occasions chided us and said, why are you here, have

13  you done anything to try not to be here?

14      And this is not in the nature of settlement, but certain

15  things happened last week.  Last week, it became clear that

16  $73-odd million is going to come out of the Registry of the

17  Court into the estate, and another several million dollars is

18  going to come out because of the administrative claims,

19  because the Fifth Circuit just ruled, so it's another roughly

20  $80 million in the estate.  And there's already $80 million or

21  so in the estate, and there's $80-ish million left in claims.

22      And so what we had proposed is that, rather than spending

23  time and money fighting about all of this, we would agree to

24  put HCLOM's claim behind Class 8, which I believe has

25  otherwise been fully paid, and Class 9, because otherwise what

HCMLPHMIT00003832

1   the estate is doing here is bringing in money that's going to

2   be the residual left over for former equity, and we're willing

3   to put HCLOM back there anyway.  And then we wouldn't be

4   spending your time and our time and money to fight this, and

5   particularly with a sanctions motion to try and get fees from

6   Mr. Dondero.

7       I mean, honestly, Your Honor, what is the point, when

8   there's enough money there to pay everyone and basically

9   you're moving it from one pocket to the other, because at the

10  end of the day there's going to be money left over for former

11  equity?

12      And so I would ask that you use your ability to control

13  your docket and send us all home.

14          THE COURT:  Okay.  And by the way, I neglected to

15  ask, does Mr. Dondero have separate counsel today --

16          MS. DEITSCH-PEREZ:  No, I'm here --

17          THE COURT:  -- or you are also his counsel?

18          MS. DEITSCH-PEREZ:  Yes, I'm here for Mr. Dondero

19  also.

20          THE COURT:  All right.  So what I have heard is there

21  is an agreement by your client to essentially have a

22  subordinated claim behind all --

23          MS. DEITSCH-PEREZ:  Yes.

24          THE COURT:  -- Class 8, all Class 9?

25          MS. DEITSCH-PEREZ:  Yep.

HCMLPHMIT00003833

| | |
|---|---|
| 1 | THE COURT: It would come above equity. |
| 2 | MS. DEITSCH-PEREZ: Uh-huh. |
| 3 | THE COURT: Strand, I guess, or -- |
| 4 | MS. DEITSCH-PEREZ: Yeah, the 10 and 11, -- |
| 5 | THE COURT: I think I still remember this -- |
| 6 | MS. DEITSCH-PEREZ: Yeah. |
| 7 | THE COURT: -- organizational structure. And that, |
| 8 | of course, eliminates the sanction component of this. |
| 9 | What do you have to say, Mr. Morris? |
| 10 | MR. MORRIS: Sure. I'm just going to come to the |
| 11 | podium. I'm more comfortable there. |
| 12 | THE COURT: Uh-huh. |
| 13 | MR. MORRIS: I'm surprised and disappointed that |
| 14 | we're hearing this now. This is something that could have |
| 15 | been raised the day after we filed our objection. Instead of |
| 16 | raising this issue then, they filed a response, and we have |
| 17 | spent more than $600,000 litigating this matter. She's opened |
| 18 | the door now. Before there was a deposition taken, Your |
| 19 | Honor, we offered to pay them a half a million dollars for the |
| 20 | withdrawal of this claim. That was not accepted. |
| 21 | Here we are now. When I received this missive on |
| 22 | Saturday, saying, gee, it's not -- not complete what's being |
| 23 | said here. She also directed us to pay the Class 8 and Class |
| 24 | 9 in full, which we're not going to do unless and until the |
| 25 | Trustee determines that's in the estate's best interest. We |

HCMLPHMIT00003834

1  responded by saying, if that's what you want to do, then just

2  withdraw your claim with prejudice and we will withdraw our

3  bad faith motion.

4     So, instead of accepting that, they pushed on.  Right?

5  Because it doesn't matter.  If they're going to subordinate

6  that claim to 8 and 9, the claim becomes irrelevant, because

7  if there's ever a distribution to the Class 10, that's the

8  same person.  It's Jim Dondero.  Right?  We don't have to play

9  games here.

10    So I said, withdraw your claim with prejudice, we'll

11 withdraw our bad faith motion with prejudice, and we will have

12 no trial.  Not acceptable.

13    So here we are.  We've now spent the time.  They could

14 have made this proposal two years ago.  They didn't.  They

15 didn't accept the very generous offer that we made before a

16 deposition was taken in this case.  They've got no case here.

17 There's no legal basis for this claim.  There is no factual

18 basis for this claim.  We were prepared to actually write a

19 meaningful check and avoid the whole thing.  Not acceptable.

20 We're forced to go through it.

21    This is like HCRE all over again, where, like, I don't

22 know why we're here.  I really don't know why we're here.

23 It's the same person.  Right?

24    But they pushed me here, and I think we ought to, as long

25 as everybody's here, we ought to just get on with it and be

HCMLPHMIT00003835

Case 19-34054-sgj11 Doc 4255-7 Filed 12/06/25 Entered 12/06/25 22:39:29 Desc
Main Document Page 9 of 31
Exhibit 67 Page 9 of 32

8

1  done today.

2       THE COURT:  Well, I'm trying to figure out if it's

3  just a mechanical thing at this point.  I mean, I'm hearing

4  that your proposal is the claim be subordinated.

5       MS. DEITSCH-PEREZ:  Uh-huh.

6       THE COURT:  And --

7       MS. DEITSCH-PEREZ:  And the reason we don't agree

8  with Mr. Morris, and I'll correct a few of the things he said,

9  is there are some differences between HCLOM and former equity,

10  and we don't know what kind of tax or other implications there

11  would be from changing it from HCLOM's claim to dumping it

12  into some other category.

13       But as a practical and economic matter for the estate,

14  we're willing to have it at the back.  So it's no difference

15  to the estate.

16       And the reason we didn't make this proposal initially and

17  we made it last week is because of the very material change

18  that the estate suddenly has $80 million more.  And it should

19  be clear to everybody that there's enough money to pay

20  everyone.

21       It is also not true that I said to Mr. Morris that he had

22  to pay everybody this minute to make this claim, because then

23  I would be saying, oh, pay me next week.  That's not what I

24  said.  What I said was we would agree that if it turns out, as

25  we firmly believe and we're putting our money where our mouth

9

1   is, that there's enough money to pay everyone, then pay HCLOM

2   then.  They've already reserved the money for it.

3       And for them to say this is a ridiculous claim is itself

4   ridiculous.  This is not a proof of claim.  This is a claim

5   that Highland scheduled, not just when Mr. Dondero was at the

6   helm but when Mr. Seery was at the helm.  And then he

7   reaffirmed it for years afterwards.  It's only when they

8   realized that allowing the claim would benefit Mr. Dondero,

9   among others, that they did an about-face and said, oh, no,

10  now we object to the claim.

11          THE COURT:  Okay.  Now we're getting into argument.

12          MS. DEITSCH-PEREZ:  Okay.

13          THE COURT:  And I promise you, I've read every single

14  --

15          MS. DEITSCH-PEREZ:  Okay.

16          THE COURT:  -- sentence of every single pleading.

17          MR. MORRIS:  Yeah.

18          THE COURT:  So I know what the counter-arguments are.

19          MS. DEITSCH-PEREZ:  And --

20          THE COURT:  I'm going to suggest this.  Can we take a

21  15-minute break?  And we are pressed for time today, because I

22  think I told you all, or maybe, I mean, not me, but Traci

23  probably told you all that I have a presentation at 6:00

24  o'clock tonight.  It's five minutes away, but --

25          MR. MORRIS:  I think --

HCMLPHMIT00003837

1       THE COURT:  What I'm really afraid of is you

2   mentioned HCRE.  I remember when we were in the devil-is-in-

3   the-details kind of situation there, where we didn't really

4   have a meeting of the minds on what might happen with a

5   withdrawal of that claim.

6       So might I suggest a 15-minute break, and you can write it

7   down and sign it in blood.  I hate to say it.  But if it's

8   something that you both can get to the same point on.

9       MR. MORRIS:  I'm happy to do it, but I just want to

10  make this really clear on the record.  The reason that we were

11  prepared to agree to withdrawal of our bad faith motion in

12  exchange for disallowance of the scheduled claim is because we

13  would have no theoretical let alone legal duty to HCLOM.  And

14  that's where we need to get to.  That's why we're going

15  forward today.  That's why their settlement proposal was

16  unacceptable.

17      We probably -- I'd have to confer with my client, but we

18  probably would still be willing to withdraw the bad faith

19  motion with the disallowance of the scheduled claims.  But the

20  subordination of it, to leave it hanging out there to create

21  new arguments that we owe some kind of duty is unacceptable.

22      MS. DEITSCH-PEREZ:  And that --

23      THE COURT:  All right.  Wouldn't you know at this

24  point in time if there's a tax consequence or some sort of

25  negative consequence from withdrawal?  Withdrawal seems weird

HCMLPHMIT00003838

1  because it's a scheduled claim.

2          MR. MORRIS:  That's why I say disallowance.

3          MS. DEITSCH-PEREZ:  It's --

4          THE COURT:  Disallowance versus subordination?

5          MS. DEITSCH-PEREZ:  We don't know.  And there's

6  really no --

7          THE COURT:  Why wouldn't you, after all of this time?

8          MS. DEITSCH-PEREZ:  Because this only came up last

9  week, and I don't know how many other things one would have to

10  look at to know that, Your Honor.

11      But the bottom line is we don't.  And there's also no

12  reason, because it is economically no different for the Debtor

13  to put us behind 9 than to disallow it, because there's going

14  to be --

15          THE COURT:  Oh, okay.  Well, --

16          MS. DEITSCH-PEREZ:  -- money left over.

17          THE COURT:  -- I still want the 15-minute break, --

18          MR. MORRIS:  Okay.

19          THE COURT:  -- because it seems like there's a

20  mechanic, such as I think the HCRE issue was --

21          MR. MORRIS:  They were saving claims for another day.

22          MS. DEITSCH-PEREZ:  And --

23          MR. MORRIS:  That's what we want to avoid doing here

24  today.

25          THE COURT:  Yes.  That this claim would never be used

1  --

2          MR. MORRIS:  We want to make sure that we have

3  finality, --

4          THE COURT:  -- in litigation.

5          MR. MORRIS:  -- that we're never going to see this

6  again.

7          THE COURT:  It would never be used in any future

8  litigation.

9          MS. DEITSCH-PEREZ:  Right.  That I could -- as I

10  stand here now, I don't know of any claims that HCLOM has

11  other than this.  And the time to make them is long past.  I

12  mean, the bar date has passed.  The schedules are the

13  schedules.

14          THE COURT:  But that would be against Highland, not

15  against who knows who else.  I mean, I don't know.

16          MS. DEITSCH-PEREZ:  But why does the Debtor -- I

17  mean, why does that matter to the Debtor?

18          THE COURT:  Well, --

19          MS. DEITSCH-PEREZ:  I mean, I also don't know of any

20  claims HCLOM has against anybody else, but why is --

21          THE COURT:  Mr. Seery has been the subject of a lot

22  of claim litigation.  Or trying to assert a claim.

23          MR. MORRIS:  Your Honor?

24          THE COURT:  Fifteen-minute break.

25          MS. DEITSCH-PEREZ:  I'll give you an example.

HCMLPHMIT00003840

1          MR. MORRIS:  Can we take that 15-minute break?

2          THE COURT:  Yes.  Yes.

3          MR. MORRIS:  Yes.  Thank you.

4          THE COURT:  All right.  Thank you.

5          THE CLERK:  All rise.

6      (A recess ensued from 9:18 a.m. until 9:47 a.m.)

7          THE CLERK:  All rise.

8          THE COURT:  All right.  Please be seated.

9      All right.  Do we have anything that looks like a

10  compromise and settlement, or no?

11          MS. DEITSCH-PEREZ:  We do.  Can I take your computer?

12          MR. MORRIS:  Sure.

13          MS. DEITSCH-PEREZ:  Or somebody's computer?

14          MR. MORRIS:  It's Hayley's.  But you can read it if

15  you want.

16          MS. DEITSCH-PEREZ:  Okay.

17          MR. MORRIS:  Your Honor, just context, we greatly

18  appreciate the Court's indulgence of time.  It was used

19  constructively.  I believe that we have reached an agreement

20  to resolve today's matter.

21      And with that, I'm going to have Ms. Deitsch-Perez read

22  the written terms that we have right now.  Obviously, it'll be

23  subject to definitive documentation, which we would work on

24  promptly today.

25      But why don't you take it from here?

HCMLPHMIT00003841

1          MS. DEITSCH-PEREZ:  Okay.

2          THE COURT:  Okay.

3          MS. DEITSCH-PEREZ:  And I'm not going to include your

4   asterisks.  The --

5          THE COURT:  And can I ask you to come to the podium

6   and speak into the mic?  I just want it crystal clear on the

7   record whatever is said.

8          MS. DEITSCH-PEREZ:  Okay.  Come.  Yes.  Come.

9      Okay.  The HCLOM claim would be converted to a Class 10

10  interest in the same amount.

11         THE COURT:  Okay.

12         MS. DEITSCH-PEREZ:  Okay.  HCLOM would release

13  protected parties.

14         MR. MORRIS:  It would be a general release.

15         THE COURT:  Uh-huh.

16         MS. DEITSCH-PEREZ:  But only by HCLOM.

17         MR. MORRIS:  Correct.  Only HCLOM Limited.

18         MS. DEITSCH-PEREZ:  HCLOM would not separately make

19  equity motions, like Hunter Mountain.  However, because of the

20  change in circumstances, I just want this to be clear.  Hunter

21  Mountain or Dugaboy may have -- may want to bring to the

22  Court's attention the change in the finances in the estate.

23         MR. MORRIS:  Your Honor, --

24         MS. DEITSCH-PEREZ:  But it would --

25         MR. MORRIS:  -- I really would prefer that we just

1  read the terms of the agreement, and then she can put down the

2  commentary.  I'm going to do this the way we have -- the way

3  we have it written, and then she can provide whatever

4  commentary she'd like.

5      There's five elements to this settlement.

6          THE COURT:  Okay.

7          MR. MORRIS:  HCLOM claim will be converted to a Class

8  10 interest in the amount of the claim.

9      Number 2, there shall be a general release of all

10  Protected Parties, as that term is defined in the plan.

11     There will be no "equity" type motion by HCLOM Limited.

12  HCLOM Limited shall take no position in connection with this

13  case, including but not limited to in connection with this

14  scheduled claim, as a holder of a Class 10 interest.

15     Number 4, no estate fiduciary, Highland Capital

16  Management, LP, will owe any duty of any kind, whether it's

17  contractual, fiduciary, or otherwise, now or forever.

18     And Number 5, there shall be no reserve established.

19          THE COURT:  Let me -- let me --

20          MS. DEITSCH-PEREZ:  Let --

21          THE COURT:  -- make sure I heard that point.

22          MR. MORRIS:  Uh-huh.

23          THE COURT:  No estate fiduciary or Highland.  What --

24          MS. DEITSCH-PEREZ:  Other than this agreement.  I

25  mean, --

HCMLPHMIT00003843

1          MR. MORRIS:  Sure.

2          THE COURT:  Just, if you could just repeat what you

3     said.

4          MR. MORRIS:  There -- no estate fiduciary or Highland

5     Capital Management or the Trust shall owe any duty of any kind

6     to HCLOM Limited, including but not limited to contractual,

7     fiduciary, or any other duty.

8          MS. DEITSCH-PEREZ:  Except the duties owed as a

9     result of this agreement.  In other words, you're not saying

10    we'll make this agreement but, ha ha, you can't enforce it?

11    That's all.

12         MR. MORRIS:  The only thing that would be enforced is

13    they would have a Class 10 interest.

14         MS. DEITSCH-PEREZ:  Right.

15         MR. MORRIS:  Right?

16         MS. DEITSCH-PEREZ:  It would have its Class 10

17    rights.

18         MR. MORRIS:  Period, full stop.  So that's fine.

19       And then no reserve shall be established.

20       There actually has been a reserve.  That reserve can be

21    released.  There will be no further reserve with respect to

22    this 10 interest.

23       And, you know, we need to make sure, and I don't know that

24    counsel has the authority to do that today, but we need to

25    make sure that neither HMIT nor Dugaboy, the Class 10 and

HCMLPHMIT00003844

1 | Class 11 interest holders, have any objection to this. It's
2 | got to be subject to their consent.
3 |      MS. DEITSCH-PEREZ: Although I guess I still don't
4 | quite understand, because right now HCLOM is ahead of them,
5 | but I -- so now they're moving into --
6 |      MR. MORRIS: Because if we had the trial today, I'm
7 | fairly confident that the claim would be disallowed.
8 |      MS. DEITSCH-PEREZ: And I'm equally confident that it
9 | would not be --
10 |      MR. MORRIS: Okay. So --
11 |      MS. DEITSCH-PEREZ: -- and that it would be ahead.
12 |      MR. MORRIS: So we're having a settlement that could
13 | impact them. So --
14 |     Just to state this really simply, Your Honor, because I
15 | want intent to be really clear on the record: HCLOM Limited
16 | is going to walk away with the economic interest of having an
17 | allowed Class 10 interest in the amount of the claim and
18 | nothing more, as if we actually tried the case today and the
19 | scheduled claim was disallowed. That's the point that we
20 | continue to make, that if we had this case, the reason why we
21 | really wanted to push forward to this case today and really
22 | what we were talking about before we took the break is we
23 | didn't want any continuing duty of any kind.
24 |     So this is why -- this is the compromise here. Highland
25 | gets what it wants, and that is, as a legal matter, the claim

HCMLPHMIT00003845

```
 1 │ has been effectively disallowed.  HCLOM gets what it wants,
 2 │ because, as an economic matter, when and if Class 10 claim --
 3 │ interest holders get paid, they'll get a distribution,
 4 │ presumably prorated with HMIT if HMIT is ultimately found to
 5 │ have, you know, an allowed claim.
 6 │      That's really it.  We want the protection as if the claim
 7 │ had been disallowed in full, no strings attached.  And they're
 8 │ going to get, in exchange for that, they're going to get the
 9 │ economic benefit of holding a Class 10 interest.
10 │           THE COURT:  Okay.  Let me ask the obvious question.
11 │ It seemed to the Court that standing was the issue.  When we
12 │ had this back and forth before the break, Highland wanted
13 │ disallowance.  Your client wanted subordination.  And we all
14 │ know that there have been many adversary proceedings and many
15 │ appeals where the standing of the plaintiff, the standing of
16 │ the appellant, was challenged.  And some court, maybe this
17 │ one, maybe an appellate court, said no standing of Mr.
18 │ Dondero.  Hunter Mountain.  You know.
19 │           MS. DEITSCH-PEREZ:  These are --
20 │           THE COURT:  Is this the rub here, or are we in
21 │ agreement from these five elements that HCLOM will not have
22 │ standing to bring actions or to pursue appeals that involve --
23 │           MS. DEITSCH-PEREZ:  We're --
24 │           THE COURT:  -- somehow Highland?
25 │           MS. DEITSCH-PEREZ:  We're basically -- and this is
```

HCMLPHMIT00003846

1  why I was trying to give a little color earlier, which is to

2  say circumstances have changed.

3      So former equity, Classes 10 and 11, are in a position to

4  say, Your Honor, look, see how much money there is in the

5  estate.  Now can you agree that we have standing?  But we're

6  not going to rely on the addition of HCLOM to say it's somehow

7  different than if Hunter Mountain had done it or Dugaboy had

8  done it.  Is that -- is that clear?

9          MR. MORRIS:  Let me make sure that I understand.

10 This settlement has no impact on Dugaboy or HMIT.  It doesn't.

11 They've done whatever they wanted.  They'll continue to do

12 whatever they wanted, unfortunately.  But what the third

13 bullet point says is that HCLOM Limited shall take no position

14 in connection with this case.  Period, full stop.

15         MS. DEITSCH-PEREZ:  Other than --

16         MR. MORRIS:  Other than -- other than if, you know,

17 if we gave a distribution to HMIT but didn't give it to HCLOM

18 Limited, they can come in and complain about that.  That's

19 their economic right.

20         MS. DEITSCH-PEREZ:  Right.  We could complain about

21 --

22         MR. MORRIS:  Economic right.

23         MS. DEITSCH-PEREZ:  -- the economic -- about whether

24 we get or don't get what we've just agreed to.  I mean, we

25 have rights arising out of this agreement.

HCMLPHMIT00003847

1        THE COURT:  Okay.  Would it be -- it might be

2    superfluous, but any problem with either one of you just

3    saying in this agreement, This compromise and settlement

4    agreement does not operate to give HCLOM standing in

5    connection with any adversary, any appeal?

6        MS. DEITSCH-PEREZ:  Not if it related to a violation

7    of the settlement.  So I think it's an unnecessary thing to

8    say.

9        THE COURT:  Except to enforce the settlement

10   agreement?  Could it have that proviso?

11       Because here's where I'm standing.  Standing.  No pun

12   intended, actually.  I mean, you mentioned that I have an

13   obligation or duty to manage my docket.  But I feel like I

14   also have a duty not to clog the court system, including the

15   appellate system, by entering an agreed order that might be

16   construed later, look, --

17       MS. DEITSCH-PEREZ:  Well, --

18       THE COURT:  -- she acknowledged we have a Class 10

19   interest and therefore we have standing.  Okay?

20       MS. DEITSCH-PEREZ:  Your Honor?

21       THE COURT:  Do you see what I'm saying?  I have some

22   duty here, too, to make sure I have not created a standing

23   argument where one --

24       MS. DEITSCH-PEREZ:  There --

25       THE COURT:  -- might not have existed.

HCMLPHMIT00003848

1          MS. DEITSCH-PEREZ:  There's nothing about this

2    agreement that creates any standing other than with respect to

3    the agreement itself.  And I would be loath to say something

4    that might be misconstrued about that.  It's simply

5    unnecessary.

6        And it's not, it's not clogging the courts for parties to

7    appeal those decisions with which they disagree.  And this

8    settlement is actually efficient, in the sense that surely

9    everybody here is aware that if we went forward on this case,

10   whoever lost would appeal.

11       So this is managing both this docket and lessening the

12   flow of --

13          THE COURT:  So, --

14          MS. DEITSCH-PEREZ:  -- cases into the future.

15          THE COURT:  -- to make me feel like I have done my

16   duty, you all would add a sentence that this order, this

17   agreed order, whatever you're calling the document, does not

18   operate to give standing to HCLOM for any purposes related to

19   the Highland estate except to allow it to enforce this order?

20          MS. DEITSCH-PEREZ:  I mean, I'll have to go back and

21   ask, but that sounds -- that sounds okay.  You know, as in

22   this case, you're right, the devil is always in the details,

23   but that sounds like what we've been saying.

24          THE COURT:  Okay.

25          MR. MORRIS:  I just --

1    THE COURT: You'll have to ask your client? I think
2  I saw him here earlier. Has he left?
3    MS. DEITSCH-PEREZ: If he is, I'll go -- I'll go and
4  call him in the hall.
5    THE COURT: Okay. Okay.
6    MR. MORRIS: I just added a sixth clause that says,
7  This order shall not operate -- does not and shall not operate
8  -- does not and shall not operate to give standing to HCLOM
9  Limited for any purpose against Highland -- against the
10 Highland estate except to enforce this order.
11    THE COURT: Uh-huh.
12    MR. MORRIS: And I just, I just need to respond to
13 that last comment. Right? We know they've appealed your
14 gatekeeper order. We know that they've, you know, we're in
15 the Fifth Circuit now on recusal. There's no indication
16 whatsoever that this case is nearing a conclusion. We have no
17 more contested matters before you, at least as of this moment,
18 Your Honor. There's no more adversary proceedings that I know
19 of at this moment. I'm going to cross my fingers and hope
20 that the appellate court upholds the orders of this Court, the
21 orders that have -- from the district court that affirmed your
22 orders.
23    But, clearly, Mr. Dondero still has an appetite for
24 litigation. He is still pursuing, you know, attacking the
25 gatekeeper. He's still pursuing your recusal. So I think --

HCMLPHMIT00003850

 1 | I think the --
 2 | THE COURT:  You know, I don't keep --
 3 | MR. MORRIS:  Yeah.
 4 | THE COURT:  -- as close tabs --
 5 | MR. MORRIS:  Yeah.
 6 | THE COURT:  -- as lawyers might think I --
 7 | MR. MORRIS:  Right.
 8 | THE COURT:  -- do on appeals.
 9 | MR. MORRIS:  Uh-huh.
10 | THE COURT:  But I do think I read where the recusal
11 | order was -- was --
12 | MS. DEITSCH-PEREZ:  It --
13 | THE COURT:  It's a done deal.  They --
14 | MS. DEITSCH-PEREZ:  No, Your Honor.
15 | MR. MORRIS:  No.  No, they brought in Jonathan
16 | Mitchell, the former Solicitor General of the State of Texas,
17 | and John Ashcroft, the former Attorney General of the United
18 | States.
19 | THE COURT:  He's still alive?  I don't mean to be
20 | rude, but --
21 | MR. MORRIS:  I thought it was his son.
22 | MS. DEITSCH-PEREZ:  No, Your Honor.
23 | MR. MORRIS:  It's a great question.  With all due
24 | respect to Mr. Ashcroft, --
25 | THE COURT:  Yes?

HCMLPHMIT00003851

 1          MR. MORRIS:  -- I mean no disrespect whatsoever, --

 2          THE COURT:  Uh-huh.

 3          MR. MORRIS:  -- but when I heard that I thought it

 4   was his son, too.  But yes, --

 5          MS. DEITSCH-PEREZ:  No.

 6          MR. MORRIS:  -- they're on the brief, and they filed

 7   a motion for a petition for a rehearing *en banc*.

 8          MS. DEITSCH-PEREZ:  And --

 9          MR. MORRIS:  And our answer is due on December 26th.

10          MS. DEITSCH-PEREZ:  Yeah.  But --

11          MR. MORRIS:  So we'll see where that goes.  But the

12   point being that it validates Mr. Seery and Highland's

13   concerns that there be no ability to create another vehicle,

14   to create more litigation, and it validates the very concern

15   that Your Honor was addressing earlier on the same topic.

16      I think we're in agreement here, --

17          MS. DEITSCH-PEREZ:  Right.

18          MR. MORRIS:  -- but I want there to be context for

19   why we're so insistent that there be no duty of any kind and

20   no ability of HCLOM all of a sudden to start raising its hand

21   and commencing litigation.

22          MS. DEITSCH-PEREZ:  Okay.  And I do want to thank Mr.

23   Morris for bringing this up and making the recusal status --

24   correcting it.

25      And for all of the complaints and saying these appeals are

HCMLPHMIT00003852

```
 1 │ not well-founded, it is not often that the Fifth Circuit
 2 │ actually asks a respondent to answer an *en banc* petition, much
 3 │ less require them to do it the day after Christmas, which I am
 4 │ sorry about.  They're an equal opportunity lawyer
 5 │ inconveniencer.
 6 │    So I would just ask that we -- that Highland tone down the
 7 │ attacks on the appeals, because there have been ones that have
 8 │ been upheld.
 9 │           THE COURT:  Okay.  I, you know, --
10 │           MS. DEITSCH-PEREZ:  That's all.
11 │           THE COURT:  -- I didn't think Highland's lawyer's
12 │ tone was at all, you know, angry or elevated or whatever
13 │ you're thinking.
14 │           MS. DEITSCH-PEREZ:  I --
15 │           THE COURT:  Okay?  I have been approached by judge
16 │ colleagues in the circuit who have told me there have been
17 │ more appeals out of the Highland bankruptcy than any other
18 │ bankruptcy in Fifth Circuit history.  Okay?  So to say there
19 │ have been a whole lot of appeals is just factually correct.  I
20 │ don't know the number.
21 │           MR. MORRIS:  It's 15, Your Honor.  And there's more
22 │ in the pipeline.
23 │           THE COURT:  There -- what?
24 │           MR. MORRIS:  There have been 15 so far.  There's more
25 │ in the pipeline.
```

 1              THE COURT:  Wait, wait.  Okay.  You're talking at the

 2    Fifth Circuit?

 3              MR. MORRIS:  Correct.

 4              THE COURT:  But --

 5              MR. MORRIS:  Oh, there has been dozens in the

 6    district.

 7              THE COURT:  I think at one point a year or two ago

 8    you told --

 9              MR. MORRIS:  Yeah.

10              THE COURT:  -- me 50-plus.

11              MR. MORRIS:  Right, right.  I am just -- I am just

12    talking about the Fifth Circuit.  I've never heard of a

13    circuit court in the United States of America that's had 15

14    appeals from any case, let alone a bankruptcy case.

15              MS. DEITSCH-PEREZ:  Hmm.

16              THE COURT:  So, anyway, it is what it is.  But part

17    of the reason I'm engaging in this back and forth is, again,

18    we all have our duties.  You have duties to your clients.  I

19    have duties to the system, okay.  And if I sign anything that

20    all of a sudden is going to create standing where it might not

21    have existed had I allowed this to be litigated today, then I

22    think I've been derelict in my duties.  So it's essential, as

23    far as I'm concerned.

24         So do we need a five-minute break?  I'm telling you, if we

25    have to go forward today, which it's looking like we won't,

1  but if we have to, it's going to be compressed, because we've

2  got to finish --

3          MR. MORRIS:  Right.

4          THE COURT:  -- by 5:30.

5          MR. MORRIS:  I think the only thing I would request

6  is that Ms. Deitsch-Perez just confirm --

7          MS. DEITSCH-PEREZ:  Ask about the sixth.

8          MR. MORRIS:  -- that -- confirm that Number 6 is

9  acceptable.

10          THE COURT:  Okay.  She suggested she might need to

11  run it by --

12          MR. MORRIS:  Yeah.

13          MS. DEITSCH-PEREZ:  Yeah.

14          THE COURT:  -- the client.

15          MS. DEITSCH-PEREZ:  Let's -- can we take five

16  minutes?

17          THE COURT:  Five minutes.

18          MR. MORRIS:  Thank you, Your Honor.

19          THE COURT:  Okay.  Thank you.

20          THE CLERK:  All rise.

21      (A recess ensued from 10:05 a.m. until 10:12 a.m.)

22          THE CLERK:  All rise.

23          THE COURT:  Okay.  Please be seated.

24      All right.  We're back on the record in Highland.  Have we

25  gotten to closure on all the issues or not?

1  MS. DEITSCH-PEREZ:  We have, Your Honor.

2  THE COURT:  Okay.

3  MR. MORRIS:  And so what we'd like to do is Highland

4  is going to take the laboring oar of doing an initial draft of

5  a stipulated order.  We expect to get that to Stinson today.

6  And we'd like to just put a loose deadline to report to the

7  Court if we're unable to file this document, let's just say by

8  the 24th, next -- I think it's Tuesday.

9  And if we're unable to do it by then, we'll ask for

10  another date for coming back.  But I do just want to keep a

11  deadline there just so --

12  MS. DEITSCH-PEREZ:  I think it's a week.  Okay.

13  MR. MORRIS:  A week is -- it's six days instead of

14  five days because I didn't want to take Christmas.  That's

15  just me.

16  THE COURT:  Okay.  Sounds reasonable to me.

17  MR. MORRIS:  Yeah.

18  THE COURT:  Sounds more than reasonable that you can

19  work this out --

20  MR. MORRIS:  Yeah.

21  THE COURT:  -- with language within six days.

22  MR. MORRIS:  I do appreciate Ms. Deitsch-Perez's

23  listening and getting to yes on this.  It's a good result.

24  THE COURT:  Okay.

25  MR. MORRIS:  Thank you, Your Honor.

HCMLPHMIT00003856

1          MS. DEITSCH-PEREZ:  Thank you, Your Honor.

2          THE COURT:  Anything you want to add, or you're in

3   agreement with everything you just heard, Ms. Deitsch-Perez?

4          MS. DEITSCH-PEREZ:  Yes.

5          THE COURT:  Okay.

6          MR. MORRIS:  Deborah?

7          MS. DEITSCH-PEREZ:  What?

8          MR. MORRIS:  I assume part of this is withdrawing the

9   bad faith motion?

10          MS. DEITSCH-PEREZ:  Oh, yes.

11          MR. MORRIS:  Yes.  I can confirm that that's Element

12  Number 7.  The bad faith motion will be deemed withdrawn.

13          THE COURT:  Okay.  All right.  Well, --

14          MS. DEITSCH-PEREZ:  Well, will be withdrawn.

15          MR. MORRIS:  Yeah.  Thank you.

16          THE COURT:  All right.  I would have been happy to

17  spend a whole day with you all, but we can now go on and take

18  care of other business, I guess.

19     So I thank you all for getting this resolved.  And I'm not

20  going to be a happy camper if I don't see an order.  I mean,

21  the battle of the forms, I really don't think we need to have

22  that here.  Okay?

23          MR. MORRIS:  Yep.

24          THE COURT:  So, --

25          MR. MORRIS:  Thank you, Your Honor.

HCMLPHMIT00003857

1          THE COURT:  All right.  Happy holidays to everyone.

2          MR. MORRIS:  You, too.

3          MS. DEITSCH-PEREZ:  You, too.

4          THE CLERK:  All rise.

5       (Proceedings concluded at 10:15 a.m.)

6                          --oOo--

7

8

9

10

11

12

13

14

15

16

17

18

19

20                      CERTIFICATE

21      I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
22   above-entitled matter.

23      **/s/ Kathy Rehling**                        **12/19/2024**

24   _____      _____

25   Kathy Rehling, CETD-444                        Date
     Certified Electronic Court Transcriber

31

INDEX

1

PROCEEDINGS                                                      3

2

WITNESSES

3

-none-

4

EXHIBITS

5

-none-

6

RULINGS                                                        29

7

END OF PROCEEDINGS                                             30

8

INDEX                                                          31

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HCMLPHMIT00003859