**EXHIBIT 107**



# PARTICIPATION AGREEMENT FOR PAR/NEAR PAR TRADES

## TRANSACTION SPECIFIC TERMS

THIS PARTICIPATION AGREEMENT FOR PAR/NEAR PAR TRADES is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Participation in the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the LSTA Standard Terms and Conditions for Participations for Par/Near Par Trades, published as of July 21, 2023 (the "Standard Terms"). The Standard Terms and (if applicable) the Collateral Annex are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms, the Collateral Annex (if applicable) and the Transaction Specific Terms together constitute a single integrated Participation Agreement for Par/Near Par Trades governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| **Trade Date:** | **Agreement Date** |
| **Agreement Date:** | **July 18, 2024** |
| **Seller:** | **Highland Capital Management, L.P.** |
| **Buyer:** | **HIGHLAND INDEMNITY TRUST** |
| **Credit Agreement:** | **That certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as the Payee (the "Note")** |
| **Borrower:** | **The Dugaboy Investment Trust** |
| **Purchase Amount(s):** | **$18,174,936.62** |
| **Tranche(s):** | |
| **CUSIP Number(s), if available:** | |
| **Delivery of Credit Documents:** | Yes ☒    No ☐ |
| **Netting Arrangements:** | Yes ☐    No ☒ |
| **Set-Off Applicable:** | Yes ☐    No ☒ |
| **Collateral Annex Applicable:** | Yes ☐    No ☒ |
| **Elevation:** | Yes ☒    No ☐ |

A. **DEFINITIONS**

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means none.

"Assignment" means an assignment of the Loans.

"Buyer Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Collateral Annex" means the Collateral Annex to the Participation Agreement for Par/Near Par Trades published by the LSTA as of July 21, 2023.

"Commitments" select one:
☒ none.
☐ means [identify applicable commitment tranche(s) using Credit Agreement definitions] in the principal amount of $/£/€_____ [in each case specify the aggregate amount of the Loans, the Unfunded Commitments and the portion, if any, of the Commitments that is irrevocably "frozen" (i.e., that is not subject to future drawing)].

"Elevation Transfer Fee" means none.

"Loans" means the outstanding principal amount of the Note as of the Trade Date payable to Seller pursuant to the Note (which amount, for the avoidance of doubt, equals 97.6835% of the total outstanding principal amount of the Note).

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

"Participation Required Consents" means none.

"Participation Transfer Fee" means the transfer fee (if any) set forth in Section E.1 payable to Seller in connection with the assignment by Buyer of all or any portion of the Participation, subject to Section 10.1 of the Standard Terms and Conditions.

"Penultimate Buyer" select one:
☒ not applicable.
☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Seller Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Unfunded Commitments" means none.

**B.    SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**C.** **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS; COMMITMENT REDUCTIONS)**

**C.1** Section 8.3 (<u>Wire Instructions</u>).

<u>Buyer's Wire Instructions</u>:

Bank: M&T Bank
ABA No.: 031100092
Acct.: Highland Indemnity Trust
Acct. No.: 150474-000
Attn.: Neumann Marlett III
Ref.: True Sale Participation 100% Dugaboy Note

<u>Seller's Wire Instructions</u>:

Bank: East West Bank
ABA No.: 322070381
Acct.: Highland Capital Management, LP
Acct. No.: 5500014686
Attn.: Corporate Accounting
Ref.: True Sale Participation 100% Dugaboy Note

**C.2** Section 8.8 (<u>Set-Off</u>).

If "Yes" is specified opposite "Set-Off" in the Transaction Summary, clause (i) of the proviso to the second sentence of Section 8.8 shall apply.

**D.** **SECTION 9 (NOTICES; RECORDS)**

<u>Buyer's Address for Notices and Delivery</u>:

Highland Indemnity Trust
100 Crescent Court, Suite 1850
Dallas, Texas 75201
Attention: James P. Seery, Jr.
Electronic Mail Address: jpseeryjr@gmail.com; jseery@highlandcapital.com

with a copy (which shall not constitute notice) to:

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Attention: Highland Capital Lead Partner

<u>Seller's Address for Notices and Delivery</u>:

Highland Capital Management, L.P.
100 Crescent Court, Suite 1850
Dallas, Texas 75201
Attention: Chief Financial Officer
Electronic Mail Address: Notices@highlandcapital.com

**E.** **SECTION 10 (FURTHER TRANSFERS)**

**E.1** Select one:

☒ There is no Participation Transfer Fee.

☐ There is a Participation Transfer Fee, in the amount of $/£/€_____.

**E.2** If an Affiliate of Buyer that is a buyer under a participation agreement with Seller entered into as of the same day as this Agreement makes a Pre-Elevation Transfer (whether or not such transfer is so defined under such participation agreement) of loans and commitments (if any) under the Credit Documents subject

to such participation agreement on the same day as Buyer, on substantially similar documents and to the same Entity as Buyer:

☐ Buyer and such Affiliate(s) of Buyer shall pay only one Participation Transfer Fee.

☐ Buyer and each such Affiliate of Buyer shall pay a separate Participation Transfer Fee in respect of each such Pre-Elevation Transfer.

☒ Not applicable (there is no Participation Transfer Fee).

**E.3** Section 10.1 Right of Buyer to sell subparticipations:

☒ Buyer may sell subparticipations in respect of the Transferred Rights without Seller's prior consent. Section 10.1(b) of the Standard Terms and Conditions will apply.

☐ Buyer may not sell subparticipations in respect of the Transferred Rights without Seller's prior consent. Section 10.1(b) of the Standard Terms and Conditions will not apply.

**F.** **SECTION 11 (VOTING)**

**F.1** "Voting" select one:

☒ Buyer shall have voting rights with respect to the Transferred Rights, subject to Section 11.1(a) of the Standard Terms and Conditions.

☐ Buyer shall have no voting rights in respect of the Transferred Rights, subject to Section 11.1(b) of the Standard Terms and Conditions, except with respect to the following matters: _____.

**F.2** For purposes of determining the Majority Holders or Majority Claims Holders pursuant to Section 11.1(a) of the Standard Terms and Conditions:

☐ the interests or claims held by Seller for its own account shall be counted;

☐ the interests or claims held by Seller for its own account shall not be counted;

☒ Not applicable;

AND

☐ the interests or claims held by Affiliates of Seller shall be counted.

☐ the interests or claims held by Affiliates of Seller shall not be counted.

☒ Not applicable.

**G.** **SECTION 15 (ELEVATION)**

**G.1** Select one:

☒ There is no Elevation Transfer Fee.

☐ The Elevation Transfer Fee shall be paid as follows:

☐ The Elevation Transfer Fee shall be paid by Seller to the Agent and Buyer shall reimburse Seller in an amount equal to
  ☐ one-half thereof.
  ☐ [other relevant fraction or percentage] _____ thereof.
☐ The Elevation Transfer Fee shall be paid by Buyer to the Agent and Seller shall reimburse Buyer in an amount equal to
  ☐ one-half thereof.
  ☐ [other relevant fraction or percentage] _____ thereof.

**G.2** If "No" is specified opposite "Elevation" in the Transaction Summary, then select one:

☐   No Elevation shall be permitted unless requested by Seller and otherwise subject to Section 15.

☐   Subject to Section 15, Seller may at any time request an Elevation and Buyer may request an Elevation only in the following circumstances: _____
_____.

H.   **SECTION 31 (ADDITIONAL PROVISIONS)**

The following additional provisions, including any modifications to existing provisions, apply:

"**Claimant Trust**" has the meaning set forth in the Indemnity Trust Agreement

"**Direction Letter**" means that certain Direction Letter, dated as of the Agreement Date, by and among Seller, HCMLP GP LLC, Highland Claimant Trust, and Buyer.

"**Indemnity Trust Agreement**" means that certain First Amended and Restated Indemnity Trust Agreement, dated as of July 1, 2024, by and among the Highland Claimant Trust, as grantor (the "**Grantor**"), James P. Seery, Jr., as indemnity trust administrator, Wilmington Trust, National Association, a national banking association, as indemnity trustee, for the benefit of Beneficiaries, and as the Delaware trustee, as the same may be amended, modified or supplemented from time to time.

"**Lender**" means a Payee under the Note.

"**Purchase Price**" means none (for the avoidance of doubt, the Participation shall constitute a contribution by the Grantor to Buyer pursuant to the Direction Letter and in accordance with the Indemnity Trust Agreement).

"**Settlement Date**" means the Agreement Date.

For the avoidance of doubt, Buyer is entitled to all interest accrued and unpaid on the Note through the Agreement Date.

Until the earlier of (x) the termination of this Agreement and (y) thirty (30) day's prior written notice by either Party to the Party, Seller shall provide the following services for the benefit of Buyer with respect to the Note:

(i)   Maintain the schedule of Annual Installments (as defined in the Note);

(ii)  Monitor the Borrower's compliance with the terms of the Note;

(iii) Confirm wire instructions and amounts for payments under the Note with the Borrower's personnel;

(iv)  Communicate with the Borrower as needed, including with respect to noticing any events of default;

(v)   Provide bookkeeping and fair value information to Buyer and perform other related miscellaneous requests with respect to the Note and the Participation, in each case, as reasonably requested by Buyer.

As consideration for providing such services, Buyer shall pay to Seller an annual fee equal to 10 bps of Buyer's share of the then outstanding principal amount of the Note. Such fee shall be payable only to the extent the Borrower makes its required Annual Installment payment to Seller under the Note, and notwithstanding anything in this Agreement to the contrary, Seller shall be permitted to set-off the amount of such fee against Buyer's right to receive payments with respect to the Transferred Rights and the Participation.

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

**By: HCMLP GP LLC, its General Partner**

By: _____
    Name: James P. Seery, Jr.
    Title: President

**BUYER**

**HIGHLAND INDEMNITY TRUST**

By: _____
    Name: James P. Seery, Jr.
    Title: Indemnity Trust Administrator

**ANNEX TO PARTICIPATION AGREEMENT FOR PAR/NEAR PAR TRADES**

This Participation is a "true-participation" intending to transfer all of Seller's right, title and beneficial interest in and to the Loans to Buyer.

The amount of any PIK Interest that accreted to the principal amount of the Loans on or after the Trade Date but on or prior to the Settlement Date is $0.

Annex-1

HCMLPHMIT00002600