# EXHIBIT 3

Case 19-34054-sgj11 Doc 2547-3 Filed 07/09/21 Entered 07/09/21 20:26:29 Page 2 of 6
Exhibit 3 - July 9, 2021 Memo on DAFs and Sponsoring Orgs    Page 2 of 6

EXHIBIT 3

# MEMORANDUM

**Date: July 9, 2021**

**To:** Mark Patrick

**Company:** Charitable DAF Holdco, Ltd. and CLO Holdco, Ltd.

**From:** Haynes and Boone, LLP, by Kenneth Bezozo

**Subject:** Donor Advised Funds ("*DAFs*"), Sponsoring Organizations and Supporting Organizations -- The Reasons for Making Investments in Offshore Jurisdictions

---

1. *What are Donor Advised Funds, Sponsoring Organizations and Supporting Organizations?*

A donor advised fund, or DAF, is a separately managed charitable investment account established by a donor within a public charity (a section 501(c)(3) organization), which is generally referred to as a sponsor. Sponsors may include a community foundation, university, religious organization, or financial institution. The donor (or the donor's designee) typically maintains certain advisory privileges over the DAF funds or account – specifically with respect to charities that should receive donations, although the DAF account is fully and completely owned and controlled by the sponsor.

In some cases, a sponsor can create as a subsidiary a "supporting organization" which also is a Section 501(c)(3) public charity. A supporting organization is a separate entity controlled by the sponsor through its ability to elect a majority of the supporting organization's governing board. Because of this control, a supporting organization is treated financially as part of a consolidated unit with the sponsor.

Here, for example, The Dallas Foundation formed, and owns and controls, a supporting organization named Highland Dallas Foundation, Inc. ("**Highland Dallas Foundation**") to assist The Dallas Foundation in carrying out its charitable mission in helping support a wide variety of community affairs. Donations were made to the Highland Dallas Foundation as both the sponsor and the supporting organization. The Highland Dallas Foundation from time to time makes distributions of funds to The Dallas Foundation which in turn makes further distributions to local public charities. *Exhibit 1* attached shows these above-described entities, as well as other entities referenced herein that are pertinent to this donor advised fund.

2. *How Does a Donor Establish a DAF Account?*

To establish a DAF fund or account, a donor must make an irrevocable contribution of assets, such as cash, stock or securities or other business or financial assets, to a sponsoring public charity. The donor's contribution is recorded and recognized as a donation to the sponsoring

Case 19-34054-sgj11 Doc 2547-3 Filed 07/09/20/25 Entered 07/09/20/25 23:00:44 Desc
Exhibit 3 - July 9 2021 Memo on DAFs and Sponsoring Orgs Page 3 of 6

EXHIBIT 3

public charity of the DAF. A donor can make additional contributions to the sponsoring organization whenever they choose.

Because a contribution to a sponsoring organization is, for tax purposes, the equivalent of a contribution to a public charity and because the donor gets an immediate tax benefit for the contribution, the contribution, when made, is permanent and irrevocable. This is true even though the donor contribution to the sponsoring organization is in an account that grows tax-free and the donor has advisory rights as to where to invest the assets and donations made from these assets.

Here, the Highland Dallas Foundation is the sponsor of the DAF account which it fully owns and controls. Although the donor has advisory rights regarding investments and donations to charities (by way of a board seat he fills in the supporting organization), the Highland Dallas Foundation has full authority and control over all such decision-making.

3. *What Type of Investments Can be Made by a Sponsor/Supporting Organization?*

A sponsor and its supporting organization, such as The Dallas Foundation and Highland Dallas Foundation, are able to invest in a wide variety of assets including, but not limited to, marketable securities, financial assets, businesses, real estate, private equity and hedge funds. But because the sponsor and supporting organization are both public charities that are tax-exempt organizations, their investments must take into account all laws that could possibly effect their tax-exempt status.

a. *Can a Sponsor and its Supporting Organization Invest in a Hedge Fund, Private Equity Fund or Similar Investment Vehicle?*

The short answer is yes, but as stated above, a sponsor and its supporting organization, such as The Dallas Foundation and Highland Dallas Foundation, are both public charities that are tax-exempt organizations. As a strong general rule, a tax-exempt organization will avoid any investments that will subject it to federal or state taxes. A tax-exempt organization is generally exempt from all federal and state taxes except to the extent it receives income classified as unrelated business taxable income (UBTI), which would be taxed at a 21% rate. The term "unrelated business taxable income" generally means the income derived from an unrelated trade or business regularly conducted by the tax-exempt organization. UBTI also can arise from the receipt of income from debt-financed investments, which is why hedge and private equity funds generally utilize a special investment structure to ensure tax-exempt investors do not have UBTI.

To prevent UBTI from flowing through to a tax-exempt organization, a corporation can be utilized to "block" this income at the corporate level, which is accomplished by having a corporation interposed between the tax-exempt organization and the hedge fund, such as The Charitable DAF Holdco, Ltd. (a corporate blocker) from the Charitable DAF Fund, L.P. Using a structure in this manner is often described as using a "blocker" because the UBTI is blocked out and does not flow through to the tax-exempt investor. Instead, the UBTI is included in the income of, and subject to tax in, the blocker corporation. The blocker corporation thereafter distributes the income to the tax-exempt

4822-2891-9537 v.7 2

Case 19-34054-sgj11 Doc 2547-3 Filed 07/09/21 Entered 07/09/21 23:00:44 Desc
Exhibit 3 - July 9, 2021 Memo on DAFs and Sponsoring Orgs   Page 4 of 6

**EXHIBIT 3**

investor through the payment of dividends which are not UBTI and therefore not taxable to a tax-exempt organization.

Although using a domestic corporate blocker can avoid the problem of having UBTI passed through to a tax-exempt sponsor or its supporting organization, a U.S.-based blocker corporation will be required to pay corporate and state-level income tax on the income they receive from an investment fund.

> b. *Are There Particular Jurisdictions in Which Hedge and Private Equity Funds form Investment Partnerships and Blocker Corporations for their tax-exempt investors?*

It is common for hedge and private equity funds that have tax-exempt investors such as The Dallas Foundation and Highland Dallas Foundation to utilize an offshore structure to form its investment partnership.  In addition, these funds may form offshore blocker corporations as well as for other reasons including the ability to make non-U.S. investments or U.S. investments that do not give rise to U.S. tax for foreign investors (i.e., U.S. investments that do not cause the investor to be "engaged in a U.S. trade or business.")  Jurisdictions such as Bermuda and the Cayman Islands are typically used because those countries do not have an income tax regime.

By utilizing an offshore structure with corporate blockers, hedge and private equity funds can ensure their tax-exempt investors will not receive any UBTI from investments held by The Dallas Foundation or Highland Dallas Foundation. In addition, to the extent the sole source of UBTI is through debt financing (which is often the case in a hedge fund), then using an offshore corporate blocker can eliminate this type of UBTI (because the debt financing will not flow through the corporate blocker to taint the income received by the tax-exempt investor).  This allows the sponsor (i.e., Highland Dallas Foundation), as well as any other charities that receive distributions from Highland Dallas Foundation or The Dallas Foundation, to receive the largest possible distributions.

Utilizing an offshore structure for hedge and private equity funds in the manner described above for tax-exempt investors is a best practice used by many U.S. law firms representing U.S. hedge and private equity funds.  In fact, if a U.S. law firm didn't use offshore blockers in the manner described above, it could be considered a poor practice.

In summary, using an offshore blocker corporation, such as Charitable DAF Holdco, Ltd. and CLO Holdco, Ltd., for many hedge funds minimizes taxes and increases the net after-tax cash flow to the tax-exempt investors because investments grow tax-free, giving a sponsor, such as Highland Dallas Foundation, the potential to create even more capital for philanthropic giving.

4. *Who Has Control and Authority over the Assets Held by the Sponsor?*

Because a DAF is an account within a sponsor organization, the sponsoring organization has full, complete and final control over the funds in the DAF, which is the case here with the sponsor, the Highland Dallas Foundation.  Although the supporting organization permits the donor or the donor's designee to recommend how funds should be invested and how funds should be

Case 19-34054-sgj11 Doc 2547-3 Filed 07/09/20 Entered 07/09/20 20:26:39 Page 5 of 6
Exhibit 3 - July 9, 2021 Memo on DAFs and Sponsoring Orgs    Page 5 of 6

**EXHIBIT 3**

distributed to other public charities, Highland Dallas Foundation must approve any investments and all distributions to charities.

In this case, the donor of the charitable DAF, or his designee, is able to appoint a representative to the board of the Highland Dallas Foundation, which allows the donor to recommend investments or distributions to charitable organizations, i.e., organizations that are tax-exempt under Internal Revenue Code section 501(c)(3) and classified as public charities under Internal Revenue Code section 509(a). But the donor (or the donor's designee) only has advisory privileges over making investments and the distribution of funds.

5. *What Are the Benefits to a Donor of a Contribution to a DAF account?*

A DAF account allows a donor who makes an irrevocable charitable contribution to the DAF account to receive an immediate tax deduction, and with the ability to recommend distributions be made by the sponsor to specific charities either presently or in the future. Also, if the donor contributes certain appreciated assets to the DAF account, such as stock or securities, the donor avoids the recognition of any gain in these appreciated assets. This is a significant additional benefit to donors made available in the Internal Revenue Code.

The DAF assets that are not immediately distributed to charities are then invested and depending on the type of investments and the jurisdiction in what the investments are made, the assets may grow tax-free.

4822-2891-9537 v.7                                                                 4

Case 19-34054-sgj11 Doc 2547-3 Filed 09/01/25 Entered 09/01/25 23:00:44 Desc
Exhibit 3 - July 9, 2021 Memo on DAFs and Sponsoring Orgs   Page 6 of 6

EXHIBIT 3

# Exhibit 1

## Charitable DAF/CLO Holdco Structure Chart

