Jason S. Brookner (Texas Bar No. 24033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
Drake M. Rayshell (Texas Bar No. 24118507)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email:    jbrookner@grayreed.com
          dyork@grayreed.com
          jsmeltzer@grayreed.com
          drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: § | Chapter 11 |
| § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] § | Case No. 19-34054 (SGJ) |
| § | |
| Reorganized Debtor. § | |

**RESPONSE TO MOTION TO QUASH SUBPOENAS**

**SERVED BY PATRICK DAUGHERTY**

Patrick Daugherty ("Daugherty) files this Response to the *Motion to Quash* [Docket No. 4248] (the "Motion") filed by Highland Capital Management, L.P. ("Debtor" or "Highland") and the Highland Claimant Trust (the "Claimant Trust") (collectively, Highland and the Claimant Trust are referred to as "Movants").[2] In support of this Response, Daugherty respectfully states as follows:

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.
[2] The HMIT Entities filed a joinder to the Motion. [Docket No. 4254].

4932-8240-3920

## I. RELEVANT BACKGROUND

1. While Daugherty very much appreciates the efforts of James Seery ("Seery") and Highland's professionals on behalf of the estate and its creditors, he feels compelled to set the record straight. Importantly, there is no love lost between Daugherty and James Dondero ("Dondero"), Mark Okada, Scott Ellington, Isaac Leventon, Thomas Surgent, David Klos and their myriad of other facilitators, including Mark Patrick ("Patrick"), that enabled Dondero and his cabal to implement their diabolical schemes to defraud creditors and investors for over a decade.[3] This proposed settlement with the HMIT Entities[4], however, appears tailored to effectuate certain self-interests rather than adherence to various agreements and the law governing this bankruptcy.

2. Highland filed for bankruptcy protection in 2019. Daugherty filed Proof of Claim No. 67 on April 1, 2020. He later filed Proof of Claim No. 77, which superseded and replaced Claim No. 67 in its entirety. Then on December 23, 2020, Daugherty filed Proof of Claim No. 205, which superseded and replaced Claim No. 77 in its entirety.

3. On January 22, 2021, Highland filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1808] (the "Plan"). A month later, the Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) and (II) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order"). The Plan then became effective on August 11, 2021. *See* Docket No. 2700.

---

[3] In 2012 Daugherty stood up and revealed the truth to creditors such as the Dallas Police and Fire, the Ontario Teachers Association, the Army Air Force Exchange, Baylor University, other pension investors (aka the pensions and endowments represented by Highland Crusader Redeemer Committee), and UBS that were brutalized by Dondero and Okada's regime at Highland.
[4] Capitalized terms not otherwise defined herein are defined in the Motion.

4932-8240-3920

4.     On March 8, 2022, following Court approval, Daugherty and Highland's Settlement Agreement to resolve, in part, his Claim No. 205, became effective. Docket No. 3088, 3089 (the "Settlement Agreement").

5.     Under that Settlement Agreement, Daugherty retained a Reserved Claim[5] relating to Highland's 2008 tax return. *Id*. The Reserved Claim concerns a compensation and benefits contract between Highland and Daugherty relating to Daugherty's cash bonus that was presented to Daugherty pursuant to a tax refund scheme developed by Highland during the financial crisis in 2008 and 2009. That tax refund scheme was later challenged by the Internal Revenue Service ("IRS"). The gravamen of Daugherty's Reserved Claim relates to whether Highland's refund "deviated materially from [Highland's] estimate" such that "other compensation [to Daugherty should have been] fairly adjusted" as promised. Adv. Proc. 25-03055-sgj, Docket No. 1-1.

6.     Critically, under the terms of the Settlement Agreement, "[a]ny litigation by and between the [Debtor] and Daugherty concerning the validity and amount of the Reserved Claim *shall be stayed* until the IRS makes a final determination with respect to the IRS Audit Dispute." *Id.* (emphasis added). Highland concedes that the resolution of the IRS audit is still pending. Adv. Proceeding 25-03055-sgj, Docket No. 1 at ¶ 3 ("Highland's 2008 tax return *is currently subject to an IRS audit*.") (emphasis added); ¶ 4 ("It is unclear when, how, or if the 2008 Audit will be finally resolved."). Movants also acknowledged Daugherty's Reserved Claim is "contingent on the final outcome of the 2008 Audit." *Id.* at ¶ 35. Thus, the validity and amount of Daugherty's Reserved Claim remains pending until the IRS Audit Dispute[6] is resolved.

7.     Daugherty's Reserved Claim is a general unsecured claim and thus is classified as a Class 8 Claim under the Plan. *See* Docket No. 1943, Ex. A at 22-23. Following the Court's

---

[5] "Reserved Claim" has the meaning ascribed to it in Docket No. 3089, the parties' Settlement Agreement.
[6] "IRS Audit Dispute" has the meaning ascribed to it in Docket No. 3089, the parties' Settlement Agreement.

4932-8240-3920

approval of the Settlement Agreement, Seery promised Daugherty on at least one occasion that Highland would not take any steps to liquidate the estate before Daugherty's Reserved Claim and other matters were resolved.

8. The proposed settlement between Highland and the HMIT Entities would, among other things, make an allowance for the HMIT Entities' Class 10 Interest in the Claimant Trust in a fixed amount, and make distributions to the HMIT Entities on account of its Class 10 Interest. Docket No. 4216 at 3.

9. The Plan provides that the "allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise." Plan at Art. III.J.

10. This Court's Confirmation Order approving the Plan echoes that same sentiment, providing that:

> [T]he Contingent Interests [in Class 10 and Class 11] will not vest unless and until holders of Class 8 General Unsecured Claims and Class 9 Subordinated Claims receive distributions equal to 100% of the amount of their Allowed Claims plus interest as provided under the Plan and Claimant Trust Agreement. ***Accordingly, as the holders of Equity Interests that are junior to the Claims in Class 8 and Class 9 will not receive or retain under the Plan on account of such junior claim interest any property unless and until the Claims in Class 8 and Class 9 are paid in full plus applicable interest.***

See Docket No. 1943 at 44 (emphasis added).

11. Further, the Highland Capital Claimant Trust Agreement (the "Claimant Trust Agreement") does not allow Class 10 or Class 11 claims to vest, "unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan, and all Disputed Claims have been resolved"

4

(the "GUC Payment Certification"). Docket No. 3817-4 at 577. The Claimant Trustee has not filed the GUC Payment Certification. Nor could it because Daugherty's remaining claim is unresolved.

12. Thus, the proposed settlement between Movants and the HMIT Entities violates the express terms of the Plan, this Court's Confirmation Order, the Claimant Trust Agreement, and the absolute priority rule. Knowingly full well that Daugherty would likely raise concerns with the proposed settlement, Highland took a number of steps to try to de-legitimize Daugherty. First, without having virtually any communications with Daugherty for over a year, Highland filed an adversary action on May 2, 2025 against Daugherty challenging the validity and amount of his Reserved Claim – a clear violation of the Settlement Agreement. Adv. Proc. 25-03055-sgj, Docket No. 1. Surprised by this "out of the blue" maneuver, Daugherty demanded Highland dismiss the adversary action based on the terms of the Settlement Agreement. When Highland refused, Daugherty was forced to file a motion to dismiss which remains pending before the Court. *See* **Exhibits 1-2** to the York Declaration[7]; Adv. Proc. 25-03055-sgj, Docket No. 5.[8]

13. On May 19 Highland filed its motion to approve the proposed settlement with the HMIT Entities – again without any notification to Daugherty. [Docket No. 4214]. The very next day, Daugherty received an unsolicited wire along with a letter from Highland's counsel informing Daugherty that his Class 9 Claim was paid in full. *See* **Exhibit 3** to the York Declaration. Daugherty just learned for the first time that he was the only Class 9 Claim paid in full, and Highland intentionally did so in order to avoid having to obtain Daugherty's consent to the

---

[7] "York Declaration" refers to the *Declaration of Andrew K. York in Support of Response to Motion to Quash Subpoenas Served by Patrick Daugherty* filed concurrently herewith.

[8] Daugherty willingly provided Highland with an extension of its deadline to respond to the motion to dismiss until July 18. Adv. Proc. 25-03055-sgj, Docket No. 7. This was based on a request from Highland's counsel due to, among other things, needing time to prepare for the June 25 hearing in this case.

5

proposed settlement.[9] Thus, it now appears that Highland is attempting to mislead this Court using the "everyone is in agreement but one" tactic to try to isolate Daugherty and present the appearance of a legitimate, consensus-based resolution to the Highland bankruptcy.

14. Prior to filing the Objection, Daugherty's counsel reached out to Highland's counsel to obtain an explanation for why Highland believed the proposed settlement did not violate the express terms of the Plan and Claimant Trust Agreement. York Declaration at ¶ 4. During that call, Highland's counsel indicated Patrick had "gone rogue" and there was a rift between Patrick and the HMIT Entities, on the one hand, and Dondero. *Id.* Dubious that there was a legitimate rift, and without any adequate explanation to the original question posed, Daugherty proceeded to file his Objection on June 9.

15. On June 10 Daugherty reached out to Patrick directly to try to hear for himself the HMIT Entities' position and open a dialogue to pursue more legitimate options, and better terms, for the proposed settlement. *See* Daugherty Declaration[10] at ¶ 2. Patrick did not indicate an interest to engage in direct, substantive communications with Daugherty.

16. Notwithstanding the clear and unambiguous violations of the Plan, Claimant Trust Agreement, and the absolute priority rule, the proposed settlement raises another legitimate question: why would Highland capitulate and settle on such favorable terms to the HMIT Entities when Highland has boldly alleged the HMIT Entities were part of a scheme that wrongfully manipulated hundreds of millions of dollars of value. *See e.g.*, Adv. Proceeding 21-03076-sgj, Docket No. 158; *see also* Motion at ¶¶ 14-19 (collecting actions). Indeed, Daugherty had

---

[9] According to David Klos, who was deposed by Dugaboy on June 20, Daugherty was the only Class 9 Claim member paid in full, and the reason was to avoid having to get Daugherty's consent. Daugherty is happy to supplement the transcript of this testimony once it is available.

[10] "Daugherty Declaration" refers to the *Declaration of Patrick H. Daugherty in Support of Response to Motion to Quash Subpoenas Served by Patrick Daugherty* filed concurrently herewith.

6

4932-8240-3920

collaborated with Highland and shared information from his investigation, including institutional knowledge with the Litigation Trustee, its counsel at Quinn Emanual and Sidley Austin, Seery and representatives of the Unsecured Creditors Committee for the benefit of <u>all</u> creditors of the Highland estate.

17. On top of that, Daugherty only recently learned through the June 9 Objection filed by the Dallas Foundation and Crown Global Life Insurance, Ltd. that Patrick may have concocted his own scheme to divert the gains from this proposed settlement from the beneficial owners of the HMIT Entities, and thus apparently lacked authority to take such actions – or did so in violation of his fiduciary duties to those entities. [Docket No. 4231].

18. Based on Highland's unannounced filing of the adversary proceeding, the payment of his Class 9 Claim, the comments about Patrick going "rogue" and the Dallas Foundation/Crown Global Life's Objection, Daugherty proceeded to serve discovery to get answers and transparency about what was going on between Highland and the HMIT Entities concerning the proposed settlement.

19. Initially, Patrick's counsel indicated Patrick would be available for deposition on June 23 but the deposition would have to be limited to 1-2 hours. *See* **Exhibit 4** to York Declaration. Highland's counsel, however, threatened to file the Motion.[11] Daugherty sought to work out a reasonable resolution with Highland concerning the Seery and Rule 30(b)(6) Subpoenas as reflected in **Exhibit 4 to the Morris Declaration** [Docket No. 4249-4].

---

[11] In connection with the threat, Highland's counsel sent self-serving (and inaccurate) email summaries conflating the discovery requests concerning the proposed settlement with Fed. R. Evid. 408 settlement discussions regarding other issues between Daugherty and Highland – such as Highland's breach of the books and records provision in the Settlement Agreement which was previously laid bare in the Highland Employee Retention Assets lawsuit against Dondero and others. [Docket No. 4249-4]; *see also Highland Employee Retention Assets LLC v. James Dondero et al.*, Civ. A. No. 3:24-cv-00498-K (N.D. Tex.) at Docket No. 1.

7

4932-8240-3920

## II. ARGUMENT

20. The Court should deny the Motion to Quash and allow Daugherty discovery based on his last proposal to Highland and Patrick: (1) Highland produces Seery or another corporate representative of Highland for no more than 2 hours on the topics covered by the Rule 30(b)(6) Subpoena[12]; (2) Highland produces documents responsive to the duces tecum requests; and (3) Patrick appears for a deposition of no more than 2 hours.

21. This discovery is pertinent to Daugherty's Objection that the proposed settlement violates the Plan, the Claimant Trust Agreement, and is not in the best interest of the creditors or the estate. The discovery has now taken on more importance after Daugherty learned on Friday, through the testimony of David Klos discussed above, that Highland intentionally schemed to circumvent the Plan, the Claimant Trust Agreement, the Settlement Agreement, and Seery's oral promises to Daugherty as they related to Daugherty's Reserved Claim because Highland knew Daugherty would not approve the proposed settlement with the HMIT Entities. Klos also admitted the GUC Certification has not been issued because of, among other things, Daugherty's unresolved Class 8 Claim.

22. Highland attempts to justify this wanton disregard in the name of expediency while simultaneously asserting that Daugherty lacks any "meaningful economic interest" in the Debtor. But that is nothing more than a red herring. Highland strategically paid off Daugherty's Class 9 Claim in an attempt to dilute his legitimacy before the Court. Indeed, a careful analysis of the remaining Class 9 holders reveals that they all benefit from the incremental releases contained in the proposed settlement with the HMIT Entities. Said another way, by quickly paying off Daugherty's Class 9 claim, Highland attempts to circumvent the priority limitations of the Plan

---

[12] Highland can choose whether to proffer Seery or someone else on those topics, provided the witness is sufficiently knowledgeable as required by the Rule.

and Claimant Trust Agreement to provide additional value in the form of releases to the remaining Class 9 holders while attempting to spin their story that Daugherty is an isolated holdout. Now that it is economically expedient for Highland and Seery to cast Daugherty aside, they do so to try to effectuate this proposed deal that trades broad releases for them in in return for the alleged transfer of ill-gotten assets from one unsavory group (led by Dondero) to a group purportedly (independently) led by Patrick — the same Patrick that Highland characterized as having "worked closely" with Dondero since 2008. [Docket No. 3783 at 7, n. 6]. Conveniently, Highland's Motion seeks to avoid any discovery on these issues.

23. Daugherty's Reserved Claim should not be a sacrificial lamb as part of a self-serving solution for Highland's convenience. Highland and its representatives owe duties to not only to adhere to the Plan and the Claimant Trust Agreement, but also to act in the best interests of the estate and creditors. The discovery that is sought is directly related to those issues. And Daugherty's proposed resolution of that discovery is more than reasonable.

24. First, Daugherty is willing to depose Patrick for no more than two hours – the conditions Patrick's counsel laid out. Second, Highland should produce Seery or someone else as a corporate representative on the topics in the Rule 30(b)(6) Subpoena for no more than two hours. Highland is only offering to produce Seery for up to two hours in his individual capacity. That is problematic because it is unclear whether Seery has personal knowledge on the topics. He may not, or he may defer that others working for Highland were more intimately involved. Either way, simply deposing him in his individual capacity could lead to more questions than answers. Finally, Highland should produce documents responsive to the duces tecum requests in the Rule 30(b)(6) Subpoena especially considering that most of these documents relate to litigation that Highland has already brought before this Court. As Highland indicated, it offered to produce documents it

9

4932-8240-3920

produced to Dugaboy. While some of Dugaboy's requests overlap in scope with Daugherty's, Daugherty's are more targeted to the impact on creditors and cover documents that should be at Highland's fingertips – because they relate to the allegations in Highland's adversary complaint against the HMIT Entities.

25. For all of these reasons, the Court should deny the Motion and grant Daugherty discovery as he has proposed to limit it.

10

4932-8240-3920

Respectfully submitted this 22nd day of June, 2025.

                **GRAY REED**

By: */s/ Andrew K. York*
     Jason S. Brookner
     Texas Bar No. 24033684
     Andrew K. York
     Texas Bar No. 24051554
     Joshua D. Smeltzer
     Texas Bar No. 24113859
     Drake M. Rayshell
     Texas Bar No. 24118507
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (469) 320-6050
Facsimile: (469) 320-6886
Email: jbrookner@grayreed.com
          dyork@grayreed.com
          jsmeltzer@grayreed.com
          draysehll@grayreed.com

*Counsel to Patrick Daugherty*

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this 22nd day of June 2025, via the CM/ECF system and/or email.

By: /s/ *Andrew K. York*
    Andrew K. York

4932-8240-3920