# Exhibit 17

| | |
|---|---|
| **Attachments:** | HFT_S-1_10_30_06.pdf |
| | HighlandFinancialPartners_Form S-1_04_30_07.pdf |
| | Highland Charitable DAF_HCLOF_NAV Calculation_Public_Acis_04_30_18_NAV.pdf |
| | Acis Bankruptcy_Dondero Testimony that Acis Fee Stream Sale was Sham and Unwind_03_23_18.pdf |
| | Highland Capital Bankruptcy_Charitable DAF_Disclosures_abridged_Exhibits_07_09_21.pdf |
| | Highland Capital Bankruptcy_Transcript_CalPERS and MGM Transaction_03_04_20 (2).pdf |
| | Highland Capital Bankruptcy_Charitable DAF v Highland re MGM_04_12_21.pdf |

**From:** Patrick Daugherty
**Sent:** Monday, August 23, 2021 10:09 AM
**To:** Marc Kirschner <marc.kirschner@teneo.com>
**Cc:** James Seery <jpseeryjr@gmail.com>
**Subject:** How does the Charitable DAF work? Part 2

As you can see from the previously sent Background materials, Dondero/Okada embarked on an aggressive strategy to restore their wealth after the financial crisis of 2008/2009. Recall that Highland had approximately $40 billion of assets under management to start 2008 and ended 2010 with about $26 billion of assets uder management. However, most of the lucrative (high fee) funds had liquidated or had "the gates raised". Consequently, Highland was left wth only the CLOs, the Retail funds (40 Act funds), and Restoration (the Private equity fund - very high fees) as its cash generating assets. This is when Dondero, with Okada's knowledge, embarked on a strategy to manipulate the value of various fund investments to their advanage and transfer them at discounts (using contrived "market" metrics) to other funds and entities where they could capture the upside.

Acis, Tunstall, Falco E&P (PetroCap), Pyxis (now Highland Capital Management Funds and NexPoint Advisors), Granite Bay and Highland CLO Funding (the Charitable DAF) were all created in the 2009/2010 timeframe. Recall that Highland defaulted on its credit facility with Bank of Nova Scotia and Bank of America in late 2008. This was the same time that HFP and its subsidiaries defaulted on their warehouse facility with UBS. Pursuant to the bank facility default, I, on behalf of Highland, negotiated an amendment that allowed the banks to take a security intersest (they were previously unsecured) in all of Highland's assets including its management contracts. There was a small carve-out of approximately $26 million in limited partnerip interests to fund an employee compensation vehicle known as Highland Employee

Retention Assets (HERA). The banks also received a secured interest in all of the retail fund contracts managed by Highland - also know as Highland Funds I.

This is also the time when Dondero created Highland CLO Funding and the DAF. He used these entities to transfer CLO investments from the HFP entities (previously HFT) at low values [HFT S-1 pg 73 - CLO investments, HFP S-1 pg 78 - CLO investments]. He and Okada also used these entities to manufacture tax writeoffs while maintaing control of the assets - Dondero HATES TO PAY TAXES and spent the end of every calendar year shifting assets and manufacturing transactions to reduce or elliminate taxes [see his testimony in the Acis Bankruptcy Transcript pg 134 line 2]. You can also put the Demand Notes in this category. You will notice that many of the HFP assets are currently located in the Highland CLO Funding NAV report [Highland CLO Funding NAVSee non-Acis CLO investments]. Dondero would use various methods to transfer these assets under the ruse of "market" trades. These were often illiquid securities and Dondero/Highland would create third-party trades by having third-parties buy and hold certain securities with assurances that Highland would buy them back at a profit. He would also trade among funds, sometime in odd lots to obscure tracking, and have certain wall street counter-parties hold or delay settle the trades to make it appear that the trading firm was the source of a legitimate mark. He did all this while having material inside knowledge that the "market" did not have. This became Dondero's marquee move over the last 10 years and he would use various forms of it with Crusader, Credit Strat, HFP, HERA, Restoration, Cornerstone, Trussway and MGM. Incredibly, Dondero, through Highland CLO Funding and the DAF, has brought causes of action against Seery for not trading on material inside information of MGM as Dondero instructed him to do [See Charitable DAF Complaint 4/12/21 pg15 paragraph 77, and Highalnd Transcript Calpers-MGM 3/4/20 pg 24 line 18].

It is important to note that Dondero always maintained direct or indirect control of Highland CLO Fuunding and the DAF as Jernigan indicated in the 2nd Contempt Opinion. He also made sure to use the assets of the DAF to create management fee streams and marketing opportunities for Highland, NexBank and NexPoint. Basically, Dondero/Okada received all the tax benefits of making a "gift" while maintaing the benefits of ownership  [See Acis Bankruptcy Transcript - Dondero Direct - pg 158 line 14 - Highand gets the signage benefit of the DAF chaitable gifts].

**Patrick H Daugherty, Esq.**
President and Chief Investment Officer

**Glacier Lake Capital Advisors**
**(t)** +1 214.932.9140 **(m)** +1 972.679.7487
**(e)** pdaugherty@glacierlakecap.com