**EXHIBIT 66**

## LOAN AGREEMENT

This Loan Agreement (this "**Loan Agreement**") is entered into by and between **HIGHLAND CAPITAL MANAGEMENT, L.P.** (the "**Lender**") and **HIGHLAND CAPITAL MANAGEMENT KOREA LIMITED** (the "**Borrower**," together with the Lender, the "**Parties**") this 21st day of April, 2017.

Subject to the terms and conditions set forth in this Loan Agreement and the Note (as defined below) (the Loan Agreement and the Note collectively being referred to as the "**Loan Documents**"), Lender agrees to make to Borrower a loan in the aggregate original principal amount up to of TWENTY MILLION DOLLARS ($20,000,000) (the "**Loan**"). In connection with the Loan, Lender and Borrower agree as follows:

1. **Loan Terms**.

(a) The Loan shall be evidenced by a promissory note (herein called, together with any renewals, extensions and increases thereof, the "**Note**") in the original principal amount of $20,000,000.00.

(i) *Interest Rate*. The Parties agree that the Note will not bear interest.

(ii) *Maturity Date*. The Note shall be due and payable in full on the earlier to occur of (i) April 21, 2037 and (ii) the date upon which the Loan is accelerated in accordance with Section 4 hereof (the "**Maturity Date**").

(iii) *Mechanics*. Borrower shall permitted to draw up to the principal amount of the Loan in one or more borrowings. Each borrowing hereunder, along with any payment made with respect thereto, shall be endorsed or recorded on the schedule attached to the Note. Any amounts drawn or repaid may not be re-borrowed.

(b) Manner of Payment. All payments to be made by the Borrower under this Loan Agreement shall be made in United States Dollars, in immediately available funds, by wire transfer to an account at a commercial bank located in the United States of America which account shall be identified in a notice to the Borrower, not later than 1:00 p.m. Dallas, Texas time on the date on which such payment shall become due (any such payment made after such time on such due date to be deemed to have been made on the next succeeding Business Day). All amounts payable under this Loan Agreement shall be paid free and clear of, and without reduction by reason of, any deduction, set-off or counterclaim. If the due date of payment under this Loan Agreement would otherwise fall on a day that is not a Business Day, such due date shall be extended to the next succeeding Business Day.

(c) Prepayment. Borrower may, at its option, prepay all or a portion of the unpaid principal balance of the Loan and any and all other sums payable to the Lender hereunder prior to the Maturity Date without the consent of the Lender and without penalty.

2. **Representations, Warranties and Covenants.** Borrower hereby represents, warrants and covenants to Lender as follows:

(a) <u>Organization, Power and Authority, and Enforceability</u>. Borrower is duly organized, validly existing and in good standing under the laws of the Republic of Korea. Borrower has full power and authority to execute and deliver this Loan Agreement and the Note and to perform and observe the provisions of the Loan Documents. The execution, delivery and performance by Borrower of this Loan Agreement and the Note have been duly authorized by all necessary entity action, and do not contravene the organizational or governing documents of Borrower, any law or contractual restriction binding on Borrower or any of Borrower's property. No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by Borrower of this Loan Agreement and the Note. This Loan Agreement and the Note constitute the legal, valid and binding obligation of Borrower enforceable against Borrower in accordance with their respective terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by equitable limitations on the availability of specific remedies, regardless of whether such enforceability is considered in a proceeding in equity or at law.

(b) <u>No Violations</u>. Neither the execution and delivery by Borrower of this Loan Agreement and the Note, nor the consummation of the transactions herein or therein contemplated, nor compliance with the provisions hereof or thereof will, to the best of Borrower's knowledge, violate any law or regulation or any order or decree of any court or governmental instrumentality, or conflict with or result in the breach of or constitute a default under any material agreement or other instrument to which Borrower is a party or by which it may be bound, which default, if any, would have a material adverse effect on the business or condition (financial or otherwise) of Borrower or any of its properties, or result in the creation or imposition of any material lien, charge or encumbrance upon any of the property of Borrower.

(c) <u>No Litigation</u>. There are no actions, suits or proceedings pending against or affecting Borrower before any court, arbitrator or governmental or administrative body or agency which might result in any material adverse change in the business, operations, properties or assets or in the condition (financial or otherwise) of Borrower.

(d) <u>Solvency</u>. Borrower is, and after giving effect to the incurrence of the debt contemplated by this Loan Agreement and the obligations incurred in connection herewith will be, able to pay its debts and liabilities as they mature and become due.

(e) <u>Use of Proceeds</u>. The proceeds of the Loan will not be used for personal, family or household purposes.

3. **Events of Default.** The occurrence at any time of any of the following events shall constitute an event of default (each an "**Event of Default**"):

HCMLPDT003158

(a) The failure of Borrower to pay the principal and interest (if any) on the Note when the same becomes due in accordance with the terms hereof;

(b) Borrower's breach of any representation, warranty or covenant contained in this Loan Agreement or the Note;

(c) Borrower's (i) execution of an assignment for the benefit of creditors; (ii) admission in writing of its inability, or the generally inability, to pay its debts generally as they become due; (iii) voluntarily seeking the benefit or benefits of any Debtor Relief Law; or (iv) voluntarily becoming a party to any proceeding provided for by any Debtor Relief Law that could suspend or otherwise affect any of the rights of Lender granted in this Loan Agreement or the Note;

(d) The commencement against Borrower of any proceeding in bankruptcy or other insolvency law, either voluntary or involuntary, or any other judicial proceeding intended to effect a discharge of the debts of Borrower in whole or in part, or a postponement of the maturity or collection thereof, or a suspension of any of the rights or powers of a trustee or any of the rights or powers granted herein to Lender, or in any other documents executed in connection herewith, and Borrower's failure to cause the dismissal of such proceedings within sixty (60) days after commencement; or

(e) The appointment of a trustee or receiver, if not discharged within sixty (60) days, for the assets, or any part thereof, of Borrower.

The foregoing Events of Default are cumulative and in addition to any defaults or events of default as may be contained in any other documents modifying, renewing, extending, evidencing, securing or pertaining to this Loan Agreement, the Note or the debt evidenced hereby. For purposes of Section 3(c), "**Debtor Relief Laws**" means any applicable liquidation, conservatorship, bankruptcy, moratorium, rearrangement, insolvency, fraudulent conveyance, reorganization or similar debtor relief laws affecting the rights of creditors generally from time to time in effect.

4. **Remedies**.

(a) If an Event of Default shall have occurred (other than an Event of Default specified in Section 3(c), 3(d) or 3(e)), Lender may in its sole discretion exercise any or all of the following remedial rights and in such order as Lender may elect: (i) accelerate the maturity of the principal balance owed under the Note, and/or (ii) proceed to protect and enforce its rights either by suit in equity and/or by action at law, or by other appropriate proceedings, whether for the specific performance of any covenant or agreement contained in this Loan Agreement or the Note or in aid of the exercise of any power or right granted by this Loan Agreement or the Note or to enforce any other legal or equitable right of Lender under this Loan Agreement or the Note.

(b) Upon the occurrence of an Event of Default specified in Section 3(c), 3(d) or 3(e), Borrower's principal balance outstanding under the Note shall thereupon automatically and concurrently therewith become immediately due and payable, all without any action by

HCMLPDT003159

Lender and without presentment, demand, protest or other notice of any kind, all of which are expressly waived, anything in this Loan Agreement or the Note to the contrary notwithstanding.

(c) The rights of Lender under this Section 4 are in addition to other rights and remedies which Lender may have under this Loan Agreement and the Note or at law or equity.

5. **Rights Cumulative**. All rights of Lender under the terms of this Loan Agreement shall be cumulative of, and in addition to, the rights of Lender under any and all other agreements between Borrower and Lender (including, but not limited to, the Note), and not in substitution or diminution of any rights now or hereafter held by Lender under the terms of any other agreement.

6. **Waiver and Agreement**. Neither the failure nor any delay on the part of Lender to exercise any right, power or privilege under any of the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege. No waiver of any provision in any of the Loan Documents and no departure by Borrower therefrom shall be effective unless the same shall be in writing and signed by Lender, and then shall be effective only in the specific instance and for the purpose for which given and to the extent specified in such writing. No modification or amendment to any of the Loan Documents shall be valid or effective unless the same is signed by Borrower and Lender.

7. **Costs of Collection**. If this Loan Agreement or the Note is placed in the hands of an attorney for collection after an Event of Default, or if all or any part of the indebtedness represented hereby is proved, established or collected in any bankruptcy, receivership, debtor relief, probate, or other court proceedings, Borrower agrees to pay to Lender its attorneys' fees and collection costs incurred by Lender in the exercise of any of its rights and remedies in accordance with this Loan Agreement or the Note.

8. **Benefits**. This Loan Agreement shall be binding upon and inure to the benefit of Lender and Borrower, and their respective successors and assigns, provided, however, that Borrower may not, without the prior written consent of Lender, assign any rights, powers, duties or obligations under any of the Loan Documents.

9. **Notices**. Any notice or other communications provided for in this Loan Agreement shall be in writing and shall be given to the party to whom addressed at the following address:

If to Borrower: Highland Capital Management Korea Limited
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Email: CorporateAccounting@hcmlp.com

PAGE 4

| | |
|---|---|
| If to Lender: | Highland Capital Management, L.P.<br>300 Crescent Court, Suite 700<br>Dallas, Texas 75201<br>Email: CorporateAccounting@hcmlp.com |

Except as otherwise provided herein, all notices and other communications given pursuant to this Loan Agreement and the Note shall be in writing, and shall be (a) mailed by first class, United States mail, postage prepaid, certified, with return receipt requested, and addressed to the Parties hereto at the address listed in <u>Section 9</u> hereto; (b) hand delivered to the intended addressee; (c) sent by nationally recognized overnight courier; or (d) sent by facsimile transmission followed by a confirmatory letter pursuant to a method described in clause (a), (b) or (c) above. Notice sent by certified mail, postage prepaid, shall be effective three (3) Business Days after being deposited in the United States mail; notice sent by facsimile transmission shall be effective on the day of receipt by the addressee if received on a Business Day prior to 5:00 p.m. Dallas, Texas time (otherwise, such notice shall be effective on the Business Day immediately following such day of receipt); all other notices shall be effective upon delivery to the address of the addressee (even if such addressee refuses delivery thereof). The Parties hereto may change their addresses by giving notice thereof to the other parties hereto in conformity with this provision. For purposes of this Loan Agreement, "**Business Day**" shall mean any day that is not a Saturday, Sunday or other day on which commercial banks in Dallas, Texas are authorized or required by law to remain closed.

      10.    **Indemnification**. Borrower agrees to indemnify Lender and its successors, assigns, officers, partners, employees, attorneys and agents (each such Person, an "**Indemnitee**") against, and to hold each Indemnitee harmless from, any and all losses, claims, actions, judgments, suits, disbursements, penalties, damages (other than consequential damages), liabilities and related expenses and reasonable legal counsel fees and expenses, incurred by or asserted against any Indemnitee arising out of, in any way connected with, or as a result of:

      (a)    the execution, delivery and enforcement of this or any transactions contemplated by this Loan Agreement or the Note or any agreement or instrument contemplated thereby;

      (b)    the fraudulent actions or misrepresentations of Borrower in connection with the transactions contemplated by this Loan Agreement and the Note, or any breach by Borrower of its obligations under this Loan Agreement or the Note; or

      (c)    any claim, litigation, investigation or proceeding relating to any of the foregoing or relating to any transaction contemplated hereby, whether or not any Indemnitee is a party thereto;

provided that such indemnity shall not, as to any Indemnitee, apply to any such losses, claims, actions, judgments, suits, disbursements, penalties, damages, liabilities or related expenses arising from the gross negligence or willful misconduct of such Indemnitee as finally determined by a court of competent jurisdiction in a non-appealable judgment.

11. **Severability**. If any provision of this Loan Agreement is held to be illegal, invalid or unenforceable under present or future laws during the term hereof, such provision shall be fully severable, this Loan Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof, and the remaining provisions hereof shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Loan Agreement, a legal, valid and enforceable provision as similar in terms to the illegal, invalid or unenforceable provision as may be possible.

12. **Governing Law**. This Loan Agreement is performable in Dallas County, Texas, and shall be governed by the laws of the State of Texas (regardless of the laws that might otherwise govern under applicable Texas principles of conflicts of law) as to all matters, including but not limited to matters of validity, construction, effect, performance and remedies. The state and federal district courts in Dallas County, Texas, shall have exclusive jurisdiction over any claim or action involving the rights of the Parties hereunder, and each Party submits to the jurisdiction of the state and federal district courts in Dallas County, Texas.

13. **WAIVER OF JURY TRIAL**. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS LOAN AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS LOAN AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

14. **Entire Agreement**. This Loan Agreement and the Note contain the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings between such Parties relating to the subject matter hereof and may not be contradicted by evidence of prior or contemporaneous agreements of the Parties. There are no unwritten oral agreements between the Parties with respect to the subject matter hereof.

15. **Construction**. This Loan Agreement has been freely and fairly negotiated among the Parties. If an ambiguity or question of intent or interpretation arises, this Loan Agreement will be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise favoring or disfavoring any Party because of the authorship of any provision of this Loan Agreement.

16. **Counterparts**. This Loan Agreement may be separately executed in any number of counterparts, each of which shall be an original, but all of which, taken together, shall be deemed to constitute one and the same agreement.

HCMLPDT003162

17. **Amendment.** No provision hereof may be amended, modified, waived, or supplemented, except by a writing signed by the Party to be charged thereby. No waiver by Lender of an Event of Default shall be a waiver of any other Event of Default.

18. **Assignment.** Borrower shall not assign any of its rights or obligations under this Loan Agreement without the prior written consent of Lender and any such assignment in contravention of the foregoing shall be null and void. Lender may at any time and from time to time, without the consent of Borrower, assign all or any portion of its rights under this Loan Agreement to one or more persons, and, upon Lender giving notice of such assignment to Borrower specifying the interest hereunder being assigned and the person to which such interest is being assigned, each reference herein to Lender shall (solely in respect of the interest so assigned) constitute a reference to such assignee (as if such assignee were named herein) rather than Lender.

19. **Amounts Payable at Maturity.** It is expressly understood and agreed that this Loan Agreement will require a "balloon" payment of all unpaid principal and accrued but unpaid interest (if any) at maturity.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;*
*SIGNATURE PAGE FOLLOWS]*

HCMLPDT003163

IN WITNESS WHEREOF, the parties hereto have caused this Loan Agreement to be duly executed and delivered as of the day and year first above written.

**LENDER:**

**HIGHLAND CAPITAL MANAGEMENT. L.P.**

By: Strand Advisors, Inc., its General Partner

By: _____
Name:  Frank Waterhouse
Title:    Treasurer


**BORROWER:**

**HIGHLAND CAPITAL MANAGEMENT KOREA LIMITED**

서울시 중구 세종대로 136, 21층
(태평로1가, 서울파이낸스센터)
하이랜드캐피탈매니지먼트코리아㈜
By: 대표이사  박  준  범
Name: Jun Park
Title: Representative Director

*Signature Page to Loan Agreement*