## **EXHIBIT 9**



1. Defendant
2. Geoffrey Sykes
3. First Affidavit
4. Exhibit "GS-1"
5. 27 April 2025

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

CAUSE NO:  FSD 99 OF 2025 (JAJ)

**IN THE MATTER OF:**    **SECTION 92 OF THE COMPANIES ACT (2025 REVISION)**

**AND IN THE MATTER OF:** **CHARITABLE DAF HOLDCO, LTD (IN VOLUNATRY LIQUIDATION)**

**BETWEEN**    **(1) THE HIGHLAND DALLAS FOUNDATION, INC.**

**(2) THE HIGHLAND KANSAS CITY FOUNDATION, INC.**

**(3) THE HIGHLAND SANTA BARBARA FOUNDATION, INC.**

**(4) THE HCMLP CHARITABLE FUND**

<u>**PLAINTIFFS**</u>

**and**

**CHARITABLE DAF HOLDCO, LTD (IN VOLUNTARY LIQUIDATION)**

<u>**DEFENDANT**</u>

_____

**FIRST AFFIDAVIT OF GEOFFREY SYKES**

_____

36068369.1.C8689.187150 1

I, **GEOFFREY SYKES**, of 190 Elgin Avenue, George Town, Grand Cayman KY1-9001, Cayman Islands being duly sworn **MAKE OATH and SAY** as follows:

**Preliminary**

1.     I am an Attorney-at-Law and Associate in the Insolvency and Dispute Resolution Group at Walkers (Cayman) LLP ("**Walkers**"), and I act for Charitable DAF HoldCo, Ltd (in Voluntary Liquidation) (the "**Company**").

2.     I make this Affidavit in response to the winding up petition by which Cause No. FSD 99 of 2025 was commenced, and the summons listed in that proceeding seeking, among other things, "*An order appointing joint provisional liquidators over Charitable DAF HoldCo…*".

3.     There is now shown to me a bundle of documents marked Exhibit "**GS-1**" and references to page numbers herein are to pages of that Exhibit. For the avoidance of doubt, no privilege is waived by the inclusion of the information set out herein.

4.     Save where the contrary is stated to be the case, the facts and matters to which I depose are within my own knowledge and are true. Where the facts and matters are not within my own knowledge, they derive from my instructions by the company, acting either through its directors or the Joint Voluntary Liquidators (defined below) as the case may be at the relevant time, or I identify the source of my knowledge and confirm that those facts and matters are true to the best of my knowledge and belief.

**Recent events and documents**

5.     On 24 April 2025, Johnstone Law served on the Company at its registered office a bundle of documents including the winding up petition and the summons referred to above.  A copy of the cover letter to this bundle of documents is at

page 1 (noting that the remainder of the documents will already be before the Court).

6.  On 25 April 2025, Walkers sent to Johnstone Law a letter enclosing the following documents:

(a)  A consent to act as joint voluntary liquidators of the Company by Mitchell Mansfield and William Clarke of Kroll Cayman Ltd (the "**Joint Voluntary Liquidators**"), dated 29 March 2025;

(b)  Written resolutions of the directors of the Company including to recommend to the management shareholder that the Company be wound up voluntarily and the Joint Voluntary Liquidators be appointed, dated 2 April 2025;

(c)  Special resolutions of the management shareholder of the Company that the Company be wound up voluntarily and the Joint Voluntary Liquidators be appointed, dated 2 April 2025;

(d)  A declaration of solvency by the directors of the Company, dated 2 April 2025;

(e)  An extract from Gazette Issue No. 8/2025, which includes notice that on 2 April 2025 the Company was placed into Voluntary Liquidation and the Joint Voluntary Liquidators were appointed, dated 14 April 2025;

(f)  The current Memorandum and Articles of the Company, dated 20 February 2025;

(g)  The current Register of Members of the Company, dated 25 April 2025; and

(h)    An email chain between Walkers and Johnstone law, dated 23-24 April 2025.

7.    That letter and its enclosures are at **pages 2 – 53**.

8.    On 24 April 2025, emails were exchanged between Campbells LLP as the registered office of the Company, and Shields Legal (acting for the directors of the Company), in respect of the bundle of documents served by Johnstone Law. A copy of that email chain is at **pages 54 – 56**.

9.    On 27 April 2025, Mark Patrick (in his capacity as the management shareholder and a director of the Company) sent an email to the Joint Voluntary Liquidators in respect of the joint voluntary liquidation. A copy of that email is at **page 57**.

10.    A copy of the structure chart of the Company prior to 27 March 2025 is at **page 58**.  A copy of the current structure chart Company as of 27 March 2025 is at **page 59**.

**SWORN** at George Town,                )
                                          )
Grand Cayman                              )
                                          )  _G. Sykes_
                                          )  **GEOFFREY SYKES**
on the 27th day of April 2025             )
                                          )
before me                                 )
                                          )
                                          )
_____                 )
NOTARY PUBLIC

Fiona MacAdam
Notary Public in and for the Cayman Islands
My commission expires January 31, 20 26
Date: 27th April 2025 .

This **AFFIDAVIT** is filed by Walkers (Cayman) LLP, Attorneys-at-Law, 190 Elgin Avenue, George Town, Grand Cayman KY1-9001, Cayman Islands, for the Applicant whose address for service is care of said Attorneys-at-Law.

**FSD2025-0099**                    **Page 5 of 5**                    **2025-04-28**

1. Defendant
2. Geoffrey Sykes
3. First Affidavit
4. Exhibit "GS-1"
5. 27 April 2025

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

CAUSE NO:   FSD 99 OF 2025 (JAJ)

IN THE MATTER OF:    **SECTION 92 OF THE COMPANIES ACT (2025 REVISION)**

AND IN THE MATTER OF:    **CHARITABLE DAF HOLDCO, LTD (IN VOLUNATRY LIQUIDATION)**

BETWEEN        **(1) THE HIGHLAND DALLAS FOUNDATION, INC.**

**(2) THE HIGHLAND KANSAS CITY FOUNDATION, INC.**

**(3) THE HIGHLAND SANTA BARBARA FOUNDATION, INC.**

**(4) THE HCMLP CHARITABLE FUND**

<u>PLAINTIFFS</u>

and

**CHARITABLE DAF HOLDCO, LTD (IN VOLUNTARY LIQUIDATION)**

<u>DEFENDANT</u>

THIS IS EXHIBIT "**GS-1**" TO THE AFFIDAVIT OF

**GEOFFREY SYKES**

SWORN BEFORE ME THIS 27TH DAY OF APRIL 2025



Fiona MacAdam
Notary Public in and for the Cayman Islands
My commission expires January 31, 20 26
Date: 27 April 2025 .

_____
**NOTARY PUBLIC**

**FSD2025-0099**                                        **2025-04-28**

36068395.1.C8689.187150

1. Defendant
2. Geoffrey Sykes
3. First Affidavit
4. Exhibit "GS-1"
5. 27 April 2025

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

CAUSE NO:   FSD 99 OF 2025 (JAJ)

IN THE MATTER OF:   **SECTION 92 OF THE COMPANIES ACT (2025 REVISION)**

AND IN THE MATTER OF:   **CHARITABLE DAF HOLDCO, LTD (IN VOLUNATRY LIQUIDATION)**

BETWEEN   (1) **THE HIGHLAND DALLAS FOUNDATION, INC.**
(2) **THE HIGHLAND KANSAS CITY FOUNDATION, INC.**
(3) **THE HIGHLAND SANTA BARBARA FOUNDATION, INC.**
(4) **THE HCMLP CHARITABLE FUND**

<u>PLAINTIFFS</u>

**and**

**CHARITABLE DAF HOLDCO, LTD (IN VOLUNTARY LIQUIDATION)**

<u>DEFENDANT</u>

THIS IS EXHIBIT "**GS-1**" TO THE AFFIDAVIT OF

**GEOFFREY SYKES**

SWORN BEFORE ME THIS 27TH DAY OF APRIL 2025

Fiona MacAdam
Notary Public in and for the Cayman Islands
My commission expires January 31, 20 26
Date: 27 April 2025 .



_____
**NOTARY PUBLIC**

# JOHNSTONE
### L A W

24 April 2025

Charitable DAF HoldCo Ltd
c/o Campbells Corporate Services Limited
Floor 4, Willow House, Cricket Square
Grand Cayman, KY1-9010
Cayman Islands

Dear Sir or Madam

**In the matter of Charitable DAF HoldCo Ltd | FSD No. 99 of 2025 | Service of Documents**

We act for the participating shareholders of the Charitable DAF HoldCo Ltd (*Company*), namely: (i) Highland Dallas Foundation, Inc., (ii) Highland Kansas City Foundation, Inc., (iii) Highland Santa Barbara Foundation, Inc., and (iv) HCMLP Charitable Fund (*Supporting Organisations*) which presented a winding up petition in relation to the Company (*Petition*), and a summons dated 10 April 2025 (*Summons*).

The Summons is listed for hearing before Justice Asif at 2pm on 28 April 2025.

Please find enclosed by way of service copies of the following:

1.     The Petition (including Notice of Hearing)
2.     The Summons
3.     Affirmation of Julie Diaz and Exhibit JD-1
4.     Affirmation of James Dondero and Exhibit JDD-1
5.     Consent to act of Margot MacInnis and Exhibit MM-1
6.     Consent to act of Sandipan Bhowmik and Exhibit SB-1

*Acknowledgment of Service*

I _____ am duly authorised to accept service of the enclosed documents,
which were served at _____ pm on 24 April 2025.

_____

**Signed**

If you have any questions in relation to the above, please contact our office.

Yours faithfully

*Johnstone Law*

**Johnstone Law**

Unit 9, Tropic Centre, 18 Earth Close, Grand Cayman
PO Box 926, 10 Market St, Grand Cayman, KY1-9006
345 929 3000 | info@j-law.ky | www.j-law.ky | LinkedIn

1

# ⦀ Walkers

**BY EMAIL**

25 April 2025                                              Our Ref: PP/PA/187150

Johnstone Law
10 Market Street, PO Box 926
Grand Cayman KY1-9006

Dear Mr Johnstone

**CHARITABLE DAF HOLDCO, LTD (IN VOLUNTARY LIQUIDATION) (THE "COMPANY")**

1.    We act as Cayman Islands counsel to the Company.

2.    We refer to the documents served yesterday by your firm on the Company at its registered office, which include a winding up petition ("**Petition**"), an application for the appointment of provisional liquidators ("**PL Application**"), and a cover letter of service ("**Service Letter**").

**The Company is already in Voluntary Liquidation**

3.    Please note the following (all documents enclosed):

   (a)    On 29 March 2025, Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd executed a consent to act as joint voluntary liquidators of the Company ("**JVLs**").

   (b)    On 2 April 2025: (i) the directors of the Company executed written resolutions including to recommend to the management shareholder that the Company be wound up voluntarily and the JVLs be appointed; (ii) the management shareholder executed special resolutions that the Company be wound up voluntarily and the JVLs be appointed; and (iii) the directors of the Company executed a declaration of solvency.

   (c)    On 14 April 2025, Gazette Issue No. 8/2025 was published, which included notice that on 2 April 2025 the Company was placed into Voluntary Liquidation and the JVLs appointed.

4.    Further, please see enclosed:

   (a)    The current Memorandum and Articles of the Company, dated 20 February 2025 ("**M&A**").

<span style="color:blue">2</span>

(b)      The current Register of Members of the Company, dated 25 April 2025.

(c)      An email chain between your firm and our firm dated 23-24 April 2025.

5.      As outlined above, the Company is in Voluntary Liquidation.

6.      That fact should have been evident from a search of the Gazette prior to service, as per the enclosed notice referred to at paragraph 3(c) above.

7.      Further, the email chain referred to at paragraph 4(c) above is all that we received from your firm by way of pre-action correspondence.  We enquired as to the nature of the proceedings to be served, and had we been informed that it was a winding up petition and application for the appointment of provisional liquidators (rather than simply that the proceedings were in the process of being served on the Company's registered office), we would have informed you that the Company was already in Voluntary Liquidation.

8.      There is nothing in the M&A which entitles your clients to receive notice from the Company of its entry into Voluntary Liquidation.

**The appropriate course of action**

9.      As the Company is already in Voluntary Liquidation, the Petition and PL Application are plainly redundant, and we invite your clients to withdraw them without delay.

10.     If the JVLs (or your clients) consider it appropriate that the Voluntary Liquidation be brought under the supervision of the court, any of them may make an application for a supervision order pursuant to the Companies Act section 131.  If your clients would like to discuss such an application with the JVLs, including in respect of funding, please let us know.

11.     In the event that the Petition and PL Application are not withdrawn, or at the very least the hearing of the PL Application (which we understand from your firm's Service Letter is listed on Monday 28 April 2025 at 2pm) is not adjourned, this letter must be brought to the attention of the Court, and we will appear on behalf of the Company.

12.     If it becomes appropriate to do so, we will put this letter before the Court including on the question of costs.

Yours faithfully

*Walkers (Cayman) LLP*

**WALKERS (CAYMAN) LLP**

Direct Tel: +1 345 914 6365
Email: Barnaby.Gowrie@walkersglobal.com

3

**THE COMPANIES ACT (AS AMENDED)**

**JOINT VOLUNTARY LIQUIDATORS' CONSENT TO ACT**

**CHARITABLE DAF HOLDCO, LTD. (IN VOLUNTARY LIQUIDATION) (THE "COMPANY")**

**REGISTRATION NO: 263805**

To:      The Registrar of Companies

**TAKE NOTICE** that we, Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd, Strathvale House, 3rd Floor, 90 North Church Street, George Town, Grand Cayman, KY1-1204, Cayman Islands, hereby consent to act as Joint Voluntary Liquidators of the above-named Company with effect from the commencement of the liquidation.

**DATED** this 29th day of March, 2025.

_____

**Mitchell Mansfield**
**Joint Voluntary Liquidator**

E: mitchell.mansfield@kroll.com
T: +1 345 743 8805

_____

**William Clarke**
**Joint Voluntary Liquidator**

E: will.clarke@kroll.com
T: +1 345 623 9905

**CHARITABLE DAF HOLDCO, LTD.**
**(THE "COMPANY")**

---

**WRITTEN RESOLUTIONS OF THE**
**DIRECTORS OF THE COMPANY DATED 2 APRIL 2025**

---

Capitalised terms used herein shall have the meaning ascribed to such terms in the Company's Amended and Restated Memorandum and Articles of Association (as adopted by Special Resolution dated 20 February 2025), unless the context otherwise requires.

The undersigned, being all the Directors of the Company for the time being, hereby take the following actions and adopt the following resolutions.

1.      **VOLUNTARY LIQUIDATION**

1.1     **IT IS NOTED** that:

(a)     the Company's sole investment, being 100% of the limited liability company interests in CDMCFAD, LLC, a Delaware limited liability company, was redeemed on 27 March 2025 (the "**CDMCFAD Redemption**");

(b)     proceeds lawfully available for distribution from the CDMCFAD Redemption in the amount of $1,612,192 were distributed to holders of Participating Shares of the Company by way of a cash dividend paid on April 2;

(c)     the Company will not be engaging in any further business or investment activity and the operations of the Company have been fully wound down;

(d)     the Company has no assets and no liabilities;

(e)     in the circumstances, there is no reason for the Company to continue as a going concern and the Directors are of the view that the Company should therefore be wound up voluntarily;

(f)     Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd, Strathvale House, 3rd Floor, 90 North Church Street, George Town, Grand Cayman, KY1-1204, Cayman Islands have indicated that they consent to act as joint voluntary liquidators of the Company (the "**JVLs**") if so appointed;

(g)     the Directors have received and reviewed a liquidation proposal from the JVLs, together with its terms and conditions (the "**Liquidation Proposal**");

(h)     the Directors have conducted a full enquiry into the Company's affairs and to the best of the Directors' knowledge and belief the Company will be able to pay its debts in full together with interest at the prescribed rate within twelve-month period from the commencement of the voluntary winding up; and

(i)     the Directors have received a form of the declaration of solvency for execution pursuant to section 124 of the Companies Act (as amended) (the "**Declaration of Solvency**").

1.2   **IT IS RESOLVED** that:

(a)   the Liquidation Proposal be approved;

(b)   the Directors recommend to Mark Patrick, being the only Shareholder having the right to receive notice of, attend, speak at and vote at general meetings of the Company, that:

(i)   the Company be wound up voluntarily; and

(ii)   Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd be appointed as the JVLs of the Company; and

(c)   if the Company is wound up voluntarily, each Director execute the Declaration of Solvency.

## 2.   GENERAL AUTHORISATION

2.1   **IT IS RESOLVED** that, in connection with or to carry out the actions contemplated by the foregoing resolutions, any Director, officer or (if applicable) any attorney or duly authorised signatory of the Company (any such person being an "**Attorney**" or "**Authorised Signatory**" respectively), and such other persons as are authorised by any of them be, and each hereby is, authorised, in the name and on behalf of the Company, to do such further acts and things as any Director or officer or such duly authorised other person shall deem necessary or appropriate, including to do and perform (or cause to be done and performed), in the name and on behalf of the Company, all such acts and to sign, make, execute, deliver, issue or file (or cause to be signed, made, executed, delivered, issued or filed) with any person including any governmental authority or agency, all such agreements, documents, instruments, certificates, consents or waivers and all amendments to any such agreements, documents, instruments, certificates, consents or waivers and to pay, or cause to be paid, all such payments, as any of them may deem necessary or advisable in order to carry out the intent of the foregoing resolutions, the authority for the doing of any such acts and things and the signing, making, execution, delivery, issue and filing of such of the foregoing to be conclusively evidenced thereby.

## 3.   RATIFICATION OF PRIOR ACTIONS

3.1   **IT IS RESOLVED** that any and all actions of the Company, or of any Director or officer or any Attorney or Authorised Signatory, taken in connection with the actions contemplated by the foregoing resolutions prior to the execution hereof be and are hereby ratified, confirmed, approved and adopted in all respects as fully as if such action(s) had been presented to for approval and approved by, all the Directors prior to such action being taken.

_____
Mark Patrick
**Director**

_____
Paul Murphy
**Director**

**CHARITABLE DAF HOLDCO, LTD.**
**(THE "COMPANY")**

---

**WRITTEN RESOLUTIONS OF THE SOLE VOTING SHAREHOLDER**
**OF THE COMPANY DATED 2 APRIL 2025**

---

Capitalised terms used herein shall have the meaning ascribed to such terms in the Company's Amended and Restated Memorandum and Articles of Association (as adopted by Special Resolution dated 20 February 2025) (the "**Articles**"), unless the context otherwise requires.

The undersigned, being the only Shareholder of the Company having the right to receive notice of, attend, speak at and vote at general meetings and having considered the written resolutions of the Directors dated 2 April 2025 which state that the Directors recommend that the Company be wound up voluntarily and that Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd, Strathvale House, 3rd Floor, 90 North Church Street, George Town, Grand Cayman, KY1-1204, Cayman Islands be appointed as the joint voluntary liquidators of the Company (the "**JVLs**"), hereby consents to the following actions and adopts the resolutions set out below.

1.      **VOLUNTARY LIQUIDATION**

1.1     **IT IS RESOLVED BY SPECIAL RESOLUTION** that:

(a)     the Company be wound up voluntarily; and

(b)     Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd be appointed as the JVLs of the Company.

1.2     **IT IS RESOLVED BY ORDINARY RESOLUTION** that:

(a)     the JVLs be authorised, in accordance with Article 123 of the Articles, to divide amongst the Participating Shareholders in specie or kind the whole or any part of the assets of the Company (whether they shall consist of property of the same kind or not) and may, for that purpose, set such value as they deem fair upon any property to be divided as aforesaid and may determine how such division will be carried out as between the Participating Shareholders or different Classes; and

(b)     the JVLs shall have the power to retain the Company's administrator, manager or such other person as determined by the JVLs to assist them in discharging any registration and notification obligations and any obligation to complete the Company's final filings and retain records pursuant to the US Foreign Account Tax Compliance Act and/or Common Reporting Standard and/or Economic Substance Reporting.

_Mark Patrick_

---

Mark Patrick

THE COMPANIES ACT (AS AMENDED)

<u>DECLARATION OF SOLVENCY</u>

CHARITABLE DAF HOLDCO, LTD. (IN VOLUNTARY LIQUIDATION) (THE "COMPANY")

REGISTRATION NO: 263805

We, Mark Patrick and Paul Murphy, being the Directors of the Company do solemnly and sincerely declare that we have made a full inquiry into the affairs of the Company and that, having done so, we believe that the Company will be able to pay its debts in full, together with interest at the prescribed rate within a period of twelve (12) months from the commencement of the winding up.

**Mark Patrick**

6716 Glenhurst Drive, Dallas, Texas, TX 75254, United States

Date of signature: 4/2/2025

Date of appointment as Director: 25 March 2021

**Paul Murphy**

Windsor Village, Unit 24, South Sound, Grand Cayman, Cayman Islands

Date of signature: 2nd April 2025

Date of appointment as Director: 22 April 2021

**Contacts for enquiries:**
Bryce Doran or Zhouming Kang
Telephones: (345) 949 7576 or +852 2583 1167
Emails: BDoran@RHRestructuring.com
 or zhouming.kang@acclime.com

#### GATN FINANCE LIMITED
#### Notice of Voluntary Winding Up (O.13, r.2)
#### (In Voluntary Liquidation)
#### The Companies Act (As Amended)

TAKE NOTICE that the above-named Company was put into liquidation on 2 April 2025 by a special resolution passed at an extraordinary meeting of the Company held on 2 April 2025.

AND FURTHER TAKE NOTICE that Westport Services Ltd., of PO Box 1111, Century Yard, Cricket Square, Grand Cayman, KY1-1102 Cayman Islands, has been appointed Voluntary Liquidator of the Company.

Creditors of the company are to prove their debts or claims on or before 7 May 2025and to establish any title they may have under The Companies Act (as amended), or be excluded from the benefit of any distribution made before such debts are proved or from objecting to the distribution.

**Date of liquidation:  2 April 2025**
WESTPORT SERVICES LTD.
Voluntary Liquidator

**Officer for enquiries:**
Name: Colin Eastburn-Mallory
Telephone: (345) 949 5122
c/o Paget-Brown Financial Services Limited
P.O. Box 1111
Century Yard, Cricket Square
Grand Cayman KY1-1102
Cayman Islands
Tel: 345 949 5122

#### AMP FUNDING LIMITED
#### (In Voluntary Liquidation)
#### The Companies Act (As Amended)
#### Notice of Voluntary Winding Up (O.13, r.2)

TAKE NOTICE that the above-named Company was put into liquidation on 2 April 2025 by a special resolution passed at an extraordinary meeting of the Company held on 2 April 2025.

AND FURTHER TAKE NOTICE that Westport Services Ltd., of PO Box 1111, Century

Yard, Cricket Square, Grand Cayman KY1-1102, Cayman Islands, has been appointed Voluntary Liquidator of the Company.

Creditors of the company are to prove their debts or claims on or before 7 May 2025and to establish any title they may have under The Companies Act (as amended), or be excluded from the benefit of any distribution made before such debts are proved or from objecting to the distribution.

**Date of liquidation:  2 April 2025**
WESTPORT SERVICES LTD.
Voluntary Liquidator

**Officer for enquiries:**
Name: Colin Eastburn-Mallory
Telephone: (345) 949 5122
c/o Paget-Brown Financial Services Limited
P.O. Box 1111
Century Yard, Cricket Square
Grand Cayman KY1-1102
Cayman Islands
Tel: 345 949 5122

#### CHARITABLE DAF HOLDCO, LTD.
#### (In Voluntary Liquidation)
#### ("The Company")
#### The Companies Act (As Amended)
#### Notice Of Voluntary Winding Up
#### Registration No: 263805

TAKE NOTICE that the Company was put into liquidation on 2 April 2025 by a special resolution passed by written resolution of the sole voting shareholder of the Company, executed on 2 April 2025.

AND FURTHER TAKE NOTICE that Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd, Strathvale House, 3rd Floor, 90 North Church Street, George Town, Grand Cayman, KY1-1204, Cayman Islands, have been appointed as joint voluntary liquidators of the Company.

AND NOTICE IS HEREBY GIVEN that creditors of the Company are to prove their debts or claims within 21 days of the publication of this notice and to establish any title they may have under the Companies Act (as amended) by sending their names, addresses and the particulars of their debts or claims to the undersigned, or in default thereof they will be excluded from the benefit of

any distribution made before such debts and/or claims are proved or from objecting to the distribution.

**Dated this 14th day of April 2025**

MITCHELL MANSFIELD AND WILLIAM CLARKE

Joint Voluntary Liquidators

**Contact for enquiries:**

William Clarke
Strathvale House, 3rd Floor
90 North Church Street
George Town
Grand Cayman KY1-1204
Cayman Islands
E: will.clarke@kroll.com
T: +1 345 623 9905

**Address for service:**

Kroll (Cayman) Ltd
Strathvale House, 3rd Floor
90 North Church Street
George Town
Grand Cayman, KY1-1204
Cayman Islands

**AARO DIRECTIONAL CRYPTO
MULTIFUND LIMITED
(In Voluntary Liquidation)
(the Company)
Notice Of Voluntary Winding Up
Registration No: 390083**

TAKE NOTICE that the Company was placed into voluntary liquidation on 28 March 2025 by a special resolution passed by written resolution of the voting shareholder of the Company.

AND FURTHER TAKE NOTICE that R&H Restructuring VL Services Ltd. of Windward 1, Regatta Office Park, PO Box 897, Grand Cayman KY1-1103, Cayman Islands has been appointed voluntary liquidator of the Company.

AND NOTICE IS HEREBY GIVEN that creditors of the Company are to prove their debts or claims within 21 days of the publication of this notice to establish any title they may have under the Companies Act (as revised) by sending their names, addresses and the particulars of their debts or claims to the undersigned, or in default thereof they will be excluded from the benefit of any distribution made before such debts and/or claims

are proved or from objecting to the distribution.
**Dated: 03 April 2025**

OWEN WALKER
Authorised signatory for and on behalf of
R&H Restructuring VL Services, Ltd.
Voluntary Liquidator
MARTIN TROTT
Authorised signatory for and on behalf of
R&H Restructuring VL Services, Ltd.
Voluntary Liquidator

**Contact for Enquiries:**

Robert Knight
Telephone: +1 (345) 949 7576
Email: RKnight@RHRestructuring.com

**XP PHALANX CT FUND
(In Voluntary Liquidation)
(the "Company")
The Companies Act (as amended)
Notice of Voluntary Winding Up
Registration No: 391110**

TAKE NOTICE that the above-named Company was put into liquidation on 26 March 2025 by a Special Resolution passed by the sole voting shareholder by way of a written resolution in lieu of a meeting.

AND FURTHER TAKE NOTICE that FFP Limited of 2nd Floor Harbour Centre, 159 Mary Street, George Town, Grand Cayman, Cayman Islands has been appointed Voluntary Liquidator of the Company.

CREDITORS OF THE COMPANY are to prove their debts or claims within 21 days of the publication of this notice, and to establish any title they may have under the Companies Act (as amended) or are to be excluded from the benefit of any distribution made before the debts are proved or from objecting to the distribution.

**Dated this 3rd day of April 2025**

FFP LIMITED
Voluntary Liquidator

**Contact for enquiries:**

James Allen
FFP Limited
2nd Floor Harbour Centre
159 Mary Street
George Town, Grand Cayman
Cayman Islands

**CHARITABLE DAF HOLDCO, LTD**

---

**THE COMPANIES ACT (AS AMENDED)**

**COMPANY LIMITED BY SHARES**

**AMENDED AND RESTATED**

**MEMORANDUM AND ARTICLES OF ASSOCIATION**

**(ADOPTED BY SPECIAL RESOLUTION DATED 20 FEBRUARY 2025)**

---

# Campbells

Floor 4, Willow House, Cricket Square
Grand Cayman KY1-9010
Cayman Islands

campbellslegal.com

(14133-42760)



11

*Filed: 21-Feb-2025 09:26 EST*
*Auth Code: E90228166495*

**CHARITABLE DAF HOLDCO, LTD**

---

**THE COMPANIES ACT (AS AMENDED)**

**COMPANY LIMITED BY SHARES**

**AMENDED AND RESTATED**

**MEMORANDUM OF ASSOCIATION**

**(ADOPTED BY SPECIAL RESOLUTION DATED 20 FEBRUARY 2025)**

---

1.      The name of the Company is Charitable DAF HoldCo, Ltd.

2.      The registered office of the Company will be situated at the offices of Campbells Corporate Services Limited, Floor 4, Willow House, Cricket Square, Grand Cayman KY1-9010, Cayman Islands or at such other location as the Directors may from time to time determine.

3.      The objects for which the Company is established are:

   (a)   to benefit community-focused non-profit foundations established or located anywhere in the world or for the purposes recognised as charitable, as the Directors may from time to time determine, in furtherance of the following mission statement: "Charitable DAF makes investments in order to support community-focused non-profit foundations with a demonstrated focus of giving funds to worthy causes and making a difference"; and

   (b)   to do all such things in the opinion of the Directors are or may be incidental or conducive to the above objects or any part of them.

4.      The Company shall have and be capable of exercising all the functions of a natural person of full capacity irrespective of any question of corporate benefit as provided by Section 27(2) of the Companies Act (as amended) of the Cayman Islands (the "**Act**").

5.      The Company will not trade in the Cayman Islands with any person, firm or corporation except in furtherance of the business of the Company carried on outside the Cayman Islands; provided that nothing in this section shall be construed as to prevent the Company effecting and concluding contracts in the Cayman Islands, and exercising in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands.

6.      The liability of the shareholders of the Company is limited to the amount, if any, unpaid on the shares respectively held by them.

7.      The capital of the Company is US$50,000.00 divided into 4,999,900 Participating Shares of a nominal or par value of US$0.01 each 100 Management Shares of a nominal or par value of US$0.01 each provided always that subject to the Act and the Articles of Association the Company shall have power

1

12

*Filed: 21-Feb-2025 09:26 EST*
*Auth Code: E90228166495*
www.verify.gov.ky File#: 263805

to redeem or purchase any of its shares and to sub-divide or consolidate the said shares or any of them and to issue all or any part of its capital whether original, redeemed, increased or reduced with or without any preference, priority, special privilege or other rights or subject to any postponement of rights or to any conditions or restrictions whatsoever and so that unless the conditions of issue shall otherwise expressly provide every issue of shares whether stated to be ordinary, preference or otherwise shall be subject to the powers on the part of the Company hereinbefore provided.

8.    The Company may exercise the power contained in Section 206 of the Act to deregister in the Cayman Islands and be registered by way of continuation in some other jurisdiction.

35631852.5.C8689.187150

13

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

# TABLE OF CONTENTS

**CLAUSE**                                                                                      **PAGE**

TABLE A ................................................................................................................................ 1

INTERPRETATION ............................................................................................................... 1

PRELIMINARY ...................................................................................................................... 5

SHARES ................................................................................................................................ 6

MANAGEMENT SHARES ..................................................................................................... 6

PARTICIPATING SHARES .................................................................................................... 7

MODIFICATION OF RIGHTS ................................................................................................ 7

CERTIFICATES ..................................................................................................................... 7

FRACTIONAL SHARES ........................................................................................................ 7

TRANSFER OF SHARES ...................................................................................................... 8

TRANSMISSION OF SHARES .............................................................................................. 8

ALTERATION OF SHARE CAPITAL ..................................................................................... 9

REDEMPTION, PURCHASE AND SURRENDER OF SHARES ............................................ 9

TREASURY SHARES ......................................................................................................... 10

GENERAL MEETINGS ........................................................................................................ 11

NOTICE OF GENERAL MEETINGS .................................................................................... 11

PROCEEDINGS AT GENERAL MEETINGS ....................................................................... 11

VOTES OF SHAREHOLDERS ............................................................................................ 13

CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS ................................ 14

DIRECTORS ....................................................................................................................... 14

POWERS AND DUTIES OF DIRECTORS ........................................................................... 15

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

BORROWING POWERS OF DIRECTORS ........................................................................................ 17

THE SEAL ................................................................................................................................. 17

DISQUALIFICATION OF DIRECTORS ......................................................................................... 17

PROCEEDINGS OF DIRECTORS ................................................................................................ 18

DIVIDENDS ............................................................................................................................... 21

ACCOUNTS, AUDIT AND ANNUAL RETURN AND DECLARATION ........................................... 21

CAPITALISATION OF RESERVES .............................................................................................. 22

SHARE PREMIUM ACCOUNT .................................................................................................... 23

NOTICES ................................................................................................................................... 23

NON-RECOGNITION OF TRUSTS .............................................................................................. 24

WINDING UP ............................................................................................................................. 25

AMENDMENT OF ARTICLES OF ASSOCIATION ........................................................................ 25

CLOSING OF REGISTER OR FIXING RECORD DATE ................................................................. 25

REGISTRATION BYWAY OF CONTINUATION ............................................................................ 26

MERGERS AND CONSOLIDATION ............................................................................................. 26

DISCLOSURE ............................................................................................................................ 26

INDEMNITY ............................................................................................................................... 27

DISPUTE RESOLUTION ............................................................................................................. 28

AEOI ......................................................................................................................................... 30

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

**CHARITABLE DAF HOLDCO, LTD**

---

**THE COMPANIES ACT (AS AMENDED)**

**COMPANY LIMITED BY SHARES**

**AMENDED AND RESTATED**

**ARTICLES OF ASSOCIATION**

**(ADOPTED BY SPECIAL RESOLUTION DATED 20 FEBRUARY 2025)**

---

**TABLE A**

The Regulations contained or incorporated in Table 'A' in the First Schedule of the Act shall not apply to Charitable DAF HoldCo, Ltd (the "**Company**") and the following Articles shall comprise the Articles of Association of the Company.

**INTERPRETATION**

1.    In these Articles the following defined terms will have the meanings ascribed to them, if not inconsistent with the subject or context:

"**Act**" means the Companies Act (as amended) of the Cayman Islands.

"**AEOI**" means:

(i)     sections 1471 to 1474 of the Code and any associated legislation, regulations or guidance, and any other similar legislation, regulations or guidance enacted in any other jurisdiction which seeks to implement similar financial account information reporting and/or withholding tax regimes;

(ii)     the OECD Standard for Automatic Exchange of Financial Account Information in Tax Matters - the Common Reporting Standard and any associated guidance;

(iii)     any intergovernmental agreement, treaty, regulation, guidance, standard or other agreement between the Cayman Islands (or any Cayman Islands government body) and any other jurisdiction (including any government bodies in such jurisdiction), entered into in

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

order to comply with, facilitate, supplement or implement the legislation, regulations or guidance described in sub-paragraphs (i) and (ii); and

(iv)      any legislation, regulations or guidance in the Cayman Islands that give effect to the matters outlined in the preceding sub-paragraphs.

"**Articles**" means these articles of association of the Company, as amended or substituted from time to time.

"**Branch Register**" means any branch Register of such category or categories of Members as the Company may from time to time determine.

"**Class**" or "**Classes**" means any class or classes of Shares as may from time to time be issued by the Company.

"**Code**" means the US Internal Revenue Code of 1986, as amended.

"**Directors**" means the directors of the Company for the time being, or as the case may be, the directors assembled as a board or as a committee thereof.

"**Electronic Record**" has the same meaning as in the Electronic Transactions Act.

"**Electronic Transactions Act**" means the Electronic Transactions Act (as amended) of the Cayman Islands.

"**Gross Negligence**" has the meaning ascribed under the laws of the State of Delaware in the United States.

"**Management Director**" means a director of the Company holding a Management Share (as defined below).

"**Management Share**" means a voting non-participating share in the capital of the Company of $0.01 nominal or par value, that shall be non-redeemable at the option of the holder but redeemable by the Company in accordance with these Articles, and issued subject to and in accordance with the provisions of the Act and these Articles and having the rights and being subject to the restrictions as provided for under these Articles with respect to such Shares.

"**Material Transaction**" means any transaction (or series of connected transactions), including an acquisition, distribution, investment or divestiture by the Company, for the aggregate amount in excess of $250,000;

"**Memorandum of Association**" means the memorandum of association of the Company, as amended or substituted from time to time.

"**Office**" means the registered office of the Company as required by the Act.

"**Ordinary Resolution**" means a resolution:

(a)      passed by a simple majority of such Shareholders as, being entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting of the Company and where a

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495
www.verify.gov.ky File#: 263805

poll is taken regard shall be had in computing a majority to the number of votes to which each Shareholder is entitled; or

(b)    approved in writing by all of the Shareholders entitled to vote at a general meeting of the Company in one or more instruments each signed by one or more of the Shareholders and the effective date of the resolution so adopted shall be the date on which the instrument, or the last of such instruments, if more than one, is executed.

"**paid up**" means paid up as to the par value in respect of the issue of any Shares and includes credited as paid up.

"**Participating Share**" means a non-voting, participating, non-redeemable share in the capital of the Company of $0.01 nominal or par value issued subject to and in accordance with the provisions of the Act and these Articles, and having the rights and being subject to the restrictions as provided for under these Articles with respect to such Share. All references to "Participating Shares" herein shall be deemed to be Participating Shares of any or all Classes or Series as the context may require. For the avoidance of doubt, in these Articles the expression "Participating Share" shall include a fraction of a Participating Share.

"**Person**" means any natural person, firm, company, joint venture, partnership, corporation, association or other entity (whether or not having a separate legal personality) or any of them as the context so requires.

"**Principal Register**", where the Company has established one or more Branch Registers pursuant to the Act and these Articles, means the Register maintained by the Company pursuant to the Act and these Articles that is not designated by the Directors as a Branch Register.

"**Register**" means the register of Members of the Company required to be kept pursuant to the Act and includes any Branch Register(s) established by the Company in accordance with the Act.

"**Restricted Person**" means any Person holding Participating Shares:

(a)    in breach of the law or requirements of any country or governmental authority;

(b)    that is not an entity or organisation exempt from taxation under Section 501(c)(3) of the Code or an entity or organisation all of whose beneficiaries are exempt under Section 501(c)(3) of the Code; or

(c)    in circumstances (whether directly or indirectly affecting such Person and whether taken alone or in conjunction with any other Person, connected or not, or any other circumstances) which, in the opinion of the Directors, might result in the Company incurring any liability to taxation or suffering any other pecuniary, legal, regulatory or administrative disadvantage which the Company might not otherwise have incurred or suffered.

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

"**Seal**" means the common seal of the Company (if adopted) including any facsimile thereof.

"**Secretary**" means any Person appointed by the Directors to perform any of the duties of the secretary of the Company.

"**Share**" means a Management Share or Participating Share or both as the context so requires.

"**Shareholder**" or "**Member**" means a Person who is registered as the holder of Shares in the Register and includes each subscriber to the Memorandum of Association pending entry in the Register of such subscriber.

"**Share Premium Account**" means the share premium account established in accordance with these Articles and the Act.

"**signed**" means bearing a signature or representation of a signature affixed by mechanical means.

"**Special Resolution**" means a special resolution of the Company passed in accordance with the Act, being a resolution:

(a)     passed by a majority of not less than two-thirds of such Shareholders as, being entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting of the Company of which notice specifying the intention to propose the resolution as a special resolution has been duly given and where a poll is taken regard shall be had in computing a majority to the number of votes to which each Shareholder is entitled; or

(b)     approved in writing by all of the Shareholders entitled to vote at a general meeting of the Company in one or more instruments each signed by one or more of the Shareholders and the effective date of the special resolution so adopted shall be the date on which the instrument or the last of such instruments, if more than one, is executed.

"**Treasury Shares**" means Shares that were previously issued but were purchased, redeemed, surrendered or otherwise acquired by the Company and not cancelled.

"**United States**" and "**US**" means the United States of America (including the District of Columbia), its states, territories and possessions.

In these Articles, save where the context requires otherwise:

(a)     words importing the singular number shall include the plural number and vice versa;

(b)     words importing the masculine gender only shall include the feminine gender and any Person as the context may require;

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

(c)    the word "may" shall be construed as permissive and the word "shall" shall be construed as imperative;

(d)    reference to a dollar or dollars or USD (or $) and to a cent or cents is reference to dollars and cents of the United States of America;

(e)    reference to a statutory enactment shall include reference to any amendment or re- enactment thereof for the time being in force;

(f)    reference to any determination by the Directors shall be construed as a determination by the Directors in their sole and absolute discretion and shall be applicable either generally or in any particular case;

(g)    reference to "in writing" shall be construed as written or represented by any means reproducible in writing, including any form of print, lithograph, email, facsimile, photograph or telex or represented by any other substitute or format for storage or transmission for writing or partly one and partly another;

(h)    any requirements as to execution or signature under the Articles including the execution  of the Articles themselves can be satisfied in the form of an electronic signature as  defined in the Electronic Transactions Act; and

(i)    sections 8 and 19(3) of the Electronic Transactions Act shall not apply.

2.    Subject to the preceding Articles, any words defined in the Act shall, if not inconsistent with the subject or context, bear the same meaning in these Articles.

## PRELIMINARY

3.    The business of the Company may be commenced at any time after incorporation.

4.    The Office shall be at such address in the Cayman Islands as the Directors may from time to time determine. The Company may in addition establish and maintain such other offices and places of business and agencies in such places as the Directors may from time to time determine.

5.    The expenses incurred in the formation of the Company and in connection with the offer for subscription and issue of Participating Shares shall be paid by the Company.  Such expenses may be amortised over such period as the Directors may determine and the amount so paid shall be charged against income and/or capital in the accounts of the Company as the Directors shall determine.

6.    The Directors shall keep, or cause to be kept, the Register at such place or (subject to compliance with the Act and these Articles) places as the Directors may from time to time determine. In the absence of any such determination, the Register shall be kept at the Office.  The Directors may

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

keep, or cause to be kept, one or more Branch Registers as well as the Principal Register in accordance with the Act, provided always that a duplicate of such Branch Register(s) shall be maintained with the Principal Register in accordance with the Act.

## SHARES

7.      Subject to these Articles, all Shares for the time being unissued shall be under the control of the Directors who may:

(a)      issue, allot and dispose of the same to such Persons, in such manner, on such terms and having such rights and being subject to such restrictions as they may from time to time determine;

(b)      and grant options with respect to such Shares and issue warrants or similar instruments with respect thereto;

and, for such purposes, the Directors may reserve an appropriate number of Shares for the time being unissued.

8.      The Directors, or the Shareholders by Ordinary Resolution, may authorise the division of Participating Shares into any number of Classes and the different Classes shall be authorised, established and designated (or re-designated as the case may be) and the variations in the relative rights (including, without limitation, voting, dividend and redemption rights), restrictions, preferences, privileges and payment obligations as between the different Classes (if any) may be fixed and determined by the Directors or the Shareholders by Ordinary Resolution.

9.      The Company may insofar as may be permitted by law, pay a commission to any Person in consideration of his subscribing or agreeing to subscribe whether absolutely or conditionally for any Shares.  Such commissions may be satisfied by the payment of cash or the lodgement of fully or partly paid-up Shares or partly in one way and partly in the other.  The Company may also pay such brokerage as may be lawful on any issue of Shares.

10.     The Directors may refuse to accept any application for Shares, and may accept any application in whole or in part, for any reason or for no reason.

## MANAGEMENT SHARES

11.     The Management Shares shall be issued at par value and shall carry the right to receive notice of and to attend, to speak at and to vote at any general meeting of the Company.  In the event of a winding up or dissolution of the Company, whether voluntary or involuntary or for the purposes of a reorganisation or otherwise or upon any distribution of capital, the entitlement of the holders of Management Shares shall be determined in accordance with these Articles.  Management Shares confer no other right to participate in the profits or assets of the Company.

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

## PARTICIPATING SHARES

12.     Participating Shares shall confer upon a Shareholder no right to receive notice of, to attend, to speak at nor to vote at general meetings of the Company but may be entitled to vote at a separate class meeting in relation to a modification of rights pursuant to the immediately following Article. The Participating Shares shall confer upon the Shareholders rights in a winding-up or repayment of capital and the right to participate in the profits or assets of the Company in accordance with these Articles.

## MODIFICATION OF RIGHTS

13.     Whenever the capital of the Company is divided into different Classes the rights attached to any such Class may, subject to any rights or restrictions for the time being attached to any Class, only be materially adversely varied or abrogated with the consent in writing of the holders of not less than two-thirds of the issued Participating Shares of the relevant Class or with the sanction of a resolution passed at a separate meeting of the holders of the Participating Shares of such Class by a majority of two-thirds of the votes cast at such a meeting.  To every such separate meeting all the provisions of these Articles relating to general meetings of the Company or to the proceedings thereat shall, *mutatis mutandis*, apply, except that the necessary quorum shall be one or more Persons at least holding or representing by proxy one-third in nominal or par value amount of the issued Participating Shares of the relevant Class (but so that if at any adjourned meeting of such holders a quorum as above defined is not present, those Shareholders who are present shall form a quorum) and that, subject to any rights or restrictions for the time being attached to the Participating Shares of that Class, every Shareholder of the Class shall on a poll have one vote for each Share of the Class held by him.  For the purposes of this Article the Directors may treat all the Classes or any two or more Classes as forming one Class if they consider that the variation or abrogation of the rights attached to such Classes proposed for consideration is the same variation or abrogation for all such relevant Classes, but in any other case shall treat them as separate Classes.

14.     The rights conferred upon the holders of the Participating Shares of any Class issued with preferred or other rights shall not, subject to any rights or restrictions for the time being attached to the Participating Shares of that Class, be deemed to be materially adversely varied or abrogated by, *inter alia*, the creation, allotment or issue of further Participating Shares ranking *pari passu* with or subsequent to them or the redemption or purchase of any Participating Shares of any Class by the Company.

## CERTIFICATES

15.     No Person shall be entitled to a certificate for any or all of his Shares, unless the Directors shall determine otherwise.

## FRACTIONAL SHARES

16.     The Directors may issue fractions of a Share and, if so issued, a fraction of a Share shall be subject to and carry the corresponding fraction of liabilities (whether with respect to nominal or par value, premium, contributions, calls or otherwise), limitations, preferences, privileges, qualifications, restrictions, rights (including, without prejudice to the generality of the foregoing, voting and participation rights) and other attributes of a whole Share.  If more than one fraction of a Share of the same Class is issued to or acquired by the same Shareholder such fractions shall be accumulated.

*Filed: 21-Feb-2025 09:26 EST*
*Auth Code: E90228166495*

*www.verify.gov.ky File#: 263805*

## TRANSFER OF SHARES

17.     The instrument of transfer of any Share shall be in any usual or common form or such other form as the Directors may, in their absolute discretion, approve and be executed by or on behalf of the transferor and if in respect of a nil or partly paid up Share, or if so required by the Directors, shall also be executed on behalf of the transferee and shall be accompanied by the certificate (if any) of the Shares to which it relates and such other evidence as the Directors may reasonably require to show the right of the transferor to make the transfer.  The transferor shall be deemed to remain a Shareholder until the name of the transferee is entered in the Register in respect of the relevant Shares.

18.     The Directors may in their absolute discretion decline to register any transfer of Shares without assigning any reason therefor including any purported transfer that does not comply with applicable securities or tax laws.

19.     The registration of transfers may be suspended at such times and for such periods as the Directors may from time to time determine.

20.     All instruments of transfer that are registered shall be retained by the Company, but any instrument of transfer that the Directors decline to register shall (except in any case of fraud) be returned to the Person depositing the same.

21.     If it comes to the notice of the Directors that any Shares are held by a Restricted Person the Directors may by notice in writing require the transfer of such Shares in exercise of their powers under these Articles.

## TRANSMISSION OF SHARES

22.     The legal personal representative of a deceased sole holder of a Share shall be the only Person recognised by the Company as having any title to the Share.  In the case of a Share registered in the name of two or more holders, the survivors or survivor, or the legal personal representatives of the deceased holder of the Share, shall be the only Person recognised by the Company as having any title to the Share.

23.     Any Person becoming entitled to a Share in consequence of the death or bankruptcy of a Shareholder shall upon such evidence being produced as may from time to time be required by the

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

Directors, have the right either to be registered as a Shareholder in respect of the Share or, instead of being registered himself, to make such transfer of the Share as the deceased or bankrupt Person could have made; but the Directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the Share by the deceased or bankrupt Person before the death or bankruptcy.

24.    A Person becoming entitled to a Share by reason of the death or bankruptcy of a Shareholder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered Shareholder, except that he shall not, before being registered as a Shareholder in respect of the Share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the Company.

## ALTERATION OF SHARE CAPITAL

25.    The Company may from time to time by Ordinary Resolution increase the share capital by such sum, to be divided into Shares of such Classes and amount, as the resolution shall prescribe.

26.    The Company may by Ordinary Resolution:

(a)    consolidate and divide all or any of its share capital into Shares of a larger amount than its existing Shares;

(b)    convert all or any of its paid up Shares into stock and reconvert that stock into paid up Shares of any denomination;

(c)    subdivide its existing Shares, or any of them into Shares of a smaller amount provided that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced Share shall be the same as it was in case of the Share from which the reduced Share is derived; and

(d)    cancel any Shares that, at the date of the passing of the resolution, have not been taken or agreed to be taken by any Person and diminish the amount of its share capital by the amount of the Shares so cancelled.

27.    The Company may by Special Resolution reduce its share capital and any capital redemption reserve in any manner authorised by law.

## REDEMPTION, PURCHASE AND SURRENDER OF SHARES

28.    Subject to the Act, the Company may:

(a)    issue Shares on terms that they are to be redeemed or are liable to be redeemed at the option of the Company or the Shareholder on such terms and in such manner as the Directors may determine;

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

(b)    purchase its own Shares (including any redeemable Shares) on such terms and in such manner as the Directors may determine and agree with the Shareholder;

(c)    make a payment in respect of the redemption or purchase of its own Shares in any manner authorised by the Act; and

(d)    accept the surrender for no consideration of any paid up Share (including any redeemable Share) on such terms and in such manner as the Directors may determine.

29.    Any Share in respect of which notice of redemption has been given shall not be entitled to participate in the profits of the Company in respect of the period after the date specified as the date of redemption in the notice of redemption.

30.    The redemption, purchase or surrender of any Share shall not be deemed to give rise to the redemption, purchase or surrender of any other Share.

31.    The Directors may when making payments in respect of redemption or purchase of Shares, if authorised by the terms of issue of the Shares being redeemed or purchased or with the agreement of the holder of such Shares, make such payment either in cash or in specie.

**TREASURY SHARES**

32.    Shares that the Company purchases, redeems or acquires (by way of surrender or otherwise) may, at the option of the Company, be cancelled immediately or held as Treasury Shares in accordance with the Act.  In the event that the Directors do not specify that the relevant Shares are to be held as Treasury Shares, such Shares shall be cancelled.

33.    No dividend may be declared or paid, and no other distribution (whether in cash or otherwise) of the Company's assets (including any distribution of assets to members on a winding up) may be declared or paid in respect of a Treasury Share.

34.    The Company shall be entered in the Register as the holder of the Treasury Shares provided that:

(a)    the Company shall not be treated as a member for any purpose and shall not exercise any right in respect of the Treasury Shares, and any purported exercise of such a right shall be void;

(b)    a Treasury Share shall not be voted, directly or indirectly, at any meeting of the Company and shall not be counted in determining the total number of issued shares at any given time, whether for the purposes of these Articles or the Act, save that an allotment of Shares as fully paid bonus shares in respect of a Treasury Share is permitted and Shares allotted as fully paid bonus shares in respect of a treasury share shall be treated as Treasury Shares.

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

www.verify.gov.ky File#: 263805

35.     Treasury Shares may be disposed of by the Company on such terms and conditions as determined by the Directors.

## GENERAL MEETINGS

36.     The Directors may, whenever they think fit, convene a general meeting of the Company.

37.     The Directors may cancel or postpone any duly convened general meeting at any time prior to such meeting, for any reason or for no reason at any time prior to the time for holding such meeting or, if the meeting is adjourned, the time for holding such adjourned meeting.  The Directors shall give Shareholders notice in writing of any postponement, which postponement may be for a stated period of any length or indefinitely as the Directors may determine.

38.     If at any time there are no Directors, any two Shareholders (or if there is only one Shareholder then that Shareholder) entitled to vote at general meetings of the Company may convene a general meeting in the same manner as nearly as possible as that in which general meetings may be convened by the Directors.

## NOTICE OF GENERAL MEETINGS

39.     At least seven clear days' notice in writing counting from the date service is deemed to take place as provided in these Articles specifying the place, the day and the hour of the meeting and, in case of special business, the general nature of that business, shall be given in the manner hereinafter provided or in such other manner (if any) as may be prescribed by the Company by Ordinary Resolution to such Persons as are, under these Articles, entitled to receive such notices from the Company, but with the consent of all the Shareholders entitled to receive notice of some particular meeting and attend and vote thereat, that meeting may be convened by such shorter notice or without notice and in such manner as those Shareholders may think fit.

40.     The accidental omission to give notice of a meeting to or the non-receipt of a notice of a meeting by any Shareholder shall not invalidate the proceedings at any meeting.

## PROCEEDINGS AT GENERAL MEETINGS

41.     All business carried out at a general meeting shall be deemed special with the exception of sanctioning a dividend, the consideration of the accounts, balance sheets, any report of the Directors or of the Company's auditors, and the fixing of the remuneration of the Company's auditors. No special business shall be transacted at any general meeting without the consent of all Shareholders entitled to receive notice of that meeting unless notice of such special business has been given in the notice convening that meeting.

42.     No business shall be transacted at any general meeting unless a quorum of Shareholders Is present at the time when the meeting proceeds to business.  Save as otherwise provided by these Articles,



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495
www.verify.gov.ky File#: 263805

one or more Shareholders holding at least a majority of the paid up voting share capital of the Company present in person or by proxy and entitled to vote at that meeting shall form a quorum.

43.   If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of Shareholders, shall be dissolved.  In any other case it shall stand adjourned to the same day in the next week, at the same time and place, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting the Shareholder or Shareholders present and entitled to vote shall form a quorum.

44.   If the Directors wish to make this facility available for a specific general meeting or all general meetings of the Company, participation in any general meeting of the Company may be by means of a telephone or similar communication equipment by way of which all Persons participating in such meeting can communicate with each other and such participation shall be deemed to constitute presence in person at the meeting.

45.   The chairman, if any, of the Directors shall preside as chairman at every general meeting of the Company.

46.   If there is no such chairman, or if at any general meeting he is not present within fifteen minutes after the time appointed for holding the meeting or is unwilling to act as chairman, any Director or Person nominated by the Directors shall preside as chairman, failing which the Shareholders present in person or by proxy shall choose any Person present to be chairman of that meeting.

47.   The chairman may adjourn a meeting from time to time and from place to place either:

(a)   with the consent of any general meeting at which a quorum is present (and shall if so directed by the meeting): or

(b)   without the consent of such meeting if, in his sole opinion, he considers it necessary to do so to:

   (i)   secure the orderly conduct or proceedings of the meeting; or

   (ii)   give all persons present in person or by proxy and having the right to speak and / or vote at such meeting, the ability to do so,

but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.  When a meeting, or adjourned meeting, is adjourned for fourteen days or more, notice of the adjourned meeting shall be given in the manner provided for the original meeting.  Save as aforesaid, it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting.

48.   At any general meeting a resolution put to the vote of the meeting shall be decided on a show of hands, unless a poll is (before or on the declaration of the result of the show of hands) demanded

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495
www.verify.gov.ky File#: 263805

by the chairman or one or more Shareholders present in person or by proxy entitled to vote, and unless a poll is so demanded, a declaration by the chairman that a resolution has, on a show of hands, been carried, or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book of the proceedings of the Company, shall be conclusive evidence of the fact, without proof of the number or proportion of the votes recorded in favour of, or against, that resolution.

49.    If a poll is duly demanded it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

50.    In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded, shall be entitled to a second or casting vote.

51.    A poll demanded on the election of a chairman of the meeting or on a question of adjournment shall be taken forthwith.  A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs.

**VOTES OF SHAREHOLDERS**

52.    On a show of hands every holder of Management Shares present in person and every Person representing such a Shareholder by proxy shall have one vote, and on a poll every holder of Management Shares present in person and every Person representing such Shareholder by proxy shall be entitled to one vote in respect of each of the Management Shares held by them.

53.    In the case of joint holders the vote of the senior who tenders a vote whether in person or by proxy shall be accepted to the exclusion of the votes of the other joint holders and for this purpose seniority shall be determined by the order in which the names stand in the Register.

54.    A Shareholder of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote in respect of Shares carrying the right to vote held by him, whether on a show of hands or on a poll, by his committee, or other Person in the nature of a committee appointed by that court, and any such committee or other Person, may vote in respect of such Shares by proxy.

55.    No Shareholder shall be entitled to vote at any general meeting of the Company unless all calls, if any, or other sums presently payable by him in respect of Shares carrying the right to vote held by him have been paid.

56.    On a poll votes may be given either personally or by proxy.

57.    The instrument appointing a proxy shall be in writing under the hand of the appointor or of his attorney duly authorised in writing or, if the appointor is a corporation, either under Seal or under the hand of an officer or attorney duly authorised.  A proxy need not be a Shareholder.

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

58.   An instrument appointing a proxy may be in any usual or common form or such other form as the Directors may approve.

59.   The instrument appointing a proxy shall be deposited at the Office or at such other place as is specified for that purpose in the notice convening the meeting no later than the time for holding the meeting or, if the meeting is adjourned, the time for holding such adjourned meeting.

60.   The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

61.   A resolution in writing signed by all the Shareholders for the time being entitled to receive notice of and to attend and vote at genera! meetings of the Company (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the Company duly convened and held.

### CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS

62.   Any corporation which is a Shareholder or a Director may by resolution of its directors or other governing body authorise such Person as it thinks fit to act as its representative at any meeting of the Company or of any meeting of holders of a Class or of the Directors or of a committee of Directors, and the Person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual Shareholder or Director.

### DIRECTORS

63.   The name(s) of the first Director(s) shall either be determined in writing by a majority (or in the case of a sole subscriber that subscriber) of, or elected at a meeting of, the subscribers of the Memorandum of Association.

64.   The Company may by Ordinary Resolution appoint any natural person or corporation to be a Director.

65.   Subject to these Articles, a Director shall hold office until such time as he is removed from office by Ordinary Resolution.

66.   The Company may by Ordinary Resolution from time to time fix the maximum and minimum number of Directors to be appointed but unless such numbers are fixed as aforesaid the minimum number of Directors shall be one and the maximum number of Directors shall be unlimited.

67.   The remuneration of the Directors may be determined by the Directors or by Ordinary Resolution.

68.   There shall be no shareholding qualification for Directors unless determined otherwise by Ordinary Resolution.

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

69.     The Directors shall have power at any time and from time to time to appoint a natural person or corporation as a Director, either as a result of a casual vacancy or as an additional Director, subject to the maximum number (if any) imposed by Ordinary Resolution.

70.     The Management Director shall be entitled to cast ten (10) votes on all matters and each other Director shall be entitled to cast one (1) vote. Such voting powers shall apply to voting in any committee or subcommittee of the Board. Every reference in these Articles to a majority or other proportion of the Directors, including for purposes of determining a quorum, shall refer to a majority or other proportion of the votes of the Directors then in office.

### POWERS AND DUTIES OF DIRECTORS

71.     Subject to the Act, these Articles and to any resolutions passed in a general meeting, the business of the Company shall be managed by the Directors, who may pay all expenses incurred in setting up and registering the Company and may exercise all powers of the Company.  No resolution passed by the Company in general meeting shall invalidate any prior act of the Directors that would have been valid if that resolution had not been passed.

72.     The Directors may from time to time appoint any natural person or corporation , whether or not a Director to hold such office in the Company as the Directors may think necessary for the administration of the Company, including but not limited to, the office of president, one or more vice-presidents, treasurer, assistant treasurer, manager or controller, and for such term and at such remuneration (whether by way of salary or commission or participation in profits or partly in one way and partly in another), and with such powers and duties as the Directors may think fit.  Any natural person or corporation so appointed by the Directors may be removed by the Directors or

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

by the Company by Ordinary Resolution.  The Directors may also appoint one or more of their number to the office of managing director upon like terms, but any such appointment shall ipso facto determine if any managing director ceases from any cause to be a Director, or if the Company by Ordinary Resolution resolves that his tenure of office be terminated.

73.     The Directors may appoint any natural person or corporation to be a Secretary (and if need be an assistant Secretary or assistant Secretaries) who shall hold office for such term, at such remuneration and upon such conditions and with such powers as they think fit.  Any Secretary or assistant Secretary so appointed by the Directors may be removed by the Directors or by the Company by Ordinary Resolution.

74.     The Directors may delegate any of their powers to committees consisting of such member or members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the Directors.

75.     The Directors may from time to time and at any time by power of attorney (whether under Seal or under hand) or otherwise appoint any company, firm or Person or body of Persons, whether nominated directly or indirectly by the Directors, to be the attorney or attorneys or authorised signatory (any such person being an "**Attorney**" or "**Authorised Signatory**", respectively) of the Company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such power of attorney or other appointment may contain such provisions for the protection and convenience of Persons dealing with any such Attorney or Authorised Signatory as the Directors may think fit, and may also authorise any such Attorney or Authorised Signatory to delegate all or any of the powers, authorities and discretion vested in him.

76.     The Directors may from time to time provide for the management of the affairs of the Company in such manner as they shall think fit and the provisions contained in the three next following Articles shall not limit the general powers conferred by this Article.

77.     The Directors from time to time and at any time may establish any committees, local boards or agencies for managing any of the affairs of the Company and may appoint any natural person or corporation to be a member of such committees or local boards and may appoint any managers or agents of the Company and may fix the remuneration of any such natural person or corporation.

78.     The Directors from time to time and at any time may delegate to any such committee, local board, manager or agent any of the powers, authorities and discretions for the time being vested in the Directors and may authorise the members for the time being of any such local board, or any of them to fill any vacancies therein and to act notwithstanding vacancies and any such appointment or delegation may be made on such terms and subject to such conditions as the Directors may think fit and the Directors may at any time remove any natural person or corporation so appointed and

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

may annul or vary any such delegation, but no Person dealing in good faith and without notice of any such annulment or variation shall be affected thereby.

79.    Any such delegates as aforesaid may be authorised by the Directors to sub-delegate all or any of the powers, authorities, and discretion for the time being vested in them.

## BORROWING POWERS OF DIRECTORS

80.    The Directors may exercise all the powers of the Company to borrow money and to mortgage or charge its undertaking, property and uncalled capital or any part thereof, to issue debentures, debenture stock and other securities whenever money is borrowed or as security for any debt, liability or obligation of the Company or of any third party.

## THE SEAL

81.    The Seal shall not be affixed to any instrument except by the authority of a resolution of the Directors provided always that such authority may be given prior to or after the affixing of the Seal and if given after may be in general form confirming a number of affixings of the Seal.  The Seal shall be affixed in the presence of a Director or a Secretary (or an assistant Secretary) or in the presence of any one or more Persons as the Directors may appoint for the purpose and every Person as aforesaid shall sign every instrument to which the Seal is so affixed in their presence.

82.    The Company may maintain a facsimile of the Seal in such countries or places as the Directors may appoint and such facsimile Seal shall not be affixed to any instrument except by the authority of a resolution of the Directors provided always that such authority may be given prior to or after the affixing of such facsimile Seal and if given after may be in general form confirming a number of affixings of such facsimile Seal.  The facsimile Seal shall be affixed in the presence of such Person or Persons as the Directors shall for this purpose appoint and such Person or Persons as aforesaid shall sign every instrument to which the facsimile Seal is so affixed in their presence and such affixing of the facsimile Seal and signing as aforesaid shall have the same meaning and effect as if the Seal had been affixed in the presence of and the instrument signed by a Director or a Secretary (or an assistant Secretary) or in the presence of any one or more Persons as the Directors may appoint for the purpose.

83.    Notwithstanding the foregoing, a Secretary or any assistant Secretary shall have the authority to affix the Seal, or the facsimile Seal, to any instrument for the purposes of attesting authenticity of the matter contained therein but which does not create any obligation binding on the Company.

## DISQUALIFICATION OF DIRECTORS

84.    The office of Director shall be vacated, if the Director:

(a)    becomes bankrupt or makes any arrangement or composition with his creditors;

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495
www.verify.gov.ky File#: 263805

(b)     dies or is found to be or becomes of unsound mind;

(c)     resigns his office by notice in writing to the Company;

(d)     is removed from office by Ordinary Resolution;

(e)     is removed from office by notice addressed to him at his last known address and signed by ail of his co-Directors (not being less than two in number); or

(f)     is removed from office pursuant to any other provision of these Articles, including without limitation, in the circumstance set out in Article 13.

## PROCEEDINGS OF DIRECTORS

85.     The Directors may meet together (either within or without the Cayman Islands) for the despatch of business, adjourn, and otherwise regulate their meetings and proceedings as they think fit. Questions arising at any meeting shall be decided by a majority of votes. In case of an equality of votes the chairman shall have a second or casting vote. A Director may, and a Secretary or assistant Secretary on the requisition of a Director shall, at any time summon a meeting of the Directors.

86.     A Director may participate in any meeting of the Directors, or of any committee appointed by the Directors of which such Director is a member, by means of telephone or similar communication equipment by way of which all Persons participating in such meeting can communicate with each other and such participation shall be deemed to constitute presence in person at the meeting.

87.     The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed, if there be two or more Directors the quorum shall be two which must include the Management Director, and if there be one Director the quorum shall be one.

88.     A Director who is in any way, whether directly or indirectly, interested in a contract or proposed contract with the Company shall declare the nature of his interest at a meeting of the Directors. A general notice given to the Directors by any Director to the effect that he is a member of any specified company or firm and is to be regarded as interested in any contract which may thereafter be made with that company or firm shall be deemed a sufficient declaration of interest in regard to any contract so made. A Director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the Directors at which any such contract or proposed contract or arrangement shall come before the meeting for consideration.

89.     A Director may hold any other office or place of profit under the Company (other than the office of auditor) in conjunction with his office of Director for such period and on such terms (as to remuneration and otherwise) as the Directors may determine and no Director or intending Director

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

shall be disqualified by his office from contracting with the Company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise, nor shall any such contract or arrangement entered into by or on behalf of the Company in which any Director is in any way interested, be liable to be avoided, nor shall any Director so contracting or being so interested be liable to account to the Company for any profit realised by any such contract or arrangement by reason of such Director holding that office or of the fiduciary relation thereby established.  A Director, notwithstanding his interest, may be counted in the quorum present at any meeting of the Directors whereat he or any other Director is appointed to hold any such office or place of profit under the Company or whereat the terms of any such appointment are arranged and he may vote on any such appointment or arrangement.

90.     Any Director may act by himself or his firm in a professional capacity for the Company, and he or his firm shall be entitled to remuneration for professional services as if he were not a Director; provided that nothing herein contained shall authorise a Director or his firm to act as auditor to the Company.

91.     The Directors shall cause minutes to be made in books or loose-leaf folders provided for the purpose of recording:

> (a)     all appointments of officers made by the Directors;

> (b)     the names of the Directors present at each meeting of the Directors and of any committee of the Directors; and

> (c)     all resolutions and proceedings at all meetings of the Company, and of the Directors and of committees of Directors.

92.     When the chairman of a meeting of the Directors signs the minutes of such meeting the same shall be deemed to have been duly held notwithstanding that all the Directors have not actually come together or that there may have been a technical defect in the proceedings.

93.     A resolution in writing signed by all the Directors or all the members of a committee of Directors entitled to receive notice of a meeting of Directors or committee of Directors, as the case may be, shall be as valid and effectual as if it had been passed at a duly called and constituted meeting of Directors or committee of Directors, as the case may be.  When signed a resolution may consist of several documents each signed by one or more of the Directors. Notwithstanding anything to the contrary herein, a resolution in writing signed by all the Directors in respect of a Material Transaction must be duly notarized by a notary public.

94.     The continuing Directors may act notwithstanding any vacancy in their body but if and for so long as their number is reduced below the number fixed by or pursuant to these Articles as the necessary quorum of Directors, the continuing Directors may act for the purpose of increasing the number, or of summoning a general meeting of the Company, but for no other purpose.

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

95.    The Directors may elect a chairman of their meetings and determine the period for which he is to hold office but if no such chairman is elected, or if at any meeting the chairman is not present within fifteen minutes after the time appointed for holding the meeting, the Directors present may choose one of their number to be chairman of the meeting.

96.    Subject to any regulations imposed on it by the Directors, a committee appointed by the Directors may elect a chairman of its meetings.  If no such chairman is elected, or if at any meeting the chairman is not present within fifteen minutes after the time appointed for holding the meeting, the committee members present may choose one of their number to be chairman of the meeting.

97.    A committee appointed by the Directors may meet and adjourn as it thinks proper. Subject to any regulations imposed on it by the Directors, questions arising at any meeting shall be determined by a majority of votes of the committee members present and in case of an equality of votes the chairman shall have a second or casting vote.

98.    All acts done by any meeting of the Directors or of a committee of Directors, or by any Person acting as a Director, shall notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such Director or Person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such Person had been duly appointed and was qualified to be a Director.

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495
www.verify.gov.ky File#: 263805

## DIVIDENDS

99.     Subject to any rights and restrictions for the time being attached to any Shares, or as otherwise provided for in the Act and these Articles, the Directors may from time to time declare dividends (including interim dividends) and other distributions on Shares in issue and authorise payment of the same out of the funds of the Company lawfully available therefor.

100.    Subject to any rights and restrictions for the time being attached to any Shares, the Company by Ordinary Resolution may declare dividends, but no dividend shall exceed the amount recommended by the Directors.

101.    The Directors may, before recommending or declaring any dividend, set aside out of the funds legally available for distribution such sums as they think proper as a reserve or reserves which shall, in the absolute discretion of the Directors be applicable for meeting contingencies, or for equalising dividends or for any other purpose to which those funds may be properly applied and pending such application may in the absolute discretion of the Directors, either be employed in the business of the Company or be invested in such investments as the Directors may from time to time think fit.

102.    Any dividend may be paid in any manner as the Directors may determine. If paid by cheque it will be sent through the post to the registered address of the Shareholder or Person entitled thereto, or in the case of joint holders, to any one of such joint holders at his registered address or to such Person and such address as the Shareholder or Person entitled, or such joint holders as the case may be, may direct. Every such cheque shall be made payable to the order of the Person to whom it is sent or to the order of such other Person as the Shareholder or Person entitled, or such joint holders as the case may be, may direct.

103.    The Directors when paying dividends to the Shareholders in accordance with the foregoing provisions of these Articles may make such payment either in cash or in specie.

104.    Subject to any rights and restrictions for the time being attached to any Participating Shares, all dividends shall be declared and paid in such amounts as may be declared by the Director's in their sole and absolute discretion without a requirement to pay such dividends on a pro-rata basis as to the paid-up or par value of the Shares.

105.    If several Persons are registered as joint holders of any Share, any of them may give effectual receipts for any dividend or other moneys payable on or in respect of the Share.

106.    No dividend shall bear interest against the Company.

## ACCOUNTS, AUDIT AND ANNUAL RETURN AND DECLARATION

107.    The books of account relating to the Company's affairs shall be kept in such manner as may be determined from time to time by the Directors.

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

108.   The books of account shall be kept at the Office, or at such other place or places as the Directors think fit, and shall always be open to the inspection of the Directors.

109.   The Directors may from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the Company or any of them shall be open to the inspection of Shareholders not being Directors, and no Shareholder (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by law or authorised by the Directors or by Ordinary Resolution.

110.   The accounts relating to the Company's affairs shall only be audited if the Directors so determine, in which case the financial year end and the accounting principles will be determined by the Directors.

111.   The Directors in each year shall prepare, or cause to be prepared, an annual return and declaration setting forth the particulars required by the Act and deliver a copy thereof to the Registrar of Companies in the Cayman Islands.

## CAPITALISATION OF RESERVES

112.   Subject to the Act and these Articles, the Directors may:

(a)   resolve to capitalise an amount standing to the credit of reserves (including a Share Premium Account, capital redemption reserve and profit and loss account), whether or not available for distribution;

(b)   appropriate the sum resolved to be capitalised to the Shareholders in proportion to the nominal amount of Participating Shares (whether or not fully paid) held by them respectively and apply that sum on their behalf in or towards:

(i)   paying up the amounts (if any) for the time being unpaid on Participating Shares held by them respectively; or

(ii)   paying up in full unissued Participating Shares or debentures of a nominal amount equal to that sum,

and allot the Participating Shares or debentures, credited as fully paid, to the Shareholders (or as they may direct) in those proportions, or partly in one way and partly in the other, but the Share Premium Account, the capital redemption reserve and profits which are not available for distribution may, for the purposes of this Article, only be applied in paying up unissued Participating Shares to be allotted to Shareholders credited as fully paid;

(c)   make any arrangements they think fit to resolve a difficulty arising in the distribution of a capitalised reserve and in particular, without limitation, where Participating Shares or

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

debentures become distributable in fractions the Directors may deal with the fractions as they think fit;

(d)    authorise a Person to enter (on behalf of all the Shareholders concerned) into an agreement with the Company providing for either:

    (i)    the allotment to the Shareholders respectively, credited as fully paid, of Participating Shares or debentures to which they may be entitled on the capitalisation, or

    (ii)    the payment by the Company on behalf of the Shareholders (by the application of their respective proportions of the reserves resolved to be capitalised) of the amounts or part of the amounts remaining unpaid on their existing Participating Shares, and any such agreement made under this authority being effective and binding on all those Shareholders; and

    (iii)    generally do all acts and things required to give effect to any of the actions contemplated by this Article.

## SHARE PREMIUM ACCOUNT

113.    The Directors shall in accordance with the Act establish a Share Premium Account and shall carry to the credit of such account from time to time a sum equal to the amount or value of the premium paid on the issue of any Share.

114.    There shall be debited to any Share Premium Account on the redemption or purchase of a Share the difference between the nominal value of such Share and the redemption or purchase price provided always that at the discretion of the Directors such sum may be paid out of the profits of the Company or, if permitted by the Act, out of capital.

## NOTICES

115.    Any notice or document may be served by the Company or by the Person entitled to give notice to any Shareholder either personally, or by posting it airmail or air courier service in a prepaid letter addressed to such Shareholder at his address as appearing in the Register, or by electronic mail to any electronic mail address such Shareholder may have specified in writing for the purpose of such service of notices, or by facsimile should the Directors deem it appropriate. In the case of joint holders of a Share, all notices shall be given to that one of the joint holders whose name stands first in the Register in respect of the joint holding, and notice so given shall be sufficient notice to all the joint holders.

116.    Any Shareholder present, either personally or by proxy, at any meeting of the Company shall for all purposes be deemed to have received due notice of such meeting and, where requisite, of the purposes for which such meeting was convened.

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495
www.verify.gov.ky File#: 263805

117.    Any notice or other document, if served by:

(a)    post, shall be deemed to have been served five clear days after the time when the letter containing the same is posted;

(b)    facsimile, shall be deemed to have been served upon production by the transmitting facsimile machine of a report confirming transmission of the facsimile in full to the facsimile number of the recipient;

(c)    recognised courier service, shall be deemed to have been served 48 hours after the time when the letter containing the same is delivered to the courier service; or

(d)    electronic mail, shall be deemed to have been served immediately upon the time of the transmission by electronic mail.

In proving service by post or courier service it shall be sufficient to prove that the letter containing the notice or documents was properly addressed and duly posted or delivered to the courier service.

118.    Any notice or document delivered or sent by post to or left at the registered address of any Shareholder in accordance with the terms of these Articles shall notwithstanding that such Shareholder be then dead or bankrupt, and whether or not the Company has notice of his death or bankruptcy, be deemed to have been duly served in respect of any Share registered in the name of such Shareholder as sole or joint holder, unless his name shall at the time of the service of the notice or document, have been removed from the Register as the holder of the Share, and such service shall for all purposes be deemed a sufficient service of such notice or document on all Persons interested (whether jointly with or as claiming through or under him) in the Share.

119.    Notice of every general meeting of the Company shall be given to:

(a)    all Shareholders holding Shares with the right to receive notice and who have supplied to the Company an address for the giving of notices to them; and

(b)    every Person entitled to a Share in consequence of the death or bankruptcy of a Shareholder, who but for his death or bankruptcy would be entitled to receive notice of the meeting.

No other Person shall be entitled to receive notices of general meetings.

**NON-RECOGNITION OF TRUSTS**

120.    Subject to the proviso hereto, no Person shall be recognised by the Company as holding any Share upon any trust and the Company shall not, unless required by law, be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

interest in any Share or (except only as otherwise provided by these Articles or as the Act requires) any other right in respect of any Share except an absolute right to the entirety thereof in each Shareholder registered in the Register, provided that, notwithstanding the foregoing, the Company shall be entitled to recognise any such interests as shall be determined by the Directors.

## WINDING UP

121.    If the Company shall be wound up the liquidator shall apply the assets of the Company in such manner and order as he thinks fit in satisfaction of creditors' claims.

122.    Subject to any rights and restrictions for the time being attributed to any Class or Series, the assets available for distribution among the Shareholders shall then be applied in the following priority:

(a)    first, in the payment to the holders of Participating Shares and Management Shares, *pari passu*, of a sum equal to the par value of the Participating Shares or Management Shares held by them; and

(b)    second, in the payment of any balance to holders of Participating Shares, such payment being made in proportion to the number Participating Shares of the relevant Class and Series held.

123.    If the Company shall be wound up, the liquidator may, with the sanction of an Ordinary Resolution divide amongst the Participating Shareholders in specie or kind the whole or any part of the assets of the Company (whether they shall consist of property of the same kind or not) and may, for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the Participating Shareholders or different Classes.  The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the Participating Shareholders as the liquidator, with the like sanction shall think fit, but so that no Shareholder shall be compelled to accept any assets whereon there is any liability.

## AMENDMENT OF ARTICLES OF ASSOCIATION

124.    Subject to the Act and the rights attaching to the various Classes, the Company may at any time and from time to time by Special Resolution alter or amend these Articles in whole or in part.

## CLOSING OF REGISTER OR FIXING RECORD DATE

125.    For the purpose of determining those Shareholders that are entitled to receive notice of, attend or vote at any meeting of Shareholders or any adjournment thereof, or those Shareholders that are entitled to receive payment of any dividend, or in order to make a determination as to who is a Shareholder for any other purpose, the Directors may provide that the Register shall be closed for transfers for a stated period which shall not exceed in any case 40 days.  If the Register shall be so closed for the purpose of determining those Shareholders that are entitled to receive notice of,

*Filed: 21-Feb-2025 09:26 EST*
*Auth Code: E90228166495*
www.verify.gov.ky File#: 263805

attend or vote at a meeting of Shareholders the Register shall be so closed for at least ten days immediately preceding such meeting and the record date for such determination shall be the date of the closure of the Register.

126.   In lieu of or apart from closing the Register, the Directors may fix in advance a date as the record date for any such determination of those Shareholders that are entitled to receive notice of, attend or vote at a meeting of the Shareholders and for the purpose of determining those Shareholders that are entitled to receive payment of any dividend the Directors may, at or within 90 days prior to the date of declaration of such dividend, fix a subsequent date as the record date for such determination.

127.   If the Register is not so closed and no record date is fixed for the determination of those Shareholders entitled to receive notice of, attend or vote at a meeting of Shareholders or those Shareholders that are entitled to receive payment of a dividend, the date on which notice of the meeting is posted or the date on which the resolution of the Directors declaring such dividend is adopted, as the case may be, shall be the record date for such determination of Shareholders. When a determination of those Shareholders that are entitled to receive notice of, attend or vote at a meeting of Shareholders has been made as provided in this Article, such determination shall apply to any adjournment thereof.

## REGISTRATION BYWAY OF CONTINUATION

128.   The Company may by Special Resolution resolve to be registered by way of continuation in a jurisdiction outside the Cayman Islands or such other jurisdiction in which it is for the time being incorporated, registered or existing.  In furtherance of a resolution adopted pursuant to this Article, the Directors may cause an application to be made to the Registrar of Companies to deregister the Company in the Cayman Islands or such other jurisdiction in which it is for the time being incorporated, registered or existing and may cause all such further steps as they consider appropriate to be taken to effect the transfer by way of continuation of the Company.

## MERGERS AND CONSOLIDATION

129.   The Company may by Special Resolution resolve to merge or consolidate the Company in accordance with the Act.

## DISCLOSURE

130.   The Directors, or any authorised service providers (including the officers, the Secretary and the registered office agent of the Company), shall be entitled to disclose to any regulatory or judicial authority, or to any stock exchange on which the Shares or any Class or Series may from time to time be listed, any information regarding the affairs of the Company including, without limitation, information contained in the Register and books of the Company.

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495
www.verify.gov.ky File#: 263805

**INDEMNITY**

131.   To the fullest extent permitted by law, no Director, Secretary, Assistant Secretary, committee member or other officer for the time being and from time to time of the Company (each, a "Covered Person" and collectively, "**Covered Persons**") shall be liable to the Company or anyone for any reason whatsoever (including but not limited to (i) any act or omission by any Covered Person in connection with the conduct of the business of the Company, that is determined by such Covered Person in good faith to be in or not opposed to the best interests of the Company, (ii) any act or omission by any Covered Person based on the suggestions of any professional advisor of the Company whom such Covered Person believes is authorized to make such suggestions on behalf of the Company, (iii) any act or omission by the Company, or (iv) any mistake, negligence, misconduct or bad faith of any broker or other agent of the Company selected by Covered Person with reasonable care), unless any act or omission by such Covered Person constitutes wilful misconduct or Gross Negligence by such Covered Person (as determined by a non-appeaiaible judgment of a court of competent jurisdiction).

132.   Covered Person may consult with legal counsel or accountants selected by such Covered Person and any act or omission by such Covered Person on behalf of the Company or in furtherance of the business of the Company in good faith in reliance on and in accordance with the advice of such counsel or accountants shall be full justification for the act or omission, and such Covered Person shall be fully protected in so acting or omitting to act if the counsel or accountants were selected with reasonable care.

133.   To the fullest extent permitted by law, the Company shall indemnify and save harmless Covered Persons (the "**Indemnitees**"), from and against any and all claims, liabilities, damages, losses, costs and expenses, including amounts paid in satisfaction of judgments, in compromises and settlements, as fines and penalties and legal or other costs and expenses of investigating or defending against any claim or alleged claim, of any nature whatsoever, known or unknown, liquidated or unliquidated, that are incurred by any Indemnitee and arise out of or in connection with the business of the Company, any investment made, or the performance by the Indemnitee of Covered Person's responsibilities hereunder and against all taxes, charges, duties or levies incurred by such Covered Person or any Indemnitee in connection with the Company, provided that an Indemnitee shall not be entitled to indemnification hereunder to the extent the Indemnitee's conduct constitutes willful misconduct or Gross Negligence (as determined by a non-appealable judgment of a court of competent jurisdiction). The termination of any proceeding by settlement, judgment, order or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the Indemnitee's conduct constituted willful misconduct or Gross Negligence.

134.   Expenses incurred by an Indemnitee in defense or settlement of any claim that shall be subject to a right of indemnification hereunder, shall be advanced by the Company prior to the final disposition thereof upon receipt of an undertaking by or on behalf of the Indemnitee to repay the amount advanced to the extent that it shall be determined ultimately that the Indemnitee is not entitled to be indemnified hereunder.

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

135.    The right of any Indemnitee to the indemnification provided herein shall be cumulative of, and in addition to, any and all rights to which the Indemnitee may otherwise be entitled by contract or as a matter of law or equity and shall be extended to the Indemnitee's successors, assigns and legal representatives.

## DISPUTE RESOLUTION

136.    Subject to the prior written consent of all parties involved in the Dispute (as defined below) to such dispute resolution procedures, the following procedures shall be used to resolve any controversy or claim ("**Dispute**") arising out of, relating to or in connection with these Articles or otherwise involving the Company, a trustee appointed to represent the Company on claims derivative of the Company, its Shareholders and/or any Covered Person. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

(a)    Mediation:

(i)    subject to the prior written consent of all parties involved in the Dispute, any Dispute shall be submitted to mediation by written notice to the other party or parties. In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator shall be designated by JAMS/Endispute at the request of a party using, if necessary, strike and rank procedures then in effect;

(ii)    the mediation will be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute;

(iii)    the mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings; and

(iv)    each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties,

(b)    Arbitration:

Subject to the prior written consent of all parties involved in the Dispute to such dispute resolution procedure, if a Dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration. The arbitration will be administered by JAMS/Endispute pursuant to JAMS' Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. ("**Arbitration Rules**"). In the event of a conflict, the provisions of these Articles will control:

(i)    the arbitration will be conducted before a panel of three arbitrators, regardless of the size of the dispute, to be selected as provided in the Arbitration Rules. Any issue

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the United States Federal Arbitration Act ("**FAA**"), and resolved by the arbitrators, provided, however, that the Company or such applicable affiliate thereof may pursue a temporary restraining order and/or preliminary injunctive relief in connection with confidentiality covenants or agreements binding on any party, with related expedited discovery for the parties, in a court of law, and, thereafter, require arbitration of all issues of final relief. Under no circumstances will a State arbitration act of the United States preclude application of the FAA, including any choice of law provisions in this agreement, or any other agreement. No potential arbitrator may serve on the panel unless he or she has agreed in writing to abide and be bound by these procedures;

(ii)     the arbitrators may not award non-monetary or equitable relief of any sort. They shall have no power to award punitive damages or any other damages not measured by the prevailing party's actual damages, and the parties expressly waive their right to obtain such damages in arbitration or any in other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitrators have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction. The arbitrators) shall be required to state in a written opinion all facts and conclusions of law relied upon to support any decision rendered. Any dispute over whether the arbitrator(s) has failed to comply with the foregoing will be resolved by summary judgment in a court of law;

(iii)    the party initiating arbitration shall pay all arbitration costs and arbitrator's fees, subject to a final arbitration award on who should bear costs and fees. All proceedings shall be conducted in Dallas, Texas, or another mutually agreeable site. Each party shall bear its own attorneys fees, costs and expenses, including any costs of experts, witnesses and/or travel, subject to a final arbitration award on who should bear costs and fees. This provision is intended to supersede any rights under Texas Civil Practices and Remedies Code § 38.001(8), which rights the parties expressly waive;

(iv)    no discovery will be allowed in connection with the arbitration unless the arbitration panel, upon a showing of substantial need, expressly authorizes it. In any event, there shall be no more than (i) two party depositions of six hours each. Each deposition is to be taken pursuant to the Texas Rules of Civil Procedure; (ii) one non-party deposition of six hours; (iii) twenty-five interrogatories; (iv) twenty- five requests for admission; (v) ten requests for production. In response, the producing party shall not be obligated to produce in excess of 5,000 total pages of documents. The total pages of documents shall include electronic documents; (vi) one request for disclosure pursuant to the Texas Rules of Civil Procedure. Any discovery not specifically provided for in this paragraph, whether to parties or non- parties, shall not be permitted;

(v)     all aspects of the arbitration shall be treated as confidential, including its institution and/or settlement. Neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

opportunity to protect their interests.  In the event a party who recovered monies by settlement, award by the arbitration panel, or otherwise in connection with the Dispute violates this confidentiality term, he, she, or it shall refund all such sums recovered.  The parties expressly intend to waive the right to retain any monies received through settlement, award by the arbitration panel, or otherwise in connection with the Dispute in the event that that party violates the aforementioned confidentiality term; and

(vi)    the result of the arbitration will be binding on the parties, and judgment on the arbitrators' award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

(c)    Notwithstanding anything to the contrary herein, for greater certainty, in accordance with the terms herein, if all parties involved in the Dispute do not provide written consent to following the mediation and/or arbitration provisions herein, a party shall maintain its right to pursue his/her/its Dispute in court.

**AEOI**

137.    Notwithstanding any other Article, in order to comply with AEOI, any Director shall be entitled to release and/or disclose on behalf of the Company to the Cayman Islands Tax Information Authority or equivalent authority (the "**TIA**") and any other foreign government body as required by AEOI, any information in its or its agents' or delegates' possession regarding a Member including, without limitation, financial information concerning the Member's investment in the Company, and any information relating to any shareholders, principals, partners, beneficial owners (direct or indirect) or controlling persons (direct or indirect) of such Member. Any such Director may also authorise any third party agent, including but not limited to, the Investment Manager or Administrator, to release and/or disclose such information on behalf of the Company.

138.    In order to comply with AEOI and, if necessary, to reduce or eliminate any risk that the Company or its Members are subject to withholding taxes pursuant to AEOI or incur any costs, debts, expenses, obligations or liabilities (whether external, or internal, to the Company) (together, "**costs**") associated with AEOI, the Directors may cause the Company to undertake any of the following actions:

(a)    compulsorily redeem any or all of the Shares held by a Member either (i) where the Member fails to provide (in a timely manner) to the Company, or any agent or delegate of the Company, including but not limited to, the Investment Manager or the Administrator, any information requested by the Company or such agent or delegate pursuant to AEOI; or (ii) where there has otherwise been non-compliance by the Company with AEOI whether caused, directly or indirectly, by the action or inaction of such Member, or any related person, or otherwise;

(b)    deduct from, or hold back, redemption or repurchase proceeds, dividend payments or any other distributions, in order to:

(i)    comply with any applicable requirement to apply and collect withholding tax pursuant to AEOI;

(ii)    allocate to a Member an amount equal to any withholding tax imposed on the Company as a result of the Member's, or any related person's, action or inaction (direct or indirect), or where there has otherwise been non-compliance by the Company with AEOI;

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

(iii)    ensure that any AEOI related costs are recovered from the Member(s) whose action or inaction (directly or indirectly, including the action or inaction of any person related to such Member) gave rise or contributed to such costs.

139.    In order to give effect to the requirements imposed upon the Company by AEOI, as well as any of the actions contemplated by Articles 138(a) and 139(b), the Directors may undertake any of the following actions:

(a)    create separate classes and/or series of Shares ("**AEOI Shares**"), with such rights and terms as the Directors may in their sole discretion determine, and following the compulsory redemption of some or all of a Member's Shares may immediately apply such redemption proceeds in subscribing for such number of AEOI Shares as the Directors determine;

(b)    may re-name any number of Shares (whether issued or unissued) as AEOI Shares, create a Separate Account with respect to such AEOI Shares and apply any AEOI related costs or withholding taxes to such Separate Account;

(c)    allocate any AEOI costs or withholding tax among Separate Accounts on a basis determined solely by the Directors; and

(d)    adjust the Net Asset Value per Share of any relevant Shares (including any AEOI Share).

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

**Annexure**

**Fiscal Year**

The fiscal year of the Company ends on the 31st day of December in each year, unless the Directors prescribe some other period therefor.

*Filed: 21-Feb-2025 09:26 EST*
*Auth Code: E90228166495*

*www.verify.gov.ky File#: 263805*

Register of Members of

## Charitable DAF HoldCo, Ltd

Registration No: 263805

**Share Class: Management**

**Authorised Capital of USD 1.00 divided into 100.00 Management shares of par value USD 0.01 each**

| Entry No. | Name and Address of Shareholder | Date of Entry | Cert. Nr | Shares Acquired | Issue Price | Amount Paid | Nature of Acquisition | Date Shares Disposed | Shares Disposed | Remarks | Balance Shares | Transaction Details |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **WNL Limited** 190 Elgin Avenue George Town Grand Cayman KY1-9001 Cayman Islands | 7-Nov-2011 | | 1.00 | 0.01 | In Full | 7-Nov-2011 : Allotment of 1.00 Management share(s) | 7-Nov-2011 | 1.00 | | 0.00 | 7-Nov-2011 : Repurchase of 1.00 Management share(s) |
| 2 | **Grant James Scott** Highland Capital Managment, L.P. 13455 Noel Road, Suite 800 Dallas, TX  75240 USA | 7-Nov-2011 | | 100.00 | 1.00 | In Full | 7-Nov-2011 : Allotment of 100.00 Management share(s) | 25-Mar-2021 | 100.00 | | 0.00 | 25-Mar-2021 : Transfer of 100.00 Management share(s) to Mark E. Patrick |
| 3 | **Mark E. Patrick** 6716 Glenhurst Dr Dallas, TX  75254 USA | 25-Mar-2021 | | 100.00 | 1.00 | In Full | 25-Mar-2021 : Transfer of 100.00 Management share(s) to Mark E. Patrick | | 0.00 | | 100.00 | |

Notes

1    Where there is only one class of shares in issue, all issued shares carry equal (and unconditional) voting rights. Unless shares are described as "Non-Voting" they carry voting rights to vote at general meetings on all or substantially all matters (including the right to appoint or remove directors). Where shares are described as "Non-Voting" this designates that they do not carry rights to vote at general meetings on all or substantially all matters (including the right to appoint or remove directors). All shares carry unconditional voting rights, save where shares are described as "conditional" which designates that they only carry rights to vote at general meetings in certain circumstances.

48

**CONFIDENTIAL**
Printed on 25 April 2025

Register of Members of

**Charitable DAF HoldCo, Ltd**

**Registration No: 263805**

<u>**Summary**</u>

| Name | Number and Class of Shares Held | |
|---|---|---|
| Mark E. Patrick | 100.00 | Management |
| | | |
| **Total Management Shares outstanding: 100.00** | | |
| **Total Management Shares remaining unissued: 0.00** | | |

49

Register of Members of

**Charitable DAF HoldCo, Ltd**

**Registration No: 263805**

**Share Class: Participating**

**Authorised Capital of USD 49,999.00 divided into 4,999,900.00 Participating shares of par value USD 0.01 each**

| Entry No. | Name and Address of Shareholder | Date of Entry | Cert. Nr | Shares Acquired | Issue Price | Amount Paid | Nature of Acquisition | Date Shares Disposed | Shares Disposed | Remarks | Balance Shares | Transaction Details |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **The Highland Capital Management Partners CharitableTrust #2** Highland Capital Management, L.P 13455 Noel Rd, Suite 800 TX 75240 Dallas Texas USA | 7-Nov-2011 | | 300.00 | 3.00 | In Full | 7-Nov-2011 : Allotment of 300.00 Participating share(s) | 30-Nov-2011 | 300.00 | | 0.00 | 30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Kansas City Foundation, Inc  30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Dallas Foundation, Inc  30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Santa Barbara Foundation, Inc |
| 2 | **Highland Kansas City Foundation, Inc** - | 30-Nov-2011 | | 100.00 | 1.00 | In Full | 30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Kansas City Foundation, Inc | | 0.00 | | 100.00 | |
| 3 | **Highland Dallas Foundation, Inc** - | 30-Nov-2011 | | 100.00 | 1.00 | In Full | 30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Dallas Foundation, Inc | | 0.00 | | 100.00 | |
| 4 | **Highland Santa Barbara Foundation, Inc** - | 30-Nov-2011 | | 100.00 | 1.00 | In Full | 30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Santa Barbara Foundation, Inc | | 0.00 | | 100.00 | |

50

**CONFIDENTIAL**
Printed on 25 April 2025

Register of Members of

## Charitable DAF HoldCo, Ltd

Registration No: 263805

| Entry No. | Name and Address of Shareholder | Date of Entry | Cert. Nr | Shares Acquired | Issue Price | Amount Paid | Nature of Acquisition | Date Shares Disposed | Shares Disposed | Remarks | Balance Shares | Transaction Details |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | **Community Foundation of North Texas ("CFNT"), for the Highland Capital Management, L.P. Charitable Fund at CFNT** 306 W. 7th St., Suite 1045 Forth Worth TX 76102 USA | 13-Aug-2015 | | 5.00 | 0.05 | In Full | 13-Aug-2015 : Allotment of 5.00 Participating share(s) | | 0.00 | | 5.00 | |
| 6 | **DFW Charitable Foundation** The Corporation Trust Company 1209 Orange Street Wilmington, DE 19801 United States | 7-Feb-2025 | | 318.00 | 3.18 | In Full | 7-Feb-2025 : Allotment of 318.00 Participating share(s) | | 0.00 | | 318.00 | |

Notes

1      Where there is only one class of shares in issue, all issued shares carry equal (and unconditional) voting rights. Unless shares are described as "Non-Voting" they carry voting rights to vote at general meetings on all or substantially all matters (including the right to appoint or remove directors). Where shares are described as "Non-Voting" this designates that they do not carry rights to vote at general meetings on all or substantially all matters (including the right to appoint or remove directors). All shares carry unconditional voting rights, save where shares are described as "conditional" which designates that they only carry rights to vote at general meetings in certain circumstances.

## Summary

| Name | Number and Class of Shares Held | |
|---|---|---|
| Highland Kansas City Foundation, Inc | 100.00 | Participating |
| Highland Dallas Foundation, Inc | 100.00 | Participating |
| Highland Santa Barbara Foundation, Inc | 100.00 | Participating |
| Community Foundation of North Texas ("CFNT"), for the Highland Capital Management, L.P. Charitable Fund at CFNT | 5.00 | Participating |
| DFW Charitable Foundation | 318.00 | Participating |
| **Total Participating Shares outstanding: 623.00** | | |
| **Total Participating Shares remaining unissued: 4,999,277.00** | | |

51

## Geoffrey Sykes

| | |
|---|---|
| **From:** | Andrew Johnstone <aj@j-law.ky> |
| **Sent:** | 24 April 2025 11:46 AM |
| **To:** | Geoffrey Sykes; Barnaby Gowrie |
| **Cc:** | Rhiannon Zanetic; Philip Aubry; Nicholas Geldard; Chris Beck |
| **Subject:** | Re: Charitable DAF HoldCo, Ltd [WALKERS-AMER_DOCS.FID2294181] |

[this message is from an external sender]

Hi Geoff

Given your failure to respond yesterday, we are in the course of serving on Charitable DAF HoldCo Ltd at its registered office.

Best

AJ

**Andrew Johnstone**
Founder | Partner



**+1 (345) 929-3000**
**www.j-law.ky**  |  **LinkedIn**
**Johnstone Law**, 10 Market Street, PO Box 926
Grand Cayman, KY1-9006, Cayman Islands

*This email and any attachments transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the sender immediately and delete the email from your system. Any unauthorised use, distribution, or copying of this email is strictly prohibited.*

---

**From:** Geoffrey Sykes <Geoffrey.Sykes@walkersglobal.com>
**Sent:** 24 April 2025 11:35
**To:** Andrew Johnstone <aj@j-law.ky>; Barnaby Gowrie <Barnaby.Gowrie@walkersglobal.com>
**Cc:** Rhiannon Zanetic <rz@j-law.ky>; Philip Aubry <Philip.Aubry@walkersglobal.com>; Nicholas Geldard <ng@j-law.ky>; Chris Beck <Chris.Beck@walkersglobal.com>
**Subject:** RE: Charitable DAF HoldCo, Ltd [WALKERS-AMER_DOCS.FID2294181]

Dear Mr Johnstone

Please could you confirm the nature of the proceeding to be served.

Best regards,

**Geoffrey Sykes**
Associate
**Walkers (Cayman) LLP**

**T** +1 345 814 6834  |  **M** +1 345 814 6834
www.walkersglobal.com

Bermuda | British Virgin Islands | Cayman Islands | Dubai | Guernsey | Hong Kong | Ireland | Jersey | London | Singapore

**From:** Andrew Johnstone <aj@j-law.ky>
**Sent:** 23 April 2025 13:42
**To:** Geoffrey Sykes <Geoffrey.Sykes@walkersglobal.com>; Barnaby Gowrie <Barnaby.Gowrie@walkersglobal.com>
**Cc:** Rhiannon Zanetic <rz@j-law.ky>; Philip Aubry <Philip.Aubry@walkersglobal.com>; Nicholas Geldard <ng@j-law.ky>
**Subject:** Charitable DAF HoldCo, Ltd

**[this message is from an external sender]**

Dear Colleagues

We act for the Participating Shareholders of Charitable DAF HoldCo, Ltd (the **Company**).

Please can you confirm whether you are instructed to act for and accept service on behalf of the Company.

Best

AJ

**Andrew Johnstone**
Founder | Partner



**+1 (345) 929-3000**
**www.j-law.ky  |  LinkedIn**
**Johnstone Law**, 10 Market Street, PO Box 926
Grand Cayman, KY1-9006, Cayman Islands

*This email and any attachments transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the sender immediately and delete the email from your system. Any unauthorised use, distribution, or copying of this email is strictly prohibited.*

All services are supplied on the basis of the firm's standard Terms of Engagement which can be found here. We take the protection of personal data very seriously. Full details of how we will process your personal data can be found in our Privacy Statement.

WALKERS' DISCLAIMER: The information in this email may be confidential, legally privileged and exempt from disclosure under applicable laws. If you are not the intended recipient, you must not read, use or disseminate the information in any way. If you receive this email in error, please inform us immediately and then delete it from your system. Due to the nature of email communication, Walkers and its affiliated entities accept no responsibility for any viruses or for the reliability, security, inaccuracy, incompleteness, interception, corruption, loss or delay of information exchanged.

53

**Geoffrey Sykes**

| | |
|---|---|
| **From:** | Brandon R. Schaller <bschaller@shieldslegal.com> |
| **Sent:** | 24 April 2025 4:52 PM |
| **To:** | Barnaby Gowrie; Philip Aubry; Geoffrey Sykes; Chris Beck |
| **Cc:** | mpatrick@dafholdco.com; Paul Murphy; sraver@dafholdco.com; Bart Higgins |
| **Subject:** | FW: Charitable DAF HoldCo, Ltd. [IMAN-IMANCORP.FID488232] |
| **Attachments:** | 2025 24 04 - Charitable DAF HoldCo Ltd.zip |
| | |
| **Importance:** | High |

---

[this message is from an external sender]

FYI

**Brandon R. Schaller**
ATTORNEY

**Phone** | 469.726.3055
**Email** | bschaller@shieldslegal.com
Bio | LinkedIn | vCard

---

**From:** Matheo Vinciullo | Campbells <MVinciullo@campbellslegal.com>
**Sent:** Thursday, April 24, 2025 4:45 PM
**To:** Michelle Richie | Campbells <MRichie@campbellslegal.com>; Brandon R. Schaller <bschaller@shieldslegal.com>
**Cc:** mpatrick@dafholdco.com; Paul Murphy <paul@gkmanagement.com.ky>; sraver@dafholdco.com; Bart Higgins <bhiggins@shieldslegal.com>; Mark Goodman | Campbells <MGoodman@campbellslegal.com>; Amanda Atkins | Campbells <AAtkins@campbellslegal.com>; Aliana Dodds | Campbells <ADodds@campbellslegal.com>; Chris Smith | Campbells <CSmith@campbellslegal.com>; Amanda Atkins | Campbells <AAtkins@campbellslegal.com>
**Subject:** RE: Charitable DAF HoldCo, Ltd. [IMAN-IMANCORP.FID488232]
**Importance:** High

---

> CAUTION: This email originated from outside of the organization.

All

Johnstone law, who are acting for the participating shareholders of Charitable DAF HoldCo Ltd, served the following documents this afternoon (via Campbells, as we remain Charitable DAF's registered office):

- A Petition seeking orders that Charitable DAF be wound up and that joint official liquidators be appointed.
- A Summons seeking an order appointing joint provisional liquidators over Charitable DAF.
- Supporting affirmations of Julie Diaz (of The Dallas Foundation) and James Dondero.
- Consent to acts as a liquidator from Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton.

The Summons seeking the appointment of joint provisional liquidators over Charitable DAF has been listed for hearing before Justice Asif at 2pm on **Monday, 28 April 2025**.

We will forward copies of the attached materials to Kroll, as the voluntary liquidators of Charitable DAF. Our understanding is that Kroll will be taking point on next steps as the voluntary liquidators, but we will review and are available to assist. We will also forward these materials onto Walkers, who have requested a copy.

Kind regards

**Matheo Vinciullo**
Associate

E mvinciullo@campbellslegal.com
T +1 345 949 2648  D +1 345 914 6931  C +1 345 327 6931

**Campbells LLP**
Floor 4, Willow House, Cricket Square
Grand Cayman  KY1-9010, Cayman Islands

campbellslegal.com | LinkedIn

CAYMAN | BVI | HONG KONG

This email including any attachments are strictly private and confidential. It is solely for the use of the intended recipient(s) and may contain confidential and privileged information. Internet email is not a secure communications medium and may contain viruses. All work carried out by us is subject to our standard terms and conditions (click here to view) unless other terms and conditions are agreed in writing between you and us. The Campbells Group is deemed not to be the author, editor or publisher of personal messages, which fall outside the scope of any individual's employment. Thank you.

**From:** Michelle Richie | Campbells <MRichie@campbellslegal.com>
**Sent:** Thursday, April 24, 2025 1:00 PM
**To:** Brandon R. Schaller <bschaller@shieldslegal.com>; Amanda Atkins | Campbells <AAtkins@campbellslegal.com>; Aliana Dodds | Campbells <ADodds@campbellslegal.com>; Chris Smith | Campbells <CSmith@campbellslegal.com>; Amanda Atkins | Campbells <AAtkins@campbellslegal.com>
**Cc:** mpatrick@dafholdco.com; Paul Murphy <paul@gkmanagement.com.ky>; sraver@dafholdco.com; Bart Higgins <bhiggins@shieldslegal.com>; Matheo Vinciullo | Campbells <MVinciullo@campbellslegal.com>; Mark Goodman | Campbells <MGoodman@campbellslegal.com>
**Subject:** RE: Charitable DAF HoldCo, Ltd. [IMAN-IMANCORP.FID488232]

Brandon

We have not received anything as yet but will provide copies when we do.  We have received a similar request from Walkers attached.  Do we have authorisation to provide the same to them?

**Michelle Richie**
Partner

E mrichie@campbellslegal.com
T +1 345 949 2648  D +1 345 914 6933  C +1 345 525 6933

**Campbells LLP**
Floor 4, Willow House, Cricket Square
Grand Cayman  KY1-9010, Cayman Islands

campbellslegal.com | LinkedIn

CAYMAN | BVI | HONG KONG

**From:** Brandon R. Schaller <bschaller@shieldslegal.com>
**Sent:** Thursday, April 24, 2025 12:48 PM
**To:** Amanda Atkins | Campbells <AAtkins@campbellslegal.com>; Aliana Dodds | Campbells <ADodds@campbellslegal.com>; Chris Smith | Campbells <CSmith@campbellslegal.com>; Amanda Atkins | Campbells <AAtkins@campbellslegal.com>; Michelle Richie | Campbells <MRichie@campbellslegal.com>
**Cc:** mpatrick@dafholdco.com; Paul Murphy <paul@gkmanagement.com.ky>; sraver@dafholdco.com; Bart Higgins <bhiggins@shieldslegal.com>
**Subject:** Charitable DAF HoldCo, Ltd.

**EXTERNAL EMAIL: This email originated from outside of Campbells.**

Campbells team,

We heard that Johnstone law is attempting service on Charitable DAF HoldCo, Ltd. as its registered office. Can you please advise if you have received anything, and if not, provide us a copy when you do?

Thanks,
Brandon

## Brandon R. Schaller
ATTORNEY

16400 Dallas Parkway, Suite 300
Dallas, TX 75248

**Phone** | 469.726.3055
**Email** | bschaller@shieldslegal.com
**Bio** | **LinkedIn** | **vCard**

### SHIELDSLEGAL.COM

This e-mail message is confidential and is being sent by or on behalf of Shields Legal Group, P.C. The information contained in this e-mail may be protected from disclosure by one or more privileges, including without limitation, the attorney-client communication privilege. If you are not the intended recipient, please notify the sender immediately at 469.726.3055 and/or by reply e-mail, and immediately destroy this message.  You should not copy it or disclose its contents to any other person.  Please note that internet communications are not secure; are subject to possible data corruption, either accidentally or on purpose; and may contain viruses.  This e-mail message does not contain or constitute legal advice and/or federal tax advice.  The contents of this e-mail message are not intended to be used and cannot be used to avoid penalties under the Internal Revenue Code, or to promote, market, or recommend to any person any transaction or matter addressed herein.

## Geoffrey Sykes

**From:** Mark Patrick <mpatrick@dafholdco.com>
**Sent:** 27 April 2025 12:51 AM
**To:** Mansfield, Mitchell
**Cc:** Paul Murphy
**Subject:** Voluntary Liquidators

**[this message is from an external sender]**

Dear Voluntary Liquidators

I write to you in my capacity as the management shareholder and director of the company. My fellow director, Paul Murphy, is copied to this email and agrees with its contents.

Please note the following:

The management shareholder of the company and its directors intend in providing cooperation to the voluntary liquidators in accordance with Cayman law.
The management shareholder has no intention of taking any steps to remove the voluntary liquidators from office.
Assuming the voluntary liquidators consider it appropriate having consulted with relevant stakeholders of the company, the management shareholder and the directors have no objections to the voluntary liquidators making the necessary court application to have the voluntary liquidation brought under the supervision of the Cayman Court.
If you have any questions, please do not hesitate to contact me.

Kind regards.

Mark Patrick
Management Shareholder

57

# Before



The Dallas Foundation (nonprofit)

Greater Kansas City Community Foundation (nonprofit)

Santa Barbara Foundation (nonprofit)

The Community Foundation of North Texas (nonprofit)

DFW Charitable Foundation (nonprofit)

Highland Dallas Foundation, Inc. (nonprofit)

Highland Kansas City Foundation, Inc. (nonprofit)

Highland Santa Barbara Foundation, Inc. (nonprofit)

.80% 5 Participating Shares

51.04% 318 Participating Shares

16.05% 100 Participating Shares

16.05% 100 Participating Shares

16.05% 100 Participating Shares

Mark Patrick

Management Shares

Charitable DAF HoldCo, Ltd. (Cayman Islands)

100% and sole Director

CDH GP, Ltd. (Cayman Islands)

Member

CDMCFAD, LLC (Delaware)

CDH GP, Ltd. (Cayman Islands)

General Partner

Charitable DAF Fund 2, LP (Cayman Islands)

General Partner

Charitable DAF Fund, LP (Cayman Islands)

CLO HoldCo, Ltd. (Cayman Islands)

Liberty CLO HoldCo, Ltd. (Cayman Islands)

HCT Holdco 2, Ltd. (Cayman Islands)

MGM Studios Holdco, Ltd. (Cayman Islands)

CLO HoldCo, LLC (Delaware)

Liberty CLO HoldCo, LLC (Delaware)

Liberty Sub, Ltd. (Delaware)

Charitable DAF Holdings Corp. (Delaware)

Rand Advisors, LLC (Delaware)

DST Investco, LLC (Delaware)

Allanon Capital Management LLC (Texas)

CDHC Royse City Land, LLC (Texas)

Royse City Land Company, LLC (Texas)

CDHC Assets, LLC (Texas)

CDHC Fort Worth Land, LLC (Texas)

CDHC Stewart Creek, LLC (Texas)

BVP Property, LLC (Delaware with CA Registration)

58

# Current – DAF Holdco

