PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

QUINN EMANUEL URQUHART & SULLIVAN LLP
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

SIDLEY AUSTIN LLP
Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

*Co-Counsel for Marc S. Kirschner, as Litigation Trustee of The Highland Litigation Sub-Trust*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
|  | ) |
| Debtor. | ) **Re: Docket Nos. 4216, 4217, 4229, 4230, 4231** |

## OMNIBUS REPLY IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH

The Movants hereby submit this reply (the "Reply") in support of their *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4216] (the

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

"Motion")[2] and in opposition to (i) *Patrick Daugherty's Objection to Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4229] (the "Daugherty Obj.") filed by Patrick Daugherty ("Daugherty"); (ii) *Preliminary Objection of the Dugaboy Investment Trust to the Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities* [Docket No. 4230] (the "Dugaboy Obj.") filed by The Dugaboy Investment Trust ("Dugaboy"); and (iii) *Objection of the Dallas Foundation and Crown Global Life Insurance Ltd. to Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4231] (the "Crown Obj." and together with the Daugherty Objection and the Dugaboy Objection, the "Objections") filed by The Dallas Foundation (on behalf of Empower Dallas Foundation and The Okada Family Foundation), and Crown Global Life Insurance, Ltd. (collectively, the "Purported Beneficiaries," and together with Daugherty and Dugaboy, the "Objectors"). In further support of the Motion, the Movants state as follows:

## I.    PRELIMINARY STATEMENT

1.     The Objectors' lack of any meaningful economic interest in the outcome of the Motion or substantive connection to, or interests in, the Movants calls into question their motives. Dugaboy, James Dondero's family trust, has no allowed Claims or Interests, is subordinated to HMIT, and would be hopelessly out-of-the money even if its unvested Class 11 Interest were ever allowed. Daugherty's allowed Class 8 and Class 9 Claims have been paid in full, and his disputed Class 8 Claim has been fully reserved at an agreed-upon amount for years. And the Purported Beneficiaries are complete strangers to this case, cannot be heard, and are

---

[2] All capitalized terms used but not defined herein have the meanings given to them in the Motion.

being bankrolled by Dondero—both here and in their litigation in the Cayman Islands. Nor does any Objector articulate how the Settlement Agreement adversely affects *its* alleged Claims or Interests in the Highland estate. Rather, the Objectors point to perceived inconsistencies with the Plan and the Claimant Trust Agreement to argue how Class 9 Claim holders—all of whom have either been paid or consented to the Settlement Agreement—are somehow negatively affected.

2.      None of the Objectors has a cognizable pecuniary interest in the estate; none of the Objections has merit.

3.      To the contrary, the Settlement Agreement is in the best interests of Highland's estate—and particularly holders of Class 9 Claims. It will (i) stop costly and time-consuming litigation; (ii) dispose of certain illiquid Estate assets; (iii) dispose of the Estate Claims and certain Causes of Action; (iv) resolve all disputes concerning HMIT's Class 10 Interests; and (v) protect against and prevent future value-destructive litigation. As a result, if approved, the Settlement Agreement will bring the Movants substantially closer to fully consummating the Plan. The Objections—transparent efforts to keep the litigation machine running—are frustrating, familiar, and tired.

4.      The Court should overrule the Objections, approve the Motion, and allow the estate to move towards completion of the Plan and dissolution of the Trusts.

## II.      **REPLY**

### A.      **The Objections Are Meritless**

5.      As discussed in the Motion, under applicable Fifth Circuit precedent, a bankruptcy court may approve a compromise or settlement as long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See, e.g.*, *In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). In making this determination, courts review the following factors: (i) probability of success in the litigation, with due consideration for the uncertainty of law and fact;

(ii) complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and (iii) all other factors bearing on the wisdom of the compromise, including (a) "the paramount interest of creditors with proper deference to their reasonable views" and (b) whether the settlement is the product of arm's length bargaining and not of fraud or collusion. *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997) (citations omitted); *see also Age Ref. Inc.*, 801 F.3d at 540; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 918 (5th Cir. 1995). Settlements, like the Settlement Agreement which contemplates the transfer and release of estate assets or claims, are further authorized under section 363(b) if "'supported by an articulated business justification, good business judgment, or sound business reasons.'" *Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.)*, 922 F.3d 323, 327 (5th Cir. 2019) (quoting *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010)).

6. Each element is satisfied here, and the Objections should be overruled.

**B.    Dugaboy Objection**

7. Dugaboy asserts (i) the Settlement Agreement violates the Plan and Claimant Trust Agreement because it allows payments on HMIT's Class 10 Interest notwithstanding that HMIT's Class 10 Interest has not vested and will not vest under the terms of the Settlement Agreement; (ii) there is insufficient evidence to support the relief requested in the Motion; and (iii) the mutual releases in the Settlement Agreement are overly broad and could (somehow) release claims that Dugaboy or its affiliates have against the Highland Entities or the HMIT Entities. The Dugaboy Objection should be overruled.

**1.    The Settlement Agreement Does Not Violate the Plan or Claimant Trust Agreement**

8. Dugaboy argues HMIT cannot receive anything on account of its Class 10 Interest

until the Claimant Trustee files a "GUC Payment Certification" pursuant to Section 5.1(c) of the Claimant Trust Agreement. Dugaboy Obj. ¶ 10. Dugaboy is wrong. Upon the filing of a GUC Payment Certification, Contingent Trust Interests vest, and allowed interests in Class 10 and Class 11 gain rights under the Claimant Trust Agreement. That is all. Section 5.1(c) does not prohibit (or even address) the allowance of a Class 10 Interest—which is entirely separate from vesting—nor does it prohibit settlements agreed to by all affected parties that further the intent of the Plan and Claimant Trust, *i.e.*, monetizing assets and making distributions.

9.      The Claimant Trust Agreement (CTA §§ 2.2(a)-(b), 3.2(a)-(b), 3.2(c)(iv)) and the Litigation Sub-Trust Agreement (LTA §§ 2.2, 3.2(a)-(b), 3.2(c)(v)) expressly authorize the Claimant Trustee and Litigation Trustee to resolve and settle Claims and to implement those settlements. The Plan also permits Claimants and Equity Interest holders (including those in Class 9 and Class 10) to accept "other less favorable" treatment. Plan, Art. III.H.9, 10. Here, the documentary evidence proves that the holders of the remaining Class 9 claims consented to the proposed payments being made to HMIT *before* payment in full on their Class 9 Interests to bring this case closer to completion. Docket No. 4255, Ex. 59. For its part, HMIT has agreed that its Class 10 Interest will not vest; it will not have rights under the Claimant Trust Agreement; and it will voluntarily provide broad Litigation Protections in exchange for the consideration being provided to it under the proposed Settlement Agreement. Parties' willing waiver of their rights and acceptance of reduced rights otherwise provided for by a plan as part of a settlement agreement is neither atypical nor frowned upon. It is encouraged.

10.      More specifically, holders of Class 9 Claims—the only parties with a pecuniary interest in the payments to HMIT—signed consents agreeing that (i) Daugherty's Class 9 Claim could be paid in full (which payment occurred on or about May 20, 2025) and (ii) HMIT could

receive certain payments under the Settlement Agreement before their Class 9 Claims are paid in full.[3]

11.     In sum, all parties economically affected by the Settlement Agreement have knowingly and voluntarily waived rights in order to settle with HMIT because the settlement resolves existing litigation, limits future litigation, and creates a scenario where those parties may receive their final distributions.

### 2.     Sufficient Evidence Supports Approval of the Motion

12.     Dugaboy contends the Movants failed to offer evidence sufficient to support their Motion and has requested significant discovery. In response, the Movants expeditiously produced more than 4,000 pages of documents to Dugaboy (and others) and made four witnesses available for deposition. As will be shown at the hearing, the evidence overwhelmingly supports approval of the Motion.

### 3.     The Release Is Neither Vague nor Overbroad

13.     Finally, Dugaboy alleges the releases in the Settlement Agreement are vague and overbroad and could limit Dondero's ability or the ability of the legion of entities controlled by him to sue the estate. Dugaboy cites no language to support its assertions and is wrong. The release is a broad, mutual release, but it is a standard provision necessary to effectuate the intent of the settlement and which does not release any purported claims of Dugaboy against any party.

### C.     Daugherty Objection

14.     Like Dugaboy, Daugherty alleges the Settlement Agreement violates the Plan and Claimant Trust Agreement as well as the absolute priority rule. Daugherty also alleges the

---

[3] All Class 8 Claims—other than Daugherty's disputed Claim—have been fully resolved and paid in full. Daugherty's disputed Class 8 Claim has been fully reserved for in accordance with the Plan and in an amount ($2,650,353) plus interest Daugherty agreed to years ago. Finally, all Claims junior to Class 8 have been fully resolved and paid.

Settlement Agreement is contrary to the estate's interests because it settles litigation rather than propagates it. Daugherty is wrong on both counts.

**1.    The Settlement Agreement Does Not Violate the Claimant Trust Agreement, the Plan, or the Bankruptcy Code**

15.    First, as set forth above, the Settlement Agreement does not violate the Plan or Claimant Trust Agreement. It effectuates a settlement among the affected parties; Daugherty is not an affected party. His allowed Class 8 and Class 9 Claims have been paid in full, and his disputed Class 8 Claim has been fully reserved in an amount he agreed to and in accordance with the Disputed Claims Reserve requirements in the Plan (Plan, Art. I.B.49, I.B.50, VI.E; Docket No. 4255, Exhibits. 58, 60-63).[4] Nevertheless, Daugherty asserts no settlement with HMIT can be reached until his disputed Class 8 Claim has been resolved to Daugherty's satisfaction. Given the status of Daugherty's claims, that assertion is wholly without basis.

16.    Second, the Settlement Agreement does not implicate the absolute priority rule because that is a requirement for plan confirmation; it does not apply to a settlement occurring nearly four years after the Plan Effective Date.

17.    Ultimately, Daugherty's objection is a transparent attempt to create leverage in the negotiation of his Class 8 Claim.[5]

**2.    The Settlement Agreement Is in the Estate's Best Interests**

18.    Daugherty also argues the Settlement Agreement is not in the best interests of the

---

[4] Daugherty cannot unilaterally increase the amount reserved for his Class 8 Claim. Under the Plan, the "Disputed Claims Reserve Amount" can be increased, in pertinent part, (i) with Highland's agreement or (ii) by an order of this Court disallowing, in whole or in part, or estimating Daugherty's Class 8 Claim. Plan, Art. I.B.50. Highland will not agree to increase Daugherty's Disputed Claim Reserve Amount. In fact, Highland filed a complaint to disallow, subordinate, or estimate Daugherty's Class 8 Claim. Adv. Pro. No. 25-03055. In response, Daugherty moved to dismiss, seeking to delay adjudication of that Complaint indefinitely. Daugherty is bound by his actions and cannot refuse to adjudicate his Claim while simultaneously demanding that his Disputed Claims Reserve Amount be increased.

[5] The evidence will show Daugherty recently threatened to sue Highland's employees and object to the Motion if Highland did not pay him $20 million.

estate because Highland should sue HMIT to recover "hundreds of millions of dollars." *See, e.g.*, Daugherty Obj. ¶ 26. Daugherty misconstrues the economics of the estate and the terms of the Claimant Trust Agreement and Plan. In the absence of a settlement, the Litigation Trustee's claims against HMIT were a potential source of cash that might have been needed to pay senior claims and obligations, including indemnification obligations. With the settlement of HMIT's Class 10 Interest—which represents 99.5% of Highland's prepetition equity—and resulting limitation of future litigation, the need for litigation funding is reduced, making further distributions possible. In any event, Daugherty fails to explain why he cares about the settlement or how it affects him. Rather, the facts are undisputed: Daugherty's disputed Class 8 Claim is fully reserved, and the reserve is fully funded. Any amounts recovered from HMIT through litigation would never have flowed to Daugherty. They would have been used to pay senior obligations, whatever remained of Class 9, and then returned to HMIT as payment on its Class 10 Interest.

## D.    Crown Objection

19.    As an initial matter, the Purported Beneficiaries are not parties in interest under 11 U.S.C. § 1109 and have no right to appear or be heard with respect to the Motion. As the Purported Beneficiaries admitted during their depositions:

- They have (i) never appeared in Highland's bankruptcy case; (ii) never filed a claim against Highland in its bankruptcy case; (iii) no claims or interests in Highland or the Claimant Trust; and (iv) have never had an interest—direct or otherwise—in Highland.

- Neither Highland nor the Claimant Trust owes any Purported Beneficiary any duty—contractual, fiduciary, or otherwise.

- They had no direct interest in HMIT before the reorganization discussed in the Crown Objection.

- They had no interest—direct or indirect—in HMIT after the reorganization.

- If the Settlement Agreement is consummated, the Purported Beneficiaries would have no claims against Highland or any Movant related to the Settlement Agreement or otherwise.

- Their concern is not the Settlement Agreement before the Court but whether they will share in the cash and assets HMIT will recover if the Court grants the Motion.

Based on their deposition testimony and other evidence, the Purported Beneficiaries are strangers to these proceedings with no interest in the Motion or Settlement Agreement.

20. Even under the most capacious interpretation of what constitutes a "party in interest" under Bankruptcy Code § 1109, and even assuming 11 U.S.C. § 1109 applies four years post-confirmation, the Purported Beneficiaries do not have a sufficient interest in the relief requested in the Motion—either before or after the reorganization described in the Crown Objection—to object to the Motion. According to the Supreme Court, the ability to be heard under Section 1109 requires an entity to have a "direct financial stake in the outcome." *Truck Ins. Exch. v. Kaiser Gypsum Co.,* 602 U.S. 268, 277–78 (2024) (quoting 7 COLLIER ON BANKRUPTCY ¶ 1109.01 (16th ed. 2023)). A "direct financial interest" requires "an actual interest in the controversy, as distinguished from a nominal party"—*i.e.*, a "pecuniary interest … directly affected by the bankruptcy proceeding." *Id.* at 278, n.3. "Where a proposed plan 'allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed.'" *Id.* at 282 (quoting *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 204 (3d Cir. 2011)). The Movants have no interest in the Purported Beneficiaries' pockets. The Purported Beneficiaries are interlopers falling well outside the

Supreme Court's definition of "party in interest" under Section 1109.[6] They epitomize the "truly

peripheral parties" lacking any "direct interest" to whom the Supreme Court denies the ability to

be heard. *Id.*, 602 U.S. at 284. Because the Purported Beneficiaries do not have sufficient interest

in the relief requested in the Motion or in the bankruptcy case under Section 1109, the Court

should strike the Crown Objection and decline to hear their arguments pertaining to the Motion.[7]

21.    Substantively, the Crown Objection is meritless. The Purported Beneficiaries

argue the Motion must be denied or stayed because Mark Patrick allegedly violated his fiduciary

obligations to the Purported Beneficiaries. On this basis, the Purported Beneficiaries conclude

that the Settlement Agreement could be jeopardized by protracted costly litigation.[8] In so

arguing, the Purported Beneficiaries conflate whether Patrick's *corporate restructuring* was a

breach of his fiduciary duty with whether Patrick had the *authority* to execute the Settlement

Agreement. Whether the Purported Beneficiaries or the Cayman liquidators (who, tellingly, are

not before this Court) have claims against Patrick is not a question of corporate authority and is

irrelevant to whether Highland can meet its burden under Bankruptcy Rule 9019 and 11 U.S.C. §

363. Regardless, the evidence will demonstrate that Patrick is authorized to enter into the

Settlement Agreement and that he required no one's consent to do so.

---

[6] This would be true even if the restructuring outlined in the Crown Objection were reversed and the Purported Beneficiaries retained their remote interest in HMIT. *Truck Insurance* left undisturbed a long line of cases holding that "a shareholder of a party in interest is not, by virtue of its equity holding, itself a party in interest." *In re AIO US, Inc.*, 2025 Bankr. LEXIS 1369, at \*29 (Bankr. D. Del. June 6, 2025); *see also, e.g.*, *In re Refco*, 505 F.3d 109, 117 (2d Cir. 2007); *In re Vantage Drilling Int'l*, 603 B.R. 538, 545 (D. Del. 2019).

[7] Ignoring the Movants' written request (Docket No. 4255, Ex. 120), the Purported Beneficiaries also failed to file a disclosure statement as required by Federal Rule of Bankruptcy Procedure 2019, which is independent grounds to refuse to permit the Purported Beneficiaries to be heard and to assess sanctions against them. FED. R. BANKR. PROC. 2019(e)(2)(A)-(C).

[8] The Purported Beneficiaries also conceded during their depositions that (i) Dondero is funding their pursuit of the Crown Objection and (ii) they had not even read the Settlement Agreement. The Purported Beneficiaries also testified, among other things, that (i) HMIT had the corporate authority to enter into the Settlement Agreement and (ii) they had no reason to believe the Settlement Agreement was not the product of good faith and arm's length negotiations or that the terms of the Settlement Agreement were unfair to either side.

WHEREFORE, for the reasons set forth above and in the Motion, the Movants

respectfully request that the Court overrule the Objections and grant the Motion.

DATED: June 23, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email:      jpomerantz@pszjlaw.com
            jmorris@pszjlaw.com
            gdemo@pszjlaw.com
            hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P., and
the Highland Claimant Trust*

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

*/s/ Robert S. Loigman*
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000


-and-

**SIDLEY AUSTIN LLP**
Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300


*Co-Counsel for Marc S. Kirschner, as Litigation
Trustee of the Highland Litigation Sub-Trust*