

**United States Court of Appeals
for the Fifth Circuit**

Certified as a true copy and issued
as the mandate on Jun 13, 2025

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
March 18, 2025

No. 23-10534

Lyle W. Cayce
Clerk

IN THE MATTER OF HIGHLAND CAPITAL MANAGMENT, L.P.

*Debtor*,

HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, , *now known as* NEXPOINT ASSET MANAGEMENT, ; NEXPOINT ADVISORS, L.P.,

*Appellants*,

*versus*

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-573

_____

Before ELROD, *Chief Judge,* WILLETT, and DUNCAN, *Circuit Judges*.

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is REVERSED in part, and the cause is REMANDED to

the District Court to revise the Plan's definitions of both "Exculpated Parties" and "Protected Parties" to read simply: "collectively, (i) the Debtor; (ii) the Independent Directors, for conduct within the scope of their duties; (iii) the Committee; and (iv) the members of the Committee in their official capacities, for conduct within the scope of their duties."

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See Fed. R. App. P. 41(b). The court may shorten or extend the time by order. See 5th Cir. R. 41 I.O.P.

2

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
March 18, 2025
Lyle W. Cayce
Clerk

_____

No. 23-10534
_____

In the Matter of Highland Capital Management, L.P.

*Debtor*,

Highland Capital Management Fund Advisors, L.P., *now known as* NexPoint Asset Management, L.P.; NexPoint Advisors, L.P.,

*Appellants*,

*versus*

Highland Capital Management, L.P.,

*Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-573

_____

Before Elrod, *Chief Judge*, and Willett, and Duncan, *Circuit Judges*.

Jennifer Walker Elrod, *Chief Judge*:

Appellants NexPoint Asset Management, L.P. and NexPoint Advisors, L.P. appeal the bankruptcy court's approval of Appellee Highland Capital Management, L.P.'s revised Bankruptcy Confirmation Plan.

No. 23-10534

Because the bankruptcy court partially failed to amend the Plan in accordance with our previous instructions, we REVERSE in part and REMAND.

I

A

Highland Capital Management, L.P., is a Dallas-based investment firm that was co-founded by James Dondero. *In re Highland Cap. Mgmt., L.P. (Highland I)*, 48 F.4th 419, 424 (5th Cir. 2022).[1] For nearly three decades, Highland Capital has managed billion-dollar, publicly traded investment portfolios. *See id.* at 425. In 2019, however, "myriad unpaid judgments and liabilities forced Highland Capital to file for Chapter 11 bankruptcy." *Id.*

At the time Highland Capital filed for bankruptcy, Dondero served as a director and officer. *Id.* But at the start of the bankruptcy, the unsecured creditors' committee negotiated an agreement with Dondero under which he would step down as a director and officer to serve as an "unpaid portfolio manager." *Id.* The unsecured creditors' committee then "selected a board of three independent directors to act as a quasi-trustee and to govern" Highland Capital. *Id.*

During the bankruptcy, Dondero proposed several reorganization plans that the unsecured creditors' committee and the independent directors opposed. *Id.* at 426. When those plans failed, Dondero "began to frustrate the proceedings by objecting to settlements, appealing orders, seeking writs of mandamus, interfering with Highland Capital's management, threatening employees, and canceling trades between Highland Capital and its clients." *Id.* As a result, Highland Capital's independent directors insisted that Dondero resign from the company, which he did in October 2020. *Id.* In

_____

[1] We recount the facts as set out in *Highland I*.

2

addition, the bankruptcy court held Dondero in civil contempt and sanctioned him for his behavior. *See Highland Cap. Mgmt., L.P. v. Dondero (In re Highland Cap. Mgmt., L.P.)*, Ch. 11 No. 19-34054-SGJ11, 2021 WL 2326350, at *1, 26 (Bankr. N.D. Tex. June 7, 2021).

Meanwhile, the bankruptcy proceedings moved forward, and the unsecured creditors' committee and the independent directors agreed on a proposed reorganization plan. *Highland I*, 48 F.4th at 426–27. "Anticipating Dondero's continued litigiousness," the proposed plan included two provisions intended to shield Highland Capital and associated persons and entities from liability: the Exculpation Provision and the Injunction Provision. *Id.* at 427.

As proposed, the Plan's Exculpation Provision permanently extinguished "any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability" against a group of "Exculpated Parties" for any conduct related to:

> (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv).

The provision did not extend to actions by Highland Capital's general partner or its employees that predated the appointment of the independent

directors, and it did not cover claims arising from "acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct." *Id.* The Plan defined "Exculpated Parties" as:

> collectively, (i) the Debtor and its successors and assigns, (ii) the Employees, (iii) Strand [Advisors, Inc., Highland Capital's general partner], (iv) the Independent Directors, (v) the [Unsecured Creditors'] Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the Parties listed in (iv) through (viii)[.]

The Plan's Injunction Provision, for its part, broadly enjoined certain persons and entities who held claims against or equity interests in Highland Capital (the "Enjoined Parties") from "taking any actions to interfere with the implementation or consummation of the Plan." It also specifically prohibited the Enjoined Parties from suing, enforcing orders, or asserting rights of setoff so as to recover from Highland Capital or affect Highland Capital's property. Then, in its Gatekeeper Clause, the provision implemented an injunction[2] prohibiting the Enjoined Parties from taking specific actions against the "Protected Parties," stating:

> [N]o Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the

---

[2] Contrary to Highland Capital's assertion, the Gatekeeper Clause *is* an injunction—a pre-filing injunction. *See IntegraNet Physician Res., Inc. v. Tex. Indep. Providers, LLC*, 945 F.3d 232, 237 (5th Cir. 2019) ("[T]he . . . court's order prevents a party from filing future lawsuits without that judge's permission—meaning it's a pre-filing injunction.").

Case 19-34054-sgj11 Doc 4281 Filed 06/13/25 Entered 06/13/25 12:30:25 Desc
Main Document Page 7 of 19

No. 23-10534

> Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party[.]

The Plan defined the term "Protected Parties" as:

> collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv)[.]

Dondero and several other interested parties objected to the Plan. *Id.* at 426. Among those parties were two entities that the bankruptcy court had found to be owned or controlled by Dondero: NexPoint Asset Management, L.P. (formerly known as Highland Capital Management Fund Advisors, L.P.) and NexPoint Advisors, L.P. These two entities were Appellants in *Highland I* and are Appellants again in this appeal. The United States Trustee also objected to the Exculpation Provision, contending that these provisions constituted an impermissible nonconsensual release of non-

No. 23-10534

debtors' claims against other non-debtors. *Id.*; *see also* Bankr. Ct. Doc. 1671, at 4 (Jan. 5, 2021).

B

The bankruptcy court confirmed the Plan over these objections. *Highland I*, 48 F.4th at 427. On direct appeal from the bankruptcy court under 28 U.S.C. § 158(d)(2), we "reverse[d] only insofar as the plan exculpates certain non-debtors in violation of 11 U.S.C. § 524(e), str[uck] those few parties from the plan's exculpation, and affirm[ed] on all remaining grounds." *Id.* at 424.

The investment fund parties then requested panel rehearing, asking us to clarify whether our directive to strike certain persons and entities from the definition of the term "Exculpated Parties" used in the Exculpation Provision also required striking the same persons and entities from the definition of the term "Protected Parties" used in the Injunction Provision's Gatekeeper Clause. We granted panel rehearing and made one substantive change to the opinion: deleting the sentence, "The injunction and gatekeeper provisions are, on the other hand, perfectly lawful," and replacing it with the sentence, "We now turn to the Plan's injunction and gatekeeper provisions." *Id.* at 438.

Highland Capital then filed a Motion to Conform Plan, requesting that the bankruptcy court conform the Plan to our opinion in *Highland I* by, *inter alia*, narrowing the definition of the term "Exculpated Parties" to "(i) the Debtor, (ii) the Independent Directors, (iii) the Committee, and (iv) the members of the Committee (in their official capacities)." Because the motion did not propose any change to the definition of "Protected Parties" used in the Gatekeeper Clause, as Appellants believed that it should in light of *Highland I*, Appellants filed a limited objection to the motion. In the objection, Appellants contended:

6

No. 23-10534

> [A]mending the Plan only with respect to the definition of "Exculpated Parties" does not comport with the Fifth Circuit's holding [in *Highland I*] because the Plan must also be changed with respect to its injunction and gatekeeper provisions in order to conform to the Final Opinion. As the Funds' Response explains, the Plan's permanent injunction provisions exculpate all included in the defined term "Protected Party." To conform with the Final Opinion, this definition too must change.

The bankruptcy court held a hearing on the motion and Appellants' objection. At the conclusion of the hearing, the bankruptcy court granted Highland's motion as presented, without modifying the definition of "Protected Parties." The bankruptcy court then issued a written opinion in support of its ruling, which confirmed its holding that *Highland I* required "that one change be made to the Plan to conform it to the mandate of the Fifth Circuit: revise the definition of 'Exculpated Parties' as proposed in the Motion and no more."

Appellants petitioned for permission to appeal the Plan Conforming Order directly to this court, and we granted the petition. On appeal, Appellants ask us to consider two issues: (1) whether the bankruptcy court erred in failing to narrow the definition of "Protected Parties" used in the Gatekeeper Clause coextensively with its narrowing of the definition of "Exculpated Parties" used in the Exculpation Provision; and (2) whether the Gatekeeper Clause, even if so narrowed, is lawful considering bankruptcy courts' limited jurisdiction.[3]

---

[3] Appellants raised the latter issue in their opening brief. But they walked this argument back at oral argument, averring that this appeal concerns only their first issue: whether *Highland I* should be read as narrowing the Gatekeeper Clause coextensively with the Exculpation Provision. Regardless, we decline to reach the second issue under our rule of orderliness. *See Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016). If Appellants wish

No. 23-10534

II

We review a bankruptcy court's legal conclusions *de novo*. *Evolve Fed. Credit Union v. Barragan-Flores (In re Barragan-Flores)*, 984 F.3d 471, 473 (5th Cir. 2021) (citation omitted).

III

We conclude that the bankruptcy court failed to properly implement our instructions in *Highland I* when it declined to narrow the definition of "Protected Parties" used in the Gatekeeper Clause to include only "(i) the Debtor; (ii) the Independent Directors, for conduct within the scope of their duties; (iii) the Committee; and (iv) the members of the Committee in their official capacities, for conduct within the scope of their duties." In failing to make this change, the bankruptcy court exceeded its power under the Bankruptcy Code by allowing the Plan to improperly protect non-debtors from liability.

A

Although bankruptcy courts have the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, 11 U.S.C. § 105(a), this power is "not unlimited" and does not permit bankruptcy courts to "act as roving commission[s] to do equity." *In re Mirant Corp.*, 378 F.3d 511, 523 (5th Cir. 2004) (alteration in original) (citing *In re Southmark Corp.*, 49 F.3d 1111, 1116 (5th Cir. 1995)). As relevant here, we have always recognized and enforced limitations on bankruptcy courts' power to shield non-debtors from liability.

---

to relitigate this issue, which was resolved in *Highland I*, they must do so via a petition for rehearing *en banc* or a petition for certiorari.

8

No. 23-10534

1

The Supreme Court and this court have definitively held that bankruptcy courts may not approve a confirmation plan that non-consensually releases non-debtors from liability related to a bankruptcy proceeding.[4] They have also recognized that bankruptcy injunctions, though not in themselves releases, similarly act to shield persons and entities from liability and therefore may not be entered to protect non-debtors not legally entitled to release.

"Although we interpret [11 U.S.C.] § 105 liberally" to allow bankruptcy courts a range of powers, any action a bankruptcy court takes "must be consistent with the rest of the Bankruptcy Code." *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995) (internal citations omitted). Notably, any bankruptcy court action must square with the Bankruptcy Code's edict that "discharge of a debt of the debtor does not affect the liability of any other entity on . . . such debt." 11 U.S.C. § 524(e); *see, e.g.*, *In re Coho Res., Inc.*, 345 F.3d 338, 342–43 (5th Cir. 2003); *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 229 (5th Cir. 1997); *In re Edgeworth*, 993 F.2d 51, 53–54 (5th Cir. 1993).

In accordance with this principle, the Supreme Court held recently in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), that the Bankruptcy Code "does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of the affected claimants." *Id.* at 227. Even

---

[4] We note that courts and bankruptcy confirmation plans often use the terms "release," "exculpation," and "discharge" loosely or interchangeably. Here, the Plan uses the term "exculpation" to refer to absolution from liability for both debts and conduct in the course of the bankruptcy. In this opinion, we mostly utilize the more generally used term "release," but we discuss and apply cases that use other terminology when their usage is appropriate in the context of the discussion.

9

before *Purdue Pharma*, this court had held the same: that any provision that non-consensually releases non-debtors from liability for debts and/or conduct, and any injunction that acts to shield non-debtors from such liability, must be struck from a bankruptcy confirmation plan. *See, e.g.*, *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) (Fifth Circuit case law "seem[s] broadly to foreclose non-consensual non-debtor releases and permanent injunctions."); *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1059, 1061–62 (5th Cir. 2012); *In re Zale Corp.*, 62 F.3d at 760 ("[W]e must overturn a § 105 injunction if it effectively discharges a nondebtor.").[5]

As we explained in *Pacific Lumber*, "[t]he fresh start § 524(e) provides to debtors is not intended to serve th[e additional] purpose" of releasing non-debtors. 584 F.3d at 252–53. Thus, a bankruptcy court that approves a non-consensual release and/or injunction protecting non-debtors "exceed[s] its powers under § 105." *In re Zale Corp.*, 62 F.3d at 761.

2

Relatedly, although we have recognized that bankruptcy courts have some power to perform gatekeeping functions, they nonetheless do not have unrestricted power to protect non-debtors from liability via a pre-filing injunction.

Under the *Barton* doctrine, we have acknowledged that an individual or entity may be required to obtain leave of the bankruptcy court before filing claims in another court "against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity" in a

---

[5] The only situation in which permanent injunctions of third-party claims against non-debtors have been allowed is when the injunction "channel[s] those claims to allow recovery from separate assets and thereby avoid[s] discharging the nondebtor." *In re Zale Corp.*, 62 F.3d at 760; *see In re Pac. Lumber Co.*, 584 F.3d at 252. The Bankruptcy Code explicitly authorizes this in mass tort asbestos cases. *See* 11 U.S.C. § 524(g).

bankruptcy proceeding, even if the bankruptcy court would not have jurisdiction to actually adjudicate those claims. *Villegas v. Schmidt*, 788 F.3d 156, 159 (5th Cir. 2015) (citation omitted); *see Carroll v. Abide*, 788 F.3d 502, 506–07 (5th Cir. 2015); *accord Barton v. Barbour*, 104 U.S. 126 (1881). The bankruptcy court may gatekeep such claims even after the bankruptcy proceeding has concluded. *See Villegas*, 788 F.3d at 157, 159.

We have articulated several rationales for allowing bankruptcy courts to perform this limited gatekeeping function. For one, it prevents "usurpation of the powers and duties which belong[] exclusively to [the appointing bankruptcy] court [that]... would [make] impossible of performance the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities." *Barton*, 104 U.S. at 136; *see Carroll*, 788 F.3d at 506. In addition, "because a bankruptcy trustee is considered an officer of his appointing court, the bankruptcy court 'has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties.'" *Carroll*, 788 F.3d at 506 (footnotes omitted) (quoting *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996)).

Beyond these few abovenamed non-debtor individuals, we have never extended the *Barton* doctrine to give bankruptcy courts gatekeeping power over claims against non-debtors. *See, e.g.*, *Villegas*, 788 F.3d at 159; *Carroll*, 788 F.3d at 505; *In re Preferred Ready-Mix, LLC*, 2024 WL 5252498, at *1 (5th Cir. Dec. 31, 2024); *In re Foster*, 2023 WL 20872, at *5 (5th Cir. Jan. 3, 2023); *In re Grodsky*, 799 F. App'x 271, 273 n.2 (5th Cir. 2020); *Baron v. Vogel*, 678 F. App'x 202, 203 (5th Cir. 2017).[6]

---

[6] Other circuits have extended the *Barton* doctrine to protect a wider variety of court-appointed and court-approved fiduciaries and their agents. *See, e.g.*, *Helmer v. Pogue*, 2012 WL 5231153, at *2–12 (N.D. Ala. Oct. 22, 2012) (applying *Barton* to debtor-in-

B

As it must, *Highland I* obeys these bedrock principles concerning bankruptcy courts' power to protect non-debtors. Consequently, the proper reading of *Highland I* is to require the bankruptcy court to narrow the definition of "Protected Parties" used in the Gatekeeper Clause coextensively with the definition of "Exculpated Parties" used in the Exculpation Provision, to read simply: "collectively, (i) the Debtor; (ii) the Independent Directors, for conduct within the scope of their duties; (iii) the Committee; and (iv) the members of the Committee in their official capacities, for conduct within the scope of their duties." Both (1) the opinion's plain language and (2) the change made to the opinion on rehearing elucidate this holding.

1

The plain language of two particular sections of *Highland I* indicates that the definition of "Protected Parties" must be narrowed.

First, in Part IV(E)(2), we stated that "Appellants' primary contention—that the Plan's injunction 'is broad' by releasing non-debtors in violation of § 524(e)—is resolved by our striking the impermissibly exculpated parties." *Highland I*, 48 F.4th at 438. There is only one possible

---

possession); *In re Silver Oak Homes, Ltd.*, 167 B.R. 389, 394–95 (Bankr. D. Md. 1994) (applying *Barton* to debtor-in-possession's president); *Gordon v. Nick*, 1998 WL 559734, at *2–3 (4th Cir. 1998) (applying *Barton* to debtor-in-possession's general partner); *Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) (applying *Barton* to trustee's attorneys and creditors who "functioned as the equivalent of court appointed officers"); *In re Lowenbraun*, 453 F.3d 314, 321–22 (6th Cir. 2006) (applying *Barton* to trustee's attorney); *In re Ditech Holding Corp.*, 2021 WL 3716398, at *10 (Bankr. S.D.N.Y. Aug. 20, 2021) (applying *Barton* to post-confirmation plan administrator, consumer claims representative, and their respective agents). But this circuit has never approved of broadening the *Barton* doctrine to cover such individuals.

reading of this plain language: that we made a change to solve the Gatekeeper Clause's broadness—namely, narrowing it to protect the same persons and entities as the narrowed Exculpation Provision lawfully protects. In this sentence, we agreed with Appellants that the Gatekeeper Clause, as written in the Plan, was too broad, but expressly stated that we were resolving this problem by narrowing the Gatekeeper Clause in coordination with our narrowing of the Exculpation Provision. Although we did not specify by name the persons and entities to be stricken from the Gatekeeper Clause's definition of "Protected Parties," it was implied that the same persons and entities stricken from the Exculpation Provision's definition of "Exculpated Parties" were stricken also from the Gatekeeper Clause's definition of "Protected Parties." For clarity, we state now in explicit terms that *Highland I* struck all persons and entities from the definition of "Protected Parties" except Highland Capital; the Independent Directors, for conduct within the scope of their duties; the Committee; and the members of the Committee in their official capacities, for conduct within the scope of their duties.

In the next paragraph of *Highland I*, we considered the effect of the Injunction Provision on only "the legally exculpated parties." *Id.* at 438. The use of this phrase further links our treatment of the Exculpation Provision and the Injunction Provision and its Gatekeeper Clause. As just stated above, striking certain persons and entities from the Exculpation Provision had the effect of striking those same persons and entities from the Gatekeeper Clause, such that in the remainder of *Highland I* we needed to consider the effect of the Injunction Provision on only the "legally exculpated parties" in the remainder of the opinion. Consequently, our conclusion in Part IV(E)(2) that the injunction was "not unlawfully overbroad or vague" communicated our holding that the Injunction Provision was no longer overbroad in the sense that it protected persons and entities that it could not

13

No. 23-10534

legally protect, because we had already stricken those persons and entities from the definition of "Protected Parties."

Second, our summary of Part IV(E) of the *Highland I* opinion indicates that we narrowed both provisions coextensively. The summary states:

> [T]he Plan violates § 524(e) but only insofar as it exculpates *and enjoins* certain non-debtors. The exculpatory order is therefore vacated as to all parties *except* Highland Capital, the Committee and its members, and the Independent Directors for conduct within the scope of their duties. We otherwise affirm the inclusion of the injunction and the gatekeeper provisions in the Plan.

*Id.* at 439 (first emphasis added). This is a crystal-clear statement of *Highland I*'s holding that the Plan was unlawful in that it both released *and* enjoined non-debtors that could not lawfully be protected. And the fact that *Highland I* states that we "*otherwise* affirm[ed] the inclusion of the injunction and gatekeeper provisions," *id.*, shows that we made at least *some* alteration to the Injunction Provision and its Gatekeeper Clause. Given that no other changes to these provisions is evident from the face of *Highland I*, the only possible change was the non-debtors from the Gatekeeper Clause's definition of "Protected Parties."

2

The changes made to *Highland I* on rehearing only strengthen this reading of the opinion.

Preliminarily, the fact that the *Highland I* panel granted rehearing at all shows that it intended to make changes to the Gatekeeper Clause. The petition for limited panel rehearing asked the panel for one thing only: to "confirm that the scope of the injunction and gatekeeper provisions in the Plan are limited in accordance with the Court's holding on the exculpation provision." Although the panel did not explicitly state its reasoning for

14

No. 23-10534

granting rehearing, this court generally only grants rehearing when parties "bring to [our] attention" specific issues in the original opinion. 5TH CIR. R. 40.1.2. Consequently, the *Highland I* panel would not have granted rehearing or made the change it did to the opinion for any purpose other than to address the issue raised by Appellants in their petition for panel rehearing.

Furthermore, on rehearing, the only change made to *Highland I* was to walk back the most conspicuous statement that could have been construed as saying that the Gatekeeper Clause should not be narrowed coextensively with the Exculpation Provision. At the beginning of Part IV(E)(2), the panel struck the sentence, "The injunction and gatekeeper provisions are, on the other hand, perfectly lawful," *In re Highland Cap. Mgmt., L.P.*, 2022 WL 3571094, at *13 (5th Cir. Aug. 19, 2022) (withdrawn opinion), and replaced it with the sentence, "We now turn to the Plan's injunction and gatekeeper provisions," *Highland I*, 48 F.4th at 438. In so doing, the panel took steps to rectify any erroneous message that the Injunction Provision and its Gatekeeper Clause, as written in the Plan, were fully lawful.[7]

---

[7] Highland Capital's argument that narrowing the Gatekeeper Clause in this way will "render it largely meaningless" does not undermine the conclusion that the definition of "Protected Parties" may not comprise more than the persons and entities to which we now clarify that it must be narrowed. It is indeed true, as Highland Capital points out, that "all the Exculpated Parties ceased to exist on the Effective Date of the Plan and have no role in any of the post-Effective Date activities," such that limiting the Gatekeeper Clause in this way means that the clause will "not reach any conduct undertaken after the Effective Date." But as explained above, *see supra* Part III(A), the bankruptcy court lacks the power to shield non-debtors from liability in this way. Furthermore, this will not gut the Gatekeeper Clause completely, as Highland Capital warns, because the clause will still allow the bankruptcy court to gatekeep claims raised against the remaining persons and entities related to their conduct during the bankruptcy proceedings.

15

No. 23-10534

IV

The clear weight of Supreme Court and Fifth Circuit precedent dictates our holding: that a proper reading of *Highland I* requires that the definition of "Protected Parties" used in the Plan's Gatekeeper Clause be narrowed coextensively with the definition of "Exculpated Parties" used in the Exculpation Provision. Any other reading of *Highland I* would improperly grant the bankruptcy court authority to enforce what is perhaps the broadest gatekeeper injunction ever written into a bankruptcy confirmation plan. Such authority is patently beyond the power of an Article I court under § 105.

Accordingly, we REVERSE in part and REMAND for the district court to revise the Plan's definitions of both "Exculpated Parties" and "Protected Parties" to read simply: "collectively, (i) the Debtor; (ii) the Independent Directors, for conduct within the scope of their duties; (iii) the Committee; and (iv) the members of the Committee in their official capacities, for conduct within the scope of their duties."

# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 13, 2025

Mr. Stephen J. Manz
U.S. Bankruptcy Court, Northern District of Texas
1100 Commerce Street
Earle Cabell Federal Building
Dallas, TX 75242-1496

    No. 23-10534   Highland Captl Fund v. Highland Captl Mgmt
                           USDC No. 3:23-CV-573

Dear Mr. Manz,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                         Sincerely,

                         LYLE W. CAYCE, Clerk

                         By: _____
                         Lisa E. Ferrara, Deputy Clerk
                         504-310-7675

cc:
    Mr. Zachery Z. Annable
    Mr. John D. Ashcroft
    Mr. Gregory Vincent Demo
    Mr. Jordan A. Kroop
    Mr. John A. Morris
    Mr. Jeffrey N. Pomerantz
    Mr. Davor Rukavina
    Mr. Johnny Sutton
    Ms. Hayley R. Winograd