**STINSON LLP**
Deborah Deitsch-Perez
Christopher J. Harayda
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: cj.harayda@stinson.com

**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT
OF TEXAS DALLAS DIVISION**

| | |
|---|---|
| In re: § | Chapter 11 |
| §  §   | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.[1], § | Case No. 19-34054-sgj11 |
| § | |
| Reorganized Debtor. § | |

## MOTION TO CONFORM PLAN

NexPoint Advisors, L.P. and NexPoint Asset Management, L.P. f/k/a Highland Capital

Management Fund Advisors, L.P. (collectively, "NexPoint") file this Motion to Conform Plan

("Motion") seeking entry of an order, substantially in the form attached hereto as Exhibit A (the

"Proposed Order"), modifying the Fifth Amended Plan of Reorganization of Highland Capital

Management, L.P. (As Modified) [Dkt. 1808] (as subsequently modified, the "Plan")[2] to comply

with the final judgment and mandate issued by the United States Court of Appeals for the Fifth

Circuit in *In re Highland Capital Management, L.P.*, No. 23-10534 (5th Cir.) [Dkt. 4281], which

reversed in part and remanded the Bankruptcy Court's Order on Reorganized Debtor's Motion to

Conform Plan [Dkt. 3672].

---

[1] The last four digits of Highland's taxpayer identification number are 8357. The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

[2] The Plan was previously amended by this Court on February 1, 2021.  Dkt. 1875, Ex. B.

CORE/9991000.8384/200512758.3

**INTRODUCTION**

1.      By this Motion, NexPoint seeks entry of an order conforming the Plan to the Fifth

Circuit's final judgment and mandate issued in by the Fifth Circuit on June 13, 2025 ("Final

Mandate").  Dkt. 4281.  The Final Mandate requires this Court to "revise the Plan's definitions of

both 'Exculpated Parties' and 'Protected Parties' to read simply: 'collectively, (i) the Debtor; (ii)

the Independent Directors, for conduct within the scope of their duties; (iii) the Committee; and

(iv) the members of the Committee in their official capacities, for conduct within the scope  of

their duties.'"  *Id.* at 2.  Conforming the Plan to the Fifth Circuit's Mandate should be a simple

task, especially with the guidance of the Fifth Circuit's extensive opinion analyzing the Plan's

protection provisions and its prior order requiring the very same Plan revision.  *See generally In*

*re Highland Cap. Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022); *In re Highland Cap. Mgmt., L.P.*, 132

F.4th 353 (5th Cir. 2025).

**JURISDICTION AND VENUE**

2.      The Court has jurisdiction to enter the relief requested pursuant to 28 U.S.C. §§ 157

and 1334.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      The underlying statutory authority that is applicable is 11 U.S.C. §§ 105(a) and

1142.

**RELEVANT BACKGROUND**

**I.      The Bankruptcy Court Enters a Confirmation Order Containing Extensive
Protection Provisions**

5.      On October 16, 2019, Highland Capital Management, L.P. ("Highland" or the

"Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Dkt. 3.

6.      On February 22, 2021, this Court entered its Order (I) Confirming the Fifth

Amended Plan of Highland Capital Management, L.P. (as Modified), and (II) Granting Related

CORE/9991000.8384/200512758.3

Relief ("Confirmation Order"). Dkt. 1943.

7.      The Plan, as confirmed, contained extensive protection provisions designed to insulate various parties from liability and to prevent future lawsuits against them without prior permission from the Bankruptcy Court.  Specifically, Article IX of the Plan contained an exculpation provision, an injunction, and a so-called "gatekeeper" provision (collectively, the "Protection Provisions").

8.      The Plan exculpation (the "Exculpation Provision"), as originally crafted, read as follows:

> Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); provided, however, the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

Plan, Dkt. 1808 at Art. IX.D.  The Plan defined "Exculpated Parties" to mean "(i) the Debtor and its successors and assigns, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the [Unsecured Creditors] Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii).  Dkt.

1808 at Art.I.B.62.[3]

9.      The Plan's injunction (the "Injunction Provision"), as originally crafted, read as

follows:

> Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently
> enjoined, on and after the Effective Date, from taking any actions to interfere with the
> implementation or consummation of the Plan. Except as expressly provided in the Plan,
> the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties
> are and shall be permanently enjoined, on and after the Effective Date, with respect to any
> Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or
> continuing in any manner any suit, action, or other proceeding of any kind (including any
> proceeding in a judicial, arbitral, administrative or other forum) against or affecting the
> Debtor or the property of the Debtor, (ii) enforcing, levying, attaching (including any
> prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to
> recover or enforce, by any manner or means, any judgment, award, decree, or order against
> the Debtor or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing
> in any manner, any security interest, lien or encumbrance of any kind against the Debtor
> or the property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against
> any obligation due to the Debtor or against property or interests in property of the Debtor,
> except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy
> Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not
> conform to or comply with the provisions of the Plan.
>
> The injunctions set forth herein shall extend to, and apply to any act of the type set forth in
> any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the
> Debtor, including, but not limited to, the Reorganized Debtor, the Litigation SubTrust, and
> the Claimant Trust and their respective property and interests in property.

Plan, Dkt. 1808 at Art.IX.F.  The Plan defined "Enjoined Parties" to mean "(i) all Entities who

have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof

of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of,

against or abstain from voting on the Plan or are presumed to have accepted or deemed to have

rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed

---

[3] The Plan defined "Related Persons" as any "Person's predecessors, successors, assigns (whether by
operation of law or otherwise), and each of their respective present, future, or former officers, directors,
employees, managers, managing members, members, financial advisors, attorneys, accountants, investment
bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions,
management companies, heirs, agents, and other representatives, in each case solely in their capacity as
such." Dkt. 1808 at Art.I.B.112.

4

any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which

such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related

Persons of each of the foregoing . . . ." *Id.* at Art.I.B.56.

10.     The final clause of the Injunction Provision (the "Gatekeeper Clause"), as originally

crafted, read as follows:

> Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a
> claim or cause of action of any kind against any Protected Party that arose or arises from
> or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the
> Plan or property to be distributed under the Plan, the wind down of the business of the
> Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation
> Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court
> (i) first determining, after notice and a hearing, that such claim or cause of action represents
> a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal
> misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and
> (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action
> against any such Protected Party; provided, however, the foregoing will not apply to a
> claim or cause of action against Strand or against any Employee other than with respect to
> actions taken, respectively, by Strand or by such Employee from the date of appointment
> of the Independent Directors through the Effective Date.  The Bankruptcy Court will have
> sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable
> and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have
> jurisdiction to adjudicate the underlying colorable claim or cause of action.

Plan, Dkt. 1808 at Art.IX.F.

11.     The Plan defined "Protected Parties," as used in the Gatekeeper Clause, to mean

"(i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and

the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the

Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official

capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi)

the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their

official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the

Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of

the parties listed in (iv) through (xv) . . . ."  Plan, Dkt. 1808 at Art.I.B.105.

5

## II.     NexPoint Appeals the Confirmation Order, and the Fifth Circuit Reverses in Part

12.     NexPoint and various other parties appealed the Court's Confirmation Order.  *See* Dkts. 1957, 1966, 1970, 1972.  On March 16, 2021, the Court issued an order certifying those appeals for direct appeal to the Fifth Circuit.  Dkt. 2034.

13.     In its appeal, NexPoint argued, among other things, that the Plan's Protection Provisions impermissibly exculpated and protected non-debtors in violation of Bankruptcy Code § 524(e) and the Fifth Circuit's holding in *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009). *In re Highland Cap. Mgmt., L.P.*, No. 22-10449 (5th Cir.), Dkt. 92 at 25–38.  The Fifth Circuit issued its initial opinion in the appeal on August 19, 2022.  *In the Matter of Highland Cap. Mgmt., L.P.*, 2022 WL 3571094 (5th Cir. Aug. 19, 2022) ("Initial Opinion").  Writing for the Court, Judge Duncan summarized the Court's holding on the Protection Provisions as follows:

> [T]he Plan violates § 524(e) but only insofar as it exculpates and enjoins certain non-debtors.  The exculpatory order is therefore vacated as to all parties except Highland Capital, the Committee and its members, and the Independent Directors for conduct within the scope of their dues.  We otherwise affirm the inclusion of the injunction and gatekeeper provisions of the Plan.

*Id.* at *14.  Notably, in its Initial Opinion, the Fifth Circuit expressly rejected Highland's proffered justification (deterring "vexatious" litigation) for the non-debtor Protection Provisions.  *Id.* at *14 & n.19.

14.     On September 2, 2022, certain appellants—specifically, Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund, and NexPoint Capital, Inc. (the "Funds")—filed a motion for limited panel rehearing with respect to the Initial Opinion (the "Motion for Rehearing").  *In re Highland Cap. Mgmt., L.P.*, No. 21-10449 (5th Cir.), Dkt. 199.  In that Motion for Rehearing, the Funds explained their interpretation of the Initial Opinion to require the Bankruptcy Court to limit the Plan's Injunction Provision and Gatekeeper Clause co-extensively with the Exculpation Provision, such that all three provisions would protect only

CORE/9991000.8384/200512758.3

Highland, the Unsecured Creditors Committee and its members, and the Independent Directors. *Id.* at ¶ 4 (citing Initial Opinion at 27, 30 n.19). However, the Funds asked the Fifth Circuit to issue a "limited clarification" to ensure that the Bankruptcy Court interpreted the Initial Opinion in the same way. Specifically, the Funds expressed concern that the Fifth Circuit's use of the phrase "perfectly lawful" to describe the Injunction Provision and Gatekeeper Clause "might be argued to mean that the injunction and gatekeeper provisions – without any tailoring – are allowed to stand." *Id.* at ¶ 5 (citing Initial Opinion at 27). Accordingly, the Funds asked the Fifth Circuit to "narrowly amend the Opinion in order to confirm the Court's holding that the impermissibly exculpated parties are similarly struck from the protections of the injunction and gatekeeper provisions of the Plan . . . ." *Id.* at ¶ 6.

15.     On September 7, 2022, the Fifth Circuit granted the Funds' Motion for Rehearing. The Court withdrew its Initial Opinion and entered a revised opinion (also authored by Judge Duncan) (the "Amended Highland I Opinion") which, as requested, eliminated the sentence describing the Injunction Provision and Gatekeeper Clause as "perfectly lawful." *See In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022) ("*Highland I*").

### III.    Highland Files a Motion to Conform the Plan, and the Court Issues an Order Modifying Only the Plan Exculpation Provision

16.     Notwithstanding that the Fifth Circuit granted panel rehearing and gave the relief expressly requested by the Funds, on September 9, 2022, Highland filed a Motion to Conform Plan, in which it urged the Bankruptcy Court to modify and limit only the Exculpation Provision of the Plan. Dkt. 3503 at ¶¶ 9–11.

17.     The Funds filed a response, urging the Court to adopt the revised opinion of the Fifth Circuit issued on panel rehearing and arguing that the revised opinion required co-extensive modification of the Plan's Injunction Provision and Gatekeeper Clause. Dkts. 3539 at ¶¶ 17–20.

18.     On February 27, 2023, the Court issued a Memorandum Opinion on Reorganized

Debtor's Motion to Conform Plan ("<u>Order Conforming Plan</u>").   Dkt. 3671. In its Order

Conforming Plan, the Court rejected the Funds' argument and ordered a modification of the Plan

limited to narrowing the Exculpation Provision.   *Id.* at 13–19.

## IV.   NexPoint Appeals the Order Conforming Plan, and the Fifth Circuit Reverses and Remands

19.   To address any ambiguity as to the terms of the Plan to be revised in accordance

with the Amended Highland I Option and confirm the intent and meaning of the Fifth Circuit's

directive in *Highland I*, NexPoint sought leave to appeal, which the Fifth Circuit granted.   *In re*

*Highland Cap. Mgmt., L.P.*, No. 23-10534 (5th Cir.), Dkt. 1.

20.   On March 18, 2025, the Fifth Circuit issued its opinion reversing the Bankruptcy

Court's Order Conforming Plan.  *In re Highland Cap. Mgmt., L.P.*, 132 F.4th 353 (5th Cir. 2025)

("*Highland II*").   The Fifth Circuit summarized its holding succinctly in *Highland II* as follows:

> We conclude that the bankruptcy court failed to properly implement our
> instructions in *Highland I* when it declined to narrow the definition of
> 'Protected Parties' used in the Gatekeeper Clause to include only "(i) the
> Debtor; (ii) the Independent Directors, for conduct within the scope of their
> duties; (iii) the Committee; and (iv) the members of the Committee in their
> official capacities, for conduct within the scope of their duties."   In failing
> to make this change, the bankruptcy court exceeded its power under the
> Bankruptcy Code by allowing the Plan to improperly protect non-debtors
> from liability.

*Id.* at 358.[4]

21.   Highland filed petitions for rehearing and rehearing en banc, which the Fifth Circuit

denied on April 28, 2025.  *See In re Highland Cap. Mgmt., L.P.*, No. 23-10534 (5th Cir.) at Dkts.

79, 80, 83.

22.   Highland subsequently sought to stay issuance of the Fifth Circuit's mandate, first

by motion to the Fifth Circuit and, when that failed, by application to the Supreme Court of the

---

[4] Among the panelists was Judge Duncan, who authored both the Initial Opinion and the opinion on rehearing in *Highland II*.  *See id.* at 353.

CORE/9991000.8384/200512758.3

United States. *See id.*, Dkts. 84, 105, 114; *see also* Emergency Application for Stay of Mandate

and Judgment Pending the Filing and Disposition of a Petition for Writ of Certiorari and Request

for Immediate Administrative Stay, *Highland Cap. Mgmt., L.P. v. NexPoint Advisors, L.P.*, No.

24A1154 (S. Ct.). Although the Supreme Court initially issued an administrative stay, on June 9,

2025, the Court vacated the stay and denied Highland's application. *See In re Highland Cap.*

*Mgmt., L.P.*, Dkt. 23-10534 (5th Cir.), Dkt. 115.

23. Subsequently, the Fifth Circuit issued its Final Mandate in *Highland II* on June 13,

2025. *Id.*, Dkt. 118.

## RELIEF REQUESTED

24. By this Motion, NexPoint requests that the Court enter the Proposed Order attached

as Exhibit A granting the Motion and conforming the Plan to the Final Mandate, as ordered by the

Fifth Circuit.

25. As set forth above, the Plan currently defines "Protected Parties" as follows:

> Protected Parties" means, collectively, (i) the Debtor and its successors
> and assigns, (ii) the Employees, (iii) Strand, (iv) the Independent
> Directors, (v) the Committee, (vi) the members of the Committee (in
> their official capacities), (vii) the Professionals retained by the Debtor
> and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix)
> the Related Persons of each of the parties listed in (iv) through (viii) .
> . . .

Plan, Dkt. 1808 at Art. I.B.62.

26. The Fifth Circuit's Final Mandate requires this Court to "revise the Plan's

definitions of both 'Exculpated Parties' and 'Protected Parties' to read simply: 'collectively, (i)

the Debtor; (ii) the Independent Directors, for conduct within the scope of their duties; (iii) the

Committee; and (iv) the members of the Committee in their official capacities, for conduct within

the scope of their duties.'" Dkt. 4281 at 2.

27. In its prior Order Conforming Plan, the Court held that the term "Exculpated

Parties" should be narrowed to read as follows:

> "Exculpated Parties' means, collectively, (i) the Debtor, (ii) the Independent Directors, (iii) the Committee, and (iv) the members of the Committee (in their official capacities)."

Dkt. 3672 at 13–14.  Pursuant to the more recent Final Mandate, the definition of "Exculpated Parties" should be modified further to make clear that the Independent Directors are entitled to exculpation only "for conduct within the scope of their duties" and that the Committee Members are entitled to exculpation only "in their official capacities, for conduct within the scope of their duties." *See* Final Mandate, Dkt. 4281 at 2.

28.     Accordingly, the term "Exculpated Parties" in the Plan should be revised and defined as follows: "'Exculpated Parties' means, collectively, (i) the Debtor; (ii) the Independent Directors, for conduct within the scope of their duties; (iii) the Committee; and (iv) the members of the Committee in their official capacities, for conduct within the scope of their duties."

29.     Likewise, the term "Protected Parties" should be modified so that the definition in the Plan reads as follows: "'Protected Parties' means, collectively, (i) the Debtor; (ii) the Independent Directors, for conduct within the scope of their duties; (iii) the Committee; and (iv) the members of the Committee in their official capacities, for conduct within the scope of their duties." Dkt. 4281 at 2.

## NOTICE

30.     Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Debtor; (b) the Office of the United States Trustee; (c) the Office of the United States Attorney for the Northern District of Texas; (d) counsel for the Official Committee of Unsecured Creditors and (e) parties requesting notice pursuant to Bankruptcy Rule 2002. NexPoint submits that, in light of the nature of the relief requested and Local Rule 9007-1(b), no other or further notice need be given.

CORE/9991000.8384/200512758.3

## **PRAYER**

**WHEREFORE**, NexPoint respectfully requests entry of an order, substantially in the form

attached hereto as **Exhibit A**, granting the Motion and the relief requested herein, and granting

NexPoint such other and further relief as the Court deems just and proper.

Respectfully submitted,

July 3, 2025

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas Bar No. 24036072
Christopher J. Harayda (pro hac pending)
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: CJ.Harayda@Stinson.com

*Counsel for NexPoint Advisors, L.P. and
NexPoint Asset Management, L.P. f/k/a
Highland Capital Management Fund
Advisors, L.P.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 3, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez

CORE/9991000.8384/200512758.3