

**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed July 21, 2025

United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | § <br> § Chapter 11 <br> § <br> § Case No. 19-34054-sgj11 <br> § <br> § |

**MEMORANDUM OPINION AND ORDER REGARDING STAY REQUESTS**
**[ADDRESSING DE ## 4326 & 4308]**

### I.  INTRODUCTION

This Order addresses the "Motion to Stay 9019 Order" filed July 17, 2025, by the Dugaboy Investment Trust (the "Dugaboy Stay Motion").  DE # 4326.  This Order also addresses a letter sent to this court by Texas Attorney General Ken Paxton, which letter was dated July 9, 2025, and was docketed on July 10, 2025, at DE # 4308 (the "Texas AG Letter"). This court will sometimes refer to the Dugaboy Stay Motion and the Texas AG Letter jointly as the "Stay Requests."

<u>The Dugaboy Stay Motion</u>. The Dugaboy Stay Motion was filed by the Dugaboy Investment Trust ("Dugaboy"). Dugaboy is a trust whose beneficiaries are James Dondero and his children/descendants. Mr. Dondero is a co-founder and former CEO of the above-referenced Reorganized Debtor ("Highland" or Reorganized Debtor"). As later discussed, Dugaboy was a former owner of a *de minimis* equity interest in Highland (less than .5%). The Dugaboy Stay Motion asks the bankruptcy court to stay **for 90 days** the court's June 30, 2025 "Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith" (the "Rule 9019 Settlement Order"). DE # 4297. The Rule 9019 Settlement Order approved a settlement ("Settlement Agreement") between the Reorganized Debtor (and certain post-confirmation plan trusts), on the one hand, and Hunter Mountain Investment Trust ("HMIT" or "Hunter Mountain") and certain of its affiliates, on the other. **Hunter Mountain was the 99.5% equity owner of Highland**. Dugaboy desires a 90-day stay of the Rule 9019 Settlement Order so that Dugaboy and other parties can investigate what it asserts was a fraud committed by an individual named Mark Patrick in connection with a Cayman Islands charitable foundation structure ("Cayman Islands Charitable Foundation Structure") that Mark Patrick manages. There are currently liquidation proceedings ongoing in the Cayman Islands, involving this Cayman Islands Charitable Foundation Structure, where these fraud allegations have been raised and presumably will be litigated. *See* Exh. A to the Dugaboy Stay Motion (which is an 83-page Writ of Summons and Statement of Claim filed on or about July 15, 2025, in the Grand Court of the Cayman Islands (the "Cayman Islands Action").

***What on earth does this litigation in the Cayman Islands have to do with the Rule 9019 Settlement Order (and the underlying Settlement Agreement approved therein)?*** Well, as it turns out, this same Mark Patrick that is being accused of fraud in the Cayman Islands Action signed the

Settlement Agreement (on behalf of the Hunter Mountain entities). *To be sure, the Hunter Mountain entities are not themselves charitable organizations*. Mark Patrick just happens to be a representative of both Hunter Mountain and the Cayman Islands charitable entities that are the subject of the Cayman Islands Action. Note that Dugaboy appealed this bankruptcy court's Rule 9019 Settlement Order on July 14, 2025. The Dugaboy Stay Motion is not a standard request for a stay pending appeal, pursuant to Fed. R. Bankr. Proc. 8007. Rather, a stay is sought, pursuant to Bankruptcy Code section 105, "to provide all stakeholders with time to investigate a motion under Rule 60 to vacate the [Rule] 9019 [Settlement] Order."[1]

<u>The Texas AG Letter</u>. The Texas AG Letter is not a properly filed motion. *See* Fed. R. Bankr. Proc. 5005. In any event, the court has considered it. It has a similar theme, only it asks for ***a stay of the entire bankruptcy proceedings*** (which are now more than four years post-confirmation). The Texas AG notes in his letter that, as the representative of the public's interest in charity, he is charged under Texas law with the power and duty to protect and enforce the public interest in nonprofit organizations, foundations, and charitable trusts.[2] The Texas AG Letter states that the Texas AG Office is investigating "persons and entities, some of whom are involved in this bankruptcy proceeding, in response to complaints"[3] and that "[o]ne of the complaints under investigation involves conduct allegedly taken by persons or entities during this bankruptcy proceeding."[4] The timing and statements in the Texas AG Letter suggest that the person being investigated is the same Mark Patrick addressed in the Dugaboy Stay Motion.

---

[1] Dugaboy Stay Motion, ¶ 3.
[2] Texas AG Letter, 1 (citing Tex. Prop. Code § 123.002 (authorizing the Attorney General to intervene in a "proceeding involving a charitable trust.") and *Tex. v. Veterans Support Org.*, 166 F. Supp. 3d 816, 820-21 (W.D. Tex. 2015)).
[3] Texas AG Letter, 1 (citing Tex. Bus. & Com. Code § 17.61).
[4] Texas AG Letter, 1.

Summary of Ruling. For the reasons set forth below, this bankruptcy court will not grant a stay. ***Whatever the misdeeds may or may not be of Mark Patrick, they are not sufficiently intertwined with the Highland bankruptcy estate (or the Settlement Agreement) to justify a stay***. Neither this bankruptcy case, nor the contested matter involving the Settlement Agreement, is a "proceeding involving a charitable trust." As further described herein, there happens to be a "proceeding involving a charitable trust" ongoing in the Cayman Islands. Mark Patrick is apparently accused of misdeeds therein. But, in the bankruptcy case, Mark Patrick is merely a signatory for a counter-party to a settlement agreement with the bankruptcy estate (that counter-party being the former 99.5% equity owner of Highland, namely Hunter Mountain). This court evaluated the Settlement Agreement in the manner that jurisprudence requires[5] (and weighed the evidence presented, including witness testimony from four witnesses). As noted, this court's Rule 9019 Settlement Order is now subject to appeal. This court determined that the Settlement Agreement was fair and equitable, within the range of reasonableness, and in the best interest of the Highland bankruptcy estate being administered under a confirmed plan with disinterested fiduciaries. The Stay Requests do not articulate a bona fide reason to stay the Rule 9019 Settlement Order or, for that matter, a bankruptcy case that is now more than four years past confirmation. Importantly, it would appear that the parties have other avenues to address any malfeasance of Mark Patrick *vis-à-vis* the liquidation proceedings involving the Cayman Islands Charitable Foundation Structure.

---

[5] *In re Jackson Brewing Co.,* 624 F.2d 599, 603 (5th Cir. 1980); *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015); *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.),* 119 F.3d 349, 356 (5th Cir. 1997); *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917-18 (5th Cir. 1995); *Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.),* 922 F.3d 323, 327 (5th Cir. 2019) (quoting *Cadle Co. v. Mims (In re Moore),* 608 F.3d 253, 263 (5th Cir. 2010)).

## II. THE RULE 9019 SETTLEMENT MOTION

On May 19, 2025, a Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith [DE # 4216] (the "Rule 9019 Motion") was filed by the Reorganized Debtor, the Highland Claimant Trust (the "Claimant Trust"), and the Highland Litigation Sub-Trust (the "Litigation Sub-Trust") (collectively, the "Highland Entities").[6]

The Rule 9019 Motion proposed a broad settlement (the aforementioned Settlement Agreement) that would resolve most of the remaining issues outstanding in the long-running Highland bankruptcy case. The other parties to the Settlement Agreement, besides the Highland Entities, were the so-called "HMIT Entities"—defined in the Settlement Agreement as Hunter Mountain Investment Trust, Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Atlas IDF, LP, and Atlas IDF GP, LLC. These HMIT Entities, other than Hunter Mountain itself, are affiliates of Hunter Mountain. As earlier noted, ***Hunter Mountain was the majority equity owner of Highland, prepetition.*** Hunter Mountain owned 100% of Highland's Class B & C limited partnership interests. This represented 99.5% of the overall equity of Highland. Hunter Mountain acquired all of Highland's Class B and Class C limited partnership interests (the "Class B/C Interests") in December 2015, from James Dondero (the aforementioned co-founder and former CEO of Highland—whose family trust Dugaboy is now wanting a stay); Mark Okada (another co-founder of Highland); and certain entities affiliated with them. These Class B/C Interests—again, held entirely by Hunter Mountain at this point—were categorized in Class 10 of Highland's confirmed Chapter 11 plan.

---

[6] The Claimant Trust and Litigation Sub-Trust are entities created pursuant to the confirmed Highland Chapter 11 plan, to handle various post-confirmation matters.

5

Among other things, the Settlement Agreement contemplated, in pertinent part: (a) the dismissal with prejudice of all pending litigation between and among the Highland Entities and the HMIT Entities (by way of example, Hunter Mountain had asserted claims for breach of fiduciary duty, conspiracy, and unjust enrichment against Highland and its new CEO, James P. Seery); (b) the disposition of bankruptcy estate claims asserted against certain of the HMIT Entities by the Claimant Trust and/or the Litigation Sub-Trust, and the assignment of the balance of the remaining estate claims to the HMIT Entities (by way of example, Highland had argued that Hunter Mountain owed Highland more than $57 million on a note payable to Highland); (c) the allowance of the Hunter Mountain Class 10 Interest in a fixed amount; (d) cash distributions to Hunter Mountain on account of its Class 10 Interest of about $10.5 Million, plus the assignment of an approximately $24 million note receivable owed to Highland known as the "Dugaboy Note," subject to certain conditions, set forth in the Settlement Agreement; and (e) the exchange of mutual general and broad releases and other protections consistent with the parties' intent to end all current, and avoid all future, litigation between and among them.

As previously mentioned, the current representative of Hunter Mountain is an individual named Mark Patrick. Mark Patrick assumed this role in March 2021, replacing an individual named Grant Scott. Mark Patrick was a long-time Highland employee. Mark Patrick had been employed by Highland as tax counsel since 2008. Mark Patrick had also provided personal tax advice to Mr. Dondero. In February 2021, as part of the Highland bankruptcy case, the employment contracts of many of Highland's employees, including Mark Patrick, were terminated. Mark Patrick, along with many other former back-office employees of Highland, thereafter became employees of a newly formed company called Skyview Group ("Skyview"), that provides middle and back-office services to various clients.

Apparently, Mark Patrick and Mr. Dondero (and/or perhaps others at Skyview) got into disagreements of some sort in mid-2024, and Mark Patrick is no longer employed at Skyview.

### III. THE OBJECTIONS TO THE RULE 9019 SETTLEMENT AGREEMENT

There were three objections to the Rule 9019 Settlement Motion/Settlement Agreement filed. Accordingly, the court presided over a contested evidentiary hearing on June 25, 2025 (the "Rule 9019 Settlement Hearing"). The court heard testimony from four witnesses: James Seery, Mark Patrick, James Dondero, and Patrick Daugherty. The court admitted documentary evidence as well.

<u>The Patrick Daugherty Objection.</u> One objection was filed by Patrick Daugherty (a former general counsel of Highland that has been in litigation for more than 15 years in several courts with Highland, Dondero, and others related to Highland) [DE # 4229]. Daugherty has already been paid on a large claim he was allowed in the Highland bankruptcy case but still has an unresolved, contingent, unsecured claim that is categorized in Class 8 of the confirmed Highland plan. Mr. Daugherty argued that the absolute priority rule and the Chapter 11 plan terms were being violated by the Settlement Agreement, since an equity interest (Hunter Mountain's Class 10 Interest) was receiving a distribution before Daugherty's Class 8 general unsecured claim. The court disagreed with these arguments, since Mr. Daugherty's unpaid, contingent Class 8 claim is highly speculative and has been fully reserved for, pending an ultimate hearing on the allowance of this claim. This Objection was overruled at the Rule 9019 Settlement Hearing.

<u>The Dugaboy Objection.</u> Another objection was filed by Dugaboy [DE # 4230]. As earlier noted, Dugaboy owned a very small amount of the equity in Highland—specifically, a .1866% share of the Class A limited partnership interests—and these Class A limited partnership interests, in turn, represented a merely .5% of the overall equity of Highland. Thus, Dugaboy owned well-

7

under 1% of the equity of Highland. These Class A interests were categorized in Class 11 of the confirmed Highland plan. Note that two other parties besides Dugaboy owned Class A equity interests in Highland: Strand Advisors, Inc. ("Strand") and Mark Okada directly and indirectly (the other co-founder of Highland). The Dugaboy objection essentially argued that the Settlement Agreement violated the confirmed Plan, the Claimant Trust Agreement and the Confirmation Order, without much more detail than this. The Dugaboy objection was surprising to this court, because Hunter Mountain and Dugaboy have seemed to be at all times friendly—seemingly in lockstep—throughout the Highland bankruptcy case. They have shared the same legal positions and the same legal counsel at times. On the day of the Rule 9019 Settlement Hearing, Dugaboy orally made additional arguments, beyond those made in its written objection. Specifically, Dugaboy argued that the existence of the Cayman Islands Action should cause the bankruptcy court to continue the Rule 9019 Settlement Hearing (which Cayman Islands Action is further discussed below). The court declined to continue the Rule 9019 Settlement Hearing, and Dugaboy's Objection was overruled at the hearing.

The Dallas Foundation Objection. Another objection ("Dallas Foundation Objection") to the Settlement was filed by The Dallas Foundation [DE # 4231] (the "Dallas Foundation"), on behalf of Empower Dallas Foundation ("EDF") and The Okada Family Foundation (the "Okada Foundation"), and Crown Global Life Insurance, Ltd. ("Crown,"), not individually, but solely in respect of Segregated Accounts 30218 & 30219 (collectively, for ease of reference, the "Dallas Foundation"). The Dallas Foundation argued that "the Settlement is potentially tainted by the actions of Mark Patrick, the apparent sole manager and director of the HMIT Entities."[7] It further stated that "upon information and belief, Mr. Patrick illicitly restructured *the ownership* of the

---

[7] Dallas Foundation Objection, ¶ 2.

8

HMIT Entities in a manner that seemed to facilitate the diversion of millions of dollars in assets from *the charitable entities that are the beneficial owners of the HMIT Entities*."[8]

What did this mean? How exactly does the Dallas Foundation factor into all of this? How was the Dallas Foundation a party-in-interest with standing to object to a settlement in the Highland bankruptcy case at this juncture? ***It did not purport to be a creditor or equity interest holder***. Rather, the Dallas Foundation was referring to itself as ***"a Beneficial Owner of the HMIT Entities."***[9] Since HMIT owns 99.5% of Highland, does the Dallas Foundation also consider itself an indirect beneficial owner of Highland? Suddenly this is mind-numbing.

Not to worry. The Dallas Foundation Objection further explained how it is a "Beneficial Owner" of Hunter Mountain. The explanation involves a complex charitable entity structure that is organized in the Cayman Islands. One has to carefully follow the bouncing ball to make the connection.

### IV. THE CAYMAN ISLANDS CHARITABLE FOUNDATION STRUCTURE[10]

<u>DAF Holdco (a "corporate blocker")</u>. First, there is an entity called Charitable DAF HoldCo, Ltd. (the "DAF Holdco"), that is a Cayman Islands exempted company, incorporated on October 27, 2011, having its registered office at HSM Corporate Services Ltd, 68 Fort Street, George Town, PO Box 31726, Grand Cayman KY1-1207, that happens to currently be in liquidation proceedings in the Cayman Islands Action. The shares of DAF Holdco are divided into Participating Shares and Management Shares. DAF Holdco is apparently what's known as a "corporate blocker" in the Cayman Islands Charitable Foundation Structure. Mark Patrick has been the manager of it since March 2021.

---

[8] Dallas Foundation Objection, ¶ 2 (emphasis added).
[9] Dallas Foundation Objection, 4 (emphasis added).
[10] The following is gleaned from an Exbibit A attachment to the Dugaboy Stay Motion.

The DAF Fund. Second, DAF Holdco has historically been the sole limited partner of another entity called Charitable DAF Fund, LP (the "DAF Fund"). The DAF Fund is a Cayman Islands exempted limited partnership formed to invest and manage assets *for the ultimate benefit of three or four registered charitable organizations in the U.S., including the Dallas Foundation* (the "Charitable Entities").[11] The DAF Fund has sometimes been represented in filings (organizational charts) presented to the bankruptcy court as a Cayman Islands hedge fund. The general partner of the DAF Fund was historically Charitable DAF GP, LLC (the "DAF GP"), a Delaware limited liability company registered as a foreign company in the Cayman Islands. Mark Patrick has been the manager of DAF GP since March 2021.

CLO Holdco (another "corporate blocker"). Third, the sole asset of the DAF Fund is its 100% equity ownership in yet another entity called CLO HoldCo, Ltd. ("CLO HoldCo"), which is yet another Cayman Islands exempted company incorporated with limited liability, having its registered office address located at Campbells Corporate Services Limited, Floor 4, Willow House, Cricket Square, Grand Cayman KY1-9010, Cayman Islands. CLO HoldCo is another "corporate blocker" entity in the Cayman Islands Charitable Foundation Structure. *Interestingly, CLO HoldCo owns Hunter Mountain, and, as previously stated, Hunter Mountain was the 99.5% owner of Highland.*

It seems rather interesting that Highland—an alternative investment advisor (sometimes referred to as a hedge fund) that was managing billions of assets—was owned ultimately by an offshore structure designed for charitable purposes. However, this court has no expertise as to

---

[11] The Charitable Entities of which this court is aware are: The Dallas Foundation, The Greater Kansas City Foundation, The Santa Barbara Foundation, and the Community Foundation of North Texas (the "Charitable Entities" or sometimes the "Participating Shareholders"). The court has every reason to believe that these are respectable organizations dedicated to supporting charitable causes in their communities. The court has never heard anything to the contrary. Nothing herein should be construed as disparaging them in any way.

whether this is an unusual structure or one that is common to facilitate/enhance tax-exempt ownership and charitable giving. The court is simply presenting the information available to it that it thinks explains why a stay is not appropriate here: namely, *since other litigation exists involving Mark Patrick and the Charitable Entities*.

In any event, structurally, the three or four Charitable Entities (including the Dallas Foundation) are the ultimate beneficial owners of Participating Shares in DAF Holdco (one of the "corporate blockers"). This essentially means that the Charitable Entities are at the top of the whole structure.

The documentation supporting this whole structure apparently requires that the Participating Shareholders (i.e., the Charitable Entities such as the Dallas Foundation) must at all times qualify as a tax-exempt organizations, pursuant to section 501(c)(3) of the United States Internal Revenue Code of 1986 ("IRC"). The Participating Shares do not have voting rights but have the right to participate in the profits or assets of the DAF Holdco. Meanwhile, the Management Shares (which have been held by Mark Patrick) have voting rights but do not have the right to participate in the profits or assets of the DAF Holdco. In other words, the Participating Shareholders have the entirety of the economic interest in DAF Holdco, whereas the sole Management Shareholder has the control rights.

Bottom line, the Dallas Foundation argued that they had reason to believe that Mark Patrick engaged in some illicit actions recently that changed up some of the structure set forth above (i.e., including the insertion of newly created entities into the DAF Fund's structure). *As a result, the Dallas Foundation feared that a significant portion of the economic interests derived by the HMIT Entities from the Settlement Agreement would flow to Mark Patrick rather than to the Charitable Entities for whose benefit the DAF Fund was established*. The Dallas Foundation

questioned Mark Patrick's requisite corporate authority to cause the HMIT Entities to enter into the Settlement Agreement. The Dallas Foundation asserted that many of Mark Patrick's alleged actions, including the apparent insertion of newly created entities into the DAF Fund's structure, would be subject to claw back or other avoidance actions in the Cayman Islands Action or such other tribunal as has jurisdiction. The Dallas Foundation wanted the bankruptcy court to defer to that process.

Significantly, the Dallas Foundation withdrew its objection the morning of the June 25, 2025 Rule 9019 Settlement Hearing. It made its announcement through counsel on the record at the hearing.

### V. THE RULE 9019 SETTLEMENT HEARING

After hearing evidence and argument on June 25, 2025, the court approved the Settlement Agreement. Bankruptcy Rule 9019 provides that "[o]n motion … and after notice and a hearing, the court may approve a compromise or settlement."[12] Settlements are favored in the bankruptcy context to "minimize litigation and expedite the administration of a bankruptcy estate."[13] The approval of a settlement is within the "sound discretion" of the trial court.[14] Pursuant to Bankruptcy Rule 9019(a), the court may approve a settlement if it is fair, reasonable, and in the best interests of the estate.[15] A settlement should be approved unless it falls below the lowest point in the range of reasonableness, based on a comparison between the terms of the settlement and the costs and benefits of further litigation.[16]

---

[12] Fed. R. Bankr. Proc. 9019(a).
[13] *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).
[14] *In re Jackson Brewing Co.*, 624 F.2d 599, 603 (5th Cir. 1980).
[15] *See, e.g., Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015).
[16] *See, e.g., Jackson Brewing Co.,* 624 F.2d at 602 (court must compare the "terms of the compromise with the likely rewards of litigation"); *Cook v. Waldron,* 2006 U.S. Dist. LEXIS 31411, at *10 (S.D. Tex. April 18, 2006) (court should "canvass the issues" to decide if settlement falls "below the lowest point in the range of reasonableness").

In evaluating a proposed settlement, courts consider (i) the "probability of success in the litigation, with due consideration for the uncertainty in fact and law," (ii) the "complexity and likely duration of the litigation and any attendant expense, inconvenience and delay," and (iii) "[a]ll other factors bearing on the wisdom of the compromise."[17] Assessing the first factor—success on the merits—does not require a "mini-trial" on the merits.[18] The "other factors" include "the best interests of the creditors, 'with proper deference to their reasonable views,'" as well as "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'"[19]

A trustee or other estate representative also "is permitted to settle lawsuits pursuant to section 363(b)" of the Bankruptcy Code.[20] Section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[21] A sale involving a transaction outside the ordinary course of business "'must be supported by an articulated business justification, good business judgment, or sound business reasons.'"[22]

The court determined, based on this jurisprudence, that the factors to be considered pursuant to Bankruptcy Rule 9019 and Bankruptcy Code section 363(b) weighed in favor of approving the Settlement Agreement in this case. The Highland Entities believed they had strong and meritorious defenses to all of the then-pending HMIT litigation, and history has shown that defending the then-pending HMIT litigation, including the appeals that could result therefrom,

---

[17] *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997) (quoting *Jackson Brewing Co.,* 624 F.2d at 602).
[18] *Cajun Elec. Power Coop.*, 119 F.3d at 356.
[19] *Id.* (quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917-18 (5th Cir. 1995)).
[20] *Id.* at 354.
[21] 11 U.S.C. § 363(b)(1).
[22] *Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.)*, 922 F.3d 323, 327 (5th Cir. 2019) (quoting *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010)).

13

would be costly, time-consuming and value-destructive to the estate and creditor recoveries. Further, there was no guarantee that the Highland Entities would continue to be successful in defending the then-pending HMIT litigation—or that the HMIT Entities would not file additional litigation against the Highland Entities and their indemnified parties.

The second factor—complexity, duration, and costs of litigation—also weighed heavily in favor of approval of the Settlement Agreement. The cost of defending against the litigation in this case, including the then-pending HMIT litigation, had been significant. The litigation and its attendant costs have also significantly delayed and reduced distributions to the Reorganized Debtor's constituents. The HMIT litigation began in 2023 and is subject to at least two pending appeals which showed no signs of resolving absent this Settlement Agreement. If the Settlement Agreement was not approved, the Highland Entities would be faced with significant appellate litigation and potentially additional litigation in this court and other courts.

Third, approval of the Settlement Agreement was justified by the paramount interests of Highland's creditors and constituents. The Settlement Agreement resolved the pending HMIT litigation, resolved all disputes in connection with the HMIT Class 10 Interest; would sell, transfer, and assign the Estate Claims asserted in the so-called Kirschner Adversary Proceeding—which has been pending since 2021 (until it was stayed in 2023, at significant cost to the estate)—to the HMIT Entities; and would provide for broad mutual releases and a cessation of the litigation and acrimony that, in significant part, has delayed completion of the Plan and the overall bankruptcy case.

The preponderance of the evidence suggested that the Settlement Agreement was a rational exercise of the Highland Entities' business judgment and was negotiated in good faith and at arm's length.

The court signed the Rule 9019 Settlement Order on June 30, 2025 [DE # 4297].

Then, on July 17, 2025, Dugaboy filed the Dugaboy Stay Motion. This was preceded by the filing of the Texas AG Letter on July 10, 2025. As earlier noted, both of these Stay Requests urge that this court should halt things while they or others investigate matters that should be hashed out in the Cayman Islands Action. The Dugaboy Stay Motion says this

> is necessary to provide all stakeholders with time to investigate a motion under Rule 60 to vacate the 9019 Order (and all resulting orders, such as the dismissals effected as a result of the 9019 Order) in light of evidence suggesting that the settlement approved by this Court was a key element of [Mark Patrick's] alleged fraudulent scheme. Transfers of assets to companies controlled by Mr. Patrick must be halted, lest those assets are moved to companies "hard to find or track."[23]

## VI. DENIAL OF STAY REQUESTS

As noted earlier, the Dugaboy Stay Motion and the Texas AG Letter are not motions for stay pending appeal pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure. Dugaboy requests some sort of discretionary stay, for 90 days, while proceedings in the Cayman Islands Action go forward and, perhaps, reach a conclusion that improprieties by Mark Patrick occurred with regard to the Cayman Islands Charitable Foundation Structure. To be clear, the request is made by Dugaboy, whose party-in-interest status in the Highland estate is quite *de minimis*. The Texas AG apparently is of the impression (as a result of whomever filed a complaint with him) that this bankruptcy case, or the contested matter involving the Settlement Agreement, is a "proceeding involving a charitable trust." But that simply is not the case. While the assets of Hunter Mountain—remember, the former 99.5% equity owner of Highland—may ultimately be part of a *res* that indirectly benefits (or was intended to benefit) the Charitable Entities such as Dallas Foundation (as a result of the manner in which the Cayman Islands Charitable Foundation

---

[23] Dugaboy Stay Motion, ¶ 3.

15

Structure was designed), this does not mean that the Highland bankruptcy case is a proceeding involving a charitable trust. This court believes it applied the correct analysis required for a bankruptcy settlement. Nothing about the bankruptcy court's ruling impacts the Cayman Islands Action or the Texas AG actions it might seek to take on behalf of the Charitable Entities such as the Dallas Foundation. Accordingly,

**IT IS ORDERED** that the Stay Requests by Dugaboy and the Texas attorney general be, and hereby are, **DENIED.**

#### **#### END OF MEMORANDUM OPINION AND ORDER ####**