Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
Crawford, Wishnew & Lang PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500


Johnny Sutton
Ashcroft Sutton
919 Congress Avenue, Suite 1325
Austin, Texas 78701
(512) 370-1800 (phone)
(703) 247-5446 (fax)

jsutton@ashcroftlawfirm.com

*Counsel for The Dugaboy Investment Trust*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION



|  |  |  |
|---|---|---|
| *In re* | § | Chapter 11 |
|  | § |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
|  | § |  |
| Reorganized Debtor.[1] | § |  |
|  | § |  |

### THE DUGABOY INVESTMENT TRUST'S MOTION TO STAY 9019 ORDER

The Dugaboy Investment Trust ("Dugaboy") hereby files this Motion to Stay 9019 Order and

would respectfully show the court the following:

---

[1] The *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., (As Modified)* [Dkt. 1808] ("*Plan*"), filed by Highland Capital Management, L.P. ("*HCMLP*") became effective on August 11, 2021 (the "*Effective Date*").

## I.   SUMMARY OF MOTION

1.      On June 30, 2025, the Court signed its Order Pursuant to Bankruptcy Rule 9019 and

11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and

Authorizing Actions Consistent Therewith ("9019 Order") [Dkt. No. 4297]. Dugaboy files this

motion seeking a 90-day stay of the 9019 Order so that it and other parties can investigate the

allegations made in the recently filed request for a stay of all Highland bankruptcy proceedings made

by the Texas Attorney General, and the complaint (the "JOL Petition") the Joint Official Liquidators

("JOL") of Charitable DAF HoldCo LTD ("Holdco")filed on July 15, 2025, by. That Petition,

annexed hereto as Exhibit A, outlines a massive fraudulent scheme.

2.      According to the JOL Petition, Mark Patrick manipulated the ownership of the HMIT

entities to convert $270 million of assets and pay himself and co-conspiring professionals millions

that were supposed to be used for the benefit of the long-established charities, including assets

Dugaboy and its beneficiary, James Dondero, contributed to the Charitable DAF for the benefit of the

charities supported by Dugaboy. The Dallas Foundation, The Greater Kansas City Foundation, The

Santa Barbara Foundation, and the Community Foundation of North Texas (the "Charities" or the

"Participating Shareholders")  were left with nothing in favor of a new entity with no track record or

professional staff run out of Mr. Patrick's house.[2] This Court should stay any transfers of assets to

the control of Mr. Patrick, given that his express instructions to create a web of new entities that were:

"*Whatever from a strategic point of view - hard to find or track, or trace. Or find owners etc. Generic

name. Strong litigation protection.*" JOL Petition ¶ 82. A clearer indication of an intention to abscond

with assets could hardly be found.

---

[2] The interests of the charities are affected through supporting organizations who for ease of reference are
included in the definition of "Charities" and "Participating Shareholders" for the purposes of this Motion.

3.      The relief sought in this Motion is necessary to provide all stakeholders with time to investigate a motion under Rule 60 to vacate the 9019 Order (and all resulting orders, such as the dismissals effected as a result of the 9019 Order) in light of evidence suggesting that the settlement approved by this Court was a key element of the alleged fraudulent scheme.  Transfers of assets to companies controlled by Mr. Patrick must be halted, lest those assets are moved to companies "hard to find or track."

## II.    ARGUMENT

### A.    The Court Enters the 9019 Order Over the Objection of Dugaboy

4.      On May 19, 2025, a Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith [Docket No. 4216] (the "Motion") was filed by Highland Capital Management, L.P.'s ("Debtor" or "Highland"), the Highland Claimant Trust (the "Claimant Trust"), and the Highland Litigation Sub-Trust (the "Litigation Sub-Trust").

5.      Over the objection of several parties, including Dugaboy, on June 30, 2025, the Court signed its Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith ("9019 Order") [Dkt. No. 4297].

6.      At the hearing Dugaboy presented the Court with the letter request of the JOLs to stay the proceeding for 45 days pending their investigation, but the Court entered the 9019 Order. Transcript of Hearing on June 25, 2025 on 9019 Motion ("9019 Tr.") at 189:22-191:1.

### B.    The JOL Files a Complaint Alleging Illegal Acts by Mr. Patrick

7.      The JOL Petition makes serious allegations against Mr. Patrick.

8.      Specifically, the Complaint alleges that Mr. Patrick, a director and sole Management Shareholder of HoldCo, unbeknownst to the Charities (holders of the Participating Shares of HoldCo)

3

: (1) caused HoldCo to assign its interest in certain assets to a Delaware limited liability company formed and controlled by Mr. Patrick; (2) caused HoldCo to issue Participating Shares to a Delaware company incorporated and controlled by Mr. Patrick; (3) caused the Delaware limited liability company to redeem HoldCo's membership interest; and (4) caused HoldCo to be placed into voluntary liquidation after making a final distribution to the Participating Shareholders in HoldCo. JOL Petition at ¶¶ 6-6.4. These machinations are referred to in the JOL Petition and herein as the "restructuring."

9.      As the Complaint states, the restructuring was undertaken specifically to bring ownership of these assets, with a net value of $270 million (as of September 30, 2024), under Mr. Patrick's effective control, with the express purpose of leaving the Charities, as the original, and rightful, ultimate beneficiaries of the fund, with nothing. JOL Petition at ¶ 7. Mr. Patrick testified that the "entity in liquidation [Holdco] owns nothing," confirming the conversion at the hearing on the 9019 Motion. 9019 Tr. 185:18-24) (Dkt. No. 4296).

10.     In short, the JOL Petition details how Mr. Patrick caused HoldCo, originally the sole limited partner of Charitable DAF Fund, LP (the "Fund"), to sell off the Fund, with its $270 million in assets for $1.6 million, using manipulated and fraudulent valuations. JOL Petition ¶¶ 136-150.

11.     Showing just how difficult it was to achieve his false valuation, Mr. Patrick initially sought to have PwC, which had historically conducted valuations of the HoldCo's assets and which had as recently as late 2024 confirmed the $270 million valuation, conduct a post "restructuring" valuation that would discount the value of the assets sufficiently to justify the sale of the Fund for $1.6 million. JOL Petition ¶¶ 123-125.  PwC refused, saying it did not see a basis for the proposed discount. JOL Petition ¶125.

12.     Undeterred, Mr. Patrick and the professionals assisting him sought a valuation from FTI Consulting in London ("FTI"). Using the fact that the charities could not force distributions, FTI

authored a memo presuming one could assert a very small discount on the value of the Fund if the Charities were aligned with the Fund's mission, but a 95% discount if they were not. JOL Petition ¶¶ 126-128. Thus, if Mr. Patrick could arbitrarily say that the Funds were no longer aligned with the charities' missions (notwithstanding the fact that nothing had changed in the charities' missions) he could apparently say devalue the Fund. *Id.*

13. Indeed, the question Mr. Patrick's counsel posed to FTI was "would Mark still be able to shareholder structure to ensure the existing participating shareholders [the charities] got nothing?" JOL Petition ¶134. Ultimately, recognizing Mr. Patrick's clearly improper machinations, FTI refused to lift limits it had placed on use of its memo, cautioning Walkers, that its memo was "not a valuation" and could "not be used to support a transaction." JOL Petition ¶¶ 133, 135.

14. Thwarted by FTI, one of Mr. Patrick's United States counsel, Shields Legal, then asked a Dallas-based firm, Valuscope, to value the Fund, using a discounted cash flow ("DCF") analysis with a 99.2% discount for lack of control and an additional 20% discount for lack of marketability, with no justification for the use of a DCF analysis or either, let alone both, discounts. JOL Petition ¶¶ 139-45. This resulted in an astonishing purported 99.29% drop in the value of the assets in just a six-month period. On its face, this manipulation is fraudulent, but this is what was used to justify selling the Fund to an entity controlled by Mr. Patrick and owned by a new charity he owned and controlled for $1.6 million. That $1.6 million was distributed to the Charities, and then Mr. Patrick attempted to cover his tracks with an expedited voluntary liquidation process, controlled by Mr. Patrick's counsel with Kroll as the proposed liquidator, to sweep all of the wrongdoing under the rug. JOL Petition ¶ 151.

15. This effort was halted only because the Charities, not knowing of the pending liquidation effort, brought their own official liquidation proceeding in the Cayman Court. That

proceeding resulted in the JOL being appointed and Kroll and Walkers resigning as proposed

liquidators and counsel. JOL Petition ¶ 152-54.

16.     The JOL's investigation revealed that Mr. Patrick:

    a.  increased the Directors' fees from $40,000 per annum in 2022 to $600,000 in 2023
and to $2.25 million for just the first half of 2024. JOL Petition ¶ 85;

    b.  added a salary for himself of $850,000 a year in September 2024; and

    c.  added a provision for a "long term incentive" ("LTI") tied to the Funds returns
(when he is not a registered investment advisor, or any sort of financial advisor,
for that matter, but simply a tax lawyer). JOL Petition ¶ 86. The LTI was 7.5% of
the Funds returns over 10%, with a provision allowing for a greater bonus the more
he spent on legal fees. JOL Petition ¶ 86.3.

What's troubling is that the LTI created an incentive to increase legal spending through the

proliferation of lawyers and lawsuits, thereby increasing legal expenses and Mr. Patrick's personal

bonuses.

17.     Less than a month later, Mr. Patrick also gave himself an LTI payment of $975,000

and an annual discretionary bonus for 2023 of 2.5 times his annual salary. JOL Petition ¶¶ 87.1-87.2.

He also gave himself a retroactive LTI payment for the period March 2023 to March 2024 of $4.8

million and authorized additional annual and discretionary bonuses at his sole and absolute discretion.

*Id*. By contrast, the prior the prior controlling shareholder and director of Holdco and the Fund, Grant

Scott, during his entire tenure was paid $60,000 a year. JOL Petition ¶ 88.

18.     As a result, the JOL Petition alleges that Mr. Patrick's acts constitute breaches of

fiduciary duty and seek to have a receiver appointed. JOL Petition ¶¶ 160-81.

**C.     The 9019 Order Should Be Reevaluated in Light of the Allegations in the JOL
Complaint**

19.     These allegations are essential to evaluating or re-evaluating the 9019 Order for three

primary reasons. *First*, a change in control of HoldCo will affect not just HoldCo, but all the

companies owned and controlled by HoldCo, including Hunter Mountain and the entities that entered into the settlement agreement that is the subject of the 9019 Order.

20.     The JOL, if they are able to rescind all of the restructuring, and on these facts it certainly appears that they will be able to do so, will be able to appoint new controlling persons in all the former subsidiaries. Then, under honest management, seeking the best for the Charities, the subsidiaries will determine what transactions to ratify and which to rescind or reform. This Court should stay the effectiveness of the 9019 Order to minimize what must be reformed or rescinded.

21.     _Second_, the allegations in the JOL Petition set forth a pattern of behavior by Mr. Patrick with respect to these entities and his self-dealing that unquestionably leads to the conclusion that the same illegal behavior could well have taken place with respect to the 9019 Order and the related settlement agreement. The newly discovered communications detailed throughout the JOL Petition show the steps that Mr. Patrick engaged in to effectuate his scheme. The HMIT Settlement occurred over the same time period, making it a part of that scheme.

22.     _Third_, showing a real danger of manufactured evidence being used to justify the ends desired, Mr. Patrick purported to justify his actions by contending that Mr. Dondero was imperiling the charities' 501(c)(3) status (JOL Petition ¶ 146.1), using an opinion of counsel that post-dated all of the planning for the restructuring (JOL Petition ¶ 146.5). Creating an echo chamber of evidence, he himself made false reports to the IRS to attempt to imperil the charities' tax-exempt status. JOL Petition ¶¶ 113, 146.4. These acts demonstrate that Mr. Patrick's actions and testimony with respect to the 9019 Order must be examined and evaluated.

**D.     The Highland Entities Allowed These Illegal Acts to Proceed Uninvestigated**

23.     It is also important to note the Highland Entities' role in allowing their 9019 Motion to proceed and the 9019 Order to be entered in light of the above. While the Highland Entities claim they performed due diligence with respect to the transactions at issue in the 9019 Order, including the

authority of Mr. Patrick, to agree to the settlement agreement (9019 Tr. 97:12-17) (Dkt. No. 4296),

they did not know of the alleged improprieties raised above. Instead, they elected to look only at the

organizational documents (9019 Tr. 98:6-23) and ignored the Cayman proceeding, Mr. Seery was

"hesitant" to even say he was "generally" aware of the Cayman proceeding (9019 Tr. 98:24-99:1).

Moreover, with respect to Mr. Dondero's complaints about what Mr. Patrick was doing to the

Charities, counsel for the Highland Entities stated: "Mr. Patrick, I don't know what happened between

him and Mr. Dondero. I don't care. I have no knowledge of that." (9019 61:25-62:1) (Dkt. No. 4296).

The transcript evidences that the HCMLP entities ignored the Cayman proceeding to rush through the

9019 Settlement before evidence of the fraud could be presented to this Court.

> **E.      The Texas Attorney General Requests Additional Time to Investigate These Allegations**

24.      On July 9, 2009, the Office of the Texas Attorney General wrote a letter to the Court

asking the Court to enter a stay of this bankruptcy proceeding because it was investigating conduct

allegedly taken by persons or entities in this bankruptcy proceeding. Dkt. No. 4308. Upon information

and belief, Mr. Patrick and the entities he controls, as well as the 9019 Order, are the subject of this

investigation. This request of the Texas Attorney General is consistent with what Dugaboy seeks by

way of this motion and therefore Dugaboy urges the Court to follow this recommendation so that the

Texas Attorney General will have an adequate opportunity to address the illegal and inequitable

conduct by Mr. Patrick and his entities that are being investigated by the JOL.

25.      These allegations rise to the level of a basis for a Federal Rule of Civil Procedure 60

motion seeking reconsideration of the 9019 Order based on newly discovered evidence. *Hesling v.

CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) ("Rule 60(b)(2) provides that a court may relieve

a party from a final judgment based on 'newly discovered evidence which by due diligence could not

have been discovered in time to move for a new trial under Rule 59(b). Rule 60(b)(3) provides for

relief based on 'fraud . . . misrepresentation, or other misconduct of an adverse party,' and Rule

60(b)(6) further provides for relief based on 'any other reason justifying relief from the operation of

the judgment.' The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the

interest of the court in seeing that justice is done in light of the facts."). Entering a stay will preserve

the status quo so that interested parties may conduct a sufficient investigation.

### F. The Court Has the Power to Stay the 9019 Order for 90 Days.

26. Pursuant to Bankruptcy Code § 105(a), the Court "may issue any order . . . that is

necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

Moreover, the Supreme Court has held: [T]he power to stay proceedings is incidental to the power

inherent in every court to control the disposition of the causes on its docket with economy of time

and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of

judgment, which must weigh competing interests and maintain an even balance. *Landis v. N. Am. Co.*,

299 U.S. 248, 254-55 (1936).

27. This Court possesses broad discretion to grant stays, particularly where doing so is

unlikely to cause harm to any other party. *See, e.g., Fishman Jackson PLLC v. Israely*, 180 F. Supp.

3d 476, 483 (N.D. Tex. 2016) ("Courts have 'broad' discretion to grant stay[s] . . . especially when

there is not a 'fair possibility' that the stay 'will work damage to someone else.'"); *In re Ramu Corp.*,

903 F.2d 312, 318 (5th Cir. 1990) ("The stay of a pending matter is ordinarily within the trial court's

wide discretion to control the course of litigation . . . . This authority has been held to provide the

court the 'general discretionary power to stay proceedings before it in control of its docket and in the

interests of justice.'" (internal citations omitted)).

28. While stays should "not be immoderate or of an indefinite duration," *Fishman*, 180 F.

Supp. 3d at 483, courts routinely grant stays of six months where doing so promotes judicial

efficiency. *See, e.g., 14th St. Props., LLC v. S. Fid. Ins. Co.*, No. CV 22-1593, 2023 WL 416317, at

*1 (E.D. La. Jan. 26, 2023) (granting stay and administratively closing matter for six months due to

state insolvency proceedings); *Integrated Claims Sys., LLC v. Old Glory Ins. Co.*, No. 2:15CV-00412-
JRG, 2020 WL 1027771, at *1 (E.D. Tex. Mar. 3, 2020) (granting motion to stay for six months);
*Cleveland Air Serv., Inc. v. Pratt & Whitney Canada*, No. 4:13-CV-161-DMB-DAS, 2016 WL
4179987, at *2 n.3 (N.D. Miss. Aug. 5, 2016) (staying discovery for six months); *Maples v.
Donzinger*, No. CIV.A. 13-223, 2014 WL 688965, at *2 (E.D. La. Feb. 21, 2014) (granting a six
month stay).

29.     Courts have also granted stays which may only be lifted by the parties after a
determined time. *See, e.g., Scarborough v. Integricert, LLC*, No. 6-12-CV-00396, 2014 WL
12662272, at *3 (W.D. La. Apr. 4, 2014) ("Lastly, this Court's intention is not to stay the case for an
indefinite period. To the contrary, the Court will issue a stay for a period of one-hundred and twenty
days, at the end of which, either party may move to lift the stay upon a showing of good cause. Thus,
the stay will not last for an 'indefinite' period such as Scarborough fears.").

30.     Consistent with these authorities, the implementation of the 9019 Order should be
stayed for 90 days in the interests of judicial economy and efficiency in order to allow Dugaboy and
other interested parties sufficient time to investigate the allegations in the JOL Petition. A grant of
the requested stay will enable the Court to fairly evaluate the putative settlement between the
Highland Entities and the HMIT Entities.

31.     Additionally, a stay will benefit the Highland Entities, the HMIT Entities, and estate
stakeholders, not harm them. All parties undoubtedly want certainty regarding the legitimacy and
future enforceability of their actions and bargains. For example, if the Cayman Proceeding determines
that Mr. Patrick may retain his control position in the DAF and its subsidiaries, then such a decision
would likely remove any additional obstacles to the HMIT settlement. By contrast, if the Cayman
Proceeding subsequently determines that Mr. Patrick engaged in ultra vires acts or acted without

appropriate authority, that decision could throw the settlement, and all subsequent actions taken in furtherance of the settlement, into question.

32.     In sum, the Court has broad discretion to enter a stay of not more than six months (and the requested 90 days is half of what other courts have allowed) - which is neither "immoderate" nor "of an indefinite duration.." *Fishman*, 180 F. Supp. 3d at 483; *see also McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982) (vacating indefinite stay that could last for seven years or longer where trial court "gave no reason for such a protracted stay"). The requested stay serves the interests of judicial economy, ensures efficient management of this bankruptcy proceeding, and is in the best interests of the parties to the putative settlement and all remaining stakeholders.

33.     Therefore, Dugaboy requests that the Court adhere to the request by the Texas Attorney General and stay the 9019 Order for 90 days so that these newly discovered allegations can be investigated by Dugaboy and other stakeholders and a determination can be made as to whether a FRCP 60 motion is necessary.

### III.    CONCLUSION

For the foregoing reasons, Dugaboy requests that the Court stay the 9019 Order for 90 days.


Respectfully submitted,

By: */s/Michael J. Lang*
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
Crawford, Wishnew & Lang PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

11

Johnny Sutton
Ashcroft Sutton
919 Congress Avenue, Suite 1325
Austin, Texas 78701
(512) 370-1800 (phone)
(703) 247-5446 (fax)
jsutton@ashcroftlawfirm.com

*Counsel for The Dugaboy Investment Trust*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 17, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/Michael J. Lang*
Michael J. Lang

# EXHIBIT A



**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 201 OF 2025 (      )**

**BETWEEN:**

**CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

<u>Plaintiff</u>

**AND**

| | |
|---|---|
| **(1)** | **MARK ERIC PATRICK** |
| **(2)** | **PAUL MURPHY** |
| **(3)** | **CDMCFAD, LLC** |
| **(4)** | **DFW CHARITABLE FOUNDATION** |
| **(5)** | **CDH GP, LTD. AS GENERAL PARTNER FOR AND ON BEHALF OF CHARITABLE DAF FUND, LP, AND IN ITS CAPACITY AS GENERAL PARTNER** |
| **(6)** | **CLO HOLDCO, LTD.** |

<u>Defendants</u>

---

**WRIT OF SUMMONS**

---

TO:    (1)    **MARK ERIC PATRICK** of 6716 Glenhurst Drive, Dallas, Texas, 72554, United States of America

THIS WRIT was issued by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83527361)

(2)      **PAUL MURPHY** of Windsor Village #24, South Church Street, Grand Cayman, Cayman Islands

(3)      **CDMCFAD, LLC** of c/o The Corporation Trust Company, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware, 1980, United States of America

(4)      **DFW CHARITABLE FOUNDATION** of c/o The Corporation Trust Company, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware, 1980, United States of America

(5)      **CDH GP, LTD. AS GENERAL PARTNER FOR AND ON BEHALF OF CHARITABLE DAF FUND, LP, AND IN ITS CAPACITY AS GENERAL PARTNER** of c/o Campbells Corporate Services Limited, Floor 4, Willow House, Cricket Square, Grand Cayman KY1-9010, Cayman Islands

(6)      **CLO HOLDCO, LTD.** of c/o Campbells Corporate Services Limited, Floor 4, Willow House, Cricket Square, Grand Cayman KY1-9010, Cayman Islands

THIS WRIT OF SUMMONS has been issued against you by the above-named Plaintiff in respect of the claim set out on the next page.

Within 14 days after the service of this Writ on you, counting the day of service, or, if you are served out of the jurisdiction, within such other period of time as the Court may order, you must either satisfy the claim or return to the Registrar of the Financial Services Division, Court Office, PO Box 495, George Town, Grand Cayman, KY1-1106, Cayman Islands, the accompanying Acknowledgment of Service stating therein whether you intend to contest these proceedings.

If you fail to satisfy the claim or to return the Acknowledgment within the time stated, or if you return the Acknowledgment without stating therein an intention to contest the proceedings, the Plaintiff may proceed with the action and judgment may be entered against you forthwith without further notice.

Issued this 15th day of July 2025

NOTE - This Writ may not be served later than 4 calendar months (or, if leave is required to effect service out of the jurisdiction, 6 months) beginning with the date of issue unless renewed by order of the Court.

**IMPORTANT**

Directions for Acknowledgment of Service are given with the accompanying form

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 201 OF 2025 (  )**

**BETWEEN:**

**CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

<u>Plaintiff</u>

**AND**

| | | |
|---|---|---|
| (1) | **MARK ERIC PATRICK** | |
| (2) | **PAUL MURPHY** | |
| (3) | **CDMCFAD, LLC** | |
| (4) | **DFW CHARITABLE FOUNDATION** | |
| (5) | **CDH GP, LTD. AS GENERAL PARTNER FOR AND ON BEHALF OF CHARITABLE DAF FUND, LP, AND IN ITS CAPACITY AS GENERAL PARTNER** | |
| (6) | **CLO HOLDCO, LTD.** | |

<u>Defendants</u>

---

**STATEMENT OF CLAIM**

---

**INTRODUCTION**

1      The Plaintiff, Charitable DAF HoldCo, Ltd (in Official Liquidation) (the "**Company**"), is a Cayman Islands exempted company, incorporated on 27 October 2011, having its registered office at HSM Corporate Services Ltd, 68 Fort Street, George Town, PO Box 31726, Grand

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

Cayman KY1-1207. The authorised and issued share capital of the Company is divided into Participating Shares and Management Shares.

2      The Company was placed into court supervised liquidation and Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Limited were appointed as joint official liquidators (the "**JOLs**") pursuant to an order of this Honourable Court dated 6 May 2025.

3      The Company was, between November 2011 and 18 December 2024, the sole limited partner of Charitable DAF Fund, LP (the "**Fund**").  At all relevant times, the net asset value of the Fund's assets was c. US$270million.

4      The Fund is a Cayman Islands exempted limited partnership formed to invest and manage assets for the benefit or ultimate benefit of certain registered charitable organisations in the U.S. namely The Dallas Foundation; the Greater Kansas City Community Foundation; the Santa Barbara Foundation and The Community Foundation of North Texas (the "**Charities**"). These charities are the owners or the ultimate beneficial owners of Participating Shares in the Company.

5      In March 2021, Mark Patrick (the "**First Defendant**") was appointed the sole director and registered as the sole Management Shareholder of the Company.  In April 2021, Paul Murphy (the "**Second Defendant**") was appointed by the First Defendant as a second director of Holdco.

6      By virtue of a series of transactions or purported transactions between March 2024 and March 2025, unbeknownst to the holders of the Participating Shares (the "**Participating Shareholders**") of the Company, Mr Patrick caused:

6.1     the Company, with the agreement and concurrence of Mr Murphy, to assign its interest in the Fund to the Third Defendant, a Delaware limited liability company, formed in

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

2

December 2024 and controlled by Mr Patrick, in exchange for a membership interest in that entity;

6.2     the Company, with the agreement and concurrence of Mr Murphy, to issue and allot further Participating Shares (representing a majority of the issued participating share capital) to the Fourth Defendant, a Delaware company, incorporated in December 2024 and controlled by Mr Patrick;

6.3     the Third Defendant to redeem the Company's membership interest in the Third Defendant for a consideration of c. US$1.6 million, representing approximately 0.59% of the total net asset value of the assets held by the Fund; and

6.4     the Company, with the agreement and concurrence of Mr Murphy, to be placed into voluntary liquidation after having made a final distribution to all Original Participating Shareholders (defined below) in the Company of the proceeds of redemption,

collectively the "**Impugned Transactions**".

7     The First and Second Defendants effected the Impugned Transactions in breach of their fiduciary and other duties to the Company in order to bring ownership of the Fund and its assets, with a net value of c. US$270 million (as assessed at 30 September 2024), under Mr Patrick's effective control to the exclusion of the interests of the Charities. The Charities, as the original, and rightful, ultimate beneficiaries of the Fund, have been left with nothing.

8     Further, during the period March 2021 to June 2024, the First and Second Defendants, in breach of fiduciary duty, caused the Company to pay excessive fees and expenses to Mr Patrick.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

3

**THE PARTIES**

<u>The Company</u>

9 The Company is a Cayman Islands exempted company, incorporated on 27 October 2011, having its registered office at HSM Corporate Services Limited, Ltd, 68 Fort Street, George Town, PO Box 31726, Grand Cayman, KY1-1207, Cayman Islands.

10 The directors of the Company are Mr Patrick (appointed on 25 March 2021) and Mr Murphy (appointed by Mr Patrick on 22 April 2021).

11 The Company has been governed by the following memorandum and articles of association from time to time:

11.1 The memorandum and articles of association dated 27 October 2011; and

11.2 The amended and restated memoranda and articles of association dated 19 January 2015; 24 January 2024; and 20 February 2025 respectively.

The Company remains governed by the memorandum and articles of association as amended and restated on 20 February 2025 (the "**Articles**") save that the Company reserves the right to challenge the validity of the Articles.

12 Save as set out above, the Company will rely on the Articles and all previous iterations for their applicable full terms and effect.

13 Pursuant to the Articles and at all relevant times, the authorised share capital of the Company was US$50,000 divided into 100 Management Shares of US$0.01 par value each and 4,999,900 Participating Shares of US$0.01 par value each.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

4

14    The Articles (with reference to the defined term of 'Restricted Person') require that the Participating Shareholders must at all times qualify as a tax-exempt organisation pursuant to section 501(c)(3) of the United States Internal Revenue Code of 1986 ("**IRC**").

15    The Participating Shares do not have voting rights but confer the right to participate in the profits or assets of the Company including by way of the receipt of dividends (Article 12).

16    The Management Shares have voting rights but confer no other right to participate in the profits or assets of the Company (Article 11).

17    The Participating Shareholders therefore have the entirety of the economic interest in the Company, whereas the Management Shareholders have the control rights.

18    On 7 November 2011, the Company issued:

18.1    300 Participating Shares to The Highland Capital Management Partners Charitable Trust #2 ("**Trust #2**"); and

18.2    100 Management Shares to Grant Scott.

19    On 30 November 2011, Trust #2 transferred its 300 Participating Shares equally amongst:

19.1    Highland Kansas City Foundation, Inc.;

19.2    Highland Dallas Foundation, Inc.[1]; and

19.3    Highland Santa Barbara Foundation, Inc.,

collectively, the "**Supporting Organisations**".

---

[1] Since June 2024, Highland Dallas Foundation, Inc. has also done business as 'NexPoint Philanthropies Dallas, Inc.', per an Assumed Name Certificate filed with the Secretary of State of Texas.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

5

20    On 12 August 2015, the Company issued 5 Participating Shares to the Community Foundation of North Texas, ("**CFNT**", and together with the Supporting Organisations the "**Original Participating Shareholders**") for Highland Capital Management, L.P. Charitable Fund at CFNT.

21    On 25 March 2021, the Management Shares were transferred to Mr Patrick and he continues to hold these shares.

22    The Participating Shares held by the Original Participating Shareholders represented the entire issued Participating Share capital of the Company until 7 February 2025. On that date, Mr Patrick, with the agreement and concurrence of Mr Murphy, caused the Company to issue 318 Participating Shares to the Fourth Defendant, DFW Charitable Foundation ("**DFW**"), significantly diluting the shareholdings of the Original Participating Shareholders and the indirect economic interest of the Charities.

23    Until 18 December 2024, the sole asset of the Company was its limited partnership interest in the Fund (the "**Partnership Interest**").

24    As a result of the Impugned Transactions, the Company now has no material assets.

DFW

25    DFW (the Fourth Defendant) is a non-profit non-stock corporation incorporated in Delaware on 9 December 2024, which is organised under the General Corporation Law of the State of Delaware exclusively for charitable purposes.

26    DFW is the majority Participating Shareholder of the Company by virtue of the purported share issuance on 7 February 2025, and Mr Patrick is its registered director, president and sole member.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

6

The Fund

27      The Fund is a Cayman Islands exempted limited partnership formed on 28 October 2011
        (registration no. 53083), having its registered office at Campbells Corporate Services Ltd, Floor
        4, Willow House, Cricket Square, Grand Cayman, KY1-9010, Cayman Islands.

28      The Fund is governed by the Second Amended and Restated Exempted Limited Partnership
        Agreement dated 11 March 2024 (the "**LPA**"). The initial exempted limited partnership
        agreement of the Fund was dated 25 October 2011, was amended and restated on 7
        November 2011 and further amended on 26 July 2022 (with effect from 24 March 2021).  The
        Company will rely on the LPA for its applicable full terms and effect.

29      Mr Patrick was instrumental in the establishment of the Company, the Fund and the Fund
        structure.

30      Until 18 December 2024, the Company was the sole limited partner of the Fund.

31      On 18 December 2024, Mr Patrick, with the agreement and concurrence of Mr Murphy, caused
        the Company to transfer its limited partnership interest to CDMCFAD, LLC ("**CDM**") (the Third
        Defendant) in exchange for a membership interest in CDM.

32      The original general partner of the Fund was Charitable DAF GP, LLC (the "**Original GP**"), a
        Delaware limited liability company registered as a foreign company in the Cayman Islands.
        The Original GP was the general partner from the Fund's formation until 7 March 2024.

33      On 7 March 2024, the Original GP was replaced by CDH GP, Ltd. (the "**New GP**") (the Fifth
        Defendant).

34      The sole asset of the Fund is its 100% shareholding in CLO HoldCo, Ltd. ("**CLO HoldCo**") (the
        Sixth Defendant), a Cayman Islands exempted company incorporated with limited liability,

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is
PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref:
CJM/JRN/TQR/858403.000001/83559387)

7

having its registered office address located at Campbells Corporate Services Limited, Floor 4, Willow House, Cricket Square, Grand Cayman KY1-9010, Cayman Islands.

35      The assets of the Fund were valued at c. $270 million in September 2024.

The New GP

36      The New GP (the Fifth Defendant) is a Cayman Islands exempted company incorporated on 27 February 2024, having its registered office located at Campbells Corporate Services Limited, Floor 4, Willow House, Cricket Square, Grand Cayman KY1-9010, Cayman Islands.

37      Mr Patrick is the New GP's sole director and sole shareholder.

38      The New GP is a defendant to these proceedings in two capacities: (i) in its capacity as General Partner; and (ii) for and on behalf of the Fund in order to join the Fund as a defendant to these proceedings.

CDM

39      CDM (the Third Defendant) is a limited liability company incorporated in Delaware on 12 December 2024, having its registered address c/o The Corporation Trust Company, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware, 19801.

40      CDM is governed by the terms of a Limited Liability Company Agreement dated 18 December 2024.

41      Since 18 December 2024, the primary asset of CDM has been the limited partnership interest in the Fund.

42      The sole manager of CDM is Mark Patrick.

43      From 18 December 2024 to 27 March 2025, the sole member of CDM was the Company.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

8

44      On 27 March 2025, Mr Patrick caused CDM to redeem the Company and admit DFW as the
        sole participating member.

CLO HoldCo

45      CLO HoldCo (the Sixth Defendant) is a Cayman Islands exempted company incorporated on
        13 December 2010, having its registered office address located at Campbells Corporate
        Services Limited, Floor 4, Willow House, Cricket Square, Grand Cayman KY1-9010, Cayman
        Islands, and which is the Fund's main subsidiary.

46      The directors of CLO Holdco are Messrs Patrick and Murphy.

47      The sole shareholder of CLO Holdco is the Fund.

The Directors

*Mark Patrick*

48      Mr Patrick (the First Defendant) is a U.S. resident who is:

        48.1    a director, holds the offices of (i) President, (ii) General Counsel, and (iii) Chief
                Investment Officer and is the current Management Shareholder of the Company;

        48.2    the Manager of CDM (the Third Defendant);

        48.3    the sole director and the sole member of DFW (the Fourth Defendant);

        48.4    the sole director and sole shareholder of the New GP (the Fifth Defendant); and

        48.5    a director of CLO HoldCo (the Sixth Defendant).

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is
PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref:
CJM/JRN/TQR/858403.000001/83559387)

9

49      Mr Patrick was employed as tax counsel by Highland Capital Management, L.P. ("**Highland**")
        from 2008 to 2021 and as tax counsel by Highgate Consulting Group, Inc. d/b/a Skyview Group
        from March 2021 to October 2024.

*Paul Murphy*

50      Mr Murphy (the Second Defendant) is a Cayman Islands resident who is:

        50.1    a director of the Company;

        50.2    a director of CLO HoldCo (the Fifth Defendant); and

        50.3    a director of various other entities in the Charitable DAF structure.[2]

51      Mr Patrick and Mr Murphy are referred to herein as the "**Directors**".

**THE CHARITABLE PURPOSE OF THE FUND**

52      The Fund was formed on 28 October 2011 at the instigation of Mr James Dondero, a U.S.
        resident and the founder of Highland to enable certain assets, held through the shares in CLO
        Holdco, to be donated to a charitable foundation.

53      Upon the formation of the Fund, the Company was admitted as a limited partner and, by way
        of capital contribution, contributed all of the outstanding equity interests in CLO HoldCo to the
        Fund.

54      The purpose of the Fund was to make investments for the ultimate benefit of the Original
        Participating Shareholders and the Charities:

---

[2]Mr Murphy was appointed to the board of directors of the following entities on 22 April 2021; Liberty CLO Holdco, Ltd., Liberty Sub, Ltd.,
HCT Holdco 2, Ltd. and MGM Studios Holdco, Ltd. at the same time as Charitable DAF HoldCo, Ltd and CLO HoldCo, Ltd.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is
PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref:
CJM/JRN/TQR/858403.000001/83559387)

10

54.1   The recitals to the LPA of the Fund provide that the purpose of the Fund was to "*make certain investments directly or indirectly on behalf of certain entities exempt from taxation under section 501(c)(3) of the U.S. Internal Revenue Code … for the economic benefit of the Limited Partner and its Indirect Charitable Owners…*".

54.2   Clause 1.3 of the LPA provides that "*… the Partnership may make investments in other types of securities, investment vehicles and instruments in the sole discretion of the General Partner for the purpose of benefitting, directly or indirectly, the Indirect Charitable Owners*".

54.3   Clause 1.6(a) of the LPA provides that "*the Partnership's assets and investments shall be for the benefit of the Limited Partners and not for the economic benefit of the General Partner*".

54.4   "Indirect Charitable Owners" is defined in the LPA as "*the indirect equity owners of the Limited Partners which shall at all times be entities or organizations exempt from taxation under Section 501(c)(3) of the Code or entities or organizations whose sole beneficiaries are entities or organizations exempt from taxation under Section 501(c)(3) of the Code.*" i.e., the Company's Participating Shareholders or the Charities.

54.5   Clause 4.2(a) of the LPA provides that "*Distributions shall be made to the Limited Partner at the times, in a manner (including in kind) and in the aggregate amounts determined by the General Partner, after taking into consideration available cash and the needs of the Indirect Charitable Owners of the Limited Partner for funds to cover their administrative and operating expenses…*".

54.6   The LPA does not modify the statutory duty of the General Partner to act in good faith and in the interests of the Fund.

55   The Charities are the following four US charitable or non-profit foundations:

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

11

55.1    *The Dallas Foundation*: a charitable entity established in Texas in 1929 which has awarded over $1 billion in grants and manages over $500 million in assets.

55.2    *Greater Kansas City Community Foundation*: a charitable entity established in Missouri in 1978 which has awarded over $7 billion in grants and manages over $6 billion held in charitable funds.

55.3    *Santa Barbara Foundation*: a charity established in 1928 which is the largest community foundation on California's Central Coast and manages assets of over $800 million.

55.4    *North Texas Community Foundation*: which manages assets totalling $513 million and donated $38.9 million to local non-profits in 2023.

56    The Dallas Foundation, Greater Kansas City Community Foundation and Santa Barbara Foundation (the "**Supported Organisations**") hold their interests in the Company through their respective Supporting Organisation namely Highland Dallas Foundation, Inc. as the Supporting Organisation for The Dallas Foundation; Highland Kansas City Foundation, Inc. as the Supporting Organisation for the Greater Kansas City Community Foundation; Highland Santa Barbara Foundation, Inc as the Supporting Organisation for the Santa Barbara Foundation.

57    CFNT holds its Participating Shares in the Company directly.

**THE TAX STRUCTURE**

58    As a matter of U.S. tax law, in order for the Supported Organisations to benefit from distributions from the Fund in a tax efficient manner, it was necessary for them to hold their interests through an offshore corporate blocker entity, namely the Company:

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

12

58.1    S501(c)(3) of the IRC provides that charitable organisations which meet certain criteria are exempt from state and federal taxes except to the extent that it receives income classified as unrelated business taxable income ("**UBTI**"); and

58.2    the Supported Organisations and their Supporting Organisations meet the criteria of s501(c)(3). They are therefore generally exempt from U.S. state and federal taxes, with a few exceptions, including to the extent that they receive UBTI.

59    As a matter of U.S. tax law, at least a portion of income received directly from the Fund by the Supported Organisations would likely be considered UBTI.

60    In order to insulate the Supported Organisations from UBTI, instead of holding their interest in the Fund directly, they held through an offshore corporate blocker structure, namely the Company.

**THE SUPPORTED ORGANISATIONS CONTROL THE SUPPORTING ORGANISATIONS**

61    The Supporting Organisations were incorporated in Delaware by Mr Dondero on or about 22 November 2011 for the purpose of making charitable donations to their respective charity from the proceeds of dividends received by the Supporting Organisations from the Company.

62    Supporting organisations under the IRC are tax exempt charitable organisations that provide financial or operational support to one or more public charitable organisations (called "supported organisations"). Because of the link with the supported public charities, supporting organisations are classified as public charities themselves, as opposed to private foundations, despite the fact that a supporting organisation's sources of funding may be limited to a single individual, which would otherwise cause the entity to be classified as a private foundation.

63    Contributions to supporting organisations, as public charities, qualify for the highest tax deductibility thresholds under the IRC (up to 50% of the taxpayer's adjusted gross income, or

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

13

60%, in the case of cash gifts) instead of the substantially lower threshold for contributions to private foundations (30% of adjusted gross income, regardless of the character of the contribution).

64    The Supporting Organisations are "Type I" tax exempt organisations under the IRC which means they must be organised and operated exclusively to support and benefit their relevant charity and controlled by that charity:

64.1    S509(a)(3) of the IRC contains the qualifications for a "supporting organisation". Under that section, a supporting organisation is a tax-exempt entity that must be organised and then operate exclusively for either (i) the benefit of, (ii) to perform the functions of, or (iii) to carry out the purposes of one or more supported organisations. The supported organisations must also be s501(c)(3) entities;

64.2    There are three types of supporting organisations, known as "Type I", "Type II" and "Type III". S509(a)(3)(B)(i), (ii) and (iii) sets out the requirements for each "Type", respectively;

64.3    S509(a)(3)(B)(i) provides that a Type I supporting organisation must be operated, supervised or controlled by the supported organisation; and

64.4    S509(a)(3)(C) provides that the supporting organisation may not be controlled by a disqualified person, other than the foundation managers and the supported organisation.

65    The Supporting Organisations are so controlled by the respective Supported Organisations.

66    The Supporting Organisations are governed by the terms of their respective Certificate of Incorporation and by-laws (the "**Bylaws**").

67    The Certificates of Incorporation provide (amongst other things) that:

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

14

67.1    the Supporting Organisation:

(a)    is organised and shall be operated exclusively for charitable, educational and scientific purposes;

(b)    is organised and operated exclusively to support and benefit the particular charity that controls it; and

(c)    is a non-profit non-stock corporation and cannot issue any capital stock;

67.2    no part of the net earnings of the Supporting Organisation shall be distributable to the directors and officers of the Supporting Organisation or other private persons save that the Supporting Organisation can pay reasonable compensation for services rendered; and

67.3    net earnings can be used to make grants, loans and similar payments for charitable, educational and scientific purposes to benefit the relevant Supported Organisation.

68    The Bylaws provide that (amongst other things):

68.1    There are two classes of members of the Supporting Organisations with one member in each such class:

(a)    the institutional member (the "**Institutional Member**") which shall be the Supported Organisation; and

(b)    the individual member (the "**Individual Member**") which shall be Mr Dondero or an individual designated as the Individual Member in the Bylaws.

68.2    In terms of voting on a matter submitted to a vote of the members (except as otherwise provided in the Bylaws):

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

15

(a)     the Institutional Member is entitled to two votes; and

(b)     the Individual Member is entitled to one vote.

68.3    Institutional membership is not transferable or assignable.

68.4    Individual membership is transferable or assignable only upon approval of the Institutional Member.

68.5    Both the Institutional Member and the Individual Member must be present in person or by represented proxy to constitute a quorum at all meetings of members.

68.6    There shall be three directors of the board of the Supporting Organisation. Two directors shall be elected annually by the Institutional Member and one director shall be elected annually by the Individual Member.

69      The relationship between the Supporting Organisations and their respective Supported Organisation are governed by separate operating/legal relationship agreements (collectively "**Operating Agreements**"). These agreements provide, among other things, that:

69.1    the Supported Organisation will provide certain services to the Supporting Organisation;

69.2    the Supported Organisation will appoint two of the three directors of the Supporting Organisation as required by Bylaws; and

69.3    in consideration for the services provided by the Supported Organisation to the Supporting Organisation, the Supporting Organisation shall pay a fee to the Supported Organisation.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

16

70    Mr Dondero sits on the board of each of the Supporting Organisations with two other directors from each of the Supported Organisations respectively.

71    The relationships, rights and obligations created by and between the Supported Organisations and the Supporting Organisations pursuant to the agreements entered into between them were at all material times in summary that:

71.1    the Supported Organisations control the Supporting Organisations through their majority voting interest and their ability to elect a majority of the directors of the Supporting Organisations;

71.2    the Supporting Organisations support the Supported Organisations by way of making grants to them from time to time from their assets, including any dividends received from the Company;

71.3    the Supporting Organisations have no ability to pay dividends to any private person or make payments to their directors (save reasonable reimbursement for reasonable out-of-pocket expenses) and can only make grants to the relevant Charity in furtherance of their charitable purposes; and

71.4    while Mr Dondero sits on the board of the Supporting Organisations, he does not control them, as a supermajority of the votes are always held by the respective Charity.

72    The Company will rely on the Certificates of Incorporation, Bylaws, Operating Agreements and terms of the IRC for their applicable full terms and effect.

**THE CONTROL POSITION OF MR PATRICK OVER THE COMPANY AND THE FUND**

73    The terms of the LPA grant sole control over the management and distribution of the Fund's assets to the General Partner. The terms of the Articles grant sole control over the management and distribution of the Company's assets to the Management Shareholder.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

17

The LPA

73.1   Clause 1.12

(i)   The term "**General Partner**" shall refer to Charitable DAF GP, LLC, and each other person subsequently admitted as a general partner pursuant to the terms of this Agreement. The General Partner shall give each Limited Partner notice of any change in control of the General Partner. The General Partner shall give each Limited Partner notice of the admission of any additional general partner to the Partnership.

73.2   Clause 1.6

(i)   *Subject to the terms and conditions of this Agreement, the General Partner shall have full, exclusive and complete discretion in the management and control of the business and affairs of the Partnership, shall make all decisions regarding the business of the Partnership, and shall have all of the rights, powers and obligations of a general partner of a limited partnership under the laws of the Cayman Islands. Except as otherwise expressly provided in this Agreement, the General Partner is hereby granted the right, power and authority to do on behalf of the Partnership all things which, in the General Partner's sole discretion, are necessary or appropriate to manage the Partnership's affairs and fulfill the purposes of the Partnership; provided, however the Partnership's assets and investments shall be for the benefit of the Limited Partners and not for the economic benefit of the General Partner.*

(ii)   *Except as otherwise provided herein, the Limited Partners, in their capacity as Limited Partners, shall not participate in the management of or have any control over the Partnership's business nor shall the Limited Partners have the power to represent, act for, sign for or bind the General Partner or the Partnership. The Limited Partners*

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

18

*hereby consent to the exercise by the General Partner of the Powers conferred on it by this Agreement.*

<u>The Articles</u>

73.3   Article 11

*The Management Shares shall be issued at par value and shall carry the right to receive notice of and to attend, to speak at and to vote at any general meeting of the Company. In the event of a winding up or dissolution of the Company, whether voluntary or involuntary or for the purposes of a reorganization or otherwise or upon any distribution of capital, the entitlement of the holders of Management Shares shall be determined in accordance with these Articles. Management Shares confer no other right to participate in the profits or assets of the Company.*

73.4   Article 12

*Participating Shares shall confer upon a Shareholder no right to receive notice of, to attend, to speak at nor to vote at general meetings of the Company but shall confer upon the Shareholders rights in a winding-up or repayment of capital and the right to participate in the profits or assets of the Company in accordance with these Articles.*

73.5   Article 13

*…the rights attached to any such Class may… only be materially adversely varied or abrogated with the consent in writing of the holders of not less than two-thirds of the issued Participating Shares of the relevant Class or with the sanction of a resolution passed at a separate meeting of the holders of the Participating Shares of such Class by a majority of two-thirds of the votes case at such a meeting.*

73.6   Article 84 (d)

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

19

*The office of Director shall be vacated if the Director…is removed from office by Ordinary Resolution.*

*The definition of Ordinary Resolution is a vote of the Management Shares.*

73.7   Article 99

*Subject to any rights and restrictions for the time being attached to any Shares, or as otherwise provided for in the Act and these Articles, the Directors may from time to time declare dividends (including interim dividends) and other distributions on Shares in issue and authorise payment of the same out of the funds of the Company lawfully available therefor.*

73.8   Article 104

*Subject to any rights and restrictions for the time being attached to any Participating Shares, all dividends shall be declared and paid in such amounts as may be declared by the Director's in their sole and absolute discretion without a requirement to pay such dividends on a pro-rata basis as to the paid-up or par value of the Shares.*

74   The Management Shares in the Company and the General Partner in the Fund have at all material times been held and/or controlled by a single individual who, as a result, has sole control of the Fund structure (the "**Control Position**"):

74.1   In or around November 2011:

(a)   Grant Scott was appointed as the sole director and allotted the 100 Management Shares of the Company; and

(b)   Grant Scott became the holder of the membership interest in the Original GP and was appointed the Manager thereof,

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

20

**Page 24 of 83**

thereby assuming the Control Position from that date.

74.2   In or around 24 March 2021, Mr Scott:

(a)   assigned 100% of the membership interest in the Original GP to Mr Patrick pursuant to an Assignment and Assumption of Membership Interests Agreement, which membership interest gave Mr Patrick the sole right to manage the Original GP;

(b)   transferred to Mr Patrick the 100 Management Shares in the Company; and

(c)   resigned as a director of the Company and resolved to appoint Mr Patrick as the sole director in his place.

74.3   On 25 March 2021, Mr Patrick was entered into the Company's Register of Members as the holder of the Management Shares.

74.4   Mr Patrick therefore assumed the Control Position from that date.

74.5   On 22 April 2021, Mr Patrick resolved to appoint Mr Murphy as a second director of the Company.

74.6   On 7 March 2024, by way of a Deed of Assignment and Assumption, Mr Patrick, as managing member of the Original GP, caused the Original GP to transfer its general partnership interest in the Fund to the New GP.

74.7   Mr Patrick is the sole shareholder and director of the New GP.

74.8   Mr Patrick therefore remains in the Control Position and was in such position at all relevant times since 25 March 2021.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

21

75      Further, the sole asset of the Fund is its shares in CLO Holdco (the Sixth Defendant).  Mr Patrick and Mr Murphy are the directors of CLO Holdco and were appointed on 2 April 2021 and 22 April 2021 respectively.

76      The Control Position was not and is not a term of art but was nevertheless a legal and factual position:

76.1    where a single individual was the sole Management, and therefore voting, Shareholder of the Company;

76.2    where the same individual was a director of the Company;

76.3    where the same individual was the sole shareholder or controller of the General Partner;

76.4    where the same individual was a director of the General Partner;

76.5    where the same individual was in complete and effective control of at least the Company, of the General Partner, of the Fund and of CLO Holdco;

76.6    where the same individual was in effective sole control of all assets of the Fund;

76.7    where the same individual had no economic, residual, beneficial or winding up interest in assets of the Company;

76.8    where the same individual had no economic, residual, beneficial or winding up interest in assets of the General Partner;

76.9    where the same individual had no economic, residual, beneficial or winding up interest in assets of the Fund;

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

22

76.10   where the same individual was, irrespective of his or her formal positions, functions or duties, including as a director, acting as a trustee, fiduciary or in a trustee-like or fiduciary-like position with respect to the assets held by the Fund;

76.11   where the same individual was at all times acting solely for the benefit or the ultimate benefit of the Original Participating Shareholders and/or through them the Supported Organisations and/or through them the Charities; and

76.12   in the alternative to the plea directly above, where the duties otherwise owed by the same individual as a matter of law, including as a director, were affected and/or altered by the existence of the structure as pleaded above, including the facts and matters relating to the Control Position and including the fact that the structure as pleaded above was designed and intended to be solely for the benefit or the ultimate benefit of the Original Participating Shareholders, and/or through them the Charities.

**EVENTS RESULTING IN THE COMPANY HAVING NO MATERIAL ASSETS AND THE DILUTION OF THE SUPPORTING ORGANISATIONS' INTERESTS**

<u>Plan to defeat the interests of the Original Participating Shareholders</u>

77   On 9 November 2023, Shields Legal Group ("**Shields Legal**") (the U.S. attorneys for the Company) sent to Campbells LLP ("**Campbells**") (then Cayman Islands attorneys for the Company) a work plan (the "**Work Plan**") relevant to the Company, the Fund and CLO HoldCo.

78   It can be inferred, and is averred, that the purpose of the Work Plan and the subsequent advice and steps taken as detailed below was to seek to entrench Mr Patrick's Control Position and defeat the interests of the Original Participating Shareholders.

79   The Work Plan stated that (amongst other things):

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

23

79.1   the advice required related to "...*potential disputes and corporate reviews and best practices for each, including proactive corporate actions, solidifying defenses, etc*..."; and

79.2   "...*we may need to rely on opinions and memoranda in potential future disputes*..."

80   The Work Plan set out the issues on which the Directors sought advice, including among other things the following questions:

80.1   'Can the controlling person dilute shares, e.g., the Participation Shares?'

80.2   'Can the controlling person redeem shares, e.g., the Participation Shares?'

80.3   'Is there any Cayman law requirement that the Company distribute money upwards to the next level of entities (Highland Dallas Foundation, Inc. and others)?'

80.4   'Could the Company liquidate, distribute all its assets elsewhere, or otherwise make the Participation Shares worthless?'

80.5   'What can be done at this point to make [the share transfers in the Company from Mr Scott to Mr Patrick] bullet proof?'

81   The Directors were advised that any steps taken in relation to the proposed issuance of new Participating Shares and withholding dividends must be in compliance with their fiduciary duties and taken in the best interest of the Company:

81.1   On 8 January 2024, Walkers (Cayman) LLP ("**Walkers**") (also then Cayman Islands counsel for the Company) provided advice on issues set out in the Work Plan to the effect that (amongst other things)*:*

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

24

(a)   the Directors have power under the Articles to issue new Participating Shares that dilute the current Participating Shareholders, but must consider their fiduciary duties (including the duty to act in the best interests of the Company) when issuing such shares;

(b)   the Participating Shares are non-redeemable;

(c)   while payment of a dividend or other distribution is at the discretion of the Directors, if the Company were to have distributable reserves available, there may be a question of whether the Directors would be acting in its best interests to not pay some dividend or distribution; and

(d)   the Directors have fiduciary duties to the Company which are paramount when considering (i) making a distribution and (ii) the distributable reserves available from which to make payments; they must have regard to what is in the Company's best interests, its future cash requirements, and its present and future solvency.

82   In February 2024, without telling the Supporting Organisations or the Charities, Mr Patrick sought to form a new entity to replace the Original GP. On 5 February 2024, Walkers emailed Mr Patrick to ask whether that entity should be a Cayman LLC or an exempted company, to which he responded later that day: "*Doesn't matter to me. Whatever from a strategic point of view - hard to find or track, or trace. Or find owners etc. Generic name. Strong litigation protection.*"

83   On 27 February 2024, without telling the Supporting Organisations or the Charities, the New GP (the Fifth Defendant) was incorporated in the Cayman Islands.

84   On 7 March 2024, Mr Patrick, in his capacity as Managing Member of the Original GP, and without telling the Supporting Organisations or the Charities, executed a written consent for the

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

transfer of the GP Interest to the New GP, thereby replacing the Fund's General Partner. The Supporting Organisations subsequently discovered this change only by chance in February 2025.

85      In or around August 2024, the Supporting Organisations were provided with a financial analysis (prepared by NexPoint Advisors LP) of the Fund's annual expenses which showed or appeared to show increases in expenditure, particularly as follows (and without prejudice to any further relevant facts and matters relating to Directors' fees or expenses):

85.1    directors' fees increased from around US$40,000 in 2022 to almost US$600,000 in 2023 – and increased further to around US$2.25 million in the first half of 2024; and

85.2    expenses overall for the first half of 2024 were around US$18.3 million – almost the same amount spent over the entire course of 2023 (i.e. US$18.6 million).

86      On 13 September 2024, without telling the Supporting Organisations or the Charities, the Directors resolved (amongst other things) with respect to Mr Patrick's compensation:

86.1    to increase Mr Patrick's salary to US$850,000 per annum;

86.2    include a long-term incentive ("**LTI**") tied to the Fund's returns, being 7.5% of annualised net fund returns in excess of 10% (capped at 25% annualised return); and

86.3    the Company should assess legal expenses attributable to investment which impacted the LTI compensation and then determine whether the LTI compensation should be increased.

87      On 1 October 2024, without telling the Supporting Organisations or the Charities:

87.1    the Directors resolved (amongst other things) that Mr Patrick would receive:

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

26

(a)     an LTI payment of US$975,000; and

(b)     an 'annual discretionary bonus' for 2023 at an amount of 2.5 times his base salary.

87.2    Previously, in or around October 2021, Mr Patrick had signed an 'employment agreement' for his position at the Company, for the period commencing 24 March 2021, which provides that Mr Patrick:

(a)     shall receive a base salary of US$850,000;

(b)     shall receive an LTI payment for the period 24 March 2021 to 24 March 2024 in the amount of US$4,759,000; and

(c)     is eligible for both annual and discretionary bonuses as determined at the 'sole and absolute discretion of the Directors'.

88      Comparatively, Mr Scott's salary during his tenure in the Control Position was approximately US$60,000 per annum. Notwithstanding the above, the Supporting Organisations were not informed of these increases to the Directors' fees, remuneration and/or benefits.

89      In late October 2024, as a result of concerns arising from this additional expenditure, the Supporting Organisations requested that Mr Patrick provide relevant financial information for the Company and the Fund.  Mr Patrick did not do so.

90      On 11 November 2024, Holland and Knight ("**H&K**"), U.S. attorneys for the Supporting Organisations, issued a letter to Mr Murphy advising that the Supporting Organisations no longer had confidence in the governance of the Company and/or the Fund and considered that a reorganisation of the governance structures was required to protect the charitable efforts of the Supporting Organisations (the "**No Confidence Letter**").

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

27

91    On 26 November 2024, Mr Patrick sought advice from Walkers as to whether the Company could issue further Participating Shares to a new non-profit organisation to dilute the Supporting Organisations so as to weaken any winding-up petition brought by the Supporting Organisations on just and equitable grounds. Mr Murphy wrote that:

> "*Issuance of new participation shares, where the existing foundations represent a smaller % of the issued and outstanding shares, would weaken any petition based on just and equitable grounds but we must be careful they don't point to this as ground to wind up i.e. the existing foundations say we're artificially trying to weaken their position by diluting them therefore the company should be wound up or an order made for change of management /revocation of the share issuances. It's a very difficult situation to get right without gifting them a potential ground…*"

92    On 27 November 2024, Walkers responded to the Directors confirming that, if other shareholders were to oppose an equitable winding up, such opposition will be taken into consideration and would likely help.

93    On 9 December 2024, DFW was incorporated as a non-profit non-stock company in Delaware, by or with the assistance of Mr Douglas Mancino, partner of U.S. firm, Seyfarth Shaw LLP ("**Seyfarth**"), who, worked alongside Mr Patrick in the establishment of the Company and the Fund structure. The sole member of DFW was and is Mr Patrick.

94    On 7 February 2025, 318 Participating Shares were issued to DFW.

95    On 20 February 2025, Mr Patrick as the Management Shareholder of the Company resolved to adopt the Amended and Restated Memorandum and Articles of Association dated 20 February 2025 which, among other things:

95.1    Amended the Memorandum at paragraph 3 to give the Company charitable objects;

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

28

95.2    Amended article 70 to introduce the concept of a Management Director (being a director holding the Management Share) and to weight the voting such that on all matters the Management Director had 10 votes and any other directors had 1 vote;

95.3    Deleted the previous articles 70 and 71 giving the right to appoint alternate directors and proxies. By email dated 27 February 2025, Walkers confirmed that the purpose of this deletion was to "*avoid the risk of 'outsiders' being brought into the fold*".

96    The Company reserves its position in respect of the validity of these amendments.

The purported restructuring: Mr Patrick causes the assignment of the Partnership Interest to CDM

97    On 12 December 2024, CDM was incorporated as a limited liability company in Delaware.

98    On 18 December 2024, without telling the Supporting Organisations or the Charities, the Directors of the Company resolved (the "**Transfer Resolutions**") to approve the transfer of the entirety of the Company's limited partnership interest in the Fund to CDM, in consideration for the contribution by the sole member of CDM of 100% of the membership interest in CDM. The Transfer Resolutions provide (amongst other things) that, based apparently on U.S. tax advice, the transfer of the limited partnership interest to CDM:

98.1    "*…would help insulate the DAF from exposure to [Dondero] and his entities who may be at risk of causing the [IRS] to revoke the tax-exempt status of one or more of the Participating Shareholders/supporting organizations which could imperil the assets of the Company*";

98.2    "*The IRS would look favorably upon any and all attempts for DAF to maintain its influence from what seems to be persistent attempts by Dondero and the entities controlled by him to use DAF for his private benefit and private inurement*";

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

29

98.3    As a Delaware limited liability company (CDM): "…*as permitted under the LLC Act, the terms of the LLC Agreement eliminate the fiduciary duties of the manager of the Transferee*".

99    On 18 December 2024, without telling the Supporting Organisations or the Charities, the Company, CDM and the New GP entered into a Deed of Assignment and Assumption (the **"Deed"**) which was executed by Mr Patrick on behalf of each of (i) the Company in his capacity as Director; (ii) CDM in his capacity as Manager; and (iii) the New GP in his capacity as Director. Pursuant to the terms of the Deed:

99.1    The Company assigned its entire limited partnership interest in the Fund to CDM (the **"CDM Assignment"**).

99.2    The New GP provided its written consent to the CDM Assignment and the admission of CDM as the new limited partner, in accordance with clause 1.11(a) of the LPA.

99.3    CDM agreed to exercise its reasonable best endeavours to ensure that 100% of the membership interest in CDM held by Mr Patrick would be transferred to the Company (the **"CDM Membership Interest"**).

100    On 18 December 2024, the Company (as member) and Mr Patrick (as manager) entered into a Delaware law governed Limited Liability Company Agreement in respect of CDM (the **"LLC Agreement"**).

101    The LLC Agreement, materially provides (amongst other things) that:

"*Fair Market Value shall have the meaning set forth in Section 6.9(b).*

…

*The initial Manager shall be Mark Patrick.*

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

30

…

*6.5 No Duties to the Company. To the fullest extent permitted by law, including Section 18-1101(c) of the Act, and notwithstanding any other provision of this Agreement or in any agreement contemplated herein or applicable provisions of law or equity or otherwise, the parties hereto hereby agree that the Manager shall owe no fiduciary duty to any Member or the Company; provided, however, that the foregoing shall not eliminate the duty to comply with the implied contractual covenant of good faith and fair dealing.*

…

*6.9 Valuation of Company Assets.*

*(a) General. The Manager shall make a good faith determination of the value of the Company's assets in connection with any distribution pursuant to Section 8.1(b), as required under Section 4.3(c), upon the dissolution of the Company, and whenever otherwise required by this Agreement or determined by the Manager.*

*(b) Binding Effect. The value of any Company asset or Interest determined pursuant to this Section 6.9 shall be binding upon the Company and the Members and shall establish the "Fair Market Value" of such asset or Interest for all purposes under this Agreement.*

…

*7.3 Redemption. The Manager, in its sole discretion, may cause any Member's Interest to be redeemed by the Company for any reason. Any Interest of a Member to be redeemed by the Company shall be redeemed for the Fair Market Value of such Interest, as determined by the Manager in its sole discretion. Such payment to the*

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

31

> *Member shall either be made in cash or pursuant to a promissory note. Such promissory note shall: (i) provide for interest at the lowest rate necessary to avoid the imputation of additional interest under the Code; and (ii) have a stated principal amount of the Fair Market Value of such Member's Interest being redeemed, as determined by the Manager in its sole discretion."*

102     The Company will rely on the terms of the LLC Agreement for their applicable full terms and effect.

103     The effect of these transactions was that:

103.1   CDM was inserted into the corporate structure below and as a subsidiary of the Company and would hold the entirety of the limited partnership interest in the Fund previously held by the Company; and

103.2   The Company would hold the entire membership interest in CDM, with the result that the Company's sole asset, having previously been its limited partnership interest in the Fund, was exchanged for the CDM Membership Interest

(the "**Restructuring**")

104     The Restructuring was at an undervalue and not in the interests of the Company (in that the CDM Membership Interest was less valuable than the limited partnership interest that the Company assigned to CDM) because (amongst other things)*:*

104.1   The General Partner owed fiduciary duties to the Company in the Fund, but the Manager (Mr Patrick) did not owe any fiduciary duties to CDM; and

104.2   The CDM Membership Interests were susceptible to being redeemed by Mr Patrick (as Manager) in his sole discretion and for any reason, for "fair market value" as defined by Article 6.9, i.e. a "good faith determination of the value".

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

32

**Page 36 of 83**

105   On 3 April 2025, the Company obtained retrospective advice from Leading Counsel on the steps taken by the Company in December 2024 to effect the Restructuring and whether the transfer is "*open to challenge by the Participating Shareholders*", which advice:

105.1   refers to the justifications for the decisions taken as set out in the Restructuring Resolutions, and considers that, if called upon to justify the purpose of those decisions, the Directors would need to explain:

(a)   how the penalisation or loss of tax-exempt status any of the current Participating Shareholders could have "*imperil[ed]*" the "*assets*" of the Company;

(b)   the detrimental issues the Company was facing that the Directors believed would be mitigated by the interposition of CDM into the Fund structure; and

(c)   how and/or why the Restructuring would (i) benefit the Company and (ii) reduce the influence of Mr Dondero; and

105.2   considers that a shareholder reviewing the reasons listed in the Restructuring Resolutions "*might suggest that the contents of the resolution are self-serving and do not tell the full story, but rather seek to obscure the true motivations of the board*".

Persistent and continual lack of information for the Supporting Organisations

106   On 23 January 2025, having received no response from Mr Murphy to the No-Confidence Letter, Julie Diaz, the CEO of The Dallas Foundation, sent Mr Patrick an email advising that the Supporting Organisations needed to better understand the Company's/Fund's asset position, and requesting certain information be provided by 10 February 2025.

107   Having received no response, on 28 January 2025, Ms Diaz sent a further email to the Directors expressing serious concern (i) that the Supporting Organisations' requests for information

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

33

continued to be disregarded, and (ii) about the ongoing lack of transparency on the part of the Directors.

108    On 30 January 2025, Mr Murphy replied to Ms Diaz stating that the Directors:

108.1    had not received the 23 January email – but understood the next step was for the Directors to "*present directly*" to the Supporting Organisations to address the No-Confidence Letter; and

108.2    are cooperating with the Supporting Organisations to provide additional information – but "*have no legal obligation to do so*" and such cooperation "*should not be construed as an implicit acknowledgement of any duty to continue providing information to you*".

109    On 31 January 2025, Mr Michael Stockham of H&K responded to Mr Murphy noting that he and Mr Patrick were fiduciaries, managing US$270 million in assets for the benefit of charities that support the most vulnerable (i.e. the Charities) and: "*[w]hatever your side's obvious antagonism to Mr Dondero, the fact remains that the underlying assets are ultimately for these charitable missions.*"

110    On 4 February 2025, Mr Murphy responded that while open to resolving the concerns, they (i.e. the Directors) were struggling to understand the Supporting Organisations' change in position.

111    On 7 February 2025, H&K responded that the Directors were fiduciaries in control of US$270 million for the benefit of charities: "*these monies are for improving the quality of life of children, building pathways for everyone to have a fair opportunity to succeed and … fostering a love for education. They are not meant to pay you and Mr. Patrick millions in director fees*".

112    On 14 February 2025, H&K received a letter from Mr Mancino which rejected the accuracy of the reported increases in expenditure. On 27 February 2025, H&K responded that his clients

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

34

**Page 38 of 83**

were frustrated by the lack of transparency and refusal to answer simple queries about the financial position. In response, Seyfarth sought available dates for Mr Murphy to make the promised presentation to the Supporting Organisations. H&K responded the next day with three potential dates/times for the proposed call between 26 March and 3 April 2025. Mr Mancino did not respond.

113   On 20 March 2025, Mr Mancino sent a letter purportedly on behalf of the Company to the IRS about alleged undue influence and control exercised over the Supporting Organisations by Mr Dondero. The letter makes serious and unsubstantiated allegations about the Supporting Organisations, absent evidential support, including that they each (i.e. all of them): "*operates for Mr Dondero's private benefit when he uses his influence or control over them to cause them to use or attempt to use their influence as Participating Shareholders of DAF Holdco to wrest control of DAF Holdco and its assets…*".

114   On 3 April 2025, Mr Mancino sent an email to H&K stating that he had just learned there was a call scheduled for the following day and seeking to reschedule. H&K responded that no such call had been arranged and queried the apparent source of confusion.

115   Mr Mancino, and Mr Patrick and Mr Murphy (each in part through Mr Mancino as an instructed attorney) acted in bad faith by maintaining a pretence of actual or potential cooperation with the Supporting Organisations when this was not the case, and by sending or causing to be sent the email of 20 March 2025 in secret:

115.1   four (4) months after the Directors and/or the Company transferred away the Company's interest in the Fund without telling the Supporting Organisations or the Charities;

115.2   two (2) months after the Directors and/or the Company diluted the existing Participating Shareholders without telling the Supporting Organisations or the Charities (see below);

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

35

115.3   one (1) week after the Directors and/or the Company redeemed the Company's interest in CDM without telling the Supporting Organisations or the Charities (see below);

115.4   one (1) day after the Directors placed the Company in voluntary liquidation, without telling the Supporting Organisations or the Charities.

Purported Share Issuance and allotment to DFW

116    In November 2024, without telling the Supporting Organisations or the Charities, the Directors began seeking advice from Walkers on whether the Company could issue new Participating Shares that would have the effect of diluting the existing Participating Shareholders - *in light of a possible just and equitable winding up petition*" being filed by one of the Supporting Organisations.

117    On 7 February 2025, Walkers advised that, while there must be a corporate benefit to the exercise of the power, the Articles grant the Directors power to issue new shares that dilute the Participating Shareholders, and recommended the shares be issued sooner than later, and before any winding up petition was presented, since any alteration to the Company's membership made after the presentation of the petition would be void.

118    On 7 February 2025, without telling the Supporting Organisations or the Charities, the Directors resolved to issue 318 Participating Shares to DFW (the "**Share Issue Resolutions**"), resulting in DFW owning 51.04% of the Participating Shareholding and the dilution of the Supporting Organisations from an aggregate shareholding of 100% to 48.96% (the "**Share Issuance**"). The Share Issue Resolutions provided that:

118.1   Participating Shareholders had requested information and made false and misleading claims about the Company and its finances which the Directors believe were directed by Mr Dondero.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

36

118.2   Based apparently on U.S. tax advice:

(a)     There was a heightened risk the IRS could revoke the tax-exempt status of the Participating Shareholders which could imperil the status and assets of the Company.

(b)     Increasing the number of Participating Shareholders would mitigate the undue influence and private inurement of Mr Dondero.

(c)     The IRS would look favourably upon attempts by the Fund to maintain its independence from his (i.e. Mr Dondero's) attempts to use the Fund for his private benefit.

118.3   The Directors believed the Share Issuance to DFW would protect the Company and the Participating Shareholders and resolved that the Share Issuance to DFW be approved.

119     On 5 March 2025, Leading Counsel (Mr Tony Beswetherick KC) issued draft retrospective (but final) advice to the Company on the Share Issuance in which he opined (amongst other things) as follows:

119.1   where Articles confer a power on directors to issues shares, that power is a fiduciary one and must only be exercised for proper purposes; an issue of shares "…*deliberately aimed at altering the balance of power between*" is problematic; the power should not be exercised with a view to altering an existing balance of power, irrespective of whether the directors consider that doing so is in the interests of the company;

119.2   the effect of the Share Issuance was that, if there were to be a company meeting or proposal to approve a modification that affects the Participating Shareholders' rights,

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

37

the ability of the prior Participating Shareholders to vote down such a change was negatively affected (DFW now having over 50% of the total Participating Shares);

119.3   it is not immediately clear from the Share Issue Resolutions whether the justifications stated were actually relevant to the Directors' decision. If they were relevant, it is not explained why the issue of shares to DFW would prevent false claims being made by Mr Dondero; it may be that those matters are part of the context, rather than part of the reason for the decision; and

119.4   the Participating Shareholders might suggest the Share Issue Resolutions are self-serving and do not tell the full story, but rather seek to obscure the true motivations of the board.

Plan to redeem the Original Participating Shareholders

120   In January and February 2025, the Directors, in connection with a plan to try to redeem the Participating Shareholders and/or the CDM Membership Interest held by the Company, and without telling the Supporting Organisations or the Charities, sought to obtain an analysis of the fair market value of the Participation Shares, and the discount that should be applied to such valuation, given the limited rights conferred upon Participating Share under the Articles.

*Historic ValueScope Valuations*

121   At the request of the Company, ValueScope, Inc. ("**ValueScope**") conducted a series of valuation analyses of 100 Participation Shares on a net asset value ("**NAV**") basis between December 2020 and September 2024 to determine their fair market value ("**FMV**"). These valuations were apparently prepared for internal reporting purposes and apparently applied consistent methodologies throughout the period. The results of these valuations are summarised below:

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

38

**Page 42 of 83**

| Valuation date | NAV | NAV Per Share | Combined Discounts | FMV Per Share | FMV (100 shares) |
|---|---|---|---|---|---|
| 31 December 2020 | $176.96M | $580,193 | 17.0% | $481,468 | $48,146,754 |
| 31 December 2021 | $243.19M | $797,343 | 11.6% | $705,210 | $70,521,019 |
| 31 December 2022 | $276.24M | $905,711 | 15.4% | $766,549 | $76,654,941 |
| 31 December 2023 | $277.57M | $910,076 | 14.0% | $782,847 | $78,284,712 |
| 30 September 2024 | $269.05M | $882,140 | 13.9% | $759,614 | $75,961,370 |

122    The final NAV-based valuation prepared by ValueScope prior to the Restructuring was dated 7 January 2025, and gave a valuation of 100 Participating Shares as at 30 September 2024 (the "**September 2024 Valuation**").

*PwC and FTI*

123    On 14 January 2025, Walkers inquired with PwC about a valuation of "*the shares of Charitable DAF Holdco*". In that email, Walkers, presumably on instructions from the Directors, listed the Supporting Organisations as "*potential adverse parties*".

124    On 7 February 2025, Walkers informed PwC that CDM had been inserted into the structure and requested that a second valuation be prepared of all the CDM Membership Interest, which valuation Walkers said was also to rely on the NAV as previously advised (rather than leaving

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

39

PwC to determine their own valuation methodology). PwC responded that their initial view is "*there is no meaningful difference*" between the two valuations requested - "*i.e. the economic interest in the underlying NAV still fully accrues to the participating shareholders*" - but that voting power/control remains with Mr Patrick (or with entities he controls). PwC asked for further information about what Mr Patrick was trying to achieve by the Restructuring to help them understand the valuation implications.

125    On 10 February 2025, PwC suggested a call with Walkers to discuss the second valuation, which call took place on 11 February 2025, and was also attended by Mr Patrick's '*onshore and Delaware counsel*'. Following that call, PwC declined to take on the instructions:

> "*... our view is that the new Delaware entity (CDMCFAD) effectively has full economic interest and control over the Fund, so we don't really see a basis for applying any discounts to the underlying Fund NAV for that entity. As it relates to the participating shareholders' interest in Charitable DAF Holdco, Ltd., we don't think we can reliably estimate the value/discount given the current fact pattern. While we could make hypothetical assumptions about how the articles may be interpreted, and/or how future cash flows may or may not be distributed, the impact on value is so substantial that we don't think it would be a meaningful exercise (i.e. we'd end up with the discount being 100% in one scenario, but 0% in another). On that basis, I don't think there is a fee / scope that can work for us currently.*"

*The FTI Memo*

126    On 13 February 2025, without telling the Supporting Organisations or the Charities, the Company engaged FTI Consulting in London ("**FTI**") to advise on (i) the discount applicable (if any) to a valuation considering how the rights attached to Participation Shares differed from those typically associated with ordinary shares, and (ii) the impact of the existence of an additional share class (being the Management Shares held by Mr Patrick). FTI's engagement

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

40

letter also stated that "*The Memo will also include a valuation of the ordinary shares of CDMCFAD, LLC, the immediate subsidiary of Charitable DAF HoldCo*".

127    On 2 March 2025, FTI provided a draft memorandum to Walkers/the Company.

128    On 27 March 2025, FTI issued its final memorandum (the "**FTI Memo**"), which stated (amongst other things) that the rights of Participating Shares were extremely limited, and the potential distribution of cash was highly dependent on a member's alignment with the Fund's mission. The FTI Memo concluded that a "limited discount" for lack of control and marketability should be applied where a member is aligned with the Fund's mission (said to be close to the range concluded by ValueScope in its 7 January ValueScope Report, i.e. a discount of 13.9%), and a "high discount" of 95% where a member is not.

*Legal advice sought*

129    On 25 February 2025, without telling the Supporting Organisations or the Charities, the Directors sought advice from Walkers and Shields Legal on any powers under the Articles to enable the removal of the Supporting Organisations, including by (i) redemption of the Participating Shares (Art 14 and 28), (ii) a forced transfer of Participating Shares held by a Restricted Person (Art 21) (iii) or an alternative course whereby DFW repurchased the shares, which could then be cancelled, and new shares issued which are redeemable by the Company. Walkers advised that both redemption and forced transfers were not permitted but agreed with the alternative course involving DFW.

130    On 5 March 2025, as stated above, Leading Counsel provided retrospective advice to the Company regarding the Share Issuance, which also considered whether the Directors had power under the Articles to redeem the Participating Shares. Leading Counsel opined that they did not, on the basis that the Participating Shares were not issued as redeemable shares, and could not be redeemed unless there were a prior variation of the rights ascribed to them. That said, any proposal to vary the rights attached to the shares to make them redeemable would

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

41

support an argument "*that the [DFW Share Issue] was itself procured with a view, ultimately, to disenfranchising the pre-existing Participating Shareholders*".

131   On 17 March 2025, Mr Patrick wrote to Walkers in the following terms:

"*Agree we need to finalise the [FTI valuation] reports …We should request any limits on use removed.*

*We are seeking U.S. tax counsel to send emails to Paul and I that the non profits are Restricted Persons and/or best interests of the Company to have non dondero holders of its interests.  After that, an alternative approach is to give them what they want – liquidate Holdco Ltd after its only investment is redeemed by the US. LLC pursuant to U.S. counsel advice above, that it's in the best interests of the Company to redeem all non-profits affiliated with Dondero. US LLC has same valuation conducted on its shares as the participation shares. so we would redeem the LLC interest, then distribute the proceeds out of Holdco Ltd., and file articles of Dissolution for Charitable daf Holdco Ltd before a wind up petition is filled.  That would put us on the "high ground" to fight (rather the way this is currently heading in a defensive posture). they would have to scrap their wond up petition and fight for reinstatement, gripe about the valuations, and file fiduciary breach actions …*

*We will stage this in light of the Doug letter, new advice of two separate U.S Tax counsel, and seeing how successful (or not) our outreach to the Texas attorney general office is.*

*Note US LLC would make DFW its sole owner.*"

132   The email of 19 March 2025 makes plain that the Directors, or at least Mr Patrick, intended to liquidate the Company without notice to the Supporting Organisations and to otherwise obstruct

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

42

the Supporting Organisations' ability to exercise any right to petition to wind up the Company on just and equitable grounds.

133   On 20 March 2025, Walkers provided comments on the FTI draft valuation, and FTI responded. These comments include, amongst other things:

> "Walkers: *It is stated at [3.2(2)] that "there is no overriding duty of DAF's Directors to act in the shareholders' interest. The Directors will act according to the best interest of the company, that is, to achieve the charitable causes that are aligned with DAF's mission". However, as a matter of Cayman law, directors owe duties to the company, and must act in its best interests [which are] generally regarded as the interests of the members as a whole, and in certain circumstances the objects of the company may be taken into account when determining what is in its best interests.*
>
> FTI: *Can you explain how it was in the interests of the company to materially dilute the existing shareholders?*
>
> …
>
> Walkers: *It is stated at [3.10] that "the Participating Shareholders do not have any rights to cause a liquidation/winding up of the company". However, the Participating Shareholders do have the right to seek a winding up of the company, as conferred upon them by the Companies Act (rather than the Articles).*
>
> FTI: *Why won't they just do this immediately and seek distributions? Isn't the ability to trigger a liquidation contradictory with point 1 which states "Shareholders do not have any right to exert influence on whether/how the funds of DAF are used or distributed".*
>
> …

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

43

Walkers: *As per our comments, please could you delete references to our advice so as to avoid any potential arguments about waiver of privilege.*

FTI: *Your advice is important in us arriving at our conclusions. I understand from our legal team that we either (i) keep the reference to your advice or (ii) address the memo to you. Are you expecting there to be litigation in relation to the proposed transaction?*

…

Walkers: *Our client now seeks a valuation report which may, in connection with a proposed redemption of the membership interests in CDM, be disclosed to third parties and relied on to establish fair market value of both the membership interests in CDM, and in turn HoldCo.*

FTI: *This is a material change in the purpose and access rights of the report. Please provide more detail of the transaction. Is it the case that Mark will make CDM redeem the shares owned in by DAF? And who would you like to share the report with? And on what basis (e.g. non-reliance)? We also note our memo is not a valuation – it is a quantification of discounts given the rights of the participating shares. To do a valuation, we would need to do a more detailed exercise, including valuing the underlying assets."*

134    On 21 to 24 March 2025, FTI and Walkers had an exchange (amongst other things) as follows:

"FTI: *If the firm was wound down, would it result in distributions to the existing participating shareholders? Or would Mark still be able to shareholder structure to ensure the existing participating shareholders got nothing? Given they haven't received dividends since 2019, why haven't the participating shareholders triggered a wind down? If they can trigger a wind down and then in short order receive $300m of distributions, it does change things re discount.*

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

44

Walkers: *if HoldCo was wound up, the Participating Shareholders would receive distributions which would be made pari passu, and Mark (if he was the liquidator) would not be able to ensure the existing Participating Shareholders get nothing. Whilst the Participating Shareholders have the right to seek to wind up under the Companies Act, they need a proper basis to do so… We can only assume [they] have not commenced proceedings seeking to wind the company up because they do not have a proper basis on which to do so …*

*…*

FTI: *Would an absence of distributions be sufficient grounds to make an application to wind the company up? If the participating shareholders did make the application, would Mark be able to issue a vast number of shares to another party before the distributions were made thereby ensuring the existing shareholders received very little?*

Walkers: *A Participating Shareholder may consider an absence of distributions sufficient grounds for a winding up order on the just and equitable basis… But it is difficult for us to say whether that petition would be successful. If (a) a Participating Shareholder presented a petition; (b) new shares were purportedly issued; and (c) the Court then made a winding up order, the issue of the new shares would be void and not impact the amounts the Participating Shareholders would receive."*

135    On 26 and 27 March 2025, FTI and Walkers had an exchange (amongst other things) as follows*:*

"Walkers: *We have discussed with our client and onshore counsel and set out some amendments in the attached. In addition, we note (1) we have not received any material addressing reliance on the memo by CDM; and (2) the "Limitations and restrictions" section still provides that the memo "should not be used to support a transaction". For*

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

45

*the memo to be useful in the circumstances, CDM [and HoldCo] need to be able to rely on it or a separate memo would need to be addressed to CDM on which it may rely. Further, both entities need to be able to rely on the memo(s) to support the proposed transaction.*

*FTI: What is the intention of adding that directors should act in the interests of future members? I am struggling to understand how a director could act in a manner which is beneficial for future shareholders which is not also helpful for existing shareholders.*

*The limitations in our note will remain. To do a valuation to support a transaction, we will need to do significantly more detailed work. This is an unusual/complicated situation. We are open to doing a fairness opinion on the transaction. But this will require approval from our risk committee and more information on the transaction and situation. We are happy for CDM to have our memo on a non-reliance basis. But this memo should not be used to support a transaction."*

*March 2025 ValueScope Valuation*

136   Following the Restructuring, ValueScope was requested by Shields Legal, without telling the Supporting Organisations or the Charities, to prepare two valuation analyses:

  136.1   100% Membership Interest in CDM; and

  136.2   Certain Participating Shares of the Company as at 25 March 2025 (the "**March 2025 Valuation**").

137   The March 2025 Valuation had the same instructions, definition of value and scope of work as the September 2024 Valuation. Like the September 2024 Valuation, the March 2025 Valuation also referenced a 30 September 2024 balance sheet (and did not refer to any later analysis of

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

46

assets and liabilities). As shown below, the September 2024 Valuation and March 2025
Valuation produced very different results.

138    A comparative summary of the September 2024 and March 2025 Valuations is set out below:

| Valuation Date | DLOC* | DLOM** | Valuation Basis | FMV (100 Shares) |
|---|---|---|---|---|
| 30 September 2024 | 8.1% | 6.3% | NAV | $75,961,370 |
| 25 March 2025 | 99.2% | 20.00% | DCF*** | $536,784 |
| **Difference** | **+91.1%** | **+13.7%** | | **-$75,424,586** |

*DLOC – Discounted for Lack of Control

**DLOM – Discounted for Lack of Marketability

***DCF – Discounted Cash Flow

139    The March 2025 Valuation stated: "*for the valuation of non-controlling assets in holding
companies such as DAF, the asset-based approach is most commonly used [as Valuescope
had always done previously].   When applied to such companies, the approach consists of
measuring the underlying net asset value of an entity (the fair market value of the entity's assets
less the fair market value of its liabilities).   The NAV is then discounted as appropriate to
determine the fair market value of the fractional interest in the entity.   However, in the case of
the participation shares under consideration, the asset-based approach is not applicable.
These shares do not confer control and only have a claim in respect of the underlying assets
in a winding up.*"

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is
PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref:
CJM/JRN/TQR/858403.000001/83559387)

47

140     ValueScope does not appear to have considered whether winding up was a possibility, and therefore, whether value could have been realised that way and by reference to NAV.

141     For reasons which are unclear to the Company, the March 2025 Valuation expressly rejected the asset-based (NAV) approach on the basis that the economic benefits of the Participating Shares in the Company were contingent on discretionary distributions by its manager. The report states:

> 'Unlike equity interests that derive value from an allocable portion of the entity's net assets, the economic benefits of these shares are contingent upon discretionary distributions by the director. As such, their value is not directly tied to the entity's NAV, and an alternative valuation approach is required to appropriately reflect their characteristics and economic reality'.

142     Accordingly, the methodology applied in the March 2025 Valuation was markedly different from the methodology applied in the September 2024 Valuation. Instead of relying on discounted net assets, the March 2025 Valuation:

142.1   applied a discounted cash flow ("**DCF**") methodology to estimate the present value of expected future distributions, rather than an asset-based approach, as had been applied in at least the past five annual valuations by ValueScope;

142.2   determined the FMV of 100 Participating Shares to be US$536,784;

142.3   applied a discount of 99.2% for DLOC; and

142.4   applied a discount of 20.00% for DLOM.

143     The DCF model is based on the present value of future distributions to the Company. ValueScope's report shows that these were estimated based on historic distributions themselves controlled by Mr Patrick.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

48

144 Based on the valuations above, between 30 September 2024 and 25 March 2025, the FMV of 100 Participating Shares in the Company apparently declined from US$75,961,370 to US$536,784, representing a reduction in value of 99.29% in less than a six month period, in which the Restructuring occurred, attributable to a change in valuation basis (amongst other things) from NAV to DCF.

145 Furthermore, ValueScope does not appear to have sense-tested their valuation. Although they identified "total equity" of c. US$270 million and concluded that all of the Participation Shares had a value of only c. US$1.6 million, they did not address themselves to who benefitted from the residual value of c. US$268 million.

<u>Admission and Redemption</u>

146 On 27 March 2025, Mr Patrick, as manager of CDM, executed a written consent (the "**Manager Consent**") to (a) cause CDM to admit DFW as an additional member of CDM pursuant to the terms of an Admission and Amendment No.1 Agreement (the "**Admission Agreement**") and (b) redeem the CDM Membership Interest held by the Company pursuant to the terms of a Redemption and Amendment No. 2 Agreement (the "**Redemption Agreement**" and together with the Admission Agreement, the "**Restructure Agreements**"):

146.1 The recitals to the Manager Consent stated that the redemption of the Company's membership interest was justified by reason of alleged attempts by the Supporting Organisations to exert control, and the potential loss of their (i.e. the Supporting Organisations') non-profit and tax-exempt status:

*"… the Manager has formed the view that the Current Member, by virtue of being a member of the Company and having as Participating Shareholders the Highland Foundations, poses a material risk to the Company, its assets, and the Mission Statement of DAF due to, among other things, (i) officers and directors of the Highland Foundations seeking to assert dominion and control*

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

49

FSD2025-0201 **Page 53 of 83** 2025-07-15

> *over the assets of DAF (through the Current Member), despite no legal ability to do so under the Current Member's organizational documents and despite the potential illegality (as demonstrated by tax counsel to DAF—see Exhibits C and D) of doing so, (ii) the potential loss of the non-profit status of the Highland Foundations due to their actions, among others, described in clause (i), and (iii) the potential loss of the tax-exempt status which the Highland Foundations currently enjoy and which is central to the mission of DAF, as a result of the factors including those described in clauses (i) and (ii)"*

146.2 The Manager Consent further stated:

> *"WHEREAS, in connection with the Restructure Agreements and the transactions contemplated thereby, the Manager (on behalf of the Company) obtained a valuation report of the membership interests of the Company from ValueScope and FTI Consulting, copies of which are attached hereto as Exhibit E, which valuation reports have informed the Manager the fair market value of the membership interests"*

146.3 Exhibits C and D to the Manager Consent are documents purportedly containing information regarding various alleged U.S. tax issues relating to the Company.

146.4 Exhibit C is the letter from Mr Mancino to the IRS dated 20 March 2025, in which Mr Mancino (amongst other things) stated:

(a) there has been "deterioration" of the Company's relationship with Highland Dallas Foundation, Inc. ("**HDF**") due to the undue influence and control exercised over HDF by Mr Dondero.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

50

(b)     the information in the letter will demonstrate clearly that Mr Dondero's influence and control is an inappropriate donor relationship with representatives of the HDF who serve on the Board of Directors of and as officers of HDF.

(c)     such undue influence and control potentially jeopardises the tax-exempt status of HDF as an organisation described in s.501(c)(3) and, at a minimum, causes it to fail to remain a supporting organisation described in s. 509(a)(3).

146.5   Exhibit D is an advice produced by Carrington Coleman (U.S. law firm) dated 25 March 2025 (the "**Carrington Advice**") which amongst other things:

(a)     asserts that Mr Dondero has been attempting "*through his control of the Highland SOs, to exert dominion and control over the cash and property he previously donated to DAF and for which he claimed charitable deductions, all for his personal benefit.*"

(b)     suggests that Mr Dondero was using the Company as his personal "*piggy bank*", and that it may be perceived by the IRS that the Fund has been or is his financial alter ego.

(c)     concludes that "*the IRS will look favourably upon any and all attempts for DAF to maintain its independence from what seems to be persistent attempts by Dondero, and the entities controlled by him to use DAF for his private benefit and inurement.*"

146.6   Exhibit E contained two valuation reports:

(a)     The first was a ValueScope valuation.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

51

(b)   The second is the FTI Memo referred to above, in which FTI expressly stated that the analysis in the FTI Memo should not be used in support of a transaction, but which Mr Patrick, in any event:

(i)   expressly relied upon in the Manager Consent to determine the fair market value of the CDM Membership Interest and the basis for the redemption of the Company's interests; and

(ii)   permitted Carrington Coleman to refer to and rely on in the FTI Memo (indeed, having provided the 27 March 2025 copy which was a draft copy only).

146.7   On 27 March 2025, without telling the Supporting Organisations or the Charities, Mr Patrick executed the:

(a)   Admission Agreement between CDM and DFW under which DFW was admitted as a member of CDM, in consideration for a capital contribution of US$1,637,192; and

(b)   Redemption Agreement under which CDM redeemed the Company's membership interest in CDM for the same sum of US$1,637,192 (the "**Redemption Sum**").

147   On 27 March 2025, without telling the Supporting Organisations or the Charities, the Company entered into a letter agreement with CDM (the "**Letter Agreement**"), pursuant to which the Company assigned to CDM various contracts and agreements to which the Company was a party, listed in Schedule A to the Letter Agreement and CDM agreed to assume the liabilities and obligations in respect of those contracts.

148   On 2 April 2025, the Directors of the Company, by way of written resolution:

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

52

148.1 Noted the redemption of the Company's membership interest in CDM for the Redemption Sum (the "**Redemption**").

148.2 Resolved to pay a dividend to the Original Participating Shareholders of US$1,612,192.01 in the amount of (i) US$528,587.54 with respect to each of HDF, Highland Kansas City Foundation, Inc. and Highland Santa Barbara Foundation, Inc.; and (ii) US$26,429.39 with respect to CFNT.

149 The substantive financial effect of the Redemption, under which DFW did or was committed to make a capital contribution equivalent to the Redemption Sum to CDM, and the CDM Membership Interest held by the Company were redeemed for the Redemption Sum, was that the Company's membership interest in CDM was purchased by or otherwise transferred to DFW for the Redemption Sum.

150 The substantive effect of the overall transaction or series of transactions pleaded above, including the Impugned Transactions already pleaded, was that:

150.1 The Company realised its interest in the Fund, which had a NAV of c. US$270 million, for c. US$1.6 million.

150.2 The Company made a distribution to the Original Participating Shareholders (c. US$1.6 million).

150.3 The Supporting Organisations and the Charities were actually or effectively divested of their indirect interest in the Fund, and the assets underlying the Fund; and

150.4 The Original Participating Shareholders were diluted from 100% of the economic interests in the Company to less than 50%.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

53

Voluntary Liquidation and Supervision Order

151   On 2 April 2025, the Directors resolved, without telling the Supporting Organisations or the Charities, to place the Company into voluntary liquidation and appoint Mitchell Mansfield and William Clarke (the JVLs) of Kroll (Cayman) Ltd as voluntary liquidators.

152   However, unaware of the voluntary liquidation, on 10 April 2025, the Supporting Organisations presented a petition seeking the winding up of the Company on a just and equitable basis, under section 92(e) of the Companies Act (2025 Revision) (the "**J&E Petition**").

153   On 25 April 2025, Walkers and Shields Legal held a call to discuss the J&E Petition.  Following that call, Mr Patrick wrote in an email that the "*message ideas*" "*for Monday*" were to "*poison the well*", by which he meant to create a negative impression of Mr Dondero in the eyes of the Court.

154   On 6 May 2025, Justice Jalil Asif KC made a supervision order, under which voluntary liquidation of the Company was to be continued under the supervision of the Court pursuant to s.131 of the Companies Act (As Revised), and the JOLs were appointed.

**OBLIGATIONS OWED BY THE DIRECTORS**

155   At all material times, the Directors, as directors, owed the following duties individually to the Company:

155.1   A fiduciary duty to act *bona fide* in what he considers to be the best interests of the Company (the "**Best Interests Duty**").

155.2   A fiduciary duty to exercise his powers for a proper purpose, and for the purposes for which they were conferred (the "**Proper Purpose Rule**").

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

54

**Page 58 of 83**

155.3   A fiduciary duty not to place himself in a position where his personal interest actually or potentially conflicted with his duty of loyalty to the Company (the "**First No-Conflicts Duty**").

155.4   A fiduciary duty not to place himself in a position where his duty to another actually or potentially conflicted with his duty of loyalty to the Company (the "**Second No-Conflicts Duty**").

155.5   A fiduciary duty to not make an unauthorised profit from or by reason of his fiduciary position (the "**No Profit Duty**").

155.6   A fiduciary duty not to accrue or take a benefit or commercial opportunity from the Company without the full and informed consent of the Company (the "**No Self-Dealing Rule**").

155.7   A duty to exercise reasonable skill, care, and diligence in the performance of his role and function as director (the "**Reasonable Care Duty**").

156     With respect at least to Mr Patrick, his duties above and the standard to which he was obliged to comply with such duties are affected by being in the Control Position and the trustee or trustee-like position he occupied. Paragraph 76 above is also relied upon.

157     The Company reserves its position as to whether Mr Patrick, by reason of being in the Control Position and the trustee or trustee-like position he occupied, was an express or other trustee of the assets of the Fund for the Original Participating Shareholders and, through or in addition to them, the Charities.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

55

**ATTRIBUTION OF KNOWLEDGE AND INTENTION**

158    As a matter of Cayman Islands law, Mr Patrick's intention and knowledge of facts and matters for all such purposes relevant to this claim is to be attributed to each of DFW, CDM, and the New GP on the basis of at least the following facts:

158.1    As regards DFW, Mr Patrick is listed under DFW's certificate of incorporation, dated 9 December 2024, as "the member of the corporation", and the Admission Agreement showed he served as its "President". Mr Patrick is also the registered director of DFW. Mr Patrick the agent of DFW, in which capacity Mr Patrick executed the Admission Agreement.

158.2    As regards CDM, Mr Patrick is described under the LLC Agreement as the "Manager" of CDM, in which role Mr Patrick was CDM's agent, and in which capacity he (i) executed the Deed of Assignment and Assumption on behalf of CDM, and (ii) executed a written 'Manager Consent' (the "**Manager Consent**") approving the Redemption and Admission Agreements; and executed the Redemption and Admission Agreements.

158.3    As regards the New GP, Mr Patrick was and remains its director, and therefore its agent (in which capacity, Mr Patrick executed the Deed of Assignment and Assumption on the New GP's behalf). Further, Mr Patrick is the sole shareholder of the New GP.

159    Further, if applicable, as a matter of the laws of the State of Delaware, Mr Patrick's knowledge and intention is to be attributed to DFW, CDM, and the New GP on a like basis.

**CLAIMS AGAINST THE DEFENDANTS**

<u>Breaches of fiduciary and other duty</u>

160    The First and Second Defendants, and each of them, in their capacity as a Director of the Company, acted in breach of their fiduciary and other duties to the Company as follows.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

56

Restructuring, including the CDM Assignment

161     The Directors (and each of them), in procuring, directing or effecting the Restructuring as set
        out above, acted in breach of their duties to the Company, including the Best Interests Duty,
        the Proper Purpose Rule and the Reasonable Care Duty.  Additionally, Mr Patrick, in procuring,
        directing or effecting the Restructuring as set out above, acted in breach of his duties to the
        Company, including the No Self-Dealing Rule, No Profit Duty, and No-Conflicts Duty (First and
        Second No-Conflicts Duties).

                                            PARTICULARS

        161.1   The Plaintiff relies on paragraphs 77 to 105 above.

        161.2   With the assistance of Mr Mancino, Mr Patrick took steps to form CDM and appoint
                himself as Manager of CDM.

        161.3   Mr Patrick designed and/or negotiated and/or directed and/or effected the Restructuring
                in his capacity as Director of the Company, Director of the New GP, and Manager of
                CDM, being each of the parties to the Deed, and signed the Deed on behalf of each
                party.

        161.4   The Directors (and each of them) approved the transfer of the Company's entire limited
                partnership interest in the Fund (having net assets worth c. US$270 million) to CDM, a
                Delaware entity whose LLC Agreement excluded any fiduciary obligations owed by its
                Manager (i.e. Mr Patrick) to CDM itself or to its members; in exchange for membership
                interest in CDM, which interest was capable of being extinguished, by redemption, and
                for a "fair value", determined at the discretion of the Manager (i.e. Mr Patrick).

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is
PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref:
CJM/JRN/TQR/858403.000001/83559387)

                                                                                            57

**Page 61 of 83**

161.5   The Restructuring was of no benefit to the Company and not in its best interests, and Mr Patrick was subject to conflicts of interest (First and Second No-Conflicts Duties) and committed acts of self-dealing.

161.6   The Directors (and each of them) acted when each of them:

(a)     knew or ought to have known that the Company was proposing to exchange the Partnership Interest for a membership interest in CDM that was subject to redemption entirely at Mr Patrick's discretion, and for a "*fair value*" determined, in good faith, in his discretion.

(b)     knew or ought to have known that the Company was therefore proposing to trade its Partnership Interest, which was not in practical terms defeasible, for an interest that could be extinguished: (i) at a time over which it had no control, (ii) for a price over which it had very limited control and (iii) for a potential valuation basis which excluded a net asset valuation of the assets held in the Fund.

(c)     knew or ought to have known that the CDM Membership Interest was to be in a Delaware-incorporated company whose LLC Agreement excluded any fiduciary obligations owed by its Manager either to CDM itself or to its members and was therefore less valuable than the Partnership Interest.

(d)     knew or ought to have known that the CDM Assignment was therefore a transaction at an undervalue.

161.7   It can be inferred, and is averred, that Mr Patrick was drawing fees or remuneration or emoluments or benefits from CDM without the full authorisation or full and informed consent of the Company.

161.8   Further, and in any event, the Directors (and each of them) acted when each of them:

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

58

**Page 62 of 83**

(a)   knew or ought to have known that the CDM Assignment was the first step in a series of connected future transactions, including those pursuant to the CDM Assignment, the Share Issuance, the Admission Agreement, the Redemption Agreement and the Redemption, under which the Directors were able to and ultimately did procure the redemption of the Company's CDM Membership Interest, thus extinguishing the Company's interest in the Fund, for an undervalue.

(b)   knew or ought to have known that:

(i)   the full terms and effect of the CDM Assignment was not a proper or proportionate response to any genuinely perceived risk about U.S. tax concerns.

(ii)   the full terms and effect the CDM Assignment was not a proper or proportionate response to any genuinely perceived risk to the Company, which was not itself a Donor Advised Fund and/or did not enjoy or require tax-exempt status under s.501(c)(3) of the U.S. Internal Revenue Code.

(iii)   other approaches to address concerns with respect to the tax-exempt status of the HDF short of undertaking the Restructuring (and entering into the CDM Assignment) included notifying the HDF of the conflict and/or concerns and requesting it to remedy it or them.

(iv)   even if the facts and matters alleged in relation to the HDF were correct, there was more than a possibility, after an extended passage of time and at least two levels of appeal, that a U.S. tax audit would result in an adverse determination with respect to the tax-exempt status of the HDF.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

59

    (v)    the tax-exempt status of the HDF was of no concern or no reasonable concern to the Company.

    (c)    knew or ought to have known that they were keeping the Restructuring, the CDM Assignment, CDM itself and all the surrounding circumstances secret from the Participating Shareholders.

162    By reason of the foregoing breaches of duty or any of them:

162.1    The CDM Assignment is void, alternatively voidable and hereby avoided.

162.2    CDM holds the Partnership Interest on trust or constructive trust for the Company.

162.3    CDM is required to re-transfer the Partnership Interest to the Company and account for any profits on the basis of such trust or constructive trust and/or on a restitutionary and/or on a proprietary basis.

<u>Share Issuance</u>

163    The Directors (and each of them), in procuring, directing or effecting the Share Issuance as set out above, acted in breach of their duties to the Company, including the Best Interests Duty, the Proper Purpose Rule and the Reasonable Care Duty.  Additionally, Mr Patrick, in procuring, directing or effecting the Share Issuance as set out above, acted in breach of his duties to the Company, including the No Self-Dealing Rule, No Profit Duty, and No-Conflicts Duty (First and Second No-Conflicts Duties).

PARTICULARS

163.1    The Plaintiff relies on paragraphs 77 to 84, 91 to 96 and 106 to 119 above.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

60

163.2   The Directors (and each of them) designed and/or engineered the Share Issuance, having sought legal advice in relation to the powers conferred on them as Directors of the Company, for the improper purpose of:

(a)   diluting without any proper reason or corporate purpose the existing Participating Shareholders and/or depriving the ability of the Supporting Organisations to continue to comprise a majority of the Participating Shareholders.

(b)   inserting DFW as a new Participating Shareholder, an entity under the sole control of Mr Patrick, to obstruct and/or prejudice and/or adversely affect the exercise of a Participating Shareholders' right to petition for the just and equitable winding-up of the Company.

163.3   The Directors (and each of them) acted when each of them:

(a)   knew or ought to have known the issue and allotment of shares at par to DFW was of no benefit to the Company.

(b)   knew or ought to have known that the exercise of the power to issue shares and allot them to DFW was for the improper purpose of diluting the interest of the Original Participating Shareholders.

(c)   knew or ought to have known that the Share Issue Resolution and/or the Share Issuance or otherwise the issue and/or allotment of shares to DFW was a response to the prospect that the Supporting Organisations might present a petition for the winding-up of the Company on a just and equitable basis, as indeed they did on 10 April 2025 in ignorance of the Share Issue Resolution and/or the Share Issuance or otherwise the issue and/or allotment of shares to DFW.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

61

(d)     knew or ought to have known that the sole or primary purpose of the Share Issue Resolution and/or the Share Issuance or otherwise the issue and/or allotment of shares to DFW was to insert a new majority Participating Shareholder (under their or at least Mr Patrick's control) into the Company's share capital structure to (if they or at least Mr Patrick deemed fit) to oppose the actions of the Supporting Organisations and/or the Original Participating Shareholders, both in relation to any potential contributories' winding-up petition and otherwise, and/or to obstruct and/or prejudice and/or adversely affect the exercise at any time of any rights of the Supporting Organisations as Participating Shareholders.

163.4   Mr Patrick designed and/or directed and/or effected the Share Issuance in his capacity as Director of the Company, even though he was 'President' of DFW and the sole member and the sole director of DFW.

163.5   It can be inferred, and is averred, that Mr Patrick was drawing fees or remuneration or emoluments or benefits from DFW (if not also from CDM) without the full authorisation or full and informed consent of the Company.

164    By reason of the foregoing breaches of duty or any of them:

164.1   the Share Issue Resolution and/or the Share Issuance or otherwise the issue and/or allotment of shares to DFW is void, alternatively voidable and hereby avoided.

164.2   DFW holds its shares on trust or constructive trust for the Company.

164.3   DFW is required to concur in the rescission of the allotment and to re-transfer its shares to the Company on the basis of such trust or constructive trust and/or on a restitutionary and/or on a proprietary basis.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

62

164.4   The Company's register of shareholders shall be rectified accordingly.

<u>Admission and Redemption</u>

165   The Directors (and each of them), in procuring or entering into the Admission Agreement and the Redemption Agreement, and/or in procuring, directing or effecting the Redemption acted in breach of their duties to the Company, including the Best Interests Duty, the Proper Purpose Rule and the Reasonable Care Duty.  Additionally, Mr Patrick, in procuring or entering into the Admission Agreement and the Redemption Agreement, or in procuring, directing or effecting the Redemption as set out above, acted in breach of his duties to the Company, including the No Self-Dealing Rule, No Profit Duty, and No-Conflicts Duty (First and Second No-Conflicts Duties).

PARTICULARS

165.1   The Plaintiff relies on paragraphs 120 to 150 above.

165.2   The Directors (and each of them) acted when each of them:

(a)      knew or ought to have known that:

(i)      proceeding on the basis of the Seyfarth/Mancino letter to the IRS dated 20 March 2025 was flawed or unreasonable.

(ii)     proceeding was not a proper or proportionate response to any genuinely perceived risk about U.S. tax concerns.

(iii)    the tax-exempt status of the HDF was of no concern or no reasonable concern to the Company.

(iv)    proceeding on the basis of the March 2025 Valuation and the FTI Report was flawed in that: (i) the 99.2% discount in value proposed by the

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

63

ValueScope Report was a manifestly excessive discount, and resulted in the Company parting with its indirect ownership of 99% of the economic interest in the Fund (which had net assets worth c. US$270 million) for a mere US$1,637,192; and (ii) as pleaded above, the FTI Report expressly stated that *"this memo should not be used to support a transaction."*

(v)   the Admission Agreement and the Redemption Agreement were steps in a series of connected transactions, including those pursuant to the CDM Assignment, the Share Issuance, under which the Directors were able to and ultimately did procure the extinguishment of the Company's interest in the Fund, through the redemption of the Company's membership interest in CDM, for an undervalue.

(b)   knew or ought to have known that the sole or primary purpose of the Admission Agreement, the Redemption Agreement and the Redemption was to ensure that the Company was fully and finally deprived of an asset (its interest in the Fund) at an undervalue; and to enable a third party, DFW, controlled by Mr Patrick, to procure ownership of an interest in the Fund in complete replacement of the Company.

165.3   Mr Patrick designed and/or negotiated and/or directed and/or effected the Admission Agreement, the Redemption Agreement and the Redemption as Director of the Company, even though he was Manager of CDM and 'President' of DFW, sole member of CDM and sole member and sole director of DFW.

166   By reason of the foregoing breaches of duty or any of them:

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

64

**Page 68 of 83**

166.1   DFW holds the CDM Membership Interest on trust or constructive trust for the Company.

166.2   DFW is required to concur in the transfer of the CDM Membership Interest to the Company or as the Company directs on the basis of such trust or constructive trust and/or on a restitutionary and/or on a proprietary basis.

<u>Further claims against Mr Murphy</u>

167   In respect of any breach of duty as set out above for which Mr Patrick alone is liable:

167.1   At all material times, Mr Murphy worked in close concert with Mr Patrick, including at his direction.

167.2   Mr Murphy knew or ought to have known all the facts and matters pleaded above as known or ought to have been known by Mr Patrick.

167.3   Mr Murphy knew or ought to have known of all the facts and matters pertaining to such breach or breaches by Mr Patrick.

167.4   Mr Murphy took no steps to stop Mr Patrick or to prevent or report the breach or breaches of duty by Mr Patrick.

167.5   Mr Murphy accepted and acquiesced in all steps and actions suggested, promoted or effected by Mr Patrick.

167.6   Mr Murphy accepted and acquiesced in the breach or breaches of duty by Mr Patrick.

167.7   As a consequence, Mr Murphy has acted in breach of his duties to the Company, including the Best Interests Duty and the Reasonable Care Duty.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

65

Case 19-34054-sgj11    Doc 4342    Filed 07/23/25    Entered 07/23/25 23:23:36    Desc
Imaged Certificate of Notice    Page 82 of 120
**Page 69 of 83**

FSD2025-0201                                                                        2025-07-15

Directors' Fees, Remuneration and Expenses

168    The Company is still unclear as to what precise fees or remuneration or emoluments or benefits were afforded to the Directors and from what source, and as to the proper expenses of the Company, in the period after March 2021 and thus reserves its position.

169    As is pleaded above in paragraphs 85 to 89, the Directors approved large increases for Mr Patrick's remuneration, benefits or emoluments: by around 1 October 2024, Mr Patrick's remuneration comprised a base salary of US$850,000, a bonus of 2.5 times that base salary, an LTI incentive payment of US$975,000; for the period March 2021 to March 2024, Mr Patrick was entitled to an aggregate LTI payment of US$4,759,000; and eligibility for discretionary and annual bonuses in addition, to be determined at the sole and absolute discretion of the Directors. By contrast, Mr Scott's annual salary and entire benefits during his tenure in the Control Position was US$60,000.

170    Insofar as the Directors (or each of them) approved of or procured any payment or benefit to or for Mr Patrick or Mr Murphy more than the sum of US$60,000 per annum each in respect of fees or remuneration or emoluments or benefits, such sum was excessive and conferred in breach of duty to the Company, including the Best Interests Duty, the Proper Purpose Rule, the first No-Conflicts Duty, the No Self-Dealing Rule and the Reasonable Care Duty.

171    Further, as is pleaded above, the Directors (or each of them) approved or caused the payment of considerable sums by way of expenses, amounting for example to US$18.3 million for the first half of 2024, and US$18.6 million spent over 2023.  Such expenses may include the expenses incurred in effecting the transactions which are the subject matter of these proceedings.  The reasonableness or *bona fides* of these expenses is not accepted by the Company.

172    The Company claims:

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

66

172.1 Full information, documents and discovery as to the fees or remuneration or emoluments or benefits or expenses paid or claimed by Mr Patrick and Mr Murphy and each of them since March 2021.

172.2 Full information, documents and discovery as to expenses incurred by the Company or the Fund or any of the Fund's subsidiaries or investments since March 2021.

172.3 Repayment to the Company of all fees or remuneration or emoluments or benefits paid or claimed by Mr Patrick or Mr Murphy and each of them in excess of US$60,000 per annum; together with all improperly paid expenses caused or procured by Mr Patrick or Mr Murphy (or damages or equitable compensation in relation thereto).

Unlawful Means Conspiracy

173    The facts and matters pleaded above amount to an unlawful means conspiracy as follows:

173.1 It is unclear when the conspiracy began but it appears to have started by around the start of 2024.

173.2 The original conspirators were Mr Patrick and Mr Murphy. The Company is unaware of the circumstances in which Mr Patrick and Mr Murphy agreed or combined and is unable to plead further pending further information or discovery.

173.3 As they were incorporated and participated in the facts and matters pleaded above, the New GP, CDM and DFW joined the conspiracy but remain liable in damages for all losses, including prior to joining the conspiracy.

173.4 The conspiracy was a conspiracy to injure the Company.

173.5 The overt acts of the conspiracy were all the facts and matters pleaded above, including as breaches by Mr Patrick or Mr Murphy.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

67

173.6   The unlawful means of the conspiracy were all the facts and matters pleaded above as breaches of duty by Mr Patrick or Mr Murphy.

173.7   Each of the conspirators intended to injure the Company.  This averment is an inference from all the facts and matters pleaded above.

173.8   As a consequence, the Company has suffered loss and damage, as a result of the Restructuring, the CDM Assignment, and the Admission and Redemption, and the combined effect thereof, as set out above.

Proprietary claim and/or unconscionable receipt

174   The facts and matters pleaded above give rise to claims by the Company for unconscionable receipt as follows:

174.1   CDM received the Company's Partnership Interest in the Fund under the CDM Assignment.

174.2   The knowledge of CDM was and is that of Mr Patrick.

174.3   The breaches of duty in relation to the CDM Assignment above are relied upon.

174.4   CDM knew that the CDM Assignment was at an undervalue and that causing or procuring the Company to enter into the CDM Assignment was a breach of fiduciary duty by Mr Patrick and/or Mr Murphy.

174.5   By reason of the foregoing, it is unconscionable for CDM to retain the Partnership Interest in the Fund and CDM is liable to account to the Company in equity, by restoring Partnership Interest in the Fund to the Company and/or accounting for any profits or otherwise accounting to the Company in equity.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

68

Unjust Enrichment

175    In receiving the Company's Partnership Interest in the Fund, CDM was unjustly enriched at the Company's expense and is liable to the Company in restitution:

175.1   The Partnership Interest was transferred on the basis that there was a valid assignment agreement effecting that transfer.

175.2   That basis has totally failed, the CDM Assignment being either void, or avoided hereby.

Alter Ego and Lifting the Corporate Veil

176    In order to obtain the return to it of the Partnership Interest in the Fund, together with an Account of Profits, the Company does not need as a matter of law to make any allegation of "alter ego" or to lift the corporate veil in relation to CDM or DFW.

177    If, contrary to the paragraph above, the Company does so need, it makes the following allegations for the purposes of all relevant claims or causes of action set out above.

177.1   CDM is the "alter ego" of Mr Patrick.

177.2   DFW is the "alter ego" of Mr Patrick.

177.3   In relation to the receipt of any property by CDM directly or indirectly from the Company or the accrual of any profits or benefits by reason of such receipt, the corporate veil should be lifted, with the consequence that such receipt and such profits or benefits should be treated as those of Mr Patrick personally.

177.4   In relation to the receipt of any property by DFW directly or indirectly from the Company or the accrual of any profits or benefits by reason of such receipt, the corporate veil should be lifted, with the consequence that such receipt and such profits or benefits should be treated as those of Mr Patrick personally.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

69

FSD2025-0201 **Page 73 of 83** 2025-07-15

PARTICULARS

(a)     In relation to CDM:

(i)     Mr Patrick was and is the Manager. There are no other officers or managers.

(ii)    Mr Patrick was and is the managing member.

(iii)   CDM was incorporated at Mr Patrick's instigation in order to enter into the CDM Assignment or a transaction of like nature.

(iv)    CDM's sole or primary purpose was to play a part in a scheme whereby Mr Patrick would obtain control of the Company's Partnership Interest in the Fund free of the Company, the Company's obligations towards the Supporting Organisations and (if the scheme succeeded) free of Mr Patrick's duties to the Company.

(v)     CDM exists and operates in order to conceal the identity of the true or real actor, namely Mr Patrick.

(b)     In relation to DFW:

(i)     Mr Patrick was and is the 'President'. There are no other officers or managers.

(ii)    Mr Patrick was and is the sole member.

(iii)   Mr Patrick was and is the sole registered director.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

70

FSD2025-0201 **2025-07-15**

(iv)    DFW was incorporated at Mr Patrick's instigation in order to enter into a transaction whereby it would in effect take over the Company's interest in CDM pursuant to the CDM Assignment.

(v)    DFW's sole or primary purpose was (i) to play a part in a scheme whereby Mr Patrick would obtain control of the Company's Partnership Interest in the Fund free of the Company, the Company's obligations towards the Supporting Organisations and (if the scheme succeeded) free of Mr Patrick's duties to the Company, (ii) to be the ultimate vehicle by which Mr Patrick would so control of the Company's Partnership Interest in the Fund and (iii) to be a newly-inserted majority Participating Shareholder (under at least Mr Patrick's control) in the Company's share capital structure to oppose the actions of the Supporting Organisations, both in relation to any potential contributories' winding-up petition and otherwise, and/or to obstruct and/or prejudice and/or adversely affect the exercise at any time of any rights of the Supporting Organisations as Participating Shareholders.

(vi)    DFW exists and operates in order to conceal the identity of the true or real actor, namely Mr Patrick.

Loss and Damage

178    As a consequence of the above, the Company has suffered loss and damage, including but not limited to:

178.1    Its Partnership Interest in the Fund.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

71

178.2   The costs and expenses incurred in relation to the CDM Assignment, the Share Issuance, the Letter Agreement and the Redemption (including all legal or other advice taken in relation thereto).

178.3   Excessive Directors' fees or remuneration or emoluments or benefits.

178.4   Improper expenses (if any).

178.5   The lost opportunity cost of the Fund and its subsidiaries deploying such funds (as set out in (1), (2) and (3) above) elsewhere, and the consequent fall in value of the Company's interest in the Fund.

178.6   The legal and liquidation costs of investigating the conspiracy, and the costs of these proceedings.

**RESERVATION OF POSITION**

179   The Company and the JOLs (who direct the Company in bringing these proceedings) fully reserve their position to apply to amend this claim in any way or to bring fresh or further proceedings against any of the Defendants (whether in the Cayman Islands or elsewhere) in the name of the Company or in the name of the JOLs.

**OTHER**

180   CLO Holdco is joined as a party to these proceedings in order that, as the main subsidiary of the Fund, it may abide by any Order that the Court may make.

**INTEREST**

181   The Company claims interest pursuant to section 34 of the *Judicature Act (2021 Revision)* and the *Judgment Debts (Rates of Interest) Rules (2021 Revision)*, alternatively pursuant to the

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

72

Court's equitable jurisdiction, compounded in equity at quarterly rests, alternately at common law, for such period and at such rate as the Court thinks just.

**PRAYER FOR RELIEF**

In the premises, the Company claims:

(1)     Damages or equitable compensation.

(2)     Orders for restitution or disgorgement.

(3)     Orders for the restoration of property to the Company.

(4)     Interlocutory or final injunctions as may be necessary or appropriate.

(5)     Orders for the appointment of a Receiver or Receivers, as may be necessary or appropriate.

(6)     Orders for the provision of documents or information at an early interlocutory stage.

(7)     Orders for the cancellation of the Share Issuance, as appropriate.

(8)     Rectification of the register of the Company, as appropriate.

(9)     Orders pursuant to s.99 of the Companies Act (as revised), as appropriate.

(10)    An Account of the fees or remuneration or emoluments or benefits or expenses paid or claimed by Mr Patrick and Mr Murphy and each of them since March 2021.

(11)    An Account of all expenses incurred by the Company or the Fund or any of the Fund's subsidiaries or investments since March 2021.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

73

**Page 77 of 83**

(12)    All other Accounts, including an Account of Profits, or Inquiries as may be necessary or appropriate; and further Orders to give effect to the outcome of such Accounts or Inquiries, including Orders for payment of sums to the Company.

(13)    All such declarations as may be necessary or appropriate, including to give effect to the continuing interest of the Company in the Fund on the basis of a proprietary interest, trust, constructive trust or otherwise.

(14)    All such other relief relating to the Impugned Transactions as may be necessary or appropriate.

(15)    Interest as above.

(16)    Further or other relief.

(17)    Costs.

DATED  this 15th day of July 2025

*Maples and Calder (Cayman) LLP*

―――――――――――――――――――
**Maples and Calder (Cayman) LLP**

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

74

**DIRECTIONS FOR ACKNOWLEDGMENT OF SERVICE**

**OF WRIT OF SUMMONS**

182   The accompanying form of Acknowledgment of Service should be completed by an Attorney acting on behalf of the Defendant or by the Defendant if acting in person.

     After completion it must be delivered or sent by post to the Law Courts, PO Box 495G, George Town, Grand Cayman, KY1-1106, Cayman Islands.

183   A Defendant who states in the Defendant's Acknowledgment of Service that the Defendant intends to contest the proceedings must also serve a Defence on the Attorney for the Plaintiff (or on the Plaintiff if acting in person).

     If a Statement of Claim is indorsed on the Writ (i.e. the words "Statement of Claim" appear on the top of page 2), the Defence must be served within 14 days after the time for acknowledging service of the Writ, unless in the meantime a summons for judgment is served on the Defendant.

     If the Statement of Claim is not indorsed on the Writ, the Defence need not be served until 14 days after a Statement of Claim has been served on the Defendant.

     If the Defendant fails to serve his Defence within the appropriate time, the Plaintiffs may enter judgment against the Defendant without further notice.

184   A Stay of Execution against the Defendant's goods may be applied for where the Defendant is unable to pay the money for which any judgment is entered.  If a Defendant to an action for a debt or liquidated demand (i.e. a fixed sum) who does not intend to contest the proceedings

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiffs, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

**Page 79 of 83**

states, in answer to Question 3 in the Acknowledgment of Service, that the Defendant intends to apply for a stay, execution will be stayed for 14 days after that Defendant's Acknowledgment, but the Defendant must, within that time, issue a Summons for a stay of execution, supported by an affidavit of the Defendant's means.  The affidavit should state any offer which the Defendant desires to make for payment of the money by instalments or otherwise.

**See overleaf for Notes for Guidance**

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

2

**FSD2025-0201** **Page 80 of 83** **2025-07-15**

**Notes for Guidance**

1    Each Defendant (if there are more than one) is required to complete an Acknowledgment of Service and return it to the Courts Office.

2    For the purpose of calculating the period of 14 days for acknowledging service, a writ served on the Defendant personally is treated as having been served on the day it was delivered to the Defendant.

3    Where the Defendant is sued in a name different from the Defendant's own, the form must be completed by the Defendant with the addition in paragraph 1 of the words "sued as (the name stated on the Writ of Summons)".

4    Where the Defendant is a FIRM and an attorney is not instructed, the form must be completed by a PARTNER by name, with the addition in paragraph 1 of the description "Partner in the firm of (......................................)" after that Partner's name.

5    Where the Defendant is sued as an individual TRADING IN A NAME OTHER THAN THAT PERSON'S OWN, the form must be completed by the Defendant with the addition in paragraph 1 of the description "trading as (...........................)" after that Defendant's name.

6    Where the Defendant is a LIMITED COMPANY the form must be completed by an Attorney or by someone authorised to act on behalf of the Company, but the Company can take no further step in the proceedings without an Attorney acting on its behalf.

7    Where the Defendant is a MINOR or a MENTAL PATIENT, the form must be completed by an Attorney acting for a guardian *ad litem*.

8    A Defendant acting in person may obtain help in completing the form at the Courts Office.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/JRN/TQR/858403.000001/83559387)

3

**FSD2025-0201** **2025-07-15**

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

CAUSE NO: FSD      OF 2025 (     )

**BETWEEN:**

**CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

<u>Plaintiff</u>

**AND**

| | | |
|---|---|---|
| (1) | **MARK ERIC PATRICK** | |
| (2) | **PAUL MURPHY** | |
| (3) | **CDMCFAD, LLC** | |
| (4) | **DFW CHARITABLE FOUNDATION** | |
| (5) | **CDH GP, LTD. AS GENERAL PARTNER FOR AND ON BEHALF OF CHARITABLE DAF FUND, LP, AND IN ITS CAPACITY AS GENERAL PARTNER** | |
| (6) | **CLO HOLDCO, LTD.** | |

<u>Defendants</u>

**ACKNOWLEDGMENT OF SERVICE**

**OF WRIT OF SUMMONS**

If you intend to instruct an Attorney to act for you, give that Attorney this form IMMEDIATELY.

Important.  Read the accompanying

directions and notes for guidance carefully before completing this form.  If any information required is omitted or given wrongly, THIS FORM MAY HAVE TO BE RETURNED.

Delay may result in judgment being entered against a Defendant whereby he may have to pay the costs of applying to set it aside.

1. State the full name of the Defendant by whom or on whose behalf the service of the Writ is being acknowledged.

2. State whether the Defendant intends to contest the proceedings (tick appropriate box)

**Page 82 of 83**

☐ yes ☐ no

3.  If the claim against the Defendant is for a debt or liquidated demand, AND the Defendant does not intend to contest the proceedings, state if the Defendant intends to apply for a stay of execution against any judgment entered by the Plaintiff (tick box)

    ☐yes ☐ no

Service of the Writ is acknowledged accordingly

(Signed).......................................................

　　　Attorney for

2

**Notes on address for service**

Attorney: where the Defendant is represented by an attorney, state the attorney's place of business in the Cayman Islands.  A Defendant may not act by a foreign attorney.

Defendant in person: where the Defendant is acting in person, the Defendant must give the Defendant's post office box number and the physical address of the Defendant's residence or, if the Defendant does not reside in the Cayman Islands, the Defendant must give an address in Grand Cayman where communications for the Defendant should be sent.  In the case of a limited company, "residence" means its registered or principal office.

Indorsement by plaintiff's Attorney (or by plaintiff if suing in person) of that Plaintiff's name, address and reference, if any, in the box below.

Maples and Calder (Cayman) LLP
PO Box 309 Ugland House
Grand Cayman KY1-1104

Cayman Islands: CJM/JRN/LRA/TQR/858403-01

Indorsement by defendant's Attorney (or by defendant if suing in person) of that defendant's name, address and reference, if any, in the box below.

3

United States Bankruptcy Court

Northern District of Texas

In re:                                                                                           Case No. 19-34054-sgj

Highland Capital Management, L.P.                                                 Chapter 11

  Debtor

# CERTIFICATE OF NOTICE

District/off: 0539-3                         User: admin                                    Page 1 of 24

Date Rcvd: Jul 21, 2025                   Form ID: pdf012                          Total Noticed: 1

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jul 23, 2025:**

| Recip ID | Recipient Name and Address |
|---|---|
| intp | State of Texas, c/o The Texas Attorney General's Office, P. O. Box 12548, MC-010, Austin, TX 78711-2548 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a
preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities
in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and
belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the
complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains
the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jul 23, 2025                        Signature:            /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on July 21, 2025 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| A. Lee Hogewood, III | on behalf of Interested Party NexPoint Advisors  L.P. lee.hogewood@klgates.com, Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artoush.varshosaz@klgates.com |
| A. Lee Hogewood, III | on behalf of Interested Party Highland Total Return Fund lee.hogewood@klgates.com Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artoush.varshosaz@klgates.com |
| A. Lee Hogewood, III | on behalf of Interested Party Highland Funds I and its series lee.hogewood@klgates.com Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artoush.varshosaz@klgates.com |
| A. Lee Hogewood, III | on behalf of Interested Party Highland Opportunistic Credit Fund lee.hogewood@klgates.com Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artoush.varshosaz@klgates.com |
| A. Lee Hogewood, III | on behalf of Defendant NexPoint Capital  Inc. lee.hogewood@klgates.com, Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artoush.varshosaz@klgates.com |

A. Lee Hogewood, III

on behalf of Defendant NexPoint Strategic Opportunities Fund lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Small-Cap Equity Fund lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Global Allocation Fund lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Fixed Income Fund lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Income Fund lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party NexPoint Real Estate Strategies Fund lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Defendant NexPoint Advisors  L.P. lee.hogewood@klgates.com,
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party NexPoint Strategic Opportunities Fund lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Defendant Highland Capital Management Fund Advisors  L.P. lee.hogewood@klgates.com,
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party NexPoint Capital  Inc. lee.hogewood@klgates.com,
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Defendant Highland Income Fund lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Socially Responsible Equity Fund lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Funds II and its series lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Capital Management Fund Advisors  L.P. lee.hogewood@klgates.com,
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Healthcare Opportunities Fund lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland/iBoxx Senior Loan ETF lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous
h.varshosaz@klgates.com

A. Lee Hogewood, III

on behalf of Interested Party Highland Merger Arbitrage Fund lee.hogewood@klgates.com
Sarah.bryant@klgates.com;Mary-Beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.steele@klgates.com;Artous

h.varshosaz@klgates.com

Alexandre J. Tschumi

on behalf of Interested Party Litigation Trustee of the Highland Capital Management L.P. Litigation Sub-Trust
alextschumi@quinnemanuel.com

Ali Ohlinger

on behalf of Partner Dugaboy Investment Trust aohlinger@cwl.law

Alyssa Russell

on behalf of Creditor Committee Official Committee of Unsecured Creditors alyssa.russell@sidley.com
efilingnotice@sidley.com;alyssa-russell-3063@ecf.pacerpro.com

Amanda Rush

on behalf of Interested Party CCS Medical Inc. asrush@jonesday.com

Amy K. Anderson

on behalf of Creditor Issuer Group aanderson@joneswalker.com
tfontenot@joneswalker.com;amy-anderson-9331@ecf.pacerpro.com

Amy Lynne Ruhland

on behalf of Creditor The Dugaboy Investment Trust amy.ruhland@pillsburylaw.com
docket@pillsburylaw.com;claudia.jimenez@pillsburylaw.com;kira.hamm@pillsburylaw.com

Amy Lynne Ruhland

on behalf of Creditor Get Good Trust amy.ruhland@pillsburylaw.com
docket@pillsburylaw.com;claudia.jimenez@pillsburylaw.com;kira.hamm@pillsburylaw.com

Amy Lynne Ruhland

on behalf of Defendant STRAND ADVISORS INC amy.ruhland@pillsburylaw.com,
docket@pillsburylaw.com;claudia.jimenez@pillsburylaw.com;kira.hamm@pillsburylaw.com

Amy Lynne Ruhland

on behalf of Creditor NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC amy.ruhland@pillsburylaw.com
docket@pillsburylaw.com;claudia.jimenez@pillsburylaw.com;kira.hamm@pillsburylaw.com

Amy Lynne Ruhland

on behalf of Defendant GET GOOD TRUST AND GRANT JAMES SCOTT III AS TRUSTEE OF GET GOOD TRUST
amy.ruhland@pillsburylaw.com, docket@pillsburylaw.com;claudia.jimenez@pillsburylaw.com;kira.hamm@pillsburylaw.com

Amy Lynne Ruhland

on behalf of Interested Party James Dondero amy.ruhland@pillsburylaw.com
docket@pillsburylaw.com;claudia.jimenez@pillsburylaw.com;kira.hamm@pillsburylaw.com

Amy Lynne Ruhland

on behalf of Creditor Strand Advisors Inc. amy.ruhland@pillsburylaw.com,
docket@pillsburylaw.com;claudia.jimenez@pillsburylaw.com;kira.hamm@pillsburylaw.com

Amy Lynne Ruhland

on behalf of Defendant DUGABOY INVESTMENT TRUST AND NANCY DONDERO AS TRUSTEE OF DUGABOY
INVESTMENT TRUST amy.ruhland@pillsburylaw.com,
docket@pillsburylaw.com;claudia.jimenez@pillsburylaw.com;kira.hamm@pillsburylaw.com

Amy Lynne Ruhland

on behalf of Defendant James D. Dondero amy.ruhland@pillsburylaw.com
docket@pillsburylaw.com;claudia.jimenez@pillsburylaw.com;kira.hamm@pillsburylaw.com

Andrea Louise Calhoun

on behalf of Defendant Alvarez & Marsal CRF Management LLC acalhoun@gibsondunn.com, pacer-tx@gibsondunn.com

Andrew Clubok

on behalf of Plaintiff UBS Securities LLC andrew.clubok@lw.com andrew-clubok-9012@ecf.pacerpro.com,dclitserv@lw.com

Andrew Clubok

on behalf of Interested Party UBS Securities LLC andrew.clubok@lw.com
andrew-clubok-9012@ecf.pacerpro.com,dclitserv@lw.com

Andrew Clubok

on behalf of Interested Party UBS AG London Branch andrew.clubok@lw.com
andrew-clubok-9012@ecf.pacerpro.com,dclitserv@lw.com

Andrew Clubok

on behalf of Plaintiff UBS AG London Branch andrew.clubok@lw.com
andrew-clubok-9012@ecf.pacerpro.com,dclitserv@lw.com

Andrew K. York

on behalf of Defendant Patrick Hagaman Daugherty dyork@grayreed.com slangley@grayreed.com

Andrew K. York

on behalf of Creditor Patrick Daugherty dyork@grayreed.com slangley@grayreed.com

Annmarie Antoniette Chiarello

on behalf of Creditor Acis Capital Management GP LLC achiarello@winstead.com, poakley@winstead.com

District/off: 0539-3                          User: admin                          Page 4 of 24
Date Rcvd: Jul 21, 2025                        Form ID: pdf012                      Total Noticed: 1

Annmarie Antoniette Chiarello
                on behalf of Creditor Acis Capital Management  L.P. achiarello@winstead.com, poakley@winstead.com

Artoush Varshosaz
                on behalf of Interested Party Highland Socially Responsible Equity Fund artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party NexPoint Strategic Opportunities Fund artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Defendant Highland Capital Management Fund Advisors  L.P. artoush.varshosaz@klgates.com,
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party NexPoint Advisors  L.P. artoush.varshosaz@klgates.com,
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Defendant NexPoint Capital  Inc. artoush.varshosaz@klgates.com,
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party Highland Total Return Fund artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party Highland Merger Arbitrage Fund artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party Highland Fixed Income Fund artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party Highland Capital Management Fund Advisors  L.P. artoush.varshosaz@klgates.com,
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party Highland Healthcare Opportunities Fund artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party Highland Small-Cap Equity Fund artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Defendant Highland Income Fund artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party NexPoint Real Estate Strategies Fund artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party Highland Funds II and its series artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party NexPoint Capital  Inc. artoush.varshosaz@klgates.com,
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party Highland Funds I and its series artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party Highland/iBoxx Senior Loan ETF artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Defendant NexPoint Strategic Opportunities Fund artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Defendant NexPoint Advisors  L.P. artoush.varshosaz@klgates.com,
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
                on behalf of Interested Party Highland Income Fund artoush.varshosaz@klgates.com
                Julie.garrett@klgates.com;allison.stowe@klgates.com

Artoush Varshosaz
on behalf of Interested Party Highland Global Allocation Fund artoush.varshosaz@klgates.com
Julie.garrett@klgates.com;allison.stowe@klgates.com

Asif Attarwala
on behalf of Interested Party UBS Securities LLC asif.attarwala@lw.com

Asif Attarwala
on behalf of Interested Party UBS AG London Branch asif.attarwala@lw.com

Basil A. Umari
on behalf of Interested Party Meta-e Discovery  LLC basil@umarilaw.com, pelliott@dykema.com

Bennett Rawicki
on behalf of Defendant Alvarez & Marsal CRF Management  LLC brawicki@hilgersgraben.com

Bojan Guzina
on behalf of Creditor Committee Official Committee of Unsecured Creditors bguzina@sidley.com

Brant C. Martin
on behalf of Creditor NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC brant.martin@wickphillips.com
samantha.tandy@wickphillips.com;CourtMail@wickphillips.com

Brent Ryan McIlwain
on behalf of Creditor Farallon Capital Management  LLC brent.mcilwain@hklaw.com,
robert.jones@hklaw.com;brian.smith@hklaw.com

Brent Ryan McIlwain
on behalf of Defendant Farallon Capital Management  L.L.C. brent.mcilwain@hklaw.com,
robert.jones@hklaw.com;brian.smith@hklaw.com

Brent Ryan McIlwain
on behalf of Other Professional Highland Claimant Trust brent.mcilwain@hklaw.com
robert.jones@hklaw.com;brian.smith@hklaw.com

Brent Ryan McIlwain
on behalf of Debtor Highland Capital Management  L.P. brent.mcilwain@hklaw.com,
robert.jones@hklaw.com;brian.smith@hklaw.com

Brent Ryan McIlwain
on behalf of Creditor Stonehill Capital Management LLC brent.mcilwain@hklaw.com
robert.jones@hklaw.com;brian.smith@hklaw.com

Brent Ryan McIlwain
on behalf of Creditor Muck Holdings LLC brent.mcilwain@hklaw.com  robert.jones@hklaw.com;brian.smith@hklaw.com

Brent Ryan McIlwain
on behalf of Creditor Jessup Holdings LLC brent.mcilwain@hklaw.com  robert.jones@hklaw.com;brian.smith@hklaw.com

Brent Ryan McIlwain
on behalf of Creditor James P. Seery  Jr. brent.mcilwain@hklaw.com, robert.jones@hklaw.com;brian.smith@hklaw.com

Brian D. Glueckstein
on behalf of Interested Party The Mark & Pamela Okada Family Trust - Exempt Trust #2 gluecksteinb@sullcrom.com

Brian D. Glueckstein
on behalf of Interested Party The Okada Insurance Rabbi Trust gluecksteinb@sullcrom.com

Brian D. Glueckstein
on behalf of Interested Party The Mark & Pamela Okada Family Trust - Exempt Trust #1 gluecksteinb@sullcrom.com

Brian D. Glueckstein
on behalf of Interested Party Okada Family Foundation  Inc. gluecksteinb@sullcrom.com

Brian D. Glueckstein
on behalf of Interested Party Mark Okada gluecksteinb@sullcrom.com

Brian J. Smith
on behalf of Defendant Farallon Capital Management  L.L.C. brian.smith@hklaw.com,
robert.jones@hklaw.com;brent.mcilwain@hklaw.com

Bryan C. Assink
on behalf of Defendant James D. Dondero bryan.assink@bondsellis.com  linda.gordon@bondsellis.com

Bryan C. Assink
on behalf of Plaintiff James Dondero bryan.assink@bondsellis.com  linda.gordon@bondsellis.com

Bryan C. Assink
on behalf of Creditor The Dugaboy Investment Trust bryan.assink@bondsellis.com  linda.gordon@bondsellis.com

Cameron A. Fine
on behalf of Cross Defendant DUGABOY INVESTMENT TRUST AND NANCY DONDERO  AS TRUSTEE OF DUGABOY
INVESTMENT TRUST cameron.fine@us.dlapiper.com

District/off: 0539-3                          User: admin                                    Page 6 of 24
Date Rcvd: Jul 21, 2025                     Form ID: pdf012                              Total Noticed: 1

Cameron A. Fine
on behalf of Defendant STRAND ADVISORS  INC cameron.fine@us.dlapiper.com

Cameron A. Fine
on behalf of Defendant DUGABOY INVESTMENT TRUST AND NANCY DONDERO  AS TRUSTEE OF DUGABOY
INVESTMENT TRUST cameron.fine@us.dlapiper.com

Cameron A. Fine
on behalf of Defendant GET GOOD TRUST AND GRANT JAMES SCOTT III  AS TRUSTEE OF GET GOOD TRUST
cameron.fine@us.dlapiper.com

Cameron A. Fine
on behalf of Defendant James D. Dondero cameron.fine@us.dlapiper.com

Candice Marie Carson
on behalf of Plaintiff UBS Securities LLC Candice.Carson@butlersnow.com

Candice Marie Carson
on behalf of Interested Party UBS AG London Branch Candice.Carson@butlersnow.com

Candice Marie Carson
on behalf of Interested Party UBS Securities LLC Candice.Carson@butlersnow.com

Candice Marie Carson
on behalf of Plaintiff UBS AG London Branch Candice.Carson@butlersnow.com

Chad D. Timmons
on behalf of Creditor COLLIN COUNTY TAX ASSESSOR/COLLECTOR bankruptcy@abernathy-law.com

Charles Martin Persons, Jr.
on behalf of Creditor Committee Official Committee of Unsecured Creditors charlespersons@paulhastings.com
michaelmagzamen@paulhastings.com;davidmohamed@paulhastings.com;matlaskowski@paulhastings.com

Charles W. Gameros, Jr.
on behalf of Creditor NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC bgameros@legaltexas.com
lmilam@legaltexas.com;jrauch@legaltexas.com

Charles W. Gameros, Jr.
on behalf of Creditor HCRE Partners  LLC (n/k/a NexPoint Real Estate Partners, LLC) bgameros@legaltexas.com,
lmilam@legaltexas.com;jrauch@legaltexas.com

Christopher Andrew Bailey
on behalf of Creditor Farallon Capital Management  LLC Christopher.Bailey@hklaw.com,
hapi@hklaw.com;trip.nix@hklaw.com;julia.warren@hklaw.com

Christopher Andrew Bailey
on behalf of Creditor Stonehill Capital Management LLC Christopher.Bailey@hklaw.com
hapi@hklaw.com;trip.nix@hklaw.com;julia.warren@hklaw.com

Christopher Andrew Bailey
on behalf of Creditor Muck Holdings LLC Christopher.Bailey@hklaw.com
hapi@hklaw.com;trip.nix@hklaw.com;julia.warren@hklaw.com

Christopher Andrew Bailey
on behalf of Creditor Jessup Holdings LLC Christopher.Bailey@hklaw.com
hapi@hklaw.com;trip.nix@hklaw.com;julia.warren@hklaw.com

Christopher J. Akin
on behalf of Defendant Isaac Leventon cakin@lynnllp.com  vkropp@lynnllp.com

Christopher J. Akin
on behalf of Defendant Scott Ellington cakin@lynnllp.com  vkropp@lynnllp.com

Clay Marshall Taylor
on behalf of Plaintiff James Dondero clay.taylor@dentons.com  DOCKET.GENERAL.LIT.DAL@dentons.com

Clay Marshall Taylor
on behalf of Interested Party James Dondero clay.taylor@dentons.com  DOCKET.GENERAL.LIT.DAL@dentons.com

Cortney C. Thomas
on behalf of Interested Party Okada Family Foundation  Inc. cort@brownfoxlaw.com, korourke@brownfoxlaw.com

Cortney C. Thomas
on behalf of Interested Party Mark Okada cort@brownfoxlaw.com  korourke@brownfoxlaw.com

Cortney C. Thomas
on behalf of Interested Party The Mark & Pamela Okada Family Trust - Exempt Trust #1 cort@brownfoxlaw.com
korourke@brownfoxlaw.com

Cortney C. Thomas
on behalf of Interested Party The Mark & Pamela Okada Family Trust - Exempt Trust #2 cort@brownfoxlaw.com
korourke@brownfoxlaw.com

Cortney C. Thomas
on behalf of Interested Party The Okada Insurance Rabbi Trust cort@brownfoxlaw.com korourke@brownfoxlaw.com

Daniel P. Winikka
on behalf of Interested Party Jack Yang dan@danwinlaw.com dan@danwinlaw.com

Daniel P. Winikka
on behalf of Interested Party Brad Borud dan@danwinlaw.com dan@danwinlaw.com

David G. Adams
on behalf of Creditor United States (IRS) david.g.adams@usdoj.gov
southwestern.taxcivil@usdoj.gov;brooke.lewis@usdoj.gov;CaseView.ECF@usdoj.gov

David Grant Crooks
on behalf of Creditor Committee Official Committee of Unsecured Creditors dcrooks@foxrothschild.com
etaylor@foxrothschild.com,rdietz@foxrothschild.com,plabov@foxrothschild.com,jmanfrey@foxrothschild.com

David Grant Crooks
on behalf of Creditor PensionDanmark Pensionsforsikringsaktieselskab dcrooks@foxrothschild.com
etaylor@foxrothschild.com,rdietz@foxrothschild.com,plabov@foxrothschild.com,jmanfrey@foxrothschild.com

David Grant Crooks
on behalf of Debtor Highland Capital Management  L.P. dcrooks@foxrothschild.com,
etaylor@foxrothschild.com,rdietz@foxrothschild.com,plabov@foxrothschild.com,jmanfrey@foxrothschild.com

David L. Curry, Jr.
on behalf of Interested Party The Dallas Foundation dcurry@okinadams.com
nhollon@okinadams.com;sgonzales@okinadams.com

David L. Curry, Jr.
on behalf of Interested Party Crown Global Life Insurance  Ltd dcurry@okinadams.com,
nhollon@okinadams.com;sgonzales@okinadams.com

Davor Rukavina
on behalf of Interested Party Highland Merger Arbitrage Fund drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party NexPoint Capital  Inc. drukavina@munsch.com, Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party Highland Capital Management Fund Advisors  L.P. drukavina@munsch.com,
Courtmail@munsch.com

Davor Rukavina
on behalf of Defendant Highland Income Fund drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Defendant Highland Capital Management Fund Advisors  L.P. drukavina@munsch.com, Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party Highland Total Return Fund drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party Highland Opportunistic Credit Fund drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party Highland Funds II and its series drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party Highland Socially Responsible Equity Fund drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party Highland Healthcare Opportunities Fund drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party Highland Global Allocation Fund drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party Highland Funds I and its series drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party NexPoint Strategic Opportunities Fund drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Defendant NexPoint Strategic Opportunities Fund drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party Highland Small-Cap Equity Fund drukavina@munsch.com Courtmail@munsch.com

Davor Rukavina
on behalf of Interested Party NexPoint Advisors  L.P. drukavina@munsch.com, Courtmail@munsch.com

Davor Rukavina

District/off: 0539-3           User: admin           Page 8 of 24

Date Rcvd: Jul 21, 2025           Form ID: pdf012           Total Noticed: 1

| | |
|---|---|
| | on behalf of Defendant NexPoint Capital  Inc. drukavina@munsch.com, Courtmail@munsch.com |
| Davor Rukavina | |
| | on behalf of Interested Party Highland Fixed Income Fund drukavina@munsch.com  Courtmail@munsch.com |
| Davor Rukavina | |
| | on behalf of Interested Party Highland Income Fund drukavina@munsch.com  Courtmail@munsch.com |
| Davor Rukavina | |
| | on behalf of Interested Party Highland/iBoxx Senior Loan ETF drukavina@munsch.com  Courtmail@munsch.com |
| Davor Rukavina | |
| | on behalf of Defendant NexPoint Advisors  L.P. drukavina@munsch.com, Courtmail@munsch.com |
| Davor Rukavina | |
| | on behalf of Interested Party NexPoint Real Estate Strategies Fund drukavina@munsch.com  Courtmail@munsch.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Interested Party NexPoint Advisors  L.P. deborah.deitschperez@stinson.com, patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Defendant NexPoint Advisors  L.P. deborah.deitschperez@stinson.com, patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Creditor The Dugaboy Investment Trust deborah.deitschperez@stinson.com  patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Plaintiff Hunter Mountain Investment Trust deborah.deitschperez@stinson.com  patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Interested Party James Dondero deborah.deitschperez@stinson.com  patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Witness Nancy Dondero deborah.deitschperez@stinson.com  patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Defendant James Dondero deborah.deitschperez@stinson.com  patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Defendant The Dugaboy Investment Trust deborah.deitschperez@stinson.com  patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Defendant Nancy Dondero deborah.deitschperez@stinson.com  patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Defendant Highland Capital Management Fund Advisors  L.P. deborah.deitschperez@stinson.com, patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Defendant HCRE Partners  LLC (n/k/a NexPoint Real Estate Partners, LLC) deborah.deitschperez@stinson.com, patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Interested Party Highland Capital Management Fund Advisors  L.P. deborah.deitschperez@stinson.com, patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Creditor Hunter Mountain Investment Trust deborah.deitschperez@stinson.com  patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Interested Party Highland CLO Management Ltd deborah.deitschperez@stinson.com  patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Plaintiff Dugaboy Investment Trust deborah.deitschperez@stinson.com  patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Partner Dugaboy Investment Trust deborah.deitschperez@stinson.com  patricia.tomasky@stinson.com |
| Deborah Rose Deitsch-Perez | |
| | on behalf of Defendant Highland Capital Management Services  Inc. deborah.deitschperez@stinson.com, patricia.tomasky@stinson.com |
| Debra A Dandeneau | |
| | on behalf of Defendant Isaac Leventon debra.dandeneau@bakermckenzie.com  blaire.cahn@bakermckenzie.com |
| Debra A Dandeneau | |
| | on behalf of Defendant CPCM  LLC debra.dandeneau@bakermckenzie.com, blaire.cahn@bakermckenzie.com |
| Debra A Dandeneau | |
| | on behalf of Defendant Scott Ellington debra.dandeneau@bakermckenzie.com  blaire.cahn@bakermckenzie.com |
| Debra A Dandeneau | |
| | on behalf of Creditor Scott Ellington  Thomas Surgent, Frank Waterhouse, Isaac Leventon debra.dandeneau@bakermckenzie.com, |

blaire.cahn@bakermckenzie.com

Debra A Dandeneau

on behalf of Interested Party CPCM LLC debra.dandeneau@bakermckenzie.com, blaire.cahn@bakermckenzie.com

Debra A Dandeneau

on behalf of Defendant Frank Waterhouse debra.dandeneau@bakermckenzie.com  blaire.cahn@bakermckenzie.com

Dennis M. Twomey

on behalf of Creditor Committee Official Committee of Unsecured Creditors dtwomey@sidley.com

Donna K. Webb

on behalf of Creditor Pension Benefit Guaranty Corporation donna.webb@usdoj.gov
brian.stoltz@usdoj.gov;CaseView.ECF@usdoj.gov;brooke.lewis@usdoj.gov

Douglas J. Schneller

on behalf of Creditor Contrarian Funds LLC douglas.schneller@rimonlaw.com

Douglas S. Draper

on behalf of Creditor Get Better Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor Dana Scott Breault ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor SLHC Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor The Dugaboy Investment Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor Dolomiti LLC ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor Get Good Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor The Get Good Non Exempt Trust No 2 ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor Canis Minor Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor Get Good Non Exempt Trust No 1 ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Creditor The Dondero Insurance Rabbi Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Defendant The Dugaboy Investment Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Douglas S. Draper

on behalf of Defendant The Get Good Nonexempt Trust ddraper@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbrouphy@hellerdraper.com

Edmon L. Morton

on behalf of Creditor Committee Official Committee of Unsecured Creditors emorton@ycst.com

Edward J. Leen

on behalf of Creditor Jessup Holdings LLC eleen@mkbllp.com

Edward J. McNeilly

on behalf of Interested Party John S. Dubel edward.mcneilly@hoganlovells.com

Edward J. McNeilly

on behalf of Interested Party Hon.Russell F. Nelms (Ret.) edward.mcneilly@hoganlovells.com

Edwin Paul Keiffer

on behalf of Defendant Hunter Mountain Investment Trust pkeiffer@romclaw.com
bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Atlas IDF  LP pkeiffer@romclaw.com, bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Rand PE Fund I  LP pkeiffer@romclaw.com, bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor John Honis pkeiffer@romclaw.com  bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Beacon Mountain  LLC pkeiffer@romclaw.com, bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Atlas IDF  GP, LLC pkeiffer@romclaw.com, bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Rand PE Fund Management  LLC pkeiffer@romclaw.com,
bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Hunter Mountain Investment Trust pkeiffer@romclaw.com
bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Interested Party Hunter Mountain Trust pkeiffer@romclaw.com  bwallace@romclaw.com,dsalinas@romclaw.com

Edwin Paul Keiffer

on behalf of Creditor Rand Advisors  LLC pkeiffer@romclaw.com, bwallace@romclaw.com,dsalinas@romclaw.com

Elizabeth Weller

on behalf of Creditor Grayson County Dora.Casiano-Perez@lgbs.com dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Coleman County TAD Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Dallas County Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Rockwall CAD Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Allen ISD Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Upshur County Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Irving ISD Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Tarrant County Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Kaufman County Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Elizabeth Weller

on behalf of Creditor Fannin CAD Dora.Casiano-Perez@lgbs.com  dallas.bankruptcy@lgbs.com

Eric A. Soderlund

on behalf of Interested Party Former Employees eric.soderlund@rsbfirm.com

Eric A. Soderlund

on behalf of Creditor Scott Ellington  Thomas Surgent, Frank Waterhouse, Isaac Leventon eric.soderlund@rsbfirm.com

Eric A. Soderlund

on behalf of Creditor Frank Waterhouse  Scott B. Ellington, Isaac Leventon, Jean Paul Sevilla, Hunter Covitz and Thomas Surgent
eric.soderlund@rsbfirm.com

Eric A. Soderlund

on behalf of Interested Party CPCM  LLC eric.soderlund@rsbfirm.com

Eric Thomas Haitz

on behalf of Defendant Alvarez & Marsal CRF Management  LLC eric.haitz@bondsellis.com, linda.gordon@bondsellis.com

Erin Marie Schmidt

on behalf of U.S. Trustee United States Trustee ustpregion06.da.ecf@usdoj.gov  erin.schmidt2@usdoj.gov

Frances Anne Smith

on behalf of Interested Party Former Employees frances.smith@rsbfirm.com  michael.coulombe@rsbfirm.com

Frances Anne Smith

on behalf of Creditor Scott Ellington  Thomas Surgent, Frank Waterhouse, Isaac Leventon frances.smith@rsbfirm.com,
michael.coulombe@rsbfirm.com

Frances Anne Smith

on behalf of Interested Party CPCM  LLC frances.smith@rsbfirm.com, michael.coulombe@rsbfirm.com

Frances Anne Smith

on behalf of Plaintiff Scott Byron Ellington frances.smith@rsbfirm.com  michael.coulombe@rsbfirm.com

Frances Anne Smith

on behalf of Creditor Frank Waterhouse frances.smith@rsbfirm.com  michael.coulombe@rsbfirm.com

Frances Anne Smith

on behalf of Interested Party Matthew DiOrio  Scott Ellington, Isaac Leventon, Mary Kathryn Lucas (nee Irving), John Paul
Sevilla, Stephanie Vitiello, and Frank Waterhouse frances.smith@rsbfirm.com, michael.coulombe@rsbfirm.com

Frances Anne Smith

on behalf of Creditor Scott Ellington frances.smith@rsbfirm.com  michael.coulombe@rsbfirm.com

Gregory Getty Hesse

on behalf of Partner Dugaboy Investment Trust ghesse@huntonak.com
astowe@huntonak.com;tcanada@HuntonAK.com;creeves@HuntonAK.com

Gregory Getty Hesse

on behalf of Spec. Counsel Hunton Andrews Kurth LLP ghesse@huntonak.com
astowe@huntonak.com;tcanada@HuntonAK.com;creeves@HuntonAK.com

Gregory V. Demo

on behalf of Defendant Highland Capital Management  LP gdemo@pszjlaw.com,
jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszj
law.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com

Gregory V. Demo

on behalf of Defendant Highland Capital Management  L.P. gdemo@pszjlaw.com,
jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszj
law.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com

Gregory V. Demo

on behalf of Defendant Highland Claimant Trust gdemo@pszjlaw.com
jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszj
law.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com

Gregory V. Demo

on behalf of Creditor Committee Official Committee of Unsecured Creditors gdemo@pszjlaw.com
jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszj
law.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com

Gregory V. Demo

on behalf of Debtor Highland Capital Management  L.P. gdemo@pszjlaw.com,
jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszj
law.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com

Greta M. Brouphy

on behalf of Creditor The Dugaboy Investment Trust gbrouphy@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com

Greta M. Brouphy

on behalf of Defendant The Dugaboy Investment Trust gbrouphy@hellerdraper.com
dhepting@hellerdraper.com;vgamble@hellerdraper.com

Greta M. Brouphy

on behalf of Creditor Get Good Trust gbrouphy@hellerdraper.com  dhepting@hellerdraper.com;vgamble@hellerdraper.com

Hayley R Winograd

on behalf of Debtor Highland Capital Management  L.P. hayleywinograd@gmail.com

Hayley R Winograd

on behalf of Defendant Highland Capital Management  L.P. hayleywinograd@gmail.com

Hayley R Winograd

on behalf of Defendant Highland Claimant Trust hayleywinograd@gmail.com

Hayley R Winograd

on behalf of Defendant Highland Capital Management  LP hayleywinograd@gmail.com

Holland N. O'Neil

on behalf of Spec. Counsel Foley Gardere  Foley & Lardner LLP honeil@foley.com,
jcharrison@foley.com;holly-holland-oneil-3540@ecf.pacerpro.com

Ian Salzer

on behalf of Interested Party Hunter Mountain Trust isalzer@pmmlaw.com

Ian Salzer

on behalf of Creditor Hunter Mountain Investment Trust isalzer@pmmlaw.com

Ian Salzer

on behalf of Plaintiff Charitable DAF Fund  L.P. isalzer@pmmlaw.com

J. Seth Moore

on behalf of Creditor Siepe  LLC semoore@swlaw.com,
sluby@swlaw.com;docket_den@swlaw.com;DOCKET_DAL@swlaw.com

Jaclyn C. Weissgerber

on behalf of Creditor Committee Official Committee of Unsecured Creditors bankfilings@ycst.com  jweissgerber@ycst.com

James Jay Lee

on behalf of Interested Party The Pettit Law Firm jimlee@velaw.com

James Jay Lee

on behalf of Interested Party Lynn Pinker Hurst & Schwegmann  LLP jimlee@velaw.com

Jason Bernstein

on behalf of Creditor BHH Equities LLC casey.doherty@dentons.com
dawn.brown@dentons.com;Melinda.sanchez@dentons.com;docket.general.lit.dal@dentons.com

Jason Bernstein

on behalf of Interested Party Jefferies LLC casey.doherty@dentons.com
dawn.brown@dentons.com;Melinda.sanchez@dentons.com;docket.general.lit.dal@dentons.com

Jason Alexander Enright

on behalf of Creditor Acis Capital Management  L.P. jenright@winstead.com

Jason Alexander Enright

on behalf of Creditor Acis Capital Management GP  LLC jenright@winstead.com

Jason Michael Hopkins

on behalf of Defendant James D. Dondero jason.hopkins@dlapiper.com
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins

on behalf of Defendant DUGABOY INVESTMENT TRUST AND NANCY DONDERO  AS TRUSTEE OF DUGABOY
INVESTMENT TRUST jason.hopkins@dlapiper.com, jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins

on behalf of Defendant GET GOOD TRUST AND GRANT JAMES SCOTT III  AS TRUSTEE OF GET GOOD TRUST
jason.hopkins@dlapiper.com, jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins

on behalf of Creditor Get Good Trust jason.hopkins@dlapiper.com
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins

on behalf of Interested Party James Dondero jason.hopkins@dlapiper.com
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins

on behalf of Creditor The Dugaboy Investment Trust jason.hopkins@dlapiper.com
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins

on behalf of Creditor Strand Advisors  Inc. jason.hopkins@dlapiper.com,
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Michael Hopkins

on behalf of Defendant STRAND ADVISORS  INC jason.hopkins@dlapiper.com,
jen.westin@dlapiper.com;jason-hopkins-2248@ecf.pacerpro.com

Jason Patrick Kathman

on behalf of Defendant Patrick Hagaman Daugherty jkathman@spencerfane.com
gpronske@spencerfane.com;lvargas@spencerfane.com

Jason Patrick Kathman

on behalf of Creditor Todd Travers jkathman@spencerfane.com  gpronske@spencerfane.com;lvargas@spencerfane.com

Jason Patrick Kathman

on behalf of Creditor Patrick Daugherty jkathman@spencerfane.com  gpronske@spencerfane.com;lvargas@spencerfane.com

Jason Patrick Kathman

on behalf of Creditor Paul Kauffman jkathman@spencerfane.com  gpronske@spencerfane.com;lvargas@spencerfane.com

Jason Patrick Kathman

on behalf of Defendant Patrick Daugherty jkathman@spencerfane.com  gpronske@spencerfane.com;lvargas@spencerfane.com

Jason Patrick Kathman

on behalf of Creditor Davis Deadman jkathman@spencerfane.com  gpronske@spencerfane.com;lvargas@spencerfane.com

Jason S. Brookner

on behalf of Creditor Patrick Daugherty jbrookner@grayreed.com  lwebb@grayreed.com;acarson@grayreed.com

District/off: 0539-3                                                    User: admin                                                    Page 13 of 24
Date Rcvd: Jul 21, 2025                                            Form ID: pdf012                                            Total Noticed: 1

Jason S. Brookner
　　　　　　on behalf of Defendant Patrick Daugherty jbrookner@grayreed.com  lwebb@grayreed.com;acarson@grayreed.com

Jason S. Brookner
　　　　　　on behalf of Creditor Gray Reed & McGraw LLP jbrookner@grayreed.com  lwebb@grayreed.com;acarson@grayreed.com

Jeff P. Prostok
　　　　　　on behalf of Creditor Joshua Terry jeff.prostok@vhh.law
jprostok@ecf.courtdrive.com;khartogh@ecf.courtdrive.com;forsheyprostokllp@jubileebk.net;kristina.hartogh@vhh.law;bankrupt
cy.docketing@vhh.law;bankruptcy.docketing@ecf.courtdrive.com

Jeff P. Prostok
　　　　　　on behalf of Creditor Jennifer G. Terry jeff.prostok@vhh.law
jprostok@ecf.courtdrive.com;khartogh@ecf.courtdrive.com;forsheyprostokllp@jubileebk.net;kristina.hartogh@vhh.law;bankrupt
cy.docketing@vhh.law;bankruptcy.docketing@ecf.courtdrive.com

Jeff P. Prostok
　　　　　　on behalf of Creditor Acis Capital Management  L.P. jeff.prostok@vhh.law,
jprostok@ecf.courtdrive.com;khartogh@ecf.courtdrive.com;forsheyprostokllp@jubileebk.net;kristina.hartogh@vhh.law;bankrupt
cy.docketing@vhh.law;bankruptcy.docketing@ecf.courtdrive.com

Jeff P. Prostok
　　　　　　on behalf of Creditor Acis Capital Management GP  LLC jeff.prostok@vhh.law,
jprostok@ecf.courtdrive.com;khartogh@ecf.courtdrive.com;forsheyprostokllp@jubileebk.net;kristina.hartogh@vhh.law;bankrupt
cy.docketing@vhh.law;bankruptcy.docketing@ecf.courtdrive.com

Jeffrey Kurtzman
　　　　　　on behalf of Creditor BET Investments II  L.P. kurtzman@kurtzmansteady.com

Jeffrey Nathan Pomerantz
　　　　　　on behalf of Debtor Highland Capital Management  L.P. jpomerantz@pszjlaw.com

Jeffrey Nathan Pomerantz
　　　　　　on behalf of Defendant Highland Claimant Trust jpomerantz@pszjlaw.com

Jeffrey Nathan Pomerantz
　　　　　　on behalf of Defendant Highland Capital Management  L.P. jpomerantz@pszjlaw.com

Jerry C. Alexander
　　　　　　on behalf of Attorney Scott M. Seidel alexanderj@passmanjones.com  chandlers@passmanjones.com

John A Morris
　　　　　　on behalf of Creditor Muck Holdings LLC jmorris@pszjlaw.com

John A Morris
　　　　　　on behalf of Creditor Jessup Holdings LLC jmorris@pszjlaw.com

John A Morris
　　　　　　on behalf of Defendant Highland Capital Management  L.P. jmorris@pszjlaw.com

John A Morris
　　　　　　on behalf of Debtor Highland Capital Management  L.P. jmorris@pszjlaw.com

John A Morris
　　　　　　on behalf of Other Professional James P. Seery  Jr. jmorris@pszjlaw.com

John A Morris
　　　　　　on behalf of Creditor Stonehill Capital Management LLC jmorris@pszjlaw.com

John A Morris
　　　　　　on behalf of Creditor James P. Seery  Jr. jmorris@pszjlaw.com

John A Morris
　　　　　　on behalf of Other Professional Highland Claimant Trust jmorris@pszjlaw.com

John A Morris
　　　　　　on behalf of Creditor Farallon Capital Management  LLC jmorris@pszjlaw.com

John A Morris
　　　　　　on behalf of Defendant Highland Capital Management  LP jmorris@pszjlaw.com

John A Morris
　　　　　　on behalf of Defendant Highland Claimant Trust jmorris@pszjlaw.com

John J. Kane
　　　　　　on behalf of Creditor Grant James Scott III jkane@krcl.com  ecf@krcl.com;jkane@ecf.courtdrive.com;srhea@krcl.com

John J. Kane
　　　　　　on behalf of Defendant Grant James Scott III jkane@krcl.com  ecf@krcl.com;jkane@ecf.courtdrive.com;srhea@krcl.com

John J. Kane
　　　　　　on behalf of Defendant CLO Holdco  Ltd. jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com;srhea@krcl.com

John J. Kane
on behalf of Defendant Grant James Scott III jkane@krcl.com ecf@krcl.com;jkane@ecf.courtdrive.com;srhea@krcl.com

John Kendrick Turner
on behalf of Creditor City of Allen john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Fannin CAD john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Irving ISD john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Dallas County john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Kaufman County john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Tarrant County john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor City of Richardson john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Coleman County TAD john.turner@lgbs.com
Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Upshur County john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Allen ISD john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John Kendrick Turner
on behalf of Creditor Grayson County john.turner@lgbs.com Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

John T. Cox, III
on behalf of Defendant Alvarez & Marsal CRF Management LLC tcox@gibsondunn.com,
WCassidy@gibsondunn.com;twesley@gibsondunn.com;pacer-tx@gibsondunn.com;pvickery@gibsondunn.com

Johnathan Stone
on behalf of Interested Party State of Texas johnathan.stone@oag.texas.gov

Johnny Sutton
on behalf of Partner Dugaboy Investment Trust rrussell@ashcroftlawfirm.com

Jonathan Sundheimer
on behalf of Creditor NWCC LLC jsundheimer@btlaw.com

Jonathan E. Bridges
on behalf of Plaintiff PCMG Trading Partners XXIII LP jeb@sbaitilaw.com

Jonathan E. Bridges
on behalf of Plaintiff CLO Holdco Ltd. jeb@sbaitilaw.com

Jonathan E. Bridges
on behalf of Interested Party CLO Holdco Ltd. jeb@sbaitilaw.com

Jonathan E. Bridges
on behalf of Interested Party Charitable DAF Fund LP jeb@sbaitilaw.com

Jonathan E. Bridges
on behalf of Plaintiff Charitable DAF Fund LP jeb@sbaitilaw.com

Jonathan E. Bridges
on behalf of Creditor CLO Holdco Ltd. jeb@sbaitilaw.com

Jordan A. Kroop
on behalf of Debtor Highland Capital Management L.P. jkroop@pszjlaw.com, tcorrea@pszjlaw.com

Joseph E. Bain
on behalf of Creditor Issuer Group JBain@joneswalker.com
kvrana@joneswalker.com;joseph-bain-8368@ecf.pacerpro.com;msalinas@joneswalker.com

Joseph Y. Ahmad
on behalf of Creditor Acis Capital Management L.P. joeahmad@azalaw.com, sbates@azalaw.com;ahernandez@azalaw.com

Joseph Y. Ahmad
on behalf of Creditor Acis Capital Management GP LLC joeahmad@azalaw.com, sbates@azalaw.com;ahernandez@azalaw.com

Joshua Seth Levy
on behalf of Other Professional James P. Seery Jr. jlevy@willkie.com

District/off: 0539-3
Date Rcvd: Jul 21, 2025

User: admin
Form ID: pdf012

Page 15 of 24
Total Noticed: 1

Joshua Seth Levy

on behalf of Creditor James P. Seery Jr. jlevy@willkie.com

Julian Preston Vasek

on behalf of Interested Party Highland Healthcare Opportunities Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Capital Management Fund Advisors L.P. jvasek@munsch.com, CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party NexPoint Capital Inc. jvasek@munsch.com, CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland/iBoxx Senior Loan ETF jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party NexPoint Advisors L.P. jvasek@munsch.com, CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party NexPoint Strategic Opportunities Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Funds II and its series jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Defendant NexPoint Advisors L.P. jvasek@munsch.com, CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Total Return Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party NexPoint Real Estate Strategies Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Defendant NexPoint Capital Inc. jvasek@munsch.com, CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Small-Cap Equity Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Defendant Highland Capital Management Fund Advisors L.P. jvasek@munsch.com, CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Income Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Merger Arbitrage Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Fixed Income Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Funds I and its series jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party NexPoint Advisors GP LLC jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Defendant NexPoint Strategic Opportunities Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Socially Responsible Equity Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Global Allocation Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Defendant Highland Income Fund jvasek@munsch.com CourtMail@munsch.com

Julian Preston Vasek

on behalf of Interested Party Highland Opportunistic Credit Fund jvasek@munsch.com CourtMail@munsch.com

Juliana Hoffman

on behalf of Plaintiff Official Committee of Unsecured Creditors jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman

on behalf of Interested Party UBS Securities LLC jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman

on behalf of Interested Party UBS AG London Branch jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

District/off: 0539-3
Date Rcvd: Jul 21, 2025

User: admin
Form ID: pdf012

Page 16 of 24
Total Noticed: 1

Juliana Hoffman
on behalf of Debtor Highland Capital Management  L.P. jhoffman@sidley.com,
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman
on behalf of Interested Party Committee of Unsecured Creditors jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman
on behalf of Creditor Sidley Austin LLP jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman
on behalf of Creditor Committee Official Committee of Unsecured Creditors jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman
on behalf of Plaintiff Marc Kirschner jhoffman@sidley.com
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman
on behalf of Other Professional Teneo Capital  LLC jhoffman@sidley.com,
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Juliana Hoffman
on behalf of Financial Advisor FTI Consulting  Inc. jhoffman@sidley.com,
txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

Kesha Tanabe
on behalf of Creditor Cedar Glade LP kesha@tanabelaw.com

Kevin Perkins
on behalf of Defendant MASSAND CAPITAL  LLC kperkins@vanacourperkins.com

Kevin Perkins
on behalf of Defendant MASSAND CAPITAL  INC. kperkins@vanacourperkins.com

Kimberly A. Posin
on behalf of Plaintiff UBS AG London Branch kim.posin@lw.com  colleen.rico@lw.com

Kimberly A. Posin
on behalf of Interested Party UBS AG London Branch kim.posin@lw.com  colleen.rico@lw.com

Kimberly A. Posin
on behalf of Plaintiff UBS Securities LLC kim.posin@lw.com  colleen.rico@lw.com

Kimberly A. Posin
on behalf of Interested Party UBS Securities LLC kim.posin@lw.com  colleen.rico@lw.com

Kristin H. Jain
on behalf of Interested Party NexPoint Advisors  L.P. KHJain@JainLaw.com, dskierski@skijain.com

Kristin H. Jain
on behalf of Interested Party NexPoint Real Estate Advisors  L.P. KHJain@JainLaw.com, dskierski@skijain.com

Larry R Boyd
on behalf of Creditor COLLIN COUNTY TAX ASSESSOR/COLLECTOR lboyd@abernathy-law.com
ljameson@abernathy-law.com

Lauren Kessler Drawhorn
on behalf of Interested Party NexPoint Real Estate Partners  LLC lkdrawhorn@gmail.com

Lauren Kessler Drawhorn
on behalf of Creditor Eagle Equity Advisors  LLC lkdrawhorn@gmail.com

Lauren Kessler Drawhorn
on behalf of Creditor NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC lkdrawhorn@gmail.com

Lauren Kessler Drawhorn
on behalf of Interested Party NexBank lkdrawhorn@gmail.com

Lauren Kessler Drawhorn
on behalf of Interested Party MGM Holdings  Inc. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn
on behalf of Interested Party NexBank Title Inc. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn
on behalf of Interested Party NexPoint Real Estate Advisors VII  L.P. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn
on behalf of Interested Party NexBank Capital Inc. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Creditor HCRE Partners  LLC (n/k/a NexPoint Real Estate Partners, LLC) lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexPoint Real Estate Advisors II  L.P. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexPoint Real Estate Finance Inc. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Creditor Highland Capital Management Services  Inc. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party Nexpoint Real Estate Capital  LLC lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexPoint Real Estate Advisors VIII  L.P. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexPoint Real Estate Advisors VI  L.P. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexPoint Real Estate Advisors  L.P. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexPoint Real Estate Advisors III  L.P. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexPoint Multifamily Capital Trust  Inc. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexBank Securities Inc. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexPoint Real Estate Advisors V  L.P. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Creditor Advisors Equity Group  LLC lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexPoint Hospitality Trust lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexPoint Real Estate Advisors IV  L.P. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party NexPoint Residential Trust  Inc. lkdrawhorn@gmail.com

Lauren Kessler Drawhorn

on behalf of Interested Party VineBrook Homes  Trust, Inc. lkdrawhorn@gmail.com

Laurie A Spindler

on behalf of Creditor Dallas County Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler

on behalf of Creditor Allen ISD Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler

on behalf of Creditor City of Richardson Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler

on behalf of Creditor Grayson County Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler

on behalf of Creditor Kaufman County Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler

on behalf of Creditor Tarrant County Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler

on behalf of Creditor Irving ISD Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Laurie A Spindler

on behalf of Creditor City of Allen Laurie.Spindler@lgbs.com
Dora.Casiano-Perez@lgbs.com;Olivia.salvatierra@lgbs.com;Michael.Alvis@lgbs.com;dallas.bankruptcy@lgbs.com

Leslie A. Collins

          on behalf of Creditor The Dugaboy Investment Trust lcollins@hellerdraper.com

Leslie A. Collins

          on behalf of Creditor Get Good Trust lcollins@hellerdraper.com

Leslie A. Collins

          on behalf of Defendant The Dugaboy Investment Trust lcollins@hellerdraper.com

Linda D. Reece

          on behalf of Creditor Plano ISD lreece@pbfcm.com  lreece@ecf.courtdrive.com

Linda D. Reece

          on behalf of Creditor City of Garland lreece@pbfcm.com  lreece@ecf.courtdrive.com

Linda D. Reece

          on behalf of Creditor Wylie ISD lreece@pbfcm.com  lreece@ecf.courtdrive.com

Linda D. Reece

          on behalf of Creditor Garland ISD lreece@pbfcm.com  lreece@ecf.courtdrive.com

Lindsey Lee Robin

          on behalf of Creditor Muck Holdings LLC lrobin@reedsmith.com
          jkrasnic@reedsmith.com;anixon@reedsmith.com;ahinson@reedsmith.com

Lindsey Lee Robin

          on behalf of Creditor Stonehill Capital Management LLC lrobin@reedsmith.com
          jkrasnic@reedsmith.com;anixon@reedsmith.com;ahinson@reedsmith.com

Lindsey Lee Robin

          on behalf of Other Professional Highland Claimant Trust lrobin@reedsmith.com
          jkrasnic@reedsmith.com;anixon@reedsmith.com;ahinson@reedsmith.com

Lindsey Lee Robin

          on behalf of Creditor Jessup Holdings LLC lrobin@reedsmith.com
          jkrasnic@reedsmith.com;anixon@reedsmith.com;ahinson@reedsmith.com

Lindsey Lee Robin

          on behalf of Creditor James P. Seery  Jr. lrobin@reedsmith.com,
          jkrasnic@reedsmith.com;anixon@reedsmith.com;ahinson@reedsmith.com

Lindsey Lee Robin

          on behalf of Creditor Farallon Capital Management  LLC lrobin@reedsmith.com,
          jkrasnic@reedsmith.com;anixon@reedsmith.com;ahinson@reedsmith.com

Lindsey Lee Robin

          on behalf of Debtor Highland Capital Management  L.P. lrobin@reedsmith.com,
          jkrasnic@reedsmith.com;anixon@reedsmith.com;ahinson@reedsmith.com

Lindsey Lee Robin

          on behalf of Other Professional James P. Seery  Jr. lrobin@reedsmith.com,
          jkrasnic@reedsmith.com;anixon@reedsmith.com;ahinson@reedsmith.com

Lisa L. Lambert

          on behalf of U.S. Trustee United States Trustee lisa.l.lambert@usdoj.gov

Louis M. Phillips

          on behalf of Defendant CLO Holdco  Ltd. louis.phillips@kellyhart.com,
          june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

          on behalf of Creditor CLO Holdco  Ltd. louis.phillips@kellyhart.com,
          june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

          on behalf of Interested Party The Dallas Foundation louis.phillips@kellyhart.com
          june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

          on behalf of Interested Party CLO Holdco  Ltd. louis.phillips@kellyhart.com,
          june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

          on behalf of Respondent Mark Patrick louis.phillips@kellyhart.com
          june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

          on behalf of Interested Party Highland Kansas City Foundation  Inc. louis.phillips@kellyhart.com,
          june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

          on behalf of Plaintiff CLO Holdco  Ltd. louis.phillips@kellyhart.com,
          june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Creditor Hunter Mountain Investment Trust louis.phillips@kellyhart.com
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Creditor Charitable DAF GP  L.P. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Creditor Charitable DAF HoldCo  Ltd. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Interested Party Mary Jalonick louis.phillips@kellyhart.com
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Interested Party The Santa Barbara Foundation louis.phillips@kellyhart.com
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Defendant Highland Dallas Foundation  Inc. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Interested Party Charitable DAF Fund  LP louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Creditor The Charitable DAF Fund  L.P. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Interested Party Highland Dallas Foundation  Inc. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Interested Party Highland Santa Barbara Foundation  Inc. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Interested Party The Greater Kansas City Community Foundation louis.phillips@kellyhart.com
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Interested Party The Charitable DAF Fund  L.P. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Plaintiff Charitable DAF Fund  LP louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

Louis M. Phillips

on behalf of Creditor Highland Dallas Foundation  Inc. louis.phillips@kellyhart.com,
june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com

M. David Bryant, Jr.

on behalf of Interested Party Integrated Financial Associates  Inc. dbryant@dykema.com, csmith@dykema.com

Margaret Michelle Hartmann

on behalf of Defendant Frank Waterhouse michelle.hartmann@bakermckenzie.com

Margaret Michelle Hartmann

on behalf of Defendant CPCM  LLC michelle.hartmann@bakermckenzie.com

Margaret Michelle Hartmann

on behalf of Creditor Scott Ellington michelle.hartmann@bakermckenzie.com

Margaret Michelle Hartmann

on behalf of Defendant Isaac Leventon michelle.hartmann@bakermckenzie.com

Margaret Michelle Hartmann

on behalf of Defendant Scott Ellington michelle.hartmann@bakermckenzie.com

Margaret Michelle Hartmann

on behalf of Interested Party CPCM  LLC michelle.hartmann@bakermckenzie.com

Mark Stancil

on behalf of Debtor Highland Capital Management  L.P. mstancil@willkie.com

Mark Stancil

on behalf of Other Professional James P. Seery  Jr. mstancil@willkie.com

District/off: 0539-3                                    User: admin                                    Page 20 of 24
Date Rcvd: Jul 21, 2025                               Form ID: pdf012                              Total Noticed: 1

Mark Stancil
      on behalf of Other Professional Highland Claimant Trust mstancil@willkie.com

Mark Stancil
      on behalf of Creditor James P. Seery  Jr. mstancil@willkie.com

Mark A. Platt
      on behalf of Interested Party Redeemer Committee of the Highland Crusader Fund mplatt@fbtlaw.com  dwilliams@fbtlaw.com

Marshall R. King
      on behalf of Interested Party Alvarez & Marsal CRF Management  LLC, as Investment Manager of the Highland Crusader Funds
mking@gibsondunn.com

Marshall R. King
      on behalf of Defendant Alvarez & Marsal CRF Management  LLC mking@gibsondunn.com

Martin A. Sosland
      on behalf of Interested Party UBS Securities LLC martin.sosland@butlersnow.com
ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com

Martin A. Sosland
      on behalf of Plaintiff UBS Securities LLC martin.sosland@butlersnow.com
ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com

Martin A. Sosland
      on behalf of Interested Party UBS AG London Branch martin.sosland@butlersnow.com
ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com

Martin A. Sosland
      on behalf of Plaintiff UBS AG London Branch martin.sosland@butlersnow.com
ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com

Mary Taylor Stanberry
      on behalf of Creditor Acis Capital Management  L.P. mary.stanberry@vhh.law

Mary Taylor Stanberry
      on behalf of Creditor Acis Capital Management GP  LLC mary.stanberry@vhh.law

Matthew Gold
      on behalf of Creditor Argo Partners courts@argopartners.net

Matthew A. Clemente
      on behalf of Creditor Committee Official Committee of Unsecured Creditors mclemente@sidley.com
matthew-clemente-8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russell@sidley.com;dtwom
ey@sidley.com

Matthew A. Clemente
      on behalf of Interested Party Committee of Unsecured Creditors mclemente@sidley.com
matthew-clemente-8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russell@sidley.com;dtwom
ey@sidley.com

Matthew G. Bouslog
      on behalf of Interested Party Alvarez & Marsal CRF Management  LLC, as Investment Manager of the Highland Crusader Funds
mbouslog@allenmatkins.com, ncampos@allenmatkins.com

Matthew S. Okin
      on behalf of Interested Party Crown Global Life Insurance  Ltd mokin@okinadams.com,
sgonzales@okinadams.com;nhollon@okinadams.com

Matthew S. Okin
      on behalf of Interested Party The Dallas Foundation mokin@okinadams.com
sgonzales@okinadams.com;nhollon@okinadams.com

Mazin Ahmad Sbaiti
      on behalf of Creditor CLO Holdco  Ltd. mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti
      on behalf of Plaintiff CLO Holdco  Ltd. mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti
      on behalf of Interested Party Charitable DAF Fund  LP mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti
      on behalf of Interested Party CLO Holdco  Ltd. mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti
      on behalf of Creditor The Charitable DAF Fund  L.P. mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti
on behalf of Plaintiff Charitable DAF Fund  LP mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti
on behalf of Interested Party The Charitable DAF Fund  L.P. mas@sbaitilaw.com,
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Mazin Ahmad Sbaiti
on behalf of Plaintiff PCMG Trading Partners XXIII LP mas@sbaitilaw.com
krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com

Megan Young-John
on behalf of Creditor Issuer Group myoung-john@porterhedges.com

Megan F. Clontz
on behalf of Creditor Patrick Daugherty mclontz@fbfk.law  lvargas@spencerfane.com;mclontzlaw@gmail.com

Megan F. Clontz
on behalf of Creditor Todd Travers mclontz@fbfk.law  lvargas@spencerfane.com;mclontzlaw@gmail.com

Melissa S. Hayward
on behalf of Debtor Highland Capital Management  L.P. MHayward@HaywardFirm.com, mholmes@HaywardFirm.com

Melissa S. Hayward
on behalf of Plaintiff Highland Capital Management  L.P. MHayward@HaywardFirm.com, mholmes@HaywardFirm.com

Melissa S. Hayward
on behalf of Other Professional Highland Claimant Trust MHayward@HaywardFirm.com  mholmes@HaywardFirm.com

Melissa S. Hayward
on behalf of Defendant Highland Capital Management  LP MHayward@HaywardFirm.com, mholmes@HaywardFirm.com

Melissa S. Hayward
on behalf of Defendant Highland Capital Management  L.P. MHayward@HaywardFirm.com, mholmes@HaywardFirm.com

Michael A. Rosenthal
on behalf of Defendant Alvarez & Marsal CRF Management  LLC mrosenthal@gibsondunn.com

Michael Justin Lang
on behalf of Creditor The Dugaboy Investment Trust mlang@cwl.law  aohlinger@cwl.law;ylopez@cwl.law

Michael Justin Lang
on behalf of Partner Dugaboy Investment Trust mlang@cwl.law  aohlinger@cwl.law;ylopez@cwl.law

Michael Justin Lang
on behalf of Creditor NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC mlang@cwl.law
aohlinger@cwl.law;ylopez@cwl.law

Michael Justin Lang
on behalf of Interested Party James Dondero mlang@cwl.law  aohlinger@cwl.law;ylopez@cwl.law

Michael Justin Lang
on behalf of Interested Party NexPoint Advisors  L.P. mlang@cwl.law, aohlinger@cwl.law;ylopez@cwl.law

Michael Justin Lang
on behalf of Interested Party Highland Capital Management Fund Advisors  L.P. mlang@cwl.law,
aohlinger@cwl.law;ylopez@cwl.law

Michael Justin Lang
on behalf of Creditor Get Good Trust mlang@cwl.law  aohlinger@cwl.law;ylopez@cwl.law

Michael P. Aigen
on behalf of Plaintiff Dugaboy Investment Trust michael.aigen@stinson.com

Michael P. Aigen
on behalf of Defendant HCRE Partners  LLC (n/k/a NexPoint Real Estate Partners, LLC) michael.aigen@stinson.com

Michael P. Aigen
on behalf of Creditor Hunter Mountain Investment Trust michael.aigen@stinson.com

Michael P. Aigen
on behalf of Interested Party Highland CLO Management Ltd michael.aigen@stinson.com

Michael P. Aigen
on behalf of Creditor The Dugaboy Investment Trust michael.aigen@stinson.com

Michael P. Aigen
on behalf of Defendant James Dondero michael.aigen@stinson.com

Michael P. Aigen
on behalf of Defendant NexPoint Advisors  L.P. michael.aigen@stinson.com

Michael P. Aigen
on behalf of Defendant Highland Capital Management Services  Inc. michael.aigen@stinson.com

Michael P. Aigen
on behalf of Defendant Highland Capital Management Fund Advisors  L.P. michael.aigen@stinson.com

Michael P. Aigen
on behalf of Defendant Nancy Dondero michael.aigen@stinson.com

Michael P. Aigen
on behalf of Partner Dugaboy Investment Trust michael.aigen@stinson.com

Michael P. Aigen
on behalf of Plaintiff Hunter Mountain Investment Trust michael.aigen@stinson.com

Michael Scott Held
on behalf of Creditor Crescent TC Investors  L.P. mheld@jw.com, kgradney@jw.com;osalvatierra@jw.com

Michelle E. Shriro
on behalf of Interested Party California Public Employees Retirement System (CalPERS) mshriro@singerlevick.com
scotton@singerlevick.com;tguillory@singerlevick.com

Nicole Skolnekovich
on behalf of Interested Party Hunton Andrews Kurth LLP nskolnekovich@hunton.com
astowe@huntonak.com;creeves@huntonak.com

Omar Jesus Alaniz
on behalf of Other Professional James P. Seery  Jr. oalaniz@reedsmith.com,
omar-alaniz-2648@ecf.pacerpro.com;gsaenz@reedsmith.com

Omar Jesus Alaniz
on behalf of Creditor Farallon Capital Management  LLC oalaniz@reedsmith.com,
omar-alaniz-2648@ecf.pacerpro.com;gsaenz@reedsmith.com

Omar Jesus Alaniz
on behalf of Creditor Muck Holdings LLC oalaniz@reedsmith.com  omar-alaniz-2648@ecf.pacerpro.com;gsaenz@reedsmith.com

Omar Jesus Alaniz
on behalf of Debtor Highland Capital Management  L.P. oalaniz@reedsmith.com,
omar-alaniz-2648@ecf.pacerpro.com;gsaenz@reedsmith.com

Omar Jesus Alaniz
on behalf of Creditor Stonehill Capital Management LLC oalaniz@reedsmith.com
omar-alaniz-2648@ecf.pacerpro.com;gsaenz@reedsmith.com

Omar Jesus Alaniz
on behalf of Other Professional Highland Claimant Trust oalaniz@reedsmith.com
omar-alaniz-2648@ecf.pacerpro.com;gsaenz@reedsmith.com

Omar Jesus Alaniz
on behalf of Creditor James P. Seery  Jr. oalaniz@reedsmith.com, omar-alaniz-2648@ecf.pacerpro.com;gsaenz@reedsmith.com

Omar Jesus Alaniz
on behalf of Creditor Jessup Holdings LLC oalaniz@reedsmith.com
omar-alaniz-2648@ecf.pacerpro.com;gsaenz@reedsmith.com

Paige Holden Montgomery
on behalf of Plaintiff Marc Kirschner pmontgomery@sidley.com
txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;spencer.stephens@sidley.com;ebromagen@sidley.com;e
filingnotice@sidley.com

Paige Holden Montgomery
on behalf of Plaintiff Official Committee of Unsecured Creditors pmontgomery@sidley.com
txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;spencer.stephens@sidley.com;ebromagen@sidley.com;e
filingnotice@sidley.com

Paige Holden Montgomery
on behalf of Interested Party Litigation Trustee of the Highland Capital Management  L.P. Litigation Sub-Trust
pmontgomery@sidley.com,
txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;spencer.stephens@sidley.com;ebromagen@sidley.com;e
filingnotice@sidley.com

Paige Holden Montgomery
on behalf of Creditor Committee Official Committee of Unsecured Creditors pmontgomery@sidley.com
txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;spencer.stephens@sidley.com;ebromagen@sidley.com;e
filingnotice@sidley.com

Paige Holden Montgomery
on behalf of Interested Party Committee of Unsecured Creditors pmontgomery@sidley.com
txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;spencer.stephens@sidley.com;ebromagen@sidley.com;e
filingnotice@sidley.com

Paul M. Lopez

District/off: 0539-3
Date Rcvd: Jul 21, 2025
User: admin
Form ID: pdf012
Page 23 of 24
Total Noticed: 1

on behalf of Creditor COLLIN COUNTY TAX ASSESSOR/COLLECTOR bankruptcy@abernathy-law.com

Penny Packard Reid

on behalf of Creditor Committee Official Committee of Unsecured Creditors preid@sidley.com
txefilingnotice@sidley.com;penny-reid-4098@ecf.pacerpro.com;ncade@sidley.com

Phillip L. Lamberson

on behalf of Creditor Acis Capital Management L.P. plamberson@winstead.com

Phillip L. Lamberson

on behalf of Creditor Acis Capital Management GP LLC plamberson@winstead.com

Rakhee V. Patel

on behalf of Creditor Acis Capital Management L.P. rpatel@sidley.com,
rahkee-patel-7622@ecf.pacerpro.com,txefilingnotice@sidley.com

Rakhee V. Patel

on behalf of Creditor Acis Capital Management GP LLC rpatel@sidley.com,
rahkee-patel-7622@ecf.pacerpro.com,txefilingnotice@sidley.com

Richard L. Wynne

on behalf of Interested Party John S. Dubel rlwynne@jonesday.com

Richard L. Wynne

on behalf of Interested Party Hon.Russell F. Nelms (Ret.) rlwynne@jonesday.com

Robert Joel Feinstein

on behalf of Defendant Highland Capital Management LP rfeinstein@pszjlaw.com

Robert Joel Feinstein

on behalf of Debtor Highland Capital Management L.P. rfeinstein@pszjlaw.com

Robert Scott Loigman

on behalf of Interested Party Marc S. Kirschner the Litigation Trustee of the Highland Litigation Sub-Trust
robertloigman@quinnemanuel.com

Robert Scott Loigman

on behalf of Interested Party Litigation Trustee of the Highland Capital Management L.P. Litigation Sub-Trust
robertloigman@quinnemanuel.com

Robert Scott Loigman

on behalf of Plaintiff Marc Kirschner robertloigman@quinnemanuel.com

Roger L. McCleary

on behalf of Plaintiff Charitable DAF Fund L.P. rmccleary@pmmclaw.com

Ryan E. Manns

on behalf of Interested Party UBS AG London Branch ryan.manns@nortonrosefulbright.com

Ryan E. Manns

on behalf of Interested Party UBS Securities LLC ryan.manns@nortonrosefulbright.com

Sarah A. Schultz

on behalf of Interested Party PetroCap LLC sschultz@akingump.com,
mstamer@akingump.com;afreeman@akingump.com;dkazlow@akingump.com;aqureshi@akingump.com;dkrasa-berstell@akingu
mp.com;bkemp@akingump.com;brenda-kemp-7410@ecf.pacerpro.com

Sawnie A. McEntire

on behalf of Plaintiff Charitable DAF Fund L.P. smcentire@pmmlaw.com, mpittmon@pmmlaw.com;tmiller@pmmlaw.com

Sawnie A. McEntire

on behalf of Creditor Hunter Mountain Investment Trust smcentire@pmmlaw.com
mpittmon@pmmlaw.com;tmiller@pmmlaw.com

Sawnie A. McEntire

on behalf of Interested Party Hunter Mountain Trust smcentire@pmmlaw.com mpittmon@pmmlaw.com;tmiller@pmmlaw.com

Scott M. Seidel

on behalf of Attorney Scott M. Seidel scott@scottseidel.com susan.seidel@earthlink.net;sms01@trustesolutions.net

Sean M. Beach

on behalf of Creditor Committee Official Committee of Unsecured Creditors bankfilings@ycst.com sbeach@ycst.com

Shawn M Bates

on behalf of Creditor Acis Capital Management L.P. sbates@azalaw.com, tbyrd@azalaw.com

Shawn M. Christianson

on behalf of Creditor Oracle America Inc. schristianson@buchalter.com, cmcintire@buchalter.com

Susheel Kirpalani

on behalf of Interested Party Litigation Trustee of the Highland Capital Management L.P. Litigation Sub-Trust
susheelkirpalani@quinnemanuel.com, dian.gwinnup@haynesboone.com

| | |
|---|---|
| Suzanne K. Rosen | on behalf of Creditor Acis Capital Management GP LLC suki.rosen@vhh.law, srosen@ecf.courtdrive.com;khartogh@ecf.courtdrive.com;forsheyprostokllp@jubileebk.net;kristina.hartogh@vhh.law;bankruptcy.docketing@vhh.law;bankruptcy.docketing@ecf.courtdrive.com |
| Suzanne K. Rosen | on behalf of Creditor Acis Capital Management L.P. suki.rosen@vhh.law, srosen@ecf.courtdrive.com;khartogh@ecf.courtdrive.com;forsheyprostokllp@jubileebk.net;kristina.hartogh@vhh.law;bankruptcy.docketing@vhh.law;bankruptcy.docketing@ecf.courtdrive.com |
| Thomas Albert Cooke | on behalf of Creditor Acis Capital Management L.P. tcooke@azalaw.com, mflores@azalaw.com |
| Thomas C. Scannell | on behalf of Interested Party Sentinel Reinsurance Ltd. tscannell@foley.com acordero@foley.com;thomas-scannell-3441@ecf.pacerpro.com |
| Thomas Daniel Berghman | on behalf of Interested Party Highland Capital Management Fund Advisors L.P. tberghman@munsch.com, amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com |
| Thomas Daniel Berghman | on behalf of Defendant NexPoint Advisors L.P. tberghman@munsch.com, amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com |
| Thomas Daniel Berghman | on behalf of Defendant Highland Capital Management Fund Advisors L.P. tberghman@munsch.com, amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com |
| Thomas Daniel Berghman | on behalf of Interested Party NexPoint Advisors L.P. tberghman@munsch.com, amays@munsch.com,CourtMail@munsch.com;hvalentine@munsch.com |
| Thomas G. Haskins, Jr. | on behalf of Creditor NWCC LLC thaskins@btlaw.com |
| Thomas M. Melsheimer | on behalf of Creditor Frank Waterhouse Scott B. Ellington, Isaac Leventon, Jean Paul Sevilla, Hunter Covitz and Thomas Surgent tmelsheimer@winston.com, tom-melsheimer-7823@ecf.pacerpro.com |
| United States Trustee | ustpregion06.da.ecf@usdoj.gov |
| Vickie L. Driver | on behalf of Creditor HarbourVest et al vickie@driversteplaw.com crissie@driversteplaw.com;elisa@driversteplaw.com |
| William R. Howell, Jr. | on behalf of Defendant James D. Dondero williamhowell@utexas.edu williamhowell@utexas.edu |
| Zachery Z. Annable | on behalf of Defendant Highland Capital Management L.P. zannable@haywardfirm.com, mholmes@haywardfirm.com |
| Zachery Z. Annable | on behalf of Plaintiff Highland Capital Management L.P. zannable@haywardfirm.com, mholmes@haywardfirm.com |
| Zachery Z. Annable | on behalf of Other Professional Highland Claimant Trust zannable@haywardfirm.com mholmes@haywardfirm.com |
| Zachery Z. Annable | on behalf of Other Professional Hayward & Associates PLLC zannable@haywardfirm.com mholmes@haywardfirm.com |
| Zachery Z. Annable | on behalf of Defendant Highland Capital Management LP zannable@haywardfirm.com, mholmes@haywardfirm.com |
| Zachery Z. Annable | on behalf of Other Professional Hayward PLLC zannable@haywardfirm.com mholmes@haywardfirm.com |
| Zachery Z. Annable | on behalf of Defendant Highland Claimant Trust zannable@haywardfirm.com mholmes@haywardfirm.com |
| Zachery Z. Annable | on behalf of Debtor Highland Capital Management L.P. zannable@haywardfirm.com, mholmes@haywardfirm.com |

TOTAL: 551