Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Appellant The Dugaboy Investment Trust*

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br>HIGHLAND CAPITAL<br>MANAGEMENT, L.P.,<br>　　　Reorganized Debtor. | Chapter 11<br>Case No. 19-34054-sgj11 |

## DUGABOY INVESTMENT TRUST'S RESPONSE OPPOSING HIGHLAND CLAIMANT TRUST'S MOTION FOR ORDER FIXING ALLOWED AMOUNT OF CLASS 11 INTERESTS

1

# TABLE OF CONTENTS

                                                                                                                                                                    **Page**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................3

III. LEGAL STANDARD .............................................................................................5

IV. ARGUMENT ..........................................................................................................6

    A. Excess funds and surplus assets revert to the equity interest holders. ...........6

    B. Dugaboy is entitled to its *pro rata* share of any excess funds. ......................7

    C. The Absolute Priority Rule does not defeat Dugaboy's right to share in any surplus funds. ...................................................................................................8

    D. No authority supports Highland's use of limited partner capital accounts to set the proposed allowed value of the claims of Classes 10 and 11. ............10

V. CONCLUSION AND PRAYER ...........................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Brints Cotton Marketing, Inc.*,
  737 F.2d 1338 (5th Cir. 1984) ................................................................................. 5, 7

*In re Granite Broadcasting Corp.*,
  369 B.R. 120 (Bankr. S.D.N.Y. 2007) ..................................................................... 9, 11

*In re Idearc, Inc.*,
  423 B.R. 138 (Bankr. N.D. Tex. 2009) ......................................................................... 9

*In re Introgen Therapeutics*,
  429 B.R. 570 (Bankr. W.D. Tex. 2010) ........................................................................ 8

*In re Pacific Lumber Co.*,
  584 F.3d 229 (5th Cir. 2009) ....................................................................................... 5

*In re Seaquest Diving, L.P.*,
  579 F.3d 411 (5th Cir. 2009) ....................................................................................... 8

*In re Serta Simmons Bedding, Inc.*,
  125 F.4th 555 (5th Cir. 2024) ................................................................................... 7, 8

*Vanston Bondholders Protective Comm. v. Green*,
  329 U.S. 156 (1946) ..................................................................................................... 7

**Statutes**

11 U.S.C. § 502 ..................................................................................................................... 5

11 U.S.C. § 502(b) ................................................................................................................ 5

11 U.S.C. § 502(c) ................................................................................................................ 5

11 U.S.C. § 726(a)(6) ............................................................................................................ 6

11 U.S.C. § 1129 ................................................................................................................... 5

11 U.S.C. § 1129(b) .............................................................................................................. 5

11 U.S.C. § 1129(b)(2)(C) .................................................................................................... 8

The Dugaboy Investment Trust ("Dugaboy") respectfully asks the Court to deny the *Motion for Order Fixing the Allowed Amount of Class 11 Interests*, filed by the Highland Claimant Trust ("Highland")[1] on August 8, 2025 (Dkt. 4362).

## I. INTRODUCTION

This dispute is about more than just determining the amount of Dugaboy's[2] Class 11 allowed claim. It will also determine the fate of any surplus funds or assets left over after all senior claimants have been paid in full. Highland says Dugaboy's claim should be reduced to a fixed dollar amount that puts a hard ceiling on any potential recovery. Dkt. 4362 at 1–2. Dugaboy instead contends Class 11 should share in any residual funds based on a *pro rata* percentage in proportion to its share of the equity ownership interests.[3] This is not an extravagant request, as Dugaboy only owns 0.5%[4] of the equity compared to HMIT's 99.5%. Under Dugaboy's approach, it has a fair chance of getting some money. Under Highland's approach, Dugaboy gets no money. Highland is wrong, and its Motion should be denied for four reasons.

---

[1] Except where otherwise specified, this Response uses "Highland" to refer to Highland Claimant Trust, the Movant on this Motion.

[2] For simplicity, this Response uses "Dugaboy" as a shorthand for all of the Class 11 interest-holders. The claimants in Class 11 include Dugaboy, Strand Advisors, Mark Okada individually, and two Okada Family Trust entities.

[3] *See* June 30, 2025 Hearing Transcript 245:25–246:18 (Dugaboy's closing argument).

[4] The 0.5% figure represents the total equity owned by all the members of Class 11. For Dugaboy by itself, its equity share is 0.1866%. *See* Hrg. Tr. 81:1–5.

1

*First*, both the confirmed Reorganization Plan ("Plan"), and the Claimant Trust Agreement ("CTA") require that any excess funds or surplus assets left over after all senior creditors have been paid in full must revert to the equity interest holders, which include Dugaboy as well as HMIT.

*Second*, longstanding principles of bankruptcy law and controlling precedent require that any distribution of excess funds be made on a *pro rata* or "ratable" basis, meaning that whatever the actual dollar amounts, Dugaboy is entitled to share in any such distribution in proportion to its 0.5% equity interest.

*Third*, the absolute priority rule does not block Dugaboy from sharing in a distribution of excess funds, because any such funds will only become available after all senior classes of creditors have been paid in full. To the contrary, the absolute priority rule helps Dugaboy because it prohibits senior creditors from receiving *more* than they are owed under the Plan and directs that excess value must be allocated to junior classes of creditors or equity.

*Finally*, Highland's proposed method for determining the value of Dugaboy's claim—the same method it previously used for HMIT's claim at the June 25, 2025 hearing[5]—must be rejected as both unreliable and contrary to the principles of

---

[5] Dugaboy acknowledges that the Court has already ruled on the allowed amount of HMIT's Class 10 claim. *See* Dkt. 4297. Dugaboy assures the Court that its continued argument on this issue is not meant to try the Court's patience but is merely for the sake of preserving error and avoiding waiver. Discussion of HMIT is also relevant because Highland is asking the Court to take exactly the same approach to valuing Dugaboy's interest as it did with HMIT. *See* Dkt. 4362 at 7 (asking the Court to allow the Class 11 interests "in a manner consistent with the HMIT Order").

2

bankruptcy law. Highland arbitrarily chose to calculate claim values based on the "value" given in the equity holders' limited partnership capital accounts, a number calculated for tax purposes that bears little relation to the market value of the partnership interest. And by limiting Dugaboy's claim to a fixed (and unreliable) number derived from its capital accounts, Highland improperly deprives Dugaboy of its right to *pro rata* treatment in proportion to its ownership share.

## II. BACKGROUND

Before its bankruptcy filing on October 16, 2019, the original debtor existed as a limited partnership entity named Highland Capital Management, L.P. ("HCMLP"). Dkt. 1943. As relevant here, HCMLP structured its limited partnership interests into three classes named "A", "B", and "C." HMIT acquired all of the Class B and C interests, which amounted to 99.5% of HCMLP's partnership interests. Several other entities (including Dugaboy) retained the Class A interests which amounted to the remaining 0.5% of HCMLP's equity. Dkt. 4362 at 3. For tax purposes, HCMLP was required to maintain "limited partner capital accounts" that purported to track the value of each partner's interest. *Id*. at 6.

On February 22, 2021, this Court confirmed the *Fifth Amended Plan of Reorganization* for HCMLP ("Plan") [Dkt. 1943] with an effective date of August 11, 2021 [Dkt. 2700]. As relevant here, the pre-petition limited partnership interests in HCMLP would become unvested Contingent Claimant Trust interests when their equity interests were allowed by the Court under the Plan (and once allowed, those

3

interests would only vest after more senior creditors were paid in full). Dkt. 4362 at 5. The pre-filing Class B and C interests owned by HMIT became Class 10, and the Class A interests owned by Dugaboy and others became Class 11. *Id.*

At the June 25, 2025 hearing, the Court heard argument and evidence on determining an allowed amount for HMIT's Class 10 equity interests. Claimant Trustee James Seery explained that he used the valuation in HMIT's capital account on the date the petition was filed ($394,630,871.53) as the basis for calculating HMIT's allowed amount for purposes of its bankruptcy claim. Hrg. Tr. 93:11–94:9. After subtracting the balance of approximately $57 million on a note HMIT owed to Highland, Seery arrived at a claim value of $336,940,230.58. *Id.* Despite strenuous objections from Dugaboy—which argued for calculating the allowed amounts for both HMIT and Dugaboy by using a *pro rata* percentage based on their respective 99.5%/0.5% equity ownership shares—the Court sided with Highland and allowed HMIT's Class 10 claim in the same fixed amount calculated by Seery. Dkt. 4297 ¶ 12; *see* Hrg. Tr. 245:25–247:23; 249:20–250:1.

In this Motion, Highland asks the Court to calculate Dugaboy's Class 11 allowed amount using the same method—*i.e.*, the value of its limited partner capital account as of the petition date—it has already used for HMIT. For the reasons discussed below, the Court should decline that invitation.

4

## III. LEGAL STANDARD

Section 502 of the Bankruptcy Code provides that (subject to various exceptions not relevant here) if a claim is objected to, the Court "after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount." 11 U.S.C. § 502(b). The Court may also "estimate" the amount of any contingent or unliquidated claim, if fixing or liquidating such claim would cause undue delay. *Id*. § 502(c). While § 502 requires the Court to determine a dollar value, it does not dictate any specific method for doing so. Instead, the Court should choose the methods and sources of information that is best suited to the circumstances. *See In re Brints Cotton Marketing, Inc.*, 737 F.2d 1338, 1341 (5th Cir. 1984) ("In estimating a claim, the bankruptcy court should use whatever method is best suited to the circumstances.").

Section 1129 of the Bankruptcy Code sets forth the requirements that must be met for a proposed reorganization Plan to be confirmed by the bankruptcy court. One is the "Absolute Priority Rule," which requires that the claims of each senior class of creditors be paid in full before holders of junior claims can receive anything. 11 U.S.C. § 1129(b); *In re Pacific Lumber Co.*, 584 F.3d 229, 244–45 (5th Cir. 2009). Another is that the Plan be "fair and equitable" with respect to each class of claim holders. *Id*. § 1129(b).

5

## IV. ARGUMENT

Imagine there is money left over after paying every senior class of creditors the full amounts they are owed under the Plan. This is not farfetched. After paying off Class 9, there could be as much as $45–$50 million left for distribution to Classes 10 and 11. *See* Hrg. Tr. 81:15–18. HMIT has a significant interest in these funds, given its 99.5% equity ownership share. The question is whether Dugaboy can claim the remaining 0.5% of any excess funds based on its own equity rights, even if those funds exceed whatever fixed amount the Court may have used for valuing Dugaboy's allowed claim. The answer, as explained below, is a resounding yes.

### A. Excess funds and surplus assets revert to the equity interest holders.

Both the Plan and the Contingency Trust Agreement make express provision for the disposition of any funds or assets that may be left over after all classes of creditors have been paid in full under the Plan. Upon the wind-down and dissolution of the Reorganized Debtor and the Claimant Trust, "any remaining Claimant Trust Assets ***that exceed the amounts required to be paid under the Plan***" will be transferred to the holders of the claimant trust interests, *i.e.*, the Class 10 and Class 11 claimants. Plan, Art. IV(B)(14) (emphasis added); *see* similar provisions at Plan IV(A), IV(C) and CTA ¶ 9.2. This is consistent with the Bankruptcy Code, which provides that any distribution of estate property must go, in the last instance, to the debtor. *See* 11 U.S.C. § 726(a)(6).

6

### B. Dugaboy is entitled to its *pro rata* share of any excess funds.

Highland's proposal to put a fixed ceiling on Dugaboy's allowed claim and cut it off from any further share in excess funds is contrary to the letter and spirit of the Bankruptcy Code, the confirmed Reorganization Plan, and the Claimant Trust Agreement. All of these make clear that holders of contingent equity interests like Dugaboy are entitled to their *pro rata* proportionate ownership shares without being limited by any fixed ceiling. The Plan specifically provides that both Class 10 (HMIT) and Class 11 (Dugaboy and others) will receive their "Pro Rata share of the Contingent Claimant Trust Interests." Plan Art. III, H(10) and (11); *see* CTA ¶ 5.1(c) (providing that Class 10 and Class 11 holders will receive contingent trust interests "***equal to the ratio***" that each holder's allowed interest bears to the total amount of allowed interests for their respective class).

These requirements reflect the Bankruptcy Code's statutory interest in upholding the "important norm" in corporate finance of similar treatment for similarly situated creditors. *In re Serta Simmons Bedding, Inc.*, 125 F.4th 555, 565 (5th Cir. 2024). In bankruptcy, that statutory purpose takes the form of mandates to bring about a "ratable [*i.e.*, *pro rata*] distribution" of assets among the creditors. *Brints*, 737 F.2d at 1341; *see Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 162–63 (1946) ("[A] purpose of bankruptcy is to administer an estate as to bring about a ***ratable distribution*** of assets among the bankrupt's creditors.") (emphasis added). "Ratable treatment is such an important norm that it is often

7

described as a lender's 'sacred right' under syndicated loan agreements." *Serta Simmons*, 125 F.4th at 565.

Disregarding these clear and powerful authorities, Highland contends that because of the absolute priority rule and contractual subordination clauses, HMIT would get 100% of any excess leftover funds—regardless of their amount—and Dugaboy would get nothing beyond the fixed ceiling of the amount allowed by the Court. Hrg. Tr. 133:9–134:3 (Seery testimony); *see* Plan ¶ I(B)(44) (stating Class A interests will be subordinated to Class B/C interests); CTA ¶5.1(c) (same). This contention is wrong, as explained next.

### C. The Absolute Priority Rule does not defeat Dugaboy's right to share in any surplus funds.

Highland misunderstands the purpose of the absolute priority rule, which is to meet the statutory requirement for "fair and equitable" treatment by ensuring each class is fully paid in order of its priority before the next junior class gets anything at all. *See* 11 U.S.C. § 1129(b)(2)(C); *In re Seaquest Diving, L.P.*, 579 F.3d 411, 420 n.5 (5th Cir. 2009) ("The absolute priority rule requires that certain classes of claimants be paid in full before any member of a subordinate class is paid."). But in a scenario where excess cash remains after ***every creditor class has been paid in full***, the absolute priority rule has served its purpose and no longer poses an obstacle to distribution of residual funds. *See, e.g.*, *In re Introgen Therapeutics*, 429 B.R. 570, 585 (Bankr. W.D. Tex. 2010) (acknowledging that absolute priority "would not be an issue" after higher-priority classes are paid in full). Instead, here that distribution

8

is governed by the terms of the Plan and the Claimant Trust Agreement, which provide that excess funds will eventually be distributed to the equity interest holders (*i.e.*, HMIT and Dugaboy) in proportion to their percentage interest. *See* Section IV(A) above. In that scenario, Dugaboy's designation under Class 11 and HMIT's Class 10 is not a subordination; the Plan and other legal principles require that all equity holders be paid pro rata from excess funds. The designations do not strip Dugaboy of its 0.5% equity share or the right to participate in distributions of excess funds that comes with it.

If the Court allows HMIT to collect 100% (rather than its pro rata share of 99.5%) of any residual funds, while barring Dugaboy's participation by holding it under the hard ceiling of a fixed dollar amount, it will violate an important corollary to the absolute priority rule that prohibits senior classes of claimholders from receiving ***more than*** the full amount they are owed under the Plan. *See, e.g.*, *In re Idearc, Inc.*, 423 B.R. 138, 170 (Bankr. N.D. Tex. 2009) ("The corollary of the absolute priority rule is that senior classes cannot receive more than a one hundred percent (100%) recovery for their claims."). Instead, the excess value "must be allocated to junior classes of debt or equity, as the case may be." *In re Granite Broadcasting Corp.*, 369 B.R. 120, 140–41 (Bankr. S.D.N.Y. 2007). This rule is intended to protect junior classes from greedy overreach by senior creditors. Because there is no class more junior than Dugaboy's Class 11, this rule is meant to protect

9

Dugaboy and ensure it is not wrongfully deprived of the rights and benefits of its 0.5% share.

**D. No authority supports Highland's use of limited partner capital accounts to set the proposed allowed value of the claims of Classes 10 and 11.**

Although Highland's Claimant Trustee James Seery rejected the use of a *pro rata* approach in this case, he admitted under cross-examination that using equity ownership percentages was a "standard" methodology he had employed in other cases to value a partnership interest for sale or liquidation. Hrg. Tr. 132:24–133:8. Seery also admitted that the underlying limited partnership agreement expressed HMIT's and Dugaboy's relative equity interests as percentages (99.5% and 0.5% respectively) and not fixed dollar amounts. *Id*. 94:10–12.

By contrast, no authority supports Seery's arbitrary choice to use pre-petition limited partner capital accounts as the basis for calculating the value of allowed claims for equity interest holders. *See id*. 93:11–94:9. The Bankruptcy Code does not even mention (let alone require) such an approach, and it is similarly absent from both the Plan and the Claimant Trust Agreement. That's probably for a good reason. Because partnership capital accounts are maintained and calculated largely for tax purposes (*see* Dkt. 4362 at 4), the resulting book values may bear little relation to what an equity interest might command in a market sale.

Contrary to the usual practice in complex bankruptcies, no one has performed an expert valuation of HMIT's equity interest. *See, e.g.*, *Granite Broadcasting*, 369

10

B.R. at 140–41 (describing the lengthy and detailed valuation analyses performed by both sides' experts). Thus, little reliance can be placed on Seery's back-of-the-envelope estimation that HMIT's claim is worth over $336 million. *See* Hrg. Tr. 110:14–111:6. And the Court can give no greater confidence to Highland's assertion (based on the same dubious methodology) that Dugaboy's interest should be capped at a fixed ceiling of $740,081.61. *See* Dkt. 4362 at 1. This approach unfairly and inequitably cuts off Dugaboy from its right to participate in any distributions of excess assets according to its 0.5% *pro rata* equity share. Even in a bankruptcy, equity deserves to be treated equitably.

All of this acceleration of the determination of the value of equity interests is untimely and unnecessary. It puts the cart before the horse. There is no reason—and Highland has offered none—for the Court to strain to adopt a methodology to value the claim of each equity holder. The Plan takes care of this, providing that each equity holder should be paid *pro rata* from excess funds that arise. When excess funds arise, they should be divided according to the equity ownership percentages. Highland's effort prematurely to make these determinations is without need or cause or reason and should be rejected.

## V.    CONCLUSION AND PRAYER

For the reasons above, Dugaboy respectfully asks the Court to deny Highland's Motion.

Dated: September 8, 2025

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: */s/ Geoffrey S. Harper*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for The Dugaboy Investment Trust*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 8, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper