# EXHIBIT B-1



| | |
|---|---|
| **From:** | Thomas Surgent <TSurgent@hcmlp.com> |
| **Sent:** | Wednesday, January 23, 2013 8:22 PM |
| **To:** | Hough, Steven C.; 'Michael K. Hurst (mhurst@ghjhlaw.com)'; 'Katz, Marc (MarcKatz@andrewskurth.com)' |
| **Cc:** | Abrams, Kevin; Scott Ellington; Greg Zarin |
| **Subject:** | HERA Drafts |
| **Attachments:** | HERA 3rd Amended Restated LLC Agreement.doc; HERA Resolution re Allocation of Legal Expenses.doc; HERA Expense Allocation Agreement.docx |

**Importance:**          High

**Follow Up Flag:**      Follow up
**Flag Status:**         Flagged

Attached for your review and comment are:

1.  The amended and restated LLC agreement proposed for HERA now that the initial offer to purchase has closed
2.  A draft proposed expense allocation agreement for the appropriate allocation of expenses related to the Daugherty litigation
3.  A resolution of the HERA manager allocating the Daugherty litigation expenses as an offset under Section 11.1.

The allocation agreement in particular needs someone on the litigation side to fill in the appropriate facts/details.

Please let me know if you have any questions or comments.  Happy to discuss tomorrow as needed.

THOMAS SURGENT | CHIEF COMPLIANCE OFFICER &
DEPUTY GENERAL COUNSEL



300 Crescent Court  |  Suite 700 |  Dallas, Texas 75201
Office: 972.419.6205          |          Fax: 972.628.4147
tsurgent@hcmlp.com          |          www.hcmlp.com

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

DRAFT
1/23/13

# THIRD AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
### OF
### HIGHLAND EMPLOYEE RETENTION ASSETS LLC

THIS THIRD AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (this "*Agreement*") is entered into as of this ____ day of January, 2013 by Highland Employee Retention Assets LLC, a Delaware limited liability company (the "*Company*"), and the parties set forth on the signature pages hereof.

WHEREAS, the original Limited Liability Company Agreement of the Company was entered into on October 26, 2009 (the "*Original Agreement*");

WHEREAS, the Original Agreement was amended and restated effective May 13, 2011 and again on February 16, 2012 and further amended on January 17, 2013 and on January 18, 2013 (as amended, the "*Restated Agreement*");

WHEREAS, the Member(s) holding at least of majority-in-interest of the Series A Preferred Units have recommended certain amendments to the Restated Agreement;

WHEREAS, in order to incorporate such amendments and restate the Restated Agreement, the parties hereto hereby approve the further amendment and restatement of the Restated Agreement on the terms set forth herein;

NOW THEREFORE, the Restated Agreement of the Company, as amended, is hereby further amended and restated in its entirety as follows:

## ARTICLE I

### NAME AND PLACE OF BUSINESS

The name of the Company is Highland Employee Retention Assets LLC. Its registered office in the State of Delaware is 1209 Orange Street, Wilmington, Delaware 19801, in the County of New Castle. The name of its registered agent at such address is The Corporation Trust Company. Its principal place of business is 300 Crescent Court, Suite 700, Dallas, Texas 75201 or such other place or places as the Manager may hereafter determine.

## ARTICLE II

### BUSINESS, PURPOSE, AND TERM OF COMPANY

Section 2.1    Purposes.  The purpose of the Company shall be to do all such things for which limited liability companies may be formed under the Act.

Section 2.2    Term of Company.   The term of the Company shall continue on a perpetual basis unless dissolved pursuant to ARTICLE VI of this Agreement.

Section 2.3   Powers of the Company.  In addition to the purpose set forth in Section 2.1 above, the Company shall have the power:

(a)   to conduct its business, carry on its operations and have and exercise the powers granted to a limited liability company by the Act in any state, territory, district or possession of the United States, or in any foreign country that may be necessary, convenient or incidental to the accomplishment of the purpose of the Company;

(b)   to acquire, by purchase, mortgage, lease, contribution of property or otherwise, and to own, hold, operate, maintain, finance, improve, lease, sell, convey, mortgage, transfer or dispose of any real or personal property that may be necessary, convenient or incidental to the accomplishment of the purpose of the Company;

(c)   to enter into, perform and carry out contracts of any kind, including, without limitation, contracts with any affiliate of the Company or the Manager or any person or other entity that directly or indirectly controls, is controlled by, or is under common control with any Member of the Company, or any agent of the Company necessary to, in connection with, convenient to, or incidental to, the accomplishment of the purpose of the Company;

(d)   to lend or borrow money and to invest its funds, in each case as necessary to, convenient to, or incidental to, the accomplishment of the purpose of the Company;

(e)   to sue and be sued;

(f)   to appoint employees and fix their compensation; and

(g)   to indemnify any current or former officer, director, employee, agent, Member or Manager of the Company.

ARTICLE III

MEMBERSHIP UNITS; CAPITAL CONTRIBUTIONS

Section 3.1   Membership Units.  The capital interests in the Company shall consist of (a) Common Units and (b) Series A Preferred Units, each having the respective rights set forth on Exhibit A, attached.

Section 3.2   Capital Contribution by Members.  Capital Contributions shall be made, in cash or in kind, from time to time as the Manager shall determine.

Section 3.3   Capital Accounts.   (a) The Company shall establish and maintain a separate Capital Account for each Member in accordance with Section 704 of the Code and the Treasury Regulations promulgated thereunder, including Treasury Regulations §1.704-a(b) (each such Capital Account, a "**Capital Account**").  The Capital Account maintained for each member shall be equal to:

(i)   the capital contributions made by such member to the Company, if any; *increased by*

    (ii) the aggregate amount of Net Income and other items of income and gain allocated to such Member pursuant to this ARTICLE III; *decreased by*

    (iii) the aggregate amount of distributions made by the Company to such Member; *decreased by*

    (iv) the aggregate amount of Net Loss and other items of deduction, expenditure and loss allocated to such member pursuant to this ARTICLE III.

    (b) The maintenance of Capital Accounts pursuant to this ARTICLE III is intended to comply with the requirements of Section 704 of the Code and the Treasury Regulations promulgated thereunder, and the provisions of this Agreement regarding the maintenance of Capital Accounts shall be interpreted and applied consistently therewith.  If, in the opinion of the Manager, the manner in which the Capital Accounts are to be maintained pursuant to this ARTICLE III should be modified in order to comply with the requirements of Section 704 of the Code and the Treasury Regulations promulgated thereunder, then, notwithstanding anything to the contrary contained in this ARTICLE III, the Manager may change the manner in which the Capital Accounts are maintained, and the Manager shall have the right, upon delivery of written notice to each other Member and without obtaining the consent of any member, to amend this Agreement to reflect any such change in the manner in which the Capital Accounts are maintained.

    Section 3.4 <u>Allocation of Net Income and Net Loss</u>.  (a) Except as otherwise provided in Section 11.1 hereof, Net Income and Loss shall be allocated pro rata in accordance with each Series A Preferred Unit holders Capital Account balance.

    (b) The Members agree to be bound by the provisions of this ARTICLE III in reporting their shares of Company Net Income and Loss for tax purposes.

    (c) The cost of performance of any special service attributable to any member shall be allocated and charged to and borne by such Member.  Any Member allocated and charged a particular cost or expense shall be entitled to such deductions or credits as a re-attributable to such cost or expense in computing such Member's taxable income or tax liability to the exclusion of any other Member.

ARTICLE IV

<u>DISTRIBUTIONS</u>

    No other distributions of any cash or assets of the Company shall be made, except as (a) as determined by the Manager in its sole discretion or (b) as required in connection with the dissolution of the Company.

3

# ARTICLE V

## MANAGEMENT OF THE COMPANY

Section 5.1    General.  The Company shall be managed by [HERA Management, LLC] (the "**Manager**").

The Manager shall have the sole right, power and authority to manage, direct and control all of the business and affairs of the Company, to transact business on behalf of the Company, to sign for the Company or on behalf of the Company or otherwise to bind the Company.  The Manager shall serve until the Manager's resignation or removal by the affirmative vote of the Members holding at least a majority-in-interest of the Series A Preferred Units.  In the event of the resignation or removal of the Manager, a successor Manager shall be appointed by Members holding at least a majority-in-interest of the Series A Preferred Units.

Section 5.2    Powers of the Manager.    The Manager shall have the exclusive and complete authority, acting without the consent or approval of, or notice to, the Member and in the Manager's sole and absolute discretion, at the Company's expense, to operate the Company and its business and to make all determinations or elections or to consent to any matter otherwise described in or desirable, convenient or incidental to this Agreement, including, without limitation, the power of the Company set forth in section 2.3 hereof.

Section 5.3    Reliance by Third Parties.    Any person or entity dealing with the Company may rely on a certificate signed by the Manager as to:

(a)    the identity of the Manager;

(b)    the existence or non-existence of any fact or facts which constitute a condition precedent to acts by the Manager or are in any matter germane to the affairs of the Company;

(c)    the persons who or entities which are authorized to execute and deliver any instrument or document of or on behalf of the Company; or

(d)    any act or failure to act by the Company or as to any other matter whatsoever involving the Company.

Section 5.4    Tax Reporting.  The Manager shall endeavor to cause to be prepared after the end of each taxable year of the Company and filed, on or before their respective due dates (as the same may be extended), all federal and state income tax returns of the Company for such taxable year and shall take all action as may be necessary to permit the Company's regular accountants to prepare and timely file such returns.  Form, 1065 (Schedule K-1) shall be sent to the Member and each holder of Series A Preferred Units after the end of each taxable year reflecting such member's or holders pro rata share of income, loss, credit and deductions for such taxable year.

Section 5.5    Tax Election.  Any elections required or permitted to be made by the Company under the Code shall be made by the Manager in such manner as the Manager shall

4

determine. In the event of an audit of the Company by the Internal Revenue Service, the Manager shall act as the "tax matters partner" pursuant to Section 6231(a)(7) of the Code, and such tax matters partner shall comply with all of his obligations as such under the Code and the regulations promulgated thereunder. During any time as the Company has one Member, it intends to be treated as a "branch" of such Member for U.S. federal income tax purposes, and during such time as the Company has more than one member, it intends to be treated as a partnership for federal income tax purposes, and the Manager shall make any such elections necessary for such purposes and neither the Member nor any holder of Series A Preferred Units shall do anything inconsistent with such characterization.

## ARTICLE VI

### DISSOLUTION

The Company shall be dissolved, and shall terminate and wind up its affairs, upon the first to occur of the following:

      (a)     the determination by the Manager to dissolve the Company; or

      (b)     the entry of a decree of judicial dissolution pursuant to Section 18.802 of the Act.

## ARTICLE VII

### GOVERNING LAW AND JURISDICTION

This Agreement, including its existence, validity, construction and operating effect, and the rights of each of the parties hereto, shall be governed by and construed in accordance with the laws of the State of Delaware (without regard to principles of conflicts of laws).

## ARTICLE VIII

### INDEMNIFICATION

Section 8.1 <u>Indemnification and Liability</u>. (a) To the maximum extent permitted by applicable law, no member of the Board of the Company (as constituted on January 18, 2013), no current or future officer of the Company nor the Initial Member (each an "***Indemnitee***") shall be liable to the Company or any other third party (i) for mistakes of judgment, (ii) for any act or omission suffered or taken by it, (iii) for breach of fiduciary duty owed to the Company and/or its members or (iv) for losses due to any such mistake, action or inaction, or breach of fiduciary duty.

      (b)     To the fullest extent permitted by applicable law as the same exists or may hereafter be amended, the Company shall indemnify and hold harmless, and advance expenses including attorneys' fees, to an Indemnitee against all liabilities and claims against each such person arising from such person's performance of his duties in conformance with the terms of this Agreement. Notwithstanding the preceding sentence, the Company shall be required to indemnify, or advance expenses to, an Indemnitee in connection with a proceeding (or part

5

thereof) commenced by such Indemnitee only if the commencement of such proceeding (or part thereof) by the Indemnitee was authorized by the Manager and/or the Initial Member.

(c)     An Indemnitee may consult with legal counsel or accountants selected by the Manager and/or the Initial Member and, to the maximum extent permitted by applicable law, any action or omission suffered or taken in good faith in reliance and in accordance with the written opinion or advice of any such counsel or accountants (provided such counsel or accountants have been selected with reasonable care) shall be fully protected and justified with respect to the action or omission so suffered or taken.

(d)     The rights conferred upon Indemnitees in this Article VIII shall be contract rights and such rights shall continue as to an Indemnitee who has ceased to be a member of the Board, an officer of the Company or the Initial Member and shall inure to the benefit of the Indemnitee's heirs, executors, administrators and successors.  Any amendment, alteration or repeal of this Article VIII that adversely affects any right of an Indemnitee or its successors shall be prospective only and shall not limit or eliminate any such right with respect to any liability or claim involving any occurrence or any alleged occurrence of any action or omission that took place prior to such amendment or repeal.

## ARTICLE IX

## ASSIGNMENT OF INTERESTS

No interest in the Company, whether Common Units, Preferred Units or otherwise, may be assigned without the prior written consent of the Manager, which may be withheld in its sole discretion.

## ARTICLE X

## WINDING UP AND DISTRIBUTION OF ASSETS

Section 10.1   Winding Up.  If the Company is dissolved, the Manager shall wind up the affairs of the Company.

Section 10.2   Distribution of Assets.  Upon the winding up of the Company, subject to the provisions of the Act, the Manager shall pay or make reasonable provision to pay all claims and obligations of the Company, including all costs and expenses of the liquidation and all contingent, conditional or unmatured claims and obligations that are known to the Manager but for which the identity of the claimant is unknown.  If there are sufficient assets, such claims and obligations shall be paid in full and any such provision shall be made in full.  If there are insufficient assets, such claims and obligations shall be paid or provided for according to their priority and, among claims and obligations of equal priority, ratably to the extent of assets available therefor.  Any remaining cash and other assets shall be distributed to the Members in proportion to their respective Capital Account balances.

ARTICLE XI

DISPUTE RESOLUTION; CONFIDENTIALITY

Section 11.1   Dispute Resolution.  In the event any Member or holder of units of the Company, including, without limitation, Series A Preferred Units (any such member or holder, a "**Disputing Party**"), is party to or commences litigation, or otherwise is party to or initiates any dispute or makes any claim, or takes any action that results in, has resulted in or could be expected to result in any third party making a claim, in each case involving or related to the Company, the Manager, the Initial member, or any of their respective members, officers, directors, agents, representatives, partners, employees, advised funds or accounts, equity holders (collectively, "**Relevant Parties**") or the management or operation of any such entities or any of the assets held thereby (each, a "**Dispute**"), or that in any way does or could adversely impact any of the assets held by the Company, then in sole discretion of the Manager, all pending and future distributions to the Disputing Party shall be immediately suspended until the Manager determines the total of the full losses, costs and expenses (including costs and expenses of legal counsel) of the Relevant Parties, plus any diminution in value of any Relevant Party's assets (including, without limitation, good will) incurred in connection with each Dispute or a Member's disclosure of matters and information regarding any Relevant Party or its assets (except as required by law or directed and authorized in writing by the applicable Relevant Party) in each case as determined by the Manager in its sole discretion (such aggregate losses, costs and expenses, the "**Damages**").  Once the Manager determines the Damages, it may in its sole discretion offset 100% of such Damages against any and all amounts that would otherwise be payable or distributable by the Company to the Disputing Party.  Any amount deducted from a Disputing Party's distribution pursuant to the preceding sentence shall be reallocated pro rata to the holder(s) of the Common Units.

Section 11.2   Confidentiality.  All matters and information regarding the Company and the assets held thereby are strictly confidential (all such information, "**Confidential Information**").  No holder of units of the Company, including, without limitation, the Series A Preferred Units, shall be permitted to disclose or to use for any purpose any Confidential Information, except as (i) required by law or (ii) as directed and authorized in writing by the Company.  In the event any unit holder violates the provisions of this Section 11.2 as determined by the Manager, then the dispute resolution provisions of Section 11.1 hereof shall be deemed to apply as if the violating holder was a "Disputing Party" thereunder pending the Company's resolution of such violation, including, without limitation, the netting provisions under Section 11.1 with respect to the costs, expenses and diminution resulting from such violation.

ARTICLE XII

DEFINITIONS

As used herein, the following terms shall have the indicated definitions.

"**Act**" means the Delaware Limited Liability Company Act, 6 Del. C. § 18-101 et seq., as may be amended from time to time.

7

"**_Agreement_**" means this Limited Liability Company Agreement, as may be amended from time to time.

"**_Capital Contribution_**" means the contribution by the Member to capital of the Company.

"**_Certificate of Formation_**" means the Certificate of Formation of the Company as filed with the Delaware Secretary of State on June 23, 2009, as the same may be amended from time to time.

"**_Code_**" means the Internal Revenue Code of 1986, as amended.

"**_Company_**" means Highland Employee Retention Assets LLC, a Delaware limited liability company.

"**_Initial Member_**" means Highland Capital Management, L.P., a Delaware limited partnership, the holder of the Common Units of the Company.

"**_Members_**" means the Initial Member and each holder of vested Series A Preferred Units.

"**_Net Income_**" or "**_Net Loss_**" means, for any fiscal year of the Company, the taxable income or loss of the Company for such year, as well as any other taxable income or loss (as computed for federal income tax purposes), with the following adjustments: (i) expenditures of the Company that are neither deductible for federal income tax purposes nor allowable as additions to the basis of Company property (or that are so treated pursuant to Section 1.704-1(b)(2)(iv) of the Treasury Regulations) shall be subtracted from such taxable income or loss; and (ii) there shall not be taken into account any items specially allocated pursuant to Section 3.5.

"**_Treasury Regulations_**" means the Treasury Regulations promulgated under the Code.

*[SIGNATURE PAGE FOLLOWS]*

IN WITNESS WHEREOF, the undersigned has executed and delivered this Agreement
the day and year first above written.

MANAGER:

[_____]

INITIAL MEMBER:

HIGHLAND CAPITAL MANAGEMENT, L.P.
By: Strand Advisors, Inc., its General Partner

By:_____
Name:_____
Title:_____

COMPANY:

HIGHLAND EMPLOYEE RETENTION ASSETS
LLC
By:   [HERA MANAGEMENT, LLC], its Manager

By:_____
Name:_____
Title:_____

## Exhibit A

**Rights of Common Units and Series A Preferred Units**

I.    **COMMON UNITS**

    1.    <u>General</u>.

      1.1    <u>Authorized/Issued Units</u>.  The number of authorized Common Units shall consist of 100 Common Units, all of which shall be issued to Highland Capital Management, L.P.

    2.    <u>Voting Rights</u>.  Each holder of shares of Common Units shall not be entitled to vote.

    3.    <u>No Other Rights</u>.  No other rights shall be vested in the holders of the Common Units except as expressly provided in the Agreement.

II.    **SERIES A PREFERRED UNITS**

    1.    <u>General</u>.

      1.1    <u>Authorized/Issued Units</u>.  The Company shall issue (or reissue, in the case of forfeited units) Series A Preferred Units to such persons and in such amounts designated by the Manager.  No holder of any Class A Preferred Units of the Company shall have any preemptive right to purchase units sold or issued by the Company except to the extent that such a right may from time to time be set forth in a written agreement between the Company and a unitholder.

      1.2    <u>Transfer</u>.  No Restricted Series A Preferred Units nor any interest therein, may be sold, assigned, transferred, pledged, hypothecated or otherwise disposed of, except by will or the laws of descent and distribution, without the express written consent of the Manager, which may be withheld in its sole discretion. Any attempt to dispose of any Restricted Series A Preferred Units in contravention of the above restriction shall be null and void and without effect.

    2.    <u>Voting Rights</u>.  No holder of shares of Series A Preferred Units shall be entitled to vote.

    3.    <u>No Right to Continued Employment</u>.  Nothing in this Agreement shall confer upon any holder of Series A Preferred Units any right to continue in the employ of the Member nor of any affiliate thereof, or shall interfere with or restrict in any way the right of the Member or any such affiliate, which is hereby expressly reserved, to remove, terminate or discharge the holder at any time for any reason whatsoever, with or without cause and with or without advance notice.

Draft: 1/23/2013

# EXPENSE ALLOCATION AGREEMENT

This EXPENSE ALLOCATION AGREEMENT is made this ___ day of January, 2013, by and between Highland Capital Management, L.P. ("*HCMLP*"), and Highland Employee Retention Assets LLC ("*HERA*").

## RECITALS

A.    WHEREAS, HCMLP and HERA are parties to [LIST Daugherty litigation] (the "*Daugherty Litigation*") in connection with which Patrick Daugherty has made a number a claims against HCMLP and HERA, among others (the "*Daugherty Claims*");

B.    WHEREAS, the Parties acknowledge that the Daugherty Claims are largely claims with respect to compensation Daugherty alleges he is owed;

C.    WHEREAS, [90%] of all Daugherty's Claims for compensation relate to HERA, while only [10%] relate to HCMLP, in each case prior to appropriate offsets and deductions for damages incurred by such parties as a result of the Daugherty Claims;

D.    WHEREAS, a substantial majority of all motions to date related to [HERA] [DESCRIBE IN MORE DETAIL];

E.    WHEREAS, Messrs. Boyce and Britain are parties to the Daugherty Litigation solely in their capacities as Directors of HERA and not as employees, officers, or representatives of HCMLP;

F.    WHEREAS, notwithstanding the recitals above, to date HCMLP has borne a disproportionate share of the costs and expenses related to the Daugherty Litigation, and therefore the parties hereto believe that all past, current and future costs and expenses related to the Daugherty Litigation should be allocated in a manner that more appropriately reflects the relevant party with respect to such costs and expenses; and

G.    WHEREAS, HCMLP and HERA believe that the below expense allocation agreement is fair, equitable and reasonable.

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## AGREEMENT

1.    HCMLP represents that it has incurred at least $[_____] of direct legal expenses to date in respect of the Daugherty Litigation and is likely to continue to incur substantial damages, costs and expenses related to the Daugherty Litigation going forward.

2.      HERA represents that it has incurred at least $[_____] of direct legal expenses to date in respect of the Daugherty Litigation and is likely to continue to incur substantial damages, costs and expenses related to the Daugherty Litigation going forward.

3.      In light of the recitals set forth above, the parties agree to reallocate all past and present costs and expenses related to the Daugherty Litigation such that the aggregate such costs and expenses be borne [10%] by HCMLP and [90%] by HERA.  In light of the foregoing reallocation, HERA shall immediately pay to HCMLP the amount of $_____ to property effect such pro rata allocation.

4.      The parties agree to allocate all future costs and expenses in a manner consistent with the foregoing allocation.

5.      The parties acknowledge and agree that the reallocation and allocations provided for above herein are fair, equitable and reasonable.

6.      This Agreement shall be governed by the laws of the State of Texas, without regard to the conflict of laws principles thereof.

7.      This Agreement may be executed in one or more counterparts.


*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]*

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

HIGHLAND CAPITAL MANAGEMENT, L.P.
By: Stand Advisors, Inc., its general partner

By:_____
    Name:_____
    Title:_____


HIGHLAND EMPLOYEE RETENTION ASSETS LLC

By:_____
    Name:_____
    Title:_____

# WRITTEN CONSENT
## OF MANAGER
### OF
## HIGHLAND EMPLOYEE RETENTION ASSETS LLC

Effective as of January __, 2013

THE UNDERSIGNED being the sole Manager (the "*Manager*") of Highland Employee Retention Assets LLC, a Delaware limited liability company (the "*Company*"), acting pursuant to the Delaware Limited Liability Company Act and the Third Amended and Restated Limited Liability Company Agreement of the Company dated January __, 2013, as amended (the "*Company Agreement*"), does hereby adopt the following resolutions by written consent:

WHEREAS, to date the Company has incurred at least $[300,000] of direct legal expenses in connection with claims made by Patrick Daugherty ("*Daugherty*") against the Company (the "*Initial Daugherty Expenses*");

WHEREAS, pursuant to that certain Expense Allocation Agreement of even date herewith, the Company is responsible for bearing at least an additional $[_____] of costs and expenses in connection with claims made by Daugherty that involve the Company and members of its former Board of Directors (the "*Allocated Expenses*");

WHEREAS, the Company is likely to bear significant additional costs and expenses in connection with Daugherty's outstanding claims against or that relate to the Company (the "*Future Expenses*");

NOW, THEREFORE, BE IT

RESOLVED, in accordance with Section 11.1 of the Company Agreement, as amended, the Manager hereby allocates the full amount of the Initial Daugherty Expenses and the Allocated Expenses, together with any and all Future Expenses, as a 100% offset against any and all amounts that would otherwise be payable or distributable under the Agreement in respect of the Series A Preferred Units held by Daugherty, or otherwise.

FURTHER RESOLVED, that the Manager be, and hereby is, authorized, empowered and directed for, in the Company's name and behalf, to do and perform all acts and deeds, to execute and deliver all documents, instruments and other agreements, to waive any and all conditions and do all things necessary or helpful to carry out and comply with the terms and provisions of the foregoing resolutions; and that all acts and deeds of the Manager and agents on behalf of the Company prior to the date hereof shall be, and they hereby are, in all respects, ratified, approved, confirmed and adopted as the Company's acts and deeds.

*[Signature Page to Follow]*

IN WITNESS WHEREOF, the undersigned Manager of the Company has executed this Consent to be effective as of the date first set forth above.

**<u>MANAGER</u>:**

HERA MANAGEMENT, LLC

By:_____
Name:_____
Title:_____

| | |
|---|---|
| **From:** | Tyler, Annette |
| **Sent:** | Monday, February 4, 2013 9:31 PM |
| **To:** | 'Thomas Surgent' |
| **Cc:** | Ted Dameris |
| **Subject:** | HERA |
| **Attachments:** | 2-4-13 HERA letter and invoices.pdf |

Please see attached.


Annette B. Tyler
Assistant to Kevin G. Abrams
Abrams & Bayliss LLP
(302) 778-1012

Exhibit D-3   Page 19 of 22

# ABRAMS & BAYLISS LLP

20 MONTCHANIN ROAD, SUITE 200
WILMINGTON, DE  19807
MAIN:  302-778-1000
FAX:  302-778-1001

KEVIN G. ABRAMS

DIRECT DIAL NUMBER
302-778-1002
ABRAMS@ABRAMSBAYLISS.COM

February 4, 2013

Highland Employee Retention Assets, LLC
c/o Thomas J. Surgent, Esq.
Highland Capital Management, L.P.
300 Crescent Court - Suite 700
Dallas, Texas  75201

Re:      HERA—Daugherty Litigation

Dear Tom:

      This letter constitutes a reminder regarding our unpaid invoices for services rendered to Highland Employee Retention Assets, LLC in connection with the Daugherty Litigation and related matters.

      I have enclosed copies of Invoice No. 11050 dated January 9, 2013 in the amount of $8,167.98 and Invoice No. 11092 dated January 11, 2013 in the amount of $100,000.00.  Per your request, the foregoing invoices were submitted to a "legal-invoices" email address at Highland on January 9 and January 11; however, payment has not been received.  If you find our enclosed bills to be in order, we would appreciate anything you can do to ensure that we receive prompt payment.

      As always, we appreciate the opportunity to represent Highland Capital Management and we hope that you will not hesitate to give us a call in the event we can provide any additional assistance.

Sincerely yours,

*/s/ Kevin G. Abrams*

Kevin G. Abrams

KGA/abt
Enclosures
cc:      Ted Dameris (by email with enclosures)

{A&B-00238722-}

20 MONTCHANIN ROAD
SUITE 200
WILMINGTON, DE 19807
302-778-1000

TAX ID NO. 56-2528254

HIGHLAND EMPLOYEE RETENTION ASSETS
c/o Highland Capital Mgmt, L.P.
300 Crescent Court - Suite 700
Dallas, TX  75201

| | |
|---|---|
| Invoice Date: | January 11, 2013 |
| Invoice No. | 11092 |
| Account No. | 729.00 |
| Page: | 1 |

Attn:   Thomas Surgent, Esq.

Re:  Daugherty Litigation

Activities

| | | | Hours |
|---|---|---|---|
| | | | |
| 01/11/2013 | KGA | RETAINER REQUEST | 100,000.00 |
| | | For Current Services Rendered | 100,000.00 |
| | | Total Current Work | 100,000.00 |
| | | **TOTAL AMOUNT DUE:** | $100,000.00 |

WIRING INSTRUCTIONS:

ABRAMS & BAYLISS LLP OPERATING ACCOUNT
Account No. 2910 3917

M&T Bank
ABA No. 031100092

20 MONTCHANIN ROAD
SUITE 200
WILMINGTON, DE 19807
302-778-1000

TAX ID NO. 56-2528254

| | | |
|---|---|---|
| HIGHLAND EMPLOYEE RETENTION ASSETS | Invoice Date: | January 9, 2013 |
| c/o Highland Capital Mgmt, L.P. | Invoice No. | 11050 |
| 300 Crescent Court - Suite 700 | Account No. | 729.00 |
| Dallas, TX 75201 | Page: | 1 |

Attn: Thomas Surgent, Esq.

Re: Daugherty Litigation

### Activities

| | | | Hours | |
|---|---|---|---|---|
| 12/06/2012 | KGA | Messages with board members | 0.10 | 79.50 |
| | SCH | Emails re disqualification and settlement | 0.20 | 89.00 |
| 12/07/2012 | SCH | Emails re settlement | 0.10 | 44.50 |
| | KGA | Messages with clients re settlement negotiations | 0.10 | 79.50 |
| 12/09/2012 | SCH | Emails re board meetings and settlement | 0.20 | 89.00 |
| 12/10/2012 | SCH | Emails re settlement proposals; review order re motions to disqualify | 0.20 | 89.00 |
| | KGA | Messages with directors re settlement issues | 0.10 | 79.50 |
| 12/12/2012 | SCH | Email re settlement proposals | 0.10 | 44.50 |
| | KGA | Review settlement term sheet | 0.10 | 79.50 |
| 12/22/2012 | SCH | Emails re HERA LLC agreement | 0.20 | 89.00 |
| | KGA | Review client questions re board voting procedures and Dondero buyout offer; review HERA operating agreement; prepare talking points re responses to client questions | 1.00 | 795.00 |
| 12/23/2012 | SCH | Review LLC agreement; conference call with HERA directors re LLC agreement; draft memo re LLC agreement and Dondero proposal | 1.70 | 756.50 |
| | KGA | Review and analyze client questions re board procedures and Dondero buyout offer; review HERA operating agreement; prepare advice to directors re board procedures and Dondero offer; teleconference with directors | 1.50 | 1,192.50 |
| 12/24/2012 | KGA | Review LLC operating agreement and analyze client questions re Dondero buyout offer; revise advice memo to clients re board reconstitution and Dondero buyout | 0.70 | 556.50 |
| | SCH | Analyze indemnification issues and LLC agreement; draft memo re LLC agreement amendments | 2.10 | 934.50 |
| 12/25/2012 | SCH | Emails re HERA LLC agreement and Dondero buyout | 0.10 | 44.50 |

HIGHLAND EMPLOYEE RETENTION ASSETS

Re: Daugherty Litigation

| | | | | Invoice Date: | January 9, 2013 |
| | | | | Invoice No. | 11050 |
| | | | | Account No. | 729.00 |
| | | | | Page: | 2 |

| | | | Hours | |
|---|---|---|---|---|
| 12/26/2012 | KGA | Analyze client questions re Dondero taking board control; review LLC agreement; revise advice messages to client; follow up messages with Dameris re Dondero buyout proposal | 0.60 | 477.00 |
| | SCH | Analyze potential amendments to HERA LLC agreement; emails re HERA LLC agreement; legal research re indemnification and amendments to LLC agreements; draft message to Dameris re electing and replacing directors, amendment to LLC agreements and indemnification; draft messages to Dameris re HERA LLC agreement amendments | 2.70 | 1,201.50 |
| 12/29/2012 | SCH | Legal research re indemnification; draft message to Dameris re HERA LLC agreement and Dondero buyout proposal | 2.10 | 934.50 |
| 12/30/2012 | KGA | Revise advice memo to Dameris re director indemnification issues | 0.20 | 159.00 |
| | SCH | Draft memo re HERA LLC agreement amendments; emails re HERA LLC agreement amendments | 0.60 | 267.00 |
| | | For Current Services Rendered | 14.70 | 8,081.50 |

## Expenses

| | |
|---|---|
| Photocopying | 7.50 |
| Total Expenses | 7.50 |

## Advances

| | |
|---|---|
| Online Legal Research | 78.98 |
| Total Advances | 78.98 |
| Total Current Work | 8,167.98 |

**TOTAL AMOUNT DUE:** $8,167.98

## WIRING INSTRUCTIONS:

ABRAMS & BAYLISS LLP OPERATING ACCOUNT
Account No. 2910 3917

M&T Bank
ABA No. 031100092