Jason S. Brookner (Texas Bar No. 24033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
J. Reid Burley (Texas Bar No. 24109675)
Drake M. Rayshell (Texas Bar No. 24118507)
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email:     jbrookner@grayreed.com
           dyork@grayreed.com
           jsmeltzer@grayreed.com
           rburley@grayreed.com
           drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | § § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Adversary No. 25-03055 |
| PATRICK HAGAMAN DAUGHERTY, | § § § | |
| Defendant. | § § § | |

---

[1]      Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

4904-3559-7935.1



**PATRICK DAUGHERTY'S ANSWER TO PLAINTIFF
HIGHLAND CAPITAL MANAGEMENT, L.P.'S COMPLAINT
FOR (1) DISALLOWANCE OF CLAIM NO. 205 IN ITS ENTIRETY,
(2) ESTIMATION OF CLAIM NO. 205 FOR ALLOWANCE PURPOSES, OR (3)
SUBORDINATION OF ANY ALLOWED PORTION OF CLAIM NO. 205 OF PATRICK
HAGAMAN DAUGHERTY [DOC. NO. 1] AND ORIGINAL COUNTERCLAIM[2]**

Defendant Patrick Daugherty files this Answer to Plaintiff Highland Capital Management,
L.P.'s Complaint for (1) Disallowance of Claim No. 205 in its Entirety, (2) Estimation of Claim
No. 205 for Allowance Purposes, or (3) Subordination of Any Allowed Portion of Claim No. 205
of Patrick Hagaman Daugherty [Doc. No. 1] and Original Counterclaim and would respectfully
show the Court as follows:

## I.     ANSWER TO PRELIMINARY STATEMENT

1.     Daugherty admits that he is a former employee of, and former limited partner as a
profits interest holder in, Highland. Daugherty admits that he asserted a creditor's claim (Claim
No. 205) against Highland and that he and Highland entered into a binding settlement agreement.
Daugherty denies the remaining allegations in Paragraph 1.

2.     Daugherty denies the allegations in Paragraph 2 based on Highland's
characterization of the funds Daugherty received from Highland and the effect of those funds on
his claims.

3.     Daugherty denies the allegations in Paragraph 3.

---

[2]     Daugherty files this Answer and Counterclaim without waiving the rights and arguments he asserts in his
September 26, 2025 Motion to Stay Pending Appeal [Doc. No. 33] currently pending before the Court, as well as his
Motion to Dismiss [Doc. No. 5] which the Court denied on September 5, 2025 [Doc. No. 23].

4904-3559-7935.1

4.     Daugherty admits that his remaining claim against Highland depends, at least in part, on the result of the IRS' "final determination" of Highland's 2008 tax return. Daugherty denies the remaining allegations in Paragraph 4.

## II.     ANSWER TO JURISDICTION AND VENUE

5.     Daugherty admits the allegations in Paragraph 5.

6.     Daugherty admits the allegations in Paragraph 6.

7.     Daugherty admits the allegations in Paragraph 7.

8.     Daugherty admits the allegations in Paragraph 8.

## III.     ANSWER TO PARTIES

9.     Daugherty admits the allegations in Paragraph 9.

10.     Daugherty admits the allegations in Paragraph 10.

## IV.     ANSWER TO STATEMENT OF FACTS

11.     Daugherty admits the allegations in Paragraph 11.

12.     Daugherty admits the allegations in Paragraph 12.

13.     Daugherty admits the allegations in Paragraph 13.

14.     Daugherty admits the allegations in Paragraph 14.

15.     Daugherty admits the allegations in Paragraph 15.

16.     Daugherty admits that he was hired by Highland in 1998 and that he later became eligible to participate in various Highland incentive plans including Highland's long-term incentive plan.  Daugherty denies the remaining allegations in Paragraph 16.

17.     Daugherty admits the Highland was a limited partnership and a pass-through entity as alleged in Paragraph 17 but denies any actual or implied characterization that Daugherty's 2008

-3-

pre-tax refund was based on taxable losses or that he or any partner other that Dondero, Okada, and their affiliates were ever allowed to participate in pass-through distributions from Highland.

18.     Daugherty admits that Highland provided him with the Comprehensive Compensation and Benefits Statement, but Daugherty denies the allegation that such statement was entirely accurate and reserves the right to dispute same.

19.     Daugherty admits that the Comprehensive Compensation and Benefits Statement included a characterized estimated tax refund, but Daugherty denies the allegation that such statement was entirely accurate and reserves the right to dispute the same.  Daugherty otherwise denies any remaining allegations in Paragraph 19.

20.     In response to the allegations in Paragraph 20, Daugherty admits that Highland provided him with the Comprehensive Compensation and Benefits Statement, but Daugherty denies the allegation that such statement was entirely accurate and reserves the right to dispute same.

21.     Daugherty denies the characterization of the allegations in Paragraph 21 to the extent that the quotes cited therein refer to non-binding statements or assertions made by or to Daugherty.

22.     Daugherty admits that the allegations in Paragraph 22 reflect some of what was included on the 2008 K-1, but Daugherty denies the reference to him receiving what "he was promised . . . if not more" to the extent it refers to something that alters the relevant, binding contractual language.

23.     Daugherty admits that the IRS began an audit of Highland's 2008 tax return but denies that all "obligations" to Daugherty have been satisfied.  To the best of Daugherty's belief, the IRS audit is not yet fully resolved.

24.     Daugherty admits that he terminated his employment with Highland on October 31, 2011, because of improprieties regarding treatment of investor accounts, among other things, but Daugherty denies the allegations to the extent Highland interprets them to constitute a waiver on Daugherty's behalf.

25.     Daugherty admits that Claim No. 205 originally estimated Highland was liable to him for $2,650,353 among other costs.  Daugherty otherwise denies the allegations in Paragraph 25.

26.     Daugherty denies the allegations in Paragraph 26.

27.     Daugherty denies the allegations in Paragraph 27.

## V.      ANSWER TO CLAIMS FOR RELIEF

28.     Daugherty denies the allegations in Paragraph 28 to the extent they seek to present prior opinions and legal conclusions as statements of verifiable fact.

29.     Paragraph 29 contains statements that are legal conclusions for which no response is required.  To the extent a response is required Daugherty denies the allegations.

30.     Paragraph 30 contains statements that are legal conclusions for which no response is required.  To the extent a response is required Daugherty denies the allegations.

31.     Daugherty admits that he earned bonus compensation from Highland in 2008 that was allocatable to him pursuant to Highland's decision to fund the bonus with the tax refund scheme, but Daugherty denies Highland's characterization of same in the allegations in Paragraph 31.

32.     Daugherty denies the allegations in Paragraph 32.

33.     Daugherty denies the allegations in Paragraph 33.

34.     Daugherty denies the allegations in Paragraph 34 to the extent they seek to present prior opinions and legal conclusions as statements of verifiable fact.

35.     Daugherty denies the allegations in Paragraph 35.

36.     Paragraph 36 contains statements that are legal conclusions for which no response is required.  To the extent a response is required Daugherty denies the allegations and further denies the statute governs given the express language of the settlement agreement between Daugherty and Highland.

37.     Daugherty admits the allegations in the first sentence of Paragraph 37.  Daugherty lacks information to admit or deny the second sentence of Paragraph 37 and therefore denies it.

38.     Daugherty admits the allegations in Paragraph 38.

39.     Daugherty denies the allegations (and requests for relief) in Paragraph 39.

40.     Daugherty denies the allegations in Paragraph 40 to the extent they seek to present prior opinions and legal conclusions as statements of verifiable fact.

41.     Paragraph 41 contains legal conclusions for which a response is not required.  To the extent a response is required Daugherty denies the allegations.

42.     Paragraph 42 contains legal conclusions for which a response is not required.  To the extent a response is required, Daugherty denies the allegations.

43.     Daugherty admits he owned the Partnership Interests in the form of a profits interest in Highland but denies the remaining allegations in Paragraph 43.

44.     Daugherty denies the allegations in Paragraph 44.

45.     Daugherty denies the allegations (and request for relief) in Paragraph 45.

## VI.     PRAYER

Daugherty denies that Highland is entitled to any of the relief requested in its Complaint, or to any relief whatsoever, and requests that Highland's claims be dismissed with prejudice. Daugherty further requests that the Court award it costs and any other relief the Court deems proper.

## VII.     AFFIRMATIVE DEFENSES

1.      Further answering Highland's claims, Daugherty asserts the following defenses without assuming any burden that he would not otherwise have, including without admitting or acknowledging that he bears the burden of proof as to any of the defenses denoted herein.

**Prior Material Breach**

2.      Highland's claims are barred in whole or in part by its prior material breach of the governing employment agreement as well as the settlement agreement previously approved by this Court.

**Failure to State a Claim**

3.      Highland's claims are barred in whole or in part by their failure to state a claim upon which relief can be granted.

**Equitable Estoppel**

4.      Highland's claims are barred in whole or in part by the doctrine of equitable estoppel. Highland and Daugherty entered into a binding settlement agreement wherein Daugherty gave up various rights and claims in exchange for a bargained-for agreement that Highland would not commence litigation under the IRS has concluded audit of Highland's 2008 tax return. Highland's decision to seek judicial modification of a binding contract prevents it from having the

equitable right to relief. Highland should be estopped from bringing the immediate litigation against Daugherty.

**Failure of Consideration**

5.      Highland's claims fail because they are based upon a settlement agreement that was modified without consideration. Daugherty and Highland engaged in robust and detailed negotiations that ultimately culminated in the binding settlement agreement between the parties. Highland's decision to seek judicial modification of the settlement agreement—without providing substitute consideration to Daugherty—renders the Settlement Agreement unenforceable due to failure of consideration.

**COUNTERCLAIM AGAINST PLAINTIFF/COUNTER DEFENDANT
HIGHLAND CAPITAL MANAGEMENT, L.P.**

Defendant/Counter-Plaintiff Patrick Hagaman Daugherty files this Original Counterclaim Against Plaintiff/Counter-Defendant Highland Capital Management, L.P. and would show the Court as follows:

**PRELIMINARY STATEMENT**

1.      On November 22, 2021, Daugherty and Highland signed a Settlement Agreement wherein Daugherty acquired the "interests in HERA and ERA." The Settlement Agreement also mandated that Highland transfer the books and records of HERA (Highland Employee Retention Assets LLC) and ERA (Highland ERA Management LLC) that are "maintained on HCMLP's system." Despite demand, however, Highland refused and failed to turn over all books and records in its possession related to HERA and ERA – entities that Daugherty and his affiliates now own in their entirety. Highland's failure in this regard is a breach of the Settlement Agreement.

2.      Daugherty's demand is even more urgent given Highland's latest filing in the main bankruptcy through which Highland seeks to destroy a significant amount of the records in its possession (under the guise of saving $7,500/month). As the Court is aware, there is extensive litigation between HERA and Dondero and his enablers in other forums. Daugherty bargained for and obtained the interests in HERA and acquired the rights to the HERA books and records in Highland's possession. HERA needs those books and records to continue litigating its claims against James Dondero and other former Highland employees and representatives. The Court should enforce the Settlement Agreement as written and require Highland to turn over to Daugherty what is rightfully his.

## JURISDICTION AND VENUE

3.      Jurisdiction and venue are proper in this Court for the reasons alleged and authorities cited in Highland's Complaint [Doc. No. 1] and pursuant to Federal Rule of Civil Procedure 13, as incorporated by Federal Rule of Bankruptcy Procedure 7013.

## PARTIES

4.      Defendant/Counter-Plaintiff Patrick Hagaman Daugherty is an individual residing in the State of Texas.

5.      Plaintiff/Counter-Defendant Highland Capital Management, L.P. is a Delaware limited partnership with its principal place of business located at 100 Crescent Court, Suite 1850, Dallas, Texas 75201. Highland has appeared in this adversary proceeding through its attorneys of record.

## FACTUAL BACKGROUND

6.      Daugherty and Highland executed a Settlement Agreement on November 22, 2021, that provided clarity for both parties as the main bankruptcy case proceeded towards confirmation.

Main Case Docket No. 3088, 3089.[3] The Court approved the Settlement Agreement on March 8, 2022. *Id*.

7.      Through the Settlement Agreement, Highland agreed to transfer to Daugherty Highland's interests in Highland Employee Retention Assets LLC ("HERA") and ERA Management, LLC ("ERA"). Specifically, the Settlement Agreement provided that, "[Highland] will transfer its interests in HERA and ERA to Daugherty. Such transfer will include the HERA and ERA books and records (spreadsheet) maintained on [Highland's] system." *Id*.

8.      The Settlement Agreement was not permissive or discretionary in this regard. The Settlement Agreement required that Highland "will" do these things. Since March 2022, however, Daugherty has made several requests to Highland that it comply with the Settlement Agreement by turning over all of the HERA and ERA books and records. To date, Highland has not complied – and in fact has refused to do so. Daugherty, therefore, brings this counterclaim against Highland.

## CAUSES OF ACTION

### Count I – Breach of Contract

9.      Daugherty incorporates by reference the above paragraphs.

10.      On November 22, 2021, after extensive negotiations, Daugherty and Highland executed a binding contract – the Settlement Agreement. The Court approved the Settlement Agreement on March 8, 2022.

11.      Daugherty performed and satisfied all obligations that the Settlement Agreement imposed upon him.

---

[3]    All capitalized terms used but not defined in this motion shall have the same definitions as they have in the Settlement Agreement at Main Case Doc. No. 3089. The Settlement Agreement is also attached as Exhibit A.

12.     Highland breached the Settlement Agreement by refusing to turn over all the HERA and ERA books and records in Highland's possession. Settlement Agreement at ¶ 8 (Highland agreed to turn over to Daugherty all "interests in HERA and ERA to Daugherty…Such transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system.").

13.     HERA is currently engaged in litigation with Dondero and others in the case styled *Highland Employee Retention Assets LLC v. James Donero, et al.*, Civil Action No. 3:24-cv-00498-K, pending in the United States District Court for the Northern District of Texas. That litigation centers on Dondero's mismanagement of the monetary contributions that numerous Highland employees made into retirement vehicles managed by HERA. But because of Dondero's and others' underhanded efforts to fraudulently transfer assets to benefit themselves and others, those contributions were funneled out of HERA and into various entities and accounts controlled by Dondero, Okada, Ellington and their affiliates.

14.     Daugherty bargained for and obtained Highland's interests in HERA as well as Highland's books and records related to HERA. There is no question that Highland breached the Settlement Agreement by refusing to turn over all of those books and records. And as evidenced by Highland's Motion for Order Authorizing Destruction of Documents filed in the main bankruptcy, Highland clearly has no intention of honoring its commitment to turn over documents. *See* Main Bankruptcy Doc. No. 4416. In fact, Highland wants to destroy the very records it contractually promised to turn over to Daugherty.

15.     Daugherty asks this Court to find that Highland breached the Settlement Agreement.

## Count II – Specific Performance

16.     Daugherty incorporates by reference the above paragraphs.

17.     The Settlement Agreement is a binding contract that Daugherty has not repudiated or breached.

18.     Daugherty performed and satisfied all obligations that the Settlement Agreement imposed upon him.

19.     Highland breached the Settlement Agreement by refusing to turn over all the HERA and ERA books and records in Highland's possession. Settlement Agreement at ¶ 8 (Highland agreed to turn over to Daugherty all "interests in HERA and ERA to Daugherty…Such transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system.").

20.     At all relevant times, Daugherty has been ready, willing, and able to work with Highland to effectuate the transfer of the HERA and ERA books and records.

21.     Because of Highland's unique position as the sole custodian of the HERA and ERA books and records that Highland agreed to turn over to Daugherty, the circumstances are such that Daugherty cannot recover absent the Court ordering specific performance. The Court's specific performance order against Highland would be the just result, as the balance of equities tips in favor of Daugherty. *See generally Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

22.     If the Court does not order Highland to comply with the terms of the Settlement Agreement and turn over the relevant books and records, Daugherty will be irreparably harmed. HERA will be unable to adequately pursue its litigation against Dondero, Okada, Ellington and the others.

4904-3559-7935.1

### Count III – Attorneys' Fees

23.     Daugherty incorporates by reference the above paragraphs.

24.     As a result of Highland's bad faith conduct and breach of the Settlement
Agreement, Daugherty has been forced to retain the services of the undersigned counsel to pursue
his claims in this case. Because Delaware law governs the Settlement Agreement, Daugherty asks
the Court to award him his reasonable and necessary attorneys' fees due to Highland's bad faith
conduct. *See generally Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164 (Del. 1989); *see
also Slawik v. State*, 480 A.2d 636, 639 n. 5 (Del. 1984). The requirements of the Settlement
Agreement are clear – Highland "will" turn over the HERA and ERA books and records to
Daugherty. In bad faith, Highland has refused to do so, and the Court should award Daugherty his
attorneys' fees accordingly.

### CONCLUSION AND PRAYER

Defendant Patrick Hagaman Daugherty prays that the Court render final judgment that
Highland takes nothing by its suit and award Daugherty a judgment against Highland for:

a.     Specific performance against Highland that it be required to turn over the books
and records in its possession related to HERA and ERA;

b.     Daugherty's actual and compensable damages, if any;

c.     Daugherty's reasonable and necessary attorneys' fees;

d.     All costs of court;

e.     Post-judgment interest accruing on the foregoing amounts at the maximum rate
allowed by law; and

f.     Any such further relief, both general and specific, legal or equitable, to which
Daugherty may be justly entitled.

4904-3559-7935.1

Dated: October 3, 2025.

Respectfully submitted,

GRAY REED

By: _/s/ Andrew K. York_____
      Jason S. Brookner
      Texas Bar No. 24033684
      Andrew K. York
      Texas Bar No. 24051554
      Joshua D. Smeltzer
      Texas Bar No. 24113859
      J. Reid Burley
      Texas Bar No. 24109675
      Drake M. Rayshell
      Texas Bar No. 24118507

      1601 Elm Street, Suite 4600
      Dallas, Texas 75201
      Telephone:   (214) 954-4135
      Facsimile:   (214) 953-1332
      Email:       jbrookner@grayreed.com
                 dyork@grayreed.com
                 jsmeltzer@grayreed.com
                 rburley@grayreed.com
                 drayshell@grayreed.com

      _Counsel to Patrick Daugherty_

## CERTIFICATE OF SERVICE

     I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this 3rd day of October 2025, via the CM/ECF system and/or email.

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
jpomerantz@pszjlaw.com
John A. Morris
jmorris@pszjlaw.com
Gregory V. Demo
gdemo@pszjlaw.com
Hayley R. Winograd
hwinograd@pszjlaw.com

HAYWARD PLLC
Melissa S. Hayward
MHayward@HaywardFirm.com
Zachery Z. Annable
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Suite 106
Dallas, Texas 75231
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

*Counsel for Highland Capital Management, L.P.*

                  */s/ Andrew K. York*
                  ANDREW K. YORK

4904-3559-7935.1

# EXHIBIT A

Final Execution Copy

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement") is made and entered into by and between (i) Highland Capital Management, L.P., as reorganized debtor ("HCMLP" or the "Debtor"), and (ii) Patrick Hagaman Daugherty ("Daugherty" and together with HCMLP, the "Parties," and individually as a "Party"). This Settlement provides for the treatment of certain claims asserted by Daugherty against the Debtor, and for the Parties to take certain other specified actions in settlement thereof.

## RECITALS

WHEREAS, on October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Debtor's chapter 11 case (the "Bankruptcy") is pending in the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court");

WHEREAS, on February 2 and 3, 2021, the Court conducted a confirmation hearing with respect to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) [Docket No. 1808] (the "Plan");

WHEREAS, on February 8, 2021, the Court rendered an opinion from the bench in which it confirmed the Plan [Docket No. 1924];

WHEREAS, on February 22, 2021, the Court issued an order confirming the Plan [Docket No. 1943];

WHEREAS, on August 11, 2021, the Effective Date (as defined in the Plan) occurred [Docket No. 2700];

WHEREAS, Daugherty is a former employee and limited partner of the Debtor and has

served in other positions with affiliates and former affiliates of the Debtor;

WHEREAS, at the time of his resignation, Daugherty owned 19.1% of the preferred units of Highland Employee Retention Assets LLC ("HERA"), an employee deferred compensation vehicle managed by the Debtor and Highland ERA Management, LLC ("ERA") and contends that he owned or had the right to own all of the preferred units of HERA;

WHEREAS, prior to his resignation from HCMLP, Daugherty was awarded units of HERA, which vehicle owned interests in Restoration Capital Partners, LP ("RCP"), an HCMLP managed private equity fund, and other investments;

WHEREAS, in April 2012, the Debtor commenced an action against Daugherty in Texas state court (the "Texas Action"), and Daugherty subsequently asserted counterclaims for breach of contract and defamation, and third-party claims against HERA and others;

WHEREAS, after a three-week trial, the jury returned a verdict partially in favor of the Debtor, but Daugherty prevailed on his claims against the Debtor and James Dondero ("Dondero") for defamation with malice and a third-party claim against HERA and was awarded damages of $2.6 million against HERA, plus prejudgment and post-judgment interest at 5% (the "HERA Judgment");[1]

WHEREAS, in July 2017, after being unable to collect on the HERA Judgment, Daugherty commenced an action against the Debtor, Dondero, HERA, and ERA Management in the Delaware Chancery Court (the "Delaware Court"), in a case captioned *Daugherty v. Highland Capital Management, L.P., et al.*, C.A. No. 2017-0488-MTZ, for fraudulent transfer, promissory estoppel, unjust enrichment, indemnification, and fees on fees (the "Highland Delaware Case");

---

[1] The Debtor prevailed on its claims against Mr. Daugherty for breach of contract and breach of fiduciary duty for non-monetary damages and obtained an award of $2.8 million in attorney's fees. The HERA Judgment was affirmed on appeal on December 1, 2016.

WHEREAS, the Delaware Court in the Highland Delaware Case (i) found that the Dondero-related defendants improperly withheld dozens of documents in discovery on privilege grounds, and (ii) ruled that there was "a reasonable basis to believe that a fraud has been perpetrated" such that the Delaware Court applied the "crime-fraud exception" to the attorney-client privilege assertion, and such rulings have not been overturned;

WHEREAS, Daugherty asserts that such withholding of documents and the failure to search defendants' and their employees personal electronic devices for stored documents and texts as well as other emails and domain names such as sasmgt.com and gmail.com which were in their possession and control and to provide required discovery injured him by undermining his attempts to build an evidentiary record to support his claims against the Debtor and the other defendants in the Highland Delaware Case;

WHEREAS, on October 14, 2019, the Highland Delaware Case proceeded to trial and two days later, on October 16, 2019, before the completion of the trial and before the Delaware Court ruled on Daugherty's and the Debtor's cross-motions for summary judgment regarding indemnification and fees on fees, the Debtor filed for bankruptcy;

WHEREAS, on December 1, 2019, Daugherty filed a separate lawsuit in the Delaware Court, captioned *Daugherty v. Dondero, et al.*, C.A. No. 2019-0956-MTZ, against Dondero, HERA, ERA, Hunton Andrews Kurth LLP ("Andrews Kurth"), Marc Katz ("Katz"), Michael Hurst ("Hurst"), the Debtor's Chief Compliance Officer, the Debtor's then in-house counsel (Isaac Leventon ("Leventon")), and the Debtor's then general counsel (Scott Ellington ("Ellington")), for conspiracy to commit fraud, among other claims (the "HERA Delaware Case" and together with the Highland Delaware Case, the "Delaware Cases");

WHEREAS, on April 1, 2020, Daugherty filed a general, unsecured, non-priority claim

3

against the Debtor in the amount of at "least $37,483,876.59," and such claim was denoted by the Debtor's claims agent as Proof of Claim No. 67 ("Proof of Claim No. 67");

WHEREAS, on April 6, 2020, Daugherty filed a general, unsecured, non-priority claim against the Debtor in the amount of at "least $37,482,876.62" that superseded Proof of Claim No. 67 and that was denoted by the Debtor's claims agent as Proof of Claim No. 77 ("Proof of Claim No. 77");

WHEREAS, on August 31, 2020, the Debtor commenced an adversary proceeding against Daugherty by filing a complaint (the "Complaint") in which the Debtor: (1) objected to Proof of Claim No. 77 on various grounds (the "Claim Objection"), and (2) asserted a cause of action for the subordination of part of Daugherty's claim pursuant to section 510(b) of the Bankruptcy Code. Adv. Proc. No. 20-03107 (the "Adv. Proc.") [Adv. Docket No. 1] (the "Adversary Proceeding");

WHEREAS, on September 29, 2020, Daugherty filed his answer to the Complaint [Adv. Docket No. 8] (the "Answer");

WHEREAS, on September 24, 2020, Daugherty filed his *Motion to Confirm Status of Automatic Stay, or Alternatively to Modify Automatic Stay* [Docket No. 1099] (the "Stay Motion") pursuant to which he sought to sever the Debtor from the Highland Delaware Case and then consolidate the remaining claims in the Highland Delaware Case into the HERA Delaware Case and proceed with one case against the non-Debtor parties;[2]

WHEREAS, on October 23, 2020, Daugherty filed a motion seeking leave to amend his Proof of Claim No. 77 [Docket No. 1280] (the "POC Amendment Motion"). The amended proof

---

[2] On October 8, 2020, the Debtor commenced a second adversary proceeding against Daugherty (the "Second Adversary Proceeding"), seeking to enjoin him from prosecuting the Delaware Cases. Adv. Proc. 20-03128 ("2d Adv. Proc.") [2d Adv. Proc. Docket No. 1]. On January 29, 2021, the parties filed a Settlement that resolved the Second Adversary Proceeding, and the Second Adversary Proceeding was subsequently dismissed with prejudice. [2d Adv. Proc. Docket No. 12].

4

of claim attached to the POC Amendment Motion increased Daugherty's general, unsecured, non-priority claim against the Debtor to the amount of at "least $40,410,819.42" and sought to supersede Proof of Claim No. 67 and Proof of Claim No. 77;

WHEREAS, on October 23, 2020, Daugherty filed his *Motion for Temporary Allowance of Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018 Motion*, seeking for his Claim to be temporarily allowed for voting purposes in this amount of $40,410,819.42 [Docket No. 1281] (the "3018 Motion");

WHEREAS, on November 3, 2020, the Court granted the Stay Motion [Docket No. 1327];

WHEREAS, the Debtor opposed the 3018 Motion, and after conducting an evidentiary hearing for the limited purpose of determining the 3018 Motion, the Court entered an order temporarily allowing Daugherty's Claim only for voting purposes in the amount of $9,134,019 [Docket No. 1474];

WHEREAS, on December 10, 2020, the Court entered an order [Docket No. 1533] granting the POC Amendment Motion, and Daugherty was permitted to file an amendment to his proof of claim. On December 23, 2020, Daugherty filed an amended proof of claim, designated by the Debtor's claim agent as Proof of Claim No. 205 ("Proof of Claim No. 205" or the "Daugherty Claim"). Proof of Claim No. 205 superseded Proof of Claim No. 77 and increased the amount of the Daugherty's Claim to $40,710,819.42;

WHEREAS, on November 30, 2020, Daugherty filed his Motion to Lift the Automatic Stay (the "Lift Stay Motion") [Docket No. 1491] seeking to lift the automatic stay to allow him to finish his trial in the Delaware Court and liquidate his claims. The Debtor opposed the Lift Stay Motion, and after a hearing was held on December 17, 2020, the Court denied the relief requested in the Lift Stay Motion [Docket No. 1612];

WHEREAS, except with respect to the Reserved Claim (as defined below), the Parties have agreed to settle and resolve all claims and disputes between them and their respective current affiliates, managed entities, and employees, including the Daugherty Claim, on the terms set forth in this Settlement:

## AGREEMENT

**NOW, THEREFORE**, after good-faith, arms-length negotiations, and in consideration of the foregoing, it is hereby stipulated and agreed that:

1. <u>Allowed Claims</u>: In full satisfaction of the entirety of the Daugherty Claim against the Debtor and HCMLP Released Parties (defined below), excluding the Reserved Claim, Daugherty shall receive (a) an allowed general unsecured Class 8 claim in the amount of $8,250,000; (b) an allowed subordinated general unsecured Class 9 claim in the amount of $3,750,000; and (c) a one-time lump sum cash payment in the amount of $750,000 to be paid within 5 business days of Bankruptcy Court approval of this Settlement Agreement.

2. <u>Recovery</u>: The Debtor makes no representation or warranty as to the recovery on Class 8 or Class 9 claims under the Plan.

3. <u>Observation Access</u>: As soon as practicable following entry of an order of the Bankruptcy Court approving this Settlement, HCMLP shall use reasonable efforts to petition the Claimant Trust Oversight Board[3] to permit Daugherty to have access as an observer to meetings of the Claimant Trust Oversight Board, subject to policies, procedures, and agreements applicable to other observers of the Claimant Trust Oversight Board, including policies, procedures, and agreements related to confidentiality and common interest. Whether Daugherty will be granted observer access and any continuing observer access is and will remain at the sole discretion of the

---

[3] The Claimant Trust Oversight Board refers to the Oversight Board as defined in the August 11, 2021 Highland Claimant Trust Agreement establishing the Claimant Trust, as defined therein.

Claimant Trust Oversight Board.

4.    RCP Track Record: HCMLP shall use reasonable efforts to provide Daugherty

with data constituting the investment performance track record of RCP during Daugherty's tenure

at HCMLP. Daugherty shall not be entitled to any compensation with respect to the performance

of RCP. HCMLP makes no representations or warranties regarding such data and takes no

responsibility with respect to the use of such data for any purposes.

5.    Daugherty Releases: Except as specifically provided in this paragraph 5, and to

the maximum extent permitted by applicable law, the Debtor, on behalf of itself and each of the

HCMLP Entities and HCMLP Parties (as those terms are defined in paragraph 6 below), hereby

forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and

exonerates, and covenants never to sue Daugherty, his successors, affiliates, and assigns, (and in

each such category to include their respective advisors, trustees, directors, officers, managers,

members, partners, employees, beneficiaries, shareholders, agents, participants, subsidiaries,

parents, affiliates, and designees) (collectively, the "Daugherty Additional Release Parties" and

together with Daugherty, the "Daugherty Released Parties"), in each case acting in such capacity,

for and from any and all claims, debts, liabilities, demands, obligations, promises, acts,

agreements, liens, losses, costs and expenses (including, without limitation, attorney's fees and

related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature,

whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or

unliquidated, contingent or fixed, at law or in equity, statutory or otherwise, including, without

limitation those which were or could have been asserted in the Bankruptcy, including the

Adversary Proceeding, the Texas Action, or the Delaware Cases, all existing as of the date hereof

(collectively, the "HCMLP Released Claims"); provided, however, that such release shall not

7

apply with respect to any and all defenses that HCMLP or the HCMLP Entities may have to the

Reserved Claim or the Reserve Motion (as those terms are defined herein) or Daugherty's

obligations under this Settlement.  For the avoidance of doubt, the HCMLP Released Claims

include all claims or causes of action and facts, known or unknown, that exist as of the date hereof

but do not include or apply to claims or causes of action based on facts occurring after the date

hereof.

      6.    <u>HCMLP Releases</u>: Except as specifically provided in this paragraph 6, and to the

maximum extent permitted by law, Daugherty, on behalf of himself and each of the Daugherty

Released Parties, hereby forever, finally, fully, unconditionally, and completely releases, relieves,

acquits, remises, and exonerates, and covenants never to sue, (a)(i) HCMLP; (ii) Strand Advisors

Inc.; (iii) the Claimant Trust; (iv) the Claimant Trust Oversight Board; (v) the Highland Litigation

Sub-Trust; (vi) the Highland Indemnity Trust; (vii) any entity of which greater than fifty percent

of the voting ownership is held directly or indirectly by HCMLP as of the date hereof and any

entity otherwise directly or indirectly controlled by HCMLP as of the date hereof,; and (viii) any

entity managed by either HCMLP or a direct or indirect subsidiary of HCMLP, including Highland

Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland

Restoration Capital Master, L.P. (and all of their respective general partners, feeder funds,

managers, and affiliates) (the foregoing (a)(i) through (a)(viii) the "<u>HCMLP Entities</u>"), and (b)

with respect to each such HCMLP Entity, such HCMLP Entity's respective current (meaning

employed in their respective roles as of the date hereof) advisors, trustees, directors, officers,

managers, members, partners, employees, beneficiaries, shareholders (but not the shareholders of

Strand Advisors Inc.), agents, participants, subsidiaries, parents, affiliates, successors, designees,

and assigns, except as expressly set forth below (the "<u>HCMLP Parties</u>," and together with the

HCMLP Entities, the "HCMLP Released Parties"),[4] in each case acting in such capacity, for and

from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens,

losses, costs and expenses (including, without limitation, attorney's fees and related costs),

damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known

or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated,

contingent or fixed, at law or in equity, statutory or otherwise, including without limitation those

which were or could have been asserted in the Bankruptcy, including the Adversary Proceeding,

the Texas Action, the Daugherty Claim, or the Highland Delaware Case (collectively, the

"Daugherty Released Claims"); provided, however, that such release shall not apply with respect

to the Reserved Claim or the Reserve Motion (as those terms are defined in paragraph 9 below) or

HCMLP's obligations under this Settlement. This release expressly applies to all current

employees of HCMLP as the Reorganized Debtor (as defined in the Plan), in their capacities as

such. For the avoidance of doubt, the Daugherty Released Claims includes all claims or causes of

action and facts, known or unknown, that exist as of the date hereof but do not include or apply to

claims or causes of action based on facts occurring after the date hereof.

7.     Reservation of Daugherty Rights: Notwithstanding anything contained herein to

the contrary, the term HCMLP Released Parties shall not include (a) NexPoint Advisors, L.P. (or

any of its subsidiaries and employees, advisors, or agents), (b) the Charitable Donor Advised Fund,

L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and any of their respective

employees, advisors, or agents), (c) NexBank, SSB (or any of its subsidiaries, employees, advisors,

or agents), (d) James Dondero or any trust in which Dondero or any of his family members are a

trustee or beneficiary (or any trustee acting for such trust), including but not limited to Hunter

---

[4] The Daugherty Additional Released Parties and the HCMLP Released Parties are collectively referred to as the "Additional Released Parties."

Mountain Investment Trust, The Get Good Trust, Dugaboy Investment Trust, SLHC Investment

Trust, (e) HERA (subject to paragraph 8 below), (f) ERA (subject to paragraph 8 below), (g) Grant

Scott, (h) Mark Okada and any trust in which Mark Okada or any of his family members are a

beneficiary (or any trustee acting for such trust in their respective capacities), (i) Ellington, (j)

Leventon, (k) Katz, (l) Hurst, (m) Andrews Kurth, or (m) any other former employee (as of the

date hereof) of the HCMLP Released Parties.

     8.    <u>HERA and ERA</u>: The Parties acknowledge and agree that as of the date hereof,

HERA and ERA have no material assets other than potential claims that may exist against persons

or entities not released at or prior to the date hereof, and no claims against the HCMLP Released

Parties. The allowed claims provided in paragraph 1 hereof are expressly agreed to in order to

satisfy any liability the Debtor may have in connection with the HERA Judgment. To facilitate

recovery of such potential claims – which expressly excludes any and all claims by or in the name

of HERA and ERA against any of the HCMLP Released Parties -- HCMLP will transfer its

interests in HERA and ERA to Daugherty. Such transfer will include the HERA and ERA books

and records (spreadsheet) maintained on HCMLP's system. Such transfer will be without

representation or warranty of any type; including, for the avoidance of doubt, without any

representation or warranty as to the merits of the potential claims or the efficacy of the transfer of

the potential claims. Such transfer will be without any liability or material cost to HCMLP or its

affiliates or the other HCMLP Released Parties, including any liability in respect of any assets that

HERA or ERA ever actually or allegedly owned, possessed, or controlled and that were actually

or allegedly transferred, conveyed, sold, written off or otherwise disposed of (in any such case, a

"<u>Disposition</u>"). In connection with the transfer, HERA and ERA have expressly released the

HCMLP Released Parties from any and all claims, including any claims actions or remedies related

to any Disposition, either of them may have against any HCMLP Released Party now or in the

future (the "HERA and ERA Release"). Daugherty on behalf of himself and each of the Daugherty

Released Parties acknowledges, accepts, and agrees not to challenge the HERA and ERA Release

or support any challenge thereto. A copy of the HERA and ERA Release is annexed hereto as

**Exhibit A.**  Daugherty acknowledges and agrees that even though HERA and ERA are not

HCMLP Released Parties under this Agreement, Daugherty and all Daugherty Released Parties

shall (a) not seek to hold any HCMLP Released Party liable for any action or inaction taken by or

on behalf of HERA or ERA, including through any derivative, veil-piercing or similar cause of

action or remedy; and (b) not seek to recover damages or obtain any form of relief against any

HCMLP Released Party on account of any action or inaction taken by or on behalf of HERA or

ERA, including through any veil piercing or similar cause of action or remedy. If, for any reason,

HERA or ERA, or any person or entity acting on their behalf, recovers anything from any HCMLP

Released Party, Daugherty shall promptly turnover to HCMLP or its successors and assigns any

amounts actually recovered by Daugherty or any Daugherty Released Party, from HERA or ERA

arising from, related to, or derived from any claim that HERA or ERA or any person or entity

acting on their behalf has or may have against any HCMLP Released Party. HCMLP will provide

reasonable assistance to Daugherty to assist with the preparation of any required HERA K-1s for

2021, but any requirement to provide such K-1s will be the obligation, if any, of HERA.

9.    IRS Compensation Claim: In section 4(ii) of the Addendum to Proof of Claim No.

205, Daugherty contends that he has a contingent, unliquidated claim against the Debtor arising

out of a 2008/2009 compensation letter (the "Reserved Claim"), which claim is also related to an

audit/dispute between the Debtor and the Internal Revenue Service (the "IRS") (the dispute

between the Debtor and IRS being referred to herein as the "IRS Audit Dispute"). The Debtor

disputes the validity and amount of the Reserved Claim.  Daugherty shall retain the Reserved

Claim solely against the Debtor and not against any other HCMLP Released Party, and the Debtor

reserves the right to assert any and all defenses thereto.  Any litigation by and between the Debtor

and Daugherty concerning the validity and amount of the Reserved Claim shall be stayed until the

IRS makes a final determination with respect to the IRS Audit Dispute; provided, however, that

Daugherty may file a motion with the Bankruptcy Court to have the Reserved Claim estimated for

purposes of establishing a reserve as a "Disputed Claim" under the Debtor's Plan (the "Reserve

Motion"), and the Debtor (and any successor) reserves the right to assert any and all defenses

thereto.  Notwithstanding the foregoing, Daugherty may address any personal claim or personal

liability to the IRS as a result of the IRS Audit Dispute, including settlement of any such claims;

provided, however, Daugherty agrees to forego settling or addressing any claims with the IRS

without the written consent of the Debtor until March 31, 2022.

      10.   Current HCMLP Employees: The HCMLP Parties set forth on **Appendix A** hereto

are currently employed by the Debtor are HCMLP Released Parties.  By executing a copy of this

Settlement and delivering it to Daugherty, each of the persons on Appendix A agrees not to sue,

attempt to sue, or threaten or work with or assist  any entity or person to sue, attempt to sue, or

threaten any Daugherty Released Party on or in connection with any claim or cause of action

arising prior to the date of this Settlement.

      11.   Dismissal and Motions in Other Actions.  Within ten business days after approval

of this Settlement by the Bankruptcy Court, the Parties shall take all steps necessary (a) to dismiss

with prejudice (i) the Highland Delaware Case, as against the Debtor and any HCMLP Released

Party, and (ii) the HERA Delaware Case, as against every HCMLP Released Party, (b) to file an

agreed motion and proposed order to partially vacate the final judgment entered against Daugherty

in the Texas Action, (c) withdraw HCMLP's objection to the Daugherty motion to recuse in the Texas Action, and (d) to dismiss the Adversary Proceeding with prejudice. The parties shall file the foregoing motions and withdrawals substantially in the form of the documents annexed hereto as **Exhibit B**.

12.    Additional Third Party Claims Discovery:  The Debtor (a) shall accept service of any subpoenas via email served by Daugherty in connection with the Delaware Cases on behalf of itself, the HCMLP Entities, the HCMLP Parties (but only in their capacity as employees of HCMLP); and (b) acknowledge and consent to the jurisdiction of the Delaware Chancery Court for purposes of enforcing any such subpoenas, subject in all respects to the rights that the HCMLP Entities and HCMLP Parties to defend the requested production, if any.

13.    Settlement of Third Party Claims:  Daugherty shall not settle any claims or causes of action against any current or former director, officer, employee, agent or representative of HCMLP or Strand Advisors Inc. (collectively, the "Potentially Indemnified Parties") to the extent such claims have been brought or could have been brought against any Potentially Indemnified Parties, if any such settlement designates, defines or describes the settled claims as arising out of or relating to simple negligence or as having otherwise been within the scope of employment of the Potentially Indemnified Party.

14.    Claims Register:   As soon as practicable after the Settlement Effective Date, HCMLP shall instruct the claims agent in the Debtor's chapter 11 case to adjust the claims register in accordance with this Settlement.

15.    Daugherty Representations:  Daugherty represents and warrants to each of the HCMLP Released Parties that (a) he has full authority to release the Daugherty Released Claims and has not sold, transferred, or assigned any Daugherty Released Claim to any other person or

entity and that (b) no person or entity other than Daugherty has been, is, or will be authorized to

bring, pursue, or enforce any Daugherty Released Claim on behalf of, for the benefit of, or in the

name of (whether directly or derivatively) Daugherty.

16.     HCMLP Representations: Each of HCMLP and each HCMLP Released Party who

has signed this Settlement represents and warrants to Daugherty that (a) he, she or it has not sold,

transferred, pledged, assigned or hypothecated any HCMLP Released Claim to any other person

or entity and (b) he, she, or it has full authority to release any HCMLP Released Claims that such

HCMLP Released Party personally has against Daugherty.

17.     Additional HCMLP Representations: HCMLP represents and warrants that it is

releasing the HCMLP Released Claims on behalf of the HCMLP Entities to the maximum extent

permitted by any contractual or other legal rights HCMLP possesses.  To the extent any of the

HCMLP Entities dispute HCMLP's right to release the HCMLP Released Claims on behalf of any

of the HCMLP Entities, HCMLP shall use commercially reasonable efforts to support Daugherty's

position, if any, that such claims were released herein.  For the avoidance of doubt, HCMLP will

have no obligations to assist Daugherty under this paragraph if HCMLP has been advised by

external counsel that such assistance could subject HCMLP to liability to any third party or if such

assistance would require HCMLP to expend material amounts of time or money.  HCMLP shall

not argue in any forum that the non-signatory status of any of the HCMLP Entities to this

Settlement shall in any way affect the enforceability of this Settlement vis-à-vis any of the HCMLP

Entities. The Parties agree that all of the HCMLP Entities are intended third-party beneficiaries

of this Release.

18.     HCMLP Covenant: HCMLP and the HCMLP Entities covenant and agree that

they will not pursue or seek to enforce any injunctions entered in the Texas Action against

Daugherty.

19.  Entire Agreement; Modification: This Settlement contains the entire agreement

between the Parties as to its subject matter and supersedes and replaces any and all prior

agreements and undertakings between the Parties. This Settlement may not be modified other than

by a signed writing executed by the Parties.

20.  Bankruptcy Court Approval: Notwithstanding anything to the contrary contained

herein, the effectiveness of HCMLP and the Claimant Trust's execution of this Settlement shall be

subject to entry of an order of the Bankruptcy Court approving this Settlement. HCMLP shall take

all steps necessary to file with the Bankruptcy Court a motion for an order approving this

Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 and section 363 of the

Bankruptcy Code (the "Motion"). The parties agree to cooperate in the preparation and

prosecution of the Motion which shall be filed no later than 5 business day after execution of this

Settlement, unless such time is extended by mutual agreement.

21.  Counterparts: This Settlement may be executed in counterparts (including

facsimile and electronic transmission counterparts), each of which will be deemed an original but

all of which together constitute one and the same instrument and shall be effective against a Party

or Additional Released Party upon approval of the Settlement by the Bankruptcy Court.

22.  Governing Law; Jurisdiction: This Settlement will be exclusively governed by and

construed and enforced in accordance with the laws of the State of Delaware, without regard to its

conflicts of law principles, and all claims relating to or arising out of this Settlement, or the breach

thereof, whether sounding in contract, tort, or otherwise, will likewise be governed by the laws of

the State of Delaware, excluding Delaware's conflicts of law principles. The Bankruptcy Court

will retain exclusive jurisdiction over all disputes relating to this Settlement.

15

23.  <u>Headings</u>:  Paragraph headings included herein are for convenience and shall have

no impact whatsoever on the meaning or interpretation of any part of this Settlement.

[Remainder of page intentionally left blank]

In witness whereof, the parties hereto, intending to be legally bound, have executed this

Settlement as of the day and year set forth below:

Dated: *11-2-21*

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____

Name: James P. Seery, Jr.
Title:   Chief Executive Officer

HIGHLAND CLAIMANT TRUST

By: _____

Name: James P. Seery, Jr.
Title:  Claimant Trustee

PATRICK HAGAMAN DAUGHERTY

Dated: *11/22/21*

By: _____
Name:  Patrick Hagaman Daugherty

# EXHIBIT A

HERA RELEASE AGREEMENT

This HERA Release Agreement ("HERA Release Agreement") is entered into as of November 21, 2021 by and among Highland Capital Management, L.P., as reorganized debtor ("HCMLP" or the "Debtor"), Patrick Hagaman Daugherty ("Daugherty"), Highland Employee Retention Assets, LLC ("HERA") and Highland ERA Management, LLC ("ERA" and together with HCMLP, and HERA, the "Parties," and individually as a "Party").

WHEREAS, reference is hereby made to the Settlement Agreement (the "Settlement") of even date herewith and attached hereto made and entered into by and between the Debtor, the Highland Claimant Trust, and Daugherty.

WHEREAS, the Settlement settles all of Daugherty's claims against the HCMLP Released Parties, including all claims against the HCMLP Released Parties relating to transfers of assets from HERA.

WHEREAS, the Settlement includes, among other things, the transfer by HCMLP to Daugherty of HCMLP's interests in HERA and ERA.

WHEREAS, under the Settlement such transfer is being made without any liability to any of the HCMLP Released Parties of any type and is conditional on the full release of, and covenant not to sue, each of the HCMLP Released Parties, by and from HERA, ERA, Daugherty and the Daugherty Released Parties.

WHEREAS, neither HERA nor ERA filed proofs of claim in the Bankrupty and have no claims against HCMLP.

WHEREAS, out of an abundance of caution to confirm that HERA, ERA, Daugherty, and the Daugherty Released Parties have no claims against the HCMLP Released Parties, this HERA Release Agreement is being entered into contemporaneously with the Settlement and constitutes an

essential part thereof.

WHEREAS, capitalized terms used herein but not otherwise defined herein have the respective meanings set forth in the Settlement.

NOW, THEREFORE, in consideration of the entry into of the Settlement, the transfer of the equity interests in HERA and ERA to Daugherty in accordance with the Settlement, and for other good and valuable consideration, including the provisions set forth herein, the parties hereto further agree as follows:

1.    Upon entry of an order of the Bankruptcy Court approving this Settlement and to the maximum extent permitted by law, Daugherty, on behalf of himself and each of the Daugherty Additional Release Parties, together with each of HERA and ERA (Daugherty, the Daugherty Additional Release Parties, HERA and ERA shall be collectively referred to herein as the "HERA Releasing Parties"), each hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and covenants never to sue, any of the HCMLP Released Parties for and from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses (including, without limitation, attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise, including without limitation those which were or could have been asserted in the Bankruptcy, including the Adversary Proceeding, the Texas Action, the Daugherty Claim, Highland Delaware Case, or the HERA Delaware Case (collectively, "Claims"), in each case that in any way arise from or otherwise in any way relate to HERA or ERA, including, without limitation, any actual or potential claims, whether known or unknown, in any way related to or

arising out of the formation, management, operation or assets of HERA, ERA or any of their respective predecessors or successors, including the transfer of any assets to or from HERA or ERA, it being understood that all remaining assets of HERA have been transferred to HCMLP prior to the date hereof, and in addition to the releases set forth above, each of the HERA Releasing Parties irrevocably waives and releases and covenants not to sue with respect to any Claims against any of the HCMLP Released Parties in any way related to any such transfers or assets, whether *in personam* with respect to the HCMLP Released Parties or *in rem* with respect to any of their assets (collectively, the "HERA Released Claims") or any other Disposition.

2.  This Release constitutes a part of, and is supplemental to, the provisions of the Settlement.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

In witness whereof, the parties hereto, intending to be legally bound, have executed this

HERA Release Agreement as of the date set forth above.

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____

Name: James P. Seery, Jr.

Title: Chief Executive Officer

PATRICK HAGAMAN DAUGHERTY

By: _____

Name: Patrick Hagaman Daugherty

HIGHLAND EMPLOYEE RETENTION ASSETS, LLC

By: Highland ERA Management, LLC, its manager

By: Highland Capital Management, L.P.

By: _____

Name: James P. Seery, Jr.

Title: Chief Executive Officer

HIGHLAND ERA MANAGEMENT, LLC

By: _____

Name: James P. Seery, Jr.

Title: Authorized Signatory

# EXHIBIT B

CAUSE NO. 12-04005



| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| PATRICK DAUGHERTY, | § | |
| | § | |
| Defendant and Counter-Plaintiff, | § | DALLAS COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | |
| SIERRA VERDE, LLC, HIGHLAND EMPLOYEE RETENTION ASSETS LLC, JAMES DONDERO, PATRICK BOYCE, AND WILLIAM L. BRITAIN, | § | |
| | § | |
| Third-Party Defendants. | § | |
| | § | 68th JUDICIAL DISTRICT |

## AGREED MOTION TO PARTIALLY VACATE THE FINAL JUDGMENT DATED JULY 14, 2014

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Highland Capital Management, LP ("Highland") and Defendant Patrick Daugherty ("Daugherty" and together with Highland, the "Parties") file this *Agreed Motion to Partially Vacate the Final Judgment dated July 14, 2014* (the "Motion"), and respectfully show the following:

1.     On July 14, 2014, this Court entered a *Final Judgment* (the "Judgment") that, among other things, granted Highland's motion for injunctive relief against Daugherty.

2.     The Judgment was amended on March 23, and June 23, 2017.

3.     On October 16, 2019, filed a petition under chapter 11 in the United States Bankruptcy Court for the District of Delaware ("Highland's Bankruptcy Case"). On October 24,

2019, as a result of the commencement of Highland's Bankruptcy Case, the Supreme Court of Texas issued an order abating a related case that Daugherty had brought in that court, Case No. 19-0758. Highland's Bankruptcy Case was subsequently transferred to the United States Bankruptcy Court for the Northern District of Texas.

4.      Daugherty asserted certain claims against Highland in Highland's Bankruptcy Case. The Parties have fully and finally resolved their disputes pursuant to a settlement agreement (the "Settlement Agreement") reached in the Highland Bankruptcy Case pursuant to which, among other things, (a) all of Daugherty's known and unknown claims against each of the Highland Released Parties (as those terms are defined in the Settlement Agreement) are resolved, and (b) this Motion seeking the *vacatur* of certain provisions of the Judgment specifically set forth below is being filed.

5.      Highland and Daugherty hereby agree and stipulate that the Court has plenary power to issue an order granting this Motion because the Court retained authority to enforce the permanent injunction rendered in the Judgment, and that changed circumstances have now arisen such that the Court should dissolve the permanent injunction. Highland and Daugherty further agree and stipulate that this Motion shall be treated as an agreement of the Parties pursuant to Texas Rule of Civil Procedure 11, and is fully enforceable. *See Coale v. Scott*, 331 S.W.3d 829, 831-32 (Tex. App.—Amarillo 2011, no pet.) ("Irrespective of whether a trial court lost its plenary jurisdiction over its judgment, the trial court's authority to approve a Rule 11 agreement does not depend on whether it has such jurisdiction.").

6.      Highland and Daugherty agree that the following portions of the Judgment shall be vacated pursuant to their settlement in the Highland Bankruptcy:

a. The second full paragraph on Page 2 of the Judgment, which begins "The Court, after considering the jury's findings regarding Daugherty's breaches of contract and breaches of fiduciary duty . . .";

b. The permanent injunction rendered against Daugherty in the third full paragraph on Page 2 of the Judgment, which begins "It is therefore further ORDERED that Daugherty be and hereby is commanded to cease and desist from . . .";

c. The fourth and fifth full paragraphs on Page 2 of the Judgment awarding Highland a monetary judgment against Daugherty for reasonable and necessary attorney's fees, as well as post-judgment interest on that award[1]; and

d. The jury's answers to Questions 1, 2, 5, 6, 9 and 12 in the Verdict, which was attached as Exhibit 1 to the Judgment.

7. Highland and Daugherty further agree that, as a result of the vacation of the permanent injunction in the Judgment, Highland hereby withdraws any pending motions to show cause or motions for contempt against Daugherty that allege Daugherty violated or is violating the permanent injunction. Highland also agrees not to seek to enforce the permanent injunction in any manner in the future.

---

[1] Daugherty previously satisfied the monetary judgment awarded to Highland, and Highland filed a release of the monetary judgment. Although Highland and Daugherty have agreed to vacate the monetary judgment awarded to Highland, Daugherty waives and relinquishes any right or claim to recover any amount previously paid in satisfaction of the Judgment and Highland shall not be required to reimburse Daugherty for his prior satisfaction of the monetary judgment. To the extent Daugherty is entitled to indemnification for any liabilities, losses, and damages allegedly incurred by him for actions taken in connection with Highland's business, including the liabilities Daugherty allegedly incurred in connection with this action and the Judgment, such indemnification claims have been fully and finally satisfied and resolved under the Settlement Agreement.

**AGREED MOTION TO PARTIALLY VACATE FINAL JUDGMENT - PAGE 3 OF 5**
4851-6473-6986.4

8. Concurrent with the filing of this Motion, Daugherty will file a motion to dismiss his as-yet unfiled petition for review pending before the Supreme Court of Texas under Case No. 19-0758.

9. Highland and Daugherty further agree that any portions of the Judgment that are not specifically vacated pursuant to this Motion shall remain in full force and effect.

WHEREFORE, Highland and Daugherty pray that the Court grant this Motion in its entirety, and for all further relief, at law or in equity, the Court deems necessary.

Respectfully submitted,

GRAY REED & McGRAW LLP

By:   /s/ Sonya D. Reddy
         ANDREW K. YORK
         State Bar No. 24051554
         E-mail: dyork@grayreed.com
         SONYA D. REDDY
         State Bar No. 24079188
         E-mail: sreddy@grayreed.com

1601 Elm Street, Suite 4600
Dallas, Texas 75201
(214) 954-4135
(214) 953-1332 (Fax)

**ATTORNEYS FOR PATRICK DAUGHERTY**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been transmitted by electronic transmission to all counsel of record on February ___, 2021, as follows:

Marc D. Katz
Crystal J. Woods
DLA PIPER LLP (US)
1717 Main St., Suite 3700
Dallas, Texas 75201
214-743-4545 (Fax)
marc.katz@dlapiper.com
crystal.woods@dlapiper.com

Attorneys for Highland Capital
Management, L.P.

Michael K. Hurst
A. Shonn Brown
Jonathan Childers
LYNN PINKER COX HURST, LLP
2100 Ross Ave., Suite 2700
Dallas, Texas 75201
(214) 981-3839 (Fax)
mhurst@lynnllp.com
sbrown@lynnllp.com
jchilders@lynnllp.com

Attorneys for Third-Party Defendants HERA,
Patrick Boyce, and William Britain

/s/ Sonya D. Reddy
SONYA D. REDDY

**AGREED MOTION TO PARTIALLY VACATE FINAL JUDGMENT - PAGE 5 OF 5**
4851-6473-6986.4

**APPENDIX A** (signatures to follow)

1. James P. Seery, Jr.
2. Cameron Baynard
3. Nathan Burns
4. Timothy Cournoyer
5. Naomi Chisum
6. Stetson Clark
7. Sean Fox
8. Matthew Gray
9. Kristin Hendrix
10. David Klos
11. Vishal Patel
12. Thomas Surgent
13. Michael Throckmorton