PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

**HIGHLAND CAPITAL MANAGEMENT, L.P. AND THE HIGHLAND CLAIMANT TRUST'S REPLY IN FURTHER SUPPORT OF THE MOTION FOR AN ORDER AUTHORIZING (A) THE DESTRUCTION OF CERTAIN DOCUMENTS AND OBSOLETE EQUIPMENT AND (B) FOR RELATED RELIEF**

Highland Capital Management, L.P., the reorganized debtor ("Highland") in the above-captioned chapter 11 case (the "Bankruptcy Case"), and the Highland Claimant Trust (the "Claimant Trust", and together with Highland, the "Movants") file this reply in response to the

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

4927-6381-8617.3 36027.003

objection to the Motion[2] filed by Patrick Daugherty ("Daugherty") at Docket No. 4449 (the "Objection") and respectfully state as follows:

## PRELIMINARY STATEMENT

1. Daugherty and his shell entities,[3] Highland Employee Retention Assets LLC ("HERA") and Highland ERA Management, LLC ("ERA", and collectively with HERA and Daugherty, the "Objectors"), are the only objectors to the Motion. Rather than trying to protect their own interests by seeking to determine whether a relevant needle in a gigantic haystack actually exists,[4] the Objectors insist that this Court cannot grant the Motion unless Highland "thoroughly examines" the contents of 3,987 boxes of old documents and represents to the Court that there is nothing "relevant" to the Objectors' pending lawsuits in those boxes. Neither the Settlement Agreement nor Rule 26 (nor anything else) impose such extraordinary burdens on Movants.

2. HERA and ERA's objection is based on certain emails they apparently obtained from third parties that are supposedly relevant to a lawsuit pending elsewhere. But Highland is not a party to the HERA Litigation, has never been served with a subpoena in that litigation, and owes no legal duty to HERA to preserve or deliver any documents stored at Iron Mountain because none of them are "maintained on HCMLP's system" as expressly required under the Settlement Agreement. Moreover, while Movants vigorously dispute that "books and records (spreadsheet)" include "emails" from entities that had no employees, offices, or computers, the Motion does not

---

[2] Capitalized terms not defined herein have the meanings ascribed to them in *Highland Capital Management, L.P. and the Highland Claimant Trust's Motion for an Order (A) Authorizing the Destruction of Certain Documents and Obsolete Equipment, and (B) for Related Relief* [Docket No. 4416] or as otherwise set forth below.

[3] These entities were transferred to Daugherty in 2022 as contemplated by Highland's settlement with Daugherty.

[4] Even Daugherty is left to speculate whether any relevant documents are within the 3,987 boxes subject to the Motion. *See*, *e.g.*, Objection ¶ 1 (the boxes "may" include relevant information), ¶ 11 (Daugherty "wonder[s] whether any of those materials" are relevant).

even implicate e-mails and electronic data because all of that information *is* "maintained on HCMLP's system." In short, Highland has no contractual or legal duty to preserve anything in Iron Mountain for the benefit of HERA and ERA.

3. The same is true of Daugherty. While he has served extraordinarily broad discovery in the Adversary Proceeding, Highland's obligation to produce information is expressly limited by Rule 26, which requires that the discovery be "proportional to the needs of the case" and that the parties consider "the amount in controversy, the parties' relative access to relevant information … and whether the burden or expense of the proposed discovery outweighs its likely benefit."

4. Daugherty ignores these discovery guardrails and insists on imposing costly burdens on Highland that even he can't contend will likely yield *any* benefit. Worse, the Objectors seek to impose these burdens even though they (a) cannot identify any boxes on the Inventory List that are likely to contain relevant information, and (b) have rejected Highland's offer of access to the Documents on the same terms recently accepted by the Dondero Parties.

5. The Objectors have virtually the same access to the Documents as Highland.[5] If the Objectors were genuinely interested in trying to determine whether there is a relevant needle in the gigantic haystack, they would do the work needed to protect their alleged interests. Instead, the Objectors refuse and appear more interested in creating "issues" they believe they can use on appeal or elsewhere.

6. Like most entities nearing the end of a liquidation, the Movants transparently seek authority to reduce expenses by destroying archived documents and obsolete items. Highland continues to maintain a massive volume of electronic records including all relevant business

---

[5] The only limitation Highland imposed concerned boxes on the Inventory List that appear to include protected personal information such as employment records, medical information, bank statements, etc. The Dondero Parties respected that limitation.

records. As part of the wind-down process, the Movants gave notice, provided the Iron Mountain Inventory List, and even agreed to provide access to the Documents on the terms set forth in the Dondero Stipulation. Under these circumstances, the Court should find that (a) neither the Settlement Agreement nor Rule 26 (nor anything else) obligate Highland to "thoroughly examine" or describe with "particularity" the contents of 3,987 old boxes of documents to determine whether there might be something relevant to somebody, and (b) the Objectors will not be prejudiced by the granting of the Motion because they flat out rejected Highland's offer of access to the Documents on the same terms accepted by the Dondero Parties and otherwise made no effort to resolve this Motion consensually.

## REPLY

### A. Highland Has No Obligation to Review or Maintain Any of the Documents for HERA's Benefit

7. HERA contends that Highland breached its obligation to provide Daugherty with HERA and ERA's "books and records (spreadsheet) maintained on HCMLP's system" and asserts a speculative interest in the Documents based on the terms of the Settlement Agreement.[6] While the Court will determine the boundaries of the phrase "books and records (spreadsheet) maintained on HCMLP's system" as part of the adversary proceeding between Highland and Mr. Daugherty, the Settlement Agreement does not grant *any* rights to HERA (or Mr. Daugherty) with respect to the hard-copy Documents contained in the boxes at Iron Mountain.

8. The Settlement Agreement obligated Highland to, among other things, transfer to Mr. Daugherty "the HERA and ERA books and records (spreadsheet) ***maintained on HCMLP's system.***" The highlighted language is dispositive: none of the Documents subject to the Motion

---

[6] "Settlement Agreement" refers to the Settlement Agreement attached as Exhibit 1 to the *Declaration of John A. Morris* submitted in further support of the Motion and simultaneously with this Reply.

are "maintained on HCMLP's system," and neither Mr. Daugherty nor HERA contend otherwise.

9. Perhaps sensing that the Settlement Agreement provides no relief, Mr. Daugherty refers to his pending lawsuit against James Dondero and others and suggests Movants have some unidentified duty to preserve documents that might be relevant to that litigation. *See* Objection ¶ 9, Ex. B-2 (the "HERA Litigation"). But Highland is not a party to the HERA Litigation, has never been served with a subpoena in that litigation, and has no legal obligation to maintain or review documents for the benefit of Mr. Daugherty and/or HERA.

10. If HERA was legitimately concerned that some of the Documents might be relevant to the HERA Litigation, it would have accepted Highland's offer to make the Documents available for review and copying (at HERA's expense). But, of course, HERA did no such thing.

**B.  Rule 26 Protects Highland from the Very Burdens Daugherty Seeks to Impose**

11. While Highland generally agrees that it has a duty to preserve and produce relevant information, those duties are also subject to the express limitations imposed by Rule 26 of the Federal Rules of Civil Procedure ("Rule 26").

12. Rule 26 applies because Highland and Mr. Daugherty are parties to an adversary proceeding in which Highland has asserted causes of action to disallow, estimate, and/or subordinate Mr. Daugherty's Reserved Claim. Adv. Pro. 25-03055-sgj (the "Adversary Proceeding").[7] Pursuant to an agreement between Highland and Mr. Daugherty, Highland has maintained a "disputed claim reserve" in the amount of $2,650,353.00 for years. *See* Docket No. 4255, Exhibits 60-63.

13. Mr. Daugherty insists that Highland must "thoroughly examine" the contents of

---

[7] While Mr. Daugherty asserted counterclaims for Highland's alleged failure to provide him with "the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system," those counterclaims are irrelevant to the Motion for the reasons stated above.

4927-6381-8617.3 36027.003                     5

nearly 4,000 boxes of documents to make certain that nothing that might be "relevant" to the Adversary Proceeding is not discarded. Rule 26's express limitations protect Highland from such unreasonable burdens.

14. *First*, Mr. Daugherty speculates that the boxes "may include information relevant" to the Adversary Proceeding. Objection ¶ 1. But that speculation ignores the inventory list provided to Mr. Daugherty. *See* Objection Ex. D-6 (the "<u>Inventory List</u>"). While Mr. Daugherty criticizes limited aspects of the Inventory List, the indisputable fact is that it contains substantially more information than even he claims is lacking—and yet, Mr. Daugherty did not identify a single box worthy of his review. Based on the Inventory List, there is no reason to believe that any of the Documents contained in the boxes are relevant to the Adversary Proceeding.

15. *Second*, a review of 3,987 boxes of documents that may or may not contain relevant information that may or may not be helpful to one party or the other is not proportional to the needs of the case—particularly where the parties agreed to a contingent claim reserve of less than $3 million. And even if he had a claim, Mr. Daugherty's damages would be far less than that amount. The cost of reviewing the Documents can't precisely be calculated (which may be why Mr. Daugherty has refused all entreaties to review them himself) but would surely be well into the six figures. Moreover, Highland possesses all electronic information (including all emails, tax returns and supporting information) from the relevant time period, and additional information pertaining to the completion of the tax audit and subsequent challenge to the IRS conclusions can be obtained from some combination of Highland and third parties. In short, given the available information, it would not be "proportional to the needs of the case" to invest the time and resources needed to look through a mountain of old documents hoping to find something incremental to the Highland business records maintained on its system that might somehow be relevant to the Adversary

Proceeding.

16. Similarly, the "burden and expense of the proposed discovery [clearly] outweighs its likely benefit." By any objective measure, the burden and expense of reviewing 3,987 boxes of documents is certain to be substantial. On the other hand, there is no "likely benefit" because there is no reason to believe that any of the Documents are "relevant" to the Adversary Proceeding.

17. Finally, and most importantly, other than clearly personal documents, Highland and Mr. Daugherty have the exact same access to information to the Documents. Indeed, the same Inventory List was provided to Mr. Dondero and others affiliated with him (collectively, the "Dondero Parties") and they were able to identify 106 boxes of interest and negotiate access on reasonable terms. *See* Docket No. 4455 (the "Dondero Stipulation").

18. Immediately after filing the Dondero Stipulation, Highland offered to provide access to the Documents on the same terms, but Daugherty and HERA rejected the offer without making any counterproposal. Morris Dec. Exhibits 2, 3.

19. Ample precedent exists supporting Highland's position in analogous circumstances *See, e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 605 B.R. 617 (Bankr. S.D.N.Y. 2019) (affirming denial of motion to compel where movant failed to demonstrate that relevant information was likely contained somewhere in 13,000 boxes of documents, and thus, the request was disproportionate and burdensome); *Devon Mobile Commc'ns Liquidating Tr. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 338 B.R. 546 (Bankr. S.D.N.Y. 2005) (bankruptcy court declined to require a producing party to cull through hundreds of boxes of physical documents where the boxes were generally organized).

20. In *Ambac Assurance Corp. v. EMC Mortgage Corp.*, 2010 U.S. Dist. LEXIS 68909 (E.D.N.Y. July 8, 2010), Ambac sought discovery from a liquidating debtor while the debtor,

American Homes, moved to destroy about 4,559 boxes of documents. The court granted Ambac's request for an inventory list and for access to the documents, noting that Ambac had offered to pay for its staff to review the documents, pay one of American Home's security guards to oversee the review, pay to scan and return the scanned documents, and comply with any applicable protective orders.

21.  Unfortunately, unlike Ambac, Mr. Daugherty has not made any meaningful offer to address Highland's legitimate and self-evident concerns.

## CONCLUSION

WHEREFORE, Movants respectfully request that the Court enter the Proposed Order granting the Motion and grant Movants such additional relief as the Court deems appropriate.

| | |
|---|---|
| Dated: November 11, 2025 | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>Jeffrey N. Pomerantz (CA Bar No. 143717)<br>John A. Morris (NY Bar No. 2405397)<br>Gregory V. Demo (NY Bar No. 5371992)<br>Hayley R. Winograd (NY Bar No. 5612569)<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 277-6910<br>Email: jpomerantz@pszjlaw.com<br>　　　　jmorris@pszjlaw.com<br>　　　　gdemo@pszjlaw.com<br>　　　　hwinograd@pszjlaw.com<br><br>-and-<br><br>**HAYWARD PLLC**<br><br>*/s/ Zachery Z. Annable*<br>Zachery Z. Annable<br>Texas Bar No. 24053075<br>ZAnnable@HaywardFirm.com<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Tel: (972) 755-7100<br><br>*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust* |