# Exhibit 3

Matthew S. Okin
Texas Bar No. 00784695
David L. Curry, Jr.
Texas Bar No. 24065107
Okin Adams Bartlett Curry LLP
1113 Vine Street, Suite 240
Houston, Texas 77002
Tel: (713) 228-4100
Fax: (346) 247-7158
mokin@okinadams.com
dcurry@okinadams.com

ATTORNEYS FOR THE DALLAS FOUNDATION AND
CROWN GLOBAL LIFE INSURANCE, LTD.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **HIGHLAND CAPITAL** | § | |
| **MANAGEMENT, L.P.,** | § | |
| | § | **Case No. 19-34054-sgj11** |
| Debtor. | § | |

**OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH**

[Related Docket No. 4216]

The Dallas Foundation (the "Foundation"), on behalf of Empower Dallas Foundation ("EDF") and The Okada Family Foundation (the "Okada Foundation"), and Crown Global Life Insurance, Ltd. ("Crown,"), not individually, but solely in respect of Segregated Accounts 30218 & 30219 (the "Segregated Accounts") hereby file this objection (the "Objection") to the Motion (the "9019 Motion") for entry of an order pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") filed on behalf of Highland Capital Management, L.P., the

reorganized debtor (the "Debtor" or "Highland," as applicable) in the above-captioned chapter 11 case (the "Bankruptcy Case"), the Highland Claimant Trust (the "Claimant Trust"), and the Highland Litigation Sub-Trust (the "Litigation Sub-Trust" and together with Highland and the Claimant Trust, the "Movants"), and respectfully states as follows:

# I.
# PRELIMINARY STATEMENT

1. Through the Motion, the Movants seek approval of a settlement agreement (the "Settlement") purportedly entered into by Movants with Hunter Mountain Investment Trust ("HMIT"), Beacon Mountain LLC ("Beacon Mountain"), Rand Advisors, LLC ("Rand Advisors"), Rand PE Fund I, LP ("Rand PE Fund"), Rand PE Fund Management, LLC ("Rand GP"), Atlas IDF, LP ("Atlas IDF"), and Atlas IDF GP, LLC ("Atlas GP" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP, and Atlas IDF, the "HMIT Entities"), which Movants describe as "one of the most significant developments in the long-running Highland Bankruptcy Case." *Motion*, p. 3. As described by Movants, the significance of the settlement rests in the belief that it will bring to an end "protracted and value-destructive litigation that has impeded the Highland Entities' ability to distribute their assets to their constituents and fully implement the Plan." *Id.*

2. Unfortunately, unbeknownst to the Movants, the Settlement is potentially tainted by the actions of Mark Patrick, the apparent sole manager and director of the HMIT Entities. Specifically, upon information and belief, Mr. Patrick illicitly restructured the ownership of the HMIT Entities in a manner that seems to facilitate the diversion of millions of dollars in assets from the charitable entities that are the beneficial owners of the HMIT Entities. As set forth herein, given the actions of Mr. Patrick and the pending proceedings related thereto, rather than

---

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 2 –

4903-0158-0364, v. 5

provide the peace sought by Movants, approval of and consummation of the Settlement will most likely result in further litigation both before this Court and in jurisdictions outside of the United States.

3. Further, as set forth in more detail herein, the alleged actions of Mr. Patrick, taken in his capacity as the sole manager or officer of various entities within the charitable organization structure supported by the HMIT Entities and their assets, along with the timing of the Settlement, all establish a cloud of suspicion over the HMIT Entities' entry into the Settlement. Upon information and belief, under the structure illicitly put in place by Mr. Patrick, more than half of the proceeds of the Settlement will flow to an entity formed very recently by Mr. Patrick and based out his personal home, rather than to the Charitable Entities (defined below) who should be receiving such proceeds. Approval of the Settlement would, therefore, also be inequitable at this time.

4. For these reasons, as more fully set forth herein, the 9019 Motion should be denied.

## II.
## FACTUAL BACKGROUND

5. The lengthy procedural history of this Bankruptcy Case has been well documented in numerous prior pleadings and orders from this Court and is, therefore, not repeated herein. Moreover, the Beneficial Owners do not at this time have sufficient information to either admit or deny the procedural or background allegations set forth in the Motion but admit that those certain publicly available pleadings and orders referenced were filed or entered, as the case may be, on the dates and in the proceedings set forth in the Motion.

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 3 –

4903-0158-0364, v. 5

above, the Fund issued to the Orignial GP 100 management shares (the "Management Shares") representing the only voting rights for any and all shareholders. In essence, this structure granted complete control of the Fund to the holder of the Management Shares, which shares have at all material times been held by a single individual as the manager of the Original GP. As a result, the manager of the general partner has substantial control over the entire Fund structure (the "Control Position"). From the inception of the Fund until March 25, 2021, the Control Position was held by Grant Scott.

C. **Change of Control in 2021 and Resulting Concerns Regarding Mr. Patrick**

12. In March 2021, Mr. Scott indicated his desire to retire from the Control Position. Mr. Patrick offered himself as a replacement to both Mr. Dondero and Mr. Scott. Mr. Patrick had been employed by the Debtor as tax counsel since 2008.[2] He had also provided personal tax advice to Mr. Dondero. Significantly, Mr. Patrick was intimately involved in the creation of the Fund in 2011, including providing advice as to the Fund's structure and in drafting the Fund's governing documents. He was at the time clearly an individual trusted by both Mr. Dondero and Mr. Scott to oversee the DAF and its charitable purposes. Thus, on March 25, 2021, Mr. Scott transferred the Management Shares, and the shares held in Holdco, to Mr. Patrick.

13. There was, initially, no noticeable change in the Fund's management following the transfer to Mr. Patrick. Over time, however, communications from Mr. Patrick and the Fund became less frequent and less substantive when provided. Further, through the Supporting Organizations, the Foundation and Crown became aware that Mr. Patrick had taken or had attempted to take various actions that appeared to be in conflict with the duties owed to the

---

[2] In February 2021, as part of this Bankruptcy Case, the employment contracts of many of Highland's employees, including Mr. Patrick, were terminated. Mr. Patrick, along with many other of the former back-office employees of the Debtor thereafter became employees of a newly formed company, Skyview Group ("Skyview"), that provides middle and back-office services to various clients.

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 6 –

4903-0158-0364, v. 5

Charitable Entities as beneficial owners of the Fund. Finally, an initial investigation into these alleged improper actions highlighted a substantial and sudden increase in the costs and expenses borne by the Fund.

    i.    *Mr. Patrick attempts to direct charitable funds to benefit his own family.*

14. An early example of these concerns occurred in June 2023. On June 28, 2023, Mr. Patrick attempted to have HDFI "*direct $10,000*" to Creative HEARTS TX ("CHTX"), a non-profit entity formed just two weeks earlier. Following due diligence, it was discovered that the directors of the CHTX were Mr. Patrick, Darees Patrick and Alyse Patrick (his daughter and wife). Mr. Patrick did not initially disclose either his or his family's involvement with CHTX.

15. When questioned regarding the nature of CHTX and his family's involvement Mr. Patrick represented that the nonprofit was formed to facilitate paying for trainers or speakers on self-defense training for teenage girls. Upon information and belief, Mr. Patrick's expectation was that this would be an annual donation to a "club" at his daughter's school. The grant payment to CHTX was authorized on September 5, 2023, but Mr. Patrick was informed that further payments were unlikely.

    ii.    *Mr. Patrick resigns amidst insider trading concerns.*

16. In August 2024, additional concerns arose regarding Mr. Patrick when he attempted to provide advice to the Foundation regarding an asset held directly by the Foundation (the asset in question was held separately from the Fund). Upon information and belief, the information provided was obtained by Mr. Patrick through his employment at Skyview and constituted material non-public information ("MNPI"). On the basis of this MNPI, Mr. Patrick advised the Foundation to exercise a put option it held in the subject asset. Uncomfortable with

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 7 –

4903-0158-0364, v. 5

the nature of the information provided and the "tip" from Mr. Patrick, the Foundation notified Skyview of Mr. Patrick's actions and declined to act upon Mr. Patrick's advice.

17. On October 2, 2024, while his actions were being reviewed by Skyview's internal compliance department, Mr. Patrick abruptly resigned from his position at Skyview. On the same day, Mr. Patrick also terminated Skyview's service agreement with the Fund.

### iii. *Diversion of assets through the creation of new entities.*

18. Through the Control Position, Mr. Patrick also manages the HMIT Entities, including Atlas IDF and its general partner, Atlas GP, which itself is a wholly owned subsidiary of the Fund. The economic beneficiaries of Atlas IDF are EDF and the Okada Foundation as the holders of annuity policies issued by Crown.

19. On February 20, 2025, Mr. Patrick in his capacity as the general partner of Atlas GP, sent a letter to Crown advising of the intention to dissolve Atlas IDF in accordance with the partnership agreement dated November 30, 2015, on the basis of (i) concerns about the long-term availability and viability of back-office support; (ii) unsuccessful efforts to sell certain defaulted Notes (the "HCRE Notes") issued by HCRE Partners (a Dondero affiliate) dated May 7, 2014, in the amount of $2,300,000.00, and May 27, 2014, in the amount of $5,000,000, which notes were held by Atlas IDF; and (iii) the decision by an affiliate of Atlas GP to purchase the HCRE Notes at a price above their appraised value of zero dollars to facilitate an orderly wind-up. At the time, the amounts outstanding on the HCRE Notes, including accumulated interest, was in excess of $13,000,000. The stated intention was to sell the HCRE Notes collectively for $500,000.

20. Crown initially provided consent to the sale and liquidation, but withdrew said consent on February 28, 2025, after being advised of the potential misconduct by Mr. Patrick. That same day, Mr. Patrick sent a further letter to Crown Global responding to the revocation of

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 8 –

4903-0158-0364, v. 5

consent, and noting that: "*in addition to the purchase of the 'Notes' for $500,000, we also intend to include a provision in the purchase and sale documents that, if the Notes are repaid in full within 12 months, all amounts received (minus fees and expenses of collection and purchase price) will be remitted to you as the sole limited partner of Atlas IDF, LP.*"

21. At the time that Mr. Patrick attempted to sell the HCRE Notes, upon information and belief, HCRE had proposed to cure its default and repay the HCRE Notes in full pursuant to a revised amortization schedule. As such, the initial zero valuation and proposed $500,000 sale price disclosed to Crown is troubling. More troubling, however, is the fact that the proposed amortization schedule extends beyond 12 months. In other words, Mr. Patrick's proposed "fix" – i.e. sharing upside in the event the HCRE Notes were repaid within one year – was carefully tailored to give the appearance of addressing Crown's concerns even though Mr. Patrick already knew that the repayment would not occur within the 12 month period.

D.  **The Cayman Insolvency Proceedings**

22. In or around October 2024, the Charitable Entities, acting through counsel and the Supporting Organizations, requested that Mr. Patrick provide financial information explaining certain significant increases in the costs charged to the Fund.[3] In November 2024, having not received any of the requested financial information, the Charitable Entities delivered a letter of no confidence to Mr. Patrick requesting a formal reorganization of the Fund. No response to the no confidence letter was received.

---

[3] For example, directors' fees increased from $40,000 in 2022 to almost $600,000 in 2023 –and increased even further to around $2.25 million in the first half of 2024 alone. Expenses overall for the first half of 2024 were around $18.3 million – roughly the same amount spent over the entire course of 2023 (i.e. $18.6 million).

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 9 –

4903-0158-0364, v. 5

dilution of the interests beneficially held by the Charitable Entities such that, following the new issuance: (i) HDFI's interest was diluted from 32.787% to 16.05%; (ii) HKCF's interest was diluted from 32.787% to 16.05%; (iii) HSBFI's interest was diluted from 32.787% to 16.05%; and (iv) HCMLP's interest was diluted from 1.639% to 0.80%.

28. Publicly available records indicate that the MP Charity was formed in December 2024 and is based out of Mr. Patrick's home.

29. Additionally, the Supporting Organizations and the Charitable Entities learned that Mr. Patrick had caused the formation of another new entity, CDMCFAD, LLC ("CDMCFAD"), which was secretly inserted into the charitable organization structure. CDMCFAD is nominally a new wholly-owned subsidiary of the Fund, though, like the MP Charity, it is based out of Mr. Patrick's home. Upon information and belief, Mr. Patrick then caused the Fund to transfer its 100% interests in Charitable DAF Fund, LP to CDMCFAD. On March 27, 2025, the Fund's interest in CDMCFAD was purportedly redeemed for proceeds totaling $1,612,192.00 to be distributed to the Fund's participating interest holders.

30. In light of the existing liquidation and with these newly discovered facts, the Supporting Organizations amended their Cayman Petition to request that liquidation of the Fund continue under the supervision of the Cayman courts and that new independent, joint official liquidators be appointed to replace Kroll.

31. Following a hearing to consider the amended Cayman petition, the Cayman court entered its Supervision Order on May 6, 2025, and appointed Margo MacInnis and Sandipan Bhowmik as Joint Official Liquidators.[4]

---

[4] Mr. Patrick's chosen liquidators, Kroll, withdrew their consent to nomination prior to a May 5, 2025, hearing to consider the amended petition.

OBJECTION OF THE DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE, LTD. TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING ACTIONS CONSISTENT THEREWITH – Page 11 –

4903-0158-0364, v. 5