# Exhibit 32

# Judicial Council for the Fifth Circuit

Complaint Number: 05-26-90042

IN RE COMPLAINT OF JUDICIAL MISCONDUCT
UNDER THE JUDICIAL IMPROVEMENTS ACT OF 2002.

### ORDER

Complainant, former in-house counsel for a company, has filed a complaint alleging misconduct by a United States Bankruptcy Judge in the company's Chapter 11 bankruptcy case and related adversary proceedings.

Noting that he did not testify in the company's bankruptcy case and appeared as a witness before the judge only once in a prior bankruptcy proceeding of a different company, Complainant contends that the judge "has developed a bias against [him] and the hedge fund industry which employs him," and that bias "has manifested in abusive and harassing behavior and discrimination towards [him]." Complainant's specific allegations are addressed below.

*Comments Regarding Stalking Lawsuit*

Complainant states that he filed a lawsuit in state court in which he made claims that a former employee of the company was liable for stalking him. Complainant takes issue with comments made by the judge during a hearing regarding whether men could be subject to stalking. Complainant also alleges that the judge referred to his stalking lawsuit in "scare-quotes" in an order on a motion to recuse filed in the bankruptcy case and cited the

1

lawsuit as an example of how things had gotten "contentious" and "seemingly personal" among different parties involved in the bankruptcy.

Complainant claims that the foregoing comments and actions are "harassing and discriminatory" and violate Rules 4(a)(2) and (3) of the Rules for Judicial-Conduct and Judicial-Disability Proceedings ("JC&D Rules").

JC&D Rule 4(a) defines cognizable misconduct as "conduct prejudicial to the effective and expeditious administration of the business of the courts." Under Rule 4(a)(2)(B),[1] cognizable misconduct includes "treating litigants ... or others in a demonstrably egregious and hostile manner." Under Rule 4(a)(3), cognizable misconduct "includes intentional discrimination on the basis of race, color, sex, gender, gender identity, pregnancy, sexual orientation, religion, national origin, age, or disability."

Pursuant to JC&D Rule 11(b), I requested a written response to the complaint from the judge. In her response, the judge admitted to making the comments cited in the complaint and explained her view as to why they had not been unreasonable or improper. She also pointed to the fact that Complainant had not sought any relief associated with the alleged stalking.

In subsequent communications with me regarding this complaint, the judge acknowledged that comments based on stereotypes about who can or cannot suffer harassment are not appropriate and agreed to refrain from making such comments in the future. I find that this action constitutes appropriate corrective action that acknowledges and remedies the problems raised by the complaint. *See* Rule 11(d).

This aspect of the complaint is therefore subject to conclusion under 28 U.S.C. § 352(b)(2) (a chief judge may "conclude the proceeding if the chief judge finds that appropriate corrective action has been taken or that

---

[1] Though Complainant references Rule 4(a)(2) generally, only subsection B of that rule is potentially applicable.

2

action on the complaint is no longer necessary because of intervening events").

*Comments and Opinions Regarding Complainant's Integrity and Character*

Complainant also takes issue with negative comments made about his character and credibility and actions against him taken by the judge during hearings. Complainant states that at one hearing, the judge enjoined him and his subordinate from sharing confidential information they received as in-house attorneys for the company without permission, even though they were not parties to the adversary proceeding and they were not present at the hearing.

Complainant states that the judge's "willingness to make credibility assessments about [him] without hearing from him is evidence of her repeated animus, and has otherwise caused a loss of public confidence in the Court as an instrument of justice" in violation of Rule 4(a)(2)(B) of the JC&D Rules. Though Complainant frames the judge's statements as "mak[ing] credibility assessments about [him] without hearing from him," Complainant appears to be alleging that the judge formed a negative view or bias against him based on her prior dealings with him in a prior bankruptcy proceeding. The Supreme Court has long recognized that "opinions formed by [a] judge on the basis of facts introduced or events occurring in the course of the current proceedings, *or of prior proceedings*, do not constitute a basis for a bias or partiality motion . . . ." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis added). Further, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* This includes "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men

3

and women, even after having been confirmed as federal judges, sometimes display." *Id.* at 555–56.[2]

The judge's alleged opinions of Complainant and her related comments are consistent with the types of comments and efforts at judicial administration described in *Liteky* that do not constitute evidence of improper judicial bias. For the same reasons, the comments are not demonstrably egregious or hostile under JC&D Rule 4(a)(2)(B) or "prejudicial to the effective and expeditious administration of the business of the courts" under 28 U.S.C. § 351(a).

These allegations are therefore subject to dismissal under 28 U.S.C. § 352(b)(1)(A)(iii) as "lacking sufficient evidence to raise an inference that misconduct has occurred." To the extent these allegations are "directly related to the merits of a decision or procedural ruling," they are subject to dismissal under 28 U.S.C. § 352(b)(1)(A)(ii).

*The Judge's Novels*

Complainant contends that the judge has "expressed overtly hostile views toward the hedge fund industry" in two fictional novels she authored, and that there are many parallels between the judge and the novels' protagonist. Complainant states that the company's bankruptcy proceeding and the bankruptcy proceeding of another company "have many parallels to these books, such that [the judge] appears to be making negative and hostile commentary through her books concerning the litigants in her court." He therefore accuses her of bias against the hedge fund industry and the litigants in these proceedings that is "reasonably likely to lower public confidence in

---

[2] In a similar vein, the Committee on Codes of Conduct of the Judicial Conference of the United States, Advisory Opinion 66, June 2009, provides: "Strongly stated judicial views rooted in the record, a stern and short-tempered judge's efforts at court administration, expressions of impatience, dissatisfaction, annoyance and even anger directed to an attorney or a party should not be confused with judicial bias." Guide to Judiciary Policy, Vol. 2B, Ch. 2, at 95.

4

her ability to fairly adjudicate, and in turn, have a prejudicial effect on the administration of the court," in violation of Rule 4(a)(7) of the JC&D Rules.

JC&D Rule 4(a)(7) states that "[c]ognizable misconduct includes conduct occurring outside the performance of official duties if the conduct is reasonably likely to have a prejudicial effect on the administration of the business of the courts, including a substantial and widespread lowering of public confidence in the courts among reasonable people."

In her response to my request to address the allegations in this complaint, the judge advised that: her novels are not about the company or anything that happened in the company's bankruptcy case; the references in her novels to hedge funds are "relatively infrequent"; such references are not "gleaned from knowledge or information from" the company's bankruptcy case; and that in the beginning of her novels she states that the opinions expressed or implied by the characters in her novels are not necessarily her opinions. The judge further states that she has presided "over countless cases in [her] lifetime and worked on even more, before becoming a judge, involving hedge funds, private equity funds, and exotic financial products" and that "[u]ntil now, [she] is not aware of anyone suggesting that [she] ha[s] shown any biases or animus where they are concerned."

The Fifth Circuit has also addressed the matter. In an appeal of a district court order denying their petition for mandamus, the company's former CEO and others challenged the judge's decision not to recuse in the company's bankruptcy proceedings. The Fifth Circuit opined that whether a reasonable reader and observer of these proceedings could question the judge's impartiality is debatable, and due to the similarities between the characters in the judge's novel and the litigants currently before her court, a strong argument could be made that she had a duty to recuse. Nonetheless, while noting that some similarities between the books and the cases before the judge may raise cause for concern, the court held that the similarities were

not close enough to find that the district court abused its discretion in denying the petition.

Regardless of the merits of these allegations, the issue of whether the judge's conduct amounts to misconduct under 28 U.S.C. § 351(a) need not be decided because she has taken appropriate corrective action that acknowledges and remedies the problems raised by the complaint. *See* JC&D Rule 11(d).

In communications with me regarding this complaint, the judge: assured me that her forthcoming novel does not involve subject matter that could reasonably be perceived as being based on matters pending before her or her work as a bankruptcy judge; agreed that any future extrajudicial writings will not include scenarios or subject matter that a reasonable person could assume are based on matters pending before her, or include characters that a reasonable person could assume are based on parties or witnesses in matters before her; agreed to complete three hours of ethics training, with a particular focus on avoiding conduct that might lead to the appearance of impropriety; and agreed to consult available ethics resources (e.g., codes of conduct, commentary, etc.) when ethical dilemmas arise in the future and, if questions remain after consulting those sources, to seek particularized guidance in the form of either informal guidance from the Fifth Circuit's representative on the Committee on Codes of Conduct of the Judicial Conference of the United States or from Committee counsel, or in the form of a confidential advisory opinion from the Committee.

While the judge remains steadfast that she has no bias or animus against any party in any matter pending before her, she has also recused herself from all matters related to the company's bankruptcy case that are currently pending before her.[3]

---

[3] Neither the judge's recusal nor anything in this order should be interpreted as an opinion or reflection on the merits of the judge's prior decision not to recuse, which has been addressed by the Fifth Circuit and is currently pending before the Supreme Court, or the validity of any decision, ruling, or order that she has issued in any judicial proceeding.

==I find, without regard to the veracity of the allegations in the complaint, that these actions constitute appropriate corrective action== that acknowledges and remedies the problems raised by the complaint. This aspect of the complaint is therefore subject to conclusion under 28 U.S.C. § 352(b)(2).

The complaint is CONCLUDED in part and DISMISSED in part, and this matter is hereby closed. An unredacted private order is entered simultaneously herewith.

Pursuant to JC&D Rules 23(b)(1) and (8), IT IS ORDERED that a copy of this order be published on the court's website forthwith.

*[signature]*

JENNIFER WALKER ELROD
*Chief Judge*