# Exhibit 52

No. 25-355

# In the Supreme Court of the United States

---

JAMES DONDERO; HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P.; THE DUGABOY INVESTMENT
TRUST; NEXPOINT REAL ESTATE PARTNERS, LLC; AND
GET GOOD TRUST, PETITIONERS

*v.*

STACEY G. JERNIGAN; HIGHLAND CAPITAL
MANAGEMENT, L.P., RESPONDENTS

---

*ON PETITION FOR WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT*

---

## PETITION FOR REHEARING

---

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue
Suite 400
Austin, Texas 78701
(512) 686-3940
jonathan@mitchell.law

MICHAEL J. EDNEY
*Counsel of Record*
J. PIERCE LAMBERSON
MARK C. INGRAM
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 955-1500
medney@hunton.com

*Counsel for Petitioners*

## TABLE OF CONTENTS

Table of contents ..................................................... i

Table of authorities ............................................... iii

Grounds for rehearing ............................................ 1

    I. Procedural summary ................................... 4

    II. The intervening Fifth Circuit Judicial
        Council "corrective action" of recusal
        warrants rehearing ................................... 7

    III. In the alternative, the Court should call for
        the views of the Solicitor General or grant,
        vacate, and remand ................................ 11

Conclusion ........................................................... 13

Certificate of counsel ......................................... 14

Appendix ......................................................................

## APPENDIX

Order of the Judicial Council for the Fifth
    Circuit, *In re Complaint of James D.*
    *Dondero Against Chief United States*
    *Bankruptcy Judge Stacey G.C. Jernigan*,
    No. 05-26-90041 (Dec. 29, 2025) .............................. 1a

Order of the Judicial Council for the Fifth
    Circuit, *In re Complaint of Judicial Mis-*
    *conduct Under the Judicial Improve-*
    *ments Act of 2002*, No. 05-26-90042 (Dec.
    29, 2025) ...................................................................... 6a

Order of the Judicial Council for the Fifth
    Circuit, *In re Complaint of Judicial Mis-*
    *conduct Under the Judicial Improve-*
    *ments Act of 2002*, No. 05-26-90043 (Dec.
    29, 2025) ................................................................... 14a

Order of the Judicial Council for the Fifth
Circuit, *In re Complaint of Judicial Misconduct Under the Judicial Improvements Act of 2002*, No. 05-26-90044 (Dec. 29, 2025)....................................................... 19a

Order of the Judicial Council for the Fifth
Circuit, *In re Complaint of Judicial Misconduct Under the Judicial Improvements Act of 2002*, No. 05-26-90045 (Dec. 29, 2025)....................................................... 25a

## TABLE OF AUTHORITIES

**Cases**

*Demodulation, Inc. v. United States,*
   114 Fed. Cl. 655 (Fed. Cl. 2014) ....................................13

*Highland Capital Management, L.P. v. NexPoint
   Advisors, L.P.,* No. 25-119 ..............................................11

*Liljeberg v. Health Servs. Acquisition Corp.,*
   486 U.S. 847 (1988) .........................................................10

**Statutes**

28 U.S.C. § 455 .....................................................................3, 8

28 U.S.C. § 455(a) ...................................................................3

**Rules**

Fifth Circuit Comment to Jud. Cond. & Jud. Disab.
   Proc. R. 4.2. .....................................................................12

Jud. Cond. & Jud. Disab. Proc. R. 11(g)(2) .......................5

Jud. Cond. & Jud. Disab. Proc. R. 24(1) ............................5

Jud. Cond. & Jud. Disab. Proc. R. 24(5) ............................5

Sup. Ct. R. 44.2 ................................................................2, 7

# In the Supreme Court of the United States

———————

No. 25-355

JAMES DONDERO; HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P.; THE DUGABOY INVESTMENT
TRUST; NEXPOINT REAL ESTATE PARTNERS, LLC; AND
GET GOOD TRUST, PETITIONERS

*v.*

STACEY G. JERNIGAN; HIGHLAND CAPITAL
MANAGEMENT, L.P., RESPONDENTS

———————

*ON PETITION FOR WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT*

———————

## PETITION FOR REHEARING

———————

Petitioners James Dondero; Highland Capital Man-
agement Fund Advisors, L.P; The Dugaboy Investment
Trust; NexPoint Real Estate Partners, LLC; and Get
Good Trust respectfully petition for rehearing of this
Court's order of January 12, 2026, denying their petition
for writ of certiorari.

### GROUNDS FOR REHEARING

The question presented is whether a trial judge's de-
cision not to recuse should be reviewed for abuse of dis-
cretion when presented on direct review (and a clear and

(1)

2

indisputable abuse of discretion when presented on man-
damus) or *de novo*. Nearly every circuit had weighed in on
this fully mature split of authority, with the Fifth Circuit
and some others taking the former position, the Seventh
Circuit the latter, and still others reviewing recusal decli-
nations solely for an abuse of discretion even on manda-
mus.

The split of circuit authority was squarely presented
by the decision of the Fifth Circuit declining mandamus
relief against a bankruptcy judge's failure to recuse on
grounds of having written novels denigrating the hedge-
fund industry and a character similar to a hedge-fund
manager party before her. The Fifth Circuit held that
"due to similarities between the parties and the charac-
ters in her novels, a strong argument could be made that
[the bankruptcy judge] had a duty to recuse," but that
strong argument did not amount to the clear and indisput-
able abuse of discretion required for mandamus relief.
Pet. App. 17a.

"[I]ntervening circumstances of a substantial or con-
trolling effect" warrant rehearing of the petition's denial.
Sup. Ct. R. 44.2. Since the Court's decision, Petitioners re-
ceived Fifth Circuit Judicial Council resolutions of judicial
complaints regarding the bankruptcy judge's novels. In
those resolutions, the Fifth Circuit Chief Judge arranged
for extensive corrective action and required the judge to
recuse herself from any issues in the Highland bank-
ruptcy going forward.

So the judge's novels have now given rise both to a
"strong argument . . . that she had a duty to recuse" and
to "corrective action" addressing "conduct occurring

3

outside the performance of official duties" leading to a "substantial and widespread lowering in public confidence in the courts among reasonable people." Pet. App. 17a; App. 10a. The former led the Fifth Circuit merits panel to deny mandamus relief. Yet the latter led the Fifth Circuit Chief Judge to effectuate the bankruptcy judge's recusal—but only from future proceedings in the bankruptcy while leaving her tainted past rulings in place.

These intersecting and conflicting standards and outcomes would send Franz Kafka to his typewriter. It is now apparent that the judge should have recused from the get-go due to her novels, because her "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Only the standard of review is preventing the Fifth Circuit from reversing the judge's refusal to recuse now and vacating her decisions made while acting outside the limits Congress set.

This intervening event also highlights the anomalies wrought by the circuit split on the standard of review for recusal decisions. The judge's decision not to recuse would have been reversed through mandamus if this case were in Chicago. It stands for the time being because this case was in Dallas. This Court should grant rehearing and set the case for argument to resolve this split of circuit authority.

In the alternative, the Court should grant rehearing and call for the views of the Solicitor General, or (at the very least) grant the petition for certiorari and vacate and remand so the Fifth Circuit may reconcile its decision with the intervening judicial conduct resolution entered by its Chief Judge.

4

## I.  PROCEDURAL SUMMARY

Until a few weeks ago, Judge Stacey Jernigan had been presiding over bankruptcy cases involving hedge-fund entities associated with James Dondero. While doing so, she wrote two novels with a protagonist bankruptcy judge pitted against a negatively portrayed character similar to Mr. Dondero. Pet. at 6–12.

In the pending case, Mr. Dondero sought temporary bankruptcy protection for one of his hedge funds — Highland Capital Management — to have time to sell assets to satisfy an unanticipated judgment. The case was transferred to Judge Jernigan because she was familiar with Mr. Dondero's businesses. On the first day, Judge Jernigan urged Mr. Dondero's removal from management. She later converted the restructuring into an unnecessary, multi-year liquidation.

When they became aware of the novels, Mr. Dondero and others unsuccessfully asked Judge Jernigan to recuse from the Highland bankruptcy. Mr. Dondero then sought mandamus from the district court and appealed the district court's denial to the Fifth Circuit.

The Fifth Circuit acknowledged that "a strong argument could be made that [Judge Jernigan] had a duty to recuse" on account of the novels. Pet. App. 17a. But that strong argument was not enough to warrant mandamus given the Fifth Circuit's decision to apply deferential rather than de novo review. *Id.* at 8a.

Petitioners sought review in this Court, but the Court denied certiorari on January 12, 2026.

Since the completion of briefing, there were material developments from the Fifth Circuit Judicial Council of

5

which the Petitioners and this Court were not aware. Mr.
Dondero, various former Highland managers, and others
negatively affected by the bankruptcy had previously
filed five judicial conduct complaints with the Fifth Circuit
Judicial Council. The Judicial Council took no action on
them for more than two years. In papers dated December
29, 2025, the Chief Judge of the Fifth Circuit resolved the
complaints, while fully aware of the pending petition in
this Court. App. 12a n.3.

Judicial conduct complaints are handled with some
confidentiality. After resolution, the Fifth Circuit mails an
unredacted version to the complainant. Then it posts on
its website a redacted resolution that anonymizes the
complainant and judge. Jud. Cond. & Jud. Disab. Proc. R.
11(g)(2), 24(1), 24(5). A former Highland manager re-
ceived one resolution in the mail during the week of Jan-
uary 5, 2026, and brought it to Petitioners' counsel. That
resolution concerned, not Judge Jernigan's novels, but
her public statements about the recusal controversy. Peti-
tioners alerted the Court to this development on January
8, 2026, the day before the conference on the certiorari pe-
tition.

On January 13, Petitioners' counsel learned that the
Fifth Circuit had, at some point, posted on its website four
other resolutions that, although anonymized, appeared to
involve Judge Jernigan. Three of them addressed the
judge's novels. Mr. Dondero and a former in-house coun-
sel for Highland were complainants in two of the four and
requested unredacted resolutions, one of which was re-
ceived during the week February 2, 2026, and appears in
the appendix.    App. 1a–5a.    The other concerns the

6

redacted resolution at App. 6a–13a and will be lodged with
the Court when it arrives.

The books-related resolutions applied Federal Judi-
cial-Conduct and Judicial-Disability Discipline Proceed-
ings Rule 4(a)(7), which regulates "conduct occurring out-
side the performance of judicial duties" that "is reasona-
bly likely to have a prejudicial effect on the administration
of the courts, including a substantial and widespread low-
ering in public confidence in the courts among reasonable
people." App. 10a. The Chief Judge concluded that the
complaints should be resolved through "corrective action"
worked out with subject judge, rather than referral to a
special committee to impose sanctions. That corrective ac-
tion included assurances that Judge Jernigan would never
again publish "extrajudicial writings . . . that a reasonable
person could assume are based on matters before her or
characters that a reasonable person could assume are
based on parties or witnesses in matters before her[.]"
App. 11a. The resolution also mandated "three hours of
ethics training, with a particular focus on avoiding con-
duct that might lead to the appearance of impropriety[.]"
*Id.* at 27a.

Finally, the corrective action resulted in Judge Jerni-
gan "recus[ing] herself from all matters related to [High-
land Capital's] bankruptcy case that are currently pend-
ing before her." *Id.* at 27a–28a. With respect to this last
remedy, the Chief Judge noted that it "should not be in-
terpreted as an opinion or reflection on the merits of the
judge's prior decision not to recuse . . . or on the validity
of any decision, ruling, or order she has issued in any ju-
dicial proceeding," because those issues are pending

7

before or would be addressed by this Court or in other judicial proceedings. *Id.* at 28a n.1.

This resolution was unusually serious. Only three other of the more than 400 Fifth Circuit judicial complaints resolved since December 2019 have been resolved by the Chief Judge through corrective action, rather than a finding of insubstantiality. The Fifth Circuit's Chief Judge has not referred a complaint to a special committee for imposition of sanctions since 2015.

## II. THE INTERVENING FIFTH CIRCUIT JUDICIAL COUNCIL "CORRECTIVE ACTION" OF RECUSAL WARRANTS REHEARING

The Fifth Circuit Judicial Council's "corrective action" providing for Judge Jernigan's recusal due to her novels is a "intervening circumstance[ ] of a substantial or controlling effect" that merits rehearing. Sup. Ct. R. 44.2. Granting rehearing comes with three options: (1) granting the petition and setting the case for merits briefing and oral argument; (2) granting rehearing and calling for the views of the Solicitor General on whether merits review should be granted; or (3) granting the petition, vacating the order below, and remanding for consideration in light of the Fifth Circuit Judicial Council's action. The Court should grant merits review (either now or after seeking the Solicitor General's views), as this intervening event highlights the inefficient chaos of the Fifth Circuit's deferential standards for reviewing refusals to recuse. At a minimum, however, the decision below should vacated and remanded so that the Fifth Circuit can reconcile it with the Chief Judge's corrective action.

8

The current state of affairs has produced an intolerably contradictory set of legal standards governing recusal, depending on the setting. First, there is the standard when a party asks a judge to recuse, or when a judge discovers grounds for her own recusal. There, Congress requires a judge to recuse in a series of circumstances, including where her "impartiality might reasonably be questioned." 28 U.S.C. § 455. That was not an invitation to exercise judgment. It was a statutory mandate, underscored by Congress's use of the command "shall disqualify himself." *Id.*

Second, there is what to do when the judge rejects a request for recusal. In a lengthy case, that means either (i) years of rulings by an officer who Congress said could not act as a judge; or (ii) seeking review of the decision on mandamus. Because of the inefficiency of years of litigation and scores of likely void rulings by an unfit judicial officer, the circuits have universally held that recusals are the type of rulings for which mandamus is appropriate. The Fifth Circuit will intervene on mandamus, but only when a refusal to recuse was an "abuse of discretion" that was "clear and indisputable." Pet. App. 8a. The Third Circuit does not add another layer of deference on mandamus, reversing recusal denials if they were an "abuse of discretion." And the Seventh Circuit reviews the decisions *de novo*, noting that Congress made recusal mandatory in certain circumstances, that judges are particularly ill-suited to evaluate their own conduct providing grounds for recusal, and the inefficiency of letting non-recusal errors linger until the end of the case. *See* Pet. at 17–19.

9

Third, there is review of decisions not to recuse at the end of the case, after final judgment. The First, Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Eleventh, D.C., and Federal Circuits review those for an abuse of discretion. The Seventh Circuit reviews those *de novo*. *See* Pet. at 19–23.

Fourth is where a party has filed a judicial conduct complaint. That goes to a circuit's judicial council and, for most every case, is resolved by the circuit's chief judge. Jud. Cond. & Jud. Disab. Proc. R. 11. Judicial conduct complaints are supposed to be failsafe supplements to remedies for structural issues in a case—including problems with judicial impartiality—by motion practice, contested by the parties, in that case. *Id.* at R. 3(h). For that reason, judicial conduct complaints cannot be used to overturn or directly affect the validity of decisions made in a case. But when "extrajudicial conduct" leads to a decrease of "public confidence" in the courts, the Chief Judge can arrange for "corrective action" that recuses the subject judge from the case going forward. As here, the effect can only be prospective, with the reversal or invalidation of a historical recusal declination or decisions left to requests for relief in the case in question. App. 28a n.1.

These four strands are tied into an ugly knot that is bad for judicial economy and public confidence in the judiciary. The same set of facts should not lead to such disparate outcomes depending on the standard of review. The quickest route to the partial relief of a prospective recusal should not be a judicial conduct complaint, which gets resolved at the pleasure of a circuit's judicial council. Here, the Chief Judge took *three years*. And it is unlikely

10

a coincidence that the resolutions occurred days before the Court's conference in this case. App. 1a.

But the knot is not Gordian, to be untied only by a future ruler who does not exist.[1] This Court, today, has the power to untangle it. And it can do so by granting the petition, ordering merits briefing, and clarifying how the judiciary polices itself under a standard of appellate review tailored to the situation. Doing so would resolve a fully developed split of circuit authority that is leading to unsightly outcomes.

This is not just a cosmetic issue. It goes directly to the public confidence in the judiciary, a value this Court repeatedly has granted merits review to preserve. *E.g., Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988).

Unlike federal courts outside the Seventh Circuit, the Judicial Council does not apply deferential review when deciding whether a judge has violated the canons or rules governing judicial conduct. Nor could it, as the Judicial Council decides complaints against judges in the first instance, rather than formally reviewing decisions by the judge against whom the accusations are made. It makes no sense for federal appellate courts deferentially to review for an abuse-of-discretion a judge's decision not to recuse and its consequences inside a case, when the

---

1.   In Greek mythology, the Gordian knot was tied to an oxcart and could only be unwound by the future ruler of Asia. Alexander the Great solved the problem by slicing through it with a sword. Oxford Advanced American Dictionary, *Gordian Knot*, 2026, https://www.oxfordlearnersdictionaries.com/definition/american_english/gordian-knot (last accessed Jan. 30, 2026).

11

judge's same conduct is reviewed de novo by the Judicial Council.

## III. IN THE ALTERNATIVE, THE COURT SHOULD CALL FOR THE VIEWS OF THE SOLICITOR GENERAL OR GRANT, VACATE, AND REMAND

If the Court is disinclined to resolve the questions presented at this time, then it should either grant rehearing and call for the views of the Solicitor General, or it should grant the petition for certiorari, vacate the decision below, and remand so the Fifth Circuit can reconcile the merits panel decision with the Judicial Council's resolution.

The Court has already called for the views of the Solicitor General in a petition arising from the same case—*Highland Capital Management, L.P. v. NexPoint Advisors, L.P.*, No. 25-119.  There, the petitioners are asking this Court to rule on the legality and scope of the "gatekeeper" and "exculpation" provisions in the bankruptcy court's confirmation plan entered by the same judge in question.[2] It is similarly appropriate for the Solicitor General to weigh in on the certworthiness of the recusal issues, which are intertwined with the provisions in the confirmation plan that the petitioners in *Highland* are asking this Court to review. The "gatekeeper" and "exculpation" provisions were initially adopted by the now-recused Judge Jernigan, and her forced recusal has implications not only for Mr. Dondero's petition but for the petition in

---

2.  An "exculpation provision" shield entities from liability for actions taken in connection with the bankruptcy. A "gatekeeper provision" requires bankruptcy-court approval before any legal action can proceed against protected entities, even when that legal action is initiated in other courts.

12

*Highland* as well. Indeed, the Fifth Circuit Judicial Council's corrective action of recusal will present a vehicle problem for this Court's review of any Jernigan-approved order or decision in the Highland bankruptcy, as the parties argue about the consequences of recusal on the validity of her prior rulings. The Solicitor General should weigh in on — and this Court should have benefit of a full view of — the intertwined effect of the issues presented in the two petitions arising from the Highland case.

Importantly, the recusal issue is not just some run-of-the-mill other issue in the case below.  It presents a fully mature split of circuit authority.

At the very least, the Court should grant certiorari and vacate and remand for the Fifth Circuit to reconsider its ruling in the wake of the Judicial Council resolutions.

How the Fifth Circuit's standards for review of recusal decisions and their application in this case interact with the Circuit's own judicial conduct process is a relevant judicial policy question. Indeed, a principal reason the Chief Judge did not arrange for retrospective relief due to the book, reversing the non-recusal decision and addressing the validity of prior decisions entered by the judge, is because the judicial conduct complaint process does not permit it.  Fifth Circuit Comment to Jud. Cond. & Jud. Disab. Proc. R. 4.2.  The Fifth Circuit sitting as court of review should have an opportunity to reconcile its ruling with the Chief Judge's remedy in resolving the judicial conduct complaint. After all, "if the orders of the now-recused judge were allowed to stand," parties and the public "could one day wonder whether the outcome of the case was influenced by a judge who later recused herself from

13

the case." *Demodulation, Inc. v. United States*, 114 Fed.
Cl. 655, 657 (Fed. Cl. 2014).

## CONCLUSION

The petition for rehearing should be granted.

Respectfully submitted.

| | |
|---|---|
| JONATHAN F. MITCHELL | MICHAEL J. EDNEY |
| Mitchell Law PLLC | *Counsel of Record* |
| 111 Congress Avenue | J. PIERCE LAMBERSON |
| Suite 400 | MARK C. INGRAM |
| Austin, Texas 78701 | Hunton Andrews Kurth LLP |
| (512) 686-3940 | 2200 Pennsylvania Avenue NW |
| jonathan@mitchell.law | Washington, D.C. 20037 |
| | (202) 955-1500 |
| February 6, 2026 | medney@hunton.com |

14

**CERTIFICATE OF COUNSEL**

I certify that this petition for rehearing is presented in good faith and not for delay, and that it is restricted to the grounds specified in Supreme Court Rule 44.2.

<u>/s Michael J. Edney</u>
MICHAEL J. EDNEY

# APPENDIX

Order of the Judicial Council for the Fifth Circuit, *In re Complaint of James D. Dondero Against Chief United States Bankruptcy Judge Stacey G.C. Jernigan*, No. 05-26-90041 (Dec. 29, 2025)................................ 1a

Order of the Judicial Council for the Fifth Circuit, *In re Complaint of Judicial Misconduct Under the Judicial Improvements Act of 2002*, No. 05-26-90042 (Dec. 29, 2025)....................................................... 6a

Order of the Judicial Council for the Fifth Circuit, *In re Complaint of Judicial Misconduct Under the Judicial Improvements Act of 2002*, No. 05-26-90043 (Dec. 29, 2025)....................................................... 14a

Order of the Judicial Council for the Fifth Circuit, *In re Complaint of Judicial Misconduct Under the Judicial Improvements Act of 2002*, No. 05-26-90044 (Dec. 29, 2025)....................................................... 19a

Order of the Judicial Council for the Fifth Circuit, *In re Complaint of Judicial Misconduct Under the Judicial Improvements Act of 2002*, No. 05-26-90045 (Dec. 29, 2025)....................................................... 25a

1a

United States Court of Appeals
Fifth Circuit

**FILED**

**December 29, 2025**

**Lyle W. Cayce**
**Clerk**

## JUDICIAL COUNCIL
## FOR THE FIFTH CIRCUIT

———————————

Complaint No. 05-26-90041

———————————

IN RE COMPLAINT OF JAMES D. DONDERO AGAINST
CHIEF UNITED STATES BANKRUPTCY JUDGE
STACEY G.C. JERNIGAN,
NORTHER DISTRICT OF TEXAS
UNDER THE JUDICIAL IMPROVEMENTS ACT OF 2002.

———————————

### ORDER

James D. Dondero ("Dondero") has filed a complaint alleging misconduct by Chief United States Bankruptcy Judge Stacey G. C. Jernigan, Northern District of Texas, in *In re Highland Capital Management) L.P.*, No. 19-BK-34054 (Bankr. N.D. Tex.) *("In re Highland"),* a Chapter 11 bankruptcy proceeding. *In re Highland* was filed by Highland Capital Management, L.P. ("Highland"), an investment firm that managed billion-dollar, publicly-traded investment portfolios for nearly three decades. *See Dondero v. Jernigan,* No. 24-10287, 2025 WL 1122466, at *1 (5th Cir. Apr.16, 2025). Dondero is the former chief executive officer of Highland. *See id.*

2a

In his complaint, Dondero contends that prior to presiding over *In re Highland*, Chief Judge Jernigan presided over a bankruptcy proceeding filed by Acis Capital Management, L.P.[1] ("Acis"), in which Highland participated. *See In re Acis Cap. Mgmt.) LP*, No. 18-BK-30264 (Bankr. N.D. Tex.) *("In re Acis")*. Dondero alleges that Chief Judge Jernigan formed negative impressions of and bias against Dondero and his affiliates while presiding over *In re Acis*. As evidence of the alleged bias, Dondero references Chief Judge Jernigan's post-trial "Findings of Fact and Conclusions of Law" issued in *In re Acis*, which discredited certain testimony of Dondero and generally questioned the credibility of Dondero and former in-house Highland attorneys Scott Ellington and Isaac Leventon, all of whom testified on behalf of Acis. Dondero further alleges that Chief Judge Jernigan referred to a lawsuit that she improperly attributed to Dondero as "vexatious" during *In re Acis*.

According to Dondero, the bias formed by Chief Judge Jernigan during *In re Acis*, along with her reliance on information that she learned in *In re Acis*, has resulted in consistent adverse rulings against him and his affiliates in *In re Highland*. Dondero alleges that Chief Judge Jernigan made *sua sponte* rulings that "targeted" him; "ignored corporate formalities to punish" entities perceived to be affiliated with Dondero; "single[d] out Dondero for negative treatment" during hearings and in rulings; intentionally disregarded rules and law to rule against Dondero; and "manipulate[d]" the Rules of Procedure to Dondero's detriment. In support, Dondero's complaint sets forth numerous examples of Chief Judge Jernigan's

---

1. Dondero formed Acis Capital Management, L.P., an SEC-registered investment advisor, along with two other individuals.

3a

adverse rulings and critical comments made during judicial proceedings in *In re Highland.*

Many of Dondero's allegations call into question the correctness of Chief Judge Jernigan's decisions and rulings. To the extent the allegations relate directly to the merits of decisions or procedural rulings, they are subject to dismissal under 28 U.S.C. § 352(b)(1)(A)(ii). The remaining allegations do not constitute "sufficient evidence to raise an inference that misconduct has occurred." *See* 28 U.S.C. § 352(b)(1)(A)(iii).[2]

As the Supreme Court has recognized, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the *current proceedings, or of prior proceedings,* do not constitute bias, unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."[3] *See Liteky v. United States,* 510 U.S. 540, 555 (1994) (emphasis added). Though "[a] judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards [a party,] . . . the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes . . . necessary to completion of the judge's task." *Id.* at 550–51.

─────────────

2.  While the allegations in Dondero's complaint alone do not raise an inference of bias, other individuals have submitted separate complaints with additional allegations against Chief Judge Jernigan regarding alleged bias against Dondero and his affiliates. Those allegations are addressed in the orders disposing of their respective complaints.

3.  "[N]ot subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings." *Liteky,* 510 U.S. at 551.

4a

In addition, remarks "that are critical or disapproving of" individuals involved in a lawsuit, even when "hostile," have been expressly found by the Supreme Court to be excluded from the characterization of "bias." *See id.* at 555. This includes "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display," as well as "[a] judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration." *Id.*[4]

The critical comments made by Chief Judge Jernigan during judicial proceedings and cited by Dondero, without more, fall squarely within the confines of *Liteky* and do not, on their face, display "deep-seated favoritism or antagonism that would make fair judgment impossible." *See id* at 555.

Regarding Dondero's suggestion that Chief Judge Jernigan's pattern of adverse rulings against him constitutes evidence of improper bias, Dondero fails to state a viable claim of misconduct because "[a]dverse decisions alone do not constitute evidence of bias." *Id.*

For these reasons, the complaint is subject to dismissal under 28 U.S.C. § 352(b)(1)(A)(iii) as "lacking sufficient evidence to raise an inference that misconduct has occurred."

---

4.  In a similar vein, the Committee on Codes of Conduct of the Judicial Conference of the United States, Advisory Opinion 66, June 2009, provides: "Strongly stated judicial views rooted in the record, a stern and short-tempered judge's efforts at court administration, expressions of impatience, dissatisfaction, annoyance and even anger directed to an attorney or a party should not be confused with judicial bias." Guide to Judiciary Policy, Vol. 2B, Ch. 2, at 95.

5a

The complaint is DISMISSED.

JENNIFER WALKER ELROD
*Chief Judge*

6a

United States Court of Appeals
Fifth Circuit

**FILED**

**December 29, 2025**

**Lyle W. Cayce**
**Clerk**

**JUDICIAL COUNCIL**
**FOR THE FIFTH CIRCUIT**

————————————

Complaint No. 05-26-90042

————————————

IN RE COMPLAINT OF JUDICIAL MISCONDUCT
UNDER THE JUDICIAL IMPROVEMENTS ACT OF 2002.

————————————

ORDER

Complainant, former in-house counsel for a company, has filed a complaint alleging misconduct by a United States Bankruptcy Judge in the company's Chapter 11 bankruptcy case and related adversary proceedings.

Noting that he did not testify in the company's bankruptcy case and appeared as a witness before the judge only once in a prior bankruptcy proceeding of a different company, Complainant contends that the judge "has developed a bias against [him] and the hedge fund industry which employs him," and that bias "has manifested in abusive and harassing behavior and discrimination towards [him]." Complainant's specific allegations are addressed below.

*Comments Regarding Stalking Lawsuit*

Complainant states that he filed a lawsuit in state court in which he made claims that a former employee of

7a

the company was liable for stalking him. Complainant
takes issue with comments made by the judge during a
hearing regarding whether men could be subject to stalk-
ing. Complainant also alleges that the judge referred to
his stalking lawsuit in "scare-quotes" in an order on a mo-
tion to recuse filed in the bankruptcy case and cited the
lawsuit as an example of how things had gotten "conten-
tious" and "seemingly personal" among different parties
involved in the bankruptcy.

Complainant claims that the foregoing comments and
actions are "harassing and discriminatory" and violate
Rules 4(a)(2) and (3) of the Rules for Judicial-Conduct and
Judicial-Disability Proceedings ("JC&D Rules").

JC&D Rule 4(a) defines cognizable misconduct as
"conduct prejudicial to the effective and expeditious ad-
ministration of the business of the courts." Under Rule
4(a)(2)(B),[1] cognizable misconduct includes "treating liti-
gants . . . or others in a demonstrably egregious and hos-
tile manner." Under Rule 4(a)(3), cognizable misconduct
"includes intentional discrimination on the basis of race,
color, sex, gender, gender identity, pregnancy, sexual ori-
entation, religion, national origin, age, or disability."

Pursuant to JC&D Rule 11(b), I requested a written
response to the complaint from the judge. In her re-
sponse, the judge admitted to making the comments cited
in the complaint and explained her view as to why they
had not been unreasonable or improper. She also pointed
to the fact that Complainant had not sought any relief as-
sociated with the alleged stalking.

In subsequent communications with me regarding this
complaint, the judge acknowledged that comments based

---

1.  Though Complainant references Rule 4(a)(2) generally, only sub-
    section B of that rule is potentially applicable.

8a

on stereotypes about who can or cannot suffer harassment
are not appropriate and agreed to refrain from making
such comments in the future. I find that this action consti-
tutes appropriate corrective action that acknowledges and
remedies the problems raised by the complaint. *See* Rule
11(d).

This aspect of the complaint is therefore subject to
conclusion under 28 U.S.C. § 352(b)(2) (a chief judge may
"conclude the proceeding if the chief judge finds that ap-
propriate corrective action has been taken or that action
on the complaint 1s no longer necessary because of inter-
vening events").

*Comments and Opinions Regarding Complainant's
Integrity and Character*

Complainant also takes issue with negative comments
made about his character and credibility and actions
against him taken by the judge during hearings. Com-
plainant states that at one hearing, the judge enjoined him
and his subordinate from sharing confidential information
they received as inhouse attorneys for the company with-
out permission, even though they were not parties to the
adversary proceeding and they were not present at the
hearing.

Complainant states that the judge's "willingness to
make credibility assessments about [him] without hearing
from him is evidence of her repeated animus, and has oth-
erwise caused a loss of public confidence in the Court as
an instrument of justice" in violation of Rule 4(a)(2)(B) of
the JC&D Rules. Though Complainant frames the judge's
statements as "mak[ing] credibility assessments about
[him] without hearing from him," Complainant appears to
be alleging that the judge formed a negative view or bias
against him based on her prior dealings with him in a prior

9a

bankruptcy proceeding. The Supreme Court has long recognized that "opinions formed by [a] judge on the basis of facts introduced or events occurring in the course of the current proceedings, *or of prior proceedings*, do not constitute a basis for a bias or partiality motion . . . ." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis added). Further, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* This includes "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id.* at 555–56.[2]

The judge's alleged opinions of Complainant and her related comments are consistent with the types of comments and efforts at judicial administration described in *Liteky* that do not constitute evidence of improper judicial bias. For the same reasons, the comments are not demonstrably egregious or hostile under JC&D Rule 4(a)(2)(B) or "prejudicial to the effective and expeditious administration of the business of the courts" under 28 U.S.C. § 351(a).

These allegations are therefore subject to dismissal under 28 U.S.C. § 352(b)(1)(A)(iii) as "lacking sufficient evidence to raise an inference that misconduct has occur-

---

2.    In a similar vein, the Committee on Codes of Conduct of the Judicial Conference of the United States, Advisory Opinion 66, June 2009, provides: "Strongly stated judicial views rooted in the record, a stern and short-tempered judge's efforts at court administration, expressions of impatience, dissatisfaction, annoyance and even anger directed to an attorney or a party should not be confused with judicial bias." Guide to Judiciary Policy, Vol. 2B, Ch. 2, at 95.

10a

red." To the extent these allegations are "directly related
to the merits of a decision or procedural ruling," they are
subject to dismissal under 28 U.S.C. § 352(b)(1)(A)(ii).

*The Judge's Novels*

Complainant contends that the judge has "expressed
overtly hostile views toward the hedge fund industry" in
two fictional novels she authored, and that there are many
parallels between the judge and the novels' protagonist.
Complainant states that the company's bankruptcy pro-
ceeding and the bankruptcy proceeding of another com-
pany "have many parallels to these books, such that [the
judge] appears to be making negative and hostile com-
mentary through her books concerning the litigants in her
court." He therefore accuses her of bias against the hedge
fund industry and the litigants in these proceedings that
is "reasonably likely to lower public confidence in her abil-
ity to fairly adjudicate, and in turn, have a prejudicial ef-
fect on the administration of the court," in violation of
Rule 4(a)(7) of the JC&D Rules. JC&D Rule 4(a)(7) states
that "[c]ognizable misconduct includes conduct occurring
outside the performance of official duties if the conduct is
reasonably likely to have a prejudicial effect on the admin-
istration of the business of the courts, including a substan-
tial and widespread lowering of public confidence in the
courts among reasonable people."

In her response to my request to address the allega-
tions in this complaint, the judge advised that: her novels
are not about the company or anything that happened in
the company's bankruptcy case; the references in her nov-
els to hedge funds are "relatively infrequent"; such refer-
ences are not "gleaned from knowledge or information
from" the company's bankruptcy case; and that in the be-
ginning of her novels she states that the opinions express-

11a

ed or implied by the characters in her novels are not nec-
essarily her opinions. The judge further states that she
has presided "over countless cases in [her] lifetime and
worked on even more, before becoming a judge, involving
hedge funds, private equity funds, and exotic financial
products" and that "[u]ntil now, [she] is not aware of any-
one suggesting that [she] ha[s] shown any biases or ani-
mus where they are concerned."

The Fifth Circuit has also addressed the matter. In an
appeal of a district court order denying their petition for
mandamus, the company's former CEO and others chal-
lenged the judge's decision not to recuse in the company's
bankruptcy proceedings. The Fifth Circuit opined that
whether a reasonable reader and observer of these pro-
ceedings could question the judge's impartiality is debat-
able, and due to the similarities between the characters in
the judge's novel and the litigants currently before her
court, a strong argument could be made that she had a
duty to recuse. Nonetheless, while noting that some simi-
larities between the books and the cases before the judge
may raise cause for concern, the court held that the simi-
larities were not close enough to find that the district
court abused its discretion in denying the petition.

Regardless of the merits of these allegations, the issue
of whether the judge's conduct amounts to misconduct un-
der 28 U.S.C. § 351(a) need not be decided because she
has taken appropriate corrective action that acknowl-
edges and remedies the problems raised by the complaint.
*See* JC&D Rule 11(d).

In communications with me regarding this complaint,
the judge: assured me that her forthcoming novel does not
involve subject matter that could reasonably be perceived
as being based on matters pending before her or her work

12a

as a bankruptcy judge; agreed that any future extrajudi-
cial writings will not include scenarios or subject matter
that a reasonable person could assume are based on mat-
ters pending before her, or include characters that a rea-
sonable person could assume are based on parties or wit-
nesses in matters before her; agreed to complete three
hours of ethics training, with a particular focus on avoid-
ing conduct that might lead to the appearance of impro-
priety; and agreed to consult available ethics resources
(e.g., codes of conduct, commentary, etc.) when ethical di-
lemmas arise in the future and, if questions remain after
consulting those sources, to seek particularized guidance
in the form of either informal guidance from the Fifth Cir-
cuit's representative on the Committee on Codes of Con-
duct of the Judicial Conference of the United States or
from Committee counsel, or in the form of a confidential
advisory opinion from the Committee.

While the judge remains steadfast that she has no bias
or animus against any party in any matter pending before
her, she has also recused herself from all matters related
to the company's bankruptcy case that are currently
pending before her.[3]

I find, without regard to the veracity of the allegations
in the complaint, that these actions constitute appropriate
corrective action that acknowledges and remedies the
problems raised by the complaint. This aspect of the com-
plaint is therefore subject to conclusion under 28 U.S.C.
§ 352(b)(2).

---

3.   Neither the judge's recusal nor anything in this order should be
     interpreted as an opinion or reflection on the merits of the judge's
     prior decision not to recuse, which has been addressed by the
     Fifth Circuit and is currently pending before the Supreme Court,
     or the validity of any decision, ruling, or order that she has issued
     in any judicial proceeding.

13a

The complaint is CONCLUDED in part and DISMISSED in part, and this matter is hereby closed. An unredacted private order is entered simultaneously herewith.

Pursuant to JC&D Rules 23(b)(1) and (8), IT IS ORDERED that a copy of this order be published on the court's website forthwith.


JENNIFER WALKER ELROD
*Chief Judge*

14a

United States Court of Appeals
Fifth Circuit

**FILED**

**December 29, 2025**

**Lyle W. Cayce**
**Clerk**

## JUDICIAL COUNCIL
## FOR THE FIFTH CIRCUIT

————————

Complaint No. 05-26-90043

————————

IN RE COMPLAINT OF JUDICIAL MISCONDUCT
UNDER THE JUDICIAL IMPROVEMENTS ACT OF 2002.

————————

## ORDER

Complainant, former in-house counsel for a company, has filed a complaint alleging misconduct by a United States Bankruptcy Judge involving two cases that both relate to a Chapter 11 bankruptcy proceeding filed by the company.

Complainant alleges that the judge made public comments about the merits of contested matters raised in the two pending cases in violation of Canons 3(A)(6) and 4 of the Code of Conduct for United States Judges and Rules 4(a)(1)[1] and 4(a)(7) of the Rules for Judicial-Conduct and Judicial Disability Proceedings ("JC&D Rules").[2]

---

1. Complainant cites JC&D Rule 4(a)(1) in his complaint. However, that rule's examples of cognizable misconduct are not relevant to the allegations in this complaint.

2. Canon 3(A)(6) provides that "[a] judge should not make public comment on the merits of a matter pending or impending in any
(continued…)

15a

Specifically, Complainant contends that the judge made comments to an online news organization addressing allegations that a character in her fictional novel was modeled after the former CEO of the company and a frequent participant in the legal proceedings related to the company bankruptcy. These comments were made while the two cases were pending-a motion to recuse and a petition for writ of mandamus filed in the two cases-that raised, in part, the issue of whether the judge should have recused from the bankruptcy due to the appearance of bias against the CEO created through her extrajudicial writings.

Pursuant to JC&D Rule 11(b), I invited the judge to respond to the complaint in writing. In her response, the judge stated that she had received many media requests asking her to comment about whether a character in her novel was based on the CEO and she responded to one e-mail from her personal e-mail account. She submitted a copy of the e-mail with her response.

This e-mail reflects that the judge expressly declined to comment on any pending case, denied that the novel

---

court." Canon 4, in relevant part, provides: "[A] judge should not participate in extra judicial activities that detract from the dignity of the judge's office, interfere with the performance of the judge's official duties, reflect adversely on the judge's impartiality, lead to frequent disqualification, or violate the limitations set forth below." *See* Guide to Judiciary Policy, Vol. 2A, Ch. 2. JC&D Rule 4(a) provides that "[m]isconduct is conduct prejudicial to the effective and expeditious administration of the business of the courts." JC&D Rule 4(a)(7) provides that "[c]ognizable misconduct includes conduct occurring outside the performance of official duties if the conduct is reasonably likely to have a prejudicial effect on the administration of the business of the courts, including a substantial and widespread lowering of public confidence in the courts among reasonable people."

16a

was about a pending case or litigant, and explained gener-
ally the plot of the novel. While the article states that the
judge addressed the [then-pending] recusal motion, the
judge's e-mail did not reference the recusal motion or any
filing in any case.

The judge stated that, at the time she made the com-
ments to the news organization, she did not perceive her
comments as being related to the merits of a pending ju-
dicial matter. Rather she intended her comments to stop
further media inquiries about her extrajudicial writings.
Lastly, the judge expressed sincere sorrow that anyone
would construe these comments as improper under the
circumstances.

In a later correspondence with me regarding this com-
plaint, the judge agreed to consult available ethics re-
sources (e.g., codes of conduct, commentary, etc.) when
ethical dilemmas arise in the future and, if questions re-
main after consulting those sources, to seek particularized
guidance in the form of either informal guidance from the
Fifth Circuit's representative on the Committee on Codes
of Conduct of the Judicial Conference of the United States
or from Committee counsel, or in the form of a confiden-
tial advisory opinion from the Committee.

Canon 3(A)(6) provides in pertinent part that "[a]
judge should not make public comment on the merits of a
matter pending or impending in any court." The Commen-
tary on Canon 3(A)(6) adds:

> The admonition against public comment about
> the merits of a pending or impending matter
> continues until the appellate process is com-
> plete. If the public comment involves a case
> from the judge's own court, the judge should
> take particular care so that the comment does

17a

not denigrate public confidence in the judici-
ary's integrity and impartiality, which would vi-
olate Canon 2A. A judge may comment publicly
on proceedings in which the judge is a litigant in
a personal capacity, but not on mandamus pro-
ceedings when the judge is a litigant in an offi-
cial capacity.

While the Code's Canons are instructive, 28 U.S.C.
§ 351 ("the Act") and the JC&D Rules are the governing
authority for determining what constitutes cognizable
misconduct. *See* Commentary to JC&D Rule 4. Those au-
thorities define misconduct as conduct "prejudicial to the
effective and expeditious administration of the business of
the courts." 28 U.S.C. § 351. An inadvertent, minor viola-
tion of the Code's specific rules, promptly remedied when
brought to the attention of the judge, might be a violation
of the Code, but might not rise to the level of misconduct
contemplated by the Act. *See* Commentary to JC&D Rule
4.

While there was overlapping subject matter between
the judge's comments to the news organization and the is-
sues pending in litigation, it is debatable whether her com-
ments constitute "comment[s] on the merits" of a pending
matter. Regardless, any potential violation of Canon
3(A)(6) under these particular facts was unintended and
minor and does not rise to the level of "conduct prejudicial
to the effective and expeditious administration of the busi-
ness of the courts." The complaint is therefore subject to
dismissal under 28 U.S.C. § 352(b)(1)(A)(iii) as "lacking
sufficient evidence to raise an inference that misconduct
has occurred."

In addition, the judge expressed remorse that her
statements could be construed as commenting on pending

18a

cases when she had made efforts to indicate that she could not comment on pending cases, and she promised to consult with available ethics resources when ethical dilemmas such as this arise in the future. This action constitutes appropriate corrective action. *See* Rule 11(d) (defining appropriate corrective action as voluntary action that acknowledges and remedies the problems raised by the complaint).

The complaint can therefore alternatively be concluded under 28 U.S.C. § 352(b)(2) (a chief judge may "conclude the proceeding if the chief judge finds that appropriate corrective action has been taken or that action on the complaint is no longer necessary because of intervening events").

The complaint is DISMISSED. An unredacted private order is entered simultaneously herewith.

Pursuant to JC&D Rules 23(b)(1) and (8), IT IS ORDERED that a copy of this order be published on the court's website forthwith.

JENNIFER WALKER ELROD
*Chief Judge*

19a

United States Court of Appeals
Fifth Circuit

**FILED**

**December 29, 2025**

**Lyle W. Cayce**
**Clerk**

**JUDICIAL COUNCIL**
**FOR THE FIFTH CIRCUIT**
_____

Complaint No. 05-26-90044
_____

IN RE COMPLAINT OF JUDICIAL MISCONDUCT
UNDER THE JUDICIAL IMPROVEMENTS ACT OF 2002.
_____

ORDER

Complainant, the President of a religious organization, has filed a complaint on behalf of the organization alleging misconduct by a United States Bankruptcy Judge in two corporate bankruptcy cases and an adversary case.

While the organization is not a litigant in any of the foregoing proceedings, Complainant states that the organization is concerned that one of the corporate bankruptcy debtors, which indirectly provides financial support to the organization, is subject to biased treatment by the judge in the adversary proceeding because she maintains negative views of the debtor's former chief executive officer, those associated with him, and "the hedge fund industry in general." Complainant bases this claim on the contents of two fictional novels authored by the judge. Complainant also takes issue with the judge's marketing of her novels.

20a

*Alleged bias against participants in the bankruptcy and related proceedings*

Complainant alleges that one of the judge's novels contains negative depictions of hedge funds and a hedge fund manager character) and that the judge used information obtained in the bankruptcy proceedings in her novels. He notes that there are substantial similarities between the novels and the bankruptcy proceedings, including the fact that both feature hedge funds with the same types of asset holdings and the similarities between the judge and the novels' main character. Complainant contends the novels are evidence that the judge is biased against the corporate-debtor's CEO and the hedge fund industry.

Pursuant to Rule 11(b) of the Rules for Judicial-Conduct and Judicial Disability Proceedings ("JC&D Rules"), I requested a written response to the complaint from the judge. In her response, the judge advised that: her novels are not about anyone or anything that happened in any litigation before her; the references in her novels to hedge funds are "relatively infrequent"; and that in the beginning of her novels she states that the opinions expressed or implied by the characters in her novels are not necessarily her opinions. The judge further states that she has presided "over countless cases in [her] lifetime and worked on even more, before becoming a judge, involving hedge funds, private equity funds, and exotic financial products" and that "[u]ntil now, [she] is not aware of anyone suggesting that [she] ha[s] shown any biases or animus where they are concerned."

The Fifth Circuit has also addressed the matter. In an appeal of a district court order denying their petition for mandamus, the former CEO of one of the corporate debtors and others challenged the judge's decision not to re-

21a

cuse in the company's bankruptcy proceedings. The Fifth Circuit opined that whether a reasonable reader and observer of these proceedings could question the judge's impartiality is debatable, and due to the similarities between the characters in the judge's novel and the litigants currently before her court, a strong argument could be made that she had a duty to recuse. Nonetheless, while noting that some similarities between the books and the cases before the judge may raise cause for concern, the court held that the similarities were not close enough to find that the district court abused its discretion in denying the petition.

Regardless of the merits of these allegations, the issue of whether the judge's conduct amounts to misconduct under 28 U.S.C. § 351(a) need not be decided because she has taken appropriate corrective action that acknowledges and remedies the problems raised by the complaint. *See* JC&D Rule 11(d).

In communications with me regarding this complaint, the judge: assured me that her forthcoming novel does not involve subject matter that could reasonably be perceived as being based on matters pending before her or her work as a bankruptcy judge; agreed that any future extrajudicial writings will not include scenarios or subject matter that a reasonable person could assume are based on matters pending before her, or include characters that a reasonable person could assume are based on parties or witnesses in matters before her; agreed to complete three hours of ethics training, with a particular focus on avoiding conduct that might lead to the appearance of impropriety; and agreed to consult available ethics resources (e.g., codes of conduct, commentary, etc.) when ethical dilemmas arise in the future and, if questions remain after consulting those sources, to seek particularized guidance

22a

in the form of either informal guidance from the Fifth Circuit's representative on the Committee on Codes of Conduct of the Judicial Conference of the United States or from Committee counsel, or in the form of a confidential advisory opinion from the Committee.

While the judge remains steadfast that she has no bias or animus against any party in any matter pending before her, she has also recused herself from all matters related to the company's bankruptcy case that are currently pending before her.[1] I find, without regard to the veracity of the allegations in the complaint, that these actions constitute appropriate corrective action that acknowledges and remedies the problems raised by the complaint. This aspect of the complaint is therefore subject to conclusion under 28 U.S.C. § 352(b)(2).

*Alleged use of position as a federal bankruptcy judge to market novels*

Complainant alleges that the judge used her position as a federal bankruptcy judge to promote the sale of her novels. Complainant notes that the back covers of the novels, as well as the "Author's Note" in one novel, indicate that she is a bankruptcy judge. Complainant further states that the judge "hosted a book club" for that novel at an event held by group of women bankruptcy professionals.

The Committee on Codes of Conduct of the Judicial Conference of the United States, Advisory Opinion 114,

---

1.   Neither the judge's recusal nor anything in this order should be interpreted as an opinion or reflection on the merits of the judge's prior decision not to recuse, which has been addressed by the Fifth Circuit and is currently pending before the Supreme Court, or the validity of any decision, ruling, or order that she has issued in any judicial proceeding.

23a

November 2014, addresses promotional activity associ-
ated with extrajudicial writings and publications and pro-
vides in pertinent part: "A judge may mention his or her
position, length of service, and court in a book jacket or in
other similar straightforward author summaries, pro-
vided that the identification is without embellishment and
appears in the context of other biographical information."
The judge's references to herself as a federal bankruptcy
judge on the back covers of her novels and in the "Au-
thor's Note" of one novel falls within this permissible ac-
tivity. This allegation is therefore subject to dismissal un-
der 28 U.S.C. § 352(b)(1)(A)(iii) as "lacking sufficient evi-
dence to raise an inference that misconduct has occurred."

Whether the judge's participation in the book club
event amounts to misconduct under 28 U.S.C. § 351(a)
need not be decided because she has taken appropriate
corrective action that acknowledges and remedies any
problem raised by this allegation. *See* JC&D Rule 11(d).

In communications with me regarding this complaint,
the judge: agreed that future promotional activity related
to her extrajudicial writings will be consistent with the
Code of Conduct for United States Judges and other rel-
evant ethical guidance, including refraining from market-
ing current or future books at a law firm or other similar
venue or using the prestige of judicial office to advance
the sale or marketing of her books; agreed to complete
three hours of ethics training, with a particular focus on
avoiding conduct that might lead to the appearance of im-
propriety; and agreed to consult available ethics resour-
ces (e.g., codes of conduct, commentary, etc.) when ethical
dilemmas arise in the future and, if questions remain after
consulting the resources, to seek particularized guidance
in the form of either informal guidance from the Fifth Cir-

24a

cuit's representative on the Committee on Codes of Con-
duct of the Judicial Conference of the United States or
from Committee counsel, or in the form of a confidential
advisory opinion from the Committee.

I find that these actions constitute appropriate correc-
tive action that acknowledges and remedies the problems
raised by the complaint. This aspect of the complaint is
therefore subject to conclusion under 28 U.S.C.
§ 352(b)(2).

The complaint is CONCLUDED in part and
DISMISSED in part, and this matter is hereby closed. An
unredacted private order is entered simultaneously here-
with.

Pursuant to JC&D Rules 23(b)(1) and (8), IT IS
ORDERED that a copy of this order be published on the
court's website forthwith.


JENNIFER WALKER ELROD
*Chief Judge*

25a

United States Court of Appeals
Fifth Circuit

**FILED**

**December 29, 2025**

**Lyle W. Cayce**
**Clerk**

**JUDICIAL COUNCIL**
**FOR THE FIFTH CIRCUIT**

———————————

Complaint No. 05-26-90045

———————————

IN RE COMPLAINT OF JUDICIAL MISCONDUCT
UNDER THE JUDICIAL IMPROVEMENTS ACT OF 2002.

———————————

ORDER

Complainant, who is involved in the hedge fund industry, has filed a complaint alleging misconduct by a United States Bankruptcy Judge regarding two novels she authored and alleged activity concerning the marketing of those novels.

*The Judge's Novels*

Complainant alleges that the judge is biased against the hedge fund industry and its participants as evidenced by her novels, which he alleges contain "sweeping negative commentary" about the hedge fund industry. Complainant claims that the novels were written while the judge presided over bankruptcy proceedings involving hedge funds and that substantial similarities exist between her and the novels' protagonist. Complainant asserts that the anti-hedge fund commentary in the novels "denigrates public confidence in the judiciary's integrity

26a

and impartiality" and is "prejudicial to the effective and expeditious administration of the business of the courts."

Pursuant to Rule 11(b) of the Rules for Judicial-Conduct and Judicial Disability Proceedings ("JC&D Rules"), I requested a written response to the complaint from the judge. In her response, the judge advised that: her novels are not about anyone or anything that happened in any litigation before her; the references in her novels to hedge funds are "relatively infrequent"; and that in the beginning of her novels she states that the opinions expressed or implied by the characters in her novels are not necessarily her opinions. The judge further states that she has presided "over countless cases in [her] lifetime and worked on even more, before becoming a judge, involving hedge funds, private equity funds, and exotic financial products" and that "[u]ntil now, [she] is not aware of anyone suggesting that [she] ha[s] shown any biases or animus where they are concerned."

The Fifth Circuit has also addressed the matter. In an appeal of a district court order denying their petition for mandamus, a company's former CEO and others challenged the judge's decision not to recuse in the company's bankruptcy proceedings based on the novels. The Fifth Circuit opined that whether a reasonable reader and observer of these proceedings could question the judge's impartiality is debatable, and due to the similarities between the characters in the judge's novel and the litigants currently before her court, a strong argument could be made that she had a duty to recuse. Nonetheless, while noting that some similarities between the books and the cases before the judge may raise cause for concern, the court held that the similarities were not close enough to find that the district court abused its discretion in denying the petition.

27a

Regardless of the merits of these allegations, the issue of whether the judge's conduct amounts to misconduct under 28 U.S.C. § 351(a) need not be decided because she has taken appropriate corrective action that acknowledges and remedies the problems raised by the complaint. *See* JC&D Rule 11(d).

In communications with me regarding this complaint, the judge: assured me that her forthcoming novel does not involve subject matter that could reasonably be perceived as being based on matters pending before her or her work as a bankruptcy judge; agreed that any future extrajudicial writings will not include scenarios or subject matter that a reasonable person could assume are based on matters pending before her, or include characters that a reasonable person could assume are based on parties or witnesses in matters before her; agreed to complete three hours of ethics training, with a particular focus on avoiding conduct that might lead to the appearance of impropriety; and agreed to consult available ethics resources (e.g., codes of conduct, commentary, etc.) when ethical dilemmas arise in the future and, if questions remain after consulting those sources, to seek particularized guidance in the form of either informal guidance from the Fifth Circuit's representative on the Committee on Codes of Conduct of the Judicial Conference of the United States or from Committee counsel, or in the form of a confidential advisory opinion from the Committee.

While the judge remains steadfast that she has no bias or animus against any party in any matter pending before her, she has also recused herself from all matters related

28a

to the company's bankruptcy case that are currently pending before her.[1]

I find, without regard to the veracity of the allegations in the complaint, that these actions constitute appropriate corrective action that acknowledges and remedies the problems raised by the complaint. This aspect of the complaint is therefore subject to conclusion under 28 U.S.C. § 352(b)(2).

*The Judge's Promotion of Her Novels*

Complainant also claims that the judge has improperly promoted her novels by stating in the biography section of her social media accounts that she is a federal bankruptcy judge and promoting the sale of her books on her social media accounts through purchase links and references to certain book reviews. In addition, Complainant contends that the judge improperly promoted one of the novels at an event hosted by a group of women bankruptcy professionals at a law firm.

The Committee on Codes of Conduct of the Judicial Conference of the United States, Advisory Opinion 114, November 2014, addresses promotional activity associated with extrajudicial writings and publications and provides in pertinent part: "A judge may mention his or her position, length of service, and court in a book jacket or in other similar straightforward author summaries, provided that the identification is without embellishment and appears in the context of other biographical information."

---

1.  Neither the judge's recusal nor anything in this order should be interpreted as an opinion or reflection on the merits of the judge's prior decision not to recuse, which has been addressed by the Fifth Circuit and is currently pending before the Supreme Court, or the validity of any decision, ruling, or order that she has issued in any judicial proceeding.

29a

To the extent that the judge references herself as a federal bankruptcy judge in the biography section of her social media accounts, this falls within the permissible activity discussed in Advisory Opinion 114. This allegation is therefore subject to dismissal under 28 U.S.C. § 352(b)(1)(A)(iii) as "lacking sufficient evidence to raise an inference that misconduct has occurred."

Whether the book reviews on the judge's social media accounts or her participation in the book club event amount to misconduct under 28 U.S.C. § 351(a) need not be decided because she has taken appropriate corrective action that acknowledges and remedies any problem raised by these allegations. *See* JC&D Rule 11(d).

In communications with me regarding this complaint, the judge advised me that she removed any book reviews from her social media account that were in question. The judge also: agreed that future promotional activity related to her extrajudicial writings will be consistent with the Code of Conduct for United States Judges and other relevant ethical guidance, including refraining from marketing current or future books at a law firm or other similar venue or using the prestige of judicial office to advance the sale or marketing of her books; agreed to complete three hours of ethics training, with a particular focus on avoiding conduct that might lead to the appearance of impropriety; and agreed to consult available ethics resources (e.g., codes of conduct, commentary, etc.) when ethical dilemmas arise in the future and, if questions remain after consulting the resources, to seek particularized guidance in the form of either informal guidance from the Fifth Circuit's representative on the Committee on Codes of Conduct of the Judicial Conference of the United States

30a

or from Committee counsel, or in the form of a confidential advisory opinion from the Committee.

I find that these actions constitute appropriate corrective action that acknowledges and remedies the problems raised by the complaint. This aspect of the complaint is therefore subject to conclusion under 28 U.S.C. § 352(b)(2).

The complaint is CONCLUDED in part and DISMISSED in part, and this matter is hereby closed. An unredacted private order is entered simultaneously herewith.

Pursuant to JC&D Rules 23(b)(1) and (8), IT IS ORDERED that a copy of this order be published on the court's website forthwith.


JENNIFER WALKER ELROD
*Chief Judge*