PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

### HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION FOR A PROTECTIVE
### ORDER AGAINST THE DUGABOY INVESTMENT TRUST'S
### DISCOVERY REQUESTS

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ................................................................................................ 8

    A.    The Relevant Parties ............................................................................................ 8

    B.    Dondero Uses Dugaboy And HMIT To File Frivolous And Harassing
        Litigation Against Highland And Seery. ............................................................ 10

    C.    The Court Approves The 9019 Settlement After Full Discovery And An
        Evidentiary Hearing. .......................................................................................... 11

    D.    Dondero Accuses Patrick Of Fraud In The Cayman Islands And The
        Cayman Islands Court Dismisses The Claim ...................................................... 13

    E.    Dugaboy's Rule 60 Motion And The Discovery Requests .................................. 16

LEGAL STANDARD ............................................................................................................ 17

ARGUMENT ........................................................................................................................ 17

I.    DUGABOY CANNOT SEEK DISCOVERY TO BRING A RULE 60(B)
    MOTION AS A MATTER OF LAW. .............................................................................. 17

II.    DUGABOY'S REQUESTS ARE NOT RELEVANT TO ITS RULE 60(B)
    MOTION ..................................................................................................................... 21

III.    DUGABOY'S REQUESTS ARE UNREASONABLY CUMULATIVE AND
    DUPLICATIVE BECAUSE IT ALREADY RECEIVED FULL DISCOVERY
    DURING OBJECTIONS TO THE 9019 SETTLEMENT. ........................................... 23

IV.    DUGABOY'S REQUESTS ARE AN IMPROPER FISHING EXPEDITION
    SEEKING TO INVADE ATTORNEY-CLIENT PRIVILEGE AND CAUSE
    UNNECESSARY DELAY. ........................................................................................... 26

V.    DUGABOY'S SUBPOENAS AND DEPOSITION REQUESTS ARE
    IMPROPER .................................................................................................................. 29

PRAYER .............................................................................................................................. 30

CERTIFICATE OF CONFERENCE ..................................................................................... 32

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Ackerman v. United States*,
340 U.S. 193 (1950)......................................................................................................20

*Adams v. Hermann*,
2018 WL 5886800 (S.D. Tex. Nov. 9, 2018) ...............................................................28

*Balakrishnan v. Bd. of Super. of La. State Univ.*,
2010 WL 11538662 (E.D. La. July 26, 2010) ..............................................................27

*Blom Bank SAL v. Honickman*,
605 U.S. 204 (2025)......................................................................................................20

*In re BNP Petroleum Corp.*,
2013 WL 5493125 (Bankr. S.D. Tex. Oct. 1, 2013).................................................19, 21

*Brown v. Ft. Hood Fam. Hous. LP*,
2022 WL 22883290 (W.D. Tex. Nov. 17, 2022)........................................................5, 22

*Camoco, LLC v. Leyva*,
2019 WL 6131452 (W.D. Tex. Nov. 19, 2019)............................................................21

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
2026 WL 755100 (5th Cir. Mar. 17, 2026)....................................................................8

*In re Ferro Corp. Deriv. Litig.*,
511 F.3d 611 (6th Cir. 2008) .....................................................................................5, 18

*Gen. Univ. Sys., Inc. v. Lee*,
379 F.3d 131 (5th Cir. 2004) ........................................................................................22

*Goodson v. Nasco Healthcare Inc.*,
2025 WL 2322793 (N.D. Tex. Aug. 12, 2025).............................................................17

*In re Grand Jury Subpoena*,
419 F.3d 329 (5th Cir. 2005) ......................................................................................7, 28

*H.K. Porter Co. v. Goodyear Tire & Rubber Co.*,
536 F.2d 1115 (6th Cir. 1976) ...................................................................................18, 19

*Halliburton Energy Servs., Inc. v. NL Indus.*,
618 F. Supp. 2d 614 (S.D. Tex. 2009).................................................................. *passim*

*Hesling v. CSX Transp., Inc.*,
  396 F.3d 632 (5th Cir. 2005) ........................................................................................18

*Jackson v. Thaler*,
  348 F. App'x 29 (5th Cir. 2009) ....................................................................................21

*Longden v. Sunderman*,
  979 F.2d 1095 (5th Cir. 1992) ......................................................................................22

*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*,
  2016 WL 3033544 (N.D. Tex. May 26, 2016) ...............................................................29

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap.
  Mgmt., L.P.)*,
  48 F.4th 419 (5th Cir. 2022) ...........................................................................................8

*Nguyen v. Excel Corp.*,
  197 F.3d 200 (5th Cir. 1999) .............................................................................7, 17, 29

*Nichols v. White*,
  2020 WL 8271876 (E.D. Tex. Feb. 10, 2020) ........................................................21, 27

*Nowlin v. Shannon*,
  2017 WL 8790963 (N.D. Tex. June 13, 2017) ...............................................................22

*Official Comm. of Unsecured Creditors v. Moeller (In re Age Refining, Inc.)*,
  801 F.3d 530 (5th Cir. 2015) ........................................................................................20

*Optimal Health Care Servs., Inc. v. Travelers Ins. Co.*,
  801 F. Supp. 1558 (E.D. Tex. 1992) ...................................................................... *passim*

*Ramey v. Salazar*,
  2018 WL 703431 (W.D. Tex. Feb. 2, 2018) ...................................................................27

*Rozier v. Ford Motor Co.*,
  573 F.2d 1332 (5th Cir. 1978) ......................................................................................22

*Southmark Props. v. Charles House Corp.*,
  742 F.2d 862 (5th Cir. 1984) .....................................................................................5, 22

*Trans Miss. Corp. v. United States*,
  494 F.2d 770 (5th Cir. 1974) ........................................................................................18

**Rules**

Fed. R. Civ. P. 26(b)(1)....................................................................................................21

Fed. R. Civ. P. 26(b)(2)(C) ..................................................................................... *passim*

Fed. R. Civ. P. 26(b)(2)(C)(ii) ...............................................................................................25

Fed. R. Civ. P. 26(c)(1) ...........................................................................................................17

Fed. R. Civ. P. 26(g)(1)(B)(ii) ............................................................................................7, 28

Fed. R. Civ. P. 34(a)(1) ............................................................................................................27

Fed. R. Civ. P. 45(c)(1)(A) ......................................................................................................29

Fed. R. Civ. P. 45(d)(1) ........................................................................................................7, 29

Fed. R. Civ. P. 59(b) ................................................................................................................18

Fed. R. Civ. P. 60(b)(2) .....................................................................................................4, 18, 23

Fed. R. Civ. P. 60(b)(3) ............................................................................................................20

**Other Authority**

Fed. Jud. Ctr., Manual for Complex Litigation § 11.45 (4th ed. 2025) .......................................29

Pursuant to Federal Rule of Civil Procedure 26(c)(1), which is incorporated into bankruptcy proceedings by Federal Rules of Bankruptcy Procedure 7026 and 9014(c)(1), Highland Capital Management, L.P. ("HCMLP"), the reorganized debtor in the above-referenced bankruptcy case, by and through its undersigned counsel, hereby moves for entry of a protective order (the "Motion") against The Dugaboy Investment Trust's ("Dugaboy") efforts to conduct discovery in connection with its February 9, 2026 motion pursuant to Rule 60(b) (the "Rule 60(b) Motion" or "Mot."; Dkt. No. 4513), including its First Set of Requests for Production of Documents to HCMLP, dated March 23, 2026 (the "Requests"; Ex. 1); eight additional document subpoenas that Dugaboy has attempted to serve on various entities and law firms, dated March 23–25, 2026 (the "Subpoenas"; Ex. 2); and request to take three depositions (Ex. 3).[2] In support of its Motion, HCMLP states as follows:

## PRELIMINARY STATEMENT

1.      Dugaboy's discovery demands are merely the latest installment in the campaign of Highland's founder and pre-bankruptcy CEO, James Dondero ("Dondero"), to delay, disrupt, and attack HCMLP's Chapter 11 proceedings whenever the outcome is not to his liking. At issue is a Rule 9019 settlement (the "9019 Settlement") between HCMLP and certain related entities (collectively, "Highland") and Hunter Mountain Investment Trust ("HMIT") and certain related entities (collectively, the "HMIT Entities") approved over Dugaboy's objection, following extensive discovery and a lengthy evidentiary hearing. Dugaboy unsuccessfully sought a stay of the 9019 Settlement and has appealed approval to the District Court. In the meantime, Dugaboy and its allies waged a series of collateral attacks on Mark Patrick ("Patrick"), the duly appointed

---

[2] All references to "Ex." refer to exhibits to the accompanying declaration of John A. Morris ("Morris Decl."). Unless otherwise indicated, all emphasis is added and all alterations, citations, and quotations are omitted.

and authorized signatory for the HMIT Entities party to the 9019 Settlement, in the courts of the Cayman Islands and the Texas Business Court for alleged conduct involving entities entirely unrelated to the HMIT Entities. The Cayman Islands proceeding failed—a fact that Dugaboy conspicuously does not mention—and the Texas Business Court action has been abated for failure of the Dondero-related complainant(s) to join necessary parties. Despite those failures, Dugaboy nevertheless files this Rule 60(b) Motion in this Court, which rests on the same baseless (yet breathless) claims that have been rejected time and again. Dugaboy has now launched a host of far-flung discovery demands against HCMLP and many others—not because Dugaboy actually has any legitimate grounds for Rule 60(b) relief to explore, but in the hope that it might find some other avenue of attack in this proceeding or elsewhere or create further cost, delay and chaos. Dugaboy's gambit is entirely improper and should be nipped in the bud.

2.    On May 19, 2025, Highland and the HMIT Entities entered into the 9019 Settlement to resolve pending litigation against Highland, transfer cash and certain other assets to HMIT, fix the amount and terms of HMIT's subordinated interest in the Highland Claimant Trust, and exchange full mutual releases of claims. The parties sought Court approval under Bankruptcy Rule 9019 and 11 U.S.C. § 363, and Dugaboy and others it controlled objected to that relief. As was their right at that time, Dugaboy and the other objectors sought and obtained extensive discovery from Highland and HMIT in connection with the objections. Highland produced more than 4,000 pages of documents and fully responded to interrogatories. Numerous parties were deposed, including the reorganized Highland's CEO and COO/CFO, as well as HMIT's official administrator and its operating manager. On June 25, 2025, the Court held an all-day evidentiary hearing, during which the Court heard live testimony from three witnesses and admitted more than

125 exhibits. On June 30, 2025, the Court overruled the objections and approved the 9019 Settlement (the "9019 Order"; Dkt. No. 4297).

3. Dugaboy appealed the 9019 Order, which is fully briefed and pending before the District Court. On July 17, 2025, Dugaboy sought a stay of the implementation of the 9019 Settlement based almost solely on the claims and allegations asserted in a *Writ* filed in the Cayman Islands. Finding no connection between the 9019 Settlement and the Cayman Islands proceedings, the Bankruptcy Court denied Dugaboy's stay motion. (Dkt. No. 4333.) Since the entry of the 9019 Order, the 9019 Settlement has been fully consummated: the litigations have been dismissed with prejudice; the assets sold to HMIT have been transferred; the allowed Class 10 interest has received payment; and Class 9 holders have received additional distributions. Even Dugaboy paid HMIT on the promissory note Highland transferred to HMIT as part of the 9019 Settlement.

4. On February 9, 2026, more than seven months later and *after* receiving a draft of the Cayman Islands court's adverse decision but one day before the decision being made public, Dugaboy filed a motion seeking to "reconsider and vacate the 9019 Settlement Order" pursuant to Rule 60(b). *Six weeks after* filing the 60(b) Motion and *three weeks after* agreeing to a joint scheduling motion, Dugaboy launched the sweeping discovery demands at issue here, which include 55 document requests to HCMLP and eight equally far-flung Subpoenas served on various non-debtor entities and law firms containing *hundreds* of wildly overbroad and facially improper requests. This Court should enter a protective order against Dugaboy's improper discovery requests for at least four reasons.

5. ***First***, Dugaboy does not and cannot show that it is entitled to *any* discovery in connection with its Rule 60(b) Motion. "[T]hose seeking post-judgment relief under Rule 60(b)(2) will not be afforded post-trial discovery unless, at a minimum, the newly discovered evidence

-3-

relied upon 'could not have been discovered in time to move for a new trial under Rule 59(b),'" which is 28 days after entry of judgment. *Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 654 (S.D. Tex. 2009) (quoting Fed. R. Civ. P. 60(b)(2)). Dugaboy's Rule 60(b) Motion utterly fails to make this threshold showing. Rather, every scrap of "evidence" upon which Dugaboy now relies simply repeats information already known to it when the Rule 9019 Settlement was considered or, at the very least, was readily available or discoverable within the 28-day period following the Court's 9019 Order. Indeed, Dugaboy (and other Dondero-sponsored entities) openly pushed the same theories, based on the same allegations, about Patrick in this Court and other fora before, during, and immediately after the Rule 9019 hearing. In response to Highland's discovery request seeking confirmation as to what specific "newly discovered evidence" Dugaboy was relying on in support of its 60(b) Motion, Dugaboy simply reproduced the identical bundle of exhibits it had previously filed – virtually all of which predate 28 days after entry of the 9019 Order. Simply put, Dugaboy has identified no newly discovered evidence for purposes of Rule 60(b)(2).

6. Similarly, to the extent Dugaboy's Rule 60(b) Motion relies on allegations of fraud, Dugaboy must make a "prima facie showing of fraud" to reopen a case under Rule 60(b) and obtain discovery. *Halliburton*, 618 F. Supp. 2d at 654 (collecting cases). Dugaboy cannot do so. Most glaringly—and despite appending more than 2,000 pages of mostly Cayman Islands exhibits to its Rule 60(b) Motion—*Dugaboy withheld from this Court a 56-page decision from the Cayman Islands court **rejecting its theory of fraud***, which relates only to a certain "DAF Holdco" and does not even mention the HMIT Entities or the 9019 Settlement, and ***declining to take any action against Patrick***. (Ex. 4.) In effect, Dugaboy turns Rule 60(b) on its head, seeking to improperly use its Rule 60(b) Motion "to allow [it] to *begin* Rule 26 discovery to see *if* [it] *might* be able to

-4-

uncover facts that *might* bolster [its] [] allegations" of fraud. *In re Ferro Corp. Deriv. Litig.*, 511 F.3d 611, 624 (6th Cir. 2008) (emphasis in original). This Court should therefore enter a protective order stopping Dugaboy from taking *any* discovery in connection with its Rule 60(b) Motion.

7.      ***Second***, Dugaboy's Requests are not relevant to its Rule 60(b) Motion. Dugaboy's Motion alleges that HMIT's duly appointed and authorized administrator, Patrick, "defraud[ed] the charitable beneficiaries of the [Cayman Islands] fund and the donors to it" by "secretly reorganiz[ing] the corporate structure of the donor-advised fund to make its beneficiary a sham charity run out of his house." (Mot. at 3.) But Dugaboy does not seek documents regarding the allegedly fraudulent restructuring, which of course would not be in HCMLP's possession, custody, or control. Rather, Dugaboy seeks documents regarding the 9019 Settlement, such as documents regarding the negotiation, drafting, and diligence of the 9019 Settlement (Request Nos. 1–7, 9–13, 18, 21); HMIT's diligence and analysis of the 9019 Settlement (Request Nos. 8, 14, 17); and the valuation of the Highland Entities and certain bankruptcy claims (Request Nos. 25, 30–33, 39–50, 53–55). None of this concerns the grounds actually articulated in Dugaboy's Rule 60(b) Motion.

8.      Further, Dugaboy impermissibly seeks documents that did not exist until after entry of the 9019 Order it seeks to vacate. "The Fifth Circuit is clear that 'evidence not in existence at the time of an earlier judgment is not an available ground for attacking that judgment[]'" as "newly discovered evidence" under Rule 60(b)(2). *Brown v. Ft. Hood Fam. Hous. LP*, 2022 WL 22883290, at *3 (W.D. Tex. Nov. 17, 2022) (quoting *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir. 1984)). Similarly, under Rule 60(b)(3), the 9019 Order could not have been procured by fraud based on conduct that allegedly occurred after the date of the Order. Dugaboy nonetheless seeks documents "through the present," including documents regarding the

implementation of the 9019 Order, which necessarily were not in existence at the time of the Order. (Requests at 18; *id.* No. 26.)

9.      ***Third***, Dugaboy's Requests are "unreasonably cumulative or duplicative," because Dugaboy already "had ample opportunity to obtain" and in fact ***already obtained*** much of the discovery it now seeks during discovery on the objections to the 9019 Settlement. Fed. R. Civ. P. 26(b)(2)(C). As noted above, Highland produced more than 4,000 pages of documents, including all documents and communications between Highland and the HMIT Entities up to the execution of the 9019 Settlement on May 19, 2025. Yet Dugaboy again seeks the exact same "Documents and Communications between or among Highland Capital Management, L.P. . . . and any of the HMIT Entities concerning the 9019 Settlement." (Request No. 1; *see also* Request Nos. 2–5, 8–15, 17, 24, 27–33, 39–50, 53–54.) Thus, to the extent any of Dugaboy's Requests are relevant to the Rule 60(b) arguments Dugaboy advances (which they are not), Highland has already produced the requested documents.

10.      ***Fourth***, Dugaboy's Requests are vastly overbroad, seek documents not in HCMLP's possession, and seek clearly privileged documents. For example, Dugaboy seeks "[a]ll Communications between [HCMLP] and James P. Seery, Jr." (Request No. 19.) Dugaboy thus seeks every single internal email HCMLP's CEO sent or received, including privileged communications with attorneys. Dugaboy also seeks documents regarding diligence and actions taken *by Patrick and the HMIT Entities* (Request Nos. 8, 16), which are not in *HCMLP's* possession, custody, or control. Dugaboy even seeks legal analyses and communications with outside counsel by simply asserting that "attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter waiver." (Request Nos. 22–23, 37–38, 41–43 nn.3–9.) As "the party seeking to breach the walls of privilege," Dugaboy must

"produce evidence," such as "affidavits and exhibits," to "make the necessary *prima facie* showing for the application of the crime fraud exception" or subject-matter waiver. *In re Grand Jury Subpoena*, 419 F.3d 329, 336–37 (5th Cir. 2005) (collecting cases). Dugaboy does not and cannot provide any support whatsoever for its assertions that the crime-fraud exception or subject-matter waiver applies, so its attempt to invade the attorney-client privilege should be rejected out of hand.

11.      ***Finally***, for all the same reasons, Dugaboy's wide-ranging Subpoenas to eight non-debtor entities and law firms and Dugaboy's request to take three depositions are improper. Dugaboy's Subpoenas contain ***532 requests in total*** and thus fail to "take reasonable steps to avoid imposing undue burden or expense" on third parties. Fed. R. Civ. P. 45(d)(1). That is particularly true for the subpoenas to law firms, which are "disfavored" by the Fifth Circuit. *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999). Dugaboy also seeks to depose Patrick, Jim Seery, Jr. ("Seery"), and Paul Murphy ("Murphy"). But Dugaboy has no way to depose Murphy as a practical matter because he is located in the Cayman Islands. And Dugaboy has already deposed and examined Patrick and Seery during the 9019 Settlement approval process. Dugaboy's attempt to get a third bite at the apple is therefore "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C).

12.      At bottom, Dugaboy has served such extensive and improper discovery to harass and burden Highland and others to obtain information it might use in other proceedings, and to delay proceedings on its Rule 60(b) Motion, which are all improper purposes for propounding discovery requests. Fed. R. Civ. P. 26(g)(1)(B)(ii). Accordingly, this Court should enter a protective order against Dugaboy's efforts to take discovery, including the Requests, the Subpoenas, and any depositions.

## RELEVANT BACKGROUND

### A.      The Relevant Parties

13.      Dondero is the co-founder and former CEO of HCMLP. Dugaboy is Dondero's family trust and he is the lifetime beneficiary. (Dkt. No. 3904.) Dondero controls Dugaboy. *See Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2026 WL 755100, at *1 (5th Cir. Mar. 17, 2026) ("Dugaboy Investment Trust – controlled by HCM co-founder and former Chief Executive Officers, James Dondero"). On October 16, 2019, HCMLP filed for Chapter 11 bankruptcy. On February 22, 2021, the Court confirmed Highland's Fifth Amended Plan of Reorganization (the "Plan"; Dkt. 1808) and the Fifth Circuit affirmed (with minor modifications not relevant here). *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419 (5th Cir. 2022).

14.      HMIT was formed in 2015 by John Honis ("Honis"), a long-time friend and former employee of Dondero's, as part of a highly complex series of transactions designed to "minimize taxes paid by Highland and its owners." (Mot. at 7.) The transactions resulted in HMIT owning 99.5% of HCMLP's pre-petition limited partnership interests. (Ex. 5 (Am. Compl. & Obj. to Claims, *Kirschner v. Dondero*, Adv. Proc. No. 21-03076-sgj (Bankr. N.D. Tex.), Dkt. 158) ¶ 27.) Under the Plan, HMIT received an unvested, senior Class 10 contingent claim, which would receive distributions after all pre-petition creditors in Classes 1–9 received full payment with interest. (Plan Art. I.B ¶¶ 33–36; *id.* Art. III.B; *id.* Art. III.H ¶¶ 10–11.) The remaining 0.5% of pre-petition HCMLP limited partners, including Dugaboy (0.1866%), received Class 11 contingent, unvested claims, which were subordinate to Class 10 claims. (*Id.*) Honis had full authority and control of HMIT and the other HMIT Entities, which he voluntarily transferred to Patrick in August of 2022 while Patrick was still effectively in Dondero's employ.

15.     In 2011, *four years before* the creation of HMIT, Dondero directed the creation of the Charitable DAF Holdco, Ltd., a Cayman Islands exempted company (the "DAF Holdco"), which is a tax-blocker holding entity. (Ex. 6 (Winding Up Petition) ¶¶ 2, 5, 15; Ex. 7 (Dondero Apr. 2025 Aff.) ¶ 9; Ex. 4 (Cayman Decision) ¶¶ 24–30.) For both tax and continuing control objectives, Dondero originally caused DAF Holdco to issue non-voting Participating Shares to the Dondero Foundations (defined below). (Ex. 6 (Winding Up Petition) at ¶ 10(b); Ex. 7 (Dondero Apr. 2025 Aff.) ¶ 19.) Those Participating Shares were potentially entitled to discretionary distributions from Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership (the "DAF Fund"; together with DAF Holdco, "DAF"), in which DAF Holdco held non-voting limited partnership interests. (Ex. 6 (Winding Up Petition) ¶ 2.) But such distributions, if any, were at the sole discretion of DAF Fund's general partner. (Ex. 4 (Cayman Decision) at ¶¶ 108(7), 147–48.) Holders of the Participating Shares do not have, and have never had, any governance, management, or control rights over the DAF Fund. (*Id.* ¶¶ 160–61.) Complete control (the "Control Person") of (i) DAF Holdco is vested in the owner of the Management Shares of DAF Holdco, and (ii) the DAF Fund is vested in the owner of the general partner of the DAF Fund. (Ex. 6 (Winding Up Petition) ¶¶ 10(d), 11; Ex. 7 (Dondero Apr. 2025 Aff.) ¶ 12.) The Control Person was initially an individual named Grant Scott ("Scott"), a long-time friend of Dondero. (Ex. 6 (Winding Up Petition) ¶ 16; Ex. 7 (Dondero Apr. 2025 Aff.) ¶ 15.) Scott voluntarily transferred ownership of the Management Shares and the DAF Fund's general partner to Patrick in March 2021, while Patrick was still effectively in Dondero's employ, making Patrick the Control Person over DAF and its subsidiaries. (Ex. 6 (Winding Up Petition) ¶ 16; Ex. 7 (Dondero Apr. 2025 Aff.) ¶¶ 17–18, 20–21.)

16.     The Highland Dallas Foundation, Inc., The Highland Kansas City Foundation, Inc., and The Highland Santa Barbara Foundation, Inc. (collectively, the "Dondero Foundations") are Supporting Organizations (as defined by the U.S. Internal Revenue Code) formed in 2011 and effectively controlled by Dondero as their founder, funder, director, president, and principal officer. (Ex. 8 (JOL Writ and Statement of Claim) ¶ 61.) The Dondero Foundations organizationally sit below larger foundations, like The Dallas Foundation. (Ex. 6 (Winding Up Petition) ¶¶ 12–13.) Each of the Dondero Foundations has three board members, one of which is Dondero and the other two are associated with the larger foundations. (Ex. 8 (JOL Writ and Statement of Claim) ¶ 70.) Dondero is also the president of each Dondero Foundation and its largest, if not only, benefactor, and each is a member of the Cayman Islands Liquidation Committee for DAF Holdco. (Ex. 9 (Charitable DAF Holdco Guidance Notes for Members of the Liquidation Committee).)

17.     Patrick was a member of Highland's tax department from 2008 to 2021. (Ex. 7 (Dondero Apr. 2025 Aff.) ¶ 17.) In 2021, Patrick continued his employment at an entity called Skyview, which is the provider of many "back office" (tax, legal, accounting, etc.) services to Dondero-controlled entities, including the entities in the DAF structure. (*Id.* ¶ 18; Ex. 10 (Patrick June 2025 Aff.) ¶¶ 66–70.) In late 2024, Patrick resigned from Skyview and ceased his affiliations with Dondero, including terminating applicable service agreements between the DAF entities he controlled and Skyview. (Ex. 10 (Patrick June 2025 Aff.) ¶¶ 71, 147(f).)

**B.      Dondero Uses Dugaboy And HMIT To File Frivolous And Harassing
         Litigation Against Highland And Seery.**

18.     Throughout the bankruptcy process, and even after Highland's bankruptcy plan was confirmed, Dondero used Dugaboy to pay HMIT's legal fees to file endless litigation against Highland, Seery, and others. Patrick, as HMIT's representative, testified in Court that "Dugaboy

was paying HMIT attorneys' fees," which led the Court to conclude that "HMIT [is] really Dondero by another name," because "Dondero is the driving force behind HMIT's" litigation. (Aug. 25, 2023 Mem. Op. & Order Denying Leave To File Verified Adversary Proceeding ("Aug. 2023 Order"; Dkt. No. 3903) at 39–42.)

19.   For example, from March 2023 to June 2023, HMIT filed multiple motions for leave to file an adversary proceeding alleging a fanciful *quid pro quo* conspiracy among Seery and some of the purchasers of Highland's bankruptcy claims. (Dkt. Nos. 3699, 3760, 3815, 3816.) The Court issued a 105-page decision rejecting all of HMIT's claims, both on standing grounds and on the merits, and therefore denied leave to file an adversary proceeding. (Aug. 2023 Order at 58–105.) HMIT then moved for reconsideration, which the Court denied. (Dkt. Nos. 3905, 3936.) And HMIT appealed to the District Court. (Dkt. No. 3928.)

20.   As another example, on New Years' Day 2024, HMIT filed another motion for leave to file a proceeding seeking to remove Seery as Trustee of the Highland Claimant Trust. (Dkt. 4000.) The Court stayed this motion pending resolution of related appeals. (Dkt. No. 4104.) HMIT then sought leave to file an interlocutory appeal of the stay order (Dkt. No. 4115), which the District Court denied (Mem. Op. & Order, *Hunter Mt. Inv. Tr. v. Highland Cap. Mgmt, L.P.*, Dkt. No. 22).

### C.   The Court Approves The 9019 Settlement After Full Discovery And An Evidentiary Hearing.

21.   In 2025, HMIT finally stopped following Dondero's direction and settled the frivolous, Dondero-financed litigation against Highland. On May 19, 2025, Highland and the HMIT Entities entered into the 9019 Settlement resolving all pending litigation among them and sought Court approval for the settlement and the sale of certain assets. (Dkt. No. 4216.) Dugaboy, The Dallas Foundation, and its insurer Crown Global Life Insurance, Ltd. ("Crown Global";

collectively, the "Objectors") each filed objections to the 9019 Settlement (the "Objections"; Dkt. Nos. 4229–31).[3]

22.     The Objectors—all of whose objections were financed by Dondero (*see* Ex. 11 (June 25, 2025 Hr'g Tr.) at 221:3–14)—sought and obtained extensive discovery from Highland and HMIT. In response to the Objectors' discovery requests, Highland produced more than 4,000 pages of documents, including all documents and communications between Highland and the HMIT Entities up to the execution of the 9019 Settlement on May 19, 2025. (Morris Decl. ¶ 2; Ex. 12 (Highland Resps. & Objs.).) The Objectors also deposed Seery, Patrick, HCMLP's CFO and COO, and HMIT's operations manager. (Dkt. Nos. 4243, 4246, 4267, 4259, 4260, 4267, 4244, 4245.) None of the Objectors raised any concerns about the scope of discovery they received or moved to compel additional discovery. To the contrary, after full discovery, The Dallas Foundation and Crown Global ***voluntarily withdrew their Objections*** challenging Patrick's authority to enter into the 9019 Settlement and confirmed Patrick's authority over HMIT and DAF. (Dkt. No. 4282.) The Dallas Foundation and Crown Global also explicitly barred themselves from asserting any claims against Highland by, through, or under any HMIT Entity. (*Id.*)

23.     On June 25, 2025, the Court held an all-day evidentiary hearing on the remaining Objections. During the hearing, and mere minutes after confirming that Dugaboy was *not* challenging Patrick's authority to bind HMIT to the 9019 Settlement, Dugaboy abruptly reversed course and raised for the very first time the exact same Objections that The Dallas Foundation and Crown Global voluntarily withdrew. (Ex. 11 (June 25, 2025 Hr'g Tr.) at 31:4–34:15.) To address these Objections (and notwithstanding the supposed bias repeatedly alleged by Dugaboy), the

---

[3] Patrick Daugherty, an individual unrelated to the Dondero-controlled entities, also objected for mostly different reasons.

Court actually provided wide latitude to Dugaboy and allowed it to proceed with its newly adopted argument while hearing testimony from Seery, Patrick, and Dondero, who were each subject to live cross-examination. (*Id.* at 110:9–134:22; 184:3–188:18; 206:4–223:25.) Highland also entered into evidence 126 exhibits totaling 2,899 pages, including a demonstrative exhibit containing a complete structure chart of DAF and the HMIT Entities. (Dkt. Nos. 4253, 4293.)

24.     On June 30, 2025, the Court overruled the Objections and entered the 9019 Order approving the 9019 Settlement. (Dkt. No. 4297.) On July 14, 2025, Dugaboy filed a notice of appeal of the 9019 Order (Dkt. No. 4311), which is fully briefed and remains pending before the District Court.

**D.     Dondero Accuses Patrick Of Fraud In The Cayman Islands And The Cayman Islands Court Dismisses The Claim.**

25.     Once Patrick began acting independently, Dondero began funding litigation against Patrick using the same tactics he employed against Highland and Seery. This time, he directed the Dondero Foundations to file a petition in the Cayman Islands to impose a court-supervised liquidation of DAF Holdco (unaware that Patrick had initiated an earlier voluntarily liquidation). (Ex. 6 (Winding Up Petition, *In the Matter of Charitable DAF Holdco, Ltd., No. FSD 99 of 2025* (JAJ) (Grand Court, Cayman Islands, Fin. Servs. Div. Apr. 16, 2025).) The petition was based entirely on affidavits from Julie Diaz (President of The Dallas Foundation and Vice President of a Dondero Foundation) and Dondero in which Dondero admitted that he was "fund[ing] the action personally," and accused Patrick of, among other things, fraud, "misappropriation of [] assets," and "misapplication of fiduciary property." (Ex. 7 (Dondero Apr. 2025 Aff.) ¶¶ 23–42, 48).) After learning that DAF Holdco had already been placed in voluntary liquidation by Patrick, the Dondero Foundations filed a second petition in the Cayman Islands to convert the voluntary liquidation to a court-supervised liquidation (Ex.13 (Petition for Court Supervision of a Voluntary Liquidation,

*In re Charitable DAF Holdco, Ltd.*, No. FSD 116 of 2025 (JAJ) (Grand Court, Cayman Islands, Fin. Servs. Div. May 2, 2025)).) The Petition for Court Supervision includes additional allegations relating to the restructuring of DAF but does not even mention the HMIT Entities or the 9019 Settlement.

26.     In May 2025, the Cayman Islands court granted the unopposed request for the appointment of joint official liquidators (the "JOLs") for DAF Holdco. (Ex.13 (Petition for Court Supervision of a Voluntary Liquidation, *In re Charitable DAF Holdco, Ltd.*, No. FSD 116 of 2025 (JAJ) (Grand Court, Cayman Islands, Fin. Servs. Div. May 2, 2025)); Ex. 14 (Order Granting Petition for Court Supervision of a Voluntary Liquidation, *In re Charitable DAF Holdco, Ltd., No. FSD 116 of 2025* (JAJ) (Grand Court, Cayman Islands, Fin. Servs. Div. May 6, 2025)).) DAF Holdco is the only entity over which the JOLs were appointed as liquidators. The JOLs, who were being financed by Dondero, then brought the claims against Patrick that were outlined in Dondero's April 2025 affidavit, the Petition for Court Supervision, and The Dallas Foundation's Objection to the 9019 Settlement. They alleged that Patrick committed fraud and breached his fiduciary duties to DAF Holdco by reorganizing the company to benefit himself and sought to remove him as the Control Person over DAF Holdco. (Ex.8 (Compl. by JOLs, *In re Charitable DAF Holdco, Ltd.*, No. FSD 201 of 2025 (JAJ) (Grand Court, Cayman Islands, Fin. Servs. Div. July 15, 2025)).) Once again, the JOLs' statement of claims does not even mention the HMIT Entities or the 9019 Settlement.

27.     On July 1, 2025 (one day after the entry of the 9019 Order), the Dondero Foundations filed a petition against Patrick and others in the Texas Business Court also making the exact same allegations from Dondero's affidavit and the proceedings in the Cayman Islands, and buttressed by another Dondero affidavit. (Ex. 15 (Petition, *The Highland Dallas Found., Inc.*

-14-

*v. Patrick*, No. 25-BC01B-0027 (Tex. Bus. Ct., 1st Div., Dallas, Tex., July 1, 2025)).) Like the

Cayman Islands litigation, the petitioners in Texas sought to effectively remove Patrick's control

over DAF through a preliminary restraining order, temporary injunction, and the appointment of a

receiver. (*Id.*) The Texas Business Court abated the case because it determined that the JOLs were

"necessary parties," so "this case should be abated until when the JOLs become parties." (Ex. 16

(Order ¶ 4, *The Highland Dallas Found., Inc. v. Patrick*, No. 25-BC01B-0027 (Tex. Bus. Ct., 1st

Div., Dallas, Tex., Sept. 18, 2025)).) The JOLs have not become parties to the Texas litigation,

which remains abated. And, yet again, the Texas Business Court petition does not even mention

the HMIT Entities or the 9019 Settlement.

28.     On July 17, 2025, Dugaboy made the strategic decision to file a motion in this Court

to stay the implementation of the 9019 Order (the "Motion to Stay"; Dkt. No. 4326) based on the

Dondero-funded litigation in the Cayman Islands. Dugaboy represented that "if ***the Cayman***

***Proceeding determines that Mr. Patrick may retain his control position in the DAF*** and its

subsidiaries, then such a decision would likely ***remove any additional obstacles to the HMIT***

***settlement***." (*Id.* ¶ 31.) On July 22, 2025, the Court denied the Motion to Stay (Dkt. No. 4334),

finding that the Cayman Proceedings had no connection to the 9019 Settlement or HCMLP's

bankruptcy, and Dugaboy appealed the denial (Dkt. No. 4353), which remains pending before the

District Court. But Dugaboy otherwise sat on its hands awaiting the outcome of its Cayman

Proceeding and chose not to file any Rule 60(b) motion.

29.     On February 10, 2026, after a two-day hearing, the Cayman Islands court rejected

the claims of the JOLs that Dondero created and financed denying a proprietary injunction on a

standard akin to a motion to dismiss. The court determined that Patrick, as the Control Person of

DAF Holdco, had authority to reorganize DAF and that neither DAF Holdco nor the charitable

funds had a "proprietary interest" in the assets controlled by Patrick. (Ex. 4 (Feb. 10, 2026 Order ¶¶ 130–61, *In re Charitable DAF Holdco, Ltd.,* No. FSD 116 of 2025 (RPJ) (Grand Court, Cayman Islands, Fin. Servs. Div.)).) The Cayman Islands court also found that Patrick had not engaged in self-enrichment and, in the event it determines that any breach of fiduciary duty has occurred, such a claim would be satisfied through monetary damages paid from the DAF Fund's assets, not by Patrick. In other words, ***the Cayman Islands court reviewed the same evidence Dugaboy now presents to this Court, refused to remove Patrick from his control position in DAF, dismissed the claims of fraud, and never mentioned HMIT or the 9019 Settlement at all***. While this is all a curious sideshow, the fact remains that nothing in the Cayman Islands litigation or the decision of the Cayman Islands court has anything to do with Highland, HMIT or the 9019 Settlement.

### E.        Dugaboy's Rule 60 Motion And The Discovery Requests.

30.        On February 9, 2026, Dugaboy filed the Rule 60(b) Motion seeking to vacate the 9019 Order based on the exact same alleged DAF Holdco fraud by Patrick that the Cayman Islands court rejected. (Dkt. No. 4513.) Despite filing over 2,000 pages of exhibits in support of its Rule 60(b) Motion, Dugaboy has withheld from this Court the Cayman Islands court decision. This is unsurprising because, by Dugaboy's own admission, there are now no "obstacles to the HMIT settlement" so there is no basis to attack it.

31.        Six weeks later, on March 23, 2026, Dugaboy emailed its Requests on HCMLP and eight Subpoenas. The Requests contain 55 separate document requests and have a response date of April 22, just five days before the hearing on the Rule 60(b) Motion. (Requests at 1.) The cover email to the Requests also demands that HCMLP "search the emails of James P. Seery and Richard M. Pachulski in response to these Requests." (Ex. 1.)

32.        On March 25, 2026, HCMLP's counsel responded that "[w]e have reviewed the RFPs and do not believe they are proper for a variety of reasons, not least because Dugaboy has

not established a prima facie case in support of its motion. Accordingly, we intend to file a motion for a protective order" and proposed a briefing schedule. (Ex. 3.) Five days later on March 30, 2026, Dugaboy's counsel responded with a lengthy briefing schedule that proposed "to postpone both the deposition and the hearing until a reasonable time after [this Court] rules on your Motion for Protective Order." (*Id.*) Dugaboy also "disclose[d] that it will depose Mark Patrick for its eight-hour deposition, and James Seery and Paul Murphy for its two four-hour depositions." (*Id.*)

### LEGAL STANDARD

33. Under Rule 26(c)(1), "[t]he Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including" by "forbidding the disclosure or discovery[,]" "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). "The Court may also issue a protective order on relevant discovery that is unduly burdensome." *Goodson v. Nasco Healthcare Inc.*, 2025 WL 2322793, at *2 (N.D. Tex. Aug. 12, 2025). "The 'decision whether to grant or deny a request for a protective order is entrusted to the [bankruptcy] court's sound discretion.'" *Id.* (quoting *Nguyen*, 197 F.3d at 209 n.27).

### ARGUMENT

### I. DUGABOY CANNOT SEEK DISCOVERY TO BRING A RULE 60(b) MOTION AS A MATTER OF LAW.

34. Dugaboy is seeking discovery in support of its Rule 60(b) Motion to vacate the 9019 Settlement based on purportedly "newly discovered evidence" showing that the 9019 Settlement and Order were "affected by fraud and misconduct." (Mot. at 33–42.) "Postjudgment discovery into alleged fraud is not appropriate" generally because of courts' "strong interest in the finality of judgments." *Halliburton*, 618 F. Supp. 2d at 654 (collecting cases); *see also id.* ("A discovery request for the purpose of attacking a final judgment involves considerations not present

-17-

in pursuing discovery in a pending action prior to judgment. Primary among these considerations is the public interest of the judiciary in protecting the finality of judgments.") (quoting *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976)).

35.     As to its Rule 60(b)(2) motion, Dugaboy fails to identify **any** "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," which is "28 days after the entry of judgment." Fed. R. Civ. P. 59(b), 60(b)(2). As Highland will explain in greater detail in its forthcoming opposition to the Rule 60(b) Motion, Dugaboy knew or reasonably could have known within 28 days of the 9019 Order everything alleged in its Rule 60(b) Motion. Indeed, Dugaboy even admits the purportedly "new" information revealed only more detail about "the scope of Patrick's misconduct," not anything substantively new. (Mot. at 33; *see also id.* at 34 ("There was smoke of this misconduct at the June 25, 2025, hearing approving the settlement.").) Dugaboy thus has no basis to seek discovery, because a "judgment will not be reopened if the evidence is merely cumulative or impeaching and would not have changed the result." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 640 (5th Cir. 2005) (quoting *Trans Miss. Corp. v. United States*, 494 F.2d 770, 773 (5th Cir. 1974)). As a matter of law, Dugaboy cannot use its Rule 60(b) Motion "to *begin* Rule 26 discovery to see *if* [it] *might* be able to uncover facts that *might* bolster [its] [] allegations." *Ferro*, 511 F.3d at 624 (emphasis in original).

36.     Moreover, Dugaboy already knew **all** of the purportedly "new" evidence from "the joint official liquidators appointed in the Cayman Islands." (Mot. at 34.) The Dondero Foundations were on the liquidation committee of DAF Holdco (*see* Ex. 17 (Form 15)), so they had full access to all of the information obtained by the JOLs. And, as discussed above, Dondero himself controls

-18-

both the Dondero Foundations and Dugaboy as well as the entity financing the JOLs. (*See supra* at ¶¶ 13, 16, 26.)

37. As to its Rule 60(b)(3) motion based on alleged fraud, Dugaboy is "required to make a prima facie showing of fraud in order to be entitled to discovery after judgment." *Halliburton*, 618 F. Supp. 2d at 654 (collecting cases); *see also In re BNP Petroleum Corp.*, 2013 WL 5493125, at *4 (Bankr. S.D. Tex. Oct. 1, 2013) (applying the "'prima facie' standard" to determine whether a party was entitled to discovery on whether "the Settlement Order was procured by fraud on the Court"), *aff'd*, 642 F. App'x 429 (5th Cir. 2016). Dugaboy cannot satisfy the "prima facie" standard to obtain discovery for its Rule 60(b) Motion.

38. As discussed above (*see supra* at ¶ 7), Dugaboy alleges that Patrick, as Trustee of HMIT, "defraud[ed] the charitable beneficiaries of the fund and the donors to it" by "secretly reorganiz[ing] the corporate structure of the donor-advised fund to make its beneficiary a sham charity run out of his house" (Mot. at 3). Dugaboy speculates—without any evidence—that had Patrick not "concealed his restructurings of the DAF and Hunter Mountain," then a Cayman Islands court would have removed Patrick as Trustee and then he would have lacked "authority to enter into the 9019 Settlement." (*Id.* at 17–18, 27, 41.) Putting aside the fact that Dugaboy had full knowledge of the restructuring, such "unsupported charges of fraud" do not satisfy the "prima facie" standard required to obtain Rule 60(b) discovery. *Halliburton*, 618 F. Supp. 2d at 654 (quoting *H.K. Porter*, 536 F.2d at 1112). To the contrary, while Dugaboy relies heavily on documents obtained from the Cayman Islands proceedings (*see* Mot. at 5–30), Dugaboy tellingly did not disclose that the Cayman Islands court ***refused to remove Patrick as control person over DAF*** and ***dismissed all claims of fraud against Patrick*** (Ex. 4 at ¶¶ 130–61). Dugaboy represented to this Court that "if the Cayman Proceeding determines that Mr. Patrick may retain his control

-19-

position in the DAF and its subsidiaries, then such a decision would likely ***remove any additional obstacles to the HMIT settlement***." (Motion to Stay ¶ 31.) Thus, by Dugaboy's own admission, it has no basis to seek Rule 60(b) relief, let alone discovery in support of such relief. And Rule 60(b) cannot be used to rescue Dugaboy from its own failed bet on a Cayman Islands decision. *See Blom Bank SAL v. Honickman*, 605 U.S. 204, 212 (2025) ("'[T]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.'") (quoting *Ackerman v. United States*, 340 U.S. 193, 198 (1950)).

39. In any event, Dugaboy has not adduced any evidence that ***the challenged 9019 Order*** was procured by "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Rather, Dugaboy alleges that Patrick (who is not individually "an opposing party") defrauded DAF's charitable beneficiaries through a series of transactions that have nothing to do with Highland, Dugaboy, the 9019 Settlement, Patrick's authority and control over the relevant HMIT Entities, or the manner in which Patrick exercised such authority and control in entering into the 9019 Settlement. (*See* Mot. at 21–30.) Dugaboy does not present any evidence whatsoever that HMIT defrauded Highland, Dugaboy, or the Court in connection with the 9019 Settlement. Under Bankruptcy Rule 9019(a), the Court may approve a settlement if it is fair, reasonable, and "in the best interest[s] ***of the estate***." *Official Comm. of Unsecured Creditors v. Moeller (In re Age Refining, Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Dugaboy's allegations that Patrick defrauded *DAF's charitable beneficiaries* are irrelevant to whether the 9019 Settlement was in the best interests of the *Highland estate*. Nor does this alleged fraud constitute "fraud on the court," which is "a rarely applied doctrine that requires extreme circumstances" that "covers 'only the most egregious conduct' aimed at 'defiling the court itself,' such as 'bribery of a judge or members of the jury, or the fabrication of evidence by a party

-20-

in which an attorney is implicated.'" *BNP*, 2013 WL 5493125, at *5 (quoting *Jackson v. Thaler*, 348 F. App'x 29, 34 (5th Cir. 2009)).

40.     Because Dugaboy does not have any evidence of fraud in connection with the 9019 Order, let alone "prima facie" evidence of fraud, Dugaboy has served extensive discovery on HCMLP and others in the hopes of manufacturing some. That is exactly backwards. A party seeking to reopen a final judgment under Rule 60(b) must come forward with evidence to do so, otherwise final judgments would be meaningless. This Court should therefore enter a protective order preventing Dugaboy from seeking *any* discovery in connection with its Rule 60(b) Motion.[4]

## II.     DUGABOY'S REQUESTS ARE NOT RELEVANT TO ITS RULE 60(b) MOTION.

41.     "The party seeking discovery 'bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence.'" *Nichols v. White*, 2020 WL 8271876, at *1 (E.D. Tex. Feb. 10, 2020) (quoting *Camoco, LLC v. Leyva*, 2019 WL 6131452, at *2 (W.D. Tex. Nov. 19, 2019)). A discovery request is relevant only if it "is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Here, the discovery must be relevant to Dugaboy's Rule 60(b) Motion, not HMIT or the 9019 Settlement generally, because Rule 60(b) "seeks to rectify judgments improperly entered because of misrepresentations and unfair litigation tactics, not to provide a backdoor to undermine an otherwise valid merit-based dismissal of an action based on fraud or dishonesty." *Optimal Health Care Servs., Inc. v. Travelers Ins. Co.*, 801 F. Supp. 1558,

---

[4] Nor can Chief Judge Jernigan's recusal justify any of the discovery Dugaboy seeks. Contrary to Dugaboy's characterizations (*see* Mot. at 33–50), Chief Judge Jernigan in fact voluntarily decided to recuse herself from this case going forward, which does not call into question "the validity of any decision" she previously issued, including the 9019 Order. Order at 6 & n.3, *In re Compl. of Jud. Misconduct Under the Judicial Improvements Act of 2002*, No. 05-26-90042 (Dec. 29, 2025). As HCMLP will explain more fully in its forthcoming opposition to Dugaboy's Rule 60(b) Motion, Chief Judge Jernigan's recusal does not present any valid basis to vacate her prior decisions. In any event, none of the discovery Dugaboy seeks relates to Chief Judge Jernigan's recusal.

1561 (E.D. Tex. 1992) (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978)). None of Dugaboy's Requests are relevant to its Rule 60(b) Motion.

42.     As discussed above (*see supra* at ¶¶ 7, 38), Dugaboy alleges that Patrick used his control of DAF to defraud certain charitable beneficiaries, which is irrelevant to the 9019 Settlement between HMIT and Highland and the 9019 Order. But Dugaboy does not even seek documents regarding the alleged fraud among HMIT, DAF, and the charitable funds. Dugaboy instead attempts to re-take discovery on the Objections to the 9019 Settlement by seeking documents regarding the negotiation, drafting, and diligence of the 9019 Settlement (Request Nos. 1–7, 9–13, 18, 21); HMIT's diligence and analysis of the 9019 Settlement (Request Nos. 8, 14, 17); and the valuation of the Highland Entities and certain bankruptcy claims (Request Nos. 25, 30–33, 39–50, 53–55). None of this has anything to do with Dugaboy's Rule 60(b) Motion, so it is irrelevant. A Rule 60(b) motion is not an opportunity to "relitigate" claims, which "'would impermissibly give those plaintiffs a second bite at the apple.'" *Nowlin v. Shannon*, 2017 WL 8790963, at *1 (N.D. Tex. June 13, 2017) (quoting *Optimal Health*, 801 F. Supp. at 1561).

43.     Further, Dugaboy impermissibly seeks documents that did not exist until after the 9019 Order it seeks to vacate. "The Fifth Circuit is clear that 'evidence not in existence at the time of an earlier judgment is not an available ground for attacking that judgment[]'" as "newly discovered evidence" under Rule 60(b)(2). *Brown*, 2022 WL 22883290, at *3 (quoting *Southmark*, 742 F.2d at 873); *see also Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 158 (5th Cir. 2004) ("'[T]he newly discovered evidence must be in existence at the time of trial and not discovered until after trial.'") (quoting *Longden v. Sunderman*, 979 F.2d 1095, 1102–03 (5th Cir. 1992)). Similarly, "Rule 60(b)(3) is aimed at misconduct which occurs between the time the plaintiff files a lawsuit and the time the court enters judgment," not conduct that occurred after judgment. *Optimal Health*,

-22-

801 F. Supp. at 1561. But Dugaboy seeks documents "through the present," including documents regarding the implementation of the 9019 Order, which necessarily were not in existence at the time of the Order. (Requests at 18; *id.* No. 26.) Dugaboy cannot obtain such documents for its Rule 60(b) Motion as a matter of law.

44.    Dugaboy also seeks documents dated *years* before the 9019 Order in 2025, including documents regarding "the *2015* sale of Highland Capital Management, L.P. equity holders' stake to Hunter Mountain Investment Trust"; "the reasons behind the equity ownership allocation reflected in Highland Capital Management, L.P.'s Fifth Amended Plan of Reorganization," which was confirmed *in 2021*; "any tax benefit, tax efficiency, or charitable purpose associated with the restructuring of Highland Capital Management, L.P. ownership *in 2015*"; "the conversion of the charitable trust originally formed *in 2006* into a donor-advised fund investment vehicle for long-term charitable endeavors in or around *October 2011*." (Request Nos. 34–37.) Such documents cannot constitute "newly discovered evidence" under Rule 60(b)(2) because they could "have been discovered in time to move for a new trial." Fed. R. Civ. P. 60(b)(2). Nor can they support allegations of fraud under Rule 60(b)(3) because they do not concern alleged misconduct "between the time the plaintiff files a lawsuit and the time the court enters judgment." *Optimal Health*, 801 F. Supp. at 1561. Accordingly, they are not relevant to Dugaboy's Rule 60(b) Motion, clearly could have been sought before the hearing on the 9019 Settlement, and therefore cannot be subject to discovery.

### III.    DUGABOY'S REQUESTS ARE UNREASONABLY CUMULATIVE AND DUPLICATIVE BECAUSE IT ALREADY RECEIVED FULL DISCOVERY DURING OBJECTIONS TO THE 9019 SETTLEMENT.

45.    Under Rule 26(b)(2)(C), "the court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rules if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more

convenient, less burdensome, or less expensive; [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Both apply here because Dugaboy already had the opportunity to obtain discovery with the Objections to the 9019 Settlement, and Highland already produced more than 4,000 documents in response to such discovery.

46.     During the 9019 Settlement approval process, The Dallas Foundation and Crown Global raised Objections based on the exact same alleged conduct Dugaboy raises in its Rule 60(b) Motion. Specifically, The Dallas Foundation and Crown Global argued that "the Settlement is potentially tainted by the actions of Mark Patrick," because he "restructured the ownership of the HMIT Entities in a manner that seems to facilitate the diversion of millions of dollars in assets from the charitable entities that are the beneficial owners of the HMIT Entities," and the Dondero Foundations were challenging Patrick's actions through insolvency proceedings "under the supervision of the Cayman Islands court and the appointment of joint official liquidators." (Ex. 18 ¶¶ 2–3, 22–31; *see also id.* ¶¶ 14–21, 32–34.) After The Dallas Foundation and Crown Global voluntarily withdrew their Objections, with prejudice, Dugaboy began asserting the same objections during the 9019 Settlement approval hearing. (Ex. 11 (June 25, 2025 Hr'g Tr.) at 31:4–34:15.)

47.     The Objectors, including Dugaboy, had the opportunity to (and did, in fact) take discovery from Patrick and the HMIT Entities about these allegations, including deposing Patrick and examining him live at an evidentiary hearing. (*See supra* at ¶¶ 22-23.) Dugaboy did not raise any concerns that it did not receive sufficient discovery during the 9019 Settlement approval process and did not bring any motions to compel additional discovery. (*Id.*) Thus, Dugaboy has

already had more than "ample opportunity to obtain the information by discovery in the action."

Fed. R. Civ. P. 26(b)(2)(C)(ii).

48.     Further, many of Dugaboy's Requests seek the exact same documents it requested—and received—in discovery on the Objections to the 9019 Settlement. For example:

| Dugaboy's 9019 Document Requests | Dugaboy's Rule 60(b) Motion Requests |
|---|---|
| "All communications between [Highland] and the HMIT Entities . . . related to the proposed Settlement Agreement[.]" (Request No. 1.) | "All Documents and Communications between or among [Highland] and any of the HMIT Entities concerning the 9019 Settlement[.]" (Request No. 1.) |
| "All communications between [Highland] and any third-party related to the proposed Settlement Agreement." (Request No. 2.) | "All Communications between [HCMLP] and any third party relating to the Settlement Agreement, the 9019 Motion, or the HMIT Entities." (Request No. 24.) |
| "All drafts of the proposed Settlement Agreement." (Request No. 3.) | "All Documents and Communications between or among [Highland] and any of the HMIT Entities concerning the 9019 Settlement, including but not limited to draft agreements[.]" (Request No. 1.) |
| "All documents evidencing the extensive arm's-length, good faith negotiations over the last several months related to the proposed Settlement Agreement[.]" (Request No. 6.) | "All Documents and Communications relating to, referencing, or reflecting negotiations over the terms of the Settlement Agreement & General Release[.]" (Request No. 13.) |
| "Documents demonstrating any efforts by the Movants to sell or transfer the claims and causes of action that were asserted by the Litigation Trustee in the Amended Kirschner Complaint to any parties." (Request No. 12.) | "All Documents and Communications relating to, referencing, or reflecting negotiations over the terms of the Settlement Agreement & General Release, including . . . the transfer of the Kirschner Claims." (Request No. 13.)<br><br>"All Documents relating to the transfer of the Kirschner Litigation claims to the HMIT Entities pursuant to the 9019 Settlement, including any Communications discussing the strategic purpose, value, or intended use of such claims." (Request No. 15.) |

| Dugaboy's 9019 Document Requests | Dugaboy's Rule 60(b) Motion Requests |
|---|---|
| "Documents related to or identifying the value of any consideration received or exchanged as part of the proposed Settlement Agreement, including any communications related to the value of any such consideration." (Request No. 14.) | "All Documents and Communications relating to, referencing, or reflecting the consideration received by Hunter Mountain Investment Trust in exchange for entering into the Settlement Agreement & General Release dated May 19, 2025, including any valuations, appraisals, or analyses of the value received." (Request No. 12.) |

(Ex. 1 at 19–21; Ex. 19 at 4–5.)

49.     In response to the Objectors' discovery requests, Highland produced more than 4,000 documents, including all documents and communications between Highland and the HMIT Entities up to the execution of the 9019 Settlement on May 19, 2025. (*See supra* at ¶ 22.) During the hearing on the Objections, Highland entered into evidence 126 exhibits totaling 2,899 pages, including a demonstrative exhibit containing a complete, up-to-date structure chart of DAF and the HMIT Entities, which Dugaboy used to cross-examine Patrick. (*Id.*) Thus, Dugaboy's Rule 60(b) Requests are cumulative and duplicative of discovery on the Objections, and this Court "***must*** limit the frequency or extent" of such discovery. Fed. R. Civ. P. 26(b)(2)(C).

## IV.     DUGABOY'S REQUESTS ARE AN IMPROPER FISHING EXPEDITION SEEKING TO INVADE ATTORNEY-CLIENT PRIVILEGE AND CAUSE UNNECESSARY DELAY.

50.     In addition to all of the reasons set forth above, Dugaboy's Requests are also improper for at least four more reasons.

51.     ***First***, Dugaboy's Requests are vastly overbroad. For example, Dugaboy seeks "[a]ll Communications between [HCMLP] and James P. Seery, Jr." (Request No. 19.) Dugaboy thus seeks every single internal email HCMLP's CEO sent or received—regardless of whether they relate to the 9019 Settlement or the HMIT Entities—including privileged communications with attorneys. In fact, in its cover email Dugaboy demanded in bold that HCMLP "confirm that

you will search the emails of James P. Seery." (Ex. 1.) Dugaboy also seeks every single "Communication between [HCMLP] and *any third party* relating to the Settlement Agreement, the 9019 Motion, or the HMIT Entities," which again includes privileged communications with attorneys. (Request No. 24.) Courts in this Circuit routinely reject "discovery requests [that] are overbroad as written" or "facially overbroad." *Ramey v. Salazar*, 2018 WL 703431, at *2 (W.D. Tex. Feb. 2, 2018) (collecting cases); *see also Nichols*, 2020 WL 8271876, at *2 (quashing subpoenas because the "request is overbroad and unduly burdensome on its face"); *Balakrishnan v. Bd. of Super. of La. State Univ.*, 2010 WL 11538662, at *5 (E.D. La. July 26, 2010) (denying portion of motion to compel where "the Court finds that the request is facially overbroad").

52.      ***Second***, Dugaboy seeks documents not in HCMLP's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). For example, Dugaboy seeks documents regarding "due diligence performed *by any HMIT Entity* prior to the execution of the Settlement Agreement." (Request No. 8.) Dugaboy also seeks documents "sufficient to show the reason or rationale *for the HMIT Entities'* agreement to transfer or relinquish litigation rights previously asserted against Highland Entities in exchange for the consideration set forth in the Settlement Agreement." (Request No. 14.) And Dugaboy seeks documents regarding "any litigation commenced or actions *taken by Patrick or any HMIT Entity* using the Kirschner Litigation claims obtained through the 9019 Settlement." (Request No. 16.) Notably, Dugaboy also subpoenaed six HMIT Entities. (Ex. 2.) Thus, there is no valid basis to seek such discovery from HCMLP, which in any event does not possess any such documents.

53.      ***Third***, Dugaboy's Requests seek clearly privileged documents. Dugaboy's Requests seek communications with outside counsel (Request Nos. 22–23) and legal analysis and memoranda (Request Nos. 37–38, 41–43). Dugaboy's cover email also demanded, in bold, that

HCMLP "confirm that you will search the emails of . . . Richard M. Pachulski" (Ex. 1), who is the named partner of the law firm representing Highland as bankruptcy and litigation counsel, without explaining how or why his emails would be responsive to any specific Request. Dugaboy appears to acknowledge that its Requests seek privileged documents in a series of footnotes stating that "this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver." (Request Nos. 22–23, 37–38, 41–43 nn.3–9.) It is settled law that "the party seeking to breach the walls of privilege" must "produce evidence," such as "affidavits and exhibits," to "make the necessary *prima facie* showing for the application of the crime fraud exception" or subject-matter waiver. *Grand Jury Subpoena*, 419 F.3d at 336–37 (collecting cases). But Dugaboy provides "no evidence of that privilege being waived and no evidence to support Plaintiffs' claims that the crime/fraud exception applies." *Adams v. Hermann*, 2018 WL 5886800, at *4 (S.D. Tex. Nov. 9, 2018) (refusing to consider privileged communications and denying request for *in camera* review), *aff'd*, 973 F.3d 343 (5th Cir. 2020). Dugaboy thus has no basis to obtain privileged communications.

54.     ***Finally***, Dugaboy served its requests for improper purposes. Every party that serves a discovery request must certify that it is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii). Dugaboy waited six weeks from its Rule 60(b) Motion and three weeks from an agreed scheduling order to serve the Requests and set a return date of April 22, 2026, which is just five days before the scheduled hearing on the Rule 60(b) Motion. Predictably, when HCMLP tried to set a briefing schedule on this Motion, Dugaboy sought to delay the hearing. (Ex. 3.) Dugaboy is plainly trying to use the prospect of discovery to delay consideration of its meritless Rule 60(b)

Motion while it continues to litigate and re-litigate (and lose) on the same theory of fraud in courts across the world. This Court should reject such gamesmanship out of hand.

## V. DUGABOY'S SUBPOENAS AND DEPOSITION REQUESTS ARE IMPROPER.

55. For all the same reasons that Dugaboy's Requests are improper, this Court should also enter a protective order against Dugaboy's Subpoenas and request to take three depositions.

56. As to the Subpoenas, the Federal Rules require that Dugaboy "***must*** take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Dugaboy failed to do so. Instead, Dugaboy served massive Subpoenas totaling ***more than 500 requests*** on eight separate non-debtor entities and law firms. For example, the Subpoena to Beacon Mountain LLC contains ***99 requests***, the Subpoena to CLO Holdco, Ltd. contains ***74 requests***, the Subpoena to law firm Shields Legal Group P.C. contains ***77 requests***, and the Subpoena to law firm Kelly Hart & Hallman LLP also contains ***77 requests***. (Ex. 2.) Further, "under Fifth Circuit law," discovery requests to "counsel are disfavored and should be permitted only in limited circumstances." *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 2016 WL 3033544, at \*5–6 (N.D. Tex. May 26, 2016) (citing *Nguyen*, 197 F.3d at 209). Courts in this Circuit routinely enter "protective orders and quashal orders" against efforts to seek discovery from counsel, *id.* (collecting cases), and this Court should do the same here.

57. As to the depositions, they are also unduly burdensome, duplicative, and unnecessary. "Depositions are often overused" and are "the most costly and time-consuming activity in complex litigation." Fed. Jud. Ctr., Manual for Complex Litigation § 11.45 (4th ed. 2025). Dugaboy seeks to depose Patrick for eight hours, Seery for four hours, and Murphy for four hours. (Ex. 3.) Murphy is located in the Cayman Islands so, as a practical matter, Dugaboy has no way to take his deposition without his consent. *See* Fed. R. Civ. P. 45(c)(1)(A) (limiting deposition

travel "within 100 miles of where the person resides, is employed, or regularly transacts business in person"). If Murphy does not consent, Dugaboy will have to use international processes, such as the Hague Convention on Evidence or letters rogatory, to obtain the deposition, which can "take a year or more." U.S. Dep't of State, Preparation of Letters Rogatory.[5] Dugaboy already deposed Patrick and Seery during discovery on its Objections and then examined them again during the hearing on those Objections. (*See supra* at ¶¶ 22-23.) Dugaboy's request to examine Patrick and Seery a third time is "unreasonably cumulative or duplicative," because it "has had ample opportunity to obtain the information by discovery in this action." Fed. R. Civ. P. 26(b)(2)(C). It is time for this bankruptcy case and Dondero's continued harassment to end.

## PRAYER

WHEREFORE, HCMLP respectfully requests that this Court enter an order (1) protecting against Dugaboy's efforts to take discovery in connection with its Rule 60(b) Motion, including its Requests, Subpoenas, and deposition requests, and (2) granting HCMLP such other and further relief the Court deems just and proper under the circumstances.

---

[5] https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html.

Dated: April 1, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email:     jpomerantz@pszjlaw.com
              jmorris@pszjlaw.com
              gdemo@pszjlaw.com
              hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

-31-

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that, on April 1, 2026, John A. Morris, counsel for HCMLP, corresponded with Michael Gaddis, counsel for Dugaboy, regarding the relief requested in the foregoing Motion. Dugaboy's counsel advised HCMLP's counsel that Dugaboy is **OPPOSED** to the relief requested in the Motion.

*/s/ Zachery Z. Annable*
Zachery Z. Annable
