PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

HAYWARD PLLC
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

**HIGHLAND CAPITAL MANAGEMENT, L.P. AND THE HIGHLAND CLAIMANT TRUST'S OBJECTION TO DUGABOY'S MOTION FOR RELIEF FROM ORDER AND MOTION TO VACATE [DOCKET NO. 4513]**

4904-3615-2983.14 36027.003

**TABLE OF CONTENTS**

**Page**

SUMMARY OF HIGHLAND'S ARGUMENT .................................................................. 1

PROCEDURAL BACKGROUND AND FACTS ........................................................... 7

    A.    Primer on People and Entities Referred to in the Motion ............................... 7

    B.    Highland Seeks Approval of the 9019 Settlement .......................................... 9

    C.    Objections and Extensive Discovery ............................................................. 10

    D.    The Dallas Foundation Withdraws Its Objection:  Dugaboy Challenges Patrick's
Authority for the First Time at Trial ............................................................. 12

    E.    Patrick was Authorized to Act on the HMIT Entities' Behalf ...................... 13

        1.    Documentary Evidence Established Patrick's Authority ..................... 13

        2.    Dugaboy and Dondero Repeatedly Validated and Ratified  Patrick's
Authority ............................................................................................. 14

        3.    The Dondero Foundations Seek Injunctive Relief and a Receiver to
Replace Patrick as the DAF Entities' Control Person ........................ 16

        4.    No One Has Ever Sought to Remove Patrick  as the HMIT Entities'
Control Person ..................................................................................... 17

    F.    Correcting Dugaboy's Misstatements and Omissions ................................... 18

        1.    No "New Evidence" Exists for Purposes of Rule 60 .......................... 18

        2.    Dugaboy was Not Prevented from Preparing for Trial ....................... 23

        3.    Dugaboy Failed to Disclose the Adverse and Dispositive Decision  from
the Cayman Court ............................................................................... 23

        4.    Dugaboy Failed to Disclose that the Dondero Foundations Serve on the
Liquidation Committee in the Cayman Proceeding and Had Complete
Access to all Information in the Cayman Islands ............................... 25

        5.    Recusal, Which Dugaboy Grossly Misrepresents, is Irrelevant .......... 26

        6.    The Allegations of Fraud, Even if True, are Irrelevant ...................... 27

ARGUMENT ............................................................................................................. 29

    A.    Rule 60(b) Relief is Unwarranted ................................................................. 29

        1.    Legal Standard .................................................................................... 29

        2.    There is No "Newly Discovered Evidence" as Required  Under Rule
60(b)(2) ............................................................................................... 30

        3.    No Opposing Party Committed Fraud as Required  Under Rule 60(b)(3) ........... 35

        4.    No Extraordinary Circumstances Exist as Required  Under Rule 60(b)(6) ........ 39

    B.    Chief Judge Jernigan's Voluntary Recusal Provides No Valid Basis  to Vacate
the 9019 Settlement Order (or Anything Else) .............................................. 40

C.     This Court Lacks Jurisdiction to Grant the Motion  But Can—and Should—Deny
It .......................................................................................................................... 46

CONCLUSION .................................................................................................................... 50

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ackermann v. United States*,
  340 U.S. 193 (1950)......................................................................................... 44

*Blom Bank SAL v. Honickman,*
  605 U.S. 204 (2025).......................................................................................... 39

*Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*,
  249 F.3d 519 (6th Cir. 2001) ........................................................................... 30

*Canale v. Manco Power Sports, LLC*,
  2010 WL 2771871 (S.D.N.Y. July 13, 2010) ................................................... 29

*Dondero v. Jernigan*,
  2025 WL 1122466 (5th Cir. Apr. 16, 2025) ................................................ 42, 43

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*,
  2022 U.S. Dist. LEXIS 172351 (N.D. Tex. Sept. 22, 2022)................................ 2

*Edward H. Bohlin Co., Inc. v. The Banning Co., Inc.*,
  6 F.3d 350 (5th Cir. 1993) ............................................................................... 30

*Garcia v. Davis*,
  2018 WL 6305591 (N.D. Tex. Dec. 3, 2018) ................................................... 29

*Gen. Universal Sys., Inc. v. Lee*,
  379 F.3d 131 (5th Cir. 2004) ................................................................. 31, 32, 35

*Geron v. Holding Capital Grp., Inc. (In re PBS Foods, LLC)*,
  549 B.R. 586 (Bankr. S.D.N.Y. 2016).......................................................... 47, 48

*Goldstein v. MCI WorldCom*,
  340 F.3d 238 (5th Cir. 2003) ........................................................................... 31

*Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*,
  62 F.3d 767 (5th Cir. 1995) ........................................................................ 33, 39

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982)........................................................................................... 46

*Halliburton Energy Servs., Inc. v. NL Indus.*,
  618 F. Supp. 2d 614 (S.D. Tex. 2009) ......................................................... 30, 35

*Hesling v. CSX Transp., Inc.*,
  396 F.3d 632 (5th Cir. 2005) ............................................................... 31, 36, 39, 40

*Hess v. Cockrell*,
  281 F.3d 212 (5th Cir. 2002) ................................................................................ 29

*In re Coffman*,
  271 B.R. 492 (Bankr. N.D. Tex. 2002) ................................................................ 39

*In re Garcia*,
  756 F. App'x 391 (5th Cir. 2018) ........................................................................ 29

*In re Highland Cap. Mgmt., L.P.*,
  No. 21-10449 (5th Cir. Sept. 7, 2022) ................................................................ 18

*In re Highland Dall. Found., Inc.*,
  2026 Tex. App. LEXIS 1769 (Texas, 15th Dist. 2026) ...................................... 17

*In re Pettle*,
  410 F.3d 189 (5th Cir. 2005) .............................................................................. 30

*In re South*,
  647 B.R. 535 (Bankr. E.D. Tex. 2023) ................................................................ 30

*In re Waldrup*,
  2025 WL 2900358 (Bankr. S.D. Tex. Oct. 10, 2025) ......................................... 36

*In re Wigington*,
  2021 WL 2134651 (Bankr. E.D. Tex. May 25, 2021) ......................................... 30

*Info-Hold, Inc. v. Sound Merch., Inc.*,
  538 F.3d 448 (6th Cir. 2008) .............................................................................. 30

*Latshaw v. Trainer Wortham & Co., Inc.*,
  452 F.3d 1097 (9th Cir. 2006) ........................................................................ 37, 38

*Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*,
  825 F.2d 946 (6th Cir. 1987) .............................................................................. 44

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
  838 F.2d 1287 (D.C. Cir. 1988) .......................................................................... 44

*Liljeberg v. Health Serv. Acquisition Corp.*,
  486 U.S. 847 (1988) ...................................................................................... 44, 45

*Longden v. Sunderman*,
  979 F.2d 1095 (5th Cir. 1992) ........................................................................ 33, 39

*Millenkamp Cattle, Inc., v. E. Valley Dev., LLC (In re Millenkamp Cattle, Inc.)*,
  2025 Bankr. LEXIS 1987 (Bankr. D. Ida. Aug. 19, 2025) ................................ 47

*Nat'l Credit Union Admin. Bd. v. Gray*,
  1 F.3d 262 (4th Cir.1993) ................................................................................... 39

*Nat'l Labor Relations Bd. v. Jacob E. Decker and Sons*,
  569 F.2d 357 (5th Cir. 1978) .............................................................................. 31

*New York City Dev. Corp. v. Hart*,
    796 F.2d 976 (7th Cir. 1986) ........................................................................ 44

*Optimal Health Care Services, Inc. v. Travelers Ins. Co.*,
    801 F. Supp. 1558 (E.D. Tex. 1992) ............................................................. 36

*Parker v. Wal-Mart Stores, Inc.*,
    251 F.R.D. 222 (S.D. Miss. 2008), *aff'd,* 464 F. App'x 224 (5th Cir. 2010) .................. 31

*Patterson v. Mobil Oil Corp.*,
    335 F.2d 476 (5th Cir. 2003) ........................................................................ 44

*Rozier v. Ford Motor Co.*,
    573 F.2d 1332 (5th Cir. 1978) ...................................................................... 36

*Sensley v. Albritton*,
    385 F.3d 591 (5th Cir. 2004) ........................................................................ 45

*Sherman v. Verizon Virginia, Inc*., 220 F.R.D. 260 (E.D. Va. 2002), aff'd in part,
    dismissed in part, 55 F. App'x 136 (4th Cir. 2003) ....................................... 37

*Tate v. Valero Servs., Inc.*,
    2019 WL 6117793 (E.D. La. Nov. 18, 2019) ................................................ 37

*Trans Mississippi Corp. v. United States*,
    494 F.2d 770 (5th Cir.1974) ......................................................................... 31

*United States v. Hitchmon,*
    602 F.2d 689 (5th Cir. 1979) ........................................................................ 46

*United States v. Murphy*,
    768 F.2d 1518 (7th Cir. 1985) ...................................................................... 44


**STATUTES**

11 U.S.C. § 363(m) ............................................................................................ 46

28 U.S.C. § 455(a) ............................................................................................. 44


**OTHER AUTHORITIES**

Collier on Bankruptcy (16th ed.), ¶ 8008.01 .................................................... 46

*In re Compl. Of Jud. Misconduct Under The Jud. Improvements Act Of 2002*,
    No. 05-26-90042 (5th Cir. Dec. 29, 2025 ..................................................... 41

## **RULES**

Fed. R. Bankr. P. 7023 ............................................................................................ 31, 32, 33

Fed. R. Bankr. P. 8008 ..................................................................................................... 46

Fed. R. Civ. P. 59 ..................................................................................................... 3, 31, 32

Fed. R. Civ. P. 59(b) ............................................................................................ 5, 18, 31, 33

Fed. R. Civ. P. 60(b)(1) ..................................................................................................... 29

Fed. R. Civ. P. 60(b)(2) ............................................................................................... *passim*

Fed. R. Civ. P. 60(b)(3) ............................................................................................... *passim*

Fed. R. Civ. P. 60(b)(6) ............................................................................................... *passim*

Fed. R. Civ. P. 62.1(a) ..................................................................................................... 46

Highland Capital Management, L.P., the reorganized debtor in the above-captioned chapter 11 case (the "**Bankruptcy Case**"), and the Highland Claimant Trust (together, "**Highland**") objects to all relief sought in the *Motion for Relief from Order and Motion to Vacate* (Doc 4513, the "**Motion**")[1] filed by The Dugaboy Investment Trust ("**Dugaboy**") and states respectfully:

### SUMMARY OF HIGHLAND'S ARGUMENT

1.      Dugaboy[2] knows it has no "newly discovered evidence" or, for that matter, *any* evidence of fraud related to the 9019 Settlement. Dugaboy knows that none of the allegations it makes about breaches of fiduciary duty in the Cayman Islands involve Highland, any HMIT Entity, the 9019 Settlement, or even Dugaboy itself.[3] And Dugaboy knows—and knew when it filed its Motion—that the Grand Court of the Cayman Islands had already rejected its allegations in a written judgment in the Cayman Proceeding,[4] a judgment Dugaboy failed to disclose to this Court. The Motion is nothing more than a cynical attempt to relitigate issues and allegations that have already been fully considered by this Court (and some by other courts).

2.      James Dondero is a desperate man. Having stiffed multiple people and entities out of hundreds of millions of dollars, he caused Highland to file for bankruptcy protection in 2019. Then, after Dondero failed to coerce the same creditors to capitulate to his demands, this Court

---

[1] Capitalized terms used but not defined in this objection retain the meanings given to them in the Motion and the *Settlement Agreement and General Release* (Doc. 4255, Ex.1, the "**9019 Settlement**"), as applicable.

[2] There is no meaningful distinction between Dugaboy and Dondero; it's just one of the weapons he controls. *See, e.g.*, *Dugaboy Investment Trust v. Highland Capital Management, L.P.; Highland Claimant Trust,* No. 25-10999, 5th Cir., March 17, 2026 ("Dugaboy Investment Trust—controlled by HCM co-founder … James Dondero"); Motion at 1, 6 ("The Movant represents James Dondero"; "Dondero's affiliates (including Dugaboy)").

[3] Dugaboy has no interest in any entity against whom any "fraud" has been alleged. Except for the Dallas Foundation, which withdrew its objection with prejudice, no entity with even an arguable interest in the alleged fraud has ever appeared before this Court or challenged the 9019 Settlement.

[4] "**Cayman Proceeding**" refers to the Cayman Islands Official Liquidation proceeding in the Grand Court of the Cayman Islands (Cause No. FSD 201 OF 2025) for Charitable DAF Holdco, Ltd., a Cayman Islands exempted company ("**DAF Holdco**") which is not a party to the 9019 Settlement.

confirmed an otherwise consensual plan over his objections in a confirmation order the Fifth Circuit affirmed in nearly all respects. Dondero threatened Highland's independent fiduciaries in writing and he and his entities spent the next five years making good on those threats. He launched a series of increasingly caustic and baseless charges against Highland, none of which was ever validated. After a former employee, Mark Patrick, who has had full authority and control over DAF[5] for more than five years and all HMIT Entities for nearly four years, chose to exercise that authority over the HMIT Entities independent of Dondero's meddling and settle with Highland, Dugaboy objected. Following this Court's approval of the 9019 Settlement, Dugaboy appealed and then filed a Motion to Stay the 9019 Settlement Order. This Court denied the Motion to Stay but Dugaboy (naturally) appealed that too. And now, Dondero, using Dugaboy, cannot resist trying once again to "bamboozle" this Court.[6]

3. Indisputably, Patrick has completely controlled the HMIT Entities since 2022.[7] HMIT was originally formed as part of a tax scheme under which Dondero wanted to maintain "control" but legally could not for tax reasons. In early 2025, Patrick, after previously using his control to attempt to sue Highland and its fiduciaries in this Court, exercised his authority by choosing peace over Dondero's never-ending desire for more value-destructive conflict and resolved all HMIT disputes with Highland by entering into the 9019 Settlement. This Court

---

[5] "**DAF**" refers to, collectively, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership ("**DAF Fund**"), Charitable DAF GP, LLC, a Delaware limited liability company, CLO Holdco, Ltd., a Cayman Islands exempted company ("**CLO Holdco**"), and Liberty CLO Holdco, Ltd., a Cayman Islands exempted company ("**Liberty CLO Holdco**"). None of the entities that comprise DAF Holdco or DAF are parties to the 9019 Settlement.

[6] *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 172351, at *12 (N.D. Tex. Sept. 22, 2022)("In their [Dugaboy and Dondero's Get Good Trust] zeal to bamboozle this Court, the Trusts omit one crucial fact."((Starr, J.).

[7] Among its dizzying dump of contradictory assertions, Dugaboy admits Patrick has been the sole administrator with full authority and control over HMIT since August 12, 2022. *See, e.g.*, Motion at 3; *see also* Appellant The Dugaboy Investment Trust's Opening Brief, Case No. 3:25-cv-01876-K, N.D. Tex., Nov. 26, 2025, at 9 n.7 ("As Mark Patrick admitted at the hearing, he controls HMIT").

approved the 9019 Settlement last June, a settlement even Dondero implicitly concedes was in the

estate's best interests and satisfies Bankruptcy Rule 9019.

4.     Dondero and his proxies have challenged Patrick in this Court and three others over

alleged conduct that is entirely unrelated to Highland, the HMIT Entities, or the 9019 Settlement.

And in response to the 9019 Settlement, Dondero and his proxies have now separately challenged

or sought to impede implementation of the 9019 Settlement four different times. While doing so

betrays Dondero's desperation, certain indisputable facts show that the Motion was filed in bad

faith with an intent to deceive this Court, including:

- Despite focusing nearly all its attention on the Cayman Proceeding, Dugaboy failed to disclose that on February 10, 2026, following a two-day hearing in December 2025, the Grand Court of the Cayman Islands issued an exhaustive written opinion rejecting virtually all Dondero's claims (which were based on the same evidence Dugaboy offers here)—and, because a draft of the opinion was distributed on January 28, 2026, Dondero knew of the Cayman court's decision *before* Dugaboy filed this Motion.

- Dugaboy failed to disclose that on July 1, 2025—just one day after this Court entered the 9019 Settlement Order—The Highland Dallas Foundation, Inc., The Highland Kansas City Foundation, Inc., and The Highland Santa Barbara Foundation, Inc. (collectively, the "**Dondero Foundations**") filed a Petition in the Texas Business Court seeking injunctive relief against Patrick, and the appointment of a receiver, based on the same allegations presented in the Cayman Islands and the Motion, and that the case was abated for failure of the Dondero Foundations to join indispensable parties, the Cayman-appointed JOLs (after the Dondero Foundations entered into a Rule 11 Agreement that left Patrick's control intact).

- Dugaboy failed to disclose that the Dondero Foundations are members of the Liquidation Committee in the Cayman Proceeding and therefore had contemporaneous access to all the information filed in the Cayman Islands and that was otherwise in the JOLs' possession.

- Dugaboy failed to disclose that, before July 28, 2025 (the deadline for filing a motion for a new trial under Fed. R. Civ. P. 59), Dondero caused the same allegations of wrongdoing to be repackaged and asserted against Patrick in this Court, the Cayman Islands, the Texas Business Court, and the United States Bankruptcy Court for the District of Delaware.

- Dugaboy failed to disclose that The Dallas Foundation (the entity whose interests Dugaboy purportedly seeks to protect) (a) settled its disputes with Patrick as the HMIT Entities' control person and withdrew with prejudice its objection to the 9019 Settlement, (b) explicitly agreed that the 9019 Settlement barred The Dallas Foundation from asserting any Claim against any of the Highland Released Parties by, through, or under, including derivatively, any HMIT Entity (c) admitted under oath that it knew of no facts suggesting that Patrick lacked authority to enter into the 9019 Settlement on behalf of the HMIT Entities, and (d) has never taken any affirmative action against Patrick in his capacity as the HMIT Entities' control person.

- Dugaboy failed to disclose that Dondero and his affiliates have fully funded (on a tax-deductible basis) all of The Dallas Foundation's now-withdrawn litigation opposing the 9019 Settlement in this Court and all of the Dondero Foundations' and the Cayman-appointed JOLs' litigation against Patrick in the Cayman Islands, the Texas Business Court, and the United States Bankruptcy Court for the District of Delaware **on a for-profit basis.**

- The JOLs never objected to the 9019 Settlement, never appeared in Highland's bankruptcy case, never intervened in the Texas Business Court, never alleged that Patrick engaged in any wrongdoing with respect to any HMIT Entity, and never took any action against Patrick in his capacity as the HMIT Entities' control person.[8]

- Dugaboy failed to disclose that, in 2025, before *and* after the 9019 Settlement Order was entered, Dondero or his affiliates signed at least seven different agreements and stipulations with Patrick, acting on behalf of entities he controlled (including HMIT affiliates), thus validating and ratifying Patrick's apparent and actual authority to act for those entities.

- Dugaboy failed to disclose that on or about December 30, 2025, Dugaboy recognized the transfer of the Dugaboy Note (defined below) from Highland to HMIT pursuant to the 9019 Settlement as well as Patrick's continuing control of HMIT by paying HMIT the $1.357 million in principal and interest then due on the Dugaboy Note.

5.     Against this backdrop, Dugaboy seeks to use Rule 60 to vacate this Court's order approving the 9019 Settlement and on the utterly baseless assertion that Judge Jernigan's recent

---

[8] In fact, in many dozens of places in multiple pleadings, the JOLs (and Dugaboy) admit that Patrick controls the DAF entities that are the subject of the Cayman Proceeding. *See, e.g.*, The Dugaboy Investment Trust's Motion for Stay of 9019 Order, Doc. 4326, Ex. A. ("**JOL Writ**"),  ¶¶ 74.3–74.4 ("Mr. Patrick therefore assumed the Control Position [with respect to DAF Holdco and DAF] from [25 March 2021]." The JOL Writ does not mention **any** of the HMIT Entities.

and voluntary recusal is grounds for reviewing the entire bankruptcy case—and it seeks such relief even though its appeal of the 9019 Settlement Order is fully briefed and pending before Judge Kinkeade in the District Court. The Motion is beyond meritless.

6.    First, no "new evidence" exists warranting vacatur of the 9019 Settlement Order. Based on the unambiguous terms of Rule 60(b)(2), "newly discovery evidence" is limited to evidence "that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Because the 9019 Settlement Order was entered on June 30, 2025, Dugaboy had until July 28, 2025, to move for a new trial. In a transparent attempt to obfuscate the facts and its decision not to seek a new trial under Rule 59(b), Dugaboy dumped hundreds of exhibits spanning thousands of pages on the Court's docket, most of which lacked any description. To aid the Court, Highland created an index of Dugaboy's exhibits.[9] A quick review of Dugaboy's Index shows that nearly all Dugaboy's documents existed before July 28, 2025, and were either in Dugaboy's possession or could have been obtained with reasonable diligence.[10] The balance was *created* after July 28, 2025, and therefore cannot constitute "newly discovery evidence" for purposes of Rule 60(b)(2).  And Dugaboy has not (because it cannot) identified any exhibits or information that would have produced a different result if presented to this Court before it entered the 9019 Settlement Order. Dugaboy's reliance on Rule 60(b)(2) is unavailing.[11]

---

[9]  *See Declaration of John A. Morris in Support of Highland's Objection to Dugaboy's Motion for Relief from Order and Motion to Vacate [Doc 4513]* filed contemporaneously with this Objection ("Morris Dec."), Morris Dec. Exh A ("Dugaboy's Index").

[10] When Dugaboy objected to the Settlement Motion, it initiated a contested matter and gained all rights of discovery under Federal Rule of Bankruptcy Procedure 9014(c). Consequently, there is *nothing* Dugaboy learned after filing its objection that could not have been obtained "with reasonable diligence" in the discovery process had Dugaboy chosen to request it.

[11] Notably, Dugaboy never bothered to specifically identify the so-called "newly discovery" evidence or file a declaration explaining why such supposedly "newly discovered" evidence could not have been obtained with "reasonable diligence" or how it would have changed this Court's consideration of the 9019 Settlement.  In response to Highland's discovery request seeking confirmation as to what specific "newly discovered evidence" Dugaboy was relying on in support of its 60(b) Motion, Dugaboy simply reproduced the identical bundle of exhibits it had previously filed – virtually all of which predate July 28, 2025, the deadline for seeking a new trial.

4904-3615-2983.14 36027.003                5

7.      Second, Dugaboy fares no better in its empty allegations of fraud. For purposes of Rule 60(b)(3), "fraud" refers to fraud in the legal process concerning the challenged order or judgment, not some claim of fraud in transactions by separate entities that are not parties to the 9019 Settlement and that is the subject of a foreign proceeding wholly unrelated to the order at issue. Here, Dugaboy alleges no fraud by Highland (the "opposing party" for purposes of Rule 60(b)(3)) against either Dugaboy or this Court. Dugaboy (and The Dallas Foundation, the only party to actually question Patrick's authority to enter into the 9019 Settlement prior to withdrawing its objection with prejudice) conducted full discovery, including receiving over 4,000 documents and complete answers to interrogatories and taking *four* depositions of Highland and HMIT representatives (including Patrick). Dugaboy never moved to compel any withheld discovery or lodged any complaint about the discovery provided or the substance of the testimony or Seery or Patrick. Dugaboy has offered this Court nothing but a handful of belated gripes about Patrick's purported lack of responsiveness to a few questions. Those complaints, even if true, had no impact on Dugaboy's ability to fully and fairly present its case at the 9019 Hearing and it does not come close to meeting the high bar of proving fraud in the legal process by "clear and convincing evidence" for purposes of Rule 60(b)(3).

8.      Third, Dugaboy offers no "extraordinary circumstances" or anything else justifying relief under Rule 60(b)(6). In fact, Dugaboy's shameful, calculated failure to disclose the adverse Cayman Islands decision should alone mandate denial of the Motion. The interests of justice, including the need for finality, weigh heavily *against* giving Dugaboy a "do over" simply because it failed to impede the 9019 Settlement the first three times. And Dugaboy's insistence that it is fighting for "charities" is nonsense.[12] Rather, Dugaboy is fighting as the former holder of a

---

[12]  There is no reason The Dallas Foundation, the Greater Kansas City Community Foundation, or the Santa Barbara Foundation could not have initiated litigation in their own name. After all, The Dallas Foundation did so when

0.1866% prepetition limited partnership interest in Highland who fully understands (because its counsel admitted it) that unless the 9019 Settlement Order is overturned, the Highland case will effectively be over leaving Dondero with no path to seek his baseless retribution against Highland's fiduciaries and stakeholders.

9. Finally, Dugaboy bizarrely clings to "recusal" as a basis to re-open the Highland bankruptcy case despite knowing that the Fifth Circuit issued *three* separate decisions denying its recusal appeals (and the United States Supreme Court did so twice) without ever finding that Judge Jernigan was biased or prejudiced or should be recused. Judge Jernigan's voluntary recusal (while still maintaining she was impartial) changes nothing. In light of the Fifth Circuit's final judgments, this Court lacks jurisdiction to fashion any relief based on the false allegations previously presented and rejected—including the books.

## PROCEDURAL BACKGROUND AND FACTS

10. Because Dugaboy throws so much at this Court in an attempt to obfuscate and confuse, Highland provides here a straightforward, objective, and confirmable recitation of facts.

**A. Primer on People and Entities Referred to in the Motion**

11. Although certainly not exhaustive,[13] the following identifies and describes some of the entities and their control individuals relevant to the Motion:

- Highland: Co-founded and controlled by Dondero from inception in 1997 until January 2020, when Dondero voluntarily ceded control to an independent board pursuant to a Court-approved agreement. On August 11, 2021, Highland's Plan went effective and reorganized Highland emerged along with the newly formed Highland Claimant Trust.

---

opposing the 9019 Settlement Motion, before effectively consenting to the 9019 Settlement in the withdrawal of its objection. These foundations' decision to sit on the sidelines speaks for itself.

[13] *See* Doc. 2547, *Response and Disclosures Related to the Court's Order Requiring Disclosures,* dated July 9, 2021, along with a supplement dated July 12, 2021, at Doc 2556, for disclosures related to entities in the "DAF" structure. *See* Doc. 2541 and amendments at Docs 2545 and 2549 for similar disclosures related to Dugaboy.

- HMIT: Hunter Mountain Investment Trust was formed in 2015 by John Honis, Dondero's long-time friend and former employee, as part of a highly complex, tax-driven series of transactions designed to shield Dondero's Highland-generated income from taxes. (Mot. at 7) The transactions resulted in HMIT holding 99.50% of the limited partnership interests in Highland (100% of the Class B/C interests which are senior to the *de minimis* Class A interest under the Highland Plan). (Am. Compl. & Obj. to Claims, *Kirschner v. Dondero*, Adv. Proc. No. 21-03076-sgj (Bankr. N.D. Tex.), Dkt. 158 ¶ 27.) Honis had full authority and control of HMIT and the other HMIT Entities, which he voluntarily transferred to Patrick in August 2022 while Patrick was still effectively under Dondero's employ.

- Dugaboy: Formed in 2010 and controlled by Dondero with his sister, Nancy, serving as the titular trustee. Following the 2015 transactions involving HMIT described above, Dugaboy retained only a 0.1866% Class A limited partnership interest in Highland. Additionally, as of the date of the 9019 Settlement, Dugaboy was an obligor on a long-dated promissory note owed to Highland (the "Dugaboy Note"), which was sold to HMIT under the 9019 Settlement. Dugaboy is one of the defendants in an action originally commenced in this Court by the Highland Litigation Trustee. (Am. Compl. & Obj. to Claims, *Kirschner v. Dondero*, Adv. Proc. No. 21-03076-sgj (Bankr. N.D. Tex.), Doc. 158) That action was also transferred to HMIT under the 9019 Settlement. Although that action continues with HMIT as plaintiff, Highland and the Highland Litigation Trustee are no longer involved.

- The Dondero Foundations: Formed in 2011 and effectively controlled by Dondero as their founder, director, president, and principal officer. (Morris Dec. Ex. B (JOL Writ and Statement of Claim) ¶ 61.) The Dondero Foundations organizationally sit below larger foundations, like The Dallas Foundation. (Doc. 4521, Ex. E (Winding Up Petition) ¶¶ 12–13.) Each of the Dondero Foundations have three board members, one of which is Dondero and the other two are associated with the larger foundations. (Morris Dec. Ex. B (JOL Writ and Statement of Claim) ¶ 70.) Dondero is also the president of each Dondero Foundations and its largest, if not only, funder, and each is a member of the Cayman Islands Liquidation Committee for DAF Holdco. (Doc. 4534, Ex E (DAF Holdco Guidance Notes for Members of the Liquidation Committee).)

- DAF Holdco: Tax-blocker shell entity Dondero set up in 2011, now the subject of the Cayman Proceeding. (Doc. 4521, Ex. E (Winding Up Petition) ¶¶ 2, 5, 15; Doc. 4255, Ex. 119 (Dondero Apr. 2025 Aff.) ¶ 9; Morris Dec. Ex. C (Cayman Decision) ¶¶ 24–30.) For both tax and continuing Dondero "control" objectives, DAF Holdco issued non-voting Participating Shares to the Dondero Foundations. (Doc. 4521, Ex. E (Winding Up Petition) at ¶ 10(b); Doc. 4255, Ex. 119 (Dondero April 2025 Affidavit) at ¶ 19) Those Participating Shares were potentially entitled to discretionary distributions from DAF Fund, in which DAF Holdco held non-voting limited partnership interests. (Doc. 4521, Ex E (Winding Up Petition) ¶ 2) But such distributions, if any, were at the sole discretion of DAF Fund's general partner. (Morris Dec. Ex. C (Cayman Decision) at ¶¶ 108(7), 147–48.) Holders of the

Participating Shares do not have, and have never had, any governance, management, information, or control rights over DAF or the DAF Fund. (*Id.* ¶¶ 160–61) Complete control (the "**Control Person**") of (i) DAF Holdco is vested in the owner of the Management Shares of DAF Holdco, and (ii) DAF Fund is vested in the owner of the general partner of the DAF Fund. (Doc. 4521, Ex. E (Winding Up Petition) ¶¶ 10(d), 11; Ex. __ (Dondero Apr. 2025 Aff.) ¶ 12.) The Control Person was initially an individual named Grant Scott, a long-time friend of Dondero who was the best man at Dondero's first wedding. (Doc. 4521, Ex. E (Winding Up Petition) ¶ 16; Doc. 4255, Ex 119 (Dondero Apr. 2025 Aff.) ¶ 15.) Scott voluntarily transferred ownership of the Management Shares and the DAF Fund's general partner to Patrick in March 2021, while Patrick was still effectively under Dondero's employ, making Patrick the Control Person over DAF Holdco as well as DAF and DAF Fund and its subsidiaries. (Doc. 4521, Ex. E (Winding Up Petition) ¶ 16; Doc. 4255, Ex. 119 (Dondero Apr. 2025 Aff.) ¶¶ 17–18, 20–21.)

- <u>Mark Patrick</u>: a Highland tax department employee from approximately 2008 to early 2021. (Doc. 4255, Ex. 119 (Dondero Apr. 2025 Aff.) ¶ 17.) In 2021, Patrick continued his employment at an entity called Skyview, which provides "back office" (tax, legal, accounting, etc.) services to Dondero-controlled entities, including the entities in the DAF structure, just as Highland did before its Plan was confirmed. (*Id.* ¶ 18; Morris Dec. Ex. D (Patrick June 2025 Aff.) ¶¶ 66–70.) In late 2024, Patrick resigned from Skyview and ceased his affiliations with Dondero, including terminating applicable service agreements between the DAF entities he controlled and Skyview. (Morris Dec. Ex. D (Patrick June 2025 Aff.) ¶¶ 71, 147(f).)

**B.    Highland Seeks Approval of the 9019 Settlement**

12.    On May 19, 2025, Highland signed and moved[14] for this Court's approval of the 9019 Settlement with HMIT, the holder of the Class 10 fulcrum contingent trust interest that effectively determines whether subordinated Class 11 contingent trust interest holders (including Dugaboy) will ever receive a distribution from the Highland estate.[15] The 9019 Settlement was straightforward: Highland sold or transferred certain assets to HMIT and promised certain conditional future cash payments on account of its Class 10 interest; HMIT agreed to dismiss all pending litigation with prejudice and provide certain "Litigation Protections" to Highland; and the

---

[14] Doc. 4216.

[15] Dugaboy's Class 11 interest was always *de minimus*, contingent, and unvested. In fact, the Fifth Circuit has dismissed Dugaboy from several appeals for lack of standing, citing only the remote, speculative possibility that Dugaboy retains any cognizable pecuniary interest in the outcome of this Chapter 11 case.

parties agreed to liquidate and allow HMIT's Class 10 interest in a fixed amount.[16] As this Court observed when approving the 9019 Settlement, "the evidence was very thorough in showing that the compromise is a product of good faith and arm's-length negotiations … it's fair and equitable and in the best interest of the estate and within the range of reasonableness, given due regard for all of the expense, delay and likelihood of success … it looks like Hunter Mountain is getting a lot."[17]

13.     As the Court undoubtedly appreciates, approval of a settlement under Bankruptcy Rule 9019 requires the movant to satisfy but a modest standard. This Court already found that Highland easily met that standard and approved the 9019 Settlement in an order that is now on appeal at the District Court. Nothing in the Motion challenges this Court's findings that Highland and the 9019 Settlement satisfied Rule 9019 approval standards.

## C.     Objections and Extensive Discovery

14.     Three objections were filed challenging the proposed 9019 Settlement: (1) Patrick Daugherty objected based on his contention that the 9019 Settlement violated the absolute priority rule with respect to his fully reserved claim;[18] (2) The Dallas Foundation (and Crown Global) objected based on allegations that Patrick had somehow breached his fiduciary duties to them and engaged in self-dealing and other fraudulent conduct in connection with DAF Holdco, citing the Cayman Proceeding;[19] and (3) Dugaboy objected arguing that (a) the 9019 Settlement supposedly violated the Plan, (b) the proposed releases were overbroad, and (c) Highland had not presented sufficient evidence to support the 9019 Settlement's approval under Bankruptcy Rule 9019.

---

[16] Since entry of the 9019 Order, the 9019 Settlement has been fully consummated: the assets sold to HMIT have been transferred; the litigations have been dismissed with prejudice; the allowed Class 10 interests have received initial distributions; and Class 9 holders have received additional distributions.

[17] Doc. 4513, Ex. 23 (Hearing Transcript) at 256:3–5, 10–13, 258:5.

[18] Doc. 4229.

[19] Doc. 4231.

Critically, Dugaboy *did not object on ground that Patrick lacked authority* to act for the settling HMIT Entities or otherwise engaged in allegedly wrongful conduct—only The Dallas Foundation objected on that basis.[20]

15.     The parties engaged in extensive discovery. Dugaboy served document requests and interrogatories on Highland. Within days, Highland provided substantive written responses and produced over 4,000 of pages of documents, including all communications and information exchanged between representatives of Highland and HMIT before the 9019 Settlement was executed.[21] Dugaboy never objected to Highland's responses or document productions on any grounds and, for reasons known only to it, never served its own written discovery on HMIT.

16.     Dugaboy also took four depositions: (1) James P. Seery, Jr. ("**Seery**") Highland's CEO and the Highland Claimant Trustee; (2) David Klos, a Highland representative; (3) Sean Raver ("**Raver**"), an HMIT representative; and (4) Mark Patrick, the Administrator of HMIT and the control person for all the HMIT Entities.[22] In turn, Highland deposed Julie Diaz and Torrey Littleton,[23] executives at The Dallas Foundation, who each admitted that Patrick controlled HMIT and that they had *no evidence* of wrongdoing by Highland.[24]

17.     Dugaboy never moved to compel additional discovery, never objected to the answers provided by any of the four witnesses it chose to depose, and never contended during Patrick's or Raver's depositions or at trial that Patrick (Dugaboy did not call Raver to the stand) had failed to respond fairly to Dugaboy's questions.

---

[20] Doc. 4230.

[21] *See* Doc. 4280, Exhibits 2–57.

[22] *See* Doc. 4243, Doc 4244, Doc. 4245, and Doc. 4259, respectively (Dugaboy's deposition notices).

[23] *See* Doc. 4261 and Doc. 4264, respectively (Highland's deposition notices).

[24] Doc. 4251, Ex. F (Diaz deposition transcript) at 47:11—21, 57:12—19, 71:16—72:2; Doc. 4251, Ex. C (Littleton deposition transcript) at 50:8—57:8, 64:13—66:17, 68:21—70:9.  Diaz and Littleton are also officers of one of the Dondero Foundations.

**D.** **The Dallas Foundation Withdraws Its Objection:**
    **Dugaboy Challenges Patrick's Authority for the First Time at Trial**

18.    On the eve of the hearing, The Dallas Foundation—the purported economic beneficiary of HMIT and the only party to formally object to the 9019 Settlement based on Patrick's conduct or alleged deficiencies in his authority—resolved its disputes with HMIT, acknowledged that Patrick controlled the HMIT Entities and had authority to enter into the 9019 Settlement on their behalf, and withdrew its objection to the 9019 Settlement with prejudice, explicitly barring itself from asserting any claims against any Highland Released Party (as defined in in the 9019 Settlement) by, through, or under (including derivatively) any HMIT Entity.[25]

19.    Dugaboy and Daugherty, on the other hand, pressed their objections. Just before the trial began, in response to the Court's pointed inquiry, Dugaboy's counsel confirmed that Dugaboy *was not challenging* Patrick's authority to enter into the 9019 Settlement on HMIT's behalf.[26] But several minutes later, after speaking with a visibly agitated Dondero, Dugaboy's counsel abruptly changed course and announced that Dugaboy would, for the first time, challenge Patrick's authority to act for HMIT.[27]

20.    After asking rhetorically whether it would be an abuse of discretion to permit Dugaboy to change its position (and notwithstanding the supposed bias repeatedly alleged by Dugaboy), Judge Jernigan allowed Dugaboy to proceed with its newly-adopted argument.[28] Yet,

---

[25] *See* Doc. 4282 (*Stipulation Withdrawing Objection Of the Dallas Foundation And Crown Global Life Insurance, Ltd. for Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. §363 Approving Settlement with HMIT Entities and Authorizing Actions Consistent Therewith*); *see also* Doc. 4291 (Order approving stipulation between The Dallas Foundation and HMIT).

[26] This is important because, as discussed below, Dugaboy took this position *already knowing* what it now claims it didn't know at the time.

[27] Doc. 4296, Ex. 23 (June 25, 2025 hearing transcript) at 31:11-32:8 (Dugaboy representing that it was *not* challenging Patrick's authority), 33:11-43:3 (Dugaboy abruptly changing course and arguing over whether and how it should be permitted to do so).

[28] The in-hearing about-face epitomizes well the game of "whack-a-mole" that Highland has been forced to play throughout this case and in the more than 60 appeals Dondero entities have taken from this Court's orders in this case.

despite having the benefit of discovery, including the discovery obtained by The Dallas Foundation

on issues pertaining to Patrick's authority, the evidence remained unchanged and unequivocal:

Patrick was indisputably the duly authorized administrator of HMIT possessed with full authority

to bind HMIT and the other HMIT Entities to the 9019 Settlement with Highland.[29]

### E.      Patrick was Authorized to Act on the HMIT Entities' Behalf

21.      Extensive facts and circumstances conclusively demonstrate that Patrick was

authorized to negotiate, execute, and consummate the 9019 Settlement on the HMIT Entities'

behalf. In fact, Dondero and The Dallas Foundation have repeatedly admitted as much.[30]

#### 1.      Documentary Evidence Established Patrick's Authority

22.      Documentary evidence admitted at trial proved that Patrick was indisputably

authorized to act for the HMIT Entities for all purposes, including entering into the 9019

Settlement.[31] Dugaboy's repeated allegations that Patrick lacked such authority are both factually

wrong and legally deficient.

23.      HMIT is a Delaware statutory trust created and governed by the *Trust Agreement*

dated December 17, 2015, between Beacon Mountain, LLC as sponsor, John Honis, as

administrator, and Wilmington Trust, N.A. as Delaware trustee (the "**Trust Agreement**").[32]

Section 7 of the Trust Agreement expressly delegates to the administrator the exclusive right to

---

[29] Highland describes below how Dugaboy and other Dondero-controlled entities have, since then, ratified and acknowledged Patrick's authority to act for the HMIT Entities in other forums.

[30] *See*, *e.g.*, Doc. 4231 (Dallas Foundation Objection) ¶18 ("Through the Control Position, Mr. Patrick also manages the HMIT Entities . . ."); Doc. 4255, Ex. 119 (Dondero Affidavit) ¶¶ 40–41 (acknowledging Patrick's control as general partner of Atlas IDF, GP, LLC, an HMIT affiliate); Doc. 4521, Ex. F (Diaz Transcript) at 47:11–21, 57:12–19 (admitting that Patrick controls Rand and Diaz is unaware of any facts suggesting that Patrick lacked authority to enter into the Settlement on behalf of the HMIT Entities); Doc. 4521, Ex. C (Littleton Transcript) at 50:8–57:8 (admitting that Patrick was not required to obtain the consent of The Dallas Foundation, the Dondero Foundations, or Crown Global before entering into the 9019 Settlement).

[31] Doc. 4255, Exhibits 70–104.

[32] Doc. 4255, Ex. 70 (*Trust Agreement* dated December 17, 2015).

"settle, compromise, submit to arbitration, or submit to any court having jurisdiction in the matter any matters in dispute …"

24.     No one disputes that, on August 12, 2022, Patrick replaced Honis as HMIT's administrator with all rights, powers, and interests appurtenant to that position.[33] Since that time, no one has ever sought Patrick's removal as HMIT's administrator and Patrick's authority as HMIT's administrator has never been challenged. Consequently, Patrick has solely controlled HMIT since that time and possesses and has exercised full authority under the Trust Agreement—including the authority vested in him under Section 7 to settle and compromise any claims asserted by or against HMIT. To argue otherwise is to lie.[34]

### 2.     Dugaboy and Dondero Repeatedly Validated and Ratified Patrick's Authority

25.     While contending in this Court that Patrick has engaged in wrongdoing that somehow impairs his authority to act on behalf of the HMIT Entities or the DAF Entities, Dugaboy and other Dondero-controlled entities have, when it suits them, openly and repeatedly recognized Patrick's authority and control over such entities and their affiliates both before and after the 9019 Settlement Order was entered. For example:

- On January 10, 2025, Dondero (as President of Highland CLO Management, Ltd.) and Patrick (as HMIT's administrator) executed an *Intercreditor and Participation Agreement* resolving a dispute over who controlled HMIT.[35]

---

[33] Doc. 4255, Ex. 75 (Hunter Mountain Investment Trust Appointment of Successor Administrator, dated August 12, 2022). In addition to HMIT, on August 1, 2022, Honis voluntarily transferred ownership and control of Atlas IDF GP, LLC, Rand PE Fund Management, LLC, and Rand Advisors, LLC to a Patrick-controlled affiliate, thus giving Patrick complete authority and control over every HMIT Entity.

[34] Under the 9019 Settlement, Patrick authorized HMIT to resolve litigation that was either initiated jointly with Dugaboy or that Dugaboy otherwise supported. *See* Doc. 4255, Ex. 1 at 6–7 (Settlement Agreement and General Release, definition of "Pending Litigation").

[35] Doc. 4255, Ex. 69. This agreement was executed after Patrick learned that Dondero had usurped Patrick's authority by having Dondero's counsel sign another agreement on HMIT's behalf without seeking or obtaining Patrick's prior approval. Dondero knew of Patrick's supposed wrongdoing when he entered into this agreement. *See* Doc. 4255, Ex. 119 (Affidavit of Dondero in Cayman Proceeding) ¶¶20-33.

- On the same day, another Dondero-controlled entity entered into a remittance agreement with Patrick (on behalf of DAF Holdco and another DAF Entity) that caused the Dondero-controlled entity to remit approximately $8.3 million to the Patrick-controlled entities.[36]

- On July 11, 2025, the Dondero Foundations and Patrick, acting on behalf of DAF Fund and certain of its affiliates (including certain entities Dondero alleges were created as part of Patrick's fraudulent scheme), entered into a "Rule 11 agreement" under which the Dondero Foundations' claims for the appointment of a receiver and other injunctive relief were resolved with Patrick's retaining control of all entities.[37]

- On September 30, 2025, NexBank (the Dondero-owned Texas bank) and MidWave Wireless Inc. (a portfolio company owned by multiple Dondero-managed funds), and DAF entity CLO Holdco executed an amendment to a credit agreement. A NexBank representative signed as Administrative Agent and Patrick signed on behalf of CLO Holdco.[38]

- On December 3, 2025, Patrick, acting on behalf of DAF entity Liberty CLO Holdco and Dugaboy entered into a *Stipulation* settling a dispute whereby Liberty CLO Holdco withdrew its Complaint with prejudice with Patrick retaining full authority over Liberty CLO Holdco.[39]

- On December 8, 2025, Patrick, acting on behalf of Atlas IDF, L.P. (an HMIT Entity), and NexPoint Real Estate Partners ("NREP", an entity owned and controlled by Dugaboy) entered into an *Agreed Final Judgment* under which NREP agreed to pay Atlas IDF over $14 million as the guarantor of certain defaulted promissory notes.[40]

- On or about December 30, 2025, Dugaboy recognized the 9019 Settlement transfer of the Dugaboy Note from Highland to HMIT as well as Patrick's control of HMIT by paying HMIT the $1.357 million in principal and interest then due on the Dugaboy Note.

26.    Thus, despite baselessly challenging Patrick's authority in this Court, Dugaboy and Dondero have no qualms about engaging with Patrick on behalf of the DAF as well as the very same HMIT Entities that are the subject of the Motion. They have repeatedly validated and ratified

---

[36] Morris Dec. Ex. E.

[37] Morris Dec. Ex. F.

[38] Morris Dec. Ex. G.

[39] Morris Dec. Ex. H.

[40] Morris Dec. Ex. I.

Patrick's control over those entities and their affiliates. It apparently only becomes a problem when Highland contracts with those entities and those agreements thwart Dondero's ceaseless litigation campaign.

> **3.  The Dondero Foundations Seek Injunctive Relief and a Receiver to Replace Patrick as the DAF Entities' Control Person**

27.     The very next day after this Court entered the 9019 Settlement Order, Dondero opened another front in his assault against Patrick. On July 1, 2025, the Dondero Foundations sued Patrick and certain of his affiliates (collectively, the "**DAF Parties**") in the Texas Business Court, First Division, Case No. 25BC01B-0027 (the "**Dondero Foundations' Action**"), asserting a variety of claims and asking the court to impose a constructive trust and appoint a receiver over certain DAF Parties. The Dondero Foundations' Action included, among other things, another affidavit from Dondero.[41] By their own admission, the Dondero Foundations' arguments were premised on the "same facts" used to support the Dondero Foundations' winding-up petition and supervision application in the Cayman Islands and The Dallas Foundation's objection to the 9019 Settlement Motion (i.e., Patrick's alleged misuse of corporate authority in the management and restructuring of DAF Holdco).[42] In fact, Dondero's affidavit in the Dondero Foundations' Action is largely cut and pasted, verbatim, from his prior affidavit filed on April 16, 2025, in the Cayman Islands in support of winding up DAF Holdco.[43]

28.     With notice of the JOLs' Chapter 15 petition filed in the District of Delaware on July 21, 2025, the Texas Business Court abated the Dondero Foundations' Action on September

---

[41] Doc 4251, Ex. H, Ex. 6 (Dondero affidavit (7/1/25).

[42] Doc. 4521, Ex. H (Plaintiffs' Original Petition, Application for Temporary Restraining Order and Temporary Injunction, and Emergency Request for Appointment of Receiver) ¶ 5.54 ("Cayman Islands counsel for the Supporting Organizations alleged essentially the same facts as recounted in this Petition before the Grand Court").

[43] *Compare* April 16, 2025 Affidavit of Dondero in Cayman Proceeding, Doc. 4255, Ex. 119, *with* July 1, 2025 Affidavit of Dondero in Dondero Foundation Action. He even left in the European style dates in certain paragraphs. *See, e.g.,* Doc. 4251, Ex. H, Ex. 6, ¶¶ 6, 7, 18, and 22.

18, 2025, finding the JOLs were "necessary parties" under applicable law and that abatement was required until the JOLs "become parties, voluntarily or involuntarily."[44] The Dondero Foundations subsequently moved to reconsider the September order, which the Texas court denied,[45] finding that, if they held any claims at all, the Dondero Foundations held only derivative claims against the DAF Parties, which could not be asserted without the JOLs' joinder, and re-affirmed its decision abating the Dondero Foundations Action.[46] Importantly, the Dondero Foundations entered a Rule 11 Agreement immediately after the filing of the petition initiating the Dondero Foundations' Action, that left Patrick's control intact, which remains in effect.[47]

29.     To state the obvious, Patrick remains in control of the DAF Parties (and DAF) despite the Dondero Foundations' Action. The HMIT Entities—which, again, were never mentioned in the Dondero Foundations' petition in the Dondero Foundations' Action or in Dondero's affidavit—also remain under Patrick's control. Patrick remained unsullied by any court's finding that he engaged in any wrongdoing at any time.

### 4.     No One Has Ever Sought to Remove Patrick as the HMIT Entities' Control Person

30.     For all of Dugaboy's bluster, it is indisputable that the JOLs (appointed as liquidators solely over DAF Holdco) have *never objected* to the 9019 Settlement nor have they ever appeared in this bankruptcy case. This remains true despite the supposed "newly discovered evidence" that Dugaboy pretends exists; indeed, to the best of Highland's knowledge, the JOLs

---

[44] *Order*, dated September 18, 2025, ¶ 3.

[45] *Order*, dated October 31, 2025, ¶ 1 ("The court (i) grants plaintiffs' October 22, 2025, Motion for Leave to File Motion for Reconsideration as to Complete Relief, (ii) deems plaintiffs' Motion for Reconsideration filed, and (iii) denies the same").

[46] Refusing to relent in the face of two failures, the Dondero Foundations subsequently sought a writ of mandamus, which was denied on February 24, 2026. *In re Highland Dall. Found., Inc.*, 2026 Tex. App. LEXIS 1769 (Texas, 15th Dist. 2026).

[47] Morris Dec. Ex. F, Rule 11 Agreement, ¶7.

have never sought any relief in any court pertaining to the 9019 Settlement or Patrick's authority over the HMIT Entities. Nor have they alleged that Patrick engaged in *any* wrongdoing with respect to Highland, the HMIT Entities, or the 9019 Settlement.[48]

31.     Indeed, *no one* has ever sought to remove Patrick as HMIT's administrator or as the authorized representative of any of the HMIT Entities. *No one* (other than Dugaboy, baselessly, in the Motion) has ever contended that Patrick breached his fiduciary duties or otherwise engaged in wrongdoing as HMIT's administrator, the control person of the other HMIT Entities, or in connection with the 9019 Settlement.

**F.     Correcting Dugaboy's Misstatements and Omissions**

32.     In its hopeless effort to meet the exacting Rule 60 standard for vacating the 9019 Settlement Order, Dugaboy indulges in the same type of blunderbuss approach the Fifth Circuit chastised it for,[49] layering false statements, mischaracterizations, and material omissions of fact in a motion filled with "sound and fury, signifying nothing."[50]

### 1.     No "New Evidence" Exists for Purposes of Rule 60

33.     Dugaboy has buried the Court in paper in an obvious attempt to obscure that no "new evidence" exists for purposes of Rule 60. Under Rule 60(b)(2), "newly discovered evidence" is evidence that "could not have been discovered in time to move for a new trial," within 28 days after the entry of judgment; here, July 28, 2025.[51]

---

[48] The JOLs have indicated that their claims against Patrick have nothing to do with Highland or the 9019 Settlement by advising the Delaware banktupcy court that: "The JOLs believe the the Cayman Court is the appropriate forum to adjudicate causes of action that belong to [DAF Holdco] as asserted in the [Cayman Proceeding]." (Morris Dec. Ex. J (Ch. 15 Verified Petition) at ¶ 99).

[49] *In re Highland Cap. Mgmt., L.P.*, No. 21-10449, at 16 (5th Cir. Sept. 7, 2022).

[50] Shakespeare, *Macbeth,* Act V, Scene 5.

[51] Here, the Judgment was entered on June 30, 2025 (Doc. 4297), so the deadline for a new trial under Rule 59(b) was July 28, 2025.

34.     On February 9, 2025, Dugaboy filed 54 exhibits spanning more than 1,100 pages with an index that omitted dates for many of the exhibits.[52] On February 27, 2025, Dugaboy dumped a 1,789-page "supplement" of over 100 additional exhibits—with no cover sheet, no index, and no explanation of any kind.[53] To bring clarity to Dugaboy's curated chaos, and for the Court's convenience, Highland prepared Dugaboy's Index, including available dates.[54] Dugaboy's Index shows that virtually every document existed and was either already in Dugaboy's possession or, with reasonable diligence, could have been obtained before July 28, 2025. The same substantive allegations concerning Patrick's supposed misconduct with respect to DAF Holdco and the DAF entities (none of whom are party to the 9019 Settlement) were pressed in various forms to four different courts before July 28, 2025, and can all be found in the following documents (collectively, the "**Lead Documents**"):

- *Affidavit of James David Dondero*, sworn to on April 16, 2025, and filed in the Grand Court of the Cayman Islands (the "**Dondero Affidavit**").[55]

- *The Winding Up Petition* filed by the Dondero Foundations in the Grand Court of the Cayman Islands on April 23, 2025 (the "**Winding Up Petition**").[56]

- The Dondero Foundations' *Petition for Court Supervision of a Voluntary Liquidation of DAF Holdco* and the JOL's appointment on May 2, 2025 (the "**Supervision Application**").[57]

- The Dallas Foundation's objection to the 9019 Settlement filed on June 9, 2025 (the "**Dallas Foundation Objection**").[58]

---

[52] Doc. 4513.

[53] Doc. 4521. *See also* Doc 4525 (more unorganized exhibits spanning about 130 pages filed under seal).

[54] Morris Dec. Ex.A.

[55] Doc. 4255, Ex. 119.

[56] Doc. 4521, Ex. E.

[57] Doc. 4521, Ex. G, Ex. 67.

[58] Doc. 4231.

- The depositions of Messrs. Patrick and Raver (the "**Patrick Deposition**" and the "**Raver Deposition**", as applicable).[59]

- Highland's Court-admitted Exhibits[60]

- The 9019 Hearing Transcript[61]

- The Dondero Foundations' *Original Petition, Application for Temporary Restraining Order and Temporary Injunction and Emergency Request for Appointment of Receiver* filed in the Texas Business Court on July 1, 2025 (the "**Dondero Foundations' Action**").[62]

- The *Writ of Summons and Statement of Claim* filed by the JOLs in the Grand Court of the Cayman Islands on July 15, 2025 (defined above as the "**JOL Writ**").[63]

- Dugaboy's *Motion to Stay 9019 Order* filed in this Court on July 17, 2025,[64] denied by this Court in a 16-page *Memorandum Opinion and Order* on July 21, 2025 (the "**Motion to Stay**").[65]

- The *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "**Ch. 15 Petition**") and the accompanying *Declaration of Margot MacInnis* (including 94 exhibits), sworn to on July 21, 2025, and filed in United States Bankruptcy Court for the District of Delaware (the "**July 2025 MacInnis Declaration**").[66]

35.     Based on the Lead Documents alone, Dugaboy knew everything it claims only now to have "discovered" regarding Patrick's alleged fraud, self-dealing, and breaches of fiduciary duty in connection with the "restructuring" of DAF Holdco, *which does not even involve HMIT or any HMIT Entity.*

---

[59] Doc. 4513, Ex. 49 (Patrick Deposition); Morris Dec. Ex. K (Raver Deposition).

[60] Doc. 4255.

[61] Doc. 4269.

[62] Doc. 4521, Ex. H.

[63] Doc. 4326, Ex. A.

[64] Doc. 4326.

[65] Doc. 4333.

[66] Doc. 4521, Ex. G (including the 94 exhibits).

36.    In addition to the Lead Documents, the following chart briefly summarizes certain facts that Dugaboy now pretends it was unaware of but which were all known to Dugaboy before July 28, 2025, and therefore cannot constitute "newly discovered" evidence:[67]

| Alleged "New" Information | How Dugaboy / Dondero Already Knew (not exhaustive) | By when? |
|---|---|---|
| Patrick has controlled DAF Entities since 2021 | • Dondero Affidavit of April 16, 2025<br>• Winding Up Petition of April 23, 2025<br>• Dallas Foundation Objection of June 9, 2025<br>• Dondero Foundations Action of July 1, 2025<br>• 2021 CLOH SH Resolutions of April 2, 2021[68]<br>• DAF GP Assignment and DAF Holdco Share Transfer of March 24, 2021[69] | March 2021 |
| Patrick has controlled HMIT Entities since 2022 | • Dondero Affidavit of April 16, 2025<br>• Dallas Foundation Objection of June 9, 2025<br>• Membership Interest Purchase Agreement of August 1, 2022[70]<br>• Atlas GP, Rand Advisors, and Rand GP Consents of October 13, 2022[71]<br>• HMIT Appointment of August 12, 2022[72] | August 2022 |
| CDH GP replaced DAF GP as general partner of DAF Fund | • Winding Up Petition of April 23, 2025<br>• Dallas Foundation Objection of June 9, 2025<br>• Raver Deposition of June 20, 2025<br>• Foundations Action of July 1, 2025<br>• JOL Writ of July 15, 2025<br>• Chapter 15 Petition of July 21, 2025 | April 2025 |
| DFW Foundation was formed by Patrick with Patrick as its sole member | • Supervision Application of May 2, 2025<br>• Dallas Foundation Objection of June 9, 2025<br>• Foundations Action of July 1, 2025<br>• JOL Writ of July 15, 2025<br>• Dugaboy Stay Motion of July 17 2025<br>• Ch. 15 Petition of July 21, 2025 | May 2025 |
| DAF Holdco issued participating shares to DFW Foundation, diluting supporting organizations | • Supervision Application of May 2, 2025<br>• Dallas Foundation Objection of June 9, 2025<br>• Raver Deposition of June 20, 2025<br>• Dondero Foundations Action of July 1, 2025<br>• JOL Writ of July 15, 2025<br>• Ch. 15 Petition of July 21, 2025 | May 2025 |

---

[67] In the interests of brevity, Highland has omitted citations to dozens of court-filed documents and other authenticated documents substantiating the contents of the following chart.

[68] Doc. 2547, Ex. 29.

[69] Doc. 2547, Ex. 15, 27.

[70] Doc. 4255, Ex. 86.

[71] Doc. 4255, Ex. 82, 87, 88.

[72] Doc. 4255, Ex. 75.

| Alleged "New" Information | How Dugaboy / Dondero Already Knew (not exhaustive) | By when? |
|---|---|---|
| DAF Holdco transferred DAF Fund to CDM, CDM redeemed DAF Holdco, supporting organizations left with no remaining interest in DAF Fund | • Supervision Application of May 2, 2025<br>• Dallas Foundation Objection of June 9, 2025<br>• Patrick Deposition of June 23, 2025<br>• Raver Deposition of June 20, 2025<br>• 9019 Hearing Transcript<br>• Dondero Foundations Action of July 1, 2025<br>• JOL Writ of July 15, 2025<br>• Ch. 15 Petition of July 21, 2025 | May 2025 |
| Beacon Mountain (and HMIT indirectly) was sold to CLOH,[73] Patrick controlled CLOH, DFW Foundation is ultimate owner | • Dondero Affidavit of April 16, 2025<br>• Winding Up Petition of April 23, 2025<br>• Dallas Foundation Objection of June 9, 2025<br>• Raver Deposition of June 20, 2025<br>• Patrick Deposition of June 23, 2025<br>• Littleton Deposition of June 23, 2025<br>• Highland Ex. 95[74]<br>• 9019 Hearing Transcript; Highland Demonstrative[75]<br>• Email of March 12, 2025<br>• Beacon Mountain Second Amended and Restated LLC Agreement of February 12, 2025 | April 2025 |
| Atlas IDF placed into dissolution | • Dondero Affidavit of April 16, 2025<br>• Winding Up Petition of April 23, 2025<br>• Dallas Foundation Objection of June 9, 2025 | April 2025 |
| Allegations re DAF directors' fees, expenses, and remuneration | • Dondero Affidavit of April 16, 2025<br>• Winding Up Petition of April 23, 2025<br>• Dallas Foundation Objection of June 9, 2025<br>• Foundations Action of July 1, 2025<br>• JOL Writ of July 15, 2025<br>• Ch. 15 Petition of July 21, 2025 | April 2025 |
| Allegations re Creative HEARTS TX donation | • Dondero Affidavit of April 16, 2025<br>• Winding Up Petition of April 23, 2025<br>• Dallas Foundation Objection of June 9, 2025<br>• Dondero Foundations Action of July 1, 2025 | April 2025 |
| Allegations re proposed fee split with Cronin/Fortaris Capital Advisors | • Dondero Affidavit of April 16, 2025<br>• Winding Up Petition of April 23, 2025<br>• Dallas Foundation Objection of June 9, 2025<br>• Dondero Foundations Action of July 1, 2025 | April 2025 |

---

[73] CLOH refers to CLO Holdco LLC (Delaware), the parent of Beacon Mountain LLC (Delaware) which is an HMIT Entity.

[74] Doc. 4255.

[75] Doc. 4296 (9019 Hearing Transcript; Morris Dec. Ex. L at Slide 9 (Highland Rule 9019 Presentation presented as a demonstrative exhibit at the 9019 Hearing).

## 2.   Dugaboy was Not Prevented from Preparing for Trial

37.   Dugaboy contends for the first time here that it was denied discovery. That contention is risibly **false**.

38.   Dugaboy never challenged any of the documents or information Highland promptly produced in response to Dugaboy's document requests (Highland produced over 4,000 pages of documents) and interrogatories. Neither did Dugaboy challenge any of Patrick's or Raver's answers in their depositions other than a few immaterial answers. In fact, any fair reading of Patrick's deposition transcript shows that he answered all substantive questions put to him, including who owned HMIT and who controlled all of HMIT's affiliates. And those answers were consistent with Raver's deposition testimony. Dugaboy's own counsel elicited this same testimony at trial. Dugaboy cannot dispute that it never objected to Patrick's or Raver's answers during the depositions or the trial or lodged any complaint of any kind that Dugaboy was somehow unable to get information it believed it needed to pursue its objection.[76]

## 3.   Dugaboy Failed to Disclose the Adverse and Dispositive Decision from the Cayman Court

39.   While imploring this Court to hold approval of the 9019 Settlement in abeyance while the Cayman Proceeding "played out," Dugaboy deliberately failed to tell this Court those proceedings *had already* played out and that the JOLs and the Dondero Foundations lost. A lie of omission is no less a lie.

---

[76] Although Dugaboy moved for a "stay" on July 17, 2025, based on the JOL Writ filed in the Cayman Proceeding two days earlier, this Court denied that stay because, among other reasons, it reaffirmed that (i) the Settlement Agreement was fair and equitable, within the range of reasonableness, and in the best interests of Highland's estate being administered under a confirmed plan by disinterested fiduciaries; (ii) Patrick controlled the HMIT Entities; (iii) The Dallas Foundation withdrew its objection to the Settlement with prejudice; and (iv) nothing about the Court's issuance of the Settlement Order affected the Cayman Proceeding or any other investigation. Even when given an opportunity to allege evidence so much as *implying* that the Cayman Proceeding was at all related to HMIT or Patrick's authority over HMIT, Dugaboy failed. And it failed because no such evidence exists. **There is no connection between the DAF Holdco liquidation and the 9019 Settlement or the HMIT Entities.**

40.     On February 10, 2026, following a two-day hearing in December 2025, the Grand Court of the Cayman Islands issued a 56-page written judgment (the "**Cayman Decision**") rejecting virtually all of the claims asserted in the JOL Writ filed on July 15, 2025.[77] The Cayman Decision, like the JOLs' pleadings, **never mentions HMIT (or any other HMIT Entity) or the 9019 Settlement**. In detailed findings, the Cayman court denied the JOLs' motion for a proprietary injunction, made substantial findings in Patrick's favor, and affirmed Patrick's past and continued control of the entities and assets in question.[78] Among other findings, the Cayman court expressly found that DAF Holdco, the sole entity over which the JOLs have been appointed as liquidators, had no control over any of the entities or assets that Patrick controls.[79] It remains true that the Cayman Proceeding has nothing to do with HMIT or the other HMIT Entities, nothing to do with Highland, and nothing to do with the 9019 Settlement.

41.     Disturbingly, Dugaboy possessed an advance draft of the Cayman Decision before filing the Motion but failed to disclose its existence or contents to this Court. Having pleaded with this Court to wait for the JOLs to complete their investigation, and for the Cayman Proceeding to be completed before ruling on the 9019 Settlement Motion, Dugaboy's failure to disclose that the JOLs' investigation was complete and that the Cayman court issued an adverse ruling is unethical and an abuse of process for which Dugaboy and its counsel should be held to account.

---

[77] Morris Dec. Ex. B (JOL Writ) and C (Cayman Decision).

[78] The Cayman court did leave open the modest possibility for a potential claim for monetary damages for breach of fiduciary duty, but stated any damages would be paid from the DAF Fund's assets, not Patrick.

[79] "The Court has carefully considered whether [DAF Holdco], as a limited partner in the [DAF] Fund, has a proprietary interest as a limited partner which would entitle it to be protected by way of the injunction sought and/or an indirect beneficial interest in the underlying assets of the [DAF] Fund. The Court answers both of these questions in the negative." Morris Dec. Ex. C (Cayman Decision) at ¶¶130–31) "The limited partnership interest in this case is not a proprietary interest in the assets themselves but the right to be considered for potential distributions which [DAF Holdco] then passes on to the Charities. The Court is not satisfied in this case that there is a real prospect of showing that [DAF Holdco] has a legitimate proprietary claim to legal or beneficial ownership of the assets it seeks to injunct." (Morris Dec. Ex. C (Cayman Decision) at ¶¶139–40) "The Court has concluded that the Fund structure in this case gave [DAF Holdco] and its Participating Shareholders no rights of legal or beneficial ownership or indeed control with regard to [DAF Fund] and its assets." (Morris Dec. Ex. C (Cayman Decision) at ¶185).

**4.     Dugaboy Failed to Disclose that the Dondero Foundations Serve on the Liquidation Committee in the Cayman Proceeding and Had Complete Access to all Information in the Cayman Islands**

42.     Dugaboy and Dondero knew, but failed to disclose in their Motion, that the Dondero Foundations have served on the Liquidation Committee of DAF Holdco as part of the Cayman Proceeding since July 2025,[80] and falsely suggest that they just recently discovered information emanating from the Cayman Islands.  Nonsense.

43.     As members of the DAF Holdco Liquidation Committee, the Dondero Foundations had access to—or with reasonable diligence, could have had access to—all information in the Cayman Proceeding, including the information in the JOLs' possession and information supposedly filed under seal.

44.     Dondero is funding the JOLs litigation directly and indirectly through Crossvine which has rights to Cayman Proceeding pleadings.  As the Cayman court noted: "Crossvine is apparently 'incorporated for the purpose of ultimately Mr. Dondero…funding the liquidation of [CLO Holdco] and the JOLs pursing the [Cayman Proceeding]'"[81]

45.     Thus, nothing learned in the Cayman Islands could possibly constitute "newly discovered" evidence because Dondero—as both Dugaboy's control person and lifetime beneficiary and the Dondero Foundations' benefactor, Board member, president and principal officer, and litigation funder, and the funder of the Cayman Proceeding—knew or could have known it all contemporaneously.

---

[80] Morris Dec. Ex. M.

[81] Morris Dec. Ex. C (Cayman Decision) ¶72. "Crossvine" is Crossvine Litigation Funding LLC, an entity formed by Dondero's longtime henchman, Scott Ellington (Highland's pre-petition general counsel), to fund the Cayman Proceeding and actions against Patrick.

**5.      Recusal, Which Dugaboy Grossly Misrepresents, is Irrelevant**

46.      Dugaboy has proved itself incapable of filing a single pleading in any federal court without harping on about how Judge Jernigan should have recused (ostensibly) at the outset of the Chapter 11 Case in 2019 (ignoring, among other inconvenient facts, that Dondero did not even seek recusal for the first time until March 2021, after Highland's plan was confirmed). At this point, Dugaboy's insistence on pressing the recusal issue is not just tiresome and bemusing; it's dishonest.

47.      Recusal is exquisitely irrelevant and appeal after unsuccessful appeal should have chastened Dugaboy by now. But Dugaboy persists, doing the same thing over and over again while hoping for a different result. Only by mischaracterizing or ignoring the tortured history of its *five failed recusal motions* can Dugaboy manage to thrust the issue once more into the breach. The indisputable facts remain these:

- The Fifth Circuit has *thrice* rejected Dugaboy's attempts to recuse Judge Jernigan;

- The Fifth Circuit rejected, in excruciating, excoriating detail, every single instance of purported bias that Dugaboy and Dondero have alleged against Judge Jernigan;

- The District Court dismissed Dugaboy's latest recusal-related appeal, making it the seventh time Dugaboy has failed to persuade an appellate court that Judge Jernigan should be recused;

- Without exception, federal courts throughout the Fifth Circuit have repeatedly affirmed scores of Judge Jernigan's rulings in more than *five dozen* appeals Dondero entities have taken in this one bankruptcy case;

- After orchestrating spurious private ethics complaints by his own employees against Judge Jernigan, Dondero *still* failed to persuade Fifth Circuit Chief Judge Elrod that Judge Jernigan had done anything warranting recusal.[82]

---

[82] With no finding of wrongdoing and scarce little left of the Highland bankruptcy case, Judge Jernigan voluntarily recused herself for reasons she has not publicly disclosed.

48. None of this recusal nonsense matters in the least. Given that the matter has been fully and finally litigated without any finding of bias or prejudice, there is simply no legal basis— and, unsurprisingly, Dugaboy cites none—that authorizes this Court to revisit any of Judge Jernigan's prior orders or judgments on the allegation of bias, let alone through a Rule 60 motion challenging a specific order that *no party objected to on the grounds of bias*. Not only did Dugaboy fail to preserve any argument pertaining to recusal before or during the trial, and not only did Dugaboy fail to even *mention* some concern regarding bias on the record of the trial, Dugaboy also fails now to cite any basis in law or equity to relitigate *any* part of the Highland case (much less all of it) through a Rule 60 motion, whether based on recusal or not.[83]

**6. The Allegations of Fraud, Even if True, are Irrelevant**

49. Aside from Dugaboy's utter failure to satisfy any standard for relief under Rule 60 as a matter of law, the intentionally confusing splatter of allegations set forth in the Motion, even if true, are entirely irrelevant to the 9019 Settlement.

50. Dugaboy's allegations have nothing to do with how Patrick obtained or maintained authority and control over the HMIT Entities—Patrick obtained that authority and control from John Honis in a voluntary transaction that was consummated nearly four years ago in August of 2022.

51. Dugaboy's allegations have nothing to do with how Patrick exercised that authority and control in entering into the 9019 Settlement—irrespective of the "DAF restructuring," no consent from any other person or entity (other than Patrick) was ever required to enter into 9019 Settlement on behalf of the HMIT Entities, including, without limitation, The Dallas Foundation, Crown Global, any Dondero Foundation, any DAF Entity, DAF Holdco, the JOLs, or Dondero or

---

[83] Highland reserves its right to object to all evidence Dugaboy attempts to introduce in the hearing on the Motion on all grounds, including relevance.

Dugaboy. That was true before the "DAF restructuring" and it remained true after the "DAF restructuring." Simply put, the "DAF restructuring" did not create, limit, or modify Patrick's authority and control over the HMIT Entities in any way—and Dugaboy has not and cannot establish otherwise.

52.    The assertion that Patrick lacked authority or control over the HMIT Entities or the DAF Entities is contradicted by the nature of the actual claims brought by the JOLs in the Cayman Proceeding and the Dondero Foundations in the Texas Business Court. At its heart, these are claims that Patrick breached fiduciary duties that arise directly from the very control position that Dugaboy now tries to question. Even theoretically, Patrick could not have breached any duty in the manner Dugaboy alleges unless he also had the control position over DAF and DAF Holdco – without the control position there would be no duty for Patrick to breach. And, again, the complaint of how Patrick exercised that control of DAF has nothing to do with his clear authority over the HMIT Entities and their execution and consummation of the 9019 Settlement.

53.    Likewise, any complaint by Dugaboy regarding the terms of the 9019 Settlement is completely undercut by the public disclosure and Court approval of those terms. The record of the 9019 Hearing shows that the 9019 Settlement was negotiated at arm's-length in good faith by willing, sophisticated participants with sophisticated advisors. Approval of the 9019 Settlement was sought on regular and proper notice. Objectors were given full and fair disclosure and the opportunity to take discovery, cross-examine witnesses and present their objections at a full-day evidentiary hearing. This Court issued detailed findings of fact and conclusions of law in connection with the 9019 Order. Even The Dallas Foundation withdrew its objection with prejudice and consented to the 9019 Settlement. There is simply no reason whatsoever to vacate the 9019 Order.

4904-3615-2983.14 36027.003                                              28

**ARGUMENT**

54.     The sole legal basis Dugaboy relies on for a reconsideration (or vacatur) of this Court's approval of the 9019 Settlement is Federal Rule of Civil Procedure 60—specifically, Rule 60(b)(2), (3), and (6)—incorporated into this Chapter 11 case via Bankruptcy Rule 9024. Rule 60 provides Dugaboy no basis for relief from the 9019 Settlement Order under the incontrovertible facts and circumstances presented here. There is no newly discovered evidence. There was no fraud by Highland that precluded Dugaboy from fairly objecting to the 9019 Settlement Motion. There were no extraordinary circumstances justifying a new challenge to the 9019 Settlement Order. Reconsidering, vacating, vitiating (or whatever verb Dugaboy wishes to use) the 9019 Settlement Order on this record is unwarranted and should be denied.

**A.     Rule 60(b) Relief is Unwarranted**

**1.     Legal Standard**

55.     Motions for relief from judgment under Rule 60(b) are disfavored and rarely granted. The Fifth Circuit requires "extraordinary circumstances" for relief under Rule 60(b) and holds that such motions should be granted "only if extraordinary circumstances are present."[84] Rule 60(b) empowers a court to grant relief from a "final judgment, order, or proceeding" for, among others, the following reasons: newly discovered evidence; fraud, misrepresentation, or misconduct by an opposing party; or "any other reason that justifies relief."[85] The Fifth Circuit has identified numerous considerations that guide a court's evaluation of a Rule 60(b) motion, including that (i) final judgments should not lightly be disturbed; (ii) the Rule 60(b) motion is not

---

[84] *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002); *see also Garcia v. Davis*, 2018 WL 6305591, at *9 (N.D. Tex. Dec. 3, 2018), *aff'd sub nom. In re Garcia*, 756 F. App'x 391 (5th Cir. 2018) (same); *Canale v. Manco Power Sports, LLC*, 2010 WL 2771871, at *2 (S.D.N.Y. July 13, 2010) ("Motions for relief under Rule 60(b) are disfavored, and are reserved for exceptional cases").

[85] *See* Fed. R. Civ. P. 60(b)(1), (2), (6).

to be used as a substitute for appeal; and (iii) whether the motion was made within a reasonable time.[86]

56.     "[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation."[87] "The party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence."[88] Courts have broad discretion to deny motions for relief under Rule 60(b), deferring to the original order's apparent validity "to ensure that 60(b) motions do not undermine the requirement of a timely appeal"[89] (such as the one Dugaboy has already taken and fully briefed).

57.     Dugaboy fails to meet its heavy burden of demonstrating the extraordinary relief it seeks. Dugaboy does not and cannot identify any newly discovered evidence, required for relief under Rule 60(b)(2). Dugaboy does not and cannot identify any instance of fraud by Highland as the opposing party, required for relief under Rule 60(b)(3). And Dugaboy does not and cannot identify any extraordinary circumstances present here that would warrant extraordinary relief under Rule 60(b)(6). Despite its dizzying length and density, the Motion does not come close to substantiating any basis for relief under Rule 60(b). It should be denied.

### 2.     There is No "Newly Discovered Evidence" as Required Under Rule 60(b)(2)

58.     Dugaboy has not offered any "newly discovered evidence" sufficient to warrant relief under Rule 60(b)(2). To obtain Rule 60(b)(2) relief, a movant must: (1) come forward with

---

[86] *See, e.g., Edward H. Bohlin Co., Inc. v. The Banning Co., Inc.*, 6 F.3d 350, 356 (5th Cir. 1993).

[87] *In re South*, 647 B.R. 535, 537 (Bankr. E.D. Tex. 2023) (quoting *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001)); *In re Wigington*, 2021 WL 2134651 at *3 (Bankr. E.D. Tex. May 25, 2021); *see also Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 620 (S.D. Tex. 2009) ("Relief under Rule 60(b) is an extraordinary remedy; 'the desire for a judicial process that is predictable mandates caution in reopening judgments'") (quoting *In re Pettle,* 410 F.3d 189, 191 (5th Cir. 2005)).

[88] *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (citations omitted).

[89] *Halliburton Energy*, 618 F. Supp. 2d at 620.

newly discovered evidence that it could not have discovered had it "exercised due diligence" within the time for seeking a new trial under Rule 59(b); and (2) show that the newly discovered evidence is "material and controlling and clearly would have produced a different result if present before the original judgment."[90] A judgment should not and will not be reopened if the evidence is merely cumulative or impeaching and would not have changed the result.[91] "[N]ewly discovered evidence must be in existence at the time of [the final judgment] and not discovered until after [the final judgment]."[92]

59.     Here, all the information (and almost every summarizing document) Dugaboy relies on for its Motion were known to Dugaboy before trial and certainly within the time to seek a new trial under Rule 59 and Bankruptcy Rule 9023. If any "evidence" was truly discovered after then, it (a) did not exist at the time of trial, (b) could have been discovered by Dugaboy with reasonable diligence in time to seek a new trial, or (c) is cumulative of facts already known, immaterial, and would not have produced a different outcome on the 9019 Settlement Motion.

60.     **First**, all the factual allegations Dugaboy includes in its Motion were known by Dugaboy and specifically pled in this Court and other courts before the Rule 59 / Bankruptcy Rule 7023 deadline to seek a new trial. (*see supra* ¶36 (chart)) Some of Dugaboy's purported "new" evidence are documents that did not even exist when this Court considered the 9019 Settlement at trial on June 25, 2025. For instance, Dugaboy now maintains that the "first real evidence" about Patrick's alleged fraud is contained in the JOL Writ filed on July 15, 2025, in the Cayman

---

[90] *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 639 (5th Cir. 2005) (quoting *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003)).

[91] *See Trans Mississippi Corp. v. United States*, 494 F.2d 770, 773 (5th Cir.1974).

[92] *Parker v. Wal-Mart Stores, Inc.*, 251 F.R.D. 222, 226 (S.D. Miss. 2008), *aff'd,* 464 F. App'x 224 (5th Cir. 2010) (internal quotations omitted); *see also Nat'l Labor Relations Bd. v. Jacob E. Decker and Sons,* 569 F.2d 357, 364 (5th Cir. 1978) ("There can be no Rule 60(b)(2) relief for evidence which has only come into existence after the trial is over, for the obvious reason that to allow such a procedure could mean the perpetual continuation of all trials"); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 158 (5th Cir. 2004) (same).

Proceeding.[93] While that contention is false inasmuch as the JOL Writ largely repackages assertions already alleged before trial, (i) evidence that only came into existence after the trial cannot constitute "newly discovered" evidence for purposes of Rule 60(b)(2) and (ii) all of the information set forth therein was clearly known by Dugaboy prior to the deadline to seek a new trial. Dugaboy further relies on several other documents that likewise did not exist at the time of trial and also simply regurgitate allegations against Patrick that have nothing to do with his authority over the HMIT Entities or the 9019 Settlement.[94] For this reason alone, the Motion should be denied.[95]

61. None of these documents constitutes "newly discovered evidence" within the meaning of Rule 60(b)(2). None of these documents support the Motion or meet the exacting standard required for the extraordinary relief described in Rule 60(b). One could be surprised that the more than one thousand pages of Cayman Proceeding exhibits attached by Dugaboy to its 50-page Motion contain nothing new and nothing relevant to the 9019 Settlement or the parties to it. Yet here we are.

62. **Second**, the other evidence Dugaboy relies on was already in Dugaboy's possession or could have been obtained through reasonable diligence in time to file a motion for a new trial under Rule 59 and Bankruptcy Rule 7023.[96] As described above, Dugaboy and The Dallas Foundation took extensive discovery in preparation for trial, discovery that Highland complied

---

[93] Motion at 27–28, citing Caymans Ex. B, Statement of Claim.

[94] *See, e.g.*, Cayman Ex. G (MacInnis Aff., created July 21, 2025); Cayman Ex. I (MacInnis Aff. 3, created November 2025).

[95] *See Gen. Universal Sys.* 379 F.3d at 158 (affirming denial of Rule 60(b)(2) motion where "the newly discovered evidence was not available at the time of trial: Parkin's statement occurred in a hearing held on November 16, 2001, and Davis's report was prepared on November 1, 2001. These statements, then, were created after the entry of final judgment on September 27, 2001").

[96] *See, e.g.*, Caymans Ex. A (First Patrick Aff., created on June 4, in connection with the Cayman Proceeding); Cayman Ex. MM-3 (attachments to MacInnis Aff. 3).

with completely and promptly without objection. The Dondero Foundations sit on the liquidation committee in the Cayman Proceeding and, upon information and belief, received (or with reasonable diligence, could have received) all documents filed there. Although Dugaboy already knew everything at the time of trial, if something was missing, Dugaboy is not entitled to benefit because its discovery requests were deficient and Dugaboy failed to exercise reasonable diligence to obtain purportedly relevant documents during discovery and the new trial period following this Court's entry of the 9019 Settlement Order.[97]

63.     Since Dugaboy possessed the full substance of the purportedly "new" information within the new trial period under Bankruptcy Rule 7023, none of it would help Dugaboy advance its Motion under Rule 60(b) because any new evidence discovered within "28 days after the entry of judgment" must be brought as a motion for new trial under Rule 59(b) and cannot be brought as a Rule 60(b) motion.[98] All Dugaboy's purportedly "new" evidence was available to Dugaboy within 28 days of this Court's entry of the 9019 Settlement Order. Dugaboy could have tried to bring a Rule 59 motion for a new trial. Dugaboy did not. It cannot use a Rule 60(b) motion to earn relief it already declined by choosing not to file an appropriate motion under an appropriate rule.

64.     **Third**, Dugaboy has also failed to show that any information discovered after trial is "material" and would have changed the trial's result. In fact, the exact opposite is true. As set forth above, both the evidence adduced at trial and the separate and unrelated Cayman Proceeding demonstrate unequivocally that Patrick possessed all the authority required to enter into the 9019

---

[97] *See Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 771 (5th Cir. 1995) (affirming denial of Rule 60(b)(2) motion where movant "failed to demonstrate to the district court that it could not have obtained the information before or during the trial even if it had exercised due diligence."); *Longden v. Sunderman*, 979 F.2d 1095, 1103 (5th Cir. 1992) ("it is apparent that the district court was within its discretion in finding that Massie did not exercise due diligence in discovering the evidence. Massie claimed that a 25 day search after the May 1 hearing finally produced the evidence, but due diligence before the hearing must be shown").

[98] *See* Wright & Miller § 2859.

Settlement. For instance, the ample evidence admitted into the record at trial indisputably proved that Patrick had full authority to act for HMIT and the other HMIT Entities for all purposes, including entering into the 9019 Settlement. As noted above, Dondero and his affiliates also repeatedly ratified Patrick's authority to act on behalf of the HMIT Entities, the DAF entities, and their affiliates. In separate proceedings including the Cayman Proceeding and the Foundations Action, allegations of wrongdoing against Patrick were resolved in Patrick's favor; Patrick has remained in control of the HMIT Entities without challenge, unsullied by any court's finding that he engaged in any wrongdoing at any time. And after a full two-day hearing, the Cayman court dispelled any notion that Patrick lacked authority over the DAF entities he controls. There was never even an assertion in the Cayman Proceeding that Patrick does not have full control of the HMIT Entities or even that the Cayman Proceedings had anything at all to do with HMIT, Patrick's authority over HMIT, or the 9019 Settlement. The total amount and weight of evidence in both this Court's trial and unrelated proceedings here and abroad directly contradict Dugaboy's strident but baseless assertion that Patrick somehow lacked authority to enter into the 9019 Settlement.

65.     And this Court has already said so. In denying Dugaboy's prior stay motion, this Court ruled that "***whatever the misdeeds may or not be of Mark Patrick, they are not sufficiently intertwined with the Highland bankruptcy estate (or the Settlement Agreement) …***"[99] The Court continued, correctly noting that "Mark Patrick is merely a signatory for a counter-party to a settlement agreement with the bankruptcy estate [HMIT]."[100] In deciding whether to approve the 9019 Settlement, the Court considered whether it was "fair and equitable, within the range of reasonableness, and in the best interests of the Highland bankruptcy estate," under Bankruptcy

---

[99] Stay Order at 4 (emphasis in original).
[100] *Id.*

Rule 9019, ultimately stating that "the parties have other avenues to address any malfeasance of Mark Patrick vis-à-vis the liquidation proceedings involving the Cayman Islands Charitable Foundation Structure."[101]

66.     Accordingly, Dugaboy cannot show (and has not shown) either that its new "evidence" is newly discovered for purposes of Rule 60(b)(2), material to the issues raised at trial, or that it would have altered the Court's decision to approve the 9019 Settlement. When courts see facts like these, they deny Rule 60(b) motions.[102] This Court should do precisely that.

67.     For all these same reasons, the purportedly "new" allegations Dugaboy cites are merely cumulative of prior evidence known to Dugaboy.[103] This type of cumulative, impeaching evidence is not the type sufficient to warrant the extraordinary relief available to more deserving movants than Dugaboy under Rule 60(b)(2).[104] The Motion fails to substantiate a basis for relief under Rule 60(b)(2). It should be denied.

### 3.     No Opposing Party Committed Fraud as Required Under Rule 60(b)(3)

68.     Dugaboy likewise fails to show relief is warranted under Rule 60(b)(3), which provides that a court may relieve a party from final judgment based on "fraud ... misrepresentation, or misconduct by an opposing party[.]" A party making a Rule 60(b)(3) motion must establish, by

---

[101] *Id.*

[102] *See, e.g., Gen. Universal*, 379 F.3d at 158 (affirming district court's denial of Rule 60(b)(2) motion where "GUS has not shown either that the evidence is material or that it would have produced a different result in the original case. Indeed, the precise opposite is apparent. As noted above, GUS's infringement claims were dismissed because GUS failed to provide evidence of substantial similarity. Parkin's and Davis's bare statements do nothing to unsettle this holding").

[103] *See, e.g.*, Motion at 28 (vaguely asserting that Patrick's alleged misconduct was further "unearthed" by the JOLs in December 2025 filings); Motion at 33 (only "the *scope* of Patrick's misconduct was unknown before the hearing on Highland's 9019 Motion"); Motion at 34 (contending that the "flames of the misconduct" were revealed by successive later filings in July and December of 2025, (Br. at 34)).

[104] *See Halliburton Energy*, 618 F. Supp. at 650 (finding party failed to meet its burden under Rule 60(b)(2) because it "has not shown that these documents would have done anything more than add to the list of conflicting evidence the panel examined," previously, and therefore "has not shown that the newly submitted documents are material, not merely cumulative or impeaching, or would have changed the result in the arbitration or confirmation proceedings").

clear and convincing evidence: "(1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting [her] case."[105] The Fifth Circuit maintains that, under Rule 60(b)(3), a movant must prove fraud by clear and convincing evidence: "This subsection of [Rule 60] is aimed at judgments which were unfairly obtained, not at those which are factually incorrect."[106]

69.     Dugaboy's nebulous claims that Patrick's "fraud" and other misconduct in connection with the DAF and HMIT restructurings—even if true (and no court has ever found them to be true)—do not and cannot warrant vacating the 9019 Settlement Order under Rule 60(b)(3).

70.     **First**, as discussed above, the Cayman Islands court rejected the same arguments and evidence Dugaboy asserts here and affirmatively determined that Patrick had and continues to have full authority and control over all the DAF entities other than DAF Holdco. The JOLs sought to gain control over the Cayman Island DAF entities for which Patrick is the control person and were denied. While Dugaboy relies on the purported "new evidence" from the Cayman Proceeding, it deviously **withheld the Cayman Island court decision from this Court**.[107] Dugaboy thus fails to establish, by clear and convincing evidence—by *any* evidence—that Patrick or anyone else involved in the 9019 Settlement committed fraud, let alone fraud that prevented Dugaboy from fairly and fully prosecuting its opposition to the 9019 Settlement.

71.     **Second**, and more fundamentally, even if Dugaboy could show that Patrick committed some sort of fraud in relations to the DAF and HMIT restructurings, Patrick was not

---

[105] *In re Waldrup*, 2025 WL 2900358, at *3 (Bankr. S.D. Tex. Oct. 10, 2025) (quoting *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005)).

[106] *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978); *see also Optimal Health Care Services, Inc. v. Travelers Ins. Co.*, 801 F. Supp. 1558, 1561 (E.D. Tex. 1992).

[107] Making Dugaboy's accusation of fraud against others particularly rich.

the "opposing party" at trial within the meaning of Rule 60(b)(3)—Highland was. Nowhere in the Motion and nowhere in the thousands of pages of irrelevant arcana attached to the Motion does Dugaboy accuse Highland of withholding evidence, opposing or even delaying response to discovery requests, misrepresenting facts, omitting information, or anything else that could even arguably be considered "fraud" for purposes of Rule 60(b)(3). Even if Patrick had engaged in fraud in some fashion and even if Dugaboy did not already know about everything by the time of trial (it did), none of that would suffice to satisfy Rule 60(b)(3)'s requirement that the fraud must be perpetrated by the *opposing party*. To obtain relief under Rule 60(b)(3), Dugaboy would have had to demonstrate that Highland, as the opposing party,[108] engaged in fraud or other misconduct that prevented Dugaboy from fully and fairly presenting its case. It didn't. It can't. Highland did nothing of the sort.

72.    **Third**, Dugaboy now asserts that Patrick somehow defrauded the beneficiary of HMIT (not Dugaboy) and did so in his *individual* capacity. It hardly bears noting that Patrick was not a party to the 9019 Settlement, not a party to any of the litigations and claims it settled, and not a party to the 9019 Settlement Motion. Again, this Court has already noted that Patrick was "merely a signatory for a counter-party to a settlement agreement with the bankruptcy estate . . ."[109] For this additional reason, Rule 60(b)(3) relief is unwarranted.[110]

---

[108] Even if, under an unreasonably charitable reading of the Motion, Dugaboy substantiated fraud perpetrated by HMIT, that would amount to nothing useful for Rule 60(b)(3) purposes because, again, HMIT was not the opposing party at trial—Highland was. Anyway, the actions complained of were unrelated to the Settlement.

[109] Stay Order at 4.

[110] *See Tate v. Valero Servs., Inc.*, 2019 WL 6117793 (E.D. La. Nov. 18, 2019) (denying Rule 60(b)(3) motion where movant alleged fraud against his union, which was not a party to the case); *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097 (9th Cir. 2006) (denying plaintiff relief from judgment entered upon her acceptance of an offer of judgment on the ground of fraud, based on her attorney's alleged conduct in erroneously advising her that she could be liable for defendant's attorney fees if she refused the offer and that both her counsel would withdraw if she refused the offer, as the alleged frauds did not adversely affect the opposing party, as required by Rule 60(b)(3), and holding "in order to prevail on a Rule 60(b)(3) motion, *the defendants* must have committed the fraud at issue") (emphasis added); *Sherman v. Verizon Virginia, Inc.*, 220 F.R.D. 260 (E.D. Va. 2002), aff'd in part, dismissed in part, 55 F. App'x 136 (4th Cir. 2003) (denying plaintiff's Rule 60(b)(3) motion based on attorney misconduct in part because the

73. **Fourth**, Dugaboy has failed to show by clear and convincing evidence that any of Patrick's actions—however distasteful Dugaboy imagines them to be—prevented it from fairly presenting its case at the trial in this Court. Dugaboy propounded extensive discovery, took several depositions, and received many thousands of pages of documents in immediate response to Dugaboy's requests. No party objected to any of it. Dugaboy was always in complete control of what information and documents it sought and whether the responses it received were adequate. Significantly, this Court even permitted Dugaboy to spend considerable time a trial urging an objection to the 9019 Settlement of the basis of Patrick's authority despite that Dugaboy did not include any such arguments in its written objection to the 9019 Settlement Motion and *confirmed to the Court at trial that it was **not** challenging Patrick's authority* (as The Dallas Foundation previously had). Dugaboy proceeded with that argument only after an agitated Dondero upbraided his own counsel. This Court would have been well within its discretion to preclude Dugaboy from pursuing at trial an issue it had not preserved in its pleading and had previously foresworn at the beginning of the trial. Nonetheless, the Court granted Dugaboy wide leeway to challenge the 9019 Settlement based on arguments pertaining to Patrick's authority to bind HMIT. Dugaboy had a full and fair opportunity to present that case despite Dugaboy not deserving that opportunity. Dugaboy's case was unpersuasive and did not prevail. None of that remotely constitutes a basis for Rule 60(b)(3) relief.

74. **Fifth,** all the conduct Dugaboy alleges to be fraudulent, even if true, has absolutely nothing to do with Highland, the 9019 Settlement, how Patrick came to control the HMIT Entities, or how Patrick exercised his authority to enter into the 9019 Settlement. Further, Dugaboy has no

---

plaintiff's former counsel was not an "adverse party" within the meaning of Rule 60(b)(3), and the attorney's alleged shortcomings could not support a claim for relief under that provision—only fraud, misrepresentation, or misconduct by the defendant (the actual adverse party) would qualify); *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1102 (9th Cir. 2006) (alleged fraud by 60(b)(3) movant's attorney could not satisfy the adverse party requirement).

interest in any of the DAF entities or the HMIT Entities and seems to be complaining solely on behalf of The Dallas Foundation, which consented to the 9019 Settlement when it withdrew its objection with prejudice. Moreover, any documents Dugaboy uncovered after the trial could have been obtained by it with reasonable diligence, and would not have altered this Court's ultimate determination, anyway.[111] Accordingly, Dugaboy fails to meet its heavy burden of demonstrating that Rule 60(b)(3) relief is proper.

### 4. No Extraordinary Circumstances Exist as Required Under Rule 60(b)(6)

75. Finally, Dugaboy fails to establish that extraordinary circumstances warrant relief under the "catchall" provision of Rule 60(b)(6). Although Rule 60(b)(6) may be a "grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses … Relief under this section is granted only if extraordinary circumstances are present."[112] A request for relief under Rule 60(b)(6) "is considered extraordinary and is only to be invoked upon a showing of exceptional circumstances."[113] Moreover, "the reason for relief set forth under 60(b)(6) cannot be the reason for relief sought under another subsection of 60(b)."[114]

---

[111] *See Diaz,* 46 F.3d at 497 (affirming Rule 60(b)(3) denial because appellant had "independent access" to information allegedly withheld from her, information was not "under the exclusive control of the Appellees," and it was "likely that a more focused effort by Appellant could have uncovered th[e] evidence prior to trial"); *Peyton Place*, 62 F.3d at 773 (affirming district court's denial of Rule 60(b)(3) motion where movant's assertions in support of motion were based on speculation, and "[movant] did not provide the district court with clear and convincing evidence that the RTC's failure to produce any of these documents prevented it from fully and fairly presenting its case."); *Longden*, 979 F.2d at 1103 ("Upon thorough examination of the entire record, including what Massie characterized as credible evidence for her Rule 60(b) motion, this court agrees with the district court's finding of no clear and convincing proof of perjury. Thus, it was well within the district court's discretion to conclude that the evidence proffered by Massie simply was not credible.").

[112] *Peyton Place*, 62 F.3d at 773–74 (quotations and citations omitted).

[113] *In re Coffman*, 271 B.R. 492, 498 (Bankr. N.D. Tex. 2002) (quoting *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 266 (4th Cir.1993)) (internal quotations omitted).

[114] *Blom Bank SAL v. Honickman,* 605 U.S. 204 (2025); *Hesling*, 396 F.3d at 643.

76.     Dugaboy half-heartedly refers to "this Court's equitable purpose and powers"[115] but cannot identify any "extraordinary circumstances" warranting relief under Rule 60(b)(6). Instead, Dugaboy rehearses the same conclusory, unsupported, and baseless assertions in support of its request for relief under other subsections of Rule 60(b), something the Fifth Circuit has specifically held to be insufficient.[116] For this reason alone, Dugaboy fails to meet its burden of demonstrating the exceptional circumstances warranting Rule 60(b)(6) relief. But even if Dugaboy could distinguish the grounds sought for relief under Rule 60(b)(6) from its other arguments, it is still not entitled to relief for all the reasons set forth above. Dugaboy's conclusory, unproven, spurious assertions that Patrick committed fraud in respect of Cayman Islands DAF Entities and was therefore somehow not authorized to act on the HMIT Entities' behalf is belied by the record. There is no newly discovered evidence that would constitute exceptional circumstances. There was no fraud or misconduct by Highland preventing Dugaboy from fully and fairly trying its case that would constitute exceptional circumstances. There was no relationship between the Cayman Island proceedings, on the one hand, and the 9019 Settlement or this Chapter 11 case, on the other hand, that would constitute exceptional circumstances. The only exceptional thing here is Dugaboy's shameless obstinacy in bringing the Motion in the first place.

**B.      Chief Judge Jernigan's Voluntary Recusal Provides No Valid Basis to Vacate the 9019 Settlement Order (or Anything Else)**

77.     Dugaboy's request to vacate the 9019 Settlement Order on the ground that it was issued by a judge who "lacked the authority to enter it"[117] is equally unsupported and belied by the record. In support of its argument, Dugaboy maintains that the Fifth Circuit took "corrective action

---

[115] Motion at 42–43.

[116] *See Hesling*, 396 F.3d at 643 ("Hesling cannot obtain relief under 60(b)(6) where the allegations of fraud or misconduct are essentially the identical grounds for relief sought under her 60(b)(3) motion").

[117] Motion at 43.

to recuse the predecessor judge from the case going forward."[118] The Fifth Circuit did no such thing. Dugaboy, by advancing this appalling argument, again distinguishes itself for its unhinged litigiousness. Any other litigant with even a shred of respect for this Court would be too ashamed to misrepresent so wildly a written action by an appellate court.

78.     This Court can easily gather on its own what really happened. In December 2025, Chief Judge Jernigan voluntarily "recused herself from all matters related to the company's case that are currently pending before her," which Chief Judge Elrod of the Fifth Circuit stated "**should not be interpreted as an opinion or reflection on the merits of judge's prior decision not to recuse, which has been addressed by the Fifth Circuit**," or "**the validity of any decision, ruling, or order that she has issued in any judicial proceeding**."[119] Judge Elrod did *not*, as Dugaboy dishonestly asserts, "arrang[e] for extensive 'corrective action,' including the predecessor judge's recusal from this case," "impos[e] the corrective action of recusal," "tak[e] corrective action to recuse the predecessor judge from the case going forward," or "effect[] a recusal of the predecessor judge as 'corrective action' for books she authored."[120] In reality, Chief Judge Elrod held that the specious allegations of judicial misconduct "need not be decided" because Chief Judge Jernigan **voluntarily** "recused herself."[121] The Judicial Council Opinion was **not** an order to recuse Judge Jernigan under Section 455 and was in no way "corrective action" for Jernigan's alleged violation of judicial ethics. Dugaboy's attempts to persuade this Court that Judge Elrod said and did things she didn't say and didn't do only demonstrates Dugaboy's vindictive desperation to interfere with the final stages of this Chapter 11 case.

---

[118] *Id.* (citing *In re Compl. Of Jud. Misconduct Under The Jud. Improvements Act Of 2002*, No. 05-26-90042 (5th Cir. Dec. 29, 2025 (the "**Judicial Council Opinion**")).

[119] Judicial Council Opinion at 6 and n.3 (emphasis added); *see also* Docs. 4491, 4509, 4514.

[120] Motion at 30–31, 43–45 (italics in original).

[121] Judicial Council Opinion at 6.

79.     Dugaboy's assertion that the 9019 Settlement Order should be vacated on the ground that, when it was issued, Judge Jernigan "should have recused herself"[122] is both undermined by the record and procedurally improper. As this Court, the District Court, and the Fifth Circuit have held numerous times, Judge Jernigan *never* had a duty to recuse herself under Section 455. Dondero and Dugaboy have filed **five** failed recusal motions. The Fifth Circuit has rejected **three times** Dugaboy's attempts to recuse Judge Jernigan and the Supreme Court has denied Dugaboy's petitions for certiorari on the second of those Fifth Circuit rulings. Dugaboy's most recent recusal-related appeal was dismissed by the District Court. Federal courts throughout the Fifth Circuit have repeatedly affirmed scores of Judge Jernigan's rulings in more than **five dozen** appeals Dondero entities have taken in this one bankruptcy case. And as reflected in the Judicial Council Opinion, despite having orchestrated five separate secret ethics complaints to be filed by his employees and cronies, Dondero even failed to persuade Fifth Circuit Chief Judge Elrod that Judge Jernigan had done anything warranting recusal. Nevertheless, Dugaboy spends nearly seven pages of its Motion rehashing these same tired, vanquished arguments relating to Judge Jernigan's alleged "bias" and "impartiality." This Court should countenance none of it. Dugaboy now effectively seeks reconsideration of Judge Jernigan's many rulings denying motions to recuse based on her unrelated novels—rulings never reversed or even questioned on appeal in the District Court or the Fifth Circuit—denials that constitute law of the case.

80.     As the Fifth Circuit noted, Dondero and various parties he controls, including Dugaboy, have been unsuccessfully trying to disqualify Chief Judge Jernigan for years.[123] When Dugaboy and related "Dondero Parties" first raised "accusations regarding her two published

---

[122] Motion at 44.

[123] *See Dondero v. Jernigan*, 2025 WL 1122466, at *2 (5th Cir. Apr. 16, 2025).

novels," "Chief Judge Jernigan stated that her novels 'are not about Dondero or the hedge fund industry in general' and declined to recuse on that basis."[124] Indeed, even while recusing herself, Chief Judge Jernigan "remain[ed] steadfast that she has no basis or animus against any party in any matter pending before her."[125] Dugaboy and the related "Dondero Parties" then "filed a petition for writ of mandamus in the district court seeking an order directing Chief Judge Jernigan to recuse herself," and the "district court denied the petition," after which Dugaboy and the related "Dondero Parties" filed a mandamus petition in the Fifth Circuit. It, too, was denied.[126]

81.     The Fifth Circuit specifically rejected the same purported "parallels between the books and [this] case" that Dugaboy again advances here, noting that both the Fifth Circuit and the "district court emphasized [that] the novels are fiction," also crediting Chief Judge Jernigan's explanation that "the books are largely about other topics."[127] Thus, the Fifth Circuit concluded that "whether a reasonable reader and observer of these proceeding could question Chief Judge Jernigan's impartiality in this case is debatable," which is "insufficient" to warrant "a recusal order."[128] Judge Jernigan did not have a duty to recuse. That is law of the case. Dugaboy's attempt to vacate the 9019 Settlement Order on recusal grounds should be denied.

82.     Even if Chief Judge Jernigan's novels had militated toward recusal (and any fair reading shows they don't, vacating the 9019 Settlement Order—or any other orders entered in this

---

[124] *Id.*

[125] Judicial Council Opinion at 6.

[126] *Dondero*, 2025 WL 1122466, *3.

[127] *Id.* at *7. For example, the "hedge fund manager character who the Dondero Parties believe is patterned on Dondero is an individual who fakes his own suicide after linking up with Mexican drug cartels—far from the real-life James Dondero." *Id.*

[128] *Id.* Dugaboy latches on to one isolated piece of dicta—"'[d]ue to the similarities between the characters in Chief Judge Jernigan's novel and the litigants currently before her in court, a strong **argument could be made** that she had a duty to recuse.'" Motion at 48 (quoting *Dondero*, 2025 WL 1122466, at *7) (emphasis in Motion). The fact that an "argument could be made" by a motivated attorney in no way suggests that "the standard of review" of mandamus petitions was "the only thing keeping the recusal decision from already having been reversed on mandamus." (Motion at 49). The entire argument is sophistry.

case over the last six years—would be unwarranted, to say the least. Generally, "recusals are prospective only and do not invalidate prior judicial actions."[129] Yet Dugaboy asks this Court to do something both legally ludicrous and practically impossible: retroactively invalidate this entire Chapter 11 case based on Dondero's fancifully imagined "circumstances compromising the appearance of her partiality" under 28 U.S.C. § 455(a) arising from Judge Jerigan's publication of a novel in March 2022, and to "address the consequences of these circumstances going backward."[130] The very notion is as preposterous as it is legally baseless.

83.   Irrespective of whether Judge Jernigan's novels violated § 455(a)—and three separate courts, including the Fifth Circuit, have held that they did not—the Supreme Court has clarified that "There need not be a draconian remedy for every violation of § 455(a)."[131] To the contrary, the Fifth Circuit has warned that "the public may be more inclined to lose faith in the system if this court were to mindlessly vacate [prior] rulings" after a recusal.[132]

84.   The Supreme Court has expressly held that "Section 455 does not, on its own, authorize the reopening of closed litigation."[133] Rather, a party must bring a motion under Rule 60(b)(6) based on the alleged violation of § 455(a), which "should only be applied in 'extraordinary circumstances.'"[134] The Supreme Court set forth three factors for courts to consider on such a motion: (1) "the risk of injustice to the parties in the particular case"; (2) "the risk that

---

[129] *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 949 (6th Cir. 1987) (citing *United States v. Murphy*, 768 F.2d 1518, 1541 (7th Cir. 1985); *see also Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C. Cir. 1988) ("A motion for recusal based upon the appearance of impropriety can have only prospective effect") (citing *Murphy*, 768 F.2d at 1539); *New York City Dev. Corp. v. Hart*, 796 F.2d 976, 979 (7th Cir. 1986) ("recusal under § 455(a) runs prospectively only, so that all orders entered before the district judge removes himself (or the court of appeals issues a writ of mandamus) stand").

[130] Motion at 43.

[131] *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 862 (1988).

[132] *Patterson v. Mobil Oil Corp.*, 335 F.2d 476, 486 (5th Cir. 2003).

[133] *Liljeberg*, 486 U.S. at 863.

[134] *Id.* at 863–64 (quoting *Ackermann v. United States*, 340 U.S. 193, 199–200 (1950)).

denial of relief will produce injustice in other cases"; and (3) "the risk of undermining the public's confidence in the judicial process."[135] The Fifth Circuit directs courts to construe the *Liljeberg* factors narrowly: "the search is for a risk substantially out of the ordinary."[136] None of these factors applies here.

85.     Dugaboy does not even attempt to argue that the first and second *Liljeberg* factors are satisfied. Nor can it. Dugaboy also does not and cannot explain how Chief Judge Jernigan's novels with purported similarities to *this case* could "produce injustice in *other cases*."[137] Instead, Dugaboy focuses exclusively on the third *Liljeberg* factor, arguing that Chief Judge Jernigan's novels "might reasonably cause an objective observer to question [her] impartiality."[138] But the Fifth Circuit requires this Court to "ask how these facts would appear to a well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person."[139] Applying this objective standard, Dugaboy's argument fails here just as it has previously failed at the Fifth Circuit. Imagined similarities between a litigant and a character in a work of fiction is simply not the type of circumstance warranting the extraordinary remedy of vacating prior orders.

86.     It's time for all this recusal twaddle to end. How many appellate courts have to rebuke them before Dondero and Dugaboy stop trying to undo a six-year Chapter 11 case that successfully restructured over a billion dollars of litigation claims (held by real creditors, which do not include Dugaboy or Dondero) by clinging to inane recusal arguments?

---

[135] *Id.* at 864.

[136] *Sensley v. Albritton*, 385 F.3d 591, 599 (5th Cir. 2004).

[137] *Liljeberg*, 486 U.S. at 864 (emphasis added).

[138] Motion at 44 (quoting *Liljeberg*, 486 U.S. at 865).

[139] *Sensley*, 385 F.3d at 599. There are certainly less apt descriptions of Dondero than "hypersensitive, cynical, and suspicious."

**C.    This Court Lacks Jurisdiction to Grant the Motion
        But Can—and Should—Deny It**

87.    Dugaboy has already appealed the 9019 Settlement Order. That appeal, before Judge Kinkeade in the District Court, has been fully briefed and, additionally, features Highland's motion to dismiss the appeal as statutorily moot under Bankruptcy Code § 363(m). Because the 9019 Settlement Order is currently on appeal—and was when Dugaboy filed its Motion—Fed. R. Civ. P. 62.1(a) provides that this Court "lacks authority to grant" Dugaboy's motion "because an appeal has been docketed and is pending." Under Rule 62.1(a), "the court may (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."[140]

88.    Bankruptcy Rule 8008(a) largely incorporates the Rule 62.1 approach to bankruptcy appeals. The rule "provides a procedure for the issuance of an indicative ruling when a bankruptcy court determines that, because of a pending appeal, the court lacks jurisdiction to grant a request for relief that the court concludes is meritorious or raises a substantial issue."[141] It applies "when a post judgment motion—such as a motion for relief from judgment under Civil Rule 60(b) made more than 14 days after entry of the judgment which does not suspend the time for filing a notice of appeal is made in the bankruptcy court at a time when a pending appeal has deprived the bankruptcy court of jurisdiction to decide the motion."[142]

---

[140] Federal case law has long taken this approach. *See, e.g., Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) (filing of notice of appeal is event of "jurisdictional significance" because it confers jurisdiction on court of appeals and "divests the district court of its control over those aspects of the case involved in the appeal"); *United States v. Hitchmon,* 602 F.2d 689, 692 (5th Cir. 1979) ("The filing of a timely and sufficient notice of appeal transfers jurisdiction over matters involved in the appeal from the district court to the court of appeals. The district court is divested of jurisdiction to take any action with regard to the matter except in aid of the appeal").

[141] Fed. R. Bankr. P. 8008 Advisory Committee Note to 2014 Amendment.

[142] Collier on Bankruptcy (16th ed.), ¶ 8008.01.

89.     "If a motion is made in the bankruptcy court for relief that it lacks authority to grant because of an appeal that has been docketed and is pending in a district court, bankruptcy appellate panel, or court of appeals, the bankruptcy court may … **deny the motion** … No remand or permission of the appellate tribunal where the appeal is pending is necessary for the bankruptcy court to deny the motion, and in such a case the indicative-ruling procedure set forth in Rule 8008 is inapplicable. **The ability to deny meritless motions enables the bankruptcy court to screen out frivolous attempts to invoke the indicative-ruling procedur**e."[143]

90.     This jibes with Bankruptcy Rule 9024 itself, which incorporates Rule 60 but also provides, in clause (b), that "Rule 8008 governs postjudgment motion practice after an appeal has been docketed and is pending." Bankruptcy courts, particularly, have noted that a pending appeal divests the bankruptcy court of jurisdiction to grant motions for reconsideration or other relief under Rule 60 and Bankruptcy Rule 9024.[144]

91.     Thus, this Court may only consider the Motion under Bankruptcy Rule 8008 because Dugaboy's appeal of the 9019 Settlement Order, which is fully briefed and pending, has removed jurisdiction from the Court to grant the Motion. In this limited context, this Court should follow the example set by the Bankruptcy Court in the Southern District of New York in *Geron v. Holding Capital Grp., Inc.*[145] The *Geron* case presents strikingly similar circumstances to those now before this Court.

92.     There, the debtor's landlord filed a motion under Bankruptcy Rule 9024 (which incorporates Rule 60) for relief from the bankruptcy court's order approving a settlement of an

---

[143] *Id.*, ¶ 8008.02 (emphasis added).

[144] *See, e.g., Millenkamp Cattle, Inc., v. E. Valley Dev., LLC (In re Millenkamp Cattle, Inc.)*, 2025 Bankr. LEXIS 1987 (Bankr. D. Ida. Aug. 19, 2025).

[145] *Geron v. Holding Capital Grp., Inc. (In re PBS Foods, LLC)*, 549 B.R. 586 (Bankr. S.D.N.Y. 2016).

adversary proceeding under Bankruptcy Rule 9019, alleging "newly discovered evidence" under Rule 60(b)(2), factual misrepresentations under Rule 60(b)(3), and extraordinary circumstances under Rule 60(b)(5).[146] The landlord had already appealed that settlement order and the appeal remained pending when the Rule 60 motion was filed.[147] The bankruptcy court considered the motion under Bankruptcy Rule 8008(a) and, after determining that (a) the "new" evidence was not sufficiently "probative of matters relevant to" the hearing on the settlement and that "it [was] unlikely that [the bankruptcy judge] would have attached much, if any, significant to [it] had the Landlord offered [it] in opposition to the" settlement motion, (b) "the Trustee did not misrepresent facts to the Court, and … did not deliberately withhold the New Documents from the Landlord," and (c) the landlord's argument under Rule 60(b)(6) "is merely restating the Landlord's alleged grounds for relief under Rules 60(b)(2) and (3)," the bankruptcy court denied the motion.[148]

93.     This case is eerily similar to *Geron.* Here, as there, Dugaboy has made a Bankruptcy Rule 9024 motion for relief from this Court's order approving the 9019 Settlement. Here, as there, Dugaboy has alleged "newly discovered" evidence under Rule 60(b)(2). Here, as there, Dugaboy has alleged "fraud" under Rule 60(b)(3)—although, unlike there, Dugaboy has *not* even alleged fraud by an opposing party or in connection with its ability to pursue its objection to the 9019 Settlement. Here, as there, Dugaboy has reiterated its bases from its Rule 60(b)(2) and (3) arguments in support of its Rule 60(b)(6) arguments. And here, as there, Dugaboy cannot persuade the bankruptcy court that any of the alleged bases for relief exist.

94.     This Court should follow the *Geron* court's example in nearly identical circumstances. Although this Court—just as the bankruptcy court in *Geron*—lacks jurisdiction to

---

[146] *Id.* at 589.

[147] *Id.* at 590.

[148] *Id.* at 598–606.

*grant* the Motion because the 9019 Settlement Order is subject to a pending appeal, it can and

should do here what the *Geron* court did there: **deny the Motion as meritless**.

**CONCLUSION**

For the reasons stated above, Highland respectfully urges the Court to deny the Motion.

April 3, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Jordan A. Kroop (NY Bar No. 2680882)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Email:  jpomerantz@pszjlaw.com
    jmorris@pszjlaw.com
    gdemo@pszjlaw.com
    jkroop@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

*Counsel for Highland Capital Management, L.P.
and the Highland Claimant Trust*

4904-3615-2983.14 36027.003

50