# EXHIBIT C

# UNITED STATES BANKRUPTCY COURT
## FOR THE
## NORTHERN DISTRICT OF TEXAS - DALLAS DIVISION

| | | |
|---|---|---|
| **In re: HIGHLAND CAPITAL MANAGEMENT, L.P.,** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| **Reorganized Debtor** | | **Civil Action No. <u>19-bk-34054 (SGJ)</u>** |

## <u>RETURN OF SERVICE</u>

Came to my hand on **Wednesday, April 15, 2026 at 9:45 AM,**
Executed at: **3102 MAPLE AVENUE, SUITE 400, DALLAS, TX 75201**
at **12:42 PM,** on **Wednesday, April 15, 2026,** by delivering to the within named:

### CLO HOLDCO, LTD.

By personally delivering to **Counsel of Record, MAZIN A. SBAITI**

a true copy of this

**THE DUGABOY INVESTMENT TRUST'S NOTICE OF SUBPOENA TO CLO HOLDCO, LTD. and SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION with ATTACHMENT A**

having first endorsed thereon the date of the delivery.

I am a person not less than eighteen (18) years of age and I am competent to make this oath. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained herein and aver that each is true and correct. I am not a party to nor related or affiliated with any party to this suit. I have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude.

**My name is Ernesto Martin Herrera, I am at least 18 years old, and my business address is 5470 L.B.J. Freeway, Dallas, Texas, 75240 in the county of Dallas, United States of America. I declare under penalty of perjury that the foregoing is true and correct.**

Executed in Dallas County, State of Texas, on Thursday, April 16, 2026

By: _____
    **Ernesto Martin Herrera - PSC 4418 - Exp 11/30/27**
    **served-sd@proceedlegal.com**

**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT
OF TEXAS DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

**THE DUGABOY INVESTMENT TRUST'S
NOTICE OF SUBPOENA TO CLO HOLDCO, LTD.**

PLEASE TAKE NOTICE that, under Federal Rule of Bankruptcy Procedure 9016, which incorporates Federal Rule of Civil Procedure 45, The Dugaboy Investment Trust ("Dugaboy"), by and through its counsel, requests documents from non-party CLO Holdco, Ltd. ("CLO Holdco") under the attached Subpoena. The materials requested in Attachment A are to be produced under the enclosed document subpoena by 5:00 p.m. local time on May 15, 2026 at King & Spalding, LLP, 2601 Olive Street, Suite 2300, Dallas, Texas 75201.

It is our understanding that CLO Holdco's corporate status has been forfeited. We respectfully request that you advise whether you are authorized to accept service on behalf of CLO Holdco. If you are not authorized to accept service, please identify the appropriate party or agent who is able to accept service on CLO Holdco's behalf. Additionally, if CLO Holdco has retained counsel to assist with responding to this Subpoena, please notify us immediately and provide counsel's name, firm, address, telephone number, and email address so that we may direct correspondence accordingly.

Dated: April 15, 2026

1

*/s/ Geoffrey S. Harper*

**Geoffrey S. Harper**
Texas Bar No. 00795408
gharper@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600
(214) 764-4601 (fax)

**John Michael Gaddis**
Texas Bar No. 24069747
mgaddis@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

*Counsel for The Dugaboy Investment Trust*

## CERTIFICATE OF SERVICE

I certify that on April 15, 2026, a true and correct copy of the foregoing document was served upon counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

2

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Texas

| | |
|---|---|
| In re: Highland Capital Management, L.P. (Debtor) | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    19-bk-34054 (SGJ) |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Mark Patrick, as Registered Agent of CLO HoldCo, Ltd., by and through his counsel of record, Mazin A. Sbaiti
     and Jonathan Bridges, JPMorgan Chase Tower, 2200 Ross Avenue, Suite 4900W, Dallas, TX 75201

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A - The Dugaboy Investment Trust's First Set of Requests for Production of Documents to CLO Holdco, Ltd.

| Place: King & Spalding LLP, 2601 Olive Street, Suite 2300, Dallas, TX 75201 | Date and Time: <br><br> 05/15/2026 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     04/15/2026

*CLERK OF COURT*

                      OR

| _____ | Geoffrey S. Harper |
|---|---|
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

The Dugaboy Investment Trust _____ , who issues or requests this subpoena, are:

Geoffrey S. Harper, King & Spalding LLP, 2601 Olive Street, Suite 2300, Dallas, TX 75201, 214-763-6894, gharper@kslaw.com

### Notice to the person who issues or requests this subpoena

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  19-bk-34054 (SGJ)

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**THE DUGABOY INVESTMENT TRUST'S FIRST SET
OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO MARK PATRICK**

**To:** Mark Patrick, by and through his counsel of record, Erik S. Jaffe, ejaffe@schaerr-jaffe.com, **Schaerr Jaffe LLP**, 1717 K Street NW, Suite 900, Washington, DC 20006; Mazin A. Sbaiti, mas@sbaitilaw.com, **Sbaiti & Company PLLC**, JPMorgan Chase Tower, 2200 Ross Avenue, Suite 4900W, Dallas, TX 75201

Interested Party The Dugaboy Investment Trust ("Dugaboy") serves this First Set of Requests for Production of Documents to Mark Patrick ("Patrick"), pursuant to Rule 34 of the Federal Rules of Civil Procedure, which is incorporated into bankruptcy proceedings by Federal Rules of Bankruptcy Procedure 7034 and 9014(c)(1). Patrick must respond to these Requests for Production within thirty (30) days of service. We ask that You produce documents at the offices of King & Spalding, 2601 Olive Street, Suite 2300, Dallas, TX 75201, or by electronic production in a mutually agreed format.

**INSTRUCTIONS**

1. In responding to these Requests, You must furnish all information that is available to You, that is within Your possession, custody, or control, or that is subject to Your reasonable inquiry, including information in the possession of Your attorneys, accountants, advisors, representatives, agents, or other persons directly or indirectly employed by, or connected with, You or Your

1

attorneys, and anyone else otherwise subject to Your control. All Documents that respond, in whole or in part, to any portion of the Requests below shall be produced in their entirety, including all attachments and enclosures.

2.  The relevant time period for documents responsive to these Requests, unless otherwise specified in an individual Request, is the period beginning on the earlier of October 1, 2024, or such date as identified in response to Request No. 1,[1] through the present.

3.  To the extent that the below Requests include requests for paper records, such paper records shall be scanned or otherwise converted into electronic form from paper documents in the following format:

(a) All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8½ x 11 inch page size, except for documents requiring higher resolution or different page size.

(b) In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The Parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents. For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages with Post-it notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-it.

---

[1] *I.e.*, "the first date on which any HMIT Entity communicated with any Highland Entity regarding Settlement."

(c) Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/metadata load file (.DAT). Each image file should have a unique file name which shall be the Bates number of the page.

(d) The following objective coding fields should be provided, if applicable:

(1) beginning Bates number;

(2) ending Bates number;

(3) beginning attachment Bates number;

(4) ending attachment Bates number;

(5) page count; and

(6) source location/custodian.

(e) Document level OCR should be provided as a separate text file. The file name of each text file should correspond to the file name of the first image file of the document with which it is associated. The text files will not contain the redacted portions of the documents. OCR software should be set to the highest quality setting during processing. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

4. To the extent that the below Requests include requests for electronically stored information ("ESI"), all ESI shall be produced in TIFF format according to the following specifications:

(a) All TIFF formatted documents will be single page, Group 4 TIFF at 300 x 300 dpi resolution and 8½ x 11 inch page size, except for documents requiring different resolution or page size.

3

(b) An image load file, in standard Opticon format, showing the Bates number of each page and the appropriate unitization of the documents, will accompany all document images.

(c) Each imaged version of an electronic document will be created directly from the original electronic document.

(d) TIFFs shall be produced as black and white, single-page TIFF images in accordance with the technical specifications set out above. Word documents that have tracked changes or comments shall be produced in color. In addition, upon written request that identifies a reasonable number of individual documents at issue by Bates number, a party shall produce color images for those documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting of 75% or higher.

(e) All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns, and rows. In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing.

5. To the extent reasonably feasible, all Documents produced shall be produced with metadata and attachments intact. The term "metadata" means all information describing the history, tracking, or management of an electronic document including, but not limited to, the date(s) the document was created, modified, accessed, or distributed; the author(s) and all recipient(s) of the

4

document; the file's name; the file's location (e.g., directory structure or pathname); the file format or file type; and the file size. For comparison purposes and to ensure authenticity, where documents are produced in native format, such documents shall also be produced in the ESI format described in Instruction No. 3, unless otherwise agreed by the parties.

6.   Should You object to any Request, You must specifically and in detail state the grounds and reasons for the objection, and state in detail the part of the language of the Request to which You object, and state which part of the Request, if any, You are answering.

7.   Under the Crime-Fraud Exception and Subject-Matter Waiver, items which would typically be privileged are not privileged in this matter. The Fifth Circuit recognizes the Crime-Fraud Exception to privilege, under which attorney-client communications and/or work product materials are not privileged if "the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme." *Lewis v. Crochet*, 105 F.4th 272, 282 (5th Cir. 2024) (quoting *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982)). The exception applies where (1) a crime or fraud was impending or continuing at the time of the communication, and (2) the communications or work product at issue were in furtherance of that criminal or fraudulent activity. *See In re E.E.O.C.*, 207 F. App'x 426, 434 (5th Cir. 2006). Dugaboy reasonably believes, and has evidence to support, that certain communications and work product it seeks were intended to further continuing or future criminal or fraudulent activity and are therefore not privileged.

Likewise, Subject-Matter Waiver under Federal Rule of Evidence 502(a) provides that disclosure of certain information in a federal proceeding waives privilege for related information when (1) the waiver was intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) the disclosed and undisclosed

5

communications and work product "ought in fairness to be considered together." Fed. R. Evid.

502(a); *see also Crider Inc. v. Silgan Containers LLC*, 2023 WL 479094, at *22 (N.D. Tex. Jan.

13, 2023). Any communications or work product that would otherwise be privileged, but concern

the same subject matter intentionally disclosed by Mark Patrick in his affidavits or testimony in

this Proceeding or Related Proceedings fall under this exception, and privilege has been waived.

Accordingly, under these exceptions and waivers, You must produce documents that would

typically be privileged as they relate to (1) any fraudulent activity that counsel was involved in or

knew of, or (2) any privileged conversation or information that has already been disclosed

elsewhere in this litigation.

If You still contend that any Documents sought by the Requests are privileged or otherwise

protected from discovery, You must nevertheless identify for each Document withheld:

(a) the legal basis for withholding the Document;

(b) the person asserting any claim of privilege and/or protection;

(c) a description and identification of the requested Document sufficient to frame an

appropriate demand for the Document and a motion to compel disclosure thereof,

setting forth at least the following:

(i) the author and/or signatory of the Document withheld;

(ii) the date of the Document withheld;

(iii) all addressees and/or recipients of the Document withheld; and

(iv) the subject matter and circumstances under which the Document

withheld was created in sufficient detail to ascertain applicability of

such privilege or other legal basis.

8. Notwithstanding a claim that a portion of a Document is privileged or otherwise protected from disclosure, any such Document must be produced with the portion claimed to be protected excised.

9. If You contend that any Request is ambiguous or unclear, contact undersigned counsel as soon as possible so that the Request can be clarified to avoid unnecessary delays in discovery.

10. These Requests are continuing in nature. Any Documents located, created, or obtained subsequent to the Documents provided in response to these Requests and that should have been produced had they been known shall be promptly supplied by supplemental responses whenever You find, locate, or acquire such Documents. You are required to supplement and correct Your answers and responses on a timely basis.

## DEFINITIONS

As used herein, the terms listed below shall be defined as follows. Insofar as a term is not explicitly defined, the meaning to be used is the commonly accepted definition of the term. Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under applicable rules. The following terms are to be given their ascribed definitions:

**A. Proceedings**

1. The term "this Proceeding" or "this Litigation" or "Main Case" refers to the main bankruptcy proceeding *In re Highland Capital Management*, Case No. 19-34054, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

2. The term "Related Proceedings" includes all other legal proceedings or actions involving or related to Highland, HMIT, and persons, parties, or entities involved with or affected by the Settlement, specifically including but not limited to the Cayman Islands Proceedings, the Chapter

7

proceeding in the United States Bankruptcy Court for the District of Delaware, and the Texas

Business Court proceeding, as well as any bankruptcy adversary proceedings before the United

States Bankruptcy Court for the Northern District of Texas that are separate from the Main Case.

**B. Parties and Individuals**

1. The term "You" or "Your" refers to Mark Patrick, as well as his agents, attorneys, accountants, advisors, representatives, or any other individual(s) or entity(ies) acting or authorized to act on behalf of him, and any related companies, divisions, or subsidiaries, past or present, including, without limitation, the directors, officers, employees, agents, or attorneys thereof, as well as any predecessors-in-interest or successors-in-interest.

2. The term "Patrick" refers to Mark Eric Patrick.

3. The term "Dondero" refers to James Dondero.

4. The term "Okada" refers to Mark Okada.

5. The term "Seery" or "Claimant Trustee" refers to James P. Seery, Jr.

6. The term "Kirschner" or "Litigation Trustee" refers to Marc S. Kirschner.

7. The term "Murphy" refers to Paul Murphy.

8. The term "Scott" refers to Grant Scott.

9. The term "Cronin" refers to Kevin Cronin.

10. The term "Honis" refers to John Honis.

11. The term "Raver" refers to Shawn Raver.

**C. Highland Entities and Related Trusts**

12. The term "Highland" or "Highland Capital Management" refers to Highland Capital Management, L.P., a Dallas-based, Delaware-domiciled investment advisor, and the Debtor in the

8

matter *In re Highland Capital Management*, Case No. 19-34054, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

13. The term "Highland Entities" or "Highland Entity" refers collectively to Highland Capital Management, L.P., the Highland Claimant Trust, the Highland Litigation Sub-Trust, and the Highland Indemnity Trust, together with each of their respective officers, directors, managers, general partners, agents, attorneys, affiliates, parents, subsidiaries, and any persons or entities acting or authorized to act on their behalf.

14. The term "Highland Claimant Trust" refers to the entity created under the Plan to hold, monetize, and distribute the assets of Highland's estate.

15. The term "Highland Litigation Sub-Trust" or "Litigation Sub-Trust" refers to the trust created under the Plan for the purpose of pursuing litigation claims on behalf of the Highland estate.

16. The term "Highland Indemnity Trust" or "Indemnity Trust" refers to the trust created under the Plan to hold assets for the purpose of indemnification obligations arising out of the Highland estate.

17. The term "Highland Party" or "Highland Parties" refers to Highland Capital Management, L.P., the Highland Claimant Trust, the Highland Litigation Sub-Trust, the Highland Indemnity Trust, and each of their respective officers, directors, managers, general partners, agents, attorneys, affiliates, parents, and subsidiaries, and any persons or entities acting or authorized to act on their behalf.

### D. HMIT Entities and Related Parties

1. The term "HMIT Entities" refers collectively to Hunter Mountain Investment Trust and Beacon Mountain, LLC, together with each of their respective officers, directors, managers,

general partners, agents, attorneys, affiliates, parents, subsidiaries, and any persons or entities acting or authorized to act on their behalf.

2.   The term "HMIT Parties" refers broadly to the HMIT Entities, Mark Patrick, and any related decision maker with respect to the HMIT Entities, together with each of their respective officers, directors, managers, general partners, agents, attorneys, affiliates, parents, subsidiaries, and any persons or entities acting or authorized to act on their behalf.

3.   The term "Hunter Mountain" or "HMIT" refers to Hunter Mountain Investment Trust.

4.   The term "Beacon Mountain" refers to Beacon Mountain, LLC.

5.   The term "Beacon Hunter" refers to Beacon Hunter, LLC.

**E.  Rand Entities**

1.   The term "Rand Parties" or "Rand Entities" refers collectively to Rand PE Fund I, LP, Rand Advisors, LLC, and Rand PE Fund Management, LLC, together with each of their respective officers, directors, managers, general partners, agents, attorneys, affiliates, parents, subsidiaries, and any persons or entities acting or authorized to act on their behalf.

2.   The term "Rand Fund" or "Rand PE Fund" refers to Rand PE Fund I, LP.

3.   The term "Rand Advisors" refers to Rand Advisors, LLC, an SEC-registered investment advisor that served as the investment adviser to Rand PE Fund I, LP.

4.   The term "Rand PE Fund Management" refers to Rand PE Fund Management, LLC.

**F.  DAF Entities and Related Structures**

1.   The term "DAF" or "Charitable DAF Holdco" refers to Charitable DAF Holdco, Ltd.

2.   The term "DAF Fund" or "Charitable DAF Fund" refers to Charitable DAF Fund, LP.

3.   The term "DAF GP" or "Charitable DAF GP" refers to Charitable DAF GP, LLC.

4. The term "DAF Structure" refers to the overall donor-advised fund investment vehicle and its constituent entities, including Charitable DAF Holdco, Ltd., Charitable DAF Fund, LP, Charitable DAF GP, LLC, and any entity holding ownership or management interests therein or formed in connection therewith, including any entities created as part of the restructuring of the DAF.

5. The term "DAF Entities" refers collectively to Charitable DAF Holdco, Ltd., Charitable DAF Fund, LP, Charitable DAF GP, LLC, CDH GP, Ltd., CDMCFAD, LLC, DFW Charitable Foundation, CLO Holdco, LLC, and any other entity formed, restructured, or otherwise created in connection with or derived from the DAF Structure, together with each of their respective officers, directors, managers, general partners, agents, attorneys, affiliates, parents, subsidiaries, and any persons or entities acting or authorized to act on their behalf.

6. The terms "New GP" or "CDH GP" refer to CDH GP, Ltd.

7. The term "CDMCFAD" or "DAF 2.0" refers to CDMCFAD, LLC.

8. The term "DFW Charitable Foundation" or "DFW Foundation" refers to DFW Charitable Foundation.

9. The term "CLO Holdco" refers to CLO Holdco, LLC.

**G. Charitable and Donor Entities**

1. The terms "The Dallas Foundation" or "Dallas Foundation" refer to The Dallas Foundation.

2. The term "Crown Global" refers to Crown Global Life Insurance, Ltd.

3. The terms "Empower" or "Empower Dallas" refer to Empower Dallas.

4. The term "Okada Foundation" refers to the Okada Foundation.

5. The term "Charitable Beneficiaries" or "Charities" refers collectively to The Dallas Foundation, Crown Global Life Insurance, Ltd., Empower Dallas, the Okada Foundation, and any

11

other charitable organization or foundation that held beneficial ownership in the DAF Structure through participation shares or annuity policies.

6. The term "Highland Dallas Foundation" refers to Highland Dallas Foundation, Inc.

7. The term "Highland Santa Barbara Foundation" refers to Highland Santa Barbara Foundation, Inc.

8. The term "Highland Kansas City Foundation" refers to Highland Kansas City Foundation, Inc.

9. The term "Participation Shares" refers to the shares in Charitable DAF Holdco, Ltd. held by the Charitable Foundations through which the Foundations held beneficial ownership in the DAF Structure.

## H. Other Entities

1. The term "Dugaboy" refers to The Dugaboy Investment Trust.

2. The term "Strand" or "Strand Advisors" refers to Strand Advisors, Inc.

3. The terms "Atlas Fund" or "Atlas IDF" refers to Atlas IDF, LP.

4. The terms "Skyview" or "Skyview Group" refer to The Skyview Group.

5. The term "Fortaris" or "Fortaris Capital Advisors" refers to Fortaris Capital Advisors.

6. The term "ValueScope" refers to ValueScope, LLC.

7. The term "Celia Holdco" refers to Celia Holdco LLC.

8. The terms "Creative Hearts" or "Creative Hearts TX" refer to Creative Hearts TX.

## I. Law Firms

1. The term "Kelly Hart" refers to Kelly Hart & Hallman LLP, or any predecessor or successor firm or any associated attorney.

12

2. The term "Shields Law Group" refers to Shields Law Group, P.C., or any predecessor or successor firm or any associated attorney.

### J. Litigation, Settlement, and Bankruptcy Terms

1. The term "Highland Bankruptcy" refers to the Chapter 11 bankruptcy case titled *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj, pending in the United States Bankruptcy Court for the Northern District of Texas.

2. The term "Settlement Agreement" refers to each and every discussion or negotiation of settlement or iteration of the settlement agreement between the Highland Entities and the HMIT Entities, together with all exhibits, schedules, appendices, and ancillary documents, and including any preliminary drafts, associated documents, and communications related thereto.

3. The term "Settlement Agreement & General Release" or "9019 Settlement" refers to the Settlement Agreement & General Release dated May 19, 2025, by and among the Highland Entities and the HMIT Entities, as approved by the Court, together with all exhibits, schedules, appendices, and ancillary documents.

4. The term "9019 Motion" refers to the Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith, filed on May 19, 2025 (Bankr. Dkt. 4217).

5. The term "Rule 9019 Settlement Order" refers to the Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith, entered on June 30, 2025 (Bankr. Dkt. 4297).

6. The term "Kirschner Litigation" or "Kirschner Claims" or "Transferred Claims" refers to the 36-count adversary complaint filed by Marc A. Kirschner, as Litigation Trustee, styled

13

Kirschner v. Dondero, Adv. Proc. No. 21-03076-sgj (Bankr. N.D. Tex. Oct. 15, 2021), together with any amended, supplemental, or related pleadings, and the claims asserted therein.

7. The term "Plan" refers to Highland Capital Management, L.P.'s Fifth Amended Plan of Reorganization (as Modified), confirmed on February 22, 2021.

8. The term "Confirmation Order" refers to the Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.

9. The term "Class 10" refers to the class of claims under the Plan designated as "Class 10 Claims" and consisting of the claim held by Hunter Mountain Investment Trust as a holder of pre-bankruptcy Class B and C limited partnership interests in Highland.

10. The term "Class 11" refers to the class of claims under the Plan designated as "Class 11 Claims" and consisting of the claim held by other equity holders holding pre-bankruptcy Class A limited partnership interests in Highland.

11. The term "Class 10 Interest" or "HMIT Class 10 Interest" refers to Hunter Mountain Investment Trust's allowed Class 10 claim in the amount of $336,940,230.58 as set forth in the Settlement Agreement and associated Order.

12. The term "Contingent Claimant Trust Interests" refers to the interests given to the former equity holders under the Plan in the Highland Claimant Trust, which were to vest only upon certification by the Claimant Trustee that all unsecured creditors had been paid in full with interest.

13. The term "Work Plan" refers to the plan or plans prepared by or at the direction of The Shields Law Group or any other counsel for Patrick relating to restructuring the DAF Entities.

14. The term "Withdrawal Stipulation" refers to the Stipulation Withdrawing Objection of The Dallas Foundation and Crown Global Life Insurance, Ltd. to the Motion for Entry of an Order

14

Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith (Bankr. Dkt. 4291).

15. The term "Dugaboy Note" refers to the promissory note dated May 31, 2017, in the original amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

16. The term "Texas Business Court Proceeding" or "Business Court Proceeding" refers to Case No. 25-BC01B-0027 filed in the Texas Business Court, First Division on July 1, 2025, and captioned *The Highland Dallas Foundation, Inc. ,The Highland Kansas City Foundation, Inc., and The Highland Santa Barbara Foundation, Inc. vs. DFW Charitable Foundation, CDMCFAD, LLC, Charitable DAF GP, LLC,CDH GP, Ltd., and Mark Patrick.*

### K. Cayman Islands Proceedings

1. The terms "Cayman Islands Proceeding(s)" or "Cayman Proceeding" refer collectively to all judicial proceedings in the Cayman Islands relating to Charitable DAF Holdco, Ltd. or any DAF Entity, including (a) the voluntary liquidation filed by Patrick on April 2, 2025; (b) the winding up petition filed by the charitable owners on April 23, 2025 (No. FSD 99 of 2025 (JAJ)); (c) the Writ of Summons and Statement of Claim filed by the Joint Official Liquidators on July 15, 2025 (No. FSD 201 of 2025); and (d) all related proceedings, investigations, hearings, orders, and filings.

2. The term "Joint Official Liquidators" or "JOLs" refers to the court-appointed liquidators designated by the Cayman Islands court on or about May 6, 2025 to oversee the DAF's operations.

3. The term "Statement of Claim" refers to the Writ of Summons and Statement of Claim filed by the Joint Official Liquidators in the Cayman Islands Proceeding on July 15, 2025.

15

4.   The term "Chapter 15 Petition" refers to the petition filed by the Joint Official Liquidators in the United States Bankruptcy Court for the District of Delaware on July 21, 2025.

5.   The term "Patrick-Cronin Proposal" refers to the proposal made by Mark Patrick to Kevin Cronin, a principal of Fortaris Capital Advisors, to make and split monthly payments to the DAF, as referenced in Paragraph 173 of the Third Affidavit of Mark Patrick.

### L.   General Discovery Terms

1.   The term "Document" or "Documents" is used in its broadest possible sense and refers, without limitation, to anything upon which any expression, communication, or representation has been recorded by any means. The term includes, but is not limited to: correspondence, emails, text messages, instant messages, messages/posts on social media, handwritten notes, photographs, working papers, any drafts of documents (preliminary, intermediate, and/or final), memoranda, contracts/agreements, tapes, business records, financial records, charts, notes, records of any sort of meetings, reports of telephone or other oral conversations, calendars (whether hardcopy or electronic, including desk calendars, phone calendars, or other calendars using software or an application), appointment books, audio or video tape recordings, information on computer disc/card/drive, computer entries that can be retrieved electronically, databases, and all other writings and recordings of every kind that are in Your actual or constructive possession, custody, or control. The term includes, but is not limited to, drafts and copies of any documents, whether identical to the original or different from the original because of notes, comments, highlighting, edits, any other alterations made on such copies, indications that said copies were sent to different individuals than were the originals, or any other reason.

2.   The term "Communication" or "Communications" means any transmission of information in any context or situation by or between two or more Persons by any means or medium

16

whatsoever, whether in the form of an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, or on tape, either orally or in writing, including, but not limited to, conversations, correspondence, emails, text messages, instant messages, social media communications, telexes, facsimile transmissions, telecopies, recordings in any medium of oral, written, or typed communication, telephone or message logs, notes or memoranda relating to written or oral communications, and any translation thereof.

3. The terms "Person" or "Entity" and their plural forms mean natural persons, proprietorships, partnerships, firms, trusts, estates, companies, corporations, public corporations, sole practitioners, municipal corporations, federal, state, and local governments, all departments and agencies thereof, any other governmental agencies, subdivisions, groups, associations, or organizations, or any other entity, whether foreign or domestic.

4. The term "thing" means any tangible item, including without limitation, models, prototypes, and samples of any device or apparatus or product.

5. The terms "concerning," "regarding," "referring to," "related to," or "relating to" shall be construed in the broadest possible sense, and shall mean without limitation and whether in whole or in part: referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical or factual connection whatsoever with the subject addressed.

6. The terms "state" or "describe" mean to fully elucidate by reference to underlying facts rather than by reference to ultimate facts or conclusions of fact or law; where applicable, to particularize as to time, place, and manner; and to set forth all relevant facts necessary to complete the understanding of the act, process, event, or thing in question.

7. The term "Relevant Period" refers to the period beginning on the earlier of January 1, 2025, or such date as identified in Response to Request No. 1,[2] through the present.

8. The present tense includes the past and future tenses.

9. The singular includes the plural, and the plural includes the singular.

10. Words in the masculine, feminine, and neutral form shall include each of the other genders.

11. Whenever used herein, "and" may be understood to mean "or" and vice versa whenever such construction results in a broader request for information.

12. "All" means "any and all" and "any" means "any and all."

13. "Including" means "including but not limited to."

14. The term "identify" means and requires You to:

(a) With reference to an individual, state his or her full name and last known residential address, business address, telephone and/or facsimile number, the name and address of his or her employer, the individual's job title or job responsibilities, and his or her relationship to You;

(b) With reference to a company or organization, state the entity's full legal name, business addresses, telephone number, and a person with whom You had direct contact within that entity;

(c) With reference to a document, describe the document, state the date when the document was created, name the creator of the document, and name each person to whom the document was sent;

(d) With reference to an oral communication, provide the date(s) of the communication, the names and addresses of all parties, when the communication occurred, the place(s)

---

[2] *I.e.*, "the first date on which any HMIT Entity communicated with any Highland Entity regarding Settlement."

18

where the communication took place, the subject matter of the communication, and the general substance of the communication; and

(e) With reference to an occurrence or event, provide the date and location of the occurrence or event, the identity of each person involved in the occurrence or event, the subject matter discussed, and the identity of any document that records, refers to, or relates to such occurrence or event.

## DOCUMENT REQUESTS

**REQUEST NO. 1:** All Documents and Communications between or among Highland Capital Management, L.P. (or its representatives, including James P. Seery, Jr. or the Claimant Trustee) and any of the HMIT Entities concerning the 9019 Settlement, including but not limited to draft agreements, term sheets, and settlement proposals, and including Documents sufficient to show the first date on which any HMIT Entity communicated with any Highland Entity regarding Settlement.

**RESPONSE:**

**REQUEST NO. 2:** All Documents and Communications sufficient to show that the Settlement Agreement & General Release, by and among the Highland Entities and the HMIT Entities, was executed by persons with full power and authority to bind each HMIT Entity party thereto, including any board resolutions, corporate authorizations, consents, or approvals obtained prior to execution.

**RESPONSE:**

**REQUEST NO. 3**: All Documents relating to due diligence performed by Highland Capital Management, L.P. (or its representatives) concerning (a) the authority of Mark Patrick or any other person to bind the HMIT Entities to the 9019 Settlement; (b) the ownership structure of the HMIT Entities; or (c) any corporate restructuring of the HMIT Entities or the DAF Entities.

**RESPONSE:**

**REQUEST NO. 4**: All Documents and Communications exchanged between any Highland Party and any HMIT Entity prior to execution of the Settlement Agreement relating to or evidencing legal ownership, economic beneficial ownership, or legal control of any HMIT Entity, including any changes thereto.

**RESPONSE:**

**REQUEST NO. 5:** All Documents and Communications exchanged between any Highland Party and any Rand Party prior to execution of the Settlement Agreement relating to or evidencing legal ownership, economic beneficial ownership, or legal control of any HMIT Entity, including any changes thereto.

**RESPONSE:**

**REQUEST NO. 6:** All Documents and Communications exchanged between any Highland Party and any person or party prior to execution of the Settlement Agreement relating to or evidencing any change in legal ownership, economic beneficial ownership, or legal control of any HMIT Entity, including any transaction related thereto.

**RESPONSE:**

**REQUEST NO. 7:** All Documents and Communications exchanged between any Highland Party and any person or party prior to execution of the Settlement Agreement relating to CLO Holdco, LLC, including, but not limited to, its formation, purpose, officers, members, managers, and participation or role in any transaction.

**RESPONSE:**

**REQUEST NO. 8:** All Documents and Communications relating to, referencing, or reflecting due diligence performed by any HMIT Entity prior to the execution of the Settlement Agreement and General Release dated May 19, 2025, including any analysis of whether execution of the Settlement Agreement violated any other agreements, contracts, or fiduciary duties.

**RESPONSE:**

**REQUEST NO. 9:** All Documents evidencing any Communications between any HMIT Entity representative and any Highland Entity representative regarding the terms of the Settlement Agreement.

**RESPONSE:**

**REQUEST NO. 10:** All Documents constituting or relating to the Representations and Warranties in paragraph 13 of the Settlement Agreement & General Release, including any documents that support, substantiate, or were relied upon in making such representations.

**RESPONSE:**

**REQUEST NO. 11:** All Documents relating to the Claimant Trustee's evaluation of the 9019 Settlement, including any analyses of the settlement's fairness, the value of the claims being released, and any Communications with Patrick or the HMIT Entities regarding Settlement terms.

**RESPONSE:**

20

**REQUEST NO. 12:** All Documents and Communications relating to, referencing, or reflecting the consideration received by Hunter Mountain Investment Trust in exchange for entering into the Settlement Agreement & General Release dated May 19, 2025, including any valuations, appraisals, or analyses of the value received.

**RESPONSE:**

**REQUEST NO. 13:** All Documents and Communications relating to, referencing, or reflecting negotiations over the terms of the Settlement Agreement & General Release, including the cash payment to HMIT, the allowance of the HMIT Class 10 Interest, and the transfer of the Kirschner Claims.

**RESPONSE:**

**REQUEST NO. 14:** All Documents and Communications sufficient to show the reason or rationale for the HMIT Entities' agreement to transfer or relinquish litigation rights previously asserted against Highland Entities in exchange for the consideration set forth in the Settlement Agreement.

**RESPONSE:**

**REQUEST NO. 15:** All Documents relating to the transfer of the Kirschner Litigation claims to the HMIT Entities pursuant to the 9019 Settlement, including any Communications discussing the strategic purpose, value, or intended use of such claims.

**RESPONSE:**

**REQUEST NO. 16:** All Documents relating to any litigation commenced or actions taken by Patrick or any HMIT Entity using the Kirschner Litigation claims obtained through the 9019 Settlement, including the filing styled *Plaintiffs' Original Petition, Application for Temporary Restraining Order and Temporary Injunction, and Emergency Request for Appointment of Receiver*, No. 25-BC01B-0027 (July 1, 2025).

**RESPONSE:**

**REQUEST NO. 17:** All Documents evidencing any Communications with Highland Capital Management, L.P., or any Highland Entity relating to, referencing, or reflecting any plan or strategy by Mark Patrick regarding a potential settlement of Hunter Mountain Investment Trust's claims.

**RESPONSE:**

**REQUEST NO. 18:** All Communications between You and Highland Capital Management, L.P., or any Highland Entity regarding the Settlement Agreement & General Release.

**RESPONSE:**

21

**REQUEST NO. 19:** All Communications between You and James P. Seery, Jr., in any capacity.

**RESPONSE:**

**REQUEST NO. 20:** All Communications between You and Marc S. Kirschner, in any capacity.

**RESPONSE:**

**REQUEST NO. 21:** All Documents and Communications reflecting any due diligence conducted by You or on Your behalf regarding the authority of Mark Patrick to enter into the Settlement Agreement on behalf of the HMIT Entities.

**RESPONSE:**

**REQUEST NO. 22:** All Documents and Communications, including billing records, invoices, and engagement letters, between You and Kelly Hart & Hallman LLP (or any predecessor or successor firm or any associated attorney) relating to work involving the Settlement Agreement, the 9019 Motion, or the HMIT Entities, the DAF Entities, or any restructuring of such entities.[3]

**RESPONSE:**

**REQUEST NO. 23:** All Documents and Communications, including billing records, invoices, and engagement letters, between You and Shields Law Group, P.C. (or any associated attorney) relating to work involving (a) the DAF Structure, Hunter Mountain Investment Trust, the formation or restructuring of any DAF Entity or HMIT Entity; (b) the separation of DAF assets from the charitable beneficiaries; or (c) the "Work Plan" for restructuring.[4]

**RESPONSE:**

**REQUEST NO. 24:** All Communications between You and any third party relating to the Settlement Agreement, the 9019 Motion, or the HMIT Entities.

**RESPONSE:**

**REQUEST NO. 25:** All Documents relating to the current value of the Highland Claimant Trust, including any reports, analyses, or projections of Highland's remaining assets, estimated distributions to claimants, and any anticipated residual value available for Class 10 and Class 11 interest holders.

---

[3] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

[4] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

**RESPONSE:**

**REQUEST NO. 26:** All Documents relating to any payments made or to be made pursuant to the 9019 Settlement, including the $500,000 lump-sum payment, the $10 million initial distribution, and any subsequent distributions, including wire transfer records, bank statements, and any documents reflecting the disposition of such funds.

**RESPONSE:**

**REQUEST NO. 27:** All Documents reflecting Highland Capital Management, L.P.'s knowledge of (a) the restructuring of the DAF Entities; (b) the sale of Beacon Mountain to CLO Holdco, LLC; (c) any change in the beneficial ownership of Hunter Mountain; or (d) any investigation of Patrick by the Cayman Islands court, the Texas Attorney General, or any other governmental authority.

**RESPONSE:**

**REQUEST NO. 28:** All Communications between Highland Capital Management, L.P. and any of the following regarding the 9019 Settlement or any restructuring of the HMIT Entities or DAF Entities: The Dallas Foundation, Crown Global Life Insurance, Ltd., the Texas Attorney General, or any Cayman Islands governmental or judicial authority.

**RESPONSE:**

**REQUEST NO. 29:** All Documents relating to the Stipulation Withdrawing Objection of The Dallas Foundation and Crown Global, including all Communications between Highland and The Dallas Foundation regarding the terms thereof.

**RESPONSE:**

**REQUEST NO. 30:** All bank statements, brokerage statements, investment account statements, balance sheets, financial statements, and accounting records for the following: Hunter Mountain Investment Trust; Beacon Mountain, LLC; CLO Holdco, LLC; CDMCFAD, LLC; Charitable DAF Holdco, Ltd.; Charitable DAF Fund, LP; DFW Charitable Foundation; and any other DAF entity, including consolidated and entity-level statements.

**RESPONSE:**

**REQUEST NO. 31:** All Documents and Communications relating to any transfer of any interests in Hunter Mountain Investment Trust, Beacon Mountain, LLC, CLO Holdco, LLC, CDMCFAD, LLC, and DFW Charitable Foundation, including but not limited to assignment agreements, contribution agreements, and corporate resolutions approving transfers.

**RESPONSE:**

**REQUEST NO. 32:** All Communications between Patrick and any financial advisor regarding the valuation of the charitable owners' membership interests or any DAF Entity assets.

23

**RESPONSE:**

**REQUEST NO. 33:** All Communications between You and Charitable DAF Fund, LP regarding the estimated or actual value of the Highland Capital Management, L.P. estate.

**RESPONSE:**

**REQUEST NO. 34:** All Communications between You and Hunter Mountain Investment Trust regarding the estimated or actual value of the Highland Capital Management, L.P. estate.

**RESPONSE:**

**REQUEST NO. 35:** All Communications between You and Hunter Mountain Investment Trust regarding the estimated or actual value of the Class 10 and Class 11 claims in the Highland Bankruptcy.

**RESPONSE:**

**REQUEST NO. 36:** All Documents and Communications sufficient to show the fair market value of Charitable DAF Fund, LP or its assets as of March 2025.

**RESPONSE:**

**REQUEST NO. 37:** All Documents and Communications referencing, relating to, or reflecting the valuation that resulted in the charitable owners receiving approximately $1.6 million for their direct or indirect interests in CDMCFAD and/or Charitable DAF Fund, LP in or around March 2025, including the redemption agreement and any valuation supporting such redemption.

**RESPONSE:**

**REQUEST NO. 38:** All Documents and Communications, including communications with counsel,[5] relating to the formation, incorporation, organization, or structuring of CDMCFAD, LLC (also known as "DAF 2.0"), including but not limited to articles of organization, operating agreements, corporate resolutions, board minutes, and all amendments thereto.

**RESPONSE:**

**REQUEST NO. 39:** All Documents relating to the limited liability company agreement for CDMCFAD, LLC, including provisions relating to (a) fiduciary duties; (b) Patrick's powers and discretion; and (c) the valuation and redemption of member interests.

**RESPONSE:**

---

[5] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

**REQUEST NO. 40:** All Documents relating to the formation, organization, or structuring of DFW Charitable Foundation, including articles of incorporation, bylaws, board minutes, member lists, and any charitable activities undertaken by said entity.

**RESPONSE:**

**REQUEST NO. 41:** All Documents and Communications related to or evidencing the knowledge of any Highland Party about DFW Charitable Foundation, including, but not limited to, the identity of the officers, directors, agents, or other persons with authority over DFW Charitable Foundation, the economic beneficiaries of DFW Charitable Foundation, and any payments made by DFW Charitable Foundation or any of its subsidiaries to Patrick.

**RESPONSE:**

**REQUEST NO. 42:** All Documents relating to the formation of CDH GP, Ltd., including any documents reflecting (a) Patrick's role or authority in the entity; (b) the replacement of Charitable DAF GP, LLC as the general partner of Charitable DAF Fund, LP; and (c) any Communications discussing the purpose of such replacement.

**RESPONSE:**

**REQUEST NO. 43:** All Documents relating to any transfer of assets from Charitable DAF Holdco, Ltd. or Charitable DAF Fund, LP to CDMCFAD, LLC or any entity controlled by Patrick, including the assignment of limited partnership interests referenced in the Statement of Claim filed in the Cayman Islands.

**RESPONSE:**

**REQUEST NO. 44:** All Documents and Communications sufficient to show when Hunter Mountain Investment Trust or any HMIT Party first received any indication, analysis, projection, or belief that the Class 10 or Class 11 claims would have net value available for distribution, including the timing of such indication, the basis therefor, and any valuations, projections, or analyses supporting such indication

**RESPONSE:**

**REQUEST NO. 45:** All Documents and Communications sufficient to show the original purpose and stated objectives of the 2015 sale of Highland Capital Management, L.P. equity holders' equity stake to Hunter Mountain Investment Trust, including any term sheets, memoranda, presentations, tax advice, or planning documents.

**RESPONSE:**

**REQUEST NO. 46:** All Documents and Communications regarding the reasons behind the equity ownership allocation reflected in Highland Capital Management, L.P.'s Fifth Amended Plan of Reorganization, including the allocation of (i) 99.5% to Hunter Mountain Investment Trust; (ii)

25

0.1866% to The Dugaboy Investment Trust; (iii) 0.0627% to Mark Okada and associated family trusts; and (iv) 0.25% to Strand Advisors, Inc.

**RESPONSE:**

**REQUEST NO. 47:** All Documents and Communications relating to, referencing, or reflecting any tax benefit, tax efficiency, or charitable purpose associated with the restructuring of Highland Capital Management, L.P. ownership in 2015.

**RESPONSE:**

**REQUEST NO. 48:** All Documents and Communications sufficient to show the circumstances surrounding Mark Patrick becoming the administrator of Hunter Mountain Investment Trust in 2022, including any appointment documents, resolutions, consents, correspondence, or agreements.

**RESPONSE:**

**REQUEST NO. 49:** All Documents and Communications relating to the transfer of management shares and ownership of Charitable DAF Fund, LP's general partner from Grant Scott to Mark Patrick in or around April 2021, including (a) any agreements governing the transfer; (b) any conditions or limitations on Patrick's authority; (c) any fiduciary duty obligations assumed by Patrick; (d) any Communications between Scott, Patrick, and the charitable owners regarding the transition; and (e) the consideration, if any, received by Grant Scott in exchange for such transfer.

**RESPONSE:**

**REQUEST NO. 50:** All Documents and Communications relating to, referencing, or reflecting any compensation, benefits, director fees, bonuses, or other remuneration paid to Grant Scott during his tenure as administrator or control person of the DAF Structure from 2011 through 2021.

**RESPONSE:**

**REQUEST NO. 51:** All Documents and Communications relating to, referencing, or reflecting any bonuses, compensation, director fees, or other remuneration paid to Mark Patrick from January 1, 2021, to the present from Hunter Mountain Investment Trust or any affiliated entity.

**RESPONSE:**

**REQUEST NO. 52:** All Documents and Communications relating to, referencing, or reflecting any bonuses, compensation, director fees, or other remuneration paid to Mark Patrick from January 1, 2021, to the present from DFW Charitable Foundation or any affiliated entity.

**RESPONSE:**

**REQUEST NO. 53:** All Documents and Communications relating to, referencing, or reflecting any bonuses, compensation, director fees, or other remuneration paid to Mark Patrick from January

1, 2021, to the present from Charitable DAF HoldCo, Ltd., Charitable DAF Fund, LP, or any affiliated entity within the DAF Structure.

**RESPONSE:**

**REQUEST NO. 54:** All Documents and Communications sufficient to show the basis for, approval of, and payment of director fees to Mark Patrick in each of 2022, 2023, 2024, and 2025, including any compensation studies, benchmarking reports, board approvals, or third-party assessments.

**RESPONSE:**

**REQUEST NO. 55:** All Documents and Communications sufficient to show the basis for, approval of, and payment of any bonuses to Mark Patrick in September 2024 and October 2024, including any written agreements, board resolutions, or documentation of performance metrics.

**RESPONSE:**

**REQUEST NO. 56:** All Documents relating to Mark Patrick's deposition testimony on June 23, 2025, including any preparation materials, Communications with counsel regarding anticipated questions, and documents reviewed in preparation for the deposition.[6]

**RESPONSE:**

**REQUEST NO. 57:** All Documents relating to Paul Murphy's role, authority, and compensation in connection with any DAF Entity, including (a) any agreement or arrangement governing Murphy's compensation; (b) any revision or amendment to Murphy's compensation plan, including any revision backdating payments to the beginning of 2025 that provided for $500,000 in fees triggered when injunctions are sought against the DAF; and (c) any Communications between Patrick and Murphy regarding the DAF restructuring, the 9019 Settlement, or the transfer of DAF assets.

**RESPONSE:**

**REQUEST NO. 58:** All Documents relating to indemnification payments or requests for indemnification made by or on behalf of Mark Patrick or Paul Murphy from any DAF Entity for legal fees or other expenses.

**RESPONSE:**

**REQUEST NO. 59:** All Documents relating to any Communications between Patrick and the charitable beneficiaries (The Dallas Foundation, Crown Global, Empower Dallas, or the Okada

---

[6] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

27

Foundation) from November 2024 through April 2025, including the "no confidence" letter sent by the charities in November 2024.

**RESPONSE:**

**REQUEST NO. 60:** All Communications between You and Highland Dallas Foundation, Inc. from January 1, 2021, to the present regarding the DAF Structure, its assets, investments, distributions, or management.

**RESPONSE:**

**REQUEST NO. 61:** All Communications between You and Highland Santa Barbara Foundation, Inc. from January 1, 2021, to the present regarding the DAF Structure, its assets, investments, distributions, or management.

**RESPONSE:**

**REQUEST NO. 62:** All Communications between You and Highland Kansas City Foundation, Inc. from January 1, 2021, to the present regarding the DAF Structure, its assets, investments, distributions, or management.

**RESPONSE:**

**REQUEST NO. 63:** All Communications between You and The Dallas Foundation from January 1, 2021, to the present regarding the DAF Structure, Hunter Mountain Investment Trust, or the Settlement Agreement and General Release.

**RESPONSE:**

**REQUEST NO. 64:** All Documents and Communications reflecting, referencing, or relating to any inquiries, questions, or requests for information from Highland Dallas Foundation, Inc., Highland Santa Barbara Foundation, Inc., Highland Kansas City Foundation, Inc., or The Dallas Foundation regarding (a) the DAF Structure, (b) DAF assets, (c) distributions to charitable beneficiaries, (d) Mark Patrick's compensation, or (e) corporate restructuring.

**RESPONSE:**

**REQUEST NO. 65:** All Documents and Communications sufficient to show the conversion of the charitable trust originally formed in 2006 into a donor-advised fund investment vehicle for

long-term charitable endeavors in or around October 2011, including any organizational documents, trust amendments, partnership agreements, or memoranda.[7]

**RESPONSE:**

**REQUEST NO. 66:** All Documents and Communications relating to, referencing, or reflecting the original structure and purpose of the donor-advised fund created in October 2011, including any tax opinions, IRS determination letters, or legal memoranda.[8]

**RESPONSE:**

**REQUEST NO. 67:** All Documents and Communications relating to, referencing, or reflecting the valuation of Highland Capital Management, L.P., or its assets.

**RESPONSE:**

**REQUEST NO. 68:** All Documents and Communications relating to, referencing, or reflecting Highland Capital Management, L.P.'s financial condition, including any monthly operating reports or quarterly operating reports.

**RESPONSE:**

**REQUEST NO. 69:** All Documents and Communications relating to the alleged insolvency of Highland Capital Management, L.P., including any analyses, memoranda, presentations, or reports prepared by or for any bankruptcy professional, creditor, or equity holder.[9]

**RESPONSE:**

**REQUEST NO. 70:** All Documents and Communications relating to the alleged insolvency of Highland Capital Management, L.P., including any analyses, memoranda, presentations, or reports

---

[7] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

[8] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

[9] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

prepared by or for Rand Advisors, LLC, Rand PE Fund I, LP, or Rand PE Fund Management, LLC.[10]

**RESPONSE:**

**REQUEST NO. 71:** All Documents and Communications relating to any valuation of Highland Capital Management, L.P., including any analyses, memoranda, presentations, or reports prepared by or for Rand Advisors, LLC, Rand PE Fund I, LP, or Rand PE Fund Management, LLC.[11]

**RESPONSE:**

**REQUEST NO. 72:** All Communications between You and Rand Advisors, LLC, Rand PE Fund I, LP, or Rand PE Fund Management, LLC reflecting any analysis or determination regarding the sufficiency of the net assets of the Highland Capital Management, L.P. estate to make payments to HMIT's Class 10 and Class 11 interest holders.

**RESPONSE:**

**REQUEST NO. 73:** All Communications between You and Rand Advisors, LLC, Rand PE Fund I, LP, or Rand PE Fund Management, LLC regarding any actual or contemplated payments from the net assets of the Highland Capital Management, L.P. estate to HMIT's Class 10 and Class 11 interest holders, including the calculation of such payments and the source of funds.

**RESPONSE:**

**REQUEST NO. 74:** All Communications between You and Charitable DAF Fund, LP reflecting any analysis or determination regarding the sufficiency of the net assets of the Highland Capital Management, L.P. estate to make payments to HMIT's Class 10 and Class 11 interest holders.

**RESPONSE:**

**REQUEST NO. 75:** All Communications between You and Charitable DAF Fund, LP regarding any actual or contemplated payments from the net assets of the Highland Capital Management, L.P. estate to HMIT's Class 10 and Class 11 interest holders, including the calculation of such payments and the source of funds.

---

[10] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

[11] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

**RESPONSE:**

**REQUEST NO. 76:** All Communications between You and Hunter Mountain Investment Trust reflecting any analysis or determination regarding the sufficiency of the net assets of the Highland Capital Management, L.P. estate to make payments to HMIT's Class 10 and Class 11 interest holders.

**RESPONSE:**

**REQUEST NO. 77:** All Communications between You and Hunter Mountain Investment Trust regarding any actual or contemplated payments from the net assets of the Highland Capital Management, L.P. estate to HMIT's Class 10 and Class 11 interest holders, including the calculation of such payments and the source of funds.

**RESPONSE:**

**REQUEST NO. 78:** All Documents and Communications relating to, referencing, or reflecting efforts by any HMIT Entity to obtain updated financial reporting from Highland Capital Management, L.P., or its bankruptcy professionals during the bankruptcy proceedings.

**RESPONSE:**

**REQUEST NO. 79:** All Documents reflecting the "Work Plan" prepared by or at the direction of The Shields Law Group or any other counsel for Patrick relating to restructuring the DAF Entities, including any instructions to create entities that were "hard to find or track."[12]

**RESPONSE:**

**REQUEST NO. 80:** All Documents and Communications between Mark Patrick and any attorney or law firm from January 1, 2023, to the present regarding corporate restructuring, entity formation, or changes to the governance of the DAF Structure, including any "work plans" or engagement letters.[13]

**RESPONSE:**

---

[12] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

[13] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

31

**REQUEST NO. 81:** All Documents and Communications relating to, referencing, or reflecting the formation of any new entity within, related to, or derived from the DAF Structure from January 1, 2023, to the present, including DFW Charitable Foundation, CDMCFAD, LLC, and CDH GP, Ltd.[14]

**RESPONSE:**

**REQUEST NO. 82:** All Documents and Communications between any attorney or law firm and Mark Patrick relating to the creation of new corporate entities within the DAF Structure.[15]

**RESPONSE:**

**REQUEST NO. 83**:  All Documents relating to Mark Patrick's authority to act on behalf of Rand Advisors, LLC, Rand PE Fund I, LP, or any HMIT Entity, including any power of attorney, board resolutions, or operating agreement provisions granting such authority.

**RESPONSE:**

**REQUEST NO. 84:** All Documents relating to any change in the ownership, management, or control of Hunter Mountain Investment Trust, Beacon Mountain LLC, or any entity in the Hunter Mountain ownership chain from January 1, 2024 to the present.

**RESPONSE:**

**REQUEST NO. 85**:  All organizational charts reflecting the corporate structure of (a) the DAF Entities; (b) the HMIT Entities; and (c) any entities through which Patrick directly or indirectly held an interest in Hunter Mountain, for any time during the Relevant Period.

**RESPONSE:**

**REQUEST NO. 86:** All documents and communications relating to, referencing, or reflecting the sale of Rand PE Fund I, LP's investment in Beacon Mountain, LLC in or around February 2025, including any purchase agreements, valuations, appraisals, or closing documents.

---

[14] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

[15] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

**RESPONSE:**

**REQUEST NO. 87**: All Documents relating to the transition of management of Rand PE Fund I, LP from John Honis to Patrick or any Patrick-controlled entity, including any Communications with investors or regulatory authorities regarding such transition.

**RESPONSE:**

**REQUEST NO. 88**: All audit reports, financial statements, and quarterly or annual reports for Rand PE Fund I, LP from January 1, 2023 to the present, including the 2024 audit issued on or about June 26, 2025.

**RESPONSE:**

**REQUEST NO. 89:** All Documents relating to the sale of Beacon Mountain LLC (or its interest in Hunter Mountain Investment Trust) to CLO Holdco, LLC, including but not limited to the purchase agreement, any valuations, closing documents, and wire transfer records.

**RESPONSE:**

**REQUEST NO. 90**: All Documents relating to any consent (or lack thereof) from Crown Global Life Insurance, Ltd., The Dallas Foundation, or Atlas IDF, LP regarding the sale of Beacon Mountain's interest in Hunter Mountain to CLO Holdco, LLC or any Patrick-controlled entity.

**RESPONSE:**

**REQUEST NO. 91**: All Documents relating to compliance (or non-compliance) with Section 3.01(b) of the Amended and Restated Limited Partnership Agreement of Atlas Fund, which prohibits Rand Fund from selling Hunter Mountain to an affiliate of Patrick without investor consent.

**RESPONSE:**

**REQUEST NO. 92:** All Documents and Communications relating to any notice or other information given to investors in Rand PE Fund I, LP (including any 4% minority investor) from January 1, 2025, to the present regarding the sale of Beacon Mountain, LLC's interest in HMIT, or any distribution relating thereto, including the February 20, 2025 notice referenced in Dugaboy's Motion for Reconsideration.

**RESPONSE:**

**REQUEST NO. 93:** All Documents and Communications sufficient to show the basis for the $1 million valuation of Beacon Mountain, LLC's interest in Hunter Mountain Investment Trust in or around February 2025, including any valuation reports, appraisals, financial analyses, or Communications with ValueScope, LLC or any other valuation firm concerning such valuation.

33

**RESPONSE:**

**REQUEST NO. 94:** All Documents, correspondence, engagement letters, contracts, or agreements between You and ValueScope, LLC (or any other valuation firm) relating to the valuation of any interest, holding in, or security issued by any of Beacon Hunter, LLC; Hunter Mountain Investment Trust; Beacon Mountain, LLC; CLO Holdco LLC; or any DAF Entity; or any participation or interest in Highland Capital Management, LP's bankruptcy estate.

**RESPONSE:**

**REQUEST NO. 95:** All draft and final valuation reports, memoranda, models, or analyses prepared by ValueScope, LLC relating to Beacon Hunter, LLC; Hunter Mountain Investment Trust; Beacon Mountain, LLC; CLO Holdco LLC; or any DAF Entity; or any participation or interest in Highland Capital Management, LP's bankruptcy estate, including but not limited to the valuation of the Participation Shares; and any Communications challenging or questioning the valuation methodology or conclusions.

**RESPONSE:**

**REQUEST NO. 96:** All Documents relating to the methodology used in any valuation of Beacon Hunter, LLC; Hunter Mountain Investment Trust; Beacon Mountain, LLC; CLO Holdco LLC; or any participation or interest in Highland Capital Management, LP's bankruptcy estate, including but not limited to instructions received regarding methodology, communications discussing the change from net asset value methodology to discounted cash flow methodology, supporting calculations, assumptions, and comparable transactions or valuations.

**RESPONSE:**

**REQUEST NO. 97:** All Documents and Communications related to the identity, ownership structure, principals, managers, or beneficial owners of Celia Holdco LLC.

**RESPONSE:**

**REQUEST NO. 98:** All Documents relating to the voluntary liquidation of Charitable DAF Holdco, Ltd. filed on April 2, 2025 in the Cayman Islands, including the petition, any supporting documents, and Communications regarding the decision to initiate liquidation.

**RESPONSE:**

34

**REQUEST NO. 99**: All Documents produced to or received from the Joint Official Liquidators of Charitable DAF Holdco, Ltd. in connection with their investigation of Patrick's activities.

**RESPONSE:**

**REQUEST NO. 100**: All Documents relating to any actions taken by Patrick or Murphy in response to the investigative efforts of the Joint Official Liquidators in the Cayman Islands, including any expenditures of DAF assets for legal fees or other expenses incurred in opposing such efforts.[16]

**RESPONSE:**

**REQUEST NO. 101**: All Documents relating to Creative Hearts TX, including (a) its formation documents; (b) the involvement of Patrick, his wife, or his daughter with the entity; and (c) any donations or payments made to it by any DAF Entity.[17]

**RESPONSE:**

**REQUEST NO. 102**: All Documents relating to the Patrick-Cronin Proposal.

**RESPONSE:**

---

[16] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

[17] For the avoidance of doubt, this Request explicitly seeks Documents and Communications for which attorney-client privilege and/or work product privilege do not apply due to the Crime-Fraud Exception and/or Subject-Matter Waiver. *See* Instruction No. 7.

Dated: March 23, 2026

*/s/ Geoffrey S. Harper*

**Geoffrey S. Harper**
Texas Bar No. 00795408
gharper@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

**John Michael Gaddis**
Texas Bar No. 24069747
mgaddis@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

I certify that on March 23, 2026, a true and correct copy of the foregoing document was served

upon counsel of record in accordance with the Federal Rules of Civil Procedure.

*Via Electronic Mail:*

Erik S. Jaffe (ejaffe@schaerr-jaffe.com)
**Schaerr Jaffe LLP**
1717 K Street NW, Suite 900
Washington, DC 20006

Mazin A. Sbaiti (mas@sbaitilaw.com)
**Sbaiti & Company PLLC**
JPMorgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201

/s/ Geoffrey S. Harper
Geoffrey S. Harper