PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S REPLY IN FURTHER
SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER AGAINST THE
<u>DUGABOY INVESTMENT TRUST'S DISCOVERY REQUESTS</u>**

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT ......................................................................................................................3

I.     DUGABOY'S OPPOSITION CONFIRMS THAT IT FAILS TO MAKE A
       *PRIMA FACIE* SHOWING THAT IT IS ENTITLED TO ANY DISCOVERY. ...............3

       A.     Dugaboy Fails To Satisfy The Requirements To Obtain Discovery Under
              Rule 60(b)(2), Which Requires "Newly Discovered Evidence." ...........................4

       B.     Dugaboy Fails To Satisfy The Requirements To Obtain Discovery Under
              Rule 60(b)(3), Which Requires A Showing Of Fraud. ...........................................8

II.    DUGABOY'S ASSERTIONS OF "GAMESMANSHIP" OR "WAIVER" ARE
       BASELESS. .................................................................................................................11

III.   DUGABOY'S OPPOSITION CONFIRMS THAT ITS DISCOVERY
       REQUESTS ARE OBJECTIONABLE. ...........................................................................14

CONCLUSION ..................................................................................................................17

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Brown v. Ft. Hood Fam. Hous. LP*,
2022 WL 22883290 (W.D. Tex. Nov. 17, 2022)............................................................7, 15

*Cadence Bank v. Bridgelink Eng'g LLC*,
2024 WL 6893273 (N.D. Tex. Dec. 16, 2024) ......................................................................15

*Compass Bank v. Shamgochian*,
287 F.R.D. 397 (S.D. Tex. 2012)...........................................................................................13

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt.,
L.P.)*,
2026 WL 755100 (5th Cir. Mar. 17, 2026)..............................................................................7

*Southmark Props. v. Charles House Corp.*,
742 F.2d 862 (5th Cir. 1984) .............................................................................................8, 15

**Rules**

Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes (2015)...........................................................14

Fed. R. Civ. P. 59(b) ............................................................................................................................4

Fed. R. Civ. P. 60(b)(2)................................................................................................................1, 4, 6

Pursuant to this Court's April 10, 2026 Order (the "April 10 Order"; Dkt. No. 4547), HCMLP, by and through its undersigned counsel, respectfully submits this reply (the "Reply") to Dugaboy's Response Opposing HCMLP's Motion For Protective Order Against Dugaboy's Discovery Requests (the "Opposition" or "Opp."; Dkt. No. 4551) and in further support of HCMLP's Motion For A Protective Order Against Dugaboy's Discovery Requests (the "Motion" or "MPO."; Dkt. No. 4533).[2]

## PRELIMINARY STATEMENT

1.      Dugaboy's Opposition confirms that it has no valid basis to seek discovery in connection with its Rule 60(b) Motion. Dugaboy admits that, to obtain such discovery, it must identify newly discovered evidence that could not have been discovered earlier with reasonable diligence or make a *prima facie* showing of fraud. Dugaboy devotes little attention to either issue but instead begs this Court not to look at "the ultimate merits." (Opp. at 16, 18.) But Dugaboy admits, as it must, that the *prima facie* standard requires courts to "consider[] the briefing on the merits and the evidence in the record to determine whether the claim has merit." (*Id.* at 16 n.9.) It does not.

2.      ***First***, Dugaboy has never identified any "newly discovered evidence" that it could not have discovered "with reasonable diligence" within 28 days of the 9019 Order—*i.e.*, July 28, 2025. Fed. R. Civ. P. 60(b)(2). Dugaboy admits that virtually all of the purportedly "new" evidence was in fact available by July 2025 (and, in fact, all of the core allegations were made *before* the 9019 hearing). Dugaboy's reliance on unspecified evidence from the Cayman Proceeding that was supposedly unavailable until December 2025 is misplaced for several reasons. For starters, to the

---

[2] All capitalized terms not otherwise defined herein have the same meanings as in the Motion and HCMLP's opposition to Dugaboy's Rule 60(b) Motion (the "Rule 60(b) Opposition"; Dkt. No. 4513). Unless otherwise indicated, all emphasis is added and all alterations, citations, and quotations are omitted.

extent the information was created after July 28, 2025, then, as a matter of law, it cannot be "newly discovered" for purposes of Rule 60(b)(2) because no amount of "diligence" could have uncovered the evidence before that time. Moreover, such "new" evidence would clearly be cumulative of the facts and allegations that had been raised repeatedly by multiple parties—including Dugaboy itself—from even before the objections to the 9019 Settlement through July 2025. In any event, Dugaboy had access to these Cayman Islands filings long before December 2025. Cayman Islands proceedings are public, so Dugaboy could have easily obtained filings with reasonable diligence. And it did: last July, Dugaboy filed its Motion to Stay the 9019 Order just 36 hours after the Cayman Islands JOLs filed their 83-page, single-spaced JOL *Writ* against Patrick and attached a copy of it to their Motion. But even if the pleadings were not directly available to Dugaboy (which they were), Dugaboy could have obtained them from Dondero. Dondero indisputably controls both Dugaboy and the Dondero Foundations, which are members of the liquidation committee in the Cayman Islands and therefore had full access to Cayman Islands filings. Because Dugaboy could have raised all these issues within 28 days of the 9019 Order with reasonable diligence, Dugaboy is not entitled to take discovery now, many months later.

3.     ***Second***, Dugaboy fails to make any showing—let alone a *prima facie* showing—of fraud in connection with the 9019 Settlement or 9019 Order. Dugaboy alleges only that Patrick defrauded DAF's beneficiaries (which do not include Dugaboy) by restructuring DAF. This has nothing to do with the settlement between HMIT and Highland or this Court's approval of that settlement. In fact, Dugaboy has no legal interest in the Cayman Proceeding at all.

4.     ***Third***, to try to distract from its inability to make a *prima facie* showing, Dugaboy selectively quotes from this Court's Scheduling Orders and the parties' correspondence to falsely claim that HCMLP agreed to reciprocal discovery. In reality, HCMLP objected at every step to

2

Dugaboy taking any affirmative discovery on its Rule 60(b) Motion, Dugaboy expressly acknowledged HCMLP's right to object, and this Court's Scheduling Orders reflect this preservation.

5.       Dugaboy also makes much of its purported document production to HCMLP. But Dugaboy ignores that (1) HCMLP's two document requests sought the very information that Dugaboy—which has the burden of proof—has still failed to disclose (*i.e.*, identifying the "newly discovered evidence" and the evidence of fraud in connection with the 9019 Motion), and (2) in response, Dugaboy simply reproduced the exact same already-filed exhibits to its Rule 60(b) Motion. So, in practice, Dugaboy has not produced any discovery at all.

6.       ***Finally***, Dugaboy's demand for 55 Requests to HCMLP, 16 hours of depositions, and 532 requests in third-party Subpoenas are highly objectionable and will serve only to harass, burden, and delay. Dugaboy has not come close to satisfying the requirements to reopen a final judgment and take discovery. This Court should put an end to Dugaboy's tactics and enter a protective order preventing Dugaboy from taking discovery in connection with its Rule 60(b) Motion.

**ARGUMENT**

I.       **DUGABOY'S OPPOSITION CONFIRMS THAT IT FAILS TO MAKE A *PRIMA FACIE* SHOWING THAT IT IS ENTITLED TO ANY DISCOVERY.**

7.       Dugaboy admits, as it must, that to obtain discovery for its Rule 60(b) Motion, it must present "new evidence" that was not "readily available or discoverable within the 28-day period following the Court's 9019 Order" or "ma[k]e the required prima facie showing of fraud." (Opp. at 7–8, 16; *see also* MPO at 3–4, 18–19.) Dugaboy's Opposition confirms that it has done neither.

**A.      Dugaboy Fails To Satisfy The Requirements To Obtain Discovery Under Rule 60(b)(2), Which Requires "Newly Discovered Evidence."**

8.      Dugaboy's Rule 60(b) Motion claims that the 9019 Settlement "was procured by fraud because Mark Patrick, who executed the agreement as *the duly authorized control person of the HMIT Entities*, secretly restructured the DAF entities' corporate structure." (Opp. at 1 n.1; *see also id.* at 2, 3 n.2, 16, 19–21; MPO at 5, 19.) Leaving aside, for now, how "the alleged *DAF restructuring fraud*" (Opp. at 19) makes the 9019 Settlement between *Highland and HMIT* a fraud upon this Court, the threshold for discovery under Rule 60(b)(2) is whether Dugaboy has made a showing that it has "newly discovered evidence that, with reasonable diligence, could not have been discovered" within 28 days of the 9019 Order—here, July 28, 2025.[3] Fed. R. Civ. P. 59(b), 60(b)(2). Dugaboy does not—and cannot—dispute that all the same core allegations in its Rule 60(b) Motion were already repeatedly made before July 28, 2025,[4] by:

- **Dondero** (Dugaboy's controlling person and beneficiary) in his **April 9, 2025**, affidavit in the Cayman Islands (MPO Ex. 7), filed in connection with **the Dondero Foundations'** winding up petition and supervision application filed in the Cayman Islands in **April and May 2025** (*id.* Ex. 6);

- **The Dallas Foundation** in its **June 9, 2025**, Objection to the 9019 Settlement, which was paid for by Dondero (Dkt. No. 4231);

- **Dugaboy** and **The Dallas Foundation** (again) in their depositions of Shawn Raver and Mark Patrick on **June 20 and 23, 2025**, respectively;

---

[3] Dugaboy's Opposition misstates the date of the 9019 Order, which was June 30, 2025 (not June 25, 2025). (Opp. at 16; MPO at 3, 13; Dkt No. 4297.)

[4] In fact, all the core allegations in Dugaboy's Rule 60(b) Motion were already made *before* the June 25, 2025, 9019 hearing itself; regardless of whether some unidentified aspects of the July court filings included additional "detail," they were filed before July 28, 2025, and therefore cannot constitute "newly discovered evidence" as a matter of law. Highland's Rule 60(b) Opposition contains a full list of the "Lead Documents" that were publicly filed between April 9 and July 28, 2025, in four different courts and that collectively contain all of the substantive allegations against Patrick in connection with DAF.

- **Dugaboy** (again) at the **June 25, 2025**, evidentiary hearing (following Dondero's prodding Dugaboy's counsel in the courtroom) on the 9019 Settlement after The Dallas Foundation voluntarily withdrew its Objections (MPO Ex. 11 at 31:4–34:15, 110:9–134:22; 184:3–188:18; 206:4–223:25);

- **The Highland Dallas Foundation**, of which Dondero is President, a Director, the principal officer, and funder in its **July 1, 2025**, petition in the Texas Business Court (MPO Ex. 15), which was supported by yet another declaration from Dondero;

- **The JOLs** when they filed their **July 15, 2025**, JOL *Writ* in the Cayman Proceeding (MPO Ex. 8);

- **Dugaboy** (again) in its **July 17, 2025**, Motion to Stay (Dkt. No. 4326), which attaches the JOLs' *Writ* in its entirety; and

- **The JOLs** (again) in their **July 21, 2025**, Chapter 15 Petition (which has yet to be granted) filed in the Delaware Bankruptcy Court with thousands of pages of ancillary documents.

9.      In its Opposition, Dugaboy does not even try to explain how its purportedly "new evidence" could not have been discovered in time. To the contrary, Dugaboy admits *three times* that nearly all of the claimed "new evidence" was available by "*July 2025*," which is within 28 days of the 9019 Order. (Opp. at 3, 16–17.) Simply put, all of these parties—including Dondero and Dugaboy itself—could have raised these allegations before the relevant deadline to seek a new trial under Rule 59(b).

10.     Accordingly, immediately after Dugaboy filed its Rule 60(b) Motion, HCMLP served an extremely limited discovery request on Dugaboy focused solely on the threshold inquiry of what Dugaboy "contend[s] constitute[s] newly discover[ed] evidence" underlying its Motion. (*Id.* Ex. 8 at 6.) In response, Dugaboy simply *reproduced the exact same already-filed exhibits to its Rule 60(b) Motion*, virtually all of which Dugaboy and Dondero already knew or could have easily discovered. (*See* MPO at 4.)

11.     Dugaboy falsely asserts that unspecified "pieces of evidence were not available to Dugaboy until December 2025," because they "were subject to a protective order" in the "proceedings in the Cayman Islands." (Opp. at 10, 17.) Tellingly, Dugaboy did not offer a

5

declaration or affidavit in support and—in what is becoming a pattern—withheld from this Court the very order upon which it apparently relies. In reality, the order is actually a "Consent Order" (not a protective order) and does not concern or restrict the sharing of court filings. (Morris Decl. ¶ 2 Ex. 20 (Consent Order, *In re Charitable DAF Holdco, Ltd.*, No. FSD 201 of 2025 (RPJ) (Grand Court, Cayman Islands, Fin. Servs. Div. July 31, 2025)).) Rather, this Consent Order provides simply that (1) the Patrick-controlled entities agree to operate in the ordinary course pending a ruling on the JOL *Writ* (which they did), (2) after July 31, 2025, these entities will disclose limited financial information to the JOLs, and (3) the JOLs will not share that specifically disclosed information with Dondero or the Dondero Foundations. (Ex. 20 ¶ 6.) The Consent Order thus has no impact whatsoever on the pleadings filed in the Cayman Proceeding.[5]

12.     All of the filings in the Cayman Proceeding were publicly available. *See* Cayman Islands Law Courts, *Being An Observer* ("Court cases are public events.").[6] Indeed, as noted above, Dugaboy's own Motion to Stay was based entirely on the claims and allegations asserted in the JOL *Writ* filed in the Cayman Islands—which Dugaboy actually called "newly discovered evidence" back in July 2025—so it necessarily had access to those Cayman Islands filings at the time. (Motion to Stay at 7–8, 11.) This directly refutes Dugaboy's claim that it lacked "actual knowledge of this information." (Opp. at 17.)

13.     In any event, the standard under Rule 60(b)(2) is not whether Dugaboy had "actual knowledge" of evidence; it is whether Dugaboy could have discovered this evidence "with reasonable diligence." Fed. R. Civ. P. 60(b)(2). It clearly could have. Even if the relevant

---

[5] Dugaboy's assertion that the DAF entities "were specifically instructed not to share any nonpublic information with Mr. Dondero or those associated with him and did not" (Opp. at 17 n.10) is thus highly misleading, particularly because Dugaboy did not bother to provide the order to this Court.

[6] *Available at* https://judicial.ky/being-an-observer/.

information were not publicly available (which it was), it was available to Dugaboy through Dondero. Dugaboy does not—and cannot—dispute that Dondero controls Dugaboy, his family trust for which he is the lifetime beneficiary. (MPO at 8 (citing *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2026 WL 755100, at *1 (5th Cir. Mar. 17, 2026)).) Dugaboy also does not—and cannot—dispute that Dondero is the founder, funder, director, president, and principal officer of the Dondero Foundations, which are members of the liquidation committee of DAF Holdco in the Cayman Islands. (*Id.* at 10; Opp. at 17 & n.10.) Indeed, the Dondero Foundations' own tax filings state—on the very first page—that Dondero is their "principal officer." (Morris Decl. ¶ 3 Ex. 21.) And the Dondero Foundations received all filings in the Cayman Proceeding, including the Cayman court's draft decision rejecting the JOLs' application for injunctive relief against Patrick. (*Id.* ¶ 4 Ex. 22.) Thus, while nominally "Dugaboy is not a member of the liquidation committee" (Opp. at 17 n.10), Dugaboy could (and did, based on Dugaboy's Motion to Stay filed last July) obtain any filings from the Cayman Islands from Dondero who controlled both Dugaboy and the Dondero Foundations. Dondero may wear multiple hats, but he only has one head and cannot unlearn what he already knows.[7]

---

[7] Dugaboy's claim that it did not know until "December 2025 [] that Patrick took more than $13 million in fees in 2024 and 2025" as administrator of DAF (Opp. at 2–3), ignores that Dugaboy was well aware of allegations regarding Patrick's compensation before the 9019 Order. In its Objections to the 9019 Settlement, The Dallas Foundation specifically alleged that DAF's "directors' fees increased from $40,000 in 2022 to almost $600,000 in 2023 – and increased even further to around $2.25 million in the first half of 2024 alone." (Dkt. No. 4231 at 9 & n.3; *see also* MPO Ex. 7 (Dondero Apr. 2025 Aff.) ¶ 31 (Dondero directed "Expense Summary" analysis prepared by his team purportedly showing the *exact same* Patrick-driven directors' fees **and** DAF expenses for the first half of 2024 of "US$18.3 million – roughly the same amount spent over the entire course of 2023 (i.e. US$18.6 million)")).) So Dugaboy knew that The Dallas Foundation had raised an issue about DAF Directors' fees and expenses during the first half of 2024 based on information it had outside any discovery process. Despite having the information that had prompted The Dallas Foundation objection (again, Dugaboy made no such objection), Dugaboy made no attempt to obtain more recent financial information, as it sought no discovery from HMIT or DAF in connection with the 9019 Settlement. Had it sought discovery and had it been able to obtain such information (we submit that such information would not have been relevant to the 9019 Settlement approval, as it is not relevant here), Dugaboy would have been able to discover that the DAF directors' fees amount now complained of (some $13 million) *were in fact paid before the hearing on the 9019 Settlement*. Also, the fact that Dugaboy may not have learned the exact dollar amounts of compensation paid for the period of time in 2025 after the hearing on the 9019 Settlement does not make this issue "new," as Patrick's 2025 compensation *after* the 9019 Order was "not in existence at the time of the earlier judgment," so it "is not an available ground for attacking that judgment." *Brown v. Ft. Hood Fam. Hous. LP*, 2022 WL 22883290,

**B.    Dugaboy Fails To Satisfy The Requirements To Obtain Discovery Under Rule 60(b)(3), Which Requires A Showing Of Fraud.**

14.    Dugaboy's Opposition confirms that it has not "made a prima facie showing of fraud entitling it to discovery." (Opp. at 8.) Instead, Dugaboy continues to obscure the fact that even its (far-fetched) claims of "fraud" are not evidence of fraud in connection with the 9019 Settlement or on this Court in entering the 9019 Order.

15.    Dugaboy alleges a "DAF restructuring fraud" by Patrick, which Dugaboy claims harmed DAF's beneficiaries (none of which is Dugaboy). (*Id.* at 19.) But DAF is not HMIT—the very fact this Court cited when declining Dugaboy's requests to adjourn the 9019 Hearing and to stay implementation of the 9019 Order. Dugaboy's unproven allegations that Patrick improperly took control of *DAF* five years ago in no way show that *HMIT's* settlement with Highland is fraudulent. To the contrary, Dugaboy concedes, as it must, that Patrick fully controlled DAF and HMIT for years before the alleged "DAF restructuring fraud," and that the prior control persons (Grant Scott and John Honis, respectively), voluntarily transferred such control to Patrick while he was still effectively under Dondero's employ. (*Id.* at 1 n.1, 2–3.) Dugaboy's allegations that Patrick improperly diverted DAF's assets away from its beneficiaries are not a fraud on this Court, much less do they show that an arm's-length settlement between Highland and HMIT is fraudulent.

16.    In any event, Dugaboy's attempt to drag Highland into a dispute between Patrick and the Dondero Foundations (which, it bears repeating, are controlled by Dondero) is entirely unsupported. Dugaboy claims that Highland "knew or should have known of Patrick's misconduct" at DAF. (Opp. at 11, 20.) But as purported support for a *prima facie* case establishing as much, Dugaboy cites a statement by Highland's counsel representing that "I *have no*

---

at *3 (W.D. Tex. Nov. 17, 2022) (quoting *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir. 1984)).

8

*knowledge*" regarding "Mr. Patrick, I don't know what happened between him and Mr. Dondero." (*Id.* at 3 n.2 (quoting June 25, 2025, Hr'g Tr. at 61:26–62:1, 97:12–17, 98:6–99:1).) If anything, that is a *prima facie* showing Highland did *not* have any such knowledge.

17.     The Cayman Islands decision does not remotely establish a *prima facie* showing of fraud. For starters, when considering Dugaboy's characterization of that decision, it is important to note that HCMLP actually provided the decision to this Court while Dugaboy did not.[8] So it comes as no surprise that Dugaboy misrepresents what the Cayman Islands court held with selective and misleading partial quotations. Specifically, Dugaboy falsely asserts "the Cayman Court found that *fraud* allegations present 'a serious issue to be tried' with a 'real prospect of success.'" (Opp. at 9, 11 (quoting MPO Ex. 4 ¶¶ 253, 255).) Not so. In reality, the Cayman Islands court found that "that there is a serious issue to be tried as to whether the Directors *acted in breach of duty* in undertaking the restructuring." (MPO Ex. 4 ¶ 254.) Dugaboy knows this because its own Exhibit shows that, when Highland provided the Cayman Islands decision to the District Court considering Dugaboy's appeal of the 9019 Order, Dugaboy represented to that Court that the Cayman Islands "court was 'persuaded that there is a serious issue to be tried' regarding Patrick and fellow director Paul Murphy *breached their fiduciary duties* in restructuring the charitable entities.'" (Opp. Ex. 12 at 1 (quoting MPO Ex. 4 ¶¶ 253–54).) Whether or not Patrick breached his fiduciary duties to DAF in no way shows that the settlement between HMIT and Highland was procured by fraud.[9]

---

[8] Dugaboy claims that it was not aware of the Cayman Islands decision until it was made public the day after it filed its Rule 60(b) Motion. (Opp. at 10.) Dugaboy tellingly does not say that *Dondero*, who controls Dugaboy, and his team were not aware of the decision when it was filed in February 2026. The suspicious timing and letters proving that all of the parties to the Cayman Proceeding (including the Dondero Foundations) received a draft decision on January 28, 2026 (Morris Decl. ¶ 4 Ex. 22) shows that Dondero knew about the decision and strongly suggests that he directed Dugaboy to file the Rule 60(b) Motion the day before it would be made public so that Dugaboy could feign ignorance.

[9] Dugaboy also ignores its prior representation to this Court that "if the Cayman Proceeding determines that Mr. Patrick may retain his control position in the DAF and its subsidiaries, then such a decision would likely remove

9

18.     By contrast, HCMLP proactively provided the decision to this Court and (again, contrary to Dugaboy's misleading and selective quotations) accurately described it as effectively "dismiss[ing] the fraud claims" by "denying a proprietary injunction on a standard akin to a motion to dismiss." (MPO at 15–16.) Specifically, the Cayman Islands court explained that, to obtain a "proprietary injunction," a party "must show a serious issue to be tried" in "respect of facts which, if proven, would afford the claimant a proprietary remedy." (MPO Ex. 4 ¶¶ 87–88.) The court asked whether there was "a serious issue to be tried that [DAF] has a proprietary interest in the asset(s) of which an injunction is sought to be imposed," and answered "these questions in the negative." (*Id.* Ex. 4 ¶¶ 130–31.) The court also held that "there is no seriously arguable case" against Patrick based on "the sums paid to Mr. Patrick as remuneration for his work," and "there is no serious issue to be tried that this remuneration was excessive and in breach of his duty to [DAF]." (*Id.* Ex. 4 ¶¶ 202–03, 206.) Thus, the Cayman Islands court rejected the same theories of fraud Dugaboy alleges here on a standard akin to a motion to dismiss, which is exactly how HCMLP presented the decision in its opening papers. (*Id.* at 15–16.)

19.     Likewise, the Texas Business Court proceedings do not come close to establishing a *prima facie* case of fraud. Dugaboy admits, as it must, that that lawsuit concerns **unadjudicated** "claims pending against Patrick" brought by the Dondero Foundations, which are "all arising from Patrick's **alleged** scheme." (Opp. at 10.) Dugaboy also admits that the court "abated the case pending joinder of the Cayman JOLs as indispensable parties," which, seven months later, still has not happened. (*Id.*) Thus, the Texas Business Court proceedings consist entirely of unproven allegations of "fraud claims against Patrick" (with no current pathway to adjudication and which

---

any additional obstacles to the HMIT settlement." (MPO at 19–20 (quoting Motion to Stay ¶ 31).) Because that determination has come to pass, Dugaboy now tries to obfuscate and distort the decision.

do not implicate any HMIT Entity), which do not constitute *prima facie* evidence of anything. To the extent the Texas Business Court allegations have any relevance, they show that Dugaboy could have made them based on information available on July 1, 2025, and therefore could have raised these same arguments in its objections to the 9019 Settlement or in a motion for a new trial. (*See supra* Section I.A.)

## II. DUGABOY'S ASSERTIONS OF "GAMESMANSHIP" OR "WAIVER" ARE BASELESS.

20. Dugaboy admits that, from the beginning, HCMLP "reserv[ed] its potential objection to presenting testimony on a motion for reconsideration," and "expressed uncertainty about whether discovery was appropriate." (Opp. at 4, 13.) Dugaboy's own exhibits to its Opposition show that, contrary to its protestations about purported "gamesmanship" or "unfair[ness]" (*id.* at 11, 14–15), HCMLP in fact objected to Dugaboy taking offensive discovery at every step and the parties conferred about this issue at length:

- On February 20, 2026, HCMLP's counsel stated that "Highland *reserves the right to object to the presentation of more testimony* on a Motion for Reconsideration" (*id.* Ex. 3);

- On March 2, 2026, HCMLP's counsel stated that "Highland sought to depose Dugaboy's witnesses, if any, so that Highland could find out the factual bases for the motion before the hearing. But since Dugaboy's motion is based on 'newly discovered evidence' and fraud, and Dugaboy presumably had the evidence to support its motion when it was filed, *we didn't anticipate that Dugaboy would seek to take affirmative discovery*; indeed, *we don't believe Dugaboy can use the discovery process to seek evidence to support a motion under Rule 60*. Rather than debate the point, we would like to secure the schedule *subject to a reservation of everyone's right to object to discovery by means of a motion to quash or otherwise*" (*id.* Ex. 11);

- That same day, Dugaboy's counsel responded that "we disagree with your arguments but *agree to a mutual reservation of rights to make objections to the discovery/witness process*" (Morris Decl. ¶ 5 Ex. 23);[10]

---

[10] Dugaboy omitted including this email with its Opposition, likely because it directly contradicts its arguments.

- On March 4, 2026, this Court entered the parties' agreed-upon scheduling order (signed on March 3), which states that "*[a]ll discovery is subject to the Parties' respective reservation of rights to object to any depositions or written discovery sought by the other party*" (Mar. 4, 2026 Order ("March 4 Order"; Dkt. No. 4528) ¶ 3);

- On March 25, 2026, the day after Dugaboy served its Requests on HCMLP, HCMLP's counsel stated that "*[w]e have reviewed the RFPs and do not believe they are proper* for a variety of reasons, not least because *Dugaboy has not established a prima facie case in support of its motion*. Accordingly, *we intend to file a motion for a protective order, and we believe it makes sense to work out a briefing schedule*" for the Motion (Opp. Exs. 7, 9);

- On March 30, 2026, Dugaboy's counsel responded that "we obviously disagree with your contention that our RFPs are in any way improper, and *we will oppose your motion for a protective order*," but "*[w]e agree we should set a briefing schedule" on the protective order*, potential discovery, and Rule 60(b) Motion (*id.* Exs. 6, 9);

- From March 30 to April 10, 2026, the parties negotiated this schedule, which was delayed repeatedly because Dugaboy's counsel was "not driving this train" but instead an unnamed "someone who has authority" (presumably Dondero) wanted to make last-minute "changes that may be substantial" (*id.* Ex. 19); and

- On April 10, 2026, this Court entered the parties' agreed-upon scheduling order, which states that "*[a]ll restrictions related to discovery* that were previously agreed to by the parties, *which were stated in the Court's March 3 Order" and "subject to the Court's resolution" of HCMLP's Motion and the third parties' motion to quash subpoenas, "remain unchanged.*" (April 10 Order at 1–2.)

21.     As the parties' correspondence and the plain language of this Court's Orders make clear, Dugaboy's assertion that HCMLP's Motion for a protective order is "inconsistent with the Agreed Order," which "presupposes both parties would engage in discovery with the right to raise specific objections, not to block discovery entirely," (Opp. at 12), is wrong. This Court's March 4 Order expressly preserved HCMLP's "rights to object to *any* depositions or written discovery sought by the other party." And this Court's April 10 Order left this "unchanged" and expressly subject to HCMLP's Motion for a protective order. (April 10 Order at 1–2.) Dugaboy should not be heard to complain about HCMLP exercising the very right to object that Dugaboy agreed to preserve and this Court ordered preserved.

22.     The parties' correspondence also demonstrates that HCMLP "confer[r]ed in good faith as required by the Rules." (Opp. at 14–15.) Unlike in Dugaboy's authority (*see id.*), HCMLP did not merely send a "single letter unilaterally identifying flaws" in discovery and "setting an arbitrary response deadline," but instead exchanged detailed email correspondence with Dugaboy's counsel for weeks. *Compass Bank v. Shamgochian*, 287 F.R.D. 397, 400 (S.D. Tex. 2012). In any event, Dugaboy admits that because HCMLP's "position is that the opposing party should receive no discovery at all, meaningful compromise is impossible," so Court intervention is needed. (Opp. at 14.)

23.     Dugaboy makes much of its purported document production to HCMLP, which it uses to lob insults against HCMLP, accusing it of engaging in an "about-face," "a one-way transfer," and even "not a good-faith dispute." (Opp. at 7, 11–14.) Dugaboy ignores that HCMLP told Dugaboy on March 25—***five days before Dugaboy produced any documents***—that HCMLP intended to move for a protective order against all of Dugaboy's Requests. (*Id.* Exs. 7, 9.) This puts the lie to Dugaboy's attempts to attack "[t]he timing of Highland's Motion" as "gamesmanship." (*Id.* at 13–14.) In any event, as discussed above, Dugaboy did not actually produce any new documents. (*See supra* Section I.A.) HCMLP served just two document requests. Those requests asked Dugaboy to produce the documents it contended (1) "constitute[d] newly discover[ed] evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial" under Rule 60(b)(2), and (2) "Concern fraud . . . by an opposing party for purposes of Fed. R. Civ. Pro. 60(b)(3)." (*Id.* Ex. 8 at 4–5.) In response, Dugaboy simply ***reproduced the exact same already-filed exhibits to its Rule 60(b) Motion***. (*See* MPO at 4.) Thus, in practice, HCMLP has not actually received any discovery from Dugaboy, nor can Dugaboy credibly claim prejudice. At bottom, Dugaboy seeks to improperly conflate HCMLP's entitlement

to learn the factual basis of the Rule 60(b) Motion (which is a threshold inquiry) with Dugaboy's

attempt to conduct wide-ranging post-judgment discovery (which requires a *prima facie* showing).

### III.   DUGABOY'S OPPOSITION CONFIRMS THAT ITS DISCOVERY REQUESTS ARE OBJECTIONABLE.

24.     Dugaboy admits that this Court has discretion "to issue a protective order" to

"forbid certain disclosures, specify the terms for disclosure, forbid inquiry into certain matters, or

limit the scope of disclosure to certain matters." (Opp. at 23 (collecting cases).) Contrary to

Dugaboy's assertions, HCMLP's Motion showed "specifically how each discovery request is not

relevant or otherwise objectionable." (*Id.* at 15 (collecting cases); *see* MPO at 5–7, 23–30.)

Dugaboy, by contrast, does "not march through every Request" (Opp. at 20) because all of the

Requests, depositions, and Subpoenas are plainly objectionable for at least six reasons.

25.     ***First***, Dugaboy's Request Nos. 1–22, 24–26, and 29–55 are not relevant to

Dugaboy's Rule 60(b) Motion.[11] (MPO at 5–6, 21–23.) As discussed above, Dugaboy's Rule 60(b)

Motion alleges a "DAF restructuring fraud," which has nothing to do with the 9019 Settlement

between HMIT and Highland. (*See supra* Section I.B.) Dugaboy admits that only three of its

55 Requests "go directly to the DAF restructuring fraud," so the remaining 52 Requests—which

concern "the negotiation, execution, and background diligence of the 9019 Settlement," the

"ownership or control of any HMIT Entity," and the valuation of various entities—are completely

irrelevant to the Rule 60(b) Motion. (Opp. at 19–20.)[12] Dugaboy also does not dispute that Request

---

[11] Dugaboy misstates the standard for relevance, claiming that it can seek discovery into matters "that reasonably could lead to other matters that could bear on[] any issue that is or may be in the case." (Opp. at 19.) In 2015, Rule 26 was amended to delete "the 'reasonably calculated' phrase," which "continued to create problems" and risked "swallow[ing] any other limitation on the scope of discovery." Fed. R. Civ. P. 26(b)(1) advisory committee notes (2015).

[12] Contrary to Dugaboy's assertions, HCMLP did not "ignore" Request Nos. 23, 27–28, which reference DAF (Opp. at 19); it specifically objected to them as "unreasonably cumulative and duplicative" (MPO at 6).

Nos. 8 and 16 seek documents regarding diligence and actions taken by Patrick and the HMIT Entities, which are not in HCMLP's possession, custody, or control. (MPO at 6, 27.)

26. **Second**, Dugaboy's Request Nos. 1–5, 8–15, 17, 23–24, 27–33, 39–50, and 53–54 are "unreasonably cumulative or duplicative." (MPO at 6, 23–26.) Dugaboy does not—and cannot—dispute that Highland already produced to Dugaboy all documents and communications between Highland and the HMIT Entities up to the execution of the 9019 Settlement on May 19, 2025. (*Id.*)[13] Dugaboy likewise does not—and cannot—dispute that many of its Requests are nearly identical to its 9019 document requests. (*Id.*) To the contrary, Dugaboy admits that "overlap exists." (Opp. at 21.) Dugaboy claims that its current requests cover "new ground" because they "refer to different time periods, including documents created after the 9019 Order." (*Id.*) But it is settled law—to which Dugaboy offers no response—that "'evidence not in existence at the time of an earlier judgment'" could not have caused the judgment to have been procured by fraud and is not "newly discovered evidence," so it "'is not an available ground for attacking that judgment.'" *Brown*, 2022 WL 22883290, at *3 (quoting *Southmark*, 742 F.2d at 873).

27. **Third**, Dugaboy appears to concede that its Request Nos. 19 and 24—which seek every single internal email HCMLP's CEO sent or received and every communication between HCMLP and third parties regarding the 9019 Settlement, the 9019 Motion, or the HMIT entities— are overbroad. (Opp. at 22; MPO at 6, 26–27.)

28. **Fourth**, Dugaboy admits that its Requests "encompass privileged information." (Opp. at 22.) Dugaboy argues that **Patrick** cannot invoke attorney-client privilege or work-product protection based on the "crime-fraud exception to privilege" or "subject[-]matter waiver" of

---

[13] This is therefore unlike Dugaboy's authority (*see* Opp. at 21) where "no documents have been turned over that relate to" the issue in dispute. *Cadence Bank v. Bridgelink Eng'g LLC*, 2024 WL 6893273, at *6 (N.D. Tex. Dec. 16, 2024).

privilege. (*Id.* at 23–27.) This in no way limits **HCMLP's** attorney-client privilege and work-product protection, which remain intact and apply to many of Dugaboy's Requests. (MPO at 6–7, 27–28.) Indeed, Dugaboy appears to have abandoned its attempt to obtain HCMLP's emails with its bankruptcy and litigation counsel, which are plainly privileged. (*Id.*) In any event, the bare fact that Patrick restructured DAF "with the assistance of the advice of counsel" and referenced the fact that "his attorneys advised him" (without revealing the substance of the advice or communications) (Opp. at 24, 26) fails to satisfy the stringent requirements for the crime-fraud exception or subject-matter waiver of privilege.

29.     ***Fifth***, Dugaboy does not dispute that taking 16 hours of depositions would be particularly burdensome and offers no explanation of how it could depose Murphy in the Cayman Islands without his consent. (Opp. at 28–29.) Dugaboy simply rehashes the same reciprocal discovery argument based on the Scheduling Orders (*id.*), which is directly contradicted by the parties' correspondence and the plain language of the Orders (*see supra* Section II). Specifically, these depositions are not "one-way": HCMLP's counsel expressly told Dugaboy's counsel that HCMLP would seek the depositions of Dondero and his sister ***only if*** HCMLP's protective order is denied and discovery is ordered. (*Id.*)

30.     ***Finally***, Dugaboy does not even attempt to defend the extraordinary ***532 requests*** in its third-party Subpoenas, which it admits "seek[] documents" from counsel. (Opp. at 28.)

31.     At bottom, Dugaboy has served such extensive and improper discovery to harass and burden Highland and others to obtain information it might use in other proceedings, and to delay proceedings on its Rule 60(b) Motion. Indeed, Dugaboy repeatedly seeks to avoid a protective order, to force HCMLP and the third parties to object to each request, and to negotiate

16

over each one. (Opp. at 2, 6, 20–21.) This Court should put an end to such harassment and delay

and enter the requested protective order.

## CONCLUSION

WHEREFORE, HCMLP respectfully requests that this Court enter an order (1) protecting

against Dugaboy's efforts to take discovery in connection with its Rule 60(b) Motion, including

its Requests, Subpoenas, and deposition requests, and (2) granting HCMLP such other and further

relief the Court deems just and proper under the circumstances.

Dated: April 22, 2026

<div style="display:flex; justify-content:space-between;">

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        jkroop@pszjlaw.com

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

</div>

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*