**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**COUNSEL FOR HMIT PARTIES, CLO
HOLDCO, LTD, THE LAW FIRMS, &
VALUESCOPE**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
| | ) |
| Debtor. | ) **Re: Docket Nos. 4533, 4538, 4555** |
| | ) |

**REPLY IN SUPPORT OF JOINDER TO HIGHLAND CAPITAL MANAGEMENT,
L.P.'S MOTION FOR A PROTECTIVE ORDER AGAINST THE DUGABOY
INVESTMENT TRUST'S  DISCOVERY REQUESTS AND REPLY IN SUPPORT OF
MOTION TO QUASH AND JOINDER TO HCMLP REPLY**

**NOW INTO COURT**, through undersigned counsel, comes the Sheilds Legal Group,

P.C., ("Shields"), Kelly Hart & Pitre ("Kelly Hart" with Shields, the "Law Firms"), CLO HoldCo,

Ltd. ("CLO Holdco"), Hunter Mountain Investment Trust ("HMIT"), Beacon Mountain LLC

---

[1]      Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service
address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

("Beacon Mountain"), Rand Advisors, LLC ("Rand Advisors"), Rand PE Fund I, LP ("Rand PE Fund"), Rand PE Fund Management, LLC ("Rand GP" with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, the "HMIT Entities") and ValueScope, LLC ("ValueScope," with the Law Firms, CLO HoldCo, and the HMIT Entities, the "Movants") submit this *Reply* (the "Reply") in support of  (i) the *Motion to Quash* (the "Motion to Quash") [Dkt. No. 4538] filed by the Law Firms and CLO HoldCo and (ii) *Joinders* (the "Joinders") to the *Motion for Protective Order against the Dugaboy Investment Trust's Discovery Truste's Discovery Request*s [Dkt. No. 4533] (the "Motion for Protective Order") filed by Highland Capital Management, L.P. ("HCMLP"), (which Joinders are found at Dkt. No. 4540, 4549, and 4554).  Further, Movants expressly join in and adopt HCMLP's *Reply in Further Support of its Motion for a Protective Order against the Dugaboy Investment Trust's Discovery Requests* [Dkt. No. 4555] ("HCMLP Reply"). In the Motion for Protective Order and the HCMLP Reply, HCMLP requests that this Court enter an order protecting against Dugaboy Investment Truste ("Dugaboy") efforts to take discovery in connection with its *Motion to Reconsider the 9019 Order* [Dkt. No. 4513] (the "Rule 60(b) Motion"). Movants join in all respects ("Movant's Joinder").  Further, as set forth below, Movants also submit additionally their Reply in support of the Motion to Quash.

## REPLY

**A.    The Law Firms and CLO HoldCo conferred with Dugaboy but will not agree to an extension or reset of the Rule 60(b) Hearing.**

1.    This Court has set a hearing on the Rule 60(b) Motion for May 11, 2026 at 9:00 A.M. CST (the "Rule 60(b) Hearing"). Dkt. No. 4547.

2.    The Court also ordered that all discovery related to the Rule 60(b) Motion, unless otherwise agreed by the parties, must be completed no later than May 1, 2026. *Id*.

2

3. In its Supplements after service of subpoenas, CLO HoldCo and the Law Firms raised the additional objection that the subpoenas served were returnable after the Rule 60(b) Hearing and after the close of discovery. Dkt. Nos. 4554, 4549 (the "Supplements").

4. In response, Dugaboy argues that this Court has not precluded parties from "continuing discovery past May 1, 2026, to the extent they can do so by agreement. But the Moving Parties have made no effort to meet and confer with Dugaboy about the timing or scope of the requested discovery and instead have simply raced to the Court."

5. First, all Movants complied with the requirements for conferral prior to filing any discovery pleading with the Court.

6. On April 6, 2026, undersigned counsel sent an email to Dugaboy noting that undersigned counsel was not authorized to accept email service for the Law Firms or CLO HoldCo, and that a motion to quash for improper service would be filed for non-parties served via email (the Law Firms and CLO HoldCo) but that the HMIT Entities would be joining in Motion for Protective Order. Exhibit A – 4/6/2026 email thread.

7. Counsel for Dugaboy responded that day not raising the issue of requiring a more detailed meet and confer, but rather, discussing an agreed timing for adjudication of the issues. *See* L. Phillips Declaration, Exhibit A – 4/6/2026 email thread.

8. Likewise, after the subpoenas to the Law Firms and CLO HoldCo were served, undersigned counsel again, sent an email to Dugaboy this time attaching the Supplements and advising that undersigned counsel believed a meet and confer was unnecessary given the issues were already joined and hearing set before the Court. See L. Phillips Declaration, Exhibit B – 4/16/2026 email thread. Counsel for Dugaboy responded, agreeing that the requirements for a meet and confer had been satisfied. *Id*.

9.      Yet now, Dugaboy blames counsel for "racing to the courthouse" instead of having a more detailed meet and confer—although Dugaboy never mentioned wanting to engage in further discussion and in fact, represented the opposite.

10.     And practically, there would be no resolution from a more extensive conferral. Dugaboy sent _hundreds_ of documents requests to the Law Firms and CLO HoldCo.  Any shorter timeframe than that already given by Dugaboy would necessarily not be the requisite "reasonable time to respond" under Fed. R. Civ. P. 45 and thus, alone a basis to quash. Fed. R. Civ. P. 45(3)(A)(i).  But of course, for good reason, the Movants strongly oppose any resetting or extension of the Rule 60(b) Hearing.

11.     So the Law Firms and CLO HoldCo would have to either (i) agree to do the impossible (respond to incredibly extensive discovery requests on a far too compressed time frame) or (ii) agree to reset the Rule 60(b) Hearing—which is likely what Dugaboy's aim is in propounding this discovery returnable after the Rule 60(b) Hearing. And it is not just that the documents are to be produced after the close of discovery, they are also to be produced after the Rule 60(b) Hearing, a date which the parties could not modify by agreement, nor would the Movants want to.

12.     As the Law Firms and CLO HoldCo have briefed, serving extensive discovery at the end of the discovery cutoff is not cause or basis for any extension of the hearing date or discovery deadlines set by this Court. _See S&W Enters., LLC v. SouthTrust Bank of Ala._, NA, 315 F.3d 533, 535 (5th Cir. 2003) ("good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension").

13.     In short, Dugaboy's contention that the Law Firms and CLO HoldCo did not confer is not only demonstrably false, but also, is of no moment.  The Law Firms and CLO HoldCo could

4

never have agreed to do something impossible to do (respond to hundreds of documents requests in any shorter of a timeframe). Instead, Dugaboy appears to have been using the subpoenas to manufacture cause for an extension of the Rule 60(b) Hearing.

**B. Dugaboy has not and cannot make any requisite showing that discovery of the Law Firm's communications with their clients are discoverable.**

14. Dugaboy argues that no privilege attaches to any communications between the Law Firms and the HMIT Entities because of Mr. Partick's "misconduct or prior disclosures" but in so doing, Dugaboy greatly misconstrues both doctrines of crime-fraud exception and waiver of privilege.

15. As to the crime-fraud exception, Dugaboy's cursory argument is that because the HMIT Entities had counsel in connection with the 9019 Settlement (as defined in the Rule 60(b) Motion) and Dugaboy alleges the 9019 Settlement was part of the "overarching scheme for Patrick to steal the DAF assets" then no communications between the Law Firms and the HMIT Entities in connection with the 9019 Settlement are privileged.

16. But of course, the crime-fraud exception does not allow movants to hypothesize that a crime or fraud occurred, and then cite to that hypothesis to eviscerate the oldest and most venerated of the common law privileges of confidential communications. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (describing the importance of the privilege).

17. Instead, courts are quite clear that the party seeking to invoke the crime-fraud exception must produce *evidence*, not allegations. *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982) (rejecting the application of the crime fraud exception where there was nothing in the record of fraud except the plaintiff's *allegations*. Even when the pleadings details allegations of fraud, they are not *evidence* to make a prima facie case).

18.     As the Fifth Circuit explained, "[i]n order to invoke the crime-fraud exception, the party seeking to breach the walls of privilege must make out a prima facie case. To make such a showing, the party must produce evidence that will satisfy the determination that the exception applies until contradicted or overcome by other evidence. *Lewis v. Crochet*, 105 F.4th 272, 282 (5th Cir. 2024).

19.     Here, the only evidence Dugaboy cites is that unsurprisingly Mr. Patrick retained Kelly Hart as counsel for the HMIT Entities in negotiating the 9019 Settlement and relied on legal advice from Shields in restructuring the DAF (as referred to in the Rule 60(b) Motion).

20.     Kelly Hart was the law firm representing the HMIT Entities in the 9019 Settlement, yet there is not even a mention of Kelly Hart whatsoever in the Rule 60(b) Motion, let alone evidence.

21.     In fact, Dugaboy has not cited to any evidence that the Law Firms assisted the HMIT Entities in a crime or fraud, and on the contrary cite only *allegations* in other pleadings. *See* Rule 60(b) Motion, p. 22 (citing to Statement of Claim in Caymans).  Of course, a Statement of Claim is just a *pleading.  In re Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ11, 2025 WL 2047279, at *1 (Bankr. N.D. Tex. July 21, 2025) (explaining that a statement of claims in the Cayman Islands liquidation proceedings are allegations raised that will be litigated).

22.     By express Fifth Circuit law, no matter how "detailed" pleadings are—which here as to the actual allegations relevant to the 9019 Settlement the allegations are not well-detailed— a pleading is not evidence sufficient to make a prima facie case for the crime fraud exception. *Int'l Sys. & Controls*, 693 F.2d at 1242. The Fifth Circuit has specifically denied attempts to do exactly what Dugaboy is doing here: citing to allegations of fraud in pleadings rather than evidence of fraud in support an application of the crime-fraud exception.

23.     Further, like its Rule 60(b) Motion generally, Dugaboy cannot make the requisite link in substance of the 9019 Settlement with the *allegations* in the Cayman Islands.  As the Fifth Circuit recently explained: discovery of privileged communications and work product is limited to that which is "reasonably related to the furtherance of the ongoing or future crime or fraud at issue" and it has consistently rejected looser limitations on the crime-fraud exception.  *Lewis v. Croche*t, 105 F.4th 272, 284 (5th Cir. 2024).

24.     As detailed in the *Objection to the 60(b) Motio*n [Dkt. No. 4535], Dugaboy has attempted and failed multiple times to make a link between the 9019 Settlement to the DAF HoldCo liquidation. *See e.g. Memorandum Opinion and Order Regarding Stay Requests* [Dkt. No. 4333].[2]  While of course any allegations of wrongdoing in connection with the DAF restructuring by Mr. Patrick are vehemently denied, they are also simply irrelevant to the 9019 Motion.

25.     Permitting the allegation of misconduct in an unrelated proceeding to be invade the attorney-client privilege in another would allow "the crime-fraud exception [to] swallow the privilege rule." *In re Grand Jury Subpoena*, 419 F.3d at 347.  Therefore in addition to failing to make a prima facia case, Dugaboy has not and clearly cannot make "the proper showing" that the documents are reasonably related "to the furtherance of the ongoing or future crime or fraud." *Id*.

26.     Dugaboy's attempt to invade the attorney client privilege based on a subject matter waiver is likewise a misconstruction of applicable law and facts.

---

[2]     Judge Jernigan explaining that: As further described herein, there happens to be a "proceeding involving a charitable trust" ongoing in the Cayman Islands. Mark Patrick is apparently accused of misdeeds therein. But, in the bankruptcy case, Mark Patrick is merely a signatory for a counter-party to a settlement agreement with the bankruptcy estate (that counter-party being the former 99.5% equity owner of Highland, namely Hunter Mountain).

27. Dugaboy argues that because Mr. Patrick disclosed in the Cayman Island proceedings that his attorneys advised him on "the most advantageous tax and corporate structures, compliance implications, and outreach to potential recipients of the Company's Participating Shares," the "DFW Share Issuance," and that the "DAF Restructuring was in the best interest of the DAF Structure," and further shared information about legal memoranda such as the Shields Legal Group "Work Plan" involving "memorandums and opinions relating to potential disputes and corporate reviews and best practices for each, including proactive corporate actions, solidifying defenses, et." that he has waived HMIT's privilege not only as to the specific documents or communications disclosed, but also as to all other documents and communications on the issue of the DAF restructuring…" Dkt. No. 4551, p. 31.

28. Again, glaringly, there is the lack of any connection between the subject matter of the DAF restructuring and the 9019 Settlement. There is no allegation, let alone proof, that the HMIT Entities used the attorney-client privilege with the Law Firms as "sword" in connection with the 9019 Settlement. *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (explaining that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party).

29. While the DAF restructuring is simply not before this Court, it is worth noting that the vast majority of attorney-client privileged communications cited to by Dugaboy do not involve the Law Firms or a waiver of HMIT's privilege. For instance, the communications regarding "the most advantageous tax and corporate structures, compliance implications, and outreach to potential recipients of the Company's Participating Shares," were with Mr. Macino while Mr. Patrick was working at HCMLP *decades* before the complained of actions. *See* Dkt. No. 4551-17 at ¶19. The

8

communications regarding the "DFW Share Issuance" were with Walkers, not Shields.  *See* Dkt. No. 4551-17 at ¶71.  There was no subpoena to Walkers.

30.     And reason that the JOLs in the Caymans were in possession of the Shield's Work Plan and cite to it in the Statement of Claim was because the JOLs held the privilege for DAF HoldCo (the entity being liquidated).  Mr. Patrick could not have waived the privilege over the Work Plan in the cited affidavit because the privilege belonged to the JOLs.

31.     It is worth noting, the issue of whether the restructuring of the DAF is proper is simply not before this Court, and the purported subject matter waivers cited to by Dugaboy are irrelevant to the actual issue before this Court—the 9019 Settlement.

32.     But even assuming *arguendo* that this Court were determine the propriety of the DAF restructuring, the attorney-client privilege is only waived by disclosure when any other result would be a "manifest unfairness" when a party invokes privileged communications while denying its adversary access to the same. *In re Itron, Inc.*, 883 F.3d 553, 564–65 (5th Cir. 2018).  This is what it means to use attorney-client privilege as sword and shield.  *Id.* But when while the sword stays sheathed, the privilege stands.  *Id.* (citing *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005)).

33.     Here, in defending the restructuring of the DAF, while Mr. Patrick referenced using counsel, he did not rest the propriety of the restructuring of the DAF on advice of counsel without elaboration and then claim privilege over what that advice was.  In fact, the JOLs are in possession of the "Work Plan" containing much of the advice. Even if that dispute were before this (which it is of course, not), a passing reference to the advice of counsel—particularly advice given by other counsel to other entities, primarily in connection with establishment of the DAF structure and given by other counsel decades earlier—is not what the Fifth Circuit is referring to as a "manifest injustice" and not cause to invade the attorney-client privilege.

### C.      Joinder to Reply in Support

34.      The Movants hereby expressly join in and adopt the HCMLP Reply for all purposes.

## CONCLUSION

35.      For the reasons stated in the Motion for Protective Order, the Joinders, the Supplements, this Reply, and the HCMLP Reply, the Movants respectfully request that this Court enter an order protecting against Dugaboy's efforts to take discovery from the Movants in connection with the Rule 60(b) Motion.

Respectfully Submitted:

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

*Counsel for the Law Firms, CLO HoldCo, ValueScope, and the HMIT Entities*

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that a copy of the forgoing was served on all parties receiving notice in this chapter 11 case through this Court's CM/ECF System on this April 22, 2026.

*/s/ Louis M. Phillips*
Louis M. Phillips (#10505)

10