UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 19-34054-sgj11 |
| | ) | Chapter 11 |
| HIGHLAND CAPITAL | ) | |
| MANAGEMENT, L.P., | ) | George Mahon Federal Building |
| | ) | 1205 Texas Avenue |
| Debtor. | ) | Lubbock, Texas 79401 |
| | ) | |
| | ) | April 29, 2026 |
| | ) | 4:01 p.m. |

TRANSCRIPT OF MOTION TO CONTINUE DISCOVERY DEADLINES AND HEARING FILED BY PARTNER DUGABOY INVESTMENT TRUST (4569); MOTION TO EXTEND TIME TO MODIFY RELEVANT TIME PERIOD FOR DISCOVERY FILED BY PARTNER DUGABOY INVESTMENT TRUST (ROSE, SYDNEY) (4570); RESPONSE OPPOSED FILED BY DEBTOR HIGHLAND CAPITAL MANAGEMENT, L.P. (ANNABLE, ZACHERY) (4572); OBJECTION FILED BY BEACON MOUNTAIN, LLC, HUNTER MOUNTAIN INVESTMENT TRUST, RAND ADVISORS, LLC, RAND PE FUND I, LP, RAND PE FUND MANAGEMENT, LLC, VALUESCOPE, LLC (PHILLIPS, LOUIS) (4575)
BEFORE HONORABLE BRAD W. ODELL
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES VIA WebEX:

| | |
|---|---|
| For the Debtor: | Pachulski Stang Ziehl & Jones, LLP<br>By: JOHN A. MORRIS, ESQ.<br>780 Third Avenue, 34th Floor<br>New York, New York 10017-2024 |
| COURTROOM DEPUTY: | Shelby Wimberley |
| ECRO: | Nick N. |
| TRANSCRIPTION SERVICE: | TRANSCRIPTS PLUS, INC.<br>435 Riverview Circle<br>New Hope, Pennsylvania 18938<br>Telephone: 215-862-1115<br>e-mail CourtTranscripts@aol.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES VIA WebEX:
(continued)

| | |
|---|---|
| For the Movant, Dugaboy Investment Trust: | King & Spalding, LLP<br>By: JOHN MICHAEL GADDIS, ESQ.<br>2601 Olive Street, Suite 2300<br>Dallas, TX 75201 |
| | Morgan, Lewis & Bockius LLP<br>By: MICHAEL J. EDNEY, ESQ.<br>1111 Pennsylvania Avenue, NW<br>Washington, D.C. 20004 |
| For HMIT entities and ValueScope: | Kelly Hart & Hallman, LLP<br>By: LOUIS M. PHILLIPS, ESQ.<br>301 Main Street, Suite 1600<br>Baton Rouge, LA 70801 |
| | Kelly Hart & Hallman, LLP<br>By: AMELIA L. HURT, ESQ.<br>400 Poydras Street, Suite 1812<br>New Orleans, LA 70130 |

\- - -

## INDEX

| | PAGE |
|---|---|
| Argument by Mr. Edney | 7 |
| Argument by Mr. Morris | 14 |
| Argument by Mr. Phillips | 21 |
| Response by Mr. Edney | 29 |
| Ruling by the Court | 33 |

THE COURT: All right, good afternoon. This is Judge Odell. We are here for a special setting in the Highland Capital Management case, Case Number 19-34054.

We are here on two motions:

The first is a motion to continue the hearing -- discovery deadlines and hearing on the Dugaboy Investment Trust's motion for relief order and motion to vacate.

And then a motion to extend time to modify the relevant time periods for discovery filed by Dugaboy Investment Trust with responses and objections filed by Highland Capital Management and the entities that I'm going to refer to as the HMIT entities.

So let me go ahead and start off by getting appearances, and I'll start by getting appearances from movant's counsel.

MR. EDNEY: Yes, Your Honor, good afternoon. This is Michael Edney from the Morgan Lewis firm. I'm here with Michael Gaddis from the King & Spalding firm. Both of us on behalf of movant, Dugaboy Investment Trust.

THE COURT: Okay. And counsel for Highland Capital Management?

(Pause/No audible response)

THE COURT: I don't believe --

MR. PHILLIPS: John? John, you're on mute, or something's wrong.

THE COURT: Mr. Phillips, since we can hear you, why don't you go ahead and make your appearance, and then we'll come back to Highland?

MR. PHILLIPS: Thank you, Your Honor. Louis M. Phillips, Kelly Hart, and also Amelia L. Hurt, Kelly Hart, on behalf of the HMIT entities and ValueScope.

THE COURT: All right. I do show that we may be having some difficulty, because I believe Mr. Edney is frozen on my screen.

MR. PHILLIPS: There's John.

THE COURT: Do we have anybody here appearing on behalf of Highland Capital Management?

MR. MORRIS: Good afternoon -- Your Honor, can you hear me?

THE COURT: Yes.

MR. PHILLIPS: Yes, we can.

MR. MORRIS: This is John Morris from Pachulski Stang Ziehl & Jones on behalf of Highland.

THE COURT: All right. And, Mr. Edney, why don't you go ahead? Let me just make sure that I've got you still there, and not any technical problems there. Could you just go ahead and state your name again?

MR. EDNEY: Yes, Your Honor. It's Michael Edney from the Morgan Lewis firm on behalf of the Dugaboy Investment Trust.

THE COURT: Okay. All right.

MR. EDNEY: Did that work, Your Honor?

THE COURT: Yeah. Yeah, that's all coming through better now. We may be having a little bit of difficulty. And if we do continue to have some, we may need to do as we did in the last hearing, and have parties turn off their cameras to allow the audio.

But before we get started, I do just want to reiterate for the parties my judge-specific guidelines. Based on the hearing last week, as well as some of the pleadings that I'm reading, I just want to remind the parties that the Northern District, and in particular most of my colleagues, including myself, require all parties that are appearing before us to abide by the guidelines that are set forth in a case called Dondi Properties Corp. versus Commerce Savings & Loan Association, which can be found at 121 F.R.D. 284. It's a 1988 case in which en banc proceeding was had by the Northern District Court in which they laid forth specific guidelines for counsel to follow as they appear before the Court.

I reiterate this because the judicial process is one in which the parties come to the Court seeking relief, but they do so in a professional manner, and one in which does not and should not include attempts to besmirch other litigants, as well as counsel representing those litigants.

And so I strongly advise all the parties and counsel

to review that case, and to follow its precepts as you continue to appear before this Court in this matter.

I understand these parties are adversaries. And while this is an adversarial process, it doesn't require us to stray from professionalism that our profession requires and deserves.

So with that, Mr. Edney, it's your motions, so you may proceed.

MR. EDNEY: Thank you, Your Honor.

And, Your Honor, we're grateful for Your Honor's prompt order of Monday afternoon.

Let me start with the scheduling issue. We're asking the Court to continue its hearing for two weeks to a time convenient for the Court. The purpose of this request is twofold:

Number one, we're seeking that continuance in order to provide time to digest the documents that Your Honor has contemplated will be produced by the various parties in this matter. I have no indication that that's going to go past May 1st yet. But even if it all came in on May 1st, we are seeking some time to digest whatever documents are returned so we can prepare for, and then take the contemplated depositions.

I note that Your Honor anticipated this, and we talked about this during our hearing on Friday, that this may be a possibility. And I think we're just trying to find a

little bit of a gap between the end of document discovery and the taking of really probably the most important deposition in this matter, that of Mr. Patrick.

The second reason is, is we've talked among counsel for the past day or so, it's become apparent that Mr. Patrick isn't going to be available for an in-person deposition next week. I think of all the depositions from our perspective, that is the one that we would like to take in person, and that's just not going to be feasible next week due to Mr. Patrick's schedule. So that was not in the motion, Your Honor, but it is an additional reason that I wanted to bring to the Court's attention.

So really on the scheduling, Your Honor, it is us. We want the time to take in the fruits of the document production, now that we address the issue of whether there should be any document discovery at all, and to make sure that the depositions that are taken are meaningful and informed ones.

We -- you know, we obviously defer to Your Honor's schedule, but we're hopeful that the two weeks that we're asking for won't be particularly prejudicial to the parties, or hopefully to the Court.

I'm happy to stop there and answer any of the Court's questions regarding the scheduling issue, and then -- or go directly into the time frame of the document discovery.

THE COURT: Okay. Just real quick, one thing that -- in reviewing the docket before I came out here, I do show that you all filed a notice of deposition for Mr. Patrick's deposition for May 6th. Was that not a date that was discussed and agreed to?

MR. EDNEY: Yeah, I mean, it's -- it's something -- it's something that we had been discussing. I think -- did we -- did we put -- Mr. Gaddis, did we put that on this afternoon on the docket?

MR. GADDIS: I think we filed it --

MR. EDNEY: Yeah.

MR. GADDIS: -- this afternoon.

MR. EDNEY: So -- so, I mean, that is the date that we're trying to coalesce around, but Mr. Patrick would be available for, I gather, a remote deposition on that day, but not an in-person one. And he's not available for the balance of next week either.

And that really is -- of all the depositions, that is the most important one from our perspective.

THE COURT: Okay. All right. Those are the questions I have on that.

If you want to proceed with the motion to, I guess, modify the time frames of the discovery.

MR. EDNEY: Yes, Your Honor.

THE COURT: Unless you had more on that motion.

MR. EDNEY: Yes, Your Honor. So, with respect to that, Your Honor put the time frame for the documents to be produced from the date of the motion to approve the 9019 settlement, that was May 19th, 2025, to the date that we filed our Rule 60 motion, that's February 8th, 2026, and we appreciate that.

We wanted to suggest not enlarging the time period of the production, but shifting it backwards to October 1st, 2024 through roughly the date of the order, June 3rd, 2025. And the reason for that is as follows:

As -- you know, we have moved under Rules 60(b)(2) and 60(b)(3). That -- 60(b)(2) is about newly discovered evidence. 60(b)(3) is about evidence of fraud, misrepresentation, or misconduct.

And I think what we're trying to get at through these motions is evidence of fraud, misrepresentation, or misconduct, or relevant evidence leading up to the order. You know, 60(b)(2) is not about newly occurring evidence. It's about newly discovered evidence.

And the gravamen of our motion is that when the liquidators in the Cayman Islands were able to step into the shoes of many of the charitable entities, it was then where we saw new indicia of misconduct. Misconduct that is historical. It's misconduct that preceded the order. And that we think, you know, had it been ventilated in the way that the

liquidators were able to ventilate it, only through their ability to step into the shoes of the charitable entities, there would have been a different outcome.

I'm concerned that if -- about -- I understand the motivation between -- about the time frame, and I'm concerned that we're going to get an argument that says, "Well, yes, this is newly occurring evidence, but it couldn't have affected the order at all because it didn't exist." Right? You know, I think this is a situation where we're focused on newly discovered evidence that, had it been uncovered earlier, it would have led to a different outcome in June of 2025.

So we don't want to enlarge the time period. We're grateful for the discovery that Your Honor has ordered. We're mindful of the burdens of producing documents. But we do think the more relevant time period, if we were to shift that period of time to something a little bit over the target -- more over the target of our motions, would be the -- would mean to move it backwards from October 1st, 2024 to June 30th, 2025, Your Honor.

And that's the motivation behind that request to alter the temporal scope of Your Honor's document production order.

With -- I -- you know, I'm sure coming is going to be a discussion of, well, perhaps we could have gotten that previously occurring evidence earlier. I will say that the --

that the indicia of the issues that we're talking about really came into clear focus when the liquidators were able to step in and reveal, you know, pretty clear-cut evidence of some of the things that we're talking about. I'll use that euphemism lest I offend.

But in addition, you know, the 60(b)(3) grounds regarding fraud, misrepresentation, or misconduct, that -- that doesn't have the newly discovered or moniker behind it in any respect.

So we respectfully suggest to the Court that if we're going to use that -- a rough time period crafted for this order, that moving it backwards to -- from October of '24 to June of '25 would be -- would more relevant to the exercise before the Court, and I'd be happy to answer any questions about that.

But don't -- I don't want the Court to get the impression that we're not grateful for the Court's order. We agree with it very significantly. We're requesting these two modifications:

One, for the logistics of getting a good and informed presentation before the Court when the hearing occurs; and

The second to provide the most relevant evidence for the Court's consideration when the hearing occurs.

And I thank Your Honor for hearing us on such short notice.

THE COURT: Okay. Just one thing that I noticed. I think it was in maybe your motion to kind of change the discovery production time frame. I want to be clear that all the parties are on the same page as far as what the order granting in part and denying in part the protective order, as well as granting the motions to quash provided. And that, in particular, is that there seemed to be some reference that there was going to be document production required by Shields Legal Group or Legal PC and Kelly Hart & Hallman. And then I believe there was another subpoena on -- maybe it was CLL Hold Co.

MR. PHILLIPS: Yes, sir.

THE COURT: Those subpoenas were quashed, and the Court is not ordering any production by those three parties.

Now I believe there was another subpoena issued to ValueScope. And, again, the Court is granting limited discovery as to ValueScope.

But I do want to make sure that the parties are very clear and understand that there is no document production or discovery being ordered of Shields Legal PC — and I may have the name wrong on that entity, but I think everybody knows which entity I'm talking about — Kelly Hart & Hallman or Kelly Hart & Pitre, as well as the CLL Hold Co. So I just want to make sure that that's clear on the record.

So, all right. I --

MR. PHILLIPS: Thank you.

THE COURT: Yes, Mr. Phillips.

Mr. Edney, I don't know that I have any questions for you on this motion, and so I'll go ahead and allow for -- Mr. Morris, did you want to provide your client's response?

MR. MORRIS: Yes, Your Honor.

MR. EDNEY: Thank you.

MR. MORRIS: Can you hear me okay?

THE COURT: Yes, I can hear you just fine, Mr. Morris.

MR. MORRIS: Thank you very much.

I'll address the scheduling issue first, Your Honor. Dugaboy filed this motion the first week of February. Your Honor entered your own order setting it for a hearing in March. The parties then agreed to a new scheduling order for April. The parties then discussed, and the Court entered, a third scheduling order for May.

And the first question that I have rhetorically is how many scheduling orders does it take to complete this motion?

We're here now because Dugaboy waited six weeks to serve voluminous discovery. We were forced to engage in motion practice. They're left with some very, very narrow requests that Your Honor has crafted. We're perfectly fine with those requests.

We are prepared to complete our production timely in accordance with your Court's order on Friday. We do not expect it to be voluminous.

And there is nothing happening in Your Honor's order that doesn't happen every day in Bankruptcy Court. It's why I'm a bankruptcy litigator, Your Honor. This is what I enjoy. You get a motion. You get your document requests out. You get your document production the next week. You take your depositions the next week. And you have a little evidentiary hearing the next week. It happens every day in Bankruptcy Court.

In fact, it happened in this Court in this case involving this motion and these parties last June. And in just a couple of weeks, we produced thousands of documents, and we cooperatively, without fanfare, without anybody even requesting an adjournment, took and defended more than a half a dozen depositions. We had two people from the Dallas Foundation, you had Mr. Seery, you had Mr. Klos, you had Mr. Patrick, you had Mr. Raver. And they all happened within days. And there was not a problem whatsoever. This is what we do for a living, and there's nothing unusual about that today.

So, since we're on our third scheduling order, since there's nothing unusual that's happening here, since we're going to comply with the Court's order and timely produce the documents, I see no reason why the Court should not adhere to

the schedule that it adopted just 48 hours ago.

The fact of the matter is, we have done what we could to address Dugaboy's concerns. They didn't want to take or defend any depositions until document production was complete. We've accommodated that. They didn't want there to be any weekend depositions. We've accommodated that.

We've given flexibility. On a sidebar, Your Honor, we told them earlier today you can move around, Mr. -- if you want to make Mr. Patrick Tuesday, Wednesday, Thursday; Mr. Seery Tuesday, Wednesday, Thursday; you could flip the Donderos. Do whatever you want. It's four depositions in five days, two of which are likely to be very short.

This is not a heavy exercise by any means. And so, you know, for those reasons, Your Honor, I think it should stay exactly as it is.

Now, Mr. Edney raised the question of wanting to take Mr. Patrick's deposition in person. I appreciate that that's what they want to do, but I need to share with the Court, as I've shared with Mr. Edney earlier today, the fact of the matter is, in the Highland case, we've probably had four, five dozen depositions over a six-year period, and I bet all but two or three of them have been remote.

There's nothing -- there's nothing wrong with doing them remotely. It will allow us to stay on schedule. It would be, in fact, a deviation to order in-person depositions at this

point. It would create, not only delay, but it would create substantial financial burdens.

I would have to come down there. Mr. Stancil or Mr. Levy would have to come down there. We'd have to have -- right, I'm in New York. They're in Virginia. Mr. Phillips is in Louisiana. We're going to incur tens of thousands of dollars of unnecessary expenses to do something that rarely, rarely, rarely has ever happened in this case for no particular reason other than they want to do that.

I don't think that that's fair. I don't think that's a good use of our resources. And we would ask the Court to just keep the schedule that Your Honor meticulously crafted. Keep the schedule. Allow Mr. Patrick to be deposed remotely. Everybody else is going to be deposed remotely, I haven't heard any problems with that.

I do want to point out, though, Your Honor, and I need some help here. Because, as you saw in our papers this morning, I informed Dugaboy's counsel three weeks ago about my schedule. I asked them then for deposition dates for Mr. Dondero and his sister, Nancy, the Trustee of the Dugaboy Investment Trust. I have followed up no fewer than five times in writing. And to this day, they've never given me proposed dates for their depositions.

They're pressing for Mr. Patrick. They've got to have Mr. Patrick. They've put a notice on the docket about Mr.

Patrick. They want Mr. Patrick in person. But for three weeks, despite five separate written requests for deposition dates for Mr. and Mrs. Dondero, I've gotten absolutely silence.

And that's why we did what we did, Your Honor. We put in our opposition to the scheduling motion what we believe is a very fair and workable schedule for the taking of depositions because I'm just getting no response. And that's -- that's not right. That's not right.

And as I've said, I told them we could be flexible within it, but even the proposal that we included today, I tried to be very, very respectful of them. And so I put Mr. Patrick on Thursday. I didn't consult with anybody, but the idea was if we're going to produce documents on Friday, that would give them six days to review documents. I mean, I don't want to characterize what other people do, but I know I can get prepared for deposition in six days. I know that I can.

And so I tried to be mindful of kind of their needs. And so I put Mr. Seery before Mr. Patrick, but I don't care what the schedule looks like. As long as we get Mr. Dondero and Ms. Dondero on Monday, Tuesday, or Friday, and they could do whatever they want. I gave a very -- what I thought was a very reasonable proposal that took into account a number of their concerns.

With respect to the request to change the date, Your Honor, I'm -- I'm a bit -- I'm at a bit of a loss here. Okay?

What I think I basically heard was a confession that they don't have any evidence today. Yet again, we're going to have another hearing. And to this day, I don't think you or I have any idea what the new evidence is that they base their motion on.

We don't have any idea today what the evidence of fraud is that they base their motion on.

And what you heard today is they want to go find it. And I understand that Your Honor has ordered document production, and we're not going to quarrel with it. It is what it is, and we will comply with it. But to take what he -- what Mr. Edney is suggesting and flipping it to the period from October, 2024 until basically the hearing date is to do exactly what Rule 60 is not intended to do, and that is give somebody a do-over.

This would be a very, very damaging precedent because it would allow anybody who faces an adverse judgment to come back to court and say, "Newly discovered evidence. I'm not going to tell you what it is. I'm not going to even tell you that I have any. But I'm going to make a motion under Rule 60, and I'm going to get discovery about the discovery that I already took." There's no question, this is not disputable, that the Dallas Foundation filed an objection based on the exact same thing that Dugaboy is pressing today. That Mark Patrick engaged in some type of fraud, that -- for reasons that

still have never been explained -- implicates his ability to serve as the fiduciary for Hunter Mountain. That was their objection.

They took discovery. Dugaboy took discovery. As I just mentioned, between them, they took four depositions. They've already taken Mr. Patrick's deposition. They took Mr. Raver's deposition. They took Mr. Seery's deposition. They took Mr. Klos's deposition.

Remember, the question is could they have, with reasonable diligence, discovered the information? They're now asking for the same information they could have asked then.

The Court should not change the dates, because to do so would give them basically a new trial without having come forth with anything, really with anything.

The notion that there would have been a different outcome, I really have to take issue with because they've yet to identify a single piece of information that would have changed the outcome at all. It's completely speculative.

They mentioned the Joint Official Liquidators and the investigation that they did. The Joint Official Liquidators' investigation was completed on July 25th -- July 15th. How do we know that? Because that's when they filed their complaint. Did Dugaboy know that? Of course, Dugaboy knew that. How do I know Dugaboy knew that? Because they attached that complaint to their motion for a stay of the enforcement of the

settlement. The stay was denied. Nothing has changed since then.

The JOLs had completed their investigation. They knew everything back then. They didn't move for a new trial. Instead, they wanted to wait and see what happened in the Cayman Islands. They lost.

And now, they're back here trying to take discovery in order to help them against Mr. Patrick in other forums. They had their shot at Mr. Patrick. They had their shot to challenge his authority to bind HMIT to the settlement agreements. They had their shot to try to persuade the Bankruptcy Court that Mr. Patrick engaged in wrongdoing. They had their shot to take discovery on all those issues. They failed. You don't -- Rule 60 is not an opportunity to say, "Can I have a second bite at the apple? Can I have a do-over?"

That's what they're asking to do. And that's why the Court should deny their request.

THE COURT: All right. Anything further, Mr. Morris?

MR. MORRIS: Not unless Your Honor has any questions.

THE COURT: I do not; thank you.

MR. MORRIS: Thank you.

THE COURT: All right, Mr. Phillips?

MR. PHILLIPS: Thank you, Your Honor.

We concur and join in Mr. Morris's papers. We filed

our own response to the motion. The motion to -- we didn't oppose expedited hearing. In fact, we suggested one -- the date and time for the hearing. We appreciate Your Honor granting the earliest possible hearing.

Mr. Morris says that things -- that nothing has changed. A couple of things have changed:

Number one, all the supposed evidence of fraud has been tried in the Caymans, and the court in the Caymans, after taking, issued an extensive opinion denying any relief to the Joint Liquidators.

And it's very important to note, Your Honor, that Dugaboy is not in any way, shape, or form related to -- legally related to or a part of the DAF. Dugaboy is not legally related to or a part of the HMIT entities.

Dugaboy is an equity holder of a very minute percentage. And one of the things you haven't heard is that the outcome -- you hear the outcome would have been different, but how? And why? And that -- Dugaboy has lost on its objection to the valuation and fixing of its allowed claim. It -- it did -- and so one thing has changed. There has been a review of all this supposed evidence.

And what you're hearing is that they didn't like that outcome in the Caymans, so what they want to try in the -- under the guise of a Rule 60(b) motion for Highland Investment Management Trust is the Caymans litigation again, when that

doesn't affect Dugaboy. That's number one.

Number two -- and this is a little different from the position of Highland. The Dallas Foundation, which is one of the precipitating parties of the Caymans litigation and the Joint Official Liquidators, is on the member of the Creditors' Committee. As Mr. Morris pointed out, the Dallas Foundation did oppose the settlement based on its allegations that there was something amiss because of Mr. Patrick's misconduct in both -- and they really never articulated it, in -- it was -- they never articulated it, but they mentioned and tried to articulate their concern that because of restructuring of HMIT and the DAF, that Mr. Patrick did something wrong and you shouldn't approve the settlement. There was never a suggestion, even in their objection, that Mr. Patrick didn't have authority.

And when depositions were taken, Mr. Morris took the deposition of the Dallas Foundation people -- and all this is of record, Your Honor, in this proceeding. Under the -- because the depositions established the very real prospect of, well, let's just say, bad testimony by representatives of the Dallas Foundation.

The Dallas Foundation came to us, and we resolved that objection, and they withdrew it with prejudice and supported -- didn't support the settlement, had no further objection to the settlement, and we moved forward.

There is no suggestion in the Rule 60 motion that they're looking at anything involving the HMIT entities. It's all the DAF.

And so the problem that they have is that they're not even questioning the authority of Mr. Patrick on the HMIT side, and that's -- that's a logistical problem. But I'm getting to the point -- and I'm sorry it's taken so long. But even though the Dallas Foundation objected to the very same thing as Mr. Morris points out, that is being sought to uncover now and tried now under the guise of a Rule 60 motion. Neither the Dallas Foundation nor Dugaboy ever sought discovery from any of the HMIT entities, any of the DAF whatsoever. No document requests.

All they wanted was a deposition to Mark Patrick and a deposition to Mr. Shawn Raver, who works with -- is legal counsel for the DAF and the HMIT entities.

And so what we're being asked to do -- and we have filed our response, we've filed a response -- our responses to and objections to the discovery, and have advised that we will produce documents by March -- by May 1st that we consider responsive to the Court's order with full reservation of rights.

But to echo Mr. Morris, there can be no more precise definition of a do-over than we didn't ask for any documents before, and now we need an extensive document request that goes

back to 24 -- months and months before the hearing on the settlement. Months and months before May 19th, the date the settlement was confected and executed.

So we have filed our response. We -- that is -- I would like to move, if I could, for a minute or two. I echo Mr. Morris's version of how discovery has been taken in the Highland case. There's -- there's no requirement by Mr. Morris -- that he wants to take the deposition to Mr. Dondero and Ms. Nancy Dondero, no requirement that they be -- other than remote. No requirement from Dugaboy that Seery be remote.

And the suggestion to the Court is they have to have Mr. Patrick there because his deposition is so important. But if Your Honor notes its own order, the Court's own order, the time frame is probably not going to yield much in the nature of information or evidence that they're going to be able to use on May 11th.

We don't think there's going to be much at all that Mr. Patrick is going to be asked that's within the scope of the Court's order. And there's not going to be much at all that Mr. Patrick is going to have to say about the -- within the confines of discovery under the Court's order.

So to say that all counsel have to come for one deposition because there's some unarticulated suggestion that he is the most important -- well, there have been a lot of important depositions. We took a lot of -- very early on, a

lot of very adversarial depositions that went on for hours and hours. There were hours and hours of deposition taken in connection with the settlement conference. As Mr. Morris said, we did do depositions over the weekend in that case.

There was document discovery propounded to Highland. Highland responded. The documents that were discovered could be utilized easily remotely, and that's the same situation here.

And we would respectfully request, Your Honor, that once we get a date -- and I can try to make the 6th work. We've proposed the 7th; they've not responded, other than to issue a notice of deposition saying it's going to be on the 6th. You know, there's been no suggestion why it couldn't be on the 7th. But I can make the 6th work.

But I respectfully request that the deposition be taken remotely. There's no reason to have all the expense of counsel coming in for one deposition.

And also with respect to the trial, Your Honor, on the 11th, Mr. Patrick is scheduled to be traveling. He will postpone travel. I would request that he be allowed to testify live remotely on the 11th. That is not to say that he can't be there, but it would be at extreme and tremendous cost and disruption. And I think that once the discovery is made, and once we get to the 11th, we think this is liable to be a lot about nothing. But that's our hope, and that's our

perspective.

But this Court has conducted hearings with remote witnesses for years, and we respectfully request that. Although I'm not going to jeopardize the hearing date, I will make Mr. Patrick appear if the Court absolutely orders him to appear live, but it will be at a cost.

He and his wife drove for a family trip, and he would have to fly -- leave his wife fly from Missouri to Lubbock for the hearing, and also for the deposition, which we don't think is in any way, shape, or form reasonable.

I leave it to Your Honor, though. I've pled -- I've pled the case as best I can for remote live appearance on May 11th, and we respectfully request that this Court allow that approach to his testimony if he's called as a witness, and also allow the remote deposition.

One final thing, Your Honor. We did today get an email that says that Dugaboy is starting today a process to obtain a witness deposition through the Hague Convention process. That does -- I'm not a Hague Convention expert, but my suggestion to the Court is that starting today to invoke the Hague Convention process to obtain discovery from -- a deposition from a person who lives outside of the United States does not reflect due diligence in promoting efficient discovery process before the Court.

And I'll -- I can answer any questions, Your Honor.

And thank you for your attention.

THE COURT: Okay. Just real quick, Mr. Phillips. So I take you from your comments, there wasn't an agreement that the deposition of Mr. Patrick would be on the 6th. The date -- I'm just referring to the date.

MR. PHILLIPS: Yes, sir.

THE COURT: There wasn't any agreement that there would be a --

MR. PHILLIPS: Well, we had proposed the 7th, and got no response to that, other than the notice of deposition.

THE COURT: Okay.

MR. PHILLIPS: I have spoken to Mr. Patrick today, and even though he had some things already planned out-of-town on his trip, if necessary, he would cancel those and move those around.

But I will say, we have -- we have suggested the 7th, at least for today. And the response was that we got a notice of deposition for the 6th.

THE COURT: Okay. And then I will just state this, this is the first I'm hearing about any request about remote witnesses. This hearing has always been set as a live hearing or trial on the 11th in Lubbock, as the parties were well aware.

Mr. Phillips, and this goes to you, as well as any counsels that believes they need to seek permission from the

Court to have a witness appear remotely for testimony, please, again, look at my judge-specific guidelines regarding the process to accomplish that. If we need to set that on an expedited basis, we can try to accommodate that, as well. But --

MR. PHILLIPS: Thank you, Your Honor.

THE COURT: Okay? All right, Mr. Edney, I'm going to let you have, obviously, the final word here before the Court determines what it's going to do.

MR. EDNEY: Yes, Your Honor; thank you. And I'll try to be brief.

Obviously, there's a lot of things said about the merits; I'll put those aside for a moment and try to focus on some of the things that -- with respect to scheduling and scope.

Your Honor, again, the principal purpose for our scheduling request is to make sure that there's time to digest what's coming. I know Mr. Morris says he doesn't plan on producing very much; that doesn't surprise me. I do think the production is likely to come from the other entities in Your Honor's order. And we want to make sure that, you know, that is not for -- that is not all for naught, but instead put to good and thoughtful use.

Mr. Morris, you know, is much more experienced in bankruptcy than I am, there's no question. And, you know,

referred to processes where document production occurs one week, and depositions the next.

But, you know, I do want to note that we did put a pin in document production for quite some time here to address the objection that there be no discovery at all. We've now had that addressed. And I think -- I think this two-week adjournment, the continuance that we're asking for, will give an appropriate amount of time for this document work to be sensibly put to good use.

I also note that, you know, we do think that Mr. Patrick is an important part of this. I think it's -- I think it's going to be important to take his deposition in person. Of course, I think it's important that he appear for live testimony before Your Honor, and perhaps the requested extension will facilitate that.

With respect to the -- with respect to the shifting of the temporal scope of the document production, the second topic, I'll just say three quick things:

Number one, almost all judicial proceedings are about what is happening up until the time of the order. They're -- we're in a -- I guess we're -- Your Honor, we're in a backwards-looking business. And in a corollary of that is that Rule 60 talks about newly discovered evidence in 60(b)(2), and 60(b)(3) is fraud, misconduct, and -- it's fraud and misconduct.

But when we talk about newly discovered evidence, I really do think that the focus is, you know, we've discovered something that happened previously, right? And that's why it's not newly occurring evidence. And I think it is appropriate to shift the temporal scope back, because I think that's what Rule 60 is focused on. And I think that's -- I think that's what's relevant to determining whether the order should have been entered in light of the newly discovered evidence.

I also note that -- that it was with respect to the bases for Rule 60(b)(3), fraud and misconduct, and with respect to newly discovered evidence, you know, what the -- what the Cayman -- what liquidators came in with was a significant intervening development. And the parties did ask the Court -- the Texas Attorney General did ask the Court, the Cayman liquidators, by letter, did ask the Court back in the 9019 settlement to wait for the liquidators to come out with that evidence, to pause those proceedings. That request was declined.

But this intervention of that evidence coming out of the liquidation process, I think, is -- I think Rule 60 is the appropriate way to address that. And we think that there's substantial evidence making our case that came out of the liquidation process that's part of our motion. And we hope that this discovery process will be in the manner of rebutting efforts by our opponents to deny that.

So we think the shift is appropriate, and we think that the two-week continuance is the right way to lead to the most productive hearing before Your Honor possible.

And with respect to all the other detailed date issues, you have my firm commitment, Your Honor, to work with brother counsel to make sure that we sort that out without the Court's further intervention.

We come to you today with these two a little bit more macro issues, and we're grateful for Your Honor, both entering the order on Monday, and taking this up so quickly today.

Thank you, Your Honor, for your time this afternoon.

THE COURT: All right. One second, Mr. Edney. I've got a -- I have a few questions for you. One is --

MR. EDNEY: Yes, Your Honor.

THE COURT: One is, do you recall -- I'm sure it's somewhere in the pleadings, but do you recall when you all first served written discovery on your motion -- your Rule 60(b) motion?

MR. EDNEY: I don't, off the top of my head. But my colleague undoubtedly does. Just give me one moment, Your Honor.

(Pause)

MR. EDNEY: Well, maybe my colleague doesn't remember the exact date, Your Honor; we can get that to you. But I believe it -- I believe it was in March, Your Honor.

THE COURT: Okay.

MR. EDNEY: Yeah.

THE COURT: All right. My next question is, has there been any response from you or your colleagues about deposition dates for Mr. and Mrs. Dondero?

MR. EDNEY: Yes, Your Honor. I -- we've been -- Mr. Morris and I had a discussion about that today, and -- and, you know, we'll work with opposing counsel to put them on the right date that works for everybody. Assuming how -- we are under the cover of whatever Your Honor decides today.

THE COURT: Okay. All right. The Court is going to take a ten-minute recess. I want to think through and organize my thoughts before I issue the ruling. So we'll be in a short recess.

MR. EDNEY: Thank you, Your Honor.

(Recess 4:54 p.m./Reconvene 5:04 p.m.)

THE COURT: Okay, this is Judge Odell. We're back on the record in the Highland Capital Management matter.

The Court has listened to the arguments of the parties, as well as reviewed the pleadings, and now is prepared to issue its oral ruling.

The Court has before it, again, the motions filed by Dugaboy Investment Trust. The first motion is a motion to change the discovery deadlines, as well, as the hearing currently set for May 11th on the motion by -- filed by Dugaboy

on its motion for relief from order and motion to vacate the prior settlement order which was entered by this Court.

The second motion is a motion to modify the time periods or time frames which the Court ordered as part of its ruling on the motion for protective order.

The Court has jurisdiction over this matter pursuant to Section 11 U.S.C. Section 1334, and the standing order of the Northern District of Texas has referred all bankruptcy matters to the Bankruptcy Courts.

This is a core proceeding as the underlying motion to vacate relates to a motion to overturn or to vacate an order that was issued under a settlement agreement, and settlement motions are core proceedings within the Bankruptcy Code and within the bankruptcy case. And so this Court considers these motions to be core proceedings for which the Court has authority to enter final orders.

Based on the arguments of the parties and the review of the Court's -- of the pleadings by the Court, the Court finds that the motions -- that Dugaboy has not shown cause for the Court to grant either of the two motions.

As it pertains to the motion to enlarge the discovery period, as well as to move the trial, the Court notes that the Rule 60(b) motion, which was filed by Dugaboy, was filed back on -- in February of this year, I believe February 9th. The Court has reviewed the pleadings and understands that the first

time that discovery was served in this matter wasn't until around March 23rd of this year.

Pursuant to Rule 9014, the parties have the right to seek discovery and the 7000 Rules, including discovery rules, apply to contested matters. There was nothing that was preventing Dugaboy from seeking written discovery as soon as they filed their motion. However, they did not. And it's not until this point in time that now they're seeking extension of time to deal with discovery delays that may have been prevented had they promptly prosecuted or pursued discovery in this matter.

Further, the Court has already set this motion multiple times, and sees no reason why this Court shouldn't hold or continue to hold the hearing on May 11th.

So as it pertains to the motion to continue the hearing and to readjust discovery deadlines, the Court denies the motion.

The Court will look for an order to that effect. Mr. Morris, if you'll prepare that and submit it to the Court? It can be very simple and straightforward, and provide basically that based on the ruling of the Court on the record, the motion is denied.

As it pertains -- let me just state real quick that as it pertains to the depositions that are going to be taken in this matter, the Court is not going to order particular dates,

as requested by Highland in this case.

Again, the Court reiterates what it started off with at the hearing today, which is the Court expects the parties to act in a professional manner and to work together to resolve dates and timing for depositions, the discovery, and the adversarial process in general.

And so the Court is not, at this time, going to enter any order that specifically sets depositions.

The Court -- to allow the parties to know, the Court will be traveling. There's a judicial conference that the Court will be attending the first part of next week. However, the Court will make itself available, should the parties not be able to reach agreement by themselves.

The Court, however, will note and let the parties know that should the Court have to get further involved as to matters of scheduling depositions, the Court will consider whether or not sanctions should be issued against the party that is not cooperative.

The Court does also note -- well, the Court will also now issue its ruling on the motion to modify its prior order regarding the time period for the discovery. The Court denies that motion, as well. Specifically, the Court does not find cause exists to modify the order to modify the dates of when the discovery is allowed to be sought.

Similar to the ruling of the Court as to timing of

discovery, discovery could have been, but does not appear to have been, taken to the full extent during the underlying ruling on the motion for -- to approve the settlement. Dugaboy certainly had its opportunity, and could have sought discovery regarding the issues that have been raised as they were known based on the pleadings and the papers that have been filed, were certainly known to Dugaboy at the time. And, in fact, an objection, while not Dugaboy's objection, an objection was lodged prior to the settlement motion -- or I'm sorry -- the settlement hearing on the issue of authority by Mr. Patrick to sign on behalf of HMIT.

The Court, therefore, denies that motion, as well. And, again, will look to Mr. Morris, if you can prepare an order denying the motion.

The Court notes that while it states that it had jurisdiction to rule on these motions today, the Court is not -- it still is holding the reservation and the question of whether or not the Court has jurisdiction to rule on the Rule 60(b) motion, as previously raised during the last hearing.

So that's the ruling of the Court. I dare ask the question, is there any questions before the Court adjourns?

MR. MORRIS: Not from Highland, Your Honor. We'll have those orders to you. And we'll share them with Dugaboy's counsel, if not tonight, early tomorrow morning.

THE COURT: Okay. All right. I appreciate it --

MR. PHILLIPS: No, Your Honor; thank you.

THE COURT: And with that, the Court will be adjourned.

MR. PHILLIPS: Thank you, Your Honor.

(Whereupon, at 5:12 p.m., the hearing was adjourned.)

CERTIFICATE OF TRANSCRIBER

I, KAREN HARTMANN, a certified Electronic Court Transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Karen Hartmann*

Karen Hartmann, AAERT CET Date: May 1, 2026

TRANSCRIPTS PLUS, INC.