**EXHIBIT 4**

SECOND AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

OF

BEACON MOUNTAIN LLC

This Amended and Restated Limited Liability Company Agreement (this "Agreement"), dated as of the 12th day of February, 2025 (the "Effective Date"), has been entered into by CLO Holdco, LLC (the "Member"). The Member's LLC Interest (as hereinafter defined) is as set forth on Schedule A hereto.

**WHEREAS**, the initial Limited Liability Company Agreement (the "Initial Agreement") and the Amended and Restated Limited Liability Company Agreement (the "A&R Agreement"), were each dated as of the 24th day of September, 2015; and

WHEREAS, the Member acquired all the membership interests in the Company from Rand PE Fund I, L.P., as of the Effective Date, and desires to amend and restate the A&R Agreement;

**NOW, THEREFORE**, in consideration of the mutual covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the A&R Agreement is hereby amended and restated in its entirety to read as follows:

1.      Name, Business, Address and Registered Agent.

(a)      The Member hereby acknowledges that a limited liability company under the name of "Beacon Mountain LLC" (the "Company") was formed under the Delaware Limited Liability Company Act (the "Act") for the purpose of engaging in any business of any kind necessary to, in connection with, related to or incidental to such purposes as the Member shall from time to time deem desirable.

(b)      The principal office of the Company shall be at such place as the Member may from time to time designate.

(c)      The initial registered office of the Company for purposes of the Act shall be at 1675 South State Street, Suite B, in the City of Dover, County of Kent, Delaware 19901. The initial registered agent of the Company for purposes of the Act shall be Capitol Services, Inc., whose business office is identical to the Company's registered office.

2.      Member. The sole responsibility for managing the business and affairs of the Company, except as otherwise provided herein or in the Act, shall be vested in the Member. Except as expressly provided herein, voting power shall be vested solely in the Member, and all matters requiring a vote pursuant to this Agreement or the Act shall be determined by the vote of the Member and the Member may act by written consent.

3.      Officers.

(a)     Election of Officers; Term.  Officers, including assistant and subordinate officers, may from time to time be appointed by the Member.  All officers shall hold office until their successors are appointed by the Member.  Any two or more offices may be combined in the same person as the Member may determine.  No officer may act in more than one capacity where the action of two or more officers is required.

(b)     Removal of Officers; Vacancies.  Any officer of the Company may be removed summarily with or without cause, at any time, by the Member.  Vacancies may be filled by the Member.

(c)     Duties.  The officers of the Company shall have only such powers and duties as are from time to time conferred by the Member in writing or as are set forth in writing and executed by either of the President or the Secretary.  The Member shall determine the compensation of all officers of the Company.

4.     Term.  The term of the Company shall be perpetual, except that the Company shall be dissolved upon the first to occur of any of the following events:

(a)     The election of the Member to dissolve and terminate the Company;

(b)     At any time there are no remaining members, except as may be avoided pursuant to §18-801(a)(4) of the Act;

(c)     The entry of a decree of judicial dissolution under §18-802 of the Act; or

(d)     Automatic cancellation of the Company's certificate of formation pursuant to §18-1108 of the Act.

5.     Capital.  The Member may contribute such capital, in cash or other property, as it so chooses in its sole discretion.  No capital contributions shall be required unless the Member consents thereto in writing, in its sole and absolute discretion.

6.     Bank Accounts.  The President and the Secretary and any other officer, including any assistant or subordinate officer, as may be authorized to do so in writing by either of the President or the Secretary, are authorized to open commercial banking accounts for and in the name of the Company throughout the United States, at any time and from time to time, and to deposit to the credit of the Company in such banking accounts any monies, checks, drafts, orders or other commercial paper payable to the Company, and from time to time to withdraw all or any part of the funds on deposit in the name of the Company by check drawn in the name of the Company and signed by such officer.

7.     Voting of Shares.  Unless otherwise provided by written resolution of the Member, either of the President or the Secretary may from time to time appoint an attorney or attorneys or agent or agents of the Company, in the name and on behalf of the Company, to cast the vote which the Company may be entitled to cast as a stockholder or otherwise in any corporation, partnership,

limited liability company, joint venture or any other entity, any of whose securities may be held by the Company, at meetings of the holders of the shares or other securities of such entity or to consent in writing to any action by any such entity.  Such officer shall instruct the person or persons so appointed as to the manner of casting such votes or giving such consent and may execute or cause to be executed on behalf of the Company such written proxies, consents, waivers or other instruments as may be necessary or proper in the premises.  In lieu of such appointment, either of the President or the Secretary may himself attend any meetings of the holders of the shares or other securities of any such entity and there vote or exercise any or all power of the Company as the holder of such shares or other securities of such entity or consent in writing to any action by any such entity.

8.    Distributions.  Any cash or other property of the Company not required for the operation of the Company shall be distributable to the Member at such times and in such amounts as determined by the Member.

9.    Certificates; "Opt-In" to Article 8; Transferability of Interests.

(a)    The Company may issue one or more certificates evidencing the limited liability company interests in the Company ("LLC Interest") in the form attached hereto as Exhibit A.  Certificates shall be executed on behalf of the Company by one of its executive officers.  The Member hereby agrees that the LLC Interest held by such Member shall be treated as a "security" for purposes of and shall be governed by Article 8 of the Delaware Uniform Commercial Code-- Investment Securities, as amended from time to time.

(b)    The Member may transfer, sell, assign, mortgage, grant a lien on, give or otherwise dispose of, whether voluntarily or by operation of law, at judicial sale or otherwise, all or any part of its LLC Interest in the Company; provided, however, that there shall not at any time be more than one member until this Agreement is amended to provide generally (in addition to Section 12 hereof) for having more than one member.  If, in connection with any such transfer, less than 100% of the LLC Interest of the transferor member is transferred, then this Agreement shall be amended to include appropriate provisions, including those relating to partnership accounting and tax issues, necessary to address the fact that the Company has more than one member.

10.    Liquidation.  Any net proceeds from the sale, exchange or other disposition (including a disposition pursuant to foreclosure or deed in lieu of foreclosure) of the assets of the Company following the dissolution of the Company shall be distributed to the Member.

11.    Other Activities.  The Member may engage in or possess any interest in another venture or business of any nature or description, independently or with others.

12.    Tax Classification.  The Member intends that the Company be disregarded for U.S. federal income tax purposes as long as there is only one member, and that if there is ever more than one member or more than one owner of the Company as determined for U.S. federal income tax purposes, that the Company be classified as a partnership for U.S. federal income tax purposes and this Agreement shall be interpreted accordingly.

13.     Limited Liability.  The Member shall not have any personal obligation for any debts, obligations or liabilities of the Company, whether arising in contract, tort or otherwise, solely by reason of being a Member, except as provided under the Act.

14.     Exculpation; Indemnification.

(a)     Except as otherwise provided by any written employment, consulting or similar agreement, if applicable, or unless otherwise expressly required by law, no officer or member of the Company (including any former executive officer or member) (each such person referred to herein as a "Covered Person") shall have any liability to the Company or to any member for any loss suffered by the Company or any member which arises out of any act or omission or alleged act or omission of the Covered Person in the Covered Person's capacity as a Covered Person to the extent the Covered Person acted in good faith and to the extent such course of conduct did not constitute willful misconduct or gross negligence of the Covered Person.  Each Covered Person shall be indemnified by the Company against any losses, judgments, liabilities, claims, damages, costs, expenses (including reasonable legal fees and other expenses actually incurred in investigating or defending against any such losses, judgments, liabilities or claims and expenses actually incurred enforcing this Agreement) and amounts paid in settlement of any claim (approved in advance and in good faith by the Member) sustained by any of them by reason of any act or omission or alleged act or omission in connection with the activities of the Company (including any subsidiaries thereof) unless there is a final judicial determination by a court of competent jurisdiction to which all rights of appeal have been exhausted or expired that the same were the result of bad faith, willful misconduct or gross negligence of the Covered Person.  The Covered Person may rely in good faith upon the advice of legal counsel.

(b)     To the extent available on commercially reasonable terms, the Company may purchase, at the Company's expense, insurance (including without limitation, liability insurance policies and errors and omissions policies) to cover any liabilities covered by this Section 14 in such amount and with such deductibles as the Company may determine; provided, however, that the failure to obtain such insurance shall not affect the right to indemnification of any Covered Person.  Any such insurance may extend beyond the termination of the Company for a commercially reasonable period.  The Company shall be subrogated to the Covered Person's rights under such indemnification or insurance.  If any Covered Person recovers any amounts in respect of any such liabilities from insurance coverage or any third party source, then such Covered Person shall, to the extent that such recovery is duplicative, reimburse the Company for any amounts previously paid to it by the Company in respect of such liabilities.  The Company shall not incur the cost of that portion of any insurance, other than public liability insurance, which insures any party against any liability the indemnification of which is herein prohibited.

(c)     The Company may, as determined in good faith by the Member, pay the legal fees and other expenses reasonably incurred by any Covered Person hereunder in connection with any proceeding in advance of the final disposition of such proceeding, so long as the Company receives a written undertaking, in form and content approved by the Company's counsel, by such Covered Person to repay the full amount advanced if there is a final judicial determination by a court of competent jurisdiction, as to which all rights of appeal have been exhausted or expired,

that such Covered Person did not satisfy the standards which entitle it to indemnification pursuant to the terms of this Section 14.

(d)     The right of indemnification hereby provided shall not be exclusive of, and shall not affect, any other rights to which any Covered Person may be entitled.  Nothing contained in this Section 14 shall limit any lawful rights to indemnification existing independently of this Section 14.

(e)     The indemnification rights provided by this Section 14 shall not be construed to increase the liability of the Member.

(f)     The indemnification rights provided by this Section 14 shall inure to the benefit of the heirs, executors, administrators, successors and assigns of each Covered Person.

(g)     The provisions of this Section 14 shall continue to afford protection to each Covered Person regardless of whether such Covered Person remains in the position or capacity pursuant to which such Covered Person became entitled to indemnification under this Section 14 and regardless of any subsequent amendment to this Agreement; provided, however, that no such amendment shall reduce or restrict the extent to which the indemnification provisions of this Section 14 apply to actions taken or omissions made or alleged actions taken or omissions made prior to the date of such amendment.

(h)     If deemed appropriate or necessary by the Member, the Company may establish reserves, escrow accounts or similar accounts to fund its obligations under this Section 14.

(i)     The provisions of this Section 14 shall survive the termination or dissolution of the Company.

15.     No Third Party Beneficiary.  No creditor or other third party having dealings with the Company shall have the right to enforce the right or obligation of the Member to make capital contributions or loans or to pursue any other right or remedy hereunder or at law or in equity, it being understood and agreed that the provisions of this Agreement shall be solely for the benefit of, and may be enforced solely by, the Member, the Covered Persons (to the extent granted herein) and the Company and their respective successors and permitted assigns.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned member has executed this Second Amended and Restated Limited Liability Company Agreement as of the date first set forth above.

CLO HOLDCO, LLC, a Delaware limited liability company

By:_____
      Mark Patrick
      Manager

## SCHEDULE A

## MEMBER

| Member | LLC Interest |
|---|---|
| CLO Holdco, LLC | 100% |

**EXHIBIT A**

**CERTIFICATE NO.** \_\_\_\_

**CERTIFICATE OF LLC INTEREST**

**of**

**BEACON MOUNTAIN LLC**

**A Delaware Limited Liability Company**

This Certificate of LLC Interest (this "Certificate") is issued and shall be held subject to the provisions of the Certificate of Formation of Beacon Mountain, LLC, a limited liability company organized under the laws of the State of Delaware (the "Company"), filed on September \_\_\_, 2015 with the Secretary of State of the State of Delaware, and the Limited Liability Company Agreement of the Company, dated as of September \_\_\_, 2015, as each may be amended from time to time.

This Certificate of LLC Interest certifies that _____, a Member of the Company, is the registered holder of \_\_\_% of the "LLC Interest" (as such term is defined in the above-referenced Limited Liability Company Agreement) of the Company, which LLC Interest shall be transferable only on the books of the Company by the holder hereof in person or by a duly authorized attorney upon surrender of this Certificate with a proper endorsement.

*SEE RESTRICTIONS ON REVERSE SIDE.*

IN WITNESS WHEREOF, the Company has caused this Certificate to be signed by its duly authorized officer as of the \_\_\_\_ day of _____, 2\_\_\_.

BEACON MOUNTAIN LLC

By: _____
Name: _____
Title: _____

**[REVERSE SIDE OF CERTIFICATE]**

## BEACON MOUNTAIN LLC

For value received, the undersigned hereby sells, assigns, and transfers to

_____ and its successors and assigns, ____% of the LLC Interest of

Beacon Mountain LLC standing in the name of _____, on the books of said

limited liability company represented by certificate No. _____ and does hereby irrevocably

constitute and appoint _____, and its successors and assigns, attorney to

transfer said interests on the books of the limited liability company with full power of substitution.

Dated: _____

_____

By: _____
Name: _____
Title: _____

THE LLC INTEREST REPRESENTED BY THIS CERTIFICATE HAVE BEEN ACQUIRED
FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT
OF 1933, AS AMENDED, OR UNDER ANY STATE SECURITIES ACT OR OTHER SIMILAR
STATUTE IN RELIANCE UPON EXEMPTIONS UNDER THOSE ACTS.
WITHOUT SUCH REGISTRATION, THE SALE, PLEDGE OR OTHER TRANSFER OF
THIS LLC INTEREST IS RESTRICTED, EXCEPT UPON DELIVERY TO THE COMPANY
OF AN OPINION OF COUNSEL, SATISFACTORY TO THE COMPANY AND ITS
COUNSEL, THAT REGISTRATION IS NOT REQUIRED FOR THE TRANSFER, OR SUCH
OTHER EVIDENCE SATISFACTORY TO THE COMPANY THAT THE TRANSFER IS
NOT IN VIOLATION OF THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY
APPLICABLE STATE SECURITIES LAW.  THE SALE, PLEDGE OR OTHER TRANSFER
OF THIS LLC INTEREST IS ALSO SUBJECT TO THE RESTRICTIONS SET FORTH IN THE
LIMITED LIABILITY COMPANY AGREEMENT OF THE COMPANY, WHICH MAY BE
AMENDED FROM TIME TO TIME.