**EXHIBIT 11**

AMENDED AND RESTATED COMPANY AGREEMENT


*of*

RAND PE FUND MANAGEMENT, LLC

A Delaware Limited Liability Company

HCMLPHMIT00004177

**AMENDED AND RESTATED COMPANY AGREEMENT**

*of*

**RAND PE FUND MANAGEMENT, LLC**

**A Delaware Limited Liability Company**


This AMENDED AND RESTATED COMPANY AGREEMENT (collectively, the "Agreement," which shall include all amendments and exhibits hereto) dated effective as of the 1st day of August, 2022 (the "Effective Date"), are entered into by and among those Persons executing the signature page hereto as the Members of RAND PE FUND MANAGEMENT, LLC, a Delaware limited liability company (the "Company"). All capitalized terms not defined in the instance of first usage shall have the respective meanings associated with such terms in Section 1.04 below.

## ARTICLE I

### INTRODUCTION

1.01    Formation of Limited Liability Company   The Company was formed by the filing of the Certificate of Formation (the "Certificate") with the Secretary of State of Delaware on the September 18, 2015. The Company's business shall be conducted under the name "RAND PE FUND MANAGEMENT, LLC" until such time as the Members shall hereafter designate otherwise and file amendments to the Certificate in accordance with applicable law. This Agreement amends and replaces, in its entirety, all prior governing agreements for the Company, including any and all amendments thereto.

This Agreement is subject to, and governed by, the Delaware laws governing limited liability companies (the "DELAWARE LAWS") and the Certificate. In the event of a direct conflict between the provisions of this Agreement and the mandatory provisions of the DELAWARE LAWS or the provisions of the Certificate, such provisions of the DELAWARE LAWS or the Certificate, as the case may be, will be controlling.

1.02    Registered Office and Agent   The registered office and registered agent of the Company initially shall be as set forth in the Certificate and may be changed from time to time by the appropriate filing by the Company in the office of the Secretary of State of Delaware.

1.03    Other Offices   The Company may also have offices at such other places, both within and without the State of Delaware, as the Board of Managers may from time to time determine or the business of the Company may require.

1.04    Defined Terms   The terms used in this Agreement with their initial letter capitalized shall, unless the context requires otherwise, have the meanings specified in this Section 1.04. The singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, as the context requires. When used in this Agreement, the following terms shall have the meanings set forth below:

(a)    "DELAWARE LAWS" shall mean the Delaware laws governing limited liability companies, as the same may be amended from time to time.

(b)    "Affiliate" shall mean, as to any Person, any Person controlled by, controlling, or under common control with such Person, and, in the case of a Person who is an individual, a member of the family of such individual consisting of a spouse, sibling, in-law, lineal descendant, or ancestor (including by adoption). For purposes of this definition, "control" (including the terms "controlling", "controlled by" and "under common control with") of a Person means the possession, directly or indirectly, alone or in concert with others, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of securities, by contract or otherwise, and no Person shall be deemed in control of another solely by virtue of being a director, officer or holder of voting securities of any entity. A Person shall be presumed to control any partnership of which such Person is a general partner.

2

HCMLPHMIT00004178

(c)        "Bankruptcy" shall mean, and a Member shall be deemed a "Bankrupt Member,"  upon (i) the entry of a decree or order for relief against the Member by a court of competent jurisdiction in any involuntary case brought against the Member under any Debtor Relief Laws; (ii) the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator, or other similar agent under applicable Debtor Relief Laws for the Member or for any substantial part of its assets or property; (iii) the ordering of the winding up or liquidation of the Member's affairs; (iv) the filing of a petition in any involuntary bankruptcy case, which petition remains undismissed for a period of 180 days or which is not dismissed or suspended pursuant to Section 305 of the Federal Bankruptcy Code (or any corresponding provision of any future United States bankruptcy law); (v) the commencement by the Member of a voluntary case under any applicable Debtor Relief Law now or hereafter in effect; (vi) the consent by the Member to the entry of an order for relief in an involuntary case under any such law or to the appointment of or the taking of possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator, or other similar agent under any applicable Debtor Relief Laws for the Member or for any substantial part of its assets or property; or (vii) the making by a Member of any general assignment for the benefit of its creditors.

(d)        "Book Depreciation" for any asset shall mean for any Fiscal Year or other period an amount that bears the same ratio to the Book Value of that asset at the beginning of such Fiscal Year or other period as the federal income tax depreciation, amortization, or other cost recovery deduction allowable for that asset for such year or other period bears to the adjusted tax basis of that asset at the beginning of such year or other period.  If the federal income tax depreciation, amortization, or other cost recovery deduction allowable for any asset for such year or other period is zero, then Book Depreciation for that asset shall be determined with reference to such beginning Book Value using any reasonable method selected by the Board of Managers.

(e)        "Book Value" shall mean for any asset the asset's adjusted tax basis, except as follows:

(i)        the initial Book Value of any asset contributed by a Member to the Company shall be the gross fair market value of such asset, as determined by the Board of Managers;

(ii)        the Book Values of all Company assets shall be adjusted to equal their respective gross fair market values, as determined by the Board of Managers, as of one of the following times:  (1) on the acquisition of an additional interest in the Company by any new or existing Member in exchange for more than a *de minimis* Capital Contribution if the Board of Managers reasonably determines that such adjustment is necessary or appropriate to reflect the relative economic interests of the Members in the Company; (2) on the distribution by the Company to a Member of more than a *de minimis* amount of Company property as consideration for an Interest in the Company if the Board of Managers reasonably determines that such adjustment is necessary or appropriate to reflect the relative economic interests of the Members in the Company; and (3) on the liquidation of the Company within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations;

(iii)        the Book Value of any Company asset distributed to any Member shall be the gross fair market value of such asset on the date of distribution;

(iv)        the Book Values of Company assets shall be increased (or decreased) to reflect any adjustment to the adjusted basis of such assets pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to Section 1.704-1(b)(2)(iv)(m) of the Treasury Regulations and Section 8.02(d) hereof; provided, however, that Book Values shall not be adjusted pursuant to this Section 1.04(e)(iv) to the extent the Board of Managers determines that an adjustment pursuant to Section 1.04(e)(ii) is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment pursuant to this Section 1.04(e)(iv); and

(v)        if the Book Value of an asset has been determined or adjusted pursuant to Section 1.04(e)(i),1.04(e)(ii), or 1.04(e)(iv) hereof, such Book Value shall thereafter be adjusted by the Book Depreciation taken into account with respect to such asset for purposes of computing Profits and Losses.

(f)        "Capital Contribution" shall mean the total value of cash and Book Value (except as otherwise herein provided) of property contributed and agreed to be contributed to the Company by each Member, as shown in Exhibit A, attached hereto and incorporated herein for all purposes, as the same may be amended from time to time.  Any reference in this Agreement to the Capital Contribution of a then Member shall include a Capital Contribution previously made by any

3

HCMLPHMIT00004179

prior Member for the interest of such then Member, reduced by any distribution to such Member in return of its capital as contemplated herein.

(g)      "Class A Interest" shall refer to the Interest of a Class A Member in the Profits, Losses, Distributable Cash, and assets upon liquidation of the Company as described in this Agreement.

(h)      "Class A Members" shall mean those Persons listed on Exhibit A and designated as "Class A Members." The Class A Members shall have such additional rights as a Member as are specifically described and granted in Exhibit A, as amended from time to time.

(i)      Intentionally Blank.

(j)      Intentionally Blank.

(k)      "Code" shall mean the Internal Revenue Code of 1986, as amended.  All references herein to sections of the Code shall include any corresponding provision or provisions of succeeding law.

(l)      "Company" shall refer to the limited liability company created by virtue of the Certificate and this Agreement and any successor in interest.

(m)      "Debtor Relief Laws" shall mean any federal or state bankruptcy, insolvency, or similar laws generally affecting the rights of creditors and the relief of debtors now or hereafter in effect.

(n)      Intentionally Blank.

(o)      "Distributable Cash" of the Company shall mean all cash funds of the Company on hand from time to time (other than cash funds obtained as Capital Contributions by the Members and cash funds obtained from loans to the Company) after (i) payment of all operating expenses of the Company as of such time; (ii) provision for payment of all outstanding and unpaid current obligations of the Company as of such time; and (iii) provision for a working cash reserve in accordance with Section 8.07 below.

(p)      "Fiscal Year" shall mean the calendar year.

(q)      "Former Member" shall mean a member that causes a Dissolution Event.

(r)      "Interest" in the Company shall mean the entire ownership interest of a Member in the Company at any particular time, including such Member's Capital Account, allocable share of Profits, Losses, and Distributable Cash, and the right of such Member to any and all benefits to which a Member may be entitled as provided in this Agreement, together with the obligations of such Member to comply with all of the terms and provisions of this Agreement.

(s)      Intentionally Blank

(t)      "Manager" shall mean an individual elected to the Board of Managers of the Company pursuant to Sections 3.02 and 3.04 below.

(u)      "Member(s)" shall mean all Members admitted to the Company hereafter as Members who shall consent to the terms hereof and shall be admitted pursuant to the provisions hereof.  The names, business or residence addresses, Capital Contributions, Percentage Interest, and class of Interest of the Members shall be set forth on Exhibit B, attached hereto and incorporated herein by reference.  Reference to a "Member" shall be to any one of the Members.

(v)      "Percentage Interest" of a Member shall mean the percentage of such Member set forth opposite the name of such Member under the column "Percentage Interest" in Exhibit B, as such percentage may be adjusted from time to time pursuant to the terms hereof.

(w)      "Person" shall mean any individual, corporation, partnership, limited liability company or partnership, association, organization, trust, estate, or other entity.

HCMLPHMIT00004180

(x)      "Pro Rata Part" shall mean the percentage expression of a fraction the numerator of which is a Member's respective Percentage Interest and the denominator of which is the aggregate Percentage Interests of all Members involved in the respective transaction or having a respective right or option.

(y)      "Profits" and "Losses" shall mean, for each Fiscal Year or other period, an amount equal to the Company's taxable income or loss for such year or period, determined in accordance with Code Section 703(a) (for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or loss), with the following adjustments:

(i)      income of the Company that is exempt from federal income tax and not otherwise taken into account in computing Profits and Losses pursuant to this Section 1.04(y) shall be added to such taxable income or loss;

(ii)      any expenditures of the Company described in Code Section 705(a)(2)(B), or treated as Code Section 705(a)(2)(B) expenditures pursuant to Section 1.704-1(b)(2)(iv)(i) of the Treasury Regulations, and not otherwise taken into account in computing Profits and Losses pursuant to this Section 1.04(y), shall be subtracted from such taxable income or loss;

(iii)      if the Book Value of any Company asset is adjusted pursuant to Section 1.04(e)(ii) or Section 1.04(e)(iii), the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits and Losses;

(iv)      gain or loss resulting from any disposition of property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Book Value of the property disposed of, notwithstanding that the adjusted tax basis of such property differs from its Book Value;

(v)      in lieu of the deduction for depreciation, cost recovery, or amortization taken into account in computing such taxable income or loss, there shall be taken into account Book Depreciation; and

(vi)      notwithstanding any other provision of this Section 1.04(y), any items that are specially allocated pursuant to Section 8.02 or Section 8.03 shall not be taken into account in computing Profits and Losses.

(z)      "Regulatory Allocations" shall mean the special allocations of items of income, gain, loss, and deduction, if any, set forth in Section 8.02 hereof.

(aa)      "Transfer" or "Transferred" shall mean the sale, assignment, conveyance, gift, bequest, devise, transfer under the rules of intestate succession, pledge, mortgage, or other encumbrance.  In addition, the term "Transfer" or "Transferred" shall mean an "ownership change" of a Member as defined in Section 382(g) of the Code in effect as of the Effective Date, except that the term "Member" shall be substituted for "shareholder" wherever it appears.

(bb)      "Treasury Regulations" shall mean regulations issued by the Department of the Treasury interpreting the Code.

(cc)      "Unanimous Consent" shall mean the written consent of all of the then Members of the Company.

## ARTICLE II

## MEMBERS AND MEMBERSHIP INTERESTS

2.01      Members.  The Members of the Company shall be those Persons listed on Exhibit B. Except as otherwise may be provided in Exhibit A or Exhibit B, and except as provided in Section 7.05 below, a Person may be admitted as a Member to the Company only upon the affirmative vote of the Managers, plus one or more Members whose Percentage Interests total more than fifty percent (50%); provided, however, that no Person will be recognized as a Member of the

5

HCMLPHMIT00004181

Company until he/she shall have executed this Agreement, or a counterpart hereto, and agrees to be bound by all of the terms and conditions hereof.

2.02     Annual Meetings  An annual meeting of the Members of the Company shall be held during each calendar year on such date and at such time as shall be designated from time to time by the Board of Managers and stated in the notice of the meeting, and if a legal holiday, then on the next business day following, at the time specified in the notice of the meeting.  At such meeting, the Members shall elect Managers and transact such other business as may properly be brought before the meeting.

2.03     Special Meetings  A special meeting of the Members may be called at any time by the President, the Board of Managers, or one or more Members whose Percentage Interests total at least 10%.  Only such business shall be transacted at a special meeting as may be stated or indicated in the notice of such meeting.

2.04     Place of Meetings   The annual meeting of Members may be held at any place within or without the State of Delaware as may be designated by the Board of Managers.  Special meetings of Members may be held at any place within or without the State of Delaware as may be designated by the person or persons calling such special meeting as provided in Section 2.03.  If no place for a meeting is designated, it shall be held at the registered office of the Company.

2.05     Notice.  Written or printed notice stating the place, day, and hour of each meeting of Members and, in case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than 10 days or more than 50 days before the date of the meeting, either personally or by mail, by or at the direction of the President, the Secretary, or the person calling the meeting, to each Member of record entitled to vote at such meeting.

2.06     Voting List  At least 10 days before each meeting of Members, the Secretary shall prepare a complete list of Members entitled to vote at such meeting, arranged in alphabetical order, including the address of each Member and the number of voting Interests held by each Member.  For a period of 10 days prior to such meeting, such list shall be kept on file at the registered office of the Company and shall be subject to inspection by any Member during usual business hours.  Such list shall be produced at such meeting, and at all times during such meeting shall be subject to inspection by any Member. The membership interest transfer books shall be prima facie evidence as to who are the Members entitled to examine such list or membership interest transfer books.

2.07     Voting of Interests.  Interests held by the Company in treasury, Interests owned by a Person the majority of the voting interests of which are owned or controlled by the Company, and Interests held by the Company in a fiduciary capacity shall not be Interests entitled to vote or to be counted in determining the total number of outstanding Interests of the Company.  Interests held by an administrator, executor, guardian, or conservator may be voted by him or her, either in person or by proxy, without transfer of such Interests into his or her name so long as such Interests form a part of the estate and are in the possession of the estate being served by him or her.  Interests standing in the name of a trustee may be voted by him or her, either in person or by proxy, only after the Interests have been transferred into his or her name as trustee.  Interests standing in the name of a receiver may be voted by such receiver, and Interests held by or under the control of a receiver may be voted by such receiver without transfer of such Interests into his or her name if authority to do so is contained in the court order by which such receiver was appointed.  Interests standing in the name of another domestic or foreign corporation of any type or kind may be voted by such officer, agent, or proxy as the bylaws of such corporation may provide or, in the absence of such provision, as the board of directors of such corporation may by resolution determine.  A Member whose Interests are pledged shall be entitled to vote such Interests until they have been transferred into the name of the pledgee, and thereafter the pledgee shall be entitled to vote such Interests.

2.08     Quorum.  The presence in person or by proxy of one or more Members whose Percentage Interests total more than fifty percent (50%) shall constitute a quorum at any meeting of Members, except as otherwise provided by law, the Certificate, or this Agreement.  At any reconvening of an adjourned meeting at which a quorum shall be present or represented, any business may be transacted that could have been transacted at the original meeting if a quorum had been present or represented.

2.09     Vote; Withdrawal of Quorum.  If a quorum is present in person or represented by proxy at any meeting, except as otherwise may be provided in Exhibit A or Exhibit B, the vote of one or more Members whose Percentage Interests total more than fifty percent (50%) of all Members, whether or not they are present in person or represented by proxy, shall decide any question brought before such meeting, unless the question is one on which, by express provision of law, the

6

HCMLPHMIT00004182

Certificate, or this Agreement a different vote is required, in which event such express provision shall govern and control the decision of such question.  The Members present at a duly convened meeting may continue to transact business until adjournment, notwithstanding any withdrawal of Members that may leave less than a quorum remaining.

2.10    Method of Voting; Proxies.  Except as otherwise may be provided in Exhibit A or Exhibit B, each Member shall be entitled to that number of votes on each matter submitted to the Members for their vote equal to such Member's Percentage Interest multiplied by 100.   At any meeting of Members, every Member having the right to vote may vote either in person or by a proxy executed in writing by the Member or by his duly authorized attorney-in-fact.  Each such proxy shall be filed with the Secretary of the Company before or at the time of the meeting.  No proxy shall be valid after 11 months from the date of its execution, unless otherwise provided in the proxy.  If no date is stated on a proxy, such proxy shall be presumed to have been executed on the date of the meeting at which it is to be voted.  Each proxy shall be revocable unless expressly provided therein to be irrevocable or unless otherwise made irrevocable by law.

2.11    Closing of Transfer Books; Record Date .  For the purpose of determining Members entitled to notice of, or to vote at, any meeting of Members or any reconvening thereof, or entitled to receive payment of any distribution, or in order to make a determination of Members for any other proper purpose, the Board of Managers may provide that the membership interest transfer books of the Company shall be closed for a stated period but not to exceed in any event 50 days.  If the membership interest transfer books are closed for the purpose of determining Members entitled to notice of, or to vote at, a meeting of Members, such books shall be closed for at least 10 days immediately preceding such meeting.  In lieu of closing the membership interest transfer books, the Board of Managers may fix in advance a date as the record date for any such determination of Members, such date in any case to be not more than 50 days and not less than 10 days prior to the date on which the particular action requiring such determination of Members is to be taken.  If the membership interest transfer books are not closed and if no record date is fixed for the determination of Members entitled to notice of, or to vote at, a meeting of Members or entitled to receive payment of a distribution, the date on which the notice of the meeting is to be mailed or the date on which the resolution of the Board of Managers declaring such distribution is adopted, as the case may be, shall be the record date for such determination of Members.

2.12    Presiding Officials at Meetings  The President shall preside at, and the Secretary shall prepare minutes of, each meeting of Members, and in the absence of either such officer, his other duties shall be performed by some person appointed at the meeting.

## ARTICLE III

## MANAGERS

3.01    Management.  The business and affairs of the Company shall be managed EXCLUSIVELY by the Board of Managers.  Subject to the restrictions imposed by law, the Certificate, or this Agreement, the Board of Managers may exercise all the powers of the Company.

3.02    Number; Election; Term; Qualification.  The first Board of Managers shall consist of the number of Managers named in the Certificate and or otherwise in the Company documents.  Thereafter, except as otherwise may be restricted by this Agreement, the number of Managers that shall constitute the entire Board of Managers shall be determined by resolution of the Board of Managers at any meeting thereof or by the Members at any meeting thereof, but shall never be less than one (1).  At each annual meeting of Members, Managers shall be elected to hold office until the next annual meeting of Members and until their successors are elected and qualified.  No Manager need be a Member, a resident of the State of Delaware, or a citizen of the United States.

3.03    Removal Except as otherwise may be provided by the Members, at any meeting of Members called expressly for that purpose, any Manager or the entire Board of Managers may be removed, with or without cause, by a vote of one or more Members whose Percentage Interests total more than fifty percent (50%).

3.04    Change in Number; Vacancies.  No decrease in the number of Managers constituting the entire Board of Managers shall have the effect of shortening the term of any incumbent Manager.  In the case of any increase in the number of Managers, or in the case of the death, retirement, resignation, or removal of a Manager, the vacancies to be filled by such increase or death, retirement, resignation, or removal may be filled by (a) the Board of Managers for a term of office

7

HCMLPHMIT00004183

continuing only until the next election of one or more Managers by the Members; or (b) the Members at any annual or special meeting of the Members.  A Manager elected to fill a vacancy shall be elected to serve for the unexpired term of his predecessor in office.

3.05    Place of Meetings .  The Board of Managers may hold its meetings in such place or places, including by telephonic or other electronic method of communication, within or without the State of Delaware as the Board of Managers may from time to time determine.

3.06    First Meeting .  Each newly elected Board of Managers may hold its first meeting, if a quorum is present, for the purpose of organization and the transaction of business immediately after and at the same place as the annual meeting of Members, and no notice of such meeting shall be necessary.

3.07    Regular Meetings .  Regular meetings of the Board of Managers may be held without notice at such times and places, including by telephonic or other electronic method of communication, as may be designated from time to time by resolution of the Board of Managers and communicated to all Managers.  Regular meetings of the Board of Managers may be held when and if needed, and no more than one regular meeting of the Board of Managers shall be required in any calendar year.

3.08    Special Meetings .  A special meeting of the Board of Managers shall be held whenever called by any Manager at such time and place, including by telephonic or other electronic method of communication, as such Manager shall designate in the notice of such special meeting.  The Manager calling any special meeting shall cause notice of such special meeting to be given to each Manager at least 24 hours before such special meeting.  Neither the business to be transacted at, nor the purpose of, any special meeting of the Board of Managers need be specified in the notice or waiver of notice of any special meeting.

3.09    Quorum; Vote .  At all meetings of the Board of Managers, a majority of the Managers fixed in the manner provided in this Agreement shall constitute a quorum for the transaction of business.  If a quorum is not present at a meeting, a majority of the Managers present may adjourn the meeting from time to time, without notice other than an announcement at the meeting, until a quorum is present.  The vote of a majority of the Managers present at a meeting at which a quorum is in attendance shall be the act of the Board of Managers, unless the vote of a different number is required by law, the Certificate, or this Agreement.

3.10    Procedure; Minutes .  At meetings of the Board of Managers, business shall be transacted in such order as the Board of Managers may determine from time to time.  The Board of Managers shall appoint at each meeting a person to preside at the meeting and a person to act as secretary of the meeting.  The secretary of the meeting shall prepare minutes of the meeting that shall be delivered to the Secretary of the Company for placement in the minute book of the Company.

3.11    Presumption of Assent .  A Manager of the Company who is present at any meeting of the Board of Managers at which action on any matter is taken shall be presumed to have assented to the action unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent to such action with the person acting as secretary of the meeting before the adjournment thereof, or shall forward any dissent by certified or registered mail to the Secretary of the Company immediately after the adjournment of the meeting.  Such right to dissent shall not apply to a Manager who voted in favor of such action.

3.12    Compensation .  Except as otherwise may be restricted in this Agreement, Managers, in their capacity as Managers, may receive, by resolution of the Board of Managers, a stated salary or a fixed sum and expenses of attendance, if any, for attending meetings of the Board of Managers.  No Manager shall be precluded from serving the Company in any other capacity or receiving compensation therefor.

## ARTICLE IV

## COMMITTEES

4.01    Designation .  The Board of Managers may, by a resolution adopted by a majority of the entire Board of Managers, designate executive and other committees.

8

4.02     Number; Qualification; Term .  Each committee shall consist of one or more Managers appointed by resolution adopted by a majority of the entire Board of Managers.  The number of committee members may be increased or decreased from time to time by resolution adopted by a majority of the entire Board of Managers.  Each committee member shall serve as such until the expiration of his term as a Manager or his earlier resignation, unless sooner removed as a committee member or as a Manager.

4.03     Authority .  The executive committee, to the extent provided in the resolution establishing such committee, shall have and may exercise all of the authority of the Board of Managers in the management of the business and affairs of the Company.  Each other committee, to the extent expressly provided for in the resolution establishing such committee, shall have and may exercise all of the authority of the Board of Managers in such other matters and affairs concerning the Company.  However, no committee shall have the authority of the Board of Managers in reference to any of the following:

(a)     amending the Certificate;

(b)     approving a plan of merger or consolidation;

(c)     recommending to the Members the sale, lease, or exchange of all or substantially all of the property and assets of the Company other than in the usual and regular course of its business;

(d)     recommending to the Members a voluntary dissolution of the Company or a liquidation thereof;

(e)     filling vacancies in, or removing members of, the Board of Managers or of any committee thereof;

(f)     filling any vacancy to be filled by reason of an increase in the number of Managers;

(g)     electing or removing officers or committee members;

(h)     fixing the compensation of any committee member; or

(i)     altering or repealing any resolution of the Board of Managers that, by its term, provides that it shall not be amendable or repealable.

4.04     Committee Changes .  The Board of Managers shall have the power at any time to fill vacancies in, to change the Membership of, and to discharge any committee.  However, a committee member may be removed by the Board of Managers only if, in the judgment of the Board of Managers, the best interests of the Company will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.

4.05     Regular Meetings .  Regular meetings of any committee may be held without notice at such times and places, including by telephonic or other electronic methods of communication, as may be designated from time to time by resolution of the committee and communicated to all committee members.

4.06     Special Meetings .  A special meeting of any committee may be held whenever called by any committee member at such time and place, including by telephonic or other electronic methods of communication, as such committee member shall designate in the notice of such special meeting.  The committee member calling any special meeting shall cause notice of such special meeting to be given to each committee member at least 24 hours before such special meeting.  Neither the business to be transacted at, nor the purpose of, any special meeting of any committee need be specified in the notice or waiver of notice of any special meeting.

4.07     Quorum; Majority Vote .  At all meetings of any committee, a majority of the number of committee members designated by the Board of Managers shall constitute a quorum for the transaction of business.  If a quorum is not present at a meeting of any committee, a majority of the committee members present may adjourn the meeting from time to time, without notice other than an announcement at the meeting, until a quorum is present.  The vote of a majority of the committee members present at any meeting at which a quorum is in attendance shall be the act of a committee, unless the vote of a different number is required by law, the Certificate, or this Agreement.

9

HCMLPHMIT00004185

4.08     Minutes .  Each committee shall cause minutes of its proceedings to be prepared and shall report the same to the Board of Managers.  The minutes of the proceedings of each committee shall be delivered to the Secretary of the Company for placement in the minute books of the Company.

4.09     Compensation .  Except as otherwise may be restricted in this Agreement, committee members may, by resolution of the Board of Managers, be allowed a stated salary or a fixed sum and expenses of attendance, if any, for attending any committee meetings.

4.10     Responsibility .  The designation of any committee and the delegation of authority to it shall not operate to relieve the Board of Managers or any Manager of any responsibility imposed upon it or such Manager by law.

## ARTICLE V

### GENERAL PROVISIONS RELATING TO MEETINGS

5.01     Notice  Whenever by law, the Certificate, or this Agreement notice is required to be given to any Member, Manager, or committee member and no provision is made as to how such notice shall be given, it shall be construed to mean that notice may be given either (a) in person; (b) in writing, by mail; (c) by telegram, telex, cable, telecopy or facsimile transmission, or similar means; or (d) by any other method permitted by law.  Any notice required or permitted to be given hereunder (other than personal notice) shall be addressed to such Member, Manager, or committee member at his address as it appears on the books on the Company or, in the case of a Member, on the membership interest transfer records of the Company or at such other place as such Member, Manager, or committee member is known to be at the time notice is mailed or transmitted.  Any notice required or permitted to be given by mail shall be deemed to be delivered and given at the time when such notice is deposited in the United States mail, postage prepaid.  Any notice required or permitted to be given by telegram, telex, cable, telecopy or facsimile transmission, or similar means shall be deemed to be delivered and given at the time transmitted.

5.02     Waiver of Notice .  Whenever by law, the Certificate, or this Agreement any notice is required to be given to any Member, Manager, or committee member of the Company, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before or after the time notice should have been given, shall be equivalent to the giving of such notice.  Attendance of a Manager or Member at a meeting shall constitute a waiver of notice of such meeting, except where a Manager or Member attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

5.03     Telephone and Similar Meetings  Members, Managers, or committee members may participate in and hold a meeting by means of a conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other.  Participation in such a meeting shall constitute presence in person at such meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

5.04     Action Without Meeting .  Any action that may be taken, or is required by law, the Certificate, or this Agreement to be taken at a meeting of the Members, the Board of Managers, or a committee thereof may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by the Members owning the required Percentage Interests of all Members (as set forth herein for the respective action or decision), a majority of the  Managers or committee members, as the case may be, entitled to vote with respect to the subject matter thereof, and such consent shall have the same force and effect as a vote of such Members, Managers, or committee members, as the case may be, and may be stated as such in any document filed with the Secretary of State of Delaware or in any certificate or other document delivered to any person.  The consent may be in one or more counterparts so long as each Member, Manager, or committee member signs one of the counterparts.  The signed consent shall be placed in the minute books of the Company.

## ARTICLE VI

### OFFICERS AND OTHER AGENTS

HCMLPHMIT00004186

6.01     <u>Number; Titles; Election; Term</u>  The Company shall have a president, one or more vice presidents (and, in the case of each vice president, with such descriptive title, if any, as the Board of Managers shall determine), a secretary, a treasurer, and such officers and agents as the Board of Managers may deem desirable.  The Board of Managers shall elect a president, vice president, treasurer, and secretary at its first meeting at which a quorum shall be present after the annual meeting of Members or whenever a vacancy exists.  The Board of Managers then, or from time to time, may also elect or appoint one or more other officers or agents as it shall deem advisable.  Except as otherwise may be provided by separate agreement, each officer and agent shall hold office for the term for which he is elected or appointed and until his successor has been elected or appointed and qualified.  Unless otherwise provided in the resolution of the Board of Managers electing or appointing an officer or agent, his term of office shall extend to and expire at the meeting of the Board of Managers following the next annual meeting of Members or, if earlier, at his death, resignation, or removal.  Any two or more offices may be held by the same person.  No officer or agent need be a Member, a Manager, a resident of the State of Delaware, or a citizen of the United States.

6.02     <u>Removal</u> .  Any officer or agent elected or appointed by the Board of Managers may be removed by a majority of the Board of Managers only if, in the judgment of a majority of the Board of Managers, the best interests of the Company will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Election or appointment of an officer or agent shall not of itself create contract rights.

6.03     <u>Vacancies</u> .  Any vacancy occurring in any office of the Company may be filled by the Board of Managers.

6.04     <u>Authority</u> .  Officers shall have such authority and perform such duties in the management of the Company as are provided in this Agreement or as may be determined by resolution of the Board of Managers not inconsistent with this Agreement.

6.05     <u>Compensation</u> .  Except as otherwise may be provided by separate agreement, the compensation, if any, of officers  or any salaried employee shall be fixed, increased, or decreased from time to time by the Board of Managers, provided, however, that the Board of Managers may by resolution delegate to any one or more officers of the Company the authority to fix such compensation.

6.06     <u>Chairman of the Board</u> .  The Chairman of the Board, if any, shall be an officer of the Company and, subject to the direction of the Board of Managers, shall perform such executive, supervisory, and management functions and duties as may be assigned to him from time to time by the Board of Managers.

6.07     <u>President, CEO and COO</u> .  The Board of Managers may designate and appoint a President, CEO and/or COO, with rights, duties and responsibilities established by the Board of Managers.

6.08     <u>Vice Presidents</u> .  Each Vice President shall have such powers and duties as may be prescribed from time to time by the Board of Managers or as may be delegated from time to time by the President and (in the order as designated by the Board of Managers, or in the absence of such designation, as determined by the length of time each has held the office of Vice President continuously) shall exercise the powers of the President during that officer's absence or inability to act.

6.09     <u>Treasurer</u> .  The Treasurer shall have custody of the Company's funds and securities, shall keep full and accurate accounts of receipts and disbursements, and shall deposit all moneys and valuable effects in the name and to the credit of the Company in such depository or depositories as may be designated by the Board of Managers.  The Treasurer shall audit all payrolls and vouchers of the Company; shall receive, audit, and consolidate all operating and financial statements of the Company and its various departments; shall supervise the accounting and auditing practices of the Company; and shall have charge of matters relating to taxation.  Additionally, the Treasurer shall have the power to endorse for deposit, collection, or otherwise all checks, drafts, notes, bills of exchange, and other commercial paper payable to the Company and to give proper receipts and discharges for all payments to the Company.  The Treasurer shall perform such other duties as may be prescribed from time to time by the Board of Managers or as may be delegated from time to time by the President.

6.10     <u>Assistant Treasurers</u> .  Each Assistant Treasurer shall perform such duties as may be prescribed from time to time by the Board of Managers or as may be delegated from time to time by the President.  The Assistant Treasurers (in the order as designated by the Board of Managers or, in the absence of such designation, as determined by the length of time each has held the office of Assistant Treasurer continuously) shall exercise the powers of the Treasurer.

11

HCMLPHMIT00004187

6.11    Secretary .  The Secretary shall maintain minutes of all meetings of the Board of Managers, of any committee, and of the Members, or consents in lieu of such minutes, in the Company's minute books, and shall cause notice of such meetings to be given when requested by any person authorized to call such meetings.  The Secretary may sign with the President, in the name of the Company, all contracts of the Company and affix the seal of the Company thereto.  The Secretary shall have charge of the certificate books, membership interest transfer books, and other documents as the Board of Managers may direct, all of which shall at all reasonable times be open to inspection by any Manager at the office of the Company during normal business hours.  The Secretary shall perform such other duties as may be prescribed from time to time by the Board of Managers or as may be delegated from time to time by the President.

6.12    Assistant Secretaries .  Each Assistant Secretary shall perform such duties as may be prescribed from time to time by the Board of Managers or as may be delegated from time to time by the President.  The Assistant Secretaries (in the order designated by the Board of Managers or, in the absence of such designation, as determined by the length of time each has held the office of Assistant Secretary continuously) shall exercise the powers of the Secretary during that officer's absence or inability to act.

## ARTICLE VII

### CAPITALIZATION AND CAPITAL ACCOUNTS

7.01    Capital Contributions .  The Capital Contributions of the Members, as set forth in the books and records of the Company, shall be paid or transferred to the Company in cash and/or property on the terms and in the manner specified by the Board of Managers.  No Member shall be entitled to make any additional Capital Contributions except as provided in Section 7.02 and 7.03 below.

7.02    Additional Capital Contributions .  If the Board of Managers determine that additional capital is required for the purposes of the Company, as set forth herein, the Board of Managers may notify the Members of the need for such additional capital and shall state the specific purposes for which the call for such additional capital is being made.  Thereupon, all Members shall have the right (but not the obligation) to make additional Capital Contributions in cash and/or property to the Company aggregating the amount of additional capital needed by the Company in the proportion of their respective Percentage Interests in the Company at the time notice is given.  The Board of Managers shall use the additional capital so contributed solely for the purposes stated in the notice to the Members.

7.03    Failure to Make Additional Capital Contributions .  If any Member chooses not to contribute its share of the additional capital needed by the Company within 14 days after notice is given to the Members of the need for such additional capital (a "Non-Contributing Member"), then the other Members shall be entitled (but not obligated) to contribute the share of such Non-Contributing Member (such Members being referred to as "Contributing Members") of the additional capital needed pro rata according to such Contributing Members' Percentage Interests at such time or such other share as otherwise agreed upon by the Contributing Members.

7.04    Effect of Failure to Make Additional Capital Contributions .  In the event of a Non-Contributing Member, the Percentage Interests of all of the Members shall be recomputed on the following basis:  Each Member's Percentage Interest immediately following the computation shall equal the percentage expression of a fraction, the numerator of which is the total Capital Contributions of such Member plus the additional Capital Contribution, if any, made by such Member pursuant to Sections 7.02 and 7.03 above, and the denominator of which is the total Capital Contributions of all of the Members plus the additional Capital Contributions made by all of the Members pursuant to Sections 7.02 and 7.03 above.

7.05    Recapitalization by Admission of Additional Members .  If additional capital is required for the purposes of the Company as set forth herein and the Board of Managers is unable to finance such capital needs by borrowing the required amounts or through notice to the existing Members of the necessity for additional Capital Contributions as provided in Section 7.02 and 7.03 above, the Board of Managers shall have the right to admit additional Members to the Company, upon receiving the other approvals required herein.  Following the admission of one or more new Members, the Percentage Interest of each Member, including the newly admitted Member(s), shall be computed as follows:  Each Member's Percentage Interest immediately following the computation shall equal the percentage expression of a fraction, the numerator of which is the total Capital Contributions of such Member and the denominator of which is the total Capital Contributions of all of the Members, including the newly admitted Members.

12

HCMLPHMIT00004188

7.06     Maintenance of Capital Accounts .  The Company shall maintain for each Member a separate Capital Account in accordance with this Section 7.06, which shall control the allocation of Profits and Losses and the division of assets upon liquidation of the Company as provided in Section 12.01.  Each Capital Account shall be maintained in accordance with the following provisions:

(a)     a Member's Capital Account shall initially be zero and shall be increased by the cash amount or Book Value of any property contributed by such Member to the Company pursuant to this Agreement, such Member's allocable share of Profits and any items in the nature of income or gains that are specially allocated to such Member pursuant to Section 8.02 and Section 8.03 hereof, and the amount of any Company liabilities assumed by such Member or which are secured by any property distributed to such Member;

(b)     such Capital Account shall be decreased by the cash amount or Book Value of any property distributed to such Member pursuant to this Agreement, such Member's allocable share of Losses and any items in the nature of deductions or losses that are specially allocated to such Member pursuant to Section 8.02 and Section 8.03 hereof, and the amount of any liabilities of the Member assumed by the Company or which are secured by any property contributed by such Member to the Company; and

(c)     if all or a portion of an Interest in the Company is Transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred Interest, provided, however, that if the Transfer causes a termination of the Company under Code Section 708(b)(1)(B), the assets of the Company shall be deemed to have been distributed to the Members (including the transferee of the Interest) in liquidation of the Company and recontributed by such Members and transferees in reconstitution of the Company.  Such deemed liquidation and reconstitution shall not cause the Company to be dissolved and/or reconstituted for purposes other than maintenance of the Capital Accounts and federal income tax.

The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Section 1.704-1(b) of the Treasury Regulations and shall be interpreted and applied in a manner consistent with such Treasury Regulations.  If the Board of Managers determines that it is prudent to modify the manner in which the Capital Accounts, or any increases or decreases to the Capital Accounts, are computed in order to comply with such Treasury Regulations, the Board of Managers may authorize such modifications, provided that it is not likely to have a material effect on the amounts distributable to any Member pursuant to Sections 8.06 and 12.01 hereof.

7.07     Negative Capital Accounts .  If any Member has a deficit balance in its Capital Account, such Member shall have no obligation to restore such negative balance or to make any Capital Contribution to the Company by reason thereof, and such negative balance shall not be considered an asset of the Company or of any Member.

7.08     Interest .  No interest shall be paid by the Company on Capital Contributions or on balances in Capital Accounts.

7.09     No Withdrawal .  No Member shall be entitled to withdraw any part of his Capital Contribution or his Capital Account or to receive any distribution from the Company, except as provided in Sections 11.02 and 12.01 of this Agreement.

7.10     Loans From Members .  Loans by a Member to the Company shall not be considered Capital Contributions.

## ARTICLE VIII

### ALLOCATIONS AND DISTRIBUTIONS

8.01     Allocation of Profits and Losses.

(a)     Allocation of Profits.  Except as provided on any Exhibit hereto, after giving effect to the allocations set forth in Section 8.02 and Section 8.03, and after giving effect to all distributions of cash or property (other than cash or

13

HCMLPHMIT00004189

property to be distributed pursuant to Section 12.01), Profits for any Fiscal Year shall be allocated to the Members in the following manner:

(i)      first, to each Member with a negative balance in its Capital Account, pro rata in accordance with such negative Capital Account balances, until such negative Capital Account balances have been eliminated;

(ii)      next, to all of the Members in accordance with their respective Percentage Interests.

(b)      Allocation of Losses.  Except as provided in any Exhibit hereto, after giving effect to the allocations set forth in Section 8.02 and Section 8.03, Losses for any Fiscal Year shall be allocated to the Members in the following manner:

(i)      to all of the Members in accordance with their respective Percentage Interests.

8.02      Special Allocations of Profits and Losses .

(a)      Minimum Gain Chargeback–Company Nonrecourse Liabilities.  If there is a net decrease in Company minimum gain during any Fiscal Year, certain items of income and gain shall be allocated (on a gross basis) to the Members in the amounts and manner described in Treasury Regulations Section 1.704-2(f) and (j)(2)(i) and (ii), subject to the exemptions set forth in Treasury Regulations Section 1.704-2(f)(2), (3), (4) and (5).  This Section 8.02(a) is intended to comply with the minimum gain chargeback requirement set forth in Treasury Regulations Section 1.704-2(f) relating to Company nonrecourse liabilities, as defined in Treasury Regulations Section 1.704-2(b)(3) and shall be so interpreted.

(b)      Minimum Gain Chargeback–Member Nonrecourse Debt.  If there is a net decrease in Member minimum gain during any Fiscal Year, certain items of income and gain shall be allocated (on a gross basis) as quickly as possible to those Members who had a share of the Member minimum gain determined pursuant to Treasury Regulations Section 1.704-2(i)(5) in the amounts and manner described in Treasury Regulations Sections 1.704-2(i)(4), (j)(2)(ii), and (j)(2)(iii).  This Section 8.02(b) is intended to comply with the minimum gain chargeback requirement set forth in Treasury Regulations Section 1.704-2(i)(4) relating to Member nonrecourse debt, as defined in Treasury Regulations Section 1.704-2(b)(4) and shall be so interpreted.

(c)      Qualified Income Offset.  If, after applying Section 8.02(a) and Section 8.02(b), any Member has an adjusted Capital Account deficit, items of Company income and gain shall be specially allocated (on a gross basis) to each such Member in an amount and manner sufficient to eliminate the adjusted Capital Account deficit of such Member as quickly as possible.  This Section 8.02(c) is intended to comply with the "qualified income offset" requirement set for the in Treasury Regulations Section 1.704-1(b)(2)(ii)(d) and shall be so interpreted.

(d)      Optional Basis Adjustments.  To the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Code Sections 734(b) or 743(b) is required, pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m), to be taken in to account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Members in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Treasury Regulations.

(f)      Partner Nonrecourse Deductions.  Partner Nonrecourse Deductions shall be allocated pursuant to Treasury Regulations Section 1.704-2(b)(4) and (i)(1) to the Member who bears the economic risk of loss with respect to such deductions.

8.03      Curative Allocations .  The Regulatory Allocations are intended to comply with certain requirements of the Treasury Regulations.  It is the intent of the Members that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with special allocations of other items of Company income, gain, loss, or deduction pursuant to this Section 8.03.  Therefore, notwithstanding any other provisions of this Article VIII, the Board of Managers shall make such offsetting special allocations of Company income, gain, loss, or deduction in whatever manner it determines appropriate so that, after such offsetting allocations are made, each Member's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Member would have had if the Regulatory Allocations were not part of the Agreement and all Company items were allocated pursuant to Section 8.01(a) and Section 8.01(b) hereof.

HCMLPHMIT00004190

8.04    Tax Allocations: Code Section 704(c) .

(a)     In accordance with Code Section 704(c) and the Treasury Regulations thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall, solely for federal income tax purposes, be allocated among the Members so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its initial Book Value.

(b)     If the Book Value of any Company asset is adjusted pursuant to Section 1.04(e)(ii) hereof, subsequent allocations of income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as under Code Section 704(c) and the Treasury Regulations thereunder.

(c)     Any elections or other decisions relating to such allocation shall be made by the Board of Managers. Allocations pursuant to this Section 8.04 are solely for purposes of federal, state, and local taxes and shall not affect or in any way be taken into account in computing any Member's Capital Account, or share of Profits, Losses, and other items or distribution pursuant to any provision of this Agreement.

8.05    Other Allocation Rules .

(a)     For purposes of determining the Profits, Losses, or any other item allocable to any period, Profits, Losses, and any such other item shall be determined on a daily, monthly, or other   basis, as determined by the Board of Managers using any permissible method under Code Section 706 and the Treasury Regulations thereunder.

(b)     For federal income tax purposes, every item of income, gain, loss, and deduction shall be allocated among the Members in accordance with the allocations under Sections 8.01, 8.02, 8.03, and 8.04.

(c)     The Members are aware of the income tax consequences of the allocations made by this Article VIII and hereby agree to be bound by the provisions of this Article VIII in reporting their shares of Company income and loss for income tax purposes.

(d)     It is intended that the allocations in Sections 8.01, 8.02, 8.03, and 8.04 hereof effect an allocation for federal income tax purposes consistent with Section 704 of the Code and comply with any limitations or restrictions therein.

8.06    Distributions of Distributable Cash .  Except as otherwise may be provided in this Agreement, the Board of Managers shall cause the Company to make distributions of Distributable Cash at such intervals and in such amounts as the Board of Managers in its sole discretion shall determine by majority vote.   Distributions of Distributable Cash shall be made to all of the Members in accordance with their respective Percentage Interests.

8.07    Working Cash Reserve .  The Board of Managers may from time to time establish a working cash reserve for capital expenditures, unforeseen contingencies, projected operating deficits, and other corporate purposes and may increase or decrease the amount in such reserve in its business judgment.

## ARTICLE IX

## CERTIFICATES

9.01    Certificated and Uncertificated Interests.   The membership interests of the Company may be either certificated interests or uncertificated interests.  As used herein, the term "certificated interests" means Interests represented by instruments in bearer or registered form, and the term "uncertificated interests" means Interests not represented by such instruments and the transfers of which are registered upon books maintained for that purpose by or on behalf of the Company.

9.02    Certificates for Certificated Interests .  The certificates for certificated interests shall be in such form as shall be approved by the Board of Managers in conformity with law.  The certificates shall be consecutively numbered, shall be entered as they are issued in the books of the Company or in the records of the Company's designated transfer agent, if any, and shall state the Member's name, the class of Interests, the Percentage Interest that such Interest represents, and such

15

HCMLPHMIT00004191

other matters as may be required by law.  The certificates shall be signed by the President or any Vice President and also by the Secretary, an Assistant Secretary, or any other officer, and may be sealed with the seal of the Company or a facsimile thereof.  If any certificate is countersigned by a transfer agent or registered by a registrar, either of which is other than the Company itself or an employee of the Company, the signatures of the foregoing officers may be a facsimile.

9.03    Lost, Stolen, or Destroyed Certificates .  The Company shall issue a new certificate in place of any certificate for Interests previously issued if the registered owner of the certificate satisfies the following requirements:

(a)    the registered owner makes proof in affidavit form that a previously issued certificate for Interests has been lost, destroyed, or stolen;

(b)     the registered owner requests the issuance of a new certificate before the Company has notice that the certificate has been acquired by a purchaser for value in good faith and without notice of an adverse claim;

(c)    the registered owner gives a bond in such form, and with such surety or sureties, with fixed or open penalty, as the Board of Managers may direct, in its discretion, to indemnify the Company (and its transfer agent and registrar, if any) against any claim that may be made on account of the alleged loss, destruction, or theft of the certificate; and

(d)    the registered owner satisfies any other reasonable requirements imposed by the Board of Managers.

When a certificate has been lost, destroyed, or stolen and the Member of record fails to notify the Company within a reasonable time after he has notice of it, if the Company registers a transfer of the Interests represented by the certificate before receiving such notification, the Member of record is precluded from making any claim against the Company for the transfer or for a new certificate.

9.04    Transfer of Interests .  Interests of the Company shall be transferable only on the books of the Company by the Members thereof in person or by their duly authorized attorneys or legal representatives, but only as authorized in this COMPANY AGREEMENT.  With respect to certificated interests, upon surrender to the Company or the transfer agent of the Company of a certificate representing Interests duly endorsed or accompanied by proper evidence of succession, assignment, or authority to transfer, the Company or its agent shall issue a new certificate to the person entitled thereto, cancel the old certificate, and record the transaction upon its books.  With respect to uncertificated interests, upon delivery to the Company of proper evidence of succession, assignment, or authority to transfer, the Company or its agent shall record the transaction upon its books.

9.05    Registered Members .  The Company shall be entitled to treat the Member of record as the Member in fact of any Interests and, accordingly, shall not be bound to recognize any equitable or other claim to or interest in such Interests on the part of any other Person, whether or not it shall have actual or other notice thereof, except as otherwise provided by law.

9.06    Legends .  If the Company is authorized to issue Interests of more than one class, each certificate representing Interests issued by the Company (a) shall conspicuously set forth on the face or back of the certificate a full statement of all of the designations, preferences, limitations, and relative rights of the Interests of each class authorized to be issued; or (b) shall conspicuously state on the face or back of the certificate that (i) such a statement is set forth in the Certificate on file in the office of the Secretary of State or in this Agreement; and (ii) the Company will furnish a copy of such statements to the record holder of the certificate without charge on written request to the Company at its principal place of business or registered office.

If the Company issues any Interests that are not registered under the Securities Act of 1933, the transfer of any such interests shall be restricted in accordance with an appropriate legend.

In the event any restriction on the transfer, or registration of the transfer, of Interests shall be imposed or agreed to by the Company, each certificate representing Interests so restricted (a) shall conspicuously set forth a full or summary statement of the restriction on the face of the certificate; (b) shall set forth such statement on the back of the certificate and conspicuously refer to the same on the face of the certificate; or (c) shall conspicuously state on the face or back of the certificate that such a restriction exists pursuant to a specified document and (i) that the Company will furnish to the record holder of the certificate without charge upon written request to the Company at its principal place of business or registered

16

office a copy of the specified document; or (ii) if such document is one required or permitted by law to be and has been filed, that such specified document is on file in the office of the Secretary of State and contains a full statement of such restriction.

## ARTICLE X

### ACCOUNTING AND RECORDS

10.01    Records and Accounting . The books and records of the Company shall be kept, and the financial position and the results of its operations recorded, in accordance with the accounting methods elected to be followed by the Company for federal income tax purposes. The books and records of the Company shall reflect all Company transactions and shall be appropriate and adequate for the Company's business.

10.02    Access to Accounting Records . All books and records of the Company shall be maintained at any office of the Company or at the Company's principal place of business, and each Member owning a Percentage Interest of at least ten percent (10%), and his duly authorized representative, shall have access to them at such office of the Company and the right to inspect and copy them at reasonable times.

10.03    Annual and Tax Information . The Company shall deliver to each Member within 90 days after the end of each Fiscal Year all information necessary for the preparation of such Member's federal income tax return. The Company shall prepare, within 120 days after the end of each Fiscal Year, a financial report of the Company for such Fiscal Year, containing a statement of the year then ended, a statement of sources and applications of funds, and a statement of reconciliation of the Capital Accounts of the Members.

10.04    Accounting Decisions . All decisions as to accounting matters, except as otherwise specifically set forth herein, shall be made by the Board of Managers. The Members may rely upon the advice of their accountants as to whether such decisions are in accordance with accounting methods followed for federal income tax purposes.

10.05    Federal Income Tax Elections . The Company may make all elections for federal income tax purposes, including, but not limited to, the following:

(a)    to the extent permitted by applicable law and regulations, the election to use an accelerated depreciation method on any depreciable unit of the assets of the Company; and

(b)    in case of a transfer of all or part of the Interest of any Member, the election pursuant to Section 734, 743, and 754 of the Code, as amended (or corresponding provisions of future law) to adjust the basis of the assets of the Company.

## ARTICLE XI

### CHANGES IN MEMBERS

The provisions of this Article XI are subject to, and may be superceded by, one or more separate agreements entered into by and among one or more Members. The provisions of this Article XI shall continue to control with respect to matters not covered by, or Members not parties to, such agreement(s).

11.01    Intentionally Blank .

11.02    Transfer and Assignment of Members' Interest . Except as approved by the Manager, plus a Member or Members owning a Percentage Interest greater than fifty percent (50%), no Member shall be entitled to Transfer any part of its Interest in the Company. The Company and, if applicable, the remaining Members shall be entitled to match the terms of the proposed Transfer, with consideration being only set forth in traditional monetary terms. If the Company and the remaining Members fail to match the proposed Transfer with regard to the purchase of the entire Interest, or portion thereof, the Member proposing to make the Transfer may move forward with the proposed Transfer. Transfers in violation of this Section 11.02 shall be effective only to the extent set forth in Section 11.05(b) hereof.

HCMLPHMIT00004193

11.03    Further Restrictions on Transfer .  No Member shall Transfer any part of his Interest in the Company:  (i) without registration under applicable federal and state securities laws, or unless he delivers an opinion of counsel satisfactory to the Company that registration under such laws is not required; or (ii) if the Interest to be sold or exchanged, when added to the total of all other Interests to be sold or exchanged in the preceding 12 consecutive months prior thereto, would result in the termination of the Company under Code Section 708.

11.04    Substitute Members .  A transferee shall have the right to become a substitute Member if (a) the requirements of Section 11.02 and 11.03 hereof are met; (b) such person executes an instrument satisfactory to the remaining Members accepting and adopting the terms and provisions of this Agreement; and (c) such person pays any reasonable expenses in connection with his or her admission as a Member.

11.05    Effect of Transfer .

(a)    Any permitted Transfer of all or any portion of a Member's Interest in the Company will take effect on the first day of the month following receipt by the Members of written notice of Transfer.  Any transferee of an Interest in the Company shall take subject to the restrictions on Transfer imposed by this Agreement.

(b)    Upon any Transfer of a Member's Interest in the Company in violation of this Agreement, and if such Member's Interest is not purchased pursuant to Section 11.01, the transferee shall have no right to participate in the management of the business and affairs of the Company or to become a Member, but such transferee shall be entitled to receive only the allocable share of Profits, Losses, Distributive Cash, and other items to which the transferor of such Interest in the Company would otherwise be entitled.

11.06    No Dissolution or Withdrawal: Advanced Consent .  Upon the occurrence of a Dissolution Event with regard to a respective Member, all remaining Members shall be deemed to automatically consent to the continuation of the business of the Company.  By executing this Agreement, however, all Members hereby consent that they shall not voluntarily cause a Dissolution Event or demand the return of Member's capital.  If any Member shall breach the agreement represented by this Section 11.06, the agreement of such breaching Member shall not be specifically performable, but shall be actionable for damages, and shall be deemed an offer of the Interest of such breaching Member for sale pursuant hereto.  The parties agree that a reasonable approximation of the damage that the Company shall experience due to breach hereof is 20% of the value of the breaching Member's Interest, or as otherwise set forth herein (whichever is greater), which shall be deducted from any payments to such Member upon dissolution or purchase of such Member's Interest hereunder.  The value of the breaching Member's Interest shall be determined pursuant to Section 11.01, to which value the said discount may then be applied in determining payments due to the breaching Member pursuant to the deemed offer of sale occurring under this Section 11.06.

## ARTICLE XII

## TERMINATION

12.01    Termination of the Company .

(a)    The Company shall be dissolved, its assets shall be disposed of, and its affairs wound up on the first to occur of the following events:

(i)    a determination by the Managers, plus the Unanimous Consent of the Members that the Company should be dissolved;

(ii)    a sale of all or substantially all of the assets of the Company;

(iii)    the expiration of the Company's term as stated in its Certificate; or

(iv)    at such earlier time as provided by applicable law.

18

HCMLPHMIT00004194

(b)        In settling accounts of the Company after dissolution, the liabilities of the Company shall be entitled to payment and the assets of the Company remaining thereafter shall be distributed to the Members in the following order, all as required by the DELAWARE LAWS:

(i)        those to creditors, in the order of priority as provided by law, except those to Members of the Company on account of their Capital Contributions;

(ii)        to the Members, pro rata, in accordance with the positive balances, if any, in their Capital Accounts; and

(iii)        to the Members in proportion to their relative Percentage Interests.

## ARTICLE XIII

### INDEMNIFICATION

13.01    <u>Indemnification of Members, Managers, and Other Persons</u> .

(a)        To the greatest extent not inconsistent with the laws and public policies of Delaware, the Company shall indemnify any Member, Manager, or officer of the Company made a party to any proceeding because such individual is or was a Member, Manager, or officer of the Company (an "Indemnitee"), as a matter of right, against all liability incurred by such individual in connection with any proceeding; provided that it shall be determined in the specific case in accordance with subsection (d) of this Section 13.01 that indemnification of such individual is permissible in the circumstances because the individual has met the standard of conduct for indemnification set forth in subsection (c) of this Section 13.01.  The Company shall advance, pay for, or reimburse the reasonable expenses incurred by an Indemnitee in connection with any such proceeding in advance of final disposition thereof if (i) the Indemnitee furnishes the Company a written affirmation of the Indemnitee's good faith belief that he or she has met the standard of conduct for indemnification described in subsection (c) of this Section 13.01; (ii) the Indemnitee furnishes the Company a written undertaking, executed personally or on such Indemnitee's behalf, to repay the advance if it is ultimately determined that such individual did not meet such standard of conduct; and (iii) a determination is made in accordance with subsection (d) that based upon facts then known to those making the determination, indemnification would not be precluded under this Section 13.01.  The undertaking described in subsection (a)(ii) above must be a general obligation of the Indemnitee, subject to such reasonable limitations as the Company may permit, but need not be secured and may be accepted without reference to financial ability to make repayment. The Company shall indemnify an Indemnitee who is wholly successful, on the merits or otherwise, in the defense of any such proceeding, as a matter of right, against reasonable expenses incurred by the individual in connection with the proceeding without the requirement of a determination as set forth in subsection (c) of this Section 13.01.  Upon demand by an Indemnitee for indemnification or advancement of expenses, as the case may be, the Company shall expeditiously determine whether the Indemnitee is entitled thereto in accordance with this Section 13.01.  The indemnification and advancement of expenses provided for under this Section 13.01 shall be applicable to any proceeding arising from acts or omissions occurring before or after the adoption of this Section 13.01.

(b)        The Company shall have the power, but not the obligation, to indemnify any individual who is or was an employee or agent of the Company to the same extent as if such individual was a Member, Manager, or officer of the Company.

(c)        Indemnification is permissible under this Section 13.01 only if (i) the Indemnitee conducted himself in good faith; (ii) he or she reasonably believed that his conduct was in, or at least not opposed to, the Company's best interest; (iii) in the case of any criminal proceeding, he or she had no reasonable cause to believe his conduct was unlawful; and (iv) such Indemnitee is not adjudged in any such proceeding to be liable for gross negligence or willful misconduct in the performance of duty.  The termination of a proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent is not, of itself, determinative that the Indemnitee did not meet the standard of conduct described in this subsection (c).

(d)        A determination as to whether indemnification or advancement of expenses is permissible shall be made by any one of the following procedures:

19

(i)      by the Board of Managers or by a majority vote consisting of Members not at the time parties to the proceeding; or

(ii)      by special legal counsel selected by the Members in the manner prescribed in subsection (d)(i) above.

(e)      An Indemnitee of the Company who is a party to a proceeding may apply for indemnification from the Company to the court, if any, conducting the proceeding or to another court of competent jurisdiction.  On receipt of an application, the court, after giving notice the court considers necessary, may order indemnification if it determines:

(i)      in a proceeding in which the Indemnitee is wholly successful, on the merits or otherwise, the Indemnitee is entitled to indemnification under this Section 13.01, in which case the court shall order the Company to pay the Indemnitee his or her reasonable expenses incurred to obtain such court ordered indemnification; or

(ii)      the Indemnitee is fairly and reasonably entitled to indemnification in view of all the relevant circumstances, whether or not the Indemnitee met the standard of conduct set forth in subsection (c) of this Section 13.01.

(f)      Indemnification shall also be provided for an Indemnitee's conduct with respect to an employee benefit plan if the individual reasonably believed his or her conduct to be in the interests of the participants in and beneficiaries of plan.

(g)      Nothing contained in this Section 13.01 shall limit or preclude the exercise or be deemed exclusive of any right under the law, by contract or otherwise, relating to indemnification of or advancement of expenses to any individual who is or was a Member, Manager, or officer of the Company or is or was serving at the Company's request as a director, officer, partner, manager, trustee, employee, or agent of another foreign or domestic company, partnership, association, limited liability company, corporation, joint venture, trust, employee benefit plan, or other enterprise, whether for profit or not.  Nothing contained in this Section 13.01 shall limit the ability of the Company to otherwise indemnify or advance expenses to any individual.  It is the intent of this Section 13.01 to provide indemnification to Indemnitees to the fullest extent now or hereafter permitted by the law consistent with the terms and conditions of this Section 13.01.  Indemnification shall be provided in accordance with this Section 13.01 irrespective of the nature of the legal or equitable theory upon which a claim is made, including, without limitation, negligence, breach of duty, mismanagement, waste, breach of contract, breach of warranty, strict liability, violation of federal or state securities law, violation of the Employee Retirement Income Security Act of 1974, as amended, or violation of any other state or federal law.

(h)      For purposes of this Section 13.01:

(i)      The term "expenses" includes all direct and indirect costs (including, without limitation, counsel fees, retainers, court costs, transcripts, fees of experts, witness fees, travel expenses, duplicating costs, printing and binding costs, telephone charges, postage, delivery service fees, and all other disbursements or out-of-pocket expenses) actually incurred in connection with the investigation, defense, settlement, or appeal of a proceeding or establishing or enforcing a right to indemnification under this Section 13.01, applicable law, or otherwise.

(ii)      The term "liability" means the obligation to pay a judgment, settlement, penalty, fine, excise tax (including an excise tax assessed with respect to an employee benefit plan), or reasonable expenses incurred with respect to a proceeding.

(iii)      The term "party" includes an individual who was, is, or is threatened to be made a named defendant or respondent in a proceeding.

(iv)      The term "proceeding" means any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative and whether formal or informal.

(v)      The Company may purchase and maintain insurance for its benefit, the benefit of any individual who is entitled to indemnification under this Section 13.01, or both, against any liability asserted against or incurred by such individual in any capacity or arising out of such individual's service with the Company, whether or not the Company would have the power to indemnify such individual against such liability.

HCMLPHMIT00004196

## ARTICLE XIV

## MISCELLANEOUS

14.01    Complete Agreement . This Agreement, the Certificate, and all other organizational documents signed by all of the Members constitute the complete and exclusive statement of agreement among the Members with respect to the matters herein. This Agreement and the Certificate replace and supersede all prior agreements by and among the Members or any of them, and no representation, statement, or condition or warranty not contained in this Agreement or the Certificate will be binding on the Members or have any force or effect whatsoever.

14.02    Governing Law . This Agreement and the rights of the parties hereunder will be governed by, interpreted, and enforced in accordance with the laws of the State of Delaware.

14.03    Binding Effect . Subject to the provisions of this Agreement relating to transferability, this Agreement will be binding upon and inure to the benefit of the Members, and their respective distributes, successors, and assigns.

14.04    Terms . Common nouns and pronouns will be deemed to refer to the masculine, feminine, neuter, singular and plural, as the identity of the Person may in the context require. Any reference to the DELAWARE LAWS, the Code or other statutes or laws will include all amendments, modifications, or replacements of the specific sections and provisions concerned.

14.05    Headings . All headings herein are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

14.06    Severability . If any provision of this Agreement is held to be illegal, invalid, or unenforceable under the present or future laws effective during the term of this Agreement, such provision will be fully severable; this Agreement will be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Agreement; and the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of such illegal, invalid, or unenforceable provision, there will be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

14.07    Multiple Counterparts . This Agreement may be executed in several counterparts, each of which will be deemed an original but all of which will constitute one and the same instrument. However, in making proof hereof it will be necessary to produce only one copy hereof signed by the party to be charged.

14.08    Additional Documents and Acts . Each Member agrees to execute and deliver such additional documents and instruments and to perform such additional acts as may be necessary or appropriate to effectuate, carry out, and perform all of the terms, provisions, and conditions of this Agreement and the transactions contemplated hereby.

14.09    No Third-Party Beneficiary . This Agreement is made solely and specifically among and for the benefit of the parties hereto, and their respective successors and assigns subject to the express provisions hereof relating to successors and assigns, and no other person will have any rights, interest, or claims hereunder or be entitled to any benefits under or on account of this Agreement as a third party beneficiary or otherwise.

14.10    References to this Agreement . Numbered or lettered articles, sections, and subsections herein contained refer to articles, sections, and subsections of this Agreement unless otherwise expressly stated.

14.11    Notices . Any notice to be given or to be served upon the Company or any party hereto in connection with this Agreement must be in writing and will be deemed to have been given and received when delivered to the address specified by the party to receive the notice. Such notices will be given to a Member at the address specified in Exhibit B hereto. Any Member or the Company may, at any time by giving five days' prior written notice to the other Members and the Company, designate any other address in substitution of the foregoing address to which such notice will be given.

HCMLPHMIT00004197

14.12 <u>Amendments</u> . Except as otherwise may be provided in this Agreement, all amendments to this Agreement must be approved by the Managers, plus one or more Members whose aggregate Percentage Interests total more than fifty percent (50%).

14.13 <u>Title to Company Property</u> . Legal title to all property of the Company will be held and conveyed in the name of the Company.

14.14 <u>Reliance on Authority of Person Signing Agreement</u> . In the event that a Member is not a natural person, neither the Company nor any Member will (a) be required to determine the authority of the individual signing this Agreement to make any commitment or undertaking on behalf of such entity or to determine any fact or circumstance bearing upon the existence of the authority of such individual; or (b) be required to see to the application or distribution of proceeds paid or credited to individuals signing this Agreement on behalf of such entity.

14.15 <u>S-Corp Election</u>. In the event the Company elects to be treated as a S-Corporation for federal tax purposes, the provisions in this Company Agreement addressing tax treatment shall be automatically amended and modified as required in order to pertain to a S-corporation.

14.16 <u>Company Indemnification</u>. In the event any Member is personally liable for any debt or obligations associated with a Company asset, then the Company agrees to indemnify such Member for any such debt or obligation in excess of his or her proportionate amount of such debt or obligation that he/she is required to pay or perform, as measured by the Percentage Interest of the Members, except as otherwise agreed by the Members.

*14.17 <u>Management by Members.</u> The Certificate of the Company and other Company documents/agreements on file and/or executed by the Member <u>may</u> reflect management by members, and not management by managers. As a result, if such is the case and the Certificate is not amended to reflect management by managers, this Agreement shall be interpreted in such a manner that all references herein to a Manager, or Managers or Board of Managers, shall be referring to the managing member(s), and as of the Effective Date hereof, since the sole member is Rand Advisors Holding Corp., a Delaware corporation, all decisions shall be made by such member, with Mark Patrick as the Director and President.*

HCMLPHMIT00004198

IN WITNESS WHEREOF, the Members have executed this Agreement to be effective as of the date first written above.

THE MEMBER (OR MANAGING MEMBER)

RAND ADVISORS HOLDING CORP.,
a Delaware corporation

By: _____
      Mark Patrick, Director and President

23

HCMLPHMIT00004199

## EXHIBIT A

### THE CLASS A MEMBERS AND INTERESTS

The sole Class A Member shall be RAND ADVISORS HOLDING CORP., a Delaware corporation, and it shall own the Percentage Interest set forth on Exhibit "B" hereto.  In addition to such other rights as a Member described in this Agreement, the holders of record of the Class A Interests shall have no additional rights.

24

HCMLPHMIT00004200

### EXHIBIT B

The Members

| Members and Addresses | Date Admitted | Class A Interest | Percentage Interest |
|---|---|---|---|
| RAND ADVISORS HOLDING CORP. 2101 Cedar Springs Road Suite 1200, Dallas, TX 75201 Attn: Mark Patrick | 8/1/2022 | 100% | 100% |

25

HCMLPHMIT00004201