**EXHIBIT 13**

## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## RAND ADVISORS, LLC

This LIMITED LIABILITY COMPANY AGREEMENT (this "***Agreement***") is entered into as of the 28th day of August, 2013 by John Honis, an individual (the "***Member***"), as the sole member of Rand Advisors, LLC, a limited liability company formed pursuant to the Delaware Limited Liability Company Act (the "***Act***").  The Member desires to form a limited liability company pursuant to the Act upon the following terms and conditions:

## ARTICLE 1
## NAME, REGISTERED AGENT AND OFFICES

The name of the Company is Rand Advisors, LLC (the "***Company***").  Its registered office in the State of Delaware is 1209 Orange Street, Wilmington, Delaware 19801, in the County of New Castle.  The name of its registered agent at such address is The Corporation Trust Company.  The principal office of the Company shall be located at such place within or without the State of Delaware, and the Company shall maintain such records as the Member shall determine from time to time.  The Company may have such other offices as the Member may designate from time to time.

## ARTICLE 2
## BUSINESS, PURPOSE, AND TERM OF COMPANY

Section 2.1    Purposes.  The purpose of the Company shall be to do all such things for which limited liability companies may be formed under the Act.

Section 2.2    Term.  The term of the Company shall commence on the date the Certificate of Formation is filed with the Delaware Secretary of State in accordance with the provisions *of* the Act and shall continue on a perpetual basis unless dissolved pursuant to ARTICLE 6 of this Agreement.  Matt McGraner is hereby designed as an "Authorized Person" for the purpose of executing the Certificate of Formation and arranging for its filing.

Section 2.3    Powers.  In addition to the purpose set forth in Section 2.1 above, the Company shall have the power:

(a)    to conduct its business, carry on its operations and have and exercise the powers granted to a limited liability company by the Act in any state, territory, district or possession of the United States, or in any foreign country that may be necessary, convenient or incidental to the accomplishment of  the purpose of the Company;

(b)    to acquire, by purchase, mortgage, lease, contribution of property or otherwise, and to own, hold, operate, maintain, finance, improve, lease, sell, convey, mortgage, transfer or dispose of any real or personal property that may be necessary, convenient or incidental to the accomplishment of the purpose of the Company;

HCMLPHMIT00003880

(c)     to enter into, perform and carry out contracts of any kind, including, without limitation, contracts with the Member or any person or other entity that directly or indirectly controls, is controlled by, or is under common control with the Member, or any agent of the Company necessary to, in connection with, convenient to, or incidental to, the accomplishment of the purpose of the Company;

(d)     to lend or borrow money and to invest its funds;

(e)     to sue and be sued;

(f)     to appoint employees and fix their compensation;

(g)     to indemnify any person; and

(h)     to guarantee obligations of an affiliate or subsidiary.

## ARTICLE 3
## CAPITAL CONTRIBUTIONS

Section 3.1     Capital Contribution by Members.  Upon the formation of the Company, the Member shall not be required to make a Capital Contribution.  Capital Contributions shall be made from time to time as the Member shall determine.

Section 3.2     Capital Accounts.  A Capital Account shall be maintained for the Member to which shall be credited (i) the Member's Capital Contributions, if any and (ii) all Company revenues.  The Capital Account shall be debited with (i) all costs, expenses, and losses of the Company and (ii) the amount of any distributions (including return of capital) made to the Member.  No interest shall be paid on the Member's Capital Account.

## ARTICLE 4
## ALLOCATIONS OF PROFITS AND DISTRIBUTIONS

Section 4.1     Allocation of Profits and Losses.  All profits and losses of the Company shall be allocated to the Member.

Section 4.2     Allocation of Distributions.  All distributions of cash or other assets of the Company shall be made to the Member when and as determined by the Member.

## ARTICLE 5
## MANAGEMENT OF THE COMPANY

Section 5.1     General.  The Member shall be the Managing Member and shall be responsible for the management of the Company.  The Managing Member shall have the right, power and authority to manage, direct and control all of the business and affairs of the Company, to transact business on behalf of the Company, to sign for the Company or on behalf of the Company or otherwise to bind the Company.

HCMLPHMIT00003881

Section 5.2    <u>Delegation of Powers of Managing Member</u>.  The Managing Member shall have full, exclusive, and complete discretion, power, and authority, subject in all cases to the other provisions of this Agreement and the requirements of applicable law, to delegate the management, control, administration, and operation of the business and affairs of the Company or the custody of the Company's assets for all purposes stated in this Agreement.  Such delegation shall be as provided in such documentation as the Managing Member shall determine.  Any such delegation shall not cause the Managing Member to cease to be the Managing Member.

Section 5.3    <u>Officers</u>.  The Managing Member may appoint individuals with or without such titles as it may elect, including the titles of President, Vice President, Treasurer, and Secretary, to act on behalf of the Company with such power and authority as the Managing Member may delegate in writing to any such persons.

Section 5.4    <u>Powers of Managing Member</u>.  The Managing Member shall have the right, power and authority, in the management of the business and affairs of the Company, to do or cause to be done any and all acts deemed by the Managing Member to be necessary or appropriate to effectuate the business, purposes and objectives of the Company at the expense of the Company, including but not limited to the execution of all documents or instruments in all matters necessary, desirable, convenient or incidental to the purpose of the Company or the making of investments of Company funds.

Section 5.5    <u>Reliance by Third Parties</u>.  Any person or entity dealing with the Company may rely on a certificate signed by the Managing Member as to:

(a)    the identity of the Managing Member;

(b)    the existence or non-existence of any fact or facts which constitute a condition precedent to acts by the Managing Member or are in any matter germane to the affairs of the Company;

(c)    the persons who or entities which are authorized to execute and deliver any instrument or document of or on behalf of the Company; or

(d)    any act or failure to act by the Company or as to any other matter whatsoever involving the Company.

Section 5.6    Actions Requiring Member Approval.  Notwithstanding any other provision of this Agreement, the written consent of the Member shall be required to approve the following matters:

(a)    the dissolution or winding up of the Company;

(b)    the merger or consolidation of the Company;

(c)    the sale, transfer, contribution, exchange, mortgage, pledge, encumbrance, lease or other disposition or transfer of all or substantially all of the assets of the Company;

3

(d)     the declaration of any distributions by the Company; and

(e)     amendments to this Agreement.

## ARTICLE 6
## DISSOLUTION

The Company shall be dissolved, and shall terminate and wind up its affairs, upon the first to occur of the following:

(a)     the determination by the Member to dissolve the Company; or

(b)     the entry of a decree of judicial dissolution pursuant to Section 18.802 of the Act.

## ARTICLE 7
## GOVERNING LAW AND JURISDICTION

This Agreement, including its existence, validity, construction and operating effect, and the rights of each of the parties hereto, shall be governed by and construed in accordance with the laws of the State of Delaware (without regard to principles of conflicts of laws).

## ARTICLE 8
## INDEMNIFICATION

Section 8.1     Indemnification and Liability.

(a)     To the maximum extent permitted by applicable law, the Managing Member shall not be liable to the Company or any other third party (i) for mistakes of judgment, (ii) for any act or omission suffered or taken by it, or (iii) for losses due to any such mistakes, action or inaction.

(b)     Except as may be restricted by applicable law, the Managing Member shall not be liable for and the Company shall indemnify the Managing Member against, and agrees to hold the Managing Member harmless from, all liabilities and claims (including reasonable attorney's fees and expenses in defending against such liabilities and claims) against the Managing Member, arising from the Managing Member's performance of its duties in conformance with the terms of this Agreement.

(c)     The Managing Member may consult with legal counsel or accountants selected by the Managing Member and, to the maximum extent permitted by applicable law, any action or omission suffered or taken in good faith in reliance and in accordance with the written opinion or advice of any such counsel or accountants (provided such counsel or accountants have been selected with reasonable care) shall be fully protected and justified with respect to the action or omission so suffered or taken.

(d)     The Company shall also have the power to indemnify the Trustee to the extent, and under the conditions and terms, as may be provided in the Trust Agreement.

4

HCMLPHMIT00003883

## ARTICLE 9
## ASSIGNMENT OF INTERESTS

The Member may Transfer all or part of its Membership Interest in the Company.

## ARTICLE 10
## WINDING UP AND DISTRIBUTION OF ASSETS

Section 10.1   Winding Up.  If the Company is dissolved, the Member shall wind up the affairs of the Company.

Section 10.2   Distribution of Assets.  Upon the winding up of the Company, subject to the provisions of the Act, the Member shall pay or make reasonable provision to pay all claims and obligations of the Company, including all costs and expenses of the liquidation and all contingent, conditional or unmatured claims and obligations that are known to the Member but for which the identity of the claimant is unknown.  If there are sufficient assets, such claims and obligations shall be paid in full and any such provision shall be made in full.  If there are insufficient assets, such claims and obligations shall be paid or provided for according to their priority and, among claims and obligations of equal priority, ratably to the extent of assets available therefore.  Any remaining assets shall be distributed to the Member.

## ARTICLE 11
## DEFINITIONS

As used herein, the following terms shall have the indicated definitions.

"*Act*" means the Delaware Limited Liability Company Act, 6 Del. C. § 18-101 et seq., as may be amended from time to time.

"*Agreement*" means this Limited Liability Company Agreement, as may be amended from time to time.

"*Capital Account*" means a separate accounting maintained with respect to the Member pursuant to section 3.2 of this Agreement.

"*Capital Contribution*" means the contribution by the Member to capital of the Company.

"*Certificate of Formation*" means the Certificate of Formation of the Company as filed with the Delaware Secretary of State on August 27, 2013, as the same may be amended from time to time.

"*Company*" means Rand Advisors, LLC, a Delaware limited liability company.

"*Managing Member*" means the Member.

"*Member*" means John Honis, an individual.

5

HCMLPHMIT00003884

"*__Membership Interest__*" means the ownership interest of the Member in the Company, including any and all rights, powers, benefits, duties or obligations conferred or imposed on the Member under the Act or this Agreement.

"*__Transfer__*" means a transfer, assignment, pledge or encumbrance relative to any Membership Interest in the Company.

**[SIGNATURE PAGE FOLLOWS]**

6

HCMLPHMIT00003885

IN WITNESS WHEREOF, the Member has executed and delivered this Agreement the day and year first above written.

SOLE MEMBER

JOHN HONIS

HCMLPHMIT00003886