**EXHIBIT 55**

# In the Matter Of:

## HIGHLAND CAPITAL MANAGEMENT, LP

19-34054-SGJ11

## SHAWN RAVER

*June 20, 2025*



800.211.DEPO (3376)
*EsquireSolutions.com*

SHAWN RAVER
HIGHLAND CAPITAL MANAGEMENT, LP

June 20, 2025
1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE                                    ) Chapter 11
                                         )
HIGHLAND CAPITAL MANAGEMENT, L.P.,       ) Case No. 19-34054-SGJ11
                                         )
REORGANIZED DEBTOR.                      )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF

SHAWN RAVER

JUNE 20, 2025

(Reported Remotely)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION of SHAWN RAVER, produced at the instance of the Defendant Dugaboy Investment Trust, and duly sworn, was taken in the above-styled and numbered cause on the 20th day of June, 2025, from 11:35 a.m. to 12:19 p.m., Central Time, via Zoom videoconference before Angelica G. Robles, CSR, in and for the State of Texas, reported by oral stenography remotely pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.



A P P E A R A N C E S:

FOR HIGHLAND CAPITAL MANAGEMENT, L.P. AND HIGHLAND CLAIM AND
TRUST:

    JOHN A. MORRIS
    PACHULSKI STANG ZIEHL & JONES, LLP
    1700 Broadway, 36th Floor
    New York, New York   10019
    Phone: (210) 561-7700
    Email: jmorris@pszjlaw.com

FOR HIGHLAND LITIGATION TRUSTEE:

    ROBERT S. LOIGMAN
    QUINN EMANUEL URQUHART & SULLIVAN LLP
    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    Phone: (212) 849-7000
    Email: robertloigman@quinnemanuel.com

FOR DUGABOY INVESTMENT TRUST:

    MICHAEL J. LANG
    CRAWFORD, WISHNEW & LANG PLLC
    1700 Pacific Ave, Suite 2390
    Dallas, Texas   75201
    Phone: (214) 817-4500
    Email: mlang@cwl.law

FOR HUNTER MOUNTAIN INVESTMENT TRUST:

    LOUIS M. PHILLIPS
    KELLY HART PITRE
    400 Poydras Street, Suite 1812
    New Orleans, Louisiana   70130
    Phone: (504) 522-1812
    Email: louis.phillips@kellyhart.com

FOR DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE:

    DAVID CURRY
    OKIN ADAMS BARTLETT CURRY LLP
    1113 Vine Street, Suite 240
    Houston, Texas   77002
    Phone: (713) 228-4100
    Email: dcurry@okinadams.com



ALSO PRESENT:

    Jeff Pomerantz

    Drew York

    Amelia Hurt

    Dennis C. Sauter



SHAWN RAVER                                                 June 20, 2025
HIGHLAND CAPITAL MANAGEMENT, LP                                        4

                          I N D E X

Appearances.....................................    2

SHAWN RAVER
        Examination by MR. LANG......................    6
        Examination by MR. CURRY.....................   15

Changes and Signature.............................   35

Reporter's Certification..........................   37

                  E X H I B I T S

DUGABOY INVESTMENT TRUST:
No.   Description                                     Page

1     Charitable DAF/CLO HoldCo Structure Chart       11



P-R-O-C-E-E-D-I-N-G-S

THE REPORTER:  We are now on the record. Today's date is June 20th, 2025, and the time is 11:35 a.m., Central Time.  This is the oral, remote deposition of Shawn Raver who is located in Dallas, Texas.

These proceedings are held in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, case being In Re Highland Capital Management, LP, Case No. 19-34054-SGJ11.

My name is Angelica Robles, Texas CSR No. 11809, administering the oath and reporting the deposition remotely for Esquire Deposition Solutions.  The witnesses been identified to me throughout attestation of Counsel.

Would all parties, starting with the Plaintiff's attorney, please state their appearances and locations for the record, and then I will swear in the witness.

MR. MORRIS:  John Morris, Pachulski, Stang, Ziehl & Jones, for Highland Capital Management, LP and Highland Claim and Trust, and I'm located in New York.

MR. LANG:  Michael Lang for Dugaboy Investment Trust, and I am in Dallas.

MR. PHILLIPS:  Louis M. Phillips, Kelly Hart, representing -- sitting in, defending Mr. Raver,



representing Hunter Mountain Investment Trust, and I'm in New Mexico.

MR. LOIGMAN:  This is Robert Loigman of Quinn, Emanuel representing the Highland Litigation Trustee. And I am in New York.

MR. CURRY:  And this is David Curry from Okin, Adams, Bartlett & Curry, on behalf of the Dallas Foundation and Crown Global Insurance, LTD, and I am in Houston.

THE REPORTER:  Mr. Raver, at this time please raise your right hand to be sworn in.

(The witness was sworn)

THE WITNESS:  I do.

THE REPORTER:  Thank you.

Please proceed, Counsel.

SHAWN RAVER,

having been first duly sworn, testified as follows:

EXAMINATION

BY MR. LANG:

Q.   Please state your name for the record.

A.   Shawn Raver.

Q.   Mr. Raver, how are you employed?

A.   I'm employed by CDM CFAD, LLC.

Q.   Can you give me those letters again?

A.   Yes.  CDM CFAD, LLC.



Q. And what does that LLC do?

A. It is basically a charitable investment, you know, fund, for a lack of a better word. But, you know, charitable investment structure.

Q. And how is CDM CFAD, LLC related to Hunter Mountain?

MR. MORRIS: Objection to the form of the question.

A. So Hunter Mountain would be an affiliate several layers below, so indirect subsidiary.

Q. (By Mr. Lang) Were you involved in the negotiation of the proposed settlement agreement in the Highland bankruptcy between Highland Capital Management and Hunter Mountain?

A. Yes. In a supporting role.

Q. Okay. What did you do in a supporting role?

A. You know, just took part in, you know, some meetings, reviewed drafts of the settlement agreement, provided comments, if I had any. You know, that was about it.

Q. And are you aware of when the negotiations began?

A. I became involved early April, right at the beginning of April.

Q. When is the first time -- let me ask this: Who initiated the settlement discussions, if you know?





SHAWN RAVER                                                    June 20, 2025
HIGHLAND CAPITAL MANAGEMENT, LP                                        8

A.   I don't know.

Q.   Under the proposed settlement agreement, Hunter Mountain received a promissory note from Highland, the Dugaboy Note.  Are you familiar with that?

A.   I am.

Q.   Okay.  Has Hunter Mountain performed any valuation on the Dugaboy note?

A.   We had engaged a valuation firm, and it is in process, but it's not finished as of today.

Q.   Does Hunter Mountain have an estimated value of the Dugaboy note?

A.   No.

Q.   What about the Kirschner Claims?  Does Hunter Mountain have an estimated value of the Kirschner Claims?

A.   Not to my knowledge, no.

Q.   Are you familiar with the structure of DAF, the DAF CLO HoldCo?

A.   Generally, yes.

Q.   Let me try and share my screen here.  I hope you guys can see the flowchart.  Do you see that?

A.   I can.

Q.   Is this an accurate depiction of the structure of the DAF, which is the Donor Advised Fund, as it exists today?

A.   No.



MR. PHILLIPS: Hold on, Shawn. Objection, Mr. Lang, sort of like and even stronger than Mr. Morris's suggestion that we limit the scope of the deposition to your objection. The court has said that the objection is not -- your client is not able to supplement your objection. We're not going to allow it to be supplemented through evidence outside the scope of the objection. And, in fact, the objection doesn't relate to the Hunter Mountain side at all, that we can figure out. So let's not challenge the authority of Mr. Patrick to sign on behalf of Hunter Mountain. So while Mr. Morris was very lenient in allowing you additional -- in allowing you leeway, we're going to be less so because your objection doesn't address, as we read it, the entire Hunter Mountain side of the settlement.

MR. LANG: Okay. You know, my issue is somebody has raised this issue. And if you're trying to buy peace and to risk the whole thing being unwound because of some capacity issue, I was just trying to get an idea of what changed in this work chart.

MR. PHILLIPS: Well, you didn't raise that as a problem. And the party who raises the problem, we know does not have standing to raise anything in connection with this transaction.

MR. CURRY: Well, Louis, do we want to go



ahead and pause and get her on the phone, or do you want to just stop and redo this next week and waste everybody's time?

MR. PHILLIPS:  No.  I'm telling Mr. Lang that we're going to allow him some leeway but not much because his objection doesn't relate to any claim -- any suggestion or assertion about the Hunter Mountain side of the transaction.

MR. CURRY:  Well, I don't want to do his job for him, but don't you think his client has an interest in not having to pay twice?

MR. PHILLIPS:  I don't think -- well, his client -- whose client?

MR. CURRY:  I said his.  We're not being asked to anything.  We're trying to make sure the money that's owed to us comes to us, but --

MR. PHILLIPS:  I don't know who you are talking about having to pay twice.

MR. LANG:  Let's sit through another deposition.  That's all.

MR. PHILLIPS:  I didn't hear that.

MR. CURRY:  We'll just sit through another deposition.  You're right.

MR. LANG:  We'll sit through another deposition, that's all I was saying.



MR. PHILLIPS:  I'm going to give you some leeway, but I'm just telling you, we're not going to allow for supplementation or amendment of the pleadings through evidence.

MR. LANG:  Understood.

Q.   (By Mr. Lang)  So, Mr. Raver, can you tell me what has changed from the flowchart that you see in what I'm going to mark as Exhibit 1?  Can you tell me what has changed between the organization chart as it exists here and how it looks today?

(Exhibit No. 1 marked)

A.   The ownership of the Charitable DAF Fund, LP has changed.

Q.   (By Mr. Lang)  Okay.  So on this flowchart, Charitable DAF HoldCo, Limited owned 100 percent of Charitable DAF Fund, LP, correct?

A.   Yes.

Q.   And Charitable DAF HoldCo, Limited no longer owns Charitable DAF Fund, LP?

A.   Correct.

Q.   Who owns Charitable DAF Fund, LP?

A.   CDM CFAD, LLC.

Q.   And does Charitable DAF HoldCo, Limited have any ownership interest, direct or indirect, you know, through whatever layers there are?  Does it have any ownership



SHAWN RAVER
HIGHLAND CAPITAL MANAGEMENT, LP

June 20, 2025

12

interest in Charitable DAF Fund, LP?

MR. PHILLIPS: Object to the form of the question.

A. No.

Q. (By Mr. Lang) Does Charitable DAF Fund, LP still own 100 percent of CLO HoldCo?

A. Yes.

Q. So, currently, just so I'm clear, the structure below -- does the structure below the Charitable DAF Fund, LP generally look the same?

A. Generally, yes, it looks the same.

Q. And then -- and then CDM CFAD, LLC now sits above Charitable DAF Fund, LP?

A. Yes.

Q. And who owns Hunter Mountain? Where do they fall?

A. They are below -- they are below CLO HoldCo, LTD. The direct owner of Hunter Mountain is Beacon Mountain, LLC.

Q. And who owns Beacon Mountain?

A. CLO HoldCo, LLC.

Q. There was a mention in Mr. Klos's deposition about a Liberty or Liberty HoldCo. Where do they fall?

A. It's another 100 percent subsidiary of CLO HoldCo, LTD.

Q. So they go across the line under CLO HoldCo?

MR. PHILLIPS: Object to the form of the



question.

A.   Yeah, I think that's correct.  Yeah.

Q.   (By Mr. Lang)  Which of -- which of the companies on the work chart on Exhibit 1 is in liquidation?

A.   Charitable DAF HoldCo, LTD.

Q.   And who currently owns, of the Hunter Mountain entities that are defined in the motion, Rand Advisors, LLC?

A.   I'm sorry.  Could you repeat that?

Q.   There's a list of Hunter Mountain entities in the motion.  They include Beacon Mountain, LLC, who we talked about, Rand Advisors, LLC, Rand PE Fund1, LLC, Rand PE Fund Management, Atlas IDF, LP, and Atlas IDF GP, LLC.  Are you familiar with those entities?

MR. MORRIS:  Object to the form of the question.

A.   Yes.

Q.   (By Mr. Lang)  Okay.  So who currently owns Rand Advisors, LLC?

A.   Charitable DAF Holdings Corp.

Q.   And who currently owns Rand PE Fund1, LP?

A.   Atlas IDF, LP.

Q.   And who currently owns Rand PE Fund Management, LLC?

A.   Charitable DAF Holdings Corp.

Q.   And Atlas IDF, LP, who owns that LP?



SHAWN RAVER
HIGHLAND CAPITAL MANAGEMENT, LP

June 20, 2025
14

A.   I think -- I always look at it as the sole limited partner as Crown Global, the insurance company on behalf of the two segregated annuity contracts.

Q.   And then Atlas IDF GP, LLC is just a general partner of Atlas IDF?

A.   Yes.

MR. LANG:  I'll pass the witness to Mr. Curry.

MR. PHILLIPS:  We have the same objection as Mr. Morris raised to Mr. Curry's participation.  And in the spirit of cooperation, we will allow 15 minutes.

MR. CURRY:  I'm going to take the time I need, Louis.  If you instruct your witness to leave, we can either deal with it today, or we'll just re-notice him, so --

MR. PHILLIPS:  That's fine.  You can do whatever you do.  I've told you what we're going to do, and then you can respond.

MR. CURRY:  Are you saying you're going to leave in 15 minutes?  Because I'll filibuster with you for 15 minutes and then completely have an obstruction issue.

MR. MORRIS:  We're going to allow you to ask questions for 15 minutes and abide by the very agreement that your partner just did.

MR. CURRY:  Well, that was on that deposition



back then, John.  He didn't make that agreement as to this deposition, and we're not agreeing to the limitation.  So objection noted.  You guys do what you want to do.

EXAMINATION

BY MR. CURRY:

Q.    Mr. Raver, my name is David Curry.  I'm with the law firm of Okin, Adams.  I represent the Dallas Foundation and Crown Global Life Insurance.  Are you familiar with those two entities?

A.    Generally, yes.

Q.    As to Crown Global, I think we were just going through this chart in here.  Are you aware of Crown Global's limited partnership interest in this structure?

A.    No, not in the structure.

Q.    No?  How about in the Rand entity structures?  So if you go down from Rand to Hunter Mountain.

MR. PHILLIPS:  Object to the form of the question.

A.    Yeah, can you be a little clearer?  I don't know what you mean by Rand.

Q.    (By Mr. Curry) Rand Advisors Fund.

A.    So Rand Advisors is the investment manager for Atlas IDF, LP.

Q.    Atlas IDF, LP, it's a limited partnership?

A.    Yes.



Q.   And who would be the limited partner?

A.   Crown Global.

Q.   Thank you.  I want to back up just a little bit and just kind of get a little bit of background information, Mr. Raver.  You say your current employer is CDM CFAD, LLC?

A.   Yes.

Q.   Is that correct?

A.   Correct.

Q.   When did you become employed there?

A.   My employment below that -- or for that entity was in March of this year.

Q.   March of '25?

A.   Correct.

Q.   Where were you employed before then?

A.   The employment agreement was with Charitable DAF HoldCo, LTD, and it would cover all the DAF entities.

Q.   So you were employed by Charitable DAF HoldCo, LTD?

A.   Yes.

Q.   The entity that's in liquidation in the Caymans?

A.   Yes.

Q.   Okay.  What was your role there?

A.   Chief Operating Officer and Associate General Counsel.

Q.   Okay.  So we talked earlier, and you said -- and



just looking here at Exhibit 1 that's up here, you said that this structure is no longer accurate.  When did CDM CFAD acquire any interest in Charitable DAF Fund -- I mean, yeah, in the Charitable DAF Fund, LTD?  I'm sorry.  Alphabet soup.  Sometimes it jumbles.

MR. MORRIS:  Objection to the form of the question.

MR. PHILLIPS:  Same objection.

MR. CURRY:  Yeah.  Let me rephrase it.

Q.   (By Mr. Curry)  I believe your testimony earlier was that Charitable DAF Fund, LP is owned by your employer, CDM CFAD, LLC.  When did your employer acquire its interest in Charitable DAF Fund, LP?

A.   I believe it was in March of 2025.  I don't remember the exact date.

Q.   Was it before or after you went to work for CDM CFAD?

A.   I don't recall.

Q.   You don't recall whether you were working for DAF HoldCo or CDM F -- we're just going to call it -- if we say CDM, can we all agree we know what we're talking about?  It's a mouthful.  Were you working at DAF HoldCo or at CDM when CDM acquired its interest in DAF Fund, LP?

A.   I just don't remember the exact date.  I don't know if it was concurrently or shortly thereafter that I


ESQUIRE
DEPOSITION SOLUTIONS

SHAWN RAVER                                          June 20, 2025
HIGHLAND CAPITAL MANAGEMENT, LP                                  18

became --

Q.   You were the CEO and General Counsel of DAF HoldCo, that was your testimony, correct?

MR. PHILLIPS:  Objection; misstating prior testimony.

MR. CURRY:  Then I'm giving him the opportunity to correct it.

MR. PHILLIPS:  Objection to the form of the question.

Q.   (By Mr. Curry)  Up until March '25, your testimony earlier was that you were the CEO and General Counsel for DAF HoldCo, correct?

MR. PHILLIPS:  Object to the form of the question.

Q.   (By Mr. Curry)  Correct?  Mr. Raver, go ahead and answer out loud.

A.   Correct.

Q.   Thank you.  Correct.  And so you're telling me you don't know whether or not you went to work for the purchaser before or after the asset was sold?

A.   I just don't remember the specific dates, and I don't know the --

(Speaking simultaneously)

Q.   (By Mr. Curry)  Did you represent DAF HoldCo as internal counsel?  Did you participate in the negotiation of



the transaction transferring ownership of DAF Fund, LP from DAF HoldCo, LTD to CDM?

MR. MORRIS:  Objection to the form of the question.

A.   I was aware of it but I didn't -- I don't know if I -- I didn't participate, I guess, you know, in the restructuring.

Q.   (By Mr. Curry)  So as the CEO and General Counsel, your input was not sought into the structure of the transaction or the resulting structure?  Is that your testimony, that you had no input?

MR. MORRIS:  Objection to the form of the question.

A.   I think you said CEO, which I wasn't.

Q.   (By Mr. Curry)  I'm sorry.  COO.

A.   Yeah, like I said, I was generally aware of it.  I just don't recall, you know, how my input was requested. But, you know, I'm understandably aware of it.

Q.   Did you -- as General Counsel, was it your responsibility to engage outside legal services?

MR. MORRIS:  Objection to the form of the question.

MR. PHILLIPS:  Objection to the form of the question.

Q.   (By Mr. Curry)  Let me -- all right -- Mr. Raver,



SHAWN RAVER                                              June 20, 2025
HIGHLAND CAPITAL MANAGEMENT, LP                                      20

tell us your roles at DAF HoldCo.  What were your titles?

MR. PHILLIPS:  Objection to the form of the question.

A.    Chief Operating Officer and Associate General Counsel.

Q.    (By Mr. Curry)  Okay.  In your role as associate General Counsel at Charitable DAF HoldCo, LTD, were your responsibilities -- did they include engagement of outside counsel?

A.    At times, yes.

Q.    Yes?  Were you asked to engage outside counsel in connection with the transaction between DAF HoldCo and CDM?

A.    Not that I recall, no.

Q.    Okay.  Do you know if outside counsel was engaged?

A.    I believe so, yes.

Q.    Do you know who that was?

A.    I don't recall.  I'd have to -- yeah, I don't remember.

Q.    Okay.  Who was the General Counsel?

MR. MORRIS:  Objection to the form of the question.

Q.    (By Mr. Curry)  Okay.  So sitting here today, your testimony is that you did not participate in any of the negotiation or drafting of the documents underlying a transaction that occurred in or around March of '25 -- 2025



whereby Charitable DAF HoldCo, LTD -- well, I'm going to say it this way -- whereby CDM CFAD, LLC acquired the sole partnership or the sole ownership interest in Charitable DAF Fund?  So that's the transaction.  Mr. Raver, do you understand when I say transaction?  Are we in agreement in what I'm talking about?

A.    I believe so, yes.

Q.    Okay.  So your testimony today is that in your capacity as Chief Operating Officer or Associate General Counsel with Charitable DAF HoldCo, LTD, that you did not participate in the drafting or the negotiation of the transaction documents; is that correct?

A.    I don't think I said I did not participate.  Yeah, I don't know -- I was aware of the transaction.  I was aware of the concerns and the reasoning for the transaction, and, you know, I was aware of the documents, but I didn't draft them.  So I guess I participated.  I just don't know how, you know, how much I participated.  I was aware of the transaction and, you know, the reasoning for it.

Q.    So you were aware of the transaction, aware of the reasoning for it -- and I'm not trying to misstate this; this is a question -- had some familiarity or engagement with the documents or -- because you said something about the documents.  I didn't quite hear you.  It was broken up. I'm trying to get that clarified.


ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

SHAWN RAVER
HIGHLAND CAPITAL MANAGEMENT, LP

June 20, 2025
22

A.   Right.   I was aware of the documentation and may have reviewed it.  So I guess I participated to some level. I just -- you know, I didn't draft the documents.  I didn't engage outside counsel for that transaction.

Q.   At the time of that transaction, who owned CDM CFAD, LLC?

A.   Tell me the transaction again.  I mean, with the redemption or the change of ownership of Charitable DAF Fund?

Q.   Yeah.  The change in ownership.

A.   At that point, CDM was owned 50 percent by Charitable DAF HoldCo, LTD and 50 percent by CDM -- or DFW Charitable Foundation.  Sorry.

Q.   Okay.  And so it was a 50/50 ownership?  How did Charitable DAF HoldCo, LTD inquire its interest in CDM CFAD?

MR. MORRIS:  Objection to the form of the question.

A.   My recollection is it contributed its interest in Charitable DAF Fund, LP.

Q.   (By Mr. Curry)  So before it contributed its 50 percent ownership interest to Charitable DAF HoldCo, LTD, was it 100 percent owned by DFW Charitable Foundation?

A.   I don't recall.

Q.   I'm sorry?

A.   I don't recall.


ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

SHAWN RAVER                                              June 20, 2025
HIGHLAND CAPITAL MANAGEMENT, LP                              23

Q.    Okay.  As we sit here today, who owns CDM CFAD?

A.    DFW Charitable Foundation.

Q.    Just to make sure -- there's a little bit of choppiness, Mr. Raver, when you first start talking.  So I'm losing a lot of your -- the beginning of your answers.  So if you can just try to be aware of that and speak a little bit more clearly.  Was your answer there that currently, now, CDM CFAD is owned by DFW Charitable Foundation?  Is that 100 percent?

A.    Right.  Yes.  100 percent.

Q.    And I think you alluded to this earlier when you were asking me to clarify which transaction I was talking about, you mentioned the redemption.  By that, did you mean the transaction in which the 50 percent ownership that Charitable DAF HoldCo had in CDM -- well, wait.  Let me back up.  When was the CDM CFAD transaction?  When did that occur?

A.    I believe it was the end of March of 2025.

Q.    Okay.  So let me back up because I want to make sure we're establishing a timeline correctly here.

So before -- before CDM CFAD contributed 50 percent interest into Charitable DAF HoldCo, right, we all agree that the structure for CLO HoldCo, LTD, would you agree, Mr. Raver, that the chart that's on the screen as Exhibit 1 was what was accurate --



SHAWN RAVER                                          June 20, 2025
HIGHLAND CAPITAL MANAGEMENT, LP                              24

        MR. PHILLIPS:  Object to the form of the

question.

        Q.    (By Mr. Curry) -- before the CDM transaction?

        A.    Yes.

        Q.    Okay.

        A.    Well, let me correct.  I think the GP was

different.  It was a different GP.  It was not Charitable

DAF GP, LLC at that time, so I need to correct that.

        Q.    Was it CDH GP, LTD?

        A.    Yes.

        Q.    And who formed that entity?

        A.    It would've been Cayman counsel.  I don't know who

specifically would have formed it.

        Q.    Okay.  So noting that discrepancy -- there's

another issue there -- so the GP's been replaced by a new

entity, and -- but before Charitable DAF HoldCo acquires its

50 percent interest in CDM CFAD, it owned 100 percent

Charitable DAF Fund, LP, correct?

        A.    Can you repeat that?  I'm sorry.

        Q.    CDM CFAD, before it was inserted into the

structure, so before it contributed its interest and before

the March '25 transaction we were talking about before,

Charitable DAF Fund, LP was owned 100 percent by Charitable

DAF HoldCo, LTD, right, right here as it says on Exhibit 1?

        A.    Yes.



Q.   That's correct as far as you know, right?

A.   Yes.

Q.   Do you have any reason to believe that it would have been incorrect at anytime before the transaction with CDM CFAD?

A.   Not to my knowledge, no.

Q.   No?  Okay.

MR. PHILLIPS:  David, we're three minutes over.  I'm going to give you another two minutes.  That will give you 20.

MR. CURRY:  Thank you, Louis.  I should be able to wrap it up.  If you give me 25, we'll definitely be done without a fight.

Q.   (By Mr. Curry)  So, Mr. Raver, when CDM CFAD contributed its 50 percent interest into Charitable DAF, so at this point, Charitable DAF HoldCo would own CDM CFAD, 50 percent; it's jointly owned with DFW Charitable Foundation, correct?

A.   Yes.

Q.   And so when CDM CFAD contributed its 50 percent interest in itself, did it own any assets?

MR. PHILLIPS:  Objection to the form of the question.

Q.   (By Mr. Curry)  Did CDM own any assets?

A.   I'm not sure I understand the question.



Q.    Do you know what assets are?

A.    Yes.

Q.    Do you know what ownership is?

A.    Yes.

Q.    Did CDM own any assets when it contributed its 50 percent interest into Charitable DAF HoldCo?

A.    I don't know.

Q.    Okay.  CDM, at some point, acquired 100 percent ownership of Charitable DAF Fund, LP, correct?

A.    Yes.

Q.    Other than its ownership of Charitable DAF Fund, LP, does CDM own any assets, any other assets?

A.    No.

Q.    I'm sorry.  I didn't hear you.

A.    No.

Q.    No?  Okay.  So initially -- and I want to make sure I have the steps correct.  So initially, we have this chart up here, Exhibit 1.  We have Charitable DAF HoldCo.  It holds 100 percent Charitable DAF Fund.  Charitable DAF HoldCo acquires a 50 percent interest in CDM CFAD and then transfers its interest of Charitable DAF Fund, LP to CDM.  And at the end of that transaction, if we are looking back at Exhibit 1, and I want to make sure -- I think I understand this correctly, but I just want to make sure -- that Charitable DAF HoldCo, LTD, once -- so it now owns CDM



CFAD 50 percent, right, and no longer owns an interest in Charitable DAF Fund, LP; is that correct?  That's the change that occurred?  Before the redemption -- I understand there's another transaction.  But before --

MR. PHILLIPS:  Object to the form.

Q.   (By Mr. Curry)  -- the redemption, the structure would have been Charitable DAF HoldCo, LTD owning CDM CFAD, which then held the rights to Charitable DAF Fund, LP.  Is that the resulting structure?

A.   Yes.

Q.   Yes?  Okay.  So the transaction through which Charitable DAF HoldCo, LTD transferred its interest, you said you were familiar with.  What was the consideration that was received by DAF HoldCo for the transfer of the Charitable DAF Fund, LP interest?

A.   It would've been the interest in CDM CFAD, LLC.

Q.   Right.  So they gave 50 percent of all their assets, what they didn't return?

MR. PHILLIPS:  Object to the form of the question.

A.   I'm not sure I follow.  They contributed --

Q.   Well, let me walk you through it.  DAF owned -- DAF Fund HoldCo owned Fund, LP 100 percent.  When CDM was inserted in between it, it owned 50 percent of CDM.  The other 50 percent was owned by DFW.  So now, because it only



owns 50 percent of the company that now owns all of the assets, it owns 50 percent of all the assets.  Is that not correct?

MR. PHILLIPS:  Object to the form of the question.

A.   Yeah.  I guess I just don't understand your question.

Q.   (By Mr. Curry)  What was the consideration given by CDM to DAF HoldCo in exchange for DAF HoldCo's 100 percent interest in DAF Fund, LP?  What consideration was provided?

MR. PHILLIPS:  Objection to the form of the question.

A.   Again, my recollection, and I don't -- clearly don't recall all the steps of the restructuring, but they got an LLC interest for -- in consideration for its contribution.

Q.   (By Mr. Curry)  An LLC interest in -- sir, help me understand --

MR. PHILLIPS:  24-minute mark, David, so one more minute.

MR. CURRY:  Well, sorry.  We need some follow-up here.

MR. MORRIS:  You're going to have one more minute.  That's what we agreed to.

MR. PHILLIPS:  Yeah. One more minute.

MR. CURRY:  Well, we can press pause and call Judge Jernigan, or you guys can leave, and we'll note on the record that you're leaving over --

MR. MORRIS:  You can do whatever you want. We gave you 15.  Then we gave you 20.  You said you only needed 25.  We're done.  One more minute.  Go ahead.

MR. CURRY:  Well, your witness is kind of giving me a little bit of issue here.  And I notice that as we get to the questions that are important to what you guys are objecting on us, you're being the most obstructionist. So if you want to continue that, John, then I'm going to assume you're waving your argument to our standing.

(Speaking simultaneously)

MR. MORRIS:  Don't be ridiculous, number one.

MR. CURRY:  It's absurd as you're being, John.

MR. MORRIS:  What I'm trying to do, David, is to abide by the very agreement that we just reached when you said 25 minutes would be enough.  I'm just looking at the clock.

MR. CURRY:  I just assumed that he would answer the questions.  I didn't realize he would say he didn't know what assets were or what it meant to own something.  We had to walk through a few more things.



MR. MORRIS:  You've got 60 seconds.  Go ahead.

MR. CURRY:  Yeah.

Q.   (By Mr. Curry)  You -- Mr. Raver, you said that it was your understanding that what DAF HoldCo received in exchange for its 100 percent ownership of DAF Fund, LP, that the only thing it received was the LLC interest in CDM CFAD?

MR. PHILLIPS:  Objection to form the question.

Q.   (By Mr. Curry)  That's it?  That's the consideration?  Because I'm trying to make sense of what you said.

A.   I'm sorry.  Can you repeat the question again?  I'm not trying to delay.  In all honesty --

Q.   It's the same question that I've been asking that I'm trying to get answered.

A.   In all honesty I didn't --

(Speaking simultaneously)

MR. PHILLIPS:  All right.  Let him finish.  He's trying to answer.

MR. CURRY:  Sorry.  Sorry.

A.   Yeah, in all honesty, I didn't review this restructuring, for purposes of your questioning because Crown Global has never had any ownership in this structure.  So I guess I just wasn't expecting the questions.



Q.   (By Mr. Curry)  Well, my other client does.  Let's back this up.  So you worked at Charitable DAF HoldCo, LTD, right?

MR. MORRIS:  Last question.

A.   I did.

Q.   (By Mr. Curry)  It's a limited partnership, correct?

A.   I think it's an exempted limited company.

Q.   Limited company?  Okay.  Are you familiar with the limited company agreement?

MR. MORRIS:  John --

Q.   (By Mr. Curry)  Are you familiar with the limited company agreement?

A.   Generally, yes.

Q.   Okay.  Who -- the limited company economic interest, the participation interest, who --

MR. MORRIS:  Louis, I really don't want to do this all day.  It's your witness, but this is not --

MR. PHILLIPS:  Yeah.  I think we're done.

MR. CURRY:  Hey, guys, you agreed to make him available for two hours, and it's only been an hour.

MR. PHILLIPS:  Not to you.

MR. MORRIS:  We didn't reach any agreement with you because you didn't have the courtesy of contacting us all --



MR. PHILLIPS:  Right.

MR. CURRY:  Yeah, John, because you've been assuming that we were affiliated with people that we're not. And you've been talking to them instead of getting back to us --

(Speaking simultaneously)

MR. MORRIS:  They -- they --

MR. CURRY:  -- you could have reached out to us.

MR. MORRIS:  I sent you an e-mail earlier this week that you failed to respond to, true?

MR. CURRY:  You're right.  You asked me to file something and I haven't filed it.  I'll get it filed.

(Speaking simultaneously)

MR. MORRIS:  You don't know how -- you don't know how to serve a subpoena?  Is this new to you?  You don't know how to serve a subpoena?

(Speaking simultaneously)

MR. CURRY:  I'll tell you what --

MR. MORRIS:  You don't know how to reach out and say I'd like to take a deposition?  You can say, I'd like to take a deposition.  You can see --

(Speaking simultaneously)

MR. CURRY:  You know what?  That's fine, guys.  I'll tell you what.  Here's what we'll do --



SHAWN RAVER                                                    June 20, 2025
HIGHLAND CAPITAL MANAGEMENT, LP                                          33

(Speaking simultaneously)

MR. MORRIS:  We're done.

MR. PHILLIPS:  Yeah.  Clearly -- clearly this a --

MR. CURRY:  Fine.  I didn't notice this deposition.  I didn't participate in it.  We'll see you guys Monday and Tuesday.  We'll see you Monday and Tuesday.

And we're not doing it by Zoom, Louis.  You are coming to Dallas.

MR. MORRIS:  Right.  Good luck.

MR. PHILLIPS:  Good luck with that.

MR. CURRY:  Hey, Louis, there's full knowledge of all this that's out there, right?

MR. MORRIS:  Hey, let's not do this.  I'm shutting this down.

MR. CURRY:  I would assume -- hey, Louis.  Louis, stop.  This is a question for you.

(Speaking simultaneously)

MR. MORRIS:  We're shutting this down.  Madame Court Reporter, let's go off the record, please.

(Speaking simultaneously)

MR. PHILLIPS:  Madame Court Reporter, let's go off the record, please.

MR. CURRY:  Louis -- yeah, we can go off the record.  Absolutely.  Go off the record.



SHAWN RAVER
HIGHLAND CAPITAL MANAGEMENT, LP

June 20, 2025
34

THE REPORTER:  We are off the record at 12:19.

(Proceedings terminated at 12:19 p.m.)



**SHAWN RAVER**
**HIGHLAND CAPITAL MANAGEMENT, LP**

June 20, 2025
35

CHANGES AND SIGNATURE

WITNESS NAME:  SHAWN RAVER                    DATE: JUNE 20, 2025

PAGE        LINE        CHANGE                          REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Signature: _____ Date: _____



**SHAWN RAVER**
**HIGHLAND CAPITAL MANAGEMENT, LP**

June 20, 2025
36

I, SHAWN RAVER, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

_____
SHAWN RAVER

THE STATE OF _____)

COUNTY OF _____)

Before me, _____ on this day personally appeared SHAWN RAVER, known to me (or proved to me under oath or through _____, (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of _____, 2025.

_____
Notary Public in and for
The State of _____



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


IN RE                                  ) Chapter 11
                                       )
HIGHLAND CAPITAL MANAGEMENT, L.P.,     ) Case No. 19-34054-SGJ11
                                       )
REORGANIZED DEBTOR.                    )

*************************************************************
REPORTER'S CERTIFICATION
ORAL DEPOSITION OF SHAWN RAVER
JUNE 20, 2025

I, Angelica G. Robles, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, SHAWN RAVER, was duly sworn by the officer and the transcript of the oral deposition is a true record of the testimony given by the witness;

I further certify that pursuant to FRCP Rule 30(f)(1) that the signature of the deponent:

XXX was requested by the deponent or a party before the completion of the deposition and that the signature is to be before any notary public and returned within 30 days from the date of receipt of the transcript. If returned, the attached Changes and Signature Pages contains any changes and the reasons therefore;

___ was not requested by the deponent or a party before the completion of the deposition.

I further certify that I am neither counsel for,



related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified to by me this 21st day of June, 2025.

_____
ANGELICA G. ROBLES, TEXAS CSR 11809
Expiration Date: 02-28-2027
Esquire Deposition Solutions
1700 Pacific Avenue, Suite 1000
Dallas, Texas   75204
Firm Registration No. 286

SHAWN RAVER
HIGHLAND CAPITAL MANAGEMENT, LP

June 20, 2025
Index: 1..back

**1**

**1**
11:8,11
13:4 17:1
23:25
24:24
26:18,23

**100**
11:15
12:6,22
22:22
23:9,10
24:17,23
26:8,19
27:23
28:10
30:6

**11809**
5:11

**11:35**
5:3

**12:19**
34:2,3

**15**
14:11,20,
21,23
29:6

**19-34054-
SGJ11**
5:9

**2**

**20**
25:10
29:6

**2025**
5:3 17:14
20:25
23:18

**20th**
5:3

**24-minute**
28:20

**25**
16:12
18:10
20:25
24:22
25:12
29:7,20

**5**

**50**
22:11,12,
21 23:14,
22 24:17
25:15,17,
20 26:6,
20 27:1,
17,24,25
28:1,2

**50/50**
22:14

**6**

**60**
30:1

**A**

**a.m.**
5:3

**abide**
14:23
29:19

**Absolutely**
33:25

**absurd**

29:16

**accurate**
8:22 17:2
23:25

**acquire**
17:3,12

**acquired**
17:23
21:2 26:8

**acquires**
24:16
26:20

**Adams**
6:7 15:7

**additional**
9:12

**address**
9:13

**administeri
ng**
5:11

**Advised**
8:23

**Advisors**
13:7,11,
18 15:21,
22

**affiliate**
7:9

**affiliated**
32:3

**agree**
17:21
23:23,24

**agreed**
28:25
31:20

**agreeing**
15:2

**agreement**
7:12,18
8:2 14:23
15:1
16:15
21:5
29:19
31:10,13,
23

**ahead**
10:1
18:15
29:7 30:2

**allowing**
9:12

**alluded**
23:11

**Alphabet**
17:4

**amendment**
11:3

**Angelica**
5:10

**annuity**
14:3

**answers**
23:5

**anytime**
25:4

**appearances**
5:16

**April**
7:22,23

**argument**
29:13

**assertion**
10:7

**asset**
18:20

**assets**

25:21,24
26:1,5,12
27:18
28:2
29:24

**associate**
16:23
20:4,6
21:9

**assume**
29:13
33:16

**assumed**
29:22

**assuming**
32:3

**Atlas**
13:12,21,
25 14:4,5
15:23,24

**attestation**
5:13

**attorney**
5:16

**authority**
9:10

**aware**
7:21
15:12
19:5,16,
18 21:14,
16,18,20
22:1 23:6

**B**

**back**
15:1 16:3
23:15,19
26:22
31:2 32:4



SHAWN RAVER
HIGHLAND CAPITAL MANAGEMENT, LP

background
16:4

bankruptcy
5:7 7:13

Bartlett
6:7

basically
7:2

Beacon
12:17,18
13:10

began
7:21

beginning
7:23 23:5

behalf
6:7 9:10
14:2

bit
16:3,4
23:3,7
29:9

broken
21:24

buy
9:17

---

**C**

call
17:20
29:2

capacity
9:19 21:9

Capital
5:8,20
7:13

case
5:8,9

---

Cayman
24:12

Caymans
16:20

CDH
24:9

CDM
6:23,25
7:5 11:22
12:12
16:5
17:2,12,
17,20,21,
22,23
19:2
20:12
21:2
22:6,11,
12,15
23:1,8,
15,16,21
24:3,17,
20 25:5,
14,16,20,
24 26:5,
8,12,20,
21,25
27:7,16,
23,24
28:9 30:7

Central
5:4

CEO
18:2,11
19:8,14

CFAD
6:23,25
7:5 11:22
12:12
16:5
17:2,12,
17 21:2
22:6,15
23:1,8,

---

16,21
24:17,20
25:5,14,
16,20
26:20
27:1,7,16
30:7

challenge
9:9

change
22:8,10
27:2

changed
9:20
11:7,9,13

charitable
7:2,4
11:12,15,
16,18,19,
21,23
12:1,5,9,
13 13:5,
19,24
16:15,17
17:3,4,
11,13
20:7
21:1,3,10
22:8,12,
13,15,19,
21,22
23:2,8,
15,22
24:7,16,
18,23
25:15,16,
17 26:6,
9,11,18,
19,21,25
27:2,7,8,
12,15
31:2

chart
9:20 11:9

---

13:4
15:12
23:24
26:18

Chief
16:23
20:4 21:9

choppiness
23:4

claim
5:21 10:6

Claims
8:13,14

clarified
21:25

clarify
23:12

clear
12:8

clearer
15:19

client
9:5
10:10,13
31:1

CLO
8:17
12:6,16,
19,22,24
23:23

clock
29:21

comments
7:19

companies
13:3

company
14:2 28:1
31:8,9,
10,13,15

---

completely
14:21

concerns
21:15

concurrentl
y
17:25

connection
9:23
20:12

considerati
on
27:13
28:8,10,
16 30:11

contacting
31:24

continue
29:12

contracts
14:3

contributed
22:18,20
23:21
24:21
25:15,20
26:5
27:21

contributio
n
28:17

COO
19:15

cooperation
14:11

Corp
13:19,24

correct
11:16,20
13:2
16:7,8,13

---


ESQUIRE
DEPOSITION SOLUTIONS

18:3,7,
12,15,17,
18 21:12
24:6,8,18
25:1,18
26:9,17
27:2 28:3
31:7

**correctly**
23:20
26:24

**counsel**
5:14 6:15
16:24
18:2,11,
25 19:8,
19 20:5,
7,9,11,
14,19
21:10
22:4
24:12

**court**
5:7 9:4
33:20,22

**courtesy**
31:24

**cover**
16:16

**Crown**
6:8 14:2
15:8,11,
12 16:2
30:24

**CSR**
5:10

**current**
16:5

**Curry**
6:6,7
9:25
10:9,14,
22 14:8,

12,19,25
15:5,6,21
17:9,10
18:6,10,
15,24
19:8,15,
25 20:6,
22 22:20
24:3
25:11,14,
24 27:6
28:8,18,
22 29:2,
8,16,22
30:3,4,
10,21
31:1,6,
12,20
32:2,8,
12,19,24
33:5,12,
16,24

**Curry's**
14:10

---

**D**

---

**DAF**
8:16,17,
23 11:12,
15,16,18,
19,21,23
12:1,5,9,
13 13:5,
19,24
16:15,16,
17 17:3,
4,11,13,
19,22,23
18:2,12,
24 19:1,2
20:1,7,12
21:1,3,10
22:8,12,
15,19,21

23:15,22
24:8,16,
18,23,24
25:15,16
26:6,9,
11,18,19,
21,25
27:2,7,8,
12,14,15,
22,23
28:9,10
30:5,6
31:2

**Dallas**
5:5,8,23
6:7 15:7
33:9

**date**
5:3
17:15,24

**dates**
18:21

**David**
6:6 15:6
25:8
28:20
29:18

**day**
31:18

**deal**
14:14

**defending**
5:25

**defined**
13:7

**delay**
30:14

**depiction**
8:22

**deposition**
5:4,12
9:3

10:20,23,
25 12:20
14:25
15:2
32:21,22
33:6

**DFW**
22:13,22
23:2,8
25:17
27:25

**direct**
11:24
12:17

**discrepancy**
24:14

**discussions**
7:25

**District**
5:7

**Division**
5:8

**documentation**
22:1

**documents**
20:24
21:12,16,
23,24
22:3

**Donor**
8:23

**draft**
21:16
22:3

**drafting**
20:24
21:11

**drafts**
7:18

**Dugaboy**

5:22 8:4,
7,11

**duly**
6:17

---

**E**

---

**e-mail**
32:10

**earlier**
16:25
17:10
18:11
23:11
32:10

**early**
7:22

**economic**
31:15

**Emanuel**
6:4

**employed**
6:22,23
16:9,14,
17

**employer**
16:5
17:11,12

**employment**
16:10,15

**end**
23:18
26:22

**engage**
19:20
20:11
22:4

**engaged**
8:8 20:14

**engagement**



800.211.DEPO (3376)
EsquireSolutions.com

20:8
21:22

**entire**
9:14

**entities**
13:7,9,13
15:9
16:16

**entity**
15:15
16:10,20
24:11,16

**Esquire**
5:12

**establishing**
23:20

**estimated**
8:10,14

**everybody's**
10:2

**evidence**
9:6 11:4

**exact**
17:15,24

**EXAMINATION**
6:18 15:4

**exchange**
28:9 30:6

**exempted**
31:8

**exhibit**
11:8,11
13:4 17:1
23:25
24:24
26:18,23

**exists**
8:23 11:9

**expecting**

30:25

————————
        **F**
————————

**fact**
9:7

**failed**
32:11

**fall**
12:15,21

**familiar**
8:4,16
13:13
15:8
27:13
31:9,12

**familiarity**
21:22

**fight**
25:13

**figure**
9:9

**file**
32:13

**filed**
32:13

**filibuster**
14:20

**fine**
14:16
32:24
33:5

**finish**
30:19

**finished**
8:9

**firm**
8:8 15:7

**flowchart**
8:20

11:7,14

**follow**
27:21

**follow-up**
28:23

**form**
7:7 12:2,
25 13:14
15:17
17:6
18:8,13
19:3,12,
21,23
20:2,20
22:16
24:1
25:22
27:5,19
28:4,12
30:8

**formed**
24:11,13

**Foundation**
6:8 15:7
22:13,22
23:2,8
25:18

**full**
33:12

**fund**
7:3 8:23
11:12,16,
19,21
12:1,5,9,
13 13:11,
22 15:21
17:3,4,
11,13,23
19:1 21:4
22:9,19
24:18,23
26:9,11,
19,21
27:2,8,

15,23
28:10
30:6

**Fund1**
13:11,20

————————
        **G**
————————

**gave**
27:17
29:6

**general**
14:4
16:23
18:2,11
19:8,19
20:4,7,19
21:9

**generally**
8:18
12:10,11
15:10
19:16
31:14

**give**
6:24 11:1
25:9,10,
12

**giving**
18:6 29:9

**Global**
6:8 14:2
15:8,11
16:2
30:24

**Global's**
15:12

**Good**
33:10,11

**GP**
13:12
14:4

24:6,7,8,
9

**GP's**
24:15

**guess**
19:6
21:17
22:2 28:6
30:25

**guys**
8:20 15:3
29:3,10
31:20
32:25
33:6

————————
        **H**
————————

**hand**
6:11

**Hart**
5:24

**hear**
10:21
21:24
26:14

**held**
5:6 27:8

**hey**
31:20
33:12,14,
16

**Highland**
5:8,20,21
6:4 7:13
8:3

**Hold**
9:1

**Holdco**
8:17
11:15,18,



23 12:6,
16,19,21,
22,24
13:5
16:16,17
17:20,22
18:3,12,
24 19:2
20:1,7,12
21:1,10
22:12,15,
21 23:15,
22,23
24:16,24
25:16
26:6,18,
20,25
27:7,12,
14,23
28:9 30:5
31:2

**Holdco's**
28:9

**Holdings**
13:19,24

**holds**
26:19

**honesty**
30:14,17,
22

**hope**
8:19

**hour**
31:21

**hours**
31:21

**Houston**
6:9

**Hunter**
6:1 7:6,
9,14 8:3,
6,10,13
9:8,11,14

10:7
12:15,17
13:6,9
15:16

_____

**I**
_____

**idea**
9:19

**identified**
5:13

**IDF**
13:12,21,
25 14:4,5
15:23,24

**important**
29:10

**include**
13:10
20:8

**incorrect**
25:4

**indirect**
7:10
11:24

**information**
16:4

**initially**
26:16,17

**initiated**
7:25

**input**
19:9,11,
17

**inquire**
22:15

**inserted**
24:20
27:24

**instruct**

14:13

**insurance**
6:8 14:2
15:8

**interest**
10:10
11:24
12:1
15:13
17:3,12,
23 21:3
22:15,18,
21 23:22
24:17,21
25:15,21
26:6,20,
21 27:1,
12,15,16
28:10,16,
18 30:7
31:16

**internal**
18:25

**investment**
5:23 6:1
7:2,4
15:22

**involved**
7:11,22

**issue**
9:16,17,
19 14:21
24:15
29:9

_____

**J**
_____

**Jernigan**
29:3

**job**
10:9

**John**

5:19 15:1
29:12,17
31:11
32:2

**jointly**
25:17

**Jones**
5:20

**Judge**
29:3

**jumbles**
17:5

**June**
5:3

_____

**K**
_____

**Kelly**
5:24

**kind**
16:4 29:8

**Kirschner**
8:13,14

**Klos's**
12:20

**knowledge**
8:15 25:6
33:13

_____

**L**
_____

**lack**
7:3

**Lang**
5:22 6:19
7:11 9:2,
16 10:4,
19,24
11:5,6,14
12:5

13:3,17
14:7

**law**
15:7

**layers**
7:10
11:25

**leave**
14:13,20
29:3

**leaving**
29:4

**leeway**
9:12 10:5
11:2

**legal**
19:20

**lenient**
9:11

**letters**
6:24

**level**
22:2

**Liberty**
12:21

**Life**
15:8

**limit**
9:3

**limitation**
15:2

**limited**
11:15,18,
23 14:1
15:13,24
16:1
31:6,8,9,
10,12,15

**liquidation**
13:4



list
13:9

Litigation
6:4

LLC
6:23,25
7:1,5
11:22
12:12,17,
19 13:7,
10,11,12,
18,23
14:4 16:5
17:12
21:2 22:6
24:8
27:16
28:16,18
30:7

located
5:5,21

locations
5:17

Loigman
6:3

longer
11:18
17:2 27:1

losing
23:5

lot
23:5

loud
18:16

Louis
5:24 9:25
14:13
25:11
31:17
33:8,12,
16,17,24

LP
5:9,20
11:12,16,
19,21
12:1,5,
10,13
13:12,20,
21,25
15:23,24
17:11,13,
23 19:1
22:19
24:18,23
26:9,12,
21 27:2,
8,15,23
28:10
30:6

luck
33:10,11

**M**

Madame
33:20,22

make
10:15
15:1
23:3,19
26:16,23,
24 30:11
31:20

Management
5:9,20
7:13
13:12,22

manager
15:22

March
16:11,12
17:14
18:10
20:25
23:18

mark
11:8
28:20

marked
11:11

meant
29:24

meetings
7:18

mention
12:20

mentioned
23:13

Mexico
6:2

Michael
5:22

minute
28:21,25
29:1,7

minutes
14:11,20,
21,23
25:8,9
29:20

misstate
21:21

misstating
18:4

Monday
33:7

money
10:15

Morris
5:19 7:7
9:11
13:14
14:10,22
17:6

19:3,12,
21 20:20
22:16
28:24
29:5,15,
18 30:1
31:4,11,
17,23
32:7,10,
15,20
33:2,10,
14,19

Morris's
9:2

motion
13:7,10

Mountain
6:1 7:6,
9,14 8:3,
6,10,14
9:8,11,14
10:7
12:15,17,
18 13:6,
9,10
15:16

mouthful
17:22

**N**

needed
29:7

negotiation
7:12
18:25
20:24
21:11

negotiations
7:21

Northern
5:7

note
8:3,4,7,
11 29:3

noted
15:3

notice
29:9 33:5

noting
24:14

number
29:15

**O**

oath
5:11

Object
12:2,25
13:14
15:17
18:13
24:1
27:5,19
28:4

objecting
29:11

objection
7:7 9:1,
4,5,7,8,
13 10:6
14:9 15:3
17:6,8
18:4,8
19:3,12,
21,23
20:2,20
22:16
25:22
28:12
30:8

obstruction
14:21



800.211.DEPO (3376)
EsquireSolutions.com

**obstruction ist**
29:11

**occur**
23:17

**occurred**
20:25
27:3

**Officer**
16:23
20:4 21:9

**Okin**
6:7 15:7

**Operating**
16:23
20:4 21:9

**opportunity**
18:7

**oral**
5:4

**organizatio n**
11:9

**owed**
10:16

**owned**
11:15
17:11
22:5,11,
22 23:8
24:17,23
25:17
27:22,23,
24,25

**owner**
12:17

**ownership**
11:12,24,
25 19:1
21:3
22:8,10,

14,21
23:14
26:3,9,11
30:6,24

**owning**
27:7

**owns**
11:18,21
12:15,18
13:6,17,
20,22,25
23:1
26:25
27:1
28:1,2

---

**P**

**P-R-O-C-E- E-D-I-N-G-S**
5:1

**p.m.**
34:3

**Pachulski**
5:19

**part**
7:17

**participate**
18:25
19:6
20:23
21:11,13
33:6

**participate d**
21:17,18
22:2

**participati on**
14:10
31:16

**parties**
5:15

**partner**
14:2,5,24
16:1

**partnership**
15:13,24
21:3 31:6

**party**
9:22

**pass**
14:7

**Patrick**
9:10

**pause**
10:1 29:2

**pay**
10:11,18

**PE**
13:11,20,
22

**peace**
9:18

**people**
32:3

**percent**
11:15
12:6,22
22:11,12,
21,22
23:9,10,
14,22
24:17,23
25:15,17,
20 26:6,
8,19,20
27:1,17,
23,24,25
28:1,2,10
30:6

**performed**

8:6

**Phillips**
5:24 9:1,
21 10:4,
12,17,21
11:1
12:2,25
14:9,16
15:17
17:8
18:4,8,13
19:23
20:2 24:1
25:8,22
27:5,19
28:4,12,
20 29:1
30:8,19
31:19,22
32:1
33:3,11,
22

**phone**
10:1

**Plaintiff's**
5:16

**pleadings**
11:3

**point**
22:11
25:16
26:8

**press**
29:2

**prior**
18:4

**problem**
9:22

**proceed**
6:15

**proceedings**
5:6 34:3

**process**
8:9

**promissory**
8:3

**proposed**
7:12 8:2

**provided**
7:19
28:11

**purchaser**
18:19

**purposes**
30:23

---

**Q**

**question**
7:8 12:3
13:1,15
15:18
17:7
18:9,14
19:4,13,
22,24
20:3,21
21:22
22:17
24:2
25:23,25
27:20
28:5,7,13
30:9,13,
15 31:4
33:17

**questioning**
30:23

**questions**
14:23
29:10,23
30:25

**Quinn**
6:4


ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

**R**

raise
6:11
9:21,23

raised
9:17
14:10

raises
9:22

Rand
13:7,11,
17,20,22
15:15,16,
20,21,22

Raver
5:5,25
6:10,16,
21,22
11:6 15:6
16:5
18:15
19:25
21:4
23:4,24
25:14
30:4

re-notice
14:14

reach
31:23
32:20

reached
29:19
32:8

read
9:14

realize
29:23

reason
25:3

reasoning
21:15,19,
21

recall
17:18,19
19:17
20:13,17
22:23,25
28:15

received
8:3 27:14
30:5,7

recollectio
n
22:18
28:14

record
5:2,17
6:20 29:4
33:20,23,
25 34:1

redemption
22:8
23:13
27:3,6

redo
10:2

relate
9:8 10:6

related
7:5

remember
17:15,24
18:21
20:18

remote
5:4

remotely
5:12

repeat
13:8

reasoning
24:19
30:13

rephrase
17:9

replaced
24:15

Reporter
5:2 6:10,
14 33:20,
22 34:1

reporting
5:11

represent
15:7
18:24

representin
g
5:25 6:1,
4

requested
19:17

respond
14:18
32:11

responsibil
ities
20:8

responsibil
ity
19:20

restructuri
ng
19:7
28:15
30:23

resulting
19:10
27:9

return
27:18

review
30:22

reviewed
7:18 22:2

ridiculous
29:15

rights
27:8

risk
9:18

Robert
6:3

Robles
5:10

role
7:15,16
16:22
20:6

roles
20:1

**S**

scope
9:3,7

screen
8:19
23:24

seconds
30:1

segregated
14:3

sense
30:11

serve
32:16,17

services
19:20

settlement

review
7:12,18,
25 8:2
9:15

share
8:19

Shawn
5:5 6:16,
21 9:1

shortly
17:25

shutting
33:15,19

side
9:8,14
10:7

sign
9:10

simultaneou
sly
18:23
29:14
30:18
32:6,14,
18,23
33:1,18,
21

sir
28:18

sit
10:19,22,
24 23:1

sits
12:12

sitting
5:25
20:22

sold
18:20

sole
14:1
21:2,3



SHAWN RAVER
HIGHLAND CAPITAL MANAGEMENT, LP

June 20, 2025
Index: Solutions..waste

Solutions
  5:12

sort
  9:2

sought
  19:9

soup
  17:4

speak
  23:6

speaking
  18:23
  29:14
  30:18
  32:6,14,
  18,23
  33:1,18,
  21

specific
  18:21

specificall
  y
  24:13

spirit
  14:11

standing
  9:23
  29:13

Stang
  5:19

start
  23:4

starting
  5:15

state
  5:16  6:20

States
  5:7

steps
  26:17

28:15

stop
  10:2
  33:17

stronger
  9:2

structure
  7:4  8:16,
  22  12:8,9
  15:13,14
  17:2
  19:9,10
  23:23
  24:21
  27:6,9
  30:24

structures
  15:15

subpoena
  32:16,17

subsidiary
  7:10
  12:22

suggestion
  9:3  10:6

supplement
  9:5

supplementa
  tion
  11:3

supplemente
  d
  9:6

supporting
  7:15,16

swear
  5:17

sworn
  6:11,12,
  17

_____

T
_____

talked
  13:10
  16:25

talking
  10:18
  17:21
  21:6
  23:4,12
  24:22
  32:4

telling
  10:4  11:2
  18:18

terminated
  34:3

testified
  6:17

testimony
  17:10
  18:3,5,10
  19:11
  20:23
  21:8

Texas
  5:5,7,10

thing
  9:18  30:7

things
  29:25

time
  5:3,4
  6:10  7:24
  10:3
  14:12
  22:5  24:8

timeline
  23:20

times

20:10

titles
  20:1

today
  8:9,24
  11:10
  14:14
  20:22
  21:8  23:1

Today's
  5:3

told
  14:17

transaction
  9:24  10:8
  19:1,10
  20:12,25
  21:4,5,
  12,14,15,
  19,20
  22:4,5,7
  23:12,14,
  16  24:3,
  22  25:4
  26:22
  27:4,11

transfer
  27:14

transferred
  27:12

transferrin
  g
  19:1

transfers
  26:21

true
  32:11

Trust
  5:21,23
  6:1

Trustee

6:4

Tuesday
  33:7

_____

U
_____

underlying
  20:24

understand
  21:5
  25:25
  26:24
  27:3
  28:6,19

understanda
  bly
  19:18

understandi
  ng
  30:5

Understood
  11:5

United
  5:6

unwound
  9:18

_____

V
_____

valuation
  8:6,8

_____

W
_____

wait
  23:15

walk
  27:22
  29:25

waste



800.211.DEPO (3376)
EsquireSolutions.com

10:2

**waving**
  29:13

**week**
  10:2
  32:11

**witnesses**
  5:13

**word**
  7:3

**work**
  9:20 13:4
  17:16
  18:19

**worked**
  31:2

**working**
  17:19,22

**would've**
  24:12
  27:16

**wrap**
  25:12

---

**Y**

---

**year**
  16:11

**York**
  5:21 6:5

---

**Z**

---

**Ziehl**
  5:20

**Zoom**
  33:8

