45.   Any Share in respect of which notice of redemption has been given shall not be entitled to participate in the profits of the Company in respect of the period after the date specified as the date of redemption in the notice of redemption.

46.   The redemption, purchase or surrender of any Share shall not be deemed to give rise to the redemption, purchase or surrender of any other Share.

47.   The Directors may when making payments in respect of redemption or purchase of Shares, if authorised by the terms of issue of the Shares being redeemed or purchased or with the agreement of the holder of such Shares, make such payment either in cash or in specie.

## TREASURY SHARES

48.   Shares that the Company purchases, redeems or acquires (by way of surrender or otherwise) may, at the option of the Company, be cancelled immediately or held as Treasury Shares in accordance with the Law. In the event that the Directors do not specify that the relevant Shares are to be held as Treasury Shares, such Shares shall be cancelled.

49.   No dividend may be declared or paid, and no other distribution (whether in cash or otherwise) of the Company's assets (including any distribution of assets to members on a winding up) may be declared or paid in respect of a Treasury Share.

50.   The Company shall be entered in the Register as the holder of the Treasury Shares provided that:

   (a)   the Company shall not be treated as a member for any purpose and shall not exercise any right in respect of the Treasury Shares, and any purported exercise of such a right shall be void;

   (b)   a Treasury Share shall not be voted, directly or indirectly, at any meeting of the Company and shall not be counted in determining the total number of issued shares at any given time, whether for the purposes of these Articles or the Law, save that an allotment of Shares as fully paid bonus shares in respect of a Treasury Share is permitted and Shares allotted as fully paid bonus shares in respect of a treasury share shall be treated as Treasury Shares.

51.   Treasury Shares may be disposed of by the Company on such terms and conditions as determined by the Directors.

## GENERAL MEETINGS

52.   The Directors may, whenever they think fit, convene a general meeting of the Company.

53.   The Directors may cancel or postpone any duly convened general meeting at any time prior to such meeting, except for general meetings requisitioned by the Shareholders in accordance with these Articles, for any reason or for no reason at any time prior to the time for holding such meeting or, if the meeting is adjourned, the time for holding such adjourned meeting. The Directors shall give Shareholders notice in writing of any postponement, which postponement may be for a stated period of any length or indefinitely as the Directors may determine.

54.   General meetings shall also be convened on the requisition in writing of any Shareholder or Shareholders entitled to attend and vote at general meetings of the Company holding at least ten percent of the paid up voting share capital of the Company deposited at the Office specifying the

4828489.1 H0851.109190

objects of the meeting for a date no later than 21 days from the date of deposit of the requisition signed by the requisitionists, and if the Directors do not convene such meeting for a date not later than 45 days after the date of such deposit, the requisitionists themselves may convene the general meeting in the same manner, as nearly as possible, as that in which general meetings may be convened by the Directors, and all reasonable expenses incurred by the requisitionists as a result of the failure of the Directors to convene the general meeting shall be reimbursed to them by the Company.

55.   If at any time there are no Directors, any two Shareholders (or if there is only one Shareholder then that Shareholder) entitled to vote at general meetings of the Company may convene a general meeting in the same manner as nearly as possible as that in which general meetings may be convened by the Directors.

## NOTICE OF GENERAL MEETINGS

56.   At least seven clear days' notice in writing counting from the date service is deemed to take place as provided in these Articles specifying the place, the day and the hour of the meeting and, in case of special business, the general nature of that business, shall be given in the manner hereinafter provided or in such other manner (if any) as may be prescribed by the Company by Ordinary Resolution to such Persons as are, under these Articles, entitled to receive such notices from the Company, but with the consent of all the Shareholders entitled to receive notice of some particular meeting and attend and vote thereat, that meeting may be convened by such shorter notice or without notice and in such manner as those Shareholders may think fit.

57.   The accidental omission to give notice of a meeting to or the non-receipt of a notice of a meeting by any Shareholder shall not invalidate the proceedings at any meeting.

## PROCEEDINGS AT GENERAL MEETINGS

58.   All business carried out at a general meeting shall be deemed special with the exception of sanctioning a dividend, the consideration of the accounts, balance sheets, any report of the Directors or of the Company's auditors, and the fixing of the remuneration of the Company's auditors. No special business shall be transacted at any general meeting without the consent of all Shareholders entitled to receive notice of that meeting unless notice of such special business has been given in the notice convening that meeting.

59.   No business shall be transacted at any general meeting unless a quorum of Shareholders is present at the time when the meeting proceeds to business. Save as otherwise provided by these Articles, one or more Shareholders holding at least a majority of the paid up voting share capital of the Company present in person or by proxy and entitled to vote at that meeting shall form a quorum.

60.   If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of Shareholders, shall be dissolved. In any other case it shall stand adjourned to the same day in the next week, at the same time and place, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting the Shareholder or Shareholders present and entitled to vote shall form a quorum.

61.   If the Directors wish to make this facility available for a specific general meeting or all general meetings of the Company, participation in any general meeting of the Company may be by means of a telephone or similar communication equipment by way of which all Persons participating in such meeting can communicate with each other and such participation shall be deemed to constitute presence in person at the meeting.

10

4828489.1 H0851.109190

62. The chairman, if any, of the Directors shall preside as chairman at every general meeting of the Company.

63. If there is no such chairman, or if at any general meeting he is not present within fifteen minutes after the time appointed for holding the meeting or is unwilling to act as chairman, any Director or Person nominated by the Directors shall preside as chairman, failing which the Shareholders present in person or by proxy shall choose any Person present to be chairman of that meeting.

64. The chairman may adjourn a meeting from time to time and from place to place either:

   (a) with the consent of any general meeting at which a quorum is present (and shall if so directed by the meeting); or

   (b) without the consent of such meeting if, in his sole opinion, he considers it necessary to do so to:

      (i) secure the orderly conduct or proceedings of the meeting; or

      (ii) give all persons present in person or by proxy and having the right to speak and / or vote at such meeting, the ability to do so,

   but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place. When a meeting, or adjourned meeting, is adjourned for fourteen days or more, notice of the adjourned meeting shall be given in the manner provided for the original meeting. Save as aforesaid, it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting.

65. At any general meeting a resolution put to the vote of the meeting shall be decided on a show of hands, unless a poll is (before or on the declaration of the result of the show of hands) demanded by the chairman or one or more Shareholders present in person or by proxy entitled to vote, and unless a poll is so demanded, a declaration by the chairman that a resolution has, on a show of hands, been carried, or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book of the proceedings of the Company, shall be conclusive evidence of the fact, without proof of the number or proportion of the votes recorded in favour of, or against, that resolution.

66. If a poll is duly demanded it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

67. In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded, shall be entitled to a second or casting vote.

68. A poll demanded on the election of a chairman of the meeting or on a question of adjournment shall be taken forthwith. A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs.

## VOTES OF SHAREHOLDERS

69. Subject to any rights and restrictions for the time being attached to any Share, on a show of hands every Shareholder present in person and every Person representing a Shareholder by proxy shall, at a general meeting of the Company, each have one vote and on a poll every

11

Shareholder and every Person representing a Shareholder by proxy shall have one vote for each Share of which he or the Person represented by proxy is the holder.

70. In the case of joint holders the vote of the senior who tenders a vote whether in person or by proxy shall be accepted to the exclusion of the votes of the other joint holders and for this purpose seniority shall be determined by the order in which the names stand in the Register.

71. A Shareholder of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote in respect of Shares carrying the right to vote held by him, whether on a show of hands or on a poll, by his committee, or other Person in the nature of a committee appointed by that court, and any such committee or other Person, may vote in respect of such Shares by proxy.

72. No Shareholder shall be entitled to vote at any general meeting of the Company unless all calls, if any, or other sums presently payable by him in respect of Shares carrying the right to vote held by him have been paid.

73. On a poll votes may be given either personally or by proxy.

74. The instrument appointing a proxy shall be in writing under the hand of the appointor or of his attorney duly authorised in writing or, if the appointor is a corporation, either under Seal or under the hand of an officer or attorney duly authorised. A proxy need not be a Shareholder.

75. An instrument appointing a proxy may be in any usual or common form or such other form as the Directors may approve.

76. The instrument appointing a proxy shall be deposited at the Office or at such other place as is specified for that purpose in the notice convening the meeting no later than the time for holding the meeting or, if the meeting is adjourned, the time for holding such adjourned meeting.

77. The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

78. A resolution in writing signed by all the Shareholders for the time being entitled to receive notice of and to attend and vote at general meetings of the Company (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the Company duly convened and held.

## CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS

79. Any corporation which is a Shareholder or a Director may by resolution of its directors or other governing body authorise such Person as it thinks fit to act as its representative at any meeting of the Company or of any meeting of holders of a Class or of the Directors or of a committee of Directors, and the Person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual Shareholder or Director.

## DIRECTORS

80. The name(s) of the first Director(s) shall either be determined in writing by a majority (or in the case of a sole subscriber that subscriber) of, or elected at a meeting of, the subscribers of the Memorandum of Association.

12

81. The Company may by Ordinary Resolution appoint any natural person or corporation to be a Director.

82. Subject to these Articles, a Director shall hold office until such time as he is removed from office by Ordinary Resolution.

83. The Company may by Ordinary Resolution from time to time fix the maximum and minimum number of Directors to be appointed but unless such numbers are fixed as aforesaid the minimum number of Directors shall be one and the maximum number of Directors shall be unlimited.

84. The remuneration of the Directors may be determined by the Directors or by Ordinary Resolution.

85. There shall be no shareholding qualification for Directors unless determined otherwise by Ordinary Resolution.

86. The Directors shall have power at any time and from time to time to appoint a natural person or corporation as a Director, either as a result of a casual vacancy or as an additional Director, subject to the maximum number (if any) imposed by Ordinary Resolution.

## ALTERNATE DIRECTOR

87. Any Director may in writing appoint another Person to be his alternate and, save to the extent provided otherwise in the form of appointment, such alternate shall have authority to sign written resolutions on behalf of the appointing Director, but shall not be required to sign such written resolutions where they have been signed by the appointing Director, and to act in such Director's place at any meeting of the Directors at which he is unable to be present. Every such alternate shall be entitled to attend and vote at meetings of the Directors as a Director when the Director appointing him is not personally present and where he is a Director to have a separate vote on behalf of the Director he is representing in addition to his own vote. A Director may at any time in writing revoke the appointment of an alternate appointed by him. Such alternate shall not be deemed to be an officer of the Company solely as a result of his appointment as an alternate. The remuneration of such alternate shall be payable out of the remuneration of the Director appointing him and the proportion thereof shall be agreed between them.

88. Any Director may appoint any Person , whether or not a Director, to be the proxy of that Director to attend and vote on his behalf, in accordance with instructions given by that Director, or in the absence of such instructions at the discretion of the proxy, at a meeting or meetings of the Directors which that Director is unable to attend personally. The instrument appointing the proxy shall be in writing under the hand of the appointing Director and shall be in any usual or common form or such other form as the Directors may approve, and must be lodged with the chairman of the meeting of the Directors at which such proxy is to be used, or first used, prior to the commencement of the meeting.

## POWERS AND DUTIES OF DIRECTORS

89. Subject to the Law, these Articles and to any resolutions passed in a general meeting, the business of the Company shall be managed by the Directors, who may pay all expenses incurred in setting up and registering the Company and may exercise all powers of the Company. No resolution passed by the Company in general meeting shall invalidate any prior act of the Directors that would have been valid if that resolution had not been passed.

90. The Directors may from time to time appoint any natural person or corporation , whether or not a Director to hold such office in the Company as the Directors may think necessary for the

13

administration of the Company, including but not limited to, the office of president, one or more vice-presidents, treasurer, assistant treasurer, manager or controller, and for such term and at such remuneration (whether by way of salary or commission or participation in profits or partly in one way and partly in another), and with such powers and duties as the Directors may think fit. Any natural person or corporation so appointed by the Directors may be removed by the Directors or by the Company by Ordinary Resolution. The Directors may also appoint one or more of their number to the office of managing director upon like terms, but any such appointment shall ipso facto determine if any managing director ceases from any cause to be a Director, or if the Company by Ordinary Resolution resolves that his tenure of office be terminated.

91.    The Directors may appoint any natural person or corporation to be a Secretary (and if need be an assistant Secretary or assistant Secretaries) who shall hold office for such term, at such remuneration and upon such conditions and with such powers as they think fit. Any Secretary or assistant Secretary so appointed by the Directors may be removed by the Directors or by the Company by Ordinary Resolution.

92.    The Directors may delegate any of their powers to committees consisting of such member or members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the Directors.

93.    The Directors may from time to time and at any time by power of attorney (whether under Seal or under hand) or otherwise appoint any company, firm or Person or body of Persons, whether nominated directly or indirectly by the Directors, to be the attorney or attorneys or authorised signatory (any such person being an "**Attorney**" or "**Authorised Signatory**", respectively) of the Company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such power of attorney or other appointment may contain such provisions for the protection and convenience of Persons dealing with any such Attorney or Authorised Signatory as the Directors may think fit, and may also authorise any such Attorney or Authorised Signatory to delegate all or any of the powers, authorities and discretion vested in him.

94.    The Directors may from time to time provide for the management of the affairs of the Company in such manner as they shall think fit and the provisions contained in the three next following Articles shall not limit the general powers conferred by this Article.

95.    The Directors from time to time and at any time may establish any committees, local boards or agencies for managing any of the affairs of the Company and may appoint any natural person or corporation to be a member of such committees or local boards and may appoint any managers or agents of the Company and may fix the remuneration of any such natural person or corporation.

96.    The Directors from time to time and at any time may delegate to any such committee, local board, manager or agent any of the powers, authorities and discretions for the time being vested in the Directors and may authorise the members for the time being of any such local board, or any of them to fill any vacancies therein and to act notwithstanding vacancies and any such appointment or delegation may be made on such terms and subject to such conditions as the Directors may think fit and the Directors may at any time remove any natural person or corporation so appointed and may annul or vary any such delegation, but no Person dealing in good faith and without notice of any such annulment or variation shall be affected thereby.

97.    Any such delegates as aforesaid may be authorised by the Directors to sub-delegate all or any of the powers, authorities, and discretion for the time being vested in them.

14

4828489.1 H0851.109190

## BORROWING POWERS OF DIRECTORS

98.     The Directors may exercise all the powers of the Company to borrow money and to mortgage or charge its undertaking, property and uncalled capital or any part thereof, to issue debentures, debenture stock and other securities whenever money is borrowed or as security for any debt, liability or obligation of the Company or of any third party.

## THE SEAL

99.     The Seal shall not be affixed to any instrument except by the authority of a resolution of the Directors provided always that such authority may be given prior to or after the affixing of the Seal and if given after may be in general form confirming a number of affixings of the Seal. The Seal shall be affixed in the presence of a Director or a Secretary (or an assistant Secretary) or in the presence of any one or more Persons as the Directors may appoint for the purpose and every Person as aforesaid shall sign every instrument to which the Seal is so affixed in their presence.

100.    The Company may maintain a facsimile of the Seal in such countries or places as the Directors may appoint and such facsimile Seal shall not be affixed to any instrument except by the authority of a resolution of the Directors provided always that such authority may be given prior to or after the affixing of such facsimile Seal and if given after may be in general form confirming a number of affixings of such facsimile Seal.  The facsimile Seal shall be affixed in the presence of such Person or Persons as the Directors shall for this purpose appoint and such Person or Persons as aforesaid shall sign every instrument to which the facsimile Seal is so affixed in their presence and such affixing of the facsimile Seal and signing as aforesaid shall have the same meaning and effect as if the Seal had been affixed in the presence of and the instrument signed by a Director or a Secretary (or an assistant Secretary) or in the presence of any one or more Persons as the Directors may appoint for the purpose.

101.    Notwithstanding the foregoing, a Secretary or any assistant Secretary shall have the authority to affix the Seal, or the facsimile Seal, to any instrument for the purposes of attesting authenticity of the matter contained therein but which does not create any obligation binding on the Company.

## DISQUALIFICATION OF DIRECTORS

102.    The office of Director shall be vacated, if the Director:

(a)     becomes bankrupt or makes any arrangement or composition with his creditors;

(b)     dies or is found to be or becomes of unsound mind;

(c)     resigns his office by notice in writing to the Company;

(d)     is removed from office by Ordinary Resolution;

(e)     is removed from office by notice addressed to him at his last known address and signed by all of his co-Directors (not being less than two in number); or

(f)     is removed from office pursuant to any other provision of these Articles.

4828489.1 H0851.109190

## PROCEEDINGS OF DIRECTORS

103. The Directors may meet together (either within or without the Cayman Islands) for the despatch of business, adjourn, and otherwise regulate their meetings and proceedings as they think fit. Questions arising at any meeting shall be decided by a majority of votes. In case of an equality of votes the chairman shall have a second or casting vote. A Director may, and a Secretary or assistant Secretary on the requisition of a Director shall, at any time summon a meeting of the Directors.

104. A Director may participate in any meeting of the Directors, or of any committee appointed by the Directors of which such Director is a member, by means of telephone or similar communication equipment by way of which all Persons participating in such meeting can communicate with each other and such participation shall be deemed to constitute presence in person at the meeting.

105. The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed, if there be two or more Directors the quorum shall be two, and if there be one Director the quorum shall be one. A Director represented by proxy or by an alternate Director at any meeting shall be deemed to be present for the purposes of determining whether or not a quorum is present.

106. A Director who is in any way, whether directly or indirectly, interested in a contract or proposed contract with the Company shall declare the nature of his interest at a meeting of the Directors. A general notice given to the Directors by any Director to the effect that he is a member of any specified company or firm and is to be regarded as interested in any contract which may thereafter be made with that company or firm shall be deemed a sufficient declaration of interest in regard to any contract so made. A Director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the Directors at which any such contract or proposed contract or arrangement shall come before the meeting for consideration.

107. A Director may hold any other office or place of profit under the Company (other than the office of auditor) in conjunction with his office of Director for such period and on such terms (as to remuneration and otherwise) as the Directors may determine and no Director or intending Director shall be disqualified by his office from contracting with the Company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise, nor shall any such contract or arrangement entered into by or on behalf of the Company in which any Director is in any way interested, be liable to be avoided, nor shall any Director so contracting or being so interested be liable to account to the Company for any profit realised by any such contract or arrangement by reason of such Director holding that office or of the fiduciary relation thereby established. A Director, notwithstanding his interest, may be counted in the quorum present at any meeting of the Directors whereat he or any other Director is appointed to hold any such office or place of profit under the Company or whereat the terms of any such appointment are arranged and he may vote on any such appointment or arrangement.

108. Any Director may act by himself or his firm in a professional capacity for the Company, and he or his firm shall be entitled to remuneration for professional services as if he were not a Director; provided that nothing herein contained shall authorise a Director or his firm to act as auditor to the Company.

109. The Directors shall cause minutes to be made in books or loose-leaf folders provided for the purpose of recording:

(a) all appointments of officers made by the Directors;

16

4828489.1 H0851.109190

(b)    the names of the Directors present at each meeting of the Directors and of any committee of the Directors; and

(c)    all resolutions and proceedings at all meetings of the Company, and of the Directors and of committees of Directors.

110.    When the chairman of a meeting of the Directors signs the minutes of such meeting the same shall be deemed to have been duly held notwithstanding that all the Directors have not actually come together or that there may have been a technical defect in the proceedings.

111.    A resolution in writing signed by all the Directors or all the members of a committee of Directors entitled to receive notice of a meeting of Directors or committee of Directors, as the case may be (an alternate Director, subject as provided otherwise in the terms of appointment of the alternate Director, being entitled to sign such a resolution on behalf of his appointer), shall be as valid and effectual as if it had been passed at a duly called and constituted meeting of Directors or committee of Directors, as the case may be. When signed a resolution may consist of several documents each signed by one or more of the Directors or his duly appointed alternate.

112.    The continuing Directors may act notwithstanding any vacancy in their body but if and for so long as their number is reduced below the number fixed by or pursuant to these Articles as the necessary quorum of Directors, the continuing Directors may act for the purpose of increasing the number, or of summoning a general meeting of the Company, but for no other purpose.

113.    The Directors may elect a chairman of their meetings and determine the period for which he is to hold office but if no such chairman is elected, or if at any meeting the chairman is not present within fifteen minutes after the time appointed for holding the meeting, the Directors present may choose one of their number to be chairman of the meeting.

114.    Subject to any regulations imposed on it by the Directors, a committee appointed by the Directors may elect a chairman of its meetings. If no such chairman is elected, or if at any meeting the chairman is not present within fifteen minutes after the time appointed for holding the meeting, the committee members present may choose one of their number to be chairman of the meeting.

115.    A committee appointed by the Directors may meet and adjourn as it thinks proper. Subject to any regulations imposed on it by the Directors, questions arising at any meeting shall be determined by a majority of votes of the committee members present and in case of an equality of votes the chairman shall have a second or casting vote.

116.    All acts done by any meeting of the Directors or of a committee of Directors, or by any Person acting as a Director, shall notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such Director or Person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such Person had been duly appointed and was qualified to be a Director.

## DIVIDENDS

117.    Subject to any rights and restrictions for the time being attached to any Shares, or as otherwise provided for in the Law and these Articles, the Directors may from time to time declare dividends (including interim dividends) and other distributions on Shares in issue and authorise payment of the same out of the funds of the Company lawfully available therefor.

118.    Subject to any rights and restrictions for the time being attached to any Shares, the Company by Ordinary Resolution may declare dividends, but no dividend shall exceed the amount recommended by the Directors.

119. The Directors may, before recommending or declaring any dividend, set aside out of the funds legally available for distribution such sums as they think proper as a reserve or reserves which shall, in the absolute discretion of the Directors be applicable for meeting contingencies, or for equalising dividends or for any other purpose to which those funds may be properly applied and pending such application may in the absolute discretion of the Directors, either be employed in the business of the Company or be invested in such investments as the Directors may from time to time think fit.

120. Any dividend may be paid in any manner as the Directors may determine. If paid by cheque it will be sent through the post to the registered address of the Shareholder or Person entitled thereto, or in the case of joint holders, to any one of such joint holders at his registered address or to such Person and such address as the Shareholder or Person entitled, or such joint holders as the case may be, may direct. Every such cheque shall be made payable to the order of the Person to whom it is sent or to the order of such other Person as the Shareholder or Person entitled, or such joint holders as the case may be, may direct.

121. The Directors when paying dividends to the Shareholders in accordance with the foregoing provisions of these Articles may make such payment either in cash or in specie.

122. Subject to any rights and restrictions for the time being attached to any Shares, all dividends shall be declared and paid according to the amounts paid up on the Shares, but if and for so long as nothing is paid up on any of the Shares dividends may be declared and paid according to the par value of the Shares.

123. If several Persons are registered as joint holders of any Share, any of them may give effectual receipts for any dividend or other moneys payable on or in respect of the Share.

124. No dividend shall bear interest against the Company.

## ACCOUNTS, AUDIT AND ANNUAL RETURN AND DECLARATION

125. The books of account relating to the Company's affairs shall be kept in such manner as may be determined from time to time by the Directors.

126. The books of account shall be kept at the Office, or at such other place or places as the Directors think fit, and shall always be open to the inspection of the Directors.

127. The Directors may from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the Company or any of them shall be open to the inspection of Shareholders not being Directors, and no Shareholder (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by law or authorised by the Directors or by Ordinary Resolution.

128. The accounts relating to the Company's affairs shall only be audited if the Directors so determine, in which case the financial year end and the accounting principles will be determined by the Directors.

129. The Directors in each year shall prepare, or cause to be prepared, an annual return and declaration setting forth the particulars required by the Law and deliver a copy thereof to the Registrar of Companies in the Cayman Islands.

4828489.1 H0851.109190

## CAPITALISATION OF RESERVES

130.    Subject to the Law and these Articles, the Directors may:

(a)    resolve to capitalise an amount standing to the credit of reserves (including a Share Premium Account, capital redemption reserve and profit and loss account), whether or not available for distribution;

(b)    appropriate the sum resolved to be capitalised to the Shareholders in proportion to the nominal amount of Shares (whether or not fully paid) held by them respectively and apply that sum on their behalf in or towards:

(i)    paying up the amounts (if any) for the time being unpaid on Shares held by them respectively, or

(ii)    paying up in full unissued Shares or debentures of a nominal amount equal to that sum,

and allot the Shares or debentures, credited as fully paid, to the Shareholders (or as they may direct) in those proportions, or partly in one way and partly in the other, but the Share Premium Account, the capital redemption reserve and profits which are not available for distribution may, for the purposes of this Article, only be applied in paying up unissued Shares to be allotted to Shareholders credited as fully paid;

(c)    make any arrangements they think fit to resolve a difficulty arising in the distribution of a capitalised reserve and in particular, without limitation, where Shares or debentures become distributable in fractions the Directors may deal with the fractions as they think fit;

(d)    authorise a Person to enter (on behalf of all the Shareholders concerned) into an agreement with the Company providing for either:

(i)    the allotment to the Shareholders respectively, credited as fully paid, of Shares or debentures to which they may be entitled on the capitalisation, or

(ii)    the payment by the Company on behalf of the Shareholders (by the application of their respective proportions of the reserves resolved to be capitalised) of the amounts or part of the amounts remaining unpaid on their existing Shares,

and any such agreement made under this authority being effective and binding on all those Shareholders; and

(e)    generally do all acts and things required to give effect to any of the actions contemplated by this Article.

## SHARE PREMIUM ACCOUNT

131.    The Directors shall in accordance with the Law establish a Share Premium Account and shall carry to the credit of such account from time to time a sum equal to the amount or value of the premium paid on the issue of any Share.

132.    There shall be debited to any Share Premium Account on the redemption or purchase of a Share the difference between the nominal value of such Share and the redemption or purchase price

4828489.1 H0851.109190

provided always that at the discretion of the Directors such sum may be paid out of the profits of the Company or, if permitted by the Law, out of capital.

NOTICES

133. Any notice or document may be served by the Company or by the Person entitled to give notice to any Shareholder either personally, or by posting it airmail or air courier service in a prepaid letter addressed to such Shareholder at his address as appearing in the Register, or by electronic mail to any electronic mail address such Shareholder may have specified in writing for the purpose of such service of notices, or by facsimile should the Directors deem it appropriate. In the case of joint holders of a Share, all notices shall be given to that one of the joint holders whose name stands first in the Register in respect of the joint holding, and notice so given shall be sufficient notice to all the joint holders.

134. Any Shareholder present, either personally or by proxy, at any meeting of the Company shall for all purposes be deemed to have received due notice of such meeting and, where requisite, of the purposes for which such meeting was convened.

135. Any notice or other document, if served by:

   (a)   post, shall be deemed to have been served five clear days after the time when the letter containing the same is posted;

   (b)   facsimile, shall be deemed to have been served upon production by the transmitting facsimile machine of a report confirming transmission of the facsimile in full to the facsimile number of the recipient;

   (c)   recognised courier service, shall be deemed to have been served 48 hours after the time when the letter containing the same is delivered to the courier service; or

   (d)   electronic mail, shall be deemed to have been served immediately upon the time of the transmission by electronic mail.

   In proving service by post or courier service it shall be sufficient to prove that the letter containing the notice or documents was properly addressed and duly posted or delivered to the courier service.

136. Any notice or document delivered or sent by post to or left at the registered address of any Shareholder in accordance with the terms of these Articles shall notwithstanding that such Shareholder be then dead or bankrupt, and whether or not the Company has notice of his death or bankruptcy, be deemed to have been duly served in respect of any Share registered in the name of such Shareholder as sole or joint holder, unless his name shall at the time of the service of the notice or document, have been removed from the Register as the holder of the Share, and such service shall for all purposes be deemed a sufficient service of such notice or document on all Persons interested (whether jointly with or as claiming through or under him) in the Share.

137. Notice of every general meeting of the Company shall be given to:

   (a)   all Shareholders holding Shares with the right to receive notice and who have supplied to the Company an address for the giving of notices to them; and

   (b)   every Person entitled to a Share in consequence of the death or bankruptcy of a Shareholder, who but for his death or bankruptcy would be entitled to receive notice of the meeting.

20

4828489.1 H0851.109190

No other Person shall be entitled to receive notices of general meetings.

## INDEMNITY

138.   Every Director (including for the purposes of this Article any alternate Director appointed pursuant to the provisions of these Articles), Secretary, assistant Secretary, or other officer for the time being and from time to time of the Company (but not including the Company's auditors) and the personal representatives of the same (each an "**Indemnified Person**") shall be indemnified and secured harmless against all actions, proceedings, costs, charges, expenses, losses, damages or liabilities incurred or sustained by such Indemnified Person, other than by reason of such Indemnified Person's own dishonesty, wilful default or fraud, in or about the conduct of the Company's business or affairs (including as a result of any mistake of judgment) or in the execution or discharge of his duties, powers, authorities or discretions, including without prejudice to the generality of the foregoing, any costs, expenses, losses or liabilities incurred by such Indemnified Person in defending (whether successfully or otherwise) any civil proceedings concerning the Company or its affairs in any court whether in the Cayman Islands or elsewhere.

139.   No Indemnified Person shall be liable:

   (a)   for the acts, receipts, neglects, defaults or omissions of any other Director or officer or agent of the Company; or

   (b)   for any loss on account of defect of title to any property of the Company; or

   (c)   on account of the insufficiency of any security in or upon which any money of the Company shall be invested; or

   (d)   for any loss incurred through any bank, broker or other similar Person; or

   (e)   for any loss occasioned by any negligence, default, breach of duty, breach of trust, error of judgement or oversight on such Indemnified Person's part; or

   (f)   for any loss, damage or misfortune whatsoever which may happen in or arise from the execution or discharge of the duties, powers, authorities, or discretions of such Indemnified Person's office or in relation thereto;

unless the same shall happen through such Indemnified Person's own dishonesty, wilful default or fraud.

## NON-RECOGNITION OF TRUSTS

140.   Subject to the proviso hereto, no Person shall be recognised by the Company as holding any Share upon any trust and the Company shall not, unless required by law, be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any Share or (except only as otherwise provided by these Articles or as the Law requires) any other right in respect of any Share except an absolute right to the entirety thereof in each Shareholder registered in the Register, provided that, notwithstanding the foregoing, the Company shall be entitled to recognise any such interests as shall be determined by the Directors.

4828489.1 H0851.109190

## WINDING UP

141. If the Company shall be wound up the liquidator shall apply the assets of the Company in such manner and order as he thinks fit in satisfaction of creditors' claims.

142. If the Company shall be wound up, the liquidator may, with the sanction of an Ordinary Resolution divide amongst the Shareholders in specie or kind the whole or any part of the assets of the Company (whether they shall consist of property of the same kind or not) and may, for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the Shareholders or different Classes. The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the Shareholders as the liquidator, with the like sanction shall think fit, but so that no Shareholder shall be compelled to accept any assets whereon there is any liability.

## AMENDMENT OF ARTICLES OF ASSOCIATION

143. Subject to the Law and the rights attaching to the various Classes, the Company may at any time and from time to time by Special Resolution alter or amend these Articles in whole or in part.

## CLOSING OF REGISTER OR FIXING RECORD DATE

144. For the purpose of determining those Shareholders that are entitled to receive notice of, attend or vote at any meeting of Shareholders or any adjournment thereof, or those Shareholders that are entitled to receive payment of any dividend, or in order to make a determination as to who is a Shareholder for any other purpose, the Directors may provide that the Register shall be closed for transfers for a stated period which shall not exceed in any case 40 days. If the Register shall be so closed for the purpose of determining those Shareholders that are entitled to receive notice of, attend or vote at a meeting of Shareholders the Register shall be so closed for at least ten days immediately preceding such meeting and the record date for such determination shall be the date of the closure of the Register.

145. In lieu of or apart from closing the Register, the Directors may fix in advance a date as the record date for any such determination of those Shareholders that are entitled to receive notice of, attend or vote at a meeting of the Shareholders and for the purpose of determining those Shareholders that are entitled to receive payment of any dividend the Directors may, at or within 90 days prior to the date of declaration of such dividend, fix a subsequent date as the record date for such determination.

146. If the Register is not so closed and no record date is fixed for the determination of those Shareholders entitled to receive notice of, attend or vote at a meeting of Shareholders or those Shareholders that are entitled to receive payment of a dividend, the date on which notice of the meeting is posted or the date on which the resolution of the Directors declaring such dividend is adopted, as the case may be, shall be the record date for such determination of Shareholders. When a determination of those Shareholders that are entitled to receive notice of, attend or vote at a meeting of Shareholders has been made as provided in this Article, such determination shall apply to any adjournment thereof.

## REGISTRATION BY WAY OF CONTINUATION

147. The Company may by Special Resolution resolve to be registered by way of continuation in a jurisdiction outside the Cayman Islands or such other jurisdiction in which it is for the time being

22

4828489.1 H0851.109190

incorporated, registered or existing. In furtherance of a resolution adopted pursuant to this Article, the Directors may cause an application to be made to the Registrar of Companies to deregister the Company in the Cayman Islands or such other jurisdiction in which it is for the time being incorporated, registered or existing and may cause all such further steps as they consider appropriate to be taken to effect the transfer by way of continuation of the Company.

## MERGERS AND CONSOLIDATION

148. The Company may by Special Resolution resolve to merge or consolidate the Company in accordance with the Law.

## DISCLOSURE

149. The Directors, or any authorised service providers (including the officers, the Secretary and the registered office agent of the Company), shall be entitled to disclose to any regulatory or judicial authority, or to any stock exchange on which the Shares may from time to time be listed, any information regarding the affairs of the Company including, without limitation, information contained in the Register and books of the Company.

4828489.1 H0851.109190

**NAME, ADDRESS AND DESCRIPTION
OF SUBSCRIBER**

Walkers Nominees Limited, 87 Mary Street, George Town, Grand Cayman KY1-9005, Cayman Islands

(Sgd) Roderick Palmer

Roderick Palmer
as Authorised Signatory for and on behalf of Walkers Nominees Limited

Dated:      27 October 2011

(Sgd) Grainne O'Leary
Signature of Witness

Name:          Grainne O'Leary

Address        87 Mary Street, George Town, Grand Cayman KY1-9001, Cayman Islands

Occupation:    Secretary



CERTIFIED TO BE A TRUE AND CORRECT COPY

SIG.

Flossiebell M. Maragh
Assistant Registrar

Date. 27 October, 2011

24

4828489.1 H0851.109190

# EXHIBIT 5

Case 19-34054-sgj11 Doc 4008-74 Filed 05/08/26 Entered 05/08/26 23:42:39 Desc
Exhibit 69 - Part 12 Page 17 of 176

**CHARITABLE DAF HOLDCO, LTD**

---

**THE COMPANIES ACT (AS AMENDED)**

**COMPANY LIMITED BY SHARES**

**AMENDED AND RESTATED**

**MEMORANDUM AND ARTICLES OF ASSOCIATION**

**(ADOPTED BY SPECIAL RESOLUTION DATED 20 FEBRUARY 2025)**

---

# Campbells

Floor 4, Willow House, Cricket Square
Grand Cayman KY1-9010
Cayman Islands

campbellslegal.com

(14133-42760)



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

www.verify.gov.ky File#: 263805

35631852.5.C8689.187150

# CHARITABLE DAF HOLDCO, LTD

---

**THE COMPANIES ACT (AS AMENDED)**

**COMPANY LIMITED BY SHARES**

**AMENDED AND RESTATED**

**MEMORANDUM OF ASSOCIATION**

**(ADOPTED BY SPECIAL RESOLUTION DATED 20 FEBRUARY 2025)**

---

1.   The name of the Company is Charitable DAF HoldCo, Ltd.

2.   The registered office of the Company will be situated at the offices of Campbells Corporate Services Limited, Floor 4, Willow House, Cricket Square, Grand Cayman KY1-9010, Cayman Islands or at such other location as the Directors may from time to time determine.

3.   The objects for which the Company is established are:

   (a)   to benefit community-focused non-profit foundations established or located anywhere in the world or for the purposes recognised as charitable, as the Directors may from time to time determine, in furtherance of the following mission statement: "Charitable DAF makes investments in order to support community-focused non-profit foundations with a demonstrated focus of giving funds to worthy causes and making a difference"; and

   (b)   to do all such things in the opinion of the Directors are or may be incidental or conducive to the above objects or any part of them.

4.   The Company shall have and be capable of exercising all the functions of a natural person of full capacity irrespective of any question of corporate benefit as provided by Section 27(2) of the Companies Act (as amended) of the Cayman Islands (the "**Act**").

5.   The Company will not trade in the Cayman Islands with any person, firm or corporation except in furtherance of the business of the Company carried on outside the Cayman Islands; provided that nothing in this section shall be construed as to prevent the Company effecting and concluding contracts in the Cayman Islands, and exercising in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands.

6.   The liability of the shareholders of the Company is limited to the amount, if any, unpaid on the shares respectively held by them.

7.   The capital of the Company is US$50,000.00 divided into 4,999,900 Participating Shares of a nominal or par value of US$0.01 each 100 Management Shares of a nominal or par value of US$0.01 each provided always that subject to the Act and the Articles of Association the Company shall have power

35631852.5.C8689.187150

1

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

to redeem or purchase any of its shares and to sub-divide or consolidate the said shares or any of them and to issue all or any part of its capital whether original, redeemed, increased or reduced with or without any preference, priority, special privilege or other rights or subject to any postponement of rights or to any conditions or restrictions whatsoever and so that unless the conditions of issue shall otherwise expressly provide every issue of shares whether stated to be ordinary, preference or otherwise shall be subject to the powers on the part of the Company hereinbefore provided.

8.      The Company may exercise the power contained in Section 206 of the Act to deregister in the Cayman Islands and be registered by way of continuation in some other jurisdiction.

35631852.5.C8689.187150

2

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

## TABLE OF CONTENTS

| CLAUSE | PAGE |
|---|---|
| TABLE A | 1 |
| INTERPRETATION | 1 |
| PRELIMINARY | 5 |
| SHARES | 6 |
| MANAGEMENT SHARES | 6 |
| PARTICIPATING SHARES | 7 |
| MODIFICATION OF RIGHTS | 7 |
| CERTIFICATES | 7 |
| FRACTIONAL SHARES | 7 |
| TRANSFER OF SHARES | 8 |
| TRANSMISSION OF SHARES | 8 |
| ALTERATION OF SHARE CAPITAL | 9 |
| REDEMPTION, PURCHASE AND SURRENDER OF SHARES | 9 |
| TREASURY SHARES | 10 |
| GENERAL MEETINGS | 11 |
| NOTICE OF GENERAL MEETINGS | 11 |
| PROCEEDINGS AT GENERAL MEETINGS | 11 |
| VOTES OF SHAREHOLDERS | 13 |
| CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS | 14 |
| DIRECTORS | 14 |
| POWERS AND DUTIES OF DIRECTORS | 15 |

35631852.5.C8689.187150

i

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

**BORROWING POWERS OF DIRECTORS** ................................................................ 17

**THE SEAL** ................................................................................................................ 17

**DISQUALIFICATION OF DIRECTORS** .................................................................... 17

**PROCEEDINGS OF DIRECTORS** ............................................................................ 18

**DIVIDENDS** ............................................................................................................. 21

**ACCOUNTS, AUDIT AND ANNUAL RETURN AND DECLARATION** ..................... 21

**CAPITALISATION OF RESERVES** .......................................................................... 22

**SHARE PREMIUM ACCOUNT** ................................................................................ 23

**NOTICES** ................................................................................................................. 23

**NON-RECOGNITION OF TRUSTS** .......................................................................... 24

**WINDING UP** ........................................................................................................... 25

**AMENDMENT OF ARTICLES OF ASSOCIATION** ................................................... 25

**CLOSING OF REGISTER OR FIXING RECORD DATE** ............................................ 25

**REGISTRATION BYWAY OF CONTINUATION** ....................................................... 26

**MERGERS AND CONSOLIDATION** ........................................................................ 26

**DISCLOSURE** .......................................................................................................... 26

**INDEMNITY** ............................................................................................................. 27

**DISPUTE RESOLUTION** .......................................................................................... 28

**AEOI** ........................................................................................................................ 30

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

**CHARITABLE DAF HOLDCO, LTD**

---

**THE COMPANIES ACT (AS AMENDED)**

**COMPANY LIMITED BY SHARES**

**AMENDED AND RESTATED**

**ARTICLES OF ASSOCIATION**

**(ADOPTED BY SPECIAL RESOLUTION DATED 20 FEBRUARY 2025)**

---

**TABLE A**

The Regulations contained or incorporated in Table 'A' in the First Schedule of the Act shall not apply to Charitable DAF HoldCo, Ltd (the "**Company**") and the following Articles shall comprise the Articles of Association of the Company.

**INTERPRETATION**

1.  In these Articles the following defined terms will have the meanings ascribed to them, if not inconsistent with the subject or context:

    "**Act**" means the Companies Act (as amended) of the Cayman Islands.

    "**AEOI**" means:

    (i)    sections 1471 to 1474 of the Code and any associated legislation, regulations or guidance, and any other similar legislation, regulations or guidance enacted in any other jurisdiction which seeks to implement similar financial account information reporting and/or withholding tax regimes;

    (ii)   the OECD Standard for Automatic Exchange of Financial Account Information in Tax Matters - the Common Reporting Standard and any associated guidance;

    (iii)  any intergovernmental agreement, treaty, regulation, guidance, standard or other agreement between the Cayman Islands (or any Cayman Islands government body) and any other jurisdiction (including any government bodies in such jurisdiction), entered into in

35631852.5.C8689.187150                                    1



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

order to comply with, facilitate, supplement or implement the legislation, regulations or guidance described in sub-paragraphs (i) and (ii); and

(iv)     any legislation, regulations or guidance in the Cayman Islands that give effect to the matters outlined in the preceding sub-paragraphs.

"**Articles**" means these articles of association of the Company, as amended or substituted from time to time.

"**Branch Register**" means any branch Register of such category or categories of Members as the Company may from time to time determine.

"**Class**" or "**Classes**" means any class or classes of Shares as may from time to time be issued by the Company.

"**Code**" means the US Internal Revenue Code of 1986, as amended.

"**Directors**" means the directors of the Company for the time being, or as the case may be, the directors assembled as a board or as a committee thereof.

"**Electronic Record**" has the same meaning as in the Electronic Transactions Act.

"**Electronic Transactions Act**" means the Electronic Transactions Act (as amended) of the Cayman Islands.

"**Gross Negligence**" has the meaning ascribed under the laws of the State of Delaware in the United States.

"**Management Director**" means a director of the Company holding a Management Share (as defined below).

"**Management Share**" means a voting non-participating share in the capital of the Company of $0.01 nominal or par value, that shall be non-redeemable at the option of the holder but redeemable by the Company in accordance with these Articles, and issued subject to and in accordance with the provisions of the Act and these Articles and having the rights and being subject to the restrictions as provided for under these Articles with respect to such Shares.

"**Material Transaction**" means any transaction (or series of connected transactions), including an acquisition, distribution, investment or divestiture by the Company, for the aggregate amount in excess of $250,000;

"**Memorandum of Association**" means the memorandum of association of the Company, as amended or substituted from time to time.

"**Office**" means the registered office of the Company as required by the Act.

"**Ordinary Resolution**" means a resolution:

(a)     passed by a simple majority of such Shareholders as, being entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting of the Company and where a

35631852.5.C8689.187150                    2

www.verify.gov.ky File#: 263805    Filed: 21-Feb-2025 09:26 EST   Auth Code: E90228166495

poll is taken regard shall be had in computing a majority to the number of votes to which each Shareholder is entitled; or

(b) approved in writing by all of the Shareholders entitled to vote at a general meeting of the Company in one or more instruments each signed by one or more of the Shareholders and the effective date of the resolution so adopted shall be the date on which the instrument, or the last of such instruments, if more than one, is executed.

"**paid up**" means paid up as to the par value in respect of the issue of any Shares and includes credited as paid up.

"**Participating Share**" means a non-voting, participating, non-redeemable share in the capital of the Company of $0.01 nominal or par value issued subject to and in accordance with the provisions of the Act and these Articles, and having the rights and being subject to the restrictions as provided for under these Articles with respect to such Share. All references to "Participating Shares" herein shall be deemed to be Participating Shares of any or all Classes or Series as the context may require. For the avoidance of doubt, in these Articles the expression "Participating Share" shall include a fraction of a Participating Share.

"**Person**" means any natural person, firm, company, joint venture, partnership, corporation, association or other entity (whether or not having a separate legal personality) or any of them as the context so requires.

"**Principal Register**", where the Company has established one or more Branch Registers pursuant to the Act and these Articles, means the Register maintained by the Company pursuant to the Act and these Articles that is not designated by the Directors as a Branch Register.

"**Register**" means the register of Members of the Company required to be kept pursuant to the Act and includes any Branch Register(s) established by the Company in accordance with the Act.

"**Restricted Person**" means any Person holding Participating Shares:

(a) in breach of the law or requirements of any country or governmental authority;

(b) that is not an entity or organisation exempt from taxation under Section 501(c)(3) of the Code or an entity or organisation all of whose beneficiaries are exempt under Section 501(c)(3) of the Code; or

(c) in circumstances (whether directly or indirectly affecting such Person and whether taken alone or in conjunction with any other Person, connected or not, or any other circumstances) which, in the opinion of the Directors, might result in the Company incurring any liability to taxation or suffering any other pecuniary, legal, regulatory or administrative disadvantage which the Company might not otherwise have incurred or suffered.



35631852.5.C8689.187150                                     3

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

"**Seal**" means the common seal of the Company (if adopted) including any facsimile thereof.

"**Secretary**" means any Person appointed by the Directors to perform any of the duties of the secretary of the Company.

"**Share**" means a Management Share or Participating Share or both as the context so requires.

"**Shareholder**" or "**Member**" means a Person who is registered as the holder of Shares in the Register and includes each subscriber to the Memorandum of Association pending entry in the Register of such subscriber.

"**Share Premium Account**" means the share premium account established in accordance with these Articles and the Act.

"**signed**" means bearing a signature or representation of a signature affixed by mechanical means.

"**Special Resolution**" means a special resolution of the Company passed in accordance with the Act, being a resolution:

(a)     passed by a majority of not less than two-thirds of such Shareholders as, being entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting of the Company of which notice specifying the intention to propose the resolution as a special resolution has been duly given and where a poll is taken regard shall be had in computing a majority to the number of votes to which each Shareholder is entitled; or

(b)      approved in writing by all of the Shareholders entitled to vote at a general meeting of the Company in one or more instruments each signed by one or more of the Shareholders and the effective date of the special resolution so adopted shall be the date on which the instrument or the last of such instruments, if more than one, is executed.

"**Treasury Shares**" means Shares that were previously issued but were purchased, redeemed, surrendered or otherwise acquired by the Company and not cancelled.

"**United States**" and "**US**" means the United States of America (including the District of Columbia), its states, territories and possessions.

In these Articles, save where the context requires otherwise:

(a)     words importing the singular number shall include the plural number and vice versa;

(b)     words importing the masculine gender only shall include the feminine gender and any Person as the context may require;



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

(c)    the word "may" shall be construed as permissive and the word "shall" shall be construed as imperative;

(d)    reference to a dollar or dollars or USD (or $) and to a cent or cents is reference to dollars and cents of the United States of America;

(e)    reference to a statutory enactment shall include reference to any amendment or re- enactment thereof for the time being in force;

(f)    reference to any determination by the Directors shall be construed as a determination by the Directors in their sole and absolute discretion and shall be applicable either generally or in any particular case;

(g)    reference to "in writing" shall be construed as written or represented by any means reproducible in writing, including any form of print, lithograph, email, facsimile, photograph or telex or represented by any other substitute or format for storage or transmission for writing or partly one and partly another;

(h)    any requirements as to execution or signature under the Articles including the execution of the Articles themselves can be satisfied in the form of an electronic signature as defined in the Electronic Transactions Act; and

(i)    sections 8 and 19(3) of the Electronic Transactions Act shall not apply.

2.    Subject to the preceding Articles, any words defined in the Act shall, if not inconsistent with the subject or context, bear the same meaning in these Articles.

## PRELIMINARY

3.    The business of the Company may be commenced at any time after incorporation.

4.    The Office shall be at such address in the Cayman Islands as the Directors may from time to time determine. The Company may in addition establish and maintain such other offices and places of business and agencies in such places as the Directors may from time to time determine.

5.    The expenses incurred in the formation of the Company and in connection with the offer for subscription and issue of Participating Shares shall be paid by the Company. Such expenses may be amortised over such period as the Directors may determine and the amount so paid shall be charged against income and/or capital in the accounts of the Company as the Directors shall determine.

6.    The Directors shall keep, or cause to be kept, the Register at such place or (subject to compliance with the Act and these Articles) places as the Directors may from time to time determine. In the absence of any such determination, the Register shall be kept at the Office. The Directors may

35631852.5.C8689.187150                                      5



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

keep, or cause to be kept, one or more Branch Registers as well as the Principal Register in accordance with the Act, provided always that a duplicate of such Branch Register(s) shall be maintained with the Principal Register in accordance with the Act.

## SHARES

7. Subject to these Articles, all Shares for the time being unissued shall be under the control of the Directors who may:

   (a) issue, allot and dispose of the same to such Persons, in such manner, on such terms and having such rights and being subject to such restrictions as they may from time to time determine;

   (b) and grant options with respect to such Shares and issue warrants or similar instruments with respect thereto;

   and, for such purposes, the Directors may reserve an appropriate number of Shares for the time being unissued.

8. The Directors, or the Shareholders by Ordinary Resolution, may authorise the division of Participating Shares into any number of Classes and the different Classes shall be authorised, established and designated (or re-designated as the case may be) and the variations in the relative rights (including, without limitation, voting, dividend and redemption rights), restrictions, preferences, privileges and payment obligations as between the different Classes (if any) may be fixed and determined by the Directors or the Shareholders by Ordinary Resolution.

9. The Company may insofar as may be permitted by law, pay a commission to any Person in consideration of his subscribing or agreeing to subscribe whether absolutely or conditionally for any Shares. Such commissions may be satisfied by the payment of cash or the lodgement of fully or partly paid-up Shares or partly in one way and partly in the other. The Company may also pay such brokerage as may be lawful on any issue of Shares.

10. The Directors may refuse to accept any application for Shares, and may accept any application in whole or in part, for any reason or for no reason.

## MANAGEMENT SHARES

11. The Management Shares shall be issued at par value and shall carry the right to receive notice of and to attend, to speak at and to vote at any general meeting of the Company. In the event of a winding up or dissolution of the Company, whether voluntary or involuntary or for the purposes of a reorganisation or otherwise or upon any distribution of capital, the entitlement of the holders of Management Shares shall be determined in accordance with these Articles. Management Shares confer no other right to participate in the profits or assets of the Company.

35631852.5.C8689.187150                                        6



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

## PARTICIPATING SHARES

12.      Participating Shares shall confer upon a Shareholder no right to receive notice of, to attend, to speak at nor to vote at general meetings of the Company but may be entitled to vote at a separate class meeting in relation to a modification of rights pursuant to the immediately following Article. The Participating Shares shall confer upon the Shareholders rights in a winding-up or repayment of capital and the right to participate in the profits or assets of the Company in accordance with these Articles.

## MODIFICATION OF RIGHTS

13.      Whenever the capital of the Company is divided into different Classes the rights attached to any such Class may, subject to any rights or restrictions for the time being attached to any Class, only be materially adversely varied or abrogated with the consent in writing of the holders of not less than two-thirds of the issued Participating Shares of the relevant Class or with the sanction of a resolution passed at a separate meeting of the holders of the Participating Shares of such Class by a majority of two-thirds of the votes cast at such a meeting.  To every such separate meeting all the provisions of these Articles relating to general meetings of the Company or to the proceedings thereat shall, *mutatis mutandis*, apply, except that the necessary quorum shall be one or more Persons at least holding or representing by proxy one-third in nominal or par value amount of the issued Participating Shares of the relevant Class (but so that if at any adjourned meeting of such holders a quorum as above defined is not present, those Shareholders who are present shall form a quorum) and that, subject to any rights or restrictions for the time being attached to the Participating Shares of that Class, every Shareholder of the Class shall on a poll have one vote for each Share of the Class held by him.  For the purposes of this Article the Directors may treat all the Classes or any two or more Classes as forming one Class if they consider that the variation or abrogation of the rights attached to such Classes proposed for consideration is the same variation or abrogation for all such relevant Classes, but in any other case shall treat them as separate Classes.

14.      The rights conferred upon the holders of the Participating Shares of any Class issued with preferred or other rights shall not, subject to any rights or restrictions for the time being attached to the Participating Shares of that Class, be deemed to be materially adversely varied or abrogated by, *inter alia*, the creation, allotment or issue of further Participating Shares ranking *pari passu* with or subsequent to them or the redemption or purchase of any Participating Shares of any Class by the Company.

## CERTIFICATES

15.      No Person shall be entitled to a certificate for any or all of his Shares, unless the Directors shall determine otherwise.

## FRACTIONAL SHARES

16.      The Directors may issue fractions of a Share and, if so issued, a fraction of a Share shall be subject to and carry the corresponding fraction of liabilities (whether with respect to nominal or par value, premium, contributions, calls or otherwise), limitations, preferences, privileges, qualifications, restrictions, rights (including, without prejudice to the generality of the foregoing, voting and participation rights) and other attributes of a whole Share.  If more than one fraction of a Share of the same Class is issued to or acquired by the same Shareholder such fractions shall be accumulated.

35631852.5.C8689.187150                                          7

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

## TRANSFER OF SHARES

17. The instrument of transfer of any Share shall be in any usual or common form or such other form as the Directors may, in their absolute discretion, approve and be executed by or on behalf of the transferor and if in respect of a nil or partly paid up Share, or if so required by the Directors, shall also be executed on behalf of the transferee and shall be accompanied by the certificate (if any) of the Shares to which it relates and such other evidence as the Directors may reasonably require to show the right of the transferor to make the transfer. The transferor shall be deemed to remain a Shareholder until the name of the transferee is entered in the Register in respect of the relevant Shares.

18. The Directors may in their absolute discretion decline to register any transfer of Shares without assigning any reason therefor including any purported transfer that does not comply with applicable securities or tax laws.

19. The registration of transfers may be suspended at such times and for such periods as the Directors may from time to time determine.

20. All instruments of transfer that are registered shall be retained by the Company, but any instrument of transfer that the Directors decline to register shall (except in any case of fraud) be returned to the Person depositing the same.

21. If it comes to the notice of the Directors that any Shares are held by a Restricted Person the Directors may by notice in writing require the transfer of such Shares in exercise of their powers under these Articles.

## TRANSMISSION OF SHARES

22. The legal personal representative of a deceased sole holder of a Share shall be the only Person recognised by the Company as having any title to the Share. In the case of a Share registered in the name of two or more holders, the survivors or survivor, or the legal personal representatives of the deceased holder of the Share, shall be the only Person recognised by the Company as having any title to the Share.

23. Any Person becoming entitled to a Share in consequence of the death or bankruptcy of a Shareholder shall upon such evidence being produced as may from time to time be required by the

35631852.5.C8689.187150

8



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

Directors, have the right either to be registered as a Shareholder in respect of the Share or, instead of being registered himself, to make such transfer of the Share as the deceased or bankrupt Person could have made; but the Directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the Share by the deceased or bankrupt Person before the death or bankruptcy.

24.     A Person becoming entitled to a Share by reason of the death or bankruptcy of a Shareholder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered Shareholder, except that he shall not, before being registered as a Shareholder in respect of the Share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the Company.

## ALTERATION OF SHARE CAPITAL

25.     The Company may from time to time by Ordinary Resolution increase the share capital by such sum, to be divided into Shares of such Classes and amount, as the resolution shall prescribe.

26.     The Company may by Ordinary Resolution:

(a)     consolidate and divide all or any of its share capital into Shares of a larger amount than its existing Shares;

(b)     convert all or any of its paid up Shares into stock and reconvert that stock into paid up Shares of any denomination;

(c)     subdivide its existing Shares, or any of them into Shares of a smaller amount provided that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced Share shall be the same as it was in case of the Share from which the reduced Share is derived; and

(d)     cancel any Shares that, at the date of the passing of the resolution, have not been taken or agreed to be taken by any Person and diminish the amount of its share capital by the amount of the Shares so cancelled.

27.     The Company may by Special Resolution reduce its share capital and any capital redemption reserve in any manner authorised by law.

## REDEMPTION, PURCHASE AND SURRENDER OF SHARES

28.     Subject to the Act, the Company may:

(a)     issue Shares on terms that they are to be redeemed or are liable to be redeemed at the option of the Company or the Shareholder on such terms and in such manner as the Directors may determine;

35631852.5.C8689.187150                                    9



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

(b)      purchase its own Shares (including any redeemable Shares) on such terms and in such manner as the Directors may determine and agree with the Shareholder;

(c)      make a payment in respect of the redemption or purchase of its own Shares in any manner authorised by the Act; and

(d)      accept the surrender for no consideration of any paid up Share (including any redeemable Share) on such terms and in such manner as the Directors may determine.

29.      Any Share in respect of which notice of redemption has been given shall not be entitled to participate in the profits of the Company in respect of the period after the date specified as the date of redemption in the notice of redemption.

30.      The redemption, purchase or surrender of any Share shall not be deemed to give rise to the redemption, purchase or surrender of any other Share.

31.      The Directors may when making payments in respect of redemption or purchase of Shares, if authorised by the terms of issue of the Shares being redeemed or purchased or with the agreement of the holder of such Shares, make such payment either in cash or in specie.

## TREASURY SHARES

32.      Shares that the Company purchases, redeems or acquires (by way of surrender or otherwise) may, at the option of the Company, be cancelled immediately or held as Treasury Shares in accordance with the Act. In the event that the Directors do not specify that the relevant Shares are to be held as Treasury Shares, such Shares shall be cancelled.

33.      No dividend may be declared or paid, and no other distribution (whether in cash or otherwise) of the Company's assets (including any distribution of assets to members on a winding up) may be declared or paid in respect of a Treasury Share.

34.      The Company shall be entered in the Register as the holder of the Treasury Shares provided that:

(a)      the Company shall not be treated as a member for any purpose and shall not exercise any right in respect of the Treasury Shares, and any purported exercise of such a right shall be void;

(b)      a Treasury Share shall not be voted, directly or indirectly, at any meeting of the Company and shall not be counted in determining the total number of issued shares at any given time, whether for the purposes of these Articles or the Act, save that an allotment of Shares as fully paid bonus shares in respect of a Treasury Share is permitted and Shares allotted as fully paid bonus shares in respect of a treasury share shall be treated as Treasury Shares.

35631852.5.C8689.187150              10



*Filed: 21-Feb-2025 09:26 EST*
*Auth Code: E90228166495*

35.    Treasury Shares may be disposed of by the Company on such terms and conditions as determined by the Directors.

## GENERAL MEETINGS

36.    The Directors may, whenever they think fit, convene a general meeting of the Company.

37.    The Directors may cancel or postpone any duly convened general meeting at any time prior to such meeting, for any reason or for no reason at any time prior to the time for holding such meeting or, if the meeting is adjourned, the time for holding such adjourned meeting.  The Directors shall give Shareholders notice in writing of any postponement, which postponement may be for a stated period of any length or indefinitely as the Directors may determine.

38.    If at any time there are no Directors, any two Shareholders (or if there is only one Shareholder then that Shareholder) entitled to vote at general meetings of the Company may convene a general meeting in the same manner as nearly as possible as that in which general meetings may be convened by the Directors.

## NOTICE OF GENERAL MEETINGS

39.    At least seven clear days' notice in writing counting from the date service is deemed to take place as provided in these Articles specifying the place, the day and the hour of the meeting and, in case of special business, the general nature of that business, shall be given in the manner hereinafter provided or in such other manner (if any) as may be prescribed by the Company by Ordinary Resolution to such Persons as are, under these Articles, entitled to receive such notices from the Company, but with the consent of all the Shareholders entitled to receive notice of some particular meeting and attend and vote thereat, that meeting may be convened by such shorter notice or without notice and in such manner as those Shareholders may think fit.

40.    The accidental omission to give notice of a meeting to or the non-receipt of a notice of a meeting by any Shareholder shall not invalidate the proceedings at any meeting.

## PROCEEDINGS AT GENERAL MEETINGS

41.    All business carried out at a general meeting shall be deemed special with the exception of sanctioning a dividend, the consideration of the accounts, balance sheets, any report of the Directors or of the Company's auditors, and the fixing of the remuneration of the Company's auditors. No special business shall be transacted at any general meeting without the consent of all Shareholders entitled to receive notice of that meeting unless notice of such special business has been given in the notice convening that meeting.

42.    No business shall be transacted at any general meeting unless a quorum of Shareholders Is present at the time when the meeting proceeds to business.  Save as otherwise provided by these Articles,

35631852.5.C8689.187150                                   11



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

one or more Shareholders holding at least a majority of the paid up voting share capital of the Company present in person or by proxy and entitled to vote at that meeting shall form a quorum.

43. If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of Shareholders, shall be dissolved. In any other case it shall stand adjourned to the same day in the next week, at the same time and place, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting the Shareholder or Shareholders present and entitled to vote shall form a quorum.

44. If the Directors wish to make this facility available for a specific general meeting or all general meetings of the Company, participation in any general meeting of the Company may be by means of a telephone or similar communication equipment by way of which all Persons participating in such meeting can communicate with each other and such participation shall be deemed to constitute presence in person at the meeting.

45. The chairman, if any, of the Directors shall preside as chairman at every general meeting of the Company.

46. If there is no such chairman, or if at any general meeting he is not present within fifteen minutes after the time appointed for holding the meeting or is unwilling to act as chairman, any Director or Person nominated by the Directors shall preside as chairman, failing which the Shareholders present in person or by proxy shall choose any Person present to be chairman of that meeting.

47. The chairman may adjourn a meeting from time to time and from place to place either:

(a) with the consent of any general meeting at which a quorum is present (and shall if so directed by the meeting): or

(b) without the consent of such meeting if, in his sole opinion, he considers it necessary to do so to:

(i) secure the orderly conduct or proceedings of the meeting; or

(ii) give all persons present in person or by proxy and having the right to speak and / or vote at such meeting, the ability to do so,

but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place. When a meeting, or adjourned meeting, is adjourned for fourteen days or more, notice of the adjourned meeting shall be given in the manner provided for the original meeting. Save as aforesaid, it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting.

48. At any general meeting a resolution put to the vote of the meeting shall be decided on a show of hands, unless a poll is (before or on the declaration of the result of the show of hands) demanded

35631852.5.C8689.187150



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

by the chairman or one or more Shareholders present in person or by proxy entitled to vote, and unless a poll is so demanded, a declaration by the chairman that a resolution has, on a show of hands, been carried, or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book of the proceedings of the Company, shall be conclusive evidence of the fact, without proof of the number or proportion of the votes recorded in favour of, or against, that resolution.

49. If a poll is duly demanded it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

50. In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded, shall be entitled to a second or casting vote.

51. A poll demanded on the election of a chairman of the meeting or on a question of adjournment shall be taken forthwith. A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs.

### VOTES OF SHAREHOLDERS

52. On a show of hands every holder of Management Shares present in person and every Person representing such a Shareholder by proxy shall have one vote, and on a poll every holder of Management Shares present in person and every Person representing such Shareholder by proxy shall be entitled to one vote in respect of each of the Management Shares held by them.

53. In the case of joint holders the vote of the senior who tenders a vote whether in person or by proxy shall be accepted to the exclusion of the votes of the other joint holders and for this purpose seniority shall be determined by the order in which the names stand in the Register.

54. A Shareholder of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote in respect of Shares carrying the right to vote held by him, whether on a show of hands or on a poll, by his committee, or other Person in the nature of a committee appointed by that court, and any such committee or other Person, may vote in respect of such Shares by proxy.

55. No Shareholder shall be entitled to vote at any general meeting of the Company unless all calls, if any, or other sums presently payable by him in respect of Shares carrying the right to vote held by him have been paid.

56. On a poll votes may be given either personally or by proxy.

57. The instrument appointing a proxy shall be in writing under the hand of the appointor or of his attorney duly authorised in writing or, if the appointor is a corporation, either under Seal or under the hand of an officer or attorney duly authorised. A proxy need not be a Shareholder.

35631852.5.C8689.187150

13



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

www.verify.gov.ky File#: 263805

58.  An instrument appointing a proxy may be in any usual or common form or such other form as the Directors may approve.

59.  The instrument appointing a proxy shall be deposited at the Office or at such other place as is specified for that purpose in the notice convening the meeting no later than the time for holding the meeting or, if the meeting is adjourned, the time for holding such adjourned meeting.

60.  The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

61.  A resolution in writing signed by all the Shareholders for the time being entitled to receive notice of and to attend and vote at general meetings of the Company (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the Company duly convened and held.

## CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS

62.  Any corporation which is a Shareholder or a Director may by resolution of its directors or other governing body authorise such Person as it thinks fit to act as its representative at any meeting of the Company or of any meeting of holders of a Class or of the Directors or of a committee of Directors, and the Person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual Shareholder or Director.

## DIRECTORS

63.  The name(s) of the first Director(s) shall either be determined in writing by a majority (or in the case of a sole subscriber that subscriber) of, or elected at a meeting of, the subscribers of the Memorandum of Association.

64.  The Company may by Ordinary Resolution appoint any natural person or corporation to be a Director.

65.  Subject to these Articles, a Director shall hold office until such time as he is removed from office by Ordinary Resolution.

66.  The Company may by Ordinary Resolution from time to time fix the maximum and minimum number of Directors to be appointed but unless such numbers are fixed as aforesaid the minimum number of Directors shall be one and the maximum number of Directors shall be unlimited.

67.  The remuneration of the Directors may be determined by the Directors or by Ordinary Resolution.

68.  There shall be no shareholding qualification for Directors unless determined otherwise by Ordinary Resolution.

35631852.5.C8689.187150                    14



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

69. The Directors shall have power at any time and from time to time to appoint a natural person or corporation as a Director, either as a result of a casual vacancy or as an additional Director, subject to the maximum number (if any) imposed by Ordinary Resolution.

70. The Management Director shall be entitled to cast ten (10) votes on all matters and each other Director shall be entitled to cast one (1) vote. Such voting powers shall apply to voting in any committee or subcommittee of the Board. Every reference in these Articles to a majority or other proportion of the Directors, including for purposes of determining a quorum, shall refer to a majority or other proportion of the votes of the Directors then in office.

## POWERS AND DUTIES OF DIRECTORS

71. Subject to the Act, these Articles and to any resolutions passed in a general meeting, the business of the Company shall be managed by the Directors, who may pay all expenses incurred in setting up and registering the Company and may exercise all powers of the Company. No resolution passed by the Company in general meeting shall invalidate any prior act of the Directors that would have been valid if that resolution had not been passed.

72. The Directors may from time to time appoint any natural person or corporation , whether or not a Director to hold such office in the Company as the Directors may think necessary for the administration of the Company, including but not limited to, the office of president, one or more vice-presidents, treasurer, assistant treasurer, manager or controller, and for such term and at such remuneration (whether by way of salary or commission or participation in profits or partly in one way and partly in another), and with such powers and duties as the Directors may think fit. Any natural person or corporation so appointed by the Directors may be removed by the Directors or

35631852.5.C8689.187150

15



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

by the Company by Ordinary Resolution. The Directors may also appoint one or more of their number to the office of managing director upon like terms, but any such appointment shall ipso facto determine if any managing director ceases from any cause to be a Director, or if the Company by Ordinary Resolution resolves that his tenure of office be terminated.

73. The Directors may appoint any natural person or corporation to be a Secretary (and if need be an assistant Secretary or assistant Secretaries) who shall hold office for such term, at such remuneration and upon such conditions and with such powers as they think fit. Any Secretary or assistant Secretary so appointed by the Directors may be removed by the Directors or by the Company by Ordinary Resolution.

74. The Directors may delegate any of their powers to committees consisting of such member or members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the Directors.

75. The Directors may from time to time and at any time by power of attorney (whether under Seal or under hand) or otherwise appoint any company, firm or Person or body of Persons, whether nominated directly or indirectly by the Directors, to be the attorney or attorneys or authorised signatory (any such person being an "**Attorney**" or "**Authorised Signatory**", respectively) of the Company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such power of attorney or other appointment may contain such provisions for the protection and convenience of Persons dealing with any such Attorney or Authorised Signatory as the Directors may think fit, and may also authorise any such Attorney or Authorised Signatory to delegate all or any of the powers, authorities and discretion vested in him.

76. The Directors may from time to time provide for the management of the affairs of the Company in such manner as they shall think fit and the provisions contained in the three next following Articles shall not limit the general powers conferred by this Article.

77. The Directors from time to time and at any time may establish any committees, local boards or agencies for managing any of the affairs of the Company and may appoint any natural person or corporation to be a member of such committees or local boards and may appoint any managers or agents of the Company and may fix the remuneration of any such natural person or corporation.

78. The Directors from time to time and at any time may delegate to any such committee, local board, manager or agent any of the powers, authorities and discretions for the time being vested in the Directors and may authorise the members for the time being of any such local board, or any of them to fill any vacancies therein and to act notwithstanding vacancies and any such appointment or delegation may be made on such terms and subject to such conditions as the Directors may think fit and the Directors may at any time remove any natural person or corporation so appointed and

35631852.5.C8689.187150

16



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

may annul or vary any such delegation, but no Person dealing in good faith and without notice of any such annulment or variation shall be affected thereby.

79.     Any such delegates as aforesaid may be authorised by the Directors to sub-delegate all or any of the powers, authorities, and discretion for the time being vested in them.

## BORROWING POWERS OF DIRECTORS

80.     The Directors may exercise all the powers of the Company to borrow money and to mortgage or charge its undertaking, property and uncalled capital or any part thereof, to issue debentures, debenture stock and other securities whenever money is borrowed or as security for any debt, liability or obligation of the Company or of any third party.

## THE SEAL

81.     The Seal shall not be affixed to any instrument except by the authority of a resolution of the Directors provided always that such authority may be given prior to or after the affixing of the Seal and if given after may be in general form confirming a number of affixings of the Seal.  The Seal shall be affixed in the presence of a Director or a Secretary (or an assistant Secretary) or in the presence of any one or more Persons as the Directors may appoint for the purpose and every Person as aforesaid shall sign every instrument to which the Seal is so affixed in their presence.

82.     The Company may maintain a facsimile of the Seal in such countries or places as the Directors may appoint and such facsimile Seal shall not be affixed to any instrument except by the authority of a resolution of the Directors provided always that such authority may be given prior to or after the affixing of such facsimile Seal and if given after may be in general form confirming a number of affixings of such facsimile Seal.  The facsimile Seal shall be affixed in the presence of such Person or Persons as the Directors shall for this purpose appoint and such Person or Persons as aforesaid shall sign every instrument to which the facsimile Seal is so affixed in their presence and such affixing of the facsimile Seal and signing as aforesaid shall have the same meaning and effect as if the Seal had been affixed in the presence of and the instrument signed by a Director or a Secretary (or an assistant Secretary) or in the presence of any one or more Persons as the Directors may appoint for the purpose.

83.     Notwithstanding the foregoing, a Secretary or any assistant Secretary shall have the authority to affix the Seal, or the facsimile Seal, to any instrument for the purposes of attesting authenticity of the matter contained therein but which does not create any obligation binding on the Company.

## DISQUALIFICATION OF DIRECTORS

84.     The office of Director shall be vacated, if the Director:

        (a)     becomes bankrupt or makes any arrangement or composition with his creditors;



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

(b)     dies or is found to be or becomes of unsound mind;

(c)     resigns his office by notice in writing to the Company;

(d)     is removed from office by Ordinary Resolution;

(e)     is removed from office by notice addressed to him at his last known address and signed by ail of his co-Directors (not being less than two in number); or

(f)     is removed from office pursuant to any other provision of these Articles, including without limitation, in the circumstance set out in Article 13.

## PROCEEDINGS OF DIRECTORS

85.     The Directors may meet together (either within or without the Cayman Islands) for the despatch of business, adjourn, and otherwise regulate their meetings and proceedings as they think fit. Questions arising at any meeting shall be decided by a majority of votes. In case of an equality of votes the chairman shall have a second or casting vote. A Director may, and a Secretary or assistant Secretary on the requisition of a Director shall, at any time summon a meeting of the Directors.

86.     A Director may participate in any meeting of the Directors, or of any committee appointed by the Directors of which such Director is a member, by means of telephone or similar communication equipment by way of which all Persons participating in such meeting can communicate with each other and such participation shall be deemed to constitute presence in person at the meeting.

87.     The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed, if there be two or more Directors the quorum shall be two which must include the Management Director, and if there be one Director the quorum shall be one.

88.     A Director who is in any way, whether directly or indirectly, interested in a contract or proposed contract with the Company shall declare the nature of his interest at a meeting of the Directors. A general notice given to the Directors by any Director to the effect that he is a member of any specified company or firm and is to be regarded as interested in any contract which may thereafter be made with that company or firm shall be deemed a sufficient declaration of interest in regard to any contract so made. A Director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the Directors at which any such contract or proposed contract or arrangement shall come before the meeting for consideration.

89.     A Director may hold any other office or place of profit under the Company (other than the office of auditor) in conjunction with his office of Director for such period and on such terms (as to remuneration and otherwise) as the Directors may determine and no Director or intending Director

35631852.5.C8689.187150                                    18



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

shall be disqualified by his office from contracting with the Company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise, nor shall any such contract or arrangement entered into by or on behalf of the Company in which any Director is in any way interested, be liable to be avoided, nor shall any Director so contracting or being so interested be liable to account to the Company for any profit realised by any such contract or arrangement by reason of such Director holding that office or of the fiduciary relation thereby established. A Director, notwithstanding his interest, may be counted in the quorum present at any meeting of the Directors whereat he or any other Director is appointed to hold any such office or place of profit under the Company or whereat the terms of any such appointment are arranged and he may vote on any such appointment or arrangement.

90. Any Director may act by himself or his firm in a professional capacity for the Company, and he or his firm shall be entitled to remuneration for professional services as if he were not a Director; provided that nothing herein contained shall authorise a Director or his firm to act as auditor to the Company.

91. The Directors shall cause minutes to be made in books or loose-leaf folders provided for the purpose of recording:

(a) all appointments of officers made by the Directors;

(b) the names of the Directors present at each meeting of the Directors and of any committee of the Directors; and

(c) all resolutions and proceedings at all meetings of the Company, and of the Directors and of committees of Directors.

92. When the chairman of a meeting of the Directors signs the minutes of such meeting the same shall be deemed to have been duly held notwithstanding that all the Directors have not actually come together or that there may have been a technical defect in the proceedings.

93. A resolution in writing signed by all the Directors or all the members of a committee of Directors entitled to receive notice of a meeting of Directors or committee of Directors, as the case may be, shall be as valid and effectual as if it had been passed at a duly called and constituted meeting of Directors or committee of Directors, as the case may be. When signed a resolution may consist of several documents each signed by one or more of the Directors. Notwithstanding anything to the contrary herein, a resolution in writing signed by all the Directors in respect of a Material Transaction must be duly notarized by a notary public.

94. The continuing Directors may act notwithstanding any vacancy in their body but if and for so long as their number is reduced below the number fixed by or pursuant to these Articles as the necessary quorum of Directors, the continuing Directors may act for the purpose of increasing the number, or of summoning a general meeting of the Company, but for no other purpose.



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

95.     The Directors may elect a chairman of their meetings and determine the period for which he is to hold office but if no such chairman is elected, or if at any meeting the chairman is not present within fifteen minutes after the time appointed for holding the meeting, the Directors present may choose one of their number to be chairman of the meeting.

96.     Subject to any regulations imposed on it by the Directors, a committee appointed by the Directors may elect a chairman of its meetings.  If no such chairman is elected, or if at any meeting the chairman is not present within fifteen minutes after the time appointed for holding the meeting, the committee members present may choose one of their number to be chairman of the meeting.

97.     A committee appointed by the Directors may meet and adjourn as it thinks proper. Subject to any regulations imposed on it by the Directors, questions arising at any meeting shall be determined by a majority of votes of the committee members present and in case of an equality of votes the chairman shall have a second or casting vote.

98.     All acts done by any meeting of the Directors or of a committee of Directors, or by any Person acting as a Director, shall notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such Director or Person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such Person had been duly appointed and was qualified to be a Director.

35631852.5.C8689.187150

www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

## DIVIDENDS

99.  Subject to any rights and restrictions for the time being attached to any Shares, or as otherwise provided for in the Act and these Articles, the Directors may from time to time declare dividends (including interim dividends) and other distributions on Shares in issue and authorise payment of the same out of the funds of the Company lawfully available therefor.

100.  Subject to any rights and restrictions for the time being attached to any Shares, the Company by Ordinary Resolution may declare dividends, but no dividend shall exceed the amount recommended by the Directors.

101.  The Directors may, before recommending or declaring any dividend, set aside out of the funds legally available for distribution such sums as they think proper as a reserve or reserves which shall, in the absolute discretion of the Directors be applicable for meeting contingencies, or for equalising dividends or for any other purpose to which those funds may be properly applied and pending such application may in the absolute discretion of the Directors, either be employed in the business of the Company or be invested in such investments as the Directors may from time to time think fit.

102.  Any dividend may be paid in any manner as the Directors may determine. If paid by cheque it will be sent through the post to the registered address of the Shareholder or Person entitled thereto, or in the case of joint holders, to any one of such joint holders at his registered address or to such Person and such address as the Shareholder or Person entitled, or such joint holders as the case may be, may direct. Every such cheque shall be made payable to the order of the Person to whom it is sent or to the order of such other Person as the Shareholder or Person entitled, or such joint holders as the case may be, may direct.

103.  The Directors when paying dividends to the Shareholders in accordance with the foregoing provisions of these Articles may make such payment either in cash or in specie.

104.  Subject to any rights and restrictions for the time being attached to any Participating Shares, all dividends shall be declared and paid in such amounts as may be declared by the Director's in their sole and absolute discretion without a requirement to pay such dividends on a pro-rata basis as to the paid-up or par value of the Shares.

105.  If several Persons are registered as joint holders of any Share, any of them may give effectual receipts for any dividend or other moneys payable on or in respect of the Share.

106.  No dividend shall bear interest against the Company.

## ACCOUNTS, AUDIT AND ANNUAL RETURN AND DECLARATION

107.  The books of account relating to the Company's affairs shall be kept in such manner as may be determined from time to time by the Directors.

35631852.5.C8689.187150

21



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

108. The books of account shall be kept at the Office, or at such other place or places as the Directors think fit, and shall always be open to the inspection of the Directors.

109. The Directors may from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the Company or any of them shall be open to the inspection of Shareholders not being Directors, and no Shareholder (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by law or authorised by the Directors or by Ordinary Resolution.

110. The accounts relating to the Company's affairs shall only be audited if the Directors so determine, in which case the financial year end and the accounting principles will be determined by the Directors.

111. The Directors in each year shall prepare, or cause to be prepared, an annual return and declaration setting forth the particulars required by the Act and deliver a copy thereof to the Registrar of Companies in the Cayman Islands.

## CAPITALISATION OF RESERVES

112. Subject to the Act and these Articles, the Directors may:

(a) resolve to capitalise an amount standing to the credit of reserves (including a Share Premium Account, capital redemption reserve and profit and loss account), whether or not available for distribution;

(b) appropriate the sum resolved to be capitalised to the Shareholders in proportion to the nominal amount of Participating Shares (whether or not fully paid) held by them respectively and apply that sum on their behalf in or towards:

(i) paying up the amounts (if any) for the time being unpaid on Participating Shares held by them respectively; or

(ii) paying up in full unissued Participating Shares or debentures of a nominal amount equal to that sum,

and allot the Participating Shares or debentures, credited as fully paid, to the Shareholders (or as they may direct) in those proportions, or partly in one way and partly in the other, but the Share Premium Account, the capital redemption reserve and profits which are not available for distribution may, for the purposes of this Article, only be applied in paying up unissued Participating Shares to be allotted to Shareholders credited as fully paid;

(c) make any arrangements they think fit to resolve a difficulty arising in the distribution of a capitalised reserve and in particular, without limitation, where Participating Shares or

35631852.5.C8689.187150                                    22



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

debentures become distributable in fractions the Directors may deal with the fractions as they think fit;

(d)    authorise a Person to enter (on behalf of all the Shareholders concerned) into an agreement with the Company providing for either:

(i)    the allotment to the Shareholders respectively, credited as fully paid, of Participating Shares or debentures to which they may be entitled on the capitalisation, or

(ii)    the payment by the Company on behalf of the Shareholders (by the application of their respective proportions of the reserves resolved to be capitalised) of the amounts or part of the amounts remaining unpaid on their existing Participating Shares, and any such agreement made under this authority being effective and binding on all those Shareholders; and

(iii)  generally do all acts and things required to give effect to any of the actions contemplated by this Article.

## SHARE PREMIUM ACCOUNT

113.    The Directors shall in accordance with the Act establish a Share Premium Account and shall carry to the credit of such account from time to time a sum equal to the amount or value of the premium paid on the issue of any Share.

114.    There shall be debited to any Share Premium Account on the redemption or purchase of a Share the difference between the nominal value of such Share and the redemption or purchase price provided always that at the discretion of the Directors such sum may be paid out of the profits of the Company or, if permitted by the Act, out of capital.

## NOTICES

115.    Any notice or document may be served by the Company or by the Person entitled to give notice to any Shareholder either personally, or by posting it airmail or air courier service in a prepaid letter addressed to such Shareholder at his address as appearing in the Register, or by electronic mail to any electronic mail address such Shareholder may have specified in writing for the purpose of such service of notices, or by facsimile should the Directors deem it appropriate. In the case of joint holders of a Share, all notices shall be given to that one of the joint holders whose name stands first in the Register in respect of the joint holding, and notice so given shall be sufficient notice to all the joint holders.

116.    Any Shareholder present, either personally or by proxy, at any meeting of the Company shall for all purposes be deemed to have received due notice of such meeting and, where requisite, of the purposes for which such meeting was convened.

35631852.5.C8689.187150          23



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

117. Any notice or other document, if served by:

    (a)    post, shall be deemed to have been served five clear days after the time when the letter containing the same is posted;

    (b)    facsimile, shall be deemed to have been served upon production by the transmitting facsimile machine of a report confirming transmission of the facsimile in full to the facsimile number of the recipient;

    (c)    recognised courier service, shall be deemed to have been served 48 hours after the time when the letter containing the same is delivered to the courier service; or

    (d)    electronic mail, shall be deemed to have been served immediately upon the time of the transmission by electronic mail.

In proving service by post or courier service it shall be sufficient to prove that the letter containing the notice or documents was properly addressed and duly posted or delivered to the courier service.

118. Any notice or document delivered or sent by post to or left at the registered address of any Shareholder in accordance with the terms of these Articles shall notwithstanding that such Shareholder be then dead or bankrupt, and whether or not the Company has notice of his death or bankruptcy, be deemed to have been duly served in respect of any Share registered in the name of such Shareholder as sole or joint holder, unless his name shall at the time of the service of the notice or document, have been removed from the Register as the holder of the Share, and such service shall for all purposes be deemed a sufficient service of such notice or document on all Persons interested (whether jointly with or as claiming through or under him) in the Share.

119. Notice of every general meeting of the Company shall be given to:

    (a)    all Shareholders holding Shares with the right to receive notice and who have supplied to the Company an address for the giving of notices to them; and

    (b)    every Person entitled to a Share in consequence of the death or bankruptcy of a Shareholder, who but for his death or bankruptcy would be entitled to receive notice of the meeting.

No other Person shall be entitled to receive notices of general meetings.

## NON-RECOGNITION OF TRUSTS

120. Subject to the proviso hereto, no Person shall be recognised by the Company as holding any Share upon any trust and the Company shall not, unless required by law, be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial

35631852.5.C8689.187150

24



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

interest in any Share or (except only as otherwise provided by these Articles or as the Act requires) any other right in respect of any Share except an absolute right to the entirety thereof in each Shareholder registered in the Register, provided that, notwithstanding the foregoing, the Company shall be entitled to recognise any such interests as shall be determined by the Directors.

## WINDING UP

121. If the Company shall be wound up the liquidator shall apply the assets of the Company in such manner and order as he thinks fit in satisfaction of creditors' claims.

122. Subject to any rights and restrictions for the time being attributed to any Class or Series, the assets available for distribution among the Shareholders shall then be applied in the following priority:

    (a)    first, in the payment to the holders of Participating Shares and Management Shares, *pari passu*, of a sum equal to the par value of the Participating Shares or Management Shares held by them; and

    (b)    second, in the payment of any balance to holders of Participating Shares, such payment being made in proportion to the number Participating Shares of the relevant Class and Series held.

123. If the Company shall be wound up, the liquidator may, with the sanction of an Ordinary Resolution divide amongst the Participating Shareholders in specie or kind the whole or any part of the assets of the Company (whether they shall consist of property of the same kind or not) and may, for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the Participating Shareholders or different Classes. The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the Participating Shareholders as the liquidator, with the like sanction shall think fit, but so that no Shareholder shall be compelled to accept any assets whereon there is any liability.

## AMENDMENT OF ARTICLES OF ASSOCIATION

124. Subject to the Act and the rights attaching to the various Classes, the Company may at any time and from time to time by Special Resolution alter or amend these Articles in whole or in part.

## CLOSING OF REGISTER OR FIXING RECORD DATE

125. For the purpose of determining those Shareholders that are entitled to receive notice of, attend or vote at any meeting of Shareholders or any adjournment thereof, or those Shareholders that are entitled to receive payment of any dividend, or in order to make a determination as to who is a Shareholder for any other purpose, the Directors may provide that the Register shall be closed for transfers for a stated period which shall not exceed in any case 40 days. If the Register shall be so closed for the purpose of determining those Shareholders that are entitled to receive notice of,



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

attend or vote at a meeting of Shareholders the Register shall be so closed for at least ten days immediately preceding such meeting and the record date for such determination shall be the date of the closure of the Register.

126. In lieu of or apart from closing the Register, the Directors may fix in advance a date as the record date for any such determination of those Shareholders that are entitled to receive notice of, attend or vote at a meeting of the Shareholders and for the purpose of determining those Shareholders that are entitled to receive payment of any dividend the Directors may, at or within 90 days prior to the date of declaration of such dividend, fix a subsequent date as the record date for such determination.

127. If the Register is not so closed and no record date is fixed for the determination of those Shareholders entitled to receive notice of, attend or vote at a meeting of Shareholders or those Shareholders that are entitled to receive payment of a dividend, the date on which notice of the meeting is posted or the date on which the resolution of the Directors declaring such dividend is adopted, as the case may be, shall be the record date for such determination of Shareholders. When a determination of those Shareholders that are entitled to receive notice of, attend or vote at a meeting of Shareholders has been made as provided in this Article, such determination shall apply to any adjournment thereof.

## REGISTRATION BYWAY OF CONTINUATION

128. The Company may by Special Resolution resolve to be registered by way of continuation in a jurisdiction outside the Cayman Islands or such other jurisdiction in which it is for the time being incorporated, registered or existing. In furtherance of a resolution adopted pursuant to this Article, the Directors may cause an application to be made to the Registrar of Companies to deregister the Company in the Cayman Islands or such other jurisdiction in which it is for the time being incorporated, registered or existing and may cause all such further steps as they consider appropriate to be taken to effect the transfer by way of continuation of the Company.

## MERGERS AND CONSOLIDATION

129. The Company may by Special Resolution resolve to merge or consolidate the Company in accordance with the Act.

## DISCLOSURE

130. The Directors, or any authorised service providers (including the officers, the Secretary and the registered office agent of the Company), shall be entitled to disclose to any regulatory or judicial authority, or to any stock exchange on which the Shares or any Class or Series may from time to time be listed, any information regarding the affairs of the Company including, without limitation, information contained in the Register and books of the Company.



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

## INDEMNITY

131.    To the fullest extent permitted by law, no Director, Secretary, Assistant Secretary, committee member or other officer for the time being and from time to time of the Company (each, a "Covered Person" and collectively, "**Covered Persons**") shall be liable to the Company or anyone for any reason whatsoever (including but not limited to (i) any act or omission by any Covered Person in connection with the conduct of the business of the Company, that is determined by such Covered Person in good faith to be in or not opposed to the best interests of the Company, (ii) any act or omission by any Covered Person based on the suggestions of any professional advisor of the Company whom such Covered Person believes is authorized to make such suggestions on behalf of the Company, (iii) any act or omission by the Company, or (iv) any mistake, negligence, misconduct or bad faith of any broker or other agent of the Company selected by Covered Person with reasonable care), unless any act or omission by such Covered Person constitutes wilful misconduct or Gross Negligence by such Covered Person (as determined by a non-appeaiable judgment of a court of competent jurisdiction).

132.    Covered Person may consult with legal counsel or accountants selected by such Covered Person and any act or omission by such Covered Person on behalf of the Company or in furtherance of the business of the Company in good faith in reliance on and in accordance with the advice of such counsel or accountants shall be full justification for the act or omission, and such Covered Person shall be fully protected in so acting or omitting to act if the counsel or accountants were selected with reasonable care.

133.    To the fullest extent permitted by law, the Company shall indemnify and save harmless Covered Persons (the "**Indemnitees**"), from and against any and all claims, liabilities, damages, losses, costs and expenses, including amounts paid in satisfaction of judgments, in compromises and settlements, as fines and penalties and legal or other costs and expenses of investigating or defending against any claim or alleged claim, of any nature whatsoever, known or unknown, liquidated or unliquidated, that are incurred by any Indemnitee and arise out of or in connection with the business of the Company, any investment made, or the performance by the Indemnitee of Covered Person's responsibilities hereunder and against all taxes, charges, duties or levies incurred by such Covered Person or any Indemnitee in connection with the Company, provided that an Indemnitee shall not be entitled to indemnification hereunder to the extent the Indemnitee's conduct constitutes willful misconduct or Gross Negligence (as determined by a non-appealable judgment of a court of competent jurisdiction). The termination of any proceeding by settlement, judgment, order or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the Indemnitee's conduct constituted willful misconduct or Gross Negligence.

134.    Expenses incurred by an Indemnitee in defense or settlement of any claim that shall be subject to a right of indemnification hereunder, shall be advanced by the Company prior to the final disposition thereof upon receipt of an undertaking by or on behalf of the Indemnitee to repay the amount advanced to the extent that it shall be determined ultimately that the Indemnitee is not entitled to be indemnified hereunder.



Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

135. The right of any Indemnitee to the indemnification provided herein shall be cumulative of, and in addition to, any and all rights to which the Indemnitee may otherwise be entitled by contract or as a matter of law or equity and shall be extended to the Indemnitee's successors, assigns and legal representatives.

**DISPUTE RESOLUTION**

136. Subject to the prior written consent of all parties involved in the Dispute (as defined below) to such dispute resolution procedures, the following procedures shall be used to resolve any controversy or claim ("**Dispute**") arising out of, relating to or in connection with these Articles or otherwise involving the Company, a trustee appointed to represent the Company on claims derivative of the Company, its Shareholders and/or any Covered Person. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

    (a)    Mediation:

        (i)    subject to the prior written consent of all parties involved in the Dispute, any Dispute shall be submitted to mediation by written notice to the other party or parties. In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator shall be designated by JAMS/Endispute at the request of a party using, if necessary, strike and rank procedures then in effect;

        (ii)    the mediation will be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute;

        (iii)    the mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings; and

        (iv)    each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties,

    (b)    Arbitration:

Subject to the prior written consent of all parties involved in the Dispute to such dispute resolution procedure, if a Dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration. The arbitration will be administered by JAMS/Endispute pursuant to JAMS' Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. ("**Arbitration Rules**"). In the event of a conflict, the provisions of these Articles will control:

        (i)    the arbitration will be conducted before a panel of three arbitrators, regardless of the size of the dispute, to be selected as provided in the Arbitration Rules. Any issue

35631852.5.C8689.187150            28

*Filed: 21-Feb-2025 09:26 EST*
*Auth Code: E90228166495*

www.verify.gov.ky File#: 263805

concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the United States Federal Arbitration Act ("**FAA**"), and resolved by the arbitrators, provided, however, that the Company or such applicable affiliate thereof may pursue a temporary restraining order and/or preliminary injunctive relief in connection with confidentiality covenants or agreements binding on any party, with related expedited discovery for the parties, in a court of law, and, thereafter, require arbitration of all issues of final relief. Under no circumstances will a State arbitration act of the United States preclude application of the FAA, including any choice of law provisions in this agreement, or any other agreement. No potential arbitrator may serve on the panel unless he or she has agreed in writing to abide and be bound by these procedures;

(ii) the arbitrators may not award non-monetary or equitable relief of any sort. They shall have no power to award punitive damages or any other damages not measured by the prevailing party's actual damages, and the parties expressly waive their right to obtain such damages in arbitration or any in other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitrators have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction. The arbitrators) shall be required to state in a written opinion all facts and conclusions of law relied upon to support any decision rendered. Any dispute over whether the arbitrator(s) has failed to comply with the foregoing will be resolved by summary judgment in a court of law;

(iii) the party initiating arbitration shall pay all arbitration costs and arbitrator's fees, subject to a final arbitration award on who should bear costs and fees. All proceedings shall be conducted in Dallas, Texas, or another mutually agreeable site. Each party shall bear its own attorneys fees, costs and expenses, including any costs of experts, witnesses and/or travel, subject to a final arbitration award on who should bear costs and fees. This provision is intended to supersede any rights under Texas Civil Practices and Remedies Code § 38.001(8), which rights the parties expressly waive;

(iv) no discovery will be allowed in connection with the arbitration unless the arbitration panel, upon a showing of substantial need, expressly authorizes it. In any event, there shall be no more than (i) two party depositions of six hours each. Each deposition is to be taken pursuant to the Texas Rules of Civil Procedure; (ii) one non-party deposition of six hours; (iii) twenty-five interrogatories; (iv) twenty-five requests for admission; (v) ten requests for production. In response, the producing party shall not be obligated to produce in excess of 5,000 total pages of documents. The total pages of documents shall include electronic documents; (vi) one request for disclosure pursuant to the Texas Rules of Civil Procedure. Any discovery not specifically provided for in this paragraph, whether to parties or non-parties, shall not be permitted;

(v) all aspects of the arbitration shall be treated as confidential, including its institution and/or settlement. Neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable

35631852.5.C8689.187150

29

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

opportunity to protect their interests. In the event a party who recovered monies by settlement, award by the arbitration panel, or otherwise in connection with the Dispute violates this confidentiality term, he, she, or it shall refund all such sums recovered. The parties expressly intend to waive the right to retain any monies received through settlement, award by the arbitration panel, or otherwise in connection with the Dispute in the event that that party violates the aforementioned confidentiality term; and

    (vi)    the result of the arbitration will be binding on the parties, and judgment on the arbitrators' award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

    (c)    Notwithstanding anything to the contrary herein, for greater certainty, in accordance with the terms herein, if all parties involved in the Dispute do not provide written consent to following the mediation and/or arbitration provisions herein, a party shall maintain its right to pursue his/her/its Dispute in court.

## AEOI

137.    Notwithstanding any other Article, in order to comply with AEOI, any Director shall be entitled to release and/or disclose on behalf of the Company to the Cayman Islands Tax Information Authority or equivalent authority (the "**TIA**") and any other foreign government body as required by AEOI, any information in its or its agents' or delegates' possession regarding a Member including, without limitation, financial information concerning the Member's investment in the Company, and any information relating to any shareholders, principals, partners, beneficial owners (direct or indirect) or controlling persons (direct or indirect) of such Member. Any such Director may also authorise any third party agent, including but not limited to, the Investment Manager or Administrator, to release and/or disclose such information on behalf of the Company.

138.    In order to comply with AEOI and, if necessary, to reduce or eliminate any risk that the Company or its Members are subject to withholding taxes pursuant to AEOI or incur any costs, debts, expenses, obligations or liabilities (whether external, or internal, to the Company) (together, "**costs**") associated with AEOI, the Directors may cause the Company to undertake any of the following actions:

    (a)    compulsorily redeem any or all of the Shares held by a Member either (i) where the Member fails to provide (in a timely manner) to the Company, or any agent or delegate of the Company, including but not limited to, the Investment Manager or the Administrator, any information requested by the Company or such agent or delegate pursuant to AEOI; or (ii) where there has otherwise been non-compliance by the Company with AEOI whether caused, directly or indirectly, by the action or inaction of such Member, or any related person, or otherwise;

    (b)    deduct from, or hold back, redemption or repurchase proceeds, dividend payments or any other distributions, in order to:

        (i)    comply with any applicable requirement to apply and collect withholding tax pursuant to AEOI;

        (ii)    allocate to a Member an amount equal to any withholding tax imposed on the Company as a result of the Member's, or any related person's, action or inaction (direct or indirect), or where there has otherwise been non-compliance by the Company with AEOI;

35631852.5.C8689.187150

30

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

     (iii)    ensure that any AEOI related costs are recovered from the Member(s) whose action or inaction (directly or indirectly, including the action or inaction of any person related to such Member) gave rise or contributed to such costs.

139.    In order to give effect to the requirements imposed upon the Company by AEOI, as well as any of the actions contemplated by Articles 138(a) and 139(b), the Directors may undertake any of the following actions:

    (a)    create separate classes and/or series of Shares ("**AEOI Shares**"), with such rights and terms as the Directors may in their sole discretion determine, and following the compulsory redemption of some or all of a Member's Shares may immediately apply such redemption proceeds in subscribing for such number of AEOI Shares as the Directors determine;

    (b)    may re-name any number of Shares (whether issued or unissued) as AEOI Shares, create a Separate Account with respect to such AEOI Shares and apply any AEOI related costs or withholding taxes to such Separate Account;

    (c)    allocate any AEOI costs or withholding tax among Separate Accounts on a basis determined solely by the Directors; and

    (d)    adjust the Net Asset Value per Share of any relevant Shares (including any AEOI Share).



35631852.5.C8689.187150        31

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

**Annexure**

**Fiscal Year**

The fiscal year of the Company ends on the 31st day of December in each year, unless the Directors prescribe some other period therefor.

35631852.5.C8689.187150                                    32



www.verify.gov.ky File#: 263805

Filed: 21-Feb-2025 09:26 EST
Auth Code: E90228166495

# EXHIBIT 6

### Register of Members of

## Charitable DAF HoldCo, Ltd

Registration No: 263805

**Share Class: Management**

Authorised Capital of USD 1.00 divided into 100.00 Management shares of par value USD 0.01 each

| Entry No. | Name and Address of Shareholder | Date of Entry | Cert. Nr | Shares Acquired | Issue Price | Amount Paid | Nature of Acquisition | Date Shares Disposed | Shares Disposed | Remarks | Balance Shares | Transaction Details |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | WNL Limited 190 Elgin Avenue George Town Grand Cayman KY1-9001 Cayman Islands | 7-Nov-2011 | | 1.00 | 0.01 | In Full | 7-Nov-2011 : Allotment of 1.00 Management share(s) | 7-Nov-2011 | 1.00 | | 0.00 | 7-Nov-2011 : Repurchase of 1.00 Management share(s) |
| 2 | Grant James Scott Highland Capital Managment, L.P. 13455 Noel Road, Suite 800 Dallas, TX 75240 USA | 7-Nov-2011 | | 100.00 | 1.00 | In Full | 7-Nov-2011 : Allotment of 100.00 Management share(s) | 25-Mar-2021 | 100.00 | | 0.00 | 25-Mar-2021 : Transfer of 100.00 Management share(s) to Mark E. Patrick |
| 3 | Mark E. Patrick 6716 Glenhurst Dr Dallas, TX 75254 USA | 25-Mar-2021 | | 100.00 | 1.00 | In Full | 25-Mar-2021 : Transfer of 100.00 Management share(s) to Mark E. Patrick | | 0.00 | | 100.00 | |

Notes

1    Where there is only one class of shares in issue, all issued shares carry equal (and unconditional) voting rights. Unless shares are described as "Non-Voting" they carry voting rights to vote at general meetings on all or substantially all matters (including the right to appoint or remove directors). Where shares are described as "Non-Voting" this designates that they do not carry rights to vote at general meetings on all or substantially all matters (including the right to appoint or remove directors). Al shares carry unconditional voting rights, save where shares are described as "conditional" which designates that they only carry rights to vote at general meetings in certain circumstances.

**CONFIDENTIAL**
Printed on 25 April 2025

Register of Members of

**Charitable DAF HoldCo, Ltd**

Registration No: 263805

Summary

| Name | Number and Class of Shares Held | |
|------|------|------|
| Mark E. Patrick | 100.00 | Management |
| | | |
| Total Management Shares outstanding: 100.00 | | |
| Total Management Shares remaining unissued: 0.00 | | |

**CONFIDENTIAL**
Printed on 25 April 2025

Register of Members of

**Charitable DAF HoldCo, Ltd**

Registration No: 263805

**Share Class: Participating**

Authorised Capital of USD 49,999.00 divided into 4,999,900.00 Participating shares of par value USD 0.01 each

| Entry No. | Name and Address of Shareholder | Date of Entry | Cert. Nr | Shares Acquired | Issue Price | Amount Paid | Nature of Acquisition | Date Shares Disposed | Shares Disposed | Remarks | Balance Shares | Transaction Details |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | The Highland Capital Management Partners CharitableTrust #2 Highland Capital Management, L.P 13455 Noel Rd, Suite 800 TX 75240 Dallas Texas USA | 7-Nov-2011 | | 300.00 | 3.00 | In Full | 7-Nov-2011 : Allotment of 300.00 Participating share(s) | 30-Nov-2011 | 300.00 | | 0.00 | 30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Kansas City Foundation, Inc<br><br>30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Dallas Foundation, Inc<br><br>30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Santa Barbara Foundation, Inc |
| 2 | Highland Kansas City Foundation, Inc - | 30-Nov-2011 | | 100.00 | 1.00 | In Full | 30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Kansas City Foundation, Inc | | 0.00 | | 100.00 | |
| 3 | Highland Dallas Foundation, Inc - | 30-Nov-2011 | | 100.00 | 1.00 | In Full | 30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Dallas Foundation, Inc | | 0.00 | | 100.00 | |
| 4 | Highland Santa Barbara Foundation, Inc - | 30-Nov-2011 | | 100.00 | 1.00 | In Full | 30-Nov-2011 : Transfer of 100.00 Participating share(s) to Highland Santa Barbara Foundation, Inc | | 0.00 | | 100.00 | |

CONFIDENTIAL
Printed on 25 April 2025

Register of Members of

### Charitable DAF HoldCo, Ltd

Registration No: 263805

| Entry No. | Name and Address of Shareholder | Date of Entry | Cert. Nr | Shares Acquired | Issue Price | Amount Paid | Nature of Acquisition | Date Shares Disposed | Shares Disposed | Remarks | Balance Shares | Transaction Details |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | Community Foundation of North Texas ("CFNT"), for the Highland Capital Management, L.P. Charitable Fund at CFNT 306 W. 7th St., Suite 1045 Forth Worth TX 76102 USA | 13-Aug-2015 | | 5.00 | 0.05 | In Full | 13-Aug-2015 : Allotment of 5.00 Participating share(s) | | 0.00 | | 5.00 | |
| 6 | DFW Charitable Foundation The Corporation Trust Company 1209 Orange Street Wilmington, DE 19801 United States | 7-Feb-2025 | | 318.00 | 3.18 | In Full | 7-Feb-2025 : Allotment of 318.00 Participating share(s) | | 0.00 | | 318.00 | |

Notes

1    Where there is only one class of shares in issue, all issued shares carry equal (and unconditional) voting rights. Unless shares are described as "Non-Voting" they carry voting rights to vote at general meetings on all or substantially all matters (including the right to appoint or remove directors). Where shares are described as "Non-Voting" this designates that they do not carry rights to vote at general meetings on all or substantially all matters (including the right to appoint or remove directors). All shares carry unconditional voting rights, save where shares are described as "conditional" which designates that they only carry rights to vote at general meetings in certain circumstances.

Summary

| Name | Number and Class of Shares Held | |
|---|---|---|
| Highland Kansas City Foundation, Inc | 100.00 | Participating |
| Highland Dallas Foundation, Inc | 100.00 | Participating |
| Highland Santa Barbara Foundation, Inc | 100.00 | Participating |
| Community Foundation of North Texas ("CFNT"), for the Highland Capital Management, L.P. Charitable Fund at CFNT | 5.00 | Participating |
| DFW Charitable Foundation | 318.00 | Participating |
| Total Participating Shares outstanding: 623.00 | | |
| Total Participating Shares remaining unissued: 4,999,277.00 | | |

**CONFIDENTIAL**
Printed on 25 April 2025

# EXHIBIT 7

**CHARITABLE DAF HOLDCO, LTD**
**(THE "COMPANY")**

---

**WRITTEN RESOLUTIONS OF THE SOLE DIRECTOR**
**OF THE COMPANY DATED** _March 25_ **2021**

---

## 1. SHARE TRANSFER

1.1   **IT IS NOTED** that the Director has received a duly executed share transfer form relating to the transfer by Grant James Scott of 100 Management Shares to Mark E. Patrick.

1.2   **IT IS RESOLVED** that:

(a)   the following share transfer (the "**Transfer**") be and is hereby ratified, confirmed and approved:

| TRANSFEROR | TRANSFEREE | NO OF SHARES | DATE OF TRANSFER |
|---|---|---|---|
| Grant James Scott | Mark E. Patrick | 100 Management Shares | 24 March 2021 |

(b)   the Company's registered office provider be instructed to update the Register of Members of the Company to reflect the Transfer.

## 2. GENERAL AUTHORISATION

2.1   **IT IS RESOLVED** that, in connection with or to carry out the actions contemplated by the foregoing resolutions, the Director, officer or (if applicable) any attorney or duly authorised signatory of the Company (any such person being an "**Attorney**" or "**Authorised Signatory**" respectively) be, and such other persons as are authorised by any of them be, and each hereby is, authorised, in the name and on behalf of the Company, to do such further acts and things as the Director or officer or such duly authorised other person shall deem necessary or appropriate, including to do and perform (or cause to be done and performed), in the name and on behalf of the Company, all such acts and to sign, make, execute, deliver, issue or file (or cause to be signed, made, executed, delivered, issued or filed) with any person including any governmental authority or agency, all such agreements, documents, instruments, certificates, consents or waivers and all amendments to any such agreements, documents, instruments, certificates, consents or waivers and to pay, or cause to be paid, all such payments, as any of them may deem necessary or advisable in order to carry out the intent of the foregoing resolutions, the authority for the doing of any such acts and things and the signing, making, execution, delivery, issue and filing of such of the foregoing to be conclusively evidenced thereby.

## 3. RATIFICATION OF PRIOR ACTIONS

3.1   **IT IS RESOLVED** that any and all actions of the Company, or of the Director or officer or any Attorney or Authorised Signatory, taken in connection with the actions contemplated by the foregoing resolutions prior to the execution hereof be and are hereby ratified, confirmed, approved and adopted in all respects as fully as if such action(s) had been presented to for approval and approved by, the Director prior to such action being taken.

1

These written resolutions are signed by the sole Director of the Company.

*Mark Patrick*
_____

**Mark E. Patrick**

# EXHIBIT 8

**CHARITABLE DAF HOLDCO, LTD**

(the "Company")

**SHARE TRANSFER FORM**

Dated 24 March 2021

I, **Grant James Scott** (the "**Transferor**"), for good and valuable consideration received by me from **Mark E. Patrick** (the "**Transferee**"), do hereby:

1.   transfer to the Transferee 100 Management Shares (the "**Shares**") for the par value of $0.01 each standing in my name in the register of members of the Company to hold unto the Transferee, his executors, administrators and assigns, subject to the several conditions on which I held the same at the time of execution of this Share Transfer Form; and

2.   consent that my name remains on the register of the Company until such time as the Company enters the Transferee's name in the register of the Company.

**SIGNED by TRANSFEROR:**      )
                              )
                              Name: Grant J. Scott

And the Transferee does hereby agree to take the Shares subject to the same conditions.

**SIGNED by TRANSFEREE:**      )
                              )
                              Name: Mark E. Patrick

1

078673.0000002 EMF_US 84436263v1

# EXHIBIT 9

THE COMPANIES LISTED IN THE ATTACHED SCHEDULE
(EACH A "COMPANY" AND TOGETHER THE "COMPANIES")

---

WRITTEN RESOLUTIONS OF THE SOLE DIRECTOR
OF EACH COMPANY DATED April 22, 2021

---

## 1. APPOINTMENT OF DIRECTOR

1.1 **IT IS NOTED** that the Directors wish to appoint Paul Murphy as a Director of each Company with effect from the date of these resolutions and that such proposed Director has indicated a willingness to hold such office and has executed a letter of consent and/or a services agreement in relation thereto (such appointment, the "**Director's Appointment**").

1.2 **IT IS RESOLVED** that:

(a) the Director's Appointment be and is hereby approved with effect from the date of these resolutions until such time as the Director resigns or is removed from office in accordance with the Articles of Association of each Company; and

(b) the registered office service provider be and is hereby instructed to update the Register of Directors of each Company and to make the necessary filings with the Registrar of Companies to reflect the Director's Appointment.

## 2. GENERAL AUTHORISATION

2.1 **IT IS RESOLVED** that, in connection with or to carry out the actions contemplated by the foregoing resolutions, the Director or any officer or (if applicable) any attorney or duly authorised signatory of each Company (any such person being an "**Attorney**" or "**Authorised Signatory**" respectively) be, and such other persons as are authorised by any of them be, and each hereby is, authorised, in the name and on behalf of each Company, to do such further acts and things as the Director or any officer or such duly authorised other person shall deem necessary or appropriate, including to do and perform (or cause to be done and performed), in the name and on behalf of each Company, all such acts and to sign, make, execute, deliver, issue or file (or cause to be signed, made, executed, delivered, issued or filed) with any person including any governmental authority or agency, all such agreements, documents, instruments, certificates, consents or waivers and all amendments to any such agreements, documents, instruments, certificates, consents or waivers and to pay, or cause to be paid, all such payments, as any of them may deem necessary or advisable in order to carry out the intent of the foregoing resolutions, the authority for the doing of any such acts and things and the signing, making, execution, delivery, issue and filing of such of the foregoing to be conclusively evidenced thereby.

## 3. RATIFICATION OF PRIOR ACTIONS

3.1 **IT IS RESOLVED** that any and all actions of each Company, or of the Director or any officer or any Attorney or Authorised Signatory, taken in connection with the actions contemplated by the foregoing resolutions prior to the execution hereof be and are hereby ratified, confirmed, approved and adopted in all respects as fully as if such action(s) had been presented to for approval and approved by, the Director prior to such action being taken.

*[Remainder of page left blank intentionally]*

1

21250473.2 G0639.159068

These written resolutions are signed by the sole Director of the Company.

**Mark E. Patrick**

3

**Error! Unknown document property name.**

## Schedule
### (*List of Companies*)

Charitable DAF HoldCo, Ltd.

CLO HoldCo, Ltd.

Liberty CLO Holdco, Ltd.

Liberty Sub, Ltd.

HCT Holdco 2, Ltd.

MGM Studios Holdco, Ltd.

21250473.2 G0639.159068

# EXHIBIT 10



## Director Details

Entity Name:   **CHARITABLE DAF HOLDCO, LTD**

### Director Name

Mark E. Patrick

Paul Murphy

**Back to Entity Search**   🖨 **View Receipt**

# EXHIBIT 11

INTERNAL REVENUE SERVICE                      DEPARTMENT OF THE TREASURY
P. O. BOX 2508
CINCINNATI, OH  45201

Date: JAN 19 2013

HIGHLAND DALLAS FOUNDATION INC
C/O HUNTON & WILLIAMS LLP
DOUGLAS M MANCINO
550 S HOPE ST STE 2000
LOS ANGELES, CA  90071

Employer Identification Number:
  45-3961755
DLN:
  17053058308022
Contact Person:
  SHEILA M ROBINSON        ID# 31220
Contact Telephone Number:
  (877) 829-5500
Accounting Period Ending:
  December 31
Public Charity Status:
  509(a)(3)
Form 990 Required:
  Yes
Effective Date of Exemption:
  November 22, 2011
Contribution Deductibility:
  Yes
Addendum Applies:
  No

Dear Applicant:

We are pleased to inform you that upon review of your application for tax
exempt status we have determined that you are exempt from Federal income tax
under section 501(c)(3) of the Internal Revenue Code.  Contributions to you are
deductible under section 170 of the Code.  You are also qualified to receive
tax deductible bequests, devises, transfers or gifts under section 2055, 2106
or 2522 of the Code.  Because this letter could help resolve any questions
regarding your exempt status, you should keep it in your permanent records.

Organizations exempt under section 501(c)(3) of the Code are further classified
as either public charities or private foundations.  We determined that you are
a public charity under the Code section(s) listed in the heading of this
letter.

Specifically, we have determined that you are a Type I supporting organization
under section 509(a)(3).  A Type I supporting organization is operated,
supervised, or controlled by one or more publicly supported organizations.

Please see enclosed Publication 4221-PC, Compliance Guide for 501(c)(3) Public
Charities, for some helpful information about your responsibilities as an
exempt organization.

Letter 947 (DO/CG)

-2-

HIGHLAND DALLAS FOUNDATION INC

Sincerely,

Holly O. Paz
Director, Exempt Organizations
Rulings and Agreements

Enclosure: Publication 4221-PC

Letter 947 (DO/CG)

# EXHIBIT 12

CHARITABLE DAF HOLDCO, LTD
(THE "COMPANY")

---

**WRITTEN RESOLUTIONS OF THE SOLE DIRECTOR
OF THE COMPANY DATED NOVEMBER 30, 2011**

---

**1.** **PARTIPATING SHARE TRANSFER UPON DISSOLUTION OF THE HIGHLAND CAPITAL MANAGEMENT PARTNERS CHARITABLE TRUST #2**

1.1    **IT IS NOTED** that the Director has received a duly executed share transfer form relating to the proposed transfer by The Highland Capital Management Partners Charitable Trust #2 of 100 Participating Shares to each of the three transferees listed below upon the dissolution of The Highland Capital Management Partners Charitable Trust #2.

1.2    **IT IS RESOLVED** that:

(a)    the following share transfers (the "**Transfers**") be approved with effect from the date of dissolution of The Highland Capital Management Partners Charitable Trust #2 on November 30, 2011:

| TRANSFEROR | TRANSFEREE | NO OF SHARES |
|---|---|---|
| The Highland Capital Management Partners Charitable Trust #2 | Highland Kansas City Foundation, Inc. | 100 Participating Shares |
| The Highland Capital Management Partners Charitable Trust #2 | Highland Dallas Foundation, Inc. | 100 Participating Shares |
| The Highland Capital Management Partners Charitable Trust #2 | Highland Santa Barbara Foundation, Inc. | 100 Participating Shares |

(b)    Walkers Corporate Services Limited be instructed to update the Register of Members of the Company to reflect the Transfers.

Grant Scott
Director

1

78673.000002 EMF_US 37950517v1

# EXHIBIT 13

CHARITABLE DAF HOLDCO, LTD
(THE "COMPANY")

SHARE TRANSFER FORM
DATED NOVEMBER 30, 2011

The Highland Capital Management Partners Charitable Trust #2 (the "Transferor") for good and valuable consideration received by it from Highland Dallas Foundation, Inc. (the "Transferee"), does hereby transfer to the Transferee 100 Participating Shares of a par value of **US$0.01** each.

SIGNED for and behalf of **The Highland** )
**Capital Management Partners Charitable** )
**Trust #2** )
                                      )    Duly Authorised Signatory
                                      )    Name:   GRANT SCOTT
                                      )    Title:     TRUSTEE

78673.000002 EMF_US 37956820v1

# EXHIBIT 14

INTERNAL REVENUE SERVICE
P. O. BOX 2508
CINCINNATI, OH 45201

DEPARTMENT OF THE TREASURY

Date: MAR 2 1 2013

HIGHLAND KANSAS CITY FOUNDATION INC
C/O HUNTON & WILLIAMS LLP
DOUGLAS M MANCINO
550 SOUTH HOPE ST STE 2000
LOS ANGELES, CA 90071

Employer Identification Number:
 45-3961865
DLN:
 17053066302032
Contact Person:
 GREGORY WOO                    ID# 95340
Contact Telephone Number:
 (877) 829-5500
Accounting Period Ending:
 December 31
Public Charity Status:
 509(a)(3)
Form 990 Required:
 Yes
Effective Date of Exemption:
 November 23, 2011
Contribution Deductibility:
 Yes
Addendum Applies:
 Yes

Dear Applicant:

We are pleased to inform you that upon review of your application for tax
exempt status we have determined that you are exempt from Federal income tax
under section 501(c)(3) of the Internal Revenue Code. Contributions to you are
deductible under section 170 of the Code. You are also qualified to receive
tax deductible bequests, devises, transfers or gifts under section 2055, 2106
or 2522 of the Code. Because this letter could help resolve any questions
regarding your exempt status, you should keep it in your permanent records.

Organizations exempt under section 501(c)(3) of the Code are further classified
as either public charities or private foundations. We determined that you are
a public charity under the Code section(s) listed in the heading of this
letter.

Specifically, we have determined that you are a Type I supporting organization
under section 509(a)(3). A Type I supporting organization is operated,
supervised, or controlled by one or more publicly supported organizations.

Please see enclosed Publication 4221-PC, Compliance Guide for 501(c)(3) Public
Charities, for some helpful information about your responsibilities as an
exempt organization.

Letter 947 (DO/CG)

-2-

HIGHLAND KANSAS CITY FOUNDATION INC

Sincerely

Holly O. Paz

Holly O. Paz
Director, Exempt Organizations
Rulings and Agreements

Enclosure:  Publication 4221-PC

Letter  947 (DO/CG)

# EXHIBIT 15

CHARITABLE DAF HOLDCO, LTD
(THE "COMPANY")


SHARE TRANSFER FORM
DATED NOVEMBER 30, 2011


The Highland Capital Management Partners Charitable Trust #2 (the "Transferor") for good and valuable consideration received by it from Highland Kansas City Foundation, Inc. (the "Transferee"), does hereby transfer to the Transferee 100 Participating Shares of a par value of US$0.01 each.


| | |
|---|---|
| SIGNED for and behalf of The Highland Capital Management Partners Charitable Trust #2 ) ) ) ) ) ) ) | Duly Authorised Signatory<br><br>Name: GRANT Scott<br><br>Title: TRUSTEE |


78673.000002 EMF_US 37950562v1

# EXHIBIT 16

INTERNAL REVENUE SERVICE                    DEPARTMENT OF THE TREASURY
P. O. BOX 2508
CINCINNATI, OH 45201

Date:                                       Employer Identification Number:
        FEB 12 2013                          45-3962008
                                            DLN:
                                             17053060398012
HIGHLAND SANTA BARBARA FOUNDATION           Contact Person:
 INC                                         GINGER L JONES              ID# 31646
C/O MARK PATRICK                            Contact Telephone Number:
300 CRESCENT CT STE 700                      (877) 829-5500
DALLAS, TX 75201

                                            Accounting Period Ending:
                                             December 31
                                            Public Charity Status:
                                             509(a)(3)
                                            Form 990 Required:
                                             Yes
                                            Effective Date of Exemption:
                                             November 22, 2011
                                            Contribution Deductibility:
                                             Yes
                                            Addendum Applies:
                                             No


Dear Applicant:

We are pleased to inform you that upon review of your application for tax
exempt status we have determined that you are exempt from Federal income tax
under section 501(c)(3) of the Internal Revenue Code. Contributions to you are
deductible under section 170 of the Code. You are also qualified to receive
tax deductible bequests, devises, transfers or gifts under section 2055, 2106
or 2522 of the Code. Because this letter could help resolve any questions
regarding your exempt status, you should keep it in your permanent records.

Organizations exempt under section 501(c)(3) of the Code are further classified
as either public charities or private foundations. We determined that you are
a public charity under the Code section(s) listed in the heading of this
letter.

Please see enclosed Publication 4221-PC, Compliance Guide for 501(c)(3) Public
Charities, for some helpful information about your responsibilities as an
exempt organization.

                                                        Letter 947 (DO/CG)

FEB 12 2008

HIGHLAND SANTA BARBARA FOUNDATION

We have sent a copy of this letter to your representative as indicated in your power of attorney.

Sincerely,

Holly O. Paz

Holly O. Paz
Director, Exempt Organizations
Rulings and Agreements

Enclosure:  Publication 4221-PC

Letter  947 (DO/CG)

# EXHIBIT 17

CHARITABLE DAF HOLDCO, LTD
(THE "COMPANY")

SHARE TRANSFER FORM
DATED NOVEMBER 30, 2011

The Highland Capital Management Partners Charitable Trust #2 (the "Transferor") for good and valuable consideration received by it from Highland Santa Barbara Foundation, Inc. (the "Transferee"), does hereby transfer to the Transferee 100 Participating Shares of a par value of **US$0.01** each.

SIGNED for and behalf of **The Highland )
Capital Management Partners Charitable )
Trust #2** )
                                      )
                                      )   Duly Authorised Signatory
                                      )   Name:      GRANT Scott
                                      )
                                      )   Title:       TRUSTEE

78673.000002 EMF_US 37956832v1

# EXHIBIT 18

INTERNAL REVENUE SERVICE            DEPARTMENT OF THE TREASURY
DISTRICT DIRECTOR
1100 COMMERCE STREET
DALLAS, TX 75242-0000

Date: MAY 1 9 1994

| | |
|---|---|
| | Employer Identification Number: |
| | 75-2267767 |
| | Case Number: |
| | 754123072 |
| COMMUNITY FOUNDATION OF | Contact Person: |
| METROPOLITAN TARRANT COUNTY INC | SHARI FLOWERS |
| 306 W 7TH ST STE 702 | Contact Telephone Number: |
| FORT WORTH, TX 76102-4906 | (214) 767-6023 |
| | Our Letter Dated: |
| | July 27, 1989 |
| | Addendum Applies: |
| | No |

Dear Applicant:

This modifies our letter of the above date in which we stated that you would be treated as an organization that is not a private foundation until the expiration of your advance ruling period.

Your exempt status under section 501(a) of the Internal Revenue Code as an organization described in section 501(c)(3) is still in effect. Based on the information you submitted, we have determined that you are not a private foundation within the meaning of section 509(a) of the Code because you are an organization of the type described in section 509(a)(1) and 170(b)(1)(A)(vi).

Grantors and contributors may rely on this determination unless the Internal Revenue Service publishes notice to the contrary. However, if you lose your section 509(a)(1) status, a grantor or contributor may not rely on this determination if he or she was in part responsible for, or was aware of, the act or failure to act, or the substantial or material change on the part of the organization that resulted in your loss of such status, or if he or she acquired knowledge that the Internal Revenue Service had given notice that you would no longer be classified as a section 509(a)(1) organization.

If we have indicated in the heading of this letter that an addendum applies, the addendum enclosed is an integral part of this letter.

Because this letter could help resolve any questions about your private foundation status, please keep it in your permanent records.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely yours,

Bobby E. Scott
District Director

Letter 1050 (DO/CG)

RECEIVED MAY 2 3 1994

**Internal Revenue Service**

**Date:** March 2, 2006

COMMUNITY FOUNDATION OF NORTH
TEXAS
306 W 7TH ST STE 306
FORT WORTH, TX 76102-4906

**Department of the Treasury**
**P. O. Box 2508**
**Cincinnati, OH 45201**

**Person to Contact:**
Roger Meyer
ID# 31-07707
**Toll Free Telephone Number:**
877-829-5500
**Federal Identification Number:**
75-2267767

Dear Sir or Madam:

This is in response to your request of December 29, 2005, regarding your tax-exempt status.

In June 1989 we issued a determination letter that recognized you as exempt from federal income tax. Our records indicate that you are currently exempt under section 501(c)(3) of the Internal Revenue Code.

Our records indicate that you are also classified as a public charity under sections 509(a)(1) and 170(b)(1)(A)(vi) of the Internal Revenue Code.

Our records indicate that contributions to you are deductible under section 170 of the Code, and that you are qualified to receive tax deductible bequests, devises, transfers or gifts under section 2055, 2106 or 2522 of the Internal Revenue Code.

If you have any questions, please call us at the telephone number shown in the heading of this letter.

Sincerely,

*Cindy M. Westcott*

Cindy Westcott
Manager, EO Determinations

# EXHIBIT 19

CHARITABLE DAF HOLDCO, LTD
(THE "COMPANY")

---

WRITTEN RESOLUTIONS OF THE SOLE DIRECTOR
OF THE COMPANY DATED *August 12,* 2015

---

1. **ISSUE OF SHARES**

1.1 **IT IS NOTED** that:

(a) capitalised terms not otherwise defined herein shall have the meaning given to those terms in the Articles of Association of the Company, as may be amended from time to time (the "**Articles**");

(b) the Company has received an application from the Community Foundation of North Texas (the "**Subscriber**") to subscribe for Participating Shares of the Company having a par value of US$0.01 each, in the amount set forth in the table below, at their aggregate nominal par value (the "**Shares**"):

| SUBSCRIBER | NO. OF SHARES | SUBSCRIPTION PRICE |
|---|---|---|
| Community Foundation of North Texas ("CFNT"), for the Highland Capital Management, L.P. Charitable Fund at CFNT | 5 Participating Shares | $0.05 |

(c) in the opinion of the Directors, the issuance of the Shares to the Subscriber would be in the best interests of the Company.

1.2 **IT IS RESOLVED** that:

(a) in the opinion of the Directors, the issuance of the Shares to the Subscriber would be in the best interests of the Company.

(b) subject to payment in full being received by the Company, the Shares be and are hereby issued to the Subscriber, fully paid, in accordance with the table set forth above; and

(c) as the Subscriber has not requested the issue of a share certificate, Intertrust Corporate Services (Cayman) Limited, be and is hereby instructed to make the appropriate entries in the Register of Members of the Company in respect of the foregoing issue.

2. **GENERAL AUTHORISATION**

2.1 **IT IS RESOLVED** that, in connection with or to carry out the actions contemplated by the foregoing resolutions, the Director, officer or (if applicable) any attorney or duly authorised signatory of the Company (any such person being an "**Attorney**" or "**Authorised Signatory**" respectively) be, and such other persons as are authorised by any of them be, and each hereby is, authorised, in the name and on behalf of the Company, to do such further acts and things as the Director or officer or such duly authorised other person shall deem necessary or appropriate, including to do and perform (or cause to be done and performed), in the name and on behalf of

1

the Company, all such acts and to sign, make, execute, deliver, issue or file (or cause to be signed, made, executed, delivered, issued or filed) with any person including any governmental authority or agency, all such agreements, documents, instruments, certificates, consents or waivers and all amendments to any such agreements, documents, instruments, certificates, consents or waivers and to pay, or cause to be paid, all such payments, as any of them may deem necessary or advisable in order to carry out the intent of the foregoing resolutions, the authority for the doing of any such acts and things and the signing, making, execution, delivery, issue and filing of such of the foregoing to be conclusively evidenced thereby.

## 3. RATIFICATION OF PRIOR ACTIONS

3.1 **IT IS RESOLVED** that any and all actions of the Company, or of the Director or officer or any Attorney or Authorised Signatory, taken in connection with the actions contemplated by the foregoing resolutions prior to the execution hereof be and are hereby ratified, confirmed, approved and adopted in all respects as fully as if such action(s) had been presented to for approval and approved by, the Director prior to such action being taken.

*[Signature page follows]*

2

Grant James Scott
**Sole Director**

13056403.1 H0851.120776

# EXHIBIT 20

DFW Foundation
6716 Glenhurst Dr.
Dallas, TX 75254

February 7, 2025

Charitable DAF Holdco, Ltd.
Attn: Mark Patrick, Director
6716 Glenhurst Dr.
Dallas, TX 75254

Dear Mr. Patrick:

DFW Charitable Foundation, a Delaware non-profit non-stock corporation ("DFW"), wishes to acquire 318 participating shares in Charitable DAF Holdco, Ltd. ("DAF Holdco"), par value $0.01, for a total price of $3.18. Please find enclosed funds to acquire such 318 participating shares, effective as of the date first set forth above.

Thank you for your attention to this matter.

Sincerely,

DFW Foundation

By: _____
Shawn Raver
Director



# EXHIBIT 21

**Charitable DAF HoldCo, Ltd**
(the "**Company**")

---

**Unanimous Written Resolutions of the Board of Directors of the Company**

---

**1      Directors' Interests**

1.1      It is noted that none of the directors of the Company (together the "**Directors**", and each a "**Director**") have any monetary or financial interest in the matters referred to herein.

**2      Recent Developments**

2.1      It is noted that the Directors have received communications from certain current Participating Shareholders requesting information and making false and misleading claims regarding the Company's and its subsidiaries' finances.

2.2      It is noted that the Directors believe the aforementioned communications were motivated and/or directed by James Dondero as retaliation for Mark Patrick's resignation from Skyview Group and the Company's various efforts to create independence between the Company and its subsidiaries on the one hand and James Dondero and his affiliates on the other hand.

2.3      It is noted that the Directors have knowledge that the false and misleading information forming the basis of these claims was provided by SEI, a back-office service provider to the Company and certain of its subsidiaries, to employees of certain Dondero-controlled entities such as Skyview Group or NexPoint.

2.4      It is noted that none of the concerns raised by the current Participating Shareholders were raised prior to Mark Patrick's resignations from Skyview Group, despite there being no change in the information provided or the frequency of information provided.

**3      U.S. Counsel Tax Advice**

3.1      It is noted that the Directors have received United States Tax Counsel advice that, among other things:

(a)      "there is a significantly heightened risk that the Internal Revenue Service of the United States could severely penalize and/or revoke the tax-exempt status of one or more of the current Participating Shareholders, which could imperil the status and assets of the Company"; and

(b)      "Increasing the number of Participating Shareholders would mitigate considerations of undue influence/private inurement/private beneift and broaden the scope of DAF's charitable reach to the public; and

(c)      "The IRS will look favorably upon any and all attempts for DAF to maintain its

#6777948v3

independence from what seems to be persistent attempts by James Dondero and the entities controled by him to use DAF for his private benefit and private inurement."

3.2 It is noted that the Directors believe the Share Issuance (as defined below) to DFW (as defined below) is based on this U.S. tax advice and will protect the Company and the current Participating Shareholders and will also further the Company's charitable mission.

**4 Cayman Counsel Legal Advice**

4.1 It is noted that the Directors have sought and obtained legal advice from separate Cayman Islands counsel ("**Walkers**"), who have confirmed that (i) the Directors have the ability to issue new Participating Shares as contemplated by the Share Issuance, (ii) if the Directors believe the Participating Shares are held by a Restricted Person (as defined in Article 21 of the Company's M&A), the Directors may require such shareholder to transfer its shares, and (iii) the Participating Shareholders have no or limited rights to information.

4.2 It is noted that attached as Exhibit A hereto is the Walkers presentation outlining the rights accompanying the Participating Shares (the "**Walkers Presentation**").

**5 Issue of Shares**

5.1 It is noted that the Company proposes to issue 318 Participating Shares of a nominal or par value of US$0.01 each as fully paid up (the "**Participating Shares**") to DFW Charitable Foundation ("**DFW**"), a Delaware non-profit non-stock corporation (the "**Share Issuance**").

5.2 Following the Share Issuance, DFW shall own 51.04% of the issued Participating Shares of the Company.

5.3 It is resolved that:

(a) the Share Issuance be approved with effect from the date of these resolutions;

(b) Campbells Corporate Services Limited be and is hereby instructed to make the appropriate entry in the register of members of the Company in respect of the Share Issuance;

(c) any and all actions of the Company, the Directors or any officer of the Company taken in connection with the actions contemplated by the foregoing resolutions prior to the execution hereof be and are hereby ratified, confirmed, approved and adopted in all respects as fully as if such actions had been presented for approval and approved by the Directors prior to such action(s) being taken; and

(d) the Directors shall meet on not less than a quarterly basis to discuss recent developments and how to best protect the Company and its shareholders.

#6777948v3

**6    Ancillary Documents**

6.1    It is further resolved that:

(a)    the Company do give, make, sign, execute and deliver all such agreements, letters, notices, certificates, acknowledgements, instructions and other documents (whether of a like nature or not) (the "**Ancillary Documents**") as may in the sole opinion and absolute discretion of any Director be considered necessary or desirable for the purpose of compliance with any condition precedent or the coming into effect of or otherwise giving effect to, consummating or completing or procuring the performance and completion of all or any of the transactions contemplated by or referred to in all or any of the documents referred to above and the Company do all other such acts and things as might in the sole opinion and absolute discretion of any Director be necessary or desirable for the purpose aforesaid;

(b)    the Ancillary Documents be in such form as any Director should in his absolute discretion and sole opinion approve, the signature of any such person on any of the Ancillary Documents being due evidence for all purposes of his approval of the terms thereof on behalf of the Company;

(c)    the Ancillary Documents (where required to be executed by the Company) be executed by the signature thereof of any one Director together with such changes as such Director shall in his absolute discretion consider necessary or appropriate (the signature of such Director on any Ancillary Document being conclusive evidence of his approval of the same for and on behalf of the Company);

(d)    the Ancillary Documents be valid, conclusive, binding on and enforceable against the Company when executed and delivered in the manner aforesaid;

(e)    any and all actions of the Company, or of any Director or officer, taken in connection with the actions contemplated by the foregoing resolutions prior to the execution hereof be and hereby are ratified, confirmed, approved and adopted in all respects as fully as if such action(s) had been presented to for approval, and approved by, the Directors prior to such action being taken; and

(f)    the prior execution of any Ancillary Documents by any Director are approved, ratifed and confirmed in all respects.

*[signature page(s) follow(s)]*

#6777948v3

Name: **Mark Patrick**
Title: Director

Date: 2-7-2025

Name: **Paul Murphy**
Title: Director

Date: 7th February 2025

Signature Page
Unanimous Written Resolutions of the Board of Directors

#6777948v3

**Exhibit A**

**Walkers Presentation**

#6777948v3



## Walkers

# Participating Shareholder Rights
# Charitable DAF Holdco Ltd.

Making financial services work

Bermuda | British Virgin Islands | Cayman Islands | Dubai | Guernsey | Hong Kong | Ireland | Jersey | London | Singapore

# Binding Effect of Articles of Association

2   Walkers | Making financial services work

# Binding Effect of Articles of Association

"... the binding effect of the Articles as they stand ... is given statutory force by section 25(3) of the Companies Law which reads:

'(3) Where registered the said articles of association shall bind the company and the members thereof to the same extent as if each member had subscribed his name and affixed his seal thereto, and there were in such articles contained a covenant on the part of himself, his heirs, executors and administrators to conform to all the regulations contained in such articles subject to this law; ....'"

(*In the Matter of Strategic Turnaround Master Partnership Ltd* [2008] CIGC J1128-1, per Chief Justice Smellie at paragraph 135)

# Participation in Discretionary Dividends

## Participate in Discretionary Dividends

"The Participating Shares shall confer upon the Shareholders ... the right to participate in the profits or assets of the Company in accordance with these Articles." **(Art 12)**

# Participation in Discretionary Dividends

"The Directors may, before recommending or declaring any dividend, set aside out of the funds legally available for distribution such sums as they think proper as a reserve or reserves which shall, in the absolute discretion of the Directors be applicable for meeting contingencies, or for equalising dividends or for any other purpose to which those funds may be properly applied and pending such application may in the absolute discretion of the Directors, either be employed in the business of the Company or be invested in such investments as the Directors may from time to time think fit." **(Art 102)**

"Subject to any rights and restrictions for the time being attached to any Participating Shares, all dividends shall be declared and paid in such amounts as may be declared by the Director's in their sole and absolute discretion without a requirement to pay such dividends on a pro-rata basis as to the paid-up or par value of the Shares." **(Art 105)**

**Participating Shareholders do not have:**

- **the right to cause or vote on distributions;**

- **the right to pro rata distributions based on their shareholding;**

- **the right to annual or timed distributions; or**

- **the right to receive notice of distributions to other Participating Shareholders.**

# Removal of Directors

# Removal of Directors

"Subject to these Articles, a Director shall hold office until such time as he is removed from office by Ordinary Resolution."
**(Art 65)**

**Participating Shareholders do not have:**

- the right to remove Directors; or

- the right to appoint Directors.

**Note: the right to appoint Directors is held by the Management Shareholder and the Directors, and the right to remove Directors is held solely by the Management Shareholder (Articles 64, 65, and 69, and Definition of "Ordinary Resolution").**

# Modification of Rights

# Modification of Rights

"... the rights attached to [any] Class may ... only be materially adversely varied or abrogated with the consent in writing of the holders of not less than two-thirds of the issued Participating Shares of the relevant Class or with the sanction of a resolution passed at a separate meeting of the holders of the Participating Shares of such Class by a majority of two-thirds of the votes cast at such a meeting." **(Art 13)**

**Participating Shareholders do not have:**

- **the right to cause a distribution; or**

- **the right to amend the Articles.**

# Modification of Rights – Issuance of Shares

"The rights conferred upon the holders of the Participating Shares of any Class issued with preferred or other rights shall not ... be deemed to be materially adversely varied or abrogated by, *inter alia*, the creation, allotment or issue of further Participating Shares ranking *pari passu* with or subsequent to them or the redemption or purchase of any Participating Shares of any Class by the Company." **(Art 14)**

"... all Shares for the time being unissued shall be under the control of the Directors who may:

(a)    issue, allot and dispose of the same to such Persons, in such manner, on such terms and having such rights and being subject to such restrictions as they may from time to time determine;

(b)    and grant options with respect to such Shares and issue warrants or similar instruments with respect thereto;

and, for such purposes, the Directors may reserve an appropriate number of Shares for the time being unissued." **(Art 7)**

**Participating Shareholders do not have:**

- **the right to vote on the issuance of further Participating Shares;**

- **pre-emption rights; or**

- **the right to receive notice of such issuance.**

# Modification of Rights – Issuance of Shares

"The capital of the Company is US$50,000.00 divided into 4,999,900 Participating Shares of a nominal or par value of US$0.01 each 100 Management Shares of a nominal or par value of US$0.01 each..." **(Art 7)**

**Note:** Of the authorised share capital of the Company, 305 Participating Shares have been issued. In accordance with the Articles, the Directors may unilaterally issue additional Participating Shares and thereby dilute the power of existing shareholders for the purposes of voting on matters that may materially adversely vary or abrogate the rights of the Participating Shareholders.

**Additional Note: many of the rights that shareholders of a company typically hold (e.g. the right to receive notices, and the right to vote at general meetings, including in respect of the appointment and removal of directors) are held by the Management Shareholder (Mark Patrick) rather than the Participating Shareholders. In addition, the Directors (Mark Patrick and Paul Murphy) have the ability to unilaterally declare dividends and issue new Participating Shares without the approval of the Participating Shareholders (or the Management Shareholder).**

# Share Redemption

# Share Redemption

""**Participating Share**" means a non-voting, participating, <u>non-redeemable share</u> in the capital of the Company of $0.01 nominal or par value issued subject to and in accordance with the provisions of the Act and these Articles…"

"… the Company shall have <u>power to redeem</u> or purchase any of its shares and to sub-divide or consolidate the said shares or any of them…" **(Paragraph 7, Memorandum)**

"The rights conferred upon the holders of the Participating Shares … shall not … be deemed to be materially adversely varied or abrogated by … <u>the redemption</u> or purchase of any Participating Shares of any Class by the Company." **(Art 14)**

**Participating Shareholders do not have:**

- the right to redeem their shares; or

- the right to vote on the Company's redemption of their shares.

# Transfer of Shares

# Share Transfer by Notice of the Directors – Restricted Person

"If it comes to the notice of the Directors that any Shares are held by a Restricted Person the Directors may by notice in writing require the transfer of such Shares in exercise of their powers under these Articles." **(Art 21)**

"**Restricted Person**" means any Person holding Participating Shares:

a)  in breach of the law or requirements of any country or governmental authority;

b)  that is not an entity or organisation exempt from taxation under Section 501(c)(3) of the Code or an entity or organisation all of whose beneficiaries are exempt under Section 501 (c)(3) of the Code; or

c)  in circumstances (whether directly or indirectly affecting such Person and whether taken alone or in conjunction with any other Person, connected or not, or any other circumstances) which, in the opinion of the Directors, might result in the Company incurring any liability to taxation or suffering any other pecuniary, legal, regulatory or administrative disadvantage which the Company might not otherwise have incurred or suffered."

**Note: the Directors have duties to act, and to exercise their powers, in the best interests of the Company.  The scope of those duties includes continually evaluating whether any Participating Shareholder may pose a threat to the Company which could cause them to fall within the definition of Restricted Person, and how best to protect the Company against any such threat.**

# General Meetings

# General Meetings

"Participating Shares shall confer upon a Shareholder no right to receive notice of, to attend, to speak at nor to vote at general meetings of the Company…" **(Art 12)**

**Participating Shareholders do not have:**

- **the right to receive notice of general meetings;**

- **the right to attend general meetings;**

- **the right to speak at general meetings;**

- **the right to vote at general meetings; or**

- **the right to information regarding proceedings of general meetings.**

# Limited Information Rights

# Limited Information Rights

"The books of account relating to the Company's affairs shall be kept in such manner as may be determined from time to time by the Directors." **(Art 108)**

"The Directors may from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the Company or any of them shall be open to the inspection of Shareholders not being Directors, and <u>no</u> <u>Shareholder</u> (not being a Director) <u>shall have any right of inspecting any account or book or document of the Company</u> except as conferred by law or authorised by the Directors or by Ordinary Resolution." **(Art 110)**

**Participating shareholders have <u>very limited</u> information rights. Specifically, the articles do not provide the Participating Shareholders with the following:**

* **the right to inspect any account;**

* **the right to inspect any book; or**

* **the right to inspect any document of the Company.**

Further to the above, we note that :

* This only applies to the limited company which issued the participation shares, i.e. DAF HoldCo;

* It does not apply to subsidiary entities;

* It does not apply to entities in which DAF HoldCo holds a passive interest; and

* There is no "look- through" down through all the entities in the structure.

# EXHIBIT 22

**intertrust**
GROUP
A CSC COMPANY

Registration No.: **263805**

Client No.: **KY059904**

REGISTER OF DIRECTORS
FOR:
**CHARITABLE DAF HOLDCO, LTD**

| Name & Address | Office Held | Date of Appointment | Date of Resignation |
|---|---|---|---|
| **WNL Limited**<br>Walkers Corporate Services Limited; Walker House; 87 Mary Street; George Town; Grand Cayman KY1-9005; Cayman Islands. | Director | 04 Nov 2011 | 04 Nov 2011 |
| **Grant James Scott**<br>Highland Capital Managment, L.P.; 13455 Noel Road, Suite 800; Dallas; Texas 75240; USA. | Director | 04 Nov 2011 | 25 Mar 2021 |
| **Mark E. Patrick**<br>6716 Glenhurst Dr, Dallas, Texas, TX 75254; USA. | Director | 25 Mar 2021 | |
| **Paul Murphy**<br>Windsor Village, Unit #24; South Sound; Grand Cayman; Cayman Islands. | Director | 22 Apr 2021 | |

Date printed: 18 December, 2023

INTERTRUST CORPORATE SERVICES (CAYMAN) LIMITED

[1 / 1]

# EXHIBIT 23

## THE DALLAS FOUNDATION

### SUPPORTING ORGANIZATION OPERATING AGREEMENT

THIS SUPPORTING ORGANIZATION OPERATING AGREEMENT (this "Agreement") is made and entered into on November 30, 2011, by and between THE DALLAS FOUNDATION ("Foundation") and the HIGHLAND DALLAS FOUNDATION, INC. ("Supporting Organization"),

**RECITALS:**

A.  Foundation is a Texas nonprofit corporation exempt from taxation under Internal Revenue Code ("Code") Section 501(c)(3), and a public charity described in Sections 509(a)(1) and 170(b)(1)(A)(vi) of the Code. The principal objective of Foundation is to solicit, receive and accept property to be administered, used and applied for charitable purposes, primarily but not exclusively in or for the benefit of Dallas County, Texas.

B.  Supporting Organization, a Delaware nonprofit non-stock charitable corporation, is established to operate exclusively for the benefit of, to perform the functions of, or carry out the purposes of Foundation.

C.  Supporting Organization expects to obtain a determination letter from the Internal Revenue Service (the "IRS") that Supporting Organization is a tax-exempt organization described in Section 501(c)(3) of the Code and a Type 1 supporting organization described in Section 509(a)(3) of the Code.

D.  Foundation and Supporting Organization have entered into this Agreement for the purpose of documenting their agreements relating to the operation of Supporting Organization as a Type 1 supporting organization of Foundation. It is the intent of the parties that the assets held by Supporting Organization will generate funds for grantmaking primarily but not exclusively in Dallas County and for the payment of fees to Foundation under this Agreement.

**NOW THEREFORE,** the parties agree as follows:

**1.  GOVERNANCE OF SUPPORTING ORGANIZATION**

**1.1  OPERATIONS.** Supporting Organization is a separately-incorporated corporation, solely responsible for its own operations and for its compliance with tax and other laws. At all times during the term of this Agreement, Supporting Organization shall operate as a Type 1 supporting organization of Foundation, as contemplated in Section 509(a)(3)(B)(i) of the Code. Foundation recognizes that assets contributed to Supporting Organization will be held in the name of Supporting Organization and will be subject to spending and investment policies as shall be determined by the Board of Directors of Supporting Organization from time to time.

**1.2  BOARD OF DIRECTORS.** Supporting Organization's Board of Directors will be the governing body for Supporting Organization. Unless otherwise agreed by the parties, Supporting Organization's initial Board of Directors shall consist of three (3) members.

**(a)  FOUNDATION APPOINTMENTS.** Foundation's Board of Trustees, as required by the Code, will at all times appoint a majority of Supporting Organization's directors. Foundation will cooperate with Supporting Organization to ensure that all persons appointed by Foundation are committed to the purposes of Supporting Organization. Foundation's appointees to Supporting Organization's Board of Directors may include Foundation's trustees or staff, as well as third parties selected by Foundation. Foundation's appointees shall not, apart from their service as Supporting

Organization directors or officers, be "disqualified persons" with respect to Supporting Organization as defined in Sections 509(a)(3)(C) and 4946 of the Code. Supporting Organization shall notify Foundation if any appointee is a disqualified person other than by virtue of his or her service as a Supporting Organization director or officer. Foundation's appointees to Supporting Organization's Board of Directors shall serve in accordance with Supporting Organization's Bylaws.

(b) **SUPPORTING ORGANIZATION APPOINTMENTS.** Mr. James Dondero or his successor shall elect or appoint a minority of the members of the Board of Directors of Supporting Organization (i.e., one, as long as the Board of Directors numbers three), who may be a disqualified person(s).

(c) **DISQUALIFIED PERSONS.** Under no circumstances shall individuals who are disqualified persons (other than by virtue of their service as directors or officers of Supporting Organization) have majority control of Supporting Organization's Board of Directors or have veto powers over actions by the Supporting Organization's Board of Directors, nor shall disqualified persons described in Section 4946 of the Code and persons described in Section 4958(c)(3)(B) of the Code be compensated by Supporting Organization or receive grants, loans or similar payments from Supporting Organization.

1.3 **NO COMPENSATION.** The parties agree that in order to avoid even the perception of personal benefit, no directors of Supporting Organization shall receive compensation for their service as such. Notwithstanding the foregoing, Supporting Organization's directors may be reimbursed for reasonable and necessary out of pocket expenses actually incurred for their board service.

1.4 **MEETINGS.** Supporting Organization's Board of Directors shall meet at least once annually in a manner permitted under Delaware law. The directors shall meet at least once annually in person, unless unforeseen circumstances make attendance in person impossible.

## 2. FINANCE AND OPERATIONS

2.1 **FISCAL YEAR.** Supporting Organization's fiscal year shall be the calendar year.

2.2 **SERVICES.** Foundation will provide the services to Supporting Organization described in **SCHEDULE A**, attached, and as such schedule may be amended by Foundation and Supporting Organization in writing from time to time.

2.3 **FEES:**

(a) In consideration for Foundation's services under this Agreement, Supporting Organization shall pay to Foundation the annual fees described more particularly in **SCHEDULE B**, attached.

(b) The parties may agree to additional fees in respect to the performance of any additional services not described in **SCHEDULE A** to this agreement. Foundation shall notify the Supporting Organization in advance of any changes in annual fees set forth in **SCHEDULE A**.

2.4 **INVESTMENTS**

(a) From time to time, some or all of Supporting Organization's funds may be invested with the pooled endowment funds of Foundation to achieve economies of scale and strive for the highest expected level of returns for a given level of risk with the goal of enabling Supporting Organization to achieve its philanthropic and financial objectives. Decisions with respect to the retention, investment, or reinvestment of assets or commingling of assets shall be made by Foundation's Board of Trustees or by a committee or agent authorized by the Board of Trustees, in accordance with Foundation's investment policies. Supporting Organization's funds will be accounted for and reported on separately.

(b)     Supporting Organization may at any time remove any or all of its funds invested with Foundation's pooled investment fund and invest its own funds separately from those of Foundation, subject to limitations on investment withdrawals with regard to any particular investment class (e.g., limitations on early withdrawals from "fund of funds"). Supporting Organization may select its own custodian and investment consultant and pay the relevant fees directly, subject to Section 1.2(c) of this Agreement.

## 3.     TERM

**3.1     COMMENCEMENT.** The term of this Agreement commenced upon the contribution of funds to Supporting Organization on November 30, 2011.

**3.2     TERM.** Supporting Organization and Foundation intend to engage in a long-term relationship. The initial term of this agreement shall be one year, and the term shall be renewed automatically for successive one-year periods. Notwithstanding the foregoing, this agreement may be terminated at any time by either party providing the other party with 30 days advance written notice of its intent to terminate the Agreement. Should either party wish to terminate this relationship, the following process will be followed:

(a)     The parties will agree on amendments to the certificate of incorporation and bylaws of Supporting Organization. The amendments will change the status of Supporting Organization from a supporting organization of Foundation and provide for the transfer of Supporting Organization's assets to one or more of the following entities as determined by Supporting Organization:

      (i)     A stand-alone publicly-supported organization described in Section 501(c)(3) of the Code.

      (ii)    A supporting organization of another publicly-supported 501(c)(3) organization.

      (iii)   A donor-advised fund of a publicly-supported organization described in Section 501(c)(3) of the Code.

(b)     Neither party will unreasonably withhold its approval of these amendments.

(c)     In the event of the termination of this Agreement, each party shall be responsible for its own fees and costs related to the termination.

**3.3     LOSS OF TAX-EXEMPT STATUS.** This agreement shall be automatically terminated in the event that Supporting Organization is determined to not qualify as a tax-exempt organization described in Section 501(c)(3) of the Code.

## 4.     INDEMNIFICATION AND INSURANCE

**4.1**     Foundation will indemnify, defend, and hold harmless Supporting Organization, its officers, directors, employees, members, agents, and affiliated organizations against and from any claims, liability, suits, damages, losses, or expenses whatsoever, including reasonable attorneys fees incurred, arising or alleged to arise out of the acts or omissions of Foundation, its officers, employees, members, agents, and affiliated organizations, under this Agreement. Foundation will maintain at all times during the term of this Agreement general liability and director and officer liability insurance in such amounts and against such risks as are standard in the industry, naming Supporting Organization and its directors and officers as additional insureds. The coverage will protect against the acts or omissions of Supporting Organization, its officers, directors, agents, and employees.

010036 000007 DALLAS 2811351.2                    3

4.2 Supporting Organization will indemnify, defend, and hold harmless Foundation, its officers, trustees, employees, members, agents, and affiliated organizations against and from any claims, liability, suits, damages, losses, or expenses whatsoever, including reasonable attorneys fees incurred, arising or alleged to arise out of the acts or omissions of Supporting Organization, its officers, directors, employees, members, agents, and affiliated organizations, under this Agreement.

5. **MISCELLANEOUS**

5.1 **GOVERNING LAW.** This Agreement and the legal relations between the parties shall be governed by and construed under the laws of the State of Texas.

5.2 **RECORDS.** Supporting Organization will supply to Foundation on a timely basis copies of the following materials as they are created, updated, or amended: incorporation documents; annual filings with the State of Texas; meeting minutes and actions of the Board of Directors and of any committee with Board authority; board contact information; investment statements; and board policies.

5.3 **PUBLICITY.** Foundation may disclose the existence, funding and grants of the Supporting Organization in its Annual Report and other documentation published by Foundation. Any information presented for publication by the media shall be approved in advance by Supporting Organization. Foundation reserves the right to approve in advance any publicity from Supporting Organization mentioning Foundation.

5.4 **FURTHER ASSURANCES.** Each of the parties hereto does hereby covenant and agree, without any further consideration, to execute, acknowledge, and deliver all such other documents and to take all such other actions as may be necessary or convenient in order to carry out more effectively any of the purposes of this Agreement.

5.5 **AMENDMENTS.** This Agreement may be amended from time to time only by written instrument signed by both parties; and this Agreement shall be amended by the parties whenever necessary or advisable in order to comply with requirements of the Code relating to tax-exempt organizations and supporting organizations.

5.6 **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements between the parties with regard to such subject matter.

010036 000007 DALLAS 2811351.2    4

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

HIGHLAND DALLAS
FOUNDATION, INC.

_____
James Dondero, President

DALLAS FOUNDATION

_____
Mary M. Jalonick, President

## SCHEDULE A

### SCHEDULE OF SERVICES

Foundation will provide to Supporting Organization the services indicated below:

1.1    Administrative Services.

    a.    Maintenance of Supporting Organization's records, reports and files.

    b.    Performance of related accounting services for Supporting Organization.

    c.    Payment of accounts payable and other liabilities of Supporting Organization.

    d.    Preparation and distribution of all financial statements required to be generated by Supporting Organization.

    e.    Oversight of the preparation and filing of all federal and state returns required of Supporting Organization.

    f.    As needed, preparation and distribution to the governing body of Supporting Organization of periodic reports on the financial condition of the Supporting Organization.

1.2    Corporate Formalities Services.

    a.    Calendaring of required member and board meetings.

    b.    Notice of all meetings.

    c.    Facilities and administrative support for member and board meetings.

    d.    Preparation of minutes.

    e.    Maintenance of minute book.

    f.    Assistance with selection of candidates for the board.

1.3    Grant Administration.

    a.    Assistance with development of program goals, guidelines and a form of Request for Proposal.

    b.    Disseminate RFP to target groups.

    c.    Receive and screen all proposals.

    d.    Preparation of a summary grid of proposals for review and decision by the Supporting Organization.

    e.    Prepare and send responses to applicants.

    f.    Disbursement of grants with grant letters.

    g.    Monitor performance of grantees.

h. Receive and review interim and annual reports from grantees.

Supporting Organization acknowledges that Foundation is providing only the services listed above. Any services not selected, and any services not listed above, shall not be within the scope of Foundation's responsibilities under this Agreement. Without limiting the foregoing, Supporting Organization acknowledges that Foundation is not providing any investment advice or services to Supporting Organization, and that Supporting Organization is responsible for the management and investment of its assets.

## SCHEDULE B

### SCHEDULE OF FEES

In consideration of the services provided to Supporting Organization by Foundation, Supporting Organization shall pay Foundation an annual administrative fee (Fee) in the amount of .25% of the assets owned directly or indirectly by Supporting Organization, plus out-of-pocket costs. The Fee is payable in quarterly installments in arrears in the amount of .0625% of the prior quarter-end net asset value, plus out-of-pocket expenses for said quarter.

# EXHIBIT 24

## Agreement and
## Acknowledgment of Legal Relationship

The Highland Kansas City Foundation, Inc. (the "Foundation") will request the IRS to grant to it public charity status, effective as of the date of its incorporation, by reason of its supporting organization relationship with the Greater Kansas City Community Foundation, a Missouri nonprofit corporation ("Community Foundation"). This relationship requires the active oversight and involvement of the Community Foundation. In furtherance of this relationship, the Community Foundation and the Foundation agree as follows:

The Community Foundation shall provide the following Base Services to the Foundation: (1) quarterly statements evidencing all account transactions including receipts, disbursements and investment earnings, (2) access to on-line tools provided to donors by the Community Foundation, (3) information upon request regarding grant making opportunities, (4) processing of all grants, (5) all other services generally provided for donor advised funds by the Community Foundation under the standard administrative fee schedule, and (6) appointment of two of the three directors of the Foundation as required by the Foundation's Articles of Incorporation and Bylaws. Additional services may be provided for an additional fee. Both parties shall agree in writing as to any additional services to be provided and the fee for such additional services.

The Community Foundation shall perform no management, accounting, tax or other services with respect to any subsidiaries of the Foundation, or any entities in which the Foundation owns or holds any interest.

In consideration of the Base Services to be provided, the Foundation shall pay the greater of (i) $62,500 or (ii) the administrative fee as set forth in the Community Foundation's then current public Administrative Fee Schedule (the "Administrative Fee Schedule"). The Foundation hereby acknowledges receipt of the current Administrative Fee Schedule attached as Exhibit B and accepts the terms of said schedule. This fee will be applied against the market value of assets held in the Foundation. Such fees will be assessed monthly, however the Foundation shall at all times maintain a cash reserve sufficient to cover the estimated fees for one year. Any and all direct operating expenses incurred by the Community Foundation, such as transaction fees, courier services, tax return preparation fees for Forms 990, legal fees and special audit fees, will be billed at actual cost. The Administrative Fee Schedule is subject to modification and may be increased or decreased at the sole discretion of the Community Foundation's Board of Directors. The Community Foundation shall promptly notify the Foundation of any such modification and send to the Foundation the new, modified Administrative Fee Schedule.

The Foundation agrees to provide the Community Foundation with any other records and data necessary for the Community Foundation to provide the Foundation with the Base Services and any additional services, and further, the Foundation warrants that any such records and data provided shall be accurate and true and that the Community Foundation may rely on such records and data in fulfilling its obligations hereunder. Further the Foundation shall cooperate in any audit of the Community Foundation for which information related to the Foundation is requested. The Foundation agrees to provide the Community Foundation with any and all information needed to fulfill the Community Foundation's obligations hereunder on such forms and in such format as may be reasonably requested by the Community Foundation.

21481479\V-3

93

Specifically, the Foundation agrees to provide the Community Foundation with the following on a timely basis (1) copies of the Foundation's Articles of Incorporation and Bylaws and tax exemption letter from the Internal Revenue Service, (2) copies of all Board meeting notices and minutes of the Board meetings, (3) financial reports at least quarterly, (4) copies of all account statements of the Foundation upon request of the Community Foundation, and (5) a copy of the Foundation's annual Form 990 report to the Internal Revenue Service. Further, the Foundation will notify the Community Foundation when any director appointed by the Community Foundation that is not otherwise affiliated with the Community Foundation finishes his or her term, resigns or otherwise ceases to serve.

This Agreement shall commence on November 30, 2011 and shall continue in effect until terminated by either party. Either party may terminate this Agreement upon 60 days advance written notice to the other party.

The Community Foundation is a public charity and any and all terms and conditions of this agreement which would otherwise adversely affect its status as a public charity shall be considered null and void.

This Agreement shall be interpreted and enforced according to the laws of the State of Missouri.

This Agreement contains the entire understanding of the parties and shall not be supplemented with any other term or condition unless such term or condition is reduced to writing and specifically incorporated herein by written agreement of the parties.

The undersigned have read and understand the contents of this agreement and are authorized to enter into this agreement on behalf of the parties hereto.

_____, President    Laura W. McKnight, President
____James Dondero____              Greater Kansas City Community Foundation
Highland Kansas City Foundation, Inc.
Date: __November 30, 2011__          Date: __11 / 30 / 11__

21481479\V-3

2

94

Case 19-34054-sgj11 Doc 3508-74 Filed 05/09/26 Entered 05/09/26 23:42:39 Desc
Exhibit 69 - Part 2 Page 138 of 176

**EXHIBIT B**

# ADMINISTRATIVE FEES
## TO SUPPORT THE
## GREATER KANSAS CITY COMMUNITY FOUNDATION'S
## MISSION-BASED OPERATIONS

This administrative fee schedule applies to all funds at the Greater Kansas City Community Foundation and its regional affiliates. Through economies of scale, the Foundation is able to charge minimal fees compared to the cost of establishing and maintaining your own private foundation. The fees are used exclusively to support the Community Foundation's operating expenses—your investment in a public charity dedicated to improving the quality of life in our region and ensuring that each philanthropic investment returns the greatest personal and civic benefit possible.

### ANNUAL ADMINISTRATIVE FEES ON THE
### MARKET VALUE OF FUND ASSETS
**1.00% on the first $500,000**
0.60% on the next $500,000
0.30% on the next $2 million
0.10% on the next $4 million

Funds with assets in excess of $7 million will be charged a flat fee of 0.25% on the total assets. The minimum fee is $250 per year. The minimum amount to establish a fund is $10,000. The fees stated above are the annual fees; fees are charged to the fund monthly based on the average fair market value of assets. For newly established funds, the minimum annual fee is prorated over the remainder of the year.

Funds will be charged for any extraordinary direct expenses incurred on behalf of a specific fund, such as commissions for the sale of contributed stock. Additional fees may be assessed for extraordinary services such as special grant processing and review or other non-standard services.

21481479\V-3

95

# EXHIBIT 25

# SANTA BARBARA FOUNDATION

## SUPPORTING ORGANIZATION OPERATING AGREEMENT

THIS AGREEMENT is made and entered into on November 30, 2011, by and between the SANTA BARBARA FOUNDATION ("Foundation") and the **Highland Santa Barbara Foundation, Inc.** ("Supporting Organization"),

**RECITALS:**

A. Foundation is a California nonprofit public benefit corporation exempt from taxation under Internal Revenue Code ("Code") Section 501(c)(3), and a public charity described in Sections 509(a)(1) and 170(b)(1)(A)(vi) of the Code. The principal objective of Foundation is to solicit, receive and accept property to be administered, used and applied for charitable purposes, primarily but not exclusively in, or for the benefit of Santa Barbara County.

B. Supporting Organization, a Delaware nonprofit non-stock charitable corporation, is a "Type 1 Supporting Organization" under Section 509(a)(3) of the Code established to operate exclusively for the benefit of, to perform the functions of, or carry out the purposes of Foundation.

C. Supporting Organization expects to obtain a determination letter from the Internal Revenue Service that it is a tax-exempt organization under Section 501(c)(3) and a Type 1 supporting organization.

D. Foundation and Supporting Organization have entered into this Agreement for the purpose of documenting their agreements relating to the operation of Supporting Organization as a Type 1 Supporting Organization of Foundation. It is the intent of the parties that each year the assets held by Supporting Organization will generate funds for grantmaking primarily but not exclusively in Santa Barbara County and for the payment of fees to Foundation under this Agreement.

**NOW THEREFORE,** the parties agree as follows:

## 1. GOVERNANCE OF SUPPORTING ORGANIZATION

**1.1 OPERATIONS.** Supporting Organization is a separately-incorporated corporation, solely responsible for its own operations and for its compliance with tax and other laws. At all times during the term of this Agreement, Supporting Organization shall operate as a Type 1 Supporting Organization of Foundation, as contemplated in Section 509(a)(3)(B)(i) of the Code. Foundation recognizes that assets contributed to Supporting Organization will be held in the name of Supporting Organization and will be subject to spending and investment policies as shall be determined by the Board of Directors of Supporting Organization from time to time.

**1.2 BOARD OF DIRECTORS.** Supporting Organization's Board of Directors will be the governing body for Supporting Organization. Unless otherwise agreed by the parties, Supporting Organization's initial Board of Directors shall consist of 3 members.

**(a) FOUNDATION APPOINTMENTS.** Foundation's Board of Trustees, as required by the Code, will at all times appoint a majority of Supporting Organization's directors. Foundation will cooperate with Supporting Organization to ensure that all persons appointed by Foundation are committed to the purposes of Supporting Organization. Foundation's appointees to Supporting Organization's Board of Directors may include Foundation's trustees or staff, as well as third parties selected by Foundation.

Foundation's appointees shall not, apart from their service as Supporting Organization directors or officers, be "disqualified persons" as defined in Sections 509(a)(3)(C) and 4946 of the Code. Supporting Organization shall notify Foundation if any appointee is a disqualified person other than by virtue of his or her service as a Supporting Organization director or officer. Foundation's appointees to Supporting Organization's Board of Directors shall serve at the will of Foundation or for terms outlined in Supporting Organization's Bylaws.

   **(b)** **SUPPORTING ORGANIZATION APPOINTMENTS.** Mr. James Dondero or his successor shall elect or appoint a minority of the board members (i.e., one, as long as the Board of Directors numbers three), who may be a disqualified person(s).

   **(c)** **DISQUALIFIED PERSONS.** Under no circumstances shall individuals who are disqualified persons (other than by virtue of their service as directors or officers of Supporting Organization) have majority control of Supporting Organization's board or have veto powers over Supporting Organization's board. Disqualified persons described in Section 4946 of the Code and persons described in Section 4958(c)(3)(B) of the Code cannot be compensated by Supporting Organization or receive grants, loans or similar payments from Supporting Organization.

   **1.3** **COMPENSATION.** Foundation does not pay trustees or hire trustees to provide specific services. The parties agree that in order to avoid even the perception of personal benefit, no directors of Supporting Organization shall receive compensation for their service as such. Notwithstanding the foregoing, Supporting Organization's directors may be reimbursed for reasonable and necessary out of pocket expenses actually incurred for their board service.

   **1.4** **MEETINGS.** Supporting Organization's Board of Directors shall meet at least once annually in a manner permitted under Delaware law.

   **1.5** **POLICIES.** Within the first year of Supporting Organization's existence, Supporting Organization's Board of Directors shall establish the following policies, and provide copies of such policies to Foundation when they are created and amended: Charitable Mission Statement, Gift Acceptance Policy, Investment Policy, and Grantmaking Policy.

## 2. FINANCE AND OPERATIONS

   **2.1** **FISCAL YEAR.** Supporting Organization's fiscal year will be the calendar year.

   **2.2** **SERVICES.** Foundation will provide the services to Supporting Organization described in **SCHEDULE A**, attached, and as such schedule may be amended by Foundation and Supporting Organization in writing from time to time.

   **2.3** **FEES:**

   **(a)** Supporting Organization shall pay to Foundation the fees described more particularly in **SCHEDULE B**, attached.

   **(b)** The parties may agree to additional fees in respect to the performance of any additional services not described in **SCHEDULE A** to this agreement. Foundation shall notify the Supporting Organization in advance of any changes in administrative fees enacted by Foundation's Board of Trustees.

### 2.4 INVESTMENTS

(a)     From time to time, some or all of Supporting Organization's funds may be invested with the pooled endowment funds of Foundation to achieve economies of scale and strive for the highest expected level of returns for a given level of risk with the goal of enabling Supporting Organization to achieve its philanthropic and financial objectives. Decisions with respect to the retention, investment, or reinvestment of assets or commingling of assets shall be made by Foundation's Board of Trustees or by a committee or agent authorized by the Board of Trustees, in accordance with Foundation's investment policies. Supporting Organization's funds will be accounted for and reported on separately.

(b)     Supporting Organization may at any time remove any or all of its funds invested with Foundation's pooled investment fund and invest its own funds separately from those of Foundation, subject to limitations on investment withdrawals with regard to any particular investment class (e.g., limitations on early withdrawals from "fund of funds"). Supporting Organization may select its own custodian and investment consultant and pay the relevant fees directly.

## 3.  TERM

3.1     **COMMENCEMENT.** The term of this Agreement shall commence upon the contribution of funds to Supporting Organization.

3.2     **TERM.** Supporting Organization and Foundation intend to engage in a long-term relationship. The initial term of this agreement shall be one year, and the term shall be renewed automatically for successive one-year periods. Notwithstanding the foregoing, this agreement may be terminated at any time by either party providing the other party with 30 days advance written notice of its intent to terminate the Agreement. Should either party wish to dissolve this relationship, the following process will be followed:

(a)     The parties will agree on amendments to the certificate of incorporation and bylaws of Supporting Organization. The amendments will change the status of Supporting Organization from a supporting organization of Foundation and provide for the transfer of Supporting Organization's assets to one or more of the following entities as determined by Supporting Organization:

(i)     A stand-alone publicly-supported 501(c)(3) organization, or

(ii)     A supporting organization of another publicly-supported 501(c)(3) organization.

(iii)     A donor-advised fund of a publicly-supported 501(c)(3) organization.

(b)     Neither party will unreasonably withhold its approval of these amendments.

(c)     In the event of the dissolution of this relationship, each party shall be responsible for its own fees and costs related to the dissolution.

3.3     **LOSS OF TAX-EXEMPT STATUS.** This agreement shall be automatically terminated upon the date the IRS determines that Supporting Organization is not a tax-exempt organization under Section 501(c)(3) of the Code.

3

## 4. INDEMNIFICATION AND INSURANCE

**4.1** Foundation will indemnify, defend, and hold harmless Supporting Organization, its officers, directors, employees, members, agents, and affiliated organizations against and from any claims, liability, suits, damages, losses, or expenses whatsoever, including reasonable attorneys fees incurred, arising or alleged to arise out of the acts or omissions of Foundation, its officials, employees, members, agents, and affiliated organizations, under this Agreement. Foundation will maintain at all times during the term of this Agreement general liability and director and officer liability insurance in such amounts and against such risks as are standard in the industry, naming Supporting Organization and its directors and officers as additional insureds. The coverage will protect against the acts or omissions of Supporting Organization, its officers, directors, agents, and employees.

**4.2** Supporting Organization will indemnify, defend, and hold harmless Foundation, its officers, trustees, employees, members, agents, and affiliated organizations against and from any claims, liability, suits, damages, losses, or expenses whatsoever, including reasonable attorneys fees incurred, arising or alleged to arise out of the acts or omissions of Supporting Organization, its officers, directors, employees, members, agents, and affiliated organizations, under this Agreement.

## 5. MISCELLANEOUS

**5.1 GOVERNING LAW.** This Agreement and the legal relations between the parties shall be governed under the laws of the State of California.

**5.2 RECORDS.** Supporting Organization will supply to Foundation on a timely basis copies of the following materials as they are created, updated, or amended: incorporation documents; annual filings with the State of California and IRS; meeting minutes and actions of the Board and of any committee with Board authority; board contact information; investment statements; and board policies.

**5.3 PUBLICITY.** Foundation may disclose the existence, funding and grants of the Supporting Organization in its Annual Report and other documentation published byFoundation. Any information presented for publication by the media shall be approved in advance by Supporting Organization. Foundation reserves the right to approve any publicity from Supporting Organization mentioning Foundation.

**5.4 FURTHER ASSURANCES.** Each of the parties hereto does hereby covenant and agree, without any further consideration, to execute, acknowledge, and deliver all such other documents and to take all such other actions as may be necessary or convenient in order to carry out more effectively any of the purposes of this Agreement.

**5.5 AMENDMENTS.** This Agreement may be amended from time to time by written instrument signed by the parties; and this Agreement shall be amended by the parties whenever necessary or advisable in order to comply with requirements of the Code relating to tax-exempt organizations and supporting organizations.

**5.6 ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements between the parties with regard to such subject matter.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**HIGHLAND SANTA BARBARA
FOUNDATION, INC.**

James Dondero, President
November 30, 2011

**SANTA BARBARA FOUNDATION**

Ronald V. Gallo, President & CEO
November 30, 2011

5

## SCHEDULE A

### SCHEDULE OF SERVICES

Foundation will provide to Supporting Organization the services indicated below:

1.1 Administrative Services.
    a. Maintenance of Supporting Organization's records, reports and files.
    b. Performance of related accounting services for Supporting Organization.
    c. Payment of accounts payable and other liabilities of Supporting Organization.
    d. Preparation and distribution of all financial statements required to be generated by Supporting Organization.
    e. Oversight of the preparation and filing of all federal and state returns required of Supporting Organization.
    f. As needed, preparation and distribution to the governing body of Supporting Organization of periodic reports on the financial condition of the Supporting Organization.

1.2 Corporate Formalities Services.
    a. Calendaring of required member and board meetings.
    b. Notice of all meetings.
    c. Facilities and secretarial support for member and board meetings.
    d. Preparation of minutes.
    e. Maintenance of minute book.
    f. Assistance with selection of candidates for the board.

1.3 Grant Administration.
    a. Assistance with development of program goals, guidelines and a form of Request for Proposal.
    b. Disseminate RFP to target groups.
    c. Receive and screen all proposals.
    d. Preparation of a summary grid of proposals for review and decision by the Corporation's governing board or officers.
    e. Prepare and send responses to applicants.
    f. Disbursement of grants with grant letters.
    g. Monitor performance of grantees.
    h. Receive and review interim and annual reports from grantees.

Supporting Organization acknowledges that Foundation is providing only the services listed above. Any services not selected, and any services not listed above, shall not be within the scope of Foundation's responsibilities under this Agreement. Without limiting the foregoing, Supporting Organization acknowledges that Foundation is not providing any investment advice or services to Supporting Organization, and that Supporting Organization is responsible for the management and investment of its assets.

## SCHEDULE B

## SCHEDULE OF FEES

In consideration of the services provided to Supporting Organization by Foundation. Supporting Organization shall pay Foundation an annual support fee (Fee) as outlined below. Fees are payable quarterly in arrears and are based on the prior quarter-end net asset value.

   1% (100 basis points) per annum (i.e., 25 basis points per quarter) on the first $3 million
   0.75% (75 basis points) per annum (i.e., 18.75 basis points per quarter) on the next $2 million
   0.50% (50 basis points) per annum (i.e., 12.5 basis points per quarter) on the next $5 million up to $10 million
   0.25% (25 basis points) per annum (i.e., 6.25 basis points per quarter) on all amounts over $10 million

# EXHIBIT 26

EXHIBIT 4

# Delaware

PAGE 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF INCORPORATION OF "HIGHLAND DALLAS

FOUNDATION, INC.", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY

OF NOVEMBER, A.D. 2011, AT 7:34 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE

NEW CASTLE COUNTY RECORDER OF DEEDS.

Jeffrey W. Bullock, Secretary of State

5069985   8100

AUTHENTICATION: 9177054

111224468

DATE: 11-23-11

You may verify this certificate online
at corp.delaware.gov/authver.shtml

EXHIBIT 4

State of Delaware
Secretary of State
Division of Corporations
Delivered 09:17 PM 11/22/2011
FILED 07:34 PM 11/22/2011
SRV 111224468 - 5069985 FILE

# CERTIFICATE OF INCORPORATION

## OF

## HIGHLAND DALLAS FOUNDATION, INC.

FIRST: The name of the corporation is Highland Dallas Foundation, Inc. (sometimes hereinafter referred to as the "corporation").

SECOND: The corporation is organized and shall be operated exclusively for charitable, educational and scientific purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"). Within the scope of the foregoing purposes, the corporation is organized and operated exclusively to support and benefit The Dallas Foundation, a Texas nonprofit corporation that is exempt from federal income taxation under section 501(a) of the Code as an organization described in section 501(c)(3) of the Code, and a public charity described in section 509(a)(1) of the Code. In furtherance of these purposes, the corporation shall be controlled by The Dallas Foundation within the meaning of Section 509(a)(3)(B)(i) of the Code. The corporation shall possess and exercise all the powers and privileges granted by the Delaware General Corporation Law (the "Law") or by any other law of the State of Delaware or by this Certificate of Incorporation together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the purposes of the corporation. Notwithstanding the foregoing, the corporation shall carry on only those activities permitted to be carried on by an organization that is exempt from taxation under section 501(c)(3) of the Code and an organization that is described in section 509(a)(3) of the Code.

THIRD: The address of the corporation's registered office in the State of Delaware is 1209 Orange Street, New Castle County, Wilmington, Delaware 19801. The name of the corporation's registered agent at such address is The Corporation Trust Company.

FOURTH: The corporation shall be a nonprofit nonstock corporation, and it is not authorized to issue any capital stock. The directors of the corporation shall be elected in the manner and for the terms provided in the corporation's bylaws; provided, however, that the number of directors shall not be fewer than three (3). Unless and except to the extent that the bylaws of the corporation shall so require, the election of directors of the corporation need not be by written ballot.

FIFTH: No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, the corporation's directors, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make grants, loans and similar payments in furtherance of the purposes set forth in Article SECOND hereof unless such compensation, grant, loan or similar payment would constitute an excess benefit transaction as that term is defined in either section 4958(c)(1) or section 4958(c)(3) of the Code. No part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation. The corporation shall not participate in, or intervene in (including the publishing or distribution of statements), any political campaign on behalf of any candidate for public office. Notwithstanding any other provision of this Certificate of Incorporation, the corporation shall not carry on any activities not permitted to be carried on by (i) a corporation exempt from federal income tax under section 501(c)(3) of the Code, (ii) a corporation contributions

to which are deductible under section 170 of the Code, or (iii) a supporting organization described in section 509(a)(3) of the Code.

SIXTH: The corporation shall have perpetual existence.

SEVENTH: To the fullest extent permitted by Law, no director of the corporation shall be liable to the corporation or any member for monetary damages for breach of fiduciary duty as a director, except for liability for (i) any breach of the director's duty of loyalty to the corporation or its members, (ii) acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, including but not limited to section 4958 of the Code, or (iii) any transaction from which the director derived an improper personal benefit. If the Law is amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the corporation shall be eliminated or limited to the fullest extent permitted by the Law, as so amended. To the fullest extent permitted by Law, the corporation shall indemnify and may purchase and maintain insurance or other arrangements on behalf of any and all of the directors and officers of the corporation whom it may lawfully indemnify and insure to the maximum extent permitted by the Law, as amended from time to time, or by the laws of the State of Delaware, as in effect from time to time, in each case subject to the requirements of section 4958 of the Code. Any repeal or modification of this Article SEVENTH shall not adversely affect any right or protection of a director or officer of the corporation existing at the time of such repeal or modification.

EIGHTH: Upon the dissolution of the corporation, the corporation's assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Code to The Dallas Foundation. If The Dallas Foundation is no longer described in section 501(c)(3) of the Code at the time of the distribution or is then no longer in existence, the corporation's assets shall be distributed to one or more organizations organized exclusively for charitable, educational, scientific or other exempt purposes and qualified as exempt under section 501(c)(3) of the Code, as shall be determined by the members of the corporation.

NINTH: In furtherance and not in limitation of the powers conferred by the laws of the State of Delaware, the members of the corporation are expressly authorized to make, alter and repeal the bylaws of the corporation.

TENTH: The incorporator is James Dondero whose mailing address is Two Galleria Tower, 13455 Noel Road, Suite 800, Dallas, Texas 75240.

I, THE UNDERSIGNED, being the incorporator, for the purpose of forming a corporation under the laws of the State of Delaware do make, file and record this Certificate of Incorporation, and, accordingly, have hereto set my hand this 2*th* day of November, 2011.

James Dondero

- 2 -

# EXHIBIT 27

EXHIBIT 4

# Delaware

**PAGE   1**

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF INCORPORATION OF "HIGHLAND KANSAS

CITY FOUNDATION, INC.", FILED IN THIS OFFICE ON THE TWENTY-THIRD

DAY OF NOVEMBER, A.D. 2011, AT 4:23 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE

NEW CASTLE COUNTY RECORDER OF DEEDS.

Jeffrey W. Bullock, Secretary of State

**5070449   8100**

**111227849**

**AUTHENTICATION: 9179752**

**DATE: 11-28-11**

You may verify this certificate online
at corp.delaware.gov/authver.shtml

**EXHIBIT 4**

State of Delaware
Secretary of State
Division of Corporations
Delivered 05:03 PM 11/23/2011
FILED 04:23 PM 11/23/2011
SRV 111227849 - 5070449 FILE

# CERTIFICATE OF INCORPORATION

## OF

## HIGHLAND KANSAS CITY FOUNDATION, INC.

FIRST:  The name of the corporation is Highland Kansas City Foundation, Inc. (sometimes hereinafter referred to as the "corporation").

SECOND:  The corporation is organized and shall be operated exclusively for charitable, educational and scientific purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code").  Within the scope of the foregoing purposes, the corporation is organized and operated exclusively to support and benefit the Greater Kansas City Community Foundation, a Missouri nonprofit corporation that is exempt from federal income taxation under section 501(a) of the Code as an organization described in section 501(c)(3) of the Code, and a public charity described in section 509(a)(1) of the Code.  In furtherance of these purposes, the corporation shall be controlled by the Greater Kansas City Community Foundation within the meaning of Section 509(a)(3)(B)(i) of the Code.  The corporation shall possess and exercise all the powers and privileges granted by the Delaware General Corporation Law (the "Law") or by any other law of the State of Delaware or by this Certificate of Incorporation together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the purposes of the corporation.  Notwithstanding the foregoing, the corporation shall carry on only those activities permitted to be carried on by an organization that is exempt from taxation under section 501(c)(3) of the Code and an organization that is described in section 509(a)(3) of the Code.

THIRD:  The address of the corporation's registered office in the State of Delaware is 1209 Orange Street, New Castle County, Wilmington, Delaware 19801.  The name of the corporation's registered agent at such address is The Corporation Trust Company.

FOURTH:  The corporation shall be a nonprofit nonstock corporation, and it is not authorized to issue any capital stock.  The directors of the corporation shall be elected in the manner and for the terms provided in the corporation's bylaws; provided, however, that the number of directors shall not be fewer than three (3).  Unless and except to the extent that the bylaws of the corporation shall so require, the election of directors of the corporation need not be by written ballot.

FIFTH:  No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, the corporation's directors, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make grants, loans and similar payments in furtherance of the purposes set forth in Article SECOND hereof unless such compensation, grant, loan or similar payment would constitute an excess benefit transaction as that term is defined in either section 4958(c)(1) or section 4958(c)(3) of the Code.  No part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation.  The corporation shall not participate in, or intervene in (including the publishing or distribution of statements), any political campaign on behalf of any candidate for public office.  Notwithstanding any other provision of this Certificate of Incorporation, the corporation shall not carry on any activities not permitted to be carried on by (i) a corporation

**EXHIBIT 4**

exempt from federal income tax under section 501(c)(3) of the Code, (ii) a corporation contributions to which are deductible under section 170 of the Code, or (iii) a supporting organization described in section 509(a)(3) of the Code.

SIXTH: The corporation shall have perpetual existence.

SEVENTH: To the fullest extent permitted by Law, no director of the corporation shall be liable to the corporation or any member for monetary damages for breach of fiduciary duty as a director, except for liability for (i) any breach of the director's duty of loyalty to the corporation or its members, (ii) acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, including but not limited to section 4958 of the Code, or (iii) any transaction from which the director derived an improper personal benefit. If the Law is amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the corporation shall be eliminated or limited to the fullest extent permitted by the Law, as so amended. To the fullest extent permitted by Law, the corporation shall indemnify and may purchase and maintain insurance or other arrangements on behalf of any and all of the directors and officers of the corporation whom it may lawfully indemnify and insure to the maximum extent permitted by the Law, as amended from time to time, or by the laws of the State of Delaware, as in effect from time to time, in each case subject to the requirements of section 4958 of the Code. Any repeal or modification of this Article SEVENTH shall not adversely affect any right or protection of a director or officer of the corporation existing at the time of such repeal or modification.

EIGHTH: Upon the dissolution of the corporation, the corporation's assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Code to the Greater Kansas City Community Foundation. If the Greater Kansas City Community Foundation is no longer described in section 501(c)(3) of the Code at the time of the distribution or is then no longer in existence, the corporation's assets shall be distributed to one or more organizations organized exclusively for charitable, educational, scientific or other exempt purposes and qualified as exempt under section 501(c)(3) of the Code, as shall be determined by the members of the corporation.

NINTH: In furtherance and not in limitation of the powers conferred by the laws of the State of Delaware, the members of the corporation are expressly authorized to make, alter and repeal the bylaws of the corporation.

TENTH: The incorporator is James Dondero whose mailing address is Two Galleria Tower, 13455 Noel Road, Suite 800, Dallas, Texas 75240.

I, THE UNDERSIGNED, being the incorporator, for the purpose of forming a corporation under the laws of the State of Delaware do make, file and record this Certificate of Incorporation, and, accordingly, have hereto set my hand this 22ⁿ day of November, 2011.

James Dondero

- 2 -

78673.000002 EMF_US 37829386v4

# EXHIBIT 28

EXHIBIT 4

# Delaware

PAGE  1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "HIGHLAND SANTA BARBARA FOUNDATION, INC.", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY OF NOVEMBER, A.D. 2011, AT 7:36 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 9177064

5069989    8100

111224480

DATE: 11-23-11

You may verify this certificate online
at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 09:17 PM 11/22/2011
FILED 07:36 PM 11/22/2011
SRV 111224480 - 5069989 FILE

## CERTIFICATE OF INCORPORATION

### OF

## HIGHLAND SANTA BARBARA FOUNDATION, INC.

FIRST: The name of the corporation is Highland Santa Barbara Foundation, Inc. (sometimes hereinafter referred to as the "corporation").

SECOND: The corporation is organized and shall be operated, exclusively for charitable, educational and scientific purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"). Within the scope of the foregoing purposes, the corporation is organized and operated exclusively to support and benefit Santa Barbara Foundation, a California nonprofit corporation that is exempt from federal income taxation under section 501(a) of the Code of 1986 as an organization described in section 501(c)(3) of the Code, and a public charity described in section 509(a)(1) of the Code. In furtherance of these purposes, the corporation shall be controlled by Santa Barbara Foundation within the meaning of Section 509(a)(3)(B)(i) of the Code. The corporation shall possess and exercise all the powers and privileges granted by the Delaware General Corporation Law (the "Law") or by any other law of the State of Delaware or by this Certificate of Incorporation together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the purposes of the corporation. Notwithstanding the foregoing, the corporation shall carry on only those activities permitted to be carried on by an organization that is exempt from taxation under section 501(c)(3) of the Code and an organization that is described in section 509(a)(3) of the Code.

THIRD: The address of the corporation's registered office in the State of Delaware is 1209 Orange Street, New Castle County, Wilmington, Delaware 19801. The name of the corporation's registered agent at such address is The Corporation Trust Company.

FOURTH: The corporation shall be a nonprofit nonstock corporation, and it is not authorized to issue any capital stock. The directors of the corporation shall be elected in the manner and for the terms provided in the corporation's bylaws; provided, however, that the number of directors shall not be fewer than three (3). Unless and except to the extent that the bylaws of the corporation shall so require, the election of directors of the corporation need not be by written ballot.

FIFTH: No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, the corporation's directors, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make grants, loans and similar payments in furtherance of the purposes set forth in Article SECOND hereof unless such compensation, grant, loan or similar payment would constitute an excess benefit transaction as that term is defined in either section 4958(c)(1) or section 4958(c)(3) of the Code. No part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation. The corporation shall not participate in, or intervene in (including the publishing or distribution of statements), any political campaign on behalf of any candidate for public office. Notwithstanding any other provision of this Certificate of Incorporation, the corporation shall not carry on any activities not permitted to be carried on by (i) a corporation exempt from federal income tax under section 501(c)(3) of the Code, (ii) a corporation contributions

to which are deductible under section 170 of the Code. or (iii) a supporting organization described in section 509(a)(3) of the Code.

SIXTH: The corporation shall have perpetual existence.

SEVENTH: To the fullest extent permitted by Law, no director of the corporation shall be liable to the corporation or any member for monetary damages for breach of fiduciary duty as a director, except for liability for (i) any breach of the director's duty of loyalty to the corporation or its members, (ii) acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, including but not limited to section 4958 of the Code, or (iii) any transaction from which the director derived an improper personal benefit. If the Law is amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the corporation shall be eliminated or limited to the fullest extent permitted by the Law, as so amended. To the fullest extent permitted by Law, the corporation shall indemnify and may purchase and maintain insurance or other arrangements on behalf of any and all of the directors and officers of the corporation whom it may lawfully indemnify and insure to the maximum extent permitted by the Law, as amended from time to time, or by the laws of the State of Delaware, as in effect from time to time, in each case subject to the requirements of section 4958 of the Code. Any repeal or modification of this Article SEVENTH shall not adversely affect any right or protection of a director or officer of the corporation existing at the time of such repeal or modification.

EIGHTH: Upon the dissolution of the corporation, the corporation's assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Code to Santa Barbara Foundation. If Santa Barbara Foundation is no longer described in section 501(c)(3) of the Code at the time of the distribution or is then no longer in existence, the corporation's assets shall be distributed to one or more organizations organized exclusively for charitable, educational, scientific or other exempt purposes and qualified as exempt under section 501(c)(3) of the Code, as shall be determined by the members of the corporation.

NINTH: In furtherance and not in limitation of the powers conferred by the laws of the State of Delaware, the members of the corporation are expressly authorized to make, alter and repeal the bylaws of the corporation.

TENTH: The incorporator is James Dondero whose mailing address is Two Galleria Tower, 13455 Noel Road, Suite 800, Dallas, Texas 75240.

I, THE UNDERSIGNED, being the incorporator, for the purpose of forming a corporation under the laws of the State of Delaware do make, file and record this Certificate of Incorporation, and, accordingly, have hereto set my hand this 21 day of November, 2011.

James Dondero

# EXHIBIT 29

**BYLAWS**
**OF**

**HIGHLAND DALLAS FOUNDATION, INC.**

## TABLE OF CONTENTS

Page

ARTICLE I OFFICES ....................................................................................................1

    Section 1.1        Registered Office .........................................................................1
    Section 1.2        Other Offices ...............................................................................1

ARTICLE II MEMBERSHIP ..........................................................................................1

    Section 2.1        Classes and Number ....................................................................1
    Section 2.2        Voting .........................................................................................1
    Section 2.3        Transfer of Membership ..............................................................1
    Section 2.4        Resignation of Member ...............................................................2
    Section 2.5        Place of Meetings .......................................................................2
    Section 2.6        Annual Meetings .........................................................................2
    Section 2.7        Special Meetings .........................................................................2
    Section 2.8        Notice of Meetings of Members ..................................................2
    Section 2.9        Quorum .......................................................................................3
    Section 2.10      Voting .........................................................................................3
    Section 2.11      Proxies .......................................................................................3
    Section 2.12      Action by Written Consent ..........................................................3

ARTICLE III DIRECTORS ............................................................................................4

    Section 3.1        General Powers ...........................................................................4
    Section 3.2        Number of Directors ...................................................................4
    Section 3.3        Vacancies ...................................................................................4
    Section 3.4        Place of Meetings .......................................................................4
    Section 3.5        Committees of Directors .............................................................4
    Section 3.6        Compensation of Directors .........................................................4
    Section 3.7        Annual Meeting ..........................................................................4
    Section 3.8        Additional Regular Meetings ......................................................5
    Section 3.9        Special Meetings .........................................................................5
    Section 3.10      Method and Timing of Notice .....................................................5
    Section 3.11      Purpose not Required in Notice ...................................................5
    Section 3.12      Waiver of Notice ........................................................................5
    Section 3.13      Action by Written Consent ..........................................................6
    Section 3.14      Validation of Action by Consent .................................................6
    Section 3.15      Quorum and Manner of Acting ...................................................6
    Section 3.16      Resignation and Removal of Directors ........................................6

ARTICLE IV OFFICERS ...............................................................................................6

    Section 4.1        Officers ......................................................................................6
    Section 4.2        Election, Term of Office and Eligibility .....................................7

Section 4.3      Subordinate Officers ...................................................................7
Section 4.4      Removal .............................................................................................7
Section 4.5      The President .....................................................................................7
Section 4.6      The Secretary .....................................................................................7
Section 4.7      The Assistant Secretaries ...................................................................7
Section 4.8      Chairman ............................................................................................8
Section 4.9      The Chief Financial Officer ...............................................................8
Section 4.10     The Assistant Chief Financial Officers ..............................................8
Section 4.11     Delegation of Duties ..........................................................................8

ARTICLE V BOOKS AND RECORDS ...............................................................................8

Section 5.1      Location ..............................................................................................8
Section 5.2      Inspection ...........................................................................................9

ARTICLE VI MISCELLANEOUS PROVISIONS ...............................................................9

Section 6.1      Fiscal Year .........................................................................................9
Section 6.2      Depositories .......................................................................................9
Section 6.3      Checks, Drafts and Notes ...................................................................9
Section 6.4      Contracts and Other Instruments ........................................................9
Section 6.5      Conflicts of Interest ............................................................................9
Section 6.6      Waivers of Notice ...............................................................................10
Section 6.7      Ownership Interests in Other Entities .................................................10
Section 6.8      Indemnification ...................................................................................10
Section 6.9      Amendment of Bylaws ........................................................................11

**28**

BYLAWS

OF

HIGHLAND DALLAS FOUNDATION, INC.

## ARTICLE I

## OFFICES

Section 1.1  Registered Office.  The registered office of Highland Dallas Foundation, Inc. (the "Corporation") shall be maintained in the County of New Castle, State of Delaware, and the registered agent in charge thereof is The Corporation Trust Company.

Section 1.2  Other Offices.  The Corporation may also have an office in the City of Dallas, State of Texas, and also offices at such other places as the Board of Directors may from time to time determine or the business of the Corporation may require.

## ARTICLE II

## MEMBERSHIP

Section 2.1  Classes and Number.  The Corporation shall have two classes of members and one member in each such class:  the Institutional Member, which shall be The Dallas Foundation, and the Individual Member, which shall be James Dondero or an individual designated as the Individual Member in accordance with these Bylaws.

Section 2.2  Voting.  Except as otherwise provided in these Bylaws, the Institutional Member shall be entitled to two (2) votes upon each matter submitted to a vote of the members, and the Individual Member shall be entitled to one (1) vote upon each matter submitted to a vote of the members.  In addition to any voting rights provided in these Bylaws, members shall be entitled to vote upon any matter with respect to which the General Corporation Law of the State of Delaware, or its successor statute, as amended (the "Law"), requires a vote of the members.

Section 2.3  Transfer of Membership.  Institutional Membership in the Corporation is not transferable or assignable.  The Individual Membership is transferable or assignable as provided herein only upon the approval of the Institutional Member, with such approval not to be unreasonably withheld by the Institutional Member.  Subject to the approval of the Institutional Member, Mr. Dondero, as the initial Individual Member, may at any time pursuant to a written notice delivered to the Institutional Member during his lifetime or by a provision in his Will or other testamentary document, transfer his Individual Member interest to an individual, or designate an individual, or series of individuals, to whom such Individual Member interest is to be transferred upon the occurrence of a future contingency, such as the death or failure to act of a current or future Individual Member.  Each successor Individual Member shall succeed to the rights of the initial Individual Member.  Subject to the approval of the Institutional Member, each successor Individual Member may in the same manner transfer his Individual Member

-1-

29

interest to an individual, or designate an individual, or series of individuals, to whom such Individual Member interest is to be transferred upon the occurrence of a future contingency, such as the death or failure to act of a current or future Individual Member. In the event of a conflict between such transfer documents, the one bearing the latest date shall control. Each Individual Member may at any time revoke his transfer document that is to be effective in the future, in whole or in part, by written notice delivered to the Institutional Member. If at any time an Individual Member shall be disabled and no transfer of such member's interest is to occur as a result of such disability in accordance with the foregoing provisions of this Section, then such member's attorney-in-fact under a valid, effective power of attorney instrument may act for such member hereunder. In the event of the death of an Individual Member, such member's personal representative of his estate, or trustee of a trust to which the Individual Member transferred his interest, may, if necessary, act as the Individual Member hereunder until such time as the Individual Member interest is transferred from the estate or trust.

Section 2.4    Resignation of Member. A member may resign at any time upon written notice to the Secretary.

Section 2.5    Place of Meetings. All meetings of the members be held shall by means of remote communication as authorized by the Law, unless the Board of Directors decides to hold such a meeting by another permitted means.

Section 2.6    Annual Meetings. Except as otherwise provided by these Bylaws, annual meeting of the members, commencing with the year 2012, shall be held at such date and time in the month of December as shall be provided by resolution of the Board of Directors, at which the members shall elect a Board of Directors, and transact such other business as may properly be brought before the meeting. The Secretary shall provide notice of each such meeting to each member consistent with the requirements of Section 2.8 below.

Section 2.7    Special Meetings. Special meetings of the members, for any purpose or purposes, unless otherwise prescribed by the Law or by the Certificate of Incorporation, may be called by the President and shall be called by the Secretary at the request of a majority of the Board of Directors, or at the request in writing of a member entitled to vote at such meeting. Such request shall state the purpose or purposes of the proposed meeting.    The Secretary shall provide notice of each such meeting to each member consistent with the requirements of Section 2.8 below.

Section 2.8    Notice of Meetings of Members. When notice is required to be given for a meeting of the members, such notice shall specify the date, time, and location of the meeting and shall be given to each member at least ten (10) days prior to the meeting (at least three (3) days in the case of a special meeting). Notice shall be given (a) by written notice delivered personally, (b) by written notice sent by mail, email, or facsimile to the member's mailing address, email address, or facsimile number as shown by the records of the Corporation, or (c) by telephone. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail so addressed, with postage thereon prepaid. If notice is delivered by email, such notice shall be deemed to be delivered when the email is sent, provided that the sender does not subsequently receive notice that the email transmission was not delivered to the designated email address. If delivered by facsimile, such notice shall be deemed to be delivered when the

-2-

30

facsimile transmission indicates that the facsimile has been sent without error to the designated facsimile number. If delivered by telephone, such notice shall be deemed to be given at the time the telephone message shall reach and be communicated to a responsible individual at the phone number listed for a member's residence or place of business.

Section 2.9 <u>Quorum</u>. Both the Institutional Member and the Individual Member must be present in person or represented by proxy in order to constitute a quorum at all meetings of the members for the transaction of business, except as otherwise required by Law, the Certificate of Incorporation or these Bylaws. If, however, such quorum shall not be present or represented at any meeting of the members, the member entitled to vote thereat, present in person or represented by proxy, shall have the power to adjourn the meeting from time to time, without notice other than announcement at the meeting, of the place, date and hour of the adjourned meeting, until a quorum shall be present or represented by proxy. At the adjourned meeting at which a quorum shall be present or represented by proxy, the Corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than 30 days, a notice of the adjourned meeting shall be given to each member of record entitled to vote at the meeting.

Section 2.10 <u>Voting</u>. When a quorum is present at any meeting, the vote of a majority of the number of votes held by the members, present in person or represented by proxy, shall be the act of the members, unless the act of a greater number is required by Law or expressly by these Bylaws.

Section 2.11 <u>Proxies</u>. At any meeting of the members, any member entitled to vote, consent or approve any action or matter may do so in person or by proxy authorized by an instrument in writing or by a transmission permitted by law. Any member represented by proxy shall be counted as present at such meeting for all purposes. Any copy, facsimile telecommunication or other reliable reproduction of the writing or transmission created pursuant to these Bylaws may be substituted or used in lieu of the original writing or transmission that could be used, provided that the copy, facsimile telecommunication or other reproduction shall be a complete reproduction of the entire original writing or transmission.

Section 2.12 <u>Action by Written Consent</u>. Any action required to be, or which may be, voted on, consented to or approved by the members may be taken without a meeting, without prior notice and without taking a vote if a consent or consents in writing, setting forth the action so taken, are signed by the member(s) holding the number of votes necessary to authorize or take such action at a meeting at which all members entitled to vote thereon were present and voted. A consent transmitted by electronic transmission shall be deemed to be written and signed for purposes of this Section 2.12. Prompt notice of the taking of an action by the members without a meeting by less than unanimous written consent shall be given to each member who did not consent in writing to the action. Each such consent must state the date of each member's signature. Such consent shall be placed in the minute book of the Corporation, and shall have the same force and effect as if approved by vote of the members at an actual meeting.

# ARTICLE III

# DIRECTORS

Section 3.1     General Powers.  The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors, which may exercise all such powers of the Corporation and do all such acts and things as are not by the Law, the Certificate of Incorporation or these Bylaws directed or required to be exercised or done by the members, so long as the exercise of such powers and doing of such acts are consistent with the Corporation's prescribed purposes.

Section 3.2     Number of Directors.  The number of Directors that shall constitute the Board of Directors shall be three (3).  Two (2) Directors (the "Institutional Directors") shall be elected annually by the Institutional Member and one (1) Director (the "Individual Director") shall be elected annually by the Individual Member.  Each Director shall hold office until such Director's successor is elected and qualified or until such Director's earlier death, resignation, retirement, disqualification or removal.

Section 3.3     Vacancies.  If the office of any Director becomes vacant by reason of death, resignation, retirement, disqualification, removal from office, or otherwise, then (i) with respect to a vacancy of an Institutional Director seat, the Institutional Member shall elect a person to fill such vacancy, and (ii) with respect to a vacancy of an Individual Director seat, the Individual Member shall elect a person to fill such vacancy.  If at any time there is no Individual Member who is able to fill a vacancy of an Individual Director seat, then the Institutional Member shall elect a successor Individual Director.  Each Director elected to fill a vacancy shall hold office for the unexpired term of such Director's predecessor in office.

Section 3.4     Place of Meetings.  The Board of Directors may hold its meetings outside of the State of Delaware, at the office of the Corporation or at such other places as they may from time to time determine, or as shall be fixed in the respective notices or waivers of notice of such meetings.

Section 3.5     Committees of Directors.  The Corporation shall have no committees unless the Board of Directors, by resolution or resolutions passed by the unanimous vote of the Board, designates one or more committees.

Section 3.6     Compensation of Directors.  Except to the extent prohibited by section 4958(c)(3) of the Internal Revenue Code of 1986 (the "Code"), Directors, as such, may receive such stated salary for their services and/or such fixed sums and expenses for attendance at each regular or special meeting of the Board of Directors as may be established by resolution of the Board; provided that nothing contained in this Section shall be construed to preclude any Director from serving the Corporation in any other capacity and receiving compensation therefor.

Section 3.7     Annual Meeting.  The annual meeting of the Board of Directors shall be held at such place and at such time as may be determined by the Board of Directors.  If the date, time and location of the annual meeting are specified by a resolution adopted by the Board of

-4-

32

Directors, no further notice of such annual meeting shall be required. If the date, time and location of an annual meeting are specified in another manner, then notice shall be provided consistent with the requirements of Section 3.10 below.

Section 3.8    Additional Regular Meetings. The Board of Directors may hold additional regular meetings for the purpose of taking any action and conducting any business that may properly come before the Board of Directors. If the date, time and location of the regular meeting are specified by a resolution adopted by the Board of Directors, no further notice of such regular meeting shall be required. If the date, time and location of a regular meeting are specified in another manner, then notice shall be provided consistent with the requirements of Section 3.10 below.

Section 3.9    Special Meetings. Special meetings of the Board of Directors may be held at any time on the call of the President or at the request in writing of any one or more Directors upon not less than three (3) days notice to each director. The person or persons calling a special meeting of the Board of Directors shall fix a date, time and location for holding such special meeting, which shall be specified in a notice provided for such special meeting consistent with the requirements of Section 3.10 below.

Section 3.10    Method and Timing of Notice. Unless otherwise provided herein, when notice is required to be given for a meeting of the Board of Directors, such notice shall be given to each Director at least ten (10) days prior to the meeting. Any notice given herein shall specify the date, time, and location of the meeting. Notice shall be given (a) by written notice delivered personally, (b) by written notice sent by mail, email, or facsimile to the Director's mailing address, email address, or facsimile number as shown by the records of the Corporation, or (c) by telephone. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail so addressed, with postage thereon prepaid. If notice is delivered by email, such notice shall be deemed to be delivered when the email is sent, provided that the sender does not subsequently receive notice that the email transmission was not delivered to the designated email address. If delivered by facsimile, such notice shall be deemed to be delivered when the facsimile transmission indicates that the facsimile has been sent without error to the designated facsimile number. If delivered by telephone, such notice shall be deemed to be given at the time the telephone message shall reach and be communicated to a responsible individual at the phone number listed for a Director's residence or place of business.

Section 3.11    Purpose not Required in Notice. Unless specifically required by the Law or these Bylaws for a particular action, the purpose of and business to be transacted at a meeting need not be specified in the notice of such meeting or in a waiver of notice of such meeting.

Section 3.12    Waiver of Notice. Any Director may waive notice of any meeting by a writing signed by the Director, whether signed before or after the holding of such meeting, and such signed written waiver shall be deemed the equivalent of the Director having received notice. A Director's attendance at any meeting shall constitute a waiver of notice of such meeting, except where a Director attends a meeting for the express purpose of objecting to the transaction of any business of such meeting on the ground that the meeting is not lawfully called or convened.

-5-

Section 3.13 <u>Action by Written Consent</u>. Any action required to be, or which may be, voted on, consented to or approved by the Board of Directors may be taken without a meeting if a consent or consents in writing, setting forth the action so taken, are signed by all of the then-serving Directors. A consent transmitted by electronic transmission shall be deemed to be written and signed for purposes of this Section 3.13. Such consent shall be placed in the minute book of the Corporation, and shall have the same force and effect as if approved by vote of the Board of Directors at an actual meeting.

Section 3.14 <u>Validation of Action by Consent</u>. All actions taken at a meeting of the Board of Directors which is not regularly called or noticed shall be valid as if taken at a meeting regularly called and noticed if each Director either consents in writing or is present at such meeting and does not object to the meeting being held. At such meeting any business may be transacted which is not excepted from the written consent or which is not objected to at such meeting for want of notice. If any meeting of the Board of Directors is irregular for want of notice, the proceedings of such meeting may be ratified, approved and rendered valid, and the irregularity or defect therein waived, by a writing signed by all Directors, provided a quorum was present at such meeting.

Section 3.15 <u>Quorum and Manner of Acting</u>. A quorum for the transaction of business at any meeting of the Board of Directors shall consist of a majority of the then serving Directors. Except as otherwise provided by the Law, the Certificate of Incorporation or these Bylaws, the vote of a majority of the Directors present at any meeting at which a quorum is present shall be the act of the Board of Directors. Any Director may participate in a meeting of the Board of Directors or committee by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other and such participation shall constitute presence in person at the meeting. In the absence of a quorum, a majority of the Directors present may adjourn the meeting from time to time until a quorum shall be present. Notice of any adjourned meeting need not be given, except that notice shall be given to all Directors if the adjournment is for more than thirty days.

Section 3.16 <u>Resignation and Removal of Directors</u>. Each Director may resign at any time by written notice delivered to the member that appointed such Director and to the President and Secretary of the Corporation. A resignation is effective when the resignation is delivered unless the resignation specifies a later effective date or an effective date determined upon the happening of an event or events. A resignation that is conditioned upon the director failing to receive a specified vote for reelection as a director may provide that it is irrevocable. The Institutional Member may remove an Institutional Director at any time, with or without cause. The Individual Member may remove an Individual Director at any time, with or without cause.

## <u>ARTICLE IV</u>

## <u>OFFICERS</u>

Section 4.1 <u>Officers</u>. The officers of the Corporation shall include a President and a Secretary, and may include a Chairman and a Chief Financial Officer. A person may hold multiple offices.

-6-

34

Section 4.2 <u>Election, Term of Office and Eligibility</u>. The officers of the Corporation shall be elected annually by the Board of Directors at its annual meeting or at a special meeting held in lieu thereof. Each officer, except such officers as may be appointed in accordance with the provisions of Section 4.3, shall hold office until such officer's successor shall have been duly elected and qualified or until such officer's death, resignation or removal. None of the officers other than the Chairman need be members of the Board of Directors.

Section 4.3 <u>Subordinate Officers</u>. The Board of Directors may appoint such Vice Presidents, Assistant Secretaries, Assistant Chief Financial Officers, Controller and other officers, and such agents as the Board may determine, to hold office for such period and with such authority and to perform such duties as the Board of Directors may from time to time determine. The Board of Directors may, by specific resolution, empower the President or another officer of the Corporation to appoint any such subordinate officers or agents.

Section 4.4 <u>Removal</u>. The President, the Secretary, the Chairman and/or the Chief Financial Officer may be removed at any time by the Board of Directors with or without cause. Any subordinate officer appointed pursuant to Section 4.3 may be removed at any time, with or without cause, by the Board of Directors or by the person holding the officer position by which the subordinate officer was appointed.

Section 4.5 <u>The President</u>. The President shall be the chief executive officer of the Corporation. He or she shall have executive authority to see that all orders and resolutions of the Board of Directors are carried into effect and, subject to the control vested in the Board of Directors by the Law, the Certificate of Incorporation, or these Bylaws, shall administer and be responsible for the management of the business and affairs of the Corporation. In general the President shall perform all duties incident to the office of the President and such other duties as from time to time may be assigned to him or her by the Board of Directors.

Section 4.6 <u>The Secretary</u>. The Secretary shall:

(a) keep the minutes of the meetings of the members and of the Board of Directors;

(b) see that all notices are duly given in accordance with the provisions of these Bylaws or as required by law;

(c) be custodian of the records and of the seal of the Corporation and see that the seal or a facsimile or equivalent thereof is affixed to or reproduced on all documents, the execution of which on behalf of the Corporation under its seal is duly authorized; and

(d) in general, perform all duties incident to the office of Secretary, and such other duties as are provided by these Bylaws and as from time to time are assigned to him or her by the Board of Directors or by the President of the Corporation.

Section 4.7 <u>The Assistant Secretaries</u>. If one or more Assistant Secretaries shall be appointed pursuant to the provisions of Section 4.3 respecting subordinate officers, then, at the request of the Secretary, or in his or her absence or disability, the Assistant Secretary designated by the Secretary (or in the absence of such designations, then any one of such Assistant

-7-

35

Secretaries) shall perform the duties of the Secretary and when so acting shall have all the powers of, and be subject to all the restrictions upon, the Secretary.

Section 4.8    Chairman.  The Chairman, if any, shall preside when present at meetings of the Board of Directors; advise and counsel the other officers of the Corporation; and shall perform such other duties as may be prescribed by the Board of Directors from time to time.

Section 4.9    The Chief Financial Officer.  The Chief Financial Officer, if any, shall:

(a)    receive and be responsible for all funds of and securities owned or held by the Corporation and, in connection therewith, among other things:  keep or cause to be kept full and accurate records and accounts for the Corporation; deposit or cause to be deposited to the credit of the Corporation all moneys, funds and securities so received in such bank or other depository as the Board of Directors or an officer designated by the Board may from time to time establish; and disburse or supervise the disbursement of the funds of the Corporation as may be properly authorized;

(b)    render to the Board of Directors at any meeting thereof, or from time to time whenever the Board of Directors or the chief executive officer of the Corporation may require, financial and other appropriate reports on the condition of the Corporation; and

(c)    in general, perform all the duties incident to the office of Chief Financial Officer and such other duties as from time to time may be assigned to the Chief Financial Officer by the Board of Directors or by the chief executive officer of the Corporation.

Section 4.10    The Assistant Chief Financial Officers.  If one or more Assistant Chief Financial Officers shall be appointed pursuant to the provisions of Section 4.3 respecting subordinate officers, then, at the request of the Chief Financial Officer, or in the Chief Financial Officer's absence or disability, the Assistant Chief Financial Officer designated by the Chief Financial Officer (or in the absence of such designation, then any one of such Assistant Chief Financial Officers) shall perform all the duties of the Chief Financial Officer and when so acting shall have all the powers of and be subject to all the restrictions upon, the Chief Financial Officer.

Section 4.11    Delegation of Duties.  In case of the absence of any officer of the Corporation or for any other reason which may seem sufficient to the Board of Directors, the Board of Directors may, for the time being, delegate his powers and duties, or any of them, to any other officer or to any director.

## ARTICLE V

## BOOKS AND RECORDS

Section 5.1    Location.  The books, accounts and records of the Corporation may be kept at such place or places within or without the State of Delaware as the Board of Directors may from time to time determine.

-8-

36

Section 5.2 <u>Inspection</u>. The books, accounts, and records of the Corporation shall be open to inspection at all times by any member and by any member of the Board of Directors.

**ARTICLE VI**

**MISCELLANEOUS PROVISIONS**

Section 6.1 <u>Fiscal Year</u>. The fiscal year of the Corporation shall be the calendar year unless changed by the Board of Directors.

Section 6.2 <u>Depositories</u>. The Board of Directors or an officer designated by the Board shall appoint banks, trust companies, or other depositories in which shall be deposited from time to time the money or securities of the Corporation.

Section 6.3 <u>Checks, Drafts and Notes</u>. All checks, drafts, or other orders for the payment of money and all notes or other evidences of indebtedness issued in the name of the Corporation shall be signed by such officer or officers or agent or agents as shall from time to time be designated by resolution of the Board of Directors or by an officer appointed by the Board of Directors.

Section 6.4 <u>Contracts and Other Instruments</u>. The Board of Directors may authorize any officer, agent or agents to enter into any contract or execute and deliver any instrument in the name and on behalf of the Corporation and such authority may be general or confined to specific instances.

Section 6.5 <u>Conflicts of Interest</u>. No contract or agreement may be entered into by and between the corporation and any of the following: (a) a Director, officer, or employee of the corporation (hereinafter an "Insider"); or (b) any corporation, partnership, trust, sole proprietorship or any other entity (hereinafter an "Entity") in which an interest is owned or held, directly or indirectly, by or for the benefit of an Insider, unless (i) the transaction is approved in accordance with Section 144 of the Delaware General Corporation Law to the extent such provision is applicable to the transaction; and (ii) if one or more of the parties to the contract or transaction is a "disqualified person" with respect to the corporation within the meaning of Section 4958 of the Code, either (x) such transaction is reviewed and approved in accordance with the "rebuttable presumption safe harbor" provisions set forth in the regulations promulgated under Section 4958 of the Code or (y) the Board of Directors determines that such procedures are not necessary for the transaction involved and records its specific findings for making such determination; provided, however, that the following contracts and agreements shall not be subject to the foregoing prohibition: a gratuitous transfer of assets or promise to transfer assets to the corporation of any kind, including but not limited to, (i) a gift annuity, charitable remainder trust, charitable lead trust or similar split-interest arrangement which benefits both the Insider and the corporation; or (ii) a loan, lease, agreement of sale or purchase, pledge, guarantee, assumption of liability, bailment, or consignment. All Insiders shall, as a condition of qualifying and continuing to qualify as a Director, officer, and/or employee of the corporation, abide by such conflict of interest policies as the Board of Directors may adopt from time to time.

-9-

Section 6.6     Waivers of Notice.  Whenever any notice is required to be given under the provisions of the Law or of the Certificate of Incorporation or of these Bylaws, a waiver thereof in writing signed by the person or persons entitled to said notice, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the members, Directors or members of a committee of directors need be specified in any written waiver of notice.

Section 6.7     Ownership Interests in Other Entities.  Any ownership interests (e.g., shares of stock in any other corporation which may from time to time be held by this Corporation) may be represented and voted at any meeting of owners of such entity by the President, or by any other person or persons thereunto authorized by the Board of Directors, or by any proxy designated by written instrument of appointment executed in the name of this Corporation by its President.

Section 6.8     Indemnification.

(a)     Each person who was or is a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that the person is or was a Director or officer of the Corporation or is or was a Director or officer of the Corporation who is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the laws of Delaware as the same now or may hereafter exist (but, in the case of any change, only to the extent that such change authorizes the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such change) against all costs, charges, expenses, liabilities and losses (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall continue as to a person who has ceased to be a Director or officer and shall inure to the benefit of the person's heirs, executors and administrators.  The right to indemnification conferred in this Section shall be a contract right and shall include the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition upon receipt by the Corporation of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that the director or officer is not entitled to be indemnified under this Section or otherwise.  The Corporation may, by action of its Board of Directors, provide indemnification to employees and agents of the Corporation with the same scope and effect as the foregoing indemnification of Directors and officers.

(b)     If a claim under subsection (a) of this Section is not paid in full by the Corporation within thirty days after a written claim has been received by the Corporation, the claimant may at any time thereafter bring suit against the Corporation to recover the

-10-

unpaid amount of the claim and, if successful in whole or in part, the claimant shall also be entitled to be paid the expense of prosecuting such claim. It shall be a defense to any action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking has been tendered to the Corporation) that the claimant has failed to meet a standard of conduct which makes it permissible under Delaware law for the Corporation to indemnify the claimant for the amount claimed, but the burden of proving such defense shall be on the Corporation. Neither the failure of the Corporation (including its Board of Directors, independent legal counsel, or its members) to have made a determination prior to the commencement of such action that indemnification of the claimant is permissible in the circumstances because the claimant has met such standard of conduct, nor an actual determination by the Corporation (including its Board of Directors, independent legal counsel, or its members) that the claimant has not met such standard of conduct, nor the termination of any proceeding by judgment, order, settlement, conviction or upon a plea of *nolo contendere* or its equivalent, shall be a defense to the action or create a presumption that the claimant has failed to meet the required standard of conduct.

(c)     The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Section shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Certificate of Incorporation, these Bylaws, agreement, vote of members or disinterested Directors or otherwise.

(d)     The Corporation may maintain insurance, at its expense, to protect itself and any Director, member, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under Delaware law.

(e)     To the extent that any Director, officer, employee or agent of the Corporation is by reason of such position, or a position with another entity at the request of the Corporation, a witness in any proceeding, such person shall be indemnified against all costs and expenses actually and reasonably incurred by such person or on such person's behalf in connection therewith.

(f)     Any amendment, repeal or modification of any provision of this Section by the members or the Directors of the Corporation shall not adversely affect any right or protection of a Director or officer of the Corporation existing at the time of such amendment, repeal or modification.

(g)     The provisions of this Section 6.7, and the limitations on liability and indemnification provided in such Section, shall survive the winding up and termination of the Corporation to the extent permitted by applicable law.

Section 6.9     Amendment of Bylaws.  Only the members, by the affirmative unanimous vote of the members entitled to vote, may adopt, amend, or repeal these Bylaws, and alterations or amendments of these Bylaws made by the members shall not be altered or amended by the

-11-

39

Board of Directors to the extent such alteration or amendment expressly states that it can only be altered or amended by the members.

-12-

# EXHIBIT 30

Case 19-34054-sgj11 Doc 4083-7 Filed 05/09/26 Entered 05/09/26 12:04:39 Desc
Exhibit 69 - Part 2 Page 175 of 176

## HIGHLAND KANSAS CITY FOUNDATION, INC.

### Unanimous Written Consent of Directors
### In Lieu of Organizational Meeting

THE UNDERSIGNED, being all of the directors of Highland Kansas City Foundation, Inc. (the "Foundation"), a Delaware nonprofit nonstock corporation, do hereby consent to the adoption of, and do hereby adopt, the following resolutions pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, and hereby direct that this Written Consent be filed with the minutes of the proceedings of the Board of Directors of the Foundation:

### Approval of Certificate of Incorporation

The Certificate of Incorporation, filed with the Secretary of State of Delaware on November 23, 2011, is ratified and approved; and the Secretary is hereby ordered to file the Certificate of Incorporation in the minute book.

### Adoption of Bylaws

The bylaws attached to this consent is hereby adopted and approved as the Bylaws of the Foundation; and the Secretary is ordered to file a copy of the Bylaws in the minute book.

### Election of Officers

The following persons are elected as officers of the Foundation in the capacities set forth opposite their respective names below to serve until the next annual meeting of the Board of Directors and until their respective successors are elected and qualified or until their earlier death, resignation or removal:

| | |
|---|---|
| President | James Dondero |
| Secretary and Treasurer | Grant Scott |

### Confirmation of Tax-Exempt Status

The officers are authorized (i) to proceed with preparation of an exemption application (IRS Form 1023) seeking to have the Foundation classified as a charitable organization under Section 501(c)(3) of the Internal Revenue Code, (ii) to sign the application and related documents on behalf of the Foundation, (iii) to file the completed application package with the Internal Revenue Service, and (iv) to deal with the Service in all matters relating to the exemption application both in person and

4