# United States Court of Appeals for the Fifth Circuit

No. 25-11185

United States Court of Appeals
Fifth Circuit
**FILED**
September 16, 2026
Lyle W. Cayce
Clerk

In the Matter of Highland Capital Management, L.P.

*Debtor*,

NexPoint Real Estate Partners, L.L.C.,

*Appellant*,

*versus*

Highland Capital Management, L.P.,

*Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:24-CV-1479

ON PETITION FOR REHEARING

Before Stewart, Graves, and Wilson, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:

IT IS ORDERED that the petition for rehearing is DENIED. We withdraw our previous opinion and substitute the following:

A bankruptcy court holds the inherent power to sanction litigants for bad faith conduct—a critical safeguard to curtail abuse of the bankruptcy process. The bankruptcy court here sanctioned HCRE Partners[1] for just such an abuse. HCRE filed a claim that its officers knew to be baseless, and spent the following years litigating this claim in bad faith. It frivolously opposed a motion to disqualify counsel, and then moved to withdraw its claim to avoid the depositions of its officers, while seeking to preserve the claim's substance for a future forum. Because this is precisely the kind of behavior that warrants an inherent-power sanction, we affirm.

## I. Background

### A. To execute Project Unicorn, Highland and HCRE created a new LLC and divided its membership between themselves.

In 2018, James Dondero and Matt McGraner embarked on Project Unicorn. *In re Highland Cap. Mgmt., LP* (*Trial Ord.*), No. 19-34054, 2023 WL 3185266, at *6–7 (Bankr. N.D. Tex. Apr. 28, 2023). The project's goal was for several Dondero-affiliated companies, including Highland Capital Management and HCRE, to purchase 26 residential properties for about $1.1 billion. *Id.* at *6–7. During Project Unicorn, Dondero controlled both companies, while McGraner was HCRE's vice president and secretary. *Id.* at *1, *6–7.

Highland and HCRE created SE Multifamily Holdings, LLC. The original LLC Agreement governed SE Multifamily. It allocated 49% membership to Highland and 51% to HCRE. SE Multifamily, Highland, HCRE, and other Dondero-controlled entities secured a $550 million loan from Key Bank to finance Project Unicorn. *Id.* at *7.

[1] HCRE now goes by NexPoint Real Estate Partners.

Before the loan transaction closed, SE Multifamily brought another investor into Project Unicorn, BH Equities, which was unaffiliated with Dondero. *Id.* at *7–8. After BH Equities contributed $21 million, Highland and HCRE amended the LLC Agreement to give BH Equities a 6% membership of SE Multifamily. *Id.* at *8. This diluted Highland's share to 46.06%, and HCRE's share to 47.94%. The Amended LLC Agreement reflected these changes in membership throughout. Dondero signed the agreement on HCRE's and Highland's behalf.

**B. When Highland filed for bankruptcy, Dondero challenged its share in SE Multifamily.**

"By 2019 . . . myriad unpaid judgments and liabilities forced Highland . . . to file for Chapter 11 Bankruptcy." *In re Highland Cap. Mgmt. LP* (*Highland I*), 48 F.4th 419, 424 (5th Cir. 2022). To avoid appointment of a trustee, Highland, Dondero, and a committee of creditors agreed "to overhaul Highland's governance structure," which led to the appointment of an independent board. *Dondero v. Highland Cap. Mgmt., LP* (*Highland II*), 105 F.4th 830, 834 (5th Cir. 2024). Almost immediately, Dondero disagreed with the new board about how the bankruptcy should proceed, and the board ousted him. *Id.*

***1. Highland filed for bankruptcy, and Dondero interfered.***

Dondero has earned at least two sanctions for his interference with Highland's bankruptcy. In December 2020, Highland sought a TRO against Dondero. *Id.* at 835. Although he had left Highland itself, its "organizational structure encompasses up to 2,000 other investment entities" which "share various service agreements with Highland." *Id.* at 834. Dondero exercises "de facto control" over many of these entities. *Id.* (citation modified). The bankruptcy court entered a TRO to prevent Dondero from further interfering with Highland. *Id.* at 835. But by January 2021, Dondero had violated the TRO by "communicating with members of Highland's legal

team to coordinate [his] legal strategy against Highland and interfering with Highland's intended [asset] sales." *Id.* For this, Dondero earned a nearly $500,000 sanction, which our court affirmed. *Id.* at 836–41.

Our court also (partially) affirmed a sanction against Dondero for filing vexatious litigation connected to Highland's bankruptcy. *The Charitable DAF Fund, LP v. Highland Cap. Mgmt., LP* (*Highland III*), 98 F.4th 170, 174–77 (5th Cir. 2024). To protect one of the independent directors from vexatious lawsuits, the bankruptcy court adopted an order that gave it "sole jurisdiction" to adjudicate claims against the director related to his appointment. *Id.* at 172–73. Yet Dondero sued Highland in district court and moved to amend the complaint to add the independent director as a defendant. *Id.* at 172. The bankruptcy court sanctioned him for the motion. *Id.* at 173–74. We affirmed the portion of this sanction that shifted the attorney fees related to defending the motion. *Id.* at 174–77.

***2. Dondero and HCRE challenged SE Multifamily's membership allocation in the bankruptcy proceeding.***

Dondero filed a Proof of Claim with the bankruptcy court in April 2020 on HCRE's behalf. He averred that HCRE "may be entitled to distributions out of SE Multifamily, but such distributions have not been made because of" Highland's conduct. As a result, HCRE "may have a claim against the Debtor."

Highland objected to the Proof of Claim in July 2020, denying any liability. By October 2020, HCRE hired a new law firm—Wick Phillips—to pursue its claim. *In re Highland Cap. Mgmt.* (*Sanctions Ord.*), No. 19-34054, 2024 WL 959335, at *7 (Bankr. N.D. Tex., Mar. 5, 2024). HCRE, through Wick Phillips, responded to Highland's objection in October 2020. The response clarified HCRE's legal theories to allege that SE Multifamily's

organizational documents mistakenly apportioned its membership and asked the bankruptcy court to reform the Amended LLC Agreement.

***3. During the first round of discovery, Highland moved to disqualify Wick Phillips.***

The first of three rounds of discovery began in December 2020. Initially, this went as planned, and the parties served deposition notices, exchanged discovery demands, and produced voluminous documents. But from this discovery, Highland learned that Wick Phillips may have jointly represented HCRE and Highland for the Project Unicorn transactions. *Id.* So in April 2021, Highland moved to disqualify Wick Phillips. *Id.* After a second round of discovery and six months of litigation, the bankruptcy court disqualified the law firm.

***4. During the third round of discovery, HCRE moved to withdraw its claim.***

A third round of discovery began in June 2022. During this round, the parties exchanged documents, and HCRE deposed Highland's witnesses. *Id.*

But in August 2022—two days before Dondero's and McGraner's scheduled depositions and one day after HCRE produced 4,000 documents—HCRE moved to withdraw its claim. *Id.* After a hearing, the bankruptcy court denied the motion, finding that Highland would suffer prejudice from the withdrawal. *See Manchester, Inc. v. Lyle* (*In re Manchester*), No. 08-30703-11, 2008 WL 5273289, at *3 (Bankr. N.D. Tex. Dec. 19, 2008) ("[W]ithdrawal of a proof of claim should be permitted unless that withdrawal results in . . . prejudice to [the] nonmoving party." (citation modified)).

### *5. Once discovery ended, HCRE lost at trial.*

After the bankruptcy court denied withdrawal, the parties completed discovery, and the court held a bench trial in November 2022. *Trial Ord.*, 2023 WL 3185266, at *1. HCRE lost. *Id.* at *16. The court found no evidence that the parties to the Amended LLC Agreement arrived at a different understanding of the membership allocation in SE Multifamily than was reflected in the agreement. *Id.* at *13. So the court refused to reform the contract, and disallowed the Proof of Claim. *Id.* at *12–16. At trial, Highland orally moved for sanctions. *Id.* at *16. The bankruptcy court denied the motion without prejudice because HCRE lacked an adequate opportunity to respond. *Id.*

### *6. After trial, the bankruptcy court sanctioned HCRE.*

In June 2023, Highland moved for a bad faith finding and attorney fees. Invoking its inherent power to sanction litigants, the bankruptcy court awarded Highland $825,940.55. *Sanctions Ord.*, 2024 WL 959335, at *12–15. The bankruptcy court denied HCRE's motion for reconsideration. The district court affirmed the bankruptcy appeal. HCRE now appeals to this court.

## II. Our Review

Generally, we "review [a] bankruptcy court's legal conclusions de novo and its factual findings for clear error." *Kreit v. Quinn* (*In re Cleveland Imaging & Surgical Hosp., LLC*), 26 F.4th 285, 292 (5th Cir. 2022). But if a "court sanctions a party using its inherent authority, our review is closer." *Id.* We affirm "only if (1) the bankruptcy court finds that the party acted in bad faith or willfully abused the judicial process" and (2) "clear and convincing evidence" supports this finding. *Id.* (citation omitted). If the bankruptcy court "surmount[s]" this "high threshold" we review the

sanction's substance for abuse of discretion. *Cadle Co. v. Moore* (*In re Moore*), 739 F.3d 724, 730 (5th Cir. 2014) (citation omitted).

Highland urges us to adopt a standard that "a bankruptcy court's factual determination that clear and convincing evidence exists to support its finding is, itself, reviewed for clear error." We cannot.

A bad faith finding "must be supported by clear and convincing [evidence]." *Id.* (quoting *Crowe v. Smith* (*Crowe II*), 261 F.3d 558, 563 (5th Cir. 2001)). "[T]he evidence must be so direct and weighty" that it would "enable the fact finder to come to a clear conviction, without hesitancy, of the truth of" the facts that supported the finding. *See Crowe II*, 261 F.3d at 565 (citation omitted). Hence "contradictory testimony" or unclear circumstances cannot sustain a sanction. *See id.* at 566.

Put differently, we must "ensure the legal sufficiency" of "the underlying facts" to "support [the bankruptcy] court's more generalized finding of bad faith." *Crowe v. Smith* (*Crowe I*), 151 F.3d 217, 236 (5th Cir. 1998). We "probe the record in detail" to unearth these underlying facts. *Id.* And we do so "without deference." *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 455 (5th Cir. 2022). If the evidence is legally insufficient, "the district court abused its discretion." *Crowe II*, 261 F.3d at 566. This standard leaves no room for Highland's attempt to append a clear error standard onto what is, essentially, a de novo review of evidentiary sufficiency.

Highland relies on *In re Carroll* to justify its clear error standard, where our court affirmed a sanction because "the record fully support[ed] the bankruptcy court's determination of bad faith, and Appellants [did] not establish[] that any of [its] findings were clearly erroneous." *Carroll v. Abide* (*In re Carroll*), 850 F.3d 811, 816 (5th Cir. 2017). That panel may have invoked the "clearly erroneous" standard because it considered a prefiling injunction against a vexatious litigant, as well as an inherent-power sanction.

*See id.* at 815–16. We review a prefiling injunction under a general abuse of discretion standard, which means we review evidentiary findings for clear error. *Id.* Because the *In re Carroll* panel also reviewed a prefiling injunction, we construe its clear error language to relate to the injunction, not to disturb our well-established standard of review for inherent-power sanctions.

## III. Discussion

Applying this standard, we affirm HCRE's sanction. Clear and convincing evidence supports the bankruptcy court's finding that HCRE acted in bad faith. And because HCRE's sanctionable conduct caused the costs Highland incurred—even after the withdrawal motion—the court did not abuse its discretion in setting the sanction amount.

### A. Clear and convincing evidence supports the bankruptcy court's bad faith finding.

HCRE maintains that "no evidence" supports the bankruptcy court's bad faith finding. Quite the contrary. The ample evidence of HCRE's bad faith clearly and convincingly shows that it (1) filed the Proof of Claim in bad faith, and (2) litigated the claim in bad faith. The bankruptcy court thus properly invoked its inherent sanction power.

#### *1. HCRE* filed its claim in bad faith.

When Dondero filed the Proof of Claim, he failed to investigate it. He could not recall "personally do[ing] any due diligence . . . before [he] authorized it to be filed." He did not "review any documents." Nor could he recall who provided the information in the claim to their law firm, or what information they gave. Even so, he signed the claim under penalty of perjury, and attested that he had "a reasonable belief that the information" in the claim was "true and correct."

Dondero and McGraner—the two HCRE officers coordinating Project Unicorn—then admitted at trial that they knew the claim was

baseless. Dondero testified that SE Multifamily's membership allocation in the Amended LLC Agreement "comport[ed] with [his] expectations when [he] signed [it]." And McGraner could not identify any part of the agreement that did not reflect the parties' intent. In other words, both officers admitted that there was no reason to reform the agreement.

In fact, the trial revealed that HCRE filed its claim with an ulterior motive. McGraner testified that the real "mistake" was that Dondero filed Highland's bankruptcy, which prevented them from freely amending the organizational documents to dilute Highland's membership. As a result, SE Multifamily's assets—which McGraner and Dondero believed were rightfully HCRE's—were at risk from Highland's creditors. McGraner called this "crazy and unjust."

So Dondero filed the Proof of Claim without investigating, likely knowing it was false, and aiming to shield SE Multifamily's assets from Highland's creditors. This evidence shows us clearly and convincingly that HCRE filed its claim in bad faith.

*2. HCRE litigated its claim in bad faith.*

The bankruptcy court focused on two aspects of HCRE's litigation conduct: (a) its opposition to the disqualification motion and (b) its attempt to withdraw its claim while trying to preserve its substance for a future forum. *Sanctions Ord.*, 2024 WL 959335, at *8–10. We agree with the bankruptcy court that these actions reflect HCRE's bad faith.

**a. HCRE frivolously opposed Wick Phillips's disqualification.**

In opposing Wick Phillips's disqualification, HCRE distorted the firm's role in SE Multifamily's formation. The response to Highland's disqualification motion claimed that Wick Phillips's previous representation of Highland "was limited to the negotiation and drafting of the [Key Bank] [l]oan." Yet at trial, McGraner admitted that he "personally knew that Wick

Phillips represented both HCRE and Highland jointly in connection with the negotiation [and] drafting of the original LLC agreement, the Key Bank Loan, and the" Amended LLC Agreement. McGraner's admission shows that HCRE misrepresented Wick Phillips's role in the underlying transaction, a misrepresentation that took six months of expensive litigation to disprove. This goes beyond opposing a motion and losing; this is knowingly raising, then standing by, a frivolous argument—classic bad faith.

HCRE protests that because its ethics expert opined that the Wick Phillips conflict did not require disqualification, it cannot have taken a frivolous position. But this expert "assum[ed]" that HCRE's claims in response to the disqualification motion were true, which they were not. Because the expert based his opinion on a faulty assumption, it offers little insight into the merits of the disqualification dispute.

**b. HCRE tried to withdraw its claim to avoid discovery obligations, while seeking to preserve the substance for a future forum.**

The bankruptcy court found that the motion to withdraw reflected "gamesmanship," calculated to allow HCRE to avoid its discovery obligations while preserving its underlying claims for a future forum. The withdrawal motion's timing was indeed suspicious—two business days before Dondero's and McGraner's depositions, and one day after HCRE produced 4,000 documents. *Sanctions Ord.*, 2024 WL 959335, at *9.

HCRE never offered a cogent explanation for the timing. In the motion, it claimed that it "simply wishe[d] to no longer pursue a claim." It supplied no more insight at the hearing. The bankruptcy court grew concerned that HCRE harbored a tactical motive. *Id.* at *8–9. Especially because HCRE seemed interested in preserving its challenge to SE Multifamily's membership allocation after the withdrawal.

The court gave HCRE a choice: it would deny withdrawal, or HCRE could submit a proposed dismissal order that would prevent it from raising similar claims in another forum. The court ordered HCRE to confer with Highland about the language and report back Highland's position. But HCRE never submitted a proposed order, nor did it notify the court of any discussions with Highland. *Id.* at *9 n.48. So the bankruptcy court's concerns about gamesmanship persisted, and it denied withdrawal. *Id.*

Granted, HCRE assured the court at the motion hearing that it was willing to withdraw its claim with prejudice. But the court was understandably wary of Dondero's inconsistent statements on the scope of a with-prejudice withdrawal, and his refusal to rule out a future challenge to Highland's interest in SE Multifamily. *Id.* The bankruptcy court offered a practical way to allay these concerns, which HCRE ignored. HCRE cannot rely now on its offers to withdraw its claim with prejudice when it squandered its opportunity to address the court's legitimate concerns.

The withdrawal motion's suspicious timing, and HCRE's failure to allay the bankruptcy court's concerns about it, sustain the court's finding that HCRE moved to withdraw its claim in bad faith. And the record also supports the court's finding that HCRE filed its claim in bad faith. Because clear and convincing evidence supports both findings, the bankruptcy court properly found that HCRE acted in bad faith, hence it did not err by invoking its inherent sanction power.

**B. The sanction was causally related to HCRE's sanctionable conduct.**

HCRE next challenges the sanction amount. We review a sanction's substance for abuse of discretion. *In re Moore*, 739 F.3d at 730. Here, the bankruptcy court issued a "fee-shifting sanction." *Highland III*, 98 F.4th at 175. So there must be "a causal link between [HCRE's] misbehavior and [the] legal fees" awarded. *Id.* (citation modified). Without this link, "the

sanction is punitive" and exceeds "the bankruptcy court's statutorily limited powers." *Id.*

HCRE argues that any fees incurred after it moved to withdraw are not causally related to its conduct.[2] Mostly, this repackages its complaints about the bankruptcy court's refusal to allow it to withdraw its claim. But once Highland had objected to the claim, HCRE could not withdraw it without court permission. Fed. R. Bankr. P. 3006(a). The court had good reason to deny permission, since it found that the withdrawal would unfairly prejudice Highland. Besides, HCRE's failure to propose withdrawal language *caused* the denial of its motion to withdraw, so it cannot plausibly claim now that Highland's subsequent costs were not causally related to its conduct.

Nor is Highland in the same position as it would have been by "tak[ing] the win," and not opposing withdrawal. The bankruptcy court's concern when denying withdrawal was not only that HCRE would refile another adversary bankruptcy claim, but that HCRE would challenge Highland's interest in SE Multifamily in another forum. *Sanctions Ord.*, 2024 WL 959335, at *9. If the withdrawal order had merely been with prejudice—without addressing whether that prejudice extended to claims in non-bankruptcy proceedings—HCRE might subsequently argue that its underlying contract reformation claim was left unresolved.

But now, a court has rejected HCRE's claim on the merits. An order resolving a proof of claim is a "final judgment" for claim or issue preclusion purposes. *Lafayette v. Baudoin* (*In re Baudoin*), 981 F.2d 736, 742 (5th Cir.

---

[2] HCRE also suggests that the fees associated with the disqualification dispute were not caused by its sanctionable conduct. But as Highland points out, it did not seek, nor did the bankruptcy court award, fees related to the disqualification motion. *Sanctions Ord.*, 2024 WL 959335, at *8 n.43.

1993). So HCRE cannot sue based "on the same nucleus of operative facts." *See id.* at 743. Or relitigate any issue necessary to the bankruptcy court's judgment. *Clem v. Tomlinson* (*In re Clem*), 124 F.4th 341, 348 (5th Cir. 2024). So after two years of costly litigation, Highland has what it sought at the withdrawal motion hearing: "an ironclad" guarantee that HCRE cannot challenge its interest in SE Multifamily again; whether in a bankruptcy court, or any other forum. Had HCRE proposed terms that would achieve this, further litigation would have been unnecessary.

Although HCRE claims otherwise, the sanctions our court vacated in *Highland III* have little in common with the sanctions here. 98 F.4th at 172–77. In *Highland III*, we held that the bankruptcy court could not impose fees incurred in litigating a sanctions motion, only fees caused by the sanctionable conduct. *See id.* at 174–76. But here, the bankruptcy court did not shift Highland's fees connected with its sanctions motion. *See Sanctions Ord.*, 2024 WL 959335, at *12. While *Highland III* guides us generally, the bankruptcy court here shifted fees related to the underlying sanctionable conduct, which yields a different result.

Thus, Highland's costs that accrued after HCRE moved to withdraw its claim are still causally related to HCRE's conduct. So the bankruptcy court did not abuse its discretion when it imposed them. Because the court properly invoked its inherent sanction power and issued sanctions causally related to HCRE's sanctionable conduct, we AFFIRM.[3]

---

[3] HCRE also maintains that the bankruptcy court should have reconsidered the sanctions, and that the district court should not have affirmed them. These arguments merge with HCRE's other challenges to the sanctions order. We reject them for the same reasons that we affirm the sanctions.